UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br><br>                Plaintiff,<br><br>        v.<br><br>MICHAEL AARON TEW,<br>KIMBERLEY ANN TEW, and<br>JONATHAN K. YIOULOS<br>                Defendants. | 20-CR-00305-DDD |

**Defendant Kimberley Tew's Memorandum of Law in Support of Her Motion to
Modify the Terms of Her Pretrial Release**

**TABLE OF CONTENTS**

Introduction ................................................................................................................................... 1

Background ................................................................................................................................... 2

Legal Standard .............................................................................................................................. 6

Argument ....................................................................................................................................... 8

I.    Mrs. Tew's Current Release Conditions Violate the Bail Reform Act ................................. 8

    A.   The Current Release Terms Are Not the Least Restrictive Conditions .............................. 9

    B.   The Current Conditions of Release Are Arbitrary and Punitive ........................................ 10

II.   Mrs. Tew's Current Conditions of Release Violate Her Pretrial Liberty Interests ............... 11

Conclusion .................................................................................................................................. 12

# TABLE OF AUTHORITIES

**Cases**

*Bell v. Wolfish*, 441 U.S. 520 (1979). ..................................................................................... 6, 11

*Dawson v. Bd. of County Comm'rs*, 732 Fed. Appx. 624 (10th Cir. March 9, 2018) ............... 8, 11

*Jim Hood, ex rel. The State of Mississippi v. The Geo Group, Inc. et al.*, 17-CV-00083-WLK
    (Miss. 2017) ............................................................................................................................. 5

*Leon v. State*, No. 2014-CV-30568, Colo. Dist. (July 16, 2014) ...................................................... 5

*Littlefield v. Deland*, 641 F.2d 729 (10th Cir. 1981) ...................................................................... 11

*Lopez-Valenzuela v. Arpaio*, 770 F. 3d 772 (9th Cir. 2014) .............................................................. 8

*Menocal v. GEO Grp., Inc.*, 882 F.3d 905 (10th Cir. 2018) .............................................................. 5

*Russell v. Harris County*, No. H-19-226, 2020 U.S. Dist. LEXIS 209983 (S.D. Tex. Nov. 10,
    2020) ...................................................................................................................................... 11

*United States v. Ailon-Ailon*, 875 F.3d 1334 (10th Cir. 2017) .......................................................... 7

*United States v. Cisneros*, 328 F. 3d 610 (10th Cir. 2003) .............................................................. 7

*United States v. Chavez*, No. CR 13-0960 JB, 2013 U.S. Dist. LEXIS 128342 (D.N.M. Sept. 3,
    2013) ........................................................................................................................................ 7

*United States v. Mobley*, 720 F. App'x 441 (10th Cir. 2017) .......................................................... 7

*United States v. Salerno*, 481 U.S. 739 (1987) ..................................................................... 6, 7, 11

*United States v. Sanchez*, CR-12-3182, 2014 U.S. Dist. LEXIS 94126 ......................................... 7

*Zablotny v. Geo Grp.*, 2015 Ill. Cir. LEXIS 5747 ............................................................................ 5

**Statutes**

18 U.S.C. § 3145 ................................................................................................................. 7

18 U.S.C. §§3142 ............................................................................................................ 6, 9

18 U.S.C. §3146 ................................................................................................................. 6

# Introduction

Defendant Kimberley Ann Tew ("Mrs. Tew") is subject to conditions of pretrial release which violate the Bail Reform Act of 1984, as codified at 18 U.S.C. §§3141-3150 ("BRA"). Her release terms are not the least restrictive means to assure her appearance in Court. The current terms also violate the United States Constitution's Fifth Amendment Due Process Clause because the terms of her release are arbitrary and punitive. She moves this Court to modify the terms of her release to eliminate her home confinement, remove her Radio Frequency ("RF") ankle bracelet, and release her on a personal recognizance bond as originally recommended by Pretrial Services before the Government intervened.

Mrs. Tew is committed to going to trial to resolve this matter and move on with her life. She is not a flight risk nor a danger to the community and the Government cannot meet its burden of proof on these issues under the BRA. Rather than having a legal rationale under the BRA or the Constitution, Mrs. Tew's conditions appear to have been requested by the Government to coerce her into a plea and punish her for exercising her constitutional right to a jury trial. The current conditions are arbitrarily discriminatory and punitive and without any basis in the record.

