IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL AARON TEW and
2. **KIMBERLEY ANN TEW**,
   a/ka Kimberley Vertanen,

    Defendants.

---

### GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE [ECF NO. 187]

---

A magistrate judge hearing the evidence in this case has twice concluded that there are sufficient risks of flight to justify the prudent measure of requiring defendant Kimberley Tew to submit to intensive supervision: either home detention with an RF monitor or a GPS ankle bracelet. ECF Nos. 96 and. 138. The defendant's Motion for Amendment of Conditions of Release asks the court to reconsider a decision it made over eight months ago by adopting a standard that would let criminal defendants reconsider or appeal the decisions of magistrate judges regarding release at any time and for any reason. Courts "do not ordinarily allow parties to file a motion previously denied over and over again," and nothing presented in the defendant's motion is extraordinary. *United States v. Gay*, 2020

WL 5983880, at * 3 (C.D. Ill. 2020). The defendant's Motion for Amendment of Conditions of Release, ECF No. 187 ("Def. Mot."), should be denied.

## ARGUMENT

There is no good reason to allow a defendant to re-litigate already decided issues months after a ruling. Allowing the defendant to raise new issues at any time ignores the Rules of Criminal Procedure, encourages inefficient piecemeal litigation and invites endless cycles of litigation at odds with one of the primary purposes of courts: to actually resolve disputes. Even if the motion were timely, its assertion that the "court applied the wrong standard" contains no citation to authority describing why it is wrong or what the alternative, correct, standard might be. Def. Mot. at ¶ 6.   For good reason: courts confronted with this same argument have universally rejected it, consistent with the text and structure of the Bail Reform Act.

### I.     The Court's Order is Inconsistent with Prior Minute Orders

This court has previously issued orders requiring that orders seeking revocation or modification of a prior release order must be referred to the magistrate judge who is the "same judicial officer who entered the order." ECF No. 135 (quoting *United States v. Cisneros*, 328 F.3d 610, 614 (10th Cir. 2003); *see also United States v. Anaya*, 376 F. Supp. 2d 1261, 1262-63 (D.N.M. 2005). The Court's order --- issued at 7:25 p.m. and requiring the government to respond by 11:00 a.m. the next day — is inconsistent with those prior orders and the court's stated

reliance on *Cisneros* and *Anaya*. The government respectfully requests that the motion be referred to the magistrate judge who issued the order so that she — the judge who has heard the evidence and seen the witnesses in this case — can respond to the defendant's claim that she applied the wrong legal standard, evaluate the factors, and issue an order that can then be reviewed, as necessary, by the District Court.

## II. The Defendant's Argument is Waived and His Motion is Untimely

Kimberley Tew filed a motion to modify her conditions of release to remove the RF ankle bracelet on June 18, 2021. ECF No. 134. The Court issued an order referring that motion to the magistrate judge on June 21, 2021, pursuant to local rules that empower those judges to conduct hearings and issue orders under the Bail Reform Act. D.C.Colo.L.CrR 57.1(b)(9).   The magistrate judge exercised this authority at the hearing on July 15, 2021 and issued an order imposing a GPS monitor. Federal Rule of Criminal Procedure 59 provides that appeals from such orders must be made within 14 days and that "failure to object in accordance with this rule waives a party's right to review." Fed. R. Crim. P. 59; *see United States v. Tooze*, 236 F.R.D. 442, 444 (D. Ariz. 2006)( The defendant has presented no good reason for not following this rule.

In *Tooze* the District Court judge thoroughly analyzed the interplay between the Rules Enabling Act, the Bail Reform Act and Rule 59. It concluded that Rule 59 applies, but that courts nevertheless retain discretion to consider arguments that

3

would otherwise be waived.    *Tooze*, 236 F.R.D. at 444-45. The Tenth Circuit was confronted with this same question in *United States v. Doby*, 928 F.3d 1199 (10th Cir. 2019), but did not provide a clear answer to the question of whether Rule 59 can be applied in the context of decisions under the Bail Reform Act. *See United States v. Harrod*, 2022 WL 168172 (W.D. Wash) (noting distinction.). *Doby* held that the language in Rule 59 stating that a district judge may "refer to a magistrate judge for determination any matter that does not dispose of a charge or defense" means that Rule 59 only applies when there has been a referral.    *Id.* at 1204. Here, there was a referral and Rule 59 should apply.

