**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

     Defendants.

---

**MOTION TO SUPPRESS EVIDENCE**

---

**TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................... 1

II.    THE CLASH BETWEEN THE STORED COMMUNICATIONS ACT AND THE FOURTH AMENDMENT ........................................................................... 2

    A.   Distinction Between the Fourth Amendment's Probable Cause Standard and the SCA's Specific and Articulable Facts Standard. .................................................................... 2

    B.   The Stored Communications Act and Technology ............................................ 4

III.    THE PROVISION OF THE SCA THAT ALLOWS THE GOVERNMENT TO OBTAIN STORED COMMUNICATIONS WITHOUT A SEARCH WARRANT IS UNCONSTITUTIONAL ............................................................................... 6

    A.   Warrantless § 2703(d) Orders are Unconstitutional Under the Reasoning of *Carpenter v. United States*. ....................................................................................... 6

    B.   Warrantless § 2703(d) Orders are Unconstitutional Under the Seminal Case *United States v. Warshak* ............................................................................................ 8

IV.    ANALYSIS OF ACCOUNT SEIZURES UTILIZING ORDERS AND SEARCH WARRANTS ............................................................................................. 9

    A.   Information From Apple ID Email Accounts  (kley@me.com and kley@icloud.com.A 12

       1.  Order # 1, 20-sw-00800-KLM (7/10/20) ........................................................ 12

       2.  Order #2, 20-sw-00801-KLM (7/10/20) ........................................................ 13

       3.  Order #3, 20-sw-00940-STV (8/11/20) ......................................................... 13

       4.  Search Warrant #1, 20-sw-1115-SKC (9/22/20) ............................................ 14

         a. Lack of Probable Cause ................................................................. 14

       b. Lack of particularity ..................................................................................... 18

       c. Exceeding authority in executing the search warrant ................................... 19

    B.   AT&T - (917) 685-1312 and (917) 669-7473 .................................................... 19

      1. Order #4, 20-sw-00761-KLM (7/6/20) .......................................................... 19

      2. Search Warrant #2, 20-sw-00773-KLM (7/7/20) ........................................... 20

       a. Lack of Probable Cause ............................................................................... 20

       b. Lack of particularity .................................................................................... 21

    C.   GOOGLE EMAIL - chrismcn@gmail.com and meyersconsultinggroup@gmail.com.... 22

      1. Order # 5, 20-sw-01250-MEH (10/20/20) ..................................................... 22

      2. Search Warrant #3, 20-sw-01522-NWY (12/23/20) chrismcn@gmail.com .................. 24

       a. Lack of Probable Cause ............................................................................... 24

       b. Lack of particularity .................................................................................... 25

       c. Exceeding authority in executing the search warrant ................................... 25

      2. Search Warrant # 4, 20-sw-01532-NYW (12/23/20) ...................................... 26

      (meyersconsuhinggroupinc@gmail.com) ........................................................... 26

       a. Lack of Probable Cause ............................................................................... 26

       b. Lack of particularity .................................................................................... 27

       c. Exceeding authority in executing the search warrant ................................... 27

    E.   GOOGLE EMAIL - political.media.wdc@gmail.com ...................................... 27

      1. Order # 6, 20-sw-00768-KLM (7/6/20) ........................................................ 27

      2. Search Warrant #5, 20-sw-01533-NYW (12/23/20) ....................................... 28

       a. Lack of Probable Cause ............................................................................... 28

       b. Lack of particularity .................................................................................... 29

       c. Exceeding authority in executing the search warrant ................................... 29

V.   ANALYSIS OF ACCOUNT SEIZURES HERE – ACCOUNTS UTILIZING ORDERS
ONLY. ............................................................................................................................. 29

    A.   FACEBOOK EMAIL ACCOUNTS - kimberley.vertanen@gmailcom and
vertanen@gmailcom ............................................................................................. 29

      1. Order # 7, 20-sw-1142-SKC (9/25/20) ......................................................... 29

    B.   GODADDY EMAIL ACCOUNTS - accounting@globalfuel.co mtew@globalfuel.co
30

      1. Order # 8, 20-sw-00762-KLM (7/6/20) ........................................................ 30

    C.   GO DADDY EMAIL - mtew@sandhillrp.com .................................................. 31

      1. Order # 9, 20-sw-00840-KLM (7/6/20) ........................................................ 31

    D.   GOOGLE CELL NUMBER – (469) 319-0152 ................................................. 31

1.  Order # 10, 20-sw-00835-NYW (7/17/20) ...................................................... 31

2.  Order #11, 20-sw-1137-SKC (9/24/20) ....................................................... 32

E.   GOOGLE EMAIL ACCOUNTS - 12 Gmail accounts...................................... 33

1.  Order # 12, 20-sw-00802-KLM (7/10/20) ..................................................... 33

F.   GOOGLE EMAIL ACCOUNTS -  lward99@gmail.com and meyers.mike6l5@gmail.com ...................................................................... 33

1.  Order #13, 20-sw-00793-KLM (7/9/20) ....................................................... 33

G.   VERIZON CELL PHONE - (585) 737-1709 .................................................. 34

1.  Order #14, 20-sw-00760-KLM (7/6/20) ....................................................... 34

IV.   CONCLUSION.................................................................................................. 34

STATEMENT CONCERNING SPEEDY TRIAL.............................................................. 35

CERTIFICATE OF COMPLIANCE................................................................................. 36

APPENDIX (List of Exhibits) ......................................................................................... 37

Order # 9, 20-sw-00840-KLM (7/6/20) ................................................................. 37

Defendants, Michael Aaron Tew ("Mr. Tew") and Kimberley Ann Tew ("Ms. Tew") (collectively Mr. and Ms. Tew), by their counsel of record, Peter R. Bornstein, moves for an order suppressing evidence derived from searches and seizures utilizing provisions of the Stored Communications Act, and for reasons states:

## I.        INTRODUCTION

In this case the Government obtained sought and obtained judicial authority to seize stored communications records and related data from 13 separate electronic service providers ("ESP") accounts ("accounts" or "ESP accounts") such as Apple, AT&T and Google that the Government claims are associated with the Defendants, Mr. and Ms. Tew. The Government obtained the records using procedures in the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713 -- judicial orders and search warrants. In all 13 instances, the Government first obtained records through the use of judicial orders issued by a magistrate pursuant to § 2703(d) of the SCA ("§ 2703 Orders").  Additionally, for 5 of the 13 accounts, in addition to obtaining records as a result of orders, the Government obtained additional evidence by executing search warrants pursuant to § 2703(a) of the SCA.

The § 2703 Orders were all issued upon non-sworn applications filed by an AUSA. The search warrants were all issued upon applications that contained an affidavit signed by either an FBI or IRS agent. Much of the verbiage in the applications, orders, and warrants is identical. All of the orders are identical but for the name of the account. Each order includes an "Attachment A," which is an identical list of information about the respective account the ESP was required to disclose to the Government. Each of the search warrants required the accounts provider to give the Government the actual contents of such communications, as well as other information associated with the accounts.

Movants argue that evidence derived from the searches and seizures discussed below should be suppressed for several reasons. *First*, this motion argues that all of the orders for each of the 13 accounts are invalid because the provision in the SCA allowing

1

the Government to obtain communication records by court order, rather than by search warrant based upon affidavit and probable cause, is unconstitutional. *Second*, this motion argues alternatively that, even if this Court upholds the constitutionality of the §2703(d) orders, each of the orders is invalid under the SCA's lesser "specific and articulable facts standard. *Third*, Defendants argue that the search warrants are invalid because they are not properly based upon a showing of probable cause, because they are overbroad, and because the Government exceeded the authority granted by the warrant. *Finally*, by obtaining and exercising successive § 2703 Orders and search warrants that build on information obtained from prior illegal searches and seizures, the illegality is compounded by each additional order and search warrant.

Because the legal issues relating to each of the accounts, orders, and search warrants overlap, this motion will begin with an overview of the pertinent law. Next, the orders and search warrants will be analyzed account by account (e.g., AT&T, Google, etc.). And, as noted above, since search warrants were also obtained for five of the 13 accounts, the accounts in which information was obtained by a combination of orders and search warrants will be analyzed first, followed by an analysis of the remaining eight accounts where information was obtained by orders alone.

Attached to this motion is an Appendix listing the exhibits.

## II.     THE CLASH BETWEEN THE STORED COMMUNICATIONS ACT AND THE FOURTH AMENDMENT

### A.     Distinction Between the Fourth Amendment's Probable Cause Standard and the SCA's Specific and Articulable Facts Standard.

