IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  MICHAEL AARON TEW and
    2.  **KIMBERLEY ANN TEW**,
        a/ka Kimberley Vertanen,

      Defendants.

---

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO SUPPRESS EVIDENCE [ECF NO. 200]

---

The Defendants' Motion to Suppress, ECF No. 200 ("Def. Mot.") seeks blanket suppression of all evidence obtained from electronic accounts they have not even shown are theirs in circumstances where agents conducted a painstaking step-by-step investigation using congressionally-authorized and judicially pre-approved orders to incrementally gather non-content information before seeking warrants to gather more invasive content information bearing on an alleged $5,000,000 fraud scheme.   This is precisely the kind of thing the Supreme Court has repeatedly stated should not result in sanctions that would distort the truth-seeking process of our judicial system by removing relevant evidence from a jury's consideration.   The Defendants' Motion should be denied.

1

## ARGUMENT

### I.   Judicially-Approved 2703(d) Orders Seeking Non-Content Metadata Do Not Violate the Fourth Amendment

The government used 2703(d) orders — essentially, judicially-pre-approved subpoenas — to obtain *noncontent* information. It then used the information it lawfully obtained from those court orders, to obtain search warrants. There is no basis for suppressing *all* of the evidence obtained from these orders. The government is not aware of any decision holding that that 18 U.S.C. §§ 2703(c) and (d) — the portions of the statute providing a mechanism to obtain non-content metadata — is unconstitutional and the Supreme Court has repeatedly emphasized that suppression is inappropriate when agents do exactly what they did here:   rely in good faith on duly-enacted statutes of congress and relevant precedents in this circuit.

### A.   Carpenter, by its own terms, does not apply to the categories of information sought by the 2703(d) orders.

The Supreme Court's decision in *Carpenter v. United States* was, by explicit admission, a "narrow one" that did not "disturb the application of *Smith [v. Maryland*, 442 U.S. 735 (1979) and [*United States v.] Miller*[, 425 U.S. 435 (1976)] . . . or other business records that might incidentally reveal location information." 138 S. Ct. 2206, 2220 (2018). Indeed, the Court's opinion noted that the "Government will be able to use subpoenas to acquire records in the overwhelming majority of investigations." *Id.* at 2223.

In order to prevail, the defendants would need to show that they have legitimate expectation of privacy in records held by the third-party providers of the relevant electronic communications service provider. Even if the accounts were theirs (more on this below), none of the records are protected by a legitimate expectation of privacy. The paragraph straddling pages 7 and 8 of their brief makes compares the categories of information authorized by the 2703(d) orders to the cell-site information at issue in *Carpenter* because they "similarly involve tracking of a person's digital life moments." But *Carpenter* was not dealing in the sweet mysteries of life or other metaphorical abstractions.   It was about literal, physical movement. *Id.* at 2217 ("[W]e hold that an individual maintains a legitimate expectation of privacy in the record of his *physical movements* as captured through CSLI.") (emphasis added).   The defendants' analogies are much too general:

- "Every telephone number called."   The precise holding of *Smith* is that there is no reasonable expectation of privacy in this information, and *Carpenter* declined to disturb that holding. *Id.* at 2220

- "Every website visited."   The order allows the government to obtain IP address information. But IP information is broadcast voluntarily to many outside observers, including the internet service provider, the website visited, and anyone *that* website provide the information to.   The Tenth Circuit — consistent with every other circuit to address the issue — has long held this information is not protected by the Fourth Amendment. *United States v. Perrine*, 518 F.3d 1196, 1205-06 (10th Cir. 2008).   Courts have not changed their mind post-*Carpenter*:   *See, e.g., United States v. Soybel*, 13 F.4th 584, 592 (7th Cir. 2021) (citing cases from First, Fifth and Eleventh Circuits similarly unmoved by analogies to *Carpenter*)*; United States v. Monroe*, 350 F. Supp. 3d 43, 48-49 (D.R.I. 2018) (analyzing issue and concluding that IP information is not protected post-*Carpenter*).

- "The date and time of all telephone calls or emails."   This is just the first

bullet-point put another way. It's again, explicitly what's allowed by *Smith* and precisely what *Carpenter* left undisturbed. *Carpenter*, 138 S. Ct. at 2220.

- "Information about the owners and users of the account."   Again, this is the kind of information that *Smith* held to be unprotected:   users of email, no different than users of phones, understand that they are voluntarily giving information about their identity. *Perrine*, 518 F.3d at 1205 (dropping string cite for proposition that "every federal court to address this issue had held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.")

- "The date, time, and duration of every connection made to the account." Once again, this is just another way of framing the first and third bullet point.   *Carpenter* explicitly ratified the *Smith* holding that this information is not protected. *Carpenter*, 138 S. Ct. at 2220

- "The email addresses and/or telephone numbers for all communications occurring in connection with each account."   This, too, is the kind of toll metadata allowed by *Smith* that *Carpenter* leaves in place. *Carpenter*, 138 S. Ct. at 2220.

