IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1. **MICHAEL AARON TEW, and**
    2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendants.

### GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS FOR VIOLATING COMMUNICATION PRIVILEGES [ECF NO. 214]

The defendants' Motion for Sanction for Violating Communication Privileges, ECF No. 214, ("Def's Mot. for Sanctions") accuses the government of violating accountant-client and doctor-patient privileges without noting that federal law recognizes no such privileges.  It similarly accuses the government of violating the marital communications privilege without noting black-letter Supreme Court law recognizing that the privilege is evidentiary, not constitutional, and that investigators are authorized to use those communications to develop derivate evidence.  *Trammel v. United States*, 445 U.S. 40, 52 n.12 (1964).  And it accuses the government of violating an attorney-client privilege without describing any particular such communication used by the government or how any such communication is privileged.  *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999)

("The party must bear the burden as to specific questions or documents, not by making a blanket claim."). The motion should be denied.

1. As described in the government's response to the Government's Response to Defendant's Motion to Suppress Evidence ("First Motion to Suppress"), ECF No. 204, several magistrate judges found probable cause to issue warrants authorizing the search and seizure of digital information located in several email accounts. The propriety of the two-step process used by every U.S. Attorney's office in the country to execute those warrants — as approved by courts around the country — is explained in detail in the First Motion to Suppress, ECF No. 204 at 16-23, and the government incorporates those arguments here.

2. Paragraphs 4 and 5 of the defendants' motion imply both a temporal causality that does not exist and blame the government for lengthy delays occasioned by the defendants' difficulty retaining counsel. The government has prophylactically taken steps to protect any applicable attorney-client privilege throughout this litigation and has worked with the defendants' rotating cast of defense attorneys at each step to negotiate the best way to accomplish that goal. This procedural history was previously set forth in the First Motion to Suppress, and in the attached filter memorandum, which are entirely ignored by the defendants. The filter memorandum, ECF No. 204-1, explains that Mr. Ekeland took the position that no government filter process would be acceptable and made the kind of blanket assertion of privilege that the Tenth Circuit has said is invalid. Mr. Ekeland proposed discussions over that position and then abruptly withdrew

from this matter the day one of the undersigned AUSAs was scheduled to meet with him in Brooklyn. The defendants then engaged in a months-long process to retain their current counsel, during which time the government prudently paused its execution of the warrant so that it could work with whoever they retained as their new counsel.

3. The government's filter team is limited to attorney-client communications because Federal common law developed pursuant to Federal Rule of Evidence 501 does not recognize a medical privilege or an accountant privilege and permits the government to review marital communications, as permitted by the relevant search warrant. If the defendants believe that certain communications are protected by a privilege, they have the burden of proving it. *In re Grand Jury Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010).

a. Federal courts do not recognize a generic medical privilege. *Whalen v. Roe*, 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is unknown at common law."); *see, e.g., United States v. Trejo-Islas*, 248 F. Supp. 2d 1072, 1077 (D. Utah 2002) (finding "no merit" to portion of motion to suppress premised on supposed physician-patient privilege) The defendants cite no cases for their assertion that there is such a privilege and, if they believe that such a privilege has lain quiescent in the common law for the past hundreds of years, they bear the burden of revealing its existence.

b. The same is true for an accountant-client privilege. There is no such thing. *United States v. Arthur Young & Co.*, 465 U.S. 805, 818 (1984) ("[N]o

confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases.") (quoting *Couch v. United States*, 409 U.S. 322, 335 (1973); *Sutton v. United States*, 658 F.2d 782, 784 (10th Cir. 1981) ("It is well settled that there is no confidential accountant-client privilege under federal law. Furthermore, in federal cases there is no state created accountant-client privilege."). Some courts have recognized a privilege where an accountant is retained by an *attorney* to provide expert guidance in a legal matter, but that is just a specific application of the well-established attorney-client privilege. *See, e.g., United States v. Kovel*, 296 F.2d 9`8 (2d Cir. 1961).

