**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  20-cr-00305 -DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL ARON TEW,

2. KIMBERLY ANN TEW,
      a/k/a Kimberley Vertanen,

      Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF 3222 EAST FIRST
AVENUE, APARTMENT 224 [ECF No. 221]**

---

In their "Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224," ("Defendants' Motion"), Defendants challenge a search warrant of their apartment. Specifically, they request that this Court suppress, (1) the "items seized," for failure to establish probable cause, and (2) the "photographs taken" as outside the scope of authorization of the search warrant. ECF No. 221, ¶ 19. For the reasons set forth below, the United States respectfully requests that the Court deny the Defendants' Motion.

I.      **THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT ESTABLISHED PROBABLE CAUSE WITH SUFFICIENT NEXUS TO SEIZE THE BANK BAGS.**

Defendants make two claims challenging the affidavit: that it lacks sufficient nexus and that paragraph 40 is insufficient. Addressing both arguments in turn, the government asserts both claims fail.

A.      **There was sufficient nexus between the crime and the place searched.**

Defendants first claim that "the Affidavit failed to establish was [sic] probable cause for the search and seizure of" the seized Wells Fargo cloth bag and one green cloth Guaranty Bank and Trust Company bag ("bank bags"). Defendants' Motion at ¶ 19. Defendants reason that "there is no nexus between the bank bags, the residence, the criminal conduct or the proceeds or evidence of criminal conduct." *Id.* ¶ 7, *see also Id.* ¶ 3-8.

The "probable cause [required by the Fourth Amendment] to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Put another way, whether there exists probable cause is a "commonsense, practical question" answered by evaluating the totality of the circumstances and turning on whether there is a "fair probability" that contraband or evidence will be in a particular place. *United States*

*v. Biglow* 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

These principles apply both to whether a crime has occurred and to whether evidence of that crime will be in a particular place — the "nexus requirement". *United States v. Khan*, 989 F.3d 806, 816 (10th Cir. 2021). That is, the search warrant does not need to establish with certainty that items will be in a particular place. It needs to describe "circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* at 816. A magistrate judge can draw reasonable inferences from the information in an affidavit and consider the "practical considerations of everyday life." *Biglow*, 562 F.3d at 1279. Courts should not review search warrants in a "hypertechnical manner;" they should be reviewed with common sense. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Once a magistrate judge has found probable cause and issued a warrant, the law discourages second-guessing. If the circumstances are "doubtful or marginal," the district court should give deference to the judgment of the magistrate judge. *Biglow*. 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984)).

"If the [magistrate] judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners." *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *United*

*States v. Beck*, 139 Fed. Appx. 950, 954 (10th Cir. 2005). Here, the affidavit, within its four corners, sufficiently established a nexus between Defendants' crimes and the apartment, articulating the following chain of logic: (1) Defendants committed fraud that resulted in receiving money from Victim National Air Cargo ("NAC"), (2) Defendants deposited those proceeds into bank accounts, (3) Defendants withdrew those proceeds using the bank bags, and (4) those bank bags were located in Defendants' shared apartment.

Specifically, examining the affidavit, it described sufficient facts establishing Defendants' relationship with NAC and the complex, fraudulent scheme employed to illegally obtained proceeds from Victim by submitting fraudulent invoices in paragraphs 27 through 35. From there, the affidavit established that Defendants had deposited those proceeds into traditional bank accounts operated by Defendants, information learned from Defendant Michael Tew himself. *Id.* ¶ 39. Thereon, the affidavit states directly that "M. TEW used two bags interchangeably to carry cash withdrawn from traditional bank accounts that received," corroborated by video footage showing Defendant Michael Tew's possession of a black cloth bag and also bank records showing withdrawal of funds. *Id.* ¶¶ 40, 41. Thus, the affidavit established a nexus between the crimes and use of the bank bags to transfer fraudulently obtain funds.

The affidavit then directly established that "on July 28, 2020, M. TEW stated that the Wells Fargo branded cloth bag with the Guarantee Bank and Trust cloth

are stored at his shared apartment with K. TEW," establishing a direct link to Defendants' apartment. *Id.* ¶ 40. Thoroughly, the affidavit established that "M. TEW AND K. TEW share the apartment . . . at 3222 East First Avenue, Apartment 224, Denver Colorado 80206," articulating fully that the place to be searched in the search warrant was in fact linked to Defendants. *See United States v. Gonzalez*, 399 F.3d 1225, 1231 (10th Cir. 2005) (facts must establish residence belongs to or is otherwise linked to defendant). Accordingly, contrary to Defendants' claim, the chain of logic in the affidavit supported sufficiently and directly a nexus among the crime, the bank bags, and the apartment searched, and the Court should accord the magistrate judge's determination due deference.

