```
                    IN THE UNITED STATES DISTRICT COURT
                        FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-CR-00152-PAB

UNITED STATES OF AMERICA,

      Plaintiff,

vs.

JAYSON JEFFREY PENN,
MIKELL REEVE FRIES,
SCOTT JAMES BRADY,
ROGER BORN AUSTIN,
TIMOTHY R. MULRENIN,
WILLIAM VINCENT KANTOLA,
JIMMIE LEE LITTLE,
WILLIAM WADE LOVETTE,
GAR BRIAN ROBERTS,
RICKIE PATTERSON BLAKE,

      Defendants
_____
                         REPORTER'S TRANSCRIPT
                         Trial to Jury, Vol. 8
_____

        Proceedings before the HONORABLE PHILIP A. BRIMMER,
Chief Judge, United States District Court for the District of
Colorado, commencing at 8:40 a.m., on the 4th day of November,
2021, in Courtroom A201, United States Courthouse, Denver,
Colorado.
```

Proceeding Recorded by Mechanical Stenography, Transcription Produced via Computer by Janet M. Coppock, 901 19th Street, Room A257, Denver, Colorado, 80294, (303) 335-2106

EXHIBIT A

1  government insists on the scope, I will sustain the objection.
2          We almost got through a day without the use of the
3  transceivers, but not quite.
4          Okay.  Thank you.
5          *THE COURT:*  The objection is sustained.
6          Ms. Rahman, we are almost at 5:00, but you can ask a
7  few more questions.  But if you can look for a convenient
8  stopping point.
9          *MS. RAHMAN:*  Your Honor, this is a convenient stopping
10 point.
11         *THE COURT:*  Great.  Ladies and gentlemen, we will go
12 ahead and break for the day.  Keep the admonitions in mind.
13 Remember what I mentioned to you about not allowing yourself to
14 listen to people and maybe telling you about the case.  I am
15 not sure that anyone would, but just in case.  And we will be
16 back the same time tomorrow.  If you can be ready to go at
17 8:30.  The jury is excused for the evening.
18         (Jury excused.)
19         Ms. Fisher, you are excused for the day.  Thank you
20 very much.
21         *THE WITNESS:*  Thank you.
22         *THE COURT:*  Anything to take up at this time?
23         Ms. Call?
24         *MS. CALL:*  Very briefly, Your Honor.  I wanted to
25 inquire whether you had the opportunity to review the brief we

1 filed last night following up on the anticipated agent

2 testimony.  I think hopefully we will be calling Agent

3 Koppenhaver tomorrow, so if you had the opportunity to consider

4 it, we would like to discuss now or --

5     *THE COURT:*  What did you want to discuss?  I was a

6 little bit inclined to just let it play out.  I still have

7 concerns.  I really do.  As you can tell from the *Brooks*

8 decision, the *Brooks* decision is fairly limited.  And Chief

9 Judge Tymkovich in it suggested that one way to get around

10 potential risks of improper overview testimony would be to

11 limit it to a high level of generality.

12     And I'm not -- who knows, but I am not too worried

13 about Special Agent Koppenhaver going through too much of an

14 overview per se; but once again, I still question whether for a

15 lot of the exhibits that the government may attempt to

16 introduce he is even necessary.  It seems to me that whether or

17 not those exhibits come in or not wouldn't depend upon any

18 testimony on his part.

19     But let's assume that he happens to be on the witness

20 stand at the time that the government moves their admission

21 and, in fact, they are admissible, to then have him read

22 selected portions of them to the jury I would probably not

23 allow.  The reason is because although it's true a number of

24 witnesses have read portions of exhibits to the jury after

25 having been admitted, with rare exceptions those witnesses have

1 each been the author of that exhibit or perhaps they're reading
2 something that they acknowledged having received.
3 　　　　　I think it's a little bit different to have a special
4 agent who has no personal knowledge of, you know, for instance
5 an e-mail, let's say it's a co-conspirator statement, read that
6 to the jury.  Now, that's not to say that it can't be displayed
7 to the jury and that would be fine, but I'm a little bit
8 worried -- once again, I haven't seen it happen and so I don't
9 know -- but I do have a few concerns about if that's going to
10 be the kind of MO of at least some of Special Agent
11 Koppenhaver's testimony.
12 　　　　　*MS. CALL:*  Yes, Your Honor.  And for the documents, I
13 will say the ones we would anticipate to have him read, I tried
14 to do a count last night.  It's not all of the like 300 or so
15 documents that were cited.  It's more like -- an estimate would
16 be maybe 70 or so that we would actually be looking at with him
17 and looking at the From and the To and perhaps reading a
18 portion.
19 　　　　　I think the government's position is just really we
20 are trying to figure out what a permissible way from your
21 standpoint would be to ensure that the jury can really digest
22 this information, see the documents.  If they are presented
23 with, let's say, a three-page e-mail, how are they going to --
24 how are we even going to give them time to review it in a
25 meaningful way in context with the other things that were

EXHIBIT A

 1  happening in that time frame.  Obviously, the summary exhibit
 2  is one way to do that.  Do you take any issue with the agent
 3  reviewing the context of materials that are in the summary
 4  exhibits themselves?
 5           *THE COURT:*  There is really no difference between the
 6  concern that I just mentioned say with an e-mail and with a
 7  summary exhibit because even if an agent put it together, once
 8  again, the agent doesn't have any personal knowledge of it.
 9           Now, for instance, a telephone record, you know, if
10  you've got Exhibit 8000, the 99,000-page exhibit and the
11  special agent was asked to find the telephone number needle in
12  that haystack, I think that that is probably quite legit.  That
13  sounds like an investigation.  There is some process that he
14  had to go through to identify that and maybe link it up and
15  that may be perfectly fine.  But for a summary exhibit of, say,
16  co-conspirator hearsay e-mails, that is not -- that doesn't
17  seem to be any type of an investigation.
18           And I do have concerns just as the Court in *Brooks*
19  expressed that, you know, for a special agent, for instance, to
20  say, oh, yeah, I thought this was a real important one, or
21  something of that nature or even, as I said before, just be
22  asked:
23           Do you see this one?
24           Yes.
25           Who is it to?

