IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

## GOVERNMENT'S TRIAL BRIEF

Michael and Kimberley Tew conspired to steal over $5,000,000 from National Air Cargo (NAC) by agreeing to submit fake invoices from sham vendors to their friend and co-conspirator Jonathan Yioulos. Indictment at ¶¶ 1-25 (describing charged conspiracy to commit wire fraud). The pending indictment identifies 39 executions of their fraud scheme — anecdotes of a brazen two-year crime spree that saw the Tews threaten their friend and callously turn away concerns that NAC might not be able to pay its employees or stay out of bankruptcy. Id. at ¶ 30 (charging individual executions of the fraud scheme). The Tews also agreed to fritter away their loot on selfish personal projects benchmarked by 15 five-figure financial transactions. *Id.* at ¶¶ 31-34 (describing charged conspiracy to spend more than $10,000 in fraud proceeds) and ¶ 36 (identifying specific transactions). Despite his substantial income and prior experience as a corporate CFO who knows that income is taxable, Michael

1

Tew failed to file any tax returns in 2016, 2017, 2018, or 2019. *Id.* ¶¶ 37-40.

The jury will hear Michael Tew, with active advice from Kimberley, clumsily try to persuade Yioulos to stay in the conspiracy by explaining the effectiveness of his efforts to conceal the scheme. Hundreds of texts and emails captured by investigators and found by the Court to be preliminarily admissible, ECF No.361, will turn the upcoming trial into an epistolary novel of greed punctuated by the diligent record-keeping of financial institutions who kept track of every ill-gotten penny. The government submits this trial brief to provide legal guidance on the issues that might arise as the court and jury evaluate evidence related to the Tews' crimes.

I.  **The Tews should not be permitted to tell the Court they used the fraudulent emails for one purpose and then shamelessly deny it for another**

In an issue adjacent to the one raised by the defendants' motions to suppress, *see* ECF Nos. 370, 373, the defendants have not only taken incriminating positions with the government during proffer sessions — they've also done made strategic decisions before the Court, decisions which now bear consequence. As part of the motion to suppress, the defendants represented that each of them used the straw email accounts used to submit fraudulent invoices to NAC so that they could establish standing to challenge the warrants used to seize those accounts. ECF No. 226 at 7-9 (proffering that Kimberley Tew used the [CR]@gmail.com account and the [MCG[@gmail.com account and that Michael Tew used the [PM]@gmail.com account). Although the Supreme Court held that a defendant's testimony at a suppression hearing cannot be admitted against him, it has expressly reserved the issue of

2

whether such testimony can be used for impeachment purposes. *United States v. Salvucci*, 448 U.S. 83, 94 n.8 (1980). The Tenth Circuit has not ruled on the issue, but the circuits who have weighed in have concluded that such impeachment is permissible. *See, e.g., United States v. Jaswal*, 47 F.3d 539, 544-45 (2d Cir. 1995); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994); *United States v. Quesada-Rosdal,* 685 F.2d 1281, 1283 (11th Cir. 1982). If either of the Tews tries to testify on cross-examination that they did not use these respective emails to submit fake invoices, that testimony would be inconsistent with their prior representations to the court and should be a valid basis for cross-examination.

## II. The Tews acted out of greed, not duress, and should not be permitted to present such a factually baseless defense

Consistent with the position that they cannot present evidence inconsistent with their proffers, the Tews should not be permitted to tell the government that they voluntarily agreed to commit fraud, but then tell a jury that their fraud was justified by duress.

Even if such a defense was *consistent* with their proffers (and to be clear, it is not), the Tews should still not be permitted to argue that they stole $5 million because others to whom they owed money alleged made threats. At all times, the Tews had alternatives to taking millions that didn't belong to them: they could have gone to the police or sought protective orders. *Shannon v. United States*, 76 F.3d 490, 493 (10th Cir. 1935) ("One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion and is not entitled to an instruction submitting that question to the jury.") And even then, the Tews would have to explain why

3

stealing millions and then using it to gamble, buys cars, pay rent on a $4,500-a-month apartment in Cherry Creek, and otherwise luxuriate in various indulges for two years was necessary to avoid "imminent" danger or otherwise had a "direct causal relationship" to avoiding that danger. *United States v. Vigil*, 743 F.2d 751, 755 (10th Cir. 1984). They cannot and the Court should not entertain the absurdity of letting them try.

### III. The probative value of evidence about Kimberley Tew's motives for participating in the fraud is *res gestae* that is not substantially outweighed by unfair prejudice

Evidence at trial will show that Kimberley Tew has a gambling problem. It will also show that, one of the ways she fed that beast, was to speculate in cryptocurrency, peddling a supposedly winning algorithm to her unwitting "investors." Among her motives for agreeing to take millions from Michael's former employer was a desire to keep placing bets — literally at casinos and online in speculative cryptocurrency products. Evidence of motive is always relevant. And here, the fact that Kimberley consistently wanted money from Yioulos to gamble with will help the jury understand context for the crime. *See, e.g., United States v. Candelaria*, 2024 WL 82845, at *3 (D.N.M. Jan. 8, 2024) ("Gambling is a popular activity, one that ordinarily does not stir an emotional response nor is such evidence likely to confuse the issues or mislead the jury.").

