Just IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  **MICHAEL AARON TEW,** and
    2.  KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

     Defendants.

---

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* REGARDING THE USE OF PROFFER AGREEMENTS IN THE UNITED STATES' CASE IN CHIEF

---

Nothing in the Constitution endorses the conclusion that criminal defendants — especially those who sign binding legal agreements and are fully advised by capable attorneys — can peddle one story to the prosecution and another to a court without consequence. Consistent with the law in every circuit to address the issue, the Court should enforce the clear and unambiguous language of the proffer agreements, deny the Defendants' respective motions *in limine*, ECF Nos. 370 and 373, and further the "laudable policy" of "encouraging defendants to tell the truth during both plea negotiations and subsequent trial." *United States v. Dortch*, 5 F.3d 1056, 1069 (7th Cir. 1993). That policy will be furthered by proceeding to trial, as scheduled, on February 5.

I.   **Enforcing proffer agreements "enhances the truth-seeking function of trials" and yields "more accurate verdicts"**

The law is clear. Agreements that voluntarily waive the protections otherwise afforded by Rule 410 are enforceable. *United States v. Mitchell*, 633 F.3d 997, 1003-1006 (10th Cir. 2011) (analyzing *United States v. Mezzanatto*, 513 U.S. 196, 2010 (1995) in detail and finding no error in district court's decision to admit defendant's plea statements during government's case-in-chief).

For good reason: such a waiver "encourages criminal defendants to present defenses at trial that are not fraudulent." *United State v. Rebbe*, 314 F.3d 402, 408 (9th Cir. 2002)

Indeed, the defendants' own citations are completely in line with the entire body of law surrounding *Mezzanatto* waivers. For example, Michael Tew cites the Tenth Circuit's decisions in *Jim* and *Mitchell*. M. Tew. Mot. at 4 and 7 (citing *United States v. Jim*, 786 F.3d 802, 810 (10th Cir. 2015) and *Mitchell*, 633 F.3d at 1003); ECF No. 373 at 3 (adopting M. Tew's legal arguments). The defendant in *Jim* — just like Michael and Kimberley Tew — entered into an agreement waiving his rights under Rule 410. Then — just like Michael and Kimberley Tew — he got a new lawyer, decided he no longer liked his agreement, and moved *in limine* to exclude his proffered confession. The district court enforced the agreement and the Tenth Circuit affirmed. *Mitchell* similarly involved a client disappointed with the outcome of his plea negotiation who, after proffering, got a new lawyer to take his case to trial. The defendant ultimately found himself similarly disappointed. *Mitchell* 633 F.3d at 1003-1006.

These outcomes are the logical conclusion to the Supreme Court's reasoning in *Mezzanato*. The defendants' waivers do nothing to put at risk a fair proceeding under the law. Indeed enforcing the waivers serves the opposite effect. As Justice Thomas explained, "the admission of plea statements for impeachment purposes *enhances* the truth-seeking function of trials and will result in more accurate verdicts." *Mezzanato*, 513 U.S. at 204; *see also id.* at 205 ("Under any view of the evidence, the defendant has made a false statement, either to the prosecutor during the plea discussion or to the jury at trial; making the jury aware of the inconsistency will tend to increase the reliability of the verdict without risking institutional harm to the federal courts.").

The Supreme Court's concerns in *Mezzanato* over the integrity of the judicial process found receptive audiences in the Courts of Appeals. The Tenth Circuit does not stand alone in its willingness to enforce these types of proffer agreements. As far as the government can tell, every circuit to consider the issue has enforced similar agreements that included Rule 410 waivers. *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) (cataloging cases from Second, Seventh, Ninth and D.C. Circuits finding waiver triggered where defense counsel used cross examination to imply facts inconsistent with proffer); *United States v. Sylvester*, 583 F.3d 285, 289 (5th Cir. 2009); *United States v. Young*, 223 F.3d 905, 911 (8th Cir. 2000). The defendants give this Court no reason to disregard the force of this near-uniform body of caselaw. [1]

---

[1] At least one district court has refused to enforce a proffer agreement. *United States v. Duffy*, 133 F. Supp. 2d 213 (E.D.N.Y. 2001; *but see United States v. Velez*, 354 F.3d 190, 195 (2d Cir. 2004) (criticizing *Duffy*).

## II.   Proffer agreements provide benefit to all parties in the criminal justice process

### A.   The proffer agreements offer mutual benefits

The reality is that "criminal justice today is for the most part a system of pleas, not a system of trials." *Laffler v. Cooper*, 566 U.S. 156, 170 (2012). The Tenth Circuit recognizes this in its pattern jury instructions: "Plea bargaining is lawful and proper, and the rules of this court expressly provide for it." 10th Cir. Pattern Jury Inst. § 1.15 (3d ed. 2021). This means that while defendants have the absolute and cherished right to remain silent, courts and defense attorneys have recognized that silent defendants cannot make successful pleas for leniency.

Accepting the position defendants advance here would undermine countless opportunities for reasonable negotiated resolutions, gutting the settled expectations of the parties' proffer agreements, which are specifically designed to lower each sides' risks while encouraging candid discussions that help everyone evaluate cases based on accepted facts. For prosecutors, proffer agreements "buy" the reliability assurance that accompanies a waiver agreement. *Mezzanatto*, 513 U.S. at 208. For defendants, proffer agreements strengthen their hand in negotiations by leveraging what they "sell" — their credibility —under conditions designed so that deceit is more costly and thus less likely. *United States v. Krilich*, 159 F.3d 1020, 1024-25 (7th Cir. 1998); *see also Mezzanatto*, 513 U.S. at 208. Without the ability to enter into "*Mezzanatto* waivers" mutual distrust and anxiety over the high stakes of failed negotiations might mean many fewer discussions, to the detriment of criminal justice.

The Tews' proffer agreements capture this mutual give-and-take. The

government pays the "cost" of a defendant's information by making the promises in paragraph 2, in return for the benefits in paragraph 3.[2] *E.g.,* ECF No. 370-1 at 2. In return, the defendant agrees to pay the "cost" of any attempted deception down-the-line, as outlined in paragraph 4, and made possible by paragraph 5. *E.g.,* ECF No. 370-1 at 4. Importantly, whether to pay that "cost" — by trying to offer competing accounts to two different audiences — is completely up to the defendant, as outlined in paragraph 4. *E.g.*, ECF No. 370-1 at 2 (noting that information can be used only if the *client* takes certain actions). The reciprocal and hoped-for benefits arising from the parties' mutual consideration is the *truth*, as contemplated in paragraphs 1 and 7. *E.g.* ECF No. 3701-1 at 1 and 3.

**B.**     **The upside benefits of the agreement are virtually always made available to those with legal counsel, who are tasked with ensuring that the potential downside risks are also knowingly and intelligently understood**

*Mezzanatto*'s recognition that Rule 410 waivers can actually produce *better* outcomes for all stakeholders is the animating force behind the uniform consensus of the Courts of Appeals' decisions outlined above. But Courts have coupled these abstract ideals with a clear-eyed view of their dangers. Any agreement giving up a right must be "knowing and voluntary." *Mezzanatto*, 513 U.S. at 210. For that reason, this Office requires that defense counsel review and explain the agreement's terms and provisions to the client prior to signing. *See* ECF No. 370-1 at 3 and 373-1 at 4 and 7 (requiring defense counsel to sign statement "I acknowledge that I have read

---

[2]     The government's promises are cabined by paragraph 6 (making clear agreement does not impart transactional immunity).

this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.").

### III. The defendants knowingly and voluntarily signed clear and unambiguous agreements

#### A. Michael Tew acknowledges that he entered his agreement knowingly and voluntarily

The court should take defendant Michael Tew at his word that "[i]t cannot reasonably be argued . . . that Mr. Tew did know that his statements to federal authorities could be used against him if he later changed his version of events." ECF No. 370 at 6. Likewise, the court should make the "reasonable inference" he admits, namely that "Mr. Tew also knew, and agreed, that he could not affirmatively present evidence to the contrary." *Id.*

#### B. Kimberley Tew is represented by the same lawyer who advised her to enter the agreement and does not make any arguments that it was unknowing or involuntary

For her part, Kimberley Tew does not challenge the waiver itself; instead, she now suggests (but does not explicitly say) that, if the government's interpretation is correct, then her waiver was not knowing and voluntary. ECF no. 373 at 5. That implicit argument has been soundly rejected elsewhere. *Krilich*, 159 F.3d at 1026 ("No party to a contract has Humpty Dumpty's power over language either directly or through the gambit that unanticipated consequences render the agreement "involuntary.").

Kimberley Tew's argument is, of course, also further complicated by the fact that it is being raised by the exact same defense counsel who advised Ms. Tew to sign

the agreement in the first place. Given the obvious attorney-client privilege questions raised, the government cannot participate fully or effectively in a hearing about those questions at this stage of the proceedings, especially when the lawyer involved could also be a fact witness. Because the defendant has not explicitly stated that she is contesting the knowing and voluntary nature of an agreement she signed — one which contained an express acknowledgment that she entered into it "voluntarily, knowingly and willfully" — with an experienced attorney who also acknowledged discussing each provision of the agreement her client — the issue should be deemed waived. The complexity of this situation proves the point: the law provides very specific vehicles for appeals and collateral attacks, and determinations on this issue should be left to those forums rather than upending this trial.

### C. The proffers speak for themselves, and the Court can decide the meaning of the language as a matter of straightforward contract interpretation

The defendants are not even really saying their agreements were entirely unknowing or involuntary. The Tews clearly understood at some level they were giving up their Rule 410 rights. *That* fundamental waiver is what must have been knowing and voluntary, not all of the possible expressions of it. *Krilich*, 159 F.3d at 1026. In any case, this is not a situation where the consequences are so ambiguous as to cause concern. All parties entered the agreements with the same basic intent — to encourage truth-telling by raising the costs of deceit. *United States v. Barrow*, 400 F.3d 109, 117 (2d Cir. 2005) (recognizing a proffer agreement is like a contract that, as an issue of law, must be interpreted to give effect to the intent of the parties.)

Moreover, the defendants raise their challenge in the vaguest of terms, simply

asserting that they "contest" the language of the *Mezzanatto* waiver, without describing the actual language they take objection to and without any textual analysis or law. It is too late for the defendants to raise such textual arguments now, and those arguments should be deemed waived.

Moreover, it bears note that their motions effectively launch a broadside attack against the U.S. Attorney's Office itself, by claiming that this Office regularly enters into unconstitutional proffer agreements in its standard proffer agreement language.

Not so. A straightforward reading of the standard proffer language confirms the government's interpretation. Taking the Tews' *Mezzanatto* waivers, statement-by-statement, a clear textual interpretation follows:

> **"The government may [] use . . .**

- **"any statements made by your client during the proffer . . . ."**

    - The word "any" makes the waiver absolute. If one statement is contradicted, any statement from the proffer can come in.

- **"either as evidence or for cross-examination"**

    - The government is permitted two opportunities at trial to put on its evidence: (1) in its case-in-chief; and (2) on rebuttal.

    - The proffer language does not limit the waiver to rebuttal, as defendants suggest. In fact, the word "rebuttal" never appears. It is a basic principle of textual analysis that words that do not appear in the text are not read in, especially in the face of a clear reading to the contrary.

    - This interpretation is furthered by the contrasting reference to "or for cross-examination." Obviously, the government cannot cross-examine its own witnesses. If the phrase "as evidence" did not include the government's

case-in-chief, this phrase would instead read "either in its rebuttal case or for cross-examination."

- Under the defendants' interpretation, the government would have no means of countering any positions taken by the defendant in contradiction to their proffer statements, unless (1) the defendant himself testified, or (2) otherwise presented an affirmative case for his defense.

- This interpretation leads to absurd results that would essentially eviscerate the consideration provided to the government under the *Mezzanatto* waiver. Effectively the defendants suggest the government has entered into a contract which, through a defendant's careful legal stratagem, would provide no benefit on the other side. As with all contracts, there must be consideration on both sides for the contract to have effect.

- For example, the defendants seem to suggest that what they agreed not to do for themselves can instead be done if performed only through their agents, in the form of contradictory statements in openings, or by raising doubt throughout the government's case-in-chief by means of cross-examination. The defendants' position expects the government to sit on its hands and let such insinuations remain unimpeached and uncontradicted throughout its own entire case-in-chief. This manipulation would perpetrate clear fraud on the jury, and puppeteering of this sort would put every defense counsel in the unenviable position of risking his or her duty of candor to the court.

- **"at trial or any other stage of the criminal prosecution"**

  - The waiver applies at trial; pre-trial proceedings; and at sentencing

- **"if your client later testifies, offers evidence, <u>or presents a position</u> (including through affidavit <u>or in argument</u>) that contradicts statements made by your client during the proffer."**

  - Under rudimentary textual interpretation principles, every phrase in the list of "later testifies," "offers evidence," and "presents a position," must be given meaning. The defense's interpretation — which would allow a defendant

to contradict his proffer statements, so long as he did so only in opening statements or through cross-examination — would, once again, render the phrases "offers evidence," "presents a position," and "in argument" surplusage.

▪ The final words in this phrase make clear that the *Mezzanatto* waiver is only triggered when a defendant contradicts their proffer. Otherwise, the government must adhere to paragraph 2 of the agreement and fully honor Rule 410's evidentiary exclusions.

The language is clear, and the defendants' arguments should be dismissed on the merits. Courts have had no hesitation in enforcing legally indistinguishable language of similar breadth in the exact same way that the government proposes.

To take but one example of a case with similar language to the Tews' agreements, in *Barrow*, 400 F.3d. at 118, the court examined the phrase "any evidence" in a challenged *Mezzanatto* waiver. The Second Circuit reasoned that such language carried "expansive intent," one that extended beyond formally admitted evidence and which encompassed any "factual assertions" at "any stage of the prosecution." As a result, the court ruled that "[f]actual assertions made by defendant's counsel in an opening argument or on cross-examination plainly fall within this broad language."); *Rebbe*, 314 F.3d at 406 (ruling that, if breached, the *Mezzanatto* waiver allowed the government "to rebut any evidence, argument or representations" made by the defendant or on his behalf at trial).

In summary, the Tews' *Mezzanatto* waivers are clear, as is the law applying them. To quote Judge Easterbrook's explanation:

Evidence is evidence, whether it comes out on direct or cross-examination. One can "otherwise present" a position through argument of counsel alone, so it is easy to see how a position can be

"presented" by evidence developed on cross-examination and elaborated
by counsel.

*Krilich*, 159 F.3d at 1025-26 (7th Cir. 1998) (affirming use at trial of proffer

statements as a result of defense counsel's cross examination questions).

## IV.   There is nothing unconstitutional about enforcing agreements that prevent the defendants from engaging in deceit.

To be sure the Tews' find themselves in dire circumstances, having boxed

themselves into a corner of their own making. The defendants now pray to this Court

for relief, arguing that they "sign[ed] away" their constitutional trial rights. ECF No.

370. at 7; ECF No. 374 at 203.  Not so. The Tews *can* present their individual defenses

— even those that are inconsistent with the proffers — they just have to confront the

consequences of that choice.

As the Ninth Circuit put when analyzing a similar (though narrower) proffer

agreement, "[the defendant] was still free to make any arguments or ask any

questions he wished to at trial. The only limitation on [the defendant's] right to

present a defense was that if he presented evidence or arguments that were

inconsistent with his proffer statements, the Government could introduce his proffer

statements in rebuttal." *Rebbe*, 314 F.3d at 408; *see also United States v. Velez*, 354

F.3d 190, 196 (2d Cir. 2004) ("Finally, a defendant remains free to present evidence

inconsistent with his proffer statements, with the fair consequence that, if he does,

the Government [is] then ... permitted to present the defendant's own words in

rebuttal. With this avenue open to him, a defendant who has consented to a waiver

provision like the one at issue here has not forfeited his constitutional right to present

a defense, to the effective assistance of his counsel, or to a fair trial.") (citation and quotation omitted).

The Tews have this same choice. That it is a difficult one is precisely the point of the parties' agreement.

To be clear, Michael and Kimberley Tew can each present a defense. They are each free to make unfettered opening statements, to reserve their openings for their defense case, or to forego openings entirely. They are free to exercise the wide (though not wholly unfettered) right to cross-examine the government's witnesses as they see fit. They can call their own witnesses, and they can admit their own evidence. They retain the right to testify fully in their own defense. Each will have the opportunity to present a vigorous closing argument. In short, at every stage of the proceeding, they will have precisely the same rights accorded to every other criminal defendant in this country, as they should and as the constitution requires. *Rebbe*, 314 F.2d at 408 (noting that, even in shadow of a proffer agreement, defense counsel can challenge sufficiency of evidence, impeach credibility, challenge knowledge and qualifications of witnesses, challenge inconsistencies in evidence, and ask about witnesses' motives).

The only thing the proffer agreements do here is ensure that the jury will know more about Michael and Kimberley Tew, including that they told a different audience different things on different days. Nothing about this is unconstitutional. *Rebbe*, 314 F.2d at 408 (rejecting as "without merit" similar argument that a proffer agreement deprived defendant of his right to present a defense); *Velez*, 354 F.3d at 190 (rejecting

constitutional challenge to proffer agreement with *Mezannato* waiver). It is, instead, exactly the kind of truth-enhancing protocol the public expects of its courts. *United States v. Chaparro*, 181 F. Supp. 2d 323, 324 (S.D.N.Y. 2002) (explaining that there is "no unfairness to [the defendant] in allowing use of his statements during proffer sessions once he has opened the door to their use by his arguments and evidence," because the "design of the [Proffer] Agreement provides any defendant who decides to speak with the Government strong incentives to speak truthfully, and discourages anyone from speaking at all if she intends to lie . . . .").

The Tews inked their proffers to get the benefit of a possible pre-indictment deal. Nothing in that bargain, nor in the constitution, nor in the Tews' vague appeals to "fairness," ECF No. 370 at 2, 5 and 7; ECF No. 374 at 4 and 5, permits the Tews to further delay this case. ECF No. 285 at 17 (transcribing extensive arguments at suppression hearing last summer over use of proffer statements at trial). The fact that such evidence may be prejudicial to their cause — even highly prejudicial — does not mean it should be excluded, practically limited, or deemed unconstitutional. *See* Fed. R. Evid. 403 (excluding only that evidence which is *unfairly* prejudicial).

## V.    PROPOSAL FOR TRIAL PROCEDURES

In order to assist the Court in preparing for the very real possibility that, at some point during trial, this issue will require swift action, the government respectfully suggests the following procedures:

1.   Over the past two days, the government obtained formal court transcripts of the audio recordings of the proffer sessions. They were produced to the defense today, and will be filed under restriction as exhibits by separate filing for the court's benefit. Exhibits 1, 2, and 3.

2. The government will ask to be heard, outside the presence of the jury, if it at any point believes the waivers have been triggered. That will allow the defendants ample opportunity to argue otherwise, if they so desire, and for the Court to rule accordingly.

3. The parties can confer on proposed language to advise the jury of the nature of this evidence and the context from which it comes before playing it for the first time, similar to a *Bruton* instruction.

4. Although the government expects that many of these statements will make the most sense to introduce through the government witness who was present for the proffer sessions, depending on the nature of cross-examination, the government may deem it necessary to counter certain questions more immediately on its re-directs, as is its right. If that occurs, the government will request a sidebar prior to its questioning, and will ask to play only that limited portion of the proffer session at that time, again giving the defendants a chance to make their record.

5. Mindful of Rules 102 and 403, the government intends to use as its primary guideposts the rules for impeachment evidence laid out in Rules 607 and 608. Although these are the defendants' confessions, and powerful evidence in support of the prosecution's case, at no time will the government abuse this process. Akin to the *James* statements, the government promises to use this evidence (if it even becomes necessary to do so) in a fair and measured manner, albeit one that also seeks to satisfy its high burden of proof.

6. The government proposes that these procedures be discussed at the final pretrial conference, scheduled for January 30. If that timing is insufficient, the government is supportive of a separate hearing to specifically address these procedures. The government contests, however, setting such a hearing in a manner that would delay the trial.

## CONCLUSION

The defendants effectively ask this court to reward a form of deceit. In the alternative, they request immediate gratification for that deceit in the form of yet another delay of this trial. They should not be so rewarded.

The Court should endorse the truth seeking function of the trial process. To do

that, the Court should strictly enforce defendants' Mezzanatto waivers; deny the motions; and open this trial, as scheduled, on February 5. The interests of justice call for no less.

COLE FINEGAN
United States Attorney

By:    */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:    */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov