IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

---

### REPLY IN SUPPORT OF MOTION IN LIMINE RE ADMISSIBILITY OF PROFFER STATEMENTS

---

Kimberley Tew, through counsel, submits the following reply in support of her Motion in Limine re Admissibility of Proffer Statements ("Motion"). (ECF No. 373.)

**A.   Ms. Tew Disagrees with the Government's Interpretation of the Waiver Provision in the Proffer Letter**

The Government's response inaccurately states: "Kimberley Tew does not challenge the waiver itself; instead, she now suggests (but does not explicitly say) that, if the government's interpretation is correct, then her waiver was not knowing and voluntary." (ECF No. 393 at 6.) Nothing in Ms. Tew's Motion conceded the Government's interpretation of the proffer agreement (which was unknown at the time of filing). Ms. Tew's Motion in Limine incorporated by reference the Motion filed by Defendant Michael Tew, which objected to the Government's interpretation of the waiver provision. (ECF No. 373 at 3.) To the extent it was previously unclear, Ms. Tew

now explicitly states that she objects to the Government's interpretation of the waiver provision in the proffer letter.

The Government contends that a "straightforward reading of the standard proffer language confirms the government's interpretation." (ECF No. 393 at 8.) But the Government ignores the omission of key language about who can trigger a waiver.

The proffer letter is addressed to "Jamie Hubbard, Esq. Counsel to Kimberley Tew." Throughout the letter, there is a distinction between actions taken by "you" (meaning Ms. Hubbard) and "your client" (meaning Ms. Tew). Where the government intended a restriction in the proffer agreement to apply to both counsel and client, it said so:

- Paragraph 1: "You and your client understand that false statements willfully made during this proffer will negate the Government's agreement not to use this proffered information against your client."

- Paragraph 4, second sentence: "By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above."

The relevant provision here—the first sentence of Paragraph 4—provides that Ms. Tew's statements made in the proffer session may be used as evidence if "your client" (meaning Ms. Tew) "testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your

2

client during the proffer." This sentence contains no references to evidence presented or arguments made by "you" (meaning Ms. Hubbard). Nor does this provision reference "your representative" or similar language indicating that it binds Ms. Tew's attorney. Thus, nothing in the proffer agreement suggests that evidence presented or arguments made by counsel—whether Ms. Hubbard or anyone else—can constitute a breach of the proffer agreement.

If the Government wanted the proffer agreement to operate as it now argues, it could easily have included language indicating Ms. Tew's representative could trigger waiver. Indeed, the government has done exactly that in other cases. In *United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005), the proffer agreement stated the prosecutor could use the defendant's proffer statements "as substantive evidence to rebut any evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant] at any stage of a criminal prosecution." *Id*. at 113. The same is true in *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002), where the proffer agreement allowed statements to be used "to rebut any evidence, argument or representations offered by or on behalf of your client in connection with the trial." *Id*. at 404. Here, the proffer agreement applies only to evidence presented or arguments made by "your client", *i.e.*, Ms. Tew, and does not apply to evidence or arguments made on behalf of Ms. Tew. Thus, on its face, the waiver provision cannot be triggered by the actions of counsel.

As set forth above, the Government's interpretation of the proffer agreement is inconsistent with the plain language of the contract. However, to the extent the Court

3

believes the first sentence of paragraph 4 is ambiguous, the provision should be construed against the Government as the drafter of the proffer letter. *See K&V Scientific Co., Inc. v. BMW*, 314 F.3d 494, 500 (10th Cir. 2002).

**B.**     *Mezzanatto* **Requires a Case-by-Case Analysis of the Circumstances of Waiver**

In *United States v. Mezzanatto*, 513 U.S. 196 (1995), the Supreme Court held that a waiver of certain trial rights is permissible as part of some plea negotiations. However, the Court noted: "There may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts." *Id*. at 204. As indicated in Mr. Tew's Motion in Limine, and previously adopted by Ms. Tew, the Government's interpretation of the waiver language effectively means Ms. Tew waived her right to counsel, to cross-examine witnesses, and to present a defense.

The *Mezzanatto* court recognized the potential for abuse by prosecutors given the imbalance of power during plea negotiations. Rather than adopt a blanket rule barring admissibility of any statement made during plea negotiations, the Court held "the appropriate response to respondent's predictions of abuse is to permit case-by-case inquiries into whether waiver arguments are the product of fraud or coercion." *Id*. at 210.

The *Mezzanatto* dissent warned against the effect of exactly what the Government promotes in this case – a waiver provision that allows admission of proffer statements in the Government's case-in-chief. *Id*. at 217. And the Tenth Circuit left open the

4

question of whether a *Mezzanatto* waiver is enforceable where—like here—the waiver is executed as a condition of entering plea negotiations with the government. *United States v. Mitchell*, 633 F.3d 997, 1005 (10th Cir. 2011) ("To us, the waiver in *Mezzanatto* was more burdensome than the waiver here since the defendant had no assurance the negotiations would bear fruit.") Notably, at the time Ms. Tew signed the proffer letter, she had not been charged with any offense, had no access to discovery, and was facing the prospect of being criminally charged alongside her husband and potentially leaving their young children without parents.

*Mezzanatto* requires analysis of the case-specific facts in determining whether any waiver is enforceable.

**C.    Ms. Tew Did Not Knowingly Waive Her Trial Rights and Reiterates her Request for a Pretrial Hearing**

The Government contends Ms. Tew's argument that any waiver of her fundamental trial rights was not knowing and voluntary "has been soundly rejected elsewhere." (ECF No. 393 at 6.) In *United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998), the case cited by the Government, the court noted that the defendant offered no support for his conclusion that he didn't understand the rights he was waiving. That is precisely why Ms. Tew has requested a hearing in this case. Ms. Tew seeks an opportunity to show that her waiver was not made knowingly.

A waiver is knowing if made "with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*,

5

475 U.S. 412, 421 (1986); *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002). "The purpose of the 'knowing and voluntary' inquiry ... is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401 (1993). When a defendant waives his constitutional rights, he must be "made aware of the dangers and disadvantages ... so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975). Given the important constitutional issues raised by the Government's interpretation of the proffer agreement, the Court has an obligation to ensure Ms. Tew's waiver thereof was knowing and intelligent.

The Government argues Ms. Tew has somehow waived her ability to contest whether her waiver was knowing and voluntary because she is currently represented by the same attorney as when she signed the proffer letter. (ECF No. 393 at 7.) Notably, the Government cites no authority for this position, likely because none exists. Undersigned counsel's current involvement in this case does not deprive Ms. Tew of the ability to request a hearing on whether she knowingly and voluntarily waived her rights by signing the proffer letter.

The Government also alleges the "complexity of the situation" means this Court should punt on deciding whether Ms. Tew's waiver was knowing and voluntary and leave those matters to "appeals and collateral attacks." (ECF No. 393 at 7.) But that approach makes no sense given the roles of a trial court and an appellate court. Courts

6

apply a "totality of the circumstances" approach when determining whether a waiver of important constitutional rights was knowing and voluntary. *Colorado v. Spring*, 479 U.S. 564, 573 (1987); *United States v. Burson*, 531 F.3d 1254, 1256-57 (10th Cir. 2008). The trial court is responsible for developing the factual record through testimony, making any necessary credibility determinations, and analyzing the relevant factors in the first instance. Given the fact-intensive nature of a "totality of the circumstances" analysis, the trial court is best positioned to determine whether Ms. Tew's waiver was knowing and voluntary.

The Government would have the Court defer all rulings on the proffer agreement until the middle of trial. (ECF No. 393 at 14.) That approach ignores practical realities. Defense counsel cannot meaningfully prepare their defense—including opening statements, cross-examinations of the Government's witnesses, etc.—without guideposts regarding what the Court believes triggers waiver under paragraph 4. And waiting until trial to decide whether any waiver is knowing and voluntary risks unnecessarily inconveniencing the jury with lengthy mid-trial hearings. This issue has been raised and briefed by the parties, and Ms. Tew respectfully requests that the Court set a hearing to decide the matter before empaneling a jury.

As such, Ms. Tew reiterates her request for a pre-trial hearing on whether she knowingly and voluntarily waived important trial rights when she executed the proffer agreement.

7

Dated: January 29, 2024.

         Respectfully submitted,

         *s/ Jamie Hubbard*
         Jamie Hubbard
         David S. Kaplan
         STIMSON LABRANCHE HUBBARD, LLC
         1652 Downing Street
         Denver, CO 80218
         Phone: 720.689.8909
         Email: hubbard@slhlegal.com
         kaplan@slhlegal.com

         *Attorneys for Kimberley Ann Tew*

**Certificate of Service**

I certify that on January 29, 2024, I electronically filed the foregoing *Reply in Support of Motion in Limine re Admissibility of Proffer Statements* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

*s/ Brenda Rodriguez*
Brenda Rodriguez