IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW,**
   a/ka Kimberley Vertanen,

    Defendant.

---

**UNITED STATES' MOTION FOR PRELIMINARY ORDER OF FORFEITURE FOR A PERSONAL MONEY JUDGMENT AGAINST DEFENDANT KIMBERLEY ANN TEW**

---

The United States of America ("United States"), by and through Acting United States Attorney Matthew T. Kirsch and Assistant United States Attorney Laura B. Hurd, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Fed. R. Crim. P. 32.2(b)(2), respectfully requests that this Court enter before sentencing a Preliminary Order of Forfeiture for a Personal Money Judgment in the amount of $5,023,878.50 against defendant Kimberley Tew, which constitutes proceeds obtained by the defendant as a result of violations of 18 U.S.C. §§ 1343, 2, and 1349.

**A.  Background**

    1.    On February 3, 2021, an Indictment was filed charging defendant Kimberly Ann Tew with the following: in Count 1 with violation of 18 U.S.C. § 1349

1

(conspiracy to commit wire fraud); in Counts 16[1], 21, 22, 25, 26, 31, and 32 with violations of 18 U.S.C. §§ 1343 and 2 (wire fraud and aiding and abetting); in Count 41 with violation of 18 U.S.C. §§ 1956(h) (conspiracy to commit money laundering); and in Counts 43, 44, 47, 48, and 56 with violations of 18 U.S.C. § 1957 (money laundering-spending).  ECF Doc. # 83, p. 1-21.

2. The Indictment also sought forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), of any and all of the defendant's right, title, and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of the violations set forth in Counts 1 through 40, including but not limited to, a money judgment in the amount of proceeds obtained by the scheme and the defendants.  In addition, the Indictment sought forfeiture, pursuant to 18 U.S.C. § 982(a)(2)[2], for all property involved in the violations set forth in Counts 41 through 56 or all property traceable to such property.  ECF Doc. #83, p. 23.

3. On February 15, 2024, defendant Kimberly Tew was found guilty at trial of Counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56. ECF Doc. 448.

---

[1] Count 16 was removed from the verdict form and dismissed by the Court.
[2] Title 18, United States Code, Section 982(a)(1), states that upon conviction of violations of 18 U.S.C. §§ 1956 or 1957, the Court "shall order that person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Defendant Kimberley Tew was convicted of conspiracy to commit money laundering and substantive counts.  A total of $72,000.00 is the amount of funds laundered by Kimberley Tew based on the substantive counts of conviction.  The total amount involved in those individual transactions are significantly less than the total wire fraud conspiracy proceeds. Thus, the government does not intend to forfeit those funds in addition to the wire fraud conspiracy amounts.

4. The government presented facts at trial which established a nexus between the criminal conduct for which the defendant was found guilty and the $5,023,878.50, which represents the proceeds obtained by the Tews through the wire fraud conspiracy and substantive counts. See EX 1002-1003.

**B. Argument**

Pursuant to 18 U.S.C. § 981(a)(1)(C) the Court shall order criminal forfeiture of any property, real or personal, constituting or derived from proceeds traceable to a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense. Title 18, United States Code, Section 1956(c)(7) includes any offense listed in 18 U.S.C. § 1961(1) as a "specified unlawful activity." Wire fraud in violation of 18 U.S.C. § 1343 is listed in 18 U.S.C. § 1961. Conspiracy to commit wire fraud is set forth in 18 U.S.C. § 1349.

Proceeds are defined in 18 U.S.C. § 981(a)(2), which states that "proceeds" are "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."

The government may seek a money judgment against a defendant for the value of what they obtained from the criminal activity." *United States v. Channon*, 973 F.3d 1105, 1112 (10th Cir. 2020) (quotation marks and citation omitted); *United States v. Venturella*, 585 F.3d 1013, 1017 (7th Cir. 2009). This includes proceeds from the wire fraud scheme and proceeds obtained from the conspiracy the defendant benefitted from.

When two co-conspirators jointly obtain and jointly enjoy the fruits from their conspiracy, they are liable for the full amount of that conspiracy. *See Channon*, 973 F.3d at 1115 n.8 (citing *United States v. Tanner*, 942 F.3d 60, 67-68 (2d Cir. 2019))*; United States v. Dotson*, 635 F. Supp. 3d 1326, 1333 (M.D. Fla. 2022) ("Mr. and Mrs. Dotson both benefited personally from the fraud" because they co-owned the stores that received the profits from the fraudulent transactions); *United States v. Bikundi*, 926 F.3d 761 (D.C. Cir. 2019) (defendants jointly obtained conspiracy proceeds because both were integrally involved in fraud scheme and treated property as joint property). This is because each of them is responsible for the conduct, acquisition, and use of the conspiracy proceeds. This is especially true when the codefendants are married and share finances and expenses. *See United States v. Carlyle*, 776 F. App'x 565, 571 (11th Cir. 2019)  (a married couple were both liable for the full amount of the fraud proceeds because "it is reasonable to infer from the evidence in the record that [the defendant] possessed and enjoyed the fruits of her own efforts.").

Pursuant to Fed. R. Crim. P. 32.2(b)(1)(A), the Court must determine what property is subject to forfeiture as soon as practicable after a finding of guilt. When a personal money judgment is sought, "the court must determine the amount of money the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). As set forth in Fed. R. Crim. P. 32.2(b)(1)(B), the Court "determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." When

considering the evidence, the Court need only find that a preponderance of the evidence supports forfeiture. *United States v. Gordon*, 710 F.3d 1124, 1165 (10th Cir. 2013) ("A forfeiture judgment must be supported by a preponderance of the evidence." (quoting *United States v. Bader*, 678 F.3d 858, 893 (10th Cir. 2012)).

Once the property is determined to be subject to forfeiture, the Court "must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(2)(A). It is mandatory that the Preliminary Order of Forfeiture is entered "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant." Fed. R. Crim. P. 32.2(b)(2)(B).

As set forth in the government's sentencing statement, the evidence at trial established that from August 2018 to July 2020, Michael Tew, Kimberly Tew, and Jonathan Yioulos engaged in a scheme to defraud a Florida-based company, N.A.C., Inc. ("the Victim Company"). As part of the conspiracy and scheme to defraud, fraudulent invoices were submitted to the Victim Company for services that were never rendered. ECF Doc. #459, p. 3 (citing Testimony of Jonathan Yioulos; GX 1002, 1003, and 1008). At times, Michael and Kimberley Tew used various entities and identities in order to submit the invoices and to receive payment. After the fraudulent invoices were paid, Michael and Kimberley Tew engaged in multiple financial transactions through financial institutions in amounts greater than $10,000 from money they knew to be the proceeds of wire fraud. *Id.* (citing GX 1009-1023).

5

Between August 2018 and July 2020, as a result of the conspiracy to commit wire fraud, the Victim Company paid $5,053,878.50 either directly to the Michael and Kimberley Tew or to third parties recruited by them. *Id.* at p. 12 (citing GX 1002-1003). The fraud was perpetrated to pay outstanding and ongoing debts incurred by Kimberley Tew's gambling, to cover the redemptions of "investors" who were victims of a separate cryptocurrency scheme, and to finance a lavish lifestyle that included a luxury apartment in Cherry Creek, designer clothes, expensive food, and Las Vegas junkets. *Id.* at 12-13.

Michael and Kimberley Tew maintained multiple bank accounts at multiple financial institutions; some they held in their individual names, and others were joint accounts. *Id.* at p. 22 (citing GX 1000). After withdrawing cash from the proceeds of the fraud, Michael and Kimberley Tew often deposited the aggregated amount of cash from that day or over a few days into cryptocurrency ATMs, where they were able to deposit United States dollars in exchange for bitcoin, either held in their own wallets or sent to third parties, many of whom were owed money. All told, the Tews deposited approximately $2,429,181 into just one company's cryptocurrency ATMs during the conspiracy. *Id.* at p. 23 (citing ECF No. 341-1, Log Entry # 176, 179, 189, 192, 193, 348, 351, 348, 351, 356).

In total, the Victim Company paid $5,053,878.50 to the various entities for Michael and Kimberley Tew's benefit or directly to bank accounts controlled or operated by Michael Tew and Kimberley Tew. *Id.* at p. 23-24; GX 1002-1003. `

Michael and Kimberly Tew were equally culpable in the conspiracy that obtained $5,053,878.50 from the Victim Company for their benefit. Based on their joint conduct, joint use of the proceeds, and joint responsibility related to the wire fraud conspiracy, the government seeks a forfeiture money judgment against defendant Kimberley Tew in the amount of $5,053,878.50. The government will credit any payments made toward the money judgment so that it will not collect more than the $5,053,878.50.

In addition, the government intends to recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to the eligible victim of the offenses, for which the defendant has been found guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met.

**Conclusion**

Accordingly, the United States respectfully requests that the Court enter the Preliminary Order of Forfeiture for a Personal Money Judgment in the amount of $5,053,878.50 against defendant Kimberley Tew pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

DATED this 25th day of July 2024.

                                            Respectfully submitted,

                                            Matthew T. Kirsch
                                            Acting United States Attorney

        By:    <u>/s/ *Laura B. Hurd*</u>
            Laura B. Hurd
            Assistant U.S. Attorney
            U.S. Attorney's Office
            1801 California Street, Ste. 1600
            Denver, Colorado 80202
            Telephone: (303) 454-0100
            E-mail: laura.hurd@usdoj.gov
            *Attorney for the United States*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 25th day of July 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notice to all counsel of record.

            <u>s/ *Sheri Gidan*</u>
            FSA Federal Paralegal
            Office of the U.S. Attorney