APPEAL,TERMED

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: <u>1:20–cr–00305–DDD</u> All Defendants

Case title: USA v. Tew et al

Magistrate judge case number:  1:20–mj–00088–KLM

Date Filed: 09/29/2020

Date Terminated: 12/06/2024

Assigned to: Judge Daniel D. Domenico

Appeals court case number: 24–1465 USCA–10th Circuit

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Michael Aaron Tew**<br>*TERMINATED: 11/15/2024* | represented by | **Peter R. Bornstein**<br>Peter R. Bornstein, Law Offices of<br>6060 Greenwood Plaza Boulevard<br>Suite 500<br>Greenwood Village, CO 80111<br>720–354–4440<br>Fax: 720–287–5674<br>Email: pbornstein@prblegal.com<br>*TERMINATED: 01/30/2023*<br>*LEAD ATTORNEY*<br>*Designation: CJA Appointment* |
| | | **David C. Boyer , Jr.**<br>Newland Legal PLLC<br>PO Box 1413<br>Midlothian, TX 76065<br>469–948–1489<br>Email: david@newlandlegal.com<br>*ATTORNEY TO BE NOTICED*<br>*Designation: CJA Appointment* |
| | | **Edward R. Harris**<br>Federal Public Defender's Office<br>Districts of Colorado and Wyoming<br>633 17th Street<br>Suite 1000<br>Denver, CO 80202<br>303–294–7002<br>Email: co.ecf@fd.org |

*TERMINATED: 10/21/2020*
*Designation: Public Defender or Community*
*Defender Appointment*

**Eric M. Creizman**
Armstrong Teasdale LLP
919 Third Avenue
37th Floor
New York, NY 10012
212–209–4400 x4358
Fax: 212–409–8385
Email: ecreizman@atllp.com
*TERMINATED: 08/13/2020*
*Designation: Retained*

**Jason Dale Schall**
Bowlin & Schall Law LLC
7350 East Progress Place
Suite 100
Greenwood Village, CO 80111
720–505–3861
Email: jason@bowsch.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Kristen M. Frost**
Ridley McGreevy & Winocur PC
303 16th Street
Suite 200
Denver, CO 80202
303–629–9700
Fax: 303–629–9702
Email: frost@ridleylaw.com
*ATTORNEY TO BE NOTICED*

**Michael Hassard**
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
718–737–7264
Email: michael@torekeland.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Michael J. Sheehan**
Sheehan Law
8400 East Prentice Avenue
Suite 1040
Greenwood Village, CO 80111
720–381–6146
Email: michael.sheehan.esq@gmail.com

*TERMINATED: 07/29/2020*
*Designation: Retained*

**Thomas Richard Ward**
Stuart & Ward LLP
140 East 19th Avenue
Suite 300
Denver, CO 80203
303–832–8888
Email: tward@stuartwardlaw.com
*TERMINATED: 03/18/2021*
*Designation: CJA Appointment*

**Tor Bernhard Ekeland**
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
718–737–7264
Email: tor@torekeland.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Xuan Zhou**
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street
Suite 1700
San Diego, CA 92101
619–233–1006
Email: xuan.zhou@lewisbrisbois.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Zachary Lee Newland**
Newland Legal, PLLC
P.O. Box 3610
Evergreen, CO 80437
303–948–1489
Email: zach@newlandlegal.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

18 U.S.C. § 1349 (Conspiracy to
Commit Wire Fraud)
(1s)

**Disposition**

Defendant shall be imprisoned for a total term of
forty–two (42) months. This term consists of
forty–two (42) months on each of Counts 1 through
42 and 44 through 56; and twelve (12) months on
each of counts 57 through 60; all counts imposed
concurrently. Three (3) years supervised release on
each count, to run concurrently. , $5,600.00 special
assessment, no fine, and restitution in the total

3

| | |
|---|---|
| | amount of $6,331,622.10. |
| 18 U.S.C. § 1343 (Wire Fraud) (2s–40s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10. |
| 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) (41s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (42s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (44s–56s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10. |
| 26 U.S.C. § 7203 (Willful Failure to File Tax Return) (57s–60s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10. |

**Highest Offense Level
(Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1349 (Attempt and Conspiracy) (1) | |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (2) | |
| 26 U.S.C. § 7201 (Attempt to Evade or Defeat Tax) (3) | |

**Highest Offense Level
(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18 U.S.C. § 19569(h) Conspiracy to Commit Money Laundering | |

Assigned to: Judge Daniel D. Domenico

Appeals court case number: 24–1333 USCA–10th Circuit

**Defendant (2)**

| | | |
|---|---|---|
| **Kimberley Ann Tew** *TERMINATED: 08/13/2024* *also known as* Kimberley Vertanen *TERMINATED: 08/13/2024* | represented by | **Peter R. Bornstein** (See above for address) *TERMINATED: 12/29/2022* *LEAD ATTORNEY* *Designation: CJA Appointment* |
| | | **David Scott Kaplan** Stimson LaBranche Hubbard, LLC 1652 North Downing Street Denver, CO 80203 720–689–8909 Fax: 720–689–8909 Email: kaplan@slhlegal.com *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |
| | | **Jamie Hughes Hubbard** |

Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80218
720–689–8909
Email: hubbard@slhlegal.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Michael Hassard**
(See above for address)
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Tor Bernhard Ekeland**
(See above for address)
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Xuan Zhou**
(See above for address)
*TERMINATED: 03/07/2022*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) (1) | Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (21–22) | Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (25–26) | Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (31–32) | Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |

| | |
|---|---|
| 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) (41) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (43−44) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (47) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (56) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1343 (Wire Fraud) (16) | Dismissed by Court during jury trial. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (48) | Defendant was found not guilty by jury at trial. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: Judge Daniel D. Domenico

**Defendant (3)**

| | | |
|---|---|---|
| **Jonathan K. Yioulos**<br>*TERMINATED: 12/06/2024* | represented by | **Michael John Tallon**<br>Michael J. Tallon, Attorney at Law<br>401 Stony Brook Road<br>Rush, NY 14543–9419<br>585–329–8139<br>Email: mtallon@tallonlaw.com<br>*TERMINATED: 07/20/2023*<br>*ATTORNEY TO BE NOTICED*<br>*Designation: Retained* |

**Richard Kent Kornfeld**
Recht & Kornfeld, P.C.
1600 Stout Street
Suite 1400
Denver, CO 80202
303–573–1900
Fax: 303–446–9400
Email: rick@rklawpc.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)<br>(1) | Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud)<br>(39) | Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1343 (Wire Fraud)<br>(2–38) | Dismissed on United States of Americas Motion to Dismiss Counts. |
| 18 U.S.C. § 1343 (Wire Fraud)<br>(40) | Dismissed on United States of Americas Motion to Dismiss Counts. |

**Highest Offense Level**

**(Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Movant**

| **National Air Cargo Holdings, Inc.** | represented by | **Eric S. Galler** |
|---|---|---|

Galler Corporate Law Group
9466 Georgia Avenue
Suite 130
Silver Spring, MD 20910
301−728−3850
Email: egaller@gcorplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
Cohen Black Law LLC
1888 North Sherman Street
Suite 770
Denver, CO 80203
720−699−2323
Email: nancy@cohenblacklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

| **National Air Cargo Group, Inc.** | represented by | **Eric S. Galler** |
|---|---|---|

*doing business as*
National Airlines

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

| **Christopher J. Alf** | represented by | **Eric S. Galler** |
|---|---|---|

(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**Atlantic Union Bank**                 represented by    **Lisa Marie Saccomano**
                                                          Kutak Rock LLP
                                                          2001 16th Street
                                                          Suite 1800
                                                          Denver, CO 80202
                                                          303–297–2400
                                                          Email: lisa.saccomano@kutakrock.com
                                                          *LEAD ATTORNEY*
                                                          *ATTORNEY TO BE NOTICED*
                                                          *Designation: Retained*

---

**Plaintiff**

**USA**                                 represented by    **Matthew T. Kirsch**
                                                          U.S. Attorney's Office
                                                          District of Colorado
                                                          1801 California Street
                                                          Suite 1600
                                                          Denver, CO 80202
                                                          303–454–0100
                                                          Fax: 303–454–0402
                                                          Email: matthew.kirsch@usdoj.gov
                                                          *TERMINATED: 11/17/2021*
                                                          *LEAD ATTORNEY*
                                                          *Designation: Federal Agency Attorney*

                                                          **Albert C. Buchman**
                                                          U.S. Attorney's Office
                                                          1801 California Street
                                                          Suite 1600
                                                          Denver, CO 80202
                                                          303–454–0228
                                                          Email: al.buchman@usdoj.gov
                                                          *TERMINATED: 12/12/2023*
                                                          *Designation: Federal Agency Attorney*

                                                          **Andrea Lee Surratt**
                                                          Crowell & Moring LLP

District of Colorado
1601 Wewatta Street
Suite 815
Denver, CO 80202
303–524–8645
Email: asurratt@crowell.com
*TERMINATED: 06/16/2022*
*Designation: Federal Agency Attorney*

**Bryan David Fields**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: bryan.fields3@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Hetal Janak Doshi**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
202–808–4241
Email: hetal.doshi@usdoj.gov
*TERMINATED: 02/02/2022*
*Designation: Federal Agency Attorney*

**Laura Beth Hurd**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0135
Fax: 303–454–0402
Email: laura.hurd@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Martha Ann Paluch**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402

Email: Martha.paluch@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Sarah Hunter Weiss**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Email: sarah.weiss@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/08/2020 | 1 | CRIMINAL COMPLAINT as to Michael Aaron Tew (1). (Attachments: # 1 Affidavit, # 2 Criminal Information Sheet) (cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/08/2020 | 2 | Arrest Warrant Issued in case as to Michael Aaron Tew. (cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 3 | Arrest of Michael Aaron Tew. Initial Appearance set for 7/9/2020 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (Text Only entry)(cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 4 | NOTICE OF ATTORNEY APPEARANCE: Michael James Sheehan appearing for Michael Aaron TewAttorney Michael James Sheehan added to party Michael Aaron Tew(pty:dft) (Sheehan, Michael) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 5 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 6 | ORDER ***granting 5 Motion as to Michael Aaron Tew (1), by Magistrate Judge Kristen L. Mix on 7/9/20. (nmarb, ) (nmarb, ). [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 7 | MINUTE ENTRY for Initial Appearance as to Michael Aaron Tew held before Magistrate Judge Kristen L. Mix on 7/9/2020. Defendant present in custody via video conference. Defendant advised. Defendant has retained private counsel and is not requesting court appointed counsel. Parties address the Court regarding release conditions. Bond set as to Michael Aaron Tew (1) $20,000 Unsecured with the conditions as set forth in the Order Setting Conditions of Release. Preliminary Examination set for 7/29/2020 2:00 PM in Courtroom A501 before Magistrate Judge Michael E. Hegarty. Defendant advised of conditions of bond and remanded for processing and release. (Total time: 14 minutes, Hearing time: 2:08–2:22)<br><br>**APPEARANCES**: Hetal Doshi on behalf of the Government via video conference, Michael Sheehan on behalf of the defendant, Angela Ledesma on behalf of pretrial via video conference FTR: KLM Courtroom A401. (lgale, ) Text Only Entry [1:20–mj–00088–KLM] (Entered: 07/09/2020) |

| 07/09/2020 | 8 | Unsecured Bond Entered as to Michael Aaron Tew in amount of $20,000 (lgale, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
|---|---|---|
| 07/09/2020 | 9 | ORDER Setting Conditions of Release as to Michael Aaron Tew (1) $20,000 Unsecured by Magistrate Judge Kristen L. Mix on 7/9/20. (lgale, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/10/2020 | 11 | Passport Receipt as to Michael Aaron Tew.Surrender of passport re Bond Conditions; Passport Number 484644160 issued by USA (jtorr, ) [1:20–mj–00088–KLM] (Entered: 07/10/2020) |
| 07/15/2020 | 12 | Arrest Warrant Returned Executed on 7/8/20 in case as to Michael Aaron Tew. (nmarb, ) [1:20–mj–00088–KLM] (Entered: 07/15/2020) |
| 07/20/2020 | 13 | Unopposed MOTION to Withdraw as Attorney by Michael Sheehan by Michael Aaron Tew. (Sheehan, Michael) [1:20–mj–00088–KLM] (Entered: 07/20/2020) |
| 07/21/2020 | 14 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 21 July 2020 as to Michael Aaron Tew. The Court is not in possession of a financial affidavit by which to determine whether court appointed counsel is appropriate in this case.Therefore, on or before July 24, 2020, Defendant shall complete and file a financial affidavit by which the Court may determine whether to appoint counsel for Defendant. (cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/21/2020) |
| 07/25/2020 | 15 | SUPPLEMENT to 13 Unopposed MOTION to Withdraw as Attorney by Michael Sheehan by Michael Aaron Tew (Sheehan, Michael) [1:20–mj–00088–KLM] (Entered: 07/25/2020) |
| 07/28/2020 | 16 | Joint MOTION to Exclude *Time Before Indictment* by USA as to Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 07/28/2020) |
| 07/28/2020 | 17 | NOTICE OF ATTORNEY APPEARANCE: Eric M. Creizman appearing for Michael Aaron Tew. Attorney Eric M. Creizman added to party Michael Aaron Tew. (pty:dft) (nmarb, ) [1:20–mj–00088–KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 18 | Minute ORDER by Magistrate Judge Michael E. Hegarty on 29 July 2020. For good cause shown pursuant to D.C. Colo. LAttyR 5(b), the Motion to Withdraw filedby Michael Sheehan 13 is granted. Mr. Sheehan's representation of the Defendant in this case is terminated. Defendant will continue to be represented Eric Creizman. (cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 19 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Preliminary Hearing as to Michael Aaron Tew held on 7/29/2020. Defendant present on bond. Preliminary hearing waived. Status Conference set for 10/14/2020 at 02:00 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (Total time: 8 minutes, Hearing time: 2:12 p.m.–2:20 p.m.) **APPEARANCES**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Eric Creizman on behalf of the defendant. FTR: A501. (cthom, ) Text Only Entry [1:20–mj–00088–KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 20 | WAIVER of Preliminary Hearing by Michael Aaron Tew (cthom, ) [1:20–mj–00088–KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 21 | |

| | | |
|---|---|---|
| | | ORDER granting <u>16</u> Motion to Exclude as to Michael Aaron Tew (1) by Magistrate Judge Michael E. Hegarty on 7/29/2020. (cthom, ) [1:20–mj–00088–KLM] (Entered: 07/29/2020) |
| 08/04/2020 | <u>22</u> | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 08/04/2020) |
| 08/07/2020 | <u>24</u> | NOTICE OF ATTORNEY APPEARANCE Matthew T. Kirsch appearing for USA. Attorney Matthew T. Kirsch added to party USA(pty:pla) (Kirsch, Matthew) [1:20–mj–00088–KLM] (Entered: 08/07/2020) |
| 08/12/2020 | <u>25</u> | MOTION to Withdraw as Attorney by Eric M. Creizman by Michael Aaron Tew. (Creizman, Eric) [1:20–mj–00088–KLM] (Entered: 08/12/2020) |
| 08/12/2020 | <u>26</u> | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Creizman, Eric) [1:20–mj–00088–KLM] (Entered: 08/12/2020) |
| 08/12/2020 | <u>27</u> | MOTION for Leave to Restrict by Michael Aaron Tew. (Creizman, Eric) [1:20–mj–00088–KLM] (Entered: 08/12/2020) |
| 08/13/2020 | <u>28</u> | Minute ORDER by Magistrate Judge Kristen L. Mix on 13 August 2020. IT IS HEREBY ORDERED that, on or before August 20, 2020, Defendant shall complete and file a financial affidavit (attached to this Minute Order) by which the Court may determine whether to appoint counsel for Defendant. IT IS FURTHER ORDERED that the Motion to Withdraw # <u>25</u> is GRANTED to the extent that Mr. Creizman is relieved of all further representation of Defendant. (Attachments: # <u>1</u> CJA Attachment) (cmadr, ) [1:20–mj–00088–KLM] (Entered: 08/13/2020) |
| 08/17/2020 | <u>29</u> | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Attachments: # <u>1</u> Affidavit CJA 23 Affidavit)(Creizman, Eric) [1:20–mj–00088–KLM] (Entered: 08/17/2020) |
| 08/19/2020 | <u>30</u> | MINUTE ORDER APPOINTING COUNSEL Under CJA, as to Michael Aaron Tew by Magistrate Judge Kristen L. Mix on 8/19/20. IT IS FURTHER ORDERED that if it appears at any time that the Defendant can afford to pay counsel, reimbursement of attorney fees may be required pursuant to 18 U.S.C. §3006A(f). (nmarb, ) [1:20–mj–00088–KLM] (Entered: 08/19/2020) |
| 08/24/2020 | <u>31</u> | NOTICE OF ATTORNEY APPEARANCE: Edward R. Harris appearing for Michael Aaron TewAttorney Edward R. Harris added to party Michael Aaron Tew(pty:dft) (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 08/24/2020) |
| 09/17/2020 | <u>32</u> | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 9/17/20 GRANTING <u>27</u> Motion for Leave to Restrict, as to Michael Aaron Tew (1). Pursuant toD.COLO.LCrR 47.1, the Clerk of the Court is directed to maintain the following document UNDER RESTRICTION at LEVEL 3:1 Declaration of Eric M. Creizman in Support of Motion to Withdraw as Counsel to Michael Tew [#26]. (nmarb, ) [1:20–mj–00088–KLM] (Entered: 09/17/2020) |
| 09/17/2020 | <u>33</u> | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Attachments: # <u>1</u> Proposed Order (PDF Only))(Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 09/17/2020) |
| 09/17/2020 | <u>34</u> | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 09/17/2020) |

| 09/18/2020 | 35 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew. (nmarb, ) [1:20–mj–00088–KLM] (Entered: 09/18/2020) |
|---|---|---|
| 09/18/2020 | 36 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew. (nmarb, ) [1:20–mj–00088–KLM] (Entered: 09/18/2020) |
| 09/22/2020 | 37 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 9/22/20 as to Michael Aaron Tew re 36 Restricted Document – Level 1. Status Conference set for 11/9/2020 10:00 AM in Courtroom A401 before Magistrate Judge Kristen L. Mix. Text Only Entry (lgale, ) [1:20–mj–00088–KLM] (Entered: 09/22/2020) |
| 09/24/2020 | 38 | Utility Setting Hearings as to Michael Aaron Tew: Text Only Entry Status Conference set for 9/29/2020 01:30 PM in Courtroom A 502 before Magistrate Judge Nina Y. Wang. All parties shall appear by video/telephone conference. (bwilk, ) [1:20–mj–00088–KLM] (Entered: 09/28/2020) |
| 09/29/2020 | 39 | MOTION for Leave to Restrict by Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 40 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 41 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 42 | Unopposed MOTION to Modify 8 Bond, 7 Initial Appearance,,,, Bond Set/Reset,,,, Set Hearings,,,, Text Only Entry – Prompts,,, 9 Order Setting Conditions of Release by Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 44 | COURTROOM MINUTES for Status Conference, and Arraignment as to Michael Aaron Tew held on 9/29/2020 before Magistrate Judge Nina Y. Wang. Defendant present on bond appearing by videoconference. Defendant advised regarding proceeding by remote means pursuant to CARES Act. Defendant consents. Defendant waives proceeding by indictment. Defendant sworn. Defendant questioned regarding waiver. Waiver tendered to the court. Information and penalty sheet tendered. Criminal Case number issues is 20–cr–00305. Defendant advised regarding the charges, penalties, and fines. Plea of NOT GUILTY entered by defendant. Parties do not believe a discovery conference is necessary in this matter. Defendant intends to file a motion to modify bond which will likely be referred to Judge Mix since she set the original conditions. Parties discuss process for Restricting #39 to Level 1 and the notice period. Defendants bond continues. (Total time: 16 minutes, Hearing time: 1:33–1:49)<br><br>**APPEARANCES**: Hetal Doshi and Matthew Krisch on behalf of the Government, Edward Harris on behalf of the Defendant. FTR: NYW–CRD. (bwilk, ) Text Only Entry [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 45 | WAIVER OF INDICTMENT by Michael Aaron Tew by Magistrate Judge Nina Y. Wang on 9/29/2020. (bwilk, ) [1:20–mj–00088–KLM] (Entered: 09/30/2020) |
| 09/29/2020 | 49 | UNRESTRICTED INFORMATION – Level 2 as to Michael Aaron Tew (1) count(s) 1, 2, 3. (Attachments: # 1 Penalty Sheet ) (bwilk, ) Modified on 10/9/2020 to adjust restriction level (athom, ). Modified on 1/20/2021 to unrestrict pursuant to 81 Order (athom, ). (Entered: 10/05/2020) |

| 09/30/2020 | 46 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 09/30/2020) |
| 09/30/2020 | 48 | RESTRICTED DOCUMENT – Level 1 as to Michael Aaron Tew. (jgonz, ) (Entered: 10/02/2020) |
| 10/01/2020 | 47 | NOTICE of Disposition by Michael Aaron Tew (Harris, Edward) (Entered: 10/01/2020) |
| 10/06/2020 | 50 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 10/6/20 as to Michael Aaron Tew re 42 Unopposed MOTION to Modify 8 Bond. Motion Hearing set for 10/8/2020 1:30 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. Text Only Entry (lgale, ) (Entered: 10/06/2020) |
| 10/07/2020 | 51 | ORDER Setting Change of Plea hearing and Authorizing VTC or Telephone Conference as to Michael Aaron Tew re 47 Notice of Disposition. Change of Plea Hearing set for 10/22/2020 10:30 AM in Courtroom A 702 before Judge Daniel D. Domenico. The change–of–plea hearing in the above–referenced matter shall be conducted by VTC, or by telephone conference if VTC is not reasonably available. By Judge Daniel D. Domenico on 10/07/2020. (athom, ) (Entered: 10/07/2020) |
| 10/08/2020 | 52 | MINUTE ENTRY for Motion Hearing as to Michael Aaron Tew held before Magistrate Judge Kristen L. Mix on 10/8/2020. Defendant present on bond via video conference. Parties address the Court regarding 42 Motion to Modify as to Michael Aaron Tew (1). For the reasons stated on the record, it is: ORDERED: 42 Motion to Modify as to Michael Aaron Tew (1) is GRANTED. Defendant's bond is modified to remove the condition of home detention. Gps will remain in effect and a 9:00 pm curfew is imposed.Defendant continued on bond. (Total time: 4 minutes, Hearing time: 1:31–1:35)<br><br>**APPEARANCES (ALL PARTIES APPEAR BY VIDEO CONFERENCE)**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Edward Harris on behalf of the defendant, Carolos Morales on behalf of probation. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 10/08/2020) |
| 10/21/2020 | 54 | MOTION to Withdraw as Attorney by Edward R. Harris by Michael Aaron Tew. (Harris, Edward) (Entered: 10/21/2020) |
| 10/21/2020 | 55 | ORDER granting 54 Motion to Withdraw as Attorney. Good cause having been shown, attorney Edward R. Harris is relieved of any further representation in this case. The Clerk of Court is instructed to terminate Mr. Harris as counsel of record, and to remove his name from the electronic certificate of mailing. An attorney from the Criminal Justice Act panel shall be appointed to represent Defendant Michael Aaron Tew. Absent extraordinary circumstances, no further motions to withdraw or motions to substitute counsel will be granted. The court reminds Mr. Tew that counsel is under a duty to provide him prudent and considered advice, even if that advice is not what Mr. Tew hopes to hear. SO ORDERED by Judge Daniel D. Domenico on 10/21/2020. Text Only Entry (dddlc2, ) (Entered: 10/21/2020) |
| 10/21/2020 | 56 | ORDER VACATING the change of plea hearing as to Michael Aaron Tew. In the light of this court's order granting Edward Harris' motion to withdraw as counsel for Mr. Tew 55 , the change of plea hearing set for tomorrow, 10/22/2020, is hereby VACATED. SO ORDERED by Judge Daniel D. Domenico on 10/21/2020. Text Only Entry (dddlc2, ) (Entered: 10/21/2020) |

| 10/21/2020 | 57 | Letter by Michael Aaron Tew. (athom, ) (Entered: 10/21/2020) |
|---|---|---|
| 10/22/2020 | 58 | NOTICE OF ATTORNEY APPEARANCE: Thomas Richard Ward appearing for Michael Aaron TewAttorney Thomas Richard Ward added to party Michael Aaron Tew(pty:dft) (Ward, Thomas) (Entered: 10/22/2020) |
| 10/22/2020 | 59 | MINUTE ORDER re: 47 notice of disposition. Defendant shall file a status report regarding the status of his plea and any other issues he wishes to bring to the court's attention no later than 11/12/2020. SO ORDERED by Judge Daniel D. Domenico on 10/22/2020. Text Only Entry (dddlc2, ) (Entered: 10/22/2020) |
| 10/27/2020 | 60 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 10/27/2020) |
| 10/27/2020 | 61 | Unopposed MOTION for Leave to Restrict by USA as to Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 10/27/2020) |
| 10/27/2020 | 62 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) (Entered: 10/27/2020) |
| 10/28/2020 | 63 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew. (athom, ) (Entered: 10/28/2020) |
| 10/28/2020 | 64 | ORDER granting 61 Motion for Leave to Restrict as to Michael Aaron Tew. By Judge Daniel D. Domenico on 10/28/2020. Text Only Entry (athom, ) (Entered: 10/28/2020) |
| 11/12/2020 | 65 | MOTION for Leave to Restrict by Michael Aaron Tew. (Ward, Thomas) (Entered: 11/12/2020) |
| 11/12/2020 | 66 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 11/12/2020) |
| 11/12/2020 | 67 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 11/12/2020) |
| 11/13/2020 | 68 | ORDER granting 65 Motion for Leave to Restrict as to Michael Aaron Tew. For good cause shown, documents 66 and 67 shall remain at a Level 2 Restriction. SO ORDERED by Judge Daniel D. Domenico on 11/13/2020. Text Only Entry (dddlc2, ) (Entered: 11/13/2020) |
| 11/13/2020 | 69 | MINUTE ORDER re Status Report 67 . Defendant shall file a status report regarding the status of his plea and any other issues he wishes to bring to the court's attention no later than 12/10/2020. SO ORDERED by Judge Daniel D. Domenico on 11/13/2020. Text Only Entry (dddlc2, ) (Entered: 11/13/2020) |
| 12/10/2020 | 70 | MOTION for Leave to Restrict by Michael Aaron Tew. (Ward, Thomas) (Entered: 12/10/2020) |
| 12/10/2020 | 71 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 12/10/2020) |
| 12/10/2020 | 72 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 12/10/2020) |
| 12/11/2020 | 73 | ORDER granting 70 Motion for Leave to Restrict as to Michael Aaron Tew (1). For good cause shown, Docs. 71 and 72 shall remain at a Level 2 restriction. Defendant is |

| | | |
|---|---|---|
| | | further ORDERED to file a status report in this matter no later than **noon** on 12/23/2020. SO ORDERED by Judge Daniel D. Domenico on 12/11/2020. Text Only Entry (dddlc2, ) (Entered: 12/11/2020) |
| 12/11/2020 | 74 | Utility Setting/Resetting Deadlines/Hearings as to Michael Aaron Tew: Status Report due by 12/23/2020 pursuant to 73 Order. Text Only Entry (athom, ) (Entered: 12/11/2020) |
| 12/23/2020 | 75 | STATUS REPORT by Michael Aaron Tew (Ward, Thomas) (Entered: 12/23/2020) |
| 12/28/2020 | 76 | Order regarding status report 75 filed by Michael Aaron Tew. In light of Mr. Tew's withdrawal of his notice of disposition, unless the parties file a motion to the contrary, the court will remove the restriction on the information on 1/4/21. SO ORDERED by Judge Daniel D. Domenico on 12/28/2020. Text Only Entry (dddlc2, ) (Entered: 12/28/2020) |
| 01/04/2021 | 77 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 01/04/2021) |
| 01/04/2021 | 78 | MOTION for Leave to Restrict by Michael Aaron Tew. (Ward, Thomas) (Entered: 01/04/2021) |
| 01/05/2021 | 79 | MINUTE ORDER as to Defendant Michael Aaron Tew's Motion to Restrict 77 . The government shall file its response in opposition to the motion, if any, no later than 1/12/2021. SO ORDERED by Judge Daniel D. Domenico on 1/5/2021. Text Only Entry (dddlc2, ) (Entered: 01/05/2021) |
| 01/12/2021 | 80 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Doshi, Hetal) (Entered: 01/12/2021) |
| 01/20/2021 | 81 | Order Denying 78 Motion to Maintain Restriction on Indictment. Mr. Tew has failed to identify a private interest in restriction of the information in this case sufficient to overcome the presumption in favor of public access to court documents. His motion to restrict access is thus DENIED. The clerk is directed to un–restrict the information in this case, Doc. 49. SO ORDERED by Judge Daniel D. Domenico on 1/20/2021. Text Only Entry (dddlc2, ) (Entered: 01/20/2021) |
| 01/20/2021 | 82 | ORDER Setting Trial Date and Related Deadlines as to Michael Aaron Tew. Motions due by 2/17/2021. Responses due by 2/24/2021. Five–day Jury Trial set for 3/15/2021 at 09:00 AM in Courtroom A 702 before Judge Daniel D. Domenico. Trial Preparation Conference set for 3/3/2021 at 01:30 PM in Courtroom A 702 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 01/20/2021. (athom, ) (Entered: 01/20/2021) |
| 02/03/2021 | 83 | INDICTMENT as to Michael Aaron Tew (1) count(s) 1s, 2s–40s, 41s, 42s, 44s–56s, 57s–60s, Kimberley Ann Tew (2) count(s) 1, 16, 21–22, 25–26, 31–32, 41, 43–44, 47–48, 56, Jonathan K. Yioulos (3) count(s) 1, 2–40. (Attachments: # 1 Penalty Sheet, # 2 Penalty Sheet, # 3 Penalty Sheet) (athom, ) Modified on 2/9/2021 to correct text (athom, ). (Entered: 02/04/2021) |
| 02/03/2021 | 84 | RESTRICTED DOCUMENT – Level 4 as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 85 | Summons Issued as to Michael Aaron Tew. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 86 | |

| | | MINUTE ORDER as to Michael Aaron Tew on 02/03/2021. Initial Appearance on Summons set for 2/5/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix pursuant to 83 Indictment. Text Only Entry (athom, ) (Entered: 02/04/2021) |
|---|---|---|
| 02/03/2021 | 87 | Summons Issued as to Kimberley Ann Tew. Initial Appearance set for 2/10/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 88 | Summons Issued as to Jonathan K. Yioulos. Initial Appearance set for 2/9/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (athom, ) (Entered: 02/04/2021) |
| 02/05/2021 | 89 | MOTION to Modify Conditions of Release by Michael Aaron Tew. (Ward, Thomas) (Entered: 02/05/2021) |
| 02/05/2021 | 90 | MINUTE ENTRY for Initial Appearance, Arraignment and Discovery Hearing as to Michael Aaron Tew held before Magistrate Judge Kristen L. Mix on 2/5/2021. Defendant present on bond and consents to proceeding via video conference. Defendant advised. Counsel has previously been appointed. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed. Argument by counsel for the government and defense counsel as to 89 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). The Court DENIES 89 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Defendant's bond continued, Counsel is directed to chambers. (Total time: 29 minutes, Hearing time: 2:21–2:50)<br><br>**APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Tom Ward on behalf of the defendant. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/05/2021) |
| 02/05/2021 | 91 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Michael Aaron Tew by Magistrate Judge Kristen L. Mix on 2/5/21. (lgale, ) (Entered: 02/05/2021) |
| 02/09/2021 | 92 | MINUTE ENTRY for Initial Appearance, Arraignment, Discovery and Detention Hearing as to Jonathan K. Yioulos held before Magistrate Judge Kristen L. Mix on 2/9/2021. Defendant present on summons by video conference. Defendant advised. Defendant is not requesting court appointed counsel and is retaining an attorney. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed. Parties address the Court regarding conditions of release. Bond set as to Jonathan K. Yioulos (3) $40,000 Unsecured, with the conditions as set forth in the Order Setting Conditions of Release. Defendant advised of conditions of bond. Counsel is directed to chambers. (Total time: 12 minutes, Hearing time: 2:09–2:21)<br><br>**APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Michael Tallon on behalf of the defendant, Angela Ledesma on behalf of pretrial. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/09/2021) |
| 02/09/2021 | 93 | Unsecured Bond Entered as to Jonathan K. Yioulos in amount of $40,000 (lgale, ) (Entered: 02/09/2021) |
| 02/09/2021 | 94 | ORDER Setting Conditions of Release as to Jonathan K. Yioulos (3) $40,000 Unsecured by Magistrate Judge Kristen L. Mix on 2/9/21. (lgale, ) (Entered: |

| | | 02/09/2021) |
|---|---|---|
| 02/09/2021 | 95 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Jonathan K. Yioulos by Magistrate Judge Kristen L. Mix on 2/9/21. (lgale, ) (Entered: 02/09/2021) |
| 02/10/2021 | 96 | MINUTE ENTRY for Initial Appearance, Arraignment, Discovery and Detention Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 2/10/2021. Defendant present on summons and consents to proceeding by video conference. Defendant advised. Defendant is not requesting court appointed counsel. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed.Parties address the Court regarding conditions of release. Bond set as to Kimberley Ann Tew (2) $10,000 Unsecured with the conditions as set forth in the Order Setting Conditions of Release. Defendant is ordered to report to the probation office on 2–11–21 at 1:00 p.m. Defendant advised of conditions of bond. Counsel is directed to chambers. (Total time: 28 minutes, Hearing time: 2:31–2:59)<br><br>**APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Jamie Hubbard on behalf of the defendant, Tommie Anderson on behalf of pretrial. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/10/2021) |
| 02/10/2021 | 97 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Kimberley Ann Tew by Magistrate Judge Kristen L. Mix on 2/10/21. (lgale, ) (Entered: 02/10/2021) |
| 02/10/2021 | 98 | Unsecured Bond Entered as to Kimberley Ann Tew in amount of $10,000 (lgale, ) (Entered: 02/10/2021) |
| 02/10/2021 | 99 | ORDER Setting Conditions of Release as to Kimberley Ann Tew (2) $10,000 Unsecured by Magistrate Judge Kristen L. Mix on 2/10/21. (lgale, ) (Entered: 02/10/2021) |
| 02/11/2021 | 100 | Unopposed MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 02/11/2021) |
| 02/11/2021 | 101 | ORDER Setting Trial Date and Related Deadlines as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. The court EXCLUDES nineteen days from Mr. Tew's Speedy Trial clock. Motions due by 3/12/2021. Responses due by 3/17/2021. Eight–day Jury Trial set for 4/19/2021 at 09:00 AM in Courtroom A 702 before Judge Daniel D. Domenico. Trial Preparation Conference set for 4/12/2021 at 01:30 PM in Courtroom A 702 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 02/11/2021. (athom, ) (Entered: 02/11/2021) |
| 02/11/2021 | 102 | ORDER GRANTING 100 Unopposed Motion to Travel as to Jonathan Yioulos. Mr. Yioulos may travel to Sarasota, Florida, to visit his wife's family from 2/13/21 to 2/18/21. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from his trip. SO ORDERED by Judge Daniel D. Domenico on 2/11/2021. Text Only Entry (dddlc2, ) (Entered: 02/11/2021) |
| 02/11/2021 | 104 | Passport Receipt as to Kimberley Ann Tew. Surrender of passport re Bond Conditions; Passport Number 522213975 issued by USA. (athom, ) (Entered: 02/12/2021) |

| 02/16/2021 | 105 | Summons Returned Executed on 2/11/2021 as to Kimberley Ann Tew. (angar, ) (Entered: 02/16/2021) |
| 02/25/2021 | 106 | NOTICE OF ATTORNEY APPEARANCE: Tor Bernhard Ekeland appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Tor Bernhard Ekeland added to party Michael Aaron Tew(pty:dft), Attorney Tor Bernhard Ekeland added to party Kimberley Ann Tew(pty:dft) (Ekeland, Tor) (Entered: 02/25/2021) |
| 02/28/2021 | 108 | MOTION for Hearing *Regarding Joint Representation Pursuant to Fed. R. Crim. P. 44* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Doshi, Hetal) (Entered: 02/28/2021) |
| 03/01/2021 | 109 | MINUTE ORDER regarding 108 motion for hearing concerning joint representation of Defendants Michael Aaron Tew and Kimberley Ann Tew. No later than 4:00 PM on 3/4/2021, Mr. Tew, Ms. Tew, and the Government must confer and email the court at domenico_chambers@cod.uscourts.gov with three mutually agreeable dates for a hearing on the Government's motion (Doc. 108) from the following list of dates: 3/9/21, 3/10/21, 3/11/21, 3/17/21, or 3/18/21. Mr. and Ms. Tew must file their responses to the Government's motion, if any, no later than 3/5/2021. SO ORDERED by Judge Daniel D. Domenico on 3/1/2021. Text Only Entry (dddlc2, ) (Entered: 03/01/2021) |
| 03/01/2021 | 110 | NOTICE OF ATTORNEY APPEARANCE Andrea Lee Surratt appearing for USA. Attorney Andrea Lee Surratt added to party USA(pty:pla) (Surratt, Andrea) (Entered: 03/01/2021) |
| 03/02/2021 | 111 | MOTION to Withdraw as Attorney by Thomas R. Ward by Michael Aaron Tew. (Ward, Thomas) (Entered: 03/02/2021) |
| 03/02/2021 | 112 | ORDER setting hearing on 108 motion concerning joint representation and 111 motion to withdraw. A hearing on the Government's motion concerning joint representation (Doc. 108) and Thomas R. Ward's motion to withdraw as counsel (Doc. 111) is hereby set for 3/18/2021 at 10:30 AM before Judge Daniel D. Domenico by video–teleconference. Counsel are directed to contact Courtroom Deputy Patti Glover at patricia_glover@cod.uscourts.gov no later than three business days before the hearing for instructions on how to proceed. SO ODERED by Judge Daniel D. Domenico on 3/2/2021. Text Only Entry (dddlc2, ) (Entered: 03/02/2021) |
| 03/03/2021 | 113 | Unopposed MOTION to Continue *Deadline for Production of Discovery* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Doshi, Hetal) (Entered: 03/03/2021) |
| 03/03/2021 | 114 | ORDER granting 113 Motion to Continue. The Government must produce discovery in this case no later than 14 days after the court rules on the Government's motion concerning joint representation. SO ORDERED by Judge Daniel D. Domenico on 3/3/2021. (dddlc2, ) (Entered: 03/03/2021) |
| 03/11/2021 | 115 | MOTION to Continue *FOR A 180–DAY ENDS OF JUSTICE CONTINUANCE UNDER 18 U. S. C. § 3161(h)(7)* by Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Entered: 03/11/2021) |
| 03/18/2021 | 116 | MINUTE ENTRY for Motion Hearing as to Michael Aaron Tew, Kimberley Ann Tew, held before Judge Daniel D. Domenico on 3/18/2021. granting 108 Motion for Hearing as to Michael Aaron Tew; Kimberley Ann Tew (2); granting 111 Motion to |

| | | |
|---|---|---|
| | | Withdraw as Attorney. Thomas Richard Ward withdrawn from case as to Michael Aaron Tew granting 115 Motion to Continue as to all defendants. Pretrial Motions due by 8/30/2021, Responses due by 9/6/2021, Jury Trial (8 days) set for 10/12/2021 – 10/21/2021 09:00 AM; Trial Preparation Conference set for 9/27/2021 at 10:30 AM all in Courtroom A 702 before Judge Daniel D. Domenico Court Reporter: Tracy Weir. (pglov) (Entered: 03/18/2021) |
| 03/23/2021 | 117 | NOTICE OF ATTORNEY APPEARANCE: Michael John Tallon appearing for Jonathan K. Yioulos (Tallon, Michael) (Entered: 03/23/2021) |
| 03/29/2021 | 118 | Unopposed MOTION to Travel *Beyond Pre−trial Release Order* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/29/2021) |
| 03/29/2021 | 119 | MOTION for Leave to Restrict by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 03/29/2021) |
| 03/29/2021 | 120 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Doshi, Hetal) (Entered: 03/29/2021) |
| 03/29/2021 | 121 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Doshi, Hetal) (Entered: 03/29/2021) |
| 03/30/2021 | 122 | ORDER GRANTING 118 Unopposed Motion to Travel as to Jonathan Yioulos. Mr. Yioulos may travel to St. Thomas, American Virgin Islands from 4/5/21 to 4/9/21. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from his trip. SO ORDERED by Judge Daniel D. Domenico on 3/30/2021. Text Only Entry (dddlc2, ) (Entered: 03/30/2021) |
| 03/30/2021 | 123 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 118 Unopposed MOTION to Travel *Beyond Pre−trial Release Order*, 117 Notice of Attorney Appearance – Defendant filed by attorney Michael John Tallon. The format for the attorneys signature block information is not correct. **DO NOT REFILE THE DOCUMENTS. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). Also the documents were scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENTS. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 03/30/2021) |
| 03/30/2021 | 124 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 03/30/2021) |
| 03/30/2021 | 125 | ORDER granting 119 Motion for Leave to Restrict as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. By Judge Daniel D. Domenico on 03/30/2021. Text Only Entry (athom, ) (Entered: 03/30/2021) |
| 03/31/2021 | 126 | Unopposed MOTION for Protective Order by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 03/31/2021) |
| 04/01/2021 | 127 | ORDER Granting 126 Unopposed Motion for Protective Order as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. By Judge Daniel D. Domenico on 04/01/2021. (athom, ) (Entered: 04/01/2021) |

| 05/13/2021 | 128 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Michael Aaron Tew held on 02/05/2021 before Magistrate Judge Mix. Pages: 1–24. Prepared by: AB Litigation Services.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 05/13/2021 | 129 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Jonathan K. Yioulos held on 02/09/2021 before Magistrate Judge Mix. Pages: 1–15. Prepared by: AB Litigation Services.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 05/13/2021 | 130 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Kimberley Ann Tew held on 02/10/2021 before Magistrate Judge Mix. Pages: 1–26. Prepared by: AB Litigation Services.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 06/10/2021 | 131 | MOTION for Order , MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 06/10/2021) |
| 06/10/2021 | 132 | ORDER GRANTING 131 Unopposed Motion to Travel as to Jonathan Yioulos. Mr. Yioulos may travel to Queens, New York; Erie, Pennsylvania; and Albrightsville, |

| | | |
|---|---|---|
| | | Pennsylvania on June 25 to 27, June 24 to 25, and July 2 to 5, respectively. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from each trip. SO ORDERED by Judge Daniel D. Domenico on 6/10/2021. Text Only Entry (dddlc2, ) (Entered: 06/10/2021) |
| 06/18/2021 | 133 | NOTICE *OF DEFENDANT KIMBERLEY TEWS MEMORANDUM IN SUPPORT TO MODIFY THE CONDITIONS OF HER RELEASE* by Kimberley Ann Tew (Ekeland, Tor) Modified on 7/2/2021 to correct filer (athom, ). (Entered: 06/18/2021) |
| 06/18/2021 | 134 | MOTION to Modify Conditions of Release by Kimberley Ann Tew. (Attachments: # 1 Affidavit Decl Kimbery Tew ISO Motion to Modify the Conditions)(Ekeland, Tor) Modified on 7/2/2021 to correct filer (athom, ). (Entered: 06/18/2021) |
| 06/21/2021 | 135 | ORDER REFERRING MOTION TO MODIFY CONDITIONS OF PRE–TRIAL RELEASE 134 filed by Kimberly Tew. The Court refers the motion to Magistrate Judge Kristen L. Mix because revocation or modification of a prior release order under § 3142 "is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order." See United States v. Cisneros, 328 F.3d 610, 614 (10th Cir. 2003); see also United States v. Anaya, 376 F. Supp. 2d 1261, 1262–63 (D.N.M. 2005). SO ORDERED by Judge Daniel D. Domenico on 6/21/2021. Text Only Entry (dddlc2, ) (Entered: 06/21/2021) |
| 06/23/2021 | 136 | NOTICE OF ATTORNEY APPEARANCE: Michael Hassard appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Michael Hassard added to party Michael Aaron Tew(pty:dft), Attorney Michael Hassard added to party Kimberley Ann Tew(pty:dft) (Hassard, Michael) (Entered: 06/23/2021) |
| 07/08/2021 | 137 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 07/08/2021 as to Kimberley Ann Tew re 134 MOTION to Modify Conditions of Release filed by Kimberley Ann Tew Motion Hearing set for 7/15/2021 11:00 AM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (alave, ) (Entered: 07/09/2021) |
| 07/15/2021 | 138 | MINUTE ENTRY for Motion Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 7/15/2021. Defendant present on bond. Argument by defense counsel and counsel for the government as to 134 Motion to Modify Conditions of Release. Court addresses defense counsel. The Court modifies defendant's bond to remove the condition of home confinement and radio frequency and imposes GPS monitoring and imposes a curfew at 8:00 a.m.–9:00 p.m. Probation is granted discretion to allow exceptions to the curfew when requested by defendant. Defendant acknowledges the new conditions of bond and agrees to abide by them. Defendant's bond continued. (Total time: 22 minutes, Hearing time: 11:08–11:30)<br><br>**APPEARANCES**: Matthew Kirsch, Hetal Doshi and Andrea Surratt on behalf of the Government, Tor Ekeland and Michael Hassard on behalf of the defendant, Carlos Morales on behalf of probation. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 07/15/2021) |
| 07/19/2021 | 139 | NOTICE of Disposition by Jonathan K. Yioulos (Tallon, Michael) (Entered: 07/19/2021) |
| 07/27/2021 | 140 | NOTICE *of Remote Plea Proceeding* by Jonathan K. Yioulos (Tallon, Michael) Modified on 9/9/2021 to correct event (athom, ). (Entered: 07/27/2021) |
| 07/27/2021 | 141 | |

| | | |
|---|---|---|
| | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: <u>140</u> Notice, <u>139</u> Notice of Disposition filed by attorney Michael John Tallon. The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take** – future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 07/27/2021) |
| 07/27/2021 | 142 | ORDER as to Jonathan K. Yioulos. ORDER as to Jonathan K. Yioulos. Pursuant to Notice of Disposition (Doc. 139), a Change of Plea Hearing is SET for 10/7/2021 at 11:30 **AM** in Courtroom A 1002 before Judge Daniel D. Domenico. The trial dates and all other deadlines previously set are VACATED. Counsel for the parties shall email a courtesy copy of the Plea Agreement and the Statement by Defendant in Advance of Plea of Guilty in the form required by Local Crim. R. 11.1(c)–(d) to Domenico_Chambers@cod.uscourts.gov no later than 12:00 p.m. three business days prior to the Change of Plea Hearing. If these documents are not timely submitted, the hearing may be vacated. The original and one copy of these documents shall be delivered to the courtroom deputy at the time of the hearing pursuant to Local Crim. R. 11.1(e). Defense counsel who reviewed and advised Defendant regarding the Plea Agreement must attend the Change of Plea Hearing. SO ORDERED by Judge Daniel D. Domenico on 7/27/2021. Text Only Entry (dddlc2, ) Modified on 7/29/2021 to correct text (athom, ). (Entered: 07/27/2021) |
| 08/10/2021 | <u>143</u> | Second MOTION to Continue by Michael Aaron Tew, Kimberley Ann Tew. (Hassard, Michael) Modified on 8/11/2021 to correct applicable parties (athom, ). (Entered: 08/10/2021) |
| 08/20/2021 | <u>144</u> | TRANSCRIPT of MOTION HEARING as to Kimberley Ann Tew held on 07/15/2021 before Magistrate Judge Mix. Pages: 1–20. Prepared by: AB Litigation Services.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 08/20/2021) |
| 09/16/2021 | <u>145</u> | MOTION to Modify *date of plea hearing* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 09/16/2021) |
| 09/17/2021 | <u>146</u> | **WITHDRAWN** – Unopposed MOTION to Travel *MOTION UPON ATTORNEY DECLARATION SEEKING ORDER PERMITTING TRAVEL BEYOND PRE–TRIAL RELEASE ORDER AT PARAGRAPH 7(f)* by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # <u>1</u> Proposed Order (PDF Only))(Ekeland, Tor) Modified on 9/20/2021 to correct filers (athom, ). Modified on 2/4/2022 to withdraw pursuant to 173 Order (athom, ). (Entered: 09/17/2021) |
| 09/17/2021 | <u>147</u> | |

| | | |
|---|---|---|
| | | MOTION to Withdraw as Attorney by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Kirsch, Matthew) (Entered: 09/17/2021) |
| 09/20/2021 | 148 | MOTION to Withdraw Document 146 Unopposed MOTION to Travel *MOTION UPON ATTORNEY DECLARATION SEEKING ORDER PERMITTING TRAVEL BEYOND PRE–TRIAL RELEASE ORDER AT PARAGRAPH 7(f)* by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) Modified on 9/22/2021 to correct filers (athom, ). (Entered: 09/20/2021) |
| 09/22/2021 | 149 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' Unopposed Motion for a 12–Month Ends of Justice Continuance (Doc. 143 ) is PARTIALLY GRANTED. One hundred eighty (180) days, from 9/22/2021 to 3/21/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. Motions due by 1/3/2022. Responses due by 1/10/2022. The eight–day Jury Trial set to begin 10/12/2021 is VACATED and RESET to 4/4/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 09/27/2021 is VACATED and RESET to 3/21/2022 at 01:00 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 09/22/2021. (athom, ) (Entered: 09/22/2021) |
| 09/30/2021 | 150 | ORDER as to Jonathan K. Yioulos. Defendant's Motion to Conduct Change of Plea by Video Conference Pursuant to Section 15002(b)(2) of the CARES Act (Doc. 140 ) is GRANTED, and the Motion to reschedule the Change of Plea Hearing (Doc. 145 ) is GRANTED IN PART. The Change of Plea Hearing set for 10/7/2021 at 11:30 a.m. is VACATED AND RESET to 11/18/2021 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico and will be conducted by VTC, or by telephone conference if VTC is not reasonably available. Members of the public may attend the Change of Plea Hearing by teleconference at (866) 390–1828, using Access Code 9792296#. All persons participating in court proceedings remotely by VTC or teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner. By Judge Daniel D. Domenico on 09/30/2021. (athom, ) (Entered: 09/30/2021) |
| 10/12/2021 | 151 | NOTICE OF ATTORNEY APPEARANCE: Tor Bernhard Ekeland *Attorney Xuan Zhou appearing for Michael Aaron Tew and Kimberley Ann Tew* appearing for Michael Aaron Tew, Kimberley Ann Tew (Ekeland, Tor) Modified on 10/13/2021 to correct applicable parties (athom, ). (Main Document 151 replaced on 1/21/2025) (lrobe, ). (Entered: 10/12/2021) |
| 10/13/2021 | 152 | NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 151 Notice of Attorney Appearance – Defendant, filed by attorney Xuan Zhou. The s/signature did not match the filers name on the account for which the login and password are registered. Future documents must be filed pursuant to D.C.COLO.LCivR 49.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Criminal Cases). Attorney Xuan Zhou has failed to comply D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases), which mandate the correct form for an attorneys signature block. This document does not have a s/ signature and must be re–filed. Xuan Zhou must re–file the above referenced document which must contain her s/ signature using her own log in and password. **Counsel is REMINDED that your firm does not represent defendant Yioulos. UNLESS you are filing a joint pleading that pertains to defendant Yioulos, you should ONLY be selecting the Tew defendants as the filers and as the applicable parties. If you are unclear about how documents should be filed and/or which** |

| | | parties should be selected when filing your documents, please contact the Clerk's office for assistance or clarification. (Text Only Entry) (athom, ) (Entered: 10/13/2021) |
|---|---|---|
| 11/17/2021 | 153 | ORDER GRANTING 147 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Matthew T. Kirsch as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States of America will continue to be represented by attorneys Hetal Doshi and Andrea Surratt. SO ORDERED by Judge Daniel D. Domenico on 11/17/2021. Text Only Entry (dddlc4) (Entered: 11/17/2021) |
| 11/18/2021 | 154 | MINUTE ENTRY for Change of Plea Hearing by VTC as to Jonathan K. Yioulos held before Judge Daniel D. Domenico on 11/18/2021. Plea of GUILTY entered by defendant Jonathan K. Yioulos to Counts 1,39. Sentencing set for 2/10/2022 01:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. Bond continued.Court Reporter: Julie Thomas. (pglov) (Entered: 11/18/2021) |
| 11/18/2021 | 155 | PLEA AGREEMENT as to Jonathan K. Yioulos (pglov) (Entered: 11/18/2021) |
| 11/18/2021 | 156 | STATEMENT IN ADVANCE OF PLEA OF GUILTY by Defendant Jonathan K. Yioulos (pglov) (Entered: 11/18/2021) |
| 11/19/2021 | 157 | NOTICE OF ATTORNEY APPEARANCE: Xuan Zhou appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Xuan Zhou added to party Michael Aaron Tew(pty:dft), Attorney Xuan Zhou added to party Kimberley Ann Tew(pty:dft) (Zhou, Xuan) (Main Document 157 replaced on 1/21/2025) (lrobe, ). (Entered: 11/19/2021) |
| 11/29/2021 | 158 | NOTICE OF ATTORNEY APPEARANCE Bryan David Fields appearing for USA. Attorney Bryan David Fields added to party USA(pty:pla) (Fields, Bryan) (Entered: 11/29/2021) |
| 11/29/2021 | 159 | MOTION to Withdraw as Attorney by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Doshi, Hetal) (Entered: 11/29/2021) |
| 12/09/2021 | 160 | MOTION for Order by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 12/09/2021) |
| 12/15/2021 | 161 | ORDER granting 160 Motion for Order as to Jonathan K. Yioulos (3). The Sentencing Hearing set for 2/10/2022 at 1:30 pm is VACATED and RESET to 7/12/2022 at 10:30 pm before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 12/15/2021. Text Only Entry (dddlc2, ) (Entered: 12/15/2021) |
| 12/27/2021 | 162 | MOTION to Withdraw as Attorney by Tor Ekeland by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) (Main Document 162 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 163 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) (Main Document 163 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 164 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Entered: 12/27/2021) |
| 12/27/2021 | 165 | Third MOTION to Continue by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Main Document 165 |

| | | |
|---|---|---|
| | | replaced on 1/21/2025) (lrobe, ). (Attachment 1 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 166 | MOTION to Withdraw as Attorney by Xuan Zhou by Michael Aaron Tew, Kimberley Ann Tew. (Zhou, Xuan) (Main Document 166 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 167 | MOTION to Withdraw as Attorney by Michael Hassard by Michael Aaron Tew, Kimberley Ann Tew. (Hassard, Michael) (Main Document 167 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 01/19/2022 | 168 | MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 01/19/2022) |
| 01/31/2022 | 169 | ORDER REFERRING MOTIONS as to Michael Aaron Tew, Kimberley Ann Tew. 167 MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, 162 MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, 159 MOTION to Withdraw as Attorney filed by USA, 166 MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Motions referred to Magistrate Judge Kristen L. Mix. SO ORDERED by Judge Daniel D. Domenico on 1/31/2022. Text Only Entry (dddlc2, ) (Entered: 01/31/2022) |
| 01/31/2022 | 170 | ORDER granting 168 Motion to Travel as to Jonathan K. Yioulos (3). Mr. Yioulos is permitted to travel as described in the travel plans submitted to the US Attorneys office and the Probation Department. SO ORDERED by Judge Daniel D. Domenico on 1/31/2022. Text Only Entry (dddlc2, ) (Entered: 01/31/2022) |
| 02/02/2022 | 171 | ORDER granting 159 Motion to Withdraw as Attorney. Hetal Janak Doshi withdrawn from case as to Michael Aaron Tew (1), Kimberley Ann Tew (2), Jonathan K. Yioulos (3). Attorney Hetal Doshi is relieved of any further representation of the United States in this case. The Clerk of Court is instructed to terminate Attorney Doshi as counsel of record, and to remove this name from the electronic certificate of mailing. The Government shall continue to be represented by Attorney Bryan Fields. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, ) (Entered: 02/02/2022) |
| 02/02/2022 | 172 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 167 MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, 162 MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, 166 MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Defendant Michael Tew and Defendant Kimberley Tew shall each file a separate financial affidavit under restriction at Level 3 NO LATER THAN FEBRUARY 14, 2022. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, ) (Entered: 02/02/2022) |
| 02/02/2022 | 173 | ORDER. The Motion to Withdraw Document 148 as to Michael Aaron Tew and Kimberly Ann Tew is GRANTED. Accordingly, the Motion to Travel 146 is DENIED AS MOOT. SO ORDERED by Judge Daniel D. Domenico on 2/2/2022. Text Only Entry (dddlc2, ) (Entered: 02/02/2022) |
| 02/04/2022 | 174 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' counsel Motion for a 3–Month Ends of Justice Continuance (Doc. 165 ) is GRANTED. Ninety (90) days, from 2/4/2022 to 5/5/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. Motions due |

| | | |
|---|---|---|
| | | by 5/12/2022. Responses due by 5/19/2022. The eight–day Jury Trial set to begin 4/4/2022 is VACATED and RESET to 6/13/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 3/21/2022 is VACATED and RESET to 6/2/2022 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 02/04/2022. (athom, ) (Entered: 02/04/2022) |
| 02/10/2022 | 175 | Pro Se Letter by Michael Aaron Tew, Kimberley Ann Tew. (athom, ) (Entered: 02/10/2022) |
| 02/10/2022 | 176 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 175 MOTION for Extension of Time to File filed by Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/10/2022. Text Only Entry (dddlc2, ) (Entered: 02/10/2022) |
| 02/14/2022 | 177 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on February 14, 2022. This matter is before the Court on Defendants' Motion for Extension of Time 175 (the "Motion"). Defendants ask for a two–week extension to file financial affidavits because they "are currently reviewing an engagement letter with a law firm based in Denver" and, therefore, may not require appointment of counsel through the CJA. IT IS HEREBY ORDERED that the Motion 175 is GRANTED. The deadline for each Defendant to file a separate financial affidavit under restriction at Level 3 is extended to February 28, 2022. (csarr, ) (Entered: 02/14/2022) |
| 02/25/2022 | 178 | NOTICE OF ATTORNEY APPEARANCE: Peter R. Bornstein appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Peter R. Bornstein added to party Michael Aaron Tew(pty:dft), Attorney Peter R. Bornstein added to party Kimberley Ann Tew(pty:dft) (Bornstein, Peter) (Entered: 02/25/2022) |
| 03/04/2022 | 179 | Order. Defense counsel is directed to file a status report on or before 3/10/2022 confirming that he has discussed the potential conflicts of interest that joint representation of criminal codefendants may raise with his clients, and that they each continue to understand these dangers and risks and continue to consent to proceeding with joint counsel in spite of them. SO ORDERED by Judge Daniel D. Domenico on 3/4/2022. Text Only Entry (dddlc2, ) (Entered: 03/04/2022) |
| 03/07/2022 | 180 | ORDER granting 162 Motion to Withdraw as Attorney. Attorney Tor Ekeland is relieved of any further representation of Defendants Michael Tew and Kimberley Tew. The Clerk of Court is instructed to terminate Attorney Ekeland as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard, Peter Bornstein, and Xuan Zhou. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/07/2022 | 181 | ORDER granting 166 Motion to Withdraw as Attorney. Attorney Xuan Zhou is relieved of any further representation of Defendants Michael Tew and Kimberley Tew. The Clerk of Court is instructed to terminate Attorney Zhou as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberley Tew shall continue to be represented by Attorneys Michael Hassard and Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/07/2022 | 182 | ORDER granting 167 Motion to Withdraw as Attorney. Attorney Michael Hassard is relieved of any further representation of Defendants Michael Tew and Kimberley Tew. The Clerk of Court is instructed to terminate Attorney Hassard as counsel of record, |

|  |  | and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorney Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
|---|---|---|
| 03/09/2022 | 183 | Unopposed MOTION to Travel by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 03/09/2022) |
| 03/10/2022 | 184 | STATUS REPORT by Michael Aaron Tew, Kimberley Ann Tew (Bornstein, Peter) (Entered: 03/10/2022) |
| 03/14/2022 | 185 | Order granting 183 Motion to travel. Defendants Michael and Kimberly Tew may travel out of state with their children for spring break as requested in their motion. Their pretrial monitoring is modified to stand–alone location monitoring without a curfew. SO ORDERED by Judge Daniel D. Domenico on 3/14/2022. Text Only Entry (dddlc2, ) (Entered: 03/14/2022) |
| 03/21/2022 | 186 | Unopposed MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/21/2022) |
| 03/22/2022 | 187 | MOTION to Amend/Correct *Conditions of Release* by Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Bornstein, Peter) (Entered: 03/22/2022) |
| 03/24/2022 | 188 | MINUTE ORDER re. 187 Motion to Amend/Correct Conditions of Supervised Release. The Court reviews the conditions of pretrial release de novo, and having reviewed the transcripts of the two previous hearings as well as the recommendations of the Probation Department, does not find that the Government has shown by a preponderance of evidence that location monitoring is required to reasonably assure the appearance of Kimberley Tew or the safety of another person or the community. The government has until 11:00am on 3/25/2022 to respond. SO ORDERED by Judge Daniel D. Domenico on 3/24/2022. Text Only Entry (dddlc2, ) (Entered: 03/24/2022) |
| 03/25/2022 | 189 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 187 MOTION to Amend/Correct *Conditions of Release* (Fields, Bryan) (Entered: 03/25/2022) |
| 03/25/2022 | 190 | ORDER GRANTING 187 Motion for Amendment of Conditions of Release as to Kimberley Ann Tew (2). It is ORDERED that Ms. Tew's conditions of release are modified to remove the requirement that she submit to GPS location monitoring. Ms. Tew is directed to contact the Probation Department for instructions on how to comply with her conditions of release going forward. By Judge Daniel D. Domenico on 3/25/2022. (dddlc1, ) (Entered: 03/25/2022) |
| 03/28/2022 | 191 | ORDER granting 186 Motion to Travel as to Jonathan K. Yioulos (3). Mr. Yioulos is permitted to travel as described in the travel plans submitted to the US Attorneys office and the Probation Department. SO ORDERED by Judge Daniel D. Domenico on 3/28/2022. Text Only Entry (dddlc2, ) (Entered: 03/28/2022) |
| 03/31/2022 | 192 | ORDER granting 164 Motion for Leave to Restrict. Doc. 163 is restricted at Level 3. SO ORDERED by Judge Daniel D. Domenico on 3/31/2022. Text Only Entry (dddlc2, ) (Entered: 03/31/2022) |
| 04/26/2022 | 193 | Unopposed MOTION to Continue *Trial and for Ends of Justice Finding Pursuant to 18 U.S.C. § 3161(h)(7)* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 04/26/2022) |

| 05/10/2022 | 194 | Unopposed MOTION for Leave to File Excess Pages *for Motion to Suppress* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/10/2022) |
|---|---|---|
| 05/12/2022 | 195 | ORDER granting 194 Motion for Leave to File Excess Pages as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 6000 words for their motion to suppress and the government has the same number for its response. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, ) (Entered: 05/12/2022) |
| 05/12/2022 | 196 | Unopposed MOTION for Extension of Time to File *Pre−Trial Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/12/2022 | 197 | Unopposed MOTION for Reconsideration re 195 Order on Motion for Leave to File Excess Pages, *Motion to Suppress* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/12/2022 | 198 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' Motion to Continue Trial and for an Ends of Justice Finding (Doc. 193 ) is GRANTED. One hundred and eighty (180) days, from 5/12/2022 to 11/8/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. The deadline to file motions to suppress remains 5/12/2022. Other pretrial Motions due by 6/13/2022. Responses due by 6/20/2022. The eight−day Jury Trial set for 06/13/2022 is VACATED and RESET to 12/5/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 6/2/2022 is VACATED and RESET to 11/29/2022 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 05/12/2022. (athom, ) (Entered: 05/12/2022) |
| 05/12/2022 | 199 | ORDER granting 197 Motion for Reconsideration re 197 Unopposed MOTION for Reconsideration re 195 Order on Motion for Leave to File Excess Pages, *Motion to Suppress* filed by Michael Aaron Tew, Kimberley Ann Tew as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 12,000 words for their motion to suppress, and the government has the same number with which to respond. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, ) (Entered: 05/12/2022) |
| 05/12/2022 | 200 | Motion to Suppress Evidence by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB)(Bornstein, Peter) Modified on 8/22/2022 to add document title and un restrict Motion ONLY per 244 Response. (sphil, ). Modified on 10/28/2022 to add text and correct event (athom, ). (Entered: 05/12/2022) |
| 05/12/2022 | 201 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/18/2022 | 202 | Unopposed MOTION for Extension of Time to File Response/Reply as to 200 Restricted Document – Level 1,, by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 05/18/2022) |
| 05/19/2022 | 203 | |

| | | NOTICE OF ATTORNEY APPEARANCE Albert C. Buchman appearing for USA. Attorney Albert C. Buchman added to party USA(pty:pla) (Buchman, Albert) (Entered: 05/19/2022) |
|---|---|---|
| 05/19/2022 | 204 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 201 MOTION for Leave to Restrict *(Response to Motion to Suppress, ECF No. 200)* (Attachments: # 1 Government Filter Memo, # 2 Filter Memo – Attachment 1, # 3 Filter Memo – Attachment 2, # 4 Filter Memo – Attachment 3, # 5 Filter Memo – Attachment 4, # 6 Filter Memo – Attachment 5, # 7 Filter Memo – Attachment 6, # 8 Filter Memo – Attachment 7, # 9 Filter Memo – Attachment 8, # 10 Filter Memo – Attachment 9)(Fields, Bryan) (Attachment 6 replaced on 1/21/2025) (lrobe, ). (Entered: 05/19/2022) |
| 05/20/2022 | 205 | MOTION to Withdraw as Attorney by Andrea Surratt by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Surratt, Andrea) (Entered: 05/20/2022) |
| 05/20/2022 | 206 | MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 05/20/2022) |
| 05/20/2022 | 207 | ORDER granting 206 Motion to Travel as to Jonathan K. Yioulos (3). Mr. Yioulos is permitted to travel as described in the travel plans submitted to the US Attorneys office and the Probation Department. SO ORDERED by Judge Daniel D. Domenico on 5/20/2022. Text Only Entry (dddlc2, ) (Entered: 05/20/2022) |
| 05/20/2022 | 208 | ORDER granting 202 Motion for Extension of Time to File Response/Reply. The government has until and including 6/9/2022 to file a response to the motion to suppress. SO ORDERED by Judge Daniel D. Domenico on 5/20/2022. Text Only Entry (dddlc2, ) (Entered: 05/20/2022) |
| 05/25/2022 | 209 | MOTION to Disclose Grand Jury Material to Defendant by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 05/25/2022) |
| 05/25/2022 | 210 | Unopposed MOTION for Leave to File *Reply to Government's Response to Defendant's Motion to Suppress Evidence* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/25/2022) |
| 06/07/2022 | 211 | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Jonathan K. Yioulos (Attachments: # 1 Exhibit A)(ntaka) (Entered: 06/07/2022) |
| 06/13/2022 | 212 | Unopposed MOTION for Order *Requiring the Government to Submit Expert Witness Opinions 120 Days Before Trial* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 213 | Unopposed MOTION for Leave to File *Additional Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 214 | MOTION for Sanctions *for Violating Communication Privileges* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 215 | MOTION for Franks Hearing by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 216 | MOTION to Suppress *the Use of Statements* by Michael Aaron Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 217 | |

| | | |
|---|---|---|
| | | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant Motions Filed on June 13, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 06/13/2022) |
| 06/13/2022 | 218 | MOTION to Sever Defendant by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 219 | MOTION for James Hearing *and for Government to File a James Proffer* by Michael Aaron Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 220 | MOTION for James Hearing *and for Government to File a James Proffer* by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 221 | MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Bornstein, Peter) (Entered: 06/13/2022) |
| 06/16/2022 | 222 | ORDER GRANTING 205 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Andrea Surratt as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States will continue to be represented by attorney Bryan Fields and Albert Buchman. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, ) (Entered: 06/16/2022) |
| 06/16/2022 | 223 | ORDER GRANTING 210 Motion for Leave to File a Reply. Defendants have 5000 words for a reply to be filed on or before 6/22/2022. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, ) (Entered: 06/16/2022) |
| 06/16/2022 | 224 | ORDER Granting 209 Motion to Disclose Grand Jury Material as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 06/16/2022. (athom, ) (Entered: 06/16/2022) |
| 06/19/2022 | 225 | MOTION to Continue *Sentencing* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 06/19/2022) |
| 06/22/2022 | 226 | REPLY by Michael Aaron Tew, Kimberley Ann Tew *in Support of Motion to Suppress Evidence [Doc.200−Restricted]* (Bornstein, Peter) (Entered: 06/22/2022) |
| 06/29/2022 | 227 | ORDER granting 225 Motion to Continue as to Jonathan K. Yioulos (3). The sentencing hearing set for 7/12/2022 is VACATED AND RESET to 1/19/2023 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 6/29/2022. Text Only Entry (dddlc2, ) (Entered: 06/29/2022) |
| 07/14/2022 | 228 | ORDER granting 217 Motion for Extension of Time to File Response/Reply. The government has until and including 8/9/2022 to file responses to the motions filed on 6/13/2022. SO ORDERED by Judge Daniel D. Domenico on 8/14/2022. Text Only Entry (dddlc2, ) (Entered: 07/14/2022) |
| 08/09/2022 | 229 | NOTICE *of Conventional Filing Exhibit 1−3* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 230 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 218 MOTION to Sever Defendant (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 231 | REPLY TO RESPONSE to Motion by USA as to Michael Aaron Tew, Kimberley Ann Tew re 219 MOTION for James Hearing *and for Government to File a James* |

| | | |
|---|---|---|
| | | *Proffer* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 232 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 220 MOTION for James Hearing *and for Government to File a James Proffer* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 233 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 215 MOTION for Franks Hearing (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 234 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 214 MOTION for Sanctions *for Violating Communication Privileges* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 235 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 216 MOTION to Suppress *the Use of Statements* (Attachments: # 1 Conventionally Submitted, # 2 Conventionally Submitted)(Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 236 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 221 MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* (Attachments: # 1 Conventionally Submitted)(Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 237 | Conventionally Submitted Material : 1 Card USB Flash Drive: Exhibit 1 and Exhibit 2 to Response in Opposition 235 re 229 Notice, by Plaintiff USA. Material placed in the oversized filing area Area D–5–5 of the Clerk's Office. Text Only Entry (athom, ) (submitted additional copy of USB placed in Chambers' mail box) (Entered: 08/11/2022) |
| 08/12/2022 | 238 | ORDER GRANTING IN PART 201 Motion for Leave to File Motion to Suppress Evidence as Restricted Level 1.<br><br>I must narrowly tailor any restrictions on public access, and must consider whether supplying a redacted version of a document in lieu of restricting access to the entire document would adequately protect the interests of the party seeking restriction. *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019); Local Civ. R. 7.2(c)(4). Defendants Michael and Kimberly Tew have not shown that redacting the identified financial, medical, and other personal information from the motion to suppress is impracticable or would not adequately protect the privacy interests at stake.<br><br>Accordingly, the motion for leave to restrict is GRANTED IN PART with respect to the exhibits to the motion only. The Clerk of Court is directed to maintain Doc. 200 and Docs. 200–1 to 200–28 under Level 1 restriction. Plaintiff must file a public redacted version of the motion to suppress (Doc. 200 ) on or before 8/19/2022.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, ) (Entered: 08/12/2022) |
| 08/12/2022 | 239 | ORDER GRANTING IN PART 212 Defendants' Unopposed Motion to Require the Government to Submit Expert Witness Opinions 120 Days Before Trial.<br><br>Expert witness disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and (b)(1)(C) must be made no later than 8/19/2022, and any challenges to such experts must be made no later than 9/9/2022. |

| | | |
|---|---|---|
| | | Rebuttal expert witness disclosures must be made no later than 9/16/2022, and any challenges to such rebuttal experts must be made no later than 10/7/2022.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, ) (Entered: 08/12/2022) |
| 08/15/2022 | 240 | Unopposed MOTION for Leave to File *Replies to Government's Responses to Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 08/15/2022) |
| 08/15/2022 | 241 | ORDER REGARDING PRETRIAL DEADLINES AND PENDING MOTIONS.<br><br>Defendants' Unopposed Motion for Leave to File Additional Motions (Doc. 213 ) is GRANTED. Motions due 9/13/2022. Responses due 9/27/2022. No replies will be permitted without prior leave of the Court.<br><br>Defendants' Unopposed Motion for Leave to File Replies to Government's Responses to Motions (Doc. 240 ) is GRANTED. Replies due 8/23/2022.<br><br>A Motions Hearing is SET for 10/18/2022 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico.<br><br>Due to a conflict on the Court's calendar, the eight–day Jury Trial set for 12/5/2022 is VACATED and RESET to commence on 12/12/2022 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Due to a conflict on the Court's calendar, the Trial Preparation Conference set for 11/29/2022 is VACATED and RESET to 11/22/2022 at 01:30 PM in Courtroom A1002. See written Order for pretrial deadlines.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/15/2022. (dddlc1, ) (Entered: 08/15/2022) |
| 08/18/2022 | 242 | Unopposed MOTION for Order *to Reschedule Hearing Date on Motion* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 08/18/2022) |
| 08/18/2022 | 243 | ORDER GRANTING 242 Unopposed Motion to Reschedule Hearing Date on Motions as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Motions Hearing set for 10/18/2022 is VACATED and RESET to 10/12/2022 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 8/18/2022. Text Only Entry (dddlc1, ) (Entered: 08/18/2022) |
| 08/19/2022 | 244 | RESPONSE by Michael Aaron Tew, Kimberley Ann Tew re: 238 Order on Motion for Leave to Restrict,,,, (Bornstein, Peter) (Entered: 08/19/2022) |
| 08/23/2022 | 245 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 214 MOTION for Sanctions *for Violating Communication Privileges* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 246 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 221 MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 247 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 219 MOTION for James Hearing *and for Government to File a James Proffer*, 220 MOTION for James Hearing *and for Government to File a James Proffer* (Bornstein, |

| | | |
|---|---|---|
| | | Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 248 | REPLY TO RESPONSE to Motion by Kimberley Ann Tew re 218 MOTION to Sever Defendant (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 249 | REPLY TO RESPONSE to Motion by Michael Aaron Tew re 216 MOTION to Suppress *the Use of Statements* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 250 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 215 MOTION for Franks Hearing (Attachments: # 1 Affidavit Declaration of Michael A. Tew, # 2 Affidavit Declaration of Kimberley A. Tew)(Bornstein, Peter) (Entered: 08/23/2022) |
| 09/15/2022 | 251 | Unopposed MOTION to Travel *Out of State* by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 09/15/2022) |
| 09/16/2022 | 252 | ORDER granting 251 Unopposed Motion to Travel as to Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 09/16/2022. Text Only Entry (dddlc5, ) (Entered: 09/16/2022) |
| 10/07/2022 | 253 | EXHIBIT LIST *for Suppression Hearing of October 12, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Exhibit List)(Fields, Bryan) (Entered: 10/07/2022) |
| 10/07/2022 | 254 | WITNESS LIST *for Suppression Hearing of October 12, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Witness List)(Fields, Bryan) (Entered: 10/07/2022) |
| 10/12/2022 | 255 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Suppression Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 10/12/2022. Taking under advisement 214 Motion for Sanctions as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying 215 Motion for Franks Hearing as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Taking under advisement 216 Motion to Suppress as to Michael Aaron Tew (1). Taking under advisement 200 Defendants Motion. Denying 219 Motion for James Hearing as to Michael Aaron Tew (1). Taking under advisement 221 Motion to Suppress as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Taking under advisement 218 Motion to Sever Defendant as to Kimberley Ann Tew (2). Taking under advisement 220 Motion for James Hearing as to Kimberley Ann Tew (2). Bond continued as to both defendants. Court Reporter: Julie Thomas. (rkeec) (Entered: 10/13/2022) |
| 10/12/2022 | 256 | WITNESS LIST by USA as to Michael Aaron Tew (1), Kimberley Ann Tew (2). With date and time testified. (rkeec) (Entered: 10/13/2022) |
| 10/12/2022 | 257 | EXHIBIT LIST by USA as to Michael Aaron Tew (1), Kimberley Ann Tew (2). (rkeec) (Entered: 10/13/2022) |
| 10/27/2022 | 258 | ORDER Denying 221 Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 259 | ORDER as to Michael Aaron Tew. Mr. Tew's Motion to Suppress the Use of Statements (Doc. 216 ) is DENIED. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 260 | |

| | | |
|---|---|---|
| | | ORDER Denying 218 Motion for Severance as to Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 261 | ORDER Denying 214 Motion for Sanctions as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 262 | ORDER Denying 200 Motion to Suppress Evidence as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/28/2022 | 263 | ORDER GRANTING IN PART 220 Defendant Kimberly Ann Tew's Motion for a *James* Proffer and Hearing. Ms. Tew's request for the Government to file a *James* proffer and for the Court to hold a *James* hearing is granted, though not on the timeline requested.<br><br>The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with the referenced exhibits and an accompanying brief, on or before 1/6/2023. The defendants must file their responses to the Government's *James* log and brief on or before 1/20/2023. A *James* Hearing is SET for 1/26/2023 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico.<br><br>In light of the above, the Trial Preparation Conference set for 11/22/2022 is VACATED and RESET for 3/7/2022 at 09:30 AM in Courtroom A1002, and the eight–day Jury Trial set for 12/12/2022 is VACATED and RESET for 3/13/2023 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Pretrial deadlines remain as stated in the Court's Order Regarding Pretrial Deadlines and Pending Motions (Doc. 241 ).<br><br>SO ORDERED by Judge Daniel D. Domenico on 10/28/2022. Text Only Entry (dddlc1, ) (Entered: 10/28/2022) |
| 11/15/2022 | 264 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/15/2022) |
| 11/15/2022 | 265 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/15/2022) |
| 11/15/2022 | 266 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Bornstein, Peter) (Entered: 11/15/2022) |
| 11/16/2022 | 267 | Unopposed MOTION to Travel *Out of State* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/16/2022) |
| 11/17/2022 | 268 | ORDER granting 267 Motion to Travel as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Mr. and Mrs. Tew are granted permission to leave the state of Colorado and travel to Marquette, Michigan with their children from 11/18/2022 until 11/27/2022. SO ORDERED by Judge Daniel D. Domenico on 11/17/2022. Text Only Entry (dddlc5, ) (Entered: 11/17/2022) |
| 11/17/2022 | 269 | ORDER granting 264 Motion for Leave to Restrict 265 Restricted Document – Level 3, 266 Restricted Document – Level 3 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is directed to maintain 265 and 266 UNDER RESTRICTION at LEVEL 3. SO ORDERED by Judge Daniel D. Domenico on |

| | | |
|---|---|---|
| | | 11/17/2022. Text Only Entry (dddlc5, ) (Entered: 11/17/2022) |
| 11/28/2022 | 270 | Unopposed MOTION to Continue *adjourn sentencing* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 11/28/2022) |
| 11/28/2022 | 271 | ORDER granting 270 Motion to Continue as to Jonathan K. Yioulos (3). Mr. Yioulos's Sentencing set for 1/19/2023 at 10:30 a.m. is VACATED and RESET for 3/29/2023 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. All related deadlines are continued. SO ORDERED by Judge Daniel D. Domenico on 11/28/2022. Text Only Entry (dddlc5, ) (Entered: 11/28/2022) |
| 11/29/2022 | 272 | Order Regarding Motion for Subpoenas as to Michael Aaron Tew and Kimberley Ann Tew. (angar, ) Modified on 11/29/2022 to correct restriction level and title (angar, ). (Entered: 11/29/2022) |
| 12/01/2022 | 273 | MOTION to Withdraw as Attorney by Peter R. Bornstein by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/01/2022) |
| 12/01/2022 | 274 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 273 MOTION to Withdraw as Attorney by Peter R. Bornstein. Motion referred to Magistrate Judge Kristen L. Mix, by Judge Daniel D. Domenico on 12/01/2022. Text Only Entry (dddlc5, ) Modified on 12/5/2022 to add text (athom, ). (Entered: 12/01/2022) |
| 12/02/2022 | 275 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/02/2022. IT IS HEREBY ORDERED that the Motion 273 is GRANTED as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Mr. Bornstein is permitted to withdraw as counsel for Defendants. IT IS FURTHER ORDERED that on or before December 16, 2022, Defendants shall have replacement counsel enter an appearance or, if they believe they are entitled to appointment of CJA counsel to represent them, shall each file a financial affidavit under restriction at Level 3. (alave, ) (Entered: 12/05/2022) |
| 12/05/2022 | 276 | MOTION for Reconsideration re 275 Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 12/05/2022) |
| 12/05/2022 | 277 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 276 MOTION for Reconsideration re 275 Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* filed by USA. Motion referred to Magistrate Judge Kristen L. Mix by Judge Daniel D. Domenico on 12/05/2022. Text Only Entry (dddlc5, ) (Entered: 12/05/2022) |
| 12/06/2022 | 278 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/06/2022. IT IS HEREBY ORDERED that a hearing on the Motion 276 is set for December 9, 2022, at 11:00 a.m. Counsel for the parties, including defense counsel Peter Bornstein who was permitted to withdraw by Minute Order 275 of December 2, 2022, shall be present at the hearing. IT IS FURTHER ORDERED that the Clerk of Court shall email a copy of this Minute Order to Mr. Bornstein. (alave, ) (Entered: 12/06/2022) |
| 12/06/2022 | 279 | Certificate of Service by E–Mail by Clerk of Court re 278 Minute Order to counsel Peter Bornstein at pbornstein@prblegal.com. Text Only Entry. (alave, ) (Entered: 12/06/2022) |
| 12/09/2022 | 280 | MINUTE ENTRY for In Court Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 12/9/2022 before Magistrate Judge Kristen L. Mix. The court GRANTS |

| | | |
|---|---|---|
| | | 276 Motion for Reconsideration re 273 MOTION to Withdraw as Attorney. 273 MOTION to Withdraw as Attorney is GRANTED in part and DENIED in part to the extent that Mr. Bornstein is permitted to withdraw as private counsel, but otherwise denied. Defendants are ORDERED to submit financial affidavits on or before 5:00 PM Tuesday, December 13, 2022. Should Defendants qualify for court–appointed counsel, Mr. Bornstein will be appointed as CJA counsel.<br><br>The Clerk of Court is ORDERED to allow Mr. Bornstein to file the financial affidavits on the electronic docket on the Defendants' behalf. Should there be any problem with the filing of the financial affidavits, Mr. Bornstein SHALL email them to Mix_Chambers@cod.uscourts.gov.(Total time: 23 minutes, Hearing time: 11:00–11:23)<br><br>**APPEARANCES**: Bryan Fields, Albert Buchman on behalf of the Government, Peter Bornstein on behalf of the defendant. FTR: A–401. (cpomm, ) Text Only Entry (Entered: 12/09/2022) |
| 12/13/2022 | 281 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/13/2022) |
| 12/13/2022 | 282 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/13/2022) |
| 12/14/2022 | 283 | ORDER granting 281 Motion for Leave to Restrict 282 Restricted Document as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is instructed to maintain 282 at LEVEL THREE RESTRICTION. SO ORDERED by Judge Daniel D. Domenico on 12/14/2022. Text Only Entry (dddlc5, ) (Entered: 12/14/2022) |
| 12/27/2022 | 284 | MOTION to Vacate *Deadlines and for Status Conference* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 12/27/2022) |
| 12/27/2022 | 285 | TRANSCRIPT of MOTIONS HEARING as to Michael Aaron Tew, Kimberley Ann Tew held on 10/12/22 before Judge Domenico. Pages: 1–234.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Thomas, Julie) (Entered: 12/27/2022) |
| 12/27/2022 | 286 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/27/2022. IT IS HEREBY ORDERED that attorney Peter Bornstein is appointed as CJA counsel for Defendants Michael A. Tew and Kimberly A. Tew. (alave, ) (Entered: 12/27/2022) |
| 12/28/2022 | 287 | ORDER DENYING 284 Government's Motion to Vacate Current Deadlines and for Status Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2).<br><br>Attorney Peter Bornstein represented the defendants as retained counsel for a period |

| | | |
|---|---|---|
| | | of over nine months from February to December 2022 (*see* Docs. 178 , 273 , 275 , 280), and he now continues to represent the defendants as appointed CJA counsel (Doc. 286 ). The Government has repeatedly stated its concern that further delays may prejudice its case and the public (Doc. 284 at 3; Doc. 276 at 2, 3, 5, 8), and has also acknowledged that Mr. Bornstein "is surely in the best position to advance this case without any more delay" (Doc. 276 at 2). Having now been appointed as CJA counsel, Mr. Bornstein has over a week to review the Government's *James* submission prior to its filing on 1/6/2023.<br><br>The Government's request to vacate the deadlines related to its *James* proffer and log is therefore denied.<br><br>SO ORDERED by Judge Daniel D. Domenico on 12/28/2022. Text Only Entry (dddlc1, ) (Entered: 12/28/2022) |
| 12/28/2022 | 288 | MOTION for Order *Appointing Separate Counsel* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/28/2022) |
| 12/29/2022 | 289 | ORDER GRANTING 288 Motion for Appointment of Separate Counsel as to Michael Aaron Tew (1), Kimberley Ann Tew (2).<br><br>Attorney Peter R. Bornstein is relieved of any further representation of Defendant Kimberley Ann Tew, and the Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record for Ms. Tew. An attorney from the Criminal Justice Act panel will be appointed to represent Ms. Tew. Defendant Michael Aaron Tew will continue to be represented by Mr. Bornstein as appointed CJA counsel.<br><br>In light of the above, the deadlines for the Goverment's *James* proffer and log and the defendants' response thereto, and the *James* Hearing set for 1/26/2023 are CONTINUED pending further order of the Court.<br><br>Within one week of entry of appearance of new counsel for Ms. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; (2) mutually agreeable proposed deadlines for further *James* proceedings; and (3) any other issues the parties wish to bring to the Court's attention.<br><br>SO ORDERED by Judge Daniel D. Domenico on 12/29/2022. Text Only Entry (dddlc1, ) (Entered: 12/29/2022) |
| 01/03/2023 | 290 | NOTICE OF ATTORNEY APPEARANCE: David Scott Kaplan appearing for Kimberley Ann TewAttorney David Scott Kaplan added to party Kimberley Ann Tew(pty:dft) (Kaplan, David) (Main Document 290 replaced on 1/21/2025) (lrobe, ). (Entered: 01/03/2023) |
| 01/05/2023 | 291 | MOTION to Unrestrict Document 2 Warrant Issued, 1 Complaint, by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 01/05/2023) |
| 01/06/2023 | 292 | ORDER granting 291 Motion to Unrestrict 291 . The Clerk of Court is directed to unrestrict Documents 1 , 2 , 5 , and 6 as to Michael Aaron Tew (1), Kimberley Ann Tew (2), Jonathan K. Yioulos (3). SO ORDERED by Judge Daniel D. Domenico on 01/06/2023. Text Only Entry (dddlc5, ) (Entered: 01/06/2023) |

| 01/10/2023 | 293 | STATUS REPORT *(Joint Status Report of Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 01/10/2023) |
|---|---|---|
| 01/11/2023 | 294 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 293 Status Report filed by USA. By 1/17/2023, Mr. Bornstein and Mr. Kaplan must each submit an ex parte filing describing their positions regarding any conflict of interest that might prevent Mr. Bornstein from continuing to represent Mr. Tew and whether a hearing is necessary to evaluate and resolve this issue. SO ORDERED by Judge Daniel D. Domenico on 01/11/2023. Text Only Entry (dddlc5, ) (Entered: 01/11/2023) |
| 01/13/2023 | 295 | NOTICE OF ATTORNEY APPEARANCE: Nancy Lin Cohen appearing for Movants Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc.Attorney Nancy Lin Cohen added to party Christopher J. Alf(pty:mov), Attorney Nancy Lin Cohen added to party National Air Cargo Group, Inc. (pty:mov), Attorney Nancy Lin Cohen added to party National Air Cargo Holdings, Inc.(pty:mov) (athom, ) (Entered: 01/13/2023) |
| 01/13/2023 | 296 | NOTICE OF ATTORNEY APPEARANCE: Eric S. Galler appearing for Movants Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc.Attorney Eric S. Galler added to party Christopher J. Alf(pty:mov), Attorney Eric S. Galler added to party National Air Cargo Group, Inc. (pty:mov), Attorney Eric S. Galler added to party National Air Cargo Holdings, Inc.(pty:mov) (athom, ) (Entered: 01/13/2023) |
| 01/13/2023 | 297 | MOTION to Quash Subpoenas by Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc. as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 01/13/2023) |
| 01/17/2023 | 298 | NOTICE OF ATTORNEY APPEARANCE: Peter R. Bornstein appearing for Michael Aaron Tew (Bornstein, Peter) (Entered: 01/17/2023) |
| 01/17/2023 | 299 | MOTION for Leave to Restrict by Michael Aaron Tew. (Bornstein, Peter) (Entered: 01/17/2023) |
| 01/17/2023 | 300 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Bornstein, Peter) (Entered: 01/17/2023) |
| 01/17/2023 | 301 | RESTRICTED DOCUMENT – Level 3: by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/17/2023) |
| 01/26/2023 | 302 | ORDER granting 299 Motion for Leave to Restrict as to Michael Aaron Tew (1). The Clerk of Court is directed to maintain 300 at a LEVEL THREE RESTRICTION. SO ORDERED by Judge Daniel D. Domenico on 1/26/2023. Text Only Entry (dddlc5, ) (Entered: 01/26/2023) |
| 01/29/2023 | 303 | Unopposed MOTION to Modify Conditions of Release by Jonathan K. Yioulos as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Tallon, Michael) (Entered: 01/29/2023) |
| 01/30/2023 | 304 | ORDER GRANTING 303 Unopposed Motion to Modify Conditions of Release as to Jonathan K. Yioulos (3). Mr. Yioulos may travel to Sarasota, Florida, to visit family from 2/16/23 to 2/24/23. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact his probation officer as directed during the time of approved travel, and (3) promptly contact his probation officer upon return from his trip. SO ORDERED by |

| | | |
|---|---|---|
| | | Judge Daniel D. Domenico on 01/30/2023. Text Only Entry (dddlc5, ) (Entered: 01/30/2023) |
| 01/30/2023 | 305 | ORDER WITHDRAWING COUNSEL as to Michael Aaron Tew. Peter R. Bornstein is WITHDRAWN as counsel to Defendant Michael Aaron Tew and relieved of all further representation. The Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record, and to remove his name from the electronic certificate of mailing. An attorney from the Criminal Justice Act panel will be appointed to represent Defendant Michael Tew. Within one week of entry of appearance of new counsel for Mr. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; and (2) any other issues the parties wish to bring to the Court's attention. On or before 3/13/2023, the parties must file a Joint Status Report with mutually agreeable proposed deadlines for further *James* proceedings. By Judge Daniel D. Domenico on 01/30/2023. (athom, ) (Entered: 01/30/2023) |
| 01/30/2023 | 306 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos.The Motion of Third–Party Victims to Quash Subpoenas (Doc. 297 ) is GRANTED.The defendants' third–party subpoenas dated 12/1/2022 are QUASHED. The defendants may, if they wish, file a renewed motion for leave to serve third–party subpoenas that fully complies with Federal Rule of Criminal Procedure 17. By Judge Daniel D. Domenico on 01/30/2023. (athom, ) (Entered: 01/30/2023) |
| 01/30/2023 | 307 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 303 Unopposed MOTION to Modify Conditions of Release filed by attorney Michael John Tallon. The format for the attorney's signature block information is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 01/30/2023) |
| 01/31/2023 | 308 | NOTICE OF ATTORNEY APPEARANCE: Jason Dale Schall appearing for Michael Aaron TewAttorney Jason Dale Schall added to party Michael Aaron Tew(pty:dft) (Schall, Jason) (Entered: 01/31/2023) |
| 02/03/2023 | 309 | Unopposed MOTION to Continue *Trial* by Michael Aaron Tew. (Schall, Jason) (Entered: 02/03/2023) |
| 02/03/2023 | 310 | ORDER re 309 Motion to Continue as to Michael Aaron Tew. The Court currently does not have enough information to determine whether the ends–of–justice served by the length of delay requested by the Defendant outweighs the best interests of the defendant and public in a speedy trial. In light of the appointment of Mr. Tew's new counsel and the suspension of the present time from the Speedy Trial Act given the James proceeding is not yet under advisement, the eight–day jury trial set for 3/13/23 and Trial Preparation Conference set for 3/7/2023 are VACATED. The Motion to Continue 309 is denied without prejudice. If Defendant wishes to file a renewed Motion to Continue, he should do so concurrent with the status report due 3/13/2023. SO ORDERED by Judge Daniel D. Domenico on 02/03/2023. Text Only Entry (dddlc5, ) (Entered: 02/03/2023) |
| 02/07/2023 | 311 | |

|  |  | STATUS REPORT *(Joint Status Report of Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 02/07/2023) |
|---|---|---|
| 02/17/2023 | 312 | Unopposed MOTION to Modify Conditions of Release by Michael Aaron Tew. (Schall, Jason) (Entered: 02/17/2023) |
| 02/17/2023 | 313 | ORDER granting 312 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Condition 7(x)(w) is stricken from Defendant's Conditions of Release. Defendant's supervising officer shall notify the Court if any issues arise from the removal of this restriction. SO ORDERED by Judge Daniel D. Domenico on 2/17/2023. Text Only Entry (dddlc5, ) (Entered: 02/17/2023) |
| 03/13/2023 | 314 | STATUS REPORT *re James Hearing (Joint Status Report of all Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 03/13/2023) |
| 03/13/2023 | 315 | Unopposed MOTION for Order *for an Ends of Justice (EOJ) Continuance Pursuant to 18 U.S.C. 3161(h)(7)* by Kimberley Ann Tew. (Kaplan, David) (Entered: 03/13/2023) |
| 03/13/2023 | 316 | Unopposed MOTION to Continue *Trial* by Michael Aaron Tew. (Schall, Jason) (Entered: 03/13/2023) |
| 03/17/2023 | 317 | ORDER as to Kimberley Ann Tew. Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 315 ) is GRANTED. Three hundred and twenty–nine (329) days, from 3/17/2023 to 2/9/2024, will be excluded from the computation of Defendant Kimberley Tew's Speedy Trial Act time. Motions due by 9/13/2023. Responses due by 9/20/2023. The eight–day Jury Trial is RESET to 2/5/2024 at 9:00 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference RESET to 1/30/2024 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 03/17/2023. (athom, ) (Entered: 03/17/2023) |
| 03/17/2023 | 318 | ORDER as to Michael Aaron Tew. Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 316 ) is GRANTED. Three hundred and twenty–nine (329) days, from 3/17/2023 to 2/9/2024, will be excluded from the computation of Defendant Michael Tew's Speedy Trial Act time. Motions due by 9/13/2023. Responses due by 9/20/2023. The eight–day Jury Trial is RESET to 2/5/2024 at 9:00 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference is RESET to 1/30/2024 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 03/17/2023. (athom, ) (Entered: 03/17/2023) |
| 03/20/2023 | 319 | RESTRICTED PRESENTENCE REPORT as to Jonathan K. Yioulos (Attachments: # 1 Exhibit A)(lgiac) (Entered: 03/20/2023) |
| 03/20/2023 | 320 | RESTRICTED ADDENDUM to Presentence Report 319 as to Jonathan K. Yioulos (lgiac) (Entered: 03/20/2023) |
| 03/22/2023 | 321 | Unopposed MOTION to Continue *adjourn sentencing and apply for,passport* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/22/2023) |
| 03/23/2023 | 322 | ORDER granting 321 Motion to Continue as to Jonathan K. Yioulos (3). The sentencing set for 3/29/2023 is VACATED and RESET for 3/5/2024 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. |

| | | |
|---|---|---|
| | | Mr. Yioulos's motion to apply for a passport 321 is GRANTED. If a passport is issued to Mr. Yioulos, his counsel must maintain control of it until specific permission to travel is granted. Mr. Yioulos must separately request permission to travel.<br><br>SO ORDERED by Judge Daniel D. Domenico on 3/23/2023. Text Only Entry (dddlc5, ) (Entered: 03/23/2023) |
| 03/24/2023 | 323 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 321 Unopposed MOTION to Continue *adjourn sentencing and apply for,passport* filed by attorney Michael John Tallon. The format for the attorney's signature block information is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 03/24/2023) |
| 03/27/2023 | 324 | Unopposed MOTION to Modify Conditions of Release *for family travel to Florida on March 30th* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/27/2023) |
| 03/27/2023 | 325 | ORDER granting 324 Motion to Modify Conditions of Release as to Jonathan K. Yioulos (3). Mr. Yioulos may travel to Sarasota, Florida, to visit family from 3/30/23 to 4/6/23. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact his probation officer as directed during the time of approved travel, and (3) promptly contact his probation officer upon return from his trip. SO by Judge Daniel D. Domenico on 3/27/2023. (dddlc5, ) (Entered: 03/27/2023) |
| 03/28/2023 | 326 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES re: 324 Unopposed Motion to Modify Conditions of Release filed by attorney **Michael John Tallon**. The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (jtorr, ) (Entered: 03/28/2023) |
| 05/01/2023 | 327 | Unopposed MOTION to Modify Conditions of Release by Michael Aaron Tew. (Schall, Jason) (Entered: 05/01/2023) |
| 05/01/2023 | 328 | ORDER granting 327 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Condition 7(q) of Mr. Tew's pre–trial release is removed. In lieu of 7(q) Mr. Tew must report to U.S. Pre–trial Services/U.S. Probation by no later than 12:00 p.m. MST every Monday. SO ORDERED by Judge Daniel D. Domenico on 5/1/2023. Text Only Entry (dddlc5, ) (Entered: 05/01/2023) |
| 06/07/2023 | 329 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 06/07/2023) |
| 06/07/2023 | 330 | ORDER granting 329 Motion to Travel as to Michael Aaron Tew (1). Mr. Tew may travel between on or around June 17, 2023 and June 22, 2023 to the States of Wisconsin and Michigan. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, (2) |

| | | contact his probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 6/7/2023. Text Only Entry (dddlc5, ) (Entered: 06/07/2023) |
|---|---|---|
| 06/16/2023 | 331 | Unopposed MOTION to Travel *Out of State* by Kimberley Ann Tew. (Kaplan, David) (Entered: 06/16/2023) |
| 06/16/2023 | 332 | ORDER granting 331 Motion to Travel as to Kimberley Ann Tew (2). Ms. Tew may travel between on or around June 17, 2023 and June 22, 2023 to the States of Wisconsin and Michigan. She must (1) provide documentation regarding her travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact her probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 6/16/2023. Text Only Entry (dddlc5, ) (Entered: 06/16/2023) |
| 07/07/2023 | 333 | NOTICE OF ATTORNEY APPEARANCE: Richard Kent Kornfeld appearing for Jonathan K. YioulosAttorney Richard Kent Kornfeld added to party Jonathan K. Yioulos(pty:dft) (Kornfeld, Richard) (Entered: 07/07/2023) |
| 07/07/2023 | 334 | MOTION to Withdraw as Attorney by Michael J. Tallon by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 07/07/2023) |
| 07/20/2023 | 335 | ORDER granting 334 Motion to Withdraw as Attorney. The Clerk of Court is directed to terminate Attorney Michael John Tallon as counsel of record for Jonathan K. Yioulos (3). Mr. Yioulos will continue to be represented by Richard K. Kornfeld. SO ORDERED by Judge Daniel D. Domenico on 7/20/2023. Text Only Entry (dddlc5, ) (Entered: 07/20/2023) |
| 09/12/2023 | 336 | Unopposed MOTION for Extension of Time to File *Pre−Trial Motions* by Kimberley Ann Tew. (Kaplan, David) (Entered: 09/12/2023) |
| 09/12/2023 | 337 | Unopposed MOTION for Extension of Time to File by Michael Aaron Tew. (Schall, Jason) (Entered: 09/12/2023) |
| 09/13/2023 | 338 | ORDER GRANTING 337 Motion for Extension of Time to File as to Michael Aaron Tew; and GRANTING 336 Motion for Extension of Time to File as to Kimberley Ann Tew. The motions deadline as to Mr. Tew and Ms. Tew is extended to October 13, 2023. The government must file responses on or before October 20, 2023. SO ORDERED by Judge Daniel D. Domenico on 9/13/2023. Text Only Entry (dddlc3, ) (Entered: 09/13/2023) |
| 10/13/2023 | 339 | STATUS REPORT *(Joint Status Report)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 10/13/2023) |
| 10/26/2023 | 340 | ORDER SETTING *JAMES* HEARING as to Michael Aaron Tew, Kimberley Ann Tew. The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with an accompanying brief, on or before December 5, 2023. |

| | | |
|---|---|---|
| | | The defendants must file their responses to the Government's *James* log and brief on or before December 12, 2023. A *James* Hearing is SET for December 19, 2023 at 9:30 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 10/26/2023. Text Only Entry (dddlc3, ) (Entered: 10/26/2023) |
| 12/05/2023 | 341 | Government's Proffer *(Memorandum in Support of James Log)* re: 340 Order,, by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit 1 – James Log, # 2 Exhibit 1001 – Bank Accounts, # 3 Exhibit 1002 – Scheme Invoice Summary, # 4 Exhibit 1003 – Scheme Deposit Summary, # 5 Exhibit 1004 – HSCPA, MCG & 5530JD Summary, # 6 Exhibit 1005 – PM Summary, # 7 Exhibit 1006 – GFL Summary, # 8 Exhibit 1007 – AMR Summary)(Fields, Bryan) (Entered: 12/05/2023) |
| 12/12/2023 | 342 | MOTION to Withdraw as Attorney by Albert Buchman by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Buchman, Albert) (Entered: 12/12/2023) |
| 12/12/2023 | 343 | ORDER GRANTING 342 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Albert Buchman as counsel of record, and to remove this name from the electronic certificate of mailing. The government will continue to be represented by attorney Bryan Fields. SO ORDERED by Judge Daniel D. Domenico on 12/12/2023. Text Only Entry (dddlc3, ) (Entered: 12/12/2023) |
| 12/12/2023 | 344 | MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit List of Authentic Business Records)(Fields, Bryan) (Entered: 12/12/2023) |
| 12/12/2023 | 345 | RESPONSE by Michael Aaron Tew re: 341 Govt's Proffer, filed by USA (Schall, Jason) (Entered: 12/12/2023) |
| 12/12/2023 | 346 | RESPONSE by Kimberley Ann Tew re: 341 Govt's Proffer, filed by USA (Attachments: # 1 Exhibit 1)(Kaplan, David) (Entered: 12/12/2023) |
| 12/13/2023 | 347 | RESTRICTED DOCUMENT – Level 3: by Kimberley Ann Tew. (Kaplan, David) (Entered: 12/13/2023) |
| 12/18/2023 | 348 | MOTION in Limine *regarding post–trial release* by Michael Aaron Tew. (Schall, Jason) (Entered: 12/18/2023) |
| 12/18/2023 | 349 | ORDER as to Kimberley Ann Tew. Jamie Hubbard of Stimson LaBranche Hubbard, LLC is to be appointed as co–counsel for Kimberley Ann Tew's trial pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et. seq. SO ORDERED by Judge Daniel D. Domenico on 12/18/2023. Text Only Entry (dddlc3, ) (Entered: 12/18/2023) |
| 12/18/2023 | 350 | EXHIBIT LIST *JAMES HEARING* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 12/18/2023) |
| 12/18/2023 | 351 | WITNESS LIST *JAMES HEARING* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 12/18/2023) |
| 12/19/2023 | 352 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 12/19/2023) |
| 12/19/2023 | 353 | |

| | | |
|---|---|---|
| | | NOTICE OF ATTORNEY APPEARANCE Sarah Hunter Weiss appearing for USA. Attorney Sarah Hunter Weiss added to party USA(pty:pla) (Weiss, Sarah) (Entered: 12/19/2023) |
| 12/19/2023 | 355 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: James Hearing as to Michael Aaron Tew (1), Kimberley Ann Tew (2) held on 12/19/2023 re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* filed by USA, 348 MOTION in Limine *regarding post–trial release* filed by Michael Aaron Tew. Deferring ruling on 344 Motion in Limine as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Deferring ruling on 348 Motion in Limine as to Michael Aaron Tew (1). James Proffer is TAKEN UNDER ADVISEMENT. Defendants shall file responses to 344 Governments Motion in Limine for Ruling that Certain Exhibits are Authentic and Covered by Business–Records Exception to the Hearsay Rule not later than Friday, December 22, 2023. Bond is CONTINUED as to Defendants Michael Aaron Tew and Kimberley Ann Tew. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 12/20/2023) |
| 12/19/2023 | 356 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew for James Hearing held on 12/19/2023 with Clerk's notations as to date and time testified. (rkeec) (Entered: 12/20/2023) |
| 12/19/2023 | 357 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew for 12/19/2023 James Hearing with Clerk's notations as to exhibits identified by the witness. (rkeec) (Entered: 12/20/2023) |
| 12/20/2023 | 354 | NOTICE OF ATTORNEY APPEARANCE: Jamie Hughes Hubbard appearing for Kimberley Ann TewAttorney Jamie Hughes Hubbard added to party Kimberley Ann Tew(pty:dft) (Hubbard, Jamie) (Entered: 12/20/2023) |
| 12/20/2023 | 358 | ORDER GRANTING 352 Motion to Travel as to Michael Aaron Tew. Michael and Kimberley Tew may travel out of state from on or about December 22 through January 3 as requested so long as Mr. Tew provides completed travel itineraries to the Probation Department once those travel plans are finalized. SO ORDERED by Judge Daniel D. Domenico on 12/20/2023. Text Only Entry (dddlc3, ) (Entered: 12/20/2023) |
| 12/22/2023 | 359 | RESPONSE in Opposition by Michael Aaron Tew re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* (Schall, Jason) (Entered: 12/22/2023) |
| 12/22/2023 | 360 | RESPONSE to Motion by Kimberley Ann Tew re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* (Kaplan, David) (Entered: 12/22/2023) |
| 12/29/2023 | 361 | ORDER REGARDING ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS as to Michael Aaron Tew (1), Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 12/29/23. (rkeec) (Entered: 12/29/2023) |
| 01/08/2024 | 362 | NOTICE OF ATTORNEY APPEARANCE: Lisa Marie Saccomano appearing for Movant Atlantic Union Bank. (cmadr, ) (Entered: 01/09/2024) |
| 01/09/2024 | 363 | MOTION to Quash *Subpoena* by Atlantic Union Bank as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Saccomano, Lisa) (Entered: 01/09/2024) |
| 01/17/2024 | 364 | |

| | | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Schall, Jason) (Entered: 01/17/2024) |
|---|---|---|
| 01/18/2024 | 365 | ORDER as to Michael Aaron Tew. An attorney selected from the District's Criminal Justice Act Panel is to be appointed as co−counsel for Michael Aaron Tew's trial pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et seq. SO ORDERED by Judge Daniel D. Domenico on 1/18/2024. Text Only Entry (dddlc3, ) (Entered: 01/18/2024) |
| 01/18/2024 | 366 | RESPONSE to Motion by USA as to Michael Aaron Tew, Kimberley Ann Tew re 363 MOTION to Quash *Subpoena* (Weiss, Sarah) (Entered: 01/18/2024) |
| 01/19/2024 | 367 | ORDER granting in part and denying in part as outlined in the order 344 Motion in Limine as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying as moot 363 Motion to Quash as to Michael Aaron Tew (1), Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 1/19/2024. (rkeec) (Entered: 01/19/2024) |
| 01/19/2024 | 368 | NOTICE OF ATTORNEY APPEARANCE: Kristen M. Frost appearing for Michael Aaron TewAttorney Kristen M. Frost added to party Michael Aaron Tew(pty:dft) (Frost, Kristen) (Entered: 01/19/2024) |
| 01/22/2024 | 369 | Unopposed MOTION for Order *to Produce Trial Exhibits via Electronic Means* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 01/22/2024) |
| 01/23/2024 | 370 | MOTION in Limine *regarding proffer agreements* by Michael Aaron Tew. (Attachments: # 1 Exhibit Defendant's Exhibits A and B)(Schall, Jason) (Entered: 01/23/2024) |
| 01/24/2024 | 371 | CLERK'S NOTE: ORIGINAL GOVERNMENT EXHIBITS for the 355 MINUTE ENTRY for James Hearing as to Michael Aaron Tew, Kimberley Ann Tew were returned to the Government on January 24, 2024. Text only entry. (rkeec) (Entered: 01/24/2024) |
| 01/24/2024 | 372 | ORDER as to Michael Aaron Tew re 370 Motion in limine regarding proffer statements. The government must file a response to Mr. Tew's motion at or before 5:00 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/24/2024. Text Only Entry (dddlc3, ) (Entered: 01/24/2024) |
| 01/24/2024 | 373 | MOTION in Limine *re Admissibility of Proffer Statements* by Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 374 | MOTION to Continue *Trial and Motion for Ends of Justice Continuance of 90 Days* by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 375 | Proposed Verdict Form as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Document Parties' Proposed Verdict Form)(Weiss, Sarah) (Entered: 01/24/2024) |
| 01/24/2024 | 376 | TRIAL BRIEF by Kimberley Ann Tew (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 377 | TRIAL BRIEF by Michael Aaron Tew (Schall, Jason) (Entered: 01/24/2024) |
| 01/24/2024 | 378 | NOTICE *of Certifications of Authentic, Non−Hearsay Business Records* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit, # 2 |

| | | Exhibit)(Weiss, Sarah) (Entered: 01/24/2024) |
|---|---|---|
| 01/24/2024 | 379 | TRIAL BRIEF by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/24/2024) |
| 01/25/2024 | 380 | Proposed Jury Instructions *(Joint)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/25/2024) |
| 01/25/2024 | 381 | ORDER re Kimberley Tew's 373 Motion in Limine and 374 Motion to Continue Trial. The government must provide responses to these two motions at or before 11:59 pm on Friday, January 26, 2024. The government's response deadline for Mr. Tew's 370 Motion in Limine is also extended to 11:59 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, ) (Entered: 01/25/2024) |
| 01/25/2024 | 382 | ORDER GRANTING 369 Unopposed Motion to Produce Trial Exhibits Via Electronic Means. The government must provide one original paper set of its proposed exhibits for use at the upcoming trial. The government must provide electronic copies of those exhibits to defense counsel on or before January 26, 2024.<br><br>The government must also provide **three electronic copies (e.g., via three thumb drives)** of its proposed exhibits to the court on or before January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, ) (Entered: 01/25/2024) |
| 01/25/2024 | 383 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Attachments: # 1 Exhibit List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 384 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Attachments: # 1 Witness List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 385 | NOTICE *regarding proposed witness and exhibit lists* by Michael Aaron Tew (Schall, Jason) (Entered: 01/25/2024) |
| 01/25/2024 | 386 | EXHIBIT LIST *(Amended)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Amended Exhibit List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 387 | EXHIBIT LIST by Kimberley Ann Tew (Attachments: # 1 Proposed Document Proposed Exhibit List)(Hubbard, Jamie) (Entered: 01/25/2024) |
| 01/25/2024 | 388 | WITNESS LIST by Kimberley Ann Tew (Attachments: # 1 Proposed Document Proposed Witness List)(Hubbard, Jamie) (Entered: 01/25/2024) |
| 01/26/2024 | 389 | Proposed Voir Dire by Kimberley Ann Tew (Hubbard, Jamie) (Entered: 01/26/2024) |
| 01/26/2024 | 390 | Proposed Voir Dire by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/26/2024) |
| 01/26/2024 | 391 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 374 MOTION to Continue *Trial and Motion for Ends of Justice Continuance of 90 Days* (Fields, Bryan) (Entered: 01/26/2024) |
| 01/26/2024 | 392 | Proposed Voir Dire by Michael Aaron Tew (Schall, Jason) (Entered: 01/26/2024) |
| 01/26/2024 | 393 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 373 MOTION in Limine *re Admissibility of Proffer Statements and* 370 *Defendant Michael Tew's Motion in Limine* (Weiss, Sarah) (Entered: 01/26/2024) |

| 01/27/2024 | 394 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Weiss, Sarah) (Entered: 01/27/2024) |
|---|---|---|
| 01/27/2024 | 395 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew. (Weiss, Sarah) (Entered: 01/27/2024) |
| 01/27/2024 | 396 | MOTION for Leave to Restrict by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Weiss, Sarah) (Entered: 01/27/2024) |
| 01/29/2024 | 397 | MOTION for Leave to File *Reply in Support of Motion in Limine* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 01/29/2024) |
| 01/29/2024 | 398 | BRIEF in Support by Kimberley Ann Tew to 373 MOTION in Limine *re Admissibility of Proffer Statements (Reply)* (Hubbard, Jamie) (Entered: 01/29/2024) |
| 01/29/2024 | 399 | MOTION to Exclude *Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/29/2024) |
| 01/29/2024 | 400 | BAIL STATUS REPORT 10 as to Michael Aaron Tew. (lgiac) (Entered: 01/29/2024) |
| 01/29/2024 | 401 | BAIL STATUS REPORT 107 as to Kimberley Ann Tew. (lgiac) (Entered: 01/29/2024) |
| 01/30/2024 | 403 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Trial Preparation Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2) held on 1/30/2024. Taking under advisement 374 Defendant Kimberly Ann Tews Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days. Taking under advisement 370 Motion in Limine as to Michael Aaron Tew (1). Taking under advisement 373 Motion in Limine as to Kimberley Ann Tew (2). Taking under advisement 399 Motion to Exclude as to Kimberley Ann Tew (2); re 370 MOTION in Limine *regarding proffer agreements* filed by Michael Aaron Tew, 373 MOTION in Limine *re Admissibility of Proffer Statements* filed by Kimberley Ann Tew, 399 MOTION to Exclude *Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* filed by Kimberley Ann Tew. Bond is CONTINUED as to Defendants Michael Aaron Tew and Kimberly Ann Tew. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 01/31/2024) |
| 01/31/2024 | 402 | ORDER Denying 374 Motion to Continue as to Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 31 January 2024. The trial will proceed on February 5, 2024, as scheduled. (cmadr, ) Modified to correct entry on 1/31/2024 (cmadr, ). (Entered: 01/31/2024) |
| 02/01/2024 | 404 | ORDER REGARDING MOTIONS IN LIMINE AND PRE–TRIAL ISSUES as to Michael Aaron Tew (1) and Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 1 February 2024. Defendants' motions, Docs. 370 and 373 , are GRANTED IN PART and DENIED IN PART as outlined herein. Ms. Tew's motion, Doc. 399 , is therefore DENIED. (cmadr, ) (Entered: 02/01/2024) |
| 02/02/2024 | 405 | Unopposed MOTION for Order *To Obtain Testimony Via Live Contemporaneous Video Conference* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 02/02/2024) |

| 02/02/2024 | 406 | Order GRANTING 405 Unopposed Motion to Obtain Testimony Via Live Contemporaneous Video Conference. The government is cautioned, however, that it bears the risk of any technology malfunctions, whether on the Court's end or the witness's end. SO ORDERED by Judge Daniel D. Domenico on 2/2/2024. Text Only Entry (dddlc3, ) (Entered: 02/02/2024) |
|---|---|---|
| 02/02/2024 | 407 | WITNESS LIST *(Final Witness List)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Final Witness List)(Fields, Bryan) (Entered: 02/02/2024) |
| 02/02/2024 | 408 | EXHIBIT LIST *Final Exhibit List* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit)(Weiss, Sarah) (Entered: 02/02/2024) |
| 02/04/2024 | 409 | MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 02/04/2024) |
| 02/04/2024 | 410 | MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, by Michael Aaron Tew. (Schall, Jason) (Entered: 02/04/2024) |
| 02/04/2024 | 411 | NOTICE *of Submission of Alternative Version of Charges for Juror Notebooks* by Kimberley Ann Tew (Attachments: # 1 Attachment)(Hubbard, Jamie) (Entered: 02/04/2024) |
| 02/04/2024 | 412 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 409 MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing*, 410 MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, (Fields, Bryan) (Entered: 02/04/2024) |
| 02/05/2024 | 413 | EXHIBIT LIST by Kimberley Ann Tew (Hubbard, Jamie) (Entered: 02/05/2024) |
| 02/05/2024 | 414 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 1) held on 2/5/2024 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying 410 Motion for Reconsideration re 410 MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, filed by Michael Aaron Tew, 409 MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* filed by Kimberley Ann Tew as to Michael Aaron Tew (1). Denying 409 Motion for Order as to Kimberley Ann Tew (2). Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 415 | Jury Strike Sheet – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 416 | Jury Strike Sheet with juror names redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 417 | Jury Random List – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/06/2024) |
| 02/06/2024 | 418 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 2) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/6/2024. Defendant Kimberley Ann Tews oral motion for severance is TAKEN UNDER ADVISEMENT. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/07/2024) |

| 02/07/2024 | 419 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 3) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/7/2024. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/08/2024) |
| 02/08/2024 | 420 | Renewed MOTION to Sever Defendant by Michael Aaron Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Frost, Kristen) (Entered: 02/08/2024) |
| 02/08/2024 | 421 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 4) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/8/2024. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/09/2024) |
| 02/09/2024 | 423 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 5) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/9/2024. Defendant Kimberley Ann Tews oral motion for mistrial is DENIED. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/12/2024) |
| 02/11/2024 | 422 | RESPONSE in Opposition by USA as to Michael Aaron Tew re 420 Renewed MOTION to Sever Defendant (Weiss, Sarah) (Entered: 02/11/2024) |
| 02/12/2024 | 424 | ORDER DENYING 420 Michael Tew's Renewed Motion for Severance. By Judge Daniel D. Domenico on 2/12/2024. (dddlc1, ) (Entered: 02/12/2024) |
| 02/12/2024 | 425 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 6) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/12/2024. 420 Defendant Michael Tews Renewed Motion for Severance is DENIED. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/13/2024) |
| 02/13/2024 | 426 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew. The Clerk of Court shall provide lunch to the jury for the duration of their deliberations commencing on Wednesday, February 14, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/13/2024. (rkeec) (Entered: 02/13/2024) |
| 02/13/2024 | 427 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 7) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/13/2024. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/14/2024) |
| 02/14/2024 | 428 | AMENDED MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew. The Clerk of Court shall provide lunch to the jury, including the alternate juror, for the duration of their deliberations commencing on Wednesday, February 14, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/14/2024. (rkeec) (Entered: 02/14/2024) |
| 02/14/2024 | 430 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 8) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/14/2024. Defendant Kimberley Ann Tews oral motion for mistrial is DENIED. Defendant Kimberley Ann Tews oral Rule 29 motion is DENIED. Defendant Kimberley Ann Tews oral motion for severance is DENIED. Defendant Michael Aaron Tews oral Rule 29 motion is DENIED. Defendant Michael Aaron Tews oral motion for severance is DENIED. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 431 | |

| | | Jury Note with juror name – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/15/2024) |
|---|---|---|
| 02/14/2024 | 432 | Jury Note with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 433 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew with dates and times testified. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 434 | WITNESS LIST by Kimberley Ann Tew as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 435 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew indicating admitted exhibits. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 436 | EXHIBIT LIST by Michael Aaron Tew, Kimberley Ann Tew indicating admitted exhibits. (rkeec) (Entered: 02/15/2024) |
| 02/15/2024 | 429 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/15/2024. (rkeec) (Entered: 02/15/2024) |
| 02/15/2024 | 438 | Final Jury Instructions as to Michael Aaron Tew, Kimberley Ann Tew as read into the record on 2/14/2024. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 439 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 9) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/15/2024. Jury Verdict as to Michael Aaron Tew (1) Guilty on Count 1,1s,2,2s–40s,3,41s,42s,44s–56s,57s–60s and Kimberley Ann Tew (2) Guilty on Count 1,21–22,25–26,31–32,41,43–44,47,56. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) Modified on 2/16/2024 to correct as to Count 48 (rkeec). (Entered: 02/16/2024) |
| 02/15/2024 | 440 | Jury Note 1 (Question) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 441 | Jury Note 2 (Question) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 442 | Jury Note 3 (Verdict) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 443 | Jury Note 1 (Question) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 444 | Jury Note 2 (Question) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 445 | Jury Note 3 (Verdict) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) Modified on 2/16/2024 (rkeec, ). (Entered: 02/16/2024) |
| 02/15/2024 | 446 | Court Response to Jury Notes 1 and 2 (Questions) as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 447 | Jury Verdict Un–Redacted – Level 4 – Viewable by Court Only. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 448 | JURY VERDICT with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |

| 02/15/2024 | 449 | STIPULATION AND ORDER REGARDING CUSTODY OF EXHIBITS AND DEPOSITIONS as to Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/15/2024. (rkeec) (Entered: 02/16/2024) |
| 02/16/2024 | 437 | Unopposed MOTION to Continue *Sentencing* by Jonathan K. Yioulos. (Kornfeld, Richard) (Entered: 02/16/2024) |
| 02/21/2024 | 450 | MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit)(Weiss, Sarah) (Entered: 02/21/2024) |
| 02/21/2024 | 451 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA.<br><br>Mr. Tew and Mrs. Tew must each file responses to the government's 450 Motion to Detain on or before **February 27, 2024**. SO ORDERED by Judge Daniel D. Domenico on 2/21/2024. Text Only Entry (dddlc3, ) (Entered: 02/21/2024) |
| 02/21/2024 | 452 | ORDER GRANTING 437 Motion to Continue Sentencing as to Jonathan K. Yioulos. The Sentencing set as to Mr. Yioulos for March 5, 2024 at 10:30 AM is VACATED and RESET for September 17, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 2/21/2024. Text Only Entry (dddlc3, ) (Entered: 02/21/2024) |
| 02/27/2024 | 453 | RESPONSE in Opposition by Michael Aaron Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* (Schall, Jason) (Entered: 02/27/2024) |
| 02/27/2024 | 454 | RESPONSE to Motion by Kimberley Ann Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* (Kaplan, David) (Entered: 02/27/2024) |
| 03/12/2024 | 455 | ORDER re 450 Motion to Detain Defendants Michael and Kimberley Tew. The government's motion questions whether Mr. and Mrs. Tew are still eligible for CJA–appointed counsel for this case. There is sufficient evidence to call into question their present eligibility under 18 U.S.C. § 3006A(c).<br><br>The issue of whether Michael Tew and Kimberley Tew remain entitled to ongoing court–appointed counsel under Section 3006A(c) is therefore REFERRED to Magistrate Judge Susan Prose. All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential un–sealing of any prior CJA affidavits, will be addressed at a detention hearing before this Court as outlined below.<br><br>It is therefore ORDERED that a Hearing on the 450 Government's Motion is SET for April 22, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/12/2024 | 456 | ORDER as to Michael Aaron Tew. A Sentencing Hearing as to Michael Tew is SET for August 8, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/12/2024 | 457 | |

| | | |
|---|---|---|
| | | ORDER as to Kimberley Ann Tew. A Sentencing Hearing as to Kimberley Tew is SET for August 8, 2024 at 1:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/14/2024 | 458 | SENTENCING STATEMENT by USA as to Michael Aaron Tew (Attachments: # 1 Exhibit, # 2 Exhibit)(Fields, Bryan) (Entered: 03/14/2024) |
| 03/14/2024 | 459 | SENTENCING STATEMENT by USA as to Kimberley Ann Tew (Attachments: # 1 Exhibit, # 2 Exhibit)(Fields, Bryan) (Entered: 03/14/2024) |
| 03/15/2024 | 460 | ORDER SETTING STATUS CONFERENCE as to Michael Aaron Tew, Kimberley Ann Tew by Magistrate Judge Susan Prose on 3/15/2024. A **30–minute in–person** Status Conference is hereby set for 3/18/2024, at 4:00 PM in Courtroom C205 before Magistrate Judge Susan Prose. The parties shall be prepared to discuss Defendant Michael Tew's request for "an *ex parte* hearing... to determine whether Mr. Tew 'is financially able to obtain counsel or to make partial payment for the representation' pursuant to 18 U.S.C. § 3006A(c)." *See* ECF No. 453 at 3. Text Only Entry. (trvo, ) (Entered: 03/15/2024) |
| 03/18/2024 | 461 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew by Magistrate Judge Susan Prose on 3/18/2024. At the request of the parties, the Status Conference is RESET for 3/21/2024, at 04:00 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry. (trvo, ) (Entered: 03/18/2024) |
| 03/21/2024 | 462 | MINUTE ENTRY for Status Conference as to Michael Aaron Tew and Kimberley Ann Tew held before Magistrate Judge Susan Prose on 3/21/2024. Discussion regarding issue referred to this court (*see* ECF No. 455). An ex parte hearing to determine Michael Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for March 28, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 10:00 a.m. March 27, 2024. An ex parte hearing to determine Kimberley Ann Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for April 15, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 12:00 p.m. April 10, 2024. Hearing concluded. FTR: C205. (Total time: 1 hour and 8 minutes, Hearing time: 3:57 p.m. – 5:05 p.m.) Text Only Entry. <br><br> **APPEARANCES:** Bryan David Fields and Sarah Hunter Weiss on behalf of the Government, Jason Dale Schall and Kristen M. Frost on behalf of Defendant Michael Aaron Tew and David Scott Kaplan on behalf of Defendant Kimberly Ann Tew. (trvo, ) (Entered: 03/22/2024) |
| 03/21/2024 | 463 | Utility Setting/Resetting Deadlines/Hearings as to Michael Aaron Tew: Ex Parte In Court Hearing set for 3/28/2024, at 01:30 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry (trvo, ) (Entered: 03/22/2024) |
| 03/21/2024 | 464 | Utility Setting/Resetting Deadlines/Hearings as to Kimberley Ann Tew: Ex Parte In Court Hearing set for 4/15/2024, at 01:30 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry (trvo, ) (Entered: 03/22/2024) |
| 03/27/2024 | 465 | STATEMENT *by Government Regarding Michael Tew's Eligibility for CJA–Funded Counsel Going Forward* by Plaintiff USA (Weiss, Sarah) (Entered: 03/27/2024) |

| 03/27/2024 | 466 | RESTRICTED DOCUMENT LEVEL 3 – Conventionally Submitted Material: 1 Flash Drive re 462 Status Conference, by Plaintiff USA. Location: 1st Floor Area, Box D–5–9. Text Only Entry. (sphil, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 03/27/2024) |
|---|---|---|
| 03/27/2024 | 467 | RESTRICTED DOCUMENT LEVEL 3 – Conventionally Submitted Material: 1 USB Drive re 462 Status Conference, by Defendant Michael Aaron Tew. Location: 1st Floor Area, Box D–5–9. Text Only Entry. (trvo, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 03/28/2024) |
| 03/28/2024 | 468 | MINUTE ENTRY for Ex Parte Hearing as to Michael Aaron Tew held before Magistrate Judge Susan Prose on 3/28/2024. The Court finds that Defendant Michael Tew remains eligible for court–appointed counsel. A separate public written order will be issued. FTR: C205. (trvo, ) (Entered: 03/29/2024) |
| 04/01/2024 | 469 | ORDER GRANTING 397 Motion for Leave to File Reply as to Kimberley Ann Tew. By Judge Daniel D. Domenico on 4/1/2024. Text Only Entry (dddlc1, ) (Entered: 04/01/2024) |
| 04/01/2024 | 470 | ORDER GRANTING 396 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Docs. 394 and 395 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/1/2024. Text Only Entry (dddlc1, ) (Entered: 04/01/2024) |
| 04/05/2024 | 471 | ORDER REGARDING DEFENDANT MICHAEL TEW'S ELIGIBILITY FOR ONGOING COURT–APPOINTED COUNSEL by Magistrate Judge Susan Prose on 4/5/2024. (trvo, ) (Entered: 04/05/2024) |
| 04/10/2024 | 472 | STATEMENT *by Government Regarding Kimberley Tew's Eligibility for CJA–Funded Counsel Going Forward* by Plaintiff USA (Weiss, Sarah) (Entered: 04/10/2024) |
| 04/15/2024 | 473 | RESTRICTED DOCUMENT LEVEL 3 – Conventionally Submitted Material: 1 USB Drive re 462 Status Conference, by Defendant Kimberley Ann Tew. Location: 1st Floor Area, Box D–5–9. Text Only Entry (trvo, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 04/15/2024) |
| 04/15/2024 | 474 | MINUTE ENTRY for Ex Parte Hearing as to Kimberley Ann Tew held before Magistrate Judge Susan Prose on 4/15/2024. The Court finds that Defendant Kimberley Ann Tew remains eligible for court–appointed counsel. A separate public written order will be issued. FTR: C205. (trvo, ) (Entered: 04/16/2024) |
| 04/16/2024 | 475 | Unopposed MOTION for Order *Requiring the Parties to File Visual Presentations into the Record* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/16/2024) |
| 04/16/2024 | 476 | ORDER granting 475 Motion for Order Requiring the Parties to File Visual Presentations into the Record. The parties are ordered to file all visual presentations used during opening statements and closing arguments into the record. SO ORDERED by Judge Daniel D. Domenico on 4/16/2024. Text Only Entry (dddlc9, ) (Entered: 04/16/2024) |
| 04/18/2024 | 477 | NOTICE *OF CONVENTIONAL SUBMISSION* re 476 Order on Motion for Order, by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 04/18/2024) |
| 04/18/2024 | 479 | |

| | | |
|---|---|---|
| | | Conventionally Submitted Material : USB exhibits to 477 NOTICE OF CONVENTIONAL SUBMISSION re 476 Order on Motion for Order, by Plaintiff USA – Material placed in the oversized area D–5–9 of the Clerk's Office. Text Only Entry (angar, ) (Entered: 04/19/2024) |
| 04/19/2024 | 478 | ORDER REGARDING DEFENDANT KIMBERLEY ANN TEW'S ELIGIBILITY FOR ONGOING COURT–APPOINTED COUNSEL by Magistrate Judge Susan Prose on 4/19/2024. (trvo, ) (Entered: 04/19/2024) |
| 04/21/2024 | 480 | MOTION for Leave to Restrict by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/21/2024 | 481 | RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/21/2024 | 482 | RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/22/2024 | 483 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Evidentiary Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 4/22/2024 re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA. 450 Motion to Detain as to Michael Aaron Tew (1), Kimberley Ann Tew (2) is DENIED, but the Court will impose additional conditions of bond. Court indicates that a written order shall follow. Bond is continued as to Michael Aaron Tew and Kimberley Ann Tew. Court Reporter: Tammy Hoffschildt. (Attachments: # 1 Government's witness list, # 2 Government's exhibit list) (rkeec) (Entered: 04/22/2024) |
| 04/23/2024 | 484 | NOTICE *of Filing of Visual Presentation* by Kimberley Ann Tew (Attachments: # 1 PowerPoint Closing Statement)(Hubbard, Jamie) (Entered: 04/23/2024) |
| 04/23/2024 | 485 | Unopposed MOTION to Travel *UNOPPOSED MOTION FOR DEFENDANT TO TRAVEL OUT OF THE COUNTRY* by Jonathan K. Yioulos. (Attachments: # 1 Waiver of Extradition)(Kornfeld, Richard) (Entered: 04/23/2024) |
| 04/23/2024 | 486 | NOTICE *Of Clarification Regarding Sentencing Statement* by Michael Aaron Tew (Frost, Kristen) (Entered: 04/23/2024) |
| 04/24/2024 | 487 | ORDER granting 485 Motion to Travel as to Jonathan K. Yioulos. Mr. Yioulos may travel to Montego Bay, Jamaica, from June 26 to July 2, 2024. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from each trip. SO ORDERED by Judge Daniel D. Domenico on 4/24/2024. Text Only Entry (dddlc9, ) (Entered: 04/24/2024) |
| 04/24/2024 | 488 | NOTICE *Of Filing Of Visual Presentation* by Michael Aaron Tew (Attachments: # 1 Closing Argument PowerPoint)(Frost, Kristen) (Entered: 04/24/2024) |
| 04/25/2024 | 489 | ORDER modifying conditions of release as to Michael Aaron Tew and Kimberley Ann Tew. The following conditions are added to those already in effect:<br><br>1. Defendants shall disclose a complete list of all bank accounts and peer–to–peer financial services accounts to which they have access no later than April 30, 2024. Defendants shall further provide a statement for each of these accounts to their supervising officer no later than the 5th of each following month, starting on May 5th, 2024. |

|  |  | 2. Defendants shall refrain from gambling of any kind, purchasing over $50 of gift cards in a given day, and engaging in any cryptocurrency transaction without the prior approval of the supervising officer.<br><br>3.The supervising officer may, in his discretion, share any information provided to him by Defendants pursuant to these conditions with the government.<br><br>SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
|---|---|---|
| 04/25/2024 | 490 | ORDER denying as moot 348 Motion in Limine in light of 483 and 489 . SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/25/2024 | 491 | ORDER granting 480 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 482 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/26/2024 | 492 | NOTICE OF ATTORNEY APPEARANCE Martha Ann Paluch appearing for USA. Attorney Martha Ann Paluch added to party USA(pty:pla) (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 493 | RESTRICTED DOCUMENT – Level 3: by USA as to Kimberley Ann Tew (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 494 | RESTRICTED DOCUMENT – Level 1: by USA as to Kimberley Ann Tew (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 495 | MOTION for Leave to Restrict by USA as to Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 499 | ORDER Updating Conditions of Release as to Michael Aaron Tew (1) $20,000 Unsecured. SO ORDERED by Judge Daniel D. Domenico on 4/26/2024. (rkeec) (Entered: 05/01/2024) |
| 04/26/2024 | 500 | ORDER Updating Conditions of Release as to Kimberley Ann Tew (2) $10,000 Unsecured. SO ORDERED by Judge Daniel D. Domenico on 4/26/2024. (rkeec) (Entered: 05/01/2024) |
| 04/29/2024 | 496 | Unopposed MOTION to Travel *Out of State* by Jonathan K. Yioulos. (Kornfeld, Richard) (Entered: 04/29/2024) |
| 04/30/2024 | 497 | ORDER granting 496 Motion to Travel as to Jonathan K. Yioulos. Instead of going to Jamaica, Mr. Yioulos may travel to Miami, Florida from June 25 to July 1, 2024. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from the trip. SO ORDERED by Judge Daniel D. Domenico on 4/30/2024. Text Only Entry (dddlc9, ) (Entered: 04/30/2024) |
| 04/30/2024 | 498 | ORDER granting 495 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 493 at Level 3 restriction and to maintain Doc. 494 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/30/2024. Text Only Entry (dddlc9, ) (Entered: 04/30/2024) |
| 05/08/2024 | 501 |  |

| | | |
|---|---|---|
| | | ORDER denying 482 RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. Having reviewed the pleadings on this issue and considered the relevant facts, the motion is denied. SO ORDERED by Judge Daniel D. Domenico on 5/8/2024. Text Only Entry (dddlc9, ) (Entered: 05/08/2024) |
| 05/31/2024 | 502 | Unopposed MOTION to Continue *Sentencing and Related Deadlines* by Michael Aaron Tew. (Schall, Jason) (Entered: 05/31/2024) |
| 06/04/2024 | 503 | ORDER granting 502 Motion to Continue as to Michael Aaron Tew. Mr. Tew's sentencing, which was set for 8/8/2024, is vacated and reset for 9/12/2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 6/4/2024. Text Only Entry (dddlc9, ) (Entered: 06/04/2024) |
| 07/02/2024 | 504 | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Kimberley Ann Tew (Attachments: # 1 Exhibit A)(aarag, ) (Entered: 07/02/2024) |
| 07/09/2024 | 505 | ORDER RESETTING HEARING as to Jonathan K. Yioulos. Due to a conflict on the Court's calendar, and after consultation with counsel, the Sentencing set for 9/17/2024 is VACATED and RESET for 10/2/2024 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 7/9/2024. Text Only Entry (dddlc1, ) (Entered: 07/09/2024) |
| 07/15/2024 | 506 | Unopposed MOTION for Extension of Time to File *Objections to Presentence Investigation Report* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion for Extension of Time to Submit Objection to Presentence Investigation Report)(Kaplan, David) (Entered: 07/15/2024) |
| 07/17/2024 | 507 | ORDER granting 506 Motion for Extension of Time. Ms. Tew may file objections to the PSIR on or before July 19, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/17/2024. Text Only Entry (dddlc9, ) (Entered: 07/17/2024) |
| 07/19/2024 | 508 | OBJECTION/RESPONSE to Presentence Report by Kimberley Ann Tew (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 3a, # 5 Exhibit Exhibit 4, # 6 Exhibit Exhibit 5, # 7 Exhibit Exhibit 6, # 8 Exhibit Exhibit 6a, # 9 Exhibit Exhibit 7, # 10 Exhibit Exhibit 7a)(Kaplan, David) (Entered: 07/19/2024) |
| 07/19/2024 | 510 | Conventionally Submitted Material : 1 Flash Drive re Objection/Response to Presentence Report, 508 by Defendant Kimberley Ann Tew. Location of Stored Items: Box D–5–5. Text Only Entry (cmadr, ) (Entered: 07/23/2024) |
| 07/22/2024 | 509 | Unopposed MOTION for Leave to Restrict by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) PO re Unopposed Motion to Restrict)(Kaplan, David) (Entered: 07/22/2024) |
| 07/24/2024 | 511 | ORDER granting 509 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 508 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 7/24/2024. Text Only Entry (dddlc9, ) (Entered: 07/24/2024) |
| 07/25/2024 | 512 | NOTICE OF ATTORNEY APPEARANCE Laura Beth Hurd appearing for USA. Attorney Laura Beth Hurd added to party USA(pty:pla) (Hurd, Laura) (Entered: 07/25/2024) |
| 07/25/2024 | 513 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* by USA as to Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, |

| | | Laura) (Entered: 07/25/2024) |
|---|---|---|
| 07/25/2024 | 514 | ORDER re 513 Motion for Preliminary Order of Forfeiture. If Ms. Tew opposes the motion, she is ordered to file a response on or before August 2, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/25/2024. Text Only Entry (dddlc9, ) (Entered: 07/25/2024) |
| 07/25/2024 | 515 | RESTRICTED DOCUMENT – Level 2: as to Kimberley Ann Tew. (Kaplan, David) (Entered: 07/25/2024) |
| 07/26/2024 | 516 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Conventionally Submitted, # 2 Exhibit, # 3 Exhibit)(Weiss, Sarah) (Entered: 07/26/2024) |
| 07/26/2024 | 519 | Conventionally Submitted Material : One CD re Restricted Document – Level 2 516 by Plaintiff USA. Location of stored items: Sealed Room. Text Only Entry (cmadr, ) (Entered: 07/30/2024) |
| 07/29/2024 | 517 | RESTRICTED PRESENTENCE REPORT as to Kimberley Ann Tew (Attachments: # 1 Exhibit A)(agalv) (Entered: 07/29/2024) |
| 07/29/2024 | 518 | RESTRICTED ADDENDUM to Presentence Report 517 as to Kimberley Ann Tew (agalv) (Entered: 07/29/2024) |
| 08/01/2024 | 520 | RESTRICTED DOCUMENT – Level 2: as to Kimberley Ann Tew. (Weiss, Sarah) (Entered: 08/01/2024) |
| 08/01/2024 | 521 | Unopposed MOTION for Order *To Permit Virtual or Telephonic Attendance for Co−Defendant's Sentencing Hearing* by Michael Aaron Tew. (Frost, Kristen) (Entered: 08/01/2024) |
| 08/02/2024 | 522 | RESPONSE to Motion by Kimberley Ann Tew re 513 MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* (Kaplan, David) (Entered: 08/02/2024) |
| 08/05/2024 | 523 | ORDER as to Kimberley Ann Tew re 513 Motion for Preliminary Order of Forfeiture. The Court will hold a hearing regarding forfeiture starting at 1:00 PM on August 8, 2024 in Courtroom A1002. Sentencing will follow immediately afterward. SO ORDERED by Judge Daniel D. Domenico on 8/5/2024. Text Only Entry (dddlc9, ) (Entered: 08/05/2024) |
| 08/05/2024 | 524 | ORDER granting 521 Motion for Order as to Michael Aaron Tew to Permit Virtual or Telephonic Attendance for Co−Defendant's Sentencing Hearing. Mr. Tew's counsel is directed to contact the Courtroom Deputy via email (robb_keech@cod.uscourts.gov) no later than 8/6/2024 for instructions on how to proceed by telephone conference. All persons participating in court proceedings remotely by VTC or teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner. SO ORDERED by Judge Daniel D. Domenico on 8/5/2024. Text Only Entry (dddlc9, ) (Entered: 08/05/2024) |
| 08/06/2024 | 525 | REPLY TO RESPONSE to Motion by USA as to Kimberley Ann Tew re 513 MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture UNITED STATES REPLY TO KIMBERLEY TEWS NOTICE OF OBJECTION TO UNITED STATES MOTION FOR PRELIMINARY ORDER OF FORFEITURE (ECF DOC. 522)* (Hurd, Laura) (Entered: 08/06/2024) |
| 08/08/2024 | 526 | |

| | | |
|---|---|---|
| | | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Michael Aaron Tew (Attachments: # 1 Exhibit A)(ntaka) (Entered: 08/08/2024) |
| 08/08/2024 | 527 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Forfeiture Hearing and Sentencing as to Kimberley Ann Tew (2) held on 8/8/2024. Granting 513 Motion for Forfeiture of Property as to Kimberley Ann Tew (2). Granting in part 515 Defendants Motion. Defendant sentenced as reflected on the record. Bond continued. Court Reporter: Tammy Hoffschildt. (rkeec) Modified on 8/8/2024 to include ruling on 515 Defendant's Motion. (rkeec). (Entered: 08/08/2024) |
| 08/13/2024 | 528 | JUDGMENT as to defendant Kimberley Ann Tew (2), Count(s) 1, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 16, Dismissed by Court during jury trial.; Count(s) 21−22, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 25−26, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 31−32, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 41, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 43−44, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 47, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 48, Defendant was found not guilty by jury at trial.; Count(s) 56, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. Entered by Judge Daniel D. Domenico on 8/13/2024. (rkeec) (Entered: 08/13/2024) |
| 08/13/2024 | 529 | STATEMENT OF REASONS as to Kimberley Ann Tew (2). (rkeec) (Entered: 08/13/2024) |
| 08/14/2024 | 530 | Passport Receipt as to Kimberley Ann Tew (2). Forwarding passport to Dept. of State; Passport Number 522213975 issued by USA. Sent certified mail; receipt number 7019 2920 0001 1984 2431. (rkeec) (Entered: 08/14/2024) |
| 08/15/2024 | 531 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Schall, Jason) (Entered: 08/15/2024) |
| 08/15/2024 | 532 | |

| | | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (cmadr, ) (Entered: 08/15/2024) |
|---|---|---|
| 08/19/2024 | 533 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (rkeec) (Entered: 08/19/2024) |
| 08/19/2024 | 534 | Utility Setting/Resetting Deadlines/Hearings as to Michael Aaron Tew: Text Only Entry. Sentencing reset for 11/12/2024, at 01:30 PM, in Courtroom A1002 before Judge Daniel D. Domenico. (rkeec) (Entered: 08/19/2024) |
| 08/20/2024 | 535 | NOTICE OF APPEAL by Kimberley Ann Tew. (Kaplan, David) (Entered: 08/20/2024) |
| 08/21/2024 | 536 | Unopposed MOTION to Continue *Second Unopposed Motion to Continue Sentencing* by Jonathan K. Yioulos. (Kornfeld, Richard) (Entered: 08/21/2024) |
| 08/21/2024 | 537 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 535 Notice of Appeal as to Kimberley Ann Tew to the U.S. Court of Appeals. ( CJA, Fee not paid and 1915 motion not filed,) (Attachments: # 1 Preliminary Record)(cmadr, ) (Entered: 08/21/2024) |
| 08/21/2024 | 538 | USCA Case Number as to Kimberley Ann Tew 24–1333 for 535 Notice of Appeal filed by Kimberley Ann Tew. (cmadr, ) (Entered: 08/21/2024) |
| 08/22/2024 | 539 | ORDER granting 536 Motion to Continue as to Jonathan K. Yioulos. Sentencing set for 10/2/2024 is VACATED and RESET for 11/19/2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 8/22/2024. Text Only Entry (dddlc9, ) (Entered: 08/22/2024) |
| 08/26/2024 | 540 | USPS Certified Mail Receipt Return re 530 Passport Receipt by Kimberley Ann Tew (cmadr, ) (Entered: 08/27/2024) |
| 08/28/2024 | 541 | TRANSCRIPT of Sentencing hearing as to Kimberley Ann Tew held on August 8, 2024 before Judge Domenico. Pages: 1–103. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** <br><br> Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 08/28/2024) |
| 08/28/2024 | 542 | MOTION for Leave to Restrict by Michael Aaron Tew. (Schall, Jason) (Entered: 08/28/2024) |
| 08/28/2024 | 543 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Schall, Jason) (Entered: 08/28/2024) |
| 08/28/2024 | 544 | ORDER granting 542 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Docs. 531 , 532 , 533 , and 543 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 8/28/2024. Text Only Entry (dddlc9, ) (Entered: |

| | | |
|---|---|---|
| | | 08/28/2024) |
| 08/29/2024 | 545 | ORDER to Surrender as to Kimberley Ann Tew; Defendant to surrender to Satellite Prison Camp, FCI Phoenix, on 10/9/2024, at 12:00 PM, and will travel at her own expense. SO ORDERED by Judge Daniel D. Domenico on 8/29/2024. (rkeec) (Entered: 08/30/2024) |
| 09/04/2024 | 547 | TRANSCRIPT ORDER FORM by Kimberley Ann Tew Transcript ordered for proceedings held on 2/5/2024 through 2/15/2024, and 8/8/2024 re 535 Notice of Appeal. (cmadr, ) (Entered: 09/05/2024) |
| 09/05/2024 | 546 | MOTION for Order *Extending the Time for her to Surrender to the Warden at Satellite Prison Camp* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion Requesting an Order Extending the Time for her to Surrender to the Warden at Satellite Prison Camp)(Kaplan, David) (Entered: 09/05/2024) |
| 09/05/2024 | 548 | ORDER of USCA as to Kimberley Ann Tew re 535 Notice of Appeal. (USCA Case No. 24–1333). Upon consideration, the court grants the motion and appoints CJA Panel member Justin A. Lollman to represent appellant Kimberley Ann Tew going forward. See 18 U.S.C. § 3006A. On or before September 16, 2024, Mr. Lollman shall file an entry of appearance in this appeal. The Clerk of the U.S. District Court for the District of Colorado shall wait until at least September 26, 2024 before transmitting the record on appeal to this court. (cmadr, ) (Entered: 09/05/2024) |
| 09/06/2024 | 549 | ORDER denying 546 Motion Requesting Order Extending the Time for her to Surrender to the Warden at Satellite Prison Camp. Mr. and Mrs. Tew have had sufficient time to finalize childcare arrangements. The motion is DENIED. SO ORDERED by Judge Daniel D. Domenico on 9/6/2024. Text Only Entry (dddlc9, ) (Entered: 09/06/2024) |
| 09/16/2024 | 550 | MOTION for Order *for Release Pending Appeal* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion for Release Pending Appeal)(Hubbard, Jamie) (Entered: 09/16/2024) |
| 09/17/2024 | 551 | MINUTE ORDER as to Kimberley Ann Tew re: 550 Motion for Order *for Release Pending Appeal*. The Government must respond by 9/27/2024. SO ORDERED by Judge Daniel D. Domenico on 9/17/2024. Text Only Entry (dddlc1, ) (Entered: 09/17/2024) |
| 09/20/2024 | 552 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 550 MOTION for Order *for Release Pending Appeal* (Fields, Bryan) (Entered: 09/20/2024) |
| 09/25/2024 | 553 | SUPPLEMENT *Designation of Record* by Kimberley Ann Tew (Attachments: # 1 Exhibit 1 Designation of Record – District Court Docket Sheet)(Lollman, Justin) (Entered: 09/25/2024) |
| 09/25/2024 | 554 | TRANSCRIPT ORDER FORM re 535 Notice of Appeal by Kimberley Ann Tew. (Attachments: # 1 CJA Attachment CJA 24 Form)(Lollman, Justin) (Entered: 09/25/2024) |
| 09/26/2024 | 555 | ORDER Denying 550 MOTION FOR RELEASE PENDING APPEAL as to Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 26 September 2024. (cmadr, ) (Entered: 09/26/2024) |
| 10/08/2024 | 556 | |

| | | |
|---|---|---|
| | | REPORTER TRANSCRIPT ORDER FORM as to Plaintiff USA, Movants Atlantic Union Bank, Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc., Defendants Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos, filed by Tamara Hoffschildt. Transcripts ordered 2–5–24 through 2–8–24; 2–9–24 through 2–16–24, JT and 8–8–24 Sentencing (thoff, ) (Entered: 10/08/2024) |
| 10/15/2024 | 557 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 10/15/2024) |
| 10/15/2024 | 558 | ORDER granting 557 Motion to Travel as to Michael Aaron Tew. Mr. Tew may travel to Pheonix, Arizona during the following windows: <br><br> 1. October 25 through October 28, 2024; <br> 2. November 1 through November 4, 2024; amd <br> 3. November 8 through November 11, 2024. <br><br> Mr. Tew must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services as directed in advance of departure, (2) contact his probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 10/15/2024. Text Only Entry (dddlc9, ) (Entered: 10/15/2024) |
| 10/20/2024 | 559 | VOIR DIRE TRANSCRIPT of proceedings held on February 5, 2025 before Judge Domenico. Pages: 1–119. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 560 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 5, 2024 before Judge Domenico. Pages: 1–95. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** <br><br> Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 561 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 6, 2024 before Judge Domenico. Pages: 96–350. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** <br><br> Transcript may only be viewed at the court's public terminal or purchased through the |

| | | |
|---|---|---|
| | | Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 562 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 8, 2024 before Judge Domenico. Pages: 351–554.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 563 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 8, 2024 before Judge Domenico. Pages: 555–811.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 564 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 9, 2024 before Judge Domenico. Pages: 812–1018.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 565 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 12, 2024 before Judge Domenico. Pages: 1019–1249.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to** |

| | | |
|---|---|---|
| | | **Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 566 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 13, 2024 before Judge Domenico. Pages: 1250–1509.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 567 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 14, 2024 before Judge Domenico. Pages: 1510–1662.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 568 | TRANSCRIPT of Jury Trial, verdict as to Kimberley Ann Tew held on February 15, 2024 before Judge Domenico. Pages: 1663–1681.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on |

| | | |
|---|---|---|
| | | PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 569 | Amended TRANSCRIPT of Jury Trial, Day 3 as to Kimberley Ann Tew held on February 7, 2024 before Judge Domenico. Pages: 351–554.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, incorrect date was entered. ) (Entered: 10/20/2024) |
| 10/20/2024 | 570 | TRANSCRIPT of James hearing as to Kimberley Ann Tew held on December 19, 2023 before Judge Domenico. Pages: 1–140.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/21/2024 | 571 | OBJECTION/RESPONSE to Presentence Report 526 by Michael Aaron Tew (Schall, Jason) (Entered: 10/21/2024) |
| 10/24/2024 | 572 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture for a Personal Money Judgment Against Defendant Michael Aaron Tew* by USA as to Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, Laura) (Entered: 10/24/2024) |
| 10/24/2024 | 573 | OBJECTION/RESPONSE to Presentence Report 571 by USA as to Michael Aaron Tew (Fields, Bryan) (Entered: 10/24/2024) |
| 10/24/2024 | 574 | ORDER as to Michael Aaron Tew re 572 Motion for Preliminary Order of Forfeiture. If Mr. Tew opposes this motion, he is ordered to file a response on or before November 1, 2024. SO ORDERED by Judge Daniel D. Domenico on 10/24/2024. Text Only Entry (dddlc9, ) (Entered: 10/24/2024) |
| 10/29/2024 | 575 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Attachments: # 1 Exhibit Defendant's Exhibits)(Schall, Jason) (Entered: 10/29/2024) |
| 11/05/2024 | 576 | RESTRICTED PRESENTENCE REPORT as to Michael Aaron Tew (Attachments: # 1 Exhibit A – Revised Recommendation).(agalv) (Entered: 11/05/2024) |
| 11/05/2024 | 577 | |

| | | |
|---|---|---|
| | | RESTRICTED ADDENDUM to Presentence Report 576 as to Michael Aaron Tew (Attachments: # 1 Exhibit A – Letters in Support). (agalv) (Entered: 11/05/2024) |
| 11/05/2024 | 578 | MOTION for Non–Guideline Sentence by Jonathan K. Yioulos. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kornfeld, Richard) (Entered: 11/05/2024) |
| 11/05/2024 | 579 | MEMORANDUM in Opposition by USA as to Michael Aaron Tew re 575 Restricted Document – Level 2 *(Response in Opposition to Motion for Variant Sentence)* (Fields, Bryan) (Entered: 11/05/2024) |
| 11/05/2024 | 580 | MOTION For Downward Departure Pursuant to 5K1.1 by USA as to Jonathan K. Yioulos. (Fields, Bryan) (Entered: 11/05/2024) |
| 11/06/2024 | 581 | ORDER RESETTING HEARING as to Jonathan K. Yioulos. Due to a conflict on the Court's calendar, and after consultation with counsel, the Sentencing set for 11/19/2024 is VACATED and RESET for 12/3/2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 11/6/2024. Text Only Entry (dddlc1, ) (Entered: 11/06/2024) |
| 11/10/2024 | 582 | ORDER re Sentencing as to Michael Aaron Tew. Live witnesses will not be permitted to testify at Tuesday's sentencing, though the defendant may speak on his own behalf or may submit other support in writing if he wishes. Any victims will also be given an opportunity to speak. SO ORDERED by Judge Daniel D. Domenico on 11/10/2024. Text Only Entry (dddlc9, ) (Entered: 11/10/2024) |
| 11/11/2024 | 583 | PRELIMINARY ORDER OF FORFEITURE FOR A PERSONAL MONEY JUDGMENT as to Michael Aaron Tew (1) by Judge Daniel D. Domenico on 11 November 2024. (cmadr, ) (Entered: 11/12/2024) |
| 11/12/2024 | 584 | MOTION for Victim Rights *(Permission for Telephonic Participation)* by USA as to Michael Aaron Tew. (Fields, Bryan) (Entered: 11/12/2024) |
| 11/12/2024 | 585 | ORDER granting 584 Motion for Victim Rights as to Michael Aaron Tew. While it is unclear whether Fed. R. Crim. P. 32 requires the Court to permit victims not physically present in the courtroom an opportunity to speak at sentencing, the Court will allow any victims in this case an opportunity to speak telephonically at today's sentencing. SO ORDERED by Judge Daniel D. Domenico on 11/12/2024. Text Only Entry (dddlc9, ) (Entered: 11/12/2024) |
| 11/12/2024 | 586 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Sentencing held on 11/12/2024 as to defendant Michael Aaron Tew (1). Defendant sentenced as reflected on the record. 575 Defendants Motion is GRANTED IN PART. Bond continued. Court Reporter: Tammy Hoffschildt. (Attachments: # 1 Defendant Exhibit 1, # 2 Defendant Exhibit 2) (rkeec) (Entered: 11/12/2024) |
| 11/14/2024 | 587 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 11/14/2024) |
| 11/15/2024 | 588 | ORDER granting 587 Motion to Travel as to Michael Aaron Tew. Mr. Tew may travel to Pheonix, Arizona to visit his wife at FCI Pheonix between now and his self–report date so long as he provides completed travel itineraries (including both flight and lodging information) to probation at least two weeks prior to travel and receives approval from U.S.P.O. Seth Junker. SO ORDERED by Judge Daniel D. Domenico on 11/15/2024. Text Only Entry (dddlc9, ) (Entered: 11/15/2024) |
| 11/15/2024 | 589 | |

| | | |
|---|---|---|
| | | JUDGMENT as to defendant Michael Aaron Tew (1), Count(s) 1s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,361,622.10.; Count(s) 2s–40s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,361,622.10.; Count(s) 41s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,361,622.10.; Count(s) 42s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, $100,000.00 fine, and restitution in the total amount of $6,361,622.10.; Count(s) 44s–56s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, $100,000.00 fine, and restitution in the total amount of $6,361,622.10.; Count(s) 57s–60s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, $100,000.00 fine, and restitution in the total amount of $6,361,622.10. Entered by Judge Daniel D. Domenico on 11/15/2024. (rkeec) Modified on 11/18/2024 to correct fine amount (rkeec). (Entered: 11/15/2024) |
| 11/15/2024 | 590 | STATEMENT OF REASONS as to Michael Aaron Tew (1). (rkeec) (Entered: 11/15/2024) |
| 11/18/2024 | 591 | Passport Receipt as to Michael Aaron Tew (1). Forwarding passport to Dept. of State; Passport Number 484644160 issued by USA. Sent via certified mail receipt number 7019 2970 0001 1984 2455. (rkeec) (Entered: 11/18/2024) |
| 11/21/2024 | 592 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 11/21/2024) |
| 11/22/2024 | 593 | ORDER granting 592 Motion to Travel as to Michael Aaron Tew. Mr. Tew may travel to Marquette, Michigan between January 1, 2025 and his self–report date. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from the trip. SO ORDERED by Judge Daniel D. Domenico on 11/22/2024. Text Only Entry (dddlc9, ) (Entered: 11/22/2024) |

| 11/22/2024 | 594 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture for a Personal Money Judgment Against Defendant Jonathan K. Yioulos* by USA as to Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, Laura) (Entered: 11/22/2024) |
|---|---|---|
| 11/22/2024 | 595 | MOTION to Dismiss Counts *Pursuant to Plea Agreement* by USA as to Jonathan K. Yioulos. (Fields, Bryan) (Entered: 11/22/2024) |
| 11/22/2024 | 596 | MOTION for Decrease for Acceptance of Responsibility by USA as to Jonathan K. Yioulos. (Fields, Bryan) (Entered: 11/22/2024) |
| 11/25/2024 | 597 | NOTICE OF APPEAL as to 589 Judgment,,,,,,,,,,,, by Michael Aaron Tew. (Schall, Jason) (Entered: 11/25/2024) |
| 11/25/2024 | 598 | PRELIMINARY ORDER OF FORFEITURE FOR A PERSONAL MONEY JUDGMENT as to Jonathan K. Yioulos (3) by Judge Daniel D. Domenico on 25 November 2024. (cmadr, ) (Entered: 11/25/2024) |
| 11/25/2024 | 599 | DESIGNATION OF RECORD ON APPEAL re 597 Notice of Appeal by Michael Aaron Tew. (Attachments: # 1 Exhibit A)(Frost, Kristen) (Entered: 11/25/2024) |
| 11/25/2024 | 600 | MOTION to Proceed in Forma Pauperis by Michael Aaron Tew. (Frost, Kristen) (Entered: 11/25/2024) |
| 11/26/2024 | 601 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 597 Notice of Appeal as to Michael Aaron Tew to the U.S. Court of Appeals. ( CJA, 1915 motion filed,) (Attachments: # 1 Preliminary Record)(cmadr, ) (Entered: 11/26/2024) |
| 11/26/2024 | 602 | RESTRICTED PRESENTENCE REPORT as to Jonathan K. Yioulos (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(mcfont) (Entered: 11/26/2024) |
| 11/26/2024 | 603 | RESTRICTED SECOND ADDENDUM to Presentence Report 602 as to Jonathan K. Yioulos (mcfont) (Entered: 11/26/2024) |
| 11/26/2024 | 604 | USCA Case Number as to Michael Aaron Tew 24–1465 for 597 Notice of Appeal filed by Michael Aaron Tew. (cmadr, ) (Entered: 11/27/2024) |
| 12/02/2024 | 605 | MINUTE ORDER as to Jonathan K. Yioulos re: Sentencing set for 12/3/2024. Members of the public may attend the hearing by teleconference at (571) 353–2301, using guest code 478499919. All persons participating in court proceedings by teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner. SO ORDERED by Judge Daniel D. Domenico on 12/2/2024. Text Only Entry (dddlc1, ) (Entered: 12/02/2024) |
| 12/03/2024 | 606 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Sentencing held on 12/3/2024 as to defendant Jonathan K. Yioulos (3). Granting in part 578 Motion for Non–Guideline Sentence as to Jonathan K. Yioulos (3). Granting 580 Motion for Downward Departure Pursuant to 5K1.1 as to Jonathan K. Yioulos (3). Granting 595 Motion to Dismiss Counts as to Jonathan K. Yioulos (3). Granting 596 Motion for Decrease for Acceptance of Responsibility as to Jonathan K. Yioulos (3). Defendant sentenced as reflected on the record. Bond is continued. Court Reporter: Kevin Carlin. (rkeec) (Entered: 12/03/2024) |
| 12/06/2024 | 607 | JUDGMENT as to defendant Jonathan K. Yioulos (3), Count(s) 1, Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three |

| | | |
|---|---|---|
| | | (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 2–38, 40, Dismissed on United States of Americas Motion to Dismiss Counts.; Count(s) 39, Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50. Entered by Judge Daniel D. Domenico on 12/6/2024. (rkeec) (Entered: 12/06/2024) |
| 12/06/2024 | 608 | STATEMENT OF REASONS as to Jonathan K. Yioulos (3). (rkeec) (Entered: 12/06/2024) |
| 12/09/2024 | 609 | USPS Certified Mail Receipt Return re 591 Passport Receipt as to Michael Aaron Tew (cmadr, ) (Entered: 12/10/2024) |
| 12/10/2024 | 610 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/10/2024 | 611 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/10/2024 | 612 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/10/2024 | 613 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/13/2024 | 614 | ORDER to Surrender as to Michael Aaron Tew (1). Defendant to surrender to FCI Florence, located at 5880 CO–67, Florence, CO 81226 on 2/1/2025, by 2:00 p.m. and will travel at their own expense. SO ORDERED by Judge Daniel D. Domenico on 12/13/2024. (rkeec) (Entered: 12/13/2024) |
| 12/13/2024 | 615 | ORDER of USCA as to Michael Aaron Tew re 597 Notice of Appeal. (USCA Case No. 24–1465). Kari Schmidt is appointed as counsel for Mr. Tew. Within 10 days of the date of this order, Ms. Schmidt shall file an entry of appearance in this appeal. (cmadr, ) (Entered: 12/16/2024) |
| 12/16/2024 | 616 | ORDER as to Michael Aaron Tew (1) by Judge Daniel D. Domenico on 16 December 2024. Accordingly, it is ORDERED that Defendant Michael Aaron Tew's Motion to Proceed In Forma Pauperis, Doc. 600 , is GRANTED. (cmadr, ) (Entered: 12/16/2024) |
| 12/23/2024 | 617 | REPORTER TRANSCRIPT ORDER FORM as to Defendants Michael Aaron Tew, Michael Aaron Tew, filed by Tamara Hoffschildt. Transcripts ordered 01–30–24; 4–22–24; 11–12–24 (thoff, ) (Entered: 12/23/2024) |
| 12/24/2024 | 618 | REPORTER TRANSCRIPT ORDER FORM as to Defendants Michael Aaron Tew filed by Julie Thomas. (nrich) (Entered: 12/24/2024) |
| 12/27/2024 | 619 | REPORTER TRANSCRIPT ORDER FORM filed by Patterson Transcription Company re 597 Notice of Appeal. Transcript due by 1/28/2025. (nrich) (Entered: 12/27/2024) |
| 01/03/2025 | 620 | TRANSCRIPT of Sentencing Hearing as to Jonathan K. Yioulos held on 12/03/2024 before Judge Domenico. Pages: 1–25. |

| | | **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (kcarl, ) (Entered: 01/03/2025) |
|---|---|---|
| 01/07/2025 | 621 | MINUTE ORDER re <u>589</u> Judgement as to Michael Aaron Tew. Upon review of the Declaration of Victim Losses and supporting documentation submitted by victim National Air Cargo, and consistent with the judgment imposed in the case of codefendant Jonathan K. Yioulos, the Court finds the restitution owed in relation to victim National Air Cargo is $5,023,878.50. Furthermore, the restitution payees are the insurance companies that reimbursed National Air Cargo, pursuant to 18 U.S.C. § 3664(j). Assistant United States Attorney Bryan David Fields and the defendants attorney, Jason Dale Schall, have advised the Probation Office that they have no objection to the judgment being amended to update the restitution order as detailed above. Therefore, the Court ORDERS the U.S. Probation Office to prepare an Amended Judgment reflecting amendments to the restitution order, as detailed above. SO ORDERED by Judge Daniel D. Domenico on 1/7/2025. Text Only Entry (dddlc9, ) (Entered: 01/07/2025) |
| 01/07/2025 | 622 | MINUTE ORDER re <u>528</u> Judgment as to Kimberley Ann Tew. Upon review of the Declaration of Victim Losses and supporting documentation submitted by victim National Air Cargo, and consistent with the judgment imposed in the case of codefendant Jonathan K. Yioulos, the Court finds the restitution owed in relation to victim National Air Cargo is $5,023,878.50. Furthermore, the restitution payees are the insurance companies that reimbursed National Air Cargo, pursuant to 18 U.S.C. § 3664(j). Assistant United States Attorney Bryan David Fields and the defendants attorney, David Scott Kaplan, have advised the Probation Office that they have no objection to the judgment being amended to update the restitution order as detailed above. Additionally, the judgment shall be amended to reflect forfeiture includes a money judgment in the amount of proceeds obtained by the scheme and by the defendants, $5,023,878.50, consistent with the Courts finding during the forfeiture hearing on August 8, 2024. Therefore, the Court ORDERS the U.S. Probation Office to prepare an Amended Judgment reflecting amendments to the restitution and forfeiture orders, as detailed above. SO ORDERED by Judge Daniel D. Domenico on 1/7/2025. Text Only Entry (dddlc9, ) (Entered: 01/07/2025) |
| 01/07/2025 | 623 | ORDER as to Michael Aaron Tew.<br><br>On 1/7/2025, my chambers received an email from Defendant Michael Tew requesting that I consider an attached motion to extend his self–surrender date. Any documents that require the Court's attention must be filed on the record as motions or other appropriate filings. The parties in this case are ordered not to email my chambers, and any such communications will be ignored in the future.<br><br>In addition, Mr. Tew is currently represented by counsel, and all motions and papers on his behalf must be filed electronically by his attorney. His attorney may, if Mr. |

|  |  | Tew wishes, file a motion seeking appropriate relief after conferring with Mr. Tew. |
|  |  | SO ORDERED by Judge Daniel D. Domenico on 1/7/2025. Text Only Entry (dddlc1, ) (Entered: 01/07/2025) |
| 01/08/2025 | 624 | AMENDED JUDGMENT as to Michael Aaron Tew (1), Count(s) 1s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10.; Count(s) 2s−40s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10.; Count(s) 41s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10.; Count(s) 42s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10.; Count(s) 44s−56s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10.; Count(s) 57s−60s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10. Entered by Judge Daniel D. Domenico on 1/8/2025. (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 625 | AMENDED STATEMENT OF REASONS as to Michael Aaron Tew (1). (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 626 | REASON FOR AMENDMENT as to Michael Aaron Tew (1). (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 627 | AMENDED JUDGMENT as to Kimberley Ann Tew (2), Count(s) 1, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 16, Dismissed by Court during jury trial. Count(s) 21−22, Defendant shall be imprisoned for a total term of forty−eight (48) months on |

|  |  | each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 25−26, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 31−32, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 41, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 43−44, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 47, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 48, Defendant was found not guilty by jury at trial.; Count(s) 56, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. Entered by Judge Daniel D. Domenico on 1/8/2025. (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 628 | AMENDED STATEMENT OF REASONS as to Kimberley Ann Tew (2). (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 629 | REASON FOR AMENDMENT as to Kimberley Ann Tew (2). (rkeec) (Entered: 01/08/2025) |
| 01/13/2025 | 630 | TRANSCRIPT of Motion Hearing as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos held on March 18, 2021 before Judge Domenico. Pages: 1−27.<br><br> **NOTICE − REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (nrich) (Entered: 01/13/2025) |
| 01/13/2025 | 631 | NOTICE OF ATTORNEY APPEARANCE: Zachary Lee Newland appearing for Michael Aaron TewAttorney Zachary Lee Newland added to party Michael Aaron Tew(pty:dft) (Newland, Zachary) (Entered: 01/13/2025) |
| 01/13/2025 | 632 | NOTICE OF ATTORNEY APPEARANCE: David C. Boyer, Jr appearing for |

| | | Michael Aaron TewAttorney David C. Boyer, Jr added to party Michael Aaron Tew(pty:dft) (Boyer, David) (Entered: 01/13/2025) |
|---|---|---|
| 01/15/2025 | 633 | ORDER to Surrender as to Jonathan K. Yioulos (3). Defendant to surrender to Lewisburg Satellite Camp on January 21, 2025, by 12:00 pm. and will travel at their own expense. SO ORDERED by Judge Daniel D. Domenico on 1/15/2025. (rkeec) (Entered: 01/15/2025) |
| 01/16/2025 | 634 | TRANSCRIPT of Trial Preparation Conference as to Michael Aaron Tew held on January 30, 2024 before Judge Domenico. Pages: 1–100.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/16/2025 | 635 | TRANSCRIPT of Evidentiary hearing as to Michael Aaron Tew held on April 22, 2024 before Judge Domenico. Pages: 1–100.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/16/2025 | 636 | TRANSCRIPT of Sentencing hearing as to Michael Aaron Tew held on November 12, 2024 before Judge Domenico. Pages: 1–31.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |

| 01/16/2025 | 637 | TRANSCRIPT of Motion to Detain hearing as to Kimberley Ann Tew held on April 22, 2024 before Judge Domenico. Pages: 1–100. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** <br><br> Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/16/2025 | 638 | TRANSCRIPT of Sentencing hearing for the codefendant as to Kimberley Ann Tew held on 1–31 before Judge Domenico. Pages: 1–31. <br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** <br><br> Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/17/2025 | 639 | RESTRICTED DOCUMENT – Level 2: Defendant's Motion to Extend Self–Surrender Date as to Michael Aaron Tew. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Proposed Order (PDF Only))(Boyer, David) Modified to change event type to a Motion on 1/21/2025 (ggill, ). (Entered: 01/17/2025) |
| 01/17/2025 | 640 | MOTION for Leave to Restrict by Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Boyer, David) (Entered: 01/17/2025) |
| 01/17/2025 | 641 | RESTRICTED DOCUMENT – Level 2: Brief in Support of Motion to Restrict Document No. 639 as to Michael Aaron Tew. (Boyer, David) Modified to update text on 1/21/2025 (ggill, ). (Entered: 01/17/2025) |
| 01/17/2025 | 642 | ORDER granting 640 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Dkt. 639 and 641 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 1/17/2025. Text Only Entry (dddlc9, ) (Entered: 01/17/2025) |
| 01/17/2025 | 643 | ORDER granting in part Mr. Tew's 639 Motion to Extend Self–Surrender Date. While the Court understands and regrets the extremely difficult situation Mr. Tew's family members are in, that is one of the many unfortunate consequences of Mr. and Mrs. Tew's criminal behavior. Recognizing the complications presented in the motion, Mr. Tew's self–surrender date is extended to March 1, 2025. Otherwise, the motion is denied. SO ORDERED by Judge Daniel D. Domenico on 1/17/2025. Text Only Entry (dddlc9, ) (Entered: 01/17/2025) |

| 01/21/2025 | 644 | NOTICE of Replacement due to Non–Compliant Files re 167 MOTION to Withdraw as Attorney by Michael Hassard, 151 Notice of Attorney Appearance – Defendant, 157 Notice of Attorney Appearance – Defendant, 290 Notice of Attorney Appearance – Defendant, 163 Restricted Document – Level 3, 165 Third MOTION to Continue , [204–6] Attachment to Response in Opposition,, 166 MOTION to Withdraw as Attorney by Xuan Zhou, 162 MOTION to Withdraw as Attorney by Tor Ekeland : The aforelisted documents have been converted to PDF/A standard and replaced on the docket due to a non–compliant PDF file type which prevents creation of a Record on Appeal. (lrobe) (Entered: 01/21/2025) |

AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| Michael Aaron Tew | ) | Case No. |
| | ) | 20-mj-00088-KLM |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, and state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ August 2018 to present _____ in the county of _____ Denver _____ in the

_____ State and _____ District of _____ Colorado _____ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C 1956(h) | Conspiracy to Commit Money Laundering |

This criminal complaint is based on these facts:

See Affidavit attached hereto and hereby incorporated by reference.

☑ Continued on the attached sheet.

s/ Lisa Palmer

*Complainant's signature*

Lisa Palmer, SA  IRS-CI

*Printed name and title*

Sworn to before me and ☐ signed in my presence. ☑ submitted, attested to, and acknowledged by reliable electronic means.

Date: ____ **08 Jul 2020** ____

*Judge's signature*

City and state: _____ Denver, Colorado _____

Kristen L. Mix
United States Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lisa Palmer, Special Agent with Internal Revenue Service-Criminal Investigation (IRS-CI), Denver Field Office, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief:

1.      I am a Special Agent with the Department of Treasury, Internal Revenue Service-Criminal Investigation (IRS-CI) since 2017 with primary investigative responsibilities involving criminal matters such as tax evasion and money laundering. I have participated in several fraud investigations including investigations involving bank fraud, healthcare fraud, and money laundering. Prior to my employment with the IRS, I spent approximately two years with Charles Schwab first as an IT Audit Senior Specialist and then as an IT Audit Manager. Prior to working for Charles Schwab I worked for three years with Ernst and Young in the IT Risk Assurance practice. I have a Master of Accounting degree from the University of New Mexico.

2.      This affidavit is being submitted in support of a criminal complaint charging the following defendant with the following offense:

        a.  Michael Aaron Tew with a violation of Title 18, United States Code Section 1956(h) [Conspiracy to Commit Money Laundering].

3.      Due to the limited purpose of this affidavit, I have not included each and every fact known concerning this investigation, although to the best of my information, knowledge, and belief, I have not omitted any material fact that undermines the statements and conclusions herein.  I have set forth only the facts I believe are necessary to establish probable cause to show that TEW committed the offense described herein.

### Summary of the Investigation

4.      The Federal Bureau of Investigation (FBI) and Internal Revenue Service – Criminal

1

Investigation (IRS-CI) and other law enforcement agencies have been investigating Tew and others for fraud and money laundering activities, to include money laundering through the use of various forms of cryptocurrency. Based on my training and experience, cryptocurrency such as Bitcoin are often used to launder proceeds of specified unlawful activities like fraud.

5.  The investigation has revealed that TEW has conspired with others known and unknown to knowingly engage or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity, specifically wire fraud, and to knowingly conduct or attempt to conduct a financial transaction designed to conceal or disguise the nature, location, source, ownership or control of proceeds of the wire fraud.

<u>Background and Probable Cause</u>

6.  During some portion of time between 2015 and September 2018, MICHAEL AARON TEW (TEW) served as a contracted chief financial officer (CFO) for a Florida company named National Air Cargo (NAC). He was a contractor for NAC rather than an employee. Between at least 2015 and present, he has resided in Colorado with his wife Kimberly Tew (nee Ventanen) (K. TEW). During the time TEW served as the contracted CFO for NAC, TEW was not paid directly by NAC for his services. Rather, he billed NAC and was paid by NAC through a single-member LLC, of which he was the only member. The name of that entity was Sand Hill LLC ("Sand Hill") and it was established by TEW in or around July 2012.

7.  In or around September 15, 2018, NAC fired TEW for, *inter alia*, unauthorized use of a corporate credit card. The unauthorized use began in or around June 2018.

8.  Between no later than August 2018 and present, TEW conspired with others known and unknown to engage or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that derived from a scheme to defraud NAC via wire and to

2

knowingly conduct or attempt to conduct a financial transaction designed conceal or disguise the nature, location, source, ownership or control of proceeds of the wire fraud.

9.     After Tew's termination and beginning in or around December 2018 through July 2020, three companies named Global Fuel Logistics (GFL), Aero Maintenance Resources (AMR), and Political Media (PM) tendered invoices to and received payments from NAC in the amount of more than $4 million in the aggregate.  Invoices from these companies referenced purported services such as "[b]usiness [c]onsulting," "fuel modification inspection & research," and "[m]aintenance."  The payments to these three entities were executed through wires or Automated Clearinghouse (ACH) transactions.  Many of the wires and ACH payments from NAC, located at a minimum in Florida and New York, were made into accounts owned and controlled by TEW and, sometimes also by his wife K. TEW, who both reside in Colorado. Some of the accounts were business accounts belonging to Global Fuel Logistics or GFL, but other accounts were personal accounts belonging to TEW or his wife.  The wires and ACH transactions involve interstate commerce between NAC and TEW and K. TEW.

10.     The invoices from GFL, AMR and PM were fraudulent because they were for goods and services NAC never received.  TEW submitted or caused to be submitted these fraudulent invoices. Moreover, according to NAC, GFL, AMR and PM were not properly approved vendors for NAC. On July 1, 2020, NAC's co-owner Christopher Alf advised that he was unaware of the fact of payments being directed to accounts either directly owned by TEW and K. TEW, or indirectly controlled by them.  That same day, Alf also stated that he was unaware at the time the payments were being made about the total amount of payments to these entities.  The first payment to one of these three entities was made in or around December 2018 and the most recent payment was made by NAC on or around June 30, 2020.  These are the payments to GFL, AMR, and PM known at

3

this time. There are additional fraudulent payments to other entities for the benefit of TEW and/or his wife beyond the three entities identified above as well as additional payments to the three entities listed.

11.     On July 1, 2020, the co-owner of NAC, Christopher Alf, and the Director of Accounting, Abby Schwartz, also both advised that TEW's contractor agreement was terminated by NAC in or around September 2018 after Schwartz, with the input and assistance of others, determined that charges made by TEW on a corporate American Express card were fraudulent. The charges reflected the unauthorized purchase of gift cards by TEW and K. TEW, and served no legitimate business purpose for NAC. Alf and Schwartz further advised that, since TEW's September 15, 2018 termination, NAC has had no further legitimate business dealings or contracts with TEW or K. TEW.

12.     I interviewed Jonathan Yiolous, NAC's now former Director of Finance and Controller, on July 7 and 8, 2020. Based on the investigation to date, this fraud began while TEW was still employed at NAC. In approximately summer 2018, TEW requested that then-Director of Finance for NAC, Yioulos, pay an invoice for a company named 5530 Jessamine Development LLC ("Jessamine"). Mr. Yioulos processed that payment, later learning from TEW that the payment was fraudulent as Jessamine had not provided services to NAC, or at least not in the amount claimed.

13.     According to Mr. Yioulos, TEW, and at times his wife as well, used the fact that he had previously paid a fraudulent invoice to Jessamine as leverage for him to continue to process fraudulent invoices, even after TEW's employment at NAC was terminated. Mr. Yioulos stated that TEW and his wife threatened to alert NAC about Mr. Yioulos's prior payment of fraudulent invoices and that such disclosure could threaten Mr. Yioulos's continued employment. At one point in time, K. TEW contacted Mr. Yioulos's now ex-wife electronically which Mr. Yioulos

4

understood as a threat so that he would continue to pay the fraudulent invoices.  Mr. Yioulos also

stated that while he exchanged various cryptocurrency with TEW and/or K. TEW at various points

during this scheme, he only retained a few Bitcoin for his own personal benefit.  Similarly, Mr.

Yioulos stated that TEW and/or his wife K. TEW offered him season tickets to the Buffalo Bills

for his assistance with the execution of this fraud, but he declined as he already had season tickets.

14.     It was part of the conspiracy that different maneuvers would be undertaken to evade

detection of the payment of the fraudulent invoices by NAC.  TEW took steps or caused steps to

be taken to make it difficult to ascertain that payments being tendered to GFL, AMR, and/or PM

were going to him, either directly or indirectly for his benefit.  For TEW's benefit, Mr. Yioulos

also took multiple steps in the processing and approval of the payments to evade detection by

anyone at NAC.

15.     Yioulos and TEW, who was sometimes accompanied by his wife, communicated about the

fraud by phone call and text message.  Mr. Yioulos stated that TEW used the phone numbers 917-

685-1312 and 917-669-7473 interchangeably to communicate with him from at least June 2018 to

present.  According to Mr. Yioulos, TEW discussed with him how to execute the fraud, to include

the amount reflected on the invoices and the timing of subsequent payments.  Mr. Yioulos stated

that early to mid-2019, he communicated to TEW that one of the company's names in which

fraudulent invoices were tendered, "Political Media," may arouse detection at NAC because the

name of that company did not clearly align with the work of NAC, which, *inter alia*, provides

freight forwarding solutions through charter and airlift operations, often to the United States

Department of Defense.  Subsequent to that conversation, TEW began submitting fraudulent

invoices in the names of GFL (Global Fuel Logistics) and AMR (Aero Maintenance Resources).

16.     At some point after 2016, Mr. Yioulos assumed the role of Controller but maintained his

5

responsibilities as the Director of Finance. He was TEW's point of contact at NAC between late

2018 and present. He was terminated by NAC on July 7, 2020.

17.     Based on our investigation to date, it was part of the conspiracy that TEW and his wife K.

TEW maintained a complex and ever-revolving network of bank accounts into which the NAC

funds were deposited. These proceeds were largely deposited into accounts that TEW jointly

controlled or otherwise had access to. Once the NAC funds were deposited, in order to launder

those proceeds from the wire fraud, the NAC funds, in large part or in their entirety, were either

quickly withdrawn in cash or otherwise wired or transferred to other accounts and often,

ultimately, into various cryptocurrency exchanges. These amounts were often in excess of

$10,000, and on occasion approached amounts like $100,000. TEW transferred the victim

proceeds or caused those proceeds to be transferred or withdrawn. Many of the cash amounts

withdrawn, often with multiple cash withdrawals a day by TEW and separately by K. TEW, were

then deposited into Bitcoin ATMs like those operated by Digital Vending Solutions d/b/a

XBTeller. Often in an attempt to evade detection, TEW made or caused to be made multiple

withdrawals and deposits into Bitcoin ATMs in one day in lower dollar amounts.

18.     An August/September 2019 transaction provides an example of how this conspiracy

operated. On August 29, 2019, the email account accounting@globalfuel.co sent an email

containing three invoices to Jonathan Yioulos's email address at National Air Cargo,

jyioulos@nationalaircargo.com. One of these three invoices, Invoice 1023, was also dated August

29, 2019, and demanded $90,000.00 for the purported service of "Trailing Edge Flap Maintenance

Review." The invoice stated that a 50% deposit was due immediately. Mr. Yioulos advised that

payment for this invoice was split into two $45,000 payments. Based on his relationship with

TEW, Mr. Yioulos, as he had done before, caused two ACH transfers to tender those two

6

payments.  One ACH transfer for $45,000 was conducted on or around August 26, 2019, and the

other transfer for $45,000 was conducted on or around September 3, 2019.  Mr. Yioulos advised

that it was not unusual to submit payment on an invoice even before the invoice was received as

was the case with the first ACH transfer here on August 26, 2019.   TEW communicated to Mr.

Yioulos what routing and account numbers to direct those ACH transfers to.  Based on that

instruction, on September 3, 2019, Mr. Yioulos submitted or caused to be submitted an ACH

payment of $45,000 from a Signature Bank account ending in 5545, a NAC account, via routing

number ABA 256074974.  Mr. Yioulos directed those $45,000 of proceeds as part of the wire

fraud to a Navy Federal Credit Union (NFCU) account ending in 5336, and Mr. Yioulos provided

the name Global Fuel Logistics as the recipient or destination for this ACH transfer.  TEW was

the sole owner of the NFCU account ending in 5336.

19.     The next day, on September 4, 2019, TEW transferred or caused to be transferred $45,000

from the NFCU checking account ending in 5336.  Prior to the transfer of $45,000 initiated by Mr.

Yioulos on September 3, 2019, the balance in the NFCU account ending in 5336 was no more than

approximately $1236.42.  The balance immediately after the transfer of $45,000 out of the NFCU

account ending in 5336 was no more than approximately $1236.42.  The $45,000 that was

transferred out of the NFCU account ending in 5336 was routed to a different account at NFCU

with number 7085338486, a joint checking account held by TEW and his wife K. TEW.  Over the

next two days, the funds were then split into various pieces with some being routed for example

to Google Payments, others being routed to the Wynn Hotel, and withdrawal of $19,000 in cash

over two separate transactions, $10,000 and $9,000, respectively.

20.     Mr. Yioulos was working and operating out of NAC's New York location, NAC was itself

located in Florida and New York, while TEW and K. TEW were accessing their bank accounts in

Colorado. These wire and ACH transfers, and the instructions to effectuate the transfers, involved interstate commerce.

21.     I know through training and experience that persons who seek to "clean" proceeds of illegal activity use digital currency, such as Bitcoin, to complete the transactions. The digital currency gives the vendor and customer a perceived sense of anonymity. However, before customers can use the proceeds, to, for example, make a purchase on an online marketplace, they must first convert their fiat currency, such as the American dollar, into a digital or cryptocurrency accepted on the online marketplace.

22.     Based on my training and experience investigating crimes involving cryptocurrency and money laundering, an exchange of Bitcoin for fiat currency, in either direction, constitutes a financial transaction involving the movement of funds by wire or other means or otherwise affects interstate commerce because a fiat currency for Bitcoin exchange, in either direction, involves one or more monetary instruments.

23.     I, Lisa Palmer, being duly sworn according to law, depose and say the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information, and belief.

                                    _s/ Lisa Palmer_____
                                    Lisa Palmer, IRS-CI Special Agent

Sworn before me by reliable electronic means this 8th day of July, 2020.

The Honorable Kristen L. Mix
United States Magistrate Judge
District of Colorado


**Affidavit reviewed and submitted by Assistant United States Attorney Hetal J. Doshi.**

8

DEFENDANT:    MICHAEL AARON TEW

YOB:    **1979**

COMPLAINT FILED?    ____X__ Yes    ____ ___ No

If Yes, MAGISTRATE CASE NUMBER_____

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT?  ___ Yes  ___X_____ No
If No, a new warrant is required

OFFENSE(S):    Count 1:  18 U.S.C. 1956(h) (Conspiracy to Commit Money Laundering)

LOCATION OF OFFENSE:    Denver County, Colorado

PENALTY:    Count 1:  NMT 20 years' imprisonment; NMT a $500,000 fine or 2 times the amount laundered, or both imprisonment and a fine; NMT 3 years' supervised release, and a $100 special assessment fee.

AGENT:    FBI SA Sarah Anderson
IRS-CI SA Lisa Palmer

AUTHORIZED BY:    Assistant U.S. Attorney Hetal J. Doshi

ESTIMATED TIME OF TRIAL:

___ five days or less    ___X_ over five days    _____ other

THE GOVERNMENT

X_____ will seek detention in this case based on 18 U.S.C. § 3142(f)(2)

_____ will not seek detention

The statutory presumption of detention **is not** applicable to this defendant.

1

AO 442 (Rev. 01/09) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the

District of Colorado

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| Michael Aaron Tew | ) |
| | ) |
| _____ | ) |
| *Defendant* | |

Case No.    20-mj-00088-KLM

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    Michael Aaron Tew                                                      ,

who is accused of an offense or violation based on the following document filed with the court:

❒ Indictment     ❒ Superseding Indictment     ❒ Information     ❒ Superseding Information     ☑ Complaint
❒ Probation Violation Petition     ❒ Supervised Release Violation Petition     ❒ Violation Notice     ❒ Order of the Court

This offense is briefly described as follows:
Conspiracy to Commit Money Laundering in violation of 18 U.S.C 1956(h)

Date:    *08 Jul 2020*

_____
*Issuing officer's signature*

City and state:    Denver, Colorado

Kristen L. Mix
United States Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____ |
| at *(city and state)* _____ . |
| Date: _____     _____ |
| *Arresting officer's signature* |
| _____ |
| *Printed name and title* |

AO 442 (Rev 01/09) Arrest Warrant

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

# UNITED STATES DISTRICT COURT

for the

District of Colorado

2020 JUL 15 AM 9: 24

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

| United States of America | ) |
|---|---|
| v. | ) |
| Michael Aaron Tew | ) Case No. |
| | ) |
| Defendant | ) |

## ARREST WARRANT

To:     Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*     Michael Aaron Tew

who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☑ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of the Court

This offense is briefly described as follows:

Conspiracy to Commit Money Laundering in violation of 18 U.S.C 1956(h)

Date:     08 Jul 2020

*Issuing officer's signature*

City and state:     Denver, Colorado

Kristen L. Mix
United States Magistrate Judge
*Printed name and title*

| Return |
|---|
| This warrant was received on *(date)* 07/08/2020, and the person was arrested on *(date)* 07/08/2020 at *(city and state)* Denver, Colorado. |
| Date: 07/08/2020 |

*Arresting officer's signature*

SA Sarah J. Anderson
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

CASE NO. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

MICHAEL AARON TEW,

      Defendant.

---

## NOTICE OF DISPOSITION
## AND REQUEST FOR CHANGE OF PLEA HEARING VIA VTC
## TO BE HELD BETWEEN OCTOBER 19TH AND OCTOBER 26TH

---

    Defendant, Michael Aaron Tew, by and through counsel, Edward R. Harris, Assistant Federal Public Defender, hereby notifies this Honorable Court that a disposition has been reached in this case with the government. The parties are requesting permission to contact the Court to schedule a change of plea hearing via video teleconference. In support of this request, Defendant states:

    1.    Mr. Tew moves this Court to hold his Change of Plea Hearing via video or telephone conference pursuant to Section 15002(b) of the CARES Act and General Order 2020-4: CARES ACT FINDINGS REGARDING CRIMINAL PROCEEDINGS.

    2.    Section 15002(b)(2) of the CARES Act allows a court to conduct a felony plea hearing pursuant to Federal Rule of Criminal Procedure 11 by video conference, or telephone conference if video conferencing is not reasonable available, so long as the defendant consents and three criteria are met:

1) The Judicial Conference of the United States finds that emergency conditions due to the national emergency declared by the President under the National Emergencies Act (50 U.S.C. 1601 et seq.) with respect to the Coronavirus Disease 2019 (COVID–19) will materially affect the functioning of either the Federal courts generally or a particular district court of the United States;

2) the chief judge of a district court […] specifically finds […] that felony pleas under Rule 11 of the Federal Rules of Criminal Procedure […] cannot be conducted in person without seriously jeopardizing public health and safety; and

3) the district judge in a particular case finds for specific reasons that the plea […] in that case cannot be further delayed without serious harm to the interests of justice, the plea […] in that case may be conducted by video teleconference, or by telephone conference if video teleconferencing is not reasonably available.[1]

All of these criteria have been met.

3.    First, on March 29, 2020, the Judicial Conference, pursuant to Section 15002(b) of the CARES Act, made a finding that "emergency conditions due to the national emergency declared by the President with respect to COVID-19 will materially affect the functioning of the federal courts generally ...". [2]   Under the CARES Act, this finding allows chief district judges, under certain circumstances and with the consent of the defendant, to temporarily authorize the use of video or telephone conferencing for certain criminal proceedings during the COVID-19 national emergency.[3]

---

[1] CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat 28, Section 15002(b)(2).

[2] "Judiciary Authorizes Video/Audio Access During COVID-19 Pandemic", United States Courts, March 31, 2020, https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic?utm_campaign=usc-news&utm_medium=email&utm_source=govdelivery (last accessed on April 6, 2020).
[3] Id.

2

4.   Second, on April 6, 2020, the Chief Judge of the District of Colorado
issued General Order 2020-4: CARES ACT FINDINGS REGARDING CRIMINAL
PROCEEDINGS, which "specifically finds […] that felony pleas under Rule 11 of the
Federal Rules of Criminal Procedure […] cannot be conducted in person without
seriously jeopardizing public health and safety".[4]

5.   Third, in this case, there are "specific reasons that the plea […] cannot
be further delayed without serious harm to the interests of justice --"  public policy
and a pending grand jury investigation.

6.   The COVID pandemic shows no sign of abating soon.   There is no
vaccine.  Case numbers are rising.  As a public policy matter, it is unrealistic to expect
that courts can simply continue change of plea hearings indefinitely and not be
bogged down in the future when the crisis ends.

7.   Beyond this public policy issue, this case is proceeding by information.
There is an ongoing empaneled grand jury and the timeline for this plea would permit
the government to proceed with the plea without seeking an indictment of Mr. Tew.
This pre-indictment disposition is facilitated by a plea in the near term and precluded
by a lengthy continuance.  Mr. Tew benefits from not delaying the plea.

8.   General Order 2020-4 finds that felony plea hearings "may be conducted
by video teleconference, or by telephone conference if video teleconferencing is not

_____

[4] General Order 2020-4: CARES ACT FINDINGS REGARDING CRIMINAL
PROCEEDINGS (D. Colo. April 6, 2020) (Brimmer, C.J.).

3

reasonably available."[5]  The District of Colorado has already established a procedure

for conducting other types of hearings through telephone or video conference so Mr.

Tew's  Change of Plea hearing can be conducted in the same way.

9.     The parties seek a Change of Plea hearing the week of October 19th or

no later than October 27th.

10.     Finally, with Mr. Tew's voluntary consent, this Court possesses the

authority to conduct his change of plea hearing without his physical presence in the

courtroom.[6]  Undersigned counsel has discussed this matter with Mr. Tew, and he

has consented to voluntarily waive his right to be physically present at his Change of

Plea Hearing, opting instead to appear by telephone or videoconference.  Accordingly,

the defense respectfully asks this Court to issue an order authorizing Mr. Tew to

attend the Change of Plea Hearing by video or teleconference.

Respectfully Submitted,

VIRGINIA L. GRADY
Federal Public Defender

s/ Edward R. Harris
Edward R. Harris
Assistant Federal Public Defender
633 17th Street, Suite 1000
Denver, CO  80202
Telephone:  (303) 294-7002
FAX:  (303) 294-1192
Edward_Harris@fd.org
Attorney for Defendant

---

[5] General Order 2020-4: CARES ACT FINDINGS REGARDING CRIMINAL
PROCEEDINGS (D. Colo. April 6, 2020) (Brimmer, C.J.).  *See also* CORONAVIRUS AID,
RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat 28,
Section 15002(b)(2).
[6] CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March
27, 2020, 134 Stat 28, Section 15002(b)(4).

4

## CERTIFICATE OF SERVICE

I hereby certify that on October 1, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Hetal Janak Doshi, Assistant United States Attorney
    Email:  hetal.doshi@usdoj.gov

Matthew T. Kirsch, Assistant United States Attorney
    Email: matthew.kirsch@usdoj.gov


and I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participants in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Michael Aaron Tew           *via U.S. mail*


                    s/ Edward R. Harris
                          Edward R. Harris
                    Assistant Federal Public Defender
                    633 17th Street, Suite 1000
                    Denver, CO  80202
                    Telephone:  (303) 294-7002
                    FAX:  (303) 294-1192
                    Edward_Harris@fd.org
                    Attorney for Defendant

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Case No. 1:120-cr-000305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MICHAEL AARON TEW,

     Defendant.

---

## ORDER SETTING CHANGE OF PLEA HEARING AND AUTHORIZING VTC OR TELEPHONE CONFERENCE

---

This matter is before the court on the notice of disposition filed by Michael Aaron Tew and his motion through Counsel for an Order authorizing the use of video teleconferencing ('VTC"), and/or, if VTC is not reasonably available, telephone conferencing for the change of plea hearing in this matter. For the following reasons, the motion (Doc. 47) is **GRANTED**.

On March 29, 2020, the Judicial Conference of the United States found, pursuant to the CARES Act, that "emergency conditions due to the national emergency declared by the President under the National Emergencies Act, 50 U.S.C. § 1601, et seq., with respect to the Coronavirus Disease 2019 ('COVID-19') have materially affected and will materially affect the functioning of the federal courts generally." On April 6, 2020, Philip A. Brimmer, Chief Judge of the United States District for the District of Colorado, issued District Court General Order 2020-4, finding that emergency conditions due to the COVID-19 pandemic will

materially affect the functioning of the courts within the District of Colorado. Chief Judge Brimmer also found that, pursuant to § 15002(b)(2) of the CARES Act, felony pleas under Rule 11 of the Federal Rules of Criminal Procedure and felony sentencings under Rule 32 of the Federal Rules of Criminal Procedure cannot be conducted in person without seriously jeopardizing public health and safety. Finally, Chief Judge Brimmer recognized that the CARES Act authorizes judges in individual cases to conduct felony guilty pleas or sentencings by VTC, or by telephone conference if VTC is not reasonably available, where that judge finds specific reasons that those cases cannot be further delayed without serious harm to the interest of justice, so long as the defendant consents after consultation with counsel. On April 21, 2020, Chief Judge Brimmer issued District Court General Order 2020-6, extending the terms of General Order 2020-3 through May 29, 2020. On May 21, 2020, Chief Judge Brimmer issued District Court General Order 2020-9, extending the terms of General Order 2020-3 and 2020-6 through June 19, 2020. On July 2, 2020, Chief Judge Brimmer issued District Court General Order 2020-12, extending the terms of General Order 2020-3, 2020-6, and 2020- 9 through September 30, 2020. And on September 29, 2020, Chief Judge Brimmer issued District Court General Order 2020-17, extending the terms of General Order 2020-3, 2020-6, 2020-9, and 2020-12 through December 28, 2020.

Mr. Tew filed a notice of disposition with the Court on October 1, 2020, and requests a change-of-plea hearing be held before October 27th. Given the ongoing disruptions caused by the coronavirus pandemic, and then need for swift and efficient administration of justice, the court concludes that Mr. Tew's change-of-plea cannot be further delayed without serious harm to the interest of justice.

- 2 -

Accordingly, it is **ORDERED** a change-of-plea hearing is set for 10/22/2020 at 10:30 AM before Judge Daniel D. Domenico. Counsel for the parties shall email a courtesy copy of the Plea Agreement and the Statement by Defendant in Advance of Plea of Guilty in the form required by Local Crim. R. 11.1(c)-(d) to Domenico_Chambers@cod.uscourts.gov no later than noon three business days prior to the Change of Plea Hearing. If these documents are not timely submitted, the hearing may be vacated. The original and one copy of these documents shall be delivered to the courtroom deputy at the time of the hearing pursuant to Local Crim. R. 11.1(e). Defense counsel who reviewed and advised Defendant regarding the Plea Agreement must attend the Change of Plea Hearing.

It is further **ORDERED** that, for the specific reasons noted above, the change-of-plea hearing in the above-referenced matter shall be conducted by VTC, or by telephone conference if VTC is not reasonably available. The Court will confirm the Defendant's consent to proceeding in this manner on the record at the hearing. The U.S. Marshal's Service is directed to ensure that the Defendant will be available to participate in the hearing from the detention facility he is being housed at. Counsel are directed to contact Courtroom Deputy Patti Glover at patricia_glover@cod.uscourts.gov no later than three business days before the hearing for instructions on how to proceed.

DATED: October 7, 2020.          BY THE COURT:

_____

Daniel D. Domenico
United States District Judge

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Edward R. Harris (co.ecf@fd.org, edward_harris@fd.org,
erhafpd@gmail.com, juanita_west@fd.org), Hetal Janak Doshi (caseview.ecf@usdoj.gov,
hetal.doshi@usdoj.gov, portia.peter@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Matthew T. Kirsch (caseview.ecf@usdoj.gov,
mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov, usaco.ecfcriminal@usdoj.gov,
veronica.ortiz@usdoj.gov), Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:7814483@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew Order on Motion to Withdraw as
Attorney
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

### Notice of Electronic Filing

The following transaction was entered on 10/21/2020 at 2:20 PM MDT and filed on 10/21/2020

| | |
|---|---|
| **Case Name:** | USA v. Tew |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 55(No document attached) |

**Docket Text:**

**ORDER granting [54] Motion to Withdraw as Attorney. Good cause having been shown, attorney Edward R. Harris is relieved of any further representation in this case. The Clerk of Court is instructed to terminate Mr. Harris as counsel of record, and to remove his name from the electronic certificate of mailing. An attorney from the Criminal Justice Act panel shall be appointed to represent Defendant Michael Aaron Tew. Absent extraordinary circumstances, no further motions to withdraw or motions to substitute counsel will be granted. The court reminds Mr. Tew that counsel is under a duty to provide him prudent and considered advice, even if that advice is not what Mr. Tew hopes to hear. SO ORDERED by Judge Daniel D. Domenico on 10/21/2020. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Edward R. Harris    Edward_Harris@fd.org, Juanita_West@fd.org, co.ecf@fd.org, erhafpd@gmail.com

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov, veronica.ortiz@usdoj.gov

Hetal Janak Doshi    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

# MICHAEL AARON TEW

Honorable Daniel D. Domenico
United States District Court for the District of Colorado
Alfred A. Arraj United States Courthouse
901 19th Street, Courtroom A702
Denver, Colorado 80294-3589

Dear Judge Domenico:

I am writing today to communicate with you that I have terminated my relationship with my attorney, Edward Harris. Mr. Harris has consistently pressured me to sign documents with the threat that he will withdraw if I do not. I told Mr. Harris that I am fearful for my family's security and he refuses to file a motion to help keep this case sealed and protect my family. I also feel that I do not understand my rights in this case, the due process which I am giving up, and any benefits or drawbacks that may occur as it relates to the plea that I am being pressured to sign (pressured by my own attorney).

Further, the plea itself includes misrepresentations of the facts of the case, key issues I brought up with Mr. Harris and to which I was told that the plea is the "Government's version of the facts."

I want to be clear that I am willing to plead and cooperate with the Government as has always been the case. However, I am not comfortable with my representation and wish to terminate my representation prior to my hearing in order to obtain more appropriate counsel.

Sincerely,

Michael Tew

CC: Edward Harris

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Thomas Richard Ward (kalvarado@mswdenver.com,
krodriguez@mswdenver.com, tward@mswdenver.com), Hetal Janak Doshi (caseview.ecf@usdoj.gov,
hetal.doshi@usdoj.gov, portia.peter@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Matthew T. Kirsch (caseview.ecf@usdoj.gov,
mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov, usaco.ecfcriminal@usdoj.gov,
veronica.ortiz@usdoj.gov), Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, justin.kellogg@usdoj.gov,
katrina.crouse@usdoj.gov, royce.namoca@usdoj.gov, sean.oman@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:7816667@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew Minute Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 10/22/2020 at 2:35 PM MDT and filed on 10/22/2020

| | |
|---|---|
| **Case Name:** | USA v. Tew |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 59(No document attached) |

**Docket Text:**
**MINUTE ORDER re: [47] notice of disposition. Defendant shall file a status report regarding the status of his plea and any other issues he wishes to bring to the court's attention no later than 11/12/2020. SO ORDERED by Judge Daniel D. Domenico on 10/22/2020. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov, veronica.ortiz@usdoj.gov

Thomas Richard Ward     tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Thomas Richard Ward (kalvarado@mswdenver.com,
krodriguez@mswdenver.com, tward@mswdenver.com), Hetal Janak Doshi (caseview.ecf@usdoj.gov,
hetal.doshi@usdoj.gov, portia.peter@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Matthew T. Kirsch (caseview.ecf@usdoj.gov,
mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov, usaco.ecfcriminal@usdoj.gov,
veronica.ortiz@usdoj.gov), Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, justin.kellogg@usdoj.gov,
katrina.crouse@usdoj.gov, royce.namoca@usdoj.gov, sean.oman@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:7848788@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew Minute Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 11/13/2020 at 9:55 AM MST and filed on 11/13/2020

| | |
|---|---|
| **Case Name:** | USA v. Tew |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 69(No document attached) |

**Docket Text:**
 **MINUTE ORDER re Status Report [67]. Defendant shall file a status report regarding the status of his plea and any other issues he wishes to bring to the court's attention no later than 12/10/2020. SO ORDERED by Judge Daniel D. Domenico on 11/13/2020. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov, veronica.ortiz@usdoj.gov

Thomas Richard Ward    tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Hetal Janak Doshi (caseview.ecf@usdoj.gov, hetal.doshi@usdoj.gov,
portia.peter@usdoj.gov, usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Matthew T.
Kirsch (caseview.ecf@usdoj.gov, mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov,
usaco.ecfcriminal@usdoj.gov, veronica.ortiz@usdoj.gov), Thomas Richard Ward
(kalvarado@mswdenver.com, krodriguez@mswdenver.com, tward@mswdenver.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, justin.kellogg@usdoj.gov,
katrina.crouse@usdoj.gov, royce.namoca@usdoj.gov, sean.oman@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:7907196@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew Minute Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 12/28/2020 at 11:11 AM MST and filed on 12/28/2020

| | |
|---|---|
| **Case Name:** | USA v. Tew |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 76(No document attached) |

**Docket Text:**
 **Order regarding status report [75] filed by Michael Aaron Tew. In light of Mr. Tew's withdrawal of his notice of disposition, unless the parties file a motion to the contrary, the court will remove the restriction on the information on 1/4/21. SO ORDERED by Judge Daniel D. Domenico on 12/28/2020. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov, veronica.ortiz@usdoj.gov

Thomas Richard Ward     tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No.: 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1. **MICHAEL AARON TEW**;

    2. **KIMBERLEY ANN TEW**; and
       a/k/a Kimberley Vertanen

    3. **JONATHAN K. YIOULOS**,

    **Defendants.**

---

## INDICTMENT

---

The Grand Jury charges that:

### GENERAL ALLEGATIONS

1.    At all times relevant to the charges contained in this Indictment, MICHAEL AARON TEW and KIMBERLEY ANN TEW, were married and resided together in the State and District of Colorado. KIMBERLEY ANN TEW's maiden name is Kimberley Vertanen.

2.    At all times relevant to the charges contained in this Indictment, N.A.C., Inc. ("NAC") is a company headquartered in Florida and with an office in New York. NAC operates in the United States and is affiliated with the company N.A.C. Group, Inc., d/b/a/ N.A., which provides freight forwarding solutions, to include by charter and airlift. N.A. is also an airline. N.A.C. Holdings, Inc. ("NAC Holdings") is also one of several affiliates of NAC. In this

1

Indictment, NAC and its affiliates and subsidiaries are collectively referred to as "the NAC Entities."

3.  Between a time unknown to the grand jury but no later than late 2015 and until in or around September 2018, MICHAEL AARON TEW was a contracted Chief Financial Officer (CFO) for the NAC Entities.

4.  In or around February 2012, the entity Sand Hill, LLC was established in the State of New York.  In or around November 2018, Sand Hill, LLC was registered as a foreign limited liability company in the State of Colorado.  The address of Sand Hill, LLC's principal office was listed in the registration to the State of Colorado as 3222 E. 1st Ave., Denver, CO 80206.  This address corresponds to a residential apartment building.  Between at least 2015 and July 2020, MICHAEL AARON TEW and KIMBERLEY ANN TEW resided in at least two different apartment units at this address.

5.  The NAC Entities paid for MICHAEL AARON TEW's contracted professional services.  Payments for those services were made to Sand Hill, LLC.  Between 2015 and 2018, the NAC Entities paid Sand Hill, LLC at least approximately $800,000 for MICHAEL AARON TEW's services.

6.  MICHAEL AARON TEW was terminated by the NAC Entities in or around September 2018.

7.  At various points in time starting in or around 2016, KIMBERLEY ANN TEW also provided intermittent contractor services to the NAC Entities.  She did not provide contracted services to the NAC Entities after on or around approximately September 2018.

8.  Throughout the time period described by this Indictment and until in or around July 2020, JONATHAN K. YIOULOS was an employee of the NAC Entities.  In or around July 2018, he served as the Director of Finance, and at some point in time between 2018 and July 2020,

YIOULOS assumed the role of Controller but continued his responsibilities as the Director of Finance. YIOULOS's employment was terminated by the NAC Entities on or around July 7, 2020.

## COUNT 1

9. The allegations contained in paragraphs 1 through 8 are realleged and incorporated as if fully set forth in this paragraph.

10. Beginning no later than June 2018 and continuing until about July 2020, in the State and District of Colorado, and elsewhere,

<div align="center">

**MICHAEL AARON TEW,**
**KIMBERLEY ANN TEW,**
and
**JONATHAN K. YIOULOS,**

</div>

did knowingly combine, conspire, confederate and agree together, and acted interdependently to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

It was part of the conspiracy that:

11. The defendants caused the NAC entities to make payments for services it never received. The defendants submitted or caused to be submitted to the NAC entities fraudulent invoices for payment. These invoices contained material false pretenses and representations about the fact of the provision of services by various entities to the NAC entities and/or the amount of those services. The defendants submitted or caused to be submitted these fraudulent invoices to YIOULOS. YIOULOS approved and authorized many or all of the payments of these fraudulent invoices. On some occasions, as part of the conspiracy, YIOULOS authorized and executed payments to bank accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW before the fraudulent invoice justifying that payment was tendered to the NAC Entities. YIOULOS's approval and authorization of payments, whether

<div align="center">3</div>

before or after a fraudulent invoice was submitted to him, caused the NAC Entities to pay MICHAEL AARON TEW, KIMBERLEY ANN TEW, and others associated with MICHAEL AARON TEW or KIMBERLEY ANN TEW more than $5,000,000 for services the NAC entities did not receive.

12. YIOULOS caused the execution of fraudulent payments on behalf of the NAC Entities through automated clearinghouse (ACH) transactions or wire transfers. These payments were directed to multiple bank accounts, many of which were directly controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW.

13. It was part of the conspiracy that these invoices were submitted by or on behalf of multiple corporate entities. Four of these entities were operated by or otherwise associated with individuals who were contacts of MICHAEL AARON TEW or KIMBERLEY ANN TEW: H.S. CPAs LLC (HS CPAs); M.C.G., Inc. ("MCG"); 5530 J.D., LLC, ("5530 JD"); and P.M., Inc. ("PM").

14. Beginning in or around July 2019, MICHAEL AARON TEW created and registered another entity, Global Fuel Logistics, Inc. ("GFL") in various states and listed GFL as the vendor on fraudulent invoices submitted to the NAC Entities. GFL had no legitimate business or operations. Beginning in or around September 2019, fraudulent invoices were also submitted on behalf of Aero Maintenance Resources ("AMR"), a so-called "division" of GFL. AMR had no legitimate business or operations.

15. Beginning in or around August 2018, and continuing to approximately in or around July 2020, fraudulent invoices were submitted on behalf of these six entities or divisions—HS CPAs, MCG, 5530 JD, PM, GFL, and AMR— to justify fraudulent payments made by the NAC Entities.

16.     On multiple occasions throughout the conspiracy, YIOULOS was instructed to send payments to a bank account held in the name of Sand Hill, LLC. YIOULOS sometimes used the acronym "SHI LLC" as the recipient payee on the ACH transfers instead of "Sand Hill." SHI LLC does not legally exist in Colorado, Michigan, New York, or Florida.

17.     It was part of the conspiracy that GFL and AMR had indicia of identity that separated those entities from MICHAEL AARON TEW and KIMBERLEY ANN TEW as well as the State of Colorado.  GFL's registration documents to the States of Colorado and Wyoming, listed an address in Michigan belonging to KIMBERLEY ANN TEW's parents.  The email address used to submit invoices on behalf of GFL and AMR, accounting@globalfuel.co, was also an email address that had not been previously used to submit fraudulent invoices to the NAC Entities.   MICHAEL AARON TEW requested and paid for the globalfuel.co domain.

18.     It was further part of the conspiracy that at some point after the fraudulent invoices began to be submitted, MICHAEL AARON TEW, in consultation with YIOULOS, began providing more specific descriptions of the falsely claimed services listed on the invoices in an attempt to demand payment for services that more closely aligned with the work of the NAC Entities.

19.     It was also part of the conspiracy to provide indicia of legitimacy on the fraudulent invoices, including:

    a.  Unique, non-consecutive invoice numbers;

    b.  Listing the company that was purportedly providing services, a description of services and, sometimes, a project name, as well as a due date;

    c.  Sending the invoices from different email addresses;

    d.  Identifying a sum certain, sometimes round numbers and other times specific numbers, that were associated with the purported provision of certain numbers of hours of service or work and which were sometimes reduced by "adjustments;"

    e.   Identifying real bank account information for the entities, even if the entity was not in fact associated with that bank account; and

    f.   Identifying a purported specific person, "Jessica Thompson," as a contact person in the "Accounting Department" at GFL for questions about the invoices.

20.    It was part of the conspiracy that on multiple occasions between no later than August 2018 and July 2020, MICHAEL AARON TEW, and on some occasions, KIMBERLEY ANN TEW, contacted YIOULOS to request, and at times demand, money. YIOULOS agreed to make many of the requested payments. It was also part of the conspiracy that KIMBERLEY ANN TEW and MICHAEL AARON TEW coordinated and consulted on the amount of money to demand from YIOULOS.

21.    It was a part of the conspiracy that YIOULOS advised the defendants about the financial status of the NAC Entities so that the agreed-upon payments connected to the fraudulent invoices did not result in the NAC Entities overdrawing its bank accounts. YIOULOS often authorized payment of the fraudulent invoices in installments or "progress payments." That is, he authorized and approved multiple ACH transfers or wire transfers where each transfer was for an amount less than the total amount of an invoice to try to pay the fraudulent invoices with whatever money was available to the NAC Entities. The defendants accepted partial payments based on what the NAC Entities could afford at any given time during the conspiracy.

22.    It was part of the conspiracy that MICHAEL AARON TEW created new email accounts to send fraudulent invoices.

23.    MICHAEL AARON TEW and KIMBERLEY ANN TEW also maintained multiple bank accounts at multiple financial institutions; some they held in their individual names and at least one was held as a joint account. The fraudulent invoices, and payments authorized by

YIOULOS, went to a variety of these bank accounts.

24.     When a bank holding accounts that received fraudulent payments closed some or all of MICHAEL AARON TEW and/or KIMBERLEY ANN TEW's accounts, MICHAEL AARON TEW and KIMBERLEY ANN TEW then created or caused to be created multiple bank accounts at another bank or credit union.  When a credit union, which held an account that received funds from this fraud, questioned MICHAEL AARON TEW about what appeared to be the payment of corporate funds into personal or individual bank accounts, he switched the type of account from individual to business to facilitate the ongoing receipt of payments from the NAC Entities.

25.     MICHAEL AARON TEW and KIMBERLEY ANN TEW provided YIOULOS with some Bitcoin in connection with this fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-40

26.     The allegations contained in paragraphs 1 through 8 and 11 through 25 are realleged and incorporated as if fully set forth in this paragraph.

27.     Beginning not later than July 2018 and continuing thereafter until about July 2020, in the State and District of Colorado, and elsewhere,

**MICHAEL AARON TEW,**
**KIMBERLEY ANN TEW,**
**and**
**JONATHAN K. YIOULOS**

knowingly devised and intended to devise a scheme to defraud and to obtain money and property from the NAC Entities by means of materially false and fraudulent pretenses, representations, and promises by authorizing and receiving payments from the NAC Entities that MICHAEL AARON TEW, KIMBERLEY ANN TEW, and YIOULOS knew were

fraudulent and were based on or supported by fraudulent invoices reflecting services that had
not been provided to the NAC Entities.

28.     Obtaining money and property from the NAC Entities was an object of the defendants'
scheme to defraud.

29.     It was part of the scheme to use the same manner and means for the conspiracy alleged in
Count 1 and described in paragraphs 11 through 25.

30.     For purposes of executing and attempting to execute the scheme described in paragraphs 11
through 29 above, on or about the dates listed below, defendants **MICHAEL AARON
TEW, KIMBERLEY ANN TEW, and JONATHAN K. YIOULOS**, having devised and
intending to devise the scheme, transmitted and caused to be transmitted by means of wire
communication in interstate commerce writings, signs, and signals, that is, payments reflecting
the transfer of funds in the amounts listed below from the account  listed below as held by
the NAC Entities at Signature Bank to accounts at the banks identified below, which were
controlled by or accessible to MICHAEL AARON TEW or KIMBERLEY ANN TEW, or
otherwise associated with contacts of MICHAEL AARON TEW or KIMBERLEY ANN
TEW:

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 2 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 8, 2018 | $15,000 | ACH transaction from Signature Bank account ending in 5529 to Guaranty Bank and Trust account ending in 7867, held in the name of Michael A. Tew |

8

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 3 | MICHAEL AARON TEW<br><br>JONATHAN YIOULOS | October 26, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 4 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | October 30, 2018 | $10,000 | Wire transfer from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 5 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 20, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 6 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 27, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to BBVA Compass account ending in 0987, held in the name of 5530 Jessamine Development LLC |
| 7 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | December 12, 2018 | $25,000 | ACH transaction from Signature Bank account ending in 5529 to ANB account ending in 3099, held in the name of M.M. |

9

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 8 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 8, 2019 | $15,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 9 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 20, 2019 | $15,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 10 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | March 29, 2019 | $38,000 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 11 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 4, 2019 | $11,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 12 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | July 24, 2019 | $45,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

10

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 13 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 7, 2019 | $31,500.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 14 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 19, 2019 | $9,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 15 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 22, 2019 | $28,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 16 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | September 4, 2019 | $45,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 17 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | September 10, 2019 | $18,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 18 | MICHAEL AARON TEW <br><br> JONATHAN K. YIOULOS | September 18, 2019 | $33,500.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 19 | MICHAEL AARON TEW <br><br> JONATHAN K. YIOULOS | September 26, 2019 | $52,750.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 20 | MICHAEL AARON TEW <br><br> JONATHAN K. YIOULOS | October 17, 2019 | $75,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 21 | MICHAEL AARON TEW <br><br> KIMBERLEY ANN TEW <br><br> JONATHAN K. YIOULOS | October 25, 2019 | $43,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 22 | MICHAEL AARON TEW <br><br> KIMBERLEY ANN TEW <br><br> JONATHAN K. YIOULOS | November 1, 2019 | $49,750.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 23 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 8, 2019 | $40,500.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 24 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 26, 2019 | $43,250.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 25 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | December 3, 2019 | $9,550.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 26 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | December 12, 2019 | $24,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 27 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | December 24, 2019 | $15,200.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 28 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 12, 2020 | $33,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 29 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 20, 2020 | $95,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 30 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | March 3, 2020 | $36,555.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 31 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | March 10, 2020 | $35,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 32 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | March 20, 2020 | $22,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

14

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 33 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 1, 2020 | $73,460.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 34 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 7, 2020 | $36,925.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 35 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 16, 2020 | $68,255.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 36 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 28, 2020 | $46,850.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 37 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | May 6, 2020 | $85,325.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 38 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | May 13, 2020 | $82,422.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 39 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | May 21, 2020 | $78,565.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 40 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | July 3, 2020 | $95,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 3094, held in the name of Global Fuel Logistics Inc, with Michael A. Tew as the listed owner |

All in violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## COUNT 41

31.    The allegations contained in paragraphs 1 through 8, 11 through 25, and 27 to 30 are realleged and incorporated as if fully set forth in this paragraph.

32.    Beginning on a date unknown to the grand jury but not later than in or about June 2018 and

16

continuing to in or about July 2020, in the State and District of Colorado and elsewhere,

<div align="center">

**MICHAEL AARON TEW**
and
**KIMBERLEY ANN TEW**

</div>

did knowingly combine, conspire, confederate and agree with each other and acted interdependently, to commit offenses against the United States in violation of Title 18, United States Code, Section 1957, to wit to knowingly engage and attempt to engage, in monetary transactions, by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, as specified below, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1957.

33. The manner and means used to accomplish the objective of the conspiracy included the following:

   a. MICHAEL AARON TEW and KIMBERLEY ANN TEW transferred or caused to be transferred the unlawfully obtained funds from the wire fraud conspiracy and scheme described above in Paragraphs 11 to 25 and 27 to 29 to other accounts they controlled or operated. It was further part of the conspiracy that MICHAEL AARON TEW and KIMBERLEY ANN TEW engaged in multiple transfers of the unlawfully obtained funds between and among accounts held jointly or individually by each of them.

   b. After engaging in transfers of the proceeds of the unlawfully obtained funds among the various bank accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW, either jointly or individually, MICHAEL AARON TEW and KIMBERLEY ANN TEW each made cash withdrawals of the unlawfully obtained funds through counter withdrawals at banks where the accounts receiving

<div align="center">17</div>

funds from the NAC Entities were held and/or through ATM withdrawals.

c.   After withdrawing the unlawfully obtained funds through counter withdrawals at the bank, wire transfers, or ATM withdrawals, often after internal account transfers, it was part of the conspiracy that MICHAEL AARON TEW and, on some occasions, KIMBERLEY ANN TEW transported cash to multiple Bitcoin ATMs.

d.   On multiple occasions, MICHAEL AARON TEW, often at the direction or instruction of KIMBERLEY ANN TEW, engaged in multiple transactions, one after another, often in the same day, to deposit cash they had withdrawn into a Bitcoin ATM.

e.   When conducting Bitcoin ATM transactions, the user of the ATM is asked to what "wallet" or destination the United States currency should be directed when that currency is converted into Bitcoin. During the conspiracy, on multiple occasions, KIMBERLEY ANN TEW directed MICHAEL AARON TEW on the destination wallet address, or QR code, that the United States currency should be directed to when it was converted into Bitcoin.

f.   It was part of the conspiracy to use proceeds from the fraudulent payments received from the NAC Entities to make purchases like a 2016 Audi vehicle that was used by MICHAEL AARON TEW and KIMBERLEY ANN TEW.

34.   It was also part of the conspiracy that proceeds from the fraudulent payments received from the NAC Entities were used or transferred by MICHAEL AARON TEW and KIMBERLEY ANN TEW during travel to Las Vegas and California.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 42-56

35.   The allegations contained in paragraphs 1 through 8, 11 through 25, 27 through 30, and 32

through 34 are realleged and incorporated as if fully set forth in this paragraph.

36.     On or about the dates identified below, within the District of Colorado and elsewhere, the defendants named in each count below did knowingly engage in and attempt to engage in monetary transactions, specifically deposits, withdrawals, and transfers of funds and monetary instruments, in and affecting interstate commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, specifically, wire fraud, in violation of Title 18 United States Code, Section 1343, knowing that the property involved in such monetary transactions represented the proceeds of some form of unlawful activity, as follows:

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 42 | MICHAEL AARON TEW | June 4, 2019 | $15,000.00 | Withdrawal from Navy Federal Credit Union account ending in 8486, held in the names of MICHAEL AARON TEW and KIMBERLEY TEW |
| 43 | KIMBERLEY ANN TEW | June 11, 2019 | $15,000.00 | Withdrawal from Navy Federal Credit Union account ending in 8486, held in the names of MICHAEL AARON TEW and KIMBERLEY TEW |
| 44 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW | August 28, 2019 | $22,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 45 | MICHAEL AARON TEW | August 29, 2019 | $25,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |

19

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 46 | MICHAEL AARON TEW | September 4, 2019 | $45,000.00 | Transfer from Navy Federal Credit Union account ending in 5336, held in the name of MICHAEL TEW to a Navy Federal Credit Union account ending in 8486, held in the names of MICHAEL AARON TEW and KIMBERLEY TEW |
| 47 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW | September 18, 2019 | $15,000.00 | Wire transfer from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC, to JPMorgan Chase Bank, N.A. account ending in 8260 |
| 48 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW | September 26, 2019 | $20,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 49 | MICHAEL AARON TEW | September 27, 2019 | $20,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 50 | MICHAEL AARON TEW | October 1, 2019 | $20,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 51 | MICHAEL AARON TEW | October 2, 2019 | $12,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

20

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 52 | MICHAEL AARON TEW | November 1, 2019 | $20,611.01 | Transfer from Wells Fargo account ending in 6934, held in the name of Sand Hill LLC to Continental Volkswagen at Comerica Bank account ending in 5559 |
| 53 | MICHAEL AARON TEW | February 20, 2020 | $20,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 54 | MICHAEL AARON TEW | February 21, 2020 | $15,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 55 | MICHAEL AARON TEW | February 27, 2020 | $20,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 56 | MICHAEL AARON TEW  KIMBERLEY ANN TEW | March 3, 2020 | $20,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 57

37.     During the calendar year 2019, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $24,400.  Because of such gross income, he was required by law, on or before July 15, 2020, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled.  Well knowing and believing the foregoing,

the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 58

38.     During the calendar year 2018, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $24,000. Because of such gross income, he was required by law, on or before April 15, 2019, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 59

39.     During the calendar year 2017, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $20,800. Because of such gross income, he was required by law, on or before April 17, 2018, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 60

40.     During the calendar year 2016, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $20,700. Because of such gross

income, he was required by law, on or before April 18, 2017, to make an income tax return to
the Internal Revenue Service stating specifically the items of his gross income and any
deductions and credits to which he was entitled. Well knowing and believing the foregoing,
the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as
required.

All in violation of Title 26, United States Code, Section 7203.

## FORFEITURE ALLEGATION

41.     The allegations contained in Counts 1 through 56 of this Indictment are hereby re-alleged and
incorporated by reference for the purpose of alleging forfeiture pursuant to the provisions of
18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and 18 U.S.C. § 982(a)(1).

42.     Upon conviction of the violations alleged in Counts 1 through 40 of this Indictment involving
the commission of violations of 18 U.S.C. §§ 1349 and 1343, defendants MICHAEL AARON
TEW, KIMBERLEY ANN TEW, and JONATHAN K. YIOULOS shall forfeit to the United
States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United
States Code, Section 2461(c), any and all of the defendants' right, title and interest in all
property constituting and derived from any proceeds the defendant obtained directly and
indirectly as a result of such offense, including, but not limited to: a money judgment in the
amount of proceeds obtained by the scheme and by the defendants.

43.     Upon conviction of the violations alleged in Counts 41 through 56 of this Indictment
involving violations of 18 U.S.C. §§ 1956(h) and 1957, defendants MICHAEL AARON TEW
and KIMBERLEY ANN TEW shall forfeit to the United States, pursuant to Title 18, United
States Code, Section 982(a)(1), any and all of the defendants' right, title and interest in all
property, real or personal, involved in such offense, or all property traceable to such property.

44.     If any of the property described above, as a result of any act or omission of the defendant:

a)   cannot be located upon the exercise of due diligence;
b)   has been transferred or sold to, or deposited with, a third
     party;
c)   has been placed beyond the jurisdiction of the Court;
d)   has been substantially diminished in value; or
e)   has been commingled with other property which
     cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as

incorporated by Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property

of said defendant up to the value of the forfeitable property.

A TRUE BILL:

Ink signature on file in Clerk's Office
FOREPERSON

JASON R. DUNN
United States Attorney

*s/Hetal J. Doshi*
Hetal J. Doshi
Matthew T. Kirsch
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email:  Hetal.Doshi@usdoj.gov
        Matthew.Kirsch@usdoj.gov
        *Attorneys for the United States*

24

DEFENDANT:    MICHAEL AARON TEW

YOB:    **1979**

COMPLAINT    ____X__ Yes    ____ ___ No
FILED?

If Yes, MAGISTRATE CASE NUMBER_____

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT?  _X__ Yes   _____ No
If No, a new warrant is required

OFFENSE(S):    Count 1:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Counts 2-40:  18 U.S.C. § 1343 (Wire Fraud)

Count 41:  18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering)

Counts 42, 44-56:  18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

Counts 57-60:  26 U.S.C. § 7203 (Willful Failure to File Tax Return)

LOCATION OF    Denver County, Colorado
OFFENSE:

PENALTY:    Count 1:  18 U.S.C. § 1349
NMT 20 years' imprisonment; NMT a $250,000 fine or two times gain or loss, whichever is greater, or both imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment fee.

Counts 2-40:  18 U.S.C. § 1343
For each count:  NMT 20 years' imprisonment, NMT a $250,000 fine or two times gain or loss, whichever is greater, or both imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment fee.

Count 41:  18 U.S.C. § 1956(h)
NMT 20 years' imprisonment; NMT a $500,000 fine or 2 times the amount laundered, or both imprisonment and a fine; NMT 3 years' supervised release, and a $100 special assessment fee.

1

Counts 42, 44-56:  18 U.S.C. § 1957
For each count:  NMT 10 years' imprisonment, NMT a $250,000 fine or two times the amount laundered, whichever is greater, or both imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment fee.

Counts 57-60:  26 U.S.C. § 7203
For each count:  NMT 1 year imprisonment, NMT a $100,000 fine, NMT 1 year supervised release, a $25 special assessment fee, plus costs of prosecution.

AGENT:          IRS-CI SA Lisa Palmer
                FBI SA Sarah Anderson


AUTHORIZED      Assistant U.S. Attorney Hetal J. Doshi
BY:             Assistant U.S. Attorney Matthew T. Kirsch

ESTIMATED TIME OF TRIAL:

___ five days or less        __X__ over five days          _____ other

THE GOVERNMENT

_____ will seek detention in this case based on 18 U.S.C. § 3142(f)(2)

_ x _____ will not seek detention

The statutory presumption of detention **is not** applicable to this defendant.

2

| | |
|---|---|
| <u>DEFENDANT:</u> | KIMBERLEY ANN TEW |
| <u>YOB</u>: | **1981** |

<u>COMPLAINT FILED?</u>    _____ Yes    \_\_\_\_x\_\_\_ No

        If Yes, MAGISTRATE CASE NUMBER_____

<u>HAS DEFENDANT BEEN ARRESTED ON COMPLAINT</u>?  \_ \_\_ Yes   \_\_\_x\_\_\_\_ No
If No, a new warrant is required

<u>OFFENSE(S):</u>     Count 1:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

        Counts 21-22; 25-26; 31-32:  18 U.S.C. § 1343 (Wire Fraud)

        Count 41:  18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering)

        Counts 43-44; 47-48; 56:  18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

<u>LOCATION OF OFFENSE:</u>     Denver County, Colorado

<u>PENALTY:</u>     Count 1:  18 U.S.C. § 1349
NMT 20 years' imprisonment; NMT a $250,000 fine or two times gain or loss, whichever is greater, or both imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment fee.

        Counts 16, 21-22; 25-26; 31-32:  18 U.S.C. § 1343
For each count:  NMT 20 years' imprisonment, NMT a $250,000 fine or two times gain or loss, whichever is greater, or both imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment fee

        Count 41:  18 U.S.C. § 1956(h)
NMT 20 years' imprisonment; NMT a $500,000 fine or 2 times the amount laundered, or both imprisonment and a fine; NMT 3 years' supervised release, and a $100 special assessment fee.

        Counts 43-44; 47-48; 56:  18 U.S.C. § 1957
For each count:  NMT 10 years' imprisonment, NMT a $250,000 fine or two times the amount laundered, whichever is greater, or both

1

imprisonment and a fine; NMT 3 years' supervised release; $100 special assessment fee per count

AGENT:          IRS-CI SA Lisa Palmer
                FBI SA Sarah Anderson

AUTHORIZED      Assistant U.S. Attorney Hetal J. Doshi
BY:             Assistant U.S. Attorney Matthew T. Kirsch

ESTIMATED TIME OF TRIAL:

___ five days or less        ___X__ over five days        _____ other

THE GOVERNMENT

_____ will seek detention in this case based on 18 U.S.C. § 3142(f)(2)

__x_____ will not seek detention

The statutory presumption of detention **is not** applicable to this defendant.

DEFENDANT:     JONATHAN K. YIOULOS

YOB:     **1989**

COMPLAINT
FILED?     _____ Yes     ____x___ No

If Yes, MAGISTRATE CASE NUMBER_____

HAS DEFENDANT BEEN ARRESTED ON COMPLAINT?  _ __ Yes     ___x____  No
If No, a new warrant is required

OFFENSE(S):     Count 1:  18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

Counts 2-40:  18 U.S.C. § 1343 (Wire Fraud)

LOCATION OF
OFFENSE:     Denver County, Colorado

PENALTY:     Count 1:  18 U.S.C. § 1349
NMT 20 years' imprisonment; NMT a $250,000 fine or two times gain
or loss, whichever is greater, or both imprisonment and a fine; NMT
3 years' supervised release; $100 special assessment fee.

Counts 2-40:  18 U.S.C. § 1343
For each count:  NMT 20 years' imprisonment, NMT a $250,000 fine
or two times gain or loss, whichever is greater, or both imprisonment
and a fine; NMT 3 years' supervised release; $100 special
assessment fee.

AGENT:     IRS-CI SA Lisa Palmer
FBI SA Sarah Anderson

AUTHORIZED
BY:     Assistant U.S. Attorney Hetal J. Doshi
Assistant U.S. Attorney Matthew T. Kirsch

ESTIMATED TIME OF TRIAL:

___ five days or less     ___X__ over five days     _____ other

1

<u>THE GOVERNMENT</u>

**_____** will seek detention in this case based on 18 U.S.C. § 3142(f)(2)

\_\_x\_\_\_\_\_ will not seek detention

The statutory presumption of detention **is not** applicable to this defendant.

2

AO 83 (Rev. 06/09) Summons in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | |
| | ) | Case No.    20-cr-00305-DDD-2 |
| 2. KIMBERLEY ANN TEW | ) | |
| | ) | |
| _Defendant_ | ) | |

## SUMMONS IN A CRIMINAL CASE

**YOU ARE SUMMONED** to appear before the United States district court at the time, date, and place set forth below to answer to one or more offenses or violations based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of Court

| | |
|---|---|
| Place:   Alfred A. Arraj United States Courthouse<br>901 19th St, Denver, CO 80294 | Courtroom No.:   401 |
| | Date and Time:   02/10/2021 2:00 pm |

This offense is briefly described as follows:

Violations of the following statutes: 18 U.S.C. 1349 (conspiracy to commit wire fraud), 18 U.S.C. 1343 (wire fraud), 18 U.S.C. 1956(h) (conspiracy to commit money laundering), 18 U.S.C. 1957 (money laundering).

Prior to court appearance, defendant shall report to probation at 9:00 a.m., 1929 Stout Street, Denver, CO and the U.S. Marshal's Service; 901 19th Street, Denver, Colorado at 10:00 a.m.

Date:    02/03/2021

s/A. Thomas, Deputy Clerk

_Issuing officer's signature_

Jeffrey P. Colwell, Clerk of Court

_Printed name and title_

I declare under penalty of perjury that I have:

☐ Executed and returned this summons      ☐ Returned this summons unexecuted

Date: _____

_Server's signature_

_Printed name and title_

AO 83 (Rev. 06/09) Summons in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | |
|---|---|
| United States of America<br>v.<br><br>3. JONATHAN K. YIOULOS<br>_____<br>*Defendant* | )<br>)<br>)<br>)   Case No.   20-cr-00305-DDD-3<br>)<br>)<br>) |

## SUMMONS IN A CRIMINAL CASE

**YOU ARE SUMMONED** to appear before the United States district court at the time, date, and place set forth below to answer to one or more offenses or violations based on the following document filed with the court:

☑ Indictment     ☐ Superseding Indictment     ☐ Information     ☐ Superseding Information     ☐ Complaint

☐ Probation Violation Petition     ☐ Supervised Release Violation Petition     ☐ Violation Notice     ☐ Order of Court

| | |
|---|---|
| Place:  Alfred A. Arraj United States Courthouse<br>901 19th St, Denver, CO 80294 | Courtroom No.:  401 |
| | Date and Time:  02/09/2021 2:00 pm |

This offense is briefly described as follows:

Violations of the following statutes:  18 U.S.C. 1349 (conspiracy to commit wire fraud), 18 U.S.C. 1343 (wire fraud).

Prior to court appearance, defendant shall report to probation at 9:00 a.m., 1929 Stout Street, Denver, CO and the U.S. Marshal's Service; 901 19th Street, Denver, Colorado at 10:00 a.m.

Date:     02/03/2021                    s/A. Thomas, Deputy Clerk
_____               _____
                                            *Issuing officer's signature*

                          Jeffrey P. Colwell, Clerk of Court
                                            *Printed name and title*

I declare under penalty of perjury that I have:

☐ Executed and returned this summons          ☐ Returned this summons unexecuted

Date:  _____         _____
                                            *Server's signature*

                                            _____
                                            *Printed name and title*

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Thomas Richard Ward (kalvarado@mswdenver.com,
krodriguez@mswdenver.com, tward@mswdenver.com), Hetal Janak Doshi (caseview.ecf@usdoj.gov,
hetal.doshi@usdoj.gov, portia.peter@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Matthew T. Kirsch
(caseview.ecf@usdoj.gov, mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), AUSA General Mail (usaco.ecfcriminal2@usdoj.gov),
Probation-General (cod_efiling@cod.uscourts.gov), USM-Criminal Division
(gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:7970877@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Initial Appearance
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 2/10/2021 at 3:41 PM MST and filed on 2/10/2021

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 96(No document attached) |

**Docket Text:**
 **MINUTE ENTRY for Initial Appearance, Arraignment, Discovery and Detention Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 2/10/2021. Defendant present on summons and consents to proceeding by video conference. Defendant advised. Defendant is not requesting court appointed counsel. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed.Parties address the Court regarding conditions of release. Bond set as to Kimberley Ann Tew (2) $10,000 Unsecured with the conditions as set forth in the Order Setting Conditions of Release. Defendant is ordered to report to the probation office on 2–11–21 at 1:00 p.m. Defendant advised of conditions of bond. Counsel is directed to chambers. (Total time: 28 minutes, Hearing time: 2:31–2:59)**

**APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE: Hetal Doshi and Matthew Kirsch on behalf of the Government, Jamie Hubbard on behalf of the defendant, Tommie Anderson on behalf of pretrial. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward     tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No.           )

20-cr-00305-DDD

            )   JUDGE ASSIGNED: Judge Domenico

UNITED STATES OF AMERICA,    )

            )   ESTIMATED TRIAL

     Plaintiff,          )   TIME: 8 days

            )

v.                )   NUMBER OF

            )   DEFENDANTS: 3

2. Kimberley Ann Tew      )

            )   DOCUMENT DISCLOSURE EXTENSIVE

     Defendant.        )   ⬤Yes ◯No

            )     (Please select one)

            )

## DISCOVERY CONFERENCE
## MEMORANDUM AND ORDER

## INTRODUCTION

Rule 16, Federal Rules of Criminal Procedure, is entitled <u>Discovery and Inspection</u> and

provides for discovery by both defendant and the government. D.C.COLO.LCrR 17.1.1 requires a

discovery conference memorandum and order be entered by a magistrate judge.

A defendant may discover certain material as a matter of right without any obligation to permit

discovery by the government. However, if the defendant requests certain materials by discovery,

namely, documents and tangible objects, as well as reports of examinations and tests, then the

defendant is obligated to permit similar discovery by the government.

In addition to discovery we will take up the matter of notice, as required by Rules 12.1 and

12.2, Fed.R.Crim.P. if the defense of alibi or mental capacity is contemplated. Further, a date will be

set for the filing of all motions.

1

(Rev. 1/17/2019)

At the conclusion of this hearing the report will be signed by defendant and/or his counsel, and government counsel, as well as the magistrate judge. The discovery hearing proceedings will be recorded.

## I. DEFENDANT'S REQUEST FOR DISCOVERY AND NOTICE

(A)     Request for Rule 16 Material

1.     The defendant requests disclosure of the substance of any relevant oral statements made by the defendant, before or after arrest, in response to interrogation by any person the defendant knew to be a government agent if the government intends to use that statement at trial. Rule 16(a)(1)(A). The government states that it will disclose to the defendant and make available for inspection, copying, or photographing such statements in accordance with Rule 16(a)(1)(A).

2.     The defendant requests disclosure of any relevant written or recorded statement made by the defendant within the government's possession, custody, or control, which the attorney for the government knows – or through due diligence could know – that the statement exists; the portion of any written record containing the substance of any relevant oral statement made before or after arrest if the defendant made the statement in response to interrogation by any person the defendant knew to be a government agent. Rule 16(a)(1)(B)(i) and (ii).

3.     The defendant requests disclosure of any recorded testimony of the defendant before a grand jury which relates to the offense charged pursuant to Rule 16(a)(1)(B)(iii). The government states it will permit the defendant to inspect and copy such statements.

4.     If government counsel knows of such statements he will so indicate by initialing here.

**HJD**
_____

2

(Rev. 1/17/2019)

5.     The defendant requests, if the defendant is an organization, the government's disclosure to the defendant of any statement described in Rule 16(a)(1)(A) and (B), if the government contends that the person making the statement; (i) was legally able to bind the defendant regarding the subject of the statement because of that person's position as the defendant's director, officer, employee, or agent; or (ii) was personally involved in the alleged conduct constituting the offense and was legally able to bind the defendant regarding that conduct because of that person's position as the defendant's director, officer, employee or agent. Rule 16(a)(1)(C).

6.     The defendant requests a copy of his prior criminal record. The government states it will furnish to the defendant a copy of his prior criminal record, if any, in accordance with Rule 16(a)(1)(D).

7.     The defendant, understanding his burden of reciprocal discovery as set forth in Rule 16(b)(1)(A), ⦿requests ◯ does not request disclosure of books, papers, documents, data, photographs, tangible objects, buildings or places, and copies or portions thereof, which are within the possession, custody, or control of the government, and which are material to the preparation of his defense, or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant.

8.     The defendant, understanding his burden of reciprocal discovery as set forth in Rule 16(b)(1)(B), ⦿requests ◯does not request disclosure of any results or reports of physical or mental examinations, and of scientific tests or experiments, or copies thereof, which are within the possession, custody, or control of the government, the existence of which is known, or by the exercise of due diligence may become known, to

(Rev. 1/17/2019)

the attorney for the government, and which are material to the preparation of the

defense or are intended for use by the government as evidence in chief at the trial.

9.    The defendant, understanding his burden of reciprocal discovery as set forth in Rule

16(b)(1)(C), ⬤requests ◯does not request disclosure of a written summary of

testimony the government intends to use under Rule 702, 703, or 705 of the Federal

Rules of Evidence, relating to expert testimony and opinions of experts, during its case

in chief at trial, as set forth in Rule 16(a)(1)(G).

10.   The government acknowledges its continuing duty to disclose under Rule 16(c).

(B)    Request for Exculpatory Evidence

The defendant requests disclosure of evidence favorable to the defendant on the issue of guilt

and/or sentencing. The government states it will disclose material evidence which is favorable to the

defendant as required by Brady v. Maryland, 373 U.S. 83 (1963); Giglio v. United States, 405 U.S. 150

(1972); and United States v. Bagley, 473 U.S. 667 (1985). The government acknowledges its

continuing duty to make these disclosures. This request does not foreclose the defendant from filing a

more specific motion requesting exculpatory evidence.

(C)    Request for Evidence of Other Crimes, Wrongs, or Acts

The defendant requests notice of other crimes, wrongs or acts under Rule 404(b) of the Federal

Rules of Evidence. The government states that if it intends to introduce such evidence at trial it will

provide written notice to the defendant no later than 21 days before trial unless, for good cause shown,

the court permits less notice in accordance with Rule 404(b).

(Rev. 1/17/2019)

(D)    Request for Disclosure of the Identity of Confidential Informants

1.    The government states there ◯ was ⦿ was not a confidential informant who was a

participant in or a witness to the crime charged and that the informant ◯ may ◯ will

◯ will not be called as a witness at trial. The government further states it ◯ has

supplied ◯ will claim privilege of non-disclosure of the identity of the confidential

informant. Rovario v. United States, 353 U.S. 53 (1957).

(E)    The Government States There Have Been in this Case:    (Check those which are applicable)

1.    ☑ Telephone tape recordings;

2.    ☐ Electronic surveillance of the defendant or his premises;

3.    ☐ Leads obtained by electronic surveillance of defendant's person or premises; and

4.    ☑ Photographic surveillance.

The government ◯ may ⦿ will ◯ will not permit discovery of the foregoing items.

## II. GOVERNMENT'S REQUEST FOR DISCLOSURE AND NOTICE

(A) Request for Rule 16 Material

1.    The government requests disclosure of books, papers, documents, data, photographs,

tangible objects, or copies or portions thereof, which are within the possession, custody

or control of the defendant and which the defendant intends to introduce as evidence in

chief at the trial. If the defendant made a similar request under Rule 16(a)(1)(E), the

defendant states that upon compliance by the government with the defendant's request

he will permit the government to inspect and copy or photograph such items in

accordance with Rule 16(b)(1)(A).

5

(Rev. 1/17/2019)

2.  The government requests disclosure of any results or reports of physical or mental examinations and of scientific tests or experiments made in connection with this case, or copies thereof, within the possession or control of the defendant as described in Rule 16(b)(1)(B). If the defendant made a similar request under Rule 16(a)(1)(F), the defendant states that upon compliance by the government with the defendant's request he will permit the government to inspect and copy or photograph such items in accordance with Rule 16(b)(1)(B).

3.  The government requests disclosure of a written summary of testimony the defendant intends to use under Rules 702, 703 and 705, F.R.E. as evidence at trial. If the defendant made a similar request under Rule 16(a)(1)(G), the defendant states that upon compliance by the government with the defendant's request he will disclose such summaries in accordance with Rule 16(b)(1)(C).

4.  The defendant acknowledges his continuing duty to disclose under Rule 16(c).

(B)  <u>Request for Notice of Alibi</u>

1.  The government hereby requests notice of the defendant's intent to rely on an alibi defense pursuant to Rule 12.1(a) of the Federal Rules of Criminal Procedure. The parties agree that the indictment/information and the discovery provided by the government give the defendant sufficient notice of the time, date, and place at which the alleged offense was committed and triggers the defendant's obligation under Rule 12(a) to serve upon the attorney for the government a written notice of alibi within 20 days from the date of this request, or at such different time as the court may direct. Should the defendant require additional information concerning the time, date, or place at which the alleged offense was committed, it is the defendant's obligation to file a request for additional information in the time provided for filing motions.

6

(Rev. 1/17/2019)

2.   The government states that if the defendant files a notice of intent to rely upon alibi, the attorney for the government shall serve upon the defendant or the defendant's attorney a written notice stating the names and addresses of the witnesses upon whom the government intends to rely to establish the defendant's presence at the scene of the alleged offense and any other witnesses to be relied on to rebut the testimony of any of the defendant's alibi witnesses. The government's written notice shall be filed within 10 days of its receipt of the defendant's Rule 12.1(a) notice, but in no event less than 10 days before trial, unless the court otherwise directs.

3.   The parties acknowledge their continuing duty to disclose under Rule 12.1(c).

(C)  Request for Notice of Insanity Defense and Expert Testimony Regarding Defendant's Mental Condition

The government hereby requests notice of the defendant's intent to rely on a defense based on insanity or to introduce expert testimony relating to mental condition. If the defendant intends to rely on the defense of insanity or introduce expert testimony relating to mental disease or defect or any other mental condition bearing on the issue of guilt, he agrees to file a written notice and disclosure of the same within 20 days from the date of this request, or at such different time as the court may direct.

**III. LIKELIHOOD OF DISPOSITION OR TRIAL**

(A)   There is a ◯ good ● fair ◯ poor chance of a Rule 11 disposition of this case.

(B)   The parties understand that the court must be given notice of any proposed disposition no less than 10 days before the scheduled trial date. Unless otherwise ordered, notice of disposition shall be filed no later than 14 days before the date set forth for trial. (D.C.COLO LCrR 11.1A)

7

(Rev. 1/17/2019)

(C)     The defendant will receive a jury trial in accordance with F.R.Crim.P. 23(a). Waiver of jury can only be accomplished by filing a motion with the trial court.

## IV. SPEEDY TRIAL

(A)     The speedy trial time limits of 18 U.S.C. § 3161 are as follows:

PNT period; 30 days      3/12/21

Trial clock; 70 days      4/22/21

Custody clock; 90 days      MA

| February 8, 2021 | s/ Kimberley Tew (by JH) |
|---|---|
| Date Signed | Defendant |
| February 8, 2021 | s/ Jamie Hubbard |
| Date Signed | Attorney for Defendant |
| February 5, 2021 | s/ Hetal J. Doshi |
| Date Signed | Assistant United States Attorney |

8

(Rev. 1/17/2019)

# V. **DISCOVERY ORDER**

(A)    Effect of Report

The responses by the parties set forth in this Report shall have the effect of a binding discovery order. All requests for discovery will be considered continuing requests, and any discoverable information and/or material coming into the possession or knowledge of either party prior to or during the trial shall be made available to the opposing party promptly, consistent with the law and on an ongoing basis.

(B)    U.S. Probation Office

Unless otherwise specified in this Discovery Order, at the time of the detention hearing or by _____[date], the U.S. Probation Office will disclose any criminal history information compiled on the defendant to both parties.

(C)    Disclosure by the Government

Unless otherwise specified in this Discovery Order, the government on or before _____, shall disclose those materials that are on that date within the possession of the March 5, 2021 attorney for the government and are subject to disclosure under the provisions of Rule 16. If additional material subject to the disclosure obligations of Rule 16 come into the possession of the attorney for the government, the attorney for the government shall promptly disclose the material to the defendant. The attorney for the government shall exercise due diligence as expressly required by provisions of Rule 16 to fulfill his or her discovery obligations under the provisions of Rule 16.

Written summaries of any testimony that the government intends to use under Rules 702, 703, or 705, Fed. R.Crim P. 16(a)(1)(G) shall be provided on such schedule as the District Court shall determine upon motion by either party.

(D)    Disclosure by the Defendant

Unless otherwise specified in this Discovery Hearing Report, the defendant shall disclose its Rule

9

(Rev. 1/17/2019)

16 discovery material to counsel for the government on or before **April 5, 2021**_____.

Written summaries of any testimony that the defendant intends to use under Rules 702, 703, or 705,

Fed.R.Crim P. 16(b)(1)(C) shall be provided on such schedule as the District Court shall determine

upon motion by either party.

(E)    Any motion alleging a failure to comply with the time limits set forth in this report and order

must be filed promptly.

(F)    Counsel is directed to obtain pretrial motion deadlines and a trial date from the presiding judge

assigned to the case.


IT IS SO ORDERED.


BY THE COURT

_____

U.S. Magistrate Judge

_____

Date    2/10/21

10

(Rev. 1/17/2019)

AO 98 (Rev. 12/11) Appearance Bond

# UNITED STATES DISTRICT COURT
for the

District of Colorado

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.  1:20-cr-00305-DDD-2 |
| Kimberley Ann Tew | ) |
| *Defendant* | ) |

## APPEARANCE BOND

### Defendant's Agreement

I, _____ Kimberley Ann Tew _____ *(defendant)*, agree to follow every order of this court, or any court that considers this case, and I further agree that this bond may be forfeited if I fail:

( ✓ )     to appear for court proceedings;
( ✓ )     if convicted, to surrender to serve a sentence that the court may impose; or
( ✓ )     to comply with all conditions set forth in the Order Setting Conditions of Release.

### Type of Bond

(    ) (1)  This is a personal recognizance bond.

( ✓ ) (2)  This is an unsecured bond of $ ___ *10,000.00* ___ .

(    ) (3)  This is a secured bond of $ _____ , secured by:

    (    ) (a) $ _____ , in cash deposited with the court.

    (    ) (b)  the agreement of the defendant and each surety to forfeit the following cash or other property *(describe the cash or other property, including claims on it – such as a lien, mortgage, or loan – and attach proof of ownership and value):*

    If this bond is secured by real property, documents to protect the secured interest may be filed of record.

    (    ) (c)  a bail bond with a solvent surety *(attach a copy of the bail bond, or describe it and identify the surety):*

### Forfeiture or Release of the Bond

*Forfeiture of the Bond.* This appearance bond may be forfeited if the defendant does not comply with the above agreement. The court may immediately order the amount of the bond surrendered to the United States, including the security for the bond, if the defendant does not comply with the agreement. At the request of the United States, the court may order a judgment of forfeiture against the defendant and each surety for the entire amount of the bond, including interest and costs.

AO 98 (Rev. 12/11) Appearance Bond

*Release of the Bond.*  The court may order this appearance bond ended at any time.  This bond will be satisfied and the security will be released when either: (1) the defendant is found not guilty on all charges, or (2) the defendant reports to serve a sentence.

### Declarations

*Ownership of the Property.*  I, the defendant – and each surety – declare under penalty of perjury that:

    (1)    all owners of the property securing this appearance bond are included on the bond;

    (2)    the property is not subject to claims, except as described above; and

    (3)    I will not sell the property, allow further claims to be made against it, or do anything to reduce its value while this appearance bond is in effect.

*Acceptance.*  I, the defendant – and each surety – have read this appearance bond and have either read all the conditions of release set by the court or had them explained to me.  I agree to this Appearance Bond.

I, the defendant – and each surety – declare under penalty of perjury that this information is true.  (See 28 U.S.C. § 1746.)

Date: _2-10-21_

*defendant authorized signature in open court on 2-10-21*

*Defendant's signature*

_____    _____
Surety/property owner – printed name    Surety/property owner – signature and date

_____    _____
Surety/property owner – printed name    Surety/property owner – signature and date

_____    _____
Surety/property owner – printed name    Surety/property owner – signature and date

CLERK OF COURT

Date: _____

_____
*Signature of Clerk or Deputy Clerk*

Approved.

Date: _February 10, 2021_

_____
*Judge's signature*

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | )    Case No.   1:20-cr-00305-DDD-2 |
| Kimberley Ann Tew | ) |
| *Defendant* | ) |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)    The defendant must not violate federal, state, or local law while on release.

(2)    The defendant must cooperate in the collection of a DNA sample if it is authorized by 42 U.S.C. § 14135a.

(3)    The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)    The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____

                                                            *Place*

on _____

                                         *Date and Time*

If blank, defendant will be notified of next appearance.

(5)    The defendant must sign an Appearance Bond, if ordered.

AO 199B  (Rev. 08/14 D/CO)  Additional Conditions of Release                                      Page  2  of  4  Pages

## ADDITIONAL CONDITIONS OF RELEASE

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

(   )  (6)  The defendant is placed in the custody of:
Person or organization _____
Address *(only if above is an organization)* _____
City and state _____  Tel. No. _____
who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____   _____
                        *Custodian*                                *Date*

( ✓ )  (7)  The defendant must:
( ✓ )  (a)  submit to supervision by and report for supervision to the  U.S. Probation Office, 1929 Stout St, Denver, CO 303-844-5424

(   )  (b)  continue or actively seek employment.
(   )  (c)  continue or start an education program.
( ✓ )  (d)  surrender any passport to:  To the clerk, U.S. District Court within 2 business days.
( ✓ )  (e)  not obtain a passport or other international travel document.
( ✓ )  (f)  abide by the following restrictions on personal association, residence, or travel: _____
travel is restricted to Colorado unless prior permission is granted by the Court
( ✓ )  (g)  avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:  *except husband*

(   )  (h)  get medical or psychiatric treatment:  Get medical, psychiatric, and/or mental health treatment as required by your supervising officer.

(   )  (i)  return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes: _____

(   )  (j)  maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.
( ✓ )  (k)  not possess a firearm, destructive device, or other weapon.
( ✓ )  (l)  not use alcohol (   ) at all (  ✓ ) excessively.
( ✓ )  (m)  Except as authorized by court order, the defendant shall not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.  Except as authorized by court order, the defendant shall not possess, use or sell marijuana or any marijuana derivative (including THC) in any form (including edibles) or for any purpose (including medical purposes).  Without the prior permission of the probation officer, the defendant shall not enter any marijuana dispensary or grow facility.
(   )  (n)  submit to testing for a prohibited substance if required by the pretrial services office or supervising officer.  Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing.  The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.
(   )  (o)  participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.
(   )  (p)  participate in one of the following location restriction programs and comply with its requirements as directed.
        (   )  (i)  **Curfew.**  You are restricted to your residence every day (   ) from _____ to _____ , or (   ) as directed by the pretrial services office or supervising officer; or
        (   )  (ii)  **Home Detention.**  You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
        (   )  (iii)  **Home Incarceration.**  You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court.
( ✓ )  (q)  submit to location monitoring **RF** as directed by the supervising officer, and comply with all program requirements and instructions provided.
        (   ) You must pay all or part of the cost of the program based on your ability to pay as determined by the pretrial services office or supervising officer.
( ✓ )  (r)  report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.
( ✓ )  (s)  The defendant shall not act as an informant for any law enforcement agency without prior permission of the Court.
(   )  (t)  _____
(   )  (u)  _____
(   )  (v)  _____

AO 199B  (Rev. 08/14 D/CO)  Additional Conditions of Release                                          Page 3  of 4 Pages

## ADDITIONAL CONDITIONS OF RELEASE

( ✓ )(t)   The defendant's employment must be approved in advance by the supervising officer.

( ✓ )(u)  The defendant shall provide verification of any income or funds received.

( ✓ )(v)  The defendant shall provide access to any financial records requested by the supervising officer.

( ✓ )(w)  The defendant shall not co-mingle personal and business funds.

( ✓ )(x)  The defendant shall not register any business entities without prior disclosure to the supervising officer.  The defendant shall notify the supervising officer of the registration of any business entities by her family members.

( ✓ )(y)  The defendant shall notify third parties of risks that may be occasioned by her personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

( ✓ )(z)  The defendant shall not conduct any financial transactions through the financial account of any business entity not previously disclosed to the supervising officer or through any other individual's financial account.

( ✓ )(aa)  The defendant shall not solicit or receive money from third parties without prior approval by the supervising officer.

AO 199C (Rev. 09/08) Advice of Penalties    Page __3__ of __4__ Pages

## ADVICE OF PENALTIES AND SANCTIONS

**TO THE DEFENDANT:**

**YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:**

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

 (1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

 (2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

 (3) any other felony – you will be fined not more than $250,000 or imprisoned not more than two years, or both;

 (4) a misdemeanor – you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_A authorized signature in open court on 2/10/21 KLM_   _Defendant's Signature_

_Denver CO_
_City and State_

### Directions to the United States Marshal

( ✓ ) The defendant is ORDERED released after processing.
( ) The United States marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: ___February 10, 2021___    _____
_Judicial Officer's Signature_

Kristen L. Mix, U.S. Magistrate Judge
_Printed name and title_

DISTRIBUTION: COURT  DEFENDANT  PRETRIAL SERVICE  U.S. ATTORNEY  U.S. MARSHAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MICHAEL AARON TEW, KIMBERLY ANN TEW, and JONATHAN
K. YIOULOS,

     Defendants.

---

## ORDER SETTING TRIAL DATE AND RELATED DEADLINES

---

    This matter comes before the court for the setting of a trial date and
related pretrial deadlines for Defendants Michael Aaron Tew, Kimberly
Ann Tew, and Jonathan Yioulous.

    As a preliminary matter, the court notes that the Speedy Trial Act's
time limits began to run against Defendant Michael Aaron Tew when
the court unsealed the information against him on January 20, 2021.
*See* 18 U.S.C. 3161(c)(1); Doc. 81. He was later indicted on February 3,
2021, Doc. 83, and had his initial appearance on February 5, 2021, Doc.
90. But when, as here, several defendants are joined in one prosecution,
"the general rule is that all defendants . . . fall within the speedy trial
computation of the latest codefendant." *United States v. Margheim*, 770
F.3d 1312, 1318–19 (10th Cir. 2014). Indeed, the Speedy Trial Act
excepts any "reasonable delay" from the Act's time constraints "when
the Defendant is joined for trial with a codefendant as to whom the time
for trial has not run and no motion for severance has been filed." 18
U.S.C. § 3161(h)(6). The joint trial date set in this order for all three

- 1 -

Defendants falls outside Mr. Tew's initial Speedy Trial time computation of March 31, 2021. The court nevertheless **RESETS** Mr. Tew's trial deadline to occur concurrently with his co-defendants as explained below. No motion for severance has been filed and the court finds that the nineteen-day delay is reasonable under § 3161(h)(6). Among other things, the delay is reasonable given the ongoing disruptions caused by COVID-19, the fact that the Grand Jury has met only sporadically, and the fact that efficiency will be served by trying the Defendants together. The court thus **EXCLUDES** nineteen days from Mr. Tew's Speedy Trial clock.

Pursuant to the Speedy Trial Act, 18 U.S.C. §§ 3161-74, the Federal Rules of Criminal Procedure, and the Local Rules of Practice for the United States District Court for the District of Colorado, it is ORDERED that:

1.  An **eight-day jury trial** is set to commence at **9:00 a.m.** on **April 19, 2021** in Courtroom A 702 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294; and

2.  A Trial Preparation Conference is set for **1:30 p.m.** on **April 12, 2021** in Courtroom A 702. The parties should be prepared to address the following issues at the Trial Preparation Conference: (1) any outstanding motions; (2) jury selection and jury instructions; (3) sequestration of witnesses; (4) timing of presentation of witnesses and evidence; (5) anticipated evidentiary issues; (6) any stipulations of fact or law; and (7) any other issue affecting the duration or course of the trial.

It is FURTHER ORDERED that:

1.  All pretrial motions shall be filed no later than **March 12, 2021**, responses to those motions shall be filed no later than **March 17, 2021**, and no replies shall be permitted without prior leave of the Court. Prior to filing any discovery motion, counsel for the moving party or a pro se party shall confer or make reasonable, good faith efforts to confer with any opposing counsel or pro se party to resolve the dispute(s). If the parties are able to resolve the dispute(s), they shall file a motion titled "Unopposed Motion for _____," and shall file the proposed order they wish the Court to enter via CM/ECF and email a copy in editable Word format to Domenico_Chambers@cod.uscourts.gov. If the parties are unable to resolve the dispute(s), the moving party shall describe in the motion, or in a certificate attached to the motion, the specific efforts taken to comply with this order to confer and the position of each party at the time the conferral process broke down;

2.  Expert witness disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and (b)(1)(C) shall be made no later than **four weeks** prior to the Trial Preparation Conference, and any challenges to such experts shall be made no later than **three weeks** prior to the Trial Preparation Conference;

3.  Rebuttal expert witness disclosures shall be made no later than **two weeks** prior to the Trial Preparation Conference, and any challenges to such rebuttal experts shall be made no later than **one week** prior to the Trial Preparation Conference; and

4.  Pursuant to Local Criminal Rule 11.1(a), any notice of disposition shall be filed no later than **fourteen days** before trial, absent an order permitting or directing otherwise. Upon the filing of a notice of disposition, the Court generally will convert the Trial Preparation Conference to a change of plea hearing.

It is FURTHER ORDERED that:

1.  If a party files a motion *in limine*, it is due **seven days** before the Trial Preparation Conference. However, motions *in limine* are discouraged when the motion cannot be resolved until evidence is presented at trial; instead, such evidentiary issues can be flagged in a trial brief. Responses to motions *in limine* are due **two business days** before the Trial Preparation Conference, and no replies will be permitted without leave of Court;

2.  The parties shall file their proposed jury instructions and verdict forms **four business days** before the Trial Preparation Conference. The proposed instructions shall identify the source of the instruction and supporting authority. Each instruction should be numbered (*e.g.*, "Government's Instruction No. 1"). Whenever practicable and appropriate, the parties shall use or adapt for use the Criminal Pattern Jury Instructions prepared by the Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit. The pattern instructions and updates may be found online at https://www.ca10.uscourts.gov/clerk/downloads/criminal-pattern-jury-instructions. The parties shall attempt to stipulate to the jury instructions, particularly "stock" instructions and verdict forms. The parties shall submit their proposed instructions and verdict forms both via CM/ECF and by email to Domenico_Chambers@cod.uscourts.gov in editable Word format. Proposed verdict forms shall be submitted in a separate file from the proposed jury instructions. Within the jury instruction file, each jury instruction shall begin on a new page;

3.  If filed, trial briefs shall not exceed **2,700 words** and shall be filed no later than **two business days** before the Trial Preparation

Conference. Trial briefs are encouraged, but not required, and a trial brief may not be used as a substitute for a motion;

4. The parties shall file their proposed witness lists via CM/ECF **two business days** before the Trial Preparation Conference. Witness list forms can be found at http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonDanielDDomenico.aspx;

5. The parties shall file their proposed exhibit lists via CM/ECF **two business days** before the Trial Preparation Conference. Exhibit list forms can be found at http://www.cod.uscourts.gov/JudicialOfficers/ActiveArticleIIIJudges/HonDanielDDomenico.aspx; and

6. The parties shall file their proposed *voir dire* questions **two business days** before the Trial Preparation Conference.

It is FURTHER ORDERED that counsel and pro se parties shall be present on the first day of trial at 8:30 a.m. Jury selection will begin at 9:00 a.m. Commencing the second day of trial, the normal trial day will begin at 9:00 a.m. and continue until 5:00 p.m. The trial day will have morning and afternoon recesses of approximately fifteen minutes in duration, and a lunch break of approximately 90 minutes.

DATED: February 11, 2021                    BY THE COURT:

Hon. Daniel D. Domenico
United States District Judge

AO 83 (Rev. 06/09) Summons in a Criminal Case

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

# UNITED STATES DISTRICT COURT
for the
District of Colorado

2021 FEB 16 PM 12: 27

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) |
| | ) Case No. 20-cr-00305-DDD-2 |
| 2. KIMBERLEY ANN TEW | ) |
| | ) |
| *Defendant* | ) |

## SUMMONS IN A CRIMINAL CASE

**YOU ARE SUMMONED** to appear before the United States district court at the time, date, and place set forth below to answer to one or more offenses or violations based on the following document filed with the court:

☑ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☐ Complaint

☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of Court

| Place: Alfred A. Arraj United States Courthouse 901 19th St, Denver, CO 80294 | Courtroom No.: 401 |
|---|---|
| | Date and Time: 02/10/2021 2:00 pm |

This offense is briefly described as follows:

Violations of the following statutes: 18 U.S.C. 1349 (conspiracy to commit wire fraud), 18 U.S.C. 1343 (wire fraud), 18 U.S.C. 1956(h) (conspiracy to commit money laundering), 18 U.S.C. 1957 (money laundering).

Prior to court appearance, defendant shall report to probation at 9:00 a.m., 1929 Stout Street, Denver, CO and the U.S. Marshal's Service; 901 19th Street, Denver, Colorado at 10:00 a.m.

| | |
|---|---|
| Date: 02/03/2021 | s/A. Thomas, Deputy Clerk |
| | *Issuing officer's signature* |
| | Jeffrey P. Colwell, Clerk of Court |
| | *Printed name and title* |

I declare under penalty of perjury that I have:

☑ Executed and returned this summons ☐ Returned this summons unexecuted

| | |
|---|---|
| Date: 2/11/21 | |
| | *Server's signature* |
| | Jesse Cardenas DUSM |
| | *Printed name and title* |

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

X_____X
:
    **UNITED STATES OF AMERICA** :
:
                Plaintiff, :
:
           **v.** :
:
:
    **MICHAEL AARON TEW,** :
    **KIMBERLEY ANN TEW, and** :
    **JONATHAN K. YIOULOS** :
              Defendants. :
:
X_____X

             **20-CR-00305-DDD**

         **NOTICE OF APPEARANCE**

## NOTICE OF APPEARANCE OF TOR EKELAND AS ATTORNEY FOR DEFENDANT

To the Clerk of the Court and all parties of record:

Please take notice that the undersigned attorney is admitted to practice in this Court and is retained as counsel for Defendants MICHAEL AARON TEW and KIMBERELY ANN TEW.

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

80 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
tor@torekeland.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  **MICHAEL AARON TEW**;

    2.  **KIMBERLEY ANN TEW**; and
       a/k/a Kimberley Vertanen

    3.  **JONATHAN K. YIOULOS**,

    **Defendants.**

---

**GOVERNMENT'S MOTION FOR INQUIRY REGARDING
JOINT REPRESENTATION PURSUANT TO
FEDERAL RULE OF CRIMINAL PROCEDURE 44**

---

The United States of America, by Assistant United States Attorneys Hetal J. Doshi and
Matthew T. Kirsch, hereby moves this Court to inquire about the propriety of joint representation
pursuant to Federal Rule of Criminal Procedure 44. This issue is ripe as Tor Ekeland has recently
entered an appearance on behalf of both Michael Aaron Tew and Kimberley Ann Tew. *See* Dkt. 106.

<u>Procedural Background</u>

1.      On February 3, 2021, the defendants were charged by an indictment that alleged
violations of Title 18, United States Code, Sections 1343, 1349, 1956(h), and 1957, and Title 26, United
States Code, Section 7203. Dkt. 83. The indictment alleges, in part, that Mr. Tew and Mrs. Tew,
along with Mr. Yioulos, were engaged in a conspiracy to commit wire fraud, *see* Count 1, and that they

1

were engaged in a scheme to defraud, *see* Counts 2-40. *Id.* Mrs. Tew is charged with some, but not all, of the executions of the scheme to defraud alleged in Counts 2-40. Mr. and Mrs. Tew are also separately charged with a conspiracy to commit money laundering, Count 41, and each of them is charged with individual substantive counts of violation of 18 U.S.C. § 1957.

2.  At their respective initial appearances, arraignments, discovery conferences, and detention hearings, Mr. Tew was represented by Tom Ward and Mrs. Tew was provisionally represented for only those hearings by Jamie Hubbard. Until February 25, 2021, no lawyer was entered as counsel of record for Mrs. Tew.

3.  On February 26, 2021, Mr. Ekeland filed an entry of appearance on behalf of both Mr. Tew and Mrs. Tew. *See* Dkt. 106.

4.  The government has conferred by telephone call with Mr. Ekeland, who does not oppose the narrow issue of a request for a Federal Rule of Criminal Procedure Rule 44 inquiry.

<u>Attorney Conflict of Interest</u>

5.  Defendants in criminal cases are guaranteed the right to counsel, including "the right to representation that is free from conflicts of interest." *United States v. Williamson*, 859 F.3d 843, 851 (10th Cir. 2017) (internal quotation marks omitted). "A conflict of interest is 'a division of loyalties that affected counsel's performance.'" *Id.* (quoting *Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). The government has "a duty to alert the court to defense counsel's *potential* and actual conflicts of interest." *United States v. Schneider*, 704 F.3d 1287, 1293 (10th Cir. 2013) (citing *United States v. McKeighan*, 685 F.3d 956, 966 (10th Cir. 2012) (emphasis in *Schneider*).

6.  One type of potential conflict that can arise is from joint representation where "more than one codefendant is represented by the same attorney." *Williamson*, 859 F.3d at 851. "Joint representation occurs when . . . the defendants are represented by the same counsel . . . ." Fed. R.

<div align="center">2</div>

Crim. Pro. 44(c)(1)(B). Joint representation creates a tension between the defendant's right to be represented by their attorney of choice and the institutional interest of the courts and the public in ensuring that verdicts are just and legal proceedings appear fair to all who observe them. *See generally Wheat v. United States*, 486 U.S. 153 (1988). Joint representation also implicates the Sixth Amendment right to counsel. In *Wheat*, the Supreme Court held that the "essential aim" of the Sixth Amendment "is to guarantee an effective advocate for each criminal defendant rather than ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* at 159.

7. Contemplating the tension that is created by joint representation, Federal Rule of Criminal Procedure 44 requires a prompt inquiry into the joint representation:

> The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

Fed. R. Crim. P. 44(c)(2); *see also Williamson*, 859 F.3d at 852 (noting that the "court has a duty to inquire into a potential joint representation conflict of interest when defense counsel informs the court of the alleged conflict prior to trial" (internal quotation marks omitted)).

8. "[J]oint representation is not *per se* violative of constitutional guarantees of effective assistance of counsel," *Holloway v. Arkansas*, 435 U.S. 475, 482 (1978), but an actual conflict of interest arises "when counsel [is] forced to make choices advancing other interests to the detriment of his client." *Williamson*, 859 F.3d at 851 (internal quotation marks omitted). In a joint representation, a conflict may arise if, for example, "one defendant might be advantaged in accepting a plea offer or testifying against his codefendant, but the second defendant could be disadvantaged if the first defendant chooses to do so." *Id.* at 852.

3

9.      The Court may consider the applicable rules of professional conduct in making this determination.  *See e.g.*, *United States v. Anderson*, 319 F.3d 1218 (10th Cir. 2003), *United States v. Collins*, 920 F.2d 619, 627 (10th Cir. 1990).  The Colorado Rules of Professional Conduct have been adopted as the standards of professional responsibility for the Court.  *See* D.C.COLO.LAttyR. 2.   Rule 1.7 of the Colorado Rules of Professional Conduct states that "a lawyer shall not represent a client if the representation invoices a concurrent conflict of interest" which includes those representations where "there is a significant risk that the representation of one of more clients will be materially limited by the lawyer's responsibilities to another client…" unless "the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client; the representation is not prohibited by law; the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and each affected client gives informed consent, confirmed in writing."

10.      Comment 8 to Colorado Rule of Professional Conduct 1.7 notes that "[e]ven where there is no direct adverseness, a conflict of interest exists if there is a significant risk that a lawyer's ability to consider, recommend or carry out an appropriate course of action for the client will be materially limited as a result of the lawyer's other responsibilities or interests."  But "[t]he mere possibility of subsequent harm does not itself require disclosure and consent.  The critical questions are the likelihood that a difference in interests will eventuate, and if so, whether it will materially interfere with the lawyer's independent professional judgment in considering alternatives or foreclose courses of action that reasonably should be pursued on behalf of the client."  Colo. RPC 1.7, Cmt. 8. Comment 23 also states that "[t]he potential for conflict of interest in representing multiple defendants in a criminal case is so grave that ordinarily a lawyer should decline to represent more than one codefendant."

4

11.     In conducting this analysis, the district court "must recognize a presumption in favor of [the defendant's] counsel of choice." *Wheat*, 486 U.S. at 164. Indeed, "in some cases multiple defendants can appropriately be represented by one attorney ... certain advantages might accrue from joint representation.... Joint representation is a means of insuring against reciprocal recrimination. A common defense often gives strength to a common attack." *Holloway*, 435 U.S. at 482-83 (internal citations and punctuation marks omitted). Furthermore, an "attorney representing two defendants in a criminal matter is in the best position professionally and ethically to determine when a conflict of interest exists or will probably develop in the course of a trial." *Id.* at 485 (internal citations and punctuation marks omitted). The Court should credit the fact that "attorneys are not fungible; often the most important decision a defendant makes in shaping his defense is his selection of an attorney." *United States v. Collins*, 920 F.2d 619, 625 (10th Cir. 1990) (internal citations and punctuation marks omitted), *superseded by statute on other grounds as recognized by Lewis v. Comm'r of Int. Rev.*, 523 F.3d 1272 (10th Cir. 2008).

12.     "In order for a defendant effectively to waive his right to conflict-free counsel, the trial judge should affirmatively participate in the waiver decision by eliciting a statement in narrative form from the defendant indicating that he fully understands the nature of the situation and has knowingly and intelligently made the decision to proceed with the challenged counsel." *United States v. Schneider*, 704 F.3d 1287, 1292 (10th Cir. 2013) (citing *United States v. Migliaccio*, 34 F.3d 1517, 1527 (10th Cir. 1994)). Further, the "district court should also determine whether the defendant understands the facts underlying the conflict and the dangers and risks associated with waiving the conflict." *United States v. Hunt*, No. 01-6426, 62 F. App'x, 272, 276 (citing *Edens v. Hannigan*, 87 F.3d 1109, 1118 (10th Cir. 1996)).

13.     Even where a defendant validly waives a conflict, the district court is "allowed substantial latitude in refusing waivers of conflicts of interest." *Wheat*, 486 U.S. at 163; *see also United States v. Evanson*, 584 F.3d 904, 909 (10th Cir. 2009).  The district court may refuse a waiver "not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." *Wheat*, 486 U.S. at 163.  Because of the importance of a defendant's interest in representation by counsel of his or her choice, the evaluation of whether to allow counsel with a potential conflict of interest to proceed "must be left primarily to the informed judgment of the trial court." *Id.*

14.     In cases of joint representation, a conflict occurs when the defendants' interests "diverge with respect to a material factual or legal issue or to a course of action[;]" *Cuyler v. Sullivan*, 446 U.S. 335, 356 n.3 (1980); "when counsel cannot use his best efforts to exonerate one defendant for fear of implicating the other," *United States v. Kaufman*, 354 F. Supp. 2d 1201, 1204 (D. Kan. 2005) (citing *Dokes v. Lockhart*, 992 F.2d 833, 836 (8th Cir. 1993) (internal citations and punctuation omitted); and "whenever one defendant stands to gain significantly by advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *Kaufman*, 354 F. Supp. 2d at 1204 (citing *United States v. McCaskey*, 9 F.3d 368, 381 (5th Cir. 1993).  This is particularly true when "the available evidence points to significantly different levels of culpability between the jointly represented defendants." *Kaufman*, 354 F. Supp. 2d at 1204 (quoting *United States v. Stantini*, 85 F.3d 9, 19 (2d Cir. 1996).  Joint representation is also problematic where an attorney proposes to represent multiple co-conspirators in an alleged complex scheme.  *See e.g., Wheat*, 486 U.S. at 163.  Ultimately, "[j]oint representation of conflicting interests is suspect because of what it tends to prevent an attorney from doing," like "challenging the admission of evidence prejudicial to one client but perhaps

6

favorable to another or from arguing at the sentencing hearing the relative involvement and culpability

of his clients in order to minimize the culpability of one by emphasizing that of another." *Holloway,*

435 U.S. at 489-90.

      15.     Here, Mr. and Mrs. Tew are spouses, co-defendants, and are alleged to be co-

conspirators. *See* Dkt. 83 (Indictment, Counts 1 & 41). Their preference for chosen counsel is, of

course, entitled to significant deference. Their interests, decisions about testifying, defenses, and legal

strategies (including strategies involving blame-shifting, pointing to relative culpability, potential

cooperation and testimony for the government) may, however, be adverse to the other.

      16.     While we are currently at the beginning of the criminal proceedings, these types of

conflicts can arise at any stage of a case, to include plea negotiations, trial, or sentencing hearings.

*Holloway*, 435 U.S. at 490-91. Even if Mr. and Mrs. Tew agree about their defenses now, it may well

be that such agreement changes as the prosecution continues. Should that occur, Mr. Ekeland may

have to withdraw entirely. The potential need for Mr. Ekeland to withdraw entirely is one of the

topics that the Court may wish to explore with defendants in its colloquy so that Mr. and Mrs. Tew

understand that if they proceed jointly with Mr. Ekeland now, it is possible that neither of them will

be able to proceed with Mr. Ekeland should a conflict arise later because of his possession of privileged

information from both defendants.[1] This is why accepting a waiver at this early stage of the

proceedings is particularly fraught because the Court must evaluate "whether or not to allow a

waiver… not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial

contexts when relationships between parties are seen through a glass, darkly." *Wheat*, 486 U.S. at 163.

The Supreme Court stated in *Wheat*:

---

[1] Should it be helpful to the Court, the government can submit to the Court some topics/areas of
discussion for the Court's colloquy with Mr. and Mrs. Tew on the issues raised by this motion.

<div align="center">7</div>

> The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. It is a rare attorney who will be fortunate enough to learn the entire truth from his own client, much less be fully apprised before trial of what each of the Government's witnesses will say on the stand. A few bits of unforeseen testimony or a single previously unknown or unnoticed document may significantly shift the relationship between multiple defendants. These imponderables are difficult enough for a lawyer to assess, and even more difficult to convey by way of explanation to a criminal defendant untutored in the niceties of legal ethics.

486 U.S. at 162-63.

For the reasons stated above, the government respectfully requests that the Court inquire into the propriety of joint representation pursuant to Federal Rule of Criminal Procedure 44.

Dated this 28th day of February, 2021.

Respectfully submitted,

JASON R. DUNN
United States Attorney

By:      s/ Hetal J. Doshi
Hetal J. Doshi
Matthew T. Kirsch
Assistant United States Attorneys
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Facsimile: (303) 454-0404
E-mail: hetal.doshi@usdoj.gov
      Matthew.kirsch@usdoj.gov
Attorneys for the Government

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Court's Practice Standard III(A)(1).

s/ Hetal J. Doshi

Pursuant to the Court's Practice Standard III.C, the government notes that this motion tolls the speedy trial clock. 18 U.S.C. § 3161(h)(1)(D). The speedy trial clock was reset and started running on the indictment on February 11, 2021 as the last defendant appeared on February 10, 2021. *See* 18 U.S.C. § 3161(h)(6); Dkt. 101. Seventeen days have since elapsed, and therefore fifty-three days remain on the speedy trial clock.

8

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 28th day of February, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

_s/ Hetal J. Doshi_____
Hetal J. Doshi

9

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Thomas Richard Ward (kalvarado@mswdenver.com,
krodriguez@mswdenver.com, tward@mswdenver.com), Hetal Janak Doshi (caseview.ecf@usdoj.gov,
hetal.doshi@usdoj.gov, portia.peter@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Tor Bernhard Ekeland
(billing@torekeland.com, docketing@torekeland.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Matthew T. Kirsch
(caseview.ecf@usdoj.gov, mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:7997816@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Minute Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/1/2021 at 8:46 AM MST and filed on 3/1/2021

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 109(No document attached) |

**Docket Text:**
**MINUTE ORDER regarding [108] motion for hearing concerning joint representation of Defendants Michael Aaron Tew and Kimberley Ann Tew. No later than 4:00 PM on 3/4/2021, Mr. Tew, Ms. Tew, and the Government must confer and email the court at domenico_chambers@cod.uscourts.gov with three mutually agreeable dates for a hearing on the Government's motion (Doc. 108) from the following list of dates: 3/9/21, 3/10/21, 3/11/21, 3/17/21, or 3/18/21. Mr. and Ms. Tew must file their responses to the Government's motion, if any, no later than 3/5/2021. SO ORDERED by Judge Daniel D. Domenico on 3/1/2021. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward    tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov,
USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland    docketing@torekeland.com, billing@torekeland.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward    tward@mswdenver.com, kalvarado@mswdenver.com,
krodriguez@mswdenver.com

Hetal Janak Doshi    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov,
USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland    docketing@torekeland.com, billing@torekeland.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Thomas Richard Ward (kalvarado@mswdenver.com,
krodriguez@mswdenver.com, tward@mswdenver.com), Hetal Janak Doshi (caseview.ecf@usdoj.gov,
hetal.doshi@usdoj.gov, portia.peter@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Tor Bernhard Ekeland
(billing@torekeland.com, docketing@torekeland.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.cooley-graham@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Matthew T. Kirsch (caseview.ecf@usdoj.gov,
mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge
Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8002047@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order Setting Hearing
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/2/2021 at 5:48 PM MST and filed on 3/2/2021

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 112(No document attached) |

**Docket Text:**

 **ORDER setting hearing on [108] motion concerning joint representation and [111] motion to withdraw. A hearing on the Government's motion concerning joint representation (Doc. 108) and Thomas R. Ward's motion to withdraw as counsel (Doc. 111) is hereby set for 3/18/2021 at 10:30 AM before Judge Daniel D. Domenico by video–teleconference. Counsel are directed to contact Courtroom Deputy Patti Glover at patricia_glover@cod.uscourts.gov no later than three business days before the hearing for instructions on how to proceed. SO ODERED by Judge Daniel D. Domenico on 3/2/2021. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward    tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.cooley−graham@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland    docketing@torekeland.com, billing@torekeland.com

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward    tward@mswdenver.com, kalvarado@mswdenver.com, krodriguez@mswdenver.com

Hetal Janak Doshi    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.cooley−graham@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland    docketing@torekeland.com, billing@torekeland.com

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Hetal Janak Doshi (caseview.ecf@usdoj.gov, hetal.doshi@usdoj.gov,
portia.peter@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Tor Bernhard Ekeland (billing@torekeland.com,
docketing@torekeland.com), Matthew T. Kirsch (caseview.ecf@usdoj.gov,
mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee
Surratt (andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov,
danielle.cooley-graham@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Thomas Richard Ward
(kalvarado@mswdenver.com, krodriguez@mswdenver.com, tward@mswdenver.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8004281@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Continue
Content-Type: text/html
```

## U.S. District Court – District of Colorado

## District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 3/3/2021 at 5:16 PM MST and filed on 3/3/2021

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 114(No document attached) |

**Docket Text:**
 ORDER granting [113] Motion to Continue. The Government must produce discovery in this case no later than 14 days after the court rules on the Government's motion concerning joint representation. SO ORDERED by Judge Daniel D. Domenico on 3/3/2021. (dddlc2, )

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward     tward@mswdenver.com, kalvarado@mswdenver.com,
krodriguez@mswdenver.com

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov,
USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,

USACO.ECFCriminal@usdoj.gov, danielle.cooley−graham@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward     tward@mswdenver.com, kalvarado@mswdenver.com,
krodriguez@mswdenver.com

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov,
USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.cooley−graham@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−3 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Thomas Richard Ward     tward@mswdenver.com, kalvarado@mswdenver.com,
krodriguez@mswdenver.com

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov,
USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.cooley−graham@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com

**1:20−cr−00305−DDD−3 Notice has been mailed by the filer to:**

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

X_____X
                                    :        **20-CR-00305-DDD**
                                    :
**UNITED STATES OF AMERICA**        :        **UNOPPOSED MOTION FOR**
                                    :        **A 180-DAY ENDS OF**
                    Plaintiff,      :        **JUSTICE CONTINUANCE**
                                    :        **UNDER**
            **v.**                  :        **18 U. S. C. § 3161(h)(7)**
                                    :
                                    :
**MICHAEL AARON TEW,**              :
**KIMBERLEY ANN TEW, and**          :
**JONATHAN K. YIOULOS**             :
                    Defendants.     :
X_____X


Under 18 U.S.C. § 3161(h)(7) Defendants' Michael Aaron Tew and Kimberly Ann Tew ("Defendants") hereby move this Court for a 180-Day Ends of Justice Continuance changing the current trial date from April 19, 2021 to October 18, 2021. This is the first continuance request by Defendants Mr. and Mrs. Tew. Defense counsel has conferenced with the Government and Defense Counsel for Co-Defendant Jonathan K. Yioulos, and they do not oppose this request.

## Background

On February 3, 2021, the Government filed its Indictment against Defendants.[1] On February 11, 2021 this Court set a trial date of April 19, 2021.[2] The Court also ordered motions due by March 12, 2021 with responses due by March 17, 2021, and excluded nineteen days from Mr. Tew's Speedy Trial Clock.[3] Defendants are currently out on bond under pre-trial supervised release.

## Legal Standard

The Speedy Act requires that a criminal defendant's trial commence within seventy days after his indictment or initial appearance, whichever is later.[4] "The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings."[5] Certain periods of delay are excluded under the Speedy Trial Act and do not count toward the 70-day "Speedy Trial Clock."[6] 18 U.S.C. § 3161 (h)(7) allows for periods of delay that "shall be excluded in computing the time . . . within which the trial of any ... offense must commence."[7] This excludable delay occurs when a court finds that "the ends of justice served by taking action outweigh the best interest of the public and the defendant in a speedy trial."[8] Courts routinely grant ends of justice continuances in cases like this.[9]

---

[1] (*See* Indictment, Dkt. No. 83.)
[2] (*See* Order Setting Trial Date, Dkt. No. 101.)
[3] (*Id.*)
[4] *Id.* at 5-6; 18 U.S.C. § 3161 (c)(1).
[5] *See e.g., United States v. Nemecia-Garcia*, No. 14-cr-00144-CMA, 2016 U.S. Dist. LEXIS 197426, p. 5 (D. Colo. Feb. 12, 2016) (citing *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993)).
[6] *See* 18 U.S.C. § 3161 (h)(1) - (8).
[7] *See* 18 U.S.C. § 3161 (h)(7).
[8] *See* 18 U.S.C. § 3161 (h)(7).
[9] *See e.g., United States v. Hopson*, No. 12-cr-00444-LTB, 2014 U.S. Dist. LEXIS 9248, at *4 (D. Colo. Jan. 17, 2014).

## Continuance Grounds

This is a complex case involving sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants and a large volume of yet to be produced discovery regarding financial transactions likely requiring forensic analysis. Undersigned counsel was just retained in this case and has begun negotiations with the Government regarding a potential protective order and the production of discovery. In these discussions the Government has informed the Defendants that this is a "document disclosure extensive" matter on the Discovery Conference Memoranda.[10]

These factors, listed below with others, justify an ends of justice continuance of 180 days so Defendants can properly prepare a complete defense:

1. On February 7, 2021, Defendants Mr. and Mrs. Tew hired undersigned defense lawyer. As such, newly appointed defense counsel needs time to adequately prepare for trial. The Indictment has sixty counts involving conspiracy, wire fraud, money  laundering, and failure to file taxes, split between three co-defendants. All Defendants were jointly charged in the conspiracy count and in seven wire fraud counts. Mr. and Mrs. Tew were jointly charged in another four money laundering counts.  Ms. Tew was charged alone in one money laundering count, while Mr. Tew was charged individually with multiple wire fraud and failure to file income tax counts.

2. Defense counsel is still negotiating the protective order with the Government regarding voluminous discovery, which the Government has indicated it will produce when a protective order is in place. The need to review and analyze this large volume of yet

---

[10] (*See e.g.*, Discovery Conference Memorandum for Michael Aaron Tew, Dkt. No. 91.)

unproduced discovery makes it unreasonable to expect adequate preparation by Defendants, despite due diligence, for trial on April 19, 2021.

3. Defense counsel for Mr. and Mrs. Tew has been working with Mr. Tew's former counsel in the transfer of over 100 GB of data to undersigned counsel which needs to be reviewed.

4. The Government has informed Defendants that the discovery they are withholding in lieu of a protective order also contains many documents of a sensitive nature with tax information, PII, as well as banking information containing records from more than ten financial institutions, many of which have records related to multiple bank accounts over multiple years, along with other financial records. The Government generally estimates at this time that this discovery will consist of in excess 150,000 documents, in excess of 150,000 additional pages, and many gigabytes of electronic data. Therefore, defense counsel will need time to adequately protect, process, and redact the discovery as necessary.

5. Defendants Michael Aaron Tew and Kimberley Ann Tew have been charged jointly and are represented by the same undersigned counsel. A Federal Rule of Criminal Procedure 44 hearing is currently scheduled for March 18, 2021. Depending on the outcome of the Rule 44 Hearing, one or both of the Tew's may need to find new counsel, something that will require time.

6. The Coronavirus Disease (COVID-19) pandemic has also crippled the state of Colorado, the United States and the world. Beginning on March 13, 2020, Chief Judge Philip A. Brimmer entered a series of orders concerning court operations and prohibiting trials in all but certain tightly controlled selected cases. On February 12, 2021, General Order

2021-3 made effective, as of March 1, 2021, that all civil and criminal jury trials scheduled to commence before any district or magistrate judge in any courthouse in the District of Colorado are continued subject to further order of the presiding judicial officer, with the exception of certain pilot trials as authorized by the chief judge.[11] In Denver, the county Covid-19 status is at "Concern" which is higher than the their "Caution" standard.[12] According to the C.D.C., the level of community transition of Covid-19 in Colorado counties ranges in the "substantial" to "high" range, with Denver being listed in the "high" range.[13] COVID restrictions and related concerns will make it difficult for defense counsel to communicate in person and will require less efficient communication through telephone calls or videoconferences.

## Conclusion

For the reasons stated above this Court should enter an order continuing this case until October 18, 2021.

---

[11] *See* http://www.cod.uscourts.gov/Portals/0/Documents/Orders/GO_2021-3_Court_Operations.pdf. (last accessed March 11, 2021).
[12] *See* https://covid19.colorado.gov/data/covid-19-dial-dashboard. (last accessed March 11, 2021).
[13] *See* https://covid.cdc.gov/covid-data-tracker/#county-view (last accessed March 11, 2021).

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland (NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
tor@torekeland.com

*Attorney for Defendants Michael Tew
and Kimberley Tew*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE.**

I hereby certify that on Thursday, March 11, 2021, I electronically filed the foregoing UNOPPOSED MOTION FOR A 180-DAY ENDS OF JUSTICE CONTINUANCE UNDER 18 U. S. C. § 3161(h)(7) with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all opposing counsel of record.

/s/ Tor Ekeland



**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

X———————————————————————X

:

**UNITED STATES OF AMERICA**

Plaintiff,

v.

**MICHAEL AARON TEW,**
**KIMBERLEY ANN TEW, and**
**JONATHAN K. YIOULOS**

Defendants.

X———————————————————————X

**20-CR-00305-DDD**

**PROPOSED ORDER**
**CONTINUING TRIAL UNDER**
**18 U. S. C. § 3161(h)(7)**

[PROPOSED] TRIAL DATE:
10/18/2021

[PROPOSED] PRE-TRIAL
CONFERENCE DATE: 10/11/2021

The Court has read and considered the Motion Regarding the Unopposed Request for A 180-Day Ends Of Justice Continuance Under 18 U. S. C. § 3161(h)(7), filed by Defendants Mr. and Mrs. Tew in this matter on March 11, 2021. The Court hereby finds that the Motion, which this Court incorporates by reference into this Order, demonstrates facts that support a continuance of the trial date in this matter, and provides good cause for a finding of excludable time pursuant to the Speedy Trial Act, 18 U.S.C. § 3161.

The Court further finds that: (i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; and (iii) failure to grant the continuance would unreasonably deny defendant continuity of counsel and would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

1

THEREFORE, FOR GOOD CAUSE SHOWN:

1. The trial in this matter is continued from April 19, 2021 to October 18, 2021. The pre-trial conference date/last date to hear motions is October 11, 2021.

2. The time period of from April 19, 2021 to October 18, 2021, inclusive, is excluded in computing the time within which the trial must commence, pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), (h)(7)(B)(ii), and (B)(iv).

3. Defendant shall appear in Courtroom A 702 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294; and on October 18, 2021 at 9:00 a.m.

4. Nothing in this Order shall preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence. Moreover, the same provisions and/or other provisions of the Speedy Trial Act may in the future authorize the exclusion of additional time periods from the period within which trial must commence.

IT IS SO ORDERED.

_____       _____
DATE                                   THE HONORABLE DANIEL D. DOMENICO
                                       UNITED STATES DISTRICT COURT JUDGE


Presented by:

        /s/
_____
Tor Ekeland
Attorney for Defendants Michael Tew and Kimberley Tew

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**JUDGE DANIEL D. DOMENICO**

| | |
|---|---|
| Courtroom Deputy: Patricia Glover | Date: March 18, 2021 |
| Court Reporter: Tracy Weir | Interpreter: n/a |
| Probation: n/a | |

**CASE NO. 20-cr-00305-DDD**

Parties                                                                    Counsel

UNITED STATES OF AMERICA,                              Hetal Doshi
                                                                           Andrea Surratt
                                                                           Matthew Kirsch

        Plaintiff,

v.

Michael Aaron Tew,                                              Tor Ekeland
Kimberly Ann Tew,                                              Thomas Ward

        Defendants.

---

**COURTROOM MINUTES**

---

**HEARING – Motions**

**COURT IN SESSION: 10:40 a.m.**

Appearances of counsel all present via VTC. Defendants are on bond and present via VTC. Defendant Yioulas and his attorney are not present.

The Court addresses the Government's Motion Concerning Joint Representation (Doc. #108) and Motion to Withdraw (Thomas Ward) (Doc. #111) Argument.

**ORDER:     Motion to Withdraw (Thomas Ward) Doc. #111 is GRANTED.**

The Court's findings as to continued representation by Mr. Eklund of both Mr. and Mrs. Tew are as set forth on the record. That representation will be permitted to continue.

The Court addresses defendants' Motion for 180 Day Ends of Justice Continuance (Doc. #115).   Argument.

The Court made specific oral findings justifying a continuance of the trial, which findings are incorporated herein.

**ORDERED:**   that: the ends of justice served by the granting of such continuance outweigh the best interests of the public and the defendant in a speedy trial. **Defendants' Motion for 180 Day Ends of Justice Continuance is GRANTED as to all defendants. The Speedy Trial Clock deadline is reset to October 19, 2021. The Trial Preparation Conference scheduled on April 23, 2021 and the Jury Trial scheduled to commence on April 26, 2021 are VACATED and reset as follows:**

> **The eight-day trial in this matter is reset to commence on October 12, 2021 at 9:00 a.m.**

> **The trial preparation conference is reset for September 27, 2021 ad 10:30 a.m.**

> **Pretrial motions are due August 30, 2021. Responses are due on September 6, 2021.**

**All other deadlines remain as set in the court's pretrial order, Doc. 101.**

Bond is continued

**COURT IN RECES:**        **11:22 a.m.**
**Total in court time:**     **00:42**
**Hearing concluded**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.   **MICHAEL AARON TEW**;

    2.   **KIMBERLEY ANN TEW**; and
        a/k/a Kimberley Vertanen

    3.   **JONATHAN K. YIOULOS**,

    **Defendants.**

---

## MOTION TO RESTRICT

---

The United States of America, through the undersigned Assistant United States Attorneys, respectfully moves to restrict the brief in support of this motion, Dkt. 120, the document at Dkt. 121 as well as any order revealing the contents of that document for the reasons stated in the brief filed in support of this motion. The United States requests a "Level 1" Restriction, which would make the brief filed in support of this motion, Dkt. 120, the document at Dkt. 121 as well as any order revealing the contents of that document accessible by the court and all the parties.

[continued on next page]

1

Respectfully submitted this 29th day of March, 2021.

MATTHEW T. KIRSCH
Acting United States Attorney

By: _s/ Hetal J. Doshi_
HETAL J. DOSHI
ANDREA SURRATT
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email: Hetal.Doshi@usdoj.gov
Andrea.Surratt@usdoj.gov

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in the Court's Practice Standard III(A)(1).

_s/ Hetal J. Doshi_

Pursuant to the Court's Practice Standard III.C, the government notes that this motion tolls the speedy trial clock. 18 U.S.C. § 3161(h)(1)(D). The speedy trial clock was reset and started running on the indictment on February 11, 2021 as the last defendant appeared on February 10, 2021. *See* 18 U.S.C. § 3161(h)(6); Dkt. 101. The speedy trial clock was then tolled on February 28, 2021, with the filing of the government's motion concerning joint representation, but then started to run again on March 19, 2021. The Court has also, pursuant to a motion for an ends of justice continuance, ordered the exclusion of an additional 180 days. Dkt. 116. Twenty-seven days have elapsed on the speedy trial clock thus far.

## CERTIFICATE OF SERVICE

I hereby certify that on this 29th day of March, 2021, I electronically filed the foregoing **MOTION TO RESTRICT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case.

*s/ Hetal J. Doshi*
Hetal J. Doshi
U.S. Attorney's Office

3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1.  **MICHAEL AARON TEW**;

   2.  **KIMBERLEY ANN TEW**; and
      a/k/a Kimberley Vertanen

   3.  **JONATHAN K. YIOULOS**,

     **Defendants.**

---

## ORDER TO RESTRICT DKTS. 120, 121

---

The Court has considered the government's Motion to Restrict the document at Dkt. 121, [Dkt. 119 (motion to restrict)], and brief in support, Dkt. 120.

Upon consideration and for good cause shown,

IT IS ORDERED that Dkts. 120 and 121 are hereby restricted at Level 1 restriction until further order of the Court.

IT IS SO ORDERED on this _____ day of March, 2021.


                                           **BY THE COURT:**


                                    _____
                                    THE HONORABLE DANIEL D. DOMENICO
                                    UNITED STATES DISTRICT COURT JUDGE

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

   1.  **MICHAEL AARON TEW**;

   2.  **KIMBERLEY ANN TEW**; and
      a/k/a Kimberley Vertanen

   3.  **JONATHAN K. YIOULOS**,

      **Defendants.**

---

## UNOPPOSED MOTION FOR PROTECTIVE ORDER

---

Pursuant to Fed. R. Crim. P. 16(d), the United States of America respectfully moves for entry of a protective order governing use and disclosure of tax information, personal identifying information ("PII"), and other sensitive information.

1.     Title 26 United States Code Section 6103(h)(4)(D) provides that returns or taxpayer return information may be disclosed "to the extent required by order of the court pursuant to . . . rule 16 of the Federal Rules of Criminal Procedure." Such order was entered in this matter on February 5, 2021. *See e.g.,* Discovery Conference Memorandum and Order, Dkt. No. 91 (re: Michael Aaron Tew).

2.     Although disclosure is appropriate, the tax information at issue contains confidential

1

information and details about primarily defendant Michael Aaron Tew and, in a more limited capacity, defendant Kimberley Ann Tew. In addition to sensitive tax information, the government's discovery in this matter includes many documents that contain Personal Identifying Information (PII) subject to redaction under Rule 49.1 of the Federal Rules of Criminal Procedure. Such PII includes, for example, bank account numbers, driver's license numbers, complete social security numbers, and addresses. This PII belongs to the co-defendants in addition to co-defendants' family members and associates. The government's discovery further includes sensitive financial and other banking information related to the victim company. Finally, the government has collected electronic evidence – for example, extractions of cell phones – that may include photos or depictions of the defendants' minor children or stepchildren of the sort that would typically be found on parents' cell phones.

3.     The current discovery in this case includes, for example, records from more than ten financial institutions, many of which have records related to multiple bank accounts over multiple years, along with other financial records. As a result, the government has designated this as a "document disclosure extensive" matter on the discovery conference memoranda. *See e.g.*, Dkt. 91 (Discovery Conference Memorandum for Michael Aaron Tew). The PII described above is found throughout the discovery materials. Redaction of this information would be extremely time-consuming and would significantly delay the government's provision of discovery to the defendants.

4.     Rule 16(d)(1) of the Federal Rules of Criminal Procedure gives the Court broad authorization to issue an appropriate protective order governing discovery for good cause shown. Given the sensitive nature of tax information, PII, as well as banking and financial information about the victim company, concerns about the privacy of minors, and the statutes governing use and disclosure of such material, there is good cause for the court to issue the attached proposed protective

2

order.   The government respectfully requests that the protective order be issued as follows:

      A.    Defense counsel shall exercise reasonable care in ensuring the confidentiality of all disclosed tax materials, documents disclosed that contain return information as defined in 26 U.S.C. § 6103, any notes or other materials prepared based upon or referring to information in the tax returns or return information, any documents containing PII, any documents or materials reflecting financial information for the alleged victim company, and any photographs or depictions of minor children (collectively, the "Protected Information"). Defense counsel shall use the Protected Information exclusively in connection with this case (including trial preparation, motions practice, trial, and appeals or other related legal proceedings), and for no other purpose.   Each individual defendant is, however, authorized to use in any lawful manner Protected Information that reflects (a) only his or her own PII or that of the individual defendant's minor children, and (b) no other person's PII or any financial information about victims or other third parties.

      B.    The Protected Information may be viewed only by the defendants (subject to the conditions set forth in paragraph D), defense counsel, and such members of defense counsel's staff as are necessary for the purposes outlined above and, as it pertains to staff, only while necessary staff are operating under the direct supervision and control of defense counsel. Defense counsel shall ensure that all persons in their offices who are to handle the Protected Information read the protective order and are informed of their responsibility to safeguard this information.   The Protected Information may also be shared with defense experts, but such experts must read the protective order in advance of provision of the Protected Information and be informed of their responsibility to safeguard this information.

<center>3</center>

C.      Defense counsel shall make only such copies of or provide electronic access to the information described in paragraph B as is necessary to prepare a defense of this criminal case.   Defense counsel shall keep a written record concerning how many copies were made, to whom those copies were delivered, and the dates of delivery and if access is provided to any person electronically, defense counsel shall keep a written record reflecting who was provided electronic access.   Defense counsel shall also deliver a copy of the protective order with the materials, whether they are provided in physical copy or electronically.

D.      Defense counsel is authorized to make only those copies of the Protected Information for the defendant(s) they represent that are necessary for the defense of the case and/or to provide the defendant with electronic access to the Protected Information. In the case of physical copies, defendants must store, secure, hold, and control their copy or copies of the Protected Information, and in the case of electronic access, defendants must store, secure, hold, and control their individual credentials to electronically access the Protected Information.   Whether their access to the materials is through physical copy or electronically, defendants may not make any further copies of the Protected Information nor may they distribute or transmit the Protected Information to any party outside the scope of paragraph B, with the exception noted in paragraph A that each individual defendant is authorized to use in any lawful manner Protected Information that (a) reflects only his or her own PII or that of the individual defendant's minor children, and (b) contains no other person's PII or any financial information about victims or other third parties.

E.      A copy of the protective order shall be kept with the Protected Information.

F.      After all direct and collateral appeals have been exhausted in this matter,

4

defense counsel within thirty days of final order on the last direct or collateral appeal shall collect and destroy all copies of the Protected Information, with the exception of counsel's notes or work product that may contain return information, which defense counsel will retain consistent with the terms of this Order.

G.      If a document containing Protected Information is filed with the court, the filing party must either redact the Protected Information from the document or, if the Protected Information is material to the court's determination, shall file the document as restricted at Level 1.

H.      All parties are prohibited from use of any photographs or visual depictions of any minors produced in discovery in any Court proceeding or filing absent prior permission of the Court.

5.      The government has conferred with Mr. Ekeland for defendants Michael Aaron Tew and Kimberley Ann Tew, and Michael Tallon for defendant Jonathan K. Yioulos, and is authorized to state that counsel does not oppose issuance of the order requested.

WHEREFORE, the United States respectfully requests entry of the attached proposed order permitting disclosure of the Protected Information and designating the sensitive information described herein as protected.

5

Respectfully submitted this 31st day of March, 2021.

MATTHEW T. KIRSCH
Acting United States Attorney

By: *s/ Hetal J. Doshi*
Hetal J. Doshi
Andrea Surratt
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Fax: (303) 454-0409
E-mail:   Hetal.Doshi@usdoj.gov
          Andrea.Surratt@usdoj.gov
Attorneys for the United States

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2021, the foregoing **UNOPPOSED MOTION FOR PROTECTIVE ORDER** was filed with the Court using CM/ECF which will send notification of such filing to all counsel of record.

<div align="right">

*s/ Hetal J. Doshi*
Hetal J. Doshi

</div>

<div align="center">7</div>

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

**Criminal Action No. 20-cr-00305-DDD**

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  **MICHAEL AARON TEW**;

    2.  **KIMBERLEY ANN TEW**; and
       a/k/a Kimberley Vertanen

    3.  **JONATHAN K. YIOULOS**,

    **Defendants.**

---

## ORDER GRANTING UNOPPOSED MOTION FOR PROTECTIVE ORDER

---

This matter is before the Court on the government's Unopposed Motion for Protective Order. Having reviewed the motion, and finding good cause shown, the Court ORDERS as follows:

A.     Defense counsel shall exercise reasonable care in ensuring the confidentiality of all disclosed tax materials, documents disclosed that contain return information as defined in 26 U.S.C. § 6103, any notes or other materials prepared based upon or referring to information in the tax returns or return information, any documents containing Personal Identifying Information (PII) ,[1] any documents or materials reflecting financial information for the alleged victim company, and any

---

[1] PII includes information that can be used to identify a person, including home address, date of birth, full names of minors, Social Security number, tax identification number, driver's license number, and financial account information. *See* Fed. R. Crim. P. 49.1 (defining requirements for redaction for documents filed with the court).

photographs or depictions of minor children (collectively, the "Protected Information"). Defense counsel shall use the Protected Information exclusively in connection with this case (including trial preparation, motions practice, trial, and appeals or other related legal proceedings), and for no other purpose. Each individual defendant is, however, authorized to use in any lawful manner Protected Information that (a) reflects only his or her own PII or that of the individual defendant's minor children, and (b) contains no other person's PII or any financial information about victims or other third parties.

B.     The Protected Information may be viewed only by the defendants (subject to the conditions set forth in paragraph D), defense counsel, and such members of defense counsel's staff as are necessary for the purposes outlined above and, as it pertains to staff, only while necessary staff are operating under the direct supervision and control of defense counsel. Defense counsel shall ensure that all persons in their offices who are to handle the Protected Information read the protective order and are informed of their responsibility to safeguard this information. The Protected Information may also be shared with defense experts, but such experts must read the protective order in advance of provision of the Protected Information and be informed of their responsibility to safeguard this information.

C.     Defense counsel shall make only such copies of or provide electronic access to the information described in paragraph (B) as is necessary to prepare a defense of this criminal case. Defense counsel shall keep a written record concerning how many copies were made, to whom those copies were delivered, and the dates of delivery and if access is provided to any person electronically, defense counsel shall keep a written record reflecting who was provided electronic access. Defense counsel shall also deliver a copy of the protective order with the materials, whether they are provided

2

in physical copy or electronically.

D.     Defense counsel is authorized to make only those copies of the Protected Information for the defendant(s) they represent that are necessary for the defense of the case, and/or to provide the defendant with electronic access to the Protected Information. In the case of physical copies, defendants must store, secure, hold, and control their copy or copies of the Protected Information, and in the case of electronic access, defendants must store, secure, hold, and control their individual credentials to electronically access the Protected Information.   Whether their access to the materials is through physical copy or electronically, defendants may not make any further copies of the Protected Information nor may they distribute or transmit the Protected Information to any party outside the scope of paragraph B, with the exception noted in paragraph A that each individual defendant is authorized to use in any lawful manner Protected Information that (a) reflects only his or her own PII or that of the individual defendant's minor children, and (b) contains no other person or entity's PII or any financial information about victims or other third parties.

E.     A copy of the protective order shall be kept with the Protected Information.

F.     After all direct and collateral appeals have been exhausted in this matter,, defense counsel within thirty days of final order on the last direct or collateral appeal shall collect and destroy all copies of the Protected Information, with the exception of counsel's notes or work product that may contain return information, which defense counsel will retain consistent with the terms of this Order.

G.     If a document containing Protected Information is filed with the court, the filing party must either redact the Protected Information from the document or, if the Protected Information is material to the court's determination, shall file the document as restricted at Level 1.

3

H.     All parties are prohibited from use of any photographs or visual depictions of any minors produced in discovery in any Court proceeding or filing absent prior permission of the Court.

Dated this _____ day of March, 2021, at Denver, Colorado.

BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

4

# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

X_____X
:
**UNITED STATES OF AMERICA** :
:          **20-CR-00305-DDD**
              Plaintiff, :
:      **NOTICE OF APPEARANCE**
     v. :
:
**MICHAEL AARON TEW,** :
**KIMBERLEY ANN TEW, and** :
**JONATHAN K. YIOULOS** :
:
          Defendants. :
:
X_____X

### NOTICE OF APPEARANCE OF MICHAEL HASSARD AS ATTORNEY FOR DEFENDANTS

To the Clerk of the Court and all parties of record:

Please take notice that the undersigned attorney is admitted to practice in this Court and is retained as counsel for Defendants MICHAEL AARON TEW and KIMBERLEY ANN TEW.

Dated: June 23, 2021

Respectfully submitted,

/s/ Michael Hassard

Michael Hassard
(NYS Bar No. 5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
michael@torekeland.com

1

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Michael Hassard (hassard.mike@gmail.com, michael@torekeland.com), Hetal Janak Doshi
(caseview.ecf@usdoj.gov, hetal.doshi@usdoj.gov, portia.peter@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Matthew T. Kirsch (caseview.ecf@usdoj.gov,
mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Tor
Bernhard Ekeland (billing@torekeland.com, docketing@torekeland.com,
susanna@torekeland.com, tor@torekeland.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(andrew_nussbaum@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8204648@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Modify
Conditions of Release
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 7/15/2021 at 1:24 PM MDT and filed on 7/15/2021

**Case Name:**         USA v. Tew et al
**Case Number:**       1:20-cr-00305-DDD
**Filer:**
**Document Number:** 138(No document attached)

**Docket Text:**
**MINUTE ENTRY for Motion Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 7/15/2021. Defendant present on bond. Argument by defense counsel and counsel for the government as to [134] Motion to Modify Conditions of Release. Court addresses defense counsel. The Court modifies defendant's bond to remove the condition of home confinement and radio frequency and imposes GPS monitoring and imposes a curfew of 8:00 a.m.–9:00 p.m. Probation is granted discretion to allow exceptions to the curfew when requested by defendant. Defendant acknowledges the new conditions of bond and agrees to abide by them. Defendant's bond continued. (Total time: 22 minutes, Hearing time: 11:08–11:30)**

**APPEARANCES: Matthew Kirsch, Hetal Doshi and Andrea Surratt on behalf of the Government, Tor Ekeland and Michael Hassard on behalf of the defendant, Carlos Morales on behalf of probation. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry**

**1:20-cr-00305-DDD-2 Notice has been electronically mailed to:**

Matthew T. Kirsch     matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov,
USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com,
tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

CASE NO. 20-CR-00305-DDD

UNITED STATES OF AMERICA,

        Plaintiff,

v.

3. JONATHAN K. YIOULOS,

        Defendant.

---

## NOTICE OF DISPOSITION

---

    JONATHAN K. YIOULOS, by and through undersigned counsel, Michael J. Tallon, hereby notifies this Court that a disposition has been reached in his case with the government. Accordingly, the parties are requesting permission to contact the Judge's chambers to schedule a change of plea hearing.

                    Respectfully submitted,

                    /s/ Michael J. Tallon
                    MICHAEL J. TALLON
                    New York Bar No. 1752781

                    Email: mtallon@tallonlaw.com

                    45 Exchange Boulevard, Suite 500
                    Rochester, New York 14614
                    Phone:      (585) 319-4170
                    Cellular:    (585) 329-8139

                    **ATTORNEY FOR DEFENDANT**
                    **JONATHAN K. YIOULOS**

## CERTIFICATE OF SERVICE

I hereby certify that on July 19, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Hetal Doshi, Assistant United States Attorney
E-mail:    hetal.doshi@usdoj.gov

And I hereby certify that I have mailed or served the document or paper to the following non CM/ECF participant in the manner (mail, hand-delivery, etc.) indicated by the non-participant's name:

Via E-MAIL
Jonathan K. Yioulos

/s/Judith G. Deatsch
JUDITH G. DEATSCH
Legal Assistant to
MICHAEL J. TALLON

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Michael Hassard (hassard.mike@gmail.com, michael@torekeland.com), Hetal Janak Doshi
(caseview.ecf@usdoj.gov, hetal.doshi@usdoj.gov, portia.peter@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Tor Bernhard Ekeland (billing@torekeland.com,
docketing@torekeland.com, susanna@torekeland.com, tor@torekeland.com), Matthew T. Kirsch
(caseview.ecf@usdoj.gov, mariah.hill@usdoj.gov, matthew.kirsch@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8221231@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 7/27/2021 at 3:32 PM MDT and filed on 7/27/2021

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 142(No document attached) |

**Docket Text:**

**ORDER as to Jonathan K. Yioulos. ORDER as to Jonathan K. Yioulos. Pursuant to Notice of Disposition (Doc. 139), a Change of Plea Hearing is SET for 10/7/2021 at 11:30 PM in Courtroom A 1002 before Judge Daniel D. Domenico. The trial dates and all other deadlines previously set are VACATED. Counsel for the parties shall email a courtesy copy of the Plea Agreement and the Statement in Advance of Plea of Guilty in the form required by Local Crim. R. 11.1(c)–(d) to Domenico_Chambers@cod.uscourts.gov no later than 12:00 p.m. three business days prior to the Change of Plea Hearing. If these documents are not timely submitted, the hearing may be vacated. The original and one copy of these documents shall be delivered to the courtroom deputy at the time of the hearing pursuant to Local Crim. R. 11.1(e). Defense counsel who reviewed and advised Defendant regarding the Plea Agreement must attend the Change of Plea Hearing. SO ORDERED by Judge Daniel D. Domenico on 7/27/2021. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Matthew T. Kirsch    matthew.kirsch@usdoj.gov, CaseView.ECF@usdoj.gov,

USACO.ECFCriminal@usdoj.gov, mariah.hill@usdoj.gov

Hetal Janak Doshi     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO



X_____X
: :
**UNITED STATES OF AMERICA** :
: 
                              Plaintiff, :                    **20-CR-00305-DDD**
:
                                        :
          v.                            :       **UNOPPOSED MOTION FOR A**
:       **12-MONTH ENDS OF JUSTICE**
:       **CONTINUANCE UNDER 18 U. S.**
:       **C. § 3161(h)(7)**
:
**MICHAEL AARON TEW,** :
**KIMBERLEY ANN TEW, and** :
**JONATHAN K. YIOULOS** :
                              Defendants. :
X_____X

Under 18 U.S.C. § 3161(h)(7) Defendants' Michael Aaron Tew and Kimberly Ann Tew

("Defendants") hereby move this Court for a 12-Month Ends of Justice Continuance changing

the current trial date from October 12, 2021, to October 12, 2022. This is the second continuance

request by Defendants Mr. and Mrs. Tew. Based on the Court Order issued on July 27, 2021, the

trial dates and all other deadlines previously set for defendant Jonathan K. Yioulos are vacated

but Defendants are still docketed for trial beginning on October 12, 2021. Defense counsel has

conferenced with the Government. The Government does not agree with and does not concede

all of Defendant's statements below about the victim. The Government does not, however, think

that its disagreement about those statements otherwise undercuts the basis for the continuance

sought and therefore does not oppose the relief sought by this motion.

1

## Background

On February 3, 2021, the Government filed its Indictment against Defendants.[1] On February 11, 2021, this Court set a trial date of April 19, 2021.[2] The Court also ordered motions due by March 12, 2021, with responses due by March 17, 2021, and excluded nineteen days from Mr. Tew's Speedy Trial Clock.[3] On March 11, 2021 Defendants filed their First Unopposed Motion for a Continuance.[4] On March 18, 2021, this Court granted the continuance and set a trial date of October 12, 2021.[5] The Court also ordered Pretrial Motions due by August 30, 2021, with Responses due by September 6, 2021.[6] Defendants are currently out on bond under pre-trial supervised release.

## Legal Standard

The Speedy Trial Act requires that a criminal defendant's trial commence within seventy days after his indictment or initial appearance, whichever is later.[7] "The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings."[8] Certain periods of delay are excluded under the Speedy Trial Act and do not count toward the 70-day "Speedy Trial Clock."[9] 18 U.S.C. § 3161 (h)(7) allows for periods of delay that "shall be excluded in computing the time . . . within which the trial of any ... offense must commence."[10] This

---

[1] (*See* Indictment, Dkt. No. 83).
[2] (*See* Order Setting Trial Date, Dkt. No. 101).
[3] (*Id.*)
[4] (Dkt. No. 115).
[5] (*See* Order Setting Trial Date, Dkt. No. 116).
[6] (*Id.*)
[7] (*Id.* at 5-6); 18 U.S.C. § 3161 (c)(1).
[8] *See e.g., United States v. Nemecia-Garcia*, No. 14-cr-00144-CMA, 2016 U.S. Dist. LEXIS 197426, p. 5 (D. Colo. Feb. 12, 2016) (citing *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993)).
[9] *See* 18 U.S.C. § 3161 (h)(1) - (8).
[10] *See* 18 U.S.C. § 3161 (h)(7).

excludable delay occurs when a court finds that "the ends of justice served by taking action outweigh the best interest of the public and the defendant in a speedy trial."[11] Courts routinely grant ends of justice continuances in cases like this.[12]

## Continuance Grounds

This is a complex case involving sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants. One of those three co-defendants, Mr. John Yioulous, just changed his disposition and is scheduled to enter a guilty plea. The Defense is diligently reviewing the large volume of discovery produced by the Government. To date, the Government has produced more than 230,000 documents and, in addition to those documents, more that approximately 300 gigabytes of electronically stored data. The Defense and Government are communicating regarding technical and substantive issues surrounding the initial production. Based on its review, the Defense anticipates issuing multiple subpoenas to the entities, witnesses, and individuals with knowledge, information, and documents related to the Indictments' allegations. Furthermore, it is likely that expert financial and other analysis is required given that the alleged victim company appears to have been engaged in massive financial fraud despite paying $28 million to the Government in 2008 to settle civil and criminal claims for issuing false invoices to the Government and agreeing never to do it again.[13] The Government has informed the Defendants that this is a "document disclosure extensive" matter on the Discovery Conference Memoranda.[14] After conferring with the Government, the parties agreed that given the voluminous discovery, the substantive issues to

---

[11] *See* 18 U.S.C. § 3161 (h)(7).
[12] *See e.g., United States v. Hopson*, No. 12-cr-00444-LTB, 2014 U.S. Dist. LEXIS 9248, at *4 (D. Colo. Jan. 17, 2014).
[13] *See e.g., United States v. National Air Cargo Inc.*, No. 07-CR-00254S (W.D.N.Y. Mar. 26, 2008).
[14] (*See e.g.*, Discovery Conference Memorandum for Michael Aaron Tew, Dkt. No. 91).

resolve pre-trial, the parties schedules, and COVID-19, a 12-month continuance is appropriate.
This would continue the trial date to October 12, 2022.

These factors, listed below with others, justify an ends of justice continuance of 12-
months so Defendants can properly prepare a complete defense:

1. Based on its initial review of the voluminous discovery produced to date by the
   Government, the Defense expects to issue multiple subpoenas for financial records.

2. The Defense expects that the current discovery, and that obtained by subpoenas, will
   require expert financial analysis.

3. Defense counsel is still reviewing the Government produced e-discovery and
   communicating with the Government regarding technical and substantive issues. For
   example, some files in the discovery are unreadable (a common occurrence with large
   initial productions), some are redacted, and some are in non-native format. The Defense
   is currently compiling a list for inclusion in a forthcoming Fed. R. Crim. P. 16 letter to
   the Government.

4. Defense counsel is still investigating the facts, including the alleged victim National Air
   Cargo ("NAC"). In 2008 NAC pleaded guilty to one count of knowingly making a
   materially false statement to the United States and paid $28 million to resolve civil and
   criminal cases related to its defrauding the Department of Defense during wartime.[15]
   Defense counsel needs time to request information from NAC, including, but not limited
   to, its audits, compliance with GAAP, its financial controls and policies, systems and
   procedures, its use of PPP funds, its false invoices, settlement and deferred or non-
   prosecution agreement(s), client's communication records, data entry logs, audit and

---

[15] *See e.g*, Press Release, Dep't of Just., National Air Cargo to Pay $28 Million to Resolve Allegations of
Defrauding the Department of Defense (Mar. 26, 2008).

financial statement review, security filings, accounting records, and any related evidence gathered from digital forensics, CCTV footage, mobile surveillance, and interviews. Defense counsel also needs time to investigate NAC's financial transactions with its Dubai and Hong Kong entities because they appear related to this case.

5. The need to review and analyze this large volume of produced and yet unproduced discovery makes it unreasonable to expect adequate preparation by Defendants, despite due diligence, for trial on October 12, 2021.

6. The Coronavirus Disease (COVID-19) pandemic has also crippled the state of Colorado, the United States and the world. Beginning on March 13, 2020, Chief Judge Philip A. Brimmer entered a series of orders concerning court operations and prohibiting trials in all but certain tightly controlled selected cases. On June 16, 2021, Chief Judge Philip A. Brimmer entered an Extension of CARES Act Findings Regarding Criminal Proceedings.[16] Currently the Delta Variant is raging across the United States, and the Centers for Disease Control and Prevention has recently recommended more restrictive measures to prevent its spread.[17] COVID restrictions and related concerns, especially the Delta Variant, will make it difficult for defense counsel to communicate in person and will require less efficient communication through telephone calls or videoconferences.

## Conclusion

For the reasons stated above this Court should enter an order continuing this case until October 12, 2022.

---

[16] http://www.cod.uscourts.gov/Portals/0/Documents/Orders/GO_2021-7_CARES_Act_Extension.pdf
[17] https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html

Dated: August 10, 2021
Brooklyn, NY

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland
(NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
tor@torekeland.com

/s/ Michael Hassard

Michael Hassard
(NYS Bar No. 5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
michael@torekeland.com

*Attorneys for Defendants Michael Tew and Kimberley Tew*

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE.**

I hereby certify that on Tuesday, August 10, 2021, I electronically filed the foregoing UNOPPOSED MOTION FOR A 12-MONTH ENDS OF JUSTICE CONTINUANCE UNDER 18 U. S. C. § 3161(h)(7) with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all opposing counsel of record.

/s/ Tor Ekeland

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**MICHAEL AARON TEW**,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

     Defendants.

---

## ORDER GRANTING, IN PART, UNOPPOSED MOTION TO CONTINUE

---

Before the Court is Defendants' unopposed motion to continue the trial date in this case by one year, and to exclude that period of delay when computing the time within which his trial must commence under the Speedy Trial Act. (Doc. 143.) For the following reasons, the Court finds that a continuance is warranted, but only for one hundred and eighty days. The Court also finds that the ends of justice served by granting the continuance outweigh the best interests of the public and Defendant in a speedy trial. Accordingly, Defendants' motion is granted in part.

### PROCEDURAL HISTORY

On July 8, 2020, a criminal complaint was issued as to Mr. Tew, and he was arrested on July 9, 2020. Mr. Tew waived indictment. On February 3, 2021, an indictment was issued for both Mr. and Mrs. Tew. Mr. Tew was indicted on one count of conspiracy to commit wire fraud (18

U.S.C. § 1349), 39 counts of wire fraud ((18 U.S.C. § 1343), one count of money laundering, one count of conspiracy to commit money laundering (18 U.S.C. § 1956(h)), thirteen counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), and four counts of willful failure to file a tax return (20 U.S.C. § 7203). Mrs. Tew was indicted on similar charges, including one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), six counts of wire fraud (18 U.S.C. § 1343), and five counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).

On February 5, 2021, Mr. Tew entered a plea of not guilty at his arraignment, and Mrs. Tew entered a plea of not guilty on February 10, 2021. making April 22, 2021 the deadline for their trial to commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On February 11, 2021, the Court entered an order setting trial to commence on April 19, 2021. (Doc. 101.) The Court excluded 19 days because of motion (Doc. 101) and 180 days for an Ends of Justice Continuance (Doc. 116).

On August 10, 2021, Defendants filed the motion to continue currently before the Court. (Doc. 143.) The government does not oppose the requested continuance. (*Id.* at 1.)

## APPLICABLE LAW

When evaluating a request to continue a trial, the Court considers the following factors: (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and the Court resulting from the continuance; and (4) the need asserted for the continuance and the harm that the party requesting it might suffer

- 2 -

if the continuance is denied. *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987). No single factor is determinative, and the weight given to any one factor may vary depending on the extent of the showing on the others. *Id.* However, "by far the most important factor to consider" is the requesting party's need for a continuance and the prejudice resulting from its denial. *Id.* at 1471.

When a request for continuance implicates Speedy Trial Act requirements, the Court may exclude from the statutory time period within which the Defendants' trial must commence "[a]ny period of delay resulting from a continuance granted . . . on the basis of [the Court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In order to exclude the period resulting from such a continuance, the Court must set forth in the record its reasons for finding that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial, considering the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> . . . .

> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of

counsel, or would deny counsel for the defendant or the at-
torney for the Government the reasonable time necessary
for effective preparation, taking into account the exercise
of due diligence.

18 U.S.C. § 3161(h)(7)(A)-(B); *see also United States v. Toombs*, 574
F.3d 1262, 1268 (10th Cir. 2009).

## DISCUSSION

Defendants requests a continuance for the following reasons: (1)
counsel requires additional time to issue additional subpoenas for finan-
cial records; (2) the resulting discovery will require expert financial
analysis; (3) counsel requires more time to review and analyze the dis-
covery disclosed by the government to date (consisting of more than
230,000 documents and 300 gigabytes of electronically stored data), and
to obtain and review additional discovery from the government; (4) coun-
sel requires more time to investigate additional financial transactions
that it believes are relevant to this case, and (5) counsel requires more
time to communicate remotely with clients due to travel concerns from
COVID-19. (Doc. 143 at 3-5.)

The Court finds that the *West* factors weigh in favor of granting a
continuance. Nothing in the record suggests that Defendant and his
counsel have not been diligent in preparing for trial. It also appears
likely that the continuance, if granted, would accomplish Defendants'
stated purpose of allowing adequate time to obtain and review discovery,
conduct further factual investigation, conduct legal research, engage in
plea discussions with the government, and prepare for a jury trial if nec-
essary. The government does not oppose the requested continuance, and
the continuance will not cause any significant inconvenience to the
Court. And Defendant might be significantly prejudiced if the continu-
ance is denied, as he may be unable to effectively prepare for trial, or to

knowingly and intelligently engage in plea discussions, without adequate time to conduct investigation and research relevant to the case. However, the requested year continuance would be a substantial variance from the ordinary speedy trial timeline. A continuation and exclusion of 180 days is appropriate at the moment. Though the Court may need to grant additional continuances and exclusions, 180 days is sufficient to reevaluate the progress of discovery production and subpoenas.

The Court further finds that the Speedy Trial Act factors weigh in favor of a finding that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. It is in the Defendants' best interest to have sufficient time to complete necessary pretrial tasks and discuss his case with his attorney. Without the requested continuance, the defense will be unable to effectively prepare the case, file appropriate motions, or engage in plea discussions. A limited ends-of-justice continuance will not subvert the public's or Defendants' interest in the prompt prosecution of this case.

Accordingly, based on the relevant record considered as a whole, the Court FINDS that:

Failure to grant a continuance of trial beyond the time prescribed by 18 U.S.C. § 3161(c)(1) would likely result in a miscarriage of justice, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i);

Even taking into account the exercise of due diligence, failure to grant a continuance would deny counsel for Defendant the reasonable time necessary for effective pretrial and trial preparation within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv);

The ends of justice served by granting the requested continuance outweigh the best interest of the public and Defendant in a speedy trial within the meaning of 18 U.S.C. § 3161(h)(7)(A); and

One hundred and eighty days should be excluded from the computation of the speedy trial time.

For the foregoing reasons,[1] it is ORDERED that:

Defendants' Unopposed Motion for a 12-Month Ends of Justice Continuance (Doc. 143) is PARTIALLY GRANTED;

One hundred eighty (180) days, from September 22, 2021 to March 21, 2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time;

The eight-day trial set to begin October 12, 2021 is VACATED and RESET to April 4, 2022 at 9:00 am in Courtroom A1002. Pretrial Motions are due January 3, 2022, Responses due by January 10, 2022. The Trial Preparation Conference set for September 27, 2021 is VACATED and RESET to March 21st at 1:00 pm in Courtroom A1002.

DATED: September 22, 2021          BY THE COURT:

Hon. Daniel D. Domenico
United States District Judge

---

[1]   As required by 18 U.S.C. § 3161(h)(7)(C), the Court has not predicated its ruling on congestion of its calendar or lack of diligent preparation by the government's counsel.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. __20-CR-00305-DD__

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    MICHAEL AARON TEW,
    KIMBERLEY ANN TEW, and
    JONATHAN K. YIOULOS,

    Defendant.

---

## ENTRY OF APPEARANCE OF COUNSEL

---

To:    The clerk of court and all parties of record

    I hereby certify that I am a member in good standing of the bar of this court, and I

appear in this case as counsel for:

        Michael Aaron Tew

        Kimberley Ann Tew

        Dated: October 12, 2021

    Xuan Zhou
    Name of Attorney

    Tor Ekeland Law, PLLC
    Firm Name

    30 Wall Street, 8th Floor
    Office Address

    New York, NY, 10005
    City, State, ZIP Code

    (718) 737-7264
    Telephone Number

    xuan@torekeland.com
    Primary CM/ECF E-mail Address

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### JUDGE DANIEL D. DOMENICO

| | | |
|---|---|---|
| Courtroom Deputy: | Patricia Glover | Date: November 18, 2021 |
| Court Reporter: | Julie Thomas | Interpreter:  n/a |
| Probation: | n/a | |

**CASE NO.   20-cr-00305-DDD-3**

| Parties | Counsel |
|---|---|
| UNITED STATES OF AMERICA, | Hetal Doshi |
| | Andrea Surratt |
| Plaintiff, | |
| v. | |
| JONATHON K. YIOULOS, | Michael Tallon |
| Defendant. | |

## ARRAIGNMENT AND CHANGE OF PLEA HEARING

**1:36 p.m.        Court in session.**

All parties appear via VTC with Defendant present on bond who consents to this hearing by video.   Mr. Ekland appears on behalf of co-defendants, Michael and Kimberley Tew.

Defendant sworn.

Defendant advised regarding:

1) The Plea Agreement;
2) The maximum and minimum penalties, terms and conditions of supervised release, restitution, probation and/or forfeiture;
3) The objectives and factors in 18 U.S.C. §3553(a).

The Court explains defendant's right to a trial by jury and other constitutional rights and confirms that the defendant desires to waive such rights.

Defendant is rearraigned on Counts 1 and 39 of the **Indictment**.   Defendant pleads guilty to Counts 1 and 39 of the **Indictment.**

Oral findings are made of record.

**ORDER:**      Plea Agreement and Statement by Defendant in Advance of Plea of Guilty (and any translations thereof) are received**.**

**ORDER:**      Defendant's plea is accepted and defendant is adjudged guilty as charged in **Counts 1 and 39 of the Indictment.**

**ORDER:**      Probation department shall conduct a presentence investigation and submit a presentence report as required by Fed.R.Cr.P.32. Defendant shall, with the assistance of counsel, immediately after this hearing or as soon as is practicable make arrangements to participate in the presentence investigation and shall cooperate fully with the probation department.

**ORDER:**      Sentencing hearing is set **February 10, 2022, at 1:30 p.m.,** in Courtroom A1002, 901 19th Street, Denver, CO. Any hearings other than Sentencing are hereby VACATED.   Any pretrial motions that are pending are hereby declared moot.

**ORDER:**      Any objections to the presentence report and any motions for departure or variance will be filed within 14 days or receiving the presentence report in accordance with Fed.R.Crim.P.32(f)(1).   Any responses to objections or motions shall be filed no later than seven days prior to the sentencing date. Any requests by the Government for preliminary forfeiture shall be done by written motion.

**ORDER:**      Bond is Continued up to and including the time of Sentencing.

**1:58 p.m.      Court in recess.**

**Total Time:   00:22**
**Hearing concluded.**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

　　Plaintiff,

v.

3.  JONATHAN K. YIOULOS,

　　Defendant.

---

## PLEA AGREEMENT

---

The United States of America (the government), through Assistant United States Attorneys Hetal J. Doshi and Andrea Surratt, and the defendant, Jonathan K. Yioulos, personally and by counsel, Michael Tallon, hereby submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1 and Fed.R.Crim.P.11(c)(1)(A) and (B).

## I.  AGREEMENT

*A.*　　*Defendant's Obligations*

The defendant agrees to (1) plead guilty to Counts One and Thirty-Nine of the Indictment, charging a violation of 18 U.S.C. §§ 1349 and 1343, respectively; (2) waive his appeal rights, as detailed below; (3) pursuant to 18 U.S.C. § 3663(a)(3) be liable for restitution to N.A.C. in an amount to be determined at sentencing, but not less than $5,053,878.50, for which he could be jointly and severally liable with other co-conspirators; and (4) agree not to contest forfeiture of proceeds, as described fully below.

*B.*　　*Government's Obligations*

In exchange for the defendant's plea of guilty and his waiver of appeal rights, the government agrees to the following: (1) to file no other federal criminal charges against the defendant based on

1

COURT EXHIBIT
1

matters currently known to the government; (2) recommend a sentence of imprisonment no greater than 63 months; (3) at the time of sentencing, move to dismiss Counts 2-38, and 40 as against YIOULOS only; and (4) recommend a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1, provided that the defendant does not do anything that is inconsistent with accepting responsibility between and including the date of his guilty plea and the date of sentencing.

C.     *Defendant's Waiver of Appeal*

The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or sentence, including the restitution order, unless it meets one of the following criteria: (1) the sentence exceeds the maximum sentence provided in the statutes of conviction, 18 U.S.C. § 1343 and 1349; (2) the sentence exceeds the advisory guideline range that applies to a total offense level of 26; or (3) the government appeals the sentence imposed. If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence, including the restitution order, in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) the defendant should receive the benefit of an explicitly retroactive change in the sentencing

guidelines or sentencing statute; (2) the defendant was deprived of the effective assistance of counsel; or (3) the defendant was prejudiced by prosecutorial misconduct.

The defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this case number. The defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that "extraordinary and compelling reasons" for a sentence reduction are lacking or that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

D.      *Defendant's Cooperation*

The defendant agrees to provide truthful, complete, and accurate information relating to any matter about which the defendant may possess knowledge, information, or materials being investigated by the government, and agrees to cooperate fully with the government. Lies, deliberate falsehoods or misleading information provided during the cooperation with the government would be grounds for rescission of this plea agreement as well as possible further prosecution for perjury or false statements. This cooperation will include, but is not limited to, the following:

1)      The defendant agrees to be fully debriefed, and to attend all meetings at which his presence is requested, concerning his participation in and knowledge of all criminal activities.

2)      The defendant agrees to affirmatively furnish to the government all documents and other material that may be relevant and that are in the defendant's possession or control.

3)      The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

3

4)  The defendant agrees to at all times give complete, truthful, and accurate information and testimony and to fully and truthfully disclose all information with respect to the activities of the defendant and others concerning all matters about which the government inquires.

5)  The defendant consents to postponements of his sentencing, as requested by the government and as approved by the Court. Should the defendant be required to provide testimony at a time subsequent to his sentencing in this case and should the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to recharge him on any and all counts which were dismissed as part of this plea agreement.

6)  The defendant agrees he will not violate federal, state, or local law while awaiting sentencing in this case. The defendant further agrees to abide by all the terms and conditions of any bond executed in the defendant's case. The government may consider any such violations a material breach of his agreement to cooperate with the government.

The government agrees that any information and testimony given by the defendant pursuant to this agreement will not be used against him, either directly or indirectly, in any criminal case except for prosecutions for perjury, making a false statement, obstruction of justice, or for impeachment. Information and testimony will not be used against the defendant pursuant to Section 1B1.8 of the Sentencing Guidelines. Any information and testimony relating to the defendant's involvement in

4

crimes of violence, as defined in Title 18, United States Code, Section 16, is excluded from this agreement.

The defendant agrees that if the government can show that he lied or attempted to mislead the government or law enforcement authorities, or if he does not fulfill the terms of or does not complete his cooperation under this agreement, then any information or testimony which he has given in connection with this case can be used in any prosecution against him, notwithstanding the provisions above. If the government alleges such conduct, it will have the burden of establishing the alleged conduct at a separate hearing by a preponderance of the evidence.

Provided that the defendant fully and truthfully cooperates with the government as described above, as determined in the government's sole discretion, the government may elect to file, but is not required to do so, before or at the time of the defendant's sentencing, a motion for downward departure, pursuant to Section 5K1.1 of the Sentencing Guidelines and Title 18, United States Code, Section 3553(e). The parties agree that the defendant shall not be entitled to withdraw his plea if the government determines that the defendant has not fully cooperated and provided substantial assistance.

E. *Forfeiture of Assets*

The defendant admits the forfeiture allegations. The defendant further agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to Title 18, United States Code, Sections 982(a)(1), 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), whether in the possession or control of the United States or in the possession or control of the defendant or defendant's nominees, or elsewhere. The assets to be forfeited specifically include, but are not limited to: a money judgment to be finalized at sentencing,

5

but in an amount not less than $5,053,878.50 which constitutes the amount of the proceeds obtained by the co-conspirators from the fraudulent invoice scheme described herein.

The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil, and/or administrative forfeiture action. The defendant admits and agrees that the conduct described in the Stipulation of Facts below provides a sufficient factual and statutory basis to establish that the requisite nexus exists between the specific property subject to forfeiture and the offenses to which defendant is pleading guilty. Pursuant to the provisions of Rule 32.2(b)(1), the United States and the defendant request that at the time of accepting this plea agreement, the Court find that the government has established the requisite nexus and enter a preliminary order of forfeiture. The defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control and those which are held or controlled by a nominee.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty this Court may impose upon the defendant in addition to forfeiture. However, the United States Attorney's Office for the District of Colorado will recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to eligible victims of the offenses, for which the defendant has pleaded guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if all statutory factors are met. The defendant understands that the United States Attorney's Office has authority only to recommend such relief and that the final decision of whether to grant relief rests solely with the Department of Justice, which will make its decision in accordance with applicable law.

The defendant agrees that the United States is not limited to forfeiture of the property described above. If the United States determines that property of the defendant identified for forfeiture cannot be located upon the exercise of due diligence, has been transferred or sold to, or

6

deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value, or has been commingled with other property which cannot be divided without difficulty, then the United States shall be entitled to forfeiture of any other property (substitute assets) of the defendant up to the value of any property described above pursuant to 21 U.S.C. § 853(p) and Federal Rules of Criminal Procedure 32.2(e). This Court shall retain jurisdiction to settle any disputes arising from application of this clause. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

G.   *Government's Reservation of Rights to Withdraw from the Plea Agreement*

The government may withdraw from the Plea Agreement up to the date of sentencing if all of the following four conditions are met: (1) the government receives information not known to the government as of the date of the Plea Agreement; (2) that new information concerns either (a) conduct engaged in by the defendant before the date of the Plea Agreement and related to the charges in the Indictment or (b) any conduct after the date of the Plea Agreement; (3) such conduct violates state or federal criminal law; and (4) at a hearing, the government proves this conduct by a preponderance of the evidence.

## II. **ELEMENTS OF THE OFFENSE**

The parties agree that the elements of the offenses to which this plea is being tendered are as follows:

### Count One: 18 U.S.C. § 1349

*First*:  Two or more persons agreed to violate the law;

*Second*:  The defendant knew the essential objectives of the conspiracy;

*Third*:  The defendant knowingly and voluntarily participated in the conspiracy; and

*Fourth*:  There was interdependence among the members of the conspiracy.

7

*United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011) (citing *United States v. Baldridge*, 559 F.3d 1126, 1136 (10th Cir. 2009).[1]

<div align="center">

**Count Thirty-Nine:   18 U.S.C. § 1343**

</div>

***First***:   The defendant devised or intended to devise a scheme to defraud, as alleged in the

indictment;

***Second***: The defendant acted with the specific intent to defraud;

***Third***:   The defendant used or caused another person to use interstate or foreign wire

communications for the purpose of carrying out the scheme; and

***Fourth***:  The scheme employed false or fraudulent pretenses, representations, or promises that were

material.

10th Cir. P.J.I. § 2.57 (2018).

<div align="center">

**III.   STATUTORY MAXIMUM SENTENCE**

</div>

The maximum statutory sentence for a violation of 18 U.S.C. § 1349 is not more than 20 years'

imprisonment, not more than a $250,000 fine or two times the amount of gain or loss, whichever is

---

[1] *But see United States v. Hammers,* 942 F.3d 1001 (10th Cir. 2019) (cert. denied) ("To prove conspiracy to embezzle federal program funds under 18 U.S.C. § 371, the Government must show: (1) Defendant's agreement with another person to violate the law; (2) his knowledge of the essential objective of the conspiracy; (3) his knowing and voluntary involvement; and (4) interdependence among co-conspirators. *United States v. Rahseparian*, 231 F.3d 1257, 1262 (10th Cir. 2000). To prove conspiracy to commit bank fraud under 18 U.S.C. § 1349, the Government must show: (1) Defendant agreed with at least one other person to commit bank fraud; (2) **one of the conspirators committed an overt act in furtherance of the conspiracy;** (3) Defendant knew the essential objective of the conspiracy; (4) Defendant knowingly and voluntarily participated in the conspiracy; and (5) there was interdependence among co-conspirators."). *Hammers* did not discuss, describe, or otherwise overrule *Fishman* which stands for the proposition that a Section 1349 charge does not require proof of an overt act, nor did it discuss or describe the removal of the element of an overt act for a charge pursuant to 18 U.S.C. § 371.

<div align="center">8</div>

greater, or both imprisonment and a fine, not more than 3 years' supervised release, a $100 special assessment fee, and restitution.

The maximum statutory sentence for a violation of 18 U.S.C. § 1343 is not more than 20 years' imprisonment, not more than a $250,000 fine or two times the amount of money laundered, whichever is greater; or both imprisonment and a fine, not more than 3 years' supervised release, a $100 special assessment fee, and restitution.

If a term of probation or supervised release is imposed, any violation of the terms and/or conditions of supervision may result in an additional term of imprisonment.

## IV. **COLLATERAL CONSEQUENCES**

These felony convictions may cause the loss of civil rights including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

## V. **STIPULATION OF FACTS**

The parties agree that there is a factual basis for the guilty plea that the defendant will tender pursuant to this plea agreement. That basis is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

This stipulation of facts does not preclude either party from hereafter presenting the Court with additional facts which do not contradict facts to which the parties have stipulated and which are relevant to the Court's guideline computations, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

9

The parties agree that the government's evidence would be as follows:

Between August 2018 and July 2020, JONATHAN K. YIOULOS conspired with MICHAEL AARON TEW and KIMBERLEY ANN TEW to engage in a complex scheme to defraud a Florida-based company, N.A.C., Inc. ("the Victim Company") of more than $5 million through the submission of fraudulent invoices that billed the Victim Company for services it never received. YIOULOS, at the request of and with the knowledge and assistance of MICHAEL AARON TEW and KIMBERLEY ANN TEW, processed these fraudulent invoices submitted in the names of what appeared to be six different entities and caused payments associated with or supported by the fraudulent invoices to be made by the Victim Company.

### *The Individuals and Entities Involved*

**JONATHAN K. YIOULOS**

YIOULOS is a resident of the State of New York and was, at some point prior to 2018, the Director of Finance for the Victim Company. At some point between 2018 and July 2020, YIOULOS's title changed to Controller for the Victim Company, but he continued to also perform his responsibilities as the Director of Finance. YIOULOS is a certified public accountant licensed in New York, and had direct knowledge about the inner workings of the Victim Company's finances and its financial processes, including how to minimize the number of approvals necessary to process an outgoing payment from the Victim Company's bank account(s). YIOULOS nevertheless caused or authorized payments from the Victim Company's bank account(s) to accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW or to third parties' accounts for the benefit of MICHAEL AARON TEW and KIMBERLEY TEW for services YIOULOS knew the Victim Company had not received.

10

YIOULOS communicated from New York with MICHAEL AARON TEW, who resided in Colorado during the time relevant to the Indictment. For the time period relevant to the Indictment, YIOULOS knew that MICHAEL AARON TEW and KIMBERLEY ANN TEW resided in Colorado. YIOULOS used or caused interstate wires to be used to engage in the scheme described in Counts 1 and 39 of the Indictment, and used or caused interstate wires to be used to authorize or process fraudulent payments from the Victim Company's bank in New York to bank accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW in Colorado.

YIOULOS personally financially benefitted from the conspiracy and the scheme to defraud, albeit in an amount substantially lower than MICHAEL AARON TEW and KIMBERLEY ANN TEW. After this fraud was discovered by the Victim Company, it terminated YIOULOS's employment on or around July 7, 2020.

In the performance of his duties at the Victim Company, YIOULOS worked with MICHAEL AARON TEW while MICHAEL AARON TEW served as CFO of the Victim Company.

**The Victim Company**

The Victim Company, N.A.C., Inc., is a company headquartered in Florida with an office in New York. The Victim Company operates in the United States and is affiliated with the company N.A.C. Group, Inc., d/b/a N.A., which operates as an airline, and provides freight forwarding solutions, to include by charter and airlift. N.A.C. Holdings, Inc. ("NAC Holdings") is one of several affiliates of the Victim Company.

**Sand Hill, LLC ("Sand Hill")**

YIOULOS knew that the Victim Company paid MICHAEL AARON TEW for his CFO services through Sand Hill, LLC, a single-member LLC, an entity which maintained a bank account(s) in Colorado. During the course of this fraud and after MICHAEL AARON TEW's contract with

11

the Victim Company had been terminated, some payments made pursuant to this fraud were made to account(s) held in the name of Sand Hill. On automated clearinghouse (ACH) transaction payment documentation submitted by YIOULOS to execute these fraudulent payments to accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW, YIOULOS listed payee "SHI LLC," which was an abbreviation or acronym for Sand Hill. This was done to create the false impression of another entity and thereby evade detection.

## H.S. CPAs LLC (HS CPAs), M.C.G., Inc. ("MCG"), 5530 J.D., LLC ("5530 JD") and P.M., Inc. ("PM")

HS CPAs, MCG, 5530 JD, and PM may have been or purported to be real companies whose existence predated the scheme to defraud. These four entities are operated by or otherwise affiliated with individuals who are contacts of MICHAEL AARON TEW and/or KIMBERLEY ANN TEW. YIOULOS authorized or submitted payments by the Victim Company of fraudulent invoices submitted in the name of these four entities.

## Global Fuel Logistics, Inc. (GFL) and Aero Maintenance Resources (AMR)

During the conspiracy and execution of the scheme to defraud, YIOULOS and MICHAEL AARON TEW discussed aligning the company names used to submit fraudulent invoices more closely with the business of the Victim Company to evade detection. They also discussed the need to diversify entities to whom the payments appeared to be directed so that any single entity did not appear to receive significant payments, which could arouse suspicion internally or by auditors. MICHAEL AARON TEW then began submitting fraudulent invoices in the name of GFL, and later, in the name of AMR, a purported "division" of GFL. MICHAEL AARON TEW advised YIOULOS that he had taken measures to put multiple layers between himself and the creation and purported operation of these entities, to include listing an address of family members in Michigan as GFL's principal office

12

address and registering GFL in Wyoming. YIOULOS knew that GFL and AMR had no legitimate business operations and invoices submitted to the Victim Company in their names were fraudulent.

### The Conspiracy and Scheme to Defraud

How the Conspiracy and Scheme to Defraud Began

In or around August 2018, MICHAEL AARON TEW began submitting fraudulent invoices to the Victim Company, which YIOULOS authorized and were ultimately paid by the Victim Company. Initially, the dollar amounts for the invoices were relatively small, but over time, the amounts demanded by each fraudulent invoice grew substantially. Between August 2018 and July 2020, as a result of this conspiracy to commit wire fraud and scheme to defraud, the Victim Company paid $5,053,878.50 either directly to accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW or to third parties for the benefit of MICHAEL AARON TEW and KIMBERLEY ANN TEW. YIOULOS believed that MICHAEL AARON TEW and KIMBERLEY ANN TEW needed the payments, at least in part, to pay outstanding and ongoing family debts.

The Operation of the Conspiracy and Scheme to Defraud

Initially, the invoices were submitted by or on behalf of entities not previously used as vendors by the Victim Company and who performed functions unrelated to the conspiracy. Over time, the invoices were submitted by shell company nominees GFL and AMR, which existed as vehicles to continue the fraud, evade detection, and conceal the source and destination of income. The fraudulent invoices, which were often submitted in support of the payments after the fraudulent payments had been issued, were all approved by YIOULOS, and payments were largely made via ACH transactions, although some payments were tendered by wire transfer. This was because YIOULOS knew that only a single authorization was required to approve an ACH transaction while wire transfers

13

required two authorizations from the Victim Company. The ACH transactions and wire transfers were executed through interstate wires from the Victim Company's account at Signature Bank in New York to bank accounts in Colorado and elsewhere.

MICHAEL AARON TEW told YIOULOS that he must continue making fraudulent payments or the prior fraudulent payments would be reported to the Victim Company's management which would result in YIOULOS's termination. YIOULOS, who initially had a friendly relationship with MICHAEL AARON TEW when the conspiracy and scheme to defraud began, agreed to continue to knowingly process fraudulent invoices as part of this conspiracy and scheme to defraud. In exchange, at various points in time during the conspiracy and scheme to defraud, MICHAEL AARON TEW and KIMBERLEY ANN TEW offered YIOULOS various items, to include Bitcoin, as compensation for his approval of fraudulent payments. Typically, YIOULOS received a couple or few Bitcoin from MICHAEL AARON TEW and/or KIMBERLEY ANN TEW, but then MICHAEL AARON TEW and/or KIMBERLEY ANN TEW would ask YIOULOS to send that Bitcoin back, and that cycle continued on multiple occasions between 2018 and July 2020. Overall, throughout the time period of the scheme, YIOULOS netted a few Bitcoin from or associated with MICHAEL AARON TEW and/or KIMBERLEY ANN TEW as compensation for his role in this conspiracy and scheme. YIOULOS then sold that Bitcoin that he netted for approximately $100,000. MICHAEL AARON TEW and KIMBERLEY ANN TEW provided YIOULOS no additional significant forms of compensation. YIOULOS also separately caused the Victim Company to make payments for services not actually rendered to the Victim Company to him, or a third party for his and the third-party's benefit. The amount of those additional payments is at least approximately $60,000.

14

YIOULOS typically communicated with MICHAEL AARON TEW about the conspiracy and scheme to defraud. There were also occasions where KIMBERLEY ANN TEW herself communicated with YIOULOS about the conspiracy and scheme to defraud, and also circumstances when YIOULOS was on the phone with MICHAEL AARON TEW and heard KIMBERLEY ANN TEW in the background. There were also occasions on which MICHAEL AARON TEW told YIOULOS he had discussed some element of the conspiracy and scheme to defraud with KIMBERLEY ANN TEW.

MICHAEL AARON TEW and, on some occasions, KIMBERLEY ANN TEW contacted YIOULOS to request, and sometimes, demand, money from the Victim Company. To accommodate these demands for payment, YIOULOS, often advised MICHAEL AARON TEW about the financial status of the Victim Company and/or its affiliates so that payments of the fraudulent invoices did not result in the Victim Company and/or its affiliates overdrawing their bank accounts. YIOULOS often made payments on the demanded amounts in installments or "progress payments." That is, YIOULOS authorized and approved multiple ACH transfers or wire transfers where each transfer was for an amount less than the total amount of an invoice to try to pay accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW with whatever money was available to the Victim Company or its affiliates at that time.

In many cases, YIOULOS authorized or processed fraudulent payments, including "progress payments," even before a fraudulent invoice had been submitted to the Victim Company to satisfy MICHAEL AARON TEW and KIMBERLEY ANN TEW's immediate demands for money. In those instances, YIOULOS and MICHAEL AARON TEW communicated about how MICHAEL AARON TEW needed to submit a fraudulent invoice after the payment was issued to ensure that there was sufficient documentation in the Victim Company's files to support the amounts paid and

15

thereby evade detection.  During the conspiracy, if YIOULOS deferred or delayed payment of the fraudulent invoices based on the financial status of the Victim Company or its affiliates, MICHAEL AARON TEW and/or KIMBERLEY AARON TEW sometimes pressured YIOULOS to induce him to issue fraudulent payments.

Over time, the co-conspirators used more sophisticated means to conceal the fraud.  For example, at the beginning of the scheme to defraud, the fraudulent invoices contained generic descriptions of services like consulting services or "service fee."  Over time and as a result of discussions between YIOULOS and MICHAEL AARON TEW about needing to itemize services that more closely aligned with the work of the Victim Company, those descriptions grew more specific. For example, fraudulent invoices submitted later in the conspiracy listed services like "Trailing Edge Flap[,]" "Replacement of Moisture Barrier over Kevlar (Labor Hours)[,]" and "A-330-200 (N819CA) Crew / Operations / Staff Training[.]"

YIOULOS, in coordination with MICHAEL AARON TEW, also took steps to ensure that ACH confirmations maintained and tracked by the Victim Company reflected a diversity of payees that were difficult to trace to him or to MICHAEL AARON TEW and KIMBERLEY ANN TEW. Those steps included ensuring that fraudulent payments were spread out over multiple entities, including shell nominees, and listing fictitious entities like "SHI LLC" rather than Sand Hill on an ACH confirmation, as Sand Hill was known to the Victim Company as associated with the then-terminated MICHAEL AARON TEW.   YIOULOS and MICHAEL AARON TEW discussed these measures as a way to avoid arousing suspicion and evading detection.

Summary of Fraudulent Payments by Entity Over Time

The below chart summarizes fraudulent payments made in connection with invoices submitted by or in the name of the six entities involved.  These payments were authorized and

16

approved by YIOULOS. Payments pursuant to this fraud were sent from the Victim Bank's bank account in New York to various bank accounts controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY TEW or, in the beginning of the fraud, to bank accounts controlled by or accessible to third party contacts of MICHAEL AARON TEW and/or KIMBERLEY ANN TEW for their benefit.

*Chart 1: Summary of Invoices and Payments between August 2018 and June 2020*

| | 2018 | | | 2019 | | | | | 2020 | | | | Grand Total |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | Qtr3* | Qtr4 | Total | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Total | Qtr1 | Qtr2 | Qtr3 | Total | |
| **HS CPAs** 3 Invoices | $50,000.00 | | $50,000.00 | | | | | | | | | | $50,000.00 |
| **5530 JD** 6 Invoices | $75,000.00 | $30,000.00 | $105,000.00 | | | | | | | | | | $105,000.00 |
| **MCG** 5 Invoices | | $125,000.00 | $125,000.00 | | | | | | | | | | $125,000.00 |
| **PM** 21 Invoices | | $36,375.00 | $36,375.00 | $267,962.50 | $551,665.00 | $59,675.00 | | $879,302.50 | | | | | $915,677.50 |
| **Global Fuel Logistics** 14 Invoices | | | | | $446,000.00 | | | $446,000.00 | | $847,338.00 | $95,000.00 | $942,338.00 | $1,388,338.00 |
| **Aero Maintainance Resources** 26 Invoices | | | | | | $329,200.00 | $810,500.00 | $1,139,700.00 | $682,055.00 | $648,108.00 | | $1,330,163.00 | $2,469,863.00 |
| **Grand Total** | $125,000.00 | $191,375.00 | $316,375.00 | $267,962.50 | $551,665.00 | $834,875.00 | $810,500.00 | $2,465,002.50 | $682,055.00 | $1,495,446.00 | $95,000.00 | $2,272,501.00 | $5,053,878.50 |

*Qtr 1: January, February, March
Qtr 2: April, May, June
Qtr 3: July, August, September
Qtr 4: October, November December

On or around May 21, 2020, in furtherance of the scheme to defraud, YIOULOS authorized a partial or installment payment on a demand for money. Specifically, he caused or executed an ACH transaction of $78,565.00, which reflected an interstate wire in furtherance of the scheme to defraud. Pursuant to YIOULOS's direction, $78,565.00 was transferred out of the Victim Company's bank account ending in 5545 at Signature Bank in New York, and deposited into a Navy Federal Credit Union account ending in 5336, held in the name of "Michael Tew." Fraudulent

17

invoices from GFL that justified or supported these payments arrived after the execution of the payment to support the payment in the Victim Company's books and records.

In late June 2020, as part of this conspiracy and scheme to defraud, YIOULOS received an additional demand for money. On July 2, 2020, an invoice dated July 1, 2020 in the name of GFL seeking $95,000 was sent via email from a purported "Jessica Thompson" at GFL to YIOULOS at his email address provided by the Victim Company. On July 2, 2020, YIOULOS approved and authorized an ACH transfer of $95,000 from the Victim Company's bank account in New York to an account controlled by or accessible to MICHAEL AARON TEW and KIMBERLEY ANN TEW. That amount was transferred on July 3, 2020.

The total amount paid by the Victim Company pursuant to the fraudulent invoice scheme is $5,053,878.50.

## VI.   ADVISORY GUIDELINE COMPUTATION AND 3553 ADVISEMENT

The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

A.    The base guideline is U.S.S.G. § 2B1.1(a)(1), with a base offense level of **7**.[2]

---

[2] There are two counts of conviction. Pursuant to U.S.S.G. § 3D1.2(d), because the offense level is determined largely on the basis of the total amount of harm or loss and because the offense behavior was ongoing or continuous in nature, a conviction for 18 U.S.C. § 1349 (covered by U.S.S.G. § 2B1.1) groups with 18 U.S.C. § 1343.

18

B.    The following specific offense characteristic applies:

i.     An **18**-level increase pursuant to § 2B1.1(b)(1)(J) because the amount of loss exceeds $3.5 million but is less than $9.5 million.

ii.    A **2**-level increase pursuant to § 2B1.1(b)(10)(C) for use of sophisticated means.

iii.   Chapter 3 enhancements apply: namely, a **2**-level increase pursuant to § 3B1.3 for abuse of a position of trust or use of a special skill.

C.    The adjusted offense level is therefore **29**.

D.    <u>Acceptance of Responsibility</u>:  The parties agree that the defendant should receive a **3**-level adjustment for acceptance of responsibility.  The resulting offense level therefore is **26**.

E.    <u>Criminal History Category</u>:  The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court based on the defendant's prior convictions.  Based on information currently available to the parties, it is estimated that the defendant's criminal history category would be **I**.

F.    Assuming the criminal history facts known to the parties are correct, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

G.    <u>Imprisonment</u>:  The advisory guideline range resulting from these calculations is **63-78 months** for criminal history category **I**.  However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 63 months (bottom of Category I) to 150 months (top of Category VI).

In any case, the guideline range would not exceed the cumulative statutory maximums applicable to the counts of conviction.

19

H.   Fine:   Pursuant to guideline § 5E1.2, under the estimated offense level calculated above, the fine range for this offense would be **$25,000 to $10,107,757** (twice the amount of loss), plus applicable interest and penalties.

I.   Supervised Release:   Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term is at least one year and no more than three years.

J.   Restitution:   Pursuant to 18 U.S.C. § 3663(a)(3), the defendant agrees that he is liable for restitution to the Victim Company in an amount to be determined at sentencing, but not less than $5,053,878.50, for which he could be jointly and severally liable with other co-conspirators. The defendant agrees to pay restitution in an amount as calculated and ordered by the Court.

The parties understand that although the Court will consider the parties' estimate, the Court must make its own determination of the guideline range. In doing so, the Court is not bound by the position of any party.

No estimate by the parties regarding the guideline range precludes either party from asking the Court, within the overall context of the guidelines, to depart from that range at sentencing if that party believes that a departure is specifically authorized by the guidelines or that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the United States Sentencing Commission in formulating the advisory guidelines. Similarly, no estimate by the parties regarding the guideline range precludes the defendant from asking the Court to vary entirely from the advisory guidelines and to impose a non-guideline sentence based on other 18 U.S.C. § 3553 factors.

The parties understand that the Court is free, upon consideration and proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory

20

guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII.  ENTIRE AGREEMENT

This document states the parties' entire agreement and there are no other promises, agreements (or "side agreements"), terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any terms, promises, conditions, or assurances not expressly stated in this agreement.

Date: 11/16/2021

_____
Jonathan K. Yioulos
Defendant

Date: 11. 16. 2021

_____
Michael Tallon
Attorney for Defendant

Date: November 15, 2021

_s/ Hetal J. Doshi_____
Hetal J. Doshi
Assistant U.S. Attorney

Date: November 15, 2021

_s/ Andrea Surratt_____
Andrea Surratt
Assistant U.S. Attorney

21

IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF
COLORADO

Criminal Case No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA**

       **Plaintiff(s),**

**v.**

**3. JONATHAN K. YIOULOS,**

       **Defendant.**

---

## STATEMENT BY DEFENDANT IN ADVANCE OF PLEA OF GUILTY

I acknowledge and certify that I have been advised of and understand the

following facts and rights, that all representations contained in this document are true

and correct, and that my attorney has assisted me as I have reviewed and completed

this document.

    1.    The nature of the charges against me have been explained to me by my

attorney. I have had an opportunity to discuss with my attorney both the nature of the

charge(s) and the elements which the government is required to prove.

    2.    I know that when the Court sentences me, the Court will consider many

factors. These factors are listed in 18 U.S.C. § 3553 and include (a) the nature and

circumstances of the offense and my personal history and characteristics, (b) the need

<div style="border:1px solid black; display:inline-block; padding:4px;">
Court Exhibit
2
</div>

247

for a sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public, and provide me with needed training, care or correctional treatment in the most effective manner, (c) the kinds of sentences available to the court, (d) the advisory sentencing guidelines established by the U.S. Sentencing Commission, (e) the pertinent policy statements of the U.S. Sentencing Commission, (f) the need to avoid unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct, and (g) the need to provide restitution. No single factor is controlling or determinative. I recognize that it is possible that the Court could, after considering these factors, impose any sentence in my case, including one which is as severe as the maximum term of imprisonment, the maximum fine, full restitution (if applicable), the maximum term of supervised release, and a special assessment, all as set out in paragraph 3 below.

3.   I know that the following penalties may be imposed because of my guilty pleas:

<u>Count One (18 U.S.C. §1349)</u>

a.   Imprisonment for a term of not more than 20 years;

b.   A term of supervised release of not more than three years, pursuant to 18 U.S.C. § 3583;


c.   A fine of not more than $250,000, pursuant to 18 U.S.C. §3571(b)(3)

and/or the alternative fine schedule set out at 18 U.S.C. § 3571(d), that is, not more

than the greater of twice the gross gain or twice the gross loss;

d.   Restitution to the victim(s) of my crime(s) of approximately

$5,058,878.50 pursuant to 18 U.S.C. §§ 3663 and 3664 as may be determined at

the time of sentencing;

e.   A special assessment of $100, pursuant to 18 U.S.C. § 3013(a)(2)(A).

<u>Count Thirty-Nine (18 U.S.C. §1343)</u>

a. Imprisonment for a term of not more than 20 years;

b. A term of supervised release of not more than three years, pursuant

to 18 U.S.C. § 3583;

c.   A fine of not more than $250,000, pursuant to 18 U.S.C. §3571(b)(3)

and/or the alternative fine schedule set out at 18 U.S.C. § 3571(d), that is, not more

than the greater of twice the gross gain or twice the gross loss;

d.   Restitution to the victim(s) of my crime(s) of approximately

$5,058,878.50 pursuant to 18 U.S.C. §§ 3663 and 3664 as may be determined at

the time of sentencing;

e.   A special assessment of $100, pursuant to 18 U.S.C. § 3013(a)(2)(A).

4.   I know that if I am convicted of more than one count, the sentences

imposed may be either concurrent (served at the same time) or consecutive (served separately or back-to-back) unless the statutory penalty for an offense of conviction expressly requires that a sentence be imposed to run consecutively.

5.    I know that in addition to any punishment that the Court may impose, there are collateral consequences to pleading guilty to a crime. These consequences are neither imposed nor controlled by the Court. For example, pleading guilty may result in a loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury. And, if I am not a citizen of the United States, these consequences may include deportation from the United States or indefinite confinement if there is no country to which I may be deported, denial of the right to enter the United States in the future, and denial of citizenship.

6.    I know that if I am given a term of supervised release as a part of my sentence, that supervised release will only begin to run upon my release from custody on all terms of imprisonment imposed by this and any other courts. I understand that any violation of the conditions of that supervised release during its term may lead to an additional prison sentence and additional supervised release being imposed.

7.    I know that there is no parole in the federal system and that I will be required to serve the entire sentence of imprisonment which may be imposed

in my case, reduced only by such good time and/or program allowances as may be set by Congress and applied by the Bureau of Prisons.

8.   I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay interest on any amount in excess of $2,500, unless the fine or restitution is paid in full before the fifteenth day after the date of the judgment or unless interest is waived by the Court.

9.   I know that if a fine or restitution is imposed as a part of my sentence, I will be required to pay it in a timely manner. Failure to do so may trigger monetary penalties, collection efforts by the government, potential revocation of any probation or supervised release, and/or exposure to prosecution for "Criminal Default" under 18 U.S.C. § 3615.

10.   I know that I can be represented by an attorney at every stage of the proceedings in this matter, and I know that, if I cannot afford an attorney, one will be appointed to represent me at no cost or expense to me.

11.   I know that I have a right to plead "not guilty;" and I know that if I do plead "not guilty," I can persist in that plea and demand a trial.

12.   I know that I have a right to and can demand a trial by jury, and I know that if I choose to stand trial:

    a. I have a right to the assistance of an attorney at every stage of the proceeding;

b. I have a right to see and observe the witnesses who testify against

me;

c. My attorney can cross-examine all witnesses who testify against

me;

d. I can call and present such relevant witnesses and evidence as I

desire, and I can obtain subpoenas to require the attendance and

testimony of those witnesses;

e. If I cannot afford to pay witness fees and expenses, the

government will pay those fees and expenses, including mileage and

travel expenses, and including reasonable fees charged by expert

witnesses;

f. I cannot be forced to incriminate myself and I do not have to testify

at any trial;

g. However, I can testify at my trial if I choose to, and I do not have

to decide whether to testify until after I have heard the government's

evidence against me;

h. If I decide that I do not want to testify at trial, the jury will be told

that no guilt or inference adverse to me may be drawn from my

decision not to testify;

i. For me to be convicted, the government must prove each element

of the offense(s) with which I am charged, beyond a reasonable
doubt;

j. For me to be convicted, the jury must reach a unanimous verdict of
guilty, meaning all jurors must agree that I am guilty; and

k. If I were to be convicted, I could appeal both my conviction and
whatever sentence the Court later imposed, and if I could not afford
an appeal, the government would pay the cost of the appeal,
including the cost of an appointed attorney.

13.     I know that if I plead guilty, there will not be a trial of any kind.

14.     I know that if I plead guilty, there will be no appellate review
of the question of whether I am guilty of the two offenses to which I will
have pled guilty.

15.     I know that the terms of my plea agreement with the government
contain a waiver of my right to appeal and to collaterally attack the sentence.
Specifically, I have agreed to waive the right to appeal any matter in connection
with this prosecution, conviction, or sentencing, including the restitution order,
unless it meets one of the following criteria:   (1) the sentence exceeds the
maximum sentence provided in the statutes of conviction, 18 U.S.C §§1343 and
1349; (2) the sentence exceeds the advisory guideline range that applies to a total
offense level of 26; or (3) the government appeals the sentence imposed. Further,

I knowingly and voluntarily waive the right to challenge this prosecution, conviction, or sentence, including the restitution order, in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. §2255). This waiver provision, however, does not prevent me from seeking relief otherwise available in a collateral attack on any of the following grounds: (1) I should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute; (2) I was deprived of the effective assistance of counsel; or (3) I was prejudiced by prosecutorial misconduct. Lastly, because of these terms of my Plea Agreement, I know that I cannot seek appellate review of the sentence imposed by the Court, except in the limited circumstances permitted by my Plea Agreement.

16. No agreements have been reached and no representations have been made to me as to what the sentence in this case will be, except those which are explicitly detailed in the document entitled "Plea Agreement" which I and the government have signed. I further understand that any sentencing agreements and stipulations in the document entitled "Plea Agreement" are binding on the Court only if the parties ask the Court in that document to be so bound pursuant to Rule 11(c)(1)(C) and only if the Court agrees to be so bound when it accepts my guilty plea(s).

17. The only plea agreement which has been entered into with the

government is that which is set out in the document entitled "Plea Agreement" which has been signed by the government and me and which I incorporate herein by reference.

18.   I understand that the Court will make no decision as to what my sentence will be until a Presentence Report has been prepared by the Probation Department and received and reviewed by the Court.

19.   I know that when I enter my pleas of guilty, the Court may ask me questions under oath about the offenses to which I have pled guilty. Such questions, if asked of me on the record and in the presence of my attorney, must be answered by me, and if I give false answers, I can be prosecuted for perjury.

20.   I know that I have the right to ask the Court any questions that I have concerning my rights, these proceedings, and my pleas of guilty to the charges.

21.   I am 32 years of age. My college education consists of Master of Business Administration and Bachelor of Science in Accounting from Canisius College, Buffalo, New York. I can understand the English language. I am not now taking, nor will I be taking any medications which interfere with my ability to understand this Statement by Defendant In Advance of Plea of Guilty the and the plea proceedings which might impact or might affect my ability to choose knowingly and voluntarily to plead guilty.

22. Other than the promises of the government set out in the document entitled "Plea Agreement," no promises and no threats of any sort have been made to me by anyone to induce me or to persuade me to enter my pleas of guilty.

23. No one has promised me that I will receive probation, home confinement or any other specific sentence desired by me because of my pleas of guilty.

24. I have had sufficient opportunity to discuss this case and my intended pleas of guilty with my attorney. I shall consult with my attorney should I have questions before I enter my pleas of guilty.

25. I am satisfied with my attorney. I believe that I have been represented effectively and competently in this case.

26. My decision to enter the pleas of guilty is made after full and careful thought, with the consultation and the advice of my attorney, and with full understanding of my rights, the facts and circumstances of the case, and the potential consequences of my plea(s) of guilty. I am not now nor will I be under the influence of any drugs, medication, or intoxicants which affect my decision-making ability now and participate the plea proceedings before the Court when I made the decision to enter my guilty pleas. I am not now under the influence of any such drugs, medication, or intoxicants.

27. I want to plead guilty and have no reservations about my decision.

28.   Insofar as it shows my conduct, the summary of facts set out in the document entitled "Plea Agreement" is true and correct.

29.   I know that I am free to change or delete anything contained in this document and that I am free to list my objections and my disagreements with anything contained in the document entitled "Plea Agreement." I accept both documents as they are currently drafted, that is, the Statement by Defendant In Advance of Plea of Guilty and the Plea Agreement.

30.   I wish to plead guilty to the following charges:  Counts One and Thirty-nine of the Indictment, violations of 18 U.S.C. §§1349 and 1343, respectively.

Dated this ⎵16⎵ day of November 2021

_____
Jonathan K. Yioulos, Defendant

I certify that I have discussed this Statement by Defendant in Advance of Plea of Guilty  and the document entitled "Plea Agreement" with the Jonathan K. Yioulos, Defendant. I certify that I have fully explained the defendant's rights to him and have assisted him in completing the Statement by Defendant In Advance of Plea of Guilty. I believe that the Jonathan K. Yioulos, Defendant understands his rights and these statements.

Dated this ⎵16⎵ day of November 2021

_____
Michael J. Tallon, Attorney for Jonathan K. Yioulos, Defendant

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. ___20-CR-00305-DDD___

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    MICHAEL AARON TEW,
    KIMBERLEY ANN TEW, and
    JONATHAN K. YIOULOS,

    Defendant.

---

## ENTRY OF APPEARANCE OF COUNSEL

---

To:    The clerk of court and all parties of record

    I hereby certify that I am a member in good standing of the bar of this court, and I appear in this case as counsel for:

        Michael Aaron Tew
        Kimberley Ann Tew

        Dated: November 19, 2021

        s/ Xuan Zhou___
        Name of Attorney

        Tor Ekeland Law, PLLC
        Firm Name

        30 Wall Street, 8th Floor
        Office Address

        New York, NY, 10005
        City, State, ZIP Code

        (718) 737-7264
        Telephone Number

        xuan@torekeland.com
        Primary CM/ECF E-mail Address

UNITED STATES DISTRICT OF COURT
FOR THE DISTRICT OF COLORADO

_____

UNITED STATES OF AMERICA

Plaintiff,

v.

MICHAEL AARON TEW, JONATHAN K.
YIOULOS, and KIMBERLEY ANN TEW,

Defendants.

_____

Case No. 20-cr-00305-DDD

**MOTION TO WITHDRAW**

 

**PLEASE TAKE NOTICE,** undersigned counsel respectfully moves to withdraw as counsel to Michael Tew and Kimberley Tew in this action under D.C. COLO. LAttyR 5(b) of the District of Colorado local rules and Rule 1.16 of the Colorado Rules of Professional Conduct, subsections (b)(1), (b)(5), (b)(6), and (b)(7). Mr. and Mrs. Tew have not and apparently cannot meet their financial obligations to my firm. Furthermore, certain circumstances have made it unreasonably difficult to continue the representation separate and apart from their inability to honor financial obligations to this firm. I, as well as my co-counsel Michael Hassard and Xuan Zhou, will be withdrawing as counsel in this case. I will be submitting a declaration setting forth in greater detail the reasons supporting my motion to withdraw.

In a separate motion, I will request that access to the declaration be restricted to the Court under a Level 3 restriction because the information contained therein implicates the attorney-client relationship and client confidences. Mr. and Mrs. Tew have been advised the withdrawal motion and have been served with the motion and the declaration. Mr. and Mrs. Tew did not respond to our emails and letters regarding the motion.

In a separate motion, I will be requesting a 3-month continuance of all pending deadlines, so that Mr. and Mrs. Tew have time to retain new counsel or be appointed counsel under the Criminal Justice Act

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland
(NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737-7264
tor@torekeland.com

*Attorney for Michael Tew and
Kimberley Tew*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

Respectfully submitted,

/s/ Tor Ekeland
Tor Ekeland
(NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737-7264
tor@torekeland.com

*Attorney for Michael Tew and Kimberley Tew*

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO



X_____X
                              :

**UNITED STATES OF AMERICA**

                  Plaintiff,     :        **20-CR-00305-DDD**

            :    **MOTION FOR A 3-MONTH ENDS**

        **v.**       :    **OF JUSTICE CONTINUANCE**

            :    **UNDER 18 U. S. C. § 3161(h)(7)**

**MICHAEL AARON TEW,**
**KIMBERLEY ANN TEW, and**
**JONATHAN K. YIOULOS**
                  Defendants.     :

X_____X

Under 18 U.S.C. § 3161(h)(7) Defendants' Michael Aaron Tew and Kimberly Ann Tew ("Defendants") counsel, hereby move this Court for a 3-Month Ends of Justice Continuance changing the current trial date from April 4, 2022, to July 5, 2022. Mr. and Mrs. Tew have informed us that they do not agree with this continuance. Counsel is filing this motion in order to prevent and/or avoid any foreseeable prejudice to the rights of Mr. and Mrs. Tew. As the pretrial motions are due January 3, 2022, we seek to push that deadline to April 4, 2022. Communication between the undersigned counsel and Defendants Mr. and Mrs. Tew has broken down and after multiple extensions, clients have failed to meet their contractual obligations to undersigned counsel as per their engagement letter. The attorney-client relationship is based on trust and confidentiality, a breakdown of that relationship serves as good cause for withdrawal.

As per Docket 162, undersigned counsel has withdrawn from this matter. We now request a continuance on behalf of Mr. and Mrs. Tew so that they may be appointed counsel under the Criminal Justice Act, or they retain new counsel. Undersigned counsel has conferenced

1

with the Government. The Government understands that we are withdrawing from this matter, and in order to provide Mr. and Mrs. Tew sufficient time to retain/be assigned new counsel, does not oppose the relief sought by this motion.

## Legal Standard

The Speedy Trial Act requires that a criminal defendant's trial commence within seventy days after his indictment or initial appearance, whichever is later.[1] "The dual purpose of the Speedy Trial Act is to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in bringing prompt criminal proceedings."[2] Certain periods of delay are excluded under the Speedy Trial Act and do not count toward the 70-day "Speedy Trial Clock."[3] 18 U.S.C. § 3161 (h)(7) allows for periods of delay that "shall be excluded in computing the time . . . within which the trial of any ... offense must commence."[4] This excludable delay occurs when a court finds that "the ends of justice served by taking action outweigh the best interest of the public and the defendant in a speedy trial."[5] Courts routinely grant ends of justice continuances in cases like this.[6]

## Continuance Grounds

This is a complex case involving sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants. To date, the Government

---

[1] (*Id*. at 5-6); 18 U.S.C. § 3161 (c)(1).
[2] *See e.g., United States v. Nemecia-Garcia*, No. 14-cr-00144-CMA, 2016 U.S. Dist. LEXIS 197426, p. 5 (D. Colo. Feb. 12, 2016) (citing *United States v. Saltzman*, 984 F.2d 1087, 1090 (10th Cir. 1993)).
[3] *See* 18 U.S.C. § 3161 (h)(1) - (8).
[4] *See* 18 U.S.C. § 3161 (h)(7).
[5] *See* 18 U.S.C. § 3161 (h)(7).
[6] *See e.g., United States v. Hopson*, No. 12-cr-00444-LTB, 2014 U.S. Dist. LEXIS 9248, at *4 (D. Colo. Jan. 17, 2014).

has produced hundreds of thousands of documents and, in addition to those documents, more that approximately 300 gigabytes of electronically stored data. The Government has informed the Defendants that this is a "document disclosure extensive" matter on the Discovery Conference Memoranda.[7] In order for Mr. and Mrs. Tew find new counsel and for them to have sufficient time to get acclimated with the matter in order to file pretrial motions, we request the following continuance.

Defendants in criminal prosecutions shall enjoy the right to have the assistance of counsel for their Defense under the Sixth Amendment right to counsel.[8] Defendants have the right to representation by an attorney, with undersigned counsel withdrawing, Defendants will require time find new counsel and acquaint them with this matter.

## Conclusion

For the reasons stated above this Court should enter an order continuing this case until July 5, 2022.

Dated: December 27, 2021
         Brooklyn, NY

---

[7] (*See e.g.*, Discovery Conference Memorandum for Michael Aaron Tew, Dkt. No. 91).
[8] *See United States v. Gonzalez-Lopez*, 548 U.S. 140.

Respectfully submitted,

/s/ Tor Ekeland

Tor Ekeland
(NYS Bar No. 4493631)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
tor@torekeland.com


/s/ Michael Hassard

Michael Hassard
(NYS Bar No. 5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005

(718) 737 - 7264
michael@torekeland.com

/s/ Xuan Zhou
(CA Bar No. 333504)

30 Wall Street
8th Floor
New York, NY
10005


*Attorneys for Defendants Michael Tew and Kimberley Tew*

4

## CERTIFICATE OF WORD COUNT

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE.

I hereby certify that on Monday, December 27, 2021, I electronically filed the foregoing UNOPPOSED MOTION FOR A 3-MONTH ENDS OF JUSTICE CONTINUANCE UNDER 18 U. S. C. § 3161(h)(7) with the Clerk of Court using the CM/ECF system, which will automatically send notification of such filing to all opposing counsel of record.

/s/ Tor Ekeland



# UNITED STATES DISTRICT COURT
## DISTRICT OF COLORADO

X————————————————————X
                             :

**UNITED STATES OF AMERICA**
                             :              **20-CR-00305-DDD**
                   Plaintiff,        :

                             :      **PROPOSED ORDER CONTINUING**
               **v.**                :   **TRIAL UNDER 18 U. S. C. § 3161(h)(7)**

                             :   [PROPOSED] TRIAL DATE: 7/05/2022

**MICHAEL AARON TEW,**
**KIMBERLEY ANN TEW, and**
**JONATHAN K. YIOULOS**
                Defendants.   :

X————————————————————X

       The Court has read and considered the Motion Regarding the Unopposed Request for A 3-Months Ends Of Justice Continuance Under 18 U. S. C. § 3161(h)(7), filed by undersigned counsel for Defendants Mr. and Mrs. Tew in this matter on December 27, 2021. The Court hereby finds that the Motion, which this Court incorporates by reference into this Order, demonstrates facts that support a continuance of the trial date in this matter, and provides good cause for a finding of excludable time pursuant to the Speedy Trial Act, 18 U.S.C. § 3161.

       The Court further finds that: (i) the ends of justice served by the continuance outweigh the best interest of the public and defendant in a speedy trial; (ii) failure to grant the continuance would be likely to make a continuation of the proceeding impossible, or result in a miscarriage of justice; and (iii) failure to grant the continuance would unreasonably deny defendant continuity of counsel and would deny defense counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

THEREFORE, FOR GOOD CAUSE SHOWN:

1. The trial in this matter is continued from April 4, 2022 to July 5, 2022. The pre-trial motions are now due April 4, 2022.

2. The time period of from April 4, 2022 to July 5, 2022, inclusive, is excluded in computing the time within which the trial must commence, pursuant to 18 U.S.C. §§ 3161(h)(7)(A), (h)(7)(B)(i), (h)(7)(B)(ii), and (B)(iv).

3. Defendant shall appear in Courtroom A 702 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294; and on July 5, 2022 at 9:00 a.m.

4. Nothing in this Order shall preclude a finding that other provisions of the Speedy Trial Act dictate that additional time periods are excluded from the period within which trial must commence. Moreover, the same provisions and/or other provisions of the Speedy Trial Act may in the future authorize the exclusion of additional time periods from the period within which trial must commence.

IT IS SO ORDERED.


_____        _____
DATE                               THE HONORABLE DANIEL D. DOMENICO
                                   UNITED STATES DISTRICT COURT JUDGE



Presented by:

        /s/
_____
Tor Ekeland
Attorney for Defendants Michael Tew and Kimberley Tew

2

UNITED STATES DISTRICT OF COURT
FOR THE DISTRICT OF COLORADO

Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA

**MOTION TO WITHDRAW**

Plaintiff,

v.

MICHAEL AARON TEW, JONATHAN K.
YIOULOS, and KIMBERLEY ANN TEW,

Defendants.

 

**PLEASE TAKE NOTICE,** undersigned counsel respectfully moves to withdraw as counsel to Michael Tew and Kimberley Tew in this action under D.C. COLO. LAttyR 5(b) of the District of Colorado local rules and Rule 1.16 of the Colorado Rules of Professional Conduct, subsections (b)(1), (b)(5), (b)(6), and (b)(7). Mr. and Mrs. Tew have not and apparently cannot meet their financial obligations to the firm I work for. Furthermore, certain circumstances have made it unreasonably difficult to continue the representation separate and apart from their inability to honor financial obligations to our firm. I, as well as my co-counsel Tor Ekeland and Michael Hassard, will be withdrawing as counsel in this case. Tor Ekeland is submitting a declaration setting forth, in greater detail, the reasons supporting our motion to withdraw.

Respectfully submitted,

/s/ Xuan Zhou
Xuan Zhou
(CA Bar No. 333504)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737 -7264
xuan@torekeland.com


*Attorney for Michael Tew and
Kimberley Tew*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December 2021, I electronically filed the
foregoing with the Clerk of the Court using the CM/ECF system which will send notification of
such filing to counsel of record.


Respectfully submitted,

/s/ Xuan Zhou
Xuan Zhou
(CA Bar No. 333504)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737 -7264
xuan@torekeland.com


*Attorney for Michael Tew and
Kimberley Tew*

UNITED STATES DISTRICT OF COURT
FOR THE DISTRICT OF COLORADO

UNITED STATES OF AMERICA

Plaintiff,

v.

MICHAEL AARON TEW, JONATHAN K.
YIOULOS, and KIMBERLEY ANN TEW,

Defendants.

Case No. 20-cr-00305-DDD

**MOTION TO WITHDRAW**

   **PLEASE TAKE NOTICE,** undersigned counsel respectfully moves to withdraw as counsel to Michael Tew and Kimberley Tew in this action under D.C. COLO. LAttyR 5(b) of the District of Colorado local rules and Rule 1.16 of the Colorado Rules of Professional Conduct, subsections (b)(1), (b)(5), (b)(6), and (b)(7). Mr. and Mrs. Tew have not and apparently cannot meet their financial obligations to the firm I work for. Furthermore, certain circumstances have made it unreasonably difficult to continue the representation separate and apart from their inability to honor financial obligations to our firm. I, as well as my co-counsel Tor Ekeland and Xuan Zhou, will be withdrawing as counsel in this case. Tor Ekeland is submitting a declaration setting forth, in greater detail, the reasons supporting our motion to withdraw.

Respectfully submitted,

/s/ Michael Hassard
Michael Hassard
(NYS Bar No. 5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737 -7264
michael@torekeland.com

*Attorney for Michael Tew and
Kimberley Tew*

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of December 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

Respectfully submitted,

/s/ Michael Hassard
Michael Hassard
(NYS Bar No. 5824768)
Tor Ekeland Law, PLLC

30 Wall Street
8th Floor
New York, NY
10005
(718) 737 -7264
michael@torekeland.com

*Attorney for Michael Tew and Kimberley Tew*

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Hetal Janak Doshi (caseview.ecf@usdoj.gov, hetal.doshi@usdoj.gov,
portia.peter@usdoj.gov, usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Tor
Bernhard Ekeland (billing@torekeland.com, docketing@torekeland.com,
susanna@torekeland.com, tor@torekeland.com), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Xuan Zhou (xuan@torekeland.com), Michael Hassard
(hassard.mike@gmail.com, michael@torekeland.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, maureen.carle@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt (andrea.surratt@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge
Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), jroth
(josh_roth@cod.uscourts.gov), dddlc2 (moses_weisberg@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8483634@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Minute Order
```
Content–Type: text/html

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 2/2/2022 at 1:26 PM MST and filed on 2/2/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 172(No document attached) |

**Docket Text:**
**MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re [167] MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, [162] MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, [166] MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Defendant Michael Tew and Defendant Kimberley Tew shall each file a separate financial affidavit under restriction at Level 3 NO LATER THAN FEBRUARY 14, 2022. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Hetal Janak Doshi (Terminated)    hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,

danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Hetal Janak Doshi (Terminated)     hetal.doshi@usdoj.gov, CaseView.ECF@usdoj.gov, Portia.Peter@usdoj.gov, USACO.ECFCivil@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**MICHAEL AARON TEW**,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

     Defendants.

---

## ORDER GRANTING MOTION TO CONTINUE

---

Before the Court is a motion to continue the trial date in this case by three months, and to exclude that period of delay when computing the time within which his trial must commence under the Speedy Trial Act filed by counsel to Defendants Michael Aaron Tew and Kimberly Ann Tew. (Doc. 165.) For the following reasons, the Court finds that a continuance is warranted. The Court also finds that the ends of justice served by granting the continuance outweigh the best interests of the public and Defendant in a speedy trial. Accordingly, the motion is granted.

## PROCEDURAL HISTORY

On July 8, 2020, a criminal complaint was issued as to Mr. Tew, and he was arrested on July 9, 2020. Mr. Tew waived indictment.  On February 3, 2021, an indictment was issued for both Mr. and Mrs. Tew. Mr. Tew was indicted on one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), 39 counts of wire fraud ((18 U.S.C. § 1343), one count of

money laundering, one count of conspiracy to commit money laundering (18 U.S.C. § 1956(h)), thirteen counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), and four counts of willful failure to file a tax return (20 U.S.C. § 7203). Mrs. Tew was indicted on similar charges, including one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), six counts of wire fraud (18 U.S.C. § 1343), and five counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).

On February 5, 2021, Mr. Tew entered a plea of not guilty at his arraignment, and Mrs. Tew entered a plea of not guilty on February 10, 2021, making April 22, 2021, the initial deadline for their trial to commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On February 11, 2021, the Court entered an order setting trial to commence on April 19, 2021. (Doc. 101.) The Court excluded 19 days from Mr. Tew's speedy clock when his co-defendants were joined for trial. (Doc. 101) and 180 days for an Ends of Justice Continuance (Doc. 116). Defendants filed a motion on August 10, 2021 to exclude twelve months from this time calculation, which the Court granted (Docs. 143, 149.)

On December 27, 2021, Defendants' counsel filed the motion to continue currently before the Court. (Doc. 165.) The government does not oppose the requested continuance. (*Id.* at 1.) However, Mr. and Mrs. Tew do. (*Id.* at 2.)

## APPLICABLE LAW

When evaluating a request to continue a trial, the Court considers the following factors: (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the

- 2 -

continuance; (3) the inconvenience to the opposing party, its witnesses, and the Court resulting from the continuance; and (4) the need asserted for the continuance and the harm that the party requesting it might suffer if the continuance is denied. *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987). No single factor is determinative, and the weight given to any one factor may vary depending on the extent of the showing on the others. *Id.* However, "by far the most important factor to consider" is the requesting party's need for a continuance and the prejudice resulting from its denial. *Id.* at 1471.

When a request for continuance implicates Speedy Trial Act requirements, the Court may exclude from the statutory time period within which the Defendants' trial must commence "[a]ny period of delay resulting from a continuance granted . . . on the basis of [the Court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In order to exclude the period resulting from such a continuance, the Court must set forth in the record its reasons for finding that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial, considering the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> . . . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(A)-(B); *see also United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009).

## DISCUSSION

Defendants' counsel requests a continuance for the following reasons: (1) this case involves sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants; (2) the discovery disclosed by the government to date consists of more than 230,000 documents and 300 gigabytes of electronically stored data; (3) all defense counsel have filed motions to withdraw, which would leave the Defendants either proceeding pro se or seeking new representation. (Doc. 143 at 3-5, Doc. 165 at 1-2.)

The Court finds that the *West* factors weigh in favor of granting a continuance. Nothing in the record suggests that Defendants and their counsel have not been diligent in preparing for trial. However, communication has broken down between attorneys and clients, and it appears that Mr. and Mrs. Tew have exhausted their means to pay legal bills. (Doc. 165 at 1.) The Defendants have been ordered to submit separate financial affidavits so the Court can resolve counsel's motion to withdraw (Doc. 172.) Should those motions be granted, whether the Tews find other retained counsel, or are appointed federal public defenders, their new counsel will have a substantial task to review discovery, communicate with their clients, and prepare any appropriate pretrial

motions. The continuance, if granted, would accomplish Defendants' stated purpose of allowing adequate time to resolve questions surrounding their representation, allow them to obtain and review discovery, conduct further factual investigation, conduct legal research, engage in plea discussions with the government, and prepare for a jury trial if necessary. The government does not oppose the requested continuance, and the continuance will not cause any significant inconvenience to the Court.

While Mr. and Mrs. Tew oppose the continuance, their desire to proceed is outweighed by the significant ends of justice favoring a continuance. And Defendants might be significantly prejudiced if the continuance is denied, as he may be unable to effectively prepare for trial, or to knowingly and intelligently engage in plea discussions, without adequate time to conduct investigation and research relevant to the case. Granting such a motion over the objection of a defendant is appropriate where the ends of justice outweigh the best interest of the public and the defendant in a speedy trial. *See United States v. Harlan*, 960 F.3d 1089, 1093 (8th Cir. 2020). A continuation and exclusion of ninety days is appropriate to allow the Defendants to find alternate counsel and for counsel to properly prepare.

The Court further finds that the Speedy Trial Act factors weigh in favor of a finding that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. It is in the Defendants' best interest to have sufficient time to complete necessary pretrial tasks and discuss his case with his attorney. Without the requested continuance, the defense will be unable to effectively prepare the case, file appropriate motions, or engage in plea discussions. A limited ends-of-justice continuance will not subvert the public's or Defendants' interest in the prompt prosecution of this case.

- 5 -

Accordingly, based on the relevant record considered as a whole, the Court FINDS that:

Failure to grant a continuance of trial beyond the time prescribed by 18 U.S.C. § 3161(c)(1) would likely result in a miscarriage of justice, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i);

Even taking into account the exercise of due diligence, failure to grant a continuance would deny counsel for Defendant the reasonable time necessary for effective pretrial and trial preparation within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv);

The ends of justice served by granting the requested continuance outweigh the best interest of the public and Defendant in a speedy trial within the meaning of 18 U.S.C. § 3161(h)(7)(A); and

Ninety days should be excluded from the computation of the speedy trial time.

For the foregoing reasons,[1] it is ORDERED that:

Defendants' counsel Motion for a 3-Month Ends of Justice Continuance (Doc. 165) is GRANTED;

Ninety (90) days, from February 4, 2022 to May 5, 2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time;

The eight-day trial set to begin April 4, 2022 is VACATED and RESET to June 13, 2022 at 9:00 am in Courtroom A1002. Pretrial

---

[1] As required by 18 U.S.C. § 3161(h)(7)(C), the Court has not predicated its ruling on congestion of its calendar or lack of diligent preparation by the government's counsel.

- 6 -

Motions are due May 12, 2022, Responses due by May 19, 2022. The Trial Preparation Conference set for March 21, 2022 is VACATED and RESET to June 2, 2022 at 3:30 pm in Courtroom A1002.

DATED: February 4, 2022                    BY THE COURT:


_____
Hon. Daniel D. Domenico
United States District Judge

- 7 -

FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO
2:16 pm, Feb 10, 2022
JEFFREY P. COLWELL, CLERK

1:20-cr-00305-DDD

February 10, 2022

VIA EMAIL
Honorable Kristin L. Mix
United States District Court
District of Colorado
Alfred A. Arraj United States Courthouse A441
Courtroom A401

Dear Judge Mix:

My wife and I are committed to retaining appropriate counsel to represent us in this matter.

We are currently reviewing an engagement letter with a law firm based in Denver. We expect that this law firm will enter within the next two weeks.

On February 2, 2022, this Court issued Minute Order (172) requiring my wife and I to file a financial affidavit by February 14, 2022. Given the circumstances named above, we wish to request this Court to extend such deadline to February 28, 2022.

Thank you for your kind consideration in this matter.

Respectfully,

Michael Tew

Kimberley Tew

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Tor Bernhard Ekeland (billing@torekeland.com,
docketing@torekeland.com, susanna@torekeland.com, tor@torekeland.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, maureen.carle@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael Hassard (hassard.mike@gmail.com,
michael@torekeland.com), Andrea Lee Surratt (andrea.surratt@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, usaco.ecfcriminal@usdoj.gov),
Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Xuan Zhou
(xuan@torekeland.com), Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), jroth (josh_roth@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8496482@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order Referring Motion
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 2/10/2022 at 3:28 PM MST and filed on 2/10/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 176(No document attached) |

**Docket Text:**
**ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew [175] MOTION for Extension of Time to File filed by Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/10/2022. Text Only Entry (dddlc2, )**


**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland    docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard    michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

KIMBERLY ANN TEW, and
MICHAEL AARON TEW,

     Defendants.

_____

**MINUTE ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

     This matter is before the Court on Defendants' **Motion for Extension of Time** [#175] (the "Motion").  Defendants ask for a two-week extension to file financial affidavits because they "are currently reviewing an engagement letter with a law firm based in Denver" and, therefore, may not require appointment of counsel through the CJA.

     IT IS HEREBY **ORDERED** that the Motion [#175] is **GRANTED**.  The deadline for each Defendant to file a separate financial affidavit under restriction at Level 3 is extended to **February 28, 2022**.

     Dated:  February 14, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a
   Kimberley Vertanen,**

Defendants.

---

## ENTRY OF APPEARANCE

---

Peter R. Bornstein of The Law Offices of Peter R. Bornstein, hereby enters his appearance on behalf of the Defendants, Michael Aaron  Tew and Kimberley Ann Tew in this action.

Respectfully submitted this 25th day of February, 2022.

THE LAW OFFICES OF PETER R. BORNSTEIN

*s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael Tew and
Kimberley Tew*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of February, 2022, I electronically filed the foregoing **ENTRY OF APPEARANCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

2

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Tor Bernhard Ekeland (billing@torekeland.com,
docketing@torekeland.com, susanna@torekeland.com, tor@torekeland.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Xuan Zhou (xuan@torekeland.com), Peter R.
Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Michael Hassard
(hassard.mike@gmail.com, michael@torekeland.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, maureen.carle@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt (andrea.surratt@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge
Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), jroth
(josh_roth@cod.uscourts.gov), dddlc2 (moses_weisberg@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8528183@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/4/2022 at 9:13 AM MST and filed on 3/4/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 179(No document attached) |

**Docket Text:**
 **Order. Defense counsel is directed to file a status report on or before 3/10/2022 confirming that he has discussed the potential conflicts of interest that joint representation of criminal codefendants may raise with his clients, and that they each continue to understand these dangers and risks and continue to consent to proceeding with joint counsel in spite of them. SO ORDERED by Judge Daniel D. Domenico on 3/4/2022. Text Only Entry (dddlc2, )**


**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com,
tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com,
tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Tor
Bernhard Ekeland (billing@torekeland.com, docketing@torekeland.com,
susanna@torekeland.com, tor@torekeland.com), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, maureen.carle@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
Hassard (hassard.mike@gmail.com, michael@torekeland.com), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Xuan Zhou (xuan@torekeland.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), jroth (josh_roth@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8530531@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Withdraw as
Attorney
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/7/2022 at 9:08 AM MST and filed on 3/7/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 180(No document attached) |

**Docket Text:**

**ORDER granting [162] Motion to Withdraw as Attorney. Attorney Tor Ekeland is relieved of any further representation of Defendants Michael Tew and Kimberly Tew. The Clerk of Court is instructed to terminate Attorney Ekeland as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard, Peter Bornstein, and Xuan Zhou. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland     docketing@torekeland.com, billing@torekeland.com, susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Tor Bernhard Ekeland (billing@torekeland.com,
docketing@torekeland.com, susanna@torekeland.com, tor@torekeland.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Xuan Zhou (xuan@torekeland.com), Peter R.
Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Michael Hassard
(hassard.mike@gmail.com, michael@torekeland.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, maureen.carle@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt (andrea.surratt@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge
Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), jroth
(josh_roth@cod.uscourts.gov), dddlc2 (moses_weisberg@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8530536@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Withdraw as
Attorney
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/7/2022 at 9:11 AM MST and filed on 3/7/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 181(No document attached) |

**Docket Text:**
 **ORDER granting [166] Motion to Withdraw as Attorney. Attorney Xuan Zhou is relieved of any further representation of Defendants Michael Tew and Kimberly Tew. The Clerk of Court is instructed to terminate Attorney Zhou as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard and Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland (Terminated)     docketing@torekeland.com, billing@torekeland.com,
susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Tor Bernhard Ekeland (Terminated)     docketing@torekeland.com, billing@torekeland.com,
susanna@torekeland.com, tor@torekeland.com

Michael Hassard     michael@torekeland.com, hassard.mike@gmail.com

Xuan Zhou     xuan@torekeland.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
**Kimberley Vertanen,**

Defendants.

---

## STATUS REPORT

---

Peter R. Bornstein, counsel for Defendants, Michael Aaron Tew and Kimberley Ann Tew, hereby submits a Status Report as required by the Court's Order of March 4, 2022. (Doc. 179).

Prior to undertaking joint representation with Mr. and Mrs. Tew, counsel orally advised each of them, jointly and individually, the conflicts which can arise when defendants seek joint representation in a criminal case. I also advised them by means of a written advice form that I have used in previous cases. The form contains a written warning of the consequences of conflicts and requires a signed waiver. Each Defendant continues to understand the dangers and risks associated with joint representation and has consented to proceed with joint counsel in spite of them.

Respectfully submitted this 10th day of March, 2022.

THE LAW OFFICES OF PETER R. BORNSTEIN

*s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael Tew and
Kimberley Tew*

## CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of March, 2022, I electronically filed the foregoing **STATUS REPORT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a
   Kimberley Vertanen,**

Defendants.

---

## MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE

---

Defendant, Kimberley Ann Tew, by her counsel of record, Peter R. Bornstein, moves this Court for amendment of conditions of release entered by Magistrate Judge Mix on August 20, 2021. (Doc. 144 and Doc. 138).  As grounds in support of her motion, Ms. Tew states to the Court as follows:

1.     Kimberley Ann Tew has been released pending the trial of her case.  Ms. Tew appeared for her initial appearance on February 10, 2021.  At that time, she was released on a $10,000 unsecured bond with conditions, including home detention and location monitoring.  (Doc. 99).

2.      Currently, one of the conditions of her release is GPS monitoring which includes an ankle-bracelet monitoring system.

3.      Ms. Tew is currently allowed to leave on vacation with her twin daughters and her husband pursuant to orders entered by this Court on March 14, 2022. However, Ms. Tew wants to be able to take her daughters swimming while on vacation which is not possible with her ankle monitor, and she wants to be able to go through airport security without explaining to her daughters why she will be detained by TSA Security at the airport.

4.      Former counsel for Ms. Tew filed a motion to modify the terms of release accompanied with a memorandum of law. (Doc. 134). That motion led to the hearing held on July 15, 2021 before Magistrate Judge Mix.

5.      The Magistrate Judge applied an erroneous statutory authority in entering her orders modifying the conditions of release. The Magistrate Judge applied 18 U.S.C. § 3142(f) whereas the proper statutory provision is U.S.C. § 3142(c)(3). That section states that the judicial officer may at any time amend the order to impose additional or different conditions of release.

6.      The Magistrate Judge applied the requirement for reopening the proceeding pursuant to 18 U.S.C. § 3142(f)(2) that the Court may reopen the detention hearing "if information exists that was not known to the movant at the time of the hearing and it has a material bearing on the issue whether there are conditions of

2

release will reasonably assure the appearance of the person as required and the safety of any other person in the community." The court applied the wrong standard.

6.     Attached to this motion is a copy of the transcript from the hearing held on July 15, 2021 and the reference can be found at page 6, lines 1 – 10. (Doc. 144 – copy attached as Exhibit A).

7.     Ms. Tew seeks amendment of the conditions of release pursuant to U.S.C. § 3145(c)(3).

8.     The attorney for the government opposes this motion and believes that *United States v. Cisneros*, 328 F.3d 610 (10th Cir. 2009) requires the application of § 3142(f). The *Cisneros* case is a case about review and appeal of detention orders. Section 3142(f) applies to detention orders and only to such orders. Non-detention order releases pursuant to Sections 3142(c)(1) can be amended, modified, or changed pursuant to subsection (c)(3).

9.     Ms. Tew is not a flight risk. Her husband, Michael Tew, was arrested by federal agents on the current charges on July 8, 2020 and he appeared for his initial appearance before the Magistrate Judge on July 9, 2020.

10.    On July 31, 2020, following a search of Ms. Tew's apartment, she was given a target letter from the U.S. Attorney's Office indicating that she was the subject of a criminal investigation.

11.    Despite the arrest of her husband and the receipt of a target letter, Ms. Tew did not attempt to flee the jurisdiction. She was indicted on February 3, 2021 and

3

served with a summons for her initial appearance before the Court on February 10, 2021. At no time prior to her indictment did she attempt to flee.

12.     Originally, Pre-Trial Services issued a report submitted at Kimberley Tew's arraignment, stating that she is not a flight risk or a danger to the community. Nevertheless, the Government has sought onerous conditions of release. These conditions of release do not meet the statutory requirement for imposing the least restrictive release conditions that would assure her appearance in court. 18 U.S.C. § 3142(c)(B).

13.     Since her arraignment a year ago, she has complied with all the requirement of Pre-trial Services and demonstrated that she is not a flight risk.

14.     It is the position of Ms. Tew that she will appear in court based on her unsecured bond without the necessity of ankle monitoring.

15.     Ms. Tew has twin daughters, now ages seven, one of whom is in school in Denver while the other is home schooled because of her special needs. Her care and custody of her daughters is another reason why she will not flee the jurisdiction.

16.     The attorney for the government has said to counsel, that he thinks this motion is subject to the 14-day objection provision in Rule 59(a) of the Federal Rules of Criminal Procedure and that there has been a waiver. Defendant counters by asserting that the provisions for amendment of conditions of release in the Bail Reform Act override the Rule.

4

17.   For these reasons, Ms. Tew requests that this Court amend the conditions

of release imposed on her and modify those conditions by removing the condition of an

ankle monitor and GPS.

Respectfully submitted this 22nd day of March, 2022.

THE LAW OFFICES OF PETER R. BORNSTEIN

*s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael Tew and
Kimberley Tew*


## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of March, 2022, I electronically filed the
foregoing **MOTION FOR AMENDMENT OF CONDITIONS OF RELEASE** with the Clerk
of the Court using the CM/ECF system which will send notification of such filing to all
counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

5

1

<div align="center">

UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

</div>

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | . | Case No. 20-cr-00305-DDD-2 |
| | . | |
| Plaintiff, | . | |
| | . | |
| vs. | . | |
| | . | |
| MICHAEL AARON TEW, | . | 901 19th Street |
| KIMBERLEY ANN TEW, also | . | Denver, CO  80294 |
| known as Kimberley | . | |
| Vertanen, and JONATHAN K. | . | |
| YIOULOS, | . | |
| | . | |
| Defendants. | . | |
| | . | July 15, 2021 |
| . . . . . . . . . . . . . . . | . | 11:08 a.m. |

<div align="center">

**TRANSCRIPT OF PROCEEDINGS HELD BEFORE THE HONORABLE
KRISTEN L. MIX, UNITED STATES MAGISTRATE JUDGE**

</div>

APPEARANCES:

| | |
|---|---|
| For the Plaintiff: | United States Attorney |
| | By:  Matthew T. Kirsch |
| | By:  Hetal J. Doshi |
| | By:  Andrea L. Surratt |
| | 1801 California Street |
| | Suite 1600 |
| | Denver, CO  80202 |
| | (303) 454-0100 |
| | |
| For the Defendant: | Tor Ekeland Law, PLLC |
| | By:  Tor B. Ekeland |
| | By:  Michael Hassard |
| | 30 Wall Steet, 8th Floor |
| | New York, NY  10005 |
| | (718) 737-2764 |
| | |
| Also Present: | Kimberly A. Tew |
| | Carlos Morales |
| | |
| Court Recorder: | Clerk's Office |
| | U.S. District Court |
| | 901 19th Street |
| | Denver, CO  80294 |

<div align="center">

**EXHIBIT**

**A**

</div>

2

1  Appearances continued:

2  Transcription Service:          AB Litigation Services
                                   216 16th Street, Suite 600
3                                  Denver, CO  80202
                                   (303) 296-0017

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  Proceedings recorded by electronic sound recording;
    transcript produced by transcription service.

3

 1                    (Time noted:  11:08 a.m.)

 2              THE COURT CLERK:  All rise.  Court is in session.

 3              THE COURT:  Thank you.  Please be seated.

 4         Good morning.  This is case number 20-cr-00305,

 5    United States of America versus Kimberley Ann Tew, et al.

 6              Let's have counsel enter appearances, please,

 7    starting with counsel for the Government.

 8              MR. KIRSCH:  Good afternoon, Your Honor.  Matthew

 9    Kirsch, Hetal Doshi, and Andrea Surratt, here for the

10    Government.

11              THE COURT:  Good morning.

12              MR. EKELAND:  Good morning, Your Honor.  I'm Tor

13    Ekeland appearing for the Defendant.

14              THE COURT:  Good morning.  We're here on the

15    Defendant's motion to modify the terms of her pre-trial

16    release.

17              I have received and reviewed the motion.

18              I'll hear from defense counsel first.  Mr.

19    Ekeland?

20              MR. EKELAND:  May I proceed?

21              THE COURT:  You may.

22              MR. EKELAND:  Thank you, Your Honor.  So I think

23    we've stated clearly, Your Honor, our argument in our motion

24    papers, and we'll stand on those papers.  I'm just asking

25    that we can reply to anything that the Government may raise.

4

1          It is my understanding that Mr. Morales, who is

2    the PO for both of the Tews is in Court today, and I think he

3    can inform the Court as to what he thinks are necessary

4    conditions for Mrs. Tew.

5          But basically we're asking for the same conditions

6    of release that co-Defendant, Jonathan Yioulos has, who is

7    facing 25 more felony counts than Ms. Tew.

8          And we would just submit to the Court that there

9    is no evidence in the record, and the Government has the

10   burden here, as the Court knows, by the preponderance of the

11   evidence, to establish that she's a flight risk.  And there

12   is nothing in the record that indicates she's any type of

13   flight risk.

14         Pre-trial's original recommendation was that she

15   be freed on her own recognizance.

16         And I'd note that the Government raised the issue

17   that she had access to Bitcoin cryptocurrency, but financial

18   means by itself is not dispositive of somebody being a flight

19   risk.  You need something more, because Mr. Yioulos has the

20   same resources.

21         And if the seriousness of the charges is

22   determinative of the flight risk here, then Mr. Yioulos

23   should be on home confinement with an ankle bracelet, as

24   well, because his cooperation with the Government is not a

25   factor under the BRA.

5

 1              THE COURT:  All right.  Thank you.  Well, let me
 2  address one issue relating to the so-called "record" and the
 3  repeated statements in the motion and statements by counsel
 4  this morning about the lack of any evidence in the record
 5  justifying the conditions of release that were previously
 6  imposed on the Defendant.

 7              I know, Mr. Ekeland, that you probably don't
 8  practice in the District of Colorado much, and I don't know
 9  how they do things in the Eastern District of New York.

10              But I want to make sure that you understand that
11  the statements that were made by Government counsel at the
12  time of the initial detention hearing are considered evidence
13  in the record.  There is no transcript of that hearing on the
14  Court's electronic docket because a transcript was not
15  ordered by counsel.

16              Nevertheless, those statements and the recording
17  that was made of that proceeding are considered to be part of
18  the record in this case.

19              So to the extent that you're suggesting that there
20  is no record that supports the Court's order with respect to
21  the conditions of release that were placed on your client,
22  that's just incorrect.  There is no transcript of the hearing
23  that was held, but there was, indeed, a record made with
24  respect to the Government's statements.

25              My other concern relates to, of course, the

Case 2:20-cr-00305-DDP Document 487 03 Filed 03/25/22 Page 6 of 20
309 of 1346

6

1  Statutory requirement for reopening the proceeding.  And, as

2  you know, under 18 U.S.C. section 3142(f)(2), the Court may

3  reopen the detention hearing if:

4          "[I]nformation exists that was not known to the

5  movant at the time of the hearing and that has a material

6  bearing on the issue whether there are conditions of release

7  that will reasonably assure the appearance of the person as

8  required and the safety of any other person and the

9  community."

10          That's the Statutory requirement.

11          Now, I understand that the parties may have

12  reached some agreement with respect to modification of the

13  conditions of this Defendant's release.  The Government may

14  not have reached an agreement with the Defendant on that.

15  The Government may have a different proposal from what the

16  Defendant is proposing.

17          But as far as I'm concerned, this is the Statutory

18  threshold that must be met for the hearing to even be

19  reopened.  And I haven't heard any suggestion from the

20  Defendant that there is information that exists that was not

21  known to the Defendant at the time of the original detention

22  hearing.

23          But to the extent that such information exists, I

24  think you have the burden of establishing what it is.  What

25  is it?

7

1          MR. EKELAND:  Your Honor, we're not arguing new
2    information, but we are arguing that this detention is un-
3    Constitutional and arbitrary under the Bail Reform Act, and
4    that when you compare Ms. Tew's conditions of confinement to
5    Mr. Yioulos, the disparity becomes clear.

6          And, Your Honor, to the extent that there is
7    evidence in a transcript that hasn't been ordered, we will
8    review that.  And I apologize to the Court because it is not
9    our intention to say that the Court has done something wrong.

10          But our main argument as stated in our papers is
11   that the current conditions of release are un-Constitutional
12   under the Fifth Amendment of the United States Constitution,
13   because they appear to have been punitively imposed in order
14   to coerce a plea, and that what we've seen of the evidence,
15   and it's my understanding that the law is the same in the
16   Eastern District as it is in the District of Colorado, seems
17   to indicate that there is not -- the least restrictive means
18   have not been imposed, and there seems to be an arbitrary
19   disparity that we are unaware of a rationale for between Mr.
20   Yioulos' conditions and Ms. Tew's.

21          THE COURT:  All right.  Well, I understand what
22   you're arguing.  I'll hear from the Government with respect
23   to this, as well.

24          Let me just say that, you know, it would not have
25   been difficult for the Defendant and defense counsel to do a

 1  little homework about this matter and to discover two things:

 2          First, that motions to modify conditions of

 3  release are assigned to the Magistrate Judge who placed the

 4  Defendant on release in the first place.

 5          The motion, the written motion in this case, has a

 6  tone which appears to me to be under the false impression

 7  that the District Judge assigned to the case, Judge Domenico,

 8  would be rehearing this motion.

 9          If you had done your homework and had understood

10  how things work in the District of Colorado, you would know

11  that this motion would come back to this Magistrate Judge,

12  because I'm the person who put Ms. Tew on the conditions of

13  release in the first place.

14          The other thing which I cannot let go without

15  commenting on are the repeated assertions in the written

16  motion that this Court is racist, in that the Court imposed

17  conditions on this Defendant due to her status as an Asian-

18  American.

19          Again, had you done any research whatsoever into

20  this Judge, I think you would have learned easily, clearly,

21  and definitively, that that is not who I am and that is not

22  who I have ever been.

23          And to the extent that you are suggesting that the

24  Court somehow imposed conditions because of the color of your

25  client's skin, the Court is deeply offended.  And I have to

9

 1  make that statement for the record.

 2          All right.  I'll hear from the Government counsel,

 3  please, Mr. Kirsch.

 4          MR. KIRSCH:  Thank you, Your Honor.  First of all,

 5  the Government agrees with the Court with respect to the

 6  relevant standard here under 3142(f).

 7          The Defendant, in order to have a hearing in the

 8  first place, the Defendant needs to have alleged not only

 9  material that was not available at the time of the original

10  hearing, but that information has to be material.

11          As we read the Defendant's motion as favorably as

12  possible, you could characterize the -- you could

13  characterize the information that she -- that the Defendant

14  temporarily suffered from bruising --

15          THE COURT:  Bruising.

16          MR. KIRSCH:  -- somewhere on her leg, that there

17  is no evidence that's actually connected to the ankle

18  monitor, that is arguably new evidence.  It's the only

19  arguable new evidence, and it is not material to the question

20  before the Court about whether or not what is the combination

21  of conditions that would reasonably satisfy her appearance.

22          To the extent that the Court is entertaining the

23  argument that this constitutes a due process violation,

24  because there is no valid interest in seeking her detention,

25  the Government would refer the Court back to all of the

1  arguments and evidence that the Government presented at the
2  initial detention hearing.

3        The Government believes there is obvious and
4  adequate justification for seeking detention of Ms. Tew.

5        I would also make sure that the Court is aware
6  that there has, in fact, been a transcript prepared of those
7  original proceedings.  It's at docket number 128.  And as far
8  as the Government is aware, it had been prepared at the time
9  Ms. Tew's motion was filed.

10        Finally, I would -- I want to make, on behalf of
11  the United States Attorney's Office, a similar statement to
12  the one that the Court made with respect to the allegation
13  that there is a racial animus that's motivating the
14  Government's position in this case.  That's not true.

15        As the Court is aware, the Government has sought
16  and obtained different conditions of release with respect to
17  each of the Defendants.

18        THE COURT:  From different Judges, right?  I don't
19  think I was the one who put Mr. Yioulos, or whatever the
20  other Defendant's name is, on release.  I believe it was
21  Judge Hegarty, wasn't it?  Maybe not.  I don't remember.  But
22  anyway, go ahead.

23        MR. KIRSCH:  It was -- I believe it was you.
24        THE COURT:  Was it me?  Okay.
25        MR. KIRSCH:  Yes, Your Honor.

Case 1:20-cr-00305-DLI Document 147-3 Filed 04/26/22 Page 1 of 20
314 of 1346

1          THE COURT:  Okay.  Fair enough.

2          MR. KIRSCH:  But there are different bond amounts

3  in each cases.  The Government put forth different evidence

4  with respect to Mr. Yioulos and Ms. Tew.

5          And, in particular, two things that bear on the

6  issue of flight risk:

7          One, that Mr. Yioulos had begun cooperating

8  immediately, and had continued to cooperate, and, therefore,

9  had an additional interest to appear.

10          And second, that he doesn't have the substantial

11  experience with cryptocurrency and/or the dark net that --

12          THE COURT:  Or a degree in accounting.

13          MR. KIRSCH:  That's also true.  The last thing

14  that I feel like I have to point out on that point, Your

15  Honor, and, again, the Court probably remembers this already.

16          But at that hearing, there was actually a question

17  about whether or not Ms. Tew should get a curfew and have a

18  GPS monitor, or whether she should be subject to home

19  detention.

20          The Government actually expressed as its first

21  preference that she get GPS monitoring with a curfew.  It's

22  was Ms. Tew's attorney who said her client had asked her to

23  ask for home detention instead.

24          And so the idea that after she requested that,

25  that that could somehow be used as evidence of racial animus,

Case 1:22-cr-00105-DDD Document 648-3 Filed 01/24/25 USDC Colorado Page 2 of 20
315 of 1346

12

 1 | is shocking.

 2 | So the Government's position is there is no

 3 | evidence to justify the new hearing here in the first place,

 4 | but to be absolutely fair, the Government's position before

 5 | was that GPS monitoring with a curfew was fine.  The

 6 | Government hasn't changed its position about that.

 7 | And if the Court, despite the lack of proper

 8 | procedural status to be able to make that modification, if

 9 | the Court wanted to do that, the Government wouldn't object.

10 | THE COURT:  So let's talk about that.  And I will,

11 | of course, allow defense counsel to address that, as well.

12 | That is my recollection that the Government sought

13 | GPS monitoring and curfew at the time of the initial hearing,

14 | that defense counsel suggested that Defendant preferred radio

15 | frequency monitoring and home confinement.

16 | But to the extent that the Government is now

17 | saying the Government has no objection to changing the

18 | conditions of release to electronic monitoring and a curfew,

19 | does the Government have a position with respect to the

20 | timing of the curfew?

21 | I understand from the pre-trial services report

22 | that Ms. Tew does not drive, and, therefore, my thinking is

23 | that a curfew, you know, with two small children, of around

24 | 7:00 p.m. would probably work for the Defendant.

25 | What is the Government's position with respect to

Case 1:20-cr-00305-DDD Document 645-3 Filed 10/24/22 Colorado Page 73 of 20
316 of 1346

13

1  the curfew?

2          MR. KIRSCH:  I didn't discuss this with the

3  probation officer in advance.  I'm sorry.  7:00 p.m. would be

4  completely reasonable to the Government under those

5  circumstances.

6          Our memory is that Mr. Tew's curfew is 9:00 p.m.

7  If the Court were to find that it made sense for them to have

8  the same curfew, the Government wouldn't object to that

9  either.

10          And if Officer Morales has a suggestion for a

11  different time, then we would be likely to defer to that

12  suggestion.

13          THE COURT:  Okay.  And I'll let you talk, Mr.

14  Ekeland.  I promise I will.

15          But Mr. Morales, as I understood it, you don't

16  have a particular preference with respect to a curfew 7:00

17  p.m., 9:00 p.m.?

18          MR. MORALES:  No, Your Honor.

19          THE COURT:  All right.  Thank you.  And I

20  understand also from Mr. Morales that Ms. Tew has done very

21  well on her release to-date.  There is no dispute with

22  respect to that.  There is no allegation of violations of the

23  conditions of her release whatsoever.  I am taking judicial

24  notice of that, as well.

25          All right, Mr. Ekeland, what is your position with

14

 1 │ respect to a potential modification that would include
 2 │ electronic monitoring instead of radio frequency monitoring,
 3 │ and a curfew of 8:00 a.m. to 9:00 p.m.?

 4 │          MR. EKELAND:  Your Honor, we would obviously like
 5 │ no ankle monitoring, as we've argued before, release on
 6 │ personal recognizance.

 7 │          But if there was to be a curfew that ends at 9:00
 8 │ p.m., is acceptable.  And if we could eliminate the home
 9 │ confinement, that's excellent, as well, Your Honor.

10 │          THE COURT:  All right.  Well, we're in a bit of a
11 │ procedural quandary here because of the language of the Bail
12 │ Reform Act.

13 │          But I am inclined to construe loosely the language
14 │ requiring information exists that was not known to the movant
15 │ at the time of the hearing, and to give her the benefit of
16 │ the doubt with respect to the bruising that was caused by the
17 │ radio frequency monitor.

18 │          Arguably, that is information that was not --
19 │ certainly was not known to the movant at the time of the
20 │ hearing.

21 │          And so for that reason, the Court will find that
22 │ it is appropriate to reopen the hearing to address the issue
23 │ of the conditions of release.

24 │          I do take judicial notice of the fact that the
25 │ Defendant has performed well on the conditions of the release

1  to-date.  I also take notice of her affidavit with respect to

2  the bruising from the radio frequency monitoring.

3           I do agree with the Government that given the

4  unique circumstances of this Defendant's background, there is

5  a reason to impose some conditions that will not be overly

6  restrictive, but will guarantee her appearance in Court in

7  the future.

8           I am well aware of the Defendant's

9  responsibilities for her two children, including one of whom

10 is a special needs child.  I am aware of the Defendant's

11 husband's bond conditions at this time.

12          And the Court finds that the bond conditions

13 should be modified, in part, to remove the condition of home

14 confinement, to replace the radio frequency monitoring with

15 electronic monitoring, and to also impose a curfew of 8:00

16 a.m. to 9:00 p.m., so that the Defendant's movements will be

17 monitored between 8:00 a.m. and 9:00 p.m. pursuant to the GPS

18 monitoring, but she won't be dealing with the radio frequency

19 monitoring, which sets off every time she wants to take the

20 kids to the pool, or anything like that.

21          Mr. Morales, is there something you wanted to add?

22          MR. MORALES:  No, Your Honor.  I just wanted it to

23 be clear it's going to be GPS monitoring with a curfew from

24 8:00 to 9:00 p.m.?

25          Could there be some discretion also to allow for

Case 1:20-cr-00305-DDD Document 645-3 Filed 01/24/22 USDC Colorado Page 16 of 20

 1  changes in that?

 2          THE COURT:  I was just going to get to that.

 3          MR. MORALES:  Okay.

 4          THE COURT:  So, you know, we're fortunate that

 5  we're dealing with a very experienced United States Probation

 6  Officer, who is responsible for Ms. Tew's monitoring while

 7  she's on her conditions of release.

 8          And in the past, I have modified the authority of

 9  the United States Probation Officer to provide essentially

10  exceptions for emergency circumstances, for leisure

11  circumstances, when, in the judgment of the United States

12  Probation Officer, it is appropriate to do that.

13          And I will do that here, as well.  In other words,

14  to the extent that some exception would like to be -- the

15  Defendant would like some exception to her curfew to be made

16  for purposes of leisure activities or anything else, she may

17  ask the United States Probation Officer to authorize that

18  exception, and I'll allow him to do that in his judgment.

19          And there will be no second guessing of that by

20  the Court.  So the United States Probation Officer will have

21  the authority to speak to the Defendant and/or her counsel

22  with respect to modifications of the curfew on an as-needed

23  basis, and to make a decision as to whether it's appropriate

24  based on the circumstances that arise.

25          Does that make sense?

1          MR. EKELAND:  Yes, Your Honor.  Thank you.

2          THE COURT:  All right.  You're welcome.

3          THE COURT CLERK:  Would Your Honor like to execute

4   an amended order setting the conditions?

5          THE COURT:  I think we can cover this, frankly, in

6   the minutes of today's proceeding.  I want to make sure I

7   have the Defendant's statement on the record that she

8   understands the modification of the conditions of her

9   release.

10          The motion, for the record, is granted in part and

11  denied in part.

12          The Defendant's conditions of release are modified

13  to remove the home confinement condition, to remove the radio

14  frequency monitoring condition, to add a condition for GPS

15  monitoring.  That's going to have to be put in place, of

16  course, by the United States Probation Officer.  To add a

17  curfew of 8:00 a.m. to 9:00 p.m., and to allow the U.S.

18  Probation Officer to have discretion to allow exceptions to

19  the curfew when requested by the Defendant on the judgment of

20  the United States Probation Officer, as appropriate.

21          Do you understand those conditions, or

22  modification of your conditions, Ms. Tew?

23          MS. TEW:  Yes.

24          THE COURT:  All right.  Then the minutes will

25  reflect the modifications, and the minutes will reflect that

Case 1:20-cr-00305-DDD Document 648-13 Filed 01/24/22 USDC Colorado Page 25 of 20

18

```
 1   the Defendant understands the modifications of the
 2   conditions.
 3           And, of course, you also agree to comply with
 4   these modified conditions, Ms. Tew.
 5           MS. TEW:  I wasn't aware that I would have to be
 6   switched to a GPS monitor, which is unfortunately much
 7   heavier than the RF monitor, and it also has a separate
 8   battery attachment.  And to my knowledge, there's only one
 9   unit available.
10           And previously, the first time, and that was on-
11   line, but I believe my former attorney had worked out an
12   agreement where there would be home confinement with a land
13   line, not even an RF ankle monitor, which is how I ended up
14   here.  There was just some confusion there.  But I never once
15   elected for the GPS location just because of the size, and
16   it's just -- it's not a great fit for my current situation
17   with two children.
18           THE COURT:  I mean, I understand that you'd prefer
19   not to have monitoring.  I get that.  You know, I understand
20   that there -- it's difficult, especially in the summertime,
21   to have monitoring because they are visible on a person's
22   leg.
23           For example, going to the pool is a perfect
24   example of a time when a monitor is visible.  And there is a
25   stigma, and it can be an issue of embarrassment and all of
```

Case 1:09-cr-00608-DDD Document 646-8 Filed 01/04/22 Page 19 of 20
322 of 1346

19

1  that stuff.

2        But the fact of the matter is that based on the

3  record before the Court, the Court is going to impose some

4  kind of monitoring requirement.  The GPS monitoring allows

5  you greater freedom, because you can leave your home.  You'll

6  still be monitored, but never -- and I understand it's

7  heavier and maybe more cumbersome to you, but generally the

8  GPS monitoring is a better situation in terms of your ability

9  to move around and to move around with your children if you

10  wish to do that.

11        So, you know, it's sort of a -- the Court is going

12  to impose it.  And I understand your objection to it.  I

13  understand your concerns about it.

14        What I need to know from you is that you

15  understand that that's going to be imposed, and that you

16  agree that you're going to abide by the conditions that I am

17  imposing.

18        MS. TEW:  Yes, Your Honor.  Thank you for your

19  time.

20        THE COURT:  All right, thank you.  So the minutes

21  will reflect the modification of the conditions, the partial

22  granting of the motion to modify.

23        Is there anything else that we need to address

24  today from the Government's point of view.

25        MR. KIRSCH:  No, thank you, Your Honor.

20

1    THE COURT:  Thank you.  Anything else from the

2  Defendant?

3    MR. EKELAND:  No, Your Honor, thank you.

4    THE COURT:  Thank you.  We're in recess.

5    THE COURT CLERK:  All rise.  Court is in recess.

6    (Time noted:  11:30 a.m.)

7    * * * * *

8    CERTIFICATE

9    I, RANDEL RAISON, certify that the foregoing is a

10  correct transcript from the official electronic sound

11  recording of the proceedings in the above-entitled matter, to

12  the best of my ability.

13

14

15  _____    August 20, 2021

16  Randel Raison

17

18

19

20

21

22

23

24

25

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com),
Bryan David Fields (bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov,
maureen.carle@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov),
Probation-General (cod_efiling@cod.uscourts.gov), USM-Criminal Division
(gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8557578@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Minute Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/24/2022 at 7:19 PM MDT and filed on 3/24/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 188(No document attached) |

**Docket Text:**
**MINUTE ORDER re: [187] Motion to Amend/Correct Conditions of Supervised Release. The Court reviews the conditions of pretrial release de novo, and having reviewed the transcripts of the two previous hearings as well as the recommendations of the Probation Department, does not find that the Government has shown by a preponderance of evidence that location monitoring is required to reasonably assure the appearance of Kimberley Tew or the safety of another person or the community. The government has until 11:00am on 3/25/2022 to respond. SO ORDERED by Judge Daniel D. Domenico on 3/24/2022. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

(2) KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

    Defendant.

---

## ORDER MODIFYING CONDITIONS OF RELEASE

---

Before me is Defendant Kimberley Tew's Motion for Amendment of Conditions of Release (Doc. 187). Ms. Tew seeks review of Magistrate Judge Kristen L. Mix's decision to release her with the condition that she submit to GPS location monitoring. (Doc. 138.) For the reasons detailed below, Ms. Tew's motion is granted, and the GPS-monitoring condition is removed.

## LEGAL STANDARD

"Under the Bail Reform Act, a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" *United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003) (quoting 18 U.S.C. § 3142(e)). The government ultimately bears the burden of persuasion that the defendant poses a flight risk (under a preponderance of the evidence standard) or a danger to the community (under a clear and convincing evidence standard). *Id.* I must consider four factors in

- 1 -

determining whether there are conditions of release that will reasonably assure a defendant's appearance and the safety of the community: (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

Where the defendant appeals a release order by a magistrate judge pursuant to 18 U.S.C. § 3145(a), the district court reviews the magistrate judge's order de novo. *Cisneros*, 328 F.3d at 616 n.1.

## DISCUSSION

There are no allegations that Ms. Tew is a threat to another person or to the community. Nor is she charged with an offense that carries a presumption of detention. *See* 18 U.S.C. § 3142(e)(2)-(3). The questions before me therefore are whether she is a flight risk, and what is the "the least restrictive . . . condition, or combination of conditions, that . . . will reasonably assure [her] appearance." 18 U.S.C. § 3142(c)(1)(B).

Ms. Tew faces serious charges, with a statutory maximum of twenty years' imprisonment. The government estimates that her sentencing guideline range will be seventy to eighty-seven months' imprisonment. (Doc. 189 at 11.) And the government argues that there is voluminous electronic and financial documentation of the alleged crimes. While a possible twenty-year sentence is substantial, Congress only created a presumption of detention based on risk of flight for certain types of crimes with that penalty, mostly violent ones. *See* 18 U.S.C. § 3142(e)(3). That potentially lengthy sentence alone does not carry the government's burden of persuasion that Ms. Tew poses a flight risk absent GPS monitoring.

The text messages that the government produced from Defendant Michael Tew, Ms. Tew's husband, suggesting that the family might flee are also concerning. (Doc. 189 at 15.) But Ms. Tew appeared at her initial appearance on a summons, has participated in her defense, and has thus far complied with all the conditions of her pretrial release. And neither Ms. Tew nor her husband has attempted to flee as Mr. Tew's text messages suggested they might. In fact, in the same text exchange, Mr. Tew reported that "[s]he thinks we should all turn ourselves in and end it[.] Kimberley said she's turning herself in today." (*Id.*) In the lengthy time since Mr. and Ms. Tew were indicted and summoned, there does not appear to have been any actual attempt to follow through with any plan to "get out of the country" or otherwise fail to appear at required court hearings.

Ms. Tew takes care of her two six-year-old daughters and has lived in Denver for at least six years. Her ties to Denver, and her interest in maintaining the stability of her children's education and environment decrease the likelihood of flight.

Although this Order modifies Magistrate Judge Mix's decision, I note that Ms. Tew's previous allegations that her conditions of release were imposed because of her race and sex are unfounded. (*See* Doc. 134 at 10-11.) Judge Mix imposed conditions—first of home confinement and RF monitoring, then modified to a curfew and GPS monitoring at Ms. Tew's request (Doc. 138)—based on the government's arguments and evidence about Ms. Tew's risk of flight. There is no evidence of prejudice in the record, and Ms. Tew has not chosen to rehash those allegations in the present motion.

While the long delay in challenging her conditions of release is not ideal, that delay alone is not a justification for rejecting such a motion.

*See United States v. Doby*, 928 F.3d 1199, 1208 (10th Cir. 2019). The Probation Office does not believe GPS monitoring is necessary to assure Ms. Tew's appearance as required. (Doc. 107 at 3.) Ultimately, I agree and conclude that whatever marginal effect the GPS monitoring may have on Ms. Tew's behavior, it is not necessary to assure her appearance in these proceedings.

## CONCLUSION

The defendant's Motion for Amendment of Conditions of Release (Doc. 187) is GRANTED.

It is ORDERED that Ms. Tew's conditions of release are modified to remove the requirement that she submit to GPS location monitoring. Ms. Tew is directed to contact the Probation Department for instructions on how to comply with her conditions of release going forward.

DATED: March 25, 2022                    BY THE COURT:

Hon. Daniel D. Domenico
United States District Judge

- 4 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
   **Kimberley Vertanen,**

Defendants.

---

### UNOPPOSED MOTION TO CONTINUE TRIAL AND FOR AN ENDS OF JUSTICE FINDING PURSUANT TO 18 U.S.C. § 3161(h)(7)

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby moves this Court for an order continuing the trial date in this case and for an ends of justice finding pursuant to 18 U.S.C. § 3161(h)(7), excluding 180 days from the speedy trial calculation.  Undersigned counsel conferred with AUSA Bryan Fields regarding this request and Mr. Fields stated that he supports this motion. As grounds in support of their motion, Mr. and Mrs. Tew state to the Court as follows.

### PROCEDURAL HISTORY

After several months of preliminary pleadings and filings, the grand jury returned an indictment on February 3, 2021, naming both Michael Tew and Kimberley Tew.  The indictment naming Michael Tew alleges sixty counts consisting of conspiracy to commit wire fraud, conspiracy to commit money laundering, wire fraud, engaging in monetary

transactions in property derived from specified unlawful activity, and failure to file income tax returns. Kimberley Tew was indicted on thirteen counts, including conspiracy to commit wire fraud, conspiracy to commit money laundering , wire fraud, and money laundering. Michael Tew entered a plea of not guilty on February 5, 2021 and Kimberley Tew entered a plea of not guilty on February 10, 2021.

The original trial date was set to begin on April 19, 2021. (Doc. 101). On March 11, 2021, prior counsel filed a motion to continue the trial which was granted by this Court. (Doc. 116). A new trial date was set for October 12, 2021. A second motion to continue the trial was filed by prior counsel on August 8, 2021, (Doc. 143), which was granted by court order on September 22, 2021. (Doc. 149). That court order set a new trial date for April 4, 2022. Prior counsel's request to withdraw from representing both Michael Tew and Kimberley Tew was granted on February 2, 2022 along with a continuance of the trial date to June 13, 2022. (Doc. 174). This case is currently set for an eight-day jury trial beginning on June 13, 2022.

Undersigned counsel entered his appearance on behalf of the Defendants on February 25, 2022. Thereafter, counsel worked with the U.S. Attorneys Office to obtain the voluminous discovery that goes with this case. The government finally delivered 5 USBcards of discovery around March 22, 2022. This discovery contained documents and records using Eclipse software and over 200,000 emails, many with attachments. Additional discovery was sent by the U.S. Attorney on 4 USBcards on March 23, consisting, among many items, Kimberley Tew's unfiltered iCloud documents and Michael Tew's phone extractions (over 300 gigabytes), along with instructions for

2

decrypting and copying the files out of McAfee encryption.  All thumb drives and discovery was then turned over to Advocates Resources for decryption and copying to a software format that allows counsel to search and organize documents.  The decryption and copying process for this volume of discovery was finished and delivered to counsel in two batches in April and took almost three weeks to process.  The delivery of an external hard drive with the first batch of discovery in a searchable format was received by undersigned counsel on April 6, 2022 followed by a delivery of the second batch a week later.  Counsel immediately started the review process.  The amount of discovery is daunting and overwhelming.

During April, since the delivery of the discovery, defense counsel has also been working on pre-trial motions; in particular, motions to suppress five search warrants that the government served in this case.  Defense counsel intends to file an omnibus motion to suppress search warrants ready for filing by the current motions due date of May 12, 2022.  The preparation and filing of additional pre-trial motions will take more time.  Like prior counsel, preparation for trial in this case could involve the issuance of multiple subpoenas for financial records, the assistance of an expert witness in financial analysis, investigation of facts regarding National Air Cargo and various witnesses and potential witnesses identified in the discovery.  As a result, defendant's counsel and both defendants request that the current trial date be continued for a period of 180 days.

## ANALYSIS

The facts and circumstances described above meet the criteria for continuing the trial as set forth in *United States v. Pursley*, 577 F.3d 1204, 1227-1229 (10th Cir. 2009).

That case reiterated the four factors from *United States v. Rivera*, 900 F.2d 1462 (10th Cir. 1990) and *United States v. West*, 828 F.2d 1468 (10th Cir. 1987).  The four factors are:

1.  The diligence of the party requesting the continuance;

2.  The likelihood that the continuance, if granted, would accomplish the purpose underlying the party's express needs for the continuance;

3.  The inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; and

4.  The need asserted for the continuance and the harm that [Defendants] might suffer as a result of the district court's denial of the continuance.

New counsel has been diligent in obtaining discovery from the government, initially reviewing and analyzing that discovery, and simultaneously working on pre-trial motions to suppress search warrants.  A continuance would allow counsel to continue preparation of pre-trial motions while, at the same time, reading and analyzing hundreds of gigabytes of discovery.  For this reason, and others, the government does not oppose the continuance and has indicated that it would actively agree to the continuance because the Defendants would be harmed if forced to trial with counsel who is unable to be ready for trial.

The Defendants seek to exclude 180 days from the speedy trial time limitations and seek an ends of justice finding that the granting of the continuance outweighs the best interest of the public and the defendant in the speedy trial. 18 U.S.C. § 3161(h)(7). In considering whether an ends of justice continuance should be granted the district court must consider certain factors.  *United States v. Madkins*, 866 F.3d 1136, 1139-1140 (10th Cir. 2017).  In this case, the refusal to continue the case would deny Michael

4

Tew and Kimberly Tew the reasonable time necessary for effective preparation and
would result in a miscarriage of justice.  18 U.S.C. § 3161(h)(7)(B)(i)(B)(iv).  Defendants
propose that they file the motions to suppress search warrants by May 12, 2022, and
file additional pre-trial motions 30 days thereafter on June 13, 2022.  This would allow
the case to move forward even though the ultimate trial date is postponed by 180 days.

      WHEREFORE, Defendants, Michael Tew and Kimberley Tew, request that this
Court enter an order

      1.  continuing the trial date of June 12;

      2.  continuing the final trial preparation conference date;

      3.  keeping the May 12 date for the filing of motions to suppress search warrants;
and

      4.  continuing the date for filing other pre-trial motions to June 13, 2022.

The Defendants also seek an exclusion of time of 180 days pursuant to the Speedy
Trial Act and explicit findings that the ends of justice are best served by the granting of a
continuance.

      Respectfully submitted this 26th day of April, 2022.

                             *s/ Peter R. Bornstein*
                             Peter R. Bornstein
                             6060 Greenwood Plaza Blvd., Suite 500
                             Greenwood Village, CO 80111
                             Telephone: 720-354-4440
                             Facsimile: 720-287-5674
                             E-mail: pbornstein@prblegal.com
                             *Attorney for Defendants Michael Tew and*
                             *Kimberley Tew*

5

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1). This motion will extend the speed trial clock by an additional 180 days.

*s/ Peter R. Bornstein*
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of April, 2022, I electronically filed the foregoing **UNOPPOSED MOTION TO CONTINUE TRIAL AND FOR AN ENDS OF JUSTICE FINDING PURSUANT TO 18 U.S.C. § 3161(h)(7)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

**1. MICHAEL AARON TEW**, and

**2. KIMBERLEY ANN TEW**.

    Defendants.

---

## UNOPPOSED MOTION TO FILE OVERLENGTH MOTION

---

    Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby moves this Court for an order granting leave to file an overlength motion to suppress evidence from searches and seizures. AUSA Bryan Fields has no objection to the request provided the Government can also file a corresponding overlength response.

    1.    During its investigation in this case, the Government sought and obtained thousands of pages of information relating to electronic communications pursuant to the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713. Specifically, magistrate judges issued 13 orders issued pursuant to 18 U.S.C. §2703(d), and five Search Warrants, to obtain information pertaining to a number of email accounts and telephone numbers. The scope of the search and seizures authorized by the orders and warrants is massive, including 200,000 emails, information associated with the accounts, the contents of the accounts, and a variety of other information including personal information. The orders and warrants required the production of such materials for nearly a two and 1/2-year period, i.e., between May 1, 2018 and October 22, 2020.

2.      Defendants will seek suppression of evidence obtained from the SCA orders and search warrants. Defendants could submit 18 separate suppression motions, or a single omnibus motion. Because the language in the orders and search warrants is repetitive, and because the legal issues pertaining to them are identical, it would be more efficient to address all of the orders in a single motion.  It would be much more efficient to file a single comprehensive single motion; otherwise, identical legal arguments would be copied and pasted into 18 separate motions. Furthermore, the orders and search warrants are interconnected and are better discussed within the same document.

3.      DDD Crim. P.S. III(A)(1) states that all motions and briefs shall not exceed 4,000 words. It is not practical to argue for suppression of 18 orders and search warrants within the word limitations in this Practice Standard.

4.      Consequently, Defendants Michael Tew and Kimberley Tew request that this Court permit them to file an omnibus overlength motion to suppress evidence from searches by court orders and by search warrants.

Respectfully submitted May 10, 2022.

THE LAW OFFICES OF PETER R. BORNSTEIN

/s/ Peter R. Bornstein
Peter R. Bornstein
*Attorney for Defendants Michael Aaron Tew
and Kimberley Ann Tew*

## CERTIFICATE OF SERVICE

I hereby certify that on May 10, 2022, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Jeannette L. Wolf

2

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com),
Bryan David Fields (bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
kelsey.totura@usdoj.gov, maureen.carle@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee
Surratt (andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
portia.peter@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8623951@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
File Excess Pages
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

### Notice of Electronic Filing

The following transaction was entered on 5/12/2022 at 12:14 PM MDT and filed on 5/12/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 195(No document attached) |

**Docket Text:**
**ORDER granting [194] Motion for Leave to File Excess Pages as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 6000 words for their motion to suppress and the government has the same number for its response. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**MICHAEL AARON TEW**,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

      Defendants.

---

## ORDER GRANTING MOTION TO CONTINUE

---

Before the Court is a motion to continue the trial date in this case by one hundred and eighty, and to exclude that period of delay when computing the time within which his trial must commence under the Speedy Trial Act filed by counsel to Defendants Michael Aaron Tew and Kimberly Ann Tew (Doc. 193.) and a motion to extend the motions deadline (Doc. 196). For the following reasons, the Court finds that a continuance is warranted. The Court also finds that the ends of justice served by granting the continuance outweigh the best interests of the public and Defendant in a speedy trial. Accordingly, the motion is granted.

### PROCEDURAL HISTORY

On July 8, 2020, a criminal complaint was issued as to Mr. Tew, and he was arrested on July 9, 2020. Mr. Tew waived indictment. On February 3, 2021, an indictment was issued for both Mr. and Mrs. Tew. Mr. Tew was indicted on one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), 39 counts of wire fraud ((18 U.S.C. § 1343), one count of

- 1 -

money laundering, one count of conspiracy to commit money laundering (18 U.S.C. § 1956(h)), thirteen counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), and four counts of willful failure to file a tax return (20 U.S.C. § 7203). Mrs. Tew was indicted on similar charges, including one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), six counts of wire fraud (18 U.S.C. § 1343), and five counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).

On February 5, 2021, Mr. Tew entered a plea of not guilty at his arraignment, and Mrs. Tew entered a plea of not guilty on February 10, 2021, making April 22, 2021, the initial deadline for their trial to commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On February 11, 2021, the Court entered an order setting trial to commence on April 19, 2021. (Doc. 101.) The Court excluded 19 days from Mr. Tew's speedy clock when his co-defendants were joined for trial. (Doc. 101) and 180 days for an Ends of Justice Continuance (Doc. 116). Defendants filed motions to exclude twelve months, ninety days, and 90 days from this time calculation, which the Court granted (Docs. 143, 149, 165, 174, 165, 174.)

On April 26, 2022, Defendants filed the motion to continue currently before the Court. (Doc. 193.) The government does not oppose the requested continuance. (*Id.* at 1.)

## APPLICABLE LAW

When evaluating a request to continue a trial, the Court considers the following factors: (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the

continuance; (3) the inconvenience to the opposing party, its witnesses, and the Court resulting from the continuance; and (4) the need asserted for the continuance and the harm that the party requesting it might suffer if the continuance is denied. *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987). No single factor is determinative, and the weight given to any one factor may vary depending on the extent of the showing on the others. *Id.* However, "by far the most important factor to consider" is the requesting party's need for a continuance and the prejudice resulting from its denial. *Id.* at 1471.

When a request for continuance implicates Speedy Trial Act requirements, the Court may exclude from the statutory time period within which the Defendants' trial must commence "[a]ny period of delay resulting from a continuance granted . . . on the basis of [the Court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In order to exclude the period resulting from such a continuance, the Court must set forth in the record its reasons for finding that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial, considering the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

> . . . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(A)-(B); *see also United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009).

## DISCUSSION

Defendants' counsel requests a continuance for the following reasons: (1) this case involves sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants; (2) the discovery disclosed by the government to date consists of more than 230,000 documents and 300 gigabytes of electronically stored data; (3) defense counsel requires additional time to prepare pre-trial motions while continuing to analyze discovery. (Doc. 193 at 2-3, 4.)

The Court finds that the *West* factors weigh in favor of granting a continuance. Nothing in the record suggests that Defendants and their counsel have not been diligent in preparing for trial. It also appears likely that the continuance, if granted, would accomplish Defendants' stated purpose of allowing adequate time to obtain and review discovery, conduct further factual investigation, conduct legal research, engage in plea discussions with the government, and prepare for a jury trial if necessary. The government does not oppose the requested continuance, and the continuance will not cause any significant inconvenience to the Court. And Defendants might be significantly prejudiced if the continuance is denied, as he may be unable to effectively prepare for trial, or to

knowingly and intelligently engage in plea discussions, without adequate time to conduct investigation and research relevant to the case.

The Court further finds that the Speedy Trial Act factors weigh in favor of a finding that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. It is in the Defendants' best interest to have sufficient time to complete necessary pretrial tasks and discuss his case with his attorney. Without the requested continuance, the defense will be unable to effectively prepare the case, file appropriate motions, or engage in plea discussions. A limited ends-of-justice continuance will not subvert the public's or Defendants' interest in the prompt prosecution of this case.

Accordingly, based on the relevant record considered as a whole, the Court FINDS that:

Failure to grant a continuance of trial beyond the time prescribed by 18 U.S.C. § 3161(c)(1) would likely result in a miscarriage of justice, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i);

Even taking into account the exercise of due diligence, failure to grant a continuance would deny counsel for Defendant the reasonable time necessary for effective pretrial and trial preparation within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv);

The ends of justice served by granting the requested continuance outweigh the best interest of the public and Defendant in a speedy trial within the meaning of 18 U.S.C. § 3161(h)(7)(A); and

One hundred and eighty days should be excluded from the computation of the speedy trial time.

For the foregoing reasons,[1] it is ORDERED that:

Defendants' Motion to Continue Trial and for an Ends of Justice Finding (Doc. 193) is GRANTED;

One hundred and eighty (180) days, from May 12, 2022 to November 8, 2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time;

Defendants' Motion to Extend Motions Deadline (Doc. 196) is GRANTED;

The eight-day trial set to begin June 13, 2022 is VACATED and RESET to December 5, 2022 at 9:00 am in Courtroom A1002. The deadline to file motions to suppress remains May 12. Other pretrial Motions are due June 13, 2022, Responses due by June 20, 2022. The Trial Preparation Conference set for June 2, 2022 is VACATED and RESET to November 29, 2022 at 3:30 pm in Courtroom A1002.

DATED: May 12, 2022            BY THE COURT:

 

_____

Daniel D. Domenico
United States District Judge

---

[1]   As required by 18 U.S.C. § 3161(h)(7)(C), the Court has not predicated its ruling on congestion of its calendar or lack of diligent preparation by the government's counsel.

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, kelsey.totura@usdoj.gov,
maureen.carle@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
portia.peter@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov),
Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8624680@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for
Reconsideration
```
Content−Type: text/html

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 5/12/2022 at 3:58 PM MDT and filed on 5/12/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20−cr−00305−DDD |
| **Filer:** | |
| **Document Number:** | 199(No document attached) |

**Docket Text:**
 **ORDER granting [197] Motion for Reconsideration re [197] Unopposed MOTION for Reconsideration re [195] Order on Motion for Leave to File Excess Pages, *Motion to Suppress* filed by Michael Aaron Tew, Kimberley Ann Tew as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 12,000 words for their motion to suppress, and the government has the same number with which to respond. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, )**


**1:20−cr−00305−DDD−1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

    v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

    Defendants.

---

**MOTION FOR LEAVE TO FILE MOTION TO SUPPRESS EVIDENCE
AS RESTRICTED LEVEL 1**

---

Defendants, Michael Aaron Tew ("Mr. Tew") and Kimberley Ann Tew ("Ms. Tew"), by their counsel of record, Peter R. Bornstein, moves for an order permitting them to file their *Motion to Suppress Evidence* as Restricted Level 1, and for reasons states:

1.    Defendants have filed contemporaneously herewith their *Motion to Suppress Evidence* which seeks suppression of evidence the Government obtained from execution of five search warrants and fourteen court orders issued under the Stored Communications Act, 18 U.S.C. §§ 2701-2713 (Doc. 200).

2.    The Motion to Suppress Evidence contains 28 exhibits consisting of court documents applications for § 2703(d) orders, § 2703(d) orders that were granted, search warrant applications and affidavits, search warrants, and emails. Many of the court documents contain financial account numbers, as well as other personal financial information. Additionally, the email exhibits contain sensitive, personal, and confidential information. Specifically, the emails include medical-genetic test results, medical test records, photographs of children, personal husband-wife communications, doctor-

patient communications, accountant communications, and student loan communications.

3.      Fed. R. Crim. P. 49.1 requires redaction of filings that contain, among other things, financial account numbers. Due to the number of account numbers and the exhibits, redaction of the account numbers is not practicable. Because of this impracticability, and the sensitive nature of the email exhibits, it is appropriate to file the *Motion to Suppress* as Level 1 restricted pursuant to D.C.COLO.LCrR 47.1.

WHEREFORE, Defendants, Michael Aaron Tew and Kimberley Ann Tew request leave to file their *Motion to Suppress Evidence* as Restricted Level 1.

Respectfully submitted this 12th day of May, 2022,

<div style="margin-left:40%">

*/s/ Peter R. Bornstein*
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for Defendants Michael Aaron Tew and Kimberley Ann Tew*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2022, I electronically filed the foregoing *MOTION FOR LEAVE TO FILE MOTION TO SUPPRESS EVIDENCE AS RESTRICTED LEVEL 1* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

<div style="margin-left:40%">

*Jeannette Wolf*
Paralegal

</div>

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

     1. MICHAEL AARON TEW and
     2. **KIMBERLEY ANN TEW**,
        a/ka Kimberley Vertanen,

     Defendants.

---

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTION TO SUPPRESS EVIDENCE [ECF NO. 200]

---

The Defendants' Motion to Suppress, ECF No. 200 ("Def. Mot.") seeks blanket suppression of all evidence obtained from electronic accounts they have not even shown are theirs in circumstances where agents conducted a painstaking step-by-step investigation using congressionally-authorized and judicially pre-approved orders to incrementally gather non-content information before seeking warrants to gather more invasive content information bearing on an alleged $5,000,000 fraud scheme.   This is precisely the kind of thing the Supreme Court has repeatedly stated should not result in sanctions that would distort the truth-seeking process of our judicial system by removing relevant evidence from a jury's consideration.   The Defendants' Motion should be denied.

1

**ARGUMENT**

## I. Judicially-Approved 2703(d) Orders Seeking Non-Content Metadata Do Not Violate the Fourth Amendment

The government used 2703(d) orders — essentially, judicially-pre-approved subpoenas — to obtain *noncontent* information. It then used the information it lawfully obtained from those court orders, to obtain search warrants. There is no basis for suppressing *all* of the evidence obtained from these orders. The government is not aware of any decision holding that that 18 U.S.C. §§ 2703(c) and (d) — the portions of the statute providing a mechanism to obtain non-content metadata — is unconstitutional and the Supreme Court has repeatedly emphasized that suppression is inappropriate when agents do exactly what they did here: rely in good faith on duly-enacted statutes of congress and relevant precedents in this circuit.

### A. Carpenter, by its own terms, does not apply to the categories of information sought by the 2703(d) orders.

The Supreme Court's decision in *Carpenter v. United States* was, by explicit admission, a "narrow one" that did not "disturb the application of *Smith [v. Maryland*, 442 U.S. 735 (1979) and [*United States v.] Miller*[, 425 U.S. 435 (1976)] . . . or other business records that might incidentally reveal location information." 138 S. Ct. 2206, 2220 (2018). Indeed, the Court's opinion noted that the "Government will be able to use subpoenas to acquire records in the overwhelming majority of investigations." *Id.* at 2223.

2

In order to prevail, the defendants would need to show that they have legitimate expectation of privacy in records held by the third-party providers of the relevant electronic communications service provider. Even if the accounts were theirs (more on this below), none of the records are protected by a legitimate expectation of privacy. The paragraph straddling pages 7 and 8 of their brief makes compares the categories of information authorized by the 2703(d) orders to the cell-site information at issue in *Carpenter* because they "similarly involve tracking of a person's digital life moments." But *Carpenter* was not dealing in the sweet mysteries of life or other metaphorical abstractions.   It was about literal, physical movement. *Id.* at 2217 ("[W]e hold that an individual maintains a legitimate expectation of privacy in the record of his *physical movements* as captured through CSLI.") (emphasis added).   The defendants' analogies are much too general:

- "Every telephone number called."   The precise holding of *Smith* is that there is no reasonable expectation of privacy in this information, and *Carpenter* declined to disturb that holding. *Id.* at 2220

- "Every website visited."   The order allows the government to obtain IP address information. But IP information is broadcast voluntarily to many outside observers, including the internet service provider, the website visited, and anyone *that* website provide the information to.   The Tenth Circuit — consistent with every other circuit to address the issue — has long held this information is not protected by the Fourth Amendment. *United States v. Perrine*, 518 F.3d 1196, 1205-06 (10th Cir. 2008).   Courts have not changed their mind post-*Carpenter*:   *See, e.g., United States v. Soybel*, 13 F.4th 584, 592 (7th Cir. 2021) (citing cases from First, Fifth and Eleventh Circuits similarly unmoved by analogies to *Carpenter*)*; United States v. Monroe*, 350 F. Supp. 3d 43, 48-49 (D.R.I. 2018) (analyzing issue and concluding that IP information is not protected post-*Carpenter*).

- "The date and time of all telephone calls or emails."   This is just the first

bullet-point put another way. It's again, explicitly what's allowed by *Smith* and precisely what *Carpenter* left undisturbed. *Carpenter*, 138 S. Ct. at 2220.

- "Information about the owners and users of the account."   Again, this is the kind of information that *Smith* held to be unprotected:   users of email, no different than users of phones, understand that they are voluntarily giving information about their identity. *Perrine*, 518 F.3d at 1205 (dropping string cite for proposition that "every federal court to address this issue had held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation.")

- "The date, time, and duration of every connection made to the account." Once again, this is just another way of framing the first and third bullet point.   *Carpenter* explicitly ratified the *Smith* holding that this information is not protected. *Carpenter*, 138 S. Ct. at 2220

- "The email addresses and/or telephone numbers for all communications occurring in connection with each account."   This, too, is the kind of toll metadata allowed by *Smith* that *Carpenter* leaves in place. *Carpenter*, 138 S. Ct. at 2220.

- "Information about linked accounts."   This one is not directly covered by *Smith*, but the defendants make absolutely no effort to even try to compare it to the location data at issue in *Carpenter*.   It is, moreover, hard to distinguish from the linked financial accounts asked for in *Miller*, which was also explicitly ratified in *Carpenter*.   *Miller*, 425 U.S. at 438 (noting that subpoena asked for all accounts in name of one individual). It is also hard to distinguish from subscriber information, which also has no reasonable expectation of privacy.   *Perrine,* 518 F.3d at 1205.

- "The services used."   This is also difficult to distinguish from *Miller*, where the government asked for bank records from several different banking services (savings, checking, or loans).   The defendants do not even try to explain why there is either as subjective or objective expectation of privacy in this information.

- "The devices connected to the account."   The defendants do not explain or even attempt to articulate how *Carpenter* — which related to location information — has any bearing on information simply identifying a device. Nor do they try to explain how the identity of a device is

4

meaningfully different from information identifying a subscriber.  *Cf.*
*Perrine,* 518 F.3d at 1205

In short, the defendants provide no legal basis for extending *Carpenter*
beyond its plain words, for rejecting the pre- and post-*Carpenter* precedents finding
no reasonable expectation of privacy in the non-content information sought by the
2703(d) orders, and no independent Fourth Amendment legitimate-expectation-of-
privacy analysis justifying the radical conclusion that judicially-approved orders
asking for information Congress specifically authorized by statute is somehow
unconstitutional.

For good reason: the Stored Communication Act "represents a judgment by
Congress that it is not unreasonable under the Fourth Amendment" for the
government to obtain the kind of non-content information set forth in the statute.
*See United States v. Watson*, 423 U.S. 411, 415-416 (1976) (noting deference to
congress's considering judgment as to what kinds of searches are reasonable); H.R.
Rep. No. 827, 103d Cong., 2d Sess. Pt. 1, at 31 (1994) (describing Congress's
understanding of Fourth Amendment and Supreme Court precedent when it passed
Stored Communications Act).   The statute here is exactly the kind of authority the
Supreme Court has recognized for "subpoena[s] or order[s] authorized by law and
safeguarded by judicial sanction."   *Oklahoma Press Pub'g Co. v. Walling*, 327 U.S.
186, 208 (1946).   It is the kind of order that results in "the orderly taking" of
evidence.   *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950).   That is, the
orders here are essentially "super subpoenas" that provide greater protection than

5

normal subpoenas, which do not require probable cause. *Oklahoma Press*, 327 U.S. at 208. Concluding that the 2703 orders here are unconstitutional would require somehow concluding that the *greater* statutory protections offered by that statute run afoul of the Fourth Amendment when it is clear that, before the statute was passed, cases like *Oklahoma Press* and *Morton Salt* would have allowed the government to obtain them with just a subpoena. This is not the law. *See United States v. Di Re*, 332 U.S. 581, 585 (1948 )(noting Supreme Court's reluctance to "decide that a search . . . authorized by congress was unreasonable.")

### B. *Warshak* Does Not Say what the Defendants Say it Says

The defendants' discussion of *Warshak* leaves the impression that the Sixth Circuit somehow held all 2703(d) orders to be unconstitutional. It did not. *Warshak* was a dispute about a separate provision of § 2703: § 2703(*b*), which authorizes the government to get the *content* of emails without a warrant (though with notice). 18 U.S.C. § 2703(b)(2).

The government did not obtain *content* in this case with a 2703(d) order. Rather, it obtained the non-content information specifically authorized in 2703(c)(1)(B) and (E), for which there is no reasonable expectation of privacy. It then did exactly what the *Warshak* panel said the government should do: it got a warrant. *Warshak* does not in any way support the conclusion that the Fourth Amendment was violated or that suppression is warranted here — even *Warshak* still gave the government the benefit of good faith reliance on the text of the statute

6

and then-existing precedent. *United States v. Warshak*, 631 F.3d 266, 290 (6th Cir.

2010)

## II.    A Magistrate Judge Concluded that the 2703(d) Orders Were Supported by Specific and Articulable Facts – Suppression is not an Authorized Remedy

The § 2703(d) orders are, indeed, based on a similar fact templates, with the

primary difference being paragraphs linking the facts of the crime to the relevant

communication device/account associated with that crime.   But because these

similar applications were independently reviewed and approved by almost every

magistrate judge sitting in Denver, the defendants are essentially claiming that a

majority of the experienced magistrate judges here consistently and independently

err in their findings of reasonableness. This derisive take on the applications and

the resulting orders finding them sufficient is inconsistent with the Tenth Circuit's

command that findings of magistrate judges are entitled to "great deference."

*United States v. Cantu*, 405 F.3d 1173, 1176 (10th Cir. 2005).   As set forth below,

the applications meet the lower-than-probable cause standard required by the

statute.

But there is no reason for the court to resolve a *post hoc* squabble over the

use of particular words like "may," or whether a prosecutor's proffer of what the

evidence shows count as specific and articulable "facts." They do. But even if the

defendants are correct in their assertion that a § 2703(d) application requires

specific citations to underlying evidence supporting proffered facts, and even if

those facts are now found wanting, Congress specifically rejected suppression as a

remedy once an independent magistrate has issued the relevant order. 18 U.S.C.

§ 2707 (providing for civil remedies); 18 U.S.C. §  2808 (providing that remedies

and sanctions set forth in §  2706 are the "only judicial remedies and sanctions for

nonconstitutional violations of this chapter).   As the Tenth Circuit has concluded,

"violations of the ECPA do not warrant exclusion of evidence." *Perrine*, 518 F.3d at

1202. For the reasons set forth above, the non-content metadata disclosed as a

result of the orders is not protected by the Fourth Amendment, there is no

constitutional violation, and there is thus no basis for suppressing that evidence or

for suppressing its derivative use in the later warrants.

 If the Court does undertake a review of the sufficiency of the applications, it

should give the magistrate judges deference and "ask only whether, under the

totality of the circumstances presented in the affidavit, the . . . judge had a

substantial basis for determining that probable cause existed." *United States v.*

*Haymond*, 672 F.3d 948, 8958 (10th Cir. 2012) (citation omitted and internal

quotation omitted). Each judge did.

 The defendants spend much of their briefing second-guessing the magistrate

judges' independent judgments that the applications here satisfied the

requirements of § 2703(d),which require a lower-than-probable-cause threshold

finding that there are specific and articulable facts showing "reasonable grounds" to

believe the information was "relevant and material" to the investigation.   Def. Mot.

<div align="center">8</div>

at 12 – 14 (§ IV.A.1-4); 19 (§ IV.B.1); 22 (§ IV.C.1); 27 (§ IV.E.1); 29-34 (§§ V.A.1, B.1, C.1., D.1 – D.2, E.1, F.1 and G.1). The defendants give *no* deference to the judges who issued the orders, criticizing the use of the word "may" and quibbling over whether proffered statements about the evidence are "facts." The statute does not require — and the defendants cite no precedents requiring — that the government provide a detailed summary of specific pieces of evidence supporting a factual proffer or use magic words synonymous with "may," "possibility," or "probability." The statute says the government must "offer" facts — provide a proffer of what the evidence shows. This is no different than what occurs at detention hearings, where attorneys as officers of the court proffer what the evidence will show. *Cf.* 18 U.S.C. § 3142(f).

The question is whether it was reasonable for the magistrate judges to (1) conclude that a company was being defrauded when it (a) did not receive invoiced services, (b) where the owner of the company was unaware of the payments, (c) where the payments went into bank accounts controlled by one or the other of the defendants, and (d) where the requested email account or phone number was associated with the defendants or businesses receiving the payments and (2) that the email account or phone number might thus be relevant to an ongoing investigation into the fraud and its fruit. It was: the AUSA who submitted those applications described a company being fleeced and then identified email accounts and phone numbers associated with the people lining their nests. The defendants

9

are essentially arguing that it is unreasonable to ask for records related to the telephones and emails used by fraud suspects to access their proceeds.   The statute does not compel this counterintuitive conclusion.

Finally, even if the defendants were somehow able to distinguish *Perrine* or articulate a reason not to apply section 2707 and 2708, the Court should still not suppress because the agents here relied on the orders in good faith, as set forth below.

### III.    The Defendants Have No Standing to Challenge the Warrants

As for the warrants, suppression is available as a remedy for a constitutional violation, but the defendants must still walk over the threshold into an area protected by the Fourth Amendment. They have not. The Court should deny the motions because the defendants have failed to show that they have standing to actually suppress the warrants.

The defendants are proceeding under two assumptions, each of which is unsupported. The first is that they are the actual users of the email accounts. Neither of the defendants has admitted or shown that they are and only in that case would one of them have standing. The defendants have the burden of showing standing, *United States v. Lyons*, 992 F.2 1029, 1031 (10th Cir. 1993), and must submit sworn evidence, in the form of an affidavit or testimony, that they *each* have privacy interests in the accounts. *See, e.g., United States v. Almaleh*, 2022 WL 602069, at *13 (S.D.N.Y. Feb. 28, 2022); *United States v. Ray*, 541 F. Supp. 3d 355,

10

380 (S.D.N.Y. 2021) (collecting cases in which defendants were and were not able to establish standing to challenge warrants seeking electronic accounts and devices). It is not immediately apparent how either Kimberley Tew or Michael Tew has a privacy interest in the email accounts "chrisrncn@gmail.com," "political.media.wdc@gmail.com," or "meyersconsultinggroupinc@gmail.com." And even if Kimberley Tew does admit to the facially more plausible possibility that she is the user/owner of the account of kley@me.com,[1] there is no basis for believing that *Michael Tew* has standing to suppress any evidence in that account bearing on *his* guilt.[2] *United States v. Davis*, 750 F.3d 1186, 1191 (10th Cir. 2014) (explaining that when "the poisonous tree was planted in someone else's orchard," a defendant "lacks standing to challenge its fruits."); *United States v. Parrott*, 434 F.2d 294, 296 (10th Cir. 1970) (concluding that one defendant had no standing to challenge evidence seized from codefendant's wallet).

"Fourth Amendment rights are personal rights [that] may not be asserted vicariously." *Rakas v. Illinois*. 439 U.S. 128, 133 (1978). A defendant's Fourth Amendment rights are violated "only when the challenged conduct invaded his

---

1 Kimberley Tew implicitly admits that the kley@me.com account is hers to the extent the motion references exhibits T-X, Z, and BB and complains they are examples of her privacy being unconstitutionally invaded. But this implicit admission is insufficient by reference to the standards articulated in the cases cited in this section.

2 If the Court does determine that suppression is a remedy to any violations of § 2703(d), the same standing analysis here would apply to those orders as well.

11

legitimate expectation of privacy rather than that of a third party." *United States v. Payner*, 447 U.S. 727, 731, 100 S. Ct. 2439, 65 L.Ed.2d 468 (1980). So, for example, in *Lyons*, the Tenth Circuit concluded that a defendant had no standing to suppress hard disks where he could not "meet the threshold requirement of demonstrating an expectation of privacy in the property searched." 992 F.2d at 1032.

Because neither of the defendants has established standing to show that their individual Fourth Amendment rights are implicated, their motion can and should be denied on that ground alone.

### IV. The Affidavits Supporting the Warrants Established Probable Cause to Believe that users of the Target Email Accounts Were Engaged in Criminal Conduct

The Fourth Amendment requires probable cause before a warrant can be issued. U.S. CONST. AMEND IV.   "Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime."   *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Put another way, whether there exists probable cause is a "commonsense, practical question" answered by evaluating the totality of the circumstances and turning on whether there is a "fair probability" that contraband or evidence will be in a particular place.   *United States v. Biglow* 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

12

Courts should not review search warrants in a "hypertechnical manner;" they should be reviewed with common sense.   *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Once a magistrate judge has found probable cause and issued a warrant, the law discourages second-guessing.   If the circumstances are "doubtful or marginal," the district court should give deference to the judgment of the magistrate judge.   *Biglow.* 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984).

The defendants bear the burden of proving that the search here was improper. *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) ("Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of proof.") (citation and quotation marks omitted); *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994) ("The proponent of a motion to suppress bears the burden of proof.") (citation omitted).   He cannot meet that burden.

First, the defendants are simply mistaken to assert that evidence obtained from the § 2703(d) orders cannot be used to support the probable cause determination.   As set forth above, there is no reason to doubt the sufficiency of the applications supporting those orders.   And even if there were, the statute, Tenth Circuit precedent and the good-faith doctrine foreclose suppression, as set forth elsewhere in this brief.

Second, the defendants make the bizarre claim that statements of a federal agent under penalty of perjury are "mere assertions" that somehow do not count as

13

"facts." This is simply not how Courts review affidavits, nor is it consistent with the text of the Fourth Amendment, which specifically says that "probable cause can be supported by Oath or affirmation."   The observations of police officers engaged in a common investigation "are plainly a reliable basis for a warrant." *United States v. Ventrasca*, 380 U.S. 102, 111 (1965); *see Franks v. Delaware*, 438 U.S. 154, 172 (1978) ("There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant[.]"); *United States v. Kunkler*, 679 F.2d 187, 190 (9th Cir. 1982) ("Police officers are considered reliable and their reliability need not be independently demonstrated."). A search warrant affidavit is not an evidentiary hearing in which the agent submits each item of evidence supporting probable cause.

Instead of reading the affidavit in light of a "common sense" standard that recognizes the "fluid concept" of probable cause and the need for a magistrate judge to make a "common-sense decision whether, given all the circumstances set forth in the affidavit in front of him," *United States v. Janus Indus.*, 48 F.3d 1548, 1552 (10th Cir. 1995), the defendants engage in a hypertechnical reading of specific paragraphs, reject as illegitimate any effort to accurately summarize voluminous financial records and demand additional "particulars" of statements such "as whom they were made to, the date of the statements, and the circumstances in which they were obtained", Def. Mot. at 15. *See also* Def. Mot. at 21, 23, 24-25.   But they cite no authority in support of reading affidavits this way.   Even if this strange

14

hermeneutics was brought to bear on federal warrants, they also do not explain how the failure to provide these details fatally undermines the magistrate judges' separate independent conclusions that each of the warrants was supported by probable cause, especially when agent's statements are made under penalty of perjury and the defendants have made no allegation that they are factually incorrect or otherwise subject to a *Franks* challenge.

Finally, the "totality of the information contained in the affidavit[s] provided a substantial basis for finding there was a fair probability that evidence of criminal activity would be found" in the respective electronic accounts.

The first search warrant — the one for records associated with AT&T telephone numbers provided as defense exhibit F — set forth following logical chain, supported by the sworn testimony of the agent:   (1) Michael Tew worked at the victim company, (2) after Michael Tew was terminated, the victim company began paying money into accounts controlled by Michael Tew for services that the company never received and did not authorize, (3) a witness inside the victim company helped Michael Tew and Kimberley receive the money for services that were not rendered, (4) Michael Tew used the telephone numbers that were the target of the warrant to execute the scheme, (5) Michael Tew and Kimberley Tew listed the target telephone numbers on their bank accounts and used those bank accounts to transfer fraud proceeds, (6) the telephone provider maintains records of communications.   That is, the affidavit clearly established probable cause to believe

15

a crime had been committed, that the Tews were committing it, that they were using phones to facilitate it, and that the phone company maintained records. The later search warrants — the one issued in September 20202 (Def. E.) and the three issued in December 2020 (Def. Exs. H, I, and K) contain the same logical chain, supported by much of the same evidence, and contain statements specifically describing how the accounts to be searched were related to the scheme.

The defendants do not challenge the logical chains presented in the affidavits or explain — as he must — how or why the "totality of the information" presented in them was insufficient.   That is, the defendants cannot secure the extreme sanction of blanket suppression by breaking the warrant down into pieces and then explaining why one piece or each piece alone is insufficient.

### V.   That the Government Followed the Two-Step Electronic Search Warrant Process Outlined in Rule 41 is Not A Reason to Suppress

The defendants also challenge the warrants on the ground that they improperly "seized the entire contents" of accounts. Def. Mot. at 19 (§   IV.A.4.c), 22 (§ IV.B.3), 25 (§ IV.C.2.c), 27 (§ IV.C.2.c). 29 (§ IF.E.2.c).   But they ignore the fact that this is precisely what the Federal Rules of Criminal Procedure Require.

On its face, Rule 41 provides that

A warrant under Rule 41(e)(2)(A) may authorize the seizure of electronic storage media or the seizure or copying of electronically stored information. Unless otherwise specified, the warrant authorizes a later review of the media or information consistent with the warrant. The time for executing the warrant in Rule 41(e)(2)(A) and (f)(1)(A) refers to the seizure or on-site copying of the media or information, and not to any later off-site copying or

16

review.

Fed. R. Crim. P. 41(e)(2)(B). By its express terms, then, the Rule distinguishes between the "execution" of the warrant, which it equates with the time of "seizure or on-site copying of the media or information," and a subsequent "review" of that information. *Id.* The Advisory Committee Notes remove any ambiguity: "computers and other electronic storage media commonly contain such large amount of information that it is often impractical for law enforcement to review all of the information during execution of the warrant at the search location...officers may seize or copy the entire storage medium and review it later to determine what electronically stored information falls within the scope of the warrant."   While the rule does not specifically reference email accounts, those same Advisory Committee Notes channel the Fourth Amendment's command of reasonableness by explaining that "the term 'electronic' is used to provide some flexibility to the rule and make allowance for further technological advances in transmitting data."   The Advisory Committee Notes to Federal Rule of Civil Procedure 34, which specifically references "electronically stored information" notes that "the wide variety of computer systems currently in use, and the rapidity of technological change, counsel against a limiting or precise definition of electronically stored information. Rule 34(a)(1) is expansive and includes any type of information that is stored electronically. A common example often sought in discovery is electronic communications, such as e-mail."

Furthermore, the rule provides that while the "seizure" must take place within 14 days, the later "review" has no time limit and is instead examined under a reasonableness standard. *Id.; see also United States v. Syphers*, 426 F.3d 461 (1st Cir. 2005) ("The Fourth Amendment itself contains no requirements about when the search or seizure is to occur or the duration") (emphasis in the original) (internal quotation marks and citation omitted).

For these reasons, the vast weight of authority across the United States supports a two-step process like the one outlined in the warrants here, where the government obtains the entire email account in the first step, and then conducts its particularized search in the second step.   *See ,e .g., In the Search of Records, Information, and Data Associated with 14 Email Address Controlled by Google, LLC*, 438 F. Supp. 3d 771,778 (E.D. Mich. Feb. 4, 2020 ("Michigan Email Accounts") (citing 8 district courts around the country approving the two-step procedure specifically with respect to emails); *In the Matter of a Warrant for all Content and Other Information Associated with the Email Account xxxxxxx@gmail.com Maintained at Premises Controlled by Google, Inc.*, 33 F. Supp.3d 386, 394 (S.D.N.Y. July 2014) ("S.D.N.Y. Email Account"); *In the Matter of the Search of Information Associated with [Redacted]@Mac.Com That is Stored at Premises Controlled by Apple, Inc.*, 13 F. Supp.3d 157, 165 (D.D.C. 2014) (citing several circuit cases in support of two-step approach); *United States v. Deppish*, 994 F.Supp.2d 1211 (D. Kan. 2014) ("[N]othing in § 2703 precludes the Government from requesting the full

18

content of a specified email account, nor has the Tenth Circuit ever required warrants to identify a particularized search strategy").

Here, the government timely obtained, pursuant to a valid warrants, information from Apple and Google, which comprise the entire accounts. Those entire accounts have been produced in discovery. But it is misleading to say that all of those items have been "seized."  As set forth below, the government has endeavored to work in good faith with the defendants to actually conduct its search in a manner that will protect recognized privileges by implementing a filter team. However, extreme volatility with respect to the various counsel who have represented the defendants in these proceedings has actively prevented that process.   Put another way, the fact that certain emails are in the government's "possession" (and thus subject to discovery) does not mean that they have been lawfully "seized" pursuant to the warrant (and thus authorized to be used as evidence in this case).

In weighing the reasonableness of the government's retention of information that is not identified in Section II of the respective "Attachment Bs" to the warrants, the Court must weigh the government's constitutional discovery obligations and legitimate interests in preserving evidence for trial against the defendants' interest in the e-mails of accounts that they have not actually asserted are theirs and for which they have no physical custody. *See Terry v. Ohio*, 392 U.S. 1, 20-21 (1968) ("it is necessary 'first to focus upon the governmental interest which

19

allegedly justifies official intrusion upon the constitutionally protected interests of the private citizen,' for there is 'no ready test for determining reasonableness other than by balancing the need to search (or seize) against the invasion which the search (or seizure) entails'") (quotation omitted).

The government, subject to Rule 41(g), can retain lawfully seized materials of evidentiary value until the proceedings terminate. *United States v. Uribe-Londono*, 177 Fed. App'x 89, 90 (1st Cir. 2006) (the district court determined that "the government had adequately shown a need to retain the items as evidence until the criminal proceedings had concluded"); R*amsden v. United States*, 2 F.3d 322, 326 (9th Cir, 1993) ("The United States' retention of the property generally is reasonable if it has a need for the property in an investigation or prosecution").

Multiple courts have recognized the government's legitimate interest in retaining original, unaltered electronic media that integrates information identified as falling within the material authorized to be seized *and* whatever remains in order to comply with discovery obligations and to preserve the evidence through the conclusion of criminal proceedings. *See United States v. Ganias*, 824 F.3d 199, 213-16 (2nd Cir. 2016) (en banc) (upholding the execution of the warrant on good-faith grounds, but also recognizing the government's legitimate interest in preserving the media to protect the integrity of the data, to authenticate it at trial, and to permit the defense to conduct independent forensic analysis and search for exculpatory evidence); *United States v. Carpenter*, 2015 WL 9461496, *6-*7 (D. Conn. Dec. 24,

20

2015) (noting that the government "is not refusing to return or destroy materials simply because they might be useful in a subsequent investigation"; "the Government has a legitimate interest in retaining the documents for review and possible use as evidence at a trial"); *S.D.N.Y. Email Account*, 33 F. Supp. 3d at 398-99 ("[W]e recognize that the Government has a need to retain materials as an investigation unfolds" and "to maintain a complete copy of the electronic information to authenticate evidence responsive to the warrant for purposes of trial"); *United States v. Staton,* 2012 WL 2159355, *2, *6 (E.D. Pa. June 14, 2012) (to the extent extensive electronic evidence, including multiple computers and storage media, contained responsive documents, the government did not have to return it before the end of the proceedings) (citing multiple cases); *United States v. Kiderlen,* 2006 WL 3079048, *12 (E.D. Miss. 2006) (denying the defendant's motion for a return of property even where the government "d[id] not presently intend to offer the computer or its contents in its case-in-chief," because the items could still have "evidentiary value or relevance").

As set forth below, the government has a legitimate interest in retaining the material because it has warrants requiring it to search through that material to identify items referenced in Section II of the respective "Attachment Bs." The only reason it hasn't yet done so is out of a solicitous concern over legitimate privileges that would protect items from any kind of review.

Google and Apple provided all data for all referenced electronic accounts

including the contents of the emails, as required by Section I of the respective

"Attachment Bs" to the warrants. The irretrievable destruction of that information

would put the government in the position it could be faulted for its failure to comply

with its discovery obligations under Rule 16 but also for its destruction of any

presently unknown exculpatory information if it exists. *See, e.g., United States v.*

*Laurent*, 607 F.3d 895, 900, 902 (1st Cir. 2010) (allowing for a "spoliation" jury

instruction where one party, in "bad faith," destroys evidence favorable to the other,

and discussing the legal framework and the potential for a due process violation

when the government destroys potentially exculpatory evidence); *California v.*

*Trombetta*, 467 U.S. 479 (1984) (destruction of a breath sample); *Arizona v.*

*Youngblood*, 488 U.S. 51 (1988) (destruction of biological matter on the defendant's

clothing); *Illinois v. Fisher*, 540 U.S. 544 (2004) (destruction of cocaine).

Similarly, the government has retained the originally produced information

referenced in Section I of the Attachment Bs in the warrants to Apple and Google to

show the chain of custody, establish authenticity, forestall any allegations of

tampering with the evidence, and to permit the defense to conduct their own

examination of that evidence.

Finally, as set forth below, the churn in defense lawyers and prior counsel's

refusal to engage in good-faith negotiations over how to balance the government's

obligation to execute a court ordered warrant with each respective defendant's

legitimate privilege interests have resulted in a situation where the government has

22

still been unable to review the email evidence to actually determine what should be seized.   In this respect — as set forth below — the defendants' motion is not ripe: there are currently very few items to suppress because the government hasn't even been able to conduct its search.

## VI.    The Search Warrants Describe the Items to be Sized with Sufficient Particularity

The Fourth Amendment requires not only that warrant be supported by probable cause, but also that they particularly describe the place to be search and the . . . things to be seized." U.S. Const. Amend. IV.   The "tings to be seized" requirement, just like everything else in the sphere of Fourth Amendment law, is subject to the rule of reasonableness.   The question is whether the description of the item "enables the searched to reasonably ascertain and identify the things authorized to be seized." *United States v. Robertson*, 21 F.3d 1030, 1033 (10th Cir. 1994).   Even broad and generic terms can satisfy this standard if they are as "specific as circumstances and the nature of the activity under investigation permit." *United States v. Harris*, 903 F.2d 770, 775 (10th Cir. 1990).

That the warrants here sought electronic information does not change these general principles. "[W]arrants for computer searches must affirmatively limit the search to evidence of specific federal crimes or specific types of material" but courts must keep in mind that they should interpret search warrant affidavits in a common sense and realistic fashion." *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009). Accordingly, the Tenth Circuit has "adopted a somewhat forgiving

23

stance when faced with a "particularity" challenge to a warrant authorizing the seizure of computers." *United States v. Grimmett*, 439 F.3d 1263, 1269 (10th Cir. 2006).

Digital information sought in computer servers, no different that digital information sought in computers, "may be as extensive as reasonably required to locate the items described in the warrant." *Id.* at 1270. A warrant authorizing the seizure of records of criminal activity "permits officers to examine many papers in a suspect's possession to determine if they are within the described category." *United States v. Wicks*, 995 F.2d 964, 974 (10th Cir. 1993) (referencing *United States v. Riley*, 906 F.2d 841, 845 (2d Cir. 1990) and its advice that officers need some latitude to conduct searches because "few people keep documents of their criminal transactions in a folder marked 'drug records'")). And unlike a warrant for a cognizable physical object—such as drugs or weapons—when officers search through papers, records, or data for evidence, "it is certain that some innocuous documents will be examined, at least cursorily, in order to determine whether they are, in fact, among those papers authorized to be seized." *Andresen v. Maryland*, 427 U.S. at 482 n.11 (1976); *see, e.g., Burgess*, 576 F.3d at 1094 ("In the end, there may be no practical substitute for actually looking in many (perhaps all) folders and sometimes at the documents contained within those folders, and that is true whether the search is of computer files or physical files. It is particularly true with image files.").

24

Generally speaking, it is sufficient for a warrant to specify that the evidence it seeks is tied to specific criminal statutes and is cabined to a particular date range. *Burgess*, 576 F.3d at 1091 (approving search warrant that limited search to evidence of specific crimes, such as drug trafficking); *Michigan Email Accounts*, 438 F. Supp. 3d at 779 (noting in complex investigation that it was sufficient to permit seizure of items related to identified criminal statutes). The warrants here did that, and more. All of them are limited to time frames with reference to the facts set forth in the affidavits.   Def. Mot. Ex. D (limited to between May 1, 2018 and September 17, 2020); Def. Mot. Ex. F (limited to between June 1, 2018 and July 7, 2020); Def. Mot. Ex. H (limited to between August 12, 2020 and October 22, 2020); Def. Mot. Ex. I limited to after August 1, 2018); Def. Mot. Ex. K (same).

And all of them are even more particular than what the Tenth Circuit has required, limited the items to be seized to not just evidence related to specific statutes, but also further limiting it to a specific scheme against the named victim company. Def. Mot. Ex. D at SW_00000065; Def. Mot. Ex. F at SW_0000005; Def. Mot. Ex. H at SW_00000102; Def. Mot. Ex. I at SW_00000126; Def. Mot. Ex. K at SW_00000151.

## VII. The Defendants' Request for Blanket Suppression is Not Authorized by Law and, in any Event, is Not Ripe for Adjudication

Even if the Court were sympathetic to portions of the defendants' motion, its requested relief is far too broad. The motion asks the Court to suppress *all* evidence

seized from the warrants. That would not be proper. Rather, the defendants must articulate exactly which categories of items in the warrant are insufficiently particular and the Court must determine the constitutionality, item by item as part of a "severance" analysis. *United States v. Sells*, 463 F.3d 1148, 1156 (10th Cir. 2006). 2 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment*, § 4.6(f) (Dec. 2021) ("[I]t would be harsh medicine indeed if a warrant issued on probable cause and particularly describing certain items were to be invalidated in toto merely because the affiant and magistrate erred in seeking and permitting a search for other items as well."). "Blanket" suppression is only appropriate in "exceptionally egregious circumstances" involving flagrant disregard of a search warrant's terms. *United States v. Webster*, 809 F.3d 1158, 1167 and 1170 (10th Cir. 2016) (noting that this standard merges with the *Herring/Davis* line of Supreme Court cases, referenced below).

The only specific items the defendants have identified as potentially warranting suppression are the items in Defense Exhibits T-Z and BB. But even there, those emails clearly fall into the warrant's authorization for evidence identifying the "person(s) who created or used the Apple ID."3 Def. Mot. D at SW_00000091. There is no valid reason to suppress that evidence, which would show *who* was involved in using any emails in that account to facilitate the specific

---

3 Exhibit AA seems to comprise emails to and from accounts that are not otherwise identified in the warrants and it is unclear on its face which electronic repository it came from.

crimes articulated during the specific time period identified.

More fundamentally, the reason the defendants' motion is so deficient with respect to what precisely *what* items of evidence should be suppressed as somehow outside the scope of the warrant is that prior counsel stymied efforts to reach a mutually agreed-upon protocol that would filter the accounts to protect potentially privileged information. The history of this process is set forth in the attached Filter Memorandum and its attachments, which have all been provided to defense counsel. Gov't Exhibit 1. The government's approach to executing the warrants has been exceedingly cautious and consistent with the Fourth Amendment's requirement to be "reasonable."

The government intends to work with the new defense lawyer to find a mutually agreeable process by which the agents can actually undertake the "step 2" review contemplated by the Federal Rules of Criminal Procedure and the search warrants themselves. In the meantime, because the government has taken the prudent step of working transparently with defense counsel before conducting that review, no one has even been able to identify the items in the account that would fall within the specific categories authorized by the warrant and thus no way to know which, if any, identifiable items are the product of any non-particularized or problematic search.

27

## VIII.  The Motion Should be Denied Because the Agents Relied on and Are Executing the Warrants in Good Faith

In *Davis v. United States*, the Supreme Court made it clear that that the sole purpose of the exclusionary rule is to deter Fourth Amendment violations.   564 U.S. 229, 245 (2011)(emphasis in original).   That is, the "extreme sanction of exclusion" should be applied only as a "last resort" to deter police conduct that is "deliberate, reckless or grossly negligent."   *United States v. Leon*, 468 U.S. 897, 916, 926 (1984); *Herring v. United States*, 555 U.S. 135, 144 (2009).   Furthermore, the exclusionary rule applies "only where it result[s] in appreciable deterrence" and, even if might result in deterrence, "the benefits of deterrence must outweigh the costs."   *Herring,* 555 U.S. at 141.

None of the supposed ails of any of the searches would justify the harsh medicine of the exclusionary rule.   The affidavits each set forth in detail the scheme to defraud the victim company through the use of bogus invoices to sham companies, payable into accounts controlled by the defendants and associated with the specific electronic accounts or phone numbers identified. There is no articulated basis for concluding that the agents were trying to evade legal requirements or otherwise do anything other than thoughtfully seek the truth.   Excluding the evidence of the search serves no deterrent purpose.   And even if it did, preventing the jury from seeing evidence of the truth — that the defendants used electronic accounts to take $5,000,000 that did not belong to them would have considerable social costs outweighing any benefit.   *See Davis*, 546 U.S. at 237 (recognizing that

28

the bottom-line effect of suppression is that courts "ignore reliable, trustworthy evidence bearing on guilt or innocence," "suppress the truth," and "set the criminal loose in the community without punishment.").

### IX. The Court Can Decide the Motion as a Matter of Law and Need Not Hold a Hearing

The defendants do not make any factual allegations or put any facts at issue. Rather, he has attached the affidavits, articulated legal principles at very high levels of generality, and then requested suppression as a matter of law.   The defendants have not satisfied their burden and the Court can deny the motion.   It should not have an evidentiary hearing with no articulated factual dispute, especially when it can decide for itself as a matter of law whether (1) *Carpenter* somehow implicitly undermines the precedents it otherwise explicitly says should remain in place, (2) whether *Warshak* has anything to do with non-content 2703(d) orders, (3) whether the defendants have established standing, (4) whether multiple magistrate judges had a substantial basis for making separate and independent findings of reasonableness and probable cause, (5) whether the warrants are sufficiently specific, and whether suppression is even a social cost worth imposing in this case.   *See United States v. Chavez-Marquez*, 66 F.3d 259, 261 (10th Cir. 1995) (decision on whether to have a hearing is up to trial court's discretion); *United States v. Vasquez-Garcia*, 2021 WL 486881 at *2 (D. Utah Jan. 29, 2021) (denying motion and request for hearing in part because the motion failed to present factual and legal issues with particularity); *United States v. Edgeworth*, 889 F.3d 350, 354

29

(7th Cir. 2018) (finding no abuse of discretion where judge declined to have a hearing on vague and conclusory claims without factual support or explanation).

## CONCLUSION

The defendants have no standing to challenge the search warrants and orders targeted by the defendants' motion and even if they do, there is no legally valid reason for the judiciary to "ignore reliable, trustworthy evidence" that might bear on who defrauded a business out of millions by suppressing it in circumstances where the government relied on good faith on existing law and the independent findings of several magistrate judges.   The Defendants' Motion should be denied.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:  _s/ Bryan David Fields_
Bryan David Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Bryan.Fields3@usdoj.gov

30

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation authorized by the Court's order of May 12, 2022, ECF No. 199.

*/s Bryan David Fields*
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government agrees with the defendants' statement of speedy trial impact in the Motion to Suppress docketed at ECF No. 200.

31

**<u>CERTIFICATE OF SERVICE</u>**

     I hereby certify that on May 19, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.


                                     *s/ Bryan David Fields*
                                     United States Attorney's Office

<div align="center">32</div>

# MEMORANDUM

**TO:**      All members of filter team

**FROM:**    Prosecution AUSA Bryan Fields
             Filter AUSA Jane Bobet

**CC:**      All members of prosecution team

**DATE:**    **March 2, 2022**

**RE:**      Filter Team Instructions for *United States v. Michael Aaron Tew, et al.*,
             (D. Colo. Case No. 20-cr-305-DDD

---

## I.    **BACKGROUND**

### A.          **Summary of Conduct Relating to Charges**

The following summary is not intended to be comprehensive but to provide

sufficient background to briefly explain the facts related to the need for a filter

team.  Detailed information is contained in an affidavit supporting a July 2020

criminal complaint charging Michael Tew with conspiracy to commit money

laundering.  **[Attachment 1]**.

This case concerns the prosecution of three individuals, Michael Tew,

Kimberley Tew (nee Vertanen), and Jonathan K. Yioulos for, *inter alia*, a scheme to

defraud National Air Cargo (NAC), a company that does business, in part, in New

York and Florida.  The case number is 20-cr-305-DDD and is currently pending in

the United States District Court for the District of Colorado.  In general terms, the

1

three defendants are alleged to have conspired to execute a scheme to defraud by wire. This scheme was accomplished through the submission and payment of fraudulent invoices to NAC for services not rendered to NAC. Mr. Tew is the former Chief Financial Officer of NAC, Ms. Tew previously provided some contract services to NAC, and until July 2020, Mr. Yioulos served variously as NAC's Director of Finance and Controller. Michael Tew and Kimberley Tew are married.

### B. Post-Arrest Acquisition of Evidence and Representations by Prior Defense Counsel

For ease of reference, additional relevant facts related to the history of the defendants' representation by legal counsel and the acquisition of evidence are outlined in bullet points below.

- **July 8, 2020**. Mr. and Ms. Tew are arrested on a Criminal Complaint.

- **July 9, 2020**. Mr. Tew's first lawyer, Michael Sheehan, reaches out to schedule an interview pursuant to a proffer agreement.

- **July 15, 2020**. Mr. Tew voluntarily submits to an interview in the presence of his lawyer, Michael Sheehan, pursuant to the terms of a proffer agreement.

- **July 24, 2020**. Eric M. Creizman and Melissa Madrigal contact the government to assert that they are now representing Mr. Tew.

- **July 28, 2020**. Mr. Tew submits to a second proffer interview in the presence of his new attorneys. During that interview, he consents to a review of text communications between him and Ms. Tew relating to the crimes under investigation.

- **July 29, 2020.** Mr. Tew consents to an extraction of his phone.

2

- **August 3, 2020**.  Eric Creizman alerts the government that he intends to withdraw his representation the next day.

- **August 20, 2020.**  Edward Harris, Mr. Tew's third attorney, enters an appearance.

- **September 22, 2020**.  Agents apply for and receive a warrant to obtain information from Apple associated with the Apple ID kley@me.com, belonging to Ms. Tew.

- **October 2, 2020**.  Edward Harris communicates his client's consent to review (1) text messages between Mr. Tew and alleged co-conspirator Jonathan Yioulos, (2) text messages between Mr. Tew and another suspected co-conspirator, Larry Ward, and (3) all pictures and recordings on the phone up to, but not including, the day of arrest (July 8, 2020). Harris also communicates his agreement that he will review the materials dated after the arrest and identify the items that are not privileged. **[Attachment 2]** The resulting filtered phone extraction is **Item 5**.

- **October 21, 2020**.  Edward Harris moves to withdraw as Mr. Tew's attorney.

- **October 22, 2020**.  Thomas Richard Ward enters his appearance as Mr. Tew's attorney.

- **October 23, 2020**.  Ms. Tew submits to an interview in the presence of her attorney, Jamie Hubbard, pursuant to the terms of a proffer agreement.

- **November 24, 2020**.  AUSA Hetal Doshi requests that the FBI Cybercrime lab process the return from the kley@me.com search warrant. The return includes both encrypted and unencrypted data.

- **December 2, 2020**.  AUSA Hetal Doshi requests that the cybercrime lab filter out undated communications and communications that were undated or dated on or after July 8, 2020.

- **December 14, 2020**.  FBI Digital Operations Specialist Nicholas Hanggi reports that he has completed a filter of the unencrypted kley@me.com return.  This filtered return, which includes only communications dated July 7, 2020 or earlier, is provided to the prosecution team.  **[Item 1]**

3

- **December 23, 2020**.  Agents apply for and receive a warrant to obtain
  information from google associated with three accounts:
  chrisrncn@gmail.com; meyersconsultinggroupinc@gmail.com; and
  political.media.wdc@gmail.com **[Items 2-4, respectively**)

- **February 3, 2021**.  The Grand Jury returns the indictment in this case.

- **February 25, 2021**. Tor Ekeland enters his appearance for both Mr. and
  Ms. Tew.

- **March 21, 2021**.  FBI Senior Digital Investigative Analyst Kristen Scott
  reports that she has completed a filter of the encrypted portion of the
  kley@me.com return.  This filtered return, which includes only
  communications dated July 7, 2020 or earlier, is provided to the
  prosecution team.  **[Item 1]**

- **December 27, 2021**. Tor Ekeland moves to withdraw as counsel for Mr.
  and Ms. Tew.

- **February 25, 2022**.  Peter Bornstein enters his appearance for both Mr.
  and Ms. Tew.

## C.    Summary of Electronic Repositories of Evidence

For additional ease of reference, the chart below identifies the items obtained

in the investigation, referenced above, that will be the subject of this filter review:

| Item | Description | Case Number |
|------|-------------|-------------|
| 1 | Unencrypted and Encrypted Portions of Return for Search Warrant executed on Apple for information associated with Apple ID kley@me.com filtered to exclude undated items and items dated on or after July 8, 2020 ("Item 1") | 20-sw-01115 **[Attachment 3]** |
| 2 | Return of Search Warrant executed on Google for information associated with the account chrisrncn@gmail.com ("Item 2") | 20-sw-01522 **[Attachment 4]** |
| 3 | Return of Search Warrant executed on Google for information associated with the account meyersconsultinggroupinc@gmail.com ("Item 3") | 20-sw-01532 **[Attachment 5]** |

4

| Item | Description | Case Number |
|------|-------------|-------------|
| 4 | Return of Search Warrant executed on Google for information associated with the account political.media.wdc@gmail.com ("Item 4") | 20-sw-01533 **[Attachment 6]** |
| 5 | July 29, 2020 consent extraction of two iPhones for phone numbers ending in 1312 and 7473 with serial numbers F17CN3YWPMFJ and C39Y25QBKPFR used by Michael Tew[1] and filtered pursuant to prior agreements with defense counsel ("Item 5") | N/A |

### D.   Correspondence with Defense Counsel from Tor Ekeland Law PLLC

Michael Tew and Kimberley Tew were jointly represented by the same counsel, Tor Ekeland, Michael Hassard, and Xuan Zhou between February 25, 2021 and February 25, 2022.

The prosecution team at the time had been in contact with counsel for Mr. Tew and Mrs. Tew about the precautions taken to date regarding filtering out materials subject to the attorney-client and work product privilege for Item 1.  That background is laid out in multiple letters listed below and attached here for reference:

---

[1] Defendant Michael Tew's prior attorneys previously provided search terms — the names of attorneys previously representing Tew — as part of the consent search process and those terms have already been applied.  Nevertheless, out of an abundance of caution and to maintain consistency in the filter process, this consent phone extraction is also being submitted for additional filter review consistent with the terms of this memorandum.   This indiscriminate phone extraction is broader than the much more targeted voluntary disclosure of specific text messages made by Michael Tew on July 28, 2020 and is submitted for filter review on that basis, in addition to items 1-4.

5

1. July 7, 2021 Letter from Government to Counsel for Mr. Tew and Mrs. Tew regarding further filtering of search warrant return for kley@me.com [**Attachment 7**];

2. July 9, 2021 Response from Counsel for Mr. Tew and Mrs. Tew to Government [**Attachment 8**];

3. July 23, 2021 Letter from Counsel for Mr. Tew and Mrs. Tew to Government regarding the same ([**Attachment 9**];

4. July 29, 2021 Response from Government to Counsel for Mr. and Mrs. Tew [**Attachment 10**];

5. September 10, 2021 Response from Counsel for Mr. and Mrs. Tew to Government [**Attachment 11**];

6. September 16, 2021 Letter from Counsel for Mr. and Mrs. Tew to Government [**Attachment 12**];

7. September 17, 2021 Email Response from Government to Counsel for Mr. and Mrs. Tew [**Attachment 13**].

### E.  **Prosecution Team Members**

The AUSAs on the prosecution team have included Hetal Doshi, Matthew Kirsch, Andrea Surratt and Bryan Fields.  None of these attorneys have been exposed to information identified by defense counsel as potentially protected by an attorney-client privilege.  The FBI case agent is Special Agent Sarah Anderson. There is also no reason to believe she has been exposed to information identified by defense counsel as potentially subject to an attorney-client privilege.

The IRS-CI case agent is Special Agent Lisa Palmer.  SA Palmer took the lead in the review of Item 1.  After Item 1 was released to the prosecution team in

6

December following its initial filtering to exclude undated items and items dated

July 8, 2020 or later, she conducted a very focused review to determine whether

specific communications between the defendants or between the defendants and

suspected co-conspirators could be seized pursuant to the warrant. Those identified

communications did not involve attorneys and were clearly not protected by an

attorney client privilege. As outlined in the letter dated July 7, 2021, Special Agent

Palmer resumed her review of Item 1 in July and, on July 5, identified

communications that appeared to include one or more attorneys. She immediately

notified the assigned AUSAs and stopped her review. **[Attachment 7]**. There is no

reason to believe that she actually reviewed any content of such communications.

However, out of an abundance of caution, she is not currently an active member of

the prosecution team, pending a review by the assigned Filter Attorney.

## II.     SCOPE OF REQUEST FOR FILTER REVIEW

### A. Rationale for Filter Review of Items 1-5

Current counsel for Mr. and Ms. Tew has asserted that Items 1-4 contain

materials that may be subject to the attorney-client privilege. However, current

counsel has refused to provide a list of prior defense attorneys, other search terms, a

specific log of privilege claims, or to clearly identify the scope of any attorney-client

relationship. Based on the correspondence to date and SA Palmer's notification

that even after the initial filtering, Item 1 still contains possibly privileged

7

material, the prosecution team advises that Item 1 is an appropriate item for additional filter review, as outlined in this memorandum.

Defense counsel's September 16, 2021 letter asked the government to halt its review of "all" discovery returned under search warrants in this matter.  The letter asserts that "all the discovery seized under the search warrants is irreparably tainted."  **[Attachment 12]**.  Without conceding any requirement that it do so, the government voluntarily agreed to stop review until a meeting with defense counsel on October 12, 2021. The previous AUSAs assigned to this matter — Hetal Doshi and Andrea Surratt —met with counsel for Mr. Tew and Ms. Tew on October 12, 2021.  There was no resolution to date on the issue of further filtering.

There is no reason to believe that items 2-4 contain privileged material. Those items were the subject of 2703(d) orders providing non-substantive information about the correspondents in those accounts.  No attorneys were identified.  Current counsel for Mr. and Ms. Tew has not provided a list of attorneys or otherwise specifically elaborated on the claim that these items contain privileged materials.  Furthermore, without review, it is unknown whether either defendant actually used those accounts or otherwise has standing to challenge the warrants justifying their seizure or manner of review.

8

Item number 5 has already been filtered pursuant to a negotiated agreement with Michael Tew's prior lawyer, which involved filtering via search terms and permission to view specific categories of items. **[Attachment 2]**.

In sum, only item 1 is known to contain potentially protected materials. While items 2-4 are not known to have any potentially protected materials, the prosecution team acknowledges the defendant's assertion that they do and (1) assumes, without conceding, that one of the defendants has standing to challenge any search related to those accounts and (2) assumes, without conceding, that the defendants are the holders of any privilege protecting information in those account. Item 5 has already been filtered pursuant to conversations with prior defense counsel. While Item 1 is thus the only item clearly warranting filter review, the prosecution team nevertheless also submits items 2-5 for filter review out of an abundance of caution.

## B.    Items Specifically Excluded From Filter Review

Defense counsel's letter of September 16, 2021, **Attachment 12**, requests that the government halt a review of "all" materials obtained pursuant to search warrants on the basis of objections to filter reviews. But this request is overbroad. Without conceding that it must, the government has nevertheless voluntarily stopped its review of the return from search warrant executed on AT&T for telephone numbers associated with Michael Tew, docketed at 20-sw-0733, because

9

the initial review suggested that AT&T did not provide the correct records.[2] That
item is, therefore, excluded from this filter review. A search warrant executed at the
defendants' home on July 31, 2020 and docketed at 20-sw-00896 yielded only
physical evidence — two bank bags — and therefore requires no filter review.

Defense counsel's letter of September 16, 2021 does not reference other
repositories of evidence obtained through other methods.  Nevertheless, out of an
abundance of caution, the prosecution evaluated whether to submit those
repositories for further review.  Items in this category include photographs of
specific text messages on Michael Tew's telephone taken in the presence of his
counsel during a proffer session on July 28, 2020, and electronic devices obtained
from co-defendant Jonathan Yioulos.  The prosecution team has concluded that
neither of these items should be submitted to filter review.  Each of them comprises
information obtained via clear consent obtained with approval from an independent
defense attorney.  They could not possibly contain privileged material.

III.  **PURPOSE OF FILTER REVIEW OF ITEMS 1-5**

---

[2] As documented by FBI Special Agent Sarah Anderson in an FD-302 entered into
the file on August 17, 2020 (SW_0039675), the FBI received a return from AT&T on July
27, 2020. However, when SA Anderson began reviewing the provided materials she became
concerned that the records provided related to other telephone numbers or that they were
otherwise not responsive to the warrant. She stopped her review and contacted AT&T.  An
FD-302 dated September 11, 2020, (INV_004958), notes that AT&T has not provided any
responsive content.

The purpose of these instructions is to protect any applicable attorney-client and work-product privileges held by defendants Michael Tew and Kimberley Tew. These instructions are further designed to prevent the disclosure of privileged and/or otherwise constitutionally protected attorney-client information to case agents, investigators, and prosecutors assigned to the investigation, and to ensure that the government effectively documents its efforts to do so.

## A. Glossary of Terms Used In These Instructions

As used in these instructions, the terms below are defined as follows:

1. **Prosecution team** - All AUSAs, SAUSAs, Agents/Officers and Staff assigned to work on any aspect of the case other than the filter team.

2. **Filter team** - a team of AUSA(s) and/or investigator(s), who are separated from the prosecution team in order to protect the defendant's constitutional and statutory rights by ensuring that the prosecution team is not exposed to privileged information.

3. **Privileged information** – information protected by the attorney-client privilege and/or the work product rule.

4. **Presumptively protected materials** – any communications between (1) a lawyer or staff member or agent of a lawyer and (2) a defendant/target/subject or another lawyer or staff member or agent of a lawyer, or materials that otherwise appear to contain the work product of a lawyer.

5. **Potentially protected materials** – any materials identified in a Filter Agent's initial review as possibly containing communications as defined in "presumptively protected materials" or materials that appear to have been generated by a lawyer or otherwise contain the work product of a lawyer.

11

6.  **Non-protected materials** – any materials that do not involve communications with a lawyer and do not appear to have been generated by a lawyer.

12

**B.     General Overview of Safeguards to Protect Potentially Protected Materials**

To prevent such disclosure and the potential taint of investigators and prosecutors assigned to the case, the Federal Bureau of Investigation and/or IRS-Criminal Investigation and the United States Department of Justice have designated separate agents and Assistant United States Attorney(s) (collectively, the "filter team") to review items 1-5 to determine whether they contain any potentially protected materials.  The filter team serves a privilege screening function only; they will not review information for discoverability under criminal discovery rules and case law.  Filter team members will not be involved with the primary investigation, in any way, and may not have any further role in the investigation or prosecution of this case, unless some further privilege issue arises requiring additional review.  Members of the filter team are prohibited from discussing with any member of the prosecution team, including investigators and prosecutors assigned to the case, or any other person not assigned to the filter team, any protected information they learn as a result of their assignment to this filter team.

Filter team members must be familiar with the indictment in this matter, the warrants, the applications for the warrants, and all affidavits or attachments thereto.  All of these documents have been separately provided to you.

13

**[Attachments 3-6]**.  Members of the filter team and the prosecution team must also review and understand these instructions and the list of the attorneys and/or law firms that are known or believed to represent or have represented Mr. Tew or Ms. Tew.  If you have any questions about these instructions at any time during this process, you should ask the filter AUSA[3] before you proceed further.

This memo and the instructions below relate to the process and procedure to identify and remove protected materials contained in the items seized.  This memo and the instructions below are in addition to the procedures outlined in the search warrants.  The filter team should be familiar with and, where applicable, follow both the instructions contained in this memo and the procedure in the search warrant.

## IV.    <u>INSTRUCTIONS TO THE FILTER TEAM</u>

### A. **Filter Team Members and Roles**

1.    The FBI and IRS have, respectively, designated Special Agents Kristen Varel and Marc Lane as Filter Agents who will analyze the items and information seized in the execution of the search warrants related to this case, and who will then remove all presumptively protected information and identify potentially protected and non-protected information.

---

[3] Although this policy often uses the singular terms "AUSA" and "investigator" or "Special Agent" in referring to members of filter teams, there may be more than one AUSA and agent on any filter team.

14

2.      The United States Department of Justice has designated Assistant
United States Attorney Jane Bobet as the Filter AUSA who will review materials
identified by the Filter Agent as containing potentially protected or non-protected
materials.  The Filter AUSA will further ensure that all presumptively protected
items are removed, not reviewed by the filter team, except as necessary to make the
determination the item is presumptively protected, and are returned to the
privilege-holder or counsel for the privilege-holder as soon as reasonably practical.

3.      Support staff designated by the respective agencies may also be
assigned to assist the Filter Agents and Filter AUSA in administrative tasks as
necessary to accomplish their duties.  Currently, Legal Administrative Specialist
Joshua Graber is maintaining Items 1-5 in a secure database accessible only to Mr.
Graber, the Filter AUSA, and members of the U.S. Attorney's Office IT/litigation
support staff.

4.      Filter team members may not reveal or discuss the contents of any
document, file or item determined to contain presumptively protected or potentially
protected material to any other person except the Filter Team Coordinator or
employees of the Professional Responsibility Advisory Office at DOJ, or counsel for
the appropriate defendant, unless otherwise ordered by the court.  Attached to these
instructions is a list of investigative agents and prosecutors to prevent any
inadvertent disclosure.

15

**B.    Review by the Filter Team**

5.      Investigative agents have executed the search warrants, or obtained

information via consent, and have taken possession of the digital information

outlined in the warrants or subject to the terms of the consent.  Before the

investigative agents continue their review[4] of the items identified in the chart

above, they will be reviewed by the Filter Agents, who will remove all

presumptively protected information and identify potentially protected and non-

protected information.

6.      In all instances, in making the interim determination as to whether a

document or item contains protected material, the Filter Agent and Filter AUSA

should err on the side of caution by treating any questionable item as potentially

protected material and complying with these instructions.

**C.    Filter Agent Review Using Search Terms**

7.      The Filter Agents will utilize search terms to conduct an initial review

of the information in items 1-5 above to determine whether they contain

---

[4] As noted in the July 7, 2021 Letter from Government**, Attachment 7**, the
government has already prophylactically filtered out materials in Item 1 that were either
undated or dated on or after July 8, 2020 (the date of Mr. and Ms. Tews's arrest) and began
a review of the remaining information. However, that review was immediately stopped
when there was a reasonable possibility that the item might still contain potentially
privileged information.

presumptively protected material, potentially protected material, or non-protected material.

a.     After a forensic image or copy of any of the items is created and placed into a reviewing platform, in order to identify protected communications, the Filter Agent may then access the items and conduct a keyword search of any electronic media, specifically looking for information associated with attorneys or legal staff known to represent Mr. Tew or Ms. Tew.

b. Here, because Items 1 and 5 — the iCloud account associated with kley@me.com and the consent extraction of Mr. Tew's phone — have already been filtered, the process discussed below will be a secondary process consisting of applying additional filters to the already filtered items. Access to the materials should be restricted to the Filter Agents, Filter AUSA, and assigned Filter AUSA support staff.  The items should be inaccessible to the investigative team until reviewed by the Filter Agent and marked as non-protected, as discussed below.  Any more specific protocols used in any particular case must by recorded by the Filter AUSA.

8.     As the Filter Agents review the materials on the media using keyword searches, the Filter Agents will sort the material as follows: presumptively protected, potentially protected or clearly non-protected.

<div align="center">17</div>

a.      If an item is presumptively protected the identifying Filter Agent should not review the item, except as necessary to make the initial determination, and should identify the item as presumptively protected. Presumptively protected materials must be electronically flagged so that they are hidden from and inaccessible to investigative agents and members of the prosecution team. The identifying Filter Agent will notify the Filter AUSA that the above procedures have been followed and arrange for the Filter AUSA's later review consistent with these instructions, specifically and solely as necessary to confirm that the materials are presumptively protected.

b.      If an item appears to contain protected material but the identifying Filter Agent is not certain, the Filter Agent should electronically flag it as potentially protected and notify the Filter AUSA in the manner described in paragraph 9(c) below.

c.      If an item does not contain any protected material, the identifying Filter Agent should identify the item as non-protected.  Those items must also be forwarded to the Filter AUSA for review and separately designated as containing non-protected material.

d.      The Filter Agent must maintain a log of all potentially protected material identified, indicating the material by type, date, sender and

18

recipient (if applicable), and the location of and digital device on which the item was located, (i.e. cellular phone, email account, etc.).

**D.      Review by the Filter AUSA**

9.      The Filter AUSA will receive all documents, tangible items, and digital or electronic data forwarded by the identifying Filter Agent.

a.      If information has been identified as presumptively protected by the Filter Agent, the Filter AUSA will not review those items, except as necessary to confirm they are presumptively protected.  After taking any necessary steps to confirm that such items are presumptively protected, the Filter AUSA, working with filter support staff, shall maintain any information found to be protected in a digital medium that is not accessible to anyone outside the Filter Team and return them to the privilege holder or counsel for the privilege holder as soon as reasonably practical.

b.      If any contents of a digital device have been identified as presumptively protected by the identifying Filter Agent, the Filter AUSA will not review those items, except as necessary to confirm that they are presumptively protected and to arrange with reasonable promptness to make the material available for inspection by the privilege holder or counsel for the privilege holder.

19

c.      If documents, items or information have been identified as potentially protected by the filter agent, the Filter AUSA will review that information further to determine if the material is protected.

d.      If the Filter AUSA determines that a document or item designated as potentially protected is in fact protected and not subject to disclosure, the Filter AUSA will place the document or item in a medium not accessible to anyone outside the Filter Team and return it to the privilege holder or privilege holder's counsel as soon as reasonably practical.

e.      If the Filter AUSA determines that the contents of any digital device designated as potentially protected is in fact protected and not subject to disclosure, he/she should arrange for review of the material by the privilege holder or by counsel for the privilege holder with reasonable promptness in the manner and in the time frame described in paragraph 9 (a) above.

f.      If the Filter AUSA determines that a tangible document or item from a digital device designated as potentially protected is not protected, the Filter AUSA may designate the document or item as not protected. If the Filter AUSA is uncertain the item is protected, the Filter AUSA will confer with counsel for the privilege holder and if no agreement can be reached submit the material under seal to the court for a final determination as to whether the material is protected.

<div align="center">20</div>

g.      If the Filter AUSA believes that potentially protected material is
not protected due to waiver or other exception to the privilege, the Filter AUSA will
confer with counsel for the privilege holder and if no agreement can be reached,
submit the material under seal to the court for a final determination.  The Filter
AUSA will not forward any potentially protected material to investigative agents or
prosecutors without either agreement of counsel for the privilege holder or the
court's prior approval.

h.      If items or information have been identified as not protected by
the identifying Filter Agent, the Filter AUSA will review those items using search
terms and other reasonable due diligence to confirm this designation.

i.      The Filter AUSA will maintain a log of all potentially protected
documents and items received from the Filter Agent.  The log will identify the
material received by type, date, sender and recipient (if applicable), and subject
matter.  The Filter AUSA will furnish to the privilege holder a list of potentially
protected material submitted to the court for review with reasonable promptness in
the manner and in the timeframe described in paragraph 10(a) above.

j.      The Filter AUSA may forward or direct the Filter Agents to
forward items or documents to investigating agents and prosecutors only after one
of the following conditions is met, consistent with these instructions:  (a) they have
been designated by the Filter AUSA in writing as non-protected by the filter review

21

process, (b) after conferral with and the agreement of counsel for the privilege-
holder, or (c) pursuant to a court order.

10.    After the Filter Team's review is complete, the Filter Agent will make
non-protected items available to investigative agents and prosecutors. A copy of the
electronic media preserving the electronic flags and steps taken to render the
protected material hidden from and inaccessible to investigative agents and the
prosecution team will be preserved consistent with forensic standards. The Filter
Agent will prepare a report documenting steps taken during the review process and
provide it to the Filter AUSA.  This report will also be provided to the investigative
agents and prosecutors assigned to this case.

11.    If, despite the procedures outlined in these instructions, an
investigative agent or prosecutor finds in the items provided by the Filter Agents or
Filter AUSA any tangible, documentary, or electronic data that appears to contain
protected or potentially protected information, they will not examine it further and
will immediately notify the Filter Agents, one of whom will take custody of the
material in question, notify the Filter AUSA.  The Filter AUSA will then notify the
privilege holder of such an occurrence.

<div align="center">22</div>

### E.    Rule of Caution Regarding Potential Privilege Claims

12.    In reviewing items pursuant to these instructions, the Filter Agents and Filter AUSA should err on the side of caution and treat any questionable items as potentially protected.  In addition:

♦    Unless otherwise advised by the Filter AUSA, the Filter Agents should treat as presumptively protected any letter, text, e-mail, memorandum, or other document containing a communication between any subject/defendant or one of his/her attorneys, staff members or agents, on the one hand; and one of his/her attorneys, staff members or agents, on the other hand.

♦    Filter team members should know and refer to any lists of attorneys and/or law firms known or believed to have represented the identified defendants, attached to these instructions or later provided by an attorney for a defendant.

♦    Filter team members should treat as presumptively protected all materials prepared by attorneys, their staff or an agent of the attorney during the course of or in preparation for litigation in either a criminal investigation into the defendants or any civil litigation in which Mr. Tew or Mrs. Tew was involved.

### F.    The Attorney-Client Privilege

13.    Filter team members should also be familiar with the legal elements of the attorney-client privilege and the attorney work product doctrine.  While these instructions take an expansive view of what constitutes protected material, particular care should be given to material that falls within the attorney-client privilege and work product doctrines, set forth below.  If the Filter Agents have any

23

legal questions about may or may not qualify as presumptively or potentially protected, they should consult with the Filter AUSA.

14. The attorney-client privilege applies to "confidential communications by a client to an attorney made in order to obtain legal assistance from the attorney in his capacity as a legal advisor." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *In re Grand Jury Subpoena Duces Tecum Issued on June 9, 1982,* 697 F.2d 277, 278 (10th Cir.1983) (internal quotation marks and citation omitted)). "A party claiming the attorney-client privilege must prove its applicability, which is narrowly construed." *United States v. Merida*, 828 F.3d 1203, 1209 (10th Cir. 2016) (quoting *Foster v. Hill (In re Foster*), 188 F.3d 1259, 1264 (10th Cir. 1999)).

15. In the case of corporate counsel, "[a]ny privilege resulting from communications between corporate officers and corporate attorneys concerning matters within the scope of the corporation's affairs and the officer's duties *belongs to the corporation and not to the officer*." *Id.* at 1210, (quoting *Intervenor v. United States (In re Grand Jury Subpoenas*), 144 F.3d 653, 658 (10th Cir. 1998) (emphasis added)). If corporate officers want to extend the attorney-client privilege to communications they had with corporate counsel *in their individual capacities*, they must satisfy the following five elements:

24

First, they must show they approached counsel for the purpose of seeking legal advice. Second, they must demonstrate that when they approached counsel they made it clear that they were seeking legal advice in their individual rather than in their representative capacities. Third, they must demonstrate that the counsel saw fit to communicate with them in their individual capacities, knowing that a possible conflict could arise. Fourth, they must prove that their conversations with counsel were confidential. And, fifth, they must show that the substance of their conversations with counsel did not concern matters within the company or the general affairs of the company.

*Id.* (citing *Intervenor* at 659 (quoting *In re Bevill, Bresler & Schulman Asset Management Corp.*, 805 F.2d 120, 123 (3d Cir. 1986)).

16.     "[T]he mere fact that an attorney was involved in a communication does not automatically render the communication subject to the attorney-client privilege." *In re Grand Jury Proceedings*, 616 F.3d 1172, 1182 (10th Cir. 2010) (quoting *Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550–51 (10th Cir. 1995)). Instead, the attorney-client privilege is "narrowly construed" such that a privileged "communication between a lawyer and client must relate to legal advice or strategy *sought by the client*" where "the 'client' is the actual recipient of the services." *Merida* at 1209 (quoting *United States v. Johnston*, 146 F.3d 785, 794 (10th Cir.1998) (emphasis added)); *see also In re Grand Jury Proceedings* at 1182 (quoting *Johnston*)).

17.     Attorney-client privilege will be "lost if the client discloses the substance of an otherwise privileged communication to a third party." *United*

25

*States v. Ary*, 518 F.3d 775, 782 (10th Cir. 2008) (citing *In re Qwest Commc'n Int'l.*

*Inc.*, 450 F.3d 1179, 1185 (10th Cir. 2006) (quotation omitted)).

### G. The Attorney Work Product Doctrine

18.     The work product doctrine, codified in Federal Rule of Civil Procedure

26(b)(3), protects from discovery "documents and tangible things . . . prepared by a

party or his representative in anticipation of litigation." *In re Qwest* at 1186

(quoting Fed. R. Civ. P. 26(b)(3)). The work product doctrine is narrower than the

attorney-client privilege, and is more akin to a limited or qualified privilege.

Documents protected as work product may still be discoverable, but only upon a

showing of substantial need for the materials and undue hardship in obtaining their

substantial equivalent by other means.  *Id.*

19.     The work product doctrine "extends to the production of material

assembled by an attorney in preparation for impending litigation." *Ary*, 518 F.3d at

783 (citing *Thompson v. United States (In re September 1975 Grand Jury Term,* 532

F.2d 734, 738 (10th Cir.1976) (quotation omitted)).  "The protection also applies to

materials prepared by an attorney's agent, if that agent acts at the attorney's

direction in creating the documents." *Id.* at 783 (citing *United States v. Nobles*, 422

U.S. 225, 238-39 (1975)).

20.     The work product doctrine does not apply to documents that appear to

have been prepared in the regular course of business, and the party claiming this

26

protection bears the burden of demonstrating that each document was in fact prepared in anticipation of litigation. *In re Grand Jury Proceedings*, 156 F.3d 1038, 1042 (10th Cir. 1998). In sum, "[t]he party asserting work product privilege has the burden of showing the applicability of the doctrine." *Id.* (citing *Barclaysamerican Corp. v. Kane,* 746 F.2d 653, 656 (10th Cir. 1984)).

21. The mental impressions or opinions of any of the defendants' lawyers are particularly important in reviewing potentially protected work product. In fact, even where work product may otherwise be discoverable, Rule 26(b)(3) requires the court to "protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Thus, any document or file which contains the thoughts or opinions of an attorney about actual or anticipated criminal or civil litigation must be protected from disclosure to investigating agents and prosecutors.

## H. Consultation With Investigative Agents or Prosecutors

During the review process, the Filter Agent or Filter AUSA may consult with the investigative agents or prosecutors concerning the facts of the investigation, the legal elements of the attorney-client privilege or work product doctrine, the scope of the warrants, the appropriateness of the seizure of any document, file, or item, or any other factual or legal question. However, no member of the filter team should disclose the substance of any presumptively or potentially protected item to any

27

investigative agent or prosecutor unless the item is finally determined not to be protected, consistent with these instructions, and may otherwise be disclosed to the investigative agents or prosecutor.

28

# APPENDIX I

## LIST OF ATTORNEYS AND LAW FIRMS KNOWN OR SUSPECTED TO BE ASSOCIATED WITH SUBJECTS/DEFENDANTS/PRIVILEGE HOLDERS

1. **Attorneys for Defendant #1 Michael Tew**

   **A. Attorneys previously identified by prior counsel for Mr. Tew**

   This list of attorneys and contact information were provided by Eric Creizman and Melissa Madrigal, prior counsel for Mr. Tew.  We received no additional supplementation from subsequent counsel Ed Harris and later, Tom Ward and Tor Ekeland:

   NAME:      Eric Creizman
   FIRM:      Armstrong Teasdale LLP
   PHONE:     917.494.5881
   EMAILS:    ecreizman@atllp.com
              ecreiz@icloud.com

   NAME:      Melissa Madrigal
   FIRM:      Armstrong Teasdale LLP
   PHONE:     786.543.1877
   EMAIL:     mmadrigal@atllp.com

   NAME:      Michael Sheehan
   FIRM:      Sheehan Law Denver
   PHONE:     719.660.7366
   EMAIL:     michael.sheehan.esq@gmail.com

   NAME:      Nichole Galvin
   FIRM:      Galvin Law
   PHONE:     410.336.0166
   EMAIL:     ngalvin@galvinlawllc.com

   NAME:      Terrell Smith
   FIRM:      Michael Best & Friedrich LLP
   PHONE:     801.231.2716
   EMAIL:     twsmith@michaelbest.com

   NAME:      David Kaplan
   FIRM:      Haddon, Morgan, and Foreman P.C.
   PHONE:     303.489.9686
   EMAIL:     dkaplan@hmflaw.com

i

NAME:     Kathryn Stimson
FIRM:      Stimson Stancil LaBranche Hubbard, LLC
PHONE:   Unknown
EMAIL:    stimson@sslhlaw.com

In connection with the consent privilege segregation process negotiated by the prosecution team and confirmed with prior counsel for Mr. Tew, the prosecution team provided the following additional parameters to the relevant forensic analysts who are assisting with the application of the filters: (1) inclusion of common nicknames of "Mike Sheehan for Michael Sheehan, "Dave Kaplan" for David Kaplan, and "Kate Stimson" for Kathryn Stimson; (2) separate searches for each of the law firms identified, each of the phone numbers listed above, and each of the email addresses listed above; (3) removing the LLP/P.C./LLC in searches for firm names; (4) no additional searches.

## B. Additional Attorneys Identified During Proceedings

Since the time this list was developed with Mr. Creizman and Ms. Madrigal, prior lawyers for Mr. Tew, Mr. Tew has been represented by the following additional attorneys:

NAME:     Edward Harris
FIRM:      Office of the Federal Public Defender
ADDRESS: 633 17th Street, Suite 1000
            Denver, CO 80202
PHONES:  303.294.7002
            303.748.2484
EMAIL:    Edward_Harris@fd.org

NAME:     Thomas Ward
FIRM:      McDermott Stuart & Ward LLP
ADDRESS: 140 East 19th Avenue
            Suite 300
            Denver, CO 80203
PHONES:  303-832-8888
            303-863-8888 (fax)
            720-280-7506 (mobile
EMAIL:    tward@mswdenver.com

As noted in this memorandum, the defendant Michael Tew was represented by Tor Ekeland, Michael Hassard, and Xuan Zhou between February 25, 2021 and February 25, 2022. There is no evidence of any attorney-client relationship in the

ii

period before the items that are being reviewed were seized.  He is currently represented by attorney Peter Bornstein.

## 2.      Attorneys for Defendant #2 Kimberley Tew

The prosecution team is not aware of what attorney-client relationships, if any, Mrs. Tew had *prior to* July 8, 2020.[5]  Based on the correspondence described above in the Introduction, we add the following potential attorney-client relationships out of an abundance of caution:

| | |
|---|---|
| NAME: | Eric Creizman |
| FIRM: | Armstrong Teasdale LLP |
| PHONE: | 917.494.5881 |
| EMAILS: | ecreizman@atllp.com |
| | ecreiz@icloud.com |

| | |
|---|---|
| NAME: | Melissa Madrigal |
| FIRM: | Armstrong Teasdale LLP |
| PHONE: | 786.543.1877 |
| EMAIL: | mmadrigal@atllp.com |

| | |
|---|---|
| NAME: | Lauren Tew |

Lauren Tew is defendant Kimberley Tew's sister.  Based on a Google search, it appears she is a lawyer.  The prosecution team does not have enough information to determine whether communications with Lauren Tew were personal or made for the purpose of obtaining legal advice as part of an attorney-client relationship.  However, out of an abundance of caution, the filter team should identity further contact information for Lauren Tew and use keyword searches to mark communications with her as presumptively or potentially protected.

| | |
|---|---|
| NAME: | Unknown ("Lawyer 3") |
| PHONE: | (949) 204-7468 |

As explained in the July 7, 2021 Letter from Government to Counsel for Mr. Tew and Mrs. Tew regarding further filtering of search warrant return for kley@me.com, one of the agents conducting the prior review noted the existence of a

---

[5] As noted in the correspondence referenced in the Introduction, the prosecution team requested that forensic analysts identify and remove from the search warrant return for kley@me.com items that were (1) dated July 8, 2020 or after; or (2) undated.  Any additional filtering that the filter team deems appropriate consistent with this memorandum for the search warrant return for kley@me.com will be performed against the already filtered materials.

iii

contact named "Lawyer 3" but did not review anything of substance. The Filter team should further identify Lawyer 3 and use keyword searches to mark communications with this lawyer as presumptively or potentially protected.

| | |
|---|---|
| NAME: | Jamie Hubbard |
| FIRM: | Stimson Stancil LaBranche Hubbard |
| ADDRESS: | 1652 N Downing Street |
| | Denver, CO, 80218 |
| PHONES: | 720.689.8909 |
| | 720.985.5184 |
| EMAIL: | hubbard@sslhlaw.com |

The prior AUSAs on the matter reported that they became aware that Mrs. Tew retained Jamie Hubbard, a lawyer in Denver, more than a month after Mr. Tew's arrest. In an abundance of caution given that all materials dated on or after July 8, 2020 or are undated have summarily been filtered out of the search warrant return for kley@me.com, Ms. Hubbard is nevertheless included here.

As noted in this memorandum, the defendant Kimberley Tew was represented by Tor Ekeland, Michael Hassard, and Xuan Zhou between February 25, 2021 and February 25, 2022. There is no evidence of any attorney-client relationship in the period before the items that are being reviewed were seized. She is currently represented by attorney Peter Bornstein.

## LIST OF PROSECUTORS AND AGENTS ASSIGNED TO INVESTIGATE AND PROSECUTE THIS CASE – THE PROSECUTION TEAM

**United States Attorney's Office**
Bryan Fields, AUSA
Karl Schock, AUSA
Martha Paluch, AUSA
JD Rowell, Chief, Criminal Division
Matthew T. Kirsch, Acting U.S. Attorney
Danielle Storinsky, Contract Legal Assistant
Portia Peter, Contract Legal Assistant
Veronica Ortiz, Legal Administrative Specialist
Michael Price, Legal Administrative Specialist
Margaret M. Bowdouris, Supervisory Legal Administrative Specialist

**Federal Bureau of Investigation**
Sarah Anderson, Special Agent
John Maglosky, Special Agent
Matthew Morgan, Financial Analyst
Dana McMahon, Financial Analyst

iv

**IRS-Criminal Investigation**
> Lisa Palmer, Special Agent
> Melinda Wilgus, Special Agent
> Ben Hopping, Special Agent
> Tony Romero, Special Agent

v

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Lisa Palmer, Special Agent with Internal Revenue Service-Criminal Investigation (IRS-CI), Denver Field Office, being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief:

1.      I am a Special Agent with the Department of Treasury, Internal Revenue Service-Criminal Investigation (IRS-CI) since 2017 with primary investigative responsibilities involving criminal matters such as tax evasion and money laundering. I have participated in several fraud investigations including investigations involving bank fraud, healthcare fraud, and money laundering. Prior to my employment with the IRS, I spent approximately two years with Charles Schwab first as an IT Audit Senior Specialist and then as an IT Audit Manager. Prior to working for Charles Schwab I worked for three years with Ernst and Young in the IT Risk Assurance practice. I have a Master of Accounting degree from the University of New Mexico.

2.      This affidavit is being submitted in support of a criminal complaint charging the following defendant with the following offense:

> a.   Michael Aaron Tew with a violation of Title 18, United States Code Section 1956(h) [Conspiracy to Commit Money Laundering].

3.      Due to the limited purpose of this affidavit, I have not included each and every fact known concerning this investigation, although to the best of my information, knowledge, and belief, I have not omitted any material fact that undermines the statements and conclusions herein.  I have set forth only the facts I believe are necessary to establish probable cause to show that TEW committed the offense described herein.

## Summary of the Investigation

4.      The Federal Bureau of Investigation (FBI) and Internal Revenue Service – Criminal

1

Investigation (IRS-CI) and other law enforcement agencies have been investigating Tew and others for fraud and money laundering activities, to include money laundering through the use of various forms of cryptocurrency. Based on my training and experience, cryptocurrency such as Bitcoin are often used to launder proceeds of specified unlawful activities like fraud.

5.     The investigation has revealed that TEW has conspired with others known and unknown to knowingly engage or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that is derived from specified unlawful activity, specifically wire fraud, and to knowingly conduct or attempt to conduct a financial transaction designed to conceal or disguise the nature, location, source, ownership or control of proceeds of the wire fraud.

<u>Background and Probable Cause</u>

6.     During some portion of time between 2015 and September 2018, MICHAEL AARON TEW (TEW) served as a contracted chief financial officer (CFO) for a Florida company named National Air Cargo (NAC). He was a contractor for NAC rather than an employee. Between at least 2015 and present, he has resided in Colorado with his wife Kimberly Tew (nee Ventanen) (K. TEW). During the time TEW served as the contracted CFO for NAC, TEW was not paid directly by NAC for his services. Rather, he billed NAC and was paid by NAC through a single-member LLC, of which he was the only member. The name of that entity was Sand Hill LLC ("Sand Hill") and it was established by TEW in or around July 2012.

7.     In or around September 15, 2018, NAC fired TEW for, *inter alia*, unauthorized use of a corporate credit card. The unauthorized use began in or around June 2018.

8.     Between no later than August 2018 and present, TEW conspired with others known and unknown to engage or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that derived from a scheme to defraud NAC via wire and to

knowingly conduct or attempt to conduct a financial transaction designed conceal or disguise the nature, location, source, ownership or control of proceeds of the wire fraud.

9.    After Tew's termination and beginning in or around December 2018 through July 2020, three companies named Global Fuel Logistics (GFL), Aero Maintenance Resources (AMR), and Political Media (PM) tendered invoices to and received payments from NAC in the amount of more than $4 million in the aggregate.  Invoices from these companies referenced purported services such as "[b]usiness [c]onsulting," "fuel modification inspection & research," and "[m]aintenance."  The payments to these three entities were executed through wires or Automated Clearinghouse (ACH) transactions.  Many of the wires and ACH payments from NAC, located at a minimum in Florida and New York, were made into accounts owned and controlled by TEW and, sometimes also by his wife K. TEW, who both reside in Colorado. Some of the accounts were business accounts belonging to Global Fuel Logistics or GFL, but other accounts were personal accounts belonging to TEW or his wife.  The wires and ACH transactions involve interstate commerce between NAC and TEW and K. TEW.

10.    The invoices from GFL, AMR and PM were fraudulent because they were for goods and services NAC never received.  TEW submitted or caused to be submitted these fraudulent invoices. Moreover, according to NAC, GFL, AMR and PM were not properly approved vendors for NAC. On July 1, 2020, NAC's co-owner Christopher Alf advised that he was unaware of the fact of payments being directed to accounts either directly owned by TEW and K. TEW, or indirectly controlled by them.  That same day, Alf also stated that he was unaware at the time the payments were being made about the total amount of payments to these entities.  The first payment to one of these three entities was made in or around December 2018 and the most recent payment was made by NAC on or around June 30, 2020.  These are the payments to GFL, AMR, and PM known at

3

this time. There are additional fraudulent payments to other entities for the benefit of TEW and/or his wife beyond the three entities identified above as well as additional payments to the three entities listed.

11.     On July 1, 2020, the co-owner of NAC, Christopher Alf, and the Director of Accounting, Abby Schwartz, also both advised that TEW's contractor agreement was terminated by NAC in or around September 2018 after Schwartz, with the input and assistance of others, determined that charges made by TEW on a corporate American Express card were fraudulent. The charges reflected the unauthorized purchase of gift cards by TEW and K. TEW, and served no legitimate business purpose for NAC. Alf and Schwartz further advised that, since TEW's September 15, 2018 termination, NAC has had no further legitimate business dealings or contracts with TEW or K. TEW.

12.     I interviewed Jonathan Yiolous, NAC's now former Director of Finance and Controller, on July 7 and 8, 2020. Based on the investigation to date, this fraud began while TEW was still employed at NAC. In approximately summer 2018, TEW requested that then-Director of Finance for NAC, Yioulos, pay an invoice for a company named 5530 Jessamine Development LLC ("Jessamine"). Mr. Yioulos processed that payment, later learning from TEW that the payment was fraudulent as Jessamine had not provided services to NAC, or at least not in the amount claimed.

13.     According to Mr. Yioulos, TEW, and at times his wife as well, used the fact that he had previously paid a fraudulent invoice to Jessamine as leverage for him to continue to process fraudulent invoices, even after TEW's employment at NAC was terminated. Mr. Yioulos stated that TEW and his wife threatened to alert NAC about Mr. Yioulos's prior payment of fraudulent invoices and that such disclosure could threaten Mr. Yioulos's continued employment. At one point in time, K. TEW contacted Mr. Yioulos's now ex-wife electronically which Mr. Yioulos

understood as a threat so that he would continue to pay the fraudulent invoices. Mr. Yioulos also stated that while he exchanged various cryptocurrency with TEW and/or K. TEW at various points during this scheme, he only retained a few Bitcoin for his own personal benefit. Similarly, Mr. Yioulos stated that TEW and/or his wife K. TEW offered him season tickets to the Buffalo Bills for his assistance with the execution of this fraud, but he declined as he already had season tickets.

14.     It was part of the conspiracy that different maneuvers would be undertaken to evade detection of the payment of the fraudulent invoices by NAC. TEW took steps or caused steps to be taken to make it difficult to ascertain that payments being tendered to GFL, AMR, and/or PM were going to him, either directly or indirectly for his benefit. For TEW's benefit, Mr. Yioulos also took multiple steps in the processing and approval of the payments to evade detection by anyone at NAC.

15.     Yioulos and TEW, who was sometimes accompanied by his wife, communicated about the fraud by phone call and text message. Mr. Yioulos stated that TEW used the phone numbers 917-685-1312 and 917-669-7473 interchangeably to communicate with him from at least June 2018 to present. According to Mr. Yioulos, TEW discussed with him how to execute the fraud, to include the amount reflected on the invoices and the timing of subsequent payments. Mr. Yioulos stated that early to mid-2019, he communicated to TEW that one of the company's names in which fraudulent invoices were tendered, "Political Media," may arouse detection at NAC because the name of that company did not clearly align with the work of NAC, which, *inter alia*, provides freight forwarding solutions through charter and airlift operations, often to the United States Department of Defense. Subsequent to that conversation, TEW began submitting fraudulent invoices in the names of GFL (Global Fuel Logistics) and AMR (Aero Maintenance Resources).

16.     At some point after 2016, Mr. Yioulos assumed the role of Controller but maintained his

responsibilities as the Director of Finance.  He was TEW's point of contact at NAC between late

2018 and present.  He was terminated by NAC on July 7, 2020.

17.     Based on our investigation to date, it was part of the conspiracy that TEW and his wife K.

TEW maintained a complex and ever-revolving network of bank accounts into which the NAC

funds were deposited.  These proceeds were largely deposited into accounts that TEW jointly

controlled or otherwise had access to.  Once the NAC funds were deposited, in order to launder

those proceeds from the wire fraud, the NAC funds, in large part or in their entirety, were either

quickly withdrawn in cash or otherwise wired or transferred to other accounts and often,

ultimately, into various cryptocurrency exchanges.  These amounts were often in excess of

$10,000, and on occasion approached amounts like $100,000.  TEW transferred the victim

proceeds or caused those proceeds to be transferred or withdrawn.  Many of the cash amounts

withdrawn, often with multiple cash withdrawals a day by TEW and separately by K. TEW, were

then deposited into Bitcoin ATMs like those operated by Digital Vending Solutions d/b/a

XBTeller.  Often in an attempt to evade detection, TEW made or caused to be made multiple

withdrawals and deposits into Bitcoin ATMs in one day in lower dollar amounts.

18.     An August/September 2019 transaction provides an example of how this conspiracy

operated.  On August 29, 2019, the email account accounting@globalfuel.co sent an email

containing three invoices to Jonathan Yioulos's email address at National Air Cargo,

jyioulos@nationalaircargo.com. One of these three invoices, Invoice 1023, was also dated August

29, 2019, and demanded $90,000.00 for the purported service of "Trailing Edge Flap Maintenance

Review." The invoice stated that a 50% deposit was due immediately. Mr. Yioulos advised that

payment for this invoice was split into two $45,000 payments.  Based on his relationship with

TEW, Mr. Yioulos, as he had done before, caused two ACH transfers to tender those two

6

payments. One ACH transfer for $45,000 was conducted on or around August 26, 2019, and the other transfer for $45,000 was conducted on or around September 3, 2019. Mr. Yioulos advised that it was not unusual to submit payment on an invoice even before the invoice was received as was the case with the first ACH transfer here on August 26, 2019. TEW communicated to Mr. Yioulos what routing and account numbers to direct those ACH transfers to. Based on that instruction, on September 3, 2019, Mr. Yioulos submitted or caused to be submitted an ACH payment of $45,000 from a Signature Bank account ending in 5545, a NAC account, via routing number ABA 256074974. Mr. Yioulos directed those $45,000 of proceeds as part of the wire fraud to a Navy Federal Credit Union (NFCU) account ending in 5336, and Mr. Yioulos provided the name Global Fuel Logistics as the recipient or destination for this ACH transfer. TEW was the sole owner of the NFCU account ending in 5336.

19.     The next day, on September 4, 2019, TEW transferred or caused to be transferred $45,000 from the NFCU checking account ending in 5336. Prior to the transfer of $45,000 initiated by Mr. Yioulos on September 3, 2019, the balance in the NFCU account ending in 5336 was no more than approximately $1236.42. The balance immediately after the transfer of $45,000 out of the NFCU account ending in 5336 was no more than approximately $1236.42. The $45,000 that was transferred out of the NFCU account ending in 5336 was routed to a different account at NFCU with number 7085338486, a joint checking account held by TEW and his wife K. TEW. Over the next two days, the funds were then split into various pieces with some being routed for example to Google Payments, others being routed to the Wynn Hotel, and withdrawal of $19,000 in cash over two separate transactions, $10,000 and $9,000, respectively.

20.     Mr. Yioulos was working and operating out of NAC's New York location, NAC was itself located in Florida and New York, while TEW and K. TEW were accessing their bank accounts in

Colorado. These wire and ACH transfers, and the instructions to effectuate the transfers, involved interstate commerce.

21.     I know through training and experience that persons who seek to "clean" proceeds of illegal activity use digital currency, such as Bitcoin, to complete the transactions. The digital currency gives the vendor and customer a perceived sense of anonymity. However, before customers can use the proceeds, to, for example, make a purchase on an online marketplace, they must first convert their fiat currency, such as the American dollar, into a digital or cryptocurrency accepted on the online marketplace.

22.     Based on my training and experience investigating crimes involving cryptocurrency and money laundering, an exchange of Bitcoin for fiat currency, in either direction, constitutes a financial transaction involving the movement of funds by wire or other means or otherwise affects interstate commerce because a fiat currency for Bitcoin exchange, in either direction, involves one or more monetary instruments.

23.     I, Lisa Palmer, being duly sworn according to law, depose and say the facts stated in the foregoing affidavit are true and correct to the best of my knowledge, information, and belief.

_s/ Lisa Palmer_____
Lisa Palmer, IRS-CI Special Agent

Sworn before me by reliable electronic means this 8th day of July, 2020.

The Honorable Kristen L. Mix
United States Magistrate Judge
District of Colorado

**Affidavit reviewed and submitted by Assistant United States Attorney Hetal J. Doshi.**

| | |
|---|---|
| **From:** | Edward Harris |
| **To:** | Doshi, Hetal (USACO); Kirsch, Matthew (USACO) |
| **Subject:** | Tew Cooperation and the Phone |
| **Date:** | Friday, October 2, 2020 6:45:44 PM |

Following up on your 9/25 requests, I am pleased to inform you that we have made substantial progress towards cooperation ont hose matters of interest to you regarding the imaged phone.

First, concerning text messages on the imaged phone, upon my advice Mr. Tew has agreed that you may look at: (1) the text messages between him and JY; and (2) the text messages between him and Larry Ward.

Second, regarding that phone, Mr. Tew also authorizes you to review all pictures and recordings on the phone up to but not including the date of his arrest. Per your request, I will review for privileged materials the pictures and images from the arrest date forward and apprise you which of those you can review.

As for your third request, that Mr. Tew advise you of any messages/communications between him KT and his mother-in-law and any media/platforms reflecting such communications, I am still working to resolve that request. As you can imagine, that is a sensitive matter. Frankly, although I have an answer on it from my client, I am not clear what that answer is. I will further inquire and advise you as soon as I can be more definitive.

Finally, Mr. Tew does not want his wife or her attorney to learn of his accession to these matters. To the extent possible, please do not reveal his cooperation in this regard unless and until it becomes essential to do so.

Edward R. Harris

Assistant Federal Public Defender

633 17th Street, Suite 1000

Denver, CO 80202

303.294.7002



**U.S. DEPARTMENT OF JUSTICE**

**Matthew T. Kirsch**
*Acting United States Attorney*
*District of Colorado*

*1801 California Street, Suite 1600    (303) 454-0100*
*Denver, Colorado 80202         FAX (303) 454-0403*

July 7, 2021

*Via electronic mail*

Tor Ekeland, Esq.
Michael Hassard, Esq.
Counsel for Michael Tew and Kimberley Tew
30 Wall Street
8th Floor
New York, New York 10005
tor@torekeland.com
michael@torekeland.com

**Re:    *United States v. Michael Aaron Tew, et al.*, Case No 20cr305-DDD**
**Notification of Further Filtering of iCloud Search Warrant Return for**
**kley@me.com**

Dear Mr. Ekeland,

As you know, a search warrant was executed on Kimberley Tew's iCloud account associated with kley@me.com.  The full return, in its unfiltered capacity, was provided to you on or around April 6, 2021.

In the context of negotiating the protective order, we had a telephone conference with you and your team on March 29, 2021 where we discussed, among other issues, the review of Ms. Tew's iCloud account.  Specifically, we noted that we did not have a basis to believe that there was a reasonable possibility that the materials in the iCloud search warrant return implicated an attorney-client privilege held by Ms. Tew, but in an abundance of caution, we had asked that the materials on the search warrant return be filtered outside the prosecution team so that items that were either (1) not dated or (2) dated the day of Mr. Tew's arrest, July 8, 2020, or afterward were removed from the materials accessible by the prosecution team.  We further asked you whether there were any other attorney-client relationships that we should be aware of, and you did not note any other such relationships during the call or after receipt of the iCloud return.

During the March 29th call, we also described how there were encrypted and unencrypted components to the iCloud search warrant return, both of which were subject to the date filtering and exclusion described above, but were processed separately (*i.e.*, the encrypted portion being processed at the computer crimes lab in Washington D.C., and the unencrypted portion processed by the FBI in Colorado).  We detailed how the prosecution team gained access to the unencrypted, filtered iCloud return in mid-December 2020 to start a priority analysis prior to seeking indictment,

but had not accessed the unencrypted iCloud search warrant return from the time of indictment to the time of our call, March 29, 2021. We also noted that while the encrypted, filtered iCloud search warrant return materials had been shipped to us in Denver, the prosecution team had not reviewed it, which continues to be the case. We asked that if you had any concerns or issues with respect to our review of the iCloud search warrant return, to include on the issue of marital communications, you identify those issues within two weeks of that call, or by April 12, 2021, during which time we would not access the filtered iCloud search warrant returns. To date, we have not received any information from you about additional issues related to the iCloud search warrant return.

At the end of last week, per our instructions, IRS-Criminal Investigation Special Agent Lisa Palmer and FBI Special Agent Sarah Anderson resumed their initial review of the unencrypted iCloud search warrant return. During that review, Special Agent Palmer noted on Monday, July 5, that there were communications between Eric Creizman and Ms. Tew. Because Mr. Creizman was known to Special Agent Palmer as a lawyer retained by Mr. Tew, albeit after the pre-July 8, 2020 timeframe, she immediately ceased review of those communications. She also observed a contact for "Lawyer 3" and did not review any communications between "Lawyer 3" and Ms. Tew. She then closed the search warrant return. She then identified this issue promptly to the Assistant United States Attorneys on this case on Tuesday, July 6, and consistent with what she had already done on her own on Monday, July 5, has not reopened the iCloud search warrant return to afford us time to contact you to advise on the filtering process we intend to employ.

Later in the day on Tuesday, July 6, Special Agent Palmer recalled that on Monday, she had reviewed communications between a contact named "Lauren Tew" and Ms. Tew. In an abundance of caution, on Tuesday, July 6, she then looked up "Lauren Tew's" employment via an Internet search and noted that "Lauren Tew" is an attorney. That same day, Special Agent Palmer conveyed this information to the Assistant United States Attorneys, who have not seen the underlying communications between "Lauren Tew" and Ms. Tew and are not aware of the substance of the communications.

We have no reason to believe that Ms. Tew had an attorney-client relationship with "Lauren Tew" or that the communications were for the purpose of seeking legal advice. Furthermore, while we know that Mr. Creizman formed an attorney-client relationship with Mr. Tew at some point in late July 2020, we do not understand that he has ever had an attorney-client relationship with Ms. Tew, especially, as relevant to the filtered search warrant return available to the prosecution team, in the time period *prior to* Mr. Tew's arrest on July 8, 2020. We are aware only that Mr. Creizman may have at some point represented Mr. Tew, or Mr. Tew's prior employer or associated business, in another SEC matter. Finally, with respect to "Lawyer 3," we do not know who that attorney is, or whether an attorney-client relationship existed, but from the contact information, we know that "Lawyer 3" is associated with the phone number (949) 204-7468. We have not looked up this number to identify the owner, but can do so to add to the proposed search terms below.

Please advise in writing by 5 p.m. on July 15, 2021, as to whether Ms. Tew had an attorney-client relationship with "Lauren Tew" and/or Mr. Creizman, and if so, when that relationship was formed. At this time, we do not intend to seek to have the prosecution team review Ms. Tew's communications with "Lauren Tew," Eric Creizman, or "Lawyer 3," nor do we intend to use those

materials.  We make that decision without waiver of our right to argue that these materials are not, in fact, privileged.

<u>Search Terms and Further Filtering</u>
We intend to segregate and set aside materials that may pertain to "Lauren Tew," Eric Creizman, and "Lawyer 3" by having the following searches run by someone who is not on the prosecution team.  The specific communications or items that hit on these search terms will be segregated and removed from what is then available to the prosecution team.

To provide context for the list of search terms below, we provide you with the following information:

In the iCloud search warrant return, Eric Creizman is associated with the following contact information:
ecreiz@icloud.com
(917) 494-5881

In our interactions with Mr. Creizman as prior counsel for Mr. Tew, we have separately identified the following contact information:

Armstrong Teasdale LLP
**Eric M. Creizman** | Partner
919 Third Ave, 37th Floor, New York, NY 10022
MAIN PHONE: 212.209.4400
DIRECT: 212.209.4358 | FAX: 646.200.5022
MOBILE: 917.494.5881
ecreizman@atllp.com

We also note that in our interactions with Mr. Creizman, he worked with a co-counsel, Melissa Madrigal, whose contact information is also below.  In an abundance of caution, we will include her in the search terms.

Armstrong Teasdale LLP
**Melissa Madrigal** | Partner
919 Third Avenue, 37th Floor, New York, NY 10022
212.209.4456 (direct) | 786.543.1877 (cell)
mmadrigal@atllp.com

In the iCloud search warrant return, "Lawyer 3" is associated with this phone number:
(949) 204-7468

As noted above, we have not conducted an Internet search to see if we can identify the person associated with this number, but can do so if you would like.

We have instructed Special Agent Palmer not to reopen the iCloud search warrant return for the contact information associated with "Lauren Tew."

3

Based on the above, we have developed the following list of search terms:

"Eric Creizman"
ecreiz@icloud.com
(917) 494-5881
917.494.5881
ecreizman@atllp.com
212.209.4358
(212) 209-4358
646.200.5022
(646) 200-5022
"Armstrong Teasdale"
"919 Third Ave, 37th Floor"
"Melissa Madrigal"
786.543.1877
(786) 543-1877
212.209.4456
(212) 209-4456
mmadrigal@atllp.com
"Lawyer 3"
(949) 204-7468
949.204.7468
"Lauren Tew"

If you would like to supply a name, email address(es), any additional phone number(s), and/or firm name for "Lawyer 3," we can add that to our search. If you would like to supply email address(es), firm name, and/or telephone number(s) for "Lauren Tew," we can also add that to the search. If you intend to provide those additional terms, please do so in writing by or before 5 p.m. on July 15, 2021.

Please let us know if you wish to discuss further. Thank you.

Best Regards,

MATTHEW T. KIRSCH
Acting United States Attorney
District of Colorado

*s/ Hetal J. Doshi*
Hetal J. Doshi
Assistant United States Attorney

*s/ Andrea Surratt*
Andrea Surratt
Assistant United States Attorney

4



Tor Ekeland
Partner
(718) 737-7264
tor@torekeland.com

July 9th, 2021

*Via electronic mail*

Matthew T. Kirsch
Acting United States Attorney

Hetal J. Doshi
Andrea Surratt
Assistant United States Attorneys

United States Attorney's Office
District of Colorado
1801 California Street, Suite 1600
Denver, CO 80202

> Re: *United States v. Michael Aaron Tew, Kimberley Ann Tew, and Jonathan K. Yioulos,* **Case No. 20-CR-305-DDD**
> **Potential Privilege Violations**

Dear Mr. Kirsch, Ms. Doshi, and Ms. Surratt,

We are in receipt of your July 7th letter requesting search terms for the filtration of iCloud data seized via sealed search warrant from Apple. Based on the information provided to us in this letter, we believe that failure to follow appropriate taint team protocols may have resulted in the government violating Mr. and Mrs. Tew's attorney-client and spousal privileges. Your correspondence indicates that government investigators may have accessed privileged material. We ask that you immediately cease your discovery review until these privilege questions are resolved.

Finally, your characterization of our discussions as agreements is inaccurate. Any agreement that the defense makes with the government will be in writing. We do not accept your imposition of arbitrary deadlines as to our clients' legal rights, and nothing that we have said or done is any kind of waiver. We have been clear about this from the beginning. We look forward to discussing this with you further on Thursday after the hearing.

Sincerely,

*s/ Tor Ekeland*          *s/ Michael Hassard*
Tor Ekeland             Michael Hassard



<div align="right">
Tor Ekeland
Managing Partner
(718) 737-7264
tor@torekeland.com
</div>

**July 23, 2021**

**VIA EMAIL**

Matthew T. Kirsch
Acting United States Attorney
Matthew.Kirsch@usdoj.gov

Hetal J. Doshi
Assistant United States Attorney
Hetal.Doshi@usdoj.gov

Andrea L. Surratt
Assistant Unites States Attorney
Andrea.Surratt@usdoj.gov

District of Colorado
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403

Re: *United States v. Tew et. al.*, **20-CR-00305-DDD - Privilege Violations**

Counsel:

As you are aware, the unencrypted iCloud search warrant return for your search warrant dated September 22, 2020 (Bates No. 00000087, the "Search Warrant") in the above referenced matter contains privileged communications. The Search Warrant and our review of the incomplete record and discovery raise significant questions as to whether you've tainted your prosecution by violating privileges and the Fourth Amendment's particularity clause. We believe a court appointed Special Master may be needed to resolve these issues and ask that you halt all review of Mrs. Tew's iCloud account until they are resolved.

It has been months since the government received the Search Warrant return from Apple, Inc. To date, no one from your taint team has contacted us as the Search Warrant requires:



If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of one or more government attorneys and other government personnel, as needed, is established. The filter team will have no previous or future involvement in the investigation of this matter. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter team believes that any of the communications to/from attorneys are not actually privileged (e.g. the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team. If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.

According to your July 7, 2021, letter "At the end of last week, per our instructions, IRS-Criminal Investigation Special Agent Lisa Palmer and FBI Special Agent Sarah Anderson <u>resumed</u> their initial review of the unencrypted iCloud search warrant return."(emphasis added) We ask that you provide to us all the dates members of your investigative team reviewed Mrs. Tew's iCloud Search Warrant return, and that you preserve all logs, records and communications regarding your access to the discovery in this case and any privilege protocols followed. We also request the names of everyone on your filter teams, any relation they have to the investigative team, and what, if any, written and oral protocols they are following.

A forthcoming Rule 16 letter will list this as well as other issues with the discovery.

We are available next week for a conference call to discuss these issues.

Sincerely,

Tor Ekeland



**U.S. DEPARTMENT OF JUSTICE**

**Matthew T. Kirsch**
*Acting United States Attorney*
*District of Colorado*

*1801 California Street, Suite 1600    (303) 454-0100*
*Denver, Colorado 80202        FAX (303) 454-0403*

July 29, 2021

*Via electronic mail*

Tor Ekeland, Esq.
Michael Hassard, Esq.
Counsel for Michael Tew and Kimberley Tew
30 Wall Street
8th Floor
New York, New York 10005
tor@torekeland.com
michael@torekeland.com

**Re:**     ***United States v. Michael Aaron Tew, et al.*, Case No 20cr305-DDD**
         **Second Letter Regarding Further Filtering of iCloud Search Warrant Return for**
         **kley@me.com**

Dear Mr. Ekeland,

We are responding to your letter dated July 23, 2021 (the "July 23 Letter") which responded to our letter dated July 7, 2021 (the "July 7 Letter"). The July 7 Letter, the July 23 Letter, and this letter all concern the search warrant return for Kimberley Tew's iCloud account associated with kley@me.com.

The July 23 Letter begins with the statement, "As you are aware, the unencrypted iCloud search warrant return for your search warrant dated September 22, 2020 (Bates No. 00000087, the "Search Warrant") in the above referenced matter contains privileged communications." This appears to assume that the filtered, unencrypted[1] return that the prosecution team had access to[2] contains privileged communications.

As we noted both during our March 29, 2021 teleconference (the "March 29 Teleconference") and in our July 7 Letter, when we received the search warrant return in or around late December 2020,

---

[1] As noted during our March 29, 2021 teleconference and in our July 7 Letter, there are two components to the search warrant return at issue here: an encrypted portion and unencrypted portion. Date filtering, as described in the July 7 Letter and in this letter, was applied to both portions, but the prosecution team has not yet accessed the encrypted date-filtered search warrant return.

[2] The prosecution team immediately ceased review of the date-filtered unencrypted search warrant return on July 5, 2021, and has not since accessed those materials. *See* July 7 Letter.

we did not have a basis to believe that there was a reasonable possibility that the materials in the iCloud search warrant return implicated an attorney-client privilege held by Mrs. Tew. We nevertheless asked that the search warrant return – both the encrypted and unencrypted portions – be filtered outside the prosecution team to exclude all materials that either had no date or were dated the date of Mr. Tew's arrest, July 8, 2020, or later. As we also noted during the March 29 Teleconference, we started an initial review of the unencrypted, filtered search warrant return in the few weeks before indictment, and we did not encounter materials that appeared to be attorney-client communications. On that teleconference, we described the date exclusion and specifically asked whether you were aware of any other attorney-client relationships for Mrs. Tew. We noted that we had not resumed review of the filtered search warrant return since the time of indictment and offered to continue to hold off on further review for two weeks to give you an opportunity to raise any privilege issues with us or with the Court. You did not provide any other attorney names on that call, or in the time after that call after your receipt of the unfiltered search warrant returns for both the encrypted and unencrypted portions of the return. More than three months after our March 29 Teleconference, our team resumed review. In that review, when a member of the prosecution team identified communications with persons that either were known to be or could be attorneys, review immediately ceased and we promptly notified you. *See* July 7 Letter.

In our July 7 Letter, we specifically asked you to confirm whether Mrs. Tew had an attorney-client relationship with (1) Eric Creizman; (2) Lauren Tew; and (3) "Lawyer 3." The fact that an individual communicates with a lawyer does not make any and all such communications subject to the attorney-client privilege. Indeed, while we have affirmatively offered to use search terms to exclude the prosecution team from access to communications with Mr. Creizman, Lauren Tew, and Lawyer 3, we are not obligated to categorically exclude all such communications from our review.[3] Instead, the government could opt to have these communications reviewed by a filter team and only exclude those communications that are, in fact, privileged.

Your quotation of the language in our search warrant application, *see* July 23 Letter at 2, in fact, supports the government's approach here. That language states:

> **_If_ the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of one or more government attorneys and other government personnel, _as needed,_ is established**. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will identify and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter

---

[3] As noted in the July 7 Letter, the government's decision at this time to voluntarily exclude and not review communications between Mrs. Tew and Mr. Creizman, Lauren Tew, and "Lawyer 3" is made without waiver of its ability to argue that these materials are not, in fact, privileged.

> team believes that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team.  If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.

(emphasis added).

Prior to July 5, 2021, the government had not identified seized communications to/from an attorney.  Indeed, exactly as this language specifies, once we did identify such seized communications to/from an attorney, we discontinued review and notified you.  *See* July 7 Letter.  Because we have decided at this time not to seek to use communications between Mrs. Tew and Mr. Creitzman, Lauren Tew, and Lawyer 3, we opted for what we thought would be a more efficient filter process—to use search terms, created with input from you, to simply exclude those materials from our review—rather than have a separate filter agent and filter Assistant U.S. Attorney review those communications.  In short, the process the government is proposing would likely over-exclude items from the prosecution team's review (at least for now) by excluding *all* communications between Mrs. Tew and Mr. Creizman, Lauren Tew, and "Lawyer 3," whether or not those communications are, in fact, privileged.  The option to use a separate filter AUSA and filter agent remains available if there is any reason to think that the more efficient process of using search terms will not adequately protect any attorney-client privileges.  If you have such a reason, we ask you to share it with us.

We renew our request that you state whether Mrs. Tew had an attorney-client relationship with Mr. Creizman, Ms. Lauren Tew, and/or Lawyer 3.  We also continue to ask for your input on our proposed search terms as outlined in the July 7 Letter.  Similarly, as we asked during our March 29 Teleconference, we continue to ask whether Mrs. Tew has attorney-client relationships with other lawyers so that we may take additional steps, as needed, to filter out privileged communications with those lawyers.

[continued on next page]

3

We are available for an additional teleconference early next week to discuss this issue.  Should we not be able to reach agreement on a path forward by or before close of business on August 5, 2021, we think that Court intervention may be the next step.

Thank you.

Best Regards,

MATTHEW T. KIRSCH
Acting United States Attorney
District of Colorado

*s/ Hetal J. Doshi*
Hetal J. Doshi
Assistant United States Attorney

*s/ Andrea Surratt*
Andrea Surratt
Assistant United States Attorney

4



Tor Ekeland
Managing Partner

(718) 737-7264
tor@torekeland.com

**VIA EMAIL AND FEDEX**

Matthew T. Kirsch
Acting United States Attorney
District of Colorado
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
matthew.kirsch@usdoj.gov

Hetal J. Doshi
Assistant United States Attorney
District of Colorado
hetal.doshi@usdoj.gov

Andrea L. Surratt
Assistant United States Attorney
District of Colorado
Andrea.Surratt@usdoj.gov

**Re:  *United States v. Tew et al.*, 20-CR-00305-DDD - iCloud Search Warrant Return**

Dear Mr. Kirsch,

    As you know, the unencrypted iCloud search warrant return for your search warrant dated September 22, 2020 (Bates No. 00000087, the "Search Warrant") in the above-referenced matter contains communications protected by the attorney-client privilege. You have not used an independent taint team to review the massive amount of material acquired through your warrant, much of which is beyond its scope. Our understanding is that your investigative team has had full access to the unfiltered Search Warrant return and has conducted its review without filtering for privilege, as you are required to do. This may have irreparably tainted this investigation by violating our clients' rights. Additionally, the scope of the Search Warrant is overbroad and reads like a general warrant. You appear to be on a fishing expedition. Worse, you have ignored the specific commands of the Search Warrant.

    The Search Warrant requires that a taint team or "filter team" be appointed if attorney-client privileged communications are in the search. That filter team must contact defense counsel. The independent filter team must be disconnected from any other aspect of the investigation to relieve it from any taint. It has been months since the government



received the Search Warrant return from Apple, Inc. To date, no one from an independent filter team has contacted us. The Search Warrant is explicit about this requirement:

> If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of one or more government attorneys and other government personnel, as needed, is established. The filter team will have no previous or future involvement in the investigation of this matter. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter team believes that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team. If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.[1]

You've stated that there was no basis to believe that the materials in the iCloud search warrant return implicated the attorney-client privilege. But this was an obvious possibility. The iCloud account kley@me.com is Mrs. Tew's primary communication tool with her attorneys and the rest of the world. It contains detailed records of her personal life. An iCloud account, including emails, instant messages, electronic files, location data, internet activity, and all other information stored on iCloud, is the home of a person's online identity. Apple requires an iCloud account for many of its services. Mrs. Tew was on notice that the government was investigating her after you arrested her husband. It is foreseeable, indeed highly likely, that she would consult an attorney and that attorney-client privileged communications would exist in her iCloud account. And she did, multiple times. Yet, your investigation included all her communications, including those she made after she learned of the government's investigation. From the outset, there was a reasonable possibility that the materials in the iCloud search warrant return would implicate an

---

[1]Search and Seizure Warrant, 20-SW-01115-SKC, (Sept. 22, 2020) Attachment "B", Pg. 7.



attorney-client privilege held by Mrs. Tew. Without an appropriate taint protocol in place, the risk continues if the taint is not yet irreparable.

There are considerable discrepancies between the Search Warrant's taint procedure and your review as you explained it to us in your July 7, 2021, letter.[2] Despite a reasonable possibility that privileged communications existed on the iCloud Return, the government's prosecution team began reviewing the unencrypted portion of the iCloud Return upon receipt. Even after encountering privileged communications, Special Agents Lisa Palmer and Sarah Anderson, the FBI Agents assigned to this case, resumed investigating the seized materials in July 2021.[3] This violates the Search Warrant's explicit order.

The government cannot shift the burden to the defense by simply asking for a targeted name list of potentially privileged communicators. Given the vast universe of an iCloud return, the defense cannot foresee every situation and provide a magic list of filter terms to eliminate the problem. The solution is an independent taint review team, something you have not done.

At this juncture, it seems to us a Special Master is necessary to review these issues. Before we move the Court for one, we are open to discussing this issue once more. Given that we haven't had substantial time to discuss the intricacies of the case and its problematic nature for you, I am willing to fly out to meet in Denver if a block of time can be carved out. I am also free to talk on the phone or meet via videoconference.

Nothing in this letter constitutes a waiver of any type, particularly with regard to the marital privileges held by Michael and Kimberley Tew.


Sincerely,

Tor Ekeland

---

[2] Letter from Matthew T. Kirsch, Acting United States Attorney, District of Colorado, to author (July 29, 2021) (on filed with author).
[3] *Id*. Pg. 2.



Tor Ekeland
Managing Partner

(718) 737-7264
tor@torekeland.com

September 16, 2021

**VIA EMAIL**

Hetal J. Doshi
Assistant United States Attorney
District of Colorado
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
Hetal.Doshi@usdoj.gov

Andrea L. Surratt
Assistant United States Attorney
District of Colorado
Andrea.Surratt@usdoj.gov

**Re:  *United States v. Tew et al.*, 20-CR-00305-DDD - Taint**

Dear Mrs. Doshi,

We appreciate you taking the time to speak with us this Wednesday and look forward to meeting with you on October 12, 2021, to discuss the path forward. As we agreed, we will refrain from requesting a Special Master to review the taint issues and litigating the privilege issues until after this meeting assuming you halt your review of all the discovery returned under the search warrants in this matter. For two main reasons.

First, we agree with the Fourth Circuit Court of Appeals that your taint team procedures are unconstitutional because the judiciary cannot delegate privilege determinations to the Executive Branch.[1]

Second, even assuming the court ordered taint team protocols are constitutional you do not appear to have followed them.

Thus, it is our position that all the discovery seized under the search warrants is irreparably tainted. If you continue your review, we will seek relief from the Court. Feel free to reach out to us if you wish to discuss this before our October meeting.

---

[1] *See In Re: Search Warrant Issued June 13, 2019*, 942 F. 3d 159 (CA4 2019).



Nothing in this letter constitutes a waiver of any type, including Mr. and Mrs. Tew's marital privilege and any other rights they have under the Law.

Sincerely,

Tor Ekeland

| | |
|---|---|
| **From:** | Tor Ekeland |
| **To:** | Surratt, Andrea (USACO) |
| **Cc:** | Michael Hassard; Xuan (Emily) Zhou; Nicole Guitelman; Doshi, Hetal (USACO) |
| **Subject:** | [EXTERNAL] Re: U.S. v. Tew - Taint Letter & Travel Request |
| **Date:** | Monday, September 20, 2021 8:21:47 AM |

Andrea:

Acknowledging receipt of the below. I'm traveling the next couple of days so may be slow with any reply. I look forward to our meeting.

-Tor


Tor Ekeland

Tor Ekeland Law PLLC

30 Wall Street

8th Floor

New York, NY 10005

tor@torekeland.com

torekeland.com

(718) 737-7264

This account is checked once in the morning and once in the afternoon. If you need a response before that please call the office number listed above. This email is sent from a law firm and may contain privileged and confidential information. If you have received it in error, please let us know and then delete all copies of it.

---

**From:** "Surratt, Andrea (USACO)" <Andrea.Surratt@usdoj.gov>

**Date:** Friday, September 17, 2021 at 4:35 PM

**To:** Tor Ekeland <tor@torekeland.com>

**Cc:** Michael Hassard <Michael@torekeland.com>, "Xuan (Emily) Zhou" <Xuan@torekeland.com>, Nicole Guitelman <nicoleg@torekeland.com>, "Doshi, Hetal (USACO)" <Hetal.Doshi@usdoj.gov>

**Subject:** RE: U.S. v. Tew - Taint Letter & Travel Request

Tor,

We have received your letter. As discussed, we plan to see you in Denver on October 12, 2021, at 12:30 pm MT.

The letter mentions an agreement that you'll defer filing a motion regarding your view that any taint process is unconstitutional pursuant to Fourth Circuit precedent until after our October 12, 2021 meeting in exchange for our refraining from reviewing all search warrant materials. In an abundance of caution and to be clear, as we noted on our call on September 15, 2021, we have refrained from review of the filtered, unencrypted search warrant materials for the iCloud account associated with kley@me.com since July 6, 2021, as reflected in our July 7, 2021 letter to you (in addition to the prior period of approximately three months that we refrained from review as described in our prior correspondence). We have done so to try

to elicit your feedback on further searches and segregation of materials.

We disagree that the circumstances merit refraining from review on all search warrant returns (which is broader than the iCloud return for kley@me.com), but in the spirit of compromise and an effort to efficiently reach a workable path forward in our October 12, 2021 meeting, we will voluntarily, without concession or waiver, agree not to review search warrant returns for the following until we meet on October 12:

| Case Number | Target Number/Email |
|---|---|
| 20-sw-00773 | 917-685-1312 & 917-669-7473 |
| 20-sw-00896 | 3222 E 1st Ave, Apt 224, Denver |
| 20-sw-01115 | kley@me.com |
| 20-sw-01522 | chrisrncn@gmail.com |
| 20-sw-01532 | meyersconsultinggroupinc@gmail.com |
| 20-sw-01533 | political.media.wdc@gmail.com |

Thanks,
Andrea

**From:** Tor Ekeland <tor@torekeland.com>
**Sent:** Thursday, September 16, 2021 5:40 PM
**To:** Doshi, Hetal (USACO) <hdoshi@usa.doj.gov>; Surratt, Andrea (USACO) <asurratt@usa.doj.gov>
**Cc:** Michael Hassard <Michael@torekeland.com>; Xuan (Emily) Zhou <Xuan@torekeland.com>; Nicole Guitelman <nicoleg@torekeland.com>
**Subject:** [EXTERNAL] U.S. v. Tew - Taint Letter & Travel Request

Hetal and Andrea:

Thank you again for taking the time to talk to us yesterday. Attached is our letter regarding the taint issue.

Also, the Tews would like to travel with their two daughters to the beach in Los Angeles on September 23, 2021, with a return to the District of Colorado on September 27, 2021. They have spoken to their PO. Please let us know if you oppose our motion to the Court in this regard.

As always, feel free to contact us with any questions or concerns.

-Tor

Tor Ekeland
Tor Ekeland Law PLLC
30 Wall Street
8th Floor
New York, NY 10005
tor@torekeland.com
torekeland.com

(718) 737-7264

This account is checked once in the morning and once in the afternoon. If you need a response before that please call the office number listed above. This email is sent from a law firm and may contain privileged and confidential information. If you have received it in error, please let us know and then delete all copies of it.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD
UNITED STATES OF AMERICA,

       Plaintiff,

v.

    1.  Michael Aaron Tew,
    2.  Kimberley Ann Tew, and
    3.  Jonathan K. Yioulos,

       Defendants.

---

## MOTION TO WITHDRAW

---

The United States of America, by Cole Finegan, United States Attorney for the District of Colorado, through Andrea Surratt, Assistant United States Attorney, hereby files its Motion to Withdraw as counsel of record and requests termination of electronic service in the above-captioned case.  As grounds for this motion, the government states that AUSAs Bryan Fields and Albert Buchman are counsel of record in this case, have filed entry of appearances, and are receiving electronic notice.

Dated this 20th day of May 2022.

1

Respectfully submitted,

COLE FINEGAN
United States Attorney


By: *s/Andrea Surratt*
Andrea Surratt
Assistant United States Attorney
United States Attorney's Office
1801 California Street, #1600
Denver, Colorado  80202
Telephone: (303) 454-0100
FAX: (303) 454-0401
E-mail: Andrea.Surratt@usdoj.gov
Attorney for the United States

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of May 2022, I electronically filed the foregoing **MOTION TO WITHDRAW** with the Clerk of the Court using the CM/ECF system which will send notification to all parties of record.


By: *s/Portia Peter*
Portia Peter
Legal Assistant
United States Attorney's Office
1801 California Street, #1600
Denver, Colorado 80202

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
   **Kimberley Vertanen,**

Defendants.

---

**UNOPPOSED MOTION FOR LEAVE TO FILE A REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE (DOC. 204)**

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby moves this Court for leave to file a reply to the response filed by the Government to Defendant's Motion to Suppress Evidence from searches and seizures.  As grounds in support of their motion, Defendants state as follows:

1.      Defendants filed an omnibus motion attacking the searches and seizures of their internet communications on May 12, 2022. (Doc. 200).

2.      The Government filed a response in opposition to the motion on May 19, 2022. (Doc. 204).  The Government's response is 30-pages long and contains citations to more than a dozen cases which it argues in support of its position.

3.      The defense wants an opportunity to address the case law cited by the Government.

4.    The Government's response references a "filter memorandum" and attached exhibits; which procedure is not a legal way to circumvent the Fourth Amendment.

5.    The Government's response asserts the good faith exception to violations of the Fourth Amendment.

6.    The Government's response raises the need to address the false statements in the affidavits and a reckless disregard by the affiants which gives rise to holding a Franks v. Delaware hearing.

7.    The defense wishes to address these issues and other and additional issues arising from the response.

8.    Without such a response, the Court will not have a full and complete development of the facts and the law applicable to the issues for decision.

9.    To this end, the defense requests leave to file a reply.  The defense requests to file the reply 14 days after counsel returns from a vacation on June 2, 2022, and further requests leave to file a reply of 5,000 words.

10.   AUSA Bryan Fields does not object to granting this motion.

WHEREFORE, Defendants Michael A. Tew and Kimberley A. Tew respectfully request leave to file a reply to the Government's response in opposition to their motion to suppress evidence by no later than June 16, 2022, with a limit of no more than 5,000 words.

Respectfully submitted this 25th day of May 2022.

> s/ Peter R. Bornstein
> Peter R. Bornstein
> 6060 Greenwood Plaza Blvd., Suite 500
> Greenwood Village, CO 80111
> Telephone: 720-354-4440
> Facsimile: 720-287-5674
> E-mail: pbornstein@prblegal.com
> *Attorney for Defendants Michael Tew and Kimberley Tew*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

> s/ Peter R. Bornstein
> Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of May 2022, I electronically filed the foregoing **UNOPPOSED MOTION FOR LEAVE TO FILE A REPLY TO GOVERNMENT'S RESPONSE TO MOTION TO SUPPRESS EVIDENCE (DOC. 204)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

> s/ Jeannette Wolf
> Jeannette Wolf, Paralegal

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
**Kimberley Vertanen,**

Defendants.

---

### UNOPPOSED MOTION TO REQUIRE THE GOVERNMENT TO SUBMIT EXPERT WITNESS OPINIONS 120 DAYS BEFORE TRIAL

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby moves this Court for an order requiring the government to submit any expert witness opinions it wants to use at trial 120 days before the trial date. As grounds in support of their motion, Defendants state as follows:

1.     The District Court issued two discovery orders in this case: on February 5, 2021 as to Michael Tew, and February 10, 2021 as to Kimberley Tew.  (Docs. 91 and 97)

2.     The discovery orders say that "[w]ritten summaries of any testimony that the government intends to use under Rules 702, 703, or 705, Fed. R. Crim. P. 16(a)(1)(G) shall be provided on such schedule as the District Court shall determine upon motion by either party."

3.     In white collar crime cases involving charges of violation of the money laundering statutes the government often has one or more case agents who have an accounting degree or background to give expert opinion testimony.

4     The defense needs to learn of this expert opinion testimony sufficiently before trial so as to engage the services of a counter expert.  Whereas the case agents know the facts and evidence in the case from months or years of involvement, a defense

expert must be given enough time to analyze the evidence supporting or refuting the prosecution experts.

5.    The defense believes that 120 days (four months) is reasonable given the fact that the prosecution has had over a year since the indictment was filed on February 3, 2021.

6.    Undersigned counsel has conferred with AUSA Fields, who does not oppose the relief requested.

WHEREFORE, Defendants request an order of Court requiring the government to submit any expert witness opinions it wants to use at trial 120 days before the trial date.

Respectfully submitted this 13th day of June 2022.

s/ Peter R. Bornstein
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael A. Tew and Kimberley A. Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ Peter R. Bornstein
Peter R. Bornstein

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendants Michael A. Tew and Kimberley A. Tew state that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

s/ Peter R. Bornstein
Peter R. Bornstein

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **UNOPPOSED MOTION TO REQUIRE THE GOVERNMENT TO SUBMIT EXPERT WITNESS OPINIONS 120 DAYS BEFORE TRIAL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<div style="margin-left:40%">

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

</div>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

     Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a
   Kimberley Vertanen,**

     Defendants.

---

**DEFENDANTS MICHAEL TEW AND KIMBERLEY TEW'S
MOTION FOR A *FRANKS v. DELAWARE* HEARING**

---

Defendants, Michael A. Tew and Kimberley A. Tew ("Mr. and Ms. Tew"), by their counsel of record, Peter R. Bornstein, hereby moves this Court for a hearing pursuant to the doctrine in *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978). The various search warrants obtained by the government in this case which are the subject of a separate motion to suppress and are attached to that motion to suppress (Doc. 200), are incorporated herein by reference to avoid unnecessary duplication. As grounds in support of their motion, Mr. and Ms. Tew state to the Court as follows:

    1.    The government in this case sought and obtained six separate search warrants in connection with this prosecution.

    2.    Each search warrant was obtained with an affidavit from either Special Agent Anderson or Agent Palmer. Each affidavit contained a recitation of alleged facts which the government claims support the probable cause required for the issuance of a search warrant.

    3.    The agents' affidavits supporting the search warrant applications contained multiple reckless misstatements and multiple omissions that are material to the issuance of the warrant.

4.      Among the material, omissions, and misstatements from the affidavit are the following:

A.      On July 1, 2020, Kimberley Tew sent a text message to Jonathan Yioulos from a Google voice number 469-319-0152.

B.      Jonathan Yioulos engaged in embezzlement of funds from National Air Cargo (NAC) before engaging in transactions with Mr. Tew or Ms. Tew.

C.      Jonathan Yioulos was threatened with a loss of employment if he refused to pay fraudulent invoices.

D.      Michael Tew made the suggestion to use phony companies for invoices to NAC when it was Jonathan Yioulos who determined the mechanics,

E.      Kimberley Tew said she wanted to take responsibility for the NAC fraud at the meeting held July 28, 2020 at Yeti.

F.      Kimberley Tew communicated with Jonathan Yioulos about paying fraudulent invoices when it was he who insisted on only talking to Michael Tew.

G.      Jonathan Yioulos only received small amounts of Bitcoin for his part of the fraud.

H.      Kimberley Tew had accounts and was on forms on the "Dark Net."

I.      Kimberley Tew shared bank accounts (plural) with Michael Tew.

J.      Michael Tew's bank deposits came from the NAC fraud.

K.      Michael and Kimberley Tew threatened Jonathan Yioulos they would get him fired unless he kept processing phony invoices.

L.      Kimberley Tew accessed fraudulent payments from NAC in a variety of bank accounts.

M.      National Air Cargo, Inc. is a Florida Corporation.

N.      Invoices submitted to NAC were from unapproved vendors.

2

O.      Payments via ACH were not approved.

5.      Other omissions and misstatements were made in the affidavits that will be developed at a *Franks v. Delaware* hearing.

6.      A search warrant must be voided, and the fruits of the search suppressed where a court (1) finds that the affiant knowingly or recklessly included false statements in or omitted material information from an affidavit in support of a search warrant; and (2) concludes after excising such false statements and considering such material omissions, that the corrected affidavit does not support a finding of probable cause. *United States v. Garcia-Zambrano*, 530 F.3d 1249, 1254 (10th Cir. 2008) (citing *Franks v. Delaware* and *United States v. Kennedy*, 131 F.3d 1371, 1376 (10th Cir. 1997)).

7.      A *Franks* claim has two components.  First, the defendant must show the omitted information was material in that its inclusion would have vitiated probable cause for issuing the warrant.  Second, the accused must demonstrate that the affiant acted with the requisite mental state of recklessness in omitting the information.  *Kapinski v. City of Albuquerque,* 964 F.3d 900, 905 (10th Cir. 2020); *United States v. Herrera*, 782 F.3d 571, 575 (10th Cir. 2015); *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994).

8.      If granted a *Franks* hearing, Defendants intend to question Special Agents Sarah Anderson and Agent Lisa Palmer concerning the misstatements of material fact and the omissions of material fact at the hearing.

9.      Defendants may also invoke the doctrine of *Simmons v. United States,* 390 U.S. 377 (1968) if the defendants need to testify at a *Franks* hearing.  Under *Simmons*, statements made at a hearing to enforce rights under the Fourth Amendment to the Constitution of the United States cannot be used against the defendants in the trial.  As the Tenth Circuit explained, in  *Simmons*

> the Supreme Court held that a defendant's testimony at a suppression hearing to establish standing to object to a search cannot be used against him at trial to establish guilt because otherwise, the defendant would be required to choose between the Fourth Amendment right to be free from

3

unreasonable searches and the Fifth Amendment right against self incrimination.

*United States v. Hardwell*, 80 F.3d 1471, 1483 (10th Cir. 1996).

10.     Defense counsel has conferred with opposing counsel AUSA Fields who states that the government objects to the relief requested in this motion.

WHEREFORE, Defendants Michael Tew and Kimberley Tew request that this Court grant a *Franks v. Delaware* hearing in order to establish the material misrepresentations and material omissions made by the case agents in obtaining search warrants by means of their affidavits in support of search warrants.

Respectfully submitted this 13th day of June 2022.

s/ Peter R. Bornstein

Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael Tew and Kimberley Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ Peter R. Bornstein
Peter R. Bornstein

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendants Michael Tew and Kimberley Tew state that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

s/ Peter R. Bornstein
Peter R. Bornstein

4

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **DEFENDANTS MICHAEL TEW AND KIMBERLEY TEW'S MOTION FOR A FRANKS v. DELAWARE HEARING** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

     Plaintiff,

v.

**1. MICHAEL AARON TEW**

     Defendant.

---

**DEFENDANT MICHAEL TEW'S MOTION TO SUPPRESS THE
USE OF STATEMENTS**

---

Defendant, Michael A. Tew, by his counsel of record, Peter R. Bornstein, hereby moves this Court for an order suppressing statements made by him on or about July 8, 2020 to agents of the United States government.  As grounds in support of his motion, Mr. Tew states to the Court as follows:

1.    The investigation into alleged fraudulent invoices paid by National Air Cargo (NAC) began sometime in the spring of 2020.

2.    On July 7, 2020, Jonathan Yioulos was interviewed extensively by agents of the FBI and the IRS.  He was interviewed for approximately eight hours on July 8, 2020.

3.    On July 8, 2020 around Noon, five IRS agents went to the residence of Michael Tew based on a communication from Jonathan Yioulos that Michael Tew was going to flee the country.  They were sent by an assistant U.S. Attorney to make sure he couldn't leave and to arrest him if he tried.

4.    For over an hour, IRS agents and an FBI agent engaged Mr. Tew in a conversation eliciting admissions from him while the other case agents were drafting a complaint for filing in the district court to obtain an arrest warrant.

5.    During this time, agents did not advise Mr. Tew that he was under arrest or advise him of his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436

(1966).  Instead, they lulled him into a false belief that he was not under arrest when, in fact, the agents were under orders not to let him leave his apartment in Denver.

6.    When agents received word around 4:00 p.m. that the magistrate judge in Denver had issued an arrest warrant based on a criminal complaint filed that afternoon, Mr. Tew was placed under arrest and advised of his Miranda rights thereafter.

7.    Prior to the Miranda advisement, agents of the FBI and IRS interrogated Mr. Tew and his wife about matters concerning National Air Cargo invoices and payments to him from National Air Cargo after his termination, eliciting from him admissions and incriminating evidence.

8.    The government intends to use this incriminating evidence at trial as well as additional evidence derived from the illegal interrogation of Mr. Tew on July 8, 2020.

9.    Miranda warnings are required when a suspect is in custody and is interrogated by government agents.  *United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020).  An individual is "in custody" for Miranda if he or she "has been deprived of his freedom of action in any significant way," *Miranda*, 384 U.S. at 444, or his freedom of action has been curtailed to a "degree associated with a formal arrest," *California v. Beheler*, 463 U.S. 1121, 1125, (1983). Whether a person is in custody is determined by the totality of the circumstances, and necessarily is fact intensive. *United States v. Griffin*, 7 F.3d 1512, 1518 (10th Cir. 1993).

10.    In *Wagner*, 951 F.3d 1232, 1250, the court delineated four circumstances or non-exclusive factors that informed the custody analysis:

> (1) the extent ... the suspect is made aware that he or she is free to refrain from answering questions or to end the interview at will, (2) the nature of the questioning, (3) the extent police officers "dominate the encounter, and (4) the release of the suspect at the end of the questioning. Officers may "dominate" an encounter by displaying a weapon, making physical contact, isolating the suspect in a police-controlled environment, or appearing in overwhelming numbers.

*United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020); *see also Griffin*, 7 F.3d 1512, 1518.

11.     The nature of the questioning, the domination by multiple police officers at the residence of Mr. Tew, indicate that Mr. Tew was in custody.  *See Griffin*, 7 F.3d at 1518 ("While *Terry* type investigations allow for limited questioning to confirm an officer's suspicions, prolonged accusatory questioning is likely to create a coercive environment from which an individual would not feel free to leave. Police and suspects should not have to guess as to when custody arises after a temporary stop) (internal citations omitted"). Moreover, the fact that Mr. Tew was arrested at the end of the encounter further demonstrates that he was in custody.

12.     While it is true that courts are less likely to find a person is in custody "when the interrogation occurs in familiar or at least neutral surroundings, such as the suspect's home," *United States v. Ritchie*, 35 F.3d 1477, 1485 (10th Cir.1994), whether the suspect is questioned at home is not dispositive.  *See Orozco v. Texas*, 394 U.S. 324, 326-27 (1969) (person questioned in his bedroom during the early hours of the morning was in custody for *Miranda* purposes); *see also Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996) ("More important than the familiarity of the surroundings where [the defendant] was being held is the degree to which the police dominated the scene."); *United States v. Griffin*, 922 F.2d 1343, 1354-55 (8th Cir. 1990) ("Questioning which occurs in the suspect's own home may provide a margin of comfort, but . . . the setting of the interrogation is not so important to the inquiry as the question of police domination of that setting.").

13.     The statements and the evidence derived therefrom are inadmissible.  In *United States v. Guillen*, 995 F.3d 1095, 1109-10 (10th Cir. 2021) the Court reiterated the law governing this issue.  In that case the Court said,

> The Self—Incrimination Clause of the Fifth Amendment guarantees that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. In *Miranda v. Arizona*, the Supreme Court concluded that "the process of in-custody interrogation of persons suspected or accused of crime contains inherently compelling pressures which work . . . to compel him to speak where he would not

3

otherwise do so freely." 384 U.S. 436, 467 (1966). The Court instituted measures to guard against this danger. Prior to custodial questioning, a suspect must be warned "that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires." *Id*. at 479. Without these warnings, custodial confessions are presumed to be the product of coercion and are generally inadmissible for purposes of the prosecution's case in chief.

14. Given the circumstances of the in-custody interrogation of Michael Tew on July 8, 2020, such statements elicited from him prior to obtaining and signing a Miranda warning waiver were illegally obtained.

15. As a result of the illegal interrogation of Michael Tew, all statements made by Mr. Tew must be barred from use at the trial of this case, as well as any derivative evidence obtained because of the government learning information from those statements.

16. Defense counsel has conferred with opposing counsel AUSA Fields who states that the government objects to the relief requested in this motion.

Respectfully submitted this 13th day of June 2022.

*s/ Peter R. Bornstein*

Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendant Michael Tew*

4

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*s/ Peter R. Bornstein*
Peter R. Bornstein

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendant Michael Tew states that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

*s/ Peter R. Bornstein*
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **DEFENDANT MICHAEL TEW'S MOTION TO SUPPRESS THE USE OF STATEMENTS** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  MICHAEL AARON TEW and
    2.  **KIMBERLEY ANN TEW**,
       a/ka Kimberley Vertanen,

      Defendants.

---

**GOVERNMENT'S UNOPPOSED MOTION FOR EXTENSION OF TIME TO
RESPOND TO DEFENDANT'S PRE-TRIAL MOTIONS FILED ON JUNE 13,
2022**

---

      The government respectfully moves the Court for an extension — until

August 9, 2022 — to file its responses to the defendant's motions filed on June 13,

2022.   The government has consulted with defense counsel, who has no objection to

the extension.

      As grounds for the motion the government states as follows:

      1.     Undersigned counsel is in the midst of preparing for a three week trial

in the matter of *United States v. Rudolph at al.*, 22-cr-000012-WJM,that begins on

July 11, 2022 and ends on July 28, 2022.   The trial, involving allegations of a

murder in Africa and an insurance fraud, will involve approximately 60 witnesses,

approximately 15 of whom are travelling from outside of the United States. It

1

features a host of logistical complications, as well as unique legal and factual issues that require extensive analysis.

2.      An extension will allow for the continuity of government in counsel in this matter.   The undersigned counsel who is most familiar with the case would have time, after the *Rudolph* trial, to fully assess and evaluate the defendant's motion in the overall context of the evidence.   This will best ensure effective decision-making about the case, provide time for the government to consult with defense counsel about how to proceed in this matter given the substantial legal issues raised, and also ensure that the court has available to it the best and most developed advice on how the government believes the motions should be decided. The alternatives, even with the exercise of due diligence, would be responses from government counsel not as familiar with the matter and — in such a complex case — would unreasonably affect the quality of the responses and cause harm to the United States.

3.      Conversely, the extension will not cause prejudice to the defendant or to judicial economy. Trial in this matter is set for December 5, 2022.   ECF No. 198. Fully-developed responses to the motions filed on August 9, 2022 would still allow for approximately 4 months to hold any necessary hearing and issue any written decision. Allowing an extension of time here will take full advantage of our adversarial system of justice, providing the court with fully reasoned arguments on both sides of the relevant issues and potentially increasing judicial efficiency by

2

limiting the amount of additional briefing, research, or oral argument time required to fully engage with the questions raised. To the extent this process helps clarify the issues for the court, it may actually result in *less* time spent on the motions and a more efficient allocation of resources for all parties.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By: __s/ Bryan David Fields_____
Bryan David Fields
Assistant U.S. Attorney
United States Attorney's Office
1801 California St., Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Bryan.Fields3@usdoj.gov

3

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

_/s Bryan David Fields_
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

4

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 4, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

<u>*s/ Bryan David Fields*</u>
United States Attorney's Office

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

  Plaintiff,

v.

**2. KIMBERLEY ANN TEW a/k/a**
 **Kimberley Vertanen,**

  Defendant.

---

### DEFENDANT KIMBERLEY ANN TEW'S MOTION FOR SEVERANCE

---

  Defendant, Kimberley Ann Tew, by her counsel of record, Peter R. Bornstein, hereby moves this Court for a severance pursuant to Fed. R. Crim. P. 14(a). Ms. Tew seeks a severance on two independent grounds: the *Bruton* rule, and due to prejudicial joinder. As grounds in support of her motion for a severance, Ms. Tew states to the Court as follows:

  1. Defendant, Kimberley Tew, is currently set for trial jointly with Co-Defendant, Michael Tew.

  2. Kimberley Tew is charged in twelve counts of the Indictment which is one-fourth of the sixty counts charged against her husband, Michael Tew.

  3. The parties are currently set for a joint trial on all counts.

  4. Fed. R. Crim. P. 14(a) provides that:

(a) Relief. If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires.

  5. The determination of whether to grant a severance under Rule 14 is within the sound discretion of the trial court. *United States v. Wiseman*, 172 F.3d 1196, 1211

(10th Cir. 1999). Prejudice from multiple counts against one defendant is particularly acute and dangerous. *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986) (citing studies to show joinder of counts tends to prejudice juror's perceptions of the evidence); *United States v.* Vest, 116 F.3d 1179, 1190 (7th Cir. 1997). In deciding whether to grant a severance, "the trial court must weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and the expedition in judicial administration." *United States v. Petersen,* 611 F.2d 1313, 1331 (10th Cir. 1979); *United States v. Hartman,* 194 Fed. Appx. 537, 541 (10th Cir. 2006) (in deciding whether to sever counts for trial, the court must balance the potential prejudice to the defendant of keeping the claims joined against the cost and inconvenience of holding a separate trial).

### BRUTON RULE CONSTITUIONAL GROUNDS FOR SEVERANCE

6.    The joinder of Ms. Tew with her husband Michael Tew in this case violates the *Bruton* Rule. *Bruton v. United States*, 391 U.S. 123, 126 (1968) (holding that despite instructions to the contrary, the substantial risk that the jury look to the incriminating extra judicial statements in determining [defendants] guilt by the admission of a co-defendant's confession in his joint trial violated petitioner's right of cross examination secured by the confrontation clause of the Sixth Amendment.)

7.    In this case, Defendant Michael Tew has made incriminating extra judicial statements after July 4, 2018, when the government was building a case against him. Multiple statements continued through interviews with government agents and Assistant U. S. attorneys up through the date of the indictment. These statements by Michael Tew named and incriminated Ms. Tew.

8.    At a joint trial, Ms. Tew cannot cross examine Michael Tew on these statements and subject them to the truth finding test. This will violate her rights to confrontation under the Sixth Amendment of the Constitution.

2

9.      In order to avoid the constitutional problems raised through the *Bruton*
Rule, a severance from the trial of Michael Tew is required.

## PREJUDICIAL JOINDER

10.     Although there is a preference in the federal system for joint trials of
defendants who are indicted together, *see Richardson v. Marsh,* 481 U.S. 200, 209
(1987), and *United States v. Pursley,* 577 F.3d 1204, 1215 (10th Cir. 2009), a severance
under Rule 14 should be granted "if there is a serious risk that a joint trial would
compromise a specific trial right of one of the defendants, or prevent the jury from making
a reliable judgment about guilt or innocence." *Zafiro v. United States,* 506 U.S. 534, 539
(1993); *see also United States v. Stiger,* 413 F.3d 1185, 1197 (10th Cir. 2005).

11.     In ruling on a motion for severance, the district court "must weigh the
prejudice resulting from a joint trial of co-defendants against the expense and
inconvenience of separate trials." *United States v. Morales,* 108 F.3d 1213, 1219 (10th
Cir. 1997). Although judicial economy is an important factor to be weighed, a single joint
trial of a number of co-defendants should not be had at the expense of one defendant's
right to a fundamentally fair trial. *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965).
Prejudicial joinder occurs under Rule 14 when an individual's right to a fair trial is
threatened or actually deprived. *United States v. Johnson,* 130 F. 3d 1420, 1427 (10th
Cir. 1997).

12.     The decision whether to grant severance lies within the discretion of the trial
court. *United States v. Dirden*, 38 F.3d 1131, 1140 (10th Cir. 1994); *see also United
States v. Morales*, 108 F.3d 1213, 1220 (10th Cir. 1997) ("Rule 14 leaves the
determination of risk of prejudice and any remedy for such prejudice to the sound
discretion of the district court."). In exercising its discretion, a court "must weigh
prejudice to the defendant caused by joinder against the obviously important
considerations of economy and expedition in judicial administration." *Dirden*, 38 F.3d at
1140 (quoting *United States v. Petersen*, 611 F.2d 1313, 1331 (10th Cir.1979)) (citation

3

and internal quotations omitted). Appellate courts likewise "review a trial court's denial of the motion to sever for an abuse of discretion." *United States v. Peveto*, 881 F.2d 844, 857 (10th Cir. 1989) (citing *United States v. Hayes*, 861 F.2d 1225, 1231 (10th Cir. 1988).[1] Trial courts have "a continuing duty at all stages of the trial to grant a severance if prejudice does appear." *Schaffer v. United States*, 362 U.S. 511, 516 (1960).

13.　　Where the defendant can demonstrate there is a substantial risk that the jury cannot compartmentalize the evidence against each defendant, a defendant (in this case, Ms. Tew) may be prejudiced by a joint trial.  In such case, a separate trial may be necessary.  *United States v. Lloyd*, 10 F.3d 1197, 1215 (6th Cir. 1993) (internal quotation marks and citation omitted).

14.　　There is an inherent risk of prejudice when a jury considers evidence against a defendant that is admissible only against a co-defendant and is increased when multiple defendants are tried together "in a complex case" and "have markedly different degrees of culpability." *United States v. Sarracino,* 340 F.3d 1148, 1165 (10th Cir. 2003) (quoting *Zafiro,* 506 U.S. at 539).

15.　　A severance is required in this case because of the prejudice to Ms. Tew due to the sheer number of counts against Michael Tew in a joint trial, the evidence admissible on those counts, and her different degree of culpability.

16.　　Courts often try to avoid a severance in joint trials by using jury instructions that tell the jury to only consider some evidence against one defendant but not another, or to consider some evidence with respect to a particular charge, but not to other charges.

17.　　It has been demonstrated psychologically that there is difficulty for jurors in compartmentalizing damaging information about one defendant derived from counts that do not apply to another defendant.  *Lewis*, 787 F.2d at 1321.

---

[1] Not surprisingly, all of the case law regarding the discretionary standard for determining whether to grant a severance involves post-conviction appeals by defendants, since the Criminal Appeals Act, 18 U.S.C. § 373, by its terms permits the government to take interlocutory appeals only for reasons that do not include orders granting a severance.

18.     In this case, the ability of the jurors to follow instructions that counts apply to only Mr. Tew and the evidence applicable to those counts cannot be used or considered in determining whether or not Ms. Tew is guilty of different counts also involving the alleged fraud against National Air Cargo provides prejudicial grounds for severance of her case from that of Michael Tew's case.

19.     There is also a special prejudice that arises from the joint trial involving a husband and wife.

20.     It is anticipated that the government will argue that Michael Tew and his wife discussed his conversations with co-defendant Jonathan Yioulos and discussed the individual transactions forming the basis for the claims against him.  Nevertheless, the evidence against Ms. Tew is far less than that the government intends to use against Michael Tew.

21.     The government will likely argue that husband and wives share their activities through "pillow talk" and as part of the basic relationship between them.  The jury is likely to infer that every act or transaction engaged in by Michael Tew is likely known to, approved by, or participated in by his wife, Kimberley Tew.  This is just natural.

22.     Should the jury engage in this type of inferences based on their relationship and marriage, there is a high degree of prejudice to Kimberley Tew which requires a severance of her case from Michael Tew's case.

23.     Defense counsel has conferred with opposing counsel AUSA Fields who states that the government objects to the relief requested in this motion.

24.     For the foregoing reasons, Defendant Kimberley Ann Tew respectfully requests that she be granted a separate trial in this case of the counts alleged in the Indictment against her.

5

Respectfully submitted this  13th day of June 2022.

*s/ Peter R. Bornstein*

Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendant Kimberley Ann Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*s/ Peter R. Bornstein*
Peter R. Bornstein

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendant Kimberley Ann Tew states that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

*s/ Peter R. Bornstein*
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **DEFENDANT KIMBERLEY ANN TEW'S MOTION FOR SEVERANCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.  20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

  Plaintiff,

v.

**1. MICHAEL TEW,**

  Defendant.

---

**DEFENDANT MICHAEL TEW'S MOTION FOR
THE GOVERNMENT TO FILE A JAMES PROFFER REGARDING
CO-CONSPIRATOR STATEMENTS ADMISSIBILITY PURSUANT
TO EVIDENCE RULE 801(d)(2)(E) AND FOR A *JAMES* HEARING**

---

Defendant, Michael Tew, by his counsel of record, Peter R. Bornstein, hereby moves this Court for an order requiring the government to submit a James Proffer containing the hearsay statements the government contends are admissible at trial pursuant to Fed. R. Evid. 801(d)(2)(E); and for a *James* hearing concerning the proffer. As grounds in support of her motion, Mr. Tew states to the Court as follows:

  1.  The defense anticipates that the government will seek to admit statements during the trial allegedly made by co-conspirators, Jonathan Yioulos and Kimberley Tew.

  2.  These statements would be inadmissible hearsay but for the application of Fed. R. Evid. 801(d)(2)(E) and *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) (applying the Sixth Amendment confrontation clause to out-of-court statements).

  3.  Before admitting evidence under Rule 801(d)(2)(E), "[t]he court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements were made in the course of and in furtherance of the conspiracy." *United States v. Owens*,

70 F.3d 1118, 1123 (10th Cir. 1995) (quoting *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994) (quoting *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir.1990)). *See also; United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (citing *United States v. James,* 590 F.2d 575 (5ᵗʰ Cir 1979); *United States v. Hall,* 473 F.3d 1295, 1302-03(10th Cir. 2007).

4.      Fed. R. Evid. 104(a) requires the judge alone to make the determination as to the admissibility of hearsay co-conspirator statements.  *United States v. Peterson*, 611 F.2d 1313, 1333 (10th Cir. 1979).

5.      Because of the requirement that the District Court make a threshold determination of admissibility during the presentation of the government's case in chief and before the evidence is heard by the jury, a pretrial determination is warranted. *James* 590 F.2d at 581. There are two procedures whereby the court may make this factual determination:

> (1) It may hold a "James hearing," outside the presence of the jury to determine whether the predicate conspiracy existed, or (2) it may provisionally admit the evidence with the caveat that the evidence must "connect up" during trial, i.e., that the party offering the evidence must prove the existence of the predicate conspiracy through trial testimony or other evidence. The former procedure is "strongly preferred" in this Circuit.

*Owens*, 70 F.3d at 1123 (internal citations omitted).  *See also United States v. Hernandez*, 829 F.2d 988, 992 (10th Cir. 1987) (the preferred order of proof requires the government to first introduce independent proof of the conspiracy, and then connect the defendant to the conspiracy before admitting the co-conspirator's hearsay declaration). The reason for this preference is that "if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.'" *Urena*, 27 F.3d at 1491 (10th Cir. 1994) (internal citations and quotations omitted). *See also United States v. Brewington*, No. 15-CR-00073-PAB, 2018 WL 1411274, at *1 (D. Colo. Mar. 21, 2018).

<center>2</center>

6. Following the government's serving and filing a James Proffer setting forth each and every statement that the government intends to introduce at trial from a co-conspirator, the defense is given an opportunity to challenge the government's determination that statements are either not made during or in furtherance of the conspiracy, or whether or not Mr. Tew was a member of the conspiracy at the time the statement was made.

7. Defense counsel has conferred with opposing counsel AUSA Fields who states that the government objects to the relief requested in this motion.

WHEREFORE, Defendant Michael Tew requests this Court to order the government to file a James Proffer with the Court, and thereafter to hold a James hearing on that proffer.

Respectfully submitted this 13th day of June 2022.

s/ Peter R. Bornstein

Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendant Michael Tew*

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ Peter R. Bornstein
Peter R. Bornstein

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), Defendant Michael Tew states that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

s/ Peter R. Bornstein
Peter R. Bornstein

3

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **DEFENDANT MICHAEL TEW'S MOTION FOR THE GOVERNMENT TO FILE A JAMES PROFFER REGARDING CO-CONSPIRATOR STATEMENTS ADMISSIBILITY PURSUANT TO EVIDENCE RULE 801(d)(2)(E) AND FOR A JAMES HEARING** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No.  20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**2. KIMBERLEY ANN TEW a/k/a**
**Kimberley Vertanen,**

Defendant.

---

**DEFENDANT KIMBERLEY ANN TEW'S MOTION FOR**
**THE GOVERNMENT TO FILE A JAMES PROFFER REGARDING**
**CO-CONSPIRATOR STATEMENTS ADMISSIBILITY PURSUANT**
**TO EVIDENCE RULE 801(d)(2)(E) AND FOR A *JAMES* HEARING**

---

Defendant, Kimberley Ann Tew, by her counsel of record, Peter R. Bornstein, hereby moves this Court for an order requiring the government to submit a James Proffer containing the hearsay statements the government contends are admissible at trial pursuant to Fed. R. Evid. 801(d)(2)(E); and for a *James* hearing concerning the proffer. As grounds in support of her motion, Ms. Tew states to the Court as follows:

1.      The defense anticipates that the government will seek to admit statements during the trial allegedly made by co-conspirators, Jonathan Yioulos and Michael Tew.

2.      These statements would be inadmissible hearsay but for the application of Fed. R. Evid. 801(d)(2)(E) and *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004) (applying the Sixth Amendment confrontation clause to out-of-court statements).

3.      Before admitting evidence under Rule 801(d)(2)(E), "[t]he court must determine that (1) by a preponderance of the evidence, a conspiracy existed, (2) the declarant and the defendant were both members of the conspiracy, and (3) the statements

were made in the course of and in furtherance of the conspiracy." *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995) (quoting *United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994) (quoting *United States v. Johnson*, 911 F.2d 1394, 1403 (10th Cir.1990)). *See also; United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996) (citing *United States v. James,* 590 F.2d 575 (5ᵗʰ Cir 1979); *United States v. Hall,* 473 F.3d 1295, 1302-03(10th Cir. 2007).

4.      Fed. R. Evid. 104(a) requires the judge alone to make the determination as to the admissibility of hearsay co-conspirator statements.  *United States v. Peterson*, 611 F.2d 1313, 1333 (10th Cir. 1979).

5.      Because of the requirement that the District Court make a threshold determination of admissibility during the presentation of the government's case in chief and before the evidence is heard by the jury, a pretrial determination is warranted.  *James* 590 F.2d at 581. There are two procedures whereby the court may make this factual determination:

> (1) It may hold a "James hearing," outside the presence of the jury to determine whether the predicate conspiracy existed, or (2) it may provisionally admit the evidence with the caveat that the evidence must "connect up" during trial, i.e., that the party offering the evidence must prove the existence of the predicate conspiracy through trial testimony or other evidence. The former procedure is "strongly preferred" in this Circuit.

*Owens*, 70 F.3d at 1123 (internal citations omitted).  *See also United States v. Hernandez*, 829 F.2d 988, 992 (10th Cir. 1987) (the preferred order of proof requires the government to first introduce independent proof of the conspiracy, and then connect the defendant to the conspiracy before admitting the co-conspirator's hearsay declaration). The reason for this preference is that "if the court provisionally admits a statement with the idea that the statement and other evidence will later 'connect up' showing the existence of a predicate conspiracy, there is the risk of undue prejudice if in the end the evidence does not in fact 'connect up.'" *Urena*, 27 F.3d at 1491 (10th Cir. 1994) (internal

2

citations and quotations omitted). *See also United States v. Brewington*, No. 15-CR-00073-PAB, 2018 WL 1411274, at *1 (D. Colo. Mar. 21, 2018).

6.      Following the government's serving and filing a James Proffer setting forth each and every statement that the government intends to introduce at trial from a co-conspirator, the defense is given an opportunity to challenge the government's determination that statements are either not made during or in furtherance of the conspiracy, or whether or not Ms. Tew was a member of the conspiracy at the time the statement was made.

7.      Defense counsel has conferred with opposing counsel AUSA Fields who states that the government objects to the relief requested in this motion.

WHEREFORE, Defendant Kimberley Ann Tew requests this Court to order the government to file a James Proffer with the Court, and thereafter to hold a James hearing on that proffer.

Respectfully submitted this 13th day of June 2022.

s/ Peter R. Bornstein

Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendant Kimberley Ann Tew*

### Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ Peter R. Bornstein
Peter R. Bornstein

3

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendant Kimberley Ann Tew states that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

*s/ Peter R. Bornstein*
Peter R. Bornstein

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **DEFENDANT KIMBERLEY ANN TEW'S MOTION FOR THE GOVERNMENT TO FILE A JAMES PROFFER REGARDING CO-CONSPIRATOR STATEMENTS ADMISSIBILITY PURSUANT TO EVIDENCE RULE 801(d)(2)(E) AND FOR A JAMES HEARING** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a
Kimberley Vertanen,**

Defendants.

---

**MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF
3222 EAST FIRST AVENUE, APARTMENT 224**

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby moves this Court for an order suppressing evidence derived from the search of 3222 East First Avenue, Apt. 224.  As grounds in support of this motion, Mr. and Ms. Tew state to the Court as follows:

1.     On July 31, 2020, Sarah Anderson, a special agent with FBI, applied for a search warrant to the United States District Court for the District of Colorado assigned to Magistrate Judge Michael E. Haggarty.  Attached to this application was her description of items to be searched and seized and her affidavit.  The application and affidavit are attached as **Exhibit A**.

2.     That same day, July 31, 2020, Magistrate Judge Haggarty issued a search and seizure warrant for 3222 East First Avenue, Apt. 224, Denver, Colorado and authorized seizure of items in an attached Exhibit B to the warrant.  The search and seizure warrant and Attachments A and B to the warrant are attached as **Exhibit B** to this motion.

3.     According to the description of items to be searched and seized (Attachment B to the warrant) the government was seeking to seize two cloth bags one bearing the label of Wells Fargo and an Apple iPhone device for phone number (917) 446-2046.

4.     Although the affidavit submitted in support of the search warrant contains 60 separate paragraphs, the only paragraphs making any mention of the two cloth bags one bearing the label Wells Fargo and one for an unidentified bank are found in paragraphs 40 and 41.

5.     Paragraph 40 of the affidavit is based on what Michael Tew is alleged to have stated.  The paragraph does not relate when he is alleged to have made these statements, to whom he was alleged to have made the statements, and under what circumstances he was alleged to have made the statements.

6.     Paragraph 41 describes a photo taken on July 4, 2020 at an ATM at a Navy Federal Credit Union and an alleged statement from July 28, 2020 concerning a Wells Fargo branded cloth bag stored at his shared apartment with Defendant Kimberley Tew.

7.     Other than these two paragraphs, there is no statement linking the two cloth bags to any fraudulent transaction related to the crime under investigation concerning proceeds from National Air Cargo.  There is no nexus between the bank bags, the residence, the criminal conduct, or the proceeds or evidence of criminal conduct.

8.     Nevertheless, the government seized a black Wells Fargo bag and a green Guaranty Bank and Trust Company bag during the search.  *See* receipt for property, **Exhibit C** attached.

9.     The seizure of the two banking bags was illegal as a violation of the Fourth Amendment rights to be free from unreasonable searches and seizures especially in a subject's home.  There was not nexus between the home and bank bags.

10.    In United States v. Rowland, 145 F.3d 1194,1203-04 (10th Cir. 1998) the court set forth the requirement for a nexus.  In that case the Court held:

2

> Probable cause undoubtedly requires a nexus between [the contraband to be seized or] suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990); *see also Dennis*, 115 F.3d at 530; 2 LaFave, *supra*, § 3.7(d). Probable cause to search a person's residence does not arise based solely upon probable cause that the person is guilty of a crime. Instead, there must be additional evidence linking the person's home to the suspected criminal activity. *See Hendricks*, 743 F.2d at 655; *see also United States v. Lalor*, 996 F.2d 1578, 1582-83 (4th Cir. 1993) (stating "residential searches [are] upheld only where some information links the criminal activity to the defendant's residence").

See also, United States v. Knox, 883 F.3d 1262, 1277 (10th Cir. 2018).

11.     The government did not seize the Apple iPhone device for phone number (917) 446-2046 pursuant to the search warrant issued by Magistrate Judge Haggarty.

12.     When the agents arrived at the apartment, Michael Tew was there, but not Kimberley Tew. Michael Tew immediately showed the agents the two bags.  He told the agents that Ms. Tew was not there.  He told the agents she had the iPhone.

13.     During the search, the agents conducting the search were told and, therefore, knew, that Kimberley Tew and the iPhone with number (917) 446-2046 was not in the apartment.  They knew this because Michael Tew called his wife on that phone number while the agents were conducting the search.

14.     The government did, however, search the apartment in its entirety, including all the rooms in the apartment, the drawers in the apartment, the closets in the apartment, and took pictures of their search.

15.     The agents took photographs of every room, closet, and drawer in the apartment, consisting of approximately 109 photographs.  They documented this photographic seizure of what they saw during the search on a photographic log.  The photographic log is attached as **Exhibit D**.

16.     The agents did not have authority pursuant to the search warrant to seize photographic images of the apartment, and the seizure of those photographic images exceeded the scope of the warrant issued by Magistrate Judge Haggarty.

3

17.     As a result of the illegal seizure of photographic images of the apartment, the government intends to use those photographs at the trial of this case.

18.     Accordingly, the Defendants request that this Court enter an order suppressing the 109 photographs taken at 3222 East First Avenue, Apartment 224.

19.     The Affidavit failed to establish was probable cause for the search and seizure of the items seized, and the photographs taken, within the apartment, and in executing the warrant law enforcement officers exceeded the scope of the search authorized by the warrant. *See Coolidge v. New Hampshire,* 403 U.S. 443, 467 (1971) (the warrant requirement has two distinct purposes: probable cause and limited scope). *See also Cassady v. Goering*, 567 F.3d 628 (10th Cir. 2009); *Mink v. Knox,* 613 F.3d 995, 1003 (10th Cir. 2010) (constitutional warrants must meet three conditions).

20.     Defense counsel has conferred with opposing counsel AUSA Fields who states that the government objects to the relief requested in this motion.

WHEREFORE, Defendants, Michael A. Tew and Kimberley A. Tew, requests this Court enter an order suppressing evidence derived from the search of 3222 East First Avenue, Apt. 224.

Respectfully submitted this 13th day of June 2022.

s/ Peter R. Bornstein

Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael Tew and Kimberley Tew*

4

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*s/ Peter R. Bornstein*

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendants Michael A. Tew and Kimberley Ann Tew states that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of- justice continuance expires.

*s/ Peter R. Bornstein*
Peter R. Bornstein

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day of June 2022, I electronically filed the foregoing **MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF 3222 EAST FIRST AVENUE, APARTMENT 224** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

5

# UNITED STATES DISTRICT COURT
### for the
District of Colorado

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

In the Matter of the Search of
**3222 East First Avenue, Apartment 224, Denver, Colorado 80206** more fully described in Attachment A, attached hereto, to include the person of Kimberley Tew at the time of the search warrant execution

)
)
)
)
)
)
)
)
)
)

Case No. 20-sw-00896-MEH

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the ___State and___ District of ___Colorado___ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit
The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit
The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

  X  evidence of a crime;

  X  contraband, fruits of crime, or other items illegally possessed;

  X  property designed for use, intended for use, or used in committing a crime;

  ☐  a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of ___18___ U.S.C. §§ __371, 1343, 1349, 1519, 1956, and 1957__, and the application is based on these facts:

  X  Continued on the attached affidavit, which is incorporated by reference.

  ☐  Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/    Sarah Anderson*                               .
*Applicant's signature*

Sarah Anderson, Special Agent, FBI
*Printed name and title*

Sworn to before me and:    ☐ signed in my presence.
                          ☒ submitted, attested to, and acknowledged by reliable electronic means.

Date: __07/31/2020__

*Michael E. Hegarty*
*Judge's signature*

City and state: __Denver, CO__

Michael E. Hegarty, U.S. Magistrate Judge
*Printed name and title*

EXHIBIT
A

## ATTACHMENT A

## <u>DESCRIPTION OF LOCATION TO BE SEARCHED</u>

The Subject Premises are at **3222 East First Avenue, Apartment 224, Denver, Colorado 80206,** and include the person of Kimberley Tew, an occupant of this residence. The Subject Premises are further described as a multi-family apartment building located at the southeast intersection of East First Avenue and Steele Street. The entrance to the apartment building is on East First Avenue. The Subject Premises are located within the Steele Creek apartment complex.



The apartment building has an elevator in the lobby, and the Subject Premises are on the second floor.



The place to be searched includes all rooms for the apartment unit 224 pictured and described above, including the person of Kimberley Tew, a person who resides at this apartment unit, at the time of the search warrant execution.

2

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

The following items, located at the Subject Premises that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of 18 United States Code, Sections 371, 1343, 1349, 1519, 1956, and 1957 (hereinafter "**Subject Offense(s)**") occurring between January 2018 to July 31, 2020.

A. Two cloth, or similar material, bags approximately the size of an 8.5 by 11 inches piece of paper, with one bag bearing the insignia, label or logo of Wells Fargo, and the other bearing an insignia, label, or logo of another bank.

B. An Apple iPhone device for phone number 917-446-2046, for which there is probable cause to believe contains the following items, that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of the **"Subject Offenses"**:

   1. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of **Subject Offenses**.

   2. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the Device(s) or by other means for the purpose of committing violations of **Subject Offenses**.

   3. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of **Subject Offenses**.

   4. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of **Subject Offenses**.

   5. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of **Subject Offenses** or that show who used, owned, possessed, or controlled the Device(s).

   6. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the Device(s), the location of the use of the Device, or that aid in the identification of persons involved in violations of **Subject Offenses**.

   7. Credit card information, bills, and payment records pertaining to violations of **Subject Offenses**.

   8. Documents, correspondence, records, or information, in any format or medium, relating to the transfer, purchase, sale or disposition of virtual currency or cryptocurrency.

1

9. Records, correspondence, and documents, in any format or medium, pertaining to banking, real estate, or other financial transactions, including the sale of goods, that constitute evidence of or proceeds of the Subject Offenses or the concealment or expenditure of proceeds of the Subject Offenses.

10. Any and all hidden services accounts used in furtherance of the **Subject Offenses**, including darknet market accounts, associated darknet forum accounts and Tor-based email accounts.[2]

11. Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of **Subject Offenses**.

12. Evidence of who used, owned, or controlled the Device(s) to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

13. Evidence of software that may allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

14. Evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence.

15. Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s).

16. Evidence of how and when the Device(s) were used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

17. The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the Device(s).

18. Passwords, encryption keys, and other access devices that may be necessary to access the Device(s).

19. Contextual information necessary to understand the evidence described in this attachment.

---

[2] Hidden services (.onion services) are accessed through the Tor anonymity network. Most are considered dark web services with no legitimate or identified service provider to which legal process may be served.

SW_00000095

Executing law enforcement personnel are authorized to depress the fingerprints and/or thumbprints of persons reasonably believed to be the user(s) of the Device onto the Touch ID or fingerprint sensor of any Apple iPhone, iPad, or other Apple brand device, or other device that has a fingerprint sensor, in order to gain access to the contents of any such device. Law enforcement personnel may also depress the fingerprints and/or thumbprints of persons reasonably believed to be the user(s) of the Device in order to gain access to applications on the device that may be locked with a fingerprint or thumbprint

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of one or more government attorneys and other government personnel, as needed, is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will identify and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter team believes that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team. If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.

DEFINITIONS:

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

SW_00000036

## AFFIDAVIT

I, Sarah Anderson, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1. I am a Special Agent employed by the Federal Bureau of Investigation ("FBI"), and have been since 2008 with primary investigative responsibilities involving criminal matters particularly related to economic or white collar crimes. I have participated in several fraud investigations, with many of those investigations involving wire fraud, mail fraud, money laundering and bank fraud. Prior to my employment with the FBI, I served nine years in the United States Army. My primary service in the military was as a finance officer.

2. At all times during the investigation described in this affidavit, I have been acting in my official capacity as a Special Agent with the FBI and have conducted interviews, collected and reviewed documents, and obtained information from the sources outlined in the following paragraphs as they relate to the issue of probable cause. The Internal Revenue Service's Criminal Investigation Division ("IRS-CID") is partnering with the FBI in investigating the theft of funds from National Air Cargo, a Florida company.

3. This affidavit is submitted in support of an application for a search warrant for the place described in Attachment A (hereinafter "Subject Premises,"), and the Apple iPhone for telephone number 917-446-2046 ("the Device") and two cloth bags located therein. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 United States Code §§ 371, 1343, 1349, 1519, 1956 and 1957 are located in the place described in Attachment A.

## ELECTRONIC STORAGE AND FORENSIC ANALYSIS

4. Based on my training and experience, I use the following technical terms to convey the following meanings:

5. A wireless telephone (or mobile telephone, or cellular telephone) is a handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving, and storing text messages and e-mail; taking, sending, receiving, and storing still photographs and moving video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet including websites, social media sites, bulletin boards, file sharing, and other Internet sites. Wireless telephones often have a subscriber identity module or subscriber identification module ("SIM"), which is an integrated circuit that securely stores the International Mobile Subscriber Identity ("IMSI") and the related key used to identify and

1

authenticate subscribers on mobile telephone devices. A SIM is embedded into a removable "SIM card," which can be transferred between different mobile devices. A SIM card contains a unique serial number ("ICCID"), IMSI, security authentication and ciphering information, temporary information related to the local network, a list of the services to which the user has access, and certain passwords. Most SIM cards will also store certain usage data, such as call history, text ("SMS") messages, and phone book contacts. Such telephones may also contain removable storage media, such as a flash card—such devices can store any digital data, and can have the capacity to store many gigabytes of data. Wireless telephones may also be "smartphones," such that they operate as personal computers capable of accessing the Internet. They operate as GPS navigation devices, *see below*, and can store information about where they have been. They also contain digital cameras. The camera can mark a photo with location data so that upon examination it can be determined where and when a photo was taken. These images can sometimes be recovered even if the user has deleted the image. The smartphone can also connect to the internet using wireless connections, which allow for images, files and other information to be uploaded directly to the Internet or to other digital storage devices or computers. Smartphones also have software, giving them the same capabilities as personal computers including accessing and editing word processing documents, spreadsheets, and presentations. They can also operate as a "tablet," or mobile computer, and can contain software programs called applications. Those programs can perform different functions and save data associated with those functions, including use associated with the Internet. They also operate as personal digital assistants and have contacts and calendar functions. They also can contain media such as music and other files in large quantity.

6.    Digital camera: A digital camera is a camera that records pictures as digital picture files, rather than by using photographic film. Digital cameras use a variety of fixed and removable storage media to store their recorded images. Images can usually be retrieved by connecting the camera to a computer or by connecting the removable storage medium to a separate reader. Removable storage media include various types of flash memory cards or miniature hard drives. Most digital cameras also include a screen for viewing the stored images. This storage media can contain any digital data, including data unrelated to photographs or videos.

7.    Portable media player: A portable media player (or "MP3 Player" or iPod) is a handheld digital storage device designed primarily to store and play audio, video, or photographic files. However, a portable media player can also store other digital data. Some portable media players can use removable storage media. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can also store any digital data. Depending on the model, a portable media player may have the ability to store very large amounts of electronic data and may offer additional features such as a calendar, contact list, clock, or games.

8.    A GPS navigation device uses the Global Positioning System to display its current location. It often contains records of the locations where it has been. Some GPS navigation devices can give a user driving or walking directions to another location. These devices can contain records of the addresses or locations involved in such navigation. The Global Positioning System consists of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely accurate clock. Each satellite repeatedly transmits by radio a mathematical representation of the current time, combined with a special sequence of numbers. These signals are sent by radio, using specifications that are publicly available. A GPS antenna on Earth can receive those signals. When a GPS antenna receives signals from at least four satellites, a computer connected to that antenna can mathematically calculate the antenna's latitude, longitude, and sometimes altitude with a high level of precision.

2

9.    PDA: A personal digital assistant, or PDA, is a handheld electronic device used for storing data (such as names, addresses, appointments or notes) and utilizing computer programs. Some PDAs also function as wireless communication devices and are used to access the Internet and send and receive e-mail. PDAs usually include a memory card or other removable storage media for storing data and a keyboard and/or touch screen for entering data. Removable storage media include various types of flash memory cards or miniature hard drives. This removable storage media can store any digital data. Most PDAs run computer software, giving them many of the same capabilities as personal computers. For example, PDA users can work with word-processing documents, spreadsheets, and presentations. PDAs may also include global positioning system ("GPS") technology for determining the location of the device.

10.   IP Address: An Internet Protocol address (or simply "IP address") is a unique numeric address used by computers on the Internet. An IP address is a series of four numbers, each in the range 0-255, separated by periods (e.g., 121.56.97.178). Every computer attached to the Internet computer must be assigned an IP address so that Internet traffic sent from and directed to that computer may be directed properly from its source to its destination. Most Internet service providers control a range of IP addresses. Some computers have static—that is, long-term—IP addresses, while other computers have dynamic—that is, frequently changed—IP addresses.

11.   Internet: The Internet is a global network of computers and other electronic devices that communicate with each other. Due to the structure of the Internet, connections between devices on the Internet often cross state and international borders, even when the devices communicating with each other are in the same state.

12.   Based on my training and experience, I know that the Device has capabilities that allow it to serve as a wireless telephone, digital camera, portable media player, GPS navigation device, and PDA. In my training and experience, examining data stored on devices of this type can uncover, among other things, evidence that reveals or suggests who possessed or used the device.

13.   I know from my training and experience, as well as from information found in publicly available materials published by device manufacturers, that many electronic devices, particularly newer mobile devices and laptops, offer their users the ability to unlock the device through biometric features in lieu of a numeric or alphanumeric passcode or password. These biometric features include fingerprint scanners, facial recognition features, and iris recognition features. Some devices offer a combination of these biometric features, and the user of such devices can select which features they would like to utilize.

14.   The Device is an Apple product that may be currently locked. It may be equipped with "Touch ID." A Touch ID sensor, a round button on the iPhone or iPad, can recognize fingerprints. The fingerprints authorized to access the particular device are a part of the security settings of the device and will allow access to the device in lieu of entering a numerical passcode or longer alpha-numerical password, whichever the device is configured by the user to require. The Touch ID feature only permits up to five attempts with a fingerprint before the device will require the user to enter a passcode. Furthermore, if the device is equipped with an operating system that is earlier than version 9.3, the Touch ID feature will not substitute for the use of a passcode or password if more than 48 hours have passed since the device has been unlocked; in other words, if more than 48 hours have passed since the device was accessed, the device will require the

3

SW_00000039

passcode or password programmed by the user and will not allow access to the device based on a fingerprint alone. If the operating system is version 9.3 or later, that time frame shrinks to 8 hours. Similarly, Touch ID will not allow access if the device has been turned on or restarted, if the device has received a remote lock command, or if five attempts to match a fingerprint have been unsuccessful. For these reasons, it is necessary to use the fingerprints and thumbprints of any device's users to attempt to gain access to any Apple devices found at the Subject Premises while executing the search warrant. The government may not be able to obtain the contents of the Apple devices if those fingerprints are not used to access the Apple devices by depressing them against the Touch ID button. Although I do not know which of the ten finger or fingers are authorized to access on any given Apple device and only five attempts are permitted, I know based on my training and experience that it is common for people to use one of their thumbs or index fingers for Touch ID, and in any event all that would result from successive failed attempts is the requirement to use the authorized passcode or password.

15. Similarly, in my training and experience I know that some applications loaded onto mobile devices or other electronic devices may be secured by the user with a thumbprint or fingerprint. Common among these types of applications are applications such as mobile banking apps or other financial applications, password storage applications, and secure communications apps, among others.

16. Further, if a device is equipped with a facial-recognition feature, a user may enable the ability to unlock the device through his or her face. For example, this feature is available on certain Android devices and is called "Trusted Face." During the Trusted Face registration process, the user holds the device in front of his or her face. The device's front-facing camera then analyzes and records data based on the user's facial characteristics. The device can then be unlocked if the front-facing camera detects a face with characteristics that match those of the registered face. Facial recognition features found on devices produced by other manufacturers (such as Apple's "Face ID") have different names but operate similarly to Trusted Face.

17. On July 28, 2020, Michael Tew provided me and other law enforcement officers what he believes to be the passcode for the Device. Kimberley Tew is, however, aware of the investigation because she was present when her husband was arrested on or around July 8, 2020 on a criminal complaint for violation of 18 United States Code, Section 1956. Kimberley Tew also knows that her husband Michael Tew has spoken with law enforcement officers on at least three occasions since his arrest. Her knowledge of the investigation and related actions are more fully described in the "Probable Cause" section of the affidavit below. There is reason to believe that Kimberley Tew may have changed her passcode.

18. Due to the foregoing, I am informing the Court that if law enforcement personnel encounter any Device(s) that are subject to seizure pursuant to the requested warrant and may be unlocked using one of the aforementioned biometric features, law enforcement personnel intends to obtain from Kimberley Tew the display of any physical biometric characteristics (such as fingerprint/thumbprint or facial characteristics) necessary to unlock any Device(s), including to (1) press or swipe the fingers (including thumbs) of Kimberley Tew to the fingerprint scanner of the Device(s) found at the Subject Premises; and/or (2) hold the Device(s) found at the Subject Premises in front of the face of Kimberley Tew to activate the facial recognition feature for the purpose of unlocking the Device(s) in order to search the contents as authorized by this warrant.

4

19. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time. Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device. This information can sometimes be recovered with forensics tools.

20. *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information on the Device(s) that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device(s) were used, the purpose of the use, who used the Device(s), and when. There is probable cause to believe that this forensic electronic evidence might be on the Device(s) because:

    A. Data on the storage medium can provide evidence of a file that was once on the storage media but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

    B. Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

    C. A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

    D. The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

    E. Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

21. Nature of examination. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

22. I know from training and experience that digital storage devices can be very large in capacity, yet very small in physical size. Additionally, from training and experience, I know that those who are in possession of such devices also tend to keep them on their persons, especially when they may contain contraband or other evidence of a crime. The storage capacity of such devices can be as large as tens of gigabytes in size, which allows for the storage of thousands of images and videos as well as other digital information such as calendars, contact lists, programs and text documents. Such storage devices can be smaller than a postage stamp in size, which allows them to be easily hidden in a person's pocket.

5

## CRYPTOCURRENCY

23.   Digital currency, such as Bitcoin, is a cryptocurrency and worldwide payment system. Cryptocurrency is decentralized as the system works without a central bank or single administrator. The system also uses strong cryptography to secure financial transactions, control the creation of additional units, and verify the transfer of assets. The network is peer-to-peer, and transactions take place between users directly, without an intermediary. These transactions are verified by network nodes through the use of cryptography and recorded in a public distributed ledger called a blockchain. Every Bitcoin transaction that occurs in the entire payment network, for example, is recorded on the blockchain.

24.   There are various types of cryptocurrency. Individuals store information about their cryptocurrency, for example Bitcoin, in a Bitcoin virtual "wallet," which acts as a Bitcoin equivalent of a bank account. Bitcoin wallets have a private key and a public key, which is commonly known as the wallet address. Bitcoin wallets are largely electronic in nature and may be stored on mobile devices, external or removable media, or computers. Passwords for access to electronic wallets are typically complex and are often written down or saved in a readily accessible manner on paper, in a notebook, or on some electronic device. The public key is an auto-generated alphanumeric characters that when used together with a private key or password will open a wallet and allow funds to be sent or received. The public key can be provided to individuals who wish to consummate transactions with Bitcoin. The public wallet addresses for both ends of a transaction, or public key, are recorded on the blockchain when a transaction is processed.

25.   Individuals conducting cryptocurrency transactions must use a computer or other electronic device, such as a smartphone, computer or electronic tablet, and/or computer to conduct transactions involving Bitcoin. Such devices are also necessary to access and conduct transactions on a Darknet marketplace, which in my training and experience provides the anonymity that facilitates illicit activity like money laundering

26.   Much like traditional banking automated teller machines (ATMs), Bitcoin ATMs allow the deposit of fiat currency like United States dollars which can then immediately be converted into Bitcoin for specific wallets. In order to deposit fiat currency into a Bitcoin ATM and receive Bitcoin in return for the fiat currency, the ATM user must have a destination wallet address.

## PROBABLE CAUSE

27.   During some portion of time between 2015 and September 2018, MICHAEL AARON TEW (M. TEW) served as a contracted chief financial officer (CFO) for a Florida company, which also has operations in New York, named National Air Cargo (NAC). He was a contractor for NAC rather than an employee. Between at least 2015 and present, he has resided in Colorado with his wife Kimberley Tew (nee Ventanen) (K. TEW). M. TEW and K. TEW share an apartment with their two minor children at 3222 East First Avenue, Apartment 224, Denver, Colorado 80206. On July 8, 2020, M. TEW was arrested on a criminal complaint for violation of Title 18 of the United States Code, Section 1956(h). K. TEW was present at the apartment for this encounter with law enforcement officers.

28.   During the time M. TEW served as the contracted CFO for NAC, M. TEW was not paid directly by NAC for his services. Rather, he billed NAC and was paid by NAC through a single-member LLC, of which he was the only member. The name of that entity was Sand Hill LLC ("Sand Hill") and it was established by M. TEW in or around July 2012.

6

29. In or around September 15, 2018, NAC fired M. TEW for, *inter alia,* unauthorized use of a corporate credit card. The unauthorized use began in or around June 2018. According to NAC, the corporate credit card issued to M. TEW was being used to purchase approximately $45,000 of gift cards in round dollar amounts. In an interview with law enforcement officers in July 2020, M. TEW stated that he purchased those gift cards so that they could be easily, and largely anonymously, sold for cryptocurrency such as Bitcoin.

30. On July 1, 2020, the co-owner of NAC, Christopher Alf, and the Director of Accounting, Abby Schwartz, both advised that TEW's contractor agreement was terminated by NAC for several reasons. One reason was that Schwartz, with the input and assistance of others, determined that charges made by TEW on a corporate American Express card were fraudulent. The gift card charges were unauthorized and served no legitimate business purpose for NAC. Alf and Schwartz further advised that, since TEW's September 15, 2018 termination, NAC has had no further legitimate business dealings or contracts with M. TEW or K. TEW.

31. Between no later than August 2018 and present, M. TEW conspired with K. TEW and others known and unknown to engage in a scheme to commit wire fraud, to engage or attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 that derived from a scheme to defraud NAC via wire, and to knowingly conduct or attempt to conduct a financial transaction designed to conceal or disguise the nature, location, source, ownership or control of proceeds of the wire fraud.

32. Based on the investigation to date, this fraud began while M. TEW was still employed at NAC. In the summer of 2018, M. TEW directly or indirectly caused invoices to be submitted that falsely claimed the provision of services to NAC, or at the very least, overstated the amount of services. Based on the investigation to date, those invoices were submitted directly or indirectly to the then-Director of Finance for NAC, Jonathon Yioulos, who approved and then directly or indirectly executed the payment. Mr. Yioulos was initially interviewed on or around July 7 and 8, 2020. Based on the investigation to date, in the beginning of the conspiracy and scheme to defraud, payments were tendered directly to companies named Hannah Scaife CPAs LLC ("Scaife"), Meyers Consulting Group, Inc. (Meyers) and 5530 Jessamine Development LLC ("Jessamine"). Mr. Yioulos stated that he processed a payment during this time to Jessamine and said he later learned from M. TEW that the payment was fraudulent as Jessamine had not provided services to NAC, or at least not in the amount claimed.

33. After Tew's termination and beginning in or around December 2018 through June 2020, invoices were tendered to NAC on behalf of three companies named Global Fuel Logistics (GFL), Aero Maintenance Resources (AMR), and Political Media (PM). These three entities received payments from NAC in the amount of more than $4.5 million in the aggregate. Invoices from these companies referenced purported services such as "[b]usiness [c]onsulting," "fuel modification inspection & research," and "[m]aintenance." The payments to these three entities were executed through wires or Automated Clearinghouse (ACH) transactions. Many of the wires and ACH payments from NAC were made into accounts owned and controlled by M. TEW and, sometimes also by his wife K. TEW. Some of the accounts were business accounts belonging to Global Fuel Logistics or GFL, but other accounts were personal accounts belonging to M. TEW or K. TEW.

34. The invoices from GFL, AMR and PM were also fraudulent because they were for goods and services NAC never received. Moreover, according to NAC, GFL, AMR and PM were not properly approved vendors for NAC. On July 1, 2020, NAC's co-owner, Mr. Alf, advised that he was unaware of the fact of payments being directed to accounts either directly owned by M. TEW and K. TEW, or indirectly controlled by them. That same day, Mr. Alf stated that he was

7

also unaware at the time the payments were being made about the total amount of payments to these entities. The first payment to one of these three entities was made in or around December 2018 and the most recent payment was made by NAC on or around July 3, 2020. These are the payments to GFL, AMR, and PM known as of this time. There may be additional fraudulent payments to other entities for the benefit of M. TEW and/or K. TEW beyond the three entities identified above as well as additional payments to the three entities listed.

35. According to Mr. Yioulos, M. TEW, and at times K. TEW as well, continued to ask and demand that he process fraudulent invoices, even after M. TEW's employment at NAC was terminated. Mr. Yioulos described that between June 2018 and early July 2020, K. TEW contacted him via phone and/or text on multiple occasions. Mr. Yioulos described telling M. TEW that he had attempted to block K. TEW on his phone, but that she still was able to get through by using other phone numbers. Mr. Yioulos stated that M. TEW and K. TEW threatened to alert NAC about Mr. Yioulos's prior payment of fraudulent invoices and that such disclosure could threaten Mr. Yioulos's continued employment. Mr. Yioulos relayed that on one occasion, K. TEW directly contacted his now ex-wife via LinkedIn which Mr. Yioulos interpreted as a way for K. TEW to show Mr. Yioulos that she had access to his family. K. TEW, using the phone number 469-319-0152, also contacted Mr. Yioulos by text message on July 1, 2020, to request additional money from NAC. Through this investigation, I have learned that this 469-319-0152 phone number is issued by Google Voice. Google Play provides the following description of Google Voice: "Google Voice gives you a phone number for calling, text messaging, and voicemail. It works on smartphones and computers, and syncs across your devices so you can use the app in the office, at home, or on the go." https://www.businessinsider.com/what-is-google-voice-how-to-set-up-use (last accessed on July 30, 2020). According to M. TEW, K. TEW used Google Voice.

36. Mr. Yioulos also stated that while he exchanged various cryptocurrency with M. TEW and/or K. TEW at various points during this scheme, he only retained a few Bitcoin for his own personal benefit. Similarly, Mr. Yioulos stated that M. TEW and/or his wife K. TEW offered him season tickets to the Buffalo Bills for his assistance with the execution of this fraud, but he declined as he already had season tickets. M. TEW also stated that he may have offered to pay down some portion of Mr. Yioulos's student loans but that no such payments were made.

37. At some point after 2016, Mr. Yioulos assumed the role of Controller at NAC but maintained his responsibilities as the Director of Finance. He was TEW's point of contact at NAC between late 2018 and present. He was terminated by NAC on July 7, 2020.

38. Mr. Yioulos stated that M. TEW used the phone numbers 917-685-1312 and 917-669-7473 to communicate with him from at least June 2018 to present. According to Mr. Yioulos, M. TEW used the two phone numbers interchangeably, and their primary means of communication to discuss, execute, and cover up the fraud was via text message and telephone calls on these two phone numbers. M. TEW stated that he used the phone numbers 917-685-1312 and 917-669-7473 interchangeably to communicate with his wife K. TEW at 917-446-2046 about the particulars of the fraud and conspiracy.

39. Based on our investigation to date, TEW and his wife K. TEW maintained a complex and ever-revolving network of bank accounts into which the NAC funds were deposited. Once the NAC funds were deposited, those funds, in large part or in their entirety, were either withdrawn in cash or otherwise wired or transferred to other accounts and often, ultimately, into various cryptocurrency exchanges. Many of the cash amounts withdrawn, often with multiple cash withdrawals a day by M. TEW and sometimes by K. TEW, were then deposited into Bitcoin ATMs like those operated by Digital Vending Solutions d/b/a XBTeller and Digital Mint. M. TEW and K. TEW also used other Bitcoin ATM vendors. M. TEW often made or caused to be

8

SW_00000044

made multiple withdrawals and deposits into Bitcoin ATMs in one day in lower dollar amounts. According to M. TEW, K. TEW did not initially have an account at XBTeller and Digital Mint because she did not possess a valid driver's license and they believed that the companies required a driver's license. That changed in the last several months as Digital Mint advised M. TEW that he could add K. TEW to his account and she has since deposited cash sourced from an account that received proceeds from NAC, directly or indirectly, into a Bitcoin ATM. M. TEW stated that on many occasions when he deposited the cash proceeds from traditional bank accounts into a Bitcoin ATM like XBTeller and Digital Mint, K. TEW texted him at one of his two phone numbers from 917-446-2046 to provide him the various wallet addresses for the cryptocurrency side of the transaction or a picture of the QR code[1] and/or wallet address. K. TEW also used the phone number 917-446-2046 to communicate with M. TEW, often by text, about the amount and destination of proceeds from NAC into other traditional bank accounts controlled or operated by, directly or indirectly, M. TEW and K. TEW.

40. M. TEW stated he used two bags interchangeably to carry cash withdrawn from traditional bank accounts that received proceeds from NAC. M. TEW stated he had two bags, one from Wells Fargo and one that he believed was from Guarantee Bank and Trust. M. TEW stated the banks sometimes provided these bags when customers withdraw large amounts of cash. Video footage from XBTeller on March 27, 2020 shows M. TEW holding a black cloth bag, approximately the size of an 8.5 by 11 inches piece of paper, while he feeds cash into one of XBTeller's Bitcoin ATMs. M. TEW zips the bag closed and carries the bag away from the Bitcoin ATM at the end of the transaction.

41. On July 4, 2020, M. TEW is pictured in photos taken at approximately 4 p.m. at an ATM at a Navy Federal Credit Union. He is pictured carrying a black cloth bag, approximately the size of an 8.5 by 11 inches piece of paper, with "Wells Fargo" written on the front. Based on Navy Federal Credit Union's records, M. TEW withdrew cash funds from several accounts including, but not limited to, 7088874917, 7095660572, 7095660556 and 7095660481 between 4 and 4:30 p.m. that day. On July 28, 2020, M. TEW stated that the Wells Fargo branded cloth bag along with the Guarantee Bank and Trust cloth bag are stored at his shared apartment with K. TEW.

42. M. TEW stated that he believed K. TEW also conducted cryptocurrency and gambling transactions on the Device. M. TEW stated that the need for money between 2018 and present was related, in part, to K. TEW's gambling. He stated that sometimes she was winning and sometimes she was losing with respect to her gambling. M. TEW stated that K. TEW took loans out from other individuals she encountered on the Internet to finance, in part, her gambling. Based on the investigation to date, K. TEW has accounts, whether active or inactive/closed, at the following non-exhaustive list of entities: Coinbase, Gemini Trust Company, Simple, Google Payments, PayPal, Navy Federal Credit Union, TD Bank, JP Morgan Chase, and M. TEW has accounts at Payward Ventures d/b/a Kraken, Coinbase, Circle, Gemini Trust Company, Navy Federal Credit Union, Simple, Colorado State Bank and Trust, and JP Morgan Chase. M. TEW stated that while he has a Kraken (cryptocurrency exchange) account, K. TEW operated that account. M. TEW also stated that K. TEW operated on LocalBitcoins.com, but he was not sure whether she operated an account under her name, his name, or both. According to M. TEW, K. TEW also operated an account in his name with Paxful, another cryptocurrency exchanger.

---

[1] According to online website "Cryptocurrency Facts,""[a] QR code is a simple, fast, and secure way to share an address when transferring cryptocurrency between two devices. This is especially useful in face-to-face point-of-sale transactions, because copy and paste isn't an option and it avoids having to type in very long codes by hand (if you get even one character wrong, it won't work)." *Available at* https://cryptocurrencyfacts.com/using-qr-codes-to-send-crypto/ (last accessed on July 30, 2020).

SW_00000045

43.　On July 28, 2020, I, along with other law enforcement officers, spoke with M. TEW. He advised that both he and K. TEW accessed the fraudulent proceeds from NAC in a variety of bank accounts. According to M. TEW, the proceeds were used to repay debts owed by the family, in particular K. TEW gambling or trading related debts, and/or he and K. TEW would convert the fiat currency proceeds into cryptocurrency like Bitcoin. M. TEW said that K. TEW often used text messaging from the telephone number 917-446-2046 to provide him instructions on one or both of his phone numbers related to the transfer or other disposition of NAC funds.

44.　On July 28, 2020, M. TEW provided visual access to his text messages for approximately 1.5 hours to me and other law enforcement officers. We were able to capture some screenshots of those text messages and observed communications between M. TEW and 917-446-2046, a phone number associated with K. TEW related to the transfer of funds, both fiat currency and cryptocurrency.

45.　For example, on August 27, 2019, M. TEW and K. TEW communicated as follows:

    F.　M. TEW: "Btc hit let me know what you want"
    G.　K. TEW "Sell 2km"
    H.　K. TEW "And transfer to NFCU"
    I.　M. TEW "dsone"
    J.　K. TEW "Can you send rest to below
              1JdPtwSPRt2AykDaJWY7GQMhibTr65yJR"
    K.　M. TEW "Done"
    L.　K. TEW "Can you send me another cb btc wallet address for you please"

46.　In my training experience and based on the investigation to date, "btc" refers to Bitcoin, "NFCU" refers to Navy Federal Credit Union, the bank that held accounts into which NAC's money was directly transferred, the long alphanumeric string refers to a potential wallet address, and "cb" refers to Coinbase, another cryptocurrency exchange platform.

47.　I also reviewed the following January 13, 2020 text exchange between one of M. TEW's two phone numbers and 917-446-2046, a phone number associated with K. TEW:

    A.　K. TEW: "Pls tell me you have good news since today is the day I need to pay my Amex"
    B.　M. TEW: "The accounts overdrawn they're talking about bankruptcy their not paying anyone there is no payment schedule yet this week we think something will come in next day or two and he'll send as much as he can – let's just get everything we can out of The bank and double down to focus on paying your AMEX"
    C.　K. TEW: "Ok"
    D.　M. TEW: "No other choice"
    E.　K. TEW: "Wouldn't bk be bad because everything comes out"
    F.　M. TEW: "Yes"
    G.　M. TEW: "Well maybe"
    H.　M. TEW: "Not necessarily"
    I.　M. TEW: "Just a restructuring of the outstanding debt"
    J.　K. TEW: "Yes the trustee would contact"
    K.　M. TEW: "Only if there was a payable"
    L.　M. TEW: "Bills already paid are on a diff list"
    M.　M. TEW: "But the balance sheet is frozen in time at that point and nothing goes in nothing goes out"

SW_00000046

48.     In my training and experience and my knowledge of this investigation, "bk" refers to bankruptcy.

49.     In another text exchange between M. TEW and 917-446-2046, a phone number associated with K. TEW, I observed that on January 17, 2020, M. TEW sent K. TEW several screenshots of text messages between M. TEW and a contact listed as "Jonathan." M. TEW stated on July 28, 2020 while we reviewed these text messages that "Jonathan" referred to Jonathan Yioulos. Mr. Yioulos is NAC's former Director of Finance. The screenshots shared by M. TEW with K. TEW contain the following messages from Mr. Yioulos to M. TEW:

   A.  Yioulos: "I don't really know what to tell you"
   B.  Yioulos: "It's not like I'm lying"
   C.  Yioulos: "I can't make money appear out of nowhere"
   D.  Yioulos: "You're being super unreasonable"
   E.  Yioulos: "Over $2MM out by this point. And she's flipping out right now?"
   F.  Yioulos: "Let's get realistic. I told you Tuesday. I can guarantee that. That's the best I can do"
   G.  Yioulos: [photo of a calculated negative balance]
   H.  Yioulos: "Yes, I'm really lying"
   I.  Yioulos: "I can't send money without having the knowledge more is coming in. I can send Monday for Tuesday, as I've communicated. If I knew money was <u>coming Monday</u>, I might be able to float it, but I don't have that knowledge" (emphasis in original)

50.     In my review of text messages between M. TEW and K. TEW as provided to us by M. TEW on July 28, 2020, I also observed screenshots of QR codes between K. TEW and M. TEW that indicate additional cryptocurrency transactions.

51.     The following text exchange on September 13, 2019 preceded M. TEW sending K. TEW multiple screenshot confirmations of deposits of cash into a Bitcoin ATM:

   M.  M. TEW: "In car now"
   N.  K. TEW: "I want to get 15K of btc"
   O.  M. TEW: "Ok
   P.  M. TEW: You need me to go to bank?"
   Q.  K. TEW: "Yes
   R.  K. TEW: How else would I get it"
   S.  M. TEW: "Right I forgot its at wells no prob"

52.     In another of the text exchanges that we were able to screenshot on July 28, 2020, I observed that M. TEW sent K. TEW an iMessage on September 15, 2019 of what appeared to be a ledger identifying multiple financial transactions with a third party. This ledger was titled MMora KT 9_15_2019 and is an Excel file. It appeared to include both fiat currency transactions as well as cryptocurrency transactions.

53.     On July 29, 2020, I attended a meeting with M. TEW in a public space near his shared home with K. TEW to effectuate a consensual extraction of images from M. TEW's two iPhones. M. TEW advised that when he was getting dressed to walk over to meet with me and the other law

11

enforcement officers, K. TEW took both of his phones. He stated that he believes she may have deleted some text messages from or to her, but he is not sure what she deleted. In the middle of the extraction of the forensic images of M. TEW's phones, K. TEW located M. TEW speaking with me and other law enforcement officers. She repeatedly stated that M. TEW should take his phone and leave with her. K. TEW indicated that reviewing the cell phones would not yield results because she said something akin to she had "already wiped most of it." K. TEW also made statements indicating that the intent of her actions was to take responsibility for the fraudulent payments originating at NAC in order to allow M. TEW to remain out of custody in order for him to parent their children. M. TEW chose to leave with K. TEW and one phone that had already been extracted, but M. TEW authorized agents to continue with the extraction of the second phone and to deliver that second phone to his apartment building, a few blocks away.

54. Prior to departing the meeting, K. TEW was heard stating that she has something on tape. As K. TEW left the meeting location I witnessed her speaking into a handheld device and appear to make a recorded observation.

55. K. TEW's phone number 917-446-2046 was listed as a telephone record for the following Navy Federal Credit Union bank accounts numbers, all or most of whom received fraudulent payments from NAC, either directly or indirectly, and associated with either M. TEW or K. TEW: 7085338486, 7085403009, 7088874602, 7088874917, 7095660481, 7095660556, 7095660572, 7104374405, 7104374496, 3106359148, 3106229457.

56. According to M. TEW and also based on what we have learned in the investigation to date, K. TEW is a savvy user of cryptocurrency. According to M. TEW, she also uses encrypted messaging applications like WhatsApp and Telegram to communicate about, *inter alia*, various cryptocurrency transactions. She also uses payment methods like Google Payments, Zelle, and PayPal.

57. In my training and experience, I have learned that telephone communication by cell phone is often used to conduct financial transactions, whether through traditional banking institutions or for cryptocurrency accounts.

## REQUEST FOR SEALING

58. It is respectfully requested that this Court issue an order sealing, until further order of the Court, all papers submitted in support of this application, including the application and search warrant. I believe that sealing this document is necessary because the warrant is relevant to an ongoing investigation into criminal activity and not all of the potential co-conspirators in this scheme will be searched at this time. Based upon my training and experience, I have learned that online criminals actively search for criminal affidavits and search warrants via the internet, and disseminate them to other online criminals as they deem appropriate, i.e., post them publicly online through the carding forums. Premature disclosure of the contents of this affidavit and related documents may have a significant and negative impact on the continuing investigation and may severely jeopardize its effectiveness.

## CONCLUSION

59. I submit that this affidavit supports probable cause for a warrant to search the Subject Premises described in Attachment A, and seize the items described in Attachment B.

SW_00000048

CaSase20as4:22a9e0DB3559DMDEDDcoDrorame62231-1Fit=Fileda006/024/2362PLJSBaCGeoaRach19 504of119346

60.     I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items described in Attachment A for the items listed in Attachment B.

I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

s/ Sarah Anderson
Sarah Anderson
Special Agent, Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this ___31st___ day of _____July_____ 2020.

_____
UNITED STATES MAGISTRATE JUDGE MICHAEL HEGARTY

Application for search warrant was reviewed and is submitted by Assistant United States Attorney Hetal J. Doshi.

SW_00000049

AO 93 (Rev. 11/13) Search and Seizure Warrant

# UNITED STATES DISTRICT COURT
for the
District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. 20-sw-00896-MEH |
| In the Matter of the Search of **3222 East First Avenue, Apartment 224, Denver, Colorado 80206** more fully described in Attachment A, attached hereto, to include the person of Kimberley Tew at the time of the search warrant execution | ) ) ) ) ) ) | |

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the ___State and___ District of ___Colorado___ *(identify the person or describe the property to be searched and give its location)*:

**SEE "ATTACHMENT A"** attached hereto and incorporated by reference

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"** attached hereto and incorporated by reference

I find that the affidavit(s), or any recorded testimony, establishes probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before ___August 14, 2020___ *(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to ___Michael E. Hegarty___.
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30).*   ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: ___07/31/2020, 11:03 am___

*Michael E. Hegarty*
*Judge's signature*

City and state: ___Denver, CO___

Michael E. Hegarty, U.S. Magistrate Judge
*Printed name and title*

EXHIBIT
B

SW_00000050

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name of any person(s) seized: |
|---|

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

**DESCRIPTION OF LOCATION TO BE SEARCHED**

The Subject Premises are at **3222 East First Avenue, Apartment 224, Denver, Colorado 80206,** and include the person of Kimberley Tew, an occupant of this residence. The Subject Premises are further described as a multi-family apartment building located at the southeast intersection of East First Avenue and Steele Street. The entrance to the apartment building is on East First Avenue. The Subject Premises are located within the Steele Creek apartment complex.



The apartment building has an elevator in the lobby, and the Subject Premises are on the second floor.



     The place to be searched includes all rooms for the apartment unit 224 pictured and described above, including the person of Kimberley Tew, a person who resides at this apartment unit, at the time of the search warrant execution.

SW_00000063

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

The following items, located at the Subject Premises that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of violations of 18 United States Code, Sections 371, 1343, 1349, 1519, 1956, and 1957 (hereinafter "**Subject Offense(s)**") occurring between January 2018 to July 31, 2020.

A. Two cloth, or similar material, bags approximately the size of an 8.5 by 11 inches piece of paper, with one bag bearing the insignia, label or logo of Wells Fargo, and the other bearing an insignia, label, or logo of another bank.

B. An Apple iPhone device for phone number 917-446-2046, for which there is probable cause to believe contains the following items, that constitute evidence of the commission of, contraband, the fruits of crime, or instrumentalities of the "**Subject Offenses**":

1. Any and all information, notes, software, documents, records, or correspondence, in any format and medium, pertaining to violations of **Subject Offenses**.

2. Any and all address books, names, and lists of names and addresses of individuals who may have been contacted by use of the Device(s) or by other means for the purpose of committing violations of **Subject Offenses**.

3. Any and all information, records, documents, invoices and materials, in any format or medium, that concern any accounts with an Internet Service Provider pertaining to violations of **Subject Offenses**.

4. Any and all information, records, documents, invoices and materials, in any format or medium, that concern e-mail accounts, online storage, or other remote computer storage pertaining to violations of **Subject Offenses**.

5. Records of Internet activity, including Internet Protocol addresses, firewall logs, transactions with Internet hosting providers, co-located computer systems, cloud computing services, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses pertaining to violations of **Subject Offenses** or that show who used, owned, possessed, or controlled the Device(s).

6. Any and all information, documents, records, photos, videos, or correspondence, in any format or medium, pertaining to use or ownership of the Device(s), the location of the use of the Device, or that aid in the identification of persons involved in violations of **Subject Offenses**.

7. Credit card information, bills, and payment records pertaining to violations of **Subject Offenses**.

8. Documents, correspondence, records, or information, in any format or medium, relating to the transfer, purchase, sale or disposition of virtual currency or cryptocurrency.

1

SW_00000094

9.      Records, correspondence, and documents, in any format or medium, pertaining to banking, real estate, or other financial transactions, including the sale of goods, that constitute evidence of or proceeds of the Subject Offenses or the concealment or expenditure of proceeds of the Subject Offenses.

10.     Any and all hidden services accounts used in furtherance of the **Subject Offenses**, including darknet market accounts, associated darknet forum accounts and Tor-based email accounts.[2]

11.     Descriptions of time, date, locations, items, or events showing or tending to show the commission of, or connecting or tending to connect a person to violations of **Subject Offenses**.

12.     Evidence of who used, owned, or controlled the Device(s) to commit or facilitate the commission of the crimes described, or at the time the things described in this warrant were created, edited, or deleted, including photographs, videos, logs, call logs, phonebooks, address books, contacts, IP addresses, registry entries, configuration files, saved usernames and passwords, documents, calendars, browsing history, search terms, metadata, user profiles, e-mail, e-mail contacts, messages (text or voice), instant messaging logs, file structure and correspondence.

13.     Evidence of software that may allow others to control the Device(s), such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security provisions or software designed to detect malicious software or unauthorized use of the device, and evidence of the lack of such malicious software.

14.     Evidence of the attachment to the Device(s) of other storage devices or similar containers for electronic evidence.

15.     Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the Device(s).

16.     Evidence of how and when the Device(s) were used or accessed to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

17.     The telephone number, ESN number, serial number, and/or SIM card numbers of or contained in the Device(s).

18.     Passwords, encryption keys, and other access devices that may be necessary to access the Device(s).

19.     Contextual information necessary to understand the evidence described in this attachment.

---

[2] Hidden services (.onion services) are accessed through the Tor anonymity network. Most are considered dark web services with no legitimate or identified service provider to which legal process may be served.

2

Executing law enforcement personnel are authorized to depress the fingerprints and/or thumbprints of persons reasonably believed to be the user(s) of the Device onto the Touch ID or fingerprint sensor of any Apple iPhone, iPad, or other Apple brand device, or other device that has a fingerprint sensor, in order to gain access to the contents of any such device. Law enforcement personnel may also depress the fingerprints and/or thumbprints of persons reasonably believed to be the user(s) of the Device in order to gain access to applications on the device that may be locked with a fingerprint or thumbprint

This warrant authorizes a review of electronic storage media and electronically stored information seized or copied pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the seized or copied electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

If the government identifies seized communications to/from an attorney, the investigative team will discontinue review until a filter team of one or more government attorneys and other government personnel, as needed, is established. The filter team will have no previous or future involvement in the investigation of this matter. The filter team will identify and segregate communications to/from attorneys, which may or may not be subject to attorney-client privilege. At no time will the filter team advise the investigative team of the substance of any of the communications to/from attorneys. The filter team then will provide all communications that do not involve an attorney to the investigative team, and the investigative team may resume its review. If the filter team believes that any of the communications to/from attorneys are not actually privileged (e.g., the communication includes a third party), and if the investigation is not covert, the filter team will first seek to obtain agreement from the appropriate defense counsel before providing these attorney communications to the investigative team. If consulting with defense counsel is not possible or does not produce an agreement, the filter team will obtain a court order before providing these attorney communications to the investigative team.

<u>DEFINITIONS:</u>

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been created or stored, including any form of computer or electronic storage (such as hard disks or other media that can store data); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, or photocopies).

3

AO 93 (Rev. 11/13) Search and Seizure Warrant (Page 2)

| Return | | |
|---|---|---|
| Case No.: | Date and time warrant executed: 07/31/2020 1:05 pm | Copy of warrant and inventory left with: Michael Tew |
| Inventory made in the presence of : John Stauder | | |
| Inventory of the property taken and name of any person(s) seized: | | |

Item #1 – Black Wells Fargo Bag

Item #2 – Green Guaranty Bank and Trust Company Bag

NOTHING FOLLOWS

**FILED**
**UNITED STATES DISTRICT COURT**
**DENVER, COLORADO**
10:02 am, Aug 14, 2020
**JEFFREY P. COLWELL, CLERK**

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: 08/03/2020

_____
_Executing officer's signature_

SA Sarah Anderson, FBI
_Printed name and title_

EXHIBIT

C



FD-674a (7-24-2017)

**FBI**

DATE 07 / 31 / 2020

CASE ID 318A - DN - 305328 /

PHOTOGRAPHER John Stauder

LOCATION 3222 East First Avenue

Apartment 229

Denver, Colorado 80206

EXHIBIT

D

SW_00039557

FD-674a (7-24-2017) **ERT PHOTOGRAPHIC LOG** PAGE __1__ OF __4__

| GENERAL INFORMATION |
|---|

DATE 07/31/2020  CASE ID 318A-DN-3053287-YK

LOCATION 3222 East First Avenue, Apartment 224, Denver, Colorado 80206

CAMERA TYPE Nikon D610  CARD # 1

PREPARER/PHOTOGRAPHER FP John Stauder / FoA Lindsay Fryar

REMARKS Corrected case ID 318A-DN-3188680

| Photo # | Subject (Circle One) | Range | Use Scale | Description |
|---|---|---|---|---|
| 1 | Entry / Exit / (Other) / Items # | Long / Med / Close | | Log Label |
| 2 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Exterior of apartment complex |
| 3 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Exterior - address |
| 4 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Exterior of Apt # 224 |
| 5 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room A |
| 6 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room A |
| 7 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room B |
| 8 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room B |
| 9 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room B |
| 10 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room C |
| 11 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room C |
| 12 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room C |
| 13 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room D |
| 14 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room D |
| 15 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room D |
| 16 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room E |
| 17 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room E |
| 18 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room E |
| 19 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room E |
| 20 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room F |
| 21 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room F |
| 22 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room F |
| 23 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room F |
| 24 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room F - Closet |
| 25 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room F - Closet |
| 26 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room G |
| 27 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room G |
| 28 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room G |
| 29 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room G - Closet |
| 30 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room G - Closet |
| 31 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room G - Closet |
| 32 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H |
| 33 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H |
| 34 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H |
| 35 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H |
| 36 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H |

FD-674a (7-24-2017) **ERT PHOTOGRAPHIC LOG** PAGE 2 OF 4

## GENERAL INFORMATION

DATE 07/31/2020     CASE ID 318A-DN-3053281-JM

LOCATION 3222 East First Avenue, Apartment 224, Denver, Colorado 80206

CAMERA TYPE Nikon D610     CARD # 1

PREPARER/PHOTOGRAPHER FP John Stauder / FOA Lindsay Fryar

REMARKS Corrected case ID 318A-DN-3188680

| Photo # | Subject (Circle One) | Range | Use Scale | Description |
|---------|---------------------|-------|-----------|-------------|
| 37 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H - Closet |
| 38 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H - Closet |
| 39 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H - Closet |
| 40 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room H - Closet |
| 41 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room I |
| 42 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room I |
| 43 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room I |
| 44 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room J |
| 45 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room J |
| 46 | Entry / Exit / Other / Items # | Long / Med / Close | | Room J |
| 47 | Entry / Exit / (Other) / Items # | Long / Med / Close | | Room B - books / bookshelves |
| 48 | Entry / Exit / (Other) / Items # | Long / Med / Close | | Room B - books / bookshelves |
| 49 | Entry / Exit / (Other) / Items # | Long / Med / Close | | Room B - books / bookshelves |
| 50 | Entry / Exit / Other / (Items #) | (Long) / Med / Close | | money bag - from Room B |
| 51 | Entry / Exit / Other / (Items #) 1 | Long / (Med) / Close | | money bag - from Room B |
| 52 | Entry / Exit / Other / (Items #) 1 | Long / Med / (Close) | | money bag - from Room B |
| 53 | Entry / Exit / Other / (Items #) 1 | Long / Med / (Close) - Scale | | money bag - from Room B |
| 54 | Entry / Exit / Other / (Items # 2) | (Long) / Med / Close | | money bag - from Room G closet |
| 55 | Entry / Exit / Other / (Items # 2) | Long / (Med) / Close | | money bag - from Room G - closet |
| 56 | Entry / Exit / Other / (Items # 2) | Long / Med / (Close) | | money bag - from Room G - closet |
| 57 | Entry / Exit / Other / (Items # 2) | Long / Med / (Close) Scale | | money bag - from Room G - closet |
| 58 | Entry / Exit / Other / (Items # 2) | Long / Med / (Close) | | contents of money bag - Room G - closet |
| 59 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room B - (E) furnace closet |
| 60 | (Entry) / Exit / Other / Items # | Long / Med / Close | | Room A Closet |
| 61 | Entry / Exit / (Other) / Items # | Long / Med / Close | | money band from Item #1 Room B |
| 62 | Entry / Exit / (Other) / Items # | Long / Med / Close | | money band from Item #1 Room B |
| 63 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room J |
| 64 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room J |
| 65 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room J |
| 66 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room I |
| 67 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room I |
| 68 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room I |
| 69 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room I |
| 70 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room F |
| 71 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room F |
| 72 | Entry / (Exit) / Other / Items # | Long / Med / Close | | Room F |

FD-674a (7-24-2017)  **ERT PHOTOGRAPHIC LOG**  PAGE __3__ OF __4__

| GENERAL INFORMATION |
|---|
| DATE 07/31/2020     CASE ID 318A-DN-305728+8M |
| LOCATION 3222 East First Avenue, Apartment 224, Denver, Colorado 80206 |
| CAMERA TYPE Nikon D610     CARD # 1 |
| PREPARER/PHOTOGRAPHER FP John Stauder / Lindsay Fryer |
| REMARKS Corrected case ID 318A-DN-3188680 |

| Photo # | Subject (Circle One) | Range | Use Scale | Description |
|---|---|---|---|---|
| 73 | Entry / Exit / Other / Items # | Long / Med / Close | | Room F closet |
| 74 | Entry / Exit / Other / Items # | Long / Med / Close | | Room F closet |
| 75 | Entry / Exit / Other / Items # | Long / Med / Close | | Room E |
| 76 | Entry / Exit / Other / Items # | Long / Med / Close | | Room E |
| 77 | Entry / Exit / Other / Items # | Long / Med / Close | | Room E |
| 78 | Entry / Exit / Other / Items # | Long / Med / Close | | Room E |
| 79 | Entry / Exit / Other / Items # | Long / Med / Close | | Room E |
| 80 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H |
| 81 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H |
| 82 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H |
| 83 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H |
| 84 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H |
| 85 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H closet |
| 86 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H closet |
| 87 | Entry / Exit / Other / Items # | Long / Med / Close | | Room H closet |
| 88 | Entry / Exit / Other / Items # | Long / Med / Close | | Room C |
| 89 | Entry / Exit / Other / Items # | Long / Med / Close | | Room C |
| 90 | Entry / Exit / Other / Items # | Long / Med / Close | | Room C |
| 91 | Entry / Exit / Other / Items # | Long / Med / Close | | Room B |
| 92 | Entry / Exit / Other / Items # | Long / Med / Close | | Room B |
| 93 | Entry / Exit / Other / Items # | Long / Med / Close | | Room B |
| 94 | Entry / Exit / Other / Items # | Long / Med / Close | | Room D |
| 95 | Entry / Exit / Other / Items # | Long / Med / Close | | Room D |
| 96 | Entry / Exit / Other / Items # | Long / Med / Close | | Room D |
| 97 | Entry / Exit / Other / Items # | Long / Med / Close | | Room D |
| 98 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G |
| 99 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G |
| 100 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G |
| 101 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G |
| 102 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G closet |
| 103 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G closet |
| 104 | Entry / Exit / Other / Items # | Long / Med / Close | | Room G closet |
| 105 | Entry / Exit / Other / Items # | Long / Med / Close | | warrant and FD-597 |
| 106 | Entry / Exit / Other / Items # | Long / Med / Close | | Room A |
| 107 | Entry / Exit / Other / Items # | Long / Med / Close | | Room A |
| 108 | Entry / Exit / Other / Items # | Long / Med / Close | | Room A |

FD-674a (7-24-2017)  **ERT PHOTOGRAPHIC LOG**  PAGE __4__ OF __4__

| GENERAL INFORMATION | | |
|---|---|---|
| DATE 07/31/2020 | | CASE ID 318A-DN-3653281 9M |
| LOCATION 3222 East First Avenue, Apartment 224, Denver, Colorado 80206 | | |
| CAMERA TYPE Nikon D610 | CARD # 1 | |
| PREPARER/PHOTOGRAPHER FP John Stauder / Lindsay Fryer | | |
| REMARKS Corrected case ID 318A-DN-3188680 | | |

| Photo # | Subject (Circle One) | Range | Use Scale | Description |
|---|---|---|---|---|
| 109 | Entry / Exit / Other / Items # | Long / Med / Close | | Front door |
| 110 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 111 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 112 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 113 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 114 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 115 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 116 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 117 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 118 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 119 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 120 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 121 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 122 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 123 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 124 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 125 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 126 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 127 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 128 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 129 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 130 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 131 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 132 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 133 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 134 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 135 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 136 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 137 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 138 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 139 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 140 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 141 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 142 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 143 | Entry / Exit / Other / Items # | Long / Med / Close | | |
| 144 | Entry / Exit / Other / Items # | Long / Med / Close | | |

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, kelsey.totura@usdoj.gov,
maureen.carle@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
portia.peter@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Albert C. Buchman
(al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov),
Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8671681@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Withdraw as
Attorney
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 6/16/2022 at 12:07 PM MDT and filed on 6/16/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 222(No document attached) |

**Docket Text:**
 **ORDER GRANTING [205] Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Andrea Surratt as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States will continue to be represented by attorney Bryan Fields and Albert Buchman. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−3 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20−cr−00305−DDD−3 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, kelsey.totura@usdoj.gov,
maureen.carle@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Andrea Lee Surratt
(andrea.surratt@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
portia.peter@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Albert C. Buchman
(al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), mcole
(mallory_coleman@cod.uscourts.gov), dddlc2 (moses_weisberg@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8671696@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
File
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 6/16/2022 at 12:15 PM MDT and filed on 6/16/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 223(No document attached) |

**Docket Text:**
 **ORDER GRANTING [210] Motion for Leave to File a Reply. Defendants have 5000 words for a reply to be filed on or before 6/22/2022. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt (Terminated)     andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt (Terminated)    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Andrea Lee Surratt (Terminated)    andrea.surratt@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, danielle.storinsky@usdoj.gov, portia.peter@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

(1) MICHAEL AARON TEW, and
(2) KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

     Defendantd.

---

## ORDER GRANTING MOTION TO DISCLOSE GRAND JURY MATERIAL

---

THIS MATTER comes before the Court on the Government's Motion to Disclose Grand Jury Material (Doc. 209), pursuant to Fed. R. Crim. P. 6(e)(3)(E)(I).

HAVING REVIEWED the Motion and being otherwise advised in the premises, the Court finds that good and sufficient cause supports the same, and it is therefore ORDERED that the Government's Motion is granted, and that Grand Jury material may be disclosed to the Defendants and the Defendants' attorneys.

IT IS FURTHER ORDERED that such materials shall only be used in defending this case; that such materials shall be disclosed only to the Defendant and counsel for the Defendant; that the Defendant's attorneys shall maintain custody of such materials, and shall not reproduce

- 1 -

or disseminate the same; and that such materials shall be returned to the United States at the end of the case.

DATED: June 16, 2022                    BY THE COURT:

Hon. Daniel D. Domenico
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

     v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

     Defendants.

---

## REPLY IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE (Doc. 200)

---

Defendants, Michael Aaron Tew ("Mr. Tew") and Kimberley Ann Tew ("Ms. Tew") (collectively Mr. and Ms. Tew), by their counsel of record, Peter R. Bornstein, submits the following reply in support of their *Motion to Suppress Evidence* (the "Motion to Suppress")(Doc. 200) and to the *Government's Response to Defendants' Motion to Suppress Evidence* (the "Response") (Doc. 204):

### I. IMPACT OF *CARPENTER*

The Government downplays the Supreme Court's holding in *Carpenter v. United States*, 585 U.S. ____, 138 S. Ct. 2206, 201 L. Ed. 2d 507 (2018), arguing that the decision is narrow and that it does not disturb the Third-Party Doctrine articulated in *United States v. Miller*, 425 U.S. 435 (1976) and *Smith v. Maryland*, 442 U.S. 735, 743-44 (1979).[1] Nevertheless, the *Carpenter* majority rejected application of the Third-Party

---

[1] The Supreme Court in *Miller* held there was no Fourth Amendment search when the government subpoenaed defendant's bank records, including deposit slips, transaction statements, and check copies. 425 U.S. at 437-38. In *Smith*, the Court held a pen register installed by the phone company at the government's behest to obtain a paper record of the telephone numbers that Smith dialed from his landline phone was not a Fourth Amendment search. 442 U.S. at 743-44.

1

Doctrine of *Miller* and *Smith* to cell site location information ("CSLI") on the basis of the unique and "revealing nature of CSLI." 138 S. Ct. at 2210. Yet the Government here, as in *Carpenter*, seeks to "mechanically apply the third-party doctrine," *see id.*, which the Court in *Carpenter* effectively reigned in.

Carpenter stressed that "*Smith* and *Miller,* however, did not rely solely on the act of sharing," but also "considered 'the nature of the particular documents sought' and limitations on any 'legitimate expectation of privacy' concerning their contents." *Id.* (quoting Miller, 425 U.S., at 442). Applying the test articulated in *Katz v. United States*, 389 U.S. 347 (1967)[2], Chief Justice Roberts in *Carpenter* wrote that there is a Fourth Amendment search when a government official intrudes into a "private sphere" in which "an individual 'seeks to preserve something as private,' and his expectation of privacy is one that society is prepared to recognize as reasonable." *Carpenter*, 138 S. Ct. at 2213 (alteration and internal quotation marks omitted in original) (quoting *Smith*, 442 U.S. 740).

> Commentators have noted that the Court in *Carpente*r
>
> included in its multifactor analysis several familiar factors that courts had used to decide Fourth Amendment requirements applicable to such surveillance techniques as bugging, wiretaps, video surveillance, and email acquisitions. In those cases, courts inquired whether the technique was (1) hidden, (2) continuous, (3) indiscriminate, and (4) intrusive. Although the Court did not list these four factors explicitly, they were clearly central to its holding, together with the expense and effort required to compile the data.

Susan Freiwald & Stephen Wm. Smith, *The Carpenter Chronicle: A Near-Perfect Surveillance*, 132 Harv. L. Rev. 205, 219 (2018) (footnotes omitted).

While the Government rests on the *Carpenter* majority's averment that its holding is limited, the Court in that case "proceeded to list a number of matters left for another day--real-time CSLI, cell tower dumps, conventional surveillance techniques such as

---

[2] *Katz* held that the Fourth Amendment requires a search warrant for the government to install a wiretap on a public pay phone. 389 U.S. 357-59.

2

security cameras, business records incidentally revealing location information (for example, credit card transactions), and other collection techniques involving foreign affairs or national security." Freiwald & Smith, 132 Harv. L. Rev. at 227 (footnotes omitted) (citing *Carpenter*, 138 S. Ct. at 2220).

The Response cites pre-*Katz* cases[3], thereby avoiding discussion of the Supreme Court's struggle to apply anachronistic concepts and statutes in an age of exponentially evolving technology. This struggle includes: *City of Ontario, Cal. v. Quon*, 560 U.S. 746, 760 (2012) (assuming that a person has a reasonable expectation of privacy in his or her text messages); *United States v. Jones*, 565 U.S. 400, 403 (2012) (installation and use of a GPS tracking device constitutes a Fourth Amendment search based even though the vehicle's movements were in public view); *Riley v. California*, 573 U.S. 373, 403 (2014) (holding that, absent exigent circumstances, a search warrant is required for law enforcement to search a cell phone).

The Response defends the § 2703(d) Orders on the basis that they do not require production of the contents of communications. But this is a distinction without a difference; indeed, both *Carpenter* and *Riley* only involved the seizure of tracking data rather than communications. Moreover, the § 2703(d) Orders here go well beyond the seizure of a list of numbers of calls made or received on a land line, utilizing pen and trap and trace devices. The expansive nature of the information sought by the Orders in this case, as stated in the "Attachment A"s, invades multiple areas in which computer and cell phone users have – or should have – a reasonable expectation of privacy. The "Attachments A"s required the providers to obtain and provide the Government:

> A.   The following information about the customers or subscribers of the Account:
> 1.   Names (including subscriber names, user names, and screen names);
> 2.   Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

---

[3] *See* response at 5-6 (citing *Oklahoma Press Pub'g Co. v. Walling*, 327 U.S. 186, 208 (1946) and *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)).

3.    Local and long distance telephone connection records;

4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Proto co 1 ("IP") addresses) associated with those sessions;

5.    Length of service (including start date) and types of service utilized;

6.    Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI))    [sic];

7.    Other subscriber numbers or identities (including temporarily assigned network addresses and registration Internet Protocol ("IP") addresses (including carrier grade natting addresses or ports)); and

8.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

B.    All records and other information (not including the contents of communications) relating to the Account, including:

1.    Records of user activity for each connection made to or from the Account, including log files; messaging logs; the date, length, and method of connections; data transfer volume; user names; and source and destination Internet Protocol addresses;

2.    Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as source and destination email addresses, IP addresses, and telephone numbers);

3.    Information about all accounts or other identifiers that are linked to the Account including, without limitation, links by cookies, creation IP address, recovery email, telephone number, or other identifiers ("Linked Account"), including subscriber information (Part II.A of this Attachment) for each Linked Account; and

4.    All listing of all services being used by the Account.

5.    Information about all devices connected to the Account.

The foregoing list includes personal information such as account subscriber names; devise identification numbers, types and dates internet and other services were utilized; financial information including source of payment for all services, including credit card and bank account information; records of communications sent and received; IP addresses and websites accesses. Just as the petitioner in *Carpenter* had a legitimate expectation of privacy in his location data, Michael Tew and Kimberly Tew had a

4

reasonable expectation of privacy in the information seized warrantlessly pursuant to the § 2703(d) Orders.

## II.   IMPACT OF *WARSHAK*

The government devotes two paragraphs to the argument that Defendants here misconstrue *United States v. Warshak*, 631 F.3d 266 (6th Cir. 2010). Response at 6-7. The Government purports to distinguish *Warshak* on the basis that *Warshak* involved the seizure of emails, whereas the § 2703(d) Orders here authorized seizure of transactional data short of the actual contents of emails.   In *Warshak*, the court analogized the § 2703(d) seizure of emails to the seizure of unopened mail considered in *United States v. Jacobsen*, 466 U.S. 109 (1984). *Warshak*, 631 F.3d at 285. Analogously, information about an email sent or received, even without the seizure of its contents, is the functional equivalent of an unopened letter.  Moreover, as noted above, the Orders here required and resulted in seizure of much more than simply a list of emails sent and received.

## III.   SUPPRESSION AS A REMEDY FOR UNCONSTITUTIONAL SECTION 2703(d) ORDERS

The Government's reasoning at page 8 of the Response is circular. The Government says that: "the non-content metadata disclosed as a result of the orders is not protected by the Fourth Amendment, there is no constitutional violation, and there is thus no basis for suppressing that evidence or for suppressing its derivative use in the later warrants." *Id*. This analysis sidesteps the issue: assuming, as is asserted in the *Motion to Suppress*, that the consequence of *Carpenter* is that the 2703(d) Orders were unconstitutional because they enable the Government to warrantlessly obtain materials in which the Tews had a legitimate expectation of privacy. In such case, there of course would be a "constitutional violation" and suppression is the appropriate remedy.

The Government seeks to limit its exposure by asserting under the SCA remedies and sanctions set forth in § 2706 are the "only judicial remedies and sanctions for ***nonconstitutional*** violations of this chapter."  To reach this assertion it cites 18 U.S.C.

5

§§ 2707 and 2808 for that proposition. Response at 8 (quoting 18 U.S.C. § 2808) (emphasis supplied). This misses the mark because Defendants' argument is that the information seized by the § 2703(d) Orders, even if authorized by the SCA, violated the Fourth Amendment under the reasoning of *Carpenter*. The suggestion that there could be a non-constitutional violation of the Fourth Amendment is an oxymoron. The Supreme Court long ago recognized that suppression is the remedy for Fourth Amendment violations. *See Herring v. United States*, 555 U.S. 135, 139–40, (2009) (explaining history of exclusionary rule). However, it is axiomatic that "even if it intends to do so, Congress cannot legislate away protections provided by the Constitution." *Silver v. Garcia*, 760 F.2d 33, 38 (1st Cir. 1985) (citing L. Tribe, American Constitutional Law 403 n. 18 (1978)). *See also Doe 1 v. Buratai*, 318 F. Supp. 3d 218, 229 (D.D.C. 2018); ("Congress cannot legislate away the due process requirements of the Constitution."); *Willingway Hosp., Inc. v. Blue Cross & Blue Shield of Ohio*, 870 F. Supp. 1102, 1106 (S.D. Ga. 1994) ("Congress cannot legislate away a defendant's due process rights."). Suppression is therefore the remedy for constitutional violation of the Fourth Amendment.

## IV.    ISSUE OF STANDING

The Response, at 10, cites cases for the proposition that Defendants have the burden of establishing standing, and that it must be established by sworn testimony in the form of an affidavit. Since neither Michael nor Kimberly Tew submitted an affidavit with the Motion to Suppress, the Government argues, they lack standing to challenge the execution of search warrants for the four pertinent email accounts.[4]

The Government overlooks that there are affidavits here that establish standing. That is, the affidavits sworn by government agents here in support of the search warrants

---

[4]    The four pertinent email accounts are: i.e., "chrisrncn@gmail.com," "political.media.wdc@gmail.com," "meyersconsultinggroupinc@gmail.com," and "kley@me.com."

6

established standing.  *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 14 (2010) (2705 (concluding plaintiffs had established standing based on facts presented by the government); *United States v. Bogle*, No. 3:19-CR-137(1), 2021 WL 1720893, at *2 (S.D. Ohio Apr. 30, 2021) (noting that the warrant affidavit stated that defendant's primary residence is located at the premises to be searched).

The Government argues that a party challenging a search "must submit sworn evidence, in the form of an ***affidavit or testimony***, that they each have privacy interests in the accounts.: *Response*, at 10 (emphasis added) (citing *United States v. Almaleh*, 2022 WL 602069, at *13 (S.D.N.Y. Feb. 28, 2022)).  In addition to relying on the actual search warrant affidavits to establish standing, Defendants hereby request a hearing and are willing to testify, subject to the protections of *Simmons v. United States*, 390 U.S. 377 (1968), consistent with the offers of proof stated below.

A.    **Email account kley@me.com.**

1.  Government Search Warrant's Establishment of Standing.

The Government claims in paragraphs 26, 27, 28, 29 and 34 of the affidavit in support of the search warrant establish that Kimberley Tew is the owner of the email address.  That email address is linked to the Apple phone and the Apple Cloud.  (The Affidavit is attached to the Motion to Suppress as Exhibit D).

2.  Further Offer of Proof.

If she testified Kimberley Tew would state that the email was her account, but that the iCloud account was merged with Michael Tew's iCloud account around July 11, 2020 so that both of their personal information is obtained from the same Apple account.  Michael Tew would also testify that his Apple iCloud information now appears in Kimberley Tew's account and vice versa.

B.    **Email account chrismcn@gmail.com.**

1.  Government Search Warrant's Establishment of Standing.

7

The Government claims in paragraphs 17, 19, 21, and 22 of the affidavit in support of the search warrant that that account's recovery phone number list to Michael Tew and the IP address is located in Colorado not in Texas where the real Christian Rincon lives and works.  That account was used by Michael Tew to communicate about fraudulent conduct with co-conspirator Jonathan Yioulos.   The Government claims that the email address was really Michael Tews' and not an email account belonging to Christian Rincon or his company 5530 Jessamine Development, LLC.  (The Affidavit is attached to the Motion to Suppress as Exhibit H).

       2.     Further Offer of Proof.

If she testified Kimberley Tew would say she created the email account and she used it.

**C.**    **Email account meyersconsultinggroupinc@gmail.com.**

       1.  Government Search Warrant's Establishment of Standing.

The Government claims in paragraphs 17, 23, 24, and 25 of the affidavit in support of the search warrant that Mr. Myers has a company that is an LLC and not an Inc.  and that he never sent any invoices to NAC using an email account.  The government lists emails using the email account back and forth between Ms. Tew and Mr. Tew.  That account was used by Kimberley Tew to send fraudulent invoices to Mr. Yioulos for payment.   The Government claims that the email address was really Kimberley Tews' and not an email account belonging to Michael Meyers or his company Meyers Consulting Group LLC.  (The Affidavit is attached to the Motion to Suppress as Exhibit I).

       2.  Further Offer of Proof.

If she testified Kimberley Tew would say she created the email account and she used it.

**D.**    **Email account political.media.wdc@gmail.com.**

       1.  Government Search Warrant's Establishment of Standing.

8

The Government claims in paragraphs 17, 21, 22, and 25 of the affidavit in support of the search warrant that that account's recovery email address and the phone number list to Michael Tew. That account was used by Michael Tew to communicate about fraudulent conduct with co-conspirator Jonathan Yioulos. The Government claims that the email address was really Michael Tews' and not an email account belonging to Larry Ward or his company Political Media, Inc. (The Affidavit is attached to the Motion to Suppress as Exhibit K).

<u>2. Further Offer of Proof.</u>

If he testified Michael Tew would say he created the email account and he used it.

## V.   PROBABLE CAUSE FOR ISSUANCE OF SEARCH WARRANTS

The Government quotes *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) for the general rule that "if the search or seizure was pursuant to a warrant, the defendant has the burden of proof." Response at 13. Of course, the flip side of that rule, also recognized in *Carhee* is that, when a seizure is warrantless, the defendant "bears the burden of proving whether and when the Fourth Amendment was implicated, after which "[t]he government then bears the burden of proving that its warrantless actions were justified." *Carhee*, 27 F.3d at 1496. As discussed above and in the Motion to Suppress, Defendants' position is that the warrantless seizure of information utilizing § 2703(d) Orders is unconstitutional in light of *Carpenter*. If this is so, the Fourth Amendment has been implicated and the government bears the burden of proving that the warrantless searches were justified by an exception to the warrant requirement. The Government does not attempt to make such proof Instead, it stands upon its argument that the § 2703(d) orders here were legal and outside the purview of the Fourth Amendment.

The prosecution does not deny that information it obtained from the § 2703(d) Orders were incorporated into the later-issued search warrants. Indeed, each of the four warrants was preceded by a § 2703(d) Order, with the respective "Attachment As" incorporated in each Order. Indeed, it concedes as much by stating: "The government

9

used 2703(d) orders — essentially, judicially-pre-approved subpoenas — to obtain *noncontent* information. It then used the information it lawfully obtained from those court orders, to obtain search warrants." Response at 2 (emphasis in original).

It is well established that courts should exclude all "evidence deemed to be fruit of the poisonous tree." *United States v. Olivares-Rangel*, 458 F.3d 1104, 1108-09 (10th Cir. 2006) (citing *Wong Sun v. United States,* 371 U.S. 471, 485, (1963)). The Government here makes no argument that the information seized by execution of search warrants, following warrantless seizure of information by illegal § 2703(d) Orders, was discovered by "means *sufficiently distinguishable* to be purged of the primary taint." *United States v. Shrum*, 908 F.3d 1219, 1228 (10th Cir. 2018) (emphasis in original) (quoting *Wong Sun* 371 U.S. at 488.

Not only did the Search warrants violate the Fourth Amendment because each incorporated poisonous fruit from execution of the § 2703(d) Orders, is insufficient because they rely almost exclusively on conclusions stated by the affiant in the respective affidavits rather than on sourced facts. That is, the affidavits make broad summary conclusions about what the agents' investigation has discovered, without providing any underlying facts to enable a magistrate to determine the factual underpinnings of the conclusions. The government quibbles with whether such conclusions constitute "facts;" s*ee* Response at 13-14. However, the quintessential definition of a "bare bones affidavit" is one containing conclusory statements without supporting facts. *See United States v. Washington*, 380 F.3d 236, 241 n. 4 (6th Cir. 2004) ("A 'bare bones' affidavit 'states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge.'") (quoting *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir.1998)); *United States v. Johnson*, 4 Fed. Appx. 169, 172 (4th Cir. 2001) (a "'bare bones' affidavit is one which recites conclusions of others"); *United States v. Weaver*, 99 F.3d 1372, 1378 (6th Cir. 1996) ("An affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual

10

circumstances regarding veracity, reliability, and basis of knowledge, is a 'bare bones' affidavit."); *United States v. Chapa-Ibarra*, 49 F.3d 727 (5th Cir. 1995) ("[b]are bones affidavits contain only conclusory statements without supporting facts and circumstances that would allow a magistrate independently to determine probable cause") (citing United *States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir.1992)).

## VI. ISSUE OF LACK OF PARTICULARITY AND RIPENESS

The Motion to Suppress argued that the Government exceeded its authority in executing the warrants to search the four above-referenced email accounts because it seized materials that were beyond the scope of each respective warrant, including privileged communications. Furthermore, the Motion to Suppress argues that the Government improperly delegated authority to execute and review the contents of email accounts to the respective email providers. *See* Motion to Suppress at 19, and 25, 27, and 29.

The Government counters that it merely followed the "two-step process" outlined in Fed. R. Crim. P. 41 by first seizing the entire contents of the accounts, which authorizes the seizure of electronically stored information, subject to "a later review of the media or information consistent with the warrant." Response at 16 -17 (quoting Rule 41(e)(2)(B)).

The Government claims Rule 41 and Section 2703 authorize the Government to seize the entire contents of an email account and then search through the seized documents later. Response at 18-19 (citing *United States v. Deppish*, 994 F. Supp. 2d 1211 (D. Kan. 2014)). *Deppish*, in turn, cited *United States v. Brooks*, 427 F.3d 1246 (10th Cir. 2005). *Deppish*, 994 F. Supp. 2d 1220. *Brooks* involved a warrant to search the defendant's computers for evidence of child pornography. The search warrant in *Brooks* authorized officers to search two computers and discs "'for evidence of child pornography,' including 'photographs, pictures, computer generated pictures or images, depicting partially nude or nude images of prepubescent males and or females engaged in sex acts," . . . as well as "correspondence, including printed or handwritten letters,

11

electronic text files, emails and instant messages[.]" *Id.* at 1252 (alteration in original). Rejecting the defendant's argument that the search warrant was overbroad, the court reasoned that:

> While the warrant does not explicitly instruct officers to look solely for those text files containing child pornography, in context—and certainly in the view of the officers conducting the search—the restrictions placed upon searches for image files also apply to the other types of files. In other words, although the language of the warrant may, on first glance, authorize a broad, unchanneled search through Brooks's document files, as a whole, its language more naturally instructs officers to search those files only for evidence *related to child pornography*. In this light, the warrant should be—and was—read by officers to implicitly place the same restriction (i.e., to locate child pornography) on the scope of the entire search.

*Id.* at 1252 (italics in original).

The Search warrants here are not similarly circumscribed. The "Attachment B" in each warrant authorized seizure of a universe of materials greatly exceeding government's investigation of fraud and money laundering. *See, e.g.,* Motion to Suppress at 18-19 (describing breadth of Attachment B in Apple kley@me.com email account). Equally noteworthy is that, in *Brooks*, as the above-quoted passages make clear the search warrant instructed law enforcement officers what to search for.

Here, on the other hand, each of the four search warrants instructs the email provider, not law enforcement, to determine what evidence is to be seized. For example, the Apple kley@me.com email Search Warrant, at Attachment B (attached to Motion to Suppress as Exhibit D), states that: "Apple is required to disclose the following information to the government, in unencrypted form whenever available, for each account or identifier listed in Attachment A: . . ." The same is true with the Attachment Bs associated with the other search warrants here. *See* Exhibits F, H, and K attached to Motion to Suppress.  Fed. R. Crim. P. 41(f) states that an **officer** executes the warrant, an officer must be present to prepare and verify an inventory, and the officer must promptly return it to the designated magistrate judge.  The rule defines federal law enforcement officer in sub-part (a)(2).  There is no provision that allows the magistrate to allow private parties like Apple or Google to execute a search warrant and perform the

12

acts required of a law enforcement officer.  The magistrate violated the Rule in this case and thereby allowed a violation of Constitutional rights.

The Government also argues that it has implemented a filter team to minimize disclosure of privileged information. Response at 19, 27. Given the breadth of the privileged communications seized and produced in discovery, as demonstrated by examples filed with the Motion to Suppress (Exhibits T through BB), the filter team failed. The Government then inexplicably blames Defendants' prior counsel for not cooperating with the filter team. Response at 22-23. That is not the obligation of defense counsel.

The concept of a government-run filter team is inherently suspect. *See United States v. Under Seal (In re Search Warrant Issued June 13, 2019),* 942 F.3d 159, 176 (4th Cir. 2019) (holding that a magistrate judge was wrong to authorize the prosecution's filter team protocol on grounds that determination of a dispute about the attorney-client privilege or work-product doctrine is a judicial function, not an executive function). On this issue, Defendants incorporate their *Motion for Sanctions for Violating Communication Privileges* (Doc. 214).

It is difficult to understand how the issues raised in the Motion to Suppress cannot be ripe. *See* Response at 23 (stating that "the defendants' motion is not ripe: there are currently very few items to suppress because the government hasn't even been able to conduct its search"). Although it is true that several attorneys have represented Michael Tew and Kimberly Tew during various states of this case, the evidence was seized over 20 months ago and it can't stay in limbo indefinitely.

## VII.   ISSUE OF THE GOOD FAITH EXCEPTION

The Response claims that this seizure should be spared from the exclusionary rule by the rule's good faith exception. Response at 28-29. The Government argues that application of the exclusionary rule here would not serve the purpose of deterrence. However, as a court stated in another context, "[t]he Government's requests raise Fourth Amendment warning flags, which threaten heavy weather if either were to be allowed."

13

*In re Application of the United States of America*, 441 F. Supp. 2d 816, 836-37 (S.D. Tex. 2006).

It is well established that is the government's burden to demonstrate the objective reasonableness of the officers' good faith reliance on a warrant. *United States v. Burgess*, 576 F.3d 1078, 1096 (10th Cir. 2009) (citing *United States v. Corral–Corral,* 899 F.2d 927, 932 (10th Cir. 1990). *See also United States v. George*, 975 F.2d 72, 77 (2d Cir. 1992); *United States v. Michaelian*, 803 F.2d 1042, 1048 (9th Cir.1986).

There are several circumstances which make the *Leon* good faith exceptions inapplicable, including a warrant supported by a bare bones affidavit, i.e. a warrant that "is so facially deficient that the executing officer could not reasonably believe it was valid." *United States v. Irving,* 347 F. Supp. 3d 615, 625 (D. Kan. 2018) (quoting *United States v. Danhauer*, 229 F.3d 1002, 1007 (10th Cir. 2000) (citation omitted)). An affidavit is "bare bones" if it is so deficient in demonstrating probable cause that it renders an officer's belief in the existence of probable cause completely unreasonable. *United States v. Cisneros*, 112 F.3d 1272, 1278 (5th Cir. 1997); *see also United States v. Washington*, 380 F.3d 236, 241 n.4 (6th Cir. 2004) (describing a bare bones affidavit as "an affidavit that merely "states suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge") (quoting *United States v. Van Shutters*, 163 F.3d 331, 337 (6th Cir. 1998)). Stated otherwise, "'[b]are bones' affidavits contain wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause." *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992).

The affidavits here suffer from the same deficiencies as those in *Irving*. In that case, one of the warrants listed seven categories of items to be seized from the defendant's Facebook account, including:

> (1) all contact and personal identifying information, including name, user identification number, birth date, gender, contact email addresses, Facebook passwords, Facebook security questions and answers, physical address, telephone numbers, screen names, and other personal identifiers;

14

> (2) all activity logs and all other documents showing the user's posts; (3) all photoprints, including all photos uploaded by the user or photos tagging the user; (4) all Neoprints, including profile contact information, status updates, photographs, wall postings, friend lists, groups and networks, rejected friend requests, comments; (5) all other records of communications and messages made or received by the user including all private messages, chat history, video calling history, and pending friend requests; (6) all IP logs; and (7) all past and present lists of friends created by the account.

*Irving*, 347 F. Supp. 3d at 623-24. The court in *Irving* cited *United States v. Blake*, 868 F.3d 960 (11th Cir. 2017), which found the government's Facebook search to be overbroad because it "required disclosure to the government of virtually every kind of data that could be found in a social media account," and noted that "the Eleventh Circuit stated that it would have undermined any claim that the Facebook warrants were the internet-era version of a 'general warrant.'" *Irving*, 347 F. Supp. 3d at 624. *Irving* held that the warrant was overbroad:

> This warrant, however, allowed the officer to search virtually every aspect of Defendant's Facebook account. It required disclosure of all data and information that was contained in his account. It included all contact and personal identifying information, all private messages and chat histories, all video history, all activity logs, all IP logs, all friend requests, all rejected friend requests, all photoprints, all Neoprints, and all past and present lists of friends. In addition, there was no specified time frame so the warrant covered the entire timeframe that Defendant operated and had the Facebook account. In sum, the warrant encompassed everything in Defendant's Facebook account and there were no set limits.

*Id.*

The court in *Irving* also held that the good faith exception did not apply: "There does not appear to be an objective reason that the officer should have believed that this general rummaging would be permitted. 'A reasonably well-trained officer should know that a warrant must provide guidelines for determining what evidence may be seized.'" *Id.* at 625 (quoting *United States v. Leary*, 846 F.2d 592, 609 (10th Cir. 1988)).

## VIII. CONCLUSION

For the foregoing reasons, Defendants Michael Aaron Tew and Kimberley Ann Tew respectfully request that this Court issue an order or orders suppressing all evidence

obtained from the execution of the above-described Orders and Search Warrants, including the fruits thereof.

Respectfully submitted this 22nd day of June, 2022,

*/s/ Peter R. Bornstein*
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for* Defendants Michael Aaron Tew
*and Kimberley Ann Tew*

## STATEMENT CONCERNING SPEEDY TRIAL

Pursuant to Judge Domenico's Practice Standard III(C), Defendants Michael A. Tew and Kimberley Ann Tew state that this motion will have no effect on the speedy trial clock unless the Court orders a hearing on the matter to take place after the already-existing ends-of-justice continuance expires.

## CERTIFICATE OF COMPLIANCE

I hereby certify that undersigned counsel had complied with the type-volume limitation authorized by the Court's *Order granting Motion for Leave to file a Reply* (Doc. 223).

*/s/ Peter R. Bornstein*
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on June 22, 2022, I electronically filed the foregoing *Reply in Support of Motion to Suppress Evidence* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

*Jeannette Wolf*
Jeannette Wolf

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No.  20-cr-00305 -DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL ARON TEW,

2. KIMBERLY ANN TEW,
        a/ka Kimberley Vertanen,

      Defendants.

---

**NOTICE OF CONVENTIONAL FILING – EXHIBIT 1 - 3 TO
GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS THE USE OF STATEMENTS [ECF No. 216]**

---

      The United States of America, by and through Albert C. Buchman, Assistant

United States Attorney for the District of Colorado, hereby provides a copy of 1)

Exhibit 1, 2) Exhibit 2, and folder titled 3) Exhibit 3 for delivery to chambers for

review.

      Dated this 9th day of August, 2022.

      //

      //

<div align="center">1</div>

Respectfully Submitted,

COLE FINEGAN
United States Attorney


*s/ Albert Buchman*
ALBERT BUCHMAN
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Fax: 303-454-0405
Email: Al.Buchman@usdoj.gov

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date, 9th August, 2022, I submitted the foregoing **NOTICE OF CONVENTIONAL FILING – EXHIBIT 1 - 3** with the Clerk of the Court.

*s/ Jessie Zabriskie*
Legal Assistant
U.S. Attorney's Office

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

     Defendants.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT
KIMBERLEY ANN TEW'S MOTION FOR SEVERANCE [ECF NO. 218]**

---

There is no reason to proceed on one trial against one conspirator and then proceed on a different trial with identical evidence against the other conspirator. The defendant's speculation about an unspecified and unarticulated *Bruton* violation is insufficient to overcome the strong presumption in favor of joint trials. Her motion  for Severance ("Def's Severance Mot."), ECF No. 218, should be denied.

    1.     The defendant is correct that the court has wide discretion over how to manage its docket and whether to grant a severance.  But that works both ways:  a decision to take advantage of the considerable efficiencies that come from having the same evidence of a conspiracy presented once, instead of twice, is extremely unlikely to be second-guessed on appeal. Our court system presumes that joint trials "serve the interests of justice by avoiding inconsistent verdicts and enabling

1

more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 209 (1987). The Federal Rules of Criminal Procedure broadly permit joinder where parties are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8.  And the rule is "construed broadly to allow liberal joinder to enhance the efficiency of the judicial system." *United States v. Janus Indus.*, 48 F.3d 1548, 1557 (10th Cir. 1995) (quotations and citation omitted).

2.      The defendant does not identify which statements she thinks are subject to *Bruton v United States*, 391 U.S. 123 (1968).  The government has asked defense counsel to identify them.  He responded, "I believe that pretext calls from Yioulos to Tew have Bruton problems." This "belief" is a far cry from the affirmative assertion needed to warrant the heavy costs of two trials.  And the defendant's response cites calls lasting many minutes, without any specific reference to what in those calls actually creates a *Bruton* issue.  Speculation about a possible *Bruton* issue based on "belief" — but not, apparently, on any detailed analysis of those calls identifying specific statements — is insufficient for relief here.  If the defendant does identify specific statements in those calls, the government will work with defense counsel on any necessary redactions to comply with the rule.  *Richardson*, 481 U.S. at 211 ("We hold that the Confrontation Clause is not violated by the admission of a nontestifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the

2

defendant's name, but any reference to his or her existence.").

3. The defendant also stated in the email that "the proffer of each Tew cannot be used against that person, but can be used against the other person," apparently referencing proffer interviews provided by each defendant in the presence of counsel. During those interviews, each defendant admitted to the charged crimes. But the government cannot use those proffer statements unless the defendants breach the underlying proffer agreements by offering evidence that contradicts what each defendant told the government. If defense counsel does not breach the proffer agreements, there is no issue. If he does, then the statements can be redacted. But the bigger problem, if the defendants intentionally breach the proffer agreements, is that defense counsel and the defendants would be either offering knowingly false statements to the court during trial, or admitting to offering false statements to the government — a position that is completely untenable. See *United States v. Barrow*, , 400 F.3d 109, 117 (2d Cir. 2005); *United States v. Velez*, 354 F.3d 190, 195-97 (2d Cir. 2004); *United States v. Parra*, 302 F. Supp. 2d 226, 235-40 (S.D.N.Y. 2004); *United States v. Chan*, 185 F. Supp. 2d 305, 308 (S.D.N.Y. 2002); *United States v. Chaparro,* 181 F. Supp. 2d 323, 334 (S.D.N.Y. 2002) (explaining that there is "no unfairness to [the defendant] in allowing use of his statements during proffer sessions once he has opened the door to their use by his arguments and evidence," because the "design of the [Proffer] Agreement provides any defendant who decides to speak with the Government strong

3

incentives to speak truthfully, and discourages anyone from speaking at all if she intends to lie . . . .").

4.      None of the other stated grounds for severance justify having two trials in this matter.

a.      The defendant cites no case — and the government is aware of none — justifying severance simply due to the "sheer number of counts" against one defendant.  The "number of counts" is not a particularly helpful heuristic for deciding complexity where the unit of charging consists of specific wires or financial transactions that are simply specific examples of overt acts or executions of a scheme:  the jury can easily determine which defendant initiated an ACH transaction or went to the bank.

b.      The defendant asserts that evidence admissible on the counts against Michael Tew would somehow prejudice Kimberley Tew but provides no examples of items of evidence that would come in during a joint trial, but not in a single trial.  Because the Tews are co-conspirators responsible for one another's actions in furtherance of the conspiracy, the evidence in this case overlaps almost entirely.  Even if Kimberley Tew is severed, evidence of her husband's actions would nevertheless be admissible to show the existence, scope, and nature of the charged conspiracy.

c.      The defendant asserts — again without citation to any authority — that there is "special prejudice" when conspirators are married.  There is no basis

4

for this assertion.  The government has no intention — and has never had any intention — to make inference about "pillow talk." The government will absolutely not make any arguments that husbands and wives are responsible for, or know about, all of their actions and rejects the idea that such a thing is "natural" as potentially sexist.  Instead, the government will present known evidence in the form of testimony from co-conspirators, victims, and witnesses who observed the Tews fleecing their once current and then former employer. The jury should not engage in inferences the parties do not ask them to make and if the defendant is particularly concerned on this point, the government can work with her to craft an appropriate jury instruction.

    d.    The government does intend to present evidence that Michael Tew and his wife had conversations about and with co-conspirator Jonathan Yioulos. Conspirators will often compartmentalize tasks associated with carrying out the conspiracy so as to maximize comparative advantages.  Michael Tew was the one who had most of the conversations with Yioulos, but it is not accurate to say that this means the evidence against Ms. Tew is "far less."  It simply means that Ms. Tew's position in the conspiracy was more insulated.  All of the evidence showing the existence of the conspiracy can be used against Ms. Tew, who directly and actively profited from it.  Even if the evidence against Ms. Tew is somehow "far less," this is still an insufficient basis for severance.  A defendant making a motion to sever bears the "heavy burden" of showing "real" prejudice: "serious risk that a

joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993); *United States v. Martin* 18 F.3d 1515, 1518 (10th Cir. 1994). The Tenth Circuit has explained that "[t]he mere fact that one co-defendant is less culpable than the remaining co-defendants is not alone [a] sufficient ground" to overturn a district court that decides to try defendants together. *United States v. Williams*, 45 F.3d 1481, 1484 (10th Cir. 1995). "It would be normal and usual to assume one of two or more co-defendants would be more or less culpable than the others." *United States v. Youngpete*r, 986 F.2d 349, 354 (10th Cir. 1993).

Finally, the defendant's reliance on a 34-year-old case from the Ninth Circuit referencing even older studies about the abilities of juries, is misplaced. Def. Severance Mot. at 4 (citing *United States v. Lewis*, 787 F.2d 1318, 1321 (9th Cir. 1986). The Tenth Circuit has never used, analyzed, or cited that case for purposes of a severance motion. Indeed, its legally binding position is the exact opposite of the one the defendant asserts in brief:  juries are presumed to be able to follow, and to actually follow, their instructions. *United States v. Tucker*, 502 F. App'x 720, 726 (10th Cir. 2012) ("We underscore that a central assumption of our jurisprudence is that juries follow the instructions they receive.  Consequently, with confidence, we conclude that these jury instructions were sufficient to cure any prejudice that [the defendant] may have received from having all of his crimes tried together."). *United*

*States v. Pinto*, 838 F.2d 426, 434 (10th Cir. 1988) ("Throughout the trial, the court admonished the jury to consider certain evidence only as to Lambert. As a result, the jury was able to compartmentalize the evidence as to each of the defendants and to properly apply it as the court instructed."); *United States v. Lane*, 883 F.2d 1484, 1498–99 (10th Cir. 1989) (providing illustration of how limiting instruction mitigates prejudice and affirming convictions in joint trial where some evidence was admitted against some, but not other, defendants). This is especially true when the defendant cannot be bothered to actually provide examples of evidence that actually raise concerns about the ability of juries to analyze evidence against each defendant. No statement by one co-defendant against another in this case is testimonial, which means that delivering a limiting instruction will ensure a fair, orderly, and efficient joint trial. *United States v. Zapata*, 546 F.3d 1179, 1191–92 (10th Cir. 2009) (noting that "spill-over" can be solved with a limiting instruction).

For all of these reasons, the defendant's motion should be denied.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

7

**Certification of Type-Volume Limitation**

    I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

                            */s/ Albert Buchman*
                            Albert Buchman

**Statement of Speedy Trial Impact**

    Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

                            */s/ Albert Buchman*
                            Albert Buchman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

<div style="margin-left: 50%;">

*/s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States

</div>

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1. **MICHAEL AARON TEW and**
   2. **KIMBERLEY ANN TEW** a/k/a Kimberley Vertannn

    Defendants.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT MICHAEL TEW'S MOTION FOR THE GOVERNMENT TO FILE A *JAMES* PROFFER REGARDING CO-CONSPIRATOR STATEMENTS ADMISSIBILITY PURSUANT TO EVIDENCE RULE 801(d)(2)(E) AND FOR A *JAMES* HEARING [ECF NO. 219]**

---

The government does not oppose making a *James* proffer in this case. Because of the unresolved issues related to the government's use of a filter team to execute several search warrants, it is premature to schedule a *James* hearing at this time.  The government will need to finish executing those warrants, which provided probable cause to believe that conspirator communications would be found in several electronic repositories, before it will be in a position to identify the statements it will use at trial.

The government has reached out to defense counsel to propose a mutually agreeable timetable for scheduling such a hearing, but has not received a response

1

as of the date of this filing.

Respectfully submitted this 9th day of August, 2022.

COLE FINEGAN
United States Attorney

By:   */s Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Bryan David Fields*
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

2

## CERTIFICATE OF SERVICE

I certify that on this 9th day of August, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

s/ *Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Al. Buchman@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendants.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT KIMBERLEY TEW'S MOTION FOR THE GOVERNMENT TO FILE A JAMES PROFFER REGARDING CO-CONSPIRATOR STATEMENTS ADMISSIBILITY PURSUANT TO EVIDENCE RULE 801(d)(2)(E) AND FOR A *JAMES* HEARING [ECF NO. 220]**

---

The government does not oppose making a *James* proffer in this case. Because of the unresolved issues related to the government's use of a filter team to execute several search warrants, it is premature to schedule a *James* hearing at this time.  The government will need to finish executing those warrants, which provided probable cause to believe that conspirator communications would be found in several electronic repositories, before it will be in a position to identify the statements it will use at trial.

The government has reached out to defense counsel to propose a mutually agreeable timetable for scheduling such a hearing.  He responded that because his

1

position is "that the government obtained the emails illegally, I can't agree to put the James log off for several months." But that is exactly what will need to happen given that the government cannot identify *James* statements in those warrants until issues regarding their legality are resolved by the Court or negotiated. The government proposes that the *James* log be due 8 weeks after the Court rules on the pending motions. That period of time is necessary to execute the warrants (which will require sifting through gigabytes of data), identify co-conspirator statements, and prepare the actual log.

Respectfully submitted this 9th day of August, 2022.

COLE FINEGAN
United States Attorney

By: */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By: */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

2

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

/s/ *Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1.  **MICHAEL AARON TEW, and**
   2.  **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR A *FRANKS v. DELAWARE* HEARING [ECF NO. 215]

---

The defendants' Motion for a *Franks v. Delaware* Hearing ("Def's *Franks* Mot."), ECF No. 215,  motion levels a serious accusation of misconduct with absolutely no basis, substantiation, or explanation.  The defendants' request to use the Court's time to "develop" accusations that they cannot articulate in the first instance should be denied, as required by *Franks v. Delaware*, 438 U.S. 154, 171 (1978).

### I.    Background:  *Franks v. Delaware*

Search warrants are presumed to be valid.  *Franks* 438 U.S. at 171.  Indeed, the presumption is so strong that defendants attacking the facial validity of a warrant must first make a "substantial preliminary showing that a false statement

knowingly or intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit." *Id.* at 155-56. Even then, the allegedly false statement must be essential to the probable cause determination: "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, *no hearing is required.*" *Id.* at 171-72 (emphasis added).

"*Franks* protects against omissions that are *designed to mislead*, or that are made in *reckless disregard of whether they would mislead*, the magistrate." *United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990) (emphasis in original). Accordingly, while the general principles behind *Franks* apply to acts of both omission and commission, Courts have recognized that issues related to the former create knotty issues of infinite regression:

> While omissions may not be *per se* immune from inquiry, the affirmative inclusion of false information in an affidavit is more likely to present a question of impermissible official conduct than a failure to include a matter that might be construed as exculpatory. This latter situation potentially opens officers to endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit. The potential for endless rounds of *Franks* hearings to contest facially sufficient warrants is readily apparent.

*Colkley*, 899 F.2d at 301 (internal citations omitted); *see also Beard v. City of Northglenn, Colo.*, 24 F.3d 110, 116 (10th Cir. 1994) (noting, for example, that a "failure to exhaust every possible lead, interview all potential witnesses, and

accumulate overwhelming corroborative evidence rarely suggests a knowing or reckless disregard for the truth.  To the contrary, it is generally considered to betoken negligence, *at most*.") (internal quotations and citations omitted) (emphasis in original).

II.     **The Defendant Has not Made a Substantial Preliminary Showing of any intentionally false statements**

Paragraph 4 of the Defendants' *Franks* Motions sets forth 15 statements that are allegedly false, without anything that might be considered "substantial." Indeed, the defendant's motion has nothing of substance at all: no explanation or description of how or why the statements are false and without any evidence showing that they are false.  "To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *United states v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012); *United States v. Arbolaez*, 669 F.3d 1283, 1295 (11th Cir. 2006) (noting that the substantial preliminary showing requirement is "not lightly met" and find that defendant's challenge was insufficient where it was not supported by an affidavit or otherwise sworn statement).

The conclusory nature of the defendants' accusations of falsity, by itself, is a sufficient reason to deny their motion under *Franks*, which puts the burden on the defendant to make a substantial preliminary showing. *United States v.* 774 F.3d653,

<div align="center">3</div>

663 (10th Cir. 2014) )(rejecting *Franks* challenge where defendant failed to offer any *evidence* of falsity); *United States v. Cooper*, 1104, 1128 (10th Cir. 2011) (noting that *Franks* challenges should be "accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.")[1]

The defendants also base their *Franks* challenge on alleged omissions, but their motion does not identify any omissions. This, too, is reason to reject the motion. The defendants cannot obtain a *Franks* hearing by making unsupported and articulated allegations of unspecified misconduct.

III.  **Conclusion**

The defendants' filing is a motion to develop the evidence they would need to file a motion and obtain a hearing. *Franks* specifically rejected such an approach to

---

[1] The government has provided the defendants with full discovery supporting each of the allegations in the search warrants. If necessary, the government will submit each statement or item of evidence relied upon in the warrants to show their veracity. However, neither the Supreme Court nor the Tenth Circuit have explained whether such a procedure — where the government sets forth the evidence supporting the affidavit — is proper. *See United States v. Graf*, 784 F.3d 1, 7 (1st Cir. 2015) (describing as open the question whether a trial court can consider government evidence before deciding whether a *Franks* hearing is appropriate); *United States v. McMurtrey*, 704 F.3d 502, 509-510 (7th Cir. 2013) (concluding it was improper for trial court to consider such evidence). The government does not include any evidence in this response to avoid creating an issue on appeal. For present purposes, the law presumes that the court does not need to know whether and what evidence supports the affidavit. Rather, the court must accept the affidavit as facially valid. It is enough to conclude that the defendants have failed to meet their heavy burden of establishing falsity by not providing any evidence for such a serious accusation.

warrants that are "presumed valid." *Franks*, 438 U.S. at 171. The defendants need more than mere accusations, conclusions without articulation, and promises to develop a proper motion at the hearing itself.  Their motion should be denied.

Respectfully submitted this 9th day of August, 2022.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*           By:   */s/ Al Buchman*
Bryan Fields                          Albert Buchman
Assistant United States Attorney   Assistant United States Attorney
U.S. Attorney's Office              U.S. Attorney's Office
1801 California St. Suite 1600     1801 California St. Suite 1600
Denver, CO 80202                  Denver, CO 80202
(303) 454-0100                    (303) 454-0100
Bryan.Fields3@usdoj.gov        Al.Buchman@usdoj.gov
Attorney for the Government       Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

5

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

/s/ Albert Buchman
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States

6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

     Defendants.

---

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SANCTIONS FOR VIOLATING COMMUNICATION PRIVILEGES [ECF NO. 214]

---

The defendants' Motion for Sanction for Violating Communication Privileges, ECF No. 214, ("Def's Mot. for Sanctions") accuses the government of violating accountant-client and doctor-patient privileges without noting that federal law recognizes no such privileges.  It similarly accuses the government of violating the marital communications privilege without noting black-letter Supreme Court law recognizing that the privilege is evidentiary, not constitutional, and that investigators are authorized to use those communications to develop derivate evidence.  *Trammel v. United States*, 445 U.S. 40, 52 n.12 (1964).  And it accuses the government of violating an attorney-client privilege without describing any particular such communication used by the government or how any such communication is privileged.  *In re Foster*, 188 F.3d 1259, 1264 (10th Cir. 1999)

("The party must bear the burden as to specific questions or documents, not by making a blanket claim."). The motion should be denied.

1. As described in the government's response to the Government's Response to Defendant's Motion to Suppress Evidence ("First Motion to Suppress"), ECF No. 204, several magistrate judges found probable cause to issue warrants authorizing the search and seizure of digital information located in several email accounts. The propriety of the two-step process used by every U.S. Attorney's office in the country to execute those warrants — as approved by courts around the country — is explained in detail in the First Motion to Suppress, ECF No. 204 at 16-23, and the government incorporates those arguments here.

2. Paragraphs 4 and 5 of the defendants' motion imply both a temporal causality that does not exist and blame the government for lengthy delays occasioned by the defendants' difficulty retaining counsel. The government has prophylactically taken steps to protect any applicable attorney-client privilege throughout this litigation and has worked with the defendants' rotating cast of defense attorneys at each step to negotiate the best way to accomplish that goal. This procedural history was previously set forth in the First Motion to Suppress, and in the attached filter memorandum, which are entirely ignored by the defendants. The filter memorandum, ECF No. 204-1, explains that Mr. Ekeland took the position that no government filter process would be acceptable and made the kind of blanket assertion of privilege that the Tenth Circuit has said is invalid. Mr. Ekeland proposed discussions over that position and then abruptly withdrew

from this matter the day one of the undersigned AUSAs was scheduled to meet with

him in Brooklyn.  The defendants then engaged in a months-long process to retain

their current counsel, during which time the government prudently paused its

execution of the warrant so that it could work with whoever they retained as their

new counsel.

3.   The government's filter team is limited to attorney-client

communications because Federal common law developed pursuant to Federal Rule

of Evidence 501 does not recognize a medical privilege or an accountant privilege

and permits the government to review marital communications, as permitted by the

relevant search warrant.  If the defendants believe that certain communications are

protected by a privilege, they have the burden of proving it.  *In re Grand Jury

Proceedings*, 616 F.3d 1172, 1183 (10th Cir. 2010).

a.   Federal courts do not recognize a generic medical privilege.  *Whalen v.

Roe*, 429 U.S. 589, 602 n.28 (1977) ("The physician-patient evidentiary privilege is

unknown at common law."); *see, e.g., United States v. Trejo-Islas*, 248 F. Supp. 2d

1072, 1077 (D. Utah 2002) (finding "no merit" to portion of motion to suppress

premised on supposed physician-patient privilege)  The defendants cite no cases for

their assertion that there is such a privilege and, if they believe that such a

privilege has lain quiescent in the common law for the past hundreds of years, they

bear the burden of revealing its existence.

b.   The same is true for an accountant-client privilege.  There is no such

thing. *United States v. Arthur Young & Co.*, 465 U.S. 805, 818 (1984) ("[N]o

confidential accountant-client privilege exists under federal law, and no state-created privilege has been recognized in federal cases.") (quoting *Couch v. United States*, 409 U.S. 322, 335 (1973); *Sutton v. United States*, 658 F.2d 782, 784 (10th Cir. 1981) ("It is well settled that there is no confidential accountant-client privilege under federal law. Furthermore, in federal cases there is no state created accountant-client privilege."). Some courts have recognized a privilege where an accountant is retained by an *attorney* to provide expert guidance in a legal matter, but that is just a specific application of the well-established attorney-client privilege. *See, e.g., United States v. Kovel*, 296 F.2d 9`8 (2d Cir. 1961).

c.      As set forth above, *Trammell* makes it clear that the marital privilege only prevents one party from admitting evidence of a protected marital communication *in court*.  It does not prevent any review of those messages for information helpful to an investigation.  *See, e.g., United States v. Squillacote*, 221 F.3d 542, 560 (4th Cir. 2000) (rejecting argument that suppression of evidence derived from privileged marital communications was proper "given that the privilege is a testimonial or evidentiary one, and not constitutionally-based"); *United States v. Lefkowitz*, 618 F.2d 1313, 1318 n.8 (9th Cir. 1980) ("Because we reject … Lefkowitz's argument that the marital privileges are somehow constitutionally grounded in, among other locations, the Fourth Amendment, we doubt that a secondary source of information obtained through information protected by the confidential marital communications privilege would in any way be 'tainted'."); *United States v. Marashi*, 913 F.2d 724, 731 n.11 (9th Cir. 1990) ("[W]e

need not resolve Marashi's claim that all evidence derived [from marital communications] should be excluded as fruits of the poisonous tree. Suffice it to say that no court has ever applied this theory to any evidentiary privilege …").

d.     Finally, the search warrants here authorize the government to seize communications regarding violations of federal conspiracy, fraud, obstruction, and money laundering statutes.  Such communications would not be covered by the marital communications privilege at all because that privilege — like every other recognized by the federal courts — does not permit parties to use a privilege to further joint criminal activity. *United States v Bey,* 188 F.3d 1, 5 (1st Cir. 1999) ("The spouse's involvement in the criminal activity, however, need not be particularly substantial to obviate the privilege."). Participation in discussions in furtherance of the criminal activity, involvement in payments, and efforts to conceal the criminal activity are sufficient to obviate the protection of the marital communications privilege. *See, e.g., id.* at 6 (finding wife was joint participant based on her "knowing acceptance of drug proceeds, her efforts to maintain [defendant's] cover story for the benefit of his unsuspecting couriers, and her decision to act as a go-between when [defendant] needed additional funds from [a co-conspirator] to conduct criminal activity"); *United States v. Short,* 4 F.3d 475, 478–79 (7th Cir. 1993) (finding wife was joint participant, albeit in a "minor role," where she prepared fraudulent title, registration, and other documents necessary for selling stolen cars to legitimate buyers).

4.     *In re Search Warrant*, 942 F.3d 159, 176 (4th Cir. 2019) is a classic

example of extreme facts making extreme law. There, a team in Maryland executed a search warrant at the offices of a Baltimore law firm and seized broad categories of documents unrelated to the specific attorney under investigation.  The Fourth Circuit concluded that various aspects of the case, including the breadth of the seizure, the ability to conduct proceedings in an adversarial fashion, and concerns about investigate agents making privilege determinations made the filter protocol an unconstitutional usurpation of judicial functions.  The approach in that case has not been adopted in any other circuit and the defendant provides no reason to think the Tenth Circuit, or this court, should adopt it here.

     5.    Filter teams are the common and appropriate response when investigators determine that evidence may be protected by an attorney-client privilege. *See, e.g.*, *United States v. Brewington*, No. 15-cr-73-PAB, 2018 WL 1046804, at *4 (D. Colo. Feb. 26, 2018) (concluding that it was appropriate for government to set up filter team to review privileged emails inadvertently provided by cooperating defendant); *see also United States v. Mower*, 2010 WL 3938265 (D. Utah. Oct. 6, 2010); *United States v. Yousef*, No. 94 CR. 180 (KTD), 1999 WL 714103, at *1 (S.D.N.Y. Sept. 13, 1999) (approving the government's use of "a special unit of prosecutors and agents . . . [who] had nothing to do with the prosecution of the World Trade Center and Manila Bombing cases" to investigate allegations by a jailhouse informant that incarcera1ted, convicted defendants were planning new terrorist activities); *United States v. Rodriguez*, No. 94 CR. 313 (CSH), 1998 WL 26189 (S.D.N.Y. 1998) (the court authorized the government to set

up a new prosecution team to investigate allegations of jury tampering by a

defendant then on trial); *see also United States v. Simels*, 654 F.3d 161, 166 (2d Cir.

2011) (upholding district court's determination that government had a sufficient

basis to suspect Simels was engaging in obstruction and upholding order permitting

the filter team's interceptions of telephone conversations between Simels and his

charged client; noting that Simels did not claim government "fire wall" had been

breached).

6.      Even more compelling, the filter protocol here specifically provides for

defense counsel's involvement before any potentially privileged communications are

disclosed to the prosecution team. In that respect, this case is no different from *In re

Search Warrant and Application for a Warrant by Telephone or Other Reliable

Electronic Means*, 11 F. 4th 1235 (11th Cir. 2021), where the Eleventh Circuit

approved the government's filter protocol. In that case, the Eleventh Circuit

distinguished the Fourth Circuit's decision in *In re Search Warrant*, noting that

there was no claim the majority of the seized materials were privileged and

irrelevant, that the court could conduct adversarial hearings over the filter protocol,

and that the protocol allowed the defense attorneys to object before privileged

materials were provided to the government. Id. at 1251. The filter team here has

provided the defendant with *all* of the material seized from the warrant and has

asked the defendant to identify materials that he believes are privilege. Defense

counsel has not done so and has not provided guidance on how the search warrant

can be executed in a way that will protect attorney-client privilege. Without help

from defense counsel, the best approach is the one adopted by the government here and approved by the Eleventh Circuit.

7. Adopting a rule that would prevent the government from executing search warrants any time any defendants have ever retained an attorney in the past would be extreme and impractical. The court could hire independent special masters to conduct filter reviews, but this, too, is unnecessarily rigid. While courts have sometimes raised concerned about foxes guarding henhouses in this one context of attorney-client privilege, it is worth taking a step back and assessing whether and why the context of the attorney-client privilege uniquely turns the government into some kind of atavistic animal incapable of dispassionately discharging its duties. The Supreme Court has repeatedly emphasized that the government bears the burden of discharging its duties under the *Brady* line of cases. *See Kyles v. Whitley*, 514 U.S. 419, 437 (21995) (noting responsibility of prosecutors). The judiciary has not decided in that context — one that is firmly grounded in the constitution and much more critical to the fair administration of justice — that the government is incapable of reviewing discovery and pursuing cases with integrity and fairness. Why is it different when the government sets up a team of lawyers who have nothing to do with this particular case and who are given specific instructions designed to protect the defendant? It is not, and there is no compelling reason for this Court to adopt the Fourth Circuit's approach precluding the use of government filter teams, especially when more practical alternatives have found approval in this circuit and elsewhere.

8.     The defendants have not provided a single example of any
communication protected by a privilege and used by the government at all, let alone
use of privileged material to secure any kind of advantage.  Without this, there can
be no sanctions.  The government acknowledged in its filter memorandum that an
IRS agent saw a communication that she believed may have been with an attorney.
But the IRS agent has been interviewed by the Filter Attorney and there is no
reason to think that the IRS agent did anything other than she was expected to do:
stop reading immediately and contact an AUSA.  That is a far cry from any of the
conduct described in any of the cases cited by the defendants, which all refer to
*constitutional* violations arising from the *Brady* line of cases or the right to a Speedy
Trial that are not implicated by their accusations.  There is no basis for sanctions
here.

9.     Even if there was a basis for sanctions, the court should "impose the
l*east severe sanction* that will punish the offending party for his wrongdoing,
remedy the prejudice to and harm suffered by the adverse party and the judicial
process, deter future litigants from engaging in similar conduct, and inspire
confidence in the integrity of the judicial process." *Raymond v. Spirit AeroSystems
Holdings, Inc.*, 2017 WL 2831485, at * 17 (N.D. Kan. June 30, 2017). Dismissing the
indictment would be a radical and extreme remedy, especially when defendant
cannot reference any allegedly privileged material used to secure that indictment in
the first place.  *Cf. United States v. Williams*, 504 U.S. 36, 45 (1992) (noting that
there is no general supervisory judicial authority over grand jury proceedings). The

more typical remedy when one party has been exposed to potentially privileged materials is disqualification of an attorney or agent. But here, new AUSAs have only been recently assigned to the case and those AUSAs have not had access to anything that even might be privileged because the search warrant materials are still behind a filter wall. Again, there is no basis for sanctions at all and even if there was, none of the remedies sought by the defendants would be proportional responses to any alleged violations. *See, e.g., United States v. Berger*, 251 F.3d 894, 907 (10th Cir. 2001) (noting reluctance to disqualify for violation of Rule of Professional responsibility); *Nickel v. Hannigan*, 97 F.3d 403, 409 (10th Cir. 1996) (declining to apply a "fruit of the poisonous" tree-type analysis to breaches of privilege).

The defendant has not articulated any actual, as opposed to hypothetical, violations and even if he did, dismissal of the indictment is an extreme remedy unsupported by any of the cited cases or other applicable law. The defendants' motion should be denied.

Respectfully submitted this 9th day of August, 2022.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

> _/s/ Albert Buchman_
> Albert Buchman
> Assistant United States Attorney
> 1801 California Street, Suite 1600
> Denver, Colorado 80202
> Phone: (303) 454-0100
> Fax: (303) 454-0403
> E-mail: Al.Buchman@usdoj.gov
> Attorney for the United States

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. **MICHAEL ARON TEW**,

      Defendant.

---

## GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS THE USE OF STATEMENTS [ECF No. 216]

---

In his "Motion to Suppress the Use of Statements," (Defendants' Motion), Defendant M. Tew requests that this Court suppress statements made by him on or about July 8, 2020. ECF No. 216, ¶ 15. For the reasons set forth below, the United States respectfully requests the Court deny the Defendant's Motion, as Defendant was not in custody at the time the statements were made.

### DEFENDANT WAS NOT IN CUSTODY

Defendant raises the discrete issue whether there was a violation of the *Miranda v. Arizona*, 384 U.S. 436 (1966).[1] *Id.* ¶ 4. Specifically, Defendant claims he was subjected to a custodial interrogation, without a *Miranda* warning, at the time

---

[1] Defendant does not claim the statements were made involuntarily in violation of due process. *See* ECF. No. 216.

statements were made. ECF No. 216, ¶ 11, 14. The government does not dispute that Defendant was not provided *Miranda* warnings before being questioned. Thus, the sole issue is whether Defendant was in custody. The government asserts that Defendant has not established his burden to show illegality, and further that the circumstances, when objectively considered, indicate Defendant was not in custody at the time statements were made.

### a. Custodial status is objectively determined.

"[P]olice officers are not required to administer *Miranda* warnings to everyone whom they question." *Oregon v. Mathiason*, 429 U.S. 492, 495 (1977). *Miranda* warnings must be given only if a subject is "in custody" and subject to "interrogation." *Illinois v. Perkins*, 496 U.S. 292, 297 (1990); *United States v. Jones*, 523 F.3d 1235, 1239 (10th Cir. 2008). A defendant bears the initial burden of presenting evidence sufficient to challenge the legality of the confession. *United States v. Crocker*, 510 F.2d 1129, 1135 (10th Cir. 1975), *abrogated on other grounds by United States v. Bustillos-Munoz*, 235 F.3d 505 (10th Cir. 2005). Once that showing has been met, the government must show, by a preponderance of the evidence, that the defendant's rights were not violated. *United States v. Gell-Iren*, 146 F.3d 827, 830 (10th Cir. 1998).

A person is in "custody" when he or she is "deprived of [] freedom of action in any significant way," or his or her "freedom of action is curtailed to a 'degree associated with formal arrest.'" *United States v. Chee*, 514 F.3d 1106, 1112 (10th

2

Cir. 2008). This objective determination turns on whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave." *Howes v. Fields*, 565 U.S. 499, 509 (2012); *see United States v. Rogers*, 391 F.3d 1165, 1171 (10th Cir. 2004) (applying objective test); *United States v. Erving L.*, 147 F.3d 1240, 1247 (10th Cir. 1998) (same). In applying this test, courts must examine "all of the circumstances surrounding the questioning," a totality of the circumstances, including well-established factors of (1) the location of questioning, (2) its duration, (3) statements made during interview, (4) presence or absence of physical restraints during the questioning, and (5) the release of the interviewee at the end of questioning. *Howes*, 565 U.S. at 509 (internal citations omitted).[2]

### b. *Agents' intentions are not a factor in custodial analysis.*

Turning to the present case, Defendant has not established his burden in showing illegality. In attempting to establish that he was in custody, requiring a *Miranda* warning, Defendant primarily argues that agents' intentions to arrest or belief that he was already under arrest during the interview is the dominant factor in the analysis. *See* ECF No. 216, ¶¶ 3 (alleging agents were sent by federal prosecutor to arrest him if he tried to flee), 5 (alleging agents did not advise Defendant despite his being under arrest), 6 (alleging agents lulled Defendant into belief he was not under arrest).

---

[2]    Defendant cites *United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020) for non-exclusive factors in custodial analysis. The *Wagner* factors are merely variations of those in *Howes*, and custodial analysis is the same regardless of the authority applied.

The government here does not concede any of the facts Defendant asserts on
this point. But even assuming they are true, the subjective intentions or beliefs of
law enforcement are not a factor for the Court to consider. The Tenth Circuit has
stated this directly in *United States v. Griffin*, 7 F.3d 1512, 1518 n.7 (10th Cir.
1993) (the test is objective, "subjective intent of an officer to arrest or place the
suspect in formal custody is irrelevant") ("*Griffin 1993*). *See also Berkemer v.
McCarthy*, 468 U.S. 420, 421-422 (1984) ("A policeman's unarticulated plan has no
bearing on the question whether a suspect was 'in custody' at a particular time; the
only relevant inquiry is how a reasonable person in the suspect's position would
have understood his situation"). Accordingly, the Court should decline to consider
any facts pointing to agents' intentions or beliefs, as these do not support any of the
factors under objective custodial analysis.

### c. *The circumstances indicate Defendant was not in custody.*

Even if the Court is persuaded that Defendant has somehow met his burden
in his motion, the Government asserts that other factors, when objectively
considered, indicate that Defendant's freedom of action was not restrained to
establish custody. No *Miranda* advisement was thus needed.

First, the location of questioning demonstrates Defendant was not in custody.
Defendant was interviewed in a "common area" behind his apartment at his request

4

after being asked to speak privately. *See* Ex. 1, ¶ 2-3 (memorandum of interview).[3]

He was not separated from his wife, co-Defendant Kimberley Tew (who participated

in the interview throughout), nor was he interrogated in a nonpublic questioning

room. *See id.*; *see Griffin*, 7 F.3d at 1518-1519 (separation from moral support and

nonpublic location both consideration). Defendant makes no attempt to argue that

the location here weighs for or against his custodial status. Rather, he merely states

that the factor is not dispositive (no factor is dispositive) and further cites cases that

found the factor outweighed by other factual circumstances. *See* Defendant's Motion

at ¶ 12 (citing *Orozco v. Texas*, 394 U.S. 324, 327 (1969) (older, sparsely reasoned

case where Court determined custody when officers admitted the defendant was

under arrest); *Sprosty v. Buchler*, 79 F.3d 635, 641 (7th Cir. 1996) (officers

physically restrained the defendant); *United States v. Griffin*, 922 F.2d 1343, 1354

(8th Cir. 1990) (officers physically restrained the defendant)).

It remains that courts have found this factor significant in the custodial

analysis, as the Tenth Circuit stated in *United States v. Ritchie*: "[C]ourts are *much

less likely* to find the circumstances custodial when the interrogation occurs in

familiar or at least neutral surroundings," such as the suspect's home." 35 F.3d

1477, 1485 (10th Cir. 1994). This Court should conclude that the location was

familiar to Defendant, as he requested the location to speak, *see* Ex. 1, ¶ 2., and

---

[3]     Note, the conversations were not recorded, as co-Defendant Kimberley Tew did not consent
to recording. *Id.*, ¶ 4.

thus that this factor weighs against any finding that the defendant was in custody. *Griffin*, 7 F.3d at 1519-1520 (considering location under the umbrella factor of police dominated atmosphere).

Second, the limited duration of the interview demonstrates Defendant was not in custody. Specifically, agents were in contact with Defendant from approximately 2:50 pm to 3:49 pm but only engaged in active conversation with him from 3:12 pm to 3:49 pm. Ex. 1, ¶¶ 1 2, 4, 10. During that conversation, agents asked him about his employment with NAC and otherwise conducted limited questioning directed at their investigation. *Griffin*, 7 F.3d at 1518 (nature of questioning is a factor). The interview did not last "for over an hour" as Defendant alleges. *See* ECF No. 216, ¶ 4.

Third, statements made during the interview demonstrate Defendant was not in custody when looking at the totality of the circumstances. Both Defendant and co-Defendant Kimberly Tew (who was also present and whose statement should be considered as a part of the totality) made statements during the interview, demonstrating their understanding that they were not in custody. At the beginning of the interview by Special Agent Anderson, co-Defendant declined to answer questions and declined recording, indicating her understanding that they were free to decline to answer questions. *See* Ex. 1, ¶¶ 3, 4. Later, both Defendants declined to answer further questioning and requested they meet agents another time, affirmatively showing their subjective belief that they were free to leave. *Id.* ¶¶ 7-

6

10. In response, agents respected those wishes and agreed to set up another meeting, taking no coercive actions to force compliance with questioning. *Id.* ¶¶ 8-10.

Fourth, the lack of physical restraints employed demonstrates Defendant was not in custody. Defendant was unrestrained during the interview. There is no indication he was handcuffed or under other restraints or at gunpoint. *See* Ex. 1; *Howes*, 565 U.S. at 503 (considering handcuffs in its analysis); *Ritchie*, 35 F.3d at 1481 (same). In fact, Defendant admitted that he was not "grabbed" by agents, demonstrating a lack of physical contact made. Ex. 1, ¶ 5; *see Griffin*, 7 F.3d at 1519 (considering physical contact under the umbrella factor of police dominated atmosphere).

Fifth, Defendant was not arrested during or after the interview itself, demonstrating he was not in custody when the statements were made. At the conclusion of the interview, at approximately 3:49 pm, Defendant left; he went inside his residence from the common area, closed the door, and lowered the blinds, outside the presence of agents. Ex. 1, ¶ 10. Defendant was not arrested at the end of the interview, as he alleges. ECF No. 216, ¶ 11. Rather, only after a break in contact, agents reinitiated contact at 4:11 pm with Defendant at the apartment and arrested him. *See id.* ¶ 11; Ex. 2, ¶ 1 (memorandum of activity). Regardless, this later arrest is irrelevant because it was not part of the interview from which Defendant made statements and left to enter his apartment free from agents.

7

Overall, the factors weigh against a finding that Defendant was in custody.

*Miranda* warnings were not required, and the statements should not be suppressed.

## **CONCLUSION**

The Court should deny the Defendant's Motion without a hearing for all of

the reasons set forth above.

Respectfully submitted this 9th day of August, 2022,

COLE FINEGAN
United States Attorney

By:     */s/ Bryan David Fields*            By:     */s/ Albert Buchman*
Bryan David Fields                          Albert Buchman
Assistant United States Attorney            Assistant United States Attorney
U.S. Attorney's Office                      U.S. Attorney's Office
1801 California St. Suite 1600              1801 California St. Suite 1600
Denver, CO 80202                            Denver, CO 80202
(303) 454-0100                              (303) 454-0100
Bryan.Fields3@usdoj.gov                     Al.Buchman@usdoj.gov
Attorney for the Government                  Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume
limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*/s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States

CONVENTIONAL FILING ECF No. 229

Exhibit 1

CONVENTIONAL FILING ECF No. 229


Exhibit 2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305 -DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL ARON TEW,

2. KIMBERLY ANN TEW,
       a/ka Kimberley Vertanen,

      Defendant.

---

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS'
MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF 3222 EAST FIRST
AVENUE, APARTMENT 224 [ECF No. 221]**

---

      In their "Motion to Suppress Evidence from Search of 3222 East First
Avenue, Apartment 224," ("Defendants' Motion"), Defendants challenge a search
warrant of their apartment. Specifically, they request that this Court suppress, (1)
the "items seized," for failure to establish probable cause, and (2) the "photographs
taken" as outside the scope of authorization of the search warrant. ECF No. 221, ¶
19. For the reasons set forth below, the United States respectfully requests that the
Court deny the Defendants' Motion.

I.    **THE AFFIDAVIT IN SUPPORT OF THE SEARCH WARRANT
      ESTABLISHED PROBABLE CAUSE WITH SUFFICIENT NEXUS
      TO SEIZE THE BANK BAGS.**

Defendants make two claims challenging the affidavit: that it lacks sufficient

nexus and that paragraph 40 is insufficient. Addressing both arguments in turn,

the government asserts both claims fail.

A.    **There was sufficient nexus between the crime and the place
      searched.**

Defendants first claim that "the Affidavit failed to establish was [sic]

probable cause for the search and seizure of" the seized Wells Fargo cloth bag and

one green cloth Guaranty Bank and Trust Company bag ("bank bags"). Defendants'

Motion at ¶ 19. Defendants reason that "there is no nexus between the bank bags,

the residence, the criminal conduct or the proceeds or evidence of criminal conduct."

*Id.* ¶ 7, *see also Id.* ¶ 3-8.

The "probable cause [required by the Fourth Amendment] to issue a search

warrant exists when the supporting affidavit sets forth sufficient facts that would

lead a prudent person to believe that a search of the described premises would

uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d

1243, 1247 (10th Cir. 2013) (citations omitted). Put another way, whether there

exists probable cause is a "commonsense, practical question" answered by

evaluating the totality of the circumstances and turning on whether there is a "fair

probability" that contraband or evidence will be in a particular place. *United States*

2

*v. Biglow* 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

These principles apply both to whether a crime has occurred and to whether evidence of that crime will be in a particular place — the "nexus requirement". *United States v. Khan*, 989 F.3d 806, 816 (10th Cir. 2021). That is, the search warrant does not need to establish with certainty that items will be in a particular place. It needs to describe "circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *Id.* at 816. A magistrate judge can draw reasonable inferences from the information in an affidavit and consider the "practical considerations of everyday life." *Biglow*, 562 F.3d at 1279. Courts should not review search warrants in a "hypertechnical manner;" they should be reviewed with common sense. *United States v. Ventresca*, 380 U.S. 102, 109 (1965). Once a magistrate judge has found probable cause and issued a warrant, the law discourages second-guessing. If the circumstances are "doubtful or marginal," the district court should give deference to the judgment of the magistrate judge. *Biglow*. 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984)).

"If the [magistrate] judge only considered a supporting affidavit in issuing the warrant, the reviewing court likewise determines the existence of probable cause for the warrant exclusively from the supporting affidavit's four corners." *Whiteley v. Warden, Wyo. State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971); *United*

3

*States v. Beck*, 139 Fed. Appx. 950, 954 (10th Cir. 2005). Here, the affidavit, within its four corners, sufficiently established a nexus between Defendants' crimes and the apartment, articulating the following chain of logic: (1) Defendants committed fraud that resulted in receiving money from Victim National Air Cargo ("NAC"), (2) Defendants deposited those proceeds into bank accounts, (3) Defendants withdrew those proceeds using the bank bags, and (4) those bank bags were located in Defendants' shared apartment.

Specifically, examining the affidavit, it described sufficient facts establishing Defendants' relationship with NAC and the complex, fraudulent scheme employed to illegally obtained proceeds from Victim by submitting fraudulent invoices in paragraphs 27 through 35. From there, the affidavit established that Defendants had deposited those proceeds into traditional bank accounts operated by Defendants, information learned from Defendant Michael Tew himself. *Id.* ¶ 39. Thereon, the affidavit states directly that "M. TEW used two bags interchangeably to carry cash withdrawn from traditional bank accounts that received," corroborated by video footage showing Defendant Michael Tew's possession of a black cloth bag and also bank records showing withdrawal of funds. *Id.* ¶¶ 40, 41. Thus, the affidavit established a nexus between the crimes and use of the bank bags to transfer fraudulently obtain funds.

The affidavit then directly established that "on July 28, 2020, M. TEW stated that the Wells Fargo branded cloth bag with the Guarantee Bank and Trust cloth

are stored at his shared apartment with K. TEW," establishing a direct link to Defendants' apartment. *Id.* ¶ 40. Thoroughly, the affidavit established that "M. TEW AND K. TEW share the apartment . . . at 3222 East First Avenue, Apartment 224, Denver Colorado 80206," articulating fully that the place to be searched in the search warrant was in fact linked to Defendants. *See United States v. Gonzalez*, 399 F.3d 1225, 1231 (10th Cir. 2005) (facts must establish residence belongs to or is otherwise linked to defendant). Accordingly, contrary to Defendants' claim, the chain of logic in the affidavit supported sufficiently and directly a nexus among the crime, the bank bags, and the apartment searched, and the Court should accord the magistrate judge's determination due deference.

### B.       Paragraph 40 should be read in context and with common sense.

Defendants next claim that paragraph 40 is founded on statements with no indication of when, to whom, and under what circumstances Defendant Michael Tew made the statement. Defendants' Motion at ¶ 5; *see Id.* 221-1, ¶ 40. The government cannot ascertain, however, whether Defendants' assertion is a legal challenge to the warrant or intended to support Defendants' nexus argument. Unfortunately, no authority was provided to aid in a determination.[1]

In the interest of not conceding Defendants' point, if a meritorious claim can be somehow inferred, the government asserts that Defendant is simply incorrect

---

[1]       To the extent that Defendants are attempting to establish a violation pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978)—that paragraph 40 contains a misstatement or omission—they have not made a "substantial preliminary showing" of all elements of a *Franks* violation. *See United States v. Herrera*, 782 F.3d 571 (10th Cir. 2015).

5

that the missing context for Defendant Michael Tew's statements was not provided. Looking earlier in the affidavit at paragraph 29, it established that Defendant Michael Tew was interviewed by law enforcement officers in July 2020, the first mention of any statements made by that defendant. In paragraphs 38 as well as 40, Michael Tew's statements are provided without the context of when, to whom, and under what circumstances they were made. It follows, by common-sense in the totality of the circumstances contained in the affidavit, that the statements made in paragraph 40 are attributed to the July 2020 interview mentioned in paragraph 29. At any rate, the district court should give deference to the judgment of the magistrate judge that sufficient information regarding the statements in paragraph 40, ultimately aiding to establish probable cause, was contained in the affidavit. *See Biglow.* 562 F.3d at 1282.

### C. The agents relied on the warrant in good faith.

Should the Court find any of Defendants' claims above persuasive, that the warrant was defective in some way, the Court should not suppress the items seized because the agents relied on the warrant in good faith. The good faith exception applies when law enforcement obtain evidence in objectively reasonable reliance on a warrant later found to be technically defective. *Mass. v. Sheppard*, 468 U.S. 981. 991 (1984); *United States v. Leon*, 468 U.S. 897, 922 (1984).

Here, the agents' reliance on the facially sufficient search warrant, ECF No. 221-2, was objectively reasonable because it was issued by a United States

6

magistrate judge who had reviewed a supporting affidavit with sufficient indicia of

probable cause, *Id.* No. 221-1, No technical deficiencies were apparent to objectively

supply an unreasonable belief that the warrant was mistaken. *See Leon*, 468 U.S. at

923 (describing circumstances in which it might not be objectively reasonable to rely

on a warrant, none of which apply here); *United States v. Cruz*, 774 F.3d 1278, 1291

(10th Cir. 2014) (same). Accordingly, even if the Court finds technical deficiencies

per Defendants' arguments against nexus and paragraph 40, the Court should still

decline to suppress because the agents acted in good faith.

## II.   **ALL PHOTOGRAPHS WERE EITHER EXPLICITLY AUTHORIZED OR IN PLAIN VIEW AND THUS SHOULD NOT BE SUPPRESSED.**

The Defendants bear the burden of proving that a search was improper.

*United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) ("Generally, if the

search or seizure was pursuant to a warrant, the defendant has the burden of

proof.") (citation and quotation marks omitted). Defendants here argue that "agents

did not have authority pursuant to the search warrant to seize photograph images

of the apartment" because "the seizure of those photographic images exceeded the

scope of the warrant issued by Magistrate Judge Haggarty [sic]." ECF No. 221, ¶ 16;

*see id.* ¶ 15. In opposition, the government asserts that Defendants have not met

their burden. All photographs were either authorized or otherwise in plain view

during a legitimate search and thus should not be suppressed. *Arizona v. Hicks*,

480 U.S. 321, 325 (1987) (noting that items lawfully exposed to the view of the

police have no Fourth Amendment protection); *United States v. Mancari*, 463 F.3d

7

590, 596 (7th Cir. 2006) ("[w]hen officers who are lawfully on the premises pursuant to a valid search warrant merely record what they observe there that is in plain view, they do not invade legally protected privacy or any other legal interest." *Platteville Area Apartment Assoc. v. City of Platteville*, 179 F.3d 574, 579 (7th Cir.1999)).

## A.    The constitutionality of all photographs must be determined item by item.

Generally, if executing officers exceed the scope of a search warrant, the seized evidence may be suppressed. *Patel v. Hall*, 849 F.3d 970. 984 (10th. Cir. 2017). At issue here are 108 photographs agents taken during execution of the search warrant, provided in discovery, and logged in a photolog. Exhibit 1; *see also* ECF No. 221-4. Defendants make no attempt to distinguish among the photographs taken or justify their individual basis for suppression. This is unfortunate because Court must determine the constitutionality, item by item as part of a "severance" analysis. *United States v. Sells*, 463 F.3d 1148, 1156 (10th Cir. 2006). To assist the Court in this analysis, the government submits the photographs as Exhibit 1.

As is apparent in the exhibit, the photographs are not all the same. There are two categories of photographs; (1) general photographs of the apartment and items seen but not articulated in warrant, and (2) bank bag photographs.[2] *See* Ex. 1. The government will address both categories separately.

---

[2]    There are several photographs of the warrant itself. These were possessed by agents, not Defendants, and thus do not implicate the Fourth Amendment or any possessory interests.

**B.    At threshold, the warrant authorized search of all rooms for articulated evidence, and Defendants do not challenge the scope of this authorization or agents' legitimate presence in the apartment.**

The warrant authorized search of "all rooms for the apartment unit 224 pictured and described above . . . ," for "two cloth, or similar material, bags" containing bank logos. ECF No. 221-1, 2 (Attachments A and B to the warrant). Defendants' Motion makes no challenges to the scope of the authorized search, and thus there is no dispute to that agents were legitimately on the premises of unit 224 pursuant to their authorization.

**C.    Photographs of the bank bags were explicitly within the scope of the search.**

Several photographs were taken of the bank bags seized on scene as physical evidence. *See* Ex. 1. Seizure of the bank banks was explicitly authorized in the warrant, and photographs merely capture and are a part of that authorized seizure. *See* ECF. 221-1, 2; Section I, *supra* (government's response to Defendants' claims against seizure of the bank bags). Accordingly, photographs of the bank bags were within the scope and should not be suppressed.

**D.    All other photographs were taken in plain view within the scope of authorization.**

"It is well settled . . . that 'objects falling in the plain view of an officer who has the right to be in the position to have that view are subject to seizure and may be introduced into evidence.'" *United States v. Espinosa*, 641 F.2d 153, 166 (4th Cir. 1981) (quoting *Harris v. United States*, 390 U.S. 234, 235 (1968)). This includes

9

items seen in plain view in the course of executing a warrant for specified objects. *See Coolidge v. New Hampshire*, 403 U.S. 443, 465 (1971). This is true because a "seizure of an object in plain view does not involve an intrusion on privacy." *Horton v. California*, 496 U.S. 128, 141 (1990); *see Hicks*, 480 U.S. at 324 (recording of serial numbers, although not authorized, did not meaningfully interfere with any possessory interests and thus did not exceed the scope of the warrant).

In that vein, photographs of items observed while officers were lawfully on the premises have been held admissible. *United States v. Speece*, 986 F.2d 1431, ¶ 3 (10th Cir. 1993) (unpublished) ("Since the officers were lawfully on the premises, their use of photographs of items in plain view was also lawful"); *Espinosa*, 641 F.2d at 166-167; *Bills v. Asteline*, 958 F.2d 697, 707 (6th Cir. 1992); *Mancari*, 463 F.3d at 596. Evident on the face of the photographs, *see* Ex. 1, the agents merely captured their plain-view observations while lawfully on the premises pursuant to their authorization to search all rooms. The challenged photographs are thus admissible and should not be suppressed.

In fact, the photographs may not constitute a seizure at all so as to fall under the safeguards of the Fourth Amendment. Constitutionally, a "seizure occurs when there is some meaningful interference with an individual's possessory interests," *Maryland v. Macon*, 472 U.S. 463, 469 (1985); *see United States v. Jacobson*, 466 U.S. 109, 113 ("a 'seizure occurs when there is a meaningful interference with an individual's possessory interests in that property"); *Texas v. Brown*, 460 U.S. 730,

10

739 (1980) ("when a police officer has observed an object in 'plain view,' the owner's
remaining interest in the object are merely those of possession and ownership");
*Horton*, 496 U.S. at 133-134 ("if an article is already in plain view, neither its
observation nor its seizure would involve any invasion of property") (internal
citations omitted). A "recording of visual images of a scene by means of photography
does not amount to a seizure because it does not 'meaningfully interfere' with any
possessory interest.'" *Bills*, 958 F.2d at 707; *see also Mancari*, 463 F.3d at 596
(following *Bills* in holding that photographs taken during search warrant do not
amount to a seizure because there was not meaningful interference with a
possessory interest). It follows here that agents did not physically seize anything
observed in the photographs (outside the bank bags), and thus agents did not
interfere with any possessory interests in the rooms. Accordingly, the photographs
do not constitute a seizure at all. *See United States v. Harb*, 2009 WL 910777, *1, 8
(D. Utah 2009) ("photographs [300 taken of every room and interior and exterior of
premises] during execution of a search warrant is not a seizure in violation of the
Fourth Amendment").

### III. DEFENDANTS' MOTION MAKES NO FACTUAL ALLEGATIONS AND CAN BE DECIDED AS A MATTER OF LAW; NO HEARING IS NECESSARY

Defendants' Motion does not put any material facts at issue. Rather, they
have argued within the language of the affidavit to assert that probable cause was
not established for the bank bags and that the photographs exceeded the scope

11

authorized by the search warrant. *See United States v. Chavez-Marquez*, 66 F.3d

259, 261 (10th Cir. 1995) ("a defendant who requests a hearing bears the burden of

showing that there are disputed issues of material fact"). A hearing is not

necessary.

### IV.   **CONCLUSION**

The Court should deny the Defendant's Motion without a hearing for all of

the reasons set forth above.

Respectfully submitted this 9th day of August, 2022,

COLE FINEGAN
United States Attorney

By:     */s/ Bryan David Fields*          By:     /s/ Albert Buchman
Bryan David Fields                      Albert Buchman
Assistant United States Attorney        Assistant United States Attorney
U.S. Attorney's Office                  U.S. Attorney's Office
1801 California St. Suite 1600          1801 California St. Suite 1600
Denver, CO 80202                        Denver, CO 80202
(303) 454-0100                          (303) 454-0100
Bryan.Fields3@usdoj.gov                 Al.Buchman@usdoj.gov
Attorney for the Government             Attorney for the Government


**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume
limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Albert Buchman*
Albert Buchman

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuance granted on May 12, 2022, ECF No. 198.

*/s/ Albert Buchman*
Albert Buchman

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

*/s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Al.Buchman@usdoj.gov
Attorney for the United States

13

CONVENTIONAL FILING ECF No. 229

Exhibit 3

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, kelsey.totura@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Albert C. Buchman (al.buchman@usdoj.gov,
caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8749173@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Conventionally Submitted
Material
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 8/11/2022 at 3:00 PM MDT and filed on 8/9/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | USA |
| **Document Number:** | 237(No document attached) |

**Docket Text:**
 **Conventionally Submitted Material : 1 Card USB Flash Drive: Exhibit 1 and Exhibit 2 to
Response in Opposition [235] re [229] Notice, by Plaintiff USA. Material placed in the
oversized filing area Area D–5–5 of the Clerk's Office. Text Only Entry (athom, ) (submitted
additional copy of USB placed in Chambers' mail box)**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov,
USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov, stephanie.price@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com),
Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
jessie.zabriskie@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8751835@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
Restrict
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing


The following transaction was entered on 8/12/2022 at 9:59 PM MDT and filed on 8/12/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 238(No document attached) |

**Docket Text:**
 ORDER GRANTING IN PART [201] Motion for Leave to File Motion to Suppress Evidence as
Restricted Level 1.

I must narrowly tailor any restrictions on public access, and must consider whether
supplying a redacted version of a document in lieu of restricting access to the entire
document would adequately protect the interests of the party seeking restriction. *United
States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019); Local Civ. R. 7.2(c)(4). Defendants
Michael and Kimberly Tew have not shown that redacting the identified financial, medical,
and other personal information from the motion to suppress is impracticable or would not
adequately protect the privacy interests at stake.

Accordingly, the motion for leave to restrict is GRANTED IN PART with respect to the
exhibits to the motion only. The Clerk of Court is directed to maintain Doc. [200] and Docs.
200–1 to 200–28 under Level 1 restriction. Plaintiff must file a public redacted version of the
motion to suppress (Doc. [200]) on or before 8/19/2022.

SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, )


**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com),
Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
jessie.zabriskie@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc2
(moses_weisberg@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov),
Probation-General (cod_efiling@cod.uscourts.gov), USM-Criminal Division
(gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8751855@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 8/12/2022 at 10:18 PM MDT and filed on 8/12/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | <u>1:20–cr–00305–DDD</u> |
| **Filer:** | |
| **Document Number:** | 239(No document attached) |

**Docket Text:**

 **ORDER GRANTING IN PART [212] Defendants' Unopposed Motion to Require the Government to Submit Expert Witness Opinions 120 Days Before Trial.**

**Expert witness disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and (b)(1)(C) must be made no later than 8/19/2022, and any challenges to such experts must be made no later than 9/9/2022.**

**Rebuttal expert witness disclosures must be made no later than 9/16/2022, and any challenges to such rebuttal experts must be made no later than 10/7/2022.**

**SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov,
USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, jessie.zabriskie@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov,
USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a
Kimberley Vertanen,**

Defendants.

---

## UNOPPOSED MOTION FOR LEAVE TO FILE REPLIES TO GOVERNMENT'S RESPONSES TO MOTIONS (ECF 230, 231, 232, 233, 234, 235 AND 236)

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby moves this Court for leave to file replies to the responses recently filed by the Government to Defendants' motions. As grounds in support of their motion, Defendants state to the Court as follows:

1. The Government has recently filed seven responses in opposition to the defense pre-trial motions.

2. The Government filed the following responses: 1) Government's Response in Opposition to Defendants' Motion for a *Franks v. Delaware* Hearing (ECF #233); 2) Government's Response in Opposition to Defendant Kimberley Tew's Motion for the Government to File a James Proffer Regarding Co-Conspirator Statements Admissibility Pursuant to Evidence Rule 801(d)(2)(E) and for a James Hearing (ECF #232); 3) Government's Response in Opposition to Defendants' Motion for Sanctions for Violating Communication Privileges (ECF #234); 4) Government's Response in Opposition to Defendant Kimberley Ann Tew's Motion for Severance (ECF #230); 5) Government's Response in Opposition to Defendants' Motion to Suppress Evidence from Search of 3222 East First Avenue, Apt. 224 (ECF #236); 6) Government's Response in Opposition

to Defendant Michael Tew's Motion for the Government to File a James Proffer Regarding Co-Conspirator Statements Admissibility Pursuant to Evidence Rule 801(d)(2)(E) and for a James Hearing (ECF #231); and 7) Government's Response in Opposition to Defendants' Motion to Suppress the Use of Statements (ECF #235).

3.    When the Court granted a motion to continue on May 12, 2022 (ECF #198), the Court set dates for the filing of motions and responses. The Court did not authorize the filing of replies to those responses in that court order.

4.    The Government's filed responses contain citations to dozens of cases which they assert support their legal position.

5.    The defense wants an opportunity to address the case law cited by the Government.

6.    The Government, in some of the responses to motions makes references to factual matters which the defense wishes to address both in writing and at an evidentiary hearing. These include the motions relating to the *Franks v. Delaware* issue the severance motion, the motion for a James Proffer, the motion to suppress statements, and the motion for sanctions for violating communication privileges,

7.    Without the ability to reply to the Government's responses, the Court will not have a full and complete development of the facts and law applicable to the issues for decision, including whether evidentiary hearings are needed.

8.    To these ends, the defense request leave to file replies to the enumerated responses filed by the Government in this case.

9.    Counsel for the defense has conferred with AUSA Bryan Fields who states that "no objection to the replies unless they are raising new factual or legal issues you could have raised in your initial briefs."

WHEREFORE, Defendants Michael A. Tew and Kimberley A. Tew respectfully request leave to file replies to the enumerated Government's response in opposition to their motions. Defense request 14 days to submit their replies because of the number of replies requested.

2

Respectfully submitted this 15th day of August 2022.

> s/ Peter R. Bornstein
> Peter R. Bornstein
> 6060 Greenwood Plaza Blvd., Suite 500
> Greenwood Village, CO 80111
> Telephone: 720-354-4440
> Facsimile: 720-287-5674
> E-mail: pbornstein@prblegal.com
> *Attorney for Defendants Michael A. Tew and Kimberley A. Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

> s/ Peter R. Bornstein
> Peter R. Bornstein

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), Defendants Michael A. Tew and Kimberley A. Tew state that this motion will have no effect on the speedy trial clock because the time to resolve pre-trial motions is excluded time.

> s/ Peter R. Bornstein
> Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of August 2022, I electronically filed the foregoing **UNOPPOSED MOTION FOR LEAVE TO FILE REPLIES TO GOVERNMENT'S RESPONSES TO MOTIONS (ECF 230, 231, 232, 233, 234, 235 AND 236)** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

> s/ Jeannette Wolf
> Jeannette Wolf, Paralegal

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

(1) MICHAEL AARON TEW;
(2) KIMBERLEY ANN TEW a/k/a Kimberley Vertanen; and
(3) JONATHAN K. YIOULOS,

     Defendants.

---

## ORDER REGARDING PRETRIAL DEADLINES
## AND PENDING MOTIONS

---

Upon review of the record including the pending motions, and in view of the upcoming December 2022 trial date and the Court's calendar, I issue the following orders.

It is **ORDERED** that:

1. Defendants' Unopposed Motion for Leave to File Additional Motions (Doc. 213) is **GRANTED**;

2. Any additional pretrial motions must be filed no later than **September 13 2022**, responses to those motions must be filed no later than **September 27, 2022**, and no replies will be permitted without prior leave of the Court; and

3. Prior to filing any discovery motion, counsel for the moving party or a pro se party must confer or make reasonable, good faith efforts to confer with any opposing counsel or pro se party to resolve the dispute(s). If the parties are able to resolve the dispute(s), they may file a

- 1 -

motion titled "Unopposed Motion for _____," and must file the proposed order they wish the Court to enter via CM/ECF and email a copy in editable Word format to Domenico_Chambers@cod.uscourts.gov. If the parties are unable to resolve the dispute(s), the moving party must describe in the motion, or in a certificate attached to the motion, the specific efforts taken to comply with this order to confer and the position of each party at the time the conferral process broke down.

It is **FURTHER ORDERED** that:

4. Defendants' Unopposed Motion for Leave to File Replies to Government's Responses to Motions (Doc. 240) is **GRANTED**. Defendants may file replies in support of their pending motions (Docs. 214, 215, 216, 218, 219, 220, 221) on or before **August 23, 2022**; and

5. A Motions Hearing regarding (a) Defendants' Motion to Suppress Evidence (Doc. 200); (b) Defendants' Motion for Sanctions for Violating Communication Privileges (Doc. 214); (c) Defendant Michael Tew's Motion to Suppress the Use of Statements (Doc. 216); (d) Defendant Kimberley Ann Tew's Motion for Severance (Doc. 218), (e) Defendants' Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 (Doc. 221); and (f) if filed, any additional pretrial motions is **SET** for **10:30 a.m.** on **October 18, 2022** in Courtroom A1002 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294, to the extent I have not issued a ruling on those motions prior to that date.

It is **FURTHER ORDERED** that:

6. Due to a conflict on the Court's calendar, the eight-day Jury Trial set for December 5, 2022 is **VACATED** and **RESET** to commence at **9:00 a.m.** on **December 12, 2022** in Courtroom A1002 of the Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, CO 80294.

Counsel and pro se parties must be present at 8:30 a.m. on the first day of trial;

7. Due to a conflict on the Court's calendar, the Trial Preparation Conference set for November 29, 2022 is **VACATED** and **RESET** to **1:30 p.m.** on **November 22, 2022** in Courtroom A1002;

8. If filed, motions *in limine* are due **fourteen days** before the Trial Preparation Conference. However, motions *in limine* are discouraged when the motion cannot be resolved until evidence is presented at trial; instead, such evidentiary issues can be flagged in a trial brief. Responses to motions *in limine* are due **seven days** before the Trial Preparation Conference, and no replies will be permitted without leave of Court;

9. The parties must jointly file a single integrated set of proposed jury instructions and verdict forms via CM/ECF **seven days** before the Trial Preparation Conference. The parties should attempt to stipulate to the jury instructions, particularly "stock" instructions and verdict forms. Each instruction should be numbered, and same-subject disputed instructions should be grouped and numbered together (*e.g.*, "Stipulated Instruction No. 1," "Government's Instruction No. 2," "Defendant's Instruction No. 2"). Each numbered instruction must begin on a new page. Each proposed instruction must identify the source of the instruction and supporting authority. Whenever practicable and appropriate, the parties should use or adapt for use the Criminal Pattern Jury Instructions prepared by the Criminal Pattern Jury Instruction Committee of the United States Court of Appeals for the Tenth Circuit. The pattern instructions and updates can be found online at https://www.ca10.us courts.gov/clerk/downloads/criminal-pattern-jury-instructions. The parties must also email a copy of their proposed instructions and verdict forms in editable Word format to Domenico_Chambers@cod.uscourts.

- 3 -

gov. Proposed verdict forms must be submitted in a separate file from the proposed jury instructions;

10. If filed, trial briefs may not exceed **2,700 words** and must be filed no later than **four business days** before the Trial Preparation Conference. Trial briefs are encouraged, but not required, and a trial brief may not be used as a substitute for a motion;

11. The parties must file their proposed witness lists via CM/ECF **three business days** before the Trial Preparation Conference. Witness list forms can be found at http://www.cod.uscourts.gov/JudicialOfficers/ ActiveArticleIIIJudges/HonDanielDDomenico.aspx;

12. The parties must file their proposed exhibit lists via CM/ECF **three business days** before the Trial Preparation Conference. Exhibit list forms can be found at http://www.cod.uscourts.gov/JudicialOfficers/ ActiveArticleIIIJudges/HonDanielDDomenico.aspx;

13. The parties must file their proposed *voir dire* questions **two business days** before the Trial Preparation Conference; and

14. Pursuant to Local Criminal Rule 11.1(a), any notice of disposition must be filed no later than **fourteen days** before trial, absent an order permitting or directing otherwise. Upon the filing of a notice of disposition, I generally will convert the Trial Preparation Conference to a change-of-plea hearing.

DATED: August 15, 2022

BY THE COURT:

~~Daniel D. Domenico~~
United States District Judge

IN **THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

1. **MICHAEL AARON TEW,**

2. **KIMBERLEY ANN TEW.**

      Defendants.

---

## REPLY RE: MOTION FOR SANCTIONS FOR VIOLATING COMMUNICATION PRIVILEGES

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R Bornstein, hereby submit their reply in support of their Motion for Sanctions for Violating Communication Privileges. (Doc. 214).

The Government, in its Response (Doc. 234), confuses an important distinction between communication privileges and testimonial privileges. As the Ninth Circuit Court of Appeals said in *United States v. Lefkowitz,* 618 F.2d 1313, 1317-1318 (9th Cir. 1980), in the context of marital communications between spouses,

> The first [privilege against adverse spousal testimony] can be invoked to prevent one spouse from testifying against the other. E.g. *Hawkins v. United States,* 358 U.S. 74, 1958. The second [confidential marital communications privilege] can be invoked to prevent the disclosure of confidential communications arising out of the marital relationship. E.g. *Blau v. United States,* 340 U.S. 322 (1951).

The Government makes the same confused argument about the privileges.

The Supreme Court recognized in *Trammel v. United States,* 445 U.S. 40 (1980) that communications between doctor and patient, husband and wife, and attorney and client are recognized privileges at common law and in the federal courts. The courts have recognized the privilege in cases such as *Jaffee v. Raymond,* 518

U.S. 1, 10-15 (1996)(physician - patient); *Kerns v. Bader,* 663 F.3d 1173 (10th Cir. 2011), 1184(10th Cir. 2011)(medical records); *Barnett v. PA Consulting Group,* 2006 U.S. Dist. LEXIS 118657 (D.C. 6/29/2006)(psychotherapist - patient). The privilege for private communications between spouses is recognized by the United States Supreme Court in *Blau v. United States,* 340 U.S. 332 (1951)*; Wolfe v. United States,* 291 U.S. 7 (1934); and *Roberts v. United States Jaycees,* 468 U.S. 609, 618-619 (1984). Therefore, the Government's argument in its response that federal courts do not recognize medical privileges and spousal communication privileges is not well taken.

To back up its argument, the Government cites to the Court *United States v. Squillacote,* 221 F.3d 542 (4th Cir. 2000) for the proposition that suppression of evidence was not warranted because the privilege was not constitutionally based. In that case, there were intercepted calls between the defendant and a psychotherapist. The defendant made an argument based on the case of *Kastigar v. United States,* 406 U.S. 441(1972) which argument was rejected. However, in rejecting the argument, the court clearly stated that conversations between a defendant and a psychotherapist were privileged. *Id.* at 559. The issue in that case was the use of derivative evidence, not direct evidence of a privileged communication. The Government also cites the case of *United States v. Lefkowitz,* 618 F.2d 1313 (9th Cir. 1980) for the proposition that the privileges are not grounded in the Constitution. That case involved a search warrant based on information given to law enforcement by the defendant's wife. The case recognizes that there is a confidential marital communication privilege. *Id.* at 1317-1318. The privileges at issue here require protection whether or not they are grounded in the Constitution.

Next, the Government makes an argument concerning the use of filter teams to determine whether evidence protected by an attorney-client privilege would be withheld from the prosecution team. In this case, the Government in March of 2022 belatedly established an in-house filter team to look for attorney-client

2

communications only.  The government's filter team was not charged with finding or removing from consideration marital communications, medical records, physician-patient. communications, or accountant-client communications. The government's filter team is not a reasonable fix for the fact that the Government seized and now has in its possession privileged communications.  In this case, the Government has asked counsel to personally review hundreds or thousands of emails, text messages, and private communications between husband and wife to determine and request on a communication-by-communication basis that the Government honor the privilege.  This request is unreasonable for two reasons. First, it shifts the burden on the Defendants' attorney that belongs with the prosecution.  Second, it is more than this defense counsel can do without hiring additional support.

Defendants seek sanctions for what the Government has done with their confidential communications in this case.  The Government seized, through text messages and emails, hundreds, if not thousands, of communications between husband and wife. Now that it has been challenged in its overreach, it asserts that some of those communications may have lost their privilege status because of alleged involvement by the spouse through a criminal conspiracy in criminal activity. However, the Government has not sought to set forth which of the hundreds if not thousands of communications it claims occurred after one or more spouses became a participant in a crime and when such communication is, in fact, evidence of joint criminal activity.  The Government simply says that it is allowed to look at everything because some conversations may have lost their protective status.

Finally, the Government argues that even if there was a basis for sanctions, the Court should impose the least severe sanction that will punish the offending party for his wrongdoing.  In this case, it argues that the sanction of dismissal would be too radical and extreme.  However, the Government does not state why it is so radical and extreme or what sanction would be appropriate in this case.  Consequently, the

3

Defendants stand on their request that the Court impose sanctions for the violation of privileged communications, and that that sanction be dismissal of the indictment.

Respectfully submitted this 23rd day of August, 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for* Defendants Michael Aaron Tew
*and Kimberley Ann Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Peter R. Bornstein
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on August 23rd 2022, I electronically filed the foregoing *Reply Re: Motion for Sanctions* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jeannette Wolf
Jeannette Wolf

4

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

      Defendants.

---

**REPLY RE: MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF**
**3222 EAST FIRST AVENUE, APARTMENT 224**

---

      Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby submit their reply in support of their Motion to Suppress Evidence from the search of 3222 East First Avenue, Apartment 224. (Doc. 221). The government has now filed its response in opposition to the motion. (Doc. 236). In its response, the government asserts that the affidavit in support of the search warrant established probable cause with sufficient nexus to seize the two bank bags; and the government asserts that all photographs taken by the agents in the apartment were either explicitly authorized or in plain view and, therefore, should not be suppressed.

      The government does not contest and, therefore, concedes that when agents arrived at the apartment, Michael Tew was there, but not Kimberley Tew; and that Michael Tew immediately showed the agents the two bags; and that Michael Tew told the agents that Ms. Tew was not there, and that she had the iPhone they were looking for. The Government also concedes and does not contest that the agents knew that Kimberley Tew and iPhone with number 917-446-2046 was not in the apartment because Michael

Tew called his wife on that phone number while the agents were conducting the search. Moreover, had the agents wanted to verify the location of the phone, they merely had to call 917-446-2046, the number stated in the search warrant, and talk to Kimberley Tew.

In executing the warrant, once the agents were given the two bank bags that were the subject of the search and had satisfied themselves that Ms. Tew's iPhone was not in the apartment, the search should have been ended. It wasn't. Instead, the agents went through every room in the home and photographed the entire premises for use as exhibits and evidence in the upcoming criminal trial. The agents should have left the home of Michael and Kimberley Tew when the object of their search and their authorization pursuant to a court-issued search warrant was accomplished. However, they didn't leave the home. They continued to conduct what then became an unauthorized illegal search.

With respect to the two bank bags, the Government asserts, without a cogent explanation, that there was a sufficient nexus between the bank bags, the residence, and the criminal conduct or the proceeds or evidence of criminal conduct. The Government makes general statements about search and seizure law such as that the magistrate judge can draw reasonable inferences from the information provided, that probable cause is common sense and practical, not technical, and other such standard rubrics of search and seizure law. However, the Government has not pointed to facts that would cause a reasonable person, such as the magistrate, to conclude that the bank bags contained the proceeds of an alleged fraud from National Air Cargo. To do so involves a leap of faith as well as a leap of logic. It also requires a leap of logic to believe that the bank bags seen on visual surveillance on July 4, 2020 or March 27, 2020 were used in a fraud. Dealing with probabilities, not possibilities, the Government has failed to show a probability that the bank bags are linked to the alleged fraudulent scheme to defraud money from National Air Cargo, and that the bank bags were used to deposit proceeds from the fraud. Accordingly, the search of the bank bags and seizure of the bank bags should be suppressed.

2

The second half of the motion relates to the photographs. The Government seeks to invoke the plan view doctrine. However, the plain view doctrine is not applicable. The plain view doctrine requires the seizure of incriminating evidence, not the seizure of evidence unconnected to the crime and, hence, not incriminating. *Horton v. California*, 496 U.S. 128, 134-135 (1990)(citing Coolidge v. New Hampshire, 403 U.S. 443 (1971)).

The second argument made by the Government in this case is that the taking of photographs is not a seizure. The Government cites for this proposition, *United States v. Espinosa*, 641 F.2d 153 (4th Cir. 1991). However, the *Espinosa* court says explicitly "[t]aking a photograph may, under some circumstances, constitute an unreasonable seizure." *Id.* at 166. The Government also cites as authority *United States v. Mancari*, 463 F.3d 590, 596 (7th Cir. 2006). In *Mancari*, the Government photographed money which was directly connected to the crime under investigation. In this case, the photographs have no direct connection to the crime under investigation. Defendants are not challenging the right of agents to photograph that which they are seizing in a search. However, in this case, they went too far and photographed the entire apartment, which was not ***evidence*** in plain view, nor was it evidence of the crime. For these reasons, the photographs taken by the agents of the apartment should be suppressed.

Finally, the Government argues that there is no need for a hearing on whether or not the bank bags were adequately described as part of the warrant or whether the photographs exceeded the scope authorized by the warrant. Defendants raise the issue as to the limits of the Government's right to stay in the apartment photographing it after they had obtained the bank bags and learned that the phone was not available or search or seizure. If the Government concedes these facts, then, perhaps, a hearing is not required; at least not an evidentiary hearing.

3

Respectfully submitted this 23rd day of August, 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for* Defendants Michael Aaron Tew
*and Kimberley Ann Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Peter R. Bornstein
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on August 23rd 2022, I electronically filed the foregoing *Reply Re: Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jeannette Wolf
Jeannette Wolf

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

      Defendants.

---

**COMBINED REPLY TO THE GOVERNMENT'S RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTIONS FOR THE GOVERNMENT
TO FILE A JAMES PROFFER, ETC.**

---

      Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby submits their combined reply to the Governments' Responses in opposition to Defendants' motions for the Government to file a James Proffer. (Docs. 231 and 232).

      Defendants Michael A. Tew and Kimberley A. Tew each filed a motion for the Government to identify any alleged co-conspirator statements which it will seek to admit at the trial pursuant to Fed. R. Evid. 801(d)(2)(E). (Docs. 219 and 220). In this regard, the Defendants rely on a body of law which has come to be called James Proffer and James Hearing. The Government has now filed its response in opposition to these two motions; yet states that "the Government does not oppose making a James Proffer in this case."

      The Government clearly admits that it wants to use co-conspirator statements in its case at trial. However, the Government goes on to state that it cannot identify those statements and proposes a delayed preparation of James log until "eight weeks after the Court rules on the pending motions." The reason for this inability of the Government to

identify co-conspirator statements is, per the Government's response, that it needs to finish executing several search warrants. This delay request is related to the pending motion about privileged communications. (Doc. 214).

The search warrants that the Government references have been identified in a motion to suppress evidence filed by the Defendants on May 12, 2022. (Doc. 200). Those search warrants were sought and obtained back in July, September, and December of 2020 –– twenty months ago or more. During those twenty months or more, this case has been set for trial on three separate dates all of which have been continued by the defense. Theoretically, the Government should have been ready for trial on at least some of those earlier set trial dates. This case is now four months from another trial setting and the defense will be prejudiced if it does not know what statements from the alleged co-conspirators, Jonathan Yioulos, Michael Mora, Christian Rincon, Kimberly Tew, and Michael Tew, the defense needs to prepare to meet or challenge.

Consequently, the Defendants request that this Court set a date for a James Proffer to be turned over by the Government containing all the statements it intends to use at trial from alleged co-conspirators in a timely manner so as to not prejudice the defense. Thereafter, the Court should set a time for the Defendants to challenge that those statements do not meet the requirements of Fed. R. Evid. 801(d)(2)(E), and for a hearing to resolve the issues by any such objections.

Respectfully submitted this 23rd day of August, 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for* Defendants Michael Aaron Tew
*and Kimberley Ann Tew*

2

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Peter R. Bornstein*
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on August 23rd  2022, I electronically filed the foregoing *Combined Reply to the Government's Response in Opposition to Defendants' Motions for the Government to File a James Proffer, Etc.* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

*/s/ Jeannette Wolf*
Jeannette Wolf

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

      Defendants.

---

**REPLY RE: DEFENDANT KIMBERLEY ANN TEW'S
MOTION FOR SEVERANCE**

---

Defendant, Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby submits her reply in support of her motion for a severance (Doc. 218). The government has filed a Response opposing the severance generally and arguing that the *Bruton* rule is applicable but wants the defense to first identify all statements subject to the rule. (Doc. 230).

The first ground submitted by Ms. Tew for a severance relates to the *Bruton* rule. The Government acknowledges the law as stated in Bruton v. United States. The Government is well aware of all of the statements made by Michael Tew and which of those statements or parts of those statements that implicate and mention Kimberley Tew. Despite the fact that the Government has control over the evidence that it intends to admit at trial, it seeks to place the onus on the defense to not only identify which statements the prosecution intends to use at trial, but also identify what parts of statements implicate Kimberley Tew. The government cite no law in its attempt to create a burden or hurdle for the defense.

For example, on July 7, 2020, the government enlisted co-defendant Jonathan Yioulos to make a pretext call to Michael Tew. This call was recorded, and the recording has been turned over to the defense in discovery; however, there is no transcript of this call which lasted approximately thirty minutes. The Government has not provided a transcript of this thirty-minute telephone call. In that call, Michael Tew makes statements incriminating his wife, Kimberley Tew. The defense anticipates but does not know whether the Government will use some or all of that call in the trial of the case.[1]

In the early stages of this case before the indictment was returned by the grand jury, the Tews were each separately interviewed by government agents and the assistant Unites States attorneys assigned to the case. These interviews were conducted in accordance with a proffer agreement whereby the government committed that nothing said in the proffer agreement would be used against the individual being interviewed. The proffer did not cover the situation where statements made in that interview would be used against a co-defendant. If used against a co-defendant the prosecution presumably would ask for a limiting instruction that the jury could only consider the evidence against the co-defendant, but not the proffering defendant. The purpose of the proffers were an attempt by the government and the defendants to reach an early plea agreement in the case. Although the government cannot use Michael Tew's Proffer statements against him unless he breaches the proffer agreement, his statements can be used against Kimberley Tew. Vice versa, her proffer statement cannot be used against her, but it can be used against Michael Tew. If the Government chose to take this course of action during the trial, the Defendants could each ask for a limiting instruction to the jury explaining how this evidence could be used. However, in such case, the evidence would violate the *Bruton*

---

[1] In conferring with AUSA Fields about the motion, Mr. Fields wrote to counsel, "[h]ave you identified any particular statements that you think are covered by Bruton? If you have, can you please send them to me. We might be able to negotiate redactions as permitted by Richardson v. Marsh." In response to this email, Mr. Bornstein wrote back that he believed that the pretext calls from Yioulos to Tew have Bruton problems and that the Proffer of each Tew cannot be used against that person but can be used against the other person.

2

rule.  The statements made during the proffer of each of the defendants lasted approximately six hours of recorded testimony in the case of Michael Tew and two hours of recorded testimony in the case of Kimberley Tew.  Once again, the government has not provided transcripts of these audio recordings.

It is the government, not the defense, that controls what evidence will be introduced by the prosecution in its case in chief.  If the government intends to use statements by Michael Tew that incriminates Kimberley Tew, then either a severance must be granted or the statements must be redacted and sanitized so as to remove any evidentiary value against Kimberley Tew.  The choice between a severance or a redaction is on the government, not on the defense.

In addition to the Bruton problem, Kimberley Tew's motion for a severance relates to and is based on other issues present in the case.  These issues include the difference in the number of counts against Ms. Tew, the amount of evidence concerning her, the inferences that can be drawn from the relationship of husband and wife, and evidentiary rulings that evidence can only be considered against Michael Tew.

Appellate case law on this subject is not helpful.  Appellate law is based on the situation where a defendant is convicted and raises on appeal that he should have been granted a severance.  Since the decision to grant a severance is in the sound discretion of the trial court, almost every such conviction and in every such case the appellate court finds that the court did not abuse its discretion.  This body of law does not assist trial courts in determining when it should grant a severance since those cases where a severance is granted there is no appellate issue.

For these reasons, the Court should grant Kimberley Tew's motion for a separate trial from that of Michael Tew.

3

Respectfully submitted this 23rd day of August, 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*and Kimberley Ann Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Peter R. Bornstein
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on August 23rd  2022, I electronically filed the foregoing *Reply Re: Defendant Kimberley Ann Tew's Motion for Severance* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jeannette Wolf
Jeannette Wolf

4

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

      Defendants.

---

**REPLY RE: DEFENDANT MICHAEL TEW'S MOTION TO SUPPRESS
THE USE OF STATEMENTS**

---

Defendant, Michael A. Tew, by his counsel of record, Peter R. Bornstein, hereby submits his reply in support of his Motion to Suppress the Use of Statements . (Doc. 216). The Government has now filed a response in opposition to Mr. Tew's motion arguing that the Defendant was not in custody when he was questioned by law enforcement officers. (Doc. 235).

Defendant agrees with the general legal principles governing the issue. In this case, Mr. Tew was essentially under house arrest. Although, he could go back to his apartment from the hallway where he met the officers, objectively, he was unable to leave the apartment building. Of the four factors spelled out by the Tenth Circuit in *United States v. Wagner*, 951 F.3d 1232, 1250 (10th Cir. 2020 ), each of those factors is present in this case.

Mr. Tew as a suspect was not told that he was free to refrain from answering questions or to end the interview at will. The agents from the IRS did not so advise him. Second, the questioning was about invoices submitted to National Air Cargo which was

the subject of the criminal case that other agents were actively in the process of filing a complaint and obtaining an arrest warrant. Third, the police officers were armed and dominated the encounter. Finally, the suspect was arrested at the end of the process. These are objective facts and not based on any subjective determinations by either Mr. Tew or by the officers.

Attached to the Response filed by the Government is a Memorandum of Interview written by Supervisory Agent Stark and a Memorandum of Activity written by Supervisory Agent Stark. These memorandums are not a substitute for live testimony at an evidentiary hearing. Nevertheless, it is clear from the Government's own report that Mr. Tew was under house arrest and was not going to be allowed to leave his apartment building.

Based on the totality of the circumstances, Mr. Tew was in custody at the time he was questioned by both Special Agent Anderson and by IRS agents. Consequently, his statements made during this custodial interrogation without Miranda warnings should be suppressed from use at the trial in the case. Additionally, any derivative evidence arising out of this interview and questioning should also be suppressed.

Respectfully submitted this 23rd day of August, 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for* Defendants Michael Aaron Tew
*and Kimberley Ann Tew*

2

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Peter R. Bornstein
Peter R. Bornstein

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23rd 2022, I electronically filed the foregoing *Reply Re: Defendant Michael Tew's Motion to Suppress the Use of Statements* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jeannette Wolf
Jeannette Wolf

3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-0305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

      v.

**1. MICHAEL AARON TEW**,

**2. KIMBERLEY ANN TEW**.

      Defendants.

---

### REPLY RE: MOTION FOR A FRANKS v. DELAWARE HEARING

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, hereby submit their reply in support of their Motion for a *Franks v. Delaware* Hearing. (Doc. 215). In their motion, Defendants set forth material misstatements and omissions from the affidavits that the government used to obtain search warrants in this case. (Motion ¶4).

In its response to this motion (Doc. 233), the government has stated that the Defendants have not made a substantial preliminary showing of any intentionally false statements. Citing *United States v. Williams*, 669 F.3d 903, 905 (8th Cir. 2012), the Government posits that the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. The Government goes on to state that the Defendant has a heavy burden to establish falsity and that it is the burden of the Defendant to make a substantial preliminary showing. *United States v. Arbolaez*, 450 F.3d 1283, 1294 (11th Cir. 2006) and *United States v. Long*, 774 F.3d 653, 662 (10th Cir. 2014).

The Tenth Circuit Court of Appeals, and other Appellate Courts have been less than clear on what the defense needs to do to meet this preliminary showing and burden. It is suggested that the allegations must be accompanied by an offer of proof. *Williams*, *id.* at 905 (quoting *Franks v. Delaware*, 438 U.S. 154 (1978). *United States v. Cooper,* 654 F.3d 1104, 1128 (10th Cir. 2011) suggests that "affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained."

Given the ambiguity of what is required by the defense to meet the Government's challenge that it has not made a substantial preliminary showing, the Defendants tender to the Court their affidavits. In tendering these affidavits to the Court, the Defendants invoke the Simmons doctrine wherein the Supreme Court held that a defendant's testimony at a suppression hearing to establish standing to object to a search cannot be used against him at trial to establish guilt because, otherwise, the defendant would be required to choose between the Fourth Amendment right to be free from unreasonable searches and the Fifth Amendment right against self-incrimination. *United States v. Hardwell*, 80 F.3d 1471, 1483 (10th Cir. 1996). These affidavits establish that the government agents' affidavits for the search warrants intentionally or recklessly contained the following material misstatements or omissions.

A. Kimberley Tew did not send on July 1, 2020 a text message to Jonathan Yioulos from a Google voice number 469-319-0152. (Motion ¶4A).

B. Jonathan Yioulos embezzled funds from National Air Cargo ("NAC") using phony invoices well before the first transaction involving either Defendant. (Motion ¶4B).

C. It was Jonathan Yioulos who suggested using companies for invoices to NAC and not Michael Tew. (Motion ¶4D).

D. Jonathan Yioulos participated in the fraud alleged against him in order to help Mr. and Mrs. Tew and not because he was threatened with a loss of employment if he refused to pay fraudulent invoices.

2

E.   Kimberley Tew did not share bank accounts with Michael Tew as they had only one common checking account with Navy Federal Credit Union. (Motion ¶4I).

F.   Michael Tew had bank deposits from other sources of income than from the alleged fraud against NAC.  (Motion ¶4J).

G.   Jonathan Yioulos willingly participated in the fraud and was never threatened that Michael and/or Kimberley Tew would get him fired unless he kept processing fraudulent invoices.  (Motion ¶4C and K)

H.   Kimberley Tew never accessed fraudulent payments from NAC in a variety of bank accounts.  (Motion ¶4L).

I.   NAC payments via ACH did not need approval and could be submitted and paid by Jonathan Yioulos.  (Motion ¶4O).

J.   NAC had no system to identify whether invoices were from approved or unapproved vendors as it had no system to approve vendors.  (Motion ¶4N).

K.   Kimberley Tew did not have accounts or business transactions on the "dark net."  (Motion ¶4H).

L.   At the meeting held on July 28, 2020 at Yeti, Kimberley Tew did not mention the NAC fraud when she said she wanted to take responsibility. (Motion ¶4E).

M.   Jonathan Yioulos received more than "a few" bitcoin.

Defendants are making a serious attack on the veracity of the search warrant affidavits. They are not making conclusory allegations with a mere desire to cross examine agents.

Based on the affidavits of Kimberley A. Tew and Michael A. Tew, the Defendants have now made a substantial preliminary showing that false statements were knowingly and intentionally, or with reckless disregard for the truth, were included by the affiants in the warrants' affidavits submitted to the Court.  These false statements were necessary to

3

the finding of probable cause.  Consequently, the Fourth Amendment requires that a hearing be held pursuant to the request by these two Defendants.  *United States v. Long*, 774 F.3d 653, 661 (10th Cir. 2014).

For these reasons, the Defendants' Motion for a *Franks v. Delaware* hearing should be granted.

Respectfully submitted this 23rd day of August, 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
The Law Offices of Peter R. Bornstein
Greenwood Village, CO 80111
(720) 354-4440 phone
(720) 287-5674 fax
pbornstein@prblegal.com
*Attorney for* Defendants Michael Aaron Tew
*and Kimberley Ann Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

/s/ Peter R. Bornstein
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on August 23rd  2022, I electronically filed the foregoing *Reply Re: Motion for a Franks v. Delaware Hearing* with the Clerk of Court using the CM/ECF system which will send notification of such filing to counsel of record.

/s/ Jeannette Wolf
Jeannette Wolf

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
   **Kimberley Vertanen,**

      Defendants.

---

### DECLARATION OF MICHAEL A. TEW

---

Michael A. Tew, hereby makes the following declaration:

1.      I make this declaration in connection with the motion pending before this Court for a Franks v. Delaware hearing.

2.      In making this declaration, I am relying on the Simmons doctrine that what I say cannot be used at trial to establish my guilt.

3.      Based on discovery provided by the Government in this case, it had evidence that Jonathan Yioulos embezzled funds from National Air Cargo before August of 2018.

4.      Jonathan Yioulos's motivation for paying me money was that I was owed money from National Air Cargo  ("NAC") and because he wanted to help my family when we were being extorted by Craig  Feigin and Christian Rincon.

5.      I never threatened Jonathan Yioulos with a loss of employment if he refused to send money.

6.     Jonathan Yioulos told me that he did not want to communicate with my wife and only wanted to talk to me after December of 2018.

7.     I had bank deposits that came to me from work that I did for clients.

8.     NAC did not have a system of approving or not approving vendors and there was no list by which one could match invoices with approved vendors.

9.     Payments via ACH did not need dual authorization approval and could be submitted and paid by Jonathan Yioulos alone.

10.    Jonathan Yioulos received more than a few Bitcoin.

11.    I never suggested to Yioulos to use unapproved vendor companies for invoices to NAC.

12.    National Air Cargo, Inc. is not a Florida corporation.

I declare and certify under penalty of perjury that the foregoing is true and correct.

Dated and executed on this __23rd__ day of August 2022.


DECLARANT:

_____
Michael A. Tew

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
   **Kimberley Vertanen,**

      Defendants.

---

## DECLARATION OF KIMBERLEY A. TEW

---

      Kimberley A. Tew, hereby makes the following declaration:

      1.      I make this declaration in connection with the motion pending before this Court for a Franks v. Delaware hearing.

      2.      In making this declaration, I am relying on the Simmons doctrine that what I say cannot be used at trial to establish my guilt.

      3.      I did not send a text message to Jonathan Yioulos from a Google Voice Number 469-319-0152 on July 1, 2020 or on any other date.

      4.      Jonathan Yioulos blocked my phone number on November 18, 2018.

      5.      I did not use or access the "dark net."

      6.      I had one shared checking account with my husband, Michael Tew, at Navy Federal Credit Union.

      7.      I never threatened Jonathan Yioulos.

      8.      I never accessed fraudulent payments from National Air Cargo in a variety of bank accounts.

9.      On July 29, 2020, I did not mention NAC or any fraud involving NAC.

I declare and certify under penalty of perjury that the foregoing is true and correct.

Dated and executed on this ___23rd___ day of August 2022.

DECLARANT:

_____
Kimberley A. Tew

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendants.

---

## GOVERNMENT'S LIST OF PROPOSED EXHIBITS FOR SUPPRESSION HEARING OF OCTOBER 12, 2022

---

The government hereby submits its preliminary list of proposed exhibits. The government notes its objection to any hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) for the reasons set forth in its filing at ECF No. 215. The defendants are only entitled to a hearing if they provide a substantial preliminary showing that agents here made intentionally and knowingly false statements or acted with reckless disregard for the truth. This is an extraordinary allegation and entertaining it without a proper basis is contrary to the law's presumption of good faith.

The government will seek to admit exhibits 9-44 only in the event of a *Franks* hearing. Because the issue at a *Franks* hearing is the knowledge of the affiants at the time of the warrant, the government's position is that each is admissible for the non-hearsay effect on the listener (i.e., the affiant using the evidence to craft her affidavit) and not for the truth of any matters asserted.

. . . .

. . . .

1

Respectfully submitted this 6th day of July, 2022.

COLE FINEGAN
United States Attorney

By:     /s/ Bryan Fields

Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:     /s/ Al Buchman

Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record

<div style="text-align: right;">

By: */s Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

</div>

1

CASE CAPTION:  UNITED STATES OF AMERICA v. MICHAEL AARON TEW, ET AL.

CASE NO.:  20-cr-00305-DDD

EXHIBIT LIST OF:  United States of America, Plaintiff
                     (Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1 | | Search Warrant – Kley@me.com | | | | | |
| 2 | | Search Warrant – meyersconsultinggroupinc@gmail.com | | | | | |
| 3 | | Search Warrant – Political.Media.WDC@gmail.com | | | | | |
| 4 | | Search Warrant – chrisrncn@gmail.com | | | | | |
| 5 | | Search Warrant – 3222 First Avenue | | | | | |
| 6 | | Search Warrant Photographs (1) | | | | | |
| 7 | | Search Warrant Photographs (2) | | | | | |
| 8 | | Search Warrant Photographs (3) | | | | | |
| 9 | | K. Tew Application for NFCU Account | | | | | |
| 10 | | K. Tew NFCU Account Statement 12/17/19 – 01/16/20 | | | | | |
| 11 | | K. Tew NFCU Account Statement 03/17/20 – 04/16/20 | | | | | |
| 12 | | ACH Transaction Detail 04/01/2020 | | | | | |
| 13 | | GFL Invoices April 2020 | | | | | |
| 14 | | Key Bank Account Statement 07/27/2017 | | | | | |
| 15 | | Google Account ID x7580 | | | | | |
| 16 | | Text from K. Tew to J. Yioulos July 1, 2020 | | | | | |
| 17 | | Texts between M. Tew and J. Yioulos March 18, 2020 | | | | | |
| 18 | | Texts between K. Tew and J. Yioulos October 30, 2018 | | | | | |
| 19 | | Texts between M. Tew and J. Yiolous November 9, 2018 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 20 | | Texts between M. Tew and J. Yiolous February 19, 2019 | | | | | |
| 21 | | Declaration of M. Tew | | | | | |
| 22 | | Declaration of K. Tew | | | | | |
| 23 | | Summary of J. Yioulous Coinbase Transactions | | | | | |
| 24 | | Email re invoice from CPA | | | | | |
| 24(a) | | Invoice re CPA | | | | | |
| 25 | | Summary of Fraudulently Paid Invoices | | | | | |
| 26 | | ATM Photograph of K. Tew on March 20, 2020 | | | | | |
| 27 | | M. Tew NFCU Account Statement March 17, 2020 – April 16, 2020 | | | | | |
| 28 | | Memorandum of Interview of C.A. and L.A. | | | | | |
| 29 | | Memorandum of Interview of A.S. | | | | | |
| 30 | | Memorandum of Interview of K. Tew on July 7, 2020 | | | | | |
| 31 | | Memorandum of Arrest of M. Tew | | | | | |
| 32 | | Memorandum of Interview of M. Tew | | | | | |
| 33 | | M. Tew Proffer Letter July 12, 2020 | | | | | |
| 34 | | M. Tew Proffer Letter July 27, 2020 | | | | | |
| 35 | | K. Tew Proffer Letter October 16, 2020 | | | | | |
| 36 | | Memorandum of Search of 3222 First Avenue | | | | | |
| 37 | | Memorandum of Interview of A.S. | | | | | |
| 38 | | Audio Recording – J.Y. on July 7, 2020 | | | | | |
| 39 | | Audio Recording – Proffer of M. Tew on July 15, 2020 | | | | | |
| 40(a) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 1) | | | | | |
| 40(b) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 2) | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 40(c) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 3) | | | | | |
| 40(d) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 4) | | | | | |
| 41 | | Audio Recording – Proffer of Meeting on July 29, 2020 | | | | | |
| 42(a) | | Audio Recording – Proffer of K. Tew on October 23, 2020 (part 1) | | | | | |
| 42(b) | | Audio Recording – Proffer of K. Tew on October 23, 2020 (part 2) | | | | | |
| 42(c) | | Audio Recording – Proffer of K. Tew on October 23, 2020 (part 3) | | | | | |
| 43 | | Summary of Exhibits Supporting Statements Identified in ECF No. 215, ¶4 | | | | | |
| 44 | | Texts between M. Tew and J. Yioulos November 13, 2019 | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendants.

---

**GOVERNMENT'S LIST OF PROPOSED WITNESSES FOR SUPPRESSION HEARING OF OCTOBER 12, 2022**

---

The government hereby submits its final list of proposed witnesses. The government notes its objection to any hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978) for the reasons set forth in its filing at ECF No. 215. The defendants are only entitled to a hearing if they provide a substantial preliminary showing that agents here made intentionally and knowingly false statements or acted with reckless disregard for the truth. This is an extraordinary allegation and entertaining it without a proper basis is contrary to the law's presumption of good faith.

The government will have the relevant agents available to testify but if a *Franks* hearing is unnecessary then the proposed times for testimony will be much shorter:   Special Agent

. . . .

. . . .

. . . .

. . . .

. . . .

1

Palmer would be approximately 20 minutes and Special Agent Anderson would be

approximately 30.

Respectfully submitted this 6th day of July, 2022.

COLE FINEGAN
United States Attorney

By: */s/ Bryan Fields*          By: */s/ Al Buchman*
Bryan Fields                     Albert Buchman
Assistant United States Attorney Assistant United States Attorney
U.S. Attorney's Office           U.S. Attorney's Office
1801 California St. Suite 1600   1801 California St. Suite 1600
Denver, CO 80202                 Denver, CO 80202
(303) 454-0100                   (303) 454-0100
Bryan.Fields3@usdoj.gov          Al.Buchman@usdoj.gov
Attorney for the Government      Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of October, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record

By: /s Bryan Fields
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## Judge Daniel D. Domenico

Case No.  20-cr-00305-DDD                    Date: <u>October 12, 2022</u>

Case Title: United States of America v. Michael Aaron Tew et al.

<u>PLAINTIFF</u>  WITNESS LIST
(Plaintiff/Defendant)

| <u>WITNESS</u> | <u>ESTIMATED DATE(S) AND LENGTH OF TESTIMONY</u> |
|---|---|
| <u>TONY ROMERO</u> | <u>October 12, 2022 30 minutes (Direct)</u> |
| <u>LISA PALMER</u> | <u>October 12, 2022 90 minutes (Direct)</u> |
| <u>SARAH ANDERSON</u> | <u>October 12, 2022 60 minutes (Direct)</u> |

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO**

Criminal Case No.:  20-cr-00305-DDD          Date:  October 12, 2022
Courtroom Deputy:  Robert R. Keech          Court Reporter: Julie Thomas
Probation Officer:   N/A                                   Interpreter: N/A

_Parties:_                                                             _Counsel:_

UNITED STATES OF AMERICA,                         Bryan D. Fields
                                                                        Albert C. Buchman
         Plaintiff,

v.

1. MICHAEL AARON TEW, and                        Peter R. Bornstein
2. KIMBERLY ANN TEW,

         Defendants.

---

**COURTROOM MINUTES**

---

**MOTION HEARING**

**9:37 a.m.**     Court in session. Defendants present, on bond.

                     Appearances of counsel.

                     Opening remarks by Court.

                     [218] Defendant Kimberly Ann Tew's Motion for Severance is raised for argument.

9:41 a.m.     Argument by Defendants by Mr. Bornstein.

9:44 a.m.     Argument by Government by Mr. Fields.

10:00 a.m.    Argument by Defendants by Mr. Bornstein.

10:02 a.m.    Argument by Government by Mr. Fields.

10:04 a.m.    Argument by Defendants by Mr. Bornstein.

**ORDERED:**   [218] Defendant Kimberly Ann Tew's Motion for Severance is **TAKEN UNDER ADVISMENT.**

Court indicates a written order shall be forthcoming.

[215] Defendants' Motion for Franks Hearing is raised for argument.

10:06 a.m.   Argument by Defendants by Mr. Bornstein.

10:14 a.m.   Argument by Government by Mr. Fields.

10:39 a.m.   Argument by Defendants by Mr. Bornstein.

**ORDERED:**   [215] Defendants' Motion for Franks Hearing is **DENIED.**

**11:04 a.m.**   Court in recess.

**11:22 a.m.**   Court in session.

11:23 a.m.   Government's witness **Anthony Romero** sworn.

Direct examination by Government by Mr. Fields.
*Exhibit(s) identified:        6, 8*

**Exhibit(s) 6 (pages 2-3 only), 8 (pages 34-35 only) RECEIVED.**

11:45 a.m.   Cross examination by Defendants by Mr. Bornstein.
*Exhibit(s) identified:        A, B, 8*

**Exhibit(s) A, B RECEIVED.**

12:24 p.m.   Re-direct examination by Government by Mr. Fields.

**12:30 p.m.**   Court in recess.

**1:34 p.m.**   Court in session.

1:35 p.m.   Government's witness **Sarah Anderson** sworn.

Direct examination by Government by Mr. Fields.
*Exhibit(s) identified:        8*

1:49 p.m.   Cross examination by Defendants by Mr. Bornstein.

| | |
|---|---|
| 2:26 p.m. | Government's witness **Lisa Palmer** sworn. |

Direct examination by Government by Mr. Fields.
*Exhibit(s) identified:*      *6*

2:33 p.m.     Voir dire by Defendants by Mr. Bornstein.
*Exhibit(s) identified:*      *6*

2:38 p.m.     Direct examination continues by Government by Mr. Fields.
*Exhibit(s) identified:*      *6, 7, 8*

**Exhibit(s) 6 (entire exhibit), 7, 8 (entire exhibit) RECEIVED.**

2:48 p.m.     Cross examination by Defendants by Mr. Bornstein.
*Exhibit(s) identified:*      *8*

3:02 p.m.     Re-direct examination by Government by Mr. Fields.
*Exhibit(s) identified:*      *5*

3:06 p.m.     Government rests.

**3:06 p.m.**     Court in recess.

**3:21 p.m.**     Court in session.

[221] Defendants' Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 and [216] Defendants' Motion to Suppress the Use of Statements are raised for argument.

3:21 p.m.     Argument by Government by Mr. Fields.

3:26 p.m.     Argument by Defendants by Mr. Bornstein.

3:35 p.m.     Argument by Government by Mr. Fields.

3:41 p.m.     Argument by Defendants by Mr. Bornstein.

**ORDERED:**     [221] Defendants' Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 is **TAKEN UNDER ADVISEMENT.**

**ORDERED:**     [216] Defendants' Motion to Suppress the Use of Statements is **TAKEN UNDER ADVISEMENT.**

[200] Defendants' Motion is raised for argument.

3:53 p.m.     Argument by Defendants by Mr. Bornstein.

| 4:06 p.m. | Argument by Government by Mr. Fields. |

4:06 p.m.      Argument by Government by Mr. Fields.

4:19 p.m.      Argument by Defendants by Mr. Bornstein.

4:26 p.m.      Argument by Government by Mr. Fields.

**ORDERED:**   [200] Defendants' Motion is **TAKEN UNDER ADVISEMENT.**

[214] Defendants' Motion for Sanctions for Violating Communication Privileges is raised for argument.

4:29 p.m.      Argument by Defendants by Mr. Bornstein.

4:41 p.m.      Argument by Government by Mr. Fields.

**ORDERED:**   [214] Defendants' Motion for Sanctions for Violating Communication Privileges is **TAKEN UNDER ADVISEMENT.**

[219] Defendant Michael Aaron Tew's Motion for James Hearing and for Government to File a James Proffer and [220] Defendant Kimberly Ann Tew's Motion for James Hearing and for Government to File James Proffer are raised for argument.

4:49 p.m.      Argument by Government by Mr. Fields.

4:52 p.m.      Argument by Defendants by Mr. Bornstein.

**ORDERED:**   [219] Defendant Michael Aaron Tew's Motion for James Hearing and for Government to File a James Proffer is **TAKEN UNDER ADVISEMENT.**

**ORDERED:**   [220] Defendant Kimberly Ann Tew's Motion for James Hearing and for Government to File James Proffer is **TAKEN UNDER ADVISEMENT.**

Court indicates that written orders shall be forthcoming.

**ORDERED:**   Bond is **CONTINUED AS TO BOTH DEFENDANTS.**

**4:59 p.m.**      **Court in recess. <u>Hearing concluded. Total time:   5:45</u>**

**<u>CLERK'S NOTE: EXHIBITS WERE RETURNED TO COUNSEL AT THE CONCLUSION OF THE HEARING.</u>**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

### Judge Daniel D. Domenico

Case No.  20-cr-00305-DDD          Date: October 12, 2022

Case Title: United States of America v. Michael Aaron Tew et al.

### PLAINTIFF  WITNESS LIST
(Plaintiff/Defendant)

| WITNESS | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|
| *Anthony* TONY ROMERO | ① October 12, 2022 30 minutes (Direct) *11:23 am.* |
| LISA PALMER | ③ October 12, 2022 90 minutes (Direct) *2:26 pm.* |
| SARAH ANDERSON | ② October 12, 2022 60 minutes (Direct) *1:35 pm.* |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

CASE CAPTION: <u>UNITED STATES OF AMERICA v. MICHAEL AARON TEW, ET AL.</u>

CASE NO.: <u>20-cr-00305-DDD</u>

EXHIBIT LIST OF: <u>United States of America, Plaintiff</u>

(Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1 | | Search Warrant – Kley@me.com | | | | | |
| 2 | | Search Warrant – meyersconsultinggroupinc@gmail.com | | | | | |
| 3 | | Search Warrant – Political.Media.WDC@gmail.com | | | | | |
| 4 | | Search Warrant – chrisrncn@gmail.com | | | | | |
| 5 | Palmer. | Search Warrant – 3222 First Avenue | | | | | |
| 6 | Romero, Palmer | Search Warrant Photographs (1) | | x | x 10/12 x 10/12 | | pp 2-3 whole exhibit no obj. |
| 7 | Palmer | Search Warrant Photographs (2) | | x | 10/12 | | no obj. |
| 8 | Romero, Anderson Palmer. | Search Warrant Photographs (3) | | x | x 10/12 x 10/12 | | pp 34-35 entire exhibit over obj. |
| 9 | | K. Tew Application for NFCU Account | | | | | |
| 10 | | K. Tew NFCU Account Statement 12/17/19 – 01/16/20 | | | | | |
| 11 | | K. Tew NFCU Account Statement 03/17/20 – 04/16/20 | | | | | |
| 12 | | ACH Transaction Detail 04/01/2020 | | | | | |
| 13 | | GFL Invoices April 2020 | | | | | |
| 14 | | Key Bank Account Statement 07/27/2017 | | | | | |
| 15 | | Google Account ID x7580 | | | | | |
| 16 | | Text from K. Tew to J. Yioulos July 1, 2020 | | | | | |
| 17 | | Texts between M. Tew and J. Yioulos March 18, 2020 | | | | | |
| 18 | | Texts between K. Tew and J. Yioulos October 30, 2018 | | | | | |
| 19 | | Texts between M. Tew and J. Yiolous November 9, 2018 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 20 | | Texts between M. Tew and J. Yiolous February 19, 2019 | | | | | |
| 21 | | Declaration of M. Tew | | | | | |
| 22 | | Declaration of K. Tew | | | | | |
| 23 | | Summary of J. Yioulous Coinbase Transactions | | | | | |
| 24 | | Email re invoice from CPA | | | | | |
| 24(a) | | Invoice re CPA | | | | | |
| 25 | | Summary of Fraudulently Paid Invoices | | | | | |
| 26 | | ATM Photograph of K. Tew on March 20, 2020 | | | | | |
| 27 | | M. Tew NFCU Account Statement March 17, 2020 – April 16, 2020 | | | | | |
| 28 | | Memorandum of Interview of C.A. and L.A. | | | | | |
| 29 | | Memorandum of Interview of A.S. | | | | | |
| 30 | | Memorandum of Interview of K. Tew on July 7, 2020 | | | | | |
| 31 | | Memorandum of Arrest of M. Tew | | | | | |
| 32 | | Memorandum of Interview of M. Tew | | | | | |
| 33 | | M. Tew Proffer Letter July 12, 2020 | | | | | |
| 34 | | M. Tew Proffer Letter July 27, 2020 | | | | | |
| 35 | | K. Tew Proffer Letter October 16, 2020 | | | | | |
| 36 | | Memorandum of Search of 3222 First Avenue | | | | | |
| 37 | | Memorandum of Interview of A.S. | | | | | |
| 38 | | Audio Recording – J.Y. on July 7, 2020 | | | | | |
| 39 | | Audio Recording – Proffer of M. Tew on July 15, 2020 | | | | | |
| 40(a) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 1) | | | | | |
| 40(b) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 2) | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 40(c) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 3) | | | | | |
| 40(d) | | Audio Recording – Proffer of M. Tew on July 28, 2020 (part 4) | | | | | |
| 41 | | Audio Recording – Proffer of Meeting on July 29, 2020 | | | | | |
| 42(a) | | Audio Recording – Proffer of K. Tew on October 23, 2020 (part 1) | | | | | |
| 42(b) | | Audio Recording – Proffer of K. Tew on October 23, 2020 (part 2) | | | | | |
| 42(c) | | Audio Recording – Proffer of K. Tew on October 23, 2020 (part 3) | | | | | |
| 43 | | Summary of Exhibits Supporting Statements Identified in ECF No. 215, ¶4 | | | | | |
| 44 | | Texts between M. Tew and J. Yioulos November 13, 2019 | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  MICHAEL AARON TEW;

    2.  KIMBERLEY ANN TEW,
       a/k/a Kimberley Vertanen

    Defendants.

---

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE FROM SEARCH OF 3222 EAST FIRST AVENUE, APARTMENT 224

---

Defendants Michael A. Tew and Kimberley A. Tew move to suppress from evidence two bank bags and all photographs derived from a July 31, 2020 search of their residence. (Doc. 221.) For the following reasons, the motion to suppress is denied.

### BACKGROUND

The Tews's charges stem from an alleged scheme to defraud National Air Cargo (NAC), a Florida company at which Mr. Tew served as a contracted chief financial officer between 2015 and September 2018. Between August 2018 and July 2020, Mr. Tew allegedly conspired with Ms. Tew and others to defraud NAC via wire of more than $4 million. Mr. Tew was arrested on July 8, 2020 pursuant to a Criminal Complaint (Doc. 1) and arrest warrant (Doc. 2) issued the same day. Mr. and Ms.

Tew were later indicted on February 3, 2021 on counts stemming from the conspiracy. (Doc. 84.)

On July 31, 2020 Special Agent Sarah Anderson of the FBI applied for a search warrant in federal district court, seeking to search all rooms in Mr. and Ms. Tew's place of residence, 3222 East First Avenue, Apartment 224, for two cloth bank bags and an Apple iPhone. (Doc. 221-1.) Magistrate Judge Michael E. Hegarty issued a search warrant on the same day. (Doc. 221-2.) On July 13, 2022, Mr. and Ms. Tew filed the instant motion to suppress. (Doc. 221.) On October 12, 2022, the court held a hearing on the motion, at which testimony and evidence were received.

During the July 31 search of Mr. and Ms. Tew's residence, agents entered into Apartment 224 with a warrant authorizing them to seize two cloth bags, one bearing the insignia of Wells Fargo, and the other bearing an insignia of another bank; and an Apple iPhone. (Doc. 221-2.) Mr. Tew was home, Ms. Tew was not. Mr. Tew showed the agents where the bags were located and explained that Ms. Tew was not in the apartment, and she was in possession of the iPhone identified in the warrant. Mr. Tew called Ms. Tew on the number associated with the specified iPhone while agents searched the apartment. The agents seized the bank bags and took three sets of photographs of the apartment: the first set was taken in order to make a record of the residence pre-search, the second set was taken of evidence and its surroundings upon its discovery, and the third was taken after the search to make a record of the state of the residence following execution of the warrant. Agents took extensive photographs of the Tew residence, as well as the seized bank bags. The agents did not recover the iPhone at that time, as it was in Ms. Tew's possession.

## ANALYSIS

Mr. and Ms. Tew argue that all evidence from the search was derived in violation of the Fourth Amendment and must be suppressed. Specifically, they contend that there was not probable cause to issue a search warrant authorizing the seizure of the bank bags, and that the photographs taken by the agents amounted to a seizure that falls outside the scope of authorization of the search warrant.

## I.   Probable Cause to Seize Bank Bags

I agree with the government that the supporting affidavit to the search warrant established probable cause for the search and seizure of the bank bags. Pursuant to the Fourth Amendment, no judge may issue a warrant without probable cause. Probable cause exists "when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Probable cause requires "a nexus between suspected criminal activity and the place to be searched." *United States v. Corral-Corral*, 899 F.2d 927, 937 (10th Cir. 1990) (citations omitted). "Although neither hard evidence nor personal knowledge of illegal activity are required to demonstrate an adequate nexus, an affidavit must demonstrate circumstances which would warrant a person of reasonable caution in the belief that the articles sought are at a particular place." *United States v. Khan*, 989 F.3d 806, 816 (10th Cir. 2021) (internal quotation marks omitted) (citations omitted).

Mr. and Ms. Tew argue that the affidavit by Special Agent Anderson "failed to [establish] probable cause for the search and seizure of the items seized," and that there was no nexus "between the bank bags, the

residence, the criminal conduct, or the proceeds or evidence of criminal conduct." (Doc. 221 ¶7.) But the affidavit shows that agents had multiple reasons to believe that the bank bags had been used to move the proceeds of criminal conduct and were kept at the Tew residence. (Doc. 221-1.) In a July 28, 2020 interview Mr. Tew told agents that he used two bank bags, one from Wells Fargo and another from Guarantee Bank and Trust to carry cash withdrawn from traditional bank accounts that received proceeds from the alleged NAC fraud. In the same interview Mr. Tew stated that the bank bags were stored at Apartment 224. Special Agent Anderson did not only rely on Mr. Tew's word in her affidavit. Agents had video footage from March 27, 2020 of Mr. Tew holding a black cloth bag that matched his description of the bank bag while he fed cash into a XBTeller Bitcoin ATM. Agents were also in possession of photos from July 4, 2020 that pictured Mr. Tew carrying a black cloth bag with "Wells Fargo" written on the front at an ATM at a Navy Federal Credit Union. Navy Federal Credit Union records show that at the time the photos were taken, Mr. Tew withdrew cash from several named accounts that received NAC funds.

Contrary to Mr. and Ms. Tew's contention, the information provided to the magistrate judge is sufficient to establish the nexus required for probable cause. Search warrants should be reviewed in a commonsense manner. *See, e.g.*, *United States v. Ventresca*, 380 US 102, 109 (1965). The affidavit uses Mr. Tew's own statements and photo and video evidence to establish a clear chain between the proceeds from the alleged fraud, named bank accounts, the bank bags, and Apartment 224. The affidavit succinctly lays out the relationship between the bank bags and the commission of the alleged crime such that a reasonable person would consider the bank bags to be evidence of a crime. The affidavit thoroughly explains that Apartment 224 is the shared residence of Mr. and

- 4 -

Ms. Tew. *See United States v. Gonzalez*, 399 F. 3d 1225, 1231 (10th Cir. 2005) (holding that an affidavit must link the place to be searched with suspected criminal activity and may not simply list the address of the location to be searched). Given Mr. Tew's statements that the bank bags were kept at Apartment 224, a person of reasonable caution could safely assume that a search of the residence would uncover the bank bags. The affidavit established a nexus between the crime, the bank bags, and the residence. The magistrate judge did not err in finding probable cause to issue a search warrant.

When reviewing the issuing magistrate judge's probable-cause determination, the Court should afford "great deference" unless "there is no substantial basis for concluding that probable cause existed." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). I do not consider this a borderline case, and decline to disrupt Judge Hegarty's determination.

## II. Photographs

Mr. and Ms. Tew also seek to suppress all photographs taken at Apartment 224. They argue that the photographs taken by agents during the execution of the search warrant exceeded the scope of the warrant and amount to an illegal seizure. Neither argument is persuasive.

### A. Scope of the Search Warrant

The warrant requirement serves two primary objectives: (1) to ensure that the government's intrusion is necessary; and (2) that it is "as limited as possible." *Coolidge v. New Hampshire*, 403 US 443, 467 (1971). The second goal is accomplished by requiring a particular description of things to be seized. *Id*. Blanket suppression is the required remedy when execution of a warrant amounts to a flagrant fishing

expedition for the discovery of incriminating evidence. *See United States v. Foster*, 100 F.3d 846, 850 (10th Cir. 1996) ("The particularity requirement is undermined and [the otherwise] valid warrant is transformed into a general warrant thereby requiring suppression of all evidence seized under that warrant.") (quoting *United States v. Medlin*, 842 F.2d 1194, 1199 (10th Cir. 1988)). Mr. and Ms. Tew argue that agents exceeded the scope of the warrant when they photographed every "room, closet, and drawer in the apartment" even after Mr. Tew led them to the bank bags and explained that Ms. Tew was in possession of the iPhone described in the warrant. (Doc. 221 at ¶15.) Defendants argue that the agents' search following Mr. Tew's explanation for the whereabouts of the phone constituted an "unauthorized illegal search." (Doc. 246.)

The warrant issued on July 31, 2020 specified "[the] place to be searched includes all rooms for the apartment unit 224." Had Mr. Tew immediately presented the agents with the bank bags and the iPhone, an extensive search and photographic documentation of the rest of the apartment may have raised the possibility of a fishing expedition. But he did not. After Mr. Tew led agents to the bank bags, the other particularized item in the warrant remained missing. Law enforcement officials are not required to halt execution of a search warrant because a suspect alleges that named items in the warrant are not present in the place to be searched. Certainly fewer criminal cases would reach this court were that the case. While Mr. Tew may have truthfully asserted that the iPhone was not in the apartment, agents were not required to take his word for it and halt their search of the apartment. The scope of

- 6 -

the warrant was thus not exceeded when agents continued to execute
the search warrant following receipt of the bank bags.

## B. Photographs as Seizures

A seizure under the Fourth Amendment occurs when "there is some
meaningful interference with an individual's possessory interests in
that property." *United States v. Jacobsen*, 466 US 109, 113 (1984).  The
government argues in their response to Defendants' motion that because
agents did not physically seize anything observed in the photographs
apart from the bank bags, agents did not interfere with either of the
Tews's possessory interests. (Doc. 236.) I agree.

Courts have found in limited circumstances that photographs can
amount to seizures. *See, e.g.*, *United States v. Johnson*, 452 F.2d 1363,
1371 (D.C. Cir. 1971) ("[The] photographic seizure of [defendant's] per-
son during an involuntary detention may run afoul of the Fourth
Amendment's proscription against unreasonable searches and sei-
zures."); *United States v. Jefferson*, 571 F. Supp. 2d 696, 704 (E.D. Va.
2008) (holding that high-resolution photographs of documents for later
review constitute a seizure). *But see, e.g.*, *United States v. Mastronardo*,
987 F. Supp. 2d 569 (E.D. Pa. 2013) (photographing documents is not a
seizure but subsequent examination of the photographs may constitute
a second search). The present facts meet none of these limited circum-
stances and Defendants do not make a compelling case for why a devia-
tion from the case law should be made for them. In photographing the
Tews's apartment, agents did not meaningfully interfere with any of the
Tews's possessory interests in their property, tangible or intangible. The
agents lawfully searched the apartment and took photographs as would

be reasonably expected given the scope of the warrant. The photographs
did not amount to a seizure and should not be suppressed.

Even if some of the photographs had exceeded the scope of the war-
rant, blanket suppression is an inappropriate remedy. First, as the gov-
ernment points out, several of these photographs are of the bank bags
explicitly authorized to be seized. (Doc. 236.) In the defendants' reply,
Mr. and Ms. Tew acknowledge that they are "not challenging the right
of agents to photograph that which they are seizing in a search" yet seek
to suppress photographs of just that. (Doc. 246.) The bank bags were
justified by the warrant and legitimately found during the search, mak-
ing any motion for suppression that includes these photographs inap-
propriate under even Defendants' theory. Second, the Court notes the
government's stated intent to only offer selected photographs at trial.
Third, in executing a search warrant, "officers may take reasonable ac-
tion to secure the premises and to ensure their own safety and the effi-
cacy of the search." *Los Angeles Cnty., California v. Rettele*, 550 U.S. 609,
614 127 S. Ct. 1989, 167 L. Ed. 2d 974 (2007). The first and third rounds
of photographs taken at Apartment 224 were taken as routine procedure
that protects the defendants' interests as well as the government's—
these photographs are taken to accurately represent the premises, in-
cluding any evidence seized, and ensure that any property damage that
may result from a search is recorded.

Blanket suppression is an extreme remedy that should only be ap-
plied in extraordinary cases. *See United States v. Foster*, 100 F.3d 846,
852 (10th Cir. 1996). Mr. and Ms. Tew fail to explain why the present
circumstances meet such demanding criteria. Should the government
offer any particular photographs as evidence that Mr. or Ms. Tew

- 8 -

believes was obtained improperly, they may make a motion to that effect at the appropriate time.

## CONCLUSION

Mr. and Ms. Tew's Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 (Doc. 221) is DENIED as explained above.

DATED: October 27, 2022          BY THE COURT:

Daniel D. Domenico
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1. **MICHAEL AARON TEW**;

    2. KIMBERLEY ANN TEW,
       a/k/a Kimberley Vertanen

    Defendants.

---

## ORDER DENYING MOTION TO SUPPRESS USE OF MICHAEL TEW'S STATEMENTS

---

Defendant Michael A. Tew moves to suppress from evidence statements he made to agents of the United States government on July 8, 2020. (Doc. 216.) For the following reasons, the motion to suppress is denied.

## BACKGROUND

Michael A. Tew's charges stem from an alleged scheme to defraud National Air Cargo (NAC), a Florida company at which Mr. Tew served as a contracted chief financial officer between 2015 and September 2018. Between August 2018 and July 2020, Mr. Tew allegedly conspired with Ms. Tew and others to defraud NAC via wire of more than $4 million. Mr. Tew was arrested on July 8, 2020 pursuant to a Criminal Complaint (Doc. 1) and arrest warrant (Doc. 2) issued the same day. On July 13, 2022, Mr. Tew filed the instant motion to suppress. (Doc. 216.) On

October 12, 2022, the court held a hearing on the motion, at which testimony and evidence were received. The following facts are taken from Mr. Tew's motion and reply, and the government's response; and the testimony given at the hearing. Any facts in dispute are noted.

On July 8, 2020, armed IRS agents and an FBI agent went to Mr. Tew's home upon suspicion that he was going to flee the country. Mr. Tew alleges that the agents were under orders to ensure that Mr. Tew did not flee, although the agents deny they had such orders. The arrest warrant had not yet been issued for Mr. Tew's arrest. Two agents were positioned in the lobby and three others went up to the second floor where Mr. and Ms. Tew live. When Mr. Tew walked out of his apartment at approximately 2:50 p.m., IRS Special Agent Anthony Romero informed Mr. Tew that FBI Special Agent Sarah Anderson was on her way and asked if they could speak privately.[1] Mr. Tew agreed and told Agent Romero that he wanted to tell his wife, Kimberley Tew, what was happening. Mr. Tew recommended that the agents meet him in an outdoor common area on the second floor that abuts the Tews's apartment. Mr. Tew returned to his residence before going with Ms. Tew to the common area where the agents were waiting. Special Agent Romero made small talk with Mr. and Ms. Tew for approximately twenty minutes before Special Agent Anderson arrived. Mr. Tew alleges that Special Agent Romero told one of the Tews's children that he was "not there to arrest their daddy." Special Agent Romero denies he said this. At one point

---

[1] The agents testified that at some point during the interview of Mr. Tew, Ms. Tew accused Special Agent Romero of grabbing Mr. Tew when he first encountered him in the hallway. Special Agent Romero asked Mr. Tew if that was true and Mr. Tew responded it was not. Ms. Tew was not present in the hallway. The motion does not make this allegation and Mr. Tew does not appear to rely on it as a basis for suppression. In any event, because both Mr. Tew and Special Agent Romero deny the incident, I find that it did not occur.

- 2 -

during the small talk, when Ms. Tew became agitated, Mr. Tew got up
to walk back inside his apartment, and Special Agent Romero asked him
to remain within eyesight. During the conversation Mr. and Ms. Tew
declined to answer some of Special Agent Romero's questions, and asked
him questions as to why he was at the apartment. At approximately 3:12
p.m. Special Agent Anderson arrived. Special Agent Anderson requested
permission to record the conversation with Mr. and Ms. Tew, which they
declined. She did not record the conversation.

Special Agent Anderson then spoke with Mr. and Ms. Tew, during
which time Mr. Tew made admissions he seeks here to suppress. During
the interview Mr. Tew got up and walked around. After Mr. Tew and
Special Agent Anderson had spoken for around twenty minutes, Ms.
Tew told Mr. Tew to stop answering questions and reschedule the inter-
view for a later time. The interview ended then. Special Agent Anderson
then served the Tews with a grand jury subpoena. At approximately 3:42
p.m., Special Agent Anderson arranged with the Tews to meet another
time to continue the interview.  At that point, Ms. Tew returned to the
apartment with the Tews's children. Special Agent Romero continued to
make small talk with Mr. Tew. Mr. Tew requested that Special Agent
Romero be present at the next interview. Mr. Tew returned to the apart-
ment, leaving the back door open. After a couple minutes, someone in
the apartment closed the door and the blinds. While the Tews remained
in their apartment Special Agent Anderson placed a phone call to Assis-
tant U.S. Attorney Hetal Doshi to describe the interview, and Ms. Doshi
gave Special Agent Anderson the "green light" to execute a probable
cause arrest on Mr. Tew given the statements he made in his interview.
Special Agent Romero recalled in his testimony that Special Agent An-
derson did not conduct a probable cause arrest, but instead procured an
arrest warrant. The type of arrest does not change the custody analysis

- 3 -

because the interview ended before the decision to arrest was made. Approximately twenty minutes after Mr. Tew returned inside his apartment, agents knocked on the Tews's back door and arrested Mr. Tew.[2] At this point the agents read Mr. Tew his *Miranda* rights for the first time.

## ANALYSIS

Mr. Tew seeks to suppress the statements he made to IRS and FBI agents at his residence. He argues that he was in custody when the interview took place and agents should have given him a *Miranda* warning before his interview. This is not the case.

*Miranda v. Arizona* requires law enforcement officers to issue a warning to a suspect in custodial interrogation of his right to remain silent. 384 U.S. 436, 444 (1966). *Miranda* warnings are not required for every law-enforcement interaction; a person must both be in custody and subject to interrogation before a warning is required. A person is "in custody" when he is "deprived of his freedom of action in any significant way," or his "freedom of action is curtailed to a 'degree associated with formal arrest.'" *United States v. Chee*, 514 F.3d 1106, 1112 (10th Cir. 2008). Custody is determined by an objective inquiry: whether a reasonable person in the defendant's situation would have felt free to leave. *United States v. Rogers*, 391 F.3d 1165, 1171 (10th Cir. 2004). A defendant must first present evidence in support of suppression before the government bears a burden to prove that the constitutional right against self-incrimination was waived. *United States v. Crocker*, 510 F.2d 1129,

---

[2] Special Agent Anderson stated she could not remember if the back door had been left open or was closed. Special Agent Romero recalled that the door was closed.

1135 (10th Cir. 1975), *abrogated on other grounds by United States v. Bustillos-Munoz*, 235 F.3d 505 (10th Cir. 2005).

In my view, Mr. Tew's admission that he did not believe he was under arrest should be dispositive. Defendant's motion explicitly states that agents "lulled [Mr. Tew] into a false belief that he was not under arrest." (Doc. 216 ¶5.) Mr. Tew's entire motion and response are built around the argument that agents had the intent of arresting him and would not have allowed him to leave the residence had he tried to do so. In essence Mr. Tew argues that he was in custody because the agents intended for him to be in custody and tricked him and, ostensibly, his young children into believing he was not. This argument fundamentally misunderstands the custody inquiry, which revolves solely around what a reasonable person *in Mr. Tew's position* would have believed. Mr. Tew did not believe he was in custody. Regardless of what Mr. Tew by his own admission believed, I still have an obligation to determine whether his belief matches that of a reasonable person in his situation.

Whether a person is in custody is a fact-intensive inquiry based on the totality of the circumstances. *Chee*, 514 F.3d at 1112. The Tenth Circuit has used several factors to guide this inquiry: (1) whether a suspect is made aware that he is free to refrain from answering questions; (2) whether he is made aware he is free to end the interview at will; (3) the nature of the questioning; and (4) whether the environment was police-dominated. *Id*. at 1113-14. The first three of these factors weigh heavily against regarding Mr. Tew as in custody while agents interviewed him in the common area of his apartment building. The fourth factor weighs slightly toward a finding that Mr. Tew's freedom was curtailed to some extent, but it is insufficient on its own to establish that Mr. Tew was in

custody. Nothing in the record indicates that his freedom was at any
point curtailed to a degree associated with a formal arrest.

Agents were in contact with Mr. Tew for approximately an hour, but
only about twenty minutes of that contact included substantive ques-
tioning. Special Agent Romero's initial conversation with Mr. Tew and
Ms. Tew was informal small talk, and his contact with Mr. Tew after the
interview with Special Agent Anderson was casual as well. Mr. Tew re-
fused to answer some of Special Agent Romero's questions, and asked
questions of him. Special Agent Romero did not push Mr. Tew on ques-
tions he refused to answer.

During Special Agent Anderson's interview of Mr. Tew, she issued
him a "1001 warning." A "1001 warning" refers to 18 U.S.C § 1001, which
makes it a felony to knowingly and willfully make materially false and
misleading statements to a government official. 18 U.S.C.A. § 1001
(West). Special Agent Anderson gave Mr. Tew a 1001 warning when she
perceived that his answers were not forthright. Defendant argued at the
motions hearing that Special Agent Anderson's warning indicated to Mr.
Tew that he could not refuse to answer questions. This is not the case.
First, Special Agent Anderson's warning came at the end of the inter-
view. Second, informing a suspect that making a false statement to a
government official is a felony is perhaps more likely to encourage a sus-
pect to remain silent, rather than coerce him into answering. I do not
find that the 1001 warning weighs in favor of Mr. Tew being in custody
at the time of the interview. Mr. Tew presents no evidence that either
Special Agent Romero or Special Agent Anderson made him feel as if he

- 6 -

could not refrain from answering questions. His refusal to answer some
of Special Agent Romero's questions indicates the opposite.

Mr. Tew ended the interview after Ms. Tew told him to not answer
further questions. Special Agent Anderson asked no further questions
and arranged to continue the interview at a later date. Mr. Tew presents
no evidence that, despite ending the interview, he did not believe he had
the ability to do so.

Other factors about the totality of the circumstances and the nature
of the interview weigh heavily in favor of the determination that Mr.
Tew was not in custody. First, the interview took place in Mr. Tew's
apartment building, in a common space adjacent to his apartment at his
request, and his wife was present for the majority. A suspect is much
less likely to be in custody if interrogation occurs in familiar surround-
ings such as the suspect's home. *See United States v. Ritchie*, 35 F.3d
1477, 1485 (10th Cir. 1994).  Mr. Tew was not separated from moral
support and was interviewed in a familiar, public place of his choosing.
*See United States v. Griffin*, 7 F.3d 1512, 1519 (10th Cir. 1993)("Circum-
stances [where custody is more easily found] might include: separation
of the suspect from family or colleagues who could offer moral support;
isolation in nonpublic questioning rooms; threatening presence of sev-
eral officers; display of a weapon by an officer; physical contact with the
subject; and an officer's use of language or tone of voice in a manner
implying that compliance with the request might be compelled."). Spe-
cial Agent Anderson asked permission to record the interview and did
not do so when Ms. Tew declined. Mr. Tew got up and walked around
during the interview. He went back into his home after ending the in-
terview of his own volition and was only arrested twenty minutes after

the interview ended—not at the close of the interview. At no point during the interview was Mr. Tew restrained.

Mr. Tew points to evidence that indicates the officers may have dominated the encounter. Six armed officers went to the Tews's apartment building. This is not enough to indicate that a reasonable person in Mr. Tew's position would have believed he was in custody. If the agents were under orders to prevent Mr. Tew from leaving, which is disputed, Mr. Tew was not aware. The agents' weapons were concealed and it is not clear from the record whether Mr. Tew knew they were armed. Four officers were present on the second floor but the contact was limited and largely congenial. Special Agent Romero asked Mr. Tew to remain in his line of sight, but this was only when, according to Special Agent Romero's testimony, Ms. Tew was behaving erratically and he became concerned for the safety of the Tews and the agents present. No agent prevented Mr. or Ms. Tew from returning to the apartment soon after.

Mr. Tew has not met his initial burden of presenting evidence challenging the legality of his statements to IRS and FBI agents. From the evidence presented in the motions and at the suppression hearing, I find that a reasonable person in Mr. Tew's position would have felt free to leave, and thus was not in custody. Because Mr. Tew was not in custody, no *Miranda* warning was required, and his statements are not suppressible based on the absence of such a warning.

**CONCLUSION**

It is ORDERED that Mr. Tew's Motion to Suppress the Use of Statements (Doc. 216) is DENIED.

DATED: October 27, 2022                    BY THE COURT:

Daniel D. Domenico
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

>  Plaintiff,

v.

2.  KIMBERLEY ANN TEW,
>  a/k/a Kimberley Vertanen

>  Defendant.

---

## ORDER DENYING MOTION FOR SEVERANCE

---

Defendant Kimberley A. Tew seeks to sever her trial from that of
her codefendant, Michael A. Tew. Ms. Tew argues that severance is
necessary because admission of her non-testifying codefendant's out-of-
court statements would violate Sixth Amendment's Confrontation
Clause, and because joinder of the defendants will prejudice her case.
For the following reasons, the motion for severance is denied.

## BACKGROUND

The Tews's charges stem from an alleged scheme to defraud National
Air Cargo (NAC), a Florida company at which Mr. Tew served as a con-
tracted chief financial officer between 2015 and September 2018. Be-
tween August 2018 and July 2020, Mr. Tew allegedly conspired with Ms.
Tew and others to defraud NAC via wire of more than $4 million. On
July 7, 2020, alleged co-conspirator Jonathan Yioulos telephoned Mi-
chael Tew to discuss the NAC fraud. Mr. Yioulos did so in cooperation
with the IRS and FBI and was attempting to elicit incriminating

statements from Mr. Tew. Multiple times in the conversation Mr. Tew
made statements that incriminated both him and Ms. Tew.

Mr. Tew was arrested on July 8, 2020 pursuant to a Criminal Com-
plaint (Doc. 1) and arrest warrant (Doc. 2) issued the same day. Follow-
ing his arrest Mr. Tew had multiple interviews with the government per
proffer agreements. The proffers took place on July 15, 2020, July 28,
2020, and July 29, 2020. Ms. Tew did the same. Her proffer took place
on October 23, 2020.  In their proffers, both Mr. and Ms. Tew made in-
criminating statements. Mr. and Ms. Tew were later indicted on Febru-
ary 3, 2021 on counts stemming from the conspiracy. (Doc. 84.) Ms. Tew
is charged with twelve counts of the Indictment, Mr. Tew is charged with
sixty counts. On July 13, 2022, Ms. Tew filed the instant motion to sever.
(Doc. 218.) On October 12, 2022, the court held a hearing on the motion,
at which testimony and evidence were received.

## ANALYSIS

In relevant part, Federal Rule of Criminal Procedure 8(b) provides
that the "indictment or information may charge 2 or more defendants if
they are alleged to have participated in the same act or transaction, or
in the same series of acts or transactions, constituting an offense or of-
fenses." Joint trials are preferred in the federal system for defendants
who are indicted together. *See Zafiro v. United States*, 506 U.S. 534, 537
113 S. Ct. 933, 122 L. Ed. 2d 317 (1993). Joint trials "generally serve the
interests of justice by avoiding inconsistent verdicts and enabling more
accurate assessment of relative culpability." *Richardson v. Marsh*, 481
U.S. 200, 107 S. Ct. 1702, 1708-9 95 L. Ed. 2d 176 (1987). While this
preference exists, a trial severance decision is "within the sound discre-
tion of the trial court." *United States v. Morales*, 108 F.3d 1213, 1219
(10th Cir. 1997).

## I.  *Bruton* **Challenge**

Prejudice requiring severance exists if a joint trial will compromise a defendant's Sixth Amendment right to confront and cross-examine witnesses against him. *See United States v. Zar*, 790 F.3d 1036, 1051-52 (10th Cir. 2015). Specifically, when a non-testifying codefendant's out-of-court statements expressly implicate the defendant and are so "powerfully incriminating" that a court cannot presume the effectiveness of a limiting instruction advising the jury to consider the statements only as to the non-testifying codefendant, the statements may not be used in a joint trial. *Id.* at 1052 (citing *Bruton v. United States*, 391 U.S. 123, 135-36 (1968)). But where a codefendant's out-of-court statements can be redacted to eliminate references to the defendant, admission of the statements against the codefendant can be proper when accompanied by a limiting instruction. *Id.* (citing *Richardson v. Marsh*, 481 U.S. 200, 208 (1987)); *See also United States v. Shaw*, 758 F.3d 1187, 1195-96 (10th Cir. 2014).

Ms. Tew asserts that admission of Mr. Tew's out-of-court statements from a recorded phone call and from Mr. Tew's proffers will violate her Sixth Amendment rights because she will be unable to confront and cross-examine Mr. Tew, who cannot be compelled to testify at his own trial. In her motion Ms. Tew refers to "multiple statements" made by Mr. Tew after July 4, 2018 that name and incriminate Ms. Tew. (Doc. 218 ¶7.) The only specific statements Ms. Tew pointed to  at the October 12, 2022 hearing, however, were the phone call from Mr. Yioulos to Mr. Tew, and Mr. Tew's proffers.

### A. Michael Tew's Telephone Call with Jonathan Yioulos

In his telephone call with Jonathan Yioulos, Mr. Tew made statements that incriminated Ms. Tew. Mr. Yioulos made the call in

- 3 -

cooperation with government agents, who were recording and listening to the conversation. Ms. Tew contends that the phone call violates the *Bruton* rule and justifies severance. It does not.

Neither the defendant nor the government has provided a transcript of the phone call or the statements from the call that would allegedly violate the *Bruton* rule if introduced. From the information provided, I surmise that during the phone call Mr. Yioulos steered the conversation toward the topic of Ms. Tew, and Mr. Tew mentioned that Ms. Tew was involved with some part of the alleged scheme, and was not involved in others. As an initial matter, it seems these statements are not testimonial and therefore cannot constitute a *Bruton* violation. In *Crawford v. Washington*, the Supreme Court held that the Confrontation Clause's reach is limited to testimonial statements. 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). While not definitively laying out what constitutes testimonial versus non-testimonial statements, the Court explained that "[an] accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id.* at 1364. In *Michigan v. Bryant* the Court noted that "the most important instances in which the Clause restricts the introduction of out-of-court statements are those in which state actors are involved in a formal, out-of-court interrogation of a witness to obtain evidence for trial." *Michigan v. Bryant*, 562 U.S. 344, 131 S. Ct. 1143, 1155, 179 L. Ed. 2d 93 (2011). The more formal the situation and the interrogation, the more likely a statement is to be testimonial. *Ohio v. Clark*, 576 U.S. 237, 245, 135 S. Ct. 2173, 192 L. Ed. 2d 306 (2015).

Mr. Tew's statements to Mr. Yioulos were part of an informal conversation, and while the government may have been listening in, the

statements were not to law enforcement. They bear none of the hall-marks of testimonial statements. The government has stated their intent to offer the conversation under 801(d)(2)(E) of the Federal Rules of Evidence, and the defendant has indicated opposition. I do not need to determine whether the statements are admissible, however. I simply note that assuming the statements are admissible, the Confrontation Clause must be implicated to trigger *Bruton* concerns, and it does not appear to be here.

Even if the statements in the phone call were testimonial, moreover, it is not apparent that redaction and a limiting instruction would be insufficient to cure potential Confrontation Clause violations. The government has stated that they will work to appropriately redact the audio and/or transcripts of the conversation to avoid any *Bruton* issues. Defendant has not argued, beyond asking how audio files can be redacted on a practical level, that the statements made in the phone call are "so inculpatory as to the defendant that the practical and human limitations of the jury system cannot be ignored." *United States v. Rahseparian*, 231 F.3d 1267, 1277 (10th Cir. 2000) (internal quotation marks omitted).

## B. The Proffer Agreements

Ms. Tew also argues for severance on the basis that the proffers violate the Sixth Amendment. The government explained at the hearing and in its response (Doc. 230), however, that per the parties' proffer agreement, the proffer statements cannot be introduced against either defendant unless one or both of the defendants presents a defense at trial that is inconsistent with the proffer statements. If the defendants "open the door" to the proffer statements by doing so, then the government may choose to introduce them. The proffers are testimonial, given in a formal capacity to law enforcement, and thus would be subject to

*Bruton*. However, the defendants have complete control over whether the proffers can come in. They choose whether to present a defense inconsistent with the proffers, and can keep the proffers out of the trial entirely. If one defendant chooses to breach the proffer agreement, the proffer may come in against the breaching party. The government has stated that if this occurs, it will work with the defendants to redact whatever portions of the proffers present potential Confrontation Clause violations so that the proffer does not implicate the non-breaching defendant. As with the telephone call, Defendant has not presented evidence to me that the substance of the proffers could not be redacted properly or that a limiting instruction to the jury would be insufficient. I do not find a *Bruton* violation based on the proffers at this time.

## II.     Prejudicial Joinder

Rule 14(a) allows for severance of defendants' trials when "consolidation for trial appears to prejudice a defendant or the government." A defendant must satisfy the "heavy burden of real prejudice to his case" to persuade the Court to exercise its discretion to sever her trial. *United States v. Hall*, 473 F.3d 1295, 1302 (10th Cir. 2007). A defendant is prejudiced when "there is a serious risk that a joint trial will compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009).). Ms. Tew argues that she will suffer from real prejudice because of the mismatch in culpability and counts between her case and Mr. Tew's, and because of the "special prejudice that arises from the joint trial involving a husband and wife." (Doc. 218 ¶19.) Defendant indicates that a jury will impute Mr. Tew's actions to Ms. Tew because of their marital bond. Defendant cites no law on this matter, stating only "[t]his is just natural." (Doc. 218 ¶21.)

- 6 -

Rule 14(a)'s prejudice standard is not met, however, merely because
there is a "negative spill-over effect from damaging evidence presented
against codefendants." *United States v. Caldwell*, 560 F.3d 1214, 1221
(10th Cir. 2009The Court noted in *Richardson* that joint trials assist
juries in assessing relative culpability. 481 at 1708-9. Disparate culpa-
bility is not unusual in joint trials. *United States v. Youngpeter*, 986
F.2d 349, 354 (10th Cir. 1993 ) ("It would be normal and usual to as-
sume one of two or more co-defendants would be more or less culpable
than the others.").Serious risk of prejudice can arise when a jury con-
siders evidence against a defendant "which is only admissible against a
co-defendant and would not be admitted against the defendant in a
separate trial" and the defendants are "tried together in a complex case
and they have markedly different degrees of culpability." *United States
v. Sarracino*, 340 F.3d 1148, 1165 (10th Cir. 2003). Ms. Tew relies on
*Sarracino* but fails to point out any evidence that would come in at a
joint trial but not in a severed trial. Evidence of Mr. Tew's actions
would likely be admissible in a separate trial to show the existence,
scope, and nature of the Tews's conspiracy. Further, were the trials
severed Mr. Tew's proffer could likely come in against Ms. Tew. The
difference in number of counts and culpability between Defendants
does not present a risk of real prejudice in this case.

Nor would a jury be unable to independently evaluate Mr. and Ms.
Tew because of their status as spouses. A "central assumption of our
jurisprudence is that juries follow the instructions they receive."
*United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998). As previ-
ously noted, Defendant cites no law that indicates juries are unable to
separately evaluate married codefendants.

Ms. Tew has not met her burden of demonstrating real prejudice that would compromise her trial rights. The strong interests of judicial economy and consistency are served by holding a joint trial.

## CONCLUSION

Ms. Tew's Motion for Severance (Doc. 218) is DENIED as explained above.

DATED: October 27, 2022      BY THE COURT:

~~Daniel D. Domenico~~
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  MICHAEL AARON TEW;

    2.  KIMBERLEY ANN TEW,
        a/k/a Kimberley Vertanen

    Defendants.

---

## ORDER DENYING MOTION FOR SANCTIONS

---

Defendants Michael A. Tew and Kimberley A. Tew move to dismiss the case against them as a sanction for the government's alleged violation of Defendants' "attorney-client, marital, accountant-client, and doctor-patient/medical privileges."(Doc. 214.) I do not find it necessary to reach the merits of their argument—Defendants have not sufficiently demonstrated that the extraordinary remedy of dismissal or other sanction is warranted, so the motion is denied.

The defendants' motion stems from communications obtained via warrant from Mr. and Ms. Tew's electronically stored records (Doc. 214 ¶2.) Defendants maintain that communications with lawyers, doctors, accountants, and spouses are embedded in this data. At some point, one of Defendants' prior counsel agreed to the use of a filter team of walled-off prosecutors and staff to find and remove attorney-client communications from some of this data. Later counsel objected to this arrangement. The government and the objecting counsel arranged to

meet, but counsel abruptly withdrew from representation. At that point the government paused execution of its warrant. The defendants argue that the government's extensive access to Defendants' communications, privileged and unprivileged, constitutes prosecutorial misconduct that should be sanctioned by dismissal. The government provides evidence that it has worked diligently with the defendants' multiple attorneys to ensure that privilege is protected and that the defendants have input and control over the filter process. (Doc. 234 ¶2.) Defendants' prior counsel, Mr. Ekeland, and current counsel refused to identify what communications they believed to be protected by privilege. They instead maintained that the use of a government filter team in general is entirely unacceptable and irredeemable, despite failing to provide any case law to support such a broad position.

Federal courts may order the dismissal of an indictment as a sanction for prosecutorial misconduct. The power to dismiss indictments stems from two sources: (1) constitutional error that interferes with the independence and integrity of the grand jury; (2) the court's supervisory powers. *See, e.g.*, *Doggett v. United States*, 505 U.S. 647, 112 S. Ct. 2686, 120 L. Ed. 2d 520 (1992); *United States v. Slough*, 679 F. Supp. 2d 55 (D.D.C. 2010) ("Under its supervisory powers, the court may dismiss an indictment with prejudice as a sanction for prosecutorial misconduct…It is clear, however, that the court may exercise this authority only in extreme circumstances." (internal citations omitted).

Defendants argue for dismissal on the basis of both constitutional error and my supervisory powers, but only point to vague allegations of violation of communications privileges. Dismissal of an indictment as a sanction should only be used in extraordinary circumstances. *See, e.g.*, *United States v. Welborn*, 849 F.2d 980, 985 (5th Cir. 1988) ("The supervisory authority of the district court includes the power to impose

the extreme sanction of dismissal with prejudice only in extraordinary situations and only where the government's misconduct has prejudiced the defendant."). Defendants do not note if they seek dismissal with or without prejudice. Regardless of the type of dismissal, the Tews must demonstrate that they were prejudiced by the government's misconduct. *See, e.g.*, *Bank of Nova Scotia v. United States*, 487 U.S. 250, 108 S. Ct. 2369, 101 L. Ed. 2d 228 (1988) (holding that generally district courts may not dismiss an indictment for errors in grand jury proceedings unless the errors were prejudicial); *United States v. Isgro*, 974 F.2d 1091, 1094 (9th Cir. 1992), as amended on denial of reh'g (Nov. 25, 1992) ("Before it may invoke this power, a court must first find that the defendant is actually prejudiced by the misconduct. Absent such prejudice—that is, absent " 'grave' doubt that the decision to indict was free from the substantial influence of [the misconduct]"—a dismissal is not warranted."); *United States v. Chapman*, 524 F.3d 1073, 1087 (9th Cir. 2008) ("A court may dismiss an indictment under its supervisory powers only when the defendant suffers substantial prejudice and where no lesser remedial action is available[.]") (internal citations omitted) (internal quotation marks omitted).

Defendants have not met their burden. Apart from general dismay about the amount of information the government's filter team has access to, Defendants provide no concrete information that indicate the government's use of a filter team for attorney-client privilege, and non-filtering for marital communications, physician-patient communications, and accountant-client communications have materially prejudiced the defendants. The government has attempted to work with the defendants and their counsel to involve them in the filter process. The government attempted to set up meetings, paused their execution of warrants, and solicited input from Defendants in an attempt to ensure

- 3 -

privilege would not be violated. Defendants provide no evidence to the
contrary and have not explained how they have been prejudiced by the
government's handling of the Tews's digital information. They seem to
argue that they cannot explain how they were prejudiced because the
materials the government provided to them are too voluminous for De-
fendants to flag violations of communications privileges. (Doc. 245.) I
am not persuaded by the argument that the government should be
punished because it would be overly resource-intensive for the defend-
ants to meet their legal burden.

Even if plaintiffs had shown prejudice, the motion would be denied.
Filter teams are generally considered an acceptable mechanism by
which to find and remove attorney-client communications. *See, e.g.*, *In
re Sealed Search Warrant & Application for a Warrant by Tel. or Other
Reliable Elec. Means*, 11 F.4th 1235, 1249 (11th Cir. 2021), cert. denied
sub nom. *Korf v. United States*, No. 21-1364, 2022 WL 4651429 (U.S.
Oct. 3, 2022) ("The Second, Third, Fourth, Seventh, Eighth, Ninth and
Tenth Circuits, at least in some cases, have also either approved of or
recognized and declined to criticize the use of government filter teams
to screen materials for privilege before items are released to the inves-
tigators in the case."). The cases that Defendants cite, which are highly
critical of filter teams, do not hold that the use of filter teams is *per se*
unconstitutional. *See In re Search Warrant*, 942 F.3d 159 (4th Cir.
2019), as amended (Oct. 31, 2019); *In re Grand Jury Subpoenas*, 454
F.3d 511 (6th Cir. 2006). A blanket objection to the use of government
filter teams is not tenable, particularly when undertaken with the ap-
parent approval of Defendants' counsel at the time. Second, the party
claiming attorney-client privilege bears the burden of showing that the
privilege applies to the communications at issue, which the defendants
have not done. *See In re Grand Jury Proc.*, 156 F.3d 1038, 1042 (10th

Cir. 1998). Third, Defendants invoke a blanket physician-patient privilege, but only cite cases that discuss limited exceptions. *See Jaffee v. Redmond,* 518 U.S. 1, 10 (1996) (recognizing psychotherapist-patient privilege and distinguishing from physician-patient relationship); *Kerns v. Bader,* 663 F.3d 1173, 1184 (10th Cir. 2011) (acknowledging that a patient has a privacy interest in medical records held by a third-party medical services provider). Fourth, Defendants have not convincingly rebutted the government's contention that the marital communication privilege is evidentiary, and marital communications may be used by the government outside of the courtroom. Fifth, Defendants invoke accountant-client privilege despite the Supreme Court's pronouncement that "no confidential accountant-client privilege exists under federal law, and no state created privilege has been recognized in federal cases." *Couch v. United States,* 409 U.S. 322, 93 S. Ct. 611, 61934 L. Ed. 2d 548 (1973). Defendants have not demonstrated that the government's use of a filter team is inappropriate, or that the government had an obligation to filter for communications outside of the scope of attorney-client privilege.

Defendants state in their motion that dismissal is the only appropriate sanction and suggest no alternative penalty. (Doc. 214 ¶12.) At the hearing they suggested they would be willing to accept a sanction of suppression of the government's largest seized tranche of e-mails and text messages. They have demonstrated neither prosecutorial misconduct nor prejudicial effect. Dismissal of the indictment is thus inappropriate, as is the lesser sanction of suppression.

## CONCLUSION

Mr. and Ms. Tew's Motion for Sanctions for Violating Communications Privileges (Doc. 214) is DENIED as explained above.

DATED: October 27, 2022          BY THE COURT:

Daniel D. Domenico
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. MICHAEL AARON TEW;

2. KIMBERLEY ANN TEW,
   a/k/a Kimberley Vertanen

Defendants.

---

## ORDER DENYING MOTION TO SUPPRESS EVIDENCE

---

Before the court is Defendants Michael A. Tew and Kimberley A. Tew's Motion to Suppress. (Doc. 200). Mr. and Ms. Tew move to suppress evidence derived from searches and seizures utilizing provisions of the Stored Communications Act. For the following reasons, the motion to suppress is denied.

## BACKGROUND

Michael A. Tew and Kimberley A. Tew's charges stem from an alleged scheme to defraud via wire National Air Cargo, Mr. Tew's former place of work. While investigating these charges, the government sought and obtained judicial authority to seize stored communications records and related data from 13 separate electronic service providers' ("ESP") accounts that the government claims are associated with the defendants. The government obtained the records using the procedures in the Stored Communications Act ("SCA"), 18 U.S.C. §§ 2701-2713. In all 13

- 1 -

instances, the government obtained records via judicial orders issued by a magistrate judge pursuant to SCA § 2703(d). For 5 of the 13 accounts, the government obtained additional evidence by executing search warrants pursuant to SCA § 2703(a). On May 12, 2022, Defendants filed the instant motion to suppress (Doc. 200). On October 12, 2022, I held a hearing on the motion.

## APPLICABLE LAW

The defendants bear the burden of proving that the search here was improper. *United States v. Carhee*, 27 F.3d 1493, 1496 (10th Cir. 1994) ("Generally, if the search or seizure was pursuant to a warrant, the defendant has the burden of proof."); *United States v. Madrid*, 30 F.3d 1269, 1275 (10th Cir. 1994) ("The proponent of a motion to suppress bears the burden of proof.").

Defendants contend that the warrantless seizure of information utilizing § 2703(d) orders is unconstitutional, and thus, that the government bears the burden of proving that the warrantless searches were justified by an exception to the requirement of the Fourth Amendment.

Together, SCA §§ 2703(a) – (d) delineate between several different situations where a governmental entity may require an ESP to disclose information. §§ 2703(a) & (b) place greater restrictions on the government if it seeks the *contents* of a wire or electronic communication. § 2703(c), on the other hand, requires ESPs to disclose a record or other information pertaining to a subscriber of such service (not including the contents of communications) when the government obtains a court order under § 2703(d).

To receive a court order under § 2703(d), the government must offer specific and articulable facts showing that there are reasonable grounds

to believe that the records or other information sought are relevant and material to an ongoing criminal investigation. This is a lower standard than the Fourth Amendment's probable cause standard to obtain a warrant.

## DISCUSSION

### I.  Constitutional Framework

The two cases that each party relies on to advance the merits of their argument are *US. v. Warshak* and *Carpenter v. US*.

#### A.  *US v. Warshak*

In *US v. Warshak*, the Sixth Circuit deemed the SCA unconstitutional in the limited circumstance where SCA § 2703(d) allows the government to obtain the contents of one's emails without a warrant. The basis for this holding was that people have a subjective, reasonable expectation of privacy in the contents of their emails, and this expectation is one that society is objectively prepared to recognize. This follows the rationale of *Katz v. US. See Katz v. United States*, 389 U.S. 347 (1967) (creating reasonable expectation of privacy test). In finding a reasonable expectation of privacy in the content of emails, the Court analogized emails to letters and ESPs to the post-office which the content must flow through. *United States v. Warshak,* 631 F.3d 266, 286 (6th Cir. 2010). If a post-office employee was required to open an envelope and share the contents of a letter with the government absent a warrant, one would suffer an unreasonable violation of privacy in the eyes of the Fourth Amendment. Conversely, if the government obtains only the information on the outside of the envelope, the intrusion is not unreasonable.

Defendants now seek to extend the holding of *Warshak* to cover the *non-content* information about email addresses. The SCA's explicitly

- 3 -

different treatment of content versus non-content information, however, forecloses this extension. *Warshak* held that SCA §2703(b)(2), which authorizes the government to get the *content* of emails without a warrant (though with notice), was unconstitutional. Here, the government obtained the non-content information specifically authorized in SCA §§ 2703(c)(1)(B) & (E), for which there is no reasonable expectation of privacy.

Because of this, the government did not violate any of the principles set forth in *Warshak* when it obtained information related to the Defendants' email accounts via court order pursuant to SCA §2703(d).

### B. Carpenter v. US

In *Carpenter v. US*, the Supreme Court held that the government must obtain a warrant whenever it wishes to search a cellphone. The Court recognized that carrying a cellphone is "indispensable to participation in modern society." *Carpenter v. United States*, 138 S. Ct. 2206, 2210 (2018). At issue in *Carpenter* was the Cell-Site Location Information (CSLI) that the government obtained from an ESP while investigating criminal charges against defendant Carpenter. This information allowed investigators to obtain an average of 101 data points per day tracking Carpenter's movements. *Id.* at 2212. The Court grappled with the advancement of technology, recognizing that "the accuracy of CSLI is rapidly approaching GPS-level precision" in arriving at its conclusion that cellphones deserve special protection from searches. *Id.* at 2219.

Defendants now argue that, based on the holding of *Carpenter*, the same logic should apply to the situation at hand and the government should be required to obtain a warrant to access the non-content information about the defendant's email addresses.

The problems the Supreme Court identified with respect to cell-phones, though, are generally not present in the context of the non-content information about an email address. There is no risk that this information becomes more inherently sensitive due to technological advancement, as is the case with CSLI's increasing accuracy over time. This is because no matter how much non-content information about an email address is gathered, accessing the content of those emails would still require a warrant under *Warshak*.

As the government mentions in its Response, moreover, all the non-content information that the 2703(d) orders required ESPs to disclose in this case fall within the scope of prior decisions. (Doc. 204 at 3 – 5.) The most notable decisions that the government point to are *Smith v. Maryland* and *United States v. Miller*. Together, these cases establish what courts refer to as "third-party doctrine." *Carpenter*, 138 S. Ct. at 2263.

In *Smith v. Maryland,* the Supreme Court held that people have no reasonable expectation of privacy in the phone numbers they dial since telephone users realize they must share that information with the telephone company. *Smith v. Maryland*, 442 U.S. 735, 742 (1979). In *United States v. Miller,* the Supreme Court found no reasonable expectation of privacy in the contents of checks and deposit slips since they contain only information voluntarily conveyed to banks and are simply negotiable instruments to be used in transactions. *United States v. Miller*, 425 U.S. 435, 442 (1976).

Like phone records and checks, users of email addresses understand that they must share information related to their account with the service provider. The non-content information about the account is nothing more than evidence that the user created and used a certain email

address. This does not require extra protection like the CSLI in *Carpenter* since there is no reasonable expectation of privacy.

The Tews recognized that they are asking me to extend *Carpenter* beyond the specific context of that case. Whatever the merits of their arguments, I am unable to do so. The Court in *Carpenter* flatly "decline[d] to extend *Smith* and *Miller* to the collection of CSLI." *Carpenter*, 138 S. Ct. at 2220. In 2020, the Tenth Circuit also applied *Smith* and *Miller* to business reports collected by the IRS, finding no reasonable expectation of privacy in these reports on behalf of the business owners. This holding was based on the voluntary conveyance of the information to the government and the low sensitivity of the reports when compared to CSLI from *Carpenter. See Standing Akimbo, LLC v. United States through Internal Revenue Serv.*, 955 F.3d 1146, 1164-65 (10th Cir. 2020). Furthermore, vertical *stare decisis* is an absolute command, and lower courts are forbidden from revisiting a higher court's binding holding, no matter how little sense a bound party – or the lower court – may think the applicable rule of law makes. *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 361 F. Supp. 3d 324, 340 n.10 (E.D.N.Y. 2019).

Since the non-content information at issue bears a much closer resemblance to the records collected in *Smith* and *Miller* than it does to CSLI, it would be improper to extend *Carpenter* to this circumstance.

## II. Probable Cause

The Fourth Amendment requires probable cause before a warrant can be issued. "Probable cause to issue a search warrant exists when the supporting affidavit sets forth sufficient facts that would lead a prudent person to believe that a search of the described premises would uncover contraband or evidence of a crime." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). Put another way,

whether there exists probable cause is a "commonsense, practical question" answered by evaluating the totality of the circumstances and turning on whether there is a "fair probability" that contraband or evidence will be in a particular place. *United States v. Biglow*, 562 F.3d 1272, 1281 (10th Cir. 2009) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). If the circumstances are "doubtful or marginal," the district court should give deference to the judgment of the magistrate judge. *Biglow*, 562 F.3d at 1282 (quoting *Massachusetts v. Upton*, 466 U.S. 727, 734 (1984).

When reviewing the issuing magistrate judge's probable-cause determination, the Court should afford "great deference" unless "there is no substantial basis for concluding that probable cause existed." *United States v. Sanchez*, 725 F.3d 1243, 1247 (10th Cir. 2013) (citations omitted). The defendants urge me to give zero deference to the magistrate judge's determination that each of the warrants at issue was supported by probable cause. This argument, however, is based on a hyper-technical reading of specific paragraphs in the affidavits that were filed by an AUSA under the penalty of perjury and which aimed to accurately summarize voluminous financial records. The warrants described the items to be seized with sufficient particularity, limiting them to evidence related to specific statutes and to a specific scheme against the named victim company. (Def. Mot. Ex. D at SW_00000065; Def. Mot. Ex. F at SW_0000005; Def. Mot. Ex. H at SW_00000102; Def. Mot. Ex. I at SW_00000126; Def. Mot. Ex. K at SW_00000151).

The warrants here also are limited to the time frames set forth in the affidavits. (Def. Mot. Ex. D (limited to between May 1, 2018 and September 17, 2020); Def. Mot. Ex. F (limited to between June 1, 2018 and July 7, 2020); Def. Mot. Ex. H (limited to between August 12, 2020 and October 22, 2020); Def. Mot. Ex. I limited to after August 1, 2018); Def. Mot. Ex. K (same)). In the Tenth Circuit, it is generally sufficient for a

- 7 -

warrant to specify that the evidence is seeks is tied to specific criminal statutes and is cabined to a particular date range. *United States v. Burgess*, 576 F.3d 1078, 1091 (10th Cir. 2009). This is sufficient to defeat Defendants' arguments regarding both the magistrate judge's analysis and the warrants' alleged overbreadth.

Because of this, the totality of the information contained in the affidavits provided a substantial basis for finding there was a fair probability that the evidence of criminal activity would be found in the respective electronic documents obtained by the government.

### III. Good Faith

Finally, even if the warrants were somehow infirm, Defendants' motion would be denied because the agents relied on and executed the warrants in good faith. In *Davis v. United States*, the Supreme Court made it clear that that the sole purpose of the exclusionary rule is to deter misconduct by law enforcement officers. 564 U.S. 229, 245 (2011) (emphasis in original). The "extreme sanction of exclusion" should be applied only as a "last resort" to deter police conduct that is "deliberate, reckless or grossly negligent." *United States v. Leon*, 468 U.S. 897, 916, 926 (1984); *Herring v. United States*, 555 U.S. 135, 144 (2009).

A warrant issued by a magistrate judge normally suffices to establish that a law enforcement officer has "acted in good faith in conducting the search." *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982).

At the motions hearing on October 12, 2022, I orally denied Defendants' motion for a *Franks* hearing, finding that an opportunity for the Defendants to contest the validity of the probable cause in the government's warrants was not necessary. In doing so, I rejected the

- 8 -

Defendants' argument that the affidavits in support of the warrants were merely "bare bones" affidavits. (Doc. 226 at 14.)

Because the affidavits here support probable cause, it was not an obvious error for the magistrate judge to issue the warrants. Since the government relied in good faith on the warrant issued by the magistrate judge, its agents were permitted to execute the warrant without triggering the exclusionary rule.

## IV. Standing

Finally, the government argues in its Response that the Defendants' lack standing to challenge the warrants. (Doc. 204 at 10 – 12). Since the validity of the warrants is supported by the merits of the government's argument, I need not address this issue.

## CONCLUSION

It is ORDERED that:

The MOTION (Doc. 200) is DENIED

DATED: October 27, 2022     BY THE COURT:

Daniel D. Domenico
United States District Judge

- 9 -

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Albert
C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
sike.bennett@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8868857@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for James
Hearing
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

### Notice of Electronic Filing

The following transaction was entered on 10/28/2022 at 12:14 PM MDT and filed on 10/28/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 263(No document attached) |

**Docket Text:**

 **ORDER GRANTING IN PART [220] Defendant Kimberly Ann Tew's Motion for a *James* Proffer and Hearing. Ms. Tew's request for the Government to file a *James* proffer and for the Court to hold a *James* hearing is granted, though not on the timeline requested.**

**The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with the referenced exhibits and an accompanying brief, on or before 1/6/2023. The defendants must file their responses to the Government's *James* log and brief on or before 1/20/2023. A *James* Hearing is SET for 1/26/2023 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico.**

**In light of the above, the Trial Preparation Conference set for 11/22/2022 is VACATED and RESET for 3/7/2022 at 09:30 AM in Courtroom A1002, and the eight–day Jury Trial set for 12/12/2022 is VACATED and RESET for 3/13/2023 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Pretrial deadlines remain as stated in the Court's Order Regarding Pretrial Deadlines and Pending Motions (Doc. [241]).**

**SO ORDERED by Judge Daniel D. Domenico on 10/28/2022. Text Only Entry (dddlc1, )**

**1:20−cr−00305−DDD−1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a**
   **Kimberley Vertanen,**

Defendants.

---

## MOTION TO RESTRICT

---

Defendants, Michael A. Tew and Kimberley A. Tew, by their counsel of record, Peter R. Bornstein, move this Court for an order permitting them to file their *Ex Parte Motion for Order to Serve Subpoena to Produce* as Restricted Level 3:

1.     Pursuant to D.C.COLO.LCrR 47.1(c), Defendants request an Order restricting to Level 3 their *ex parte* motion seeking an order authorizing a subpoena to produce documents, information, or objects in a criminal case in the above captioned case.

2.     A brief in support of this motion for restriction is filed contemporaneously herewith.

Respectfully submitted this 15th  day of November 2022.

/s/ Peter R. Bornstein
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Michael Tew and Kimberley Tew*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Peter R. Bornstein*
Peter R. Bornstein

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of November, 2022, I electronically filed the foregoing **MOTION TO RESTRICT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

2

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Albert
C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8899180@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
Restrict
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 11/17/2022 at 3:05 PM MST and filed on 11/17/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 269(No document attached) |

**Docket Text:**
 **ORDER granting [264] Motion for Leave to Restrict [265] Restricted Document – Level 3, [266] Restricted Document – Level 3 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is directed to maintain [265] and [266] UNDER RESTRICTION at LEVEL 3. SO ORDERED by Judge Daniel D. Domenico on 11/17/2022. Text Only Entry (dddlc5, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

(1) MICHAEL AARON TEW; and
(2) KIMBERLY ANN TEW, a/k/a Kimberley Vertanen; and
(3) JONATHAN K. YIOULOS,

     Defendants.

---

## ORDER REGARDING MOTION FOR SUBPOENA

---

Defendants Michael Aaron Tew and Kimberley Ann Tew have filed a motion seeking ex parte leave to serve a subpoena pursuant to Federal Rule of Criminal Procedure 17(c). (Doc. 266.) For the following reasons, the defendants' request to subpoena National Air Cargo and Christopher Alf is granted.

### BACKGROUND

The Tews' charges stem from an alleged scheme to defraud National Air Cargo, a Florida company at which Mr. Tew served as a contracted chief financial officer between 2015 and 2018. Between August 2018 and July 2020, Mr. Tew allegedly conspired with Ms. Tew and others to defraud National Air Cargo of more than $4 million. Mr. Tew was arrested on July 8, 2020 pursuant to a Criminal Complaint (Doc. 1) and arrest warrant (Doc. 2) issued the same day. Mr. and Ms. Tew were later indicted on February 3, 2021 on numerous counts stemming from the conspiracy. (Doc. 84.) On November 15, 2022, Mr. and Ms. Tew filed a

- 1 -

motion requesting permission to issue an ex parte subpoena on National Air Cargo and its owner, Christopher Alf, for the production of documents.[1] (Doc. 266.)

<div align="center">

**DISCUSSION**

</div>

## I. Propriety of Ex Parte Subpoena Motions

"[N]o controlling authority exists as to the propriety of ex parte applications for subpoenas *duces tecum*, pursuant to [Federal Rule of Criminal Procedure] 17(c)," and district courts in this Circuit and others have split on the issue. *United States v. Gonzales*, No. 10-cr-00396-CMA, 2010 WL 4683880, at *3 (D. Colo. Nov. 10, 2010); *see also United States v. Fox*, 275 F. Supp. 2d 1006, 1009-12 (D. Neb. 2003) (discussing split of authority and collecting cases). Generally, the scheme of Rule 17(c), which provides that "the court may permit the parties and their attorneys to inspect" the documents produced in response to a subpoena, "clearly suggests . . . that litigation concerning issuance of and compliance with subpoenas *duces tecum* be conducted upon notice, and not in secret." *United States v. Urlacher*, 136 F.R.D. 550, 555-56 (W.D.N.Y. 1991); *accord United States v. Hargrove*, No. 11-cr-00326-WYD, 2013 WL 3465791, at *3 (D. Colo. July 9, 2013) (citing *United States v. Hart*, 826 F. Supp. 380 (D. Colo. 1993)).

I agree with those courts that have found that Rule 17(c) subpoena motions ordinarily may not be made ex parte, but "a district court [has] discretion on whether to allow ex parte application under certain circumstances," albeit limited circumstances. *Hargrove*, 2013 WL 3465791,

---

[1]   Because this motion contains information that the defendants allege includes defense trial strategy and attorney work product, I granted the defendants' request to restrict the motion. (Doc. 269.)

<div align="center">

- 2 -

</div>

at *4 (citing *United States v. Beckford*, 964 F. Supp. 1010, 1027 (E.D.
Va. 1997)).

> In those rare situations where mere disclosure of the appli-
> cation for a pre-trial subpoena would: (i) divulge trial strat-
> egy, witness lists or attorney work-product; (ii) imperil the
> source or integrity of subpoenaed evidence; or (iii) under-
> mine a fundamental privacy or constitutional interest of
> the defendant, the ex parte process could be available on a
> proper showing. . . . [But] a party seeking to proceed ex
> parte will have to meet a heavy burden to proceed in that
> fashion.

*Beckford*, 964 F. Supp. at 1030.

The defendants here assert that they filed their Rule 17(c) subpoena
motion ex parte because the content of the subpoena will "reveal to the
prosecution defense trial strategy and attorney work-product." (Doc. 266
¶ 4.) The motion may be restricted for this reason (*see* Doc. 269), but I
cannot conclude that the subpoena itself will reveal any trial strategy or
work product, particularly as the Government will be permitted to in-
spect the documents produced in response to the subpoena. Accordingly,
the subpoena and this Order will not be restricted.

## II.  Motion for Subpoena

> A subpoena may order [a] witness to produce any books,
> papers, documents, data, or other objects the subpoena des-
> ignates. The court may direct the witness to produce the
> designated items in court before trial or before they are to
> be offered in evidence. When the items arrive, the court
> may permit the parties and their attorneys to inspect all or
> part of them.

Fed. R. Crim. P. 17(c). Rule 17(c) is "not intended to provide an addi-
tional means of discovery," but "to expedite the trial by providing a time
and place before trial for the inspection of the subpoenaed materials."

*Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). A party
seeking a subpoena *duces tecum* under Rule 17(c) must establish:

> (1) that the documents are evidentiary and relevant;
> (2) that they are not otherwise procurable reasonably in
> advance of trial by exercise of due diligence; (3) that the
> party cannot properly prepare for trial without such pro-
> duction and inspection in advance of trial and that the fail-
> ure to obtain such inspection may tend unreasonably to de-
> lay the trial; and (4) that the application is made in good
> faith and is not intended as a general "fishing expedition."

*United States v. Nixon*, 418 U.S. 683, 699-700 (1974). In other words, the
party seeking the subpoena "must clear three hurdles: (1) relevancy;
(2) admissibility; [and] (3) specificity." *Id.* at 700; *accord United States
v. Abdush-Shakur*, 465 F.3d 458, 467 (10th Cir. 2006) (citing *Nixon*).

The defendants seek to subpoena from Mr. Alf text and email com-
munications between Mr. Tew and Mr. Alf from August 2015 through
October 2018. They also seek to subpoena from National Air Cargo doc-
uments including audited financial statements, bank statements, Mi-
crosoft A/X raw data, invoices, the National Air Cargo company hand-
book, claims for insurance coverage, and invoices and payments made to
specific vendors. The defendants state that the discovery produced by
the Government does not include these documents, and that such docu-
ments are important to rebut certain prosecution evidence and cross-
examine prosecution witnesses. I find that the defendants' subpoena re-
quest meets the *Nixon* requirements, and it will be granted.

The defendants request that the subpoenaed documents be produced
to their counsel's office rather than to the Court. (Doc. 266 ¶ 11.) This
request is inconsistent with the text of Rule 17(c), which provides for the
pretrial production of items "in court." And other district courts in this
Circuit have found that production to counsel's office is not permissible.
*See, e.g.*, *United States v. Begay*, No. CR 14-0747 JB, 2018 WL 401265,

- 4 -

at *8, *13 (D.N.M. Jan. 12, 2018). Unless all parties involved agree otherwise, I will therefore require production to the Court, and, consistent with Rule 17(c), permit the defendants and the Government to inspect the documents produced.

## CONCLUSION

It is ORDERED that:

The Tews' Ex Parte Motion for Order to Serve Subpoena to Produce (Doc. 266) is GRANTED;

The Clerk of Court is DIRECTED to issue a signed and sealed subpoena to National Air Cargo and Christopher Alf pursuant to Federal Rule of Criminal Procedure 17(c). Unless the defendants, the Government, and the third parties mutually agree upon a different designated place and/or time for production and inspection of the documents, the documents sought by the subpoena must be produced before Nick Richards in the United States District Court for the District of Colorado, Alfred A. Arraj U.S. Courthouse, 901 19th Street, Denver, Colorado, on or before December 19, 2022, at which time the Court will notify the defendants and the Government that the documents are available for inspection. Because the subpoena attached to the defendants' motion (Doc. 266-1) does not list the correct place for production, the defendants must REFILE a corrected subpoena before the subpoena will be issued by the Clerk of Court; and

Any additional motions for orders authorizing Rule 17(c) subpoenas must be filed on or before **December 13, 2022**.

DATED: November 29, 2022

BY THE COURT:

~~Daniel D. Domenico~~
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

 Plaintiff,

v.

**1. MICHAEL A. TEW**
**2. KIMBERLEY ANN TEW a/k/a**
 **Kimberley Vertanen,**

 Defendants.

---

## MOTION TO WITHDRAW

---

 Counsel for the Defendants, Michael A. Tew and Kimberley A. Tew, hereby moves this Court for an order pursuant to D.C.COLO.LAttyR 5(b) allowing Peter R. Bornstein to withdraw as counsel for Michael A. Tew and Kimberley A. Tew.  As good cause and grounds in support of this motion, counsel states as follows:

 1. Michael Tew and Kimberley Tew contacted Mr. Bornstein in February of 2022 and asked him to represent them in this criminal case.

 2. The attorney and clients negotiated and signed an engagement agreement including the financial terms for the representation.

 3. Thereafter Mr. Bornstein entered his appearance for both defendants on February 25, 2022.  [DOC. #178]

4. The clients are unable to meet their financial obligations and are in violation of the engagement agreement.

5. Counsel has warned both clients, in writing and verbally, that failure to meet the financial terms of the engagement will result in a motion to withdraw from the case.

6. Counsel believes that the clients do not have, and cannot obtain, the funds necessary to complete the case through a trial.

7. Rule 1.16(b) of the Colorado Rules of Professional Conduct describes situations allowing a lawyer to withdraw from representation of a client which include financial obligations to the lawyer.

8. Counsel cannot go into greater specifics because Colo. R.P.C. 1.6 prohibits a lawyer from revealing information relating to the representation of a client.

WHEREFORE, Peter R. Bornstein requests an Order from the Court authorizing his withdrawal as counsel for Michael A. Tew and Kimberley A. Tew.

Respectfully submitted this 1st day of December, 2022.

THE LAW OFFICES OF PETER R. BORNSTEIN

*s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
*Attorney for Defendants Tews*

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of December, 2022, I electronically filed the foregoing **MOTION TO WITHDRAW** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record. A copy of the Motion to Withdraw was sent to Michael A. Tew via email at mtew@michaeltew.com and Kimberley A. Tew via email at kley@me.com.

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

KIMBERLY ANN TEW, and
MICHAEL AARON TEW,

      Defendants.
_____

## MINUTE ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on the **Motion to Withdraw** [#273] (the "Motion"). filed by Peter Bornstein, counsel for Defendants Michael A. Tew and Kimberley A. Tew. Mr. Bornstein, who has been retained by Defendants, asserts that Defendants have been unable to meet their financial obligations under the engagement agreement. *Id.* at 1-2. Accordingly, Mr. Bornstein seeks to withdraw as counsel for Defendants. *Id.*

IT IS HEREBY **ORDERED** that the Motion [#273] is **GRANTED**. Mr. Bornstein is permitted to withdraw as counsel for Defendants.

IT IS FURTHER **ORDERED** that on or before **December 16, 2022**, Defendants shall have replacement counsel enter an appearance or, if they believe they are entitled to appointment of CJA counsel to represent them, shall each file a financial affidavit under restriction at Level 3.

Dated:  December 2, 2022

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

  1.  **MICHAEL AARON TEW, and**
  2.  **KIMBERLY ANN TEW,** a/k/a Kimberley Vertanen,

     Defendants.

---

### GOVERNMENT'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENSE COUNSEL'S MOTION TO WITHDRAW OR, IN THE ALTERNATIVE, MOTION FOR EXPEDITED APPOINTMENT AND EXTENSION OF DEADLINES

---

The government respectfully moves the court to reconsider its order granting defense counsel's Motion to Withdraw, ECF No. 273, which was entered before the government was invited to respond and before the 14-day deadline for responses that have been typically permitted in this matter. *See, e.g.,* ECF No. 241 (giving government 14 days to respond to pretrial motions).  In the alternative, the government moves the Court to hold a hearing at the earliest possible time to collect financial affidavits and appoint new counsel, and also to reset the current deadlines to ensure orderly conduct of litigation that will not unnecessarily consume judicial resources.

1

Michael Tew was arrested in July 2020. His criminal liability has remained an issue before this Court for almost two years due to instability and uncertainty regarding his — and later, his wife Kimberley's — representation. Each of the many withdrawals thus far has meant a different defense approach that the government has had to necessarily confront: early counsel previously made decisions substantially curtailing the ability to mount subsequent defenses by later counsel; other counsel have taken far-reaching positions litigating filter review of evidence, which has delayed review of that evidence for over a year; and still later counsel have filed motions with certain theories that have now been rejected. All these actions have naturally delayed the case, which in turn has prejudiced the government and the public.

Now, Mr. Peter Bornstein is the *fifth* attorney to represent Michael Tew and the third to represent Kimberley Tew, and, as all predecessors have, has sought withdrawal. He was surely aware when he took the matter that the case would present certain difficulties. To date, he has had almost a year to evaluate the complicated evidence and, having sifted through it with sufficient diligence to file multiple pre-trial motions and conduct a day-long hearing, is surely in the best position to advance this case without any more delay. The government opposes withdrawal in this matter because (1) the defendants are represented by competent and effective counsel with whom they have no conflict and (2) such a withdrawal would cause yet another continuance in this long-pending matter, resulting in

2

substantial prejudice to the government, the defendants, the public, and the

interests of justice.

## I. **Legal Standard**

### A. **The Court should reconsider so that it can evaluate governing local rules and relevant precedent.**

The rules of criminal procedure do not provide for motions for

reconsideration. Whether to entertain such a motion is left to the sound discretion

of the court, which can consider analogous rules from the civil realm. *United States*

*v. Baraja-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004). In civil cases, motions for

reconsideration are granted when there has been an "intervening change in the

law," the discovery of "new evidence previously unavailable," or something

necessary to "correct clear error or prevent manifest injustice." S*ervants of the*

*Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The basis for

reconsideration here is for clear error and manifest injustice: the defendant's motion

does not address the local rule requiring "good cause" for withdrawal or the court's

precedents in evaluating that standard, set forth below. Appointing counsel new

counsel will cause delays and other harm to the court, the government, the

defendant, and the public.

### B. **The Law Requires "Good Cause" For Withdrawal**

The Court's local rules require a showing of "good cause" for withdrawal of

counsel of record.  D.C.COLO.L.R.Atty.R. 5(b).  This is consistent with the Tenth

Circuit's unambiguous standards regarding substitution of counsel: "To warrant a

3

substitution of counsel, the defendant must show good cause, such as a conflict of interest, a complete breakdown of communication or an irreconcilable conflict which leads to an apparently unjust verdict." *United States v. Blaze*, 143 F.3d 585, 593 (10th Cir. 1998) (quoting *United States v. Padilla*, 819 F.2d 952, 955 (10th Cir. 1987)). Refusal to pay fees can constitute "good cause" but only where it is part of a pattern of failure to cooperate with counsel. "Non-payment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation," and simply drawing down a retainer is not evidence of a client's deliberate violation of a fee agreement. *United States v. Parker*, 439 F.3d 81, 104 (2d Cir. 2006).

## II. There is no good cause for withdrawal here

Defense counsel has not alleged any conflict of interest or a breakdown of communications. As a threshold matter, then, defense counsel has clearly failed to show "good cause." If the issue is really just money, as Mr. Bornstein alleges, then there is an easy fix: Mr. Bornstein can be appointed as counsel pursuant to the Criminal Justice Act (CJA) and paid accordingly. 18 U.S.C. § 3006A(c). If Mr. Bornstein is not on the CJA panel, then that problem, too, is surmountable: the CJA panel for this court allows appointment of an attorney who is not on the panel in "extraordinary circumstances." U.S. Dist. Ct., District of Colorado, CJA Plan, VII.D.

"Extraordinary circumstances" are not defined, but case law points to three

4

factors for evaluating them: (1) the merits of the claims at issue, (2) the nature and complexity of the factual and legal issues, and (3) the litigant's ability to investigate the facts and present claims. *Cf. Hill v. SmitKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004).

The merits issue in the larger sense is the most consequential in our legal system: whether the defendants are guilty of charged crimes. Of course, no one doubts that the defendants are entitled to representation under the Sixth Amendment, and the Court has asked the defendants to submit affidavits showing their entitlement to court-appointed counsel. The issue, in the more specific sense then, is whether extraordinary circumstances permit the use of CJA funds to pay Mr. Bornstein in particular, instead of a different lawyer with no familiarity with the proceedings. They do.

*First*, Mr. Bornstein has had the case since March of 2022. In that time, he has explained that the case presents extraordinarily complicated issues that can only be resolved after reviewing thousands of pages of discovery. A ruling that would force the Tews to get a new attorney would further delays these proceedings by several or more months. Yet another delay in this matter is not in the interests of the witnesses, the court, or the public. It also creates a clear problem of incentives related to manipulation of the justice system. *Cf. United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999) (noting that "there must be some limit to the defendant's ability to manipulate the judicial system," and expressing concern

where defendant had already received substitute counsel and further substitution
would "would have seriously delayed proceedings, confused the jury, and prejudiced
the prosecution"); *see Rophaiel v. Alken Murray Corp.*, 1996 WL 306457, at *2
(S.D.N.Y. 1996) ("It would be too easy for a defendant to stall proceedings by
inducing the withdrawal of its attorney by non-payment of fees. I do not say that
the defendants at bar are engaged in that tactic. I only say that the present record
is insufficient to allow the withdrawal of the firm.")

*Second*, any substitute attorney will have the disadvantage of inheriting a
matter that has already been litigated using certain arguments and theories, all
without the benefit of knowing the long-term strategy or shorter-term tactical
positions that Mr. Bornstein planned to use to advance his clients' interests.
Appointment of yet another attorney risks prejudice to the defendants. *See Parker*,
439 F.3d at 107 (quoting extensively from American Bar Association Standard for
Criminal Justice describing considerable advantage of having one attorney
throughout trial proceedings).

*Third*, any prejudice to Mr. Bornstein can be limited by a CJA appointment
and should take into account his initial duty to make sure that his representation of
a client would not create an unreasonable financial burden on him.  *Id.* at 108-109
(citing Gerald F. Uelman*, Converting Retained Lawyers into Appointed Lawyer: The
Ethical and Tactical Implications*, 27 Santa Clara L. Rev. 1, 4 (1987).

*Fourth*, substituting counsel without also taking into account the pending

6

motions risks further delay and prejudice.  For example, the Court has ordered the government to produce a *James* log by January 6, 2023.  An orderly process would normally contemplate providing defense counsel with a copy of that log in advance so that the parties can jointly narrow any disputes to be brought before the district court and otherwise limit their consumption of judicial resources.  The current state of affairs — where Mr. Bornstein is allowed to withdraw without any consideration of pending motions and without consideration of whether any newly appointed lawyer would be able to accomplish this task — risks unnecessarily prolonging litigation or, even worse: it is possible that new counsel could decide the *James* log is not necessary at all, which would fail to promote the defendants' rights.

*Fifth*, the discovery in this case is complex, involving the search and seizure of gigabytes of electronic information.  Legal issues also abound, not the least of which is the evaluation of what kinds of defenses the defendants can present given the procedural posture and history of the case. Mr. Bornstein has acknowledged these risks. New counsel may, however, open the door to the  confessions' admission.

*Finally*, the Tews' ability to investigate the facts and present claims on their own is particularly difficult in this matter given their insistence on joint representation, despite having potentially divergent interests.

All of these factors militate against allowing withdrawal in this case and, instead, favor the conclusion that extraordinary circumstances warrant appointing

Mr. Bornstein pursuant to the CJA.

The Court should also consider the prejudice to the government and the public that will necessarily arise from precipitous withdrawal of defense counsel here. Another appointment will inevitably result in another delay.  The defendants carried on their fraud against the out-of-state victim for many years.  *See* ECF No. 1 (Indictment). There are over a dozen of witnesses to the scheme, many of which reside outside of Colorado. Further continuances and uncertainty regarding the trial date places burdens on their schedules, compounds the inherent risks associated with fading memories, and, ultimately, delays restitution and peace of mind to the victim.

## III.    If there is good cause, the Court should hold an immediate hearing and vacate the existing deadlines until new counsel is appointed

The Court has ordered the government to submit a *James* log on or before January 6, 2023 and a response on or before January 23, 2022. ECF No. 263.  If new counsel is appointed, it is exceedingly unlikely that the new lawyer will be able to comply with the January 23rd response deadline given the volume of discovery and the upcoming holidays. Ideally, well before those dates, the government and defense counsel would be able to confer and avoid unnecessarily burdening the court with issues that it can resolve. But such a process is impossible when it is unclear whether the Tews are represented and by whom. Furthermore, once the government has completed its *James* log, it has essentially finished preparing for

8

trial and will not be in a position to offer either any plea disposition or the final

point for acceptance of responsibility designed to prevent unnecessary consumption

of scarce resources.  U.S.S.G. § 3E1.1(b).  For these reasons, to avoid prejudice to

the government, the court, and the defendants, the Court should also issue an order

vacating the current deadlines and, instead, order a status conference to discuss

scheduling with any newly appointed counsel.

In addition, Mr. Bornstein recently filed a motion for a trial subpoena *duces*

*tecum*, which was granted.  But the Court also asked Mr. Bornstein to file a revised

subpoena, which he has not done, and also contemplated a process in which the

parties would review any documents provided in response.  ECF No. 272. Assuming

that this subpoena seeks important information to the defense, the follow up

revisions requested by the Court are likely to be missed by any new defense counsel

attempting to get up to speed on the case.

Finally, the government notes that the last time the Court asked the Tews to

submit affidavits, it took approximately 60 days to have the issue of representation

resolved. ECF Nos. 166, 167, 175, 177 and 178.  If the Court denies the motion for

reconsideration of the underlying issue regarding withdrawal of counsel, the

government respectfully moves for an expedited in-person hearing requiring that

Tews to submit their affidavits to the Court this week.  If the Tews are determined

to qualify, the government requests an order appointing such counsel as soon as

possible to avoid any delays.  Such a procedure will also give new counsel time, if

9

necessary, to submit a new subpoena pursuant to the Court's order, ECF No. 272, and to consider whether the deadline for the subpoena should be extended and how, if at all, the provision of documents related to that subpoena might impact the current trial date of March 7, 2023. The subpoena contemplates potentially thousands of documents, which would need to be reviewed in addition to the thousands that are already part of the discovery in this case.

To the extent the parties once again seek appointment of one attorney to represent them both, the government notes its continued opposition. Allowing one attorney to represent two co-conspirators with different legal defenses, different legal options, and distinct interests is legally inadvisable for the reasons set forth at ECF No. 108 and at the hearing regarding the motion for severance.

Respectfully submitted this 5th day of December, 2022.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the period within which the Court is evaluating the defendants' motion for a *James* log, ECF No. 263.

*/s/ Bryan Fields*
Bryan Fields

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on December 5, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

<u>*/s/ Bryan Fields*</u>
Bryan Fields
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Bryan.Fields3@usdoj.gov
Attorney for the United States

12

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov,
lauren.timm@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8922328@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order Referring Motion
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 12/5/2022 at 4:57 PM MST and filed on 12/5/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 277(No document attached) |

**Docket Text:**
 **ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew [276] MOTION for Reconsideration re [275] Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* filed by USA. Motion referred to Magistrate Judge Kristen L. Mix by Judge Daniel D. Domenico on 12/05/2022. Text Only Entry (dddlc5, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Bryan David Fields (bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Albert C. Buchman (al.buchman@usdoj.gov,
caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel
D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
sike.bennett@usdoj.gov, triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8930917@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Withdraw as
Attorney
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 12/9/2022 at 12:46 PM MST and filed on 12/9/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 280(No document attached) |

**Docket Text:**
 MINUTE ENTRY for In Court Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 12/9/2022 before Magistrate Judge Kristen L. Mix. The court GRANTS [276] Motion for Reconsideration re [273] MOTION to Withdraw as Attorney. [273] MOTION to Withdraw as Attorney is GRANTED in part and DENIED in part to the extent that Mr. Bornstein is permitted to withdraw as private counsel, but otherwise denied. Defendants are ORDERED to submit financial affidavits on or before 5:00 PM Tuesday, December 13, 2022. Should Defendants qualify for court–appointed counsel, Mr. Bornstein will be appointed as CJA counsel.

The Clerk of Court is ORDERED to allow Mr. Bornstein to file the financial affidavits on the electronic docket on the Defendants' behalf. Should there be any problem with the filing of the financial affidavits, Mr. Bornstein SHALL email them to Mix_Chambers@cod.uscourts.gov.(Total time: 23 minutes, Hearing time: 11:00–11:23)

APPEARANCES: Bryan Fields, Albert Buchman on behalf of the Government, Peter Bornstein on behalf of the defendant. FTR: A–401. (cpomm, ) Text Only Entry

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman      al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov,
USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman      al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov,
USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

     Plaintiff,

v.

**1. MICHAEL AARON TEW; and**

**2. KIMBERLEY ANN TEW a/k/a
   Kimberley Vertanen,**

     Defendants.

---

## MOTION TO RESTRICT

---

     Defendants, Michael A. Tew and Kimberley A. Tew by Peter R. Bornstein, move this Court for an order permitting them to file their *Financial Affidavits* Restricted Level 3. Pursuant to the minute orders entered on December 9, 2022 and D.C.COLO.LCrR 47.1(c), Defendants request an Order restricting to Level 3 their *Financial Affidavits*.

     Respectfully submitted this 13th day of December 2022.

                 */s/ Peter R. Bornstein*
                 Peter R. Bornstein
                 6060 Greenwood Plaza Blvd., Suite 500
                 Greenwood Village, CO 80111
                 Telephone: 720-354-4440
                 Facsimile: 720-287-5674
                 E-mail: pbornstein@prblegal.com

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Peter R. Bornstein*
Peter R. Bornstein

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of December, 2022, I electronically filed the foregoing **MOTION TO RESTRICT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Peter R. Bornstein*
Attorney

2

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Albert
C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov)
--No Notice Sent:

Message-Id:8937634@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
Restrict
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 12/14/2022 at 2:16 PM MST and filed on 12/14/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 283(No document attached) |

**Docket Text:**
 **ORDER granting [281] Motion for Leave to Restrict [282] Restricted Document as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is instructed to maintain [282] at LEVEL THREE RESTRICTION. SO ORDERED by Judge Daniel D. Domenico on 12/14/2022. Text Only Entry (dddlc5, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Peter R. Bornstein     pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

 Plaintiff,

v.

KIMBERLY ANN TEW, and
MICHAEL AARON TEW,

 Defendants.
_____

### MINUTE ORDER
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

 This matter is before the Court on the Court's **Order** [#280] made at the December 9, 2022 Hearing.  Having reviewed the Affidavits [#282] timely submitted by Defendants Michael A. Tew and Kimberly A. Tew, the Court finds that they qualify for court-appointed counsel.  Accordingly,

 IT IS HEREBY **ORDERED** that attorney Peter Bornstein is appointed as CJA counsel for Defendants Michael A. Tew and Kimberly A. Tew.

 Dated:  December 27, 2022

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com),
Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
sike.bennett@usdoj.gov, triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8954547@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Vacate
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing


The following transaction was entered on 12/28/2022 at 11:00 AM MST and filed on 12/28/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 287(No document attached) |

**Docket Text:**
 **ORDER DENYING [284] Government's Motion to Vacate Current Deadlines and for Status Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2).**

**Attorney Peter Bornstein represented the defendants as retained counsel for a period of over nine months from February to December 2022 (*see* Docs. [178], [273], [275], 280), and he now continues to represent the defendants as appointed CJA counsel (Doc. [286]). The Government has repeatedly stated its concern that further delays may prejudice its case and the public (Doc. [284] at 3; Doc. [276] at 2, 3, 5, 8), and has also acknowledged that Mr. Bornstein "is surely in the best position to advance this case without any more delay" (Doc. [276] at 2). Having now been appointed as CJA counsel, Mr. Bornstein has over a week to review the Government's *James* submission prior to its filing on 1/6/2023.**

**The Government's request to vacate the deadlines related to its *James* proffer and log is therefore denied.**

**SO ORDERED by Judge Daniel D. Domenico on 12/28/2022. Text Only Entry (dddlc1, )**


**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein      pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman      al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein      pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman      al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

Plaintiff,

v.

**1. MICHAEL A. TEW**
**2. KIMBERLEY ANN TEW a/k/a**
 **Kimberley Vertanen,**

Defendants.

---

## MOTION FOR APPOINTMENT OF SEPARATE COUNSEL

---

Peter R. Bornstein, court-appointed counsel for Defendants, Michael A. Tew and
Kimberley A. Tew, moves this Court for an order appointing separate counsel for one of
the two defendants. As grounds in support of this motion, Mr. Bornstein states as follows:

1.     Mr. Bornstein was hired as private counsel for Mr. and Mrs. Tew and he
continued in this capacity until he filed a Motion to Withdraw on December 1, 2022.
(Doc. #273). The Motion to Withdraw stated that the clients had failed to live up to their
contractual and financial obligations pursuant to their fee agreement.

2.     The Motion to Withdraw was referred to Magistrate Judge Mix who granted
the motion on December 2, 2022. (Doc. #275). Thereafter, the prosecution filed a Motion
for Reconsideration which requested, in pertinent part, that Mr. Bornstein be appointed
to continue representation of the Tews pursuant to the Criminal Justice Act.

3.     A hearing was held before Magistrate Judge Mix on Friday, December 9,
2022. At that hearing, the Magistrate Judge asked Mr. Bornstein whether he would
continue as counsel under this Criminal Justice Act. Mr. Bornstein did not volunteer to
be appointed but informed the Court that as an officer of the court he would accept such

an appointment.  See Colorado Rules of Professional Conduct 6.2 (a lawyer shall not seek to avoid appointment by a tribunal to represent a person except for good cause).

4.     The Magistrate Judge ordered Mr. and Mrs. Tew to file financial affidavits for a determination as to whether they were eligible under the Criminal Justice Act for court-appointed counsel, which they did.  On December 27, 2022, the Magistrate Judge issued an Order appointing Peter Bornstein as CJA counsel for both Kimberley A. Tew and Michael A. Tew.  (Doc. #286).

5.     Joint representation of two criminal defendants raises an inherent conflict of interest.  Colorado Rules of Professional Conduct 1.7(a) and Comments 6 and 8.  Criminal defendants are entitled to conflict-free representation.  *Holloway v. Arkansas*, 435 U.S. 475 (1978); *United States v. Gallegos*, 108 F.3d 1272 (10th Cir. 1997).

6.     Previously, Kimberley Tew filed a Motion for Severance which was argued before this Court and denied.  However, during the argument, the Court raised serious concerns about joint representation and conflicts of interest.

7.     The prosecution has also raised objections to joint representation in this case at least twice.  Early in the case when prior counsel represented the Tews, the prosecution raised concerns over joint representation.  The prosecution raised the issue again in opposing the Motion for Severance, and a third time in its Motion for Reconsideration of the order allowing Mr. Bornstein to withdraw.

8.     The previous waiver by the clients of a potential conflict of interest when Mr. Bornstein was retained privately is no longer operative.  The previous waiver was based, in part, on a lack of financial resources to hire separate counsel for Kimberley Tew.  The Criminal Justice Act policies severely discourage courts from appointment of one counsel for two or more defendants, and the CJA administrator for this District will not generally make such an appointment.

2

9.      The Defendants, moreover, are considering and will continue to consider that one or both of them may elect to testify on their behalf during the trial of this case. Counsel would be ethically prohibited from cross examining one of his clients, even if such examination would assist his other client.  Such an election to testify brings into sharp resolution the significant proffers made by each Defendant to the Government during the preliminary events in this case.  These proffers contain statements that incriminate both defendants.

10.     In order to provide each Defendant with conflict-free representation, the appointment of a separate counsel for one of them is necessary.

WHEREFORE, counsel for the Defendants request this Court enter an order appointing separate CJA counsel for one of the Defendants in this case.

Respectfully submitted this 28th day of December, 2022.

THE LAW OFFICES OF PETER R. BORNSTEIN

s/ Peter R. Bornstein
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
Attorney for Defendants Tews

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ Peter R. Bornstein
Peter R. Bornstein

3

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of December, 2022, I electronically filed the foregoing **MOTION FOR APPOINTMENT OF SEPARATE COUNSEL** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record

*s/ Jeannette Wolf*
Jeannette Wolf, Paralegal

4

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com),
Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Albert
C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
sike.bennett@usdoj.gov, triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8956360@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing


The following transaction was entered on 12/29/2022 at 11:39 AM MST and filed on 12/29/2022

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20-cr-00305-DDD |
| **Filer:** | |

**Document Number:** 289(No document attached)

**Docket Text:**
 ORDER GRANTING [288] Motion for Appointment of Separate Counsel as to Michael Aaron Tew (1), Kimberley Ann Tew (2).

Attorney Peter R. Bornstein is relieved of any further representation of Defendant Kimberley Ann Tew, and the Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record for Ms. Tew. An attorney from the Criminal Justice Act panel will be appointed to represent Ms. Tew. Defendant Michael Aaron Tew will continue to be represented by Mr. Bornstein as appointed CJA counsel.

In light of the above, the deadlines for the Goverment's *James* proffer and log and the defendants' response thereto, and the *James* Hearing set for 1/26/2023 are CONTINUED pending further order of the Court.

Within one week of entry of appearance of new counsel for Ms. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; (2) mutually agreeable proposed deadlines for further *James* proceedings; and (3) any other issues the parties wish to bring to the Court's attention.

SO ORDERED by Judge Daniel D. Domenico on 12/29/2022. Text Only Entry (dddlc1, )

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Peter R. Bornstein    pbornstein@prblegal.com, jwolf@prblegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## NOTICE OF APPEARANCE OF COUNSEL

---

David S. Kaplan of the law firm Stimson LaBranche Hubbard, LLC hereby enters his appearance as Criminal Justice Act counsel on behalf of Defendant Kimberley Ann Tew in the above-captioned matter. Pursuant to D.C.COLO.L.AttyR. 5(a)(3)(C), undersigned counsel certifies that he is a member in good standing of the bar of this court.

Dated: January 3, 2023.

Respectfully submitted,


*s/ David S. Kaplan*
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone: 720.689.8909
Email: kaplan@slhlegal.com

*Attorney for Kimberley Ann Tew*

**Certificate of Service**

I certify that on January 3, 2023, I electronically filed the foregoing *Notice of Appearance of Counsel* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Albert Buchman
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
al.buchman@usdoj.gov

s/ *Brenda Rodriguez*
Brenda Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## JOINT STATUS REPORT

---

On December 29, 2022, the Court entered an order that relieved attorney
Peter R. Bornstein of any further representation of defendant Kimberley Ann Tew,
and ordered that new counsel be appointed. The order also directed the parties,
within one week of the new attorney's appearance, to file a joint status report
addressing (1) the Speedy Trial Act implications of the new representation, if any;
(2) mutually agreeable proposed deadlines for further *James* proceedings; and (3)
any other issues the parties wish to bring to the Court's attention. ECF No. 289. Mr.
David Kaplan entered his appearance for Ms. Tew on January 3, 2023. The parties
have since consulted with one another and submit this joint status report.

     1.    Counsel for Ms. Tew intends to file a motion seeking an ends-of-justice
continuance under the Speedy Trial Act. While the government has expressed

1

concern about the delays in this matter, the ends of justice certainly require that new counsel be given adequate time to prepare for trial and, under the circumstances, the government does not oppose the motion. An ends of justice continuance for Ms. Tew would toll the speedy trial clock for co-defendant, Michael Aaron Tew. 18 U.S.C. 3161(h)(6)(providing for exclusion of reasonable period of delay when the defendant is joined for trial with codefendant).

2.     Counsel for Ms. Tew will need time to review the voluminous discovery in this matter to better ascertain a reasonable timeline for responding to a *James* proffer. The parties propose submitting another joint status report in 60 days with a proposed timeline for responding to a *James* log and any other new motion deadlines.

3.     The parties are evaluating whether there is a conflict that would prevent attorney Peter Bornstein from continuing to represent defendant Michael Tew. Mr. Bornstein does not believe that there is a conflict that would provide good cause to withdraw. Mr. Kaplan has concerns about a conflict: one such issue is if Ms. Tew decides to testify at trial, such a scenario might require Mr. Bornstein to either cross-examine a former client or waive that cross-examination to the potential detriment of a current client. The government is not in a position to evaluate whether such a conflict is real or merely abstract, whether a joint defense agreement could solve any such conflict, whether such a conflict can be resolved with a knowing and intelligent waiver of cross-examination by Mr. Tew, or whether

2

any such conflict could otherwise be resolved by defense counsel in this case. Mr.

Bornstein is concerned that the government is meddling in the province of the

defendants and their lawyers and that nothing should be scheduled at this time.

Mr. Fields and Mr. Kaplan propose either a hearing at the Court's earliest

convenience or an ex parte filing by the defendants describing the current

circumstances and their positions regarding any conflict so that the Court can

evaluate and resolve whether the defendants are appropriately represented.

Respectfully submitted this 10th day of January, 2023.

COLE FINEGAN
United States Attorney

By:    */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:    */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

THE LAW OFFICES OF PETER R. BORNSTEIN

By:    */s/ Peter R. Bornstein*
Peter R. Bornstein
6060 Greenwood Plaza Blvd., Suite 500
Greenwood Village, CO 80111
Telephone: 720-354-4440
Facsimile: 720-287-5674
E-mail: pbornstein@prblegal.com
Attorney for Defendant Michael Allen Tew

STIMSON LABRANCHE HUBBARD

3

By:   */s/ David S. Kaplan*
David S. Kaplan
1652 N. Downing Street
Denver, CO 80218
Telephone: 720-689-8909
Facsimile: 720-689-8909
E-mail: kaplan@slhlegal.com
Attorney for Defendant Kimberley Ann Tew

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this filing has no effect on the speedy trial clock.

*/s/ Bryan Fields*
Bryan Fields

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on January 10, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

<u>*/s/ Bryan Fields*</u>
Bryan Fields
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Bryan.Fields3@usdoj.gov
Attorney for the United States

6

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Peter R. Bornstein (jwolf@prblegal.com, pbornstein@prblegal.com),
Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David Scott Kaplan
(hickam@slhlegal.com, kaplan@slhlegal.com, rodriguez@slhlegal.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:8974584@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Minute Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 1/11/2023 at 2:02 PM MST and filed on 1/11/2023

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | <u>1:20–cr–00305–DDD</u> |
| **Filer:** | |
| **Document Number:** | 294(No document attached) |

**Docket Text:**
**MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re [293] Status Report filed by USA. By 1/17/2023, Mr. Bornstein and Mr. Kaplan must each submit an ex parte filing describing their positions regarding any conflict of interest that might prevent Mr. Bornstein from continuing to represent Mr. Tew and whether a hearing is necessary to evaluate and resolve this issue. SO ORDERED by Judge Daniel D. Domenico on 01/11/2023. Text Only Entry (dddlc5, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Peter R. Bornstein (Terminated)    pbornstein@prblegal.com, jwolf@prblegal.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

**1:20−cr−00305−DDD−2 Notice has been electronically mailed to:**

Peter R. Bornstein (Terminated)    pbornstein@prblegal.com, jwolf@prblegal.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.    MICHAEL AARON TEW
2.    KIMBERLEY ANN TEW, and
3.    JONATHAN K. YIOULOS,

Defendants

---

**ENTRY OF APPEARANCE OF NANCY L. COHEN, ESQ. FOR THIRD PARTY VICTIMS**

---

To the clerk of the court and all parties of record:

I hereby certify that I am a member in good standing of the bar of this court, and I appear in this case as counsel for Victims:

National Air Cargo Holdings, Inc.

National Air Cargo Group, Inc. d/b/a National Airlines

Christopher J. Alf.

1

Respectfully submitted this 13th day of January, 2023.

*s/Nancy L. Cohen*
Nancy L. Cohen, Esq.
COHEN|BLACK LAW, LLC
1888 N. Sherman Street, Suite 770
Denver, Colorado 80203
Telephone: 720-699-2322
email: ncohen@cohenblacklaw.com
*Counsel for the Third Party Victims*

2

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day January, 2023, I presented the foregoing **ENTRY OF APPEARANCE OF NANCY L. COHEN, ESQ. FOR THIRD PARTY VICTIMS** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of this filing to all parties of record.


*/s/ Nancy L. Cohen, Esq.*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.    MICHAEL AARON TEW
2.    KIMBERLEY ANN TEW, and
3.    JONATHAN K. YIOULOS,

Defendants

---

**ENTRY OF APPEARANCE OF ERIC S. GALLER, ESQ. FOR THIRD PARTY VICTIMS**

---

To the clerk of the court and all parties of record:

I hereby certify that I am a member in good standing of the bar of this court, and I appear in this case as counsel for Victims:

National Air Cargo Holdings, Inc.

National Air Cargo Group, Inc. d/b/a National Airlines

Christopher J. Alf.

1

Respectfully submitted this 13th day of January, 2023.

_s/Eric S. Galler_

Eric S. Galler, Esq.
Galler Corporate Law Group
9466 Georgia Avenue
Suite 130
Silver Spring, MD 20910
Telephone: 301-728-3850
e-mail: egaller@gcorplaw.com
_Counsel for the Third Party Victims_

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day January, 2023, I presented the foregoing **ENTRY OF APPEARANCE OF ERIC S. GALLER, ESQ. FOR THIRD PARTY VICTIMS** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of this filing to all parties of record.

*/s/ Nancy L. Cohen, Esq.*

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.     MICHAEL AARON TEW
2.     KIMBERLEY ANN TEW, and
3.     JONATHAN K. YIOULOS,

Defendants

---

## MOTION OF THIRD-PARTY VICTIMS TO QUASH SUBPOENAS

---

Victims National Air Cargo Holdings, Inc., National Air Cargo Group, Inc. d/b/a National Airlines and Christopher J. Alf (collectively, the "Victims"),[1] by and through counsel Eric S. Galler and Nancy L. Cohen, hereby respectfully request the Court to quash the Subpoenas to Produce Documents, Information, or Objects in a Criminal Case (the "subpoenas") that were issued to Mr. Alf and to an entity referred to as "National Air Cargo" dated December 1, 2022, pursuant to the Order Regarding Motion for Subpoena dated November 29, 2022.

---

[1] Christopher Alf, National Air Cargo Holdings, Inc. ("Holdings") and National Air Cargo Group, Inc. d/b/a National Airlines ("National Airlines") are the victims in this case.  Mr. Alf is the sole owner of Holdings.  National Airlines is a wholly-owned, indirect subsidiary of Holdings.

1

## Conferral with the Tews' Counsel

On January 9, 2023, counsel for the Victims conferred with counsel for the Tews regarding the scope and relevance of the subpoena requests. Counsel for the Tews declined to revise or limit the subpoena requests in any way and invited the filing of this Motion.

## INTRODUCTION

In November 2016, Holdings retained Sand Hill, LLC, an entity owned by Michael Tew, to engage Mr. Tew to provide certain financial services to Holdings, including preparation of financial models, creation of investment memoranda, financial structuring and advisory services and other similar services. In providing those financial services to Holdings, Mr. Tew acted as the outsourced chief financial officer of Holdings. In that role, Mr. Tew worked closely with the Victims and the internal financial and accounting staff of Holdings, including Jonathan Yioulos,[2] who is also a defendant in this case. Mr. Tew continued to provide financial services to Holdings until September 15, 2018, when Holdings terminated the consulting engagement with Sand Hill, LLC. At the time of this termination Mr. Tew was in possession of a company issued computer and had been advanced $35,000 toward future consulting fees, both of which Holdings demanded be returned but neither of which was ever returned by Mr. Tew.

In June 2020, the Federal Bureau of Investigation first contacted Christopher Alf, the Chairman and Chief Executive Officer of Holdings and requested a meeting. On July 1, 2020, Mr. Alf met with representatives of the FBI and the Internal Revenue Service, at which time it was revealed to Mr. Alf that as part of an ongoing investigation, the FBI and IRS had discovered that

---

[2] Mr. Yioulos was a staff accountant for Holdings during the period of Mr. Tew's service and thereafter become the Controller for Holdings. Mr. Yioulos' employment was terminated in July 2020, after Holdings became aware of Mr. Yioulos' participation in the criminal conduct charged in this case. Undersigned counsel understands Mr. Yioulos pled guilty to charges brought against him

substantial funds had been transmitted from bank accounts of Holdings and National Airlines to the persons under investigation by these authorities. Mr. Alf and Holdings immediately offered their cooperation to the FBI and the IRS and began to collect materials requested by the authorities relating to, among other things, electronic funds transmissions, including wire transfers and automatic clearing house (ACH) transfer, to persons and accounts identified by the FBI and IRS. Over the next several days (including the Independence Day holiday), Holdings' accounting staff discovered that funds in excess of five million dollars ($5,000,000) had been transferred from bank accounts belonging to Holdings and National Airlines to the accounts identified by the FBI and IRS with the direct participation and direction of Mr. Yioulos, an employee who at that time was the Controller of Holdings, and was the senior employee overseeing all of the United States based financial activities of Holdings. Upon Mr. Yioulos' return from the Independence Day holiday on July 7, 2020, Mr. Yioulos' employment with National was terminated, and, in coordination with the FBI and IRS, Mr. Yioulos was taken by the authorities for questioning.

Mr, Tew, Kimberley Tew and Mr, Yioulos were subsequently indicted on 60 criminal counts, including 56 counts relating to the specific criminal transfers of funds from the Holdings and National Airlines bank accounts to bank accounts under their control.[3]

The subpoena seeks personal and confidential information from the Victims who are third parties to this case.

---

[3] The remaining four counts allege non-filing of income tax returns by Mr. Tew for the tax years 2016, 2017, 2018 and 2019.

## **ARGUMENT**

The Tews seek pretrial production of documentary evidence under Fed. R. Crim. P. 17(c), apparently ignoring subsection 17(c)(3). The Tews' subpoena fails generally because the Tews are improperly attempting to obtain additional discovery from the Victims of documents that can be properly obtained elsewhere by the exercise of due diligence. The Tews' subpoena is not made in good faith and is intended as a general "fishing expedition," which is prohibited. *See United States v. Gonzalez-Acosta*, 989 F.2d 384, 389 (10th Cir. 1993), citing *United States v. Nixon*, 418 U.S. 683, 699-700 (1974). Moreover, as the Supreme Court has stated in both *Nixon,* at 698, and *Bowman Dairy Co. v United States*, 341 U.S. 214, 220 (1951), Rule 17(c) is "not intended to provide a means of discovery for criminal cases."

Under Federal Rule of Criminal Procedure 17(c)(3),

After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, **the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object**.

(emphasis added).

The subpoenas that were served upon the Victims request personal or confidential information about the Victims. Before the order issued allowing the subpoenas to be served on the Victims, no notice was given to the Victims in violation of the clear language and requirement of Rule 17(c)(3).[4] Nor was there any finding by the Court of the existence of exceptional circumstances that would permit the order to issue the subpoenas to be issued without proper notice. The issuance of these subpoenas under these circumstances is not permissible. *See United*

---

[4] The defendants brought an ex parte motion requesting the Court to permit the issuance of the subpoenas under Rule 17(c). Under Rule 17(c)(3), an ex parte motion was inappropriate in this case.

*States v. Jinian*, CR-09-1103-JSW, US Dist. N Cal. (March 3, 2011) (denying ex parte motion of defendant to serve subpoena on a corporate victim for personal or confidential information under Rule 17(c)(3) for failure to give proper notice and finding no exceptional circumstances).

The importance of giving notice to the Victims before an order enters is because the Victims can then provide argument as to why the subpoena is improper. Defendants failed to follow the procedures in Rule 17(c)(3). Assuming the Court agrees that the Tews have improperly sought documents from the Victims without proper notice and vacates the order, the Victims may file another motion to quash if the Tews fail to narrow the document requests,

The Victims object to the requests made in the subpoenas on several grounds. Importantly, upon information and belief, the U.S. Attorney's office has already produced a substantial number of documents and other materials to the defendants relating to the charges for which the defendants are being prosecuted. With respect to information request number 9, the defendants request the production of all "text or email communication[s]" between Michael Tew and Mr. Alf. Mr. Tew has or already had in his possession or access to all of the text messages and emails between himself and Mr. Alf because (a) Mr. Tew only used personal mobile phone numbers to text with Mr. Alf relevant to Mr. Tew's alleged criminal conduct and (b) Mr. Tew communicated with Mr. Alf by email relevant to Mr. Tew's alleged criminal conduct using only either personal email account(s) or using a Holdings designated email account which Mr. Tew has access to on the Holdings issued computer that Mr. Tew never returned to Holdings when his services for Holdings were terminated. Additionally, the emails relevant to the Indictment were previously produced to the US Attorney's office by Holdings (the index of the emails alone consists of more than 3 gigabytes of information).

Victims also object because (1) the information requested does not relate to the criminal conduct for which the defendants were indicted,[5] (2) the information requests are unreasonable, oppressive and/or burdensome, (3) the information requests appear to be a fishing expedition in violation of the *Nixon* factors and Rule 17(c), (4) the information requests are insufficiently specific in nature for the Victims to adequately respond to the requests without an excessive and expensive investigation and production process thereby compounding the injury to the Victims already perpetrated by the defendants,[6] and (5) and the subpoena constitutes harassment of the Victims especially because it violates Rule 17(c)(3).[7]

---

[5] While the Victims do not have access to the Criminal Complaint filed against the defendants, the Victims have seen the Indictment that was issued against the defendants by the Grand Jury. The Indictment contains 60 counts alleging violations of 18 USC §§ 2, 1343, 1349, 1956(h), and 1957 and 26 USC § 7203 against one or more of the defendants. Each of these counts refers to specific conduct by one or more of the defendants. The Tews already have the information being requested in the subpoena that relate to the criminal conduct identified in the Indictment. Nothing in the Indictment indicates that any of the Victims participated in or had prior knowledge of the criminal conduct of the defendants.

[6]      The subpoena is issued to Christopher Alf and National Air Cargo. The Victims do not know exactly what National Air Cargo is meant to refer to. National Air Cargo Holdings, Inc., is a Florida corporation that is the parent corporation of a group of more than 26 separate companies. Nothing in the subpoena contains information sufficient to identify to the Victims who "National Air Cargo" references.

Additionally, 8 of the 11 requests propounded in the subpoenas (items 1, 2, 3, 4, 5, 8, 9, 10 and 11) refer to something called "NAC" and something called "NAC Holdings." Nothing in the subpoena provides sufficient information to identify what or who either "NAC" or "NAC Holdings" is.

Finally, two other of the 11 requests propounded in the subpoenas (items 6 and 7) make no reference as to whose information is actually requested, as the request could refer to anyone.

[7] Simultaneously with this Motion of Third-Party Victims to Quash Subpoenas the Victims are delivering to the Court objections to all of the information requests propounded in the subpoenas.

WHEREFORE, the victims respectfully move that the subpoenas be quashed.

Respectfully submitted this 13th day of January, 2023.

<div style="margin-left:40%">

s/ *Eric S. Galler*
Eric S. Galler
Galler Corporate Law Group
9466 Georgia Avenue
Suite 130
Silver Spring, MD 20910
Telephone: 301-728-3850
e-mail: egaller@gcorplaw.com

s/*Nancy L. Cohen*
Nancy L. Cohen, Esq.
COHEN|BLACK LAW, LLC
1888 N. Sherman Street, Suite 770
Denver, Colorado 80203
Telephone: 720-699-2322
email: ncohen@cohenblacklaw.com

*Counsel for the Victims*

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 13th day January, 2023, I presented the foregoing **MOTION OF THIRD-PARTY VICTIMS TO QUASH SUBPOENAS** to the Clerk of the Court for filing and uploading to the CM/ECF system which will send notification of this filing to all parties of record.

<u>    /s/ Nancy L. Cohen, Esq.        </u>

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1.    MICHAEL AARON TEW
2.    KIMBERLEY ANN TEW, and
3.    JONATHAN K. YIOULOS,

Defendants

---

### ORDER TO QUASH SUBPOENAS

---

This matter comes before the Court on the Victims' Motion to Quash Subpoenas. Having reviewed the motion and being otherwise advised in the premises, the Court finds that good and sufficient cause supports the same.

Accordingly, it is:

ORDERED, that the Motion of Christopher Alf, National Air Cargo Holdings, Inc. and National Air Cargo Group, Inc. d/b/a National Airlines (collectively, the victims) is GRANTED and the subpoenas issued December 1, 2022, to Christopher Alf and "National Air Cargo" are quashed.

IT IS SO ORDERED on this _____ day of January, 2023.

BY THE COURT:

_____
HON. DANIEL D. DOMENICO
DISTRICT OF COLORADO

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD

**UNITED STATES OF AMERICA,**

      Plaintiff,

v.

**1. MICHAEL AARON TEW**

      Defendant.

---

## ENTRY OF APPEARANCE

---

      Peter R. Bornstein of The Law Offices of Peter R. Bornstein, hereby enters his appearance on behalf of the Defendant, Michael Aaron Tew in this action.

      Respectfully submitted this 17th day of January, 2023.

                            **THE LAW OFFICES OF PETER R. BORNSTEIN**

                            *s/ Peter R. Bornstein*
                            Peter R. Bornstein
                            6060 Greenwood Plaza Blvd., Suite 500
                            Greenwood Village, CO 80111
                            Telephone: 720-354-4440
                            Facsimile: 720-287-5674
                            E-mail: pbornstein@prblegal.com
                            *Attorney for Defendant Michael Tew*

**CERTIFICATE OF SERVICE**

 I hereby certify that on this 17th day of January, 2023, I electronically filed the foregoing **ENTRY OF APPEARANCE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

        *s/ Jeannette Wolf*
        Jeannette Wolf, Paralegal

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**(1) MICHAEL AARON TEW**;
(2) KIMBERLEY ANN TEW a/k/a Kimberley Vertanen; and
(3) JONATHAN K. YIOULOS,

      Defendants.

---

## ORDER WITHDRAWING COUNSEL

---

Before me is the matter of attorney Peter R. Bornstein's representation of Defendant Michael Aaron Tew. Given the high likelihood of conflict of interest that accompanies Mr. Bornstein's ongoing representation of Mr. Tew in a joint trial that includes Mr. Bornstein's former client, Defendant Kimberley Ann Tew, I find that in the interest of justice, Mr. Bornstein must be withdrawn from this case, and new counsel appointed to represent Mr. Tew.

Mr. Bornstein entered his first appearance as joint counsel for Mr. and Ms. Tew on February 25, 2022. (Doc. 178.) On December 1, 2022, Mr. Bornstein moved to withdraw as attorney to both Mr. and Ms. Tew. (Doc. 273.) Magistrate Judge Mix initially granted the motion, but upon a motion for reconsideration by the Government (Doc. 276) and a related hearing, Magistrate Judge Mix permitted Mr. Bornstein to withdraw as private counsel, but ordered he be appointed as CJA counsel, should the Tews qualify for court-appointed

- 1 -

counsel. (Doc. 280.) On December 27, Magistrate Judge Mix appointed
Mr. Bornstein as CJA counsel for Mr. and Ms. Tew. (Doc. 286.) The joint
CJA appointment was short-lived, as the next day Mr. Bornstein filed a
motion requesting separate counsel for either Mr. or Ms. Tew, citing the
potential conflict inherent in joint representation generally, and specif-
ically the conflict that would arise if Mr. and/or Ms. Tew should elect to
testify on their own behalf during trial. (Doc. 288 at 3.) I granted that
motion, and attorney David Scott Kaplan was appointed as CJA counsel
for Ms. Tew. (Docs. 289, 290.) In a joint status report on Janu-
ary 10, 2023, the parties raised the potential conflict presented by
Mr. Bornstein's continued representation of Mr. Tew:

> Mr. Bornstein does not believe that there is a conflict that
> would provide good cause to withdraw. Mr. Kaplan has
> concerns about a conflict: one such issue is if Ms. Tew de-
> cides to testify at trial, such a scenario might require
> Mr. Bornstein to either cross-examine a former client or
> waive that cross-examination to the potential detriment of
> a current client. The government is not in a position to eval-
> uate whether such a conflict is real or merely abstract,
> whether a joint defense agreement could solve any such
> conflict, whether such a conflict can be resolved with a
> knowing and intelligent waiver of cross-examination by
> Mr. Tew, or whether any such conflict could otherwise be
> resolved by defense counsel in this case.

(Doc. 293 at 2-3.)

On January 11, 2023, I ordered that Mr. Bornstein and Mr. Kaplan
each submit an ex parte filing regarding any conflict of interest that
might prevent Mr. Bornstein from continuing to represent Mr. Tew.
(Doc. 294.) Those filings are now before me. (Docs. 300, 301.)

Defendants in criminal cases are guaranteed "the right to represen-
tation that is free from conflicts of interest." *United States v. William-
son*, 859 F.3d 843, 851 (10th Cir. 2017). "A conflict of interest is 'a

- 2 -

division of loyalties that affected counsel's performance.'" *Id.* (quoting
*Mickens v. Taylor*, 535 U.S. 162, 172 n.5 (2002)). The Government has a
duty "to notify the district court of potential conflicts of interest," and
this duty "facilitates the administration of justice by helping to avoid
lengthy delays or retrials that could occur when conflicts render defense
counsel's representation ineffective." *United States v. McKeighan*, 685
F.3d 956, 967, 969 (10th Cir. 2012). The ex parte filings do not reassure
me that the potential conflict between Mr. Bornstein and his former cli-
ent, Ms. Tew, will not ripen into an actual conflict, either before or after
trial.

I understand that Mr. Tew may not be keen to work with a new at-
torney after Mr. Bornstein has represented him for nearly a year. This,
however, is the exact situation that Ms. Tew already finds herself in.
*See United States v. Smith*, 323 F. App'x 650, 652 (10th Cir. 2009) (Con-
stitution guarantees indigent defendant right to effective appointed
counsel, but not to appointed counsel of his or her choice) (citing *Strick-
land v. Washington*, 466 U.S. 668, 686 (1984); *Tibbett v. Hand*, 294
F.2d 68, 73 (10th Cir. 1961))). And any delay that may be caused by ap-
pointing new counsel to Mr. Tew is minor now that Ms. Tew has been
appointed new counsel. Mr. Kaplan made his appearance for Ms. Tew
less than a month ago, and hearings and filing dates have already been
continued in light of Mr. Kaplan's recent appointment. The alternatives
to withdrawing Mr. Bornstein—requiring Mr. Tew to waive his right to
cross-examine Ms. Tew, severing the defendants' trials, or risking a mis-
trial by taking no action—are burdensome; potentially prejudicial to the
defendants, the Government, and the public; and not in the best inter-
ests of justice. *See* Fed. R. Crim. P. 2 (courts should seek "to provide the
just determination of every criminal proceeding, to secure simplicity in
procedure and fairness in administration, and to eliminate unjustifiable

expense and delay'). I find that the potential that a conflict of interest will arise is too great to allow Mr. Bornstein to continue to represent Mr. Tew.

## CONCLUSION

It is ORDERED that:

Peter R. Bornstein is WITHDRAWN as counsel to Defendant Michael Aaron Tew and relieved of all further representation. The Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record, and to remove his name from the electronic certificate of mailing;

An attorney from the Criminal Justice Act panel will be appointed to represent Defendant Michael Tew; and

Within one week of entry of appearance of new counsel for Mr. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; and (2) any other issues the parties wish to bring to the Court's attention; and

On or before March 13, 2023, the parties must file a Joint Status Report with mutually agreeable proposed deadlines for further *James* proceedings.

DATED: January 30, 2023       BY THE COURT:

Daniel D. Domenico
United States District Judge

- 4 -

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**(1) MICHAEL AARON TEW**; and
**(2) KIMBERLY ANN TEW**, a/k/a Kimberley Vertanen; and
(3) JONATHAN K. YIOULOS,

     Defendants.

---

## ORDER GRANTING THIRD-PARTY MOTION TO QUASH SUBPOENAS

---

Before me is a motion (Doc. 297) by National Air Cargo Holdings, Inc.; National Air Cargo Group, Inc. d/b/a/ National Airlines; and Christopher J. Alf requesting that I quash the subpoenas issued to them on December 1, 2022 pursuant to my Order Regarding Motion for Subpoena (Doc. 272). For the following reasons, the motion to quash is granted.

On November 15, 2022, defendants Michael Aaron Tew and Kimberley Ann Tew filed an ex parte motion seeking leave to serve a subpoena on the parties listed above pursuant to Federal Rule of Criminal Procedure 17(c). (Doc. 266.) The motion failed to note that, absent exceptional circumstances, the Court must first notify a third-party victim before ordering service of a subpoena requiring production of personal or confidential information about that victim. Fed. R. Crim. P. 17(c)(3). The third parties at issue are correctly considered victims—the defendants allegedly committed fraud upon National Air Cargo Holdings, an entity

- 1 -

Mr. Alf wholly owns. The subpoenas at issue seek personal and confidential information about the victims of the alleged fraud. The defendants' ex parte motion seeking leave to serve the subpoenas did not alert me that the parties at issue are victims or note any exceptional circumstances as to why prior notice to the victims should not be required. (*See* Doc. 266.) My order granting leave to serve the subpoenas did not require giving notice to the victims as mandated by Rule 17(c)(3). (*See* Doc. 272.) The subpoenas must be quashed for this reason alone.

Further, in my November 29, 2022 order granting the defendants' motion, I ordered the defendants to refile a corrected subpoena that listed the correct location for production. Defendants failed to do so before serving the subpoenas. The motion to quash is granted for this additional reason.

## CONCLUSION

It is ORDERED that:

The Motion of Third-Party Victims to Quash Subpoenas (Doc. 297) is GRANTED;

The defendants' third-party subpoenas dated December 1, 2022 are QUASHED; and

The defendants may, if they wish, file a renewed motion for leave to serve third-party subpoenas that fully complies with Federal Rule of Criminal Procedure 17.

DATED: January 30, 2023                    BY THE COURT:

Daniel D. Domenico
United States District Judge

- 2 -

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

 Plaintiff,

v.

1. MICHAEL AARON TEW,

 Defendant.

---

## DEFENDANT MICHAEL TEW'S UNOPPOSED MOTION TO CONTINUE TRIAL AND EXCLUDE 240 DAYS FROM THE SPEEDY TRIAL ACT

---

Defendant Michael Aaron Tew ("Mr. Tew") respectfully moves this Court for an Order continuing trial and pre-trial related settings and excluding 240 days from the Speedy Trial Act computations in this case (the "Motion"). In support of this Motion, Mr. Tew states:

### CASE BACKGROUND

1. On January 31, 2023, undersigned counsel was appointed to represent Mr. Tew pursuant to the Criminal Justice Act.

2. Prior to counsel's appointment, an eight-day trial was previously set by the Court to commence on Monday, March 13, 2023. (Order at Doc. 263.)

3. The Court is authorized by 18 U.S.C. §3161(h)(7) to exclude time limitations set forth in the Speedy Trial Act where the ends of justice served by such delay outweigh the best interests of the public and the defendant in a speedy trial. In reviewing such a request, 18 U.S.C. §3161(h)(7)(B)(I) states that the Court should consider "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice." Additionally, 18 U.S.C. §3161(h)(7)(B)(iv)

provides that the Court should consider whether failure to grant such a continuance "would deny counsel for the defendant… the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

4.      When considering such a request, "the record must clearly establish that the district court considered the proper factors at the time such a continuance was granted." *United States v. Toombs,* 572 F.3d 1262, 1269 (10th Cir. 2009). The record must contain an explanation, not just a conclusory statement, for why the requested continuance is necessary. *See id.* at 1271-72.

5.      In *United States v. West*, the Tenth Circuit established four factors for the Court to consider when deciding on such a request : (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the request for continuance; (3) the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance; and (4) the need asserted for the continuance and the harm that could be suffered as a result of the court's denial of the continuance. *See United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987).

## ARGUMENT IN SUPPORT OF MOTION

6.      Because the circumstances of this case satisfy the criteria of both the Speedy Trial Act and *West*, Mr. Tew respectfully requests that the Court vacate current deadlines, exclude 240 days from speedy trial calculations, and set trial in this matter on or about Monday, November 6, 2023.

### *These circumstances satisfy the requirements of 18 U.S.C. §3161(h)(7).*

7.      Failure to grant the continuance in this case would result in a miscarriage of justice and would deny newly appointed counsel the reasonable time necessary for effective

preparation, taking into account the exercise of due diligence.

8. Discovery in this case is exceptionally voluminous. Counsel for the government has requested that defense counsel provide a 2-terabyte hard drive to the U.S. Attorney's Office to receive all discovery. Though undersigned counsel is so new to the case as to have very little knowledge of what investigative resources were utilized by authorities, the 60-count Indictment (ECF 83) makes clear that the allegations are substantial, complicated, and cover a period of several years. Counsel understands that discovery is so overwhelming that prior counsel for Mr. Tew retained the assistance of the late Richard Demarest to assist with its review.

9. Because he was only just appointed, counsel has not yet had meaningful time to meet with Mr. Tew and discuss the case, potential witnesses, and analyze available motions of defenses. Counsel does not believe he has adequate time to do so in advance of the existing March 2023 trial setting.

10. If a continuance of the trial and other deadlines were not granted, a miscarriage of justice would result from counsel being denied the reasonable time necessary for effective preparation. If a 240-day continuance were granted, however, counsel believes he would have sufficient time to review and process discovery, investigate and meet with potential witnesses, research any applicable motions, and prepare for trial in this case.

### *The West factors also support a continuance of the trial date.*

11. Likewise, the factors established by the Tenth Circuit in *West* support a continuance of the trial. Date. First, although only recently appointed, undersigned counsel has been diligent in learning about the case, including the scope of discovery and existing deadlines, and concluded that a ends-of-justice continuance in necessary.

12. Second, if granted, the continuance will accomplish the purposes underlying the

request for continuance, that is, to review discovery, properly advise Mr. Tew, and prepare for trial. Counsel currently believes that 240 additional days is sufficient time to complete these tasks.

13.     Third, counsel has conferred with counsel for the government, Assistant U.S. Attorney ("AUSA") Bryan Fields, regarding this Motion. AUSA Fields stated that he is not opposed to this Motion or the requested November 2023 trial date. Counsel has also conferred with Mr. David Kaplan, counsel for co-defendant Kimberley Tew. Mr. Kaplan, who himself was only appointed to this case one month ago, stated that he is not opposed to this Motion or the requested November 2023 trial date. As such, counsel believes that any inconvenience to the opposing party, the co-defendant, and potential witnesses will be minimal. Counsel also knows of no reason why such a continuance would unnecessarily inconvenience the Court.

14.     Finally, the need for a continuance in this case is justified to completely advise Mr. Tew and prevent the miscarriage of justice. An exclusion of 240 days under the Speedy Trial Act is a reasonable request to allow for discovery to be reviewed, witnesses interviewed, issues researched, and preparation for trial. Until each of these tasks has been accomplished, counsel cannot adequately advise Mr. Tew and defend him against the pending charges.

## CONCLUSION

WHEREFORE, Mr. Tew respectfully requests that the Court exclude 240 days from the Speedy Trial Act computations and continue trial and pre-trial related deadlines accordingly.

DATED this 3rd day of February, 2023.

_/s/  Jason D. Schall_
Jason D. Schall
Bowlin & Schall LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861

E-mail: jason@bowsch.com
Attorney for Defendant Michael Aaron Tew

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1).

　　　*/s/   Jason D. Schall*
Jason D. Schall


## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

> AUSA Bryan Fields
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Bryan.Fields3@usdoj.gov

| | |
|---|---|
| David Kaplan | Michael John Tallon |
| Stimson LaBranche Hubbard, LLC | 401 Stony Brook Road |
| 1652 North Downing Street | Rush, NY 14543-9419 |
| Denver, CO 80203 | (585) 329-8139 |
| (720) 689-8909 | mtallon@tallonlaw.com |
| kaplan@slhlegal.com | *Attorney for Jonathan K.* |
| *Attorney for Kimberley Ann Tew* | *Yioulos* |

I hereby certify that I will mail or serve the filing to the following participant:

> Mr. Michael Aaron Tew

　　　*/s/   Jason D. Schall*
Jason D. Schall

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
rodriguez@slhlegal.com), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Jason
Dale Schall (jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen
(cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com,
nancy@cohenblacklaw.com), Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov,
lauren.timm@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9009535@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Continue
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 2/3/2023 at 4:36 PM MST and filed on 2/3/2023

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 310(No document attached) |

**Docket Text:**
 **ORDER re [309] Motion to Continue as to Michael Aaron Tew. The Court currently does not have enough information to determine whether the ends–of–justice served by the length of delay requested by the Defendant outweighs the best interests of the defendant and public in a speedy trial. In light of the appointment of Mr. Tew's new counsel and the suspension of the present time from the Speedy Trial Act given the James proceeding is not yet under advisement, the eight–day jury trial set for 3/13/23 and Trial Preparation Conference set for 3/7/2023 are VACATED. The Motion to Continue [309] is denied without prejudice. If Defendant wishes to file a renewed Motion to Continue, he should do so concurrent with the status report due 3/13/2023. SO ORDERED by Judge Daniel D. Domenico on 02/03/2023. Text Only Entry (dddlc5, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,

mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman      al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen      nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman      al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  **MICHAEL AARON TEW, and**
    2.  **KIMBERLY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## JOINT STATUS REPORT

On January 30, 2023, the Court entered an order that relieved attorney Peter R. Bornstein of any further representation of defendant Michael Aaron Tew. The order also directed the parties, within one week of the new attorney's appearance, to file a joint status report addressing (1) the Speedy Trial Act implications of the new representation and (2) any other issues the parties wish to bring to the Court's attention. ECF No. 305. Mr. Jason Schall entered his appearance for Mr. Tew on January 31, 2023. The parties have since consulted with one another and submit this joint status report.

    1.    Counsel for both defendants notified the government of their respective intent to file motions seeking a 240-day ends-of-justice continuance under the Speedy Trial Act.  Counsel for defendant Michael Aaron Tew filed the anticipated

1

motion on February 3, 2023. The motion was denied without prejudice that same
day.

    2.    While the government has expressed concern about the delays in this
matter, the ends of justice certainly require that new counsel be given adequate
time to prepare for trial and, under the circumstances, the government does not
oppose the motions. The government notes that prior counsel needed similar
amounts of time to adequately review similar amounts of discovery. While motions
have already been filed in this matter, new counsel will need time to evaluate
whether additional motions should be filed, including motions related to any *James*
proffer.

    3.    An ends of justice continuance for either or both of the defendants Tew
would toll the Speedy Trial Act. 18 U.S.C. 3161(h)(6)(providing for exclusion of
reasonable period of delay when the defendant is joined for trial with codefendant).
The parties believe that the current speedy trial date is 4/22/23 and that another
240-day exclusion would make 12/18/23 the new speedy trial deadline based on the
following calculation:

| Dates of Docket Entry / Pending Motions | Action | Speedy Trial Provision | New Speedy Trial Deadline | Notes |
|---|---|---|---|---|
| 2/3/21 | Indictment | § 3161©(1) | 4/14/21 | Start of Clock |
| 02/28/21 - 3/18/21 | Motion re Joint Representation [ECF No. | § 3161(h)(D), (H) (pretrial | 05/02/21 | 18 days excluded – |

| | 108] | Motion) | | May 2 is Sunday. So May 3. But cautious |
|---|---|---|---|---|
| 03/11/21-3/18/21 | Motion for Ends-of-Justice Continuance [ECF No. 115] | § 3161(h)(D), (H) (pretrial Motion) | 05/02/21 | Incorporated in above |
| 3/18/21 | Order granting 180 day EOJ | § 3161(h)(D), (H) (pretrial Motion) | 10/19/21 | 180 days excluded |
| 08/10/21 | Motion for EOJ (ECF No. 143) | 3161(h)(7)(A) (ends-of-justice) | 10/29/21 | Incorporated in above |
| 9/22/21 | Order granted EOJ for 180 days (ECF No. 149) | 3161(h)(7)(A) (ends-of-justice) | 4/27/2022 | 180 days excluded |
| 12/27/21 | Motion for EOJ (ECF No. 165) | 3161(h)(7)(A) (ends-of-justice) | 4/27/2022 | Incorporated in above |
| 2/4/22 | Order granted EOJ (ECF No. 174 | 3161(h)(7)(A) (ends-of-justice) | 7/26/2022 | 90 days excluded |
| 4/26/22 | Motion for EOJ (ECF No. 193) | 3161(h)(7)(A) (ends-of-justice) | 7/26/2022 | Incorporated in above |
| 5/12/22 | Order granting EOJ | 3161(h)(7)(A) (ends-of-justice) | 1/22/23 | 180 days excluded |
| 10/28/22 – 1/26/23 | Order granting James Motion and Setting Hearing | 3161(h)(1)(d) | 4/22/23 | 90 days excluded |
| 12/1/2022 – 1/31/2023 | Motions Relating to Appointment of Counsel | 3161(h)(1)(d) | 4/22/23 | Incorporated in above |

3

Respectfully submitted this 7th day of February, 2023.

COLE FINEGAN
United States Attorney

By:    */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:    */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

BOWLING & SCHALL LLC

By:    */s/ Jason D. Schall*
Jason D. Schall
7350 E Progress Place, Suite 100
Greenwood Village, CO 80111
Telephone: 720-505-3861
E-mail: jason@bowsch.com
Attorney for Defendant Michael Aaron Tew

STIMSON LABRANCHE HUBBARD

By:    */s/ David S. Kaplan*
David S. Kaplan
1652 N. Downing Street
Denver, CO 80218
Telephone: 720-689-8909
Facsimile: 720-689-8909
E-mail: kaplan@slhlegal.com
Attorney for Defendant Kimberley Ann
Tew

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this filing has no effect on the speedy trial clock.

*/s/ Bryan Fields*
Bryan Fields

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on February 7th, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

/s/ Bryan Fields
Bryan Fields
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Bryan.Fields3@usdoj.gov
Attorney for the United States

6

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
rodriguez@slhlegal.com), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Jason
Dale Schall (jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen
(cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com,
nancy@cohenblacklaw.com), Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov,
lauren.timm@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9029204@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion to Modify
Conditions of Release
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

**Notice of Electronic Filing**

The following transaction was entered on 2/17/2023 at 11:57 AM MST and filed on 2/17/2023

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 313(No document attached) |

**Docket Text:**
 **ORDER granting [312] Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Condition 7(x)(w) is stricken from Defendant's Conditions of Release. Defendant's supervising officer shall notify the Court if any issues arise from the removal of this restriction. SO ORDERED by Judge Daniel D. Domenico on 2/17/2023. Text Only Entry (dddlc5, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman     al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler     egaller@gcorplaw.com

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLY ANN TEW,** a/k/a Kimberley Vertanen,

Defendants.

---

## JOINT STATUS REPORT

---

On January 30, 2023, the Court entered an order directing the parties to file a joint status report with mutually agreeable proposed deadlines for further *James* proceedings. ECF No. 305. The parties have since consulted with one another and submit this joint status report.

1.      The parties agree that the case is not ripe for a *James* hearing.  Newly appointed counsel for defendants Michael Aaron Tew and Kimberley Ann Tew need additional time to review voluminous discovery in this matter before they can make informed decisions about how best to advance their respective clients' interests, including deciding whether a *James* hearing will be necessary at all.  Both defendants intend to file respective requests for ends-of-justice continuances setting forth the facts explaining why another continuance in this matter is in the

1

defendants' best interests and why that continuance outweighs the public interests in a speedy trial.

2. The government has previously expressed concerns about delays in this matter. Those concerns are still present, but they are outweighed by the defendants' interests in receiving thorough and thoughtful advice rendered after experienced and learned counsel have fully evaluated an enormous amount of discovery relating to charged accusations of a years-long fraud scheme involving alleged losses in the millions. A *James* hearing is a serious turning point in criminal litigation. There is no public interest in a hearing that the parties — thoroughly engaged in the matter and diligently pursuing either its agreed-upon resolution or its efficient adjudication at a trial focused on the key issues — may ultimately be able to resolve among themselves.

3. For these reasons, the parties respectfully request that the matter of a *James* hearing be further adjourned and that the parties file another joint status report on or about October 13, 2023. By that time, the parties will have either resolved the evidentiary issues related to a *James* hearing by mutual agreement or will have vastly narrowed the scope of any such hearing in a way that will substantially conserve judicial resources, all on a timeline that does not delay further proceedings in this matter more than what is necessary and justified by the contemporaneously filed ends-of-justice motions. The parties believe that this timeframe allows for any necessary *James* hearing to be completed before the trial

2

setting contemplated by the proposed ends-of-justice motions in February 2024.

Respectfully submitted this 13th day of March, 2023.

COLE FINEGAN
United States Attorney

By: */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By: */s/ Albert Buchman*
Albert Buchman
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Al.Buchman@usdoj.gov
Attorney for the Government

BOWLIN & SCHALL, LLC

By: */s/ Jason D. Schall*
Jason D. Schall
7350 E Progress Place, Suite 100
Greenwood Village, CO 80111
Telephone: 720-505-3861
E-mail: jason@bowsch.com
Attorney for Defendant Michael Aaron Tew

STIMSON LABRANCHE HUBBARD

By: */s/ David S. Kaplan*
David S. Kaplan
1652 N. Downing Street
Denver, CO 80218
Telephone: 720-689-8909
Facsimile: 720-689-8909
E-mail: kaplan@slhlegal.com
Attorney for Defendant Kimberley Ann
Tew

3

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this filing has no effect on the speedy trial clock.

*/s/ Bryan Fields*
Bryan Fields

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 13, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which system automatically provides a copy to defense counsel of record.

/s/ Bryan Fields
Bryan Fields
Assistant United States Attorney
1801 California Street, Suite 1600
Denver, Colorado 80202
Phone: (303) 454-0100
Fax: (303) 454-0403
E-mail: Bryan.Fields3@usdoj.gov
Attorney for the United States

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

**Unopposed Motion for an Ends of Justice (EOJ) Continuance Pursuant to 18 U.S.C. §3161 (h)(7)**

---

David S. Kaplan of the law firm Stimson LaBranche Hubbard, LLC submits this *Unopposed Motion for an Ends of Justice (EOJ) Continuance Pursuant to 18 US.C. §3161(h)(7)* and as grounds states the following:

**Procedural Background**

1.     On February 3, 2021 a 60-count indictment was filed in the United States District Court for the District of Colorado naming Michael Aaron Tew, Kimberley Ann Tew and Jonathan K. Yioulos as defendants.  Ms. Kimberley Tew was charged with one count of  Conspiracy to Commit Wire Fraud in violation of 18 U.S.C. §1343; 7 counts of Wire fraud in violation of 18 U.S.C. §1343 and 18 U.S.C. §2 (Doc. #83).

2.     On December 28, 2022, Peter Bornstein, having previously entered his appearance on behalf of both Michael Tew and Kimberley Tew, requested the court provide separate counsel for one of the Defendants (Doc. # 288).

3.      Mr. Bornstein's motion for separate counsel having been granted, undersigned counsel, pursuant to a Criminal Justice Act appointment, entered his appearance on behalf of Ms. Kimberley Tew on January 3, 2023.

**Standards for Granting an Ends of Justice Continuance**

4.      Pursuant to 18 U.S.C. § 3161(h)(7) the court is authorized to grant a continuance at the request of the defendant, if it is determined that the ends of justice outweighs the public's interest in a speedy trial.  The factors too be considered, pertinent to this request, as enumerated in 18 U.S.C. §3161(h)(7)(B), are; whether the failure to grant a continuance would result in a miscarriage of justice; whether the case is so complex that it is unreasonable to expect adequate preparation for pretrial proceedings or trial within speedy trial limits; or, regardless of the case complexity, and despite due diligence, counsel for the defendant would not have reasonable time for effective preparation.  Should the court so conclude, it is required to make clear its reasons for granting an ends-of-justice continuance.  *States v. Toombs*, 572 F.3d 1262, 1269 (10th Cir. 2009).

5.      The Tenth circuit looks to several factors when evaluating the request for a continuance "…including: the diligence of the party requesting the continuance; the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; the inconvenience to the opposing party, its witnesses, and the court resulting from the continuance and the harm that appellant might suffer as the result of the district court's denial of the continuance". *United States v. West*, 828 F.2d 1468,1470 (10th Cir. 1987).

**Factors in Support of Granting a Continuance**

6.      The sheer volume of discovery requires counsel to have additional time to sufficiently review the facts so that meaningful consultation with the client can occur, an evaluation of the legal issues and potential motions developed, further investigation conducted and negotiations with the government for a possible resolution entertained.

7.      On January 5, 2023 Counsel for Ms. Tew delivered to the government a 2-terabyte hard drive to accommodate the discovery being provided.  The prosecution, by correspondence dated January 12, 2023, indicated over 400 GB of information had been uploaded.  The hard drive was then forwarded to another Legal Administrative Specialist to load the "filter team materials".  The "initial production" discovery index dated, January 12 2023, contained 40 separate files of bank records, 8500 investigation pages and several thousand pages of search warrant records.

8.      Further complicating the review of discovery materials was the unfortunate passing of Richard Demarest, a discovery specialist known to the federal court, retained through appointment for the benefit of all defense counsel, to aid in the organizing of discovery.  Obtaining Mr. Demarest's catalogue of discovery has just recently been accomplished.

9.      The indictment describes a case that is voluminous, complicated, and the result of a lengthy period of investigation. The vacated March 23, 2023 trial date was set over 2 years after the indictment was returned.  Current counsel for Ms. Tew has been on the case for under 3 months, not a sufficient amount of time to begin an educated conversation with his client about the intricacies of the case and its defenses.

3

10.     The *West* factors supporting the granting of an ends of justice continuance have been met. Counsel has been diligent in obtaining discovery and beginning the process of organizing, reviewing, and conferring with his client.  The additional time requested by counsel is necessary to effectively review the facts and allegations presented by the government.  AUSA Fields has indicated, as contained in the recently filed *Joint Status Report* (Doc. #314), that despite being concerned about delay, under the circumstances defendants' interest in providing thorough and thoughtful advice justifies an ends of justice continuance. Finally, the harm to the defendant, should a continuance not be granted, is the lack of adequately prepared counsel providing capable representation.

WHEREFORE, it is requested that the court grant Defendant Kimberley Tew's request for a continuance and exclude sufficient time to allow for the scheduling of trial in February of 2024.

Dated: March 13, 2023.

Respectfully submitted,

*s/ David S. Kaplan*
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   kaplan@slhlegal.com

*Attorney for Kimberley Ann Tew*

4

**Certificate of Service**

I certify that on March 13, 2023, I electronically filed the foregoing *Unopposed Motion for an Ends of Justice (EOJ) Continuance Pursuant to 18 U.S.C. §3161 (h)(7)* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Albert Buchman
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
al.buchman@usdoj.gov

*s/ Brenda Rodriguez*
Brenda Rodriguez

5

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1.  MICHAEL AARON TEW,

     Defendant.

---

## DEFENDANT MICHAEL TEW'S UNOPPOSED MOTION TO CONTINUE TRIAL AND EXCLUDE TIME FROM THE SPEEDY TRIAL ACT

---

     Defendant Michael Aaron Tew ("Mr. Tew") respectfully moves this Court for an Order continuing trial and pre-trial related settings and excluding approximately 329 days from the Speedy Trial Act computations in this case (the "Motion"). In support of this Motion, Mr. Tew states:

### CASE BACKGROUND

     1.     On January 31, 2023, undersigned counsel was appointed to represent Mr. Tew pursuant to the Criminal Justice Act.

     2.     Prior to counsel's appointment, an eight-day trial was previously set by the Court to commence on Monday, March 13, 2023. (Order at Doc. 263.)

     3.     The Court is authorized by 18 U.S.C. §3161(h)(7) to exclude time limitations set forth in the Speedy Trial Act where the ends of justice served by such delay outweigh the best interests of the public and the defendant in a speedy trial. In reviewing such a request, 18 U.S.C. §3161(h)(7)(B)(I) states that the Court should consider "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding

impossible, or result in a miscarriage of justice." Additionally, 18 U.S.C. §3161(h)(7)(B)(iv)

provides that the Court should consider whether failure to grant such a continuance "would deny

counsel for the defendant… the reasonable time necessary for effective preparation, taking into

account the exercise of due diligence."

4.       When considering such a request, "the record must clearly establish that the

district court considered the proper factors at the time such a continuance was granted." *United

States v. Toombs,* 572 F.3d 1262, 1269 (10th Cir. 2009). The record must contain an explanation,

not just a conclusory statement, for why the requested continuance is necessary. *See id.* at 1271-

72.

5.       In *United States v. West*, the Tenth Circuit established four factors for the

Court to consider when deciding on such a request : (1) the diligence of the party requesting the

continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose

underlying the request for continuance; (3) the inconvenience to the opposing party, its

witnesses, and the court resulting from the continuance; and (4) the need asserted for the

continuance and the harm that could be suffered as a result of the court's denial of the

continuance. *See United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987).

## ARGUMENT IN SUPPORT OF MOTION

6.       Because the circumstances of this case satisfy the criteria of both the Speedy Trial

Act and *West*, Mr. Tew respectfully requests that the Court vacate current deadlines, exclude

approximately 329 days[1] from speedy trial calculations, and set trial in this matter on or about

Monday, February 5, 2024.

---

[1] This calculation represents the time elapsed between the prior trial setting, March 13, 2023, and
the requested trial setting, February 5, 2024.

***These circumstances satisfy the requirements of 18 U.S.C. §3161(h)(7).***

7.      Failure to grant the continuance in this case would result in a miscarriage of justice and would deny newly appointed counsel the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

8.      Discovery in this case is exceptionally voluminous. Counsel for the government has received two 2-terabyte hard drives of the discovery in the case, one from the U.S. Attorney's Office and the other from prior counsel containing the work-product of a discovery expert (the late Mr. Richard Demarest) previously assisting with the case. The 60-count Indictment (ECF 83) makes clear that the allegations here are substantial, complicated, and cover a period of several years. What's more, the allegations involve various types of offenses (money laundering, tax charges, and wire fraud) as well as financial transactions (including cryptocurrency).

9.      Since his appointment to this matter nearly six weeks ago, undersigned counsel has endeavored to begin learning the case, including the scope of discovery and potential witnesses, and begun to analyze potential motions and defenses. The hearing for one such motion, a *James* motion previously granted by the Court, remains pending, but undersigned counsel cannot yet state with any certainty whether such a hearing will be necessary. As such, in a Joint Status Report filed on March 13, 2023, the parties collectively suggested that the Court extend the parties additional time to determine whether a *James* hearing is necessary and, if so, to schedule a date for such a hearing at that time. Such a schedule, if adopted by the Court, would allow for a *James* hearing to occur prior to the end of calendar year 2023, and a subsequent trial setting to occur in early 2024. It would also allow the parties meaningful time to explore attempts to resolve this case once newly-appointed counsel has reviewed discovery and

advised his client regarding potential defenses.

10.     If a continuance of the trial and other deadlines were not granted, a miscarriage of justice would result from counsel being denied the reasonable time necessary for effective preparation. If a continuance were granted, however, counsel believes he would have sufficient time to review and process discovery, investigate and meet with potential witnesses, research any applicable motions, meaningfully participate in discussions with the government to resolve the case, and to prepare for both a *James* hearing and jury trial as necessary.

*The West factors also support a continuance of the trial date.*

11.     Likewise, the factors established by the Tenth Circuit in *West* support a continuance of the trial. First, although only recently appointed, undersigned counsel has been diligent in learning about the case, including the scope of discovery and existing deadlines, and concluded that a ends-of-justice continuance in necessary. Rather than rely entirely on tolling provisions related to pending motions, this request for an ends-of-justice continuance is an appropriate mechanism to clarify deadlines under the Speedy Trial Act.

12.     Second, if granted, the continuance will accomplish the purposes underlying the request for continuance, that is, to review discovery, properly advise Mr. Tew, and prepare for a *James* hearing and trial as necessary. Counsel currently believes that a February 2024 trial date provides sufficient time to complete these tasks.

13.     Third, counsel has conferred with counsel for the government, Assistant U.S. Attorney ("AUSA") Bryan Fields, regarding this Motion. AUSA Fields stated that he is not opposed to this Motion or the requested February 2024 trial date. Counsel has also conferred with Mr. David Kaplan, counsel for co-defendant Kimberley Tew. Mr. Kaplan, who himself was recently appointed to this case, stated that he is not opposed to this Motion or the requested

February 2024 trial date. (Mr. Kaplan filed a similar motion on behalf of his client, co-defendant Kimberley Tew. *See* ECF 315.) As such, counsel believes that any inconvenience to the opposing party, the co-defendant, and potential witnesses will be minimal. Counsel also knows of no reason why such a continuance would unnecessarily inconvenience the Court.

14.     Finally, the need for a continuance in this case is justified to adequately advise Mr. Tew and prevent the miscarriage of justice. An exclusion of 329 days under the Speedy Trial Act is a reasonable request in a complicated fraud case to allow for discovery to be reviewed, witnesses interviewed, issues researched, meaningful discussions with the government regarding resolution, and preparation both for pre-trial hearings (*James*) and trial itself. Until each of these tasks has been accomplished, counsel cannot adequately advise Mr. Tew and defend him against the pending charges.

## CONCLUSION

WHEREFORE, Mr. Tew respectfully requests that the Court exclude approximately 329 days from the Speedy Trial Act computations and continue trial and pre-trial related deadlines accordingly.

DATED this 13th day of March, 2023.

            */s/  Jason D. Schall*
Jason D. Schall
Bowlin & Schall LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com
Attorney for Defendant Michael Aaron Tew

**CERTIFICATE OF CONFORMITY**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Jason D. Schall*
Jason D. Schall

**CERTIFICATE OF SERVICE**

I hereby certify that on March 13, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

> AUSA Bryan Fields
> U.S. Attorney's Office
> 1801 California Street, Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Bryan.Fields3@usdoj.gov

> David Kaplan
> Stimson LaBranche Hubbard, LLC
> 1652 North Downing Street
> Denver, CO 80203
> (720) 689-8909
> kaplan@slhlegal.com
> *Attorney for Kimberley Ann Tew*

> Michael John Tallon
> 401 Stony Brook Road
> Rush, NY 14543-9419
> (585) 329-8139
> mtallon@tallonlaw.com
> *Attorney for Jonathan K. Yioulos*

I hereby certify that I will mail or serve the filing to the following participant:

> Mr. Michael Aaron Tew

*/s/ Jason D. Schall*
Jason D. Schall

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MICHAEL AARON TEW,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

     Defendants.

---

## ORDER GRANTING MOTION TO CONTINUE

---

Before the Court is a motion to continue the trial date in this case and to exclude that period of delay when computing the time within which his trial must commence under the Speedy Trial Act filed by counsel to Defendant Kimberley Ann Tew. *Doc*. 315.[1] For the following reasons, the Court finds that a continuance is warranted. The Court also finds that the ends of justice served by granting the continuance outweigh the best interests of the public and Defendant in a speedy trial. Accordingly, the motion is granted.

---

[1] Ms. Tew's motion does not indicate how much time she requests be excluded. Counsel for co-defendant Michael Aaron Tew filed a motion concurrently with Ms. Tew that requested 329 days be excluded. *Doc*. 316. The Court assumes Ms. Tew requests the same. *See also,* 18 U.S.C. § 3161(h)(6) (allowing reasonable exclusion of Speedy Trial Act time "when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted").

## PROCEDURAL HISTORY

On July 8, 2020, a criminal complaint was issued as to Mr. Tew, and he was arrested on July 9, 2020. Mr. Tew waived indictment. On February 3, 2021, an indictment was issued for both Mr. and Ms. Tew. Mr. Tew was indicted on one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), 39 counts of wire fraud ((18 U.S.C. § 1343), one count of money laundering, one count of conspiracy to commit money laundering (18 U.S.C. § 1956(h)), thirteen counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), and four counts of willful failure to file a tax return (20 U.S.C. § 7203). Ms. Tew was indicted on similar charges, including one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), six counts of wire fraud (18 U.S.C. § 1343), and five counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).

On February 5, 2021, Mr. Tew entered a plea of not guilty at his arraignment, and Ms. Tew entered a plea of not guilty on February 10, 2021, making April 22, 2021, the initial deadline for their trial to commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On February 11, 2021, the Court entered an order setting trial to commence on April 19, 2021. *Doc*. 101. The Court excluded 19 days from Mr. Tew's speedy clock when his co-defendants were joined for trial. (Doc. 101) and 180 days for an Ends of Justice Continuance *Doc*. 116. Defendants filed motions to exclude twelve months, ninety days, ninety days, and one hundred and eighty days from this time calculation, which the Court granted. *Docs*. 143, 149, 165, 174, 165, 174, 193. On October 12, 2022, the Court held a hearing on a variety of motions, including a motion for a *James* hearing (Doc. 220). *Doc*. 255. Because the Court has not yet taken *James* proceeding under advisement, the Speedy Trial Clock has

- 2 -

been suspended. On December 28, 2022, Mr. and Ms. Tew moved for the
appointment of separate counsel, (Doc. 288), which the Court granted.
*Doc*. 289. On February 3, counsel for Mr. Tew filed a motion to continue,
which the Court denied without prejudice. *Doc*. 310. Upon order of the
court, the parties filed a Joint Status Report, which indicated the de-
fendants' intent to file a motion to continue. *Doc*. 311.

On March 13, 2023, Ms. Tew filed the motion to continue currently
before the Court. *Doc*. 315. The government does not oppose the re-
quested continuance. *Id*. at 4.

## APPLICABLE LAW

When evaluating a request to continue a trial, the Court considers
the following factors: (1) the diligence of the party requesting the con-
tinuance; (2) the likelihood that the continuance, if granted, would ac-
complish the purpose underlying the party's expressed need for the con-
tinuance; (3) the inconvenience to the opposing party, its witnesses, and
the Court resulting from the continuance; and (4) the need asserted for
the continuance and the harm that the party requesting it might suffer
if the continuance is denied. *United States v. West*, 828 F.2d 1468, 1470
(10th Cir. 1987). No single factor is determinative, and the weight given
to any one factor may vary depending on the extent of the showing on
the others. *Id*. However, "by far the most important factor to consider"
is the requesting party's need for a continuance and the prejudice result-
ing from its denial. *Id*. at 1471.

When a request for continuance implicates Speedy Trial Act require-
ments, the Court may exclude from the statutory time period within
which the Defendants' trial must commence "[a]ny period of delay re-
sulting from a continuance granted . . . on the basis of [the Court's] find-
ings that the ends of justice served by taking such action outweigh the

- 3 -

best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In order to exclude the period resulting from such a continuance, the Court must set forth in the record its reasons for finding that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial, considering the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> . . . .
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(A)-(B); *see also United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009).

## DISCUSSION

Defendants' counsel requests a continuance for the following reasons: (1) this case involves sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants; (2) the discovery disclosed by the government to date consists of more than 230,000 documents and 300 gigabytes of electronically stored data; (3)

- 4 -

defense counsel was appointed less than three months ago and requires additional time to prepare pre-trial motions while continuing to analyze discovery; (4) defense counsel requires additional time to determine whether a *James* hearing is necessary. (Doc. 315 at 3.)

The Court finds that the *West* factors weigh in favor of granting a continuance. Nothing in the record suggests that Ms. Tew's newly-appointed counsel has not been diligent in preparing for trial. It also appears likely that the continuance, if granted, would accomplish Defendants' stated purpose of allowing adequate time to obtain and review discovery, conduct further factual investigation, conduct legal research, engage in plea discussions with the government, and prepare for a jury trial if necessary. The government does not oppose the requested continuance, and the continuance will not cause any significant inconvenience to the Court. And Defendant might be significantly prejudiced if the continuance is denied, as she may be unable to effectively prepare for a *James* hearing or trial, without adequate time to conduct investigation and research relevant to the case.

The Court further finds that the Speedy Trial Act factors weigh in favor of a finding that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. It is in the defendant's best interest to have sufficient time to complete necessary pretrial tasks and discuss her case with her attorney. Without the requested continuance, the defense will be unable to effectively prepare the case, file appropriate motions, or engage in plea discussions. A limited ends-of-justice continuance will not subvert the public's or Defendants' interest in the prompt prosecution of this case.

- 5 -

Accordingly, based on the relevant record considered as a whole, the Court FINDS that:

Failure to grant a continuance of trial beyond the time prescribed by 18 U.S.C. § 3161(c)(1) would likely result in a miscarriage of justice, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i);

Even taking into account the exercise of due diligence, failure to grant a continuance would deny counsel for Defendant the reasonable time necessary for effective pretrial and trial preparation within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv);

The ends of justice served by granting the requested continuance outweigh the best interest of the public and Defendant in a speedy trial within the meaning of 18 U.S.C. § 3161(h)(7)(A); and

Three hundred and twenty-nine days should be excluded from the computation of the speedy trial time.

For the foregoing reasons,[2] it is ORDERED that:

Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 315) is GRANTED;

Three hundred and twenty-nine (329) days, from March 17, 2023 to February 9, 2024, will be excluded from the computation of Defendant Kimberley Tew's Speedy Trial Act time;

The eight-day trial is RESET to **February 5, 2024** at **9:00 am** in Courtroom A1002. Other pretrial Motions are due September 13, 2023,

---

[2]   As required by 18 U.S.C. § 3161(h)(7)(C), the Court has not predicated its ruling on congestion of its calendar or lack of diligent preparation by the government's counsel.

- 6 -

Responses due by September 20, 2023. The Trial Preparation Conference is RESET to **January 30** at **1:30 p.m.** in Courtroom A1002.

DATED: March 17, 2023                     BY THE COURT:

_____
Daniel D. Domenico
United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**MICHAEL AARON TEW**,
KIMBERLEY ANN TEW, and
JONATHAN K. YIOULOS

     Defendants.

---

## ORDER GRANTING MOTION TO CONTINUE

---

Before the Court is a motion to continue the trial date in this case by three hundred and twenty-nine (329) days and to exclude that period of delay when computing the time within which his trial must commence under the Speedy Trial Act filed by counsel to Defendant Michael Aaron Tew. *Doc.* 316. For the following reasons, the Court finds that a continuance is warranted. The Court also finds that the ends of justice served by granting the continuance outweigh the best interests of the public and Defendant in a speedy trial. Accordingly, the motion is granted.

### PROCEDURAL HISTORY

On July 8, 2020, a criminal complaint was issued as to Mr. Tew, and he was arrested on July 9, 2020. Mr. Tew waived indictment.  On February 3, 2021, an indictment was issued for both Mr. and Ms. Tew. Mr. Tew was indicted on one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), 39 counts of wire fraud ((18 U.S.C. § 1343), one count of money laundering, one count of conspiracy to commit money laundering

- 1 -

(18 U.S.C. § 1956(h)), thirteen counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957), and four counts of willful failure to file a tax return (20 U.S.C. § 7203). Ms. Tew was indicted on similar charges, including one count of conspiracy to commit wire fraud (18 U.S.C. § 1349), six counts of wire fraud (18 U.S.C. § 1343), and five counts of engaging in monetary transactions in property derived from specified unlawful activity (18 U.S.C. § 1957).

On February 5, 2021, Mr. Tew entered a plea of not guilty at his arraignment, and Ms. Tew entered a plea of not guilty on February 10, 2021, making April 22, 2021, the initial deadline for their trial to commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On February 11, 2021, the Court entered an order setting trial to commence on April 19, 2021. *Doc.* 101. The Court excluded 19 days from Mr. Tew's speedy clock when his co-defendants were joined for trial, (Doc. 101) and 180 days for an Ends of Justice Continuance (Doc. 116). Defendants filed motions to exclude twelve months, ninety days, ninety days, and one hundred and eighty days from this time calculation, which the Court granted. *Docs.* 143, 149, 165, 174, 165, 174, 193. On October 12, 2022, the Court held a hearing on a variety of motions, including a motion for a *James* hearing (Doc. 220). *Doc.* 255. Because the Court has not yet taken *James* proceeding under advisement, the Speedy Trial Clock has been suspended. On December 28, 2022, Mr. and Ms. Tew moved for the appointment of separate counsel, (Doc. 288), which the Court granted. *Doc.* 289. On February 3, counsel for Mr. Tew filed a motion to continue, which the Court denied without prejudice. *Doc.* 310. Upon order of the court, the parties filed a Joint Status Report (Doc. 311), which indicated the defendants' intent to file a motion to continue.

On March 13, 2023, Mr. Tew filed the motion to continue currently
before the Court. *Doc.* 316. The government does not oppose the re-
quested continuance. *Id.* at 4.

## APPLICABLE LAW

When evaluating a request to continue a trial, the Court considers
the following factors: (1) the diligence of the party requesting the con-
tinuance; (2) the likelihood that the continuance, if granted, would ac-
complish the purpose underlying the party's expressed need for the con-
tinuance; (3) the inconvenience to the opposing party, its witnesses, and
the Court resulting from the continuance; and (4) the need asserted for
the continuance and the harm that the party requesting it might suffer
if the continuance is denied. *United States v. West*, 828 F.2d 1468, 1470
(10th Cir. 1987). No single factor is determinative, and the weight given
to any one factor may vary depending on the extent of the showing on
the others. *Id.* However, "by far the most important factor to consider"
is the requesting party's need for a continuance and the prejudice result-
ing from its denial. *Id.* at 1471.

When a request for continuance implicates Speedy Trial Act require-
ments, the Court may exclude from the statutory time period within
which the Defendants' trial must commence "[a]ny period of delay re-
sulting from a continuance granted . . . on the basis of [the Court's] find-
ings that the ends of justice served by taking such action outweigh the
best interest of the public and the defendant in a speedy trial." 18 U.S.C.
§ 3161(h)(7)(A). In order to exclude the period resulting from such a con-
tinuance, the Court must set forth in the record its reasons for finding
that the ends of justice served by granting the continuance outweigh the
best interests of the public and the defendant in a speedy trial, consid-
ering the following factors:

(i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.

(ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.

. . . .

(iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so complex as to fall within clause (ii), would deny the defendant reasonable time to obtain counsel, would unreasonably deny the defendant or the Government continuity of counsel, or would deny counsel for the defendant or the attorney for the Government the reasonable time necessary for effective preparation, taking into account the exercise of due diligence.

18 U.S.C. § 3161(h)(7)(A)-(B); *see also United States v. Toombs*, 574 F.3d 1262, 1268 (10th Cir. 2009).

## DISCUSSION

Defendants' counsel requests a continuance for the following reasons: (1) this case involves sixty counts of conspiracy, wire fraud, money laundering, and failure to file income taxes with three co-defendants; (2) the discovery disclosed by the government to date consists of more than 230,000 documents and 300 gigabytes of electronically stored data; (3) defense counsel was appointed only six weeks ago and requires additional time to prepare pre-trial motions while continuing to analyze discovery; (4) defense counsel requires additional time to determine whether a *James* hearing is necessary. *Doc.* 316 at 3.

- 4 -

The Court finds that the *West* factors weigh in favor of granting a continuance. Nothing in the record suggests that Mr. Tew's newly-appointed counsel has not been diligent in preparing for trial. It also appears likely that the continuance, if granted, would accomplish Defendants' stated purpose of allowing adequate time to obtain and review discovery, conduct further factual investigation, conduct legal research, engage in plea discussions with the government, and prepare for a jury trial if necessary. The government does not oppose the requested continuance, and the continuance will not cause any significant inconvenience to the Court. And Defendant might be significantly prejudiced if the continuance is denied, as he may be unable to effectively prepare for a *James* hearing or trial, without adequate time to conduct investigation and research relevant to the case.

The Court further finds that the Speedy Trial Act factors weigh in favor of a finding that the ends of justice served by granting a continuance outweigh the best interests of the public and Defendant in a speedy trial. It is in the defendant's best interest to have sufficient time to complete necessary pretrial tasks and discuss his case with his attorney. Without the requested continuance, the defense will be unable to effectively prepare the case, file appropriate motions, or engage in plea discussions. A limited ends-of-justice continuance will not subvert the public's or Defendants' interest in the prompt prosecution of this case.

Accordingly, based on the relevant record considered as a whole, the Court FINDS that:

Failure to grant a continuance of trial beyond the time prescribed by 18 U.S.C. § 3161(c)(1) would likely result in a miscarriage of justice, within the meaning of 18 U.S.C. § 3161(h)(7)(B)(i);

Even taking into account the exercise of due diligence, failure to grant a continuance would deny counsel for Defendant the reasonable time necessary for effective pretrial and trial preparation within the meaning of 18 U.S.C. § 3161(h)(7)(B)(iv);

The ends of justice served by granting the requested continuance outweigh the best interest of the public and Defendant in a speedy trial within the meaning of 18 U.S.C. § 3161(h)(7)(A); and

Three hundred and twenty-nine days should be excluded from the computation of the speedy trial time.

For the foregoing reasons,[1] it is ORDERED that:

Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 316) is GRANTED;

Three hundred and twenty-nine (329) days, from March 17, 2023 to February 9, 2024, will be excluded from the computation of Defendant Michael Tew's Speedy Trial Act time;

The eight-day trial is RESET to **February 5, 2024** at **9:00 am** in Courtroom A1002. Other pretrial Motions are due September 13, 2023, Responses due by September 20, 2023. The Trial Preparation Conference is RESET to **January 30** at **1:30 p.m.** in Courtroom A1002.

DATED: March 17, 2023                     BY THE COURT:

Daniel D. Domenico

---

[1] As required by 18 U.S.C. § 3161(h)(7)(C), the Court has not predicated its ruling on congestion of its calendar or lack of diligent preparation by the government's counsel.

United States District Judge

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Albert C. Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov,
lauren.timm@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Nancy Lin Cohen
(cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com,
nancy@cohenblacklaw.com), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Eric S. Galler
(egaller@gcorplaw.com), David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
rodriguez@slhlegal.com), Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Jason Dale Schall (jason@bowsch.com,
jasondschall@yahoo.com), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), dddlc8 (peter_allevato@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9324476@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Extension
of Time to File
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 9/13/2023 at 11:03 AM MDT and filed on 9/13/2023

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 338(No document attached) |

**Docket Text:**

 **ORDER GRANTING [337] Motion for Extension of Time to File as to Michael Aaron Tew; and**

**GRANTING [336] Motion for Extension of Time to File as to Kimberley Ann Tew.**

**The motions deadline as to Mr. Tew and Ms. Tew is extended to October 13, 2023. The government must file responses on or before October 20, 2023. SO ORDERED by Judge Daniel D. Domenico on 9/13/2023. Text Only Entry (dddlc3, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,

danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov,
USACO.ECFCriminal@usdoj.gov

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), David Scott Kaplan (hickam@slhlegal.com,
kaplan@slhlegal.com, rodriguez@slhlegal.com), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, melanie.learussa@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Jason Dale Schall (jason@bowsch.com,
jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Albert C.
Buchman (al.buchman@usdoj.gov, caseview.ecf@usdoj.gov, lauren.timm@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc8
(peter_allevato@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9388136@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 10/26/2023 at 11:35 AM MDT and filed on 10/26/2023

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 340(No document attached) |

**Docket Text:**
 ORDER SETTING *JAMES* HEARING as to Michael Aaron Tew, Kimberley Ann Tew.

**The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with an accompanying brief, on or before December 5, 2023.**

**The defendants must file their responses to the Government's *James* log and brief on or before December 12, 2023. A *James* Hearing is SET for December 19, 2023 at 9:30 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 10/26/2023. Text Only Entry (dddlc3, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, melanie.learussa@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, melanie.learussa@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Albert C. Buchman    al.buchman@usdoj.gov, CaseView.ECF@usdoj.gov, Lauren.Timm@usdoj.gov, USACO.ECFCriminal@usdoj.gov

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

### GOVERNMENT'S MEMORANDUM IN SUPPORT OF *JAMES* LOG

---

"Do you really understand tho? That's a lot of money out of NAC.  Like that's straight jail time. And I mean that. I wake up at night constantly worried." Ex 1 # 97. Not worried enough to stop. Almost every day for nearly two years, Jonathan Yioulos, Michael Tew and Kimberley Tew had the chance to heed this warning. Instead, almost every day for nearly two years they woke up and made a conscious decision to commit fraud, stopping only when the IRS and the FBI finally showed up to confront them. This memorandum (1) describes the contours of their conspiracy to systematically loot a business out of  over $5,000,000; (2) details a separate conspiracy between the Tews to quickly use their ill-gotten gains to speculate in cryptocurrency, gamble in Las Vegas, and otherwise quickly disburse funds into each other's pockets; and (3) chronicles some of the statements each made to further their criminal designs, as set forth in the concurrently filed *James*

1

log attached here as Exhibit 1.

## I.   Purpose and Scope of Proffer

A James hearing is a Tenth Circuit-specific reference to the procedure

contemplated in Federal Rule of Evidence 104(c) focused on whether statements can

be admitted under Federal Rule of Evidence 801(d)(2)(E). The latter rule says that

statements are not hearsay when they are offered against a party if the statement

was made by the party's coconspirator in furtherance of a conspiracy. To determine

whether it is more likely than not that the prerequisites of admission under this

rule are satisfied—whether a conspiracy existed, whether the declarant and the

party were conspirators, and whether the statement furthered the conspiracy—the

Court can consider any information without regard to the rules of evidence,

including the statements themselves. Fed. R. Evid. 104(a); *United States v.*

*Bourjaily*, 483 U.S. 171, 181 (1987); *United States v. Stein*, 985 F.3d 1254, 1269

(10th Cir. 2021).

Of course, items of evidence may be admissible under more than one theory.

The defendants are accused of fraud. They made false statements to further their

joint criminal agreement and those statements are independently admissible

because they are false and not offered for the "truth of the matter asserted." Fed. R.

Evid. 801(c)(2); *United States v. Lewis*, 594 F.3d 1270, 1284 (10th Cir. 2010). *See,*

*e.g.,* Ex. 1 # 1, 3, 11, 41, 86, 241. Likewise, conspirators often give instructions to

one another. *See, e.g.,* Ex. 1 # 117, 147, 333. Those statements further the

conspiracy under Rule 801(d)(2)(E), but they also do not make truth claims and are

independently non-hearsay. *United States v. Rutland*, 705 F.3d 1238,1252–53 (10th

2

Cir. 2013). Sometimes, the Tews would communicate about their joint efforts to
disburse the proceeds of their fraud by simply sending one another photographs of
deposit slips or QR codes to consummate cryptocurrency transactions. *See, e.g.,* Ex.
1 # 351. Those photographs are not "statements" and thus not covered by the
hearsay rule at all and are also admissible simply to link the defendants to the
conspiracy. *Cf. United States v. Chavez*, 229 F.3d 946, 953-54 (10th Cir. 2000)
(noting that paper scraps with telephone numbers and vague phrase was not
hearsay). Finally, the Tews often discussed their scheme with one another or with
co-conspirator Jonathan Yioulos. In those situations, each defendants' respective
statement is admissible against that defendant under Rule 801(d)(2)(A) and the
other defendant's responses and acknowledgements are admissible for the non-
hearsay purpose of showing the effect on the listener. *See, e.g.,* Ex. 1 # 317. *United
States v. Cesareo-Ayala*, 576 F.3d 1120, 1129-1130 (10th Cir. 2009).

## II. Michael and Kimberley Tew agreed to use interstate wires in execution of a scheme to take millions from National Air Cargo between July 2018 and July 2020.

The Indictment is incorporated here by reference. It identifies and describes
the victim corporation (Indictment ¶2), the conspirators (Indictment ¶¶1, 8, 10) and
describes their background relationships (Indictment ¶¶ 3-7). It also describes how
the scheme operated (Indictment ¶ 11) and then details the means and methods by
which it was carried out (Indictment ¶¶ 12 - -25), including the use of sham
companies identified as HS CPAs, MCG, 5530JD, PM, GFL, and AMR. It also
describes the use of the corporate entity Sand Hill to receive proceeds of the scheme
(Indictment ¶¶ 4, 16). Summaries of the payments made to each of these entities,

3

compiled by collecting and analyzing the false invoices and corresponding bank records is attached as Exhibits 1002 and 1003. Where applicable, the *James* log identifies how a statement relates to one of the paragraphs of the Indictment.

### III. Michael and Kimberley Tew also agreed with one another to engage in large financial transactions with their ill-gotten loot

Overlapping with the conspiracy to commit fraud was a separate conspiracy between Michael and Kimberley to engage in large financial transactions between and among themselves and with others in order to quickly convert the proceeds of their fraud to their personal use. (Indictment ¶ 32). The Indictment describes the means and methods used by the Tews to accomplish the conspiracy's purpose of spending the proceeds of their fraud. The Tews used multiple bank transfers to move funds around (Indictment ¶ 33.a), made cash withdrawals at bank counters and ATMs (Indictment ¶ 33.b), withdrew money using wires (Indictment ¶ 33.c), transported cash to bitcoin ATMs to convert it into cryptocurrency (Indictment ¶33.c and 33.d), transferred money using bitcoin "wallets" (Indictment ¶¶ 33.c) used fraud proceeds to buy an Audi (Indictment ¶ 33.f), and used proceeds to gamble at a casino in Las Vegas (Indictment ¶ 34). Where applicable, the *James* log identifies how a statement relates to one of the paragraphs of the Indictment.

### IV. Evidence Supporting the Conspiracies

#### A. Michael Tew, Kimberley Tew and Jonathan Yioulos were caught red-handed by the IRS and the FBI while executing the scheme

By July 2020 the FBI and the IRS had gathered substantial evidence of the Tews' fraud scheme. They approached Jonathan Yioulos and he agreed to cooperate.

4

He is expected to provide testimony at trial describing all of the means and methods identified in the Indictment to further the fraud scheme and to authenticate his communications with the Tews in the *James* log. He will also authenticate two lengthy consensually recorded conversations with Michael Tew, who was using the x1312 number. *See, e.g.,* Ex 1 # 374, 375. At the time those conversations occurred, Yioulos was no longer a conspirator. But Michael and Kimberley had each recently asked Yioulos to send them more money. Ex. 1 # 371, 372. And NAC had independently begun looking at transactions in a way that raised concerns among the conspirators. Ex. 1 # 368. Michael's conversations with Yioulos — his efforts to describe, justify, and explain the scheme — were all part of an effort to assuage Yioulos's concerns and keep him involved in the conspiracy. They were thus in furtherance of it and each should be admitted for the reasons designated in the James Log.

## B. Bank records, by themselves, evince the conspiracy

Exhibit 1001 is a list of the accounts controlled by Michael or Kimberley that received proceeds of the Scheme. Exhibits 1004 – 1007 are composite summary charts connected to the specific counts of the Indictment.

The account statements by themselves, show that the payments from NAC were not related to any of the described services but were instead quickly transferred between and among accounts controlled by the Tews, wired to others, withdrawn as cash, or used for personal extravagances. The records also independently corroborate and authenticate the messages in the *James* log by contemporaneously documenting the bank transactions discussed by the Tews. For

5

example, after telling Michael "we need to get an ACH today . . . offer J [Yioulos] 3 BTC [bitcoin]. I have to go to Vegas," Ex. 1, # 185, Yioulos used the automated clearinghouse (ACH) to send $28,000 in scheme proceeds into the Tews' joint NFCU bank account under the false pretense it was for a "consultation: Engine Search and MRO Resource." Kimberley Tew then went to the bank and withdrew $15,000. [NAC_00000560]. Bank cameras captured Kimberley smiling on the way out the door with her bag of loot:



[NAVY_00001779].

Another representative example features Michael. After talking to Kimberley about the status of an expected scheme payment of $33,000 from Yiolous on February 12, 2020, Michael transferred the money from an NFCU account on which he was the sole signatory to the Tews' joint NFCU account. He then withdrew $10,000. Ex. 1, # 324;  [NAVY_00000970-971]. Bank cameras show him in the lobby

6

of the bank that day, happily taking custody of the cribbed cash:



[NAVY_00001767].

    **C.**    **Business records and witness testimony establish the Tews' use of telephone numbers and email addresses associated with the scheme**

*Telephone number 917-685-1312* Records from AT&T show that this number was used by Michael Tew. [ORD_000019224]. Michael also represented to NAC that this was his number while he worked there as a contract employee. Ex. 1 # 1. And Michael provided this number to several banks as his means of contact. [NAVY_00001964].

*Telephone number 917-669-7473*. Records from AT&T show that this number was used by Michael Tew. [ORD_000019224-25]. He also provided this number as a means of contact for some of his bank accounts. [WFB_00000537.]

*Telephone number 917-446-2046*. Records from AT&T show that this number

<div align="center">7</div>

was used by Kimberley Tew. ORD_000019224. Kimberley also represented to NAC that this was her number while she worked there as a contract employee. [*See, e.g.,* NAC_00000731]. And Kimberley provided this number to several banks, businesses and cryptocurrency exchanges as her means of contact.[NAVY_00001960]. She also relayed information about paying for this telephone number to Michael as part of her efforts to spur him to ask Yioulos for more money. Ex 1. # 184.

     *Google Voice number 469-319-0152.* Records from Google identify the user of this Google voice number as Kimberley Tew. [ORD_00015068]. The number was used to contact Yioulos about getting more money from NAC and referred to "Michael" in the third person, indicating that he was not the sender and that it was, instead, Kimberley. Finally, Kimberley had previously talked to Michael about using Google Voice, including to contact Yioulos in particular. Ex. 1 # 160, 338. Even if there remains some doubt as to whether this was Michael or Kimberley, it is not one that precludes admission under the coconspirator exception to the hearsay rule. Communications from this account in furtherance of the conspiracy can be attributed to both Michael and Kimberley through the underlying principles of agency even if the actual declarant remains unknown: it is enough for the court to conclude that it was made by someone — anyone — in furtherance of the conspiracy's objectives. *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005); *United States v. Ayala*, 601 F.3d 256, 268 (4th Cir. 2010) (noting that it isn't even required that statements be attributed to an identified person so long as there is enough evidence to show that a declarant is a conspirator).

<center>8</center>

*Email address kley@me.com.* Kimberley also represented to NAC that this was her email while she worked there as a contract employee. [*See, e.g.,* NAC_00000731; NAC_E_00058418; 60469]. Kimberley provided this number to several banks as her means of contact. [*See, e.g.,* NAVY_00001960]. She also communicated with Michael in furtherance of the conspiracy, identifying this as her email address. Ex. 1 # 160, 184, 270.

*Email address Mtew@sandhillrp.com.* Records from GoDaddy show that Michael paid for and maintained the domain name sandhillrp.com, [ORD_00019823], and he also used the email address mtew@sandhillrp.com [ORD_00019224; ORD_00019225]. He also used it in his correspondence with NAC.

*Email address accounting@globalfuel.co.* Michael created and controlled Global Fuel Logistics after Yioulos told him that he needed to create a separate company if they were going to continue their fraud without being detected. Ex. 1 # 195 (explaining preference not to use Sand Hill and instead advising that "you should set up a legit Corp for the fuel consulting"). He paid for and maintained the domain name globalfuel.co and used the email address "accounting@globalfuel.co." [ORD_00019821].

*Email address associated with MCG.* There is a preponderance of evidence — it is more likely than not — that the Google email address used to send false invoices to Jonathan Yioulos at NAC, which contains MCG's name, was used by Kimberley Tew. Among other things, that account also contained orders for luxury women's clothing and accessories to Kimberley Tew's address (albeit under the

9

fictional name "Amy Tew"). [SW_FIL_00003054, 6094, 6901, 8364, 9825]. The close coordination between the use of this email and communications between the Tews and Yioulos make this likelier still. For example, in March 2020 Michael and Kimberley had a discussion about how Yioulos was not responding to Michael. Ex. 1 # 338. This was followed up by a message from the MCG email address to Yioulos with the accusatory statement "I heard you are not available," Ex. 1 # 339, and Kimberley later suggesting to Michael that they could induce Yioulos to respond by stoking fear about another MCG email, Ex. 1 # 341. As with the Google Voice communication above, communications from this account in furtherance of the conspiracy can be attributed to both Michael and Kimberley through the underlying principles of agency even if the actual declarant remains unknown. *Martinez*, 430 F.3d at 326; *Ayala*, 601 F.3d at 268.

*Email address associated with PM.* It is more likely than not that Michael Tew used this account. Google records show that Michael Tew's x7473 telephone number and sandhillrp email address were used as the "account recovery" contacts. [ORD_00017716]. Michael told Yioulos that invoices would come via QuickBooks and the two the logistics of paying PM in close coordination with Michael's requests for payments through the PM email. Ex. 1 #87 (discussing how invoices would be sent via QuickBooks and coordinating receipt and payment). Regardless, like the MCG email address, it is enough for the court to conclude that it was used in furtherance of the scheme even if there is doubt about precise attribution.

*Email address associated with 5580JD.* Google records show that this

10

account, too, used one of Michael Tew's telephone numbers — the x1312 number — as one of the means to recover the account. [ORD_00015084]. And just as with the MCG and PM email addresses, the close coordination between its use and the communications by and between the Tews and Yioulos, also make it more likely than not that it was used in furtherance of the conspiracy.

> ### D. Text messages preserved in Kimberley Tew's iCloud account chronicle the conspiracy on an almost day-to-day basis

Kimberley Tew used an Apple iCloud account associated with her email address, kley@me.com, to store text messages between her and Michael and between Michael and Yioulos. As the Court is aware from the hearing regarding the defendants' motion to suppress, ECF No. 262, the Government executed a search warrant on that account and has recovered many of those messages. The messages were provided by Apple in a zip file that contained, among other things, Excel files with the messages and those messages were, in turn, screened through a filter to protect any applicable attorney-client privilege held by the defendants. The Government has used Cellebrite software to render that data in a more visually appealing way or, where the software was unable to sort relevant tables, has located them in the original Excel file. These messages are themselves evidence of the conspiracy. *Bourjaily*, 483 U.S. at 180. *See, e.g.,* Ex. 1 # 14, 40, 46, 59, 68, 73, 93, 117, 81, 147, 175, 220, 256, 257, 258, 317, 329, 341. Further authentication and attribution of a message to one defendant or another can be accomplished by looking at all of the circumstantial evidence, including the messages' context, contemporaneous bank records showing transaction being made in one or the other

of the Tews' accounts, witness testimony, and other information set forth in this proffer or in the messages themselves. *Martinez*, 430 F.3d at 326; *Ayala*, 601 F.3d at 268.

### E.    Witness testimony

NAC's owners, as well as other employees, will testify that Michael Tew was fired in September 2018 and that neither he nor Kimberley provided services to NAC after that time. They will also testify that payments made to HS CPAs, MCG, 5530 JD, PM, GFL, and AMR were not authorized and that NAC did not receive any goods or services. H.S. and M.M., the purported principals of HS CPAs and MCG are expected to testify that they did not perform services for NAC.

### F.    Telephone Records

Telephone toll records confirm and corroborate the extensive communications between and among the Tews and Yioulos.

## V.    The Statements in the Government's *James* log were made by the Tews in furtherance of the charged conspiracies

The evidence proffered above shows that Michael and Kimberley (1) agreed to execute a fraud scheme and agreed to engage in financial transactions involving the proceeds of that scheme (i.e., there were conspiracies), (2) Michael and Kimberley were conspirators, and (3) the statements in the attached *James* log furthered the conspiracy. *Stein*, 985 F.3d at 1269.

12

## A.     There were agreements between the Tews to defraud NAC and then to engage in financial transactions with the proceeds

A criminal conspiracy occurs when there is: (1) an agreement between two or more people to break the law; (2) knowledge by those people of the essential objectives of the conspiracy; (3) knowing and voluntary participation in the conspiracy; and (4) interdependence among the conspirators. *United States v. Cornelius*, 696 F.3d 1307, 1317 (10th Cir. 2012). The Government can show an agreement to do something illegal by pointing to the co-conspirators' statements, as well as all of the other evidence described above and below. *Id.*

Evidence of the agreement must be "substantial," but that just means it must be "more than a scintilla," or "evidence that a reasonable mind would accept as adequate to support a conclusion." *United States v. Bucaro*, 801 F.2d 1230, 1232 (10th Cir. 1986). Substantial evidence can be direct or circumstantial and just because the evidence can be susceptible to two inconsistent conclusions does not make it unreasonable to accept one conclusion over another. *United States v. Peterson*, 611 F.2d 1313, 1330 n.1 (10th Cir. 1979); *Bucaro*, 801 F.2d at 1232.

An agreement to commit a crime doesn't need to be formal or explicit, *United States v. Dumas*, 688 F.2d 84, 86 (10th Cir. 1982); it can be based on tacit and mutual understanding. *Rutland*, 705 F.3d at 1250. For this reason, circumstantial evidence can be and often is the only proof of a conspiracy and a conspirator's participation in it. *See, e.g.*, *United States v. Isaac-Sigala*, 448 F.3d 1206, 1210-1211 (10th Cir. 2006). Indeed, to establish the connection of the declarant and the defendant to the conspiracy, a court may make the circumstantial inference that a

13

defendant is a knowing participant in a conspiracy when he acts in furtherance of the conspiracy's objective. *See United States v. Tranakos*, 911 F.2d 1422, 1430 (10th Cir. 1990)

### B. Statements Were Made During the Course of and in Furtherance of the Conspiracy

In determining the third factor—that the statement was made during the course of and in furtherance of the conspiracy—several rules apply. First, the focus is on whether the declarant's intent in making the statement was to advance the conspiracy, not whether the statement actually advanced the conspiracy. *United States v. Perez*, 989 F.2d 1574, 1578 (10th Cir. 1993). To determine this, the Court must examine the nature of the statement and its context. *Id.* at 1579. Second, there is no requirement that the statement be made by one conspirator to another. *United States v. Williamson*, 53 F.3d 1500, 1519 (10th Cir. 1995); *United States v. LeRoy*, 944 F.2d 787, 789 (10th Cir. 1991). Third, a statement may be admissible, even if subject to alternative interpretation, if a reasonable interpretation of the statement is consistent with an intent to promote the conspiracy. *Garlington v. O'Leary*, 879 F.2d 277, 284 (7th Cir. 1989); *see also United States v. Patterson*, 713 F.3d 1237, 1245 (10th Cir. 2013) (interpretation that coded calls were in furtherance of conspiracy was not clearly erroneous).

Examples of statements made in furtherance of a conspiracy include but are not limited to those in the list below, which correspond to the letters designated as "Basis for Admission" in the attached *James* log.

a. Statements that in any way promote the objective(s) of a conspiracy.

14

*Rutland*, 705 F.3d at 1252; including statements that indicate payment or demands for payment to accomplish activities of the conspiracy, *United States v. Townley*, 472 F.3d 1267, 1274 (10th Cir. 2007) (citation omitted).

b. Statements that reveal the existence of a conspiracy. *United States v. Garcia*, 994 F.2d 1499, 1505 (10th Cir. 1993).

c. Statements that are intended to recruit potential coconspirators or otherwise to induce others to assist in carrying out the objectives of the conspiracy. Perez, 989 F.2d at 1578; *United States v. Alcorta*, 853 F.3d 1123, 1137 (10th Cir. 2017).

d. Statements that identify a conspirator or the role of a conspirator. *Rutland*, 705 F.3d at 1252; *Townley*, 472 F.3d at 1273.

e. Statements that explain important events in the conspiracy. *Rutland*, 705 F.3d at 1252; *Townley*, 472 F.3d at 1273.

f. Statements of future intent that set transaction integral to the conspiracy in motion and maintain the flow of information among the co-conspirators. *United States v. Morgan*, 748 F.3d 1024, 1037 n.16 (10th Cir. 2014) (citation omitted).

g. Statements that are designed to advise co-conspirators of the progress of the conspiracy and keep them abreast of activities associated with the conspiracy. *Alcorta*, 853 F.3d at 1137; *Townley*, 472 F.3d at 1273; *Perez*, 989 F.2d at 1578.

h. Statements which are intended to assure the listener of a conspirator's ability to consummate a particular transaction. *United States v. Echeverry*, 759 F.2d 1451, 1457 (9th Cir. 1985).

i. Statements that are designed to gain the trust of other conspirators or potential conspirators, to reassure trustworthiness, or to allay suspicions or fears. *Rutland*, 705 F.3d at 1252.

j. Statements which are intended to control damage to the conspiracy that are made during the course of the conspiracy. *Alcorta*, 853 F.3d at 1136 (affirming admission of coconspirator statement about erasing data on phones prior to arrest and advice to defendant to get rid of his phone).

k. Statements that prompt the listener to respond in a way that

15

facilitates carrying out the activities of the conspiracy. *United States v. Rahme*, 813 F.2d 31, 35 (2d Cir. 1987); *see also Alcorta*, 853 F.3d at 1136 ("Vega coached Adrienne to avoid ruse drug checkpoints…. Those instructions were indisputably in furtherance of drug deliveries.").

l.  Statements that conceal the objective of the conspiracy. *Rutland*, 705 F.3d at 1252-53; *Alcorta*, 853 F.3d at 1139.

m.  Statements to co-conspirators or potential co-conspirators indicating potential investigation, apprehension, or punishment. *Alcorta*, 853 F.3d at 1139; *United States v. Williamson*, 53 F.3d 1500, 1520 (10th Cir. 1995); *United States v. Triplett*, 922 F.2d 1174, 1181 (5th Cir. 1991).

n.  Statements between conspirators regarding the distribution of the proceeds. *United States v. Morgan*, 748 F.3d 1024, 1036-37 (10th Cir. 2014); *United States v. Ammar*, 714 F.2d 238, 253 (3d Cir. 1983) ("The distribution of the proceeds of a conspiracy is one of its central objectives, and statements which are directed to that purpose must be considered to be in furtherance of the conspiracy.").

## C. Statements in furtherance of a conspiracy are, by definition, not privileged

"[C]onversations between husband and wife about crimes in which they conspire or participate or, after the fact, participate in, are not privileged marital communications for the purpose of protection as confidential marital communications. *United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984); *see also United States v. Marashi*, 913 F.2d 724, 730 (9th Cir. 1990) (citing cases from First, Second, Third, Fourth, Fifth, Sixth, Seventh, and Tenth Circuits supporting

16

principle that marital communications privilege does not apply when both spouses are joint participants in a crime).

> COLE FINEGAN
> United States Attorney
>
> By:    */s/ Bryan Fields*
> Bryan Fields
> Assistant United States Attorney
> U.S. Attorney's Office
> 1801 California St. Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Bryan.Fields3@usdoj.gov
> Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

> */s/ Bryan Fields*
> Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023 ECF Nos. 317 and 318.

> */s/ Bryan Fields*
> Bryan Fields

## CERTIFICATE OF SERVICE

I hereby certify that on this 5th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

s/ *Bryan Fields*
Bryan Fields
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov

EXHIBIT 1: GOVERNMENT JAMES LOG

NOTES

- Unless otherwise explicitly stated, references to "Jon," "Jonathan," "J.Y." and "Yioulos" are references to indicted co-conspirator Jonathan Yioulos

- Consistent with concern for the privacy and safety of victims, witnesses, and third-parties who are mentioned during the course of the conspiracy but who have not been charged with any crimes the government has redacted identifying information and, instead, uses initials.  For sham companies and their purported owners, the government has followed the convention in Paragraph 13 of the Indictment.  It has used that same convention when an email address associated with that company would otherwise identify it.  Sometimes, where an individual is mentioned but is only relevant for purposes of showing that the Tews owed that person a debt or debts and were looking to get money from NAC to repay it, the word [redacted] has simply been inserted.

- Bank account information and addresses that are described in full in the underlying communication have also been redacted.  Bank accounts are described using the last four digits of the account number.  Addresses have been removed.

- The "Source" column uses the internal discovery numbers used in the government's productions to defense counsel so that they can be conveniently referenced.  "SW_FIL" means that the item was released to the government only after going through the filter process but was produced to defense counsel by the filter team at the beginning of their representation. Defendants have had access to all of the unfiltered materials since 2021.  Filtered Cellebrite reports and filtered spreadsheets from the apple return were produced to defense counsel on November 13, 2023.  They were then place dinto a new database and re-produced with news Bates numbers on November 30, 2023.

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

**August 2018**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| 1 | 8/7/18 | Michael Tew responded to the email below "THANK YOU"<br><br>[. . . .]<br><br>J.Y. responded to the email below "Ok will do. I'll get the payment out today because I know the due diligence is really picking up. Just send the agreement at some point so we have for our records. No rush.:"<br><br>[. . . .]<br><br>From: Michael Tew<br>To: Jonathan Yioulos<br>Subject: ACH INVOICE<br>Date: Tuesday, August 7, 2018 11:41:30 AM<br>Attachments: [H.S. CPAs] Consulting Invoice 8 7 18.pdf<br>JY<br><br>Expense invoice for the financial consultant attached.<br><br>I can send you the agreement with the consultant if need be. Easier just to send the $ to me and I'll<br>pay them.<br><br>Wire information:<br>ACH: $15,000<br>Michael Tew<br>Guaranty Bank & Trust Company<br>Routing: [x]0966<br>Account: [x]7867<br>_____<br>Michael A Tew<br>Chief Financial Officer<br>National Air Cargo Holdings, Inc.<br>mtew@ctr.nationalairlines.com<br>+1 917.685.1312 | On August 8, 2018 $15,000 is deposited into Guaranty Bank and Trust Account x7867 for services purportedly rendered to [HS CPAs as fraudulently invoiced HSC August 2018 2 (NAC_00000906) as alleged in Count 2 of Indictment.<br><br>H.S. is expected to testify that s/he is not a licensed accountant, never performed any work for NAC, and was not associated with HS CPAs.  H.S. was, however, a college friend of Kimberley Tew's.<br><br>Michael is the sole signatory on the Guaranty account | A, B, D, F, G, K, L | NAC_E_0012971 6<br><br>NAC_E_0014615 4<br><br>NAC_E_0012971 6 |

1

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------| -------|
| 2 | 8/7/18 | **MT1312:** Let me know when have 5 mins to speak<br>**JY1709:** Now is fine<br>**MT1312:** Received?<br>**JY1709:** Yeah call me<br>**JY1709:** As soon as you can. Leaving in a minute<br>**MT1312:** Will resend ASAP. Thank you<br>**MT1312:** Should I email [K.] to pull it?<br>**JY1709:** Working from my computer now.<br>**JY1709:** Send your invoice (with just feign consulting invoice attached for fees). I'll be working for 1.5 hours<br>**MT7473:** WILL DO<br>**MT7473:** You're a good man - not sure why you are doing this for me?<br>**MT7473:** Just need to get out of the sam<br>**JY1709:** All good. You work your ass off. Let's just keep rolling.<br>**JY1709:** Guaranty account?<br>**JY1709:** $15K ach today right?<br>**JY1709:** ACH is our<br>**JY1709:** Out*<br>**MT7473:** Thank you !! Sent you invoice to load into system | "[K.]" is a reference to a NAC employee<br><br>The reference to "received" is a reference to emails regarding fraudulent invoices for HS CPAs<br><br>The "Guaranty account" is a reference to an account ending x7867 on which Michael Tew was the sole signatory. [GUAR_00000034]<br><br>"ACH" is automated clearinghouse. See Indictment ¶12. | A, B, D, F, G, K, L. | SW_FIL_003423 24, Rows 6366, 6367, 6369 – 6383 |
| 3 | 8/8/18 | Michael Tew, using his NAC business email address responded to one the email sent from J.Y. on August 7, 2018:<br><br>Jon —<br><br>This is invoice 2/2. Important as we are signing our engagement with HK investor group today.<br><br>Pls send ACH<br><br>Same as yesterday.<br><br>Thank you<br><br>Michael Tew | On August 8, 2018 $15,000 is deposited into Guaranty Bank and Trust Account x7867 for services purportedly rendered to [HS CPAs as fraudulently invoiced at HSC August 2018 2 (NAC_00000906) as alleged in Count 2 of Indictment<br><br>See above, entry #1, for information about H.S. and H.S.CPAs | A, B, D, F, G, K, L | NAC_E_0012637 4 |

2

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 4 | 8/8/18 | **JY1709:** | I thought the new inv for the consulting was going to be $10K? | On August 8, 2018, $15,000 is deposited into Guaranty Bank and Trust Account [x]7867 for services purportedly rendered to [H.S. CPAs] as fraudulently invoiced at HSC August 2018 2 (NAC_00000906) as alleged in Count 2 of Indictment<br><br>See above, entry #1, for information about H.S. and H.S.CPAs | A, B, D, F, G, K, L | SW_FIL_003423 24, Rows 6402 - 6411 |
| | | **JY1709:** | $25K total | | | |
| | | **MT7473:** | Sorry - $30K.  This one is $15K.  I'm sorry - in a meeting with [redacted[ doing all of our fuel stuff he flew here to meet me. | | | |
| | | **MT7473:** | Call you after. | | | |
| | | **MT7473:** | Thank you!!!!!!!!!!!!!!!!!!! | | | |
| | | **MT7473:** | SORRY to be short.  Getting crushed today. | | | |
| | | **MT7473:** | How was the show? | | | |
| | | **JY1709:** | It was great ???? | | | |
| | | **JY1709:** | Your ACH is out | | | |
| | | **JY1709:** | For the consulting | | | |
| 5 | 8/9/18 | **JY1709:** | Hey, no rush, but when do you think you'll send the BTC back? Just so I have a timeframe | "BTC" is short for bitcoin.<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C, D, F, G, H,  K, L, N | SW_FIL_003423 24, Rows 6246 - 6249 |
| | | **MT7473:** | hecking brb - been phone glued to ear since like 6:30 | | | |
| | | **JY1709:** | All good. No worries | | | |
| | | **MT7473:** | You'll get it I promise<br>Haven't gotten off phone | | | |
| 6 | 8/13/18 | **JY1709:** | Yeah call me. [A.S] on me a bit about AMEX charges FYI o | The references to "Amex" and "King Soopers" are references to efforts by others at NAC to investigate the use of Michael Tew's corporate card to buy gift cards at Denver-area grocery stores. See Complaint, ECF No. 1 at ¶¶ 7, 11. [A.S.] was NAC's Director of | E | SW_FIL_003423 24, Rows 6464, 6467 |
| | | **MT7473:** | Yes RE [A.S].  Call you later we'll discuss how to handle | | | |

3

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | Accounting, who was looking into the legitimacy of the $45,000 of improper charges on Michael Tew's corporate credit card. | | |
| 7 | 8/14/18 | On August 14, 2018 Michael Tew, using his business email address, mtew@ctr.nationalairlines.com sent an email to J.Y.'s business email address with teh subject line "INVOICES: MICHAEL TEW ACH AUGUST 15", writing<br><br>JY<br><br>Please see attached invoices:<br><br>1.  MT August 15 invoices. See new payment plan included. Just a slight modification.<br>2.  Final expense invoice for CPA for financial modeling and due diligence<br><br>Please send ACH today for arrival tomorrow.<br>Thank you | *See* Indictment ¶ ¶11, 13, 19, 20<br>See above, entry #1, for information about H.S. and H.S.CPAs | A, B, D, F, G, H, K, L | NAC_E_0016609 2-NAC_E_0016609 4<br><br>NAC_E_0006044 2-NAC_E_0006044 4 |
| 8 | 8/14/18 | **JY1709:**      Brutal. Any update on crypto? | Message sent to Michael Tew<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C, F, N | SW_FIL_003423 24, Rows 6450 |
| 9 | 8/18/18 | **JY1709:**      Sent the confirm. Will be in a non profit board of directors retreat until 2 today (shoot me haha). Please send BTC back this weekend if possible! Thanks!!!<br>**MT7473:**      You're the man.  It's coming.  I promise.  She's working on it today. | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C, D, F, G, H, K, I, N | |
| 10 | 8/21/18 | **JY1709:**      Hey, any update on this BTC? It's been 2 weeks. | Message sent to Michael Tew | A, B, C, D, I, N | SW_FIL_003423 24, Rows 6673 |

4

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| 11 | 8/22/18 | On August 22, 2018 [C.R.]@gmail.com sent the communication below to J.Y.'s business account:<br><br>Sorry.  There was a formatting error on the invoice previously submitted.  Please use this one here and if you could also send me a confirmation that the wire has been submitted today your assistance would be greatly appreciated.<br><br>J.Y. responded, cc'ing Michael Tew's business account: with an attached payment confirmation, writing "Hello, please see attached for payment confirmation." | The [C.R.]@gmail.com email account is the one associated with 5580, as described in the proffer on page 9. C.R. was represented to be the owner of 5580 JD, which was one of the shame companies used to conceal payments to Michael and Kimberley under false and fraudulent pretenses. *See* Indictment ¶¶ 11, 13, 15, 19, 20, 22<br><br>On August 23, 2018, $15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.22 73211116 (NAC_00000539; NAC_E_00094026) | A, B, D, F, G, H, K, L | NAC_E_00058715-NAC_E_00058716 |

5

**Government's _James_ Log**
**_United States v. Tew_, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| 12 | 8/22/18 | On August 22, 2018 [C.R.]@gmail.com sent the communication below to J.Y.'s business account:<br><br>Could you please send confirmation that the wire was submitted and/or a fed funds reference number?<br><br>J.Y. sent a separate email with this business email account:<br><br>Please see attached for payment confirmation.<br><br>Thank you!<br><br>Jonathan Yioulos, CPA \| Manager of Financial Reporting National Air Cargo Holdings, Inc. | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment.<br><br>On August 23, 2018, $15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.22 73211116 (NAC_00000539; NAC_E_00094026) | A, B, D, F, G, H, K, L | SW_FIL_000000 87<br><br>SW_FIL_000000 57<br><br>NAC_E_0016989 8<br><br>NAC_E_0006399 9-NAC_E_0006400 0 |
| 13 | 8/22/18 | MT1312:  Wire StTus?<br>JY1709:  It's out. Just sent you the confirm<br>MT1312:  Thank you!!<br>       [Omitted]<br><br>MT1312:  What us your btc address<br>JY1709:  114dguVH1TBufs5SEBgTkyfGbx43sKr8Q8<br>MT1312:<br>      https://www.blockchain.com/btc/tx/53d5789dcd318914cc805b1125fd97a445105a99 b3db909e56fef2f31d6cea9b<br>JY1709:  Thank you!<br>JY1709:  Got it!<br>MT1312:  Happy? | On August 23, 2018, $15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.22 73211116 (NAC_00000539)<br><br>_See_ Indictment ¶ 25 | A, B, C, D, F, G, H, I, K, N | SW_FIL_003423 24, Rows 6674-6676; 6685 |
| 14 | 8/23/18 | JY1709:  Hell yes! Thank you!!! And thank Kimberley for me too!<br>MT7473:  That account number for [5530 JD] was wrong.  Guy gave US         the wrong Acct number.  There's only ONE 5 in the account number.<br>      [x]2171 | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the | A, B, D, F, G, H, K | SW_FIL_003423 24, Rows 6686-6696 |

6

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** Yes<br>**MT7473:** Can you resumit<br>**JY1709:** Yes<br>**MT7473:** Not your fault<br>**MT7473:** thans<br>**MT7473:** Guy gave bad wire instructions<br>**MT7473:** Thanks<br>**MT7473:** That wire is out / funds hit, thank you.  Finally<br>**JY1709:** No problem | relevant paragraphs of the indictment.<br><br>On August 23, 2018, $15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.22 73211116 (NAC_00000539) | | |
| 15 | 8/23/18 | From jyioulos to [C.R.]@gmail.com<br>Hello,<br><br>Please see attached for updated payment confirmation.<br><br>Since this is a new account, the bank will call use in approx. 15-30 min to confirm this wire as well. A fed reference number will be generated at that time and you should see the funds weithin the hour.<br><br>Thank you,<br><br>Jon Yioulos<br>716-580-6943 | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment.<br><br>On August 23, 2018, $15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.22 73211116 (NAC_00000539) | A, B, D, F, G, H, K, L | SW_FIL_00000090 |
| 16 | 8/24/18 | On August 24, 2018 J.Y. used his business email address to respond to a question from a NAC employee about the August 23, 2018 wire, writing "see attached for invoice! Thanks," | *See* Indictment ¶¶11, 12 | A, B, D, F, G, H, K, L | NAC_E_00109823; |

7

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|---|
| | | | | | | | NAC_E_00069608-NAC_E_00069609 |
| 17 | 8 | 8/27/18 | JY1709: | Hey, sorry missed these yesterday. Passed out early last night for some reason. Yeah, just let me know how much she needs, I can send you like $5K worth if you want | "BUF" is a reference to Buffalo, New York, where NAC had offices. | A, B, D, F, G, H, K, N | SW_FIL_00342324, Rows 6737-6757 |
| | | | MT7473: | Thanks! Let me check with her this am appreciate buddy | | | |
| | | | | [. . . .] | Substratum is a cryptocurrency | | |
| | | | MT1312: | Pls send 5k to 3KD5RYYteA4Cer34J3S1iyFYsM1skAo16h | *See* Indictment ¶ 25 | | |
| | | | MT1312: | Thank you | | | |
| | | | JY1709: | Ok. Right now I've got some trades going as well, will send shortly | | | |
| | | | MT1312: | Thx | | | |
| | | | MT1312: | Let me know timing? | | | |
| | | | MT1312: | Thx | | | |
| | | | MT1312: | THANK YOU | | | |
| | | | JY1709: | Any timing on when I'll get it back? I know you guys take care of me, just wondering | | | |
| | | | JY1709: | All set | | | |
| | | | JY1709: | Sent her just over .75 BTC | | | |
| | | | MT7473: | Thank you !! | | | |
| | | | JY1709: | Any idea when I'll get it back? Just wondering | | | |
| | | | MT1312: | She said end of week. But let me confirm. | | | |
| | | | JY1709: | Ok sounds good | | | |
| | | | JY1709: | FYI, BUF payroll is tomorrow if you want an ACH that hits tomorrow too | | | |
| | | | MT7473: | Would it be ok to send ACH thurs as well? | | | |
| | | | JY1709: | For? | | | |
| | | | MT7473: | me | | | |
| | | | MT7473: | Instead of today I'm saying | | | |
| | | | JY1709: | We can do either | | | |
| | | | JY1709: | Hope she bought substratum ?? up 12% in the last 2 hours!!! | | | |
| 18 | | 8/30/18 | On August 30, 2018 J.Y. used his business email account to send an email to Michael Tew, at his business email account, attaching two payment confirmations from NAC's | | The records reflected payments to 5530JD | A, B, D, F, G, H, K | NAC_E_00055741- |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | | bank and writing "Michael, See attached for payment confirmations. I have yours and the due diligence. Thank you!" | and Michael Tew's paycheck from NAC<br><br>On August 31, 2018, $15,000 s wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.31 7321117 NAC_00000540 | | NAC_E_0005574 3 |
| 19 | 8/30/18 | JY1709:<br>JY1709:<br>JY1709: | You and Michael decide what you want to do<br>I can't make that decision for you!<br>I'm not worried about that.  I'm just paying you guys to pay the consultants for Hong Kong and other investors.  That's all | Messages sent to Kimberley Tew<br><br>"Consultants for Hong Kong" was the cover story being used to justify payments to the sham vendors. *See* entry 3, above. | A, B, D, F, G, H, K, L | SW_FIL_003381 77 |
| 20 | 8/30/18 | MT7473:<br><br>JY1709:<br><br><br>MT7473:<br>MT7473:<br>JY1709:<br>MT7473:<br>JY1709:<br>MT7473: | Sending you invoice for ACH later today before 4 pls.  Great work this week btw, thanks.  On with the HK guys for the next hour or so<br>No problem. Any update with discussion with [C.A.]. Just don't want this to linger. I can call him too<br><br>[. . . .]<br><br>Make sure you have that Acct right for [5530 JD]<br>All good?<br>Yes sending confirms<br>Thank you<br>Send a [5530JD] inv<br>Right yes will do | On August 31, 2018, $15,000 s wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.31 7321117 NAC_00000540<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and | A, B, D, F, G, H, K | SW_FIL_003423 24, Rows 6768, 6779-6786 |

9

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| | | MT7473: | You sent it before deadline just need the invoice right? | 5530JD and the relevant paragraphs of the indictment. | | |
| | | JY1709: | Just sent you the confirms | | | |
| 21 | 8/31/18 | MT7473: | Confirming you weee able to get [C.R.] wire out? | On August 31, 2018, $15,000 was wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2018.08.31 7321117 NAC_00000540 | A, B, D, F, G, H, K | SW_FIL_003423 24, Rows 6794, 6795 |
| | | JY1709: | Yeah it's already out to him | | | |
| | | | | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | | |

**September 2018**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| 22 | 9/1/18 | MT7473: | Text me your BTC address pls | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, B, D, F, G, H, K, N | SW_FIL_003423 24, Rows 6801-6805 |
| | | MT7473: | Always double / triple check its the correct address | | | |
| | | JY1709: | 114dguVH1TBufs5SEBgTkyfGbx43sKr8Q8 | | | |
| | | JY1709: | Did you guys send it? | | | |
| | | MT7473: | Not yet - she's working on it na di want it handy ready so she can fire off to you | | | |

10

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | *See* Indictment ¶ 25. "She" is a reference to Kimberley Tew | | |
| 23 | 9/7/18 | **JY1709:** Hey, I need another [5530JD] invoice…<br>**JY1709:** For the last amount you had me pay the other day<br>**MT7473:** Will do<br>**JY1709:** We also have to talk payables and what not. Give me a call when you have some time<br>**MT7473:** Yes will do – brb. Been working around the clock Hong Kong and London hours<br>**JY1709:** By the way, not to stress you out, but I'm gonna start getting shit from [A.S]. Since August 2nd, we've sent you $77,500. That's one month. I know [5530 JD] was its own thing, but that's another $45K. Plus we're eating the Amex cost of $45K. That's $167K in one month essentially.<br>**JY1709:** And another $30K to schaife. That's $200K | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment.<br><br>See above, entry 6, for information related to "[A.S]" and the use of a NAC-issued corporate card for personal use by Michael and Kimberley Tew.<br><br>See above 1 for information related to HS CPAs. | A, B, D, E, F, G, H, I, K | SW_FIL_0034 23 24, Rows 6845 - 6851 |
| 24 | 9/7/18 | On September 7, 2018 J.Y. received an email into his business email account with the subject line "Is there an invoice?" from a NAC employee about a payment on August 31, 2018 to [5530 JD].  He responded "Yes. Will send it over soon." | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, B, D, F, G, H, K, L. | NAC_E_0006183 8 |
| 25 | 9/7/18 | **JY1709:** Hey, I need another [5530 JD] invoice...<br>**JY1709:** For the last amount you had me pay the other day<br>**MT7473:** Will do<br>**JY1709:** We also have to talk payables and what not. Give me a call when you have some time<br>**MT7473:** Yes will do - brb.  Been working around the clock Hong Kong and London hours<br>**JY1709:** By the way, not to stress you out, but I'm gonna start getting shit from [A.S]. Since August 2nd, we've sent you $77,500. That's one month. | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, B, D, E, F, G, H, K, L | SW_FIL_0034 23 24 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | I know [5530 JD] was its own thing, but that's another $45K. Plus we're eating the Amex cost of $45K.<br>That's $167K in one month essentially. | See above, entry 1, for information about H.S. and HS CPAs<br><br>See above 6 for information related to the use of a NAC-issued corporate card for personal use by Michael and Kimberley Tew. | | |
| | | **JY1709:** | And another $30K to [HS CPAs]. That's $200K | | | |
| | | **MT7473:** | Ok getting caught up | | | |
| 26 | 9/7/18 | On September 7, 2018 J.Y. used his business email account to forward to a NAC employee that been sent to him on August 7, 2018 from Michael Tew's business email account.  That email included an invoice for HS CPAs. | | *See* Indictment ¶ 11, 12, 13 | A, B, D, F, G, H, K, L | NAC_E_0007112 5-NAC_E_0007112 6 |
| 27 | 9/7/18 | On September 7, 2018 J.Y. used his business email account t forward to a NAC employee that been sent to him on August 7, 2018 from Michael Tew's business email account.  That email included an invoice for HS CPAs | | *See* Indictment ¶ 11, 12, 13; see above, entry 3 | A, B, D, F, G, H, K, L | NAC_E_0007112 8-NAC_E_0007112 9 |
| 28 | 9/10/18 | **JY1709:** | Yeah I need Michael to send me 2 invoices for [5530 JD]. (One for last time) | Messages to Kimberley Tew<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment.<br><br>See entry 32 below, reflecting Jonathan Yioulos's confirmation of decision to send funds by wire rather than through automated clearinghouse (ACH) as | A, B, D, F, G, H, K | SW_FIL_003381 42-SW_FIL_003381 44 |
| | | **JY1709:** | Sure. I just need Michael to send me an email asking me to pay? It'll help with [A.S] asking questions | | | |
| | | **JY1709:** | Yeah that would be great. If I have an invoice, a W-9, Michael copied on the email...it'd be easy | | | |
| | | | [. . . .] | | | |
| | | **JY1709:** | Just sent Michael an email. It's super important I get those things | | | |
| | | **JY1709:** | [HS CPAs] need an W9 | | | |
| | | | [. . . .] | | | |
| | | **JY1709:** | Just give me some kind of info for [HS CPAs]. Need address, phone etc. | | | |

12

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** 10 min . . . . this literally has to be the last one for this consultant. Cause the other ones were supposed to be the last as well. Can't do anymore for this one. <br> **JY1709:** hey, all set <br> **JY1709:** It's an ACH. Funds hit tomorrow. <br> **JY1709:** It was the only thing I could do. You have to trust me on that. <br> **JY1709:** Too many questions otherwise. I'm sorry. <br><br> [. . . .] <br><br> **JY1709:** Maybe. It just draws a lot more attention. Especially because I'll have to recall the ACH <br> **JY1709:** Ok. I'll try to get it out around 1:30 my time. <br><br> [. . . .] <br><br> **JY1709:** Wire it ready to go but waiting on [A.S.] approval. <br> **JY1709:** Wire is out! | directed by Kimberley Tew. | | |
| 29 | 9/10/18 | From [C.R.]@gmail.com <br> Hello. <br><br> Here is the final invoice and per your request a copy of the second invoice and W-9.  If you could confirm that this last payment has been submitted I would appreciate it. <br><br> Please let me know if you have any questions <br><br> Best Regards, <br><br> CR <br><br> J.Y. responded, cc'ing Michael Tew's business email account, with an attached payment confirmation, writing "Hello, please see attached for payment confirmation. Thank you! | The attachment contained fraudulent invoices for [5530 JD] <br><br> See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, B, D, F, G, H, K, L | SW_FIL_00000060 <br><br> NAC_E_00146689-NAC_E_00146692 <br><br> NAC_E_00061910-NAC_E_00061911 |
| 30 | 9/10/18 | In an email to NAC employees on September 10, 2018 related to invoices from H.S. CPAs J.Y. wrote "Getting these things from Michael today. Will have by end of day!" | See above, entry 11, for information about C.R., CR@gmail.com, and | A, B, D, F, G, H, K, L | NAC_E_00061906; NAC_E_00148111 |

13

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | J.Y. then forwarded the above email to Michael Tew, who was using his business email address, writing "Hi Michael, Do you have the items highlighted in yellow for[HS CPAs]? Thanks," | 5530JD and the relevant paragraphs of the indictment.<br><br>See above, entry 1, for information about H.S. and HS CPAs | | 7-NAC_E_0014812 1<br><br>NAC_E_0006193 2 |
| 31 | 9/10/18 | On September 10, 2018 J.Y. forwarded the email from [C.R.]@gmail.com to a NAC employee, writing "see attached fro [5530 JD] invoices and W9!" In a later email responding to a question from that employee J.Y. wrote "Hmm. I didn't even look to tell you the truth. Just leave it as [5530 JD] for now, but I'll see if we need to change it. We're probably good to leave it honestly." | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, B, D, F, G, H, K, L | NAC_E_0007188 9; NAC_E_0014599 4-NAC_E_0014599 7 |
| 32 | 9/10/18 | On September 10, 2018, J.Y. emailed a Signature Bank employee cc'ing other Signature Bank employees attaching a PDF related to cancelling the previously requested $15,000 ACH payment to[5530 JD], writing "hi everyone, Any chance we can cancel this ACH transaction? They requested we send the funds via wire transfer instead . . ." | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment.<br><br>NAC used Signature Bank to conduct its business | A, B, D, F, G, H, K, L | NAC_E_0007189 2-NAC_E_0007189 3 |
| 33 | 9/12/18 | JY1709: So why is this [C.F.] guy calling here now??<br>MT7473: No idea - on a call ring you shortly<br>MT7473: Did he talk to anyone?<br>JY1709: He talked to [B.].<br>MT7473: [S.]?<br>JY1709: Yes<br>MT7473: What did he say do you know?<br>JY1709: He said that you scammed him out of $7500<br>MT7473: Ok yeah...that will hold a lot of water<br>MT7473: Total bullshit<br>MT7473: But thats insane<br>JY1709: And bob was just like he's not an employee here just a consultant<br>MT7473: I don't even know the guy | [L.A.] will testify that in 2018 she began receiving telephone calls from someone identifying themselves as [C.F.] [C.F.] claimed that Michael Tew owed him money. When confronted, Michael blamed his wife and said she had used the corporate credit without authority to pay off a | A, B, D, F, G, H, I, K | SW_FIL_003423 24 |

14

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | MT7473: | Did bob make a big deal out of it? | debt.  Michael Tew described this event in the consensually recorded telephone call on July 7, 2020 described below. [B] and [S] are references to a NAC employee named, B.S., who received a call from C.F.<br><br>See above 6 for information related to "[A.S]" and the use of a NAC-issued corporate card for personal use by Michael and Kimberley Tew. | | |
| | | MT7473: | On a call ring you after | | | |
| | | JY1709: | FYI. [A.S] now asking question s about this [C.F.] guy. | | | |
| | | | She's ready to tell [C.A.] he called | | | |
| | | JY1709: | Getting bad | | | |
| | | MT7473: | Ok one sec | | | |
| | | MT7473: | Can you take care of It with [A.S]?  You need to pull her aside and say look whatever it is I'm sure there is a perfectly good explanation but right now we have our AUDITORS here and we need to stay focused | | | |
| | | MT7473: | That's how to handle it | | | |
| | | MT7473: | Just say you will discuss with me directly but keep her head in the game' | | | |
| | | MT7473: | And that I'll be sure to handle it and talk to her by end of day | | | |
| | | MT7473: | But for now - we need to all stay focused on our jobs | | | |
| | | MT7473: | Thoughts? | | | |
| | | JY1709: | She's on a fucking mission. Between that, the AMEX, etc. she's relentless. Listen, let her tell [C.A.]. Get an explanation ready. [C.A.] won't respond anyway.<br>Basically say it's a disgruntled person you or Kimberley works with in a different business. I'm not going to lie to you, he already thinks Kimberley is the one who had the Amex controversy. | | | |
| 34 | 9/12/18 | JY1709: | Ok. Thank you. Honestly I really like you and Michael, so I'll help you out however I can. I just can't risk my job here ya know? I've already risked a lot, but it's only cause I know how much work he does and he's always vouched for me. | Message to Kimberley Tew | A, B, D, E, F, G, H, I, K | SW_FIL_003381 22 |
| 35 | 9/13/18 | JY1709: | Relax. Nobody is turning on you | Message sent to Kimberley Tew | A, B, D, E, F, G, H, I, K, L | SW_FIL_003381 13-<br>SW_FIL_003381 14 |
| | | JY1709: | You're real not! Just deep breath. I talked to Michael, we have to delete all text records...we'll figure this all out | | | |
| | | JY1709: | I know. | | | |
| | | JY1709: | Ok, I'm deleting everything...we need to. Worst case scenario they take our phones. I have to delete these records. For now. | | | |

15

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | I suggest you do the same | | | |
| 36 | 9/13/18 | JY1709: | [C.F.] CALLED AGAIN | See above 6 for information related to "[A.S]" and the use of a NAC-issued corporate card for personal use by Michael and Kimberley Tew.

See above, entry 33, for information about C.F.

"[K.E.]" is a reference to a NAC human resources employee

[C.A.] is a reference to one of NAC's owners | A, B, D, F, G, H, I, K, L | SW_FIL_003423 24 |
| | | MT7473: | Handling | | | |
| | | MT7473: | Just stay focused | | | |
| | | JY1709: | He talked to [K.E.], told her you represented yourself as a National Air Cargo employee and he wants his money. He wants his $7500. He threatened to drag National through the mud. He was asking for [K.E.]'s name and shit. She came into [A.S]'s office nearly in tears kind of freaked out. I was in [A.S]'s office. [A.S] immediately called [C.A.] and left him a message telling him she had something urgent to talk about | | | |
| | | MT7473: | Important you and I handle the airline payables asap. He's down There today. | | | |
| | | MT7473: | I'll take care of it.  He's still sleeping | | | |
| | | MT7473: | He has his money. I'm going to get him his last bit here and make him go away | | | |
| | | JY1709: | Well I've heard it's taken care of numerous times. I'm sorry if I'm skeptical here | | | |
| | | JY1709: | Anddd he called again. This time talked to bob cause [K.E.] was in with myself and [A.S]. | | | |
| | | MT7473: | What? | | | |
| | | JY1709: | [C.F.] called again. He talked to bob this time. Now [A.S] has left a voicemail for [C.A.] and a text | | | |
| | | JY1709: | This guy has been calling [C.A.] and [L.A.] too | | | |
| | | MT7473: | On with [L.A.] now | | | |
| | | JY1709: | Ok | | | |
| | | JY1709: | Don't forget delete texts from both phones. I'm doing that now. It needs to happen | | | |
| | | JY1709: | What's going on | | | |
| 37 | 9/18/18 | JY1709: | Yeah I'm not staying for long. Without Michael this job is going to be impossible | Messages to Kimberley Tew

See above, entry 33, for information about C.F. | A, B, D, E, F, G, H, I, K | SW_FIL_003120 80

SW_FIL_003120 82- |
| | | JY1709: | I just tried calling him...yeah but at what point is salary and the bullshit not worth it? | | | |
| | | JY1709: | You say exactly why you didn't pay it. You were being blackmailed and why would you pay something when you can't afford it. | | | |

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | Well why would you pay something when being blackmailed. ThT doesn't make sense | $15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudently documented in 5JDL 2019.09.10 7321120 (NAC_00000542) Messages to Kimberley Tew<br><br>$15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudently documented in 5JDL 2019.09.10 7321120 (NAC_00000542) | | SW_FIL_0031209<br>2<br><br>SW_FIL_0033809<br>99-<br>SW_FIL_0033810<br>9 |
| | | JY1709: | Just hear me out...it makes no sense to pay money back when Being blackmailed | | | |
| | | JY1709: | Can we talk tomorrow? | | | |
| | | JY1709: | Be easier for me anyway... | | | |
| | | JY1709: | I don't know what to do or to tell you. I really don't. I feel so fucking bad. You guys are getting fucked over by this scumbag [C.F.] | | | |
| | | JY1709: | You guys were being blackmailed and you'd do anything to keep yourselves safe. That's all there is to it | | | |
| | | JY1709: | Super Fucked | | | |
| | | JY1709: | Let's talk tomorrow... | | | |
| | | JY1709: | It is 1000% fraud | | | |
| | | JY1709: | No no no. You have legit proof this [C.F.] guy blackmailed you tho | | | |
| | | JY1709: | I'll talk to Michael in AM | | | |
| | | JY1709: | We will!!! I promise | | | |
| | | JY1709: | You won't | | | |
| | | JY1709: | Hi | | | |
| | | JY1709: | you're joking right | | | |
| | | JY1709: | I can't text | | | |
| | | JY1709: | By Who?! | | | |
| | | JY1709: | I already told Michael I'm calling at noon. I just can't text right now cause I'm swamped | | | |
| 38 | 9/18/18 | On September 18, 2020 the following series of emails were exchanged between [C.R.]@gmail.com and J.Y., who was using his business email address:<br><br>[C.R.]@gmail.com to J.Y.<br><br>    Please the see the attached invoice. I would really appreciate it if you could please confirm when this is processed.<br><br>From J.Y. to [C.R.]@gmail.com:<br><br>    Hi [C.R.],<br><br>    I just wanted to inform you that Michael is no longer with National as you may or | | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment.<br><br>$15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudently | A, B, D, F, G, H, K, L | SW_FIL_0000000<br>31<br><br>SW_FIL_0000000<br>38<br><br>SW_FIL_0000000<br>70<br><br>NAC_E_0011789<br>3-<br>NAC_E_0011789<br>4 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | may not know. It's very unfortunate, but I will make sure this invoice gets taken care of. <br><br> Also, do you happen to have a copy of the consulting agreement? It would just be helpful to have that on record. As I recall, Michael did say that you did work through September, so this would be the last invoice. <br><br> Thank you! <br><br> Jonathan Yioulos, CPA \| Manager of Financial Reporting <br> National Air Cargo Holdings, Inc. <br> 350 Windward Drive \| Orchard Park, NY 14127 <br><br> From J.Y. to [C.R.]@gmail.com <br><br> Hello, <br><br> Please see attached for confirmation. <br><br> Thank you, <br><br> Jon Yioulos <br> 716-580-6943 | documented in 5JDL 2019.09.10 7321120 (NAC_00000542) | | NAC_E_00071817-NAC_E_00071818 |
| 39 | 9/18/18 | **MT1312:** Any news? <br> **JY1709:** I don't know what I can possibly do. <br> It's way too risky <br> **MT1312:** Even to [5530 JD]? <br> **JY1709:** Yes. I can't pay invoices from HK investing without them coming from either you or from [C.R.]. I literally don't know what to do <br> **MT1312:** Ok. So they're watching the invoices <br> **MT1312:** I'm screwed bro. <br> **MT1312:** If this is the last one (obv) you think they will notice? <br> **JY1709:** Hey, got an email from [C.R.] (HK consulting). Going to email tell him/her you're no longer employed with national, but it looks like we have one more invoice to pay. Is that fine?. Assuming you have a personal relationship, can you get the consulting agreement too just Incase I need it. Really appreciate it | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. <br><br> "Hong Kong Consultants" was the cover story being used to justify the payments to the places Michael Tew directed. *See* entry 3, above. | A, B, D, F, G, H, I, J, K, L | SW_FIL_00342324 |

18

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** Don't forget to get the consulting agreement<br>**MT7473:** Won't<br>**MT7473:** Working on it<br>**MT7473:** Finding it<br>**JY1709:** Thanks! | [C.A.] is a reference to an owner of NAC<br><br>$15,000 is wired from National Air Cargo into JP Morgan Chase [x]2171 for purported payment to [5530 JD] LLC as fraudulently documented in 5JDL 2019.09.10 7321120 (NAC_00000542) | | |
| 40 | 9/28/18 | **MT1312:** Can you send anything before wire cutoff?<br>**JY1709:** If I can do it, it'll have to be an ACH. Which won't hit til Monday<br>**MT1312:** Separately do you have a coinbase account<br>**MT1312:** The goal is to get you btc as well<br>**JY1709:** Yes I do. But I've been using binance as well to trade.<br>**MT1312:** Do you have an instant buy limit on coinbase<br>**JY1709:** I think like $25K with a bank<br>**MT1312:** If you have a debit or credit card added you will see a instant buy limit<br>**MT1312:** Trust me. We are going to get you btc.<br>**MT1312:** Sorry. Last time no issues with a wire. Is it possible to try? We are running out of solutions here and Kimberley is flipping out.<br>**JY1709:** I don't think I can get a wire out. Just not possible<br>**JY1709:** I told [A.S] on the last one that it was the last time for [5530 JD] cause she was asking about it<br>**MT1312:** Kimberley asked if you have a way to purchase btc today.<br>**JY1709:** Yes through coinbase<br>**MT1312:** I don't know the mechanics. She's asking what the max instant purchase is.<br>**MT1312:** We can send you the btc on Monday<br>**JY1709:** With a card $11,250 it looks like<br>**MT1312:** Instantly?<br>**JY1709:**<br>**MT1312:** If you purchase any of the top 3 would you receive btc right away | "Coinbase" is a reference to a publicly traded cryptocurrency exchange platform<br><br>Binance is a reference to a publicly traded cryptocurrency exchange platform<br><br>"[A.S]" is a reference to NAC's Director of Accounting.<br><br>"[E.G.]" and "[R.H.]" are references to lawyers who performed work for NAC<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and | A, B, C, D, E, F, G, H, I K, L, N | SW_FIL_003423 24 |

19

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** This is with a CC<br>**JY1709:** sorry that's with a bank account<br>[. . . .]<br>**JY1709:**<br>**JY1709:** Idk don't worry about it right now<br>**MT1312:** Can you buy that and we'll pay you back Monday with btc<br>**JY1709:** No. I can't. My wife is a psycho. You have no idea<br>**MT1312:** What about debit card ? Same?<br>**JY1709:** Same. She has access to essentially all my funds. If she knew I sent BTC to you guys, she'd probably cut my balls off<br>**MT1312:** Could you tell [A.S] that [5530 JD] is helping [E.G.] and now there's no work?<br>**MT1312:** Or how much btc do you have right now?<br>**MT1312:** Just need yo get to Monday<br>**JY1709:** I sent you all the BTC I had!<br>**MT1312:** Understood<br>Would it work if [5530 JD] was helping [E.G.]? She doesn't talk to [E.G.].<br>**MT1312:** [5530 JD] will send the consulting agmt to you from his email if we can make this all work<br>**JY1709:** Look I need a consulting agreement.<br>So far [5530 JD] has been paid $60K.<br>What kind of fucking consultants charge that much. We pay [R.H.] $10K a month and he's an attorney. Siena lending we ended up paying $60K for getting receivables financing going. We can't really take [5530 JD] further than this honestly<br>**MT1312:** You'll have an agmt today can you get the wire out. If this is last one for [5530 JD] we will figure out something else later.  Agmt coming today.<br>**MT1312:** You'll have agmt today<br>**JY1709:** That's fine. Just get me the agreement today. Need it. Signed by you and [5530 JD] at some point earlier in the year.<br>Thanks.<br>**MT1312:** You will have agmt today I promise you have my word word word word word<br>Can you get wire out sooner than later or else it's stuck in [5530 JD] Over weekend Know what I mean<br>**JY1709:** I'm putting all of our wire payments in Now. Will have out by 2:30ish. Our wire cutoff is 5:30 here anyway. It's instant since we've used [5530 JD] | 5530JD and the relevant paragraphs of the indictment.<br><br>*See* Indictment ¶ 25 | | |

20

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | before<br>**MT1312:** Understood<br>**MT1312:** Can you kindly let me know when it is posted<br>**M.Tew:** Getting agmt for you now<br>**JY1709:** Putting in like 15 wires right now. Will go SOON<br>**JY1709:** Done<br>**MT1312:** Calling you after hours<br>**JY1709:** Ok | | | |
| 41 | 9/28/18 | Email from Kimberley Tew, using [MCG]@gmail.com, to J.Y. business email with attached FW9 and Invoice | MCG. was a company incorporated by MM that did not perform any work for NAC. Instead, it was used by Michael Tew, Kimberley Tew, and Jonathan Yioulos as a vehicle to take money from NAC under false and fraudulent pretenses. *See* Indictment ¶¶11, 12, 13, 15, 19, 20, 22.<br><br>The email address "[MCG]@gmail.com" was created on October 12, 2018 and, as set forth in the proffer, was used by Michael Tew. | A, K, L | NAC_E_0005459 9 |
| 42 | 9/28/19 | From [C.R.]@gmail.com to Jyiolous:  Attached is the latest consulting invoice.  Please send me confirmation when funds are released.  Thank you | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, F, K, L | SW_FIL_003120 60<br><br>NAC_E_0015077 0-NAC_E_0015077 1 |

21

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 43 | 9/28/19 | On September 28, 2019 J.Y. used his business email account to send to a NAC employee an invoice for [5530 JD] | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A,F, K, L | NAC_E_0006069 6- NAC_E_0006069 8 |

**October 2018**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 44 | 10/1/18 | J.Y. sent an email to a NAC employee with the subject line "[5530 JD]" and an attached fraudulent invoice for [5530 JD] Consulting | | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the indictment. | A, F, K, L | NAC_E_0007113 4- NAC_E_0007113 5 |
| 45 | 10/9/18 | JY1709: | Still need agreement | Message sent to Michael Tew "Agreement" here is a reference to a fraudulently produced agreement supporting the pretense that [5530 JD] had actually performed work for NAC | A, B, C, F, G, K, L | SW_FIL_003423 24 |
| 46 | 10/25/18 | JY1709: JY1709: JY1709: | I get it, but that's a lot of cash just to send out for "consulting." You guys don't understand that [A.S] reviews every single invoice that goes out We've started printing all invoices and she's reviewing each one. I may have an alternative solution, but you'll have to bear with me Listen, if he can wait until tomorrow to get the funds, we can do it, but it'll have to be tomorrow. Plus I'll need a legit consulting agreement of some | Messages to Kimberley Tew On October 26, 2018, $30,000 is sent via ACH into Regions | A, B, E, F, G, H, I, K, L | SW_FIL_003380 70- SW_FIL_003380 76 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | sort just for the file. I'm trying to help you but calling me today and saying we need $30K get it out today doesn't work<br>**JY1709:** No I really can't.<br>**JY1709:** First thing like super early<br>**JY1709:** You just have to trust me<br>**JY1709:** Like the funds will be there at 8:30<br>**JY1709:** It has to be ACH. It won't take 2 days<br>**JY1709:** I have to send it ach today so it'll hit tomorrow morning<br>**JY1709:** It won't be delayed<br>**JY1709:** It used to. I talked to our rep at the bank and he said as long as I confirm new beneficiaries, it's like a regular ACH.<br>**JY1709:** Kimberley, I'm trying to help you guys out. You know this. I'm doing the best I can here<br>**JY1709:** You guys will be fine. It'll go. Just please please please get me the agreement for [5530 JD] and an abridged agreement for [MM/MCG]. Anything I can just throw in my file Incase<br>**JY1709:** It will don't worry<br>**JY1709:** Yes, I'll send out before 4PM Eastern time. I'll send out with the rest of my payments today. Please don't worry. It'll go<br>**JY1709:** As long as it's done prior to 4 it's fine | Bank Account [x]4514 for services purportedly rendered to MCG for sham invoice MCG 2018.10.12 (NAC_00000545), as alleged in Count 3 of the Indictment<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | | |
| 47 | 10/25/18 | Email from Kimberley Tew, using [MCG]@gmail.com, to J.Y. business email with an attached invoice and a W9.<br><br>J.Y. responded:<br><br>Hello,<br>See attached for payment confirmation.<br><br>Thank you for your assistance.<br><br>Jon Yioulos<br>716-580-6943 | On October 26, 2018, $30,000 is sent via ACH into Regions Bank Account X4514 for services purportedly rendered to [MCG]. for sham invoice MCG 2018.10.12 (NAC_00000545), as alleged in Count 3 of the Indictment<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and | A, K, L | SW_FIL_00002197<br><br>SW_FIL_00002462<br><br>SW_FIL_00002613<br><br>NAC_00000545;<br><br>NAC_E_00054777-<br>NAC_E_00054778 |

Government's *James* Log
United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
|  |  |  | the relevant paragraphs of the Indictment. |  |  |
| 48 | 10/25/18 | **MT7473:** You're in the heat of the financing. As long as tied to that nobody will notice<br>**MT7473:** By dec the financing will either be done (or not)<br>**MT7473:** If you want or I can I can help you with anything<br>**MT7473:** I don't have A job yet man<br>**MT7473:** I never did anything wrong I only did my job<br>**MT7473:** 20 hours a day<br>**MT7473:** We both know that<br>**JY1709:** I know that. That's never been an issue with me<br>**MT7473:** I need you as my friend right now<br>**MT7473:** After today you'l never hear from me about any of this ever again. We're all just going to move on. You have my word.<br>**JY1709:** On with Hong Kong. Been buried since I walked in. We'll talk<br>**MT7473:** Got it - well that's a good thing! I remember those days…say hi for me. :)<br>**JY1709:** Haha will do<br>**MT7473:** Wasn't a joke ?? ... say hi for me<br>**MT7473:** Any way to send funds within the hour?<br>**JY1709:** I have to figure out how first. [5530 JD] isn't gonna work<br>**MT1312:** No - see the invoice. [MM/MCG]<br>**MT1312:** There's HK plus there's the couple other deals in play...<br>**JY1709:** I don't have an invoice<br>**JY1709:** Honestly tho. I need the consulting agreement for [5530 JD] and the btc too. I'm     trying to help you out here but you gotta help me as well!<br>**MT1312:** Make sure you use the ach routing not the wire [x]4668<br>**JY1709:** Yup<br>**MT1312:** Thank you Jon<br>**MT1312:** Catch up later after 5...I do have some of those freight drivers if you want me to help<br>**JY1709:** FYI doing payments now<br>**MT1312:** Ok thank you<br>**MT1312:** You sure it's one day right<br>**JY1709:** Yes<br>**JY1709:** Done | On October 26, 2018, $30,000 is sent via ACH into Regions Bank Account X4514 for services purportedly rendered to [MCG]. for sham invoice MCG 2018.10.12 (NAC_00000545), as alleged in Count 3 of the Indictment<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>The reference to MM/MCG here was misspelled.<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, B, C, D, E, F, G, H, I K, L | SW_FIL_003423 24 |

24

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** THANK YOU!!!!!!!! <br> **JY1709:** Please please please get me an agreement and then whatever BTC you can. Once that's out of the way we're in the clear. <br> **MT1312:** Yes I owe it to you | | | |
| 49 | 10/30/18 | Email from Kimberley Tew, using [MCG]@gmail.com, to J.Y. business email: <br><br> Jon, <br><br> I've attached the invoice as requested. <br><br> Best regards, <br> [M.M.] | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. <br><br> $10,000 is wired from National Air Cargo to Regions Bank Account [x]4514 for services purportedly rendered by [MCG]. as documented in fraudulent invoice MCG 2018.10.30 (NAC_00000546), as alleged in Count 4 of the Indictment | A, K, L | SW_FIL_0009713 <br><br> NAC_E_00128664 |
| 50 | 10/30/18 | **JY1709:** This is a joke right? <br> **MT7473:** This is not a joke <br> My life is not a joke <br> But I have become a joke and things are out of my control because other people make choices that fuck me <br> **MT7473:** Did you block Kimberley ? <br> **JY1709:** No <br> **MT7473:** You don't get it 10k saves my life right now - none of this should have ever happened <br> **JY1709:** I can't do it. Literally you guys just keep asking me for fucking money. It's become absolutely ridiculous <br> **JY1709:** Like it's just wire after wire after wire. I know you didn't get a severance and yes it's bullshit. But it becomes too fucking risky for me to do this shit. | "[P.]" is a reference to an employee at Signature Bank, which was NAC's business bank <br><br> $10,000 is wired from National Air Cargo to Regions Bank Account [x]4514 for services purportedly rendered by [MCG]. as documented in fraudulent invoice | A, B, C, D, E, F, G, H, I K, L | SW_FIL_00342324 |

25

<div align="center">

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

</div>

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | I literally can't do it. I have to say no at some point. I'm sorry. | MCG 2018.10.30 (NAC_00000546), as alleged in Count 4 of the Indictment<br><br>See above, entry 33, for more information about C.F.<br><br>See above, entry 49, for contextual request for money from MCG email account | | |
| | | MT7473: | Saying no is what started this. You're in charge. Don't put this on us. | | | |
| | | MT7473: | I'm not doing this | | | |
| | | MT7473: | I'm not lying another minute. | | | |
| | | MT7473: | This was never my idea and I can't look at these texts and not think it makes me look guilty as shit | | | |
| | | JY1709: | Haha ok. Look, I've never done anything but try to help you guys out of a jam. I've tried to help you at every corner. Because of that, I'm guilty of this shit too, which is fucking ridiculous because I'm the one taking all of the risk and for what!?? | | | |
| | | MT7473: | Sorry I lost you? | | | |
| | | JY1709: | Don't you ever threaten me or my wife again. | | | |
| | | JY1709: | Like it's $10k. Figure it the fuck out | | | |
| | | MT7473: | Hey I never threatened you or your wife.  Never. | | | |
| | | MT7473: | We already gave them 10k | | | |
| | | MT7473: | To make sure they don't | | | |
| | | MT7473: | Not joking | | | |
| | | MT7473: | To be clear.  I never ever threatened you.  I'm just communicating. | | | |
| | | JY1709: | This is fucking unreal | | | |
| | | MT7473:<br>felt | When Kimberley told me [C.F.] would call [L.A.] I didn't believe it and I the same way | | | |
| | | MT7473: | I need to know can you make that wire happen today. | | | |
| | | MT7473: | If I go back to them about a story about an ach it could just make it worse | | | |
| | | MT7473: | If you don't think you can send a wire today.  Don't send anything.  There's nothing I can do at that point. | | | |
| | | MT7473: | Just send it pls pls pls | | | |
| | | JY1709: | I am | | | |
| | | JY1709: | On with [P.]. Wire has been confirmed | | | |
| | | JY1709: | Getting reference number | | | |
| | | MT1312: | Ok thx | | | |
| | | MT1312: | Sorry just getting done once and for all | | | |
| | | MT1312: | Going to have them pull it on other end | | | |
| | | JY1709: | 😊 | | | |
| | | JY1709: | Bottom number | | | |
| | | MT1312: | Thank you | | | |

<div align="center">

26

</div>

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | Call me tonight dog walk | | | |
| | | JY1709: | Ok. | | | |
| 51 | 10/30/18 | JY1709: | Get the fuck out of here | Messages sent to Kimberley Tew | A, B, D, F, G, H, I K | SW_FIL_003380 51- SW_FIL_003380 66 |
| | | JY1709: | No | | | |
| | | JY1709: | I can't keep sending money. That was supposed to be the last one. So was the one before that | $10,000 is wired from National Air Cargo to Regions Bank Account [x]4514 for services purportedly rendered by [MCG]. as documented in fraudulent invoice MCG 2018.10.30 (NAC_00000546), as alleged in Count 4 of the Indictment | | |
| | | JY1709: | And the one before that | | | |
| | | JY1709: | Ok | | | |
| | | JY1709: | I can't send anything else. I can't. I'm sorry | | | |
| | | JY1709: | I'm done | | | |
| | | JY1709: | Hahahahaha convenient???? | | | |
| | | JY1709: | Omg | | | |
| | | JY1709: | Stop | | | |
| | | JY1709: | ? | | | |
| | | JY1709: | I'm not doing anything | | | |
| | | JY1709: | You know I dind't mean it like that | | | |
| | | JY1709: | What am I going to Tell the lawyers??? | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. See entry 49 above, referencing email from MCG. | | |
| | | JY1709: | Talk to Michael. I literally just talked to him | | | |
| | | JY1709: | And what happens when they want more? | | | |
| | | JY1709: | So you're saying they're going to want more | | | |
| | | JY1709: | am I really getting the blame here? | | | |
| | | JY1709: | Stop it. Like what am i supposed to do right now????? | | | |
| | | JY1709: | OMG | | | |
| | | JY1709: | PLEASE | | | |
| | | JY1709: | I NEVER DID | | | |
| | | JY1709: | ARE YOU KIDDING ME | | | |
| | | JY1709: | Of what? | | | |
| | | JY1709: | Look I'm sorry. Obviously I don't know what you're doing on the backend to help me and my wife | | | |
| | | JY1709: | I don't know the whole story | | | |
| | | JY1709: | And I thank you for that. I'm still trying to help you. I'm so confused by this right now | | | |
| | | JY1709: | Yes I'm trying to HELP | | | |
| | | JY1709: | Yes, cause I was told it was the last one before! | | | |
| | | JY1709: | I'm sorry that was rude. | | | |
| | | JY1709: | I don't think you realize I'm doing the best I can here without raising | | | |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | suspicion. | | | |
| | | **JY1709:** Omg don't blame me now please | | | |
| 52 | 10/31/18 | **JY1709:** Agreements... <br> [ . . . ] <br> **JY1709:** Call me back <br> **MT1312:** I had to travel for a job interview <br> Just getting back <br> Everything ok? <br> **JY1709:** All good. Call me tomorrow morning or later tonight <br> **MT1312:** Is tomorrow am ok?  Today was crazy <br> **JY1709:** Yes. Just really need the agreements man. They'll cover both of our asses just in case | The reference to agreements was a reference to Jonathan Yiolous's requests to Michael for sham agreements that would help falsely legitimize the payments to MCG. | A, B, F, G, H, K, | SW_FIL_003423 24 |
| 53 | 10/31/18 | On October 31, 2018 J.Y. received an email from a NAC employee with the subject line "is there an invoice for this payment out of holdings?" referencing the October 30, 2018 payment to [MCG] Inc.  J.Y. responded with an attached invoice. | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_0017109 6 <br><br> NAC_E_0005459 9- <br> NAC_E_0005460 1 |

**November 2018**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 54 | 11/3/18 | On November 3, 2018, Michael Tew, using the mtew@sandhillrp.com email address, wrote to a VCorp employee: <br><br> I do need to get Sand Hill LLC in good standing with NY State asap <br><br> Can you assist I think you were saying its 58 and would take 1 2 weeks if expedited <br><br> Pls let me know and I can give you CC asap <br><br> I need to also file a foreign LLC in Colorado | Sand Hill, LLC was an entity incorporated in New York by Michael Tew.  The entity was used as a vehicle to collect payments issued to him by NAC while he was NAC's contract CFO.  Later, Michael Tew filed documents | A, K | VCORP_0000004 9 |

28

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Thanks!<br><br>Michael Tew<br><br>Michael Tew<br>mtew@sandhillrp com<br>1 917.685.1312 | with the Colorado Secretary of State's office to authorize Sand Hill to operate in Colorado.  He then opened a bank account for Sand Hill at Wells Fargo on which he was the sole signatory.  The last four digits of Sand Hill's account at Wells Fargo were x6934. Bank records show numerous payments from NAC accounts to the Sand Hill account after Michael Tew's termination. .*See* Indictment ¶¶4, 6, 16. | | |
| 55 | 11/3/18 | On November 3, 2018, Michael Tew, using the mtew@sandhillrp.com email address, wrote to a VCorp employee with his home address in Denver Colorado and the question "Can you use that address for all?" | See above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds. | A, K | VCORP_00000050 |
| 56 | 11/6/18 | **Kley(MT):** [M.M.] – I have $30K coming in this week. Are you going to help my wife or not?<br>**Kley(MT):** Stop delegating to your wife - she doesn't know what she's talking about. You need to take your wife out of this because she's screwing everything gup.  This is my money, nobody else's money, I work my fucking ass off and I'm not obligated to give anything or lend anything to anyone.  period.<br>**Kley(MT):** Are you sending $ to my wife or not - if not, we're not going to send anything this week.  Need you to deliver so we can get to next steps<br>**Kley(MT):** Every time you send her $ she sends you - to you - back more<br>**Kley(MT):** If you aren't even going to dialogue with her - and help - and simply reply because your wife won't let you - then it's over.  She's out. | These messages were sent to MM.<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, D, F, G, H, K | SW_FIL_00017001, p. 988 |

29

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(MT):**  i told kimberley we could send you 75 this week...nice business decision not helping her out.  Not sending anything, so not a great business decision it turns out | | | |
| 57 | 11/6/18 | On November 6, 2018 J.Y. received an email from a NAC employee with the subject line "[MCG] LLC?" asking about the invoice.  J.Y. responded with an attached invoice.  J.Y. also sent an email  with an invoice and a W9 form. | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_0013065 4  NAC_E_0006796 8-NAC_E_0006797 0 |
| 58 | 11/9/18 | From: [C.R.] <[C.R.]@gmail.com> Sent: Friday, November 9, 2018 4:48 PM To: Jonathan Yioulos <jyioulos@nationalaircargo.com> Subject: Re: Invoice  Hi Jon,  I was wondering if you could put me in touch with your CFO or legal team as I have some questions regarding the taxes around the consulting payments received.  Please direct me accordingly as the issue is quite urgent.  CR | S See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.  This email was an implicit threat to notify Yioulos' employers if he refused to send the money as directed by the Tews. | A, K, L | NAC_E_0005463 4 |
| 59 | 11/9/18 | **JY1709:**   Answer. Urgent **MT7473:**   Kimberley tried to text you last night **MT7473:**   I was traveling but this [C.R.] guy thinks there was an ethics violation.  He's not a straight out loser like [C.F.] but we just said no money. **MT7473:**   We suggested 1099 a Llc and he wanted like 1K in btc go pay his accountant which we also said no to **JY1709:**   Ethics violation? What the hell?...just tell him not to worry about it and not file it as income on his taxes **MT7473:**   Isn't NA[C] going to 1099 him? **JY1709:**   Lets just talk tomorrow. I'm swamped the rest of the night brother. Please answer tomorrow | During this exchange, Kimberley Tew identified herself as using Michael Tew's telephone.  See above, entry 41, for information about MCG, MM, MCG@gmail.com and | A, B, D, F, G, H, I (the comment about calming Kimberley down), K | SW_FIL_003423 24 |

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** I hear ya<br>I'm on this call brb<br>Kimberley can text<br>**MT7473:** This guy isn't stupid and we don't have any btc tossnd him<br>**JY1709:** I don't have any BTC, I don't. I told [A.S] consulting payments were done cause she was asking fucking a billion questions about [M.M.].<br>**MT7473:** Ok good that's exactly what we said!<br>**JY1709:** Awesome. Glad we're both on the same page brother!<br>**MT7473:** Kimberley knows more about this shit and of course she's freaking out<br>**JY1709:** Ok. Lets talk when you can<br>**MT7473:** Ok - not sure what to say, just exhausted<br>**JY1709:** Same. Just call me when you're done<br>**MT7473(KT):** It's K. Michael can't send any agreements. This is a really bad situation. We haven't received any of this money and Michael doesn't have a job. You should take this seriously because you could lose your license if he reports you.<br>**MT7473(KT):** We are just out of this.<br>**MT7473(KT):** We can't have anything to do with this especially if you think you're untouchable.<br>**MT7473:** You have capabiiity to buy btc. I'm in a jam here. Can you help at all. 400 bucks. It's Tew<br>**JY1709:** Call you in 5<br>**JY1709:** Needs to make 2 small deposit then confirms<br>**MT7473:** Ok<br>**MT7473:** It takes a minute for the deposits to hit<br>**JY1709:** Can I text you guys in an hour. It's ducking pouring and I'm with my father in law<br>**MT7473:** Yes<br>**MT7473:** What is the email that account is linked to - going to send you a request to see if it goes through<br>**JY1709:** [Jonathan Yioulos name variant]@gmail.com<br>**JY1709:** Got it. Bank is still not verified yet. Should be soon<br>**MT7473:** All good just testing it out<br>**MT7473:** Did it verify?<br>**JY1709:** Not yet. Says daily transactions processimg. Check back later<br>**MT7473:** Ok - no prob. It took mine an hour or two and then you just go in and manually enter the two transactions and its instant | the relevant paragraphs of the Indictment.<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>See above, entry 33 for information about [C.F.]<br><br>See entry 58 above, for email from C.R.@gmail.com, which was an account controlled by the Tews. | | |

31

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** No worries. Watching the 2nd half of this HS football game with my father in law but I'll check again when I'm back in my car. We'll get it done<br>**MT7473:** Copy that<br>**MT7473:** I've calmed Kimberley down, thanks<br>**MT7473:** this is a real question: if you offered to ACH me Monday, would that even be possible? Wouldn't it be flagged?<br>**MT7473:** Tried you back - had to wrestle phone from the kids! unbelievable!<br>**JY1709:** Can you keep waiting or should I ask a buddy?<br>**MT7473:** Wait is fine<br>**MT7473:** Under control thank you<br>**MT7473:** It probably will hit after midnight when things reset<br>**MT7473:** Sorry I know its late - can you check if it went through<br>**JY1709:** Literally just checked, same message. If it not done by tomorrow AM, I'll have my buddy send me it<br>**JY1709:** Then I'll just reimburse him when it does<br>**MT7473:** Any way you can do an instant buy on Coinbase or you can't use that account? | | | |
| 60 | 11/9/18 | On Fri, Nov 9, 2018 J.Y. responded to the email from [C.R.]@gmail.com described above:<br><br>Hello,<br><br>Please give me a call at the number below and I'll be able to assist you.<br><br>Jon<br><br>716-245-1876 | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, K, L. | NAC_E_00054634 |
| 61 | 11/11/18 | On November 3, 2018, Michael Tew, using the mtew@sandhillrp.com email address, wrote to a VCorp employee:<br><br>I was just getting caught up here Sorry to keep bothering you Just want to make sure I'm doing this right Never had an issue with my entities like this in the past | See above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds | A, K | VCORP_00000045 |

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Attached is what you sent me not to be a pain but it shows that you filed the Biennial statement but I don't have a copy of the following:<br><br>1 Biennial<br>2 Cert of good standing<br>3 Any other updates documents I need to show proof of good standing<br>4 CO foreign filing<br><br>Thank you!<br><br>Just need to get a bank account open here<br><br>I can pay via CC I have coming in by tues wed so if you can help me organize this I can pay mid week<br><br>Thank you<br><br>Michael Tew<br><br>Michael Tew<br>mtew sandhillrp com<br>1 917.685.1312 | On November 12, 2018, A statement of Foreign Entity Authority for Sand Hill LLC was filed with the Colorado Secretary of State listing the home address of Michael and Kimberley Tew. [VCorp_00000062]<br><br>A bank account for Sand Hill LLC was opened at a Wells Fargo Branch in Denver on May 2, 2019 with Michael Tew as the sole signatory[WFB_00000 536]. *See* Indictment ¶¶ 23-24 (alleging opening of multiple bank accounts) | | |
| 62 | 11/13/18 | **MT7473:** Can an ACH go to [5530 JD] for the tax advisory or new entity only<br>**JY1709:** How much<br>**MT7473:** Working on it. Reasonable<br>**JY1709:** I mean it, it's gotta be the end too. Had to be.<br>**JY1709:** And I need a contact from [5530 JD] or you or something so that I can justify it so this fucker can't do this shit again.<br>**JY1709:** I need your word man.<br>**MT7473:** Hang in there - working on final solution<br>**JY1709:** Lets talk tomorrow. I have a legitimate solution | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, B, F, G, H, K | SW_FIL_003423 24 |
| 63 | 11/15/18 | **MT7473:** What is start date of agmt<br>**JY1709:** February? Idk whenever the things started cooling with HNA<br>**JY1709:** Or you can throw them in there too? Your choice | By that point in time, Yioulos had directed 5 payments of $15,000 to | A, B, F, G, H, K | SW_FIL_003423 24 |

33

**Government's _James_ Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT7473: | How do we do the fees, is it as invoiced, a monthly thing? How does it come through in the system? | 5530 JD on August 23, August 31, September 10, September 18 and September 28, 2018.

See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | | |
| | | JY1709: | As invoiced would be best probably. | | | |
| | | JY1709: | $75K total. That's 5 months at $15K | | | |
| | | JY1709: | It can be literally however you want it to be. | | | |
| 64 | 11/16/18 | MT1312: | Should we do the thing where I mail it to you? | See entry above, reflecting discussion of providing sham agreements to falsely legitimate the payments to 5530JD

See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, B, F, G, H, K | SW_FIL_003423 24 |
| | | JY1709: | I need the agreement before I can send anything brother | | | |
| | | MT1312: | Copy | | | |
| | | JY1709: | Honestly, might be easiest to do it Monday/Tuesday to hit before thanksgiving. Nobody is around AT ALL next week... | | | |
| | | MT1312: | That's what I was thinking | | | |
| | | JY1709: | Let's do that. Less stressful. | | | |
| | | JY1709: | You good with that? | | | |
| | | MT1312: | So shall it be- what time are you leaving today? Back monday? | | | |
| | | JY1709: | Leaving at noon. Be back Monday on my computer around 2:30-3 | | | |
| 65 | 11/19/18 | MT7473: | When do you have 5 mins to speak | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.

See above, entry 41, for information about MCG, MM, MCG@gmail.com and | A, B, C, D, E, F, G, H, I, K | SW_FIL_003423 24 |
| | | JY1709: | I'm working from home, so not really time to actually talk. Is there an issue with the agreement or what's going on? | | | |
| | | MT7473: | Been working on resolving this with finality. What's the diff between having agmt now vs later this week | | | |
| | | MT7473: | Theres a reason why I'm asking and better over phone | | | |
| | | JY1709: | I need before I send that's why | | | |
| | | MT7473: | You don't though | | | |
| | | MT7473: | I'm not trying to be a dick | | | |
| | | JY1709: | I do tho | | | |
| | | JY1709: | And I'm not trying to be a dick either | | | |
| | | JY1709: | I've been asking for this for fucking 3 months. | | | |

34

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **JY1709:** | Like why can't it be sent today or tomorrow? Seriously tho? | the relevant paragraphs of the Indictment. | | |
| | | **MT7473:** | Its logistics - it is going to be sent from an air gap computer which is being arranged | | | |
| | | **MT7473:** | You're going to get what you want / need | Michael Tew's Statement that "[M.M.] and [C.R.]" are the same is a reference to the fact that both entities are being used to collect money. Michael Tew and Kimberley Tew were also the ones controlling the email accounts being used to send false invoices to Yioulos to provide the false pretense for the payments. | | |
| | | **MT7473:** | Has to be done right | | | |
| | | **MT7473:** | For everyone | | | |
| | | **JY1709:** | It doesn't matter where it's sent from tho as long it's coming from [5530 JD] | | | |
| | | **JY1709:** | Look, to be honest I'd rather just do this shit tomorrow when I'm in the office anyway. Then it hits Wednesday which is the day before break and nobody is back til Monday anyway. Just makes life easier and gets you another day to get the agreement sent from [5530 JD], yet still be before the long weekend | | | |
| | | **MT7473:** | No go - he just messaged us that he's pissed | | | |
| | | **JY1709:** | Well I need him to send the agreement then | | | |
| | | **JY1709:** | That literally the only way. I'm not doing it any other way. You can just tell him that it's impossible without the agreement. He doesn't know me or anything at all. | | | |
| | | **MT7473:** | I have to take the girls to an appt in boulder, do what you want. I'm not telling you what to do. I don't care, none of this is for me | | | |
| | | **MT7473:** | If you an Step out walk teh dog great call me , I can talk | | | |
| | | **MT7473:** | I relayed the message | | | |
| | | **JY1709:** | I got another email from him, saying the fucking final balance is $30K. | | | |
| | | **JY1709:** | Dude I'm tired of this shit | | | |
| | | **JY1709:** | I really am | | | |
| | | **JY1709:** | You there? | | | |
| | | **MT7473:** | I am too. Whatever you want to do I'm fine. I just want it go away. | | | |
| | | **JY1709:** | I need the agreement and I can send instantly | | | |
| | | **JY1709:** | I can't do it without our | | | |
| | | **JY1709:** | It* | | | |
| | | **JY1709:** | You gotta understand why | | | |
| | | **MT7473:** | Tell him that. I'm driving to Boulder. | | | |
| | | **JY1709:** | Does he have it? | | | |
| | | **MT7473:** | Does it have to go to his bank account | | | |
| | | **MT7473:** | Fuck him | | | |
| | | **JY1709:** | I'm confused. How would we settle this without it going to his account? | | | |
| | | **MT7473:** | If you're sending 30 send to [M.M.]'s account and we can take your btc | | | |

35

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | out. | | | |
| | | **MT7473:** He doesn't even have that chase account | | | |
| | | **JY1709:** How does this solve our problem with [5530 JD]? | | | |
| | | **MT7473:** [C.R.] and [M.M.] are the same | | | |
| | | **MT7473:** Just trust me | | | |
| | | **MT7473:** Do you have the ach info for MM? | | | |
| | | **MT7473:** He's including your btc in that number | | | |
| | | **MT7473:** I want to make sure you get it | | | |
| | | **JY1709:** Ok hold on. Can we talk? | | | |
| | | **JY1709:** Quick? You're driving rifhtV | | | |
| | | **MT7473:** I'll hold the phone | | | |
| | | **JY1709:** Found ACH info | | | |
| | | **JY1709:** [x]4668 | | | |
| | | **JY1709:** How do I know that this guy still isn't going to ask for more now that I'm paying [M.M.]? Like that fucks me if he's like nope you never sent payment | | | |
| | | **MT7473:** [M.M.] said he'd send you info | | | |
| | | **MT7473:** I don't know. I'm with you whatever you want to do. We will get you your btc. | | | |
| | | **MT7473:** Told them it's coming tomorrow. | | | |
| | | **JY1709:** He sent the wire routing | | | |
| | | **MT7473:** I don't know | | | |
| | | **JY1709:** I'm sending via ACH | | | |
| | | **MT7473:** Use the ach | | | |
| | | **JY1709:** OK ???? | | | |
| | | **MT7473:** He said it's in bold | | | |
| | | **JY1709:** got it. Is it cool to send the confirmation to [C.R.] afterwards | | | |
| | | **JY1709:** ?? | | | |
| | | **JY1709:** Let me know | | | |
| | | **MT7473:** Do whatever you need to do | | | |
| | | **JY1709:** No I'm asking. Are they working together? Is it the same person??? | | | |
| | | **JY1709** ????? | | | |
| | | **JY1709** Sent. | | | |
| | | **MT7473:** Sorry been driving | | | |
| | | Thank you | | | |
| | | In boulder and then hour drive back | | | |
| | | Touch base tonight when back and at computer | | | |

36

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 66 | 11/19/18 | On Mon, Nov 19, 2018 J.Y. wrote to the chrisrcnc@gmail.com email account:: <br><br> [C.R.], <br><br> Remaining balance of $30K has just been sent. You will see the funds tomorrow. Please forward agreement as soon as possible.": <br><br> [. . . .] <br><br> [C.R.], <br><br> I apologize for the delay. I can send payment that will hit your account tomorrow, but can you confirm your bank has changed: <br><br> Regions Bank - x4514 <br> Thank you, <br><br> Jon Yioulos <br><br> 716-245-1876 | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, K, L. | NAC_E_00056100 <br><br> NAC_E_00060221 |
| 67 | 11/19/18 | From: [C.R.] <[C.R.]@gmail.com> <br> Sent: Monday, November 19, 2018 2:58 PM <br> To: Jonathan Yioulos <jyioulos@nationalaircargo.com> <br> Subject: Re: Invoice <br><br> Hi Jon, <br><br> I am really not interested in speaking with you directly regarding this issue as it is my understanding that you're the hold up as to why I have not received my final payment. I will personally forward you a copy of the agreement upon receipt of final payment. According to my records, there is a 30K balance remaining including the termination fee. If you could kindly point me to the right person to whom I should speak with to resolve this matter, I believe that would be best. | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_00060221 |

37

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | CR<br><br>From jyioulos to [C.R.]@gmail.com (SW_FIL_00000045)<br><br>[C.R.],<br><br>Remaining balance of $30K has just been sent. You will see the funds tomorrow. Please forward agreement as soon as possible.<br><br>Thank you,<br><br>Jon Yioulos<br>716-580-6943 | | | |
| 68 | 11/19/18 | **MT7473:** Dude I got fucked<br>101 fever<br>Can't hear a thing<br>Was sluggish this am but got really sick<br>Must be from boulder yesterday<br>Canaceled everything can't move<br>Let me just get better and touch base later<br>All ok Kimberley handling<br>I'm a bad sick person<br>**JY1709:** Ok please touch base later. Really need a few things<br>**MT7473:** Yes<br>Sick<br>**JY1709** Sorry to hear you're sick. Look, I know you're not here, but you gotta understand we're over $100K sent out. I really need to talk to you about the agreement I cannot possibly send out anymore without raising red flags. Need to go over logistics... | On November 20, 2018 a $30,000 payment is sent from National Air Cargo to Regions Bank Account [x]4514 for services purportedly rendered by [MCG]. as documented in fraudulent invoice MCG 2018.11.30 (NAC_00000547), as alleged in Count 5 of the Indictment<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br>*See* Indictment ¶ 18 (alleging that Yioulos and Tew worked on | A, B, E,  F, G, H, K, | SW_FIL_003423 24 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | providing more detailed fake invoices to more convincingly paper their fraud) | | |
| 69 | 11/20/18 | **Kley (MT):** | Mike hi Can you pls be in touch with Kimberley tonight soon With all the drama with [redacted] I don't want to take any chances and I don't want to get  you wrapped in a mess | On November 20, 2018 a $30,000 payment is sent from National Air Cargo to Regions Bank Account [x]4514 for services purportedly rendered by [MCG]. as documented in fraudulent invoice MCG 2018.11.30 (NAC_00000547), as alleged in Count 5 of the Indictment | A, F, G, K | SW_FIL_000170 01, p. 989 |
| | | **MM:** | Okay i will. | | | |
| | | **Kley (MT):** | Thanks man | | | |
| | | **MM:** | Haven't been able yet on zelle, and it will be 2 banks for that amount so i am sure 10-10:15 is ideal | | | |
| | | | I will do feom laptop on the zelle and aetup a buy for.morning. | | | |
| | | | | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | | |
| 70 | 11/21/18 | **JY1709:** | I know you're sick, but call me. I need to talk to you. It's fucked up that you just fall off the map after you needed me to send that | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, B, E, F, G, H, K | SW_FIL_003423 24 |
| | | **JY1709:** | Also, for what it's worth. Between [5530 JD], [M.M.] and [HS CPAs], there's been $150K sent. I need an agreement and I need it soon. Put in the work to finish it please. It's almost year end and then [A.S] sends out 1099's and we get audited. Not only do I need an agreement, but I need a final invoice for that last $30K to [M.M.]. Since [5530 JD] has gotten $75K and [M.M.] has gotten $60K, The agreement should read that [5530 JD], in conjunction with [MCG]...something like that. | | | |
| | | | Please just help me to put a bow on this. You gave me your word that I'd have an agreement soon. I need it man. I really do. I can't send another dime out of this place for consulting and shit. Help me to wrap this up | See above, entry 41, for information about MCG, MM, MCG@gmail.com and | | |

39

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT1312: | Hi good am<br>Just getting going<br>I wa sick take it easy<br>Call you when things get moving here<br>Still a bit out of it | the relevant paragraphs of the Indictment.<br><br>See above 1 for information about H.S. and [H.S. CPAs] and the relevant paragraphs of the Indictment | | |
| | | MT1312: | I'm not disappearing I'm right here I'm sick. Give me a minute | | | |
| | | JY1709: | Ok thank you . Really appreciate it. Feel better | | | |
| 71 | 11/23/18 | MT7473: | Do you want your alts or btc and what's your btc address | "btc" is short for "bitcoin"<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C, F, G, H, I, N | SW_FIL_0034232 4 |
| | | JY1709: | 3Qemt9JfRBHasMBadwSjMRHzGG6BzJALsy | | | |
| | | JY1709: | All BTC is preferable | | | |
| | | JY1709: | You got 2 min to talk? | | | |
| 72 | 11/25/18 | JY1709: | You have a few min tonight? | Sent to Michael Tew x7473.  See above, entry 68 regarding payment to MCG. | A, G, K | SW_FIL_0034232 4 |
| | | JY1709: | Need a few things | | | |
| | | JY1709: | It's been an full week since I sent that and I still don't have an agreement or final invoice... | | | |
| | | JY1709: | I know you've been sick and shit, but come on | | | |
| 73 | 11/26/18 | JY1709: | Come on... | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, B, C, E, F, G, H, I K, L | SW_FIL_0034232 4 |
| | | JY1709: | It's now Monday. A full week since I sent to [M.M.] and still don't have an agreement or a final invoice for what I sent last week. Or my BTC back... | | | |
| | | MT1312: | Just getting going<br>Kimberley tells me [M.M.] never paid [5530 JD] so she's been trying to work it out<br>I have a ton of shit to catch up on I've been so sick<br>Let's talk later re logistics<br>It's fine just stay calm stay focused<br>I'm finally back to normal today<br>Can't talk now but can talk later or | | | |
| | | JY1709: | Omg. This is ridiculous. That's why I wanted to send to [5530 JD] to begin with | | | |
| | | JY1709: | When are you guys going stop fucking with me? Seriously? I knew that | | | |

40

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | was a bad idea to send to [M.M.]. You're really screwing me here | The x0987 account was held in the name of [5530 JD]. | | |
| | | JY1709: | You keep telling me to stay calm and stay focused, yet you're not helping me out at all. You won't answer calls, you won't respond, and now youre going to get to a point where you're going to need ANOTHER 30K sent. I know it. You guys won't stop fucking with me. I'm not sending another dime. | | | |
| | | JY1709: | I need an invoice and an agreement. That's what I need. That's the bottom line. That's it. Is it really that difficult? You're a consultant. You know how these agreements work. Just put it together and end this. | | | |
| | | JY1709: | Please Michael, stop this. Like we have to move on. I need an agreement so I can button this down and get the fuck out of here. I can't stand it here anymore, but I need things buttoned up before I eventually leave. Just please be a man of your word and get this done finally. I've been waiting on this for months. | | | |
| | | MT7473: | Calm down I will call you.  [5530 JD] has the agmt but has not signed.  This is not about $.  I know what you need.  Calm down!  This isn't about money. | | | |
| | | JY1709: | Look, I'm sorry. But I hope you can understand why this frustrating for me... | | | |
| | | MT7473: | You are going to get your BTC back.  You think I'm some kind of scammer or something, it makes me uncomfortable.  I was sick for like four days.  I was at hte Dr when we texted last.  It was a long holiday weekend.  Kimberley is working on it. | | | |
| | | JY1709: | I don't think it's you at all. I just am frustrated with the process. I'm sorry you were sick. It's getting closer to year end and I'm sorry I'm getting nervous. | | | |
| | | JY1709: | I fucking knew this would happen | | | |
| | | JY1709: | Why would you tell me to send to [M.M.]??!?? Why? | | | |
| | | JY1709: | Pick up the phone. Like this is out of fucking control. | | | |
| | | JY1709: | | | | |
| | | JY1709: | This is a joke right? | | | |
| | | JY1709: | By the way, has to be ACH anyway cause we only have like $15K in the accounts until tomorrow morning anyway with craf receivables | | | |
| | | JY1709: | Leaving the gym in about 2 Min...I really need the agreement from [5530 JD], commenting on working in conjunction with [M.M.]. As soon as I have that from [5530 JD], I can send ACH confirmation to him and we put this to bed. It should be pretty simple. I don't think it's too much to ask for | | | |

41

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | an agreement to be sent over before sending final payment | | | |
| | | **MT7473:** On a call - copy. I think the more of an issue you make of the agmt the more of an issue it will become. But my understanding is you are going to get it, but he needs the ACH confirmation asap. Did he send an invoice that said "final" on it? | | | |
| | | **JY1709:** He said in an email that it's the final one. Michael, I need the agreement. Let's be honest, as soon as I send this, I'll never hear from him again | | | |
| | | **MT7473:** i think if you go into it with a cordial attitude you'll get what you want but if you don't show him the ACH confirmation this agreement thing could become an issue whereas as of now I don't think it is | | | |
| | | **JY1709:** Look, you're worried about it all coming back to you. I get it. But this is the only way. There's several emails from you telling me to pay [5530 JD] with the invoices and the only way I can justify this and protect us both in an audit is with an agreement. Auditors won't ask why, they'll just want a copy. That's it. [C.A.] (national [C.A.]) will be none the wiser | | | |
| | | **MT7473:** But he will help with audits etc whatever you need | | | |
| | | **MT7473:** It doesn't matter when you get the agreement | | | |
| | | **MT7473:** Stop trying to control the situation it's not worth it | | | |
| | | **JY1709:** Is it actually done? Seriously tho. | | | |
| | | **JY1709:** I need 5 minutes. Please call me. | | | |
| | | **JY1709:** It's about the Routing number | | | |
| | | **MT7473:** What's the issue | | | |
| | | On a call | | | |
| | | Brb | | | |
| | | **JY1709:** It seems like the routing number may be incorrect when looking at a bbva account for an ACH. I just want to get it right | | | |
| | | **MT7473:** Ok 2 secs | | | |
| | | **MT7473:** Confirming | | | |
| | | **MT7473:** Routing # tel:[x]0547 | | | |
| | | Account # []0987 | | | |
| | | **JY1709:** Ok thanks | | | |
| | | **JY1709:** We're all set | | | |
| | | **MT7473:** Copy | | | |
| | | Let's put this to bed finally | | | |
| | | I have to run to an appt be back shortly | | | |

42

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| 74 | 11/26/18 | Subject: Re: Invoice<br>From: [C.R.] <[C.R.]@gmail.com><br>Date: Mon, 26 Nov 2018 09:22:01 -0700<br>To: jyioulos@nationalaircargo.com<br><br>I sent you an invoice with instructions to my account at Front Bank. I do not bank with Regions.<br><br>Please confirm the wire will be processed today and I will forward you the agreement<br><br>[. . . .]<br><br>Subject: Re: Invoice<br>From: [C.R.] <[C.R.]@gmail.com><br>Date: Mon, 26 Nov 2018 09:22:01 -0700<br>To: jyioulos@nationalaircargo.com<br><br>Jon,<br><br>Please delete my prior invoice as I have updated my banking instructions for BBVA Compass (new invoice attached here).<br><br>I also wanted to let you know that this is indeed the final invoice and I will send you the agreement with the changed you requested upon receipt.<br><br>Thanks.<br><br>CR<br><br>[. . . .]<br><br>Subject: Re: Invoice<br>From: jyioulos@nationalaircargo.com<br>Date: Mon, 26 Nov 2018 09:22:01 -0700<br>To: [C.R.] <[C.R.]@gmail.com><br><br>[C.R.], | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>On October 27, 2018 a $30,000 payment is made into BBVA Compass Bank Account [x]0987 for services purportedly rendered to [5530 JD] LLC as fraudulently documented at 5JDL 2019.11.01 7321122 (NAC_00000544), as alleged in Count 6 of the Indictment | A, K, L | SW_FIL_000000 54<br><br>SW_FIL_000000 76<br><br>NAC_E_0006016 4-<br>NAC_E_0006016 5;<br>NAC_E_0016249 6-<br>NAC_E_0016249 7 |

43

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Appreciate the updated invoice. Please see attached for payment confirmation. Also, as promised, please send the agreement. Thank you, Jon Yioulos | | | |
| 75 | 11/26/18 | Subject: Re: Invoice<br>From: [C.R.] <[C.R.]@gmail.com><br>Date: Mon, 26 Nov 2018 09:22:01 -0700<br>To: jyioulos@nationalaircargo.com<br><br>Jon,<br><br>I just got back from Argentina. I honestly thought you must be kidding. I have attached a copy of the final invoice including the termination fee with the correct banking instructions. In the future please do not send payment to a new account until I have confirmed the information.<br><br>I understand you've been screaming at Michael Tew who has nothing to do with this and is no longer at National Air Cargo.<br><br>I am expecting to receive the funds today without any issues. I will email you a copy of the agreement you've requested upon receipt of the wire.<br><br>CR | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_0017283 3- NAC_E_0017283 4 |
| 76 | 11/27/18 | JY1709:  When can we talk? I still need agreement.<br>MT7473:  On it - following up on agmt right now<br>JY1709:  Thanks man. Really appreciate it<br>         [. . . .]<br>MT7473:  3Qemt9JfRBHasMBadwSjMRHzGG6BzJALsy<br>MT7473:  Is this your BTC address?<br>JY1709:  Yes | On October 27, 2018 a $30,000 payment is made into BBVA Compass Bank Account [x]0987 for services purportedly rendered to [5530 JD] LLC as | A, B, C, G, I, K, N | SW_FIL_003423 24 |

Government's *James* Log
*United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:**    Bitcoin Transaction 92d8c1efa5942b770bca4b670e0413aae124959a12a715383066769c7c3f989c blockchain.com PDF<br>**JY1709:**    Thank you! | fraudulently documented at 5JDL 2019.11.01 7321122 (NAC_00000544), as alleged in Count 6 of the indictment<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| 77 | 11/28/18 | On November 28, 2018 J.Y. received a question from a NAC employee about a payment to [5530 JD] and responded by using his business email account to forward to the employee the invoices he had received from chrisrcnc@gmail.com on November 26, 2018, writing "See attached. [5530 JD]" | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_00059950-NAC_E_00059951 |
| 78 | 11/30/18 | **JY1709:**    Hey, thanks for the btc. Any update on the agreement? I don't mean to keep harping on it, but I really just want to button this whole thing up. | Message to Michael Tew<br><br>See above, entry 76, and other entries above related to Jonathan Yioulos's requests for sham agreements that would fraudulently lend an appear of legitimacy to the payments to MCG, 5530JD and HS CPAs | A, C, G, I, K | SW_FIL_00342324 |

45

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

**December 2018**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| 79 | 12/1/18 | **JY1709:** How's it looking for today?<br>**JY1709:** Look, make what you can, keep the excess and just send whatever you can back. Even if it's just what I sent. No worries<br>[. . . .]<br>**JY1709:** 100% get it. Look keep it as long you need to, make whatever you can for yourself as well. No. It was that psychopath [C.F.] and then [L.A.]<br>[. . . .]<br>**JY1709:** [M.M.] got fucking $30K! Out of nowhere! And now he wants to get paid more? Fuck. We have like no money in the company and I've sent a total of $165K to them!<br>**JY1709:** Maybe. Idk tho. Lots of risk there. My wife wouldn't approve<br>**JY1709:** Not cause of you<br>**JY1709:** Or Michael<br>**JY1709:** I get it. What do these guys have over you tho for real?<br>**JY1709:** I'll think about it for sure. Listen, worst case scenario, send my BTC to [M.M.] and end this thing if he wants to get "paid" I really just need an agreement sent to me by end of the year or else it's gonna get bad. I'm exhausted, but I'm gonna be on the road for the next few hours driving with the wife so I'll talk to you later that ok?<br>**JY1709:** What kind of changes? Really quick cause I gotta run | Messages to Kimberley Tew<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>"[L.A.]" is a reference to one of the owners of NAC.<br><br>See above, entry 33 for information about [C.F.] | A, B, E, F, G, H, I, K | SW_FIL_003379 55-<br>SW_FIL_003379 59 |
| 80 | 12/3/18 | Email from Kimberley Tew, using [MCG]@gmail.com, to J.Y. business email:<br><br>As per my agreement I have attached a copy of the final invoice. Please send payment confirmation.<br><br>[M.M.]<br><br>----- | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | SW_FIL_000580 5<br><br>SW_FIL_000058 11<br><br>NAC_00000548<br><br>NAC_E_0005959 3-<br>NAC_E_0005959 4 |

46

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | J.Y. responded:<br><br>[M.M.],<br><br>I just sent ACH tonight, but the funds will not hit your account until Wednesday morning. I have attached to you the confirmation.<br><br>Thank you,<br><br>Jon Yioulos<br>716-580-6943 | | | |
| 81 | 12/4/18 | **MT7473:** ABA: [x]3716. ACCOUNT: [x] 8385.  ACCOUNT NAME: SAND HILL LLC<br>**JY1709:** Got it.<br>**JY1709:** For the record. We've given [5530 JD] $105K. after this it's $100K to [M.M.] too...<br><br>So try to work that into the agreement<br>**JY1709:** Fuck that's so much money<br>**MT7473:** Of course<br>**MT7473:** Copy<br>**MT7473:** Ok FINAL DECISION - SEND TO SAND HILL<br>**MT7473:** WERE GOING TO HANDLE IT<br>**MT7473:** DO NOT SEND TO [5530 JD]<br>**MT7473:** BOF A ACCOUNT<br>**JY1709:** Are you sure. Positive!<br>**MT7473:** YES 100%<br>**MT7473:** Better for both<br>**JY1709:** Ok. How is this going to get handled so [M.M.] doesn't ask for more? Just wondering. Can't blame me here for asking that question<br>**JY1709:** Cause we got fucked before<br>**MT7473:** Kimberley taking care of it which is why better goes to SAND HILL.  no more people in middle<br>**MT7473:** No more wasting time<br>**JY1709:** That's fine that she says that and i trust you guys, but what's from stopping | See above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, B, E, F, G, H, I, K | SW_FIL_003423 24 |

47

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | | him from sending an email tomorrow saying he never got paid. That's my worry. I get she's "handling it" but what does that mean | On December 5, 2018 a $30,000 payment  is sent from National Air Cargo for purported payment to [MCG]. as fraudulently documented in MCG 2018.11.30 (NAC_00000548) | | |
| | | JY1709: | Apologize for all the questions, I just can't keep doing this shit | | | |
| | | MT7473: | He can't because he knows its coming from us...you'r bout of it.  That's why it works | | | |
| | | MT7473: | Obviously we are more reliable! | | | |
| | | MT7473: | ?? | | | |
| | | JY1709: | Getting it out now. No changing minds after this | | | |
| | | JY1709: | Done ☑ | | | |
| | | JY1709: | Please let this be the last one | | | |
| | | MT7473: | YES | | | |
| | | JY1709: | Please please please work on agreement. It's the only thing left. | | | |
| | | MT7473: | We have to now | | | |
| | | MT7473: | Not that we didn't before but yo know what I mean | | | |
| | | JY1709: | Yeah I get it | | | |
| | | JY1709: | Ahh god I'm so nervous. We have like no fucking money here. Everything will work out, but it's so damn stressful | | | |
| 82 | 12/4/18 | JY1709: | No email yet from [M.M.] saying his account is frozen/closed. Should I still cancel it? Is it actually frozen? What's the gameplan here | Messages to Kimberley Tew | A, B, F, G, H, K | SW_FIL_0033793 9-SW_FIL_0033793 43 |
| | | JY1709: | So send to the [5530 JD] account I just sent to? | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | | [. . . .] | | | |
| | | JY1709: | Ok thanks. If they both confirm then it's easy | | | |
| | | JY1709: | I just need [M.M.] to tell me to send to [5530 JD] instead and for [5530 JD] to confirm. If I get both then we're good | | | |
| | | JY1709: | That's fine. I'll cancel the ACH from last night first then I'll wait for them to be up. It'll still be before the window closes so we'll be fine | "SH" is a reference to Sand Hill. See above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and | | |
| | | JY1709: | Ahh this better be the last one | | | |
| | | JY1709: | When I say we're cash poor...this is why this has to be the last one. It's way too noticeablewhen we have no cash | | | |
| | | JY1709: | Are these guys waking up anytime soon? | | | |
| | | JY1709: | Just stepping out for lunch. Call you in 30 seconds | | | |
| | | JY1709: | Easier to explain | | | |
| | | JY1709: | Ok we're good. Funds going to SH | | | |

48

### Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | the relevant paragraphs of the Indictment.<br><br>On December 5, 2018 a $30,000 payment is sent from National Air Cargo for purported payment to [MCG]. as fraudulently documented in MCG 2018.11.30 (NAC_00000548) | | |
| 83 | 12/4/18 | On December 3, 2018 J.Y. sent and email to an employee within NAC, attaching two invoices, writing "Hey, these are two invoices that were missing from the account! Please apply the one payment sitting open to inv 79488. I paid 79489 today. Thanks!." | On December 5, 2018 a $30,000 payment is sent from National Air Cargo for purported payment to [MCG]. as fraudulently documented in MCG 2018.11.30 (NAC_00000548).<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_00059600-NAC_E_00059602 |
| 84 | 12/6/18 | **JY1709:**  Please call me when you can.<br>**MT7473:**  Just take a breath get through the day<br>**JY1709:**  I'm trying. Not only is work the absolute worst right now. But we have no money to pay vendors at all. Like everything is getting threatened to get cut off.<br>**MT7473:**  OMG...oh because the plane was in check so long?<br>**MT7473:**  So just no cash flow? | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, B, F, G, H, K | SW_FIL_00342324 |

49

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | Michael, it's not getting out until Saturday... And I've sent out 90K in payments to consultants in the past 2 weeks | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | MT7473: | OMG | | | |
| | | JY1709: | That's why this is getting so stressful. It starts to look obvious | | | |
| | | JY1709: | Think about it. We sent $30K to [M.M.] instead of [5530 JD]. [5530 JD] said they never got so we sent $30K to [M.M.] too. Then we just sent another $30K yesterday. | | | |
| | | | This is why I'm freaking out. This is why I need an agreement. | | | |
| | | JY1709: | I'm sorry. I hope you understand | | | |
| | | MT7473: | We'll just do something small Friday fr Monday just to buy time and that's it | | | |
| | | JY1709: | Ok. That's literally the best I can do. I'm really sorry. I wish I could do more | | | |
| | | JY1709: | But for real, I need an agreement ASAP. With limited funds, if there's a question about why we sent money somewhere, I need that handy. I can talk my way out of it if I have the agreement. I know you're swamped with trying to get new work, but please | | | |
| | | MT7473: | Copy that. I'm sorry about this. Dude banks hate me!!!!! | | | |
| 85 | 12/6/18 | JY1709: | No. It was sent to Sandhill | Messages to Kimberley Tew | A, B, E, F, G, H, I, K, M, L | SW_FIL_0033783-SW_FIL_0033927 |
| | | JY1709: | I'm gonna lose it | | | |
| | | JY1709: | I know you're not, but I literally want to throw up right now | See above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | | |
| | | JY1709: | Why would they close it | | | |
| | | JY1709: | Michael said yesterday the funds were there! | | | |
| | | JY1709: | Ok. Cause it makes zero sense that they would do that. I appreciate the heads up | | | |
| | | JY1709: | This is absurd. | | | |
| | | JY1709: | Hahaha what the hell | | | |
| | | JY1709: | Ok. I thought you guys were just going to transfer it to an account you had already purchased crypto with | | | |
| | | JY1709: | Ok good | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | JY1709: | I'm sorry this is happening | | | |
| | | JY1709: | Ok. Look, if the funds get returned, we come up with a different solution, but canceling that [M.M.] ACH already made the account look weird cause it went out then came back in. Now getting it returned from a sandhill account will make waves as well, but I thinkI can handle. Hopefully they just froze the account briefly and you can gain access. | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | If the bank needs to call me, to verify the transfer or anything let me know | See above, entry 33 for information about [C.F.] | | |
| | | JY1709: | So what did they say is goign to happen with the funds????? | | | |
| | | JY1709: | Well they should have given him a reason right? | | | |
| | | JY1709: | So the funds will come back to you, not national though | | | |
| | | JY1709: | I'm not doing anything. Haven't even tried to call or text him | | | |
| | | JY1709: | I just don't know what the next step is. I can't send anything else. I really can't. We have no cash at the company and another $30K gone will raise suspicions this time when other vendors are cutting off service and shit | *See* entries 28 and 32, describing prior directions by Kimberley Tew for funds to be sent by wire instead of ACH and resulting complication. | | |
| | | JY1709: | I know!!! | | | |
| | | JY1709: | I'm just saying! Please don't think I'm yelling st you! | | | |
| | | JY1709: | Haha sorry. I'm just stating fact regardless how obvious.  I just don't kow what the next step is | | | |
| | | JY1709: | Look, tell him he can keep my BTC at the end of it all too. Pay him more afterwards. What the fuck does this guy have on you?? | | | |
| | | JY1709: | Well I don't know what to do. He's gotten $70K from National already. $70K! $30K of which he was never supposed to get. You've also sent him BTC and other shit. Look, at the end of the day, the only way he gets his money, is through national and the funds we just sent | | | |
| | | JY1709: | What did I do? | | | |
| | | JY1709: | Because if he blows this whole thing up, he doesn't get anything more at all. Am I right? Like he gets fucked by this whole thing too. | | | |
| | | JY1709: | Why would he want to blow this thing up? | | | |
| | | JY1709: | What's the point? | | | |
| | | JY1709: | Not to mention the fact that his account closed too | | | |
| | | JY1709: | I don't know what to do.  I'm freaking out | | | |
| | | JY1709: | We are so fucked | | | |
| | | JY1709: | I'm goign to jail.  I really think I am.  I'm sorry.  I don't mean to freak.  But it's the truth. | | | |
| | | JY1709: | Cause this is goign to blow up.  I can't send money and you don't have money to send him either | | | |
| | | JY1709: | No, but if [M.M.] blow this up what can I really do? | | | |
| | | JY1709: | Yeah but he'll call national and it'll be [C.F.] 2.0 | | | |
| | | JY1709: | Exactly.  That's fucked up.  I'd rather turn myself in then have that happen | | | |
| | | JY1709: | What do you want me to say? I have no options. This was supposed to work. Now the funds are held up for 2-4 weeks. I can't send anything out of National and he's gonna get my wife and family involved. I can't have that. I can't allow that. | | | |

51

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | I get it. I do. Look at me tho too. I'm the one hitting send on all these wires. I'm the bad guy here if we get caught. And you can get mad at me if you want, but I'm not gonna get my wife involved. I'm not. Please respect that. | | | |
| | | JY1709: | I know you've helped me!  But you said it's funny I can't allow and what now | | | |
| | | JY1709: | What other options do I have? Lets be honest, I know you're not fucking around with me, but do you really think you'll be able to get money to send to [M.M.]? Probably not right? So then you're going to need me to send something. | | | |
| | | JY1709: | Exactly. I'm not asking you to pay my loans. You guys need money too! | | | |
| | | JY1709: | I know you're not!!! Ive never said that! | | | |
| | | JY1709: | Well I don't know what to do. I don't . I don't have a solution anymore | | | |
| | | JY1709: | Nothing! I have no solution. What can I do???? | | | |
| | | JY1709: | I'm not yelling. I promise. | | | |
| | | JY1709: | When have I blamed you guys? | | | |
| | | JY1709: | But see I knew it would come down to me sending MORE. It's never ending. That's my point. And the longer it goes, the worse it gets | | | |
| | | JY1709: | Not to mention I have nothing to send! Literally nothing. The accounts are empty. | | | |
| | | JY1709: | I'm not blocking you | | | |
| | | JY1709: | Neither can I cause there's no other cash coming in.  Monday is the earliest | | | |
| | | JY1709: | No.  All my cards are joint cards | | | |
| | | JY1709: | No. | | | |
| | | JY1709: | Listen. Tell him since his account closed it fucked with our bank here too. The earliest he gets paid is Monday. I can't do it before then. | | | |
| | | JY1709: | Plus, it's adding more "consulting fees" | | | |
| | | JY1709: | Well what's from stopping him to asking for more next week. And where would I even send it since his account is closed. | | | |
| | | JY1709: | I know he didn't. But what happens when that gets "close so | | | |
| | | JY1709: | If I send him multiple small payments it's even more noticeable. This is out of control. | | | |
| | | JY1709: | It's more stressful cause I sent this shit to sandhill! Fuck | | | |
| | | JY1709: | I'm not yelling. I'm just nervous | | | |
| | | JY1709: | No. I don't have a corporate card. I've never had an Amex here | | | |
| | | JY1709: | She's a god damn hawk | | | |
| | | JY1709: | She gets alerts every-time it's used | | | |
| | | JY1709: | What are you talking about | | | |

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | JY1709:  Peter called me about cancelling [M.M.].  Yours went through | | | |
| | | JY1709:  I'm not fucking around or messing with anyone | | | |
| | | JY1709:  Cause now the money is gone. It never bounced back. Sending out more will raise suspicions on the cash sheet. It's like why are we sending $100K to consultants in the last month but can't buy fuel | | | |
| | | JY1709:  That's my point.  The fact the money never bounced back is an issue | | | |
| | | JY1709:  It's not that easy. We had to send back payments for PNC and Another loan that auto drew. That's $280K total that we had to say no we don't have the funds for | | | |
| | | JY1709:  That's how bad things are | | | |
| | | JY1709:  What do you mean the money showed up? | | | |
| | | JY1709:  Do what??? | | | |
| | | JY1709:  Have Michael call me from his phone | | | |
| | | JY1709:  Ok | | | |
| | | JY1709:  Not until Monday | | | |
| | | JY1709:  That's what I've been saying | | | |
| | | JY1709:  I don't think you realize how that works.  It's not that simple | | | |
| | | JY1709:  And withotu funds backing it, it would never work | | | |
| | | JY1709:  I have no reason to lie to you or to Michael. Look I'm doing the best I can right now. We have a plane getting out of maintenance Saturday. We're getting more funds from Dubai by then as well. [A.S] is also out of the office on Monday too. | | | |
| | | JY1709:  I blocked off $30K to sand hill cause I thought this was over. But now that money never came back. | | | |
| | | JY1709:  No that's my point. If it did there woudnt be a problem cause I could easily just send it back out. | | | |
| | | JY1709:  Look, I'm freaking out. I can't think I can't do anything. I'd love to send $5K to stop this headache but we don't have it. We just don't. | | | |
| | | JY1709:  Thank god | | | |
| | | JY1709:  What do you mean | | | |
| | | JY1709:  I'm really not trying to fuck this up. For real though. I'm trying my best on my side and I hope you know that. | | | |
| | | JY1709:  Can you talk to me please? What's going on? I need to know how fucked we are right now | | | |
| | | JY1709:  I'm sorry Im' just freaking out | | | |
| | | JY1709:  They receive Monday | | | |
| | | JY1709:  I don't know what you're saying.  I'm sorry. I'm not understanding | | | |

53

### Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **JY1709:**   I don't know | | | |
| | | **JY1709:**   I'm sorry. I really am...What's going on with [M.M.] tho. That's my question. You said you could get money. What's going on with that? That's what I'm asking. I'm so confu+B77sed right now | | | |
| | | **JY1709:**   $10k can hit Monday | | | |
| | | **JY1709:**   We don't have money and i only have 7 minute for the window | | | |
| | | **JY1709:**   I might be able to make $15k work to hit Monday | | | |
| | | **JY1709:**   I only have 5 minutes.  I don't know what you want from me | | | |
| | | **JY1709:**   You know that doesn't work | | | |
| | | **JY1709:**   How???!?????? | | | |
| | | **JY1709:**   That's what the additional wires were for! | | | |
| | | **JY1709:**   We're fucked.  I cant' get anythign out today.  That means we're fucked | | | |
| | | **JY1709:**   I'm out of time | | | |
| | | **JY1709:**   It's 4Pm | | | |
| | | **JY1709:**   It's not possible.  [A.S] has to approve.  It'll never work | | | |
| | | **JY1709:**   I'm just telling you the situation | | | |
| | | **JY1709:**   What do you mean a loan? | | | |
| | | **JY1709:**   Look, can I talk to one of you so I understand this a bit more...where are you taking the loan out from? And if you're taking out a loan, then why do you need money from me still? Especially if you're getting the funds I sent yesterday in a month | | | |
| | | **JY1709:**   I need to actually talk to one of you.  It's so much easier than texting | | | |
| | | **JY1709:**   If I could have I would have sent an ACH | | | |
| | | **JY1709:**   It's life or death but you or Michael can't take 5 minutes to actually talk to me | | | |
| | | **JY1709:**   Talk to me please | | | |
| 86 | 12/7/18 | On December 7, 2018, Michael Tew, using the [PM]@gmail.com address sent an email to J.Y.'s business address with the content below and a link to pay a Quickbooks invoice directing payments to an account at Access Bank on which [L.W.] was the sole signatory:<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | The [PM]@gmail.com email account is the one associated with PM, as described in the proffer. L.W. was represented to be the owner of PM, which was one of the shame companies used to conceal payments to Michael and Kimberley | A, K, L | |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | under false and fraudulent pretenses. *See* Indictment ¶¶11, 12, 13, 15, 19, 20, 22, PM's emails contained links to quickbooks invoices directing the payments to specific accounts. Early invoices directed that payments be sent to an account controlled by [L.W.] at Access bank, with later transfer by Ward to Tew. Later invoices from teh [PM]@gmail.com account directed that payments be made directly to an account at Navy Federal Credit Union ending in number x8486 on which Michael and Kimberley Tew were joint signatories and later still to an account at Wells Fargo for Sand Hill. | | |
| 87 | 12/7/18 | JY1709:<br>MT7473:<br>JY1709:<br>MT7473:<br>MT7473:<br>MT7473:<br>MT7473: | So what's going on. Haven't heard from you guys at all today.<br>Hae a plan call you shortly<br>Ok<br>If invoice comes from quickbooks can you just click the link to pay?<br>Or is it all manual<br>You will have in 5 minutes<br>Al set | The references to an email are the references to the email sent on December 7, 2018 from the [PM]@gmail.com account. See entry 86, above. | A, B, F, G, H, K, | SW_FIL_003423 24 |

55

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | JY1709: Sent? I don't have anything yet <br> MT7473: 2 mins <br> JY1709: Ok no worries sorry <br> JY1709: Got it <br> JY1709: DONE <br> MT7473: Pls send the confirmation thank you <br> MT7473: thakn you <br> MT7473: Thank youi <br> JY1709: I can send confirm back to that email? <br> MT7473: YES <br> JY1709: Ok thanks <br> JY1709: Done. <br> JY1709: This HAS to be it <br> MT7473: What email did you send to <br> MT7473: Yes obiously <br> MT7473: Did you just reply to the invoice <br> MT7473: Got it <br> JY1709: Ok good <br> MT7473: Go home have a drink <br> MT7473: Or 7 | | | |
| 88 | 12/7/18 | On December 7, 2018 J.Y. replied to the email from [PM]@gmail.com, writing "Hello, please see attached for payment confirmation. Again, my apologies on the WAY past due nature of the invoice.  Appreciate your patience." | On December 10, 2018 $21,250 is sent via ACH to Access Bank Account  for services purportedly rendered to [PM] as fraudulently documented in [PM] 6516 2018.12.07 (NAC_00000550) <br><br> Bank records show that the money from NAC was deposited into an account controlled by a signatory named [L.W.]. On December | A, K, L. | SW_FIL_000114 56 <br><br> NAC_E_60064-NAC_E_60065 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | 7, 2018. [ACNB_00000440] Those records also show that on December 10, 2018 $15,500 of the $21,250 payment was transferred to Michael Tew | | |
| 89 | 12/8/18 | JY1709: | I'm trying. Not only is work the absolute worst right now. But we have no money to pay vendors at all. Like everything is getting threatened to get cut off. | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>On December 10, 2018 $21,250 is sent via ACH to Access Bank Account for services purportedly rendered to [PM] as fraudulently documented in [PM] 6516 2018.12.07 (NAC_00000550) | A, B, E, F, G, H, I, K | SW_FIL_003423 24 |
| | | MT1312: | OMG…oh because the plan was in check so long<br>So just no cash flow? | | | |
| | | JY1709: | Michael, it's not getting out until Saturday... And I've sent out 90K in payments to consultants in the past 2 weeks | | | |
| | | MT1312: | OMG | | | |
| | | JY1709: | That's why this is getting so stressful. It starts to look obvious | | | |
| | | JY1709: | Think about it. We sent $30K to [M.M.] instead of [5530 JD]. [5530 JD] said they never got so we sent $30K to [M.M.] too. Then we just sent another $30K yesterday. This is why I'm freaking out. This is why I need an agreement. | | | |
| | | JY1709: | I'm sorry. I hope you understand | | | |
| | | JY1709: | Ok. That's literally the best I can do. I'm really sorry. I wish I could do more | | | |
| | | JY1709: | But for real, I need an agreement ASAP. With limited funds, if there's a question about why we sent money somewhere, I need that handy. I can talk my way out of it if I have the agreement. I know you're swamped with trying to get new work, but please | | | |
| 90 | 12/10/18 | MT7473: | [NAC vendor] called me today, bounced the last payment.  Is everthing ok? | See above [X] for information on [M.M.] and [MCG].<br><br>See above [X] for information on [C.R.] and [5530 JD] | A, B, E, F, G, H, I, K | SW_FIL_003423 24 |
| | | JY1709: | Yeah we intentionally bounced it. They drew it today. How's everything?? | | | |
| | | MT7473: | Ok - things are MUCH BETTER...working through it. Of course they still want their $30 | | | |
| | | JY1709: | Yeah, they can wait for the rest ha | | | |
| | | MT7473: | They have legit issues I guess.  I'm working through it.  I wish I never knew them | | | |
| | | JY1709: | Ok thanks. Yeah, but even for legit issues, that's what the additional $30K | | | |

57

<h1 style="text-align:center">Government's <em>James</em> Log</h1>
<h2 style="text-align:center"><em>United States v. Tew</em>, 20-cr-000305-DDD</h2>

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | to [5530 JD] was for and [M.M.] got an additional $30K out of nowhere too after they acted like they stopped working together. Plus we just sent another $21K.<br>So essentially [5530 JD] got $75K and then $30K for tax (more than enough) and [M.M.] was essentially the same. But whatever<br>**MT7473:** I don't know what to say.they're the worst | On December 10, 2018 $21,250 is sent via ACH to Access Bank Account for services purportedly rendered to [PM] as fraudulently documented in [PM] 6516 2018.12.07 (NAC_00000550) | | |
| 91 | 12/10/18 | On December 10, 2018 J.Y. forwarded the email below to an employee at NAC with an attached fraudulent PM invoice, writing in the subject line "New Vendor – Paid on Friday"<br><br>[. . . .]<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>On December 10, 2018 $21,250 is sent via ACH to Access Bank Account for services purportedly rendered to [PM] as fraudulently documented in [PM] 6516 2018.12.07 (NAC_00000550) | A, K, L | NAC_E_00059475-<br>NAC_E_00059476 |
| 92 | 12/11/18 | Email from Kimberley Tew, using [MCG]@gmail.com, to J.Y. business email:<br><br>Jon,<br><br>As you are aware, I did not receive this ACH. I have attached my final invoice with my bank instructions. I would like this to be paid via wire for Tuesday, the 11th. I sincerely hope there are no further issues and that funds are sent without delay. If I do not receive payment in full I will be contacting someone else at your company to discuss. I will | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br>On December 12, 2018 a $25,000 payment is | A, K, L | SW_FIL_00002735<br><br>NAC_E_00173267 |

<div style="text-align:center">58</div>

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | confirm receipt for this final invoice when the funds hit my own account. Please do not send payment for this final invoice to any account but the one on the actual invoice.<br><br>Thank you for your understanding.<br><br>[M.M.] | made to ANB Bank Account x3099 for services purportedly rendered to [MCG]. as fraudulently documented in MCG 2018.12.11 (NAC_00000549), as alleged in Count 7 of the Indictment | | |
| 93 | 12/11/18 | JY1709: Just got an email from [M.M.] saying he didn't receive anything. Fuck this. Are you fucking kidding me???????<br>JY1709: This is a sick joke. Says he wants $25K by wire today. FIX THIS<br>JY1709: WHAT THE FUCK<br>JY1709: He was supposed to send me an email saying he got paid before you guys even sent him anything. You guys are really fucking me<br>JY1709: Hello<br>MT7473: Just waking up<br>Wtf is going on with this guy<br>I'm not doing anything to you<br>Call you shortly<br>JY1709: I know you're not. I'm just really upset man<br>MT7473: Let me look into this brb<br>JY1709: Please. Thanks<br>MT7473: [L.W.] sent [C.R.].   All good there.  [C.R.] account got flagged at bbva— new account apparently.  And the fraud dept was asking for all kinds of invoices.  I helped with all of that yesterday to clear up the issues.<br>MT7473: That's what I know<br>MT7473: Looking further<br>JY1709: I'm going to FBI. Fuck this.<br>MT7473: I can't tell you what to do or what not to do...I can't be involved with you in that.  What I can say is I personally have filed three separate reports with the FBI about [C.F.] and they have done absolutely nothing, and probably never will.  So I'm not sure how that all works.<br>MT7473: Call you shortly - I'm on a call<br>MT7473: Doing my best - I honestly am | See above, entry 33 for information about [C.F.]<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>See entry 76 above, showing that C.R. used an account tat BBVA<br><br>On December 12, 2018 a $25,000 payment is made to ANB Bank Account x3099 for | A, B, E, F, G, H, I, J, K | SW_FIL_003423 24 |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|----|----|-------|------|--------|
| | | **MT7473:** | I was at the library for two hours with my kids in sweats yesterday.  Trying to secure a job for teh new year | services purportedly rendered to [MCG]. as fraudulently documented in MCG 2018.12.11 (NAC_000000549), as alleged in Count 7 of the Indictment | | |
| | | **MT7473:** | Job market sucks here for guys like me | | | |
| | | **JY1709:** | I know you are. But Michael I really need an agreement. Like badly. It's getting closer and closer to end of year. If we don't have something, it'll end up fucking us. You, me, [M.M.] and [C.R.] honestly. But if we have an agreement, there's something there that unless all parties want to fuck it up for one another, we have to agree to | | | |
| | | **JY1709:** | Cleared this [M.M.] issue up with kimberley, but please work on getting me an agreement. It's essential | | | |
| 94 | 12/14/18 | On December 14, 2018 J.Y. used his business email account to send an attached invoice for payment to [MCG]@gmail.com with the subject line "[M.M.] Inv" | | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_00059835-NAC_E_00059836 |
| 95 | 12/18/18 | **JY1709:** | I think you should keep some and then if possible, it'd be the best to get back in BTC as funny as that sounds haha | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C F, G, H, I, K, N | SW_FIL_00342324 |
| | | **MT7473:** | Struggling here until we get to California next year | | | |
| | | **JY1709:** | Keep $15-20K. Send me $10-15K and that's should keep you moving a bit. Figure that's fair | | | |
| 96 | 12/18/18 | **Kley(MT):** | What's going on - are you making a deposit | Messages between Michael Tew and MM. See above, entry 93 reflecting payment to MM by NAC as directed by the Tews and Yioulos | A, F, G, H, I, K | SW_FIL_017001, p. 989-990 |
| | | **Kley(MT):** | Didn't get back to you the other day because I new she was | | | |
| | | **Kley(MT):** | Sorry bout that | | | |
| | | **Kley(MT):** | Can you let me know whats up | | | |
| | | **Kley(MT):** | Calling you to check inm | | | |
| | | **MM:** | You're good I understand, I fucked off my wife and am just about to a point where I can apologize now without the bs, so it shouldn't be much longer. | | | |
| | | **Kley(MT):** | Ok thanks. sorry to hear.  We all have wives:) | | | |
| | | **Kley(MT):** | Can you get done within 45 mins? | | | |
| | | **Kley(MT):** | Kind of on the clock | | | |
| | | **Kley(MT):** | Its been all day - can you deposit $1500 y/n. We can line up a BofA deposit | | | |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 97 | 12/19/18 | MT7473: | I the air.  Can you ach $15K to [M.M.] | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>[A.S.] was NAC's Director of Accounting. | A, B, E, F, G, H, K, N, M | SW_FIL_00342324 |
| | | JY1709: | No! Why do you insist on this? I don't want to hear that name ever again. Honestly | | | |
| | | JY1709: | Like I'm trying to help I really am. But I get physically ill every time I hear that name | | | |
| | | JY1709: | You know I can't send out more for consulting. It's ridiculous. If I send out anymore I'll get caught. We've sent over $225K to [M.M.] and [5530 JD]. What else can I really do? | | | |
| | | JY1709: | And I even sent money out to [PM] | | | |
| | | MT7473: | right | | | |
| | | JY1709: | Do you really understand tho? That's a lot of money out of NAC. Like that's straight jail time. And I mean that. I wake up at night constantly worried | | | |
| | | JY1709: | Look I know it's not you, but sometimes I don't think you know the gravity of the situation sometimes. Cash is super tight and here I am sending off payments to consultants and shit. Plus I have to tiptoe around this shit cause [A.S] does all the 1099's at end of year and I'm praying to god she doesn't ask too many questions. | | | |
| | | MT7473: | Q: does she do them at end of this year or beginning of next? | | | |
| | | MT7473: | Just in terms of actually getting them done and out | | | |
| | | JY1709: | I still don't have an agreement from you regarding [M.M.]/[5530 JD]. Nothing. I've asked for months and still have nothing. I'm sorry it's just frustrating. Im trying to help. I really am, but I've got nothing back. | | | |
| | | JY1709: | Beginning of next I'm assuming | | | |
| 98 | 12/20/18 | JY1709: | Ok. Text me the account number to confirm | [x]232 is the routing number for ANB bank. The account ending x3099 was at account there on which [M.M.] was the sole signatory.<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and | A, C, F, K | SW_FIL_00342324 |
| | | MT7473: | 2 secxs | | | |
| | | MT7473: | Account: [x]3099 ROUTING: [x]01232 | | | |
| | | MT7473: | We can meet in orlando | | | |
| | | MT7473: | Say when | | | |
| | | JY1709: | Well it's all about when you actually get the cash in too right? I mean ideally I'd love it in crypto as well, but you really just want to give cash? | | | |

61

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | | the relevant paragraphs of the Indictment. | | |
| 99 | 12/20/18 | On December 20, 2018 J.Y. used his business email account to forward the email that had previously been sent to from Michael Tew's business account on August 14, 2018 to an employee at NAC, referencing HS CPAs | See above 1 for information about H.S. and [H.S. CPAs] and the relevant paragraphs of the Indictment | A, K, L | NAC_E_00060442- NAC_E_00060444 |
| 100 | 12/20/18 | On December 20, 2018 J.Y. forwarded the statement below to an employee at NAC in an email with an attached fraudulent invoice from PM@gmail.com.<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>Records show that this invoice was not paid, as reflected in tehe conversation below. | A, K, L | NAC_E_00060445- NAC_E_00060446 |
| 101 | 12/21/18 | **MT7473:**  Nothing hit yet<br>**MT7473:**  Ca you check<br>**JY1709:**  It 1000% went out and cleared our bank<br>**MT7473:**  Thank you<br>**JY1709:**  ⬚<br>**JY1709:**  That's it going out.<br>**JY1709:**  ⬚The bottom amount is it clearing the bank<br>**MT7473:**  Copy<br>**MT7473:**  ⬚Keep you posted<br>**MT7473:**  If his bank kicks it back on an ach how long until you know<br>**JY1709:**  Probably a day or so. There's no reason for his bank to kick it back<br>**JY1709:**  It's the same account that worked before<br>**JY1709:**  Why would it be any different now? If I fucked up the ACH info, it would have already bounced back | *See* Indictment ¶ 20. | A, B, F, G, H, I, K | SW_FIL_00342324 |

62

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

**January 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 102 | 1/7/19 | **MT7473:** Welcome back buddy. Sending you an email. I have a plan. need you to trust me.<br>**JY1709:** I don't though. You gave me your word that the last one to [M.M.] was the last one and here we are again...<br>**JY1709:** I've gotten no agreement, no btc back, nothing. I told you I couldn't continue to do this into 2019 and here we are.<br>**JY1709:** Do you need confirmation?<br>**MT7473:** yes thank you<br>**JY1709:** Just sent it | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, B, F, G, H, K | SW_FIL_003423 24 |
| 103 | 1/7/19 | From PM@gmail.com<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>From jyioulos to PM@gmail.com<br><br>All,<br><br>Please see attached for confirmation.<br><br>Thank you,<br><br>Jon Yioulos | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>On January 8, 2019 $15,312.50 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered to [PM] as fraudulently documented in [PM] 6540 2019.01.03 (NAC_E_00060954)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | A, K, L | SW_FIL_000114 34<br><br>(SW_FIL_000114 38) |

63

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| 104 | 1/9/19 | **MT7473:** | Text me your btc adddresa | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, C, G, H, I, K, N | SW_FIL_0034232 4 |
| | | **JY1709:** | 39673cJQ9Z33QoBtPjytzwoZhMsUZroFbB | | | |
| 105 | 1/10/19 | **MT7473:** | Sending | On January 11, 2019 $23,350 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered to [PM] as fraudulently documented in [PM] 6670 2019.01.11 (NAC_00000969)

Bank record show that Michael and Kimberly Tew received this payment directly into their joint account at NFCU x8486.

See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.

*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) *See* Indictment ¶ 18 (alleging coordination to make sure fraudulent | A, B, D, F, G, J, K, L, N | SW_FIL_0034232 4 |
| | | | On a call | | | |
| | | **JY1709:** | Ok | | | |
| | | **JY1709:** | Need invoice before 4 if money is to be received tomorrow. If not, funds will hit Monday | | | |
| | | **MT7473:** | All set | | | |
| | | **JY1709:** | Jesus. It was supposed to be $23,500. You always increase it | | | |
| | | **MT7473:** | Shit I flipped It!  That was an accident I swear | | | |
| | | **MT7473:** | Now what | | | |
| | | **JY1709:** | It's whatever. And no it didn't flip, cause the two totals add up to over $25K. And also the hours don't match. 30.9 times 350 is 10,815, not 10,825 | | | |
| | | **MT7473:** | Rounding | | | |
| | | **JY1709:** | Ok | | | |
| | | **MT7473:** | Something must have happened in excel | | | |
| | | **JY1709:** | Ok | | | |
| | | **JY1709:** | Also, when should I expect my BTC? For real tho. I know you've been struggling, but you gotta understand where I'm coming from too | | | |
| | | **MT7473:** | If you can do cash tomorrow | | | |
| | | | If not I'll brb and give you for real | | | |
| | | **JY1709:** | What do you mean if I can do cash? Like bank to bank transaction? Or actual cash ha | | | |
| | | **JY1709:** | Also, done. | | | |

64

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | invoices were closely aligned with NAC | | |
| 106 | 1/10/19 | On January 10, 2019 J.Y. sent the response below to [PM]@gmail.com, which was being used by Michael and Kimberley tew<br><br>Hello,<br><br>See attached for final payment for fuel and gov consulting payments.<br><br>Thank you,<br><br>Jon Yioulos<br>716-580-6943<br><br>Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>$23,350 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered to [PM] as fraudulently documented in [PM] 6670 2019.01.11 (NAC_00000969)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | A, K, L. | SW_FIL_000114 47<br><br>SW_FIL_000114 43<br><br>NAC_E_82607-NAC_E_82608<br><br>NAC_E_52373; NAC_E_60953-NAC_E_60954 |
| 107 | 1/17/19 | **MT7473:**   Call when can just tried you<br>**MT7473:**   Let me know when you have a few mins<br>**MT7473:**   Talked to Amex<br>**JY1709:**   Ok call soon<br>**MT7473:**   We're all going to blow up<br>**MT7473:**   I can't pay that bill<br>**MT7473:**   I won't have a choice it's 45k<br>**JY1709:**   I JUST SENT YOU $40K<br>**JY1709:**   PLUS YOU HAVE ANOTHER $30K in crypto<br>**JY1709:**   That's $70K you got in fucking 2 weeks<br>**JY1709:**   And you said It's to pay the AMEX<br>**JY1709:**   That's a ton of money | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the | A, B, E, F, G, H, J, K | SW_FIL_003423 24 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **JY1709:** | And you act like you're starving. I don't even make $70K cash in a year after taxes are taken out and you've gotten that in 2 weeks | relevant paragraphs of the Indictment. | | |
| | | **MT7473:** | I had a shit ton of bills | | | |
| | | **JY1709:** | Ok? And I can't physically send you anymore | See above, entry 86, for information about | | |
| | | **MT7473:** | What's the process for ach at hsbc | L.W., PM, | | |
| | | **JY1709:** | Whatever. Keep the $30K | PM@gmail.com and | | |
| | | **JY1709:** | Blow it up then | the relevant paragraphs | | |
| | | **JY1709:** | Fuck it | of the Indictment. | | |
| | | **JY1709:** | You guys have given me nothing and IM THE ONE TAKING ALL THE RISK | | | |
| | | **JY1709:** | I've sent over $200K to [M.M.] and [5530 JD] and over $70K to [PM] and now you're Askign for more??? | [C.A.] and [L.A.] are the owners of NAC | | |
| | | **JY1709:** | This is a sick joke | FBI is a reference to the | | |
| | | **MT7473:** | look - I don't want any money. is there any way you can pay the amex off directly? It's a question. My credit has been ruined. | Federal Bureau of Investigation | | |
| | | **JY1709:** | How can I pay Amex? Makes no sense | | | |
| | | **MT7473:** | why did you tell Kimberley you were talking to teh fBI today for us? I asked you if anything was going on and you said nothing? | The reference to s[]@s[]buffalo.com is a reference to the email | | |
| | | **MT7473:** | Pls respond or she's going to start emailing you | address used by J.Y. | | |
| | | **MT7473:** | Its important for all of us | This is an effort to | | |
| | | **MT7473:** | Now she thinks I'm working with you against her!!!!! | extort J.Y. by | | |
| | | **MT7473:** | my own wife!!! | threatening to reveal | | |
| | | **MT7473:** | What appended today I asked you twice and. You said nothing | compromising information about J.Y. | | |
| | | **JY1709:** | I'm eating dinner | to his wife. | | |
| | | **JY1709:** | I'll call at 9:30 | | | |
| | | **MT7473:** | She's sending an email and copying [L.A.] ad [C.A.] right now | | | |
| | | **MT7473:** | That's what happens when you say that shit | | | |
| | | **JY1709:** | I'm calling you at 9:30 | | | |
| | | **JY1709:** | And I'll explain | | | |
| | | **MT7473:** | No. She's sending an email right now. What the fuck were you dealing with today | | | |
| | | **JY1709:** | ILL CALL YOU | | | |
| | | **JY1709:** | FUCK | | | |
| | | **JY1709:** | My daughters are screaming | | | |
| | | **MT7473:** | They think I'm going to jail | | | |
| | | **JY1709:** | JESUS CHRIST CALM DOWN | | | |
| | | **MT7473:** | She's sending an email to s[x]@s[x]buffalo.con | | | |

66

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | I'm not ducking around | | | |
| | | **JY1709:** | Jesus Christ wait fuckin 10 min | | | |
| | | **MT7473:** | ok | | | |
| 108 | 1/17/19 | **JY1709:** | We are. I just thought it would be easier to go through one person. It's nothing personal. Seriously [. . . .] | Messages sent to Kimberley Tew See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, B, D, F, G, J, K, L | SW_FIL_003378 29- SW_FIL_003378 34 |
| | | **JY1709:** | How so? There's literally no way I can do that | | | |
| | | **JY1709:** | Jesus. | | | |
| | | **JY1709:** | I'm not trying to screw you guys ever | | | |
| | | **JY1709:** | If any of this gets out, we're all fucked. That's why I'm still here honestly. I have to button this up and stay here until we get our ducks in a row and my wife can find me another job here in Buffalo cause our family's are here | See above, entry 33 for information about [C.F.] | | |
| | | **JY1709:** | Don't be. I have this under control | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | | |
| | | **JY1709:** | You have to trust me a bit. | | | |
| | | **JY1709:** | I'm pissed. I've sent over $77,037.50 to [PM] and another $200K plus [5530 JD] and [M.M.] | | | |
| | | **JY1709:** | And I tried. But then Michael got fired cause of [C.F.]. The Amex thing would have been handled but then [L.A.] went on a rampage | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | **JY1709:** | Don't put this shit on me | | | |
| | | **JY1709:** | Ok? Again, you're putting this on me like it's my fault | On January 22, 2019 $28,000 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered to | | |

67

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | | [PM] as fraudulently documented in [PM] 6712 2019.01.18 (NAC_00000970)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | | |
| 109 | 1/17/19 | J.Y. forwarded the email from [PM]@gmail.com described above to an employee at NAC with an attachment fraudulent invoice. | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_00052312-NAC_E_00052313 |
| 110 | 1/18/19 | **MT7473:** Have a call at 1pm EST, we will handle everything immediately after. All good. Thanks for realy taking the time yesterday.<br>**JY1709:** Ok<br>**MT7473:** Call when can<br>**JY1709:** ?<br>**MT7473:** You have invoice<br>**MT7473:** have plan in place let's talk later when can<br>**JY1709:** Answer<br>**JY1709:** You can't just send me another invoice for January consulting. How many hours do you think are in January. We need to talk now<br>**MT7473:** 2 secs<br>**MT7473:** Ok<br>**JY1709:** 39673cJQ9Z33QoBtPjytzwoZhMsUZroFbB<br>**MT7473:** Thx Jon<br>**JY1709:** Thank you<br>**JY1709:** All set<br>**MT7473:** Thank you<br>Everything in motion now | The long alphanumeric string is consistent with a cryptocurrency wallet<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, F, G, H, K, N | SW_FIL_00342324 |

68

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** Any discussions today following up from yesterday re; AMEX? Internally<br>**JY1709:** Nope. None at all<br>**MT7473:** Hard to believe huh?<br>**JY1709:** They're all idiots<br>**MT7473:** Copy that! | | | |
| 111 | 1/18/19 | On January 18, 2019 J.Y. sent the following message to [PM]@gmail..com:<br><br>Confirmation attached.<br><br>Thank you!<br><br>Jon Yioulos<br>716-580-6943<br><br>Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486:<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | On January 22, 2019 $28,000 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered to [PM] as fraudulently documented in [PM] 6712 2019.01.18 (NAC_00000970)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>*See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | A, K, L. | SW_FIL_00011452<br><br>SW_FIL_00011460<br><br>NAC_E_112728-NAC_E_112729<br><br>NAC_E_54045-NAC_E_54046;<br>NAC_E_112726-NAC_E_112727 |
| 112 | 1/23/19 | **MT7473:** Hi - all is in motion as discussed.  [PM] sending you their final invoice so we can close this out.  Not going anywhere on you, just been busy getting organized.<br><br>**JY1709:** Ok got it | See above, entry 86, for information about L.W., PM, PM@gmail.com and | A, B, F, G, H, I, K | SW_FIL_00342324 |

69

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:**  It's out<br>**MT7473:**  Thank you | the relevant paragraphs of the Indictment | | |
| 113 | 1/23/19 | On January 23, 2019 J.Y. forwarded the email below to an employee at NAC with an attached fraudulent invoice from [PM]<br><br>[. . . .]<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | On January 24, 2019 $21,000 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered to [PM] as fraudulently documented in [PM] 6714 2019.01.23 (NAC_00000971)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | A, K, L | SW_FIL_00011468<br><br>NAC_E_77284-NAC_E_77285<br><br>NAC_E_53104-NAC_E_53105 |
| 114 | 1/25/19 | On January 25, 2019 J.Y. again forwarded the email above to an employee at NAC with an attached fraudulent invoice. | *See* Indictment ¶¶11, 12, 13 | A, K, L | NAC_E_54104-NAC_E_54105 |

**February 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 115 | 2/7/19 | **JY1709:**  Hey, sorry I had you blocked from that one night a while ago and never undid it<br>**JY1709:**  My fault<br>**JY1709:**  I swear to you I tell you everything I know<br>**JY1709:**  If anything went down, I'd be getting fucked too<br>**JY1709:**  It shouldn't. I know the FBI thing scares you, but I don't know what they could possibly do or even care about once it's paid<br>**JY1709:**  You really shouldn't be | Messages to Kimberley Tew<br><br>See above, entry 1, for information about H.S. and [H.S. CPAs] and the relevant paragraphs of the Indictment | A, B, F, G, H, I, J, K, M | SW_FIL_000056763<br>SW_FIL_000337790-<br>SW_FIL_00337808 |

70

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | No shit! | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | JY1709: | We've had some intense moments for sure | | | |
| | | JY1709: | And I've had more intense freak out moments and for that I'm sorry | | | |
| | | JY1709: | I really don't think that. I'm really trying to stay out of it all | | | |
| | | JY1709: | And I figured you have and I appreciate that | | | |
| | | JY1709: | Ok thank you | | | |
| | | JY1709: | I promise you he's not. I'm the one who pushed the button. There's no way for that. | | | |
| | | JY1709: | This is all so close to going away. | | | |
| | | JY1709: | Well if that's the case, then just give me a warning | | | |
| | | JY1709: | I really don't blame you | | | |
| | | JY1709: | My god. That would be so stupid of me | | | |
| | | JY1709: | Cause there's no chance I don't go down for something | | | |
| | | JY1709: | I don't know. I don't know these guys. I've asked for an agreement of some sort and I need it. We can put anyone's fucking name on it! As long as we have that, we're buttoned up on that end. The charges have fallen off the company account so she doesn't care anymore | | | |
| | | JY1709: | I'm just frustrated with this whole thing. We've sent them over $100K each. And I'm sure you've sent them the Btc you had | | | |
| | | JY1709: | Ok what do you got? | | | |
| | | JY1709: | Wait what?? | | | |
| | | JY1709: | I'm not following | | | |
| | | JY1709: | You really think they'd stop? | | | |
| | | JY1709: | I don't know. Maybe we do go to the authorities then. That's your call cause these guys areclearly harassing you nonstop | | | |
| | | JY1709: | I mean they're never going to stop | | | |
| | | JY1709: | I think you have to | | | |
| | | JY1709: | That seems like the only option. I know it'll fuck us all over, but you shouldn't live in fear | | | |
| | | JY1709: | Between [C.R.], [M.M.], [H.S. CPAs], and [PM]. $406K | | | |
| | | JY1709: | I don't know what else to do | | | |
| | | JY1709: | I don't know yet. I mean I'm going to have to make up agreements when we get down that road if the auditors ask | | | |
| | | JY1709: | then they call. They got paid didn't they? I have their invoices and emails and everything. | | | |
| | | JY1709: | That's what those additional wires were supposed to be for. For tax issues | | | |
| | | JY1709: | [M.M.] essentially got $30k that was supposed to go to [C.R.] and then got | | | |

71

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | $25K as tax money<br>**JY1709:** [C.R.] got an additional 30k of tax money too<br>**JY1709:** Those were their final invoices<br>**JY1709:** Well then we have no choice.<br>**JY1709:** We made our beds<br>**JY1709:** Exactly. And I've sent out $406K and have received ZERO benefit. Not saying you have, but I'm essentially pressing the button for nothing!<br>**JY1709:** You're right<br>**JY1709:** At this point I just want it to all go away. I don't care what it takes. I honestly don't need anything anymore<br>**JY1709:** I don't know that. I honestly didn't know how much you still talked to those guys. Now I'm obviously worried<br>**JY1709:** You're right, I don't. I don't know their world. And guys in their world don't seem to ever stop<br>**JY1709:** So you truly don't think they'll stop? If you say no, then we have to go to somebody<br>**JY1709:** It does. It really does. I know what I'm doing here. You gotta believe me<br>**JY1709:** I can tell you this, we can make it work. We need to have the agreement signed by both [C.R.] and [M.M.], I have both of their signatures. They both have emailed me saying they'd send the agreement once they were paid in full. If we have the agreement with their signatures and show the payments to them in full, there's literally not a thing they can say. They have been paid and said there was an agreement via email. We go to the authorities if we have to and there's a signed agreement with payments in full.<br>**JY1709:** What are they going to do? Prove they didn't do the work? That's not possible. And do they really want the IRS and others up their ass??? | | | |
| 116 | 2/7/19 | On February 7, 2019 J.Y. forwarded the email below to a NAC employee, writing "Please book as Advertising expense for this one."<br><br>Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc., | On February 8, 2019 $15,125 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6775 2019.02.07 | A, K, L | SW_FIL_0001147 2<br><br>NAC_E_0005314 4-<br>NAC_E_0005314 5 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Your invoice is attached. Please remit payment at your earliest convenience.<br><br>The invoice is for your advertisement in National Defense Magazine and related materials and services.<br><br>Thank you for your business - we appreciate it very much. | (NAC_E_00053145), as alleged in Count 8 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| 117 | 2/19/19 | **JY1709:** And now Kimberley is texting me. This is awesome. It's like clockwork<br>**MT7473:** I told her not to<br>**MT7473:** I'm on a conference call I'll ring you after<br>**JY1709:** Ok<br>**JY1709:** Done helping you. Your wife is now sending me emojis calling me a "rat." Fucking brilliant.<br>**JY1709:** Send a revised one. Need it to say March not February<br>**JY1709:** Actually it's fine.<br>**MT7473:** Ok - for now, its a mistake<br>**MT7473:** Ok - yes?<br>**JY1709:** It's done. | On February 20, 2019 $15,250 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6670 2019.01.11 (NAC_00000969), as alleged in Count 9 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into | A, B, F, G, H, K | SW_FIL_00342324 |

73

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | their joint account at NFCU x8486. | | |
| 118 | 2/19/19 | JY1709: | If you keep texting me, yes I'm done helping | Messages to Kimberley Tew | A, B, C F, G, H, I, J, K, N | SW_FIL_0033772 - SW_FIL_0033787 |
| | | JY1709: | Because you're extremely rude and confrontational and think I'm some sort of rat trying to fuck you guys over | On February 20, 2019 $15,250 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6670 2019.01.11 (NAC_00000969), as alleged in Count 9 of the Indictment | | |
| | | JY1709: | Just let me deal with Michael | | | |
| | | JY1709: | Scream at him? Right | | | |
| | | JY1709: | Criminal? Never said that | | | |
| | | JY1709: | Like what the fuck. I've done nothing but try to help. You know how much has been sent | | | |
| | | JY1709: | I don't need to rehash that | | | |
| | | JY1709: | OK? He knew that was coming. That's why he got so much fucking money and that last wire | | | |
| | | JY1709: | Wait wait what? why are you sending me BTC right now? | | | |
| | | JY1709: | And that address isn't right | Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | | |
| | | JY1709: | 39673cJQ9Z33QoBtPjytzwoZhMsUZroFbB | | | |
| | | JY1709: | I'm trying to help. I really am. But how much do your really think I can send out of this place??? | | | |
| | | JY1709: | Honestly tho | | | |
| | | JY1709: | That was 8 days ago... | | | |
| | | JY1709: | Hold on | Binance is a cryptocurrency exchange | | |
| | | JY1709: | How much hav eyou sent totalV | | | |
| | | JY1709: | Im freaking out | | | |
| | | JY1709: | What happened | | | |
| | | JY1709: | Cause where would this crypto be?! | | | |
| | | JY1709: | I can't fucking log into my binance right now and haven't been able to for a while cause I lost my Authenticator. Why wouldn't you confirm the address with me??? | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| | | JY1709: | I've sent Michael the new address a bunch of times | | | |
| | | JY1709: | And these addresses are different. The 2.5 and the .5 | | | |
| | | JY1709: | You're joking | | | |
| | | JY1709: | I would have gotten emails that I received money in my account | | | |
| | | JY1709: | I have those enabled | | | |
| | | JY1709: | I don't hate you, I just don't believe i received these funds and I can't even check | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** Why wouldn't you have said something? Why wouldn't Michael have? Why didn't I get emails? I'm not saying you're lying but I'm just asking these questions<br>**JY1709:** Wonderful<br>**JY1709:** OK what happened?<br>**JY1709:** No never<br>**JY1709:** I would never give anyone else these addresses<br>**JY1709:** No<br>**JY1709:** Obviously<br>**JY1709:** I guess I'm not getting it. Sorry. I'm confused. Will i ever get it? Is it just gone?<br>**JY1709:** Send a revised one. Need it to say March not February<br>**JY1709:** Actually it's fine.<br>**JY1709:** It's done. | | | |
| 119 | 2/19/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>This invoice is for your advertisement in National Defense Magazine and related materials and services.<br><br>Thank you for your business - we appreciate it very much. | On February 20, 2019 $15,250 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6670 2019.01.11 (NAC_00000969), as alleged in Count 9 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | A, K, L | SW_FIL_000114 76 |

75

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 120 | 2/21/19 | On February 21, 2019 J.Y. forwarded the email sent from [PM]@gmail.com to a NAC employee, writing "This is what was paid the other day. For the 2nd half of February. Again, goes to advertising." | *See* Indictment ¶¶11, 12, 13 | A, K, L. | NAC_E_0006347 0-NAC_E_0006347 1 |
| 121 | 2/24/19 | **MT7473:** Can you sign up for an anonymous BTC wallet that is not linked to your name. **[….]** <br> **JY1709:** Will do. Yeah I'll do it tomorrow <br> **MT7473:** Send the btc to this address 1FBC2WuW59UaFoyCQfKBJo25TdLr2JKYkv <br> Will explain tomorrow <br> Will send it back to anonymous set up ASAP <br> **JY1709:** Ok <br> **MT7473:** [. . . .] - let me know when thank you!!!!!!! <br> **MT7473:** I'll have her send you 2 to the new address <br> **JY1709:** Just sent | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C F, G, H, I, J, K, N | SW_FIL_003423 24 |

**March 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 122 | 3/1/19 | **MT7473:** I have a 130 call eastern let me know when you are free thx <br> How's your acl <br> Send me wallet <br> **JY1709:** 15BxxFRqsqCqeBtRYJQNY4oU9xJFNHVo7i <br> **MT7473:** Got it thanks! | "wallet" is a reference to a digital currency wallet <br> *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C , F, H, I, K, N | SW_FIL_003423 24 |
| 123 | 3/4/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486 <br><br> Dear National Air Cargo Group, Inc., | On March 5, 2019, $37,800 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently | A, K, L | SW_FIL_000114 80 <br><br> NAC_E_0008461 5-NAC_E_0008461 6 |

76

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Your invoice is attached. Please remit payment at your earliest convenience.<br><br>This invoice is for your advertisement in National Defense Magazine and related materials and services.<br><br>Thank you for your business - we appreciate it very much. | documented in [PM] 6804 2019.03.04 (NAC_00000972)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. [NFCU_00000033]<br><br>See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| 124 | 3/6/19 | **MT1312:**  KRAKEN 3CArKEDR1KBSMQQZKab6by33cg8ev6hSpi<br>**Kley(MT):**  17xSSmDwuLFJg3rEyk6fgDFxPzis7H3XZY<br>**Kley(MT):**  BITTREX is the second oen<br>**KT2046:**  3BmC8krVKih7WNU7mq37ApioCpYdEHE7Sn<br>**Kley(MT):**  See if he can do chase it's like next door<br>**Kley(MT):**  Here st banjo<br>**Kley(MT):**  Bank<br>**KT2046:**  I think it's ok to go to Walmart quickly<br>**KT2046:**  Deposit at boa<br>**MT1312**:  Ok<br>**KT2046:**  Can you deposit in 45 min?<br>**Kley(MT):**  Yes for sure<br>**Kley(MT):**  Bank of America 15 mins away<br>**Kley(MT):**  Going to wal mart in a few<br>**KT2046:**  Has to be before 5pm<br>**KT2046:**  We can go to target or something all together later?<br>**MT1312:**  Yeah I think we skip<br>**KT2046:**  : Exact language must be on receipt | Bank records show a cash withdrawal from the NFCUx8486 account of $5,000 on March 5 and use of an ATM at a Bank of America.<br><br>The photograph of the deposit slip shows a deposit made into an account ending x3245.<br><br>*See* Indictment ¶¶ 32, 33 | A, D, F, G, K, N | SW_FIL_003263 50-SW_FIL_003263 51, SW_FIL_003263 61, SW_FIL_003263 64-SW_FIL_003263 67 |

77

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | CASH DEPOSIT ONLY. NO TRANSFERS<br>$5000 cash = BANK OF AMERICA<br>Business:[redacted business name]<br>Account # [x]3245<br>Address: [redacted]<br>MIAMI, FLA 33130<br>PLEASE WRITE "no refunds for bitcoins purchased on localbitcoins.com"<br>Got it? | | | |
| | | **MT1312:** | On way | | | |
| | | **MT1312:** | Photo of deposit slip<br>(57360875173__C4588466-1A21-4ECE-AE3B-DC068765BC33.jpeg) | | | |
| 125 | 3/7/19 | On March 7, 2019 J.Y. forwarded the email sent from [PM]@gmail.com on March 4, 2019,to a NAC employee, writing "Record as Professional fees — consulting. This gets us paid through June for the consulting part." | | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_00054190-NAC_E_00054191 |
| 126 | 3/14/19 | **KT2046:** | Msg [C.R.]we need until 4 and that you are going to try to send $1,500 via Google Pay and who should you send to | See above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment. | A, F, K, N | SW_FIL_00326371-SW_FIL_00326372 |
| | | **KT2046:** | Can you do that | | | |
| | | **Kley(MT):** | Messaged him | | | |
| 127 | 3/14/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>This invoice is for your advertisement in National Defense Magazine and related materials and services. | | On March 15, 2019 $31,500 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6881 2019.03.14 (NAC_00000973) | A, K, L | SW_FIL_00011484<br><br>NAC_E_00083902-NAC_E_00083903 |

78

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | Thank you for your business - we appreciate it very much. | Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| 128 | 3/15/19 | On March 15, 2019 J.Y. used his business email account to forward the email he received from [PM]@gmail.com to a NAC employee, writing "Went out yesterday. Advertising." | *See* Indictment ¶¶11, 12, 13 | A, K, L | NAC_E_00062777-NAC_E_00062778 |
| 129 | 3/17/19 | **KT2046:** I am sick of telling you what needs to happen and your pushback<br>**KT2046:** I am sick of coming up with solutions<br>**KT2046:** you figure out how to cash out everyone and pay our bills and most importantly pay our taxes making $10k a month with cannabis jobs you told me would pay you double to 15k.<br>**KT2046:** When I get a call from Jon or Ed or whomever and we can't go to Jon remember this<br>**KT2046:** I wish you could just solve it and handle things without placing the stress on me<br>**MT1312:** Who is [redacted]<br>**KT2046:** Exactly<br>**KT2046:** Just think<br>**MT1312:** Ok I'll solve it with [C.R.]<br>**MT1312:** [C.R.]<br>**KT2046:** I don't give a shit about [C.R.]<br>**MT1312:** Who is [redacted]<br>**MT1312:** Yes you do | Messages between Kimberley and Michael Tew<br><br>*See* Indictment ¶ 20<br><br>The list of redacted names here is people to whom Kimberley Tew owes money | A, D, F, G, K | SW_FIL_00326447-SW_FIL_00003264 54; SW_FIL_000032 6457-SW_FIL_000032 6461 |

79

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** That's all you o is [C.R.]<br>**KT2046:** [Redacted]<br>**KT2046:** [Redacted]<br>**KT2046:** [Redacted]<br>**MT1312:** Ok<br>**MT1312:** I thought you were building a portfolio from the last two wires<br>**KT2046:** Nope<br>**KT2046:** American Express the other two lawsuits<br>**KT2046:** I can't breathe<br>**MT1312:** So I'll see how much I can get fro Jon<br>**KT2046:** No<br>**KT2046:** That's what you do<br>**MT1312:** That's my only choice<br>**KT2046:** And you don't listen<br>**KT2046:** Something needs to happen tomorrow<br>**MT1312:** You don't want yo be around me<br>**KT2046:** and we need to be done<br>**MT1312:** What do you mean tomorrow<br>**KT2046:** What do you think I mean<br>**MT1312:** Jon can send an ach<br>**MT1312:** Not wire<br>**KT2046:** You're already shooting down 30<br>**KT2046:** We are so fucked<br>**MT1312:** Yep<br>**MT1312:** We are fucjed<br>**MT1312:** Been that way for a while<br>**KT2046:** We need two more same amounts<br>**MT1312:** We have to make realistic deals to get out of the crest card debt md move on<br>**KT2046:** First one tomorrow<br>**MT1312:** How the fuck are We going to get that<br>**MT1312:** We can't send a wire or<br>**MT1312:** [A.S] will never approve<br>**KT2046:** An ACH you idiot<br>[. . . .]<br>**MT1312:** It's too obvious | | | SW_FIL_0031238-<br>SW_FIL_0031843 |

80

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | [. . . . | | | |
| | | **MT1312:** How the fuck am I going to get more money from Jon another 70k | | | |
| | | **KT2046:** Please put this all in text | | | |
| | | **KT2046:** This was all his idea | | | |
| | | **MT1312:** Ok so threaten him | | | |
| | | **MT1312:** That's my only choice | | | |
| | | **MT1312:** Maybe promise him more | | | |
| | | **KT2046:** You're so dumb | | | |
| | | **MT1312:** He's going to say what is it for | | | |
| | | **KT2046:** Keep texting | | | |
| | | **MT1312:** You need to build a portfolio then and get out of it | | | |
| | | **MT1312:** I'll get it from him | | | |
| | | **KT2046:** Sure then 3 payments of 30-40 | | | |
| | | **KT2046:** No problem | | | |
| | | **MT1312:** You need to help then | | | |
| | | **KT2046:** How are we going to pay taxes | | | |
| | | **MT1312:** I can't get it from him on my own | | | |
| | | **KT2046:** I have a migraine !!!!!! | | | |
| | | **KT2046:** It's common sense not to threaten someone | | | |
| 130 | 3/18/19 | **KT2046:** Really? | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>See above [X] for information on [C.R.] and [5530 JD]<br><br>See below, entry 131, for follow up regarding offer to pay J.Y.'s loans for participation in fraud. | A, D, F, G, K, N | SW_FIL_003264 61- SW_FIL_000032 6463 |
| | | **Kley(MT):** Passcode | | | |
| | | **KT2046:** [redacted] | | | |
| | | **KT2046:** So what does that mean | | | |
| | | **KT2046:** Bank: Bank Of America | | | |
| | | Name: [M.M.] | | | |
| | | Account Number: [x]3120 | | | |
| | | Wire Routing Number: [x]9593 | | | |
| | | **KT2046:** [redacted address] | | | |
| | | Laramie Wy 82072 | | | |
| | | **Kley(MT):** Wire submitted | | | |
| | | **KT2046:** Play info greed | | | |
| | | **KT2046:** Ask how much is student loans for both and mortgage | | | |
| | | **KT2046:** I cannot keep [C.R.] calm for another week and we need to deal with our shit | | | |
| | | **KT2046:** Fuck him ask him how much he can send out today | | | |
| | | **KT2046:** It's more than you think | | | |

81

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** And what<br>**KT2046:** It's not enough<br>**KT2046:** And you're falling for it | *See* Indictment ¶¶ 20,32, 33 | | |
| 131 | 3/18/19 | **MT7473:** Call you in 5<br>**MT7473:** One sec - I'm so sorry<br>**MT7473:** How much is owed on your student loans right now<br>**MT7473:** 100% od it<br>**MT7473:** And mortgage<br>**MT7473:** ?<br>**JY1709:** Just call me!<br>**MT7473:** See email<br>**JY1709:** Got it<br>**JY1709:** Out | The reference to an email is a reference to the email from PM in entry 132 below. | A, B, C, F, I, N | SW_FIL_003423 24 |
| 132 | 3/18/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | Email with attached invoice for $20,250.00<br><br>On March 19, 2019, $20,250.00 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6910 2019.03.18 (NAC_00000554)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486 on March | A, K, L. | SW_FIL_000114 88<br><br>NAC_E_0009071 7-<br>NAC_E_0009071 8 |

82

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | | 18,2019[NAVY_00000 041] | | |
| 133 | 3/19/19 | On March 19, 2019 J.Y. forwarded the email from [PM]@gmail.com received on March 18, 2019 to an employee at NAC. | On March 19, 2019, $20,250.00 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6910 2019.03.18 (NAC_00000554)<br><br>*See* Indictment ¶¶11, 12, 13 | A, K, L | NAC_E_0006489 8- NAC_E_0006489 9 |
| 134 | 3/19/19 | **MT7473:** Good am<br>Funds didn't hit<br>All ok?<br>**JY1709:** Dude I'm so sorry.<br>**MT7473:** It's cool<br>Can you tell ap person to resend to other account?  Tell them it will be returned ...<br>May be easier<br>Will take extra day but solves a problem<br>**JY1709:** Yeah. But the funds won't hit until tomorrow...<br>**JY1709:** Cause I can't fuckin wire anything, especially not being in the office<br>**MT7473:** I know you can't wire it's ok<br>If they resend to right account is that ok?<br>**MT7473:** Is that something will be major flag<br>**JY1709:** Na it's fine<br>**JY1709:** It's just something I need to talk through with my ap girl<br>**MT7473:** Ok - do they pull the funds back or just figure out later<br>**JY1709:** I can message the bank and let them know I sent to the wrong account, or [PM] can just send them back. Probably better if they just | Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486 on March 18,2019 [NAVY_00000041].<br><br>On March 19, 2019, $20,250.00 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] | A, F, G, H, I, K | SW_FIL_003423 24 |

83

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | send back | 6910 2019.03.18 (NAC_00000554) | | |
| | | MT7473: | Ok. What if he doesn't send back? Just answering all the questions before i call him | | | |
| | | JY1709: | Well if he doesn't send to you, that would be problematic | On March 20, 2019, $20, 250 was sent via ACH to an account at Access Bank controlled by L.W. for services purportedly rendered to PM. NAC_E_00102097 | | |
| | | MT7473: | Worst case | | | |
| | | MT7473: | Ok let's do this. Can you explain to AP girl to resend to other account. I'll handle [PM]. Ok to resend via ach to hit tomorrow. | | | |
| | | MT7473: | Pls confirm | | | |
| | | JY1709: | Yes. Confirmed sorry. | | | |
| | | JY1709: | Handling with ap girl now | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | MT7473: | Thank you | | | |
| | | MT7473: | I'll take care of the other issue | | | |
| | | JY1709: | All set. Sorry again. Please make sure the funds come back. Or go directly to yoU. If they go directly to you, we'll just take it off of the next invoice... | | | |
| | | MT7473: | It's ok | | | |
| | | | Confirmed it's already re-sent? | The reference to "AP girl" is a reference to "accounts payable" | | |
| | | MT7473: | Good luck today! | | | |
| | | JY1709: | Yes it's out! | | | |
| | | MT7473: | Ok cool | | | |
| | | | Good luck today. | | | |
| | | JY1709: | Thanks man appreciate it | | | |
| | | JY1709: | Didn't mean to call. We'll talk tomorrow. | | | |
| 135 | 3/19/19 | KT2046: | Attachment showing $49,000 balance in Bank of America account at x5107 for [MCG] LLP | *See* Indictment ¶¶ 32, 33 | A, E, F, G, K, N | SW_FIL_003264 72- SW_FIL_003264 73 |
| | | KT2046: | How does he get it out without closing | | | |
| | | Kley(MT): | Bill pay | | | |
| | | Kley(MT): | In BOFA set up a vendor in bill pay and use it to pay bills its a business account | | | |
| | | KT2046: | To whom | | | |
| | | Kley(MT): | anyone | | | |
| | | Kley(MT): | He can pay to any of our accounts, he can pay to [PM] if we want | | | |
| 136 | 3/28/19 | MT1312: | They said this am that they just released the hold | On March 29, 2019 $38,000 ACH payment is made to Navy Federal Credit Union | A, F, G, H, N | SW_FIL_003265 14- SW_FIL_003265 81 |
| | | KT2046: | Who said that | | | |
| | | KT2046: | Where are you | | | |
| | | MT1312: | The banker | | | |

84

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** In with [redacted] on with Jon<br>**KT2046:** Working on one of your pointless jobs<br>**MT1312:** No doing invoice with jon<br>**KT2046:** You spoke to a banker this am<br>**KT2046:** For how much<br>**KT2046:** Better not be less than 37.5<br>**MT1312:** 37.5<br>**KT2046:** Is he giving you shit<br>**KT2046:** What if he sends to wrong account<br>**MT1312:** All set I have to do the invoice now he will make sure it goes to right account<br>**MT1312:** He was nice about it - we agreed this is the last one<br>**KT2046:** So not 50<br>**KT2046:** Whatever<br>**MT1312:** Ok I'll try for 50<br>**KT2046:** No<br>**KT2046:** What do you think? | Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6976 2019.03.28 (NAC_00000555), as alleged in Count 10 of the Indictment<br><br>Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them) | | |
| 137 | 3/28/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486:<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | On March 29, 2019 $38,000 ACH payment is made to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6976 2019.03.28 (NAC_00000555), as alleged in Count 10 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into | A, K, L | SW_FIL_0001149 2 |

85

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | their joint account at NFCU x8486.<br><br>See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| 138 | 3/29/19 | **KT2046:** I need you to wire $20K to Kraken and $5K to [redacted]<br>**KT2046:** Bank: BBVAC<br>　　　　Name: [M.M.]<br>　　　　Account Number: [x]991<br>　　　　Wire Routing Number: [x]1601<br>**KT2046:** Bank is Simple. Partner Bank is BBVA Compass.<br>**Kley(MT):** Need his addresss<br>**Kley(MT):** I found it<br><br>[. . . .]<br><br>**KT2046:** Text me screenshot where they are saying you're over your limit<br>**KT2046:** Need to show to [M.M.]<br>**KT2046:** Screenshot of a QR Code (IMG_9636.jpeg)<br>**KT2046:** 12RzMBsUwvgd1cm388pNRMWHRJv3jgAQKG<br>**MT1312:** Just got to bank<br>**MT1312:** Have cash on way there now<br>**MT1312:** Here<br>**MT1312:** Got him to do it at 4.5 percent<br>　　　　Every bit counts<br>**KT2046:** Great<br>**KT2046:** Drive safely<br>**MT1312:** Sending you 4.212 btc<br>**MT1312:** Confirm when received<br>**MT1312:** Not gone out yet<br>**KT2046:** Nothing yet<br>**MT1312:** Ok says pending | See above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>On March 29, 2019 $38,000 ACH payment is made to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 6976 2019.03.28 (NAC_00000555), as alleged in Count 10 of the Indictment<br><br>Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. | A, B, F, G, H, K | SW_FIL_003265 21-<br>SW_FIL_003265 22;<br>SW_FIL_003265 23-<br>SW_FIL_003265 27 |

86

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT1312:** | Takes forever | KRKN_00000008; | | |
| | | **KT2046:** | Got it | KRKN_00000020. | | |
| | | **MT1312:** | Ok | | | |
| | | | On way | *See* Indictment ¶¶ 32, | | |
| | | **MT1312:** | I'm like pals with this guy now | 33 | | |
| 139 | 3/30/19 | **KT2046:** | Image of Sand Hill Form 1099-MISC for tax year 2017 from NAC (Scan Mar 24, 2018 at 16.13.pdf) | See above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | | SW_FIL_0032652 8- SW_FIL_0032652 9; SW_FIL_0032653 1; SW_FIL_0032653 2- SW_FIL_0032653 4 |
| | | **Kley(MT):** | Ingot 2400 | | | |
| | | **KT2046:** | BofA- $2,400 cash Name: BITVALUE INC Account No: [x]1805 California Please write: "No refunds for bitcoins purchased on localbitcoin.com" Got it? | | | |
| | | **KT2046:** | What does that mean | | | |
| | | **KT2046:** | You said there are two people in line | Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020. | | |
| | | | [. . . .] | | | |
| | | **Kley(MT):** | Do we need job to send more money | | | |
| | | **Kley(MT):** | How much more | | | |
| | | **Kley(MT):** | I don't know if he will but I have to start this weekend on it | | | |
| | | | [. . . .] | *See* Indictment ¶¶ 32, 33 | | |
| | | **KT2046:** | The problem is we need that btc that's jammed on Kraken | | | |
| | | **KT2046:** | I don't want to talk | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them) | | |
| | | **Kley(MT):** | I won't get it until Monday | | | |
| | | **KT2046:** | It sounds like you're totally not in control of the process | | | |
| | | **KT2046:** | Your chats with them are crazy | | | |
| | | **KT2046:** | It's critical I get the money back! | | | |
| | | **Kley(MT):** | What do you mean | | | |
| | | **KT2046:** | You sound crazy | | | |
| | | **Kley(MT):** | Even after that we need more money | | | |
| | | **Kley(MT):** | We need jon to send more | | | |

87

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** What are you talking about<br>**KT2046:** You've already planned that I'm going to lose 20K<br>**KT2046:** Thanks | | | |

**April 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 140 | 4/3/19 | **KT2046:** Pls let me know what's going on<br>**KT2046:** I'm just trying to hope for good news<br>**KT2046:** Pls don't tell me bad news<br>**Kley(MT):** He's sending 9900. Its complicated I have to add it to an old invoice that's already in teh system, has to be less than 10K, prepayment for a subscription etc.<br>**Kley(MT):** But he's sending<br>**Kley(MT):** It was tough<br>**Kley(MT):** So we'll have another 9900 tomorrow<br>**KT2046:** From what account<br>**Kley(MT):** I know its not perfect but its something<br>**Kley(MT):** I don't know<br>**KT2046:** From where<br>**KT2046:** To whom<br>**KT2046:** From what account<br>**Kley(MT):** To [PM] not sure from what account<br>**KT2046:** What???<br>**KT2046:** Find out<br>**Kley(MT):** Prepaid subscription<br>**KT2046:** Is it actually going to [PM]<br>**KT2046:** Confirm what bank he's sending from<br>**KT2046:** If signature is closed<br>**Kley(MT):** He said the mandate is to use HSBC exclusively but they have not yet closed signature but the mandate is to not really use it so he said he has it handled internally but this is it because it will become obvious<br>**Kley(MT):** Or just impossible<br>**KT2046:** What does that mean!!!!<br>**KT2046:** Then we need to get more | On April 4, 2019 $11,250 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7004 2019.04.03 (NAC_00000556), as charged in Count 11 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. [NAVY_00000046]<br><br>At the time there was talk about NAC switching banks to HSBC from Signature Bank | A, G, H, K, N | SW_FIL_0032652-<br>SW_FIL_0032657;<br>SW_FIL_0032660 |

88

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|--------------------|------------------|--------|
| | | **KT2046:** | Like pay the 37.5 | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them) | | |
| | | **KT2046:** | And we are free | | | |
| | | **KT2046:** | Just pay an invoice twice | | | |
| | | **KT2046:** | Don't create a new one | | | |
| | | **Kley(MT):** | He won't do it | | | |
| | | **Kley(MT):** | I can't fight all day together about this | See above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | | [ . . . .] | | | |
| | | **KT2046:** | Don't send new invoice | | | |
| | | **KT2046:** | They still obviously have a lot of money in that account | | | |
| | | **KT2046:** | You should text him then | | | |
| 141 | 4/3/19 | **MT7473:** | Let me know when free | On April 4, 2019 $11,250 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM]  as fraudulently documented in [PM] 7004 2019.04.03 (NAC_00000556), as charged in Count 11 of the Indictment | A, G, K | SW_FIL_0034232 4 |
| | | **JY1709:** | Can you change this invoice at all? | | | |
| | | **MT7473:** | Yes what do you neeed | | | |
| | | **MT7473:** | Check you remail | | | |
| | | **JY1709:** | Perfect. | | | |
| | | **JY1709:** | Done | | | |
| | | **MT7473:** | tHANK YOU | *See* Indictment ¶ 18 (alleging coordination between Michael and Yioulos on how to provide more specific descriptions of falsely claimed services on fraudulent invoices) | | |
| | | | | The two email the two invoices are at | | |

89

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | | NAC_E_00105163-4 and NAC_00000310 | | |
| 142 | 4/3/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | On April 4, 2019 $11,250 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7004 2019.04.03 (NAC_00000556), as charged in Count 11 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. [NAVY_00000046]<br><br>*See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | A, K, L | SW_FIL_0001149 6<br><br>NAC_E_105163-NAC_E_105164 |
| 143 | 4/4/19 | On April 4, 2019 J.Y. uses his business email account to forward the email he had received from [PM]@gmail.com to a NAC employee. | | A, K, L | NAC_E_65792-NAC_E_65793 |
| 144 | 4/6/19 | **KT2046:**     I need to get more btc<br>**Kley(MT):**  I can deposit the rest of the cash<br>**MT1312:**     I can come back<br>**KT2046:**     BofA- $2000 cash | Bank record show ta $600 withdrawal from the Tews joint account NFCU x848 on April 6, | A, F, G, K, N | SW_FIL_0032656 7-SW_FIL_0032656 8; |

90

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | Name: [redacted business name]<br>Account # [x]3710<br>Florida<br>"No refunds for bitcoins"<br>Got it?<br>How long? | 2019 using a Wells Fargo ATM and transfers from other checking accounts. They also show a $200 transfer from an account in the name of Kimberley Tew's father.<br>[NAVY_00000046]<br><br>*See* Indictment ¶¶ 32, 33 | | SW_FIL_003265 71-<br>SW_FIL_003265 74 |
| | | Kley(MT): | Teller assist closed | | | |
| | | MT1312: | We can try for another that has it | | | |
| | | KT2046: | It's the only branch that has it right | | | |
| | | | | | | |
| | | | [. . . .] | | | |
| | | | | | | |
| | | KT2046: | Can you withdraw $600 from both of our joint account debit cards and deposit $1,200 at Wells Fargo rn? | | | |
| | | KT2046: | I transferred money in | | | |
| | | KT2046: | From my parents account | | | |
| | | KT2046: | Total: $2000<br>(1) Wells Fargo- $1100 cash<br>name:[redacted business name[<br>Account [x]9634<br>Business Address: [redacted[. MIAMI, FL 33165<br>(2) Wells Fargo - $900 cash<br>Account: [x]2392<br>Account Name: [redacted business name]<br>Acct opened in Kings Mountain, NC<br>Please write on receipt<br>"No refunds for bitcoin purchase"<br>Thank you | | | |
| | | KT2046: | Hello? | | | |
| | | Kley(MT): | Bank is not open for 20 more minutes | | | |
| | | KT2046: | Are all the banks closed rn | | | |
| | | KT2046: | Sorry | | | |
| | | KT2046: | I didn't know | | | |
| | | KT2046: | Want to try teller assist? | | | |
| | | KT2046: | Ok let me know if teller assist is open | | | |
| | | KT2046: | Ok sorry | | | |
| | | KT2046: | Can you deposit at Wells when they open | | | |

91

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | | [ . . . .] | | | |
| | | **KT2046:** | Chase- $920 cash<br>number: [x]7907<br>Name: [redacted business name]<br>Florida<br>"No refunds for bitcoins" | | | |
| 145 | 4/7/19 | **MT7473**<br>**JY1709:**<br>**MT7473**<br>**JY1709:**<br>**MT7473**<br>**JY1709:**<br>**MT7473**<br>**JY1709:**<br>**JY1709:**<br><br>**MT7473**<br><br>**JY1709:**<br><br><br>**MT7473**<br>**MT7473**<br><br><br>**MT7473** | Can you talk later today<br>Please let this not be about needing more money<br>No<br>Ok. I can talk in like 30 if that works<br>[. . .] can you talk in a bit ?<br>I've got like 20 min then I'm pretty tied up for the day<br>Can you talk later like dog walk time ?<br>No<br>I'm with my parents for the rest of the day/night  so I've got a small window now<br>Ok got it I literally have a screaming child<br>Let's talk later we'll both try and carve out 10 minutes<br>I've literally got 5-10 min now. I know you have a screaming kid, but I literally can't talk later. I'll be with the wife and parents with no free time for the rest of the day.<br>Don't ever call me a criminal or extortionist.<br>I understand your frustration and level of work.  We didn't have the time to get into it so I didn't have the opportunity to explain because you blew up at me.<br>Can you kindly make a few mins to speak with me in the am. You're the only person I can talk to | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, J, K | SW_FIL_003423 24 |
| 146 | 4/7/19 | **KT2046:**<br>**KT2046:**<br>**Kley(MT):**<br>**KT2046:**<br>**KT2046:**<br>**KT2046:** | I don't know why you leave right when I get btc<br>It sounds like there's no plan with Jon<br>He's not responding<br>What do you want me to do<br>You know what<br>Why don't we just send an invoice | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them | A, G, K, N | SW_FIL_003265 76-<br>SW_FIL_003265 77 |

92

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | KT2046:    What can he do<br>KT2046:    What do you think | and the Tews' role in making those requests)<br><br>The reference to just "sending an invoice" is a reference to using the PM@gmail.com account to send a quickbooks invoice for payment. Previously, the Tews had done the same with an invoice from MCG. See entries 49 and t0 above. | | |
| 147 | 4/8/19 | MT7473:   Can we send to an existing vendor in the system just add a bank account<br>JY1709:    No. We're using [PM]. I'm not gonna bring another vendor into this<br>JY1709:    Raises too many red flags if it's an existing vendor. 1099 issues or if they have questions regarding their account and there are issues or discrepancies in the accounts matching, we'd be screwed<br>MT7473:   i know you are nervous I know you can't breathe. I'm the same. I'm totally fucked if we can't do something for tomorrow. When I say fucked I mean fucked. No exaggeration. If we do something for tomorrow then we take a break and make the final invoice plan. I know you have gotten nothing - I gave you my word and I will keep it. That's part of what we are doing here.<br>JY1709:    Yeah but when you say something how much do you mean<br>MT7473:   $29,975. Just keep the invoice simple - fuel procurement. As long as it says fuel it shouldn't matter. Should keep the questions to a minimum. The airline sucks fuel every week. Multiple vendors handle it. I think simple is better in this case.<br>JY1709:    That's so fucking much<br>JY1709:    Fuel gets run through FMS. You know this<br>MT7473:   I know - but they still won't ask questions<br>MT7473:   Fuel procurement consulting - even if it says fuel on it<br>JY1709:    So you're saying you want $30K now, then you want another final invoice for $75K. Is that real life? | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>*See* Indictment ¶¶ 18, 19, 20 21, 22 (alleging various instances of coordination to make the fraudulent invoices more convincing and to more efficiently get money from NAC without getting caught) | A, E, F, G, H, I, K, L | SW_FIL_003423 24 |

93

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:**  I'm not breathing right now<br>**MT7473:**  I know<br>**MT7473:**  No - this is towards htis<br>**MT7473:**  thjat<br>**MT7473:**  when you submit it you say the airline needs a lot of help managing its fuel offsets right now to actually lower its average cost.<br>**MT7473:**  That's why were terminating the other guy he wasn't doing anything<br>**JY1709:**  I have a better plan<br>**MT1312:**  Fuel modification inspection and research 75k \ Related to new aircraft \ Amount due today 40 percent due on invoice<br>**MT7473:**  Can you do 50% down? I just realized. Have an overdraft<br>**JY1709:**  you're joking...<br>**JY1709:**  Whatever<br>**JY1709:**  Sure<br>**JY1709:**  $37,500...honestly, this 100% has to be the last. Like no bullshit<br>**MT7473:**  Invoicing for the $75K though and we address rest later right?  That was our discussion.<br>**MT7473:**  confirming. That's what invoice says. It's good.<br>**JY1709:**  Yes. Invoice for the 75<br>**JY1709:**  50% down<br>**MT7473:**  All ok?<br>**JY1709:**  Yup. Good to go<br>**MT7473:**  Thank god<br>**MT7473:**  Or...thank you<br>**MT7473:**  You're a good man. | | | |
| 148 | 4/8/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice for $75,000, as reflected in call above directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | A, K, L. | SW_FIL_000115 08<br><br>NAC_E_108463-NAC_E_108464 |

94

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 149 | 4/8/19 | On April 8, 2019 J.Y. used his business email account to forward the email he received from [PM]@gmail.com  on April 8, 2019 to a NAC employee, writing<br><br>I know, I know. [C.A.] told me to pay today, but hopefully, HOPEFULLY, this is the last . . .<br><br>Full invoice is for $75,000. We just paid $37,500 today…going to try to draft the final payment out…we can book this to 50605—outside services—Contractors since it's for inspection other due diligence for new aircrafts. | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>The invoice referenced "Fuel modification Inspection and Research" "*Related to New Aircraft Acquisition" as discussed in the call above, entry 147. *See* Indictment ¶¶ 18, 19, 20 21, 22 (alleging various instances of coordination to make the fraudulent invoices more convincing and to more efficiently get money from NAC without getting caught) | A, K, L. | NAC_E_91205; NAC_E_66884-NAC_E_66885 |
| 150 | 4/9/19 | **Kley(MT):**  30 mins to bank<br>**KT2046:**  I'm wondering should you just withdraw cash and buy from that guy or is he going to give you a hard time.<br>**KT2046:**  Don't crash<br>**KT2046:**  Map to banks (IMG_9956.jpeg)<br>**Kley(MT):**  The one in lone tree but I can go to centennial<br><br>[. . . .]<br><br>**KT2046:**  Bank: Bank Of America<br>Business Name: [MCG], LLC<br>Name: [M.M.]<br>Account Number: [x]5107 | On April 9, 2019 $37,500 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM]  as fraudulently documented in [PM] 7101 2019.04.08 (NAC_00000557)<br><br>Bank record show that Michael and Kimberley | A, F, G, H, K, N | SW_FIL_003265 80-SW_FIL_003265 84 |

95

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | Wire Routing Number: [x]9593<br>[redacted address] Ridge TN 37013 | Tew received this payment directly into their joint account at NFCU x8486.<br><br>See above [X] for information on [M.M.] and [MCG].<br><br>*See* Indictment ¶¶ 32, 33 | | |
| 151 | 4/11/19 | **MT7473:**<br>**MT7473:**<br>**KT2046:**<br>**MT7473:**<br>**KT2046:**<br>**MT7473:**<br><br>**KT2046:**<br><br><br>**KT2046:**<br>**KT2046:**<br>**MT7473:**<br><br><br><br>**KT2046:**<br>**KT2046:**<br>**MT7473:**<br><br>**KT2046:**<br>**KT2046:** | I have to call [MM] too<br>Supposed to call him right now<br>You're doing your best?<br>And then I'll have to call [redacted]<br>You haven't done anything g<br>I'm going to get yelled at by you<br>By [MM]<br>By Jon<br>All day<br>That's all you care about<br><br>[. . . .]<br><br>What is up with mike and wire<br>Today<br>Working on it<br>They are on a call<br>They weren't even awake when I called originally<br>I have a call in 15 mins with them<br>Did you ask<br>Have you been texting Jon<br>Yes. Jon said he would send something he's super pissed trying to figure out how to make him feel good about it how to respond<br>What is something<br>Has to be min of 15 | On April 12, 2019 $18,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7101 2019.04.08 (NAC_00000557)<br><br>*See* above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send and the Tews' role in making those requests) | A, F, G, K, N | SW_FIL_0032658 4-SW_FIL_0032658 7; SW_FIL_0032659 2-SW_FIL_0032659 4 |

96

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | I thought we said 10 yesterday | | | |
| | | **KT2046:** | Omg!!!! | | | |
| | | **KT2046:** | 15 and 27 | | | |
| | | **MT7473:** | The last one is 37500 | | | |
| | | **MT7473:** | If we do 15 now then the next one is 22500 | | | |
| | | **KT2046:** | Great | | | |
| | | **MT7473:** | Should I say we have a project we want to bring you on board? He's just pissed off. | | | |
| 152 | 4/12/19 | **Kley(MT):** | You need to calm down and stop threatening to cut off communication. She is not stringing you along. We need to work together.  This will all be resolved soon | These messages were sent to MM, who is not an indicted conspirator. But they show Michael Tew executing the part of the conspiracy related to engaging in financial transactions with proceeds of the fraud.<br><br>On April 12, 2019 $18,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM]  as fraudulently documented in [PM] | A, F, G, H, K., N | SW_FIL_000170 01, p. 993 |
| | | **Kley(MT):** | Mike - a substantial amount that was supposed to be here Tuesday and then gain today is arriving next week. I am going to do everything I can to make sure it is sent Monday. | | | |
| | | **Kley(MT):** | If you don't respond I assume you are going hostile We wanted to help you with your tax situation.  If I don't hear from you I assume we are not working together. | | | |
| | | **Kley(MT):** | She made promises to you because she was also promised things.  She was not stringing you along. This is the way these things go sometimes. Sometimes it's awesome and sometimes it's bad. But it's never as bad as you think. | | | |
| 153 | 4/12/19 | **KT2046:** | Bank: Bank Of America<br>Business Name: [MCG], LLC<br>Name: [M.M.]<br>Account Number: [x]5107<br>Wire Routing Number: [x]9593<br>Address:<br>[redacted]<br>Cane Ridge TN 37013 | On April 12, 2019 $18,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM]  as fraudulently documented in [PM] | A, G, H, K, N | SW_FIL_003266 03-<br>SW_FIL_003266 04;<br>SW_FIL_003266 10 |
| | | **KT2046:** | Can you send a wire of $5,000 | | | |

97

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:**     Send $5 now?<br>**MT7473:**     Yes<br>**MT7473:**     From which account<br>**KT2046:**     Yes<br>**KT2046:**     8486<br>**KT2046:**     Will they also let you send a 5K wire to my Simple because it's to me from our Joint<br>**KT2046:**     I<br>**MT7473:**      Both wires out<br><br>                    [. . . .]<br><br>**KT2046:**     I need you to withdraw $2,400 and do a cash deposit<br>**KT2046:**     I'll put it back in<br>**KT2046:**     At WF<br>**MT7473:**      Ok<br>**KT2046:**     Wells Fargo $2400 cash<br>                    Name: [redacted business name] CHECKING ACCOUNT<br>                    ACCOUNT #: [x]2643<br>                    Florida<br>                    "No refunds for bitcoins" | 7101 2019.04.08 (NAC_00000557) Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. Bank records also show a wire transfer of $5,000 from that account on April 12, 2019. [NAVY_00000047]<br><br>Simple was an all-online bank. Records show an account in her name, associated with her address, her x2046 telephone number and the kley@me.com email address. SFT_00000173.<br><br>*See* Indictment ¶¶ 23, 32, 33 | | |
| 154 | 4/13/19 | **JY1709:**     You'll have it no later than Wednesday. Please send me some btc by then too<br>**MT1312:**      [. . . .].  Please send Monday, let's get this done with, you will get what was promised.   Apologies - didn't see you called earlier.  Didn't have my phone on me. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶ 25 (alleging that Tews | A, C, G, H, I K, N | SW_FIL_003423 24 |

98

Government's *James* Log
United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|-----|-----|-----|-----|-----|
| | | | | gave Yioulos bitcoin as part of the fraud) | | |
| 155 | 4/16/19 | KT2046: | Did you not send $5,000 to my Simple? | *See* above, entry 153, for background on Kimberley Tew's Simple account<br><br>On April 16, 2019, $18,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7101 2019.04.08 (NAC_00000557)<br><br>Bank records show a $5,000 wire transfers from the Tews joint NFCU account x8486 on April 16, 2019<br><br>Indictment ¶¶23, 32, 33 | A, G, K, N | SW_FIL_003266 21- SW_FIL_003266 25 |
| | | MT7473: | Wasn't sure if you wanted both, I'll send it now. Teh woman on the phone was a pain in teh ass anyway. Calling now | | | |
| | | KT2046: | Don't worry | | | |
| | | KT2046: | Don't do it | | | |
| | | MT7473: | ok | | | |
| | | KT2046: | Their wire system blows | | | |
| | | KT2046: | Did chase get kicked back | | | |
| | | MT7473: | The woman was like I'm not even sure if you can send a $5,000 wire over the phone | | | |
| | | KT2046: | Omg | | | |
| | | KT2046: | Idiot that | | | |
| | | MT7473: | I'm like I can I do that all the teim | | | |
| | | MT7473: | She's like let me check teh ryles | | | |
| | | KT2046: | Shit | | | |
| | | KT2046: | That's how we get shut down | | | |
| | | KT2046: | And what did the rules say | | | |
| | | KT2046: | Can you grab the mail | | | |
| | | MT7473: | The external wire was fine | | | |
| | | KT2046: | I couldn't get into it yesterday | | | |
| | | KT2046: | Did chase pull again | | | |
| | | MT7473: | I didn't even ask her about yours because she was a mess this woman | | | |
| | | MT7473: | Tere are no more insufficient funds charges in the account, it looks like they didn't try again. I got an email reminder that a payment is due not sure if that's automated. I'll go get the mail | | | |
| 156 | 4/17/19 | KT2046: | Did you talk to jon | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, E, F, G, H, K, N | SW_FIL_003266 31- SW_FIL_003266 33; SW_FIL_003266 36- SW_FIL_003266 41 |
| | | MT7473: | Upstairs | | | |
| | | | Phone tag | | | |
| | | | We spoke for a minute and he was walking in | | | |
| | | | Calling him when I come back down | | | |
| | | | [ . . . . ] | | | |
| | | KT2046: | Did you talk to Jon | | | |

99

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **KT2046:** Hello?!? <br> **MT7473:** Yes - there's no money today its airline payroll and they don't; have the money [C.A.] / [L.A.] has to put money in <br> **MT7473:** Thinking tomorrow <br> **KT2046:** How much <br> **MT7473:** I told him I would call him at lunch with an update on the police <br> **KT2046:** And to what entity <br> **MT7473:** He said [C.A.] is asking questions how come we don't have any money etc <br> **KT2046:** Is he freaked out <br> **KT2046:** So maybe not good <br> **MT7473:** He's half freaked out <br> **KT2046:** Does he have a way <br><br> [. . . .] <br><br> **KT2046:** I am done <br> **KT2046:** Done with your stupid jobs that you told me would pay 15K each. <br> **KT2046:** Done having to beg for money <br> **KT2046:** I'm done <br> **KT2046:** How come no one ever just posts about me online <br> **KT2046:** I told you to take this shit with [C.F.] seriously and you didn't <br> **KT2046:** Look where we are now <br> **KT2046:** You're on a stupid call <br> **KT2046:** Don't yell at me <br> **KT2046:** Don't talk to me <br> **KT2046:** I am threatened daily <br> **KT2046:** I am done <br> **KT2046:** I wake up to threads <br> **KT2046:** I go to bed with threats <br> **KT2046:** I can make what you make in a month in 30 min <br> **KT2046:** I'm done <br> **KT2046:** Your stupid jobs screwed us <br> **KT2046:** You lied <br> **KT2046:** Said they'd pay you 15K <br> **KT2046:** You lied <br> **KT2046:** You abuse me <br> **KT2046:** You yell at all of us | *See* above, entry 33 for information about [C.F.] | | |

100

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | I originally said I needed 15K | | | |
| | | **KT2046:** | Now it's 10 | | | |
| | | **KT2046:** | This happens and people get angry | | | |
| | | **KT2046:** | I actually need close to 100 in the next week | | | |
| | | **KT2046:** | We are screwed | | | |
| 157 | 4/18/19 | **KT2046:** | Do you have cash | On April 18, 2019 $18,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7156 2019.04.29 (NAC_00000974) and [PM] 7158 2019.04.29 (NAC_00000975)<br><br>Bank Records show a $240 transfer from Kimberley's father into the Tews' joint bank account at NFCU x8486. NAVY_00000056.<br><br>*See* Indictment ¶¶ 23m 32, 33<br><br>*See* above, entry 153, for background on Kimberley Tew's Simple account | A, F, G, H, K, N | SW_FIL_003266 43; SW_FIL_003266 49- SW_FIL_003266 51; SW_FIL_003266 54- SW_FIL_003266 56 |
| | | **KT2046:** | We have no money in the accounts | | | |
| | | **KT2046:** | I have $54 avail in Simple | | | |
| | | **MT7473:** | I have 80 dollars | | | |
| | | **MT7473:** | You gave me this am | | | |
| | | **KT2046:** | I just transferred $240 into our joint account | | | |
| | | | [ . . . .[ | | | |
| | | **KT2046:** | From my parents | | | |
| | | | [ . . . .] | | | |
| | | **KT2046:** | JPMorgan Chase | | | |
| | | | [redacted business] | | | |
| | | | Wire Routing Number: [x]0021 | | | |
| | | | Account Number: [x]8260 | | | |
| | | **KT2046:** | [redacted address] | | | |
| | | | Ladera Ranch CA, 92694 | | | |
| | | **KT2046:** | Can you withdraw $600 from each of your 3 debit cards and make an $1,800 cash deposit for me? | | | |
| | | **KT2046:** | It's for $1,893 so you have to get cash from one of my cards | | | |
| | | **KT2046:** | Chase- $1893 cash | | | |
| | | | Name: A[redacted business], LLC | | | |
| | | | Account # [x]3680 | | | |
| | | | New York | | | |
| | | | "No refunds for bitcoins" | | | |
| | | | [ . . . .] | | | |
| | | **MT7473:** | Photo of deposit slip (57731424640__C8F311E2-618D-4333-B61B-00B39478994C.jpeg) | | | |
| | | | [ . . . .] | | | |
| | | **KT2046:** | If someone sends 5K can you withdraw it at bank | | | |
| | | **Kley(MT):** | Yes of course | | | |

101

**Government's _James_ Log**
**_United States v. Tew_, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | 1. Withdraw $600 from 5296 and other two cards NOT ending in 2863.<br>2. Withdraw $200 from card ending in 2863. | | | |
| | | **KT2046:** | Chase Bank - $2000<br>[redacted business]<br>[x]5925<br>State FL<br>"No refunds for bitcoins" | | | |
| | | **MT7473:** | Have the cash | | | |
| | | **MT7473:** | Making deposit | | | |
| | | **MT7473:** | Photo of deposit slip (57732489405__095EC057-F3CF-4C33-90B3-6F3EB44592AE.jpeg) | | | |
| 158 | 4/21/19 | **MT7473:**<br>**Kley(KT):** | So the plan is to take jons money and use it to leave ?<br>Here we go | | A D, I, J, K | SW_FIL_003334 74 |
| 159 | 4/22/19 | **KT2046:** | What's the update with [L.W.] | _See_ above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>M.V. is Kimberly Tew's mother<br><br>Bank records show a $600 withdrawal Tews' joint bank account at NFCU x8486. NAVY_00000056; They also show a $600 withdrawal from Michael Tew's checking account at | A, D, F, G, H, K, N | SW_FIL_003266 76-SW_FIL_003266 85 |
| | | **MT7473:** | He said he didn't see our message until this morning | | | |
| | | **MT7473:** | What am i asking him | | | |
| | | **KT2046:** | 2500 | | | |
| | | **MT7473:** | With 10k back? | | | |
| | | **MT7473:** | Asked | | | |
| | | **KT2046:** | What did he say | | | |
| | | **KT2046:** | It would be easier to do 5K this week and 5K next week but see what he says | | | |
| | | **KT2046:** | Maybe explain after | | | |
| | | **KT2046:** | He did say he could send $2.5 today | | | |
| | | **MT7473:** | He didn't get back to me I called he didn't answer | | | |
| | | **MT7473:** | He said he would do it | | | |
| | | **KT2046:** | When | | | |
| | | **MT7473:** | Saturday | | | |
| | | **KT2046:** | Ok. I sent him a reminder for the request I sent on Saturday. | | | |
| | | **MT7473:** | Ok | | | |
| | | **MT7473:** | I made the transfer request - likely hit tomorrow. — ACH - Can you send a paypal request? | | | |
| | | **KT2046:** | What | | | |

102

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | KT2046: | What | NFCU ending x3494. [NAVY_00000480] | | |
| | | MT7473: | That's what he just wrote me | | | |
| | | MT7473: | I don't get it | | | |
| | | KT2046: | He can send money via PayPal | *See* Indictment ¶¶ 32, 33 | | |
| | | MT7473: | Should I say hey I need today | | | |
| | | MT7473: | Yes | | | |
| | | MT7473: | Do you want to text him directly | | | |
| | | MT7473: | He's willing to help | | | |
| | | KT2046: | Attachment (IMG_0428) showing request to ebay@[PM].com for $2500 via paypal | | | |
| | | KT2046: | Sent request from mom's account | | | |
| | | MT7473: | Ok | | | |
| | | MT7473: | I sent him the image | | | |
| | | KT2046: | Do you think he's sending rn | | | |
| | | KT2046: | It will say from M.V. | | | |
| | | KT2046: | Got it | | | |
| | | MT7473: | He sent the money? | | | |
| | | KT2046: | Yes | | | |
| | | KT2046: | Can you withdraw $600 from our joint account using your debit and $600 from your checking account ending in 3464. Total $1,200 | | | |
| 160 | 4/23/19 | KT2046: | image of Google Voice account details (IMG_0441.jpeg). The screenshot shows a google voice number ending x3383 and forwarded email address kley@me.com | On April 23, 2019 $18,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7156 2019.04.29 (NAC_00000974) and [PM] 7158 2019.04.29 (NAC_00000975) | A, E, F, G, K, N | SW_FIL_003266 88-SW_FIL_003266 89; SW_FIL_003266 91-SW_FIL_003266 93 |
| | | Kley(MT): | She said your discover payment will post at midnight tonight | | | |
| | | KT2046: | Did it not go through | | | |
| | | Kley(MT): | No it did, this was all unprompted, she just said here is the balance in the account and $2,000 to discover will be debiting tonight at midnight | | | |
| | | Kley(MT): | So there's like 8500 - 2000 | | | |
| | | KT2046: | Can you go to bellco and withdraw $600 from our 7 debit cards and $500 from my Simple | | | |
| | | KT2046: | I transferred everything | Bank records show $600 withdrawals from accounts controlled by | | |

103

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|-------------------|-----------------|--------|
| | | | | Michael or Kimberley Tew on April 23, 219 from an ATM at Belloco. [e.g., NAVY_000000059; 00000481]<br><br>*See* above, entry 153, for background on Kimberley Tew's Simple account<br><br>*See* Indictment ¶¶ 23, 32, 33 | | |
| 161 | 4/24/19 | **JY1709:** | yeah we're good it's out | Message to Michael Tew<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, G | SW_FIL_003423 24 |
| 162 | 4/24/19 | **MT7473:**<br>**MT7473:**<br><br>[. . . .]<br>**KT2046:**<br>**KT2046:**<br>**KT2046:**<br><br>[. . . .] | I'm going to jail if I don't get you money<br>That's what you say<br><br><br>You dropped the ball on my credit card thing<br>How many cards have I lost<br>How many times did you not get paid on time | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* above, entry 86, for information about | A, B, C, E, F, G, I, J, K, N | SW_FIL_003267 03-SW_FIL_003267 33 |

104

## Government's *James* Log
### United States v. Tew, 20–cr–000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | KT2046:  I'm taking you off the bank account<br>KT2046:  Thanks for fixing my accounts<br>KT2046:  Thanks for doing nothing<br>KT2046:  I just lost all my btc<br>MT7473:  Do you want me to call all of your accounts?<br>KT2046:  Because of you<br><br>[. . . .]<br><br>MT7473:  We can use whatever cash we have left<br>MT7473:  I'll buy more<br>KT2046:  Yeah. Go get me 2K<br>KT2046:  Have [L.W.] send a PayPal<br>KT2046:  Or someone send me a google pay<br>KT2046:  PayPal is teathymelady@yahoo.com<br>MT7473:  I can go to mikes and get cash<br>KT2046:  GP is vtleycap@gmail.com<br>KT2046:  Bullshit<br>KT2046:  [L.W.] could PayPal it<br>MT7473:  If I ask and he says ok will you let me<br>KT2046:  You ducked up<br>MT7473:  [L.W.] won't do it<br>KT2046:  You ducked us<br>KT2046:  Yeah 5K<br>KT2046:  Cash<br>MT7473:  He wouldn't even respond to the other 500 we asked for<br>MT7473:  Ok<br>MT7473:  I'll ask<br>KT2046:  He'll make it 25<br>KT2046:  Like you offered<br>KT2046:  That's not true<br>MT7473:  That's a different conversation. Not a one night thing<br>KT2046:  He did reply<br>KT2046:  I see<br>MT7473:  He didn't reply to me<br>MT7473:  I didn't see a reply fro Him | L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>"GP" is short for Google Pay. "vtleycap@gmail.com" was an email address used by Kimberly Tew.  Its recovery email was kley@me.com and its recover telephone number was 917-446-2046. [ORD_00019129]<br><br>Records from paypal show that "teathymelady@yahoo.com" was registered in the name of Kimberley Tew's mother [PAY_00000092] | | |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------------|--|-------------------|------------------|--------|
| | | MT7473: | Ok I'll call [L.W.] | | | |
| | | MT7473: | When can we pay him back | | | |
| | | MT7473: | We told him all 10k tomorrow | | | |
| | | MT7473: | I have to ask [MM] | | | |
| | | KT2046: | You are a dead man | | | |
| | | MT7473: | What do you mean | | | |
| | | MT7473: | What do you mean | | | |
| | | MT7473: | What do you mean | | | |
| | | MT7473: | I can get cash from mike and make a btc atm deposit | | | |
| | | MT7473: | You know he sucks st google pay | | | |
| | | MT7473: | Calling you | | | |
| | | KT2046: | Stop | | | |
| | | KT2046: | You can't get cash | | | |
| | | KT2046: | I told you what to do | | | |
| | | MT7473: | I'm calling and asking now | | | |
| | | KT2046: | For what | | | |
| | | KT2046: | 10K | | | |
| | | MT7473: | For cash | | | |
| | | KT2046: | 25K | | | |
| | | KT2046: | How much | | | |
| | | MT7473: | He won't give it to me in a pinch | | | |
| | | KT2046: | I had it all planned | | | |
| | | MT7473: | I need a plan to pay it all back | | | |
| | | KT2046: | How much | | | |
| | | KT2046: | How much | | | |
| | | KT2046: | How much | | | |
| | | MT7473: | No more than 5 and I have to pay it all back when I get the next thing | | | |
| | | KT2046: | How much | | | |
| | | KT2046: | Doubt it | | | |
| | | MT7473: | Or bits at a time | | | |
| | | KT2046: | I don't want bits | | | |
| | | MT7473: | I have to pay him back at least bits at a time | | | |
| | | KT2046: | You saying you can't even get 5K | | | |
| 163 | 4/25/19 | KT2046: | Screenshot of text message conversation with host at casino (IMG_0562.jpeg) | On April 25, 2019 $18,750 is sent via ACH to Navy Federal | A, G, K, N | SW_FIL_003267 36- |
| | | KT2046: | Screenshot of text message conversation with host at casino (IMG_0565, | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | IMG_0566.jpeg, IMG_0567.jpeg) <br> **KT2046:** Screenshot of casino account summary (Screenshot_20190228-193211_Chrome.jpg) <br> **KT2046:** Bank: Chase <br> Account Name: [redacted[ <br> Wire Routing Number: [x]0021 <br> Account Number: [x]5415 <br> Address: <br> [redacted address] <br> Ladera Ranch, CA 92694 <br> **KT2046:** And can you send $5K to my Simple <br> **MT7473:** From joint account both? <br> **MT7473:** I should go to [redacted] at like 8:15 <br> **KT2046:** $5500 to Simple <br> **KT2046:** No <br> **KT2046:** That's the worst time <br> **MT7473:** Ok what time do you think <br> **MT7473:** You tell me <br><br> [. . . .] <br><br> **MT7473:** Wires out <br><br> [. . . .] <br><br> **KT2046:** 1 each of these $20. If they don't have the exact game font buy a substitute. (photo of lottery tickets IMG_0595.jpeg) <br> **KT2046:** 3 each of these 2 dollar games.(photo of lottery tickets IMG_0596.jpeg) <br> **KT2046:** 1 of this $10 game. No substitute.(photo of lottery tickets (FullSizeRender.jpeg) <br> **KT2046:** From: +19174462046 Kimberley Tew <br> Substitutes for $2/$3 games are fine. <br> **KT2046:** Can you buy 2 each of: <br> Powerball <br> Mega Millions <br> CO State Lotto | Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7156 2019.04.29 (NAC_00000974) and [PM] 7158 2019.04.29 (NAC_00000975) <br><br> Bank account record show wires of $5,000 and $5,500 from the Tews' joint bank account x8486. [NAVY_00000060] <br><br> *See* above, entry 153, for background on Kimberley Tew's Simple account <br><br> *See* Indictment ¶¶ 23, 32, 33 | | SW_FIL_0032674 1 |

### Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 164 | 4/29/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>[. . . .]<br><br>Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below email to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much. | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>There were two separate emails on this date with substantially similar content. Only invoices were different. | A, K, L | SW_FIL_000115 12<br><br>SW_FIL_000115 16<br><br>NAC_E_102459-NAC_E_102460<br><br>NAC_E_105452-NAC_E_105453 |
| 165 | 4/29/19 | On April 29, 2019 J.Y. used his business email account to forward the emails he had received from [PM]@gmail.com to a NAC employee, writing "Book both to 506505 please ! As you can see, invoice 7158 finally says **FINAL."** | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>*See* Indictment ¶¶11, 12, 13 | A, K, L | NAC_E_64830-NAC_E_64832 |
| 166 | 4/30/19 | **KT2046:**    KT 4769 $400<br>                MT 4974 $600 | On April 30, 2019 $38,640 is sent via | A, G, H, K, N | SW_FIL_003267 65- |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** 196tq77oNrLRTdPjqScjqaeRJi9JdUeEWq (QR Code (IMG_0863.jpeg))<br>**Kley(MT):** Can't get 600 from your 4769 card<br>**KT2046:** Marquette Federal Credit Union<br>Account: [x]0774<br>Routing: [x]2860<br>[M.V.]<br>Savings Account<br>[redacted address]<br>Marquette, MI 49855<br>$4,500<br>**KT2046:** Kimberley Tew<br>$5,500<br>(image of routing and bank account number (FillSizeRender.jpeg))<br>**KT2046:** $5,000<br>JPMorgan Chase Bank<br>Business Checking<br>Account Name: [redacted busienss name]<br>Wire Routing Number: [x]0021<br>Account Number:<br>[x]8260<br>Address:<br>[redacted addressp<br>Ladero Ranch, CA 92694<br>**KT2046:** Sorry it's Ladera Ranch (not Ladero)<br>**KT2046:** For my mom's wire make sure the note on the wire says SAVINGS ACCOUNT<br>**KT2046:** Marquette Community Federal Credit Union<br>**MT7473:** Need the account info for Marquette credit Union<br>**KT2046:** I sent it<br>**KT2046:** It's the top one<br>**MT7473:** Ok there it is<br>**MT7473:** She's saying the system won't let her send without the intermediary<br>**KT2046:** So look it up<br>**MT7473:** Routing number<br>**KT2046:** Image of wire routing instructions (IMG_0875)<br>**KT2046:** Can you ask when it will hit her account<br>**KT2046:** I don't understand | ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7156 2019.04.29 (NAC_00000974) and [PM] 7158 2019.04.29 (NAC_00000975)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. They also show a $4,500 wire and a $5,000 wire. [NAVY_00000061].<br><br>M.V. is Kimberley Tew's mother, who lives in Wisconsin.<br><br>*See* Indictment ¶¶ 23, 32, 33 | | SW_FIL_003267 69 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | Getting the fed numbers | | | |
| | | **MT7473:** | Three things got kicked back yesterday | | | |
| | | **MT7473:** | I think both our navient and the car | | | |
| | | **KT2046:** | Awesome | | | |
| | | **KT2046:** | Sent two PayPal payments ($1,500 + $1,000 = $2,500) (Screenshots of payment requests (IMG_0914.jprg and IMG_0915.jpeg) | | | |
| | | | [redacted] is paid in full plus $500 of interest | | | |
| | | **KT2046:** | Attachment | | | |
| | | **KT2046:** | PayPal: Transaction Details.pdf | | | |

**May 2019**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 167 | 5/1/19 | **KT2046:** | Did you send it | n April 30, 2019 $38,640 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7156 2019.04.29 (NAC_00000974) and [PM] 7158 2019.04.29 (NAC_00000975) | A, G, H, K, N | SW_FIL_003267 73- SW_FIL_003267 80 |
| | | **MT7473:** | Yes about 45 mins ago | | | |
| | | **KT2046:** | $2500 chase | | | |
| | | | Bank Name: CHASE Assest | | | |
| | | | Account Name: [redacted business name] | | | |
| | | | Account Number: [x]9727 | | | |
| | | | Account Type: Business Checking | | | |
| | | | Account Location:[redacted address] Miami FL 33172 | | | |
| | | | "No refunds for bitcoins" | | | |
| | | **KT2046:** | $1700 BOA | | | |
| | | | [redacted business name] | Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | | |
| | | | [x]8121 | | | |
| | | | Florida | | | |
| | | | "No refunds for bitcoins" | | | |
| | | **Kley(MT):** | Both chase | | | |
| | | **KT2046:** | $1,700 is Bank of America | | | |
| | | **KT2046:** | [redacted] asked how long for receipts I said 10 min for Chase and 5-10 after that for Bank of America | *See* Indictment ¶¶ 23, 32, 33 | | |
| | | **KT2046:** | I need you to log in to my Navy Federal to see how much is in each account | | | |
| | | **KT2046:** | Did you check my account | | | |
| | | **KT2046:** | I need your help!!! | | | |
| | | **KT2046:** | How hard is it to google what time will chase try to pull a check and print | | | |

110

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT7473: | out a list of btc options for selling | | | |
| | | MT7473: | Chase will make funds available from non chase checks in two business days from deposit | | | |
| | | MT7473: | Directly from the customer agreement | | | |
| | | MT7473: | I have all the btc atm information | | | |
| | | KT2046: | When will they pull though | | | |
| | | MT7473: | We have until 8pm to cash out up to 5k and 2k plus 3k two diff locations and the other one up to 4500 24 hours | | | |
| | | KT2046: | Sam is supposed to help me sell 8K tonight via Zelle | | | |
| | | KT2046: | I'm worried the check is going to bounce | | | |
| | | KT2046: | But when you make credit card payments to chase it takes forever to clear vs my discover card | | | |
| | | MT7473: | Chase is two -3 business days to clear funds on an ach which is same like check | | | |
| | | MT7473: | But I wouldn't risk it | | | |
| | | MT7473: | Up to you | | | |
| | | KT2046: | Ok but how am I supposed to deposit now? | | | |
| | | KT2046: | Your advice to not risk it | | | |
| | | MT7473: | What do you want to do | | | |
| | | MT7473: | I don't understand | | | |
| 168 | 5/2/19 | KT2046: | I'm transferring like $300 to our joint let's get north | Bank records $300 transfer into the joint account at NFCU x8486. At one point in the day the balance had gone down to approximately $500. [NAVY_00000063]. | A, G, H, K, N | SW_FIL_00326783-SW_FIL_00326789 |
| | | KT2046: | Transferred $450 to our joint | | | |
| | | MT7473: | Give you more time | | | |
| | | KT2046: | Sure last time it took forever | | | |
| | | KT2046: | Whatever you're doing is not important | | | |
| | | KT2046: | I need your help with this shit | | | |
| | | MT7473: | I'm on with your mom | | | |
| | | MT7473: | She's at he bank | | | |
| | | KT2046: | She needs to call PayPal to cancel this $1,500 | | | |
| | | KT2046: | Echeck | | | |
| | | KT2046: | Where are they wiring | | | |
| | | KT2046: | Into what account | | | |
| | | KT2046: | KT *4769 $400 | | | |
| | | | KT *9396 $600 | | | |
| | | | $1,000 total | | | |
| | | | Cash deposit at Bank of America | | | |

111

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | KT2046: | BofA- $1000 cash only<br>name: [redacted business name]<br>Acct# [x]6873<br>Minnesota<br>"No refunds for bitcoins purchased on localbitcoins.com"<br>Got it? | | | |
| | | KT2046: | You're not going to like this idea but what do we have to lose. We need to get an ACH sent out today (also on Monday). The one today for as much as possible. If you can make that happen I'll fix all our issues this weekend. I promise. | | | |
| | | MT7473: | Photo of deposit slip (57851141279__B2391E24-A54D-4AE7-916A-F2C061449BEB.jpeg) ($1,000 deposit of 10 $1000 bills into Bank of America Account) | | | |
| | | KT2046: | Can you check our joint account to make sure there is $800 in there? | | | |
| | | Kley(MT): | 828.90 and i pushed my att to Monday thats the latest I can push it | | | |
| | | KT2046: | [redacted name] 4_10_2019 copy.xlsx | | | |
| 169 | 5/6/19 | MT7473: | Jon just said the plan is to pay all of it at once tomorrow and he will call me later | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, D, F, G, H, K, N | SW_FIL_003268 05-<br>SW_FIL_003268 10 |
| | | MT7473: | I know you don't want to wait, I'll talk to him at luch | | | |
| | | MT7473: | I still have $43 of stellar we can convert to BTC | | | |
| | | KT2046: | Ok you can do that on the blockchain wallet app where the stroller is by going to exchange. | | | |
| | | MT7473: | Yes I can do I ton my phone convert to BTC and send to you through my blockchain wallet. Work? | | | |
| | | KT2046: | Yes | | | |
| | | MT7473: | I have the btc | | | |
| | | | [. . . .] | | | |
| | | KT2046: | 3Q4BLjZG85Y2fnodvZsSTd5LSeV476HkyQ | | | |
| | | KT2046: | Did you text Jon | | | |
| | | MT7473: | yes | | | |
| | | MT7473: | He said all tomorrow but is calling me at lunch | | | |
| | | KT2046: | What does that mean | | | |
| | | KT2046: | He won't send anything today | | | |

112

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** I'll know in the next 30 minutes<br>**KT2046:** How are we going to manage the next 2 days<br>**KT2046:** He said all tomorrow<br>**KT2046:** Did you send the BTC<br>**KT2046:** Wake up<br>**KT2046:** 3Q4BLjZG85Y2fnodvZsSTd5LSeV476HkyQ | | | |
| 170 | 5/7/19 | **MT1312:** How are you in 40 mins<br>Just getting going<br>**JY1709:** Works<br>**MT1312:** Ok wait - confirming the amounts.  $19890 + $49750<br>**MT1312:** ?<br>**JY1709:** Yes<br>**MT1312:** done.  Thank god.<br>**JY1709:** Both ACHs are out. WE ARE DONEEEEEEE<br>**MT1312:** THANK YOU | On May 8, 2019, $49,750 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7156 2019.04.29 (NAC_00000974) and [PM] 7158 2019.04.29 (NAC_00000975)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, F, G, H, K | SW_FIL_0034232 4 |

113

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 171 | 5/8/19 | **KT2046:** | [redacted name]e 4_10_2019 copy.xlsx | x3494 is an account at NFCU on which Michael Tew was sole signatory. | A, F, G, H, K, N | SW_FIL_003268 15- SW_FIL_003268 16 |
| | | **KT2046:** | I need you to call to do a 5K wire to [redacted business] and 5.5K to my Simple | | | |
| | | **KT2046:** | Nm. I am doing both now. | x5336 is an account at NFCU on which Michael Tew was sole signatory. Bank records show a $9,000 wire from that account on May 8, 2019. [NAVY_0000483] | | |
| | | **KT2046:** | What is [redacted] Zelle | | | |
| | | **MT7473:** | [redacted telephone number] | | | |
| | | **KT2046:** | Are you doing the wire for my mom | | | |
| | | **KT2046:** | For 5K? | | | |
| | | **MT7473:** | If you want yes | | | |
| | | **MT7473:** | What are we doing about [L.W.]. You tell me | | | |
| | | **KT2046:** | I will know later today | | | |
| | | **KT2046:** | I need to get the wire out to my mom savings | | | |
| | | **KT2046:** | 5K | Bank record show a $5,000 withdrawal by wire from the Tews' joint account at NFCU x8486. [NAVY_0000064-65] | | |
| | | **MT7473:** | Ok. If he asks - he hasn't yet but I'm sure he will - i'll let him know | | | |
| | | **MT7473:** | I know you're under a lot of pressure but I dd tell him we would send him $ today | | | |
| | | **KT2046:** | I'm locked out of Navy Federal | | | |
| | | **MT7473:** | me too but I'm getting the wire out to kraken now | | | |
| | | **MT7473:** | 9K | Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020. | | |
| | | **MT7473:** | after that I see only 16750 in the shared, 6K in my 3494, and 6K in my 5336 left | | | |
| | | **KT2046:** | I'm locked out!! | | | |
| | | **KT2046:** | Can you log in | | | |
| | | **MT7473:** | I can log in to see the high level but after that it says we need to call because of the high level fo transactions. Getting this wire out before I ask them | | | |
| | | **MT7473:** | I cannot log into individual accounts | | | |
| | | **KT2046:** | You can't see anything | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | **KT2046:** | Nothing | | | |
| | | **KT2046:** | High level | | | |
| | | **KT2046:** | Dude | | | |
| | | **KT2046:** | Did they close us | | | |
| | | **MT7473:** | kraken is out | | | |
| | | **KT2046:** | Still need to get 6K out to my mom so maybe we have to go to branch | | | |
| | | **KT2046:** | Can you look at historically what time we sent fiat and when it was available on Kraken | | | |
| | | **MT7473:** | Screenshot of wire times (Messgages Image(3094148752).jpeg) | | | |

114

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** Screenshots of emails of wire confirmations (IMG_1245.jpeg, IMG_1244.jpeg, IMG_1243.jpeg) (a receipt for $5,000 on x3494 account related to [M.M.]] <br> **KT2046:** Screenshots of emails of wire confirmations (IMG_1248.jpeg) (a $1,000 receipt for a wire from x3494) <br> **KT2046:** Screenshots of emails of wire confirmations (IMG_1243.jpeg) <br> **KT2046:** Screenshots of emails of wire confirmations (IMG_1244.jpeg) <br> **KT2046:** Screenshots of emails of wire confirmations (IMG_1245.jpeg) <br> **KT2046:** Screenshots of emails of wire confirmations (IMG_1246.jpeg) (a $1,000 receipt for a wire from x3494) <br> **KT2046:** Screenshots of emails of wire confirmations (IMG_1250.jpeg) <br> **MT7473:** Screenshot of wire times (Messages Image(3284434332).jpeg0 <br> **KT2046:** Attachment – PDF (record of $35,000 wire transfer from NFCU) <br> **MT7473:** I cannot find your mom's wire instructions anywhere do you mind resending <br> **MT7473:** Got it never mind <br> **KT2046:** Pls come back soon <br> **MT7473:** Coming now <br> **KT2046:** I need you to send 5K out to [redacted business name] from our joint <br> **KT2046:** Business Checking: <br> Bank: JPMorgan Chase <br> Account Name: [redacted business name] <br> Wire Routing Number: [x]0021 <br> Account Number: <br> [x]8260 <br> Address: <br> [redacted address] <br> Ladera Ranch, CA 92694 <br> **KT2046:** Run <br> **Kley(MT):** To his Persobalbor business <br> **KT2046:** It says BUSINESS <br> **Kley(MT):** Out <br> **KT2046:** [redacted]'s Zelle receipt <br> **MT7473:** Kraken hit <br> **KT2046:** 149c4qZoRMKQBBa3tSfiMkQ7y7VBhfKfjK | *See* Indictment ¶¶ 23, 32, 33 | | |

115

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 172 | 5/9/19 | **KT2046:** | Chase<br>$4700 cash chase<br>Name: [redacted business name]<br>ACCOUNT # [x]1356<br>Florida<br>"No refunds for bitcoins"<br>Got it? | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, F, G, H, K, N | SW_FIL_003268 27-<br>SW_FIL_003268 36 |
| | | **Kley(MT):** | Attachment | | | |
| | | **MT7473:** | At bank what am I getting | | | |
| | | **KT2046:** | $15K | | | |
| | | **KT2046:** | Or $20? | | | |
| | | **KT2046:** | Going to deposit $12K | | | |
| | | **MT7473:** | It's up to you how much you want you have left for Vegas or whatever plus whatever we're doing with [L.W.] | | | |
| | | **MT7473:** | Have cash | | | |
| | | **KT2046:** | Ok head to chase | | | |
| | | **KT2046:** | Please deposit the correct amount to the correct account (you are a customer making business payments so this is 100% normal):<br>2 CHASE business accounts:<br>Total: $9000.00<br>(1) $3,733.00 chase<br>number: [x]7907<br>Name: [redacted business name]<br>Florida<br>(2) $5,267 cash<br>Name: [redacted business name]<br>Account # [x]5257<br>Address: [redacted address], Miami Florida<br>(1) GET A SEPARATE RECEIPT FOR EACH DEPOSIT<br>(2) WRITE "NO REFUNDS FOR BITCOINS" on each receipt<br>Got it? | | | |
| | | **KT2046:** | Going to deposit $9K now and he has a $3K one we can do at Bank of America later if | | | |
| | | **MT7473:** | Ok so 14k right | | | |
| | | **MT7473:** | Photo of deposit slip (57911483661__BC99071E-C18B-43CD-8C2D-0FE26B65C288.jpeg) ($5,267 deposit into Chase) | | | |
| | | **MT7473:** | Photo of deposit slip (57911484245__AA152E06-2796-470D-AD6F- | | | |

116

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | 0944C48C8FCD.jpeg) ($3,733 deposit into Chase)<br>**KT2046:** (1) BOFA BUSINESS - $1000<br>NAME: [redacted business]<br>ACC: [x]6551<br>FL 33166<br>(2) BOFA BUSINESS- $5000<br>[redacted business name]<br>ACC: [x]1173<br>FL 33166<br>On each:<br>"No refunds for bitcoins"<br>Got it?<br><br>[. . . .]<br><br>**Kley(MT):** Photo of deposit slip (57912263319__5CB36C40-44B5-42D6-854D-643DE3936EF9.JPG) ($5,000 deposit into Bank of America)<br>**Kley(MT):** Attachment<br>**KT2046:** Did they ask for bank statements<br>**Kley(MT):** Wells and I see Zelle, but never used it.<br>**Kley(MT):** From [L.W.]<br>**KT2046:** Don't tell him money hit ask for Wells info<br>**KT2046:** You sent the same receipt twice<br>**KT2046:** From: +19174462046 Kimberley Tew<br>Need 1K receipt<br>**KT2046:** Photo of deposit slip (IMG_1299.jpeg)<br>Status: Read<br>Need 1K receipt<br>**KT2046:** Photo of deposit slip (IMG_0280.jpeg)<br>**KT2046:** Photo of deposit slip (IMG_1293.jpg)<br>**KT2046:** Photo of deposit slip (IMG_1297.jpeg) | | | |
| 173 | 5/10/19 | **KT2046:** Don't freak out on me. Jon used to do the ACH himself. I don't know why he's handing them to a AP other than to set us up. Tell him I got screwed on a btc deal. He needs to pay that invoice himself today again. I can't do this anymore. We have to pay [L.W.] and my people are cashing out soon. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them | A, D, F, G, H, I, J, K, N | SW_FIL_003268 37-SW_FIL_003268 49 |

117

**Government's _James_ Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** Don't tell him a story. Tell him to just pay the invoice again himself and we will buy bitcoin split in 1/2. Ask if he can hold ours until it hits 10K.<br>**KT2046:** He can pay the invoice himself<br>**KT2046:** By the way I see you doing WAY MORE than $5K of work for [redacted]. You convinced me it was a good opportunity because he would pay you $15k a month. Don't come out here and yell at me.<br>**KT2046:** Who is [redacted[<br>**Kley(MT):** Yeah I am recutting my deal with them. Its totally a shitty deal. I have discussed with Mike already. he just got back yesterday and he has the flu for 9 days. I need to talk to him in person - this is not what I signed up for. And he knows it<br>**Kley(MT):** She's the head accounting / sales / person at [cannabis company]<br>**KT2046:** Heard that more than once. You'll come back with some equity bs.<br>**KT2046:** You will never take responsibility<br>**Kley(MT):** I need to find MORE jobs or more work somewhere<br>**Kley(MT):** asap<br>**Kley(MT):** I'm working on that<br>**Kley(MT):** It takes tie<br>**KT2046:** You've said that since June. Almost a year.<br>**KT2046:** Leave me alone. I'm working. stop texting.<br>**Kley(MT):** Ummmm we had national at that time I had no time<br>**KT2046:** Stop<br>**KT2046:** You are costing me money<br>**KT2046:** I don't need 70<br>**KT2046:** Get 1/2<br>**KT2046:** I need you to pull out $600 from my 4 debit cards and $600 from your 0816 card. And $500 from Simple. That's $3,500.<br>**KT2046:** Deposit is at Bank of America<br>**KT2046:** When can you go<br>**KT2046:** Hello<br>**KT2046:** You are crazy. Our neighbors can hear you.<br>**MT7473:** 2863 not working<br>**MT7473:** Have the rest of the money<br>**KT2046:** BofA- $3500 cash only<br>Business name: [redacted name]<br>Acct# [x]6873<br>Minnesota | and the Tews' role in making those requests)<br><br>Michael Tew was performing work for cannabis companies at this time.<br><br>_See_ above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>Bank records show a $600 transfer into the NFCU joint bank account x8486. [NAVY_0000065] | | |

118

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | "No refunds for bitcoins" | | | |
| | | **KT2046:**    Try your debit | | | |
| | | **MT7473:**    I might be able to get the 19k | | | |
| | | **KT2046:**    For the joint | | | |
| | | **MT7473:**    It's under 20k | | | |
| | | **MT7473:**    Just if i say don't ask any questions I need it and you'll get your bitcoin | | | |
| | | **MT7473:**    It's under 20k just send it and we'll finalize al invoices Monday | | | |
| | | **MT7473:**    What do you think | | | |
| | | **KT2046:**    Did you get the $3,500 | | | |
| | | **MT7473:**    Yes | | | |
| | | **KT2046:**    Is there a line? | | | |
| | | **MT7473:**    Moved 600 from 3494 into joint | | | |
| | | **MT7473:**    At the teller | | | |
| | | **MT7473:**    Photo of deposit slip (57919783239__B6089896-6A1C-42CC-BF05-ADCFCB9C2219.jpeg) | | | |
| | | [. . . .] | | | |
| | | **KT2046:**    Where are you | | | |
| | | **KT2046:**    I can't reach you | | | |
| | | **KT2046:**    Tried you 100x | | | |
| | | **KT2046:**    Total: $2400 | | | |
| | | (1) Wells Fargo $1698 cash | | | |
| | | Name: [redacted business name] | | | |
| | | Account # [x]8158 | | | |
| | | Florida | | | |
| | | (2) $702 cash | | | |
| | | Name: [redacted business name] | | | |
| | | Account # [x]3114 | | | |
| | | Florida | | | |
| | | On each write: | | | |
| | | "No refunds for bitcoins" | | | |
| | | Got it? | | | |
| | | **MT7473:**    Just got here getting the cash | | | |
| | | **MT7473:**    Photo of Deposit slip (57921958813__14E31911-C945-461C-8893-C003D3FB484C.jpeg) | | | |
| | | **MT7473:**    Photo of deposit slip (57921959376__36A74FC0-9AB6-4B4F-B68A- | | | |

119

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | 1AB7A878C76C.jpeg) | | | |
| | | MT7473: | In car on way back | | | |
| 174 | 5/10/19 | MT1312: | I need you to resend the original $39,780 Asap for Monday.  This is for the ACTUAL [PM].  I know you are going to be pissed and angry, but no fucking around.  Too much risk associated with [PM] and he started asking a lot of questions because of that one $20K that hit his account directly.  If you can resend that $39K today for Monday, we'll finalize all of hte invoices on Monday and be done with this all.  No loose ends.  Just trust me - not worth discussing. | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>See entry 134 above, reflecting discussions regarding $20,250 payment from PM that was directed to L.W.'s bank account at Access Bank. NAC_00000308. | A, F, G, H, I K | SW_FIL_003423 24 |
| | | MT1312: | Ok - I can't get him on the phone this very second, but I know that $40K will do it, that was what we discussed.  Here is what we will do - send to the SAME account, when he knows I have the funds I 'll get him to sign the NDA / non disparagement / release document and he will get his Money on Monday once it hits my account. | | | |
| | | MT1312: | Its the safest play. | | | |
| | | MT1312: | I WILL talk to him today and resolve this.  You have my word. | | | |
| | | MT1312: | Teh rest of that other stuff is already done. | | | |
| | | JY1709: | Send $40K to your account??? | | | |
| | | MT1312: | I promise you .  I'm not going to touch it. Its to resolve this matter.  I will send it directly to him.  once ih ave hte docs signed.  He's not a shakedown artist, he just needs t one quieted. | | | |
| | | MT1312: | I wouldn't say unless I KNEW | | | |
| | | JY1709: | 40 fuckin thousand. Unreal | | | |
| | | MT1312: | Everyone gets $ except us | | | |
| | | MT1312: | Time to move on | | | |
| | | MT1312: | Ha. And what about the BTC??? | | | |
| | | MT1312: | Like I was supposed to have that too but I see that's not happening either | | | |
| | | MT1312: | Whatever | | | |
| | | MT1312: | Yes we're sending that. As agreed.  All of our agreements stand. | | | |
| | | J.Y: | $40K is out. | | | |
| | | JY1709: | $40K even | | | |
| | | MT1312: | ok.  I'll take care of it with him, you have my WORD.  Then we never have to deal with it AGAIN.  guaranteed. | | | |
| | | MT1312: | Enjoy the weekend ad have like 20 beers for me  **JY1709::**     All good. | | | |
| | | Have a | good weekend | | | |

120

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 175 | 5/15/19 | MT1312: | Can you send $19K - the last 19K - to close out [PM] situation.  urgent or I wouldn't ask. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>On May 16, 2019, $19,900 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7201 2019.05.13 (NAC_00000558)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. [NAVY_00000067]<br><br>*See* Indictment ¶ 25 (alleging that Tews | A,C, E, F, G, H, I, K, J, N | SW_FIL_003423 24 |
| | | MT1312: | He's holding me up and its not a good person to be on wrong side with.  AND I can get you 2BTC asap.  I know you don't care, but you will.  Look where it's headed. | | | |
| | | JY1709: | Jesus Christ | | | |
| | | MT1312: | Trust me I know.  Just try not to think too much about it...I'm not.  I'm just trying to protect the situation. | | | |
| | | JY1709: | WERE ALMOST AT $1MM | | | |
| | | MT1312: | let's talk about auditors and accounting tonight. | | | |
| | | MT1312: | After work | | | |
| | | JY1709: | this is the 8th payment to PM in the past 30 days. Over $200K | | | |
| | | JY1709: | And I still don't have a fucking piece of Btc. You've said this is the last one a million times | | | |
| | | JY1709: | Youve given me your word a million times | | | |
| | | MT1312: | I don't have anytin neither.  I know. | | | |
| | | JY1709: | You've lied to me a million times | | | |
| | | MT1312: | I haven't lied to you.  I've told you what I promised. | | | |
| | | JY1709: | So why would I trust you now?? | | | |
| | | MT1312: | I'm not lying.  I'm not | | | |
| | | JY1709: | Hahahaha until next week | | | |
| | | JY1709: | When you ask for more | | | |
| | | JY1709: | and the week after | | | |
| | | JY1709: | And the week after | | | |
| | | JY1709: | Like if you have no BTC, how can you get me 2 ASAP? Makes zero sense. | | | |
| | | JY1709: | Until you say, ooooo can you send it back??? | | | |
| | | MT1312: | No I mean I haven't gotten anything out of all this - I'm not saying we don't ave it.  And of course not going to ask for it back | | | |
| | | JY1709: | Well you have every other time. Look I know I don't know what you're dealing with, but this is fucking bullshit. You desperately needed $40K Friday, now $19K what's to say you won't need more ??????? | | | |
| | | JY1709: | Seriously though??? | | | |
| | | JY1709: | i'm not stupid and I'm not greedy.  This is not about any of that. | | | |
| | | JY1709: | And if you have 2BTC to send ASAP, then why do you need $19K???? | | | |
| | | MT1312: | firstly [L.W.] doesn't use BTC.  he hates it.  Secondly I don't have the 2BTC - Kimberley is going to get it for you. I wish I had 2 BTC! | | | |
| | | JY1709: | How tho?? How does that even make fucking sense??? | | | |

121

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT1312: | she has other investors, legitimate wealthy guys that are buying BTC through her right now.  Its weird to explain but they are too old to use the exchanges. | gave Yioulos bitcoin as part of the fraud) | | |
| | | MT1312: | Totally separate from any of this.  NY people.  Not my people, I don't know any of them.  Its her own thing. | | | |
| | | MT1312: | She can get it. | | | |
| | | MT1312: | I'm keeping her away from all this | | | |
| | | JY1709: | ?????????? | | | |
| | | MT1312: | what does question mean sorry - we're both smart people.  In some ways you're smarter than I am.  We need to think about this analytically and put it behind us. | | | |
| | | JY1709: | Why aren't you answering?? Which account? This is the fucking last and I mean it, the fucking last time. I can't do this anymore | | | |
| | | JY1709: | Which PM account? The real one or yours? | | | |
| | | MT1312: | AT&T is gone from my building!  Its fucked up | | | |
| | | MT1312: | Send to mine, nothing to him until I have his signature | | | |
| | | MT1312: | Only FaceTime audiotapes | | | |
| | | MT1312: | Audio | | | |
| | | MT1312: | Like overnight - zero bars | | | |
| | | MT1312: | Send like $19,650 and we'll talk tonight to get the invoices straight.  We have to hav the right PNL allocations | | | |
| | | JY1709: | I just sent it..19,900 | | | |
| | | MT1312: | Perfect!!!  What time are you free later. | | | |
| | | JY1709: | Lets talk tomorrow morning if you can | | | |
| | | JY1709: | Tonight I'm swamped | | | |
| | | MT1312: | Yeah that's no problem | | | |
| | | MT1312: | Got. it | | | |
| 176 | 5/20/19 | MT7473: | 58008834271__63E3E49D-94D1-476D-B27B-A89F4C5D4B14.jpeg 37QcAzceV4SaCVd5YWXAiqDYMbGRGnX3Yw | Bank records show a $1,200 transfer from Michael Tew's account x3494 to Kimberley Tew. [NAVY_00000491. Bank records also show a transfer of money | A, G, H, K, N | SW_FIL_00342323; SW_FIL_00326907-SW_FIL_00326912 |
| | | MT7473: | Call me all cards saying we are at limits | | | |
| | | MT7473: | Have not tried the 9396 cars | | | |
| | | MT7473: | Nothing!!!! | | | |
| | | | Ok | | | |
| | | | One sec | | | |
| | | | Deposit $1,220 into that account | | | |
| | | MT7473: | Ok I'm so sorry | | | |

122

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | Our cards are all jammed up<br>Is nothing coming in for money<br>No | from an account in the name of Kimberley Tew's father to the NFCU joint account x8486 and transfer from a checking account, followed by multiple withdrawals at different ATMs.<br>[NAVY_00000081]<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶¶ 23, 32, 33 | | |
| | | **MT7473:** | I have to pressure him in the am very hard<br>Great | | | |
| | | **MT7473:** | Have cash | | | |
| | | | [. . . .] | | | |
| | | **KT2046:** | We are screwed | | | |
| | | **KT2046:** | Was planning on money tomorrow | | | |
| | | **KT2046:** | Unless we can get a PayPal | | | |
| | | **Kley(KT):** | 17Vmtxwpzq3P5DF4TDbNUdbD818rLMZhvu (QR Code (IMG_2783.jpeg)) | | | |
| | | **MT7473:** | Have cash headed to atm now | | | |
| | | **Kley(KT):** | Let me know when you're done there | | | |
| | | **MT7473:** | Screenshot of btc atm (58002081783__2978C29C-8921-4CAD-A3EF-87689FE223F8.jpeg) ($2,200 deposit into KBTEller.com) | | | |
| | | **MT7473:** | Screenshot of btc atm (58002083092__CD51B77C-9AFF-4F16-B5FC-57A5BBE1721E.jpeg) ($2,200 deposit into KBTEller.com) | | | |
| | | **MT7473:** | On way back | | | |
| | | **Kley(KT):** | Bank of America- $2420 cash<br>Business: [redacted business name]<br>Account # [x]6832<br>Sacramento, California<br>Please write "no refunds for bitcoin purchase" on receipt and TEXT ME A COPY of the receipt<br>Got it?<br>Status: Sent | | | |
| | | **Kley(KT):** | It's for $2,420 | | | |
| | | **MT1312:** | Ok | | | |
| | | **Kley(KT):** | Shit it's 3:30 | | | |
| | | **Kley(KT):** | Did you think of something for Jon | | | |
| | | **MT1312:** | Funds are in joint account you can move them | | | |
| | | **Kley(KT):** | Jon?? | | | |
| | | **Kley(KT):** | Nothing tomorrow | | | |

123

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|-------------------|------------------|--------|
| | | **MT1312:** | photo of deposit slip (58007589604__D2F021F0-A806-456A-9770-4C2451679744.jpeg) | | | |
| | | **Kley(KT):** | It's in your 3464 account | | | |
| | | **MT7473:** | Forgot your moms pin | | | |
| | | **Kley(KT):** | [redacted pin] | | | |
| | | **MT7473:** | All set have cash | | | |
| 177 | 5/21/19 | **MT7473.:** | Photo of PayPal transfer to [M.V.] (IMG_0253.jpeg) | M.V. is Kimberley Tew's mother | A, C, G, H, I, J, K, N | SW_FIL_0034 23 |
| | | **MT1312:** | Working on it | | | |
| | | **KT2046:** | Maybe get his wife a gift | Bank records show a $6000 ATM withdrawal from NFCU joint account x8486 [NAVY_00000083 | | SW_FIL_003269 12- |
| | | | [ . . . .] | | | SW_FIL_003269 23 |
| | | **KT2046:** | Deposit will be at Bank of America | *See* Indictment ¶¶ 23, 32, 33 | | |
| | | **KT2046:** | It looks like you pulled $600 from all my cards except 2863 | | | |
| | | **KT2046:** | If you can withdraw $600 from joint with your card you can try to withdraw $300 from my 2863 card | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | | |
| | | **M.T.:** | OK I have 3000 | | | |
| | | **M.T.:** | All set | | | |
| | | **KT2046:** | Try to withdraw $300 from 2863 | | | |
| | | **M.T.:** | Ok got 3300 | | | |
| | | **KT2046:** | 1 sec | | | |
| | | **KT2046:** | $3,300 cash BofA / Name: [redacted name] / Account #: [x] 3993 / Florida | | | |
| | | | [ . . . .] | | | |
| | | **Kley(KT):** | CALL ME | | | |
| | | **Kley(KT):** | REPLY | | | |
| | | **Kley(KT):** | Don't ignore me | | | |
| | | **Kley(KT):** | I was talking and you hung up with | | | |
| | | **MT7473:** | I'm trying to get Jon | | | |
| | | **Kley(KT):** | I'm telling everyone you are holding the crypto | | | |
| | | **Kley(KT):** | Try dealing with the pressure | | | |
| | | **MT7473:** | Ok | | | |
| | | **Kley(KT):** | That's what you want | | | |
| | | **MT7473:** | Ok | | | |

124

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **Kley(KT):** You are a liar<br>**Kley(KT):** You said you were going to call Jon<br>**Kley(KT):** Fuck Yoo!<br>**MT7473:** No I didn't<br>**Kley(KT):** Stop!!<br>**Kley(KT):** You're looking at fish<br>**Kley(KT):** You are useless<br>**MT7473:** If I'm useless then why ask me to get money for you<br>**Kley(KT):** You're an idiot<br>**Kley(KT):** All the money went to you<br>**Kley(KT):** Don't try to pin anything on me<br>**Kley(KT):** You're a selfish<br>**Kley(KT):** Person<br>**MT7473:** Only when we don't have a ton of money does it come out<br>**MT7473:** I'm not selfish at all<br>**Kley(KT):** And you're trying to sabotage Jon<br>**Kley(KT):** Good going<br>**Kley(KT):** He will never talk to you again<br>**MT7473:** I'm not trying to sabotage it<br>**Kley(KT):** You lied<br>**Kley(KT):** You said you'd make it happen<br>**MT7473:** I lied about what<br>**MT7473:** I will<br>**Kley(KT):** Can you ask Mike what is the best way to pay him back?<br>**Kley(KT):** PayPal, cash deposit?<br>**Kley(KT):** Deliver him cash<br>**MT1312:** He says any of that is fine<br>**MT1312:** He doesn't care<br>**Kley(KT):** If you get it from dumbo we will pay him sooner<br><br>[. . . .]<br><br>**Kley(KT):** Sold another 1K. It's in our joint account. | | | |
| 178 | 5/22/19 | **MT7473:** Ok<br>**MT7473:** Getting receipts now<br>**MT7473:** I have not spoken to Jon yet | Bank records show wire transfers of $5,000 and $5,500 out of the | A, D, F, G, K, N | SW_FIL_003423 24; |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** 58024086352__20A2A24C-87D3-4B24-BF37-5AE696BE52CA.jpeg<br>**MT7473:** 58024086786__47B4677C-4E2F-440D-9EDD-E172C06F3659.jpeg<br>**MT7473:** The third btc confirmed<br>**MT7473:** Send it here<br>**MT7473:** 1HPUnjhkTnLc38MyvkJkshBnGYWYnRCAD2<br><br>[ . . . .]<br><br>**Kley(KT):** We need to get another wire for Friday<br>**Kley(KT):** I played last night on drugs and lost<br>**Kley(KT):** I need you to send 5K to [redacted business] and 5.5K to my Simple<br>**MT7473:** You said you wouldn't do that<br>**MT7473:** I'll send the wires<br>**MT7473:** You still want the ticket things?<br>**MT7473:** Am I sendinf 1:3 to wells ?<br>**Kley(KT):** Can you come in and shut off my small iPad I need sleep<br>**Kley(KT):** Please send those two wires for me!!!<br>**Kley(KT):** Can you white out the address and send back to me<br>**MT7473:** yes<br>**MT7473:** (Payment_Receipt May 22.pdf)<br>**MT7473:** Got 600 from your 4 accounts plus my 3 plus 500 from console<br>**MT7473:** Simple<br>**Kley(KT):** 4700<br>**Kley(KT):** Chase<br>**Kley(KT):** Deposit<br>**Kley(KT):** Chase<br>Total $4700<br>(1) $1715 cash<br>number: [x]7907<br>Name: [redacted business name]<br>Florida<br>(2) $2985 cash<br>[redacted business name]<br>Account: [x]6601<br>Miami, FL<br>Got it?<br>**Kley(KT):** | NFCU joint account x8486 and $600 ATM withdrawals. [NAVY_00000083]<br><br>Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020.<br><br>*See* above, entry 153, for background on Kimberley Tew's Simple account<br>*See* Indictment ¶¶ 23, 32, 33 | | SW_FIL_003423 23<br><br>SW_FIL_003335 39<br><br><br>SW_FIL_003268 99-<br>SW_FIL_003269 40 |

126

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | https://www.blockchain.com/btc/tx/99459f81060041bb0dcc08873816286d80e77b5 7ca25<br>7f2710171634a0eb833d<br>**Kley(KT):**   Sent 2 BTC to Kraken<br>**Kley(KT):**<br>   https://www.blockchain.com/btc/tx/0f4162824b610cbb8da40e934e8bd473c779fe54 1de2 724653d0880904050c62<br>**Kley(KT):**   Sent you another coin<br>**Kley(KT):**   23400<br>**MT7473:**   Ok - unbelievable!!! Nothing confirmed yet\<br>**Kley(KT):**   It won't confirm for a long time like 1-2 hours<br>**MT7473:**   The first two confirmed<br>**Kley(KT):**   Ok sell those 2 and wire out<br>**MT7473:**   Will do<br>**MT7473:**   Wire submitted. 3:05 pm<br>**Kley(KT):**   Let me know when it all confirms | | | |
| 179 | 5/28/19 | **MT7473:**   Photo of BTC ATM screen (58067022280__D8EB4E61-559F-48F1-B610-6CCA2AD8E73B.jpeg)<br>**KT2046:**   WF pin is 7559<br>**KT2046:**   1NzRLX1w6Aykj4937N1AyknjJR6ABt9cti (QR Code for crypto wallet (IMG_3364.jpeg))<br>**MT7473:**   Have cash headed to atm<br>**MT7473:**   Photo of BTC ATM screen (58061564030__16CB2A56-60D9-4E04-8FF5-1B50B989453A.jpeg)<br>**KT2046:**   I need more btc. But as much as you can and same address. I already have a buy lined up.<br>**KT2046:**   Please do that before you come back<br>**KT2046:**   Hello?<br>**MT7473:**   Did I read you need me to go back?<br>**MT7473:**   Sorry my timeline is all mixed up<br>**KT2046:**   Yes<br>**KT2046:**   You can do $500?<br>**MT7473:**   We have $500 in cash a couple hundred in teh bank and I have $200 from yesterday so that leaves us $400 in spending money<br>**KT2046:**   Can you deposit it all. I will cash out.<br>**MT7473:**   i can deposit another $900 that leaves us $100 | Bank records show a $500 transfer from Michael Tew posting on May 28, 2019 and a transfer of $900 to an account in the name of Kimberley's father [NAVY_00000085]<br><br>*See* above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, F, G, H, K, N | SW_FIL_003269 54-<br>SW_FIL_003269 62 |

127

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | KT2046: | Ok | | | |
| | | MT7473: | I trust you | | | |
| | | KT2046: | I'll get money from someone | | | |
| | | KT2046: | To sell | | | |
| | | MT7473: | You have a buyer already anyway right | | | |
| | | KT2046: | He's on standby | | | |
| | | KT2046: | I need to get more btc | | | |
| | | KT2046: | Can you confirm now how much Jon is sending to arrive wed | | | |
| | | KT2046: | I need btc | | | |
| | | KT2046: | [C.R.] is crazy | | | |
| 180 | 5/28/19 | KT2046: | Is it possible nothing is coming tomorrow | On May 29, 2019, $11,150 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7263 2019.05.30 (NAC_00000559)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, F, G, K, N | SW_FIL_0033299 5 |
| | | MT7473: | $11,110 coming tomorrow. | | | |
| | | KT2046: | And the rest?!?! | | | |
| | | KT2046: | When | | | |
| | | MT7473: | Can't do anything until June which is next week | | | |
| | | MT7473: | May 31 is Friday. So we have 11,110 tomorrow, 3K from apple coming back and $5K from [redacted] Friday | | | |

128

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

**June 2019**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|-------------|--|-------------------|------------------|--------|
| 181 | 6/3/19 | **JY1709:**<br>**MT1312** | Well?<br>Yes let's do it!<br>Sorry!!!<br>Thank you<br>Can we do 53500 | On June 4, 2019, $53,500 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7312 2019.06.14 (NAC_00000560), as alleged in Count 40 of the Indictment | A, F, G, K, L | SW_FIL_0034 23 24 |
| | | **MT1312**<br>**JY1709:**<br>**MT1312**<br>**MT1312**<br>**JY1709:**<br>**JY1709:** | Lot of family around right now sorry<br>Yes.<br>We're on for what we diffused<br>Discussed<br>Ok great<br>It's done ☑ | Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | | |
| 182 | 6/3/19 | **KT2046:**<br><br>**KT2046:**<br><br>**Kley(MT):**<br>**KT2046:** | If we want to survive I need the money from [redacted] in Simple by 10 and something large from Jon to hit tomorrow.<br>[Redacted{ has not send the funds and it's 11:24 in NY. Like what is there problem? Do they have $? Maybe you should ask to be paid 3 months at a time because it's like this monthly.<br>Ok. I'll ask<br>You can pay rent in advance or keep the $ | Bank record show ta $1,000 transfer to an account in the name of Kimberley Tew's father and then a transfer of $1070.46 ithe account of Kimberley's father to | A, G, K, N | SW_FIL_003269 90- SW_FIL_003269 92 |

129

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** If they send 3 months<br>**KT2046:** Can you withdraw 1000 from our accounts and 200 from WF and go to atm<br>**KT2046:** 1KwCXUjaLmgkXWNHoNViHpgk45AnbtKaxp (QR code for crypto wallet (IMG_3775.jpeg))<br>**KT2046:** I sold $1,300 | an associate of Kimberley Tew's.<br><br>The reference to NY is a reference to NAC, where it had offices and where J.Y. was working.<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶¶ 23, 32, 33 | | |
| 183 | 6/4/19 | On June 4, 2019 J.Y. used his business email account to send to NAC employees invoices for [5530 JD], and [MCG], among others, writing "See attached for support for J/E [journal entry] selections. Let me know if you need anything else or need me to walk through anything with you." | *See* above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>*See* Indictment ¶¶11, 12, 13 | A, K, L | NAC_E_66234; NAC_E_66239-NAC_E_66246 |

130

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| 184 | 6/7/19 | MT7473: | Photo of deposit slip (58161632358__8C734A17-CB41-4CB5-A0AF-99A6DFF8D309.jpeg) | *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>Michael Tew used the email address mtew@sandhillrp.com. Kimberley used the kley@me.com address.<br><br>Records show that Kimberley Vertanen (Kimberley Tew's maiden name) had an account with ATT ending x2697 associated with telephone number 917446-20146 (ORD_00019223)<br><br>Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | A, G, K, N | SW_FIL_0033012<br><br>SW_FIL_00327003-<br>SW_FIL_00327006;<br>SW_FIL_00327012 |
| | | MT7473: | Photo of deposit slip (58161632967__D19D6305-EDEB-4FEF-BD41-66B6929C2212.jpeg) | | | |
| | | | [. . . .] | | | |
| | | KT2046: | Can you go to your sent emails on Sandhillrp.com and look for a few I sent to myself at kley@me.com re [redacted] and forward to vtleycap@gmail.com | | | |
| | | | [. . . .] | | | |
| | | KT2046: | Can you deposit that $4,200 for me at Chase? | | | |
| | | MT7473: | Ok | | | |
| | | MT7473: | Vegas? | | | |
| | | KT2046: | It's Friday | | | |
| | | | **[. . . .]** | | | |
| | | KT2046: | (1) $4,000.00<br>**Chase bank**<br>[redacted business name<br>Checking [x]2133<br>Florida<br>(2) $200.00<br>Business: [Redacted]<br>Account # [x]2752<br>Address: [Redacted]<br>On each please write:<br>"No refunds for bitcoins"<br>Got it? | | | |
| | | MT7473: | Ok<br>Looking they open at 10 I'm jus going to call | | | |
| | | KT2046: | Can you go deposit these | | | |
| | | MT7473: | On way to chase | | | |
| | | KT2046: | My phone was shut off | | | |

131

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|-|--------------------|------------------|--------|
| | | KT2046: | And I need the code sent from Simple to 7473 | | | |
| | | MT7473: | I'm so sorry<br>I will go pay | | | |
| | | KT2046: | Photo of account balances (IMG_3958.jpeg) (photo of account at ATT ending x2697 showing a negative balance of $368.43 | | | |
| 185 | 6/10/19 | KT2046: | Don't freak out. I have thought about this. I didn't lose it all. We need to get an ACH today.<br>[redacted] is all over me to see his account. Offer J 3 BTC. I have to go to Vegas. | On June 11, 2019 $28,000 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7312 2019.06.14 (NAC_00000560). That same day Kimberley Tew withdrew $15,000 as alleged in Count 43 of the Indictment<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486.<br><br>*See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas)<br>*See* Indictment ¶¶ 23, 32, 33 | A, F, G, H, I, K, N | SW_FIL_0033030<br>20<br><br>SW_FIL_0032700<br>20-<br>SW_FIL_0032700<br>25 |
| | | MT7473: | We never sent him anything and I haven't spoken to hombre | | | |
| | | MT7473: | Him | | | |
| | | MT7473: | He's not going to trust me | | | |
| | | KT2046: | Stop with the negativity | | | |
| | | KT2046: | Please | | | |
| | | KT2046: | I need at least 30 to hit tomorrow | | | |
| | | KT2046: | I have a plan | | | |
| | | MT7473: | Can we send him half a btc today? He sent us money to buy for him. If we can send him something I can tell him we need the rest for him | | | |
| | | MT7473: | And we got robbed | | | |
| | | KT2046: | No he'll say don't worry | | | |
| | | KT2046: | And no we can't | | | |
| | | KT2046: | It takes 18 days to receive on Coinbase | | | |
| | | MT7473: | Then in need a new story | | | |
| | | KT2046: | My instant buy with debit is $50 week | | | |
| | | KT2046: | He will say just use his btc | | | |
| | | KT2046: | Photo of available balance (IMG_4218.jpeg)(photo of balance of $9.27) | | | |
| | | KT2046: | Photo of available balance  (cb.jpeg) | | | |
| | | KT2046: | Photo of available balance (Img_4223.jpeg) | | | |
| | | KT2046: | Photo of available balance (FullSizeRender.jpeg) | | | |
| | | KT2046: | Screenshot of coinbase (Image-1.jpeg) | | | |
| | | KT2046: | Can you do a cash deposit for me at Bank of America? You can transfer funds to withdraw from your 3 debit cards: $600, $600 and $200 and take out $400 with my Simple card. | | | |

132

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 186 | 6/12/19 | MT1312: | What are the Chances you can send something small for tomorrow 9900. Need it for something important. I know it's deadline and I can't talk I'm with the kids in a class. Trust me I Know. Just need to know yay or nay. Thank you. | *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On June 11, 2019 $28,000 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7312 2019.06.14 (NAC_00000560), as alleged in Count 43 of the Indictment<br><br>On June 14, 2019, $9,500 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7312 2019.06.14 (NAC_00000560)<br><br>Bank record show that Michael and Kimberly Tew received this | A, E, F, G, K, L | SW_FIL_003423 24 |
| | | JY1709: | Can't do it | | | |
| | | JY1709: | I have no money. We might not make payroll | | | |
| | | JY1709: | Would if I could | | | |
| | | MT1312: | Literally omg | | | |
| | | MT1312: | Fuck ok | | | |
| | | MT1312: | Payroll is Friday? | | | |
| | | JY1709: | Some draws tomorrow, some Friday | | | |
| | | JY1709: | Dude I just sent $28K. Fuck | | | |
| | | MT1312: | I know I know. I have an emergency. I can't explain. | | | |
| | | JY1709: | Well I can't send it I'm sorry | | | |
| | | JY1709: | Literally nothing I can do | | | |
| | | JY1709: | You know I would if I could | | | |
| | | MT1312: | Can you squeeze 7 | | | |
| | | JY1709: | I can't | | | |
| | | JY1709: | I can't send any money out | | | |
| | | JY1709: | I really can't do it | | | |
| | | JY1709: | It'll look awful | | | |
| | | JY1709: | Too many eyes at this point | | | |
| | | MT1312: | Is someone going to see it? | | | |
| | | JY1709: | They see all the cash sheet items. I can't do it. I'm sorry. I just sent out $28K and $218K before that. I can't help you on this one. I'm sorry | | | |
| | | MT1312: | Even like 7? | | | |
| | | JY1709: | Even like 7 | | | |
| | | JY1709: | I'm super jammed up | | | |
| | | MT1312: | Copy. | | | |
| | | JY1709: | If something drastically changes tomorrow, maybe I could send one tomorrow for Friday, but this week is legit impossible to send more. That's why I sent a large one Monday to finish this shit | | | |
| | | MT1312: | Sorry [. . .] just up for air. understood. Working on it my end. | | | |

133

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | payment directly into their joint account at NFCU x8486. | | |
| 187 | 6/12/19 | **KT2046:** Really need your help to make sure we have $ tomorrow<br>**KT2046:** It's important<br>**KT2046:** Please respond<br>**KT2046:** Where are you<br>**KT2046:** This is important<br>**KT2046:** If it doesn't hit tomorrow I am going to blow up<br>**KT2046:** Fuck<br>**KT2046:** When can he<br>**KT2046:** If he can't tomorrow when can he this week or something big<br>**KT2046:** Can he send 7 for tomorrow<br>**KT2046:** We need something<br>**KT2046:** Tell him to think if something for tomorrow<br>**Kley(MT):** He says they may bounce payroll<br>**MT7473:** I'll have to ask [redacted] for a wire for tomorrow and we'll have to hit Jon up after<br>**MT7473:** That's my option<br>**KT2046:** Ask when he can<br>**KT2046:** Ask if he can squeeze 7 out<br>**MT7473:** I did. He said everyone will see it and on top of the 28 he jus sent it's too big a deal with them not making payroll<br>**KT2046:** What could drastically change tomorrow<br>**KT2046:** I got a loan from [redacted]<br>**KT2046:** When are you leaving<br>**KT2046:** Can you do a cash deposit<br>**MT7473:** I can leave soon | The reference to "he" is a reference to J.Y. The reference to bouncing payroll is a reference to concerns that sending money to the Tews will call NAC to miss its payroll.  See entry 186 above.<br><br>*See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests). | A, F, G, K, N | SW_FIL_003330 22-<br>SW_FIL_003330 23<br><br><br>SW_FIL_003270 32-<br>SW_FIL_003270 36;<br>SW_FIL_003270 38 |
| 188 | 6/13/19 | **MT1312:** Got a late start.<br>Need you to pull off a miracle for me today.  Need to know if anything has changed or improved overnight.  Just taking the kids to school now.<br>**JY1709:** I really don't think I can. As of now we don't have enough for payroll and are hoping more cash comes in from Dubai soon | On June 14, 2019, $9,500 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as | A, F, G, H, K | SW_FIL_003423 24 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **JY1709:** | FYI. Got payroll covered. Not much left. Still sent $9,500. Please don't ask me ever again. This is the last one man | fraudulently documented in [PM] 7312 2019.06.14 (NAC_00000560)<br><br>Bank record show that Michael and Kimberly Tew received this payment directly into their joint account at NFCU x8486.<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| 189 | 6/13/19 | **MT7473:**<br>**KT2046:**<br>**KT2046:**<br>**KT2046:**<br><br>**KT2046:**<br>**KT2046:** | I'll go to Wells Fargo right norm<br>Don't<br>I need it in there<br>You need to be texting Jon tonight to make sure you can get something for Friday.<br>Significant.<br>You never answered what could happen tomorrow. He said something about tomorrow. | *See* Indictment ¶ 18 (alleging coordination between Michael and Yioulos on how to provide more specific descriptions of falsely | A, F, G, H, K, N | SW_FIL_0032 70 40-SW_FIL_0032 70 52 |

135

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | [. . . .]<br><br>**MT7473:** But I need to actually do it<br>**MT7473:** It's 930 in New York<br>**KT2046:** Sending an email won't do shit<br>**MT7473:** Jon won't text me st night<br>**KT2046:** You work for people you have to beg<br><br>[. . . .]<br><br>**Kley(MT):** Jon sent 9500<br>[redacted]<br>**KT2046:** Need [redacted] today<br>**KT2046:** Jon is tomorrow?<br>**KT2046:** It's almost 2pm Eastern<br>**KT2046:** Are you getting the 7.5 today<br>**KT2046:** When<br>**KT2046:** When<br>**Kley(MT):** $7,000 sent<br>**MT7473:** At atm<br>**KT2046:** ATM access code photo (IMG_4368.jpeg)<br>**KT2046:** Pin 7559<br>**KT2046:** Withdraw $300<br>**MT7473:** Get another access code we'll try again<br>**MT7473:** It didn't work<br>**KT2046:** 37189108<br>**MT7473:** Photo of btc atm (58215958112__9B56DEFB-66B9-4AAD-A622-680DB5816453.jpeg)<br>**MT7473:** Second time this happened<br>**KT2046:** Lovely<br>**MT7473:** What do you want yo do<br>**KT2046:** Get the $500<br>**MT7473:** Ok already have it<br>**MT7473:** Going to atm<br>**MT7473:** I can deposit that 100 and see if it works st the btc atm<br>**MT7473:** That's 600 | claimed services on fraudulent invoices)<br><br>*See* Indictment ¶¶ 23, 32, 33<br><br>The reference to a time in New York is a reference to Jon's workplace at NAC"s offices in New YOrk | | |

136

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | KT2046: | Ok | | | |
| | | MT7473: | Are you mad at me | | | |
| | | KT2046: | I'm mad at myself | | | |
| | | KT2046: | 1FgESzGtRdjnWYSxsRYAYrB65S2L8rAb7e | | | |
| | | MT7473: | Photo of BTC ATM receipt (58216077242__C66807EE-0022-4CE0-873C-59E420FF471A.jpeg) | | | |
| 190 | 6/18/19 | MT7473: | Jon is negative in the account he can't send anything literally today. He said everyone is watching everything. I think he can send tomorrow. He's on his way back to office to check on everything. He freaked out on me at first and then calmed down. Maybe I can convince him to send something small today and the rest tomorrow. I'm working on it I promise you. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | A, D, F, H, K, N | SW_FIL_0032 7062-SW_FIL_0032 7066; SW_FIL_0032 7068 |
| | | KT2046: | Fuck | | | |
| | | MT7473: | I know | | | |
| | | MT7473: | I'm working him I promise you | | | |
| | | KT2046: | The longer the more | | | |
| | | MT7473: | Maybe he can send something small today. I bet you he can. | | | |
| | | KT2046: | You said you guarantee [L.W.] was sending yesterday | | | |
| | | MT7473: | You still have some from overnight right? | | | |
| | | MT7473: | Mike doesn't get paid back then | | | |
| | | KT2046: | I'm paying people | | | |
| | | MT7473: | You're guys get paid first. | | | |
| | | MT7473: | So knock off 3k | | | |
| | | KT2046: | You don't understand | | | |
| | | MT7473: | Ok I'll ask mike to send more money | | | |
| | | MT7473: | Today | | | |
| | | KT2046: | No you don't understand | | | |
| | | KT2046: | You're late with Jon because you were scared | | | |
| | | KT2046: | You said [L.W.] was definitely sending | | | |
| | | KT2046: | I'm working | | | |
| | | MT7473: | I thought he would | | | |
| 191 | 6/23/19 | MT7473: | Information from CoinMe (Image-1.jpeg) | *See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_0033 3031 |
| | | MT7473: | https://www.coinmewallet.com/kyc | | | |
| | | | [. . . .] | | | SW_FIL_0032 7075- |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** Information from CoinMe (Image-1.jpeg)<br>**MT7473:** https://www.coinmewallet.com/kyc<br>**KT2046:** Can you stop not at the Dino gas station we usually go to but somewhere else and buy these for me? The quantities are in white. (Photo of lottery tickets (IMG_4778.jpeg))<br>**KT2046:** QR code for crypto wallet (IMG_4779.jpeg)<br>**Kley(MT):** Ok so 1200 and pick up lotto tic right<br>**KT2046:** Please<br>**Kley(MT):** Ok<br>[. . . .]<br>**Kley(MT):** No dollar doubler and win again and again<br>**KT2046:** Ok<br>**KT2046:** Did you do atm again<br>**KT2046:** Yet<br>**Kley(MT):** Yes<br>**Kley(MT):** Sent you receipt | | | SW_FIL_003270 77 |
| 192 | 6/24/19 | **MT7473:** Photo of BTC atm screen (58304145063__F921EBAE-3C56-4F73-A8E2-5BAD2CC250BD.jpeg)<br>**MT7473:** Photo of BTC atm screen ( 58304146240__0F532FC0-D53D-4E00-A5F5-D359101CDB75.jpeg)<br>**MT7473:** Pls send address<br><br>[. . . .]<br><br>**KT2046:** QR code for crypto wallet (IMG_4905.jpeg)<br>**MT7473:** I'm taking the funds for the car payment also<br>**KT2046:** No<br>**KT2046:** Don't<br>**KT2046:** I'm telling you do not<br>**MT7473:** Ok<br>**MT7473:** Ok I have 1560<br>**MT7473:** Going to btc atm<br>**MT7473:** They're closed I have no idea why<br>I have to go go ytq<br>**MT7473:** Going there now | The Tews here are discussing the difficulties of being paid reliably for this work and their perceived need to receive fraud proceeds from "Jon" at NAC.<br><br>*See* Indictment ¶¶ 23, 32, 33<br><br>*See* above, entry 153, for background on Kimberley Tew's Simple account | A, D, F, G, H, I, K, N | SW_FIL_003330 31<br><br>SW_FIL_003270 78-<br>SW_FIL_003270 83;<br>SW_FIL_000032 7084-<br>SW_FIL_003270 94 |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **MT7473:** 20 mins<br>**KT2046:** Do you want to use my Simple card to book your trip?<br>**KT2046:** Is [redacted] sending the money there?<br>**KT2046:** When are we getting the BTC from Coinme<br>**KT2046:** Hello?<br>**KT2046:** Do you have cash<br>**KT2046:** Because the other day I had $1,480<br>**KT2046:** You purchased $1,200<br>**KT2046:** Bought some scratch tickets<br>**MT7473:** I have two hundred bucks I think<br><br>[ . . . .]<br><br><br>**KT2046:** I'm going to the bank<br>**KT2046:** Like you're not even responding<br>**KT2046:** I don't know what's going on<br>**KT2046:** WHAT is your plan<br>**KT2046:** Still no fucking bitcoin from the atm<br>**KT2046:** Are you planning to leave<br>**KT2046:** Why won't you text me<br>**MT7473:** [. . . .]<br>They said between 2-3 pacific I think for the second round. That's another hour or so<br>You have the 5k in simple right?<br>**KT2046:** I purchased btc<br>**MT7473:** I'll call again<br>**MT7473:** Ok I'll coin me again<br>**KT2046:** And what happens if it's not there<br>**KT2046:** At 4<br>**MT7473:** It will be there<br>**KT2046:** Are you planning on flying out tonight<br>**MT7473:** Yes<br>**KT2046:** We are not on the same page<br>**MT7473:** You have 45k coming this week<br>**KT2046:** This is so stressful<br>**MT7473:** 5k from [redacted] hit today | | | |

139

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **MT7473:** Plus we'll have that 4500 today<br>**MT7473:** That's 9500<br>**KT2046:** I have to work!!!!!!!!<br>**MT7473:** So work<br>**KT2046:** Why do you insist on working for losers<br>**KT2046:** Why don't you ever think about your family<br>**MT7473:** Ok can we send [redacted] back the 1900<br>**MT7473:** I'm not working for losers<br>**MT7473:** I'm working yo make money we need<br>**KT2046:** You've been working for free<br>**KT2046:** Tell me what is the plan with [redacted]<br>**KT2046:** And stop telling me shit is coming in maybe tomorrow<br>**KT2046:** I heard the 3 day plan last week<br>**KT2046:** What is confirmed<br>**KT2046:** With [redacted] and Jon<br>**MT7473:** [redacted] 7500 on the 1st and every month for 6 month trial for manifest. Jon said he would send 15k per day starting tomorrow OR he said he would try to squeak something today but unlikely. I will call him now to see if he has any additional updates. He said if he can send 20k he will send larger amounts sooner. He knows he has no choice.<br>He agreed to do it. He will send and you will have.<br>**MT7473:** Coinme says they are pushing all day now and latest 4 pm is the final batch.<br>**MT7473:** They said just keep watching the wallets which i am doing<br>**KT2046:** I need it now<br>**KT2046:** This [redacted] thing is fucking mr Jon<br>**KT2046:** And not having btc<br>**KT2046:** I nddd it now<br>**MT7473:** I'll call again<br>**MT7473:** I'm going to ask them to prioritize it<br>**KT2046:** Two days ago<br>**KT2046:** I need it now<br>**KT2046:** How the fuck am I supposed to work<br>**MT7473:** It's going to take another hour they told me<br>I need to get more money<br>**MT7473:** They can't priories<br>**KT2046:** 19VWGzKQdYy4cbVLUsDGbtvz9gaBY3Z35T | | | |

140

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | sent | | | |
| 193 | 6/25/19 | **MT7473:**<br>**KT2046:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br><br>**MT7473:**<br><br>**MT7473:**<br><br><br><br><br><br><br><br><br><br><br><br>**KT2046:**<br><br>**MT7473:**<br>**MT7473:**<br><br><br><br>**KT2046:** | QR code (IMG_4967.PNG)<br>Where are you<br>Vaper<br>Buying now<br>Didn't see your call<br>There's bad signal her<br>Photo of BTC ATM screen (58311461502__A9D23FA6-1177-4E1B-A281-24CAADEA8347.jpeg)<br>Photo of BTC ATM screen (58311462578__62DDB27B-CCB3-402C-B169-3C662FDBEE92.jpeg)<br>Boarding now \|<br>[ . . . .]<br>I will not let you down I promise you<br>I'm exhausted<br>I tried to get the cash but it already pulled the Audi<br>Apparently we're only negative 110 now in the joint account even with Audi<br>We might be ok with only 100 overdraft for a day<br>Text you when I land  it will be about 4 for you<br><br>[ . . . .]<br>I transferred $500 to your WF account and you should be receiving $500 via Zelle to your 3464 NF account.<br>Jon sent 15k<br>Thank you<br>Hitting Starbucks now<br>Then one more meeting<br>Then to airport<br>$1,500 coming into our joint account | Bank account records show a $500 transfer into an account for Sand HIll at Wells Fargo bank ending x6934 on which Michael Tew was the sole signatory. [WFB_00000714]<br><br>"3464 NF account" is a reference ot Michael Tew's bank account at NFCU on which he was the sole signatory. Records show a $500 depost posted on that account tiva Zelle on 6/26/19. [NAVY_00000501]<br><br>Records show a $500 depost posted on the Tews' Joint NFCU account x8486 Zelle on 6/26/19. [NAVY_00000107]<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, G, H, K, N | SW_FIL_0033302-SW_FIL_0033304; SW_FIL_0033041 |
| 194 | 6/26/19 | **MT7473:** | Jon wanted to know if he was still getting his btc<br><br>[ . . . .] | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide | A, G, K, N | SW_FIL_0033049- |

141

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** I have to cancel this trip tomorrow<br>**KT2046:** Why<br>**KT2046:** I said go<br>**MT7473:** I can't leave you with all of the money in teh account and the girls driving you crazy all day<br>**MT7473:** And jon's not going to have more money to send Thursday to Friday<br>**MT7473:** They're going to be overdrawn on a payroll day<br>**KT2046:** You already booked the ticket or it was already booked<br>**MT7473:** Yeah [redacted] booked it so what they can eat it<br>**KT2046:** You said he's sending 30<br>**MT7473:** Yes that's what he said $30K to arrive tomorr<br>**MT7473:** i'm on hold with the bank getting an answer on the wire<br>**MT7473:** it never takes this long<br><br>[. . . .]<br><br>**MT7473:** Still on hold waiting for someone that can answer my questiopn<br>**KT2046:** Don't bring up my wire<br>**MT7473:** I won't I promise. I sent it from my 5336 account and that's the account they are looking at<br>**Kley(MT):** My phone is charging I'm on this phone<br><br>[. . . .]<br><br>**Kley(MT):** The guy just got back on - he's still waiting for someone from the wire department to get on with us, that means something is backed up there<br>**Kley(MT):** I'm still waiting<br>**Kley(MT):** Text me a photo of your joint NFCU card and the CFC<br>**Kley(MT):** Ccv<br>**Kley(MT):** Need it to download app<br>**Kley(MT):** its [redacted]<br>**Kley(MT):** Need your debit card number<br>**Kley(MT):** To our joint account<br>**Kley(MT):** And the security code | how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>*See* Indictment ¶¶ 23, 32, 33<br><br>On June 27, 2019 $30,000 is sent via ACH to Wells Fargo Bank Account x6934 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7322 2019.06.27 (NAC_00000976)<br><br>The reference to a "WF" account is a reference to Michael Tew's account in the | | SW_FIL_003330 52<br><br>SW_FIL_003270 95-<br>SW_FIL_003270 98;<br>SW_FIL_003271 00-<br>SW_FIL_003271 11;<br>SW_FIL_003271 12-<br>SW_FIL_003271 13 |

142

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| | | **Kley(MT):** | [x] 0058 | name of Sand Hill at Wells Fargo Bank. | | |
| | | **Kley(MT):** | [redacted – security code] | | | |
| | | **Kley(MT):** | Exp | The reference to the x5336 account is a reference to an account at NFCU on which Michael Tew was the sole signatory. | | |
| | | **Kley(MT):** | Don't be rude to rep | | | |
| | | **Kley(MT):** | 03/22 | | | |
| | | **Kley(MT):** | I'm not hes like a nice old maj | | | |
| | | **Kley(MT):** | He's being helpful | | | |
| | | **Kley(MT):** | I'm still on hold. [. . .] | | | |
| | | **MT7473:** | Call Jon there's a security hold on our account call him now | | | |
| | | **MT7473:** | Just call him asapp | Records show a $30,000 transfer from NAC to an account for Sand HIll at Wells Fargo bank ending x6934 on which Michael Tew was the sole signatory. [WFB_00000714] | | |
| | | **MT7473:** | qell have him send to wells | | | |
| | | **MT7473:** | I can't call him and it's 3 pm there I'm dealing with this | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | Security holds on our account to call Jon now | | | |
| | | **MT7473:** | Call Jon ASAP | | | |
| | | | I'm on with them now | | | |
| | | **MT7473:** | Call Jon | | | |
| | | **KT2046:** | What!?!? | | | |
| | | **KT2046:** | Texted him | | | |
| | | **Kley(KT):** | He said they haven't called | | | |
| | | **Kley(KT):** | What's going on | | | |
| | | **MT7473:** | We won't be able to get the 30k out | | | |
| | | **KT2046:** | What | | | |
| | | **KT2046:** | What is going on | | | |
| | | **KT2046:** | Have him send to your WF account | | | |
| | | **MT7473:** | Because they see lots of money coming in to [PM] | | | |
| | | **KT2046:** | Say you're a partner | | | |
| | | **MT7473:** | Of course I did | | | |
| | | **MT7473:** | It's just very provincial | | | |
| | | **MT7473:** | They don't get it | | | |
| | | **KT2046:** | Is it the bank | | | |
| | | **KT2046:** | Or the fed | | | |
| | | **MT7473:** | It's the bank | | | |
| | | **KT2046:** | Are they not sending wires out | | | |
| | | **MT7473:** | Holding our account under security review | | | |

143

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:**  Play the veteran part up<br>**MT7473:**  I'm waiting now since they already sent the funds<br>**MT7473:**  I played it trust me<br>**KT2046:**  So the wires won't go out today<br>**KT2046:**  They did send wires out<br>**KT2046:**  ?<br>**KT2046:**  What is going on<br>**KT2046:**  WHAT is going on<br>**KT2046:**  I can't log inI can't log in<br>**KT2046:**  And I can't login to my dads account<br>**MT7473:**  We have to go to the branch<br>**KT2046:**  [x]6934<br>**KT2046:**  Routing: 121000248<br>**MT7473:**  Tat's at the bottom of the check right<br>**KT2046:**  No<br>**MT7473:**  Ok - for ACH it would be diff than wire<br>**KT2046:**  That's the wire routing<br>**MT7473:**  For wells its diff<br>**KT2046:**  [x]0076<br>**MT7473:**  Is that at teh bottom of the check<br>**KT2046:**  Yes!<br>**MT7473:**  ok<br>**MT7473:**  Coming now<br>**KT2046:**  My phone doesn't take photos<br>**MT7473:**  Its fine<br>**MT7473:**  He's texting me now<br>**KT2046:**  It's NOT fine<br>**KT2046:**  I am 15K short<br>**MT7473:**  Ok so we'll get you a new phone<br>**KT2046:**  This is NOT OKAY<br>**MT7473:**  Ok its not okay I'm sorry<br>**KT2046:**  You should have left the second this happened<br>**KT2046:**  I am on the phone with the bank<br>**KT2046:**  I'm on the phone with the bank<br><br>[ . . . .] | | | |

144

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|--------------------|------------------|--------|
| | | **KT2046:** | Can you go to atm for me | | | |
| | | **MT7473:** | Like now | | | |
| | | **KT2046:** | Yes sure | | | |
| | | | I'll head back now | | | |
| | | **KT2046:** | I have cash or you can use my Simple for dinner | | | |
| | | **KT2046:** | QR code (IMG)4989.jpeg) | | | |
| | | [. . . .] | | | | |
| 195 | 6/26/19 | **MT1312:** | Bank is calling you to confirm ach | *See* Indictment ¶¶ 18, 19, 20 21, 22 (alleging various instances of coordination to make the fraudulent invoices more convincing and to more efficiently get money from NAC without getting caught)<br><br>On June 26, 2019 $15,000 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7322 2019.06.27 (NAC_00000976)<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into | A, G, K, L | SW_FIL_00342324 |
| | | **MT1312:** | Pls confirm you received this | | | |
| | | **JY1709:** | Yes | | | |
| | | **MT1312:** | Did they call | | | |
| | | **JY1709:** | No | | | |
| | | **MT1312:** | They are asking about money coming in to [PM] | | | |
| | | **MT1312:** | Call 7473 | | | |
| | | **JY1709:** | Just tried twice | | | |
| | | **MT1312:** | Sand HIll, LLC | | | |
| | | **MT1312:** | Account: [x]6934 | | | |
| | | **MT1312:** | ABA: tel:[x]0076 | | | |
| | | **MT1312:** | That's teh ACH ABA not wire for Wells | | | |
| | | **JY1709:** | All set. $30K. I couldn't do 45. I'm sorry | | | |
| | | **MT1312:** | understood.  Talk later.    Running to the bank. | | | |
| | | **JY1709:** | Call me. I have a good explanation | | | |
| | | **MT1312:** | Maybe she's being paranoid because of what happened here but still a good questiopn | | | |
| | | **JY1709:** | It won't get flagged. If your bank account says sand hill and I send to sand hill, there's no issue at all | | | |
| | | **JY1709:** | Our bank won't flag it, they have no clue | | | |
| | | **MT1312:** | What about On your end | | | |
| | | **MT1312:** | ok | | | |
| | | **MT1312:** | and nobody can see in signature | | | |
| | | **JY1709:** | No, nobody can see. It really doesn't matter. Unless [A.S] got curious (never does). | | | |
| | | **MT1312:** | I guess she was asking geez why didn't we do that earlier on, but its sort of | | | |

145

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | water under the bridge now<br><br>**JY1709:** Well cause it's safer to use a company name In case she does go snooping<br>**JY1709:** And if I need confirmations for audits and shit<br>**JY1709:** I'd rather not use Sandhill but in this emergency situation I can... that's why you should set up a legit Corp for the fuel consulting<br>**JY1709:** Does that make sense to you?<br>**MT1312:** YES<br>**MT1312:** Copy thank you | their joint account at NFCU x8486. [NAVY_00000107]<br><br>Records show a $30,000 transfer from NAC to an account for Sand HIll at Wells Fargo bank ending x6934 on which Michael Tew was the sole signatory. [WFB_00000714]<br><br>As set forth below J.Y.'s suggestion that Michael Tew set up a "legit corp" for fuel consulting led Michael Tew to create an account for fictitious companies called Global Fuel Logistics and Aeromaintenance Resources. | | |
| 196 | 6/28/19 | **MT1312:** Hi I'm sorry I wasn't in touch - I was in SF for meetings and didn't walk in the door until 1am and bed at 3 am. I'll get right to the point. Im sure things are not good there, I'm hoping you were able to get through payroll, im sure its been a tough couple days. My money is all locked up in the bank for 10 days. Including all of my own money (consulting prepayments etc) that I was contributing. i can't even pay rent on Monday. If there is anything you can contribute today to Monday, even 10K, it goes a LONG way. I'm working on buying time with the guy. Sorry to be long on text. Not sure what's Going on there.<br>**MT1312:** And again, I/m sorry.<br>**JY1709:** Bank is sitting at -672K | *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. Michael Tew was the sole signature on the account at Wells Fargo | A, F, G, H, K | SW_FIL_0034232 4 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** Holy fuck!<br>**JY1709:** Yup<br>**MT1312:** [C.A.] put in?<br>**JY1709:** Nope<br>**MT1312:** Oh fuck<br>**JY1709:** He's just saying figure it out<br>**MT1312:** Dude he's walking a tightrope<br>**MT1312:** [L.A.] is saying figure it out basically<br>**MT1312:** Is [J.M.] bringing anything in next 24 - 48 hours/<br>**MT1312:** Give me a ring lunch<br>**JY1709:** Text me Wells Fargo info again<br>**MT1312:** 2 secs tgx<br>**JY1709:** Hurry. [C.A.] wants to get lunch haha<br>**JY1709:** It's 3:30 here FYI<br>**MT1312:** Sand HIll, LLC<br>Account: [x]6934<br>ABA: [x]0076<br>That's teh ACH ABA not wire for Wells<br>**JY1709:** And he wants to get lunch now ??<br>**MT1312:** Of course<br>**MT1312:** At 330<br>**MT1312:** He woke up at 1230<br>**JY1709:** Best I can do today is 9,000. Just trust me<br>**MT1312:** I trust you<br>**MT1312:** Touch base monday - just enjoy the weekend, you've worked your ass off I can't believe the position your in<br>**JY1709:** 9200 to be exact<br>**MT1312:** copy | held in the name of Sand Hell with an account number ending x6934.<br><br>On July 1, 2019, $9,200 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7410<br><br>Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | | |
| 197 | 6/28/19 | **KT2046:** I need you to text Jon. We need him to send money tomorrow. Just tell him he'll get his btc. I didn't lose it all.<br>**KT2046:** But everyone is cashing<br>**MT7473:** Like 445-5<br>**MT7473:** I'll call him in am<br>He'll freak with his wife<br>[C.A.] is there<br>He's gonna freak | *See* Indictment ¶ 18 (alleging coordination between Michael and Yioulos on how to provide more specific descriptions of falsely | A, D, F, G, H, K, N | SW_FIL_003330 73-<br>SW_FIL_003331 04<br><br>SW_FIL_003271 28- |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | It's all my fault | claimed services on fraudulent invoices). | | SW_FIL_003271 32 |
| | | MT7473: | I never should have come here | | | |
| | | KT2046: | No | [C.A.] is a reference to one of the owners of NAC | | |
| | | KT2046: | I didn't lose | | | |
| | | KT2046: | I didn't | | | |
| | | MT7473: | Ok good | On July 1, 2019, $9,200 is sent via ACH to Navy Federal Credit Union Account x8486 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7410 | | |
| | | MT7473: | That's great | | | |
| | | KT2046: | Can you forward me messages from Kraken you've received | | | |
| | | KT2046: | It's not | | | |
| | | KT2046: | We don't need a ton more but will absolutely not survive on Monday without anything | | | |
| | | MT7473: | What kind of messages | | | |
| | | KT2046: | I have to screenshot I withdrew BTC | | | |
| | | MT7473: | Just forwarded to you | Bank record show that Michael and Kimberley Tew received this payment directly into their joint account at NFCU x8486. | | |
| | | KT2046: | I just sent something to you | | | |
| | | KT2046: | Can you help me change the date and amount to show your withdrawal of 4 BTC | | | |
| | | MT7473: | Yes best way is in an email I can forward you but better on my computer so there's no formatting issues | | | |
| | | KT2046: | Just a reminder that the withdrawal of 4 BTC out of vault "BTC Vault" will be clearing in 1 day, 19 hours, 43 minutes. | Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020. | | |
| | | KT2046: | What if I just sent him that text | | | |
| | | KT2046: | I think better to show I sold BTC and USD is coming | | | |
| | | [. . . .] | | | | |
| | | KT2046: | Where ar you | | | |
| | | MT7473: | On Colorado and colfax | | | |
| | | MT7473: | Exhausted | | | |
| | | KT2046: | Are you near the atm | | | |
| | | MT7473: | I could go if you want | | | |
| | | MT7473: | Now | | | |
| | | KT2046: | How far | | | |
| | | MT7473: | But I'm just passing it | | | |
| | | MT7473: | 10-15 mins | | | |
| | | KT2046: | How much can you even withdraws | | | |
| | | MT7473: | 10-15 from the atm | | | |
| | | MT7473: | Oh right 500 bucks I think | | | |

148

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **KT2046:** I need it<br>**MT7473:** Ok<br>**KT2046:** Are you 10-15 from atm<br>**MT7473:** Yes<br>**KT2046:** If so it can wait<br>**KT2046:** You just passed it<br>**MT7473:** I'm already halfway home<br>**MT7473:** I can go back out<br>**KT2046:** But it's 10-15<br>**KT2046:** No<br>**KT2046:** Tomorrow<br>**KT2046:** You wrote you were just passing it<br>**MT7473:** Yes and we passed it<br>**KT2046:** I didn't understand<br>**KT2046:** Well just isn't 10-15 minutes<br>**KT2046:** Considering the airport is 35 min<br>**MT7473:** Just happened to be at coldax and we drove through<br>**MT7473:** I waited 20 mins for a car<br>**MT7473:** She missed the pickup three times<br>**KT2046:** So how is that 10-15 if on colfax<br>**MT7473:** It's like 10 mins west from there the way she's driving<br>**KT2046:** Oh<br>**KT2046:** Tomorrow<br>**MT7473:** I'll go back out<br>**KT2046:** Did you talk to Jon like I asked<br>**MT7473:** I'd rather do it myself<br>**KT2046:** No<br>**MT7473:** He didn't answer<br>**KT2046:** Like you texted him<br>**KT2046:** And he didn't answer<br>**MT7473:** No I didn't text him<br>**KT2046:** We are fucked<br>**KT2046:** So you did try!!!!!!<br>**MT7473:** So we have no money<br>**MT7473:** He wouldn't answer he was with his wife<br>**KT2046:** We have $5K<br>**MT7473:** It's all my fault I told your | | | |

149

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|--------------------|------------------|--------|
| | | **KT2046:** | He texts you back | | | |
| | | **MT7473:** | No he doesn't he blocks me | | | |
| | | **MT7473:** | He blocked me last time | | | |
| | | **KT2046:** | No we have $4K | | | |
| | | **MT7473:** | Then unblocked me in am | | | |
| | | **MT7473:** | It's my fault | | | |
| | | **KT2046:** | I don't' know what to do | | | |
| | | **MT7473:** | I have to get another 50k | | | |
| | | **KT2046:** | It doesn't matter | | | |
| | | **MT7473:** | I should have stayed | | | |
| | | **KT2046:** | Can you get dropped off at WF in the am | | | |
| | | **KT2046:** | And try to withdraw $300 | | | |
| | | **KT2046:** | From my mom's account | | | |
| | | **MT7473:** | Photo of BTC ATM screen (58339451046__941F07B1-0ECB-47EE-9109-7551C88ECC53.jpeg) | | | |
| | | **MT7473:** | It didn't like one of the bills just kept spitting it back | | | |
| | | **MT7473:** | Got 1550 | | | |
| | | **MT7473:** | Screenshot of Coinbase (Image-1.jpeg) | | | |
| | | **MT7473:** | Screenshot of Coinbase (Screen Shot 2019-06-28 at 11.07.05 AM.jpeg) | | | |
| | | **MT7473:** | Screenshot of Coinbase (Screen Shot 2019-06-28 at 11.08.56 AM.jpeg) | | | |
| | | **KT2046:** | Screenshot of Coinbase (FullSizeRender.jpg) | | | |
| | | | [. . . .] | | | |
| 198 | 6/29/19 | **MT7473:** | June 1_28 2019 [redacted] Daily Summary.pdf | The daily summaries reflect a debt the Tews owed to a third party. *See* Indictment ¶¶ 23, 32, 33 | A, G, N | SW_FIL_0033107 SW_FIL_0032732-SW_FIL_0032733 |
| | | **MT7473:** | June 1_28 2019 [redacted] Daily Summary.pdf | | | |
| | | **MT7473:** | Photo of BTC ATM screen (58351027444__AAC4CDBE-E00F-43E3-B9CB-D65170ED7E0D.jpeg) | | | |
| | | **MT7473:** | Photo of BTC ATM screen (58351028243__EB622B53-C4A1-4E78-9182-6EB13D1F6EC6.jpeg) | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | BTC June (received from [redacted] 6_28_19).xlsx | | | |
| | | **KT2046:** | BTC June.xlsx | | | |
| | | **MT7473:** | Your spreadsheet shows you sent a total of $139,575 vs my spreadsheet showing $137,972. I don't have a record of $500 sent via PayPal to me on 6/4. That would leave a difference of $1,103 which is perhaps fees | | | |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | incurred? | | | |
| | | **MT7473:** I reconciled your numbers with mine, and I'm still showing that you were up $11,726.03 yesterday prior to sending a $5,000 wire to Coinbase today. Your spreadsheet shows you sent a total of $139,575 vs my spreadsheet showing $137,972.<br>The $1,603 difference could be:<br>1.I don't have a record of $500 sent via PayPal to me on 6/4<br>2.Fees incurred of approximately $1,103?<br><br>My spreadsheet shows $144,180 sent vs your spreadsheet's total of $140,592.<br>The $3,588 difference could be:<br>1.I sent you .2 BTC on 6/5 ($1,542.95)<br>2.I sent you a total of $14,215 on 6/14 and I believe your spreadsheet is missing one a second Zelle sent on that day for $2,000. | | | |
| | | **MT7473:** I reconciled your numbers with mine, and I'm still showing that you were up $11,726.03 yesterday prior to sending a $5,000 wire to Coinbase today.<br><br>Your spreadsheet shows you sent a total of $139,575 vs my spreadsheet showing $137,972.<br>The $1,603 difference could be:<br>1. I don't have a record of $500 sent via PayPal to me on 6/4<br>2. Fees incurred of approximately $1,103?<br><br>My spreadsheet shows $144,180 sent vs your spreadsheet's total of $140,592.<br>The $3,588 difference could be:<br>1. I sent you .2 BTC on 6/5 ($1,542.95)<br>2. I sent you a total of $14,215 on 6/14 and I believe your spreadsheet is missing one a second Zelle sent on that day for $2,000. | | | |
| | | **KT2046:** File name: IMG_9440.JPG<br>IMG_9440.JPG | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

**July 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 199 | 7/1/2019 | On July 1, 2019 Michael tew, using mtew@sandhillrp.com, sent an email to an employee at VCorp Service LLC with the subject line "Re: Please assist" stating:<br><br>I need to set up a new entity<br><br>Can you assist me with this?<br><br>Name:    Global Fuel Logistics Inc<br>Type:     S Corp<br>Shares:   100 common only<br>State:     Wyoming<br><br>What is the cost what information do you need from me how does the process work<br><br>Thank you<br><br>Michael Tew<br><br>Michael Tew<br>mtew sandhillrp com<br>1 917.685.1312 | As set forth above in entry 195, J.Y. suggested that Michael Tew create a "legit" consulting corporation related to fuel.  Michael Tew responded by incorporating Global Fuel Logistics in Wyoming.<br><br>Global Fuel Logistics was a sham corporation created by Michael Tew as a vehicle to collect money from NAC based on false and fraudulent pretenses, promises and representations. Michael Tew used the address for Kimberley Tew's parents as the corporation's location. After incorporating Global Fuel, Michael Tew opened a bank account in its name at Wells Fargo ending x2064 on which he was the sole signatory. [WFB_0000532]. He then created the domain name globalfuel.co with go daddy, from which | A, K, L | VCORP_0000000 9 – VCORP_0000000 14 |

152

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | he could send emails to J.Y. with false invoices from "Jessica Thompson," a fictitious identity. Aero Maintenance resources was a similarly fictious "division" of Global Fuel Logistics. *See* Indictment, ¶¶ 14, 15, 17, 19. | | |
| 200 | 7/2/19 | **MT7473:** Scan Jul 2, 2019 at 09.48.pdf<br>**KT2046:** Where are you<br>**MT7473:** Same distance. 32 mins to either.<br>**MT7473:** I'll go to centennial pick up the highway right here.<br>**MT7473:** Be there at 325<br>**KT2046:** They don't have money sometimes<br>**KT2046:** Maybe come back<br>[ . . . . ]<br>**MT7473:** Ok ok come back<br>**MT7473:** On way<br>**MT7473:** 15 mins<br>**MT7473:** I got the atm limit increased to 20k / day also<br>**KT2046:** Where<br>**KT2046:** What bank<br>**KT2046:** When<br>**MT7473:** The btc atm<br>**KT2046:** I thought you meant navy federal. lol.<br>**MT7473:** Yeah would save time<br>**KT2046:** 1PViLwy49WhLZAyzZNcDfdxj6vMUpc9uPy<br><br>[ . . . . ]<br><br>**MT7473:** I'm so sorry<br>I'm going to get paid on the 15th<br>That's 15k on the 15th for you to use all at once<br>Just got here | [P.M.] was a casino host at the Wynn Casino in Las Vegas.<br><br>*See* Indictment ¶¶ 23, 32, 33<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | A, F, G, H, K, N | SW_FIL_003271 36;<br>SW_FIL_003271 38-<br>SW_FIL_003271 41;<br>SW_FIL_003271 43<br><br>SW_FIL_003331 14-<br>SW_FIL_003331 17 |

153

**Government's _James_ Log**
**_United States v. Tew_, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | [. . . .] | | | |
| | | **KT2046:**  Jon better be sending like 50K tomorrow. | | | |
| | | **KT2046:**  And btc is trading at 10.8 | | | |
| | | **KT2046:**  Fuck!! | | | |
| | | **KT2046:**  Fuck | | | |
| | | **KT2046:**  Fuck | | | |
| | | **KT2046:**  Fuck | | | |
| | | **MT7473:**  Calling you | | | |
| | | **MT7473:**  I will talk to Jon | | | |
| | | **KT2046:**  It's past the cut off | | | |
| | | **KT2046:**  We talked about this last night | | | |
| | | **KT2046:**  Tuesday for Wednesday | | | |
| | | **MT7473:**  He didn't have the money toda | | | |
| | | **MT7473:**  They never sent it | | | |
| | | **KT2046:**  Well thanks for letting me know | | | |
| | | [. . . .] | | | |
| | | **KT2046:**  I booked our flight. We board at 8:50pm and land at 10:10pm on Southwest. | | | |
| | | **KT2046:**  I texted [P.M.] | | | |
| | | **KT2046:**  Southwest Airlines - Print Boarding Passes and Security Documents.pdf | | | |
| 201 | 7/3/19 | Michael Tew and Kimberley Tew, using the [PM]@gmail.com account had sent the below emails to J.Y.'s business account with an attached invoice directing payment to their joint bank account at NFCU x8486<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>From PM@gmail.com<br>Dear National Air Cargo Group, Inc., | _See_ above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment.<br><br>There were four emails on this date with substantially similar content. Only the invoices were different. | A, K, L | SW_FIL_000115 20<br><br>SW_FIL_000115 32<br><br>SW_FIL_000115 24<br><br>NAC_E_131792-NAC_E_131793 |

154

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>[. . . .]<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>From PM@gmail.com<br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>[. . . .]<br><br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>From PM@gmail.com<br>Dear National Air Cargo Group, Inc.,<br><br>Your invoice is attached. Please remit payment at your earliest convenience.<br><br>Thank you for your business - we appreciate it very much.<br><br>[. . . .] | | | NAC_E_131798-<br>NAC_E_131799<br><br>NAC_E_131801-<br>NAC_E_131802<br><br>NAC_E_129112-<br>NAC_E_129113 |

155

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Dear National Air Cargo Group, Inc., <br><br> Your invoice is attached. Please remit payment at your earliest convenience. <br><br> Thank you for your business - we appreciate it very much. <br><br> From PM@gmail.com <br> Dear National Air Cargo Group, Inc., <br><br> Your invoice is attached. Please remit payment at your earliest convenience. <br><br> Thank you for your business - we appreciate it very much. | | | |
| 202 | 7/4/19 | **MT7473:** Transfer done <br> **MT7473:** Should I pay rent <br> **MT7473:** I transferred 40k to joint <br><br> [. . . .] <br><br> **KT2046:** I'm playing blackjack <br> **MT7473:** Ok cool. Shold we come down? Need anything? Otherwise we're just resting <br><br> [. . . .] <br><br> **KT2046:** Can you transfer like 30K into our joint <br> **KT2046:** Or 40 <br> **KT2046:** I don't know why it's all in yours <br> **MT7473:** Ok <br> **KT2046:** How's it going. <br> **KT2046:** I need you to transfer 4K to each of your accounts and do a cash advance with debit and pin <br> for $2,800 for each card and then after you get the tickets to go to cashier withdraw $600 <br> from each. <br> **KT2046:** When can you do that. How soon. | Bank records for the Tews' joint account at NFCU x8486 show multiple $600 ATM withdrawals at the Wynn casino in Las Vegas posting on July 5, 2019 and multiple $4,000 transfers from that same account., as well as a $40,000 transfer into the account.[NAVY_0000 0108-109] <br><br> *See* Indictment ¶¶ 23, 32, 33 <br><br> *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | A, F, G, K, N | SW_FIL_003331 20; <br> SW_FIL_003331 23 <br><br> SW_FIL_003271 47, <br> SW_FIL_003271 49- <br> SW_FIL_003271 52 |

156

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT7473:<br>KT2046: | I can do it in like 10 mins probably<br>Ok<br><br>[. . . .]<br><br> | | | |
| | | KT2046:<br>KT2046:<br><br>KT2046: | Where are you guys now<br>I need you to transfer 4K to each of your accounts and do a cash advance with debit and pin for $2,800 for each card and then after you get the tickets to go to cashier withdraw $600 from each.<br>When can you do that. How soon. | | | |
| 203 | 7/5/19 | KT2046:<br>MT7473:<br>MT7473:<br><br>KT2046:<br><br>KT2046:<br>KT2046:<br>MT7473: | I just won my first jackpot $5,115<br>Amazing!!!!!<br>Incredible<br><br>[. . . .]<br><br>I'm at blackjack<br><br>[. . . .]<br><br>Everything ok<br>I'm in pit8<br>Yep all good | *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas)<br><br>Bank records for the Tews' joint account at NFCU x8486 show multiple $600 ATM withdrawals at the Wynn casino in Las Vegas posting on July 5, 2019 and multiple $4,000 transfers from that same account., as well as a $40,000 transfer into the account.[NAVY_00000 108-109] | A, G, I, K, N | SW_FIL_003271 53;<br>SW_FIL_003271 56-<br>SW_FIL_003271 57 |
| 204 | 7/6/19 | KT2046:<br>KT2046:<br><br>KT2046:<br>KT2046: | Can you pls text info for flight tomouss<br>To [P.M.]<br><br>[. . . .]<br><br>What did you withdraw last night from each<br>Screenshot of messages with [M.M.] (IMG_5306.jpeg) | The reference to x3494, x5336 and x8486 are references to accounts at NFCU on which Michael Tew is a signatory. There is a $2000 Zelle transaction | A, G, K, N | SW_FIL_003271 59;<br>SW_FIL_003271 62 |

157

# Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | The screenshot shows a picture of a 1099 from for MCG reflecting compensation of $125,000 and the statement from MM "This is what I am talking about. This is not mine to deal with."<br><br>**KT2046:** This is why I'm asking about Jon<br>**Kley(KT):** 320 from 3494<br>420 from 5336<br>200 from 8486 | into account on July 6, 2019. [NAVY_00000109]<br><br>[P.M.] was a casino host at the Wynn Casino in Las Vegas<br><br>*See* above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | | |
| 205 | 7/7/19 | **KT2046:** Screenshot of messages from [M.M.] (IMG_5313.PNG)<br><br>The screenshot is of a message from "[M.M.]" with the message: "Just lost my transmission in my truck this morning, so great month for you to fuck me over, thanks again for keeping your word.  I will be forwarding you my tax bill for air national carriers shortly, that needs to be covered immediately. Losing my transmission on top of being late on rent means I do not have the means to cover it, nor the fucking patience to pussy foot around any longer."<br><br>**KT2046:** Screenshot of messages with [C.R.] (IMG_5311.PNG)<br>**MT7473:** He's just empty threats<br>**KT2046:** No [M.M.] is dumb<br>**KT2046:** So dumb<br>**KT2046:** Dumb enough to do it<br>**MT7473:** Nothing on bitcoin talk | *See* above, entry 11, for information about C.R., CR@gmail.com, and 5530JD and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment. | A, G, K, N | SW_FIL_0033313 0-<br>SW_FIL_0033313 6;<br>SW_FIL_0033313 8-<br>SW_FIL_0033313 9<br><br><br>SW_FIL_0032716 4-<br>SW_FIL_0032716 6; |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** [C.R.] is talking to someone<br>**MT7473:** Who<br>**KT2046:** He won't say<br>**MT7473:** Who hasn't been paid back<br>**MT7473:** Everyone has been paid back<br>**KT2046:** Screenshot of messages with [C.R.] (IMG_5316.PNG)<br>**KT2046:** I think [M.M.] already did something<br>**KT2046:** He posted an image on icq but deleted it<br>**KT2046:** We need to go to the police<br>**KT2046:** About [C.R.]<br>**MT7473:** Ok<br>**MT7473:** In car<br>**MT7473:** They're talking to each other<br>**MT7473:** I can't imagine it's anyone else<br>**KT2046:** Who<br>**MT7473:** [M.M.] and [C.R.]<br>**KT2046:** How do you know<br>**KT2046:** Call [M.M.]<br>**KT2046:** I mean [M.M.] will tell you<br>**KT2046:** I can't text him<br>**KT2046:** He's android<br>**MT7473:** You want me to call hi. Ow?<br>**KT2046:** Duck<br>**MT7473:** Ok I'll calm hun<br>**MT7473:** What's his number<br><br>[. . . .]<br><br>**MT7473:** Starbucks and then get bitcoin?<br>**MT7473:** Photo of BTC ATM Screen (58421695766__4F7DC008-7EAF-4182-9F2A-6A245390C3B2.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (58421696567__EA064795-5C25-4681-B0F7-F57D78A50A11.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (58423668159__F3BA86A3-AFF4-4766-8F36-2F4E8DD1C1BB.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (58423669043__DBCCE35D-6A15-478E- | Bank records for the Tews' joint bank account show transactiosn at the Wynn Casino in Las Vegas between 7/5/19 and 7/8/19 with a final $2,945.99 debit on July 8 [NAVY_00000110]<br><br>*See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas)<br>*See* Indictment ¶¶ 23, 32, 33 | | SW_FIL_003271 68-<br>SW_FIL_003271 90 |

159

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|-----|----|------|------|------|
| | | | 9F98-18A0B6F7CAE8.jpeg) | | | |
| | | | [. . . .] | | | |
| | | KT2046: | You saw the text from [M.M.]. | | | |
| | | KT2046: | I owe [redacted] BTC and $25K to [redacted[ and [C.R.] and [M.M.] are hreatening me | | | |
| | | | [. . . .] | | | |
| | | KT2046: | WTF is he talking about (email from [C.R.] R(IMG_5310.jpeg)) | | | |
| | | KT2046: | Check bitcointalk | | | |
| | | | [. . . .] | | | |
| | | KT2046: | Pls reply | | | |
| | | KT2046: | I just saw this | | | |
| | | MT7473: | Will check | | | |
| | | | [. . . .] | | | |
| | | KT2046: | QR Code (IMG_5322.jpeg) | | | |
| | | | [. . . .] | | | |
| | | Kley(MT): | As soon as your mom tranfers the money I'll bring them back and buy the coin | | | |
| | | KT2046: | Screenshot of messages with [C.R.] IMG_5323.jpeg, IMG_5324.jpeg) | | | |
| | | MT7473: | I'll call him | | | |
| | | MT7473: | You let him get to your | | | |
| | | MT7473: | He's been harassing us for months and months | | | |
| | | KT2046: | Because he can destroy us | | | |
| | | KT2046: | Call him? | | | |
| | | KT2046: | What will that do | | | |
| | | MT7473: | I'll file an fbi complaint and send it to him | | | |
| | | MT7473: | Tell him to have his lawyer contact me directly | | | |
| | | MT7473: | I'll respond to his email | | | |
| | | KT2046: | Don't | | | |
| | | KT2046: | You're not thinking it through | | | |
| | | MT7473: | Ok what's the solution then | | | |

160

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **KT2046:**    Just reacting<br>**MT7473:**    You're reacting<br>**MT7473:**    He's not getting a penny without a full documented unequivocal release from him and everyone else<br>**MT7473:**    So get his lawyer on the phone<br>**MT7473:**    That will distract him and he'll be spending money<br>**MT7473:**    He's literally not getting a penny until he stops<br>**MT7473:**    Then we go to finra and report him as an unlicensed broker<br>**MT7473:**    He's not getting a penny<br>**MT7473:**    Otherwise<br>**MT7473:**    Did [redacted] send<br>**KT2046:**    1900 and 2100 in a few<br>**MT7473:**    Shouldn't even be communicating with anyone that's threatening<br>**MT7473:**    Just say have your lawyer reach me directly<br>**MT7473:**    Period of<br>**MT7473:**    He's not getting a penny because he's not even sending it up the people that are owed<br>**MT7473:**    He's fucked and he knows it<br>**MT7473:**    And fucking our lives up doesn't get him any money any faster<br>**MT7473:**    And if he tatted us out to people that are owed and there was a real lawsuit they would have named us in the suit<br>**MT7473:**    There's nothing<br>**MT7473:**    He has nothing<br>**MT7473:**    He knows he has nothing<br>**MT7473:**    His lawyer told him he has nothingn<br>**MT7473:**    I'll send him an email with my list of demands to start getting him money<br>**KT2046:**    Don't<br>**KT2046:**    Put anything in writing<br>**MT7473:**    You are<br>**KT2046:**    But don't<br>**KT2046:**    Involve yourself<br>**MT7473:**    Talked to your mom she's waiting and ready<br>**MT7473:**    So then how can I help<br>**KT2046:**    He just sent the last part<br>**MT7473:**    Ok<br>**KT2046:**    You're helping by talking to me about it<br>**KT2046:**    Before reacting | | | |

161

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | But shit with [M.M.] and taxes | | | |
| | | **KT2046:** | I need a real plan | | | |
| | | **MT7473:** | The returns he says he is "promised" would be considered usury in most states, he would have to litigate in his local state, he would have no case and it doesn't get him any money | | | |
| | | **KT2046:** | If crypto keeps going up | | | |
| | | **MT7473:** | How much do you owe [M.M.] | | | |
| | | **MT7473:** | 30kv | | | |
| | | **KT2046:** | Just being accused | | | |
| | | **KT2046:** | I'm not worried he has a case | | | |
| | | **MT7473:** | She's transferring now | | | |
| | | **MT7473:** | Yeah so how do you send [C.R.] money. When does it ever end | | | |
| | | **MT7473:** | You can't send him a pennnu | | | |
| | | **KT2046:** | The only thing that concerns me about [C.R.] and [M.M.] is National | | | |
| | | **MT7473:** | It'll never end | | | |
| | | **MT7473:** | Ok well [M.M.] can be reasoned with | | | |
| | | **MT7473:** | He can | | | |
| | | **KT2046:** | I know | | | |
| | | **MT7473:** | I can talk to [M.M.] directly | | | |
| | | **KT2046:** | Plus he's nothing like [C.R.] | | | |
| | | **KT2046:** | Tell her to transfer $500 to Navy Federal 8825 | | | |
| | | **MT7473:** | Ok | | | |
| | | **MT7473:** | I can reason with [M.M.]. He's missing the point. He sent it to us. | | | |
| | | **MT7473:** | It's a tax wash | | | |
| | | **KT2046:** | That's not the point | | | |
| | | **KT2046:** | I told him does he have any idea how much interest I've paid him without 1099ing him | | | |
| | | **KT2046:** | She hasn't transferred anything to me | | | |
| | | **MT7473:** | The simple ones? | | | |
| | | **KT2046:** | I didn't want to say anything about the bitstarz win | | | |
| | | **KT2046:** | I knew it would become a mess | | | |
| | | **KT2046:** | What simple ones | | | |
| | | **MT7473:** | What do you mean | | | |
| | | **KT2046:** | There was only supposed to be one | | | |
| | | **KT2046:** | You sold it at the lowest price possible | | | |
| | | **KT2046:** | You operate on fear | | | |

162

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | That's why we are married | | | |
| | | **MT7473:** | Security hold on the simple send also she said | | | |
| | | **MT7473:** | I thought you said you wanted to sel it | | | |
| | | **KT2046:** | WTF | | | |
| | | **MT7473:** | That's what she said | | | |
| | | **MT7473:** | Funds are there | | | |
| | | **KT2046:** | I messaged [redacted] | | | |
| | | **MT7473:** | Is there another way he can send | | | |
| | | **MT7473:** | He can Zelle to my wells account and to navy federal accounts | | | |
| | | **KT2046:** | QR Code (IMG_5326.jpeg) | | | |
| | | **MT7473:** | New hours hey close at 5 Sunday's<br>Going to vaper jungle | | | |
| 206 | 7/8/19 | **MT1312:**<br><br><br><br>**JY1709:** | Hi buddy - I hope you had a nice weekend, I really do.  I'm sure I'm the last person you want to hear from, but I need your help TODAY, and want to go over the plan as well, when you can.  In motion on my end.  Takes a few days to get it all set up, and because of the holiday lost some time.<br>Morning. Hope you had a good weekend as well.<br>Ok. Let's talk around 12-12:30 ET.<br>Today is going to be VERY difficult to make a payment, but Tuesday for Wednesday is much more feasible | *See* Indictment ¶ 18 (alleging coordination between Michael and Yioulos on how to provide more specific descriptions of falsely claimed services on fraudulent invoices)<br><br>Bank records for the Tews' joint bank account show transactions at the Wynn Casino in Las Vegas between 7/5/19 and 7/8/19 with a final $2,945.99 debit on July 8 [NAVY_00000110] | A, G, K | SW_FIL_0034 23 24 |
| 207 | | | On July 8, 2019 Michael Tew, using mtew@sandhillrp.com sent an email to an employee at VCorp services in response to questions, stating:<br><br>1 Yes VCORP as agent | *See* above, entry 199 for information about GFL, AMR, Jessica Thompson, and the | A, K, L | VCORP_0000001 3 |

163

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | 2 Address [redacted] Marquette MI 49855<br>3 Need FEIN<br>4 Fiscal year end 12 31<br>5 Par value 0.01<br>6 Responsible Party Michael Tew 524.67.6212<br>7 Also will need an out of state registration for Colorado doing business in Colorado<br><br>What is the S Corp Election Option<br><br>How long will it take to set up and get the FEIN<br><br>Thank you!<br><br>Michael Michael Tew<br><br>mtew sandhillrp com<br>1 917.685.1312 | relevant paragraphs of the Indictment.<br><br>The address in Michigan is the address for Kimberley Tew's parents. | | |
| 208 | 7/9/19 | On July 9, 2019 Michael Tew, using mtew@sandhillrp.com sent an email to an employee at VCorp services in response to questions, stating:<br><br>The address is [redacted] in Marquette MI<br>Otherwise looks great<br><br>Also remember I need that Colorado document<br><br>Thank You!<br><br>Michael Tew<br>mtew sandhillrp com<br>1 917.685.1312<br><br>Later that same day, Michael Tew, using the same mtew@sandhillrp.com sent an email to an employee at VCorp services stating:<br><br>Perfect We are ok to go on the new version please submit<br>Thanks again | *See* above, entry 199 for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>The address in Michigan is the address for Kimberley Tew's parents. | A, K, L | VCORP_00000012 |

164

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------------|--|-------------------|------------------|--------|
| 209 | 7/9/19 | **MT7473:** | Send address | On July 9, 2019 $13,000 is sent via ACH to Wells Fargo Bank Account x6934 for services purportedly rendered by [PM] as fraudulently documented in [PM]7410 | A, G, K, N | SW_FIL_003331 45- SW_FIL_003331 47 |
| | | **Kley(KT):** | AttachmentQR Code (IMG_5395.jpeg) | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | Photo of BTC ATM Screen (58432856614__1E7B3490-CC66-47B8-8089-2FA884D47754.jpeg) | | | SW_FIL_003271 92 |
| | | **MT7473:** | Photo of BTC ATM Screen (58432857480__A313E177-778E-423A-B7A3-C22558D7752C.jpeg) | The x6934 account at Wells Fargo was controlled by Michael Tew, who had opened an account in the name of Sand Hill. | | |
| | | **MT7473:** | The simple card didn't work | | | |
| | | **Kley(KT):** | Only $380 maybe | | | |
| | | **MT7473:** | Just transfer another $600 to your other NF card | | | |
| | | **MT7473:** | Photo of BTC ATM Screen (58440367904__45DEBF03-390A-4FC8-840D-1B15603F2907.jpeg) | | | |
| | | **MT7473:** | Photo of BTC ATM Screen (58440368846__5115E0C5-2F9C-4620-914D-B0564BA982AA.jpeg) | "NF" is Navy Federal Credit Union, where teh Tews banked. | | |
| | | | [. . . .] | *See* above, entry 153, for background on Kimberley Tew's Simple account | | |
| | | **KT2046:** | Document (17).docx | | | |
| | | **KT2046:** | $100 from Simple | | | |
| | | | $500 Discover | | | |
| | | | $600 total from NFCU | | | |
| | | **KT2046:** | QR Code (IMG_5400.jpeg) | *See* Indictment ¶¶ 23, 32, 33 | | |
| | | **MT7473:** | Simple didn't work | | | |
| 210 | 7/9/19 | **MT7473:** | Photo of BTC ATM Screen (58450328191__511FDFA9-013A-4967-929A-B688D849B12B.jpeg) | Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. | A, F, G, K, N | SW_FIL_003271 96- SW_FIL_003271 98 |
| | | **MT7473:** | Photo of BTC ATM Screen (58450329127__A91DFB18-7525-4068-A859-58C4B4CB67DF.jpeg) | | | |
| | | | [. . . .] | | | |

165

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:**    https://www.blockchain.com/btc/tx/1cc7784c3d8a51b1174fa0bf7d2381e1ab635a09e36be1ba7e9cee05fd361f52<br>**KT2046:**    Sent .5 to your Kraken. Once it confirms do you think if you sell it will wire today? | KRKN_00000008; KRKN_00000020.<br><br>*See* Indictment ¶¶ 23, 32, 33 | | |
| 211 | 7/17/19 | **MT7473:**    Photo of deposit slip (58509605424__2568AA28-5D8C-4F5D-88FE-E8AEC4B80263.jpeg)<br>**KT2046:**    QR Code (IMG_5993.PNG)<br>**MT7473:**    Photo of BTC ATM Screen (58509764238__DAD8FAED-D440-47F3-90AB-52B5BBDE022D.jpeg)<br>**MT7473:**    Photo of BTC ATM Screen (58509777527__F5CB06D3-4CE7-40B2-8C15-8DE48A3EED88.jpeg)<br>**MT7473:**    Photo of BTC ATM Screen (58509782694__033FEC12-4697-411F-B4B3-C61F3DA80172.jpeg) | *See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_00333171 |
| 212 | 7/18/19 | **KT2046:**    Is Jon sending 9??????<br>**KT2046:**    Is jon sending 9<br>**MT7473:**    There is a chance something comes in this afternoonm (Screenshot of messages (Screen Shot 2019-07-18 at 9.35.31 AM.jpeg))<br><br>The screenshot shows a message in which Michael asks Jonathan Yioulos "can you send 9k. 9k" and Yiolous responds "I can't send anything today unless I get something this afternoon. I have nothing to send."<br><br>**MT7473:**    It happens<br>**KT2046:**    Is he send 9<br>**KT2046:**    Yes or no<br>**MT7473:**    Right now he says no<br>**KT2046:**    Jon sending money was a lie<br>**MT7473:**    Wasn't a lit<br>**MT7473:**    lie<br>**KT2046:**    He won't even send 9?<br>**MT7473:**    Jon and I spoke about it earlier in the week<br>**KT2046:**    Why won't he send 9?<br>**KT2046:**    You tricked me said you'd be back by 10 | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, F, G, H, K, N | SW_FIL_00327279-SW_FIL_00327296 |

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** I didn't trick you<br>**KT2046:** When does the 35K hit<br>**MT7473:** I told you this am what happened when is poke with [redacted]<br>**KT2046:** What date<br>**MT7473:** 60 days maybe sooner<br>**MT7473:** Then ih ave 35K / month<br>**KT2046:** Well you should have told dupshut I told my wife I'd be back by 10<br>**KT2046:** Ok<br>**MT7473:** I did<br>**KT2046:** I'll screenshot this<br>**KT2046:** I need btc now. Thanks.<br>**MT7473:** Did [redacted] get you btc?<br>**KT2046:** But you won't be back by 10<br>**KT2046:** So it's gone<br>**KT2046:** And Jon won't even send 9?<br>**MT7473:** I'll keep pushing jon<br>**MT7473:** Best to talk to him when he's at lumch<br>**MT7473:** He knows I won't give up<br>**MT7473:** I won't scream. I will go right to navy federal get cash and get BTC<br>**KT2046:** No<br>**MT7473:** I'll talk to jon to see how much I can get<br>**KT2046:** I don't want to touch it | | | |
| 213 | 7/19/19 | **JY1709:** Send me account info please<br>**JY1709:** Getting pmt out now<br>**JY1709:** Need it now<br>**MT1312:** Ok<br>**MT1312:** Sand HIll, LLC<br>Account: [x]6934<br>ABA: [x]0076<br>That's teh ACH ABA not wire for Wells<br>**MT1312:** Sorry<br>**MT1312:** All ok)<br>**MT1312:** ?<br>**JY1709:** Yes. Good to go<br>**MT1312:** Thx sorry was with kids didn't see your texts | *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>On July 22, 2019, $10,000 is sent via ACH to Wells Fargo Bank Account x6934 for services purportedly | A, G, K | SW_FIL_0034232 4 |

167

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | rendered by [PM] as fraudulently documented in [PM] 7410 | | |
| 214 | 7/22/19 | **MT1312:** | On a call - let's catch up when you can | On July 22, 2019, $10,000 is sent via ACH to Wells Fargo Bank Account x6934 for services purportedly rendered by [PM] as fraudulently documented in [PM] 7410<br><br>On July 24, 2019, $45,000 is sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics, as alleged in Count 12<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, G, K | SW_FIL_00342324 |
| | | **MT1312:** | Can you send anything small today | | | |
| | | **JY1709:** | No | | | |
| 215 | 7/29/19 | **KT2046:** | Will you pls work on getting money today or tomorrow and as much as possible from Jon and soon | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask | A, D, F, G, H, K, N | SW_FIL_00327358-<br>SW_FIL_00327360 |
| | | **Kley(MT):** | yes | | | |
| | | **KT2046:** | Is anything likely tomorrow | | | |

168

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(MT):** There's still a chance [redacted] sends today at 3pm or tomorrow<br>**KT2046:** Why at 3pm<br>**KT2046:** No I mean about Jon<br>**Kley(MT):** Maybe before<br>**Kley(MT):** I can ask jon to send something small but he's going to say tues for wed is what he can do. I'll talk to him again at lunch - 45 minutes<br>**KT2046:** Fine if it's tues for wed try for 75+ because people are cashing<br>**Kley(MT):** What if he can do 75 in two increments<br>**Kley(MT):** He may not be able to get 75 out in one shot<br>**KT2046:** Why two<br>**KT2046:** If the money is there<br>**KT2046:** Hello<br>**KT2046:** I don't see you trying<br>**KT2046:** And I was trying to sleep<br>**KT2046:** Get on this | Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| 216 | 7/30/19 | **JY1709:** Need bank info before 4<br>**MT1312:** Global Fuel Logistics, Inc.<br>Navy Federal Credit Union<br>Account Number [x]5336<br>Routing Number [x]4974<br>**MT1312:** Just walked in thank you!!!<br>**JY1709:** Thank you<br>**JY1709:** All good<br>**MT1312:** ??just want this over thank you<br>**JY1709:** Tell me about it! | *See* above, entry 199 for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>On August 2 2019 $47,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly rendered to Global Fuel Logistics | A, G, K, N | SW_FIL_00342324 |

169

# Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

**August 2019**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 217 | 8/1/19 | MT1312: | Look - I hear you man.  We tend to get into arguments when things don't go as planned.  Things generally don't go as planned and that's frustrating.  I'm trying to keep it together here and meet my own deadlines as well.  1 guy put in for $92K and he's problematic for the other $47K.  I'm trying to stretch everything as much as possible, I truly truly truly am.  I kwon we're at 192 so that leaves $150K. | On August 2 2019 $47,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly rendered to Global Fuel Logistics | A, C, G, H, I, J, K, N | SW_FIL_0034234 |
| | | JY1709: | Well yeah it's fucking frustrating. You know how tight things are here. You know the situation and yet it's nonstop. And I truly feel like after we get to $150K, it's not ending. I still have no BTC. This feels like it's never going to stop | *See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | | |
| | | MT1312: | The reason why these things happen is because of vol in BTC, which is why everyone wants out anyway.  Which is fine because this will al be over soon.  In other words if they expect X value but BTC goes up (as it has in teh past few days) all of a sudden they want more.  So the fight to get them less is ongoing if you see what I'm saying.  They will use their leverage to get as much as possible, we use ours to get them as little as possible.  I know this is a bit more information than you want to know, but I want you to know that I'm truly not bullshitting you.  Ok? | "SHILL" is a reference to "Sand Hill." *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | | |
| | | JY1709: | Yeah | | | |
| | | MT1312: | Please stay calm.  I honestly do not know the current cash position - other than its stretched.  I need to know if you can do anything for tomorrow.  I know you are worried about invoices.  We can make that work.  But if we have $ available we should use it to make this move faster.  Hear what I'm saying. | | | |
| | | MT1312: | Call me lunch? If you can? | | | |
| | | MT1312: | I need money for tomorrow or things can get fucked.  I know you're pissed, I know you are angry, I know you are totally frustrated.  I am also.  can we send to a different vendor.  I know you have obligations.  I know you are doing your best.  I know these things. | *See* Indictment ¶16, alleging use of the acronym "SHI LLC" to refer to Sand Hill. | | |
| | | JY1709: | No we can't send to a different vendor | | | |
| | | JY1709: | I'm not getting this all fucked up again | | | |
| | | JY1709: | ... | *See* Indictment ¶¶ 18, 19, 20 21, 22 (alleging various instances of coordination to make | | | |
| | | MT1312: | I understand.  Sorry been working on this on top of my other stuff - been falling behind. | | | |
| | | MT1312: | I know you are putting your foot down and I know you are managing | | | |

170

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | risk.  What is the most reasonable amount you MAY be Able to sneak out for tomorrow. | the fraudulent invoices more convincing and to more efficiently get money from NAC without getting caught) *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| | | **JY1709:**  15 | | | |
| | | **MT1312:**  If you can send $45K you get your 1 BTC.  If you don't get it over the weekend you don't send another penny.  Assuming we honor the deal and you get it then we pick up where we left off with the plan.  Think on it. | | | |
| | | **JY1709:**  That's so much to send again. Fuckkk | | | |
| | | **MT1312:**  True, but its a weekend and we will create invoices for fuel | | | |
| | | **MT1312:**  What if you sent 15K to [PM] (sand hill) and 30K to global fuels | | | |
| | | **JY1709:**  Idk | | | |
| | | **MT1312:**  [PM] goes to teh SHILL account and 30K goes to fuel | | | |
| | | **JY1709:**  Idk. I kind of want to be done with PM | | | |
| | | **MT1312:**  Ok | | | |
| | | **MT1312:**  Hang on | | | |
| | | **MT1312:**  Its all fuel and you owe AEG like 4m right, can you book it to that account in teh cash sheets? | | | |
| | | **JY1709:**  Yeah idk. | | | |
| | | **MT1312:**  If you send to global fuel you boo it to AEG on teh cash sheet.  Nobody knows that's an account of theirs | | | |
| | | **JY1709:**  You don't understand the process | | | |
| | | **MT1312:**  Obviously not ?? | | | |
| | | **MT1312:**  Calling | | | |
| | | **JY1709:**  I need bank information before 4.... | | | |
| | | **MT1312:**  On it | | | |
| | | **MT1312:**  ACCOUNT NAME: SAND HILL, LLC BANK NAME: WELLS FARGO Bank NA ACCOUNT NUMBER:    [x]6934 ABA:            [x]0076 | | | |
| | | **MT1312:**  This is for ACH not Wire.  Wells has different wire ABA | | | |
| | | **JY1709:**  Yup | | | |
| | | **MT1312:**  Assuming all is on plan, let me know how much and when next week if its Monday or Tuesday and I won't bother you again. | | | |
| | | **JY1709:**  47K. Out | | | |
| | | **MT1312:**  OMG.  Not sure how you did it but thank you. You'll have your BTC. | | | |
| | | **MT1312:**  Next week Monday / tues? Which one is better | | | |
| | | **JY1709:**  Probably Tuesday | | | |
| | | **MT1312:**  Works thanks | | | |

171

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **JY1709:** | In a board meeting. What's up | | | |
| | | **MT1312:** | All good just checking in you're ok | | | |
| | | **JY1709:** | Yeah I'm fine. Email the W9 over when you can. | | | |
| | | **MT1312:** | Ok | | | |
| | | | Just confirming you sent this to send hill but are booking as global fuel | | | |
| | | | Why not in the past just send to Michael Tew (account holder) at Navy federal - in the past. | | | |
| | | **JY1709:** | Yes. Sent to sand hill but booking as global fuel. | | | |
| | | **MT1312:** | We're just trying to understand the banking issues | | | |
| | | **JY1709:** | Cause I have to put the name in the remittance. If I put your name, and someone ever pulls the remittance, we're fucked | | | |
| | | **JY1709:** | I don't hate doing it in a pinch, but still. | | | |
| | | **MT1312:** | Got it | | | |
| | | | Doesn't everyone know sand hill also? | | | |
| | | **JY1709:** | Yes, but it goes out as SHI LLC. | | | |
| | | **JY1709:** | Nobody knows what the fuck that is. And I can be like o shit I put the wrong name | | | |
| | | **JY1709:** | If it says Michael TEW, that's too obvious | | | |
| | | **MT1312:** | Interesting Question Could you just use a potion of the account number as the name on the account? | | | |
| | | **MT1312:** | That might be a good one | | | |
| | | **JY1709:** | I'll talk to you tomorrow | | | |
| | | **MT1312:** | Np | | | |
| 218 | 8/3/19 | **MT1312:** | Any chance you can send Monday for Tuesday at least in part | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) *See* Indictment ¶ 18 (alleging coordination between Michael and Yioulos on how to provide more specific descriptions of falsely claimed services on fraudulent invoices) | A, C, F, H, I, J, K, N | SW_FIL_003423 24 |
| | | | Working on your BTC | | | |
| | | | No bullshit | | | |
| | | | Send me that address again thx | | | |
| | | **JY1709:** | Gonna be tough | | | |
| | | **JY1709:** | 19nWxoPtMzya2iyknK6PSfsJbZFAJUWJY1 | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|---------|---|-------------------|------------------|--------|
| 219 | 8/4/19 | **MT7473:** | Photo of BTC ATM screen (58664509361__87A1CE2F-3E24-4127-8060-3226F5EA9117.jpeg) | Messages sent to Kimberley Tew<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_00333177-SW_FIL_00333178 |
| | | **MT7473:** | Photo of BTC ATM screen (58664510489__6A2CAB3E-93B6-41D2-84F6-C74789431E25.jpeg) | | | |
| 220 | 8/5/19 | **MT1312:** | ok. Been a long weekend. Kimberley sent you 0.5. things got tight because fo that move up in BTC. Are you cool with that? We can send you the rest ASAP. I literally had every dollar I had to get that to you. Q: can you send anything at all for tomorrow ? I promise you are going to get the rest. Trying to keep this short - its been a busy few days | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>On August 6, 2019, $15,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly rendered to Global Fuel Logistics. Michael Tew was the sole signatory on that account, which was held in the name of Sand Hill.<br><br>*See* above, entry 199 .for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | A, B, C, D, F, G, H, I, K, N | SW_FIL_00342324 |
| | | **MT1312:** | Sorry for the delay. I mean that | | | |
| | | **JY1709:** | I really can't send anything for tomorrow. we have no cash right now. It's even going to be tight tomorrow to send, but I will obviously | | | |
| | | **JY1709:** | And thank you for sending. I'll let you know when it arrives | | | |
| | | **MT1312:** | The goal is to get you 2.5 BTC over time as we close this out | | | |
| | | **JY1709:** | You are a saint. I have a plan to close this out too. Pretty easy one with regards to invoices | | | |
| | | **MT1312:** | We will get you to that 2.5 | | | |
| | | **MT1312:** | I know you don't have cash. Or not a lot. Can you squeeze 7K out? It makes a difference | | | |
| | | **MT1312:** | Is there any way you can send $25K today? | | | |
| | | **MT1312:** | We're going bounce a check to investors | | | |
| | | **MT1312:** | A check to an investor | | | |
| | | **JY1709:** | There's no way I can do that | | | |
| | | **JY1709:** | I'm sorry. I really can't | | | |
| | | **MT1312:** | ACCOUNT NAME: SAND HILL, LLC<br>BANK NAME: WELLS FARGO Bank NA<br>ACCOUNT NUMBER:      [x]6934<br>ABA:                [x]0076 | | | |
| | | **JY1709:** | 15K our | | | |
| | | **JY1709:** | Out* | | | |
| | | **MT1312:** | AMAZING | | | |
| | | **MT1312:** | Talk after work | | | |
| | | **MT1312:** | THANK YO | | | |

173

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 221 | 8/5/19 | **KT2046:** | I have $3,700 in cash | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) *See* Indictment ¶¶ 23, 32, 33 <br><br>Bank records show financial transactions at the Monarch Casino in Blackhawk Colorado on August 5, 2019 on the Tews' joint NFCU bank account x8486. NAVY_00000127.<br><br>Bank records show wire transactions from the x6934 account | A, C, F, G, H, K, N | SW_FIL_003331 80-SW_FIL_003331 92 |
| | | **KT2046:** | But we need to deposit $2,900 into navy | | | |
| | | **KT2046:** | Maybe you can wire $3K | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | So nothing for jon? | | | |
| | | **KT2046:** | I have $3,700 in cash that we can buy btc with | | | |
| | | **MT7473:** | Ok right | | | |
| | | **KT2046:** | Sending him something tonight | | | |
| | | **MT7473:** | Io can wire 3K in the am | | | |
| | | **KT2046:** | Have to | | | |
| | | **MT7473:** | I can wire whatever when the money hites | | | |
| | | **MT7473:** | Int eh am | | | |
| | | **MT7473:** | Love yo | | | |
| | | **MT7473:** | drive safe | | | |
| | | **MT7473:** | Did you eat? | | | |
| | | **KT2046:** | I can only get $2,500 | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | Yeah I know | | | |
| | | **KT2046:** | Waiting for it | | | |
| | | **KT2046:** | Then driving home | | | |
| | | **MT7473:** | I actually can get more at a different location but whatever works | | | |
| | | [. . . .] | | | | |
| | | **KT2046:** | In Aurora though right? | | | |
| | | **MT7473:** | That gas station where I bought the other day after aurora navy federal that's a good one | | | |
| | | **MT7473:** | Its about 20 minute driv | | | |
| | | **MT7473:** | Whatever works | | | |
| | | **MT7473:** | I can definitely deliver there at same atm company if we want | | | |
| | | **MT7473:** | BTW great job!! Made 1700 bucks in black hawk! | | | |
| | | **KT2046:** | Do they ID you | | | |
| | | **KT2046:** | Like they check the camera | | | |
| | | **MT7473:** | Yeah there's a camera | | | |

174

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** Same ATM machine<br>**MT7473:** I don't know if they check the camerca<br>**KT2046:** What happened that one time I deposited<br>[. . . .]<br>**KT2046:** This place is so slow<br>**MT7473:** Different atm company<br>**MT7473:** What. Casino are you at<br>**KT2046:** Monarch<br>**MT7473:** Good crab buffet<br>**KT2046:** Do you want me to deposit<br>**KT2046:** In Aurora<br>**MT7473:** Should we try it?<br>**KT2046:** Its not really on your way home<br>**KT2046:** It's a risk<br>**MT7473:** I can do it when you get back<br>**KT2046:** Eta is prob 9:30<br>**KT2046:** If I don't go<br>**KT2046:** To atm<br>**MT7473:** Just come home and I can go back out<br>**MT7473:** Just About 0.3<br>**MT7473:** His address is on my grey phone<br>**KT2046:** I'm not sending it immediately<br>**MT7473:** Photo of BTC ATM screen (58671603791__DFD9500C-C7E2-4C90-8D55-3CA16B080A71.jpeg)<br>**MT7473:** Photo of BTC ATM screen (58671604418__D6E9B5DD-2559-4A81-88EF-8B9DD4F6D57B.jpeg) | | | |
| 222 | | **KT2046:** Are you getting 9K of btc<br>**KT2046:** Where are you<br>**MT7473:** IMG_2714.jpeg<br>**MT7473:** Photo of BTC ATM screen (58680143185__ED97D42F-6E63-433E-9BE0-299362E5500F.jpeg)<br>**MT7473:** Photo of BTC ATM screen (58680155593__B1FFE297-9671-4851-A48C-8B7F543880A1.jpeg)<br>**MT7473:** Photo of BTC ATM screen (58680162706__CAE5C37B-FD23-4610-8364-269575456A93.jpeg) | *See* Indictment ¶¶ 23, 32, 33<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>On August 6, 2019, $15,000 sent via ACH | A, D, F, G, H, I, K, N | SW_FIL_0033319 2-SW_FIL_003331 93<br><br>SW_FIL_003273 87-SW_FIL_003273 93 |

175

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | [. . . .] | to Wells Fargo Bank Account x6934 for services purportedly rendered to Global Fuel Logistics | | |
| | | **MT7473:** | Jon saying he can only send 30 today because ofd the 15 | | | |
| | | **MT7473:** | He says they have no money | | | |
| | | **KT2046:** | WTF | | | |
| | | **KT2046:** | I owe Aaron 30 | | | |
| | | **KT2046:** | Ask him if I can borrow his BTC then until tomorrow | | | |
| | | **KT2046:** | 15EpimocgedRpx8Bay6KDUywsh3ABsR4X2 | | | |
| | | **KT2046:** | Are you going to withdrawal cash or are you still here | | | |
| | | **MT7473:** | Bank is cloerd | | | |
| | | **KT2046:** | Where are you | | | |
| | | **MT7473:** | Still on with wells and fighting with jon | | | |
| | | **KT2046:** | Tell him to send the BTC back it's just sitting there. He'll get it back tomorrow. | | | |
| | | **MT7473:** | Yeah he's just pissed | | | |
| | | **KT2046:** | Did you tell him to send it back | | | |
| | | **KT2046:** | That messed everything up | | | |
| | | **MT7473:** | yes | | | |
| | | **MT7473:** | Hes just pissed but he'll send | | | |
| | | **KT2046:** | What did he say | | | |
| | | **KT2046:** | When | | | |
| | | **MT7473:** | Just now | | | |
| | | **MT7473:** | He said sure Micheal every fucking time | | | |
| | | **KT2046:** | When is he sending | | | |
| | | **KT2046:** | So stop taking it from him | | | |
| | | **KT2046:** | That attitude | | | |
| | | **MT7473:** | He said he just sent it and it was only 0.45 | | | |
| | | **MT7473:** | I'll just tell him he'll have 0.5 tomorrw | | | |
| | | **KT2046:** | Sending Jon .5 back | | | |
| | | **MT7473:** | You're incredible | | | |
| | | **KT2046:** | Maybe we will send him more today | | | |
| | | **KT2046:** | Already sent him .25 back | | | |
| 223 | 8/6/19 | **MT1312:** | Funds received, thank you.  How you holding up.  Are we good for $45 for tomorrow?  I know it is tight.  busy day for me also | *See* Indictment ¶ 18 (alleging coordination between Michael and Yioulos on how to | A, F, G, H, I, K, N | SW_FIL_003423 24 |
| | | **JY1709:** | $45? I just sent 15 | | | |
| | | **JY1709:** | You're good for 30 | | | |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **JY1709:** | We HAVE NOOOOOO MONEY | provide more specific descriptions of falsely claimed services on fraudulent invoices) *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>On August 7, 2019, $31,500 is sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Global Fuel Logistics, as alleged in Count 13 of the Indictment | | |
| | | **MT1312:** | Calm down | | | |
| | | **MT1312:** | Ok. | | | |
| | | **JY1709:** | I'm calm lol | | | |
| | | **MT1312:** | Ok KT asking if she can borrow your BTC until tomorrow in that case.  She obv will return it tomorrow.  Will be helpful. Understand your position. | | | |
| | | **MT1312:** | I know you hate me asking but you're going to get it | | | |
| | | **JY1709:** | every fucking time | | | |
| | | **JY1709:** | Sure Michael | | | |
| | | **MT1312:** | 15EpimocgedRpx8Bay6KDUywsh3ABsR4X2 | | | |
| | | **MT1312:** | You will have it in your wallet tomorrow | | | |
| | | **MT1312:** | Take it easy | | | |
| | | **MT1312:** | Its yours | | | |
| | | **JY1709:** | Just sent it. And it was only .45 by the way. | | | |
| | | **MT1312:** | I got it. Hey it's my fault.  I misunderstood. | | | |
| | | **MT1312:** | You'l have 0.5 back tomorrow | | | |
| | | **JY1709:** | Ok | | | |
| 224 | 8/11/19 | **MT7473:** | Photo of BTC ATM screen (58723701528__F244A6C1-BF81-4CEE-A1F1-1C5B4DC66B8E.jpeg) | *See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_00333198 |
| | | **MT7473:** | Photo of BTC ATM screen (58723712987__6442180A-433B-4DA2-8871-EBC48D8A2F5E.jpeg) | | | |
| 225 | 8/13/19 | **KT2046:** | Will send Jon how much | Messages sent to Michael Tew<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, G, K, N | SW_FIL_00327422 |
| | | **KT2046:** | ? | | | |
| | | **KT2046:** | How much is there | | | |
| 226 | 8/13/19 | **MT1312:** | How are you at 230/3 eastern | "Squeeze something small for me tomorrow" is a reference to sending out another payment from NAC | A, F, G, H, K | SW_FIL_00342324 |
| | | **JY1709:** | Works | | | |
| | | **MT1312:** | Sorry - can you squeeze something small for tomorrow. Small. | | | |
| | | **MT1312:** | I know it's late. | | | |
| | | **JY1709:** | Too late. I already left for the day | | | |

177

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | JY1709: | I had to go to a mediation | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | | |
| | | MT1312: | Ok | | | |
| | | JY1709: | Sorry, but too late | | | |
| | | MT1312: | Sorry about your divorce | | | |
| | | MT1312: | I'm sure it's tough | | | |
| 227 | 8/14/19 | MT1312: | When are you free | *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. The x6934 account was for Sand Hill. Michael Tew was the sole signatory | A, F, G, H, K | SW_FIL_003423 24 |
| | | MT1312: | Let me know when you are back | | | |
| | | MT1312: | ACCOUNT NAME: SAND HILL, LLC | | | |
| | | | BANK NAME: WELLS FARGO Bank NA | | | |
| | | | ACCOUNT NUMBER: [x]6934 | | | |
| | | | ABA: [x]0076 | | | |
| | | JY1709: | $35 today | | | |
| | | MT1312: | Copybthanks | | | |
| | | | Let's get invoices done | | | |
| | | JY1709: | Ok sounds good. | | | |
| 228 | 8/15/19 | MT1312: | All good for tomorrow? Literally been slammed | *See* above, entry 199 .for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, F,G, H, K | SW_FIL_003423 24 |
| | | JY1709: | Send bank info | | | |
| | | MT1312: | Global Fuel Logistics, Inc. | | | |
| | | | Navy Federal Credit Union | | | |
| | | | Account Number x5336 | | | |
| | | | Routing Number x4974 | | | |
| | | JY1709: | You want it to that one now? | "You want it to that one now" is a reference to the fact that J.Y. had not previously sent money for Global Fuel to that account. The x5336 account was held in the name of Michael | | |
| | | JY1709: | It's out | | | |
| | | MT1312: | Thank you | | | |

178

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | Tew and he was was the sole signatory. | | |
| 229 | 8/18/19 | **KT2046:** | I feel like it's all dependent on Jon who is clearly losing it and that makes me nervous | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, G, H, I, K, N | SW_FIL_0032743 9 |
| | | **KT2046:** | I just want to know a time | | | |
| | | **MT7473:** | I'll get it I promise | | | |
| | | | I promise | | | |
| | | **KT2046:** | I love you | | | |
| | | **KT2046:** | I would just feel better if you talked to him today | | | |
| | | **MT7473:** | I will | | | |
| | | | He texted he can talk tonight | | | |
| | | **KT2046:** | He skydiving right now | | | |
| | | **MT7473:** | Real mid life crisis | | | |
| 230 | 8/19/19 | **MT1312:** | Global Fuel Logistics, Inc. | On August 19, 2019 $9,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics, as alleged in Count 14 of the Indictment | A, G, K | SW_FIL_0034232 4 |
| | | | Navy Federal Credit Union | | | |
| | | | Account Number [x]5336 | | | |
| | | | Routing Number [x]74974 | | | |
| | | **JY1709:** | 9500 out | | | |
| | | **MT1312:** | Thx | | | |
| | | | Talk tonight | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |
| | | | | The x5336 account was held in the name of Michael Tew and he was was the sole signatory. | | |

179

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 231 | 8/20/19 | **JY1709:** | Hey, I really need that BTC soon. At least one. Like I'm finalizing shit for the divorce and she's really harping me on logging in. It's essential I get it soon because she wants 1/2 of it. You've gotta come through for me here | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) [C.A.] was an owner of NAC<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | A, B, C, F, G, K, N | SW_FIL_003423 24 |
| | | **MT1312:** | Hi buddy.  Listen - I will pull through.  Kimberley already knows, I told her all about it yesterday.  You mentioned last time we spoke 30 days so I wasn't sweating it for now.  I also have another idea I want to run by you - unrelated.  But of course. | | | |
| | | **JY1709:** | On with [C.A.] | | | |
| | | **MT1312:** | Ok ring me when can thx | | | |
| | | **MT1312:** | You still on with him? | | | |
| | | **JY1709:** | Yes | | | |
| | | **MT1312:** | He loves to talk | | | |
| | | **MT1312:** | Need to know if you can do ANYTHING for tomorrow. | | | |
| | | **MT1312:** | I know you need the bTC.  I'm on it.  I also have an idea for you / us that I want to discuss | | | |
| | | **JY1709:** | Lets talk at 3:40 | | | |
| | | **MT1312:** | Ok thx | | | |
| | | **MT1312:** | Can you ach 2k to wells | | | |
| | | **MT1312:** | Just 2 | | | |
| | | **MT1312:** | Sorry | | | |
| | | **JY1709:** | Accounts are literally overdrawn by $6,000 | | | |
| | | **JY1709:** | I can't | | | |
| | | **MT1312:** | Ok | | | |
| 232 | 8/21/19 | **JY1709:** | ⌨This is for global fuel logistics...$256K so far sent since July 24th | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 86, for information about L.W., PM, PM@gmail.com and the relevant paragraphs of the Indictment. | A, B, D, G, H, I, K | SW_FIL_003423 24 |
| | | **JY1709:** | ⌨This is for [PM] for payments I don't have invoices for | | | |
| | | **JY1709:** | Starting with the $9200 essentially, even thought the "number" was supposed to be $350K, I've sent $315K already between the two since July 1. I'm really not mad, I'm just letting you know | | | |
| | | **MT1312:** | Copy that.  Just got back [. . .].  I will get you the invoices.  Look - I don't have a lot of time, I'm working 4 jobs, mostly for equity, at like a quarter of the national salary and keeping the lights on here.  Admittedly a lot of this is my fault, I have undershot the mark a bit primarily because I just want to keep things between us copasetic.  I like      you and I respect you and what you have done for my family I will never forget.  I'm angry beyond belief at the [C.A./L.A.] family and all their BS - but that's separate.  I'm | | | |

180

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | desperately trying to get this thing done and behind us and I need you to just hear me me out so we can get it done for both of us, then we can move on to our monthly thing until end of year which will also be a great help. Plus you get your BTC as per our agreement. I respect you and we have an agreement. | "DFAS" is a reference to a client of NAC. "[J.M.]" is a reference to a NAC employee | | |
| | | MT1312: | I need $50k today for tomorrow and then $40K early next week and we're done. I know that's more than we agreed, but some things out of my personal control happened - we're only like what $50K over that we're really arguing about here. I can call you - just on a call now and can speak after, have a noter call at 1pm EST. | | | |
| | | MT1312: | I know you are under tremendous stress - I know that. We have to stick together and just move on from this jon. | | | |
| | | MT1312: | That's me talking sincerely. | | | |
| | | MT1312: | Thank you - brb on a quick call | | | |
| | | JY1709: | I can't do 50K today | | | |
| | | MT1312: | Please don't yell. This is man to man. | | | |
| | | MT1312: | ok | | | |
| | | JY1709: | Dfas money never came | | | |
| | | MT1312: | copy | | | |
| | | MT1312: | OH FUCK | | | |
| | | MT1312: | Can you do anything today? | | | |
| | | JY1709: | LITERALLY. NO DFAS | | | |
| | | MT1312: | I'm jammed up to keep pushing | | | |
| | | MT1312: | fuck | | | |
| | | JY1709: | I'll call around 230 | | | |
| | | JY1709: | Yes I can do something. | | | |
| | | MT1312: | ok | | | |
| | | MT1312: | Ok thanks | | | |
| | | MT1312: | Thanks jon | | | |
| | | MT1312: | Call me 2:30ish | | | |
| | | MT1312: | I'm getting a lot of shit here - trying to get some clarity on my end as I know you are as well. I have a call at 2:30 EST actually for about 30 mins. Should we talk before? I can talk at 2 if thet works? | | | |
| | | JY1709: | Sure | | | |
| | | JY1709: | FYI. She's chasing the invoices hard for global fuel. I bought some time here, but she's clearly snooping around | | | |
| | | MT1312: | Call me when can | | | |

181

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **JY1709:** On a call | | | |
| | | **MT1312:** Sorry that was a stupid idea. Yes Talk shortly. | | | |
| | | **JY1709:** Send me account info. I can probably send $25K today, but not much more today. Maybe more tomorrow, but this is tough | | | |
| | | **JY1709:** On a call with [J.M.] | | | |
| | | **MT1312:** Ok | | | |
| | | **JY1709:** Trying to get rid of him | | | |
| | | **JY1709:** Send me info | | | |
| | | **MT1312:** ACCOUNT NAME: SAND HILL, LLC | | | |
| | | BANK NAME: WELLS FARGO Bank NA | | | |
| | | ACCOUNT NUMBER:     []6934 | | | |
| | | ABA:          []076 | | | |
| | | **JY1709:** Sand hill now??? | | | |
| | | **JY1709:** I thought it hit the limit? | | | |
| | | **MT1312:** It's 3p day rolling | | | |
| | | **MT1312:** It's rolling off | | | |
| | | Is that ok? | | | |
| | | **JY1709:** Yes that's fine | | | |
| | | **JY1709:** We need to talk tonight tho. Gotta get invoices in the system by Friday | | | |
| | | **MT1312:** Yes no prob | | | |
| | | **MT1312:** I will deliver for you | | | |
| | | I know you are doing everything you can | | | |
| | | **JY1709:** I sent $28K | | | |
| | | **MT1312:** Amazing | | | |
| 233 | 8/22/19 | **MT1312:** I'm so sorry I missed you last night time got away from me | $28,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Global Fuel Logistics, as alleged in Count 15 of the Indictment | A, B, D, G, H, I, K | SW_FIL_003423 24 |
| | | **MT1312:** Should I just send the invoiced | | | |
| | | **JY1709:** Call you in an hour | | | |
| | | **MT1312:** Ok | | | |
| | | **MT1312:** Hang in there | | | |
| | | **JY1709:** Need account | | | |
| | | **MT1312:** ACCOUNT NAME: SAND HILL, LLC | *See* above, entry 199, for information about GFL, AMR, Jessica | | |
| | | BANK NAME: WELLS FARGO Bank NA | | | |
| | | ACCOUNT NUMBER:     [x]6934 | | | |
| | | ABA:          tel:[x]0076 | | | |
| | | **MT1312:** Can you send 25 | | | |
| | | **MT1312:** Thank you | | | |

182

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **JY1709:** | I've already sent $37500 this week. I really can't | Thompson, and the relevant paragraphs of the Indictment. | | |
| | | **MT1312:** | I've pushed everything quite a bit. Its a tight situation. The most you can send teh better. I do understand your situation as well. | | | |
| | | **JY1709:** | I've sent nearly $350K in a month. I really don't think you get it. When things are this tight | | | |
| | | **MT1312:** | I know you just want your BTC, I know you are traveling tomorrow, do you want to talk tonight? | | | |
| | | **JY1709:** | Lets just talk this weekend. I'm fucking beat and my flight leaves at 6AM. Honestly, as long as we get everything in (invoices) by Monday morning we'll be good. Thanks for checking in though | | | |
| | | **MT1312:** | Are you sure? I'm fine with that if you are. | | | |
| | | **JY1709:** | Yeah it's fine | | | |
| | | **MT1312:** | I know you're getting hte shit beat out of you | | | |
| 234 | 8/22/19 | **MT7473:** | Photo of BTC atm screen (58819208745__3EF1FF8D-1D5C-4633-B3CF-A9DE77C5C873.jpeg) | Messages sent to Kimberley Tew *See* Indictment ¶¶ 32, 33 | A, G, K, N | SW_FIL_00333204 |
| | | **MT7473:** | Photo of BTC atm screen (58819222503__821E0D55-9B82-4B1C-8429-97F4321D3301.jpeg) | | | |
| | | **MT7473:** | Photo of BTC atm screen (58819226709__CD79F235-7CE4-4868-8410-34BA94330B01.jpeg) | | | |
| 235 | 8/23/19 | **MT7473:** | Photo of BTC atm screen (58827087661__F806463C-E2CB-4F9B-A62F-3F30ACDCB95A.jpeg) | | A, G, K | SW_FIL_00333205 |
| | | **MT7473:** | Photo of BTC atm screen (58827101199__01E0B75D-95F9-409E-952E-6CE614AB56A1.jpeg) | | | |
| | | **MT7473:** | Photo of BTC atm screen (58827113143__B1F41B58-0039-49F9-966F-1B1172B9F903.jpeg) | | | |
| | | **MT7473:** | Photo of BTC atm screen (58827121542__E2A2AC50-4456-40DF-9BE8-8590192A2813.jpeg)A, G, K**MT7473:** Photo of deposit slip (58829292164__A74CCE32-1CF2-432A-BC34-793B7FFB8CD2.jpeg) | | | |
| | | **MT7473:** | Photo of deposit slip (58829294760__54D0395F-7445-4E73-9935-DF8D79E2751C.jpeg) | | | |
| 236 | 8/25/19 | **MT7473:** | Photo of BTC atm screen (58847015339__A9A51E2F-A3E7-4FAA-841D-BC5F08D8F427.jpeg) | *See* Indictment ¶¶ 32, 33 | A, G, K, N | SW_FIL_00333208 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| 237 | 8/26/19 | MT1312:<br>MT1312:<br><br><br><br>MT1312:<br>MT1312:<br>JY1709:<br>JY1709:<br>MT1312:<br>MT1312:<br>JY1709:<br>MT1312: | When are you free<br>ACCOUNT NAME: SAND HILL, LLC<br>BANK NAME: WELLS FARGO Bank NA<br>ACCOUNT NUMBER:       [x]6934<br>ABA:                  tel:[x]0076<br>Can you send 40<br>Done<br>Yes, if I send $45K, do you think I can get at least 1BTC soon?<br>Either way, I sent $45K. It's done. Out. THANK GOD<br>Yes<br>Pulling in now was on with marcum believe it or now<br>Haha bizarre<br>So funny | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | A, B, D, G, H, I, K, N | SW_FIL_0034 2324 |
| 238 | 8/26/19 | MT7473:<br><br>MT7473: | Photo of BTC atm screen (58852688011__68F0A3B1-EB0D-44D3-B3C9-E74E23C57122.jpeg)<br>Photo of BTC atm screen (58852699336__D23EF89D-97D6-4C6A-905E-A0FC5A838DD2.jpeg) | The Tews were anticipating a payment on August 27, 2019 $45,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Global Fuel Logistics | A, G, K, N | SW_FIL_0033 3209 |
| 239 | 8/27/19 | MT7473:<br><br>MT7473:<br><br>MT7473:<br><br>MT7473: | Photo of BTC atm screen (58861620814__36BB7665-EEC8-4AD7-AFA3-ED56CB7C368C.jpeg)<br>Photo of BTC atm screen (58861632596__C57DBD8D-E359-49C5-8463-620D9A379AC8.jpeg)<br>Photo of BTC atm screen (58861644155__710EC1D1-7D28-4EEE-AF21-2803B196D904.jpeg)<br>Btc hit let me know what you want | On August 27, 2019 $45,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Global Fuel Logistics. | A, G, K, N | SW_FIL_0033 3209-SW_FIL_0033 3212 |

184

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **KT2046:** Sell 2K rn<br>**KT2046:** And transfer to NFCU<br>**MT7473:** dsone<br>**KT2046:** Can you send rest to below<br>**KT2046:** 1JdPtwSPRWtzAykDaJWY7GQMhibTr65yJR<br>**MT7473:** Done<br>**KT2046:** Can you send me another cb btc wallet address for you please<br>**MT7473:** 3DmXYf68zAGPzQUpceJP5niNieZNYh9xjA | Bank records show two Zelle transfers, for $1,000 each, posting on August 28, 2019 in teh Tews NFCU x8486 joint bank account.<br><br>*See* Indictment ¶¶ 32, 33 | | |
| 240 | 8/28/19 | **MT7473:** Photo of deposit slip (58870318763__22AF392D-2117-4192-8997-F6FBE5280445.jpeg)<br>**MT7473:** Photo of deposit slip (58870322460__CF7F28E8-FFA8-4CB1-8D71-23156E190DDE.jpeg)<br>**KT2046:** The second one is too blurry<br>**KT2046:** Where are you????<br>**KT2046:** Can't reach you<br>**MT7473:** Photo of deposit slip (58870365236__EC77764A-4C1F-4FF4-B959-82DD83B332EB.jpeg)<br>**MT7473:** Photo of deposit slip (58870368231__81D64BA3-840B-4EBA-9118-A01C5EF6CD6F.jpeg) | *See* Indictment ¶¶ 32, 33 | A, G, K, N | SW_FIL_0033321 3-<br>SW_FIL_0033321 4 |
| 241 | 8/28/19 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Apologies for the delay in getting you these.<br><br>Attached is our W9 and invoices covering payments you made to us through August 20. I am still scanning our files for anything we might be missing to get you the rest by tomorrow.<br><br>Thank you for your business!<br><br>Jessica Thompson | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br>*See* Indictment ¶¶11, 12, 13 | A, K, L | GFL_00000055-GFL_00000059 |

185

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Global Fuel Logistics, Inc. | | | |
| 242 | 8/29/19 | **KT2046:** 1MTwXiUhC23oTgXEE7VQXoezXVz58YxL38<br>**MT7473:** Sent<br><br>[. . . .]<br><br>**KT2046:** I don't know why you never talk to jon in front of me<br>**MT7473:** Because we will end up fighting<br>**MT7473:** Headed to btc atm nowadays<br>**KT2046:** You said you would have an update at 6:30am<br>**KT2046:** Or was that to shut me up<br>**MT7473:** I thought he would call me before work<br>**KT2046:** You let him treat you like shit<br>**KT2046:** He started all of this<br>**MT7473:** It's all my fault I have to eat crow from everyone<br>**KT2046:** Wah wah wah<br>**KT2046:** You don't need to take shit from him<br>**MT7473:** Just the fright<br>**MT7473:** Truth<br>**KT2046:** But get the numbers right<br>**KT2046:** Get a hold of him<br>**MT7473:** Get another 168?<br>**MT7473:** I just almost got hit<br>**KT2046:** Stop texting<br>**KT2046:** Including DB that's another 213. Plus our credit cards and taxes and car.<br>**MT7473:** Photo of BTC ATM screen (58878759310__31BA9717-615F-40CF-A1B0-B1755DE433F5.jpeg)<br>**MT7473:** So I need a 400k commitment from Him. today and 90k ASAP<br>**KT2046:** I don't think the former is possible but the 90 is going to turn into double that if not dealt with.<br>**KT2046:** Stop letting him treat you like shit<br>**KT2046:** You don't deserve it from him<br>**MT7473:** And you just take it<br>**KT2046:** Photo of BTC ATM screen (58878770997__27C47A16-37C9-47DD-86D0-7AB63E841F7C.jpeg)<br>**MT7473:** So just lay into him and try to get 180!<br>**MT7473:** ? | On August 29, 2019 $45,000 sent via ACH to Wells Fargo Bank Account [x]2064 for services purportedly made to Global Fuel Logistics, as alleged in Count 45 of the Indictment<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶¶ 32, 33 | A, D, G, H, I, J, K, N | SW_FIL_0033321 5<br><br><br>SW_FIL_0032751 2-<br>SW_FIL_0032752 2 |

**Government's _James_ Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:**    I do deserve it<br>**MT7473:**    I fuck everyone's shit up<br>**KT2046:**    Ok I don't respect you<br>**KT2046:**    You're not listening<br>**KT2046:**    Let him treat you like shit and piss me off<br>**KT2046:**    I don't see the BTC yet<br>**MT7473:**    I just did it<br>**KT2046:**    How many times have I told you to not text and drive<br>**MT7473:**    I'm chasing Jon sending him nasty texts now<br>**MT7473:**    He won't answer me and said he will call me this afternoon<br>**KT2046:**    Tell him fuck him and his mid life crisis<br>**KT2046:**    If he doesn't call you within the next 20 min I will personally turn him in. Fuck it.<br>**KT2046:**    He can't even help us at this point<br>**KT2046:**    And he's so abusive you're afraid to tell him what's really needed<br>**KT2046:**    He's going to tell you he can't send anything or like 20<br>**MT7473:**    He said he will make it work he'll do whatever he can to help<br>He will call me at 1 eastern<br>I told him we could all just go to the sec and turn everyone in<br>**KT2046:**    No plan<br>**KT2046:**    No clarity<br>**KT2046:**    Make sure that account is set up for online wires like today more than the minimum.<br>150K+?<br>**MT7473:**    Ok | | | |
| 243 | 8/29/19 | On August 29, 2019 J.Y. used his business email account to respond to questions by NAC employees about a payment to Global Fuel Logistics, writing "I'll send confirms." | _See_ above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br>_See_ Indictment ¶¶11, 12, 13 | A, K, L | NAC_E_70403 |
| 244 | 8/29/19 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing: | _See_ above, entry 199, for information about | A, K, L | GFL_00000008-GFL_00000009 |

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Dear Jon:<br><br>Attached is an updated invoice 1001.<br><br>Let me know if you have any questions.<br><br>Thank you!<br><br>Jessica Thompson | GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. *See* Indictment ¶¶11, 12, 13 | | |
| 245 | | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are the remainder of the invoices that have been paid and / or are due immediately<br><br>Thank you for your business!<br><br>Jessica Thompson<br>Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. *See* Indictment ¶¶11, 12, 13 | A, K, L | GFL_00000060-GFL_00000063 |
| 246 | 8/30/19 | **MT7473:** Photo of BTC ATM screen (58882335544__A6E825A0-4408-4C58-9456-8D1AE7AC23D3.jpeg)<br>**MT7473:** Photo of BTC ATM screen (58882337054__1E05EA14-F320-416E-AF9E-942A9870E394.jpeg) | Messages sent to Kimberley Tew<br><br>*See* Indictment ¶¶ 32, 33 | A, G, K, N | SW_FIL_00333219 |

188

Government's *James* Log
United States v. Tew, 20-cr-000305-DDD

**September 2019**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 247 | 9/3/19 | **KT2046:** | Just hit jackpot for 8K | On September 4, 2019, $45,000 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics, as alleged in Counts 16 and 46 of the Indictment<br><br>Bank records show transactions at the Wynn Casino in Las Vegas on the Tews Joint NFCU bank account x8486 on Sept. 4, 2019 and transfers to Kimberley Tew's NFCU account x4602, where there are ATM withdrawals and debits at the casino. NAVY_00000148; 158]. There were also purchases at the Wynn posted to the Global Fuel Logistics x29064 account. [WFB_00002340]<br><br>Records from the Wynn show Kimberley Ann Tew staying between 9/1/19 and 9/15/19. | A, G, H, I, J, K, N | SW_FIL_003332 23-<br>SW_FIL_003332 26 |
| | | **MT7473:** | Omg!!!!! We're in business baby! | | | |
| | | **KT2046:** | Actually $7,730 | | | |
| | | **MT7473:** | Omg!!! Hit it! | | | |
| | | **KT2046:** | Lol | | | |
| | | **KT2046:** | Only $1,200 on the second | | | |
| | | **KT2046:** | Fuck this place. Getting paid today. | | | |
| | | **MT7473:** | Still incredible | | | |
| | | **MT7473:** | Incredible<br>Just winning | | | |
| | | **MT7473:** | Last flight out is 9:45, booked that flight, gets in at 12:30 am. | | | |
| | | **KT2046:** | How far is navy federal | | | |
| | | **MT7473:** | Navy federal is 15 minute drive west, BTC atm is 30 minutes back NE from there | | | |
| | | **KT2046:** | We will do btc. When we get back | | | |
| | | **KT2046:** | Stick with me | | | |
| | | **MT7473:** | I;'m sticking with you - you're coming back in an hour, or you're saying figure it out later | | | |
| | | **KT2046:** | Hi! let's go get that money from NFCU 26K ! Bring it back here! | | | |

189

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | WYNN_00000624. They also show Kimberley Tew winning $7,730 on September 3, 2019. [WYNN_00000174]. The Wynn hotel estimated that she lost $23,651.82 gambling on slots in 2019 and lost $38,550 gambling at tables. [WYNN_00000179] | | |
| | | | | *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | | |
| 248 | 9/6/19 | MT7473: | Your 5296 card said "not active" Couldn't get anything Got 600 from 4769 and 2863 And I could get 600 from each of mine That's 1800 from mine 1200 from yours Plus 3000 Six thousand total | Bank records show two $600 ATM withdrawals from account x4062 in the name of Kimberley Tew {NAVY_00000158], 2 $600 ATM withdrawals from the joint account x8486 [NAVY_0000149], a $600 ATM withdrawal from Michael Tew's NFCU account x3494. [NAVY_00000520], and a $600 ATM withdrawal from Michael Tew's NFCU | A, G, K, N | SW_FIL_003332 27-SW_FIL_003332 34 |
| | | MT7473: | All set I can only buy up to 2k more on this atm until like 1 or whenever we did the 12k today [. . . .] | | | |
| | | KT2046: KT2046: | $3,500 to [redacted business] Account Number: [x]8260 | | | |
| | | KT2046: | Hold on depositing to [redacted] until we talk | | | |

190

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | In line | account x5336. [NAVY_00000524] | | |
| | | **KT2046:** | Deposit 5K | | | |
| | | **KT2046:** | To [redacted] | | | |
| | | **MT7473:** | Ok | *See* Indictment ¶¶ 23, 32, 33 | | |
| | | | Confirmed? | | | |
| | | | Going to chase now it's like 3 blocks | | | |
| | | **KT2046:** | I'll send you a text to extra confirm | | | |
| | | **MT7473:** | Ok | | | |
| | | **MT7473:** | At chase | | | |
| | | **KT2046:** | K | | | |
| | | **KT2046:** | 5K deposit | | | |
| | | **MT7473:** | Ok | | | |
| | | **MT7473:** | Making now | | | |
| | | **MT7473:** | Then coming back | | | |
| | | **KT2046:** | Sam just surfaced | | | |
| | | **KT2046:** | Might have a 4K deposit at Chase | | | |
| | | **KT2046:** | Or Boa | | | |
| | | **KT2046:** | Is the latter close to you | | | |
| | | **MT7473:** | There is a bofa close yes | | | |
| | | **KT2046:** | CHASE | | | |
| | | | Account # 51370[x]rvices llc | | | |
| | | | California | | | |
| | | **KT2046:** | This is for Sam | | | |
| | | **KT2046:** | Just shoot me a copy of receipt blank | | | |
| | | **KT2046:** | 4000 | | | |
| | | **MT7473:** | ok | | | |
| | | **MT7473:** | Photo of deposit slip (58948175101__4A171850-5F55-4898-87C9-8CB6FB96FD87.jpeg) | | | |
| | | **KT2046:** | For the $4k deposit when it's completed | | | |
| | | **MT7473:** | Photo of deposit slip (58948194739__8A0B9BBE-49FD-42C3-A688-63017EC709A5.jpeg) | | | |
| | | **KT2046:** | Can you check to see if you received 2K via Zelle to NFCU | | | |
| | | **MT7473:** | Got text confirm checking account now | | | |
| 249 | 9/7/19 | **KT2046:** | I need you to call jon | *See* Indictment ¶ 18 (alleging coordination between Michael and | A, B, D, F, G, H, K, N | SW_FIL_003275 68- |
| | | **MT7473:** | I need a plan and dates | | | |
| | | **MT7473:** | And say what to him | | | |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | We never sent him anything | Yioulos on how to provide more specific descriptions of falsely claimed services on fraudulent invoices) | | SW_FIL_003275 82 |
| | | **MT7473:** | I haven't spoken to him since Tuesday when I said we would send him btc | | | |
| | | **MT7473:** | We need to send him something | | | |
| | | **MT7473:** | We have to | | | |
| | | **KT2046:** | Something | | | |
| | | **KT2046:** | Fuck this shit | | | |
| | | **KT2046:** | I have nothing to send | | | |
| | | **KT2046:** | I need you to not freak out | | | |
| | | **MT7473:** | I need you to not freak out | | | |
| | | | [. . . .] | | | |
| | | **KT2046:** | You're freaking | | | |
| | | **KT2046:** | You're afraid of Jon | | | |
| | | **MT7473:** | I'm not afraid of Jon<br>We specifically said we would send him btc for his divorce<br>He sent that 90k as we asked | | | |
| | | **MT7473:** | Why do we purposely fuck hom over and then make me go back to him hat in hand | | | |
| | | **MT7473:** | Just tell me why we do it so I understand | | | |
| | | **KT2046:** | I don't have it what do you want me to do | | | |
| 250 | 9/8/19 | **MT7473:** | Photo of BTC ATM screen (58966783274__7CAE38F8-1512-459C-BB1E-94FA763CE0AE.jpeg) | *See* Indictment ¶¶ 32, 33 | A, G, K, N | SW_FIL_003332 36 |
| 251 | 9/9/19 | **MT1312:** | Need you to come up for air or I have to send an email | On September 10, 2019, $18,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Count 17 of the Indictment<br><br>On September 10, | A, B, D, F, G, H, I, J, K, N | SW_FIL_003423 24 |
| | | **JY1709:** | I'll be available soon. If you're asking for money... | | | |
| | | **JY1709:** | I'll literally lose my shit | | | |
| | | **JY1709:** | I'm not kidding. I'll fucking lose it | | | |
| | | **MT1312:** | We needed more, we couldn't ask you, she got scammed, I was traveling, I got back late Friday, I know she lost the money and your BTC just trying to handle everything so I don't go to jail (because I'll be the one to go to prison). We've been fighting over it all weekend long. I mean what do you want me to do. I mean that, I'm asking you, what do I do. | | | |
| | | **JY1709:** | Fuck you | | | |
| | | **JY1709:** | Fuck you | | | |
| | | **JY1709:** | Fuck you | | | |

192

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:** SHE GOT SCAMMED. Are you kidding me? Go fuck yourself<br>**MT1312:** i know how it looks - in the end it will all come out, you will see, none of the funds ended up in our pocket<br>**MT1312:** Do you want to come to Denver one weekend<br>**JY1709:** Possibly<br>**MT1312:** May be a good idea<br>**JY1709:** Just send me the bank shit before it gets late. I want to take care of today's<br>**MT1312:** Ok - 2 secs<br>**MT1312:** In the middle of getting all of this squared away with her just hte two of us - believe it or not first time. I'm sorry jon. Sending bank<br>**MT1312:** SHILL or Global Fuel<br>**JY1709:** Whatever is easier. I'd prefer global though<br>**MT1312:** Ok 2 secs<br>**MT1312:** Have to make sure I get hte right routing<br>**MT1312:** Can you send ACH to Global Fuel but to SHILL<br>**JY1709:** Listen, I'd really rather send to the global fuel account in case anyone looks...<br>**MT1312:** ACCOUNT NAME: SAND HILL, LLC<br>       BANK NAME: WELLS FARGO Bank NA<br>       ACCOUNT NUMBER:    [x]6934<br>       ABA:        [x]0076<br>**JY1709:** Thanks<br>**MT1312:** We think we should meet in person at some point. Anywhere<br>**MT1312:** We can talk later<br>**JY1709:** Agreed<br>**MT1312:** At this point we have to. You can come here spend the weekend or we can meet in FL. We can go to a rockies or broncos game<br>**MT1312:** Whats your sports team<br>**JY1709:** Yeah we'll figure it out. Die hard bills fan, but just a fan of sports in general. I'll make it out to Denver probably<br>**MT1312:** How soon could you make it do you think - think about it and let me know. No direct flights so tougher for us with the [. . . .]to mobilize<br>**JY1709:** Not sure. Really tough to know with the whole divorce thing and house sale and the bipolar attitude of [C.A.]<br>**JY1709:** Ok, ACH is out. 18K<br>**MT1312:** Copy that. Thank you jon. When can you talk tonight<br>**JY1709:** 11 ?? | 2019, $28,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources<br><br>"SHILL" is a reference to Sand Hill. *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>"[C.A.]" is a reference to the owner of NAC | | |

193

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | **JY1709:** | So after 9PM your time | | | |
| | | **MT1312:** | yeah...meeting your girl: ) | | | |
| | | **MT1312:** | [. . . .] | | | |
| | | | Can we talk in am | | | |
| | | **JY1709:** | Sure | | | |
| | | **MT1312:** | Thx sorry | | | |
| 252 | 9/9/19 | **MT7473:** | Photo of BTC ATM screen (58967611293__CA005090-EA52-4EAA-9CD9-906D07A92E9C.jpeg) | Message to Kimberley Tew<br><br>*See* Indictment ¶¶ 32, 33 | A, G, K, N | SW_FIL_00327575 |
| 253 | 9/10/19 | **MT7473:** | Photo of BTC ATM screen (58983275109__7204C976-2851-44C5-AEC3-FB347FF2A581.jpeg) | Messages to Kimberley Tew.<br><br>*See* Indictment ¶¶ 32, 33<br><br>On September 10, 2019, $18,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Count 17 of the Indictment<br><br>On September 10, 2019, $28,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources | A, G, K, N | SW_FIL_00333246-SW_FIL_00333247 |
| | | **MT7473:** | Photo of BTC ATM screen (58983286737__84466F5F-5456-45E9-A542-6EE327B8972C.jpeg) | | | |
| | | **MT7473:** | Photo of BTC ATM screen (58983294750__BA5FCB27-45D8-4BD4-B75E-9D95877F22D8.jpeg) | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | I have 17 in global fuel | | | SW_FIL_00327577 |

194

**Government's *James* Log**
**United States v. *Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | | | | |
| 254 | 9/13/19 | **Kley(KT):** I want to get 15K of btc<br>**MT7473:** Ok<br>**MT7473:** You need me to go to bank?<br>**Kley(KT):** Yes<br>**Kley(KT):** How else would I get it<br>**MT7473:** Right I forgot its at wells no prob<br>**MT7473:** Photo of BTC ATM Screen (59009287920__2DD9B3F9-BF8F-4452-892E-10683FDE65EC.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (59009298297__52EBCD8A-4285-4767-A45A-33EDDD592EF5.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (59009308985__D355134C-768C-4483-B773-C57CA6A60CC6.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (59009323062__2B7B1BA3-1BD9-4390-A759-033B4D99CCDB.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (59009333408__E24FFA08-CDF9-451A-8824-DA6EA5E2ED38.jpeg)<br>**MT7473:** Photo of BTC ATM Screen (59009343449__3CEAA1BD-E0B7-48B1-87F0-9C7207B76B99.jpeg)<br><br>[. . . .]<br><br>**MT7473:** Getting cash now<br>Go to both of the atms ?<br>**MT7473:** Photo of BTC ATM Screen (59010711965__C010CF29-381D-4FF2-9B18-4165C88D1DE3.jpeg)<br><br>[. . . .]<br><br>**MT7473:** Photo of BTC ATM Screen (59010923693__CD24F82A-1A6B-4691-B203-57D613426719.jpeg) | *See* Indictment ¶¶ 32, 33<br><br>On September 13, 2019, $51,500 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources<br><br>Bank record show a $15,000 withdrawal from Michael Tew's Sand Hil bank account at Wells Fargo x6934 on September 13, 2019. [WFB_00002519]<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and | A, G, K, N | SW_FIL_003332 51-<br>SW_FIL_003332 54;<br>SW_FIL_003332 58-<br>SW_FIL_003332 59 |

195

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| | | | | the relevant paragraphs of the Indictment. | | |
| 255 | 9/14/19 | MT7473: | Photo of BTC ATM Screen (IMG_3189.jpeg) | Bank records show two $600 ATM withdrawals on 9/14/19, posting to the Tews' NFCU joint account x8486 on 9/16. [NAVY_00000152]. | A, G, K, N | SW_FIL_003332 60-SW_FIL_003332 64 |
| | | MT7473: | How much am I getting out of navy | | | |
| | | Kley(KT): | 1200 out of joint | | | |
| | | MT7473: | Ok | | | |
| | | MT7473: | And 1knohtbof wells | | | |
| | | | | | | |
| | | | [. . . .] | | | |
| | | | | *See* Indictment ¶¶ 32, 33 | | |
| | | MT7473: | Got the cash headed to atm | | | |
| | | | | | | |
| | | | [. . . .] | | | |
| | | | | | | |
| | | MT7473: | Texted them and asked if they could increase my limit just in case | | | |
| | | MT7473: | 59017862814__D8BE5BCF-7C1F-49AA-96EC-ADB6F5C58666.jpeg | | | |
| 256 | 9/16/19 | MT1312: | Hi what's the plan this week | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On September 17, 2019, | A C,, F, G, H, I, K, N | SW_FIL_003423 24 |
| | | | Need 75k | | | |
| | | | Can you make that happen by wed or thurs | | | |
| | | | Can do two increments | | | |
| | | | Let's also make a plan for rest of year | | | |
| | | | I have the numbers | | | |
| | | JY1709: | It's bleak as fuck. We'll talk later today if that's cool. Gotta get settled | | | |
| | | MT1312: | Ok | | | |
| | | | Talk at 3? | | | |
| | | JY1709: | Works | | | |
| | | MT1312: | Perfect thanks buddy | | | |
| | | MT1312: | Urgent if we can get something for tomorrow.  I know it's tight.  Talk at 3 | | | |
| | | MT1312: | I have a 1pm MT call, can we talk prior because I also have a 1;30.  Can we talk at 2:45 EST | | | |
| | | JY1709: | Can't. 245 it is | | | |
| | | MT1312: | Nothing for tomorrow? Not small? | | | |
| | | JY1709: | I DONT FUCKING KNOW | | | |
| | | MT1312: | I got it. | | | |
| | | JY1709: | 5 min | | | |

196

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT1312:** | Ok | $11,950 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| | | **MT1312:** | You good? | | | |
| | | **JY1709:** | Yeah sorry finishing a call | | | |
| | | **MT1312:** | All good | | | |
| | | **MT1312:** | I have a call in 10 mins can we speak before | | | |
| | | **MT1312:** | Please please please try and send something small | | | |
| | | | Re your BTC | | | |
| | | | Kimberley suggested maybe better to hand you 2 BTC on a stick when you come here she told me to ask you what you prefer. Said she needs two weeks. | | | |
| | | **JY1709:** | I really don't think I can. Just send bank info. I can try, but I can't promise | | | |
| | | **JY1709:** | And no, I'd rather just have it sent to me | | | |
| | | **MT1312:** | Ok. I'll tell her. She figured maybe stick because then can't trace the records.  Just saying. | | | |
| | | **MT1312:** | Global Fuel Logistics, Inc. | | | |
| | | | Navy Federal Credit Union | | | |
| | | | Account Number [x]5336 | | | |
| | | | Routing Number [x]4974 | | | |
| | | **MT1312:** | Copy and get it | | | |
| | | **JY1709:** | 11,950 | | | |
| | | **MT1312:** | THANK YOU | | | |
| 257 | 9/17/19 | **MT1312:** | How are you doing | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>On September 17, 2019, $11,950 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | A, B, D, B, C, F, G, H, I, K, N | SW_FIL_003423 24 |
| | | **MT1312:** | Canh you talk at 2/2:30 | | | |
| | | **JY1709:** | Sure | | | |
| | | **MT1312:** | 0.5 sent to youi | | | |
| | | **MT1312:** | Check your address | | | |
| | | **MT1312:** | 13CzsY9L9cibW6yVPkDJg3ys7bu5Mi4t5f | | | |
| | | **JY1709:** | Got it! | | | |
| | | **MT1312:** | Told you | | | |
| | | **MT1312:** | It's gonna be ok | | | |
| | | **JY1709:** | Haha I know. I'm just stressed cause of the situation here. If we had more cash, this wouldn't even be a worry | | | |
| | | **MT1312:** | Send what you can don't get into any trouble - maybe we wait until next week for the larger chunk | | | |
| | | **MT1312:** | Kimberley says she's running a script - says she can turn hat 0.5 to 0.75 if you want. She can make money with it right now.  The day is going well | | | |

197

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** Up to you<br>**MT1312:** That's how she came up with the 0.5<br>**MT1312:** Some days are really good<br>**MT1312:** 1Cm5DqFvF8CRr1qhDffEf3pnguqkB6pFRA<br>**MT1312:** Send back here if you want<br>**MT1312:** She will turn to 0.75<br>**JY1709:** How quickly...<br>**MT1312:** How fast do you want it she asked<br>**JY1709:** I think I'll just hold for now. I think I'm getting served with papers today and I want to make sure I at least have her portion<br>**MT1312:** You'll have it<br>**JY1709:** Send me bank info. Trying for 30<br>**MT1312:** ACCOUNT NAME: SAND HILL, LLC<br>BANK NAME: WELLS FARGO Bank NA<br>ACCOUNT NUMBER:　　[x]6934<br>ABA:　　　　　　[x]0076<br>**MT1312:** Is that ok or do you ant to send to global fuel account<br>**JY1709:** Na that's fine<br>**MT1312:** Thx did you figure it out<br>**MT1312:** Need to also know if you are sending back to work it for today<br>**MT1312:** You'll have more than 0.5 back so you don't have to worry. We know it's important<br>**JY1709:** Ok. I'd rather just keep it<br>**JY1709:** But if you need it back for yourself, then just say that lol<br>**MT1312:** Trust me I know how it looks<br>She's running her script and right when to when she withdrew it it affects it. She can get a loan for 5k which will cost us 10k<br>**MT1312:** Talking to her now<br>**JY1709:** So you want it back then?<br>**MT1312:** She came to me and said shit I have jons BTC I'm sending ypbuimband then said shit I just lost momentum in my script<br>**JY1709:** Ok? FYI, I just sent $33,500 for tomorrow<br>**MT1312:** Yes pls<br>When do you need the 0.5 min for divorce<br>**MT1312:** And thank you Jon<br>**JY1709:** I need a full 1 BTC within a week or so<br>**MT1312:** Thank you | On September 18, 2019, $33,500 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Counts 18 and 47 of the Indictment<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |

198

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|-------------------|------------------|--------|
| | | I'm working my aaa off getting back on my feet | | | |
| | | **JY1709:** I'll just send it back now | | | |
| | | **MT1312:** Ok. I thought you just needed a half for her. Do you need the extra for cash? | | | |
| | | **MT1312:** She's very detail oriented | | | |
| | | **JY1709:** I just need to show the full Btc. then send her half of it probably | | | |
| | | **JY1709:** It's really not that much haha out of everything I'm sending | | | |
| | | **MT1312:** I see | | | |
| | | **JY1709:** Sent the BTC back | | | |
| | | **MT1312:** Ok THSNK you | | | |
| | | I see i missed a call from you do you need me to ring you | | | |
| | | **MT1312:** Other phone was dead and charging | | | |
| 258 | 9/18/19 | **MT1312:** Did you get AEG to put anything up to cover payroll? | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, F, G, I, J, K, N | SW_FIL_003423 24 |
| | | **MT1312:** Do you think your GF will start digging through your phone? | | | |
| | | **JY1709:** No never. It's not that serious | | | |
| | | **MT1312:** Do you have any money at all | | | |
| | | **MT1312:** Asking straight tup | *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| | | **JY1709:** What??? | | | |
| | | **MT1312:** NA | | | |
| | | **JY1709:** What are you saying? | | | |
| | | **MT1312:** KT was running her script, was waiting for $15K from my airline / chairman of frontier project, he literally never sent it I've been slaving away for him and it fucked everything up. | | | |
| | | **JY1709:** STOP DOING STUPID SHIT | | | |
| | | **JY1709:** IM TIRED OF THIS | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| | | **JY1709:** FUCK YOU | | | |
| | | **JY1709:** IMG | | | |
| | | **JY1709:** OMG | | | |
| | | **JY1709:** I DONT WANT EXCUSES | | | |
| | | **JY1709:** I Want this fine | | | |
| | | **JY1709:** Done* | | | |
| | | **JY1709:** Fucking script fuck off | | | |
| | | **JY1709:** I'm going to bed. HOW MUCH MONEY DO YOU THINK I CAN SEND OUT | On September 18, 2019, $33,500 sent via ACH to Wells Fargo | | |
| | | **JY1709:** HOLY FUCK | | | |
| | | **MT1312:** Look - this is going to be done. We are on the same team. We are. I need | | | |

199

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | to know if there anything small to eek out, that's all I'm asking. My ass is on the line really more than anyones. | Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Counts 18 and 47 of the Indictment | | |
| | | MT1312: | Are you there? | | | |
| | | MT1312: | You say we're in this together too... | | | |
| 259 | 9/19/19 | MT7473: | Photo of BTC ATM Screen (59054321828__67FAE604-1540-4C4E-BE4F-0A5E7897487C.jpeg) | Sent to Kimberley Tew *See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_003332 65 |
| | | MT7473: | Photo of BTC ATM Screen (59054333166__AD69FF78-AF73-4E57-876C-E9A66FA9A420.jpeg) | | | |
| 260 | 9/22/19 | KT2046: | Have you called Jon once this weekend to prepare | On September 20, 2019, $41,500 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources | A, D, F, G, K, N | SW_FIL_003276 66-SW_FIL_003276 69 |
| | | KT2046: | No | | | |
| | | KT2046: | I am FUCKED | | | |
| | | | [. . . .] | | | |
| | | MT7473: | I will call Jon as soon as we are back | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | | |
| | | MT7473: | How much do we need this week | | | |
| | | MT7473: | Another 90 | | | |
| | | KT2046: | I'm losing my mind | | | |
| | | KT2046: | It's that we need something for Tue | | | |
| | | MT7473: | I'm calling | | | |
| | | KT2046: | Or tomorrow | | | |
| 261 | 9/23/19 | MT7473: | Just got to atm | Bank records show a $300 transfer from Michael Tew's NFCU account x3494 on 9/23/19 [NAVY_00000529] and a $300 transfer | A, D, G, K, H, I | SW_FIL_003332 68-SW_FIL_003332 70 |
| | | MT7473: | Love you | | | |
| | | MT7473: | I feel so bad | | | |
| | | MT7473: | Screenshot of conversation with JY (Image-1.jpeg) | | | |
| | | | The screenshot of the conversation with J.Y. forwarded to Kimberley Tew is a photograph showing a list of available cash balances and the message "FYI. This is today | | | |

200

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | so far and there's a wire going out already and pending payments that will bring this negative. So as I said last week, Wednesday or Thursday is going to have to be it." [. . . .] | | from Michael Tew's NFCU account x5336. *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | | SW_FIL_003276 72 SW_FIL_003338 31 |
| | | **Kley(KT):** | You have to transfer $300 from your 3494 account to 5336 account to withdraw $300 from 5336 | | | |
| | | **MT7473:** | Got 3900 on way | | | |
| | | | [. . . .] | | | |
| | | **KT2046:** | You need to talk to Jon | | | |
| | | **KT2046:** | I have people asking for money today | | | |
| 262 | 9/25/19 | **JY1709:** | Calll you in a bit | On September 26, 2019, $52,750 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Counts 19 and 48 of the Indictment *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about | A, G, K | SW_FIL_003423 24 |
| | | **MT1312:** | all good thnakjs! | | | |
| | | **JY1709:** | How's 1:30? | | | |
| | | **MT1312:** | Perfect | | | |
| | | **JY1709:** | This is gonna be tough, but best option is 45 and 45 probably | | | |
| | | **MT1312:** | Confirming all ok | | | |
| | | **MT1312:** | ? | | | |
| | | **JY1709:** | Yes | | | |
| | | **JY1709:** | 52750 | | | |
| | | **MT1312:** | Thx | | | |

201

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | NAC's finances to facilitate when fraudulent payments could be made) *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |
| 263 | 9/26/19 | **JY1709:** 60K our<br>**JY1709:** Out<br>**MT1312:** Omg!<br>Jon- none of us want to get caught.  You good?<br>**MT1312:** Send me your BTC address<br>**JY1709:** We're good. This just has to be it for a WHILE<br>**JY1709:** 1F5uevzzWDxjnPC6gByJUymRknfL1chb8k<br>**MT1312:** Bitcoin Transaction 73732d6888908f8dd5cfab44264f146241d48a61ad95f9aa8d730bbe4ce70a41 blockchain.com<br>**MT1312:**<br>https://www.blockchain.com/btc/tx/73732d6888908f8dd5cfab44264f146241d48a61ad95f9aa8d730bbe4ce70a41 | On September 27, 2019, $60,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Count 49 of the Indictment<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, B, F, G, H, I, K, M, N | SW_FIL_00342324 |
| 264 | 9/26/19 | **KT2046:** Photographs<br>**KT2046:** I don't know what routing number to use<br>**KT2046:** Her address is our home address | On September 27, 2019, $60,000 sent via ACH to Wells Fargo | A, G, K | SW_FIL_00327689- |

202

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | Send5K | Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Count 49 of the Indictment | | SW_FIL_00327698 |
| | | **KT2046:** | Actually send 7K | | | |
| | | **KT2046:** | Use OUR address right? | | | |
| | | **KT2046:** | Can you please go to WF to withdraw 20K and deposit at atm immediately? BTC is dropping in price again | | | |
| | | **MT1312:** | Ok | | | |
| | | **MT7473:** | Photograph | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |
| | | **MT7473:** | Photograph | | | |
| | | **MT7473:** | Photograph | | | |
| | | **MT7473:** | Photograph | | | |
| | | **MT7473:** | Photograph | | | |
| | | **Kley(MT):** | Photograph | | | |
| | | **KT2046:** | Can you stop at vaper jungle to buy the rest | M.V. is Kimberley Tew's mother | | |
| | | **MT7473:** | Photograph | | | |
| | | **MT7473:** | Yes will go to vaper now | | | |
| | | **KT2046:** | [m.v.]@gmail.com | Bank records show a $15,0000 transfer to Aaron Nussdorf from Michael Tew's Sand Hill account x6934 and a $7,000 transfer to Mary Vertanen [WFB_0000252]. | | |
| | | **KT2046:** | [redacted name] Account Number: [x]8867 Name:[redacted[ JP Morgan /Chase | | | |
| | | **KT2046:** | Bank: JP Morgan Chase Wire Routing: [x]021 Account Number: [x]8867 Name: [redacted] Address: [redacted address] Old Westbury, New York 11568 Account Type: Checking | | | |
| | | | | Bank records also show $600 atm withdrawals from Michael Tew accounts x3494, x5366, from Kimberley Rew's NFCU account x3009, and from the Tews joint NFCU account x8486. NAVY_00000169; 533; | | |
| | | **MT7473:** | $15K sent | | | |
| | | **KT2046:** | Can you get $ from your debit cards and mine if you have them if not just yours | | | |
| | | **KT2046:** | For atm | | | |
| | | **Kley(MT):** | photograph | | | |
| | | **Kley(MT):** | Two bills didn't take and the guy couldn't change them | | | |
| | | **Kley(MT):** | Which two cards for your accounts | | | |
| | | **KT2046:** | 4 accounts | | | |

**Government's _James_ Log**
**_United States v. Tew_, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| | | KT2046: | All my cards | *See* Indictment ¶¶ 23, 32, 33 | | |
| | | Kley(MT): | Ok | | | |
| | | | Hold back on one of your cards if you want | | | |
| | | Kley(MT): | I can get 600 from all four of yours 600 from 5336 and 600 from my joint which will leave about 500 in teh accounts. That's 3600 + 1000 form wells | | | |
| | | | In what account | | | |
| | | Kley(MT): | I'll move it to joint | | | |
| | | KT2046: | No | | | |
| | | Kley(MT): | Ok. Its in teh 3494 account | | | |
| | | KT2046: | Actually I don't care | | | |
| 265 | 9/27/19 | MT1312: | That was my daughter on the car with me job | On September 27, 2019, $60,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Count 49 of the Indictment<br><br>The 716-858-7618 number is the publicly listed number for the Erie County Sheriff's office in Buffalo, where J.Y. resided.<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, D, G, H, I, J, K, N | SW_FIL_003423 24 |
| | | MT1312: | Jon | | | |
| | | JY1709: | I didn't know | | | |
| | | JY1709: | Sorry | | | |
| | | MT1312(KT): | FUCK YOU | | | |
| | | MT1312(KT): | THIS IS KIMBERLEY | | | |
| | | MT1312(KT): | I'm calling the fucking husband | | | |
| | | MT1312(KT): | YOU ASSHOLE | | | |
| | | MT1312(KT): | FUCK YOU | | | |
| | | MT1312(KT): | FOR talking to my husband like this | | | |
| | | JY1709: | What? | | | |
| | | MT1312(KT): | YOU ASSHOLE | | | |
| | | MT1312(KT): | WE ARE ALL IN THIS TOGETHER | | | |
| | | MT1312(KT): | Don't you ever talk to Michael like that again | | | |
| | | JY1709: | Lol I've sent you guys over $1.3MM. I think I'm entitled to get frustrated once in a while | | | |
| | | MT1312(KT): | Phone: (716) 858-7618 | | | |
| | | MT1312(KT): | YOU HAVE SENT | | | |
| | | MT1312(KT): | ONCE IN AWHILE | | | |
| | | MT1312(KT): | He's like your personal punching bag | | | |
| | | JY1709: | Ok | | | |
| | | MT1312(KT): | How do you think it feels to be in our shoes and have NO CONTROL | | | |
| | | MT1312(KT): | I'm sick of this shit | | | |
| | | MT1312(KT): | I'm sick of trying to cope | | | |
| | | MT1312(KT): | That BTC is just sitting in your wallet | | | |
| | | MT1312(KT): | I don't care | | | |

204

## Government's *James* Log
### *United States v. Tew*, 20–cr–000305–DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **MT1312(KT):**   If we all go down<br>**MT1312(KT):**   I can't live like this<br>**MT1312(KT):**   My daughter!!!<br>**MT1312(KT):**   You asshole<br>**MT1312(KT):**   Pretending that you want to be our friend<br>**MT1312(KT):**   And come visit<br>**MT1312(KT):**   I knew it!<br>**MT1312(KT):**   Michael refused to ask you FYI<br>**MT1312(KT):**   And I took out a 2 BTC loan<br>**MT1312(KT):**   It was his 40th birthday yesterday<br>**MT1312(KT):**   Do you know that<br>**MT1312(KT):**   And he refused to ask you<br>**JY1709:**     Are you done?<br>**MT1312(KT):**   I want to die<br>**MT1312(KT):**   Don't you get it<br>**MT1312(KT):**   Every day I wake up afraid<br>**JY1709:**     Just tell me where you want the shit sent<br>**MT1312(KT):**   NO<br>**MT1312(KT):**   I WANT TO KNOW THIS CAN END<br>**JY1709:**     Well I've been ASSURED it is. You guys lie<br>**JY1709:**     That's al you do<br>**MT1312(KT):**   You think we skim<br>**MT1312(KT):**   We don't<br>**JY1709:**     That's all you do is lie about shot<br>**JY1709:**     Shit<br>**MT1312(KT):**   Michael used A FUCKING coupon for his bday dinner<br>**MT1312(KT):**   Which was with just one of our daughters<br>**MT1312(KT):**   DON'T YOU GET IT<br>**MT1312(KT):**   My husband actually thinks of you as a friend<br>**MT1312(KT):**   And trusts you<br>**MT1312(KT):**   More than me<br>**MT1312(KT):**   And you treat him like shit<br>**MT1312(KT):**   I lie?<br>**MT1312(KT):**   Really?<br>**MT1312(KT):**   Then what the fuck am I lying about<br>**MT1312(KT):**   WRONG answer<br>**JY1709:**     Are you done??? How is this progressive | | | |

205

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **JY1709:**     I offered to send it back<br>**MT1312(KT):**  I AM ANGRY AT THE WAY YOU TREAT MICHAEL<br>**MT1312(KT):**  He gets really upset<br>**JY1709:**     He's an adult. Jesus<br>**JY1709:**     Stop texting me<br>**MT1312(KT):**  FUCK YOU<br>**JY1709:**     Ha<br>**MT1312(KT):**  You know what<br>**MT1312(KT):**  Fuck you<br>**MT1312(KT):**  Fuck you<br>**JY1709:**     Ok cool<br>**MT1312(KT):**  You don't know anythinhg<br>**MT1312(KT):**  He doesn't even have his family<br>**MT1312(KT):**  No one called to wish him a happy birthday<br>**MT1312(KT):**  You're his freind<br>**MT1312(KT):**  If that's all you have to say is stop texting you and he's an adult you know nothing about anything<br>**MT1312(KT):**  And you definitely do not care about him or us<br>**MT1312(KT):**  I'm the piece of shit<br>**MT1312(KT):**  Not him<br>**MT1312(KT):**  Don<br>**MT1312(KT):**  Don't ever forget that<br>**MT1312(KT):**  He doesn't deserve this<br>**MT1312(KT):**  Fucking apologize<br>**MT1312(KT):**  You asshole<br>**MT1312(KT):**  I know you don't give a shit because you're fucking someone else and destroying another family but Michael has kids<br>**MT1312(KT):**  And you were SO OUT OF LINE<br>**MT1312(KT):**  Seriously you're not going to respond and apologize?<br>**MT1312(KT):**  I swear to god you will regret it<br>**MT1312(KT):**  FUCK YOU<br>**MT1312(KT):**  CALL AND APOLOGIZE TO HIM<br>**MT1312(KT):**  I really will track down that husband<br>**JY1709:**     OMG RELAX.im on a call and driving.<br>**MT1312(KT):**  1Khrvuy6os5AMAkAf2kRpd8UvfuN4qKrtH<br>**JY1709:**     It's sent. | | | |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|--------------------|------------------|--------|
| 266 | 9/28/19 | **KT2046:**<br>**KT2046:**<br>**MT7473:** | QR Code (IMG_1240.PNG)<br>Did you get this<br>Photo of BTC ATM screen (59140575563__AD90D6D2-D3B5-496D-97B1-2C9ECEF053B5.jpeg) | On September 28, 2019, $75,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, G, K, N | SW_FIL_003332 71 |
| 267 | 9/30/19 | **MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br><br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br>**MT7473:**<br><br>**MT7473:**<br>**MT7473:**<br>**KT2046:** | II saw your texts to jon and I don';t think you stressed how large<br>You're really not clear<br>Ok. I'll take care of it<br>Ever<br>No<br>This is how we end up in serious panic mode<br><br>[. . . .]<br><br>I have no phone<br>You said one last<br>Which ind't accurate<br>I don't think he is going to do it<br>You don't understand<br>I need a number<br>He doesn't have a choice<br>I need a number<br>And stop telling him last one<br>What is your problem with me<br>They have zero revenue for three weeks. I didn't tell him last one. They won't have any money<br>0 revenue for three weeks and you're only asking for 50????<br>I don't think he takes you seriously | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>As set forth in paragraph 33(f).f of the indictment, thew Tews used proceeds of their scheme to buy an Audi. | A, D, E, F, G, H, I, K, N | SW_FIL_003332 81-<br>SW_FIL_003332 87;<br>SW_FIL_003332 89-<br>SW_FIL_003332 90 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | https://www.edbozarthparkmeadow.com/VehicleSearchResults?search=all&make=Chevrolet&model=Tahoe&year=2020 | | | |
| | | **MT7473:** Transunion 533 Equifax 539 from my credit karma | | | |
| | | **KT2046:** So what are our options | | | |
| | | **KT2046:** At this point | | | |
| | | **KT2046:** That's why there's a big difference between getting 50-100 | | | |
| | | **KT2046:** What was the Porsche pre pay option | | | |
| | | **KT2046:** Or L4 the boxy one used | | | |
| | | **MT7473:** Discovery LR4 you mean? Used yes? | | | |
| | | **MT7473:** I found a really nice LR4 with 26,000 miles (2016) super nice and clean for 41K list, we Can get for less | | | |
| | | **KT2046:** What color | | | |
| | | **KT2046:** Does that seat 7? | | | |
| | | **MT7473:** Its like a dark beige with dark leather interior with two extra seats in back so yes 7 | | | |
| | | [ . . . .] | | | |
| | | **KT2046:** QR Code (IMG_1267.PNG) | | | |
| | | **MT7473:** Photo of BTC ATM screen (59156000108__6D2F6D88-8F7F-4F4C-85B2-3507D24D7655.jpeg) | | | |
| | | **MT7473:** Where to send the funds | | | |
| | | **MT7473:** purchase agreement for Audi (Tew.pdf) | | | |
| | | **KT2046:** You were already supposed to be doing the credit application for the car | | | |
| | | **MT7473:** I honestly didn't know you wanted me to. I just did it. | | | |
| | | **MT7473:** They are working on it rig tnow | | | |
| | | **KT2046:** Wouldn't do it | | | |

208

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

**October 2019**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 268 | 10/1/19 | MT7473: | I got approved at 12.23 APR for the financing. Don't know terms yet. Finding out. Still have to provide proof of income but we should be ok. I think that's only with 5k down. If so it's 12 percent on 15k which is like 2k in interest over however many months which should be no problem. Maybe worth it. | As alleged in Count 50 of the Indictment, Michael Tew withdrew $20,000 from x6934, which was an account for Sand Hill. [WFB_00000740]

As set forth in paragraph 33(f).f of the indictment, thew Tews used proceeds of their scheme to buy an Audi. *See* Indictment ¶¶ 23, 32, 33 | A, F, G, H, K, N | SW_FIL_003332 94- SW_FIL_003333 01 |
| | | MT7473: | Have the cash I can send wire now if you want | | | |
| | | MT7473: | Before I go to atm | | | |
| | | MT7473: | Going to atm first | | | |
| | | KT2046: | Up to you | | | |
| | | KT2046: | QR Code (IMG_1271.PNG) | | | |
| | | KT2046: | FYI wire to LLC | | | |
| | | MT7473: | photo of BTC ATM Screen (59164751347__F4AFA15C-2425-4A1C-AAE3-0EFCE58F6CFA.jpeg) | | | |
| | | MT7473: | Photo of BTC ATM screen (59164763214__70B42329-385A-4747-A3E8-1E4D57974C5A.jpeg) | | | |
| | | MT7473: | 72 @ 12.23 % with $5000 down / $313.79 month | | | |
| | | KT2046: | Not bad right | | | |
| | | KT2046: | Won't it improve our credit | | | |
| | | KT2046: | Or your | | | |
| | | MT7473: | 59164779378__1A821B69-BF96-4646-BA01-2313A635B5FB.jpeg | | | |
| | | MT7473: | Yes pay on time and will help | | | |
| | | MT7473: | Need to provide proof of income they want tax returns | | | |
| | | KT2046: | Fuck | | | |
| | | KT2046: | Maybe we just buy it | | | |
| | | MT7473: | Photo of BTC ATM (59164794789__D0A6FA17-7FE6-4BE3-BF90-AE53F041B863.jpeg) | | | |
| | | MT7473: | We just have to be prepared for anything. I can send my 1099s and anything else I can to get them comfortable | | | |
| | | MT7473: | Photo of BTC ATM Screen (59164819132__A4F19011-3A3E-4C7E-9D98-DF1956396CD5.jpeg) | | | |
| | | MT7473: | Photo of BTC ATM Screen (59164836417__0D0F1932-78C4-4469-91EB-BD52C9EB4AB1.jpeg) | | | |
| | | MT7473: | Photo of BTC ATM screen (59164854056__C7BC1B8E-FA77-45B0-AA54-5DE9CBBDBF5D.jpeg) | | | |
| | | MT7473: | One 100 didn't work | | | |

209

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT7473: | Hold on I'll see if I can change it | | | |
| | | MT7473: | Photo of BTC ATM screen (59164880696__93BE8464-C0A9-4568-B345-3908FAB5E919.jpeg) | | | |
| | | MT7473: | They won't do it without tax returns fuck | | | |
| | | MT7473: | I have to try somewhere else | | | |
| 269 | 10/2/19 | MT7473: | Almost exactly my old car (Photo of car (IMG_3475.jpeg)) | As alleged in Count 51 of the indictment, Michael Tew withdrew $51,000 from the x6934 account on October 22, 2019.<br><br>As set forth in paragraph 33(f).f of the indictment, thew Tews used proceeds of their scheme to buy an Audi. | A, F, G,  K, N | SW_FIL_003333 01; SW_FIL_003333 03-SW_FIL_003333 06 |
| | | | [. . . .] | | | |
| | | MT7473: | Sent you 1.5 | | | |
| | | MT7473: | Screenshot of spreadsheet (Messages Image(2446086633).jpeg) | | | |
| | | MT7473: | That's everything we cashed out and sent to navy federal today | | | |
| | | MT7473: | Here now - doesn't free up until 1240 | | | |
| | | MT7473: | Have to wait | | | |
| | | KT2046: | Huh | | | |
| | | KT2046: | We didn't do the 20K until 12:40? | | | |
| | | KT2046: | What are you doing? | | | |
| | | MT7473: | Yes | | | |
| | | MT7473: | On way back home | | | |
| | | KT2046: | QR Code (IMG_1276.jpeg) | | | |
| | | MT7473: | At vaper | | | |
| | | KT2046: | Come back as soon as fine | | | |
| | | KT2046: | Done if you want 5 is ok. | | | |
| | | | [. . . .] | | | |
| | | MT7473: | Ok did 5 | | | |
| 270 | 10/3/19 | MT7473: | Tew Budget 10 20 19.xlsx | kley@me.com was the email address used by Kimberley Tew.<br><br>As alleged in paragraph 33.f of the Indictment, the Tews purchased an Audi using proceeds of | A, F, G,  K, N | SW_FIL_003333 07-SW_FIL_003333 09; SW_FIL_003333 10-SW_FIL_003333 12; |
| | | MT7473: | This is the correct tuition and minus tonight's cash wD | | | |
| | | MT7473: | Love you | | | |
| | | | [. . . .] | | | |
| | | KT2046: | Can you wire 5K to [redacted business name] | | | |
| | | KT2046: | Business Checking: | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | Bank: JPMorgan Chase<br>Account Name: [redacted business name], LLC<br>Wire Routing Number: [x]0021<br>Account Number:<br>[x]8260 | the scheme and here are discussing its delivery to them. AUDI_00000003.<br><br>$20,611.01 was transferred from the Sand Hill account x6934 on November 1, 2019, as alleged in Count 52 of the Indictment to pay for the Audi. | | SW_FIL_00333314-<br>SW_FIL_00333321 |
| | | KT2046: | 7 Second St<br>Ladera Ranch CA 92694<br>United States | | | |
| | | KT2046: | Ask for an email confirm to kley@me.com | | | |
| | | MT7473: | Wire out | | | |
| | | MT7473: | They are emailing confirmation | | | |
| | | | [. . . .] | | | |
| | | KT2046: | Where are you | | | |
| | | MT7473: | Car will be done within the hour he said | | | |
| | | KT2046: | Ok keep me updated | | | |
| | | KT2046: | Also ask about the scratches on drivers side and options | | | |
| | | MT7473: | All signed<br>Finance coming to collect check now<br>Then they are going to see if they can do a deep clean not quite a detail but a deep clean<br>I'll ask about the scratch | | | |
| | | KT2046: | Well if that takes longer we can do it | | | |
| | | MT7473: | Ok | | | |
| | | KT2046: | I thought they already said you would received vip clean | | | |
| | | MT7473: | Yeah but i asked the sales guy and he said the sales side has a separate crew that can do it better | | | |
| | | KT2046: | Whatever right lol | | | |
| | | MT7473: | Exactly | | | |
| | | | [ . . .] | | | |
| | | MT7473: | He said we got a very good price on the car he couldn't believe how low the mileage | | | |
| | | MT7473: | I mean he wasn't bull shitting me either | | | |

211

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | You were right | | | |
| | | **MT7473:** | Do you have two secs to discuss warranty | | | |
| | | **KT2046:** | Do whatever you want | | | |
| | | **KT2046:** | I don't want to spend a lot | | | |
| | | **KT2046:** | They are sales people | | | |
| | | **KT2046:** | It's only one year | | | |
| | | **MT7473:** | There's a diff one it's six years sixty thousand miles for 138/ month for 24 months that's no interest just pay 138 now. It covers most everything including all electrical which is important. 138 dollars now | | | |
| | | **KT2046:** | Cool | | | |
| | | **KT2046:** | Are you in the service area or the sales area | | | |
| | | **MT7473:** | Sales area now just closing on the car now | | | |
| | | **MT7473:** | Literally handing him a check now | | | |
| | | **MT7473:** | Copy of sales agreement and photo of check for car(IMG_3481.jpeg) (photograph of agreement for Audi and check for $20,611.01 with signature of Michael Tew) | | | |
| | | **MT7473:** | They are finishing the car now Will additional 10-15 mins for the cleaning if we want You tell me | | | |
| | | **MT7473:** | Car pulling up in a few mins Just a light wash and vacuum Do you want me to wait for the full treatment or just come home | | | |
| | | **MT7473:** | 44 bucks for the service!!! | | | |
| | | **MT7473:** | That's ITV | | | |
| | | **MT7473:** | It! | | | |
| | | **KT2046:** | How much money do we have left | | | |
| | | **KT2046:** | Can you get me more btc | | | |
| | | **MT7473:** | Yes 9405 in wells [. . . .] I can get 5-6 out of wells There's 25k in navy with that 21k hitting at 2 Tell me what you want [. . . .] | | | |
| | | **KT2046:** | Are you close to navy | | | |
| | | **KT2046:** | Hello | | | |
| | | **MT7473:** | I can only get 3000 from navy to leave enough to verify funds but I can get | | | |

212

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | 6 from wells | | | |
| | | **MT7473:** | At navy | | | |
| | | **MT7473:** | Have the navy cash headed to wells | | | |
| | | **MT7473:** | Have 9k heads to atm. 12 minute drive | | | |
| | | **MT7473:** | Here now | | | |
| | | **KT2046:** | Let me give you address | | | |
| | | **KT2046:** | QR Code (bustadice – Next Generation Dice.jpeg) | | | |
| | | **MT7473:** | Got it | | | |
| | | **MT7473:** | Photo of BTC ATM Screen (59182488619__D7BFF9D8-C146-448F-A33B-7591CDC91674.jpeg) | | | |
| 271 | 10/5/19 | **MT7473:** | Photo of BTC ATM screen (9201036088__8683B05D-8DDA-4D3C-9D80-253C8943BAB7.jpeg) | *See* Indictment ¶¶ 23, 32, 33 | A, F, G, K, N | SW_FIL_0033329 - SW_FIL_0033331 |
| | | **KT2046:** | I transferred 1 btc to your CB account you should definitely put $ in WF first so those checks don't bounce and try $500 at navy | "CB" is short for coinbase, a kryptocurrency exchange. | | |
| | | **KT2046:** | Don't send a lot to PayPal without knowing for sure | | | |
| 272 | 10/7/19 | **MT1312:** | Have 1700 on way to atm | Messages to Kimberley Tew | A, F, G, K, N | SW_FIL_0031389 - SW_FIL_0031391 |
| | | | [. . . .] | *See* Indictment ¶¶ 23, 32, 33 | | SW_FIL_0032738 - SW_FIL_0032739; |
| | | **MT1312:** | We just need to stay focused | | | |
| | | **MT1312:** | Here at atm | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when | | SW_FIL_0032746 - SW_FIL_0032747; SW_FIL_0032751 - SW_FIL_0032753; SW_FIL_0032756 |
| | | **MT1312:** | Photo of BTC ATM screen (59211728766__A784E06E-793B-4603-A3EA-A5F3910ED088.jpeg) | | | |
| | | | [. . . .] | | | |
| | | **MT1312:** | Photo of BTC ATM screen (59216873005__B30508AC-28F2-4149-A25F-D951789DA253.jpeg) | | | |
| | | **MT1312:** | Photo of BTC ATM screen (59216887207__B94A44CF-198A-473B-A69A-FB558F9C1775.jpeg) | | | |
| | | **MT1312:** | Photo of BTC ATM screen (59216895753__822F8994-8A20-4E70-A4E4-A22A8401AB0B.jpeg) | | | |
| | | | [. . . .[ | | | |

213

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **MT7473:** I don't know how do we ask [redacted] for a bridge when he's sitting on our chi deck<br>**MT7473:** It may be our only option. Jon asking [C.A.] to put money in.<br>**KT2046:** He knows I'm jammed up because of frozen finds<br>**KT2046:** Can he overdraft account to get us something tomorrow<br>**KT2046:** [C.A.] is going to freak out when Jon asks and he's going to wonder where all the $ is<br>**KT2046:** I can't take a loan out if we can't pay it back<br><br>[. . . .]<br><br>**KT2046:** Is Jon not sending anything for tomorrow???<br>**MT1312:** I'll check again<br>**KT2046:** Not that you care but I am worried about the car and also rent and I'm basically screwing [redacted] over who is moving his family right bow<br>**MT1312:** I do care<br>**KT2046:** I didn't mean it like that<br>**KT2046:** I messed up<br>**MT1312:** I'll do everything I can to get whatever money I can get<br><br>[. . . .]<br><br>**KT2046:** Fuck. Just make sure jon is sending tomorrow<br>**KT2046:** If you're on a call get off and call him<br>**MT1312:** He may be able to send tomorrow<br>He can't send today<br>**MT1312:** I called him<br>**KT2046:** Doesn't work!!<br>**MT1312:** Friday<br>**MT1312:** He can't<br>**MT1312:** There's nothing to send<br>**MT1312:** Nothing<br>**KT2046:** Overdraft<br><br>[. . . .] | fraudulent payments could be made) | | |

214

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **KT2046:** | I need Jon to send for tomorrow | | | |
| | | **KT2046:** | Or it better be a shit load | | | |
| 273 | 10/8/19 | **KT2046:** | Please tell me Jon is sending something tomorrow | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, G, K, N | SW_FIL_0032777 5 |
| | | **KT2046:** | Even if it's 3,000 | | | |
| | | **MT7473:** | Been trying him - texted him and called to see if he can send ANYTHING | | | |
| | | **KT2046:** | 4 min to cut off | | | |
| | | **MT7473:** | I know | | | |
| 274 | 10/9/19 | **Kley(KT):** | You better have something lined up | The person whose name is redacted here was a person to whom Kimberley owed money. Kimberley was worried the check she had written to cover the debt would bounce.<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | A, G, K | SW_FIL_0032777 83; SW_FIL_0032777 85; SW_FIL_0032777 90- SW_FIL_0032777 92; SW_FIL_0032777 94; SW_FIL_0032777 97- SW_FIL_0032778 05; SW_FIL_0032778 07- SW_FIL_0032778 08; SW_FIL_0032778 10- SW_FIL_0032778 11 |
| | | **Kley(KT):** | With Jon | | | |
| | | | [ . . . .] | | | |
| | | **Kley(KT):** | I will continue to lose money until you tell me there is a plan | | | |
| | | **Kley(KT):** | I'm in the dark | | | |
| | | **Kley(KT):** | Tell him we are borrowing money from my parents and will pay him back at the end of the month | | | |
| | | **Kley(KT):** | I need my pills and I need you to get on Jon [redacted] is cashing that check tomorrow | | | |
| | | | [ . . . .] | | | |
| | | **Kley(KT):** | Can you call [L.W.] | | | |
| | | **Kley(KT):** | He can google pay | | | |
| | | **MT1312:** | Ok | | | |
| | | **Kley(KT):** | If he could send something substantial if anyone could we could be ok | | | |
| | | **Kley(KT):** | [redacted] sent 2K | | | |
| | | **Kley(KT):** | He's the only one on my side | | | |
| | | **Kley(KT):** | I don't know what to do to get him to send the other 3K | | | |
| | | **MT1312:** | How much do we owe [redacted] now | | | |
| | | **MT1312:** | Total | | | |
| | | **Kley(KT):** | I don't know | | | |

215

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|-------------------|------------------|--------|
| | | **Kley(KT):**   Did you call [L.W.]<br>**MT1312:**   Yeah he didn't answer<br><br>[. . . .]<br><br>**Kley(KT):**   I don't know what's going on with you and Jon but he sent nothing.<br>**Kley(KT):**   Not even $500<br>**Kley(KT):**   We have nothing<br><br>[. . . .]<br><br>**Kley(KT):**   We needed something this week<br>**Kley(KT):**   Anything<br>**Kley(KT):**   Jon is going to screw us over<br>**MT1312:**   I think we'll have something Friday he said he was pulling it together<br>**Kley(KT):**   How much<br>**MT1312:**   He's not going to screw ya over<br>**MT1312:**   Us<br>**Kley(KT):**   But like Friday for Monday<br>**MT1312:**   He doesn't know yet he had a divorce appointment<br>**MT1312:**   No Thursday for Friday<br>**Kley(KT):**   Like a lot<br>**Kley(KT):**   It matters<br>**Kley(KT):**   Big difference<br>**Kley(KT):**   How much<br>**MT1312:**   I've been trying to reach him for an hour<br>**MT1312:**   I promise you I'm working on it as much as I can I promise you I know you're mad at me<br>**Kley(KT):**   How much do you think<br>**MT1312:**   I promise I am stalking him<br>**Kley(KT2)**   How much<br>**Kley(KT)**   How much<br>**Kley(KT):**   Do you think<br>**MT1312:**   If [NAC vendor]a comes in 500k he could send 40-50 I think that would be a lot<br>**MT1312:**   But maybe<br>**Kley(KT):**   But what if it doesn't | | | |

216

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(KT):** And they won't know until when<br>**Kley(KT):** That's a big difference<br>**MT1312:** He said they expect [NAC vendor] toxins in Vegas<br>**MT1312:** To come in<br>**Kley(KT):** [redacted] could cash the check<br>**Kley(KT):** When will they know<br>**Kley(KT):** You think that would be a lot<br>**Kley(KT):** I don't understand<br>**MT1312:** They should know by 5 today<br>**Kley(KT):** Did he give you the 40-50 number<br>**MT1312:** I think if he sends us 10 percent of what they get th AG would be a long<br>**MT1312:** No I'm making it up he's said nothing o have no fucking Coie<br>**MT1312:** You're asking me<br>**Kley(KT):** I think if he sends us 10 percent of what they get th AG would be a long<br>**Kley(KT):** What does that mean<br>**Kley(KT):** I'm scared<br>**MT1312:** Nevermind you want me to give you definite answers and I know nothing right now<br>**MT1312:** Scared of what<br>**MT1312:** You're not scared of anything<br>**Kley(KT):** So did you make up they'll know by 5<br>**Kley(KT):** you think you know me<br>**Kley(KT):** you don't<br>**MT1312:** They should know for sure by 5<br>**Kley(KT):** How<br><br>            [. . . .]<br><br>**Kley(KT):** By 5 o'clock is in 30 min<br>**Kley(KT):** I tell you how I feel you tell me how I feel<br>**MT1312:** Ok they should be getting 500 in tomorrow. It's not confirmed yet. He will be able to send us something. We don't know yet. He really is not going to screw us. He even offered to send more in October when more money starts rolling in.<br>**Kley(KT):** When did he say this | | | |

217

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(KT):**  How do you know<br>**Kley(KT):**  Why are you not responding<br><br>[. . . .]<br><br>**Kley(KT):**  What's the story<br>**Kley(KT):**  I need a number<br><br>[.. . . .]<br><br>**MT1312:**  He's not answering he's probably with his girl I'm going to text him. He'll be up for air in 2 hours if so<br><br>[. . . .]<br><br>**Kley(KT):**  No update!!!<br>**Kley(KT):**  WTF<br>**Kley(KT):**  You're not listening<br>**Kley(KT):**  And screwing us over<br>**Kley(KT):**  You told me 50<br>**Kley(KT):**  You told him 25 | | | |
| 275 | 10/10/19 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are our service and maintenance invoices for Aero Maintenance Resources for September.<br><br>Please contact me if you have any questions<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000047-GFL_00000050 |

218

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|---|---|---|
| | | A Unit of Global Fuel Logistics, Inc. | | | | |
| 276 | 10/11/19 | **Kley(KT):** | Is Jon sending more for Monday since you told me rhrrr would be 50 | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *ee* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>[C.A.] was an owner of NAC | A, D, G, H, K, N | SW_FIL_003278 24; SW_FIL_003278 26; SW_FIL_003278 30-SW_FIL_003278 31; SW_FIL_003278 32-SW_FIL_003278 33 |
| | | **Kley(KT):** | WTF | | | |
| | | | [. . . .] | | | |
| | | **Kley(KT):** | Can he do a wire today | | | |
| | | **MT1312:** | He said wed for Thursday that's if | | | |
| | | **MT1312:** | That it | | | |
| | | | [. . . .] | | | |
| | | **Kley(KT):** | You told me 50 from Jon | | | |
| | | **MT7473:** | Its my fault | | | |
| | | **MT7473:** | He didn't have it | | | |
| | | **Kley(KT):** | I don't care who's fault | | | |
| | | **MT7473:** | He started at 20 | | | |
| | | **Kley(KT):** | That's not the point | | | |
| | | **MT7473:** | It is the point | | | |
| | | **Kley(KT):** | I need you to get money today | | | |
| | | **Kley(KT):** | Today | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | He can't send anything | | | |
| | | **Kley(KT):** | Fuck | | | |
| | | **MT7473:** | I'm asking [L.W.] for rent money | | | |
| | | **Kley(KT):** | You won't even try | | | |
| | | **MT7473:** | I did try he's not at his computer and [C.A.] took teh last of the money | | | |
| | | **Kley(KT):** | [L.W.] won't respond to a text | | | |
| | | **MT7473:** | I already spoke to jon earlier | | | |
| 277 | 10/15/19 | **MT7473:** | Jon asking what is the total needed for everything including his BTC. He wants to send a final thing. I mean he's super fucking pissed etc but is calming down and wants to help. What should I say you think. | "SH" is a reference to Sand Hill. Banking records show a check deposit into Michael | A, D, G, I, K, N | SW_FIL_003333 38-SW_FIL_003333 40 |
| | | **KT2046:** | God like 150-80 | | | |

219

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **KT2046:** Just say I took out more loans<br>**MT7473:** I know<br>**KT2046:** Should you try to deposit a check from your 3494 account at the atm into your SH account<br>**MT7473:** yes<br>**KT2046:** Will you try now<br>**MT7473:** [Redacted] doesn't have money its worst than ti thought. H showed me his cc balance on the computer<br>**MT7473:** He has $1000 available on his CC to live on<br>**MT7473:** Its all maxed out<br>**KT2046:** Tell him we will get him his money ASAP<br>**MT7473:** Jon said he can send but doesn't know ho wmuch<br>**MT7473:** He is calling me | Tew's Sand Hill account x6934 on October 15, 2019. [WFB_00002572; NAVY_00000753]<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| 278 | 10/17/19 | **MT7473:** WF Wire Limit Calculation.xlsx+G3900<br>**KT2046:** Sending to [redacted]'s simpld right<br>**MT7473:** Yrs both are out.<br>**MT7473:** 43k available | As alleged in paragraph 33.f of the Indictment, the Tews purchased an Audi using proceeds of the scheme and here are | A, G, K, N | SW_FIL_003333 42 |

220

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | [. . . .] | discussing its delivery to them. AUDI_00000003.<br><br>$20,611.01 was transferred from the Sand Hill account x6934 on November 1, 2019, as alleged in Count 52 of the Indictment to pay for the Audi.<br><br>Michael Tew had given a check to the dealership, but it had to be covered by a later wire transfer.<br><br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | SW_FIL_00327877 |
| | | **KT2046:** | Thursday, Nctober 17, 2019:<br>ITEMS PAID<br>  1.$27,000 online ($10K to [redacted]; $17K to Gemini)<br>  2.$5,000 online (CW Simple)<br>  3.$23,000 branch (SG)<br>  4.$3,700 ACH for rent<br>  $58,700 subtotal items paid<br>ITEMS TO BE PAID<br>  1.$21,000 (Audi)<br>  2.$1,000 (PR Newswire)<br>  3.$6,200 (Sand Hill WF)<br>  4.$3,500 (rent)<br>  5.$500 (MV WF)<br>  6.$500 (Jeep)<br>  7.$5,000 (CW Chase)<br>  ($37,700) subtotal items to be paid<br>  $16,300 balance in WF<br>  ($21,400) Ending Balance<br>ADDITIONAL ITEMS<br>  1.$25,000 (AN)<br>  2.$5,650 (MP)<br>  3.$12,000 (CW)<br>  4.$8,500 (BTC for Jon)<br>  ($51,150) subtotal additional items<br>  ($21,400) balance after items to be paid<br>  ($72,550) Ending Balance | | | |
| 279 | 10/19/19 | **Kley(KT):**<br><br><br><br>**MT1312:**<br><br>**MT1312:** | Jon has to send something on Monday right because we need to put the car behind us and book everything for Vegas.<br><br>[. . . .]<br><br>I don't know if he has anything for Monday. Bill talk to him this weekend<br>I'll find out what we can do | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, B, C, D, F, G, H, I, K, N | SW_FIL_00327894 |

221

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT1312:** | I'm just saying right now I don't know but I'll find out | *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| | | **Kley(KT):** | Do you think sabotaged 75 | | | |
| | | **Kley(KT):** | Another | | | |
| | | **MT1312:** | I don't know | | | |
| | | **MT1312:** | I don't | | | |
| | | **Kley(KT):** | At least because of the car | | | |
| | | **MT1312:** | Maybe if I tell him nothing until mid November | | | |
| | | **MT1312:** | I know | | | |
| 280 | 10/20/19 | **MT7473:** | Screenshot of sending BTC (Screenshot 2019-10-20 at 13.12.11.jpeg)<br><br>[ . . . .] | *See* Indictment ¶¶ 32, 33<br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, G, K, N | SW_FIL_0033334 4<br><br>SW_FIL_0032791 6;<br>SW_FIL_0032791 9 |
| | | **Kley(KT):** | Hello | | | |
| | | **Kley(KT):** | Did you even talk to Jon | | | |
| | | **Kley(KT):** | We can't wait until like Wed or later | | | |
| | | **MT7473:** | That was an accident i thought wring dot a second | | | |
| | | **MT7473:** | He just texted me back<br><br>[ . . . .[ | | | |
| | | **Kley(KT):** | Can we get another 75 or more this week | | | |
| | | **Kley(KT):** | [redacted[ is sending me 1K | | | |
| | | **Kley(KT):** | Plus we have 200 in navy | | | |
| | | **Kley(KT):** | Plus whatever you can get out of wells | | | |
| 281 | 10/21/19 | **MT7473:** | Wells Fargo Wire Availability 10_16_2019.xlsx | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>Bank records show ATM withdrawals from | A, G, K, N | SW_FIL_0033334 4<br><br>SW_FIL_0032791 30,<br>SW_FIL_0032791 31 |
| | | **MT7473:** | Have the cash<br><br>[ . . . .] | | | |
| | | **Kley(KT):** | Who are you talking to | | | |
| | | **Kley(KT):** | And what is up with Jon | | | |
| | | **MT7473:** | Talking to Jon in 5 | | | |
| | | **Kley(KT):** | Is he sending today<br><br>[ . . . .] | | | |

222

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **Kley(KT):** | I need you to go to the nfcu atm to get more cash | Tew bank accounts on October 21, 2019. [NAVY_00000539] | | |
| | | **Kley(KT):** | Do you have the cards on you | | | |
| | | **MT7473:** | OK | | | |
| | | | Yes | | | |
| | | | [. . . .] | | | |
| 282 | 10/23/19 | **Kley(KT):** | 1. $600 4769 (KT)<br>2. $600 6685 (KT)<br>3. $600 7782 (KT)<br>4. $600 4974 (MT)<br>5. $600 8780 (MT)<br>$3,000 total | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On October 23, 2019, $25,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources and Global Fuel Logistics | A, D, H, G, K, N | SW_FIL_003279 42-SW_FIL_003279 43 |
| | | **MT7473:** | Jon sent the 25k | | | |
| | | **MT7473:** | On way to banks | | | |
| | | **MT7473:** | Sorry am I doing 500 from simple or no | | | |
| | | **Kley(KT):** | Yes | | | |
| | | **MT7473:** | Ok | | | |
| | | **Kley(KT):** | From any atm | | | |
| | | **Kley(KT):** | You don't have to withdraw at bbva | | | |
| 283 | 10/25/19 | **Kley(KT):** | I really really really don't want to stress you out but we are going to need more money | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶ 21 (describing how Yioulos would provide information about | A, B, D, F, G, H, I, K, N | SW_FIL_003279 59-SW_FIL_003279 66 |
| | | **Kley(KT):** | It's just not enough | | | |
| | | **Kley(KT):** | With the negative accounts and bills we have to pay plus the car and AN that's over 60K | | | |
| | | **Kley(KT):** | It really leaves nothing for Vegas | | | |
| | | **Kley(KT):** | Can we send another to arrive Monday | | | |
| | | **MT7473:** | I doubt it | | | |
| | | **MT7473:** | I'll see | | | |
| | | **MT7473:** | I guess we're fucked | | | |
| | | **Kley(KT):** | I need you to try | | | |
| | | **MT7473:** | Just forget the car | | | |

223

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** I'll try<br>**Kley(KT):** We are going to Vegas down<br>**Kley(KT):** No!!!<br>**Kley(KT):** Stop<br>**Kley(KT):** What is your balance in Wells<br>**Kley(MT):** I transferred money to your 3494 account so the check will clear 14019.15<br><br>[. . . .]<br><br>**Kley(KT):** Ok I have a plan. But I need you to work on Jon for sending today<br>**Kley(KT):** Can you wire 6K to [redacted]<br>**Kley(KT):** I will<br>[. . . .]<br>What time is the latest we can cash kraken<br>**MT7473:** Geez last time we did it at 11 and it wired same day hit at 2<br>**MT7473:** I would say that would be the latest<br>**MT7473:** We have Coinbase too I can sell into either wells or navy<br>**MT7473:** Up to 25K<br>**Kley(KT):** Its good luck even If Jon sends 25K<br>**MT7473:** Over the limit have to go to bank to send to him<br>**Kley(KT):** How much can you send<br>**MT7473:** 2750<br>**Kley(KT):** Ok<br>**Kley(KT):** Do that<br>**MT7473:** ok<br>**MT7473:** sending now<br>**MT7473:** Working on Jon<br>**MT7473:** Wire sent<br>**MT7473:** Jon says there's nothing there he can't send anything until next week. That 43k emptied the account. | NAC's finances to facilitate when fraudulent payments could be made) *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas)<br><br>On October 25, 2019, $43,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources, as alleged in Count 21 of the Indictment<br><br>Bank records show money transfers to the x3494 account controlled by Kimberley Tew on October 25, 2019, from Michael Tew's Sand Hill Wells Fargo x6934. NAVY_00000537; WFB_00002528.<br><br>Kraken and Coinbase are cryptocurrency exchanges on which Michael and Kimberley had accounts. KRKN_00000008; | | |

224

Case 1:20-cr-00305-DDD    Document 645-1    Filed 01/24/25    USDC Colorado    pg

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | KRKN_00000020; COIN_00000027-30; 32. | | |
| 284 | 10/25/19 | **MT7473:** Have cash going to atm<br>**MT7473:** Audi starting to get testy. Thy need me to call to arrange alternative payment.i think I call and say I need until mid next week I'm traveling but send me wire instructions.<br>**Kley(KT):** We are checked in for flight tonight at 10:28. I have us down for 3 checked bags.<br>**MT7473:** OK<br>**MT7473:** At atm now Getting 9K<br>**Kley(KT):** Our tickets with seat selection and 3 checked bags round-trip were $740.36. We leave Tuesday @ 9:16am.<br>**MT7473:** That's amazing<br><br>[ . . . . ]<br><br>**MT7473:** You're going to kill it in Vegas let's just get there<br>**MT7473:** Done 3600 at vaper | As alleged in paragraph 33.f of the Indictment, the Tews purchased an Audi using proceeds of the scheme and here are discussing its delivery to them. AUDI_00000003.<br><br>$20,611.01 was transferred from the Sand Hill account x6934 on November 1, 2019, as alleged in Count 52 of the Indictment to pay for the Audi.<br><br>Bank records show that the Tews went to Las Vegas between 10/25/19 and 11/2/19 [ NAVY_0000195] *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | A, F, G, K, N | SW_FIL_003279 71-<br>SW_FIL_003279 73 |
| 285 | 10/31/19 | **Kley(KT):** I just won $13k<br>**Kley(KT):** Wrong $18,575 jackpot!!!<br>**Kley(KT):** I have 20k | On October 31, 2019, $23,750 sent via ACH to Navy Federal Credit Union Account [x]5336 | A, B, D, F, G, H, K, N | SW_FIL_003280 21;<br>SW_FIL_003280 23- |

225

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | [. . . .]<br><br>**Kley(KT):** In blackjack inside what you doing<br>**MT1312:** Jon can send 50 today and 25 next week and that's it what do you want<br>**Kley(KT):** Yes!!<br><br>[. . . .]<br><br>**Kley(KT):** I have 30K in cash<br>**MT7473:** Omg!!!!<br>**MT1312:** Where you he send funds<br><br>[. . . .]<br><br>**Kley(KT):** Want to deposit the cash at navy today and wire<br>**Kley(KT):** Yes<br>**Kley(KT):** \Just waiting for payout<br>**MT7473:** Ok<br><br>[. . . .]<br><br>**Kley(KT):** I might have 40K<br>**MT7473:** Amazing!!!!<br>**MT1312:** 50K coming in from jon 49,750<br>**Kley(KT):** Coming as soon as they hand me the money<br>**Kley(KT):** We did it baby!!!!<br>**Kley(KT):** I love you<br>**MT7473:** Incredible<br>**MT1312:** Of course we df<br>**Kley(KT):** Send to WF?<br>**Kley(KT):** Still waiting on payout<br><br>[. . . .]<br><br>**MT1312:** He sent to wells so we can wire what we need<br>**MT7473:** He couldn't do two separate accounts<br><br>[. . . .] | for services purportedly made to Aero Maintenance Resources<br><br>On November 1, 2019, $49,750 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources<br><br>Bank records show that the Tews went to Las Vegas between 10/25/19 and 11/2/19 [ NAVY_0000195]. *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) Records from the Wynn Casino in Las Vegas confirm the say and Kimberley Tew's winnings. WYNN_00000689; | | SW_FIL_00328024;<br>SW_FIL_00328026-<br>SW_FIL_00328033 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
|  |  | **Kley(KT):** Lol. I sat down and won two more jackpots.<br>**MT1312:** Omg!!!! You're totally in dire<br>**MT7473:** Incredible<br>**MT1312:** I ordered you a Diet Coke whenever you come up<br>**Kley(KT):** Just kidding 4 jackpots<br>**Kley(KT):** I'm coming up<br>**Kley(KT):** Have so much money I can't fit it<br>**MT1312:** Holy shit<br>**MT7473:** This is insane<br>**Kley(KT):** 5 really coming up after this<br>**Kley(KT):** 6<br>**Kley(KT):** Waiting for another payout<br>**Kley(KT):** Was playing while I was waiting<br>**MT7473:** Omg<br>**Kley(KT):** I know<br>**Kley(KT):** Going to start getting heat<br>**Kley(KT):** Casinos don't like winners<br>**MT7473:** So what do we do<br>**Kley(KT):** photo of cash in bag (IMG_1095.jpeg)<br>**Kley(KT):** Plus I have 3 flags<br>**Kley(KT):** And I'm waiting on $2,400 and $1860 payouts<br>**Kley(KT):** Screenshot of account balances (IMG_1098.png) |  |  |  |

227

# Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

**November 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 286 | 11/1/19 | **MT1312:** Here now<br>**MT7473:** All set 15k Dropping me at the mall<br>**Kley(KT):** Need to find out when Jon is sending next<br>**MT7473:** ok<br>**Kley(KT):** I owe [redacted] 10.5 today<br>**MT7473:** Ok<br>**Kley(KT):** 25 to [redacted]<br>**Kley(KT):** On Mon and 6K to James on Monday<br>**Kley(KT):** I want to get another 5K of btc<br>**Kley(KT):** And also owe [redacted] 4K I think<br>**Kley(KT):** Paid my discover out of joint<br>**Kley(KT):** Transferred everything to join for what I have put $400 in savings<br>**MT7473:** I paid the car. Did not pay chase. There's $25K in wells. Do you still want me to pay chase? Which account? Its 2200 total. I'll do whatever you want.<br>**MT7473:** I ordred room servic<br>**MT7473:** Las vegas north outlets (outdoor) are a 10 minute drive. They have Lili but not hanna or janie. The Las Vegas south outlets are bit further (opposite direction) they don't have lulu or janie or hana<br><br>[. . . .]<br><br>**Kley(KT):** Can you wire 2K to [redacted] and 10.5 to [redacted] simple<br>**MT1312:** Ok<br>**MT7473:** Packing everything up<br>**MT7473:** Both wires sent<br><br>[. . . .]<br><br>**Kley(KT):** What did Jon say<br>**MT7473:** He doesn't know yet will know Monday and maybe Monday for Tuesday<br><br>[. . . .] | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas)<br><br>On November 1, 2019, $49,750 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources<br><br>Bank records show that the Tews went to Las Vegas between 10/25/19 and 11/2/19 [ NAVY_0000195]<br><br>Records from the Wynn Casino in Las Vegas confirm the stay and Kimberley Tew's winnings. WYNN_00000689; | A, D, G, K, N | SW_FIL_003280 34-<br>SW_FIL_003280 53 |

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **Kley(KT):**   HOLY SHIT I won 4 BTC<br>**Kley(KT):**   I just lost money downstairs and started rage betting on dice<br>**Kley(KT):**   Lol<br>**MT1312:**   Omg!!! That's insane!!! Score<br>**MT7473:**   Great that's so amazing<br>**MT1312:**   We're on the way back ok?<br>**Kley(KT):**   Where are you guys now<br>**Kley(KT):**   6 btc<br>**MT1312:**   Holy shot<br>**Kley(KT):**   I got down to $500 on dice and cashed out 6 BTC<br>**Kley(KT):**   6 btc = $55,368<br>**Kley(KT):**   Sending 4 to your kraken<br>**Kley(KT):**   We won't get it until Monday but that's fine<br>**MT7473:**   Hun are you sure you sent 4 BTC to kraken -- its not showing up even as pending | Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020. | | |
| 287 | 11/11/19 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are our service and maintenance invoices for Aero Maintenance Resources for October.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000043-GFL_00000046 |
| 288 | 11/13/19 | **Kley(KT):**   You need to call Jon and ask for today<br>**Kley(KT):**   It can't wait<br>**MT7473:**   Ok what's my reason<br>**MT7473:**   My wife to the exchange got jammed up and need another 25k to get | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide | A, C, D, G, H, I, K, N | SW_FIL_003281 13-<br>SW_FIL_003281 15 |

229

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | him his btc | how much to ask Yioulos to send them and the Tews' role in making those requests) | | |
| | | **Kley(KT):** | We need more than 25. Just be honest. Tell him I lost it. | | | |
| | | **Kley(KT):** | Is your 3494 account overdrawn? | | | |
| | | **MT7473:** | Transferred to 4917 | "3494" is a reference to Michael Tew's NFCU Bank account x3494. | | |
| | | **Kley(KT):** | What is up with Jon | | | |
| | | **MT7473:** | Working on it he said fuck off earlier and he didn't want any BTC anymore but he'll come around tonight | "4917" is a reference to Kimberley Tew's NFCU account ending x4917. | | |
| 289 | 11/14/19 | **KT2046:** | At least if you are in jail you can't hurt us | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, G, K, N | SW_FIL_00313398 |
| | | **MT1312:** | I will be better I'm sorry | | | |
| | | **MT1312:** | I got 1940 out | | | |
| | | **KT2046:** | You're never better | | | |
| | | **MT1312:** | Going to deposit it now | | | |
| | | **KT2046:** | I told you I needed help yesterday | | | |
| | | **KT2046:** | And I hear you talk to him | | | |
| | | **MT1312:** | I've spoken to him a bunch of times since yes yes sub | | | |
| | | **MT1312:** | I spoke to him yesterday and this morning | | | |
| | | **KT2046:** | Great | | | |
| | | **KT2046:** | All you're doing is fighting | | | |
| | | **KT2046:** | Stop texting and driving | | | |
| | | **KT2046:** | Yeah | | | |
| | | **KT2046:** | I hope you got through to Jon | | | |
| | | **KT2046:** | We are in for a tough weekend | | | |
| 290 | 11/19/19 | **Kley(KT):** | I need more btc | Messages to Michael Tew | A, D, F, G, K, N | SW_FIL_00328152 |
| | | **Kley(KT):** | And I assume Jon is sending nothing for tomorrow so I AM FUCKED | | | |
| | | **Kley(KT):** | I have $495 in 0556 (7444) and $496 in 4917 (9396) | *See* Indictment ¶ 20 (alleging coordination | | |
| | | **Kley(KT):** | I just transferred $996 to your 3494 (0816) account | | | |

230

<p align="center"><strong>Government's <em>James</em> Log</strong><br>
<strong><em>United States v. Tew</em>, 20-cr-000305-DDD</strong></p>

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On November 19, 2019, $25,000 sent via ACH to Wells Fargo Bank Account x6934 for services purportedly made to Aero Maintenance Resources<br><br>Bank records show transfers of $501, and $$95 from Kimberley Tew's NFCU accounts to Michael Tew's x3494 accounts. | | |
| 291 | 11/20/19 | **Kley(KT):** What's the deal<br>**MT7473:** Been arguing with jon<br>**MT7473:** He'l get us the 80 but he will not go to the bank and ask them to send the funds. Right now they are 100K overdrawn<br>**MT7473:** I'm still fighting with him<br>**Kley(KT):** Is he sending the money this week<br>**MT7473:** yes<br>**Kley(KT):** What if nothing hits tomorrow<br>**MT7473:** Hes confident it iwll<br>**Kley(KT):** He's sending 55 tomorrow or 80<br>**MT7473:** I'm not there yet<br>**MT7473:** We're still arguing how much he can send and nay get<br>**Kley(KT):** I can get $48 on Coinbase can you withdraw the rest to get the btc and whatever else we need | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br>*See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when | A, D, F, G, K, H, I, N | SW_FIL_003281 58-<br>SW_FIL_003281 60 |

<p align="center">231</p>

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | fraudulent payments could be made) | | |
| | | | On November 26, 2019, $43,250 sent via ACH to Wells Fargo Bank Account [x]2064 for services purportedly made to Aero Maintenance Resources, as alleged in Count 24 of the Indictment | | |
| | | | See above [X] for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds | | |
| | | | See above [] for information about Global Fuel Logistics, Aero Maintenance Resources, and "Jessica Thompson" | | |
| 292 | 11/21/19 | **MT7473:** Screenshot of messages with JY (Yes. Of course NOTHING showed.jpeg)<br>**Kley(KT):** How much cash do you have on you or in sand hill<br>**MT7473:** 10 dollars in cash, 5 dollars in global fuel, sand hill overdrawn<br>**MT7473:** Hes saying he may be able to take something small from the forwarders and send it but there's not much there so he doesn't know yet | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how | A, B, D, F, G, K, N | SW_FIL_003281 65-SW_FIL_003281 66 |

232

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) <br><br> *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | | |
| 293 | 11/22/19 | **Kley(KT):** What's up with Jon<br>**Kley(KT):** I need a date<br>**Kley(KT):** He needs to send for Monday too or a lot early<br>**Kley(KT):** How could I possibly focus and remain calm<br>**Kley(KT):** Same shit. Different day. You told me he was sending large this week.<br>**Kley(KT):** Same story.<br>**Kley(KT):** That's a 50k spread.<br>**MT7473:** Ok so I will keep putting pressure on him<br>**MT1312:** He has no idea what's coming in or when next week<br>**MT7473:** No schedule<br>**MT1312:** System is down<br>**Kley(KT):** You don't give me the real numbers<br>**Kley(KT):** What system<br>**MT7473:** The goverments payment system<br><br>[. . . .]<br><br>**MT1312:** Screenshot of the GFL Wells Fargo bank account balance (Screenshot 2019-11-22 at 09.33.48.jpeg) | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) <br><br> *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | A, B, D, F, G, H, K, N | SW_FIL_0032 8173-<br>SW_FIL_0032 8175<br><br>SW_FIL_003134 02 |

233

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|-------------------|------------------|--------|
| 294 | 11/25/19 | **MT1312:** | Dubai money hit | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, C, F, G, H, K, L, N | SW_FIL_003281 86-SW_FIL_003281 88 |
| | | **Kley(KT):** | How much can he send today and tomorrow | | | |
| | | **MT7473:** | Call jon Went to niche main | | | |
| | | **MT1312:** | Voicemail | *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| | | **Kley(KT):** | But he texted you to let you know | | | |
| | | **Kley(KT):** | Today and tomorrow are critical | | | |
| | | **MT7473:** | Yes | | | |
| | | **Kley(KT):** | If he wants his "XMAS" present | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | | |
| | | **MT1312:** | Have 800 going up btc atm now | | | |
| | | **MT7473:** | 800 bought | On November 26, 2019, $43,250 sent via ACH to Wells Fargo Bank Account [x]2064 for services purportedly made to Aero Maintenance Resources, as alleged in Count 24 of the Indictment | | |
| | | | | Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between | | |

234

Government's *James* Log
*United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | | 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; 552-554; WYNN_00000730; 736 | | |

235

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

**December 2019**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| 295 | 12/1/19 | **MT1312:** Hun there's only 919 left in global fuel all the Wynn stuff hit<br>**Kley(KT):** OK<br>[. . . .]<br>**Kley(KT):** So hold off on depositing at sand hill | *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas)<br><br>Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; 552-554; WYNN_00000730; 736<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | A, G, K | SW_FIL_003282 41 |
| 296 | 12/2/19 | **Kley(KT):** Can Jon send today<br>**MT1312:** Trying him he has not responded<br>**Kley(KT):** What's up<br>**Kley(KT):** Pls tell me you have good news<br>**MT7473:** Working on it - I think he is sending<br>**Kley(KT):** For tomorrow<br>**Kley(KT):** How much<br>**Kley(KT):** To navy?<br>**MT7473:** To navy | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, F, G, H, K | SW_FIL_003282 50-<br>SW_FIL_003282 55 |

236

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | Not sure yet | *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On December 3, 2019, $9,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources, as alleged in Count 25. That account was controlled by Michael Tew.<br><br>Records show Kimberley Tew at the Wynn hotel between 11/26/19 and 12/11/19. [WYN_00000730; 736]<br><br>*See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | | |
| | | **Kley(KT):** | What's going on | | | |
| | | **Kley(KT):** | Can you tell me | | | |
| | | **MT7473:** | Waiting to hear from him if he can send and how much but cutoff is soon so i'll know shortly | | | |
| | | **MT7473:** | Trust me i;mn on it | | | |
| | | **Kley(KT):** | We are screwed if he doesn't | | | |
| | | **Kley(KT):** | How much | | | |
| | | **MT7473:** | I'm doing my best I really am | | | |
| | | **MT7473:** | Less than 10 not sure yet | | | |
| | | **MT7473:** | He needs invoices from me so I'm working the angles | | | |
| | | **Kley(KT):** | What!! | | | |
| | | **Kley(KT):** | He can't send 15-20 | | | |
| | | **MT7473:** | No he doesn't have | | | |
| | | **MT1312:** | 9800 sent to navy | | | |
| | | **MT7473:** | Best I could do | | | |
| | | **Kley(KT):** | That's awesome | | | |
| | | **Kley(KT):** | Thank you | | | |
| | | **Kley(KT):** | Is there a plan for this week with him | | | |
| | | **MT7473:** | Tonight we're talking | | | |
| | | **MT1312:** | I'm doing my best | | | |
| | | **MT7473:** | He couldn't talk today in office | | | |
| 297 | 12/3/19 | **Kley(KT):** | Jon needs to send today | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them | A, D, F, G, K, N | SW_FIL_00333389-SW_FIL_00333390 |
| | | **MT7473:** | I had already asked - [C.A.] took all the money in anticipation of more coming this week and the auto draws put them over into negative. The only people that got paid this week were us and [C.A.]. I did ask. I can work on getting more later this week if you want | | | |
| | | **MT7473:** | I promise you I am doing everything I possibly can to get us more | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | money from him<br>**MT7473:** everything<br>**Kley(KT):** He needs to send today<br>**Kley(KT):** I am freaking out<br>**MT7473:** The bank won't send it they have a negative balance it happened before<br>**MT7473:** Come up here then if you are freaking out<br>**Kley(KT):** We are stuck | and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On December 3, 2019, $9,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources, as alleged in Count 25<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; | | SW_FIL_003282 63-<br>SW_FIL_003282 65 |

238

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | 552-554; WYNN_00000730; 736 ] *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | | |
| 298 | 12/4/19 | KT2046: | Can you transfer 610 from 3494 to 5336 | Bank records show transfers from Michael Tew's x3494 account to Michael Tew's x5336 account. [NAVY_00000554] Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; 552-554; WYNN_00000730; 736 *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) *See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_0033339 0- SW_FIL_0033339 2 |
| | | KT2046: | Can't do it from your computer | | | |
| | | MT7473: | Yes | | | |
| | | | On way back | | | |
| | | KT2046: | Do you have a key | | | |
| | | MT7473: | Yes | | | |
| | | MT7473: | There's already 610 in 5336 | | | |
| | | MT7473: | There's like 590 in 3494 | | | |
| | | KT2046: | Ok | | | |
| | | KT2046: | So all three | | | |
| | | KT2046y: | Can you transfer 20 from joint to 3494 | | | |
| | | MT7473: | Ok | | | |
| | | KT2046: | Which accounts have money | | | |
| | | MT7473: | Done | | | |
| 299 | 12/6/19 | MT7473: | Jon is pittjnbup [sic] a wall saying he cannot senf anything for Monday | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide | A, D, G, K, J, N | SW_FIL_0033339 2- |
| | | KT2046: | Isn't it past cut off time | | | |
| | | KT2046: | At this point | | | |

239

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------|--------|
| | | **MT7473:** 10 mins<br>**MT7473:** We re really at each other<br>**KT2046:** Tell him you wouldn't be doing this unless 911<br>**KT2046:** To take you seriously<br>**KT2046:** Say I'm not going to fight with you<br>**MT7473:** [P.M.] said he will come [comp] what he can tonight<br>**KT2046:** But Tue is a problem<br>**KT2046:** Not what he said<br>**KT2046:** Big problem<br>**MT7473:** Have the 1800<br>**MT7473:** Getting uber<br>**MT7473:** Screenshot of account balances (Screenshot 2019-12-06 at 12.44.27.jpeg)<br>**MT7473:** Global fuel 161<br>Sand hill -564<br>Didn't cash out that PayPal transaction yet<br>**MT7473:** Maybe don't stop at in n out it'll just be more expensive with uber and everything | how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On December 6, 2019, $26,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; 552-554; WYNN_00000730; 736<br><br>"P.M." is a reference to a casino host at the Wynn | | SW_FIL_0033339 5 |

240

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | | |
| 300 | 12/7/19 | **KT2046:** I hate life<br>**KT2046:** How the fuck are we going to get back<br>**MT7473:** What happened<br>**KT2046:** I just can't breathe!!!!<br>**KT2046:** How much money do you have left<br>**KT2046:** We have to do crypto<br>**KT2046:** I hate everyone but you and the girls<br>**MT7473:** I spent like 30 bucks<br>**MT7473:** I have 100 in navy<br>**MT7473:** We have enough to buy Tickets no?<br>**KT2046:** I thought you srill has the 700 I forgot you transferred<br>**KT2046:** Nope<br>**MT7473:** I transferred that to you<br>**KT2046:** I know<br>**KT2046:** Kill me | On December 10, 2019, $51,150 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; 552-554; WYNN_00000730; 736<br><br>*See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | A, G, K, N | SW_FIL_0033339 7-<br>SW_FIL_0033339 9 |
| 301 | 12/11/19 | **MT7473:** I got 5100 and with the fees that's what's left (Screenshot of account balances (Screenshot 2019-12-10 at 19.53.42.jpeg))<br>**MT7473:** Zara closes at 9<br>**KT2046:** Played aggressive and even<br>**MT7473:** Cool<br>**MT7473:** That's fine<br>**MT7473:** I'm almost good with packing except wf need y finish our toiletries and there's some things of yours in the drawer not sure what you are packing and what wearing | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how | A, G, K, N | SW_FIL_0033340 0-<br>SW_FIL_0033340 8<br><br>SW_FIL_0032832 0- |

241

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|-------------------|------------------|--------|
| | | **KT2046:** | I'm frustrated | Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | SW_FIL_0032833 5 |
| | | **KT2046:** | I don't want to go home empty after all this | | | |
| | | **MT7473:** | I know you don't but we're not | | | |
| | | | We have so much wonderful time planned away from here that's what matters | On December 12, 2019, $24,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources, as alleged in Count 26 of the Indictment | | |
| | | | You're not going home empty handed but they'll keep you at those tables all night if they can | | | |
| | | **MT7473:** | Get some food in you | | | |
| | | **KT2046:** | Is 5K and bouncing tent enough to go | | | |
| | | **KT2046:** | I will be more comfortable knowing Jon is sending before Friday | | | |
| | | **MT7473:** | I know but I won't know that until tomorrow | | | |
| | | **MT7473:** | What can we do stay? | | | |
| | | **MT7473:** | Buy btc? | | | |
| | | **MT7473:** | Can we take a break and strategize together? | | | |
| | | **KT2046:** | Here? Hell no. | Bank records and records from the Wynn casino in Las Vegas show substantial debits and purchases at the Wynn between 11/26/19 and 12/11/19; WFB_00002350-2356; NAVY_0000228-232; 552-554; WYNN_00000730; 736 | | |
| | | **MT7473:** | Exactly | | | |
| | | **KT2046:** | Are you hungry | | | |
| | | **MT7473:** | Let's just get Jon to send Friday work on it from la | | | |
| | | **MT7473:** | Yeah and [redacted] is | | | |
| | | **MT7473:** | I can order | | | |
| | | **KT2046:** | Not for Monday though right | | | |
| | | **MT7473:** | No has to be Thursday for Friday | | | |
| | | **KT2046:** | We have to go and do one day at a time for now until tomorrow | | | |
| | | **MT7473:** | We can do it I know we can. | *See* Indictment ¶ 34 (describing use of fraud proceeds in Las Vegas) | | |
| | | **MT7473:** | We've done harder | | | |
| | | **MT7473:** | Plan our next adventure | | | |
| | | **KT2046:** | I'm up 2K | | | |
| | | **KT2046:** | Time to stop | | | |
| | | **MT7473:** | Perfect | | | |
| | | **KT2046:** | Order food | | | |
| | | **MT7473:** | For now | | | |
| | | **MT7473:** | Ok ordering now | | | |
| | | **KT2046:** | Maybe 3 | | | |
| | | **KT2046:** | I don't know | | | |
| | | **MT7473:** | That's great | | | |
| | | **KT2046:** | But will stop | | | |
| | | **MT7473:** | It's good | | | |

242

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **MT7473:** Order in food ready in 15<br>**KT2046:** Do you need me to go<br>**KT2046:** I'm still playing<br><br>[. . . .]<br><br>**KT2046:** Should I ask for a check?<br>**KT2046:** I just won another jackpot<br>**KT2046:** No we will use for btc<br>**KT2046:** Is there a navy federal in LA?<br>**MT7473:** Ok perfect idea<br>**MT7473:** Use it<br>**MT7473:** One in hawthorne<br><br>[. . . .]<br><br>**MT7473:** If we take the 7pm flight we leave here at 5. Everyone sleeps until 12...we have 5 hours to<br>sort of get our shit together<br>**MT7473:** I would personally rather not push it off like an entire day at hte casino just book a cheap van, get on teh plane, and get there. But jon is NOT expecting to send more money this week and I have to convince him, which I may be able to, send more<br>**MT7473:** tomorreow<br>**Kley(KT):** Can you come down to floor to grab 2K from me. I won.<br>**Kley(KT):** We have to cancel car<br><br>[. . . .]<br><br>**Kley(KT):** Isn't that what we started with<br>**Kley(KT):** I'm not hungry<br>**MT7473:** Ok<br>**Kley(KT):** No is it less<br>**Kley(KT):** I can't remember<br>**MT7473:** we started with 10,600 exactly<br>**Kley(KT):** Do we have a rental<br>**Kley(KT):** So we are up $103 | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT7473:** No I need to have a return ticket booked to book a rental with hertz using debit card<br><br>[. . . .]<br><br>**MT7473:** Including rent and discover we have enough $ now for the trip and rent and dsicover<br>**MT7473:** if we wanted to stay to Saturday<br>**Kley(KT):** You need to deal with Jon first thing in AM<br>**Kley(KT):** I'm serious<br>**MT7473:** Yes I know<br>**MT1312:** But like you're going to have all day at the casino tomorrow<br>**Kley(KT):** First thing in AM<br>**Kley(KT):** Funds are going to navy right?<br>**MT7473:** If you want<br>**Kley(KT):** Can you bring me the rest of cash and chip<br>**Kley(KT):** I'm at slots right outside coffee<br><br>[. . . .]<br><br>**Kley(KT):** What is Jon doing<br><br>[. . . .]<br><br>**MT1312:** Jon sent 24<br><br>[. . . .]<br><br>**Kley(KT):** I'm winning<br>**Kley(KT):** Photo of jackpot (59779381882__2324EF01-F0C6-4CBB-BF89-80255E6D412C.jpeg)<br>**MT1312:** Awesome!<br>**MT7473:** That's amazing<br><br>[. . . .]<br><br>**Kley(KT):** I'm frustrated | | | |

244

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| | | **Kley(KT):** | I hit 2 3K jackpots and at 8K | | | |
| | | **Kley(KT):** | photo of jackpot (IMG_2418.jpeg) | | | |
| | | **Kley(KT):** | Thought I was winning | | | |
| | | **MT7473:** | That's fine! Its a good place! | | | |
| | | **Kley(KT):** | No wait | | | |
| | | **Kley(KT):** | I have credit in machine | | | |
| | | **MT7473:** | A lot of credit | | | |
| | | **Kley(KT):** | At $10,600 | | | |
| | | **MT7473:** | That's awesome | | | |
| | | **MT7473:** | Plus 24K coming tomorrow | | | |
| | | **Kley(KT):** | So there's no movement | | | |
| | | **MT7473:** | come up and eat with us | | | |
| 302 | 12/13/19 | **MT7473:** | Screenshot of account (BUSINESS CHECKING - Wells Fargo.jpeg) | *See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_0033340 8-SW_FIL_0033340 9 |
| | | **MT7473:** | ThTs sand hill account number | | | |
| | | | [. . . .] | On December 12, 2019, $24,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources, as alleged in Count 26 of the Indictment | | |
| | | **MT7473:** | Sand hill is linked to globalfuel.co | | | SW_FIL_0032837 8-SW_FIL_0032838 0 |
| | | **MT1312:** | Global fuel is linked to tew trading | | | |
| | | **Kley(KT):** | What's the email for PayPal linked to sandhill | | | |
| | | **MT1312:** | Mtew@globalfuel.co | | | |
| | | **MT7473:** | If you transfer to Tew trading at least I can get to global fuel I can get a new debit card at wells today | | | |
| | | **MT1312:** | I mean ASAP | The Mtew@globalfuel.co address was created on the domain name Michael Tew paid fo from go daddy, along with the Sand Hill domain name. ORD_00000003, 19768; 19821. | | |
| | | **MT7473:** | It's the account that's linked for instant transfer not the debit number | | | |
| | | **Kley(KT):** | 5K deposit into sandhill in about 20 min | | | |
| | | **Kley(KT):** | Need to withdraw buy more btc | | | |
| | | **MT7473:** | Ok | | | |

# Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | Bank records show a $5,000 deposit into teh Sand Hill Wells Fargo bank account x6934 used by Michael Tew. [WFB_00002538] | | |
| 303 | 12/17/19 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are our service and maintenance invoices for Aero Maintenance Resources for November.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000039-GFL_00000042 |
| 304 | 12/20/19 | **Kley(KT):** Look at our bank balance if this kraken shit isn't sorted out today it's bad<br>**Kley(KT):** Like Denver<br>**Kley(KT):** And if Jon doesn't send totally over<br>**MT7473:** I'm trying to get him to send today<br>**MT7473:** I'm going back to kraken again now<br>**MT7473:** I don't know how to make it happen, maybe I cancel the wire and try to get the funds back<br>**Kley(KT):** No<br>**MT7473:** Ma7be we get it back monday<br>**MT7473:** I have 1000 in my accounts do you have anything<br>**MT7473:** I mean that's it? | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On December 17, 2019, $7,800 sent via ACH to Navy Federal Credit Union Account [x]5336 | A, D, G, H, K, I, N | SW_FIL_0032848 0-SW_FIL_0032848 91 |

246

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | MT7473: | No more money? | for services purportedly made to Aero Maintenance Resources<br><br>On December 18, 2019, $33,300 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020. | | |
| | | MT7473: | I emailed kraken again | | | |
| | | Kley(KT): | About $1,800 | | | |
| | | MT7473: | so we have 2800 total? | | | |
| | | Kley(KT): | Will work btc | | | |
| | | MT7473: | No BtC/ | | | |
| | | MT7473: | I'm working on getting more money from jon | | | |
| | | Kley(KT): | $4,500 in btc | | | |
| | | MT7473: | Jon left the office for the day | | | |
| | | MT7473: | He said he has nothing to send - i will keep pushing him | | | |
| | | Kley(KT): | What do you think | | | |
| | | Kley(KT): | Remember he thinks we are still 20K short | | | |
| | | MT7473: | Yeah I know | | | |
| | | MT7473: | I'm doing everything go can | | | |
| | | Kley(KT): | Stay on Jon before deadline | | | |
| | | MT7473: | I'm on him | | | |
| | | MT7473: | He said Monday for Tuesday | | | |
| | | Kley(KT): | How much | | | |
| | | MT7473: | Don't know yet I'm on t | | | |
| | | MT1312: | More but he's overdrawn so not sure how much | | | |
| | | MT7473: | I know you need to know | | | |
| | | MT1312: | We need money till Tuesday | | | |
| | | MT7473: | I love you I'm sorry I'll keep pushing | | | |
| | | Kley(KT): | An update would be nice | | | |
| | | MT7473: | Coming back | | | |
| | | MT7473: | [x]2064 | | | |
| | | MT7473: | Global fuel logistics INC | | | |
| | | MT7473: | There's 1540 in global fuel | | | |
| | | Kley(KT): | Huh | | | |
| | | Kley(KT): | Oh I guess I sent you some | | | |
| 305 | 12/21/19 | Kley(KT): | Send me the screenshot you sent Jon | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them | A, G, K, N | SW_FIL_0032850 1 |
| | | MT7473: | The original one or the one I just sent you | | | |
| | | Kley(KT): | Never mind I found it | | | |

247

### Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | | | and the Tews' role in making those requests) | | |
| 306 | 12/30/19 | **MT1312:** | How much should I go for with jon today and tomorrow | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A,F, K, N | SW_FIL_003286 46-SW_FIL_003286 47 |
| | | **MT1312:** | What's realistic | | | |
| | | **Kley(KT):** | As much as you can | | | |
| 307 | 12/31/19 | **Kley(KT):** | Jon is full of shit he can't send more today | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, F, G, H, I, K, N | SW_FIL_003286 53 |
| | | **Kley(KT):** | And an extra 15K would help to pay these | | | |
| | | **Kley(KT):** | Plus we get platinum back | | | |
| | | **MT7473:** | Ill work on it | | | |
| | | **MT7473:** | I'm supposed to pay my chase cards also - should I make payment? | On December 31, 2019, $77,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | | |
| | | **Kley(KT):** | Yes | | | |

248

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

**January 2020**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 308 | 1/3/20 | **Kley(KT):**   What's up with kraken and jon<br>**MT7473:**   I REACHED OUT to jon and nothing no response<br>**Kley(KT):**   What's your plan<br>**Kley(KT):**   What did you say to him<br>**Kley(KT):**   How long is call<br>**MT7473:**   15 minutes<br><br>[. . . .]<br><br>**MT7473:**   I'm gpoing to talk to jon this weekend is my plan and tell him I need another $200k it has to be done in January and that we can do it without any problems because its still first month of hte year, we will do December invoices for January bills<br>**MT7473:**   I have to convince him that we'll be ok<br>**Kley(KT):**   Kraken?<br><br>[. . .]<br><br>**MT7473:**   what do you recommend<br>**MT7473:**   Just tell me<br>**Kley(KT):**   Talk to Jon<br>**MT7473:**   What do I say<br>**Kley(KT):**   Transfer 600 to all your NF accounts<br>**MT7473:**   Hotel called I told them we are staying the night again<br>**MT7473:**   We need tix to get home kimberley<br>**MT7473:**   We have no tickets to get back<br>**Kley(KT):**   You were supposed to do this 4 days ago<br>**Kley(KT):**   No shit<br>**Kley(KT):**   I'm sick<br>**MT7473:**   Ok so what's your plan<br>**Kley(KT):**   Don't give me shit<br><br>[. . .] | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>Kraken is a cryptocurrency exchange on which both Kimberley and Michael Tew had accounts. KRKN_00000008; KRKN_00000020.<br><br>Bank records show teh Tews travelling to Los Angeles in January 2020, staying at the Four Seasons.<br><br>*See* Indictment ¶ 34 (describing use of fraud proceeds in California)<br><br>Bank records show a series of $600 transfers into accounts for Michael Tew. NAVY_00001288, 1293, 1297] | A, D, F, G, H, I, K, N | SW_FIL_003287 00-<br>SW_FIL_003287 01;<br>SW_FIL_003287 02;<br>SW_FIL_003287 05-<br>SW_FIL_003287 08;<br>SW_FIL_003287 10 |

249

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT7473:** | I'm calling jon | | | |
| | | **Kley(KT):** | Where's my kraken btc | | | |
| | | **MT7473:** | Jons not answering | | | |
| | | **Kley(KT):** | Excuses | | | |
| | | | [ . . .] | | | |
| | | **Kley(KT):** | WHERE THE FUCK ARE YOU | | | |
| | | **Kley(KT):** | ALL I KNOW IS YOU'RE NOT WORKING ON KRAKEN OR JON | | | |
| | | **Kley(KT):** | HELLLO | | | |
| | | **Kley(KT):** | HELLLLLLLLLOOOOOOO | | | |
| 309 | 1/7/20 | **Kley(KT):** | Is there any way you can get the number up to 27? I could pay both of my Amex off and we | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, B, D, F, G, H, I, K, N | SW_FIL_003287 45-SW_FIL_003287 55 |
| | | **Kley(KT):** | This is the last chance for a long time to have a platinum card. | | | |
| | | **MT7473:** | I'll see what I can do, I dot think he can go over 20 or it will be flagged in the audit which starts next month | | | |
| | | **Kley(KT):** | I need 27 | | | |
| | | **MT7473:** | Im doing my best | | | |
| | | **MT7473:** | I really honestly truly am | | | |
| | | **MT7473:** | I'll get as much as I possibly can | | | |
| | | **Kley(KT):** | Maybe try for 32 | | | |
| | | **Kley(KT):** | Because he usually comes in 5K lower | | | |
| | | **Kley(KT):** | Is he at least talking to you | | | |
| | | **MT7473:** | Yes we are ok | | | |
| | | **MT7473:** | I dont know what to do I will get as much as I can | | | |
| | | **Kley(KT):** | Well can you start that now | | | |
| | | **MT7473:** | Already started this morning | | | |
| | | **Kley(KT):** | Is he sending twice this week | | | |
| | | **MT7473:** | I dont think so | | | |
| | | **MT7473:** | Yesterday we were at 5k | | | |
| | | **MT7473:** | I'm at 14K with him | | | |
| | | **MT7473:** | I will try for more | | | |
| | | **Kley(KT):** | That's not enough for both cards | | | |
| | | **MT7473:** | 17K is both cards right | | | |

250

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | **Kley(KT):** | More because of fees | | | |
| | | **Kley(KT):** | And I want to pay my chexsystens | | | |
| | | **MT7473:** | I can't get more than 20 | | | |
| | | **MT7473:** | I'll try | | | |
| | | **MT7473:** | We're just going to end up fighting about it | | | |
| | | **MT7473:** | Then why did you say you'd try for 27-32 | | | |
| | | **Kley(KT):** | I said I would try | | | |
| | | **MT7473:** | We don't have to | | | |
| | | **MT7473:** | Bec cause we just fight all day anyway | | | |
| | | **MT7473:** | About money | | | |
| | | **MT7473:** | And about jon | | | |
| | | **MT7473:** | And about work | | | |
| | | **Kley(KT):** | But then you said you can't get more than 20 | | | |
| 310 | 1/8/20 | **MT1312:** | Jon answered the phone sitting next to [C.A.] and [B.B.d and pretended I was someone else | Message sent to Kimberley Tew<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>[C.A.] is a reference to an owner of NAC. [B.B.] is a reference to NAC's Director of Security. | A, G, K, L, N | SW_FIL_003287 55 |
| 311 | 1/9/20 | **Kley(KT):** | Why do you keep saying we received $850,000 in Dec? | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them | A, B, D, E, F, G, K, N | SW_FIL_003287 70-<br>SW_FIL_003287 71 |
| | | **MT7473:** | Between November and December | | | |
| | | **MT7473:** | It was a bit lesss than that actually | | | |
| | | **MT7473:** | Jon keeps making it Seem like it's a lot more tha. It is. It's about 300-350/month | | | |
| | | **Kley(KT):** | We need 23750 | | | |
| | | **MT7473:** | Duck | | | |

251

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **Kley(KT):** What now<br>**Kley(KT):** I need your login info for wells<br>**MT7473:** Michael_tew<br>[redacted password] | and the Tews' role in making those requests) | | |
| 312 | 1/9/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are our service and maintenance invoices for Aero Maintenance Resources for February 2020.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>Bank records show a $200 deposit into the Wells Fargo x2064 account for Global Fuel Logistics on January 10, 2019. [WFB_00002360] | A, K, L | NAC_E_00078873 |
| 313 | 1/10/20 | **MT1312:** How much should I put into sand hill<br>**MT1312:** Put $200 in global fuel and the rest in sand hill<br>**MT1312:** Ok<br><br>[ . . . . ]<br><br>**MT7473:** Where do we want Jon to send<br>**MT7473:** What account<br>**Kley(KT):** How much<br>**MT7473:** Not enough<br>**Kley(KT):** What<br>**Kley(KT):** That's not an answer<br>**MT7473:** 15 I'm pushing for more<br>**MT7473:** Only on text he's in meetings<br>**Kley(KT):** 15 or is it really 12<br>**Kley(KT):** Last time he said 14900 and it was less | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment. | A, D, F, G, H, K, N | SW_FIL_00328774;<br>SW_FIL_00328777-<br>SW_FIL_00328778 |

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>Bank records show a $200 deposit into the Wells Fargo x2064 account for Global Fuel Logistics on January 10, 2019. [WFB_00002360]<br><br>On January 13, 2020, $15,500 sent via ACH to Navy Federal Credit Union Account x336 for services purportedly made to Aero Maintenance Resources | | |
| 314 | 1/11/20 | **Kley(KT):**   If it works for global fuel deposit cash into sand hill<br>**MT1312:**   Ok | *See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the | A, G, K, N | SW_FIL_00328774;<br>SW_FIL_00328784 |

253

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | | | relevant paragraphs of the Indictment. | | |
| 315 | 1/13/20 | MT7473: | documents.pdf | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, B, D, F, G, H, K, N | SW_FIL_003334 09-SW_FIL_003334 13 |
| | | Kley(KT): | Pls tell me you have good news since today is the day I need to pay my Amex | | | |
| | | MT7473: | The accounts overdrawn they're talking about bankruptcy their not paying anyone there is no payment schedule yet this week we think something will come in next day or two and he'll send as much as he can - let's just get everything we can out of The bank and double down to focus on paying your AMEX. | *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | | |
| | | Kley(KT): | Ok | | | |
| | | MT7473: | No other choice | | | |
| | | Kley(KT): | Wouldn't bk be bad because everything comes out | | | |
| | | MT7473: | Yes | On January 13, 220, $15,500 sent via ACH to Navy Federal Credit Union Account x5336 for services purportedly made to Aero Maintenance Resources | | |
| | | MT7473: | Well maybe | | | |
| | | MT7473: | Not necessarily | | | |
| | | MT7473: | Just a restructuring of the outstanding debt | | | |
| | | Kley(KT): | Yes the trustee would contact | | | |
| | | MT7473: | Only if there was a payable | | | |
| | | MT7473: | Bills already paid are on a diff list | | | |
| | | MT7473: | But the balance sheet is frozen in time at that point and nothing goes in nothing goes out | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |
| | | MT7473: | I doubt they will do it checks will lose everything including his hey | | | |
| | | MT7473: | Hey | | | |
| | | MT7473: | Jet but they are all discussing it as an option | | | |
| | | MT7473: | Assuming they don't I'm getting job to commit to more in the second half of month when money starts coming in | ATM photographs show Michael Tew making transactions in | | |
| | | MT7473: | In larger chunk an | | | |
| | | MT7473: | As a cost of pushing back | | | |

254

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | the NFCU accounts. NAVY_00001702<br><br>The references here to a bankruptcy are references to concerns that NAC would be filing for bankruptcy. | | |
| 316 | 1/16/20 | **MT1312:** Jon saying charter wire has to hit by three today or shit will hit the fan with the bank so he's counting on it. Well know at 3 pm if he has money to send to us | Sent to Kimberley Tew<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br>*See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | A, D, F, G, H, K, N | SW_FIL_003288 15 |
| 317 | 1/17/20 | **Kley(KT):** Did you talk to Jon<br><br>[ . . . .]<br><br>**MT1312:** Screaming match<br>**MT1312:** On way back ringing your donut<br>**Kley(KT):** Do we have enough for frap and donut<br>**Kley(KT):** But did you get anywhere with screaming match<br>**Kley(KT):** Tell him I'm personally calling the local jail to have the guy she's having an affair with pick him up | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br>*See* Indictment ¶ 21 (describing how Yioulos would provide | A, C D, F, G, H, I, J, K, N | SW_FIL_003334 14-<br>SW_FIL_003334 15<br><br>SW_FIL_003288 16;<br>SW_FIL_003288 31 |

255

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(KT):**  I don't care if we all go down<br>**MT1312:**  He didn't care<br>**Kley(KT):**  Today<br>**MT1312:**  I told him we're all going<br>**Kley(KT):**  Tell him I'm calling<br>**Kley(KT):**  That guy<br>**MT1312:**  He said fine I'm so stressed everyone screaming at me<br><br>[. . . .]<br><br>**MT7473:**  Screenshot of conversation with JY (Screenshot 2020-01-17 at 10.03.11.jpeg)<br>**MT7473:**  Screenshot of conversation with JY (Yes, I'm really lying.jpeg)<br>**MT7473:**  Screenshot of conversation with JY (I can't send money without having the knowledge more is coming in. I can send Monday for Tuesday, as I've communicated. If I kne.jpeg)<br><br>The first screenshot has the following message from J.Y.: "OK. I don't really know what to tell you. It's not like I'm lying. I can't make money appear out of nowhere. You're being super unreasonable. Over $2MM out by this point. And she's flipping out right now? Let's get realistic. I told you Tuesday. I can guarantee that. That's the best I can do."<br><br>In the second screenshot, J.Y. shows a picture of a negative balance. He then states "Yes, I'm really lying. I can't send money without having the knowledge more is coming in. I can send Monday for Tuesday, as I've communicated. If I knew money was coming Monday, I might be able to float it, but I don't have that knowledge." The third screenshot has the same communication.<br>[. . . .]<br><br>**Kley(KT):**  What is happening<br>**Kley(KT):**  How much can he send Monday for Tuesday<br>**MT1312:**  Banks are closed Monday he's sending today I'm working on amount<br>**MT1312:**  ACH won't hit until Monday at midnight<br>**Kley(KT):**  Tell him btc is going up and the portfolio value is increasing<br>**MT1312:**  Already did<br>**Kley(KT):**  How much is he sending | information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On January 23, 2020 $9,800 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>The references to a gift for "him" is a reference to gifts for J.Y., who resided in Buffalo, New York. | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | **MT1312:** I promise I have told him we've now doubled<br>**Kley(KT):** It's fine as long as there's a real plan<br>**MT1312:** He says at least 10 hut that's not enough and I'm trying to get him to commit to a plan to send more Tuesday<br>**Kley(KT):** He said in his text Monday for Tuesday<br>**MT1312:** Monday banks are closed he's sending today for Tuesday<br>**MT1312:** I've been texting with him<br>**Kley(KT):** But he said he could definitely send next week<br>**Kley(KT):** Monday at midnight?<br>**Kley(KT):** What will we do until then<br>**Kley(KT):** I need a real plan<br>**MT1312:** I was going to ask [redacted] for cash we would return to him next week<br>**MT1312:** Including some overage<br>**MT1312:** He may have it<br>**Kley(KT):** But what if we don't get cash this week<br>**MT1312:** That's what I'm trying to pin down Jon<br>**MT1312:** He said more craf is supposed to hit later in the week as well<br>**Kley(KT):** He's losing it<br>**MT1312:** Bigger $<br>**MT1312:** Yes he's losing it<br>**Kley(KT):** Something small can make him happy<br>**MT1312:** Yes<br>**MT1312:** I'm calling him in 15 mins<br>**Kley(KT):** Let's get him sports tickets<br>**Kley(KT):** Whatever you think<br>**Kley(KT):** He's a kid<br>**MT1312:** Yeah he flies places to see sports games. What about in Vegas?<br>**Kley(KT):** Well he must have a favorite team<br>**MT1312:** Yeah buffalo bills<br>**Kley(KT):** Would he want to go see John legend it's a private concert<br>**Kley(KT):** Let's get him season tickets<br>**Kley(KT):** Like a box or something<br>**Kley(KT):** Worth the cost<br>**Kley(KT):** Or a Jersey<br>**MT1312:** Yeah good idea<br>For 2020 season it would be so cheap in buffalo for season tickets<br>**MT1312:** They're already done with season so for next season | | | |

257

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **MT1312:** | He would rather have that then jon legend | | | |
| | | **Kley(KT):** | Maybe both | | | |
| | | **Kley(KT):** | We meet him there | | | |
| | | **Kley(KT):** | He can't pussyfoot if we are meeting in person | | | |
| | | **MT1312:** | Ok | | | |
| | | **Kley(KT):** | https://www.buffalobills.com/tickets/season-tickets | | | |
| | | **Kley(KT):** | Call them real quick to get price quote | | | |
| | | **MT1312:** | Ok | | | |
| | | **Kley(KT):** | On best tickets | | | |
| | | **Kley(KT):** | So he knows you're not kidding | | | |
| | | **Kley(KT):** | Club seats? | | | |
| | | **Kley(KT):** | Oh you can see through 3D viewer | | | |
| | | **Kley(KT):** | Attachment | | | |
| | | **Kley(KT):** | Text him what is the best seat for season tickets | | | |
| | | **Kley(KT):** | How much is a full season suite | | | |
| | | **Kley(KT):** | The 200 level suites look a lot nicer than the 100 level | | | |
| | | **MT1312:** | There are no good 100 level seats left anyway | | | |
| | | | Sideline club indoor outdoor 2700/ticket for the best midfield seats. You give 125/ticket now to secure your spot and in February they email you you can either pay all at once or 10 | | | |
| | | | months interest free with payments starting April | | | |
| | | **MT1312:** | MT club is all inclusive reserved indoor seating for 3270/seat | | | |
| | | **Kley(KT):** | KT club but suites | | | |
| | | **MT1312:** | But there's only for seats left | | | |
| | | **Kley(KT):** | Suites | | | |
| | | **MT1312:** | I'll ask | | | |
| | | **MT1312:** | 90k for a 200 level suite for 12 people | | | |
| | | **MT1312:** | He said he has season tix already thx but no worries | | | |
| | | **MT1312:** | He just bought regular seats | | | |
| | | **MT1312:** | He's sending 15-20 today will hit Monday at midnight | | | |
| | | | 35-50 Thursday for Friday | | | |
| | | **Kley(KT):** | Can you secure 25 and 70 | | | |
| | | **MT1312:** | I'll ask | | | |
| 318 | 1/22/20 | **MT1312:** | Two checks from global fuel to navy one for 210 and one for 200 were returned unpaid | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide | A, D, F, G, H, I,  K, N | SW_FIL_003288 61- |
| | | **MT1312:** | Sand hill must have paid one but its just showing the overdraft not the | | | |

<p align="center">Government's <em>James</em> Log<br>
<em>United States v. Tew</em>, 20-cr-000305-DDD</p>

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | check yet<br>**Kley(KT):**  What was number from Jon today<br>**MT7473:**  9800<br>**MT1312:**  I'll work on more tomorrow for Friday | how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On January 23, 2020 $9,800 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>*See* above, entry 54, for information about Sand Hill LLC and its use by Michael Tew as a vehicle to collect scheme proceeds and the relevant paragraphs of the Indictment.<br><br>An ATM photograph shows Michael Tew making transactions in NFCU accounts on January 23, 2020. NAVY_00001772 | | SW_FIL_003288 62 |

<p align="center">259</p>

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| 319 | 1/26/20 | **MT7473:** | Scan Jan 25, 2020 at 20.58.pdf - Navy Federal bank statements | *See* Indictment ¶¶ 23, 32, 33<br><br>On January 21, 2020, $19,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>On January 23, 2020, $9,800 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>On January 24, 2020, $13,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Message to Kimberley Tew | A, G, K, N | SW_FIL_003334 20 |
| 320 | 1/28/20 | **KT2046:**<br><br>**MT7473:** | Should I go buy btc now<br><br>[. . . .]<br><br>Going to btc atm<br><br>[. . . .] | On January 28, 2020, $36,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | A, G, K, N | SW_FIL_003334 20-<br>SW_FIL_003334 28 |

260

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|-------------------|------------------|--------|
| | | **MT7473:** | Getting btc | *See* Indictment ¶¶ 23, 32, 33 | | |
| 321 | 1/29/20 | **Kley(KT):**<br>**MT1312:**<br><br><br>**Kley(KT):**<br>**Kley(KT):**<br>**MT7473:**<br>**MT1312:**<br>**MT7473:** | Did you talk to Jon<br>He has not answered I keep calling him<br>I won't be able to talk to him until later I'm betting<br>I know you just want results I'm working on it<br>I'm sorry<br>The whole site has me frazzled<br>For what<br>It's fine we'll be fine we always are<br>I'm working on it I promise | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>Michael Tew was photographed making transactions at NFCU bank on January 29, 2020. NAVY_00001775. | A, D, F, G, H, I, K, N | SW_FIL_003289 10-<br>SW_FIL_003289 12 |
| 322 | 1/31/20 | **KT2046:**<br>**MT7473:**<br><br>**MT7473:**<br>**KT2046:**<br>**KT2046:**<br>**KT2046:**<br>**MT7473:** | Did you talk to Jon<br>He hasnt answered I've called him three times and have texted him several times for an update<br>I will talk to him<br>Got it<br>Got the btc<br>How do we know he hasn't fallen off the deep end<br>Ok<br>He hasnt<br>We spoke yesterday they were working on a solution | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On January 31, 2020, $7,200 sent via ACH to Wells Fargo Bank Account [x]2064 for services purportedly made to Aero Maintenance Resources | A, F, G,I , K, N | SW_FIL_003334 29-<br>SW_FIL_003334 32 |

261

Government's *James* Log
United States v. Tew, 20-cr-000305-DDD

**February 2020**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 323 | 2/1/20 | **MT7473:**<br>**MT7473:**<br><br>**MT7473:** | At btc atm<br>Photo of BTC ATM Screen (60221031083__F1B0432E-F100-4CAE-B305-512C81EEEDF4.jpeg)<br>Photo of BTC ATM Screen (60230041576__A6840AEE-5614-456C-AB6C-15DEE0342894.jpeg) | Messages to Kimberley Tew<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_0033343 3 |
| 324 | 2/5/20 | **MT7473:** | Photo of BTC ATM Screen (60263825242__2717F383-3BE5-4E52-9167-225CB82592F0.jpeg) | Message to Kimberley Tew<br><br>ATM photographs show Michael Tew making ATM withdrawals on February 5, 2020. NAVY_00001692.<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_0033343 6 |
| 325 | 2/12/20 | **Kley(KT):**<br>**Kley(KT):**<br>**Kley(KT):**<br>**MT7473:**<br><br><br><br><br><br><br><br><br><br><br>**Kley(KT):** | Did you talk to Jon<br>All 3 of the payments bounced<br>Can you resubmit rent online via ACH?<br>I'm still sitting here waiting<br>I'm going to give it a few mins and then I'll just go to the place on federal I could have been<br>there already<br>I didn't know Jon is with [C.A.] right now in Florida<br>Called him and he was sitting right next to him<br>Setting a time to speak<br>I will resubmit payment<br>Do we know if Amex will auto resubmit or contact you first<br>Did you talk to Jon | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>"[C.A.]" is a reference to NAC's owner<br><br>On February 12, 2020 $33,000 sent via ACH | A, B, D, F, G, H, I, K, N | SW_FIL_0032897 0-SW_FIL_0032897 8 |

262

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **Kley(KT):** | He is definitely pushing it through now? | to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>On February 12, 2020 Michael Tew was captured in lobby of NFCU making a [NAVY_00001767] | | |
| | | **Kley(KT):** | Don't forget to pay | | | |
| | | **Kley(KT):** | Use bitpay | | | |
| | | **Kley(KT):** | But like 10 sessions | | | |
| | | **MT1312:** | He says sending it now | | | |
| | | **MT1312:** | He says he's sending it all at once | | | |
| 326 | 2/13/20 | **Kley(KT):** | Have you talked to Jon | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On February 14, 2020, $32,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | A, F, G, H, K, N | SW_FIL_0032898 2 |
| | | **Kley(KT):** | To confirm the 40 | | | |
| | | **MT1312:** | I called him | | | |
| | | **MT1312:** | I'm on it | | | |
| 327 | 2/15/20 | **MT1312:** | Spoke to Jon | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, F, G, H, K, N | SW_FIL_0032899 7-<br>SW_FIL_0032899 9 |
| | | | 50k tues for wed | | | |
| | | | 50k wed for thurs or thurs for Friday | | | |
| | | **Kley(KT):** | Do you think for sure | | | |
| | | **MT1312:** | Yes | | | |
| | | | I will try to get more | | | |
| | | | But that's what he has guaranteed | | | |
| | | **MT1312:** | Have the 10k now what | | | |
| | | **Kley(KT):** | I need at least 1/2 in btc | | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **MT1312:** Ok so 5K btc<br>**MT1312:** I'll go buy now at the dry creek gas station and get gas<br><br>[. . . .]<br><br>**Kley(KT):** I need like $6,500 in btc<br>**Kley(KT):** QR Code (IMG_5229.png)<br>**MT1312:** Ok<br>**MT1312:** Here now | On February 19, 2020, $55,000 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>*See* Indictment ¶¶ 23, 32, 33 | | |
| 328 | 2/18/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are our service and maintenance invoices for Aero Maintenance Resources for January 2020. Please contact me if you have any questions.<br><br>Thank<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000022-GFL_00000024 |
| 329 | 2/25/20 | **MT1312:** Screenshot of conversation with JY (Screenshot 2020-02-25 at 15.40.02.jpeg)<br>**KT2046:** How much<br>**MT1312:** At least 40<br><br>In the screenshot, Michael Tew asked J.Y. "CN you send tomorrow when you're back. I'll add to the invoices – won't be that hard. Get it all into feb dude. Talk before you fly?" J.Y. responded with a thumbs up icon. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>Michael Tew was photographed in the lobby of the Centennial Branch of NFCU | A, D, F, G, K, N | SW_FIL_00313429 |

264

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | making transactions. NAVY_00001770 | | |
| 330 | 2/26/20 | **Kley(KT):** | I stayed up until 5am. Pls try for closer to 100 from Jon. We need it for everything we were talking about today. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, F, G, K, N | SW_FIL_0032 9060 |
| | | **Kley(KT):** | Like is that possible | | | |

**March 2020**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 331 | 3/3/20 | **MT17473:** | Get 20? Or less | As alleged in Count 56 of the Indictment, Michael Tew and Kimberley Tew worked together to withdraw $20,000 from the Wells Fargo x2064 account held in the name of Global Fuel Logistics. [WFB_00000618]<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, G, K, N | SW_FIL_0032980 6- SW_FIL_0032900 88 |
| | | **MT1312:** | On way to wells | | | |
| | | **MT1312:** | What am I doing | | | |
| | | **Kley(KT):** | We talked about it | | | |
| | | **Kley(KT):** | I was sleeping | | | |
| | | **MT7473:** | You said less than 20 | | | |
| | | **MT1312:** | Getting 20 | | | |
| | | **MT7473:** | Going to btc atm | | | |
| | | | Should I just go to navy and try to resolve the account issue | | | |
| | | **Kley(KT):** | Where are you now | | | |
| | | **Kley(KT):** | It took 20 minutes to get the money? | | | |
| | | **MT1312:** | Yes | | | |
| 332 | 3/6/20 | **MT1312:** | No job | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them | A, D, F, G, H, K, N | SW_FIL_0032910 3- SW_FIL_0032910 4; SW_FIL_0032910 9- |
| | | **MT1312:** | Job | | | |
| | | **MT1312:** | Job | | | |
| | | **MT1312:** | Job | | | |
| | | **MT1312:** | Jon | | | |
| | | **Kley(KT):** | No when I said you needed to get Monday | | | |

265

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | [. . . .]<br><br>**Kley(KT):** You screamed fuck<br>**Kley(KT):** Fuck<br>MT1312: Because I don't know if I can<br>MT1312: And he needs invoices he's been hounding meal I'll end up fighting woth either him you or [redacted]<br>MT1312: Going to navy<br><br>[. . . .]<br><br>**Kley(KT):** How much did you withdraw from global<br>**Kley(KT):** Don't go to navy<br>**Kley(KT):** It's a waste of time<br>**Kley(KT):** And I didn't mean don't buy btc<br>**Kley(KT):** Fuck me<br>MT1312: I got the 2@l from globa<br>MT1312: At the atm now | and the Tews' role in making those requests)<br><br>On March 6, 2020, $24,700 sent via ACH to Wells Fargo Bank Account [x]2064 for services purportedly made to Aero Maintenance Resources<br><br>Kimberley Tew was photographed at an NFCU branch receiving money on March 6, 2020. NAVY_00001731.<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | SW_FIL_0032 9110 |
| 333 | 3/9/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are our service and maintenance invoices for Aero Maintenance Resources for February 2020.<br><br>Please contact me if you have questions.<br><br>Thank you | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000018-GFL_00000021 |

266

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | | | |
| 334 | 3/10/20 | **Kley(KT):** Can you go to navy and withdraw 20 to buy btc<br>**MT1312:** Ok<br>**MT7473:** The only navy that will do 20k is centennial FYI<br>**Kley(KT):** How much will aurora do<br>**MT1312:** 10k that's it<br>I can call ahead add see if they will do moew<br><br>**MT7473:** Jon said end of week for rest but he's confirming today when<br>**MT1312:** I can wire out same day from digital mint they just need to send by 230 our time.<br>**Kley(KT):** You can't do more than 5<br>**Kley(KT):** End up week so sending tomorrow<br>**Kley(KT):** Right?<br>**MT7473:** Tomorrow is wed<br>I have a feeling he'll do pry tomorrow and part Thursday<br>**MT1312:** I mean selling<br>**MT7473:** We need to put money back into the account when we have it | Bank records show a $10,000 withdrawal on March 10, 2020 from the Tews' Joint NFCU account x8486. [NAVY_00001008]<br><br>Photographs from the NFCU drive through show Michael Tew making transactions in NFCU accounts. NAVY_00001721. He was also photographed making transactions at an ATM. NAVY_00001797<br><br>*See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br>*See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when | A, D, F, G, H, I, K, N | SW_FIL_00329150-<br>SW_FIL_00329152 |

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | fraudulent payments could be made)  *See* Indictment ¶¶ 23, 32, 33 | | |
| 335 | 3/11/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:  Dear Jon:  Attached is our final service and maintenance invoice for Aero Maintenance Resources for February 2020.  Please contact me if you have questions.  Thank you  Jessica Thompson Aero Maintenance Resources A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000006-GFL_00000007 |
| 336 | 3/11/20 | **Kley(KT):** Did you talk to Jon **MT7473:** Yes he said he may send half today he doesn't know yet he almost freaked out and I calmed him down **MT1312:** I'm taking it very seriously **Kley(KT):** What do you mean he may send half. Why doesn't he know. It's 1pm there. It feels like he's playing around and clearly wants to control the situation. **Kley(KT):** Why not send all of it today **MT1312:** Yes he is trying to control and I am trying to get th RG money as much and as fast as possible **Kley(KT):** Be nice to him **MT1312:** I just asked him why not send all today of you have the money get it over with. I'm trying | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, D, F, G, H, K, N | SW_FIL_00329169-SW_FIL_00329170 |

268

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(KT):** Try to get it all tomorrow<br>**MT1312:** Trying now<br>**MT1312:** He usually will let me know around 230 his time | | | |
| 337 | 3/17/20 | **MT7473:** I'm still pressing Jon over text<br>**MT1312:** He says now he hopes for tomorrow<br>**MT7473:** We are coming back soon it's getting cold<br>**Kley(KT):** Say Jon I'm not kidding we are sending you your btc and was going to send 2 bc price is so<br>low but just need some plan | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud) | A, B, C, D, F, G, H, J, K, N | SW_FIL_0032919 4 |
| 338 | 3/18/20 | **Kley(KT):** I messaged Jon<br>**Kley(KT):** Truthfully we owe him our lives<br>**Kley(KT):** He saved us and helped is when no one would<br>**Kley(KT):** I thought you guys were friends but all you do is fight<br>**MT7473:** Did it go through the message<br>**Kley(KT):** If more btc would make this better I understand and would do it for him<br>**Kley(KT):** From my google voice.<br>**Kley(KT):** I don't know.<br>**Kley(KT):** I don't want to fight or demand or beg from him. I thought you guys were friends.<br>**MT1312:** So did I<br>**Kley(KT):** I told him I just want to drive off a cliff<br>**Kley(KT):** It's really not worth it if he's lost his mind<br>**Kley(KT):** He really did help us<br>**MT1312:** We don't have a choice so he has to send more<br>**Kley(KT):** I don't think he ever knew how bad it was<br>**Kley(KT):** Why won't he just reply<br>**MT1312:** He claims he's busy<br>**Kley(KT):** He responded?<br>**MT1312:** Truthfully he just hates us<br>**MT7473:** No that's just his MO | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br>*See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>On March 18, 2020, $17,200 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | A, B, C, D, E, F, G, H, I, K, N | SW_FIL_0032920 9-<br>SW_FIL_0032921 3 |

269

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **Kley(KT):** I told her we are working with a no nonsense accountant<br>**Kley(KT):** And I'm worried about bouncing checks<br>**MT1312:** Ok.<br>Give it 30 mins to see if he responds<br>I'm coming back in 5<br>**Kley(KT):** If he really hates us we should figure something out and<br>**Kley(KT):** Get immunity<br>**MT1312:** Yes I agree<br>**Kley(KT):** I told him I would turn myself in and negotiate immunity for you so our kids have a shot | In January, Kimberley Tew had been questioned by an IRS agent coincidentally pursuing a separate investigation out of a different district.<br><br>Michael Tew was photographed at an NFCU drive through windo. NFCU_00001800.  And in an NFCU lobby making additional transactions. NFCU_00001805 | | |
| 339 | 3/19/20 | Email from Kimberley Tew using [MCG]@gmail.com, to J.Y. business email:<br><br>I heard you are not available.<br><br>Let's just talk through email then.<br><br>I'm sick of hearing excuses from someone else. | *See* above, entry 41, for information about MCG, MM, MCG@gmail.com and the relevant paragraphs of the Indictment.<br><br>As set forth above, Kimberley Tew indicated that J.Y. had not responded to her via text message so, instead, she was reaching out to him using the [mcg]@gmail.com address. The" excuses from someone else" is a reference to the fact that | A, K, L | NAC_E_79398 |

270

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | Michael Tew had been making excuses for J.Y.'s failure to provide money from NAC under false and fraudulent pretenses. | | |
| 340 | 3/20/20 | **Kley(KT):** I need to know if we will have money on Tuesday and how much by next week<br>**MT7473:** I've been trying to find out<br>**MT1312:** Right now his best answer is I hope<br>**Kley(KT):** So I am supposed to spend the whole weekend wondering<br>**MT7473:** Jon will not answer what should I say to him to make him answer<br>**MT1312:** I'm trying I'm telling him I have to know I need to know<br>**Kley(KT):** Are you serious | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On March 20, 2020, $22,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Toll records show that J.Y. did not answer a calls from Michael Tew the prior evening. ORD_000019512; ORD_19950<br><br>ATM photographs show Michael Tew and Kimberley Tew making transactions in NFCU accounts. NAVY_00001719; NAVY_00001720. | A, G, K, N | SW_FIL_003292 26-SW_FIL_003292 40 |

271

## Government's *James* Log
### United States v. Tew, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| 341 | 3/22/20 | **Kley(KT):** | So is he sending on Tuesday for sure? | The references to "he" a reference to Jonathan Yioulos | A, D, F, G, H, G, J, K, N | SW_FIL_003263 50 |
| | | **MT7473:** | He didn't commit because now he says he can't log in from home | | | |
| | | **MT1312:** | I'm still trying to get him | | | |
| | | **MT7473:** | I mean he has to send | Toll records show that J.Y. did not answer a calls from Michael Tew the prior evening. ORD_00019950 | | |
| | | **Kley(KT):** | Right but he can go to the office? | | | |
| | | **Kley(KT):** | He was there when | | | |
| | | **MT7473:** | He'll have to so yes | | | |
| | | **MT1312:** | He was there on Friday | | | |
| | | **Kley(KT):** | So what is his problem. He will obviously have to go in for other things. | The reference to not wanting MCG to email is a reference to efforts by the Tews to use the [MCG]@gmail.com address and the threat that [M.M.] might disclose the scheme to someone else as leverage to get a payment from J.Y.. See entry 338 above. | | |
| | | **Kley(KT):** | Is their banking down | | | |
| | | **MT1312:** | He said banking is up signature is up | | | |
| | | **MT7473:** | He just has stone walked me otherwise | | | |
| | | **MT1312:** | I am keep pressing him | | | |
| | | **Kley(KT):** | Is he responding | | | |
| | | **Kley(KT):** | Can you get him to send tomorrow | | | |
| | | **MT7473:** | He stopped responding | | | |
| | | **MT1312:** | He stopped responding and told me to stop texting him | | | |
| | | **MT7473:** | I told him I need answers | | | |
| | | **Kley(KT):** | Wtf | | | |
| | | **MT7473:** | I will call him | | | |
| | | **Kley(KT):** | Say we have shit that bounced that is going to be submitted again | | | |
| | | **MT7473:** | I will tell him | | | |
| | | **Kley(KT):** | Better for tomorrow | | | |
| | | **Kley(KT):** | He's obviously going into office | | | |
| | | **MT1312:** | He's going to have to go in tomorrow | | | |
| | | **MT7473:** | I asked him | | | |
| | | **Kley(KT):** | Why is he being such a brat | | | |
| | | **MT7473:** | He hates me | | | |
| | | **Kley(KT):** | Ok | | | |
| | | **Kley(KT):** | What do you want me to say | | | |
| | | **MT7473:** | Nothing | | | |
| | | **MT1312:** | Just trying to get as much as I can as fast as I can | | | |
| | | **Kley(KT):** | But that's not happening | | | |
| | | **MT1312:** | I'm trying being nice I'm trying being mean I'm trying to threaten I'm trying to help him I'm trying to play ball I'm trying every method and he is not responding | | | |
| | | **Kley(KT):** | So it's not working. Great. | | | |

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | **MT1312:** It's not<br>**Kley(KT):** Stop<br>**Kley(KT):** I'm stressed out<br>**Kley(KT):** When you say it's not it's not<br>**MT7473:** Ok it's working<br>**MT1312:** I'm working on it<br>**MT7473:** I will call him<br>**Kley(KT):** That's a lot<br>**Kley(KT):** That's a lot<br>**Kley(KT):** You just said it's not<br>**Kley(KT):** You've given up<br>**Kley(KT):** You already said you'd call him<br>**MT7473:** Screenshot of of conversation with JY (Screenshot 2020-03-22 at 16.01.05.jpeg)<br><br>In the screenshot of a text conversation Michael Tew asks J.Y." Can you pls tell me what's up. Do you have any insight. Is money coming in tllotrw" J.Y. responds "I. Don't. Know. We have no insight."<br><br>**Kley(KT):** He's abusive<br>**Kley(KT):** Say you confirmed last week I have shit that bounced<br>**MT7473:** Conversation with JY (Screenshot 2020-03-22 at 16.02.04.jpeg)<br><br>In the screenshot of a text conversation Michael Tew asks J.Y. "Are you allowed to go into the office tomorrow? Some of my stuff Th at I wrote bounced so I'm just figuring out on my end. J.Y. responded: "WHAT COULD YOU POSSIBLY WANT. ITS FUCKING SUNDAY JESUS FUCK I CANT TELL YOU ANYTHING NEW I DON'T KNOW ANYTHING Seriously though. I'm sick of this shit. Like we'll finish it this week hopefully. That's all I can say. I literally am done.<br><br>**Kley(KT):** Tell him to respond<br>**Kley(KT):** Because we don't want [MCG] to email<br>**Kley(KT):** Or something<br>**Kley(KT):** I don't know what you've said<br>**Kley(KT):** Say you need confirm he's sending tomorrow<br>**MT7473:** I just said our checks bounced and I'm trying to make a plan | | | |

273

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | **MT1312:** Screenshot of conversation with JY (Screenshot 2020-03-22 at 16.10.21.jpeg)<br><br>In the screenshot of a text conversation Michael Tew says to J.Y. "Look stop yelling at me. I'm not yelling. You stick your neck out there for [C.A.] and The company for no money I might add you set up all of his plans and put your ass on the line for him and have no clue what is going on over there. A. I just find that hard to believe or B. You're really going out on a limb for this guy sticking your neck out there for this job with no plan. Sure plans change but again hard to believe." J.Y. responded "The majority of our receivables are craf [crap. I told you that we have zero visibility on their pay dates at the moment. Should see money this week, but we don't know when. So that's the exact thing I've said before and I truly do not feel the need to repeat . . . "<br><br>**MT7473:** Screenshot of conversation with JY (Screenshot 2020-03-22 at 16.10.34.jpeg)<br><br>This screenshot shows the rest of J.Y.'s response: ". . . myself over an dover again. I told you that I would update you when I know more and I will I always have."<br><br>**Kley(KT):** WTF this is more stressful<br>**Kley(KT):** Say you need him to send something tomorrow<br>**Kley(KT):** Not all of it but something | | | |
| 342 | 3/23/20 | **Kley(KT):** We bounced rent. Just got the notice. Jon has to send today.<br>**MT1312:** I'm trying<br>**Kley(KT):** Are you getting anywhere with Jon<br>**MT7473:** He's in office dealing with this hack I'm texting him but he not committing yet<br>**MT1312:** He's not committing to send today<br>**Kley(KT):** Fuck!!!!!!<br>**Kley(KT):** And tomorrow?<br>**MT7473:** Working on it now<br>Pushing him to ducking just send something already<br>**MT1312:** He says tomorrow but won't say how much<br>**Kley(KT):** At least a range<br>**Kley(KT):** Who are you on the phone with<br>**Kley(KT):** Hello | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when | A, D, F, G, H, K, N | SW_FIL_003292 41-<br>SW_FIL_003292 44 |

274

Government's *James* Log
*United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | **Kley(KT):** | Who are you on the phone with | fraudulent payments could be made) On March 25, 2020, $32,245 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | | |
| | | **Kley(KT):** | Why won't he send anything today | | | |
| | | **Kley(KT):** | It would be blended in with everything else that was overdrawn and didn't go out | | | |
| | | **Kley(KT):** | Screenshot of Wells Fargo information (IMG_6518.png) | | | |
| | | **MT1312:** | Should I try at the desk? Or just atm | | | |
| 343 | 3/27/20 | **Kley(KT):** | Don't withdraw from my card ending in 7782 | On March 27, 2020, $32,300 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Bank records show that the debit card ending 7782 was connected with NFCU account x0572, associated with Kimberley Tew<br><br>Bank records show a $1,000 withdrawal from an ATM on 3/27 from account 3494 controlled by Tew and photos show Michael Tew at the ATM that night. NAVY_00001334; 1725.  It appears to be snowing in the ATM photograph. | A, G, K, N | SW_FIL_003292 67-SW_FIL_003292 68 |
| | | **MT1312:** | Withdraw 1k from every card but nothing from 7782 right ? | | | |
| | | **Kley(KT):** | Right | | | |
| | | **MT7473:** | Have all the cash on way to the atm | | | |
| | | **MT1312:** | Just got to atm | | | |
| | | | It's really snowing out | | | |

275

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | *See* Indictment ¶¶ 23, 32, 33 | | |
| 344 | 3/31/20 | **MT1312:** | Jon did confirm ties for wed finally not how much yet I'll get it figured out | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)

On April 1, 2020, $73,460 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources, as alleged in Count 33 of the Indictment | A, D, F, G, H, K, N | SW_FIL_003292 81 |
| | | **MT1312:** | Jonnaays 75 but we are talking through it at 230 his time | | | |
| | | **MT1312:** | I need to get 75 today and more for Friday or even for Thursday | | | |
| | | **Kley(KT):** | He confirmed 75 for today | | | |
| | | **MT1312:** | He said "75ish" | | | |

276

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

**April 2020**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 345 | 4/1/20 | **Kley(KT):** You have $24K in 3494. I want to do $20K because I have to send Phillipe $12K in btc.<br>**Kley(KT):** A $20K wire to kraken<br>**MT7473:** Ok<br>**MT1312:** Sent 3.2 | On April 1, 2020, $73,460 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources, as alleged in Count 33 of the Indictment<br><br>Bank records show a $20,000 withdrawal from Michael Tew's x3494 account on April 1, 2020.<br><br>Michael Tew was photographed making a large withdrawal from the Buckley AFB branch of NFCU on April 1, 2020. NAVY_00001757-1758.<br><br>*See* Indictment ¶¶ 23, 32, 33 | A, F, G, K, N | SW_FIL_003292 85-<br>SW_FIL_003292 86 |
| 346 | 4/3/20 | **Kley(KT):** How much is Jon sending<br>**MT7473:** He sent 411125<br>**MT1312:** 41125 | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask | A, F, G, K, N | SW_FIL_003292 90 |

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| | | | Yioulos to send them and the Tews' role in making those requests)<br><br>On April 3, 2020, $41,225 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>ATM photographs show Michael Tew making withdrawals from NFCU accounts. NAVY_00001684. | | |
| 347 | 4/5/20 | **Kley(KT):** I need btc<br>**Kley(KT):** And when are you talking to Jon<br>**MT7473:** Coming back in 5<br>**Kley(KT):** Do you want me to just go<br>**Kley(KT):** You'll be back in 5 or heading back in 5<br>**MT1312:** You can't leave [redacted]<br>I won't talk to Jon until the morning he won't even respond today<br>**Kley(KT):** Whatever<br>**Kley(KT):** You have no plan<br>**MT7473:** The plan is to tell him that it's all gone and he needs to send more<br>**MT1312:** That's it<br>**MT7473:** And he will be asking forinoviwa tomorrow<br>**Kley(KT):** He won't do it<br>**MT1312:** Now we're fighting<br>**MT7473:** I have to threaten hi<br>**MT1312:** It'll be a battle<br>**MT7473:** For sure<br>**Kley(KT):** What should I do<br>**Kley(KT):** Beg [P.M.]e to send another 1K | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>"P.M." is a reference to a casino host at the Wynn Casino in Las Vegas | A, D, F, G, H, K, N | SW_FIL_0032930 0-SW_FIL_003293 08 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **Kley(KT):** I'm not sure he will<br>**MT1312:** How much total do we owe him as of now<br>**Kley(KT):** So much<br>**Kley(KT):** He's out of pocket $13<br>**MT1312:** Shit<br>**MT7473:** Is it worth even asking<br>**Kley(KT):** I will get him his money back but he will have to wait for all the interest<br>**MT1312:** Right | | | |
| 348 | 4/6/20 | **MT1312:** BTC ATM Deposit slip (60782419598__5E28B616-CD21-4BE8-B18C-4A8E5DDE4933.jpeg)<br>**Kley(KT):** 1c8qp8UQye1R1AVJNAJfmBprTgJHVY9HK<br>**Kley(KT):** I need you to deliver on everything<br>**MT1312:** Didn't work<br>Funds available in full tomorrow<br>**Kley(KT):** Have you heard from [L.W.] Y or J?<br>**Kley(KT):** My anxiety is through the roof<br>**MT7473:** No but I will<br>I didn't ask [L.W.] yet he seemed super reluctant this weekend<br>I will ask him<br>**Kley(KT):** Maybe ask for $500<br>**Kley(KT):** Need to know if Jon is sending today<br>**MT7473:** [L.W.] says no can't do another penny he said he is sorry<br>**Kley(KT):** Jon<br>**Kley(KT):** Is he sending today<br>**MT7473:** Haven't heard trying him again<br>**Kley(KT):** I need to know if he's sending because I'm trying to make a deal<br>**MT7473:** He hasn't responded and not yo my calls<br>**Kley(KT):** account #[x]7062<br>**MT1312:** He's not sending today<br>I can't get him to<br>**MT7473:** He is sending this week<br>**MT1312:** Screenshot of conversation with JY (Screenshot 2020-04-06 at 12.31.05.jpeg)<br><br>In the screenshot of a conversation between Michael Tew and J.Y.: | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made) | A, D, F, G, H, K, N | SW_FIL_0032 9309- SW_FIL_0032 9313 |

279

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT:**  can you at least respond pls when you can. I know you are very busy. Thank you."<br>**J.Y.:**  "Not like I have a choice."<br>**MT:**  Anything possible today?<br>**JY:**  Hahahaha you're a piece of work<br>**MT:**  Half today and half Thursday? What's your schedule like.<br>**JY:**  Today isn't possible<br>      So don't' even ask<br>**MT:**  7700?<br>**JY:**  No.<br>      You can't just ask randomly | | | |
| 349 | 4/8/20 | **MT7473:**  Jon said tomorrow for Friday I can't get him to send today<br>**MT1312:**  He sent 37k<br>**MT7473:**  I sent $37k. It might fuck us but sounds like we were fucked regardless | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On April 9, 2020, $37,323 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | A, D, F, G, K, N | SW_FIL_0032931 6-SW_FIL_003293 17 |
| 350 | 4/13/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached is are our service and maintenance invoices for Aero Maintenance Resources for March 2020.<br><br>Please contact me if you have questions. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000025-GFL_00000027 |

280

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|-------------------|------------------|--------|
| | | Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | | | | |
| 351 | 4/14/20 | **MT7473:** | Spoke with Jon he's in a good mood he said he's going up shoot for wed for Thursday | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶¶ 32, 33<br><br>On April 14, 2020, $31,355 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Photographs from an NFCU ATM show Michael Tew making withdrawals. NAVY_00001678 s | A, D, F, G, K, N | SW_FIL_003293 38 |
| | | **MT1312:** | The machine here jammed again (Photo of BTC ATM screen (IMG_1837.jpeg)) | | | |
| 352 | 4/15/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon: | | On April 16, 2020, $68,255 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel | A, K, L | GFL_00000003-<br>GFL_00000005 |

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | Attached are our initial service and maintenance invoices for Aero Maintenance Resources for April 2020.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | Logistics, as alleged in Count 35 of the Indictment<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |
| 353 | 4/27/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached is our invoices for Global Fuel Logistics, Inc., for 15 April 2020<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | On April 22, 2020, $56,530 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics<br><br>On April 28, 2020, $46,850 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>On April 30, 2020, $36,240 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics<br><br>On May 6, 2020, $85,325 sent via ACH | A, K, L | GFL_00000014-GFL_00000015 |

282

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resource<br><br>*See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | | |

283

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

**May 2020**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| 354 | 5/4/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached is our corrected invoice for Aero Maintenance Resources for 2 March 2020.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>An ATM photograph shows Michael Tew making transactions from an NFCU ATM on May 4, 2020. NAVY_00001744. | A, K, L | GFL_00000010-GFL_00000011 |
| 355 | 5/10/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached is our Final Invoice for Global Fuel Logistics, Inc. for April 2020.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000016-GFL_00000017 |
| 356 | 5/12/20 | **MT1312:** Jon saying 40k brings us to the end of the road basically. Texting with him. I told him we'll<br>send you 1 btc and tally it up and catch up later in the week. He said that brigs it to over 100 | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask | A, B, C, D, F, G, H, I, K, N | SW_FIL_003294 55-SW_FIL_003294 57 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | for the week and that should be it<br>What do you want me to o<br>**Kley(KT):** Is he saying he'll send tomorrow<br>**MT7473:** He can send today he's just saying hey I think that's it dude<br>I'm like let's catch up later In the week and tallly IP<br>**MT1312:** My plan was to entice him to send more<br>**Kley(KT):** Ask him if he can send 90 today<br>**MT7473:** Ok<br>**MT1312:** Got the 9k<br>Getting the sun<br>**MT7473:** Atm<br>**Kley(KT):** Are you withdrawing 1K from my accounts<br>**MT1312:** Yes<br>**Kley(KT):** Just get them from all the accounts. I transferred 1K to all of yours too.<br>**MT7473:** Ok<br>**MT1312:** Your dad?<br>**Kley(KT):** No<br>**MT7473:** Have all the cash<br>It's a lot of bills will take a bit of time<br>Going to btc atm now | Yioulos to send them and the Tews' role in making those payments) *See* Indictment ¶ 21 (describing how Yioulos would provide information about NAC's finances to facilitate when fraudulent payments could be made)<br><br>On May 12, 2020 $68,400 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources<br><br>Bank records show $1,000 withdrawals from accounts at NFCU controlled by Kimberley Tew. NAVY_00001091; NAVY_00001100; 00001104; 00001109; 0000113; 00001116;<br><br>ATM photographs depict Michael Tew making NFCU transactions. NAVY_00001737; NAVY00001823. He was also photographed | | |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | at an NFCU drive-through. NFCU_00001821. And in an NFCU lobby. NAVY_00001823. | | |
| 357 | 5/23/20 | **KT2046:** This is ridiculous<br>**KT2046:** We can't access our money<br>**KT2046:** What is YOUR problem<br>**KT2046:** I don't need this sulking<br>**KT2046:** I told you to get in touch with Jon you didn't take that seriously and fed me a bunch of shit<br>**KT2046:** He cashed it all out<br>**KT2046:** I looked at his address | *See* Indictment ¶ 25 (alleging that Tews gave Yioulos bitcoin as part of the fraud)<br><br>The reference to "cashing it out" is a reference to the fact that the blockchain address showed that J.Y. had cashed out his cryptocurrency. | A, G, N | SW_FIL_0031 2873-SW_FIL_0031 2874 |
| 358 | 5/28/20 | **MT1312:** Jon Answered he said he sent 85,500<br>**KT2046:** Ask him if he can send any btc because the funds aren't there but we can buy when they hit<br>**MT1312:** Ok<br>**KT2046:** 3JShyJMwBKwhzfpQUZmkDKZi41SLF32usJ<br>**KT2046:** What's going on<br>**MT1312:** He's not responding I'll ping him again | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On May 28, 2020, $85,500 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Aero Maintenance Resources | A, D, F, G, K, N | SW_FIL_0031 2899-SW_FIL_0031 2900 |

286

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

**June 2020**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| 359 | 6/3/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are the invoices for Aero Maintenance Resources and Global Fuel Logistics for the month of May 2020.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>On June 3, 2020, $83,526 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics | A, K, L | GFL_00000035-GFL_00000038 |
| 360 | 6/7/20 | **KT2046:**  Ask Jon if he was sending the wires to gf<br>**KT2046:**  You should say something to him now<br>**KT2046:**  They might call the office<br>**MT7473:**  I will tell him yes but I do t what him to freak out<br>**KT2046:**  You need to<br>**KT2046:**  It might determine if he goes into office<br>**KT2046:**  He should go in<br>**MT1312:**  Ok<br>**KT2046:**  I'm going to contact those fed agents and become an official CI.<br>**MT7473:**  I'll tell him<br>**KT2046:**  Like now<br>**KT2046:**  You need to tell him now | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>"gf" is a reference to Global Fuel. *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment.<br><br>On June 5, 2020, | A, D, F, G, H, K, N | SW_FIL_00313000 |

287

**Government's *James* Log**
**United States v. Tew, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|---|-------------------|------------------|--------|
| | | | | $42,220 sent via ACH to Navy Federal Credit Union Account [x]5336 for services purportedly made to Global Fuel Logistics | | |
| | | | | "CI" is shorthand for confidential informant. Kimberley Tew is threatening to extort J.Y. by going to the authorities. | | |
| 361 | 6/9/20 | MT7473:<br>MT1312: | Jon sent 93<br>Done here<br>How much from the bank | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) | A, B, D, F, G, H, K, N | SW_FIL_003294 94-<br>SW_FIL_003295 00 |
| | | Kley(KT):<br>MT7473:<br>Kley(KT):<br>MT1312:<br>MT7473:<br>Kley(KT):<br>MT7473:<br>MT1312:<br>Kley(KT):<br>Kley(KT):<br>Kley(KT):<br>MT1312:<br>MT7473:<br>Kley(KT):<br>MT1312:<br>MT7473:<br>Kley(KT): | What can you get<br>I may be able to get 20 agai<br>Ok<br>Have to ask when get there I guess<br>Is that ok<br>Ok<br>t the bank finishing up<br>The manager wants to speak with me can't wait to see what he has to say<br>What the fuck<br>Before you got your cash<br>Don't take shit from them<br>No as I'm finishing up<br>I'm not<br>Did they give you the cash<br>They're all being really nice<br>Kike overlay nice<br>I got the cash<br>She's doing the report<br>They probably got in trouble | Michael Tew opened an account x3094 for Global Fuel Logistics at Navy Federal Credit Union on Jun 8, 2020. He was the sole signatory. NAVY_00000857. Photographs show him meeting with the bank representative. NAVY_00001718.<br><br>On June 10, 2020, $93,135 sent via ACH | | |

288

Government's *James* Log

*United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | to Navy Federal Credit Union Account [x]3094 for services purportedly made to Global Fuel Logistics.<br><br>Photographs from the bank lobby show Michael Tew making transactions which is also reflected in bank records. NAVY_00001795. The records appear to show Michael Tew speaking with a bank employee. NAVY_00001796.<br><br>The references to staff being overly nice and to filling out a report is a reference to Currency Transaction Reports that must be filed by the bank to report transactions of $10,000 or more. | | |
| 362 | 6/10/20 | **Kley(KT):** How much money are you showing<br>**MT1312:** 55,500 plus the 93 jon sent in global fuel<br>**MT7473:** AtM went out of service and ate your card number 7 4405<br>**MT1312:** Im going up try chase<br>**MT7473:** For the rest<br>**Kley(KT):** Sweet<br>**Kley(KT):** You need to take my mom to wells and sit down with your banker<br>**Kley(KT):** We need to increase wire limit and get rsa reader if needed<br>**Kley(KT):** I set up a preferred checking does that have a higher wire limit? Also need | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) *See* Indictment ¶¶ 23, 32, 33 | A, D, F, G, K, N | SW_FIL_003295 02-SW_FIL_003295 11 |

289

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|------|------|------|------|------|
| | | | (2) debit cards and pins and can you increase daily limits | On June 10, 2020, $93,135 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly made to Global Fuel Logistics | | |
| | | **Kley(KT):** | What's the plan | | | |
| | | **Kley(KT):** | What are you doing | | | |
| | | **MT1312:** | Whatever you tell me to do | | | |
| | | **MT1312:** | Wire capabil u freed up on my account FYI | Bank records show withdrawals from a Wells Fargo atm on June 10, 2020. NAVY_00000859; NAVY_00001132-1133. | | |
| | | **MT1312:** | If we want to make a large cash withdrawal I have to do that now if you want me to get 1k out of the accounts via atm we can do that now or later | | | |
| 363 | 6/11/20 | **Kley(KT):** | Does it make sense to buy 11,500 | *See* Indictment ¶¶ 23, 32, 33 | A, F, G, K, N | SW_FIL_0032951 7-SW_FIL_0032951 9 |
| | | **Kley(KT):** | And then tomorrow AM 9,500 | | | |
| | | **Kley(KT):** | Or go to centennial branch and get 9500 now | | | |
| | | **Kley(KT):** | I don't care | Bank records show Kimberley Tew making ATM withdrawals from the Centennial Colorado branch of NFCU on June 11, 2020. NAVY_00001707; 1711. She was photographed in the lobby of an NFCU branch. NAVY_00001778; 1779. She was also photographed making transactions at an ATM. NAVY_00001780. | | |
| | | **MT1312:** | Would rather drive early in the morning if it makes no difference | | | |
| | | **Kley(KT):** | Then what | | | |
| | | **MT1312:** | Then late at night | | | |
| | | **MT1312:** | Higheay driving | | | |
| | | **Kley(KT):** | No I was saying stop at credit union | | | |
| | | **Kley(KT):** | Not not go | | | |
| | | **MT1312:** | Oh I see | | | |
| | | **Kley(KT):** | Whatever | | | |
| | | **MT1312:** | If you need the 20 k then yes | | | |
| | | | [. . . .] | | | |
| | | **MT7473:** | Awesome | | | SW_FIL_0031303 5 |
| | | | Plus the 93 in global fuel | | | |

290

## Government's *James* Log
## *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|---|
| | | | | And going through NFCU's drive through windor. NAVY_00001786. | | |
| 364 | 6/16/20 | MT1312: | Jon's putting up a fight<br>He said he's done for a while<br>Even for 3.5 btc<br>Maybe we let him stew on it and I'll bug him about it<br>He always comes back | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On June 18, 2020, $93,635.00 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly made to Global Fuel Logistics | A, B, C, F, G, H, I, K, N | SW_FIL_00313073-<br>SW_FIL_00313076;<br>SW_FIL_0031 3078 |
| | | MT1312: | Have the cash going to Colfax | | | |
| | | MT1312: | I will get tough with him | | | |
| | | | [. . . .] | | | |
| | | MT1312: | We can turn hi | | | |
| | | | [. . . .] | | | |
| | | KT2046: | Was Jon a dick | | | |
| | | KT2046: | Any chance he will send today | | | |
| | | | [. . . .] | | | |
| | | MT1312: | He said no no no I'm done I told you I'm done | | | |
| | | KT2046: | 4K on Amex | | | |
| | | MT1312: | Don't max out your AMEX | | | |
| | | KT2046: | Tell him I fucked up | | | |
| | | KT2046: | What else are we going to do | | | |
| | | MT1312: | I'm telling him | | | |
| | | | [. . . .] | | | |
| | | MT1312: | Jon says 80 tomorrow | | | |
| 365 | 6/17/20 | MT1312: | Jon sent 93635 | Message to Kimberley Tew | A, F, G, N | SW_FIL_0031 3087 |

**Government's *James* Log**
***United States v. Tew*, 20-cr-000305-DDD**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On June 18, 2020, $93,635.00 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly made to Global Fuel Logistics | | |
| 366 | 6/24/20 | **MT1312:** Deposit done<br>Jon said he will send more money<br>He didn't say today or tomorrow<br>Waiting to hear back<br>Going to gym<br>**KT2046:** Thank god!<br>**KT2046:** I love you<br>**MT1312:** He can send 55 today<br>**KT2046:** And more the next day or week?<br>**MT1312:** Working on it<br>**MT1312:** He said he can't do another 90 he's going to "try" for 70<br>**KT2046:** Can you get the rest of the cash out of the accounts and buy btc<br>**KT2046:** Did you use the $500?<br>**MT1312:** Jin sent 71k | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) "Jin" is a typo – it should be "Jon."<br><br>On June 23, 2020, $97,545 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly made to Aero Maintenance Resources<br><br>Bank records show transfers of money from the NFCU x3094 | A, D, F, G, K, N | SW_FIL_0031313-<br>SW_FIL_0031316 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|--------------------|------------------|--------|
| | | | | account to other accounts at NFCU controlled by Michael and Kimberley Tew. Michael Tew was photographed in the lobby of the Centennial branch of NFCU on June 24, 2020. NAVY_00001717 | | |
| 367 | 6/25/20 | KT2046: | Just to be safe should you go to Jon for another 30 | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests) "[C.A.]" and "[L.A.]" are references to the owners of NAC<br><br>On June 25, 2020, $71,550 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly made to Aero Maintenance Resources<br><br>Michael Tew was photographed in the lobby of the NFCU Centennial branch on June 25, 2020. NAVY_00001789. | A, D, F, G, H, K, N | SW_FIL_003131 26- SW_FIL_003131 29 |
| | | MT1312: | I'll ask | | | |
| | | | I don't know what he'll do | | | |
| | | MT1312: | Are you mad at me | | | |
| | | KT2046: | I'm scared how to do it all | | | |
| | | KT2046: | Can you figure out a Plehn | | | |
| | | KT2046: | Plan | | | |
| | | KT2046: | I'll make it happen today | | | |
| | | MT1312: | Yes | | | |
| | | | I don't know how much you owe | | | |
| | | | Don't worry about Jon | | | |
| | | | We can send him little bits as we go | | | |
| | | MT1312: | He's not answering | | | |
| | | MT1312: | He's on with [C.A.] I promise I will get him | | | |
| | | MT1312: | He won't call her he said JT will get her antenna up and she'll just call [L.A.]. He did say he wil probe her in person in the office tomorrow which will make sense and he'll see what else he can learn | | | |
| | | MT1312: | At gas station | | | |
| | | KT2046: | Whatever | | | |
| | | KT2046: | If this was you you'd be freaking out | | | |
| | | KT2046: | I thought [L.A.] and [A.S] hate each other | | | |
| | | MT1312: | [L.A.] Hates everyone until she doesn't | | | |
| | | MT1312: | She's a lunatic | | | |
| | | | It could be nothing | | | |

293

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** We haven't done anythign wrong<br>**MT1312:** Certainly not to them | | | |
| 368 | 6/26/20 | **KT2046:** Do you have a $100 bill<br>**MT7473:** Yes on me<br>I didn't but enough I miscalculated by 600 I got 4300 plus the 100 I have<br>I didn't get from one account<br>I called Jon he is not answering<br>I will text him and he will tell me what he knows<br>And I'll work on the money ASAP<br>I'm on it<br>Going to gym<br>**MT7473:** Just pulled in<br>**KT2046:** What's going on with Jon we need an update on this crap<br>**MT1312:** He's on audit falls with [redacted] all morning<br>**MT7473:** He is texting no news he hasn't talked to anyone yet<br>**MT1312:** He's working until Midday<br>**KT2046:** But you will find out the story<br>**KT2046:** Not about money<br>**MT7473:** Yes both<br>**MT1312:** 100 percent<br>**MT1312:** Spoke to Jon<br>He doesn't think it's that serious<br>None of it makes sense<br>He got nothing new out of [A.S] she left for the day even before he did<br>That meeting next week isn't happening and there's no reschedule<br>**MT7473:** If we can send anything even small to Jon it will help for Monday pls believe me | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>"[A.S]" is a reference to NAC's Director of Accounting. During the calls on July 7 and July 8, Michael and Yioulos talked about their concerns that A.S. would find out about the fraud scheme. | A, F, G, H, K, J, N | SW_FIL_003131 30-<br>SW_FIL_003131 38 |
| 369 | 6/29/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached are the invoices for Aero Maintenance Resources, Inc. and Global Fuel Logistics for the month of June 2020. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | GFL_00000091-GFL_00000094 |

294

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--|-------------------|------------------|--------|
| | | Please contact me if you have any questions.<br><br>Thank<br><br>Jessica Thompson<br>Global Fuel Logistics, Inc. | | | | |
| 370 | 6/30/20 | **MT1312:**<br>**KT2046:**<br>**KT2046:**<br><br>**KT2046:** | He sent 105<br>Great<br>At least that's not bad news<br><br>[. . . .]<br><br>Figure out if you want to be in this family. You were extremely rude to me in front of Jon and have said horrible things these past days. | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On June 30, 2020, $105,000 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly made to Aero Maintenance Resources<br><br>An ATM photograph shows Michael Tew making transactions in NFCU accounts on June 30, 2020. NAVY_00001787. | A, G, K, N | SW_FIL_0031 31 60;<br>SW_FIL_0031 31 62 |

## Government's *James* Log
## United States v. Tew, 20-cr-000305-DDD

**July 2020**

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|-----------------|--------|
| 371 | 7/1/20 | **KT2046:** Please you need to talk to Jon<br>**KT2046:** This week<br>**KT2046:** Today I guess<br><br>[. . . .[<br><br>**KT2046:** Please stick with me<br>**KT2046:** Please I know you are afraid of Jon<br>**KT2046:** Weren't they supposed to have a meeting tomorrow<br>**KT2046:** Does it still say pending<br>**MT7473:** Says pending<br>**MT7473:** The meeting f was supposed to be today. There's no meeting and nothing scheduled. [L.A.] is on her way to the hamptons wirh [C.A.] | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>On July 3, 2020, $95,000 sent via ACH to Navy Federal Credit Union Account [x]3094 for services purportedly rendered to Global Fuel Logistics, as alleged in Count 40 of the Indictment | A, F, G, K, H, I, N | SW_FIL_003131 76 |
| 372 | 7/1/20 | **KT0152:** Omg thank you omg. You have saved me. And my family. I mean that. Don't send anything until the fall<br>I'll figure out how to break news to Michael he's going to be livid also but thank you so much Jon I just don't know what to say<br><br>No ChAnce at sending anything today and tomorrow like splitting it or best just once? I don't know how it all works that's michaels area<br>Area<br>**JY1709:** I can't unfortunately. I'm not in the office right now.<br>**KT0152:** Totally get it Jon<br>Omg thank you thank you | *See* Indictment ¶ 20 (alleging coordination by the Tews to decide how much to ask Yioulos to send them and the Tews' role in making those requests)<br><br>Google voice records show that the google voice number 4693190152 was created by someone identifying themselves as "Kimberley Tew" with an associated | A, D, F, G, K | INV_00005192 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | | email address that contains the year of Kimberley Tew's birth. ORD_00015068.<br><br>As set forth above in entry 160, Kimberley Tew had previously explained that she used Google Voice to contact J.y. | | |
| 373 | 7/2/20 | Michael Tew, using the email address accounting@globalfuel.co, sent an email to J.Y.'s business email account with two attached invoices, writing:<br><br>Dear Jon:<br><br>Attached is the invoice for Global Fuel Logistics for July 1, 2020.<br><br>Please contact me if you have questions.<br><br>Thank you<br><br>Jessica Thompson<br>Aero Maintenance Resources<br>A Unit of Global Fuel Logistics, Inc. | *See* above, entry 199, for information about GFL, AMR, Jessica Thompson, and the relevant paragraphs of the Indictment. | A, K, L | NAC_E_118548 |
| 374 | 7/7/20 | On July 7, 2020 Jonathan Yioulos made a consensually monitored call from his X1709 number to Michael Tew's x1312 number. The government will seek to admit the entire call and a transcript is attached. In sum and substance:<br>    Yioulos referenced prior conversations in which he had alerted Michael that executives at NAC were asking questions about the fraudulent payments and a prior visit to NAC by the FBI. As part of his efforts to keep Yioulos calm and involved in the conspiracy, Michael explained why he had been asking for money, how he had set up Global Fuel to receive the money.<br>    Among other things, Michael explained that they kept asking Yioulos because of Kimberley's gambling problem. Michael also tried to reassure Yioulos about the scheme | At this point in time, J.Y. was no longer a conspirator because he was working with federal agents. However, Michael Tew and Kimberley Tew were still conspiring with another to get more payments from | A, B, D, E, F, G, H, I, J, K, M | INV_00008612-8768;<br><br>INV_00005038 |

297

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|--------------------|--------|
| | | by explaining how he had set up Global Fuel and the payments to it in a way to avoid audit scrutiny.<br>    Michael also tried to reassure Yioulos that MM was a real person that Kimberley had befriended.  Then he encouraged Yioulos to find out more about what the FBI was investigating so that they could "head things off at the pass." | NAC under false and fraudulent pretenses | | |
| 375 | 7/8/20 | On July 8, 2020 Jonathan Yioulos made a consensually monitored call from his X1709 number to Michael Tew's X1312 number. The government will seek to admit the entire call and a transcript is attached.  In sum and substance:<br>    Again, Yioulos referenced the fact that NAC executives were starting to look at the fraudulent payments and, again, Michael tried to reassure Yioulos about their efforts to conceal the scheme to keep him involved in the conspiracy.<br>    Michael asked Yioulos several questions about the activities of NAC's security director and its chief of accounting.<br>    He also reassured Yioulos that he knew the guy at the P.M., Inc. company, who was a friend, and that he would not an issue for them.<br>    When Yioulos mentioned that the payments added up to $5 million and asked where it went, Michael responded that he wished he had it under his mattress.  He then advised Yioulos that wherever the auditors were going up the vendor list, they should focus on that.<br>    Michael expressed concern about GFL and AMR being combined for purposes of the audit, which would make those vendors among NAC's top suppliers.<br>    At one point in the call, Michael said that he had a question from Kimberley about the FBI meeting.<br>    Michael also reassured Yioulos that H.S. was a real person who had once been a friend of Kimberley.  He also told Yioulos that M.M. was also the person behind 5530 J.D. LLC<br>    Michael also relayed that Kimberley had given them permission o blame her for the scheme.<br>    When Yioulos confronted Michael about prior threats from Kimberley, Michael acknowledged they had happened and said "I didn't advise her to do that, obviously. I hope you know that cause I thought that was stupid."<br>    Michael also tried to reassure Yiolous about his banking practices, telling Yioulos<br>        "No, it is yeah no its it its it wasn't great when it was going to my personal account, which, you know, for ah, you know um, but that being said, ah, ninety nine percent of the time, when it was going to my personal account, nobody noticed a thing.  Not a thing.  Nothing was ever noticed."<br>Later, Michael explained that bank forced him to open business accounts: | At this point in time, J.Y. was no longer a conspirator because he was working with federal agents. However, Michael Tew and Kimberley Tew were still conspiring with another to get more payments from NAC under false and fraudulent pretenses. | A, B, D, E, F, G, H, I, J, K, M | INV_00008506; INV_00005040 |

## Government's *James* Log
### *United States v. Tew*, 20–cr–000305–DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|-------|------|--------------|--------------------|------------------|--------|
| | | Nothing, there was one time when they finally said, where they said we've noticed you've been getting business payments into your personal account. I said oh yeah I know. That they have that account on file there, and its like I'm sending consent money back to them and then have it sent back to me. You know if you need me to (UI) a new business account, and she was like okay, but we're locking all your accounts until you open up a business account."<br>Michael also explained how he was able to transfer money between accounts:<br>No no I have the ability, I have the ability to transfer it as well. It can be federal. Its okay, so its not like a Wells Fargo. Its like ah, where it gives actually a lot of restrictions on transfers and stuff. They m maybe federal's not a great bank.<br><br>. . . .<br><br>The, you can transfer to any account as long as you add that account as a linked account, and easy to verify. I can add in transfer it into my mother in law's account. She has an account that my father in law's account, he has an account there. My sister in law's account there, all the kids have accounts there. I have my personal accounts there. Kim has her personal accounts there. Ah, literally in the ap you can log in, connect that account, link it and transfer as much money as you want out at any time. In or out. In and out. So its not d, and that's part (UI) they have no (UI). They allow it. Its not part of the, its just to whatever. They allow it. They let you do whatever the fuck you want to. The only only military former servicemen and women and their families are allowed to even use the bank<br>Michael tried to reassure Yioulos that if the feds were looking, then the bank could have closed the accounts:<br>Um, because my bank. I mean banks just don't like keep your account. I don't care what happens. The feds don't call a bank and say keep the bank account open and just watch it . But they don't fucking. The bank have things that will close the fucking accounts. And they close, they close banks close accounts if they don't like the way you breathe. Like if you, you know if you ah send too many cells they close your bank account . . .<br>Michael then reiterated that he and Kimberley hadn't kept all of the money and that some of it went to others to pay off Kimberley's debts:<br>Yes, out there with their, so yeah, that's the p, there was a lot of. There was um,and (UI) some of it now. I don't remember all of this, but there was a lot of | | | |

299

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | stress here, and I think what we did was stop sending money directly to them. You were send, you were sending money to us or Global Fuel or Sandhill, SHLC or whatever you were doing. Million, like a m million of that more. Two million of that allotted didn't go to us, and that was, we had this conversation.  We had this conversation actually, a year and a half ago or whatever, and you were like what the fuck, and we finally put those guys or whatever to bed, and then I mean I guess.  I I don't remember.  I honestly don't but um | | | |
| 376 | 7/8/20 | **MT1312:** Be straight with me so i can at least know what to do how to prep for my kids. <br><br> **JY1709:** I wouldn't do that. You know this. I just picked up my phone because I've been in with [C.A.] and Christer. We've been talking about the new 747's. Honestly nothing to worry about it seems. Tied up for a bit longer, but will getaway shortly to talk <br><br> [. . . .] <br><br> **MT1312** I know with all going on its weird Can you send one more today and tomorrow for Friday [C.A.] will be back in Boca I have to get your btc After our conversation today I realize much of your hard work adnd help did go to waste back then and you really need to hedge your bets also <br> **MT1312** We're afraid Shit is going to blow up <br> **MT1312** She's afraid you are workign with teh FBI <br> **MT1312** The fbi is going to come here and kick on our door soon <br> **MT1312** Now is the time to get us out of here <br> **MT1312** Don't go dark pls don't be angry <br> **MT1312** She thinks we shudl all turn ourselves in and end it <br> **MT1312** Kimberley said she's turning herself in today <br> **MT1312** She says we're ganginf up on her <br> **MT1312** I'm going to jail <br><br> [. . . .] <br><br> **MT1312:** Put me on with teh FBI <br> **JY1709:** I'm in a meeting. I'm not ignoring you! <br> **MT1312:** How much can you get out <br> **MT1312:** Ok thank you | At this point in time, J.Y. was no longer a conspirator because he was working with federal agents. However, Michael Tew and Kimberley Tew were still conspiring with another to get more payments from NAC under false and fraudulent pretenses | A, E, F, G, I, J, K, N, M | INV_000005141-5142; INV_00005182; INV_00005185-91 |

## Government's *James* Log
### *United States v. Tew*, 20-cr-000305-DDD

| Entry | Date | Statement(s) | Additional Context | 801 Rationale(s) | Source |
|---|---|---|---|---|---|
| | | **MT1312:** Understood<br>**MT1312:** How much can you get out<br>**MT1312:** Global Fuel Logistics Inc<br>Navy Federal Credit Union<br>Account [XXXXXX]3094<br>ABA [REDACTED]<br>**JY1709:** I'm in this meeting with [C.A.], Christer and Treasury (loan through them).<br>I don't have an opportunity to get out of this right now and I left my digis and mouse at home. Might be able to send tomorrow. How much are you looking for?<br>**MT1312:** Need you to leave that meeting<br>**JY1709:** I really can't. I'm supposed to leave a meeting with [C.A.] and treasury just out of the blue? They need me on this call.<br><br>[. . . .]<br><br>**MT1312:** How fast can you buy and how much<br>**MT1312:** You can open a crypto.com account it's easy<br>**MT1312:** Jon I don't know what the fuck is going on over there but this is all falling apart<br>How fast you can you buy me btc<br>The irs is here<br>What is going on<br>I am going to call [C.A.] if you don't answer<br>Just admit it.  You've been working with them all along | | | |

301

Account Owners and Signors for Relevant Bank Accounts

| Institution | Last 4 Digits of Bank Account | Account Signor, Authorized User or Owner | Account Status (Approximate dates) |
|---|---|---|---|
| ANB Bank | 3099 | M███ M███ | Opened 12/05/2018. Account closed 01/03/2019 |
| Access National Bank | 5965 | F██ M███ Signor ██████ W██ | Opened 09/18/2014. Account reviewed through 05/17/2019 |
| BBVA Compass | 0987 | 5530 J██████ D█████████ Authorized Signor C██████ R█████ | Opened 03/08/2018. Account closed 05/31/2019 |
| Guaranty Bank and Trust | 7867 | Michael A Tew | Opened 07/09/2018 Account closed 09/25/2018 |
| Navy Federal Credit Union | 8486 | Kimberley Tew and Michael Tew | Opened 01/07/2019. Account reviewed through 06/16/2020 |
| Navy Federal Credit Union | 5336 | Michael Tew | Opened 03/17/2019. Account reviewed through 07/06/2020 |
| Navy Federal Credit Union | 3094 | Global Fuel Logistics Inc. Owner Michael Tew | Opened 06/08/2020. Account reviewed through 07/08/2020 |
| Regions Bank Account | 4514 | M███ M███ | Opened 03/22/2018. Account closed 12/06/2018 |
| Wells Fargo | 6934 | Sand Hill LLC Authorized Signor Michael A Tew | Opened 05/02/2019. Account closed 03/26/2020 |
| Wells Fargo | 2064 | Global Fuel Logistics, Inc. Authorized Signor Michael A Tew | Opened 08/29/2019. Account closed 03/26/2020 |
| Signature Bank | 5545 | National Air Cargo Group, Inc. | Opened 10/31/2017. Account reviewed through 07/31/2020 |
| Signature Bank | 5529 | National Air Cargo Holdings, Inc. | Opened 11/05/2016. Account reviewed through 07/31/2020 |

Additional Bank Accounts with transfers from Relevant Bank Accounts,
ATM Withdrawals, Cash Withdrawals, and Cryptocurrency Activities

| Institution | Last 4 Digits of Bank Account | Account Signor, Authorized User or Owner | Account Status (Approximate dates) |
|---|---|---|---|
| Access National Bank | 5965 | █████ M████ Signor L██████ W████ | Opened 09/18/2014. Account reviewed through 05/17/2019 |
| ANB Bank | 3099 | M████ M████ | Opened 12/05/2018. Account closed 01/03/2019 |
| BBVA Compass | 0987 | 5530 J█████e D███████ Authorized Signor C████ R████ | Opened 03/08/2018. Account closed 05/31/2019 |
| BBVA Compass | 3317 | Kimberley Tew | Opened 01/23/2018. Account reviewed through 11/30/2019. |
| Guaranty Bank and Trust | 7867 | Michael A Tew | Opened 07/09/2018. Account closed 09/25/2018 |
| Navy Federal Credit Union | 0481 | Kimberley Tew | Opened 09/14/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 0556 | Kimberley Tew | Opened 09/17/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 0572 | Kimberley Tew | Opened 09/17/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 0648 | Michael Tew | Opened 09/14/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 3009 | Kimberley Tew | Opened 09/14/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 3094 | Global Fuel Logistics Inc. Owner Michael Tew | Opened 06/08/2020. Account reviewed through 07/08/2020 |
| Navy Federal Credit Union | 3494 | Michael Tew | Opened 01/08/2020. Account reviewed through 06/16/2020. |

| Institution | Last 4 Digits of Bank Account | Account Signor, Authorized User or Owner | Account Status (Approximate dates) |
|---|---|---|---|
| | | | |
| Navy Federal Credit Union | 4371 | Kimberley Tew | Opened 05/17/2020. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 4397 | Michael Tew | Opened 05/17/2020. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 4405 | Kimberley Tew | Opened 05/17/2020. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 4421 | Michael Tew | Opened 05/17/2020. Account closed 06/16/2020. |
| Navy Federal Credit Union | 4439 | Michael Tew | Opened 05/17/2020. Account closed 06/16/2020. |
| Navy Federal Credit Union | 4496 | Kimberley Tew | Opened 05/17/2020. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 4602 | Kimberley Tew | Opened 03/17/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 4917 | Kimberley Tew | Opened 03/17/2019. Account reviewed through 06/16/2020. |
| Navy Federal Credit Union | 5336 | Michael Tew | Opened 03/17/2019. Account reviewed through 07/06/2020 |

| Institution | Last 4 Digits of Bank Account | Account Signor, Authorized User or Owner | Account Status (Approximate dates) |
|---|---|---|---|
| ████████████████ | | | |
| Navy Federal Credit Union | 6337 | Michael Tew | Opened 01/08/2019. Account closed 06/16/2020 |
| Navy Federal Credit Union | 8486 | Kimberley Tew and Michael Tew | Opened 01/07/2019. Account reviewed through 06/16/2020 |
| Navy Federal Credit Union | 8829 | Global Fuel Logistics Inc. Owner Michael Tew | Opened 06/08/2020. Account reviewed through 06/30/2020. |
| Navy Federal Credit Union | 9148 | Kimberley Tew | Opened 01/07/2019. Account closed 06/16/2020. |
| ████████████████ | | | |
| Navy Federal Credit Union | 9457 | Kimberley Tew and Michael Tew | Opened 01/07/2019. Account reviewed through 06/16/2020. |
| ████████████████ | | | |
| Regions Bank Account | 4514 | M████ M████ | Opened 03/22/2018. Account closed 12/06/2018 |
| Wells Fargo | 2064 | Global Fuel Logistics, Inc. Authorized Signor Michael A Tew | Opened 08/29/2019. Account closed 03/26/2020 |
| Wells Fargo | 6934 | Sand Hill LLC Authorized Signor Michael A Tew | Opened 05/02/2019. Account closed 03/26/2020 |
| Signature Bank | 5545 | National Air Cargo Group, Inc. | Opened 10/31/2017. Account reviewed through 07/31/2020 |
| Signature Bank | 5529 | National Air Cargo Holdings, Inc. | Opened 11/05/2016. Account reviewed through 07/31/2020 |

## Payments of Fraudulent Invoices by NAC between August 2018 and July 2020

| Company | 2018 | | 2019 | | | | 2020 | | | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | |
| H▮▮a S▮▮ CPA | $ 50,000.00 3 Payments | | | | | | | | | $ 50,000.00 |
| 5530 ▮ D▮▮t | $ 75,000.00 5 Payments | $ 30,000.00 1 Payment | | | | | | | | $ 105,000.00 |
| M▮▮C▮▮ G | | $110,125.00 5 Payments | | | | | | | | $ 110,125.00 |
| F▮▮l M▮ | | $ 21,250.00 1 Payment | $267,962.50 11 Payments | $551,665.00 22 Payments | $ 59,675.00 4 Payments | | | | | $ 900,552.50 |
| Global Fuel Logistics | | | | | $446,000.00 14 Payments | | | $ 847,338.00 12 Payments | $95,000.00 1 Payment | $ 1,388,338.00 |
| Aero Maintenance Resources | | | | | $329,200.00 8 Payments | $810,500.00 22 Payments | $682,055.00 22 Payments | $ 648,108.00 10 Payments | | $ 2,469,863.00 |
| Grand Total | $125,000.00 | $161,375.00 | $267,962.50 | $551,665.00 | $834,875.00 | $810,500.00 | $682,055.00 | $1,495,446.00 | $95,000.00 | $ 5,023,878.50 |

Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020

| Bank Account | 2018 | | 2019 | | | | 2020 | | | Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | |
| M▮ l M▮ (ANB3099) | | $40,125.00 2 Payment | | | | | | | | $40,125.00 |
| F▮ l M▮ L▮ W▮ (ANB5965) | | $21,250.00 1 Payment | $20,250.00 1 Payment | | | | | | | $41,500.00 |
| 5530 ▮ e D▮ Authorized Signor C▮ n R▮ (BBVA0987) | | $30,000.00 1 Payment | | | | | | | | $30,000.00 |
| Michael A Tew (GB7867) | $50,000.00 3 Payments | | | | | | | | | $50,000.00 |
| 5530 ▮ e D▮ (JPMC2171) | $75,000.00 5 Payments | | | | | | | | | $75,000.00 |
| Global Fuel Logistics Inc. Owner Michael Tew (NFCU3094) | | | | | | | | $460,865.00 5 Payments | $95,000.00 1 Payment | $555,865.00 |
| Michael Tew (NFCU5336) | | | | | $231,450.00 7 Payments | $339,100.00 11 Payments | $478,600.00 17 Payments | $1,034,581.00 17 Payments | | $2,083,731.00 |
| Kimberley Tew and Michael Tew (NFCU8486) | | | $247,712.50 10 Payments | $521,665.00 21 Payments | | | | | | $769,377.50 |
| Michael Meyers (RB4514) | | $70,000.00 3 Payments | | | | | | | | $70,000.00 |
| Global Fuel Logistics, Inc. Authorized Signor Michael A Tew (WF2064) | | | | | $45,000.00 1 Payment | $246,150.00 6 Payments | $203,455.00 5 Payments | | | $494,605.00 |
| Sand Hill LLC Authorized Signor Michael A Tew (WF6934) | | | | $30,000.00 1 Payment | $558,425.00 18 Payments | $225,250.00 5 Payments | | | | $813,675.00 |
| Grand Total | $125,000.00 | $161,375.00 | $267,962.50 | $551,665.00 | $834,875.00 | $810,500.00 | $682,055.00 | $1,495,446.00 | $95,000.00 | $5,023,878.50 |









Global Fuel Logistics Inc, Michael Tew (NFCU3094)

| Date | Amount | Count |
|---|---|---|
| 07/03/20 | $ 95,000.00 | COUNT 40 |

09/04/2019 $45,000 Transfer to NFCU8486

Michael Tew (NFCU5336)

| Date | Amount | Count |
|---|---|---|
| 07/24/19 | $ 45,000.00 | COUNT 12 |
| 08/19/19 | $ 9,500.00 | COUNT 14 |
| 09/04/19 | $ 45,000.00 | COUNT 16 |
| 04/16/20 | $ 68,255.00 | COUNT 35 |
| 04/28/20 | $ 46,850.00 | COUNT 36 |
| 05/13/20 | $ 82,422.00 | COUNT 38 |
| 05/21/20 | $ 78,565.00 | COUNT 39 |

Global Fuel Logistics, Michael A Tew (WF2064)

| Date | Amount | Count |
|---|---|---|
| 08/29/19 | $ 45,000.00 | |

08/29/2019 $25,000 Withdrawal (Count 45)

Sand Hill LLC, Michael A Tew (WF6934)

| Date | Amount | Count |
|---|---|---|
| 08/07/19 | $ 31,500.00 | COUNT 13 |
| 08/22/19 | $ 28,000.00 | COUNT 15 |
| 08/27/19 | $ 45,000.00 | |

06/28/2019 $22,000 Withdrawal (Count 44)

**National Air Cargo** → 62 Invoices $2,469,863.00, Qtr 3 2019 to Qtr 2 2020 → **Aero Maintenance Resources**

Aero Maintenance Resources →

- 37 Deposits, $1,263,663.00, Qtr 3 2019 to Qtr 2 2020 → **Michael Tew (NFCU5336)**
- 11 Deposits, $449,605.00, Qtr 4 2019 & Qtr 1 2020 → **Global Fuel Logistics, Michael A Tew (WF2064)**
- 11 Deposits, $482,500.00, Qtr 3 & Qtr 4 2019 → **Sand Hill LLC, Michael A Tew (WF6934)**
- 3 Deposits, $274,095.00, Qtr 2020 → **Global Fuel Logistics Inc, Michael Tew (NFCU3094)**

Michael Tew (NFCU5336)

| Date | Amount | Count |
|---|---|---|
| 12/03/19 | $ 9,550.00 | COUNT 25 |
| 12/12/19 | $ 24,500.00 | COUNT 26 |
| 12/24/19 | $ 15,200.00 | COUNT 27 |
| 02/12/20 | $ 33,000.00 | COUNT 28 |
| 03/10/20 | $ 35,000.00 | COUNT 31 |
| 03/20/20 | $ 22,500.00 | COUNT 32 |
| 04/01/20 | $ 73,460.00 | COUNT 33 |
| 04/07/20 | $ 36,925.00 | COUNT 34 |
| 05/06/20 | $ 85,325.00 | COUNT 37 |

Global Fuel Logistics, Michael A Tew (WF2064)

| Date | Amount | Count |
|---|---|---|
| 10/17/19 | $ 75,000.00 | COUNT 20 |
| 10/25/19 | $ 43,000.00 | COUNT 21 |
| 11/26/19 | $ 43,250.00 | COUNT 24 |
| 02/20/20 | $ 95,000.00 | COUNT 29 |
| 02/27/20 | $ 40,000.00 | |
| 03/03/20 | $ 36,555.00 | COUNT 30 |

(02/20/20 – 03/03/20) →

02/20/2020 $20,000.00
Withdrawal (Count 53) 29
02/21/2020 $15,000.00
Withdrawal (Count 54) 29
02/27/2020 $20,000.00
Withdrawal (Count 55) X
03/03/2020 $20,000.00

Sand Hill LLC, Michael A Tew (WF6934)

| Date | Amount | Count |
|---|---|---|
| 09/10/19 | $ 18,000.00 | COUNT 17 |
| 09/18/19 | $ 33,500.00 | COUNT 18 |
| 09/26/19 | $ 52,750.00 | COUNT 19 |
| 11/01/19 | $ 49,750.00 | COUNT 22 |
| 11/08/19 | $ 40,500.00 | COUNT 23 |
| 09/27/19 | $ 60,000.00 | |
| 10/01/19 | $ 75,000.00 | |

09/18/19 → 09/18/2019 $15,000.00
Wire Transfer (Count 47) 18

09/26/19 → 09/26/2019 $20,000.00
Withdrawal (Count 48) 19

11/01/19 → 11/01/2019 $20,611.01
Transfer to Continental
Volkswagen (Count 52) 22

09/27/19, 10/01/19 → 09/27/2019 $20,000.00
Withdrawal (Count 49) X
10/01/2019 $20,000.00
Withdrawal (Count 50) X
10/02/2019 $12,000.00
Withdrawal (Count 51) X

hibitIN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

Defendants.

---

## GOVERNMENT'S MOTION *IN LIMINE* FOR RULING THAT CERTAIN EXHIBITS ARE AUTHENTIC AND COVERED BY BUSINESS-RECORDS EXCEPTION TO THE HEARSAY RULE

---

The Federal Rules of Evidence are designed "eliminate unjustifiable expense and delay." Fed. R. Evid. 102. *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (describing procedure created as a result of 2000 amendments to the Rules of Evidence with goal of avoiding "the expense and inconvenience of producing time-consuming foundation witnesses"). The Court can do both in this case by making two pretrial rulings that are already appurtenant to the finding it has been asked to make about the statements listed in the *James* log. First, while evaluating whether the texts and emails in the *James* proffer and log are non-hearsay under Rule 801(d)(2)(E) it can make explicit what would already be implicit in any ruling that the messages are between and among conspirators who are conspiring: it can rule that the texts and emails are authentic business records from

1

Apple and Google and eliminate the need to hear testimony from two unnecessary witnesses at the upcoming trial. Second, because the Court will already be looking at other business records that corroborate the events being discussed by the conspirators (and that are, in turn, cross-corroborated by them), it can also rule that documents kept in the course of the regularly conducted activity of large American corporations and financial institutions whose regular practice of keeping such records is well-known and uncontroversial meet the *prima facie* threshold of authenticity set forth in Federal Rule of Evidence 901 and are sufficiently reliable to fall within the business records exception to the hearsay rule set forth in Federal Rule of Evidence 803(6). *See, e.g., United States v. Arrington*, 2022 WL 4077685, at *5 (W.D.N.Y. 2002) (granting motion in limine to admit business records).

Absent such a ruling, the Court and a jury will be forced to listen to testimony from approximately 19 or more custodian-of-records witnesses in the middle of a jury trial that should be focused on underlying issues related to the charges. The government has consulted with defense counsel, who have each advised that they do not stipulate at this time to the authenticity or business-records status of the items referenced in the *James* log. The government moves *in limine* pursuant to Federal Rules of Evidence 103 and 104 for a ruling that the highlighted exhibits in attachment 1, referenced in its *James* proffer and log, ECF Nos. 341 and 341-1, are authentic under Rule 901 and admissible non-hearsay under Rules 803(6) or 801(d)(2)(E).[1]

---

[1] Documents with the Bates prefix "NAC" or "NAC_E" were produced by NAC

2

I. **The *James* Hearing is an opportunity efficiently and effectively make pre-trial rulings *in limine* that will substantially streamline the upcoming trial**

The  government's *James* proffer and log describe in exhaustive detail the types of evidence the government will offer at the upcoming trial: mostly, records created and relied upon by venerable domestic corporations whose services are used without issue by Americans every day for prosaic and routine functions like banking, calling, texting, car-buying, and web hosting. All of those records were provided to defense counsel shortly after their appointment in this case. None are particularly controversial or exotic. Most are accompanied by affidavits submitted under oath pursuant to Rules 902 and 803(6).[2] They comprise the kinds of records and information that jurors and the Court are already very familiar with: bank signature cards, bank statements, deposit slips, telephone billing records, receipts, text messages, photographs, and emails. The government requests formal rulings

---

and will be authenticated by witnesses who worked or currently work for National Air Cargo, which was the victim of the Tews' fraud. Many can also be authenticated by Jonathan Yioulos, a coconspirator who worked at NAC during the time period of the conspiracy. They can also be authenticated under Rule 901(b)(4). Where the relevant declaration refers in the exhibit list refers to "SIG" the government can also authenticate the records pursuant to 901(b)(3) because the records of ACH transactions provided by NAC are corroborated by independently certified records from Signature Bank.

[2] NFCU provided a certification for the records related to exhibits 231-232, 236, 239, 240, 303, 304, 318 – 323, 333, and 393 but the PDF file is corrupted. The government expects another certificate to be provided soon.  NFCU ATM and bank lobby photographs will be authenticated by a witness who can explain what everyone who has been to a bank or an ATM already knows: banks take pictures of the people withdrawing money. AT&T provided a declaration of its records today, which will be produced to defense counsel.  Declarations for other custodians are likely to be received in the coming days and will be offered at the upcoming hearing.

3

from the Court that the records meeting thresholds of authenticity and reliability necessary to overcome objections raised under Rules 901, 801(d)(2)(E), and 803(6).

The entire purpose behind the *James* process is to obtain a pre-trial ruling on an evidentiary issue — the application of the co-conspirator exception to the hearsay rule under Rule 801(d)(2)(E) — so as to avoid wasting time and effort resolving those issues in front of a jury. In the process of developing the record necessary to make that ruling, the government's *James* proffer and log cites and describes the types of documents that prove the conspiracy. Those documents overlap in large part with the exhibits the government will offer at trial.

This means that the Court can use the *James* process to vastly simplify the upcoming trial in an extremely efficient manner. To the extent that the defendants have a good-faith objection to the admissibility of any of these records on the basis of Rules 901, 803(6) or 801(d)(2)(E), they can raise it at the *James* hearing and cross-examine one of the agents tasked with gathering them. The Court can then use the  record developed at the *James* hearing to resolve several overlapping evidentiary issues all at once, instead of piecemeal in the weeks to come or in time-consuming and unnecessary sidebars at trial. *See United States v. Tokash*, 282 F.3d 962, 968 (7th Cir. 2002) ("Motions in limine are well-established devices that streamline trials and settle evidentiary disputes in advance, so that trials are not interrupted mid-course for the consideration of lengthy and complex evidentiary issues.")

## II. The Federal Rules of Evidence create a framework that encourages pre-trial rulings related to authenticity and the applicability of the business records exception to the hearsay rule

Questions about whether evidence is authentic under Rule 901 can be resolved outside the presence of the jury under the "preliminary questions" rubric of Rules 103, without regard to the rules of evidence or the formalities and requirements of a trial. Fed. R. Evid. 104(a) (noting that court is not bound by evidence rules, except rules on privilege); *See Lorraine v. Markel American Ins. Co.*, 241 F.R.D. 534, 539 (D. Md. 2007) (setting forth comprehensive analysis for evaluating admissibility of electronic evidence under the Federal Rules of Evidence).

Answering these questions is usually not difficult because the rules set a low bar for evaluating authenticity. *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001). The proponent of the evidence just has to show that it seems reasonably probable the item being presented is what he says it is — a so called "prima facie" showing. *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012); *United States v. Ortiz*, 966 F.2d 707, 716 (1st Cir. 1992). Any concerns beyond that threshold go not to admissibility but to the weight the jury should give to that item of evidence. *See Dorador-Martinez v. CoreCivic Inc*, 2019 WL 2232630, at *2 (S.D. Cal. May 23, 2019) (describing "textbook law" related to issues of authentication)). As one judge has explained, "[t]he Court need not find that the evidence is necessarily what the proponent claims, but only that there is sufficient evidence that the *jury* ultimately might do so." *United States v. Safavian*, 435 F. supp. 2d 36, 38 D.C. 2006) (emphasis

5

in original).

The Rules provide useful examples of ways in which evidence can be authenticated.  One of the most common codifies common sense: evidence can be authenticated based on its "appearance, contents, substance, internal patterns and other distinctive characteristics." Fed. R. Evid. 901(b)(4).  Electronic evidence, no less than documents, often contains these kinds of distinctive characteristics: names typed into the emails themselves, content likely to be known only by the sender, and "header" information noting the date, time, and destination of a message.  *Fluker*, 698 F.3d at 999 (explaining that circumstantial evidence can authenticate emails).

Sometimes, evidence is self-authenticating. Rules 902(11), (13) and (14) are archetypes of the Rules' modern efforts to accomplish the purposes of efficiency and truth-seeking in Rule 102. These rules encourage the parties to avoid unnecessary disputes over particular categories of evidence that are self-evidently "what they purport to be" and thus presumably capable of meeting the *prima facie* showing of genuineness required to meet the  requirement of authenticity in Rule 901. *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (describing procedure created as a result of 2000 amendments to the Rules of Evidence with goal of avoiding "the expense and inconvenience of producing time-consuming foundation witnesses").

These principles coalesce around the conclusion that business records are rarely the kind of evidence whose admissibility is subject to reasonable dispute. The entire basis behind the business records exception to the hearsay rule, Federal Rule

6

of Evidence 803(6), is that they are uniquely likely to be reliable. *United States v. Banks,* 514 F.3d 769, 778 (8th Cir. 2008) ("Business records are admissible despite being hearsay because of their unusual reliability, which includes 'systematic checking, by regularity and continuity which produce habits of precision, by actual experience of business in relying on them, or by a duty to make an accurate report as part of a continuing job or occupation."). Rules 902(11) and (13) build on this well-recognized legal principle and allow the court to consider affidavits from records custodians stating, under oath, that records are authentic precisely because circumstances make it highly likely that businesses will keep reliable records. *See United States v. Johnson,* 971 F.2d 562, 571 (10th Cir. 1992) (noting that the authenticity and admission of bank records, in particular, can be predicated on judicial notice of nature of businesses and stringent need to maintain reliable records).

In the modern age, legal experts have recognized that corporations in the business of brokering data and information, no less than banks brokering financial transactions, have similar incentives to maintain reliable records. In 2017 the Rules were amended to clarify that digital records and data and also be self-authenticating. In enacting FRE 902(13) and (14), the Rules Committee noted that "as with the provisions on business records in Rules 902(11) and (12), the Committee has found that the expense and inconvenience of producing a witness to authenticate an item of electronic evidence is often unnecessary." Fed. R. Evid. 902(13) Advisory Committee's Note (2017). "It is often the case that a party goes to

7

the expense of producing an authentication witness, and then the adversary either
stipulates authenticity before the witness is called or fails to challenge the
authentication testimony once it is presented." *Id.* "The amendment provides a
procedure under which the parties can determine in advance of trial whether a real
challenge to authenticity will be made, and can then plan accordingly." *Id.*

Finally, there is no confrontation clause problem with relying on declarations
from the relevant records custodians because the declarations are not testimonial.
*United States v. Brinson*, 772 F.3d 1314, 1322-1323 (10th Cir. 2014) (explaining
that declarations from records custodians prepared pursuant to Rule 902(11) do not
violation confrontation clause because they are designed merely to authenticate, not
to prove some other fact at trial).

### III.    There is no real basis for challenging the authenticity of records kept in the course of regularly conducted business activity made as part of regular practices in pursuit of that activity

This is not a case involving dusty old documents of uncertain origin, concerns
about forgery, or other disputes over whether records are what is readily apparent
on their face. It involves bank records, *see, e.g., United States v. Lewis*, 594 F.3d
1270, 1279 (10th Cir. 2010); texts, s*ee e.g., United States v. Kilpatrick*, 2012 WL
3236727, at *4-5 (E.D. Mich. Aug. 7, 21012); emails, *see, e.g., United States v.
Shults*, 730 F. App'x 421, 423-24 (9th Cir. 2018); telephone toll records, *see, e.g.,
United States v. Yeley-Davis*, 632 F.3d 673, 678-79 (10th Cir. 2011); and receipts,
*see, e.g., United States v. MacIntyre*, 997 F.2d 687, 701 (10th Cir. 1993), that are
routinely found to be admissible in courts all around the country.

8

Exhibit 1 notes the discovery "Bates stamp" corresponding to the item the government seeks to admit and, where applicable, the declaration from the relevant custodian establishing that the record is self-authenticating. For all of the reasons set forth throughout this motion, the government will ask the Court at the upcoming *James* hearing to enter an order finding that each of the highlighted exhibits is authentic under Rules 901 and 902 and that they fall within either the coconspirator or business records exceptions to the hearsay rule.

**IV.    The texts and emails the government will offer can be authenticated at the *James* hearing using the same means and methods the Court will already use to determine whether those texts and emails fall within the coconspirator exception to the hearsay rule.**

The texts and emails offered by the government do not present particularly novel evidentiary issues. In this case, Apple and Google submitted declarations certifying that the records they produced in response to the court-ordered search warrants meet the requirements of Rule 803(6). That is, Apple and Google created and maintained the texts and emails, they were kept by Apple or Google as part of their regular business activities, and they were made as part of Apple's and Google's respective business.  This tells the world what every user of an electronic communications provider or remote computing service already knows: digital providers fastidiously keep and maintain user-generated content. The declarations from Google and Apple  are thus sufficient to show that the texts and emails are authentic copies of records created and maintained by Apple and Google. *See United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019) (finding that emails obtained from Google and Yahoo! accompanied by certification were admissible under Rule

9

803(6)).

Of course, neither Apple nor Google creates the *content* of the texts or emails they maintain in their businesses. So while the fact that exact copies of emails and texts are maintained by Apple and Google is one piece of the authentication puzzle, it is not by itself sufficient for admission as a business record. *See, e.g., United States v. Gal*, 606 F. App'x 868, 874-75 (9th Cir. 2015 (affirming trial court ruling admitting emails where certification showed that Yahoo made record of email and other evidence established that defendant sent them); *Cf. United States v. Penn*, 568 F. Supp. 3d 1135, 1141-42 (D. Colo. 2012) (finding that rules 902(11) and (13) by themselves were not sufficient by themselves to authenticate emails in case where government did not also present evidence and arguments under 901(b)(4)).

The content has to be authenticated using Rule 901(b)(3) or 901(b)(4). *See, e.g., Fluker*, 698 F.3d 999 (noting that in case where emails are between defendants it is impossible to authenticate using witness with knowledge under Rule 901(b)(1) and that, instead, such electronic communications can be authenticated based on circumstantial evidence under Rule 901(b)(4)); *United States v. Tank*, 200 F.3d 627, 630-31 & n.5 (9th Cir. 2000) (concluding that there was sufficient evidence to authenticate emails under Rule 901, that any concerns about alteration or deletion were introduced by the defendant himself, and that such deletions would go to weight of the evidence, not its admissibility); *United States v. Bertram*, 259 F. Supp. 3d 638, 642-644 (E.D. Ky. 2017 ("After considering the characteristics of the numerous emails at issue in this case as well as the context and background

10

testimony provided by the authenticating witnesses, the Court has little doubt that the emails are exactly what they purport to be, and this remains true regardless of whether the authenticating witness was a sender or recipient.").

The texts and emails here can be authenticated using the means and methods provided for in Rules 901(b)(3) and 901(b)(4). *Fluker* provides a good example.  In that case email addresses indicated that an email was sent by a member of "MTE," which was a business organization used by the alleged conspirators. And the contents of those emails demonstrated that whoever sent the email had information that would only be known by a scheme "insider." 698 F.3d at 999-1000.  This was sufficient for the items to be authenticated and other rules of evidence — like the one providing an exception to the hearsay rule for co-conspirator statements, provided a basis for admission. *Id.* at 1000. *See also* ; *Safavian*, 435 F. supp. 2d  at 40 (D.C. 2006) ("The Court notes that it is possible to authenticate these e-mails through examination of the contents, distinctive characteristics, and appearance, and others by comparison to authenticated e-mails, and the jury is free to make its own examinations and conclusions.")

The rules of evidence do not apply at the upcoming *James* hearing. Fed. R. Evid. 104. The Court can consider the government's proffer, the testimony of the testifying agent, as well as all of the exhibits that will be presented, to consider whether the records the government will seek to admit are authentic under Rule 901(a) and admissible under exceptions to the hearsay rule set forth in 81(d)(2)(E) and 803(6). Just as in *Shults, Fluker*, *Bertram, Safavian* and *Kilpatrick* there is

11

overwhelming circumstantial evidence under 901(b)(4). that the texts and emails in the government's *James* proffer are authentic. The messages themselves include content that only "insiders" would know, such as the names of NAC's owners and employees, *see, e.g., James* log, ECF No. 341-1, # 20, 33, 36, 39, 73; background information related to Michael Tew's termination, *id*. # 23, 37, 108; references to specific bank account numbers, *id*. # 1, 196, 213, 216, 220, 288; references to financial information that could only reasonably be known by the Tews, *id*. # 278, 283, 295; references to sham companies used to further the scheme, *id*. 199, 232, 253, 292; references to people involved in the scheme, *id*. #59, 212, 292; texts that include business records related to the accounts being used, *id*. # 184, 267 and, in some cases, specific instructions to contact Kimberley at specific emails and phone numbers, *id*. # 160, 184, 270. As if this weren't sufficient enough, the "additional context" column provides other corroborating evidence that is independently self-authenticating and thus capable of being part of a 901(b)93) analysis. Often, messages asking about fraud payments and invoices were sent and received right around the time other documents and records how that payments were, in fact, made. *Id*. # 282. Just as frequently, the messages would reference financial transactions that are independently corroborated in bank records or literally photographed by an ATM or a bank surveillance camera. *Id*. #284, 296, 315, 329, 332. All of this evidence makes it more than apparent that the texts and messages are what they purport to be: communications between and among Michael Tew, Kimberley Tew, and Jonathan Yioulos about their efforts to fleece NAC out of

millions.

In many cases, the government took spreadsheets from Apple and used Cellebrite software to render them in a more visually appealing way. An agent submitted an affidavit explaining that Cellebrite uses an electronic process that produces an accurate result under Rule 902(13).  The use of Cellebrite does not affect the underlying authenticity of the messages.  *See, e.g.,* Order, *United States v. Judkins*, 1:21-cr-00055-WJM, ECF No. 113 (Oct. 18, 2022) (concluding that data copied from an electronic devices is self-authenticating if accompanied by certification and citing cases from First, Second and Ninth Circuits).  The government could also just manually cut and paste the relevant texts from the spreadsheet and put them into a word file.  *See, e.g., Kilpatrick*, 2012 WL 3236727, at *6 (noting that government could take texts produced by cell phone company in excel file and extract them into WordPerfect to make them more readable). Using reliable software just saves time and makes everything look nicer for the Court and the jury.

## V.    Formal notice of intent to authenticate under Rule 902(11)

To the extent this motion does not already make it obvious, The government hereby provides formal written notice of its intent to offer the business records highlighted in the attached exhibit list under Rules 902(11) and/or 902(13). In some cases, the custodian provided a declaration for part of a production, but not for later productions.  The government intends to obtain 902 certifications for all of the relevant productions and intends to use these to-be-obtained certifications.

13

## VI.     Conclusion

This is not a situation where an *in limine* ruling will require speculation

about what the evidence might be: the *James* hearing will make it very clear. Using

the time spent on the *James* hearing to resolve as many legal issues as possible is

the most efficient use of the Court's time and will ensure that the upcoming trial is

not consumed with unnecessary interruptions related to evidentiary issues. *See*

For all of the reasons set forth above, the government requests that in addition to a

ruling on whether the statements in the *James* log are admissible under Rule

801(d)(2)(E), the Court also make rulings that government exhibits are authentic

under Rule 901 and admissible under Rule 80-3(6).


> COLE FINEGAN
> United States Attorney
>
> By:     */s/ Bryan Fields*
> Bryan Fields
> Assistant United States Attorney
> U.S. Attorney's Office
> 1801 California St. Suite 1600
> Denver, CO 80202
> (303) 454-0100
> Bryan.Fields3@usdoj.gov
> Attorney for the Government


**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume
limitation set forth in Judge Domenico's Practice Standard III(A)(1).

> */s/ Bryan Fields*
> Bryan Fields

14

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023 ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 12th day of December, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Bryan Fields*</u>
Bryan Fields
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Bryan.Fields3@usdoj.gov

| | IN THE UNITED STATES DISTRICT COURT | | | |
|---|---|---|---|---|
| | FOR THE DISTRICT OF COLORADO | | | |
| | Judge Daniel D. Domenico | | | |
| Case No.  20-cr-00305-DDD | | | | |
| | | | | |
| : United States of America v. Tew et al. | | | | |
| | | | | |
| | | | | |
| | GOVERNMENT'S PRELIMINARY EXHIBIT LIST | | | |
| | | | | |
| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
| 1 | INTENTIONALLY LEFT BLANK | | | |
| 2 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 08.01.2018-08.31.2018 | SIG_00000005 | SIG_00000011 | SIG_00006978 |
| 3 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 10.01.2018-10.31.2018 | SIG_00000018 | SIG_00000023 | SIG_00006978 |
| 4 | INTENTIONALLY LEFT BLANK | | | |
| 5 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 11.01.2018-11.30.2018 | SIG_00000024 | SIG_00000029 | SIG_00006978 |
| 6 | BBVA Compass Statement re Account x0987 [5530JD], statement period 11.01.2018-11.30.2018 | BBVA_00000444 | BBVA_00000446 | BBVA_00000002 |
| 7 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 12.01.2018-12.31.2018 | SIG_00000030 | SIG_00000035 | SIG_00006978 |
| 8 | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.07.2019 | NAC_00000303 | | SIG_00006978 |
| 9 | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.19.2019 | NAC_00000304 | | SIG_00006978 |
| 10 | Signature Bank ACH Transaction re $38,000 to [PM], dated 03.28.2019 | NAC_00000309 | | SIG_00006978 |
| 11 | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | NAC_00000310 | | SIG_00006978 |
| 12 | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 07.23.2019 | NAC_00000157 | | SIG_00006978 |
| 13 | Signature Bank ACH Transaction re $31,500 to SHI LLC, dated 08.06.2019 | NAC_00000161 | | SIG_00006978 |
| 14 | Signature Bank ACH Transaction re $9,500 to Global Fuel Logistics, dated 08.19.2019 | NAC_00000165 | | SIG_00006978 |
| 15 | Signature Bank ACH Transaction re $28,000 to SHI LLC, dated 08.21.2019 | NAC_00000166 | | SIG_00006978 |
| 16 | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 09.03.2019 | NAC_00000169 | | SIG_00006978 |
| 17 | Signature Bank ACH Transaction re $18,000 to SHI LLC, dated 09.09.2019 | NAC_00000191 | | SIG_00006978 |
| 18 | Signature Bank ACH Transaction re $33,500 to SHI LLC, dated 09.17.2019 | NAC_00000195 | | SIG_00006978 |
| 19 | Signature Bank ACH Transaction re $52,750 to SHI LLC, dated 09.25.2019 | NAC_00000195 | | SIG_00006978 |
| 20 | Signature Bank ACH Transaction re $75,000 to Global Fuel Logistics, dated 10.16.2019 | NAC_00000201 | | SIG_00006978 |
| 21 | Signature Bank ACH Transaction re $43,000 to Global Fuel Logistics, dated 10.24.2019 | NAC_00000203 | | SIG_00006978 |
| 22 | Signature Bank ACH Transaction re $49,750 to SHI LLC, dated 10.31.2019 | NAC_00000205 | | SIG_00006978 |
| 23 | Signature Bank ACH Transaction re $40,500 to Global Fuel Logistics, dated 11.07.2019 | NAC_00000206 | | SIG_00006978 |
| 24 | Signature Bank ACH Transaction re $43,250 to Global Fuel Logistics, dated 11.25.2019 | NAC_00000209 | | SIG_00006978 |
| 25 | Signature Bank ACH Transaction re $9,550 to Global Fuel Logistics, dated 12.02.2019 | NAC_00000211 | | SIG_00006978 |
| 26 | Signature Bank ACH Transaction re $24,500 to Global Fuel Logistics, dated 12.11.2019 | NAC_00000214 | | SIG_00006978 |
| 27 | Signature Bank ACH Transaction re $15,200 to Global Fuel Logistics, dated 12.23.2019 | NAC_00000437 | | SIG_00006978 |
| 28 | Signature Bank ACH Transaction re $33,000 to Global Fuel Logistics, dated 02.11.2020 | NAC_00000442 | | SIG_00006978 |
| 29 | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 02.19.2020 | NAC_00000444 | | SIG_00006978 |
| 30 | Signature Bank ACH Transaction re $36,555 to Global Fuel Logistics, dated 03.02.2020 | NAC_00000447 | | SIG_00006978 |
| 31 | Signature Bank ACH Transaction re $35,000 to Global Fuel Logistics, dated 03.09.2020 | NAC_00000449 | | SIG_00006978 |
| 32 | Signature Bank ACH Transaction re $22,500 to Global Fuel Logistics, dated 03.19.2020 | NAC_00000452 | | SIG_00006978 |
| 33 | Signature Bank ACH Transaction re $73,460 to Global Fuel Logistics, dated 03.31.2020 | NAC_00000402 | | SIG_00006978 |
| 34 | Signature Bank ACH Transaction re $36,925 to Global Fuel Logistics, dated 04.06.2020 | NAC_00000456 | | SIG_00006978 |
| 35 | Signature Bank ACH Transaction re $68,255 to Global Fuel Logistics, dated 04.15.2020 | NAC_00000170 | | SIG_00006978 |
| 36 | Signature Bank ACH Transaction re $46,850 to Global Fuel Logistics, dated 04.27.2020 | NAC_00000172 | | SIG_00006978 |
| 37 | Signature Bank ACH Transaction re $85,325 to Global Fuel Logistics, dated 05.05.2020 | NAC_00000459 | | SIG_00006978 |
| 38 | Signature Bank ACH Transaction re $82,422 to Global Fuel Logistics, dated 05.12.2020 | NAC_00000174 | | SIG_00006978 |
| 39 | Signature Bank ACH Transaction re $78,565 to Global Fuel Logistics, dated 05.20.2020 | NAC_00000176 | | SIG_00006978 |
| 40 | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 07.02.2020 | NAC_00000537 | | SIG_00006978 |
| 41 | INTENTIONALLY LEFT BLANK | | | |
| 42 | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawl, dated 06.04.2019 | NAVY_00000392 | | NAVY_000000002; NAVY_00000003 |
| 43 | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawl, dated 06.11.2019 | NAVY_00000394 | | NAVY_000000002; NAVY_00000003 |
| 44 | Wells Fargo Bank Withdrawl Slip re Acct x6934 $22,000 Withdrawl, dated 08.28.2019 | WFB_00000183 | | WFB_00000144-WFB_00000146 |
| 45 | Wells Fargo Bank Withdrawl Slip re Acct x2064 $25,000 Withdrawl, dated 08.29.2019 | WFB_00000155 | | WFB_00000144-WFB_00000146 |
| 46 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | NAVY_00000517 | NAVY_00000526 | NAVY_00000002; NAVY_00000003 |
| 47 | Wells Fargo Bank Wire Transaction Report re Acct x6934 $15,000, dated 09.18.2019 | WFB_00001020 | | WFB_00001054-WFB_00001058 |
| 48 | Wells Fargo Bank Withdrawl Slip re Acct x6934 $20,000 Withdrawl, dated 089.26.2019 | WFB_00000192 | | WFB_00000144-WFB_00000146 |
| 49 | Wells Fargo Bank Withdrawl Slip re Acct x6934 $20,000 Withdrawl, dated 09.27.2019 | WFB_00000194 | | WFB_00000144-WFB_00000146 |
| 50 | Wells Fargo Bank Withdrawl Slip re Acct x6934 $20,000 Withdrawl, dated 10.01.2019 | WFB_00000195 | | WFB_00000144-WFB_00000146 |
| 51 | Wells Fargo Bank Withdrawl Slip re Acct x6934 $12,000 Withdrawl, dated 10.02.2019 | WFB_00000196 | | WFB_00000144-WFB_00000146 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 52 | Wells Fargo Bank Statement re Acct x6934 Sand Hill, dated 11.30.2019 | WFB_00000745 | WFB_00000750 | WFB_00000144-WFB_00000146 |
| 53 | Wells Fargo Bank Withdrawl Slip re Acct x2064 $20,000 Withdrawl, dated 02.20.2020 | WFB_00000164 | | WFB_00000144-WFB_00000146 |
| 54 | Wells Fargo Bank Withdrawl Slip re Acct x2064 $15,000 Withdrawl, dated 02.21.2020 | WFB_00000165 | | WFB_00000144-WFB_00000146 |
| 55 | Wells Fargo Bank Withdrawl Slip re Acct x2064 $20,000 Withdrawl, dated 02.27.2020 | WFB_00000166 | | WFB_00000144-WFB_00000146 |
| 56 | Wells Fargo Bank Withdrawl Slip re Acct x2064 $20,000 Withdrawl, dated 03.03.2020 | WFB_00000167 | | WFB_00000144-WFB_00000146 |
| 101 | 2016 Gross Income Summary for Michael Tew | | | N/A |
| 102 | 2017 Gross Income Summary for Michael Tew | | | N/A |
| 103 | 2018 Gross Income Summary for Michael Tew | | | N/A |
| 104 | 2019 Gross Income Summary for Michael Tew | | | N/A |
| 105 | Internal Revenue Service 2019 Account Transcript | | | N/A |
| 106-201 | INTENTIONALLY LEFT BLANK | | | |
| 202 | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, statement 2018.08.31 | GUAR_00000047 | GUAR_00000059 | GUAR_00000001 |
| 203 | Regions Bank Statement re Account x4514 [M.M.], statement period 10.12.2018-11.08.2018 | REG_00000177 | REG_00000181 | REG_00000001 |
| 204 | INTENTIONALLY LEFT BLANK | | | |
| 205 | Regions Bank Statement re Account x4514 [M.M.], statement period 11.09.2018-12.10.2018 | REG_00000171 | REG_00000175 | REG_00000001 |
| 206 | INTENTIONALLY LEFT BLANK | | | |
| 207 | ANB Bank Statement re Account x3099 [M.M.], dated 12.18.2018 | ANB_00000048 | ANB_00000052 | ANB_00000002 |
| 208 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2019-02.16.2019 | NAVY_00000020 | NAVY_00000029 | NAVY_00000002; NAVY_00000003 |
| 209 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2019-03.16.2019 | NAVY_00000030 | NAVY_00000039 | NAVY_00000002; NAVY_00000003 |
| 210 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | NAVY_00000040 | NAVY_00000054 | NAVY_00000002; NAVY_00000003 |
| 211 | INTENTIONALLY LEFT BLANK | | | |
| 212 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 07.17.2019-08.16.2019 | NAVY_00000508 | NAVY_00000516 | NAVY_00000002; NAVY_00000003 |
| 213 | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 08.31.2019 | WFB_00000724 | WFB_00000731 | WFB_00000144-WFB_00000146 |
| 214 - 215 | INTENTIONALLY LEFT BLANK | | | |
| 216 | INTENTIONALLY LEFT BLANK | | | |
| 217 | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 09.30.2019 | WFB_00000732 | WFB_00000738 | WFB_00000144-WFB_00000146 |
| 218 - 219 | INTENTIONALLY LEFT BLANK | | | |
| 220 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 10.31.2019 | WFB_00000592 | WFB_00000596 | WFB_00000144-WFB_00000146 |
| 221 | INTENTIONALLY LEFT BLANK | | | |
| 222 | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 11.30.2019 | WFB_00000745 | WFB_00000750 | WFB_00000144-WFB_00000146 |
| 223 | INTENTIONALLY LEFT BLANK | | | |
| 224 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | WFB_00000597 | WFB_00000602 | WFB_00000144-WFB_00000146 |
| 225 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | NAVY_00000550 | NAVY_00000561 | NAVY_00000002; NAVY_00000003 |
| 226 | INTENTIONALLY LEFT BLANK | | | |
| 227 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | NAVY_00001284 | NAVY_00001300 | |
| 228 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2020-02.16.2020 | NAVY_00001301 | NAVY_00001313 | |
| 229 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 02.29.2020 | WFB_00000612 | WFB_00000616 | WFB_00000144-WFB_00000146 |
| 230 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | WFB_00000617 | WFB_00000621 | WFB_00000144-WFB_00000146 |
| 231 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2020-03.16.2020 | NAVY_00001314 | NAVY_00001324 | |
| 232 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | NAVY_00001325 | NAVY_00001340 | |
| 233 - 235 | INTENTIONALLY LEFT BLANK | | | |
| 236 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2020-05.16.2020 | NAVY_00001341 | NAVY_00001355 | |
| 237 - 238 | INTENTIONALLY LEFT BLANK | | | |
| 239 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2020-06.16.2020 | NAVY_00001356 | NAVY_00001379 | |
| 240 | Navy Federal Credit Union Transaction Details re Access x1390, Account x3094 Global Fuel Logistics, transaction period 07.20.2020-07.08.2020 | NAVY_00002205 | | |
| 241 | INTENTIONALLY LEFT BLANK | | | |
| 242 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | NAVY_00000079 | NAVY_00000101 | NAVY_00000002; NAVY_00000003 |
| 243 - 244 | INTENTIONALLY LEFT BLANK | | | |
| 245 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 08.31.2019 | WFB_00000584 | WFB_00000587 | WFB_00000144-WFB_00000146 |
| 246 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | NAVY_00000141 | NAVY_00000163 | NAVY_00000002; NAVY_00000003 |
| 247 -249 | INTENTIONALLY LEFT BLANK | | | |
| 250 | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 10.31.2019 | WFB_00000739 | WFB_00000744 | WFB_00000144-WFB_00000146 |
| 251-300 | INTENTIONALLY LEFT BLANK | | | |
| 301 | ANB Bank Signature Card re Account x3099 [M.M.] | ANB_00000037 | | ANB_00000001 |
| 302 | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | GUAR_00000034 | | GUAR_00000001 |
| 303 | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | NAVY_00001959 | NAVY_00001968 | |
| 304 | Navy Federal Credit Union Application re Global Fuel Logistics | NAVY_00000850 | NAVY_00000857 | |
| 305 | Regions Bank Signature Cards re x0514 [M.M.] | REG_00000219 | REG_00000220 | REG_00000001 |
| 306 | Wells Fargo Bank Signature Card re Account x6934 Sand Hill, LLC | WFB_00000536 | WFB_00000539 | WFB_00000144-WFB_00000146 |
| 307 | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | WFB_00000532 | WFB_00000535 | WFB_00000144-WFB_00000146 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 308 | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | SIG_00002876 | SIG_00002878 | SIG_00006978 |
| 309 | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | SIG_00002888 | SIG_00002890 | SIG_00006978 |
| 310 | INTENTIONALLY LEFT BLANK | | | |
| 311 | BBVA Compass Signature Card re Account x0987 [5530JD] | BBVA_00000404 | BBVA_00000405 | BBVA_00000281-BBVA_00000283 |
| 312 | Access National Bank Statement re Account x5965 [PM]., statement period 12.01.2018-12.31.2018 | ACNB_00000438 | ACNB_00000443 | ACNB_00000101 |
| 313 | Simple Signature Card for Kimberley Tew | SFT_00000173 | | SFT_00000001 |
| 314 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | NAVY_00000120 | NAVY_00000140 | NAVY_00000002; NAVY_00000003 |
| 315 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | NAVY_00000164 | NAVY_00000187 | NAVY_00000002; NAVY_00000003 |
| 316 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | NAVY_00000188 | NAVY_00000223 | NAVY_00000002; NAVY_00000003 |
| 317 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | NAVY_00000224 | NAVY_00000262 | NAVY_00000002; NAVY_00000003 |
| 318 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | NAVY_00000918 | NAVY_00000958 | |
| 319 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | NAVY_00000959 | NAVY_00000999 | |
| 320 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | NAVY_00001000 | NAVY_00001038 | |
| 321 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2020-04.16.2020 | NAVY_00001039 | NAVY_00001078 | |
| 322 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | NAVY_00001079 | NAVY_00001121 | |
| 323 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | NAVY_00001122 | NAVY_00001169 | |
| 324 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.08.2019-01.16.2019 | NAVY_00000458 | NAVY_00000461 | NAVY_00000002; NAVY_00000003 |
| 325 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2019-02.16.2019 | NAVY_00000462 | NAVY_00000466 | NAVY_00000002; NAVY_00000003 |
| 326 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2019-03.16.2019 | NAVY_00000467 | NAVY_00000471 | NAVY_00000002; NAVY_00000003 |
| 327 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2019-04.16.2019 | NAVY_00000472 | NAVY_00000478 | NAVY_00000002; NAVY_00000003 |
| 328 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | NAVY_00000479 | NAVY_00000488 | NAVY_00000002; NAVY_00000003 |
| 329 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | NAVY_00000489 | NAVY_00000498 | NAVY_00000002; NAVY_00000003 |
| 330 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | NAVY_00000499 | NAVY_00000507 | NAVY_00000002; NAVY_00000003 |
| 331 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | NAVY_00000527 | NAVY_00000536 | NAVY_00000002; NAVY_00000003 |
| 332 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | NAVY_00000537 | NAVY_00000549 | NAVY_00000002; NAVY_00000003 |
| 333 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | NAVY_00001272 | NAVY_00001283 | |
| 334 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | WFB_00002347 | WFB_00002352 | WFB_00001054-WFB_00001058 |
| 335 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | WFB_00002348 | WFB_00002353 | WFB_00001054-WFB_00001058 |
| 336 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | WFB_00002354 | WFB_00002358 | WFB_00001054-WFB_00001058 |
| 337 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | WFB_00002359 | WFB_00002362 | WFB_00001054-WFB_00001058 |
| 338 | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 09.30.2019 | WFB_00002517 | WFB_00002523 | WFB_00001054-WFB_00001058 |
| 339 | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 10.31.2019 | WFB_00002524 | WFB_00002529 | WFB_00001054-WFB_00001058 |
| 340 | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 12.31.2019 | WFB_00002536 | WFB_00002540 | WFB_00001054-WFB_00001058 |
| 341 - 355 | INTENTIONALLY LEFT BLANK | | | |
| 356 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00001778 | | |
| 357 | Signature Bank ACH Transaction re $15,000 to [5530JD], dated 08.22.2018 | SIG_00000142 | SIG_00000143 | SIG_00006978 |
| 358 | Signature Bank ACH Transaction re $15,000 to [5530JD], dated 08.23.2018 | SIG_00000143 | SIG_00000144 | SIG_00006978 |
| 359 | Signature Bank ACH Transaction re $15,000 to [5530JD], dated 09.10.2018 | SIG_00000149 | SIG_00000150 | SIG_00006978 |
| 360 | Signature Bank ACH Transaction re $15,000 to [5530JD], dated 09.18.2018 | SIG_00000151 | SIG_00000152 | SIG_00006978 |
| 361 | Signature Bank ACH Transaction re $15,000 to [5530JD], dated 09.28.2018 | SIG_00000155 | SIG_00000156 | SIG_00006978 |
| 362 | Signature Bank ACH Transaction re $30,000 to [M.M.], dated 12.03.2018 | NAC_E_00059594 | | SIG_00006978 |
| 363 | Access National Bank Statement re Account x5965 [PM]., statement period 12.01.2018-12.31.2018 | ACNB_00000438 | ACNB_00000443 | ACNB_00000101 |
| 364 | ANB Bank Statement re Account x3099 [M.M.], dated 01.04.2019 | ANB_00000053 | ANB_00000055 | ANB_00000003 |
| 365 | Signature Bank ACH Transaction re $21,000 to [PM]., dated 01.23.2019 | NAC_00000565 | | SIG_00006978 |
| 366 | Signature Bank ACH Transaction re $15,312.50 to [PM]., dated 01.07.2019 | NAC_00000299 | | SIG_00006978 |
| 367 | Signature Bank ACH Transaction re $23,350 to [PM]., dated 01.10.2019 | NAC_00000300 | | SIG_00006978 |
| 368 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.07.2019-01.16.2019 | NAVY_00000013 | NAVY_00000019 | NAVY_00000002; NAVY_00000003 |
| 369 | Signature Bank ACH Transaction re $28,000 to [PM]., dated 01.18.2019 | NAC_00000301 | | SIG_00006978 |
| 370 | Signature Bank ACH Transaction re $31,500 to [PM]., dated 03.14.2019 | NAC_00000306 | | SIG_00006978 |
| 371 | Signature Bank ACH Transaction re $37,800 to [PM]., dated 03.04.2019 | NAC_00000305 | | SIG_00006978 |
| 372 | Signature Bank ACH Transaction re $20,250 to [PM]., dated 03.19.2019 | NAC_00000307 | | SIG_00006978 |
| 373 | Signature Bank ACH Transactions re: $37,500 to [PM]., dated 04.08.2019; $18,750 to [PM]., dated 04.11.2019; and $18,750 to [PM]., dated 04.15.2019 | NAC_00000311 | NAC_00000313 | SIG_00006978 |
| 374 | Signature Bank ACH Transaction re $18,750 to [PM]., dated 04.17.2019 | NAC_00000314 | | SIG_00006978 |
| 375 | Signature Bank ACH Transactions re: $18,750 to [PM]., dated 04.22.2019; $18,750 to [PM]., dated 04.24.2019; $38,640 to [PM], dated 04.29.2019; and $19,890 to [PM], dated 05.07.2019 | NAC_00000315 | NAC_00000318 | SIG_00006978 |
| 376 | Signature Bank ACH Transactions re: $49,750 to [PM], dated 05.07.2019; and $40,000 to [PM]., dated 05.10.2019 | NAC_00000319 | NAC_00000320 | SIG_00006978 |
| 377 | Signature Bank ACH Transactions re: $19,900 to [PM], dated 05.15.2019; $23,785 to [PM], dated 05.21.2019; $9,950 to [PM], dated 05.23.2019; $11,150 to [PM], dated 05.28.2019; and $10,100 to [PM]., dated 05.29.2019 | NAC_00000321 | NAC_00000325 | SIG_00006978 |
| 378 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | NAVY_00000055 | NAVY_00000078 | NAVY_00000002; NAVY_00000003 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 379 | Signature Bank ACH Transactions re: $53,500 to [PM], dated 06.03.2019; $28,000 to [PM], dated 06.10.2019; and $9,500 to [PM], dated 06.13.2019 | NAC_00000326 | NAC_00000328 | SIG_00006978 |
| 380 | Signature Bank ACH Transactions re: $50,000 to [PM]., dated 06.20.2019; $15,000 to [PM], dated 06.25.2019; and $30,000 to Sand Hill LLC, dated 06.26.2019 | NAC_00000329 | NAC_00000331 | SIG_00006978 |
| 381 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | NAVY_00000102 | NAVY_00000119 | NAVY_00000002; NAVY_00000003 |
| 382 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, statement period 06.01.2019-06.30-2019 | WFB_00000713 | WFB_00000717 | WFB_00000144-WFB_00000146 |
| 383 | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | NAC_00000158 | NAC_00000160 | SIG_00006978 |
| 384 | Signature Bank ACH Transactions re: $9,200 to Sand Hill LLC, dated 06.28.2019; $13,000 to SHI LLC, dated 07.09.2019; $27,475 to SHI LLC, dated 07.11.2019; and $10,000 to SHI LLC, dated 07.19.2019 | NAC_00000332 | NAC_00000335 | SIG_00006978 |
| 385 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, statement period 07.01.2019-07.31-2019 | WFB_00000718 | WFB_00000723 | WFB_00000144-WFB_00000146 |
| 386 | Signature Bank ACH Transaction re $12,900 to Global Fuel Logistics, dated 01.07.2020 | NAC_00000411 | | SIG_00006978 |
| 387 | Signature Bank ACH Transactions re: $15,500 to Global Fuel Logistics, dated 01.10.2020; $19,500 to Global Fuel Logistics, dated 01.17.2020; $9,800 to Global Fuel Logistics, dated 01.22.2020; $13,500 to Global Fuel Logistics, dated 01.23.2020; $36,500 to Global Fuel Logistics, dated 01.27.2020; and $7,200 to Global Fuel Logistics, dated 01.30.2020 | NAC_00000412 | NAC_00000417 | SIG_00006978 |
| 388 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, statement period 01.01.2020-01.31-2020 | WFB_00000608 | WFB_00000611 | WFB_00000144-WFB_00000146 |
| 389 | Signature Bank ACH Transaction re $24,700 to Global Fuel Logistics, dated 03.05.2020 | NAC_00000448 | | SIG_00006978 |
| 390 | Signature Bank ACH Transactions re: $97,545 to Global Fuel Logistics, dated 06.22.2020; $71,550 to Global Fuel Logistics, dated 06.24.2020; and $105,000 to Global Fuel Logistics, dated 06.29.2020 | NAC_00000461 | NAC_00000463 | SIG_00006978 |
| 391 | Signature Bank ACH Transaction re $83,526 to Global Fuel Logistics, dated 06.02.2020 | NAC_00000532 | | SIG_00006978 |
| 392 | Signature Bank ACH Transactions re: $45,220 to Global Fuel Logistics, dated 06.04.2020; $93,135 to Global Fuel Logistics, dated 06.09.2020; and $93,635 to Global Fuel Logistics, dated 06.17.2020 | NAC_00000533 | NAC_00000535 | SIG_00006978 |
| 393 | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | NAVY_00000858 | NAVY_00000865 | |
| 394 | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | NAVY_00000753 | | NAVY_00000002; NAVY_00000003 |
| 395 | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | NAVY_00001673 | | |
| 396 | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | NAVY_00001684 | | |
| 397 | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | NAVY_00001692 | | |
| 398 | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | NAVY_00001702 | | |
| 399 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | NAVY_00001707 | | |
| 400 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00001711 | | |
| 401 | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | NAVY_00001717 | | |
| 402 | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | NAVY_00001718 | | |
| 403 | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | NAVY_00001719 | | |
| 404 | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | NAVY_00001720 | | |
| 405 | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | NAVY_00001731 | | |
| 406 | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | NAVY_00001737 | | |
| 407 | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | NAVY_00001744 | | |
| 408 | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | NAVY_00001758 | | |
| 409 | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | NAVY_00001757 | | |
| 410 | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | NAVY_00001767 | | |
| 411 | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | NAVY_00001770 | | |
| 412 | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | NAVY_00001772 | | |
| 413 | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | NAVY_00001775 | | |
| 414 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00001779 | | |
| 415 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | NAVY_00001780 | | |
| 416 | INTENTIONALLY LEFT BLANK | | | |
| 417 | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | NAVY_00001787 | | |
| 418 | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | NAVY_00001789 | | |
| 419 | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | NAVY_00001795 | | |
| 420 | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | NAVY_00001796 | | |
| 421 | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | NAVY_00001797 | | |
| 422 | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | NAVY_00001805 | | |
| 423 | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | NAVY_00001800 | | |
| 424 | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | NAVY_00001823 | | |
| 425 | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | NAVY_00001821 | | |
| 426-499 | INTENTIONALLY LEFT BLANK | | | |
| 500 | Kraken Opening Documents | KRKN_00000008 | | KRKN_00000001 |
| 501 | Kraken Opening Documents | KRKN_00000020 | | KRKN_00000001 |
| 502 | Coinbase profile image records for Michael Tew | COIN_00000027; COIN_00000032 | | |
| 503 | Coinbase profile image records for Kimberley Tew | COIN_00000028 | COIN_00000029 | |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 504 | PayPal Account Record | PAY_00000092 | | |
| 505 | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | AUDI_00000001 | AUDI_00000037 | |
| 506 | McDonald Audi Wire Transfer Records re $20,611,01 Incoming Money Transfer, dated 11.01.2019 | AUDI_00000038 | AUDI_00000039 | |
| 507 | Wynn Jackpot Report | WYNN_00000174 | | WYNN_0000002 |
| 508 | Wynn Loss Summary | WYNN_00000179 | | WYNN_0000002 |
| 509 | Wynn Folio | WYNN_00000689 | | WYNN_0000002 |
| 510 | Wynn Record | WYNN_00000730 | WYNN_00000736 | WYNN_0000002 |
| 511 | Wynn Las Vegas Hotel stay record re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | WYNN_00000624 | | WYNN_0000002 |
| 512 | GoDaddy Records re Domain Name "Global Fuel.Co" | ORD_00019768; ORD_00019821 | | ORD_00010742 |
| 513 | GoDaddy Records re Domain Name "Sandhillrp.com" | ORD_00019747; ORD_00019823 | | ORD_00010742 |
| 514 | AT&T Subscriber Record - x1312 | ORD_00019224 | | |
| 515 | AT&T Subscriber Record - x7473 | ORD_00019225 | | |
| 516 | AT&T Subscriber Record x2046 | ORD_00019223 | | |
| 517 | AT&T Records re Text Messages | ORD_00019204 | | |
| 518 | Verizon Records re Jonathan Yioulos 917-685-1312 | ORD_00019224; ORD_00019331 | ORD_00019544 | ORD_00019935 |
| 519 | Spreadsheet of Verizon Call Records re 585-737-1709 | ORD_00019950 | | ORD_00019935 |
| 520 | Record re [5530JD] Email Recovery ([C.R.]@gmail.com) | ORD_00015084 | | |
| 521 | Record re [PM] email recovery ([PM]@gmail.com) | ORD_00017716 | | ORD_00017711 |
| 522 | Google Voice record re 469-319-0152 | ORD_00015068 | | |
| 523 | Google Pay Record | ORD_00019129 | | |
| 524 | IRS Form W-9 re [M.M.], dated 10.11.2018 | NAC_00000393 | NAC_00000398 | |
| 525 | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | VCORP_00000062 | VCORP_00000064 | VCORP_00000001 |
| 526 | Email re: [5530JD] Invoice #7321116 for $15,000, dated 08.22.2018 | NAC_E_00094025 | NAC_E_00094026 | |
| 527 | Email re: [PM]. Invoice #6540 for $15,312.50, dated 01.07.2019 | NAC_E_00060953 | NAC_E_00060954 | |
| 528 | Email re: [PM]. Invoice #6775 for $15,250.00, dated 02.07.2019 | NAC_E_00053144 | NAC_E_00053145 | |
| 529 | Email re: [PM]. Invoice #7004 for $11,250.00, dated 04.03.2019 | NAC_E_00102097 | NAC_E_00102098 | |
| 530 | Email re: [PM]. Invoice #6910 for $30.150.00, dated 04.03.2019 | NAC_E_00105163 | NAC_E_00105164 | |
| 531 | Invoice re: [HS CPAs] for $15,000.00 dated 08.08.2018 | NAC_00000906 | | |
| 532 | Invoice #7321116 re: [5530JD] for $15,000.00, dated 08.15.2018 | NAC_00000539 | | |
| 533 | Invoice #7321117 re: [5530JD] for $15,000.00, dated 08.31.2018 | NAC_00000540 | | |
| 534 | Invoice #7321119 re: [5530JD] for $15,000.00, dated 09.01.2018 | NAC_00000542 | | |
| 535 | Invoice #7321122 re: [5530JD] for $30,000.00, dated 11.01.2018 | NAC_00000544 | | |
| 536 | Invoice #79466 re: [MCG] for $30,000.00, dated 10.12.2018 | NAC_00000545 | | |
| 537 | Invoice #79487 re: [MCG] for $10,000.00, dated 10.30.2018 | NAC_00000546 | | |
| 538 | Invoice #79488 re: [MCG] for $30,000.00, dated 11.30.2018 | NAC_00000547 | | |
| 539 | Invoice #79489 re: [MCG] for $30,000.00, dated 11.30.2018 | NAC_00000548 | | |
| 540 | Invoice #79490 re: [MCG] for $25,000.00, dated 12.11.2018 | NAC_00000549 | | |
| 541 | Invoice #6516 re: [PM] for $21,250.00, due 12.07.2018 | NAC_00000550 | | |
| 542 | Invoice #6910 re: [PM] for $20,250.00, dated 03.18.2019 | NAC_00000554 | | |
| 543 | Invoice #6976 re: [PM] for $38,000.00, dated 03.28.2019 | NAC_00000555 | | |
| 544 | Invoice #7004 re: [PM] for $11,250.00, dated 04.03.2019 | NAC_00000556 | | |
| 545 | Invoice #7101 re: [PM] for $37,500.00, dated 04.08.2019 | NAC_00000557 | | |
| 546 | Invoice #7201 re: [PM] for $40,000.00, dated 05.13.2019 | NAC_00000558 | | |
| 547 | Invoice #7263 re: [PM] for $10,100.00, dated 05.30.2019 | NAC_00000559 | | |
| 548 | Invoice #7312 re: [PM] for $9,500.00, dated 06.14.2019 | NAC_00000560 | | |
| 549 | Invoice #6670 re: [PM] for $23,350.00, dated 01.11.2019 | NAC_00000969 | | |
| 550 | Invoice #6712 re: [PM] for $27,562.50, dated 01.18.2019 | NAC_00000970 | | |
| 551 | Invoice #6714 re: [PM] for $21,000.00, dated 01.23.2019 | NAC_00000971 | | |
| 552 | Invoice #6804 re: [PM] for $37,800.00, dated 03.04.2019 | NAC_00000972 | | |
| 553 | Invoice #6881 re: [PM] for $31,500.00, dated 03.14.2019 | NAC_00000973 | | |
| 554 | Invoice #7156 re: [PM] for $75,000.00, dated 04.29.2019 | NAC_00000974 | | |
| 555 | Invoice #7158 re: [PM] for $19,890.00, dated 04.29.2019 | NAC_00000975 | | |
| 556 | Invoice #7322 re: [PM] for $30,000.00, dated 06.27.2019 | NAC_00000976 | | |
| 557 | Signature Bank ACH Transaction re $20,250.00 to [PM]., dated 03.18.2019 | NAC_00000308 | | SIG_00006978 |
| 558-599 | INTENTIONALLY LEFT BLANK | | | |
| 600 | James Log | | | |
| 601 | Communication in Furtherance of Conspiracy Described in *James* Log Entry #1 | | | SW_FIL_00008530- SW_FIL_000008531 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 602 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 2 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 603 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 3 | NAC_E_00126374 | | |
| 604 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 4 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 605 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 5 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 606 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 6 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 607 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 7 | NAC_E_00166092 | NAC_E_00166094 | |
| 608 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 8 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 609 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 9 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 610 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 10 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 611 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 11 | NAC_E_00058715 | NAC_E_00058716 | |
| 612 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 12 | | | SW_FIL_00000094 - SW_FIL_00000099 |
| 613 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 13 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 614 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 14 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 615 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 15 | | | SW_FIL_00000094 - SW_FIL_00000099 |
| 616 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 16 | NAC_E_00109823 | | |
| 617 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 17 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 618 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 18 | NAC_E_00055741 | NAC_E_00055743 | |
| 619 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 19 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 620 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 20 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 621 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 21 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 622 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 22 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 623 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 23 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 624 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 24 | NAC_E_00061838 | | |
| 625 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 25 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 626 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 26 | NAC_E_00071125 | NAC_E_00071126 | |
| 627 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 27 | NAC_E_00071128 | NAC_E_00071129 | |
| 628 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 28 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 629 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 29 | | | SW_FIL_00000094 - SW_FIL_00000099 |
| 630 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 30 | NAC_E_00148117 | NAC_E_00148121 | |
| 631 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 31 | NAC_E_00145994 | NAC_E_00145997 | |
| 632 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 32 | NAC_E_00071892 | NAC_E_00071893 | |
| 633 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 33 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 634 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 34 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 635 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 35 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 636 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 36 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 637 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 37 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 638 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 38 | | | SW_FIL_00000094 - SW_FIL_00000099 |
| 639 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 39 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 640 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 40 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 641 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 41 | NAC_E_00054599 | | |
| 642 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 42 | | | SW_FIL_00000094 - SW_FIL_00000099 |
| 643 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 43 | NAC_E_00060696 | NAC_E_00060698 | |
| 644 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 44 | NAC_E_00071134 | NAC_E_00071135 | |
| 645 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 45 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 646 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 46 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 647 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 47 | | | SW_FIL_00011401 - SW_FIL_00011407 |
| 648 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 48 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 649 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 49 | | | SW_FIL_00011401 - SW_FIL_00011407 |
| 650 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 50 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 651 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 51 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 652 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 52 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 653 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 53 | NAC_E_00054599 | NAC_E_00054601 | |
| 654 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 54 | | | VCORP_0000001 |
| 655 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 55 | | | VCORP_0000001 |
| 656 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 56 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 657 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 57 | NAC_E_00067968 | NAC_E_00067970 | |
| 658 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 58 | | | SW_FIL_00000094-SW_FIL_0000099 |
| 659 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 59 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 660 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 60 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 661 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 61 | | | SW_FIL_00008530- SW_FIL_000008531 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 662 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 62 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 663 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 63 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 664 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 64 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 665 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 65 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 666 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 66 | | | SW_FIL_00000094-SW_FIL_00000099 |
| 667 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 67 | | | SW_FIL_00000094-SW_FIL_00000099 |
| 668 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 68 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 669 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 69 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 670 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 70 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 671 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 71 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 672 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 72 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 673 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 73 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 674 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 74 | | | SW_FIL_00000094-SW_FIL_00000099 |
| 675 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 75 | | | SW_FIL_00000094-SW_FIL_00000099 |
| 676 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 76 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 677 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 77 | NAC_E_00059950 | NAC_E_00059951 | |
| 678 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 78 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 679 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 79 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 680 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 80 | | | SW_FIL_00011402 - SW_FIL_00011407 |
| 681 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 81 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 682 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 82 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 683 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 83 | NAC_E_00059600 | NAC_E_00059602 | |
| 684 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 84 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 685 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 85 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 686 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 86 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 687 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 87 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 688 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 88 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 689 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 89 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 690 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 90 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 691 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 91 | | | |
| 692 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 92 | | | SW_FIL_00011402 - SW_FIL_00011407 |
| 693 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 93 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 694 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 94 | | | SW_FIL_00011402 - SW_FIL_00011407 |
| 695 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 95 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 696 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 96 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 697 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 97 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 698 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 98 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 699 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 99 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 700 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 100 | NAC_E_00060445 | NAC_E_00060446 | |
| 701 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 101 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 702 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 102 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 703 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 103 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 704 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 104 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 705 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 105 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 706 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 106 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 707 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 107 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 708 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 108 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 709 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 109 | NAC_E_00052312 | NAC_E_00052313 | |
| 710 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 110 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 711 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 111 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 712 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 112 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 713 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 113 | NAC_E_00077284 | NAC_E_00077285 | |
| 714 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 114 | NAC_E_00054104 | NAC_E_00054105 | |
| 715 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 115 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 716 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 116 | NAC_E_00053144 | NAC_E_00053145 | |
| 717 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 117 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 718 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 118 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 719 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 119 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 720 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 120 | NAC_E_00063470 | NAC_E_00063471 | |
| 721 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 121 | | | SW_FIL_00008530- SW_FIL_000008531 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 722 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 122 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 723 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 123 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 724 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 124 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 725 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 125 | NAC_E_00054190 | NAC_E_00054191 | |
| 726 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 126 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 727 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 127 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 728 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 128 | NAC_E_00062777 | NAC_E_00062778 | |
| 729 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 129 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 730 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 130 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 731 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 131 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 732 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 132 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 733 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 133 | NAC_E_00064898 | NAC_E_00064899 | |
| 734 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 134 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 735 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 135 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 736 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 136 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 737 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 137 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 738 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 138 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 739 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 139 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 740 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 140 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 741 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 141 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 742 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 142 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 743 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 143 | NAC_E_00065792 | NAC_E_00065793 | |
| 744 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 144 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 745 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 145 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 746 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 146 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 747 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 147 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 748 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 148 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 749 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 149 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 750 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 150 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 751 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 151 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 752 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 152 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 753 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 153 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 754 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 154 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 755 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 155 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 756 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 156 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 757 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 157 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 758 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 158 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 759 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 159 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 760 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 160 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 761 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 161 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 762 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 162 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 763 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 163 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 764 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 164 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 765 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 165 | NAC_E_00064830 | NAC_E_00064832 | |
| 766 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 166 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 767 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 167 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 768 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 168 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 769 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 169 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 770 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 170 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 771 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 171 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 772 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 172 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 773 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 173 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 774 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 174 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 775 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 175 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 776 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 176 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 777 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 177 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 778 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 178 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 779 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 179 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 780 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 180 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 781 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 181 | | | SW_FIL_00008530- SW_FIL_000008531 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 782 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 182 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 783 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 183 | NAC_E_00066239 | NAC_E_00066246 | |
| 784 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 184 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 785 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 185 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 786 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 186 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 787 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 187 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 788 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 188 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 789 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 189 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 790 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 190 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 791 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 191 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 792 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 192 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 793 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 193 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 794 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 194 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 795 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 195 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 796 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 196 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 797 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 197 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 798 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 198 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 799 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 199 | | | VCORP_00000001 |
| 800 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 200 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 801 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 201 | | | SW_FIL_00011557 - SW_FIL_00011561 |
| 802 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 202 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 803 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 203 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 804 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 204 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 805 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 205 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 806 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 206 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 807 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 207 | | | VCORP_00000001 |
| 808 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 208 | | | VCORP_00000001 |
| 809 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 209 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 810 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 210 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 811 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 211 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 812 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 212 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 813 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 213 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 814 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 214 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 815 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 215 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 816 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 216 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 817 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 217 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 818 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 218 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 819 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 219 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 820 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 220 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 821 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 221 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 822 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 222 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 823 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 223 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 824 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 224 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 825 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 225 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 826 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 226 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 827 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 227 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 828 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 228 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 829 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 229 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 830 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 230 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 831 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 231 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 832 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 232 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 833 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 233 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 834 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 234 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 835 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 235 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 836 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 236 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 837 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 237 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 838 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 238 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 839 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 239 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 840 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 240 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 841 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 241 | NAC_E_00145793 | NAC_E_00145797 | |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 842 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 242 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 843 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 243 | NAC_E_00070403 | | |
| 844 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 244 | NAC_E_00133833 | NAC_E_00133834 | |
| 845 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 245 | NAC_E_00145920 | NAC_E_00145923 | |
| 846 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 246 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 847 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 247 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 848 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 248 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 849 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 249 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 850 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 250 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 851 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 251 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 852 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 252 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 853 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 253 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 854 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 254 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 855 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 255 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 856 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 256 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 857 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 257 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 858 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 258 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 859 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 259 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 860 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 260 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 861 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 261 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 862 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 262 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 863 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 263 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 864 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 264 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 865 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 265 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 866 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 266 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 867 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 267 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 868 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 268 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 869 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 269 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 870 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 270 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 871 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 271 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 872 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 272 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 873 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 273 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 874 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 274 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 875 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 275 | NAC_E_00147699 | NAC_E_00147702 | |
| 876 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 276 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 877 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 277 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 878 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 278 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 879 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 279 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 880 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 280 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 881 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 281 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 882 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 282 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 883 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 283 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 884 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 284 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 885 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 285 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 886 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 286 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 887 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 287 | NAC_E_00151966 | NAC_E_00151969 | |
| 888 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 288 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 889 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 289 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 890 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 290 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 891 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 291 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 892 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 292 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 893 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 293 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 894 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 294 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 895 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 295 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 896 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 296 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 897 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 297 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 898 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 298 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 899 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 299 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 900 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 300 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 901 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 301 | | | SW_FIL_00008530- SW_FIL_000008531 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 902 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 302 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 903 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 303 | NAC_E_00155951 | NAC_E_00155954 | |
| 904 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 304 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 905 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 305 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 906 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 306 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 907 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 307 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 908 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 308 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 909 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 309 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 910 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 310 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 911 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 311 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 912 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 312 | NAC_E_00078873 | | |
| 913 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 313 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 914 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 314 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 915 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 315 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 916 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 316 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 917 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 317 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 918 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 318 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 919 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 319 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 920 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 320 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 921 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 321 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 922 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 322 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 923 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 323 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 924 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 324 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 925 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 325 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 926 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 326 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 927 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 327 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 928 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 328 | NAC_E_00126180 | NAC_E_00126182 | |
| 929 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 329 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 930 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 330 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 931 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 331 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 932 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 332 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 933 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 333 | NAC_E_00072302 | NAC_E_00072305 | |
| 934 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 334 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 935 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 335 | NAC_E_00153750 | NAC_E_00153751 | |
| 936 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 336 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 937 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 337 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 938 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 338 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 939 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 339 | | | SW_FIL_00011402 - SW_FIL_00011407 |
| 940 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 340 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 941 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 341 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 942 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 342 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 943 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 343 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 944 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 344 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 945 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 345 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 946 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 346 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 947 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 347 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 948 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 348 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 949 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 349 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 950 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 350 | NAC_E_00103400 | NAC_E_00103402 | |
| 951 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 351 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 952 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 352 | NAC_E_00094959 | NAC_E_00094961 | |
| 953 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 353 | NAC_E_00113462 | NAC_E_00113463 | |
| 954 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 354 | NAC_E_00092774 | NAC_E_00092775 | |
| 955 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 355 | NAC_E_00105912 | NAC_E_00105913 | |
| 956 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 356 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 957 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 357 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 958 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 358 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 959 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 359 | NAC_E_00107684 | NAC_E_00107687 | |
| 960 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 360 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 961 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 361 | | | SW_FIL_00008530- SW_FIL_000008531 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 962 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 362 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 963 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 363 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 964 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 364 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 965 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 365 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 966 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 366 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 967 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 367 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 968 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 368 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 969 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 369 | NAC_E_00118421 | NAC_E_00118424 | |
| 970 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 370 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 971 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 371 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 972 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 372 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 973 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 373 | | | SW_FIL_00008530- SW_FIL_000008531 |
| 974 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 374 | INV_00005038; INV_00008612 (transcript) | INV_00008768 (transcript) | N/A |
| 975 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 375 | INV_00005040; INV_00008506 (transcript) | INV_00008539 (transcript) | N/A |
| 976 | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 376 | INV_00005141-5142; INV_00005182; INV_00005185-91 | | N/A |
| 977 | Email re Final [5530JD] Invoice Payment, dated 11.28.2018 | NAC_E_00059950 | NAC_E_00059951 | |
| 978 | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | NAC_E_00060469 | NAC_E_00060470 | |
| 979 | Email re ACH Payment Questions, dated 04.17.2019 | NAC_E_00100476 | | |
| 980 | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | SW_FIL_00003054 | | SW_FIL_00011402 - SW_FIL_00011407 |
| 981 | Email re Lilky Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00006094 | | SW_FIL_00011402 - SW_FIL_00011407 |
| 982 | Email re Lilky Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | SW_FIL_00006901 | | SW_FIL_00011402 - SW_FIL_00011407 |
| 983 | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00008364 | | SW_FIL_00011402 - SW_FIL_00011407 |
| 984 | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | SW_FIL_00009825 | | SW_FIL_00011402 - SW_FIL_00011407 |
| 985 | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | NAC_E_00058418 | | |
| 986 | Invoice #001 re: Kimberley Tew for $10,000.00, dated 02.08.2018 | NAC_00000731 | | |
| 987-1000 | INTENTIONALLY LEFT BLANK | | | |
| 1001 | | | | |
| 1002 | | | | |
| 1003 | | | | |
| 1004 | | | | |
| 1005 | | | | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW,

      Defendant.

---

## RESPONSE AND OBJECTIONS TO THE GOVERNMENT'S
## PROFFER AND ATTACHED JAMES LOG

---

Pursuant to F.R.E. 801(d)(2)(E), Defendant Michael Aaron Tew ("Mr. Tew") objects to the provisional admissibility and trial admissibility of the statements described in the government's *James* Proffer (ECF No. 341) and Exhibit 1: Government *James* Log (ECF No. 341-1). Mr. Tew also objects that various proffered statements, if admitted without testimony of the declarant, may result in the inability of Mr. Tew to exercise his rights to confrontation, effective assistance of counsel, and due process as guaranteed by the Fifth and Sixth Amendments to the United States Constitution.

### Legal Standard

To admit co-conspirator statements against a defendant, the government must prove by a preponderance of the evidence that three criteria have been met. There must be "substantial evidence, independent of statements at issue, that a conspiracy existed, that the co-conspirator declarant and the defendant were members of the conspiracy, and that the statement was made during the course and in furtherance of the conspiracy. *United States v. Bucaro*, 801 F 2d. 1230,

1232 (10th Cir. 1986). "Substantial, independent evidence has been described as more than a
scintilla; it is evidence that a reasonable mind would accept as adequate to support a conclusion."
*Id*. quoting *United States v. Petersen*, 611 F.2d 1313, 1330 n.1 (internal quotation omitted).

To establish that Mr. Tew was part of a conspiracy – and here, there are two alleged, one
relating to wire fraud and the other to money laundering – "the government must show [1] that
two or more persons agreed to violate the law, [2] that the defendant knew at least the essential
objectives of the conspiracy, … [3] that the defendant knowingly and voluntarily became part of
[the conspiracy], and [4] that the alleged co-conspirators were interdependent. *United States v.
Evans*, 970 F.2nd 663, 669 (10th Cir. 1992), citing *United States v. Fox*, 902 F.2d 1508, 1514
(10th Cir. 1990) (internal quotation omitted), *cert. denied*, 498 U.S. 874. "It is necessary to show
that the defendant shared a common purpose or design with his alleged coconspirators." *Id*.
quoting *United States v. Horn*, 946 F.2nd 738, 740 (10th Cir. 1991) (internal quotation omitted).
For Mr. Tew to have been involved in a conspiracy the government must show that he had both
knowledge that the conspiracy existed and voluntarily participated in that conspiracy. *Id*. The
conduct of the alleged co-conspirators must also be interdependent in some way, that is "each
alleged co-conspirator…depend[s] on the operation of each link in the chain to achieve the
common goal." *Id*. quoting *United States v. Fox*, 902 F.2d 1508, 1514 (10th Cir. 1990). Mr.
Tew's actions must have "facilitated the endeavors of the other alleged co-conspirators or
facilitated the venture as a whole." *Id*. at 670 quoting *Horn*, 946 F.2nd at 740-41 (internal
quotations omitted).

### Summary of Objections

The government's proffer is extensive and taken as a whole could be considered to
present "substantial, independent evidence" sufficient to establish by a preponderance of the

evidence that multiple conspiracies existed (wire fraud and money laundering), and that Michael

Tew, Jonathan Yioulos, and Kimberley Tew were a part of those conspiracies. Mr. Tew objects,

however, that the government's proffer fails to provide the Court with substantial, independent

evidence which would establish by a preponderance of the evidence that (i) that Mr. Tew shared

a common purpose or design with alleged co-conspirators; (ii) that there was interdependency

between the co-conspirators; or (iii) that certain statements were made during the course of and

in furtherance of the charged conspiracies. As such, the government has failed to meet the

foundational requirements for the admission of the proffered statements and the Court may not

declare those statements to be non-hearsay pursuant to F.R.E. 801(d)(2)(E) and provisionally

admitted. Additionally, specific objections are made herein to the provisional admissibility and

trial admissibility of the statements detailed herein. All such objections are also made pursuant to

F.R.E. 801(d)(2)(E). Furthermore, Mr. Tew objects to the admittance of any communications

with his spouse, Kimberley Tew, that have not been shown to be in furtherance of a conspiracy

pursuant to spousal privilege. *See, e.g., Trammel v. United States*, 445 U.S. 40 (1980).

### Specific Objections

Mr. Tew's specific objections reference the 302-page *James* log provided by the

government by "Entry" number, that is, the first column on the log. The log includes various

kinds of written and oral statements captured via text message (and the iMessage equivalent), e-

mail, and/or audio recording. Given the exceptional prejudice of consensually recorded

conversations with a then non-co-conspirator, Mr. Tew's specific objections start in inverse order

with the most recent statement (entry 376).

**Entries 374, 375, and 376: communications with a non-co-conspirator.**

Mr. Tew objects to the admissibility of any statement made by Jonathan Yioulos

following his withdrawal from any alleged conspiracy with Mr. Tew that occurred upon Mr.

Yioulos' consensual agreement to assist federal agents by making recorded telephone calls with

and sending text messages to Mr. Tew at the direction of federal agents. Because he was no

longer a co-conspirator and was offering statements for the truth of the matter asserted, Mr.

Yioulos' statements are hearsay, and do not fit within F.R.E. 801(d)(2)(E). Indeed, the

government cannot show that Mr. Yioulos' statements were made during or in furtherance of the

conspiracy.

Furthermore, Mr. Tew objects to the admittance of any statement made within Entry 374

or 375 alleged to have been made by co-defendant Kimberley Tew. Specially, Mr. Tew objects

to any statements by Mrs. Tew related to turning herself in and/or taking the blame.

**Entries 370: Kimberley Tew's statement was not in furtherance of a conspiracy.**

In entry 370, Kimberley Tew is alleged to have said to Mr. Tew via message, "Figure out

if you want to be in this family. You were extremely rude to me in front of Jon and have said

horrible things these past days." The government has not shown that these statements were in

furtherance of the conspiracy. Furthermore, the statement is protected by spousal privilege.

**Entries 345: Kimberley Tew's statement was not in furtherance of a conspiracy.**

In entry 345, Kimberley Tew is alleged to have stated, "… I have to send Phillipe $12k in

btc… A $20k wire to kraken." The government has not shown that these statements were in

furtherance of the conspiracy. Furthermore, the statement is protected by spousal privilege.

**Entries 300 and 301**: **Kimberley Tew's statements were not in furtherance of a conspiracy.**

In entries 300 and 301, Kimberley and Michael Tew appear to be discussing gambling.

The government has not shown that these statements were in furtherance of the conspiracy.

Furthermore, the statements are protected by spousal privilege.

**Entries 284, 285, and 286: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entries 284, 285, and 286, Kimberley Tew discusses travel arrangements, owing debts, and gambling winnings. These statements are intermixed with statements involving co-defendant Jonathan Yioulos. The government has not shown that portions of the statements discussing gambling were in furtherance of a conspiracy, or that any of the purported debt holders are at all associated with criminal activity or are in any way relevant. Furthermore, the statements are protected by spousal privilege.

**Entry 278: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 278, the Tews discuss various bills/debts. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entries 268 and 70: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entries 268 and 270, the Tews discuss buying an automobile. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 265: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 265, the government cannot show by a preponderance of the evidence who is making what statements and cannot establish which conspiracy, if any, the statements are alleged to be made in furtherance of.

**Entry 247: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 247, the Tews discuss gambling winnings. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 205: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 205, the Tews discuss what appear to be threats. The government has not shown that these statements were made in furtherance of a conspiracy or established that the threats involved were legitimate or in any way associated with criminal activity or are relevant.

**Entries 202 and 203: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entries 202 and 203, the Tews discuss gambling winnings and debts. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 198: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 198, the Tews are alleged to be discussing a debt owed to a third party and various related accounting. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 191: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 191, Kimberley Tew asks Michael Tew to stop and buy lottery tickets. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 179: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 179, Kimberley Tew discusses bitcoin and having a buy[er] lined up. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 167: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 167, the Tews discuss bank transactions. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected

by spousal privilege.

**Entry 163: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 163, Kimberley Tew asks Michael Tew to stop and buy lottery tickets. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entries 153, 155, and 157: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entries 153, 155, and 157, the Tews discuss bank transactions. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 152: the statements were not made in furtherance of the conspiracy.**

In entry 152, the government alleges that Michael Tew, using Kimberley Tew's email or text, communicated with someone described as "not an indicted conspirator." The government has not shown that these statements were in furtherance of a conspiracy.

**Entry 150: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 150, the Tews discuss bank transactions. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 144: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 144, the Tews discuss bank transactions. The government has not shown that these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entry 138: Kimberley Tew's statements were not in furtherance of the conspiracy.**

In entry 138, the Tews discuss bank transactions. The government has not shown that

these statements were in furtherance of a conspiracy. Furthermore, the statements are protected by spousal privilege.

**Entries 108, 115, and 118: Jonathan Yioulos' statements were not in furtherance of the conspiracy.**

In entries 108, 115, and 118, Jonathan Yioulos purports to text Kimberly Tew various messages without receiving a response. There is no evidence provided that Kimberley Tew received or read these messages. The government has not shown that these statements were in furtherance of a conspiracy.

**Entry 96: statements by M.M are not by a co-conspirator and are not in furtherance of the conspiracy.**

In entry 96, Michael Tew communicates with "M.M." The government has not established that M.M. is a co-conspirator, or that Michael Tew's statements to him are in furtherance of any conspiracy.

**Entries 79 and 85: Jonathan Yioulos' statements were not in furtherance of the conspiracy.**

In entries 79 and 85, Jonathan Yioulos purports to text Kimberly Tew various messages without receiving a response. There is no evidence provided that Kimberley Tew received or read these messages. The government has not shown that these statements were in furtherance of a conspiracy.

**Entry 69: statements by M.M are not by a co-conspirator and are not in furtherance of the conspiracy.**

In entry 69, Michael Tew communicates with "M.M." The government has not established that M.M. is a co-conspirator, or that Michael Tew's statements to him are in furtherance of any conspiracy.

**Entry 56: Michael Tew's statements were not in furtherance of the conspiracy.**

In entry 56, Michael Tew purports to text "M.M." various messages without receiving a

response. There is no evidence provided that "M.M" received or read these messages. The government has not shown that these statements were in furtherance of a conspiracy.

**Entries 19, 28, 34. 35, 46, and 51: Jonathan Yioulos' statements were not in furtherance of the conspiracy.**

In entries 19, 28, 34, 35, 46, and 51, Jonathan Yioulos purports to text Kimberly Tew various messages without receiving a response. There is no evidence provided that Kimberley Tew received or read these messages. The government has not shown that these statements were in furtherance of a conspiracy.

**Entry 6**: **Jonathan Yioulos' statements were not in furtherance of the conspiracy.**

In entry 6, Jonathan Yioulos and Michael Tew briefly discuss credit card charged. The government has not show that these statements were in furtherance of a conspiracy.

DATED this 12th day of December, 2023.

_____/s/  Jason D. Schall_____
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com
Attorney for defendant Michael Aaron Tew

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Jason D. Schall*
Jason D. Schall

## STATEMENT OF SPEEDY TRIAL IMPACT

Pursuant to Judge Domenico's Practice Standard III(C), undersigned counsel notes that this filing has no effect on the speedy trial clock.

*/s/ Jason D. Schall*
Jason D. Schall

## CERTIFICATE OF SERVICE

I hereby certify that on December 12, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Bryan Fields
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov

David Kaplan
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80203
(720) 689-8909
kaplan@slhlegal.com
*Attorney for Kimberley Ann Tew*

I hereby certify that I will mail or serve the filing to the following participants:

Mr. Michael Aaron Tew (defendant)

*/s/ Jason D. Schall*
Jason D. Schall

Case No. 1:20-cr-00305-DDD Document 346 filed 01/24/23 USDC Colorado pg

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

   Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

   Defendant.

---

**Kimberley Tew's Response to Government's Memorandum in Support of *James* Log (Doc. 341)**

---

David S. Kaplan of the law firm Stimson LaBranche Hubbard, LLC, in advance of the *James* hearing scheduled for December 19, 2023 submits *Kimberley Tew's Response to Government's Memorandum in Support of James Log* (Doc. 341) and states the following:

On February 3, 2021 a 60-count indictment was filed in the United States District Court for the District of Colorado naming Michael Aaron Tew, Kimberley Ann Tew and Jonathan K. Yioulos as defendants. Ms. Kimberley Tew was charged in Count One with conspiracy to commit wire fraud in violation of 18 U.S.C. §1343, an additional 7 counts of wire fraud in violation of 18 U.S.C. §1343 and 18 U.S.C. § 2, 1 count of conspiracy to engage in illegal monetary transactions, "money laundering", in violation of 18 U.S.C. §1957, and 5 counts of money laundering in violation of 18 U.S.C. §1957, along with a forfeiture allegation.

As is set forth more fully below, the *Government's Memorandum in Support of James Log* (Doc. 341) and *James Log Exhibit* (Doc. 341-1) contain statements the Government seeks to admit pursuant to F.R.E. 801(d)(2)(E).  The Government's submission fails to establish the basic requirements of F.R.E. 801(d)(2)(E) as to many of the statements, specifically those seeking admission of statements occurring at the time Ms. Tew was not a member of any conspiracy, out of court statements that were not made in furtherance of the alleged conspiracy and statements protected by the marital privilege[1]. Further complicating the Government's submission is that many of the 376 statements sought to be admitted are conversations involving multiple subjects, not all of which fall into the 801(d)(2)(E) exception.

## Legal Standard

Pursuant to F.R.E. 801(d)(2)(E), a statement of one co-conspirator is admissible against another co-conspirator when the government can demonstrate "by a preponderance of the evidence that: (1) a conspiracy existed; (2) the declarant and the defendant were members of the conspiracy; and (3) the hearsay statements were made in the course and in furtherance of the conspiracy" *United States v. Lopez-Guiterrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

"[W]hen the preliminary facts relevant to Rule 801(d)(2)(E) are disputed, the offering party must prove them by a preponderance of the evidence." *Bourjaily v. United States*, 483 U.S. 171, 176 (1987).  Further, there must be some independent evidence,

---

[1] For the Court's reference, attached as Exhibit 1 is Defendant Kimberley Tews objections to specific statements contained in the Government's *James* log. The objections are numbered to reflect the statements sought to be introduced by the Government.

2

other than the statements themselves.  *See United States v. Rascon*, 8 F.3d 1537,1541 (10th Cir. 1993).

To establish a declarant was a member of a conspiracy, the government must prove: (1) the declarant's agreement with another person to violate the law; (2) his knowledge of the essential objective of the conspiracy; (3) his knowing and voluntary involvement; and (4) interdependence among the alleged co-conspirators. *See United States v. Chavis*, 461 F.3d 1201, 1208 (10th Cir. 2006). These facts must be established for each declarant.

To qualify as a statement "in furtherance" of a conspiracy, the statement must be "intended to promote the conspiratorial objectives" of the conspiracy.  *United States v. Reyes*, 798 F.2sd 380, 384 (10th Cir. 1986). The "in furtherance" requirement represents a 'significant obstacle for the government; it is to be strictly construed and narrowly applied". *Rascon*, 8 F.3d at 1540.

A statement made after a conspiracy has ended is not admissible under F.R.E. 801(d)(2)(E) because it is not made during the course of the conspiracy.  *See Krulewitch v. United States*, 336 U.S. 440, 442-44 (1949).

### *James* Log Objections

The *James* log reveals the Government seeks to introduce, pursuant to F.R.E. 801(d)(2)(E), statements against Ms. Tew beginning on August 7, 2018.  Ms. Tew is not charged with any count in the indictment evidencing participation in the conspiracy until September 4, 2019 (Count 16).  The statements predating Ms. Tew's alleged participation (*James* Log #1-22) should not be introduced.

3

The *James* log describes entries involving statements by Mr. Jonathon Yioulos sent to Ms. Kimberly Tew with no indication that Ms. Tew received the information contained in the communication (James Log #19, #28, #34, #35, #46, #51, #79, #85, #108, #115, #118). These statements should not be considered as statements in furtherance of the conspiracy when Ms. Tew is not shown as ever having received the communication.

Not every statement contained in the Government's log meets their burden of establishing that the communication was in furtherance of the conspiracy. *James* Log #37, #144, #150, #153, #155, #157, #163, #203, #284, #285, #300, #370 are statements between Mr. and Mrs. Tew that are not in furtherance of the conspiracy. Additionally, these statements are protected by marital privilege. *Trammel v. United States*, 445 U.S. 40 (1980), *United States v. Bahe* 128 F.3d 1440 (10th Cir.1997)

*James* Log statements #374, #375 and #376 are statements obtained by the government after Mr. Yioulos had chosen to cooperate with the authorities. Mr. Yioulos was obviously no longer involved in the conspiracy and as such the statements should not be admitted pursuant to F.R.E. 801(d)(2)(E).

## Conclusion

For the reasons stated above and the objections contained in the attached Exhibit 1, Ms. Tew respectfully requests the court deny the introduction of statements as detailed in this motion.

4

**Join in Objections Filed on behalf of Mr. Tew**

Ms. Kimberley Tew adopts the arguments made on behalf of Mr. Tew relating to the admissibility of statements contained in the Government's *James* Log.

Dated: December 12, 2023.

Respectfully submitted,

*s/ David S. Kaplan*
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   kaplan@slhlegal.com

*Attorney for Kimberley Ann Tew*

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel notes that this filing has no effect on the speedy trial clock.

*s/ David S. Kaplan*
David S. Kaplan

5

**Certificate of Service**

I certify that on December 12, 2023, I electronically filed the foregoing *Kimberley Tew's Response to Government's Memorandum in Support of James Log (Doc. 341)* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com
*Counsel for Michael Tew*

*s/ Brenda Rodriguez*
Brenda Rodriguez

6

*USA v. Tew, et al.*, Case No. 20-cr-000305-DDD

Defendant Kimberley Tew's Response/Objection to Government's *James* Log

| ENTRY | DATE | DECLARANT(S) | RESPONSE/OBJECTION |
|---|---|---|---|
| 1 | 8/7/18 | Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 2 | 8/7/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 3 | 8/8/18 | Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 4 | 8/8/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 5 | 8/9/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 6 | 8/13/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 7 | 8/14/18 | Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |

Exhibit 1

| 8 | 8/14/18 | Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 9 | 8/18/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 10 | 8/21/18 | Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 11 | 8/22/18 | C.R. / Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 12 | 8/22/18 | Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 13 | 8/22/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 14 | 8/23/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 15 | 08/23/18 | Jonathan Yioulos / C.R. | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |

Exhibit 1

| 16 | 08/24/18 | Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
|----|----------|------------------|------------------------------------------------------------------------------|
| 17 | 8/27/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 18 | 8/30/18 | Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 19 | 8/30/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. Government has not shown Kimberley Tew a member of the alleged conspiracy. |
| 20 | 8/30/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 21 | 8/31/18 | Jonathan Yioulos / Michael Tew | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 22 | 9/1/18 | Jonathan Yioulos | Government has not shown Kimberley Tew is a member of the alleged conspiracy. |
| 28 | 9/10/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |

Exhibit 1

| 34 | 9/18/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
|---|---|---|---|
| 35 | 9/13/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 37 | 9/18/18 | Jonathan Yioulos | Government has not shown statement made in furtherance of the conspiracy. |
| 46 | 10/25/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 51 | 10/30/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 79 | 12/1/18 | Jonthan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 85 | 12/6/18 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 108 | 1/17/19 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |

Exhibit 1

| 115 | 2/7/19 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 118 | 2/19/19 | Jonathan Yioulos | Government has not shown Kimberley Tew received these messages therefore not statements in furtherance of the conspiracy. |
| 144 | 4/6/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 150 | 4/9/19 | Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 153 | 4/12/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 155 | 4/16/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 157 | 4/18/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 163 | 4/15/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |

Exhibit 1

| 203 | 7/5/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 284 | 10/25/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 285 | 10/31/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements aare protected by spousal privilege. |
| 300 | 12/7/19 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 370 | 6/30/20 | Michael Tew / Kimberley Tew | Government has not shown Kimberley Tew's statements are in furtherance of the conspiracy. Statements are protected by spousal privilege. |
| 374 | 7/7/20 | Jonathan Yioulos / Michael Tew | Government has not shown Michael Tew's statements were in furtherance of the conspiracy. |
| 375 | 7/8/20 | Jonathan Yioulos / Michael Tew | Government has not shown Michael Tew's statements were in furtherance of the conspiracy. |
| 376 | 7/8/20 | Jonathan Yioulos / Michael Tew | Government has not shown Michael Tew's statements were in furtherance of the conspiracy. |

Exhibit 1

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
deana.ambrosen@usdoj.gov, ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Eric S. Galler (egaller@gcorplaw.com), David Scott Kaplan
(hickam@slhlegal.com, kaplan@slhlegal.com, rodriguez@slhlegal.com), Richard Kent Kornfeld
(admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com, rick@rklawpc.com), Jason Dale
Schall (jason@bowsch.com, jasondschall@yahoo.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), clinde
(colin_linde@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9465909@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 12/18/2023 at 1:47 PM MST and filed on 12/18/2023

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 349(No document attached) |

**Docket Text:**
 **ORDER as to Kimberley Ann Tew. Jamie Hubbard of Stimson LaBranche Hubbard, LLC is to be appointed as co–counsel for Kimberley Ann Tew's trial pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et. seq. SO ORDERED by Judge Daniel D. Domenico on 12/18/2023. Text Only Entry (dddlc3, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Deana.Ambrosen@usdoj.gov,
Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Case No.  20-cr-00305-DDD

Case Title:  United States of America v. Tew et al.

**GOVERNMENT'S  EXHIBIT LIST**

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 1 - 10 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 11 | | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | SIG_00006978 | | | | | |
| 12 - 45 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 46 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 47 - 209 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 210 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 211 - 212 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 213 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 08.31.2019 | WFB_00000144-WFB_00000146 | | | | | |
| 214 - 224 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 225 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 226 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 227 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 228 - 229 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 230 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | WFB_00000144-WFB_00000146 | | | | | |
| 231 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 232 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 233 - 241 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 242 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 243 - 245 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 246 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 247 -249 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 250 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 10.31.2019 | WFB_00000144-WFB_00000146 | | | | | |
| 251 - 301 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 302 | | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | GUAR_00000001 | | | | | |
| 303 | | Navy Federal Credit Union Application re Kimberey Tew and Michael Tew | NAVY_00002211-NAVY_00002212 | | | | | |
| 304 | | Navy Federal Credit Union Application re Global Fuel Logistics | NAVY_00002211-NAVY_00002212 | | | | | |
| 305 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 306 | | Wells Fargo Bank Signature Card re Account x6934 Sand Hill, LLC | WFB_00000144-WFB_00000146 | | | | | |
| 307 | | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | WFB_00000144-WFB_00000146 | | | | | |
| 308 - 311 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 312 | | Access National Bank Statement re Account x5965 [PM] Inc., statement period 12.01.2018-12.31.2018 | ACNB_00000101 | | | | | |
| 313 | | Simple Signature Card for Kimberley Tew | SFT_00000001 | | | | | |
| 314 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 315 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 316 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 317 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 318 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 319 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 320 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 321 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 322 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 323 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 324 - 327 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 328 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 329 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 330 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 331 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 332 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 333 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 334 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 335 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 336 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 337 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | WFB_00001054-WFB_00001058 | | | | | |
| 338 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 09.30.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 339 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 10.31.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 340 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 12.31.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 341 - 355 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 356 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00002211-NAVY_00002212 | | | | | |
| 357 - 377 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 378 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 379 - 380 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 381 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 382 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, statement period 06.01.2019-06.30-2019 | WFB_00000144-WFB_00000146 | | | | | |
| 383 | | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | SIG_00006978 | | | | | |
| 384 - 392 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 393 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 394 | | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | NAVY_000000002; NAVY_00000003 | | | | | |
| 395 | | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 396 | | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 397 | | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 398 | | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 399 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 400 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 401 | | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 402 | | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 403 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | NAVY_00002211-NAVY_00002212 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 404 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 405 | | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 406 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 407 | | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 408 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 409 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 410 | | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 411 | | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 412 | | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 413 | | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 414 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00002211-NAVY_00002212 | | | | | |
| 415 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 416 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 417 | | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 418 | | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 419 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 420 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 421 | | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 422 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | NAVY_00002211-NAVY_00002212 | | | | | |
| 423 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 424 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 425 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 426 | | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 427 - 499 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 500 | | Kraken Opening Documents | KRKN_00000001 | | | | | |
| 501 | | Kraken Opening Documents | KRKN_00000001 | | | | | |
| 502 | | Coinbase profile image records for Michael Tew | | | | | | |
| 503 | | Coinbase profile image records for Kimberley Tew | | | | | | |
| 504 | | PayPal Account Record | | | | | | |
| 505 | | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | | | | | | |
| 506 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 507 | | Wynn Jackpot Report | WYNN_0000002 | | | | | |
| 508 | | Wynn Loss Summary | WYNN_0000002 | | | | | |
| 509 | | Wynn Folio | WYNN_0000002 | | | | | |
| 510 | | Wynn Record | WYNN_0000002 | | | | | |
| 511 | | Wynn Las Vegas Hotel stay record re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | WYNN_0000002 | | | | | |
| 512 | | GoDaddy Records re Domain Name "Global Fuel.Co" | ORD_00010742 | | | | | |
| 513 | | GoDaddy Records re Domain Name "Sandhillrp.com" | ORD_00010742 | | | | | |
| 514 | | AT&T Subscriber Record - x1312 | ORD_00020003-ORD_00020004 | | | | | |
| 515 | | AT&T Subscriber Record - x7473 | ORD_00020003-ORD_00020004 | | | | | |
| 516 | | AT&T Subscriber Record x2046 | ORD_00020003-ORD_00020004 | | | | | |
| 517 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 517 | | AT&T Records re Text Messages | ORD_00020003-ORD_00020004 | | | | | |
| 518 | | Verizon Records re Jonathan Yioulos 917-685-1312 | ORD_00019935 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 519 | | Spreadsheet of Verizon Call Records re 585-737-1709 | ORD_00019935 | | | | | |
| 520 | | Record re [5530JD] Email Recovery ([C.R.]@gmail.com) | ORD_00019997-ORD_00020002 | | | | | |
| 521 | | Record re [PM] email recovery ([PM]@gmail.com) | ORD_00017711 | | | | | |
| 522 | | Google Voice record re 469-319-0152 | ORD_00019992-ORD_00019996 | | | | | |
| 523 | | Google Pay Record | ORD_00019962-ORD_00019976 | | | | | |
| 524 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 525 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | VCORP_00000001 | | | | | |
| 526 | | Email re: [5530JD] Invoice #7321116 for $15,000, dated 08.22.2018 | | | | | | |
| 527 | | Email re: [PM] Invoice #6540 for $15,312.50, dated 01.07.2019 | | | | | | |
| 528 | | Email re: [PM] Invoice #6775 for $15,250.00, dated 02.07.2019 | | | | | | |
| 529 | | Email re: [PM] Invoice #7004 for $11,250.00, dated 04.03.2019 | | | | | | |
| 530 | | Email re: [PM] Invoice #6910 for $30.150.00, dated 04.03.2019 | | | | | | |
| 531 | | Invoice re: [HS CPA] for $15,000.00 dated 08.08.2018 | | | | | | |
| 532 | | Invoice #7321116 re: [5530JD] for $15,000.00, dated 08.15.2018 | | | | | | |
| 533 | | Invoice #7321117 re: [5530JD] for $15,000.00, dated 08.31.2018 | | | | | | |
| 534 | | Invoice #7321119 re: [5530JD] for $15,000.00, dated 09.01.2018 | | | | | | |
| 535 | | Invoice #7321122 re: [5530JD] for $30,000.00, dated 11.01.2018 | | | | | | |
| 536 | | Invoice #79466 re: [MCG] for $30,000.00, dated 10.12.2018 | | | | | | |
| 537 | | Invoice #79487 re: [MCG] for $10,000.00, dated 10.30.2018 | | | | | | |
| 538 | | Invoice #79488 re: [MCG] for $30,000.00, dated 11.30.2018 | | | | | | |
| 539 | | Invoice #79489 re: [MCG] for $30,000.00, dated 11.30.2018 | | | | | | |
| 540 | | Invoice #79490 re: [MCG] for $25,000.00, dated 12.11.2018 | | | | | | |
| 541 | | Invoice #6516 re: [PM] for $21,250.00, due 12.07.2018 | | | | | | |
| 542 | | Invoice #6910 re: [PM] for $20,250.00, dated 03.18.2019 | | | | | | |
| 543 | | Invoice #6976 re: [PM] for $38,000.00, dated 03.28.2019 | | | | | | |
| 544 | | Invoice #7004 re: [PM] for $11,250.00, dated 04.03.2019 | | | | | | |
| 545 | | Invoice #7101 re: [PM] for $37,500.00, dated 04.08.2019 | | | | | | |
| 546 | | Invoice #7201 re: [PM] for $40,000.00, dated 05.13.2019 | | | | | | |
| 547 | | Invoice #7263 re: [PM] for $10,100.00, dated 05.30.2019 | | | | | | |
| 548 | | Invoice #7312 re: [PM] for $9,500.00, dated 06.14.2019 | | | | | | |
| 549 | | Invoice #6670 re: [PM] for $23,350.00, dated 01.11.2019 | | | | | | |
| 550 | | Invoice #6712 re: [PM] for $27,562.50, dated 01.18.2019 | | | | | | |
| 551 | | Invoice #6714 re: [PM] for $21,000.00, dated 01.23.2019 | | | | | | |
| 552 | | Invoice #6804 re: [PM] for $37,800.00, dated 03.04.2019 | | | | | | |
| 553 | | Invoice #6881 re: [PM] for $31,500.00, dated 03.14.2019 | | | | | | |
| 554 | | Invoice #7156 re: [PM] for $75,000.00, dated 04.29.2019 | | | | | | |
| 555 | | Invoice #7158 re: [PM] for $19,890.00, dated 04.29.2019 | | | | | | |
| 556 | | Invoice #7322 re: [PM] for $30,000.00, dated 06.27.2019 | | | | | | |
| 557 | | Signature Bank ACH Transaction re $20,250.00 to [PM], dated 03.18.2019 | SIG_00006978 | | | | | |
| 558 - 599 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 600 | | *James* Log (ECF #341-1), filed 12.05.2023 | | | | | | |
| 601 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry #1 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 602 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 2 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 603 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 3 | | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 604 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 4 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 605 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 5 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 606 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 6 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 607 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 7 | | | | | | |
| 608 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 8 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 609 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 9 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 610 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 10 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 611 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 11 | | | | | | |
| 612 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 12 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 613 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 13 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 614 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 14 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 615 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 15 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 616 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 16 | | | | | | |
| 617 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 17 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 618 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 18 | | | | | | |
| 619 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 19 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 620 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 20 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 621 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 21 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 622 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 22 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 623 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 23 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 624 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 24 | | | | | | |
| 625 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 25 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 626 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 26 | | | | | | |
| 627 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 27 | | | | | | |
| 628 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 28 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 629 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 29 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 630 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 30 | | | | | | |
| 631 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 31 | | | | | | |
| 632 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 32 | | | | | | |
| 633 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 33 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 634 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 34 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 635 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 35 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 636 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 36 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 637 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 37 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 638 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 38 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 639 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 39 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 640 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 40 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 641 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 41 | | | | | | |
| 642 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 42 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 643 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 43 | | | | | | |
| 644 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 44 | | | | | | |
| 645 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 45 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 646 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 46 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 647 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 47 | SW_FIL_00011401 - SW_FIL_00011407 | | | | | |
| 648 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 48 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 649 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 49 | SW_FIL_00011401 - SW_FIL_00011407 | | | | | |
| 650 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 50 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 651 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 51 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 652 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 52 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 653 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 53 | | | | | | |
| 654 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 54 | VCORP_0000001 | | | | | |
| 655 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 55 | VCORP_0000001 | | | | | |
| 656 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 56 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 657 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 57 | | | | | | |
| 658 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 58 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 659 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 59 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 660 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 60 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 661 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 61 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 662 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 62 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 663 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 63 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 664 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 64 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 665 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 65 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 666 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 66 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 667 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 67 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 668 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 68 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 669 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 69 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 670 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 70 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 671 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 71 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 672 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 72 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 673 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 73 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 674 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 74 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 675 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 75 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 676 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 76 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 677 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 77 | | | | | | |
| 678 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 78 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 679 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 79 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 680 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 80 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 681 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 81 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 682 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 82 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 683 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 83 | | | | | | |
| 684 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 84 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 685 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 85 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 686 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 86 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 687 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 87 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 688 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 88 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 689 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 89 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 690 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 90 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 691 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 91 | | | | | | |
| 692 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 92 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 693 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 93 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 694 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 94 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 695 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 95 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 696 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 96 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 697 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 97 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 698 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 98 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 699 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 99 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 700 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 100 | | | | | | |
| 701 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 101 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 702 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 102 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 703 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 103 | SW_FIL_000011557 - SW_FIL_00011561 | | | | | |
| 704 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 104 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 705 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 105 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 706 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 106 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 707 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 107 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 708 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 108 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 709 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 109 | | | | | | |
| 710 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 110 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 711 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 111 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 712 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 112 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 713 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 113 | | | | | | |
| 714 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 114 | | | | | | |
| 715 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 115 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 716 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 116 | | | | | | |
| 717 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 117 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 718 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 118 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 719 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 119 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 720 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 120 | | | | | | |
| 721 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 121 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 722 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 122 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 723 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 123 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 724 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 124 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 725 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 125 | | | | | | |
| 726 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 126 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 727 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 127 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 728 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 128 | | | | | | |
| 729 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 129 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 730 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 130 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 731 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 131 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 732 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 132 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 733 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 133 | | | | | | |
| 734 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 134 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 735 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 135 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 736 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 136 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 737 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 137 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 738 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 138 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 739 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 139 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 740 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 140 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 741 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 141 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 742 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 142 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 743 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 143 | | | | | | |
| 744 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 144 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 745 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 145 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 746 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 146 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 747 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 147 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 748 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 148 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 749 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 149 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 750 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 150 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 751 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 151 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 752 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 152 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 753 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 153 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 754 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 154 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 755 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 155 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 756 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 156 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 757 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 157 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 758 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 158 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 759 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 159 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 760 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 160 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 761 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 161 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 762 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 162 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 763 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 163 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 764 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 164 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 765 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 165 | | | | | | |
| 766 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 166 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 767 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 167 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 768 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 168 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 769 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 169 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 770 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 170 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 771 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 171 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 772 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 172 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 773 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 173 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 774 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 174 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 775 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 175 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 776 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 176 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 777 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 177 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 778 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 178 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 779 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 179 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 780 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 180 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 781 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 181 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 782 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 182 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 783 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 183 | | | | | | |
| 784 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 184 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 785 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 185 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 786 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 186 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 787 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 187 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 788 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 188 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 789 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 189 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 790 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 190 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 791 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 191 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 792 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 192 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 793 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 193 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 794 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 194 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 795 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 195 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 796 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 196 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 797 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 197 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 798 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 198 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 799 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 199 | VCORP_00000001 | | | | | |
| 800 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 200 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 801 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 201 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 802 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 202 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 803 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 203 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 804 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 204 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 805 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 205 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 806 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 206 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 807 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 207 | VCORP_00000001 | | | | | |
| 808 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 208 | VCORP_00000001 | | | | | |
| 809 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 209 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 810 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 210 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 811 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 211 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 812 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 212 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 813 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 213 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 814 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 214 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 815 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 215 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 816 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 216 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 817 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 217 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 818 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 218 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 819 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 219 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 820 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 220 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 821 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 221 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 822 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 222 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 823 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 223 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 824 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 224 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 825 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 225 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-----------------|-------------|---------|----------|---------|-----------|
| 826 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 226 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 827 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 227 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 828 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 228 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 829 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 229 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 830 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 230 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 831 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 231 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 832 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 232 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 833 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 233 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 834 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 234 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 835 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 235 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 836 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 236 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 837 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 237 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 838 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 238 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 839 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 239 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 840 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 240 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 841 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 241 | | | | | | |
| 842 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 242 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 843 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 243 | | | | | | |
| 844 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 244 | | | | | | |
| 845 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 245 | | | | | | |
| 846 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 246 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 847 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 247 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 848 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 248 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 849 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 249 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 850 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 250 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 851 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 251 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 852 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 252 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 853 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 253 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 854 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 254 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 855 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 255 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 856 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 256 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 857 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 257 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 858 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 258 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 859 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 259 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 860 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 260 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 861 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 261 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 862 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 262 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 863 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 263 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 864 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 264 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 865 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 265 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 866 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 266 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 867 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 267 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 868 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 268 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 869 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 269 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 870 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 270 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 871 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 271 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 872 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 272 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 873 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 273 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 874 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 274 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 875 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 275 | | | | | | |
| 876 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 276 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 877 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 277 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 878 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 278 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 879 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 279 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 880 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 280 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 881 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 281 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 882 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 282 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 883 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 283 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 884 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 284 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 885 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 285 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 886 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 286 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 887 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 287 | | | | | | |
| 888 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 288 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 889 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 289 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 890 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 290 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 891 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 291 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 892 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 292 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 893 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 293 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 894 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 294 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 895 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 295 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 896 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 296 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 897 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 297 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 898 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 298 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 899 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 299 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 900 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 300 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 901 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 301 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 902 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 302 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 903 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 303 | | | | | | |
| 904 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 304 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 905 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 305 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 906 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 306 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 907 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 307 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 908 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 308 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 909 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 309 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 910 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 310 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 911 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 311 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 912 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 312 | | | | | | |
| 913 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 313 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 914 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 314 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 915 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 315 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 916 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 316 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 917 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 317 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 918 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 318 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 919 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 319 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 920 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 320 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 921 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 321 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 922 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 322 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 923 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 323 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 924 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 324 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 925 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 325 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 926 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 326 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 927 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 327 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 928 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 328 | | | | | | |
| 929 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 329 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 930 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 330 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 931 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 331 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 932 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 332 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 933 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 333 | | | | | | |
| 934 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 334 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 935 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 335 | | | | | | |
| 936 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 336 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 937 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 337 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 938 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 338 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 939 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 339 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 940 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 340 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 941 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 341 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 942 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 342 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 943 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 343 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 944 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 344 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 945 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 345 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 946 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 346 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 947 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 347 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 948 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 348 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 949 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 349 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 950 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 350 | | | | | | |
| 951 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 351 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 952 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 352 | | | | | | |
| 953 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 353 | | | | | | |
| 954 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 354 | | | | | | |
| 955 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 355 | | | | | | |
| 956 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 356 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 957 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 357 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 958 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 358 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 959 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 359 | | | | | | |
| 960 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 360 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 961 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 361 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 962 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 362 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 963 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 363 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 964 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 364 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 965 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 365 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 966 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 366 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 967 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 367 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 968 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 368 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 969 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 369 | | | | | | |
| 970 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 370 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 971 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 371 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 972 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 372 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 973 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 373 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 974 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 374 | N/A | | | | | |
| 975 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 375 | N/A | | | | | |
| 976 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 376 | N/A | | | | | |
| 977 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 978 | | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | | | | | | |
| 979 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 980 | | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 981 | | Email re Lilky Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 982 | | Email re Lilky Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 983 | | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 984 | | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 985 | | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | | | | | | |
| 986 | | Invoice #001 re: Kimberley Tew for $10,000.00, dated 02.08.2018 | | | | | | |
| 987 | | Transcript of 07.07.2020 consensual call | | | | | | |
| 988 | | Transcript of 07.08.2020 consensual call | | | | | | |
| 989 - 1000 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 1001 | | Account Owners and Signors for Relevant Bank Accounts | | | | | | |
| 1002 | | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | | |
| 1003 | | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | | |
| 1004 | | Summary of [HS CPA], [MCG], and [5530JD] Invoices and Payments | | | | | | |
| 1005 | | Summary of [PM] Invoices and Payments | | | | | | |
| 1006 | | Summary of Global Fuel Logistics Invoices and Payments | | | | | | |
| 1007 | | Summary of Aero Maintenance Resources Invoices and Payments | | | | | | |
| 1008 - 1099 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 1100 | | Certificate of Authenticity for Atlantic Union Bank | | | | | | |
| 1101 | | Certificate of Authenticity for ANB Bank | | | | | | |
| 1102 | | Certificate of Authenticity for ANB Bank | | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 1103 | | Certificate of Authenticity for BBVA | | | | | | |
| 1104 | | Certificate of Authenticity for BBVA | | | | | | |
| 1105 | | Certificate of Authenticity for Guaranty Bank and Trust Company | | | | | | |
| 1106 | | Certificate of Authenticity for Kraken | | | | | | |
| 1107 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | | |
| 1108 | | Certificate of Authenticity for GoDaddy | | | | | | |
| 1109 | | Certificate of Authenticity for Google | | | | | | |
| 1110 | | Certificate of Authenticity for Verizon | | | | | | |
| 1111 | | Certificate of Authenticity for Regions Bank | | | | | | |
| 1112 | | Certificate of Authenticity for Simple Finance Technology Corp | | | | | | |
| 1113 | | Certificate of Authenticity for Signature Bank | | | | | | |
| 1114 | | Certificate of Authenticity for Google | | | | | | |
| 1115 | | Certificate of Authenticity for Apple | | | | | | |
| 1116 | | Certificate of Authenticity for Google | | | | | | |
| 1117 | | Certificate of Authenticity for Google | | | | | | |
| 1118 | | Certificate of Authenticity for Vcorp | | | | | | |
| 1119 | | Certificate of Authenticity for Wells Fargo Bank | | | | | | |
| 1120 | | Certificate of Authenticity for Wells Fargo Bank | | | | | | |
| 1121 | | Certificate of Authenticity for Wynn Las Vegas | | | | | | |
| 1122 | | Certificate of Authenticity for Google | | | | | | |
| 1123 | | Certificate of Authenticity for Google | | | | | | |
| 1124 | | Certificate of Authenticity for Google | | | | | | |
| 1125 | | Certificate of Authenticity for Google | | | | | | |
| 1126 | | Certificate of Authenticity for Google | | | | | | |
| 1127 | | Certificate of Authenticity for AT&T | | | | | | |
| 1128 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## Judge Daniel D. Domenico

Case No. 20-cr-00305-DDD                    Date: December 19, 2023

Case Title: United States of America v. Tew, et al.

### GOVERNMENT'S WITNESS LIST

| WITNESS | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|
| Special Agent Lisa Palmer, Internal Revenue Service | 3 hours |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |
| _____ | _____ |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

---

## NOTICE OF APPEARANCE OF COUNSEL

---

Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC, hereby enters her appearance as Criminal Justice Act counsel on behalf of Defendant Kimberley Ann Tew in the above-captioned matter. Pursuant to D.C.COLO.L.AttyR. 5(a)(3)(C), undersigned counsel certifies that she is a member in good standing of the bar of this court.

Dated: December 20, 2023.

        Respectfully submitted,

        *s/ Jamie Hubbard*
        Jamie Hubbard
        STIMSON LABRANCHE HUBBARD, LLC
        1652 Downing Street
        Denver, CO 80218
        Phone: 720.689.8909
        Email: hubbard@slhlegal.com

        *Attorney for Kimberley Ann Tew*

**Certificate of Service**

I certify that on December 20, 2023, I electronically filed the foregoing *Notice of Appearance of Counsel* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

*s/ Brenda Rodriguez*
Brenda Rodriguez

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### JUDGE DANIEL D. DOMENICO

Criminal Case No.: 1:20-cr-00305-DDD     Date: December 18, 2023
Courtroom Deputy: Robert R. Keech     Court Reporter: Tammy Hoffschildt
Probation Officer: N/A

---

*Parties:*                                   *Counsel:*

UNITED STATES OF AMERICA,        Bryan D. Fields
                                           Sarah H. Weiss

     Plaintiff,

v.

1. MICHAEL AARON TEW, and       Jason D. Schall
2. KIMBERLEY ANN TEW,           David S. Kaplan

     Defendants.

---

## COURTROOM MINUTES

---

**JAMES HEARING**

**9:37 a.m.**     Court in session. Defendants present, on bond.

                Appearances of counsel.

                Court's opening remarks.

9:42 a.m.      Discussion regarding protocol for this hearing.

9:48 a.m.  Government's witness **Lisa Ann Palmer** sworn.

Direct examination by Government by Mr. Fields.
*Exhibit(s) identified:*  *600, 606, 633, 636, 659, 679, 685, 693, 707, 708, 756, 303, 515, 606, 601, 602, 605, 609, 614, 612, 614, 621, 623, 625, 628, 639, 640, 645, 646, 662, 665, 670, 673, 676, 678, 681, 682, 689, 690, 907, 708, 619, 628, 636, 635, 718, 717, 885, 901, 847, 46, 803, 847, 884, 886, 901, 898, 225, 776, 792, 797, 798, 809, 810, 819, 824, 834, 835, 836, 846, 847, 850, 852, 855, 859, 868, 870, 871, 872, 920, 923, 924, 505, 878, 647, 1004, 804, 752*

**11:08 a.m.**  **Court in recess.**

**11:20 a.m.**  **Court in session.**

Government's witness **Lisa Ann Palmer** resumes.

11:20 a.m.  Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified:*  *829, 673, 968, 971, 972, 973, 522, 760, 938, 971, 975, 988, 976*

11:44 a.m.  Cross examination by Defendant Michael Aaron Tew by Mr. Schall.

12:19 p.m.  Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.

12:29 p.m.  Re-direct examination by Government by Mr. Fields.
*Exhibit(s) identified:*  *613, 809, 1115*

**12:35 p.m.**  **Court in recess.**

**1:12 p.m.**  **Court in session.**

1:12 p.m.  Government rests.

1:13 p.m.  Argument by Government by Mr. Fields.

1:47 p.m.  Argument by Defendant Michael Aaron Tew by Mr. Schall.

1:54 p.m.  Argument by Defendant Kimberley Ann Tew by Mr. Kaplan.

**ORDERED:**  James Proffer is **TAKEN UNDER ADVISEMENT.**

Government's Motion in Limine is raised for argument.

| | |
|---|---|
| 1:57 p.m. | Argument by Defendant Michael Aaron Tew by Mr. Schall. |
| 1:58 p.m. | Argument by Defendant Kimberley Ann Tew by Mr. Kaplan. |
| 1:59 p.m. | Argument by Government by Mr. Fields. |

**ORDERED:** [344] Government's Motion in Limine for Ruling that Certain Exhibits are Authentic and Covered by Business-Records Exception to the Hearsay Rule (ECF No. 344) is **DEFERRED.**

**ORDERED:** Defendants shall file responses to [344] Government's Motion in Limine for Ruling that Certain Exhibits are Authentic and Covered by Business-Records Exception to the Hearsay Rule not later than **Friday, December 22, 2023.**

[348] Defendant's Motion in Limine for Preliminary Ruling on Defendant Michael Tew's Post-Trial Release is raised for argument.

2:03 p.m.      Argument by Defendant Michael Aaron Tew by Mr. Schall.

**ORDERED:** [348] Defendant's Motion in Limine for Preliminary Ruling on Defendant Michael Tew's Post-Trial Release is **DEFERRED.**

Court's closing remarks to counsel and parties.

**ORDERED:** Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**2:09 p.m.      Court in recess. Hearing concluded. Total time:    3:43**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

### Judge Daniel D. Domenico

Case No.  20-cr-00305-DDD                    Date: December 19, 2023

Case Title: United States of America v. Tew, et al.

### GOVERNMENT'S WITNESS LIST

| WITNESS | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|
| Special Agent Lisa Palmer, Internal Revenue Service | ① 12/19/23, 9:48 3 hours |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |
| | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Case No. 20-cr-00305-DDD

Case Title: United States of America v. Tew et al.

GOVERNMENT'S EXHIBIT LIST

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 1 - 10 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 11 | | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | SIG_00006978 | | | | | |
| 12 - 45 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 46 | Palmer | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 47 - 209 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 210 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 211 - 212 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 213 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 08.31.2019 | WFB_00000144-WFB_00000146 | | | | | |
| 214 - 224 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 225 | Palmer | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 226 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 227 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 228 - 229 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 230 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | WFB_00000144-WFB_00000146 | | | | | |
| 231 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 232 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 233 - 241 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 242 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 243 - 245 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 246 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 247 -249 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 250 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, dated 10.31.2019 | WFB_00000144-WFB_00000146 | | | | | |
| 251 - 301 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 302 | | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | GUAR_00000001 | | | | | |
| 303 | | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | NAVY_00002211-NAVY_00002212 | | | | | |
| 304 | | Navy Federal Credit Union Application re Global Fuel Logistics | NAVY_00002211-NAVY_00002212 | | | | | |
| 305 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 306 | | Wells Fargo Bank Signature Card re Account x6934 Sand Hill, LLC | WFB_00000144-WFB_00000146 | | | | | |
| 307 | | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | WFB_00000144-WFB_00000146 | | | | | |
| 308 - 311 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 312 | | Access National Bank Statement re Account x5965 [PM] Inc., statement period 12.01.2018-12.31.2018 | ACNB_00000101 | | | | | |
| 313 | | Simple Signature Card for Kimberley Tew | SFT_00000001 | | | | | |
| 314 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 315 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |

1 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 316 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 317 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 318 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 319 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 320 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 321 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 322 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 323 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 324 - 327 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 328 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 329 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 330 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 331 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 332 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 333 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 334 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 335 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 336 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 337 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | WFB_00001054-WFB_00001058 | | | | | |
| 338 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 09.30.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 339 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 10.31.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 340 | | Wells Fargo Bank Statement re Account x6934 Sand Hill, LLC, dated 12.31.2019 | WFB_00001054-WFB_00001058 | | | | | |
| 341 - 355 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 356 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00002211-NAVY_00002212 | | | | | |
| 357 - 377 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 378 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 379 - 380 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 381 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | NAVY_000000002; NAVY_00000003 | | | | | |
| 382 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, statement period 06.01.2019-06.30.2019 | WFB_00000144-WFB_00000146 | | | | | |
| 383 | | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | SIG_00006978 | | | | | |
| 384 - 392 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 393 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 394 | | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | NAVY_000000002; NAVY_00000003 | | | | | |
| 395 | | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 396 | | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 397 | | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 398 | | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 399 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 400 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 401 | | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 402 | | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 403 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | NAVY_00002211-NAVY_00002212 | | | | | |

2 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 404 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 405 | | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 406 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 407 | | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 408 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 409 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 410 | | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 411 | | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 412 | | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 413 | | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 414 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00002211-NAVY_00002212 | | | | | |
| 415 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 416 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 417 | | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 418 | | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 419 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 420 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 421 | | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 422 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | NAVY_00002211-NAVY_00002212 | | | | | |
| 423 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 424 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 425 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | NAVY_00002211-NAVY_00002212 | | | | | |
| 426 | | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | NAVY_00002211-NAVY_00002212 | | | | | |
| 427 - 499 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 500 | | Kraken Opening Documents | KRKN_00000001 | | | | | |
| 501 | | Kraken Opening Documents | KRKN_00000001 | | | | | |
| 502 | | Coinbase profile image records for Michael Tew | | | | | | |
| 503 | | Coinbase profile image records for Kimberley Tew | | | | | | |
| 504 | | PayPal Account Record | | | | | | |
| 505 | Palmer | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | | | | | | |
| 506 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 507 | | Wynn Jackpot Report | WYNN_0000002 | | | | | |
| 508 | | Wynn Loss Summary | WYNN_0000002 | | | | | |
| 509 | | Wynn Folio | WYNN_0000002 | | | | | |
| 510 | | Wynn Record | WYNN_0000002 | | | | | |
| 511 | | Wynn Las Vegas Hotel stay record re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | WYNN_0000002 | | | | | |
| 512 | | GoDaddy Records re Domain Name "Global Fuel.Co" | ORD_00010742 | | | | | |
| 513 | | GoDaddy Records re Domain Name "Sandhillrp.com" | ORD_00010742 | | | | | |
| 514 | | AT&T Subscriber Record - x1312 | ORD_00020003-ORD_00020004 | | | | | |
| 515 | | AT&T Subscriber Record - x7473 | ORD_00020003-ORD_00020004 | | | | | |
| 516 | | AT&T Subscriber Record x2046 | ORD_00020003-ORD_00020004 | | | | | |
| 517 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 517 | | AT&T Records re Text Messages | ORD_00020003-ORD_00020004 | | | | | |
| 518 | | Verizon Records re Jonathan Yioulos 917-685-1312 | ORD_00019935 | | | | | |

3 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 519 | | Spreadsheet of Verizon Call Records re 585-737-1709 | ORD_00019935 | | | | | |
| 520 | | Record re [5530JD] Email Recovery ([C.R.]@gmail.com) | ORD_00019997-ORD_00020002 | | | | | |
| 521 | | Record re [PM] email recovery ([PM]@gmail.com) | ORD_00017711 | | | | | |
| 522 | Palmer | Google Voice record re 469-319-0152 | ORD_00019992-ORD_00019996 | | | | | |
| 523 | | Google Pay Record | ORD_00019962-ORD_00019976 | | | | | |
| 524 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 525 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | VCORP_00000001 | | | | | |
| 526 | | Email re: [5530JD] Invoice #7321116 for $15,000, dated 08.22.2018 | | | | | | |
| 527 | | Email re: [PM] Invoice #6540 for $15,312.50, dated 01.07.2019 | | | | | | |
| 528 | | Email re: [PM] Invoice #6775 for $15,250.00, dated 02.07.2019 | | | | | | |
| 529 | | Email re: [PM] Invoice #7004 for $11,250.00, dated 04.03.2019 | | | | | | |
| 530 | | Email re: [PM] Invoice #6910 for $30.150.00, dated 04.03.2019 | | | | | | |
| 531 | | Invoice re: [HS CPA] for $15,000.00 dated 08.08.2018 | | | | | | |
| 532 | | Invoice #7321116 re: [5530JD] for $15,000.00, dated 08.15.2018 | | | | | | |
| 533 | | Invoice #7321117 re: [5530JD] for $15,000.00, dated 08.31.2018 | | | | | | |
| 534 | | Invoice #7321119 re: [5530JD] for $15,000.00, dated 09.01.2018 | | | | | | |
| 535 | | Invoice #7321122 re: [5530JD] for $30,000.00, dated 11.01.2018 | | | | | | |
| 536 | | Invoice #79466 re: [MCG] for $30,000.00, dated 10.12.2018 | | | | | | |
| 537 | | Invoice #79487 re: [MCG] for $10,000.00, dated 10.30.2018 | | | | | | |
| 538 | | Invoice #79488 re: [MCG] for $30,000.00, dated 11.30.2018 | | | | | | |
| 539 | | Invoice #79489 re: [MCG] for $30,000.00, dated 11.30.2018 | | | | | | |
| 540 | | Invoice #79490 re: [MCG] for $25,000.00, dated 12.11.2018 | | | | | | |
| 541 | | Invoice #6516 re: [PM] for $21,250.00, due 12.07.2018 | | | | | | |
| 542 | | Invoice #6910 re: [PM] for $20,250.00, dated 03.18.2019 | | | | | | |
| 543 | | Invoice #6976 re: [PM] for $38,000.00, dated 03.28.2019 | | | | | | |
| 544 | | Invoice #7004 re: [PM] for $11,250.00, dated 04.03.2019 | | | | | | |
| 545 | | Invoice #7101 re: [PM] for $37,500.00, dated 04.08.2019 | | | | | | |
| 546 | | Invoice #7201 re: [PM] for $40,000.00, dated 05.13.2019 | | | | | | |
| 547 | | Invoice #7263 re: [PM] for $10,100.00, dated 05.30.2019 | | | | | | |
| 548 | | Invoice #7312 re: [PM] for $9,500.00, dated 06.14.2019 | | | | | | |
| 549 | | Invoice #6670 re: [PM] for $23,350.00, dated 01.11.2019 | | | | | | |
| 550 | | Invoice #6712 re: [PM] for $27,562.50, dated 01.18.2019 | | | | | | |
| 551 | | Invoice #6714 re: [PM] for $21,000.00, dated 01.23.2019 | | | | | | |
| 552 | | Invoice #6804 re: [PM] for $37,800.00, dated 03.04.2019 | | | | | | |
| 553 | | Invoice #6881 re: [PM] for $31,500.00, dated 03.14.2019 | | | | | | |
| 554 | | Invoice #7156 re: [PM] for $75,000.00, dated 04.29.2019 | | | | | | |
| 555 | | Invoice #7158 re: [PM] for $19,890.00, dated 04.29.2019 | | | | | | |
| 556 | | Invoice #7322 re: [PM] for $30,000.00, dated 06.27.2019 | | | | | | |
| 557 | | Signature Bank ACH Transaction re $20,250.00 to [PM], dated 03.18.2019 | SIG_00006978 | | | | | |
| 558 - 599 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 600 | Palmer | James Log (ECF #341-1), filed 12.05.2023 | | • | | | | |
| 601 | Palmer | Communication in Furtherance of Conspiracy Described in James Log Entry #1 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 602 | Palmer | Communication in Furtherance of Conspiracy Described in James Log Entry # 2 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 603 | | Communication in Furtherance of Conspiracy Described in James Log Entry # 3 | | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-----------------|-------------|---------|----------|---------|----------------|
| 604 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 4 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 605 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 5 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 606 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 6 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 607 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 7 | | | | | | |
| 608 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 8 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 609 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 9 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 610 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 10 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 611 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 11 | | | | | | |
| 612 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 12 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 613 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 13 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 614 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 14 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 615 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 15 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 616 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 16 | | | | | | |
| 617 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 17 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 618 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 18 | | | | | | |
| 619 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 19 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 620 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 20 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 621 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 21 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 622 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 22 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 623 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 23 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 624 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 24 | | | | | | |
| 625 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 25 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 626 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 26 | | | | | | |
| 627 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 27 | | | | | | |
| 628 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 28 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 629 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 29 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 630 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 30 | | | | | | |
| 631 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 31 | | | | | | |
| 632 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 32 | | | | | | |
| 633 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 33 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 634 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 34 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 635 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 35 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 636 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 36 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 637 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 37 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 638 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 38 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 639 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 39 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 640 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 40 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 641 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 41 | | | | | | |
| 642 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 42 | SW_FIL_00000094 - SW_FIL_00000099 | | | | | |
| 643 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 43 | | | | | | |
| 644 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 44 | | | | | | |
| 645 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 45 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 646 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 46 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 647 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 47 | SW_FIL_00011401 - SW_FIL_00011407 | | | | | |
| 648 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 48 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 649 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 49 | SW_FIL_00011401 - SW_FIL_00011407 | | | | | |
| 650 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 50 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 651 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 51 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 652 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 52 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 653 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 53 | | | | | | |
| 654 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 54 | VCORP_0000001 | | | | | |
| 655 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 55 | VCORP_0000001 | | | | | |
| 656 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 56 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 657 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 57 | | | | | | |
| 658 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 58 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 659 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 59 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 660 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 60 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 661 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 61 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 662 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 62 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

6 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 663 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 63 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 664 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 64 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 665 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 65 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 666 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 66 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 667 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 67 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 668 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 68 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 669 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 69 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 670 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 70 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 671 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 71 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 672 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 72 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 673 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 73 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 674 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 74 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 675 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 75 | SW_FIL_00000094-SW_FIL_00000099 | | | | | |
| 676 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 76 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 677 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 77 | | | | | | |
| 678 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 78 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 679 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 79 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 680 | Fi | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 80 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 681 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 81 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 682 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 82 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 683 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 83 | | | | | | |
| 684 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 84 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 685 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 85 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 686 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 86 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 687 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 87 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

7 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 688 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 88 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 689 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 89 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 690 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 90 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 691 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 91 | | | | | | |
| 692 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 92 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 693 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 93 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 694 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 94 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 695 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 95 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 696 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 96 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 697 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 97 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 698 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 98 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 699 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 99 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 700 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 100 | | | | | | |
| 701 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 101 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 702 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 102 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 703 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 103 | SW_FIL_000011557 - SW_FIL_00011561 | | | | | |
| 704 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 104 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 705 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 105 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 706 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 106 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 707 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 107 | SW_FIL_00008530- SW_FIL_000008531 | . | | | | |
| 708 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 108 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 709 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 109 | | | | | | |
| 710 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 110 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

8 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 711 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 111 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 712 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 112 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 713 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 113 | | | | | | |
| 714 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 114 | | | | | | |
| 715 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 115 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 716 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 116 | | | | | | |
| 717 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 117 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 718 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 118 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 719 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 119 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 720 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 120 | | | | | | |
| 721 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 121 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 722 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 122 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 723 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 123 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 724 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 124 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 725 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 125 | | | | | | |
| 726 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 126 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 727 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 127 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 728 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 128 | | | | | | |
| 729 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 129 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 730 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 130 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 731 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 131 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 732 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 132 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 733 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 133 | | | | | | |
| 734 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 134 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 735 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 135 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 736 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 136 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 737 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 137 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 738 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 138 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 739 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 139 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 740 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 140 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 741 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 141 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 742 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 142 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 743 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 143 | | | | | | |
| 744 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 144 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 745 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 145 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 746 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 146 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 747 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 147 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 748 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 148 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 749 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 149 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 750 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 150 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 751 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 151 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 752 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 152 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 753 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 153 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 754 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 154 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 755 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 155 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 756 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 156 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 757 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 157 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 758 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 158 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 759 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 159 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 760 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 160 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 761 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 161 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 762 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 162 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 763 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 163 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 764 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 164 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 765 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 165 | | | | | | |
| 766 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 166 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 767 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 167 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 768 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 168 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 769 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 169 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 770 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 170 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 771 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 171 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 772 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 172 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 773 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 173 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 774 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 174 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 775 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 175 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 776 | Palmos | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 176 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 777 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 177 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 778 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 178 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 779 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 179 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 780 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 180 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 781 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 181 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 782 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 182 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 783 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 183 | | | | | | |
| 784 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 184 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 785 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 185 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 786 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 186 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 787 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 187 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 788 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 188 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 789 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 189 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 790 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 190 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 791 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 191 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 792 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 192 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 793 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 193 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 794 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 194 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 795 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 195 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 796 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 196 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 797 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 197 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 798 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 198 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 799 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 199 | VCORP_00000001 | | | | | |
| 800 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 200 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 801 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 201 | SW_FIL_00011557 - SW_FIL_00011561 | | | | | |
| 802 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 202 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 803 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 203 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 804 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 204 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 805 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 205 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 806 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 206 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 807 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 207 | VCORP_00000001 | | | | | |
| 808 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 208 | VCORP_00000001 | | | | | |
| 809 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 209 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 810 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 210 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 811 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 211 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 812 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 212 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 813 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 213 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 814 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 214 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 815 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 215 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 816 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 216 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 817 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 217 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 818 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 218 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 819 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 219 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 820 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 220 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 821 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 221 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 822 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 222 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 823 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 223 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 824 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 224 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 825 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 225 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |

13 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 826 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 226 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 827 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 227 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 828 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 228 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 829 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 229 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 830 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 230 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 831 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 231 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 832 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 232 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 833 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 233 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 834 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 234 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 835 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 235 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 836 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 236 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 837 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 237 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 838 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 238 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 839 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 239 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 840 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 240 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 841 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 241 | | | | | | |
| 842 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 242 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 843 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 243 | | | | | | |
| 844 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 244 | | | | | | |
| 845 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 245 | | | | | | |
| 846 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 246 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 847 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 247 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 848 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 248 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |
| 849 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 249 | SW_FIL_00008530-SW_FIL_000008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-----------------|-------------|---------|----------|---------|----------------|
| 850 | Palmar | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 250 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 851 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 251 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 852 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 252 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 853 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 253 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 854 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 254 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 855 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 255 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 856 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 256 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 857 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 257 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 858 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 258 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 859 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 259 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 860 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 260 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 861 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 261 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 862 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 262 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 863 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 263 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 864 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 264 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 865 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 265 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 866 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 266 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 867 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 267 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 868 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 268 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 869 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 269 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 870 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 270 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 871 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 271 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

15 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 872 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 272 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 873 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 273 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 874 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 274 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 875 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 275 | | | | | | |
| 876 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 276 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 877 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 277 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 878 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 278 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 879 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 279 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 880 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 280 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 881 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 281 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 882 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 282 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 883 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 283 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 884 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 284 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 885 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 285 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 886 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 286 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 887 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 287 | | | | | | |
| 888 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 288 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 889 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 289 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 890 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 290 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 891 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 291 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 892 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 292 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 893 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 293 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 894 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 294 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

16 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 895 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 295 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 896 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 296 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 897 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 297 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 898 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 298 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 899 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 299 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 900 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 300 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 901 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 301 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 902 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 302 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 903 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 303 | | | | | | |
| 904 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 304 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 905 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 305 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 906 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 306 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 907 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 307 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 908 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 308 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 909 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 309 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 910 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 310 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 911 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 311 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 912 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 312 | | | | | | |
| 913 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 313 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 914 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 314 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 915 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 315 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 916 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 316 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 917 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 317 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |

17 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 918 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 318 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 919 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 319 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 920 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 320 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 921 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 321 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 922 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 322 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 923 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 323 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 924 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 324 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 925 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 325 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 926 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 326 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 927 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 327 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 928 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 328 | | | | | | |
| 929 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 329 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 930 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 330 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 931 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 331 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 932 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 332 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 933 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 333 | | | | | | |
| 934 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 334 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 935 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 335 | | | | | | |
| 936 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 336 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 937 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 337 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 938 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 338 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |
| 939 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 339 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 940 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 340 | SW_FIL_00008530-SW_FIL_00000853I | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 941 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 341 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 942 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 342 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 943 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 343 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 944 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 344 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 945 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 345 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 946 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 346 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 947 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 347 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 948 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 348 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 949 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 349 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 950 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 350 | | | | | | |
| 951 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 351 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 952 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 352 | | | | | | |
| 953 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 353 | | | | | | |
| 954 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 354 | | | | | | |
| 955 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 355 | | | | | | |
| 956 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 356 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 957 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 357 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 958 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 358 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 959 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 359 | | | | | | |
| 960 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 360 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 961 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 361 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 962 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 362 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 963 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 363 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 964 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 364 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |
| 965 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 365 | SW_FIL_00008530- SW_FIL_00008531 | | | | | |

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|---|
| 966 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 366 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 967 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 367 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 968 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 368 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 969 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 369 | | | | | | |
| 970 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 370 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 971 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 371 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 972 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 372 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 973 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 373 | SW_FIL_00008530- SW_FIL_000008531 | | | | | |
| 974 | | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 374 | N/A | | | | | |
| 975 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 375 | N/A | | | | | |
| 976 | Palmer | Communication in Furtherance of Conspiracy Described in *James* Log Entry # 376 | N/A | | | | | |
| 977 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 978 | | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | | | | | | |
| 979 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 980 | | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 981 | | Email re Lilky Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 982 | | Email re Lilky Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 983 | | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 984 | | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | SW_FIL_00011402 - SW_FIL_00011407 | | | | | |
| 985 | | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | | | | | | |
| 986 | | Invoice #001 re: Kimberley Tew for $10,000.00, dated 02.08.2018 | | | | | | |
| 987 | Palmer | Transcript of 07.07.2020 consensual call | | | | | | |
| 988 | Palmer | Transcript of 07.08.2020 consensual call | | | | | | |
| 989 - 1000 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 1001 | | Account Owners and Signors for Relevant Bank Accounts | | | | | | |
| 1002 | | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | | |
| 1003 | | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | | |
| 1004 | Palmer | Summary of [HS CPA], [MCG], and [5530JD] Invoices and Payments | | | | | | |
| 1005 | | Summary of [PM] Invoices and Payments | | | | | | |
| 1006 | | Summary of Global Fuel Logistics Invoices and Payments | | | | | | |
| 1007 | | Summary of Aero Maintenance Resources Invoices and Payments | | | | | | |
| 1008 - 1099 | | INTENTIONALLY LEFT BLANK | | | | | | |
| 1100 | | Certificate of Authenticity for Atlantic Union Bank | | | | | | |
| 1101 | | Certificate of Authenticity for ANB Bank | | | | | | |
| 1102 | | Certificate of Authenticity for ANB Bank | | | | | | |

20 of 21

| Exhibit | Witness | Brief Description | 902 Declaration | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-----------------|-------------|---------|----------|---------|---------------|
| 1103 | | Certificate of Authenticity for BBVA | | | | | | |
| 1104 | | Certificate of Authenticity for BBVA | | | | | | |
| 1105 | | Certificate of Authenticity for Guaranty Bank and Trust Company | | | | | | |
| 1106 | | Certificate of Authenticity for Kraken | | | | | | |
| 1107 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | | |
| 1108 | | Certificate of Authenticity for GoDaddy | | | | | | |
| 1109 | | Certificate of Authenticity for Google | | | | | | |
| 1110 | | Certificate of Authenticity for Verizon | | | | | | |
| 1111 | | Certificate of Authenticity for Regions Bank | | | | | | |
| 1112 | | Certificate of Authenticity for Simple Finance Technology Corp | | | | | | |
| 1113 | | Certificate of Authenticity for Signature Bank | | | | | | |
| 1114 | | Certificate of Authenticity for Google | | | | | | |
| 1115 | Palmer | Certificate of Authenticity for Apple | | | | | | |
| 1116 | | Certificate of Authenticity for Google | | | | | | |
| 1117 | | Certificate of Authenticity for Google | | | | | | |
| 1118 | | Certificate of Authenticity for Vcorp | | | | | | |
| 1119 | | Certificate of Authenticity for Wells Fargo Bank | | | | | | |
| 1120 | | Certificate of Authenticity for Wells Fargo Bank | | | | | | |
| 1121 | | Certificate of Authenticity for Wynn Las Vegas | | | | | | |
| 1122 | | Certificate of Authenticity for Google | | | | | | |
| 1123 | | Certificate of Authenticity for Google | | | | | | |
| 1124 | | Certificate of Authenticity for Google | | | | | | |
| 1125 | | Certificate of Authenticity for Google | | | | | | |
| 1126 | | Certificate of Authenticity for Google | | | | | | |
| 1127 | | Certificate of Authenticity for AT&T | | | | | | |
| 1128 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

21 of 21

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW,

      Defendant.

---

## RESPONSE AND OBJECTION TO THE GOVERNMENT'S MOTION *IN LIMINE* THAT CERTAIN RECORDS ARE AUTHENTIC

---

Defendant Michael Tew hereby responds in opposition to the government's motion *in limine* asking the Court to certify the authenticity of certain expected trial exhibits. While many of the government's requested authentications are for exhibits that are the direct production of records from mainstream companies and banks (Google, Apple, etc.) for which counsel has found no authority to reasonably oppose their authentication, other records have been modified by the government and no longer constitute "business records" in any sense. Specifically, any records that the government asks to authenticate that have been modified or repackaged via the use of Cellebrite software are no longer "records of a regularly conducted activity" under F.R.E. 803(6). In support thereof, Mr. Tew states as follows.

### I.    Cellebrite, the company, did not produce the records the government seeks to authenticate.

Cellebrite is a publicly-traded company (ticker CLBT; www.cellebrite.com) based in Israel that provides software tools for law enforcement and intelligence services worldwide. Use is severely restricted by the company, who states on its website, "We sell our solutions only to

companies, bodies and agencies that abide by the terms that govern its proper use as outlined in our End-Use Licensing Agreement (EULA)."[1] In other words, not everyone can get their hands on this software.

Generally speaking, specifically trained federal law enforcement analysts and agents use Cellebrite to take a forensic image of a device (typically a cellular phone) to produce a report detailing the contents thereof. This is not a "plug and play" process, as the contents of the eventual forensic report requires inputs from the forensic examiner about what to include from the forensic image. Because such exams are typically if not always done when the device is in "airplane" mode, Cellebrite cannot receive a copy of the data imaged from the device by the examiner. As such, they cannot be said to maintain business records of the communications discovered by their software – that is, the communications proffered here by the government. Instead, it is the government's work product that produces the Cellebrite-processed exhibits. From the government's motion, it appears Cellebrite was used not to image a phone, but as a tool to "render [communications] in a more visually appealing way." Motion, ECF 444 at 13. The government goes on to state that it "could also just manually cut and paste the relevant texts from the spreadsheet[.]" *Id*. Neither of these actions would produce "records of a regularly conducted activity."

## II.     F.R.E. 902(13) does not stretch to cover Cellebrite analysis as an "electronic process or system."

The government cites F.R.E. 902(13) and a submitted affidavit in support of its contention that Cellebrite records should qualify as a "record generated by an electronic process or system that produces an accurate result." F.R.E. 902(13). But Cellebrite reports markedly

---

[1] *See* https://cellebrite.com/en/cellebrite-facts/ , accessed December 22, 2023, at 10:30 A.M.

differ from the obviously self-authenticating records otherwise codified in Rule 902: signed and sealed or certified domestic public documents, foreign public documents, certified copies of public records, official publications, newspapers and periodicals, etc. *Id* at (1) through (6). Cellebrite, by design, is not for public consumption. It is not something that an average person off the street would recognize as an authentic document such as a stamped judgment of this Court or a copy of yesterday's Wall Street Journal. This isn't to say that such records could not be authenticated, but only to assert that they are not self-authenticating under F.R.E. 902(13) and must be subject to the cross-examination of the sponsoring witness about the choices he or she made when producing such a report. This is not a "record generated by an electronic process or system" but one made by a human being making certain choices. If the government wishes to authenticate such records at trial, F.R.E. 901 should apply, and the government must call a witness that can provide "[t]estimony that an item is what it is claimed to be." F.R.E. 901(b)(1). In the case of the contents of a forensic report created by Cellebrite, the forensic examiner him or herself would seemingly suffice. Denying Mr. Tew the opportunity to cross-examine this examiner, however, prejudices his defense. As such, Mr. Tew objects to the self-authentication of any government exhibits produced utilizing Cellebrite software.

DATED this 22nd day of December, 2023.

<div style="text-align:right">

_/s/  Jason D. Schall_
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com
Attorney for defendant Michael Aaron Tew

</div>

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

_/s/ Jason D. Schall_
Jason D. Schall

## STATEMENT OF SPEEDY TRIAL IMPACT

Pursuant to Judge Domenico's Practice Standard III(C), undersigned counsel notes that this filing has no effect on the speedy trial clock.

_/s/ Jason D. Schall_
Jason D. Schall

## CERTIFICATE OF SERVICE

I hereby certify that on December 22, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Bryan Fields
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov

David Kaplan / Jaime Hubbard
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80203
(720) 689-8909
kaplan@slhlegal.com /
hubbard@slhlegal.com
_Attorneys for Kimberley Ann Tew_

I hereby certify that I will mail or serve the filing to the following participants:

Mr. Michael Aaron Tew (defendant)

_/s/ Jason D. Schall_
Jason D. Schall

Case No. 1:20-cr-00305-DDD Document 465 filed 01/24/23 USDC Colorado pg 1264 of 1346

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

**Kimberley Tew's Response to *Government's Motion In Limine for Ruling* on Admissibility of Evidence (Doc. 344)**

---

    David S. Kaplan of the law firm Stimson LaBranche Hubbard, LLC, files the response to the *Government's Motion In LImine* and states the following:

    <u>**Government's Request**</u>

    The government submitted a request for *in limine* rulings hoping that certain of its exhibits will be found authentic and qualify for a business records exception to the hearsay rule (Doc. #344). It justifies this position by suggesting it will serve the dual purpose of avoiding unjustifiable delay and the inconvenience of producing foundation witnesses. It beseeches the court to enter such orders based on the information provided in the *James* log filed with the court and the evidence received at the hearing conducted on December 19, 2023. The evidence presented to the court is insufficient to support such a ruling and should be denied.

**Legal Authority**

The purpose of a *James* proffer has been recounted in the pleadings filed by the parties prior to the December 19, 2023 hearing (Docs. # 341, #345, #346).  A pre-trial hearing, as contemplated by F.R.E. 104(c), was conducted focusing on whether statements sought to be admitted by the government are not considered hearsay pursuant to F.R.E. 801(d)(2)(E).  To qualify under the rule, as a coconspirator statement, the government must demonstrate a conspiracy existed, the declarant and defendant were members of the conspiracy, and the statements were made in the course and furtherance of the conspiracy. *United State v. Lopez-Guiterrez*, 83 F.3d 1235, 1242 (10th Cir.1996).

Independent of the manner in which a *James* hearing is conducted are rules addressing the requirements of authentication and identification of evidence as a condition precedent to their submission. Article IX F.R.E 901: Authenticating or Identifying Evidence and Rule 902: Evidence that is Self-Authenticating, addresses these concerns.  Relevant to this inquiry, F.R.E. 902 contains the way a certification can be used to; authenticate domestic records of a regularly conducted activity; records generated by an electronic process or system; or data copied from an electronic device, storage medium or file. F.R.E. 902(11), (13), (14). This rule sets out a process by which parties can authenticate records other than through testimony of a foundation witness. *F.R.E. 902 Advisory Committee Note:* 2017 Amendments.  An authenticating document is non-testimonial and therefore its use does not violate a defendant's constitutional right to confrontation. *United States v. Yeley-Davis,* 632 F.3d 673, 680 (10th Cir. 2011).

2

A certificate retains its non-testimonial character when it does not contain an analysis that would constitute out-of-court testimony. *United States v. Brison,* 772 F.3d 1314 (10th Cir. 2014). When evidence is self-authenticating under Rule 902 it satisfies the requirements of F.R.E. 901(a). *United States v. Arnold* 696 Fed. Appx. 903 (10th Cir. 2017).

Under Federal Rules of Evidence 901(a) a foundation to support a finding the item of evidence is what the proponent claims must be established before it can be introduced. *United States v. Dhinsa* 243 F.3d 635 (2nd Cir. 2001). The determination of admissibility should be made by a person with appropriate knowledge. Government witnesses are not able to testify to facts beyond their knowledge concerning electronic evidence such as emails and texts or internal email codes. *United States v. Safavian*, 435 F. Supp. 2d 36 (DC District Court 2006). Evidence establishing the examples contained in F.R.E. 901(b), satisfying the requirement of authenticity should be made by witnesses with knowledge. If the court chooses to make a preliminary finding of admissibility, it does not replace the presentation of authenticating evidence before the jury. Even if a court found sufficient evidence of authenticity in an in-camera proceeding, evidence that would support the same ruling must be presented again to the jury. *Lorraine v. Markel American Insurance Company,* 241 F.R.D. 534,540 (D. Md. 2007). The government must also establish a connection between the offered evidence and the defendant. *United States v. Black,* 767 F.2d 1334 (9th Cir. 1985).

Once authentication of the evidence is established it is still left to determine whether the evidence is inadmissible hearsay or properly admitted pursuant to a

3

hearsay exception. F.R.E. 803(6) establishes the criteria for such an exception involving business records kept in the course of regularly conducted business activity. *United States v. Ary,* 518 F.3d 775 (10th Cir.2008). The proponent of the document must lay the foundation for its admission. *Id* at 786. Computer data compilations may constitute business records. *United States v. Hayes,* 861 F.2d 1225 (10th Cir. 1988). To qualify as a business record exception to the hearsay rule the condition precedent to admission must be shown by the testimony of a custodian or by a certification that complies with Rule 902(11) or (12). Neither were provided at the *James* hearing.

### **Argument**

The government's effort for judicial economy and trial efficiencies are not promoted by using the *James* hearing to authenticate exhibits and establish a business records exception to the hearsay rule. The method of avoiding the calling of unnecessary foundation witnesses to authenticate the types of evidence sought to be introduced by the government is best contained in F.R.E. 902(11), (13) and (14). To date a complete set of certification documents consistent with the rule, have not been provided and a discussion of their efficacy in accomplishing that task not presented to the court. The question remains whether a proffered certificate meets the certification requirements of F.R.E. 902. Content of communication in emails and transmittal data may lack the authentication required by Rule 902. (See *United States v. Penn,* 568 F. Supp. 3d 1135 (D. Colo. 2021).

The *James* hearing conducted in this case was insufficient to establish even preliminary requirements of F.R.E. 901(a). The requirements of a F.R.E. 801(d)(2)(E)

4

exception to the hearsay rule is a preliminary determination appropriately made in the manner the hearing was conducted. The "context" data contained in the *James* log and testified to by the agent is insufficient for the court to make the authentication ruling. In any event, the same, and perhaps more competent testimony, would have to be presented before the evidence was admitted for jury consideration.

WHEREFORE, it is requested the court deny the government's request contained in the *In Limine* motion (Doc. #344).

December 22, 2023.

Respectfully submitted,

*s/ David S. Kaplan*
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone: 720.689.8909
Email: kaplan@slhlegal.com

*Attorney for Kimberley Ann Tew*

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel notes that this filing has no effect on the speedy trial clock.

*s/ David S. Kaplan*
David S. Kaplan

**Certificate of Service**

I certify that on December 22, 2023, I electronically filed the foregoing *Kimberley Tew's Response to Government's Motion In Limine for Ruling on Admissibility of Evidence (Doc. 344)* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com
*Counsel for Michael Tew*

*s/ Brenda Rodriguez*
Brenda Rodriguez

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES,

     Plaintiff,

v.

**MICHAEL AARON TEW**;
**KIMBERLEY ANN TEW**; and
JONATHAN K. YIOULOS,

     Defendants.

---

## ORDER REGARDING ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS

---

At trial, the government intends to introduce various out-of-court statements, allegedly made in furtherance of a conspiracy to commit fraud, against Defendants Michael and Kimberley Tew. The court held a hearing to address whether these statements fall within the hearsay exclusion described in Federal Rule of Evidence 801(d)(2)(E). This order outlines the court's findings on those statements.

## BACKGROUND

On February 3, 2021, a grand jury indicted Defendants Michael Tew, Kimberley Tew, and Jonathan Yioulos on dozens of counts for various offenses including wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. Doc. 83. The government alleges that the defendants defrauded various entities affiliated with N.A.C. Inc. (collectively, "NAC") that provided "freight forwarding solutions, to

include by charter and airlift." *Id.* at 1. NAC also operates as an airline. *Id.*

At the beginning of the alleged fraud, Michael Tew acted as the Chief Financial Officer of NAC; Jonathan Yioulos acted as Director of Finance (and subsequently assumed the role of Controller); and Kimberley Tew was (and remains) married to Michael Tew. *Id.* at 2–3. The government alleges that Mr. Yioulos and Mr. Tew conspired to submit bogus invoices to NAC through various business entities controlled by the defendants. Mr. Yioulos would then approve the invoices and authorize funds to be distributed to those entities. The proceeds of the fraud were then shared among the three defendants. The government alleges that the fraud culminated in NAC paying over $5,000,000 for services that it did not receive.

The government eventually investigated and obtained warrants to track various emails, instant message accounts, and phone numbers allegedly associated with the defendants. *See generally*, Doc. 357 (Exhibit list for *James* Hearing). Several years after the alleged fraud began, the government approached Mr. Yioulos in the summer of 2020 to see if he'd cooperate with the investigation. He did, allowing the government to record several phone calls he then had with Michael Tew. Contemporaneously, the court filed a criminal complaint as to Mr. Tew, and he made his initial appearance on July 9, 2020. Doc. 7. All three defendants were later indicted on February 3, 2021, Doc. 83, and the remaining defendants made their initial appearances shortly thereafter. Docs. 92, 96.

A little more than one year after being indicted, Mr. Yioulos pleaded guilty to two counts and agreed to cooperate with the government, including by potentially testifying at trial in this matter. Doc. 154; Doc. 155 at 3–4. As part of his plea agreement, Mr. Yioulos stipulated to

various facts outlining the alleged fraud and Mr. and Mrs. Tew's involve-
ment. Doc. 155 at 9–18.

After several delays, the parties jointly requested a *James* hearing—
pursuant to *U.S. v. James*, 590 F.2d 575 (5th Cir. 1979) and related
Tenth Circuit precedent—to determine whether certain out-of-court
statements fell within the "co-conspirator" hearsay exclusion under Fed-
eral Rule of Evidence 801(d)(2)(E). *See* Doc. 339. Prior to the hearing,
the government submitted a *James* proffer listing the statements it in-
tends to admit at trial, along with a supporting brief, and both Mr. and
Mrs. Tew responded. Docs. 341, 345, 346. The court held the *James* hear-
ing on December 19, 2023. Doc. 355.

## APPLICABLE LAW

"Rule 801(d)(2)(E) provides that '[a] statement is not hearsay if . . .
[t]he statement is offered against a party and is . . . a statement by a
coconspirator of a party during the course and in furtherance of the con-
spiracy.'" *United States v. Townley*, 472 F.3d 1267, 1273 (10th Cir. 2007)
(internal quotation excluded). Before admitting evidence under this ex-
ception, the court must find, by a preponderance of the evidence, that
(1) a conspiracy existed; (2) that the declarant and the person against
whom the statement is offered were both members of the conspiracy;
and (3) that the statements were made in the course of and in further-
ance of the conspiracy. *See United States v. Owens*, 70 F.3d 1118, 1123
(10th Cir. 1995).

"Under Tenth Circuit law, a district court can only admit coconspira-
tor statements if it holds a James hearing or conditions admission on
forthcoming proof of a predicate conspiracy through trial testimony or
other evidence." *United States v. Townley*, 472 F.3d 1267, 1273 (10th
Cir. 2007) (internal quotation excluded). The Tenth Circuit has a "strong

- 3 -

preference" for holding a *James* hearing rather than addressing the issue at trial. *Id.*

## DISCUSSION

The government's *James* log comprises 376 out-of-court conversations—primarily SMS, instant messenger, or email conversations—that it seeks to admit. In response, Defendants contest only a fraction of these conversations as falling outside Rule 801(d)(2)(E)'s scope. Most of these objections fall into the following categories: (1) statements sought to be admitted against Mrs. Tew that were made by others and before she joined the conspiracy; (2) one-sided conversations with a potentially unknown recipient; (3) conversations including statements made by Mr. Yioulos after he had left the conspiracy; and (4) various conversations, primarily between Mr. and Mrs. Tew, regarding account transactions, cryptocurrency transactions, gambling, and purchases, including for a car.

## I.     The Existence of a Conspiracy

"'[C]onspiracy' as an evidentiary concept, embodied in rule 801(d)(2)(E), and 'conspiracy' as a concept of substantive criminal law are not coterminous." *United States v. Kendall*, 665 F.2d 126, 130 (7th Cir. 1981); *see also United States v. Buchanan*, 787 F.2d 477, 482 (10th Cir. 1986) (citing favorably to *Kendall* and holding that a conspiracy for purposes of Rule 801(d)(2)(E) need not be a "federal conspiracy"). "To be admissible under Fed. R. Evid. 801(d)(2)(E), the conspiracy at issue need not be charged and need not even be criminal." *United States v. DaVita Inc.*, 592 F. Supp. 3d 970, 980 (D. Colo. 2022) (noting lack of Tenth Circuit precedent on this precise issue and following out-of-circuit decisions). "The requirements for being a co-conspirator for purposes of Rule 801(d)(2)(E) are likewise not the same as in a substantive criminal

- 4 -

context. Co-conspirators for Rule 801(d)(2)(E) purposes need only be engaged in the same common plan or joint enterprise." *Id.*

As a threshold matter, Mr. and Mrs. Tew do not contest that the government has brought forth sufficient evidence to show that (1) there was a conspiracy for purposes of Rule 801(d)(2)(E) and that (2) they were both members of that conspiracy (or conspiracies), at least for certain periods of time.[1] The evidence provided by the government supports these conclusions.

"In making a preliminary factual determination under Rule 801(d)(2)(E), courts may examine the hearsay statements sought to be admitted. There must also be some independent evidence linking the defendant to the conspiracy—that is, evidence other than the proffered co-conspirator statements themselves—but that evidence need not be substantial." *United States v. Otuonye*, 995 F.3d 1191, 1204 (10th Cir. 2021) (internal quotations and alterations omitted). "Testimony of a government agent regarding his interactions or conversations with coconspirators is adequate independent evidence." *United States v. Stein*, 985 F.3d 1254, 1269 (10th Cir. 2021), *cert. denied*, 142 S. Ct. 425 (2021).

Here, there is overwhelming evidence that a conspiracy existed among Mr. Tew, Mrs. Tew, and Mr. Yioulos to defraud NAC. First, the statements themselves provide ample evidence of this conspiracy. As but

---

[1] *See* Doc. 345 (Mr. Tew's response, stating, "The government's proffer is extensive and taken as a whole could be considered to present "substantial, independent evidence" sufficient to establish by a preponderance of the evidence that multiple conspiracies existed (wire fraud and money laundering), and that Michael Tew, Jonathan Yioulos, and Kimberley Tew were a part of those conspiracies."); *see also* Doc. 346 (Mrs. Tew listing specific objections to certain *James* log entries but apparently not to the existence of a conspiracy, at least for certain periods of time).

- 5 -

a few examples, several statements included detailed instructions regarding various transactions relating to the NAC entities and allegedly fraudulent invoices. *See, e.g.*, Doc. 341-1 entries 275, 287, 298, 303, 308, 312. These statements corroborate the government's independent evidence, submitted as exhibits for purposes of the *James* hearing, that the invoices were fraudulent and used to transfer money from NAC to various business entities controlled by the defendants. There are also several more colorful statements strongly implicating the defendants' participation in the alleged fraud. *See id.* entries 59, 73, 85, 107, 115 (referencing a potential FBI investigation of the alleged fraud), 174, 265, 317.

The government also provided substantial evidence independent of the statements themselves. *Stein*, 985 F.3d at 1269 (noting that such evidence "need not be substantial"). This includes bank records (submitted as evidence for purposes of the *James* hearing), security camera footage of the Tews making bank withdrawals, and the stipulated facts in Mr. Yioulos's plea agreement. Finally, the government took witness testimony from the I.R.S. agent in charge of the investigation during the *James* hearing, and her thorough explanations of the alleged fraud (including her interactions with Mr. Yioulos) provide ample evidence to make this preliminary finding. *See Stein*, 985 F.3d at 1269 ("Testimony of a government agent regarding his interactions or conversations with coconspirators is adequate independent evidence."). The court therefore finds that the government has proven, by a preponderance of the evidence, a conspiracy among Mr. Tew, Mrs. Tew, and Mr. Yioulos sufficient for purposes of invoking Rule 801(d)(2)(E).

## II.   Statements Made Prior to Mrs. Tew's Membership in the Conspiracy

Mrs. Tew argues that the government cannot admit conversations that occurred between Mr. Tew and Mr. Yioulos prior to her joining the

- 6 -

conspiracy. But this is contrary to Tenth Circuit law. *United States v. Brown*, 943 F.2d 1246, 1255 (10th Cir. 1991) (the "prevailing view among the circuits is that previous statements made by co-conspirators are admissible against a defendant who subsequently joins the conspiracy. We join that holding."). This argument, therefore, lacks merit so long as *Mr. Tew and Mr. Yioulos*, the declarants for purposes of these statements, were members of the conspiracy when the statements were made even if Mrs. Tew was not yet a member of the conspiracy. Mr. Tew and Mr. Yioulos were conspirators when the statements were made, so those statements fall within the scope of Rule 801(d)(2)(E) even as applied against Mrs. Tew.

### III.    One-Sided Conversations with Allegedly Deleted Messages

Mr. and Mrs. Tew both object to several conversations in the *James* log that, they argue, involved messages that were never received by the intended recipient. Most of these messages appear to contain one-sided messages in what was, at some time, a two-sided conversation. As the government's I.R.S. agent testified at the *James* hearing, context clues from the recovered side of the messages strongly suggest that the sending party was engaging in a conversation with the recipient. *See, e.g.*, Doc. 341-1, entry 108 (messages purportedly sent by Mr. Yioulos to Mrs. Tew with Mr. Yioulos expressing surprise and asking questions to apparent responses not recovered and not included in the conversation).

In any event, "Rule 801(d)(2)(E)'s text makes clear that both the declarant and the person against whom the statement is offered must be members of the conspiracy. Notably omitted from this requirement is any required connection between the conspiracy and the person to whom the statement is made." Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 6778 (2023 ed.). There is no real dispute

that Mr. Yioulos—the declarant for purposes of these statements—was
a co-conspirator at the time and that the statements are being offered
against other co-conspirators: Mr. and Mrs. Tew.

The only question, then, for purposes of Rule 801(d)(2)(E), is whether
these statements were made "in furtherance" of the conspiracy. As an
initial matter, Mr. and Mrs. Tew's only argument appears to be that the
apparent lack of a recipient renders these messages inherently "not in
furtherance" of the conspiracy. But that does not matter because the
question is not whether the statement actually furthered the conspiracy,
but whether it was meant to, *United States v. Reyes*, 798 F.2d 380, 384
(10th Cir. 1986), and the recipient of such messages need not even be a
member of the conspiracy:

> The black-letter principle is that statements made in the course
> of a discussion between a coconspirator and a third party who is
> a stranger to the conspiracy are admissible under Rule
> 801(d)(2)(E), provided that they meet the Rule's foundational re-
> quirements. That is true regardless of whether the third party is
> a tipster, an informant, an undercover officer, or a mere acquaint-
> ance.

*United States v. Piper*, 298 F.3d 47, 53 (1st Cir. 2002). And the substance
of these one-sided conversations were certainly meant to further the con-
spiracy. *See, e.g.*, Doc. 341-1, entry 79 (Mr. Yioulos telling the recipient
to "keep the excess" and that "We have no money in the company and
I've sent a total of $165k" to another party), entry 85 (Mr. Yioulos alleg-
edly telling Mrs. Tew that various transactions will "look weird"; that
funds returned from a "sandhill account will make waves as well"; that
"We have no cash at the company"; and "I'm goign [sic] to jail. I really
think I am . . . Cause this is goign [sic] to blow up. I can't send money
and you don't have money to send him either"). Moreover, the govern-
ment did provide evidence, including its witness testimony at the *James*

- 8 -

hearing, that the recipient's messages were deleted prior to being ob-
tained via a search warrant. *See also id.*, entries 35, 36 (Mr. Yioulos tell-
ing Mr. and Mrs. Tew to "delete texts from both phones" and to "delete
all text records."). In light of all this, and as addressed in the statement-
by-statement analysis below in Section VI, these statements fall within
the scope of Rule 801(d)(2)(E).

## IV.  Mr. Yioulos's Statements Made After He Left the Con-spiracy and Statements Made by Non-Conspirators

Mr. and Mrs. Tew also object to admitting statements made by Mr.
Yioulos after he left the conspiracy and certain statements made by a
third party, "M.M.," who was never a co-conspirator, as the government
concedes. The statements by Mr. Yioulos include those made in recorded
phone calls once he agreed to cooperate with the government. As the
government admits, Mr. Yioulos was no longer a "co-conspirator" at that
point (and M.M. never was), so both of their statements, if offered for
their truth, would appear to fall within the hearsay rule and be ex-
cluded.[2]

But "[t]estimony which is not offered to prove the truth of an out-of-
court statement, but is offered instead for relevant context or back-
ground, is not considered hearsay." *United States v. Hinson*, 585 F.3d
1328, 1336 (10th Cir. 2009); *see also United States v. Smith*, 816 F.3d
479, 481 (7th Cir. 2016) (affirming admission of statements made by in-
formant on recorded telephone call for the non-hearsay purpose of
providing context for the defendant's statements). Applied here, much
of Mr. Yioulos's and M.M.'s statements are not offered for truth. For in-
stance, in entry 376, Mr. Tew's statements dominate the conversation,

---

[2] Neither Mr. nor Mrs. Tew, however, dispute that Mr. Tew was a co-
conspirator vis-à-vis Mrs. Tew at this time and that *his* statements
therefore fall within the co-conspirator exclusion of the hearsay rule.

and Mr. Yioulos's statements are simply reiterating that he is in a meeting and cannot pay Mr. Tew at that moment (statements which, in fact, may have been false). The government is not seeking to prove Mr. Yioulos was in a meeting, but his statements provide necessary context for Mr. Tew's responses. This is similar to an earlier conversation Mr. Tew had with M.M. in which Mr. Tew, not M.M., dominates the conversation. Doc. 341-1, entry 96.

The government also seeks to admit two recorded telephone conversations between Mr. Tew and Mr. Yioulos (both the audio and the transcriptions), listed at entries 374 and 375. While the *James* log provides a summary of these calls, it remains unclear whether the government seeks to admit the entirety of the calls, or just some sections. And while many of Mr. Yioulos's statements appear to be non-hearsay and contextual, and thus presumptively admissible, I am not entirely convinced that is true of *every* statement made in the call. "Invoking the word 'context' does not permit an end-run around the hearsay rules such that the government may smuggle into evidence all interviewer statements." *United States v. Collins*, 575 F.3d 1069, 1074 (10th Cir. 2009) (finding that admission of entire transcript was harmless error but casting doubt on admissibility of entire transcript if non-conspirator "dominates" the conversation). Because this is no longer an issue implicating the purpose of a *James* hearing, it is appropriate to leave final resolution of this issue for motions in limine or trial objections.

## V. Various Statements Involving Purchases, Account Transactions, and Gambling

Mr. and Mrs. Tew also object to admitting various statements made solely between them purportedly concerning the family's personal finances and purchases, including gambling and cryptocurrency

transactions. These statements, they argue, were not "in furtherance" of the conspiracy and therefore fall outside of Rule 801(d)(2)(E)'s exclusion.

As a threshold issue, the parties seem to agree that, if any statements made solely between Mr. and Mrs. Tew are not "in furtherance" of the conspiracy, those statements are inadmissible as privileged, confidential, spousal communications. *See United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984). I will therefore not admit statements solely between the Tews if they were not made in furtherance of a conspiracy.

As the government notes, however, the Tenth Circuit reads the "in furtherance" requirement quite broadly, encompassing many different types of statements. Most relevant here, (A) statements promoting the objectives of the conspiracy, including statements that indicate payments or demands for payment to accomplish activities of the conspiracy;  (B) statements explaining events of importance to the conspiracy; (C) statements made between coconspirators which provide reassurance, which serve to maintain trust and cohesiveness among them or which inform each other of the current status of the conspiracy; (D) discussions of future intent that set transactions to the conspiracy in motion; (E) statements that conceal the objective of the conspiracy; (F) statements to co-conspirators regarding potential investigation, apprehension, or punishment, and (G) statements between conspirators regarding the distribution of the proceeds can all be "in furtherance" for purposes of this rule. *See United States v. Rutland*, 705 F.3d 1238, 1252 (10th Cir. 2013); *United States v. Morgan*, 748 F.3d 1024, 1036-37 (10th Cir. 2014) (finding that call to set up meeting for dividing proceeds was in furtherance of the conspiracy for purposes of Rule 801(d)(2)(E)); *see also* Doc. 341 at 14-16 (government's brief collecting cases on this issue).

Because these statements are highly context dependent, they are ad-dressed statement-by-statement below in Section VI.

## VI.     Findings on Objected-To Statements

Given this legal backdrop, below are the court's admissibility find-ings as to all objected-to statements in the government's *James* log. For the "legal basis" column, the numbers correspond to the aforementioned lettered categories (described in Section V) of statements made "in fur-therance" of a conspiracy (*i.e.*, A, B, C, D, E, F and/or G). The legal basis column also refers back to earlier sections of this order addressing cer-tain categories of statements, such as those made by non-conspirators or those made prior to Mrs. Tew joining the conspiracy.

| *James* Log Entry | "In Furtherance" or Not? | Legal Basis |
|---|---|---|
| 376 | In Furtherance as to Michael Tew's state-ments | A, B, D, F, G. *See also* Section IV, *supra*. Mr. Yioulos's statements are non-hearsay con-textual statements. |
| 375 | In Furtherance as to Michael Tew's state-ments | A, B, D, F, G. *See also* Section IV, *supra*. |
| 374 | In Furtherance as to Michael Tew's state-ments | A, B, D, F, G. *See also* Section IV, *supra*. |
| 370 | In Furtherance | A, B, C, F, G |
| 345 | In Furtherance | A, B, D |
| 301 | In Furtherance | A, B, D, F, G |
| 300 | Not in Furtherance | |
| 284-86 | In Furtherance | A, B, D, F, G |

| *James* Log Entry | "In Furtherance" or Not? | Legal Basis |
|---|---|---|
| 278 | Not in Furtherance | |
| 268, 270 | Not in Furtherance | |
| 265 | In Furtherance | A, B, C, E, F, G |
| 247 | Not in Furtherance | |
| 205 | In Furtherance | B, E, F, G |
| 203 | Not in Furtherance | |
| 202 | In Furtherance | A, B, G |
| 198 | In Furtherance | B, E, F, G |
| 191 | Not in Furtherance | |
| 179 | In Furtherance | A, B, D, E, G |
| 167 | In Furtherance | A, B, D, E |
| 163 | Not in Furtherance | |
| 157 | Not in Furtherance | |
| 155 | In Furtherance | A, B, D, E |
| 153 | In Furtherance | A, B, D, E |
| 152 | In Furtherance | A, B, D, E; M.M's statements are non-hearsay contextual statements. *See* Section IV, *supra*. |
| 150 | Not in Furtherance | |
| 144 | Not in Furtherance | |
| 138 | Not in Furtherance | |

- 13 -

| *James* Log Entry | "In Furtherance" or Not? | Legal Basis |
|---|---|---|
| 108, 115, 118 | In Furtherance | A, B, C, D, E, F, G; *see also* Section III, *supra*. |
| 96 | In Furtherance | A, B, D, E. M.M's statements are non-hearsay contextual statements. *See* Section IV, *supra*. |
| 85 | In Furtherance | A, B, C, D, E, F, G; *see also* Section III, *supra*. |
| 79 | In Furtherance | A, B, C, D, E, F, G; *see also* Section III, *supra*. |
| 69 | In Furtherance | A, B, C, F, G. M.M's statements are non-hearsay contextual statements. *See* Section IV, *supra*. |
| 56 | In Furtherance | A, B, E, G; *see also* Sections III, IV, *supra*. |
| 37 | Not in Furtherance | |
| 1-22, 28, 34, 35, 46, 51 | In Furtherance | A, B, C, D, E, F, G. These also fall within Rule 801(d)(2)(E) as applied to Mrs. Tew. *See* Section II, *supra*. |

Note that all of the statements above found *not* to be "in furtherance" of the conspiracy are presumptively inadmissible because those particular statements were made only between spouses—Mr. and Mrs. Tew—

- 14 -

and implicate the spousal confidential communications privilege. *See United States v. Neal*, 743 F.2d 1441, 1447 (10th Cir. 1984). Given the parties' agreement that these statements are inadmissible if not made in furtherance of a conspiracy, I will not admit those statements.

On the other hand, statements found to be in furtherance of the conspiracy are not automatically admissible. For instance, the court has concerns that some of these statements may run afoul of Rule 403, particularly if they become cumulative or distracting for the jury. Defendants may raise such objections before or during the trial if appropriate.

## CONCLUSION

The court's evidentiary rulings on the objected-to statements in the government's *James* log are listed above. The court will resolve any remaining evidentiary objections, including those that may implicate the above statements, *in limine* or at trial.

DATED: December 29, 2023          BY THE COURT:

Daniel D. Domenico
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. MICHAEL AARON TEW, and
2. KIMBERLY ANN TEW, a/k/a Kimberly Vertanen,

     Defendants.

---

### ATLANTIC UNION BANK'S MOTION TO QUASH SUBPOENA

---

Atlantic Union Bank ("AUB"), by and through its undersigned counsel, hereby submits the following as its Motion to Quash Subpoena and, in support thereof, states as follows:

### FACTUAL BACKGROUND

On December 18 and 19, 2023, the government attempted to serve a subpoena *ad testificandum* on AUB to have a custodian of records appear on February 5, 2024 at 9am to testify in this criminal case. (Attached hereto as **Exhibit 1**.) The government emailed and mailed the subpoena to AUB, but did not personally serve its registered agent. According to Assistant United States Attorney Bryan Fields, the government requires testimony from AUB to authenticate Exhibits 312 and 363 (as marked for the recent *James* hearing). Exhibits 312 and 363 are duplicates of a December 2018 statement from Access National Bank[1] for account holder Political Media, Inc. ("PM"). (Doc. No. 344-1 at 3.) AUB already provided a declaration compliant with F.R.E. 902(11) and 803(6), which will suffice to establish the foundation of

---

[1] AUB acquired Access National Bank in 2019.

Exhibits 312 and 363 as a business record. (Attached hereto as **Exhibit 2**.) Moreover, both defendants have already conceded that such declaration is non-testimonial and, therefore, does not implicate the Confrontation Clause. (Doc. No. 359 at 1; Doc. No. 360 at 2–3).

The monthly account statement at Exhibits 312 and 363 reflects: (1) an incoming ACH from National Air dated December 10, 2018 in the amount of $21,250; and (2) an outgoing domestic wire to Michael Tew dated December 10, 2018 in the amount of $15,500. (Doc. No. 341-1 at 56–57.) The indictment does not allege that either transaction constitutes a specific act of wire fraud. (Doc. No. 83.) However, it appears that the government will argue that the transactions constitute intrinsic evidence of the conspiracy to commit wire fraud. (*See* Doc. No. 341-1 at 56 (citing Indictment ¶¶ 11, 12, 13, 15, 19, 20, & 22).)

On December 12, 2023, the government filed a motion *in limine* requesting that the Court rule on the admissibility of certain exhibits under F.R.E. 901 and 803(6) or 801(d)(2)(E) of hundreds of documents—including its Exhibits 312 and 363. (Doc. No. 341.) The government indicated to undersigned counsel that it will withdraw its subpoena to AUB in the event that the Court grants the government's motion. The government also urged AUB to file its motion to quash as soon as possible. But the government's motion requests a ruling on <u>hundreds</u> of documents, including records with more complicated foundational requirements than Exhibits 312 and 363 such as emails and Cellebrite forensic reports. And (at least according to the responses), the government did not provide all the information that the Court may require to issue a ruling.

AUB would be substantially burdened by compliance with the government's subpoena. (*See* Declaration of Julie Roland, attached hereto as **Exhibit 3**.) AUB is chartered in Virginia and

2

does not conduct business or maintain offices or facilities in the state of Colorado. (*Id.* ¶ 1.) AUB receives, on average, more than ten subpoenas per week. (*Id.* ¶ 4.) Its team responsible for researching records for production in response to subpoenas consists of four individuals, all of whom work and live in the Commonwealth of Virginia. (*Id.* ¶¶ 2 & 3.) Only two of the individuals are supervisors with experience serving as witnesses for records-authentication purposes. (*Id.* ¶ 2.) Given the distance between Richmond and Denver, the government's subpoena will require the absence of one of those two supervisors for two to three days in order to provide roughly 30 seconds of live testimony. (*Id.* ¶ 5.) Such an absence will create a significant burden for AUB. (*Id.* ¶ 6.)

## LEGAL ARGUMENT

Federal Rule of Criminal Procedure 17(a) provides authority for the issuance of a subpoena *ad testificandum*, which must be personally served on an officer or registered agent of a corporation. Fed.R.Crim.P. 17(d); *see also United States v. Sandoval*, No. 10-20243-CR, 2010 WL 2757188, at *2 (S.D. Fla. July 13, 2010); *United States v. Simmons*, 515 F. Supp. 3d 1359, 1362 (M.D. Ga. 2021); *United States v. Venecia*, 172 F.R.D. 438, 438 (D. Or. 1997).[2]

---

[2] Though a minority of courts recently have dispensed with traditional requirement for personal service of a subpoena—at least in civil matters under Fed.R.Civ.P. 45, see 9A Fed. Prac. & Proc. Civ. § 2454 (3d ed.)—AUB urges this Court not to do so, as it encourages abuse of the subpoena power. The government does not have to tender witness fees with its subpoena and requires that the witness purchase refundable airfare. Ex. 1 at 2. The only thing that deters the government from abusing the subpoena power is the requirement for personal service. If the government cannot be troubled to perfect service by identifying AUB's registered agent and hand delivering

3

The Court may quash a subpoena *ad testificandum* where compliance would be "unreasonable or oppressive." *United States v. Penn*, No. 20-CR-00152-PAB, 2021 WL 4943647, at *1 (D. Colo. Oct. 22, 2021). Neither the United States Supreme Court nor the Tenth Circuit Court of Appeals has further defined "unreasonable or oppressive" with respect to a Rule 17(a) subpoena to testify at a criminal trial. *United States v. Riego*, 627 F. Supp. 3d 1254, 1258 (D.N.M. 2022). However, the Supreme Court has stated that the reasonableness of a Rule 17(c) subpoena *duces tecum* depends on the context. *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 299–300 (1991). In ruling on motions to quash Rule 17(a) trial subpoenas, courts have considered the relevance, materiality, and admissibility of the testimony, *United States v. Santistevan*, No. 11-CR-00406-CMA, 2012 WL 2875949, at *2 (D. Colo. July 12, 2012); as well as the burden to the witness, *Riego*, 627 F. Supp. 3d at 1261. It is proper to quash a subpoena for testimony that is either "cumulative or immaterial." *United States v. Rosenschein*, No. CR 16-4571 JCH, 2020 WL 4275670, at *1 (D.N.M. July 24, 2020). Chief Judge DeGiusti, for instance, granted a motion to quash a trial subpoena stating: "There is no reason to waste trial time calling [the witness] to testify about narrow facts that can be established with documentary evidence." *United States v. Keogh*, No. CR-17-290-D, 2022 WL 129443, at *4 (W.D. Okla. Jan. 12, 2022).

As a threshold matter, this Court should quash the government's subpoena because the government did not personally serve the subpoena on AUB's registered agent or any other suitable representative.

---

a subpoena to that person, then it stands to reason that the government itself does not deem the testimony material to its case.

4

Additionally, AUB respectfully requests that the Court quash the subpoena as unreasonable and oppressive. The government intends to call the AUB witness to authenticate a *single* record with a straightforward foundation that can be established with the declaration at Exhibit 2. The relevance of that testimony is marginal at best. <u>The government did not specifically charge the defendants with a count of wire fraud with respect to the transactions in the AUB record</u>. (*See generally* Doc. No. 83.) To the degree that the AUB record may constitute intrinsic evidence of the conspiracy to commit fraud, it is certainly cumulative given that the government must present evidence of at least 39 specific charges of wire fraud. Indeed, this Court already deemed the evidence of the conspiracy to commit fraud "overwhelming" and noted "concerns" that presentation of all such evidence "may run afoul of Rule 403." (Doc. No. 361 at 5 & 15.)

AUB appreciates the government's commitment that it will voluntarily withdraw the subpoena in the event that the Court grants the government's motion *in limine*. However, regardless of the Court's ruling on that motion, the government's subpoena to AUB is unreasonable and oppressive and should be quashed. AUB cannot provide a witness to testify to any fact not contained in its declaration. At most, AUB's witness would provide 30 seconds of testimony. It is absolutely a waste of AUB's time and resources to provide live testimony where not required. *United States v. Yeley-Davis*, 632 F.3d 673, 679 (10th Cir. 2011); *see also* Doc. No. 359 at 1; Doc. No. 360 at 2–3.

WHEREFORE, AUB respectfully requests that this Court enter an Order quashing the subpoena and for any further relief the Court deems just and proper under the circumstances.

5

Respectfully submitted this 9th day of January, 2024.

KUTAK ROCK LLP

By: _s/  Lisa M. Saccomano_
        Lisa M. Saccomano (#45105)
        2001 16th Street, Suite 1800
        Denver, CO  80202
        Telephone:  (303) 297-2400
        Facsimile:  (303) 292-7799
        Email: lisa.saccomano@kutakrock.com

ATTORNEYS FOR ATLANTIC UNION BANK

**STATEMENT OF SPEEDY TRIAL IMPACT**

To the best of counsel's knowledge, this motion will have no impact on the speedy trial clock.

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

s/ *Lisa M. Saccomano*
Lisa M. Saccomano

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2024, I electronically served the foregoing **ATLANTIC UNION BANK'S MOTION TO QUASH SUBPOENA** via the ECF filing service upon all counsel of record.

s/ *Lisa M. Saccomano*
Lisa M. Saccomano

# EXHIBIT 1

AO 89  (Rev. 08/09) Subpoena to Testify at a Hearing or Trial in a Criminal Case

# UNITED STATES DISTRICT COURT

for the

District of Colorado

| | | | |
|---|---|---|---|
| United States of America | ) | | |
| v. | ) | | |
| 1. Michael Tew | ) | Case No. | 20-cr-00305-DDD |
| 2. Kimberley Ann Tew | ) | | |
| _Defendant_ | ) | | |

## SUBPOENA TO TESTIFY AT A HEARING OR TRIAL IN A CRIMINAL CASE

To:   Atlantic Union Bank
      Custodian of Records – Access Bank
      4300 Cox Road
      Glen Allen, VA 23060

   **YOU ARE COMMANDED** to appear in the United States district court at the time, date, and place shown below to testify in this criminal case.  When you arrive, you must remain at the court until the judge or a court officer allows you to leave.

| Place of Appearance: | UNITED STATES DISTRICT COURT 901 19th Street Denver, CO  80294 | Courtroom No.: | A-1002 |
|---|---|---|---|
| | | Date and Time: | 02/05/2024 9:00 am |

   You must also bring with you the following documents, electronically stored information, or objects _(blank if not applicable):_

.

Date:   12/15/2023

                                        _CLERK OF COURT_, Jeffrey P. Colwell

                                        s/Nicholas Richards
                                        _Signature of Clerk or Deputy Clerk_

The name, address, e-mail, and telephone number of the attorney representing _(name of party)_
_____ United States of America _____ , who requests this subpoena, are:

Upon receipt of this Subpoena, please contact
Witness Coordinator, Sherri Reid, at
(303) 454-0281 or e-mail her with contact
Information at mail to: sherri.reid@usdoj.gov

Bryan Fields
Assistant United States Attorney
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: 303-454-0100
Email: Bryan.Fields3@usdoj.gov

# U.S. DEPARTMENT OF JUSTICE
# INSTRUCTIONS FOR FACT WITNESSES APPEARING ON BEHALF OF THE UNITED STATES GOVERNMENT
**(Not Applicable to Federal Employees)**

**<u>READ</u> THE INFORMATION CONTAINED ON THIS FORM BEFORE YOUR COURT APPEARANCE. PLEASE CALL THE INDIVIDUAL(S) LISTED BELOW FOR INFORMATION REGARDING TRAVEL ARRANGEMENTS AND SPECIFIC ENTITLEMENTS. IF YOU HAVE A MEDICAL CONDITION OR FAMILY SITUATION THAT REQUIRES SPECIAL CONSIDERATION, PLEASE ADVISE THE INDIVIDUAL LISTED BELOW <u>AS SOON AS POSSIBLE</u>.**

**CONTACT: Sherri Reid, Fact Witness Coordinator (888) 751-4450 or (303) 454-0281, Sherri.Reid@usdoj.gov**

## *≈ VERIFY YOUR ATTENDANCE ≈*

On the last business day <u>BEFORE</u> you travel to court, call the above number to verify that your attendance is required. This may prevent a wasted trip in the event the trial date is changed.

## *≈ APPEARANCE IN ANOTHER CITY ≈*

If you are required to travel to another city to appear in court, immediately contact the individual listed above and request instructions. Any amount advanced to you will be deducted from your fees and allowances.

## *≈ REIMBURSEMENT OF EXPENSES AND ATTENDANCE FEES ≈*

A. **ATTENDANCE FEE:** You will be paid a fee of $40 per day, including travel days.

B. **TRANSPORTATION:** Call the individual listed above to obtain information on transportation. Reimbursement will be made for travel by the least expensive method reasonably available to you. The following rules apply to transportation expenses:

1. **Local Travel:** The recommended method of travel in the local area of court is transit bus/subway;

2. **Privately Owned Vehicles (POV):** You will be reimbursed the following amounts:

Motorcycle <u>$0.635</u> per mile Automobile <u>$0.655</u> per mile Airplane <u>$1.74</u> per mile

In addition to the above mileage allowance, necessary tolls, parking and other fees may be reimbursed. You must keep a record of your odometer readings if you travel by motorcycle or automobile. If two or more witnesses travel in the same vehicle, only one reimbursement for mileage can be made. **IF POV EXPENSES, INCLUDING MILEAGE, TOLLS, PARKING AND OTHER ASSOCIATED COSTS, ARE GREATER THAN COACH CLASS AIRFARE, YOU WILL BE RESPONSIBLE FOR THE DIFFERENCE.**

3. **Common Carrier:** If you are located outside the local court area, **CALL THE INDIVIDUAL LISTED ABOVE FOR INSTRUCTIONS.** Train, bus or airfare will be reimbursed at COACH; or other, Non-PREMIUM rate. Reimbursement **WILL NOT** be made for First Class accommodations, "Frequent Flyer" tickets, or charter service. **DO NOT** purchase non-refundable tickets. If your appearance date changes or is cancelled, you **WILL NOT** be reimbursed for non-refundable tickets. If you have any questions concerning transportation arrangements, please contact the individual(s) listed above.

C. **MEALS**: If it is necessary for you to remain away from home **overnight**, you will receive the following daily meal allowances:

$<u>39.50</u> for each travel day PLUS $<u>79.00</u> for each full day at court

D. **LODGING:** If it is necessary for you to remain away from home **overnight**, you will be reimbursed for the **ACTUAL COST** of your hotel/motel room, which may not exceed <u>$201.00 October 2023, $153.00 November 2023 through December 2023, $169.00 January 2024 through March 2024, $201.00 April 2024 through September 2024,</u> per night, including tax.

## *≈ YOU MUST RETAIN RECEIPTS ≈*

**ALL CLAIMS FOR PARKING MUST BE SUPPORTED BY A RECEIPT. OTHER EXPENSES EQUAL TO $25 OR MORE MUST BE SUPPORTED BY A RECEIPT, WITH THE EXCEPTION OF MEALS AND MILEAGE.**

## *≈ DISMISSAL ≈*

When you are advised that your attendance is no longer required, you should request information regarding the payment of the fees and allowances outlined above. The Fact Witness Coordinator will meet with you to complete the Fact Witness Voucher. Please have expense receipts with you to be submitted with the Fact Witness Voucher. The Voucher will be submitted to the U.S. Marshals Service for payment. The U.S. Marshals Service will process the Voucher and **MAIL** the payment to you. If you require funds to return home, you must bring this fact to the attention of the Fact Witness Coordinator before you testify, who will notify the U.S. Marshals Service.

Form OBD-2 (DEN-Revised 10-2023)

# EXHIBIT 2

## DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

**Subpoena #:** 20-0660

**Company Name:**   ATLANTIC UNION BANK

I,   WILLIAM VAUGHAN   , declare that I am/was employed by   ATLANTIC UNION BANK
and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

STATEMENTS

CHECKS

DEPOSITS

SIGNATURE CARDS

RESOLUTIONS

WIRES

LOAN PAPERWORK

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

    A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

    B. Kept in the course of the entity's regularly conducted activity; and

    C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_William Vaughan_                               WILLIAM VAUGHAN
**Signature**                                   **Printed name**

      7-27-20
**Date:**

# EXHIBIT 3

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW, and
2. KIMBERLY ANN TEW, a/k/a Kimberly Vertanen,

      Defendants.

---

**DECLARATION OF JULIE A. ROLAND PURSUANT TO 28 U.S.C.§ 1746**

---

1.      I am an employee of Atlantic Union Bank ("AUB") and have personal knowledge of the facts in this Declaration. AUB is a Virginia-chartered bank that does not conduct business or maintain offices or facilities in the State of Colorado.

2.      The team at AUB responsible for researching records for production in response to subpoenas *duces tecum* (the "Regulatory Processing-Subpoenas" team) consists of four individuals.  Of those four individuals, two are supervisors with experience serving as witnesses for records-authentication purposes (among other numerous responsibilities).

3.      All members of the Regulatory Processing-Subpoenas team work and reside in the Commonwealth of Virginia.

4.      AUB receives, on average, more than 10 subpoenas per week, which are handled by the Regulatory Processing-Subpoenas team.

5.      For one of the two supervisor witnesses to travel to Denver, Colorado for a court appearance in this matter would require that supervisor to be away from work for at least two full days, likely three, based on the length of time it takes to travel from Richmond, Virginia to Denver, Colorado.

6.      Such an absence will cause significant burden to AUB's Regulatory Processing-Subpoenas team.

      I verify under penalty of perjury that the foregoing is true and correct. Executed on January 8, 2024.

                                            *s/ Julie A. Roland*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

   1. **MICHAEL AARON TEW, and**
   2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S RESPONSE TO ATLANTIC UNION BANK'S MOTION TO QUASH SUBPOENA

---

Last night, the defendants provided final notice that they intend to exercise their right to trial. Moreover, they confirmed that they remain uncompromising in their refusal to stipulate or otherwise productively confer regarding the government's Motion in Limine seeking a finding that certain business records the government intends to offer at the upcoming trial (a) are authentic under Rules 902(11) and 902(13), and (b) are admissible non-hearsay under Rule 803(6) of the Federal Rules of Evidence. *See* ECF No. 344.

As previously argued, the government's request for an order *in limine* is consistent with the Federal Rules, which expressly designed these certifications around the need to "eliminate unjustifiable expense and delay" at trial. Fed. R. Evid. 102. *See United States v. Komasa*, 767 F.3d 151, 155 (2d Cir. 2014) (describing procedure created as a result of 2000 amendments to the Rules of Evidence with goal

1

of avoiding "the expense and inconvenience of producing time-consuming foundation witnesses").

After the government filed its Motion in Limine (which remains pending), one of the subpoenaed custodians of records, Atlantic Union Bank (AUB), filed its own Motion to Quash. ECF No. 363. AUB argues that the law does not require live, in-person testimony from them (and, by extension, any of the total of the 20 custodians who will otherwise need to testify), absent either (a) a stipulation from the defense or (b) a ruling from the Court regarding the admissibility of business records.

As to this argument, the government agrees. It respectfully renews its plea for an order *in limine* making a finding that the business records the government intends to offer at the upcoming trial are authentic under Rules 902(11) and 902(13) and admissible non-hearsay under Rule 803(6). ECF No. 344.[1] Entering the requested order—one that is authorized and encouraged by the Federal Rules and the relevant caselaw—would in no way prejudice the defendants, who retain the right to issue their own subpoenas to any custodians they seek to examine or otherwise use to rebut the government's offers of proof.

The government has tendered or will tender shortly Rule 902(11)/902(13) declarations for all of the respective records it intends to offer under Rule 803(6) at

---

[1]    As previously briefed, the government understands that it needs to lay proper foundation for the <u>content</u> of communications contained within certain business records, such as text messaging and email records. *See* Ex. 344 at 10. However, this concept does not stand in the way of the Court ruling that such records are, in and of themselves, certified business records for the purposes of that part of their foundation.

the upcoming trial. With three exceptions,[2] those declarations were previously entered into the record on December 19, 2024. *See* ECF No. 350 (Gov't Ex. List at *James* hearing).

For ease of reference, the custodians and a general description of the types of records at issue are as follows:

| | Custodian Name | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 1. | **American Express** | 1129 (AMEX_00001) | Account Records |
| 2. | **Apple** | 1115 (SW_FIL_342321-22) | Subscriber Information & Other Messaging-Service Related Records |
| 3. | **ANB Bank** | 1101 (ANB_00002) 1102 (ANB_00035) | Bank Records |
| 4. | **Atlantic Union Bank** | 1100 (ACNB_00101) | Bank Records |
| 5. | **AT&T** | 1127 (ORD_20003-04) | Subscriber Information & Other Messaging-Service Related Records |
| 6. | **BBVA** | 1103 (BBVA_00002) 1104 (BBVA_00280) | Bank Records |
| 7. | **GoDaddy** | 1108 (ORD_19742) | Account Records |

---

[2]     Exs. 1100-1128 constitute declarations that the government had received as of the date of the *James* hearing. Since then, the government has received three additional declarations, from American Express (Ex. 1129); National Air Cargo (Ex. 1130); and McDonald Automotive Group (Ex. 1131). These declarations are of a similar format to the others and have been provided in discovery to the defense.

3

|  | Custodian Name | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 8. | **Google** | 1109 (ORD_17711)<br>1114 (SW_FIL_00094-99)<br>1116 (SW_FIL_11402-07)<br>1117 (SW_FIL_11557-61)<br>1122 (ORD_19955-61)<br>1123 (ORD_19962-76)<br>1124 (ORD_19977-91)<br>1125 (ORD_19992-96)<br>1126 (ORD_19997-20002) | Subscriber Information & Other Messaging-Service Related Records |
| 9. | **Guaranty Bank & Trust Company** | 1105 (GUAR_00001) | Bank Records |
| 10. | **Kraken** | 1106 (KRKN_00001) | Know Your Customer, Account, & Transaction Records |
| 11. | **McDonald Automotive Group (Audi)** | 1131 (AUDI_00042) | Account & Transaction Records |
| 12. | **National Air Cargo** | 1130 (NAC_E_204515-16) | Email Records |
| 13. | **Navy Federal Credit Union** | 1107 (NAVY_00002-03)<br>1128 (NAVY_02211-12) | Bank Records |
| 14. | **Regions Bank** | 1111 (REG_00001) | Bank Records |
| 15. | **Simple Finance Technology Corp.** | 1112 (SFT_00001) | Account Records |
| 16. | **Signature Bank** | 1113 (SIG_0678) | Bank Records |
| 17. | **Vcorp** | 1118 (VCORP_00001) | Account Records & Emails |

4

| | Custodian Name | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 18. | **Verizon** | 1110 (ORD_19935) | Subscriber Information & Other Messaging-Service Related Records |
| 19. | **Wells Fargo Bank** | 1119 (WFB_00144-46) <br> 1120 (WFB_01054-58) | Bank Records |
| 20. | **Wynn Las Vegas** | 1121 (WYNN_00002) | Account & Business Records |

If the Court agrees that those declarations are sufficient, then the government will withdraw its subpoena to AUB, and to the other custodians covered by a court ruling. That withdrawal will render AUB's present motion to quash—and any other motions to quash that have been or may be filed by other custodians—moot.

As to AUB's other arguments, however, the motion to quash should be denied. *First*, the business records <u>are</u> the best evidence of Michael Tew's receipt of thousands of dollars in fraud proceeds. The government must prove its case beyond a reasonable doubt, and its presentation should not be hampered by AUB's protestations. Moreover, to the extent the defendants can raise a <u>genuine</u> challenge to the authenticity of those records (and, to be clear, the government believes they cannot), they should be entitled to cross-examine the custodians of those records at trial. *Second*, it is not "abusive" to gently serve legal counsel with a subpoena by mail rather than in person. *And finally*, to the best of its ability within the relevant statutes and regulations, the government will alleviate the burdens of in-person testimony by paying for all of the witness's travel and expenses as the statutes provide.

5

Ultimately, it is not too much to ask a corporate citizen to take a small amount of time to provide testimony in a case involving a victim who lost more than $5 million dollars. Should the Court deny the government's Motion in Limine, AUB's Motion to Quash also should be denied.

**I.    If deemed necessary, it is not unreasonable or oppressive to send a live witness to authenticate records showing how Michael and Kimberley Tew used sophisticated means to siphon ill-gotten fraud proceeds.**

As an initial matter, the government agrees that live testimony should not be required, and that the rules of evidence allow for the admission of business records using appropriate declarations. ECF No. 344 (articulating government's position regarding admissibility and authentication of business records). But the government has the burden of proving its case beyond a reasonable doubt and, until it receives a ruling that declarations provided are sufficient, it must take steps to ensure it can lay an appropriate foundation for its exhibits.

As sometimes happens in the run-up to trial, the government is moving as quickly as it can to identify the necessary exhibits. Initially, the government inadvertently provided AUB with two copies of the same exhibit, rather than the two correct, distinct exhibits it intends to offer at trial. For clarity, the two exhibits the government intends to admit (currently designated as Exhibits 312 and 363), are the best and only evidence showing the Tews' deployment of one particular artifice for advancing their fraud. In this instance, that artifice employed AUB as one of the facilities of the fraud.

More specifically, the Tews are accused of fraudulently obtaining NAC's money

6

under the false pretense that it was being used to pay vendors (including, *inter alia*, PM). In many cases, the Tews simply had co-conspirator Jonathan Yioulos send the money for fake invoices directly to their personal bank accounts. But in the two incidents involved with Exhibits 312 and 363, the Tews used a more sophisticated technique: They had Yioulos send the money to a friend at PM, who then transferred it back to them. Those transfers are documented in AUB's certified documents, specifically PM's bank records. *See* Ex. 312, page 3; Ex. 363, page 4. Without this evidence, the jury may be left under the misimpression that PM—which was a real company—actually received and kept substantial fraud proceeds, rather than the Tews.

The government must be granted the ability to meet its evidentiary burden. Without these particular exhibits, which clearly show how the money moved in and out of PM's bank accounts to the Tews' profit, the jury might be left with some doubt as to whether PM actually provided services for NAC or otherwise was entitled to the money. But the records show that the "real" PM did not have expenses associated with the provision of "consulting services" to NAC, and that, indeed, the Tews were the substantial and ultimate beneficiaries of the fraud. No other exhibits can show this component of the fraud as clearly. The records are thus not cumulative of any other exhibits or testimony.

Testimony from AUB also is not cumulative simply because it duly provided the requested declaration to the government. Yes, the government agrees that such a declaration should be sufficient, and yes, the government believes that a proper

7

declaration allows for the admission of the records without live testimony.[3] But this is not the government's call to make. The Court may disagree with the government's position, and if so, only a witness who can provide live foundation testimony can satisfy the government's burden. And the only entity that can provide that live testimony is AUB. To borrow defendant Kimberley Tew's example, no other witness can talk about AUB's own record-keeping system, rendering such testimony neither cumulative nor duplicative. *See* ECF No. 360 at 3.

AUB's response is that the exhibits do not relate to charged counts. But the government is not required to bring *pro forma* charges related to every single fraudulent transaction before evidence related to a larger scheme can be admitted. Moreover, the records unquestionably fall within the conduct described in the conspiracy counts. As described above, the records illuminate one particularly important facet of the scheme—the laundering of fraud proceeds through a real company—as a means of further distancing the Tews from their criminal acts.

Moreover, offering the records for a pre-trial ruling is not only necessary to dispel any reasonable doubt: it will actually *save* judicial resources over the long term by creating a trial record of sophisticated means so that the Court does not need to sift through that evidence again at sentencing. If the Tews are indeed convicted, this

---

[3]    This is all the more true where, as here, the defense has raised no credible argument as to the authenticity of these records. *See* ECF No. 359 at 1 (apparently conceding the authenticity and non-testimonial nature of the non-cell-phone business records) and ECF No. 360 (generally raising the specter of wanting additional foundation, without elaboration or specificity as to what foundation it believes it needs to explore).

same issue will arise when the government needs to prove its burden at the sentencing. As such, taking "thirty seconds" now, ECF No. 363 at 5, at this stage, to help establish a clear record on losses may save hours of litigation time later wrangling over these numbers later on.

### II. The government's service of AUB was appropriate; to the extent AUB complains service was defective, the government will cure; and this dispute should not be decided on procedural technicalities.

Prior to attempting service, the FBI contacted AUB's legal department about the best way to serve a subpoena and was told to send it via mail. This response made sense at the time, given that it is precisely what Federal Rule of Criminal Procedure 49 contemplates. Now, AUB—which clearly has actual notice of the subpoena— claims that service by mail was somehow "abusive." How, precisely, it is abusive for the government to send a subpoena by mail instead of sending agents to serve corporate officers in-person is never stated.

In any case, service by mail is appropriate. Rule 17(d) simply says that that a subpoena must be "delivered." True, some courts and treatises have declared that use of this word, as cross-referenced to Federal Rule of Civil Procedure 45(b), requires that litigants stalk their quarry and physically put paper in their hands. But those courts and treatises don't typically engage in any kind of textual legal analysis. *See Doe v. Hersemann*, 155 F.R.D. 630, 631 (N.D. Ind. 1994 (surveying cases requiring personal service and then noting "not one of these cases explains its conclusion, however; each simply refers to the text of Rule 45, which, as noted, does not command personal service. The persuasive authority of these cases is, accordingly, de minimis,"

9

and then lamenting that the treatises are no better: "the primary civil procedure treatises assert without explanation that personal service of a subpoena is required by Rule 45. Like the district court opinions cited above, the failure of these otherwise persuasive texts to explain their conclusions severely undermines their usefulness here.").

The government has not identified any direct Tenth Circuit precedent as to this dispute. However, the government encourages the tools of statutory interpretation and the deployment of simple common-sense to reach a reasoned conclusion. As one court has persuasively reasoned, the word "delivery" simply means "'the act by which the res or substance thereof is placed within the actual ... possession or control of another.'" *Id.* at 630 (quoting Black's Law Dictionary). And as the Seventh Circuit has explained, "we see no reason to inflate the costs of litigation by ruling out this sensible option for serving a subpoena (along with the necessary fees) and requiring parties to hire a second person for service, at least in the absence of any language in the Rule that compels such a result." *Ott v. City of Milwaukee*, 682 F.3d 552, 557 (7th Cir. 2012).

There is no question here that AUB has actually received the subpoena: They attached it to their motion. *See* ECF No. 363-1. Quashing the subpoena on exceedingly persnickety grounds would do nothing to efficiently resolve this litigation and would, instead, simply impose <u>more</u> costs on all of the parties and on the Court down the line. In any event, given AUB's complaints, the government dutifully sent an FBI special agent down to AUB's headquarters today (January 18, 2024) to provide

in-person service. This argument is now moot, and puts the substance of AUB's argument squarely before the Court without impediment.[4]

### III. To the extent that the subpoena burdens AUB, the government promises to alleviate that burden to fullest extent possible available under the law.

Finally, AUB has submitted a declaration stating that the travel and time incurred by requiring in-person testimony will cause a "significant burden to AUB's Regulatory Processing-Subpoenas Team." 363-3. On one hand, and as repeatedly expressed to AUB and to the total of 20 custodians of record involved, the government is sympathetic to these burdens and has sought to alleviate such burdens via its pending Motion in Limine.

Apart from the obvious, however, the supposed burden to AUB is unidentified and the description of how such a burden would be uniquely significant to AUB is unexplained. The declaration also appears to over-inflate such burden, claiming that it will take 2-3 days for someone to travel from Richmond to Denver. A quick look at widely-available websites for booking travel shows that both United Airlines and Southwest offer convenient non-stop flights between Richmond and Denver. The government can and will do everything it can to schedule witnesses to limit overnight stays (it is, after all, picking up the tab and conscious of the costs).[5] In the alternative,

---

[4]   *See, e.g.*, *United States v. Sandoval*, No. 10-20243-CR, 2010 WL 2757188, at *3 (S.D. Fla. July 13, 2010) (electing to reach the merits of a custodians motion to quash over ruling on argument regarding defective service, in recognition of interests of justice and judicial economy).

[5]   *See* 28 U.S.C. § 1825 (requiring payment of fees).

11

should the Court require testimony, the parties can work with defense counsel to determine whether they would object to what is clearly non-testimonial evidence being presented by video.

## IV.    Conclusion

AUB is right to declare that it is a waste of time and resources to provide testimony *where not required.* ECF No. 363. But the government does not know and will not know whether the testimony is required until it knows whether its declarations provide a sufficient foundation to satisfy the Court. If the Court concludes that the declarations are insufficient, or that live testimony is otherwise necessary, then, by legal definition, the testimony is required and the government would respectfully request that the Court enforce the subpoena. One would hope that AUB would expect and appreciate the same should it ever be the victim of a crime. Justice for victims demands proof beyond a reasonable doubt and proving restitution will often require the use of bank records. Indeed, compliance with such subpoenas should be a natural and expected ancillary responsibility of AUB's business, something that AUB's establishment of a dedicated "Regulatory Processing-Subpoenas Team" tacitly acknowledges.

The Tews are entitled to a jury trial. But they are not entitled to needlessly and unnecessarily burden third-party custodians and the Court by obstinately demanding in-person testimony that is not required by the Federal Rules, caselaw, or the U.S. Constitution. To ensure that the upcoming trial is focused and efficient, the government would ask that the Court review Exhibits 1100-1128 offered at the James Hearing and, for all of the reasons previously articulated in the government's

Motion in Limine, issue a ruling making the preliminary finding under Federal Rule of Evidence 104(a) that the government's proposed exhibits are authentic business records. By extension, the government also requests that the new declarations (related to Amex, Audi, and NAC's email records) be similarly declared certified and authentic non-hearsay records. The defendants can challenge the exhibits on any other ground and, should they believe there are real issues of authenticity, can issue their own subpoenas to records custodians. Proceeding otherwise simply encourages additional litigation over motions to quash from AUB and other custodians and unnecessarily consumes judicial resources.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

13

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 18th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES,

     Plaintiff,

v.

**MICHAEL AARON TEW**;
**KIMBERLEY ANN TEW**; and
JONATHAN K. YIOULOS,

     Defendants.

---

## ORDER REGARDING AUTHENTICATION OF EXHIBITS

---

The government has asked the court to find, prior to trial, that approximately 900 exhibits—primarily texts, emails, and instant messages shared among the defendants; bank records; account and subscriber records; and surveillance photographs—are authentic, subject to the business-records hearsay exception, and therefore presumptively admissible. Doc. 344; Doc. 344–1 (highlighted list of exhibits subject to the government's motion). The government moves *in limine* to admit these documents, arguing that requiring custodial witnesses to authenticate these exhibits at trial would be burdensome and tedious. But Defendants Mr. and Mrs. Tew contest, at least in part, the authentication of these exhibits. The government's motion is granted in part and denied in part as described below.

## BACKGROUND

The facts of this case are well known to the parties, so the court will only recite them briefly. On February 3, 2021, a grand jury indicted

Defendants Michael Tew, Kimberley Tew, and Jonathan Yioulos on dozens of counts for various offenses including wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. Doc. 83. The government alleges that the defendants defrauded various entities affiliated with N.A.C. Inc. (collectively, "NAC") that provided "freight forwarding solutions, to include by charter and airlift." *Id.* at 1. NAC also operates as an airline. *Id.* Mr. Yioulos has pleaded guilty, Doc. 154, and only Mr. and Mrs. Tew intend to go to trial at this time.

The court recently held a *James* hearing addressing several hundred statements that the government sought to admit under the co-conspirator hearsay exclusion pursuant to Federal Rule of Evidence 801(d)(2)(E). Doc. 355. The court found that most of the proffered statements were not hearsay while reserving potential rulings on other admissibility issues. Doc. 361. The government docketed the *James* hearing statements themselves, Doc. 341–1, and separately submitted the exhibits for the hearing to the court.

The government has also separately moved to admit, for purposes of trial, the approximately 900 exhibits submitted prior to the *James* hearing. Doc. 344. Both Mr. and Mrs. Tew filed responses opposing the government's motion at least in part. Docs. 359, 360. During the pendency of that motion, the government sent at least one subpoena to a third-party bank to provide live testimony at trial from a custodian of records regarding two such exhibits. *See* Doc. 363. That bank has moved to quash the subpoena, arguing that its submitted declaration renders the bank-record exhibits admissible and that requiring live testimony would unduly burden it. *Id.* The government has since filed a response to that motion to quash which also included updates on several custodial declarations that had not yet been received as of the *James* hearing. Doc. 366.

## APPLICABLE LAW

Under Federal Rule of Evidence 803(6), certain "business records" are not hearsay. Such records of "an act, event, condition, opinion, or diagnosis" are generally not excluded as hearsay if (1) they were made at or near the time by someone with knowledge; (2) "the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;" (3) "making the record was a regular practice of that activity;" (4) and the offeror provides either testimony or a certification from a custodian of records showing all of the above. Fed. R. Evid. 803(6). Even if those conditions are met, however, the exception does not apply if the opponent shows "that the source of information or the method or circumstances of preparation indicate a lack of trustworthiness." *Id.*

Under Federal Rule of Evidence 902(11), if a business record falls within Rule 803(6)'s exception—and when supported by a sufficient declaration from a custodian of records—it is self-authenticating as well. *United States v. Ayelotan*, 917 F.3d 394, 402 (5th Cir. 2019). Certain records "generated by an electronic process or system that produces an accurate result" similarly may be self-authenticating if supported by an appropriate declaration from a custodian of records. Fed. R. Evid. 902(13).

Authentication of documents that are not self-authenticating can be achieved in a variety of ways, including through witness testimony. Fed. R. Evid. 901. Such authentication requires "evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). But "the bar for authentication of evidence is not particularly high." *United States v. Isabella*, 918 F.3d 816, 843 (10th Cir. 2019); *see also* 31 Charles Alan Wright & Arthur R. Miller, Federal Practice

- 3 -

and Procedure, § 7104 (2d ed.) (characterizing this standard as "not ex-acting" and that courts generally emphasize "the minimal nature of the showing required").

## DISCUSSION

The government's motion addresses about 900 exhibits from at least twenty custodians. *See* Doc. 366 at 4–5. These exhibits tend to fall into one of two general categories: (1) bank, credit-card, and other business records; and (2) subscriber and messaging records related to various communications, mostly attributable to the defendants. *Id.*

Mr. Tew does not contest the authenticity of the vast majority of these exhibits. Doc. 359 at 1. Instead, he lodged a targeted objection to the government's proffer to authenticate certain messages and emails modified with "Cellebrite" software. *Id.* at 1–4. Mrs. Tew, on the other hand, seems to object more broadly to the government's proposal to not have custodians testify at trial, at least based on the evidence presented as of December 22, 2023 when she filed her response. Doc. 360.

## I.    Bank and Business Records

Much, if not all, of the proposed bank records appear to fall neatly within the business records exception of Rule 803(6) and the self-authentication provision of Rule 902(11). Indeed, certificates from custodians that "track the language of Rule 803(6) nearly word for word" tend to render such records self-authenticating. *See Ayelotan*, 917 F.3d at 402 (admitting email records based on custodial certificates from Google and Yahoo!).

Mr. Tew does not contest the authenticity of these documents, and Mrs. Tew fails to meaningfully contest the authenticity of such documents assuming that the appropriate certificates are made available.

Docs. 359, 360. Mrs. Tew is correct, however, that it remains somewhat unclear if, when, and how the various declarations have been disclosed to the defendants, let alone the court. While the government submitted *some* of the relevant custodial declarations for purposes of the *James* hearing, almost none of them have been docketed, and the government seems to admit that it has not even provided the court with at least three of them. *See* Doc. 366 at 3 n.2 (describing purported declarations from American Express, National Air Cargo, and McDonald Automotive Group that the government had not received prior to the *James* hearing and that the government still appears not to have filed or provided to the court).

Given this piecemeal approach, the court cannot give the government a definitive ruling on all of the bank records at this time. But the court is confident that the bank records in this case—if accompanied with an appropriate declaration mirroring the one provided by Atlantic Union Bank, as an example, *see* Doc. 363–2—are authentic, non-hearsay business records and will *not* require live testimony from a custodian of records for purposes of authentication. Assuming that all of the declarations meet the requirements of Rule 803(6) and 902(11), it therefore appears that most if not all of the records from entities such as American Express, Atlantic Union Bank, BBVA, Guaranty Bank & Trust Company, Regions Bank, Signature Bank, and Wells Fargo Bank are authentic and non-hearsay. But given that the court lacks a complete record to rule on all of these exhibits, it withholds a final ruling at this time.

Nevertheless, given third-party Atlantic Union Bank's pending motion to quash, the court does find, at this time, that exhibits 312 and 363 are authentic, non-hearsay business records that are presumptively admissible. Atlantic Union's custodial declaration, Doc. 363–2, meets the requirements of Rules 803(6) and 902(11), and the court sees no basis

for finding—nor have defendants attempted to show—that the source of these exhibits or the circumstances of their preparation lack trustworthiness under Rule 803(6)(E). Given the government's promise to withdraw the witness subpoena sent to Atlantic Union if the court deemed the relevant exhibits admitted, Atlantic Union's motion to quash is denied as moot with leave to re-file if necessary.

## II.    Account, Subscriber, and Messaging/Email Records

The government also seeks to admit various subscriber and account records and messaging records, such as those obtained from Google and Apple. Much, but not all, of these exhibits seem to relate to communications involving the defendants, including the statements addressed at the *James* hearing. The more straightforward account and subscription records, it seems, qualify as business records subject to self-authentication, like the bank records discussed above. But the messaging records, including those extracted from accounts purportedly owned by the defendants, present a double hearsay issue:

> Here, each email represented two "statements" for purposes of the Federal Rules of Evidence. First was the transmittal certificate—effectively, the email provider's statement that one user wrote and sent a message to another user at the recorded time. Second, the content of each email is also a statement. We take them in that order.

*Ayelotan*, 917 F.3d at 402.

As to the first hearsay and authentication layer—*e.g.*, that a certain message was associated with a certain account or that a certain messaging account transmitted a certain message—the government's proffered declarations appear to meet the business-record exception. *See id.* (finding that certificates from Google and Yahoo custodians rendered "statement that one user wrote and sent a message to another user at the

- 6 -

recorded time" non-hearsay and authentic). The court therefore does not
see a need for custodians from Apple or Google, for example, to testify at
trial. Their declarations, so long as they meet the requirements of Rules
803 and 902, are sufficient.

The content of the emails is another matter—something the government appears to concede. *See* Doc. 344 at 10–13 (noting that the certification from custodians is just "one piece of the authentication puzzle").
Indeed, "Rule 902(11) would not apply if the email was offered to prove
the content of the email was accurate unless the email was itself created
in the regular course of business and it was the regular practice of the
business to create such items." 31 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure, § 7145 (3d ed.). For this second
hearsay layer, the government suggests that authentication of the substance of the emails may be achieved via Rule 901. Assuming the defendants themselves will not authenticate these emails at trial, such authentication may be accomplished through a review of circumstantial
evidence like the characteristics and contents of the messages which
suggest that the content of those messages were, in fact, sent from one
person to another. *See, e.g.*, United States v. Fluker, 698 F.3d 988, 999
(7th Cir. 2012) (affirming authentication of defendants' emails based on
context clues in email address and substance of the emails themselves).

The court agrees that—at least for the statements addressed in the
court's *James* order[1]—the context clues and other characteristics of various messages are sufficient to deem those messages authentic under
Rule 901. But the court is not able to grant a blanket admissibility ruling
as to *all* of those hundreds of messages at this time. It remains unclear

---

[1] With the exception of certain messages created using Cellebrite software as addressed below.

how many of those messages the government will actually introduce at trial. And given the variety of different messages and accounts at issue (including the possibility that certain individuals used *other* individuals' accounts to send messages), a blanket ruling would be inappropriate at this time. Nevertheless, based on the review made for purposes of the *James* order, the court notes that a large majority of the messages will not be kept out on authenticity grounds. And the court supposes that the government will put on a witness or witnesses, such as the IRS agent who testified at the *James* hearing, who can not only help authenticate the messages at trial prior to their introduction into evidence but also provide context to the jury regarding those messages' content.

### III.   Cellebrite-Created Messages

Mr. Tew's objection on authenticity grounds relates to certain exhibits created with Cellebrite software that extracts raw data from cell phones.[2] Mr. Tew argues that this software does not merely "copy" data from a cell phone but instead involves some discretion on the part of a forensic examiner using the software to determine what data to include or exclude from a forensic image of the phone. Because of this, Mr. Tew argues, any Cellebrite-created exhibits are not business records and therefore not self-authenticating. The government counters that the software merely copies and renders the underlying data in a more aesthetic way—such as by converting messages listed in a spreadsheet into a more readable format. Given this, the government argues that Cellebrite generates a record "that produces an accurate result" pursuant to Rule 902(13). The government therefore seeks to authenticate Cellebrite reports with a declaration only. Doc. 344 at 13.

---

[2] Mrs. Tew does not raise a specific objection regarding Cellebrite exhibits.

In support of its argument, the government cites an unpublished decision from this district purportedly citing authority "from [the] First, Second and Ninth Circuits." Doc. 344 at 13. In that case, Judge Martinez cited Rule 902(14)—a rule allowing authentication of data "copies" from an electronic device as opposed to a process that generates "accurate results"—as the basis for authenticating Cellebrite data while addressing a separate issue regarding expert witness testimony. *United States v. Judkins*, 1:21-cr-00055-WJM, ECF No. 113 (Oct. 18, 2022).[3] And all of the out-of-circuit authority cited in that case addressed whether certain testimony about cell phone extractions amounted to expert testimony rather than lay testimony—not whether Cellebrite extractions themselves were self-authenticating. *United States v. Montijo-Maysonet*, 974 F.3d 34, 48 n.12 (1st Cir. 2020) (addressing police officer who *testified at trial*, subject to cross-examination, on extracted cell phone data yet "offered no assurances about how well the extraction software performed" and noting that defendant did not lodge authentication challenge); *United States v. Seugasala*, 702 F. App'x 572, 575 (9th Cir. 2017) (similar); *United States v. Marsh*, 568 F. App'x 15, 16 (2d Cir. 2014) (addressing live testimony from FBI agent regarding extraction process for Cellebrite reports).

The government has provided no specific authority for finding that the Cellebrite-produced reports in this case are self-authenticating under Rule 902(13). As Mr. Tew suggests in his motion, it appears that

---

[3] While the government suggests that Cellebrite merely "copies" data from cell phones or is equivalent to copy-pasting the raw data into a text editor, it relies on Rule 902(13) (addressing processes generating an "accurate result") instead of Rule 902(14) (addressing copying of data). The government has not met its burden to show that the Cellebrite-created reports are mere copies, perhaps as partly evidenced on its failure to rely on Rule 902(14).

Cellebrite is a tool that allows users to create a variety of reports or documents—possibly ranging from mere copies of raw data to selective copies of raw data, or even to exhibits incorporating external information inputted by the Cellebrite user. It remains unclear in this case where, on that spectrum, the proffered exhibits fall (or whether there is variance among the exhibits). Nor has the government fully explained the process by which the exhibits at issue were generated. So the court finds that, for Cellebrite exhibits, the government must provide a competent witness or other sufficient evidence at trial to address authenticity and/or a foundational basis before those exhibits will be admitted into evidence. *See United States v. Buyer*, No. 22 CR. 397 (RMB), 2023 WL 6805821, at *3 (S.D.N.Y. Oct. 16, 2023) (addressing authentication of Cellebrite reports under Rule 901 via introduction of live testimony of agent subject to cross examination and introduction of supporting exhibit regarding extraction process). As Mr. Tew suggests, it seems that the forensic examiner who extracted the data would be an appropriate witness for this purpose. And the introduction of one witness on this discrete issue will not meaningfully burden the government or unnecessarily extend the trial.

## CONCLUSION

The government's Motion in Limine, **Doc. 344**, is **GRANTED IN PART** and **DENIED IN PART** as outlined above.

The court has provided its presumptive rulings on authenticity above, subject to further discussion at the Trial Preparation Conference on January 30. As described above, a large majority of the 900 exhibits at issue are likely authentic, non-hearsay business records that will not require authenticating live witnesses at trial. But to simplify and organize the authentication process, the government **must file on the**

- 10 -

**docket, on or before January 24, 2024**, all custodial declarations it intends to use to support authentication of trial exhibits. Defendants **may file any *specific* objections to those declarations on or before January 29, 2024**. And the court will address any remaining authentication issues at the Trial Preparation Conference on January 30.

Also, as discussed above, Atlantic Union Bank's Motion to Quash, **Doc. 363**, is **DENIED AS MOOT** given the court's ruling that exhibits 312 and 363 are authentic, non-hearsay business records. Atlantic Union may re-file a motion to quash if necessary.

DATED: January 19, 2024          BY THE COURT:

Daniel D. Domenico
United States District Judge

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW,

      Defendant.

---

## MOTION *IN LIMINE* TO PROHIBIT THE IMPERMISSIBLE AND UNCONSTITUTIONAL USE OF PROFFER AGREEMENTS

---

      Defendant Michael Aaron Tew ("Mr. Tew") respectfully moves the Court *in limine* for a pre-trial ruling limiting the scope of the potential admissibility of statements made during two proffer agreements between Mr. Tew and the government during the government's case-in-chief. The government opposes the relief sought herein.

### Introduction

      On Friday, January 19, 2024, the government stated its intention to affirmatively admit statements made by Mr. Tew during interviews with the government team during its case-in-chief at trial if Mr. Tew breached the proffer agreements preceding those interviews. The proffer letters at issue, dated July 12, 2020, and July 27, 2020 (but each signed in the days thereafter), were executed prior to Mr. Tew twice meeting with the government and providing information germane to this case. Based on recent communications with the government, undersigned counsel understands that the government will take the position that such a "breach" would occur at trial should the defense present <u>anything</u> contrary to what Mr. Tew said during the proffers,

including anything said by counsel in opening statements, closing argument, or during cross-examination of a government witness. This interpretation, however, is a clear overreach, as it stymies Mr. Tew's constitutional rights to present a complete defense at trial, including the nearly unfettered right to cross-examine witnesses, his right to due process, effective assistance of counsel and a fair trial. The government's interpretation cannot survive serious scrutiny, or any at all considering its request is tantamount to handicapping Mr. Tew's right to defend himself in any meaningful way.

The government stated that it intends to raise this issue with the Court in its trial brief. However, Mr. Tew raises it *in limine* because of its significance and singular ability to prejudice the defense at trial. As such, this Motion merits consideration and a pre-trial ruling before a jury is empaneled and opening statements occur in this case.[1] Mr. Tew respectfully moves this Court to preclude the government from introducing evidence related to his proffer statements in its case-in-chief because doing so will handicap the defense in a manner that creates incurable prejudice at trial, and because such a request is completely inappropriate based on the facts of this case.

## Factual Background

On July 9, 2020, defendant Michael Tew made his initial appearance in this matter and was granted pre-trial release. *See* Doc. 7 and 9. Less than a week later, on July 15, 2020, Mr.

---

[1] The Court's prior Order Regarding Pretrial Deadlines and Pending Motions, Doc. 241, establishes that motions *in limine* are due fourteen days before the Trial Preparation Conference, That deadline was not specified in the last order, Doc. 318, and if applied to the presently scheduled Trial Preparation Conference, it has already passed. The defense learned of this new development upon examining the government's preliminary exhibit list and corresponding with counsel on January 19, 2024. Given the significance of the issues involved this issue cannot wait for a trial brief, and the defense does not view it as an issue that should be addressed as other routine trial brief issues are addressed. If this matter goes unaddressed before trial commences, the government's request will significantly prejudice the defense as trial.

2

Tew and his then counsel, Mr. Michael Sheehan, met with federal authorities. Prior to the meeting, the parties reached a proffer agreement (dated July 12, 2020, included herein as Exhibit A, INV_00007873-7875) regarding the statements that Mr. Tew agreed to provide and detailing the use the government could make of those statements. For purposes of this Motion, paragraph four provides the contested language:

> The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer. By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

Ex. A at 2. This exact paragraph is repeated in the proffer agreement dated July 27, 2020 (included herein as Exhibit B, INV_00007868-7871) that covered Mr. Tew's July 28, 2020, meeting with authorities. However, Mr. Tew's attorney had changed. At that time, Mr. Tew was represented by Mr. Eric Creizman and Ms. Melissa Madrigal of the New York firm Armstrong Teasdale LLP, who entered their appeared in this matter the same day the second proffer interview occurred. Doc. 17. While the proffer agreements are similar, the first agreement specifically carves out an exception regarding matters involving Kimberley Tew ("Mrs. Tew").

But it gets messier from that point onwards. At the time of the second proffer agreement, the one in which questions about Mrs. Tew were now on the table, Mrs. Tew had a lengthy professional relationship with Mr. Tew's counsel, who at one time considered them each as friends. Within two weeks after the second proffer was held, Mr. Tew's counsel moved to withdraw citing, in part, Mrs. Tew's interference with his representation. *See* Doc. 26, affidavit of attorney Eric Creizman. Months passed, but eventually Mrs. Tew was indicted. Just over two weeks after her initial appearance in this case on February 10, 2021, Doc. 96, attorney Tor Bernhard Ekeland

entered his appearance <u>on behalf of both Michael and Kimberley Tew</u>. Doc. ECF 106. The Tews then would have joint representation up until the appointment of Mrs. Tew's current counsel pursuant to the Criminal Justice Act on January 3, 2023. Doc. 290. None of the attorneys who represented Mr. Tew during the proffer interviews remain on the case. For that matter, the assigned prosecutors have also changed.

Despite this history and what appears in their Memorandum in support of *James* log, Doc. 341, to be a veritable mountain of evidence against Mr. Tew, the government now intends to ask the Court to completely restrict Mr. Tew's ability to present a defense at trial.

### Applicable Law and Argument

On the face of the proffer letter, the government cites *United States v. Mezzanatto*, 513 U.S. 196 (1995), a case in which the Supreme Court was tasked with determining, as the Ninth Circuit was, whether there existed "a per se rule precluding a defendant from ever waiving his Rule 410 protections." *See United States v. Jim*, 786 F.3d 802, 810 (10th Cir. 2015) (interpreting and applying *Mezzanatto*). But *Mezzanatto*, an early case involving the interpretation of the federal *statutory* rules applicable to the use of statements made in the course of plea discussions, did not involve a written agreement and was limited to the government seeking to introduce evidence of the defendant's proffered statements only after he testified to the contrary and denied his proffered statements under cross-examination, a result consistent with the impeachment of *any witness*. *Id.* at 199.

Here, the government seeks to constrain Mr. Tew's trial rights in a much broader way, not limited to impeaching Mr. Tew should he testify. Instead, the government intends to argue that Mr. Tew's agreement not to "presen[t] a position (including through affidavit or in argument) that contradicts" his proffer statements now restricts his ability to cross-examine witnesses and present

opening statements and closing arguments to the jury. Exhibits A and B at 2.[2] Such an interpretation of what is, at most, vague and overbroad proffer agreement language, completely overlooks Mr. Tew's many trial rights, particularly the right to confrontation. *See, e.g.*, *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (noting that the Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense") (citation omitted). Indeed, undersigned counsel spoke with Mr. Michael Sheehan, counsel for Mr. Tew at the time of the first proffer. Mr. Sheehan expressed no recollection of any understanding or interpretation of the proffer letter at that time as limiting in any way Mr. Tew's ability to cross examine witnesses or present an unburdened opening statement. Mr. Sheehan stated his belief that such a position is not in line with how defense counsel in this District routinely interpret and explain such agreements to their clients.

In effect, the government argues that Mr. Tew signed away various rights, including the nearly unfettered constitutional right to cross-examine witnesses against him, by providing allegedly voluntary statements to the government. *See Delaware v. Fensterer*, 474 U.S. 15, 22 (1985) (noting that the Confrontation Clause affords a defendant a "full and fair opportunity to probe and expose [the] infirmities" of the government's case "through cross-examination"). The government's stance, that apparently Mr. Tew waived some type of rule-based protection guaranteed by Federal Rules of Evidence, does not account for Mr. Tew's constitutional rights to a fair trial and to present a complete and meaningful defense, and to confrontation, due process and the effective assistance of counsel. In the words of the Supreme Court:

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal. Indeed, we have expressly declared that to deprive an accused of the right to cross-examine the witnesses against him is a denial

---

[2] No reasonable interpretation of paragraph four can be said to cover what can be said in opening statements.

of the Fourteenth Amendment's guarantee of due process of law.

*Pointer v. Texas*, 380 U.S. 400, 405 (1965).

Under the government's interpretation, Mr. Tew would have preserved more trial rights by speaking to government agents *without an attorney and without the benefits of a bargained-for agreement*. This absurd result seems accurate only if it was also the case that Mr. Tew received ineffective assistance of counsel or if the government's interpretation has evolved over time now that Mr. Tew is no longer cooperative and wishes to try his case.

While the waiver of constitutional rights like the confrontation of witnesses is routine in the context of a guilty plea, institutional safeguards prevent such waivers from merely being signed away. Defendants in this District, for example, file a defendant's statement in advance of plea of guilty acknowledging the rights that are choosing to give up by pleading guilty. And the Court, at the change of plea hearing, questions each defendant about these rights and his or her choice to waive them. Perhaps obviously, none of those procedural safeguards were present here. And notably, the government has not expressed any intention of introducing Mr. Tew's prior Notice of Disposition, since revoked, filed in October 2020. Doc 47.

It cannot be reasonably argued, however, that Mr. Tew did not know that his statements to federal authorities could be used against him if he later changed his version of events. And it is perhaps a reasonable inference that Mr. Tew also knew, and agreed, that he could not affirmatively present evidence to the contrary. That is at least consistent, and arguably aligns with various holdings, like *Mezzanatto*, that found that rights created by statute (such as the rules of evidence) can be knowingly waived. But the Court in *Mezzanatto* acknowledged that "[t]here may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts." *Mezzanatto*, 513

6

U.S.196, 204 (internal citation omitted). As cited by the Tenth Circuit in *United States v. Mitchell*, 633 F.3d 997, 1003 (10th Cir. 2011) (quoting *Rose v. Clark*, 478 U.S. 570, 577-78 (1986)), "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *See also United States v. Oluwanisola*, 605 F.3d 124, 133 (2d Cir. 2010 ("A cross examination question that goes to the credibility of the government's witness, without a factual assertion contradicting the facts admitted in the proffer statement, is not sufficient to trigger the waiver provision here."); *United States v. Roberts*, 660 F.3d 149, 158 (2d Cir. 2011) (internal citations omitted) ("Particular caution is required when the purported fact is asserted by counsel rather than through witness testimony or exhibits. The latter undoubtedly constitute evidence and, thus, necessarily imply some fact. By contrast, counsel's statements are not admissible evidence. Thus, arguments or questions challenging the sufficiency of government proof or the credibility of a witness without a factual assertion contradicting facts admitted in the proffer statement do not trigger a waiver provision.")

It is those basic constitutional protections – cross-examination, due process, effective assistance of counsel and presenting a complete and meaningful defense – that the government contends Mr. Tew signed away. Interpreting the proffer agreements to restrict or diminish these rights would infect the whole trial proceeding, denying Mr. Tew meaningful opportunity to defend himself and, in effect, leaving trial counsel no choice but to provide what would otherwise be widely considered as the ineffective assistance of counsel. The government does not get to control defense strategy, any of Mr. Tew's potential defenses, and the manner in which his counsel decides

to deliver an opening statement and cross-examine government witnesses at trial.

DATED this 23rd day of January, 2024.

_/s/  Jason D. Schall_
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com

_/s/  Kristen M. Frost_
Kristen M. Frost
RIDLEY, LCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200
Denver, CO 80202
Telephone: (303) 629-9700
Facsimile: (303) 629-9702
E-mail: frost@ridleylaw.com

Attorneys for Michael Aaron Tew

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

_/s/  Jason D. Schall_
Jason D. Schall

## STATEMENT OF SPEEDY TRIAL IMPACT

Pursuant to Judge Domenico's Practice Standard III(C), undersigned counsel notes that this filing has no effect on the speedy trial clock.

_/s/  Jason D. Schall_
Jason D. Schall

8

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2024, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

AUSA Bryan Fields
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov

David Kaplan / Jamie Hubbard
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80203
(720) 689-8909
kaplan@slhlegal.com
hubbard@slhlegal.com
*Attorneys for Kimberley Ann Tew*

I hereby certify that I will mail or serve the filing to the following participants:

Mr. Michael Aaron Tew (defendant)


_/s/  Jason D. Schall_
Jason D. Schall



DEFENDANT'S
EXHIBIT

A



## U.S. Department of Justice

Jason R. Dunn
United States Attorney
District of Colorado

Hetal J. Doshi
Assistant United States Attorney

1801 California Street, Suite 1600    Telephone:  303-454-0100
Denver, CO 80202                     Fax:  303-454-0405

July 12, 2020

***Via Email***
Michael Sheehan, Esq.
Counsel to Michael Aaron Tew
Sheehan Law Denver
7400 East Caley Avenue
Quebec Center II
Suite 300
Centennial, Colorado 80111
michael@sheehanlawdenver.com
720.381.6146

Dear Mr. Sheehan,

I understand your client, Michael Tew, is interested in meeting with federal law enforcement agencies and the Criminal Division of the United States Attorney's Office for the District of Colorado for a proffer related to this office's criminal investigation of conduct related to or arising out Mr. Tew's financial transactions, direct or indirect, with National Air Cargo, and subsequent transactions initiated by or for the benefit of Mr. Tew, either directly or indirectly. This letter sets out the terms for that proffer, to be scheduled soon and set to occur in Denver, and any follow up proffer sessions between the Criminal Division of the United States Attorney's Office for the District of Colorado ("the government"), and you and your client.

1.      Your client agrees that he will truthfully and completely disclose all information with respect to his activities and the activities of others that are the subject of inquiry by the government during the proffer.  In this regard, your client must neither attempt to protect any person, entity, or asset through materially false information or omission, nor falsely implicate any person, entity, or asset.  The only limited exception to this is that Mr. Tew has elected at this time not to answer questions that may specifically implicate his wife, Kimberly Tew.  He has consulted with his counsel and understands that this decision could diminish the value, if any, of his cooperation.  Mr. Tew has stated that he may revisit this decision in the future.  In the event

1

that Mr. Tew agrees in the future to answer questions that may specifically implicate his wife, such a change will be memorialized in a subsequent proffer agreement. At a future time your client may be subpoenaed to testify before a federal grand jury, at trial, or in other court proceedings. You and your client understand that false statements willfully made during this proffer will negate the Government's agreement not to use this proffered information against your client.

2. Except as set forth below, the government will not offer as evidence statements made by your client, or other information provided by your client during the proffer relating to the subject matter of the proffer, in (a) grand jury proceedings seeking an indictment against your client, (b) its case-in-chief at a trial against your client, or (c) at your client's sentencing.

3. The government may use any statements made by your client or any information directly or indirectly derived from statements made by your client during the proffer for any other purpose, including (a) to obtain leads to other evidence that may be used against your client at any stage of a criminal prosecution, (b) in any prosecution of your client for perjury, false statements, or obstruction of justice, or (c) in a prosecution of your client for any crimes of violence, as defined in Title 18, United States Code, Section 16, or any conspiracy to commit a crime of violence. Provision (a) eliminates the need for a hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by your client during the proffer. *See Kastigar v. United States*, 408 U.S. 931 (1972). It is the intent of this agreement to establish that such derivative use is proper. By signing this letter, your client expressly waives any right to challenge the derivative use of such statements or information.

4. The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer. By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

5. Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not apply to any statements made by your client during the course of the proffer.

6. In the event evidence other than your client's own statements is developed, regardless of whether it is developed before or after the proffer, this agreement does not impart "transactional" immunity to your client or preclude the government from bringing charges against him in the future.

2

INV_00007873

7.     Your client understands that he is required to provide full and complete information about the subject matter of the proffer and any information about himself which might adversely impact on his credibility as a witness concerning such activity.

8.     This agreement does not obligate the government to enter into any future plea bargain with your client or to file any motion regarding cooperation provided by your client.

9.     This agreement is not binding on the Civil Division of the United States Attorney's Office for the District of Colorado, any other federal government office, or any other state, tribal, or local office or agency not specifically named in this agreement.

No understandings, promises, or agreements have been entered into other than those set forth in this agreement, and nothing said during the proffer will constitute a promise or agreement unless all parties agree in writing.

Sincerely,

JASON R. DUNN
United States Attorney

s/ *Hetal J. Doshi*
By: Hetal J. Doshi
Assistant United States Attorney

3

I, Michael Tew, have read this agreement and carefully reviewed it with my attorney. I understand it, and I voluntarily, knowingly and willfully agree to it without force, threat or coercion. No other promises or inducements have been made to me other than those contained in this letter. I am satisfied with the representation of my attorney in this matter.

_____          7/15/20
Michael Aaron Tew                                    Date

I acknowledge that I have read this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.

_____          7/15/2020
Michael Sheehan                                        Date
Counsel for Michael Aaron Tew

4

INV_00007873

DEFENDANT'S
EXHIBIT
B



**U.S. Department of Justice**

Jason R. Dunn
United States Attorney
District of Colorado

*Hetal J. Doshi*
*Assistant United States Attorney*

*1801 California Street, Suite 1600*      *Telephone: 303-454-0100*
*Denver, CO 80202*                        *Fax: 303-454-0405*

July 27, 2020

***Via Email***
Eric Creizman, Esq.
Melissa Madrigal, Esq.
Counsel to Michael Aaron Tew
Armstrong Teasdale LLP
919 Third Ave., 37th Floor
New York, NY, 10022
ecreizman@atllp.com
MMadrigal@atllp.com
212.209.4358

Dear Mr. Creizman and Ms. Madrigal,

I understand your client, Michael Tew, is interested in meeting with federal law enforcement
agencies and the Criminal Division of the United States Attorney's Office for the District of
Colorado for a proffer related to this office's criminal investigation of conduct related to or
arising out Mr. Tew's financial transactions, direct or indirect, with National Air Cargo, and
subsequent transactions initiated by or for the benefit of Mr. Tew, either directly or indirectly.
This letter sets out the terms for that proffer, to be scheduled soon and set to occur in Denver,
and any follow up proffer sessions between the Criminal Division of the United States
Attorney's Office for the District of Colorado ("the government"), and you and your client.

1.     Your client agrees that he will truthfully and completely disclose all information with
respect to his activities and the activities of others that are the subject of inquiry by the
government during the proffer. In this regard, your client must neither attempt to protect any
person, entity, or asset through materially false information or omission, nor falsely implicate
any person, entity, or asset. At a future time your client may be subpoenaed to testify before a
federal grand jury, at trial, or in other court proceedings. You and your client understand that
false statements willfully made during this proffer will negate the Government's agreement not to
use this proffered information against your client.

1

2.      Except as set forth below, the government will not offer as evidence statements made by your client, or other information provided by your client during the proffer relating to the subject matter of the proffer, in (a) grand jury proceedings seeking an indictment against your client, (b) its case-in-chief at a trial against your client, or (c) at your client's sentencing.

3.      The government may use any statements made by your client or any information directly or indirectly derived from statements made by your client during the proffer for any other purpose, including (a) to obtain leads to other evidence that may be used against your client at any stage of a criminal prosecution, (b) in any prosecution of your client for perjury, false statements, or obstruction of justice, or (c) in a prosecution of your client for any crimes of violence, as defined in Title 18, United States Code, Section 16, or any conspiracy to commit a crime of violence.  Provision (a) eliminates the need for a hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by your client during the proffer.  *See Kastigar v. United States*, 408 U.S. 931 (1972).  It is the intent of this agreement to establish that such derivative use is proper.  By signing this letter, your client expressly waives any right to challenge the derivative use of such statements or information.

4.      The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer.  By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

5.      Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not apply to any statements made by your client during the course of the proffer.

6.      In the event evidence other than your client's own statements is developed, regardless of whether it is developed before or after the proffer, this agreement does not impart "transactional" immunity to your client or preclude the government from bringing charges against him in the future.

7.      Your client understands that he is required to provide full and complete information about the subject matter of the proffer and any information about himself which might adversely impact on his credibility as a witness concerning such activity.

INV_00007369

8.      This agreement does not obligate the government to enter into any future plea bargain with your client or to file any motion regarding cooperation provided by your client.

9.      This agreement is not binding on the Civil Division of the United States Attorney's Office for the District of Colorado, any other federal government office, or any other state, tribal, or local office or agency not specifically named in this agreement.

No understandings, promises, or agreements have been entered into other than those set forth in this agreement, and nothing said during the proffer will constitute a promise or agreement unless all parties agree in writing.

                                        Sincerely,

                                        JASON R. DUNN
                                        United States Attorney

                                        *s/ Hetal J. Doshi*
                                        By: Hetal J. Doshi
                                        Assistant United States Attorney

I, Michael Tew, have read this agreement and carefully reviewed it with my attorney.  I understand it, and I voluntarily, knowingly and willfully agree to it without force, threat or coercion.  No other promises or inducements have been made to me other than those contained in this letter.  I am satisfied with the representation of my attorney in this matter.

_____          7/28/20
Michael Aaron Tew                         Date

I acknowledge that I have read this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.

_____          _____
Eric M. Creizman                          Date
Melissa N. Madrigal
Counsel for Michael Aaron Tew

3

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, rodriguez@slhlegal.com), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Nancy Lin Cohen
(cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com,
nancy@cohenblacklaw.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Jamie Hughes Hubbard (hickam@slhlegal.com, hubbard@slhlegal.com, rodriguez@slhlegal.com),
Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: clinde (colin_linde@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), Linda A. McMahan (maureen.carle@usdoj.gov), dddlc5
(elsa_dodds@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9516114@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Exhibits
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 1/24/2024 at 11:06 AM MST and filed on 1/24/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | USA |
| **Document Number:** | 371(No document attached) |

**Docket Text:**
 **CLERK'S NOTE: ORIGINAL GOVERNMENT EXHIBITS for the [355] MINUTE ENTRY for
James Hearing as to Michael Aaron Tew, Kimberley Ann Tew were returned to the
Government on January 24, 2024. Text only entry. (rkeec)**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen      nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld      rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, rodriguez@slhlegal.com), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jamie Hughes Hubbard
(hickam@slhlegal.com, hubbard@slhlegal.com, rodriguez@slhlegal.com), Nancy Lin Cohen
(cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com,
nancy@cohenblacklaw.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: clinde (colin_linde@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), Linda A. McMahan (maureen.carle@usdoj.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9516405@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 1/24/2024 at 12:05 PM MST and filed on 1/24/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | <u>1:20–cr–00305–DDD</u> |
| **Filer:** | |
| **Document Number:** | 372(No document attached) |

**Docket Text:**
**ORDER as to Michael Aaron Tew re [370] Motion in limine regarding proffer statements. The government must file a response to Mr. Tew's motion at or before 5:00 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/24/2024. Text Only Entry (dddlc3, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**