Neither of her white male Co-Defendants, all charged with more counts than the Asian-American Mrs. Tew, are deprived of their liberty through home confinement. Cooperating witness and Co-Defendant Jonathan Yioulos travels to the Caribbean and Florida with the Government's blessing, is not burdened with a RF ankle bracelet, and has no curfew.[1] Yioulos, unlike Mrs. Tew, controlled the finances for the alleged victim company and was involved in every transaction charged in the indictment.

---

[1] (*See* ECF Dkt. Nos. 100, 102, 118, 122).

Despite Pretrial Services determining she is not a flight risk and recommending she be release on a personal recognizance bond without supervision, Mrs. Tew, a mother of two young children, one with special needs, is confined to her home with little to no ability to leave. She is forced to wear a clumsy, outdated RF ankle bracelet shackled to her ankle, that sets off an alarm if she crosses her apartment's perimeter. There is little evidence of the RF shackle's safety or efficacy, and within the first two months of wearing the ankle bracelet bruising appeared on her leg.

Thus, Mrs. Tew moves this Court to: (1) remove her RF ankle bracelet and home confinement and release her on a personal recognizance bond as Pretrial Services originally recommended.

The Defense has conferred with the Government and they oppose any modification of the terms of release.

**Background**

Mrs. Tew is a U.S. citizen, grew up in America, and has been living in Denver with her husband and twin six-year-old daughters, A and Z, for the last six years.[2] She has not left the United States since 2014. During the summer months (continuing when school resumes in the fall), A and Z each require separate and distinct learning and enrichment activities, including those specific to the needs of Z, a young child with a sensory disorder.[3] There are many distinct and particular needs related to Z's disorder that require unique care and attention from her parents.[4]

---

[2] (Decl. of K. Tew at ¶ 1-3).
[3] (*Id.* at ¶ 2).
[4] (*Id.* at ¶ 3).

Because of her home confinement, Mrs. Tew cannot take her children outside to play in the park, go swimming, visit museums, or do anything with them outside. She is prevented from accessing other parts of her apartment building complex. She cannot collect her mail, take out the trash, pick up packages from her front desk, or use the apartment building's gym.[5] She is allowed to drop off and pick up A from school only at designated times, but this assumes a uniformity of schedule that every parent knows is unrealistic.

For instance, on April 19, 2021, A needed to be picked up early from school because of unexpected complications from a dental procedure.[6] Mr. Tew was on a conference call for work, and Mrs. Tew was unable to pick A up because she was not preapproved to leave her home at that time. A had to wait at school until her father could pick her up.[7]

Since her indictment, Mrs. Tew has fully complied with the bond conditions set by the Court. At no point, before or after her arrest, has she attempted to flee the jurisdiction despite being on notice of the government's investigation months before her indictment.[8] The Government informed Mr. Tew's lawyer that there was an ongoing investigation into Mrs. Tew six months before she was indicted and then arrested.[9] Both Mr. and Mrs. Tew have surrendered their passports.[10]

On February 3, 2021, the Government indicted Mrs. Tew, and issued a summons for her initial appearance.[11] On February 10, 2021, at Mrs. Tew's initial appearance, her Pretrial Services Report stated she was neither a flight risk nor a threat to the community and recommended she be released on a personal recognizance bond. However, Magistrate Judge

---

[5] (*Id.* at ¶ 4).
[6] (*Id.* at ¶ 5).
[7] (*Id.* at ¶ 6).
[8] (*Id.* at ¶ 7).
[9] (*Id.* at ¶ 8).
[10] (*See* ECF Dkt. Nos. 11, 104).
[11] (*Id* at 83, 87).

Mix, upon the Government's request, imposed home confinement, an RF ankle bracelet on Mrs. Tew, and a $10,000 unsecured bond.[12] None of the white male Co-Defendants, charged with more counts than the Asian American Mrs. Tew, are detained in their homes. Cooperating witness and Co-Defendant Jonathan Yioulos has traveled to the Caribbean and Florida during these proceedings, has no curfew, and wears no RF ankle bracelet.[13]

The ankle monitor shackled to Mrs. Tew is called the "Bi Home Guard 206 DS." ("206 DS")"[14] For some time it caused bruising on Mrs. Tew's leg, which has since subsided.[15]



The medical safety of BI Inc. monitors is questionable. Our research turned up anecdotal evidence of their potential dangers, and no authoritative evaluation of their medical safety. BI Inc., a subsidiary of The Geo Group Inc. ("The Geo Group"), makes the 206 DS. The Geo Group is a private prison contractor that has settled litigation with people forced to wear their ankle bracelet who developed bruises, inflammation, and blood clots that in some instances led to

---

[12] (*Id* at 96, 99).
[13] (*Id* at 100, 102, 118, 122).
[14] (Decl. of K. Tew at ¶ 10).
[15] (*Id* at ¶ 15).

hospitalization and surgery.[16] The Geo Group has been investigated for bribery schemes and sued for violations of anti-slavery laws.[17]

Mrs. Tew's RF bracelet transmits a signal to a large radio receiver placed in her apartment, that sets off an alert if Mrs. Tew crosses the perimeter of her apartment.[18] This prevents her from taking out the garbage, going to their buildings' pool so her children can swim (the ankle bracelets aren't waterproof so Mrs. Tew cannot swim with her children), or travel with her children anywhere except to and from school at designated times.

The dated RF ankle bracelet technology and its erratic functionality put its efficacy in question.[19] Often, Mrs. Tew's ankle bracelet sends out a false alarm when she is at home with her children, causing status update calls from her duty officer and disturbing what should be peaceful time with her children.[20] It is questionable whether the ankle bracelets even perform their contracted task of preventing defendants from fleeing.[21] This Court should remove Mrs. Tew's RF ankle bracelet, lift her home confinement, and release her on a personal recognizance bond in accordance with Pretrial Services original recommendation.

---

[16] *See Zablotny v. Geo Grp.*, 2015 Ill. Cir. LEXIS 5747; *see also* Annie Cosby, "Suit:  Man's GPS ankle bracelet put on so tight it caused blood clot" County Cook Record, April 15, 2014, at https://cookcountyrecord.com/stories/510578765-suit-man-s-gps-ankle-bracelet-put-on-so-tight-it-caused-blood-clot ("As a result of the allegedly improperly placed ankle bracelet, Zablotny asserts he had to undergo considerable treatment, including at an emergency room and subsequent hospitalization, for a blood clot and infection."); Albert Fox Cahn, "Ankle monitors can hold captives in invisible jails of debt, pain and bugged conversations: NBC News, Nov. 6, 2019, at  https://www.nbcnews.com/think/opinion/ankle-monitors-can-hold-captives-invisible-jails-debt-pain-bugged-ncna1076806 ("Their [ankle monitors] are draining their [defendants] bank accounts, compromising their health and even spying on them, which is why more safeguards against electronic monitoring abuses are urgently needed.").
[17] *See Menocal v. GEO Grp., Inc.*, 882 F.3d 905, 927 (10th Cir. 2018) (granting class certification in favor of Plaintiffs seeking renumeration for The Geo Group's violation of anti-slavery statutes against individuals never convicted of a crime); *see also Jim Hood, ex rel. The State of Mississippi v. The Geo Group, Inc. et al.*, 17-CV-00083-WLK (Miss. 2017) (kickback scheme in which The Geo Group bribed former Mississippi Attorney General Christopher Epps for $256,000,000.00 worth of government contracts).
[18] (Decl. of K. Tew at ¶ 11).
[19] *See Leon v. State*, No. 2014-CV-30568, Colo. Dist. (July 16, 2014) (describing how Evan Ebel, an accused multi-murderer, cut off his Bi Home Guard 206 and wandered freely for four days before any response, during which time he killed again).
[20] (Decl. of K. Tew at ¶ 12).
[21] *Id.*

**Legal Standard**

A defendant is innocent until proven guilty.[22] The deprivation of a defendant's liberty before any adjudication is a serious matter implicating the foundational constitutional principles underlying our criminal justice system and free society. Thus, "[i]n our society liberty is the norm, and detention prior to trial … is the carefully limited exception."[23]

Congress's Bail Reform Act ("BRA") governs conditions of pretrial release.[24] It states that a court "shall order the pretrial release [of a defendant] . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community."[25] If a court finds probable cause that a defendant committed a crime of violence, an offense for which the maximum sentence is life imprisonment or death, certain drug offenses for which the maximum offense is greater than ten years, or a repeat felony offender, there is a rebuttable presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required."[26] Where, as is relevant here, there is no such presumption, Congress requires release of the defendant on their own personal recognizance, or upon execution of an unsecured appearance bond, or under the least restrictive conditions necessary to assure the defendant's appearance in court and the safety of the community.[27]

The BRA lists factors for determining a defendant's release conditions. They include, in relevant part:

---

[22] *See, e.g., Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979).
[23] *United States v. Salerno*, 481 U.S. 739, 755 (1987).
[24] 18 U.S.C. §3146.
[25] 18 U.S.C.S. § 3142; *see also* Fed. Crim. P. 46.
[26] 18 U.S.C. §§3142(f).
[27] 18 U.S.C. §§3142(a)-(c).

6

(1) the nature and circumstances of the offense charged . . . (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including—the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings . . . .; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.[28]

None of the non-violent financial crimes the Indictment charges trigger a rebuttable presumption of flight risk or danger to the community.[29] Thus, the prosecution bears the burden of proving risk of flight by a preponderance of the evidence, and the burden of proving dangerousness to the community by clear-and-convincing evidence.[30]

Under the BRA, individuals charged with a crime are generally released on personal recognizance or personal bond unless the government meets its burden.[31] Where, as here, a Magistrate Judge orders conditions of pretrial release, a defendant may appeal the order as of right to the District Court Judge.[32] The standard of review is *de novo*.[33]

Courts also recognize a pretrial liberty interest under the United States Constitution's Fifth Amendment's Due Process Clause. There is currently a circuit split on whether this pretrial liberty interest is a fundamental or non-fundamental right. The Ninth Circuit has held that there

---

[28] 18 U.S.C. § 3142(g).
[29] *See United States v. Mobley*, 720 F. App'x 441, 443-44 (10th Cir. 2017) ("The government bears the burden of proving risk of flight by a preponderance of the evidence and dangerousness to any other person or the community by clear and convincing evidence."(*citing United States v. Cisneros*, 328 F. 3d 610, 615 (10th Cir. 2003)).
[30] *See U.S. v. Salerno*, 481 U.S. 739, 741 (1987); 18 U.S.C. § 3142(f); *see also United States v. Sanchez*, CR-12-3182, 2014 U.S. Dist. LEXIS 94126, *21, 2014 WL 3421003; *United States v. Chavez*, No. CR 13-0960 JB, 2013 U.S. Dist. LEXIS 128342, at *8 (D.N.M. Sept. 3, 2013).
[31] *United States v. Ailon-Ailon*, 875 F.3d 1334, 1336 (10th Cir. 2017).
[32] 18 U.S.C. § 3145(b).
[33] 18 U.S.C. § 3145(a); *United States v. Cisneros*, 328 F.3d 610, 616 n.1 (10th Cir. 2003).

is a fundamental right to freedom from pretrial detention.[34] While the Tenth Circuit has not definitively ruled on this issue, in 2018 it held in an unpublished decision that when the Government deprives an individual of liberty through a restriction or condition that is not reasonably related to a legitimate goal—if the conditions of release are arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment.[35]

**Argument**

Pretrial Services correctly determined in its report submitted at Mrs. Tew's arraignment that she is not a flight risk or a danger to the community. This Court should accept Pretrial Services original recommendation and release Mrs. Tew on a personal recognizance bond without Pretrial Services' supervision. There is no legal justification for her current conditions of release - imposed by the Magistrate Judge upon the Government's request at arraignment - in the record; or at all. The conditions violate Congress's Bail Reform Act ("BRA") and the United States Constitution's Fifth Amendment's Due Process clause because they are not the least restrictive conditions to assure her appearance in court and are unconstitutionally arbitrary, discriminatory, and punitive.

**I.    Mrs. Tew's Current Release Conditions Violate the Bail Reform Act**

There are no serious, credible allegations that Mrs. Tew is a threat to the community. Nothing in the record supports any such allegations. The non-violent financial crimes the

---

[34] *See Lopez-Valenzuela v. Arpaio*, 770 F. 3d 772, 781 (9th Cir. 2014).
[35] *See Dawson v. Bd. of County Comm'rs*, 732 Fed. Appx. 624, 634, 2018 U.S. App. LEXIS 5946, *22 (10th Cir. March 9, 2018) ("To avoid depriving an arrestee of due process, the government may only interfere with [his] protected liberty interest, for instance by refusing to accept lawfully set bail from the arrestee and detaining him until some later time, if its actions reasonably relate 'to a legitimate goal.' Otherwise, the detention of such an arrestee would constitute punishment prior to trial, in violation of due process."); *id.* ("if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment").

Government is charging carry no presumption of threat to the community under the BRA.[36] She has no history of violence or crime. She is a mother of two young children, one of whom is special needs. Mrs. Tew's Pretrial Services report mentions that she, like many Americans, suffers from depression, but there is nothing in the record or anywhere else that suggests that makes her dangerous. If anything, depression leads to inactivity more than activity. Nor is home confinement recognized as a treatment for depression. And given that most people with mental illness are not violent, caution is in order before linking mental illness with danger to the community.[37] There is no factual support for a finding that Mrs. Tew is a danger to the community.

The only real question here is whether she should be free on her own personal recognizance; and if not, what the least restrictive release conditions are that would assure her appearance in court. The record provides no rational justification under the BRA for the current pretrial deprivation of her liberty through home confinement and an RF ankle bracelet. The conditions are unnecessary to assure her appearance in this matter and are unconstitutionally arbitrary and punitive.

### A. The Current Release Terms Are Not the Least Restrictive Conditions

Mrs. Tew's current home confinement and RF ankle bracelet are contrary to Pretrial Service's recommendation that she be released on a personal recognizance bond without Pretrial Services' supervision.[38] There is no evidence of any propensity to flee on her part even though

---

[36] 18 U.S.C. § 3142(e).
[37] *See* Lea Ahonen, "The Association Between Mental Illness and Violence." (SpringerBriefs in Criminology (2019)) ("The most common diagnosis in the USA, depression, is not associated with violence except in the rare cases in which psychosis is presented.") https://doi.org/10.1007/978-3-030-18750-7_4.
[38] *See* Angela Ledesma, (Reviewed by Laura D. Ansart) Pretrial Services Report (Report No. 1082) (February 9, 2021).

she knew of the Government's investigation of her months before her arrest. She had ample time to pack up and leave with her two children and she did not.

By the time of her initial appearance in front of this Court on February 10, 2021, Mrs. Tew had known for seven months that the Government was investigating her. On July 9, 2020, the day after her husband's arrest, Mr. Tew's attorney told her that based on his conversations with the Government she was the target of an FBI investigation.[39] Since that time, she hasn't left the State of Colorado nor exhibited any propensity to flee. She is a dedicated mother. The notion that she would subject her children to a life on the lam is not credible. In fact, Mrs. Tew has not left the United States since 2014.[40] And she has surrendered her passport. She is not running from this trial and nothing in the record supports a conclusion otherwise. The only thing necessary to assure her appearance in this Court is to docket the date.

### B.   The Current Conditions of Release Are Arbitrary and Punitive

Even though Mrs. Tew faces fewer charges than her white male Co-Defendants and has never attempted to flee, she is subject to the harshest pretrial conditions - home detention and an RF ankle bracelet, both of which unduly burden her in the care of her two children.

The discriminatory scheme of disparate release conditions for the defendants in this case lacks any articulated rational basis in the record. Co-Defendant and cooperating witness Jonathan Yioulos does not have an ankle bracelet and has been granted permission to travel to the Caribbean and Florida even though he ran the finances for the alleged victim company and was involved in every transaction listed in the Indictment, unlike Mrs. Tew.[41] Mr. Tew is not subject to home detention. Given both the recent and historical spate of violence and racism against

---

[39] (Decl. of K. Tew at ¶ 9).
[40] (Decl. of K. Tew at ¶ 2).
[41] (ECF 100, 102, 118, 122).

Asian Americans, it is disturbing to see this type of apparently arbitrary disparity between the terms of release imposed on Mrs. Tew versus her white male Co-Defendants.[42] If it is to continue the reasons for it should be clearly stated in the record; none are readily apparent.

## II. Mrs. Tew's Current Conditions of Release Violate Her Pretrial Liberty Interests

Arbitrary and punitive pretrial detention or conditions of release violate a defendants' due process rights.[43] There is a circuit split as to whether the pretrial liberty of a defendant is a fundamental, or a non-fundamental, liberty interest.[44] The Tenth Circuit, in an unpublished 2018 decision, held that it is not.[45] Regardless of whether pretrial liberty is or isn't a fundamental interest, the deprivation of liberty, in this case consisting of Mrs. Tew's home confinement and her RF ankle shackle, constitutes a violation of her pretrial liberty interests. The restrictions currently imposed are arbitrary and punitive because their imposition at the Government's

---

[42] *See* Paulina Smolinski, "Reports of Anti-Asian hate crimes rose nearly 150% in major U.S. Cities last year," CBS News, March 13, 2021, https://www.cbsnews.com/news/asian-american-hate-crimes-up-150-percent-us/; President Joseph J. Biden Jr., "Memorandum Condemning and Combating Racism, Xenophobia, and Intolerance Against Asian Americans and Pacific Islanders in the United States," The White House Briefing Room, Jan. 26, 2021, https://www.whitehouse.gov/briefing-room/presidential-actions/2021/01/26/memorandum-condemning-and-combating-racism-xenophobia-and-intolerance-against-asian-americans-and-pacific-islanders-in-the-united-states/ ("The Federal Government must recognize that it has played a role in furthering these xenophobic sentiments through the actions of political leaders . . . ."); Alex Rogers, "Senate overwhelmingly passes anti-Asian hate crimes bill," CNN, April 22, 2021 ("The Senate passed with a wide bipartisan majority Thursday a bill denouncing discrimination against Asian communities in the United States . . . ."); The United States Dept. of Justice, "2019 Hate Crime Statistics," https://ucr.fbi.gov/hate-crime/2019.
[43] *See United States v. Salerno*, 481 U.S. 739, 747-48 (1987); *Bell v. Wolfish*, 441 U.S. 520, 535-37 (1979) ("[U]nder the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."); *Littlefield v. Deland*, 641 F.2d 729, 731 (10th Cir. 1981) ("Thus, the constitutionality under a due process analysis of the nature or duration of pretrial detention turns on whether such detention amounts to "punishment" in the constitutional sense."); *see also Dawson v. Bd. of Cty. Comm'rs*, 732 F. App'x 624, 630-31 (10th Cir. 2018) ("[I]f a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.") (unpublished).
[44] *United States v. Salerno*, 481 U.S. 739, 741, 107 S. Ct. 2095, 2098 (1987) (finding the Federal Government's legitimate and compelling interest in preventing crimes by arrestees must outweigh the arrestees fundamental interest in liberty); *see also Dawson v. Bd. of County Comm'rs*, 732 Fed. Appx. 624, 638, 2018 U.S. App. LEXIS 5946, *32 (10th Cir. March 9, 2018) (stating that the court in *Salerno* did not recognize a fundamental right to pretrial liberty); *see also Russell v. Harris County*, No. H-19-226, 2020 U.S. Dist. LEXIS 209983, at *92 (S.D. Tex. Nov. 10, 2020) (upholding the fundamental right analysis in *Salerno).*
[45] *Dawson v. Bd. of County Comm'rs*, 732 Fed. Appx. at 638.

request is designed to coerce a plea rather than assure the defendant's appearance in court or protect the community.

Nowhere in the BRA does it state that government cooperation is a factor in determining a defendant's conditions of release. Yet, that is what appears to be happening here. Co-Defendant Yioulos, who is facing 39 felony counts but from all appearances is cooperating with the Government, has no home confinement, no ankle bracelet, and repeatedly travels. Mrs. Tew is committed to her constitutional right to a jury trial, and this Court should not allow the Government to punish her for exercising that right by arbitrarily depriving her of her liberty before any adjudication of guilt, given what - with the voluminous discovery and factual complexity – is likely to be a long trial.

## Conclusion

Mrs. Tew's current conditions of release violate the Bail Reform Act and the United States Constitution's Fifth Amendment's Due Process Clause by failing to employ the least conditions to assure her appearance at a trial and by being arbitrarily discriminatory and punitive. As Pretrial Services already determined, she is neither a flight risk nor a danger to the community. Her conditions of release stand in glaring contrast to those of her white male Co-Defendants and there is no justification for this in the record. This Court should follow Pretrial Services original recommendation and release Mrs. Tew on her own recognizance without Pretrial Service's supervision.

Dated:  June 18, 2021

Brooklyn,  New York

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
tor@torekeland.com

*Attorney for Defendants Michael Tew and Kimberley Tew*

**CERTIFICATE OF WORD COUNT**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE.

I hereby certify that on June 18, 2021, I electronically filed the foregoing **DEFENDANT KIMBERLEY TEW'S MEMORANDUM OF LAW IN SUPPORT OF HER MOTION TO MODIFY THE TERMS OF HER PRE-TRIAL RELEASE** with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all opposing counsel of record.

/s/ Tor Ekeland