Since Rule 59 does apply, the Court must consider whether the defendant's arguments — which simply repackage the same request she made in June 2021 — are waived. For all of the reasons below, the court should exercise its discretion and refuse to review an order issued eight months ago, especially when there are no new material circumstances justifying a change

### III. The Defendant's Position is Inconsistent with the Text and Structure of the Bail Reform Act

The defendant's myopic focus on 18 U.S.C. § 3142(c) would allow one provision of the Bail Reform Act to override all others, allowing defendants to endlessly revisit and micromanage their conditions of release without any governing standard. The Court should reject such an approach, which would undermine the authority of magistrate judges and result in endless litigation that does nothing to resolve the larger matter.

4

Whiles 3142(c)(3) does state that a judicial officer "may at any time amend the order to impose "additional or different conditions of release," this language is not a free-wheeling invitation to change court orders based on *ipse dixit*. First, focusing on just this provision, the "commonsense canon of noscitur a sociis . . . counsels that a word is given more precise content by the neighboring words with which it is associated." *United States v. Williams*, 553 U.S. 285, 294 (2008). Additional means "more than is usual or expected." Miriam-Webster's Dictionary. The next word, "different " does not mean "fewer" or "less."  It means "partly or totally unlike in nature, form, or quality."  Miriam-Webster's Dictionary.  Read in context with "additional," this strongly suggests that once a court has concluded that someone is a flight risk and imposed conditions on release, Congress did not authorize the courts to pull back or lessen those restrictions without good reason.

This is reinforced by looking at the language of 3142(f), which specifically references 3142(c).  Section 3142(f) supposes that courts will have a hearing to hear evidence that will help them decide whether someone should be released, whether conditions can ensure an appearance and, if so, what those conditions should be. In other words, the structure of the act gives judges a framework for making decisions — it does not expect them to simply issue rulings without reason.

Once a decision is made, the Bail Reform Act recognizes the usual public interest in finality.  Section 3142(f)(2) — dovetailing with the 3142(c) reference at the very beginning of 3142(f) — explains that a judge can reopen a hearing to decide

whether to modify its ruling, but only "if the judicial officer finds that information exists that was not known to the movant at the time of the hearing and that has a material bearing on the issue of whether there are conditions of release that will reasonably assure the appearance of such person as required[.]"

Applying the standard in 3142(f)(2) is most consistent with the overall structure of the act and avoids the untenable conclusion that Congress authorized judges to make standardless changes to detention orders concerning defendants who had previously been found to be a flight risk or a danger to the community.

### IV. Courts have Consistently Rejected the Defendant's Argument

Paragraph 5 of the defendant's motion asserts that the Court applied "the wrong standard" when it considered this same request from the defendant in July, but the end of that paragraph contains no citations to the statute or other legal authority. For good reason: every reported decision the government can find explicitly rejects this argument.

Start with *United States v. Cisneros*, 328 F.3d 610 (10th Cir. 2003.). There, the Court explained that "by its terms" 3142(f):

> applies to reconsideration of a detention *or release order* by the same judicial officer who entered the initial order.   In addition, reconsideration is permissible under this section only when there is new information that would materially influence the judgment about whether there are *conditions of release* which will reasonably assure that the defendant will not flee and will not harm any other person or the community.

*Id* at 614 (emphasis added). *Cisneros* should be dispositive:   the defendant has not offered "new" information that is material. The fact that a defendant has done what

the law and a *court order* requires is not "new." Nor is it material: the obvious rejoinder is that the defendant has been compliant precisely because she knows that the chances of successfully fleeing are much lower with such intensive supervision.

Even if *Cisneros* were not dispositive, the Court should consider the persuasive authority rejecting the defendant's position. *See United States v. Johnson*, 2022 WL 375319, at *2 (D.N.J. Feb. 8, 2022) ("Courts in this District have construed this latter provision strictly and have found that the broad authority to amend conditions of pretrial release provided in Section 3142(c)(3) must be read in conjunction with the more circumscribed authority to reopen bail hearings on the basis of new information set forth in Section 3142(f)."); *United States v. Pequero*, 2021 WL 4811315, at *2 (W.D. Ky. Oct. 14, 2021) (concluding that discarding new information and materiality requirements of 3142(f) simply by reference to 3142(c)(3) is "untenable"); *Gay*, 2020 WL 5983880, at *2-3 (explaining why a motion to modify the conditions is a request to reconsider and reweigh all the factors a court considered at the original detention hearing and noting that without threshold showing required by 3142(f) "a Defendant could file endless petitions to modify his conditions — indeed, we are on round three in this case.").

As one district court in Arizona has explained:

There are very few proceedings in federal practice which encourage a party to be less than diligent in bringing forth all material evidence the first time a hearing is held. Generally, reconsideration of a decided matter based on the presentation of additional evidence requires good cause for the failure to present that evidence initially. *See, e.g.,* Fed. R. Civ. P. 60(b); *United States v. Oliver*, 683 F.2d 224 (7th Cir.1982) (failure to exercise diligence in locating

7

> witnesses before criminal trial precludes new trial based on newly discovered evidence). A rule that would not discourage a party for failing to acquire readily available evidence for presentation the first time is a rule that encourages piecemeal presentations. Judicial efficiency is not served by such a practice.

*United States v. Bowen*, 2007 WL 2220501, at *1-2 (D. Ariz. July 31, 2007) (quoting *United States v. Flores,* 856 F. Supp. 1400 (E.D.Cal.1994)).

### IV.     The Standard for Reopening the Detention Hearing

The law treats a court's findings regarding the risks posed by charged defendants with the seriousness they deserve: a defendant is not entitled to reopen the issue of his detention without good reason. Otherwise, continuous requests for release and repeated hearings would quickly overwhelm any substantive motions related to the crimes at issue. the law allows for the reopening of the detention hearing only if the court finds (1) that "information exists that was not known to the movant at the time of the hearing" (the "New Information" requirement) and (2) that the new information has a "material bearing on whether there are conditions of release" (the "Materiality Requirement") that will reasonably assure the defendant's appearance and the safety of others. 18 U.S.C. § 3142(f). These twin requirements should construed strictly. *United States v. Bothra*, 2020 WL 2611545, at *1 (6th Cir. 2020).

Section 3142 requires new *information*, not just new arguments about information that was already known and available to the defendant at the earlier hearing.  *See, e.g., United States v. Dillon*, 938 F.2d 1412, 1415 (1st Cir. 1991)

(concluding that testimony from family about facts already known as not new); *United States v. Hare*, 873 F.2d 796, 799 (5th Cir. 1989) (same); *United States v. Ward*, 235 F. Supp. 2d 1183, 1185 (N.D. Ok. 2002) (knowledge that witnesses are now willing to testify is not "new"); *cf United States v. Maloy*, 2020 WL 1333286, at *1 (D. Colo. March 23, 2020) (Wang, M.J.) (finding that government did not present new evidence where it did not seek appeal of initial release order and instead re-argued its case for detention).

The only thing new here is that the defendant has acquired a new attorney. The motion does not explain anything that wasn't known to the parties in February 2021 or July 2021. Instead, it simply says that she has complied with the Court's order. Def. Mot. at 4 ¶ 13. But compliance with the law and the court's order is a baseline expectation. It is never sufficient, by itself, to revisit the original finding regarding a risk of flight. *Hare*, 873 F.2d at 799 ("the fact that Defendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing"); *United States v. Kube*, 2020 WL 1984178, at *5 (E.D. Cal. April 27, 2020) ("The fact that Defendant has complied with his conditions of release is what allows him to remain out of custody and is not new information that has a material bearing on his conditions to reopen the detention hearing."

Reopening the detention hearing under the circumstances here — because the defendant is able to retain a new lawyer who then appeals a decision made 8

9

months earlier — creates the impression that merely retaining new counsel is sufficient to justify release. It rewards wealthy defendants who can afford to retain different counsel at different times, undermines the prior attorneys who are left wondering why their arguments received less consideration, undermines the magistrate judge whose opinion was unchallenged but is now being questioned without reason, and creates an appearance that new counsel is somehow receiving special consideration.

## V.     Legal Standard — the Bail Reform Act

For all of the reasons above, the defendant cannot meet the New Information and Materiality Requirements. Nevertheless, if the court does review the matter, it should apply the factors in the Bail Reform Act.

The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, authorizes the defendant's detention pending trial. The law presumes that some categories of defendants — such as those charged with crimes involving guns, violence, and drugs — should be detained. 18 U.S.C. § 3142(f)(1). There is no such presumption for cases like this one, where the defendant is charged with fraud. 18 U.S.C. § 3142(f). However, under 3142(f) (2) the judge presiding over a detention hearing is required to determine whether there are no conditions or combinations of conditions that will reasonably (1) assure the appearance of the person *and* (2) the safety of any other person and the community. Either of those risks is sufficient to impose detention or conditions on release, as set forth in § 3142(e), which repeats that the presiding

judge should detain a person who poses either of those risks. A finding of risk of flight must be supported by a preponderance of the evidence and a finding of danger to the community must be supported by clear and convincing evidence.    18 U.S.C. § 3142(f); *Cisneros*, 328 F.3d at 616.

The Bail Reform directs that four factors be considered in the detention analysis: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including, among other things, the person's family ties, financial resources, length of residence in the community, and whether the defendant was under supervision when he committed the alleged offense; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

**Nature and Circumstance of the Offense Charged**. A grand jury has charged the defendant with conspiring to defraud a company out of over $5 million and then launder those proceeds, and other appurtenant offenses. The conspiracy charges alone subject her to respective statutory maximums of 20 years. If convicted, the government estimates that the United States Sentencing Guidelines would put the offense level at approximately 27, which would recommend a sentence of 70-87 months' imprisonment. *See, e.g., United States v. Bruno*, 89 F. supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long . . . a defendant has stronger motives to flee.") (quoting *United States v. Iverson*, 2014 WL

11

5819815, at *4 (W.D.N.Y. Nov. 10, 2014)).

In or around August 2018, the defendant, with consultation and coordination with her codefendant, Michael Aaron Tew, began submitting fraudulent invoices to the Victim Company, which the Victim Company paid. Initially, the dollar amounts for the invoices were relatively small, but over time, the amounts demanded by each fraudulent invoice grew substantially. Between August 2018 and July 2020, as a result of this conspiracy to commit wire fraud, the Victim Company paid $5,053,878.50 either directly to Kimberley Tew or Michael Tew, or to third parties for their benefit. The fraud was perpetrated to pay outstanding and ongoing debts incurred by the defendant's immediate family as well as to finance the defendant's lifestyle

Over time, the conspirators used more sophisticated means to conceal the fraud.   For example, at the beginning of the scheme to defraud, the fraudulent invoices contained generic descriptions of services like consulting services or "service fee" but over time, those descriptions grew more specific.

The banking side of the fraud was intricate. Kimberly Tew and her codefendant Michael Tew maintained multiple bank accounts at multiple financial institutions; some they held in their individual names, and others were joint accounts.   Through these multiple bank accounts, they each made multiple transfers of funds that originated from the fraud against the Victim Company or its affiliates. On many occasions, those transfers led to several cash withdrawals in a single day from

12

accounts controlled by either the defendant or Michael Tew. After withdrawing cash from the proceeds of the fraud, the defendant and/or Michael Tew often deposited the aggregated amount of cash from that day or over a few days into Bitcoin ATMs, where they were able to deposit United States dollars in exchange for Bitcoin, either held in their own wallets or sent to third parties, many of whom were owed money.

During the early part of the conspiracy, when a bank that held accounts receiving payments from the Victim Company closed some or all of the defendant and/or Michael Tew's accounts, the defendant and Michael Tew then created multiple accounts at another credit union, of which Kimberley Tew was a member. When that credit union questioned Michael Tew about what appeared to be the payment of corporate funds into personal accounts, he, with coordination and consultation with Kimberley Tew, switched from an individual account to a business account to facilitate the ongoing receipt of payments from the Victim Company and its affiliates.

In short, the evidence shows that the defendant perpetrated a serious crime generating substantial proceeds that can now be used to finance flight. *See Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304 (S.D. Fl. 2017) (citing numerous cases in multiple jurisdictions across the United States holding that defendants with financial means to flee are flight risks).

**Weight of the Evidence**. The charges set forth a pattern of behavior in which the defendant used her financial and technological savvy to almost literally conjure fraudulent money out of thin air.   The defendant's crimes left behind a substantial

13

paper trail and required interaction with witnesses (from law enforcement and elsewhere) who are prepared to testify.   Because the conspirators used email and bank accounts to facilitate and track the success of their efforts to obtain money, those accounts provide an almost day-by-day chronology of her criminal conduct. The defendant has entered into a proffer agreement that substantially limits her ability to offer contradictory evidence at any trial. *See United States v. Shannon*, 803 F.3d 778, 781 (6th Cir. 2015) (permitting government to use defendant's proffer statements to rebut evidence and argument contradicting those statements); *United States v. Velez*, 354 F.3d 190, 194 (2d Cir. 2004) (enforcing proffer agreement to prevent defendant from offering evidence or argument contradicting statements in proffer).

**History and Characteristics and Ties to the Community**.   The defendant has ties to the community — her family is here. But her husband is a co-defendant who has his own incentives to flee and without the GPS monitor there is relatively little stopping the family from fleeing abroad or within the vast interior of the United States. Merely surrendering a passport is insufficient. *United States v. Wasendorf*, 2021 WL 4793366, at *3 (N.D. Iowa Oct. 9, 2012)("Although 'fleeing' is typically associated with fleeing ab[ro]ad, fugitives flee with the United States' [borders] successfully as well. Moreover, it is possible—although difficult—to flee abroad without a passport.").

Indeed, codefendant Michael Tew previously told a cooperating witness that the

family would flee. Below is a capture of Michael Tew's reaction to the discovery that he and Kimberley had been caught:



VI.     **Conclusion**

The defendant has not presented any materially new information rebutting, challenging or otherwise undermining the arguments and evidence set forth in any

of her prior efforts to limit the conditions of her release. She remains an experienced user of cryptocurrency with a sophisticated knowledge of banking and computer systems, as well as the means and resources necessary to make good on the family's suggestion that they may flee. There is no reason to reopen the ancillary issue of the conditions of her release and many reasons to focus, instead, on the substantive issues related to whether the defendant is guilty of the crimes with which she is charged.

        Respectfully submitted,

        COLE FINEGAN
        United States Attorney

By:   s/ *Bryan David Fields*
        Bryan David Fields
        Assistant U.S. Attorney
        United States Attorney's Office
        1801 California St., Suite 1600
        Denver, CO 80202
        (303) 454-0100
        Fax: (303) 454-0409
        Bryan.Fields3@usdoj.gov

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Bryan David Fields*
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that the speedy trial has been tolled pursuant to the Order of February 4, 2022, ECF NO. 174, and trial in this matter is set for **June 2, 2022**.

17

## **CERTIFICATE OF SERVICE**

      I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

                                        *s/ Bryan David Fields*
                                        United States Attorney's Office