Under the SCA, the level of privacy protections arbitrarily depends on how long an email has been in storage, and specifically whether it has been in storage for more than 180 days. Contents of an electronic communication in storage for less than 180 days cannot be accessed "only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure . . . by a court of competent jurisdiction." 18 U.S.C. § 2703(a). When emails have been in storage for more than 180 days, the

2

government may obtain the contents of electronic communications by obtaining a court order pursuant to § 2703(d). *See* U.S.C. § 2703(a) & (b). Section 2703(d) orders only need to satisfy the less-stringent "specific and articulable facts" standard.[1]

The "articulable and specific facts" standard of the SCA is less demanding than the Fourth Amendment's probable cause standard. To be valid under the Fourth Amendment, a search warrant must be supported by a showing of probable cause. *Steagald v. United States*, 451 U.S. 204, 213 (1981). The affidavit in support of a search warrant "must provide a 'substantial basis' to conclude that 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *United States v. Long*, 774 F.3d 653, 658 (10th Cir. 2014) (quoting *United States v. Nolan*, 199 F.3d 1180, 1182 (10th Cir.1999) (quoting *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

Where an affidavit is merely a "bare bones" recitation of conclusory statements by the affiant, the issuing magistrate would not have a substantial basis for finding probable cause. *United States v. Caswell*, 436 F.3d 894, 897-98 (8th Cir. 2006). *See also Illinois v. Gates*, 462 U.S. at 239 (1983) (holding an affidavit "must provide the magistrate with a substantial basis for determining the existence of probable cause" and that "wholly conclusory" statements about the officer's beliefs are insufficient); *United States v. Mora*, 989 F.3d 794, 801 (10th Cir. 2021) ("[r]ambling boilerplate recitations designed to meet all law enforcement needs do not produce probable cause") (quoting *United States v. Zimmerman*, 277 F.3d 426, 433 (3d Cir. 2002)); *United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996) (holding that an affidavit did not support the issuance of search warrant for the defendant's home because the affidavit's "combined boilerplate language and minimal handwritten information provide few, if any, particularized facts of an

---

[1] *See* 18 U.S.C. § 2703(d) ("A court order for disclosure under subsection (b) or (c) may be issued by any court that is a court of competent jurisdiction and shall issue only if the governmental entity offers specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation").

incriminating nature and little more than conclusory statements of affiant's belief that probable cause existed").

However, the SCA's "specific and articulable facts" standard has been described as an intermediate standard: "higher than that required for a subpoena but lower than that of probable cause.'" *In re Applications of the United States of Am. for an Ord. Pursuant to 18 U.S.C. § 2703(d),* 206 F. Supp. 3d 454, 455–56 (D.D.C. 2016) (internal quotation marks omitted). As with the probable cause standard, the "specific and articulable facts" standard "does not permit . . . disclosure based on "conclusory" government statements." *Id. See also United States v. Moreno-Vasquez*, No. CR18549TUCCKJLAB, 2020 WL 1164970, at *3 (D. Ariz. Mar. 11, 2020) (granting motion to suppress, holding that "while the government articulated how the information might lead the agents to believe that the attainment of the subscriber information would assist in the investigation, the government did not articulate specific facts as to how the government obtained the information it did have or why it reached its conclusion that Moreno-Vasquez was a liquid methamphetamine trafficker who organized the shipment of liquid methamphetamine from Mexico to Georgia").

### B.  The Stored Communications Act and Technology

The SCA was enacted in 1986, "before the advent of the Internet, as part of the broader Electronic Communications Privacy Act, to extend to electronic records privacy protections analogous to those provided by the Fourth Amendment." Symeon C. Symeonides, *Choice of Law in the American Courts in 2016: Thirtieth Annual Survey*, 65 Am. J. Comp. L. 1, 11 (2017). Despite technological advances since its enactment, the SCA has frozen "into the law the understandings of computer network use as of 1986." Orin S. Kerr, *A User's Guide to the Stored Communications Act, and A Legislator's Guide*

*to Amending It*, 72 Geo. Wash. L. Rev. 1208, 1214 (2004).[2] As a result, the SCA has been called "insufficient and obsolete and must be updated to deal with modern challenges like cloud-based computing." Laurie Buchan Serafino, *"I Know My Rights, So You Go'n Need A Warrant for That": The Fourth Amendment, Riley's Impact, and Warrantless Searches of Third-Party Clouds*, 19 Berkeley J. Crim. L. 154, 185 (2014).

The growth of technology since the SCA's enactment seemingly outpaces the law's attempt to keep up. *See United States v. Carey*, 172 F.3d 1268, 1275 (10th Cir. 1999) (finding that "[r]elying on analogies to closed containers or file cabinets may lead courts to oversimplify a complex area of Fourth Amendment doctrines and ignore the realities of massive modern computer storage.") (internal quotation marks omitted). The Supreme Court has begun addressing the Fourth Amendment's application to technological changes. In *Riley v. California*, 573 U.S. 373 (2014), recognizing that mobile phones and smartphones "are in fact minicomputers that also happen to have the capacity to be used as a telephone," *id.* at 393, the Court held that police may not access digital information from any device seized from an individual during a lawful arrest without a warrant, absent exigent circumstances. *Id.* at 403. In *City of Ontario, California v. Quon*, 560 U.S. 746, 759-60 (2010), the Court indicated that it might be ready to find a reasonable expectation of privacy in internet service provider ("ISP") systems.

More recently, in *Carpenter v. United States*, 585 U.S. ____, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018), the Court held that a cell phone subscriber has a legitimate expectation of privacy, for Fourth Amendment purposes, in the record of his physical movements as captured through cell-site location information. In the wake of *Carpenter*, the constitutionality of seizing stored communication records by a § 2703(d), rather than by a search warrant issued upon an affidavit showing probable cause, is doubtful.

---

[2] Kerr noted that "[d]espite its obvious importance, the statute remains poorly understood. Courts, legislators, and even legal scholars have had a very hard time making sense of the SCA." *Id.*, 72 Geo. Wash. L. Rev. at 1208.

III.   **THE PROVISION OF THE SCA THAT ALLOWS THE GOVERNMENT TO OBTAIN STORED COMMUNICATIONS WITHOUT A SEARCH WARRANT IS UNCONSTITUTIONAL**

A.   **Warrantless § 2703(d) Orders are Unconstitutional Under the Reasoning of *Carpenter v. United States*.**

In *Carpenter,* the Government obtained three orders from magistrate judges to obtain cell site location information ("CSLI") pertaining to three cell phones. Execution of the orders allowed the government to obtain "transactional records" including the date and time of calls, and the approximate location where calls began and ended based on their connections to cell towers. The orders were issued pursuant to § 2703(d)'s "specific and articulatable facts" standard.

The majority in *Carpenter* acknowledged that the Fourth Amendment protects not only property interests, but also reasonable expectations of privacy: "When an individual seeks to preserve something as private, and his expectation of privacy is one that society is prepared to recognize as reasonable, we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." *Carpenter*, 138 S. Ct. at 2213 (internal quotation marks and citation omitted). (internal quotation marks and citation omitted). The Court declined to extend the "third-party doctrine" previously recognized in *Smith v. Maryland*, 442 U.S. 735, 743–44 (1979) and *United States v. Miller*, 425 U.S. 435, 440–442 (1976), stressing that cell-site location "[m]uch like GPS tracking of a vehicle, cell phone location information is detailed, encyclopedic, and effortlessly compiled. *Carpenter*, 138 S. Ct. at 2216. The Court further observed that "historical cell-site records present even greater privacy concerns than the GPS monitoring of a vehicle" because:

> a cell phone—almost a "feature of human anatomy," tracks nearly exactly the movements of its owner. While individuals regularly leave their vehicles, they compulsively carry cell phones with them all the time. A cell phone faithfully follows its owner beyond public thoroughfares and into private residences, doctor's offices, political headquarters, and other potentially revealing locales.

Id. at 2206 (internal citation omitted; quoting *Riley*, 573 U.S. at 385).

The account information required to be disclosed in the § 2703(d) Orders here are no less intrusive than the SCLI data obtained in *Carpenter*. The Attachment A to each Order in this case required the provider to disclose the following transactional information:

A.   The following information about the customers or subscribers of the Account:
  1.   Names (including subscriber names, user names, and screen names);
  2.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);
  3.   Local and long distance telephone connection records;
  4.   Records of session times and durations, and the temporarily assigned network addresses (such as Internet Proto co 1 ("IP") addresses) associated with those sessions;
  5.   Length of service (including start date) and types of service utilized;
  6.   Telephone or instrument numbers (including MAC addresses, Electronic   Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI)) [sic];
  7.   Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses (including carrier grade natting addresses or ports)); and
  8.   Means and source of payment for such service (including any credit card or bank account number) and billing records.
B.   All records and other information (not including the contents of communications) relating to the Account, including:
  1.   Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, time, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;
  2.   Information about each communication sent or received by the Account, including the date and time of the communication, the method of   communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);
  3.   Information about all accounts or other identifiers that are linked to the Account including, without limitation, links by cookies, creation IP address, recovery email, telephone number, or other identifiers ("Linked Account"), including subscriber information (Part II.A of this Attachment) for each Linked Account; and
  4.   All listing of all services being used by the Account.
  5.   Information about all devices connected to the Account.

While *Carpenter* involved tracking of a person's physical movements, the 2703(d) Orders here similarly involve tracking of a person's digital life moments including: every

telephone number called; every website visited; the date and time of all telephone calls or emails; information about the owners and users of the account; the date, time, and duration of every connection made to the account; the email addresses and/or telephone numbers for all communications occurring in connection with each account; information about linked accounts; the services used; and the devices connected to the account.

### B.   Warrantless § 2703(d) Orders are Unconstitutional Under the Seminal Case *United States v. Warshak*.

Eight years before *Capenter*, the Sixth Circuit issued the leading case on the constitutionality of using the SCA to obtain email information without a warrant. *See United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010).  In *Warshak*, relying on § 2703 of the SCA, law enforcement agents obtained a subpoena compelling Warshak's internet service provider ("ISP") to produce the contents of approximately 27,000 emails sent or received from Warshak's account. Warshak moved to suppress, arguing that the government's warrantless search and seizure of his emails violated his Fourth Amendment rights. *Warshak*, 631 F.3d at 282.  The Sixth Circuit agreed with Warshak and held that, "[g]iven the fundamental similarities between email and traditional forms of communication, it would defy common sense to afford emails lesser Fourth Amendment protection." *Id*. at 285-86. Recognizing that an ISP is "the functional equivalent of a post office or telephone company," the court held that "the government cannot compel a commercial ISP to turn over the contents of email without triggering the Fourth Amendment." *Id*. at 286. Rejecting the potential applicability of the third-party doctrine enunciated in *United States v. Miller*, 425 U.S. 435 (1976), the Sixth Circuit held that the "mere *ability*" of an ISP to access the content of emails is not "sufficient to extinguish a reasonable expectation of privacy." *Id*. at 286-87 (emphasis in original). The Sixth Circuit distinguished *Miller* on the grounds that Warshak's ISP, unlike the bank in *Miller*, was an intermediary rather than the intended recipient of the material in question. *Id*. The court concluded as follows:

8

Accordingly, we hold that a subscriber enjoys a reasonable expectation of privacy in the contents of emails that are stored with, or sent or received through, a commercial ISP.  The government may not compel a commercial ISP to turn over the contents of a subscriber's emails without first obtaining a warrant based on probable cause. Therefore, because they did not obtain a warrant, the government agents violated the Fourth Amendment when they obtained the contents of Warshak's emails. Moreover, *to the extent that the SCA purports to permit the government to obtain such emails warrantlessly, the SCA is unconstitutional*.

*Id.* at 288 (6th Cir. 2010) (emphasis supplied; internal citations and quotation marks omitted).

*Warshak* was cited by both the majority and dissenting opinions in Carpenter. *See Carpenter*, 138 S. Ct. 2222 (Roberts, C.J.), and *id.* at 2230 (Alito, J., dissenting). Cases within the Tenth Circuit have also recognized *Warshak. See In the Matter of Search of Info. Associated with Email Addresses Stored at Premises Controlled by the Microsoft Corp.,* 212 F. Supp. 3d 1023, 1034 (D. Kan. 2016) (citing *Warshak* for the proposition that "[i]n considering the email context specifically, courts have held an individual enjoys a right to privacy in his or her emails"); *In re Applications for Search Warrants for Info. Associated with Target Email Accts./Skype Accts*., No. 13-MJ-8163-JPO, 2013 WL 4647554, at *4 (D. Kan. Aug. 27, 2013) (finding the rationale set forth in *Warshak* persuasive, holding that "an individual has a reasonable expectation of privacy in emails or faxes stored with, sent to, or received thorough an electronic communications service provider"); *In re Applications for Search Warrants for Info. Associated with Target Email Address*, No. 12-MJ-8119-DJW, 2012 WL 4383917, at *5 (D. Kan. Sept. 21, 2012) (same).

### IV.    ANALYSIS OF ACCOUNT SEIZURES UTILIZING ORDERS AND SEARCH WARRANTS

Defendants contend, as discussed above in Section III, *supra*, that the provision in 18 U.S.C. § 2703 that permits the Government to seize transactional email and cellular telephone records, by means of a mere court order, rather than a search warrant sworn under oath which establishes probable cause, is unconstitutional. Alternatively, Mr. and

Ms. Tew assert that all of the § 2703(d) orders issued in this case fail the statute's lesser, "specific and articulable facts" standard.

Each Order was issued based upon an unsworn Application signed an AUSA. Each Application and resulting § 2703(d) Order is of the cookie-cutter variety. Each Application contains three sections: a first boilerplate section called "Legal Background," followed by section called "The Relevant Facts," followed by a third boilerplate section called "Request for Order." Additionally, most of the stated "relevant facts" are repeated in all of the Applications for § 2703(d) Orders. Because in every instance the Applications consist almost entirely of mere summaries and conclusions by the AUSA, they fall short of establishing "specific and articulable facts showing that there are reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought, are relevant and material to an ongoing criminal investigation." *See* 18 U.S.C. § 2703(d).

The five Search Warrants to obtain electronic communications in this case were issued upon an application that included an affidavit of either an FBI or IRS agent. The applications for each of the search warrants contained an Attachment A (description of property to be searched), Attachment B (description of particular things to be seized), and an Affidavit. The respective Search Warrants contain the same Attachments A and B. Each of the five Search Warrants here failed to establish probable cause because the underlying affidavits, once again, were largely comprised of summaries and conclusions instead of actual facts sufficient to establish probable cause.

Moreover, the search warrants were all overbroad and lack particularity seeking contents of communications, regardless of whether they are related to the offenses under investigation. They also delegate to the respective ISPs the duty of determining what information in the possession of the ISP is relevant to the investigation or is covered by the scope of the warrant. Furthermore, the Government exceeded the authority

10

authorized by each Search Warrant because it obtained communications and records not authorized by the magistrate judge.

The cumulative effect of incorporating illegally seized evidence in successive § 2703(d) orders and search warrants has a downstream effect. That is, the Government obtains information from an illegal § 2703(d) order to obtain further information, which is then used in a later illegal and overbroad to obtain successive § 2703(d) order or search warrant, and so on. Repeatedly using illegally seized evidence as a predicate to seize further evidence, exponentially multiplies the illegality of the seizures.

Where a search warrant is overbroad, courts often employ the severability doctrine, "whereby the invalid parts of a warrant are severed from the valid parts" such that "suppression is only required for those items seized pursuant to the invalid parts." *Cassady v. Goering*, 567 F.3d 628, 637 (10th Cir. 2009) (citing *See United States v. Brown*, 984 F.2d 1074, 1077 (10th Cir.1993) (adopting severability doctrine); *United States v. Sells*, 463 F.3d 1148, 1153 (10th Cir.2006) (applying severability doctrine); and *United States v. Naugle*, 997 F.2d 819, 822 (10th Cir.1993) (same)). The Tenth Circuit has also recognized that some warrants are "so overbroad that it is functionally impossible to isolate and sever the acceptable portion." *Cassady*, 567 F.3d at 637. In such a case, "[t]otal suppression may still be required even where a part of the warrant is valid (and distinguishable) if the invalid portions so predominate the warrant that the warrant in essence authorizes a general, exploratory rummaging in a person's belongings." *Id.* (quoting *Sells*, 463 F.3d at 1158). Such is the case here because each of the successive § 2703(d) Orders and Search Warrants here utilize illegally obtained information to repeatedly and illegally obtain more and more information.

The search warrants here also suffer from another fatal flaw -- improper delegation of authority. Although the search warrants purport to be directed to any authorized law enforcement officer, in fact they each direct the account provider to act as the Government's agent. The search warrants require Apple, AT&T, and Google to  search

their own records for information associated with the account or telephone numbers in question and determine what is relevant to seize.

Equally important, the Government here exceeded its authority in executing the search warrants. Discovery produced to date reveals that in executing the Search Warrants here the Government obtained volumes of sensitive, personal, and privileged communications entirely unrelated to the Government's investigation. Examples are attached to this Motion, including: medical-genetic test results, medical test records, photographs of children, personal husband-wife communications from 2013, doctor-patient communications, accountant communications from 2015, emails from 2008 and 2009, and student loan communications. ***See* Exhibits T-BB**. The Government has retained these materials, as there are no orders requiring that non-criminal communications be returned.

### A.   Information From Apple ID Email Accounts (kley@me.com and kley@icloud.com.A

### 1.  Order # 1, 20-sw-00800-KLM (7/10/20)

This Order was issued on July 10, 2010 upon an Application with the same date. **See Exhibit A** (Application and Order) It seeks records between the period July 1, 2018 to July 10,2020. Paragraph 1 of the "Relevant Facts" states that the Government is investigating criminal activity involving wire fraud. Paragraph 2 summarily describes Mr. Tew's employment status as a contractor who worked for National Air Cargo ("NAC"). This paragraph also describes, in summary fashion, that Mr. Tew was fired for unauthorized use of a corporate credit card. Paragraph 3-5 again summarily relate that three companies named Global Fuel Logistics, Arrow Maintenance Resources, and Political Media submitted fraudulent invoices to NAC and that NAC made payments into accounts owned or controlled by Mr. Tew and, sometimes, Ms. Tew. But these allegations are mere conclusions; the Application fails to recite any underlying data or facts upon which these conclusions were based. Similarly, ¶ 6 describes that "NAC's co-owner Chris Alf was unaware of the fact that payments were being made to accounts "either directly

owned by Mr. or Ms. Tew," but once again, there is no factual basis to support this conclusion. Paragraph 7 states, without supporting facts, that during the Government's investigation the target email address, klew@me.com, "has been associated with financial accounts or transactions controlled, directly or indirectly," by Mr. and Ms. Tew. The final paragraph, ¶ 8, merely states that the records sought "are relevant and material to the investigation because such records ***may*** detail the scope and execution of the fraud" and other matters. (emphasis added).

The "Relevant Facts" section of the Application consists only of summaries and conclusions, without a single fact upon which these summaries and conclusions are based. Moreover, the Government's statement that the records "may" disclose evidence of criminal wrongdoing demonstrates that the Application and resulting Order are not based upon probability at all, but rather, only possibility, conjecture and speculation. *See, e.g., 3E Mobile, LLC v. Glob. Cellular, Inc*., 121 F. Supp. 3d 106, 110 (D.D.C. 2015) ("'may' is defined as "a possibility") (citing Black's Law Dictionary (8th Ed.2004)).

### 2.  Order # 2, 20-sw-00801-KLM (7/10/20)

This Application and Order, also dated July 7, 2020, seek transactional records for a different Apple email account, kley@icloud.com. **See Exhibit B** (Application and Order). It seeks records from the same time period as Exhibit A. Other than a difference in numbering convention, the Application and Order are identical to the Application and Order for the klew@me.com Apple account discussed in the previous section.

### 3.  Order #3, 20-sw-00940-STV (8/11/20)

This Application and Order, both dated August 11, 2020, sought and required production of transactional records pertaining to the Apple klew@me.com account for the time period of January 1, 2018 to August 10, 2020. ***See*** Exhibit C (Application and Order) They contain the same verbiage as the prior two Apple § 2703(d) Applications and Orders, except that the date range is expanded. It contains additional "facts" that are all summaries and conclusions. For example, ¶ 7 of the Application provides addresses for

GFL, AMR, and PM, and identifies three other entities that supposedly tendered invoices to receive payments from NAC. Paragraph 11 makes the unsupported conclusion that:

> Based on our investigation to date, TEW and his wife K. TEW maintained a complex and ever-revolving network of bank accounts into which the NAC funds were deposited. Once the NAC funds were deposited, those funds, in large part or in their entirety, were either withdrawn in cash or otherwise wired or transferred to other accounts and often, ultimately, into various cryptocurrency exchanges. Many of the cash amounts withdrawn, often with multiple cash withdrawals a day by M. TEW and sometimes by K. TEW, were then deposited into Bitcoin ATMs like those operated by Digital Vending Solutions d/b/a XBTeller and Digital Mint. M. TEW and K. TEW also used other Bitcoin ATM vendors.

Paragraph 12 adds, "according to Mr. Tew," some of the proceeds from NAC were used to finance Ms. Tew's gambling or, in part, to pay back individuals who loaned money to Ms. Tew. This is the only fact in the Application that is attributed to any source, but it, combined with the oft-repeated summaries and conclusions, does not meet the "specific and articulable facts" standard of 18 U.S.C. § 2703.

### 4.  Search Warrant #1, 20-sw-1115-SKC (9/22/20)

The Application, Affidavit, and resulting Search warrant for the information associated with the Apple ID account [kley@me.com](mailto:kley@me.com) authorizes the seizure of records originating between May 1, 2018 to September 17, 2020. **See Exhibit D** (Application, Affidavit, and Search Warrant). As with all of Search Warrants for stored electronic communications here, this Warrant is deficient for several reasons. *First*, the Affidavit fails to establish probable cause. *Second*, the Search Warranty is overbroad and lacks particularity. *Third*, in executing the Search Warrant, the Government exceeded its authority.

#### a. Lack of Probable Cause

Excision of the Affidavit's summary information, its unsupported conclusions, as well as information that is the fruit of the unconstitutional previously issued § 2703(d) Orders, renders the Affidavit a slim reed that falls short of establishing probable cause. The Affidavit was sworn by FBI SA Sarah Anderson. The first six paragraphs of the

14

Affidavit describe information about the affiant and legal jurisdiction for the requested warrant. It then turns to a general discussion of cryptocurrency that does not establish any nexus to the particulars of the investigation here. *Id*. ¶¶ 7-10. The meat of the Affidavit, the "Probable Cause" section, spans ¶¶ 11-68, largely consists of summaries and other information that can only be characterized as the fruit of information learned in the prior three § 2703(d) Orders for Apple accounts, the eight § 2703(d) for other accounts, and the June 7, 2020 Search Warrants for two AT&T cell phone numbers that are discussed below.

Paragraphs 11-29 of the Affidavit purport to describe "The Parties Involved in the Scheme." This Section of the Affidavit contains a plethora of summary information and conclusions without providing details concerning the source of such information. *See* ¶¶ 11, 12, 15, 16, 17, 25. It also discusses statements attributed to Mr. Tew and others, without revealing the particulars of such statements, such as whom they were made to, the date of the statements, and the circumstances under which the statements were obtained. *See* ¶ 4 (co-owner of National Air Cargo ("NAC"), Christopher Alf, and Director of Accounting Abby Schwartz); ¶¶ 18, 19, 20, 21 (Michael Meyers); ¶¶ 23, 24, 26 (Jonathon Yioulos). At ¶ 13, the Affidavit states that in an interview with law enforcement officers that occurred, on an undisclosed location and date, during July 2020, Mr. Tew stated that he traded cryptocurrency, but that statement does not link him to any criminal activity. Similarly, ¶ 22 states that at an unknown time Mr. Tew related that he met Meyers in person one time and communicated with him using the targeted email account, kley@me.com.

Paragraphs 27-29 recites information that could only have been obtained from the previous § 2703(d) Orders, from AT&T and Apple, including: ¶ 27 (AT&T subscriber information about the phone number 917-446-2046 associated with Kimberly A. Vertanen (aka Defendant Kimberley Tew), located at 3222 E. 1st Ave., Apt. 228, Denver, CO 80206); ¶¶ 28-29 (information about the foregoing telephone number and target

15

email account, and Apple record showing there were approximately 975 iTunes transactions on the target email account, and the IP addresses associated with the account).

The next section, ¶¶ 30-41, purports to describe: "Some of the Financial Accounts Associated with Defendant Kimberly Tew." Paragraph 30 once again relates information about the use of bitcoins attributed to Mr. Tew and Ms. Tew without detailing the circumstances of the statements. Paragraph 30 also contains summaries of summaries of text messages apparently obtained from one or more of the prior § 2703(d) Orders. Paragraph 31 discusses information attributed to Mr. Tew about his belief that Kimberly Tew needed money for gambling and that, in the words of SA Anderson "some of the proceeds of the fraud against NAC" were used to finance the gambling and payback individuals who loaned Ms. Tew cryptocurrency. The alleged "fraud" is not described.

Paragraphs 32-34 once again provide summary information that the Government only could have obtained from prior § 2703(d) Orders and/or the prior AT&T Search Warrant issued on July 6, 2020.[3] This information includes exhaustive information about Kimberly Tew's financial accounts, including account numbers, billing records, and the date accounts were opened. *Id.* Similarly, ¶¶ 35-40 contain additional information that is fruit of the poisonous tree because it could only have been obtained from prior § 2703(d) Orders. *See* ¶ 35 (information about the kley@iCloud.com email account); ¶ 36 (information about Kimberly Tew's Google payments and billing ID, including the date it was created and active); ¶ 37 (other accounts associated with Kimberly Tew's email address vtleycap@gmail.com as well as a Google Payments Billing ID and Coinbase user ID associated with the account, and the date the accounts were created and active); ¶ 38 (information about Kimberly Tew's email address, kleytew@gmail.com, as well as a Google Payments Billing ID and Coinbase user ID associated with the account, and the

---

[3] Moreover, if this information came from other sources such as witness interviews, the magistrate was not so informed.

date the accounts were created and active); ¶ 39 (Kimberly Tew's email address, 10nineprojects@gmail.com, a Google Payments Billing ID and Coinbase user ID associated with the account, and the date the accounts were created and active); ¶ 40 (information about Kimberly Tew's Navy Federal Credit Union ("NFCU") account associated with the target email address, including multiple account numbers, the unsupported conclusion that "[a]ll or most of the accounts received fraudulent payments from NAC, and the dates Ms. Tew was a member of the credit union). Finally, ¶ 41 summarily relates that on July 28, 2020, Mr. Tew advised that both he and Ms. Tew accessed fraudulent proceeds from NAC in a variety of bank accounts, without any information tying the bank accounts to any of the accounts discussed above, or a nexus between the statement and the facts under investigation.

The next section, ¶¶ 42-56, is entitled "Example Text Communications Related to Financial Transactions," and describes text messages that law enforcement officers purportedly viewed on Mr. Tew's phone when the officers met Mr. Tew on July 28, 2020. This section contains information that must've been obtained by such prior Orders and/or Search Warrants. *See* ¶ 43 (describing records from an American Express account associated with Ms. Tew), ¶ 53 (confirmation from Apple that backup of photo stream was enabled for the target email account). Although this section of the Affidavit does describe text messages relating to cryptocurrency transactions involving Mr. Tew and Ms. Tew, it provides no nexus between such transactions and any fraudulent scheme alleged.

The Affidavit's next section is called "Financial Transactions with M. Mora and M. Meyers." (*see id*. ¶¶ 57-64) It is simply a summary and does not supply the basis for the wide range of stated facts. *See* ¶ 58 (records from Apple concerning the target email account); ¶ 59 (information linking the target email account with a Simple Finance Technology Corp. ("Simple") bank account, including the transfer of funds in this account); ¶ 60 (summary information about Mr. Myers' sending money to the Simple bank account); ¶ 61 (information about a Google Payment account associated with the

target email address, as well as information about funds transferred from an email account associated with Myers to the target email account); ¶ 62 (information "[b]ased on responses provided by Google pursuant to 18 U.S.C. § 2703(d) Orders for hmmora@gmail.com and mikHimemora9@gmail.com email accounts); ¶ 63 (information based on review of financial records including bank accounts associated with Mr. Tew and Ms. Tew). Finally, ¶ 64 concludes that Ms. Tew was a "savvy user of cryptocurrency."

The next section, entitled "The July 29, 2020 Encounter with M. Tew an K. Tew," describes a meeting between SA Anderson and Mr. Tew to effectuate extraction of images from Mr. Tew's to Apple iPhones. At some point, according to ¶ 65, Ms. Tew arrived. It vaguely describes a purported admission that Ms. Tew made statements indicating she wanted to "take responsibility for the fraudulent payments originating at NAC in order to allow M. Tew to remain out of custody in order for him to parent their children." However, other than this generic admission there is no information that supports probable cause to search the target email account.

The next section, called "The July 31, 2020 Execution of a Search Warrant" (¶¶ 67-68), describes further information that is fruit of the poisonous tree. Paragraph 67 describes a link between Ms. Tew's phone number (917-446-2046) and various Navy Federal Credit Union bank account numbers. Paragraph 68 describes execution of a search warrant issued on July 31, 2024 for the search of Mr. and Ms. Tew's shared home authorizing the search and seizure of Ms. Tew's Apple iPhone associated with the foregoing phone number but relates the phone was not seized. The remainder of the Affidavit merely contains generic information regarding Apple, including the nature of Apple ID's and iCloud. (*see* ¶¶ 69-82).

### b. Lack of particularity

Although the Search Warrant purports to be directed to any authorized law enforcement officer, in fact it directs Apple to act as the Government's agent by requiring

Apple to search its own records for information associated with the two telephone numbers in question.  This Search Warrant, like its predecessors is fatally overbroad. It is a general warrant that authorizes the seizure of all stored and preserved copies of emails, including drafts, sent to and from the account between May 1, 2018 to September 17, 2020, regardless of whether they are related to the offenses the Government is investigating. Indeed, it authorizes the search and seizure of not only all communications associated with the targeted email account, but also a personal universe of information stored in iCloud.

The Search Warrant's Attachment B authorizes the seizure of, among other things: all stored and preserved copies of emails, including drafts; a IP addresses associated with email; instant messages; "all files and other records stored on iCloud" activity, connection and transactional logs associated with the account; "records and information regarding locations where the account or devices associated with the account were accessed, including all data stored in connection with Location Services, Find My iPhone, Find My Friends, and Apple Maps"; all records pertaining to the types of service used; all records pertaining to communications between Apple and any person regarding the account; and information necessary to decrypt any data produced in an encrypted form.

*c.  Exceeding authority in executing the search warrant*

The Government has seized the entire contents of the cell phone communications as well as any other items on the cell phone, including sensitive, privileged, and personal items such as those attached as examples in **Exhibits T-BB**. Nothing has been returned to Mr. and Ms. Tew, as the Government has kept everything regardless of whether it is outside of the scope of the search warrant.

### B.  AT&T - (917) 685-1312 and (917) 669-7473

### 1.  Order #4, 20-sw-00761-KLM (7/6/20)

The Application for this § 2703(d) Order seeks AT&T records from the period between May 1, 2018 to July 6, 2020.  ***See*** **Exhibit E** (Application and Order) It again

states that the records sought "are relevant and material to the investigation because such records may detail the planning and execution of the fraud herein and may also identify Tew's co-conspirators who assisted in defrauding NAC and/or laundering the proceeds from the fraud." The repeated use of "may" falls short of establishing "specific and articulable facts showing that there are reasonable grounds to believe that the records or other information sought are relevant and material to an ongoing criminal investigation" as required by § 2703(d).

### 2.  Search Warrant #2, 20-sw-00773-KLM (7/7/20)

#### *a. Lack of Probable Cause*

This Search Warrant authorizes the Government to search information related to two AT&T telephone numbers from June 1, 2018 to July 7, 2020. ***See* Exhibit F** (Application, Affidavit, and Search Warrant). The Search Warrant authorizes the seizure of voicemails, texts, and multimedia messages , transactional information, text messaging logs, business records and subscriber information, billing records, payment information, incoming and outgoing telephone numbers, records indicating services available to subscribers, and "all records pertaining to communications between AT&T Corporation and any person regarding the account or identifier including contacts with support services and records of action taken."

The Government goes on to request that the warrant authorize it to seize all information that constitutes evidence of violations of the wire fraud statutes and the money laundering statutes found at 18 U.S.C. §§ 371, 1343, 1349, 1956 and 1957. The matters to be seized include non-specific categories of four different kinds, along with other identifying information. The request does not delineate what defines "all information" of criminal activity from non-criminal information, or even criminal information of other wire frauds or money laundering not under investigation.

Agent Anderson's Affidavit states in ¶ 4 that the Affidavit comes from her personal observations, her training and experience, and information obtained from other agents

and witnesses, but this statement is both general boilerplate and belied by the actual contents of the rest of the affidavit.  For example, ¶ 7 is offered to establish probable cause states a series of facts concerning Michael Tew and NAC.  Agent Anderson states no basis for where she learned these facts, why she thinks these facts are accurate, or whether in fact they are facts.  These are merely assertions by her of facts with no support whatsoever and are her conclusions.

The same is true of ¶ 8, regarding Mr. Tew's termination from NAC for unauthorized use of a corporate credit card.  This "fact" appears over and over in the Applications for § 2703(d) Orders and Search Warrant Affidavits, without any factual basis. Thereafter, Agent Anderson goes into a description of invoices and received payments to and from NAC.  She does not state that she personally looked at any of these invoices nor does she state that any named witness looked at these invoices, or any company accountant.  Finally, she does not state that any witness told her about these invoices.  (*See* ¶¶ 9, 10, and 11).

In ¶ 12, Agent Anderson relates alleged facts "based on the investigation to date." She fails to state the source of her information other than a general statement that it is based on an investigation. Next, ¶¶ 13 and 14 relates facts that come from a co-defendant named Jonathan without informing the magistrate that Mr. Yioulos is an embezzler and a thief, and that the Government was about to arrest and charge him with stealing from NAC.  Paragraphs ¶¶ 15-18 recite conclusions without any basis for her knowledge as to whether it comes from, e.g., a fellow agent, her personal observation, or witness interviews. The next set of paragraphs are based on Agent Anderson's training and experience and concern general information about cellular telephone companies like AT&T and other wireless phone providers.

### b.  Lack of particularity

This general warrant authorizes the AT&T Corporation to seize on behalf of the government "all voicemail, texts, and multimedia messages from June 1, 2018 to July 7,

2020" regardless of whether these items of information relate to wire fraud or money laundering involving NAC. Next, it authorizes AT&T to "seize all existing printouts from original storage of all of the text messages described above." There is no particularity limiting the scope of the seizure to evidence of a crime, let alone evidence of the crime under investigation.

At the conclusion of the warrant, the magistrate authorized as follows:

> This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

The government here has asked for and received permission to look at all the personal information that may be on an individual's telephone. This includes the sensitive, privileged, and personal items discussed above. ***See* Exhibits T-BB.**

*3. Exceeding authority in executing the search warrant.*

As with the previously discussed Apple Search Warrant for the klew@me.com email account, the ATT&T Search Warrant here authorizes the seizure of all communications associated with the accounts, regardless of whether it exceeds the scope of the Government's investigation.

**C.      GOOGLE EMAIL - chrismcn@gmail.com and meyersconsultinggroup@gmail.com**

**1.  Order # 5, 20-sw-01250-MEH (10/20/20)**

This § 2703(d) Order was issued on October 20, 2020 based upon an Application made on the same date, requiring disclosure of records between July 1, 2018 to July 31, 2020 pertaining to two Google email accounts: meyersconsultinggroup@gmail.com and chrisrncn@gmail.com. ***See* Exhibit G** (Application and Order). The Order is followed by

two separate search warrants i.e., a search warrant for each of the email accounts, both of which were issued on December 23, 2020.

The Application's "Relevant Facts" (¶¶ 4-17) repeats facts that appears in the earlier applications of § 2703(d) Orders. It discusses what the Government is investigating (¶ 4); Mr. Tew's former service as a contractor for NAC and his residency with Ms. Tew (¶ 5); Mr. Tew's September 2018 termination by NAC; the oft-repeated but unsupported assertion that Mr. Tew submitted fraudulent invoices to NAC on behalf of various companies (¶ 7); a summary statement that NAC's co-owner Chris Alf was unaware that the payments were directed to accounts owned or controlled by Mr. and Ms. Tew (¶ 8); a summary statement that the invoices were fraudulent because they were for goods and services NAC never received (¶ 9); a summary example that the invoices were for things like consulting, modification, and research (¶ 10); and yet another summary statement that "[b]etween August 2018 and November 2018, the email address chrisrncn@gmail.com submitted at least three fraudulent invoice to NAC for payment" (¶11). Paragraph 14 relates that "Meyers Consulting Group Inc. belongs to Michael Meyers, an associate of K. TEW.  When interviewed, Michael Meyers said he provided his bank account information to K. TEW so that she could obtain money from NAC on behalf of TEW. Meyers said he did not himself create or submit the Meyers Consulting Group Inc. invoices that were submitted to NAC." When Mr. Meyers allegedly made this statement, to whom it was made, and the circumstances under which it was made are missing. None of the summary statements identify a basis in fact for the statements that would permit a neutral and detached magistrate to determine the veracity of the information provided by the Government.

However, by the time the Application was made, the Government already had reaped information from 12 previously issued 2703(d) Orders issued between July 6, 2020 and September 25, 2020, as well as search warrants for electronic communications, respectively issued on July 7, 2020 and September 22, 2020. The Application contains

23

information that must have been obtained by these prior searches and seizures, as ¶ 12 discusses information obtained from AT&T and Google. Similarly, paragraph 15 discusses a review of Mr. and Ms. Tew's bank accounts. This Application once again consists of summaries, conclusions, and is based on information derived from earlier illegal §2703(d) Orders and Search Warrants.

### 2.   Search Warrant #3, 20-sw-01522-NWY (12/23/20) chrismcn@gmail.com

#### a. Lack of Probable Cause

The Application, Affidavit, and Search Warrant are dated December 23, 2020, for seizure of electronic communications made between August 1 to October 22, 2020 related to the Google email account, chrisrncn@gmail.com. *See* **Exhibit H** (Application, Affidavit, and Search Warrant) At the time of its issuance, the Government had already obtained information from 14 § 2703(d) Orders, and two Search Warrants. The Application requests, and the Search Warrant permits, the Government to search and seize information

The Search Warrant, in Attachment B included in the warrant, authorizes the seizure of, among other things: "any emails, messages, records, files, logs, or information that have been deleted but are still available to Google; the "contents of all emails associated with the account August 1, 2018 to December 31, 2018, including stored or preserved copies of emails sent to and from the account, draft emails, the source and destination addresses associated with each email, the date and time at which each email was sent, and the size and length of each email." It also delegates to Google the duty of determining the relevancy of records to be produced. *See* Attachment B to Search Warrant, ¶ II.a. (requiring production of information and documents "regarding violations of the Target Offenses").

The Probable Cause subsection called "The Parties Involved in This Scheme" (¶¶ 7-16) is almost identical to ¶¶ 11-24 of the previously discussed Apple Search Warrant

issued on September 22, 2020 (i.e., Exhibit D). Similarly, the Affidavit summarizes that: NAC paid invoices for services to Jessamine Development LLC which, without supporting evidence, were for services never performed (¶¶ 17-20); summarizes that appear to have been derived from the fruits of earlier S2 2703(d) Orders, including "subscriber information from Google" about the name on the emails address, and associated telephone numbers), IP address used for the emails; preservation letters sent to Google; historical information provided by Google about the last date the account was logged into was on or around the end of November 2018). (¶¶ 21-24). Paragraphs 25-29 of the Affidavit consists of boilerplate information about how Google email accounts work, and email accounts in general.

As with the previously discussed search warrants, this Affidavit consists entirely of summary information provided by a government agent without disclosing the basis of the affiant's knowledge. And, to the extent to which statements are attributed to persons, the date, time, circumstances and recipient of witness statements are absent from the Affidavit. Additionally, the Affidavit incorporates information from prior illegal § 2703(d) Orders that must be excised in considering probable cause.

### b.  Lack of particularity

As with the previously discussed search warrants for the Apple and AT&T accounts, this Search Warrant lacks particularity. It once again delegates to the service provider discretion to determine what is relevant, with the predictable result of the Government's obtaining a plethora of private information and communications unrelated to the offenses under investigation.

### c.  Exceeding authority in executing the search warrant

This Search Warrant is no different than the other search warrants for stored electronic communications in this case, in that it delegates to the email provider discretion to determine which email items are relevant to the Government's investigation,

25

resulting in the Government's seizure of personal information unrelated to the investigation.

### 2.  Search Warrant # 4, 20-sw-01532-NYW (12/23/20) (meyersconsuhinggroupinc@gmail.com)

*a. Lack of Probable Cause*

The Affidavit for the warrants to search and seize the meyersconsuhinggroupinc@gmail.com email account, for communications and information between August 5, 2020 to October 22, 2020, is nearly identical to the affidavit in support of the chrisrncn@gmail.com Search Warrant. ***See*** **Exhibit I** (Application, Affidavit, and Search Warrant)."

The only substantive difference between the two Affidavits is the section describing the particular email account.  This section  begins by describing, in summary fashion: Meyers Consulting Group ("MSG") was one of the entities that received payments from NAC; after Mr. Tew's termination NAC recorded $125,000 in payments to MSG; statements attributed to Michael Meyers in in an interview with law enforcement at an unknown time, location, without any description of the circumstances of the interview or the identity of the law enforcement officer involved; that Meyers allegedly said that he encountered Kimberly Tew in online bitcoin transactions; that Meyers never met Ms. Tew in person, but communicated with her by phone, emails, text messages and that he believed the kley@me.com email account was associated with Ms. Tew; that Meyers also allegedly said that Ms. Tew told him that her husband had been laid off from his position at NAC and that she requested Meyers' assistance in getting old severance pay from NAC; and that Meyers confirmed that invoices sent to NAC falsely listed services purportedly provided by MCG, and that Ms. Tew instructed Meyers to open a bank account at ANB where Ms. Tew also banked. *Id.* (¶¶ 17-28)

Next, the Affidavit describes information that could only have been obtained from prior § 2703(d) Orders, such as Yioulos' NAC-issued email address (¶ 24); information

previously provided by Google about emails exchanged between meyersconsultinggroupinc@gmail.com and kley@me.com, as well as other email transactions in the account (¶ 25); subscriber information from Google about the account (¶ 26); information from Google concerning the creation date and last login date for the email account). The section concludes with information about a preservation letter concerning the account the Government sent to Google.

The flaws in this Affidavit are similar to those in the associated search warrant affidavit for the chrisrncn@gmail.com account. That is, it relies almost entirely on summary information provided by SA Palmer, purported statements by witnesses without any information concerning the circumstances the statements were obtained, and fruit of the poisonous tree in the nature of illegally obtained information from previous § 2703(d) Orders.

### b. Lack of particularity

As has been noted, this Search Warrant is identical to the previously discussed warrant to search the chrisrncn@gmail.com account. Defendants incorporate the argument relating to lack of particularity discussed in the previous section concerning that account.

### c. Exceeding authority in executing the search warrant

As this Search Warrant for the chrisrncn@gmail.com account. Defendants incorporate the argument relating to exceeding authority discussed in the previous and later sections concerning other accounts.

### E.   GOOGLE EMAIL - political.media.wdc@gmail.com

### 1.  Order # 6, 20-sw-00768-KLM (7/6/20)

This Application and § 2703(d), both dated July 6, 2020, Google, LLC, to deliver certain records and other information for the period June 1, 2018 to July 6, 2020 pertaining to political.media.wdc@gmail.com. **See Exhibit J** (Application and Order). The Application concludes by stating: "[t]hese records are relevant and material to the

investigation because such records may detail the planning and execution of the fraud described herein and may also identify Tew's co-conspirators who assisted in defrauding NAC and/or laundering the proceeds from the fraud." The use of the word "may" is once again problematic, as "may" means "possibility," which is a lesser standard than "reasonable grounds to believe" that the records or information sought is relevant and material to an ongoing criminal investigation.

## 2.  Search Warrant #5, 20-sw-01533-NYW (12/23/20)

### a. Lack of Probable Cause

The Application, Affidavit, and resulting Search Warrant are all dated December 23, 2020, and requires Google to deliver "[t]he contents of all emails associated with the account from December 7, 2018 to August 31, 2019.  **See Exhibit K** (Application, Affidavit, and Search Warrant). The Search Warrant again authorizes the seizure of a seemingly boundless world of information and documents that far exceed the scope of the Government's investigation.

The supporting Affidavit, by SA Palmer, states in ¶ 4 the Affidavit is based on her personal observations, her training and experience, and information obtained from other agents and witnesses; however, this statement if both general boiler plate and is belied by the actual contents of the rest of the affidavit. For example, it contains: an unsourced series of facts concerning Michael Tew, NAC, and Kimberley Tew;  (¶ 7-9); a description of invoices and received payments to and from NAC by Meyers Consulting Group, Inc., 5530 Jessamine Development, LLC, Sand Hill, and Hannah Scaife, CPA.  (¶¶ 11, 12 and 13); an interview from an unknown source about NAC (¶ 19); and the assertion that invoices were sent from the target email account (¶ 21).  Paragraphs 22-25 are the fruit of the poisonous tree from the illegal search based on the prior § 2703(d) Orders.  The rest of the affidavit under the heading "Background Concerning Email" is boilerplate information provided by the agent that does not establish either probable cause to believe a crime was committed or that any fruits, evidence or instrumentalities of that crime are

located at Google, LLC.  The information related in this Affidavit is largely untethered to the particular crimes in question, the particular investigation in question, and fails to establish probable cause as required by case law concerning the Fourth Amendment to the Constitution of the United States.

### b.  Lack of particularity

The warrant once again seeks an almost unlimited variety of information and documents and does so by requiring the records custodian to search its own records for information and determine the relevancy of what it must produce.  It authorizes the seizure of a glut of documents and information, regardless of whether any of these emails relate to wire fraud or money laundering involving NAC. Like the other search warrants, it's sweep is excessively broad.

### c.  Exceeding authority in executing the search warrant

Once again, execution of the Search Warrants here resulted in the production of confidential, personal, and sensitive material.

## V.  ANALYSIS OF ACCOUNT SEIZURES HERE – ACCOUNTS UTILIZING ORDERS ONLY.

### A.  FACEBOOK EMAIL ACCOUNTS - kimberley.vertanen@gmailcom and vertanen@gmailcom

### 1.  Order # 7, 20-sw-1142-SKC (9/25/20)

The Application and Order were issued on September 25, 2022 for records between July 1, 2018 and August 31, 2020. **See** **Exhibit L** (Application and Order).  Paragraphs 5-10 recite conclusions that the AUSA apparently reached during the investigation to date, none of which provide a reason to believe that anything stored by Facebook was relevant and material to an ongoing investigation.  Paragraphs 11 and 12 concern bitcoin trading business based on an algorithm that is not linked to Facebook or any alleged fraud against NAC.  Paragraphs 13 and 14 are statements of conclusions reached by the affiant regarding a Craig Warner and an account named Sand Hill.

29

Paragraphs 15 and 16 of the Application are the only paragraphs that mentions the email addresses of kimberley.vertanen@gmail.com and vertanen@gmail.com which, according to the Application, are email addresses associated with Google that received emails from notification@facebookmail.com.   The Application here fails to link the emails from notification@gmail.com to records kept by Facebook, and it further fails to link the records to crimes under investigation.   The Application continues to state that the information sought "may" result in discovery of information related to the Government's investigation and is nothing more than a request to conduct a fishing expedition to find out if the records are actually relevant and material to the fraud investigation by the government.

### B.   GODADDY EMAIL ACCOUNTS - accounting@globalfuel.co and mtew@globalfuel.co

### 1.  Order # 8, 20-sw-00762-KLM (7/6/20)

This Application and Order are dated July 6, 2020 and are for the search of email records within the date range June 1,2018 to July 6, 2020. *See* **Exhibit M** (Application and Order).  The application fails to meet the "specific and articulable facts" standard. It recites in nine paragraphs the alleged relevant facts justifying the order.  Paragraph 5 recites conclusions the AUSA apparently reached during the investigation to date, none of which provide a reason to believe that anything stored by GoDaddy.com, LLC is relevant and material to an ongoing investigation. Paragraph 8 is the only paragraph that mentions the email addresses of accounting@globalfuel.co and mtew@globalfuel.co which, according to the Application, are email addresses associated with invoices and financial institutions and payments.  The final paragraph contains no articulable facts, but just simply is the request by the government for records over a period of approximately two years.  Paragraph 9 concludes that "[t]hese records are relevant and material to the investigation because such records may detail the planning and execution of the fraud described herein and may also identify Tew's co-conspirators who assisted in

defrauding NAC and/or laundering the proceeds from the fraud." As has been discussed above, the standard "may" is lesser than the "specific and articulable facts" standard.

### C.    GO DADDY EMAIL - mtew@sandhillrp.com

#### 1.  Order # 9, 20-sw-00840-KLM (7/6/20)

This Application and Order are dated July 6, 2020 and are for the search of email records within a four-and-one-half-year the date range, November 1, 2015 to July 6, 2020. *See* **Exhibit N** (Application and Order). It is quite similar to the other § 2703(d) Orders and fails the "specific and articulable facts" standard. Paragraph 4 simply establishes that there is an investigation involving wire fraud, conspiracy, and money laundering. Paragraph 5 recites the AUSA's conclusions. that apparently the AUSA has reached after the investigation to date, none of which provide a reason to believe that anything stored by GoDaddy.com, LLC is relevant and material to an ongoing investigation. The same is true in paragraphs 6 and 7 of the Application. Paragraph 8 is the only paragraph that mentions the email address of mtew@sandhillrp.com which, according to the Application, is associated with invoices and financial institutions and payments. The standard "may" is lesser than the "specific and articulable facts" standard. Finally, the date range of records sought -- four- and one-half years – is not particular at all.

### D.    GOOGLE CELL NUMBER – (469) 319-0152

#### 1.  Order # 10, 20-sw-00835-NYW (7/17/20)

This Application and Order are date July 17, 2020 and are for the search of telephone records between July 1, 2018 to July 26, 2020. *See* **Exhibit O** (Application and Order). The application then goes on to recite in eight paragraphs the alleged relevant facts justifying the order. Paragraph 1 simply establishes that there is an investigation involving wire fraud, conspiracy, and money laundering. Paragraphs 2-6 state the AUSA's conclusions which provide no reason to believe that anything stored by Google is relevant and material to an ongoing investigation.

Paragraph 7 is the only paragraph that mentions the phone number 469-319-0152 which was used for a call to Mr. Yioulos in late June or early July 2020.   The Application here fails to link the phone number to Google or to records kept by Google, and it fails to establish a nexus between the records sought and the crimes under investigation. Paragraph 8 once again states that "the requested records are relevant and material to the investigation because such records may detail the scope and execution of the fraud, show any attempts at extortion from other unknown third parties, identify other phone numbers used by K. Tew in furtherance of the scheme, contain additional fraudulent invoices sent to NAC, and identify other individuals who are conspiring with Tew to defraud National Air Cargo and/or launder the proceeds from the fraud."   The problematic use of "may" has been discussed above. The Application falls short of the "specific and articulable facts" standard.

## 2.  Order #11, 20-sw-1137-SKC (9/24/20)

This September 24, 2020 Application and authorize the search of records relating to the cell phone number between July 1, 2018 and July 16, 2020.  ***See* Exhibit P** (Application and Order). The Application is similar to most of the other Applications in this case. It devotes nine paragraphs to the alleged relevant facts justifying the order. Paragraph 4 states that there is an investigation involving wire fraud, conspiracy, and money laundering.  Paragraphs 5-10 recites conclusions that apparently the AUSA has reached after the investigation to date.  None of these conclusions provide a reason to believe that anything stored by Google is relevant and material to an ongoing investigation.

Paragraph 11, the only paragraph of the Application that mentions the telephone number 469-319-0152, states that the telephone number which was used for a call to Mr. Yioulos in late June or early July 2020. The Application ails to establish a relationship between either the Google phone number and the crimes under investigation.   The final paragraph contains no articulable facts, but just simply the request by the government for

32

records over a period of approximately two years.  The Affidavit on again states that the records sought "may" be related to the Government's investigation, but it does contain "specific and articulable facts showing reasonable grounds to believe that the contents of a wire or electronic communication, or the records or other information sought are relevant and material to an ongoing criminal investigation" as required by § 2703(d).

### E.      GOOGLE EMAIL ACCOUNTS - 12 Gmail accounts

### 1.  Order # 12, 20-sw-00802-KLM (7/10/20)

Here, the Government sought and obtained information by an Application and § 2703(d) Order dated July 10, 2020, for information from 12 email accounts involving a period between July 1, 2018 to July 10, 2020.[4] *See* **Exhibit Q** (Application and Order). The structure of this Application is a repeat from prior Applications. Paragraph 4 is about the investigation; ¶ 5 consist of conclusions, none of which provide a reason to believe that anything stored by Google is relevant and material to an ongoing investigation; ¶¶ 6, 7 and 8 of are the only paragraphs that mentions the 12 email addresses which, according to the Application, are associated with invoices and financial institutions and payments; and ¶ 9 uses the ubiquitous "may" in relating the information sought and the offenses under investigation. This Application falls short of the "specific and articulable fact' standard.

### F.      GOOGLE EMAIL ACCOUNTS -  lward99@gmail.com and meyers.mike6l5@gmail.com

### 1.  Order #13, 20-sw-00793-KLM (7/9/20)

This Application and Order are dated July 9, 2020 and is for the search and seizure of Gmail records between April 1, 2018 to July 9, 2020. *See* **Exhibit R** (Application and Order).  It recites facts about the investigation concerning violations of federal criminal

---

[4]  The 12 Gmail accounts are:  hmmora@gmail.com; mikemora9@gmail.com; vertanen@gmail.com;    marykayvertanen@gmail.com;    tewtrading1979@gmail.com; mtew22@gmail.com;      10nineprojects@gmail.com;      tewmichael18@gmail.com; vtleycap@gmail.com; logisticsmtew@gmail.com; Kimberley.vertanen@gmail.com; and and dvertanen@gmail.com.

statutes that is identical to the other similar applications submitted.  The application fails to meet the "specific and articulable facts" standard.

The application contains eight paragraphs alleging facts in support of issuance of a § 2703(d) Order. Once again, ¶ 4 is a boilerplate statement that there is a criminal investigation; ¶¶ 5-8 recites the Affiant's conclusions, none of which provide a reason to believe that anything stored by Google is relevant and material to the investigation. Paragraphs 9 and 10 of the application are the only paragraphs that mentions the email addresses of Meyers.mike615@gmail.com and lward99@gmail.com which, according to the Application, are associated with money transfers and payments to Michael Meyers and Larry Ward.  Paragraph 11 concludes that the sought "may "detail "the scope and execution of the fraud, identify other individuals who are conspiring with Tew to defraud National Air Cargo and/or laundering the proceeds from the fraud."  Specific and articulable facts are wanting from this Application.

### G.   VERIZON CELL PHONE - (585) 737-1709

### 1.  Order #14, 20-sw-00760-KLM (7/6/20)

This Application and Order are dated July 6, 2020 are for the search of telephone records associated with a Verizon-issued telephone number between May 1, 2018 to July 6, 2020.  ***See* Exhibit S** (Application and Order).  It follows the familiar pattern: A recitation in eight paragraphs the alleged relevant facts justifying the order; ¶ 1 simply establishes that there is an investigation; ¶¶ 2-6 state the AUSA's conclusions which do not provide a reason to believe that anything stored by a Verizon is relevant and material to an ongoing investigation; ¶ 7 is the only paragraph that mentions the target phone number 585-737-1709 which was used by Mr.  Yioulos, who was the controller and director for National Air Cargo; and ¶ 8 again claims that the records "may" provide information about the offenses under investigation. It does not meet the "specific and articulable facts" standard.

### IV.   CONCLUSION

For the foregoing reasons, Defendants Michael Aaron Tew and Kimberley Ann Tew respectfully request that this Court issue an order or orders suppressing all evidence obtained from the execution of the above-described Orders and Search Warrants, including the fruits thereof.

Respectfully submitted this 12th day of May, 2022,

> */s/ Peter R. Bornstein*
> Peter R. Bornstein
> The Law Offices of Peter R. Bornstein
> Greenwood Village, CO 80111
> (720) 354-4440 phone
> (720) 287-5674 fax
> pbornstein@prblegal.com
> *Attorney for* Defendants Michael Aaron Tew
> *and Kimberley Ann Tew*

**STATEMENT CONCERNING SPEEDY TRIAL**

Pursuant to DDD Crim. P.S. III(C), undersigned counsel advises that on May 12, 2022, this Court granted Defendants' *Unopposed Motion to Continue Trial and For an Ends Of Justice Finding Pursuant To 18 U.S.C. § 3161(h)(7)* (*See* Order, Doc. 198). That Order determined that: "One hundred and eighty (180) days, from 5/12/2022 to 11/8/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time." As a result, the filing of this Motion will not affect the speedy trial computation. Furthermore, 18 U.S.C. § 3161(h)(1)(D) requires exclusion from speedy trial computations "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." Therefore, in the absence of the ends-or-justice continuance, the time required for the court to promptly dispose of the issues raised in the within motion would be excluded from speedy trial computations.

35

**CERTIFICATE OF COMPLIANCE**

I hereby certify that undersigned counsel had complied with the requirements of DDD Crim. P.S. III(A)(1), in as modified by this Court's Order permitting this Motion to be filed with a word count not to exceed 12,000 words (Doc. 199).

*/s/ Peter R. Bornstein*
Peter R. Bornstein


**CERTIFICATE OF SERVICE**

I hereby certify that May 12, 2022, I electronically filed the foregoing *Motion To Suppress Evidence* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

*Jeannette Wolf*
Jeannette Wolf

**APPENDIX (List of Exhibits)**

*United States v. Tew, et. al*
**Criminal Case No. 20-cr-0305-DDD**

| EXHIBIT | DESCRIPTION | ACCOUNT |
|---|---|---|
| A | Order # 1, 20-sw-00800-KLM (7/10/20) | Apple ID/Email - kley@me.com |
| B | Order # 2, 20-sw-00801-KLM (7/10/20) | kley@icloud.com. |
| C | Order #3, 20-sw-00940-STV (8/11/20) | kley@me.com |
| D | Search Warrant #1, 20-sw-1115-SKC (9/22/20) | kley@me.com |
| E | Order #4, 20-sw-00761-KLM (7/6/20) | AT&T - (917) 685-1312 and (917) 669-7473 |
| F | Search Warrant #2, 20-sw-00773-KLM (7/7/20) | AT&T - (917) 685-1312 and (917) 669-7473 |
| G | Order # 5, 20-sw-01250-MEH (10/20/20) | GOOGLE EMAIL - chrismcn@gmail.com & meyersconsulting@gmail.com |
| H | Search Warrant #3, 20-sw-01522-NWY (12/23/20) | chrismcn@gmail.com |
| I | Search Warrant # 4, 20-sw-01532-NYW (12/23/20) | meyersconsulting@gmail.com |
| J | Order # 6, 20-sw-00768-KLM (7/6/20) | GOOGLE EMAIL - political.media.wdc@gmail.com |
| K | Search Warrant #5, 20-sw-01533-NYW (12/23/20) | GOOGLE EMAIL - political.media.wdc@gmail.com |
| L | Order #7, 20-sw-1142-SKC (9/25/20) | FACEBOOK EMAIL ACCOUNTS - kimberley.vertanen@gmailcom and vertanen@gmailcom |
| M | Order # 8, 20-sw-00762-KLM (7/6/20) | GODADDY EMAIL ACCOUNTS - accounting@globalfuel.co and mtew@globalfuel.co |
| N | Order # 9, 20-sw-00840-KLM (7/6/20) | GO DADDY EMAIL - mtew@sandhillrp.com |
| O | Order # 10, 20-sw-00835-NYW (7/17/20) | GOOGLE CELL NUMBER – (469) 319-0152 |
| P | Order #11, 20-sw-1137-SKC (9/24/20) | GOOGLE CELL NUMBER – (469) 319-0152 |
| Q | Order # 12, 20-sw-00802-KLM (7/10/20) | GOOGLE EMAIL ACCOUNTS - 12 Gmail accounts. |
| R | Order #13, 20-sw-00793-KLM (7/9/20) | GOOGLE EMAIL ACCOUNTS - lward99@gmail.com and meyers.mike6l5@gmail.com |
| S | Order #14, 20-sw-00760-KLM (7/6/20) | VERIZON CELL PHONE - (585) 737-1709 |
| T | Medical-Genetic Test Results | N/A |
| U | Medical Test Records | N/A |

| EXHIBIT | DESCRIPTION | ACCOUNT |
|---------|-------------|---------|
| V | Photographs Of Children | N/A |
| W | Personal Husband-Wife Communications | N/A |
| X | Doctor-Patient Communications | N/A |
| Y | Accountant Communications | N/A |
| Z | Emails From 2008 | N/A |
| AA | Emails From 2009 | N/A |
| BB | Student Loan Communications. | Apple ID/Email - kley@me.com |