- "Information about linked accounts."   This one is not directly covered by *Smith*, but the defendants make absolutely no effort to even try to compare it to the location data at issue in *Carpenter*.   It is, moreover, hard to distinguish from the linked financial accounts asked for in *Miller*, which was also explicitly ratified in *Carpenter*.   *Miller*, 425 U.S. at 438 (noting that subpoena asked for all accounts in name of one individual). It is also hard to distinguish from subscriber information, which also has no reasonable expectation of privacy.   *Perrine,* 518 F.3d at 1205.

- "The services used."   This is also difficult to distinguish from *Miller*, where the government asked for bank records from several different banking services (savings, checking, or loans).   The defendants do not even try to explain why there is either as subjective or objective expectation of privacy in this information.

- "The devices connected to the account."   The defendants do not explain or even attempt to articulate how *Carpenter* — which related to location information — has any bearing on information simply identifying a device. Nor do they try to explain how the identity of a device is

4

meaningfully different from information identifying a subscriber.   *Cf. Perrine,* 518 F.3d at 1205

In short, the defendants provide no legal basis for extending *Carpenter* beyond its plain words, for rejecting the pre- and post-*Carpenter* precedents finding no reasonable expectation of privacy in the non-content information sought by the 2703(d) orders, and no independent Fourth Amendment legitimate-expectation-of-privacy analysis justifying the radical conclusion that judicially-approved orders asking for information Congress specifically authorized by statute is somehow unconstitutional.

For good reason: the Stored Communication Act "represents a judgment by Congress that it is not unreasonable under the Fourth Amendment" for the government to obtain the kind of non-content information set forth in the statute. *See United States v. Watson*, 423 U.S. 411, 415-416 (1976) (noting deference to congress's considering judgment as to what kinds of searches are reasonable); H.R. Rep. No. 827, 103d Cong., 2d Sess. Pt. 1, at 31 (1994) (describing Congress's understanding of Fourth Amendment and Supreme Court precedent when it passed Stored Communications Act).   The statute here is exactly the kind of authority the Supreme Court has recognized for "subpoena[s] or order[s] authorized by law and safeguarded by judicial sanction." *Oklahoma Press Pub'g Co. v. Walling*, 327 U.S. 186, 208 (1946).   It is the kind of order that results in "the orderly taking" of evidence. *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).   That is, the orders here are essentially "super subpoenas" that provide greater protection than

normal subpoenas, which do not require probable cause.   *Oklahoma Press*, 327 U.S. at 208.   Concluding that the 2703 orders here are unconstitutional would require somehow concluding that the *greater* statutory protections offered by that statute run afoul of the Fourth Amendment when it is clear that, before the statute was passed, cases like *Oklahoma Press* and *Morton Salt* would have allowed the government to obtain them with just a subpoena.   This is not the law.   *See United States v. Di Re*, 332 U.S. 581, 585 (1948 )(noting Supreme Court's reluctance to "decide that a search . . . authorized by congress was unreasonable.")

      B.   <u>*Warshak* Does Not Say what the Defendants Say it Says</u>

The defendants' discussion of *Warshak* leaves the impression that the Sixth Circuit somehow held all 2703(d) orders to be unconstitutional. It did not. *Warshak* was a dispute about a separate provision of § 2703: § 2703(*b*), which authorizes the government to get the *content* of emails without a warrant (though with notice). 18 U.S.C. §  2703(b)(2).

The government did not obtain *content* in this case with a 2703(d) order. Rather, it obtained the non-content information specifically authorized in 2703(c)(1)(B) and (E), for which there is no reasonable expectation of privacy. It then did exactly what the *Warshak* panel said the government should do: it got a warrant. *Warshak* does not in any way support the conclusion that the Fourth Amendment was violated or that suppression is warranted here — even *Warshak* still gave the government the benefit of good faith reliance on the text of the statute

and then-existing precedent. *United States v. Warshak*, 631 F.3d 266, 290 (6th Cir. 2010)

## II.    A Magistrate Judge Concluded that the 2703(d) Orders Were Supported by Specific and Articulable Facts – Suppression is not an Authorized Remedy

The § 2703(d) orders are, indeed, based on a similar fact templates, with the primary difference being paragraphs linking the facts of the crime to the relevant communication device/account associated with that crime.   But because these similar applications were independently reviewed and approved by almost every magistrate judge sitting in Denver, the defendants are essentially claiming that a majority of the experienced magistrate judges here consistently and independently err in their findings of reasonableness. This derisive take on the applications and the resulting orders finding them sufficient is inconsistent with the Tenth Circuit's command that findings of magistrate judges are entitled to "great deference." *United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005).   As set forth below, the applications meet the lower-than-probable cause standard required by the statute.

But there is no reason for the court to resolve a *post hoc* squabble over the use of particular words like "may," or whether a prosecutor's proffer of what the evidence shows count as specific and articulable "facts." They do. But even if the defendants are correct in their assertion that a § 2703(d) application requires specific citations to underlying evidence supporting proffered facts, and even if

those facts are now found wanting, Congress specifically rejected suppression as a remedy once an independent magistrate has issued the relevant order. 18 U.S.C. § 2707 (providing for civil remedies); 18 U.S.C. § 2808 (providing that remedies and sanctions set forth in § 2706 are the "only judicial remedies and sanctions for nonconstitutional violations of this chapter). As the Tenth Circuit has concluded, "violations of the ECPA do not warrant exclusion of evidence." *Perrine*, 518 F.3d at 1202. For the reasons set forth above, the non-content metadata disclosed as a result of the orders is not protected by the Fourth Amendment, there is no constitutional violation, and there is thus no basis for suppressing that evidence or for suppressing its derivative use in the later warrants.

If the Court does undertake a review of the sufficiency of the applications, it should give the magistrate judges deference and "ask only whether, under the totality of the circumstances presented in the affidavit, the . . . judge had a substantial basis for determining that probable cause existed." *United States v. Haymond*, 672 F.3d 948, 8958 (10th Cir. 2012) (citation omitted and internal quotation omitted). Each judge did.

The defendants spend much of their briefing second-guessing the magistrate judges' independent judgments that the applications here satisfied the requirements of § 2703(d),which require a lower-than-probable-cause threshold finding that there are specific and articulable facts showing "reasonable grounds" to believe the information was "relevant and material" to the investigation. Def. Mot.

at 12 – 14 (§ IV.A.1-4); 19 (§ IV.B.1); 22 (§ IV.C.1); 27 (§ IV.E.1); 29-34 (§§ V.A.1, B.1, C.1., D.1 – D.2, E.1, F.1 and G.1).   The defendants give *no* deference to the judges who issued the orders, criticizing the use of the word "may" and quibbling over whether proffered statements about the evidence are "facts." The statute does not require — and the defendants cite no precedents requiring — that the government provide a detailed summary of specific pieces of evidence supporting a factual proffer or use magic words synonymous with "may," "possibility," or "probability."   The statute says the government must "offer" facts — provide a proffer of what the evidence shows. This is no different than what occurs at detention hearings, where attorneys as officers of the court proffer what the evidence will show. *Cf.* 18 U.S.C. §   3142(f).

The question is whether it was reasonable for the magistrate judges to (1) conclude that a company was being defrauded when it (a) did not receive invoiced services, (b) where the owner of the company was unaware of the payments, (c) where the payments went into bank accounts controlled by one or the other of the defendants, and (d) where the requested email account or phone number was associated with the defendants or businesses receiving the payments and (2) that the email account or phone number might thus be relevant to an ongoing investigation into the fraud and its fruit. It was: the AUSA who submitted those applications described a company being fleeced and then identified email accounts and phone numbers associated with the people lining their nests.   The defendants

are essentially arguing that it is unreasonable to ask for records related to the telephones and emails used by fraud suspects to access their proceeds.   The statute does not compel this counterintuitive conclusion.

Finally, even if the defendants were somehow able to distinguish *Perrine* or articulate a reason not to apply section 2707 and 2708, the Court should still not suppress because the agents here relied on the orders in good faith, as set forth below.

### III.    The Defendants Have No Standing to Challenge the Warrants

As for the warrants, suppression is available as a remedy for a constitutional violation, but the defendants must still walk over the threshold into an area protected by the Fourth Amendment. They have not. The Court should deny the motions because the defendants have failed to show that they have standing to actually suppress the warrants.

The defendants are proceeding under two assumptions, each of which is unsupported. The first is that they are the actual users of the email accounts. Neither of the defendants has admitted or shown that they are and only in that case would one of them have standing. The defendants have the burden of showing standing, *United States v. Lyons*, 992 F.2 1029, 1031 (10th Cir. 1993), and must submit sworn evidence, in the form of an affidavit or testimony, that they *each* have privacy interests in the accounts. *See, e.g., United States v. Almaleh*, 2022 WL 602069, at *13 (S.D.N.Y. Feb. 28, 2022); *United States v. Ray*, 541 F. Supp. 3d 355,

380 (S.D.N.Y. 2021) (collecting cases in which defendants were and were not able to establish standing to challenge warrants seeking electronic accounts and devices). It is not immediately apparent how either Kimberley Tew or Michael Tew has a privacy interest in the email accounts "chrisrncn@gmail.com," "political.media.wdc@gmail.com," or "meyersconsultinggroupinc@gmail.com."   And even if Kimberley Tew does admit to the facially more plausible possibility that she is the user/owner of the account of kley@me.com,[1]  there is no basis for believing that *Michael Tew* has standing to suppress any evidence in that account bearing on *his* guilt.[2]  *United States v. Davis*, 750 F.3d 1186, 1191 (10th Cir. 2014) (explaining that when "the poisonous tree was planted in someone else's orchard," a defendant "lacks standing to challenge its fruits."); *United States v. Parrott*, 434 F.2d 294, 296 (10th Cir. 1970) (concluding that one defendant had no standing to challenge evidence seized from codefendant's wallet).

"Fourth Amendment rights are personal rights [that] may not be asserted vicariously." *Rakas v. Illinois*. 439 U.S. 128, 133 (1978).   A defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded his

---

[1] Kimberley Tew implicitly admits that the kley@me.com account is hers to the extent the motion references exhibits T-X, Z, and BB and complains they are examples of her privacy being unconstitutionally invaded. But this implicit admission is insufficient by reference to the standards articulated in the cases cited in this section.

[2] If the Court does determine that suppression is a remedy to any violations of § 2703(d), the same standing analysis here would apply to those orders as well.

legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731, 100 S. Ct. 2439, 65 L.Ed.2d 468 (1980). So, for example, in *Lyons*, the Tenth Circuit concluded that a defendant had no standing to suppress hard disks where he could not "meet the threshold requirement of demonstrating an expectation of privacy in the property searched." 992 F.2d at 1032.

Because neither of the defendants has established standing to show that their individual Fourth Amendment rights are implicated, their motion can and should be denied on that ground alone.

### IV.   The Affidavits Supporting the Warrants Established Probable Cause to Believe that users of the Target Email Accounts Were Engaged in Criminal Conduct

The Fourth Amendment requires probable cause before a warrant can be issued. U.S. CONST. AMEND IV.    "Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime."   *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Put another way, whether there exists probable cause is a "commonsense, practical question" answered by evaluating the totality of the circumstances and turning on whether there is a "fair probability" that contraband or evidence will be in a particular place.   *United States v. Biglow* 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Courts should not review search warrants in a "hypertechnical manner;" they should be reviewed with common sense.   *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Once a magistrate judge has found probable cause and issued a warrant, the law discourages second-guessing.   If the circumstances are "doubtful or marginal," the district court should give deference to the judgment of the magistrate judge.   *Biglow*. 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984).

The defendants bear the burden of proving that the search here was improper. *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) ("Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of proof.") (citation and quotation marks omitted); *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994) ("The proponent of a motion to suppress bears the burden of proof.") (citation omitted).   He cannot meet that burden.

First, the defendants are simply mistaken to assert that evidence obtained from the § 2703(d) orders cannot be used to support the probable cause determination.   As set forth above, there is no reason to doubt the sufficiency of the applications supporting those orders.   And even if there were, the statute, Tenth Circuit precedent and the good-faith doctrine foreclose suppression, as set forth elsewhere in this brief.

Second, the defendants make the bizarre claim that statements of a federal agent under penalty of perjury are "mere assertions" that somehow do not count as

"facts." This is simply not how Courts review affidavits, nor is it consistent with the text of the Fourth Amendment, which specifically says that "probable cause can be supported by Oath or affirmation."   The observations of police officers engaged in a common investigation "are plainly a reliable basis for a warrant." *United States v. Ventrasca*, 380 U.S. 102, 111 (1965); *see Franks v. Delaware*, 438 U.S. 154, 172 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant[.]"); *United States v. Kunkler*, 679 F.2d 187, 190 (9th Cir. 1982) ("Police officers are considered reliable and their reliability need not be independently demonstrated."). A search warrant affidavit is not an evidentiary hearing in which the agent submits each item of evidence supporting probable cause.

Instead of reading the affidavit in light of a "common sense" standard that recognizes the "fluid concept" of probable cause and the need for a magistrate judge to make a "common-sense decision whether, given all the circumstances set forth in the affidavit in front of him," *United States v. Janus Indus.*, 48 F.3d 1548, 1552 (10th Cir. 1995), the defendants engage in a hypertechnical reading of specific paragraphs, reject as illegitimate any effort to accurately summarize voluminous financial records and demand additional "particulars" of statements such "as whom they were made to, the date of the statements, and the circumstances in which they were obtained", Def. Mot. at 15. *See also* Def. Mot. at 21, 23, 24-25.   But they cite no authority in support of reading affidavits this way.   Even if this strange

hermeneutics was brought to bear on federal warrants, they also do not explain how the failure to provide these details fatally undermines the magistrate judges' separate independent conclusions that each of the warrants was supported by probable cause, especially when agent's statements are made under penalty of perjury and the defendants have made no allegation that they are factually incorrect or otherwise subject to a *Franks* challenge.

Finally, the "totality of the information contained in the affidavit[s] provided a substantial basis for finding there was a fair probability that evidence of criminal activity would be found" in the respective electronic accounts.

The first search warrant — the one for records associated with AT&T telephone numbers provided as defense exhibit F — set forth following logical chain, supported by the sworn testimony of the agent:   (1) Michael Tew worked at the victim company, (2) after Michael Tew was terminated, the victim company began paying money into accounts controlled by Michael Tew for services that the company never received and did not authorize, (3) a witness inside the victim company helped Michael Tew and Kimberley receive the money for services that were not rendered, (4) Michael Tew used the telephone numbers that were the target of the warrant to execute the scheme, (5) Michael Tew and Kimberley Tew listed the target telephone numbers on their bank accounts and used those bank accounts to transfer fraud proceeds, (6) the telephone provider maintains records of communications.   That is, the affidavit clearly established probable cause to believe

a crime had been committed, that the Tews were committing it, that they were using phones to facilitate it, and that the phone company maintained records. The later search warrants — the one issued in September 20202 (Def. E.) and the three issued in December 2020 (Def. Exs. H, I, and K) contain the same logical chain, supported by much of the same evidence, and contain statements specifically describing how the accounts to be searched were related to the scheme.

The defendants do not challenge the logical chains presented in the affidavits or explain — as he must — how or why the "totality of the information" presented in them was insufficient.   That is, the defendants cannot secure the extreme sanction of blanket suppression by breaking the warrant down into pieces and then explaining why one piece or each piece alone is insufficient.

### V.   That the Government Followed the Two-Step Electronic Search Warrant Process Outlined in Rule 41 is Not A Reason to Suppress

The defendants also challenge the warrants on the ground that they improperly "seized the entire contents" of accounts. Def. Mot. at 19 (§   IV.A.4.c), 22 (§ IV.B.3), 25 (§ IV.C.2.c), 27 (§ IV.C.2.c). 29 (§ IF.E.2.c).   But they ignore the fact that this is precisely what the Federal Rules of Criminal Procedure Require.

On its face, Rule 41 provides that

A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or

review.

Fed. R. Crim. P. 41(e)(2)(B). By its express terms, then, the Rule distinguishes between the "execution" of the warrant, which it equates with the time of "seizure or on-site copying of the media or information," and a subsequent "review" of that information. *Id.* The Advisory Committee Notes remove any ambiguity: "computers and other electronic storage media commonly contain such large amount of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location...officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."   While the rule does not specifically reference email accounts, those same Advisory Committee Notes channel the Fourth Amendment's command of reasonableness by explaining that "the term 'electronic' is used to provide some flexibility to the rule and make allowance for further technological advances in transmitting data."   The Advisory Committee Notes to Federal Rule of Civil Procedure 34, which specifically references "electronically stored information" notes that "the wide variety of computer systems currently in use, and the rapidity of technological change, counsel against a limiting or precise definition of electronically stored information. Rule 34(a)(1) is expansive and includes any type of information that is stored electronically. A common example often sought in discovery is electronic communications, such as e-mail."

Furthermore, the rule provides that while the "seizure" must take place within 14 days, the later "review" has no time limit and is instead examined under a reasonableness standard. *Id.; see also United States v. Syphers*, 426 F.3d 461 (1st Cir. 2005) ("The Fourth Amendment itself contains no requirements about when the search or seizure is to occur or the duration") (emphasis in the original) (internal quotation marks and citation omitted).

For these reasons, the vast weight of authority across the United States supports a two-step process like the one outlined in the warrants here, where the government obtains the entire email account in the first step, and then conducts its particularized search in the second step.   *See ,e .g., In the Search of Records, Information, and Data Associated with 14 Email Address Controlled by Google, LLC*, 438 F. Supp. 3d 771,778 (E.D. Mich. Feb. 4, 2020 ("Michigan Email Accounts") (citing 8 district courts around the country approving the two-step procedure specifically with respect to emails); *In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled by Google, Inc.*, 33 F. Supp.3d 386, 394 (S.D.N.Y. July 2014) ("S.D.N.Y. Email Account"); *In the Matter of the Search of Information Associated with [Redacted]@Mac.Com That is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp.3d 157, 165 (D.D.C. 2014) (citing several circuit cases in support of two-step approach); *United States v. Deppish*, 994 F.Supp.2d 1211 (D. Kan. 2014) ("[N]othing in § 2703 precludes the Government from requesting the full

content of a specified email account, nor has the Tenth Circuit ever required warrants to identify a particularized search strategy").

Here, the government timely obtained, pursuant to a valid warrants, information from Apple and Google, which comprise the entire accounts. Those entire accounts have been produced in discovery. But it is misleading to say that all of those items have been "seized."   As set forth below, the government has endeavored to work in good faith with the defendants to actually conduct its search in a manner that will protect recognized privileges by implementing a filter team. However, extreme volatility with respect to the various counsel who have represented the defendants in these proceedings has actively prevented that process.   Put another way, the fact that certain emails are in the government's "possession" (and thus subject to discovery) does not mean that they have been lawfully "seized" pursuant to the warrant (and thus authorized to be used as evidence in this case).

In weighing the reasonableness of the government's retention of information that is not identified in Section II of the respective "Attachment Bs" to the warrants, the Court must weigh the government's constitutional discovery obligations and legitimate interests in preserving evidence for trial against the defendants' interest in the e-mails of accounts that they have not actually asserted are theirs and for which they have no physical custody. *See Terry v. Ohio*, 392 U.S. 1, 20-21 (1968) ("it is necessary 'first to focus upon the governmental interest which

allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails'") (quotation omitted).

The government, subject to Rule 41(g), can retain lawfully seized materials of evidentiary value until the proceedings terminate. *United States v. Uribe-Londono*, 177 Fed. App'x 89, 90 (1st Cir. 2006) (the district court determined that "the government had adequately shown a need to retain the items as evidence until the criminal proceedings had concluded"); R*amsden v. United States*, 2 F.3d 322, 326 (9th Cir, 1993) ("The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution").

Multiple courts have recognized the government's legitimate interest in retaining original, unaltered electronic media that integrates information identified as falling within the material authorized to be seized *and* whatever remains in order to comply with discovery obligations and to preserve the evidence through the conclusion of criminal proceedings. *See United States v. Ganias*, 824 F.3d 199, 213-16 (2nd Cir. 2016) (en banc) (upholding the execution of the warrant on good-faith grounds, but also recognizing the government's legitimate interest in preserving the media to protect the integrity of the data, to authenticate it at trial, and to permit the defense to conduct independent forensic analysis and search for exculpatory evidence); *United States v. Carpenter*, 2015 WL 9461496, *6-*7 (D. Conn. Dec. 24,

2015) (noting that the government "is not refusing to return or destroy materials simply because they might be useful in a subsequent investigation"; "the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial"); *S.D.N.Y. Email Account*, 33 F. Supp. 3d at 398-99 ("[W]e recognize that the Government has a need to retain materials as an investigation unfolds" and "to maintain a complete copy of the electronic information to authenticate evidence responsive to the warrant for purposes of trial"); *United States v. Staton,* 2012 WL 2159355, *2, *6 (E.D. Pa. June 14, 2012) (to the extent extensive electronic evidence, including multiple computers and storage media, contained responsive documents, the government did not have to return it before the end of the proceedings) (citing multiple cases); *United States v. Kiderlen,* 2006 WL 3079048, *12 (E.D. Miss. 2006) (denying the defendant's motion for a return of property even where the government "d[id] not presently intend to offer the computer or its contents in its case-in-chief," because the items could still have "evidentiary value or relevance").

As set forth below, the government has a legitimate interest in retaining the material because it has warrants requiring it to search through that material to identify items referenced in Section II of the respective "Attachment Bs." The only reason it hasn't yet done so is out of a solicitous concern over legitimate privileges that would protect items from any kind of review.

Google and Apple provided all data for all referenced electronic accounts

including the contents of the emails, as required by Section I of the respective "Attachment Bs" to the warrants. The irretrievable destruction of that information would put the government in the position it could be faulted for its failure to comply with its discovery obligations under Rule 16 but also for its destruction of any presently unknown exculpatory information if it exists. *See, e.g., United States v. Laurent*, 607 F.3d 895, 900, 902 (1st Cir. 2010) (allowing for a "spoliation" jury instruction where one party, in "bad faith," destroys evidence favorable to the other, and discussing the legal framework and the potential for a due process violation when the government destroys potentially exculpatory evidence); *California v. Trombetta*, 467 U.S. 479 (1984) (destruction of a breath sample); *Arizona v. Youngblood*, 488 U.S. 51 (1988) (destruction of biological matter on the defendant's clothing); *Illinois v. Fisher*, 540 U.S. 544 (2004) (destruction of cocaine).

Similarly, the government has retained the originally produced information referenced in Section I of the Attachment Bs in the warrants to Apple and Google to show the chain of custody, establish authenticity, forestall any allegations of tampering with the evidence, and to permit the defense to conduct their own examination of that evidence.

Finally, as set forth below, the churn in defense lawyers and prior counsel's refusal to engage in good-faith negotiations over how to balance the government's obligation to execute a court ordered warrant with each respective defendant's legitimate privilege interests have resulted in a situation where the government has

still been unable to review the email evidence to actually determine what should be seized.   In this respect — as set forth below — the defendants' motion is not ripe: there are currently very few items to suppress because the government hasn't even been able to conduct its search.

## VI.   The Search Warrants Describe the Items to be Sized with Sufficient Particularity

The Fourth Amendment requires not only that warrant be supported by probable cause, but also that they particularly describe the place to be search and the . . . things to be seized." U.S. Const. Amend. IV.   The "tings to be seized" requirement, just like everything else in the sphere of Fourth Amendment law, is subject to the rule of reasonableness.   The question is whether the description of the item "enables the searched to reasonably ascertain and identify the things authorized to be seized." *United States v. Robertson*, 21 F.3d 1030, 1033 (10th Cir. 1994).   Even broad and generic terms can satisfy this standard if they are as "specific as circumstances and the nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990).

That the warrants here sought electronic information does not change these general principles. "[W]arrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material" but courts must keep in mind that they should interpret search warrant affidavits in a common sense and realistic fashion." *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009). Accordingly, the Tenth Circuit has "adopted a somewhat forgiving

stance when faced with a "particularity" challenge to a warrant authorizing the seizure of computers." *United States v. Grimmett*, 439 F.3d 1263, 1269 (10th Cir. 2006).

Digital information sought in computer servers, no different that digital information sought in computers, "may be as extensive as reasonably required to locate the items described in the warrant." *Id.* at 1270. A warrant authorizing the seizure of records of criminal activity "permits officers to examine many papers in a suspect's possession to determine if they are within the described category." *United States v. Wicks*, 995 F.2d 964, 974 (10th Cir. 1993) (referencing *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) and its advice that officers need some latitude to conduct searches because "few people keep documents of their criminal transactions in a folder marked 'drug records' ")). And unlike a warrant for a cognizable physical object—such as drugs or weapons—when officers search through papers, records, or data for evidence, "it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen v. Maryland*, 427 U.S. at 482 n.11 (1976); *see, e.g., Burgess*, 576 F.3d at 1094 ("In the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files. It is particularly true with image files.").

Generally speaking, it is sufficient for a warrant to specify that the evidence it seeks is tied to specific criminal statutes and is cabined to a particular date range. *Burgess*, 576 F.3d at 1091 (approving search warrant that limited search to evidence of specific crimes, such as drug trafficking); *Michigan Email Accounts*, 438 F. Supp. 3d at 779 (noting in complex investigation that it was sufficient to permit seizure of items related to identified criminal statutes). The warrants here did that, and more. All of them are limited to time frames with reference to the facts set forth in the affidavits.   Def. Mot. Ex. D (limited to between May 1, 2018 and September 17, 2020); Def. Mot. Ex. F (limited to between June 1, 2018 and July 7, 2020); Def. Mot. Ex. H (limited to between August 12, 2020 and October 22, 2020); Def. Mot. Ex. I limited to after August 1, 2018); Def. Mot. Ex. K (same).

And all of them are even more particular than what the Tenth Circuit has required, limited the items to be seized to not just evidence related to specific statutes, but also further limiting it to a specific scheme against the named victim company. Def. Mot. Ex. D at SW_00000065; Def. Mot. Ex. F at SW_0000005; Def. Mot. Ex. H at SW_00000102; Def. Mot. Ex. I at SW_00000126; Def. Mot. Ex. K at SW_00000151.

## VII.   The Defendants' Request for Blanket Suppression is Not Authorized by Law and, in any Event, is Not Ripe for Adjudication

Even if the Court were sympathetic to portions of the defendants' motion, its requested relief is far too broad. The motion asks the Court to suppress *all* evidence

seized from the warrants. That would not be proper. Rather, the defendants must articulate exactly which categories of items in the warrant are insufficiently particular and the Court must determine the constitutionality, item by item as part of a "severance" analysis. *United States v. Sells*, 463 F.3d 1148, 1156 (10th Cir. 2006). 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.6(f) (Dec. 2021) ("[I]t would be harsh medicine indeed if a warrant issued on probable cause and particularly describing certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well."). "Blanket" suppression is only appropriate in "exceptionally egregious circumstances" involving flagrant disregard of a search warrant's terms.   *United States v. Webster*, 809 F.3d 1158, 1167 and 1170 (10th Cir. 2016) (noting that this standard merges with the *Herring/Davis* line of Supreme Court cases, referenced below).

The only specific items the defendants have identified as potentially warranting suppression are the items in Defense Exhibits T-Z and BB.   But even there, those emails clearly fall into the warrant's authorization for evidence identifying the "person(s) who created or used the Apple ID."3   Def. Mot. D at SW_00000091. There is no valid reason to suppress that evidence, which would show *who* was involved in using any emails in that account to facilitate the specific

---

3  Exhibit AA seems to comprise emails to and from accounts that are not otherwise identified in the warrants and it is unclear on its face which electronic repository it came from.

crimes articulated during the specific time period identified.

More fundamentally, the reason the defendants' motion is so deficient with respect to what precisely *what* items of evidence should be suppressed as somehow outside the scope of the warrant is that prior counsel stymied efforts to reach a mutually agreed-upon protocol that would filter the accounts to protect potentially privileged information. The history of this process is set forth in the attached Filter Memorandum and its attachments, which have all been provided to defense counsel. Gov't Exhibit 1. The government's approach to executing the warrants has been exceedingly cautious and consistent with the Fourth Amendment's requirement to be "reasonable."

The government intends to work with the new defense lawyer to find a mutually agreeable process by which the agents can actually undertake the "step 2" review contemplated by the Federal Rules of Criminal Procedure and the search warrants themselves. In the meantime, because the government has taken the prudent step of working transparently with defense counsel before conducting that review, no one has even been able to identify the items in the account that would fall within the specific categories authorized by the warrant and thus no way to know which, if any, identifiable items are the product of any non-particularized or problematic search.

## VIII.  The Motion Should be Denied Because the Agents Relied on and Are Executing the Warrants in Good Faith

In *Davis v. United States*, the Supreme Court made it clear that that the sole purpose of the exclusionary rule is to deter Fourth Amendment violations.   564 U.S. 229, 245 (2011)(emphasis in original).   That is, the "extreme sanction of exclusion" should be applied only as a "last resort" to deter police conduct that is "deliberate, reckless or grossly negligent."   *United States v. Leon*, 468 U.S. 897, 916, 926 (1984); *Herring v. United States*, 555 U.S. 135, 144 (2009).   Furthermore, the exclusionary rule applies "only where it result[s] in appreciable deterrence" and, even if might result in deterrence, "the benefits of deterrence must outweigh the costs."   *Herring,* 555 U.S. at 141.

None of the supposed ails of any of the searches would justify the harsh medicine of the exclusionary rule.   The affidavits each set forth in detail the scheme to defraud the victim company through the use of bogus invoices to sham companies, payable into accounts controlled by the defendants and associated with the specific electronic accounts or phone numbers identified. There is no articulated basis for concluding that the agents were trying to evade legal requirements or otherwise do anything other than thoughtfully seek the truth.   Excluding the evidence of the search serves no deterrent purpose.   And even if it did, preventing the jury from seeing evidence of the truth — that the defendants used electronic accounts to take $5,000,000 that did not belong to them would have considerable social costs outweighing any benefit.   *See Davis*, 546 U.S. at 237 (recognizing that

28

the bottom-line effect of suppression is that courts "ignore reliable, trustworthy evidence bearing on guilt or innocence," "suppress the truth," and "set the criminal loose in the community without punishment.").

### IX.   The Court Can Decide the Motion as a Matter of Law and Need Not Hold a Hearing

The defendants do not make any factual allegations or put any facts at issue. Rather, he has attached the affidavits, articulated legal principles at very high levels of generality, and then requested suppression as a matter of law.   The defendants have not satisfied their burden and the Court can deny the motion.   It should not have an evidentiary hearing with no articulated factual dispute, especially when it can decide for itself as a matter of law whether (1) *Carpenter* somehow implicitly undermines the precedents it otherwise explicitly says should remain in place, (2) whether *Warshak* has anything to do with non-content 2703(d) orders, (3) whether the defendants have established standing, (4) whether multiple magistrate judges had a substantial basis for making separate and independent findings of reasonableness and probable cause, (5) whether the warrants are sufficiently specific, and whether suppression is even a social cost worth imposing in this case.   *See United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (decision on whether to have a hearing is up to trial court's discretion); *United States v. Vasquez-Garcia*, 2021 WL 486881 at *2 (D. Utah Jan. 29, 2021) (denying motion and request for hearing in part because the motion failed to present factual and legal issues with particularity); *United States v. Edgeworth*, 889 F.3d 350, 354

(7th Cir. 2018) (finding no abuse of discretion where judge declined to have a hearing on vague and conclusory claims without factual support or explanation).

## CONCLUSION

The defendants have no standing to challenge the search warrants and orders targeted by the defendants' motion and even if they do, there is no legally valid reason for the judiciary to "ignore reliable, trustworthy evidence" that might bear on who defrauded a business out of millions by suppressing it in circumstances where the government relied on good faith on existing law and the independent findings of several magistrate judges.   The Defendants' Motion should be denied.


Respectfully submitted,

COLE FINEGAN
United States Attorney

By:   *s/ Bryan David Fields*
Bryan David Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Bryan.Fields3@usdoj.gov

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation authorized by the Court's order of May 12, 2022, ECF No. 199.

*/s Bryan David Fields*
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government agrees with the defendants' statement of speedy trial impact in the Motion to Suppress docketed at ECF No. 200.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

<u>*s/ Bryan David Fields*</u>
United States Attorney's Office