    c.    As set forth above, *Trammell* makes it clear that the marital privilege only prevents one party from admitting evidence of a protected marital communication *in court*. It does not prevent any review of those messages for information helpful to an investigation. *See, e.g., United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (rejecting argument that suppression of evidence derived from privileged marital communications was proper "given that the privilege is a testimonial or evidentiary one, and not constitutionally-based"); *United States v. Lefkowitz*, 618 F.2d 1313, 1318 n.8 (9th Cir. 1980) ("Because we reject … Lefkowitz's argument that the marital privileges are somehow constitutionally grounded in, among other locations, the Fourth Amendment, we doubt that a secondary source of information obtained through information protected by the confidential marital communications privilege would in any way be 'tainted'."); *United States v. Marashi*, 913 F.2d 724, 731 n.11 (9th Cir. 1990) ("[W]e

need not resolve Marashi's claim that all evidence derived [from marital communications] should be excluded as fruits of the poisonous tree. Suffice it to say that no court has ever applied this theory to any evidentiary privilege …").

        d.      Finally, the search warrants here authorize the government to seize communications regarding violations of federal conspiracy, fraud, obstruction, and money laundering statutes. Such communications would not be covered by the marital communications privilege at all because that privilege — like every other recognized by the federal courts — does not permit parties to use a privilege to further joint criminal activity. *United States v Bey,* 188 F.3d 1, 5 (1st Cir. 1999) ("The spouse's involvement in the criminal activity, however, need not be particularly substantial to obviate the privilege."). Participation in discussions in furtherance of the criminal activity, involvement in payments, and efforts to conceal the criminal activity are sufficient to obviate the protection of the marital communications privilege. *See, e.g., id.* at 6 (finding wife was joint participant based on her "knowing acceptance of drug proceeds, her efforts to maintain [defendant's] cover story for the benefit of his unsuspecting couriers, and her decision to act as a go-between when [defendant] needed additional funds from [a co-conspirator] to conduct criminal activity"); *United States v. Short*, 4 F.3d 475, 478–79 (7th Cir. 1993) (finding wife was joint participant, albeit in a "minor role," where she prepared fraudulent title, registration, and other documents necessary for selling stolen cars to legitimate buyers).

        4.      *In re Search Warrant*, 942 F.3d 159, 176 (4th Cir. 2019) is a classic

example of extreme facts making extreme law. There, a team in Maryland executed a search warrant at the offices of a Baltimore law firm and seized broad categories of documents unrelated to the specific attorney under investigation. The Fourth Circuit concluded that various aspects of the case, including the breadth of the seizure, the ability to conduct proceedings in an adversarial fashion, and concerns about investigate agents making privilege determinations made the filter protocol an unconstitutional usurpation of judicial functions. The approach in that case has not been adopted in any other circuit and the defendant provides no reason to think the Tenth Circuit, or this court, should adopt it here.

5. Filter teams are the common and appropriate response when investigators determine that evidence may be protected by an attorney-client privilege. *See, e.g.*, *United States v. Brewington*, No. 15-cr-73-PAB, 2018 WL 1046804, at *4 (D. Colo. Feb. 26, 2018) (concluding that it was appropriate for government to set up filter team to review privileged emails inadvertently provided by cooperating defendant); *see also United States v. Mower*, 2010 WL 3938265 (D. Utah. Oct. 6, 2010); *United States v. Yousef*, No. 94 CR. 180 (KTD), 1999 WL 714103, at *1 (S.D.N.Y. Sept. 13, 1999) (approving the government's use of "a special unit of prosecutors and agents . . . [who] had nothing to do with the prosecution of the World Trade Center and Manila Bombing cases" to investigate allegations by a jailhouse informant that incarcera1ted, convicted defendants were planning new terrorist activities); *United States v. Rodriguez*, No. 94 CR. 313 (CSH), 1998 WL 26189 (S.D.N.Y. 1998) (the court authorized the government to set

up a new prosecution team to investigate allegations of jury tampering by a defendant then on trial); *see also United States v. Simels*, 654 F.3d 161, 166 (2d Cir. 2011) (upholding district court's determination that government had a sufficient basis to suspect Simels was engaging in obstruction and upholding order permitting the filter team's interceptions of telephone conversations between Simels and his charged client; noting that Simels did not claim government "fire wall" had been breached).

6. Even more compelling, the filter protocol here specifically provides for defense counsel's involvement before any potentially privileged communications are disclosed to the prosecution team. In that respect, this case is no different from *In re Search Warrant and Application for a Warrant by Telephone or Other Reliable Electronic Means*, 11 F. 4th 1235 (11th Cir. 2021), where the Eleventh Circuit approved the government's filter protocol. In that case, the Eleventh Circuit distinguished the Fourth Circuit's decision in *In re Search Warrant*, noting that there was no claim the majority of the seized materials were privileged and irrelevant, that the court could conduct adversarial hearings over the filter protocol, and that the protocol allowed the defense attorneys to object before privileged materials were provided to the government. Id. at 1251. The filter team here has provided the defendant with *all* of the material seized from the warrant and has asked the defendant to identify materials that he believes are privilege. Defense counsel has not done so and has not provided guidance on how the search warrant can be executed in a way that will protect attorney-client privilege. Without help

from defense counsel, the best approach is the one adopted by the government here and approved by the Eleventh Circuit.

      7.      Adopting a rule that would prevent the government from executing search warrants any time any defendants have ever retained an attorney in the past would be extreme and impractical. The court could hire independent special masters to conduct filter reviews, but this, too, is unnecessarily rigid. While courts have sometimes raised concerned about foxes guarding henhouses in this one context of attorney-client privilege, it is worth taking a step back and assessing whether and why the context of the attorney-client privilege uniquely turns the government into some kind of atavistic animal incapable of dispassionately discharging its duties. The Supreme Court has repeatedly emphasized that the government bears the burden of discharging its duties under the *Brady* line of cases. *See Kyles v. Whitley*, 514 U.S. 419, 437 (21995) (noting responsibility of prosecutors).  The judiciary has not decided in that context — one that is firmly grounded in the constitution and much more critical to the fair administration of justice — that the government is incapable of reviewing discovery and pursuing cases with integrity and fairness. Why is it different when the government sets up a team of lawyers who have nothing to do with this particular case and who are given specific instructions designed to protect the defendant? It is not, and there is no compelling reason for this Court to adopt the Fourth Circuit's approach precluding the use of government filter teams, especially when more practical alternatives have found approval in this circuit and elsewhere.

8. The defendants have not provided a single example of any communication protected by a privilege and used by the government at all, let alone use of privileged material to secure any kind of advantage. Without this, there can be no sanctions. The government acknowledged in its filter memorandum that an IRS agent saw a communication that she believed may have been with an attorney. But the IRS agent has been interviewed by the Filter Attorney and there is no reason to think that the IRS agent did anything other than she was expected to do: stop reading immediately and contact an AUSA. That is a far cry from any of the conduct described in any of the cases cited by the defendants, which all refer to *constitutional* violations arising from the *Brady* line of cases or the right to a Speedy Trial that are not implicated by their accusations. There is no basis for sanctions here.

9. Even if there was a basis for sanctions, the court should "impose the l*east severe sanction* that will punish the offending party for his wrongdoing, remedy the prejudice to and harm suffered by the adverse party and the judicial process, deter future litigants from engaging in similar conduct, and inspire confidence in the integrity of the judicial process." *Raymond v. Spirit AeroSystems Holdings, Inc.*, 2017 WL 2831485, at * 17 (N.D. Kan. June 30, 2017). Dismissing the indictment would be a radical and extreme remedy, especially when defendant cannot reference any allegedly privileged material used to secure that indictment in the first place. *Cf. United States v. Williams*, 504 U.S. 36, 45 (1992) (noting that there is no general supervisory judicial authority over grand jury proceedings). The

more typical remedy when one party has been exposed to potentially privileged materials is disqualification of an attorney or agent. But here, new AUSAs have only been recently assigned to the case and those AUSAs have not had access to anything that even might be privileged because the search warrant materials are still behind a filter wall. Again, there is no basis for sanctions at all and even if there was, none of the remedies sought by the defendants would be proportional responses to any alleged violations. *See, e.g., United States v. Berger*, 251 F.3d 894, 907 (10th Cir. 2001) (noting reluctance to disqualify for violation of Rule of Professional responsibility); *Nickel v. Hannigan*, 97 F.3d 403, 409 (10th Cir. 1996) (declining to apply a "fruit of the poisonous" tree-type analysis to breaches of privilege).

The defendant has not articulated any actual, as opposed to hypothetical, violations and even if he did, dismissal of the indictment is an extreme remedy unsupported by any of the cited cases or other applicable law. The defendants' motion should be denied.

Respectfully submitted this 9th day of August, 2022.

        COLE FINEGAN
        United States Attorney

By: */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By: */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*/s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States