### B.  Paragraph 40 should be read in context and with common sense.

Defendants next claim that paragraph 40 is founded on statements with no indication of when, to whom, and under what circumstances Defendant Michael Tew made the statement. Defendants' Motion at ¶ 5; *see Id.* 221-1, ¶ 40. The government cannot ascertain, however, whether Defendants' assertion is a legal challenge to the warrant or intended to support Defendants' nexus argument. Unfortunately, no authority was provided to aid in a determination.[1]

In the interest of not conceding Defendants' point, if a meritorious claim can be somehow inferred, the government asserts that Defendant is simply incorrect

---

[1]     To the extent that Defendants are attempting to establish a violation pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)—that paragraph 40 contains a misstatement or omission—they have not made a "substantial preliminary showing" of all elements of a *Franks* violation. *See United States v. Herrera*, 782 F.3d 571 (10th Cir. 2015).

that the missing context for Defendant Michael Tew's statements was not provided. Looking earlier in the affidavit at paragraph 29, it established that Defendant Michael Tew was interviewed by law enforcement officers in July 2020, the first mention of any statements made by that defendant. In paragraphs 38 as well as 40, Michael Tew's statements are provided without the context of when, to whom, and under what circumstances they were made. It follows, by common-sense in the totality of the circumstances contained in the affidavit, that the statements made in paragraph 40 are attributed to the July 2020 interview mentioned in paragraph 29. At any rate, the district court should give deference to the judgment of the magistrate judge that sufficient information regarding the statements in paragraph 40, ultimately aiding to establish probable cause, was contained in the affidavit. *See Biglow.* 562 F.3d at 1282.

### C.  The agents relied on the warrant in good faith.

Should the Court find any of Defendants' claims above persuasive, that the warrant was defective in some way, the Court should not suppress the items seized because the agents relied on the warrant in good faith. The good faith exception applies when law enforcement obtain evidence in objectively reasonable reliance on a warrant later found to be technically defective. *Mass. v. Sheppard*, 468 U.S. 981. 991 (1984); *United States v. Leon*, 468 U.S. 897, 922 (1984).

Here, the agents' reliance on the facially sufficient search warrant, ECF No. 221-2, was objectively reasonable because it was issued by a United States

6

magistrate judge who had reviewed a supporting affidavit with sufficient indicia of probable cause, *Id.* No. 221-1, No technical deficiencies were apparent to objectively supply an unreasonable belief that the warrant was mistaken. *See Leon*, 468 U.S. at 923 (describing circumstances in which it might not be objectively reasonable to rely on a warrant, none of which apply here); *United States v. Cruz*, 774 F.3d 1278, 1291 (10th Cir. 2014) (same). Accordingly, even if the Court finds technical deficiencies per Defendants' arguments against nexus and paragraph 40, the Court should still decline to suppress because the agents acted in good faith.

## II.   ALL PHOTOGRAPHS WERE EITHER EXPLICITLY AUTHORIZED OR IN PLAIN VIEW AND THUS SHOULD NOT BE SUPPRESSED.

The Defendants bear the burden of proving that a search was improper. *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) ("Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of proof.") (citation and quotation marks omitted). Defendants here argue that "agents did not have authority pursuant to the search warrant to seize photograph images of the apartment" because "the seizure of those photographic images exceeded the scope of the warrant issued by Magistrate Judge Haggarty [sic]." ECF No. 221, ¶ 16; *see id.* ¶ 15. In opposition, the government asserts that Defendants have not met their burden. All photographs were either authorized or otherwise in plain view during a legitimate search and thus should not be suppressed. *Arizona v. Hicks*, 480 U.S. 321, 325 (1987) (noting that items lawfully exposed to the view of the police have no Fourth Amendment protection); *United States v. Mancari*, 463 F.3d

590, 596 (7th Cir. 2006) ("[w]hen officers who are lawfully on the premises pursuant to a valid search warrant merely record what they observe there that is in plain view, they do not invade legally protected privacy or any other legal interest." *Platteville Area Apartment Assoc. v. City of Platteville*, 179 F.3d 574, 579 (7th Cir.1999)).

A.   **The constitutionality of all photographs must be determined item by item.**

Generally, if executing officers exceed the scope of a search warrant, the seized evidence may be suppressed. *Patel v. Hall*, 849 F.3d 970. 984 (10th. Cir. 2017). At issue here are 108 photographs agents taken during execution of the search warrant, provided in discovery, and logged in a photolog. Exhibit 1; *see also* ECF No. 221-4. Defendants make no attempt to distinguish among the photographs taken or justify their individual basis for suppression. This is unfortunate because Court must determine the constitutionality, item by item as part of a "severance" analysis. *United States v. Sells*, 463 F.3d 1148, 1156 (10th Cir. 2006). To assist the Court in this analysis, the government submits the photographs as Exhibit 1.

As is apparent in the exhibit, the photographs are not all the same. There are two categories of photographs; (1) general photographs of the apartment and items seen but not articulated in warrant, and (2) bank bag photographs.[2] *See* Ex. 1. The government will address both categories separately.

---

[2]      There are several photographs of the warrant itself. These were possessed by agents, not Defendants, and thus do not implicate the Fourth Amendment or any possessory interests.

**B.     At threshold, the warrant authorized search of all rooms for articulated evidence, and Defendants do not challenge the scope of this authorization or agents' legitimate presence in the apartment.**

The warrant authorized search of "all rooms for the apartment unit 224 pictured and described above . . . ," for "two cloth, or similar material, bags" containing bank logos. ECF No. 221-1, 2 (Attachments A and B to the warrant). Defendants' Motion makes no challenges to the scope of the authorized search, and thus there is no dispute to that agents were legitimately on the premises of unit 224 pursuant to their authorization.

**C.     Photographs of the bank bags were explicitly within the scope of the search.**

Several photographs were taken of the bank bags seized on scene as physical evidence. *See* Ex. 1. Seizure of the bank banks was explicitly authorized in the warrant, and photographs merely capture and are a part of that authorized seizure. *See* ECF. 221-1, 2; Section I, *supra* (government's response to Defendants' claims against seizure of the bank bags). Accordingly, photographs of the bank bags were within the scope and should not be suppressed.

**D.     All other photographs were taken in plain view within the scope of authorization.**

"It is well settled . . . that 'objects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence.'" *United States v. Espinosa*, 641 F.2d 153, 166 (4th Cir. 1981) (quoting *Harris v. United States*, 390 U.S. 234, 235 (1968)). This includes

items seen in plain view in the course of executing a warrant for specified objects. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). This is true because a "seizure of an object in plain view does not involve an intrusion on privacy." *Horton v. California*, 496 U.S. 128, 141 (1990); *see Hicks*, 480 U.S. at 324 (recording of serial numbers, although not authorized, did not meaningfully interfere with any possessory interests and thus did not exceed the scope of the warrant).

In that vein, photographs of items observed while officers were lawfully on the premises have been held admissible. *United States v. Speece*, 986 F.2d 1431, ¶ 3 (10th Cir. 1993) (unpublished) ("Since the officers were lawfully on the premises, their use of photographs of items in plain view was also lawful"); *Espinosa*, 641 F.2d at 166-167; *Bills v. Asteline*, 958 F.2d 697, 707 (6th Cir. 1992); *Mancari*, 463 F.3d at 596. Evident on the face of the photographs, *see* Ex. 1, the agents merely captured their plain-view observations while lawfully on the premises pursuant to their authorization to search all rooms. The challenged photographs are thus admissible and should not be suppressed.

In fact, the photographs may not constitute a seizure at all so as to fall under the safeguards of the Fourth Amendment. Constitutionally, a "seizure occurs when there is some meaningful interference with an individual's possessory interests," *Maryland v. Macon*, 472 U.S. 463, 469 (1985); *see United States v. Jacobson*, 466 U.S. 109, 113 ("a 'seizure occurs when there is a meaningful interference with an individual's possessory interests in that property"); *Texas v. Brown*, 460 U.S. 730,

739 (1980) ("when a police officer has observed an object in 'plain view,' the owner's

remaining interest in the object are merely those of possession and ownership");

*Horton*, 496 U.S. at 133-134 ("if an article is already in plain view, neither its

observation nor its seizure would involve any invasion of property") (internal

citations omitted). A "recording of visual images of a scene by means of photography

does not amount to a seizure because it does not 'meaningfully interfere' with any

possessory interest.'" *Bills*, 958 F.2d at 707; *see also Mancari*, 463 F.3d at 596

(following *Bills* in holding that photographs taken during search warrant do not

amount to a seizure because there was not meaningful interference with a

possessory interest). It follows here that agents did not physically seize anything

observed in the photographs (outside the bank bags), and thus agents did not

interfere with any possessory interests in the rooms. Accordingly, the photographs

do not constitute a seizure at all. *See United States v. Harb*, 2009 WL 910777, *1, 8

(D. Utah 2009) ("photographs [300 taken of every room and interior and exterior of

premises] during execution of a search warrant is not a seizure in violation of the

Fourth Amendment").

### III.   DEFENDANTS' MOTION MAKES NO FACTUAL ALLEGATIONS AND CAN BE DECIDED AS A MATTER OF LAW; NO HEARING IS NECESSARY

Defendants' Motion does not put any material facts at issue. Rather, they

have argued within the language of the affidavit to assert that probable cause was

not established for the bank bags and that the photographs exceeded the scope

authorized by the search warrant. *See United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) ("a defendant who requests a hearing bears the burden of showing that there are disputed issues of material fact"). A hearing is not necessary.

## IV.   <u>CONCLUSION</u>

The Court should deny the Defendant's Motion without a hearing for all of the reasons set forth above.

Respectfully submitted this 9th day of August, 2022,

COLE FINEGAN
United States Attorney

By:   */s/ Bryan David Fields*
Bryan David Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   /s/ Albert Buchman
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*/s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States