1              So and so.

2              Who is it from?

3              So and so.

4              Can you read the second sentence?

5              That -- I don't think that just because there is not a
6    great way to get that information in front of a jury, that that
7    would then entitle any party to have a reader as opposed to
8    putting it up on the screen.  Now, that's cumbersome too.
9    There is no doubt about it.  But that -- you know, that
10   strategic or logistical problem is one that is almost inherent
11   with documents that are coming in without a person who has some
12   personal knowledge of the document.

13             *MS. CALL:*  And just to be clear, as thrilling as Your
14   Honor does make it sound, I think we are anticipating that the
15   latter kind you described, the agent would not be saying, you
16   know, we found this e-mail to be important to the
17   investigation, making conclusions of that kind.  It would be
18   more so reading selected portions.

19             And perhaps I may suggest we could start out with the
20   reading.  And if Your Honor does see it becoming troublesome,
21   we can change or shift course to just displaying the documents.
22   But on that latter front, I know you were concerned about
23   highlighting or zooming to certain areas to draw attention when
24   a witness was testifying, but if the witness were not reading
25   portions, would Your Honor have any issue highlighting or

EXHIBIT A

1     zooming in on certain portions of documents for the jurors?
2             *THE COURT:*  Not when you're giving your closing.
3     That's a problem.  Being selective about it, it's a tricky
4     issue.  If you had a sponsoring witness, a witness with some
5     knowledge, you could do that.  But, you know, for the attorney
6     or for a witness who doesn't know anything about the document
7     to be asked to read a selective portion is different and it
8     would have no other -- the only thing I think the jury would
9     understand from it is that the government counsel thinks that's
10    the part that's important.  So that's not evidentiary.  That
11    boils down to being argumentative.
12            *MS. CALL:*  Okay.  Two things I perhaps did want to
13    point you to.  I know I said we made this filing last night.
14    It was obviously somewhere in between last night and this
15    morning.  But when we looked at it with brighter eyes, we did
16    notice two typos in our filing, one that I think is pretty
17    material because there was supposed to be a "not" in the
18    sentence and we left the "not" out.  Would Your Honor prefer us
19    to refile it or I can just correct the sentence on the record
20    here.
21            *THE COURT:*  You can correct it on the record if you
22    want here.
23            *MS. CALL:*  This is Docket 789.  The error is on Page 4
24    in the paragraph where *Brooks* is cited.  The sentence currently
25    reads:  Even assuming the agent's testimony qualifies as

1  overview testimony, which it does not, they're anticipated

2  testimony will implicate these concerns.  We clearly meant

3  there to be a "not" after the will and before the term

4  implicate.  And that is a material error I did want to correct

5  today.

6          So we will, I suppose, proceed tomorrow kind of in the

7  way we outlined, but we are happy to start just leaving up

8  documents if Your Honor believes it is starting to push that

9  line in overview testimony, but I don't believe it does.

10         *THE COURT:*  I don't think you would get by the first

11 attempt.

12         *MS. CALL:*  Okay.

13         *THE COURT:*  That's just my sense.  You can try.  You

14 can try.  It's just -- to the extent you are seeking some

15 guidance, I think that it may be problematic for the reasons

16 that I just explained.

17         *MS. CALL:*  Of course.  And we did review *Brooks*, Your

18 Honor, and we do appreciate the concerns there.

19         *THE COURT:*  Right.  So once again, you do have a right

20 to display something that has been admitted and we can do that.

21 It's cumbersome.  And, you know, you have to -- for multi-page

22 exhibits you look at the jury and it's kind of like the one

23 who's -- I could maybe tell them once you've read it, look at

24 me, and then once everyone's at me.  We can go through that and

25 that's fine.  It doesn't mean that you have to show the jury

EXHIBIT A

1  everything, but that's how it's typically done.

2          MS. CALL:  Just anticipating how this may flow, in
3  establishing relevance for those documents, before we move to
4  admit them, our intention had been to -- it's very much clear
5  on the face of most of these documents, so have the agent
6  review a From and To.  And we may ask a leading question to
7  prevent him from reading the context, like is a customer
8  mentioned in this e-mail or is a competitor mentioned in this
9  e-mail, just to establish relevance.  Does that sound like it
10 runs any risk of these things we're talking about?

11         THE COURT:  Yes, because, you know, typically the
12 relevance would be established -- with a lot of these documents
13 I would assume that the relevance may have -- may go more
14 towards attorney argument.  You would -- if there is an
15 objection that's irrelevant, you would have the ability to
16 respond to it.  We've already -- we already have a foundation
17 of certain facts.  We know what the charge is.  Those are
18 things that typically add up to the ability of a Court to
19 determine the relevance of it.

20         So it would surprising to me, although once again, I
21 don't know, that the -- that Special Agent Koppenhaver could
22 supply some fact testimony that would bear on relevancy.

23         MS. CALL:  Yes, Your Honor.  I think that would
24 probably be limited circumstances and I understand what you're
25 proposing -- or not proposing, but what you are anticipating

EXHIBIT A