### IV. Testimony about the reasons for Michael Tew's termination is inextricably intertwined with his fraud scheme.

Because evidence about why Michael Tew was fired from NAC provides "contextual and background information" about their relationship to the jury, it is not

4

"other" acts evidence covered by Rule 404(b). *United States v. Parker*, 553 F. 3d 1309, 1314 (10th Cir. 2009); *see United States v. Kupfer*, 797 F.3d 1233, 1228 (10th Cir. 2015) (laying out test for determining whether evidence is intrinsic, and thus not covered by Rule 404); *see, e.g., United States v. Williams*, 934 F.3d 1122, 1133–34 (10th Cir. 2019) (concluding that prior statements by defendant were not 404(b) where they explained earlier relevant circumstances and presaged later testimony about the same subject); *United States v. Irving*, 665 F.3d 1184, 1212–13 (10th Cir. 2011) (concluding that prior event helping explain motives for why defendant would want someone dead were intrinsic). The same is true of Ms. Tew's extracurricular hobbies, to the extent that they were a motivating factor in this fraud. *See supra*.

### V. The government should be permitted to offer additionally identified co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E)

In order to prepare for the *James* hearing, the government labored to narrow down those statements it believed were admissible pursuant to Federal Rule of Evidence 801(d)(2)(E). This was a time-intensive process, culling and sorting much detail. And still, at the end, the government submitted a *James* log with 376 entries.

In further preparation for trial, the government has identified two additional co-conspirator statements which directly pertain to counts 44 and 47 of the Indictment. Additionally, the government respectfully seeks reconsideration of one entry which the Court previously ruled inadmissible (James Log 37), which was deemed inadmissible due, at least in part, to marital privilege. ECF No. 361 at 14-15. However, this was a conversation between Ms. Tew and Jonathan Yioulos. The

5

government remains mindful of the Court's admonition to avoid cumulative evidence at trial, and will do so.

### VI. The defendants must remain within the bounds of the Federal Rules of Evidence on cross-examination.

At the core of this case is the Tews' heartless abuse of trust. Michael Tew, of course, leveraged his high position and intimate knowledge of NAC's inner workings of NAC to embezzle funds from the company, even long after he was terminated. Michael Tew's former position was not just a reflection of his business capabilities, but also of his ability to earn the trust of high-level NAC employees.

The Tews' callousness did not end there. Over of the years, the evidence will show a pattern of the Tews earning the trust of their friends and business associates, only to turn around and treat them not only cruelly, but criminally. A particularly poignant aspect of this pattern is individuals who now are faced with federal testimony, but fear that information from their past friendships with the Tews will be leveraged against them.

The Tews should not be permitted to harass these witnesses on cross-examination, not only because of moral and ethical reasons, but because the Federal Rules of Evidence do not permit it. The most basic and axiomatic principle of trial is that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means. Fed. R. Evid. 103(d). Although the defendants will be accorded wide latitude on cross-examination, that latitude is not unfettered. Events concerning NAC's business, for example, that happened years and even

6

decades before Michael Tew's employment are clearly irrelevant. Similarly, the Federal Rules place clear boundaries on the proper use of impeachment by evidence of a criminal conviction. Fed. R. Evid. 609. And while evidence regarding an individual's prior drug or alcohol use might be a permissible avenue to question a person's credibility as to their memory of events during a certain time period, it should not be used as a character attack.

Likewise, insinuations through cross-examination which seek only to embarrass, harass, or otherwise impugn a person's character should not be allowed. Aspects of witnesses' personal lives, especially private and intimate details, that are years' old, have nothing to do with the witnesses' credibility regarding the events at bar, and that the Tews only have access to because of the way in which they groomed those around them, should be swiftly denied. The Tews are represented by able and professional counsel, and the government expects nothing less.

**VII. The defendants should be restricted to permissible uses of their devices in the courtroom and prohibited from public displays of photographs only designed to encourage a verdict based on emotion.**

In prior hearings of this case, both defendants have used their personal laptops in the courtroom. The government takes no issue with this use, provided the screens are limited to the display of admitted evidence and other justifiable work-product related to trial preparation. In the past, however, defendant Kimberley Tew, especially, has used her laptop during proceedings for personal use. Of particular concern is Ms. Tew's habit of scrolling through pictures of her children on her laptop, in a full-screen mode. Should Ms. Tew continue this habit during trial, given the

7

layout of the courtroom, her screen will be on full display to the jury. The Tews' children and the Tews' status as parents are matters wholly irrelevant to the proceedings. The defendants should be admonished on the appropriate limits of the use of their devices at trial, in order to prevent the introduction of subject matter that would only serve to undermine the fair adminstration of justice.

### VIII. The defendants should be restricted to permissible uses of their devices in the courtroom and prohibited from public displays of photographs only designed to encourage a verdict based on emotion.

The government has proposed several summary charts, which the prosecution intends to admit via Fed. R. Evid. 1006 and the testimony of FBI forensic accountant Matt Morgan. Rule 1006 provides that a proponent "may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court," provided the proponent makes the originals or duplicates available to the other party. In this case, all such records were provided to the defense in discovery. The government understands that the defendants raised this issue in their respective trial briefs, and will be prepared to discuss these proposed exhibits at the pretrial conference.

                              COLE FINEGAN
                              United States Attorney

| By: */s/ Bryan Fields* | By: */s/ Sarah H. Weiss* |
|---|---|
| Bryan Fields | Sarah H. Weiss |
| Assistant United States Attorney | Assistant United States Attorney |
| U.S. Attorney's Office | U.S. Attorney's Office |
| 1801 California St. Suite 1600 | 1801 California St. Suite 1600 |
| Denver, CO 80202 | Denver, CO 80202 |
| (303) 454-0100 | (303) 454-0100 |

Bryan.Fields3@usdoj.gov  Sarah.Weiss@usdoj.gov
Attorney for the Government  Attorney for the Government

9

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 24th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

      s/ *Sarah H. Weiss*
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov