APPEAL,TERMED

# U.S. District Court − District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: <u>1:20−cr−00305−DDD</u> All Defendants

Case title: USA v. Tew et al

Magistrate judge case number:  1:20−mj−00088−KLM

Date Filed: 09/29/2020

Date Terminated: 12/06/2024

---

Assigned to: Judge Daniel D.
Domenico

Appeals court case number:
24−1465 USCA−10th Circuit

**<u>Defendant (1)</u>**

| | | |
|---|---|---|
| **Michael Aaron Tew** <br> *TERMINATED: 11/15/2024* | represented by | **Peter R. Bornstein** <br> Peter R. Bornstein, Law Offices of <br> 6060 Greenwood Plaza Boulevard <br> Suite 500 <br> Greenwood Village, CO 80111 <br> 720−354−4440 <br> Fax: 720−287−5674 <br> Email: pbornstein@prblegal.com <br> *TERMINATED: 01/30/2023* <br> *LEAD ATTORNEY* <br> *Designation: CJA Appointment* |
| | | **David C. Boyer , Jr.** <br> Newland Legal PLLC <br> PO Box 1413 <br> Midlothian, TX 76065 <br> 469−948−1489 <br> Email: david@newlandlegal.com <br> *ATTORNEY TO BE NOTICED* <br> *Designation: CJA Appointment* |
| | | **Edward R. Harris** <br> Federal Public Defender's Office <br> Districts of Colorado and Wyoming <br> 633 17th Street <br> Suite 1000 <br> Denver, CO 80202 <br> 303−294−7002 <br> Email: co.ecf@fd.org |

*TERMINATED: 10/21/2020*
*Designation: Public Defender or Community*
*Defender Appointment*

**Eric M. Creizman**
Armstrong Teasdale LLP
919 Third Avenue
37th Floor
New York, NY 10012
212–209–4400 x4358
Fax: 212–409–8385
Email: ecreizman@atllp.com
*TERMINATED: 08/13/2020*
*Designation: Retained*

**Jason Dale Schall**
Bowlin & Schall Law LLC
7350 East Progress Place
Suite 100
Greenwood Village, CO 80111
720–505–3861
Email: jason@bowsch.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Kristen M. Frost**
Ridley McGreevy & Winocur PC
303 16th Street
Suite 200
Denver, CO 80202
303–629–9700
Fax: 303–629–9702
Email: frost@ridleylaw.com
*ATTORNEY TO BE NOTICED*

**Michael Hassard**
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
718–737–7264
Email: michael@torekeland.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Michael J. Sheehan**
Sheehan Law
8400 East Prentice Avenue
Suite 1040
Greenwood Village, CO 80111
720–381–6146
Email: michael.sheehan.esq@gmail.com

*TERMINATED: 07/29/2020*
*Designation: Retained*

**Thomas Richard Ward**
Stuart & Ward LLP
140 East 19th Avenue
Suite 300
Denver, CO 80203
303–832–8888
Email: tward@stuartwardlaw.com
*TERMINATED: 03/18/2021*
*Designation: CJA Appointment*

**Tor Bernhard Ekeland**
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
718–737–7264
Email: tor@torekeland.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Xuan Zhou**
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street
Suite 1700
San Diego, CA 92101
619–233–1006
Email: xuan.zhou@lewisbrisbois.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Zachary Lee Newland**
Newland Legal, PLLC
P.O. Box 3610
Evergreen, CO 80437
303–948–1489
Email: zach@newlandlegal.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Pending Counts**

18 U.S.C. § 1349 (Conspiracy to
Commit Wire Fraud)
(1s)

**Disposition**

Defendant shall be imprisoned for a total term of
forty–two (42) months. This term consists of
forty–two (42) months on each of Counts 1 through
42 and 44 through 56; and twelve (12) months on
each of counts 57 through 60; all counts imposed
concurrently. Three (3) years supervised release on
each count, to run concurrently. , $5,600.00 special
assessment, no fine, and restitution in the total

| | |
|---|---|
| | amount of $6,331,622.10. |
| 18 U.S.C. § 1343 (Wire Fraud) (2s–40s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10. |
| 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) (41s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (42s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (44s–56s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10. |
| 26 U.S.C. § 7203 (Willful Failure to File Tax Return) (57s–60s) | Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. , $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1349 (Attempt and Conspiracy) (1) | |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (2) | |
| 26 U.S.C. § 7201 (Attempt to Evade or Defeat Tax) (3) | |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| 18 U.S.C. § 19569(h) Conspiracy to Commit Money Laundering | |

Assigned to: Judge Daniel D. Domenico

Appeals court case number: 24–1333 USCA–10th Circuit

**Defendant (2)**

| | | |
|---|---|---|
| **Kimberley Ann Tew** *TERMINATED: 08/13/2024* *also known as* Kimberley Vertanen *TERMINATED: 08/13/2024* | represented by | **Peter R. Bornstein** (See above for address) *TERMINATED: 12/29/2022* *LEAD ATTORNEY* *Designation: CJA Appointment* |
| | | **David Scott Kaplan** Stimson LaBranche Hubbard, LLC 1652 North Downing Street Denver, CO 80203 720–689–8909 Fax: 720–689–8909 Email: kaplan@slhlegal.com *ATTORNEY TO BE NOTICED* *Designation: CJA Appointment* |
| | | **Jamie Hughes Hubbard** |

Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80218
720–689–8909
Email: hubbard@slhlegal.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Michael Hassard**
(See above for address)
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Tor Bernhard Ekeland**
(See above for address)
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Xuan Zhou**
(See above for address)
*TERMINATED: 03/07/2022*
*Designation: Retained*

| <u>**Pending Counts**</u> | <u>**Disposition**</u> |
|---|---|
| 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) (1) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (21–22) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (25–26) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (31–32) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |

| | |
|---|---|
| 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) (41) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (43−44) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (47) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (56) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1343 (Wire Fraud) (16) | Dismissed by Court during jury trial. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (48) | Defendant was found not guilty by jury at trial. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

Assigned to: Judge Daniel D. Domenico

**Defendant (3)**

| | | |
|---|---|---|
| **Jonathan K. Yioulos** | represented by | **Michael John Tallon** |
| *TERMINATED: 12/06/2024* | | Michael J. Tallon, Attorney at Law |

**Jonathan K. Yioulos**
*TERMINATED: 12/06/2024*

represented by

**Michael John Tallon**
Michael J. Tallon, Attorney at Law
401 Stony Brook Road
Rush, NY 14543–9419
585–329–8139
Email: mtallon@tallonlaw.com
*TERMINATED: 07/20/2023*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Richard Kent Kornfeld**
Recht & Kornfeld, P.C.
1600 Stout Street
Suite 1400
Denver, CO 80202
303–573–1900
Fax: 303–446–9400
Email: rick@rklawpc.com
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) (1) | Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (39) | Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1343 (Wire Fraud) (2–38) | Dismissed on United States of Americas Motion to Dismiss Counts. |
| 18 U.S.C. § 1343 (Wire Fraud) (40) | Dismissed on United States of Americas Motion to Dismiss Counts. |

**Highest Offense Level**

**(Terminated)**

Felony

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Movant**

| **National Air Cargo Holdings, Inc.** | represented by | **Eric S. Galler** |
| --- | --- | --- |

Galler Corporate Law Group
9466 Georgia Avenue
Suite 130
Silver Spring, MD 20910
301−728−3850
Email: egaller@gcorplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
Cohen Black Law LLC
1888 North Sherman Street
Suite 770
Denver, CO 80203
720−699−2323
Email: nancy@cohenblacklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

| **National Air Cargo Group, Inc.** | represented by | **Eric S. Galler** |
| --- | --- | --- |

*doing business as*
National Airlines

(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

| **Christopher J. Alf** | represented by | **Eric S. Galler** |
| --- | --- | --- |

(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Movant**

**Atlantic Union Bank**                    represented by  **Lisa Marie Saccomano**
Kutak Rock LLP
2001 16th Street
Suite 1800
Denver, CO 80202
303–297–2400
Email: lisa.saccomano@kutakrock.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

---

**Plaintiff**

**USA**                    represented by  **Matthew T. Kirsch**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: matthew.kirsch@usdoj.gov
*TERMINATED: 11/17/2021*
*LEAD ATTORNEY*
*Designation: Federal Agency Attorney*

**Albert C. Buchman**
U.S. Attorney's Office
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0228
Email: al.buchman@usdoj.gov
*TERMINATED: 12/12/2023*
*Designation: Federal Agency Attorney*

**Andrea Lee Surratt**
Crowell & Moring LLP

District of Colorado
1601 Wewatta Street
Suite 815
Denver, CO 80202
303–524–8645
Email: asurratt@crowell.com
*TERMINATED: 06/16/2022*
*Designation: Federal Agency Attorney*

**Bryan David Fields**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: bryan.fields3@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Hetal Janak Doshi**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
202–808–4241
Email: hetal.doshi@usdoj.gov
*TERMINATED: 02/02/2022*
*Designation: Federal Agency Attorney*

**Laura Beth Hurd**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0135
Fax: 303–454–0402
Email: laura.hurd@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Martha Ann Paluch**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402

Email: Martha.paluch@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Sarah Hunter Weiss**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Email: sarah.weiss@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 07/08/2020 | 1 | CRIMINAL COMPLAINT as to Michael Aaron Tew (1). (Attachments: # 1 Affidavit, # 2 Criminal Information Sheet) (cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/08/2020 | 2 | Arrest Warrant Issued in case as to Michael Aaron Tew. (cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 3 | Arrest of Michael Aaron Tew. Initial Appearance set for 7/9/2020 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (Text Only entry)(cmadr, ) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 4 | NOTICE OF ATTORNEY APPEARANCE: Michael James Sheehan appearing for Michael Aaron TewAttorney Michael James Sheehan added to party Michael Aaron Tew(pty:dft) (Sheehan, Michael) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 5 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 6 | ORDER ***granting 5 Motion as to Michael Aaron Tew (1), by Magistrate Judge Kristen L. Mix on 7/9/20. (nmarb, ) (nmarb, ). [1:20–mj–00088–KLM] (Entered: 07/09/2020) |
| 07/09/2020 | 7 | MINUTE ENTRY for Initial Appearance as to Michael Aaron Tew held before Magistrate Judge Kristen L. Mix on 7/9/2020. Defendant present in custody via video conference. Defendant advised. Defendant has retained private counsel and is not requesting court appointed counsel. Parties address the Court regarding release conditions. Bond set as to Michael Aaron Tew (1) $20,000 Unsecured with the conditions as set forth in the Order Setting Conditions of Release. Preliminary Examination set for 7/29/2020 2:00 PM in Courtroom A501 before Magistrate Judge Michael E. Hegarty. Defendant advised of conditions of bond and remanded for processing and release. (Total time: 14 minutes, Hearing time: 2:08–2:22)<br><br>**APPEARANCES**: Hetal Doshi on behalf of the Government via video conference, Michael Sheehan on behalf of the defendant, Angela Ledesma on behalf of pretrial via video conference FTR: KLM Courtroom A401. (lgale, ) Text Only Entry [1:20–mj–00088–KLM] (Entered: 07/09/2020) |

| 07/09/2020 | 8 | Unsecured Bond Entered as to Michael Aaron Tew in amount of $20,000 (lgale, ) [1:20−mj−00088−KLM] (Entered: 07/09/2020) |
|---|---|---|
| 07/09/2020 | 9 | ORDER Setting Conditions of Release as to Michael Aaron Tew (1) $20,000 Unsecured by Magistrate Judge Kristen L. Mix on 7/9/20. (lgale, ) [1:20−mj−00088−KLM] (Entered: 07/09/2020) |
| 07/10/2020 | 11 | Passport Receipt as to Michael Aaron Tew.Surrender of passport re Bond Conditions; Passport Number 484644160 issued by USA (jtorr, ) [1:20−mj−00088−KLM] (Entered: 07/10/2020) |
| 07/15/2020 | 12 | Arrest Warrant Returned Executed on 7/8/20 in case as to Michael Aaron Tew. (nmarb, ) [1:20−mj−00088−KLM] (Entered: 07/15/2020) |
| 07/20/2020 | 13 | Unopposed MOTION to Withdraw as Attorney by Michael Sheehan by Michael Aaron Tew. (Sheehan, Michael) [1:20−mj−00088−KLM] (Entered: 07/20/2020) |
| 07/21/2020 | 14 | MINUTE ORDER by Magistrate Judge Michael E. Hegarty on 21 July 2020 as to Michael Aaron Tew. The Court is not in possession of a financial affidavit by which to determine whether court appointed counsel is appropriate in this case.Therefore, on or before July 24, 2020, Defendant shall complete and file a financial affidavit by which the Court may determine whether to appoint counsel for Defendant. (cmadr, ) [1:20−mj−00088−KLM] (Entered: 07/21/2020) |
| 07/25/2020 | 15 | SUPPLEMENT to 13 Unopposed MOTION to Withdraw as Attorney by Michael Sheehan by Michael Aaron Tew (Sheehan, Michael) [1:20−mj−00088−KLM] (Entered: 07/25/2020) |
| 07/28/2020 | 16 | Joint MOTION to Exclude *Time Before Indictment* by USA as to Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) [1:20−mj−00088−KLM] (Entered: 07/28/2020) |
| 07/28/2020 | 17 | NOTICE OF ATTORNEY APPEARANCE: Eric M. Creizman appearing for Michael Aaron Tew. Attorney Eric M. Creizman added to party Michael Aaron Tew. (pty:dft) (nmarb, ) [1:20−mj−00088−KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 18 | Minute ORDER by Magistrate Judge Michael E. Hegarty on 29 July 2020. For good cause shown pursuant to D.C. Colo. LAttyR 5(b), the Motion to Withdraw filedby Michael Sheehan 13 is granted. Mr. Sheehan's representation of the Defendant in this case is terminated. Defendant will continue to be represented Eric Creizman. (cmadr, ) [1:20−mj−00088−KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 19 | COURTROOM MINUTES for proceedings held before Magistrate Judge Michael E. Hegarty: Preliminary Hearing as to Michael Aaron Tew held on 7/29/2020. Defendant present on bond. Preliminary hearing waived. Status Conference set for 10/14/2020 at 02:00 PM in Courtroom A 501 before Magistrate Judge Michael E. Hegarty. (Total time: 8 minutes, Hearing time: 2:12 p.m.−2:20 p.m.)<br><br>**APPEARANCES**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Eric Creizman on behalf of the defendant. FTR: A501. (cthom, ) Text Only Entry [1:20−mj−00088−KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 20 | WAIVER of Preliminary Hearing by Michael Aaron Tew (cthom, ) [1:20−mj−00088−KLM] (Entered: 07/29/2020) |
| 07/29/2020 | 21 | |

| | | ORDER granting 16 Motion to Exclude as to Michael Aaron Tew (1) by Magistrate Judge Michael E. Hegarty on 7/29/2020. (cthom, ) [1:20−mj−00088−KLM] (Entered: 07/29/2020) |
|---|---|---|
| 08/04/2020 | 22 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20−mj−00088−KLM] (Entered: 08/04/2020) |
| 08/07/2020 | 24 | NOTICE OF ATTORNEY APPEARANCE Matthew T. Kirsch appearing for USA. Attorney Matthew T. Kirsch added to party USA(pty:pla) (Kirsch, Matthew) [1:20−mj−00088−KLM] (Entered: 08/07/2020) |
| 08/12/2020 | 25 | MOTION to Withdraw as Attorney by Eric M. Creizman by Michael Aaron Tew. (Creizman, Eric) [1:20−mj−00088−KLM] (Entered: 08/12/2020) |
| 08/12/2020 | 26 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Creizman, Eric) [1:20−mj−00088−KLM] (Entered: 08/12/2020) |
| 08/12/2020 | 27 | MOTION for Leave to Restrict by Michael Aaron Tew. (Creizman, Eric) [1:20−mj−00088−KLM] (Entered: 08/12/2020) |
| 08/13/2020 | 28 | Minute ORDER by Magistrate Judge Kristen L. Mix on 13 August 2020. IT IS HEREBY ORDERED that, on or before August 20, 2020, Defendant shall complete and file a financial affidavit (attached to this Minute Order) by which the Court may determine whether to appoint counsel for Defendant. IT IS FURTHER ORDERED that the Motion to Withdraw # 25 is GRANTED to the extent that Mr. Creizman is relieved of all further representation of Defendant. (Attachments: # 1 CJA Attachment) (cmadr, ) [1:20−mj−00088−KLM] (Entered: 08/13/2020) |
| 08/17/2020 | 29 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Attachments: # 1 Affidavit CJA 23 Affidavit)(Creizman, Eric) [1:20−mj−00088−KLM] (Entered: 08/17/2020) |
| 08/19/2020 | 30 | MINUTE ORDER APPOINTING COUNSEL Under CJA, as to Michael Aaron Tew by Magistrate Judge Kristen L. Mix on 8/19/20. IT IS FURTHER ORDERED that if it appears at any time that the Defendant can afford to pay counsel, reimbursement of attorney fees may be required pursuant to 18 U.S.C. §3006A(f). (nmarb, ) [1:20−mj−00088−KLM] (Entered: 08/19/2020) |
| 08/24/2020 | 31 | NOTICE OF ATTORNEY APPEARANCE: Edward R. Harris appearing for Michael Aaron TewAttorney Edward R. Harris added to party Michael Aaron Tew(pty:dft) (Harris, Edward) [1:20−mj−00088−KLM] (Entered: 08/24/2020) |
| 09/17/2020 | 32 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 9/17/20 GRANTING 27 Motion for Leave to Restrict, as to Michael Aaron Tew (1). Pursuant toD.COLO.LCrR 47.1, the Clerk of the Court is directed to maintain the following document UNDER RESTRICTION at LEVEL 3:1 Declaration of Eric M. Creizman in Support of Motion to Withdraw as Counsel to Michael Tew [#26]. (nmarb, ) [1:20−mj−00088−KLM] (Entered: 09/17/2020) |
| 09/17/2020 | 33 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) [1:20−mj−00088−KLM] (Entered: 09/17/2020) |
| 09/17/2020 | 34 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20−mj−00088−KLM] (Entered: 09/17/2020) |

| 09/18/2020 | 35 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew. (nmarb, ) [1:20–mj–00088–KLM] (Entered: 09/18/2020) |
|---|---|---|
| 09/18/2020 | 36 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew. (nmarb, ) [1:20–mj–00088–KLM] (Entered: 09/18/2020) |
| 09/22/2020 | 37 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 9/22/20 as to Michael Aaron Tew re 36 Restricted Document – Level 1. Status Conference set for 11/9/2020 10:00 AM in Courtroom A401 before Magistrate Judge Kristen L. Mix. Text Only Entry (lgale, ) [1:20–mj–00088–KLM] (Entered: 09/22/2020) |
| 09/24/2020 | 38 | Utility Setting Hearings as to Michael Aaron Tew: Text Only Entry Status Conference set for 9/29/2020 01:30 PM in Courtroom A 502 before Magistrate Judge Nina Y. Wang. All parties shall appear by video/telephone conference. (bwilk, ) [1:20–mj–00088–KLM] (Entered: 09/28/2020) |
| 09/29/2020 | 39 | MOTION for Leave to Restrict by Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 40 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 41 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 42 | Unopposed MOTION to Modify 8 Bond, 7 Initial Appearance,,,, Bond Set/Reset,,,, Set Hearings,,,, Text Only Entry – Prompts,,, 9 Order Setting Conditions of Release by Michael Aaron Tew. (Harris, Edward) [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 44 | COURTROOM MINUTES for Status Conference, and Arraignment as to Michael Aaron Tew held on 9/29/2020 before Magistrate Judge Nina Y. Wang. Defendant present on bond appearing by videoconference. Defendant advised regarding proceeding by remote means pursuant to CARES Act. Defendant consents. Defendant waives proceeding by indictment. Defendant sworn. Defendant questioned regarding waiver. Waiver tendered to the court. Information and penalty sheet tendered. Criminal Case number issues is 20–cr–00305. Defendant advised regarding the charges, penalties, and fines. Plea of NOT GUILTY entered by defendant. Parties do not believe a discovery conference is necessary in this matter. Defendant intends to file a motion to modify bond which will likely be referred to Judge Mix since she set the original conditions. Parties discuss process for Restricting #39 to Level 1 and the notice period. Defendants bond continues. (Total time: 16 minutes, Hearing time: 1:33–1:49)<br><br>**APPEARANCES**: Hetal Doshi and Matthew Krisch on behalf of the Government, Edward Harris on behalf of the Defendant. FTR: NYW–CRD. (bwilk, ) Text Only Entry [1:20–mj–00088–KLM] (Entered: 09/29/2020) |
| 09/29/2020 | 45 | WAIVER OF INDICTMENT by Michael Aaron Tew by Magistrate Judge Nina Y. Wang on 9/29/2020. (bwilk, ) [1:20–mj–00088–KLM] (Entered: 09/30/2020) |
| 09/29/2020 | 49 | UNRESTRICTED INFORMATION – Level 2 as to Michael Aaron Tew (1) count(s) 1, 2, 3. (Attachments: # 1 Penalty Sheet ) (bwilk, ) Modified on 10/9/2020 to adjust restriction level (athom, ). Modified on 1/20/2021 to unrestrict pursuant to 81 Order (athom, ). (Entered: 10/05/2020) |

| 09/30/2020 | 46 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) [1:20–mj–00088–KLM] (Entered: 09/30/2020) |
|---|---|---|
| 09/30/2020 | 48 | RESTRICTED DOCUMENT – Level 1 as to Michael Aaron Tew. (jgonz, ) (Entered: 10/02/2020) |
| 10/01/2020 | 47 | NOTICE of Disposition by Michael Aaron Tew (Harris, Edward) (Entered: 10/01/2020) |
| 10/06/2020 | 50 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 10/6/20 as to Michael Aaron Tew re 42 Unopposed MOTION to Modify 8 Bond. Motion Hearing set for 10/8/2020 1:30 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. Text Only Entry (lgale, ) (Entered: 10/06/2020) |
| 10/07/2020 | 51 | ORDER Setting Change of Plea hearing and Authorizing VTC or Telephone Conference as to Michael Aaron Tew re 47 Notice of Disposition. Change of Plea Hearing set for 10/22/2020 10:30 AM in Courtroom A 702 before Judge Daniel D. Domenico. The change–of–plea hearing in the above–referenced matter shall be conducted by VTC, or by telephone conference if VTC is not reasonably available. By Judge Daniel D. Domenico on 10/07/2020. (athom, ) (Entered: 10/07/2020) |
| 10/08/2020 | 52 | MINUTE ENTRY for Motion Hearing as to Michael Aaron Tew held before Magistrate Judge Kristen L. Mix on 10/8/2020. Defendant present on bond via video conference. Parties address the Court regarding 42 Motion to Modify as to Michael Aaron Tew (1). For the reasons stated on the record, it is: ORDERED: 42 Motion to Modify as to Michael Aaron Tew (1) is GRANTED. Defendant's bond is modified to remove the condition of home detention. Gps will remain in effect and a 9:00 pm curfew is imposed.Defendant continued on bond. (Total time: 4 minutes, Hearing time: 1:31–1:35)<br><br>**APPEARANCES (ALL PARTIES APPEAR BY VIDEO CONFERENCE):** Hetal Doshi and Matthew Kirsch on behalf of the Government, Edward Harris on behalf of the defendant, Carolos Morales on behalf of probation. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 10/08/2020) |
| 10/21/2020 | 54 | MOTION to Withdraw as Attorney by Edward R. Harris by Michael Aaron Tew. (Harris, Edward) (Entered: 10/21/2020) |
| 10/21/2020 | 55 | ORDER granting 54 Motion to Withdraw as Attorney. Good cause having been shown, attorney Edward R. Harris is relieved of any further representation in this case. The Clerk of Court is instructed to terminate Mr. Harris as counsel of record, and to remove his name from the electronic certificate of mailing. An attorney from the Criminal Justice Act panel shall be appointed to represent Defendant Michael Aaron Tew. Absent extraordinary circumstances, no further motions to withdraw or motions to substitute counsel will be granted. The court reminds Mr. Tew that counsel is under a duty to provide him prudent and considered advice, even if that advice is not what Mr. Tew hopes to hear. SO ORDERED by Judge Daniel D. Domenico on 10/21/2020. Text Only Entry (dddlc2, ) (Entered: 10/21/2020) |
| 10/21/2020 | 56 | ORDER VACATING the change of plea hearing as to Michael Aaron Tew. In the light of this court's order granting Edward Harris' motion to withdraw as counsel for Mr. Tew 55 , the change of plea hearing set for tomorrow, 10/22/2020, is hereby VACATED. SO ORDERED by Judge Daniel D. Domenico on 10/21/2020. Text Only Entry (dddlc2, ) (Entered: 10/21/2020) |

| 10/21/2020 | 57 | Letter by Michael Aaron Tew. (athom, ) (Entered: 10/21/2020) |
|---|---|---|
| 10/22/2020 | 58 | NOTICE OF ATTORNEY APPEARANCE: Thomas Richard Ward appearing for Michael Aaron TewAttorney Thomas Richard Ward added to party Michael Aaron Tew(pty:dft) (Ward, Thomas) (Entered: 10/22/2020) |
| 10/22/2020 | 59 | MINUTE ORDER re: 47 notice of disposition. Defendant shall file a status report regarding the status of his plea and any other issues he wishes to bring to the court's attention no later than 11/12/2020. SO ORDERED by Judge Daniel D. Domenico on 10/22/2020. Text Only Entry (dddlc2, ) (Entered: 10/22/2020) |
| 10/27/2020 | 60 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 10/27/2020) |
| 10/27/2020 | 61 | Unopposed MOTION for Leave to Restrict by USA as to Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 10/27/2020) |
| 10/27/2020 | 62 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew (Doshi, Hetal) (Entered: 10/27/2020) |
| 10/28/2020 | 63 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew. (athom, ) (Entered: 10/28/2020) |
| 10/28/2020 | 64 | ORDER granting 61 Motion for Leave to Restrict as to Michael Aaron Tew. By Judge Daniel D. Domenico on 10/28/2020. Text Only Entry (athom, ) (Entered: 10/28/2020) |
| 11/12/2020 | 65 | MOTION for Leave to Restrict by Michael Aaron Tew. (Ward, Thomas) (Entered: 11/12/2020) |
| 11/12/2020 | 66 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 11/12/2020) |
| 11/12/2020 | 67 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 11/12/2020) |
| 11/13/2020 | 68 | ORDER granting 65 Motion for Leave to Restrict as to Michael Aaron Tew. For good cause shown, documents 66 and 67 shall remain at a Level 2 Restriction. SO ORDERED by Judge Daniel D. Domenico on 11/13/2020. Text Only Entry (dddlc2, ) (Entered: 11/13/2020) |
| 11/13/2020 | 69 | MINUTE ORDER re Status Report 67 . Defendant shall file a status report regarding the status of his plea and any other issues he wishes to bring to the court's attention no later than 12/10/2020. SO ORDERED by Judge Daniel D. Domenico on 11/13/2020. Text Only Entry (dddlc2, ) (Entered: 11/13/2020) |
| 12/10/2020 | 70 | MOTION for Leave to Restrict by Michael Aaron Tew. (Ward, Thomas) (Entered: 12/10/2020) |
| 12/10/2020 | 71 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 12/10/2020) |
| 12/10/2020 | 72 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 12/10/2020) |
| 12/11/2020 | 73 | ORDER granting 70 Motion for Leave to Restrict as to Michael Aaron Tew (1). For good cause shown, Docs. 71 and 72 shall remain at a Level 2 restriction. Defendant is |

| | | |
|---|---|---|
| | | further ORDERED to file a status report in this matter no later than **noon** on 12/23/2020. SO ORDERED by Judge Daniel D. Domenico on 12/11/2020. Text Only Entry (dddlc2, ) (Entered: 12/11/2020) |
| 12/11/2020 | 74 | Utility Setting/Resetting Deadlines/Hearings as to Michael Aaron Tew: Status Report due by 12/23/2020 pursuant to 73 Order. Text Only Entry (athom, ) (Entered: 12/11/2020) |
| 12/23/2020 | 75 | STATUS REPORT by Michael Aaron Tew (Ward, Thomas) (Entered: 12/23/2020) |
| 12/28/2020 | 76 | Order regarding status report 75 filed by Michael Aaron Tew. In light of Mr. Tew's withdrawal of his notice of disposition, unless the parties file a motion to the contrary, the court will remove the restriction on the information on 1/4/21. SO ORDERED by Judge Daniel D. Domenico on 12/28/2020. Text Only Entry (dddlc2, ) (Entered: 12/28/2020) |
| 01/04/2021 | 77 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Ward, Thomas) (Entered: 01/04/2021) |
| 01/04/2021 | 78 | MOTION for Leave to Restrict by Michael Aaron Tew. (Ward, Thomas) (Entered: 01/04/2021) |
| 01/05/2021 | 79 | MINUTE ORDER as to Defendant Michael Aaron Tew's Motion to Restrict 77 . The government shall file its response in opposition to the motion, if any, no later than 1/12/2021. SO ORDERED by Judge Daniel D. Domenico on 1/5/2021. Text Only Entry (dddlc2, ) (Entered: 01/05/2021) |
| 01/12/2021 | 80 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Doshi, Hetal) (Entered: 01/12/2021) |
| 01/20/2021 | 81 | Order Denying 78 Motion to Maintain Restriction on Indictment. Mr. Tew has failed to identify a private interest in restriction of the information in this case sufficient to overcome the presumption in favor of public access to court documents. His motion to restrict access is thus DENIED. The clerk is directed to un–restrict the information in this case, Doc. 49. SO ORDERED by Judge Daniel D. Domenico on 1/20/2021. Text Only Entry (dddlc2, ) (Entered: 01/20/2021) |
| 01/20/2021 | 82 | ORDER Setting Trial Date and Related Deadlines as to Michael Aaron Tew. Motions due by 2/17/2021. Responses due by 2/24/2021. Five–day Jury Trial set for 3/15/2021 at 09:00 AM in Courtroom A 702 before Judge Daniel D. Domenico. Trial Preparation Conference set for 3/3/2021 at 01:30 PM in Courtroom A 702 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 01/20/2021. (athom, ) (Entered: 01/20/2021) |
| 02/03/2021 | 83 | INDICTMENT as to Michael Aaron Tew (1) count(s) 1s, 2s–40s, 41s, 42s, 44s–56s, 57s–60s, Kimberley Ann Tew (2) count(s) 1, 16, 21–22, 25–26, 31–32, 41, 43–44, 47–48, 56, Jonathan K. Yioulos (3) count(s) 1, 2–40. (Attachments: # 1 Penalty Sheet, # 2 Penalty Sheet, # 3 Penalty Sheet) (athom, ) Modified on 2/9/2021 to correct text (athom, ). (Entered: 02/04/2021) |
| 02/03/2021 | 84 | RESTRICTED DOCUMENT – Level 4 as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 85 | Summons Issued as to Michael Aaron Tew. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 86 | |

| | | MINUTE ORDER as to Michael Aaron Tew on 02/03/2021. Initial Appearance on Summons set for 2/5/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix pursuant to 83 Indictment. Text Only Entry (athom, ) (Entered: 02/04/2021) |
|---|---|---|
| 02/03/2021 | 87 | Summons Issued as to Kimberley Ann Tew. Initial Appearance set for 2/10/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 88 | Summons Issued as to Jonathan K. Yioulos. Initial Appearance set for 2/9/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (athom, ) (Entered: 02/04/2021) |
| 02/05/2021 | 89 | MOTION to Modify Conditions of Release by Michael Aaron Tew. (Ward, Thomas) (Entered: 02/05/2021) |
| 02/05/2021 | 90 | MINUTE ENTRY for Initial Appearance, Arraignment and Discovery Hearing as to Michael Aaron Tew held before Magistrate Judge Kristen L. Mix on 2/5/2021. Defendant present on bond and consents to proceeding via video conference. Defendant advised. Counsel has previously been appointed. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed. Argument by counsel for the government and defense counsel as to 89 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). The Court DENIES 89 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Defendant's bond continued, Counsel is directed to chambers. (Total time: 29 minutes, Hearing time: 2:21–2:50)  **APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Tom Ward on behalf of the defendant. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/05/2021) |
| 02/05/2021 | 91 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Michael Aaron Tew by Magistrate Judge Kristen L. Mix on 2/5/21. (lgale, ) (Entered: 02/05/2021) |
| 02/09/2021 | 92 | MINUTE ENTRY for Initial Appearance, Arraignment, Discovery and Detention Hearing as to Jonathan K. Yioulos held before Magistrate Judge Kristen L. Mix on 2/9/2021. Defendant present on summons by video conference. Defendant advised. Defendant is not requesting court appointed counsel and is retaining an attorney. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed. Parties address the Court regarding conditions of release. Bond set as to Jonathan K. Yioulos (3) $40,000 Unsecured, with the conditions as set forth in the Order Setting Conditions of Release. Defendant advised of conditions of bond. Counsel is directed to chambers. (Total time: 12 minutes, Hearing time: 2:09–2:21)  **APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Michael Tallon on behalf of the defendant, Angela Ledesma on behalf of pretrial. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/09/2021) |
| 02/09/2021 | 93 | Unsecured Bond Entered as to Jonathan K. Yioulos in amount of $40,000 (lgale, ) (Entered: 02/09/2021) |
| 02/09/2021 | 94 | ORDER Setting Conditions of Release as to Jonathan K. Yioulos (3) $40,000 Unsecured by Magistrate Judge Kristen L. Mix on 2/9/21. (lgale, ) (Entered: |

| | | 02/09/2021) |
|---|---|---|
| 02/09/2021 | 95 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Jonathan K. Yioulos by Magistrate Judge Kristen L. Mix on 2/9/21. (lgale, ) (Entered: 02/09/2021) |
| 02/10/2021 | 96 | MINUTE ENTRY for Initial Appearance, Arraignment, Discovery and Detention Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 2/10/2021. Defendant present on summons and consents to proceeding by video conference. Defendant advised. Defendant is not requesting court appointed counsel. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed.Parties address the Court regarding conditions of release. Bond set as to Kimberley Ann Tew (2) $10,000 Unsecured with the conditions as set forth in the Order Setting Conditions of Release. Defendant is ordered to report to the probation office on 2–11–21 at 1:00 p.m. Defendant advised of conditions of bond. Counsel is directed to chambers. (Total time: 28 minutes, Hearing time: 2:31–2:59)<br><br>**APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Jamie Hubbard on behalf of the defendant, Tommie Anderson on behalf of pretrial. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/10/2021) |
| 02/10/2021 | 97 | Discovery Conference Memorandum and ORDER: Estimated Trial Time – 8 days as to Kimberley Ann Tew by Magistrate Judge Kristen L. Mix on 2/10/21. (lgale, ) (Entered: 02/10/2021) |
| 02/10/2021 | 98 | Unsecured Bond Entered as to Kimberley Ann Tew in amount of $10,000 (lgale, ) (Entered: 02/10/2021) |
| 02/10/2021 | 99 | ORDER Setting Conditions of Release as to Kimberley Ann Tew (2) $10,000 Unsecured by Magistrate Judge Kristen L. Mix on 2/10/21. (lgale, ) (Entered: 02/10/2021) |
| 02/11/2021 | 100 | Unopposed MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 02/11/2021) |
| 02/11/2021 | 101 | ORDER Setting Trial Date and Related Deadlines as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. The court EXCLUDES nineteen days from Mr. Tew's Speedy Trial clock. Motions due by 3/12/2021. Responses due by 3/17/2021. Eight–day Jury Trial set for 4/19/2021 at 09:00 AM in Courtroom A 702 before Judge Daniel D. Domenico. Trial Preparation Conference set for 4/12/2021 at 01:30 PM in Courtroom A 702 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 02/11/2021. (athom, ) (Entered: 02/11/2021) |
| 02/11/2021 | 102 | ORDER GRANTING 100 Unopposed Motion to Travel as to Jonathan Yioulos. Mr. Yioulos may travel to Sarasota, Florida, to visit his wife's family from 2/13/21 to 2/18/21. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from his trip. SO ORDERED by Judge Daniel D. Domenico on 2/11/2021. Text Only Entry (dddlc2, ) (Entered: 02/11/2021) |
| 02/11/2021 | 104 | Passport Receipt as to Kimberley Ann Tew. Surrender of passport re Bond Conditions; Passport Number 522213975 issued by USA. (athom, ) (Entered: 02/12/2021) |

| 02/16/2021 | 105 | Summons Returned Executed on 2/11/2021 as to Kimberley Ann Tew. (angar, ) (Entered: 02/16/2021) |
|---|---|---|
| 02/25/2021 | 106 | NOTICE OF ATTORNEY APPEARANCE: Tor Bernhard Ekeland appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Tor Bernhard Ekeland added to party Michael Aaron Tew(pty:dft), Attorney Tor Bernhard Ekeland added to party Kimberley Ann Tew(pty:dft) (Ekeland, Tor) (Entered: 02/25/2021) |
| 02/28/2021 | 108 | MOTION for Hearing *Regarding Joint Representation Pursuant to Fed. R. Crim. P. 44* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Doshi, Hetal) (Entered: 02/28/2021) |
| 03/01/2021 | 109 | MINUTE ORDER regarding 108 motion for hearing concerning joint representation of Defendants Michael Aaron Tew and Kimberley Ann Tew. No later than 4:00 PM on 3/4/2021, Mr. Tew, Ms. Tew, and the Government must confer and email the court at domenico_chambers@cod.uscourts.gov with three mutually agreeable dates for a hearing on the Government's motion (Doc. 108) from the following list of dates: 3/9/21, 3/10/21, 3/11/21, 3/17/21, or 3/18/21. Mr. and Ms. Tew must file their responses to the Government's motion, if any, no later than 3/5/2021. SO ORDERED by Judge Daniel D. Domenico on 3/1/2021. Text Only Entry (dddlc2, ) (Entered: 03/01/2021) |
| 03/01/2021 | 110 | NOTICE OF ATTORNEY APPEARANCE Andrea Lee Surratt appearing for USA. Attorney Andrea Lee Surratt added to party USA(pty:pla) (Surratt, Andrea) (Entered: 03/01/2021) |
| 03/02/2021 | 111 | MOTION to Withdraw as Attorney by Thomas R. Ward by Michael Aaron Tew. (Ward, Thomas) (Entered: 03/02/2021) |
| 03/02/2021 | 112 | ORDER setting hearing on 108 motion concerning joint representation and 111 motion to withdraw. A hearing on the Government's motion concerning joint representation (Doc. 108) and Thomas R. Ward's motion to withdraw as counsel (Doc. 111) is hereby set for 3/18/2021 at 10:30 AM before Judge Daniel D. Domenico by video–teleconference. Counsel are directed to contact Courtroom Deputy Patti Glover at patricia_glover@cod.uscourts.gov no later than three business days before the hearing for instructions on how to proceed. SO ODERED by Judge Daniel D. Domenico on 3/2/2021. Text Only Entry (dddlc2, ) (Entered: 03/02/2021) |
| 03/03/2021 | 113 | Unopposed MOTION to Continue *Deadline for Production of Discovery* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Doshi, Hetal) (Entered: 03/03/2021) |
| 03/03/2021 | 114 | ORDER granting 113 Motion to Continue. The Government must produce discovery in this case no later than 14 days after the court rules on the Government's motion concerning joint representation. SO ORDERED by Judge Daniel D. Domenico on 3/3/2021. (dddlc2, ) (Entered: 03/03/2021) |
| 03/11/2021 | 115 | MOTION to Continue *FOR A 180–DAY ENDS OF JUSTICE CONTINUANCE UNDER 18 U. S. C. § 3161(h)(7)* by Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Entered: 03/11/2021) |
| 03/18/2021 | 116 | MINUTE ENTRY for Motion Hearing as to Michael Aaron Tew, Kimberley Ann Tew, held before Judge Daniel D. Domenico on 3/18/2021. granting 108 Motion for Hearing as to Michael Aaron Tew; Kimberley Ann Tew (2); granting 111 Motion to |

| | | Withdraw as Attorney. Thomas Richard Ward withdrawn from case as to Michael Aaron Tew granting 115 Motion to Continue as to all defendants. Pretrial Motions due by 8/30/2021, Responses due by 9/6/2021, Jury Trial (8 days) set for 10/12/2021 – 10/21/2021 09:00 AM; Trial Preparation Conference set for 9/27/2021 at 10:30 AM all in Courtroom A 702 before Judge Daniel D. Domenico Court Reporter: Tracy Weir. (pglov) (Entered: 03/18/2021) |
|---|---|---|
| 03/23/2021 | 117 | NOTICE OF ATTORNEY APPEARANCE: Michael John Tallon appearing for Jonathan K. Yioulos (Tallon, Michael) (Entered: 03/23/2021) |
| 03/29/2021 | 118 | Unopposed MOTION to Travel *Beyond Pre−trial Release Order* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/29/2021) |
| 03/29/2021 | 119 | MOTION for Leave to Restrict by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 03/29/2021) |
| 03/29/2021 | 120 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Doshi, Hetal) (Entered: 03/29/2021) |
| 03/29/2021 | 121 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Doshi, Hetal) (Entered: 03/29/2021) |
| 03/30/2021 | 122 | ORDER GRANTING 118 Unopposed Motion to Travel as to Jonathan Yioulos. Mr. Yioulos may travel to St. Thomas, American Virgin Islands from 4/5/21 to 4/9/21. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from his trip. SO ORDERED by Judge Daniel D. Domenico on 3/30/2021. Text Only Entry (dddlc2, ) (Entered: 03/30/2021) |
| 03/30/2021 | 123 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 118 Unopposed MOTION to Travel *Beyond Pre−trial Release Order*, 117 Notice of Attorney Appearance – Defendant filed by attorney Michael John Tallon. The format for the attorneys signature block information is not correct. **DO NOT REFILE THE DOCUMENTS. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). Also the documents were scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENTS. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 03/30/2021) |
| 03/30/2021 | 124 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 03/30/2021) |
| 03/30/2021 | 125 | ORDER granting 119 Motion for Leave to Restrict as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. By Judge Daniel D. Domenico on 03/30/2021. Text Only Entry (athom, ) (Entered: 03/30/2021) |
| 03/31/2021 | 126 | Unopposed MOTION for Protective Order by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 03/31/2021) |
| 04/01/2021 | 127 | ORDER Granting 126 Unopposed Motion for Protective Order as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. By Judge Daniel D. Domenico on 04/01/2021. (athom, ) (Entered: 04/01/2021) |

| 05/13/2021 | 128 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Michael Aaron Tew held on 02/05/2021 before Magistrate Judge Mix. Pages: 1–24. Prepared by: AB Litigation Services. |
| | | **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** |
| | | Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 05/13/2021 | 129 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Jonathan K. Yioulos held on 02/09/2021 before Magistrate Judge Mix. Pages: 1–15. Prepared by: AB Litigation Services. |
| | | **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** |
| | | Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 05/13/2021 | 130 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Kimberley Ann Tew held on 02/10/2021 before Magistrate Judge Mix. Pages: 1–26. Prepared by: AB Litigation Services. |
| | | **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** |
| | | Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 06/10/2021 | 131 | MOTION for Order , MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 06/10/2021) |
| 06/10/2021 | 132 | ORDER GRANTING 131 Unopposed Motion to Travel as to Jonathan Yioulos. Mr. Yioulos may travel to Queens, New York; Erie, Pennsylvania; and Albrightsville, |

| | | |
|---|---|---|
| | | Pennsylvania on June 25 to 27, June 24 to 25, and July 2 to 5, respectively. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from each trip. SO ORDERED by Judge Daniel D. Domenico on 6/10/2021. Text Only Entry (dddlc2, ) (Entered: 06/10/2021) |
| 06/18/2021 | 133 | NOTICE *OF DEFENDANT KIMBERLEY TEWS MEMORANDUM IN SUPPORT TO MODIFY THE CONDITIONS OF HER RELEASE* by Kimberley Ann Tew (Ekeland, Tor) Modified on 7/2/2021 to correct filer (athom, ). (Entered: 06/18/2021) |
| 06/18/2021 | 134 | MOTION to Modify Conditions of Release by Kimberley Ann Tew. (Attachments: # 1 Affidavit Decl Kimbery Tew ISO Motion to Modify the Conditions)(Ekeland, Tor) Modified on 7/2/2021 to correct filer (athom, ). (Entered: 06/18/2021) |
| 06/21/2021 | 135 | ORDER REFERRING MOTION TO MODIFY CONDITIONS OF PRE–TRIAL RELEASE 134 filed by Kimberly Tew. The Court refers the motion to Magistrate Judge Kristen L. Mix because revocation or modification of a prior release order under § 3142 "is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order." See United States v. Cisneros, 328 F.3d 610, 614 (10th Cir. 2003); see also United States v. Anaya, 376 F. Supp. 2d 1261, 1262–63 (D.N.M. 2005). SO ORDERED by Judge Daniel D. Domenico on 6/21/2021. Text Only Entry (dddlc2, ) (Entered: 06/21/2021) |
| 06/23/2021 | 136 | NOTICE OF ATTORNEY APPEARANCE: Michael Hassard appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Michael Hassard added to party Michael Aaron Tew(pty:dft), Attorney Michael Hassard added to party Kimberley Ann Tew(pty:dft) (Hassard, Michael) (Entered: 06/23/2021) |
| 07/08/2021 | 137 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 07/08/2021 as to Kimberley Ann Tew re 134 MOTION to Modify Conditions of Release filed by Kimberley Ann Tew Motion Hearing set for 7/15/2021 11:00 AM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (alave, ) (Entered: 07/09/2021) |
| 07/15/2021 | 138 | MINUTE ENTRY for Motion Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 7/15/2021. Defendant present on bond. Argument by defense counsel and counsel for the government as to 134 Motion to Modify Conditions of Release. Court addresses defense counsel. The Court modifies defendant's bond to remove the condition of home confinement and radio frequency and imposes GPS monitoring and imposes a curfew at 8:00 a.m.–9:00 p.m. Probation is granted discretion to allow exceptions to the curfew when requested by defendant. Defendant acknowledges the new conditions of bond and agrees to abide by them. Defendant's bond continued. (Total time: 22 minutes, Hearing time: 11:08–11:30)<br><br>**APPEARANCES**: Matthew Kirsch, Hetal Doshi and Andrea Surratt on behalf of the Government, Tor Ekeland and Michael Hassard on behalf of the defendant, Carlos Morales on behalf of probation. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 07/15/2021) |
| 07/19/2021 | 139 | NOTICE of Disposition by Jonathan K. Yioulos (Tallon, Michael) (Entered: 07/19/2021) |
| 07/27/2021 | 140 | NOTICE *of Remote Plea Proceeding* by Jonathan K. Yioulos (Tallon, Michael) Modified on 9/9/2021 to correct event (athom, ). (Entered: 07/27/2021) |
| 07/27/2021 | 141 | |

| | | |
|---|---|---|
| | | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 140 Notice, 139 Notice of Disposition filed by attorney Michael John Tallon. The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 07/27/2021) |
| 07/27/2021 | 142 | ORDER as to Jonathan K. Yioulos. ORDER as to Jonathan K. Yioulos. Pursuant to Notice of Disposition (Doc. 139), a Change of Plea Hearing is SET for 10/7/2021 at 11:30 **AM** in Courtroom A 1002 before Judge Daniel D. Domenico. The trial dates and all other deadlines previously set are VACATED. Counsel for the parties shall email a courtesy copy of the Plea Agreement and the Statement by Defendant in Advance of Plea of Guilty in the form required by Local Crim. R. 11.1(c)–(d) to Domenico_Chambers@cod.uscourts.gov no later than 12:00 p.m. three business days prior to the Change of Plea Hearing. If these documents are not timely submitted, the hearing may be vacated. The original and one copy of these documents shall be delivered to the courtroom deputy at the time of the hearing pursuant to Local Crim. R. 11.1(e). Defense counsel who reviewed and advised Defendant regarding the Plea Agreement must attend the Change of Plea Hearing. SO ORDERED by Judge Daniel D. Domenico on 7/27/2021. Text Only Entry (dddlc2, ) Modified on 7/29/2021 to correct text (athom, ). (Entered: 07/27/2021) |
| 08/10/2021 | 143 | Second MOTION to Continue by Michael Aaron Tew, Kimberley Ann Tew. (Hassard, Michael) Modified on 8/11/2021 to correct applicable parties (athom, ). (Entered: 08/10/2021) |
| 08/20/2021 | 144 | TRANSCRIPT of MOTION HEARING as to Kimberley Ann Tew held on 07/15/2021 before Magistrate Judge Mix. Pages: 1–20. Prepared by: AB Litigation Services.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 08/20/2021) |
| 09/16/2021 | 145 | MOTION to Modify *date of plea hearing* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 09/16/2021) |
| 09/17/2021 | 146 | **WITHDRAWN** – Unopposed MOTION to Travel *MOTION UPON ATTORNEY DECLARATION SEEKING ORDER PERMITTING TRAVEL BEYOND PRE–TRIAL RELEASE ORDER AT PARAGRAPH 7(f)* by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) Modified on 9/20/2021 to correct filers (athom, ). Modified on 2/4/2022 to withdraw pursuant to 173 Order (athom, ). (Entered: 09/17/2021) |
| 09/17/2021 | 147 | |

| | | |
|---|---|---|
| | | MOTION to Withdraw as Attorney by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Kirsch, Matthew) (Entered: 09/17/2021) |
| 09/20/2021 | 148 | MOTION to Withdraw Document 146 Unopposed MOTION to Travel *MOTION UPON ATTORNEY DECLARATION SEEKING ORDER PERMITTING TRAVEL BEYOND PRE−TRIAL RELEASE ORDER AT PARAGRAPH 7(f)* by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) Modified on 9/22/2021 to correct filers (athom, ). (Entered: 09/20/2021) |
| 09/22/2021 | 149 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' Unopposed Motion for a 12−Month Ends of Justice Continuance (Doc. 143 ) is PARTIALLY GRANTED. One hundred eighty (180) days, from 9/22/2021 to 3/21/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. Motions due by 1/3/2022. Responses due by 1/10/2022. The eight−day Jury Trial set to begin 10/12/2021 is VACATED and RESET to 4/4/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 09/27/2021 is VACATED and RESET to 3/21/2022 at 01:00 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 09/22/2021. (athom, ) (Entered: 09/22/2021) |
| 09/30/2021 | 150 | ORDER as to Jonathan K. Yioulos. Defendant's Motion to Conduct Change of Plea by Video Conference Pursuant to Section 15002(b)(2) of the CARES Act (Doc. 140 ) is GRANTED, and the Motion to reschedule the Change of Plea Hearing (Doc. 145 ) is GRANTED IN PART. The Change of Plea Hearing set for 10/7/2021 at 11:30 a.m. is VACATED AND RESET to 11/18/2021 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico and will be conducted by VTC, or by telephone conference if VTC is not reasonably available. Members of the public may attend the Change of Plea Hearing by teleconference at (866) 390−1828, using Access Code 9792296#. All persons participating in court proceedings remotely by VTC or teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner. By Judge Daniel D. Domenico on 09/30/2021. (athom, ) (Entered: 09/30/2021) |
| 10/12/2021 | 151 | NOTICE OF ATTORNEY APPEARANCE: Tor Bernhard Ekeland *Attorney Xuan Zhou appearing for Michael Aaron Tew and Kimberley Ann Tew* appearing for Michael Aaron Tew, Kimberley Ann Tew (Ekeland, Tor) Modified on 10/13/2021 to correct applicable parties (athom, ). (Main Document 151 replaced on 1/21/2025) (lrobe, ). (Entered: 10/12/2021) |
| 10/13/2021 | 152 | NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 151 Notice of Attorney Appearance – Defendant, filed by attorney Xuan Zhou. The s/signature did not match the filers name on the account for which the login and password are registered. Future documents must be filed pursuant to D.C.COLO.LCivR 49.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Criminal Cases). Attorney Xuan Zhou has failed to comply D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases), which mandate the correct form for an attorneys signature block. This document does not have a s/ signature and must be re−filed. Xuan Zhou must re−file the above referenced document which must contain her s/ signature using her own log in and password. **Counsel is REMINDED that your firm does not represent defendant Yioulos. UNLESS you are filing a joint pleading that pertains to defendant Yioulos, you should ONLY be selecting the Tew defendants as the filers and as the applicable parties. If you are unclear about how documents should be filed and/or which** |

| | | |
|---|---|---|
| | | **parties should be selected when filing your documents, please contact the Clerk's office for assistance or clarification**. (Text Only Entry) (athom, ) (Entered: 10/13/2021) |
| 11/17/2021 | 153 | ORDER GRANTING 147 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Matthew T. Kirsch as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States of America will continue to be represented by attorneys Hetal Doshi and Andrea Surratt. SO ORDERED by Judge Daniel D. Domenico on 11/17/2021. Text Only Entry (dddlc4) (Entered: 11/17/2021) |
| 11/18/2021 | 154 | MINUTE ENTRY for Change of Plea Hearing by VTC as to Jonathan K. Yioulos held before Judge Daniel D. Domenico on 11/18/2021. Plea of GUILTY entered by defendant Jonathan K. Yioulos to Counts 1,39. Sentencing set for 2/10/2022 01:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. Bond continued.Court Reporter: Julie Thomas. (pglov) (Entered: 11/18/2021) |
| 11/18/2021 | 155 | PLEA AGREEMENT as to Jonathan K. Yioulos (pglov) (Entered: 11/18/2021) |
| 11/18/2021 | 156 | STATEMENT IN ADVANCE OF PLEA OF GUILTY by Defendant Jonathan K. Yioulos (pglov) (Entered: 11/18/2021) |
| 11/19/2021 | 157 | NOTICE OF ATTORNEY APPEARANCE: Xuan Zhou appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Xuan Zhou added to party Michael Aaron Tew(pty:dft), Attorney Xuan Zhou added to party Kimberley Ann Tew(pty:dft) (Zhou, Xuan) (Main Document 157 replaced on 1/21/2025) (lrobe, ). (Entered: 11/19/2021) |
| 11/29/2021 | 158 | NOTICE OF ATTORNEY APPEARANCE Bryan David Fields appearing for USA. Attorney Bryan David Fields added to party USA(pty:pla) (Fields, Bryan) (Entered: 11/29/2021) |
| 11/29/2021 | 159 | MOTION to Withdraw as Attorney by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Doshi, Hetal) (Entered: 11/29/2021) |
| 12/09/2021 | 160 | MOTION for Order by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 12/09/2021) |
| 12/15/2021 | 161 | ORDER granting 160 Motion for Order as to Jonathan K. Yioulos (3). The Sentencing Hearing set for 2/10/2022 at 1:30 pm is VACATED and RESET to 7/12/2022 at 10:30 pm before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 12/15/2021. Text Only Entry (dddlc2, ) (Entered: 12/15/2021) |
| 12/27/2021 | 162 | MOTION to Withdraw as Attorney by Tor Ekeland by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) (Main Document 162 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 163 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) (Main Document 163 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 164 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Entered: 12/27/2021) |
| 12/27/2021 | 165 | Third MOTION to Continue by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Main Document 165 |

| | | |
|---|---|---|
| | | replaced on 1/21/2025) (lrobe, ). (Attachment 1 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 166 | MOTION to Withdraw as Attorney by Xuan Zhou by Michael Aaron Tew, Kimberley Ann Tew. (Zhou, Xuan) (Main Document 166 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 12/27/2021 | 167 | MOTION to Withdraw as Attorney by Michael Hassard by Michael Aaron Tew, Kimberley Ann Tew. (Hassard, Michael) (Main Document 167 replaced on 1/21/2025) (lrobe, ). (Entered: 12/27/2021) |
| 01/19/2022 | 168 | MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 01/19/2022) |
| 01/31/2022 | 169 | ORDER REFERRING MOTIONS as to Michael Aaron Tew, Kimberley Ann Tew. 167 MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, 162 MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, 159 MOTION to Withdraw as Attorney filed by USA, 166 MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Motions referred to Magistrate Judge Kristen L. Mix. SO ORDERED by Judge Daniel D. Domenico on 1/31/2022. Text Only Entry (dddlc2, ) (Entered: 01/31/2022) |
| 01/31/2022 | 170 | ORDER granting 168 Motion to Travel as to Jonathan K. Yioulos (3). Mr. Yioulos is permitted to travel as described in the travel plans submitted to the US Attorneys office and the Probation Department. SO ORDERED by Judge Daniel D. Domenico on 1/31/2022. Text Only Entry (dddlc2, ) (Entered: 01/31/2022) |
| 02/02/2022 | 171 | ORDER granting 159 Motion to Withdraw as Attorney. Hetal Janak Doshi withdrawn from case as to Michael Aaron Tew (1), Kimberley Ann Tew (2), Jonathan K. Yioulos (3). Attorney Hetal Doshi is relieved of any further representation of the United States in this case. The Clerk of Court is instructed to terminate Attorney Doshi as counsel of record, and to remove this name from the electronic certificate of mailing. The Government shall continue to be represented by Attorney Bryan Fields. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, ) (Entered: 02/02/2022) |
| 02/02/2022 | 172 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 167 MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, 162 MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, 166 MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Defendant Michael Tew and Defendant Kimberley Tew shall each file a separate financial affidavit under restriction at Level 3 NO LATER THAN FEBRUARY 14, 2022. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, ) (Entered: 02/02/2022) |
| 02/02/2022 | 173 | ORDER. The Motion to Withdraw Document 148 as to Michael Aaron Tew and Kimberly Ann Tew is GRANTED. Accordingly, the Motion to Travel 146 is DENIED AS MOOT. SO ORDERED by Judge Daniel D. Domenico on 2/2/2022. Text Only Entry (dddlc2, ) (Entered: 02/02/2022) |
| 02/04/2022 | 174 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' counsel Motion for a 3–Month Ends of Justice Continuance (Doc. 165 ) is GRANTED. Ninety (90) days, from 2/4/2022 to 5/5/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. Motions due |

| | | |
|---|---|---|
| | | by 5/12/2022. Responses due by 5/19/2022. The eight–day Jury Trial set to begin 4/4/2022 is VACATED and RESET to 6/13/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 3/21/2022 is VACATED and RESET to 6/2/2022 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 02/04/2022. (athom, ) (Entered: 02/04/2022) |
| 02/10/2022 | 175 | Pro Se Letter by Michael Aaron Tew, Kimberley Ann Tew. (athom, ) (Entered: 02/10/2022) |
| 02/10/2022 | 176 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 175 MOTION for Extension of Time to File filed by Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/10/2022. Text Only Entry (dddlc2, ) (Entered: 02/10/2022) |
| 02/14/2022 | 177 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on February 14, 2022. This matter is before the Court on Defendants' Motion for Extension of Time 175 (the "Motion"). Defendants ask for a two–week extension to file financial affidavits because they "are currently reviewing an engagement letter with a law firm based in Denver" and, therefore, may not require appointment of counsel through the CJA. IT IS HEREBY ORDERED that the Motion 175 is GRANTED. The deadline for each Defendant to file a separate financial affidavit under restriction at Level 3 is extended to February 28, 2022. (csarr, ) (Entered: 02/14/2022) |
| 02/25/2022 | 178 | NOTICE OF ATTORNEY APPEARANCE: Peter R. Bornstein appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Peter R. Bornstein added to party Michael Aaron Tew(pty:dft), Attorney Peter R. Bornstein added to party Kimberley Ann Tew(pty:dft) (Bornstein, Peter) (Entered: 02/25/2022) |
| 03/04/2022 | 179 | Order. Defense counsel is directed to file a status report on or before 3/10/2022 confirming that he has discussed the potential conflicts of interest that joint representation of criminal codefendants may raise with his clients, and that they each continue to understand these dangers and risks and continue to consent to proceeding with joint counsel in spite of them. SO ORDERED by Judge Daniel D. Domenico on 3/4/2022. Text Only Entry (dddlc2, ) (Entered: 03/04/2022) |
| 03/07/2022 | 180 | ORDER granting 162 Motion to Withdraw as Attorney. Attorney Tor Ekeland is relieved of any further representation of Defendants Michael Tew and Kimberley Tew. The Clerk of Court is instructed to terminate Attorney Ekeland as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard, Peter Bornstein, and Xuan Zhou. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/07/2022 | 181 | ORDER granting 166 Motion to Withdraw as Attorney. Attorney Xuan Zhou is relieved of any further representation of Defendants Michael Tew and Kimberley Tew. The Clerk of Court is instructed to terminate Attorney Zhou as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard and Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/07/2022 | 182 | ORDER granting 167 Motion to Withdraw as Attorney. Attorney Michael Hassard is relieved of any further representation of Defendants Michael Tew and Kimberley Tew. The Clerk of Court is instructed to terminate Attorney Hassard as counsel of record, |

| | | |
|---|---|---|
| | | and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorney Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/09/2022 | 183 | Unopposed MOTION to Travel by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 03/09/2022) |
| 03/10/2022 | 184 | STATUS REPORT by Michael Aaron Tew, Kimberley Ann Tew (Bornstein, Peter) (Entered: 03/10/2022) |
| 03/14/2022 | 185 | Order granting 183 Motion to travel. Defendants Michael and Kimberly Tew may travel out of state with their children for spring break as requested in their motion. Their pretrial monitoring is modified to stand–alone location monitoring without a curfew. SO ORDERED by Judge Daniel D. Domenico on 3/14/2022. Text Only Entry (dddlc2, ) (Entered: 03/14/2022) |
| 03/21/2022 | 186 | Unopposed MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/21/2022) |
| 03/22/2022 | 187 | MOTION to Amend/Correct *Conditions of Release* by Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Bornstein, Peter) (Entered: 03/22/2022) |
| 03/24/2022 | 188 | MINUTE ORDER re. 187 Motion to Amend/Correct Conditions of Supervised Release. The Court reviews the conditions of pretrial release de novo, and having reviewed the transcripts of the two previous hearings as well as the recommendations of the Probation Department, does not find that the Government has shown by a preponderance of evidence that location monitoring is required to reasonably assure the appearance of Kimberley Tew or the safety of another person or the community. The government has until 11:00am on 3/25/2022 to respond. SO ORDERED by Judge Daniel D. Domenico on 3/24/2022. Text Only Entry (dddlc2, ) (Entered: 03/24/2022) |
| 03/25/2022 | 189 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 187 MOTION to Amend/Correct *Conditions of Release* (Fields, Bryan) (Entered: 03/25/2022) |
| 03/25/2022 | 190 | ORDER GRANTING 187 Motion for Amendment of Conditions of Release as to Kimberley Ann Tew (2). It is ORDERED that Ms. Tew's conditions of release are modified to remove the requirement that she submit to GPS location monitoring. Ms. Tew is directed to contact the Probation Department for instructions on how to comply with her conditions of release going forward. By Judge Daniel D. Domenico on 3/25/2022. (dddlc1, ) (Entered: 03/25/2022) |
| 03/28/2022 | 191 | ORDER granting 186 Motion to Travel as to Jonathan K. Yioulos (3). Mr. Yioulos is permitted to travel as described in the travel plans submitted to the US Attorneys office and the Probation Department. SO ORDERED by Judge Daniel D. Domenico on 3/28/2022. Text Only Entry (dddlc2, ) (Entered: 03/28/2022) |
| 03/31/2022 | 192 | ORDER granting 164 Motion for Leave to Restrict. Doc. 163 is restricted at Level 3. SO ORDERED by Judge Daniel D. Domenico on 3/31/2022. Text Only Entry (dddlc2, ) (Entered: 03/31/2022) |
| 04/26/2022 | 193 | Unopposed MOTION to Continue *Trial and for Ends of Justice Finding Pursuant to 18 U.S.C. § 3161(h)(7)* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 04/26/2022) |

| 05/10/2022 | 194 | Unopposed MOTION for Leave to File Excess Pages *for Motion to Suppress* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/10/2022) |
| --- | --- | --- |
| 05/12/2022 | 195 | ORDER granting 194 Motion for Leave to File Excess Pages as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 6000 words for their motion to suppress and the government has the same number for its response. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, ) (Entered: 05/12/2022) |
| 05/12/2022 | 196 | Unopposed MOTION for Extension of Time to File *Pre−Trial Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/12/2022 | 197 | Unopposed MOTION for Reconsideration re 195 Order on Motion for Leave to File Excess Pages, *Motion to Suppress* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/12/2022 | 198 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' Motion to Continue Trial and for an Ends of Justice Finding (Doc. 193 ) is GRANTED. One hundred and eighty (180) days, from 5/12/2022 to 11/8/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. The deadline to file motions to suppress remains 5/12/2022. Other pretrial Motions due by 6/13/2022. Responses due by 6/20/2022. The eight−day Jury Trial set for 06/13/2022 is VACATED and RESET to 12/5/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 6/2/2022 is VACATED and RESET to 11/29/2022 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 05/12/2022. (athom, ) (Entered: 05/12/2022) |
| 05/12/2022 | 199 | ORDER granting 197 Motion for Reconsideration re 197 Unopposed MOTION for Reconsideration re 195 Order on Motion for Leave to File Excess Pages, *Motion to Suppress* filed by Michael Aaron Tew, Kimberley Ann Tew as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 12,000 words for their motion to suppress, and the government has the same number with which to respond. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, ) (Entered: 05/12/2022) |
| 05/12/2022 | 200 | Motion to Suppress Evidence by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB)(Bornstein, Peter) Modified on 8/22/2022 to add document title and un restrict Motion ONLY per 244 Response. (sphil, ). Modified on 10/28/2022 to add text and correct event (athom, ). (Entered: 05/12/2022) |
| 05/12/2022 | 201 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/18/2022 | 202 | Unopposed MOTION for Extension of Time to File Response/Reply as to 200 Restricted Document – Level 1,, by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 05/18/2022) |
| 05/19/2022 | 203 | |

|  |  |  |
|---|---|---|
|  |  | NOTICE OF ATTORNEY APPEARANCE Albert C. Buchman appearing for USA. Attorney Albert C. Buchman added to party USA(pty:pla) (Buchman, Albert) (Entered: 05/19/2022) |
| 05/19/2022 | 204 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 201 MOTION for Leave to Restrict *(Response to Motion to Suppress, ECF No. 200)* (Attachments: # 1 Government Filter Memo, # 2 Filter Memo – Attachment 1, # 3 Filter Memo – Attachment 2, # 4 Filter Memo – Attachment 3, # 5 Filter Memo – Attachment 4, # 6 Filter Memo – Attachment 5, # 7 Filter Memo – Attachment 6, # 8 Filter Memo – Attachment 7, # 9 Filter Memo – Attachment 8, # 10 Filter Memo – Attachment 9)(Fields, Bryan) (Attachment 6 replaced on 1/21/2025) (lrobe, ). (Entered: 05/19/2022) |
| 05/20/2022 | 205 | MOTION to Withdraw as Attorney by Andrea Surratt by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Surratt, Andrea) (Entered: 05/20/2022) |
| 05/20/2022 | 206 | MOTION to Travel by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 05/20/2022) |
| 05/20/2022 | 207 | ORDER granting 206 Motion to Travel as to Jonathan K. Yioulos (3). Mr. Yioulos is permitted to travel as described in the travel plans submitted to the US Attorneys office and the Probation Department. SO ORDERED by Judge Daniel D. Domenico on 5/20/2022. Text Only Entry (dddlc2, ) (Entered: 05/20/2022) |
| 05/20/2022 | 208 | ORDER granting 202 Motion for Extension of Time to File Response/Reply. The government has until and including 6/9/2022 to file a response to the motion to suppress. SO ORDERED by Judge Daniel D. Domenico on 5/20/2022. Text Only Entry (dddlc2, ) (Entered: 05/20/2022) |
| 05/25/2022 | 209 | MOTION to Disclose Grand Jury Material to Defendant by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 05/25/2022) |
| 05/25/2022 | 210 | Unopposed MOTION for Leave to File *Reply to Government's Response to Defendant's Motion to Suppress Evidence* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/25/2022) |
| 06/07/2022 | 211 | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Jonathan K. Yioulos (Attachments: # 1 Exhibit A)(ntaka) (Entered: 06/07/2022) |
| 06/13/2022 | 212 | Unopposed MOTION for Order *Requiring the Government to Submit Expert Witness Opinions 120 Days Before Trial* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 213 | Unopposed MOTION for Leave to File *Additional Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 214 | MOTION for Sanctions *for Violating Communication Privileges* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 215 | MOTION for Franks Hearing by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 216 | MOTION to Suppress *the Use of Statements* by Michael Aaron Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 217 |  |

| | | |
|---|---|---|
| | | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant Motions Filed on June 13, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 06/13/2022) |
| 06/13/2022 | 218 | MOTION to Sever Defendant by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 219 | MOTION for James Hearing *and for Government to File a James Proffer* by Michael Aaron Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 220 | MOTION for James Hearing *and for Government to File a James Proffer* by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 221 | MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Bornstein, Peter) (Entered: 06/13/2022) |
| 06/16/2022 | 222 | ORDER GRANTING 205 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Andrea Surratt as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States will continue to be represented by attorney Bryan Fields and Albert Buchman. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, ) (Entered: 06/16/2022) |
| 06/16/2022 | 223 | ORDER GRANTING 210 Motion for Leave to File a Reply. Defendants have 5000 words for a reply to be filed on or before 6/22/2022. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, ) (Entered: 06/16/2022) |
| 06/16/2022 | 224 | ORDER Granting 209 Motion to Disclose Grand Jury Material as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 06/16/2022. (athom, ) (Entered: 06/16/2022) |
| 06/19/2022 | 225 | MOTION to Continue *Sentencing* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 06/19/2022) |
| 06/22/2022 | 226 | REPLY by Michael Aaron Tew, Kimberley Ann Tew *in Support of Motion to Suppress Evidence [Doc.200–Restricted]* (Bornstein, Peter) (Entered: 06/22/2022) |
| 06/29/2022 | 227 | ORDER granting 225 Motion to Continue as to Jonathan K. Yioulos (3). The sentencing hearing set for 7/12/2022 is VACATED AND RESET to 1/19/2023 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 6/29/2022. Text Only Entry (dddlc2, ) (Entered: 06/29/2022) |
| 07/14/2022 | 228 | ORDER granting 217 Motion for Extension of Time to File Response/Reply. The government has until and including 8/9/2022 to file responses to the motions filed on 6/13/2022. SO ORDERED by Judge Daniel D. Domenico on 8/14/2022. Text Only Entry (dddlc2, ) (Entered: 07/14/2022) |
| 08/09/2022 | 229 | NOTICE *of Conventional Filing Exhibit 1–3* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 230 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 218 MOTION to Sever Defendant (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 231 | REPLY TO RESPONSE to Motion by USA as to Michael Aaron Tew, Kimberley Ann Tew re 219 MOTION for James Hearing *and for Government to File a James* |

| | | |
|---|---|---|
| | | *Proffer* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 232 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 220 MOTION for James Hearing *and for Government to File a James Proffer* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 233 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 215 MOTION for Franks Hearing (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 234 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 214 MOTION for Sanctions *for Violating Communication Privileges* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 235 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 216 MOTION to Suppress *the Use of Statements* (Attachments: # 1 Conventionally Submitted, # 2 Conventionally Submitted)(Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 236 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 221 MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* (Attachments: # 1 Conventionally Submitted)(Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 237 | Conventionally Submitted Material : 1 Card USB Flash Drive: Exhibit 1 and Exhibit 2 to Response in Opposition 235 re 229 Notice, by Plaintiff USA. Material placed in the oversized filing area Area D–5–5 of the Clerk's Office. Text Only Entry (athom, ) (submitted additional copy of USB placed in Chambers' mail box) (Entered: 08/11/2022) |
| 08/12/2022 | 238 | ORDER GRANTING IN PART 201 Motion for Leave to File Motion to Suppress Evidence as Restricted Level 1.<br><br>I must narrowly tailor any restrictions on public access, and must consider whether supplying a redacted version of a document in lieu of restricting access to the entire document would adequately protect the interests of the party seeking restriction. *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019); Local Civ. R. 7.2(c)(4). Defendants Michael and Kimberly Tew have not shown that redacting the identified financial, medical, and other personal information from the motion to suppress is impracticable or would not adequately protect the privacy interests at stake.<br><br>Accordingly, the motion for leave to restrict is GRANTED IN PART with respect to the exhibits to the motion only. The Clerk of Court is directed to maintain Doc. 200 and Docs. 200–1 to 200–28 under Level 1 restriction. Plaintiff must file a public redacted version of the motion to suppress (Doc. 200 ) on or before 8/19/2022.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, ) (Entered: 08/12/2022) |
| 08/12/2022 | 239 | ORDER GRANTING IN PART 212 Defendants' Unopposed Motion to Require the Government to Submit Expert Witness Opinions 120 Days Before Trial.<br><br>Expert witness disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and (b)(1)(C) must be made no later than 8/19/2022, and any challenges to such experts must be made no later than 9/9/2022. |

| | | |
|---|---|---|
| | | Rebuttal expert witness disclosures must be made no later than 9/16/2022, and any challenges to such rebuttal experts must be made no later than 10/7/2022.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, ) (Entered: 08/12/2022) |
| 08/15/2022 | 240 | Unopposed MOTION for Leave to File *Replies to Government's Responses to Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 08/15/2022) |
| 08/15/2022 | 241 | ORDER REGARDING PRETRIAL DEADLINES AND PENDING MOTIONS.<br><br>Defendants' Unopposed Motion for Leave to File Additional Motions (Doc. 213 ) is GRANTED. Motions due 9/13/2022. Responses due 9/27/2022. No replies will be permitted without prior leave of the Court.<br><br>Defendants' Unopposed Motion for Leave to File Replies to Government's Responses to Motions (Doc. 240 ) is GRANTED. Replies due 8/23/2022.<br><br>A Motions Hearing is SET for 10/18/2022 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico.<br><br>Due to a conflict on the Court's calendar, the eight–day Jury Trial set for 12/5/2022 is VACATED and RESET to commence on 12/12/2022 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Due to a conflict on the Court's calendar, the Trial Preparation Conference set for 11/29/2022 is VACATED and RESET to 11/22/2022 at 01:30 PM in Courtroom A1002. See written Order for pretrial deadlines.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/15/2022. (dddlc1, ) (Entered: 08/15/2022) |
| 08/18/2022 | 242 | Unopposed MOTION for Order *to Reschedule Hearing Date on Motion* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 08/18/2022) |
| 08/18/2022 | 243 | ORDER GRANTING 242 Unopposed Motion to Reschedule Hearing Date on Motions as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Motions Hearing set for 10/18/2022 is VACATED and RESET to 10/12/2022 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 8/18/2022. Text Only Entry (dddlc1, ) (Entered: 08/18/2022) |
| 08/19/2022 | 244 | RESPONSE by Michael Aaron Tew, Kimberley Ann Tew re: 238 Order on Motion for Leave to Restrict,,,, (Bornstein, Peter) (Entered: 08/19/2022) |
| 08/23/2022 | 245 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 214 MOTION for Sanctions *for Violating Communication Privileges* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 246 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 221 MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 247 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 219 MOTION for James Hearing *and for Government to File a James Proffer*, 220 MOTION for James Hearing *and for Government to File a James Proffer* (Bornstein, |

| | | Peter) (Entered: 08/23/2022) |
|---|---|---|
| 08/23/2022 | 248 | REPLY TO RESPONSE to Motion by Kimberley Ann Tew re 218 MOTION to Sever Defendant (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 249 | REPLY TO RESPONSE to Motion by Michael Aaron Tew re 216 MOTION to Suppress *the Use of Statements* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 250 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 215 MOTION for Franks Hearing (Attachments: # 1 Affidavit Declaration of Michael A. Tew, # 2 Affidavit Declaration of Kimberley A. Tew)(Bornstein, Peter) (Entered: 08/23/2022) |
| 09/15/2022 | 251 | Unopposed MOTION to Travel *Out of State* by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 09/15/2022) |
| 09/16/2022 | 252 | ORDER granting 251 Unopposed Motion to Travel as to Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 09/16/2022. Text Only Entry (dddlc5, ) (Entered: 09/16/2022) |
| 10/07/2022 | 253 | EXHIBIT LIST *for Suppression Hearing of October 12, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Exhibit List)(Fields, Bryan) (Entered: 10/07/2022) |
| 10/07/2022 | 254 | WITNESS LIST *for Suppression Hearing of October 12, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Witness List)(Fields, Bryan) (Entered: 10/07/2022) |
| 10/12/2022 | 255 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Suppression Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 10/12/2022. Taking under advisement 214 Motion for Sanctions as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying 215 Motion for Franks Hearing as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Taking under advisement 216 Motion to Suppress as to Michael Aaron Tew (1). Taking under advisement 200 Defendants Motion. Denying 219 Motion for James Hearing as to Michael Aaron Tew (1). Taking under advisement 221 Motion to Suppress as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Taking under advisement 218 Motion to Sever Defendant as to Kimberley Ann Tew (2). Taking under advisement 220 Motion for James Hearing as to Kimberley Ann Tew (2). Bond continued as to both defendants. Court Reporter: Julie Thomas. (rkeec) (Entered: 10/13/2022) |
| 10/12/2022 | 256 | WITNESS LIST by USA as to Michael Aaron Tew (1), Kimberley Ann Tew (2). With date and time testified. (rkeec) (Entered: 10/13/2022) |
| 10/12/2022 | 257 | EXHIBIT LIST by USA as to Michael Aaron Tew (1), Kimberley Ann Tew (2). (rkeec) (Entered: 10/13/2022) |
| 10/27/2022 | 258 | ORDER Denying 221 Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 259 | ORDER as to Michael Aaron Tew. Mr. Tew's Motion to Suppress the Use of Statements (Doc. 216 ) is DENIED. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 260 | |

| | | |
|---|---|---|
| | | ORDER Denying 218 Motion for Severance as to Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 261 | ORDER Denying 214 Motion for Sanctions as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 262 | ORDER Denying 200 Motion to Suppress Evidence as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/28/2022 | 263 | ORDER GRANTING IN PART 220 Defendant Kimberly Ann Tew's Motion for a *James* Proffer and Hearing. Ms. Tew's request for the Government to file a *James* proffer and for the Court to hold a *James* hearing is granted, though not on the timeline requested.<br><br>The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with the referenced exhibits and an accompanying brief, on or before 1/6/2023. The defendants must file their responses to the Government's *James* log and brief on or before 1/20/2023. A *James* Hearing is SET for 1/26/2023 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico.<br><br>In light of the above, the Trial Preparation Conference set for 11/22/2022 is VACATED and RESET for 3/7/2022 at 09:30 AM in Courtroom A1002, and the eight−day Jury Trial set for 12/12/2022 is VACATED and RESET for 3/13/2023 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Pretrial deadlines remain as stated in the Court's Order Regarding Pretrial Deadlines and Pending Motions (Doc. 241 ).<br><br>SO ORDERED by Judge Daniel D. Domenico on 10/28/2022. Text Only Entry (dddlc1, ) (Entered: 10/28/2022) |
| 11/15/2022 | 264 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/15/2022) |
| 11/15/2022 | 265 | RESTRICTED DOCUMENT − Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/15/2022) |
| 11/15/2022 | 266 | RESTRICTED DOCUMENT − Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Bornstein, Peter) (Entered: 11/15/2022) |
| 11/16/2022 | 267 | Unopposed MOTION to Travel *Out of State* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/16/2022) |
| 11/17/2022 | 268 | ORDER granting 267 Motion to Travel as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Mr. and Mrs. Tew are granted permission to leave the state of Colorado and travel to Marquette, Michigan with their children from 11/18/2022 until 11/27/2022. SO ORDERED by Judge Daniel D. Domenico on 11/17/2022. Text Only Entry (dddlc5, ) (Entered: 11/17/2022) |
| 11/17/2022 | 269 | ORDER granting 264 Motion for Leave to Restrict 265 Restricted Document − Level 3, 266 Restricted Document − Level 3 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is directed to maintain 265 and 266 UNDER RESTRICTION at LEVEL 3. SO ORDERED by Judge Daniel D. Domenico on |

| | | |
|---|---|---|
| | | 11/17/2022. Text Only Entry (dddlc5, ) (Entered: 11/17/2022) |
| 11/28/2022 | 270 | Unopposed MOTION to Continue *adjourn sentencing* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 11/28/2022) |
| 11/28/2022 | 271 | ORDER granting 270 Motion to Continue as to Jonathan K. Yioulos (3). Mr. Yioulos's Sentencing set for 1/19/2023 at 10:30 a.m. is VACATED and RESET for 3/29/2023 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. All related deadlines are continued. SO ORDERED by Judge Daniel D. Domenico on 11/28/2022. Text Only Entry (dddlc5, ) (Entered: 11/28/2022) |
| 11/29/2022 | 272 | Order Regarding Motion for Subpoenas as to Michael Aaron Tew and Kimberley Ann Tew. (angar, ) Modified on 11/29/2022 to correct restriction level and title (angar, ). (Entered: 11/29/2022) |
| 12/01/2022 | 273 | MOTION to Withdraw as Attorney by Peter R. Bornstein by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/01/2022) |
| 12/01/2022 | 274 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 273 MOTION to Withdraw as Attorney by Peter R. Bornstein. Motion referred to Magistrate Judge Kristen L. Mix, by Judge Daniel D. Domenico on 12/01/2022. Text Only Entry (dddlc5, ) Modified on 12/5/2022 to add text (athom, ). (Entered: 12/01/2022) |
| 12/02/2022 | 275 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/02/2022. IT IS HEREBY ORDERED that the Motion 273 is GRANTED as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Mr. Bornstein is permitted to withdraw as counsel for Defendants. IT IS FURTHER ORDERED that on or before December 16, 2022, Defendants shall have replacement counsel enter an appearance or, if they believe they are entitled to appointment of CJA counsel to represent them, shall each file a financial affidavit under restriction at Level 3. (alave, ) (Entered: 12/05/2022) |
| 12/05/2022 | 276 | MOTION for Reconsideration re 275 Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 12/05/2022) |
| 12/05/2022 | 277 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 276 MOTION for Reconsideration re 275 Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* filed by USA. Motion referred to Magistrate Judge Kristen L. Mix by Judge Daniel D. Domenico on 12/05/2022. Text Only Entry (dddlc5, ) (Entered: 12/05/2022) |
| 12/06/2022 | 278 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/06/2022. IT IS HEREBY ORDERED that a hearing on the Motion 276 is set for December 9, 2022, at 11:00 a.m. Counsel for the parties, including defense counsel Peter Bornstein who was permitted to withdraw by Minute Order 275 of December 2, 2022, shall be present at the hearing. IT IS FURTHER ORDERED that the Clerk of Court shall email a copy of this Minute Order to Mr. Bornstein. (alave, ) (Entered: 12/06/2022) |
| 12/06/2022 | 279 | Certificate of Service by E–Mail by Clerk of Court re 278 Minute Order to counsel Peter Bornstein at pbornstein@prblegal.com. Text Only Entry. (alave, ) (Entered: 12/06/2022) |
| 12/09/2022 | 280 | MINUTE ENTRY for In Court Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 12/9/2022 before Magistrate Judge Kristen L. Mix. The court GRANTS |

|  |  |  |
|---|---|---|
|  | | 276 Motion for Reconsideration re 273 MOTION to Withdraw as Attorney. 273 MOTION to Withdraw as Attorney is GRANTED in part and DENIED in part to the extent that Mr. Bornstein is permitted to withdraw as private counsel, but otherwise denied. Defendants are ORDERED to submit financial affidavits on or before 5:00 PM Tuesday, December 13, 2022. Should Defendants qualify for court–appointed counsel, Mr. Bornstein will be appointed as CJA counsel.<br><br>The Clerk of Court is ORDERED to allow Mr. Bornstein to file the financial affidavits on the electronic docket on the Defendants' behalf. Should there be any problem with the filing of the financial affidavits, Mr. Bornstein SHALL email them to Mix_Chambers@cod.uscourts.gov.(Total time: 23 minutes, Hearing time: 11:00–11:23)<br><br>**APPEARANCES**: Bryan Fields, Albert Buchman on behalf of the Government, Peter Bornstein on behalf of the defendant. FTR: A–401. (cpomm, ) Text Only Entry (Entered: 12/09/2022) |
| 12/13/2022 | 281 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/13/2022) |
| 12/13/2022 | 282 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/13/2022) |
| 12/14/2022 | 283 | ORDER granting 281 Motion for Leave to Restrict 282 Restricted Document as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is instructed to maintain 282 at LEVEL THREE RESTRICTION. SO ORDERED by Judge Daniel D. Domenico on 12/14/2022. Text Only Entry (dddlc5, ) (Entered: 12/14/2022) |
| 12/27/2022 | 284 | MOTION to Vacate *Deadlines and for Status Conference* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 12/27/2022) |
| 12/27/2022 | 285 | TRANSCRIPT of MOTIONS HEARING as to Michael Aaron Tew, Kimberley Ann Tew held on 10/12/22 before Judge Domenico. Pages: 1–234.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Thomas, Julie) (Entered: 12/27/2022) |
| 12/27/2022 | 286 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/27/2022. IT IS HEREBY ORDERED that attorney Peter Bornstein is appointed as CJA counsel for Defendants Michael A. Tew and Kimberly A. Tew. (alave, ) (Entered: 12/27/2022) |
| 12/28/2022 | 287 | ORDER DENYING 284 Government's Motion to Vacate Current Deadlines and for Status Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2).<br><br>Attorney Peter Bornstein represented the defendants as retained counsel for a period |

| | | |
|---|---|---|
| | | of over nine months from February to December 2022 (*see* Docs. 178 , 273 , 275 , 280), and he now continues to represent the defendants as appointed CJA counsel (Doc. 286 ). The Government has repeatedly stated its concern that further delays may prejudice its case and the public (Doc. 284 at 3; Doc. 276 at 2, 3, 5, 8), and has also acknowledged that Mr. Bornstein "is surely in the best position to advance this case without any more delay" (Doc. 276 at 2). Having now been appointed as CJA counsel, Mr. Bornstein has over a week to review the Government's *James* submission prior to its filing on 1/6/2023.<br><br>The Government's request to vacate the deadlines related to its *James* proffer and log is therefore denied.<br><br>SO ORDERED by Judge Daniel D. Domenico on 12/28/2022. Text Only Entry (dddlc1, ) (Entered: 12/28/2022) |
| 12/28/2022 | 288 | MOTION for Order *Appointing Separate Counsel* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/28/2022) |
| 12/29/2022 | 289 | ORDER GRANTING 288 Motion for Appointment of Separate Counsel as to Michael Aaron Tew (1), Kimberley Ann Tew (2).<br><br>Attorney Peter R. Bornstein is relieved of any further representation of Defendant Kimberley Ann Tew, and the Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record for Ms. Tew. An attorney from the Criminal Justice Act panel will be appointed to represent Ms. Tew. Defendant Michael Aaron Tew will continue to be represented by Mr. Bornstein as appointed CJA counsel.<br><br>In light of the above, the deadlines for the Goverment's *James* proffer and log and the defendants' response thereto, and the *James* Hearing set for 1/26/2023 are CONTINUED pending further order of the Court.<br><br>Within one week of entry of appearance of new counsel for Ms. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; (2) mutually agreeable proposed deadlines for further *James* proceedings; and (3) any other issues the parties wish to bring to the Court's attention.<br><br>SO ORDERED by Judge Daniel D. Domenico on 12/29/2022. Text Only Entry (dddlc1, ) (Entered: 12/29/2022) |
| 01/03/2023 | 290 | NOTICE OF ATTORNEY APPEARANCE: David Scott Kaplan appearing for Kimberley Ann TewAttorney David Scott Kaplan added to party Kimberley Ann Tew(pty:dft) (Kaplan, David) (Main Document 290 replaced on 1/21/2025) (lrobe, ). (Entered: 01/03/2023) |
| 01/05/2023 | 291 | MOTION to Unrestrict Document 2 Warrant Issued, 1 Complaint, by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 01/05/2023) |
| 01/06/2023 | 292 | ORDER granting 291 Motion to Unrestrict 291 . The Clerk of Court is directed to unrestrict Documents 1 , 2 , 5 , and 6 as to Michael Aaron Tew (1), Kimberley Ann Tew (2), Jonathan K. Yioulos (3). SO ORDERED by Judge Daniel D. Domenico on 01/06/2023. Text Only Entry (dddlc5, ) (Entered: 01/06/2023) |

| 01/10/2023 | 293 | STATUS REPORT *(Joint Status Report of Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 01/10/2023) |
| 01/11/2023 | 294 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 293 Status Report filed by USA. By 1/17/2023, Mr. Bornstein and Mr. Kaplan must each submit an ex parte filing describing their positions regarding any conflict of interest that might prevent Mr. Bornstein from continuing to represent Mr. Tew and whether a hearing is necessary to evaluate and resolve this issue. SO ORDERED by Judge Daniel D. Domenico on 01/11/2023. Text Only Entry (dddlc5, ) (Entered: 01/11/2023) |
| 01/13/2023 | 295 | NOTICE OF ATTORNEY APPEARANCE: Nancy Lin Cohen appearing for Movants Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc.Attorney Nancy Lin Cohen added to party Christopher J. Alf(pty:mov), Attorney Nancy Lin Cohen added to party National Air Cargo Group, Inc. (pty:mov), Attorney Nancy Lin Cohen added to party National Air Cargo Holdings, Inc.(pty:mov) (athom, ) (Entered: 01/13/2023) |
| 01/13/2023 | 296 | NOTICE OF ATTORNEY APPEARANCE: Eric S. Galler appearing for Movants Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc.Attorney Eric S. Galler added to party Christopher J. Alf(pty:mov), Attorney Eric S. Galler added to party National Air Cargo Group, Inc. (pty:mov), Attorney Eric S. Galler added to party National Air Cargo Holdings, Inc.(pty:mov) (athom, ) (Entered: 01/13/2023) |
| 01/13/2023 | 297 | MOTION to Quash Subpoenas by Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc. as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 01/13/2023) |
| 01/17/2023 | 298 | NOTICE OF ATTORNEY APPEARANCE: Peter R. Bornstein appearing for Michael Aaron Tew (Bornstein, Peter) (Entered: 01/17/2023) |
| 01/17/2023 | 299 | MOTION for Leave to Restrict by Michael Aaron Tew. (Bornstein, Peter) (Entered: 01/17/2023) |
| 01/17/2023 | 300 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Bornstein, Peter) (Entered: 01/17/2023) |
| 01/17/2023 | 301 | RESTRICTED DOCUMENT – Level 3: by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/17/2023) |
| 01/26/2023 | 302 | ORDER granting 299 Motion for Leave to Restrict as to Michael Aaron Tew (1). The Clerk of Court is directed to maintain 300 at a LEVEL THREE RESTRICTION. SO ORDERED by Judge Daniel D. Domenico on 1/26/2023. Text Only Entry (dddlc5, ) (Entered: 01/26/2023) |
| 01/29/2023 | 303 | Unopposed MOTION to Modify Conditions of Release by Jonathan K. Yioulos as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Tallon, Michael) (Entered: 01/29/2023) |
| 01/30/2023 | 304 | ORDER GRANTING 303 Unopposed Motion to Modify Conditions of Release as to Jonathan K. Yioulos (3). Mr. Yioulos may travel to Sarasota, Florida, to visit family from 2/16/23 to 2/24/23. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact his probation officer as directed during the time of approved travel, and (3) promptly contact his probation officer upon return from his trip. SO ORDERED by |

| | | |
|---|---|---|
| | | Judge Daniel D. Domenico on 01/30/2023. Text Only Entry (dddlc5, ) (Entered: 01/30/2023) |
| 01/30/2023 | 305 | ORDER WITHDRAWING COUNSEL as to Michael Aaron Tew. Peter R. Bornstein is WITHDRAWN as counsel to Defendant Michael Aaron Tew and relieved of all further representation. The Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record, and to remove his name from the electronic certificate of mailing. An attorney from the Criminal Justice Act panel will be appointed to represent Defendant Michael Tew. Within one week of entry of appearance of new counsel for Mr. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; and (2) any other issues the parties wish to bring to the Court's attention. On or before 3/13/2023, the parties must file a Joint Status Report with mutually agreeable proposed deadlines for further *James* proceedings. By Judge Daniel D. Domenico on 01/30/2023. (athom, ) (Entered: 01/30/2023) |
| 01/30/2023 | 306 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos.The Motion of Third–Party Victims to Quash Subpoenas (Doc. 297 ) is GRANTED.The defendants' third–party subpoenas dated 12/1/2022 are QUASHED. The defendants may, if they wish, file a renewed motion for leave to serve third–party subpoenas that fully complies with Federal Rule of Criminal Procedure 17. By Judge Daniel D. Domenico on 01/30/2023. (athom, ) (Entered: 01/30/2023) |
| 01/30/2023 | 307 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 303 Unopposed MOTION to Modify Conditions of Release filed by attorney Michael John Tallon. The format for the attorney's signature block information is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 01/30/2023) |
| 01/31/2023 | 308 | NOTICE OF ATTORNEY APPEARANCE: Jason Dale Schall appearing for Michael Aaron TewAttorney Jason Dale Schall added to party Michael Aaron Tew(pty:dft) (Schall, Jason) (Entered: 01/31/2023) |
| 02/03/2023 | 309 | Unopposed MOTION to Continue *Trial* by Michael Aaron Tew. (Schall, Jason) (Entered: 02/03/2023) |
| 02/03/2023 | 310 | ORDER re 309 Motion to Continue as to Michael Aaron Tew. The Court currently does not have enough information to determine whether the ends–of–justice served by the length of delay requested by the Defendant outweighs the best interests of the defendant and public in a speedy trial. In light of the appointment of Mr. Tew's new counsel and the suspension of the present time from the Speedy Trial Act given the James proceeding is not yet under advisement, the eight–day jury trial set for 3/13/23 and Trial Preparation Conference set for 3/7/2023 are VACATED. The Motion to Continue 309 is denied without prejudice. If Defendant wishes to file a renewed Motion to Continue, he should do so concurrent with the status report due 3/13/2023. SO ORDERED by Judge Daniel D. Domenico on 02/03/2023. Text Only Entry (dddlc5, ) (Entered: 02/03/2023) |
| 02/07/2023 | 311 | |

| | | |
|---|---|---|
| | | STATUS REPORT *(Joint Status Report of Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 02/07/2023) |
| 02/17/2023 | 312 | Unopposed MOTION to Modify Conditions of Release by Michael Aaron Tew. (Schall, Jason) (Entered: 02/17/2023) |
| 02/17/2023 | 313 | ORDER granting 312 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Condition 7(x)(w) is stricken from Defendant's Conditions of Release. Defendant's supervising officer shall notify the Court if any issues arise from the removal of this restriction. SO ORDERED by Judge Daniel D. Domenico on 2/17/2023. Text Only Entry (dddlc5, ) (Entered: 02/17/2023) |
| 03/13/2023 | 314 | STATUS REPORT *re James Hearing (Joint Status Report of all Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 03/13/2023) |
| 03/13/2023 | 315 | Unopposed MOTION for Order *for an Ends of Justice (EOJ) Continuance Pursuant to 18 U.S.C. 3161(h)(7)* by Kimberley Ann Tew. (Kaplan, David) (Entered: 03/13/2023) |
| 03/13/2023 | 316 | Unopposed MOTION to Continue *Trial* by Michael Aaron Tew. (Schall, Jason) (Entered: 03/13/2023) |
| 03/17/2023 | 317 | ORDER as to Kimberley Ann Tew. Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 315 ) is GRANTED. Three hundred and twenty−nine (329) days, from 3/17/2023 to 2/9/2024, will be excluded from the computation of Defendant Kimberley Tew's Speedy Trial Act time. Motions due by 9/13/2023. Responses due by 9/20/2023. The eight−day Jury Trial is RESET to 2/5/2024 at 9:00 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference RESET to 1/30/2024 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 03/17/2023. (athom, ) (Entered: 03/17/2023) |
| 03/17/2023 | 318 | ORDER as to Michael Aaron Tew. Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 316 ) is GRANTED. Three hundred and twenty−nine (329) days, from 3/17/2023 to 2/9/2024, will be excluded from the computation of Defendant Michael Tew's Speedy Trial Act time. Motions due by 9/13/2023. Responses due by 9/20/2023. The eight−day Jury Trial is RESET to 2/5/2024 at 9:00 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference is RESET to 1/30/2024 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 03/17/2023. (athom, ) (Entered: 03/17/2023) |
| 03/20/2023 | 319 | RESTRICTED PRESENTENCE REPORT as to Jonathan K. Yioulos (Attachments: # 1 Exhibit A)(lgiac) (Entered: 03/20/2023) |
| 03/20/2023 | 320 | RESTRICTED ADDENDUM to Presentence Report 319 as to Jonathan K. Yioulos (lgiac) (Entered: 03/20/2023) |
| 03/22/2023 | 321 | Unopposed MOTION to Continue *adjourn sentencing and apply for,passport* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/22/2023) |
| 03/23/2023 | 322 | ORDER granting 321 Motion to Continue as to Jonathan K. Yioulos (3). The sentencing set for 3/29/2023 is VACATED and RESET for 3/5/2024 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. |

| | | |
|---|---|---|
| | | Mr. Yioulos's motion to apply for a passport 321 is GRANTED. If a passport is issued to Mr. Yioulos, his counsel must maintain control of it until specific permission to travel is granted. Mr. Yioulos must separately request permission to travel.<br><br>SO ORDERED by Judge Daniel D. Domenico on 3/23/2023. Text Only Entry (dddlc5, ) (Entered: 03/23/2023) |
| 03/24/2023 | 323 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 321 Unopposed MOTION to Continue *adjourn sentencing and apply for,passport* filed by attorney Michael John Tallon. The format for the attorney's signature block information is not correct. **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases). The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (athom, ) (Entered: 03/24/2023) |
| 03/27/2023 | 324 | Unopposed MOTION to Modify Conditions of Release *for family travel to Florida on March 30th* by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 03/27/2023) |
| 03/27/2023 | 325 | ORDER granting 324 Motion to Modify Conditions of Release as to Jonathan K. Yioulos (3). Mr. Yioulos may travel to Sarasota, Florida, to visit family from 3/30/23 to 4/6/23. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact his probation officer as directed during the time of approved travel, and (3) promptly contact his probation officer upon return from his trip. SO by Judge Daniel D. Domenico on 3/27/2023. (dddlc5, ) (Entered: 03/27/2023) |
| 03/28/2023 | 326 | ADVISORY NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES re: 324 Unopposed Motion to Modify Conditions of Release filed by attorney **Michael John Tallon**. The document was scanned and not converted directly to portable document format (PDF). **DO NOT REFILE THE DOCUMENT. Action to take –** future documents must be filed pursuant to D.C.COLO.LCr49.1(a) and 1.3(f) of the Electronic Case Filing Procedures (Criminal Cases). (Text Only Entry) (jtorr, ) (Entered: 03/28/2023) |
| 05/01/2023 | 327 | Unopposed MOTION to Modify Conditions of Release by Michael Aaron Tew. (Schall, Jason) (Entered: 05/01/2023) |
| 05/01/2023 | 328 | ORDER granting 327 Motion to Modify Conditions of Release as to Michael Aaron Tew (1). Condition 7(q) of Mr. Tew's pre–trial release is removed. In lieu of 7(q) Mr. Tew must report to U.S. Pre–trial Services/U.S. Probation by no later than 12:00 p.m. MST every Monday. SO ORDERED by Judge Daniel D. Domenico on 5/1/2023. Text Only Entry (dddlc5, ) (Entered: 05/01/2023) |
| 06/07/2023 | 329 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 06/07/2023) |
| 06/07/2023 | 330 | ORDER granting 329 Motion to Travel as to Michael Aaron Tew (1). Mr. Tew may travel between on or around June 17, 2023 and June 22, 2023 to the States of Wisconsin and Michigan. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, (2) |

| | | |
|---|---|---|
| | | contact his probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 6/7/2023. Text Only Entry (dddlc5, ) (Entered: 06/07/2023) |
| 06/16/2023 | 331 | Unopposed MOTION to Travel *Out of State* by Kimberley Ann Tew. (Kaplan, David) (Entered: 06/16/2023) |
| 06/16/2023 | 332 | ORDER granting 331 Motion to Travel as to Kimberley Ann Tew (2). Ms. Tew may travel between on or around June 17, 2023 and June 22, 2023 to the States of Wisconsin and Michigan. She must (1) provide documentation regarding her travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact her probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 6/16/2023. Text Only Entry (dddlc5, ) (Entered: 06/16/2023) |
| 07/07/2023 | 333 | NOTICE OF ATTORNEY APPEARANCE: Richard Kent Kornfeld appearing for Jonathan K. YioulosAttorney Richard Kent Kornfeld added to party Jonathan K. Yioulos(pty:dft) (Kornfeld, Richard) (Entered: 07/07/2023) |
| 07/07/2023 | 334 | MOTION to Withdraw as Attorney by Michael J. Tallon by Jonathan K. Yioulos. (Tallon, Michael) (Entered: 07/07/2023) |
| 07/20/2023 | 335 | ORDER granting 334 Motion to Withdraw as Attorney. The Clerk of Court is directed to terminate Attorney Michael John Tallon as counsel of record for Jonathan K. Yioulos (3). Mr. Yioulos will continue to be represented by Richard K. Kornfeld. SO ORDERED by Judge Daniel D. Domenico on 7/20/2023. Text Only Entry (dddlc5, ) (Entered: 07/20/2023) |
| 09/12/2023 | 336 | Unopposed MOTION for Extension of Time to File *Pre−Trial Motions* by Kimberley Ann Tew. (Kaplan, David) (Entered: 09/12/2023) |
| 09/12/2023 | 337 | Unopposed MOTION for Extension of Time to File by Michael Aaron Tew. (Schall, Jason) (Entered: 09/12/2023) |
| 09/13/2023 | 338 | ORDER GRANTING 337 Motion for Extension of Time to File as to Michael Aaron Tew; and

GRANTING 336 Motion for Extension of Time to File as to Kimberley Ann Tew.

The motions deadline as to Mr. Tew and Ms. Tew is extended to October 13, 2023. The government must file responses on or before October 20, 2023. SO ORDERED by Judge Daniel D. Domenico on 9/13/2023. Text Only Entry (dddlc3, ) (Entered: 09/13/2023) |
| 10/13/2023 | 339 | STATUS REPORT *(Joint Status Report)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 10/13/2023) |
| 10/26/2023 | 340 | ORDER SETTING *JAMES* HEARING as to Michael Aaron Tew, Kimberley Ann Tew.

The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with an accompanying brief, on or before December 5, 2023. |

|  |  | The defendants must file their responses to the Government's *James* log and brief on or before December 12, 2023. A *James* Hearing is SET for December 19, 2023 at 9:30 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 10/26/2023. Text Only Entry (dddlc3, ) (Entered: 10/26/2023) |
| 12/05/2023 | 341 | Government's Proffer *(Memorandum in Support of James Log)* re: 340 Order,, by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit 1 – James Log, # 2 Exhibit 1001 – Bank Accounts, # 3 Exhibit 1002 – Scheme Invoice Summary, # 4 Exhibit 1003 – Scheme Deposit Summary, # 5 Exhibit 1004 – HSCPA, MCG & 5530JD Summary, # 6 Exhibit 1005 – PM Summary, # 7 Exhibit 1006 – GFL Summary, # 8 Exhibit 1007 – AMR Summary)(Fields, Bryan) (Entered: 12/05/2023) |
| 12/12/2023 | 342 | MOTION to Withdraw as Attorney by Albert Buchman by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Buchman, Albert) (Entered: 12/12/2023) |
| 12/12/2023 | 343 | ORDER GRANTING 342 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Albert Buchman as counsel of record, and to remove this name from the electronic certificate of mailing. The government will continue to be represented by attorney Bryan Fields. SO ORDERED by Judge Daniel D. Domenico on 12/12/2023. Text Only Entry (dddlc3, ) (Entered: 12/12/2023) |
| 12/12/2023 | 344 | MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit List of Authentic Business Records)(Fields, Bryan) (Entered: 12/12/2023) |
| 12/12/2023 | 345 | RESPONSE by Michael Aaron Tew re: 341 Govt's Proffer, filed by USA (Schall, Jason) (Entered: 12/12/2023) |
| 12/12/2023 | 346 | RESPONSE by Kimberley Ann Tew re: 341 Govt's Proffer, filed by USA (Attachments: # 1 Exhibit 1)(Kaplan, David) (Entered: 12/12/2023) |
| 12/13/2023 | 347 | RESTRICTED DOCUMENT – Level 3: by Kimberley Ann Tew. (Kaplan, David) (Entered: 12/13/2023) |
| 12/18/2023 | 348 | MOTION in Limine *regarding post–trial release* by Michael Aaron Tew. (Schall, Jason) (Entered: 12/18/2023) |
| 12/18/2023 | 349 | ORDER as to Kimberley Ann Tew. Jamie Hubbard of Stimson LaBranche Hubbard, LLC is to be appointed as co–counsel for Kimberley Ann Tew's trial pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et. seq. SO ORDERED by Judge Daniel D. Domenico on 12/18/2023. Text Only Entry (dddlc3, ) (Entered: 12/18/2023) |
| 12/18/2023 | 350 | EXHIBIT LIST *JAMES HEARING* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 12/18/2023) |
| 12/18/2023 | 351 | WITNESS LIST *JAMES HEARING* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 12/18/2023) |
| 12/19/2023 | 352 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 12/19/2023) |
| 12/19/2023 | 353 |  |

| | | |
|---|---|---|
| | | NOTICE OF ATTORNEY APPEARANCE Sarah Hunter Weiss appearing for USA. Attorney Sarah Hunter Weiss added to party USA(pty:pla) (Weiss, Sarah) (Entered: 12/19/2023) |
| 12/19/2023 | 355 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: James Hearing as to Michael Aaron Tew (1), Kimberley Ann Tew (2) held on 12/19/2023 re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* filed by USA, 348 MOTION in Limine *regarding post−trial release* filed by Michael Aaron Tew. Deferring ruling on 344 Motion in Limine as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Deferring ruling on 348 Motion in Limine as to Michael Aaron Tew (1). James Proffer is TAKEN UNDER ADVISEMENT. Defendants shall file responses to 344 Governments Motion in Limine for Ruling that Certain Exhibits are Authentic and Covered by Business−Records Exception to the Hearsay Rule not later than Friday, December 22, 2023. Bond is CONTINUED as to Defendants Michael Aaron Tew and Kimberley Ann Tew. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 12/20/2023) |
| 12/19/2023 | 356 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew for James Hearing held on 12/19/2023 with Clerk's notations as to date and time testified. (rkeec) (Entered: 12/20/2023) |
| 12/19/2023 | 357 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew for 12/19/2023 James Hearing with Clerk's notations as to exhibits identified by the witness. (rkeec) (Entered: 12/20/2023) |
| 12/20/2023 | 354 | NOTICE OF ATTORNEY APPEARANCE: Jamie Hughes Hubbard appearing for Kimberley Ann TewAttorney Jamie Hughes Hubbard added to party Kimberley Ann Tew(pty:dft) (Hubbard, Jamie) (Entered: 12/20/2023) |
| 12/20/2023 | 358 | ORDER GRANTING 352 Motion to Travel as to Michael Aaron Tew. Michael and Kimberley Tew may travel out of state from on or about December 22 through January 3 as requested so long as Mr. Tew provides completed travel itineraries to the Probation Department once those travel plans are finalized. SO ORDERED by Judge Daniel D. Domenico on 12/20/2023. Text Only Entry (dddlc3, ) (Entered: 12/20/2023) |
| 12/22/2023 | 359 | RESPONSE in Opposition by Michael Aaron Tew re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* (Schall, Jason) (Entered: 12/22/2023) |
| 12/22/2023 | 360 | RESPONSE to Motion by Kimberley Ann Tew re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* (Kaplan, David) (Entered: 12/22/2023) |
| 12/29/2023 | 361 | ORDER REGARDING ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS as to Michael Aaron Tew (1), Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 12/29/23. (rkeec) (Entered: 12/29/2023) |
| 01/08/2024 | 362 | NOTICE OF ATTORNEY APPEARANCE: Lisa Marie Saccomano appearing for Movant Atlantic Union Bank. (cmadr, ) (Entered: 01/09/2024) |
| 01/09/2024 | 363 | MOTION to Quash *Subpoena* by Atlantic Union Bank as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Saccomano, Lisa) (Entered: 01/09/2024) |
| 01/17/2024 | 364 | |

| | | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew. (Schall, Jason) (Entered: 01/17/2024) |
|---|---|---|
| 01/18/2024 | 365 | ORDER as to Michael Aaron Tew. An attorney selected from the District's Criminal Justice Act Panel is to be appointed as co–counsel for Michael Aaron Tew's trial pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et seq. SO ORDERED by Judge Daniel D. Domenico on 1/18/2024. Text Only Entry (dddlc3, ) (Entered: 01/18/2024) |
| 01/18/2024 | 366 | RESPONSE to Motion by USA as to Michael Aaron Tew, Kimberley Ann Tew re 363 MOTION to Quash *Subpoena* (Weiss, Sarah) (Entered: 01/18/2024) |
| 01/19/2024 | 367 | ORDER granting in part and denying in part as outlined in the order 344 Motion in Limine as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying as moot 363 Motion to Quash as to Michael Aaron Tew (1), Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 1/19/2024. (rkeec) (Entered: 01/19/2024) |
| 01/19/2024 | 368 | NOTICE OF ATTORNEY APPEARANCE: Kristen M. Frost appearing for Michael Aaron TewAttorney Kristen M. Frost added to party Michael Aaron Tew(pty:dft) (Frost, Kristen) (Entered: 01/19/2024) |
| 01/22/2024 | 369 | Unopposed MOTION for Order *to Produce Trial Exhibits via Electronic Means* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 01/22/2024) |
| 01/23/2024 | 370 | MOTION in Limine *regarding proffer agreements* by Michael Aaron Tew. (Attachments: # 1 Exhibit Defendant's Exhibits A and B)(Schall, Jason) (Entered: 01/23/2024) |
| 01/24/2024 | 371 | CLERK'S NOTE: ORIGINAL GOVERNMENT EXHIBITS for the 355 MINUTE ENTRY for James Hearing as to Michael Aaron Tew, Kimberley Ann Tew were returned to the Government on January 24, 2024. Text only entry. (rkeec) (Entered: 01/24/2024) |
| 01/24/2024 | 372 | ORDER as to Michael Aaron Tew re 370 Motion in limine regarding proffer statements. The government must file a response to Mr. Tew's motion at or before 5:00 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/24/2024. Text Only Entry (dddlc3, ) (Entered: 01/24/2024) |
| 01/24/2024 | 373 | MOTION in Limine *re Admissibility of Proffer Statements* by Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 374 | MOTION to Continue *Trial and Motion for Ends of Justice Continuance of 90 Days* by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 375 | Proposed Verdict Form as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Document Parties' Proposed Verdict Form)(Weiss, Sarah) (Entered: 01/24/2024) |
| 01/24/2024 | 376 | TRIAL BRIEF by Kimberley Ann Tew (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 377 | TRIAL BRIEF by Michael Aaron Tew (Schall, Jason) (Entered: 01/24/2024) |
| 01/24/2024 | 378 | NOTICE *of Certifications of Authentic, Non–Hearsay Business Records* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit, # 2 |

| | | Exhibit)(Weiss, Sarah) (Entered: 01/24/2024) |
|---|---|---|
| 01/24/2024 | 379 | TRIAL BRIEF by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/24/2024) |
| 01/25/2024 | 380 | Proposed Jury Instructions *(Joint)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/25/2024) |
| 01/25/2024 | 381 | ORDER re Kimberley Tew's 373 Motion in Limine and 374 Motion to Continue Trial. The government must provide responses to these two motions at or before 11:59 pm on Friday, January 26, 2024. The government's response deadline for Mr. Tew's 370 Motion in Limine is also extended to 11:59 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, ) (Entered: 01/25/2024) |
| 01/25/2024 | 382 | ORDER GRANTING 369 Unopposed Motion to Produce Trial Exhibits Via Electronic Means. The government must provide one original paper set of its proposed exhibits for use at the upcoming trial. The government must provide electronic copies of those exhibits to defense counsel on or before January 26, 2024.<br><br>The government must also provide **three electronic copies (e.g., via three thumb drives)** of its proposed exhibits to the court on or before January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, ) (Entered: 01/25/2024) |
| 01/25/2024 | 383 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Attachments: # 1 Exhibit List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 384 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Attachments: # 1 Witness List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 385 | NOTICE *regarding proposed witness and exhibit lists* by Michael Aaron Tew (Schall, Jason) (Entered: 01/25/2024) |
| 01/25/2024 | 386 | EXHIBIT LIST *(Amended)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Amended Exhibit List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 387 | EXHIBIT LIST by Kimberley Ann Tew (Attachments: # 1 Proposed Document Proposed Exhibit List)(Hubbard, Jamie) (Entered: 01/25/2024) |
| 01/25/2024 | 388 | WITNESS LIST by Kimberley Ann Tew (Attachments: # 1 Proposed Document Proposed Witness List)(Hubbard, Jamie) (Entered: 01/25/2024) |
| 01/26/2024 | 389 | Proposed Voir Dire by Kimberley Ann Tew (Hubbard, Jamie) (Entered: 01/26/2024) |
| 01/26/2024 | 390 | Proposed Voir Dire by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/26/2024) |
| 01/26/2024 | 391 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 374 MOTION to Continue *Trial and Motion for Ends of Justice Continuance of 90 Days* (Fields, Bryan) (Entered: 01/26/2024) |
| 01/26/2024 | 392 | Proposed Voir Dire by Michael Aaron Tew (Schall, Jason) (Entered: 01/26/2024) |
| 01/26/2024 | 393 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 373 MOTION in Limine *re Admissibility of Proffer Statements and* 370 *Defendant Michael Tew's Motion in Limine* (Weiss, Sarah) (Entered: 01/26/2024) |

| 01/27/2024 | 394 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Weiss, Sarah) (Entered: 01/27/2024) |
|---|---|---|
| 01/27/2024 | 395 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew. (Weiss, Sarah) (Entered: 01/27/2024) |
| 01/27/2024 | 396 | MOTION for Leave to Restrict by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Weiss, Sarah) (Entered: 01/27/2024) |
| 01/29/2024 | 397 | MOTION for Leave to File *Reply in Support of Motion in Limine* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 01/29/2024) |
| 01/29/2024 | 398 | BRIEF in Support by Kimberley Ann Tew to 373 MOTION in Limine *re Admissibility of Proffer Statements (Reply)* (Hubbard, Jamie) (Entered: 01/29/2024) |
| 01/29/2024 | 399 | MOTION to Exclude *Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/29/2024) |
| 01/29/2024 | 400 | BAIL STATUS REPORT 10 as to Michael Aaron Tew. (lgiac) (Entered: 01/29/2024) |
| 01/29/2024 | 401 | BAIL STATUS REPORT 107 as to Kimberley Ann Tew. (lgiac) (Entered: 01/29/2024) |
| 01/30/2024 | 403 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Trial Preparation Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2) held on 1/30/2024. Taking under advisement 374 Defendant Kimberly Ann Tews Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days. Taking under advisement 370 Motion in Limine as to Michael Aaron Tew (1). Taking under advisement 373 Motion in Limine as to Kimberley Ann Tew (2). Taking under advisement 399 Motion to Exclude as to Kimberley Ann Tew (2); re 370 MOTION in Limine *regarding proffer agreements* filed by Michael Aaron Tew, 373 MOTION in Limine *re Admissibility of Proffer Statements* filed by Kimberley Ann Tew, 399 MOTION to Exclude *Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* filed by Kimberley Ann Tew. Bond is CONTINUED as to Defendants Michael Aaron Tew and Kimberly Ann Tew. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 01/31/2024) |
| 01/31/2024 | 402 | ORDER Denying 374 Motion to Continue as to Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 31 January 2024. The trial will proceed on February 5, 2024, as scheduled. (cmadr, ) Modified to correct entry on 1/31/2024 (cmadr, ). (Entered: 01/31/2024) |
| 02/01/2024 | 404 | ORDER REGARDING MOTIONS IN LIMINE AND PRE–TRIAL ISSUES as to Michael Aaron Tew (1) and Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 1 February 2024. Defendants' motions, Docs. 370 and 373 , are GRANTED IN PART and DENIED IN PART as outlined herein. Ms. Tew's motion, Doc. 399 , is therefore DENIED. (cmadr, ) (Entered: 02/01/2024) |
| 02/02/2024 | 405 | Unopposed MOTION for Order *To Obtain Testimony Via Live Contemporaneous Video Conference* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 02/02/2024) |

| 02/02/2024 | 406 | Order GRANTING 405 Unopposed Motion to Obtain Testimony Via Live Contemporaneous Video Conference. The government is cautioned, however, that it bears the risk of any technology malfunctions, whether on the Court's end or the witness's end. SO ORDERED by Judge Daniel D. Domenico on 2/2/2024. Text Only Entry (dddlc3, ) (Entered: 02/02/2024) |
|---|---|---|
| 02/02/2024 | 407 | WITNESS LIST *(Final Witness List)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Final Witness List)(Fields, Bryan) (Entered: 02/02/2024) |
| 02/02/2024 | 408 | EXHIBIT LIST *Final Exhibit List* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit)(Weiss, Sarah) (Entered: 02/02/2024) |
| 02/04/2024 | 409 | MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 02/04/2024) |
| 02/04/2024 | 410 | MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, by Michael Aaron Tew. (Schall, Jason) (Entered: 02/04/2024) |
| 02/04/2024 | 411 | NOTICE *of Submission of Alternative Version of Charges for Juror Notebooks* by Kimberley Ann Tew (Attachments: # 1 Attachment)(Hubbard, Jamie) (Entered: 02/04/2024) |
| 02/04/2024 | 412 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 409 MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing*, 410 MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, (Fields, Bryan) (Entered: 02/04/2024) |
| 02/05/2024 | 413 | EXHIBIT LIST by Kimberley Ann Tew (Hubbard, Jamie) (Entered: 02/05/2024) |
| 02/05/2024 | 414 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 1) held on 2/5/2024 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying 410 Motion for Reconsideration re 410 MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, filed by Michael Aaron Tew, 409 MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* filed by Kimberley Ann Tew as to Michael Aaron Tew (1). Denying 409 Motion for Order as to Kimberley Ann Tew (2). Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 415 | Jury Strike Sheet – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 416 | Jury Strike Sheet with juror names redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 417 | Jury Random List – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/06/2024) |
| 02/06/2024 | 418 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 2) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/6/2024. Defendant Kimberley Ann Tews oral motion for severance is TAKEN UNDER ADVISEMENT. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/07/2024) |

| 02/07/2024 | 419 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 3) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/7/2024. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/08/2024) |
| 02/08/2024 | 420 | Renewed MOTION to Sever Defendant by Michael Aaron Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Frost, Kristen) (Entered: 02/08/2024) |
| 02/08/2024 | 421 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 4) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/8/2024. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/09/2024) |
| 02/09/2024 | 423 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 5) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/9/2024. Defendant Kimberley Ann Tews oral motion for mistrial is DENIED. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/12/2024) |
| 02/11/2024 | 422 | RESPONSE in Opposition by USA as to Michael Aaron Tew re 420 Renewed MOTION to Sever Defendant (Weiss, Sarah) (Entered: 02/11/2024) |
| 02/12/2024 | 424 | ORDER DENYING 420 Michael Tew's Renewed Motion for Severance. By Judge Daniel D. Domenico on 2/12/2024. (dddlc1, ) (Entered: 02/12/2024) |
| 02/12/2024 | 425 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 6) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/12/2024. 420 Defendant Michael Tews Renewed Motion for Severance is DENIED. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/13/2024) |
| 02/13/2024 | 426 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew. The Clerk of Court shall provide lunch to the jury for the duration of their deliberations commencing on Wednesday, February 14, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/13/2024. (rkeec) (Entered: 02/13/2024) |
| 02/13/2024 | 427 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 7) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/13/2024. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/14/2024) |
| 02/14/2024 | 428 | AMENDED MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew. The Clerk of Court shall provide lunch to the jury, including the alternate juror, for the duration of their deliberations commencing on Wednesday, February 14, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/14/2024. (rkeec) (Entered: 02/14/2024) |
| 02/14/2024 | 430 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 8) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/14/2024. Defendant Kimberley Ann Tews oral motion for mistrial is DENIED. Defendant Kimberley Ann Tews oral Rule 29 motion is DENIED. Defendant Kimberley Ann Tews oral motion for severance is DENIED. Defendant Michael Aaron Tews oral Rule 29 motion is DENIED. Defendant Michael Aaron Tews oral motion for severance is DENIED. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 431 | |

| | | Jury Note with juror name – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/15/2024) |
|---|---|---|
| 02/14/2024 | 432 | Jury Note with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 433 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew with dates and times testified. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 434 | WITNESS LIST by Kimberley Ann Tew as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 435 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew indicating admitted exhibits. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 436 | EXHIBIT LIST by Michael Aaron Tew, Kimberley Ann Tew indicating admitted exhibits. (rkeec) (Entered: 02/15/2024) |
| 02/15/2024 | 429 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/15/2024. (rkeec) (Entered: 02/15/2024) |
| 02/15/2024 | 438 | Final Jury Instructions as to Michael Aaron Tew, Kimberley Ann Tew as read into the record on 2/14/2024. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 439 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 9) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/15/2024. Jury Verdict as to Michael Aaron Tew (1) Guilty on Count 1,1s,2,2s–40s,3,41s,42s,44s–56s,57s–60s and Kimberley Ann Tew (2) Guilty on Count 1,21–22,25–26,31–32,41,43–44,47,56. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) Modified on 2/16/2024 to correct as to Count 48 (rkeec). (Entered: 02/16/2024) |
| 02/15/2024 | 440 | Jury Note 1 (Question) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 441 | Jury Note 2 (Question) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 442 | Jury Note 3 (Verdict) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 443 | Jury Note 1 (Question) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 444 | Jury Note 2 (Question) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 445 | Jury Note 3 (Verdict) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) Modified on 2/16/2024 (rkeec, ). (Entered: 02/16/2024) |
| 02/15/2024 | 446 | Court Response to Jury Notes 1 and 2 (Questions) as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 447 | Jury Verdict Un–Redacted – Level 4 – Viewable by Court Only. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 448 | JURY VERDICT with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |

| 02/15/2024 | 449 | STIPULATION AND ORDER REGARDING CUSTODY OF EXHIBITS AND DEPOSITIONS as to Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/15/2024. (rkeec) (Entered: 02/16/2024) |
| 02/16/2024 | 437 | Unopposed MOTION to Continue *Sentencing* by Jonathan K. Yioulos. (Kornfeld, Richard) (Entered: 02/16/2024) |
| 02/21/2024 | 450 | MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit)(Weiss, Sarah) (Entered: 02/21/2024) |
| 02/21/2024 | 451 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA.<br><br>Mr. Tew and Mrs. Tew must each file responses to the government's 450 Motion to Detain on or before **February 27, 2024**. SO ORDERED by Judge Daniel D. Domenico on 2/21/2024. Text Only Entry (dddlc3, ) (Entered: 02/21/2024) |
| 02/21/2024 | 452 | ORDER GRANTING 437 Motion to Continue Sentencing as to Jonathan K. Yioulos. The Sentencing set as to Mr. Yioulos for March 5, 2024 at 10:30 AM is VACATED and RESET for September 17, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 2/21/2024. Text Only Entry (dddlc3, ) (Entered: 02/21/2024) |
| 02/27/2024 | 453 | RESPONSE in Opposition by Michael Aaron Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* (Schall, Jason) (Entered: 02/27/2024) |
| 02/27/2024 | 454 | RESPONSE to Motion by Kimberley Ann Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* (Kaplan, David) (Entered: 02/27/2024) |
| 03/12/2024 | 455 | ORDER re 450 Motion to Detain Defendants Michael and Kimberley Tew. The government's motion questions whether Mr. and Mrs. Tew are still eligible for CJA–appointed counsel for this case. There is sufficient evidence to call into question their present eligibility under 18 U.S.C. § 3006A(c).<br><br>The issue of whether Michael Tew and Kimberley Tew remain entitled to ongoing court–appointed counsel under Section 3006A(c) is therefore REFERRED to Magistrate Judge Susan Prose. All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential un–sealing of any prior CJA affidavits, will be addressed at a detention hearing before this Court as outlined below.<br><br>It is therefore ORDERED that a Hearing on the 450 Government's Motion is SET for April 22, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/12/2024 | 456 | ORDER as to Michael Aaron Tew. A Sentencing Hearing as to Michael Tew is SET for August 8, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/12/2024 | 457 | |

| | | |
|---|---|---|
| | | ORDER as to Kimberley Ann Tew. A Sentencing Hearing as to Kimberley Tew is SET for August 8, 2024 at 1:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/14/2024 | 458 | SENTENCING STATEMENT by USA as to Michael Aaron Tew (Attachments: # 1 Exhibit, # 2 Exhibit)(Fields, Bryan) (Entered: 03/14/2024) |
| 03/14/2024 | 459 | SENTENCING STATEMENT by USA as to Kimberley Ann Tew (Attachments: # 1 Exhibit, # 2 Exhibit)(Fields, Bryan) (Entered: 03/14/2024) |
| 03/15/2024 | 460 | ORDER SETTING STATUS CONFERENCE as to Michael Aaron Tew, Kimberley Ann Tew by Magistrate Judge Susan Prose on 3/15/2024. A **30–minute in–person** Status Conference is hereby set for 3/18/2024, at 4:00 PM in Courtroom C205 before Magistrate Judge Susan Prose. The parties shall be prepared to discuss Defendant Michael Tew's request for "an *ex parte* hearing... to determine whether Mr. Tew 'is financially able to obtain counsel or to make partial payment for the representation' pursuant to 18 U.S.C. § 3006A(c)." *See* ECF No. 453 at 3. Text Only Entry. (trvo, ) (Entered: 03/15/2024) |
| 03/18/2024 | 461 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew by Magistrate Judge Susan Prose on 3/18/2024. At the request of the parties, the Status Conference is RESET for 3/21/2024, at 04:00 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry. (trvo, ) (Entered: 03/18/2024) |
| 03/21/2024 | 462 | MINUTE ENTRY for Status Conference as to Michael Aaron Tew and Kimberley Ann Tew held before Magistrate Judge Susan Prose on 3/21/2024. Discussion regarding issue referred to this court (*see* ECF No. 455). An ex parte hearing to determine Michael Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for March 28, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 10:00 a.m. March 27, 2024. An ex parte hearing to determine Kimberley Ann Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for April 15, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 12:00 p.m. April 10, 2024. Hearing concluded. FTR: C205. (Total time: 1 hour and 8 minutes, Hearing time: 3:57 p.m. – 5:05 p.m.) Text Only Entry.<br><br>**APPEARANCES:** Bryan David Fields and Sarah Hunter Weiss on behalf of the Government, Jason Dale Schall and Kristen M. Frost on behalf of Defendant Michael Aaron Tew and David Scott Kaplan on behalf of Defendant Kimberly Ann Tew. (trvo, ) (Entered: 03/22/2024) |
| 03/21/2024 | 463 | Utility Setting/Resetting Deadlines/Hearings as to Michael Aaron Tew: Ex Parte In Court Hearing set for 3/28/2024, at 01:30 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry (trvo, ) (Entered: 03/22/2024) |
| 03/21/2024 | 464 | Utility Setting/Resetting Deadlines/Hearings as to Kimberley Ann Tew: Ex Parte In Court Hearing set for 4/15/2024, at 01:30 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry (trvo, ) (Entered: 03/22/2024) |
| 03/27/2024 | 465 | STATEMENT *by Government Regarding Michael Tew's Eligibility for CJA–Funded Counsel Going Forward* by Plaintiff USA (Weiss, Sarah) (Entered: 03/27/2024) |

| 03/27/2024 | 466 | RESTRICTED DOCUMENT LEVEL 3 − Conventionally Submitted Material: 1 Flash Drive re 462 Status Conference, by Plaintiff USA. Location: 1st Floor Area, Box D−5−9. Text Only Entry. (sphil, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 03/27/2024) |
|---|---|---|
| 03/27/2024 | 467 | RESTRICTED DOCUMENT LEVEL 3 − Conventionally Submitted Material: 1 USB Drive re 462 Status Conference, by Defendant Michael Aaron Tew. Location: 1st Floor Area, Box D−5−9. Text Only Entry. (trvo, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 03/28/2024) |
| 03/28/2024 | 468 | MINUTE ENTRY for Ex Parte Hearing as to Michael Aaron Tew held before Magistrate Judge Susan Prose on 3/28/2024. The Court finds that Defendant Michael Tew remains eligible for court−appointed counsel. A separate public written order will be issued. FTR: C205. (trvo, ) (Entered: 03/29/2024) |
| 04/01/2024 | 469 | ORDER GRANTING 397 Motion for Leave to File Reply as to Kimberley Ann Tew. By Judge Daniel D. Domenico on 4/1/2024. Text Only Entry (dddlc1, ) (Entered: 04/01/2024) |
| 04/01/2024 | 470 | ORDER GRANTING 396 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Docs. 394 and 395 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/1/2024. Text Only Entry (dddlc1, ) (Entered: 04/01/2024) |
| 04/05/2024 | 471 | ORDER REGARDING DEFENDANT MICHAEL TEW'S ELIGIBILITY FOR ONGOING COURT−APPOINTED COUNSEL by Magistrate Judge Susan Prose on 4/5/2024. (trvo, ) (Entered: 04/05/2024) |
| 04/10/2024 | 472 | STATEMENT *by Government Regarding Kimberley Tew's Eligibility for CJA−Funded Counsel Going Forward* by Plaintiff USA (Weiss, Sarah) (Entered: 04/10/2024) |
| 04/15/2024 | 473 | RESTRICTED DOCUMENT LEVEL 3 − Conventionally Submitted Material: 1 USB Drive re 462 Status Conference, by Defendant Kimberley Ann Tew. Location: 1st Floor Area, Box D−5−9. Text Only Entry (trvo, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 04/15/2024) |
| 04/15/2024 | 474 | MINUTE ENTRY for Ex Parte Hearing as to Kimberley Ann Tew held before Magistrate Judge Susan Prose on 4/15/2024. The Court finds that Defendant Kimberley Ann Tew remains eligible for court−appointed counsel. A separate public written order will be issued. FTR: C205. (trvo, ) (Entered: 04/16/2024) |
| 04/16/2024 | 475 | Unopposed MOTION for Order *Requiring the Parties to File Visual Presentations into the Record* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/16/2024) |
| 04/16/2024 | 476 | ORDER granting 475 Motion for Order Requiring the Parties to File Visual Presentations into the Record. The parties are ordered to file all visual presentations used during opening statements and closing arguments into the record. SO ORDERED by Judge Daniel D. Domenico on 4/16/2024. Text Only Entry (dddlc9, ) (Entered: 04/16/2024) |
| 04/18/2024 | 477 | NOTICE *OF CONVENTIONAL SUBMISSION* re 476 Order on Motion for Order, by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 04/18/2024) |
| 04/18/2024 | 479 | |

|  |  | Conventionally Submitted Material : USB exhibits to 477 NOTICE OF CONVENTIONAL SUBMISSION re 476 Order on Motion for Order, by Plaintiff USA – Material placed in the oversized area D–5–9 of the Clerk's Office. Text Only Entry (angar, ) (Entered: 04/19/2024) |
| 04/19/2024 | 478 | ORDER REGARDING DEFENDANT KIMBERLEY ANN TEW'S ELIGIBILITY FOR ONGOING COURT–APPOINTED COUNSEL by Magistrate Judge Susan Prose on 4/19/2024. (trvo, ) (Entered: 04/19/2024) |
| 04/21/2024 | 480 | MOTION for Leave to Restrict by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/21/2024 | 481 | RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/21/2024 | 482 | RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/22/2024 | 483 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Evidentiary Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 4/22/2024 re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA. 450 Motion to Detain as to Michael Aaron Tew (1), Kimberley Ann Tew (2) is DENIED, but the Court will impose additional conditions of bond. Court indicates that a written order shall follow. Bond is continued as to Michael Aaron Tew and Kimberley Ann Tew. Court Reporter: Tammy Hoffschildt. (Attachments: # 1 Government's witness list, # 2 Government's exhibit list) (rkeec) (Entered: 04/22/2024) |
| 04/23/2024 | 484 | NOTICE *of Filing of Visual Presentation* by Kimberley Ann Tew (Attachments: # 1 PowerPoint Closing Statement)(Hubbard, Jamie) (Entered: 04/23/2024) |
| 04/23/2024 | 485 | Unopposed MOTION to Travel *UNOPPOSED MOTION FOR DEFENDANT TO TRAVEL OUT OF THE COUNTRY* by Jonathan K. Yioulos. (Attachments: # 1 Waiver of Extradition)(Kornfeld, Richard) (Entered: 04/23/2024) |
| 04/23/2024 | 486 | NOTICE *Of Clarification Regarding Sentencing Statement* by Michael Aaron Tew (Frost, Kristen) (Entered: 04/23/2024) |
| 04/24/2024 | 487 | ORDER granting 485 Motion to Travel as to Jonathan K. Yioulos. Mr. Yioulos may travel to Montego Bay, Jamaica, from June 26 to July 2, 2024. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from each trip. SO ORDERED by Judge Daniel D. Domenico on 4/24/2024. Text Only Entry (dddlc9, ) (Entered: 04/24/2024) |
| 04/24/2024 | 488 | NOTICE *Of Filing Of Visual Presentation* by Michael Aaron Tew (Attachments: # 1 Closing Argument PowerPoint)(Frost, Kristen) (Entered: 04/24/2024) |
| 04/25/2024 | 489 | ORDER modifying conditions of release as to Michael Aaron Tew and Kimberley Ann Tew. The following conditions are added to those already in effect:<br><br>1. Defendants shall disclose a complete list of all bank accounts and peer–to–peer financial services accounts to which they have access no later than April 30, 2024. Defendants shall further provide a statement for each of these accounts to their supervising officer no later than the 5th of each following month, starting on May 5th, 2024. |

| | | |
|---|---|---|
| | | 2. Defendants shall refrain from gambling of any kind, purchasing over $50 of gift cards in a given day, and engaging in any cryptocurrency transaction without the prior approval of the supervising officer.<br><br>3.The supervising officer may, in his discretion, share any information provided to him by Defendants pursuant to these conditions with the government.<br><br>SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/25/2024 | 490 | ORDER denying as moot 348 Motion in Limine in light of 483 and 489 . SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/25/2024 | 491 | ORDER granting 480 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 482 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/26/2024 | 492 | NOTICE OF ATTORNEY APPEARANCE Martha Ann Paluch appearing for USA. Attorney Martha Ann Paluch added to party USA(pty:pla) (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 493 | RESTRICTED DOCUMENT – Level 3: by USA as to Kimberley Ann Tew (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 494 | RESTRICTED DOCUMENT – Level 1: by USA as to Kimberley Ann Tew (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 495 | MOTION for Leave to Restrict by USA as to Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 499 | ORDER Updating Conditions of Release as to Michael Aaron Tew (1) $20,000 Unsecured. SO ORDERED by Judge Daniel D. Domenico on 4/26/2024. (rkeec) (Entered: 05/01/2024) |
| 04/26/2024 | 500 | ORDER Updating Conditions of Release as to Kimberley Ann Tew (2) $10,000 Unsecured. SO ORDERED by Judge Daniel D. Domenico on 4/26/2024. (rkeec) (Entered: 05/01/2024) |
| 04/29/2024 | 496 | Unopposed MOTION to Travel *Out of State* by Jonathan K. Yioulos. (Kornfeld, Richard) (Entered: 04/29/2024) |
| 04/30/2024 | 497 | ORDER granting 496 Motion to Travel as to Jonathan K. Yioulos. Instead of going to Jamaica, Mr. Yioulos may travel to Miami, Florida from June 25 to July 1, 2024. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from the trip. SO ORDERED by Judge Daniel D. Domenico on 4/30/2024. Text Only Entry (dddlc9, ) (Entered: 04/30/2024) |
| 04/30/2024 | 498 | ORDER granting 495 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 493 at Level 3 restriction and to maintain Doc. 494 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/30/2024. Text Only Entry (dddlc9, ) (Entered: 04/30/2024) |
| 05/08/2024 | 501 | |

| | | ORDER denying 482 RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. Having reviewed the pleadings on this issue and considered the relevant facts, the motion is denied. SO ORDERED by Judge Daniel D. Domenico on 5/8/2024. Text Only Entry (dddlc9, ) (Entered: 05/08/2024) |
|---|---|---|
| 05/31/2024 | 502 | Unopposed MOTION to Continue *Sentencing and Related Deadlines* by Michael Aaron Tew. (Schall, Jason) (Entered: 05/31/2024) |
| 06/04/2024 | 503 | ORDER granting 502 Motion to Continue as to Michael Aaron Tew. Mr. Tew's sentencing, which was set for 9/12/2024, is vacated and reset for 9/12/2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 6/4/2024. Text Only Entry (dddlc9, ) (Entered: 06/04/2024) |
| 07/02/2024 | 504 | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Kimberley Ann Tew (Attachments: # 1 Exhibit A)(aarag, ) (Entered: 07/02/2024) |
| 07/09/2024 | 505 | ORDER RESETTING HEARING as to Jonathan K. Yioulos. Due to a conflict on the Court's calendar, and after consultation with counsel, the Sentencing set for 9/17/2024 is VACATED and RESET for 10/2/2024 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 7/9/2024. Text Only Entry (dddlc1, ) (Entered: 07/09/2024) |
| 07/15/2024 | 506 | Unopposed MOTION for Extension of Time to File *Objections to Presentence Investigation Report* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion for Extension of Time to Submit Objection to Presentence Investigation Report)(Kaplan, David) (Entered: 07/15/2024) |
| 07/17/2024 | 507 | ORDER granting 506 Motion for Extension of Time. Ms. Tew may file objections to the PSIR on or before July 19, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/17/2024. Text Only Entry (dddlc9, ) (Entered: 07/17/2024) |
| 07/19/2024 | 508 | OBJECTION/RESPONSE to Presentence Report by Kimberley Ann Tew (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 3a, # 5 Exhibit Exhibit 4, # 6 Exhibit Exhibit 5, # 7 Exhibit Exhibit 6, # 8 Exhibit Exhibit 6a, # 9 Exhibit Exhibit 7, # 10 Exhibit Exhibit 7a)(Kaplan, David) (Entered: 07/19/2024) |
| 07/19/2024 | 510 | Conventionally Submitted Material : 1 Flash Drive re Objection/Response to Presentence Report, 508 by Defendant Kimberley Ann Tew. Location of Stored Items: Box D–5–5. Text Only Entry (cmadr, ) (Entered: 07/23/2024) |
| 07/22/2024 | 509 | Unopposed MOTION for Leave to Restrict by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) PO re Unopposed Motion to Restrict)(Kaplan, David) (Entered: 07/22/2024) |
| 07/24/2024 | 511 | ORDER granting 509 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 508 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 7/24/2024. Text Only Entry (dddlc9, ) (Entered: 07/24/2024) |
| 07/25/2024 | 512 | NOTICE OF ATTORNEY APPEARANCE Laura Beth Hurd appearing for USA. Attorney Laura Beth Hurd added to party USA(pty:pla) (Hurd, Laura) (Entered: 07/25/2024) |
| 07/25/2024 | 513 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* by USA as to Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, |

| | | |
|---|---|---|
| | | Laura) (Entered: 07/25/2024) |
| 07/25/2024 | 514 | ORDER re 513 Motion for Preliminary Order of Forfeiture. If Ms. Tew opposes the motion, she is ordered to file a response on or before August 2, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/25/2024. Text Only Entry (dddlc9, ) (Entered: 07/25/2024) |
| 07/25/2024 | 515 | RESTRICTED DOCUMENT – Level 2: as to Kimberley Ann Tew. (Kaplan, David) (Entered: 07/25/2024) |
| 07/26/2024 | 516 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Conventionally Submitted, # 2 Exhibit, # 3 Exhibit)(Weiss, Sarah) (Entered: 07/26/2024) |
| 07/26/2024 | 519 | Conventionally Submitted Material : One CD re Restricted Document – Level 2 516 by Plaintiff USA. Location of stored items: Sealed Room. Text Only Entry (cmadr, ) (Entered: 07/30/2024) |
| 07/29/2024 | 517 | RESTRICTED PRESENTENCE REPORT as to Kimberley Ann Tew (Attachments: # 1 Exhibit A)(agalv) (Entered: 07/29/2024) |
| 07/29/2024 | 518 | RESTRICTED ADDENDUM to Presentence Report 517 as to Kimberley Ann Tew (agalv) (Entered: 07/29/2024) |
| 08/01/2024 | 520 | RESTRICTED DOCUMENT – Level 2: as to Kimberley Ann Tew. (Weiss, Sarah) (Entered: 08/01/2024) |
| 08/01/2024 | 521 | Unopposed MOTION for Order *To Permit Virtual or Telephonic Attendance for Co−Defendant's Sentencing Hearing* by Michael Aaron Tew. (Frost, Kristen) (Entered: 08/01/2024) |
| 08/02/2024 | 522 | RESPONSE to Motion by Kimberley Ann Tew re 513 MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* (Kaplan, David) (Entered: 08/02/2024) |
| 08/05/2024 | 523 | ORDER as to Kimberley Ann Tew re 513 Motion for Preliminary Order of Forfeiture. The Court will hold a hearing regarding forfeiture starting at 1:00 PM on August 8, 2024 in Courtroom A1002. Sentencing will follow immediately afterward. SO ORDERED by Judge Daniel D. Domenico on 8/5/2024. Text Only Entry (dddlc9, ) (Entered: 08/05/2024) |
| 08/05/2024 | 524 | ORDER granting 521 Motion for Order as to Michael Aaron Tew to Permit Virtual or Telephonic Attendance for Co−Defendant's Sentencing Hearing. Mr. Tew's counsel is directed to contact the Courtroom Deputy via email (robb_keech@cod.uscourts.gov) no later than 8/6/2024 for instructions on how to proceed by telephone conference. All persons participating in court proceedings remotely by VTC or teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner. SO ORDERED by Judge Daniel D. Domenico on 8/5/2024. Text Only Entry (dddlc9, ) (Entered: 08/05/2024) |
| 08/06/2024 | 525 | REPLY TO RESPONSE to Motion by USA as to Kimberley Ann Tew re 513 MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture UNITED STATES REPLY TO KIMBERLEY TEWS NOTICE OF OBJECTION TO UNITED STATES MOTION FOR PRELIMINARY ORDER OF FORFEITURE (ECF DOC. 522)* (Hurd, Laura) (Entered: 08/06/2024) |
| 08/08/2024 | 526 | |

| | | |
|---|---|---|
| | | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Michael Aaron Tew (Attachments: # 1 Exhibit A)(ntaka) (Entered: 08/08/2024) |
| 08/08/2024 | 527 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Forfeiture Hearing and Sentencing as to Kimberley Ann Tew (2) held on 8/8/2024. Granting 513 Motion for Forfeiture of Property as to Kimberley Ann Tew (2). Granting in part 515 Defendants Motion. Defendant sentenced as reflected on the record. Bond continued. Court Reporter: Tammy Hoffschildt. (rkeec) Modified on 8/8/2024 to include ruling on 515 Defendant's Motion. (rkeec). (Entered: 08/08/2024) |
| 08/13/2024 | 528 | JUDGMENT as to defendant Kimberley Ann Tew (2), Count(s) 1, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 16, Dismissed by Court during jury trial.; Count(s) 21−22, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 25−26, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 31−32, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 41, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 43−44, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 47, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 48, Defendant was found not guilty by jury at trial.; Count(s) 56, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. Entered by Judge Daniel D. Domenico on 8/13/2024. (rkeec) (Entered: 08/13/2024) |
| 08/13/2024 | 529 | STATEMENT OF REASONS as to Kimberley Ann Tew (2). (rkeec) (Entered: 08/13/2024) |
| 08/14/2024 | 530 | Passport Receipt as to Kimberley Ann Tew (2). Forwarding passport to Dept. of State; Passport Number 522213975 issued by USA. Sent certified mail; receipt number 7019 2920 0001 1984 2431. (rkeec) (Entered: 08/14/2024) |
| 08/15/2024 | 531 | RESTRICTED DOCUMENT − Level 2: as to Michael Aaron Tew. (Schall, Jason) (Entered: 08/15/2024) |
| 08/15/2024 | 532 | |

| | | |
|---|---|---|
| | | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (cmadr, ) (Entered: 08/15/2024) |
| 08/19/2024 | 533 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (rkeec) (Entered: 08/19/2024) |
| 08/19/2024 | 534 | Utility Setting/Resetting Deadlines/Hearings as to Michael Aaron Tew: Text Only Entry. Sentencing reset for 11/12/2024, at 01:30 PM, in Courtroom A1002 before Judge Daniel D. Domenico. (rkeec) (Entered: 08/19/2024) |
| 08/20/2024 | 535 | NOTICE OF APPEAL by Kimberley Ann Tew. (Kaplan, David) (Entered: 08/20/2024) |
| 08/21/2024 | 536 | Unopposed MOTION to Continue *Second Unopposed Motion to Continue Sentencing* by Jonathan K. Yioulos. (Kornfeld, Richard) (Entered: 08/21/2024) |
| 08/21/2024 | 537 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 535 Notice of Appeal as to Kimberley Ann Tew to the U.S. Court of Appeals. ( CJA, Fee not paid and 1915 motion not filed,) (Attachments: # 1 Preliminary Record)(cmadr, ) (Entered: 08/21/2024) |
| 08/21/2024 | 538 | USCA Case Number as to Kimberley Ann Tew 24–1333 for 535 Notice of Appeal filed by Kimberley Ann Tew. (cmadr, ) (Entered: 08/21/2024) |
| 08/22/2024 | 539 | ORDER granting 536 Motion to Continue as to Jonathan K. Yioulos. Sentencing set for 10/2/2024 is VACATED and RESET for 11/19/2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 8/22/2024. Text Only Entry (dddlc9, ) (Entered: 08/22/2024) |
| 08/26/2024 | 540 | USPS Certified Mail Receipt Return re 530 Passport Receipt by Kimberley Ann Tew (cmadr, ) (Entered: 08/27/2024) |
| 08/28/2024 | 541 | TRANSCRIPT of Sentencing hearing as to Kimberley Ann Tew held on August 8, 2024 before Judge Domenico. Pages: 1–103.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 08/28/2024) |
| 08/28/2024 | 542 | MOTION for Leave to Restrict by Michael Aaron Tew. (Schall, Jason) (Entered: 08/28/2024) |
| 08/28/2024 | 543 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Schall, Jason) (Entered: 08/28/2024) |
| 08/28/2024 | 544 | ORDER granting 542 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Docs. 531 , 532 , 533 , and 543 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 8/28/2024. Text Only Entry (dddlc9, ) (Entered: |

| | | |
|---|---|---|
| | | 08/28/2024) |
| 08/29/2024 | 545 | ORDER to Surrender as to Kimberley Ann Tew; Defendant to surrender to Satellite Prison Camp, FCI Phoenix, on 10/9/2024, at 12:00 PM, and will travel at her own expense. SO ORDERED by Judge Daniel D. Domenico on 8/29/2024. (rkeec) (Entered: 08/30/2024) |
| 09/04/2024 | 547 | TRANSCRIPT ORDER FORM by Kimberley Ann Tew Transcript ordered for proceedings held on 2/5/2024 through 2/15/2024, and 8/8/2024 re 535 Notice of Appeal. (cmadr, ) (Entered: 09/05/2024) |
| 09/05/2024 | 546 | MOTION for Order *Extending the Time for her to Surrender to the Warden at Satellite Prison Camp* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion Requesting an Order Extending the Time for her to Surrender to the Warden at Satellite Prison Camp)(Kaplan, David) (Entered: 09/05/2024) |
| 09/05/2024 | 548 | ORDER of USCA as to Kimberley Ann Tew re 535 Notice of Appeal. (USCA Case No. 24–1333). Upon consideration, the court grants the motion and appoints CJA Panel member Justin A. Lollman to represent appellant Kimberley Ann Tew going forward. See 18 U.S.C. § 3006A. On or before September 16, 2024, Mr. Lollman shall file an entry of appearance in this appeal. The Clerk of the U.S. District Court for the District of Colorado shall wait until at least September 26, 2024 before transmitting the record on appeal to this court. (cmadr, ) (Entered: 09/05/2024) |
| 09/06/2024 | 549 | ORDER denying 546 Motion Requesting Order Extending the Time for her to Surrender to the Warden at Satellite Prison Camp. Mr. and Mrs. Tew have had sufficient time to finalize childcare arrangements. The motion is DENIED. SO ORDERED by Judge Daniel D. Domenico on 9/6/2024. Text Only Entry (dddlc9, ) (Entered: 09/06/2024) |
| 09/16/2024 | 550 | MOTION for Order *for Release Pending Appeal* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion for Release Pending Appeal)(Hubbard, Jamie) (Entered: 09/16/2024) |
| 09/17/2024 | 551 | MINUTE ORDER as to Kimberley Ann Tew re: 550 Motion for Order *for Release Pending Appeal*. The Government must respond by 9/27/2024. SO ORDERED by Judge Daniel D. Domenico on 9/17/2024. Text Only Entry (dddlc1, ) (Entered: 09/17/2024) |
| 09/20/2024 | 552 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 550 MOTION for Order *for Release Pending Appeal* (Fields, Bryan) (Entered: 09/20/2024) |
| 09/25/2024 | 553 | SUPPLEMENT *Designation of Record* by Kimberley Ann Tew (Attachments: # 1 Exhibit 1 Designation of Record – District Court Docket Sheet)(Lollman, Justin) (Entered: 09/25/2024) |
| 09/25/2024 | 554 | TRANSCRIPT ORDER FORM re 535 Notice of Appeal by Kimberley Ann Tew. (Attachments: # 1 CJA Attachment CJA 24 Form)(Lollman, Justin) (Entered: 09/25/2024) |
| 09/26/2024 | 555 | ORDER Denying 550 MOTION FOR RELEASE PENDING APPEAL as to Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 26 September 2024. (cmadr, ) (Entered: 09/26/2024) |
| 10/08/2024 | 556 | |

| | | REPORTER TRANSCRIPT ORDER FORM as to Plaintiff USA, Movants Atlantic Union Bank, Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc., Defendants Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos, filed by Tamara Hoffschildt. Transcripts ordered 2–5–24 through 2–8–24; 2–9–24 through 2–16–24, JT and 8–8–24 Sentencing (thoff, ) (Entered: 10/08/2024) |
|---|---|---|
| 10/15/2024 | 557 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 10/15/2024) |
| 10/15/2024 | 558 | ORDER granting 557 Motion to Travel as to Michael Aaron Tew. Mr. Tew may travel to Pheonix, Arizona during the following windows:<br><br>1. October 25 through October 28, 2024;<br>2. November 1 through November 4, 2024; amd<br>3. November 8 through November 11, 2024.<br><br>Mr. Tew must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services as directed in advance of departure, (2) contact his probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 10/15/2024. Text Only Entry (dddlc9, ) (Entered: 10/15/2024) |
| 10/20/2024 | 559 | VOIR DIRE TRANSCRIPT of proceedings held on February 5, 2025 before Judge Domenico. Pages: 1–119. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 560 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 5, 2024 before Judge Domenico. Pages: 1–95.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 561 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 6, 2024 before Judge Domenico. Pages: 96–350.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the |

| | | |
|---|---|---|
| | | Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 562 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 8, 2024 before Judge Domenico. Pages: 351–554.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 563 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 8, 2024 before Judge Domenico. Pages: 555–811.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 564 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 9, 2024 before Judge Domenico. Pages: 812–1018.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 565 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 12, 2024 before Judge Domenico. Pages: 1019–1249.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to** |

| | | |
|---|---|---|
| | | **Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 566 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 13, 2024 before Judge Domenico. Pages: 1250–1509.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 567 | TRANSCRIPT of Jury Trial as to Kimberley Ann Tew held on February 14, 2024 before Judge Domenico. Pages: 1510–1662.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/20/2024 | 568 | TRANSCRIPT of Jury Trial, verdict as to Kimberley Ann Tew held on February 15, 2024 before Judge Domenico. Pages: 1663–1681.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on |

| | | PACER. (thoff, ) (Entered: 10/20/2024) |
|---|---|---|
| 10/20/2024 | 569 | Amended TRANSCRIPT of Jury Trial, Day 3 as to Kimberley Ann Tew held on February 7, 2024 before Judge Domenico. Pages: 351–554.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, incorrect date was entered. ) (Entered: 10/20/2024) |
| 10/20/2024 | 570 | TRANSCRIPT of James hearing as to Kimberley Ann Tew held on December 19, 2023 before Judge Domenico. Pages: 1–140.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 10/20/2024) |
| 10/21/2024 | 571 | OBJECTION/RESPONSE to Presentence Report 526 by Michael Aaron Tew (Schall, Jason) (Entered: 10/21/2024) |
| 10/24/2024 | 572 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture for a Personal Money Judgment Against Defendant Michael Aaron Tew* by USA as to Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, Laura) (Entered: 10/24/2024) |
| 10/24/2024 | 573 | OBJECTION/RESPONSE to Presentence Report 571 by USA as to Michael Aaron Tew (Fields, Bryan) (Entered: 10/24/2024) |
| 10/24/2024 | 574 | ORDER as to Michael Aaron Tew re 572 Motion for Preliminary Order of Forfeiture. If Mr. Tew opposes this motion, he is ordered to file a response on or before November 1, 2024. SO ORDERED by Judge Daniel D. Domenico on 10/24/2024. Text Only Entry (dddlc9, ) (Entered: 10/24/2024) |
| 10/29/2024 | 575 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew. (Attachments: # 1 Exhibit Defendant's Exhibits)(Schall, Jason) (Entered: 10/29/2024) |
| 11/05/2024 | 576 | RESTRICTED PRESENTENCE REPORT as to Michael Aaron Tew (Attachments: # 1 Exhibit A – Revised Recommendation).(agalv) (Entered: 11/05/2024) |
| 11/05/2024 | 577 | |

| | | |
|---|---|---|
| | | RESTRICTED ADDENDUM to Presentence Report 576 as to Michael Aaron Tew (Attachments: # 1 Exhibit A – Letters in Support). (agalv) (Entered: 11/05/2024) |
| 11/05/2024 | 578 | MOTION for Non–Guideline Sentence by Jonathan K. Yioulos. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(Kornfeld, Richard) (Entered: 11/05/2024) |
| 11/05/2024 | 579 | MEMORANDUM in Opposition by USA as to Michael Aaron Tew re 575 Restricted Document – Level 2 *(Response in Opposition to Motion for Variant Sentence)* (Fields, Bryan) (Entered: 11/05/2024) |
| 11/05/2024 | 580 | MOTION For Downward Departure Pursuant to 5K1.1 by USA as to Jonathan K. Yioulos. (Fields, Bryan) (Entered: 11/05/2024) |
| 11/06/2024 | 581 | ORDER RESETTING HEARING as to Jonathan K. Yioulos. Due to a conflict on the Court's calendar, and after consultation with counsel, the Sentencing set for 11/19/2024 is VACATED and RESET for 12/3/2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 11/6/2024. Text Only Entry (dddlc1, ) (Entered: 11/06/2024) |
| 11/10/2024 | 582 | ORDER re Sentencing as to Michael Aaron Tew. Live witnesses will not be permitted to testify at Tuesday's sentencing, though the defendant may speak on his own behalf or may submit other support in writing if he wishes. Any victims will also be given an opportunity to speak. SO ORDERED by Judge Daniel D. Domenico on 11/10/2024. Text Only Entry (dddlc9, ) (Entered: 11/10/2024) |
| 11/11/2024 | 583 | PRELIMINARY ORDER OF FORFEITURE FOR A PERSONAL MONEY JUDGMENT as to Michael Aaron Tew (1) by Judge Daniel D. Domenico on 11 November 2024. (cmadr, ) (Entered: 11/12/2024) |
| 11/12/2024 | 584 | MOTION for Victim Rights *(Permission for Telephonic Participation)* by USA as to Michael Aaron Tew. (Fields, Bryan) (Entered: 11/12/2024) |
| 11/12/2024 | 585 | ORDER granting 584 Motion for Victim Rights as to Michael Aaron Tew. While it is unclear whether Fed. R. Crim. P. 32 requires the Court to permit victims not physically present in the courtroom an opportunity to speak at sentencing, the Court will allow any victims in this case an opportunity to speak telephonically at today's sentencing. SO ORDERED by Judge Daniel D. Domenico on 11/12/2024. Text Only Entry (dddlc9, ) (Entered: 11/12/2024) |
| 11/12/2024 | 586 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Sentencing held on 11/12/2024 as to defendant Michael Aaron Tew (1). Defendant sentenced as reflected on the record. 575 Defendants Motion is GRANTED IN PART. Bond continued. Court Reporter: Tammy Hoffschildt. (Attachments: # 1 Defendant Exhibit 1, # 2 Defendant Exhibit 2) (rkeec) (Entered: 11/12/2024) |
| 11/14/2024 | 587 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 11/14/2024) |
| 11/15/2024 | 588 | ORDER granting 587 Motion to Travel as to Michael Aaron Tew. Mr. Tew may travel to Pheonix, Arizona to visit his wife at FCI Pheonix between now and his self–report date so long as he provides completed travel itineraries (including both flight and lodging information) to probation at least two weeks prior to travel and receives approval from U.S.P.O. Seth Junker. SO ORDERED by Judge Daniel D. Domenico on 11/15/2024. Text Only Entry (dddlc9, ) (Entered: 11/15/2024) |
| 11/15/2024 | 589 | |

| | | |
|---|---|---|
| | | JUDGMENT as to defendant Michael Aaron Tew (1), Count(s) 1s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,361,622.10.; Count(s) 2s–40s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,361,622.10.; Count(s) 41s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,361,622.10.; Count(s) 42s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, $100,000.00 fine, and restitution in the total amount of $6,361,622.10.; Count(s) 44s–56s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, $100,000.00 fine, and restitution in the total amount of $6,361,622.10.; Count(s) 57s–60s, Defendant shall be imprisoned for a total term of forty–two (42) months. This term consists of forty–two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, $100,000.00 fine, and restitution in the total amount of $6,361,622.10. Entered by Judge Daniel D. Domenico on 11/15/2024. (rkeec) Modified on 11/18/2024 to correct fine amount (rkeec). (Entered: 11/15/2024) |
| 11/15/2024 | 590 | STATEMENT OF REASONS as to Michael Aaron Tew (1). (rkeec) (Entered: 11/15/2024) |
| 11/18/2024 | 591 | Passport Receipt as to Michael Aaron Tew (1). Forwarding passport to Dept. of State; Passport Number 484644160 issued by USA. Sent via certified mail receipt number 7019 2970 0001 1984 2455. (rkeec) (Entered: 11/18/2024) |
| 11/21/2024 | 592 | Unopposed MOTION to Travel by Michael Aaron Tew. (Schall, Jason) (Entered: 11/21/2024) |
| 11/22/2024 | 593 | ORDER granting 592 Motion to Travel as to Michael Aaron Tew. Mr. Tew may travel to Marquette, Michigan between January 1, 2025 and his self–report date. He must (1) provide documentation regarding his travel plans to United States Pretrial and Probation Services in advance of departure, and (2) promptly contact his probation officer upon return from the trip. SO ORDERED by Judge Daniel D. Domenico on 11/22/2024. Text Only Entry (dddlc9, ) (Entered: 11/22/2024) |

| 11/22/2024 | 594 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture for a Personal Money Judgment Against Defendant Jonathan K. Yioulos* by USA as to Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, Laura) (Entered: 11/22/2024) |
|---|---|---|
| 11/22/2024 | 595 | MOTION to Dismiss Counts *Pursuant to Plea Agreement* by USA as to Jonathan K. Yioulos. (Fields, Bryan) (Entered: 11/22/2024) |
| 11/22/2024 | 596 | MOTION for Decrease for Acceptance of Responsibility by USA as to Jonathan K. Yioulos. (Fields, Bryan) (Entered: 11/22/2024) |
| 11/25/2024 | 597 | NOTICE OF APPEAL as to 589 Judgment,,,,,,,,,,, by Michael Aaron Tew. (Schall, Jason) (Entered: 11/25/2024) |
| 11/25/2024 | 598 | PRELIMINARY ORDER OF FORFEITURE FOR A PERSONAL MONEY JUDGMENT as to Jonathan K. Yioulos (3) by Judge Daniel D. Domenico on 25 November 2024. (cmadr, ) (Entered: 11/25/2024) |
| 11/25/2024 | 599 | DESIGNATION OF RECORD ON APPEAL re 597 Notice of Appeal by Michael Aaron Tew. (Attachments: # 1 Exhibit A)(Frost, Kristen) (Entered: 11/25/2024) |
| 11/25/2024 | 600 | MOTION to Proceed in Forma Pauperis by Michael Aaron Tew. (Frost, Kristen) (Entered: 11/25/2024) |
| 11/26/2024 | 601 | LETTER Transmitting Notice of Appeal to all counsel advising of the transmittal of the 597 Notice of Appeal as to Michael Aaron Tew to the U.S. Court of Appeals. ( CJA, 1915 motion filed,) (Attachments: # 1 Preliminary Record)(cmadr, ) (Entered: 11/26/2024) |
| 11/26/2024 | 602 | RESTRICTED PRESENTENCE REPORT as to Jonathan K. Yioulos (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C)(mcfont) (Entered: 11/26/2024) |
| 11/26/2024 | 603 | RESTRICTED SECOND ADDENDUM to Presentence Report 602 as to Jonathan K. Yioulos (mcfont) (Entered: 11/26/2024) |
| 11/26/2024 | 604 | USCA Case Number as to Michael Aaron Tew 24–1465 for 597 Notice of Appeal filed by Michael Aaron Tew. (cmadr, ) (Entered: 11/27/2024) |
| 12/02/2024 | 605 | MINUTE ORDER as to Jonathan K. Yioulos re: Sentencing set for 12/3/2024. Members of the public may attend the hearing by teleconference at (571) 353–2301, using guest code 478499919. All persons participating in court proceedings by teleconference are prohibited, under penalty of contempt, from recording or broadcasting the proceeding in any manner. SO ORDERED by Judge Daniel D. Domenico on 12/2/2024. Text Only Entry (dddlc1, ) (Entered: 12/02/2024) |
| 12/03/2024 | 606 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Sentencing held on 12/3/2024 as to defendant Jonathan K. Yioulos (3). Granting in part 578 Motion for Non–Guideline Sentence as to Jonathan K. Yioulos (3). Granting 580 Motion for Downward Departure Pursuant to 5K1.1 as to Jonathan K. Yioulos (3). Granting 595 Motion to Dismiss Counts as to Jonathan K. Yioulos (3). Granting 596 Motion for Decrease for Acceptance of Responsibility as to Jonathan K. Yioulos (3). Defendant sentenced as reflected on the record. Bond is continued. Court Reporter: Kevin Carlin. (rkeec) (Entered: 12/03/2024) |
| 12/06/2024 | 607 | JUDGMENT as to defendant Jonathan K. Yioulos (3), Count(s) 1, Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three |

| | | |
|---|---|---|
| | | (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 2–38, 40, Dismissed on United States of Americas Motion to Dismiss Counts.; Count(s) 39, Defendant shall be imprisoned for a total term of two (2) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $200.00 special assessment, no fine, and restitution in the total amount of $5,023,878.50. Entered by Judge Daniel D. Domenico on 12/6/2024. (rkeec) (Entered: 12/06/2024) |
| 12/06/2024 | 608 | STATEMENT OF REASONS as to Jonathan K. Yioulos (3). (rkeec) (Entered: 12/06/2024) |
| 12/09/2024 | 609 | USPS Certified Mail Receipt Return re 591 Passport Receipt as to Michael Aaron Tew (cmadr, ) (Entered: 12/10/2024) |
| 12/10/2024 | 610 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/10/2024 | 611 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/10/2024 | 612 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/10/2024 | 613 | TRANSCRIPT ORDER FORM re 597 Notice of Appeal by Michael Aaron Tew. (Frost, Kristen) (Entered: 12/10/2024) |
| 12/13/2024 | 614 | ORDER to Surrender as to Michael Aaron Tew (1). Defendant to surrender to FCI Florence, located at 5880 CO–67, Florence, CO 81226 on 2/1/2025, by 2:00 p.m. and will travel at their own expense. SO ORDERED by Judge Daniel D. Domenico on 12/13/2024. (rkeec) (Entered: 12/13/2024) |
| 12/13/2024 | 615 | ORDER of USCA as to Michael Aaron Tew re 597 Notice of Appeal. (USCA Case No. 24–1465). Kari Schmidt is appointed as counsel for Mr. Tew. Within 10 days of the date of this order, Ms. Schmidt shall file an entry of appearance in this appeal. (cmadr, ) (Entered: 12/16/2024) |
| 12/16/2024 | 616 | ORDER as to Michael Aaron Tew (1) by Judge Daniel D. Domenico on 16 December 2024. Accordingly, it is ORDERED that Defendant Michael Aaron Tew's Motion to Proceed In Forma Pauperis, Doc. 600 , is GRANTED. (cmadr, ) (Entered: 12/16/2024) |
| 12/23/2024 | 617 | REPORTER TRANSCRIPT ORDER FORM as to Defendants Michael Aaron Tew, Michael Aaron Tew, filed by Tamara Hoffschildt. Transcripts ordered 01–30–24; 4–22–24; 11–12–24 (thoff, ) (Entered: 12/23/2024) |
| 12/24/2024 | 618 | REPORTER TRANSCRIPT ORDER FORM as to Defendants Michael Aaron Tew filed by Julie Thomas. (nrich) (Entered: 12/24/2024) |
| 12/27/2024 | 619 | REPORTER TRANSCRIPT ORDER FORM filed by Patterson Transcription Company re 597 Notice of Appeal. Transcript due by 1/28/2025. (nrich) (Entered: 12/27/2024) |
| 01/03/2025 | 620 | TRANSCRIPT of Sentencing Hearing as to Jonathan K. Yioulos held on 12/03/2024 before Judge Domenico. Pages: 1–25. |

|  |  | **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (kcarl, ) (Entered: 01/03/2025) |
|---|---|---|
| 01/07/2025 | 621 | MINUTE ORDER re 589 Judgement as to Michael Aaron Tew. Upon review of the Declaration of Victim Losses and supporting documentation submitted by victim National Air Cargo, and consistent with the judgment imposed in the case of codefendant Jonathan K. Yioulos, the Court finds the restitution owed in relation to victim National Air Cargo is $5,023,878.50. Furthermore, the restitution payees are the insurance companies that reimbursed National Air Cargo, pursuant to 18 U.S.C. § 3664(j). Assistant United States Attorney Bryan David Fields and the defendants attorney, Jason Dale Schall, have advised the Probation Office that they have no objection to the judgment being amended to update the restitution order as detailed above. Therefore, the Court ORDERS the U.S. Probation Office to prepare an Amended Judgment reflecting amendments to the restitution order, as detailed above. SO ORDERED by Judge Daniel D. Domenico on 1/7/2025. Text Only Entry (dddlc9, ) (Entered: 01/07/2025) |
| 01/07/2025 | 622 | MINUTE ORDER re 528 Judgment as to Kimberley Ann Tew. Upon review of the Declaration of Victim Losses and supporting documentation submitted by victim National Air Cargo, and consistent with the judgment imposed in the case of codefendant Jonathan K. Yioulos, the Court finds the restitution owed in relation to victim National Air Cargo is $5,023,878.50. Furthermore, the restitution payees are the insurance companies that reimbursed National Air Cargo, pursuant to 18 U.S.C. § 3664(j). Assistant United States Attorney Bryan David Fields and the defendants attorney, David Scott Kaplan, have advised the Probation Office that they have no objection to the judgment being amended to update the restitution order as detailed above. Additionally, the judgment shall be amended to reflect forfeiture includes a money judgment in the amount of proceeds obtained by the scheme and by the defendants, $5,023,878.50, consistent with the Courts finding during the forfeiture hearing on August 8, 2024. Therefore, the Court ORDERS the U.S. Probation Office to prepare an Amended Judgment reflecting amendments to the restitution and forfeiture orders, as detailed above. SO ORDERED by Judge Daniel D. Domenico on 1/7/2025. Text Only Entry (dddlc9, ) (Entered: 01/07/2025) |
| 01/07/2025 | 623 | ORDER as to Michael Aaron Tew.<br><br>On 1/7/2025, my chambers received an email from Defendant Michael Tew requesting that I consider an attached motion to extend his self–surrender date. Any documents that require the Court's attention must be filed on the record as motions or other appropriate filings. The parties in this case are ordered not to email my chambers, and any such communications will be ignored in the future.<br><br>In addition, Mr. Tew is currently represented by counsel, and all motions and papers on his behalf must be filed electronically by his attorney. His attorney may, if Mr. |

| | | Tew wishes, file a motion seeking appropriate relief after conferring with Mr. Tew.<br><br>SO ORDERED by Judge Daniel D. Domenico on 1/7/2025. Text Only Entry (dddlc1, ) (Entered: 01/07/2025) |
|---|---|---|
| 01/08/2025 | 624 | AMENDED JUDGMENT as to Michael Aaron Tew (1), Count(s) 1s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10.; Count(s) 2s−40s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10.; Count(s) 41s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10.; Count(s) 42s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently. $5,600.00 special assessment, no fine, and restitution in the total amount of $$6,331,622.10.; Count(s) 44s−56s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10.; Count(s) 57s−60s, Defendant shall be imprisoned for a total term of forty−two (42) months. This term consists of forty−two (42) months on each of Counts 1 through 42 and 44 through 56; and twelve (12) months on each of counts 57 through 60; all counts imposed concurrently. Three (3) years supervised release on each count, to run concurrently., $5,600.00 special assessment, no fine, and restitution in the total amount of $6,331,622.10. Entered by Judge Daniel D. Domenico on 1/8/2025. (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 625 | AMENDED STATEMENT OF REASONS as to Michael Aaron Tew (1). (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 626 | REASON FOR AMENDMENT as to Michael Aaron Tew (1). (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 627 | AMENDED JUDGMENT as to Kimberley Ann Tew (2), Count(s) 1, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 16, Dismissed by Court during jury trial. Count(s) 21−22, Defendant shall be imprisoned for a total term of forty−eight (48) months on |

| | | |
|---|---|---|
| | | each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 25−26, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 31−32, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 41, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 43−44, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 47, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50.; Count(s) 48, Defendant was found not guilty by jury at trial.; Count(s) 56, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,023,878.50. Entered by Judge Daniel D. Domenico on 1/8/2025. (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 628 | AMENDED STATEMENT OF REASONS as to Kimberley Ann Tew (2). (rkeec) (Entered: 01/08/2025) |
| 01/08/2025 | 629 | REASON FOR AMENDMENT as to Kimberley Ann Tew (2). (rkeec) (Entered: 01/08/2025) |
| 01/13/2025 | 630 | TRANSCRIPT of Motion Hearing as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos held on March 18, 2021 before Judge Domenico. Pages: 1−27.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (nrich) (Entered: 01/13/2025) |
| 01/13/2025 | 631 | NOTICE OF ATTORNEY APPEARANCE: Zachary Lee Newland appearing for Michael Aaron TewAttorney Zachary Lee Newland added to party Michael Aaron Tew(pty:dft) (Newland, Zachary) (Entered: 01/13/2025) |
| 01/13/2025 | 632 | NOTICE OF ATTORNEY APPEARANCE: David C. Boyer, Jr appearing for |

| | | Michael Aaron TewAttorney David C. Boyer, Jr added to party Michael Aaron Tew(pty:dft) (Boyer, David) (Entered: 01/13/2025) |
|---|---|---|
| 01/15/2025 | 633 | ORDER to Surrender as to Jonathan K. Yioulos (3). Defendant to surrender to Lewisburg Satellite Camp on January 21, 2025, by 12:00 pm. and will travel at their own expense. SO ORDERED by Judge Daniel D. Domenico on 1/15/2025. (rkeec) (Entered: 01/15/2025) |
| 01/16/2025 | 634 | TRANSCRIPT of Trial Preparation Conference as to Michael Aaron Tew held on January 30, 2024 before Judge Domenico. Pages: 1–100. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/16/2025 | 635 | TRANSCRIPT of Evidentiary hearing as to Michael Aaron Tew held on April 22, 2024 before Judge Domenico. Pages: 1–100. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/16/2025 | 636 | TRANSCRIPT of Sentencing hearing as to Michael Aaron Tew held on November 12, 2024 before Judge Domenico. Pages: 1–31. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |

| 01/16/2025 | 637 | TRANSCRIPT of Motion to Detain hearing as to Kimberley Ann Tew held on April 22, 2024 before Judge Domenico. Pages: 1–100.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
|---|---|---|
| 01/16/2025 | 638 | TRANSCRIPT of Sentencing hearing for the codefendant as to Kimberley Ann Tew held on 1–31 before Judge Domenico. Pages: 1–31.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (thoff, ) (Entered: 01/16/2025) |
| 01/17/2025 | 639 | RESTRICTED DOCUMENT – Level 2: Defendant's Motion to Extend Self–Surrender Date as to Michael Aaron Tew. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Proposed Order (PDF Only))(Boyer, David) Modified to change event type to a Motion on 1/21/2025 (ggill, ). (Entered: 01/17/2025) |
| 01/17/2025 | 640 | MOTION for Leave to Restrict by Michael Aaron Tew. (Attachments: # 1 Proposed Order (PDF Only))(Boyer, David) (Entered: 01/17/2025) |
| 01/17/2025 | 641 | RESTRICTED DOCUMENT – Level 2: Brief in Support of Motion to Restrict Document No. 639 as to Michael Aaron Tew. (Boyer, David) Modified to update text on 1/21/2025 (ggill, ). (Entered: 01/17/2025) |
| 01/17/2025 | 642 | ORDER granting 640 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Dkt. 639 and 641 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 1/17/2025. Text Only Entry (dddlc9, ) (Entered: 01/17/2025) |
| 01/17/2025 | 643 | ORDER granting in part Mr. Tew's 639 Motion to Extend Self–Surrender Date. While the Court understands and regrets the extremely difficult situation Mr. Tew's family members are in, that is one of the many unfortunate consequences of Mr. and Mrs. Tew's criminal behavior. Recognizing the complications presented in the motion, Mr. Tew's self–surrender date is extended to March 1, 2025. Otherwise, the motion is denied. SO ORDERED by Judge Daniel D. Domenico on 1/17/2025. Text Only Entry (dddlc9, ) (Entered: 01/17/2025) |

| 01/21/2025 | 644 | NOTICE of Replacement due to Non–Compliant Files re 167 MOTION to Withdraw as Attorney by Michael Hassard, 151 Notice of Attorney Appearance – Defendant, 157 Notice of Attorney Appearance – Defendant, 290 Notice of Attorney Appearance – Defendant, 163 Restricted Document – Level 3, 165 Third MOTION to Continue , [204–6] Attachment to Response in Opposition,, 166 MOTION to Withdraw as Attorney by Xuan Zhou, 162 MOTION to Withdraw as Attorney by Tor Ekeland : The aforelisted documents have been converted to PDF/A standard and replaced on the docket due to a non–compliant PDF file type which prevents creation of a Record on Appeal. (lrobe) (Entered: 01/21/2025) |

<div align="center">

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

</div>

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

<div align="center">

**Kimberley Tew's Motion in Limine re Admissibility of Proffer Statements**

</div>

---

Kimberley Tew, through attorneys David S. Kaplan and Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC, move in limine for a pretrial ruling on the Government's ability to substantively admit as evidence at trial the recording of her proffer session with the Government. The Government opposes the relief sought herein.

<div align="center">

**Factual Background**

</div>

On July 9, 2020, Defendant Michael Tew was arrested at the apartment he shared with his wife Kimberley Tew. Kimberley Tew was home at the time of the arrest, as were the couple's two young children. Mrs. Tew had contact with case agents during their arrest of her husband and thereafter. Mrs. Tew was encouraged to retain a lawyer to engage with the prosecutors and agents on her behalf.

Mrs. Tew retained Jamie Hubbard to represent her. Ms. Hubbard began discussions with the prosecution team about the case and the evidence the Government

believed showed Mrs. Tew was involved in criminal activity with her husband. These discussions ultimately led to an agreement whereby Mrs. Tew would meet with the government for a proffer session.

On October 20, 2020, Mrs. Tew signed a proffer letter. (Ex. A.) The proffer letter is addressed to Ms. Hubbard as counsel for Mrs. Tew, and was also signed by Ms. Hubbard in her capacity as Mrs. Tew's counsel. Paragraph 4 of the proffer letter states:

> The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer. By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

(*Id*. at 2.)

On October 23, 2020, Mrs. Tew participated in a proffer session with federal agents and the then-prosecutors Hetal Doshi and Matthew Kirsch. Ms. Hubbard served as Mrs. Tew's counsel during this proffer session. The proffer session was audio recorded by the Government.

The Government has marked the audio recording of Mrs. Tew's proffer session as a trial exhibit. Mr. Tew similarly proffered and audio recordings of his meeting were also marked as trial exhibits. When defense counsel inquired as to how the recordings of Mr. and Mrs. Tew's proffer sessions would be used at trial, the Government

expressed its view that the Government can introduce these recordings in its case-in-chief if the defendants take "any position contrary to what was stated in the proffers at any point during the trial – including argument in opening or using cross to draw inferences."

Given the potential significance of the Government's position on this issue, counsel felt it necessary to address the issue in a motion in limine, despite the deadline for such motions having passed.

### The Government's Interpretation of the Proffer Letters Leads to Absurd Results

Mrs. Tew hereby adopts by reference the arguments made in Defendant Michael Tew's *Motion in Limine to Prohibit the Impermissible and Unconstitutional Use of Proffer Agreements* (ECF No. 370). Mrs. Tew agrees that the Government's position on what constitutes a breach of her proffer agreement interferes with important constitutional rights, including but not limited to her right to confront and cross-examine the witnesses testifying against her, her right to effective assistance of counsel, and her right to present a defense.[1]

### A Pretrial Hearing is Required to Address Waiver

As explained in the Motion in Limine filed by Mr. Tew, the position advocated by the Government regarding the proffer letters essentially means that Mrs. Tew

---

[1] Admission of Mr. Tew's unredacted proffer statements in a joint trial with Mrs. Tew—or vice versa—implicates *Bruton v. United States*, 391 U.S. 123 (1968). This issue is not ripe unless and until the Court rules the proffer agreements have been breached but is referenced here to avoid any possibility of waiver.

3

waived her right to confront witnesses, right to effective assistance of counsel, and her right to present a defense when she signed a proffer letter in October 2020.

The right to confront and cross-examine witnesses, to effective counsel, and to present a defense are fundamental to ensuring a fair trial. Thus, any waiver of these rights must be knowing and intelligent. In *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973), the Supreme Court held: "Almost without exception, the requirement of a knowing and voluntary waiver has been applied only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Id.* at 238. The *Schneckloth* court listed many of the rights considered "fundamental" to ensuring a fair trial, including, the right to counsel, to jury trial, and to confrontation. *Id.*

Courts indulge every reasonable presumption against waiver of important constitutional rights that are fundamental to ensuring a fair trial. *Von Moltke v. Gillies*, 332 U.S. 708, 723–24 (1948) ("To discharge this duty [of inquiry] properly in light of the strong presumption against waiver of the constitutional right to counsel, a judge must investigate as long and as thoroughly as the circumstances of the case before him demand."); *United States v. Simpson*, 845 F.3d 1039, 1046 (10th Cir. 1977); *United States v. Padilla*, 819 F.2d 952, 956 (10th Cir. 1987) ("The task of ensuring that defendant possesses the requisite understanding initially falls on the trial judge, who must bear in mind the strong presumption against waiver.").

Whether Mrs. Tew waived her constitutional rights in this case must be determined based on the particular facts and circumstances applicable to her. *See, e.g.,*

*Harvey v. Shillinger*, 893 F. Supp. 1021, 1028 (D. Wyo. 1995), aff'd, 76 F.3d 1528 (10th Cir. 1996) (a determination of whether rights were waived "depends in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused.") For a waiver to be knowing and intelligent, it "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *United States v. Morris*, 287 F.3d 985, 989 (10th Cir. 2002) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)).

Given the important constitutional rights at issue and the need for an individualized determination, Mrs. Tew requests a hearing on whether her proffer agreement contemplates use of the statements in the manner suggested by the Government and, if so, whether she knowingly and intelligently waived her rights by signing the proffer agreement. *See, e.g., United States v. Hansen*, 929 F.3d 1238, 1251 (10th Cir. 2019) (a hearing is the best way to determine whether defendant's waiver of important trial rights is knowing and intelligent).

## Conclusion

For the reasons set forth above, Kimberley Tew joins in the Motion in Limine filed on behalf of Defendant Michael Tew. Mrs. Tew further asks the Court to set a hearing at which the parties could address and the Court could consider: (1) the circumstances under which the Government may be permitted to use the recorded proffer statements at trial; and (2) whether any waiver of her rights necessary to ensure a fair trial was knowing and intelligent.

Dated: January 24, 2024.

Respectfully submitted,


s/ David S. Kaplan
David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone: 720.689.8909
Email: kaplan@slhlegal.com
hubbard@slhlegal.com

*Attorney for Kimberley Ann Tew*


### Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).


### Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel believes the time between filing this motion and the resolution thereof is excludable from the speedy trial period. *See* 18 USC § 3161(h)(1)(D).


s/ David S. Kaplan
David S. Kaplan

## Certificate of Service

I certify that on January 24, 2024, I electronically filed the foregoing *Kimberley Tew's Motion in Limine re Admissibility of Proffer Statements* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov


Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

                                    *s/ Brenda Rodriguez*
                                    Brenda Rodriguez

7



**U.S. Department of Justice**

Jason R. Dunn
United States Attorney
District of Colorado

---

*Hetal J. Doshi*
*Assistant United States Attorney*

*1801 California Street, Suite 1600*    *Telephone:  303-454-0100*
*Denver, CO 80202*    *Fax:  303-454-0405*

October 16, 2020

***Via Email***
Jamie Hubbard, Esq.
Counsel to Kimberley Tew
Stimson, Stancil, LaBranche, Hubbard, LLC
1652 North Downing Street
Denver, CO, 80218
hubbard@sslhlaw.com
720.689.8909

Dear Ms. Hubbard,

I understand your client, Kimberley Tew, is interested in meeting with federal law enforcement agencies and the Criminal Division of the United States Attorney's Office for the District of Colorado for a proffer related to this office's criminal investigation of conduct related to or arising out Ms. Tew's financial transactions related to, directly or indirectly, with National Air Cargo, and subsequent transactions initiated by or for the benefit of, among others, Ms. Tew, either directly or indirectly.  This letter sets out the terms for that proffer, to be scheduled soon and set to occur in Denver, and any follow up proffer sessions between the Criminal Division of the United States Attorney's Office for the District of Colorado ("the government"), and you and your client.

1.      Your client agrees that she will truthfully and completely disclose all information with respect to her activities and the activities of others that are the subject of inquiry by the government during the proffer.  In this regard, your client must neither attempt to protect any person, entity, or asset through materially false information or omission, nor falsely implicate any person, entity, or asset.  The only limited exception to this is that Ms. Tew has elected at this time not to answer questions that may specifically implicate her husband, Michael Tew.  She has consulted with her counsel and understands that this decision could diminish the value, if any, of her cooperation.  At a future time your client may be subpoenaed to testify before a federal grand jury, at trial, or in other court proceedings.  You and your client understand that false statements

1

EXHIBIT A

willfully made during this proffer will negate the Government's agreement not to use this proffered information against your client.

2.      Except as set forth below, the government will not offer as evidence statements made by your client, or other information provided by your client during the proffer relating to the subject matter of the proffer, in (a) grand jury proceedings seeking an indictment against your client, (b) its case-in-chief at a trial against your client, or (c) at your client's sentencing.

3.      The government may use any statements made by your client or any information directly or indirectly derived from statements made by your client during the proffer for any other purpose, including (a) to obtain leads to other evidence that may be used against your client at any stage of a criminal prosecution, (b) in any prosecution of your client for perjury, false statements, or obstruction of justice, or (c) in a prosecution of your client for any crimes of violence, as defined in Title 18, United States Code, Section 16, or any conspiracy to commit a crime of violence.  Provision (a) eliminates the need for a hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by your client during the proffer.  *See Kastigar v. United States*, 408 U.S. 931 (1972).  It is the intent of this agreement to establish that such derivative use is proper.  By signing this letter, your client expressly waives any right to challenge the derivative use of such statements or information.

4.      The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer.  By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above.  *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

5.      Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not apply to any statements made by your client during the course of the proffer.

6.      In the event evidence other than your client's own statements is developed, regardless of whether it is developed before or after the proffer, this agreement does not impart "transactional" immunity to your client or preclude the government from bringing charges against her in the future.

7.      Your client understands that she is required to provide full and complete information about the subject matter of the proffer and any information about herself which might adversely impact on her credibility as a witness concerning such activity.

2

EXHIBIT A

8.      This agreement does not obligate the government to enter into any future plea bargain with your client or to file any motion regarding cooperation provided by your client.

9.      This agreement is not binding on the Civil Division of the United States Attorney's Office for the District of Colorado, any other federal government office, or any other state, tribal, or local office or agency not specifically named in this agreement.

No understandings, promises, or agreements have been entered into other than those set forth in this agreement, and nothing said during the proffer will constitute a promise or agreement unless all parties agree in writing.

Sincerely,

JASON R. DUNN
United States Attorney

*s/ Hetal J. Doshi*
By: Hetal J. Doshi
Assistant United States Attorney

I, Kimberley Tew, have read this agreement and carefully reviewed it with my attorney.   I understand it, and I voluntarily, knowingly and willfully agree to it without force, threat or coercion.  No other promises or inducements have been made to me other than those contained in this letter.  I am satisfied with the representation of my attorney in this matter.

_____          10 / 20 / 2 0 2 0
Kimberley Tew                                           Date

I acknowledge that I have read this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.

_____          10/20/2020
Jamie Hubbard                                          Date
Counsel for Kimberley Tew

3

**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

### Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days

---

Defendant Kimberley Tew, through undersigned counsel, moves to continue the current trial setting and to exclude 90 days from the Speedy Trial Clock under 18 U.S.C. § 3161. The ends of justice served by this requested continuance outweigh the best interests of the public and the defendant in a speedy trial. This motion is unopposed by co-defendant Michael Tew. The government opposes it being granted.

### Procedural Background

1. This case involves a 60-count indictment charging wire fraud, money laundering, and tax fraud. Three defendants were initially charged. One has pled and the remaining two defendants are set to begin trial on February 5, 2024.

2. Discovery in this case is voluminous. Third-party subpoenas were served on multiple banks, which returned hundreds of thousands of pages of records. Multiple

electronic devices were imaged and downloaded. A warrant was obtained for the Tews' cloud-based storage account, which alone produced nearly 1TB of electronic data.

3.      On December 5, 2023, the Government filed its *James* Log outlining the statements on which it sought a pretrial ruling as to the applicability of FRE 801(d)(2)(E). This log showed that a significant part of the Government's proof – particularly as to Mrs. Tew—would involve communications recovered from the Tews' iCloud account.  A *James Hearing* was conducted on December 18, 2023.

4.      In preparing for the *James* hearing, defense counsel first recognized there are significant authentication and foundation issues related to the iCloud account. For example, the *James* log demonstrates that the Government intends to allege that certain messages obtained from an account titled "Kley" are attributable to Michael Tew while other messages from the same account are being attributed to Kimberley Tew. *Compare* James Entry 56 with Entry 204. The source materials—Cellebrite reports—show that in the same string of correspondence, the speaker attributed the "kley" moniker appears to switch between Mr. Tew and Mrs. Tew. Additionally, notice of the conversations sought to be introduced gave rise to an inquiry regarding other conversations,  not included in the Jame Log, which may exist providing context to the government's submissions.

5.      Defense counsel is working diligently to untangle the electronic data in order to prepare to confront the evidence offered against Mrs. Tew at trial. It entails an examination of the iCloud account not previously anticipated to both understand the

source of communications and uncover impeachment evidence of the government's witnesses.  However, these efforts have been slower than anticipated.

6.      Given the apparent importance of this evidence in the Government's case against Mrs. Tew, defense counsel has sought expert assistance to efficiently and competently evaluate the amount of date to be reviewed.  If testimony from an expert is ultimately deemed necessary in the defense of Mrs. Tew, defense counsel understands that reports will need to be provided and that the Government will need adequate time to prepare for cross-examination of any defense expert.

7.      The current deadlines and trial setting do not afford adequate time for defense counsel to now be prepared for trial.

<div align="center">**Law and Argument**</div>

8.      The Speedy Trial Act is "designed to protect a defendant's constitutional right to a speedy indictment and trial, and to serve the public interest in ensuring prompt criminal proceedings." *United States v. Hill*, 197 F.3d 436, 440 (10th Cir. 1999). It requires that a criminal defendant's trial commence within 70 days after his indictment or initial appearance, whichever is later.  *See* 18 U.S.C. § 3161(c)(1); *United States v. Lugo*, 170 F.3d 996, 1001 (10th Cir. 1999). Certain periods of delay are excluded and do not count toward the 70–day limit. *See* 18 U.S.C. § 3161(h)(1)-(9). Specifically, "the Act excludes any period of delay resulting from a continuance granted by any judge . . . on the basis of its findings that the ends of justice served by taking such action outweigh

<div align="center">3</div>

the best interest of the public and the defendant in a speedy trial." *Hill*, 197 F.3d at 440-41 (quoting 18 U.S.C. § 3161(h)(7)(A)).

9.      A continuance under the Speedy Trial Act is appropriate where failure to grant a continuance would deny the defendant the ability to fully prepare for trial. 18 U.S.C. § 3161(h)(7)(B)(ii), (iv). One factor for the Court to consider in granting this delay is "[w]hether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible or result in a miscarriage of justice." 18 U.S.C. § 3161(h)(7)(B)(i).  An additional factor, set forth in 18 U.S.C. § 3161(h)(7)(B)(iv), is whether failure to grant such a continuance "would deny counsel for the defendant…the reasonable time necessary for effective preparation, taking into account the exercise of due diligence."

10.      In evaluating a request for an ends of justice continuance, "the record must clearly establish the district court considered the proper factors at the time such a continuance was granted." *United States v. Toombs*, 574 F.3d 1262, 1269 (10th Cir. 2009) (quoting *United States v. Gonzales*, 137 F.3d 1431, 1433 (10th Cir. 1998)). The record must contain an explanation for why the occurrence of the event identified by the moving party as necessitating the continuance results in the need for additional time. *See id*. At 1271-72.

11.      In *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987), the Tenth Circuit set forth four factors a court should consider when evaluating if a continuance should be granted: (1) the diligence of the party requesting the continuance, (2) the

4

likelihood that the continuance, if granted, would accomplish the purpose underlying the request for continuance, (3) the inconvenience to the opposing party, its witnesses and the court resulting from the continuance, and (4) the need asserted for the continuance and the harm that could be suffered as a result of the court's denial of the continuance.

12.     Here, an additional 90-day continuance, if granted, would accomplish the purpose underlying the request for a continuance as it would allow undersigned counsel the time to complete their analysis of the electronic data, consult with their expert, and—if expert testimony is necessary, make the appropriate disclosures.

13.     Without the exclusion of time from the speedy trial calculations, defense counsel will be unable to provide effective assistance of counsel and the defendant's right to be effectively represented in these proceedings will be seriously damaged.

14.     Undersigned counsel has informed Mrs. Tew of the present motion. She understands the impact of this request on the currently scheduled trial setting and related deadlines. Mrs. Tew has no objection to the requested exclusion.

<u>Conclusion</u>

WHEREFORE, Defendant Kimberley Tew respectfully requests that the Court enter an order excluding 90 days from the speedy trial calculation pursuant to 18 U.S.C. § 3161(h)(7) and resetting the trial and related deadlines.

Dated: January 24, 2024.

Respectfully submitted,

s/ David S. Kaplan
————————————————
David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone: 720.689.8909
Email: kaplan@slhlegal.com
hubbard@slhlegal.com

Attorneys for Kimberley Ann Tew

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel notes this motion will impact the speedy trial calculation as it seeks an exclusion. Also, the filing of this motion creates an excludable period under 18 USC 3161(h)(1)(D).

s/ David S. Kaplan
————————————————
David S. Kaplan

6

**Certificate of Service**

I certify that on January 24, 2024, I electronically filed the foregoing *Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ *Brenda Rodriguez*
Brenda Rodriguez

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1. **MICHAEL AARON TEW, and**
    2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendants.

---

## PARTIES' PROPOSED VERDICT FORM

---

On behalf of the parties, the United States submits the attached proposed verdict form.


Respectfully submitted this 24th day of January, 2024, on behalf of all parties.

Respectfully submitted this 24th day of January, 2024, on behalf of all the parties:

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

By:   */s/ Jason D. Schall*
Jason D. Schall
Bowlin & Schall LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
(720) 505-3861
jason@bowsch.com
Counsel for Defendant Michael Tew

By:   */s/ Kristen M. Frost*
Kristen M. Frost
Ridley, McGreevy Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
(303) 629-9700
frost@ridleylaw.com
Counsel for Defendant Michael Tew

By:   */s/ David S. Kaplan*
David S. Kaplan
Stimson LaBranche Hubbard, LLC
1652 Downing Street
Denver, CO 80218
(720) 689-8909
kaplan@slhlegal.com
Counsel for Defendant Kimberley Ann
Tew

By:   */s/ Jamie Hubbard*
Jamie Hubbard
Stimson LaBranche Hubbard, LLC
1652 Downing Street
Denver, CO 80218
(720) 689-8909
hubbard@ slhlegal.com
Counsel for Defendant Kimberley Ann
Tew

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this 24th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
sarah.weiss@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1. **MICHAEL AARON TEW, and**
   2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

     Defendants.

---

## PARTIES' PROPOSED VERDICT FORM

Please do not write anything on this form except to check a response and to sign and date the form.

### COUNT 1 – CONSPIRACY TO COMMIT WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 1 of the Indictment, charging conspiracy to commit wire fraud:

_____   Not Guilty

_____   Guilty

**COUNT 1 – CONSPIRACY TO COMMIT WIRE FRAUD
– KIMBERLEY TEW**

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 1 of the Indictment, charging conspiracy to commit wire fraud:

_____   Not Guilty

_____   Guilty

**COUNT 2 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 2 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

**COUNT 3 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 3 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

Page 2 of 26

**COUNT 4 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 4 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

**COUNT 5 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 5 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

**COUNT 6 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 6 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## **COUNT 7 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 7 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## **COUNT 8 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 8 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## **COUNT 9 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 9 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

### COUNT 10 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 10 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

### COUNT 11 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 11 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

### COUNT 12 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 12 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

**COUNT 13 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 13 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

**COUNT 14 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 14 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

**COUNT 15 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 15 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

### COUNT 16 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 16 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

### COUNT 17 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 17 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

### COUNT 18 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 18 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 19 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 19 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## COUNT 20 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 20 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## COUNT 21 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 21 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## **COUNT 21 – WIRE FRAUD – KIMBERLEY TEW**

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 21 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## **COUNT 22 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 22 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## **COUNT 22 – WIRE FRAUD – KIMBERLEY TEW**

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 22 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 23 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 23 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## COUNT 24 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 24 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## COUNT 25 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 25 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## COUNT 25 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY TEW, in Count 25 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 26 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 26 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 26 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY TEW, in Count 26 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 27 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 27 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 28 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 28 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 29 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 29 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 30 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 30 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 31 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 31 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

## COUNT 31 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 31 of the Indictment, charging wire fraud:

_____   Not Guilty

_____   Guilty

**COUNT 32 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 32 of the Indictment, charging wire fraud:

\_\_\_\_   Not Guilty

\_\_\_\_   Guilty

**COUNT 32 – WIRE FRAUD – KIMBERLEY TEW**

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY TEW, in Count 32 of the Indictment, charging wire fraud:

\_\_\_\_   Not Guilty

\_\_\_\_   Guilty

**COUNT 33 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 33 of the Indictment, charging wire fraud:

\_\_\_\_   Not Guilty

\_\_\_\_   Guilty

## COUNT 34 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 34 of the Indictment, charging wire fraud:

\_\_\_\_  Not Guilty

\_\_\_\_  Guilty

## COUNT 35 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 35 of the Indictment, charging wire fraud:

\_\_\_\_  Not Guilty

\_\_\_\_  Guilty

## COUNT 36 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 36 of the Indictment, charging wire fraud:

\_\_\_\_  Not Guilty

\_\_\_\_  Guilty

**COUNT 37 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 37 of the Indictment, charging wire fraud:

\_\_\_\_    Not Guilty

\_\_\_\_    Guilty

**COUNT 38 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 38 of the Indictment, charging wire fraud:

\_\_\_\_    Not Guilty

\_\_\_\_    Guilty

**COUNT 39 – WIRE FRAUD – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 39 of the Indictment, charging wire fraud:

\_\_\_\_    Not Guilty

\_\_\_\_    Guilty

Page 16 of 26

### COUNT 40 – WIRE FRAUD – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 40 of the Indictment, charging wire fraud:

_____  Not Guilty

_____  Guilty

### COUNT 41 – CONSPIRACY TO COMMIT MONEY LAUNDERING – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL TEW, in Count 41 of the Indictment, charging conspiracy to commit money laundering:

_____  Not Guilty

_____  Guilty

### COUNT 41 – CONSPIRACY TO COMMIT MONEY LAUNDERING – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY TEW, in Count 41 of the Indictment, charging conspiracy to commit money laundering:

_____  Not Guilty

_____  Guilty

## COUNT 42 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 42 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

## COUNT 43 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 43 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

## COUNT 43 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 43 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

## COUNT 44 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 44 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

## COUNT 44 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 44 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

## COUNT 45 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 45 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

### COUNT 46 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 46 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

### COUNT 47 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 47 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

### COUNT 47 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 47 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

**COUNT 48 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 48 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

**COUNT 48 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW**

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 48 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

**COUNT 49 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW**

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 49 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

### COUNT 50 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 50 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

### COUNT 51 –MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 51 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

### COUNT 52 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 52 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

### COUNT 53 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 53 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

### COUNT 54 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 54 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

### COUNT 55 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 55 of the Indictment, charging money laundering (spending):

_____   Not Guilty

_____   Guilty

## COUNT 56 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 56 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

## COUNT 56 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, upon our oaths, unanimously find the defendant, KIMBERLEY

TEW, in Count 56 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

## COUNT 57 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 57 of the Indictment, charging willful failure to file a tax return:

_____ Not Guilty

_____ Guilty

## COUNT 58 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 58 of the Indictment, charging willful failure to file a tax return:

\_\_\_\_\_   Not Guilty

\_\_\_\_\_   Guilty

## COUNT 59 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 59 of the Indictment, charging willful failure to file a tax return:

\_\_\_\_\_   Not Guilty

\_\_\_\_\_   Guilty

## COUNT 60 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, upon our oaths, unanimously find the defendant, MICHAEL

TEW, in Count 60 of the Indictment, charging willful failure to file a tax return:

\_\_\_\_\_   Not Guilty

\_\_\_\_\_   Guilty

_____

FOREPERSON


Dated this _____th day of February, 2024.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

---

### Defendant Kimberley Tew's Trial Brief

---

Kimberley Tew, through attorneys David S. Kaplan and Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC submit the following trial brief:

**A.    Government's Proposed Rule 1006 Exhibits**

The Government has provided the defense with 57 pages of exhibits that it seeks to admit pursuant to Federal Rule of Evidence 1006. The bulk of the information contained in these 57 pages is not true "summary" materials; it is the Government's theory of the case prepared in closing argument-style graphics. The Court should exclude these exhibits from trial.

Federal Rule of Evidence 1006 permits the use of summary exhibits "to prove the content of voluminous writings . . . that cannot be conveniently examined in court." Fed. R. Evid. 1006. Evidence is "voluminous" under Rule 1006 when comprehension would be "difficult" and "inconvenient" absent summarization. *United States v.*

*Hemphill*, 514 F.3d 1350, 1358 (D.C. Cir. 2008); *see Daniel v. Ben E. Keith Co.*, 97 F.3d 1329, 1335 (10th Cir. 1996) ("eighteen one-page" documents not voluminous); *Griddine v. GP1 KS-SB, Inc.*, 2019 WL 1002049, at *8 (D. Kan. Feb. 28, 2019) (223 pages not necessarily "so voluminous as to require a summary").

Summary exhibits are meant only to reflect the contents of the documents they summarize, not add inferences, interpretations, or argument. *State Office Sys., Inc. v. Olivetti Corp. of Am.*, 762 F.2d 843, 845-46 (10th Cir. 1985) (summaries that go beyond "simple compilation" of records impermissible). Accordingly, summary exhibits must be "accurate and non-prejudicial"; nothing should be "lost in the translation" and information should not be "embellished" or "annotated" with the proponent's inferences, "whether in the form of labels, captions, highlighting techniques, or otherwise." *United States v. Bray*, 139 F.3d 1104, 1110-11 (6th Cir. 1998).

The government's proposed "summary" exhibits are not proper Rule 1006 exhibits. While there are many documents in the case, most of the proposed "summary" exhibits do not purport to summarize voluminous information. Many simply characterize a small set of materials plucked from a non-voluminous handful of documents, edited and arranged to advance the government's narrative, and overlaid with misleading titles and headings.

In *United States v. Penn*, 20-cr-152-PAB, the Government sought to admit similar "summary" charts that overlaid parts of records with other graphics and explanations as to how the Government believed those documents were relevant to a particular

2

charge. In rejecting these exhibits, Chief Judge Brimmer held: "The exhibit does not summarize voluminous material, but rather consists of a small number of text messages. The text messages are superimposed inside of a graphic depiction of a cellular telephone. The photographs of these defendants are placed to the side of their text messages. The Court finds the exhibit, which is in the nature of a closing argument graphic, to be argumentative and will grant defendants' motion [to exclude]." (*Penn*, ECF No. 741 at 6.) Chief Judge Brimmer excluded other "summaries" because they contained "impermissible editorializing by emphasizing certain portions of exhibits in large letters and overlaying exhibits on top of each other" in a manner that "goes beyond summarizing the underlying information to include opinion." *Id.* (citing *United States v. Miller*, 2010 WL 235034, at *3 (D. Kan. Jan. 15, 2010) ("[S]ummaries shall not include any testimonial, interpretative, or inferential statements drawn from the content of the underlying documents.")

Similarly, in *Penn*, the Government sought to admit summary charts through testimony from case agents. Chief Judge Brimmer instructed the Government that the agent's "knowledge of the documents" would "probably not [] be a permitted category of testimony because that's what lawyers do in their closings. . . . That doesn't give him the foundation to offer testimony or form opinions." (*Penn*, ECF No. 1041, p. 170.) The fact that the agent had prepared the summary charts was irrelevant "because even if an agent put it together, once again, the agent doesn't have any personal knowledge of it." (Ex. A, *Penn* Transcript Day 8, p. 1626.)

3

When the Government sought to have a paralegal testify about summary charts she had prepared, Chief Judge Brimmer strictly limited her testimony. The paralegal was not permitted to read any portion of the supporting document to the jury:

> There is no reason that [the paralegal] needs to read things. She simply is vouching for the accuracy of the entirety of it, so by bringing out particular portions of it and in particular hav[ing] her read it goes beyond really what her purpose of being called is, beyond what her duties were. She is not necessarily—it's just inappropriate for this particular witness with no knowledge other than having confirmed things.

(Ex. B, *Penn Transcript Day 20*, p. 4053.)

It is unclear how the Government intends to introduce the proposed summary exhibits. The defense includes the above law and analysis to benefit the Court when these issues arise at trial.

**B.      The Court Should Not Allow Overview or Summary Testimony by Government Agents**

The Government's witness list includes multiple federal agents that were involved with the investigation of this matter. The topics each agent is expected to address are unknown to the defense, but the defense urges the Court to reject any effort by the Government to have these witnesses testify in an overview or summary manner.

Both overview and summary testimony are prone to abuse and strictly limited by Tenth Circuit precedent. *See United States v. Brooks*, 736 F.3d 921, 930 (10th Cir. 2013). Overview testimony from law enforcement or other government agents is generally "susceptible to abuse" because "it can stray into matters that are reserved for the jury,

4

such as opinions about a defendant's guilt or a witness's credibility." *Id*. Such testimony

is particularly problematic when the "overview witness testifies based on hearsay

rather than on personal knowledge or when an overview witness offers an opinion on

the defendant's guilt." *United States v. Marquez*, 898 F.3d 1036, 1051 (10th Cir. 2018); *cf.*

*United States v. Bader*, 678 F.3d 858, 878 (10th Cir. 2012) (permitting a non-law

enforcement witness to read from a document on the stand where the witness had

personal knowledge of the document from which she read). "Other potential problems

include the government's ability (1) to spin the evidence in its favor before it is admitted

(assuming it is ever admitted), (2) to give its official imprimatur to certain evidence, and

(3) to allow its witnesses (usually law enforcement) to testify on matters about which

they have no personal knowledge or that are based on hearsay." *Brooks*, 736 F.3d at 930.

"There is also the possibility that later testimony might be different than what the

overview witness assumed," and "overview testimony by government agents is

especially problematic because juries may place greater weight on evidence perceived

to have the imprimatur of the government." *Id*. at 930–31 (quoting *United States v. Casas*,

356 F.3d 104, 119–20 (1st Cir. 2004)).

Because of these dangers, Tenth Circuit precedent restricts the use of overview

testimony to certain "limited circumstances" and "courts generally allow overview

testimony to the extent it concerns how an investigation began, the law enforcement

agencies involved, or the investigative techniques used." *Id*. at 930. Such testimony

should be given at a "high-level of generality, focused on the investigative techniques

5

used and the course of the investigation while only mentioning names to the extent

necessary to explain the next course of action taken." *Id*. at 934. But "the government's

agent should not be testifying second-hand as to the incriminating information gleaned

during the investigation." *Id*. In short, "police witnesses may not simply repeat on the

stand what other witnesses have told them and justify the practice by arguing that the

statements are introduced to explain how they went about their investigation." *United

States v. Cass*, 127 F.3d 1218, 1224 (10th Cir. 1997).

Summary testimony is equally problematic. It is "conceptually similar to

overview testimony," except that it "comes toward the end of a case" and is "used to

repackage complex testimony or already-admitted evidence for the jury." *Brooks*, 736

F.3d at 931. Courts "must look at two factors when determining whether to admit

summary testimony . . . (1) the testimony's . . . potential to aid the jury in ascertaining

the truth; and (2) the possible prejudice that may result to the defendant in allowing

such evidence." *Id*.

In *Penn*, Chief Judge Brimmer set strict boundaries on overview testimony:

"overview testimony is just about categories of things that explain how the

investigation . . . was initiated, but not in a lot of detail." (*Penn*, ECF No. 1041, p. 165.)

He ruled that the testimony needed to be "pretty general," and the agent could not

testify about "specific search warrants, specific interviews," nor could he offer

"inappropriate opinion testimony" on "whether there was any evidence of bid-rigging

or price-fixing," such as, "we gathered all these documents and then I drew the following conclusions after my preliminary review[.]" (*Id.* at 167, 168.)

The Court should strictly limit overview or summary testimony by case agents.

## C.    Manner of Admission of Communications between Co-Defendants

The Court has ruled that certain communications between the alleged co-conspirators are not hearsay under F.R.E. 801(d)(2)(E). While Mr. Yioulos is expected to testify at trial, the Government cannot compel testimony from Mr. Tew or Mrs. Tew. Thus, if the Government seeks to admit communications sent between the Tews, it will have to do so without a testifying witness who has personal knowledge of the communications.

In *Penn*, the Government sought to introduce email and text communications between non-testifying co-defendants through testimony of government agents. Chief Judge Brimmer ruled that it would be impermissible for "a special agent who has no personal knowledge of . . . an e-mail . . . [to] read that to the jury." (Ex. A, *Penn* Tr. Day 8, p. 1625.) Chief Judge Brimmer also denied the government's request that agents "establish relevance" of documents or communications because that would "go more towards attorney argument." (*Id.* at 1630 (finding it unlikely that agents in this case "could supply some fact testimony that would bear on relevancy")).) Instead, Chief Judge Brimmer suggested that the government could simply display these documents on the screen to the jury. In doing so, he noted that, although "putting [documents] up on the screen" is "cumbersome," it is a "strategic or logistical problem" that is "almost

7

inherent with documents that are coming in without a person who has some personal knowledge of the document." (*Id*. at 1627.) Chief Judge Brimmer also did not permit the government to highlight portions of the documents admitted without a sponsoring witness when those documents were displayed to the jury because the highlighting would convey which parts of the documents the government viewed as important, which "boils down to being argumentative." (*Id*. at 1628.)

The defense urges the Court to follow the same procedure here.

Dated: January 24, 2024.

Respectfully submitted,

*s/ David S. Kaplan*
David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   kaplan@slhlegal.com
hubbard@slhlegal.com

*Attorneys for Kimberley Ann Tew*

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel notes that this filing has no effect on the speedy trial clock.

s/ David S. Kaplan
David S. Kaplan

**Certificate of Service**

I certify that on January 24, 2024, I electronically filed the foregoing *Defendant Kimberley Tew's Trial Brief* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ Brenda Rodriguez
Brenda Rodriguez

```
 1                 IN THE UNITED STATES DISTRICT COURT
                     FOR THE DISTRICT OF COLORADO
 2
     Criminal Action No. 20-CR-00152-PAB
 3
     UNITED STATES OF AMERICA,
 4
          Plaintiff,
 5
     vs.
 6
     JAYSON JEFFREY PENN,
 7   MIKELL REEVE FRIES,
     SCOTT JAMES BRADY,
 8   ROGER BORN AUSTIN,
     TIMOTHY R. MULRENIN,
 9   WILLIAM VINCENT KANTOLA,
     JIMMIE LEE LITTLE,
10   WILLIAM WADE LOVETTE,
     GAR BRIAN ROBERTS,
11   RICKIE PATTERSON BLAKE,

12        Defendants

13   _____

                         REPORTER'S TRANSCRIPT
14                       Trial to Jury, Vol. 8

15   _____

16           Proceedings before the HONORABLE PHILIP A. BRIMMER,

17   Chief Judge, United States District Court for the District of

18   Colorado, commencing at 8:40 a.m., on the 4th day of November,

19   2021, in Courtroom A201, United States Courthouse, Denver,

20   Colorado.

21

22

23

24   Proceeding Recorded by Mechanical Stenography, Transcription
       Produced via Computer by Janet M. Coppock, 901 19th Street,
25        Room A257, Denver, Colorado, 80294, (303) 335-2106
```

EXHIBIT A

```
 1    government insists on the scope, I will sustain the objection.

 2         We almost got through a day without the use of the

 3    transceivers, but not quite.

 4         Okay.  Thank you.

 5         THE COURT:  The objection is sustained.

 6         Ms. Rahman, we are almost at 5:00, but you can ask a

 7    few more questions.  But if you can look for a convenient

 8    stopping point.

 9         MS. RAHMAN:  Your Honor, this is a convenient stopping

10    point.

11         THE COURT:  Great.  Ladies and gentlemen, we will go

12    ahead and break for the day.  Keep the admonitions in mind.

13    Remember what I mentioned to you about not allowing yourself to

14    listen to people and maybe telling you about the case.  I am

15    not sure that anyone would, but just in case.  And we will be

16    back the same time tomorrow.  If you can be ready to go at

17    8:30.  The jury is excused for the evening.

18         (Jury excused.)

19         Ms. Fisher, you are excused for the day.  Thank you

20    very much.

21         THE WITNESS:  Thank you.

22         THE COURT:  Anything to take up at this time?

23         Ms. Call?

24         MS. CALL:  Very briefly, Your Honor.  I wanted to

25    inquire whether you had the opportunity to review the brief we
```

EXHIBIT A

 1    filed last night following up on the anticipated agent

 2    testimony.  I think hopefully we will be calling Agent

 3    Koppenhaver tomorrow, so if you had the opportunity to consider

 4    it, we would like to discuss now or --

 5         THE COURT:  What did you want to discuss?  I was a

 6    little bit inclined to just let it play out.  I still have

 7    concerns.  I really do.  As you can tell from the *Brooks*

 8    decision, the *Brooks* decision is fairly limited.  And Chief

 9    Judge Tymkovich in it suggested that one way to get around

10    potential risks of improper overview testimony would be to

11    limit it to a high level of generality.

12         And I'm not -- who knows, but I am not too worried

13    about Special Agent Koppenhaver going through too much of an

14    overview per se; but once again, I still question whether for a

15    lot of the exhibits that the government may attempt to

16    introduce he is even necessary.  It seems to me that whether or

17    not those exhibits come in or not wouldn't depend upon any

18    testimony on his part.

19         But let's assume that he happens to be on the witness

20    stand at the time that the government moves their admission

21    and, in fact, they are admissible, to then have him read

22    selected portions of them to the jury I would probably not

23    allow.  The reason is because although it's true a number of

24    witnesses have read portions of exhibits to the jury after

25    having been admitted, with rare exceptions those witnesses have

EXHIBIT A

1    each been the author of that exhibit or perhaps they're reading

2    something that they acknowledged having received.

3            I think it's a little bit different to have a special

4    agent who has no personal knowledge of, you know, for instance

5    an e-mail, let's say it's a co-conspirator statement, read that

6    to the jury.  Now, that's not to say that it can't be displayed

7    to the jury and that would be fine, but I'm a little bit

8    worried -- once again, I haven't seen it happen and so I don't

9    know -- but I do have a few concerns about if that's going to

10   be the kind of MO of at least some of Special Agent

11   Koppenhaver's testimony.

12           *MS. CALL:*  Yes, Your Honor.  And for the documents, I

13   will say the ones we would anticipate to have him read, I tried

14   to do a count last night.  It's not all of the like 300 or so

15   documents that were cited.  It's more like -- an estimate would

16   be maybe 70 or so that we would actually be looking at with him

17   and looking at the From and the To and perhaps reading a

18   portion.

19           I think the government's position is just really we

20   are trying to figure out what a permissible way from your

21   standpoint would be to ensure that the jury can really digest

22   this information, see the documents.  If they are presented

23   with, let's say, a three-page e-mail, how are they going to --

24   how are we even going to give them time to review it in a

25   meaningful way in context with the other things that were

EXHIBIT A

 1    happening in that time frame.  Obviously, the summary exhibit

 2    is one way to do that.  Do you take any issue with the agent

 3    reviewing the context of materials that are in the summary

 4    exhibits themselves?

 5         THE COURT:  There is really no difference between the

 6    concern that I just mentioned say with an e-mail and with a

 7    summary exhibit because even if an agent put it together, once

 8    again, the agent doesn't have any personal knowledge of it.

 9         Now, for instance, a telephone record, you know, if

10    you've got Exhibit 8000, the 99,000-page exhibit and the

11    special agent was asked to find the telephone number needle in

12    that haystack, I think that that is probably quite legit.  That

13    sounds like an investigation.  There is some process that he

14    had to go through to identify that and maybe link it up and

15    that may be perfectly fine.  But for a summary exhibit of, say,

16    co-conspirator hearsay e-mails, that is not -- that doesn't

17    seem to be any type of an investigation.

18         And I do have concerns just as the Court in *Brooks*

19    expressed that, you know, for a special agent, for instance, to

20    say, oh, yeah, I thought this was a real important one, or

21    something of that nature or even, as I said before, just be

22    asked:

23         Do you see this one?

24         Yes.

25         Who is it to?

EXHIBIT A

1   So and so.

2   Who is it from?

3   So and so.

4   Can you read the second sentence?

5   That -- I don't think that just because there is not a

6   great way to get that information in front of a jury, that that

7   would then entitle any party to have a reader as opposed to

8   putting it up on the screen.  Now, that's cumbersome too.

9   There is no doubt about it.  But that -- you know, that

10  strategic or logistical problem is one that is almost inherent

11  with documents that are coming in without a person who has some

12  personal knowledge of the document.

13  *MS. CALL:*  And just to be clear, as thrilling as Your

14  Honor does make it sound, I think we are anticipating that the

15  latter kind you described, the agent would not be saying, you

16  know, we found this e-mail to be important to the

17  investigation, making conclusions of that kind.  It would be

18  more so reading selected portions.

19  And perhaps I may suggest we could start out with the

20  reading.  And if Your Honor does see it becoming troublesome,

21  we can change or shift course to just displaying the documents.

22  But on that latter front, I know you were concerned about

23  highlighting or zooming to certain areas to draw attention when

24  a witness was testifying, but if the witness were not reading

25  portions, would Your Honor have any issue highlighting or

1    zooming in on certain portions of documents for the jurors?

2         THE COURT:  Not when you're giving your closing.

3    That's a problem.  Being selective about it, it's a tricky

4    issue.  If you had a sponsoring witness, a witness with some

5    knowledge, you could do that.  But, you know, for the attorney

6    or for a witness who doesn't know anything about the document

7    to be asked to read a selective portion is different and it

8    would have no other -- the only thing I think the jury would

9    understand from it is that the government counsel thinks that's

10   the part that's important.  So that's not evidentiary.  That

11   boils down to being argumentative.

12        MS. CALL:  Okay.  Two things I perhaps did want to

13   point you to.  I know I said we made this filing last night.

14   It was obviously somewhere in between last night and this

15   morning.  But when we looked at it with brighter eyes, we did

16   notice two typos in our filing, one that I think is pretty

17   material because there was supposed to be a "not" in the

18   sentence and we left the "not" out.  Would Your Honor prefer us

19   to refile it or I can just correct the sentence on the record

20   here.

21        THE COURT:  You can correct it on the record if you

22   want here.

23        MS. CALL:  This is Docket 789.  The error is on Page 4

24   in the paragraph where *Brooks* is cited.  The sentence currently

25   reads:  Even assuming the agent's testimony qualifies as

EXHIBIT A

141

1    overview testimony, which it does not, they're anticipated

2    testimony will implicate these concerns.  We clearly meant

3    there to be a "not" after the will and before the term

4    implicate.  And that is a material error I did want to correct

5    today.

6         So we will, I suppose, proceed tomorrow kind of in the

7    way we outlined, but we are happy to start just leaving up

8    documents if Your Honor believes it is starting to push that

9    line in overview testimony, but I don't believe it does.

10        THE COURT:  I don't think you would get by the first

11   attempt.

12        MS. CALL:  Okay.

13        THE COURT:  That's just my sense.  You can try.  You

14   can try.  It's just -- to the extent you are seeking some

15   guidance, I think that it may be problematic for the reasons

16   that I just explained.

17        MS. CALL:  Of course.  And we did review *Brooks*, Your

18   Honor, and we do appreciate the concerns there.

19        THE COURT:  Right.  So once again, you do have a right

20   to display something that has been admitted and we can do that.

21   It's cumbersome.  And, you know, you have to -- for multi-page

22   exhibits you look at the jury and it's kind of like the one

23   who's -- I could maybe tell them once you've read it, look at

24   me, and then once everyone's at me.  We can go through that and

25   that's fine.  It doesn't mean that you have to show the jury

EXHIBIT A

1    everything, but that's how it's typically done.

2         *MS. CALL:*  Just anticipating how this may flow, in

3    establishing relevance for those documents, before we move to

4    admit them, our intention had been to -- it's very much clear

5    on the face of most of these documents, so have the agent

6    review a From and To.  And we may ask a leading question to

7    prevent him from reading the context, like is a customer

8    mentioned in this e-mail or is a competitor mentioned in this

9    e-mail, just to establish relevance.  Does that sound like it

10   runs any risk of these things we're talking about?

11        *THE COURT:*  Yes, because, you know, typically the

12   relevance would be established -- with a lot of these documents

13   I would assume that the relevance may have -- may go more

14   towards attorney argument.  You would -- if there is an

15   objection that's irrelevant, you would have the ability to

16   respond to it.  We've already -- we already have a foundation

17   of certain facts.  We know what the charge is.  Those are

18   things that typically add up to the ability of a Court to

19   determine the relevance of it.

20        So it would surprising to me, although once again, I

21   don't know, that the -- that Special Agent Koppenhaver could

22   supply some fact testimony that would bear on relevancy.

23        *MS. CALL:*  Yes, Your Honor.  I think that would

24   probably be limited circumstances and I understand what you're

25   proposing -- or not proposing, but what you are anticipating

EXHIBIT A

143

1          IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF COLORADO
2

Criminal Action No. 20-CR-00152-PAB
3

UNITED STATES OF AMERICA,
4

5        Plaintiff,

vs.
6

JAYSON JEFFREY PENN,
7  MIKELL REEVE FRIES,
SCOTT JAMES BRADY,
8  ROGER BORN AUSTIN,
TIMOTHY R. MULRENIN,
9  WILLIAM VINCENT KANTOLA,
JIMMIE LEE LITTLE,
10  WILLIAM WADE LOVETTE,
GAR BRIAN ROBERTS,
11  RICKIE PATTERSON BLAKE,

12        Defendants

13  _____

                  REPORTER'S TRANSCRIPT
14                Trial to Jury, Vol. 20

15  _____

16          Proceedings before the HONORABLE PHILIP A. BRIMMER,

17  Chief Judge, United States District Court for the District of

18  Colorado, commencing at 8:01 a.m., on the 23rd day of November,

19  2021, in Courtroom A201, United States Courthouse, Denver,

20  Colorado.

21

22

23

24  Proceeding Recorded by Mechanical Stenography, Transcription
      Produced via Computer by Janet M. Coppock, 901 19th Street,
25        Room A257, Denver, Colorado, 80294, (303) 335-2106

EXHIBIT B

Rachel Evans - Direct

1   *Q.* Did you review a phone record containing a call from

2   Defendant Bill Kantola that same afternoon -- or morning, I

3   apologize.

4   *A.* Yes.

5   *Q.* All right. And who was that to?

6   *A.* It was to Scott Brady, Claxton.

7   *Q.* All right.

8         *MR. FAGG:* Your Honor, may we be heard on said bar?

9         *THE COURT:* Yes, you may.

10      (At the bench:)

11        *THE COURT:* Mr. Fagg, go ahead.

12        *MR. FAGG:* Your Honor, we object to the witness simply

13  reading all of these e-mails into the record. As she is

14  reading them, she is giving the appearance to the jury it's

15  some sort of endorsement that what they say is true and we

16  don't think it's appropriate for this summary witness to be

17  doing.

18        *THE COURT:* Ms. Call, response?

19        *MS. CALL:* Your Honor, Ms. Evans is simply reading

20  portions of documents. I have not heard her giving any

21  inflection. And as to the truth, I believe all she stated is

22  she confirmed that the words in those e-mails are accurate, so

23  I don't believe there is any sort of vouching, for lack of a

24  better word, she is giving to words in the documents.

25        *THE COURT:* I am going to sustain the objection.

EXHIBIT B

Rachel Evans - Direct

1    There is no reason that she needs to read things.  She simply

2    is vouching for the accuracy of the entirety of it, so by

3    bringing out particular portions of it and in particular have

4    her read it goes beyond really what her purpose of being called

5    is, beyond what her duties were.  She is not necessarily --

6    it's just inappropriate for this particular witness with no

7    knowledge other than having confirmed things.  So I will

8    sustain that.

9        MS. CALL:  Would Your Honor find it appropriate for

10   her to just identify that there was an e-mail at that time and

11   then she did review phone records following a given e-mail?

12       THE COURT:  Well, once again, given the fact that she

13   has testified and has checked the entirety of the exhibit, to

14   highlight particular things unless there was some --

15   particularly, you know, for instance, with an earlier exhibit

16   she testified about how she filled in time zone information,

17   that type of thing, that's perfectly appropriate and there is

18   no problem with that.  But to pick out an otherwise ordinary

19   looking line and then have her testify about that particular

20   line, it's emphasizing it to the jury and that's not her

21   particular role and that's not what her assignment was.

22       MS. CALL:  Yes, Your Honor.  And, of course, it's a

23   little more unusual here that we will not be offering these

24   exhibits into evidence until the defendants have an opportunity

25   to cross-examine Ms. Evans, but I would like the jury to have

EXHIBIT B

Rachel Evans - Direct

1  the ability to view these summaries.  Would it be appropriate

2  to have them do that now and, you know, have Ms. Evans sit

3  there while they review them or should we wait until after

4  cross-examination for that?

5       THE COURT:  Well, I think they are being displayed to

6  the jury right now and that can take place now.  Once again, I

7  wouldn't want you to dwell on it, but -- and I wouldn't want to

8  take too much time because there will be cross-examination, but

9  just to reiterate, she can be asked about relevant aspects of

10 them, but not ordinary entries just for what would appear to be

11 the sake of calling it to the jury's attention.

12      MR. TUBACH:  Your Honor, Michael Tubach.  I think if

13 we are going to display all of these charts to the jury now,

14 this is probably 40 pages of documents, multiple entries, this

15 is going to take hours to do.  I don't know if that's what the

16 government is intending to do, but I think that is not an

17 appropriate use of this chart.

18      THE COURT:  Maybe you can display pages you want to

19 call her attention to because she needs to explain something.

20 After cross-examination maybe once they have been admitted, it

21 may be an appropriate time to let the jury view them, all

22 right?

23      MS. CALL:  All right.  Thank you, Your Honor.

24    (In open court:)

25      THE COURT:  Go ahead, Ms. Call.

EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW,

      Defendant.

---

## DEFENDANT MICHAEL TEW'S TRIAL BRIEF

---

      In advance of trial scheduled to begin on February 5, 2024, Defendant Michael Aaron Tew ("Mr. Tew") submits this trial brief to raise certain anticipated issues to the Court's attention. Should this case be continued (*see* Doc. 374), counsel requests the opportunity to supplement this brief in advance of any future trial setting.

**A.    Anticipated Evidentiary Issues Likely to Arise at Trial**

      i.      Proffer Interviews (Government Exhibits 528 and 529).

      As discussed at length in Mr. Tew's Motion in Limine, Doc. 370, and Mrs. Kimberley Tew's ("Mrs. Tew") Motion in Limine, Doc. 373, the interpretation and application of certain proffer agreements stands to dramatically impact each defendant's ability to present a defense. Mr. Tew asks the Court for a pre-trial ruling regarding the breadth of those agreements and joins in Mrs. Tew's request for a pre-trial hearing on the issue.

      ii.    Government's Proposed Rule 1006 Summary Exhibits and Supporting Testimony

      The government has stated its intent to offer certain summary exhibits (and presumably testimony supporting their creation), including but not limited to, those marked as Government's

Exhibits 1001 through 1007, under Federal Rule of Evidence 1006. Mrs. Tew discusses this issue at length in her own Trial Brief, Doc. 376. Mr. Tew hereby adopts by reference the arguments made therein and asks the Court to proceed with caution when considering the admission of such exhibits, asking that even if each fact summarized therein has been independently admitted into evidence, whether such summary's prejudicial impact exceeds their probative value.

**B.      Presenting the Indictment to the Jury and/or Venire.**

The Indictment, Doc. 83, is long – sixty counts, covering 24 pages that include numerous tables. While most of the Indictment is straight forward, the government makes frequent use of the word "fraudulent" to describe invoices and payments submitted as part of the alleged scheme to commit wire fraud. This begs the very conclusions for which trial is set – whether fraud occurred, for starters. Such short cuts only serve to inflame the jury. *See, e.g., United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999) ("Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged."). By way of analogy, if the government questioned a witness in this manner, it would be impermissible vouching.

Federal Rule of Criminal Procedure 7(d) provides that, upon motion by a defendant, "the court may strike surplusage from the indictment or information." Fed. R. Crim. Pro. 7(d). *See, e.g, United States v. Scott*, 37 F.2d 1564, 1576. Mr. Tew moves to strike the word "fraudulent" as surplusage any time it is used in the Indictment to describe an invoice or payment.

Should the Court deny this request, Mr. Tew asks that the government be restricted from providing written copies of the Indictment to the jury, and instead read it out loud (to the jury or entire venire) at the outset of the proceedings. Such a decision is within the sound discretion of the

Court. *United States v. Skolek*, 474 F.2d 582, 586 (10th Cir. 1973).

DATED this 24th day of January, 2024.

_/s/   Jason D. Schall_
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com

_/s/   Kristen M. Frost_
Kristen M. Frost
RIDLEY, LCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200
Denver, CO 80202
Telephone: (303) 629-9700
Facsimile: (303) 629-9702
E-mail: frost@ridleylaw.com

Attorneys for Michael Aaron Tew

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

_/s/   Jason D. Schall_
Jason D. Schall

## STATEMENT OF SPEEDY TRIAL IMPACT

Pursuant to Judge Domenico's Practice Standard III(C), undersigned counsel notes that this filing has no effect on the speedy trial clock.

_/s/   Jason D. Schall_
Jason D. Schall

3

## CERTIFICATE OF SERVICE

I hereby certify that on January 24, 2024, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

| | |
|---|---|
| AUSA Bryan Fields | David Kaplan / Jamie Hubbard |
| U.S. Attorney's Office | Stimson LaBranche Hubbard, LLC |
| 1801 California Street, Suite 1600 | 1652 North Downing Street |
| Denver, CO 80202 | Denver, CO 80203 |
| (303) 454-0100 | (720) 689-8909 |
| Bryan.Fields3@usdoj.gov | kaplan@slhlegal.com |
| | hubbard@slhlegal.com |
| | *Attorneys for Kimberley Ann Tew* |

I hereby certify that I will mail or serve the filing to the following participants:

Mr. Michael Aaron Tew (defendant)


_____ */s/   Jason D. Schall* _____
Jason D. Schall

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

  1. **MICHAEL AARON TEW, and**
  2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S LIST OF 902(11) & 902(13) DECLARATIONS

Pursuant to the Court's Orders on the government's Motion in Limine; Atlantic Unions Motion to Quash, and the Government's Response to the same (ECF Nos. 367, 344, 363, and 367, respectively), the government provides the following list of all custodial declaration, pursuant to Fed. Rs. Evid. 902(11) and 902(13), that it intends to use to authenticate trial exhibits of non-hearsay business records.

The proposed declarations are attached (in the cumulative), as Exhibit 1 to this filing.[1] The most recent version of the government's anticipated Exhibit List for trial is attached as Exhibit 2 to this filing.[2]

---

[1]    Certain certifications have been redacted for public filing when they mention private, identifying information regarding individuals who are not on trial. The defense has received unredacted versions, which will be used at trial.

[2]    A final version of the government's Exhibit List will be filed on Friday, January 26, 2024. *See* ECF Nos. 241 & 317 (Orders setting pretrial and motions deadlines).

1

| | Custodian Name[3] | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 1. | **Access National Bank\*\*** | \*\* 1135 (ACNB_00001) | Bank Records |
| 2. | **American Express\*** | \* 1129 (AMEX_00001) | Account Records |
| 3. | **Apple** | 1115 (SW_FIL_342321-22) <br> 1140 (ORD_15053-54) | Subscriber Information & Other Messaging-Service Related Records |
| 4. | **ANB Bank** | 1101 (ANB_00002) <br> 1102 (ANB_00035) | Bank Records |
| 5. | **Atlantic Union Bank** | 1100 (ACNB_00101) | Bank Records |
| 6. | **AT&T** | 1127 (ORD_20003-04) | Subscriber Information & Other Messaging-Service Related Records |
| 7. | **BBVA** | 1103 (BBVA_00002) <br> 1104 (BBVA_00280) | Bank Records |
| 8. | **Coinbase\*\*** | \*\* 1136 (COIN_00076) <br> \*\* 1137 (COIN_00077) <br> \*\* 1138 (COIN_00078) | Account Records |
| 9. | **GoDaddy** | 1108 (ORD_19742) | Account Records |

---

[3] Custodians marked with a star provided declarations subsequent to the James Hearing. Custodians marked with two stars provided declarations subsequent to the Court's Order on January 19, 2014 (ECF No. 367), or were inadvertently left off of the previous lists. All declarations have been provided to the defense in discovery.

| | Custodian Name[3] | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 10. | **Google\*\*** | 1109 (ORD_17711)<br>1114 (SW_FIL_00094-99)<br>1116 (SW_FIL_11402-07)<br>1117 (SW_FIL_11557-61)<br>1122 (ORD_19955-61)<br>1123 (ORD_19962-76)<br>1124 (ORD_19977-91)<br>1125 (ORD_19992-96)<br>1126 (ORD_19997-20002)<br>\*\* 1141 (GPAY_00097-00106) | Subscriber Information & Other Messaging-Service Related Records |
| 11. | **Guaranty Bank & Trust Company** | 1105 (GUAR_00001) | Bank Records |
| 12. | **Kraken** | 1106 (KRKN_00001) | Know Your Customer, Account, & Transaction Records |
| 13. | **McDonald Automotive Group (Audi)\*** | 1131 (AUDI_00042) | Account & Transaction Records |
| 14. | **National Air\*\* Cargo** | 1130 (NAC_E_204515-16)<br>1134 (NAC_00978-79) | Email Records &<br>Business Records |
| 15. | **Navy Federal Credit Union\*\*** | 1107 (NAVY_00002-03)<br>1128 (NAVY_02211-12)<br>\*\* 1139 (NAVY_02217) | Bank Records |
| 16. | **Red Leaf (Digital Mint)\*\*** | \*\* 1132 (DGMT_00001)<br>\*\* 1133 (DGMT_00814) | |
| 17. | **Regions Bank** | 1111 (REG_00001) | Bank Records |

3

| | Custodian Name[3] | Exhibit Nos. & Corresponding Bates No. | Type of Record |
|---|---|---|---|
| 18. | **Simple Finance Technology Corp.** | 1112 (SFT_00001) | Account Records |
| 19. | **Signature Bank** | 1113 (SIG_0678) | Bank Records |
| 20. | **Vcorp** | 1118 (VCORP_00001) | Account Records & Emails |
| 21. | **Verizon** | 1110 (ORD_19935) | Subscriber Information & Other Messaging-Service Related Records |
| 22. | **Wells Fargo Bank** | 1119 (WFB_00144-46)  1120 (WFB_01054-58) | Bank Records |
| 23. | **Wynn Las Vegas** | 1121 (WYNN_00002) | Account & Business Records |

COLE FINEGAN
United States Attorney

By:  */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:  */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Sarah H. Weiss*
Sarah H. Weiss

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this filing will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Sarah H. Weiss*
Sarah H. Weiss

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

## DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0660

**Company Name:** ATLANTIC UNION BANK

I, WILLIAM VAUGHAN , declare that I am/was employed by ATLANTIC UNION BANK and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

STATEMENTS

CHECKS

DEPOSITS

SIGNATURE CARDS

RESOLUTIONS

WIRES

LOAN PAPERWORK

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

    A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

    B. Kept in the course of the entity's regularly conducted activity; and

    C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

William Vaughan

Signature

WILLIAM VAUGHAN

Printed name

Date: 7-27-20

ACNE



GOVERNMENT EXHIBIT
20-cr-00305-DDD
1135

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 19-1635

Company Name:

I, MADELYN GONZALEZ declare that I am/was employed by AMERICAN EXPRESS and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

STATEMENTS AND CREDIT APPLICATION

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

B. Kept in the course of the entity's regularly conducted activity; and

C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_Madelyn Gonzalez_
Signature

MADELYN GONZALEZ
Printed name

Date: 2/26/2020

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1129

AMEX

## CERTIFICATION OF APPLE INC. CUSTODIAN OF RECORDS

I, Samantha Tagle hereby declare:

1.        I am employed by Apple Inc. and my official title is Legal Specialist. I am a duly authorized Custodian of Records, or other qualified witness for Apple Inc. ("Apple") located in Cupertino, California. As such I have the authority to certify these records, APL000001_APPLE_CONFIDENTIAL through APL000002_APPLE_CONFIDENTIAL and APLiC000001 through APLiC000002 produced on October 8, 2020 in response to legal process served on Apple on September 22, 2020. I am authorized to submit this declaration on behalf of Apple.

2.        Each of the records produced is the original or a duplicate of the original record in the custody of Apple Inc.

3.        With respect to the records contained in APL000001_APPLE_CONFIDENTIAL, these records were:

> a.  made at or near the time by, or from information transmitted by, someone with knowledge or from a process or system that produces an accurate result, the accuracy of which is regularly verified by Apple;
>
> b.  kept in the course of a regularly conducted activity of Apple's business; and
>
> c.  made as part of a regular practice of the activity of Apple's business.

4.        With respect to the records contained within APLiC000001 through APLiC000002, these records are Apple's record of the iOS device backup(s) transmitted to Apple by and stored on behalf of the Apple ID accounts with usernames kley@me.com ("Backup Records"). The referenced Apple ID accounts transmitted the Backup Records to Apple and Apple stored those records at or near the time indicated on the Backup Records;



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1115

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

DATED: October 8, 2020

**APPLE INC.**

By: *Samantha Tagle*

Name: Samantha Tagle
Title: Legal Specialist, Apple Inc.

SW_FIL_00342322

## CERTIFICATION OF APPLE INC. CUSTODIAN OF RECORDS

I, Samantha Tagle hereby declare:

1.      I am employed by Apple Inc. and my official title is Legal Specialist. I am a duly
authorized Custodian of Records, or other qualified witness for Apple Inc. ("Apple")
located in Cupertino, California.  As such I have the authority to certify these records,
APL000001_APPLE_CONFIDENTIAL through APL000003_APPLE_CONFIDENTIAL
produced on August 27, 2020 in response to the legal process served on Apple on August
17, 2020.  I am authorized to submit this declaration on behalf of Apple.

2.      Each of the records produced is the original or a duplicate of the original record in
the custody of Apple Inc.

3.      With respect to the records contained in APL000001_APPLE_CONFIDENTIAL
through APL000002_APPLE_CONFIDENTIAL, these records were:

> a.  made at or near the time by, or from information transmitted by, someone
> with knowledge or from a process or system that produces an accurate
> result, the accuracy of which is regularly verified by Apple;
>
> b.  kept in the course of a regularly conducted activity of Apple's business; and
>
> c.  made as part of a regular practice of the activity of Apple's business.

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1140
162

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct

DATED: August 27, 2020          **APPLE INC.**

By:

Name: Samantha Tagle
Title: Legal Specialist, Apple Inc.

---

**DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY**

Subpoena #: 19-1636

Company Name:

I, Shauna Harris, declare that I am/was employed by ANB Bank and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

2018 Check's over $500.00

2018 Deposit's over $500.00

2018 Statements

Incoming / Outgoing wires

Signature Card

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

B. Kept in the course of the entity's regularly conducted activity; and

C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_____          Shauna Harris
Signature                          Printed name

Date: 12/26/19

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1101

ANB

---

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-1235

Company Name: ANB Bank

I, Elise Crook , declare that I am/was employed by ANB Bank
and am/was a duly authorized custodian of records or am otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

Records for accounts held by Michael Mayes (10/01/2018 - 11/01/2018)

and Michael Tew (12/05/2018 - 01/03/2019).

    - Account Info Sheets + signature cards

    - Account statements

    - Deposits and withdrawals greater than $500.00

    - Checks greater than $500.00

    - Wire activity greater than $500.00

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

  A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
     information transmitted by--a person with knowledge;

  B. Kept in the course of the entity's regularly conducted activity; and

  C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

Signature

Elise Crook
Printed name

Date: 01/08/2021

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1102

ANB-00305

| | |
|---|---|
| **DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY** | |

Subpoena #: 20-0660

**Company Name:**   ATLANTIC UNION BANK

I,   WILLIAM VAUGHAN   , declare that I am/was employed by   ATLANTIC UNION BANK   and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

STATEMENTS

CHECKS

DEPOSITS

SIGNATURE CARDS

RESOLUTIONS

WIRES

LOAN PAPERWORK

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

B. Kept in the course of the entity's regularly conducted activity; and

C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_William Vaughan_

Signature

WILLIAM VAUGHAN

Printed name

Date:   7-27-20


GOVERNMENT EXHIBIT
20-cr-00305-DDD
**1100**
ACNB

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____Keivandra Lang_____, attest, under penalties of perjury by the laws

of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in

this certification is true and correct. I am employed by AT&T Corporation, and my title is

_Legal Compliance Analyst_. I am qualified to authenticate the records attached hereto

because I am familiar with how the records were created, managed, stored, and retrieved. I state

that the records attached hereto are true duplicates of the original records in the custody of

AT&T Corporation. The attached records consist of Subscriber, voice & data, device info & payment details

[generally describe records (pages/CDs/megabytes)]. I further state that:

    a.    all records attached to this certificate were made at or near the time of the

occurrence of the matter set forth by, or from information transmitted by, a person with

knowledge of those matters, they were kept in the ordinary course of the regularly conducted

business activity of AT&T Corporation, and they were made by AT&T Corporation as a regular

practice; and

    b.    such records were generated by an electronic process or system of AT&T

Corporation that produces an accurate result, to wit:

    1.    the records were copied from electronic device(s), storage medium(s), or

file(s) in the custody of AT&T Corporation in a manner to ensure that they are true duplicates of

the original records; and

    2.    the process or system is regularly verified by AT&T Corporation, and at

all times pertinent to the records certified here the process and system functioned properly and

normally.

3

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1127

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of

the Federal Rules of Evidence.

_____7/28/2020_____                    *Keivandra Lang*

Date                                   Signature

4

ORD_0002004

---

## DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 19-1641

Company Name: BBVA USA

I, hesa Moore , declare that I am/was employed by BBVA USA
and am/was a duly authorized custodian of records or am otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

Account inquiries, statements, signature cards, checks, deposits, and wire transfers.

---

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

  A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
     information transmitted by--a person with knowledge;

  B. Kept in the course of the entity's regularly conducted activity; and

  C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_____              hesa Moore
Signature                              Printed name

Date: January 6, 2020

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1103

BBVA 169

THE STATE OF TEXAS
COUNTY OF HIDALGO

## ELECTRONIC BUSINESS RECORDS AFFIDAVIT

BEFORE ME, the undersigned authority, Sammie James Zumwalt III, personally appeared, who, being by me duly sworn, deposed, as follows:

My name is, Sammie James Zumwalt III, I am of sound mind, capable of making this affidavit, and personally acquainted with the facts herein stated.

I am the custodian of records, employee, or owner of BBVA, and I am familiar with the manner in which its records are created and maintained by virtue of my duties and responsibilities. Attached hereto are __1-DVD__ data storage device(s) (e.g., CD-R, DVD, USB Drive) of records from BBVA. The images on the data storage device(s) (e.g., CD-R, DVD, USB Drive) contain __414 pgs__ (entries/pages) which were kept in the course of regularly conducted business activity. The attached records are the original records or exact duplicates of the original records.

It is the regular practice of BBVA to make records and to make this type of record at or near the time of each act, event, condition, opinion, or diagnosis set forth in the records. Further, it was the regular practice of BBVA to make the records and regular practice for this type of record to be made by, or made from information transmitted by, persons with knowledge of the matters set forth in them.

Affidavit 20-12-8661

SWORN TO AND SUBSCRIBED before me on the 5th day of January , 2021.

HARRIE H. VILLANUEVA
My Notary ID # 126600080
Expires July 22, 2024

Notary Public, State of Texas
My Commission expires: July 22, 2024



BBVA

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1104

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL
## RULES OF EVIDENCE 902(11) AND 902(13)

I, Kristen Spaeth _____, attest, under penalties of perjury by the laws of the

United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification

is true and correct. I am employed by **Coinbase, Inc.** ("Provider"), and my title is

Global Intelligence Manager . I am qualified to authenticate the records attached hereto because I

am familiar with how the records were created, managed, stored, and retrieved. I state that the records

attached hereto are true duplicates of the original records in the custody of the Provider.

The attached records consist of:

- 10 pages of Confidential Coinbase Compliance Report (.csv file) For Coinbase Customer(s)

- 6 .jpeg files of Photo Identification For Coinbase Customer(s)

I further state that:

a.       all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they

were kept in the ordinary course of the regularly conducted business activity of the Provider and they were

made by the Provider as a regular practice; and

b.       such records were generated by the Provider's electronic process or system that produces

an accurate result, to wit:

1.       the records were copied from electronic device(s), storage medium(s), or file(s) in

the custody of the Provider in a manner to ensure that they are true duplicates of the original records; and

2.       the process or system is regularly verified by the Provider and at all times pertinent

to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal

Rules of Evidence.

January 22, 2024 _____          Kristen Spaeth _____
Date                                     Signature



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1136

COIN

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, ___Kristen Spaeth___ , attest, under penalties of perjury by the laws of the

United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification

is true and correct. I am employed by **Coinbase, Inc.** ("Provider"), and my title is

___Global Intelligence Manager___ . I am qualified to authenticate the records attached hereto because I

am familiar with how the records were created, managed, stored, and retrieved. I state that the records

attached hereto are true duplicates of the original records in the custody of the Provider.

The attached records consist of:

- 12 pages of Confidential Coinbase Compliance Report (.csv file) For Coinbase Customer(s)

- 4 .zip files of Photo Identification For Coinbase Customer(s)

I further state that:

a. all records attached to this certificate were made at or near the time of the occurrence of

the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they

were kept in the ordinary course of the regularly conducted business activity of the Provider and they were

made by the Provider as a regular practice; and

b. such records were generated by the Provider's electronic process or system that produces

an accurate result, to wit:

1. the records were copied from electronic device(s), storage medium(s), or file(s) in

the custody of the Provider in a manner to ensure that they are true duplicates of the original records; and

2. the process or system is regularly verified by the Provider and at all times pertinent

to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal

Rules of Evidence.

___January 22, 2024___          _Kristen Spaeth_
Date                                     Signature

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1137

COIN 172 2

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, Kristen Spaeth _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct. I am employed by **Coinbase, Inc.** ("Provider"), and my title is Global Intelligence Manager. I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records attached hereto are true duplicates of the original records in the custody of the Provider.

The attached records consist of:

- 1 page of Confidential Coinbase Compliance Report (.csv file) For Coinbase Customer(s)

- 2 .jpeg files of Photo Identification For Coinbase Customer(s)

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of the Provider and they were made by the Provider as a regular practice; and

b.      such records were generated by the Provider's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of the Provider in a manner to ensure that they are true duplicates of the original records; and

2.      the process or system is regularly verified by the Provider and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

January 22, 2024 _____     _Kristen Spaeth_ _____
Date                                                      Signature



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1138**
COIN   173

## CERTIFICATE OF AUTHENTICITY
## OF
## BUSINESS RECORDS

I, Kimberly A. Groff, declare, pursuant to Title 28, U.S.C. § 1746, that I am employed by GoDaddy.com, LLC, and that my office title or position is Legal-Admin II. I further declare that I am a custodian of records of said business and that each of the records attached hereto is the original or a duplicate (exact photocopy) of an original record in the custody of GoDaddy.com, LLC.

I further state that:

1. Such records were made, at or near the times of the occurrence of the matters set forth by (or from information transmitting by) a person with knowledge of those matters;

2. such records are kept in the course of a regularly conducted business activity;

3. the business activity made such records as a regular practice; and

4. if such records are not the originals, such records are duplicates of the originals.

I declare under penalty of perjury the forgoing is true and correct.

Dated this 20th day of August 2020.

Kimberly A. Groff
Legal-Admin II
GoDaddy.com, LLC.
14455 N. Hayden Road, Suite 219
Scottsdale, Arizona 85260

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1106



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.      I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.      I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.      Google provides Internet-based services.

4.      Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s) ███████████. with Google Ref. No. 3841093 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the 2703(d) Order or Equivalent.

5.      The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.      The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_Jeffrie Gonzalez_____          Date: 08/12/20
(Signature of Records Custodian)


    Jeffrie Gonzalez
(Name of Records Custodian)



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1109



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

01/11/21

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

**Re: Search Warrant dated December 23, 2020 (Google Ref. No. 5200470)**
*Case No. 20-sw-01522-NWY*

Dear Special Agent Palmer:

Pursuant to the Search Warrant issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s), █████████ *@GMAIL.COM*, as specified in the Search Warrant. We have also included a signed Certificate of Authenticity which includes a list of hash values that correspond to each file contained in the production. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

Please note that Google Pay service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from you of the time and date of the appearance, the scope of testimony, any Google Reference Number(s) associated with the case, and the travel for the appearance at least one week in advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

Albert Sanchez
Google Legal Investigations Support



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1114**

SW



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.     I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.     I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.     Google provides Internet-based services.

4.     Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s             @*GMAIL.COM*, with Google Ref. No. 5200470 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the Search Warrant.

5.     The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.     The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


\_\_\_/s\_Albert Sanchez_____          Date: 01/11/21
(Signature of Records Custodian)


    Albert Sanchez
(Name of Records Custodian)



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

## Attachment A: Hash Values for Production Files (Google Ref. No. 5200470)

▇▇▇.776301624485.GooglePhotos.PhotoResource_001.Preserved.zip:

MD5- e6774f3769ff2122ca375eb97e4b37dc
SHA512-
dcb06e1ecc00d101f037c1f76a3b03990259af66acdc49f7ba8828bb824915d866f9fad374175281e0
1e7b75cc88614603991cbd6656c9fa8c69eb412ddf30ce

▇▇▇.776301624485.GooglePhotos.PhotoResource_001.Preserved.zip:

MD5- f5c8b41839ab8942ad0b9f7db08ded28
SHA512-
34a5a35226e8846a73b8ed24c5797bdc57b2a4917b0ac797cf10ff2b9a351b6c570febe605f937e83c
4397d42aada0d49b06a47fd7d233786da6c58b0a3b5024

▇▇▇n.Drive.Metadata.Preserved.zip:

MD5- 7a01d30c349498e6291d12440bc6c2de
SHA512-
c5a06c315bdaf15c0953db0df649d179f289d12bd6413f2346c50b6d647095848d912d389215b6e2
740149849e5a682a2adadb0935268971157a6e4abd629e3b

▇▇▇.Drive.Metadata.Preserved.zip:

MD5- 31993a6d556c2f2d8619c0f9d7469f61
SHA512-
f21abbeedc799e7364b3e5ea627ce599518d327475cc396690e8fb28acd6bbe412ddcfe53a6c8a015
4240d668ada167ca254be640e35df90eb6528e7e42ee08c

▇▇▇.Drive.Metadata.zip:

MD5- 1e83978e56e6a2a7493d073915609203
SHA512-
80d4b4611696e436b950c9372509e5c466407650056a63d1877eb12ce64e5d14c00e8efc634574f5
19ff0774fc03a65f18a082767115e1daa12efa870e5fd130

▇▇▇.Drive_001.Preserved.zip:

MD5- 3b3d75e616d2f9ef1bcd9ae71af01b8a
SHA512-
cebf32827022f92fa3786b22c5f85e8e029a75f10612e373041fb553639517b39b56e02ba749c8125
3e794679e6e758d857eb5f52ba9d13365754b369ca17f49



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

    .Drive_001.Preserved.zip:

MD5- e6b6acd4003cc79e85ac4e132611b1dc
SHA512-
e10d17e1c526e798eee45febedfbad2c877d67e98ddcc28da450195d2f9f1a4a82fb29761c28f91f83c
35faa98836f73832da5af2c93af82dd538256b44990bd

    Drive_001.zip:

MD5- e62925debe7a04800edf7f2f79d59dd6
SHA512-
30e42753961e95957561a83d1c2a5d606aefccc970ce93835dd05e965b0d76c555a51dd311225ad5
636f022a06d89bf18eee8f4ad97bf4d6c75d163604718754

    .Drive_002.zip:

MD5- a20db33ebf7d39288f4ff9c4ebff03be
SHA512-
1c1e34731f95889435291ccbe180efa90a3f99cdb5cf7225bcbb17eca1e4492f10466213b0d66a5749
7d717c9e3e332f4a020441d5a42117a2a8f046130c9386

    .Gmail.Contacts.Preserved.vcf:

MD5- a7bd523199d556858bcd544c4e45aa23
SHA512-
47193eebf596f54b3d2bc500488de9a727449359369840b82fa2ba0096399f105d9e02a9f237dbb04
320838935add97c37f523f1d53d0f4fd74ee257c38c7a63

    .Gmail.Contacts.Preserved.vcf:

MD5- a7bd523199d556858bcd544c4e45aa23
SHA512-
47193eebf596f54b3d2bc500488de9a727449359369840b82fa2ba0096399f105d9e02a9f237dbb04
320838935add97c37f523f1d53d0f4fd74ee257c38c7a63

    .Gmail.Contacts.vcf:

MD5- a7bd523199d556858bcd544c4e45aa23
SHA512-
47193eebf596f54b3d2bc500488de9a727449359369840b82fa2ba0096399f105d9e02a9f237dbb04
320838935add97c37f523f1d53d0f4fd74ee257c38c7a63



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

@gmail.com.776301624485.Calendar.Calendars_001.zip:

MD5- 79f52cf3766686e51067c4ff9a0961f2
SHA512-
5429f7ad06d58d2ccf74b1b5afeaa511b1b7cb11e4bdd10cd957a67059c9073aee1c960757f577bbf3
4749eee5e9737121008c51254cc190f521c3f241741222

@gmail.com.776301624485.GoogleAccount.SubscriberInfo_001.zip:

MD5- 5348b15fa195342c438c21024cb1944d
SHA512-
dc48d44c42667b4e544082cc4825c50b1c4e6db05a32d75ae52f9118ac36a8dc751d6bcf14f5eb7b6
547c339d112f19611c862c17f2e0f332fa62e02580b431e

@gmail.com.776301624485.GooglePhotos.PhotoResource_001.zip:

MD5- 124e43a6ce0e06b8d18d38192b4f494f
SHA512-
bec96b4f9d747888e1bc1078540717c76a11e4c3c9bb6ef07d136472522fef635595af98ee0b9637a
17dbf39a9220469f586e7fcc844f01dcd81bf8a70597548

@gmail.com.776301624485.Preserved_001.Calendar.Calendars_001.zip:

MD5- 97fc4ea00795add6a4e5cfe4bcdaadb1
SHA512-
fdaf28a13642d5441a7e1672617c3ddd1267465e91f83c271b7617896a868b85c39588f0e8423cfc2
0f5d04c8dfa939996c9574276130a6a8a804315245be0ec

@gmail.com.776301624485.Preserved_001.GoogleAccount.SubscriberInfo_001.zip:

MD5- 27a74d37afd2fb9bbb2ddcf4efda1eb9
SHA512-
73e565170dec674377d94598b6a94cc649b0c165ced0fd9dd85719a5e682af3b22efe9b483a811df8
203ff63f1092978a37b815da83ca0b33cffda9eb898cbce

@gmail.com.776301624485.Preserved_002.Calendar.Calendars_001.zip:

MD5- a2149ebb77b31d95b300f5afbd12d88e
SHA512-
829c93dfbdd94d22cc5e89d451af54f1afdca97a6300ab6d4967b321183e22742b8c14e01ff8be41dd
2477caeb082eae5bdf07617570ca0d78494f03b8702c0c



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

      █████ @gmail.com.776301624485.Preserved_002.GoogleAccount.SubscriberInfo_001.zip:

MD5- 61389827ff579a34e405831440254af4
SHA512-
ee91a0ad863b133efc2c96576d6d317cc689c6add88951d3ed73a5c917456a6e4ed118a7f84192490
959d6ddc08dd5db2fce9a8ae1a703370755b5c72d479d46

      █████ @gmail.com.Gmail.Content.Preserved.mbox:

MD5- 1ba4a38fcbd55136be9a7902d69f386a
SHA512-
e9ba7c862a1454527b066731d0d0ed5ceac9a2b61f274fa25cfb6c159763bd44dd948f8f3827b1c12
d8097be582ffc39a8da0b1b3f75c0fdbb004b4658a55653

      █████ @gmail.com.Gmail.Content.Preserved.mbox:

MD5- b55c06d9f5655f4de47490455beb4d54
SHA512-
27c14785e024f14a3c882870e654fcc3239b49d787557e025c3c15d6ada4718340b2e0af9bf37fae6c
06c2dd38bf6528305300695d975c7ab2ca2dcbeacb668b

      █████ @gmail.com.Gmail.Content.mbox:

MD5- 88a128d7f78897f26c38ef51abda5c65
SHA512-
e96b9e5970c3d1b32be21bdde9bf6188a6f9adbc75a0f9266ca122c096bb9b8613f7d8b4480a5f778
8ee8ea13907073d1654ec488067b3741fdf3ca02f731cec



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

01/05/21

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

**Re: Search Warrant dated December 23, 2020 (Google Ref. No. 5200471)**

Dear Special Agent Palmer:

Pursuant to the Search Warrant issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s),
@GMAIL.COM, as specified in the Search Warrant. We have also included a signed Certificate of Authenticity which includes a list of hash values that correspond to each file contained in the production. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

Please note that Google Pay service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from you of the time and date of the appearance, the scope of testimony, any Google Reference Number(s) associated with the case, and the travel for the appearance at least one week in advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

David Tirone
Google Legal Investigations Support



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1116

SW



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.      I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.      I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.      Google provides Internet-based services.

4.      Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s) ▮▮▮▮▮▮▮▮▮▮▮▮▮ *@GMAIL.COM,* with Google Ref. No. 5200471 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the Search Warrant.

5.      The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.      The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_David Tirone_____                 Date: 01/05/21
(Signature of Records Custodian)


      David Tirone
(Name of Records Custodian)

SW_FIL_00011403

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

## Attachment A: Hash Values for Production Files (Google Ref. No. 5200471)

▮▮▮▮▮▮▮ 962148739471.GooglePhotos.PhotoResource.Preserved.zip:

MD5- e76f0d3ecb131f8da7a647944daf8ed7
SHA512-
131d0d8034b50736019b4f87f950de5ae1ee81d0799d40f7d90f11fa2bf39f620dfa9af6a5e0435333
ec5cfe3649106c622798f09c1e07c8fb30b99a6053ead8

▮▮▮▮▮▮▮ 962148739471.GooglePhotos.PhotoResource_001.Preserved.zip:

MD5- 3e5dca06fee45c4d0a54287dd085c7a4
SHA512-
69839aa48ca41b32fd22d76356fe0e967c233f173ab1e29b26003c63667cc937d27cc1bd72ac3575e
23662305b3d111ecae8c881443ded7a2aa123d9d5b519e4

▮▮▮▮▮▮▮ .Gmail.Contacts.Preserved.1.vcf:

MD5- 1e46d93bebee919073e59495003f260c
SHA512-
129f4baec0bc6734328b6a697f1eeac89275020ab03b185f7906d97448b5911de4f8ca7ac25c8cd4e
b261e3a0af080faa2d7b49039ac2e6ae568da6e270ed083

▮▮▮▮▮▮▮ .Gmail.Contacts.Preserved.2.vcf:

MD5- 1e46d93bebee919073e59495003f260c
SHA512-
129f4baec0bc6734328b6a697f1eeac89275020ab03b185f7906d97448b5911de4f8ca7ac25c8cd4e
b261e3a0af080faa2d7b49039ac2e6ae568da6e270ed083

▮▮▮▮▮▮▮ .Gmail.Contacts.vcf:

MD5- 1e46d93bebee919073e59495003f260c
SHA512-
129f4baec0bc6734328b6a697f1eeac89275020ab03b185f7906d97448b5911de4f8ca7ac25c8cd4e
b261e3a0af080faa2d7b49039ac2e6ae568da6e270ed083

▮▮▮▮▮▮▮ @gmail.com.962148739471.Calendar.Calendars_001.zip:

MD5- 6d3d979f4ae4e2ffc8bf4a354f471dd6
SHA512-
3b4e8dbdaa4d00910e01f1e7b7d56d513c931e02cf13da40a6df7999d782cef1465112948b39c0e1a
3ee8c4ad4e3ca03341566aea6a6ce8e25db032fe16713b3

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

Google

USLawEnforcement@google.com
www.google.com

@gmail.com.962148739471.GoogleAccount.SubscriberInfo_001.zip:

MD5- fd969c867e7ed749e5ad4c27b423cee7
SHA512-
0cddd44ea22f2cc5d69f6b787cadb473bc26cb20edb674935ff88a5e5444aaf6bc1330c920a0e97872
6c6ec9baddd352aaf02f168ccf2c8b4d71c43b2f2dcb83

@gmail.com.962148739471.GooglePhotos.PhotoResource_001.zip:

MD5- ce53f86e3aee1196ef38e9a815d3ae98
SHA512-
dee318515e597aab835144a55b0ebc087dca66b440d2af96d3f273a8870e6019f301e21357b60ec0c
0b189336423e1778047c7f912f4376dcc2c67ecc9be87d2

@gmail.com.962148739471_001.Calendar.Calendars_001.Preserved.z
ip:

MD5- ba6adb7e0f570469caaaa2e721cede58
SHA512-
f4dd993dc98d2195931f501cdc4f133f7d8da95c9a214e2882a2e12574979ed141df5835f9bd96c54
af6867834da1766e514e4a93874611ca5304039e1728556

@gmail.com.962148739471_001.GoogleAccount.SubscriberInfo_001.
Preserved.zip:

MD5- 656e13d6714bfef5de41d764d71b669c
SHA512-
193d0b953047f6b1a6614fe17f095aefb6ecb10269c5f4ca45091692429cdd9bbd5f6069b4c6df8c5b
4b09347b6b59cd1eb416549eb01dac8c0f695d79fb5dae

@gmail.com.962148739471_002.Calendar.Calendars_001.Preserved.z
ip:

MD5- 2c9f771e67d67587b5ca097c71755872
SHA512-
3431a2dfcd681b79890d148601af8e931cf0befc436fe400da125e15186e74de6f8b125c43e30f512c
701581ea15e2fbcb1651682f88f470e50243fa8b842f3c

@gmail.com.962148739471_002.GoogleAccount.SubscriberInfo_001.
Preserved.1.zip:

MD5- e19b0c040b2dd0449297e51829fae138
SHA512-
52ff5d7d4a7f095f29b5f586c50b15242ad9949a7f55e3fa5cebd8108013077d7121107acc0c1346fd
1f24a4a5d664d709365a3da88360209080d7c602166e0a



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

@gmail.com.962148739471_002.GoogleAccount.SubscriberInfo_001.
Preserved.2.zip:

MD5- 02c82e7dc79ef8f9b741ed9eb4d6d361
SHA512-
7eb9a20ae7008d8873ad5c3fa5646e89462de37e3f7dba8d853ee245d56e2c9cdf4f42b2fe3e57c34b
561c9ffd269e6731c994ba446ae2432a999bab244cf7b8

@gmail.com.962148739471_003.GoogleAccount.SubscriberInfo_001.
Preserved.zip:

MD5- 43573ce1d0b9df508a4f4257097c8a79
SHA512-
5a62930301fb3571f0777638c76d229903dc3db9293e69e081cdd9339c09454b962a21d74db51a40
f6eea117250c99310e7fdc33bddc97c212cc74542420b35b

@gmail.com.Gmail.Content.Preserved.1.mbox:

MD5- 9f20603bff52ff9db1d594f4b34526e9
SHA512-
b512f10ec08e13deabb876d65f052d7f0e8a4e3c10ec328a27f37ebeee070eded2dde168308b854209
d081ff0e46079a30792efd81ab547c4fa2c58869361e0c

@gmail.com.Gmail.Content.Preserved.2.mbox:

MD5- a8777f36260272c96f008447f7f3b1f8
SHA512-
989ebba476b72c76b144b7d8ac8204a5795997c153a11399f9a6e38a2110bf4ffa1c02493eb7c1581
31d18f16e14f37047fab0ada31a8582ed265fc1a75237bd

@gmail.com.Gmail.Content.mbox:

MD5- f38284e52db45c1ee98a85a82d028839
SHA512-
af6a378a3f120ed2d049aa3a389181f6965edd088a4067070798d56ee6bc7cfbf815b98c528caa70d5
d3ebd604bc55d001bee4cfc5d7324a6cefbb01f74a8781

@gmail.com.Gmail.Headers.Preserved.1.mbox:

MD5- d41d8cd98f00b204e9800998ecf8427e
SHA512-
cf83e1357eefb8bdf1542850d66d8007d620e4050b5715dc83f4a921d36ce9ce47d0d13c5d85f2b0ff
8318d2877eec2f63b931bd47417a81a538327af927da3e



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

██████████████ @gmail.com.Gmail.Headers.Preserved.2.mbox:

MD5- 36938ac03cd6f35864b56fd76010ca22
SHA512-
4adb1fcf87fb3d74b6716cb1d1034728e669a12db0c8d50cef2feee405c23c3fee90788614c3d5c856
b96239b6010af0b675ab9abc50f6519223fbf02f5dab98



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

01/13/21

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

**Re: Search Warrant dated December 23, 2020 (Google Ref. No. 5200469)**

Dear Special Agent Palmer:

Pursuant to the Search Warrant issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s),
▉▉▉▉▉▉▉▉▉ @GMAIL.COM, as specified in the Search Warrant. We have also included a signed Certificate of Authenticity which includes a list of hash values that correspond to each file contained in the production. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

Please note that Google Pay service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from you of the time and date of the appearance, the scope of testimony, any Google Reference Number(s) associated with the case, and the travel for the appearance at least one week in advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

Albert Sanchez
Google Legal Investigations Support



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1117**

SW

188



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.      I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.      I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.      Google provides Internet-based services.

4.      Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s)                    *GMAIL.COM,* with Google Ref. No. 5200469 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the Search Warrant.

5.      The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.      The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_Albert Sanchez_____          Date: 01/13/21
(Signature of Records Custodian)


    Albert Sanchez
(Name of Records Custodian)



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

### Attachment A: Hash Values for Production Files (Google Ref. No. 5200469)

38500996862.Calendar.Calendars_001.001.Preserved.zip:

MD5- fffa9521df20f748b68d1bdcfa080be2
SHA512-
4d0d8219406a7ed4bbabfdde8e092e6192ee8fc98c1cb36b85466acc1d6698cf67196f3d3e75b7a88
34154557a61ca944821684006cd7d2995d91fb2d2c2a3fe

8500996862.Calendar.Calendars_001.Preserved.zip:

MD5- f03d687d299a0d40bf7fe3af05f41ad4
SHA512-
7c1d7ec3541011a58d1d201fc7ef1605957efb7d3a445dd85ac942115b4f125b610af7998835ddca5
74b71dabeb424fff11c5412f9c0cb9ba6f26bde29ab58b2

38500996862.PlusPhotos.PhotoResource_001.001.Preserved.zip:

MD5- b5dfdbc674d85489e7d611f4d096a07b
SHA512-
f55fc3e61e184d714c5b98a802dbdd3ed8744bee9b69b5807582a3d82fa38e08631aac6f742724126
8f962f35f67e3acfbea6d8fa5fc1cfb54f724824931637b

38500996862.PlusPhotos.PhotoResource_001.Preserved.zip:

MD5- 0b509c72f1e6ac86c905753868baf51b
SHA512-
197dc137fc1600fe5c8335681718a27c3d392d0ada1ea133f7f99afe7235d39edd94499ba56263439
8daf963eb63e8437a1bcacdc12ebb475d3263f53d7245fa

Drive.Metadata.Preserved.zip:

MD5- bb22be9763857372e561fca0915e7d8b
SHA512-
8db74c1bbaa8f4b6189aeee39036a6d37a40846576fdb0acbfb588f08e0691121eacbeef482655ea2d
debcaad9fcffee6102808654bd4ebf5cbb7d31a7fded27

.Drive.Metadata.zip:

MD5- 12da62ca89f35bc4379518f034196bca
SHA512-
09741911af1f66029f0ea8610cbc63cf7c8763b2f62e5b7850f302587d450436727c708d0d53fb29dc
66269cd111fb081acefc37decfaf7ffd8f61b633d42377



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

.Drive_001.Preserved.zip:

MD5- 3bb454f41c9d98512b86e637cd3e156b
SHA512-
f0d58f9ca9c55e4412b84cfbceac5ecd1d5dc1322f07be57c2bf15294891568455dff4a0fc1511a7a0a
cad2e200880f3eebc694b6168e61404e7f8589029cbde

.Drive_001.zip:

MD5- 3bb454f41c9d98512b86e637cd3e156b
SHA512-
f0d58f9ca9c55e4412b84cfbceac5ecd1d5dc1322f07be57c2bf15294891568455dff4a0fc1511a7a0a
cad2e200880f3eebc694b6168e61404e7f8589029cbde

Drive_002.zip:

MD5- 8dd49cc10378ee09d413687ad6402766
SHA512-
ae70e6d509c592829df4417f9346f9026f4ddd035ca968d41eac8605ddc462ab7b26be14972078037
7e89b09a7da91fd35ae2caf8ec4ea224bfe6fc36f86e144

Gmail.Contacts.Preserved.vcf:

MD5- 8a42243f6cb87b9cbe18ae774c771837
SHA512-
fce4ed7f71335ce5c2e578ccb0d34a2b2d52735b4ec709ce46ae1082ad453c812fe7eb8b3c868d8c64
e6e61e03e5b645f6e09a8534c26c321ba67e6182328a26

Gmail.Contacts.vcf:

MD5- 8a42243f6cb87b9cbe18ae774c771837
SHA512-
fce4ed7f71335ce5c2e578ccb0d34a2b2d52735b4ec709ce46ae1082ad453c812fe7eb8b3c868d8c64
e6e61e03e5b645f6e09a8534c26c321ba67e6182328a26

@gmail.com.38500996862.Calendar.Calendars_001.zip:

MD5- 66f0b4f9ba30b7c32822e05ecb31d475
SHA512-
a25877a4fbda49cce144a7888cf2e46af4907d60012843f3a3b88d3805140c02c58c73d2a7dae79e1c
7b73dbf37d199608d303b26bedce7361b25cb0a33c1bd0



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

@gmail.com.38500996862.GoogleAccount.SubscriberInfo_001.zip:

MD5- dcf353c181f914a06884657f80dadfd7
SHA512-
dc9e6b0853397551ee722c4cebd0e945e94e107773878e26b0acd1631c67d8c0474f209090a64c84
9b928800cb65c928d84503d7a2fe49a4496f54c58d543f97

@gmail.com.38500996862.GooglePhotos.PhotoResource_001.zip:

MD5- 85c4abaec8213ee65fce542309210df6
SHA512-
d29444d0aa001799189ef9fa3e3fa4410e82bbaf07a80b0591e3be8f8f2ade1333f11d3220de878729
21f15352513366df8c0b4a214434d2f887c8c2ca9612a9

@gmail.com.38500996862.Preserved_001.GoogleAccount.SubscriberInfo_0
01.zip:

MD5- 82f33aefac0bc14b70f2c4101117780a
SHA512-
dd2ea6330da304c45433eab50942a1f16ad4861c676a878261a6dc1599f2b0143f9905059ceeb4803
d2ce5b3e30d2dd2095fa338c0fe59f9da520e1b213d8714

@gmail.com.38500996862.Preserved_002.GoogleAccount.SubscriberInfo_0
01.zip:

MD5- 4017c22675555a45dc9e7a33da3c427b
SHA512-
911a719ab102689cbb423dc25ed200f4de8932ef5f6fe44303dfc5833c1b350e76103a62d237e166a
9843da500979786dcce2ef9967bc732172aaeaf4a1f5a30

@gmail.com.Gmail.Content.Preserved.mbox:

MD5- 769da350f0a719e4f6a1575c547856ab
SHA512-
87ef044778e4099a38dc9d98b500349f691d98a21efcacf88cca740aab61f8fe4630dcc3eb0d0dfb9c4
3b5fb5aa814e3a6db3595ba60670217a194580de73f00

@gmail.com.Gmail.Content.mbox:

MD5- 886d3db16730d05b7330726e910db7fa
SHA512-
75df06d245390ed6821230abf440dbdb0abaf3b2d173fa904c264288ebd5ccf5360f29929e3e60b3bf
957488b7a9c227ab1d0dde255430877c05c48e1aeb6ba0

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

**Google**

USLawEnforcement@google.com

www.google.com

08/17/20

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

   Re: **2703(d) Order or Equivalent dated July 09, 2020 (Google Ref. No. 3851630)**
   *19R00976*

Dear Special Agent Palmer:

   Pursuant to the 2703(d) Order or Equivalent issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

   Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s), ████████████████████████ , as specified in the 2703(d) Order or Equivalent. We have also included a signed Certificate of Authenticity which includes a list of hash values that correspond to each file contained in the production. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

   Pursuant to your request for related Google account(s) linked by creation IP address, we did not find any responsive records of active Google account(s) that accepted the Terms of Service using the same IP address as ████████████████ , within +/- 8 days of the Terms of Service acceptance date.

   Please note that Google Pay service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

   For a Google Custodian of Records, we will require a subpoena and confirmation from you of the time and date of the appearance, the scope of testimony, any Google Reference Number(s) associated with the case, and the travel for the appearance at least one week in advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

   Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

                     Regards,



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1122**

OR        193



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

Sophie Everaert
Google Legal Investigations Support



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.      I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.      I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.      Google provides Internet-based services.

4.      Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s) ▓▓▓▓▓▓▓▓▓▓▓▓, with Google Ref. No. 3851630 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the 2703(d) Order or Equivalent.

5.      The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.      The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_ Sophie Everaert_____          Date: 08/17/20
(Signature of Records Custodian)


    Sophie Everaert
(Name of Records Custodian)

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## Attachment A: Hash Values for Production Files (Google Ref. No. 3851630)

▮▮▮▮▮▮▮▮.AccessLogs.Activity_001.001.zip:

MD5- 3de793a622a3e89e776d6dbea17a0c6d
SHA512-
e4f0b4823fea7d303a74fc0f480a74f4ed36c73702420a9619bb9ab4d43e67fa07ad3db15a1b9039c0
9b0740028ebe3ef24418ee65f72d9a7fc803da9f231b42

▮▮▮▮▮▮▮AccessLogs.Activity_001.Preserved.zip:

MD5- db3db2b76349094016aa760a63a0dd40
SHA512-
1b1d624e63952a4d24f688e2800ea694165d9a22533a0e653691efd0f35b61e632afeebeb4388b20b
d14fbeb51780181dc9ae797bb991d51cc43d3dee4bb5b9f

▮▮▮▮▮▮▮.AccessLogs.Devices_001.Preserved.zip:

MD5- ac622e9c8bb870e9294bd4470c0cb14b
SHA512-
4cd3688bb442700fa6bc4770b3df3b53518666c6a221e239be8f610bbf70c9bd85ced40bcbac24aea
5f33c1c874b1b1c45a162d7a20cc408832c3d8d57da57c0

▮▮▮▮▮▮▮.Bond.Devices_001.zip:

MD5- 1c69e8fd46df2d4fbda7ab9c80244a50
SHA512-
dc767e22092f81a1612450f75614da6f57f3112d3d4c618a8e493d6bf4bb92b2e6dde93bd9b6b251b
4221cb72d67d379492c4f66c73ad2b8e0aace86d8c48e7a

▮▮▮▮▮▮GoogleAccount.SubscriberInfo_001.zip:

MD5- a08fd46cd7679c8f673d7ad471b815a3
SHA512-
b933c3048cae7f9902b858453f2aa476c05b001825cb946ca129fea893a62bc40c16bf9c79b479cc8
480ec52c9fb7d847ac1b3eef439ab4fc14e1d9423ec5092

▮▮▮▮▮▮.Preserved_001.GoogleAccount.SubscriberInfo_001.zip:

MD5- 36c3f94f801c1073ca2b52f5a2cc5bc1
SHA512-
6cbbbd4d7099bfdf00227f34c57cbe734584d437fbc74cb92cc2ac499fd52b2413712cfccf3378f894
7d2572067c3b4c9bc09717c48d8b4853c0a373dbf28499

▮▮▮▮9.AccountsLinkedBySMSandSecondary.pdf:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

MD5- 5ac76ccc3b57729620ee00f0d84d3203
SHA512-
0e0eb861d1a0feffbf02467c16067702212b5a82362795bc28fcb17c95a35019f824d8c66b8155931
3ee18fab39c1fbff3714ed2aaf11ecdf84b76f48e397dc6

███████ gmail.com-AccountsLinkedByCookies.txt:

MD5- c2c4c0917e7b06d297aa83e232a5f394
SHA512-
88aaf61d6d90bd247e5850de5f9e44017f4dbfbf14168baff79f66f799b40ba240e915aa77117bf72d5
4e06d0ee07869905a9b4965f575b30b1924f6e556ec5c

███████ @gmail.com.Gmail.Headers.Preserved.mbox:

MD5- 537411d83cf0196a312207134a8c17eb
SHA512-
cc77031f3ee6e1a9892286ea869d601a33c75d5219b83a3b33dbf0b5c75771aa69537a90fdad9b253
95c19069434e82c13828c557a436c95bda1ec91de943f79

███████ @gmail.com.Gmail.Headers.mbox:

MD5- b2c55858c60ed50025fc785f3460f640
SHA512-
e81c6c70d5522a22c16e67abc4868e735ec2965ee6e4efef107764f822915ff31a8674439d32af9d9f
d6f315bcc774b9ff6ced0b41d92057797c632cc6951732

███████ .3964632312346514274.Checkin.DeviceAndUserProfile_001.zip:

MD5- 57ff4c7ac99e48789cc2d215d936ba8e
SHA512-
4b358e9e02b333ad3ddeaa342eb804c9b66aa4a8ef4cd0f1511a348c4939d1641bf3bc6c0fdb9effbf
2af5aeb29bf624625c3fc2cb9f3b6e879fbc282657fbae

███████ 1███69016068321123168.Checkin.DeviceAndUserProfile_001.zip:

MD5- 237a033f70d84370a176364cd5de3865
SHA512-
5d6e6ccf09f06edc25c609db72d382ba9e3caf9df23dd927c64f1aea39b6c3900416c61b804240f000
a8c7c3322ad6fd36844571a07556e4fefb543b5a7556c6

███████ 4037188399310387006.Checkin.DeviceAndUserProfile_001.zip:

MD5- 68a531a13cb2fc2d9090bb2f7a212c73
SHA512-
14db8c89eb97a3907d851af5ee4773528dc0d1516ba148941b4f95eb52836b8f663fb4485b2c3c567

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

3c0ae5d3313247861a109391f9faa66906093d134c89beb

.4467172662444148606.Checkin.DeviceAndUserProfile_001.zip:

MD5- 1394c5ecc52d25ae48199c2fb4f71140
SHA512-
245a9b22c4e0f25c6b0e8e59b00cdcf7937bb8e7f96c02afeeb95e583ec5a63374a56a6c81012e455c
271480d774400bfd31a8cda417f7d951698bf57e94e19e

457781233741.AccessLogs.Activity_001.001.zip:

MD5- 9231f225cb3411160ae1f3721079a5d0
SHA512-
a5d20d5a9d94b654229e65600f9af6af155d22eba268277850caf0cf4abb9ee04e072e6309257824ff
afdfa54551674ca82751f7bc424b0955f2f00c8b1748be

.457781233741.AccessLogs.Activity_001.Preserved.zip:

MD5- bcf0fe2aa930ca4f6a0289904897ccb9
SHA512-
7bc699befdfd802ad43c99e46f28c13f36c86213d22a4a186024c443f54fd4784fa4275edeea931f91f
6620abd8989be139b02b2abcd41542d0ac6185ca569fc

457781233741.AccessLogs.Devices_001.Preserved.zip:

MD5- 7d085bcedaa38bbaefb0a6056e15a70c
SHA512-
72129a676951e2d51af0574b345f36a3e8e4fb98e84567aaba5e4d6897cb8bbf2106d02f82aa19c21a
0233502b733f29667cb582e489a045f90e230cdcd4fcf5

.457781233741.Bond.Devices_001.zip:

MD5- ef58a0fa12a12ce1a2f1914851563a5d
SHA512-
dc1e24c1ad2809491ac26f752a44945985536962f5f49f1903d2734d9b0f180db72df5af241cad8afb
d3b4d3fa0822d2df6b9088f6d78b83822898bacc89ad01

6 .457781233741.GoogleAccount.SubscriberInfo_001.zip:

MD5- 329a1f41b68210067cf643b6c0b522ce
SHA512-
d7bd0469f67f1e2c5c9f9e45b9213bb755bff8da8560991e1d6783ee4919b0ea503cd782eeb9f8c281
5ee41061403c9b15bcf76c50b175332f29bcb303ff4404

457781233741.Preserved_001.GoogleAccount.SubscriberInfo_001.zip:

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- 19c82523e60be827f60d932931c574df
SHA512-
f4de1fdc3019bfbba93a6dda2d156c2ce9ae5de17bb8921e277d059ce5867d0673587ce49805bd360
4cf3038fff82a621e6a004d18f04cac92938e4e7e7473a7

@gmail.com.Gmail.Headers.Preserved.mbox:

MD5- 1064587de18c9e4d1a88209ffd15ce53
SHA512-
5324e1c84f6c24e116397a3b98dc41e1f56299ff62330515a468babf4e6a0522a68802401fdcaf1c81
9c330748b711af26e5b54cee55412c645f5c2aadd363f2

gmail.com.Gmail.Headers.mbox:

MD5- d38c04d74ce7fa01366213a9fb52235e
SHA512-
3ae951f7d3389bf53e972c1ce899948798642f5442c2cfb9ed03a7a1a6758dd04392d69fb37b3aa53
a1ac2556d3dfb2a4fba9d8a1825833ed9b0df48e0625419

@gmail.com-AccountsLinkedByCookies.txt:

MD5- c953d049a91ea8fbd36c2d0b38b896fb
SHA512-
a84368790df395a9c19367c2b5d212b4907907b567794fc4f1116f4b6bcb045de1275b11a1c3a8cf5
a4454cdb17d81594c5b0300a14bb76ec4029767a539c602

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

07/23/20

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

### Re: 2703(d) Order or Equivalent dated July 10, 2020 (Google Ref. No. 3855397)

Dear Special Agent Palmer:

Pursuant to the 2703(d) Order or Equivalent issued in the above-referenced matter, we
have conducted a diligent search for documents and information accessible on Google's systems
that are responsive to your request. Our response is made in accordance with state and federal
law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible
from our system associated with the Google account(s), ███████████████████████████

██████████████████████████████████████████████████████████, as
specified in the 2703(d) Order or Equivalent. We have also included a signed Certificate of
Authenticity which includes a list of hash values that correspond to each file contained in the
production. Google may not retain a copy of this production but does endeavor to keep a list of
the files and their respective hash values. To the extent any document provided herein contains
information exceeding the scope of your request, protected from disclosure or otherwise not
subject to production, if at all, we have redacted such information or removed such data fields.

Pursuant to your request for related Google account(s) linked by creation IP address,
contained in this production is responsive data pertaining to the active Google account(s) that
accepted the Terms of Service using the same IP address as *VTLEYCAP, MIKEMORA9,
KIMBERLEY.VERTANEN, VERTANEN* within +/- 8 days of the Terms of Service acceptance
date.

Pursuant to your request for related Google account(s) linked by creation IP address, we
did not find any responsive records of active Google account(s) that accepted the Terms of
Service using the same IP address as ██████████████████████████████████████████

█████████████████████████████████████████████████████████████████ within
+/- 8 days of the Terms of Service acceptance date.

Please note that Google Pay service data is under the control of Google Payment
Corporation. Any request for such data must be specifically addressed to Google Payment
Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from
you of the time and date of the appearance, the scope of testimony, any Google Reference
Number(s) associated with the case, and the travel for the appearance at least one week in



GOVERNMENT
EXHIBIT

20-cr-00305-DDD

**1123**



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

Nikki Adeli
Google Legal Investigations Support



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.     I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.     I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.     Google provides Internet-based services.

4.     Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s)
▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, with Google Ref. No. 3855397 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the 2703(d) Order or Equivalent.

5.     The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.     The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_Nikki Adeli_____                Date: 07/23/20
(Signature of Records Custodian)


    Nikki Adeli
(Name of Records Custodian)



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## Attachment A: Hash Values for Production Files (Google Ref. No. 3855397)

███████████ 907074630458.AccessLogs.Activity_001.zip:

MD5- 5c1c122a07eeb93be2276c6186afea3a
SHA512-
591afe597a592fa7b9fe3b647a3f311ae2950be673a00f49d79b8b2c699a7857a773acd9bd01b2f0fc
50fe7b9ad9b35ff9b82c9341ec3df6b57232798e1518ce

███████████ .907074630458.AccessLogs.Devices_001.zip:

MD5- 9ac023691c14975db67ea2e5bb982d8e
SHA512-
6640b5ed3e88fe4184eafe97d8059919b8856f9567e8368afb6bbff5df9004a62b83af74cf6431d334
7690d5e33f9377da06ecad2b654ec674823655dc7d57ea

███████████ 907074630458.GoogleAccount.SubscriberInfo_001.zip:

MD5- e3e0fabb8c94108883d769cf347a44d5
SHA512-
af5c895f01ad3c91be0e502ccbe9f9642ea54845cbd8af351acf2a1eb138fad8e4f18a03d95c36b17c9
5d7c6aff79fd709d65c751bc65d0177e4ac0a5139c3f2

███████████ LinkedbySMS:SECONDARY.pdf:

MD5- f08a9757ed5b6cdf207985e66fa57a99
SHA512-
378546e4baec301ba9e3720dfd2a4e75da8711ec15c8218fd77745d2587c033672760689161e2749
8fa23d4288676e36742b1908723c79716bbde8d79242dc25

███████████ @gmail.com-AccountsLinkedByCookies.txt:

MD5- af7a874dc732a1397c4af90439cde18f
SHA512-
53c0cc184eaff1b74ac79b8b8af5fdcaa18f55196bdf740bfeac37defefa947ee17bb9c2b2364ea37b74
c5358acd2a0bbe9aa6ac994d2257db7fafda23fe75b7

███████████ s@gmail.com.Gmail.Headers.mbox:

MD5- 4622d7b9bc01dfe5951907a8a113eab7
SHA512-
98a2bc1463e7586077155b3a0f6bedbb477047818b6f5f5f26d703280a5755b39c754b63ac00ec032
e0f97c052dd5fb11c45d2c4ac19d221f06c58eb70fefefa

███████████ 181362297242.AccessLogs.Activity_001.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

MD5- 2636c2095b933455ef995d71d81e1f36
SHA512-
3fdf55a441f50d8514c477899fe24e1d0efea363d5aa906b10e8b6eecba183585358196d0ff4636519
4449e58d38cfa335447a1878a33dca93dbd82b89e0a44a

◼.181362297242.AccessLogs.Devices_001.zip:

MD5- 3ae9b538d8a3483eee8d79e87df52672
SHA512-
e200789e9b7a6763dda690e7a559250097612efb4ec342ad405ee6e18f713a6ee1e8fe3eef61af266af
2f49896df3a5d62e1f136df8fe27ef762e10e74ef55f1

◼81362297242.GoogleAccount.SubscriberInfo_001.zip:

MD5- b48391252b83d304a42990e56e8dbe28
SHA512-
e588a2eb39661adf8cfe8e22d8ed61b3b5f775a080503a6115af655b50524776a8483f665f7faab1ba
eda2aca9ca55f303324bb7d2afb8982e58ef29354f2b17

◼.LinkedbySMS:SECONDARY.pdf:

MD5- 8984ab88dd56d6a4da148b13fa893ecb
SHA512-
fcf206fcbb74e22e0702e840f527b92c9040548f59ec8e23d29e9bff55a1b8a9b1747cd4e7c7054ab0
af515375da4747b53bac6e1e01c2baaf1e22b53a92eb5b

◼@gmail.com.Gmail.Headers.mbox:

MD5- 66b624500f955dfb08c4016c13fd0c8d
SHA512-
44ffe274c0ea53bdafcbc1a8ad03a40c030d0c344b233d0aa68cb9f395f6be810b1e29879830d4c0c7
54fb6bd9d9c833d6d13058850a02703ad9814de51a90a7

◼142498606088.AccessLogs.Activity_001.zip:

MD5- b090b56ab382ba8e56bab6da150305ba
SHA512-
09a80f840334b8359ec5f34eb7fbb352eeb67a29adccb9fa0b747311ef12f12fbf3221e2b93d8bc1a7c
62b39e5dcebe49a2bc129d124d6c2f0c46a4d6cc41cd3

◼142498606088.AccessLogs.Devices_001.zip:

MD5- f57c12894f5bde7d4715638b119c7424
SHA512-
755a162bfc66ceb89b2838e83d91147c43bb63565f1bfbe0952e90a0e62fe5593f22da2d14e89e42b

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

85ad8192c6f1788bfbc6828d2b9950542b2d9bc4ee80084

████ 142498606088.GoogleAccount.SubscriberInfo_001.zip:

MD5- 562d5d5b962740df39d1892d76294059
SHA512-
6474f4683308081272a5f91daf52042f7cf8c8ceb8edae57108c96dc6a63c0d657c8d72cae4c78aa96
f7feb0c089264397328d951602b0f215a24004dcca432f

████ 42498606088.Preserved.GoogleAccount.SubscriberInfo_001.zip:

MD5- 96e58a83a45cd323c8f53a13f02295f8
SHA512-
c12e3cc0c6fd7ce49fedaaa851f018593544404c25a9e00a09d3244f0ad9483ca9fcff5abd5db7aa936
41d08a7737612539c382b826743c46c5edc05e97a4c3d

████ LinkedbySMS:SECONDARY.pdf:

MD5- 39d75a81f085a18ca3c38d3b8f69707a
SHA512-
df77b281af2784cbd86c124b217422c7bc50aa4bca7ed7b08573391b50390fec0c7244fdf74714bdfc
dec75366e7c795c3093a4451a2f3d4cd6c324bb8c82a69

████ @gmail.com-AccountsLinkedByCookies.txt:

MD5- 3e01da7ca6ad818a53372f96c1426704
SHA512-
c70242a32de0aa845510ca9b8c702044b14c03f82a4e5440d4b539572866ac3ed6dd164fd67c4e53c
325a334b17cd82b490c30879adb4f01d676992d1cb87c33

████ @gmail.com.Gmail.Headers.mbox:

MD5- 375014734bba4e3dab1b44bb81d69559
SHA512-
414c34f05408a53955c0566d9d914e2d9598e18564a2cd1d40c895ac7b1b765f09389156f322c84af
65ac366a8620b064b9104c309179001ff905eeff87dc9fc

kimberley.vertanen.187617782533.AccessLogs.Activity_001.zip:

MD5- 814911e95f77ac5c9f1fa4680825b0d2
SHA512-
e688041edf5f6937bb36ffdd6e30ac1acecba4edd24c464f9cd4b9fe4cf5feb1b57a036802264699931
304dd4d9c463bc2f0198cfcc54622a7cb4026bf4f7f30

kimberley.vertanen.187617782533.AccessLogs.Devices_001.zip:

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

MD5- e1b4dca8752144473270ac0df8feb7d5
SHA512-
4b7f8d39cd268f7a8f31b4857971c2c7487cf4d9e975505029fed7a7951a44f3526c2589339fd06351
b1225a83bd427ebbc834c9dfddec8d7349e3853a2f0acd

kimberley.vertanen.187617782533.GoogleAccount.SubscriberInfo_001.zip:

MD5- 4ff7ed29f58986545aa5b9d7dfbb0c6e
SHA512-
f1f36fa78c69a1330a617cd356b596e8bac96bf7c88539af6c75f5f1ca60291aa6a66d480a94c89078
2d59885f0e1a034729b96b21afe9e165157a1ec1798bcf

kimberley.vertanen.LinkedByCreationIP.pdf:

MD5- c302fbf7b703d3faaa5770b083ca3986
SHA512-
f08ab2d3b4f0cb2693034958dffb2e9e9c31d42a7cff4760384f6fb6b2e2e47f405e8a69b0437da822
454b8e76c4dc91e1b2012a9358189910c2fee940b9457e

kimberley.vertanen.LinkedbySMS:SECONDARY.pdf:

MD5- 4fbabfc15da90fd41c1ad31cd1dfdf9e
SHA512-
a30ba0e872ae5ca4290a90633e31b824808adc448e084469d61d10b43515c8d5438de789389c9a08
c325aad2b2f902fc0678a0a3c130460daf340c4310443a60

kimberley.vertanen@gmail.com-AccountsLinkedByCookies.txt:

MD5- 385cca1b9b4f4287da06bb2cbb79303c
SHA512-
ef029fb1bd1f1738a83a2681fb8cbe6a1ec3abe301a2587d3ede474f513453a11bf31de24d9600fdb9
c78f82b42ff56556f2043b3318e7f8604cd6aba6e6925d

kimberley.vertanen@gmail.com.Gmail.Headers.mbox:

MD5- 952c1e5761528247dbab650105fb2aca
SHA512-
1a70548dfb02de509c52da7e7a4b50310946acaaf2c235a1cb5a17a24b1cfdc6ea12eaed0d87587bc3
38022aaff0c73f19ed1f9ef6ad57990fc6b47550d3372a

logisticsmtew.1030836592998.AccessLogs.Activity.zip:

MD5- a3a22f586b041dd3953af98a11a4cca0
SHA512-
82499e7f6cb1154529c83d3abf68b5d89ce14af4adce3a952b5de2110dc2def57a01bf6b3b34f6ea11
dae2feecc5d7a163dcd244af625b01b3ad18b66fa43a01

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

logisticsmtew.1030836592998.AccessLogs.Devices.zip:

MD5- 11b1188b0013a92c7b392d99e58c9b56
SHA512-
7729004ed1b22ac213ef3fe74d2424ff0922f52ee5436d26002533ba60bf9092ba61783768a656615
d5c12db42134dea0cfe7657e9f4f5819c9a8c7fd7e7648d

logisticsmtew.1030836592998.GoogleAccount.SubscriberInfo_001.zip:

MD5- cbd3c8029ddea74e4c66a2c71f067c72
SHA512-
1ba67a4d968eb234168ad3df655e15f5034c0589f7e61fb8eb67dc8bf4de0c937b780ccd80ffd905d0
05a2985a1f327a3a59ca21ff3b179894c05eb8c5eddf75

logisticsmtew.LinkedbySMS:SECONDARY.pdf:

MD5- 567afdc4690dfda8e5b39ac41bb56687
SHA512-
7017a3c53f91885b3fc50006458f5dab106c00b2da6f46a9217009bcd6cdcb211f79830bc0c73831d
6207138ccc2073f8d969b251dbb73ec7555dc849c34dcbb

logisticsmtew@gmail.com-AccountsLinkedByCookies.txt:

MD5- 864ee778aa20654a407384cb6b9859ad
SHA512-
dfbecf13e32a8ca7be4d3cf5ab009ba6fe524102281c4c1dea96438bf58d67f799ef4d4f6c5d1e54ffe0
0c4444ccfc0b54ea9444c0484214a3256f7b5e1a7de6

logisticsmtew@gmail.com.Gmail.Headers.mbox:

MD5- ab0881fd3f92198fb874d06970797741
SHA512-
0ccfa40517348db1d0262faeaa686663555c7050575fd3284c48f91472c1e93261b80f3b77ff32be97
03565cb5e7efdf78fb905d958872d4f8a3c01395d868dd

█████████ 5490350078.AccessLogs.Activity_001.zip:

MD5- b1ceea60667eda91874eff6e66fc4f44
SHA512-
c3d5fe4bf6b9ce6dddb0026a2608e3441a32f528094e8eb6d9a12032cb0a4caf22c16ec381dc040c5d
08dd0ae3a8bff12fdb2a24d8d501a9b94b4155a7fc2242

█████████ 5490350078.AccessLogs.Devices_001.zip:

MD5- 00eeb256f2e36a2b9ee90790d10a7cb8

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

SHA512-
34c667d9c57385c3d71d3ccd79fd6bf9ba1ab7a6bbf5da3adcafe9decf73d84c12cbacf6ea452adf733
f3282841d8ea957db8f35de616b0a3af2e9b1ab6d0f22

_____5490350078.GoogleAccount.SubscriberInfo_001.zip:

MD5- 7a18e3983261a4e357049685de5fdbdd
SHA512-
dd2eb4de480f1d4ddc97bfaa6619db580d4d5c673cd37a3f651248bd7d387d4aa7aae4922361a2882
7a4df0e9475a1219bb41a31f267c9edc2527a1eaedb919e

_____nkedbySMS:SECONDARY.pdf:

MD5- a8c779e67a4f95476cca0b00184a7834
SHA512-
6c0d5521c24b518e47ea1d97f04abce347f5c817aa3d04fd0e6fdd39c5465b0e529fa61cfa4e1c147a
5515af3e2765c9e50f2ee71be006c1c777f2e6ef50f76c

_____@gmail.com-AccountsLinkedByCookies.txt:

MD5- 00689e81911f16dbf8ab1ae03a4ec388
SHA512-
cec3e14704f2cde73ad01c82f0d99bb8f6c093d0675c9a923e61c8a51dfa151fa08a2304b7adbd83ac
e0d3a5deeb1df518667cce258248e69f4909ca6c578d1c

_____n@gmail.com.Gmail.Headers.mbox:

MD5- d2eb5eb0007ca909e2c13c67c34081b6
SHA512-
82162c2015b9e35fafce1a5079cb26ab047789ce1c262b26f37344c09a3ab14b3929a9ddee2a59134
ca8034fff57f95a813c476819f57052ba2145be68c81db7

_____1022501166043.AccessLogs.Activity_001.zip:

MD5- 9b6be25455bd2d9dd26d5bdb554bdcb5
SHA512-
28f9ea1165bb69182159a95bcc94edbfbb035145f6ab642835122b565388da5494fd652e81f9155d4
b00a210d3ff28c32030d425c93297c0596dd73a718fc73c

_____1022501166043.AccessLogs.Devices_001.zip:

MD5- 5fd19492dfcb40b24905258d2132c0a9
SHA512-
85e26ae6201396bc9a764109386d6d2d743dfa744020df1ec5c5403916c73d06890c6931c124f1c1c
20a3d4710a947efba455d340c30ffd2b8f39a139aa77b47

ORD_0001970

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

██████ 1022501166043.GoogleAccount.SubscriberInfo_001.zip:

MD5- ea540d143afe920dda29144783bdefeb
SHA512-
5b20ffd13f47326f37cfeb12e95a35ef552e2889870f352a0e8f8fcd56503a2f75f8610a73a56205367
2ee9ce2aef02aa3fba4b343e68a076ee8de8de82000ce

██████.1022501166043.Preserved.GoogleAccount.SubscriberInfo_001.zip:

MD5- e225f8a6a04ea59d3587e536c4793e1e
SHA512-
7cd78e5b55a7ba7732a71a991401d56a3e6273c00f89f4bb3965a47735090b8e2128ff94bec60d26a
8cfb5770133ba106efe29baecba6daac8b4d8adc7d73895

██████.LinkedByCreationIP.pdf:

MD5- 71fad3d3fd0ea5f69553f90b2208bec2
SHA512-
0c008b3d0ec62edaacdebd2e2b1c2655befe3c1d6f45a8c546476119b4987daacb756f176adfe60d72
7c338495452beb3c0f751a5681997b7eccad17d6d98110

██████.LinkedbySMS:SECONDARY.pdf:

MD5- 4f573666fe079a8dbfa66bf4c22be4a7
SHA512-
702aa9f730db00e2ae1e2fe061a25bbee75ab05f997ece08d838a722a77ff903f7c428dcbddc15a250f
6cb8477bd683b542f81825791c66f634e8915e1d431e8

██████gmail.com-AccountsLinkedByCookies.txt:

MD5- ef2311a2b92d2dd0a18d093a70eed9ce
SHA512-
a459417a18fcff1495fea9f3873b103a7fe5fe9b58ad168e2de152c43a5f81422d3806fb891a8660772
58f22eb50733a618149c08b70e4e28f63ffd6b9f4bbdb

██████@gmail.com.Gmail.Headers.mbox:

MD5- aaadd30ce96d7b375d763c37a3049f04
SHA512-
10825142df0df5887fe2ee0c16da6219b81c727104ac66bb13a94bfc4456e6b624237b7af3ac53930
78c7b6bee4bc8871b412c3210cd7a3b26ff3d1bb8d2a930

mtcw22.400100357083.AccessLogs.Activity_001.zip:

MD5- ee5cc41060eeb6dc02391a333de4fb32
SHA512-

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

**Google**

USLawEnforcement@google.com

www.google.com

76cdef7f3f4197075b8aa2d66a1924363a63e66fd75001d8629f41168f11fc00803289e5ab443a7b30
5e3013f98f7e98e94611bbf90adec474892c81ee9febd3

mtew22.400100357083.AccessLogs.Devices_001.zip:

MD5- 4cec9bdd576ec33b506d0711598d2af4
SHA512-
be8b6a4b5a3e81391fffee4dd382d3a1a3086c4649ea5138d6e5f32a4e052b4b71c0538cecf76bf59d
6024cf1c5ee57443a71916e1ba3d740e5196a180e6bd18

mtew22.400100357083.GoogleAccount.SubscriberInfo_001.zip:

MD5- 7c7106983b1f8d6823f004da8712f5c2
SHA512-
1333daecec25d2dc8b927b56d7de316bdfd18aa57c37f22b3e4f0da2fbba33ed4e593d636e99c8f94a
d1f6d1b1700dcc44146aed411b06043d0a53b6b490e18e

mtew22.LinkedbySMS:SECONDARY.pdf:

MD5- 2986561aa9504316a439c87e7daf3f4e
SHA512-
3ceefe83550c0590cdbb4dae8ff37b0562c6814e19c1a761accf0c003f9d804a5a8ad3b5056298ec3c
5401d57676e089952fdcf429fbaddbdd7f4500fae13f4e

mtew22@gmail.com-AccountsLinkedByCookies.txt:

MD5- 7949b56adf298676d3c1798538cce1ec
SHA512-
9ca5a764e207951414c5607b5358512e2ea216004ee6ddfe72594071471246004289a4dc7ee797e5
26887977e00b80af6dc12212cf351eaf375efee18851dba4

mtew22@gmail.com.Gmail.Headers.mbox:

MD5- e3b8a546396ace50db582b65e259d897
SHA512-
03d4ee47c41febbb1223adc6f1ae88f324ec79b35eeef94ae13136da21fb855cfd9cf4af1818320587c
80ccaa32644379c46c0ae9258a7d18bacc422f97dae89

tewmichael8.150336040280.AccessLogs.Activity_001.zip:

MD5- 2bf2e47ea2a442273979965ff80bd97b
SHA512-
d13ee504c08e1e05b21522d301d9f958baf9b960f50a0f9c94b1e7ce324cbcdd7167cb5ce873d8cf02
7ae065a8c3b725559dbbf197326b51bd5b2c947e28c5fa

tewmichael8.150336040280.AccessLogs.Devices_001.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- bd4bae82e420a6e6ff57631199d85367
SHA512-
0379c4c71d4f40e120f8b07c046e042ea4f1cf51c9eb71473317a3bd67fb00eff24b47ad27dbeffdcce
420ac73137d922d385305f3376677cf70a6db356e4ca4

tewmichael8.150336040280.GoogleAccount.SubscriberInfo_001.zip:

MD5- 01ad037093e300409dbb45939a213c72
SHA512-
909e66afc78014bb35268f32c302b74e7e4fd6545da6e48f18c8b0c78a6ff7d6b9fa084211929bc440
133f20b7cbadcc7fa4e4374e3b7177fda4ae8fb4216acc

tewmichael8.LinkedbySMS:SECONDARY.pdf:

MD5- e43e0e14d940852a1722efd09639c87c
SHA512-
efffbab14563cea619f53bd83c609686831d8cbe7bb75aff4d5e33fc157275cf136b326f6f05bfd32d2
9f85d45052aa4590e696c8a0c610af6e122d013387a18

tewmichael8@gmail.com-AccountsLinkedByCookies.txt:

MD5- 64553a85f0024f0554ffe765e1db0b93
SHA512-
746bb2ffc5fbf29e3a7f67b52d1b11d0fd043e391363507f03cf82475385dff87948d014b79240956a
2b06f01de33bce53146bbc2e5e6d5eef766e01a50850df

tewmichael8@gmail.com.Gmail.Headers.mbox:

MD5- 40dd7a078c716c81d0b29d363e11da53
SHA512-
ebb6ab20c9cd272114e79f2ffc5123f210b77c1401c0e547f131d4678f3e40c5c0668323be15144ba1
9a33421374aa7dae634a3b9c251d4f7a633f2160222585

tewtrading1979.732457921988.AccessLogs.Activity.zip:

MD5- dacb18ceb46c08c7693bd6bedfd92ca6
SHA512-
633245283cb4dba770af175c606c7aad7c12c2d41362e471dd87b7d9e6dfddb5546696233f7f82373
cf94b237987bcd9346678dbbc01b7b3f3f35d9689be61ba

tewtrading1979.732457921988.AccessLogs.Devices.zip:

MD5- 537c6a6b514c73387697113d0dfb7bea
SHA512-
19c8f40e3d1cd20d8af3f9959a38775f1e51eea92c268008fd5fdc5ad077e58999a06c228b95b480e4

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

5f09b404d6972c9da3668dd23dc26195c033f8202008c3

tewtrading1979.732457921988.GoogleAccount.SubscriberInfo_001.zip:

MD5- eb303d3435ab8c6da05abb0fe0e16194
SHA512-
bf518d31b8360d17520d154a94013003e2f61868a864dc8135ad4387963dae0a16d58e4647454f1e
5a3f4f5973aaeee7a7ea008244d47c6fc7caee46f57863ea

tewtrading1979.LinkedbySMS:SECONDARY.pdf:

MD5- 6b090147588e6a9b8a4f4926add9fd24
SHA512-
c009e6bddc24cfc7c51a5dabd6a4950e759530c28eda6945d21fe642bb803ebb851009d8d78911f11
521dce751405af71c1a4c3a97c6743d20cb93b19bd580de

tewtrading1979@gmail.com-AccountsLinkedByCookies.txt:

MD5- 5b9a25103c5ab37ae0d3877a1db2b1f1
SHA512-
0f162f3ef22bde681ed76a3f10ad1c164809a0558c411b470049968aa77682f48e62a5b491769a26d
89774444c3ee01aeff3fe2ab9cffb86f2c5c998c9ea23b2

tewtrading1979@gmail.com.Gmail.Headers.mbox:

MD5- cd008162532ad904480a328c349604d6
SHA512-
898e245aa4ac54aa000839d742695e8063617725e86ad33109ef001a2b4534c3f292d568e2cfa9e0f
07eb61e06e3b33dc9fc2d2852ff03024c30baf5d82965a9

▉▉▉▉▉91304389570.AccessLogs.Activity_001.zip:

MD5- 160997e221782562dafb1d63259ecb97
SHA512-
59dadb467bb2c6b073df5b24a581e0068f0ccf19b1e66770d02fb0c2e2c471c8c4db547dbb1d94f97
431bdeade023aba597551056441105b131b5221ae0e39e8

▉▉▉▉▉91304389570.AccessLogs.Devices_001.zip:

MD5- 0294b989f53eaea36e2f14ad1357b7c6
SHA512-
d80ec72b94a5587b62558f8f8bc3ab8ec29947915a22525efd2b0aa4166126086934c5c843a5014cf
04602070fd88ca63e1cd7686868d890ff3cb7c13d97b875

▉▉▉▉▉691304389570.GoogleAccount.SubscriberInfo_001.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- 28df9ce5774d42419dbab65e07fb640e
SHA512-
08a381af739c909b3c89a7eb768e157818f8ce80910e0378c12ace4c5ad8866cf5726adecddb34891
0fd8ab91099fd7bc00e79ce03a7e0bff09c71cabd7e7667

LinkedByCreationIP.pdf:

MD5- 06c325805851193121dd0fb6fb6de989
SHA512-
e503a47f6c415d8514d87a9679bd68b6ab6a11ef97a7149d2346f4dede21e00e5d8c2f199930ec1f5
149344a05e89309f6ba942ef83e7791a8f30c6f06b2a242

LinkedbySMS:SECONDARY.pdf:

MD5- e6dfbad8a75f81ed3836afe20d6cd7aa
SHA512-
0cde048e793cd223e09403e8f3cccce310f23b8210534568c32e293c3d568c74726393e41422fb39ce
5cf2b2ff5963950469ba62cd7bd20ef2b815f45ac2a83bc

@gmail.com-AccountsLinkedByCookies.txt:

MD5- e1d37adfdc0e158d2fe25dc2f1b527b3
SHA512-
12956fbfe97c86e73a698c8668229c4d0a96a8624050ad4f786310c630f63ededcde9f3cb742ae3e16
54cea9c6bd6a39c7284804ec6369cafb784d98f8add183

@gmail.com.Gmail.Headers.mbox:

MD5- 71033301d22e34abb29e543915d2258b
SHA512-
e4527bebbbd7c6e812948989023055227ae963cef60a5333031dd24644855e57689a118554a8e3ae
1c82ac380f83a0e866a083ef9e84d1c37c23e424e1c69fd4

vtleycap.860166573900.AccessLogs.Activity_001.zip:

MD5- 6bfb96c7bf9ba1a10ac3d448245b9f29
SHA512-
cd4ddbb220e02acbab6f6efd7b3f3c1ad89c9dd3539f18a560c8d8f7a3d870d2ddc0bdac7d6c2267a3
eecd38a5fb29711e4f20dbdda26db544266f988eadbc3c

vtleycap.860166573900.AccessLogs.Devices_001.zip:

MD5- ef9a79da3cd0efcb21e0bb03a572448f
SHA512-
68015cd92f61547c2268c7ca9f4730c8c64e7307ceb832751b65f465a1f1eb8a6a9384548b2011776
e0e07c048a354b4773a8777d9c4c8552c12e3e1745fa2d5

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

vtleycap.860166573900.GoogleAccount.SubscriberInfo_001.zip:

MD5- 209946c100334e6235857b2a7b10e366
SHA512-
8d031c396cb6deebb706499e8390ac49d12d7255a6531c4a9488690c71ccb25856b69d944a2c2b06
1ce7f0952e0909b046a04541cb2207c379f7173e3b2521e6

vtleycap.LinkedByCreationIP.pdf:

MD5- 1381c3c7831cd8cbe530a7c6c3ef62d5
SHA512-
3e1a46ded49080453dc5fe445bebe974628a739e3156f224f0dbd0ede9e55f7bb883efaec7fbf1f8353
18896466ca4c5dd2e7c823057665493fc09ae5259f14b

vtleycap.LinkedbySMS:SECONDARY.pdf:

MD5- 6b0edc11ec1a20aa11ee06434feb8608
SHA512-
f756bad7797b9fcc49491945029f82fa9545a7a46c172b9ae5096dfaef340b736fe01c60dca026bba8
e86151ce284dbac083d96919bb86dc2f4abab92d51555a

vtleycap@gmail.com-AccountsLinkedByCookies.txt:

MD5- 7aeaddc9f2cddade83f8a40e047dbbf4
SHA512-
ae555d3380cbf82ca46ef30c54c7434deb3b50ad47485f5c218f3589899da3a5fe4d739b74e9a10079
3067527a18bdf6716c6325c77300c4865970fdcb7e02ab

vtleycap@gmail.com.Gmail.Headers.mbox:

MD5- 0ce1bf13f4fa7066287f7b64f0611141
SHA512-
79b751cc6979550e3ca28c17ff32d5085e787b084b0f29fd644c74d9c424c16d1e72833ba938debc8
81f49bb15e160b7574e1545459c79f6b2c343fd91b67534

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

07/23/20

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

**Re: 2703(d) Order or Equivalent dated July 10, 2020 (Google Ref. No. 3855397)**

Dear Special Agent Palmer:

Pursuant to the 2703(d) Order or Equivalent issued in the above-referenced matter, we
have conducted a diligent search for documents and information accessible on Google's systems
that are responsive to your request. Our response is made in accordance with state and federal
law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible
from our system associated with the Google account(s), ██████████████████████████
████████████████████████████████████████████████████████████████████, as
specified in the 2703(d) Order or Equivalent. We have also included a signed Certificate of
Authenticity which includes a list of hash values that correspond to each file contained in the
production. Google may not retain a copy of this production but does endeavor to keep a list of
the files and their respective hash values. To the extent any document provided herein contains
information exceeding the scope of your request, protected from disclosure or otherwise not
subject to production, if at all, we have redacted such information or removed such data fields.

Pursuant to your request for related Google account(s) linked by creation IP address,
contained in this production is responsive data pertaining to the active Google account(s) that
accepted the Terms of Service using the same IP address as *VTLEYCAP, MIKEMORA9,
KIMBERLEY.VERTANEN, VERTANEN* within +/- 8 days of the Terms of Service acceptance
date.

Pursuant to your request for related Google account(s) linked by creation IP address, we
did not find any responsive records of active Google account(s) that accepted the Terms of
Service using the same IP address as ████████████████████████████████████████
████████████████████████████████████████████████████████████████ within
+/- 8 days of the Terms of Service acceptance date.

Please note that Google Pay service data is under the control of Google Payment
Corporation. Any request for such data must be specifically addressed to Google Payment
Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from
you of the time and date of the appearance, the scope of testimony, any Google Reference
Number(s) associated with the case, and the travel for the appearance at least one week in



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1124

OR215

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

Nikki Adeli
Google Legal Investigations Support



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

### CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.     I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.     I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.     Google provides Internet-based services.

4.     Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s) ███████████████████████████████████

████████████████████████████████, with Google Ref. No. 3855397
("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the 2703(d) Order or Equivalent.

5.     The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.     The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s  Nikki Adeli_____                    Date: 07/23/20
(Signature of Records Custodian)


     Nikki Adeli
(Name of Records Custodian)



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## Attachment A: Hash Values for Production Files (Google Ref. No. 3855397)

███████████ 907074630458.AccessLogs.Activity_001.zip:

MD5- 5c1c122a07eeb93bc2276c6186afea3a
SHA512-
591afe597a592fa7b9fe3b647a3f311ae2950bc673a00f49d79b8b2c699a7857a773acd9bd01b2f0fc
50fe7b9ad9b35ff9b82c9341ec3df6b57232798e1518ce

███████████ 907074630458.AccessLogs.Devices_001.zip:

MD5- 9ac023691c14975db67ea2e5bb982d8e
SHA512-
6640b5ed3e88fc4184eafe97d8059919b8856f9567e8368afb6bbff5df9004a62b83af74cf6431d334
7690d5e33f9377da06ecad2b654ec674823655dc7d57ea

███████████ 907074630458.GoogleAccount.SubscriberInfo_001.zip:

MD5- e3e0fabb8c94108883d769cf347a44d5
SHA512-
af5e895f01ad3c91bc0e502ccbc9f9642ca54845cbd8af351acf2a1eb138fad8c4f18a03d95c36b17c9
5d7c6aff79fd709d65c751bc65d0177c4ac0a5139c3f2

███████████ .LinkedbySMS:SECONDARY.pdf:

MD5- f08a9757ed5b6cdf207985e66fa57a99
SHA512-
378546e4baec301ba9e3720dfd2a4e75da8711ec15c8218fd77745d2587c033672760689161e2749
8fa23d4288676e36742b1908723c79716bbde8d79242dc25

███████████ @gmail.com-AccountsLinkedByCookies.txt:

MD5- af7a874dc732a1397c4af90439cde18f
SHA512-
53c0cc184caff1b74ac79b8b8af5fdeaa18f55196bdf740bfeac37defefa947ee17bb9c2b2364ea37b74
c5358acd2a0bbe9aa6ac994d2257db7fafda23fc75b7

███████████ ts@gmail.com.Gmail.Headers.mbox:

MD5- 4622d7b9bc01dfe5951907a8a113eab7
SHA512-
98a2bc1463e7586077155b3a0f6bedbb477047818b6f5f5f26d703280a5755b39c754b63ac00ec032
e0f97c052dd5fb11c45d2c4ac19d221f06c58eb70fefefa

███████████ .181362297242.AccessLogs.Activity_001.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

MD5- 2636c2095b933455ef995d71d81e1f36
SHA512-
3fdf55a441f50d8514c477899fe24e1d0efea363d5aa906b10e8b6eecba183585358196d0ff4636519
4449e58d38cfa335447a1878a33dca93dbd82b89e0a44a

[  ]181362297242.AccessLogs.Devices_001.zip:

MD5- 3ae9b538d8a3483eee8d79e87df52672
SHA512-
e200789e9b7a6763dda690e7a559250097612efb4ec342ad405cc6c18f713a6ee1e8fe3eef61af266af
2f49896df3a5d62e1f136df8fe27ef762e10e74ef55f1

[  ].181362297242.GoogleAccount.SubscriberInfo_001.zip:

MD5- b48391252b83d304a42990e56e8dbe28
SHA512-
e588a2eb39661adf8cfe8e22d8ed61b3b5f775a080503a6115af655b50524776a8483f665f7faab1ba
eda2aca9ca55f303324bb7d2afb8982e58ef29354f2b17

[  ]nkedbySMS:SECONDARY.pdf:

MD5- 8984ab88dd56d6a4da148b13fa893ecb
SHA512-
fcf206fcbb74e22e0702e840f527b92c9040548f59ce8e23d29e9bff55a1b8a9b1747cd4e7c7054ab0
af515375da4747b53bac6e1e01c2baaf1e22b53a92eb5b

[  ]@gmail.com.Gmail.Headers.mbox:

MD5- 66b624500f955dfb08c4016c13fd0c8d
SHA512-
44ffe274c0ea53bdafcbc1a8ad03a40c030d0c344b233d0aa68cb9f395f6be810b1e29879830d4c0c7
54fb6bd9d9c833d6d13058850a02703ad9814de51a90a7

[  ].142498606088.AccessLogs.Activity_001.zip:

MD5- b090b56ab382ba8e56bab6da150305ba
SHA512-
09a80f840334b8359ec5f34cb7fbb352ceb67a29adccb9fa0b747311ef12f12fbf3221c2b93d8bc1a7c
62b39e5dcebe49a2bc129d124d6c2f0e46a4d6cc41cd3

[  ].142498606088.AccessLogs.Devices_001.zip:

MD5- f57c12894f5bdc7d4715638b119c7424
SHA512-
755a162bfc66ceb89b2838e83d91147c43bb63565f1bfbe0952e90a0e62fe5593f22da2d14e89e42b

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

**Google**

USLawEnforcement@google.com
www.google.com

85ad8192c6f1788bfbc6828d2b9950542b2d9bc4ee80084

⬛142498606088.GoogleAccount.SubscriberInfo_001.zip:

MD5- 562d5d5b962740df39d1892d76294059
SHA512-
6474f4683308081272a5f91daf52042f7cf8c8ceb8edae57108c96dc6a63c0d657c8d72cae4c78aa96
f7feb0c089264397328d951602b0f215a24004dcca432f

⬛.142498606088.Preserved.GoogleAccount.SubscriberInfo_001.zip:

MD5- 96e58a83a45cd323c8f53a13f02295f8
SHA512-
c12e3ec0c6fd7ce49fedaaa851f018593544404c25a9e00a09d3244f0ad9483ca9fcff5abd5db7aa936
41d08a7737612539c382b826743c46c5edc05e97a4c3d

⬛LinkedbySMS:SECONDARY.pdf:

MD5- 39d75a81f085a18ca3c38d3b8f69707a
SHA512-
df77b281af2784cbd86c124b217422c7bc50aa4bca7ed7b08573391b50390fec0c7244fdf74714bdfc
dec75366e7c795c3093a4451a2f3d4cd6c324bb8c82a69

⬛a@gmail.com-AccountsLinkedByCookies.txt:

MD5- 3e01da7ca6ad818a53372f96e1426704
SHA512-
c70242a32de0aa845510ca9b8c702044b14c03f82a4e5440d4b539572866ac3ed6dd164fd67c4e53c
325a334b17cd82b490c30879adb4f01d676992d1cb87e33

⬛a@gmail.com.Gmail.Headers.mbox:

MD5- 375014734bba4e3dab1b44bb81d69559
SHA512-
414c34f05408a53955c0566d9d914e2d9598e18564a2cd1d40c895ac7b1b765f09389156f322c84af
65ac366a8620b064b9104c309179001ff905eeff87dc9fe

kimberley.vertanen.187617782533.AccessLogs.Activity_001.zip:

MD5- 814911e95f77ac5e9f1fa4680825b0d2
SHA512-
e688041edf5f6937bb36ffdd6e30ac1acecba4edd24e464f9cd4b9fe4cf5feb1b57a036802264699931
304dd4d9e463bc2f0198efcc54622a7cb4026bf4f7f30

kimberley.vertanen.187617782533.AccessLogs.Devices_001.zip:

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- e1b4dca8752144473270ac0df8feb7d5
SHA512-
4b7f8d39cd268f7a8f31b4857971c2c7487cf4d9e975505029fed7a7951a44f3526c2589339fd06351
b1225a83bd427ebbc834c9dfddec8d7349e3853a2f0acd

kimberley.vertanen.187617782533.GoogleAccount.SubscriberInfo_001.zip:

MD5- 4ff7ed29f58986545aa5b9d7dfbb0c6e
SHA512-
f1f36fa78c69a1330a617cd356b596e8bac96bf7c88539af6c75f5f1ca60291aa6a66d480a94c89078
2d59885f0e1a034729b96b21afe9e165157a1ec1798bcf

kimberley.vertanen.LinkedByCreationIP.pdf:

MD5- c302fbf7b703d3faaa5770b083ca3986
SHA512-
f08ab2d3b4f0cb2693034958dffb2e9e9c31d42a7cff4760384f6fb6b2e2e47f405e8a69b0437da822
454b8e76c4dc91e1b2012a9358189910c2fee940b9457e

kimberley.vertanen.LinkedbySMS:SECONDARY.pdf:

MD5- 4fbabfc15da90fd41c1ad31cd1dfdf9e
SHA512-
a30ba0e872ae5ca4290a90633e31b824808adc448e084469d61d10b43515c8d5438de789389c9a08
c325aad2b2f902fc0678a0a3c130460daf340c4310443a60

kimberley.vertanen@gmail.com-AccountsLinkedByCookies.txt:

MD5- 385cca1b9b4f4287da06bb2cbb79303c
SHA512-
ef029fb1bd1f1738a83a2681fb8cbe6a1ec3abe301a2587d3ede474f513453a11bf31de24d9600fdb9
c78f82b42ff56556f2043b3318e7f8604cd6aba6e6925d

kimberley.vertanen@gmail.com.Gmail.Headers.mbox:

MD5- 952c1e5761528247dbab650105fb2aca
SHA512-
1a70548dfb02de509c52da7e7a4b50310946acaaf2c235a1cb5a17a24b1cfdc6ea12eaed0d87587bc3
38022aaff0c73f19ed1f9ef6ad57990fc6b47550d3372a

logisticsmtew.1030836592998.AccessLogs.Activity.zip:

MD5- a3a22f586b041dd3953af98a11a4cca0
SHA512-
82499e7f6cb1154529c83d3abf68b5d89ce14af4adce3a952b5de2110dc2def57a01bf6b3b34f6ea11
dae2feecc5d7a163dcd244af625b01b3ad18b66fa43a01



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

logisticsmtew.1030836592998.AccessLogs.Devices.zip:

MD5- 11b1188b0013a92c7b392d99e58c9b56
SHA512-
7729004ed1b22ac213ef3fe74d2424ff0922f52ee5436d26002533ba60bf9092ba61783768a656615
d5c12db42134dea0cfe7657e9f4f5819c9a8c7fd7e7648d

logisticsmtew.1030836592998.GoogleAccount.SubscriberInfo_001.zip:

MD5- cbd3c8029ddea74e4c66a2c71f067c72
SHA512-
1ba67a4d968eb234168ad3df655e15f5034c0589f7e61fb8eb67dc8bf4de0c937b780ccd80ffd905d0
05a2985a1f327a3a59ca21ff3b179894c05eb8c5eddf75

logisticsmtew.LinkedbySMS:SECONDARY.pdf:

MD5- 567afdc4690dfda8e5b39ac41bb56687
SHA512-
7017a3c53f91885b3fc50006458f5dab106e00b2da6f46a9217009bcd6cdcb211f79830be0e73831d
6207138cce2073f8d969b251dbb73ec7555dc849c34dcbb

logisticsmtew@gmail.com-AccountsLinkedByCookies.txt:

MD5- 864ee778aa20654a407384cb6b9859ad
SHA512-
dfbeef13e32a8ca7be4d3cf5ab009ba6fe524102281c4c1dca96438bf58d67f799ef4d4f6c5d1e54ffe0
0c4444ccfc0b54ea9444c0484214a3256f7b5e1a7de6

logisticsmtew@gmail.com.Gmail.Headers.mbox:

MD5- ab0881fd3f92198fb874d06970797741
SHA512-
0ccfa40517348db1d0262faeaa686663555c7050575fd3284c48f91472c1e93261b80f3b77ff32be97
03565cb5e7efdf78fb905d958872d4f8a3c01395d868dd

██████████████ 5490350078.AccessLogs.Activity_001.zip:

MD5- b1eeea60667cda91874cff6e66fc4f44
SHA512-
c3d5fc4bf6b9ce6dddb0026a2608e3441a32f528094e8eb6d9a12032cb0a4caf22c16ec381dc040c5d
08dd0ae3a8bff12fdb2a24d8d501a9b94b4155a7fc2242

██████████████ 5490350078.AccessLogs.Devices_001.zip:

MD5- 00eeb256f2e36a2b9ee90790d10a7cb8

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

SHA512-
34c667d9c57385c3d71d3ccd79fd6bf9ba1ab7a6bbf5da3adcafe9decf73d84c12cbacf6ea452adf733
f3282841d8ea957db8f35de616b0a3af2e9b1ab6d0f22

▆▆▆▆▆▆5490350078.GoogleAccount.SubscriberInfo_001.zip:

MD5- 7a18c3983261a4e357049685de5fdbdd
SHA512-
dd2eb4de480f1d4ddc97bfaa6619db580d4d5c673cd37a3f651248bd7d387d4aa7aae4922361a2882
7a4df0e9475a1219bb41a31f267c9edc2527a1eaedb919e

▆▆▆▆▆▆LinkedbySMS:SECONDARY.pdf:

MD5- a8c779e67a4f95476cca0b00184a7834
SHA512-
6c0d5521c24b518e47ea1d97f04abce347f5c817aa3d04fd0e6fdd39c5465b0e529fa61cfa4e1c147a
5515af3e2765c9e50f2ee71be006c1c777f2e6ef50f76c

▆▆▆▆▆▆@gmail.com-AccountsLinkedByCookies.txt:

MD5- 00689e81911f16dbf8ab1ae03a4ec388
SHA512-
cec3c14704f2cde73ad01c82f0d99bb8f6c093d0675c9a923e61c8a51dfa151fa08a2304b7adbd83ac
e0d3a5deeb1df518667cee258248e69f4909ca6c578d1c

▆▆▆▆▆▆@gmail.com.Gmail.Headers.mbox:

MD5- d2eb5eb0007ca909e2c13c67c34081b6
SHA512-
82162c2015b9e35fafce1a5079cb26ab047789ce1c262b26f37344c09a3ab14b3929a9ddee2a59134
ca8034fff57f95a813c476819f57052ba2145be68c81db7

▆▆▆▆▆▆1022501166043.AccessLogs.Activity_001.zip:

MD5- 9b6be25455bd2d9dd26d5bdb554bdcb5
SHA512-
28f9ea1165bb69182159a95bcc94edbfbb035145f6ab642835122b565388da5494fd652e81f9155d4
b00a210d3ff28c32030d425c93297c0596dd73a718fc73c

▆▆▆▆▆▆022501166043.AccessLogs.Devices_001.zip:

MD5- 5fd19492dfcb40b24905258d2132c0a9
SHA512-
85c26ac6201396bc9a764109386d6d2d743dfa744020df1ec5c5403916c73d06890c6931c124f1c1c
20a3d4710a947efba455d340c30ffd2b8f39a139aa77b47



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

022501166043.GoogleAccount.SubscriberInfo_001.zip:

MD5- ea540d143afe920dda29144783bdefeb
SHA512-
5b20ffd13f47326f37cfeb12e95a35ef552e2889870f352a0e8f8fcd56503a2f75f8610a73a56205367
2ec9ce2aef02aa3fba4b343e68a076ee8de8de82000ce

.1022501166043.Preserved.GoogleAccount.SubscriberInfo_001.zip:

MD5- e225f8a6a04ea59d3587e536c4793c1e
SHA512-
7cd78c5b55a7ba7732a71a991401d56a3e6273c00f89f4bb3965a47735090b8e2128ff94bec60d26a
8cfb5770133ba106efe29baecba6daac8b4d8adc7d73895

.LinkedByCreationIP.pdf:

MD5- 71fad3d3fd0ea5f69553f90b2208bec2
SHA512-
0c008b3d0ec62edaaedebd2e2b1c2655befc3c1d6f45a8c546476119b4987daacb756f176adfe60d72
7c338495452beb3c0f751a5681997b7eccad17d6d98110

inkedbySMS:SECONDARY.pdf:

MD5- 4f573666fe079a8dbfa66bf4c22be4a7
SHA512-
702aa9f730db00e2ae1e2fe061a25bbee75ab05f997ece08d838a722a77ff903f7c428dcbddc15a250f
6cb8477bd683b542f81825791c66f634e8915e1d431e8

@gmail.com-AccountsLinkedByCookies.txt:

MD5- ef2311a2b92d2dd0a18d093a70eed9ce
SHA512-
a459417a18fcff1495fea9f3873b103a7fe5fe9b58ad168e2de152c43a5f81422d3806fb891a8660772
58f22eb50733a618149c08b70e4e28f63ffd6b9f4bbdb

@gmail.com.Gmail.Headers.mbox:

MD5- aaadd30ce96d7b375d763c37a3049f04
SHA512-
10825142df0df5887fe2ee0c16da6219b81c727104ac66bb13a94bfe4456e6b624237b7af3ac53930
78c7b6bee4bc8871b412c3210cd7a3b26ff3d1bb8d2a930

mtcw22.400100357083.AccessLogs.Activity_001.zip:

MD5- ee5cc41060eeb6dc02391a333de4fb32
SHA512-

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

**Google**

USLawEnforcement@google.com

www.google.com

76cdef7f3f4197075b8aa2d66a1924363a63e66fd75001d8629f41168f11fc00803289e5ab443a7b30
5e3013f98f7e98e94611bbf90adec474892c81ee9febd3

mtew22.400100357083.AccessLogs.Devices_001.zip:

MD5- 4cec9bdd576ec33b506d0711598d2af4
SHA512-
be8b6a4b5a3e81391fffee4dd382d3a1a3086c4649ea5138d6e5f32a4e052b4b71c0538cecf76bf59d
6024cf1c5ee57443a71916e1ba3d740e5196a180e6bd18

mtew22.400100357083.GoogleAccount.SubscriberInfo_001.zip:

MD5- 7c7106983b1f8d6823f004da8712f5c2
SHA512-
1333daccec25d2dc8b927b56d7de316bdfd18aa57c37f22b3e4f0da2fbba33ed4e593d636e99c8f94a
d1f6d1b1700dcc44146aed411b06043d0a53b6b490e18e

mtew22.LinkedbySMS:SECONDARY.pdf:

MD5- 2986561aa9504316a439c87e7daf3f4e
SHA512-
3ceefe83550c0590cdbb4dae8ff37b0562c6814e19c1a761accf0c003f9d804a5a8ad3b5056298ec3c
5401d57676e089952fdcf429fbaddbdd7f4500fae13f4e

mtew22@gmail.com-AccountsLinkedByCookies.txt:

MD5- 7949b56adf298676d3c1798538cce1ec
SHA512-
9ca5a764e207951414c5607b5358512e2ea216004ee6ddfe72594071471246004289a4dc7ee797e5
26887977e00b80af6dc12212cf351eaf375efee18851dba4

mtew22@gmail.com.Gmail.Headers.mbox:

MD5- e3b8a546396ace50db582b65e259d897
SHA512-
03d4ee47c41febbb1223adc6f1ae88f324ec79b35eeef94ae13136da21fb855cfd9cf4af1818320587c
80ccaa32644379c46c0ae9258a7d18bacc422f97dae89

tewmichael8.150336040280.AccessLogs.Activity_001.zip:

MD5- 2bf2e47ea2a442273979965ff80bd97b
SHA512-
d13ee504c08e1e05b21522d301d9f958baf9b960f50a0f9c94b1e7ce324cbcdd7167cb5ce873d8cf02
7ae065a8c3b725559dbbf197326b51bd5b2c947e28c5fa

tewmichael8.150336040280.AccessLogs.Devices_001.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- bd4bae82e420a6e6ff57631199d85367
SHA512-
0379c4c71d4f40e120f8b07c046e042ea4f1cf51c9eb71473317a3bd67fb00eff24b47ad27dbeffdcce
420ac73137d922d385305f3376677cf70a6db356e4ca4

tewmichael8.150336040280.GoogleAccount.SubscriberInfo_001.zip:

MD5- 01ad037093e300409dbb45939a213c72
SHA512-
909e66afc78014bb35268f32c302b74e7e4fd6545da6e48f18c8b0c78a6ff7d6b9fa084211929bc440
133f20b7cbadcc7fa4e4374e3b7177fda4ae8fb4216acc

tewmichael8.LinkedbySMS:SECONDARY.pdf:

MD5- e43e0e14d940852a1722efd09639c87c
SHA512-
efffbab14563cea619f53bd83c609686831d8cbe7bb75aff4d5e33fc157275cf136b326f6f05bfd32d2
9f85d45052aa4590e696c8a0c610af6e122d013387a18

tewmichael8@gmail.com-AccountsLinkedByCookies.txt:

MD5- 64553a85f0024f0554ffe765e1db0b93
SHA512-
746bb2ffc5fbf29e3a7f67b52d1b11d0fd043e391363507f03cf82475385dff87948d014b79240956a
2b06f01de33bce53146bbc2e5e6d5eef766e01a50850df

tewmichael8@gmail.com.Gmail.Headers.mbox:

MD5- 40dd7a078c716c81d0b29d363e11da53
SHA512-
ebb6ab20c9cd272114e79f2ffc5123f210b77c1401c0e547f131d4678f3e40c5c0668323be15144ba1
9a33421374aa7dae634a3b9c251d4f7a633f2160222585

tewtrading1979.732457921988.AccessLogs.Activity.zip:

MD5- dacb18ceb46c08c7693bd6bedfd92ca6
SHA512-
633245283cb4dba770af175c606c7aad7c12c2d41362e471dd87b7d9e6dfddb5546696233f7f82373
cf94b237987bcd9346678dbbc01b7b3f3f35d9689be61ba

tewtrading1979.732457921988.AccessLogs.Devices.zip:

MD5- 537c6a6b514c73387697113d0dfb7bea
SHA512-
19c8f40e3d1cd20d8af3f9959a38775f1e51eea92c268008fd5fdc5ad077e58999a06c228b95b480e4

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

5f09b404d6972c9da3668dd23dc26195c033f8202008c3

tewtrading1979.732457921988.GoogleAccount.SubscriberInfo_001.zip:

MD5- eb303d3435ab8c6da05abb0fe0e16194
SHA512-
bf518d31b8360d17520d154a94013003e2f61868a864dc8135ad4387963dae0a16d58e4647454f1e
5a3f4f5973aaeee7a7ea008244d47c6fc7caee46f57863ea

tewtrading1979.LinkedbySMS:SECONDARY.pdf:

MD5- 6b090147588e6a9b8a4f4926add9fd24
SHA512-
c009e6bddc24cfc7c51a5dabd6a4950e759530c28eda6945d21fe642bb803ebb851009d8d78911f11
521dce751405af71c1a4c3a97c6743d20eb93b19bd580de

tewtrading1979@gmail.com-AccountsLinkedByCookies.txt:

MD5- 5b9a25103c5ab37ae0d3877a1db2b1f1
SHA512-
0f162f3ef22bde681ed76a3f10ad1c164809a0558c411b470049968aa77682f48e62a5b491769a26d
89774444c3ee01aeff3fe2ab9cffb86f2c5c998c9ea23b2

tewtrading1979@gmail.com.Gmail.Headers.mbox:

MD5- cd008162532ad904480a328c349604d6
SHA512-
898e245aa4ac54aa000839d742695e8063617725e86ad33109ef001a2b4534c3f292d568e2cfa9e0f
07eb61e06e3b33dc9fc2d2852ff03024c30baf5d82965a9

███████ 91304389570.AccessLogs.Activity_001.zip:

MD5- 160997e221782562dafb1d63259ecb97
SHA512-
59dadb467bb2c6b073df5b24a581e0068f0ecf19b1e66770d02fb0c2e2c471c8c4db547dbb1d94f97
431bdeade023aba597551056441105b131b5221ae0e39e8

███████.691304389570.AccessLogs.Devices_001.zip:

MD5- 0294b989f53eaea36e2f14ad1357b7c6
SHA512-
d80cc72b94a5587b62558f8f8bc3ab8ec29947915a22525efd2b0aa4166126086934c5c843a5014cf
04602070fd88ca63e1cd7686868d890ff3cb7c13d97b875

███████ 691304389570.GoogleAccount.SubscriberInfo_001.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- 28df9ce5774d42419dbab65e07fb640e
SHA512-
08a381af739c909b3c89a7eb768e157818f8ce80910e0378c12ace4c5ad8866cf5726adecddb34891
0fd8ab91099fd7bc00e79ce03a7e0bff09c71cabd7e7667

.LinkedByCreationIP.pdf:

MD5- 06c325805851193121dd0fb6fb6de989
SHA512-
e503a47f6c415d8514d87a9679bd68b6ab6a11ef97a7149d2346f4dede21e00e5d8c2f199930ec1f5
149344a05e89309f6ba942ef83e7791a8f30c6f06b2a242

inkedbySMS:SECONDARY.pdf:

MD5- e6dfbad8a75f81ed3836afe20d6cd7aa
SHA512-
0cde048e793cd223e09403e8f3ccce310f23b8210534568c32e293c3d568c74726393e41422fb39ce
5cf2b2ff5963950469ba62cd7bd20ef2b815f45ac2a83bc

@gmail.com-AccountsLinkedByCookies.txt:

MD5- e1d37adfdc0e158d2fe25dc2f1b527b3
SHA512-
12956fbfe97c86e73a698c8668229c4d0a96a8624050ad4f786310c630f63ededcde9f3cb742ae3e16
54cea9c6bd6a39c7284804ec6369cafb784d98f8add183

@gmail.com.Gmail.Headers.mbox:

MD5- 71033301d22e34abb29e543915d2258b
SHA512-
e4527bebbbd7c6e812948989023055227ae963cef60a5333031dd24644855e57689a118554a8e3ae
1c82ac380f83a0e866a083ef9e84d1c37c23c424e1c69fd4

vtleycap.860166573900.AccessLogs.Activity_001.zip:

MD5- 6bfb96c7bf9ba1a10ac3d448245b9f29
SHA512-
cd4ddbb220e02acbab6f6efd7b3f3c1ad89c9dd3539f18a560c8d8f7a3d870d2ddc0bdac7d6c2267a3
eecd38a5fb29711e4f20dbdda26db544266f988eadbc3e

vtleycap.860166573900.AccessLogs.Devices_001.zip:

MD5- ef9a79da3cd0efcb21e0bb03a572448f
SHA512-
68015cd92f61547c2268c7ca9f4730c8c64e7307ceb832751b65f465a1f1eb8a6a9384548b2011776
e0e07c048a354b4773a8777d9c4c8552c12e3e1745fa2d5



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

vtleycap.860166573900.GoogleAccount.SubscriberInfo_001.zip:

MD5- 209946c100334e6235857b2a7b10e366
SHA512-
8d031c396cb6deebb706499e8390ac49d12d7255a6531c4a9488690c71ccb25856b69d944a2c2b06
1ce7f0952e0909b046a04541cb2207c379f7173e3b2521e6

vtleycap.LinkedByCreationIP.pdf:

MD5- 1381c3c7831cd8cbe530a7c6c3ef62d5
SHA512-
3e1a46ded49080453dc5fe445bebe974628a739e3156f224f0dbd0ede9e55f7bb883efaec7fbf1f8353
18896466ca4c5dd2e7c823057665493fc09ae5259f14b

vtleycap.LinkedbySMS:SECONDARY.pdf:

MD5- 6b0edc11ec1a20aa11ee06434feb8608
SHA512-
f756bad7797b9fcc49491945029f82fa9545a7a46c172b9ae5096dfaef340b736fe01c60dca026bba8
e86151ce284dbac083d96919bb86dc2f4abab92d51555a

vtleycap@gmail.com-AccountsLinkedByCookies.txt:

MD5- 7aeaddc9f2cddade83f8a40e047dbbf4
SHA512-
ae555d3380cbf82ca46ef30c54c7434deb3b50ad47485f5c218f3589899da3a5fe4d739b74e9a10079
3067527a18bdf6716c6325c77300c4865970fdcb7e02ab

vtleycap@gmail.com.Gmail.Headers.mbox:

MD5- 0ce1bf13f4fa7066287f7b64f0611141
SHA512-
79b751cc6979550e3ca28c17ff32d5085e787b084b0f29fd644c74d9c424c16d1e72833ba938debc8
81f49bb15e160b7574e1545459c79f6b2c343fd91b67534



Google LLC
1600 Amphitheatre Parkway

USLawEnforcement@google.com
Mountain View, California 94043

December 8, 2020

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

> **Re: 2703(d) Order or Equivalent dated September 24, 2020 (Google Ref. No. 4061966)**
>    *19R976*

Dear Special Agent Palmer:

Pursuant to the 2703(d) Order or Equivalent issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google's systems that are responsive to your request. Our response is made in accordance with state and federal law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible from our system associated with the Google account(s), *+14693190152, UNICORNKT1981@GMAIL.COM*, as specified in the 2703(d) Order or Equivalent. We have also included a signed Certificate of Authenticity which includes a list of hash values that correspond to each file contained in the production. Google may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values. To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

Please note that Google Pay service data is under the control of Google Payment Corporation. Any request for such data must be specifically addressed to Google Payment Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from you of the time and date of the appearance, the scope of testimony, any Google Reference Number(s) associated with the case, and the travel for the appearance at least one week in advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act, Google may request reimbursement for reasonable costs incurred in processing your request.

Regards,

Madison Matheus
Google Legal Investigations Support



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1125**

OR                230



Google LLC
1600 Amphitheatre Parkway

USLawEnforcement@google.com
Mountain View, California 94043



Google LLC
1600 Amphitheatre Parkway

USLawEnforcement@google.com
Mountain View, California 94043

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.      I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.      I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.      Google provides Internet-based services.

4.      Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s) *+14693190152, UNICORNKT1981@GMAIL.COM*, with Google Ref. No. 4061966 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the 2703(d) Order or Equivalent.

5.      The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.      The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result.  The accuracy of Google's electronic process and system is regularly verified by Google.

7.      Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_Madison Matheus_____                    Date: December 8, 2020
(Signature of Records Custodian)


     Madison Matheus
(Name of Records Custodian)



Google LLC
1600 Amphitheatre Parkway

USLawEnforcement@google.com
Mountain View, California 94043

## Attachment A: Hash Values for Production Files (Google Ref. No. 4061966)

+14693190152.2016tinacoutney@gmail.com.Voice.txt:

MD5- 70a703175f749db475aabc7026ad9d62
SHA512-
bc9c942c5b352ad69fd7ff6b24a87bf318c0dfe0024aa1778f62100ca1b669eac0f13355d536948ca9
71c762bca0d7e2d65d6ecd68702390f681da0026ed7e26

@gmail.com.Voice.txt:

MD5- 49d068d3e64ce040f45c4285e0a375a3
SHA512-
6dc95864639284d952675bde59295c93c37b21b554d18598355fea0db85384f63e25721ccd3e56ed
358277406d38f3c5b066cf46ddc5c653b4bea28d8406244d

+14693190152.unicornkt1981@gmail.com.Voice.txt:

MD5- 3acce82de19415098a961f3fac17bf57
SHA512-
93a321e41eafbc106b5a6b833d349047b3030a05fc5e6b961fa207d942e0fe6b0fb4bec73eced34e2a
c7fbe9d7a5af7e442b3065dd58c7671b39f30b9eba05f9

unicornkt1981@gmail.com-AccountsLinkedByCookies.txt:

MD5- 572b6de0885d79f03003eed0899d1ecd
SHA512-
e06f6ff7d879b053d6e06fcb51f2c020de9b4b52eb102e18d5d95529bbfaa571d0ebeef897aada2283
b02df82831f123a8475bd25427efc8dd6a8cb0bd404e80

unicornkt1981@gmail.com.74069807580.AccountActivity.Activity_001.zip:

MD5- adf82e26287414f397e13f2ba2ac1398
SHA512-
bbd1bb72c4114a886fcea038c6ab14f06a33d70f42e84920507fc62ba9fa7c26ba3f72f41495b8797e
b363879b4f8a1e53a0e128a14e93f183cd36efcd5846b7

unicornkt1981@gmail.com.74069807580.GoogleAccount.SubscriberInfo_001.zip:

MD5- 6bc7f0de1043e65b1b1545f21e254631
SHA512-
24a18bb69543f38130843f737669459c57a95ca2c58150d31e878d93e373f176c8e853af335733001
b028677371275b54166dabe008a3909b007d58296ab91d1

unicornkt1981@gmail.com.Gmail.Headers.mbox:



Google LLC
1600 Amphitheatre Parkway

USLawEnforcement@google.com
Mountain View, California 94043

MD5- 3903c1ba46c06e05b3c123eedec9e8eb
SHA512-
765fc7a184a6cefbeddf8bbb400f3fa9c0a701038a56a6d7f8aee9a6e5c2415a73d3d2d9b45be90f7f8
a3cb8038583c9492d5be19ef6ee049a83ff7dda2124cc

unicornkt1981@gmail.com.LinkedBy.pdf:

MD5- 3e8fbc54110a8016d1e885afe9de2b52
SHA512-
299d2363665e4b9b2fa824efaf05b742d032e20ce3efa6e551b2e8f4307dcf76fbf38d833ac1d7f0d57
3e43cdae7540b5776f99b315c4c245f0c5967498dbbfd



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

12/07/20

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

**Re: 2703(d) Order or Equivalent dated October 20, 2020 (Google Ref. No.
4124439)**

Dear Special Agent Palmer:

Pursuant to the 2703(d) Order or Equivalent issued in the above-referenced matter, we
have conducted a diligent search for documents and information accessible on Google's systems
that are responsive to your request. Our response is made in accordance with state and federal
law, including the Electronic Communications Privacy Act. See 18 U.S.C. § 2701 et seq.

Accompanying this letter is responsive information to the extent reasonably accessible
from our system associated with the Google account(s), ▇▇▇▇▇▇▇▇
▇▇▇▇▇▇ s specified in the 2703(d) Order or Equivalent. We have also included a signed
Certificate of Authenticity which includes a list of hash values that correspond to each file
contained in the production. Google may not retain a copy of this production but does endeavor to
keep a list of the files and their respective hash values. To the extent any document provided
herein contains information exceeding the scope of your request, protected from disclosure or
otherwise not subject to production, if at all, we have redacted such information or removed such
data fields.

Pursuant to your request for related Google account(s) linked by creation IP address,
contained in this production is responsive data pertaining to the active Google account(s) that
accepted the Terms of Service using the same IP address as ▇▇▇▇▇▇▇▇▇▇▇▇
▇▇▇▇▇▇▇ within +/- 8 days of the Terms of Service acceptance date.

Please note that Google Pay service data is under the control of Google Payment
Corporation. Any request for such data must be specifically addressed to Google Payment
Corporation and can be served through the email address googlepayments@google.com.

For a Google Custodian of Records, we will require a subpoena and confirmation from
you of the time and date of the appearance, the scope of testimony, any Google Reference
Number(s) associated with the case, and the travel for the appearance at least one week in
advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, in accordance with Section 2706 of the Electronic Communications Privacy Act,
Google may request reimbursement for reasonable costs incurred in processing your request.



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1128

OR▇▇▇235



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

Regards,

Luke Morris
Google Legal Investigations Support



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.  I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.  I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.  Google provides Internet-based services.

4.  Attached is a true and correct copy of records pertaining to the Google account-holder(s) identified with account(s)                                        , with Google Ref. No. 4124439 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the 2703(d) Order or Equivalent.

5.  The Document is a record made and retained by Google. Google servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of Google.

6.  The Document is a true duplicate of original records that were generated by Google's electronic process or system that produces an accurate result. The accuracy of Google's electronic process and system is regularly verified by Google.

7.  Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s  Luke Morris_____          Date: 12/07/20
(Signature of Records Custodian)


     Luke Morris
(Name of Records Custodian)

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

## Attachment A: Hash Values for Production Files (Google Ref. No. 4124439)

�no 776301624485.AccountActivity.Activity_001.zip:

MD5- e79b53be8af8cb0aa2ae64922cae5dc8
SHA512-
cd24abd14fb73aa8015011cdaa2fba08fa22b64832ccf1dd3b9b4fef603de6b000109dcffed37957b9
5b5791e0b5de6548a61d816bc433786865048be00e2411

▮.776301624485.AccountActivity.Devices_001.zip:

MD5- 8fd1027b189ab4b358d2a1ffc683371f
SHA512-
c9e8b184f47bd4a647270a2a4686dcdf0ae07a632b8f4300c5930e3ed2de24169fea0cb26aaf54926c
2b0e1adba71b483fe8835b14f49e074798f899a33c0fd7

▮776301624485.GoogleAccount.SubscriberInfo_001.zip:

MD5- adab5401686355f8d16f940bc6364522
SHA512-
55946bf606a0cb4ab77823fd43374d2657c182b9171f88edd6fc78ddc5960a7388c423d803f2875d2
cffd2249b21e5329bf64bf236957d306418dbd874d1cc23

▮@gmail.com.Gmail.Headers.mbox:

MD5- a2daefdd088e35fc3e56d311e37201cc
SHA512-
f337919fd459b87f145da5fe64f39760f0167d212aa65e0db952bb06548834f5f9c78d4b7d6aa0a8d9
8219bc2cdf7ebb04e0d89be09f15016eb14d7d0c594659

▮@gmail.com.LinkedBySMSAndSecondary.LinkedByCreationIP.pdf:

MD5- e18bfd377c51db1312b1089b54678696
SHA512-
cd49dd1bdf0b2d289fc461f67cc1d7f0ab3a9f18830d7c312d255c9cb1929f587519b3f0dd68c28cc0
d0146d4f412e9283fac8c2df664acfee0584d4d7c48cdc

▮962148739471.AccessLogs.Activity_001.Preserved.zip:

MD5- 8e024c5bd88c199838cb18d4c7963103
SHA512-
018cc4af6086b5f9eda44432dc13811e4d3e5cdff04ff009da6820f7828a06c39f77235450a29ffb5db
9459708ca6c54bb0bef0e516f23940f19226163671290

▮962148739471.AccessLogs.Devices_001.Preserved.zip:



Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com

www.google.com

MD5- 0f8d09a2ce50dbeb2efc7c3977a268f0
SHA512-
a7e5c6f6126521d17f46b0cba57b79c8b3b2ed2997bb3b9d2522345b568f0af13940bfad0c6c2b7fc
82b387cba5c8da0d7b9ea3908d83505fe4cebb7f184fcda

962148739471.AccountActivity.Activity_001.zip:

MD5- 167c457dc150014c376af61ffe48756a
SHA512-
7def66dd5ab3f6207f96ecd73632b1dcfb9355b658ce75318e6d5dd7f4bdf3883442667a360b2efbaf
f1df65727ebb7562c539b7c38766f1dddf58d51720790c

962148739471.AccountActivity.Devices_001.zip:

MD5- b2644496bb33d4be609c4040017d2c5f
SHA512-
52f22dfefe5907cbf8c5fe9df0efa587a9cf76707d67748f498361e5c2793c523e770471a2cf767cf448
137fb5b2cac4a35973847efda06d6250e9ecb8d00e82

962148739471.GoogleAccount.SubscriberInfo_001.zip:

MD5- 14d87866ccabf96545131a8d6a30c77f
SHA512-
cc44ac1324874205c77fdf8c1c290795cbba8c7dc6d548337a34b2bab29c8b2947ea0d24cfb0fe587
9f8909a27379db4ce132b457890e013d180dedc0f7cff40

962148739471.Preserved_001.GoogleAccount.SubscriberInfo_001.zi
p:

MD5- 208e61cd6761583d53bbdad4b1c277c2
SHA512-
a0cfe36f6467cf1cd1452ef0696f6b78554051b09a6eaae41a643580226c63ec26e16a908aabe14220
8b073cbebbd41d8dbe26321fcd0e59e62d8a062a0765e5

@gmail.com-AccountsLinkedByCookies.txt:

MD5- 70222cbd963de9777ac75f45fec454d5
SHA512-
9ea04d3f28a386c612775973f608045d5453fd32eb8d36d0b655a73c22a3f051678fbdbba60a7e777
6dd56d76010bf049abeca2cf9069b6e92467828fee60965

e@gmail.com.Gmail.Headers.Preserved.mbox:

MD5- b4e5a862adeb80578b8b5580e37d6228
SHA512-

Google LLC
1600 Amphitheatre Parkway
Mountain View, California 94043

USLawEnforcement@google.com
www.google.com

3767c58b5ad917380a9c01bebd4d303f64361ebe0760bbff97d6ad2391d436cb94c7df8edd825ee17
9180ba42eac75db9a4f23b5cec30a236dbd08228b3fcf13

▮▮▮▮▮▮▮▮▮e@gmail.com.Gmail.Headers.mbox:

MD5- d0e4b0ef6ad8556dd9e98567cfcf187f
SHA512-
894210f8ed2fdad86e0b60d97f4b195fb58ba652e26c600cdadf3dc6bf3da1245da592d9a630420d8
d78effcd3e5783b34854f840cf471c747c8e553074c47f8

▮▮▮▮▮▮▮▮▮@gmail.com.LinkedBySMSAndSecondary.LinkedByCreationIP.pdf:

MD5- 4143f399a02ca93d55964c4d8c8fcab1
SHA512-
6153174be9e85ffbda143351acdaedf698be30c7cde6d7d8e755f78e5268f8dbebdb62c5913908ddf3
bce94b7ab555b3294f8c1ac9d387ff7855a65cce3f403c



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

July 6, 2020

Special Agent Lisa Palmer
Department of the Treasury, IRS-CI
1999 Broadway, 27th Floor
Denver, CO 80202

> Re: ████████ Subpoena dated May 08, 2020 (Internal Ref. No. 3732421)
> *2019R00976*

Dear Special Agent Palmer:

Pursuant to the ████████ Subpoena issued in the above-referenced matter, we have conducted a diligent search for documents and information accessible on Google Payment Corporation's ("GPC") systems that are responsive to your request. Our response is made in accordance with state and federal law.

We understand that you have requested information regarding the Google Pay account(s), *008647988, 524676212*, as specified in the ████████ Subpoena. Accompanying this letter is responsive information to the extent reasonably accessible from our system, and a signed Certificate of Authenticity which includes a list of hash values corresponding to each file. GPC may not retain a copy of this production but does endeavor to keep a list of the files and their respective hash values.

We understand that you have requested information regarding the Pay account(s) as specified in the attached legal process. After a diligent search and reasonable inquiry, we have found no records for any Google Pay account-holder(s) identified as *366443197, 379686218*, as specified in your request.

To the extent any document provided herein contains information exceeding the scope of your request, protected from disclosure or otherwise not subject to production, if at all, we have redacted such information or removed such data fields.

For a Google Custodian of Records, we will require a subpoena and confirmation from you of the time and date of the appearance, the scope of testimony, any Google Reference Number(s) associated with the case, and the travel for the appearance at least one week in advance in order to identify, make the appropriate plans for, and prepare a custodian for trial.

Finally, we reserve the right to request reimbursement for reasonable costs incurred in processing your request.

Regards,

Danielle Lafleur
Google Payment Corporation



GOVERNMENT EXHIBIT
20-cr-00305-DDD
**1141**241

GPA



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

## CERTIFICATE OF AUTHENTICITY

I hereby certify:

1.     I am authorized to submit this affidavit on behalf of Google LLC ("Google"), located in Mountain View, California. I have personal knowledge of the following facts, except as noted, and could testify competently thereto if called as a witness.

2.     I am qualified to authenticate the records because I am familiar with how the records were created, managed, stored and retrieved.

3.     GPC provides an online payment processing service known as Google Pay.

4.     Attached is a true and correct copy of records pertaining to the Google Pay account-holder(s) associated with *008647988, 524676212,* with Internal Ref. No. 3732421 ("Document"). Accompanying this Certificate of Authenticity as Attachment A is a list of hash values corresponding to each file produced in response to the ██████████████ .

5.     The Document is a record made and retained by GPC. GPC servers record this data automatically at the time, or reasonably soon after, it is entered or transmitted by the user, and this data is kept in the course of this regularly conducted activity and was made by regularly conducted activity as a regular practice of GPC.

6.     The Document is a true duplicate of original records that were generated by GPC's electronic process or system that produces an accurate result. The accuracy of GPC's electronic process and system is regularly verified by GPC.

7.     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.


___/s_Danielle Lafleur____          Date: July 6, 2020
(Signature of Records Custodian)


    Danielle Lafleur
(Name of Records Custodian)



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

### Attachment A: Hash Values for Production Files (Internal Ref. No. 3732421)

████████ @gmail.com.Billing.pdf:

MD5- 7a0d8485516abefbcd578b4c6c362959
SHA512-
8dada301b9f346dd415158905cf9f5f3b707a074f5d56f0c44c2101c0f586fa71883a501d269c16758
d7eefbb23b6e82862f27bc7fee5062b49ebf636a472e65

████████ @gmail.com.CustomerInfo.pdf:

MD5- 9aa9ca457776b0724a35a3d09b542cf8
SHA512-
80c391551228558d3bcc4008cda4cbdc689d4c3f676d2e9f1c67a1d379e495a32747c4fe558201b5a
162cc013636d8f4c424d8a5107d6bcdb5d2b2a3c84856f0

████████ @gmail.com.Transactions.1.csv:

MD5- c0e1803da546c820bcbde890aeddf425
SHA512-
1469a6d5170cb00d89ac70cc3c760c569d650647a742fe848a90f9ca21c87eb960e8b2ccccddd62f9
4c3a1584f27cc61040f43a26f1f94e3ba15c71271cea26e

████████ s@gmail.com.Transactions.2.csv:

MD5- 98ad2870730fbfb9168d78cfa3dd043e
SHA512-
b10506a44af4c6d0b8103b5546acc3aecb7f61c77370574b7e1f97badc7fd187ae4e1e658220e3880
9c647a4d203b000b46925617320ae7e9c93a24624512681

kley@me.com.Billing.pdf:

MD5- c692681608dd9745644230b01fe19d5e
SHA512-
bddfa30c9916312165251f3bc5a61f03f08310d8ba31c931f160506d4801fb0eb18069246fc86bdd0
45c131cda342b3c6bd7eae4f307eeaeabf32da2e0c895db

kley@me.com.CustomerInfo.pdf:

MD5- 9776fe733f06a149d06103144bebba20
SHA512-
31da6c2171d3c8b9b56d9365f0c80da3bc8ccb358aee681aa010ca9fd2caab86e9e752125515fe395
70c822b05afb36729f235b2e9f9ee838dd2f9f23839e63f

kley@me.com.Transactions.1.csv:



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

MD5- 84ba52d3e3d9baef175e9baf25f17f2a
SHA512-
eb724a2866268cb422c4eba877b9f6524513669767812bd3add65f354195e2e3b3f64fdcdf8fa944ea
b66610d0b0b2afd241cf783fccd8f755e0a4ddf50ac128

kley@me.com.Transactions.2.csv:

MD5- 82a98e33ba816092cedfdb3aab367c9f
SHA512-
865fac710c59391f9734b967463a7ecea8bfb7592c5ffb31f98169ef1b783bbd71233dab534e9b769f
701282c2868359910effaadc24bc491e27dfbbe2b7e0c5

kleytew@gmail.com.Billing.pdf:

MD5- 2df3dbd5e6667f794854c54294685491
SHA512-
cc386cd20a1f67d50c0015353a388568bdbe013f23dd8084617f43d65a0aaa4984cd42f0e6e920182
639e38db42149c7662d21f891dc184b8f407966b07de5c9

kleytew@gmail.com.CustomerInfo.pdf:

MD5- 1030e90673b11c7f79552f000a053bd3
SHA512-
99d518551d0953523aa60a92c86bd2edabefbf286c75c243340ce52aaee5c8f8f77cc36843b33dc467
20ca67a7b240092710245fca89ec930810735728292b6f

kleytew@gmail.com.Transactions.1.csv:

MD5- 5fc283b20286ff394f84696fd9127c7a
SHA512-
e99fb7fd67c80d239d9977f9e2528297e800666bb573c445ea521ae31f6aaa65561f73ba50fbd5802c
ed4d2ea276c6730066139d38c4cfb805e3e26e7da4b48d

kleytew@gmail.com.Transactions.2.csv:

MD5- f9c7e0fb96b09a6114a206a3be70d575
SHA512-
8ddf3f4f1c0db9c7f0bb6be46f3a967df21303a75fa9d482b0a0f8053d4dcc2ffe3f2984e2d8a2b02d0
7194ea69b6fa0269aa22c24709f734a8d8e13606b6e1a

michael.tew@cannasys.com.Billing.pdf:

MD5- 63c8b66ec13390d0503e23cea8db5b98
SHA512-
e97ceaaba1329c8c0e58d124ded4311fd69fd03d0bb5b26ec44afba7d4c328f343f1cbcb63f69824ac



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

ee9fd202096bd9c54be7b037d0ba9ec6137229d992ccf8

michael.tew@cannasys.com.CustomerInfo.pdf:

MD5- a5eb70d497daab415f1a6133ae244169
SHA512-
7f1ff258acc39e6448208dcd96e1d3a4c8dc6b5039e28dc886ab0383b5e4ddc34f4bc9e143357c24af
ae4835e7d953a5ea55235ea2bfcfcbc8002ed88d16d486

michael.tew@cannasys.com.Transactions.1.csv:

MD5- e20964d6a1b0ede9485debc8ade48789
SHA512-
21e6d7129cb827f07ea9f80aa5eeeacd1ec01a52c2d0e723384347dde45db160cb98799e958ba6f07
4179491a48502ff9a523e6dbfff4e3f2ae66406d6509678

michael.tew@cannasys.com.Transactions.2.csv:

MD5- 3870edfd86d0c0662c61884fa95caf1e
SHA512-
b56a1d730abe1df0218e68a4f9198c9360195d5cdab5b488c051d84a32ec4e3545fda0bc2bd036b4d
9e7e3c5ed3930af367fb21a68887f0c26fdf5145195ea7f

mtew22@gmail.com.4611686019073199744.Billing.pdf:

MD5- d419b7b08e3743c008c78c3a55449ce5
SHA512-
457ab24536f2839aadc1845552ef18d7412b1d1748268a776e1c5d91d71ad8f19f95323915152984
1f77f8addf1f9426ce6ae375caab30c40aeef71e3ee6d68a

mtew22@gmail.com.4611686019073199744.CustomerInfo.pdf:

MD5- 68989dff99c784837106cdc76489a7e3
SHA512-
e8254001c15398cbc80d68b60d51bfae63e9868de6e6939fdfe2de9bdf00034107b5520a565eca901
96a33316e4c385c771066bab079639716c85426e2ef5855

mtew22@gmail.com.4611686019073199744.Transactions.1.csv:

MD5- 264eed4364e2f1c10cda5fe88d9cfe32
SHA512-
c108140ad43aa76a2e249398848804bb64c6153000c79676955bffe467ad2628aebba9e30c85341e9
df1cbf00754f70a181a8fa2a382c4b2f59439722575eb23

mtew22@gmail.com.4611686019073199744.Transactions.2.csv:



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

MD5- 09ff4e3d8ab11a6039de58e4a26a0466
SHA512-
30a0ef2aeaa49f3d3c8f67c06527adfcf3f8bc3713e826c2ab2af8357e9d46dc17faad8ad16906d497d
3c2843b0ae393f5dc1d55ff3e8e10fcd9e80033e50e1d

mtew22@gmail.com.4611686020054822966.Billing.pdf:

MD5- cbfec71141666a38ade2af3f21a6b636
SHA512-
50d4f49ba3b0f129455b657a32bf5ef2584a38a9af085b101f6617ae6fbb0d0768b0b17a23e4e2422e
05ae797bbd7c47dad383c23e1b953d4016da867e1d3d94

mtew22@gmail.com.4611686020054822966.CustomerInfo.pdf:

MD5- 3d58901cb5c82190ee63ebbf11ea90c0
SHA512-
32fc22930cb190c13934829ac617ae2a9911b6cad1c72e5985e9c94e582f477d38f8d3d0d4a7dc208
aac715f94bafae27cdaf1863de727467a6ed8c46678124c

mtew22@gmail.com.4611686020054822966.Transactions.1.csv:

MD5- f9983c59824bb770fe6c5588b14fdf13
SHA512-
2381ab19016a9e2d8de5c41b4e5672ddee711539edb9c9606a0ca7460bdb79ed56dea890e809279f
b7cd4f4adfed2d4451135251aad0dfa6fecd2b08c6e8bb95

mtew22@gmail.com.4611686020054822966.Transactions.2.csv:

MD5- 264eed4364e2f1c10cda5fe88d9cfe32
SHA512-
c108140ad43aa76a2e249398848804bb64c6153000c79676955bffe467ad2628aebba9e30c85341e9
df1cbf00754f70a181a8fa2a382c4b2f59439722575eb23

mtew926@gmail.com.Billing.pdf:

MD5- 27d6246731175abc8d8ba825e2b440c6
SHA512-
60a128189a087f974f7f7f7ceba217f542978af9f5031f1b74f5db6ab502cdfa0ebdd54ec7752214b7c
d1eda2b4f16d52ec97024f7c0a644a4392ed2afe69596

mtew926@gmail.com.CustomerInfo.pdf:

MD5- 0e3e281048d045411dcd1a6d27de7159
SHA512-
c613519d7326033b937068b1b23092ba8a9661ffcd95b137e91a6016ffb31de621eae1b1e631c83d1
34f7825502ac3288ee490803fdcf7926fbcd9eeda1c7f4e



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

mtew926@gmail.com.Transactions.1.csv:

MD5- b13d724b8edd67f3df02a70dbca60e94
SHA512-
5f8d6365f3b8e415f145e64b446d72a979547ea2041ee8825a9edfcb108bb69a85dbbd7d937c5a231
e064a6aca137c37f5d7914ae61b7bfbf7b39acdd53a7685

mtew926@gmail.com.Transactions.2.csv:

MD5- 58c0df68f1eebff657d9837fa5ffd2c3
SHA512-
77119880d0ebd841abf42c2f295d3279a041466f2b75a1fb6b096e0b4bc41f80a4aa52cae22b5766d
421b782b861a9f4bf4e4dd42cca5e0914a39087647d09b0

▇▇▇▇▇y@gmail.com.Billing.pdf:

MD5- 54352912e83b1f816798cb98fdd1b24e
SHA512-
4bce2ee6cc180dbb35222db354866bb046d806407e8e608b8be37f64bd5b4b5ad14070a1fbd62ebd
7d61d751ed8793c53366b94233cf9f1b08e6a3a84e7553f1

▇▇▇▇▇@gmail.com.CustomerInfo.pdf:

MD5- 067d172f9f3585026e46a5cbdb93226c
SHA512-
69c25f50cbaafe224ae97ab563d5d77aeeacb4e34fd1b2b6e70f34231ec54efc3786f69570edfe14985
3463a67d3a32116ff696664708e6a3248fd41c87c55a7

▇▇▇▇▇@gmail.com.Transactions.1.csv:

MD5- 12dbb5207d3b59eee3ad6403fd514d98
SHA512-
0c597eb0decf8410a0d6e68893f44127d55996f30c5b1e2840a78ad5a8e103609ff6143e2170260d3
33cf87b5afbdf1842fd3241ec35035ca4efa3d939e4d571

▇▇▇▇▇@gmail.com.Transactions.2.csv:

MD5- 98a462ae22c7cbdb3185f96634087e06
SHA512-
ea5a180c93c5e8177524ddf7adf196abeac7f59608ae0df0e535b8bc6b1f08e1db5861e0beb3e14ba6
b4332a08a31e0c8dc6a9c11f16b30db8455da56ff6b9be

tewm802@gmail.com.Billing.pdf:

MD5- ef8d30fff108f06192e68b1831fcf0a9



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

SHA512-
fb978ee87956003790c4b0f3b37a0189dea4da1dfbf8603db9495f4a6547f37af4add2fee595a6757c
0ac6d351c7195be8c4dcc6f13a5aeb562201d707ac7da7

tewm802@gmail.com.CustomerInfo.pdf:

MD5- af9ee432206774423f42a71de766c391
SHA512-
d9399ed256b72205b8747fc58c03668c94333af679c8969d8e4a1308f7fca393e61256e80c2da91fb
105afec7bdf6b6b1582b0923032aceb255de2c32b2585c7

tewm802@gmail.com.Transactions.1.csv:

MD5- 369dc8eef46b636d89c8b89fe8f40adb
SHA512-
90969e89a6d375a34630dd8b9e729a341153cbd8a8859a1c9e4dd15d167dc46e8e128597c6b3c191
6e4db8bc3a7d32798deaab3b375f2f32d9b8c7914dc78e1d

tewm802@gmail.com.Transactions.2.csv:

MD5- 4be7f2ad56e6e785e4a77b2d59524de5
SHA512-
4921516356fa4b243badbb46ccdbc425c9b4cb840d84bf37765355a4a7b8f16fe8be7dbf200b8abd6
b22e07741a78d4560c7155a9750c5d952f7c30cba16bf56

tewmichael8@gmail.com.Billing.pdf:

MD5- f626b53c13317b20d294641a8e9b1803
SHA512-
4b287e4f8d885ecbde46761196ed400359bb28680003aaadd0d2624aa50bb1231bdbc8d57baa74cd
0bc67fbd55f2057c2ecfad3d984a568dcefdb2d1c558ccaf

tewmichael8@gmail.com.CustomerInfo.pdf:

MD5- 54ee3fe3b2612ddc20cdaf6db429604b
SHA512-
6d16714792257b6ad3ab126a51cbabe47dce5c354e0a3ef08ffb88bf5f50e2d2163773147f2828ae8f
e38bdd06a680ede66a10a4219cee659a99ea9a19f0cc5d

tewmichael8@gmail.com.Transactions.1.csv:

MD5- 6cdf3e56860e7c7a803b5f3759d6b1a4
SHA512-
e2d709f1512c0066dbb47cac258b51d800950c832db689bbe78208f0b555c2ea3e5ee4d8d974f08c9
0bb6c3027ec8a1893a7f8055e8215a777f675f817be3a2e



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

tewmichael8@gmail.com.Transactions.2.csv:

MD5- 64317d368b86eb6d6f79b49f39ddd0c3
SHA512-
4c96bf783bbe1a65ccdd7b8ebe7d4c6ebf61f33a87d12c862b6812aa0e1301e32b59655ee2e904197
80c09844e51c079e2da077bcd15100104d6f91d44a360012

@gmail.com.Billing.pdf:

MD5- 39b0db5e6dae9c74619ee62ca5715596
SHA512-
b4492c530c02766c96aa09d12d266afa98c42eea1be3740d54222092e7f2bdf8a65bef6df17e238ca2
1064b02df3d950c2be25a60f46af273502ce6bbadb8eed

@gmail.com.CustomerInfo.pdf:

MD5- 1f42faf6aaf25378225b13ab0ac188e4
SHA512-
ece263e66a3a4ac8dba5b07a537b7120f83faae1bd1fb78cbc72aa9afeda26c1a07b25d56e545c81fe4
fde1d8cdbf9da856f6231fe1d07cdb17ed032b434f043

@gmail.com.Transactions.1.csv:

MD5- b9a5f95f3085895942a4090f2050d84f
SHA512-
e1eae9b400f1f6f4681bd02051d18c0a6912556620ae920748e986be6c7ab75e97bba9304a469acf8f
d5b6ee41d814981b862b684982dfd24314f3db9d39bc76

@gmail.com.Transactions.2.csv:

MD5- b5c1772ad67d68ba2206b50c8d199523
SHA512-
ebf354c37f8ebd69a5b04202f69389bf906af6984f951339c3d898fb4c08df3e12877b981b12915e7f
157e80f2d5001f47f75536bad98d48378e7d86c71c021c

n@gmail.com.Billing.pdf:

MD5- 903e147638b892ceb8139c849ecae9dd
SHA512-
9ed829681f40f1af196e3eeab2866b5026da6168c11fe83838caf81235b227fe91e28951e428ccc257
f0836c1ba00ee1bc9f74c2c9dbf2a7dba26c3e09e9450d

@gmail.com.CustomerInfo.pdf:

MD5- 29cd84eb2af3d42cd8d53f107c0bb46a
SHA512-



Google Payment Corporation
1600 Amphitheatre Parkway
Mountain View, California 94043

googlepayments@google.com

91fa1486ff0e4c87539aa475c2de9fdc7146ad19d47b788901fbc6ca6b0093423c977b74ec0d29450
559efbdaa2e37bc8946ced495ec2aa0a24ca3832cf73def

@gmail.com.Transactions.1.csv:

MD5- 22a98e0e7ce970a7b12697acd9da0df4
SHA512-
23dfa0dfdef295300da41dc815310ee35a317b75e1d019860a4db7d656bd6d14b0fdd45b960c83bc1
10bec41045fdee78af5f8116fe0056357972ef768f9d2db

@gmail.com.Transactions.2.csv:

MD5- cb79f200e219c95908a163ed1947591e
SHA512-
7da7dbb2bc59f53b8f9adbea9983b70a3f2e45259887da4c62a62a7a817b8dd5e3a44e6466add2458
a23b0ede3d63a1eb8820cd2f16a8f4b87ad4344fa7cf73c

vtleycap@gmail.com.Billing.pdf:

MD5- 74792ad32da6907f83543bb73c830caf
SHA512-
a5ce09ad8921ad9a56c441960a3fbe851b6cdee264caed1a8b2ec92bebe83edc85ac5d490d2002805
79fd6c2848cf490da7a490939083759e5a6741cf5639eca

vtleycap@gmail.com.CustomerInfo.pdf:

MD5- fb13ca88e1755bccee746ed07f6b850a
SHA512-
2ac6c80cc8469ded3fab41040bf72955cc60e0f6be22a532cdc32cd6eac9488adaf70686ae6d925d4e
98f14a1e036cc8ee2b732935f0340ccf3b3be319ffecc5

vtleycap@gmail.com.Transactions.1.csv:

MD5- 1649baec567bd1af69b4930bd81ea7c0
SHA512-
226add9b4021a8795c7a6187c8fe915be920765785079d563b6121e0405b8f4aaa5d390abc4c2530
423bf1d7808c2546a55fa52e14845d413887375319ba1777

vtleycap@gmail.com.Transactions.2.csv:

MD5- a0f5995590a779e1bb027ea16c668d41
SHA512-
ac1d9fe5d7df1ca7398d1dbd3300097e4e0b3846a60176a74ccb48fba4c1597166c9d9fbbcf34a9972
9a468fe15aac88af360026a804203fde035fe528af00a9

# CERTIFICATE OF AUTHENTICITY OF DOMESTIC BUSINESS RECORDS
## PURSUANT TO FEDERAL RULE OF EVIDENCE 902(11)

Pursuant to Federal Rules of Evidence 803(6) and 902(11) regarding certified domestic records of regularly conducted activity, I hereby certify:

1. I am employed by ___Independant Bank___ ("the Business") and my official title is Vice President Compliance I am a person designated by the Business as a custodian of records with the authority to make this certificate.

2. I state that each of the records attached hereto is the original record, or a true duplicate of the original record, in the custody of the Business, and that I am the custodian of the attached records, consisting of _70_ total pages.

3. I further certify that all records attached to this certificate were made at or near the time of the occurrence of the matters set forth, by or from information transmitted by, a person with knowledge of those matters.

4. I further certify that that all records attached to this certificate were kept in the course of the regularly conducted activity of the Business.

5. I further certify that it is the regular practice of the Business to make and retain each record attached to this certificate.

6. I further state that this certificate is intended to satisfy the requirements of Rule 902(11) of the FEDERAL RULES OF EVIDENCE.

Pursuant to 28 U.S.C. § 1746, I certify under penalty of perjury that the foregoing is true and correct.

Date: 08/31/2020

Signature

Print Name: Donna M Walker

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1105
GUAR  251

DECLARATION FOR RECORDS OF REGULARLY
CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0388

Company Name:     Payward Ventures, Inc.

I, ___David Kirk___, declare that I am/was employed by Payward Ventures, Inc.
and am/~~was a duly authorized custodian of records or am~~ otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

Know Your Customer (KYC), account and transaction data

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

- A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
  information transmitted by--a person with knowledge;

- B. Kept in the course of the entity's regularly conducted activity; and

- C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

*David Kirk*                                David Kirk

Signature                                   Printed name

Date:     June 17, 2020

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1106

KRKN

# DECLARATION CONCERNING AUTHENTICITY OF RECORDS

I, _Jesse Stone_ ,

(print declarant's name)

hereby declare under penalty of perjury that the following statements are true and correct:

1.      I am personally familiar with the representations made in this declaration because I am/was the custodian or other qualified person of the records.

2.      The following items have been provided from the records of McDonald Automotive Group, (the "Listed Entity"). The records I am certifying are described as follows:

| Description of Record(s) |
| --- |
| 44-page PDF file stamped AUDI_00000001 – AUDI_00000044 |

3.      I hereby certify that the items described above are either original records or true copies of records of the Listed Entity that were:

        a.      made at or near the time of the occurrence of the matters set forth in the records;

        b.      made by a person with knowledge of the matters set forth in the records, or from information transmitted by a person with knowledge of the matters; and

        c.      kept in the course of the regular business activity of the Listed Entity.

4.      I certify that it was the regular practice of the Listed Entity to make and keep such records.

Sworn to this __5th__ day of __January__ , 2024.
            (day)                    (month)
Declarant's Signature:

Declarant's Name Printed: _Jesse Stone_

Declarant's Work Address: _6000 S Broadway_
                          _Littleton, Co  80121_

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1137

AUDI 253

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, Ronald Brodfuehrer, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.

From the relevant time period (of approximately June 2018 through July 2020), I was employed by National Air Cargo, Inc. (hereinafter "the entity"), and my title was Information Technology Director. Beginning on or around June 2020, I participated in retrieving the records from National Air Cargo, Inc., now Bates stamped NAC_E_00000001 through NAC_E_00204514, in response to a legal demand from federal authorities.

I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved. I state that the records Bates stamped NAC_E_00000001 through NAC_E_00204514 are true duplicates of the original records in the custody of the entity.

I further state that:

a.      all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of the entity, and they were made by the entity as a regular practice; and

b.      such records were generated by the entity's electronic process or system that produces an accurate result, to wit:

1.      the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of the entity in a manner to ensure that they are true duplicates of the original

1



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1130
254

records; and

      2.     the process or system is regularly verified by the entity, and at all times

pertinent to the records certified here the process and system functioned properly and normally.

     I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of

the Federal Rules of Evidence.

  1/13/24
_____
Date

                                      _____
                                   Signature

2

### CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, Abby Schwartz, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.

From the relevant time period (of approximately June 2018 through July 2020), I was employed by National Air Cargo, Inc. (hereinafter "the entity"), and my title was Director of Accounting. Beginning on or around July 2020, I participated in retrieving the records from National Air Cargo, Inc., now Bates stamped with the prefix "NAC_", in response to legal demands from federal authorities.

I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.

I state that the records Bates stamped **NAC_00000001 through NAC_00000977**\* are true duplicates of the original records in the custody of the entity.

I further state that:

a.    all records Bates stamped **NAC_00000001 through NAC_00000977** were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of the entity, and they were made by the entity as a regular practice; and

b.    such records were generated by the entity's electronic process or system that produces an accurate result, to wit:

1.    the records were copied from electronic device(s), storage medium(s), or

{



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1134**
NA            256

file(s) in the custody of the entity in a manner to ensure that they are true duplicates of the original records; and

    2.    the process or system is regularly verified by the entity, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

1/24/24

Date          Signature

\* The sole exception in this Bates range is NAC_00000184-185, which are screenshots of my personal bank account information, and appear to have been included in the production accidentally. This certification expressly does not apply to that two-page document.

2

## DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 19-1646

Company Name:

I, _Paul Fluerad_, declare that I am/was employed by _Navy Federal Credit Union_ and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

_BANK RECORDS_

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

- A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

- B. Kept in the course of the entity's regularly conducted activity; and

- C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Signature

_Paul Fluerad_
Printed name

Date: _01/27/20_

**GOVERNMENT EXHIBIT**
20-cr-00305-DDD
**1107**

NAVY 258



In reply refer to:

## CERTIFICATION STATEMENT

The undersigned is a duly authorized custodian of records of NAVY FEDERAL CREDIT
UNION and has the authority to certify said records. The enclosed is a true copy of all the
records described in the Subpoena / Customer Consent / Authorization Form. Said records were
prepared by the custodian or the personnel of NAVY FEDERAL CREDIT UNION in the
ordinary course of business and were prepared from records which were themselves prepared at
or near the time of the act, condition or event.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this day _____ JANUARY 27 _____, 2020 in the County of Fairfax, State of
Virginia.

BY: _____
*(Signature)*

Paul Flugrad
*(Print or Type)*

Subscribed and sworn to before me on this _____ 27th _____ day of _____ January _____, 2020.

My commission expires: _____ December 31, 2020 _____.

_____
*(Notary Public)*

ATHENA BRITTNEY LOUIE
Notary Public
Commonwealth of Virginia
My Commission Expires December 31, 2020
Commission ID# 7694059

PO Box 3000  Merrifield VA  22119-3000

---

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0605

Company Name:

I,   Paul Flugrad   , declare that I am/was employed by Navy Federal Credit Union
and am/was a duly authorized custodian of records or am otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

Bank Records

_____

_____

_____

_____

_____

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
   information transmitted by--a person with knowledge;

B. Kept in the course of the entity's regularly conducted activity; and

C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

*Paul Flugrad*
Signature

Paul Flugrad
Printed name

Date:   July 14, 2020

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1125

NA... 260

**CERTIFICATION STATEMENT**

The undersigned is a duly authorized custodian of records of NAVY FEDERAL CREDIT
UNION and has the authority to certify said records. The enclosed is a true copy of all the
records described in the Subpoena / Customer Consent / Authorization Form. Said records were
prepared by the custodian or the personnel of NAVY FEDERAL CREDIT UNION in the
ordinary course of business and were prepared from records which were themselves prepared at
or near the time of the act, condition or event.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this day _____ July 14 _____, 2020 in the County of Fairfax, State of
Virginia.

BY: _____ *Paul Flugrad* _____
                                                         *(Signature)*

                                    _____ Paul Flugrad _____
                                                         *(Print or Type)*

Subscribed and sworn to before me on this _____ day of _____, 2020.
My commission expires: _____

                                    _____
                                                         *(Notary Public)*

ATHENA BRITTNEY LOUIE
Notary Public
Commonwealth of Virginia
My Commission Expires December 31, 2020
Commission ID# 7694059

# DECLARATION CONCERNING AUTHENTICITY OF RECORDS

I, _____ Charles P Gardiner _____ ,
(print declarant's name)

hereby declare under penalty of perjury that the following statements are true and correct:

1.     I am personally familiar with the representations made in this declaration because I am/was the custodian or other qualified person of the records.

2.     The following items have been provided from the records of Navy Federal Credit Union, (the "Listed Entity"). The records I am certifying are described as follows:

| Description of Record(s) |
| --- |
| 33 page-PDF file comprising photographs marks as Government Exhibits 395 through 427. |

3.     I hereby certify that the items described above are either original records or true copies of records of the Listed Entity that were:

      a.     made at or near the time of the occurrence of the matters set forth in the records;

      b.     made by a person with knowledge of the matters set forth in the records, or from information transmitted by a person with knowledge of the matters; and

      c.     kept in the course of the regular business activity of the Listed Entity.

4.     I certify that it was the regular practice of the Listed Entity to make and keep such records.

Sworn to this ___23___ day of ___JANUARY___ ,2024.
       (day)         (month)

Declarant's Signature: _____

Declarant's Name Printed: _____ CHARLES P GARDINER _____

Declarant's Work Address: _____ 5510 Heritage Oaks Dr _____
                                Pensacola FL 32526

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1139 262
NAV

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0282

Company Name: *DigitalMint*

I, Seth Sattler, declare that I am/was employed by <u>Red Leaf Chicago, LLC dba DigitalMint</u> and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

DigitalMint is providing a complete and accurate export of all transactions conducted by Michael and Kimberly Tew, with the time of the transaction, amount of cash collected, and bitcoin wallet provided. Please note the times are in UTC time. Additionally, DigitalMint is providing a photo of the customer taken at the time of each stated transaction. Additionally, screenshots of DigitalMint's internal customer management software are included which show all summary and KYC information related to the customer. Finally, DigitalMint has provided all email correspondence with the customer, including documents provided as follow up to such correspondence"

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

    A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

    B. Kept in the course of the entity's regularly conducted activity; and

    C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

Signature

Seth Sattler, BSA Officer
Printed name

Date: April 3rd, 2020

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1132

DGMT 223

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0613

Company Name:   DigitalMint

I,   Seth Sattler   , declare that I am/was employed by   DigitalMint
and am/was a duly authorized custodian of records or am otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

- The current on file identification and KYC for Michael and Kimberly Tew. Screenshots of BTM and OTC platform profiles

-The identity verification conducted by DigitalMint for Michael and Kimberly Tew

- A summary of the relationship history showing total transaction volume

-A screenshot of the transaction records conducted on the joint profile for Kimberly and Michael Tew. Records in UTC time

- A .csv file for the aforementioned transaction records, providing additional TX details. Records are in UTC time zone.

- A folder containing all ATM photos taken at the time of the aforementioned transactions

-A conversation between DigitalMint and Mr. Tew regarding DigitalMint's OTC Platform. This platform has not been used for any transactions.

-Conversation records between Mr. Tew and DigitalMint staff regarding transaction status.

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

    A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
       information transmitted by--a person with knowledge;

    B. Kept in the course of the entity's regularly conducted activity; and

    C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

 

_____           Seth Sattler
Signature                                 Printed name

 

       07/09/2020
Date: _____

DGMT

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
264
1133




Regions Bank
Legal Department
1900 5th Avenue North
23rd Floor
Birmingham, AL 35203

IN THE MATTER OF

**Michael Meyers, Meyers Consulting Group, Michael Tew, Kimber**
**United States District Court, District of Colorado**
**20-1239**

## Certificate of Origin and Authenticity

The attached records, identified within the requested timeframe of 01/01/2018 to 12/28/2020, are described as follows:

Michael Meyers Wire Transfer Reoport.pdf - DA-258904514-Wire Transfer Report
Michael Meyers-12-02-2018-Online Application.pdf - Michael Meyers-12-02-2018-Online Application
Michael Meyers Mobile Sign On Information.pdf - Michael Meyers Mobile Sign On Information
Michael Meyers Access Signature History.docx - Michael Meyers Mobile Access Signature History.
Somer Meyers Mobile Sign On Information-1.pdf - Somer Meyers Mobile Sign On Information
Somer Meyers-Access Signature History.docx - Somer Meyers Mobile Access Signature History
VC-41006402110025-Application.pdf - VC-41006402110025-Application
VC-41006402110025-Statements.pdf - VC-41006402110025-Statements
Now Prepaid Card Statements-4355410501644375.pdf - Now Prepaid Card Statements-4355410501644375
Now Prepaid Card Transactions-4355410501644375.pdf - Now Prepaid Card Transactions-4355410501644375
IL-9004998598-Statements.pdf - IL-9004998598-Statements
IL-9004998598-Opening Account Documents.pdf - IL-9004998598-Opening Account Documents
TD-262634976-Signature Card.pdf - TD-262634976-Signature Card
TD-262634976-Checks, Deposits, Withdrawals.pdf - TD-262634976-Checks, Deposits, Withdrawals
TD-262634976-Statements.pdf - TD-262634976-Statements
TD-260431091-Statements.pdf - TD-260431091-Statements
TD-260431091-Checks, Deposits, Withdrawals.pdf - TD-260431091-Checks, Deposits, Withdrawals
TD-260431091-Signature Card.pdf - TD-260431091-Signature Card
DA-258904514-Statements.pdf - DA-258904514-Statements
DA-258904514-Signature Card.pdf - DA-258904514-Signature Card
DA-258904514-Checks, Deposits, Withdrawals.pdf - DA-258904514-Checks, Deposits, Withdrawals

Regions Bank ("Regions"), regularly creates and maintains statements of account for accounts reflected on its records. Those statements are maintained and stored in computerized form. Checks, deposits and other items documenting specific transactions within the individual deposit accounts reflected on Regions' records are maintained in electronic format or copied onto microfilm and maintained and stored in that format. Signature cards, account maintenance documents, correspondence and other documents as Regions may from time to time collect relating to the accounts reflected on Regions' records are maintained and stored in microfilm, original paper form, electronically or some combination thereof. Together, each of the computerized statements of account, microfiche copies and paper records regarding accounts reflected on Regions' records constitute original entries into Regions' business records. Those entries are made by employees of Regions Bank in the regular and usual course of Regions' trade or business and in the regular and usual course of their duties with respect thereto.

Correspondence, credit, collateral, and other general files consist of memoranda or records of acts, transactions, occurrences, or events related to the business of Regions Bank. Such records are made by employees of Regions Bank in the regular and usual course of Regions' trade or business and in the regular and usual course of their duties with respect thereto. Such records are made at the time of such acts, transactions, occurrences, or events, or within a reasonable time thereafter.

It is the regular and usual course of the business of Regions Bank to maintain copies of all items enclosed herewith, in and as a part of Regions' business records. I am one of the persons designated to initiate and supervise searches of Regions' records for the purpose of making responses to legal process. The search has been diligent and the records enclosed are believed to be complete and to comply with the subpoena. They are true and accurate copies of the papers and records in the bank's files.

*Kelly Criswell*

Kelly Criswell
Legal Processing Section



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1111

## DECLARATION FOR RECORDS OF REGULARLY
## CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0389

Company Name:

I, David Breland , declare that I am/was employed by Simple Finance Technology Corp
and am/was a duly authorized custodian of records or am otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

checking account records

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

- A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
  information transmitted by--a person with knowledge;

- B. Kept in the course of the entity's regularly conducted activity; and

- C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

David Breland                                    David Breland

Signature                                        Printed name

Date: 6/2/2020

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1112

SFT                    266

## DECLARATION OF Karen Baboolal CERTIFYING RECORDS
## OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Re:        ▓▓▓▓▓ Subpoena No. 20-1250
USAO No. 2019R00976

Please note that while the Subpoena was issued to Signature Bank ("Signature"), Signature was closed on March 12, 2023 by the New York State Department of Financial Services, and the Federal Deposit Insurance Corporation ("FDIC") was named Receiver. The FDIC established Signature Bridge Bank, N.A. ("Bridge Bank"), and on March 20, 2023, Flagstar Bank, N.A. acquired certain assets and assumed certain liabilities of the Bridge Bank. Signature is now known as Flagstar.

I, the undersigned, Karen Baboolal, pursuant to 28 U.S.C. § 1746, declare that:

1. I am employed by Flagstar Bank, N.A. as a Team Leader in the Legal Processing Department, and by reason of my position am authorized and qualified to make this declaration. I am a custodian of records and I am familiar with the company's systems.

I further certify that the documents sent via Proofpoint and bearing Bates numbers **Signature Bank 001** to **Signature Bank 4071** are true copies of records that were:

    (a) made at or near the time of the occurrence of the matters set forth therein, by, or from information transmitted by, a person with knowledge of those matters;

    (b) kept in the course of regularly conducted business activity; and

    (c) made by the regularly conducted business activity as a regular practice.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 5, 2023.


*/s/ Karen Baboolal*

Karen Baboolal



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1113

---

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0861

Company Name:

I, Miriam Nachison declare that I am/was employed by Vcorp Services, LLC and am/was a duly authorized custodian of records or am otherwise qualified to speak about these records produced in response to the subpoena referenced above. These records are further described as: (Please describe records with as much specificity as possible below or on an attached sheet.)

-email correspondence

-formation docs

-Invoices/Payments

Please note we only hold records for 5 years, but we are sending anything we have in our System.

---

I am familiar with the mode of preparation of these records. I certify that these records are true copies of records of the entity listed above and that these records were:

A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from information transmitted by--a person with knowledge;

B. Kept in the course of the entity's regularly conducted activity; and

C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_____
Signature

Mirta M Nachison
Printed name

Date: 9/16/20

GOVERNMENT EXHIBIT
20-cr-00305-DDD
1118

VCORP 268



VERIZON SECURITY COURT ORDER COMPLIANCE
180 WASHINGTON VALLEY ROAD
BEDMINSTER, NJ 07921
Phone: 800-451-5242 Fax:888-667-0026

July 13, 2020

Federal Bureau of Investigations
8000 East 36th Avenue, Denver, CO 80238

**Verizon Case #:** 200168519

State of New Jersey

ss:

City of Bedminster

I, Aniket Chauhan, being duly sworn, depose and say:

1. I am the custodian of records for Verizon, and in that capacity, I certify that the attached [ ] electronic files of records are true and accurate copies of the records created from the information maintained by Verizon in the actual course of business
2. It is Verizon's ordinary practice to maintain such records, and that said records were made contemporaneously with the transaction and events stated therein, or within a reasonable time thereafter.

/s/ Aniket Chauhan



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1110

ORD                                    269



WELLS FARGO

Summons and Subpoenas Department
PO Box 29728 S4001-01F
Phoenix, AZ 85038
Voice: (480)724-2000

## BUSINESS RECORDS DECLARATION

I, Dan Ashley, am over the age of eighteen and I declare that I am employed by Wells Fargo Bank, N.A. ("Wells Fargo") in the Summons and Subpoenas Department and am a duly authorized and qualified witness to certify the authenticity of the attached documents and/or information produced pursuant to the legal order. Wells Fargo reserves the right to designate another Custodian as it deems appropriate in the event an actual appearance is required concerning the records produced. I certify that the attached records:

A)  Were prepared by personnel of Wells Fargo in the ordinary course of business at or near the time of the acts, conditions or events described in the records; and

B)  It was the ordinary course of business for Wells Fargo employees or representatives with knowledge of the act, event, or condition recorded to make the record or transmit the information therein to be included in such record.

C)  The records attached are true and correct copies of the business records as maintained by Wells Fargo.

**The records produced are described as follows:**

Case number: 23844152

| Document Type | Account # | Paper Count | Total Copies |
|---|---|---|---|
| Signature Cards | XXXXXX8630 | 1 | 1 |
| Wire Automated | XXXXXX5344 | 22 | 22 |
| Deposits with offsets | XXXXXX1230 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Statements | XXXXXX6934 | 60 | 60 |
| Application | XXXXXXXXXX0001 | 5 | 5 |
| Wire Automated | XXXXXX6934 | 76 | 76 |
| Checks/Debits | XXXXXX4615 | 0 | 0 |
| No records found with the information provided | | | |
| Checks/Debits | XXXXXX2064 | 13 | 13 |
| Checks/Debits | XXXXXX1395 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Checks/Debits | XXXXXX6934 | 43 | 43 |
| Signature Cards | XXXXXX4615 | 1 | 1 |
| Signature Cards | XXXXXX1230 | 2 | 2 |
| Checks/Debits | XXXXXX5344 | 1 | 1 |
| Financial Statements | XXXXXXXXXX0001 | 0 | 0 |
| Unable to locate Financial Statements for the time frame requested. | | | |
| Signature Cards | XXXXXX1395 | 2 | 2 |
| Credit Card Statements | XXXXXXXXXXXX4982 | 74 | 74 |

Case No: 23844152; Agency Case No: Not Provided

1 of 3

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1119

WFB                    270

| | | | |
|---|---|---|---|
| Statements | XXXXXX1395 | 27 | 27 |
| Statements | XXXXXX2064 | 38 | 38 |
| Wire Automated | XXXXXX1395 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Statements | XXXXXX1230 | 12 | 12 |
| PMA Statements for this account are also combined with account(s) XXXXXX1395 for the time period you have requested.(ACCT TYPE : PMA) | | | |
| Deposits with offsets | XXXXXX2064 | 8 | 8 |
| Wire Automated | XXXXXX1230 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Deposits with offsets | XXXXXX4615 | 0 | 0 |
| No records found with the information provided | | | |
| Deposits with offsets | XXXXXX1395 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Deposits with offsets | XXXXXX6934 | 62 | 62 |
| Deposits with offsets | XXXXXX8630 | 0 | 0 |
| No records found with the information provided | | | |
| Signature Cards | XXXXXX2064 | 4 | 4 |
| Wire Automated | XXXXXX8630 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Credit Card Statements | XXXXXXXXXXXX0142 | 114 | 114 |
| Wire Automated | XXXXXX4615 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Statements | XXXXXX5344 | 76 | 76 |
| PMA Statements for this account are also combined with account(s) XXXXXX1395 for the time period you have requested.(ACCT TYPE : PMA) | | | |
| Signature Cards | XXXXXX5344 | 2 | 2 |
| Checks/Debits | XXXXXX1230 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Statements | XXXXXX8630 | 62 | 62 |
| Statements | XXXXXX4615 | 11 | 11 |

Case No: 23844152; Agency Case No: Not Provided

| PMA Statements for this account are also combined with account(s) XXXXXX8630 for the time period you have requested.(ACCT TYPE : PMA) | | | |
|---|---|---:|---:|
| Wire Automated | XXXXXX2064 | 30 | 30 |
| Signature Cards | XXXXXX6934 | 4 | 4 |
| Checks/Debits | XXXXXX8630 | 0 | 0 |
| No records found with the information provided | | | |
| Deposits with offsets | XXXXXX5344 | 59 | 59 |
| | | Total Copies Delivered: | 809 |

Additional comments: Unable to provide credit card application, due to electronic format.

**Additional comments:**

The bank's standard record retention period is seven years.

I declare under penalty of perjury under the law(s) of the state of Colorado that the foregoing is true and correct according to my knowledge and belief. Executed on this 4th day of August, 2020, in the City of Tempe, State of ARIZONA.

_Dan Ashley_
Subpoena Processing Representative

Image copies of requested transactions may be missing for the following reasons: Items not imaged, corrupted, blank, damaged, destroyed or not available, item(s) piggy-backed, electronic transaction(s). If the legal order requests certain types of loan information and other non-depository information, it was forwarded to other departments and they will respond to you directly.

Case No: 23844152; Agency Case No: Not Provided

WFB_00000746

**WELLS FARGO**

Summons and Subpoenas Department
PO Box 29728 S4001-01F
Phoenix, AZ 85038
Voice: (480)724-2000

## BUSINESS RECORDS DECLARATION

I, Anuradha Ramaswamy, am over the age of eighteen and I declare that I am employed by Wells Fargo Bank, N.A. ("Wells Fargo") in the Summons and Subpoenas Department and am a duly authorized and qualified witness to certify the authenticity of the attached documents and/or information produced pursuant to the legal order. Wells Fargo reserves the right to designate another Custodian as it deems appropriate in the event an actual appearance is required concerning the records produced. I certify that the attached records:

A) Were prepared by personnel of Wells Fargo in the ordinary course of business at or near the time of the acts, conditions or events described in the records; and

B) It was the ordinary course of business for Wells Fargo employees or representatives with knowledge of the act, event, or condition recorded to make the record or transmit the information therein to be included in such record.

C) The records attached are true and correct copies of the business records as maintained by Wells Fargo.

**The records produced are described as follows:**

Case number: 23855136

| Document Type | Account # | Paper Count | Total Copies |
|---|---|---|---|
| Signature Cards | XXXXXX1395 | 2 | 2 |
| Checks/Debits | XXXXXX6934 | 43 | 43 |
| Wire Automated | XXXXXX9973 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Deposits with offsets | XXXXXX0093 | 0 | 0 |
| No records found with the information provided | | | |
| Signature Cards | XXXXXX9973 | 3 | 3 |
| Checks/Debits | XXXXXX0093 | 0 | 0 |
| No records found with the information provided | | | |
| Statements | XXXXXX0093 | 0 | 0 |
| Statements are combined with account number #5298939157. | | | |
| Certified Checks | XXXXXX8888 | 0 | 0 |
| Unable to locate Certified Checks over $500.00 for the time frame requested. | | | |
| Statements | XXXXXX1230 | 22 | 22 |
| Wire Automated | XXXXXX2064 | 30 | 30 |
| Wire Automated | XXXXXX4743 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Checks/Debits | XXXXXX4615 | 0 | 0 |
| No records found with the information provided | | | |

Case No: 23855136; Agency Case No: 2019R00976200594

1 of 5



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1120

WFB 25-3

| | | | |
|---|---|---|---|
| TCP/IP Address | XXXXXX1230 | 203 | 203 |
| Statements | XXXXXX8888 | 3 | 3 |
| Statements | XXXXXX5344 | 76 | 76 |
| PMA Statements for this account are also combined with account(s) XXXXXX1230 for the time period you have requested.(ACCT TYPE : PMA) | | | |
| Checks/Debits | XXXXXX8888 | 0 | 0 |
| No records found with the information provided | | | |
| Certified Checks | XXXXXX9902 | 0 | 0 |
| Unable to locate Certified Checks over $500.00 for the time frame requested. | | | |
| Statements | XXXXXX4701 | 3 | 3 |
| Signature Cards | XXXXXX5683 | 5 | 5 |
| Deposits with offsets | XXXXXX1395 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Credit Card Statements | XXXXXXXXXXXX0142 | 288 | 288 |
| Checks/Debits | XXXXXX1395 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Deposits with offsets | XXXXXX9973 | 0 | 0 |
| No records found with the information provided | | | |
| Statements | XXXXXX9973 | 2 | 2 |
| Certified Checks | XXXXXX8630 | 0 | 0 |
| Unable to locate Certified Checks over $500.00 for the time frame requested. | | | |
| Deposits with offsets | XXXXXX8630 | 0 | 0 |
| No records found with the information provided | | | |
| Statements | XXXXXX2064 | 38 | 38 |
| Deposits with offsets | XXXXXX9157 | 15 | 15 |
| Wire Automated | XXXXXX6934 | 76 | 76 |
| Deposits with offsets | XXXXXX8888 | 0 | 0 |
| No records found with the information provided | | | |
| Checks/Debits | XXXXXX9973 | 0 | 0 |
| No records found with the information provided | | | |
| Signature Cards | XXXXXX0093 | 11 | 11 |
| Statements | XXXXXX9157 | 30 | 30 |
| Statements | XXXXXX8630 | 415 | 415 |
| Signature Cards | XXXXXX5344 | 2 | 2 |

Case No: 23855136; Agency Case No: 2019R00976200594

WFB_00001055

| | | | |
|---|---|---|---|
| Wire Automated | XXXXXX5344 | 22 | 22 |
| Signature Cards | XXXXXX4701 | 4 | 4 |
| Signature Cards | XXXXXX4743 | 4 | 4 |
| Deposits with offsets | XXXXXX5683 | 0 | 0 |
| No records found with the information provided | | | |
| Checks/Debits | XXXXXX5683 | 0 | 0 |
| No records found with the information provided | | | |
| Wire Automated | XXXXXX8888 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Signature Cards | XXXXXX4615 | 1 | 1 |
| Certified Checks | XXXXXX9973 | 0 | 0 |
| Unable to locate any certified checks for the time frame requested. | | | |
| Deposits with offsets | XXXXXX1230 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |
| Checks/Debits | XXXXXX9157 | 15 | 15 |
| Statements | XXXXXX4615 | 36 | 36 |
| PMA Statements for this account are also combined with account(s) XXXXXX8630 for the time period you have requested.(ACCT TYPE : PMA) | | | |
| Deposits with offsets | XXXXXX4743 | 0 | 0 |
| No records found with the information provided | | | |
| Checks/Debits | XXXXXX9902 | 0 | 0 |
| No records found with the information provided | | | |
| Deposits with offsets | XXXXXX4615 | 0 | 0 |
| No records found with the information provided | | | |
| Wire Automated | XXXXXX1395 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Signature Cards | XXXXXX6934 | 4 | 4 |
| Certified Checks | XXXXXX5683 | 0 | 0 |
| Unable to locate Certified Checks over $500.00 for the time frame requested. | | | |
| Deposits with offsets | XXXXXX5344 | 59 | 59 |
| TCP/IP Address | XXXXXX4615 | 203 | 203 |
| Certified Checks | XXXXXX1395 | 0 | 0 |
| Unable to locate Certified Checks over $500.00 for the time frame requested. | | | |

Case No: 23855136; Agency Case No: 2019R00976200594

3 of 5

| | | | |
|---|---|---|---|
| Wire Automated | XXXXXX4701 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Credit Card Statements | XXXXXXXXXXXX4982 | 74 | 74 |
| Wire Automated | XXXXXX5683 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Deposits with offsets | XXXXXX4701 | 0 | 0 |
| No records found with the information provided | | | |
| Deposits with offsets | XXXXXX2064 | 8 | 8 |
| Statements | XXXXXX1395 | 17 | 17 |
| PMA Statements for this account are also combined with account(s) XXXXXX1230 for the time period you have requested.(ACCT TYPE : PMA) | | | |
| Wire Automated | XXXXXX0093 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Checks/Debits | XXXXXX5344 | 1 | 1 |
| Statements | XXXXXX9902 | 0 | 0 |
| Statements are combined with account number #6316905683. | | | |
| Checks/Debits | XXXXXX8630 | 0 | 0 |
| No records found with the information provided | | | |
| Wire Automated | XXXXXX9157 | 9 | 9 |
| Wire Automated | XXXXXX9902 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Deposits with offsets | XXXXXX9902 | 0 | 0 |
| No records found with the information provided | | | |
| Certified Checks | XXXXXX5344 | 0 | 0 |
| Unable to locate Certified Checks over $500.00 for the time frame requested. | | | |
| Signature Cards | XXXXXX1230 | 2 | 2 |
| Signature Cards | XXXXXX8630 | 1 | 1 |
| Wire Automated | XXXXXX1230 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Checks/Debits | XXXXXX4701 | 0 | 0 |
| No records found with the information provided | | | |
| Checks/Debits | XXXXXX4743 | 0 | 0 |
| No records found with the information provided | | | |
| Statements | XXXXXX4743 | 3 | 3 |

Case No: 23855136; Agency Case No: 2019R00976200594

| Signature Cards | XXXXXX9902 | 5 | 5 |
| Wire Automated | XXXXXX8630 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| Signature Cards | XXXXXX8888 | 3 | 3 |
| Deposits with offsets | XXXXXX6934 | 62 | 62 |
| Signature Cards | XXXXXX2064 | 4 | 4 |
| Statements | XXXXXX5683 | 3 | 3 |
| Signature Cards | XXXXXX9157 | 11 | 11 |
| Statements | XXXXXX6934 | 60 | 60 |
| Wire Automated | XXXXXX4615 | 0 | 0 |
| Unable to locate records with the information provided. | | | |
| TCP/IP Address | XXXXXX8888 | 140 | 140 |
| Checks/Debits | XXXXXX2064 | 13 | 13 |
| Checks/Debits | XXXXXX1230 | 0 | 0 |
| All transactions requested are electronic and no images are available | | | |

Total Copies Delivered:      2,031

Additional comments: Negotiated time frame from 7/7/2013 to 7/7/2020. Unable to locate any credit card applications for accounts #4465420390640142 and #4465420502494982 as t was electronic.

**Additional comments:**

The bank's standard record retention period is seven years.

I declare under penalty of perjury under the law(s) of the state of Colorado that the foregoing is true and correct according to my knowledge and belief. Executed on this 6th day of August, 2020, in the City of Tempe, State of ARIZONA.

*R. Anusadhe*

Subpoena Processing Representative

Image copies of requested transactions may be missing for the following reasons: Items not imaged, corrupted, blank, damaged, destroyed or not available, item(s) piggy-backed, electronic transaction(s). If the legal order requests certain types of loan information and other non-depository information, it was forwarded to other departments and they will respond to you directly.

Case No: 23855136; Agency Case No: 2019R00976200594

WFB_00001058

DECLARATION FOR RECORDS OF REGULARLY CONDUCTED BUSINESS ACTIVITY

Subpoena #: 20-0625

Company Name:  Wynn Las Vegas

I,  Jessica Lozoya  , declare that I am/was employed by  Wynn Las Vegas
and am/was a duly authorized custodian of records or am otherwise qualified to speak about
these records produced in response to the subpoena referenced above. These records are further
described as: (Please describe records with as much specificity as possible below or on an
attached sheet.)

Gaming & Hotel

I am familiar with the mode of preparation of these records. I certify that these records are true
copies of records of the entity listed above and that these records were:

A. Made at or near the time of the act, event, condition, opinion, or diagnosis by--or from
   information transmitted by--a person with knowledge;

B. Kept in the course of the entity's regularly conducted activity; and

C. Made as a regular practice of that activity.

I declare under penalty of perjury that the foregoing is true and correct.

_____          Jessica Lozoya
Signature                              Printed name

Date:  07/17/20

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
1121

WYNN 278

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Case No.  20-cr-00305-DDD

Case Title:   United States of America v. Tew et al.

**GOVERNMENT'S PRELIMINARY EXHIBIT LIST**

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 1 | INTENTIONALLY LEFT BLANK | | | |
| 2 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 08.01.2018-08.31.2018 | SIG_00000005 | SIG_00000011 | SIG_00006978 |
| 3 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 10.01.2018-10.31.2018 | SIG_00000018 | SIG_00000023 | SIG_00006978 |
| 4 | INTENTIONALLY LEFT BLANK | | | |
| 5 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 11.01.2018-11.30.2018 | SIG_00000024 | SIG_00000029 | SIG_00006978 |
| 6 | INTENTIONALLY LEFT BLANK | | | |
| 7 | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 12.01.2018-12.31.2018 | SIG_00000030 | SIG_00000035 | SIG_00006978 |
| 8 | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.07.2019 | NAC_00000303 | | NAC_00000978-NAC_00000979 |
| 9 | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.19.2019 | NAC_00000304 | | NAC_00000978-NAC_00000979 |
| 10 | Signature Bank ACH Transaction re $38,000 to [PM], dated 03.28.2019 | NAC_00000309 | | NAC_00000978-NAC_00000979 |
| 11 | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | NAC_00000310 | | NAC_00000978-NAC_00000979 |
| 12 | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 07.23.2019 | NAC_00000157 | | NAC_00000978-NAC_00000979 |
| 13 | Signature Bank ACH Transaction re $31,500 to SHI LLC, dated 08.06.2019 | NAC_00000161 | | NAC_00000978-NAC_00000979 |
| 14 | Signature Bank ACH Transaction re $9,500 to Global Fuel Logistics, dated 08.19.2019 | NAC_00000165 | | NAC_00000978-NAC_00000979 |
| 15 | Signature Bank ACH Transaction re $28,000 to SHI LLC, dated 08.21.2019 | NAC_00000166 | | NAC_00000978-NAC_00000979 |
| 16 | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 09.03.2019 | NAC_00000169 | | NAC_00000978-NAC_00000979 |
| 17 | Signature Bank ACH Transaction re $18,000 to SHI LLC, dated 09.09.2019 | NAC_00000191 | | NAC_00000978-NAC_00000979 |
| 18 | Signature Bank ACH Transaction re $33,500 to SHI LLC, dated 09.17.2019 | NAC_00000195 | | NAC_00000978-NAC_00000979 |
| 19 | Signature Bank ACH Transaction re $52,750 to SHI LLC, dated 09.25.2019 | NAC_00000197 | | NAC_00000978-NAC_00000979 |
| 20 | Signature Bank ACH Transaction re $75,000 to Global Fuel Logistics, dated 10.16.2019 | NAC_00000201 | | NAC_00000978-NAC_00000979 |
| 21 | Signature Bank ACH Transaction re $43,000 to Global Fuel Logistics, dated 10.24.2019 | NAC_00000203 | | NAC_00000978-NAC_00000979 |
| 22 | Signature Bank ACH Transaction re $49,750 to SHI LLC, dated 10.31.2019 | NAC_00000205 | | NAC_00000978-NAC_00000979 |
| 23 | Signature Bank ACH Transaction re $40,500 to SHI LLC, dated 11.07.2019 | NAC_00000206 | | NAC_00000978-NAC_00000979 |
| 24 | Signature Bank ACH Transaction re $43,250 to Global Fuel Logistics, dated 11.25.2019 | NAC_00000209 | | NAC_00000978-NAC_00000979 |
| 25 | Signature Bank ACH Transaction re $9,550 to Global Fuel Logistics, dated 12.02.2019 | NAC_00000211 | | NAC_00000978-NAC_00000979 |
| 26 | Signature Bank ACH Transaction re $24,500 to Global Fuel Logistics, dated 12.11.2019 | NAC_00000214 | | NAC_00000978-NAC_00000979 |
| 27 | Signature Bank ACH Transaction re $15,200 to Global Fuel Logistics, dated 12.23.2019 | NAC_00000437 | | NAC_00000978-NAC_00000979 |
| 28 | Signature Bank ACH Transaction re $33,000 to Global Fuel Logistics, dated 02.11.2020 | NAC_00000442 | | NAC_00000978-NAC_00000979 |
| 29 | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 02.19.2020 | NAC_00000444 | | NAC_00000978-NAC_00000979 |
| 30 | Signature Bank ACH Transaction re $36,555 to Global Fuel Logistics, dated 03.02.2020 | NAC_00000447 | | NAC_00000978-NAC_00000979 |
| 31 | Signature Bank ACH Transaction re $35,000 to Global Fuel Logistics, dated 03.09.2020 | NAC_00000449 | | NAC_00000978-NAC_00000979 |
| 32 | Signature Bank ACH Transaction re $22,5000 to Global Fuel Logistics, dated 03.19.2020 | NAC_00000452 | | NAC_00000978-NAC_00000979 |
| 33 | Signature Bank ACH Transaction re $73,460 to Global Fuel Logistics, dated 03.31.2020 | NAC_00000402 | | NAC_00000978-NAC_00000979 |
| 34 | Signature Bank ACH Transaction re $36,925 to Global Fuel Logistics, dated 04.06.2020 | NAC_00000456 | | NAC_00000978-NAC_00000979 |
| 35 | Signature Bank ACH Transaction re $68,255 to Global Fuel Logistics, dated 04.15.2020 | NAC_00000170 | | NAC_00000978-NAC_00000979 |
| 36 | Signature Bank ACH Transaction re $46,850 to Global Fuel Logistics, dated 04.27.2020 | NAC_00000172 | | NAC_00000978-NAC_00000979 |
| 37 | Signature Bank ACH Transaction re $85,325 to Global Fuel Logistics, dated 05.05.2020 | NAC_00000459 | | NAC_00000978-NAC_00000979 |
| 38 | Signature Bank ACH Transaction re $82,422 to Global Fuel Logistics, dated 05.12.2020 | NAC_00000174 | | NAC_00000978-NAC_00000979 |
| 39 | Signature Bank ACH Transaction re $78,565 to Global Fuel Logistics, dated 05.20.2020 | NAC_00000176 | | NAC_00000978-NAC_00000979 |
| 40 | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 07.02.2020 | NAC_00000537 | | NAC_00000978-NAC_00000979 |
| 41 | INTENTIONALLY LEFT BLANK | | | |
| 42 | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 withdrawal, dated 06.04.2019 | NAVY_00000392 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 43 | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 withdrawal, dated 06.11.2019 | NAVY_00000394 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 44 | Wells Fargo Bank withdrawal Slip re Acct x6934 $22,000 withdrawal, dated 08.28.2019 | WFB_00000183 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 45 | Wells Fargo Bank withdrawal Slip re Acct x2064 $25,000 withdrawal, dated 08.29.2019 | WFB_00000155 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 46 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | NAVY_00000517 | NAVY_00000526 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 47 | Wells Fargo Bank Wire Transaction Report re Acct x6934 $15,000, dated 09.18.2019 | WFB_00001020 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 48 | Wells Fargo Bank withdrawal Slip re Acct x6934 $20,000 withdrawal, dated 089.26.2019 | WFB_00000192 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 49 | Wells Fargo Bank withdrawal Slip re Acct x6934 $20,000 withdrawal, dated 09.27.2019 | WFB_00000194 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 50 | Wells Fargo Bank withdrawal Slip re Acct x6934 $20,000 withdrawal, dated 10.01.2019 | WFB_00000195 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 51 | Wells Fargo Bank withdrawal Slip re Acct x6934 $12,000 withdrawal, dated 10.02.2019 | WFB_00000196 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 52 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 11.30.2019 | WFB_00000745 | WFB_00000750 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 53 | Wells Fargo Bank withdrawal Slip re Acct x2064 $20,000 withdrawal, dated 02.20.2020 | WFB_00000164 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 54 | Wells Fargo Bank withdrawal Slip re Acct x2064 $15,000 withdrawal, dated 02.21.2020 | WFB_00000165 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 55 | Wells Fargo Bank withdrawal Slip re Acct x2064 $20,000 withdrawal, dated 02.27.2020 | WFB_00000166 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 56 | Wells Fargo Bank withdrawal Slip re Acct x2064 $20,000 withdrawal, dated 03.03.2020 | WFB_00000167 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 57 - 100 | INTENTIONALLY LEFT BLANK | | | |
| 101 | 2016 Gross Income Summary for Michael Tew | | | |
| 102 | 2017 Gross Income Summary for Michael Tew | | | |
| 103 | 2018 Gross Income Summary for Michael Tew | | | |
| 104 | 2019 Gross Income Summary for Michael Tew | | | |
| 105 | Internal Revenue Service 2019 Account Transcript | | | |
| 106 - 200 | INTENTIONALLY LEFT BLANK | | | |
| 201 | INTENTIONALLY LEFT BLANK | | | |
| 202 | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, statement 08.31.2018 | GUAR_00000047 | GUAR_00000059 | GUAR_00000001 |
| 203 | Regions Bank Statement re Account x4514 [MM], statement period 10.12.2018-11.08.2018 | REG_00000177 | REG_00000181 | REG_00000001 |
| 204 | INTENTIONALLY LEFT BLANK | | | |
| 205 | Regions Bank Statement re Account x4514 [MM], statement period 11.09.2018-12.10.2018 | REG_00000171 | REG_00000175 | REG_00000001 |
| 206 | INTENTIONALLY LEFT BLANK | | | |
| 207 | ANB Bank Statement re Account x3099 [MM], dated 12.18.2018 | ANB_00000048 | ANB_00000052 | ANB_00000002; ANB_00000035 |
| 208 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2019-02.16.2019 | NAVY_00000020 | NAVY_00000029 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 209 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2019-03.16.2019 | NAVY_00000030 | NAVY_00000039 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 210 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | NAVY_00000040 | NAVY_00000054 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 211 | INTENTIONALLY LEFT BLANK | | | |
| 212 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 07.17.2019-08.16.2019 | NAVY_00000508 | NAVY_00000516 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 213 | Wells Fargo Bank Statement re account x6934 Sand Hill LLC, dated 08.31.2019 | WFB_00000724 | WFB_00000731 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 214 | INTENTIONALLY LEFT BLANK | | | |
| 215 | INTENTIONALLY LEFT BLANK | | | |
| 216 | INTENTIONALLY LEFT BLANK | | | |
| 217 | Wells Fargo Bank Statement re account x6934 Sand Hill LLC, dated 09.30.2019 | WFB_00000732 | WFB_00000738 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 218 | INTENTIONALLY LEFT BLANK | | | |
| 219 | INTENTIONALLY LEFT BLANK | | | |
| 220 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 10.31.2019 | WFB_00000592 | WFB_00000596 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 221 | INTENTIONALLY LEFT BLANK | | | |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 222 | INTENTIONALLY LEFT BLANK | | | |
| 223 | INTENTIONALLY LEFT BLANK | | | |
| 224 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | WFB_00000597 | WFB_00000602 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 225 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | NAVY_00000550 | NAVY_00000561 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 226 | INTENTIONALLY LEFT BLANK | | | |
| 227 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | NAVY_00001284 | NAVY_00001300 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 228 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2020-02.16.2020 | NAVY_00001301 | NAVY_00001313 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 229 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 02.29.2020 | WFB_00000612 | WFB_00000616 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 230 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | WFB_00000617 | WFB_00000621 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 231 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2020-03.16.2020 | NAVY_00001314 | NAVY_00001324 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 232 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | NAVY_00001325 | NAVY_00001340 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 233 | INTENTIONALLY LEFT BLANK | | | |
| 234 | INTENTIONALLY LEFT BLANK | | | |
| 235 | INTENTIONALLY LEFT BLANK | | | |
| 236 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2020-05.16.2020 | NAVY_00001341 | NAVY_00001355 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 237 | INTENTIONALLY LEFT BLANK | | | |
| 238 | INTENTIONALLY LEFT BLANK | | | |
| 239 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2020-06.16.2020 | NAVY_00001356 | NAVY_00001379 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 240 | Navy Federal Credit Union Transaction Details re Access x1390, Account x3094 Global Fuel Logistics, transaction period 07.20.2020-07.08.2020 | NAVY_00002205 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 241 | INTENTIONALLY LEFT BLANK | | | |
| 242 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | NAVY_00000079 | NAVY_00000101 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 243 | INTENTIONALLY LEFT BLANK | | | |
| 244 | INTENTIONALLY LEFT BLANK | | | |
| 245 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 08.31.2019 | WFB_00000584 | WFB_00000587 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 246 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | NAVY_00000141 | NAVY_00000163 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 247 | INTENTIONALLY LEFT BLANK | | | |
| 248 | INTENTIONALLY LEFT BLANK | | | |
| 249 | INTENTIONALLY LEFT BLANK | | | |
| 250 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 10.31.2019 | WFB_00000739 | WFB_00000744 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 251 - 300 | INTENTIONALLY LEFT BLANK | | | |
| 301 | ANB Bank Signature Card re Account x3099 [MM] | ANB_00000037 | | ANB_00000002; ANB_00000035 |
| 302 | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | GUAR_00000034 | | GUAR_00000001 |
| 303 | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | NAVY_00001959 | NAVY_00001968 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---------|-------------------|-------------|-------------|-----------------|
| 304 | Navy Federal Credit Union Application re Global Fuel Logistics, dated 06.08.2020 | NAVY_00000850 | NAVY_00000857 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 305 | Regions Bank Signature Cards re Account x0514 [MM] | REG_00000219 | REG_00000220 | REG_00000001 |
| 306 | Wells Fargo Bank Signature Card re Account x6934 Sand Hill LLC, LLC | WFB_00000536 | WFB_00000539 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 307 | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | WFB_00000532 | WFB_00000535 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 308 | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | SIG_00002876 | SIG_00002887 | SIG_00006978 |
| 309 | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | SIG_00002888 | SIG_00002900 | SIG_00006978 |
| 310 | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, dated 08.31.2018 | GUAR_00000047 | | GUAR_00000001 |
| 311 | BBVA Compass Signature Card re Account x0987 [5530 JD] LLC | BBVA_00000404 | BBVA_00000405 | BBVA_00000002; BBVA_00000280 |
| 312 | Access National Bank Statement re Account x5965 [PM] Inc., statement period 12.01.2018-12.31.2018 | ACNB_00000438 | ACNB_00000443 | ACNB_00000001 |
| 313 | Simple Signature Card for Kimberley Tew | SFT_00000173 | | SFT_00000001 |
| 314 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | NAVY_00000120 | NAVY_00000140 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 315 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | NAVY_00000164 | NAVY_00000187 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 316 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | NAVY_00000188 | NAVY_00000223 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 317 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | NAVY_00000224 | NAVY_00000262 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 318 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | NAVY_00000918 | NAVY_00000958 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 319 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | NAVY_00000959 | NAVY_00000999 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 320 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | NAVY_00001000 | NAVY_00001038 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 321 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2020-04.16.2020 | NAVY_00001039 | NAVY_00001078 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 322 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | NAVY_00001079 | NAVY_00001121 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 323 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | NAVY_00001122 | NAVY_00001169 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 324 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.08.2019-01.16.2019 | NAVY_00000458 | NAVY_00000461 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 325 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2019-02.16.2019 | NAVY_00000462 | NAVY_00000466 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 326 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2019-03.16.2019 | NAVY_00000467 | NAVY_00000471 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 327 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2019-04.16.2019 | NAVY_00000472 | NAVY_00000478 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 328 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | NAVY_00000479 | NAVY_00000488 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 329 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | NAVY_00000489 | NAVY_00000498 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 330 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | NAVY_00000499 | NAVY_00000507 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 331 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | NAVY_00000527 | NAVY_00000536 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 332 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | NAVY_00000537 | NAVY_00000549 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 333 | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | NAVY_00001272 | NAVY_00001283 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 334 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | WFB_00002339 | WFB_00002342 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 335 | American Express Corporate Card Authorization re Account x91009 National Air Cargo, Cardmember Michael Tew | AMEX_00000181 | | AMEX_00000001 |
| 336 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | WFB_00002354 | WFB_00002358 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 337 | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | WFB_00002359 | WFB_00002362 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 338 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 06.16.2018 | AMEX_00000004 | AMEX_00000005 | AMEX_00000001 |
| 339 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 07.16.2018 | AMEX_00000006 | AMEX_00000009 | AMEX_00000001 |
| 340 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 12.31.2019 | WFB_00002536 | WFB_00002540 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 341 | BBVA Compass Statement re Account x0987 5530 Jassamine Development LLC, statement period 11.01.2018-11.30.2018 | BBVA_00000444 | BBVA_00000446 | BBVA_00000002; BBVA_00000280 |
| 342 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 05.31.2019 | WFB_00000709 | WFB_00000712 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 343 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 01.31.2020 | WFB_00000760 | WFB_00000760 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 344 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 02.29.2020 | WFB_00000761 | WFB_00000764 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 345 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 03.31.2020 | WFB_00000765 | WFB_00000768 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 346 | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2020-06.30.2020 | NAVY_00000858 | NAVY_00000865 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 347 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 08.16.2018 | AMEX_00000010 | AMEX_00000013 | AMEX_00000001 |
| 348 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 09.16.2018 | AMEX_00000014 | AMEX_00000015 | AMEX_00000001 |
| 349 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 10.16.2018 | AMEX_00000016 | AMEX_00000017 | AMEX_00000001 |
| 350 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 11.16.2018 | AMEX_00000018 | AMEX_00000019 | AMEX_00000001 |
| 351 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 12.16.2018 | AMEX_00000020 | AMEX_00000021 | AMEX_00000001 |
| 352 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 01.16.2019 | AMEX_00000022 | AMEX_00000023 | AMEX_00000001 |
| 353 | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 02.16.2019 | AMEX_00000024 | AMEX_00000025 | AMEX_00000001 |
| 354 | Access National Bank Signature Card re Account x5965 [PM] | ACNB_00000099 | ACNB_00000100 | ACNB_00000001 |
| 355 | Signature Bank ACH Transaction re $25,000 to Global Fuel Logistics, dated 10.23.2019 | NAC_00000202 | | NAC_00000978-NAC_00000979 |
| 356 | Signature Bank ACH Transaction re $21,250 to [PM] Inc., dated 12.10.2018 | NAC_00000142 | | NAC_00000978-NAC_00000979 |
| 357 | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.22.2018 | SIG_00000142 | SIG_00000143 | SIG_00006978 |
| 358 | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.23.2018 | SIG_00000143 | SIG_00000144 | SIG_00006978 |
| 359 | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.10.2018 | SIG_00000149 | SIG_00000150 | SIG_00006978 |
| 360 | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.18.2018 | SIG_00000151 | SIG_00000152 | SIG_00006978 |
| 361 | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.28.2018 | SIG_00000155 | SIG_00000156 | SIG_00006978 |
| 362 | Signature Bank ACH Transaction re $30,000 to [MM], dated 12.03.2018 | NAC_E_00059594 | | NAC_E_00204515-NAC_E_00204516 |
| 363 | Access National Bank Statement re Account x5965 [PM] Inc., statement period 03.01.2019-03.31.2019 | ACNB_00000550 | ACNB_00000555 | ACNB_00000001 |
| 364 | ANB Bank Statement re Account x3099 [MM], dated 01.04.2019 | ANB_00000053 | ANB_00000055 | ANB_00000002; ANB_00000035 |
| 365 | Signature Bank ACH Transaction re $21,000 to [PM] Inc., dated 01.23.2019 | NAC_00000565 | | NAC_00000978-NAC_00000979 |
| 366 | Signature Bank ACH Transaction re $15,312.50 to [PM] Inc., dated 01.07.2019 | NAC_00000299 | | NAC_00000978-NAC_00000979 |
| 367 | Signature Bank ACH Transaction re $23,350 to [PM] Inc., dated 01.10.2019 | NAC_00000300 | | NAC_00000978-NAC_00000979 |
| 368 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.07.2019-01.16.2019 | NAVY_00000013 | NAVY_00000019 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 369 | Signature Bank ACH Transaction re $28,000 to [PM] Inc., dated 01.18.2019 | NAC_00000301 | | NAC_00000978-NAC_00000979 |
| 370 | Signature Bank ACH Transaction re $31,500 to [PM] Inc., dated 03.14.2019 | NAC_00000306 | | NAC_00000978-NAC_00000979 |
| 371 | Signature Bank ACH Transaction re $37,800 to [PM] Inc., dated 03.04.2019 | NAC_00000305 | | NAC_00000978-NAC_00000979 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 372 | Signature Bank ACH Transaction re $20,250 to [PM] Inc., dated 03.19.2019 | NAC_00000307 | | NAC_00000978-NAC_00000979 |
| 373 | Signature Bank ACH Transactions re: $37,500 to [PM] Inc., dated 04.08.2019; $18,750 to [PM] Inc., dated 04.11.2019; and $18,750 to [PM] Inc., dated 04.15.2019 | NAC_00000311 | NAC_00000313 | NAC_00000978-NAC_00000979 |
| 374 | Signature Bank ACH Transaction re $18,750 to [PM] Inc., dated 04.17.2019 | NAC_00000314 | | NAC_00000978-NAC_00000979 |
| 375 | Signature Bank ACH Transactions re: $18,750 to [PM] Inc., dated 04.22.2019; $18,750 to [PM] Inc., dated 04.24.2019; $38,640 to [PM], dated 04.29.2019; and $19,890 to [PM], dated 05.07.2019 | NAC_00000315 | NAC_00000318 | NAC_00000978-NAC_00000979 |
| 376 | Signature Bank ACH Transactions re: $49,750 to [PM], dated 05.07.2019; and $40,000 to [PM] Inc., dated 05.10.2019 | NAC_00000319 | NAC_00000320 | NAC_00000978-NAC_00000979 |
| 377 | Signature Bank ACH Transactions re: $19,900 to [PM], dated 05.15.2019; $23,785 to [PM], dated 05.21.2019; $9,950 to [PM], dated 05.23.2019; $11,150 to [PM], dated 05.28.2019; and $10,100 to [PM] Inc., dated 05.29.2019 | NAC_00000321 | NAC_00000325 | NAC_00000978-NAC_00000979 |
| 378 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | NAVY_00000055 | NAVY_00000078 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 379 | Signature Bank ACH Transactions re: $53,500 to [PM], dated 06.03.2019; $28,000 to [PM], dated 06.10.2019; and $9,500 to [PM], dated 06.13.2019 | NAC_00000326 | NAC_00000328 | NAC_00000978-NAC_00000979 |
| 380 | Signature Bank ACH Transactions re: $50,000 to [PM] Inc., dated 06.20.2019; $15,000 to [PM], dated 06.25.2019; and $30,000 to Sand Hill LLC, dated 06.26.2019 | NAC_00000329 | NAC_00000331 | NAC_00000978-NAC_00000979 |
| 381 | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | NAVY_00000102 | NAVY_00000119 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 382 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 06.30.2019 | WFB_00000713 | WFB_00000717 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 383 | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | NAC_00000158 | NAC_00000160 | NAC_00000978-NAC_00000979 |
| 384 | Signature Bank ACH Transactions re: $9,200 to Sand Hill LLC, dated 06.28.2019; $13,000 to SHI LLC, dated 07.09.2019; $27,475 to SHI LLC, dated 07.11.2019; and $10,000 to SHI LLC, dated 07.19.2019 | NAC_00000332 | NAC_00000335 | NAC_00000978-NAC_00000979 |
| 385 | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 07.31.2019 | WFB_00000718 | WFB_00000723 | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 386 | Signature Bank ACH Transaction re $12,900 to Global Fuel Logistics, dated 01.07.2020 | NAC_00000411 | | NAC_00000978-NAC_00000979 |
| 387 | Signature Bank ACH Transactions re: $15,500 to Global Fuel Logistics, dated 01.10.2020; $19,500 to Global Fuel Logistics, dated 01.17.2020; $9,800 to Global Fuel Logisitics, dated 01.22.2020; $13,500 to Global Fuel Logistics, dated 01.23.2020; $36,500 to Global Fuel Logistics, dated 01.27.2020; and $7,200 to Global Fuel Logistics, dated 01.30.2020 | NAC_00000412 | NAC_00000417 | NAC_00000978-NAC_00000979 |
| 388 | Signature Bank ACH Transaction re $13,000 to Global Fuel Logistics, dated 08.09.2019 | NAC_00000162 | | NAC_00000978-NAC_00000979 |
| 389 | Signature Bank ACH Transaction re $24,700 to Global Fuel Logistics, dated 03.05.2020 | NAC_00000448 | | NAC_00000978-NAC_00000979 |
| 390 | Signature Bank ACH Transactions re: $97,545 to Global Fuel Logistics, dated 06.22.2020; $71,550 to Global Fuel Logistics, dated 06.24.2020; and $105,000 to Global Fuel Logisitics, dated 06.29.2020 | NAC_00000461 | NAC_00000463 | NAC_00000978-NAC_00000979 |
| 391 | Signature Bank ACH Transaction re $83,526 to Global Fuel Logistics, dated 06.02.2020 | NAC_00000532 | | NAC_00000978-NAC_00000979 |
| 392 | Signature Bank ACH Transactions re: $45,220 to Global Fuel Logistics, dated 06.04.2020; $93,135 to Global Fuel Logistics, dated 06.09.2020; and $93,635 to Global Fuel Logisitics, dated 06.17.2020 | NAC_00000533 | NAC_00000535 | NAC_00000978-NAC_00000979 |
| 393 | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | NAVY_00000858 | NAVY_00000865 | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 394 | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | NAVY_00000753 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 395 | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | NAVY_00001678 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 396 | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | NAVY_00001684 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 397 | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | NAVY_00001692 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 398 | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | NAVY_00001702 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 399 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | NAVY_00001707 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 400 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00001711 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 401 | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | NAVY_00001717 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 402 | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | NAVY_00001718 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 403 | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | NAVY_00001719 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 404 | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | NAVY_00001720 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 405 | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | NAVY_00001731 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 406 | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | NAVY_00001737 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 407 | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | NAVY_00001744 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 408 | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | NAVY_00001758 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 409 | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | NAVY_00001757 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 410 | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | NAVY_00001767 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 411 | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | NAVY_00001770 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 412 | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | NAVY_00001772 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 413 | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | NAVY_00001775 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 414 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00001779 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 415 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | NAVY_00001780 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 416 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | NAVY_00001786 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 417 | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | NAVY_00001787 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 418 | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | NAVY_00001789 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 419 | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | NAVY_00001795 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 420 | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | NAVY_00001796 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 421 | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | NAVY_00001797 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 422 | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | NAVY_00001805 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 423 | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | NAVY_00001800 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 424 | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | NAVY_00001823 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 425 | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | NAVY_00001821 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 426 | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | NAVY_00001725 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 427 | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | NAVY_00001778 | | NAVY_00000002-NAVY_00000003; NAVY_00002211-NAVY_00002212; NAVY_00002217 |
| 428 | Signature Bank ACH Transaction re: $13,000 to Sand Hill LLC, dated 08.09.2019 | NAC_00000162 | | NAC_00000978-NAC_00000979 |
| 429 | Signature Bank ACH Transaction re: $35,000 to Sand Hill LLC, dated 08.14.2019 | NAC_00000163 | | NAC_00000978-NAC_00000979 |
| 430 | Signature Bank ACH Transaction re: $15,000 to Global Fuel Logistics, dated 08.15.2019 | NAC_00000164 | | NAC_00000978-NAC_00000979 |
| 431 | Signature Bank ACH Transaction re: $27,000 to Sand Hill LLC, dated 08.22.2019 | NAC_00000167 | | NAC_00000978-NAC_00000979 |
| 432 | Signature Bank ACH Transaction re: $45,000 to Sand Hill LLC, dated 08.26.2019 | NAC_00000168 | | NAC_00000978-NAC_00000979 |
| 433 | Signature Bank Wire Transaction re: $45,000 to Global Fuel Logistics, dated 08.29.2019 | NAC_00000902 | NAC_00000903 | NAC_00000978-NAC_00000979 |
| 434 | Signature Bank ACH Transaction re: $13,000 to Global Fuel Logistics, dated 02.03.2020 | NAC_00000440 | | NAC_00000978-NAC_00000979 |
| 435 | Signature Bank ACH Transaction re: $23,200 to Global Fuel Logistics, dated 02.06.2020 | NAC_00000441 | | NAC_00000978-NAC_00000979 |
| 436 | Signature Bank ACH Transaction re: $32,500 to Global Fuel Logistics, dated 02.13.2020 | NAC_00000443 | | NAC_00000978-NAC_00000979 |
| 437 | Signature Bank ACH Transaction re: $55,000 to Global Fuel Logistics, dated 02.18.2020 | NAC_00000445 | | NAC_00000978-NAC_00000979 |
| 438 | Signature Bank ACH Transaction re: $40,000 to Global Fuel Logistics, dated 02.26.2020 | NAC_00000446 | | NAC_00000978-NAC_00000979 |
| 439 | Signature Bank ACH Transaction re: $74,955 to Global Fuel Logistics, dated 03.11.2020 | NAC_00000450 | | NAC_00000978-NAC_00000979 |
| 440 | Signature Bank ACH Transaction re: $17,200 to Global Fuel Logistics, dated 03.17.2020 | NAC_00000451 | | NAC_00000978-NAC_00000979 |
| 441 | Signature Bank ACH Transaction re: $32,245 to Global Fuel Logistics, dated 03.24.2020 | NAC_00000453 | | NAC_00000978-NAC_00000979 |
| 442 | Signature Bank ACH Transaction re: $32,300 to Global Fuel Logistics, dated 03.26.2020 | NAC_00000454 | | NAC_00000978-NAC_00000979 |
| 443 | Signature Bank ACH Transaction re: $41,225 to Global Fuel Logistics, dated 04.02.2020 | NAC_00000455 | | NAC_00000978-NAC_00000979 |
| 444 | Signature Bank ACH Transaction re: $37,353 to Global Fuel Logistics, dated 04.08.2020 | NAC_00000457 | | NAC_00000978-NAC_00000979 |
| 445 | Signature Bank ACH Transaction re: $31,355 to Global Fuel Logistics, dated 04.13.2020 | NAC_00000458 | | NAC_00000978-NAC_00000979 |
| 446 | Signature Bank ACH Transaction re: $56,530 to Global Fuel Logistics, dated 04.21.2020 | NAC_00000171 | | NAC_00000978-NAC_00000979 |
| 447 | Signature Bank ACH Transaction re: $36,240 to Global Fuel Logistics, dated 04.29.2020 | NAC_00000173 | | NAC_00000978-NAC_00000979 |
| 448 | Signature Bank ACH Transaction re: $77,460 to Global Fuel Logistics, dated 05.18.2020 | NAC_00000175 | | NAC_00000978-NAC_00000979 |
| 449 | Signature Bank ACH Transaction re: $85,500 to Global Fuel Logistics, dated 05.27.2020 | NAC_00000177 | | NAC_00000978-NAC_00000979 |
| 450 | Signature Bank ACH Transaction re $20,250.00 to [PM] Inc., dated 03.18.2019 | NAC_00000308 | | NAC_00000978-NAC_00000979 |
| 451 | Signature Bank ACH Transaction re $60,000 to Global Fuel Logistics, dated 09.10.2019 | NAC_00000192 | | NAC_00000978-NAC_00000979 |
| 452 | Signature Bank ACH Transaction re $51,500 to Sand Hill LLC, dated 09.12.2019 | NAC_00000193 | | NAC_00000978-NAC_00000979 |
| 453 | Signature Bank ACH Transaction re $11,950 to Global Fuel Logistics, dated 09.16.2019 | NAC_00000194 | | NAC_00000978-NAC_00000979 |
| 454 | Signature Bank ACH Transaction re $41,500 to Sand Hill LLC, dated 09.19.2019 | NAC_00000196 | | NAC_00000978-NAC_00000979 |
| 455 | Signature Bank ACH Transaction re $60,000 to Sand Hill LLC, dated 09.26.2019 | NAC_00000198 | | NAC_00000978-NAC_00000979 |
| 456 | Signature Bank ACH Transaction re $75,000 to Sand Hill LLC, dated 09.30.2019 | NAC_00000199 | | NAC_00000978-NAC_00000979 |
| 457 | Signature Bank ACH Transaction re $35,000 to Sand Hill LLC, dated 10.10.2019 | NAC_00000200 | | NAC_00000978-NAC_00000979 |
| 458 | Signature Bank ACH Transaction re $23,750 to Global Fuel Logistics, dated 10.30.2019 | NAC_00000204 | | NAC_00000978-NAC_00000979 |
| 459 | Signature Bank ACH Transaction re $25,000 to Sand Hill LLC, dated 11.18.2019 | NAC_00000207 | | NAC_00000978-NAC_00000979 |
| 460 | Signature Bank ACH Transaction re $17,900 to Global Fuel Logistics, dated 11.21.2019 | NAC_00000208 | | NAC_00000978-NAC_00000979 |
| 461 | Signature Bank ACH Transaction re $42,000 to Global Fuel Logistics, dated 11.27.2019 | NAC_00000210 | | NAC_00000978-NAC_00000979 |
| 462 | Signature Bank ACH Transaction re $26,500 to Global Fuel Logistics, dated 12.05.2019 | NAC_00000212 | | NAC_00000978-NAC_00000979 |
| 463 | Signature Bank ACH Transaction re $51,150 to Global Fuel Logistics, dated 12.09.2019 | NAC_00000213 | | NAC_00000978-NAC_00000979 |
| 464 | Signature Bank ACH Transaction re $7,800 to Global Fuel Logistics, dated 12.16.2019 | NAC_00000215 | | NAC_00000978-NAC_00000979 |
| 465 | Signature Bank ACH Transaction re $33,300 to Global Fuel Logistics, dated 12.17.2019 | NAC_00000216 | | NAC_00000978-NAC_00000979 |
| 466 | Signature Bank ACH Transaction re $14,350 to Global Fuel Logistics, dated 12.19.2019 | NAC_00000217 | | NAC_00000978-NAC_00000979 |
| 467 | Signature Bank ACH Transaction re $55,500 to Global Fuel Logistics, dated 12.26.2019 | NAC_00000438 | | NAC_00000978-NAC_00000979 |
| 468 | Signature Bank ACH Transaction re $77,500 to Global Fuel Logistics, dated 12.30.2019 | NAC_00000439 | | NAC_00000978-NAC_00000979 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 469 | Wells Fargo Bank Wire Transaction Report re Acct x6934 $20,611.01, dated 11.01.2019 | WFB_00001033 | | WFB_00000144-WFB_00000146; WFB_00001054-WFB_00001058 |
| 470 | INTENTIONALLY LEFT BLANK | | | |
| 471 | INTENTIONALLY LEFT BLANK | | | |
| 472 | INTENTIONALLY LEFT BLANK | | | |
| 473 | American Express Application re Michael Tew | AMEX_00000182 | | AMEX_00000001 |
| 474 | American Express Application re Kimberley Tew | AMEX_00000183 | | AMEX_00000001 |
| 475 - 499 | INTENTIONALLY LEFT BLANK | | | |
| 500 | Kraken Account Opening and Verification Documents for Kimberley Tew | KRKN_00000008 | KRKN_00000001 | KRKN_00000001 |
| 501 | Kraken Account Opening and Verification Documents for Michael Tew | KRKN_00000020 | KRKN_00000001 | KRKN_00000001 |
| 502 | Coinbase profile image records for Michael Tew | COIN_00000027; COIN_00000032 | | COIN_00000076; COIN_00000077; COIN_00000078 |
| 503 | Coinbase profile image records for Kimberley Tew | COIN_00000028 | COIN_00000029 | COIN_00000076; COIN_00000077; COIN_00000078 |
| 504 | Google Pay Customer Profile re kley@me.com | GPAY_00000009 | GPAY_00000012 | GPAY_00000097-GPAY_00000106 |
| 505 | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | AUDI_00000001 | AUDI_00000037 | AUDI_00000042 |
| 506 | McDonald Audi Wire Transfer Records re $20,611.01 Incoming Money Transfer, dated 11.01.2019 | AUDI_00000038 | AUDI_00000039 | AUDI_00000042 |
| 507 | Wynn Las Vegas Jackpot Report between 07.04.2019 and 11.29.2019 | WYNN_00000174 | | WYNN_00000002 |
| 508 | Wynn Las Vegas 2019 Loss Summary, as of 07.16.2020 | WYNN_00000179 | | WYNN_00000002 |
| 509 | Wynn Las Vegas Reservation Confirmation #23362412 for Kimberley Tew, 10.30.2019 arrival & 11.02.19 departure | WYNN_00000689 | | WYNN_00000002 |
| 510 | Wynn Las Vegas Reservation/Stay History for Kimberley Tew | WYNN_00000730 | WYNN_00000736 | WYNN_00000002 |
| 511 | Wynn Las Vegas Reservation/Stay History re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | WYNN_00000624 | | WYNN_00000002 |
| 512 | GoDaddy Domain Information re Domain Name "Global Fuel.Co" | ORD_00019768; ORD_00019821 | | ORD_00019742 |
| 513 | GoDaddy Domain Information re Domain Name "Sandhillrp.com" | ORD_00019747; ORD_00019823 | ORD_00019827 | ORD_00019742 |
| 514 | AT&T Subscriber Information re phone number x1312, Michael Tew | ORD_00019224 | | ORD_00020003-ORD_00020004 |
| 515 | AT&T Subscriber Information re phone number x7473, Michael Tew | ORD_00019225 | | ORD_00020003-ORD_00020004 |
| 516 | AT&T Subscriber Information re phone number x2046, Kimberley Vertanen | ORD_00019223 | | ORD_00020003-ORD_00020004 |
| 517 | AT&T Text Message History re phone numbers x2046 & x1312 | ORD_00019204 | | ORD_00020003-ORD_00020004 |
| 518 | AT&T Records re phone number x1312 | ORD_00019224; ORD_00019331 | ORD_00019544 | ORD_00020003-ORD_00020004 |
| 519 | Spreadsheet of Verizon Call Records re phone number x1709 | ORD_00019950 | | ORD_00019935 |
| 520 | Google Subscriber Information re [5530 JD] Email Recovery (chrisrncn@gmail.com) | ORD_00015084 | | ORD_00017711; ORD_00019955-ORD_00020002 |
| 521 | Google Subscriber Information re [PM] email recovery (political.media.wdc@gmail.com) | ORD_00017716 | | ORD_00017711; ORD_00019955-ORD_00020003 |
| 522 | Google Voice Record re Google Voice Number x0152 | ORD_00015068 | | ORD_00017711; ORD_00019955-ORD_00020004 |
| 523 | Google Subscriber Information re vtleycap@gmail.com (recovery email kley@me.com) | ORD_00019129 | | ORD_00017711; ORD_00019955-ORD_00020005 |
| 524 | Google subscriber information re meyersconsultinggroupinc@gmail.com | | | ORD_00017711; ORD_00019955-ORD_00020006 |
| 525 | IRS Form W-9 re [MM], dated 10.11.2018 | NAC_00000393 | NAC_00000398 | NAC_00000978-NAC_00000979 |
| 526 | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | VCORP_00000062 | VCORP_00000064 | VCORP_00000001 |
| 527 | Plea agreement as to Jonathan Yioulos, dated 11.18.2021 | | | |
| 528 | Audio of 7/15/2020 Proffer with Michael Tew | INV_00004475 | | |
| 529 | Audio of 7/28/2020 Proffer with Michael Tew | INV_00004476 | INV_00004479 | |
| 530 | Audio of 10/23/2020 Proffer with Kimberley Tew | INV_00004486 | INV_00004488 | |
| 531 | 07.07.2020 Photograph of Yioulos Phone Contact 'JB' | INV_00005154 | | |
| 532 | Email re "RE: AMEX" on 07.16.2018 | NAC_E_00108968 | NAC_E_00108969 | NAC_E_00204515-NAC_E_00204516 |
| 533 | Email re "FW: Scanned Document" on 07.31.2018 | NAC_E_00113905 | NAC_E_00113906 | NAC_E_00204515-NAC_E_00204516 |
| 534 | Email re "RE: Wire - Michael Tew" on 08.02.2018 | NAC_E_00055400 | NAC_E_00055401 | NAC_E_00204515-NAC_E_00204516 |
| 535 | Email re "FW: MT AGMT" on 09.14.2018 | NAC_E_00069611 | NAC_E_00069612 | NAC_E_00204515-NAC_E_00204516 |
| 536 | Email re "FW: National Air Cargo Holdings Correspondence" on 09.17.2018 | NAC_E_00194887 | NAC_E_00194888 | NAC_E_00204515-NAC_E_00204516 |
| 537 | Invoice #79487 re: [MCG] Inc for $10,000.00, dated 10.30.2018 | NAC_00000546 | | NAC_00000978-NAC_00000979 |
| 538 | Email re "RE: Michael Tew - AMEX" on 01.17.2019 | NAC_E_00170325 | | NAC_E_00204515-NAC_E_00204516 |
| 539 | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10222 for $17,955.50; & Aero Mainteneace Resources Invoice #9611 for $79,292) | NAC_E_00106466 | NAC_E_00106468 | NAC_E_00204515-NAC_E_00204516 |
| 540 | Invoice #79466 re: [MCG] Inc for $30,000.00, dated 10.12.2018 | NAC_00000545 | | NAC_00000978-NAC_00000979 |
| 541 | Invoice #79488 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | NAC_00000547 | | NAC_00000978-NAC_00000979 |
| 542 | Invoice #79489 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | NAC_00000548 | | NAC_00000978-NAC_00000979 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 543 | Invoice #79490 re: [MCG] Inc for $25,000.00, dated 12.11.2018 | NAC_00000549 | | NAC_00000978-NAC_00000979 |
| 544 | Colorado Secretary of State Statement of Foreign Entity Authority re: Global Fuel Logistics Inc., filed 07.11.2019 | VCORP_00000003 | VCORP_00000005 | VCORP_00000001 |
| 545 | IRS assignment of Emploment Identification Number re Global Fuel Logistics, dated 07.09.2019 | VCORP_00000015 | VCORP_00000017 | VCORP_00000001 |
| 546 | Wyoming Secretary of State Articles of Incorporation re Global Fuel Logistics Inc, filed 07.09.2019 | VCORP_00000018 | VCORP_00000021 | VCORP_00000001 |
| 547 | IRS Form SS-4 Application for Employer Identification Number re Sand Hill LLC | VCORP_00000070 | VCORP_00000071 | VCORP_00000001 |
| 548 | State of New York Department of State Certification of Articles of Organization, dated 11.09.2018 | VCORP_00000072 | | VCORP_00000001 |
| 549 | Google Pay Customer Profile re kleytew@gmail.com | GPAY_00000017 | GPAY_00000020 | GPAY_00000097-GPAY_00000106 |
| 550 | IRS Form 1099 re SandHill Research Partners, tax years 2015 through 2018 | NAC_00000898 | NAC_00000899 | NAC_00000978-NAC_00000979 |
| 551 | Audio of 07.29.2020 meeting with Michael Tew at Yeti store | INV_00004480 | | |
| 552 | Email re "RE: MT AGMT" on 09.14.2018 | NAC_E_00161044 | | NAC_E_00204515-NAC_E_00204516 |
| 553 | Email headers re email received by chrismcn@gmail.com on 08.22.2018 | ORD_00015085 | ORD_00015089 | ORD_00017711; ORD_00019955-ORD_00020006 |
| 554 | Spreadsheet of Apple account information re kley@me.com | ORD_00002913 | | ORD_00015053-ORD_00015054 |
| 555 - 599 | INTENTIONALLY LEFT BLANK | | | |
| 600 | *James* Log (ECF #341-1), filed 12.05.2023 | | | |
| 601 | Email re "ACH Invoice" on 08.07.2018 ([HS] Invoice dated 08.07.2018 for $15,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 602 | Text messages between M.T. 08.07.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 603 | Email re "re ACH Invoice" on 08.08.2018 ([HS] Invoice dated 08.08.2018 for $15,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 604 | Text messages between M.T. and J.Y. 08.08.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 605 | Text messages between M.T. and J.Y. 08.09.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 606 | Text messages between M.T. and J.Y. 08.13.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 607 | Email re "Invoices: Michael Tew ACH August 15" on 08.14.2018 (Sand Hill Invoice #49 for $10,000 & [HS] Invoice dated 08.14.2018 for $20,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 608 | Text message between J.Y. and M.T on 08.10.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 609 | Text message between J.Y. and M.T on 08.18.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 610 | Text message between J.Y. and M.T on 08.21.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 611 | Email re "Invoice (CORRECTED)" on 08.22.2018 ([5530 JD] Invoice #7321116 for $15,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 612 | Email re "Wire Confirmation" on 08.22.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 613 | Text messages between J.Y. and M.T on 08.22.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 614 | Text messages between J.Y. and M.T on 08.23.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 615 | Email re "re Invoice (CORRECTED)" on 08.23.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 616 | Emails re "re Is there an invoice for this wire out of Holdings?" on 08.24.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 617 | Text messages between M.T. and JY. on 08.28.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 618 | Email re "Confirms" on 08.30.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 619 | Text messages between J.Y. and K.T. on 08.30.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 620 | Text messages between J.Y. and M.T. on 08.30.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 621 | Text messages between M.T. and J.Y. on 08.31.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 622 | Text messages between M.T. and J.Y. on 09.01.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 623 | INTENTIONALLY LEFT BLANK | | | |
| 624 | Emails re "RE: Is there an invoice?" on 09.07.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 625 | Text messages between M.T. and J.Y. on 09.07.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 626 | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:13pm | | | NAC_E_00204515-NAC_E_00204516 |
| 627 | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:14pm | | | NAC_E_00204515-NAC_E_00204516 |
| 628 | Text messages from J.Y. to K.T. on 09.10.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 629 | Email (NO SUBJECT) on 09.10.2018 ([5530 JD] Invoice #7321118 for $15,000 & Invoice #7321117 for $15,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 630 | Emails re "RE: [HS] Invoices" on 09.10.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 631 | Emails re "RE:" (NO SUBJECT) on 09.10.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 632 | Email re "Cancel ACH" on 09.10.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 633 | Text messages between M.T. and J.Y. on 09.12.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 634 | Text messages from J.Y. to K.T. on 09.12.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 635 | Text messages from J.Y. to K.T. on 09.13.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 636 | Text messages between M.T. and J.Y. on 09.13.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 637 | INTENTIONALLY LEFT BLANK | | | |
| 638 | Email re "Invoice" on 09.18.2018 ([5530 JD] Invoice #7321119 for $15,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 639 | Text messages from J.Y. to K.T. on 09.18.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 640 | Text messages from J.Y. to K.T. on 09.28.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 641 | INTENTIONALLY LEFT BLANK | | | |
| 642 | Email re "Consulting Invoice" on 09.28.2018 ([5530 JD] Invoice #7321120 for $15,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 643 | Email re "RE: Invoices needed - Holdings" on 09.28.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 644 | Email re "Jess" on 10.01.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 645 | Text message from J.Y. to M.T. on 10.09.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 646 | Text messages from J.Y. to K.T. on 10.25.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 647 | Email re "Fwd: Invoice" on 10.25.2018 | | | NAC_E_00204515-NAC_E_00204516 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 648 | Text messages between J.Y. to M.T. on 10.25.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 649 | Email re "Oct Invoice" on 10.30.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 650 | Text messages between J.Y. to M.T. on 10.30.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 651 | Text messages from J.Y. to K.T. on 10.30.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 652 | Text messages between J.Y. to M.T. on 10.31.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 653 | Email re "is there an invoice for this payment out of holdings?" on 10.31.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 654 | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018 at 2:13pm | | | NAC_E_00204515-NAC_E_00204516 |
| 655 | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018, time unknown | | | NAC_E_00204515-NAC_E_00204516 |
| 656 | Text messages sent from Kley (M.T.) to M.M. on 11.06.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 657 | Email re "[MCG] LLC" on 11.06.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 658 | Email re "RE: Invoice" on 11.09.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 659 | Text messages between J.Y. to M.T. on 11.09.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 660 | INTENTIONALLY LEFT BLANK | | | |
| 661 | Email re "RE: Entity: Sand Hill, LLC - New York" on 11.12.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 662 | Text messages between J.Y. and M.T. on 11.13.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 663 | Text messages between J.Y. and M.T. on 11.15.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 664 | Text messages between J.Y. and M.T. on 11.16.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 665 | Text messages between J.Y. and M.T. on 11.19.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 666 | Email re "RE: Invoice" on 11.19.2018 at 8:55pm | | | NAC_E_00204515-NAC_E_00204516 |
| 667 | Email re "RE: Invoice" on 11.19.2018 at 9:04pm | | | NAC_E_00204515-NAC_E_00204516 |
| 668 | Text messages between J.Y. and M.T. on 11.20.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 669 | Text messages between Kley (M.T.) and M.M. on 11.20.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 670 | Text messages between J.Y. and M.T. on 11.21.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 671 | Text messages between J.Y. and M.T. on 11.23.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 672 | Text messages between J.Y. and M.T. on 11.25.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 673 | Text messages between J.Y. and M.T. on 11.26.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 674 | Email re "RE: Invoice" on 11.26.2018 at 7:22pm ([5530 JD] Invoice #7321122 for $30,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 675 | Email re "RE: Invoice" on 11.26.2018 at 4:22pm | | | NAC_E_00204515-NAC_E_00204516 |
| 676 | Text messages between J.Y. and M.T. on 11.27.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 677 | Email re "RE: Cash Sheet - Holdings - what's this?" on 11.28.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 678 | Text message from J.Y. to M.T. on 11.30.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 679 | Text messages from J.Y. to K.T. on 12.01.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 680 | Email re "RE: Final Invoice" on 12.03.2018 ([MCG] Invoice #79489 for $30,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 681 | Text messages between J.Y. and M.T. on 12.04.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 682 | Text messages from J.Y. to K.T. on 12.04.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 683 | Email re "Missing Meyers invoices" on 12.04.2018 ([MCG] Invoice #79489 for $30,000 & Invoice #79488 for $30,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 684 | Text messages between J.Y. and M.T. on 12.06.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 685 | Text messages from J.Y. to K.T. on 12.06.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 686 | Email re "Fwd: [PM], Inc. - Invoice for Services" on 12.07.2018 ([PM] Invoice #6516 for $21,250) | | | NAC_E_00204515-NAC_E_00204516 |
| 687 | Text messages between J.Y. and M.T. on 12.07.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 688 | Email re: "RE: [PM], Inc. - Invoice for Services" on 12.07.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 689 | Text messages between J.Y. and M.T. on 12.06.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 690 | Text messages between J.Y. and M.T. on 12.10.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 691 | Email re "New Vendor - Paid on Friday" on 12.10.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 692 | Email re "Re: Final Invoice" on 12.11.2018 ([MCG] Invoice #79490 for $25,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 693 | Text messages between J.Y. and M.T. on 12.11.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 694 | Email re "Meyers Inv" on 12.14.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 695 | Text messages between J.Y. and M.T. on 12.18.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 696 | Text messages between Kley (M.T.) and M.M. on 12.18.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 697 | Text messages between J.Y. and M.T. on 12.19.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 698 | Text messages between J.Y. and M.T. on 12.20.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 699 | Email re "FW: INVOICES: MICHAEL TEW ACH AUGUST 15" on 12.20.2018 | | | NAC_E_00204515-NAC_E_00204516 |
| 700 | Email re "FW: [PM], Inc. - Invoice for Services" on 12.20.2018 ([PM] Invoice #6517 for $15,125) | | | NAC_E_00204515-NAC_E_00204516 |
| 701 | Text messages between J.Y. and M.T. on 12.21.2018 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 702 | Text messages between J.Y. and M.T. on 01.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 703 | Email re "Invoice from [PM], Inc." on 01.07.2019 ([PM] Invoice #6540 for $15,312.50) | | | NAC_E_00204515-NAC_E_00204516 |
| 704 | Text messages between J.Y. and M.T. on 01.09.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 705 | Text messages between J.Y. and M.T. on 01.10.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 706 | Email re "Invoice from [PM], Inc." on 01.10.2019 ([PM] Invoice #6670 for $25,350) | | | NAC_E_00204515-NAC_E_00204516 |
| 707 | Text messages between J.Y. and M.T. on 01.17.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 708 | Text messages from J.Y. to K.T. on 01.17.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 709 | Email re "FW: Invoice from [PM], Inc." on 01.17.2019 | | | NAC_E_00204515-NAC_E_00204516 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 710 | Text messages between J.Y. and M.T. on 01.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 711 | Email re "Invoice from [PM], Inc." on 01.18.2019 ([PM] Invoice #6712 for $27,562.50) | | | NAC_E_00204515-NAC_E_00204516 |
| 712 | Text messages between J.Y. and M.T. on 01.23.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 713 | Email re "Invoice from [PM], Inc." on 01.23.2019 ([PM] Invoice #6714 for $21,000 & Invoice #6712 for $28,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 714 | Email re "FW: Invoice from [PM], Inc." on 01.25.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 715 | Text messages from J.Y. to K.T. on 02.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 716 | Email re "Invoice from [PM], Inc." on 02.07.2019 ([PM] Invoice #6775 for $15,250) | | | NAC_E_00204515-NAC_E_00204516 |
| 717 | Text messages between J.Y. and M.T. on 02.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 718 | Text messages from J.Y. to K.T. on 02.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 719 | Email re "Invoice from [PM], Inc." on 02.19.2019 ([PM] Invoice #6786 for $15,250) | | | NAC_E_00204515-NAC_E_00204516 |
| 720 | Email re "FW: Invoice from [PM], Inc." on 02.21.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 721 | Text messages between J.Y. and M.T. on 02.24.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 722 | Text messages between J.Y. and M.T. on 03.01.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 723 | Email re "Invoice from [PM], Inc." on 03.04.2019 ([PM] Invoice #6804 for $37,800) | | | NAC_E_00204515-NAC_E_00204516 |
| 724 | Text messages between Kley (M.T.) and K.T. on 03.06.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 725 | Email re "FW: Invoice from [PM], Inc." on 03.07.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 726 | Text messages between Kley (M.T.) and K.T. on 03.14.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 727 | Email re "Invoice from [PM], Inc." on 03.14.2019 ([PM] Invoice #6881 for $31,500) | | | NAC_E_00204515-NAC_E_00204516 |
| 728 | Email re "FW: Invoice from [PM], Inc." on 03.15.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 729 | Text messages between Kley (M.T.) and K.T. on 03.17.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 730 | Text messages between Kley (M.T.) and K.T. on 03.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 731 | Text messages between J.Y. and M.T. on 03.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 732 | Email re "Invoice from [PM], Inc." on 03.18.2019 ([PM] Invoice #6910 for $20,250) | | | NAC_E_00204515-NAC_E_00204516 |
| 733 | Email re "FW: Invoice from [PM], Inc." on 03.19.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 734 | Text messages between J.Y. and M.T. on 03.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 735 | Text messages between Kley (M.T.) and K.T. on 03.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 736 | Text messages between M.T. and K.T. on 03.28.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 737 | Email re "Invoice from [PM], Inc." on 03.28.2019 ([PM] Invoice #6976 for $38,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 738 | INTENTIONALLY LEFT BLANK | | | |
| 739 | Text messages between Kley (M.T.) and K.T. on 03.30.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 740 | Text messages between Kley (M.T.) and K.T. on 04.03.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 741 | Text messages between J.Y. and M.T. on 04.03.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 742 | Email re "Invoice from [PM], Inc." on 04.03.2019 ([PM] Invoice #6910 for $30,150) | | | NAC_E_00204515-NAC_E_00204516 |
| 743 | Email re "FW: Invoice from [PM], Inc." on 04.04.2019 ([PM] Invoice #7004 for 11,250) | | | NAC_E_00204515-NAC_E_00204516 |
| 744 | INTENTIONALLY LEFT BLANK | | | |
| 745 | Text messages between J.Y. and M.T. on 04.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 746 | Text messages between Kley (M.T.) and K.T. on 04.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 747 | Text messages between J.Y. and M.T. on 04.08.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 748 | Email re "Invoice from [PM], Inc." on 04.08.2019 ([PM] Invoice #7101 for $37,500) | | | NAC_E_00204515-NAC_E_00204516 |
| 749 | Email re "re Invoice from [PM], Inc." on 04.09.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 750 | INTENTIONALLY LEFT BLANK | | | |
| 751 | Text messages between M.T. and K.T. on 04.11.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 752 | Text messages from Kley (M.T.) to M.M. on 04.12.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 753 | Text messages between M.T. and K.T. on 04.12.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 754 | Text messages between J.Y. and M.T. on 04.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 755 | Text messages between M.T. and K.T. on 04.16.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 756 | Text messages between M.T. and K.T. on 04.17.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 757 | INTENTIONALLY LEFT BLANK | | | |
| 758 | Text messages between M.T. and Kley (K.T.) on 04.21.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 759 | Text messages between M.T. and K.T. on 04.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 760 | Text messages between Kley (M.T.) and K.T. on 04.23.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 761 | Text message from J.Y. to M.T. on 04.24.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 762 | Text messages between M.T. and K.T. on 04.24.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 763 | INTENTIONALLY LEFT BLANK | | | |
| 764 | Email re "Invoice from [PM], Inc." on 04.29.2019 ([PM] Invoice #7156 for $75,000 and Invoice #7158 for $39,780) | | | NAC_E_00204515-NAC_E_00204516 |
| 765 | Email re "FW: Invoice from [PM], Inc." on 04.29.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 766 | Text messages between Kley (M.T.) and K.T. on 04.30.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 767 | Text messages between M.T. and K.T. on 05.01.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 768 | Text messages between M.T. and K.T. on 05.02.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 769 | Text messages between M.T. and K.T. on 05.06.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 770 | Text messages between J.Y. and M.T. on 05.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 771 | Text messages between M.T. and K.T. on 05.08.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 772 | Text messages between Kley (M.T.) and K.T. on 05.09.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 773 | Text messages between Kley (M.T.) and K.T. on 05.10.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 774 | Text messages between J.Y. and M.T. on 05.10.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 775 | Text messages between J.Y. and M.T. on 05.15.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 776 | Text messages between M.T. and K.T. on 05.20.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 777 | Text messages between M.T. and Kley (K.T.) on 05.21.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 778 | Text messages between M.T. and Kley (K.T.) on 05.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 779 | Text messages between M.T. and K.T. on 05.27.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 780 | Text messages between M.T. and K.T. on 05.28.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 781 | Text messages between J.Y. and M.T. on 06.03.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 782 | Text messages between Kley (M.T.) and K.T. on 06.03.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 783 | Email re "Journal Entry Testing" on 06.04.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 784 | Text messages between M.T. and K.T. on 06.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 785 | Text messages between M.T. and K.T. on 06.10.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 786 | Text messages between J.Y. and M.T. on 06.12.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 787 | Text messages between Kley (M.T.) and K.T. on 06.12.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 788 | Text messages between J.Y. and M.T. on 06.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 789 | Text messages between M.T. and K.T. on 06.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 790 | Text messages between M.T. and K.T. on 06.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 791 | INTENTIONALLY LEFT BLANK | | | |
| 792 | Text messages between M.T. and K.T. on 06.24.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 793 | Text messages between M.T. and K.T. on 06.25.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 794 | Text messages between M.T. and K.T. on 06.26.2019 and 06.27.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 795 | Text messages between J.Y. and M.T. on 06.26.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 796 | Text messages between J.Y. and M.T. on 06.28.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 797 | Text messages between M.T. and K.T. on 06.28.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 798 | Text messages between M.T. and K.T. on 06.29.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 799 | Email re "RE: Please assist" on 07.11.2019 | | | NAC_E_00204515-NAC_E_00342322 |
| 800 | Text messages between M.T. and K.T. on 07.02.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 801 | Emails re "Invoice From [PM], Inc." on 07.03.2019 ([PM] Invoice #7201 for $40,000; Invoice #7263 for $10,100; Invoice #7312 for $9,500; & Invoice #7322 for $30,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 802 | Text messages between M.T. and K.T. on 07.04.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 803 | INTENTIONALLY LEFT BLANK | | | |
| 804 | Text messages between M.T. and K.T. on 07.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 805 | Text messages between M.T. and K.T. on 07.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 806 | Text messages between J.Y. and M.T. on 07.08.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 807 | Emails re "Re: Please assist" on 07.08.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 808 | Emails re "Re: Please assist" on 07.09.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 809 | Text messages between M.T. and K.T. on 07.09.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 810 | Text messages between M.T. and K.T. on 07.11.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 811 | Text messages between M.T. and K.T. on 07.17.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 812 | Text messages between M.T. and K.T. on 07.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 813 | Text messages between J.Y. and M.T. on 07.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 814 | Text messages between J.Y. and M.T. on 07.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 815 | Text messages between M.T. and K.T. on 07.29.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 816 | Text messages between J.Y. and M.T. on 07.30.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 817 | Text messages between J.Y. and M.T. on 08.01.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 818 | Text messages between J.Y. and M.T. on 08.03.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 819 | Text messages between M.T. and K.T. on 08.04.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 820 | Text messages between J.Y. and M.T. on 08.05.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 821 | Text messages between M.T. and K.T. on 08.05.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 822 | Text messages between M.T. and K.T. on 08.06.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 823 | Text messages between J.Y. and M.T. on 08.06.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 824 | Text messages between M.T. and K.T. on 08.11.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 825 | Text messages between M.T. and K.T. on 08.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 826 | Text messages between J.Y. and M.T. on 08.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 827 | Text messages between J.Y. and M.T. on 08.14.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 828 | Text messages between J.Y. and M.T. on 08.15.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 829 | Text messages between M.T. and K.T. on 08.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 830 | Text messages between J.Y. and M.T. on 08.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 831 | Text messages between M.T. and K.T. on 08.20.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 832 | Text messages between J.Y. and M.T. on 08.21.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 833 | Text messages between J.Y. and M.T. on 08.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 834 | Text messages between M.T. and K.T. on 08.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 835 | Text messages between M.T. and K.T. on 08.23.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 836 | Text messages between M.T. and K.T. on 08.25.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 837 | Text messages between J.Y. and M.T. on 08.26.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 838 | Text messages between M.T. and K.T. on 08.26.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 839 | Text messages between M.T. and K.T. on 08.27.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 840 | Text messages between M.T. and K.T. on 08.28.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 841 | Email re "Invoices from Global Fuel Logistics, Inc" on 08.28.2019 (Global Fuel Logistics Invoice #987 for #9,500; Invoice #972 for $94,500; & Invoice #763 for $152,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 842 | Text messages between M.T. and K.T. on 08.29.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 843 | Emails re "RE: 8/29 Wires" on 08.29.2019 | | | NAC_E_00204515-NAC_E_00204516 |
| 844 | Email re "Global Fuel - Updated Invoice" on 08.29.2019 (Global Fuel Logistics Invoice #1001 for $55,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 845 | Email re "Invoices from Global Fuel Logistics, Inc" on 08.29.2019 (Global Fuel Logistics Invoice #1023 for $45,000; Invoice #1011 for $45,000; & Invoice #1001 for $56,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 846 | Text messages between M.T. and K.T. on 08.30.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 847 | INTENTIONALLY LEFT BLANK | | | |
| 848 | Text messages between M.T. and K.T. on 09.06.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 849 | Text messages between M.T. and K.T. on 09.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 850 | Text messages between M.T. and K.T. on 09.08.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 851 | Text messages between J.Y. and M.T. on 09.09.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 852 | Text messages between M.T. and K.T. on 09.09.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 853 | Text messages between M.T. and K.T. on 09.10.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 854 | Text messages between M.T. and K.T. on 09.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 855 | Text messages between M.T. and K.T. on 09.14.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 856 | Text messages between J.Y. and M.T. on 09.16.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 857 | Text messages between J.Y. and M.T. on 09.17.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 858 | Text messages between J.Y. and M.T. on 09.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 859 | Text messages between M.T. and K.T. on 09.18.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 860 | Text messages between M.T. and K.T. on 09.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 861 | Text messages between M.T. and K.T. on 09.23.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 862 | Text messages between J.Y. and M.T. on 09.25.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 863 | Text messages between M.T. and K.T. on 09.26.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 864 | Text messages between M.T. and K.T. on 09.26.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 865 | Text messages between J.Y. and M.T. on 09.27.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 866 | Text messages between M.T. and K.T. on 09.28.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 867 | Text messages between M.T. and K.T. on 09.30.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 868 | INTENTIONALLY LEFT BLANK | | | |
| 869 | Text messages between M.T. and K.T. on 10.02.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 870 | INTENTIONALLY LEFT BLANK | | | |
| 871 | Text messages between M.T. and K.T. on 10.05.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 872 | Text messages between M.T. and K.T. on 10.07.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 873 | Text messages between M.T. and K.T. on 10.08.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 874 | Text messages between M.T. and K.T. on 10.09.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 875 | Email re "Invoices from Aero Maintenance Resources" on 10.11.2019 (Aero Maintenance Resources Invoice #697 for $112,750; Invoice #634 for $75,000; & Invoice #627 for $141,450) | | | NAC_E_00204515-NAC_E_00204516 |
| 876 | Text messages between M.T. and K.T. on 10.11.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 877 | Text messages between M.T. and K.T. on 10.15.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 878 | INTENTIONALLY LEFT BLANK | | | |
| 879 | Text messages between M.T. and K.T. on 10.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 880 | Text messages between M.T. and K.T. on 10.20.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 881 | Text messages between M.T. and K.T. on 10.21.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 882 | Text messages between M.T. and K.T. on 10.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 883 | Text messages between M.T. and K.T. on 10.25.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 884 | Text messages between M.T. and K.T. on 10.25.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 885 | Text messages between M.T. and K.T. on 10.31.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 886 | Text messages between M.T. and K.T. on 11.01.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 887 | Email re "Invoices from Aero Maintenance Resources" on 11.11.2019 (Aero Maintenance Resources Invoice #1017 for $110,000; Invoice #1021 for $100,000; & Invoice #1103 for $66,750) | | | NAC_E_00204515-NAC_E_00204516 |
| 888 | Text messages between M.T. and K.T. on 11.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 889 | Text messages between M.T. and K.T. on 11.14.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 890 | Text messages between M.T. and K.T. on 11.19.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 891 | Text messages between M.T. and K.T. on 11.20.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 892 | Text messages between M.T. and K.T. on 11.21.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 893 | Text messages between M.T. and K.T. on 11.22.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 894 | Text messages between M.T. and K.T. on 11.25.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 895 | Text messages between M.T. and K.T. on 12.01.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 896 | Text messages between M.T. and K.T. on 12.02.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 897 | Text messages between M.T. and K.T. on 12.03.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 898 | Text messages between M.T. and K.T. on 12.04.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 899 | Text messages between M.T. and K.T. on 12.06.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 900 | INTENTIONALLY LEFT BLANK | | | |
| 901 | Text messages between M.T. and K.T. on 12.11.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 902 | Text messages between M.T. and K.T. on 12.13.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 903 | Email re "Invoices from Aero Maintenance Resources" on 12.17.2019 (Aero Maintenance Resources Invoice #2110 for $49,750; Invoice #2325 for $83,400; & Invoice #2392 for $85,250) | | | NAC_E_00204515-NAC_E_00204516 |
| 904 | Text messages between M.T. and K.T. on 12.20.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 905 | Text messages between M.T. and K.T. on 12.21.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 906 | Text messages between M.T. and K.T. on 12.30.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 907 | Text messages between M.T. and K.T. on 12.31.2019 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 908 | Text messages between M.T. and K.T. on 01.03.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 909 | Text messages between M.T. and K.T. on 01.07.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 910 | Text messages between M.T. and K.T. on 01.08.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 911 | Text messages between M.T. and K.T. on 01.09.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 912 | Email re "Invoices from Aero Maintenance Resources" on 01.09.2020 (Aero Maintenance Resources Invoice #2515 for $79,950; Invoice #2479 for $87,200; & Invoice #2601 for $148,200) | | | NAC_E_00204515-NAC_E_00204516 |
| 913 | Text messages between M.T. and K.T. on 01.10.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 914 | Text messages between M.T. and K.T. on 01.11.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 915 | Text messages between M.T. and K.T. on 01.13.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 916 | Text messages between M.T. and K.T. on 01.16.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 917 | Text messages between M.T. and K.T. on 01.17.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 918 | Text messages between M.T. and K.T. on 01.22.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 919 | Text messages between M.T. and K.T. on 01.26.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 920 | Text messages between M.T. and K.T. on 01.28.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 921 | Text messages between M.T. and K.T. on 01.29.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 922 | Text messages between M.T. and K.T. on 01.31.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 923 | Text messages between M.T. and K.T. on 02.01.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 924 | Text messages between M.T. and K.T. on 02.05.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 925 | Text messages between M.T. and K.T. on 02.12.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 926 | Text messages between M.T. and K.T. on 02.13.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 927 | Text messages between M.T. and K.T. on 02.15.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 928 | Email re "Invoices from Aero Maintenance Resources" on 02.18.2020 (Aero Maintenance Resources Invoice #2807 for $15,689; & Invoice #2753 for $99,211) | | | NAC_E_00204515-NAC_E_00204516 |
| 929 | Text messages between M.T. and K.T. on 02.25.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 930 | Text messages between M.T. and K.T. on 02.26.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 931 | Text messages between M.T. and K.T. on 03.03.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 932 | Text messages between M.T. and K.T. on 03.06.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 933 | Email re "Invoices from Aero Maintenance Resources" on 03.09.2020 (Aero Maintenance Resources Invoice #3004 for $95,000; Invoice #2987 for $33,520; & Invoice #2901 for $90,180) | | | NAC_E_00204515-NAC_E_00204516 |
| 934 | Text messages between M.T. and K.T. on 03.10.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 935 | Email re "Aero Maintenance Invoices for February 2020" on 03.11.2020 (Aero Maintenance Resources Invoice #2990 for $73,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 936 | Text messages between M.T. and K.T. on 03.11.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 937 | Text messages between M.T. and K.T. on 03.17.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 938 | Text messages between M.T. and K.T. on 03.18.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 939 | Email re NO SUBJECT on 03.19.2020 | | | NAC_E_00204515-NAC_E_00204516 |
| 940 | Text messages between M.T. and K.T. on 03.20.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 941 | Text messages between M.T. and K.T. on 03.22.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 942 | Text messages between M.T. and K.T. on 03.23.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 943 | Text messages between M.T. and K.T. on 03.28.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 944 | Text messages between M.T. and K.T. on 03.30.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 945 | Text messages between M.T. and K.T. on 04.01.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 946 | Text messages between M.T. and K.T. on 04.02.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 947 | Text messages between M.T. and K.T. on 04.05.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 948 | Text messages between M.T. and K.T. on 04.06.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 949 | Text messages between M.T. and K.T. on 04.08.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 950 | Email re "Invoices for Aero Maintenance Resources" on 04.14.2020 (Aero Maintenance Resources Invoice #4001 for $87,045; & Invoice #3176 for $127,155) | | | NAC_E_00204515-NAC_E_00204516 |
| 951 | Text messages between M.T. and K.T. on 04.14.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 952 | Email re "Aero Maintenance Invoices for April 2020" on 04.16.2020 (Aero Maintenance Resources Invoice #5120 for $105,603; & Invoice #4784 for $114,685) | | | NAC_E_00204515-NAC_E_00204516 |
| 953 | Email re "Invoice for Global Fuel Logistics, Inc." on 04.27.2020 (Global Fuel Logistics Invoice #7988 for $124,785) | | | NAC_E_00204515-NAC_E_00204516 |
| 954 | Email re "Invoice for Aero Maintenance Resources 2 March 2020" on 05.04.2020 (Aero Maintenance Resources Invoice #3101 for $61,255) | | | NAC_E_00204515-NAC_E_00204516 |
| 955 | Email re "Invoice for Global Fuel Logistics, Inc." on 05.11.2020 (Global Fuel Logistics Invoice #8011 for $83,090) | | | NAC_E_00204515-NAC_E_00204516 |
| 956 | Text messages between M.T. and K.T. on 05.12.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 957 | Text messages between M.T. and K.T. on 05.23.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 958 | Text messages between M.T. and K.T. on 05.28.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 959 | Email re "Invoices for May 2020" on 06.03.2020 (Aero Maintenance Resources Invoice #8888 for $153,725; Global Fuel Logistics Invoice #9014 for $159,882; & Global Fuel Logistics Invoice #9071 for $164,065) | | | NAC_E_00204515-NAC_E_00204516 |
| 960 | Text messages between M.T. and K.T. on 06.07.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 961 | Text messages between M.T. and K.T. on 06.09.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 962 | Text messages between M.T. and K.T. on 06.10.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 963 | Text messages between M.T. and K.T. on 06.11.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 964 | Text messages between M.T. and K.T. on 06.16.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 965 | Text messages between M.T. and K.T. on 06.17.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 966 | Text messages between M.T. and K.T. on 06.24.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 967 | Text messages between M.T. and K.T. on 06.25.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 968 | Text messages between M.T. and K.T. on 06.26.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 969 | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10101 for $170,274.50; Aero Maintenance Resources Invoice #9302 for $194,803; & Global Fuel Logistics Invoice #11812 for $127,264) | | | NAC_E_00204515-NAC_E_00204516 |
| 970 | Text messages between M.T. and K.T. on 06.29.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 971 | Text messages between M.T. and K.T. on 07.01.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 972 | Text messages between J.Y. and K.T. on 07.01.2020 | | | SW_FIL_00342321-SW_FIL_00342322 |
| 973 | Email re "Invoice for July 1 2020" on 07.02.2020 (Global Fuel Logistics Invoice #10226 for $95,000) | | | NAC_E_00204515-NAC_E_00204516 |
| 974 | Audio recording of consensual phone call between J.Y. and M.T. on 07.07.2020 | INV_00005038 | | |
| 975 | Audio recording of consensual phone call between J.Y. and M.T. on 07.08.2020 | INV_00005040 | | |
| 976 | Text messages between J.Y. and M.T. on 07.08.2020 | INV_00005141; INV_00005182; INV_00005185 | INV_00005142; INV_00005182; INV_00005191 | |
| 977 | INTENTIONALLY LEFT BLANK | | | |
| 978 | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | NAC_E_00060469 | NAC_E_00060470 | NAC_E_00204515-NAC_E_00204516 |
| 979 | Email re ACH Payment Questions, dated 04.17.2019 | NAC_E_00100476 | | NAC_E_00204515-NAC_E_00204516 |
| 980 | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | SW_FIL_00003054 | | SW_FIL_00011402-SW_FIL_00011407 |
| 981 | Email re Lilky Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00006094 | | SW_FIL_00011402-SW_FIL_00011408 |
| 982 | Email re Lilky Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | SW_FIL_00006901 | | SW_FIL_00011402-SW_FIL_00011409 |
| 983 | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | SW_FIL_00008364 | | SW_FIL_00011402-SW_FIL_00011410 |
| 984 | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | SW_FIL_00009825 | | SW_FIL_00011402-SW_FIL_00011411 |
| 985 | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | NAC_E_00058418 | | NAC_E_00204515-NAC_E_00204516 |
| 986 | Invoice #001 re Kimberley Tew for $10,000.00, dated 02.08.2018 | NAC_00000731 | | NAC_00000978-NAC_00000979 |
| 987 | Transcript of consensual phone call between J.Y. and M.T. on 07.07.2020 | INV_00008612 | INV_00008768 | |
| 988 | Transcript of consensual phone call between J.Y. and M.T. on 07.08.2020 | INV_00008506 | INV_00008539 | |
| 989 | Text messages between M.T. and K.T. on 08.28.2019 | SW_FIL_00327501; SW_FIL_00373676 | SW_FIL_00327505; SW_FIL_00373617 | SW_FIL_00342321-SW_FIL_00342322 |
| 990 | Text messages between M.T. and K.T. on 09.18.2019 | SW_FIL_00327625; SW_FIL_00374972 | SW_FIL_00327628 | SW_FIL_00342321-SW_FIL_00342322 |
| 991 - 999 | INTENTIONALLY LEFT BLANK | | | |
| 1000 | INTENTIONALLY LEFT BLANK | | | |
| 1001 | Account Owners and Signors for Relevant Bank Accounts | | | |
| 1002 | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | |
| 1003 | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | |
| 1004 | Summary of [HS CPA], [MCG], and [5530 JD] Invoices and Payments | | | |
| 1005 | Summary of [PM] Invoices and Payments | | | |
| 1006 | Summary of Global Fuel Logistics Invoices and Payments | | | |
| 1007 | Summary of Aero Maintenance Resources Invoices and Payments | | | |
| 1008 - 1099 | INTENTIONALLY LEFT BLANK | | | |

| Exhibit | Brief Description | BEG Bates # | END Bates # | 902 Declaration |
|---|---|---|---|---|
| 1100 | Certificate of Authenticity for Atlantic Union Bank | ACNB_00000101 | | |
| 1101 | Certificate of Authenticity for ANB Bank | ANB_00000002 | | |
| 1102 | Certificate of Authenticity for ANB Bank | ANB_00000035 | | |
| 1103 | Certificate of Authenticity for BBVA | BBVA_00000002 | | |
| 1104 | Certificate of Authenticity for BBVA | BBVA_00000280 | | |
| 1105 | Certificate of Authenticity for Guaranty Bank and Trust Company | GUAR_00000001 | | |
| 1106 | Certificate of Authenticity for Kraken | KRKN_00000001 | | |
| 1107 | Certificate of Authenticity for Navy Federal Credit Union | NAVY_00000002 | NAVY_00000003 | |
| 1108 | Certificate of Authenticity for GoDaddy | ORD_00019742 | | |
| 1109 | Certificate of Authenticity for Google | ORD_00017711 | | |
| 1110 | Certificate of Authenticity for Verizon | ORD_00019935 | | |
| 1111 | Certificate of Authenticity for Regions Bank | REG_00000001 | | |
| 1112 | Certificate of Authenticity for Simple Finance Technology Corp | SFT_00000001 | | |
| 1113 | Certificate of Authenticity for Signature Bank | SIG_00006978 | | |
| 1114 | Certificate of Authenticity for Google | SW_FIL_00000094 | SW_FIL_00000099 | |
| 1115 | Certificate of Authenticity for Apple | SW_FIL_00342321 | SW_FIL_00342322 | |
| 1116 | Certificate of Authenticity for Google | SW_FIL_00011402 | SW_FIL_00011407 | |
| 1117 | Certificate of Authenticity for Google | SW_FIL_00011557 | SW_FIL_00011561 | |
| 1118 | Certificate of Authenticity for Vcorp | VCORP_00000001 | | |
| 1119 | Certificate of Authenticity for Wells Fargo Bank | WFB_00000144 | WFB_00000146 | |
| 1120 | Certificate of Authenticity for Wells Fargo Bank | WFB_00001054 | WFB_00001058 | |
| 1121 | Certificate of Authenticity for Wynn Las Vegas | WYNN_00000002 | | |
| 1122 | Certificate of Authenticity for Google | ORD_00019955 | ORD_00019961 | |
| 1123 | Certificate of Authenticity for Google | ORD_00019962 | ORD_00019976 | |
| 1124 | Certificate of Authenticity for Google | ORD_00019977 | ORD_00019991 | |
| 1125 | Certificate of Authenticity for Google | ORD_00019992 | ORD_00019996 | |
| 1126 | Certificate of Authenticity for Google | ORD_00019997 | ORD_00020002 | |
| 1127 | Certificate of Authenticity for AT&T | ORD_00020003 | ORD_00020004 | |
| 1128 | Certificate of Authenticity for Navy Federal Credit Union | NAVY_00002211 | NAVY_00002212 | |
| 1129 | Certificate of Authenticity for American Express | AMEX_00000001 | | |
| 1130 | Certificate of Authenticity for National Air Cargo | NAC_E_00204515 | NAC_E_00204516 | |
| 1131 | Certificate of Authenticity for McDonald Automotive (Audi) | AUDI_00000042 | | |
| 1132 | Certificate of Authenticity for Digital Mint | DGMT_00000001 | | |
| 1133 | Certificate of Authenticity for Digital Mint | DGMT_00000814 | | |
| 1134 | Certification of Authenticity for National Air Cargo | NAC_00000978 | NAC_00000979 | |
| 1135 | Certification of Authenticity for Access National Bank | ACNB_00000001 | | |
| 1136 | Certification of Authenticity for Coinbase | COIN_00000076 | | |
| 1137 | Certification of Authenticity for Coinbase | COIN_00000077 | | |
| 1138 | Certification of Authenticity for Coinbase | COIN_00000078 | | |
| 1139 | Certification of Authenticity for Navy FCU | NAVY_00002217 | | |
| 1140 | Certification of Authenticity for Apple | ORD_00015053 | ORD_00015054 | |
| 1141 | Certification for Google | GPAY_00000097 | GPAY_00000106 | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

    1. **MICHAEL AARON TEW, and**
    2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S TRIAL BRIEF

---

Michael and Kimberley Tew conspired to steal over $5,000,000 from National
Air Cargo (NAC) by agreeing to submit fake invoices from sham vendors to their
friend and co-conspirator Jonathan Yioulos. Indictment at ¶¶ 1-25 (describing
charged conspiracy to commit wire fraud). The pending indictment identifies 39
executions of their fraud scheme — anecdotes of a brazen two-year crime spree that
saw the Tews threaten their friend and callously turn away concerns that NAC might
not be able to pay its employees or stay out of bankruptcy. Id. at ¶ 30 (charging
individual executions of the fraud scheme). The Tews also agreed to fritter away their
loot on selfish personal projects benchmarked by 15 five-figure financial transactions.
*Id.* at ¶¶ 31-34 (describing charged conspiracy to spend more than $10,000 in fraud
proceeds) and ¶ 36 (identifying specific transactions). Despite his substantial income
and prior experience as a corporate CFO who knows that income is taxable, Michael

1

Tew failed to file any tax returns in 2016, 2017, 2018, or 2019. *Id.* ¶¶ 37-40.

The jury will hear Michael Tew, with active advice from Kimberley, clumsily try to persuade Yioulos to stay in the conspiracy by explaining the effectiveness of his efforts to conceal the scheme. Hundreds of texts and emails captured by investigators and found by the Court to be preliminarily admissible, ECF No.361, will turn the upcoming trial into an epistolary novel of greed punctuated by the diligent record-keeping of financial institutions who kept track of every ill-gotten penny. The government submits this trial brief to provide legal guidance on the issues that might arise as the court and jury evaluate evidence related to the Tews' crimes.

## I. The Tews should not be permitted to tell the Court they used the fraudulent emails for one purpose and then shamelessly deny it for another

In an issue adjacent to the one raised by the defendants' motions to suppress, *see* ECF Nos. 370, 373, the defendants have not only taken incriminating positions with the government during proffer sessions — they've also done made strategic decisions before the Court, decisions which now bear consequence. As part of the motion to suppress, the defendants represented that each of them used the straw email accounts used to submit fraudulent invoices to NAC so that they could establish standing to challenge the warrants used to seize those accounts. ECF No. 226 at 7-9 (proffering that Kimberley Tew used the [CR]@gmail.com account and the [MCG[@gmail.com account and that Michael Tew used the [PM]@gmail.com account). Although the Supreme Court held that a defendant's testimony at a suppression hearing cannot be admitted against him, it has expressly reserved the issue of

whether such testimony can be used for impeachment purposes. *United States v. Salvucci*, 448 U.S. 83, 94 n.8 (1980).  The Tenth Circuit has not ruled on the issue, but the circuits who have weighed in have concluded that such impeachment is permissible.  *See, e.g., United States v. Jaswal*, 47 F.3d 539, 544-45 (2d Cir. 1995); *United States v. Beltran-Gutierrez*, 19 F.3d 1287, 1291 (9th Cir. 1994); *United States v. Quesada-Rosdal,* 685 F.2d 1281, 1283 (11th Cir. 1982).  If either of the Tews tries to testify on cross-examination that they did not use these respective emails to submit fake invoices, that testimony would be inconsistent with their prior representations to the court and should be a valid basis for cross-examination.

## II.   The Tews acted out of greed, not duress, and should not be permitted to present such a factually baseless defense

Consistent with the position that they cannot present evidence inconsistent with their proffers, the Tews should not be permitted to tell the government that they voluntarily agreed to commit fraud, but then tell a jury that their fraud was justified by duress.

Even if such a defense was *consistent* with their proffers (and to be clear, it is not), the Tews should still not be permitted to argue that they stole $5 million because others to whom they owed money alleged made threats. At all times, the Tews had alternatives to taking millions that didn't belong to them: they could have gone to the police or sought protective orders.  *Shannon v. United States*, 76 F.3d 490, 493 (10th Cir. 1935) ("One who has full opportunity to avoid the act without danger of that kind cannot invoke the doctrine of coercion and is not entitled to an instruction submitting that question to the jury.") And even then, the Tews would have to explain why

stealing millions and then using it to gamble, buys cars, pay rent on a $4,500-a-month apartment in Cherry Creek, and otherwise luxuriate in various indulges for two years was necessary to avoid "imminent" danger or otherwise had a "direct causal relationship" to avoiding that danger. *United States v. Vigil*, 743 F.2d 751, 755 (10th Cir. 1984). They cannot and the Court should not entertain the absurdity of letting them try.

### III. The probative value of evidence about Kimberley Tew's motives for participating in the fraud is *res gestae* that is not substantially outweighed by unfair prejudice

Evidence at trial will show that Kimberley Tew has a gambling problem. It will also show that, one of the ways she fed that beast, was to speculate in cryptocurrency, peddling a supposedly winning algorithm to her unwitting "investors." Among her motives for agreeing to take millions from Michael's former employer was a desire to keep placing bets — literally at casinos and online in speculative cryptocurrency products. Evidence of motive is always relevant. And here, the fact that Kimberley consistently wanted money from Yioulos to gamble with will help the jury understand context for the crime. *See, e.g., United States v. Candelaria*, 2024 WL 82845, at *3 (D.N.M. Jan. 8, 2024) ("Gambling is a popular activity, one that ordinarily does not stir an emotional response nor is such evidence likely to confuse the issues or mislead the jury.").

### IV. Testimony about the reasons for Michael Tew's termination is inextricably intertwined with his fraud scheme.

Because evidence about why Michael Tew was fired from NAC provides "contextual and background information" about their relationship to the jury, it is not

4

"other" acts evidence covered by Rule 404(b). *United States v. Parker*, 553 F. 3d 1309,
1314 (10th Cir. 2009); *see United States v. Kupfer*, 797 F.3d 1233, 1228 (10th Cir.
2015) (laying out test for determining whether evidence is intrinsic, and thus not
covered by Rule 404); *see, e.g., United States v. William*s, 934 F.3d 1122, 1133–34
(10th Cir. 2019) (concluding that prior statements by defendant were not 404(b)
where they explained earlier relevant circumstances and presaged later testimony
about the same subject); *United States v. Irving*, 665 F.3d 1184, 1212–13 (10th Cir.
2011) (concluding that prior event helping explain motives for why defendant would
want someone dead were intrinsic). The same is true of Ms. Tew's extracurricular
hobbies, to the extent that they were a motivating factor in this fraud. *See supra.*

## V. The government should be permitted to offer additionally identified co-conspirator statements pursuant to Federal Rule of Evidence 801(d)(2)(E)

In order to prepare for the *James* hearing, the government labored to narrow
down those statements it believed were admissible pursuant to Federal Rule of
Evidence 801(d)(2)(E). This was a time-intensive process, culling and sorting much
detail. And still, at the end, the government submitted a *James* log with 376 entries.

In further preparation for trial, the government has identified two additional
co-conspirator statements which directly pertain to counts 44 and 47 of the
Indictment. Additionally, the government respectfully seeks reconsideration of one
entry which the Court previously ruled inadmissible (James Log 37), which was
deemed inadmissible due, at least in part, to marital privilege. ECF No. 361 at 14-15.
However, this was a conversation between Ms. Tew and Jonathan Yioulos. The

government remains mindful of the Court's admonition to avoid cumulative evidence at trial, and will do so.

## VI. The defendants must remain within the bounds of the Federal Rules of Evidence on cross-examination.

At the core of this case is the Tews' heartless abuse of trust. Michael Tew, of course, leveraged his high position and intimate knowledge of NAC's inner workings of NAC to embezzle funds from the company, even long after he was terminated. Michael Tew's former position was not just a reflection of his business capabilities, but also of his ability to earn the trust of high-level NAC employees.

The Tews' callousness did not end there. Over of the years, the evidence will show a pattern of the Tews earning the trust of their friends and business associates, only to turn around and treat them not only cruelly, but criminally. A particularly poignant aspect of this pattern is individuals who now are faced with federal testimony, but fear that information from their past friendships with the Tews will be leveraged against them.

The Tews should not be permitted to harass these witnesses on cross-examination, not only because of moral and ethical reasons, but because the Federal Rules of Evidence do not permit it. The most basic and axiomatic principle of trial is that "[i]rrelevant evidence is not admissible." Fed. R. Evid. 402. To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means. Fed. R. Evid. 103(d). Although the defendants will be accorded wide latitude on cross-examination, that latitude is not unfettered. Events concerning NAC's business, for example, that happened years and even

6

decades before Michael Tew's employment are clearly irrelevant. Similarly, the Federal Rules place clear boundaries on the proper use of impeachment by evidence of a criminal conviction. Fed. R. Evid. 609. And while evidence regarding an individual's prior drug or alcohol use might be a permissible avenue to question a person's credibility as to their memory of events during a certain time period, it should not be used as a character attack.

Likewise, insinuations through cross-examination which seek only to embarrass, harass, or otherwise impugn a person's character should not be allowed. Aspects of witnesses' personal lives, especially private and intimate details, that are years' old, have nothing to do with the witnesses' credibility regarding the events at bar, and that the Tews only have access to because of the way in which they groomed those around them, should be swiftly denied. The Tews are represented by able and professional counsel, and the government expects nothing less.

### VII. The defendants should be restricted to permissible uses of their devices in the courtroom and prohibited from public displays of photographs only designed to encourage a verdict based on emotion.

In prior hearings of this case, both defendants have used their personal laptops in the courtroom. The government takes no issue with this use, provided the screens are limited to the display of admitted evidence and other justifiable work-product related to trial preparation. In the past, however, defendant Kimberley Tew, especially, has used her laptop during proceedings for personal use. Of particular concern is Ms. Tew's habit of scrolling through pictures of her children on her laptop, in a full-screen mode. Should Ms. Tew continue this habit during trial, given the

layout of the courtroom, her screen will be on full display to the jury. The Tews'

children and the Tews' status as parents are matters wholly irrelevant to the

proceedings. The defendants should be admonished on the appropriate limits of the

use of their devices at trial, in order to prevent the introduction of subject matter that

would only serve to undermine the fair adminstration of justice.

## VIII. The defendants should be restricted to permissible uses of their devices in the courtroom and prohibited from public displays of photographs only designed to encourage a verdict based on emotion.

The government has proposed several summary charts, which the prosecution

intends to admit via Fed. R. Evid. 1006 and the testimony of FBI forensic accountant

Matt Morgan. Rule 1006 provides that a proponent "may use a summary, chart, or

calculation to prove the content of voluminous writings, recordings, or photographs

that cannot be conveniently examined in court," provided the proponent makes the

originals or duplicates available to the other party. In this case, all such records were

provided to the defense in discovery. The government understands that the

defendants raised this issue in their respective trial briefs, and will be prepared to

discuss these proposed exhibits at the pretrial conference.


COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100

8

Bryan.Fields3@usdoj.gov
Attorney for the Government

Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

    Defendants.

---

## PARTIES' PROPOSED JURY INSTRUCTIONS

---

The parties jointly submit the following Proposed Jury Instructions. The following proposed instructions are designated as Stipulated, Competing, or Non-Stipulated. Citations and source materials are cited below each proposed instruction.

Brackets indicate language that may require adjustment depending on the presentation of evidence at trial.

The parties reserve their rights to modify these requested instructions, withdraw instructions, or submit additional instructions as pretrial and trial proceedings progress.

1

# **PART 0: INSTRUCTIONS PRIOR TO TRIAL**

**PROPOSED INSTRUCTION NO. [ 1 ]**[1]
**STIPULATED**

**PRELIMINARY INSTRUCTIONS BEFORE TRIAL
& INSTRUCTIONS REGARDING NOTE-TAKING**

Members of the jury:

At the end of the trial I will give you detailed guidance on the law and on how you will go about reaching your decision. But now I simply want to generally explain how the trial will proceed.

This criminal case has been brought by the United States government. I will sometimes refer to the government as the prosecution. The government is represented by Assistant United States Attorneys Bryan Fields and Sarah Weiss. Defendant Michael Tew is represented by Jason Schall and Kristen Frost. Defendant Kimberley Tew is represented by David Kaplan and Jamie Hubbard.

The Indictment charges both Michael Tew and Kimberley Tew with one count of conspiracy to commit wire fraud, in violation of Title 18, United States Code Section 1349 (Count 1). Michael Tew is charged with thirty-nine counts of wire fraud (Counts 2 through 40), and Kimberley Tew is charged with six counts of wire fraud (Counts 21, 22, 25, 26, 31, and 32), in violation of Title 18, United States Code, Section 1343.

The Indictment further charges both Michael and Kimberley Tew with one count of conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h) (Count 41). Michael Tew also is charged with fourteen

---

[1]      10th Cir. Pattern Jury Instructions §§ 1.01 & 1.02 (3d ed. 2021) (modified to reflect multiple defendants and multiple counts).

3

counts of engaging in monetary transactions in property derived from specified unlawful activity ("money laundering–spending") (Count 42 and Counts 44 through 56), and Kimberley Tew is also charged with five counts of money laundering–spending (Counts 43, 44, 47, 48, and 56), in violation of Title 18, United States Code, Section 1957.

The Indictment further charges Michael Tew with four counts of willful failure to file tax returns, in violation of Title 26, United States Code, Section 7203 (Counts 57 through 60).

The Indictment is simply the description of the charges made by the government against the defendants; it is not evidence of guilt or anything else. The defendants have pled not guilty and are presumed innocent. Each defendant may not be found guilty by you unless all twelve of you unanimously find that the government has proved that defendant's guilt beyond a reasonable doubt. There are two defendants in this case, and you will have to give separate consideration to the case against each defendant, as each is entitled to individual consideration.

The first step in the trial will be the opening statements. The government in its opening statement will tell you about the evidence which it intends to put before you. Just as the Indictment is not evidence, neither is the opening statement. Its purpose is only to help you understand what the evidence will be. It is a road map to show you what is ahead.

4

After the government's opening statement, each defendant may make an opening statement. [Change if any defendant reserves his/her statement until later or omit if a defendant has decided not to make an opening statement.]

Evidence will be presented from which you will have to determine the facts. The evidence will consist of the testimony of the witnesses, documents and other things received into the record as exhibits, and any facts about which the lawyers agree or to which they stipulate.

The government will offer its evidence. After the government's evidence, the defendants' lawyers may [make an opening statement and] present evidence, but they are not required to do so. I remind you that each defendant is presumed innocent and it is the government that must prove each defendant's guilt beyond a reasonable doubt. If a defendant submits evidence, the government may introduce rebuttal evidence.

At times during the trial, a lawyer may make an objection to a question asked by another lawyer or to an answer by a witness. This simply means that the lawyer or party is requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such objections or from my rulings on the objections. If I sustain an objection to a question, the witness may not answer it. Do not attempt to guess what answer might have been given if I had allowed the answer. If I overrule the objection, treat the answer as any other. If I tell you not to consider a particular statement, you may not refer to that statement in your later deliberations. Similarly,

if I tell you to consider a particular piece of evidence for a specific purpose, you may consider it only for that purpose.

The lawyers for both sides may object to some of the things that are said and done during the trial. Do not hold that against either side. The lawyers have a duty to object whenever they think that something is not permitted by the rules of evidence. Those rules are designed to make sure that both sides receive a fair trial.[2]

During the course of the trial I may have to interrupt the proceedings to confer with the attorneys or the parties about the rules of law that should apply. Sometimes we will talk briefly, at the bench. But some of these conferences may take more time, so I will excuse you from the courtroom. I will try to avoid such interruptions whenever possible, but please be patient even if the trial seems to be moving slowly because conferences often actually save time in the end.

You are to consider all the evidence received in this trial. It will be up to you to decide what evidence to believe and how much of any witness's testimony to accept or reject.

After you have heard all the evidence on both sides, the government and the defense will each be given time for their final arguments.

The final part of the trial occurs when I instruct you on the rules of law which you are to use in reaching your verdict.

---

[2]     6th Cir. Pattern Jury Instructions § 1.09 (current through July 1, 2019).

6

During the course of the trial I may ask a question of a witness. If I do, that does not indicate I have any opinion about the facts in the case but am only trying to bring out facts that you may consider.

If you would like to take notes during the trial, you may. On the other hand, you are not required to take notes. If you do decide to take notes, be careful not to get so involved in note taking that you become distracted, and remember that your notes will not necessarily reflect exactly what was said, so your notes should be used only as memory aids. Therefore, you should not give your notes precedence over your independent recollection of the evidence. You should also not be unduly influenced by the notes of other jurors. If you do take notes, leave them in the jury room at night and do not discuss the contents of your notes until you begin deliberations.

[I will now summarize the allegations detailed in the Indictment. As I mentioned, the defendants are Michael Tew and Kimberley Tew. The Indictment alleges that, during the relevant time period, they were married. As described in the Indictment, Mr. Michael Tew and Ms. Kimberly Tew are alleged to have conspired to defraud National Air Cargo (NAC or National), a Florida company at which Mr. Tew served as a contracted chief financial officer between 2015 and September 2018. The Indictment alleges that this scheme to defraud involved the submission of false invoices to NAC by companies that either never existed and/or never provided services to NAC. According to the Indictment, the alleged conspiracy to defraud NAC resulted in a loss of over $4 million. The Indictment also alleges a conspiracy to commit money laundering by Mr. Tew and Ms. Tew, as well as money laundering-

7

spending counts. These counts involve allegations that Mr. and Ms. Tew spent funds that they obtained through the scheme to defraud NAC. Finally, the Indictment alleges that Mr. Tew willfully failed to file federal income tax returns over a series of several years.][3]

[Insert discussion of the elements of the offense here if they are to be set out for the jury in the preliminary instruction.][4]

[Ordinarily, the attorneys will develop all the relevant evidence that will be necessary for you to reach your verdict. However, in rare situations, a juror may believe a question is critical to reaching a decision on a necessary element of the case. In that exceptional circumstance, you may write out a question and provide it to the courtroom deputy while the witness is on the stand. I will then consider that question with the lawyers. If it is determined to be a proper and necessary question, I will ask it. If I do not ask it, you should recognize that I have determined it is not a legally appropriate question and not worry about why it was not asked or what the answer would have been.]

During the course of the trial, you should not talk with any witness, or with the defendant, or with any of the lawyers at all. In addition, during the course of the trial you should not talk about the trial with anyone else. Do not discuss the case with anyone or provide any information about the trial to anyone outside the courtroom

---

[3]     This summary is derived from and expanded from the Court's prior summaries in previous Orders in this case. *See, e.g.*, ECF Nos. 258, 259, 262 (Orders Denying Motions to Suppress).

[4]     *See infra*, Proposed Instructions of the Offense Elements.

8

until the verdict is received. Do not use the internet or any other form of electronic communication to provide any information. Simply put, do not communicate with anyone about the trial until your verdict is received. Also, you should not discuss this case among yourselves until I have instructed you on the law and you have gone to the jury room to make your decision at the end of the trial. It is important that you wait until all the evidence is received and you have heard my instructions on the controlling rules of law before you deliberate among yourselves. Let me add that during the course of the trial you will receive all the evidence you properly may consider to decide the case. Because of this, you should not attempt to gather any information on your own that you think might be helpful. Do not engage in any outside reading on this case, do not attempt to visit any places mentioned in the case, either actually or on the internet, and do not in any other way try to learn about the case outside the courtroom.

The court reporter is making stenographic notes of everything that is said. This is basically to assist any appeals. However, a typewritten copy of the testimony will not be available for your use during deliberations. On the other hand, any exhibits will be available to you during your deliberations.

Now that the trial has begun you must not hear or read about it in the media. The reason for this is that your decision in this case must be made solely on the evidence presented at the trial.

With that introduction, Ms. Weiss, you may present the opening statement for the government.

## PART I: GENERAL INSTRUCTIONS & EVIDENTIARY CONSIDERATIONS

**PROPOSED INSTRUCTION NO. [ 2 ][5]**
**STIPULATED**

**INTRODUCTION TO FINAL INSTRUCTIONS**

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions which apply in every criminal case—for example, instructions about burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

---

[5]      10th Cir. Pattern Jury Instructions § 1.03 (3d ed. 2021).

## PROPOSED INSTRUCTION NO. [ 3 ][6]
## STIPULATED

## DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

The lawyers may properly refer to some of the governing rules of law in their closing arguments. If there is any difference between the law as stated by the lawyers and my instructions, you must follow my instructions.

---

[6]     10th Cir. Pattern Jury Instructions § 1.04 (3d ed. 2021) (modified to reflect Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

**PROPOSED INSTRUCTION NO. [ 4 ]**[7]
**STIPULATED**

**PRESUMPTION OF INNOCENCE—
BURDEN OF PROOF—REASONABLE DOUBT**

The government has the burden of proving the defendants guilty beyond a reasonable doubt. The law does not require a defendant to prove his or her innocence or produce any evidence at all. The government has the burden of proving each defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find that defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of a defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.

A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that defendant Michael Tew, or defendant Kimberley Tew, or both, are guilty of the crimes charged, you must find him or her guilty. If on the other hand, you think there is a real possibility that he or she is not guilty, you must give him or her the benefit of the doubt and find him or her not guilty.

---

[7]     10th Cir. Pattern Jury Instructions § 1.05 (3d ed. 2021) (modified to reflect multiple defendants and multiple counts).

**PROPOSED INSTRUCTION NO. [ 5 ][8]**
**NON-STIPULATED IN PART (see footnote)**

### EVIDENCE—DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, [the stipulations that the lawyers or parties agreed to, and the facts that I have judicially noticed].

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

[Certain charts and summaries have been shown to you to help explain the evidence in this case but were not admitted as exhibits. Their only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.][9]

---

[8]   10th Cir. Pattern Jury Instructions § 1.06 (3d ed. 2021) (modified to reflect Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191); *see also* 10th Cir. Pattern Jury Instructions § 1.41 (3d ed. 2021).

[9]   Defendant Michael Tew and defendant Kimberley Tew each object to this paragraph, at least at this time. Each defendant continues to evaluate his and her objections to certain summary exhibits that the government has proposed are admissible pursuant to Fed. R. Evid. 1006. Should any such exhibits be admitted at trial, such that giving this part of the instruction is appropriate, each will provide an update as to his and her respective objections at that time.

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory. Your notes are not evidence. If your memory should differ from your notes, or those of other jurors, then you should rely on your memory and not on your notes or the notes of other jury members.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers or parties wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

**PROPOSED INSTRUCTION NO. [ 6 ]** [10]
**STIPULATED**

## EVIDENCE—DIRECT AND CIRCUMSTANTIAL—INFERENCES

As I instructed you at the beginning of the trial, there are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is indirect or circumstantial evidence, that is, the proof of a fact or a chain of facts which point to the existence or non-existence of certain other facts.

[As a general rule,] [11] the law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts based on all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits, inferences you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts that have been established by the evidence.

---

[10]     10th Cir. Pattern Jury Instructions § 1.07 (3d ed. 2021) (modified to reflect Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

[11]     The Pattern Instruction includes this bracketed language, but this Court previously deleted it in *Cline*.

16

## PROPOSED INSTRUCTION NO. [ 7 ][12]
### STIPULATED

### CREDIBILITY OF WITNESSES

 I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

 You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses [including the defendant] who testified in this case. You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was.

In making that decision, I suggest that you ask yourself a few questions:

- Did the witness impress you as honest?

- Did the witness have any particular reason not to tell the truth?

- Did the witness have a personal interest in the outcome in this case?

- Did the witness have any relationship with either the government or the defense?

- Did the witness seem to have a good memory?

---

[12] 10th Cir. Pattern Jury Instructions § 1.08 (3d ed. 2021).

17

- Did the witness clearly see or hear the things about which he or she testified?

- Did the witness have the opportunity and ability to understand the questions clearly and answer them directly?

- Did the witness's testimony differ from the testimony of other witnesses?

When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent mis-recollection—like failure of recollection—is not uncommon.

[The testimony of the defendant should be weighed and his or her credibility evaluated in the same way as that of any other witness.]

[The defendant[s] did not testify and I remind you that you cannot consider [his/her/their] decision not to testify as evidence of guilt. I want you to clearly understand that the Constitution of the United States grants to a defendant the right to remain silent. That means the right not to testify or call any witnesses. That is a constitutional right in this country, it is very carefully guarded, and you should understand that no presumption of guilt may be raised and no inference of any kind may be drawn from the fact that a defendant does not take the witness stand and testify or call any witnesses.][13]

---

[13]     If either defendant, or both of the defendants, elect not to testify, this language should be moved to a separate instruction pursuant to 10th Cir. Pattern Jury Instruction § 1.08.1 (Non-Testifying Defendant).

18

In reaching a conclusion on a particular point, or ultimately in reaching a verdict in this case, do not make any decisions simply because there were more witnesses on one side than on the other.

19

**PROPOSED INSTRUCTION NO. [ 8 ]**[14]
**STIPULATED IN PART (see footnote)**[15]

## IMPEACHMENT BY PRIOR INCONSISTENCIES

You have heard the testimony of one or more witnesses who, before this trial,
made statements that may be different from their testimony here in court. These
earlier statements were brought to your attention only to help you decide how
believable their testimony was in this trial. You cannot use it as proof of anything
else. You can only use it as one way of evaluating their testimony here in court.

---

[14]     10th Cir. Pattern Jury Instructions § 1.10 (3d ed. 2021) (modified to reflect
Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-
00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

[15]     Defendant Michael Tew and defendant Kimberley Tew each seek to reserve
the right to argue and propose an instruction that, under certain circumstances as
outlined in Rule 801(d)(2)(A), testimony may be admissible as substantive evidence.

**PROPOSED INSTRUCTION NO. [ 9 ]**[16]
**STIPULATED**

**IMPEACHMENT BY PRIOR CONVICTION—WITNESS OTHER THAN DEFENDANT**

The testimony of a witness may be discredited or impeached by showing that the witness previously has been convicted of a [felony, that is, of a crime punishable by imprisonment for a term of years] or of a [crime of dishonesty or false statement]. A prior conviction does not mean that a witness is not qualified to testify, but is merely one circumstance that you may consider in determining the credibility of the witness. You may decide how much weight to give any [prior felony conviction] [crime of dishonesty] that was used to impeach a witness.

---

[16]     10th Cir. Pattern Jury Instructions § 1.12 (3d ed. 2021).

21

## PROPOSED INSTRUCTION NO. [ 10 ][17]
## STIPULATED

## ACCOMPLICE—CO-PARTICIPANT—PLEA AGREEMENT

The government called as a witness an alleged co-participant in the charged scheme, who was identified as a co-defendant in the Indictment. The government has entered into a plea agreement with this co-participant, providing for the dismissal of some charges and a recommendation of a lesser sentence than this participant might otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this Court expressly provide for it.

An alleged co-participant, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged co-participant may, but itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged co-participant, unless you believe that testimony beyond a reasonable doubt. The fact that a co-participant has entered a guilty plea to the offense charged is not evidence of the guilt of any other person. The witness's plea agreement may not be used to establish the guilt of either of these defendants. The fact that the co-participant pled guilty should only be used to assess the co-participant's credibility as a witness.

---

[17]    10th Cir. Pattern Jury Instructions § 1.15 (3d ed. 2021) (modified to reflect Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

## INSTRUCTION NO. [ 11 – Gov't ][18]
## NON-STIPULATED

## EVIDENCE ADMITTED FOR A LIMITED PURPOSE[19]

On occasion, a particular item of evidence or testimony has been received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I have told you when that occurred, and instructed you on the purposes for which the item can and cannot be used.

[Detail statements from defendant Michael Tew and defendant Kimberley Tew that may be received only as to that defendant who made that statement.][20]

---

[18]    1st Cir. Pattern Jury Instructions § 3.07 (updated March 6, 2017); *see also* 3 Fed. Jury Prac. & Instr. § 104.42 (5th ed.).

[19]    Defendant Michael Tew and defendant Kimberley Tew each object to this proposed instruction, and note that their objections implicate the subject of pending motions. *See* ECF Nos. 370, 373 (M. Tew & K. Tew's motions *in limine* regarding use of proffer statements).

[20]    *See Samia v. United States*, 599 U.S. 635, 642, 655 (2023) (evaluating line of cases that began with *Bruton v. United States*, 391 U.S. 123, 126 (1968), and concluding that limiting instruction sufficiently protected defendants' rights where sanitized confession might nevertheless allow jury to make inferences regarding that confession and explaining that "[t]he Confrontation Clause ensures that defendants have the opportunity to confront witnesses against them, but it does not provide a freestanding guarantee against the risk of potential prejudice that may arise inferentially in a joint trial."; *see also United States v. Zar*, 790 F.3d 1036, 1052 (10th Cir. 2015) *(*applying *Richardson v. Marsh*, 481 U.S. 200, 208, 211 (1987), for principle that, where a non-testifying codefendant's statements implicating another codefendant can be "linked with evidence introduced later at trial," the Confrontation Clause is not violated as long as the court (1) redacts the non-testifying codefendant's confession to eliminate the defendant's name and any reference to their existence, and (2) gives a proper limiting instruction when admitting the confessing statement).

## PROPOSED INSTRUCTION NO. [ 12 ][21]
## STIPULATED

### WITNESS'S USE OF ADDICTIVE DRUGS

The testimony of a drug abuser must be examined and weighed by the jury with greater caution than the testimony of a witness who does not abuse drugs.

[Name of witness] may be considered to be an abuser of drugs.

You must determine whether the testimony of that witness has been affected by the use of drugs or the need for drugs.

---

[21]     10th Cir. Pattern Jury Instructions § 1.16 (3d ed. 2021).

**PROPOSED INSTRUCTION NO. [ 13 ]**[22]
**STIPULATED IN PART (see footnote)**[23]

**TRANSCRIPTS OF RECORDED CONVERSATIONS**

During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence. You were also given transcripts of those recorded conversations.

Keep in mind that the transcripts are not evidence. They were given to you only as a guide to help you follow what was being said. The recordings themselves are the evidence. If you noticed any differences between what you heard on the recordings and what you read in the transcripts, you must rely on what you heard, not what you read. If you could not hear or understand certain parts of the recordings, you must ignore the transcript as far as those parts are concerned.

---

[22]    10th Cir. Pattern Jury Instructions § 1.40 (3d ed. 2021); Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

[23]    Defendant Michael Tew and defendant Kimberley Tew object to this pattern instruction, in so far as it contemplates the jury taking transcripts of recordings into the jury deliberation room. The defendants do not object to the use of transcripts during trial to assist in the presentation of audio recorded evidence, or to the pattern language, apart from this issue.

25

**[PROPOSED INSTRUCTION NO. [ 14 ][24]
STIPULATED**

**CONFESSION-STATEMENT—VOLUNTARINESS BY DEFENDANT
(Multiple Defendants)**

Evidence relating to any statement attributed to a defendant alleged to have been made after the commission of the crime (or crimes) charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of the defendant, and any evidence concerning his treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

Of course, any such statement should not be considered in any way whatsoever as evidence with respect to any other defendant on trial.

---

[24]    10th Cir. Pattern Jury Instructions § 1.26 (3d ed. 2021) (modified to reflect multiple defendants and multiple statements).

26

**PROPOSED INSTRUCTION NO. [ 15 ]**[25]
**STIPULATED**

**CAUTION—CONSIDER ONLY CRIMES CHARGED**

You are here to decide whether the government has proved beyond a reasonable doubt that defendant Michael Tew or defendant Kimberley Tew, or both, are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.

---

[25]    10th Cir. Pattern Jury Instructions § 1.19 (3d ed. 2021) (modified to reflect multiple defendants and multiple counts).

27

**PROPOSED INSTRUCTION NO. [ 16 ]**[26]
**STIPULATED**

**CAUTION—PUNISHMENT**

If you find that defendant Michael Tew or defendant Kimberley Tew, or both, are guilty of any of the crimes charged, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

---

[26]  10th Cir. Pattern Jury Instructions § 1.20 (3d ed. 2021) (modified to reflect multiple defendants and multiple counts).

28

## PROPOSED INSTRUCTION NO. [ 17 ][27]
## STIPULATED

### MULTIPLE DEFENDANTS—MULTIPLE COUNTS

A separate crime is charged against one or more of the defendants in each count of the Indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

---

[27] 10th Cir. Pattern Jury Instructions § 1.22 (3d ed. 2021).

**PROPOSED INSTRUCTION NO. [ 18 ][28]**
**STIPULATED**

**ON OR ABOUT**

You will note that the Indictment charges that the crimes were committed on or about certain dates. The government must prove beyond a reasonable doubt that the defendant committed the crime reasonably near these dates.

---

[28]     10th Cir. Pattern Jury Instructions § 1.18 (3d ed. 2021) (modified to reflect Charge of the Honorable Daniel D. Domenico at 13, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

**PROPOSED INSTRUCTION NO. [ 19 ]**[29]
**NON-STIPULATED**[30]

**PROOF OF KNOWLEDGE OR INTENT**

The intent of a person or the knowledge that a person possesses at any given time may not ordinarily be proved directly because there is no way of directly scrutinizing the workings of the human mind. In determining the issue of what a person knew or what a person intended at a particular time, you may consider any statements made or acts done by that person and all other facts and circumstances received in evidence which may aid in your determination of that person's knowledge or intent.

You may infer, but you certainly are not required to infer, that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. It is entirely up to you, however, to decide what facts to find from the evidence received during this trial.

---

[29]    *See* Charge of the Hon. Christine M. Arguello Criminal at 27, *United States v. Luton*, 19-cr-00098-CMA (D. Colo. Feb. 13, 2020), ECF No. 103).

[30]    Defendant Michael Tew and defendant Kimberley Tew each object statign that the concerns in this instruction are adequately addressed by the use of the pattern instructions adopted in this district.

31

## **PART II: ELEMENTS OF THE CRIMES CHARGED**

That concludes the part of my instructions explaining your duties and the general rules that apply in every criminal case. Now I will explain the elements of the crimes with which the defendants are charged in this case.

32

**PROPOSED INSTRUCTION NO. [ 20 ]**[31]
**STIPULATED**

**CONSPIRACY TO COMMIT WIRE FRAUD – 18 U.S.C. § 1349**

**(Count 1 – Michael Tew; Kimberley Tew)**

The defendants, Michael Tew and Kimberley Tew, are each charged in Count 1 of the Indictment with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

This law makes it a federal crime for any person to conspire to commit wire fraud. I will instruct you in a moment about wire fraud, which is the offense charged against one or both of the defendants in Counts 2 through 40. You should refer to those instructions regarding the elements of wire fraud.

**(CONTINUED ON FOLLOWING PAGE)**

---

[31]     10th Cir. Pattern Jury Instructions § 2.19 (conspiracy in general) & 10th Cir. Pattern Jury Instructions § 2.87 (modified to exclude elements of 21 U.S.C. § 846 pertaining to a controlled substances conspiracy) (3d ed. 2021); *United States v. Fishman*, 645 F.3d 1175, 1186 (10th Cir. 2011) (citing *Whitfield v. United States*, 543 U.S. 209 (2005)) (addressing § 1349 conspiracy and noting that a § 1349 charge does not require proof of an overt act).

33

To find a defendant guilty of conspiracy to commit wire fraud, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First*:    The defendant agreed with at least one other person to commit wire fraud;

*Second*:    The defendant knew of the essential objectives of the conspiracy;

*Third*:    The defendant knowingly and voluntarily participated in the conspiracy; and

*Fourth*:    There was interdependence among the members of the conspiracy. That is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

For further instruction on the definition of "knowledge"; "knowingly"; and "voluntarily," refer to Instruction Nos. [__] – [__].

For further instruction on the definitions of "agreement" and "interdependence," refer to Instruction No. [__].

For further instruction on the elements of wire fraud, refer to Instruction No. [___].

**PROPOSED INSTRUCTION NO. [ 21 - Gov't ]** [32]
**NOT STIPULATED**[33]

**CONSPIRACY TO COMMIT MONEY LAUNDERING – 18 U.S.C. § 1956(h)**

**(Count 41 – Michael Tew; Kimberley Tew)**

The defendants, Michael Tew and Kimberley Tew, are each charged in Count 41 of the Indictment with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

This law makes it a federal crime for any person to conspire to commit money laundering. I will instruct you in a moment about money laundering, which is the offense charged against one or both of the defendants in Counts 42 through 56. You should refer to those instructions regarding the elements of Title 18, United States Code, Section 1957 (money laundering–spending).

**(CONTINUED ON FOLLOWING PAGE)**

---

[32] *United States v. Keck*, 643 F.3d 789, 794 (10th Cir. 2011).

[33] The Tenth Circuit does not have pattern language for a money laundering conspiracy charge, in violation of 18 U.S.C. § 1956(h), where the Section 1956(h) charge is premised on violations of 18 U.S.C. § 1957. The present option, as proposed by the government, hews closely to the statutory language. The parties continue to meaningfully confer on this instruction, and the defendants expressly reserve the right to pose a suitable alternative to the government and to the Court, but this instruction remains, at the present time, disputed..

To find a defendant guilty of conspiracy to commit money laundering, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First*:   The defendant agreed with another person to knowingly engage in a monetary transaction in criminally derived property of a value greater than $10,000, that is property derived from specified unlawful activity, in violation of 18 U.S.C. § 1957;[34]

*Second*:   The defendant knew of the essential objectives of the conspiracy;

*Third*:   The defendant knowingly and voluntarily participated in the conspiracy; and

*Fourth*:   There was interdependence among the members of the conspiracy.

For further instruction on the definition of "knowledge" and "knowingly"; and "voluntarily," refer to Instruction Nos. [__] – [__].

For further instruction on the definitions of "agreement" and "interdependence," refer to Instruction No. [__].

For further instruction on the offense of money laundering–spending, refer to Instruction No. [___].

---

[34]   The Tenth Circuit does not have pattern language for a money laundering conspiracy charge, in violation of 18 U.S.C. § 1956(h), where the Section 1956(h) charge is premised on violations of 18 U.S.C. § 1957. In recognition of the absence of a guiding pattern instruction, the parties have opted to hew closely to the statutory language, but are open to further conferral on this language.

36

**PROPOSED INSTRUCTION NO. [22 ]**[35]
**STIPULATED IN PART (see footnote)**[36]

**CONSPIRACY — AGREEMENT & INTERDEPENDENCE DEFINED**

**(Counts 1 and 41)**

Count 1 and Count 41 charge two separate conspiracies. A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details.

**(CONTINUED ON FOLLOWING PAGE)**

---

[35]     10th Cir. Pattern Jury Instructions § 2.87 (3d ed. 2021) (modified to exclude elements of 21 U.S.C. § 846 pertaining to a controlled substances conspiracy); *see also* 6th Cir. Pattern Jury Instructions §§ 3.02, 3.30 (current through July 1, 2019) (paragraph 4 and 5 of proposed instruction, respectively); *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (quotation marks and internal quotation marks omitted) (paragraph 4 and paragraph 7 of proposed instruction, respectively).

[36]     Defendant Michael Tew and defendant Kimberley Tew object to the provisions of this instruction, as proposed by the government, in so far as it includes certain language not in the 10th Circuit Pattern Instruction. That language has been indicated by brackets in this proposed instruction. The defendants otherwise have no objection to the standard 10th Cir. Pattern language.

[Moreover, the government does not have to prove that the conspiracy succeeded or was achieved. The crime of conspiracy is complete upon the agreement to commit the underlying crime. But the evidence must show that the members of the alleged conspiracy came to a mutual understanding to try to accomplish a common and unlawful plan.]

[Conspiracy convictions may be based on circumstantial evidence, and you may infer conspiracy from the defendants' conduct and other circumstantial evidence indicating coordination and concert of action. But it is up to the government to convince you that such facts and circumstances existed in this particular case.]

If you are convinced that the charged conspiracy existed, then you must next determine whether a defendant was a member of that conspiracy, that is, whether that defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it. You must consider each defendant separately in this regard.

[The law does not require proof that a defendant knew all the other members of the conspiracy or knew all the details about how activities were to be carried out. A defendant's knowledge can be proved circumstantially or indirectly by facts and circumstances which lead to a conclusion that a defendant knew the conspiracy's main purpose.]

**(CONTINUED ON FOLLOWING PAGE)**

38

A person may belong to a conspiracy for a brief period of time or play a minor role. On the other hand, proof is not sufficient if it merely shows that a defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

[Interdependence is present if the activities of a defendant charged with conspiracy facilitated the endeavors of other alleged coconspirators or facilitated the venture as a whole. Interdependence is established when each coconspirators' actions are necessary to accomplish a common, illicit goal.[37]]

---

[37]     *United States v. Wardell*, 591 F.3d 1279, 1287 (10th Cir. 2009) (quotation marks and internal quotation marks omitted)

PROPOSED INSTRUCTION NO. [ 23 – Gov't ][38]
COMPETING

**CONSPIRACY — EVIDENCE OF MULTIPLE CONSPIRACIES[39]**

**(Counts 1 and 41)**

Counts 1 and 41 of the Indictment charge that defendants Michael Tew and
Kimberley Tew were members of two different conspiracies, specifically, a conspiracy
to commit wire fraud, in Count 1, and a conspiracy to commit money laundering, in
Count 41.

You must determine whether each conspiracy, as charged in the Indictment,
existed, and if it did, whether Michael Tew or Kimberley Tew, or both, was a member
of it.

If you find that a defendant was not a member of one of the conspiracies
charged, then you must find the defendant not guilty of that conspiracy, even though
the defendant may have been a member of some other conspiracy. This is because
proof that a defendant was a member of one charged conspiracy, or some other
uncharged conspiracy, is not enough to convict on a different charged conspiracy.

**(CONTINUED ON FOLLOWING PAGE)**

---

[38]    10th Cir. Pattern Jury Instructions § 2.20 (3d ed. 2021) (modified to exclude
language regarding defense arguments regarding existence of multiple conspiracies,
rather than the single conspiracy charged, but keeping language instructing that the
government is required to meet its burden of proof as to each separate charged
conspiracy).

[39]    Defendant Michael Tew and defendant Kimberley Tew each object to this
10th Circuit Pattern Instruction.

40

But proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government proved that he or she was also a member of the conspiracy charged in the Indictment.

41

PROPOSED INSTRUCTION NO. [ 24 - Gov't ][40]
NOT STIPULATED[41]

**CONSPIRATOR'S LIABILITY FOR SUBSTANTIVE COUNTS**

If you find either defendant guilty of either of the conspiracies charged in Counts 1 or 41 of the Indictment, and you find beyond a reasonable doubt that another coconspirator committed a substantive offense charged in relation to one of those conspiracies during the time the defendant was a member of that conspiracy, and if you find that a substantive offense charged in relation to one of those conspiracies was committed to achieve an objective of or was a foreseeable consequence of the conspiracy, then you may find the defendant charged with that substantive offense guilty of that substantive offense, even though the defendant may not have participated in any of the acts that constitute the offenses described in the substantive offenses.

**(CONTINUED ON FOLLOWING PAGE)**

---

[40]    10th Cir. Pattern Jury Instructions § 2.21 (3d ed. 2021; *Pinkerton v. United States*, 328 U.S. 640, 645–48 (1946); *United States v. Cherry*, 217 F.3d 811, 817 (10th Cir. 2000); *United States v. Russell*, 963 F.2d 1320, 1322 (10th Cir. 1992); *United States v. Dumas*, 688 F.2d 84, 87 (10th Cir. 1982).

[41]    The parties will continue to confer on this instruction.

42

The substantive offenses associated with each of the charged conspiracies are as follows:

| Conspiracy to Commit Wire Fraud (Count 1) | |
|---|---|
| Wire Fraud     (as to defendant Michael Tew) | Counts 2-40 |
| Wire Fraud     (as to defendant Kimberley Tew) | Counts 21, 22, 25, 26, 31, 32 |
| Conspiracy to Money Laundering (Count 41) | |
| Money Laundering–Spending     (as to defendant Michael Tew) | Counts 44-56 |
| Money Laundering–Spending     (as to defendant Kimberley Tew) | Counts 43, 44, 47, 48, 56 |

**PROPOSED INSTRUCTION NO. [ 25 ]**[42]
**STIPULATED**

**WIRE FRAUD — 18 U.S.C. § 1343**

**(Counts 2 – 40 (Michael Tew))**
**and**
**(Counts 21, 22, 25, 26, 31, and 32 (Kimberley Tew))**

Defendant Michael Tew is charged with 39 violations (in Counts 2 through 40), and defendant Kimberley Tew is charged with 6 violations (in Counts 21, 22, 25, 26, 31 and 32), of Section 1343 of Title 18 of the United States Code, alleged on various dates, as listed in the Indictment.

This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud. A scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises is a specific type of a scheme to defraud.

**(CONTINUED ON FOLLOWING PAGE)**

---

[42]    10th Cir. Pattern Jury Instructions § 2.57 (3d ed. 2021); *see also United States v. Cline*, 21-cr-00339-DDD (D. Colo. 2023) (ECF No. 191 at 20-21, Final Instruction No. 17).

To find the defendant guilty of wire fraud, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First*:   the defendant devised or intended to devise a scheme to defraud, as alleged in the Indictment;

*Second*:   the defendant acted with specific intent to defraud;

*Third*:   the defendant used or caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

*Fourth*:   the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably calculated to deceive persons of ordinary prudence or comprehension.

A scheme to defraud includes a scheme to deprive another of money, property, or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be false when it constitutes a half-truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

**(CONTINUED ON FOLLOWING PAGE)**

45

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

46

**PROPOSED INSTRUCTION NO. [ 26 - Gov't ]**[43], [44]
**COMPETING**

**MONEY LAUNDERING–SPENDING — 18 U.S.C. § 1957**

**(Counts 42 and 44 – 56 (Michael Tew))**
**and**
**(Counts 43, 44, 47, 48 and 56 (Kimberley Tew))**

Defendant Michael Tew is charged with 14 violations (in Count 42 and Counts 44 through 56), and defendant Kimberley Tew is charged with 5 violations (in Counts 43, 44, 47, 48, and 56), of Section 1957 of Title 18 of the United States Code, alleged on various dates, as listed in the Indictment.

These counts charge the defendants with engaging in monetary transactions in violation of federal law.

**(CONTINUED ON FOLLOWING PAGE)**

---

[43]     *See United States v. Huff*, 641 F.3d 1228, 1230-31 (10th Cir. 2011) (citations omitted); *see also* 6th Cir. Pattern Jury Instructions § 11.06 (current through July 1, 2019); 1st Cir. Pattern Jury Instructions § 4.18.1957 (updated March 6, 2017).

[44]     The introduction to this instruction, as well as proposed additional instructions regarding the terms used in § 1957, are derived primarily from comments to 6th Cir. Pattern Jury Instructions § 11.06 (current through July 1, 2019) and 1st Cir. Pattern Jury Instructions § 4.18.1957 (updated March 6, 2017). The Sixth Circuit Committee specifically advises against giving "instruction[s] recounting the statutory language of [§§ 1956 and 1957] because it would be difficult for the jury to absorb."

47

To find the defendant guilty of money laundering–spending, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

*First*:        the defendant engaged in a monetary transaction;

*Second*:        the defendant knew the transaction involved property or funds that were the proceeds of some criminal activity;

*Third*:        the property had a value of more than $10,000;

*Fourth*:        the property was in fact proceeds of wire fraud; and

*Fifth*:        the transaction took place within the United States.

The term "proceeds of some criminal activity" means any property constituting, or derived from, proceeds obtained from a criminal offense. Wire fraud is a type of specified unlawful activity.[45]

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

"Interstate commerce" means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States, including the District of Columbia. Commerce includes travel, trade, transportation and communication.[46]

### (CONTINUED ON FOLLOWING PAGE)

---

[45]    *See United States v. Huff*, 641 F.3d at 1230 (language altered for readability; citations omitted).

[46]    10th Cir. Pattern Jury Instructions § 1.39 (3d ed. 2021).

48

If you decide that there was any effect at all on interstate commerce, then that is enough to satisfy this element.[47] All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce, however minimal that effect is. [A minimal effect is sufficient (for example, a deposit in an FDIC-insured bank is sufficient).][48]

[The government does not have to prove that a defendant knew that the money was derived from a specified unlawful activity or that a defendant committed the specified unlawful activity. It is enough that defendant had general knowledge that the proceeds; money; deposit; etc. came from some kind of criminal offense.][49]

---

[47]    10th Cir. Pattern Jury Instructions § 1.39.1 (3d ed. 2021).

[48]    1st Cir. Pattern Jury Instructions § 4.18.1957 (updated March 6, 2017); *see also Huff*, 641 at 1231 (supporting same reasoning as reflected in 1st Circuit instruction).

Defendant Michael Tew and defendant Kimberley Tew each object to this sentence insofar as it is not included in 10th Cir. Pattern Jury Instructions § 1.39 and 1.39.1.

[49]    1st Cir. Pattern Jury Instructions § 4.18.1957 (updated March 6, 2017).
Defendant Michael Tew and defendant Kimberley Tew each object to this paragraph insofar as it is not included in 10th Cir. Pattern Jury Instructions § 1.39 and 1.39.1.

**PROPOSED INSTRUCTION NO. [26 - M. Tew]**[50], [51]
**COMPETING**

**MONEY LAUNDERING–SPENDING — 18 U.S.C. § 1957**

**(Counts 42 and 44 – 56 (Michael Tew))**
**and**
**(Counts 43, 44, 47, 48 and 56 (Kimberley Tew))**

Defendant Michael Tew is charged with 14 violations (in Count 42 and Counts 44 through 56) and defendant Kimberley Tew is charged with 5 violations (in Counts 43, 44, 47, 48, and 56) of Section 1957 of Title 18 of the United States Code, alleged on various dates, as listed in the Indictment.

These counts charge the defendants with engaging in a monetary transaction in violation of federal law.

**(CONTINUED ON FOLLOWING PAGE)**

---

[50]    *See United States v. Huff*, 641 F.3d 1228, 1230-31 (10th Cir. 2011) (citations omitted); *see also* 6th Cir. Pattern Jury Instructions § 11.06 (current through July 1, 2019); 1st Cir. Pattern Jury Instructions § 4.18.1957 (updated March 6, 2017).

[51]    The introduction to this instruction, as well as proposed additional instructions regarding the terms used in § 1957, are derived primarily from comments to 6th Cir. Pattern Jury Instructions § 11.06 (current through July 1, 2019) and 1st Cir. Pattern Jury Instructions § 4.18.1957 (updated March 6, 2017). The Sixth Circuit Committee specifically advises against giving "instruction[s] recounting the statutory language of [§§ 1956 and 1957] because it would be difficult for the jury to absorb."

50

To find the defendant guilty of money laundering–spending, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

| | |
|---|---|
| *First*: | the defendant engaged; |
| *Second*: | in a monetary transaction; |
| *Third*: | in criminally derived property; |
| *Fourth*: | the defendant knew the transaction involved property or funds that were derived from unlawful actions; |
| *Fifth*: | the property had a value of more than $10,000; |
| *Sixth*: | the property was in fact proceeds of wire fraud; and |
| *Seventh*: | the transaction took place within the United States. |

The term "criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. Funds obtained by wire fraud are considered to be criminally derived property.[52]

The term "monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument by, through, or to a financial institution.

**(CONTINUED ON FOLLOWING PAGE)**

---

[52] *See United States v. Huff*, 641 F.3d at 1230 (language altered for readability; citations omitted).

"Interstate commerce" means commerce or travel between one state, territory or possession of the United States and another state, territory or possession of the United States, including the District of Columbia. Commerce includes travel, trade, transportation and communication.[53]

If you decide that there was any effect at all on interstate commerce, then that is enough to satisfy this element. All that is necessary is that the natural and probable consequence of the acts the defendant took would be to affect interstate commerce. [54]

---

[53]     10th Cir. Pattern Jury Instructions § 1.39 (3d ed. 2021).

[54]     10th Cir. Pattern Jury Instructions § 1.39.1 (3d ed. 2021).

**PROPOSED INSTRUCTION NO. [ 27 ]**[55]
**STIPULATED IN PART (see footnote)**[56]

**WILLFUL FAILURE TO FILE A TAX RETURN — 26 U.S.C. § 7203**

**(Counts 57 – 60 (Michael Tew))**

Defendant Michael Tew is charged with 4 violations (in Counts 57 through 60), of Section 7203 of Title 26 of the United States Code, alleged on various dates, as listed in the Indictment.

This law makes it a crime to willfully fail to file federal income tax returns.

To find the defendant guilty of willfully failing to file a tax return, you must be convinced that the Government has proved each of the following elements beyond a reasonable doubt:

*First*:        the defendant was required to file a return for the calendar year specified in the Count of the Indictment;

*Second*:        the defendant failed to file an income tax return as required by Title 26 of the United States Code; and

*Third*:        in failing to do so, the defendant acted willfully;

**(CONTINUED ON FOLLOWING PAGE)**

---

[55]        *See* 9th Cir. Pattern Jury Instructions §§ 22.2, 22.6 (2022 ed.).

[56]        The government objects to the bracketed language in the last paragraph.

53

To prove that the defendant acted "willfully," the government must prove beyond a reasonable doubt that the defendant knew federal tax law imposed a duty on him, and the defendant intentionally and voluntarily violated that duty.

[If the defendant acted on a good faith misunderstanding as to the requirements of the law, he did not act willfully even if his understanding of the law was wrong or unreasonable. Nevertheless, merely disagreeing with the law does not constitute a good faith misunderstanding of the law because all persons have a duty to obey the law whether or not they agree with it. Thus, to prove that the defendant acted willfully, the government must prove beyond a reasonable doubt that the defendant did not have a good faith belief that he was complying with the law.]

## <u>PART III: DELIBERATIONS & VERDICT FORM</u>

That concludes the part of my instructions explaining the law that applies in this case. Now let me finish up by explaining some things about your deliberations in the jury room and your possible verdicts.

## PROPOSED INSTRUCTION NO. [ 28 ][57]
### STIPULATED

### PROCEDURES FOR DELIBERATION

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will help to guide your deliberations and will speak for you here in the courtroom. You should also review the instructions. Your deliberations will be more productive if you understand the legal principles upon which your verdict must be based, and you are bound by your oath to follow the law stated in these instructions throughout your deliberations. Once you begin deliberations, you may only discuss the case if all jurors are present.

Second, it is your duty as jurors to discuss this case with one another in the jury room and try to reach agreement. Each of you must decide the case for yourself, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors. During your deliberations, do not hesitate to re-examine your own opinions, and do not be afraid to change your mind if the discussion persuades you that you should. But do not make a decision or surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or simply to reach a verdict. Remember at all times that you are the judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

---

[57]    *See* Charge of the Honorable Daniel D. Domenico at 25-26, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

Third, if you need to communicate with me during your deliberations, you may send a note to me through the Court Security Officer, signed by one or more jurors. I will respond as soon as possible either in writing or orally in open court. You should not tell anyone—including me—details of your deliberations or how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence you have seen and heard in the courtroom and on the law I have given to you in these instructions.

Fifth, the verdict must represent the considered judgment of each of you. In order to return a verdict, whether it is guilty or not guilty, it is necessary that each juror agree. Your verdict must be unanimous on each count.

Finally, the verdict form is the written notice of the decision that you reach in this case. You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the Court Security Officer that you are ready to return to the courtroom.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be. That is your exclusive responsibility..

PROPOSED INSTRUCTION NO. [ 29 ][58]
STIPULATED

## COMMUNICATION DURING DELIBERATIONS

During your deliberations, you must not communicate with, provide any information to, or receive any information from anyone else by any means about this case. You may not use any electronic device or medium, such as a phone, computer, or tablet, to communicate to anyone any information about this case, or to conduct any research about this case. Until I accept your verdict, you can only discuss the case in the jury room with your fellow jurors. I expect you will inform me if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. You will never have to explain your verdict to anyone. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties to the case. This would unfairly impact the judicial process.

---

[58] *See* Charge of the Honorable Daniel D. Domenico at 27, *United States v. Cline*, 21-cr-00339-DDD (D. Colo. July 28, 2023), ECF No. 191).

58

## PART IV: THE INDICTMENT

The Indictment will be provided to you for your convenience.

You will note that the Indictment charges that crimes were committed on or about specified dates. Per my previous instruction, the government must prove beyond a reasonable doubt that the defendants committed the crimes reasonably near those dates.[59]

Remember, the Indictment is not evidence. You may not rely on anything said in the Indictment to find the defendants guilty on any charge, and you must not let the Indictment influence your weighing of the evidence. You are receiving the Indictment simply to help you understand what you are deliberating about when you consider each count.

Because the Indictment is lengthy, I will not read it now, but as I said, it will be included in your set of jury instructions.

---

[59]    *See* 10th Cir. Pattern Jury Instructions § 1.18 (3d ed. 2021) (modified to reflect multiple counts) (cited *supra*).

Respectfully submitted this 24th day of January, 2024, on behalf of all the parties:

<div style="text-align:right">

COLE FINEGAN
United States Attorney
</div>

By: _/s/ Bryan Fields_
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By: _/s/ Sarah H. Weiss_
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

By: _/s/ Jason D. Schall_
Jason D. Schall
Bowlin & Schall LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
(720) 505-3861
jason@bowsch.com
Counsel for Defendant Michael Tew

By: _/s/ Kristen M. Frost_
Kristen M. Frost
Ridley, McGreevy Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
(303) 629-9700
frost@ridleylaw.com
Counsel for Defendant Michael Tew

By: _/s/ David S. Kaplan_
David S. Kaplan
Stimson LaBranche Hubbard, LLC
1652 Downing Street
Denver, CO 80218
(720) 689-8909
kaplan@slhlegal.com
Counsel for Defendant Kimberley Ann Tew

By: _/s/ Jamie Hubbard_
Jamie Hubbard
Stimson LaBranche Hubbard, LLC
1652 Downing Street
Denver, CO 80218
(720) 689-8909
hubbard@ slhlegal.com
Counsel for Defendant Kimberley Ann Tew

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
sarah.weiss@usdoj.gov

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, rodriguez@slhlegal.com), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jamie Hughes Hubbard
(hickam@slhlegal.com, hubbard@slhlegal.com, rodriguez@slhlegal.com), Nancy Lin Cohen
(cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com,
nancy@cohenblacklaw.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Judge Daniel D. Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: clinde (colin_linde@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), Linda A. McMahan (maureen.carle@usdoj.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9518708@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 1/25/2024 at 10:38 AM MST and filed on 1/25/2024

**Case Name:**     USA v. Tew et al

**Case Number:**    1:20–cr–00305–DDD

**Filer:**

**Document Number:**  381(No document attached)

**Docket Text:**
 **ORDER re Kimberley Tew's [373] Motion in Limine and [374] Motion to Continue Trial. The government must provide responses to these two motions at or before 11:59 pm on Friday, January 26, 2024. The government's response deadline for Mr. Tew's [370] Motion in Limine is also extended to 11:59 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld      rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen      nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld      rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  **MICHAEL AARON TEW** and
    2.  **KIMBERLEY ANN TEW**,
       a/ka Kimberley Vertanen,

      Defendants.

---

## GOVERNMENT'S LIST OF PROPOSED EXHIBITS

---

      The government hereby submits its preliminary list of proposed exhibits.

The government respectfully reserves its right, within reasonable notice depending

on the circumstances, to add additional exhibits as it continues preparing for trial.

      Respectfully submitted this 25th day of January, 2024.

               COLE FINEGAN
               United States Attorney

| | |
|---|---|
| By:   */s/ Bryan Fields* | By:   */s/ Sarah H. Weiss* |
| Bryan Fields | Sarah H. Weiss |
| Assistant United States Attorney | Assistant United States Attorney |
| U.S. Attorney's Office | U.S. Attorney's Office |
| 1801 California St. Suite 1600 | 1801 California St. Suite 1600 |
| Denver, CO 80202 | Denver, CO 80202 |
| (303) 454-0100 | (303) 454-0100 |
| Bryan.Fields3@usdoj.gov | Sarah.Weiss@usdoj.gov |
| Attorney for the Government | Attorney for the Government |

1

# CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

By: /s Bryan Fields
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

2

1

CASE CAPTION: <u>United States v. Tew, et al.</u>

CASE NO.: <u>20-cr-305-DDD</u>

EXHIBIT LIST OF: <u>United States of America, Plaintiff</u>
              (Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1 | | INTENTIONALLY LEFT BLANK | | | | | |
| 2 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 08.01.2018-08.31.2018 | | | | | |
| 3 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 10.01.2018-10.31.2018 | | | | | |
| 4 | | INTENTIONALLY LEFT BLANK | | | | | |
| 5 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 11.01.2018-11.30.2018 | | | | | |
| 6 | | INTENTIONALLY LEFT BLANK | | | | | |
| 7 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 12.01.2018-12.31.2018 | | | | | |
| 8 | | Signature Bank ACH Transaction re $15,250 to Political Media, dated 02.07.2019 | | | | | |
| 9 | | Signature Bank ACH Transaction re $15,250 to Political Media, dated 02.19.2019 | | | | | |
| 10 | | Signature Bank ACH Transaction re $38,000 to Political Media, dated 03.28.2019 | | | | | |
| 11 | | Signature Bank ACH Transaction re $11,250 to Political Media, dated 04.03.2019 | | | | | |

1

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 12 | | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 07.23.2019 | | | | | |
| 13 | | Signature Bank ACH Transaction re $31,500 to SHI LLC, dated 08.06.2019 | | | | | |
| 14 | | Signature Bank ACH Transaction re $9,500 to Global Fuel Logistics, dated 08.19.2019 | | | | | |
| 15 | | Signature Bank ACH Transaction re $28,000 to SHI LLC, dated 08.21.2019 | | | | | |
| 16 | | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 09.03.2019 | | | | | |
| 17 | | Signature Bank ACH Transaction re $18,000 to SHI LLC, dated 09.09.2019 | | | | | |
| 18 | | Signature Bank ACH Transaction re $33,500 to SHI LLC, dated 09.17.2019 | | | | | |
| 19 | | Signature Bank ACH Transaction re $52,750 to SHI LLC, dated 09.25.2019 | | | | | |
| 20 | | Signature Bank ACH Transaction re $75,000 to Global Fuel Logistics, dated 10.16.2019 | | | | | |
| 21 | | Signature Bank ACH Transaction re $43,000 to Global Fuel Logistics, dated 10.24.2019 | | | | | |
| 22 | | Signature Bank ACH Transaction re $49,750 to SHI LLC, dated 10.31.2019 | | | | | |
| 23 | | Signature Bank ACH Transaction re $40,500 to SHI LLC, dated 11.07.2019 | | | | | |
| 24 | | Signature Bank ACH Transaction re $43,250 to Global Fuel Logistics, dated 11.25.2019 | | | | | |
| 25 | | Signature Bank ACH Transaction re $9,550 to Global Fuel Logistics, dated 12.02.2019 | | | | | |
| 26 | | Signature Bank ACH Transaction re $24,500 to Global Fuel Logistics, dated 12.11.2019 | | | | | |

2

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 27 | | Signature Bank ACH Transaction re $15,200 to Global Fuel Logistics, dated 12.23.2019 | | | | | |
| 28 | | Signature Bank ACH Transaction re $33,000 to Global Fuel Logistics, dated 02.11.2020 | | | | | |
| 29 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 02.19.2020 | | | | | |
| 30 | | Signature Bank ACH Transaction re $36,555 to Global Fuel Logistics, dated 03.02.2020 | | | | | |
| 31 | | Signature Bank ACH Transaction re $35,000 to Global Fuel Logistics, dated 03.09.2020 | | | | | |
| 32 | | Signature Bank ACH Transaction re $22,5000 to Global Fuel Logistics, dated 03.19.2020 | | | | | |
| 33 | | Signature Bank ACH Transaction re $73,460 to Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 34 | | Signature Bank ACH Transaction re $36,925 to Global Fuel Logistics, dated 04.06.2020 | | | | | |
| 35 | | Signature Bank ACH Transaction re $68,255 to Global Fuel Logistics, dated 04.15.2020 | | | | | |
| 36 | | Signature Bank ACH Transaction re $46,850 to Global Fuel Logistics, dated 04.27.2020 | | | | | |
| 37 | | Signature Bank ACH Transaction re $85,325 to Global Fuel Logistics, dated 05.05.2020 | | | | | |
| 38 | | Signature Bank ACH Transaction re $82,422 to Global Fuel Logistics, dated 05.12.2020 | | | | | |
| 39 | | Signature Bank ACH Transaction re $78,565 to Global Fuel Logistics, dated 05.20.2020 | | | | | |
| 40 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 07.02.2020 | | | | | |
| 41 | | INTENTIONALLY LEFT BLANK | | | | | |

3

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 42 | | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawl, dated 06.04.2019 | | | | | |
| 43 | | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawl, dated 06.11.2019 | | | | | |
| 44 | | Wells Fargo Bank Withdrawl Slip re Acct x6934 $22,000 Withdrawl, dated 08.28.2019 | | | | | |
| 45 | | Wells Fargo Bank Withdrawl Slip re Acct x2064 $25,000 Withdrawl, dated 08.29.2019 | | | | | |
| 46 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | | | | | |
| 47 | | Wells Fargo Bank Wire Transaction Report re Acct x6934 $15,000, dated 09.18.2019 | | | | | |
| 48 | | Wells Fargo Bank Withdrawl Slip re Acct x6934 $20,000 Withdrawl, dated 089.26.2019 | | | | | |
| 49 | | Wells Fargo Bank Withdrawl Slip re Acct x6934 $20,000 Withdrawl, dated 09.27.2019 | | | | | |
| 50 | | Wells Fargo Bank Withdrawl Slip re Acct x6934 $20,000 Withdrawl, dated 10.01.2019 | | | | | |
| 51 | | Wells Fargo Bank Withdrawl Slip re Acct x6934 $12,000 Withdrawl, dated 10.02.2019 | | | | | |
| 52 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 11.30.2019 | | | | | |
| 53 | | Wells Fargo Bank Withdrawl Slip re Acct x2064 $20,000 Withdrawl, dated 02.20.2020 | | | | | |
| 54 | | Wells Fargo Bank Withdrawl Slip re Acct x2064 $15,000 Withdrawl, dated 02.21.2020 | | | | | |
| 55 | | Wells Fargo Bank Withdrawl Slip re Acct x2064 $20,000 Withdrawl, dated 02.27.2020 | | | | | |
| 56 | | Wells Fargo Bank Withdrawl Slip re Acct x2064 $20,000 Withdrawl, dated 03.03.2020 | | | | | |

4

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 57-100 | | INTENTIONALLY LEFT BLANK | | | | | |
| 101 | | 2016 Gross Income Summary for Michael Tew | | | | | |
| 102 | | 2017 Gross Income Summary for Michael Tew | | | | | |
| 103 | | 2018 Gross Income Summary for Michael Tew | | | | | |
| 104 | | 2019 Gross Income Summary for Michael Tew | | | | | |
| 105 | | Internal Revenue Service 2019 Account Transcript | | | | | |
| 106 | | INTENTIONALLY LEFT BLANK | | | | | |
| 107 | | 2016 Gross Income Summary for Michael Tew | | | | | |
| 108 | | 2017 Gross Income Summary for Michael Tew | | | | | |
| 109 | | 2018 Gross Income Summary for Michael Tew | | | | | |
| 110 - 200 | | 2019 Gross Income Summary for Michael Tew | | | | | |
| 201 | | INTENTIONALLY LEFT BLANK | | | | | |
| 202 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, statement 08.31.2018 | | | | | |
| 203 | | Regions Bank Statement re Account x4514 Michael Meyers, statement period 10.12.2018-11.08.2018 | | | | | |
| 204 | | INTENTIONALLY LEFT BLANK | | | | | |

5

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 205 | | Regions Bank Statement re Account x4514 Michael Meyers, statement period 11.09.2018-12.10.2018 | | | | | |
| 206 | | INTENTIONALLY LEFT BLANK | | | | | |
| 207 | | ANB Bank Statement re Account x3099 Michael Meyers, dated 12.18.2018 | | | | | |
| 208 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2019-02.16.2019 | | | | | |
| 209 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 210 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | | | | | |
| 211 | | INTENTIONALLY LEFT BLANK | | | | | |
| 212 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 213 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 08.31.2019 | | | | | |
| 214 | | INTENTIONALLY LEFT BLANK | | | | | |
| 215 | | INTENTIONALLY LEFT BLANK | | | | | |
| 216 | | INTENTIONALLY LEFT BLANK | | | | | |
| 217 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 09.30.2019 | | | | | |
| 218 | | INTENTIONALLY LEFT BLANK | | | | | |
| 219 | | INTENTIONALLY LEFT BLANK | | | | | |

6

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 220 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 10.31.2019 | | | | | |
| 221 | | INTENTIONALLY LEFT BLANK | | | | | |
| 222 | | INTENTIONALLY LEFT BLANK | | | | | |
| 223 | | INTENTIONALLY LEFT BLANK | | | | | |
| 224 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | | | | | |
| 225 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 226 | | INTENTIONALLY LEFT BLANK | | | | | |
| 227 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | | | | | |
| 228 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 229 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 02.29.2020 | | | | | |
| 230 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 231 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2020-03.16.2020 | | | | | |
| 232 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 233 | | INTENTIONALLY LEFT BLANK | | | | | |
| 234 | | INTENTIONALLY LEFT BLANK | | | | | |

7

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 235 | | INTENTIONALLY LEFT BLANK | | | | | |
| 236 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2020-05.16.2020 | | | | | |
| 237 | | INTENTIONALLY LEFT BLANK | | | | | |
| 238 | | INTENTIONALLY LEFT BLANK | | | | | |
| 239 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 240 | | Navy Federal Credit Union Transaction Details re Access x1390, Account x3094 Global Fuel Logistics, transaction period 07.20.2020-07.08.2020 | | | | | |
| 241 | | INTENTIONALLY LEFT BLANK | | | | | |
| 242 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | | | | | |
| 243 | | INTENTIONALLY LEFT BLANK | | | | | |
| 244 | | INTENTIONALLY LEFT BLANK | | | | | |
| 245 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 08.31.2019 | | | | | |
| 246 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | | | | | |
| 247 | | INTENTIONALLY LEFT BLANK | | | | | |
| 248 | | INTENTIONALLY LEFT BLANK | | | | | |
| 249 | | INTENTIONALLY LEFT BLANK | | | | | |

8

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 250 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 10.31.2019 | | | | | |
| 251 - 300 | | INTENTIONALLY LEFT BLANK | | | | | |
| 301 | | ANB Bank Signature Card re Account x3099 Michael Meyers | | | | | |
| 302 | | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | | | | | |
| 303 | | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | | | | | |
| 304 | | Navy Federal Credit Union Application re Global Fuel Logistics, dated 06.08.2020 | | | | | |
| 305 | | Regions Bank Signature Cards re Account x0514 Michael Meyers | | | | | |
| 306 | | Wells Fargo Bank Signature Card re Account x6934 Sand Hill LLC, LLC | | | | | |
| 307 | | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | | | | | |
| 308 | | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | | | | | |
| 309 | | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | | | | | |
| 310 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, dated 08.31.2018 | | | | | |
| 311 | | BBVA Compass Signature Card re Account x0987 5530 Jessamine Development LLC | | | | | |
| 312 | | Access National Bank Statement re Account x5965 Political Media Inc., statement period 12.01.2018-12.31.2018 | | | | | |
| 313 | | Simple Signature Card for Kimberley Tew | | | | | |

9

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 314 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 315 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 316 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | | | | | |
| 317 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 318 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | | | | | |
| 319 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 320 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | | | | | |
| 321 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 322 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | | | | | |
| 323 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 324 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.08.2019-01.16.2019 | | | | | |
| 325 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2019-02.16.2019 | | | | | |
| 326 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 327 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2019-04.16.2019 | | | | | |
| 328 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | | | | | |

10

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|---------------|
| 329 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | | | | | |
| 330 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | | | | | |
| 331 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 332 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | | | | | |
| 333 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 334 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | | | | | |
| 335 | | American Express Corporate Card Authorization re Account x91009 National Air Cargo, Cardmember Michael Tew | | | | | |
| 336 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | | | | | |
| 337 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | | | | | |
| 338 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 06.16.2018 | | | | | |
| 339 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 07.16.2018 | | | | | |
| 340 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 12.31.2019 | | | | | |
| 341 | | BBVA Compass Statement re Account x0987 5530 Jassamine Development LLC, statement period 11.01.2018-11.30.2018 | | | | | |
| 342 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 05.31.2019 | | | | | |
| 343 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 01.31.2020 | | | | | |

11

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 344 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 02.29.2020 | | | | | |
| 345 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 03.31.2020 | | | | | |
| 346 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2020-06.30.2020 | | | | | |
| 347 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 08.16.2018 | | | | | |
| 348 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 09.16.2018 | | | | | |
| 349 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 10.16.2018 | | | | | |
| 350 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 11.16.2018 | | | | | |
| 351 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 12.16.2018 | | | | | |
| 352 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 01.16.2019 | | | | | |
| 353 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 02.16.2019 | | | | | |
| 354 | | Access National Bank Signature Card re Account x5965 Political Media | | | | | |
| 355 | | Signature Bank ACH Transaction re $25,000 to Global Fuel Logistics, dated 10.23.2019 | | | | | |
| 356 | | Signature Bank ACH Transaction re $21,250 to Political Media Inc., dated 12.10.2018 | | | | | |
| 357 | | Signature Bank ACH Transaction re $15,000 to 5530 Jessamine Development LLC, dated 08.22.2018 | | | | | |
| 358 | | Signature Bank ACH Transaction re $15,000 to 5530 Jessamine Development LLC, dated 08.23.2018 | | | | | |

12

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 359 | | Signature Bank ACH Transaction re $15,000 to 5530 Jessamine Development LLC, dated 09.10.2018 | | | | | |
| 360 | | Signature Bank ACH Transaction re $15,000 to 5530 Jessamine Development LLC, dated 09.18.2018 | | | | | |
| 361 | | Signature Bank ACH Transaction re $15,000 to 5530 Jessamine Development LLC, dated 09.28.2018 | | | | | |
| 362 | | Signature Bank ACH Transaction re $30,000 to Michael Meyers, dated 12.03.2018 | | | | | |
| 363 | | Access National Bank Statement re Account x5965 Political Media Inc., statement period 03.01.2019-03.31.2019 | | | | | |
| 364 | | ANB Bank Statement re Account x3099 Michael Meyers, dated 01.04.2019 | | | | | |
| 365 | | Signature Bank ACH Transaction re $21,000 to Political Media Inc., dated 01.23.2019 | | | | | |
| 366 | | Signature Bank ACH Transaction re $15,312.50 to Political Media Inc., dated 01.07.2019 | | | | | |
| 367 | | Signature Bank ACH Transaction re $23,350 to Political Media Inc., dated 01.10.2019 | | | | | |
| 368 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.07.2019-01.16.2019 | | | | | |
| 369 | | Signature Bank ACH Transaction re $28,000 to Political Media Inc., dated 01.18.2019 | | | | | |
| 370 | | Signature Bank ACH Transaction re $31,500 to Political Media Inc., dated 03.14.2019 | | | | | |
| 371 | | Signature Bank ACH Transaction re $37,800 to Political Media Inc., dated 03.04.2019 | | | | | |
| 372 | | Signature Bank ACH Transaction re $20,250 to Political Media Inc., dated 03.19.2019 | | | | | |
| 373 | | Signature Bank ACH Transactions re: $37,500 to Political Media Inc., dated 04.08.2019; $18,750 to Political Media Inc., dated 04.11.2019; and $18,750 to Political Media Inc., dated 04.15.2019 | | | | | |

13

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|---------------|
| 374 | | Signature Bank ACH Transaction re $18,750 to Political Media Inc., dated 04.17.2019 | | | | | |
| 375 | | Signature Bank ACH Transactions re: $18,750 to Political Media Inc., dated 04.22.2019; $18,750 to Political Media Inc., dated 04.24.2019; $38,640 to Political Media Inc., dated 04.29.2019; and $19,890 to Political Media, dated 05.07.2019 | | | | | |
| 376 | | Signature Bank ACH Transactions re: $49,750 to Political Media, dated 05.07.2019; and $40,000 to Political Media Inc., dated 05.10.2019 | | | | | |
| 377 | | Signature Bank ACH Transactions re: $19,900 to Political Media, dated 05.15.2019; $23,785 to Political Media, dated 05.21.2019; $9,950 to Political Media, dated 05.23.2019; $11,150 to Political Media, dated 05.28.2019; and $10,100 to Political Media Inc., dated 05.29.2019 | | | | | |
| 378 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | | | | | |
| 379 | | Signature Bank ACH Transactions re: $53,500 to Political Media, dated 06.03.2019; $28,000 to Political Media, dated 06.10.2019; and $9,500 to Political Media, dated 06.13.2019 | | | | | |
| 380 | | Signature Bank ACH Transactions re: $50,000 to Political Media Inc., dated 06.20.2019; $15,000 to Political Media, dated 06.25.2019; and $30,000 to Sand Hill LLC, dated 06.26.2019 | | | | | |
| 381 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | | | | | |
| 382 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 06.30.2019 | | | | | |
| 383 | | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | | | | | |
| 384 | | Signature Bank ACH Transactions re: $9,200 to Sand Hill LLC, dated 06.28.2019; $13,000 to SHI LLC, dated 07.09.2019; $27,475 to SHI LLC, dated 07.11.2019; and $10,000 to SHI LLC, dated 07.19.2019 | | | | | |
| 385 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 07.31.2019 | | | | | |
| 386 | | Signature Bank ACH Transaction re $12,900 to Global Fuel Logistics, dated 01.07.2020 | | | | | |
| 387 | | Signature Bank ACH Transactions re: $15,500 to Global Fuel Logistics, dated 01.10.2020; $19,500 to Global Fuel Logistics, dated 01.17.2020; $9,800 to Global Fuel Logistics, dated 01.22.2020; $13,500 to Global Fuel Logistics, dated 01.23.2020; $36,500 to Global Fuel Logistics, dated 01.27.2020; and $7,200 to Global Fuel Logistics, dated 01.30.2020 | | | | | |

14

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 388 | | Signature Bank ACH Transaction re $13,000 to Global Fuel Logistics, dated 08.09.2019 | | | | | |
| 389 | | Signature Bank ACH Transaction re $24,700 to Global Fuel Logistics, dated 03.05.2020 | | | | | |
| 390 | | Signature Bank ACH Transactions re: $97,545 to Global Fuel Logistics, dated 06.22.2020; $71,550 to Global Fuel Logistics, dated 06.24.2020; and $105,000 to Global Fuel Logistics, dated 06.29.2020 | | | | | |
| 391 | | Signature Bank ACH Transaction re $83,526 to Global Fuel Logistics, dated 06.02.2020 | | | | | |
| 392 | | Signature Bank ACH Transactions re: $45,220 to Global Fuel Logistics, dated 06.04.2020; $93,135 to Global Fuel Logistics, dated 06.09.2020; and $93,635 to Global Fuel Logistics, dated 06.17.2020 | | | | | |
| 393 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | | | | | |
| 394 | | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | | | | | |
| 395 | | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | | | | | |
| 396 | | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | | | | | |
| 397 | | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | | | | | |
| 398 | | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | | | | | |
| 399 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | | | | | |
| 400 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 401 | | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | | | | | |
| 402 | | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | | | | | |

15

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 403 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | | | | | |
| 404 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | | | | | |
| 405 | | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | | | | | |
| 406 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | | | | | |
| 407 | | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | | | | | |
| 408 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | | | | | |
| 409 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | | | | | |
| 410 | | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | | | | | |
| 411 | | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | | | | | |
| 412 | | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | | | | | |
| 413 | | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | | | | | |
| 414 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | | | | |
| 415 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | | | | | |
| 416 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 417 | | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | | | | | |

16

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 418 | | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | | | | | |
| 419 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | | | | | |
| 420 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | | | | | |
| 421 | | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | | | | | |
| 422 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | | | | | |
| 423 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | | | | | |
| 424 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | | | | | |
| 425 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | | | | | |
| 426 | | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | | | | | |
| 427 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | | | | |
| 428 | | Signature Bank ACH Transaction re: $13,000 to Sand Hill LLC, dated 08.09.2019 | | | | | |
| 429 | | Signature Bank ACH Transaction re: $35,000 to Sand Hill LLC, dated 08.14.2019 | | | | | |
| 430 | | Signature Bank ACH Transaction re: $15,000 to Global Fuel Logistics, dated 08.15.2019 | | | | | |
| 431 | | Signature Bank ACH Transaction re: $27,000 to Sand Hill LLC, dated 08.22.2019 | | | | | |
| 432 | | Signature Bank ACH Transaction re: $45,000 to Sand Hill LLC, dated 08.26.2019 | | | | | |

17

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 433 | | Signature Bank Wire Transaction re: $45,000 to Global Fuel Logistics, dated 08.29.2019 | | | | | |
| 434 | | Signature Bank ACH Transaction re: $13,000 to Global Fuel Logistics, dated 02.03.2020 | | | | | |
| 435 | | Signature Bank ACH Transaction re: $23,200 to Global Fuel Logistics, dated 02.06.2020 | | | | | |
| 436 | | Signature Bank ACH Transaction re: $32,500 to Global Fuel Logistics, dated 02.13.2020 | | | | | |
| 437 | | Signature Bank ACH Transaction re: $55,000 to Global Fuel Logistics, dated 02.18.2020 | | | | | |
| 438 | | Signature Bank ACH Transaction re: $40,000 to Global Fuel Logistics, dated 02.26.2020 | | | | | |
| 439 | | Signature Bank ACH Transaction re: $74,955 to Global Fuel Logistics, dated 03.11.2020 | | | | | |
| 440 | | Signature Bank ACH Transaction re: $17,200 to Global Fuel Logistics, dated 03.17.2020 | | | | | |
| 441 | | Signature Bank ACH Transaction re: $32,245 to Global Fuel Logistics, dated 03.24.2020 | | | | | |
| 442 | | Signature Bank ACH Transaction re: $32,300 to Global Fuel Logistics, dated 03.26.2020 | | | | | |
| 443 | | Signature Bank ACH Transaction re: $41,225 to Global Fuel Logistics, dated 04.02.2020 | | | | | |
| 444 | | Signature Bank ACH Transaction re: $37,353 to Global Fuel Logistics, dated 04.08.2020 | | | | | |
| 445 | | Signature Bank ACH Transaction re: $31,355 to Global Fuel Logistics, dated 04.13.2020 | | | | | |
| 446 | | Signature Bank ACH Transaction re: $56,530 to Global Fuel Logistics, dated 04.21.2020 | | | | | |
| 447 | | Signature Bank ACH Transaction re: $36,240 to Global Fuel Logistics, dated 04.29.2020 | | | | | |

18

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 448 | | Signature Bank ACH Transaction re: $77,460 to Global Fuel Logistics, dated 05.18.2020 | | | | | |
| 449 | | Signature Bank ACH Transaction re: $85,500 to Global Fuel Logistics, dated 05.27.2020 | | | | | |
| 450 | | Signature Bank ACH Transaction re $20,250.00 to Political Media Inc., dated 03.18.2019 | | | | | |
| 451 | | Signature Bank ACH Transaction re $60,000 to Global Fuel Logistics, dated 09.10.2019 | | | | | |
| 452 | | Signature Bank ACH Transaction re $51,500 to Sand Hill LLC, dated 09.12.2019 | | | | | |
| 453 | | Signature Bank ACH Transaction re $11,950 to Global Fuel Logistics, dated 09.16.2019 | | | | | |
| 454 | | Signature Bank ACH Transaction re $41,500 to Sand Hill LLC, dated 09.19.2019 | | | | | |
| 455 | | Signature Bank ACH Transaction re $60,000 to Sand Hill LLC, dated 09.26.2019 | | | | | |
| 456 | | Signature Bank ACH Transaction re $75,000 to Sand Hill LLC, dated 09.30.2019 | | | | | |
| 457 | | Signature Bank ACH Transaction re $35,000 to Sand Hill LLC, dated 10.10.2019 | | | | | |
| 458 | | Signature Bank ACH Transaction re $23,750 to Global Fuel Logistics, dated 10.30.2019 | | | | | |
| 459 | | Signature Bank ACH Transaction re $25,000 to Sand Hill LLC, dated 11.18.2019 | | | | | |
| 460 | | Signature Bank ACH Transaction re $17,900 to Global Fuel Logistics, dated 11.21.2019 | | | | | |
| 461 | | Signature Bank ACH Transaction re $42,000 to Global Fuel Logistics, dated 11.27.2019 | | | | | |
| 462 | | Signature Bank ACH Transaction re $26,500 to Global Fuel Logistics, dated 12.05.2019 | | | | | |

19

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 463 | | Signature Bank ACH Transaction re $51,150 to Global Fuel Logistics, dated 12.09.2019 | | | | | |
| 464 | | Signature Bank ACH Transaction re $7,800 to Global Fuel Logistics, dated 12.16.2019 | | | | | |
| 465 | | Signature Bank ACH Transaction re $33,300 to Global Fuel Logistics, dated 12.17.2019 | | | | | |
| 466 | | Signature Bank ACH Transaction re $14,350 to Global Fuel Logistics, dated 12.19.2019 | | | | | |
| 467 | | Signature Bank ACH Transaction re $55,500 to Global Fuel Logistics, dated 12.26.2019 | | | | | |
| 468 | | Signature Bank ACH Transaction re $77,500 to Global Fuel Logistics, dated 12.30.2019 | | | | | |
| 469 | | Wells Fargo Bank Wire Transaction Report re Acct x6934 $20,611.01, dated 11.01.2019 | | | | | |
| 470 | | INTENTIONALLY LEFT BLANK | | | | | |
| 471 | | INTENTIONALLY LEFT BLANK | | | | | |
| 472 | | INTENTIONALLY LEFT BLANK | | | | | |
| 473 | | American Express Application re Michael Tew | | | | | |
| 474 | | American Express Application re Kimberley Tew | | | | | |
| 475 | | ANB Bank Signature Card re Account x3099 Michael Meyers | | | | | |
| 476 | | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | | | | | |
| 477 | | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | | | | | |

20

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 478 | | Navy Federal Credit Union Application re Global Fuel Logistics, dated 06.08.2020 | | | | | |
| 479 | | Regions Bank Signature Cards re Account x0514 Michael Meyers | | | | | |
| 480 | | Wells Fargo Bank Signature Card re Account x6934 Sand Hill LLC, LLC | | | | | |
| 481 | | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | | | | | |
| 482 | | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | | | | | |
| 483 | | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | | | | | |
| 484 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, dated 08.31.2018 | | | | | |
| 485 | | BBVA Compass Signature Card re Account x0987 5530 Jessamine Development LLC | | | | | |
| 486 | | Access National Bank Statement re Account x5965 Political Media Inc., statement period 12.01.2018-12.31.2018 | | | | | |
| 487 | | Simple Signature Card for Kimberley Tew | | | | | |
| 488 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 489 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 490 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | | | | | |
| 491 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 492 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | | | | | |

21

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 493 - 499 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 500 | | Kraken Account Opening and Verification Documents for Kimberley Tew | | | | | |
| 501 | | Kraken Account Opening and Verification Documents for Michael Tew | | | | | |
| 502 | | Coinbase profile image records for Michael Tew | | | | | |
| 503 | | Coinbase profile image records for Kimberley Tew | | | | | |
| 504 | | Google Pay Customer Profile re kley@me.com | | | | | |
| 505 | | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | | | | | |
| 506 | | McDonald Audi Wire Transfer Records re $20,611.01 Incoming Money Transfer, dated 11.01.2019 | | | | | |
| 507 | | Wynn Las Vegas Jackpot Report between 07.04.2019 and 11.29.2019 | | | | | |
| 508 | | Wynn Las Vegas 2019 Loss Summary, as of 07.16.2020 | | | | | |
| 509 | | Wynn Las Vegas Reservation Confirmation #23362412 for Kimberley Tew, 10.30.2019 arrival & 11.02.19 departure | | | | | |
| 510 | | Wynn Las Vegas Reservation/Stay History for Kimberley Tew | | | | | |
| 511 | | Wynn Las Vegas Reservation/Stay History re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | | | | | |
| 512 | | GoDaddy Domain Information re Domain Name "Global Fuel.Co" | | | | | |
| 513 | | GoDaddy Domain Information re Domain Name "Sandhillrp.com" | | | | | |

22

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 514 | | AT&T Subscriber Information re phone number x1312, Michael Tew | | | | | |
| 515 | | AT&T Subscriber Information re phone number x7473, Michael Tew | | | | | |
| 516 | | AT&T Subscriber Information re phone number x2046, Kimberley Vertanen | | | | | |
| 517 | | AT&T Text Message History re phone numbers x2046 & x1312 | | | | | |
| 518 | | AT&T Records re phone number x1312 | | | | | |
| 519 | | Spreadsheet of Verizon Call Records re phone number x1709 | | | | | |
| 520 | | Google Subscriber Information re 5530 Jessamine Development Email Recovery (chrisrncn@gmail.com) | | | | | |
| 521 | | Google Subscriber Information re Political Media email recovery (political.media.wdc@gmail.com) | | | | | |
| 522 | | Google Voice Record re Google Voice Number x0152 | | | | | |
| 523 | | Google Subscriber Information re vtleycap@gmail.com (recovery email kley@me.com) | | | | | |
| 524 | | Google subscriber information re meyersconsultinggroupinc@gmail.com | | | | | |
| 525 | | IRS Form W-9 re Michael Meyers, dated 10.11.2018 | | | | | |
| 526 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | | | | | |
| 527 | | Plea agreement as to Jonathan Yioulos, dated 11.18.2021 | | | | | |
| 528 | | Audio of 7/15/2020 Proffer with Michael Tew | | | | | |

23

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 529 | | Audio of 7/28/2020 Proffer with Michael Tew | | | | | |
| 530 | | Audio of 10/23/2020 Proffer with Kimberley Tew | | | | | |
| 531 | | 07.07.2020 Photograph of Yioulos Phone Contact 'JB' | | | | | |
| 532 | | Email re "RE: AMEX" on 07.16.2018 | | | | | |
| 533 | | Email re "FW: Scanned Document" on 07.31.2018 | | | | | |
| 534 | | Email re "RE: Wire - Michael Tew" on 08.02.2018 | | | | | |
| 535 | | Email re "FW: MT AGMT" on 09.14.2018 | | | | | |
| 536 | | Email re "FW: National Air Cargo Holdings Correspondence" on 09.17.2018 | | | | | |
| 537 | | Invoice #79487 re: Meyers Consulting Group Inc for $10,000.00; dated 10.30.2018 | | | | | |
| 538 | | Email re "RE: Michael Tew - AMEX" on 01.17.2019 | | | | | |
| 539 | | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10222 for $17,955.50; & Aero Maintenance Resources Invoice #9611 for $79,292) | | | | | |
| 540 | | Invoice #79466 re: Meyers Consulting Group Inc for $30,000.00; dated 10.12.2018 | | | | | |
| 541 | | Invoice #79488 re: Meyers Consulting Group Inc for $30,000.00; dated 11.30.2018 | | | | | |
| 542 | | Invoice #79489 re: Meyers Consulting Group Inc for $30,000.00; dated 11.30.2018 | | | | | |
| 543 | | Invoice #79490 re: Meyers Consulting Group Inc for $25,000.00; dated 12.11.2018 | | | | | |

24

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 544 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Global Fuel Logistics Inc., filed 07.11.2019 | | | | | |
| 545 | | IRS assignment of Employment Identification Number re Global Fuel Logistics, dated 07.09.2019 | | | | | |
| 546 | | Wyoming Secretary of State Articles of Incorporation re Global Fuel Logistics Inc, filed 07.09.2019 | | | | | |
| 547 | | IRS Form SS-4 Application for Employer Identification Number re Sand Hill LLC | | | | | |
| 548 | | State of New York Department of State Certification of Articles of Organization and Other Filings for Sand Hill LLC, dated 11.09.2018 | | | | | |
| 549 | | Google Pay Customer Profile re kleytew@gmail.com | | | | | |
| 550 | | IRS Form 1099 re SandHill Research Partners, tax years 2015 through 2018 | | | | | |
| 551 | | Audio of 07.29.2020 meeting with Michael Tew at Yeti store | | | | | |
| 552 | | Email re "RE: MT AGMT" on 09.14.2018 | | | | | |
| 553 | | Email headers re email received by chrisrncn@gmail.com on 08.22.2018 | | | | | |
| 554 | | Spreadsheet of Apple account information re kley@me.com | | | | | |
| 555 | | Photograph re Search Warrant Executed on 07.31.2020 #1 | | | | | |
| 556 | | Photograph re Search Warrant Executed on 07.31.2020 #2 | | | | | |
| 557 | | Photograph re Search Warrant Executed on 07.31.2020 #3 | | | | | |
| 558 | | Photograph re Search Warrant Executed on 07.31.2020 #4 | | | | | |

25

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 559 | | Photograph re Search Warrant Executed on 07.31.2020 #5 | | | | | |
| 560 | | Photograph re Search Warrant Executed on 07.31.2020 #6 | | | | | |
| 561 | | Photograph re Search Warrant Executed on 07.31.2020 #7 | | | | | |
| 562 | | Wells Fargo Bank Bag | | | | | |
| 563 | | 2TB Seagate HDD Model ST20000DM001-1CH164 Serial Number W241LEZM | | | | | |
| 564 | | Photograph re Cellebrite Processing #1 | | | | | |
| 565 | | Photograph re Cellebrite Processing #2 | | | | | |
| 566 | | Photograph re Cellebrite Processing #3 | | | | | |
| 567 | | Photograph re Cellebrite Processing #4 | | | | | |
| 568 | | Wipe Log | | | | | |
| 569 | | Hash List for Apple Return | | | | | |
| 570 | | Kraken Ledger - AA70N84GI5WBRUCHI | | | | | |
| 571 - 599 | | INTENTIONALLY LEFT BLANK | | | | | |
| 600 | | Kraken Account Opening and Verification Documents for Kimberley Tew | | | | | |
| 601 | | Email re "ACH Invoice" on 08.07.2018 (Hanna Scaife Invoice dated 08.07.2018 for $15,000) | | | | | |

26

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 602 | | Text messages between M.T. and J.Y. 08.07.2018 | | | | | |
| 603 | | Email re "re ACH Invoice" on 08.08.2018 (Hanna Scaife Invoice dated 08.08.2018 for $15,000) | | | | | |
| 604 | | Text messages between M.T. and J.Y. 08.08.2018 | | | | | |
| 605 | | Text messages between M.T. and J.Y. 08.09.2018 | | | | | |
| 606 | | Text messages between M.T. and J.Y. 08.13.2018 | | | | | |
| 607 | | Email re "Invoices: Michael Tew ACH August 15" on 08.14.2018 (Sand Hill Invoice #49 for $10,000 & Hanna Scaife Invoice dated 08.14.2018 for $20,000) | | | | | |
| 608 | | Text message between J.Y. and M.T on 08.10.2018 | | | | | |
| 609 | | Text message between J.Y. and M.T on 08.18.2018 | | | | | |
| 610 | | Text message between J.Y. and M.T on 08.21.2018 | | | | | |
| 611 | | Email re "Invoice (CORRECTED)" on 08.22.2018 (5530 Jessamine Development Invoice #7321116 for $15,000) | | | | | |
| 612 | | Email re "Wire Confirmation" on 08.22.2018 | | | | | |
| 613 | | Text messages between J.Y. and M.T on 08.22.2018 | | | | | |
| 614 | | Text messages between J.Y. and M.T on 08.23.2018 | | | | | |
| 615 | | Email re "re Invoice (CORRECTED)" on 08.23.2018 | | | | | |
| 616 | | Emails re "re Is there an invoice for this wire out of Holdings?" on 08.24.2018 | | | | | |

27

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 617 | | Text messages between M.T. and JY. on 08.28.2018 | | | | | |
| 618 | | Email re "Confirms" on 08.30.2018 | | | | | |
| 619 | | Text messages between J.Y. and K.T. on 08.30.2018 | | | | | |
| 620 | | Text messages between J.Y. and M.T. on 08.30.2018 | | | | | |
| 621 | | Text messages between M.T. and J.Y. on 08.31.2018 | | | | | |
| 622 | | Text messages between M.T. and J.Y. on 09.01.2018 | | | | | |
| 623 | | INTENTIONALLY LEFT BLANK | | | | | |
| 624 | | Emails re "RE: Is there an invoice?" on 09.07.2018 | | | | | |
| 625 | | Text messages between M.T. and J.Y. on 09.07.2018 | | | | | |
| 626 | | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:13pm | | | | | |
| 627 | | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:14pm | | | | | |
| 628 | | Text messages from J.Y. to K.T. on 09.10.2018 | | | | | |
| 629 | | Email (NO SUBJECT) on 09.10.2018 (5530 Jessamine Development Invoice #7321118 for $15,000 & Invoice #7321117 for $15,000) | | | | | |
| 630 | | Emails re "RE: Scaife Invoices" on 09.10.2018 | | | | | |
| 631 | | Emails re "RE:" (NO SUBJECT) on 09.10.2018 | | | | | |

28

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 632 | | Email re "Cancel ACH" on 09.10.2018 | | | | | |
| 633 | | Text messages between M.T. and J.Y. on 09.12.2018 | | | | | |
| 634 | | Text messages from J.Y. to K.T. on 09.12.2018 | | | | | |
| 635 | | Text messages from J.Y. to K.T. on 09.13.2018 | | | | | |
| 636 | | Text messages between M.T. and J.Y. on 09.13.2018 | | | | | |
| 637 | | INTENTIONALLY LEFT BLANK | | | | | |
| 638 | | Email re "Invoice" on 09.18.2018 (5530 Jessamine Development Invoice #7321119 for $15,000) | | | | | |
| 639 | | Text messages from J.Y. to K.T. on 09.18.2018 | | | | | |
| 640 | | Text messages from J.Y. to K.T. on 09.28.2018 | | | | | |
| 641 | | INTENTIONALLY LEFT BLANK | | | | | |
| 642 | | Email re "Consulting Invoice" on 09.28.2018 (5530 Jessamine Development Invoice #7321120 for $15,000) | | | | | |
| 643 | | Email re "RE: Invoices needed - Holdings" on 09.28.2018 | | | | | |
| 644 | | Email re "Jess" on 10.01.2018 | | | | | |
| 645 | | Text message from J.Y. to M.T. on 10.09.2018 | | | | | |
| 646 | | Text messages from J.Y. to K.T. on 10.25.2018 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 647 | | Email re "Fwd: Invoice" on 10.25.2018 | | | | | |
| 648 | | Text messages between J.Y. to M.T. on 10.25.2018 | | | | | |
| 649 | | Email re "Oct Invoice" on 10.30.2018 | | | | | |
| 650 | | Text messages between J.Y. to M.T. on 10.30.2018 | | | | | |
| 651 | | Text messages from J.Y. to K.T. on 10.30.2018 | | | | | |
| 652 | | Text messages between J.Y. to M.T. on 10.31.2018 | | | | | |
| 653 | | Email re "is there an invoice for this payment out of holdings?" on 10.31.2018 | | | | | |
| 654 | | Email re "RE: Michael Tew; Sand Hill, LLC" on 11.05.2018 at 2:13pm | | | | | |
| 655 | | Email re "RE: Michael Tew; Sand Hill, LLC" on 11.05.2018, time unknown | | | | | |
| 656 | | Text mess+C405ages sent from Kley (M.T.) to M.M. on 11.06.2018 | | | | | |
| 657 | | Email re "Meyers Consulting Group LLC" on 11.06.2018 | | | | | |
| 658 | | Email re "RE: Invoice" on 11.09.2018 | | | | | |
| 659 | | Text messages between J.Y. to M.T. on 11.09.2018 | | | | | |
| 660 | | INTENTIONALLY LEFT BLANK | | | | | |
| 661 | | Email re "RE: Entity: Sand Hill, LLC - New York" on 11.12.2018 | | | | | |

30

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 662 | | Text messages between J.Y. and M.T. on 11.13.2018 | | | | | |
| 663 | | Text messages between J.Y. and M.T. on 11.15.2018 | | | | | |
| 664 | | Text messages between J.Y. and M.T. on 11.16.2018 | | | | | |
| 665 | | Text messages between J.Y. and M.T. on 11.19.2018 | | | | | |
| 666 | | Email re "RE: Invoice" on 11.19.2018 at 8:55pm | | | | | |
| 667 | | Email re "RE: Invoice" on 11.19.2018 at 9:04pm | | | | | |
| 668 | | Text messages between J.Y. and M.T. on 11.20.2018 | | | | | |
| 669 | | Text messages between Kley (M.T.) and M.M. on 11.20.2018 | | | | | |
| 670 | | Text messages between J.Y. and M.T. on 11.21.2018 | | | | | |
| 671 | | Text messages between J.Y. and M.T. on 11.23.2018 | | | | | |
| 672 | | Text messages between J.Y. and M.T. on 11.25.2018 | | | | | |
| 673 | | Text messages between J.Y. and M.T. on 11.26.2018 | | | | | |
| 674 | | Email re "RE: Invoice" on 11.26.2018 at 7:22pm (5530 Jessamine Development Invoice #7321122 for $30,000) | | | | | |
| 675 | | Email re "RE: Invoice" on 11.26.2018 at 4:22pm | | | | | |
| 676 | | Text messages between J.Y. and M.T. on 11.27.2018 | | | | | |

31

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 677 | | Email re "RE: Cash Sheet - Holdings - what's this?" on 11.28.2018 | | | | | |
| 678 | | Text message from J.Y. to M.T. on 11.30.2018 | | | | | |
| 679 | | Text messages from J.Y. to K.T. on 12.01.2018 | | | | | |
| 680 | | Email re "RE: Final Invoice" on 12.03.2018 (Meyers Consulting Group Invoice #79489 for $30,000) | | | | | |
| 681 | | Text messages between J.Y. and M.T. on 12.04.2018 | | | | | |
| 682 | | Text messages from J.Y. to K.T. on 12.04.2018 | | | | | |
| 683 | | Email re "Missing Meyers invoices" on 12.04.2018 (Meyers Consulting Group Invoice #79489 for $30,000 & Invoice #79488 for $30,000) | | | | | |
| 684 | | Text messages between J.Y. and M.T. on 12.06.2018 | | | | | |
| 685 | | Text messages from J.Y. to K.T. on 12.06.2018 | | | | | |
| 686 | | Email re "Fwd: Political Media, Inc. - Invoice for Services" on 12.07.2018 (Political Media Invoice #6516 for $21,250) | | | | | |
| 687 | | Text messages between J.Y. and M.T. on 12.07.2018 | | | | | |
| 688 | | Email re: "RE: Political Media, Inc. - Invoice for Services" on 12.07.2018 | | | | | |
| 689 | | Text messages between J.Y. and M.T. on 12.06.2018 | | | | | |
| 690 | | Text messages between J.Y. and M.T. on 12.10.2018 | | | | | |
| 691 | | Email re "New Vendor - Paid on Friday" on 12.10.2018 | | | | | |

32

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 692 | | Email re "Re: Final Invoice" on 12.11.2018 (Meyers Consulting Group Invoice #79490 for $25,000) | | | | | |
| 693 | | Text messages between J.Y. and M.T. on 12.11.2018 | | | | | |
| 694 | | Email re "Meyers Inv" on 12.14.2018 | | | | | |
| 695 | | Text messages between J.Y. and M.T. on 12.18.2018 | | | | | |
| 696 | | Text messages between Kley (M.T.) and M.M. on 12.18.2018 | | | | | |
| 697 | | Text messages between J.Y. and M.T. on 12.19.2018 | | | | | |
| 698 | | Text messages between J.Y. and M.T. on 12.20.2018 | | | | | |
| 699 | | Email re "FW: INVOICES: MICHAEL TEW ACH AUGUST 15" on 12.20.2018 | | | | | |
| 700 | | Email re "FW: Political Media, Inc. - Invoice for Services" on 12.20.2018 (Political Media Invoice #6517 for $15,125) | | | | | |
| 701 | | Text messages between J.Y. and M.T. on 12.21.2018 | | | | | |
| 702 | | Text messages between J.Y. and M.T. on 01.07.2019 | | | | | |
| 703 | | Email re "Invoice from Political Media, Inc." on 01.07.2019 (Political Media Invoice #6540 for $15,312.50) | | | | | |
| 704 | | Text messages between J.Y. and M.T. on 01.09.2019 | | | | | |
| 705 | | Text messages between J.Y. and M.T. on 01.10.2019 | | | | | |
| 706 | | Email re "Invoice from Political Media, Inc." on 01.10.2019 (Political Media Invoice #6670 for $25,350) | | | | | |

33

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 707 | | Text messages between J.Y. and M.T. on 01.17.2019 | | | | | |
| 708 | | Text messages from J.Y. to K.T. on 01.17.2019 | | | | | |
| 709 | | Email re "FW: Invoice from Political Media, Inc." on 01.17.2019 | | | | | |
| 710 | | Text messages between J.Y. and M.T. on 01.18.2019 | | | | | |
| 711 | | Email re "Invoice from Political Media, Inc." on 01.18.2019 (Political Media Invoice #6712 for $27,562.50) | | | | | |
| 712 | | Text messages between J.Y. and M.T. on 01.23.2019 | | | | | |
| 713 | | Email re "Invoice from Political Media, Inc." on 01.23.2019 (Political Media Invoice #6714 for $21,000 & Invoice #6712 for $28,000) | | | | | |
| 714 | | Email re "FW: Invoice from Political Media, Inc." on 01.25.2019 | | | | | |
| 715 | | Text messages from J.Y. to K.T. on 02.07.2019 | | | | | |
| 716 | | Email re "Invoice from Political Media, Inc." on 02.07.2019 (Political Media Invoice #6775 for $15,250) | | | | | |
| 717 | | Text messages between J.Y. and M.T. on 02.19.2019 | | | | | |
| 718 | | Text messages from J.Y. to K.T. on 02.19.2019 | | | | | |
| 719 | | Email re "Invoice from Political Media, Inc." on 02.19.2019 (Political Media Invoice #6786 for $15,250) | | | | | |
| 720 | | Email re "FW: Invoice from Political Media, Inc." on 02.21.2019 | | | | | |
| 721 | | Text messages between J.Y. and M.T. on 02.24.2019 | | | | | |

34

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 722 | | Text messages between J.Y. and M.T. on 03.01.2019 | | | | | |
| 723 | | Email re "Invoice from Political Media, Inc," on 03.04.2019 (Political Media Invoice #6804 for $37,800) | | | | | |
| 724 | | Text messages between Kley (M.T.) and K.T. on 03.06.2019 | | | | | |
| 725 | | Email re "FW: Invoice from Political Media, Inc." on 03.07.2019 | | | | | |
| 726 | | Text messages between Kley (M.T.) and K.T. on 03.14.2019 | | | | | |
| 727 | | Email re "Invoice from Political Media, Inc," on 03.14.2019 (Political Media Invoice #6881 for $31,500) | | | | | |
| 728 | | Email re "FW: Invoice from Political Media, Inc." on 03.15.2019 | | | | | |
| 729 | | Text messages between Kley (M.T.) and K.T. on 03.17.2019 | | | | | |
| 730 | | Text messages between Kley (M.T.) and K.T. on 03.18.2019 | | | | | |
| 731 | | Text messages between J.Y. and M.T. on 03.18.2019 | | | | | |
| 732 | | Email re "Invoice from Political Media, Inc," on 03.18.2019 (Political Media Invoice #6910 for $20,250) | | | | | |
| 733 | | Email re "FW: Invoice from Political Media, Inc." on 03.19.2019 | | | | | |
| 734 | | Text messages between J.Y. and M.T. on 03.19.2019 | | | | | |
| 735 | | Text messages between Kley (M.T.) and K.T. on 03.19.2019 | | | | | |
| 736 | | Text messages between M.T. and K.T. on 03.28.2019 | | | | | |

35

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 737 | | Email re "Invoice from Political Media, Inc," on 03.28.2019 (Political Media Invoice #6976 for $38,000) | | | | | |
| 738 | | INTENTIONALLY LEFT BLANK | | | | | |
| 739 | | Text messages between Kley (M.T.) and K.T. on 03.30.2019 | | | | | |
| 740 | | Text messages between Kley (M.T.) and K.T. on 04.03.2019 | | | | | |
| 741 | | Text messages between J.Y. and M.T. on 04.03.2019 | | | | | |
| 742 | | Email re "Invoice from Political Media, Inc," on 04.03.2019  (Political Media Invoice #6910 for $30,150) | | | | | |
| 743 | | Email re "FW: Invoice from Political Media, Inc," on 04.04.2019  (Political Media Invoice #7004 for 11,250) | | | | | |
| 744 | | INTENTIONALLY LEFT BLANK | | | | | |
| 745 | | Text messages between J.Y. and M.T. on 04.07.2019 | | | | | |
| 746 | | Text messages between Kley (M.T.) and K.T. on 04.07.2019 | | | | | |
| 747 | | Text messages between J.Y. and M.T. on 04.08.2019 | | | | | |
| 748 | | Email re "Invoice from Political Media, Inc," on 04.08.2019 (Political Media Invoice #7101 for $37,500) | | | | | |
| 749 | | Email re "re Invoice from Political Media, Inc." on 04.09.2019 | | | | | |
| 750 | | INTENTIONALLY LEFT BLANK | | | | | |
| 751 | | Text messages between M.T. and K.T. on 04.11.2019 | | | | | |

36

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 752 | | Text messages from Kley (M.T.) to M.M. on 04.12.2019 | | | | | |
| 753 | | Text messages between M.T. and K.T. on 04.12.2019 | | | | | |
| 754 | | Text messages between J.Y. and M.T. on 04.13.2019 | | | | | |
| 755 | | Text messages between M.T. and K.T. on 04.16.2019 | | | | | |
| 756 | | Text messages between M.T. and K.T. on 04.17.2019 | | | | | |
| 757 | | INTENTIONALLY LEFT BLANK | | | | | |
| 758 | | Text messages between M.T. and Kley (K.T.) on 04.21.2019 | | | | | |
| 759 | | Text messages between M.T. and K.T. on 04.22.2019 | | | | | |
| 760 | | Text messages between Kley (M.T.) and K.T. on 04.23.2019 | | | | | |
| 761 | | Text message from J.Y. to M.T. on 04.24.2019 | | | | | |
| 762 | | Text messages between M.T. and K.T. on 04.24.2019 | | | | | |
| 763 | | INTENTIONALLY LEFT BLANK | | | | | |
| 764 | | Email re "Invoice from Political Media, Inc." on 04.29.2019  (Political Media Invoice #7156 for $75,000 and Invoice #7158 for $39,780) | | | | | |
| 765 | | Email re "FW: Invoice from Political Media. Inc." on 04.29.2019 | | | | | |
| 766 | | Text messages between Kley (M.T.) and K.T. on 04.30.2019 | | | | | |

37

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 767 | | Text messages between M.T. and K.T. on 05.01.2019 | | | | | |
| 768 | | Text messages between M.T. and K.T. on 05.02.2019 | | | | | |
| 769 | | Text messages between M.T. and K.T. on 05.06.2019 | | | | | |
| 770 | | Text messages between J.Y. and M.T. on 05.07.2019 | | | | | |
| 771 | | Text messages between M.T. and K.T. on 05.08.2019 | | | | | |
| 772 | | Text messages between Kley (M.T.) and K.T. on 05.09.2019 | | | | | |
| 773 | | Text messages between Kley (M.T.) and K.T. on 05.10.2019 | | | | | |
| 774 | | Text messages between J.Y. and M.T. on 05.10.2019 | | | | | |
| 775 | | Text messages between J.Y. and M.T. on 05.15.2019 | | | | | |
| 776 | | Text messages between M.T. and K.T. on 05.20.2019 | | | | | |
| 777 | | Text messages between M.T. and Kley (K.T.) on 05.21.2019 | | | | | |
| 778 | | Text messages between M.T. and Kley (K.T.) on 05.22.2019 | | | | | |
| 779 | | Text messages between M.T. and K.T. on 05.27.2019 | | | | | |
| 780 | | Text messages between M.T. and K.T. on 05.28.2019 | | | | | |
| 781 | | Text messages between J.Y. and M.T. on 06.03.2019 | | | | | |

38

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 782 | | Text messages between Kley (M.T.) and K.T. on 06.03.2019 | | | | | |
| 783 | | Email re "Journal Entry Testing" on 06.04.2019 | | | | | |
| 784 | | Text messages between M.T. and K.T. on 06.07.2019 | | | | | |
| 785 | | Text messages between M.T. and K.T. on 06.10.2019 | | | | | |
| 786 | | Text messages between J.Y. and M.T. on 06.12.2019 | | | | | |
| 787 | | Text messages between Kley (M.T.) and K.T. on 06.12.2019 | | | | | |
| 788 | | Text messages between J.Y. and M.T. on 06.13.2019 | | | | | |
| 789 | | Text messages between M.T. and K.T. on 06.13.2019 | | | | | |
| 790 | | Text messages between M.T. and K.T. on 06.18.2019 | | | | | |
| 791 | | INTENTIONALLY LEFT BLANK | | | | | |
| 792 | | Text messages between M.T. and K.T. on 06.24.2019 | | | | | |
| 793 | | Text messages between M.T. and K.T. on 06.25.2019 | | | | | |
| 794 | | Text messages between M.T. and K.T. on 06.26.2019 and 06.27.2019 | | | | | |
| 795 | | Text messages between J.Y. and M.T. on 06.26.2019 | | | | | |
| 796 | | Text messages between J.Y. and M.T. on 06.28.2019 | | | | | |

39

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 797 | | Text messages between M.T. and K.T. on 06.28.2019 | | | | | |
| 798 | | Text messages between M.T. and K.T. on 06.29.2019 | | | | | |
| 799 | | Email re "RE: Please assist" on 07.11.2019 | | | | | |
| 800 | | Text messages between M.T. and K.T. on 07.02.2019 | | | | | |
| 801 | | Emails re "Invoice From Political Media, Inc." on 07.03.2019 (Political Media Invoice #7201 for $40,000; Invoice #7263 for $10,100; Invoice #7312 for $9,500; & Invoice #7322 for $30,000) | | | | | |
| 802 | | Text messages between M.T. and K.T. on 07.04.2019 | | | | | |
| 803 | | INTENTIONALLY LEFT BLANK | | | | | |
| 804 | | Text messages between M.T. and K.T. on 07.07.2019 | | | | | |
| 805 | | Text messages between M.T. and K.T. on 07.07.2019 | | | | | |
| 806 | | Text messages between J.Y. and M.T. on 07.08.2019 | | | | | |
| 807 | | Emails re "Re: Please assist" on 07.08.2019 | | | | | |
| 808 | | Emails re "Re: Please assist" on 07.09.2019 | | | | | |
| 809 | | Text messages between M.T. and K.T. on 07.09.2019 | | | | | |
| 810 | | Text messages between M.T. and K.T. on 07.11.2019 | | | | | |
| 811 | | Text messages between M.T. and K.T. on 07.17.2019 | | | | | |

40

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 812 | | Text messages between M.T. and K.T. on 07.18.2019 | | | | | |
| 813 | | Text messages between J.Y. and M.T. on 07.19.2019 | | | | | |
| 814 | | Text messages between J.Y. and M.T. on 07.22.2019 | | | | | |
| 815 | | Text messages between M.T. and K.T. on 07.29.2019 | | | | | |
| 816 | | Text messages between J.Y. and M.T. on 07.30.2019 | | | | | |
| 817 | | Text messages between J.Y. and M.T. on 08.01.2019 | | | | | |
| 818 | | Text messages between J.Y. and M.T. on 08.03.2019 | | | | | |
| 819 | | Text messages between M.T. and K.T. on 08.04.2019 | | | | | |
| 820 | | Text messages between J.Y. and M.T. on 08.05.2019 | | | | | |
| 821 | | Text messages between M.T. and K.T. on 08.05.2019 | | | | | |
| 822 | | Text messages between M.T. and K.T. on 08.06.2019 | | | | | |
| 823 | | Text messages between J.Y. and M.T. on 08.06.2019 | | | | | |
| 824 | | Text messages between M.T. and K.T. on 08.11.2019 | | | | | |
| 825 | | Text messages between M.T. and K.T. on 08.13.2019 | | | | | |
| 826 | | Text messages between J.Y. and M.T. on 08.13.2019 | | | | | |

41

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 827 | | Text messages between J.Y. and M.T. on 08.14.2019 | | | | | |
| 828 | | Text messages between J.Y. and M.T. on 08.15.2019 | | | | | |
| 829 | | Text messages between M.T. and K.T. on 08.18.2019 | | | | | |
| 830 | | Text messages between J.Y. and M.T. on 08.19.2019 | | | | | |
| 831 | | Text messages between J.Y. and M.T. on 08.20.2019 | | | | | |
| 832 | | Text messages between J.Y. and M.T. on 08.21.2019 | | | | | |
| 833 | | Text messages between J.Y. and M.T. on 08.22.2019 | | | | | |
| 834 | | Text messages between M.T. and K.T. on 08.22.2019 | | | | | |
| 835 | | Text messages between M.T. and K.T. on 08.23.2019 | | | | | |
| 836 | | Text messages between M.T. and K.T. on 08.25.2019 | | | | | |
| 837 | | Text messages between J.Y. and M.T. on 08.26.2019 | | | | | |
| 838 | | Text messages between M.T. and K.T. on 08.26.2019 | | | | | |
| 839 | | Text messages between M.T. and K.T. on 08.27.2019 | | | | | |
| 840 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |
| 841 | | Email re "Invoices from Global Fuel Logistics, Inc" on 08.28.2019 (Global Fuel Logistics Invoice #987 for #9,500; Invoice #972 for $94,500; & Invoice #763 for $152,000) | | | | | |

42

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 842 | | Text messages between M.T. and K.T. on 08.29.2019 | | | | | |
| 843 | | Emails re "RE: 8/29 Wires" on 08.29.2019 | | | | | |
| 844 | | Email re "Global Fuel - Updated Invoice" on 08.29.2019 (Global Fuel Logistics Invoice #1001 for $55,000) | | | | | |
| 845 | | Email re "Invoices from Global Fuel Logistics, Inc" on 08.29.2019 (Global Fuel Logistics Invoice #1023 for $45,000; Invoice #1011 for $45,000; & Invoice #1001 for $56,000) | | | | | |
| 846 | | Text messages between M.T. and K.T. on 08.30.2019 | | | | | |
| 847 | | INTENTIONALLY LEFT BLANK | | | | | |
| 848 | | Text messages between M.T. and K.T. on 09.06.2019 | | | | | |
| 849 | | Text messages between M.T. and K.T. on 09.07.2019 | | | | | |
| 850 | | Text messages between M.T. and K.T. on 09.08.2019 | | | | | |
| 851 | | Text messages between J.Y. and M.T. on 09.09.2019 | | | | | |
| 852 | | Text messages between M.T. and K.T. on 09.09.2019 | | | | | |
| 853 | | Text messages between M.T. and K.T. on 09.10.2019 | | | | | |
| 854 | | Text messages between M.T. and K.T. on 09.13.2019 | | | | | |
| 855 | | Text messages between M.T. and K.T. on 09.14.2019 | | | | | |
| 856 | | Text messages between J.Y. and M.T. on 09.16.2019 | | | | | |

43

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 857 | | Text messages between J.Y. and M.T. on 09.17.2019 | | | | | |
| 858 | | Text messages between J.Y. and M.T. on 09.18.2019 | | | | | |
| 859 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 860 | | Text messages between M.T. and K.T. on 09.22.2019 | | | | | |
| 861 | | Text messages between M.T. and K.T. on 09.23.2019 | | | | | |
| 862 | | Text messages between J.Y. and M.T. on 09.25.2019 | | | | | |
| 863 | | Text messages between J.Y. and M.T. on 09.26.2019 | | | | | |
| 864 | | Text messages between M.T. and K.T. on 09.26.2019 | | | | | |
| 865 | | Text messages between J.Y. and M.T. on 09.27.2019 | | | | | |
| 866 | | Text messages between M.T. and K.T. on 09.28.2019 | | | | | |
| 867 | | Text messages between M.T. and K.T. on 09.30.2019 | | | | | |
| 868 | | INTENTIONALLY LEFT BLANK | | | | | |
| 869 | | Text messages between M.T. and K.T. on 10.02.2019 | | | | | |
| 870 | | INTENTIONALLY LEFT BLANK | | | | | |
| 871 | | Text messages between M.T. and K.T. on 10.05.2019 | | | | | |

44

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 872 | | Text messages between M.T. and K.T. on 10.07.2019 | | | | | |
| 873 | | Text messages between M.T. and K.T. on 10.08.2019 | | | | | |
| 874 | | Text messages between M.T. and K.T. on 10.09.2019 | | | | | |
| 875 | | Email re "Invoices from Aero Maintenance Resources" on 10.11.2019 (Aero Maintenance Resources Invoice #697 for $112,750; Invoice #634 for $75,000; & Invoice #627 for $141,450) | | | | | |
| 876 | | Text messages between M.T. and K.T. on 10.11.2019 | | | | | |
| 877 | | Text messages between M.T. and K.T. on 10.15.2019 | | | | | |
| 878 | | INTENTIONALLY LEFT BLANK | | | | | |
| 879 | | Text messages between M.T. and K.T. on 10.19.2019 | | | | | |
| 880 | | Text messages between M.T. and K.T. on 10.20.2019 | | | | | |
| 881 | | Text messages between M.T. and K.T. on 10.21.2019 | | | | | |
| 882 | | Text messages between M.T. and K.T. on 10.22.2019 | | | | | |
| 883 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 884 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 885 | | Text messages between M.T. and K.T. on 10.31.2019 | | | | | |
| 886 | | Text messages between M.T. and K.T. on 11.01.2019 | | | | | |

45

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 887 | | Email re "Invoices from Aero Maintenance Resources" on 11.11.2019 (Aero Maintenance Resources Invoice #1017 for $110,000; Invoice #1021 for $100,000; & Invoice #1103 for $66,750) | | | | | |
| 888 | | Text messages between M.T. and K.T. on 11.13.2019 | | | | | |
| 889 | | Text messages between M.T. and K.T. on 11.14.2019 | | | | | |
| 890 | | Text messages between M.T. and K.T. on 11.19.2019 | | | | | |
| 891 | | Text messages between M.T. and K.T. on 11.20.2019 | | | | | |
| 892 | | Text messages between M.T. and K.T. on 11.21.2019 | | | | | |
| 893 | | Text messages between M.T. and K.T. on 11.22.2019 | | | | | |
| 894 | | Text messages between M.T. and K.T. on 11.25.2019 | | | | | |
| 895 | | Text messages between M.T. and K.T. on 12.01.2019 | | | | | |
| 896 | | Text messages between M.T. and K.T. on 12.02.2019 | | | | | |
| 897 | | Text messages between M.T. and K.T. on 12.03.2019 | | | | | |
| 898 | | Text messages between M.T. and K.T. on 12.04.2019 | | | | | |
| 899 | | Text messages between M.T. and K.T. on 12.06.2019 | | | | | |
| 900 | | INTENTIONALLY LEFT BLANK | | | | | |
| 901 | | Text messages between M.T. and K.T. on 12.11.2019 | | | | | |

46

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 902 | | Text messages between M.T. and K.T. on 12.13.2019 | | | | | |
| 903 | | Email re "Invoices from Aero Maintenance Resources" on 12.17.2019 (Aero Maintenance Resources Invoice #2110 for $49,750; Invoice #2325 for $83,400; & Invoice #2392 for $85,250) | | | | | |
| 904 | | Text messages between M.T. and K.T. on 12.20.2019 | | | | | |
| 905 | | Text messages between M.T. and K.T. on 12.21.2019 | | | | | |
| 906 | | Text messages between M.T. and K.T. on 12.30.2019 | | | | | |
| 907 | | Text messages between M.T. and K.T. on 12.31.2019 | | | | | |
| 908 | | Text messages between M.T. and K.T. on 01.03.2020 | | | | | |
| 909 | | Text messages between M.T. and K.T. on 01.07.2020 | | | | | |
| 910 | | Text messages between M.T. and K.T. on 01.08.2020 | | | | | |
| 911 | | Text messages between M.T. and K.T. on 01.09.2020 | | | | | |
| 912 | | Email re "Invoices from Aero Maintenance Resources" on 01.09.2020 (Aero Maintenance Resources Invoice #2515 for $79,950; Invoice #2479 for $87,200; & Invoice #2601 for $148,200) | | | | | |
| 913 | | Text messages between M.T. and K.T. on 01.10.2020 | | | | | |
| 914 | | Text messages between M.T. and K.T. on 01.11.2020 | | | | | |
| 915 | | Text messages between M.T. and K.T. on 01.13.2020 | | | | | |
| 916 | | Text messages between M.T. and K.T. on 01.16.2020 | | | | | |

47

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 917 | | Text messages between M.T. and K.T. on 01.17.2020 | | | | | |
| 918 | | Text messages between M.T. and K.T. on 01.22.2020 | | | | | |
| 919 | | Text messages between M.T. and K.T. on 01.26.2020 | | | | | |
| 920 | | Text messages between M.T. and K.T. on 01.28.2020 | | | | | |
| 921 | | Text messages between M.T. and K.T. on 01.29.2020 | | | | | |
| 922 | | Text messages between M.T. and K.T. on 01.31.2020 | | | | | |
| 923 | | Text messages between M.T. and K.T. on 02.01.2020 | | | | | |
| 924 | | Text messages between M.T. and K.T. on 02.05.2020 | | | | | |
| 925 | | Text messages between M.T. and K.T. on 02.12.2020 | | | | | |
| 926 | | Text messages between M.T. and K.T. on 02.13.2020 | | | | | |
| 927 | | Text messages between M.T. and K.T. on 02.15.2020 | | | | | |
| 928 | | Email re "Invoices from Aero Maintenance Resources" on 02.18.2020 (Aero Maintenance Resources Invoice #2807 for $15,689; & Invoice #2753 for $99,211) | | | | | |
| 929 | | Text messages between M.T. and K.T. on 02.25.2020 | | | | | |
| 930 | | Text messages between M.T. and K.T. on 02.26.2020 | | | | | |
| 931 | | Text messages between M.T. and K.T. on 03.03.2020 | | | | | |

48

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 932 | | Text messages between M.T. and K.T. on 03.06.2020 | | | | | |
| 933 | | Email re "Invoices from Aero Maintenance Resources" on 03.09.2020 (Aero Maintenance Resources Invoice #3004 for $95,000; Invoice #2987 for $33,520; & Invoice #2901 for $90,180) | | | | | |
| 934 | | Text messages between M.T. and K.T. on 03.10.2020 | | | | | |
| 935 | | Email re "Aero Maintenance Invoices for February 2020" on 03.11.2020 (Aero Maintenance Resources Invoice #2990 for $73,000) | | | | | |
| 936 | | Text messages between M.T. and K.T. on 03.11.2020 | | | | | |
| 937 | | Text messages between M.T. and K.T. on 03.17.2020 | | | | | |
| 938 | | Text messages between M.T. and K.T. on 03.18.2020 | | | | | |
| 939 | | Email re NO SUBJECT on 03.19.2020 | | | | | |
| 940 | | Text messages between M.T. and K.T. on 03.20.2020 | | | | | |
| 941 | | Text messages between M.T. and K.T. on 03.22.2020 | | | | | |
| 942 | | Text messages between M.T. and K.T. on 03.23.2020 | | | | | |
| 943 | | Text messages between M.T. and K.T. on 03.28.2020 | | | | | |
| 944 | | Text messages between M.T. and K.T. on 03.30.2020 | | | | | |
| 945 | | Text messages between M.T. and K.T. on 04.01.2020 | | | | | |
| 946 | | Text messages between M.T. and K.T. on 04.02.2020 | | | | | |

49

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 947 | | Text messages between M.T. and K.T. on 04.05.2020 | | | | | |
| 948 | | Text messages between M.T. and K.T. on 04.06.2020 | | | | | |
| 949 | | Text messages between M.T. and K.T. on 04.08.2020 | | | | | |
| 950 | | Email re "Invoices for Aero Maintenance Resources" on 04.14.2020 (Aero Maintenance Resources Invoice #4001 for $87,045; & Invoice #3176 for $127,155) | | | | | |
| 951 | | Text messages between M.T. and K.T. on 04.14.2020 | | | | | |
| 952 | | Email re "Aero Maintenance Invoices for April 2020" on 04.16.2020 (Aero Maintenance Resources Invoice #5120 for $105,603; & Invoice #4784 for $114,685) | | | | | |
| 953 | | Email re "Invoice for Global Fuel Logistics, Inc." on 04.27.2020 (Global Fuel Logistics Invoice #7988 for $124,785) | | | | | |
| 954 | | Email re "Invoice for Aero Maintenance Resources 2 March 2020" on 05.04.2020 (Aero Maintenance Resources Invoice #3101 for $61,255) | | | | | |
| 955 | | Email re "Invoice for Global Fuel Logistics, Inc." on 05.11.2020 (Global Fuel Logistics Invoice #8011 for $83,090) | | | | | |
| 956 | | Text messages between M.T. and K.T. on 05.12.2020 | | | | | |
| 957 | | Text messages between M.T. and K.T. on 05.23.2020 | | | | | |
| 958 | | Text messages between M.T. and K.T. on 05.28.2020 | | | | | |
| 959 | | Email re "Invoices for May 2020" on 06.03.2020 (Aero Maintenance Resources Invoice #8888 for $153,725; Global Fuel Logistics Invoice #9014 for $159,882; & Global Fuel Logistics Invoice #9071 for $164,065) | | | | | |
| 960 | | Text messages between M.T. and K.T. on 06.07.2020 | | | | | |
| 961 | | Text messages between M.T. and K.T. on 06.09.2020 | | | | | |

50

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 962 | | Text messages between M.T. and K.T. on 06.10.2020 | | | | | |
| 963 | | Text messages between M.T. and K.T. on 06.11.2020 | | | | | |
| 964 | | Text messages between M.T. and K.T. on 06.16.2020 | | | | | |
| 965 | | Text messages between M.T. and K.T. on 06.17.2020 | | | | | |
| 966 | | Text messages between M.T. and K.T. on 06.24.2020 | | | | | |
| 967 | | Text messages between M.T. and K.T. on 06.25.2020 | | | | | |
| 968 | | Text messages between M.T. and K.T. on 06.26.2020 | | | | | |
| 969 | | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10101 for $170,274.50; Aero Maintenance Resources Invoice #9302 for $194,803; & Global Fuel Logistics Invoice #11812 for $127,264) | | | | | |
| 970 | | Text messages between M.T. and K.T. on 06.29.2020 | | | | | |
| 971 | | Text messages between M.T. and K.T. on 07.01.2020 | | | | | |
| 972 | | Text messages between J.Y. and K.T. on 07.01.2020 | | | | | |
| 973 | | Email re "Invoice for July 1 2020" on 07.02.2020 (Global Fuel Logistics Invoice #10226 for $95,000) | | | | | |
| 974 | | Audio recording of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 975 | | Audio recording of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 976 | | Text messages between J.Y. and M.T. on 07.08.2020 | | | | | |

51

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 977 | | INTENTIONALLY LEFT BLANK | | | | | |
| 978 | | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | | | | | |
| 979 | | Email re ACH Payment Questions, dated 04.17.2019 | | | | | |
| 980 | | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | | | | | |
| 981 | | Email re Lilly Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | | | | | |
| 982 | | Email re Lilly Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | | | | | |
| 983 | | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | | | | | |
| 984 | | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | | | | | |
| 985 | | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | | | | | |
| 986 | | Invoice #001 re Kimberley Tew for $10,000.00, dated 02.08.2018 | | | | | |
| 987 | | Transcript of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 988 | | Transcript of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 989 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |
| 990 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 991 - 999 | | INTENTIONALLY LEFT BLANK | | | | | |

52

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1000 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1001 | | Account Owners and Signors for Relevant Bank Accounts | | | | | |
| 1002 | | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | |
| 1003 | | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | |
| 1004 | | Summary of Hanna Scaife CPA, Meyers Consulting Group, and 5530 Jessamine Development Invoices and Payments | | | | | |
| 1005 | | Summary of Political Media Invoices and Payments | | | | | |
| 1006 | | Summary of Global Fuel Logistics Invoices and Payments | | | | | |
| 1007 | | Summary of Aero Maintenance Resources Invoices and Payments | | | | | |
| 1008 | | Summary - Calendar of Events | | | | | |
| 1009 | | Summary - Count 42 | | | | | |
| 1010 | | Summary - Count 43 | | | | | |
| 1011 | | Summary - Count 44 | | | | | |
| 1012 | | Summary - Count 45 | | | | | |
| 1013 | | Summary - Count 46 | | | | | |
| 1014 | | Summary - Count 47 | | | | | |

53

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1015 | | Summary - Count 48 | | | | | |
| 1016 | | Summary - Count 49 | | | | | |
| 1017 | | Summary - Count 50 | | | | | |
| 1018 | | Summary - Count 51 | | | | | |
| 1019 | | Summary - Count 52 | | | | | |
| 1020 | | Summary - Count 53 | | | | | |
| 1021 | | Summary - Count 54 | | | | | |
| 1022 | | Summary - Count 55 | | | | | |
| 1023 | | Summary - Count 56 | | | | | |
| 1024 | | Summary - M. Tew Transactions and Photographs | | | | | |
| 1025 | | Summary - K. Tew Transactions and Photographs | | | | | |
| 1026 | | Summary - M. and K. Tew Transactions and Photographs | | | | | |
| 1027 - 1099 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1100 | | Certificate of Authenticity for Atlantic Union Bank | | | | | |
| 1101 | | Certificate of Authenticity for ANB Bank | | | | | |

54

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1102 | | Certificate of Authenticity for ANB Bank | | | | | |
| 1103 | | Certificate of Authenticity for BBVA | | | | | |
| 1104 | | Certificate of Authenticity for BBVA | | | | | |
| 1105 | | Certificate of Authenticity for Guaranty Bank and Trust Company | | | | | |
| 1106 | | Certificate of Authenticity for Kraken | | | | | |
| 1107 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1108 | | Certificate of Authenticity for GoDaddy | | | | | |
| 1109 | | Certificate of Authenticity for Google | | | | | |
| 1110 | | Certificate of Authenticity for Verizon | | | | | |
| 1111 | | Certificate of Authenticity for Regions Bank | | | | | |
| 1112 | | Certificate of Authenticity for Simple Finance Technology Corp | | | | | |
| 1113 | | Certificate of Authenticity for Signature Bank | | | | | |
| 1114 | | Certificate of Authenticity for Google | | | | | |
| 1115 | | Certificate of Authenticity for Apple | | | | | |
| 1116 | | Certificate of Authenticity for Google | | | | | |

55

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1117 | | Certificate of Authenticity for Google | | | | | |
| 1118 | | Certificate of Authenticity for Vcorp | | | | | |
| 1119 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1120 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1121 | | Certificate of Authenticity for Wynn Las Vegas | | | | | |
| 1122 | | Certificate of Authenticity for Google | | | | | |
| 1123 | | Certificate of Authenticity for Google | | | | | |
| 1124 | | Certificate of Authenticity for Google | | | | | |
| 1125 | | Certificate of Authenticity for Google | | | | | |
| 1126 | | Certificate of Authenticity for Google | | | | | |
| 1127 | | Certificate of Authenticity for AT&T | | | | | |
| 1128 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1129 | | Certificate of Authenticity for American Express | | | | | |
| 1130 | | Certificate of Authenticity for National Air Cargo | | | | | |
| 1131 | | Certificate of Authenticity for McDonald Automotive (Audi) | | | | | |

56

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1132 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1133 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1134 | | Certification of Authenticity for National Air Cargo | | | | | |
| 1135 | | Certification of Authenticity for Access National Bank | | | | | |
| 1136 | | Certification of Authenticity for Coinbase | | | | | |
| 1137 | | Certification of Authenticity for Coinbase | | | | | |
| 1138 | | Certification of Authenticity for Coinbase | | | | | |
| 1139 | | Certification of Authenticity for Navy FCU | | | | | |
| 1140 | | Certification of Authenticity for Apple | | | | | |
| 1141 | | Certification for Google | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.    20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW** and
2. **KIMBERLEY ANN TEW**,
a/ka Kimberley Vertanen,

Defendants.

---

## GOVERNMENT'S LIST OF PROPOSED WITNESSES

---

The government hereby submits its preliminary list of proposed witnesses, along with estimates of the length of their testimony on direct examination.   The government reserves the right, with reasonable notice depending on the circumstances, to call additional witnesses should a need arise during trial or based on rulings made at the pretrial conference. The government also reserves the right

1

to submit a revised witness list as it continues to prepare testimony and develops

better estimates of the time needed for direct examinations.

      Respectfully submitted this 25th day of January, 2024.

             COLE FINEGAN
             United States Attorney

| | |
|---|---|
| By:   */s/ Bryan Fields* | By:   */s/ Sarah H. Weiss* |
| Bryan Fields | Sarah H. Weiss |
| Assistant United States Attorney | Assistant United States Attorney |
| U.S. Attorney's Office | U.S. Attorney's Office |
| 1801 California St. Suite 1600 | 1801 California St. Suite 1600 |
| Denver, CO 80202 | Denver, CO 80202 |
| (303) 454-0100 | (303) 454-0100 |
| Bryan.Fields3@usdoj.gov | Sarah.Weiss@usdoj.gov |
| Attorney for the Government | Attorney for the Government |

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record

By:     /s Bryan Fields
        Bryan Fields
        Assistant United States
        Attorney
        U.S. Attorney's Office
        1801 California St. Suite 1600
        Denver, CO 80202
        (303) 454-0100
        Bryan.Fields3@usdoj.gov
        Attorney for the Government

3

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## Judge Daniel D. Domenico

Case No.      20-cr-305-DDD            Date:    February 5, 2024

Case Title:   _United States v. Michael Tew et al._

GOVERNMENT'S                          WITNESS LIST
(**Plaintiff**/Defendant)

| WITNESS | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|
| Ronald Brodfuehrer | Feb. 5 - 15 minutes |
| Jonathan Yioulos | Feb. 5-6 - 300 minutes |
| Hannah Scaife | Feb. 7 - 45 minutes |
| Raeesa Telly (nee Ibrahim) | Feb. 7 - 45 minutes |
| Abby Schwartz | Feb 7 - 120 minutes |
| Regions Bank Representative | Feb. 7 - 15 minutes |
| Navy Federal Credit Union Representative | Feb. 7 - 15 minutes |
| Flagstar Bank / FIS Global Representative | Feb. 7 - 15 minutes |
| Sarah Anderson | Feb. 7 - 30 minutes |
| PNC Bank Representative | Feb. 8 - 15 minutes |
| Michael Meyers | Feb. 8 - 30 minutes |
| Roman Hernandez | Feb. 8 - 30 minutes |
| Wells Fargo Representative | Feb. 8 - 15 minutes |
| ANB Bank Representative | Feb. 8 - 15 minutes |
| Lori Alf | Feb. 8 - 30 minutes |

| | |
|---|---|
| Chris Alf | Feb. 8 - 30 minutes |
| Matthew Morgan | Feb. 8 - 60 minutes |
| Nicholas Hanggi | Feb. 9 - 30 minutes |
| Matthew Vanderveer | Feb. 9 - 30 minutes |
| Lisa Palmer | Feb. 9 & 12 - 180 minutes |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. **MICHAEL AARON TEW** and
2. **KIMBERLEY ANN TEW**,
   a/ka Kimberley Vertanen,

     Defendants.

---

## GOVERNMENT'S (AMENDED) LIST OF PROPOSED EXHIBITS

---

     The government hereby submits an amended version of its preliminary list of proposed exhibits.   The government respectfully reserves its right, within reasonable notice depending on the circumstances, to add additional exhibits as it continues preparing for trial.

     Respectfully submitted this 25th day of January, 2024.

                COLE FINEGAN
                United States Attorney

By:   */s/ Bryan Fields*          By:   */s/ Sarah H. Weiss*
Bryan Fields                     Sarah H. Weiss
Assistant United States Attorney     Assistant United States Attorney
U.S. Attorney's Office            U.S. Attorney's Office
1801 California St. Suite 1600      1801 California St. Suite 1600
Denver, CO 80202              Denver, CO 80202
(303) 454-0100                (303) 454-0100
Bryan.Fields3@usdoj.gov        Sarah.Weiss@usdoj.gov
Attorney for the Government       Attorney for the Government

1

2

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

By:    */s Bryan Fields*
Bryan Fields
Assistant United States
Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

3

1

CASE CAPTION: <u>United States v. Tew, et al.</u>

CASE NO.: <u>20-cr-305-DDD</u>

EXHIBIT LIST OF: <u>United States of America, Plaintiff</u>
          (Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1 | | INTENTIONALLY LEFT BLANK | | | | | |
| 2 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 08.01.2018-08.31.2018 | | | | | |
| 3 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 10.01.2018-10.31.2018 | | | | | |
| 4 | | INTENTIONALLY LEFT BLANK | | | | | |
| 5 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 11.01.2018-11.30.2018 | | | | | |
| 6 | | INTENTIONALLY LEFT BLANK | | | | | |
| 7 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 12.01.2018-12.31.2018 | | | | | |
| 8 | | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.07.2019 | | | | | |
| 9 | | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.19.2019 | | | | | |
| 10 | | Signature Bank ACH Transaction re $38,000 to [PM], dated 03.28.2019 | | | | | |

1

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 11 | | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | | | | | |
| 12 | | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 07.23.2019 | | | | | |
| 13 | | Signature Bank ACH Transaction re $31,500 to SHI LLC, dated 08.06.2019 | | | | | |
| 14 | | Signature Bank ACH Transaction re $9,500 to Global Fuel Logistics, dated 08.19.2019 | | | | | |
| 15 | | Signature Bank ACH Transaction re $28,000 to SHI LLC, dated 08.21.2019 | | | | | |
| 16 | | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 09.03.2019 | | | | | |
| 17 | | Signature Bank ACH Transaction re $18,000 to SHI LLC, dated 09.09.2019 | | | | | |
| 18 | | Signature Bank ACH Transaction re $33,500 to SHI LLC, dated 09.17.2019 | | | | | |
| 19 | | Signature Bank ACH Transaction re $52,750 to SHI LLC, dated 09.25.2019 | | | | | |
| 20 | | Signature Bank ACH Transaction re $75,000 to Global Fuel Logistics, dated 10.16.2019 | | | | | |
| 21 | | Signature Bank ACH Transaction re $43,000 to Global Fuel Logistics, dated 10.24.2019 | | | | | |
| 22 | | Signature Bank ACH Transaction re $49,750 to SHI LLC, dated 10.31.2019 | | | | | |
| 23 | | Signature Bank ACH Transaction re $40,500 to SHI LLC, dated 11.07.2019 | | | | | |
| 24 | | Signature Bank ACH Transaction re $43,250 to Global Fuel Logistics, dated 11.25.2019 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 25 | | Signature Bank ACH Transaction re $9,550 to Global Fuel Logistics, dated 12.02.2019 | | | | | |
| 26 | | Signature Bank ACH Transaction re $24,500 to Global Fuel Logistics, dated 12.11.2019 | | | | | |
| 27 | | Signature Bank ACH Transaction re $15,200 to Global Fuel Logistics, dated 12.23.2019 | | | | | |
| 28 | | Signature Bank ACH Transaction re $33,000 to Global Fuel Logistics, dated 02.11.2020 | | | | | |
| 29 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 02.19.2020 | | | | | |
| 30 | | Signature Bank ACH Transaction re $36,555 to Global Fuel Logistics, dated 03.02.2020 | | | | | |
| 31 | | Signature Bank ACH Transaction re $35,000 to Global Fuel Logistics, dated 03.09.2020 | | | | | |
| 32 | | Signature Bank ACH Transaction re $22,5000 to Global Fuel Logistics, dated 03.19.2020 | | | | | |
| 33 | | Signature Bank ACH Transaction re $73,460 to Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 34 | | Signature Bank ACH Transaction re $36,925 to Global Fuel Logistics, dated 04.06.2020 | | | | | |
| 35 | | Signature Bank ACH Transaction re $68,255 to Global Fuel Logistics, dated 04.15.2020 | | | | | |
| 36 | | Signature Bank ACH Transaction re $46,850 to Global Fuel Logistics, dated 04.27.2020 | | | | | |
| 37 | | Signature Bank ACH Transaction re $85,325 to Global Fuel Logistics, dated 05.05.2020 | | | | | |
| 38 | | Signature Bank ACH Transaction re $82,422 to Global Fuel Logistics, dated 05.12.2020 | | | | | |

3

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 39 | | Signature Bank ACH Transaction re $78,565 to Global Fuel Logistics, dated 05.20.2020 | | | | | |
| 40 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 07.02.2020 | | | | | |
| 41 | | INTENTIONALLY LEFT BLANK | | | | | |
| 42 | | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawal, dated 06.04.2019 | | | | | |
| 43 | | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawal, dated 06.11.2019 | | | | | |
| 44 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $22,000 Withdrawal, dated 08.28.2019 | | | | | |
| 45 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $25,000 Withdrawal, dated 08.29.2019 | | | | | |
| 46 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | | | | | |
| 47 | | Wells Fargo Bank Wire Transaction Report re Acct x6934 $15,000, dated 09.18.2019 | | | | | |
| 48 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 089.26.2019 | | | | | |
| 49 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 09.27.2019 | | | | | |
| 50 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 10.01.2019 | | | | | |
| 51 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $12,000 Withdrawal, dated 10.02.2019 | | | | | |
| 52 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 11.30.2019 | | | | | |

4

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 53 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 02.20.2020 | | | | | |
| 54 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $15,000 Withdrawal, dated 02.21.2020 | | | | | |
| 55 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 02.27.2020 | | | | | |
| 56 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 03.03.2020 | | | | | |
| 57-100 | | INTENTIONALLY LEFT BLANK | | | | | |
| 101 | | 2016 Gross Income Summary for Michael Tew | | | | | |
| 102 | | 2017 Gross Income Summary for Michael Tew | | | | | |
| 103 | | 2018 Gross Income Summary for Michael Tew | | | | | |
| 104 | | 2019 Gross Income Summary for Michael Tew | | | | | |
| 105 | | Internal Revenue Service 2019 Account Transcript | | | | | |
| 106 | | INTENTIONALLY LEFT BLANK | | | | | |
| 107 | | 2016 Gross Income Summary for Michael Tew | | | | | |
| 108 | | 2017 Gross Income Summary for Michael Tew | | | | | |
| 109 | | 2018 Gross Income Summary for Michael Tew | | | | | |
| 110 - 200 | | 2019 Gross Income Summary for Michael Tew | | | | | |

5

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 201 | | INTENTIONALLY LEFT BLANK | | | | | |
| 202 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, statement 08.31.2018 | | | | | |
| 203 | | Regions Bank Statement re Account x4514 [MM], statement period 10.12.2018-11.08.2018 | | | | | |
| 204 | | INTENTIONALLY LEFT BLANK | | | | | |
| 205 | | Regions Bank Statement re Account x4514 [MM], statement period 11.09.2018-12.10.2018 | | | | | |
| 206 | | INTENTIONALLY LEFT BLANK | | | | | |
| 207 | | ANB Bank Statement re Account x3099 [MM], dated 12.18.2018 | | | | | |
| 208 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2019-02.16.2019 | | | | | |
| 209 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 210 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | | | | | |
| 211 | | INTENTIONALLY LEFT BLANK | | | | | |
| 212 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 213 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 08.31.2019 | | | | | |
| 214 | | INTENTIONALLY LEFT BLANK | | | | | |

6

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 215 | | INTENTIONALLY LEFT BLANK | | | | | |
| 216 | | INTENTIONALLY LEFT BLANK | | | | | |
| 217 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 09.30.2019 | | | | | |
| 218 | | INTENTIONALLY LEFT BLANK | | | | | |
| 219 | | INTENTIONALLY LEFT BLANK | | | | | |
| 220 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 10.31.2019 | | | | | |
| 221 | | INTENTIONALLY LEFT BLANK | | | | | |
| 222 | | INTENTIONALLY LEFT BLANK | | | | | |
| 223 | | INTENTIONALLY LEFT BLANK | | | | | |
| 224 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | | | | | |
| 225 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 226 | | INTENTIONALLY LEFT BLANK | | | | | |
| 227 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | | | | | |
| 228 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 229 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 02.29.2020 | | | | | |

7

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 230 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 231 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2020-03.16.2020 | | | | | |
| 232 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 233 | | INTENTIONALLY LEFT BLANK | | | | | |
| 234 | | INTENTIONALLY LEFT BLANK | | | | | |
| 235 | | INTENTIONALLY LEFT BLANK | | | | | |
| 236 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2020-05.16.2020 | | | | | |
| 237 | | INTENTIONALLY LEFT BLANK | | | | | |
| 238 | | INTENTIONALLY LEFT BLANK | | | | | |
| 239 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 240 | | Navy Federal Credit Union Transaction Details re Access x1390, Account x3094 Global Fuel Logistics, transaction period 07.20.2020-07.08.2020 | | | | | |
| 241 | | INTENTIONALLY LEFT BLANK | | | | | |
| 242 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | | | | | |
| 243 | | INTENTIONALLY LEFT BLANK | | | | | |

8

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 244 | | INTENTIONALLY LEFT BLANK | | | | | |
| 245 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 08.31.2019 | | | | | |
| 246 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | | | | | |
| 247 | | INTENTIONALLY LEFT BLANK | | | | | |
| 248 | | INTENTIONALLY LEFT BLANK | | | | | |
| 249 | | INTENTIONALLY LEFT BLANK | | | | | |
| 250 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 10.31.2019 | | | | | |
| 251 - 300 | | INTENTIONALLY LEFT BLANK | | | | | |
| 301 | | ANB Bank Signature Card re Account x3099 [MM] | | | | | |
| 302 | | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | | | | | |
| 303 | | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | | | | | |
| 304 | | Navy Federal Credit Union Application re Global Fuel Logistics, dated 06.08.2020 | | | | | |
| 305 | | Regions Bank Signature Cards re Account x0514 [MM] | | | | | |
| 306 | | Wells Fargo Bank Signature Card re Account x6934 Sand Hill LLC, LLC | | | | | |

9

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 307 | | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | | | | | |
| 308 | | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | | | | | |
| 309 | | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | | | | | |
| 310 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, dated 08.31.2018 | | | | | |
| 311 | | BBVA Compass Signature Card re Account x0987 [5530 JD] LLC | | | | | |
| 312 | | Access National Bank Statement re Account x5965 [PM] Inc., statement period 12.01.2018-12.31.2018 | | | | | |
| 313 | | Simple Signature Card for Kimberley Tew | | | | | |
| 314 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 315 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 316 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | | | | | |
| 317 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 318 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | | | | | |
| 319 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 320 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | | | | | |

10

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 321 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 322 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | | | | | |
| 323 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 324 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.08.2019-01.16.2019 | | | | | |
| 325 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2019-02.16.2019 | | | | | |
| 326 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 327 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2019-04.16.2019 | | | | | |
| 328 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | | | | | |
| 329 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | | | | | |
| 330 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | | | | | |
| 331 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 332 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | | | | | |
| 333 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 334 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | | | | | |

11

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 335 | | American Express Corporate Card Authorization re Account x91009 National Air Cargo, Cardmember Michael Tew | | | | | |
| 336 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | | | | | |
| 337 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | | | | | |
| 338 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 06.16.2018 | | | | | |
| 339 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 07.16.2018 | | | | | |
| 340 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 12.31.2019 | | | | | |
| 341 | | BBVA Compass Statement re Account x0987 5530 Jassamine Development LLC, statement period 11.01.2018-11.30.2018 | | | | | |
| 342 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 05.31.2019 | | | | | |
| 343 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 01.31.2020 | | | | | |
| 344 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 02.29.2020 | | | | | |
| 345 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 03.31.2020 | | | | | |
| 346 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2020-06.30.2020 | | | | | |

12

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 347 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 08.16.2018 | | | | | |
| 348 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 09.16.2018 | | | | | |
| 349 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 10.16.2018 | | | | | |
| 350 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 11.16.2018 | | | | | |
| 351 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 12.16.2018 | | | | | |
| 352 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 01.16.2019 | | | | | |
| 353 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 02.16.2019 | | | | | |
| 354 | | Access National Bank Signature Card re Account x5965 [PM] | | | | | |
| 355 | | Signature Bank ACH Transaction re $25,000 to Global Fuel Logistics, dated 10.23.2019 | | | | | |
| 356 | | Signature Bank ACH Transaction re $21,250 to [PM] Inc., dated 12.10.2018 | | | | | |
| 357 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.22.2018 | | | | | |

13

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 358 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.23.2018 | | | | | |
| 359 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.10.2018 | | | | | |
| 360 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.18.2018 | | | | | |
| 361 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.28.2018 | | | | | |
| 362 | | Signature Bank ACH Transaction re $30,000 to [MM], dated 12.03.2018 | | | | | |
| 363 | | Access National Bank Statement re Account x5965 [PM] Inc., statement period 03.01.2019-03.31.2019 | | | | | |
| 364 | | ANB Bank Statement re Account x3099 [MM], dated 01.04.2019 | | | | | |
| 365 | | Signature Bank ACH Transaction re $21,000 to [PM] Inc., dated 01.23.2019 | | | | | |
| 366 | | Signature Bank ACH Transaction re $15,312.50 to [PM] Inc., dated 01.07.2019 | | | | | |
| 367 | | Signature Bank ACH Transaction re $23,350 to [PM] Inc., dated 01.10.2019 | | | | | |
| 368 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.07.2019-01.16.2019 | | | | | |
| 369 | | Signature Bank ACH Transaction re $28,000 to [PM] Inc., dated 01.18.2019 | | | | | |
| 370 | | Signature Bank ACH Transaction re $31,500 to [PM] Inc., dated 03.14.2019 | | | | | |
| 371 | | Signature Bank ACH Transaction re $37,800 to [PM] Inc., dated 03.04.2019 | | | | | |

14

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 372 | | Signature Bank ACH Transaction re $20,250 to [PM] Inc., dated 03.19.2019 | | | | | |
| 373 | | Signature Bank ACH Transactions re: $37,500 to [PM] Inc., dated 04.08.2019; $18,750 to [PM] Inc., dated 04.11.2019; and $18,750 to [PM] Inc., dated 04.15.2019 | | | | | |
| 374 | | Signature Bank ACH Transaction re $18,750 to [PM] Inc., dated 04.17.2019 | | | | | |
| 375 | | Signature Bank ACH Transactions re: $18,750 to [PM] Inc., dated 04.22.2019; $18,750 to [PM] Inc., dated 04.24.2019; $38,640 to [PM], dated 04.29.2019; and $19,890 to [PM], dated 05.07.2019 | | | | | |
| 376 | | Signature Bank ACH Transactions re: $49,750 to [PM], dated 05.07.2019; and $40,000 to [PM] Inc., dated 05.10.2019 | | | | | |
| 377 | | Signature Bank ACH Transactions re: $19,900 to [PM], dated 05.15.2019; $23,785 to [PM], dated 05.21.2019; $9,950 to [PM], dated 05.23.2019; $11,150 to [PM], dated 05.28.2019; and $10,100 to [PM] Inc., dated 05.29.2019 | | | | | |
| 378 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | | | | | |
| 379 | | Signature Bank ACH Transactions re: $53,500 to [PM], dated 06.03.2019; $28,000 to [PM], dated 06.10.2019; and $9,500 to [PM], dated 06.13.2019 | | | | | |
| 380 | | Signature Bank ACH Transactions re: $50,000 to [PM] Inc., dated 06.20.2019; $15,000 to [PM], dated 06.25.2019; and $30,000 to Sand Hill LLC, dated 06.26.2019 | | | | | |
| 381 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | | | | | |

15

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 382 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 06.30.2019 | | | | | |
| 383 | | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | | | | | |
| 384 | | Signature Bank ACH Transactions re: $9,200 to Sand Hill LLC, dated 06.28.2019; $13,000 to SHI LLC, dated 07.09.2019; $27,475 to SHI LLC, dated 07.11.2019; and $10,000 to SHI LLC, dated 07.19.2019 | | | | | |
| 385 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 07.31.2019 | | | | | |
| 386 | | Signature Bank ACH Transaction re $12,900 to Global Fuel Logistics, dated 01.07.2020 | | | | | |
| 387 | | Signature Bank ACH Transactions re: $15,500 to Global Fuel Logistics, dated 01.10.2020; $19,500 to Global Fuel Logistics, dated 01.17.2020; $9,800 to Global Fuel Logistics, dated 01.22.2020; $13,500 to Global Fuel Logistics, dated 01.23.2020; $36,500 to Global Fuel Logistics, dated 01.27.2020; and $7,200 to Global Fuel Logistics, dated 01.30.2020 | | | | | |
| 388 | | Signature Bank ACH Transaction re $13,000 to Global Fuel Logistics, dated 08.09.2019 | | | | | |
| 389 | | Signature Bank ACH Transaction re $24,700 to Global Fuel Logistics, dated 03.05.2020 | | | | | |
| 390 | | Signature Bank ACH Transactions re: $97,545 to Global Fuel Logistics, dated 06.22.2020; $71,550 to Global Fuel Logistics, dated 06.24.2020; and $105,000 to Global Fuel Logistics, dated 06.29.2020 | | | | | |
| 391 | | Signature Bank ACH Transaction re $83,526 to Global Fuel Logistics, dated 06.02.2020 | | | | | |

16

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 392 | | Signature Bank ACH Transactions re: $45,220 to Global Fuel Logistics, dated 06.04.2020; $93,135 to Global Fuel Logistics, dated 06.09.2020; and $93,635 to Global Fuel Logisitics, dated 06.17.2020 | | | | | |
| 393 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | | | | | |
| 394 | | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | | | | | |
| 395 | | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | | | | | |
| 396 | | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | | | | | |
| 397 | | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | | | | | |
| 398 | | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | | | | | |
| 399 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | | | | | |
| 400 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 401 | | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | | | | | |
| 402 | | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | | | | | |
| 403 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | | | | | |
| 404 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | | | | | |

17

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 405 | | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | | | | | |
| 406 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | | | | | |
| 407 | | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | | | | | |
| 408 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | | | | | |
| 409 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | | | | | |
| 410 | | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | | | | | |
| 411 | | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | | | | | |
| 412 | | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | | | | | |
| 413 | | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | | | | | |
| 414 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | | | | |
| 415 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | | | | | |
| 416 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 417 | | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | | | | | |
| 418 | | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | | | | | |

18

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 419 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | | | | | |
| 420 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | | | | | |
| 421 | | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | | | | | |
| 422 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | | | | | |
| 423 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | | | | | |
| 424 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | | | | | |
| 425 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | | | | | |
| 426 | | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | | | | | |
| 427 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | | | | |
| 428 | | Signature Bank ACH Transaction re: $13,000 to Sand Hill LLC, dated 08.09.2019 | | | | | |
| 429 | | Signature Bank ACH Transaction re: $35,000 to Sand Hill LLC, dated 08.14.2019 | | | | | |
| 430 | | Signature Bank ACH Transaction re: $15,000 to Global Fuel Logistics, dated 08.15.2019 | | | | | |
| 431 | | Signature Bank ACH Transaction re: $27,000 to Sand Hill LLC, dated 08.22.2019 | | | | | |
| 432 | | Signature Bank ACH Transaction re: $45,000 to Sand Hill LLC, dated 08.26.2019 | | | | | |

19

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 433 | | Signature Bank Wire Transaction re: $45,000 to Global Fuel Logistics, dated 08.29.2019 | | | | | |
| 434 | | Signature Bank ACH Transaction re: $13,000 to Global Fuel Logistics, dated 02.03.2020 | | | | | |
| 435 | | Signature Bank ACH Transaction re: $23,200 to Global Fuel Logistics, dated 02.06.2020 | | | | | |
| 436 | | Signature Bank ACH Transaction re: $32,500 to Global Fuel Logistics, dated 02.13.2020 | | | | | |
| 437 | | Signature Bank ACH Transaction re: $55,000 to Global Fuel Logistics, dated 02.18.2020 | | | | | |
| 438 | | Signature Bank ACH Transaction re: $40,000 to Global Fuel Logistics, dated 02.26.2020 | | | | | |
| 439 | | Signature Bank ACH Transaction re: $74,955 to Global Fuel Logistics, dated 03.11.2020 | | | | | |
| 440 | | Signature Bank ACH Transaction re: $17,200 to Global Fuel Logistics, dated 03.17.2020 | | | | | |
| 441 | | Signature Bank ACH Transaction re: $32,245 to Global Fuel Logistics, dated 03.24.2020 | | | | | |
| 442 | | Signature Bank ACH Transaction re: $32,300 to Global Fuel Logistics, dated 03.26.2020 | | | | | |
| 443 | | Signature Bank ACH Transaction re: $41,225 to Global Fuel Logistics, dated 04.02.2020 | | | | | |
| 444 | | Signature Bank ACH Transaction re: $37,353 to Global Fuel Logistics, dated 04.08.2020 | | | | | |
| 445 | | Signature Bank ACH Transaction re: $31,355 to Global Fuel Logistics, dated 04.13.2020 | | | | | |
| 446 | | Signature Bank ACH Transaction re: $56,530 to Global Fuel Logistics, dated 04.21.2020 | | | | | |

20

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 447 | | Signature Bank ACH Transaction re: $36,240 to Global Fuel Logistics, dated 04.29.2020 | | | | | |
| 448 | | Signature Bank ACH Transaction re: $77,460 to Global Fuel Logistics, dated 05.18.2020 | | | | | |
| 449 | | Signature Bank ACH Transaction re: $85,500 to Global Fuel Logistics, dated 05.27.2020 | | | | | |
| 450 | | Signature Bank ACH Transaction re $20,250.00 to [PM] Inc., dated 03.18.2019 | | | | | |
| 451 | | Signature Bank ACH Transaction re $60,000 to Global Fuel Logistics, dated 09.10.2019 | | | | | |
| 452 | | Signature Bank ACH Transaction re $51,500 to Sand Hill LLC, dated 09.12.2019 | | | | | |
| 453 | | Signature Bank ACH Transaction re $11,950 to Global Fuel Logistics, dated 09.16.2019 | | | | | |
| 454 | | Signature Bank ACH Transaction re $41,500 to Sand Hill LLC, dated 09.19.2019 | | | | | |
| 455 | | Signature Bank ACH Transaction re $60,000 to Sand Hill LLC, dated 09.26.2019 | | | | | |
| 456 | | Signature Bank ACH Transaction re $75,000 to Sand Hill LLC, dated 09.30.2019 | | | | | |
| 457 | | Signature Bank ACH Transaction re $35,000 to Sand Hill LLC, dated 10.10.2019 | | | | | |
| 458 | | Signature Bank ACH Transaction re $23,750 to Global Fuel Logistics, dated 10.30.2019 | | | | | |
| 459 | | Signature Bank ACH Transaction re $25,000 to Sand Hill LLC, dated 11.18.2019 | | | | | |
| 460 | | Signature Bank ACH Transaction re $17,900 to Global Fuel Logistics, dated 11.21.2019 | | | | | |

21

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 461 | | Signature Bank ACH Transaction re $42,000 to Global Fuel Logistics, dated 11.27.2019 | | | | | |
| 462 | | Signature Bank ACH Transaction re $26,500 to Global Fuel Logistics, dated 12.05.2019 | | | | | |
| 463 | | Signature Bank ACH Transaction re $51,150 to Global Fuel Logistics, dated 12.09.2019 | | | | | |
| 464 | | Signature Bank ACH Transaction re $7,800 to Global Fuel Logistics, dated 12.16.2019 | | | | | |
| 465 | | Signature Bank ACH Transaction re $33,300 to Global Fuel Logistics, dated 12.17.2019 | | | | | |
| 466 | | Signature Bank ACH Transaction re $14,350 to Global Fuel Logistics, dated 12.19.2019 | | | | | |
| 467 | | Signature Bank ACH Transaction re $55,500 to Global Fuel Logistics, dated 12.26.2019 | | | | | |
| 468 | | Signature Bank ACH Transaction re $77,500 to Global Fuel Logistics, dated 12.30.2019 | | | | | |
| 469 | | Wells Fargo Bank Wire Transaction Report re Acct x6934 $20,611.01, dated 11.01.2019 | | | | | |
| 470 | | Navy Federal Credit Union Surveillance Photo, dated 06.23.2020 | | | | | |
| 471 | | Spreadsheet of Digital Mint Transaction Details, Part One | | | | | |
| 472 | | Spreadsheet of Digital Mint Transaction Details, Part Two | | | | | |
| 473 | | American Express Application re Michael Tew | | | | | |
| 474 | | American Express Application re Kimberley Tew | | | | | |

22

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 475 | | Digital Mint Surveillance Photo 03.07.2020 00:33:01 UTC | | | | | |
| 476 | | Digital Mint Surveillance Photo 03.07.2020 00:29:36 UTC | | | | | |
| 477 | | Digital Mint Surveillance Photo 04.30.2020 21:51:39 UTC | | | | | |
| 478 | | Digital Mint Surveillance Photo 04.30.2020 21:53:34 UTC | | | | | |
| 479 | | Digital Mint Surveillance Photo 04.30.2020 21:55:38 UTC | | | | | |
| 480 | | Digital Mint Surveillance Photo 04.30.2020 21:58:08 UTC | | | | | |
| 481 | | Digital Mint Surveillance Photo 04.30.2020 21:59:40 UTC | | | | | |
| 482 | | Digital Mint Surveillance Photo 04.30.2020 23:43:54 UTC | | | | | |
| 483 | | Digital Mint Surveillance Photo 04.30.2020 23:46:20 UTC | | | | | |
| 484 | | Digital Mint Surveillance Photo 06.23.2020 23:27:57 UTC | | | | | |
| 485 | | Digital Mint Surveillance Photo 06.23.2020 23:30:15 UTC | | | | | |
| 486 | | Digital Mint Surveillance Photo 06.23.2020 23:32:14 UTC | | | | | |
| 487 | | Digital Mint Surveillance Photo 06.23.2020 23:33:59 UTC | | | | | |
| 488 | | Digital Mint Surveillance Photo 06.23.2020 23:37:58 UTC | | | | | |

23

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 489 | | Digital Mint Surveillance Photo 06.23.2020 23:40:00 UTC | | | | | |
| 490 | | Digital Mint Surveillance Photo 06.23.2020 23:42:54 UTC | | | | | |
| 491 | | Digital Mint Surveillance Photo 06.23.2020 23:44:58 UTC | | | | | |
| 492 | | Signature Bank ACH Transaction re $68,400 to Global Fuel Logistics, dated 05.11.2020 | | | | | |
| 493 | | Navy Federal Credit Union Surveillance Photo, dated 04.30.2020 | | | | | |
| 494 - 499 | | INTENTIONALLY BLANK | | | | | |
| 500 | | Kraken Account Opening and Verification Documents for Kimberley Tew | | | | | |
| 501 | | Kraken Account Opening and Verification Documents for Michael Tew | | | | | |
| 502 | | Coinbase profile image records for Michael Tew | | | | | |
| 503 | | Coinbase profile image records for Kimberley Tew | | | | | |
| 504 | | Google Pay Customer Profile re kley@me.com | | | | | |
| 505 | | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | | | | | |
| 506 | | McDonald Audi Wire Transfer Records re $20,611.01 Incoming Money Transfer, dated 11.01.2019 | | | | | |
| 507 | | Wynn Las Vegas Jackpot Report between 07.04.2019 and 11.29.2019 | | | | | |

24

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 508 | | Wynn Las Vegas 2019 Loss Summary, as of 07.16.2020 | | | | | |
| 509 | | Wynn Las Vegas Reservation Confirmation #23362412 for Kimberley Tew, 10.30.2019 arrival & 11.02.19 departure | | | | | |
| 510 | | Wynn Las Vegas Reservation/Stay History for Kimberley Tew | | | | | |
| 511 | | Wynn Las Vegas Reservation/Stay History re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | | | | | |
| 512 | | GoDaddy Domain Information re Domain Name "Global Fuel.Co" | | | | | |
| 513 | | GoDaddy Domain Information re Domain Name "Sandhillrp.com" | | | | | |
| 514 | | AT&T Subscriber Information re phone number x1312, Michael Tew | | | | | |
| 515 | | AT&T Subscriber Information re phone number x7473, Michael Tew | | | | | |
| 516 | | AT&T Subscriber Information re phone number x2046, Kimberley Vertanen | | | | | |
| 517 | | AT&T Text Message History re phone numbers x2046 & x1312 | | | | | |
| 518 | | AT&T Records re phone number x1312 | | | | | |
| 519 | | Spreadsheet of Verizon Call Records re phone number x1709 | | | | | |
| 520 | | Google Subscriber Information re [5530 JD] Email Recovery (chrisrncn@gmail.com) | | | | | |
| 521 | | Google Subscriber Information re [PM] email recovery (political.media.wdc@gmail.com) | | | | | |

25

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 522 | | Google Voice Record re Google Voice Number x0152 | | | | | |
| 523 | | Google Subscriber Information re vtleycap@gmail.com (recovery email kley@me.com) | | | | | |
| 524 | | Google subscriber information re meyersconsultinggroupinc@gmail.com | | | | | |
| 525 | | IRS Form W-9 re [MM], dated 10.11.2018 | | | | | |
| 526 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | | | | | |
| 527 | | Plea agreement as to Jonathan Yioulos, dated 11.18.2021 | | | | | |
| 528 | | Audio of 7/15/2020 Proffer with Michael Tew | | | | | |
| 529 | | Audio of 7/28/2020 Proffer with Michael Tew | | | | | |
| 530 | | Audio of 10/23/2020 Proffer with Kimberley Tew | | | | | |
| 531 | | 07.07.2020 Photograph of Yioulos Phone Contact 'JB' | | | | | |
| 532 | | Email re "RE: AMEX" on 07.16.2018 | | | | | |
| 533 | | Email re "FW: Scanned Document" on 07.31.2018 | | | | | |
| 534 | | Email re "RE: Wire - Michael Tew" on 08.02.2018 | | | | | |
| 535 | | Email re "FW: MT AGMT" on 09.14.2018 | | | | | |
| 536 | | Email re "FW: National Air Cargo Holdings Correspondence" on 09.17.2018 | | | | | |

26

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 537 | | Invoice #79487 re: [MCG] Inc for $10,000.00, dated 10.30.2018 | | | | | |
| 538 | | Email re "RE: Michael Tew - AMEX" on 01.17.2019 | | | | | |
| 539 | | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10222 for $17,955.50; & Aero Maintenance Resources Invoice #9611 for $79,292) | | | | | |
| 540 | | Invoice #79466 re: [MCG] Inc for $30,000.00, dated 10.12.2018 | | | | | |
| 541 | | Invoice #79488 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | | | | | |
| 542 | | Invoice #79489 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | | | | | |
| 543 | | Invoice #79490 re: [MCG] Inc for $25,000.00, dated 12.11.2018 | | | | | |
| 544 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Global Fuel Logistics Inc., filed 07.11.2019 | | | | | |
| 545 | | IRS assignment of Employment Identification Number re Global Fuel Logistics, dated 07.09.2019 | | | | | |
| 546 | | Wyoming Secretary of State Articles of Incorporation re Global Fuel Logistics Inc, filed 07.09.2019 | | | | | |
| 547 | | IRS Form SS-4 Application for Employer Identification Number re Sand Hill LLC | | | | | |
| 548 | | State of New York Department of State Certification of Articles of Organization and Other Filings for Sand Hill LLC, dated 11.09.2018 | | | | | |
| 549 | | Google Pay Customer Profile re kleytew@gmail.com | | | | | |

27

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 550 | | IRS Form 1099 re SandHill Research Partners, tax years 2015 through 2018 | | | | | |
| 551 | | Audio of 07.29.2020 meeting with Michael Tew at Yeti store | | | | | |
| 552 | | Email re "RE: MT AGMT" on 09.14.2018 | | | | | |
| 553 | | Email headers re email received by chrisrncn@gmail.com on 08.22.2018 | | | | | |
| 554 | | Spreadsheet of Apple account information re kley@me.com | | | | | |
| 555 | | Photograph re Search Warrant Executed on 07.31.2020 #1 | | | | | |
| 556 | | Photograph re Search Warrant Executed on 07.31.2020 #2 | | | | | |
| 557 | | Photograph re Search Warrant Executed on 07.31.2020 #3 | | | | | |
| 558 | | Photograph re Search Warrant Executed on 07.31.2020 #4 | | | | | |
| 559 | | Photograph re Search Warrant Executed on 07.31.2020 #5 | | | | | |
| 560 | | Photograph re Search Warrant Executed on 07.31.2020 #6 | | | | | |
| 561 | | Photograph re Search Warrant Executed on 07.31.2020 #7 | | | | | |
| 562 | | Wells Fargo Bank Bag | | | | | |
| 563 | | 2TB Seagate HDD Model ST20000DM001-1CH164 Serial Number W241LEZM | | | | | |

28

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 564 | | Photograph re Cellebrite Processing #1 | | | | | |
| 565 | | Photograph re Cellebrite Processing #2 | | | | | |
| 566 | | Photograph re Cellebrite Processing #3 | | | | | |
| 567 | | Photograph re Cellebrite Processing #4 | | | | | |
| 568 | | Wipe Log | | | | | |
| 569 | | Hash List for Apple Return | | | | | |
| 570 | | Kraken Ledger - AA70N84GI5WBRUCHI | | | | | |
| 571 - 599 | | INTENTIONALLY LEFT BLANK | | | | | |
| 600 | | INTENTIONALLY LEFT BLANK | | | | | |
| 601 | | Email re "ACH Invoice" on 08.07.2018 ([HS] Invoice dated 08.07.2018 for $15,000) | | | | | |
| 602 | | Text messages between M.T. and J.Y. 08.07.2018 | | | | | |
| 603 | | Email re "re ACH Invoice" on 08.08.2018 ([HS] Invoice dated 08.08.2018 for $15,000) | | | | | |
| 604 | | Text messages between M.T. and J.Y. 08.08.2018 | | | | | |
| 605 | | Text messages between M.T. and J.Y. 08.09.2018 | | | | | |
| 606 | | Text messages between M.T. and J.Y. 08.13.2018 | | | | | |

29

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 607 | | Email re "Invoices: Michael Tew ACH August 15" on 08.14.2018 (Sand Hill Invoice #49 for $10,000 & [HS] Invoice dated 08.14.2018 for $20,000) | | | | | |
| 608 | | Text message between J.Y. and M.T on 08.10.2018 | | | | | |
| 609 | | Text message between J.Y. and M.T on 08.18.2018 | | | | | |
| 610 | | Text message between J.Y. and M.T on 08.21.2018 | | | | | |
| 611 | | Email re "Invoice (CORRECTED)" on 08.22.2018 ([5530 JD] Invoice #7321116 for $15,000) | | | | | |
| 612 | | Email re "Wire Confirmation" on 08.22.2018 | | | | | |
| 613 | | Text messages between J.Y. and M.T on 08.22.2018 | | | | | |
| 614 | | Text messages between J.Y. and M.T on 08.23.2018 | | | | | |
| 615 | | Email re "re Invoice (CORRECTED)" on 08.23.2018 | | | | | |
| 616 | | Emails re "re Is there an invoice for this wire out of Holdings?" on 08.24.2018 | | | | | |
| 617 | | Text messages between M.T. and JY. on 08.28.2018 | | | | | |
| 618 | | Email re "Confirms" on 08.30.2018 | | | | | |
| 619 | | Text messages between J.Y. and K.T. on 08.30.2018 | | | | | |
| 620 | | Text messages between J.Y. and M.T. on 08.30.2018 | | | | | |

30

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 621 | | Text messages between M.T. and J.Y. on 08.31.2018 | | | | | |
| 622 | | Text messages between M.T. and J.Y. on 09.01.2018 | | | | | |
| 623 | | INTENTIONALLY LEFT BLANK | | | | | |
| 624 | | Emails re "RE: Is there an invoice?" on 09.07.2018 | | | | | |
| 625 | | Text messages between M.T. and J.Y. on 09.07.2018 | | | | | |
| 626 | | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:13pm | | | | | |
| 627 | | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:14pm | | | | | |
| 628 | | Text messages from J.Y. to K.T. on 09.10.2018 | | | | | |
| 629 | | Email (NO SUBJECT) on 09.10.2018 ([5530 JD] Invoice #7321118 for $15,000 & Invoice #7321117 for $15,000) | | | | | |
| 630 | | Emails re "RE: Scaife Invoices" on 09.10.2018 | | | | | |
| 631 | | Emails re "RE:" (NO SUBJECT) on 09.10.2018 | | | | | |
| 632 | | Email re "Cancel ACH" on 09.10.2018 | | | | | |
| 633 | | Text messages between M.T. and J.Y. on 09.12.2018 | | | | | |
| 634 | | Text messages from J.Y. to K.T. on 09.12.2018 | | | | | |
| 635 | | Text messages from J.Y. to K.T. on 09.13.2018 | | | | | |

31

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 636 | | Text messages between M.T. and J.Y. on 09.13.2018 | | | | | |
| 637 | | INTENTIONALLY LEFT BLANK | | | | | |
| 638 | | Email re "Invoice" on 09.18.2018 ([5530 JD] Invoice #7321119 for $15,000) | | | | | |
| 639 | | Text messages from J.Y. to K.T. on 09.18.2018 | | | | | |
| 640 | | Text messages from J.Y. to K.T. on 09.28.2018 | | | | | |
| 641 | | INTENTIONALLY LEFT BLANK | | | | | |
| 642 | | Email re "Consulting Invoice" on 09.28.2018 ([5530 JD] Invoice #7321120 for $15,000) | | | | | |
| 643 | | Email re "RE: Invoices needed - Holdings" on 09.28.2018 | | | | | |
| 644 | | Email re "Jess" on 10.01.2018 | | | | | |
| 645 | | Text message from J.Y. to M.T. on 10.09.2018 | | | | | |
| 646 | | Text messages from J.Y. to K.T. on 10.25.2018 | | | | | |
| 647 | | Email re "Fwd: Invoice" on 10.25.2018 | | | | | |
| 648 | | Text messages between J.Y. to M.T. on 10.25.2018 | | | | | |
| 649 | | Email re "Oct Invoice" on 10.30.2018 | | | | | |
| 650 | | Text messages between J.Y. to M.T. on 10.30.2018 | | | | | |

32

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 651 | | Text messages from J.Y. to K.T. on 10.30.2018 | | | | | |
| 652 | | Text messages between J.Y. to M.T. on 10.31.2018 | | | | | |
| 653 | | Email re "is there an invoice for this payment out of holdings?" on 10.31.2018 | | | | | |
| 654 | | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018 at 2:13pm | | | | | |
| 655 | | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018, time unknown | | | | | |
| 656 | | Text mess+C405ages sent from Kley (M.T.) to M.M. on 11.06.2018 | | | | | |
| 657 | | Email re "[MCG] LLC" on 11.06.2018 | | | | | |
| 658 | | Email re "RE: Invoice" on 11.09.2018 | | | | | |
| 659 | | Text messages between J.Y. to M.T. on 11.09.2018 | | | | | |
| 660 | | INTENTIONALLY LEFT BLANK | | | | | |
| 661 | | Email re "RE: Entity: Sand Hill, LLC - New York" on 11.12.2018 | | | | | |
| 662 | | Text messages between J.Y. and M.T. on 11.13.2018 | | | | | |
| 663 | | Text messages between J.Y. and M.T. on 11.15.2018 | | | | | |
| 664 | | Text messages between J.Y. and M.T. on 11.16.2018 | | | | | |
| 665 | | Text messages between J.Y. and M.T. on 11.19.2018 | | | | | |

33

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 666 | | Email re "RE: Invoice" on 11.19.2018 at 8:55pm | | | | | |
| 667 | | Email re "RE: Invoice" on 11.19.2018 at 9:04pm | | | | | |
| 668 | | Text messages between J.Y. and M.T. on 11.20.2018 | | | | | |
| 669 | | Text messages between Kley (M.T.) and M.M. on 11.20.2018 | | | | | |
| 670 | | Text messages between J.Y. and M.T. on 11.21.2018 | | | | | |
| 671 | | Text messages between J.Y. and M.T. on 11.23.2018 | | | | | |
| 672 | | Text messages between J.Y. and M.T. on 11.25.2018 | | | | | |
| 673 | | Text messages between J.Y. and M.T. on 11.26.2018 | | | | | |
| 674 | | Email re "RE: Invoice" on 11.26.2018 at 7:22pm ([5530 JD] Invoice #7321122 for $30,000) | | | | | |
| 675 | | Email re "RE: Invoice" on 11.26.2018 at 4:22pm | | | | | |
| 676 | | Text messages between J.Y. and M.T. on 11.27.2018 | | | | | |
| 677 | | Email re "RE: Cash Sheet - Holdings - what's this?" on 11.28.2018 | | | | | |
| 678 | | Text message from J.Y. to M.T. on 11.30.2018 | | | | | |
| 679 | | Text messages from J.Y. to K.T. on 12.01.2018 | | | | | |
| 680 | | Email re "RE: Final Invoice" on 12.03.2018 ([MCG] Invoice #79489 for $30,000) | | | | | |

34

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 681 | | Text messages between J.Y. and M.T. on 12.04.2018 | | | | | |
| 682 | | Text messages from J.Y. to K.T. on 12.04.2018 | | | | | |
| 683 | | Email re "Missing Meyers invoices" on 12.04.2018 ([MCG] Invoice #79489 for $30,000 & Invoice #79488 for $30,000) | | | | | |
| 684 | | Text messages between J.Y. and M.T. on 12.06.2018 | | | | | |
| 685 | | Text messages from J.Y. to K.T. on 12.06.2018 | | | | | |
| 686 | | Email re "Fwd: [PM], Inc. - Invoice for Services" on 12.07.2018 ([PM] Invoice #6516 for $21,250) | | | | | |
| 687 | | Text messages between J.Y. and M.T. on 12.07.2018 | | | | | |
| 688 | | Email re: "RE: [PM], Inc. - Invoice for Services" on 12.07.2018 | | | | | |
| 689 | | Text messages between J.Y. and M.T. on 12.06.2018 | | | | | |
| 690 | | Text messages between J.Y. and M.T. on 12.10.2018 | | | | | |
| 691 | | Email re "New Vendor - Paid on Friday" on 12.10.2018 | | | | | |
| 692 | | Email re "Re: Final Invoice" on 12.11.2018 ([MCG] Invoice #79490 for $25,000) | | | | | |
| 693 | | Text messages between J.Y. and M.T. on 12.11.2018 | | | | | |
| 694 | | Email re "Meyers Inv" on 12.14.2018 | | | | | |

35

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 695 | | Text messages between J.Y. and M.T. on 12.18.2018 | | | | | |
| 696 | | Text messages between Kley (M.T.) and M.M. on 12.18.2018 | | | | | |
| 697 | | Text messages between J.Y. and M.T. on 12.19.2018 | | | | | |
| 698 | | Text messages between J.Y. and M.T. on 12.20.2018 | | | | | |
| 699 | | Email re "FW: INVOICES: MICHAEL TEW ACH AUGUST 15" on 12.20.2018 | | | | | |
| 700 | | Email re "FW: [PM], Inc. - Invoice for Services" on 12.20.2018 ([PM] Invoice #6517 for $15,125) | | | | | |
| 701 | | Text messages between J.Y. and M.T. on 12.21.2018 | | | | | |
| 702 | | Text messages between J.Y. and M.T. on 01.07.2019 | | | | | |
| 703 | | Email re "Invoice from [PM], Inc." on 01.07.2019 ([PM] Invoice #6540 for $15,312.50) | | | | | |
| 704 | | Text messages between J.Y. and M.T. on 01.09.2019 | | | | | |
| 705 | | Text messages between J.Y. and M.T. on 01.10.2019 | | | | | |
| 706 | | Email re "Invoice from [PM], Inc." on 01.10.2019 ([PM] Invoice #6670 for $25,350) | | | | | |
| 707 | | Text messages between J.Y. and M.T. on 01.17.2019 | | | | | |
| 708 | | Text messages from J.Y. to K.T. on 01.17.2019 | | | | | |
| 709 | | Email re "FW: Invoice from [PM], Inc." on 01.17.2019 | | | | | |

36

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 710 | | Text messages between J.Y. and M.T. on 01.18.2019 | | | | | |
| 711 | | Email re "Invoice from [PM], Inc." on 01.18.2019 ([PM] Invoice #6712 for $27,562.50) | | | | | |
| 712 | | Text messages between J.Y. and M.T. on 01.23.2019 | | | | | |
| 713 | | Email re "Invoice from [PM], Inc." on 01.23.2019 ([PM] Invoice #6714 for $21,000 & Invoice #6712 for $28,000) | | | | | |
| 714 | | Email re "FW: Invoice from [PM], Inc." on 01.25.2019 | | | | | |
| 715 | | Text messages from J.Y. to K.T. on 02.07.2019 | | | | | |
| 716 | | Email re "Invoice from [PM], Inc." on 02.07.2019 ([PM] Invoice #6775 for $15,250) | | | | | |
| 717 | | Text messages between J.Y. and M.T. on 02.19.2019 | | | | | |
| 718 | | Text messages from J.Y. to K.T. on 02.19.2019 | | | | | |
| 719 | | Email re "Invoice from [PM], Inc." on 02.19.2019 ([PM] Invoice #6786 for $15,250) | | | | | |
| 720 | | Email re "FW: Invoice from [PM], Inc." on 02.21.2019 | | | | | |
| 721 | | Text messages between J.Y. and M.T. on 02.24.2019 | | | | | |
| 722 | | Text messages between J.Y. and M.T. on 03.01.2019 | | | | | |
| 723 | | Email re "Invoice from [PM], Inc." on 03.04.2019 ([PM] Invoice #6804 for $37,800) | | | | | |
| 724 | | Text messages between Kley (M.T.) and K.T. on 03.06.2019 | | | | | |

37

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 725 | | Email re "FW: Invoice from [PM], Inc." on 03.07.2019 | | | | | |
| 726 | | Text messages between Kley (M.T.) and K.T. on 03.14.2019 | | | | | |
| 727 | | Email re "Invoice from [PM], Inc." on 03.14.2019 ([PM] Invoice #6881 for $31,500) | | | | | |
| 728 | | Email re "FW: Invoice from [PM], Inc." on 03.15.2019 | | | | | |
| 729 | | Text messages between Kley (M.T.) and K.T. on 03.17.2019 | | | | | |
| 730 | | Text messages between Kley (M.T.) and K.T. on 03.18.2019 | | | | | |
| 731 | | Text messages between J.Y. and M.T. on 03.18.2019 | | | | | |
| 732 | | Email re "Invoice from [PM], Inc." on 03.18.2019 ([PM] Invoice #6910 for $20,250) | | | | | |
| 733 | | Email re "FW: Invoice from [PM], Inc." on 03.19.2019 | | | | | |
| 734 | | Text messages between J.Y. and M.T. on 03.19.2019 | | | | | |
| 735 | | Text messages between Kley (M.T.) and K.T. on 03.19.2019 | | | | | |
| 736 | | Text messages between M.T. and K.T. on 03.28.2019 | | | | | |
| 737 | | Email re "Invoice from [PM], Inc." on 03.28.2019 ([PM] Invoice #6976 for $38,000) | | | | | |
| 738 | | INTENTIONALLY LEFT BLANK | | | | | |

38

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 739 | | Text messages between Kley (M.T.) and K.T. on 03.30.2019 | | | | | |
| 740 | | Text messages between Kley (M.T.) and K.T. on 04.03.2019 | | | | | |
| 741 | | Text messages between J.Y. and M.T. on 04.03.2019 | | | | | |
| 742 | | Email re "Invoice from [PM], Inc." on 04.03.2019  ([PM] Invoice #6910 for $30,150) | | | | | |
| 743 | | Email re "FW: Invoice from [PM], Inc." on 04.04.2019 ([PM] Invoice #7004 for 11,250) | | | | | |
| 744 | | INTENTIONALLY LEFT BLANK | | | | | |
| 745 | | Text messages between J.Y. and M.T. on 04.07.2019 | | | | | |
| 746 | | Text messages between Kley (M.T.) and K.T. on 04.07.2019 | | | | | |
| 747 | | Text messages between J.Y. and M.T. on 04.08.2019 | | | | | |
| 748 | | Email re "Invoice from [PM], Inc." on 04.08.2019 ([PM] Invoice #7101 for $37,500) | | | | | |
| 749 | | Email re "re Invoice from [PM], Inc." on 04.09.2019 | | | | | |
| 750 | | INTENTIONALLY LEFT BLANK | | | | | |
| 751 | | Text messages between M.T. and K.T. on 04.11.2019 | | | | | |
| 752 | | Text messages from Kley (M.T.) to M.M. on 04.12.2019 | | | | | |
| 753 | | Text messages between M.T. and K.T. on 04.12.2019 | | | | | |

39

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 754 | | Text messages between J.Y. and M.T. on 04.13.2019 | | | | | |
| 755 | | Text messages between M.T. and K.T. on 04.16.2019 | | | | | |
| 756 | | Text messages between M.T. and K.T. on 04.17.2019 | | | | | |
| 757 | | INTENTIONALLY LEFT BLANK | | | | | |
| 758 | | Text messages between M.T. and Kley (K.T.) on 04.21.2019 | | | | | |
| 759 | | Text messages between M.T. and K.T. on 04.22.2019 | | | | | |
| 760 | | Text messages between Kley (M.T.) and K.T. on 04.23.2019 | | | | | |
| 761 | | Text message from J.Y. to M.T. on 04.24.2019 | | | | | |
| 762 | | Text messages between M.T. and K.T. on 04.24.2019 | | | | | |
| 763 | | INTENTIONALLY LEFT BLANK | | | | | |
| 764 | | Email re "Invoice from [PM], Inc." on 04.29.2019  ([PM] Invoice #7156 for $75,000 and Invoice #7158 for $39,780) | | | | | |
| 765 | | Email re "FW: Invoice from [PM]. Inc." on 04.29.2019 | | | | | |
| 766 | | Text messages between Kley (M.T.) and K.T. on 04.30.2019 | | | | | |
| 767 | | Text messages between M.T. and K.T. on 05.01.2019 | | | | | |

40

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 768 | | Text messages between M.T. and K.T. on 05.02.2019 | | | | | |
| 769 | | Text messages between M.T. and K.T. on 05.06.2019 | | | | | |
| 770 | | Text messages between J.Y. and M.T. on 05.07.2019 | | | | | |
| 771 | | Text messages between M.T. and K.T. on 05.08.2019 | | | | | |
| 772 | | Text messages between Kley (M.T.) and K.T. on 05.09.2019 | | | | | |
| 773 | | Text messages between Kley (M.T.) and K.T. on 05.10.2019 | | | | | |
| 774 | | Text messages between J.Y. and M.T. on 05.10.2019 | | | | | |
| 775 | | Text messages between J.Y. and M.T. on 05.15.2019 | | | | | |
| 776 | | Text messages between M.T. and K.T. on 05.20.2019 | | | | | |
| 777 | | Text messages between M.T. and Kley (K.T.) on 05.21.2019 | | | | | |
| 778 | | Text messages between M.T. and Kley (K.T.) on 05.22.2019 | | | | | |
| 779 | | Text messages between M.T. and K.T. on 05.27.2019 | | | | | |
| 780 | | Text messages between M.T. and K.T. on 05.28.2019 | | | | | |
| 781 | | Text messages between J.Y. and M.T. on 06.03.2019 | | | | | |
| 782 | | Text messages between Kley (M.T.) and K.T. on 06.03.2019 | | | | | |

41

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 783 | | Email re "Journal Entry Testing" on 06.04.2019 | | | | | |
| 784 | | Text messages between M.T. and K.T. on 06.07.2019 | | | | | |
| 785 | | Text messages between M.T. and K.T. on 06.10.2019 | | | | | |
| 786 | | Text messages between J.Y. and M.T. on 06.12.2019 | | | | | |
| 787 | | Text messages between Kley (M.T.) and K.T. on 06.12.2019 | | | | | |
| 788 | | Text messages between J.Y. and M.T. on 06.13.2019 | | | | | |
| 789 | | Text messages between M.T. and K.T. on 06.13.2019 | | | | | |
| 790 | | Text messages between M.T. and K.T. on 06.18.2019 | | | | | |
| 791 | | INTENTIONALLY LEFT BLANK | | | | | |
| 792 | | Text messages between M.T. and K.T. on 06.24.2019 | | | | | |
| 793 | | Text messages between M.T. and K.T. on 06.25.2019 | | | | | |
| 794 | | Text messages between M.T. and K.T. on 06.26.2019 and 06.27.2019 | | | | | |
| 795 | | Text messages between J.Y. and M.T. on 06.26.2019 | | | | | |
| 796 | | Text messages between J.Y. and M.T. on 06.28.2019 | | | | | |
| 797 | | Text messages between M.T. and K.T. on 06.28.2019 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 798 | | Text messages between M.T. and K.T. on 06.29.2019 | | | | | |
| 799 | | Email re "RE: Please assist" on 07.11.2019 | | | | | |
| 800 | | Text messages between M.T. and K.T. on 07.02.2019 | | | | | |
| 801 | | Emails re "Invoice From [PM], Inc." on 07.03.2019 ([PM] Invoice #7201 for $40,000; Invoice #7263 for $10,100; Invoice #7312 for $9,500; & Invoice #7322 for $30,000) | | | | | |
| 802 | | Text messages between M.T. and K.T. on 07.04.2019 | | | | | |
| 803 | | INTENTIONALLY LEFT BLANK | | | | | |
| 804 | | Text messages between M.T. and K.T. on 07.07.2019 | | | | | |
| 805 | | Text messages between M.T. and K.T. on 07.07.2019 | | | | | |
| 806 | | Text messages between J.Y. and M.T. on 07.08.2019 | | | | | |
| 807 | | Emails re "Re: Please assist" on 07.08.2019 | | | | | |
| 808 | | Emails re "Re: Please assist" on 07.09.2019 | | | | | |
| 809 | | Text messages between M.T. and K.T. on 07.09.2019 | | | | | |
| 810 | | Text messages between M.T. and K.T. on 07.11.2019 | | | | | |
| 811 | | Text messages between M.T. and K.T. on 07.17.2019 | | | | | |

43

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 812 | | Text messages between M.T. and K.T. on 07.18.2019 | | | | | |
| 813 | | Text messages between J.Y. and M.T. on 07.19.2019 | | | | | |
| 814 | | Text messages between J.Y. and M.T. on 07.22.2019 | | | | | |
| 815 | | Text messages between M.T. and K.T. on 07.29.2019 | | | | | |
| 816 | | Text messages between J.Y. and M.T. on 07.30.2019 | | | | | |
| 817 | | Text messages between J.Y. and M.T. on 08.01.2019 | | | | | |
| 818 | | Text messages between J.Y. and M.T. on 08.03.2019 | | | | | |
| 819 | | Text messages between M.T. and K.T. on 08.04.2019 | | | | | |
| 820 | | Text messages between J.Y. and M.T. on 08.05.2019 | | | | | |
| 821 | | Text messages between M.T. and K.T. on 08.05.2019 | | | | | |
| 822 | | Text messages between M.T. and K.T. on 08.06.2019 | | | | | |
| 823 | | Text messages between J.Y. and M.T. on 08.06.2019 | | | | | |
| 824 | | Text messages between M.T. and K.T. on 08.11.2019 | | | | | |
| 825 | | Text messages between M.T. and K.T. on 08.13.2019 | | | | | |
| 826 | | Text messages between J.Y. and M.T. on 08.13.2019 | | | | | |

44

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 827 | | Text messages between J.Y. and M.T. on 08.14.2019 | | | | | |
| 828 | | Text messages between J.Y. and M.T. on 08.15.2019 | | | | | |
| 829 | | Text messages between M.T. and K.T. on 08.18.2019 | | | | | |
| 830 | | Text messages between J.Y. and M.T. on 08.19.2019 | | | | | |
| 831 | | Text messages between J.Y. and M.T. on 08.20.2019 | | | | | |
| 832 | | Text messages between J.Y. and M.T. on 08.21.2019 | | | | | |
| 833 | | Text messages between J.Y. and M.T. on 08.22.2019 | | | | | |
| 834 | | Text messages between M.T. and K.T. on 08.22.2019 | | | | | |
| 835 | | Text messages between M.T. and K.T. on 08.23.2019 | | | | | |
| 836 | | Text messages between M.T. and K.T. on 08.25.2019 | | | | | |
| 837 | | Text messages between J.Y. and M.T. on 08.26.2019 | | | | | |
| 838 | | Text messages between M.T. and K.T. on 08.26.2019 | | | | | |
| 839 | | Text messages between M.T. and K.T. on 08.27.2019 | | | | | |
| 840 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 841 | | Email re "Invoices from Global Fuel Logistics, Inc" on 08.28.2019 (Global Fuel Logistics Invoice #987 for #9,500; Invoice #972 for $94,500; & Invoice #763 for $152,000) | | | | | |
| 842 | | Text messages between M.T. and K.T. on 08.29.2019 | | | | | |
| 843 | | Emails re "RE: 8/29 Wires" on 08.29.2019 | | | | | |
| 844 | | Email re "Global Fuel - Updated Invoice" on 08.29.2019 (Global Fuel Logistics Invoice #1001 for $55,000) | | | | | |
| 845 | | Email re "Invoices from Global Fuel Logistics, Inc" on 08.29.2019 (Global Fuel Logistics Invoice #1023 for $45,000; Invoice #1011 for $45,000; & Invoice #1001 for $56,000) | | | | | |
| 846 | | Text messages between M.T. and K.T. on 08.30.2019 | | | | | |
| 847 | | INTENTIONALLY LEFT BLANK | | | | | |
| 848 | | Text messages between M.T. and K.T. on 09.06.2019 | | | | | |
| 849 | | Text messages between M.T. and K.T. on 09.07.2019 | | | | | |
| 850 | | Text messages between M.T. and K.T. on 09.08.2019 | | | | | |
| 851 | | Text messages between J.Y. and M.T. on 09.09.2019 | | | | | |
| 852 | | Text messages between M.T. and K.T. on 09.09.2019 | | | | | |
| 853 | | Text messages between M.T. and K.T. on 09.10.2019 | | | | | |

46

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 854 | | Text messages between M.T. and K.T. on 09.13.2019 | | | | | |
| 855 | | Text messages between M.T. and K.T. on 09.14.2019 | | | | | |
| 856 | | Text messages between J.Y. and M.T. on 09.16.2019 | | | | | |
| 857 | | Text messages between J.Y. and M.T. on 09.17.2019 | | | | | |
| 858 | | Text messages between J.Y. and M.T. on 09.18.2019 | | | | | |
| 859 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 860 | | Text messages between M.T. and K.T. on 09.22.2019 | | | | | |
| 861 | | Text messages between M.T. and K.T. on 09.23.2019 | | | | | |
| 862 | | Text messages between J.Y. and M.T. on 09.25.2019 | | | | | |
| 863 | | Text messages between J.Y. and M.T. on 09.26.2019 | | | | | |
| 864 | | Text messages between M.T. and K.T. on 09.26.2019 | | | | | |
| 865 | | Text messages between J.Y. and M.T. on 09.27.2019 | | | | | |
| 866 | | Text messages between M.T. and K.T. on 09.28.2019 | | | | | |
| 867 | | Text messages between M.T. and K.T. on 09.30.2019 | | | | | |
| 868 | | INTENTIONALLY LEFT BLANK | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 869 | | Text messages between M.T. and K.T. on 10.02.2019 | | | | | |
| 870 | | INTENTIONALLY LEFT BLANK | | | | | |
| 871 | | Text messages between M.T. and K.T. on 10.05.2019 | | | | | |
| 872 | | Text messages between M.T. and K.T. on 10.07.2019 | | | | | |
| 873 | | Text messages between M.T. and K.T. on 10.08.2019 | | | | | |
| 874 | | Text messages between M.T. and K.T. on 10.09.2019 | | | | | |
| 875 | | Email re "Invoices from Aero Maintenance Resources" on 10.11.2019 (Aero Maintenance Resources Invoice #697 for $112,750; Invoice #634 for $75,000; & Invoice #627 for $141,450) | | | | | |
| 876 | | Text messages between M.T. and K.T. on 10.11.2019 | | | | | |
| 877 | | Text messages between M.T. and K.T. on 10.15.2019 | | | | | |
| 878 | | INTENTIONALLY LEFT BLANK | | | | | |
| 879 | | Text messages between M.T. and K.T. on 10.19.2019 | | | | | |
| 880 | | Text messages between M.T. and K.T. on 10.20.2019 | | | | | |
| 881 | | Text messages between M.T. and K.T. on 10.21.2019 | | | | | |
| 882 | | Text messages between M.T. and K.T. on 10.22.2019 | | | | | |

48

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 883 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 884 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 885 | | Text messages between M.T. and K.T. on 10.31.2019 | | | | | |
| 886 | | Text messages between M.T. and K.T. on 11.01.2019 | | | | | |
| 887 | | Email re "Invoices from Aero Maintenance Resources" on 11.11.2019 (Aero Maintenance Resources Invoice #1017 for $110,000; Invoice #1021 for $100,000; & Invoice #1103 for $66,750) | | | | | |
| 888 | | Text messages between M.T. and K.T. on 11.13.2019 | | | | | |
| 889 | | Text messages between M.T. and K.T. on 11.14.2019 | | | | | |
| 890 | | Text messages between M.T. and K.T. on 11.19.2019 | | | | | |
| 891 | | Text messages between M.T. and K.T. on 11.20.2019 | | | | | |
| 892 | | Text messages between M.T. and K.T. on 11.21.2019 | | | | | |
| 893 | | Text messages between M.T. and K.T. on 11.22.2019 | | | | | |
| 894 | | Text messages between M.T. and K.T. on 11.25.2019 | | | | | |
| 895 | | Text messages between M.T. and K.T. on 12.01.2019 | | | | | |
| 896 | | Text messages between M.T. and K.T. on 12.02.2019 | | | | | |

49

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 897 | | Text messages between M.T. and K.T. on 12.03.2019 | | | | | |
| 898 | | Text messages between M.T. and K.T. on 12.04.2019 | | | | | |
| 899 | | Text messages between M.T. and K.T. on 12.06.2019 | | | | | |
| 900 | | INTENTIONALLY LEFT BLANK | | | | | |
| 901 | | Text messages between M.T. and K.T. on 12.11.2019 | | | | | |
| 902 | | Text messages between M.T. and K.T. on 12.13.2019 | | | | | |
| 903 | | Email re "Invoices from Aero Maintenance Resources" on 12.17.2019 (Aero Maintenance Resources Invoice #2110 for $49,750; Invoice #2325 for $83,400; & Invoice #2392 for $85,250) | | | | | |
| 904 | | Text messages between M.T. and K.T. on 12.20.2019 | | | | | |
| 905 | | Text messages between M.T. and K.T. on 12.21.2019 | | | | | |
| 906 | | Text messages between M.T. and K.T. on 12.30.2019 | | | | | |
| 907 | | Text messages between M.T. and K.T. on 12.31.2019 | | | | | |
| 908 | | Text messages between M.T. and K.T. on 01.03.2020 | | | | | |
| 909 | | Text messages between M.T. and K.T. on 01.07.2020 | | | | | |
| 910 | | Text messages between M.T. and K.T. on 01.08.2020 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 911 | | Text messages between M.T. and K.T. on 01.09.2020 | | | | | |
| 912 | | Email re "Invoices from Aero Maintenance Resources" on 01.09.2020 (Aero Maintenance Resources Invoice #2515 for $79,950; Invoice #2479 for $87,200; & Invoice #2601 for $148,200) | | | | | |
| 913 | | Text messages between M.T. and K.T. on 01.10.2020 | | | | | |
| 914 | | Text messages between M.T. and K.T. on 01.11.2020 | | | | | |
| 915 | | Text messages between M.T. and K.T. on 01.13.2020 | | | | | |
| 916 | | Text messages between M.T. and K.T. on 01.16.2020 | | | | | |
| 917 | | Text messages between M.T. and K.T. on 01.17.2020 | | | | | |
| 918 | | Text messages between M.T. and K.T. on 01.22.2020 | | | | | |
| 919 | | Text messages between M.T. and K.T. on 01.26.2020 | | | | | |
| 920 | | Text messages between M.T. and K.T. on 01.28.2020 | | | | | |
| 921 | | Text messages between M.T. and K.T. on 01.29.2020 | | | | | |
| 922 | | Text messages between M.T. and K.T. on 01.31.2020 | | | | | |
| 923 | | Text messages between M.T. and K.T. on 02.01.2020 | | | | | |
| 924 | | Text messages between M.T. and K.T. on 02.05.2020 | | | | | |

51

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 925 | | Text messages between M.T. and K.T. on 02.12.2020 | | | | | |
| 926 | | Text messages between M.T. and K.T. on 02.13.2020 | | | | | |
| 927 | | Text messages between M.T. and K.T. on 02.15.2020 | | | | | |
| 928 | | Email re "Invoices from Aero Maintenance Resources" on 02.18.2020 (Aero Maintenance Resources Invoice #2807 for $15,689; & Invoice #2753 for $99,211) | | | | | |
| 929 | | Text messages between M.T. and K.T. on 02.25.2020 | | | | | |
| 930 | | Text messages between M.T. and K.T. on 02.26.2020 | | | | | |
| 931 | | Text messages between M.T. and K.T. on 03.03.2020 | | | | | |
| 932 | | Text messages between M.T. and K.T. on 03.06.2020 | | | | | |
| 933 | | Email re "Invoices from Aero Maintenance Resources" on 03.09.2020 (Aero Maintenance Resources Invoice #3004 for $95,000; Invoice #2987 for $33,520; & Invoice #2901 for $90,180) | | | | | |
| 934 | | Text messages between M.T. and K.T. on 03.10.2020 | | | | | |
| 935 | | Email re "Aero Maintenance Invoices for February 2020" on 03.11.2020 (Aero Maintenance Resources Invoice #2990 for $73,000) | | | | | |
| 936 | | Text messages between M.T. and K.T. on 03.11.2020 | | | | | |
| 937 | | Text messages between M.T. and K.T. on 03.17.2020 | | | | | |

52

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 938 | | Text messages between M.T. and K.T. on 03.18.2020 | | | | | |
| 939 | | Email re NO SUBJECT on 03.19.2020 | | | | | |
| 940 | | Text messages between M.T. and K.T. on 03.20.2020 | | | | | |
| 941 | | Text messages between M.T. and K.T. on 03.22.2020 | | | | | |
| 942 | | Text messages between M.T. and K.T. on 03.23.2020 | | | | | |
| 943 | | Text messages between M.T. and K.T. on 03.28.2020 | | | | | |
| 944 | | Text messages between M.T. and K.T. on 03.30.2020 | | | | | |
| 945 | | Text messages between M.T. and K.T. on 04.01.2020 | | | | | |
| 946 | | Text messages between M.T. and K.T. on 04.02.2020 | | | | | |
| 947 | | Text messages between M.T. and K.T. on 04.05.2020 | | | | | |
| 948 | | Text messages between M.T. and K.T. on 04.06.2020 | | | | | |
| 949 | | Text messages between M.T. and K.T. on 04.08.2020 | | | | | |
| 950 | | Email re "Invoices for Aero Maintenance Resources" on 04.14.2020 (Aero Maintenance Resources Invoice #4001 for $87,045; & Invoice #3176 for $127,155) | | | | | |
| 951 | | Text messages between M.T. and K.T. on 04.14.2020 | | | | | |

53

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 952 | | Email re "Aero Maintenance Invoices for April 2020" on 04.16.2020 (Aero Maintenance Resources Invoice #5120 for $105,603; & Invoice #4784 for $114,685) | | | | | |
| 953 | | Email re "Invoice for Global Fuel Logistics, Inc." on 04.27.2020 (Global Fuel Logistics Invoice #7988 for $124,785) | | | | | |
| 954 | | Email re "Invoice for Aero Maintenance Resources 2 March 2020" on 05.04.2020 (Aero Maintenance Resources Invoice #3101 for $61,255) | | | | | |
| 955 | | Email re "Invoice for Global Fuel Logistics, Inc." on 05.11.2020 (Global Fuel Logistics Invoice #8011 for $83,090) | | | | | |
| 956 | | Text messages between M.T. and K.T. on 05.12.2020 | | | | | |
| 957 | | Text messages between M.T. and K.T. on 05.23.2020 | | | | | |
| 958 | | Text messages between M.T. and K.T. on 05.28.2020 | | | | | |
| 959 | | Email re "Invoices for May 2020" on 06.03.2020 (Aero Maintenance Resources Invoice #8888 for $153,725; Global Fuel Logistics Invoice #9014 for $159,882; & Global Fuel Logistics Invoice #9071 for $164,065) | | | | | |
| 960 | | Text messages between M.T. and K.T. on 06.07.2020 | | | | | |
| 961 | | Text messages between M.T. and K.T. on 06.09.2020 | | | | | |
| 962 | | Text messages between M.T. and K.T. on 06.10.2020 | | | | | |
| 963 | | Text messages between M.T. and K.T. on 06.11.2020 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 964 | | Text messages between M.T. and K.T. on 06.16.2020 | | | | | |
| 965 | | Text messages between M.T. and K.T. on 06.17.2020 | | | | | |
| 966 | | Text messages between M.T. and K.T. on 06.24.2020 | | | | | |
| 967 | | Text messages between M.T. and K.T. on 06.25.2020 | | | | | |
| 968 | | Text messages between M.T. and K.T. on 06.26.2020 | | | | | |
| 969 | | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10101 for $170,274.50; Aero Maintenance Resources Invoice #9302 for $194,803; & Global Fuel Logistics Invoice #11812 for $127,264) | | | | | |
| 970 | | Text messages between M.T. and K.T. on 06.29.2020 | | | | | |
| 971 | | Text messages between M.T. and K.T. on 07.01.2020 | | | | | |
| 972 | | Text messages between J.Y. and K.T. on 07.01.2020 | | | | | |
| 973 | | Email re "Invoice for July 1 2020" on 07.02.2020 (Global Fuel Logistics Invoice #10226 for $95,000) | | | | | |
| 974 | | Audio recording of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 975 | | Audio recording of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 976 | | Text messages between J.Y. and M.T. on 07.08.2020 | | | | | |
| 977 | | INTENTIONALLY LEFT BLANK | | | | | |

55

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 978 | | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | | | | | |
| 979 | | Email re ACH Payment Questions, dated 04.17.2019 | | | | | |
| 980 | | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | | | | | |
| 981 | | Email re Lilly Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | | | | | |
| 982 | | Email re Lilly Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | | | | | |
| 983 | | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | | | | | |
| 984 | | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | | | | | |
| 985 | | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | | | | | |
| 986 | | Invoice #001 re Kimberley Tew for $10,000.00, dated 02.08.2018 | | | | | |
| 987 | | Transcript of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 988 | | Transcript of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 989 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |
| 990 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 991 - 999 | | INTENTIONALLY LEFT BLANK | | | | | |

56

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1000 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1001 | | Account Owners and Signors for Relevant Bank Accounts | | | | | |
| 1002 | | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | |
| 1003 | | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | |
| 1004 | | Summary of [HS] CPA, [MCG], and [5530 JD] Invoices and Payments | | | | | |
| 1005 | | Summary of [PM] Invoices and Payments | | | | | |
| 1006 | | Summary of Global Fuel Logistics Invoices and Payments | | | | | |
| 1007 | | Summary of Aero Maintenance Resources Invoices and Payments | | | | | |
| 1008 | | Summary - Calendar of Events | | | | | |
| 1009 | | Summary - Count 42 | | | | | |
| 1010 | | Summary - Count 43 | | | | | |
| 1011 | | Summary - Count 44 | | | | | |
| 1012 | | Summary - Count 45 | | | | | |
| 1013 | | Summary - Count 46 | | | | | |
| 1014 | | Summary - Count 47 | | | | | |

57

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1015 | | Summary - Count 48 | | | | | |
| 1016 | | Summary - Count 49 | | | | | |
| 1017 | | Summary - Count 50 | | | | | |
| 1018 | | Summary - Count 51 | | | | | |
| 1019 | | Summary - Count 52 | | | | | |
| 1020 | | Summary - Count 53 | | | | | |
| 1021 | | Summary - Count 54 | | | | | |
| 1022 | | Summary - Count 55 | | | | | |
| 1023 | | Summary - Count 56 | | | | | |
| 1024 | | Summary - M. Tew Transactions and Photographs | | | | | |
| 1025 | | Summary - K. Tew Transactions and Photographs | | | | | |
| 1026 | | Summary - M. and K. Tew Transactions and Photographs | | | | | |
| 1027 - 1099 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1100 | | Certificate of Authenticity for Atlantic Union Bank | | | | | |
| 1101 | | Certificate of Authenticity for ANB Bank | | | | | |

58

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1102 | | Certificate of Authenticity for ANB Bank | | | | | |
| 1103 | | Certificate of Authenticity for BBVA | | | | | |
| 1104 | | Certificate of Authenticity for BBVA | | | | | |
| 1105 | | Certificate of Authenticity for Guaranty Bank and Trust Company | | | | | |
| 1106 | | Certificate of Authenticity for Kraken | | | | | |
| 1107 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1108 | | Certificate of Authenticity for GoDaddy | | | | | |
| 1109 | | Certificate of Authenticity for Google | | | | | |
| 1110 | | Certificate of Authenticity for Verizon | | | | | |
| 1111 | | Certificate of Authenticity for Regions Bank | | | | | |
| 1112 | | Certificate of Authenticity for Simple Finance Technology Corp | | | | | |
| 1113 | | Certificate of Authenticity for Signature Bank | | | | | |
| 1114 | | Certificate of Authenticity for Google | | | | | |
| 1115 | | Certificate of Authenticity for Apple | | | | | |
| 1116 | | Certificate of Authenticity for Google | | | | | |

59

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1117 | | Certificate of Authenticity for Google | | | | | |
| 1118 | | Certificate of Authenticity for Vcorp | | | | | |
| 1119 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1120 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1121 | | Certificate of Authenticity for Wynn Las Vegas | | | | | |
| 1122 | | Certificate of Authenticity for Google | | | | | |
| 1123 | | Certificate of Authenticity for Google | | | | | |
| 1124 | | Certificate of Authenticity for Google | | | | | |
| 1125 | | Certificate of Authenticity for Google | | | | | |
| 1126 | | Certificate of Authenticity for Google | | | | | |
| 1127 | | Certificate of Authenticity for AT&T | | | | | |
| 1128 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1129 | | Certificate of Authenticity for American Express | | | | | |
| 1130 | | Certificate of Authenticity for National Air Cargo | | | | | |
| 1131 | | Certificate of Authenticity for McDonald Automotive (Audi) | | | | | |

60

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1132 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1133 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1134 | | Certification of Authenticity for National Air Cargo | | | | | |
| 1135 | | Certification of Authenticity for Access National Bank | | | | | |
| 1136 | | Certification of Authenticity for Coinbase | | | | | |
| 1137 | | Certification of Authenticity for Coinbase | | | | | |
| 1138 | | Certification of Authenticity for Coinbase | | | | | |
| 1139 | | Certification of Authenticity for Navy FCU | | | | | |
| 1140 | | Certification of Authenticity for Apple | | | | | |
| 1141 | | Certification for Google | | | | | |

61

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

---

## KIMBERLEY TEW'S PROPOSED LIST OF EXHIBITS

    Kimberley Tew hereby submits her proposed list of exhibits for the Jury Trial set to commence February 5, 2024, and reserves her right to amend this list.

    Dated: January 25, 2024.

                Respectfully submitted,

                *s/ Jamie Hubbard*

                Jamie Hubbard
                David S. Kaplan
                STIMSON LABRANCHE HUBBARD, LLC
                1652 Downing Street
                Denver, CO 80218
                Phone:  720.689.8909
                Email:   hubbard@slhlegal.com
                kaplan@slhlegal.com

                *Attorneys for Kimberley Ann Tew*

## Certificate of Service

I certify that on January 25, 2024, I electronically filed the foregoing *Kimberley Tew's Proposed List of Exhibits* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

*s/ Brenda Rodriguez*
Brenda Rodriguez

2

CASE CAPTION:  USA v. Tew, et al.

CASE NO.:  20-cr-00305-DDD

EXHIBIT LIST OF:              Kimberley Tew
                     (Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| A | | Rose Management Group 1099s and Declaration | | | | | |
| B | | Miscellaneous Tax Records for Michael Tew (2018-2020) | | | | | |
| C | | 3.15.19 Communications between M Tew and K Tew | | | | | |
| D | | 4.11.19 Communications between M Tew and K Tew | | | | | |
| E | | 4.3.20 Communications between M Tew and K Tew | | | | | |
| F | | 6.13.19 Communications between M Tew and K Tew | | | | | |
| G | | 6.24.19 Communications between M Tew and K Tew | | | | | |
| H | | 7.2.19 Communications between M Tew and K Tew | | | | | |
| I | | 7.15.19 Communications between M Tew and K Tew | | | | | |
| J | | 7.18.19 Communications between M Tew and K Tew | | | | | |
| K | | 8.14.19 Communications between M Tew and K Tew | | | | | |
| L | | 9.18.19 Communications between M Tew and K Tew | | | | | |
| M | | Invoice from Sand Hill to Rose Management Group | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## KIMBERLEY TEW'S PROPOSED LIST OF WITNESSES

Kimberley Tew hereby submits her proposed list of witnesses for the Jury Trial set to commence February 5, 2024, and reserves her right to amend this list.

Dated: January 25, 2024.

     Respectfully submitted,


*s/ amie Hubbard*
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:  hubbard@slhlegal.com
kaplan@slhlegal.com

*Attorneys for Kimberley Ann Tew*

**Certificate of Service**

I certify that on January 25, 2024, I electronically filed the foregoing *Kimberley Tew's Proposed List of Witnesses* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ *Brenda Rodriguez*
Brenda Rodriguez

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### Judge Daniel D. Domenico

Case No.   20-cr-00305-DDD            Date:  January 25, 2024

Case Title:   USA v. Tew, et al.

_____Kimberley Tew_____          WITNESS LIST
(Plaintiff/Defendant)

WITNESS                              ESTIMATED DATE(S) AND
                                     LENGTH OF TESTIMONY

Brittany McNeil                       15 minutes

Tina Schumann                         15 minutes

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

---

## KIMBERLEY TEW'S PROPOSED *VOIR DIRE* QUESTIONS

---

Kimberley Tew submits the following *voir dire* questions for trial:

1. The defendants are charged with a criminal offense. The government has the burden to prove each of the crimes charged beyond a reasonable doubt. Can you hold the government to this standard?

2. The defendants have a constitutional right to remain silent. That means they may not testify in this case. As a juror, the law demands that you not hold their silence against them. Can you follow this law?

3. Have you or anyone in your family ever owned your own business? If so, what kind of business? What was your role in the business?

4. Do you have any family members employed in a bank or other financial institution? Please explain.

5. Have you or a family member ever been the victim of a crime? Please explain.

6. Have you or a family member ever been the victim of a "scam?" Please explain.

7. What is your general opinion on the federal government? Federal law enforcement agents? Federal tax authorities and the IRS?

8. Have you had any interactions with law enforcement? Were those interactions good or bad? Please explain.

9. Have you or anyone in your family ever worked for the federal government? As a regular employee or a contractor? If so, in what capacity?

10. How do you feel about the concept that someone can get a better plea bargain or sentence if they testify against another person in court?

11. The government intends to call numerous witnesses in this case. What impact will the number of witnesses have on your decision?

12. If part of the government's presentation includes voluminous documents and communications, how will the volume of the documents and communications impact your deliberations? Will you be able to look critically at the evidence presented and hold the government to its burden of proof?

13. Are you or any of your family members involved with cryptocurrencies? Please explain.

2

14. Do you have any opinions about cryptocurrency and/or those who are involved with cryptocurrency? How might those opinions affect your ability to serve as a juror in this case?

15. What are your general feelings about gambling and those who gamble? If you hear testimony that one of the defendants is involved with gambling, how might that impact your ability to be fair?

16. Describe your views on the division of responsibilities inside a marriage, specifically with respect to sharing of information with your spouse, managing family finances, and managing electronic devices/accounts/storage systems.

17. Describe your familiarity with cloud-based data storage systems (e.g., iCloud accounts). Do you have any experience with cloud-based data storage systems that could impact your service on this jury?

18. Describe your experience with electronic mail and "spoofed" email addresses. How do you know whether the name assigned to an email address reflects the person behind the email address? What hallmarks do you look for in helping you evaluate the situation? Do you have any experience with "spoofed" email accounts that could impact your jury service?

19. There are two defendants in this case. The government must prove the case against each defendant separately. Each defendant is presumed innocent and you must return a separate verdict for each defendant. Can you agree to follow the law and require that the government prove beyond a reasonable doubt that each defendant is guilty?

20. Defendants Michael Tew and Kimberley are married. How might this impact your service on the jury and your ability to be fair to both defendants?

21. The government has brought multiple charges against each defendant in this case. You must consider separately the evidence that applies to each charge and return a separate verdict on each charge. What impact will the number of charges have on your decision?

Dated: January 26, 2024.

Respectfully submitted,


s/ Jamie Hubbard
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   hubbard@slhlegal.com
kaplan@slhlegal.com

Attorneys for Kimberley Ann Tew

4

## Certificate of Service

I certify that on January 26, 2024, I electronically filed the foregoing *Kimberley Tew's Proposed Voir Dire Questions* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

*s/ Brenda Rodriguez*
Brenda Rodriguez

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

Defendants.

---

## GOVERNMENT'S PROPOSED VOIR DIRE QUESTIONS

---

The United States of America seeks leave to ask any of the following proposed *voir dire* questions, to the extent that these topics are not asked by the Court, and to ask follow-up questions if juror responses tend to warrant further inquiry. The government further seeks leave to ask follow-up questions on any pertinent juror questions submitted by the defendants:

1

## GENERAL BACKGROUND INFORMATION

1.  Please tell us your name; age; and the city where you live.

2.  Could you please tell us where you are currently employed, or where you worked most recently? Have you worked in any other industries?

3.  What grade of education did you complete?

4.  What is your marital status? Do you live with any other adults? (a spouse, roommates, or other family members)?

5.  Can you please tell us who those individuals are, what their relationship is to you, and what industry they work in?

6.  Do you have any children? What are their ages? Where are they employed, and/or what grade of school are they in?

7.  Do you, or does someone close to you, have current or prior experience and/or training in either (a) the legal industry, or (b) the accounting-finance-bookkeeping industries? If yes, please describe.

8.  Have you ever served on a jury before? If yes:

    a.  When and in which court?

    b.  Was it a criminal case or a civil matter? Grand jury?

    c.  If civil: In a civil case, the burden of proof is a preponderance of the evidence. In a criminal case the burden of proof is upon the government to prove the case beyond a reasonable doubt. Do you understand that beyond a reasonable doubt is a higher burden of proof? And you will be instructed by the Court on what the phrase "beyond a reasonable doubt"

2

means? Can you follow the court's instruction?

    d.  Can you tell us about the subject matter of the case?

    e.  Without informing us of the result itself, was the jury able to reach a verdict?

    f.  How did you find your jury experience?

    g.  Did you serve as the foreperson?

9. Has anyone here served as a witness at a trial? Please tell us about that experience.

10. Have you, or anyone close to you, been involved in any legal proceeding with a federal or state governmental agency that was not resolved to your satisfaction? Please describe.

11. Have any of you, or someone close to you, ever been arrested, charged, or convicted for any crime, felony or misdemeanor, other than minor traffic violations? If yes:

12. What was the crime? Was the case resolved in a trial or by a plea of guilty?

    a.  What sentence was imposed?

    b.  Were you [or they] satisfied with the criminal justice process? Why or why not?

    c.  Would that experience interfere with your ability to decide this case fairly and impartially?

13. Have any of you, or someone close to you, ever been a victim of a crime? If yes:

    a.  When did that happen, and what type of crime was it?

b.   Was anyone ever charged for committing that crime?

c.   Was there anything about that experience that would interfere with your ability to decide this case fairly and impartially?

14. What about the criminal justice system more generally? Do any of you have opinions or feelings about the criminal justice system — including of judges, prosecutors, and defense lawyers — that could interfere with your ability to be fair and impartial?

15. As I mentioned, this is a criminal case — Is there anything in your personal experience that would cause you to start off the trial — before hearing any evidence — leaning towards either the government or the defendants?

16. What do you like to do in your spare time? What are your hobbies?

17. What websites do you frequently visit? If you use social media, which social media platforms do you use, and for what purpose?

18. Where do you get your news? (e.g., TV, online, radio, social media, etc.) How often do you read/watch/listen to the news per week?

19. If you watch television, what television shows do you watch regularly?

a.   Does anyone watch any crime TV shows, like Law & Order or Forensic Files? How about true-crime podcasts? If yes:

b.   Which ones? How often?

c.   What about those shows appeals to you?

d.   Do you think these types of shows realistically portray the criminal justice process?

4

e. Do you have any expectations of the government based on watching those shows?

20. Given the COVID-19 pandemic, as well as general cold & flu season, are any of you uncomfortable serving as a juror? Why?

21. This case is expected to involve many written records, such as records from banks and other businesses, as well as summary charts, and audio recordings. Does anyone have any medical conditions — for instance, visual or hearing impairment, or trouble paying attention for long periods — which might affect your ability to fully consider the types of evidence that could be presented?

22. On occasion, over the course of this case, you may hear testimony that involves coarse language and swear words. Would any of you have trouble listening to that evidence?

23. You may also hear testimony or be presented with evidence that references (a) being terminated from a job; (b) drug and/or alcohol use; (b) drug and/or alcohol addiction; (c) addiction to gambling or betting. Would any of you be uncomfortable listening to evidence of that nature?

## GENERAL LEGAL PRINCIPLES

24. It is the judge's job to determine the law that applies to the case, and to tell you that law. It will be your job, as jurors, to determine the facts and apply the law to those facts to see if the government has proved this case to you beyond a reasonable doubt.

a. Does anyone think that they could have difficulty following the law as

5

Judge Domenico gives it you?

   b. Will you determine the facts, apply the law to them, and return a verdict without being swayed by sympathy or prejudice or whether you want a defendant to be punished?

25. The burden of proof is on the government to prove the elements of each charge beyond a reasonable doubt. Reasonable doubt, put simply, is doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case.

   a. If the evidence is insufficient to prove a defendant guilty beyond a reasonable doubt, your oath will require that you come out of the jury room and tell the defendant that you have found him/her not guilty. Can you give me your assurance that you can do that?

   b. But if the evidence proves the defendant committed the crime beyond a reasonable doubt, your oath will require that you come out of the jury room and tell the defendant that you have found him/her guilty. Can you give me your assurance that you can do that?

26. This case involves two defendants and multiple charges — and the government needs to meet its burden of proof beyond a reasonable doubt as to each defendant and to each crime that defendant is charged with. Can you give separate consideration to each defendant and each charge?

27. Is anyone going to think, "Well these are important charges, I do want a little more than a reasonable doubt?" Will anyone require the government to prove

6

the elements of each count beyond a shadow of a doubt?

28. The government is not required to prove a defendant's motive in this case. The government does not have to prove why someone committed a crime —all it has to do is prove the elements of the crime as set forth by the judge. People commit crimes for many reasons. You may find after listening to the evidence that a motive has been established; or you may never determine a defendant's motives. But if the evidence proves beyond a reasonable doubt that the defendant acted with the intent required by the law and he or she committed the crime, can you give me your assurance that you will reach a guilty verdict?

29. In a criminal trial, your duty, as jurors will be to determine whether or not the defendants are guilty of the crimes charged in the indictment, It is the judge's duty to determine what punishment — if any — may be imposed in the event of a guilty verdict.

   a. Will you be able to assess the evidence in the case and reach a verdict without consideration as to the type of sentence or punishment that ultimately might be imposed as a result of your verdict?

30. If you are selected as a juror, you will take an oath to reach a verdict based upon the law as the Court gives it you. In other words, do you understand that, if selected, it will be your obligation to follow the law —even if you personally disagree with it?

31. There are many people who, for a variety of reasons — including personal feelings, political views, religious beliefs, and/or dissatisfaction with the

criminal justice system — may be uncomfortable sitting in judgment of another person.

    a. Does anyone have any beliefs that you believe would cause you to hesitate to reach a verdict of either not guilty or guilty?

    b. Does anyone have any beliefs that might impact your ability to assess the credibility of any witness who might testify in this case? That evidence is expected to include the testimony of victims, law enforcement, fact witnesses, and the defendants.

    c. Do you understand that you may be called on to decide whether someone is or is not telling the truth as part of your assessment of the evidence in this case? Is there anything that might prevent you from being able to do this?

32. Evidence can be direct or circumstantial. Direct evidence is direct proof of a fact, such as a witness's testimony about what he or she personally saw or did. Circumstantial evidence is indirect evidence — in other words, proof of one or more facts from which you can find another fact. Either direct or circumstantial evidence — or both  — can be used to support a criminal conviction. All that is required is that the government meets their burden of proof. Does anyone have any concerns about relying on circumstantial evidence to support a guilty verdict?

    a. Do any of you feel that you would not be able to convict a defendant — despite the strength of any circumstantial evidence — unless there was

direct evidence?

33. Do you understand that the consideration of both types of proof — direct and circumstantial — is part of how we use our reason and common sense every day? Will you bring your reason and common sense to your service on this jury?

## CASE SPECIFIC QUESTIONS

34. This is a criminal case involving allegations of fraud, specifically invoice fraud. In simple terms, fraud is obtaining something — for instance, money — from someone else based on lies, mistruths, or omissions. The government alleges that the defendants conspired to submit false invoices to a business for services that were not rendered, in order to obtain money.

   a. Have you, or someone close to you, ever been the victim of a fraud?

   b. If so, do you believe that experience will affect your ability to sit as a fair and impartial juror in this case?

35. Have you ever had an experience — short of a criminal case — where you were betrayed by someone you trusted?

   a. Do you think that experience will affect your ability to listen objectively to the facts of this case?

36. Do you believe that victims who fall for a fraud bear some responsibility for their losses?

   a. If so, will that belief affect your ability to listen objectively to the facts about how this alleged fraud took place?

37. You may also hear allegations about blackmail or extortion in this case. Has

9

anyone had an experience where you, or someone close to you, was threatened or coerced into doing something that you or they didn't want to?

    a.  If so, will that experience affect your ability to fairly and impartially decide this case?

38. This case also involves allegations of money laundering. Money laundering is essentially taking the proceeds of a criminal act and using it in other ways — for instance, hiding it, mixing it up with legitimate money, or spending it.

    a.  Have you, or someone close to you, ever been the victim of a crime or a fraud where someone took something from you and you couldn't get it back because it was already gone?

    b.  Any similar experiences that fell short of a crime?

    c.  If so, do you believe that fact will affect your ability to sit as a fair and impartial juror in this case?

39. This case also involves allegations of willful failure to file federal income tax returns.

    a.  Does anyone have any feelings or opinions about the Internal Revenue Service that would affect your ability to be fair and impartial to either the defendant(s) or the government?

    b.  Do any of you believe that the income tax laws of the United States are unconstitutional or that it is wrong for the government to impose income taxes?

    c.  Do any of you disagree with the idea that everyone is obligated to obey

10

523

the income tax laws, as well as all other laws of this country?

d.  Do any of you feel that violations of income tax laws should not be prosecuted as crimes by the United States?

e.  Have  you, or someone close to you, ever been audited by, assessed a penalty by, and/or had a bad experience with] the Internal Revenue Service?

f.  Have you, or someone close to you, ever been a member of any organization whose members study, protest against, or otherwise express dissatisfaction with the substance, form, or administration of federal tax laws or federal tax policy generally?

g.  Have you, or someone close to you, ever attended an event organized by or attended by people you thought were so-called "tax protesters"?

h.  Do any of you have a disagreement with any of the Internal Revenue laws of the United States or hold any personal belief that the United States should not regulate the payment of income taxes or that the Internal Revenue Service should not investigate or audit taxpayers.

40. This trial will involve what the law calls a "conspiracy." A conspiracy is an intentional agreement with someone else to do something illegal.  In other words, it can be a violation of the law not just to commit a crime — for example, a bank robbery — but to agree with someone else to commit the robbery in the first place.  Is there anything about this legal concept that causes you concern?

41. For example, the government is not required to prove that the defendant knew

all the other members of the conspiracy or knew all the details about how the activities of the conspiracy were to be carried out. A person may belong to a conspiracy for a brief period of time or play a minor role. Is there anything regarding these aspects of conspiracy law that causes you concern?

42. You will hear evidence that others may have had a greater or lesser role in this case than a defendant. Will anyone have a hard time weighing the evidence as it pertains to each defendant individually, setting aside what others may or may not have done?

43. You will hear evidence in this case that there were associates involved in this case who entered into plea agreements with the government. Would anyone here have a hard time believing a person who entered into a plea agreement with the government?

44. You will also hear evidence that associates in this case cooperated and received recommendations for lower sentences. Would anyone have a hard time believing a person who cooperated, provided information to the government, and received a benefit in return?

45. What is your view of the United States government generally? Would these views affect your ability to be fair and impartial in this case?

46. You may hear testimony from law enforcement officers — including agents with the FBI, IRS, and Homeland Security Investigations — would hearing testimony from a law enforcement officer be any more or less credible to you, from the outset, than that of any other witness?

12

47. Have you read or seen in the news reports involving allegations of misconduct by law enforcement?  How do you feel about those reports?  Is there anything about this knowledge that would affect your ability to be fair and impartial in this case?

48. Do you think it is appropriate as a juror in a criminal case to base your vote on "sending a message" to law enforcement?

49. In this case you will hear about various investigative techniques, including secretly recording conversations with a defendant. Does anyone feel that because the government collected evidence in this manner, they could not be fair and impartial in this case?

50. You will hear that the government collected certain evidence through the use of search warrants — including search warrants of the defendants' home and search warrants to obtain certain electronic evidence, like email and cloud accounts. Does anyone feel that because the government collected evidence in this manner, they could not be fair and impartial in this case?

51. The alleged victim in this case is a larger company, and the two defendants are individuals.

    a. Would anyone here have a hard time holding someone to account, or being fair, knowing that the victim is a company and the defendant is an individual?

    b. Does anyone have strong feelings, either way, about large companies? What about if the person on the other side of the case is an individual?

<div align="center">13</div>

Do you believe anything about the fact that the victim here is a company and the defendants are individuals will affect your ability to sit as a fair and impartial juror in this case?

52. This case also involves larger sums of money than many of us deal with in our everyday lives. Does hearing that cause you any concern about your ability to judge the facts in a fair and impartial manner?

53. Have you, or someone close to you, ever been terminated unexpectedly? Did you receive a severance? Does hearing that this case involves a termination without a severance cause you any concern about your ability to judge the facts in a fair and impartial manner?

54. Have you ever quit or been terminated from a job where you thought you were treated unfairly? If yes, would you ever think it was okay to get back at the company in some way?

55. Have you ever managed other people as part of your work?

56. Have you ever been managed by others?

57. Do you have strong feelings or sympathies — in either direction — towards the manager or the employee?

58. Do you have any personal experience with cryptocurrency?

59. Do you have strong feelings — in either direction — about investing in cryptocurrency?

## CONCLUSION QUESTIONS

60. If you are selected to serve as a juror and hear this case, you will be required

14

to deliberate with eleven other jurors. This will require you to discuss the evidence and the law in this case with those other jurors. Is there anything that might interfere with your ability to deliberate and reach a verdict in this case? Is there anything that may lead you to believe that you might be unable or unwilling to engage in such discussions with your fellow jurors?

61. Is there anything that we have discussed that, perhaps with a little more time to think about it, or anything that we have not covered, that leads you to believe that you might not be the best fit to be an impartial and fair juror in this particular case?

Respectfully submitted this 26th day of January, 2024.

COLE FINEGAN
United States Attorney

By:  */s/ Bryan Fields*

Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:  */s/ Sarah H. Weiss*

Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

16

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

s/ *Sarah H. Weiss*
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
sarah.weiss@usdoj.gov

17

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1.  MICHAEL AARON TEW and
   2.  **KIMBERLEY ANN TEW**,
      a/ka Kimberley Vertanen,

     Defendants.

---

**GOVERNMENT'S RESPONSE TO DEFENDANT KIMBERLEY TEW'S MOTION TO CONTINUE TRIAL AND MOTION FOR ENDS OF JUSTICE CONTINUANCE OF 90 DAYS**

---

Further delay in this matter would not serve the ends of justice and is unsupported by the *West* factors. *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987). This case has been pending for almost three years. Defense counsel has been assigned for over one year, and it has been almost two months since the filing of a *James* log that chronicled, almost day-by-day, the Tews' successful efforts to defraud their victims out of over $5,000,000. Those victims deserve their day in Court. Witnesses — a few  of whom had to prepare to discuss before a jury of 12 strangers vignettes from some of the worst moments of their lives — have been subpoenaed and have made arrangements to travel to Colorado. They, too, deserve an end to their waiting and anxiety. And the public deserves a speedy trial over the

1

allegations in the indictment.

The court should deny Defendant Kimberley Tew's Motion to Continue Trial and Motion for Ends of Justice Continuance, ECF No. 374 (Def. Mot.). *See United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir. 1990) (noting that decisions to deny a motion for a continuance are reviewed for abuse of discretion, which only occurs if denial is "arbitrary or unreasonable and materially prejudice[s] the [defendant].").

Denying the defendant's motion for three more months of delay will cause no material prejudice and — especially because it was filed so shortly before trial and after so many previous continuances — is well within the Court's considerable discretion. *See, e.g., United States v. Maley*, 681 F. App'x 685, 687 (10th Cir. 2017) (finding no abuse of discretion in denying defendant's fourth motion for continuance filed days before trial where court balanced defendant's right to counsel against need to maintain integrity of judicial process, including inconvenience to 35 witnesses and the granting of three prior continuances); *United States v. Davies*, No. 14-cr-362-WJM, 2018 WL 305734, at *2 (D. Colo. Jan. 5, 2018) (denying motion for continuance where case had been set for trial for three years after indictment); Order, *United States v. McFadden*, 19-cr-00243-CMA, ECF No. 108 at (Oct. 19, 2022) (denying motion for a continuance because, among other reasons, counsel had nine months to prepare but filed motion only two-and-a-half weeks before trial and raised only issues pertaining to long-disclosed evidence) [Exhibit 1].

2

I. **The defendant has had over nine months to review the discovery and almost two months to raise issues first identified by the government's *James* filing  so I would change this to defense counsel has had – clearly the defendant has had 4 years.  And why is it nine months?  I thought Kaplan has been on the case for a year?**

The first *West* factor—the diligence of the party seeking the extension—does not support a continuance here. The defendant has been aware that "[d]iscovery in this case is voluminous," Def. Mot. at 1, since the last time she filed a motion for a continuance in March 2023. ECF No. 315 (describing accurately the immense volume of digital evidence). The only thing that appears to have changed is that she finally looked at that information in detail in late December while sitting through the *James* hearing.

As counsel for Michael Tew put it at that hearing: this is not a particularly complicated case. It involves two defendants who submitted false invoices to illicitly obtain millions of dollars, most of which was deposited directly into their personal and business accounts. Nothing about the actual allegations are "so unusual or complex" as to make it "unreasonable to expect adequate preparation for pretrial proceedings or for trial itself within the time limits" of the Speedy Trial Act. 18 U.S.C. § 3161(h)(7)(B)(ii). The only thing that makes this case even somewhat out of the ordinary is the massive quantity of evidence supporting the charged fraud and money laundering conspiracies. But the government accommodated that concern and the Court already addressed it when it granted Kimberley Tew's request for a *120-day* exclusion in March 2023 so that her third lawyer could prepare to properly

3

advise her. ECF No. 315.

The court should keep in mind that the major item of evidence identified in the motion as requiring additional defense review is *the defendant's own telephone and associated iCloud account*, which she has had access to in its original, user-friendly and completely searchable format since well before the grand jury even returned the indictment against her. The defendant was and is more than well equipped, with her historical knowledge of her own telephone habits, patterns, contacts and conversations, to provide her counsel with any and all available information casting doubt on the attribution of text messages stored in her iCloud account.

It is unclear why or how the defendant could not have anticipated that a repository of correspondence with co-conspirators and other trial witnesses would become a significant component of the prosecution, nor why she could not "untangle" the evidence on her own phone and iCloud account to find impeachment evidence. Def. Mot. at 2-3. Also left unexplained is why the defendant — unique among the various stakeholders here in having singular personal knowledge about her own communications — would find any review of her own digital accounts to be "slower than anticipated." These failures of explanation are, by themselves, a reason to deny the motion. *United States v. Toombs*, 574 F.3d 1262, 1272 (10th Cir. 2009) (" "Simply identifying an event, and adding the conclusory statement that the event requires more time for counsel to prepare, is not enough.")

The government emphasizes here that Kimberley Tew's lead counsel has

<div align="center">4</div>

decades of experience successfully representing defendants confronting sophisticated charges in high-stakes matters with complicated evidentiary issues. The government has no doubt that current counsel have exercised diligence in preparing for trial and recognizes that they are skilled, thorough, effective, and competent.

Through the motion, it becomes clear that any problem must be with the diligence of the *party* — Kimberley Tew — and not her lawyers. The record in this case evinces the defendant's steadfast refusal to actually engage with her *three* prior lawyers over the past three-and-a-half years and who has, instead, pursued every possible avenue to delay the day of reckoning. To the extent more information is needed regarding the authenticity of the defendant's own text messages, there can be no other explanation than that the defendant herself has stymied counsel's progress by failing to participate in her own defense. The defendant should not be permitted to postpone justice in this matter by manipulating the system related to the appointment of counsel and then frustrating that appointed counsels' ability to prepare for trial. *United States v. Willie*, 1941 F.2d 1384, 1390 (10th Cir. 1991) (noting "there must be some limit to the defendant's ability to manipulate the judicial system," and identifying the myriad ways in which clients can use tactical disengagement with counsel as a delaying tactic).

If there really are genuine issues of "authentication and foundation," Def. Mot. at 2, the defendant could and should have been aware of that issue almost

5

immediately.[1] The time to consult with an expert was in April or May 2023, after initial review of the file from Apple provided in its native form by the Filter Team. It is not now, fewer than ten days before trial. The motion is another delay tactic that should be denied.

## II. The defendant has not demonstrated how 90 more days of delay will be useful, let alone necessary

The second and fourth *West* factors — the likelihood that a continuance will accomplish the stated purpose and the need for the asserted continuance — similarly weigh against further delay.

The defendant is essentially asking for 90 days to make authenticity arguments or to challenge attribution of messages that have been available to her since the inception of this case.[2] But she fails to explain how — even if she is successful — why an expert would do anything she isn't already capable of doing through cross-examination and a comparison of the government's evidence of the text messages with her native copies of the same.

---

[1]     The business records that Apple provided, along with a declaration certifying that the government's exhibits are derived, by reliable electronic means, from a true and correct copy of the kley@me.com account, is one of the government's 902(11) and (13) certifications. The defendant has been afforded multiple opportunities to challenge the governments' certifications, *first*, orally at the *James* hearing; *next*, in a subsequent written filing, *see* ECF No. 360; and *finally*, by "*specific* objections to those declarations," which are due to the court on January 29. ECF No. 367 at 10-11. To date, the defendant has raised no such specific objection.

[2] Setting aside the defendant's own access to her personal accounts, the *James* log filed over seven weeks ago provided citations to the discovery for every single text. And the defendants received courtesy copies of every single text a week later, on December 14, 2023.

6

Nor does she grapple with a simple legal principle already ruled upon by this court: Attacks on the *attribution* of a particular message, whether to her or to a co-conspirator, do not go to that evidence's *admissibility*. The government made this point clear in its *James* proffer. *See* ECF No. 341 at 8, 10, 11 (citing *United States v. Martinez*, 430 F.3d 317, 326 (6th Cir. 2005); *United States v. Ayalaa*, 601 F.3d 256, 268 (4th Cir. 2010)). Defense counsel conceded that point at the time, both by not raising the argument in the more general sense that she describes it now, and also by failing to challenge many of the messages she now targets in her response to the *James* log. ECF No. 341-1. *See* ECF No. 346 (responding to government's *James* proffer without raising any legal issues related to attribution, authenticity, or foundation). The methods used by the witnesses to make attributions were also discussed at the *James* hearing itself. The court has heard all of these arguments, and it has ruled: the vast majority of the statements in the government's *James* log were in furtherance of a conspiracy, and have been provisionally deemed authentic (at least as to the first layer of hearsay). ECF No. 361 at 12; ECF No. 367 at 6. To the extent that the defendant seeks to question the government's witnesses on the technology, the Court has expressly carved a lane for that avenue of cross-examination. ECF No. 367 at 9.

The Court's provisional ruling as to the admissibility of the co-conspirator statements largely undermines the basis for the defendant's motion stated now. because the court has also already ruled as a matter of law that questions over who received a particular message "[do] not matter." This is because the sort of doubts

7

the defendant now states that she needs to explore do not go to whether the statement actually furthered the conspiracy, but rather, "whether it was meant to." ECF no. 361 at 8 (citing *United States v. Reyes*, 798 F.2d 380, 384 (10th Cir. 1986) and quoting from *United States v. Piper*, 298 F.3d 47, 53 (1st Cir. 2002); *Id.* at 7 (quoting Charles Allan Wright & Arthur R. Miller, Federal Practice and Procedure § 6778 (2023 ed.).

Given this clear legal guidance, the defendant cannot explain how an additional ninety days will make any appreciable difference to the trial: even if attribution to a particular *phone* is successfully attacked, the court has ruled that the messages are in furtherance because they can be attributed to the *conspiracy*. Absent some other successful objection based on another rule of evidence, the jury will get to see these messages anyway and the defendant will be left to argue to the fact-finders that her questions regarding attribution cast reasonable doubt as to her guilt. That she now wishes that she had time to secure expert testimony to assist her in that regard  cannot justify continuing this trial ten days before it is scheduled to start, thereby inconveniencing this Court, prospective witnesses, and the government, all while thwarting the interests of the public in a speedy trial.

Attribution and authentication issues were also already litigated as part of the government's motion *in limine*. ECF Nos. 344 (Gov't Mot.); 360 (Def. Resp.). The Court gave the defendant ample time to file a response brief describing her concerns about attribution, which is, of course, a legal argument derivative of authentication or foundation issues. *That* would have been the obvious time to ask for a possible

8

continuance to consult with an expert or to raise related arguments regarding the admissibility of the government's exhibits. But the defendant made no such arguments when given the fair opportunity to do so, and the moment has passed.

The defendant has had *years* to analyze the digital evidence and numerous opportunities to file motions, raise issues of concern, or ask for more time. The fact that she declined to make these arguments — despite the previous extensive litigation and their now-professed importance — means that such arguments should be deemed waived. Asking for 90 more days to prepare what is effectively a motion for reconsideration premised on waived arguments is not good cause for a continuance.[3]

### III.    A continuance prejudices the government, the public, and the victims.

For all of the reasons above, denying a continuance will not prejudice the defendant. But it will prejudice the government, and it will thwart the public's interest in vindicating its constitutional right to a speedy trial.

The United States is obligated to protect the interests of the public in a

---

[3] The example cited by defense counsel in the brief illuminates clearly that the delay will be geared at re-litigating issues that have already been raised and waived. The brief complains about the attribution in *James* log entry 56. Def. Mot. at 2. But the Court has already explained in its order, "context clues and other characteristics of various messages are sufficient to deem those messages authentic under Rule 901." ECF No. 367 (citing *United States v. Fluker*, 698 F.3d 988, 999 (7th Cir. 2012) as an example of how messages can be authenticated based on context). That message — to the number used by MM — references "Kimberley" in the third person and discusses the participants' respective wives. It is, based on context, clearly from Michael Tew. The Court found this message to be in furtherance of the conspiracy. Giving the defendant 90 days to develop additional arguments to attack the Court's ruling is not a valid reason for a continuance.

speedy trial. The Speedy Trial Act protects not only the defendant's constitutional right to a speedy trial but also "the public interest in ensuring prompt criminal proceedings." *United States v. Hill*, 197 F.3d 436, 440 (10th Cir. 1999). The statute was "designed with the public interest firmly in mind." *Toombs*, 574 F.3d at 1273. Therefore, "[i]t is the responsibility of not only the district court, but also the government, to protect the interests of the public by ensuring adherence to the requirements of the Speedy Trial Act." *Id.*

To grant the requested exclusion of time, the Court must find that "the ends of justice served by [the continuance] outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In balancing these interests, the Court considers the applicable factors under section 3161(h)(7)(B), including whether the failure to grant a continuance would be likely to result in a miscarriage of justice, or whether denial would unreasonably prevent adequate and effective preparation for trial. *Id.* § 3161(h)(7)(B)(i), (ii), (iv).

The victims in this case also have a right to speedy trial. *See United States v. Fraley*, 2023 WL 409700, at *5 (6th Cir. 2023) (denying continuance, district court properly considered victims' rights to speedy trial); *United States v. McDaniel*, 411 F. Supp. 2d 1323, 1325 (D. Utah 2015) (noting that substitutions of counsel can frustrate speedy trial rights of both defendants and victims). Further, crime victims have a statutory "right to full and timely restitution as provided in law," and "the right to proceedings free from unreasonable delay," 18 U.S.C. § 3771(a)(6), (7).

10

The owners of NAC — victims of the betrayal of their former CFO and of the defendant, and a former contractor — have been awaiting justice for almost three-and-a-half years. Continued delay negatively impacts the prosecution's ability to vindicate victim rights, given the natural consequences of delay, such as witnesses' memories fading and witnesses becoming more likely to be unavailable due to death or infirmity. Over the passage of time, restitution and forfeiture become more elusive, as well. The victims' interest in a speedy trial outweighs defendants' need for yet another continuance.[4]

Additionally, there are significant logistical issues with moving the trial date. Many witnesses will be travelling from out of state, taking time out of otherwise busy work schedules and making arrangements to satisfy their personal responsibilities. The United States has served trial subpoenas on its witnesses for the February 5 trial date; for many of the witnesses this is the second time they have been subpoenaed. These witnesses' willingness to comply with subpoenas and provide their testimony to a jury in the interests of justice does not mean that they deserve to be subjected to a repeated upending of their lives. In sum, a continuance would undermine the public's, the victims', and the Government's interest in a speedy trial.

On the other side of the scale, denial of the requested continuance is not likely to result in a miscarriage of justice, because adequate time has been provided to address the issues raised in the defendant's motion. 18 U.S.C. § 3161(h)(7)(B)(i).

---

[4]     The motion is unopposed by Michael Tew. *See* ECF No. 373 at 1.

11

The 1,087 days since the Grand Jury returned its indictment (or even just the 388 days since counsel entered his appearance) have been sufficient time for effective preparation, taking into account the exercise of due diligence. *Id.* § 3161(h)(7)(B)(iv), (ii).

Should the Court determine a continuance is appropriate, the United States respectfully submits that sufficient time should be excluded from the speedy trial clock to permit trial in late June 2024. Trial after the currently set date but before June 2024 would unreasonably deny the Government continuity of counsel and, relatedly, prevent adequate preparation for trial. 18 U.S.C. § 3161(h)(7)(B)(ii), (iv). Undersigned counsel have invested significant time to prepare for trial; they are deep into trial preparation and have personally met with witnesses and victims. AUSA Fields is set for a four-day trial on March 18, 2024, *United States v. Robinson*, 23-cr-274-RMR, and then a thirteen-day trial in a complex international foreign exchange fraud case featuring numerous international witnesses set to begin on April 29, 2024, *United States v. Stewart*, 21-cr-000034-WJM. Both cases have already been reset several times and further delay is extremely unlikely. Given those obligations, if trial does not begin as scheduled in ten days, AUSA Fields will need time in March and April to prepare witnesses and other materials for the other cases' trials, and then will immediately need to return to this case in May once again prepare for this trial. The Government has planned its staffing around the current, long-set, February 5, 2024 trial date and respectfully requests

12

that, if moved again, it be set in or after June 2024 to avoid another reassignment of counsel that prejudices the Government and potentially leads to further cascading delays.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:    */s/ Bryan Fields*                   By:    */s/ Sarah H. Weiss*
Bryan Fields                                Sarah H. Weiss
Assistant United States Attorney            Assistant United States Attorney
U.S. Attorney's Office                      U.S. Attorney's Office
1801 California St. Suite 1600              1801 California St. Suite 1600
Denver, CO 80202                            Denver, CO 80202
(303) 454-0100                              (303) 454-0100
Bryan.Fields3@usdoj.gov                     Sarah.Weiss@usdoj.gov
Attorney for the Government                  Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Bryan Fields*
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case its granting would necessarily involve the court making the necessary findings of fact to exclude time and denial will keep the case on track to be tried on February 5, 2024, within the calculated speedy trial deadline.

13

**CERTIFICATE OF SERVICE**

I hereby certify that on January, 26 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

*s/ Bryan Fields*
United States Attorney's Office

14

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW,

      Defendant.

---

## DEFENDANT MICHAEL TEW'S PROPOSED *VOIR DIRE* QUESTIONS

---

Defendant Michael Aaron Tew submits the following *voir dire* questions for the panel:

1. Have any of you heard anything about this case from the media, online, or from other people?

2. Based on media coverage of other federal criminal matters frequently in the news, has anyone developed an opinion about the U.S. Department of Justice, the Federal Bureau of Investigation, or the Internal Revenue Service acting in a political manner?

3. Has anyone had any personal interactions with law enforcement or are you related to or close friends with any law enforcement officers? Were your experiences with law enforcement positive or negative? Please explain.

4. Does anyone believe the federal government is too large or shouldn't be getting involved with so many parts of society? Does that include private financial matters?

5. Has anyone themselves been or had a close family member who was ever the victim of a crime? If so, please explain.

6. Have you or a close family member ever been "ripped off" or the victim of a scam?

Did you report it to the police?  Was anything done about it?

7.  How did you react upon receiving your jury summons to court here today? Were you happy? Frustrated? Anxious? Annoyed? Please explain.

8.  How do you feel about the idea that someone can get a better deal or possibly a lower sentencing by cooperating with authorities against someone else? Would you judge that person's credibility differently knowing that they were receiving consideration for their testimony?

9.  Have you or a close family member ever struggled with addiction of any kind? If so, please explain as you are comfortable.

10. Defendants Michael Tew and Kimberley Tew are married. Does anyone believe that they would struggle to treat each defendant individually or be unable to separate them as distinct people and independently consider their individual personalities?

11. Every defendant has a constitutional right to remain silent. This means that no defendant must testify. As a juror, would you hold it against a defendant that did not take the witness stand on their own behalf even though they do not have to do so?

12. Will anyone be offended if the prosecution presents evidence of personal communications between a husband and a wife that were obtained by the federal government?

13. Can anyone think of a reason why a defendant would not want to testify?

14. If the government's case includes evidence that someone has a large number of bank accounts, how does that make you feel? Would such evidence cause you to believe that a person was up to no good?

15. Does anyone have a strong opinion about charging someone with a crime for allegedly

not filing federal income tax returns?

16. How do you feel about people that do not file income tax returns on time?

17. Does anyone have any family or professional commitments (such as two working parents of small children) that would make it particularly challenging for them and their family if they served on the jury?

DATED this 26th day of January, 2024.

       /s/  Jason D. Schall     
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com

       /s/  Kristen M. Frost     
Kristen M. Frost
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200
Denver, CO 80202
Telephone: (303) 629-9700
Facsimile: (303) 629-9702
E-mail: frost@ridleylaw.com

Attorneys for Michael Aaron Tew

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

       /s/  Jason D. Schall     
Jason D. Schall

## STATEMENT OF SPEEDY TRIAL IMPACT

Pursuant to Judge Domenico's Practice Standard III(C), undersigned counsel notes that this filing has no effect on the speedy trial clock.

<div align="right">

/s/ Jason D. Schall
Jason D. Schall

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on January 26, 2024, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

AUSA Bryan Fields
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov

David Kaplan / Jamie Hubbard
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80203
(720) 689-8909
kaplan@slhlegal.com
hubbard@slhlegal.com
*Attorneys for Kimberley Ann Tew*

I hereby certify that I will mail or serve the filing to the following participants:

Mr. Michael Aaron Tew (defendant)

<div align="right">

/s/ Jason D. Schall
Jason D. Schall

</div>

Just IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1. **MICHAEL AARON TEW,** and
    2. KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS *IN LIMINE* REGARDING THE USE OF PROFFER AGREEMENTS IN THE UNITED STATES' CASE IN CHIEF

---

Nothing in the Constitution endorses the conclusion that criminal defendants — especially those who sign binding legal agreements and are fully advised by capable attorneys — can peddle one story to the prosecution and another to a court without consequence. Consistent with the law in every circuit to address the issue, the Court should enforce the clear and unambiguous language of the proffer agreements, deny the Defendants' respective motions *in limine*, ECF Nos. 370 and 373, and further the "laudable policy" of "encouraging defendants to tell the truth during both plea negotiations and subsequent trial." *United States v. Dortch*, 5 F.3d 1056, 1069 (7th Cir. 1993). That policy will be furthered by proceeding to trial, as scheduled, on February 5.

1

## I. Enforcing proffer agreements "enhances the truth-seeking function of trials" and yields "more accurate verdicts"

The law is clear. Agreements that voluntarily waive the protections otherwise afforded by Rule 410 are enforceable. *United States v. Mitchell*, 633 F.3d 997, 1003-1006 (10th Cir. 2011) (analyzing *United States v. Mezzanatto*, 513 U.S. 196, 2010 (1995) in detail and finding no error in district court's decision to admit defendant's plea statements during government's case-in-chief).

For good reason: such a waiver "encourages criminal defendants to present defenses at trial that are not fraudulent." *United State v. Rebbe*, 314 F.3d 402, 408 (9th Cir. 2002)

Indeed, the defendants' own citations are completely in line with the entire body of law surrounding *Mezzanatto* waivers. For example, Michael Tew cites the Tenth Circuit's decisions in *Jim* and *Mitchell*. M. Tew. Mot. at 4 and 7 (citing *United States v. Jim*, 786 F.3d 802, 810 (10th Cir. 2015) and *Mitchell*, 633 F.3d at 1003); ECF No. 373 at 3 (adopting M. Tew's legal arguments). The defendant in *Jim* — just like Michael and Kimberley Tew — entered into an agreement waiving his rights under Rule 410. Then — just like Michael and Kimberley Tew — he got a new lawyer, decided he no longer liked his agreement, and moved *in limine* to exclude his proffered confession. The district court enforced the agreement and the Tenth Circuit affirmed. *Mitchell* similarly involved a client disappointed with the outcome of his plea negotiation who, after proffering, got a new lawyer to take his case to trial. The defendant ultimately found himself similarly disappointed. *Mitchell* 633 F.3d at 1003-1006.

2

These outcomes are the logical conclusion to the Supreme Court's reasoning in *Mezzanato*. The defendants' waivers do nothing to put at risk a fair proceeding under the law. Indeed enforcing the waivers serves the opposite effect. As Justice Thomas explained, "the admission of plea statements for impeachment purposes *enhances* the truth-seeking function of trials and will result in more accurate verdicts." *Mezzanato*, 513 U.S. at 204; *see also id.* at 205 ("Under any view of the evidence, the defendant has made a false statement, either to the prosecutor during the plea discussion or to the jury at trial; making the jury aware of the inconsistency will tend to increase the reliability of the verdict without risking institutional harm to the federal courts.").

The Supreme Court's concerns in *Mezzanato* over the integrity of the judicial process found receptive audiences in the Courts of Appeals. The Tenth Circuit does not stand alone in its willingness to enforce these types of proffer agreements. As far as the government can tell, every circuit to consider the issue has enforced similar agreements that included Rule 410 waivers. *United States v. Hardwick*, 544 F.3d 565, 570 (3d Cir. 2008) (cataloging cases from Second, Seventh, Ninth and D.C. Circuits finding waiver triggered where defense counsel used cross examination to imply facts inconsistent with proffer); *United States v. Sylvester*, 583 F.3d 285, 289 (5th Cir. 2009); *United States v. Young*, 223 F.3d 905, 911 (8th Cir. 2000). The defendants give this Court no reason to disregard the force of this near-uniform body of caselaw. [1]

---

[1] At least one district court has refused to enforce a proffer agreement. *United States v. Duffy*, 133 F. Supp. 2d 213 (E.D.N.Y. 2001; *but see United States v. Velez*, 354 F.3d 190, 195 (2d Cir. 2004) (criticizing *Duffy*).

3

## II.   Proffer agreements provide benefit to all parties in the criminal justice process

### A.   The proffer agreements offer mutual benefits

The reality is that "criminal justice today is for the most part a system of pleas, not a system of trials." *Laffler v. Cooper*, 566 U.S. 156, 170 (2012). The Tenth Circuit recognizes this in its pattern jury instructions: "Plea bargaining is lawful and proper, and the rules of this court expressly provide for it." 10th Cir. Pattern Jury Inst. § 1.15 (3d ed. 2021). This means that while defendants have the absolute and cherished right to remain silent, courts and defense attorneys have recognized that silent defendants cannot make successful pleas for leniency.

Accepting the position defendants advance here would undermine countless opportunities for reasonable negotiated resolutions, gutting the settled expectations of the parties' proffer agreements, which are specifically designed to lower each sides' risks while encouraging candid discussions that help everyone evaluate cases based on accepted facts. For prosecutors, proffer agreements "buy" the reliability assurance that accompanies a waiver agreement. *Mezzanatto*, 513 U.S. at 208. For defendants, proffer agreements strengthen their hand in negotiations by leveraging what they "sell" — their credibility —under conditions designed so that deceit is more costly and thus less likely. *United States v. Krilich*, 159 F.3d 1020, 1024-25 (7th Cir. 1998); *see also Mezzanatto*, 513 U.S. at 208. Without the ability to enter into "*Mezzanatto* waivers" mutual distrust and anxiety over the high stakes of failed negotiations might mean many fewer discussions, to the detriment of criminal justice.

The Tews' proffer agreements capture this mutual give-and-take. The

4

government pays the "cost" of a defendant's information by making the promises in

paragraph 2, in return for the benefits in paragraph 3.[2] *E.g.,* ECF No. 370-1 at 2. In

return, the defendant agrees to pay the "cost" of any attempted deception down-the-

line, as outlined in paragraph 4, and made possible by paragraph 5. *E.g.,* ECF No.

370-1 at 4. Importantly, whether to pay that "cost" — by trying to offer competing

accounts to two different audiences — is completely up to the defendant, as outlined

in paragraph 4. *E.g.*, ECF No. 370-1 at 2 (noting that information can be used only if

the *client* takes certain actions). The reciprocal and hoped-for benefits arising from

the parties' mutual consideration is the *truth*, as contemplated in paragraphs 1 and

7. *E.g.* ECF No. 3701-1 at 1 and 3.

### B. The upside benefits of the agreement are virtually always made available to those with legal counsel, who are tasked with ensuring that the potential downside risks are also knowingly and intelligently understood

*Mezzanatto*'s recognition that Rule 410 waivers can actually produce *better*

outcomes for all stakeholders is the animating force behind the uniform consensus of

the Courts of Appeals' decisions outlined above. But Courts have coupled these

abstract ideals with a clear-eyed view of their dangers. Any agreement giving up a

right must be "knowing and voluntary." *Mezzanatto*, 513 U.S. at 210. For that reason,

this Office requires that defense counsel review and explain the agreement's terms

and provisions to the client prior to signing. *See* ECF No. 370-1 at 3 and 373-1 at 4

and 7 (requiring defense counsel to sign statement "I acknowledge that I have read

---

[2]     The government's promises are cabined by paragraph 6 (making clear
agreement does not impart transactional immunity).

this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.").

## III. The defendants knowingly and voluntarily signed clear and unambiguous agreements

### A. Michael Tew acknowledges that he entered his agreement knowingly and voluntarily

The court should take defendant Michael Tew at his word that "[i]t cannot reasonably be argued . . . that Mr. Tew did know that his statements to federal authorities could be used against him if he later changed his version of events." ECF No. 370 at 6. Likewise, the court should make the "reasonable inference" he admits, namely that "Mr. Tew also knew, and agreed, that he could not affirmatively present evidence to the contrary." *Id.*

### B. Kimberley Tew is represented by the same lawyer who advised her to enter the agreement and does not make any arguments that it was unknowing or involuntary

For her part, Kimberley Tew does not challenge the waiver itself; instead, she now suggests (but does not explicitly say) that, if the government's interpretation is correct, then her waiver was not knowing and voluntary. ECF no. 373 at 5. That implicit argument has been soundly rejected elsewhere. *Krilich*, 159 F.3d at 1026 ("No party to a contract has Humpty Dumpty's power over language either directly or through the gambit that unanticipated consequences render the agreement "involuntary.").

Kimberley Tew's argument is, of course, also further complicated by the fact that it is being raised by the exact same defense counsel who advised Ms. Tew to sign

6

the agreement in the first place. Given the obvious attorney-client privilege questions raised, the government cannot participate fully or effectively in a hearing about those questions at this stage of the proceedings, especially when the lawyer involved could also be a fact witness. Because the defendant has not explicitly stated that she is contesting the knowing and voluntary nature of an agreement she signed — one which contained an express acknowledgment that she entered into it "voluntarily, knowingly and willfully" — with an experienced attorney who also acknowledged discussing each provision of the agreement her client — the issue should be deemed waived. The complexity of this situation proves the point: the law provides very specific vehicles for appeals and collateral attacks, and determinations on this issue should be left to those forums rather than upending this trial.

### C. The proffers speak for themselves, and the Court can decide the meaning of the language as a matter of straightforward contract interpretation

The defendants are not even really saying their agreements were entirely unknowing or involuntary. The Tews clearly understood at some level they were giving up their Rule 410 rights. *That* fundamental waiver is what must have been knowing and voluntary, not all of the possible expressions of it. *Krilich*, 159 F.3d at 1026. In any case, this is not a situation where the consequences are so ambiguous as to cause concern. All parties entered the agreements with the same basic intent — to encourage truth-telling by raising the costs of deceit. *United States v. Barrow*, 400 F.3d 109, 117 (2d Cir. 2005) (recognizing a proffer agreement is like a contract that, as an issue of law, must be interpreted to give effect to the intent of the parties.)

Moreover, the defendants raise their challenge in the vaguest of terms, simply

7

asserting that they "contest" the language of the *Mezzanatto* waiver, without describing the actual language they take objection to and without any textual analysis or law. It is too late for the defendants to raise such textual arguments now, and those arguments should be deemed waived.

Moreover, it bears note that their motions effectively launch a broadside attack against the U.S. Attorney's Office itself, by claiming that this Office regularly enters into unconstitutional proffer agreements in its standard proffer agreement language.

Not so. A straightforward reading of the standard proffer language confirms the government's interpretation. Taking the Tews' *Mezzanatto* waivers, statement-by-statement, a clear textual interpretation follows:

**"The government may [] use . . .**

- **"any statements made by your client during the proffer . . . ."**

    - The word "any" makes the waiver absolute. If one statement is contradicted, any statement from the proffer can come in.

- **"either as evidence or for cross-examination"**

    - The government is permitted two opportunities at trial to put on its evidence: (1) in its case-in-chief; and (2) on rebuttal.

    - The proffer language does not limit the waiver to rebuttal, as defendants suggest. In fact, the word "rebuttal" never appears. It is a basic principle of textual analysis that words that do not appear in the text are not read in, especially in the face of a clear reading to the contrary.

    - This interpretation is furthered by the contrasting reference to "or for cross-examination." Obviously, the government cannot cross-examine its own witnesses. If the phrase "as evidence" did not include the government's

8

case-in-chief, this phrase would instead read "either in its rebuttal case or for cross-examination."

- Under the defendants' interpretation, the government would have no means of countering any positions taken by the defendant in contradiction to their proffer statements, unless (1) the defendant himself testified, or (2) otherwise presented an affirmative case for his defense.

- This interpretation leads to absurd results that would essentially eviscerate the consideration provided to the government under the *Mezzanatto* waiver. Effectively the defendants suggest the government has entered into a contract which, through a defendant's careful legal stratagem, would provide no benefit on the other side. As with all contracts, there must be consideration on both sides for the contract to have effect.

- For example, the defendants seem to suggest that what they agreed not to do for themselves can instead be done if performed only through their agents, in the form of contradictory statements in openings, or by raising doubt throughout the government's case-in-chief by means of cross-examination. The defendants' position expects the government to sit on its hands and let such insinuations remain unimpeached and uncontradicted throughout its own entire case-in-chief. This manipulation would perpetrate clear fraud on the jury, and puppeteering of this sort would put every defense counsel in the unenviable position of risking his or her duty of candor to the court.

- **"at trial or any other stage of the criminal prosecution"**

  - The waiver applies at trial; pre-trial proceedings; and at sentencing

- **"if your client later testifies, offers evidence, <u>or presents a position</u> (including through affidavit <u>or in argument</u>) that contradicts statements made by your client during the proffer."**

  - Under rudimentary textual interpretation principles, every phrase in the list of "later testifies," "offers evidence," and "presents a position," must be given meaning. The defense's interpretation — which would allow a defendant

9

> to contradict his proffer statements, so long as he did so only in opening statements or through cross-examination — would, once again, render the phrases "offers evidence," "presents a position," and "in argument" surplusage.

- ▪ The final words in this phrase make clear that the *Mezzanatto* waiver is only triggered when a defendant contradicts their proffer. Otherwise, the government must adhere to paragraph 2 of the agreement and fully honor Rule 410's evidentiary exclusions.

The language is clear, and the defendants' arguments should be dismissed on the merits. Courts have had no hesitation in enforcing legally indistinguishable language of similar breadth in the exact same way that the government proposes.

To take but one example of a case with similar language to the Tews' agreements, in *Barrow*, 400 F.3d. at 118, the court examined the phrase "any evidence" in a challenged *Mezzanatto* waiver. The Second Circuit reasoned that such language carried "expansive intent," one that extended beyond formally admitted evidence and which encompassed any "factual assertions" at "any stage of the prosecution." As a result, the court ruled that "[f]actual assertions made by defendant's counsel in an opening argument or on cross-examination plainly fall within this broad language."); *Rebbe*, 314 F.3d at 406 (ruling that, if breached, the *Mezzanatto* waiver allowed the government "to rebut any evidence, argument or representations" made by the defendant or on his behalf at trial).

In summary, the Tews' *Mezzanatto* waivers are clear, as is the law applying them. To quote Judge Easterbrook's explanation:

> Evidence is evidence, whether it comes out on direct or cross-examination. One can "otherwise present" a position through argument of counsel alone, so it is easy to see how a position can be

10

"presented" by evidence developed on cross-examination and elaborated by counsel.

*Krilich*, 159 F.3d at 1025-26 (7th Cir. 1998) (affirming use at trial of proffer statements as a result of defense counsel's cross examination questions).

## IV.   There is nothing unconstitutional about enforcing agreements that prevent the defendants from engaging in deceit.

To be sure the Tews' find themselves in dire circumstances, having boxed themselves into a corner of their own making. The defendants now pray to this Court for relief, arguing that they "sign[ed] away" their constitutional trial rights. ECF No. 370. at 7; ECF No. 374 at 203.  Not so. The Tews *can* present their individual defenses — even those that are inconsistent with the proffers — they just have to confront the consequences of that choice.

As the Ninth Circuit put when analyzing a similar (though narrower) proffer agreement, "[the defendant] was still free to make any arguments or ask any questions he wished to at trial. The only limitation on [the defendant's] right to present a defense was that if he presented evidence or arguments that were inconsistent with his proffer statements, the Government could introduce his proffer statements in rebuttal." *Rebbe*, 314 F.3d at 408; *see also United States v. Velez*, 354 F.3d 190, 196 (2d Cir. 2004) ("Finally, a defendant remains free to present evidence inconsistent with his proffer statements, with the fair consequence that, if he does, the Government [is] then ... permitted to present the defendant's own words in rebuttal. With this avenue open to him, a defendant who has consented to a waiver provision like the one at issue here has not forfeited his constitutional right to present

11

a defense, to the effective assistance of his counsel, or to a fair trial.") (citation and quotation omitted).

The Tews have this same choice. That it is a difficult one is precisely the point of the parties' agreement.

To be clear, Michael and Kimberley Tew can each present a defense. They are each free to make unfettered opening statements, to reserve their openings for their defense case, or to forego openings entirely. They are free to exercise the wide (though not wholly unfettered) right to cross-examine the government's witnesses as they see fit. They can call their own witnesses, and they can admit their own evidence. They retain the right to testify fully in their own defense. Each will have the opportunity to present a vigorous closing argument. In short, at every stage of the proceeding, they will have precisely the same rights accorded to every other criminal defendant in this country, as they should and as the constitution requires. *Rebbe*, 314 F.2d at 408 (noting that, even in shadow of a proffer agreement, defense counsel can challenge sufficiency of evidence, impeach credibility, challenge knowledge and qualifications of witnesses, challenge inconsistencies in evidence, and ask about witnesses' motives).

The only thing the proffer agreements do here is ensure that the jury will know more about Michael and Kimberley Tew, including that they told a different audience different things on different days. Nothing about this is unconstitutional. *Rebbe*, 314 F.2d at 408 (rejecting as "without merit" similar argument that a proffer agreement deprived defendant of his right to present a defense); *Velez*, 354 F.3d at 190 (rejecting

12

constitutional challenge to proffer agreement with *Mezannato* waiver). It is, instead, exactly the kind of truth-enhancing protocol the public expects of its courts. *United States v. Chaparro*, 181 F. Supp. 2d 323, 324 (S.D.N.Y. 2002) (explaining that there is "no unfairness to [the defendant] in allowing use of his statements during proffer sessions once he has opened the door to their use by his arguments and evidence," because the "design of the [Proffer] Agreement provides any defendant who decides to speak with the Government strong incentives to speak truthfully, and discourages anyone from speaking at all if she intends to lie . . . .").

The Tews inked their proffers to get the benefit of a possible pre-indictment deal. Nothing in that bargain, nor in the constitution, nor in the Tews' vague appeals to "fairness," ECF No. 370 at 2, 5 and 7; ECF No. 374 at 4 and 5, permits the Tews to further delay this case. ECF No. 285 at 17 (transcribing extensive arguments at suppression hearing last summer over use of proffer statements at trial). The fact that such evidence may be prejudicial to their cause — even highly prejudicial — does not mean it should be excluded, practically limited, or deemed unconstitutional. *See* Fed. R. Evid. 403 (excluding only that evidence which is *unfairly* prejudicial).

## V.   PROPOSAL FOR TRIAL PROCEDURES

In order to assist the Court in preparing for the very real possibility that, at some point during trial, this issue will require swift action, the government respectfully suggests the following procedures:

1.   Over the past two days, the government obtained formal court transcripts of the audio recordings of the proffer sessions. They were produced to the defense today, and will be filed under restriction as exhibits by separate filing for the court's benefit. Exhibits 1, 2, and 3.

2. The government will ask to be heard, outside the presence of the jury, if at any point believes the waivers have been triggered. That will allow the defendants ample opportunity to argue otherwise, if they so desire, and for the Court to rule accordingly.

3. The parties can confer on proposed language to advise the jury of the nature of this evidence and the context from which it comes before playing it for the first time, similar to a *Bruton* instruction.

4. Although the government expects that many of these statements will make the most sense to introduce through the government witness who was present for the proffer sessions, depending on the nature of cross-examination, the government may deem it necessary to counter certain questions more immediately on its re-directs, as is its right. If that occurs, the government will request a sidebar prior to its questioning, and will ask to play only that limited portion of the proffer session at that time, again giving the defendants a chance to make their record.

5. Mindful of Rules 102 and 403, the government intends to use as its primary guideposts the rules for impeachment evidence laid out in Rules 607 and 608. Although these are the defendants' confessions, and powerful evidence in support of the prosecution's case, at no time will the government abuse this process. Akin to the *James* statements, the government promises to use this evidence (if it even becomes necessary to do so) in a fair and measured manner, albeit one that also seeks to satisfy its high burden of proof.

6. The government proposes that these procedures be discussed at the final pretrial conference, scheduled for January 30. If that timing is insufficient, the government is supportive of a separate hearing to specifically address these procedures. The government contests, however, setting such a hearing in a manner that would delay the trial.

## CONCLUSION

The defendants effectively ask this court to reward a form of deceit. In the alternative, they request immediate gratification for that deceit in the form of yet another delay of this trial. They should not be so rewarded.

The Court should endorse the truth seeking function of the trial process. To do

14

that, the Court should strictly enforce defendants' Mezzanatto waivers; deny the motions; and open this trial, as scheduled, on February 5. The interests of justice call for no less.

<div style="text-align:center">

COLE FINEGAN
United States Attorney

</div>

By:   */s/ Bryan Fields*             By:   */s/ Sarah H. Weiss*
Bryan Fields                          Sarah H. Weiss
Assistant United States Attorney      Assistant United States Attorney
U.S. Attorney's Office                U.S. Attorney's Office
1801 California St. Suite 1600        1801 California St. Suite 1600
Denver, CO 80202                      Denver, CO 80202
(303) 454-0100                        (303) 454-0100
Bryan.Fields3@usdoj.gov               Sarah.Weiss@usdoj.gov
Attorney for the Government           Attorney for the Government

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

<div style="text-align:center">15</div>

## CERTIFICATE OF SERVICE

I hereby certify that on this 26th day of January, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

s/ *Sarah H. Weiss*
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    **1. MICHAEL AARON TEW and**
    2. **KIMBERLEY ANN TEW**,
      a/ka Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S MOTION TO RESTRICT EXHIBITS

---

The United States of America, by and through Cole Finegan, United States Attorney for the District of Colorado, and Bryan D. Fields and Sarah H. Weiss, Assistant United States Attorneys, respectfully moves to restrict the document filed at ECF No. 394, any order revealing the contents of that document, and the brief filed in support of this motion filed at ECF No. 395, for the reasons stated in the brief filed in support of this motion.

The United States requests a "Level 2" restriction. Pursuant to D.C.COLO.LCrR 47.1(b), "Level 2" restriction would make the document, any order revealing the contents of that document, and the brief filed in support of this motion accessible to the government, the affected defendant, and the Court.

1

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Sarah H. Weiss*
Sarah H. Weiss

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case its granting would necessarily involve the court making the necessary findings of fact to exclude time and denial will keep the case on track to be tried on February 5, 2024, within the calculated speedy trial deadline.

2

## CERTIFICATE OF SERVICE

     I hereby certify that on January 26th, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.


            *s/ Sarah H. Weiss*
            United States Attorney's Office
            Assistant U.S. Attorney

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. **MICHAEL AARON TEW and**
2. **KIMBERLEY ANN TEW**,
   a/ka Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S MOTION TO RESTRICT EXHIBITS

---

This matter is before the Court on the Government's Motion to Restrict ECF Nos. 394 and 395. Upon consideration and for good cause shown,

IT IS ORDERED that said Document (ECF No. 394), the Brief in Support of Motion to Restrict Document (ECF No. 395), as well as any order revealing the contents of those documents, are hereby restricted until further order by the Court.

IT IS ORDERED that said Document (Doc. 394), the Brief in Support of Motion to Restrict (Doc. 395), as well as any order revealing the contents of that document, pursuant to D.C.COLO.LCrR 47.1(b) are hereby at a "Level 2 Restriction" and will be "Viewable by Selected Parties & Court" only.

IT IS SO ORDERED on this        day of _____, 2023.

1

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:  */s/ Bryan Fields*                    By:   */s/ Sarah H. Weiss*
Bryan Fields                                Sarah H. Weiss
Assistant United States Attorney            Assistant United States Attorney
U.S. Attorney's Office                      U.S. Attorney's Office
1801 California St. Suite 1600              1801 California St. Suite 1600
Denver, CO 80202                            Denver, CO 80202
(303) 454-0100                             (303) 454-0100
Bryan.Fields3@usdoj.gov                     Sarah.Weiss@usdoj.gov
Attorney for the Government                  Attorney for the Government

## Certification of Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Sarah H. Weiss*
Sarah H. Weiss

## Statement of Speedy Trial Impact

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case its granting would necessarily involve the court making the necessary findings of fact to exclude time and denial will keep the case on track to be tried on February 5, 2024, within the calculated speedy trial deadline.

2

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 26th, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

*s/ Sarah H. Weiss*
United States Attorney's Office
Assistant U.S. Attorney

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## MOTION TO FILE REPLY IN SUPPORT OF MOTION IN LIMINE

---

Kimberley Tew, through counsel, seeks leave to file a reply in support of her Motion in Limine re Admissibility of Proffer Statements ("Motion"). (ECF No. 373.) The Government's response argues Ms. Tew has failed to make certain arguments and/or waived arguments. Ms. Tew disagrees with the Government's position and requests leave to file the attached reply brief to avoid any confusion in advance of Tuesday's trial preparation conference.

The Government opposes the relief requested.

Dated: January 29, 2024.

Respectfully submitted,


s/ Jamie Hubbard
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   hubbard@slhlegal.com
kaplan@slhlegal.com

*Attorneys for Kimberley Ann Tew*

2

# Certificate of Service

I certify that on January 29, 2024, I electronically filed the foregoing *Motion to File Reply in Support of Motion in Limine* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ *Brenda Rodriguez*
Brenda Rodriguez

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## REPLY IN SUPPORT OF MOTION IN LIMINE RE ADMISSIBILITY OF PROFFER STATEMENTS

---

Kimberley Tew, through counsel, submits the following reply in support of her Motion in Limine re Admissibility of Proffer Statements ("Motion"). (ECF No. 373.)

**A.**     **Ms. Tew Disagrees with the Government's Interpretation of the Waiver Provision in the Proffer Letter**

The Government's response inaccurately states: "Kimberley Tew does not challenge the waiver itself; instead, she now suggests (but does not explicitly say) that, if the government's interpretation is correct, then her waiver was not knowing and voluntary." (ECF No. 393 at 6.) Nothing in Ms. Tew's Motion conceded the Government's interpretation of the proffer agreement (which was unknown at the time of filing). Ms. Tew's Motion in Limine incorporated by reference the Motion filed by Defendant Michael Tew, which objected to the Government's interpretation of the waiver provision. (ECF No. 373 at 3.) To the extent it was previously unclear, Ms. Tew

now explicitly states that she objects to the Government's interpretation of the waiver provision in the proffer letter.

The Government contends that a "straightforward reading of the standard proffer language confirms the government's interpretation." (ECF No. 393 at 8.) But the Government ignores the omission of key language about who can trigger a waiver.

The proffer letter is addressed to "Jamie Hubbard, Esq. Counsel to Kimberley Tew." Throughout the letter, there is a distinction between actions taken by "you" (meaning Ms. Hubbard) and "your client" (meaning Ms. Tew). Where the government intended a restriction in the proffer agreement to apply to both counsel and client, it said so:

- Paragraph 1: "You and your client understand that false statements willfully made during this proffer will negate the Government's agreement not to use this proffered information against your client."

- Paragraph 4, second sentence: "By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above."

The relevant provision here—the first sentence of Paragraph 4—provides that Ms. Tew's statements made in the proffer session may be used as evidence if "your client" (meaning Ms. Tew) "testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your

2

client during the proffer." This sentence contains no references to evidence presented or arguments made by "you" (meaning Ms. Hubbard). Nor does this provision reference "your representative" or similar language indicating that it binds Ms. Tew's attorney. Thus, nothing in the proffer agreement suggests that evidence presented or arguments made by counsel—whether Ms. Hubbard or anyone else—can constitute a breach of the proffer agreement.

If the Government wanted the proffer agreement to operate as it now argues, it could easily have included language indicating Ms. Tew's representative could trigger waiver. Indeed, the government has done exactly that in other cases. In *United States v. Barrow*, 400 F.3d 109 (2d Cir. 2005), the proffer agreement stated the prosecutor could use the defendant's proffer statements "as substantive evidence to rebut any evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant] at any stage of a criminal prosecution." *Id*. at 113. The same is true in *United States v. Rebbe*, 314 F.3d 402 (9th Cir. 2002), where the proffer agreement allowed statements to be used "to rebut any evidence, argument or representations offered by or on behalf of your client in connection with the trial." *Id*. at 404. Here, the proffer agreement applies only to evidence presented or arguments made by "your client", *i.e.*, Ms. Tew, and does not apply to evidence or arguments made on behalf of Ms. Tew. Thus, on its face, the waiver provision cannot be triggered by the actions of counsel.

As set forth above, the Government's interpretation of the proffer agreement is inconsistent with the plain language of the contract. However, to the extent the Court

3

believes the first sentence of paragraph 4 is ambiguous, the provision should be construed against the Government as the drafter of the proffer letter. *See K&V Scientific Co., Inc. v. BMW*, 314 F.3d 494, 500 (10th Cir. 2002).

## B.     *Mezzanatto* Requires a Case-by-Case Analysis of the Circumstances of Waiver

In *United States v. Mezzanatto*, 513 U.S. 196 (1995), the Supreme Court held that a waiver of certain trial rights is permissible as part of some plea negotiations. However, the Court noted: "There may be some evidentiary provisions that are so fundamental to the reliability of the factfinding process that they may never be waived without irreparably discrediting the federal courts." *Id.* at 204. As indicated in Mr. Tew's Motion in Limine, and previously adopted by Ms. Tew, the Government's interpretation of the waiver language effectively means Ms. Tew waived her right to counsel, to cross-examine witnesses, and to present a defense.

The *Mezzanatto* court recognized the potential for abuse by prosecutors given the imbalance of power during plea negotiations. Rather than adopt a blanket rule barring admissibility of any statement made during plea negotiations, the Court held "the appropriate response to respondent's predictions of abuse is to permit case-by-case inquiries into whether waiver arguments are the product of fraud or coercion." *Id.* at 210.

The *Mezzanatto* dissent warned against the effect of exactly what the Government promotes in this case – a waiver provision that allows admission of proffer statements in the Government's case-in-chief. *Id.* at 217. And the Tenth Circuit left open the

4

question of whether a *Mezzanatto* waiver is enforceable where—like here—the waiver is
executed as a condition of entering plea negotiations with the government. *United States
v. Mitchell*, 633 F.3d 997, 1005 (10th Cir. 2011) ("To us, the waiver in *Mezzanatto* was
more burdensome than the waiver here since the defendant had no assurance the
negotiations would bear fruit.") Notably, at the time Ms. Tew signed the proffer letter,
she had not been charged with any offense, had no access to discovery, and was facing
the prospect of being criminally charged alongside her husband and potentially leaving
their young children without parents.

    *Mezzanatto* requires analysis of the case-specific facts in determining whether any
waiver is enforceable.

## C.    Ms. Tew Did Not Knowingly Waive Her Trial Rights and Reiterates her Request for a Pretrial Hearing

    The Government contends Ms. Tew's argument that any waiver of her
fundamental trial rights was not knowing and voluntary "has been soundly rejected
elsewhere." (ECF No. 393 at 6.) In *United States v. Krilich*, 159 F.3d 1020 (7th Cir. 1998),
the case cited by the Government, the court noted that the defendant offered no support
for his conclusion that he didn't understand the rights he was waiving. That is precisely
why Ms. Tew has requested a hearing in this case. Ms. Tew seeks an opportunity to
show that her waiver was not made knowingly.

    A waiver is knowing if made "with full awareness of both the nature of the right
being abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*,

<div align="center">5</div>

475 U.S. 412, 421 (1986); *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002). "The purpose of the 'knowing and voluntary' inquiry ... is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401 (1993). When a defendant waives his constitutional rights, he must be "made aware of the dangers and disadvantages ... so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975). Given the important constitutional issues raised by the Government's interpretation of the proffer agreement, the Court has an obligation to ensure Ms. Tew's waiver thereof was knowing and intelligent.

The Government argues Ms. Tew has somehow waived her ability to contest whether her waiver was knowing and voluntary because she is currently represented by the same attorney as when she signed the proffer letter. (ECF No. 393 at 7.) Notably, the Government cites no authority for this position, likely because none exists. Undersigned counsel's current involvement in this case does not deprive Ms. Tew of the ability to request a hearing on whether she knowingly and voluntarily waived her rights by signing the proffer letter.

The Government also alleges the "complexity of the situation" means this Court should punt on deciding whether Ms. Tew's waiver was knowing and voluntary and leave those matters to "appeals and collateral attacks." (ECF No. 393 at 7.) But that approach makes no sense given the roles of a trial court and an appellate court. Courts

apply a "totality of the circumstances" approach when determining whether a waiver of important constitutional rights was knowing and voluntary. *Colorado v. Spring*, 479 U.S. 564, 573 (1987); *United States v. Burson*, 531 F.3d 1254, 1256-57 (10th Cir. 2008). The trial court is responsible for developing the factual record through testimony, making any necessary credibility determinations, and analyzing the relevant factors in the first instance. Given the fact-intensive nature of a "totality of the circumstances" analysis, the trial court is best positioned to determine whether Ms. Tew's waiver was knowing and voluntary.

The Government would have the Court defer all rulings on the proffer agreement until the middle of trial. (ECF No. 393 at 14.) That approach ignores practical realities. Defense counsel cannot meaningfully prepare their defense—including opening statements, cross-examinations of the Government's witnesses, etc.—without guideposts regarding what the Court believes triggers waiver under paragraph 4. And waiting until trial to decide whether any waiver is knowing and voluntary risks unnecessarily inconveniencing the jury with lengthy mid-trial hearings. This issue has been raised and briefed by the parties, and Ms. Tew respectfully requests that the Court set a hearing to decide the matter before empaneling a jury.

As such, Ms. Tew reiterates her request for a pre-trial hearing on whether she knowingly and voluntarily waived important trial rights when she executed the proffer agreement.

7

Dated: January 29, 2024.

Respectfully submitted,

s/ Jamie Hubbard
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone: 720.689.8909
Email: hubbard@slhlegal.com
kaplan@slhlegal.com

*Attorneys for Kimberley Ann Tew*

8

## Certificate of Service

I certify that on January 29, 2024, I electronically filed the foregoing *Reply in Support of Motion in Limine re Admissibility of Proffer Statements* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ Brenda Rodriguez
Brenda Rodriguez

9

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

### Motion to Exclude Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the *Government's Trial Brief* (ECF 379)

---

Defendant Kimberley Tew, through undersigned counsel requests this court exclude the testimony sought to be introduced by the government in their trial brief and as grounds states the following:

On January 24, 2024, the *Government's Trial Brief* (ECF 379) was filed. Section IV discussed the Government's intent to introduce evidence related to the reasons Michael Tew was terminated from National Air Cargo ("NAC") and stated the Government's belief that such evidence is *res gestae* of the charged offenses. The Government further requested that introduction of Ms. Tew's "extracurricular hobbies" be allowed to the extent they were a "motivating factor in this fraud." (ECF No. 379 at 4.) No further description of the reasons for termination, nor the hobbies or their relevance, was provided in the pleading.

The line between evidence that is *res gestae* and that which must be analyzed under Rule 404(b) is not always bright. *United States v. Kimball*, 73 F.3d 269, 272 (10th Cir. 1995). Indeed, this lack of clarity led the Colorado Supreme Court to recently declare an end to *res gestae* in the state court system and demand the government give notice of all extrinsic evidence under Rule 404(b). *Rojas v. People*, 504 P.3d 296 (Colo. 2022).

Neither the court nor the defendant are bound by the government's conclusion that the proffered evidence is *res gestae*. At this point, the defense lacks sufficient information about what precisely the Government intends to admit about Mr. Tew's termination and Ms. Tew's gambling to fully analyze whether the evidence is intrinsic or extrinsic to the charged crimes. While the jury may need to be informed of certain limited facts related to Mr. Tew's termination—such as when Mr. Tew was terminated by the company—the circumstances of that termination are not intrinsic to the crimes charged. And whether Mrs. Tew was involved in any of the events that led to her husband's termination may certainly be extrinsic.

The purpose of the pretrial notice required by the Court's February 10, 2021 *Discovery Conference Memorandum and Order* is to require the Government to explain the other acts evidence it seeks to admit so Rule 404(b) factors can be considered. *See Huddleston v. United States*, 485, U.S. 681, 691 (1988); *United States v. Parker* 553 F.3d 1309 (10th Cir. 2009) (Rule 404(b) requires a court to consider whether 1) the evidence is offered for a proper purpose, 2) the evidence is relevant, 3) the probative value of the

2

evidence is substantially outweighed by its prejudicial effect, and 4) whether a limiting instruction is given if the defendant so requests). Because the Government did not comply with the notice requirement and has only stated generally that it seeks to admit evidence of Ms. Tew's gambling and the circumstances of Mr. Tew's termination, the parties and the Court lack sufficient evidence to analyze whether the proffered evidence is *res gestae* or subject to a Rule 404(b) analysis.

WHEREFORE, it is requested that the government be required to provide greater specificity regarding the evidence it seeks to introduce and a hearing to determine its admissibility.

January 29, 2024.

Respectfully submitted,

s/ *David S. Kaplan*
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   hubbard@slhlegal.com
kaplan@slhlegal.com

*Attorneys for Kimberley Ann Tew*

3

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel notes that this filing has no effect on the speedy trial clock.

*s/ David S. Kaplan*
David S. Kaplan

# Certificate of Service

I certify that on January 29, 2024 I electronically filed the foregoing *Motion to Exclude Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ *Brenda Rodriguez*
Brenda Rodriguez

5

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

MICHAEL AARON TEW,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

     Defendants.

---

## ORDER DENYING MOTION TO CONTINUE

---

Before the court is Defendant Kimberley Tew's motion to continue the trial date in this case by ninety days and to exclude that period of delay when computing the time within which her trial must commence under the Speedy Trial Act. Doc. 374. For the following reasons, the court finds that Ms. Tew has not shown that continuance is warranted, and the motion is denied.

### PROCEDURAL HISTORY

On July 8, 2020, a criminal complaint was issued as to Mr. Tew, and he was arrested on July 9, 2020. On February 3, 2021, an indictment was handed down as to all defendants, including Mr. and Ms. Tew.

On February 5, 2021, Mr. Tew entered a plea of not guilty at his arraignment, and Ms. Tew entered a plea of not guilty on February 10, 2021, making April 22, 2021, the initial deadline for their trial to commence under the Speedy Trial Act, 18 U.S.C. § 3161(c)(1). On February

11, 2021, the court entered an order setting trial to commence on April 19, 2021. Doc. 101. The court excluded 19 days from Mr. Tew's speedy clock when his co-defendants were joined for trial (Doc. 101) and shortly thereafter excluded another 180 days for an Ends of Justice Continuance. Doc. 116. Defendants subsequently filed motions to exclude twelve months, ninety days, ninety days, and one hundred and eighty days from this time calculation, which the court granted. Docs. 143, 149, 165, 174, 165, 174, 193. On December 28, 2022, Mr. and Ms. Tew moved for the appointment of separate counsel, (Doc. 288), which the court granted. Doc. 289. Mr. Tew's current primary counsel entered his appearance on January 31, 2023, and Ms. Tew's current primary counsel entered his appearance on January 3, 2023. Docs. 290, 308.

On March 13, 2023, Ms. Tew filed another motion to continue, asking that the court exclude sufficient time "to allow for the scheduling of trial in February of 2024." Doc. 315 at 4. The court granted that motion on March 17, 2023, excluded 329 days from the computation of Ms. Tew's Speedy Trial Act time, and set trial to commence on February 5, 2024. Doc. 317. Ms. Tew filed the instant motion on January 24, 2024—12 days before trial is set to commence and months after the motions deadline. *See* Doc. 336 (motion requesting extension of motions deadlines); Doc. 338 (order extending motions deadline to October 13, 2023); Doc. 374 (Ms. Tew's motion to continue).

## APPLICABLE LAW

When evaluating a request to continue a trial, the court considers the following factors: (1) the diligence of the party requesting the continuance; (2) the likelihood that the continuance, if granted, would accomplish the purpose underlying the party's expressed need for the continuance; (3) the inconvenience to the opposing party, its witnesses, and

the court resulting from the continuance; and (4) the need asserted for the continuance and the harm that the party requesting it might suffer if the continuance is denied. *United States v. West*, 828 F.2d 1468, 1470 (10th Cir. 1987). No single factor is determinative, and the weight given to any one factor may vary depending on the extent of the showing on the others. *Id.* However, "by far the most important factor to consider" is the requesting party's need for a continuance and the prejudice resulting from its denial. *Id.* at 1471.

When a request for continuance implicates Speedy Trial Act requirements, the court may exclude from the statutory time period within which the Defendants' trial must commence "[a]ny period of delay resulting from a continuance granted . . . on the basis of [the court's] findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). In order to exclude the period resulting from such a continuance, the court must set forth in the record its reasons for finding that the ends of justice served by granting the continuance outweigh the best interests of the public and the defendant in a speedy trial, considering the following factors:

> (i) Whether the failure to grant such a continuance in the proceeding would be likely to make a continuation of such proceeding impossible, or result in a miscarriage of justice.
>
> (ii) Whether the case is so unusual or so complex, due to the number of defendants, the nature of the prosecution, or the existence of novel questions of fact or law, that it is unreasonable to expect adequate preparation for pretrial proceedings or for the trial itself within the time limits established by this section.
>
> . . . .
>
> (iv) Whether the failure to grant such a continuance in a case which, taken as a whole, is not so unusual or so

complex as to fall within clause (ii), would deny the defend-
ant reasonable time to obtain counsel, would unreasonably
deny the defendant or the Government continuity of coun-
sel, or would deny counsel for the defendant or the attorney
for the Government the reasonable time necessary for ef-
fective preparation, taking into account the exercise of due
diligence.

18 U.S.C. § 3161(h)(7)(A)-(B); *see also United States v. Toombs*, 574
F.3d 1262, 1268 (10th Cir. 2009).

## DISCUSSION

Ms. Tew's counsel requests a continuance because he states that he
needs more time to evaluate certain data relating to an iCloud account
attributed to both Mr. and Ms. Tew. Doc. 374 at 1-3. Ms. Tew's counsel
suggests that he might consider retaining an expert for "assistance to
efficiently and competently evaluate the amount of dat[a] to be re-
viewed." *Id.* at 3.

The court finds that the *West* factors do not support granting a con-
tinuance. First, this purported issue has not been addressed diligently.
As the government notes, Ms. Tew presumably had access to this ac-
count even before the start of this case nearly four years ago. Even once
this case started, the government specifically raised this issue at least
as early as the filing of its *James* log on December 5, 2023 (pursuant to
a delayed briefing schedule that the parties jointly sought, Docs. 339,
340). The government also provided courtesy copies of all relevant text
messages on December 14, 2023 ahead of the *James* hearing. Prior to
and at the *James* hearing, neither defendant raised any specific issue
about attribution of the "Kley" iCloud account. And even when the gov-
ernment contemporaneously moved *in limine* to admit these messages,
Doc. 345, Ms. Tew did not raise any such specific objection.

- 4 -

Second, Ms. Tew has not shown that a three-month continuance would accomplish any purported need for the continuance. Ms. Tew suggests that there may be issues of attribution because Mr. and Ms. Tew may have both used this account to communicate with others. Perhaps, but it is not explained how expert assistance would aid in teasing out who (between Mr. and Ms. Tew) authored certain messages, assuming they both had access to the account, or why such efforts could not be (or have been) accomplished without a continuance. Ms. Tew will be able to attack the reliability of these text messages even though a large majority of them likely will be admitted, all as discussed in the court's orders regarding co-conspirator statements and authentication. Docs. 361 and 367.

Third, a delay at this late hour would cause significant prejudice to the court, the government, and many third-party witnesses who are scheduled to give testimony next week and the week after. And Ms. Tew has not adequately explained why this request could not have been made sooner, particularly where it appears that counsel noticed this issue prior to the *James* hearing.

Fourth, Ms. Tew has not shown how she would suffer meaningful— let alone material—prejudice absent a continuance here. *See United States v. Pursley*, 577 F.3d 1204, 1228-29 (10th Cir. 2009). As discussed above, the court sees little benefit from enlisting expert assistance to evaluate who, between Mr. and Ms. Tew, sent certain messages from one account in this case. As the government notes, the wider issues surrounding this account have largely been litigated and resolved by the court's two orders on co-conspirator statements and authentication issues, Docs. 361 and 367. This issue also does not implicate the vast majority of the evidence and arguments that the court anticipates will be

- 5 -

presented at trial. And even as to this particular iCloud account, Ms. Tew will have ample opportunity to attack this evidence at trial.

Therefore, after careful consideration of the *West* factors, the court finds that Ms. Tew has not shown that a continuance is warranted. *See United States v. Orr*, 692 F.3d 1079, 1101 (10th Cir. 2012) (affirming denial of motion for continuance where defendant claimed that trying the case had become "complex" due to alleged "late-developing changes").

## CONCLUSION

Ms. Tew's Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days, **Doc. 374**, is **DENIED**. The trial will proceed on February 5, 2024, as scheduled.

DATED: January 31, 2024                     BY THE COURT:

Daniel D. Domenico
United States District Judge

- 6 -

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**JUDGE DANIEL D. DOMENICO**

---

Date:                  January 30, 2024          Prob./Pret.:  N/A
Courtroom Deputy:  Robert R. Keech              Interpreter:   N/A
Court Reporter:     Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          Counsel:

UNITED STATES OF AMERICA,                        Bryan D. Fields
                                                 Sarah H. Weiss
            Plaintiff,

v.

1. MICHAEL AARON TEW;                            Jason D. Schall
and                                              Kristen M. Frost
2. KIMBERLY ANN TEW,                             David S. Kaplan
                                                 Jamie H. Hubbard
            Defendants.

---

**COURTROOM MINUTES**

---

**TRIAL PREPARATION CONFERENCE**

**1:38 p.m.      Court in session.** Defendants present, on bond.

Appearances of counsel.

[374] Defendant Kimberly Ann Tew's Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days is raised for argument.

Argument by Mr. Kaplan, Mr. Schall, and Mr. Fields.

1

**ORDERED:**  [374] Defendant Kimberly Ann Tew's Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days is **TAKEN UNDER ADVISMENT.**

Court outlines protocol for jury selection, use of strike sheet for peremptory challenges, and schedule for trial.

**ORDERED:**  Government will be allowed **twenty (20) minutes for voir dire** and each defendant will be allowed **ten (10) minutes for voir dire.**

**ORDERED:**  Each side will be allowed **ninety (90) minutes** total for opening statements and closing arguments.

**ORDERED:**  If Defendants have electronic exhibits, they should be submitted to the Court by **Friday, February 2, 2024.**

Discussion regarding preliminary jury instructions and language from the Indictment back to the jury.

Discussion regarding sequestration of witnesses.

**ORDERED:**  Witnesses shall be sequestered for the duration of the trial.

Discussion regarding designating advisory witness and use of summary exhibits at trial.

**ORDERED:**  Counsel shall agree on a time each day to inform the other side about exhibits to be used the next day in trial.

[373] Defendant Kimberly Ann Tew's Motion in Limine re Admissibility of Proffer Statements and [370] Defendant Michael Aaron Tew's Motion in Limine to Prohibit the Impermissible and Unconstitutional Use of Proffer Agreements are raised for argument.

Argument by Ms. Hubbard and Ms. Weiss.

**3:05 p.m.**      **Court in recess.**

**3:18 p.m.**      **Court in session.**

Argument by Ms. Hubbard, Mr. Schall, and Ms. Weiss.

2

**ORDERED:**   [370] Defendant Michael Aaron Tew's Motion in Limine to Prohibit the Impermissible and Unconstitutional Use of Proffer Agreements is **TAKEN UNDER ADVISEMENT.**

**ORDERED:**   [373] Defendant Kimberly Ann Tew's Motion in Limine re Admissibility of Proffer Statements is **TAKEN UNDER ADVISEMENT.**

[399] Defendant Kimberly Ann Tew's Motion to Exclude Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief is raised for argument.

Argument by Mr. Kaplan, Ms. Weiss, and Mr. Kaplan.

**ORDERED:**   [399] Defendant Kimberly Ann Tew's Motion to Exclude Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief is **TAKEN UNDER ADVISEMENT.**

Discussion and argument regarding trial logistics related to witnesses testifying about interpretations of text messages and the use of bolding and highlighting of demonstrative exhibits.

Discussion and argument regarding possible use of suppression hearing testimony.

Discussion and argument on the issue of duress and additional exhibits (989 and 990) as part of the James proffer.

Court further outlines procedure for voir dire and jury selection.

Discussion related to whether coffee is allowed, types of water containers allowed in courtroom, and a scheduling conflict Ms. Frost has on Tuesday, February 6, 2024.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberly Ann Tew.

**4:38 p.m.**      **Court in Recess. <u>HEARING CONCLUDED.   TOTAL TIME: 2:47</u>**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Daniel D. Domenico**

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**MICHAEL AARON TEW**,
**KIMBERLEY ANN TEW**, and
JONATHAN K. YIOULOS

      Defendants.

---

**ORDER REGARDING MOTIONS IN LIMINE AND PRE-TRIAL ISSUES**

---

The court held a Trial Preparation Conference in this case on Tuesday, January 30, 2024. At the conference, the Court provided several presumptive orders on pre-trial issues from the bench. This written order memorializes those orders and clarifies a few remaining issues. If there is any conflict between the Court's oral orders made at the Trial Preparation Conference and this written order, this written order will control.

## I. Admissibility of Proffer Statements

Mr. and Ms. Tew challenge the admissibility of statements they made in proffers to the government in 2020. Docs. 370, 373.

The relevant language in the proffer agreements (styled as letters to defense counsel) reads as follows:

- 1 -

The government may also use any statements made by your client during the proffer either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer. By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

Docs. 370-1 at 2, 373-1 at 2.

As noted at the conference, there is nothing inherently unconstitutional about even more extensive waivers to Rule 410's general excludability of plea-bargaining discussions. *See United States v. Mitchell*, 633 F.3d 997, 999 (10th Cir. 2011) (allowing government to introduce proffer statements in its case-in-chief based on broader waiver agreement). Defendants' more generic arguments that such a waiver *per se* violates their Fifth and Sixth Amendment rights, therefore, are unpersuasive.

Nor have the defendants[1] met their burden to show that their entry into these agreements was not knowing and voluntary. *U.S. v. Smith*, 770 F.3d 628, 638 (7th Cir. 2014) (defense has burden to show waiver not voluntary and knowing and citing *Mezzanato*, 513 U.S. at 210); *U.S. v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) (holding similarly). While Ms. Tew has made vague assertions that her agreement was not entered into "knowingly," it became clear at the conference that this was actually a dispute about the scope of the agreement's terms. Because these agreements are treated as contracts, the court sees no reason to hold an evidentiary hearing to interpret their scope, and Ms. Tew has provided no specific authority for doing so here.

---

[1] It appears that only Ms. Tew raises such an argument.

As to scope, the government appears to take a very expansive reading of this waiver, suggesting that counsel—through argument or cross-examination questions—may trigger the waiver in many ways, all as discussed at the conference. On the other end, defendants say that *nothing* counsel does can trigger this waiver and that only testimony from one of the defendants could trigger the waiver.

Neither position is quite correct. It is true that most of the cases cited by the government focus on impeachment though contrary statements made by defendants themselves (*Mezzanato*) or introduction of contradictory evidence (*Krilich*). But the defendants' view that no attorney argument could trigger the waiver provision is not a fair reading of the waiver agreement (particularly its reference to taking a position or presenting an argument, which are generally things that a client does through an attorney). The government's apparent reading, on the other hand, seeks too much and may preclude the defendants from attacking the sufficiency of the evidence presented and putting the government to its burden of proving their guilt without allowing the proffer statements into evidence. *See United States v. Oluwanisola*, 605 F.3d 124, 133 (2d Cir. 2010) (vacating guilty verdict where court allowed proffer statements into evidence based on similar waiver agreement after defense counsel challenged witness's credibility and presented opening argument challenging the sufficiency of the evidence).[2]

---

[2] As an initial matter, the government has cited no Tenth Circuit authority on a sufficiently similar waiver provision. As discussed above, *Mitchell* addressed a much broader waiver that included no similar "trigger" provision and instead amounted to a flat waiver of objecting to the entire proffer being admitted if the defendant withdrew his guilty plea. 633 F.3d at 999. *United States v. Jim* dealt with a similarly broad waiver that does not match the facts at issue here. 786 F.3d 801, 806 (10th Cir. 2015).

The government relies on *United States v. Krilich* for the proposition that an attorney's cross-examination of a government witness can amount to "taking a position" contrary to proffer testimony, therefore invoking a similar waiver to the one seen here. 159 F.3d 1020, 1024-25 (7th Cir. 1998). As noted above, the court agrees, as a general principle, that cross-examination alone *could* trigger the waiver at issue here. But the devil is in the details. The waiver should not be implicated lightly; instead, the proffer statements should only come into evidence if counsel elicits a specific, direct, factual contradiction by a witness of what was said in the proffers. *See id.* at 1025 (noting that the prosecutor's position was "as unrealistic as" the defendant's but affirming inclusion of the proffer statements where defense counsel elicited a specific, contradictory factual statement from a witness).

Indeed, the *Krilich* court held that, "statements are inconsistent only if the truth of one implies the falsity of the other" and provided several examples of both consistent and inconsistent statements. *Id.* at 1025-26. Those examples are useful and should serve as a general guide for the parties during trial on what may and what may not trigger admission of certain proffer statements. And the *Krilich* court's reasoning and examples match closely with the reasoning and examples provided in *Oluwanisola. See* 605 F.3d at 133 (noting, as an example, that "there is no inconsistency or contradiction between a defendant's admission that he robbed the bank and his challenge to a witness's testimony that the witness saw the defendant rob the bank and recognizes the defendant.").

Given this, the court will adhere to a few principles in policing this issue at trial. First, the most likely reason that proffer statements would be admitted would be if either defendant testifies and makes a

statement contrary to either of their proffers. Second, as a general matter, attorney argument or questioning could trigger the waiver provision here if it clearly seeks to introduce evidence that is contrary to the proffer statements. But in gray areas, the court will view the scope of this waiver narrowly in the context of argument or questioning by attorneys, particularly for purposes of opening and closing arguments. As discussed in *Krilich* and *Oluwanisola*, any contradictions here must be specific, fact-based, and truly inconsistent. Merely questioning a witness's credibility or perception of certain events, attacking the sufficiency of the evidence, or more generally claiming innocence (even on an element-by-element basis) will not trigger the waiver provision. *See Oluwanisola*, 605 F.3d at 132 (holding that defense counsel should have been able to reference certain elements and attack the sufficiency of the evidence as to those elements in opening statement without triggering proffer waiver provision).

In this case like every other, counsel, of course, may not make materially false statements of fact or law or offer evidence that they know to be false. Colo. Rules of Professional Conduct 3.3. Adhering to this ethical boundary seems likely to eliminate much of the possibility that defendants' counsel might introduce evidence or argument contradicted by their own clients' sworn proffer statements. Arguing that their clients are not guilty or that the government's evidence does not prove particular facts or elements of the charges is well on the safe side of both this ethical rule and the proffer agreement. But eliciting truly inconsistent factual statements from a witness, or making arguments that are known to be false, will open the door to admitting contradictory statements made during the proffers.

Given all this, Defendants' motions, **Docs. 370 and 373**, are **GRANTED IN PART** and **DENIED IN PART** as outlined above.

## II.    Admissibility of Business Records

At the conference, the government sought a more final ruling on its motion in limine regarding business records. *See* Docs. 344 (motion in limine), 367 (order granting in part and denying in part that motion). As outlined in the court's order on that motion, bank and subscriber records that are accompanied by an appropriate custodial declaration are admissible. The court gave the defendants an opportunity to object to the authentication of those records on or before January 29, and neither defendant did. *See* Doc. 378 (government's filing of custodian declarations). The court therefore will admit those records as non-hearsay business records barring some other evidentiary objection not implicating hearsay or authentication, such as Rule 403, all subject to the caveats outlined in the prior order (including as to Cellebrite exhibits). *See* Doc. 367.

## III.    Motion in Limine Regarding Mr. Tew's Firing

Ms. Tew filed a motion in limine to exclude the basis for Mr. Tew's firing from NAC. As discussed at the conference, this issue also seemed to implicate Ms. Tew's gambling and her use of Mr. Tew's company credit card.

As discussed at the conference, the court finds that this evidence, as a general matter, is intrinsic to the alleged fraud and therefore not excludable under Rule 404(b) and otherwise will be admissible to prove motive. *United States v. Kupfer*, 797 F.3d 1233, 1238 (10th Cir. 2015). There may be some outliers, and some of this evidence could conceivably run afoul of Rule 403, particularly if it becomes cumulative. The government stated that it would not venture too far afield with this evidence, and the court will hold the government to that.

Ms. Tew's motion, **Doc. 399**, is therefore **DENIED**.

- 6 -

## IV.    Redactions to the Indictment

Mr. Tew argues that references to the term "fraudulently" should be removed from the indictment if it is given to the jurors. As discussed at the conference, the court's instructions regarding the indictment will re-iterate that it is not evidence and cannot form the basis of a guilty verdict. In any event, the references to fraudulent behavior derives from the criminal statutes themselves and is not improper. Mr. Tew's request therefore will be denied, and the indictment will be provided to the jurors in the form it was handed down.

## V.    The Government's Rule 1006 Exhibits

As addressed at the conference, the court will evaluate the government's exhibits on a case-by-case basis to ensure that they meet Rule 1006's requirements. But as to presentation in the courtroom, the government generally will be free to use highlighting and zoom tools when presenting exhibits on monitors displayed to the jury, regardless of the testifying witness or their affiliation with the government. *See* Rule 611.

Also, as discussed at the conference, the parties must confer each night prior to the next day of trial and share proposed exhibits (except for exhibits used solely for impeachment) and demonstratives intended to be used the next day. The court suggests conferring and sharing exhibits and demonstratives by 7 p.m. each evening but leaves the exact timing up to the parties.

## VI.    "Overview" or "Summary" Evidence and the Admission of Co-Conspirator Statements

The court will not allow government witnesses to provide *improper* "overview" evidence as outlined in *United States v. Brooks*, 736 F.3d 921,

930-33 (10th Cir. 2013) (rejecting arguments that certain testimony was improper "overview" evidence regarding conspiracy).

But the court will allow government witnesses, such as Ms. Palmer, to read, for example, co-conspirator text or email messages that have been admitted into evidence, generally consistent with how testimony was elicited at the *James* hearing. The court will limit government agents from improperly "opining" on such messages or providing "spin" on them. *See Brooks*, 736 F.3d at 930. But such witnesses may provide context such as that necessary to lay a foundation or, perhaps, to authenticate certain exhibits, like Cellebrite reports.

## VII.  Use of Suppression Hearing "Testimony" on Cross-Examination of Defendants

The government seeks to use "testimony" from the suppression hearing to impeach either defendant if they testify at trial. The government acknowledges that the Tenth Circuit has not necessarily blessed such a maneuver, although other circuits may have. In any event, this alleged "testimony" appears to be representations made by prior defense counsel of what defendants *would* say at the hearing if called to testify. *See* Doc. 226 at 7-16. Particularly because the court did not rule on the specific argument that the proposed testimony sought to support, Doc. 262 at 9, the court fails to see how impeaching defendants with this material would be appropriate. But if the defendants testify and make statements contrary to prior counsel's representations, the government may re-raise this issue at that time.

## VIII.  Evidence of Duress and a Duress Instruction

The government seeks to preclude the defendants from "presenting" a "factually baseless" duress defense related to Ms. Tew's gambling or cryptocurrency activities. *See* Doc. 379 at 3-4. At the conference, the

government seemed to be arguing more narrowly that a duress instruction should not be given to the jury.

The Tenth Circuit recognizes duress as a defense and has a pattern instruction for it. *United States v. Dixon*, 901 F.3d 1170, 1176 (10th Cir. 2018). But to obtain such an instruction, the defendant must make a "threshold showing" of duress as to each element of the defense. *Id.* at 1177. As a general matter, the court will not exclude relevant evidence that might bear on this defense, if it exists, particularly where the government seeks to introduce related evidence of gambling and alleged cryptocurrency scams. And if either defendant seeks to put this defense to the jury, the court will evaluate whether they have made a sufficient showing to warrant a duress instruction prior to reciting the final instructions.

## IX. Additional Co-Conspirator Statement Issues

As discussed at the conference, the government seeks to admit *James* log entry #37, which the court previously excluded. Upon reconsideration, the court finds that the martial privilege does not preclude admission of that conversation and that the message was in furtherance of a conspiracy for purposes of Rule 801(d)(2)(E). As to the other two messages or statements not addressed at the *James* hearing, the court will evaluate those statements at trial before admitting them. And the court reiterates that the government must warn the court and the defendants

prior to seeking to admit these statements, preferably in the morning prior to the arrival of the jury on the relevant day.

DATED: February 1, 2024        BY THE COURT:

_____

Daniel D. Domenico
United States District Judge

- 10 -

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1. **MICHAEL AARON TEW** and
    2. **KIMBERLEY ANN TEW**,
      a/ka Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S LIST OF PROPOSED WITNESSES

---

     The government hereby submits its final list of proposed witnesses, along with estimates of the length of their testimony on direct examination. The government intends to call them in the order listed, with leave to vary as trial demands dictate. The government has consulted with defense counsel, who provided the listed estimates for the length of cross-examination.

     Respectfully submitted this 2nd day of February, 2024.

                    COLE FINEGAN
                    United States Attorney

By:   */s/ Bryan Fields*           By:   */s/ Sarah H. Weiss*
Bryan Fields                         Sarah H. Weiss
Assistant United States Attorney     Assistant United States Attorney
U.S. Attorney's Office             U.S. Attorney's Office
1801 California St. Suite 1600       1801 California St. Suite 1600
Denver, CO 80202                Denver, CO 80202
(303) 454-0100                  (303) 454-0100

1

Bryan.Fields3@usdoj.gov
Attorney for the Government

Sarah.Weiss@usdoj.gov
Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record

By:     /s Bryan Fields
        Bryan Fields
        Assistant United States
        Attorney
        U.S. Attorney's Office
        1801 California St. Suite 1600
        Denver, CO 80202
        (303) 454-0100
        Bryan.Fields3@usdoj.gov
        Attorney for the Government

3

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## Judge Daniel D. Domenico

Case No.    20-cr-305-DDD             Date:    February 5, 2024

Case Title:    *United States v. Michael Tew et al.*

GOVERNMENT'S                         WITNESS LIST
(**Plaintiff**/Defendant)

| WITNESS | | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|---|
| Jonathan Yioulos | 330 | Feb. 5-6 - 330 minutes (direct); 170 minutes (cross |
| Raeesa Telly | 45 | Feb. 7 - 45 minutes (direct); 20 minutes (cross) |
| Hannah Scaife | 45 | Feb. 7 - 45 minutes (direct); 60 minutes (cross) |
| Brittney Perry | 30 | Feb. 7 – 30 minutes (direct); 20 minutes (cross) |
| Abby Schwartz | 120 | Feb 7 - 120 minutes (direct); 60 minutes (cross) |
| Kimberly Burkhalter Townsley (Regions Bank) | 15 | Feb. 7 - 15 minutes (direct); 20 minutes (cross) |
| Patricia Townsend (NFCU) | 15 | Feb. 7 - 15 minutes (direct); 20 minutes (cross) |
| Flagstar Bank / FIS Representative | 15 | Feb. 7 - 15 minutes (direct); 20 minutes (cross) |
| Sarah Anderson | 30 | Feb. 8 - 30 minutes (direct); 30 minutes (cross) |
| Joe Ridenour (BBVA / PNC Bank) | 15 | Feb. 8 - 15 minutes (direct); 20 minutes (cross) |

| | | |
|---|---|---|
| Chris Alf | 30 | Feb. 8 - 30 minutes (direct); 25 minutes (cross) |
| Michael Meyers | 75 | Feb. 8 - 75 minutes (direct); 40 minutes (cross) |
| Roman Hernandez | 30 | Feb. 8 - 30 minutes (direct); 20 minutes (cross) |
| Julie Mussack (Wells Fargo Bank) | 15 | Feb. 8 - 15 minutes (direct); 20 minutes (cross) |
| Jerry Plumley (ANB Bank) | 15 | Feb. 8 - 15 minutes(direct); 20 minutes (cross) |
| Nicholas Hanggi | 30 | Feb. 8 - 30 minutes (direct); 45 minutes (cross) |
| Matthew Vanderveer | 30 | Feb. 9 - 30 minutes(direct); 40 minutes (cross) |
| Matthew Morgan | 60 | Feb. 9 - 60 minutes  (direct); 40 minutes (cross) |
| Lisa Palmer | 210 | Feb. 9 & 12 - 210 minutes (direct); 90 minutes (cross) |

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.   20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1. **MICHAEL AARON TEW** and
    2. **KIMBERLEY ANN TEW**,
       a/ka Kimberley Vertanen,

      Defendants.

---

## GOVERNMENT'S LIST OF PROPOSED EXHIBITS

---

      The government hereby submits its final list of proposed exhibits. The government respectfully reserves its right, within reasonable notice depending on the circumstances, to add additional exhibits as trial demands dictate.

      Respectfully submitted this 2nd day of February, 2024.

COLE FINEGAN
United States Attorney

By:     */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:     */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

By:     /s Sarah H. Weiss
        Sarah H. Weiss
        Assistant United States
        Attorney
        U.S. Attorney's Office
        1801 California St. Suite 1600
        Denver, CO 80202
        (303) 454-0100
        sarah.weiss@usdoj.gov
        Attorney for the Government

1

CASE CAPTION: <u>United States v. Tew, et al.</u>

CASE NO.: <u>20-cr-305-DDD</u>

EXHIBIT LIST OF: <u>United States of America, Plaintiff</u>
<div align="center">(Name and Party Designation)</div>

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1 | | INTENTIONALLY LEFT BLANK | | | | | |
| 2 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 08.01.2018-08.31.2018 | | | | | |
| 3 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 10.01.2018-10.31.2018 | | | | | |
| 4 | | INTENTIONALLY LEFT BLANK | | | | | |
| 5 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 11.01.2018-11.30.2018 | | | | | |
| 6 | | INTENTIONALLY LEFT BLANK | | | | | |
| 7 | | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 12.01.2018-12.31.2018 | | | | | |
| 8 | | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.07.2019 | | | | | |
| 9 | | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.19.2019 | | | | | |
| 10 | | Signature Bank ACH Transaction re $38,000 to [PM], dated 03.28.2019 | | | | | |

<div align="center">1</div>

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 11 | | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | | | | | |
| 12 | | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 07.23.2019 | | | | | |
| 13 | | Signature Bank ACH Transaction re $31,500 to SHI LLC, dated 08.06.2019 | | | | | |
| 14 | | Signature Bank ACH Transaction re $9,500 to Global Fuel Logistics, dated 08.19.2019 | | | | | |
| 15 | | Signature Bank ACH Transaction re $28,000 to SHI LLC, dated 08.21.2019 | | | | | |
| 16 | | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 09.03.2019 | | | | | |
| 17 | | Signature Bank ACH Transaction re $18,000 to SHI LLC, dated 09.09.2019 | | | | | |
| 18 | | Signature Bank ACH Transaction re $33,500 to SHI LLC, dated 09.17.2019 | | | | | |
| 19 | | Signature Bank ACH Transaction re $52,750 to SHI LLC, dated 09.25.2019 | | | | | |
| 20 | | Signature Bank ACH Transaction re $75,000 to Global Fuel Logistics, dated 10.16.2019 | | | | | |
| 21 | | Signature Bank ACH Transaction re $43,000 to Global Fuel Logistics, dated 10.24.2019 | | | | | |
| 22 | | Signature Bank ACH Transaction re $49,750 to SHI LLC, dated 10.31.2019 | | | | | |
| 23 | | Signature Bank ACH Transaction re $40,500 to SHI LLC, dated 11.07.2019 | | | | | |
| 24 | | Signature Bank ACH Transaction re $43,250 to Global Fuel Logistics, dated 11.25.2019 | | | | | |

2

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 25 | | Signature Bank ACH Transaction re $9,550 to Global Fuel Logistics, dated 12.02.2019 | | | | | |
| 26 | | Signature Bank ACH Transaction re $24,500 to Global Fuel Logistics, dated 12.11.2019 | | | | | |
| 27 | | Signature Bank ACH Transaction re $15,200 to Global Fuel Logistics, dated 12.23.2019 | | | | | |
| 28 | | Signature Bank ACH Transaction re $33,000 to Global Fuel Logistics, dated 02.11.2020 | | | | | |
| 29 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 02.19.2020 | | | | | |
| 30 | | Signature Bank ACH Transaction re $36,555 to Global Fuel Logistics, dated 03.02.2020 | | | | | |
| 31 | | Signature Bank ACH Transaction re $35,000 to Global Fuel Logistics, dated 03.09.2020 | | | | | |
| 32 | | Signature Bank ACH Transaction re $22,5000 to Global Fuel Logistics, dated 03.19.2020 | | | | | |
| 33 | | Signature Bank ACH Transaction re $73,460 to Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 34 | | Signature Bank ACH Transaction re $36,925 to Global Fuel Logistics, dated 04.06.2020 | | | | | |
| 35 | | Signature Bank ACH Transaction re $68,255 to Global Fuel Logistics, dated 04.15.2020 | | | | | |
| 36 | | Signature Bank ACH Transaction re $46,850 to Global Fuel Logistics, dated 04.27.2020 | | | | | |
| 37 | | Signature Bank ACH Transaction re $85,325 to Global Fuel Logistics, dated 05.05.2020 | | | | | |
| 38 | | Signature Bank ACH Transaction re $82,422 to Global Fuel Logistics, dated 05.12.2020 | | | | | |

3

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 39 | | Signature Bank ACH Transaction re $78,565 to Global Fuel Logistics, dated 05.20.2020 | | | | | |
| 40 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 07.02.2020 | | | | | |
| 41 | | INTENTIONALLY LEFT BLANK | | | | | |
| 42 | | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawal, dated 06.04.2019 | | | | | |
| 43 | | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawal, dated 06.11.2019 | | | | | |
| 44 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $22,000 Withdrawal, dated 08.28.2019 | | | | | |
| 45 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $25,000 Withdrawal, dated 08.29.2019 | | | | | |
| 46 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | | | | | |
| 47 | | Wells Fargo Bank Wire Transaction Report re Acct x6934 $15,000, dated 09.18.2019 | | | | | |
| 48 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 09.26.2019 | | | | | |
| 49 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 09.27.2019 | | | | | |
| 50 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 10.01.2019 | | | | | |
| 51 | | Wells Fargo Bank Withdrawal Slip re Acct x6934 $12,000 Withdrawal, dated 10.02.2019 | | | | | |
| 52 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 11.30.2019 | | | | | |

4

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 53 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 02.20.2020 | | | | | |
| 54 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $15,000 Withdrawal, dated 02.21.2020 | | | | | |
| 55 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 02.27.2020 | | | | | |
| 56 | | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 03.03.2020 | | | | | |
| 57-100 | | INTENTIONALLY LEFT BLANK | | | | | |
| 101 | | 2016 Gross Income Summary for Michael Tew | | | | | |
| 102 | | 2017 Gross Income Summary for Michael Tew | | | | | |
| 103 | | 2018 Gross Income Summary for Michael Tew | | | | | |
| 104 | | 2019 Gross Income Summary for Michael Tew | | | | | |
| 105 | | Internal Revenue Service 2019 Account Transcript | | | | | |
| 106 | | 2016 Gross Income Summary for Sand Hill LLC | | | | | |
| 107 | | 2017 Gross Income Summary for Sand Hill LLC | | | | | |
| 108 | | 2018 Gross Income Summary for Sand Hill LLC | | | | | |
| 109 | | 2019 Gross Income Summary for Sand Hill LLC | | | | | |
| 110 | | Internal Revenue Service 2016 Account Transcript | | | | | |

5

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 111 | | Internal Revenue Service 2017 Account Transcript | | | | | |
| 112 | | Internal Revenue Service 2018 Account Transcript | | | | | |
| 113 - 200 | | INTENTIONALLY LEFT BLANK | | | | | |
| 201 | | INTENTIONALLY LEFT BLANK | | | | | |
| 202 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, statement 08.31.2018 | | | | | |
| 203 | | Regions Bank Statement re Account x4514 [MM], statement period 10.12.2018-11.08.2018 | | | | | |
| 204 | | INTENTIONALLY LEFT BLANK | | | | | |
| 205 | | Regions Bank Statement re Account x4514 [MM], statement period 11.09.2018-12.10.2018 | | | | | |
| 206 | | INTENTIONALLY LEFT BLANK | | | | | |
| 207 | | ANB Bank Statement re Account x3099 [MM], dated 12.18.2018 | | | | | |
| 208 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2019-02.16.2019 | | | | | |
| 209 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 210 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | | | | | |
| 211 | | INTENTIONALLY LEFT BLANK | | | | | |

6

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 212 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 213 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 08.31.2019 | | | | | |
| 214 | | INTENTIONALLY LEFT BLANK | | | | | |
| 215 | | INTENTIONALLY LEFT BLANK | | | | | |
| 216 | | INTENTIONALLY LEFT BLANK | | | | | |
| 217 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 09.30.2019 | | | | | |
| 218 | | INTENTIONALLY LEFT BLANK | | | | | |
| 219 | | INTENTIONALLY LEFT BLANK | | | | | |
| 220 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 10.31.2019 | | | | | |
| 221 | | INTENTIONALLY LEFT BLANK | | | | | |
| 222 | | INTENTIONALLY LEFT BLANK | | | | | |
| 223 | | INTENTIONALLY LEFT BLANK | | | | | |
| 224 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | | | | | |
| 225 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 226 | | INTENTIONALLY LEFT BLANK | | | | | |

7

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 227 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | | | | | |
| 228 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 229 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 02.29.2020 | | | | | |
| 230 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 231 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2020-03.16.2020 | | | | | |
| 232 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 233 | | INTENTIONALLY LEFT BLANK | | | | | |
| 234 | | INTENTIONALLY LEFT BLANK | | | | | |
| 235 | | INTENTIONALLY LEFT BLANK | | | | | |
| 236 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2020-05.16.2020 | | | | | |
| 237 | | INTENTIONALLY LEFT BLANK | | | | | |
| 238 | | INTENTIONALLY LEFT BLANK | | | | | |
| 239 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 240 | | Navy Federal Credit Union Transaction Details re Access x1390, Account x3094 Global Fuel Logistics, transaction period 07.20.2020-07.08.2020 | | | | | |

8

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 241 | | INTENTIONALLY LEFT BLANK | | | | | |
| 242 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | | | | | |
| 243 | | INTENTIONALLY LEFT BLANK | | | | | |
| 244 | | INTENTIONALLY LEFT BLANK | | | | | |
| 245 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 08.31.2019 | | | | | |
| 246 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | | | | | |
| 247 | | INTENTIONALLY LEFT BLANK | | | | | |
| 248 | | INTENTIONALLY LEFT BLANK | | | | | |
| 249 | | INTENTIONALLY LEFT BLANK | | | | | |
| 250 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 10.31.2019 | | | | | |
| 251 - 300 | | INTENTIONALLY LEFT BLANK | | | | | |
| 301 | | ANB Bank Signature Card re Account x3099 [MM] | | | | | |
| 302 | | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | | | | | |
| 303 | | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | | | | | |
| 304 | | Navy Federal Credit Union Application re Global Fuel Logistics, dated 06.08.2020 | | | | | |

9

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 305 | | Regions Bank Signature Cards re Account x0514 [MM] | | | | | |
| 306 | | Wells Fargo Bank Signature Card re Account x6934 Sand Hill LLC, LLC | | | | | |
| 307 | | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | | | | | |
| 308 | | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | | | | | |
| 309 | | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | | | | | |
| 310 | | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, dated 08.31.2018 | | | | | |
| 311 | | BBVA Compass Signature Card re Account x0987 [5530 JD] LLC | | | | | |
| 312 | | Access National Bank Statement re Account x5965 [PM] Inc., statement period 12.01.2018-12.31.2018 | | | | | |
| 313 | | Simple Signature Card for Kimberley Tew | | | | | |
| 314 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | | | | | |
| 315 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 316 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | | | | | |
| 317 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 318 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | | | | | |

10

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 319 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | | | | | |
| 320 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | | | | | |
| 321 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 322 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | | | | | |
| 323 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 324 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.08.2019-01.16.2019 | | | | | |
| 325 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2019-02.16.2019 | | | | | |
| 326 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 327 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2019-04.16.2019 | | | | | |
| 328 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | | | | | |
| 329 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | | | | | |
| 330 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | | | | | |
| 331 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | | | | | |
| 332 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | | | | | |

11

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 333 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 334 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | | | | | |
| 335 | | American Express Corporate Card Authorization re Account x91009 National Air Cargo, Cardmember Michael Tew | | | | | |
| 336 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | | | | | |
| 337 | | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | | | | | |
| 338 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 06.16.2018 | | | | | |
| 339 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 07.16.2018 | | | | | |
| 340 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 12.31.2019 | | | | | |
| 341 | | BBVA Compass Statement re Account x0987 5530 Jassamine Development LLC, statement period 11.01.2018-11.30.2018 | | | | | |
| 342 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 05.31.2019 | | | | | |
| 343 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 01.31.2020 | | | | | |
| 344 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 02.29.2020 | | | | | |

12

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 345 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 03.31.2020 | | | | | |
| 346 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2020-06.30.2020 | | | | | |
| 347 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 08.16.2018 | | | | | |
| 348 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 09.16.2018 | | | | | |
| 349 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 10.16.2018 | | | | | |
| 350 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 11.16.2018 | | | | | |
| 351 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 12.16.2018 | | | | | |
| 352 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 01.16.2019 | | | | | |
| 353 | | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 02.16.2019 | | | | | |
| 354 | | Access National Bank Signature Card re Account x5965 [PM] | | | | | |
| 355 | | Signature Bank ACH Transaction re $25,000 to Global Fuel Logistics, dated 10.23.2019 | | | | | |

13

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 356 | | Signature Bank ACH Transaction re $21,250 to [PM] Inc., dated 12.10.2018 | | | | | |
| 357 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.22.2018 | | | | | |
| 358 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.23.2018 | | | | | |
| 359 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.10.2018 | | | | | |
| 360 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.18.2018 | | | | | |
| 361 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.28.2018 | | | | | |
| 362 | | Signature Bank ACH Transaction re $30,000 to [MM], dated 12.03.2018 | | | | | |
| 363 | | Access National Bank Statement re Account x5965 [PM] Inc., statement period 03.01.2019-03.31.2019 | | | | | |
| 364 | | ANB Bank Statement re Account x3099 [MM], dated 01.04.2019 | | | | | |
| 365 | | Signature Bank ACH Transaction re $21,000 to [PM] Inc., dated 01.23.2019 | | | | | |
| 366 | | Signature Bank ACH Transaction re $15,312.50 to [PM] Inc., dated 01.07.2019 | | | | | |
| 367 | | Signature Bank ACH Transaction re $23,350 to [PM] Inc., dated 01.10.2019 | | | | | |
| 368 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.07.2019-01.16.2019 | | | | | |
| 369 | | Signature Bank ACH Transaction re $28,000 to [PM] Inc., dated 01.18.2019 | | | | | |

14

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 370 | | Signature Bank ACH Transaction re $31,500 to [PM] Inc., dated 03.14.2019 | | | | | |
| 371 | | Signature Bank ACH Transaction re $37,800 to [PM] Inc., dated 03.04.2019 | | | | | |
| 372 | | Signature Bank ACH Transaction re $20,250 to [PM] Inc., dated 03.19.2019 | | | | | |
| 373 | | Signature Bank ACH Transactions re: $37,500 to [PM] Inc., dated 04.08.2019; $18,750 to [PM] Inc., dated 04.11.2019; and $18,750 to [PM] Inc., dated 04.15.2019 | | | | | |
| 374 | | Signature Bank ACH Transaction re $18,750 to [PM] Inc., dated 04.17.2019 | | | | | |
| 375 | | Signature Bank ACH Transactions re: $18,750 to [PM] Inc., dated 04.22.2019; $18,750 to [PM] Inc., dated 04.24.2019; $38,640 to [PM], dated 04.29.2019; and $19,890 to [PM], dated 05.07.2019 | | | | | |
| 376 | | Signature Bank ACH Transactions re: $49,750 to [PM], dated 05.07.2019; and $40,000 to [PM] Inc., dated 05.10.2019 | | | | | |
| 377 | | Signature Bank ACH Transactions re: $19,900 to [PM], dated 05.15.2019; $23,785 to [PM], dated 05.21.2019; $9,950 to [PM], dated 05.23.2019; $11,150 to [PM], dated 05.28.2019; and $10,100 to [PM] Inc., dated 05.29.2019 | | | | | |
| 378 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | | | | | |
| 379 | | Signature Bank ACH Transactions re: $53,500 to [PM], dated 06.03.2019; $28,000 to [PM], dated 06.10.2019; and $9,500 to [PM], dated 06.13.2019 | | | | | |

15

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 380 | | Signature Bank ACH Transactions re: $50,000 to [PM] Inc., dated 06.20.2019; $15,000 to [PM], dated 06.25.2019; and $30,000 to Sand Hill LLC, dated 06.26.2019 | | | | | |
| 381 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | | | | | |
| 382 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 06.30.2019 | | | | | |
| 383 | | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | | | | | |
| 384 | | Signature Bank ACH Transactions re: $9,200 to Sand Hill LLC, dated 06.28.2019; $13,000 to SHI LLC, dated 07.09.2019; $27,475 to SHI LLC, dated 07.11.2019; and $10,000 to SHI LLC, dated 07.19.2019 | | | | | |
| 385 | | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 07.31.2019 | | | | | |
| 386 | | Signature Bank ACH Transaction re $12,900 to Global Fuel Logistics, dated 01.07.2020 | | | | | |
| 387 | | Signature Bank ACH Transactions re: $15,500 to Global Fuel Logistics, dated 01.10.2020; $19,500 to Global Fuel Logistics, dated 01.17.2020; $9,800 to Global Fuel Logistics, dated 01.22.2020; $13,500 to Global Fuel Logistics, dated 01.23.2020; $36,500 to Global Fuel Logistics, dated 01.27.2020; and $7,200 to Global Fuel Logistics, dated 01.30.2020 | | | | | |
| 388 | | Signature Bank ACH Transaction re $13,000 to Global Fuel Logistics, dated 08.09.2019 | | | | | |
| 389 | | Signature Bank ACH Transaction re $24,700 to Global Fuel Logistics, dated 03.05.2020 | | | | | |

16

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 390 | | Signature Bank ACH Transactions re: $97,545 to Global Fuel Logistics, dated 06.22.2020; $71,550 to Global Fuel Logistics, dated 06.24.2020; and $105,000 to Global Fuel Logistics, dated 06.29.2020 | | | | | |
| 391 | | Signature Bank ACH Transaction re $83,526 to Global Fuel Logistics, dated 06.02.2020 | | | | | |
| 392 | | Signature Bank ACH Transactions re: $45,220 to Global Fuel Logistics, dated 06.04.2020; $93,135 to Global Fuel Logistics, dated 06.09.2020; and $93,635 to Global Fuel Logistics, dated 06.17.2020 | | | | | |
| 393 | | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2010-06.30.2020 | | | | | |
| 394 | | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | | | | | |
| 395 | | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | | | | | |
| 396 | | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | | | | | |
| 397 | | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | | | | | |
| 398 | | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | | | | | |
| 399 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | | | | | |
| 400 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 401 | | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | | | | | |

17

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 402 | | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | | | | | |
| 403 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | | | | | |
| 404 | | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | | | | | |
| 405 | | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | | | | | |
| 406 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | | | | | |
| 407 | | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | | | | | |
| 408 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | | | | | |
| 409 | | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | | | | | |
| 410 | | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | | | | | |
| 411 | | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | | | | | |
| 412 | | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | | | | | |
| 413 | | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | | | | | |
| 414 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | | | | |
| 415 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 416 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 417 | | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | | | | | |
| 418 | | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | | | | | |
| 419 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | | | | | |
| 420 | | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | | | | | |
| 421 | | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | | | | | |
| 422 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | | | | | |
| 423 | | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | | | | | |
| 424 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | | | | | |
| 425 | | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | | | | | |
| 426 | | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | | | | | |
| 427 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | | | | |
| 428 | | Signature Bank ACH Transaction re: $13,000 to Sand Hill LLC, dated 08.09.2019 | | | | | |
| 429 | | Signature Bank ACH Transaction re: $35,000 to Sand Hill LLC, dated 08.14.2019 | | | | | |

19

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 430 | | Signature Bank ACH Transaction re: $15,000 to Global Fuel Logistics, dated 08.15.2019 | | | | | |
| 431 | | Signature Bank ACH Transaction re: $27,000 to Sand Hill LLC, dated 08.22.2019 | | | | | |
| 432 | | Signature Bank ACH Transaction re: $45,000 to Sand Hill LLC, dated 08.26.2019 | | | | | |
| 433 | | Signature Bank Wire Transaction re: $45,000 to Global Fuel Logistics, dated 08.29.2019 | | | | | |
| 434 | | Signature Bank ACH Transaction re: $13,000 to Global Fuel Logistics, dated 02.03.2020 | | | | | |
| 435 | | Signature Bank ACH Transaction re: $23,200 to Global Fuel Logistics, dated 02.06.2020 | | | | | |
| 436 | | Signature Bank ACH Transaction re: $32,500 to Global Fuel Logistics, dated 02.13.2020 | | | | | |
| 437 | | Signature Bank ACH Transaction re: $55,000 to Global Fuel Logistics, dated 02.18.2020 | | | | | |
| 438 | | Signature Bank ACH Transaction re: $40,000 to Global Fuel Logistics, dated 02.26.2020 | | | | | |
| 439 | | Signature Bank ACH Transaction re: $74,955 to Global Fuel Logistics, dated 03.11.2020 | | | | | |
| 440 | | Signature Bank ACH Transaction re: $17,200 to Global Fuel Logistics, dated 03.17.2020 | | | | | |
| 441 | | Signature Bank ACH Transaction re: $32,245 to Global Fuel Logistics, dated 03.24.2020 | | | | | |
| 442 | | Signature Bank ACH Transaction re: $32,300 to Global Fuel Logistics, dated 03.26.2020 | | | | | |
| 443 | | Signature Bank ACH Transaction re: $41,225 to Global Fuel Logistics, dated 04.02.2020 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 444 | | Signature Bank ACH Transaction re: $37,353 to Global Fuel Logistics, dated 04.08.2020 | | | | | |
| 445 | | Signature Bank ACH Transaction re: $31,355 to Global Fuel Logistics, dated 04.13.2020 | | | | | |
| 446 | | Signature Bank ACH Transaction re: $56,530 to Global Fuel Logistics, dated 04.21.2020 | | | | | |
| 447 | | Signature Bank ACH Transaction re: $36,240 to Global Fuel Logistics, dated 04.29.2020 | | | | | |
| 448 | | Signature Bank ACH Transaction re: $77,460 to Global Fuel Logistics, dated 05.18.2020 | | | | | |
| 449 | | Signature Bank ACH Transaction re: $85,500 to Global Fuel Logistics, dated 05.27.2020 | | | | | |
| 450 | | Signature Bank ACH Transaction re $20,250.00 to [PM] Inc., dated 03.18.2019 | | | | | |
| 451 | | Signature Bank ACH Transaction re $60,000 to Global Fuel Logistics, dated 09.10.2019 | | | | | |
| 452 | | Signature Bank ACH Transaction re $51,500 to Sand Hill LLC, dated 09.12.2019 | | | | | |
| 453 | | Signature Bank ACH Transaction re $11,950 to Global Fuel Logistics, dated 09.16.2019 | | | | | |
| 454 | | Signature Bank ACH Transaction re $41,500 to Sand Hill LLC, dated 09.19.2019 | | | | | |
| 455 | | Signature Bank ACH Transaction re $60,000 to Sand Hill LLC, dated 09.26.2019 | | | | | |
| 456 | | Signature Bank ACH Transaction re $75,000 to Sand Hill LLC, dated 09.30.2019 | | | | | |
| 457 | | Signature Bank ACH Transaction re $35,000 to Sand Hill LLC, dated 10.10.2019 | | | | | |

21

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 458 | | Signature Bank ACH Transaction re $23,750 to Global Fuel Logistics, dated 10.30.2019 | | | | | |
| 459 | | Signature Bank ACH Transaction re $25,000 to Sand Hill LLC, dated 11.18.2019 | | | | | |
| 460 | | Signature Bank ACH Transaction re $17,900 to Global Fuel Logistics, dated 11.21.2019 | | | | | |
| 461 | | Signature Bank ACH Transaction re $42,000 to Global Fuel Logistics, dated 11.27.2019 | | | | | |
| 462 | | Signature Bank ACH Transaction re $26,500 to Global Fuel Logistics, dated 12.05.2019 | | | | | |
| 463 | | Signature Bank ACH Transaction re $51,150 to Global Fuel Logistics, dated 12.09.2019 | | | | | |
| 464 | | Signature Bank ACH Transaction re $7,800 to Global Fuel Logistics, dated 12.16.2019 | | | | | |
| 465 | | Signature Bank ACH Transaction re $33,300 to Global Fuel Logistics, dated 12.17.2019 | | | | | |
| 466 | | Signature Bank ACH Transaction re $14,350 to Global Fuel Logistics, dated 12.19.2019 | | | | | |
| 467 | | Signature Bank ACH Transaction re $55,500 to Global Fuel Logistics, dated 12.26.2019 | | | | | |
| 468 | | Signature Bank ACH Transaction re $77,500 to Global Fuel Logistics, dated 12.30.2019 | | | | | |
| 469 | | Wells Fargo Bank Wire Transaction Report re Acct x6934 $20,611.01, dated 11.01.2019 | | | | | |
| 470 | | Navy Federal Credit Union Surveillance Photo, dated 06.23.2020 | | | | | |
| 471 | | Spreadsheet of Digital Mint Transaction Details, Part One | | | | | |

22

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 472 | | Spreadsheet of Digital Mint Transaction Details, Part Two | | | | | |
| 473 | | American Express Application re Michael Tew | | | | | |
| 474 | | American Express Application re Kimberley Tew | | | | | |
| 475 | | Digital Mint Surveillance Photo 03.07.2020 00:33:01 UTC | | | | | |
| 476 | | Digital Mint Surveillance Photo 03.07.2020 00:29:36 UTC | | | | | |
| 477 | | Digital Mint Surveillance Photo 04.30.2020 21:51:39 UTC | | | | | |
| 478 | | Digital Mint Surveillance Photo 04.30.2020 21:53:34 UTC | | | | | |
| 479 | | Digital Mint Surveillance Photo 04.30.2020 21:55:38 UTC | | | | | |
| 480 | | Digital Mint Surveillance Photo 04.30.2020 21:58:08 UTC | | | | | |
| 481 | | Digital Mint Surveillance Photo 04.30.2020 21:59:40 UTC | | | | | |
| 482 | | Digital Mint Surveillance Photo 04.30.2020 23:43:54 UTC | | | | | |
| 483 | | Digital Mint Surveillance Photo 04.30.2020 23:46:20 UTC | | | | | |
| 484 | | Digital Mint Surveillance Photo 06.23.2020 23:27:57 UTC | | | | | |
| 485 | | Digital Mint Surveillance Photo 06.23.2020 23:30:15 UTC | | | | | |

23

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 486 | | Digital Mint Surveillance Photo 06.23.2020 23:32:14 UTC | | | | | |
| 487 | | Digital Mint Surveillance Photo 06.23.2020 23:33:59 UTC | | | | | |
| 488 | | Digital Mint Surveillance Photo 06.23.2020 23:37:58 UTC | | | | | |
| 489 | | Digital Mint Surveillance Photo 06.23.2020 23:40:00 UTC | | | | | |
| 490 | | Digital Mint Surveillance Photo 06.23.2020 23:42:54 UTC | | | | | |
| 491 | | Digital Mint Surveillance Photo 06.23.2020 23:44:58 UTC | | | | | |
| 492 | | Signature Bank ACH Transaction re $68,400 to Global Fuel Logistics, dated 05.11.2020 | | | | | |
| 493 | | Navy Federal Credit Union Surveillance Photo, dated 04.30.2020 | | | | | |
| 494 | | Flagstar Bank FIS Technology Centers Service Organizations Report re 01.01.2020 to 09.30.2020 | | | | | |
| 495 | | ACH Spreadsheet from Regions Bank | | | | | |
| 496 - 499 | | INTENTIONALLY BLANK | | | | | |
| 500 | | Kraken Account Opening and Verification Documents for Kimberley Tew | | | | | |
| 501 | | Kraken Account Opening and Verification Documents for Michael Tew | | | | | |
| 502 | | Coinbase profile image records for Michael Tew | | | | | |

24

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 503 | | Coinbase profile image records for Kimberley Tew | | | | | |
| 504 | | Google Pay Customer Profile re kley@me.com | | | | | |
| 505 | | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | | | | | |
| 506 | | McDonald Audi Wire Transfer Records re $20,611.01 Incoming Money Transfer, dated 11.01.2019 | | | | | |
| 507 | | Wynn Las Vegas Jackpot Report between 07.04.2019 and 11.29.2019 | | | | | |
| 508 | | Wynn Las Vegas 2019 Loss Summary, as of 07.16.2020 | | | | | |
| 509 | | Wynn Las Vegas Reservation Confirmation #23362412 for Kimberley Tew, 10.30.2019 arrival & 11.02.19 departure | | | | | |
| 510 | | Wynn Las Vegas Reservation/Stay History for Kimberley Tew | | | | | |
| 511 | | Wynn Las Vegas Reservation/Stay History re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | | | | | |
| 512 | | GoDaddy Domain Information re Domain Name "Global Fuel.Co" | | | | | |
| 513 | | GoDaddy Domain Information re Domain Name "Sandhillrp.com" | | | | | |
| 514 | | AT&T Subscriber Information re phone number x1312, Michael Tew | | | | | |
| 515 | | AT&T Subscriber Information re phone number x7473, Michael Tew | | | | | |
| 516 | | AT&T Subscriber Information re phone number x2046, Kimberley Vertanen | | | | | |

25

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 517 | | AT&T Text Message History re phone numbers x2046 & x1312 | | | | | |
| 518 | | AT&T Records re phone number x1312 | | | | | |
| 519 | | Spreadsheet of Verizon Call Records re phone number x1709 | | | | | |
| 520 | | Google Subscriber Information re [5530 JD] Email Recovery (chrisrncn@gmail.com) | | | | | |
| 521 | | Google Subscriber Information re [PM] email recovery (political.media.wdc@gmail.com) | | | | | |
| 522 | | Google Voice Record re Google Voice Number x0152 | | | | | |
| 523 | | Google Subscriber Information re vtleycap@gmail.com (recovery email kley@me.com) | | | | | |
| 524 | | Google subscriber information re meyersconsultinggroupinc@gmail.com | | | | | |
| 525 | | IRS Form W-9 re [MM], dated 10.11.2018 | | | | | |
| 526 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | | | | | |
| 527 | | Plea agreement as to Jonathan Yioulos, dated 11.18.2021 | | | | | |
| 528 | | Audio of 7/15/2020 Proffer with Michael Tew | | | | | |
| 529 | | Audio of 7/28/2020 Proffer with Michael Tew | | | | | |
| 530 | | Audio of 10/23/2020 Proffer with Kimberley Tew | | | | | |
| 531 | | 07.07.2020 Photograph of Yioulos Phone Contact 'JB' | | | | | |

26

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 532 | | Email re "RE: AMEX" on 07.16.2018 | | | | | |
| 533 | | Email re "FW: Scanned Document" on 07.31.2018 | | | | | |
| 534 | | Email re "RE: Wire - Michael Tew" on 08.02.2018 | | | | | |
| 535 | | Email re "FW: MT AGMT" on 09.14.2018 | | | | | |
| 536 | | Email re "FW: National Air Cargo Holdings Correspondence" on 09.17.2018 | | | | | |
| 537 | | Invoice #79487 re: [MCG] Inc for $10,000.00, dated 10.30.2018 | | | | | |
| 538 | | Email re "RE: Michael Tew - AMEX" on 01.17.2019 | | | | | |
| 539 | | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10222 for $17,955.50; & Aero Maintenance Resources Invoice #9611 for $79,292) | | | | | |
| 540 | | Invoice #79466 re: [MCG] Inc for $30,000.00, dated 10.12.2018 | | | | | |
| 541 | | Invoice #79488 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | | | | | |
| 542 | | Invoice #79489 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | | | | | |
| 543 | | Invoice #79490 re: [MCG] Inc for $25,000.00, dated 12.11.2018 | | | | | |
| 544 | | Colorado Secretary of State Statement of Foreign Entity Authority re: Global Fuel Logistics Inc., filed 07.11.2019 | | | | | |
| 545 | | IRS assignment of Employment Identification Number re Global Fuel Logistics, dated 07.09.2019 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 546 | | Wyoming Secretary of State Articles of Incorporation re Global Fuel Logistics Inc, filed 07.09.2019 | | | | | |
| 547 | | IRS Form SS-4 Application for Employer Identification Number re Sand Hill LLC | | | | | |
| 548 | | State of New York Department of State Certification of Articles of Organization and Other Filings for Sand Hill LLC, dated 11.09.2018 | | | | | |
| 549 | | Google Pay Customer Profile re kleytew@gmail.com | | | | | |
| 550 | | IRS Form 1099 re SandHill Research Partners, tax years 2015 through 2018 | | | | | |
| 551 | | Audio of 07.29.2020 meeting with Michael Tew at Yeti store | | | | | |
| 552 | | Email re "RE: MT AGMT" on 09.14.2018 | | | | | |
| 553 | | Email headers re email received by chrisrncn@gmail.com on 08.22.2018 | | | | | |
| 554 | | Spreadsheet of Apple account information re kley@me.com | | | | | |
| 555 | | Photograph re Search Warrant Executed on 07.31.2020 #1 | | | | | |
| 556 | | Photograph re Search Warrant Executed on 07.31.2020 #2 | | | | | |
| 557 | | Photograph re Search Warrant Executed on 07.31.2020 #3 | | | | | |
| 558 | | Photograph re Search Warrant Executed on 07.31.2020 #4 | | | | | |
| 559 | | Photograph re Search Warrant Executed on 07.31.2020 #5 | | | | | |

28

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 560 | | Photograph re Search Warrant Executed on 07.31.2020 #6 | | | | | |
| 561 | | Photograph re Search Warrant Executed on 07.31.2020 #7 | | | | | |
| 562 | | Wells Fargo Bank Bag | | | | | |
| 563 | | 2TB Seagate HDD Model ST20000DM001-1CH164 Serial Number W241LEZM | | | | | |
| 564 | | Photograph re Cellebrite Processing #1 | | | | | |
| 565 | | Photograph re Cellebrite Processing #2 | | | | | |
| 566 | | Photograph re Cellebrite Processing #3 | | | | | |
| 567 | | Photograph re Cellebrite Processing #4 | | | | | |
| 568 | | Wipe Log | | | | | |
| 569 | | Hash List for Apple Return | | | | | |
| 570 | | Kraken Ledger - AA70N84GI5WBRUCHI | | | | | |
| 571 | | Consulting A, Effective Date 02.08.2016, signed 02.08.2016 | | | | | |
| 572 | | Consulting Agreement, Effective Date 02.08.2016, signed 02.10.2016 | | | | | |
| 573 | | Consulting Agreement, Effective Date 05.01.2016, signed 06.22.2016 | | | | | |
| 574 | | Consulting Agreement, Effective Date 08.01.2016, signed 08.23.2016 | | | | | |

29

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 575 | | Consulting Agreement, Effective Date 11.01.2016, signed 12.15.2016 | | | | | |
| 576 | | Consulting Agreement, Effective Date 05.01.2017, signed 05.01.2017 | | | | | |
| 577 | | Text messages from H.S. to K.T. on 08.07.2018 12:43:34 AM UTC and 02:47:20 PM UTC | | | | | |
| 578 | | Text messages from H.S. to K.T. on 08.07.2018 01:02:41 AM UTC and 01:09:10 AM UTC | | | | | |
| 579 | | Text messages from H.S. to K.T. on 08.08.2018 | | | | | |
| 580 | | Text messages from H.S. to K.T. on 08.13.2018 | | | | | |
| 581 | | Text messages from H.S. to K.T. on 08.14.2018 | | | | | |
| 582 | | Text messages from H.S. to K.T. on 08.14.2018 | | | | | |
| 583 - 599 | | INTENTIONALLY LEFT BLANK | | | | | |
| 600 | | INTENTIONALLY LEFT BLANK | | | | | |
| 601 | | Email re "ACH Invoice" on 08.07.2018 ([HS] Invoice dated 08.07.2018 for $15,000) | | | | | |
| 602 | | Text messages between M.T. and J.Y. 08.07.2018 | | | | | |
| 603 | | Email re "re ACH Invoice" on 08.08.2018 ([HS] Invoice dated 08.08.2018 for $15,000) | | | | | |
| 604 | | Text messages between M.T. and J.Y. 08.08.2018 | | | | | |
| 605 | | Text messages between M.T. and J.Y. 08.09.2018 | | | | | |

30

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 606 | | Text messages between M.T. and J.Y. 08.13.2018 | | | | | |
| 607 | | Email re "Invoices: Michael Tew ACH August 15" on 08.14.2018 (Sand Hill Invoice #49 for $10,000 & [HS] Invoice dated 08.14.2018 for $20,000) | | | | | |
| 608 | | Text message between J.Y. and M.T on 08.10.2018 | | | | | |
| 609 | | Text message between J.Y. and M.T on 08.18.2018 | | | | | |
| 610 | | Text message between J.Y. and M.T on 08.21.2018 | | | | | |
| 611 | | Email re "Invoice (CORRECTED)" on 08.22.2018 ([5530 JD] Invoice #7321116 for $15,000) | | | | | |
| 612 | | Email re "Wire Confirmation" on 08.22.2018 | | | | | |
| 613 | | Text messages between J.Y. and M.T on 08.22.2018 | | | | | |
| 614 | | Text messages between J.Y. and M.T on 08.23.2018 | | | | | |
| 615 | | Email re "re Invoice (CORRECTED)" on 08.23.2018 | | | | | |
| 616 | | Emails re "re Is there an invoice for this wire out of Holdings?" on 08.24.2018 | | | | | |
| 617 | | Text messages between M.T. and JY. on 08.28.2018 | | | | | |
| 618 | | Email re "Confirms" on 08.30.2018 | | | | | |
| 619 | | Text messages between J.Y. and K.T. on 08.30.2018 | | | | | |

31

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 620 | | Text messages between J.Y. and M.T. on 08.30.2018 | | | | | |
| 621 | | Text messages between M.T. and J.Y. on 08.31.2018 | | | | | |
| 622 | | Text messages between M.T. and J.Y. on 09.01.2018 | | | | | |
| 623 | | INTENTIONALLY LEFT BLANK | | | | | |
| 624 | | Emails re "RE: Is there an invoice?" on 09.07.2018 | | | | | |
| 625 | | Text messages between M.T. and J.Y. on 09.07.2018 | | | | | |
| 626 | | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:13pm | | | | | |
| 627 | | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:14pm | | | | | |
| 628 | | Text messages from J.Y. to K.T. on 09.10.2018 | | | | | |
| 629 | | Email (NO SUBJECT) on 09.10.2018 ([5530 JD] Invoice #7321118 for $15,000 & Invoice #7321117 for $15,000) | | | | | |
| 630 | | Emails re "RE: Scaife Invoices" on 09.10.2018 | | | | | |
| 631 | | Emails re "RE:" (NO SUBJECT) on 09.10.2018 | | | | | |
| 632 | | Email re "Cancel ACH" on 09.10.2018 | | | | | |
| 633 | | Text messages between M.T. and J.Y. on 09.12.2018 | | | | | |
| 634 | | Text messages from J.Y. to K.T. on 09.12.2018 | | | | | |

32

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 635 | | Text messages from J.Y. to K.T. on 09.13.2018 | | | | | |
| 636 | | Text messages between M.T. and J.Y. on 09.13.2018 | | | | | |
| 637 | | Text messages from J.Y. to K.T. on 09.18.2018 | | | | | |
| 638 | | Email re "Invoice" on 09.18.2018 ([5530 JD] Invoice #7321119 for $15,000) | | | | | |
| 639 | | Text messages from J.Y. to K.T. on 09.18.2018 | | | | | |
| 640 | | Text messages from J.Y. to K.T. on 09.28.2018 | | | | | |
| 641 | | INTENTIONALLY LEFT BLANK | | | | | |
| 642 | | Email re "Consulting Invoice" on 09.28.2018 ([5530 JD] Invoice #7321120 for $15,000) | | | | | |
| 643 | | Email re "RE: Invoices needed - Holdings" on 09.28.2018 | | | | | |
| 644 | | Email re "Jess" on 10.01.2018 | | | | | |
| 645 | | Text message from J.Y. to M.T. on 10.09.2018 | | | | | |
| 646 | | Text messages from J.Y. to K.T. on 10.25.2018 | | | | | |
| 647 | | Email re "Fwd: Invoice" on 10.25.2018 | | | | | |
| 648 | | Text messages between J.Y. to M.T. on 10.25.2018 | | | | | |
| 649 | | Email re "Oct Invoice" on 10.30.2018 | | | | | |

33

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 650 | | Text messages between J.Y. to M.T. on 10.30.2018 | | | | | |
| 651 | | Text messages from J.Y. to K.T. on 10.30.2018 | | | | | |
| 652 | | Text messages between J.Y. to M.T. on 10.31.2018 | | | | | |
| 653 | | Email re "is there an invoice for this payment out of holdings?" on 10.31.2018 | | | | | |
| 654 | | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018 at 2:13pm | | | | | |
| 655 | | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018, time unknown | | | | | |
| 656 | | Text mess+C405ages sent from Kley (M.T.) to M.M. on 11.06.2018 | | | | | |
| 657 | | Email re "[MCG] LLC" on 11.06.2018 | | | | | |
| 658 | | Email re "RE: Invoice" on 11.09.2018 | | | | | |
| 659 | | Text messages between J.Y. to M.T. on 11.09.2018 | | | | | |
| 660 | | INTENTIONALLY LEFT BLANK | | | | | |
| 661 | | Email re "RE: Entity: Sand Hill, LLC - New York" on 11.12.2018 | | | | | |
| 662 | | Text messages between J.Y. and M.T. on 11.13.2018 | | | | | |
| 663 | | Text messages between J.Y. and M.T. on 11.15.2018 | | | | | |
| 664 | | Text messages between J.Y. and M.T. on 11.16.2018 | | | | | |

34

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 665 | | Text messages between J.Y. and M.T. on 11.19.2018 | | | | | |
| 666 | | Email re "RE: Invoice" on 11.19.2018 at 8:55pm | | | | | |
| 667 | | Email re "RE: Invoice" on 11.19.2018 at 9:04pm | | | | | |
| 668 | | Text messages between J.Y. and M.T. on 11.20.2018 | | | | | |
| 669 | | Text messages between Kley (M.T.) and M.M. on 11.20.2018 | | | | | |
| 670 | | Text messages between J.Y. and M.T. on 11.21.2018 | | | | | |
| 671 | | Text messages between J.Y. and M.T. on 11.23.2018 | | | | | |
| 672 | | Text messages between J.Y. and M.T. on 11.25.2018 | | | | | |
| 673 | | Text messages between J.Y. and M.T. on 11.26.2018 | | | | | |
| 674 | | Email re "RE: Invoice" on 11.26.2018 at 7:22pm ([5530 JD] Invoice #7321122 for $30,000) | | | | | |
| 675 | | Email re "RE: Invoice" on 11.26.2018 at 4:22pm | | | | | |
| 676 | | Text messages between J.Y. and M.T. on 11.27.2018 | | | | | |
| 677 | | Email re "RE: Cash Sheet - Holdings - what's this?" on 11.28.2018 | | | | | |
| 678 | | Text message from J.Y. to M.T. on 11.30.2018 | | | | | |
| 679 | | Text messages from J.Y. to K.T. on 12.01.2018 | | | | | |

35

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 680 | | Email re "RE: Final Invoice" on 12.03.2018 ([MCG] Invoice #79489 for $30,000) | | | | | |
| 681 | | Text messages between J.Y. and M.T. on 12.04.2018 | | | | | |
| 682 | | Text messages from J.Y. to K.T. on 12.04.2018 | | | | | |
| 683 | | Email re "Missing Meyers invoices" on 12.04.2018 ([MCG] Invoice #79489 for $30,000 & Invoice #79488 for $30,000) | | | | | |
| 684 | | Text messages between J.Y. and M.T. on 12.06.2018 | | | | | |
| 685 | | Text messages from J.Y. to K.T. on 12.06.2018 | | | | | |
| 686 | | Email re "Fwd: [PM], Inc. - Invoice for Services" on 12.07.2018 ([PM] Invoice #6516 for $21,250) | | | | | |
| 687 | | Text messages between J.Y. and M.T. on 12.07.2018 | | | | | |
| 688 | | Email re: "RE: [PM], Inc. - Invoice for Services" on 12.07.2018 | | | | | |
| 689 | | Text messages between J.Y. and M.T. on 12.06.2018 | | | | | |
| 690 | | Text messages between J.Y. and M.T. on 12.10.2018 | | | | | |
| 691 | | Email re "New Vendor - Paid on Friday" on 12.10.2018 | | | | | |
| 692 | | Email re "Re: Final Invoice" on 12.11.2018 ([MCG] Invoice #79490 for $25,000) | | | | | |
| 693 | | Text messages between J.Y. and M.T. on 12.11.2018 | | | | | |

36

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 694 | | Email re "Meyers Inv" on 12.14.2018 | | | | | |
| 695 | | Text messages between J.Y. and M.T. on 12.18.2018 | | | | | |
| 696 | | Text messages between Kley (M.T.) and M.M. on 12.18.2018 | | | | | |
| 697 | | Text messages between J.Y. and M.T. on 12.19.2018 | | | | | |
| 698 | | Text messages between J.Y. and M.T. on 12.20.2018 | | | | | |
| 699 | | Email re "FW: INVOICES: MICHAEL TEW ACH AUGUST 15" on 12.20.2018 | | | | | |
| 700 | | Email re "FW: [PM], Inc. - Invoice for Services" on 12.20.2018 ([PM] Invoice #6517 for $15,125) | | | | | |
| 701 | | Text messages between J.Y. and M.T. on 12.21.2018 | | | | | |
| 702 | | Text messages between J.Y. and M.T. on 01.07.2019 | | | | | |
| 703 | | Email re "Invoice from [PM], Inc." on 01.07.2019 ([PM] Invoice #6540 for $15,312.50) | | | | | |
| 704 | | Text messages between J.Y. and M.T. on 01.09.2019 | | | | | |
| 705 | | Text messages between J.Y. and M.T. on 01.10.2019 | | | | | |
| 706 | | Email re "Invoice from [PM], Inc." on 01.10.2019 ([PM] Invoice #6670 for $25,350) | | | | | |
| 707 | | Text messages between J.Y. and M.T. on 01.17.2019 | | | | | |
| 708 | | Text messages from J.Y. to K.T. on 01.17.2019 | | | | | |

37

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 709 | | Email re "FW: Invoice from [PM], Inc." on 01.17.2019 | | | | | |
| 710 | | Text messages between J.Y. and M.T. on 01.18.2019 | | | | | |
| 711 | | Email re "Invoice from [PM], Inc." on 01.18.2019 ([PM] Invoice #6712 for $27,562.50) | | | | | |
| 712 | | Text messages between J.Y. and M.T. on 01.23.2019 | | | | | |
| 713 | | Email re "Invoice from [PM], Inc." on 01.23.2019 ([PM] Invoice #6714 for $21,000 & Invoice #6712 for $28,000) | | | | | |
| 714 | | Email re "FW: Invoice from [PM], Inc." on 01.25.2019 | | | | | |
| 715 | | Text messages from J.Y. to K.T. on 02.07.2019 | | | | | |
| 716 | | Email re "Invoice from [PM], Inc." on 02.07.2019 ([PM] Invoice #6775 for $15,250) | | | | | |
| 717 | | Text messages between J.Y. and M.T. on 02.19.2019 | | | | | |
| 718 | | Text messages from J.Y. to K.T. on 02.19.2019 | | | | | |
| 719 | | Email re "Invoice from [PM], Inc." on 02.19.2019  ([PM] Invoice #6786 for $15,250) | | | | | |
| 720 | | Email re "FW: Invoice from [PM], Inc." on 02.21.2019 | | | | | |
| 721 | | Text messages between J.Y. and M.T. on 02.24.2019 | | | | | |
| 722 | | Text messages between J.Y. and M.T. on 03.01.2019 | | | | | |
| 723 | | Email re "Invoice from [PM], Inc." on 03.04.2019 ([PM] Invoice #6804 for $37,800) | | | | | |

38

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 724 | | Text messages between Kley (M.T.) and K.T. on 03.06.2019 | | | | | |
| 725 | | Email re "FW: Invoice from [PM], Inc." on 03.07.2019 | | | | | |
| 726 | | Text messages between Kley (M.T.) and K.T. on 03.14.2019 | | | | | |
| 727 | | Email re "Invoice from [PM], Inc." on 03.14.2019 ([PM] Invoice #6881 for $31,500) | | | | | |
| 728 | | Email re "FW: Invoice from [PM], Inc." on 03.15.2019 | | | | | |
| 729 | | Text messages between Kley (M.T.) and K.T. on 03.17.2019 | | | | | |
| 730 | | Text messages between Kley (M.T.) and K.T. on 03.18.2019 | | | | | |
| 731 | | Text messages between J.Y. and M.T. on 03.18.2019 | | | | | |
| 732 | | Email re "Invoice from [PM], Inc." on 03.18.2019 ([PM] Invoice #6910 for $20,250) | | | | | |
| 733 | | Email re "FW: Invoice from [PM], Inc." on 03.19.2019 | | | | | |
| 734 | | Text messages between J.Y. and M.T. on 03.19.2019 | | | | | |
| 735 | | Text messages between Kley (M.T.) and K.T. on 03.19.2019 | | | | | |
| 736 | | Text messages between M.T. and K.T. on 03.28.2019 | | | | | |
| 737 | | Email re "Invoice from [PM], Inc." on 03.28.2019 ([PM] Invoice #6976 for $38,000) | | | | | |

39

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 738 | | INTENTIONALLY LEFT BLANK | | | | | |
| 739 | | Text messages between Kley (M.T.) and K.T. on 03.30.2019 | | | | | |
| 740 | | Text messages between Kley (M.T.) and K.T. on 04.03.2019 | | | | | |
| 741 | | Text messages between J.Y. and M.T. on 04.03.2019 | | | | | |
| 742 | | Email re "Invoice from [PM], Inc." on 04.03.2019 ([PM] Invoice #6910 for $30,150) | | | | | |
| 743 | | Email re "FW: Invoice from [PM], Inc." on 04.04.2019 ([PM] Invoice #7004 for 11,250) | | | | | |
| 744 | | INTENTIONALLY LEFT BLANK | | | | | |
| 745 | | Text messages between J.Y. and M.T. on 04.07.2019 | | | | | |
| 746 | | Text messages between Kley (M.T.) and K.T. on 04.07.2019 | | | | | |
| 747 | | Text messages between J.Y. and M.T. on 04.08.2019 | | | | | |
| 748 | | Email re "Invoice from [PM], Inc." on 04.08.2019 ([PM] Invoice #7101 for $37,500) | | | | | |
| 749 | | Email re "re Invoice from [PM], Inc." on 04.09.2019 | | | | | |
| 750 | | INTENTIONALLY LEFT BLANK | | | | | |
| 751 | | Text messages between M.T. and K.T. on 04.11.2019 | | | | | |
| 752 | | Text messages from Kley (M.T.) to M.M. on 04.12.2019 | | | | | |

40

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 753 | | Text messages between M.T. and K.T. on 04.12.2019 | | | | | |
| 754 | | Text messages between J.Y. and M.T. on 04.13.2019 | | | | | |
| 755 | | Text messages between M.T. and K.T. on 04.16.2019 | | | | | |
| 756 | | Text messages between M.T. and K.T. on 04.17.2019 | | | | | |
| 757 | | INTENTIONALLY LEFT BLANK | | | | | |
| 758 | | Text messages between M.T. and Kley (K.T.) on 04.21.2019 | | | | | |
| 759 | | Text messages between M.T. and K.T. on 04.22.2019 | | | | | |
| 760 | | Text messages between Kley (M.T.) and K.T. on 04.23.2019 | | | | | |
| 761 | | Text message from J.Y. to M.T. on 04.24.2019 | | | | | |
| 762 | | Text messages between M.T. and K.T. on 04.24.2019 | | | | | |
| 763 | | INTENTIONALLY LEFT BLANK | | | | | |
| 764 | | Email re "Invoice from [PM], Inc." on 04.29.2019  ([PM] Invoice #7156 for $75,000 and Invoice #7158 for $39,780) | | | | | |
| 765 | | Email re "FW: Invoice from [PM]. Inc." on 04.29.2019 | | | | | |
| 766 | | Text messages between Kley (M.T.) and K.T. on 04.30.2019 | | | | | |

41

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 767 | | Text messages between M.T. and K.T. on 05.01.2019 | | | | | |
| 768 | | Text messages between M.T. and K.T. on 05.02.2019 | | | | | |
| 769 | | Text messages between M.T. and K.T. on 05.06.2019 | | | | | |
| 770 | | Text messages between J.Y. and M.T. on 05.07.2019 | | | | | |
| 771 | | Text messages between M.T. and K.T. on 05.08.2019 | | | | | |
| 772 | | Text messages between Kley (M.T.) and K.T. on 05.09.2019 | | | | | |
| 773 | | Text messages between Kley (M.T.) and K.T. on 05.10.2019 | | | | | |
| 774 | | Text messages between J.Y. and M.T. on 05.10.2019 | | | | | |
| 775 | | Text messages between J.Y. and M.T. on 05.15.2019 | | | | | |
| 776 | | Text messages between M.T. and K.T. on 05.20.2019 | | | | | |
| 777 | | Text messages between M.T. and Kley (K.T.) on 05.21.2019 | | | | | |
| 778 | | Text messages between M.T. and Kley (K.T.) on 05.22.2019 | | | | | |
| 779 | | Text messages between M.T. and K.T. on 05.27.2019 | | | | | |
| 780 | | Text messages between M.T. and K.T. on 05.28.2019 | | | | | |
| 781 | | Text messages between J.Y. and M.T. on 06.03.2019 | | | | | |

42

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 782 | | Text messages between Kley (M.T.) and K.T. on 06.03.2019 | | | | | |
| 783 | | Email re "Journal Entry Testing" on 06.04.2019 | | | | | |
| 784 | | Text messages between M.T. and K.T. on 06.07.2019 | | | | | |
| 785 | | Text messages between M.T. and K.T. on 06.10.2019 | | | | | |
| 786 | | Text messages between J.Y. and M.T. on 06.12.2019 | | | | | |
| 787 | | Text messages between Kley (M.T.) and K.T. on 06.12.2019 | | | | | |
| 788 | | Text messages between J.Y. and M.T. on 06.13.2019 | | | | | |
| 789 | | Text messages between M.T. and K.T. on 06.13.2019 | | | | | |
| 790 | | Text messages between M.T. and K.T. on 06.18.2019 | | | | | |
| 791 | | INTENTIONALLY LEFT BLANK | | | | | |
| 792 | | Text messages between M.T. and K.T. on 06.24.2019 | | | | | |
| 793 | | Text messages between M.T. and K.T. on 06.25.2019 | | | | | |
| 794 | | Text messages between M.T. and K.T. on 06.26.2019 and 06.27.2019 | | | | | |
| 795 | | Text messages between J.Y. and M.T. on 06.26.2019 | | | | | |
| 796 | | Text messages between J.Y. and M.T. on 06.28.2019 | | | | | |

43

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 797 | | Text messages between M.T. and K.T. on 06.28.2019 | | | | | |
| 798 | | Text messages between M.T. and K.T. on 06.29.2019 | | | | | |
| 799 | | Email re "RE: Please assist" on 07.11.2019 | | | | | |
| 800 | | Text messages between M.T. and K.T. on 07.02.2019 | | | | | |
| 801 | | Emails re "Invoice From [PM], Inc." on 07.03.2019 ([PM] Invoice #7201 for $40,000; Invoice #7263 for $10,100; Invoice #7312 for $9,500; & Invoice #7322 for $30,000) | | | | | |
| 802 | | Text messages between M.T. and K.T. on 07.04.2019 | | | | | |
| 803 | | INTENTIONALLY LEFT BLANK | | | | | |
| 804 | | Text messages between M.T. and K.T. on 07.07.2019 | | | | | |
| 805 | | Text messages between M.T. and K.T. on 07.07.2019 | | | | | |
| 806 | | Text messages between J.Y. and M.T. on 07.08.2019 | | | | | |
| 807 | | Emails re "Re: Please assist" on 07.08.2019 | | | | | |
| 808 | | Emails re "Re: Please assist" on 07.09.2019 | | | | | |
| 809 | | Text messages between M.T. and K.T. on 07.09.2019 | | | | | |
| 810 | | Text messages between M.T. and K.T. on 07.11.2019 | | | | | |

44

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 811 | | Text messages between M.T. and K.T. on 07.17.2019 | | | | | |
| 812 | | Text messages between M.T. and K.T. on 07.18.2019 | | | | | |
| 813 | | Text messages between J.Y. and M.T. on 07.19.2019 | | | | | |
| 814 | | Text messages between J.Y. and M.T. on 07.22.2019 | | | | | |
| 815 | | Text messages between M.T. and K.T. on 07.29.2019 | | | | | |
| 816 | | Text messages between J.Y. and M.T. on 07.30.2019 | | | | | |
| 817 | | Text messages between J.Y. and M.T. on 08.01.2019 | | | | | |
| 818 | | Text messages between J.Y. and M.T. on 08.03.2019 | | | | | |
| 819 | | Text messages between M.T. and K.T. on 08.04.2019 | | | | | |
| 820 | | Text messages between J.Y. and M.T. on 08.05.2019 | | | | | |
| 821 | | Text messages between M.T. and K.T. on 08.05.2019 | | | | | |
| 822 | | Text messages between M.T. and K.T. on 08.06.2019 | | | | | |
| 823 | | Text messages between J.Y. and M.T. on 08.06.2019 | | | | | |
| 824 | | Text messages between M.T. and K.T. on 08.11.2019 | | | | | |
| 825 | | Text messages between M.T. and K.T. on 08.13.2019 | | | | | |

45

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 826 | | Text messages between J.Y. and M.T. on 08.13.2019 | | | | | |
| 827 | | Text messages between J.Y. and M.T. on 08.14.2019 | | | | | |
| 828 | | Text messages between J.Y. and M.T. on 08.15.2019 | | | | | |
| 829 | | Text messages between M.T. and K.T. on 08.18.2019 | | | | | |
| 830 | | Text messages between J.Y. and M.T. on 08.19.2019 | | | | | |
| 831 | | Text messages between J.Y. and M.T. on 08.20.2019 | | | | | |
| 832 | | Text messages between J.Y. and M.T. on 08.21.2019 | | | | | |
| 833 | | Text messages between J.Y. and M.T. on 08.22.2019 | | | | | |
| 834 | | Text messages between M.T. and K.T. on 08.22.2019 | | | | | |
| 835 | | Text messages between M.T. and K.T. on 08.23.2019 | | | | | |
| 836 | | Text messages between M.T. and K.T. on 08.25.2019 | | | | | |
| 837 | | Text messages between J.Y. and M.T. on 08.26.2019 | | | | | |
| 838 | | Text messages between M.T. and K.T. on 08.26.2019 | | | | | |
| 839 | | Text messages between M.T. and K.T. on 08.27.2019 | | | | | |
| 840 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 841 | | Email re "Invoices from Global Fuel Logistics, Inc" on 08.28.2019 (Global Fuel Logistics Invoice #987 for #9,500; Invoice #972 for $94,500; & Invoice #763 for $152,000) | | | | | |
| 842 | | Text messages between M.T. and K.T. on 08.29.2019 | | | | | |
| 843 | | Emails re "RE: 8/29 Wires" on 08.29.2019 | | | | | |
| 844 | | Email re "Global Fuel - Updated Invoice" on 08.29.2019 (Global Fuel Logistics Invoice #1001 for $55,000) | | | | | |
| 845 | | Email re "Invoices from Global Fuel Logistics, Inc" on 08.29.2019 (Global Fuel Logistics Invoice #1023 for $45,000; Invoice #1011 for $45,000; & Invoice #1001 for $56,000) | | | | | |
| 846 | | Text messages between M.T. and K.T. on 08.30.2019 | | | | | |
| 847 | | INTENTIONALLY LEFT BLANK | | | | | |
| 848 | | Text messages between M.T. and K.T. on 09.06.2019 | | | | | |
| 849 | | Text messages between M.T. and K.T. on 09.07.2019 | | | | | |
| 850 | | Text messages between M.T. and K.T. on 09.08.2019 | | | | | |
| 851 | | Text messages between J.Y. and M.T. on 09.09.2019 | | | | | |
| 852 | | Text messages between M.T. and K.T. on 09.09.2019 | | | | | |
| 853 | | Text messages between M.T. and K.T. on 09.10.2019 | | | | | |

47

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 854 | | Text messages between M.T. and K.T. on 09.13.2019 | | | | | |
| 855 | | Text messages between M.T. and K.T. on 09.14.2019 | | | | | |
| 856 | | Text messages between J.Y. and M.T. on 09.16.2019 | | | | | |
| 857 | | Text messages between J.Y. and M.T. on 09.17.2019 | | | | | |
| 858 | | Text messages between J.Y. and M.T. on 09.18.2019 | | | | | |
| 859 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 860 | | Text messages between M.T. and K.T. on 09.22.2019 | | | | | |
| 861 | | Text messages between M.T. and K.T. on 09.23.2019 | | | | | |
| 862 | | Text messages between J.Y. and M.T. on 09.25.2019 | | | | | |
| 863 | | Text messages between J.Y. and M.T. on 09.26.2019 | | | | | |
| 864 | | Text messages between M.T. and K.T. on 09.26.2019 | | | | | |
| 865 | | Text messages between J.Y. and M.T. on 09.27.2019 | | | | | |
| 866 | | Text messages between M.T. and K.T. on 09.28.2019 | | | | | |
| 867 | | Text messages between M.T. and K.T. on 09.30.2019 | | | | | |
| 868 | | INTENTIONALLY LEFT BLANK | | | | | |

48

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 869 | | Text messages between M.T. and K.T. on 10.02.2019 | | | | | |
| 870 | | INTENTIONALLY LEFT BLANK | | | | | |
| 871 | | Text messages between M.T. and K.T. on 10.05.2019 | | | | | |
| 872 | | Text messages between M.T. and K.T. on 10.07.2019 | | | | | |
| 873 | | Text messages between M.T. and K.T. on 10.08.2019 | | | | | |
| 874 | | Text messages between M.T. and K.T. on 10.09.2019 | | | | | |
| 875 | | Email re "Invoices from Aero Maintenance Resources" on 10.11.2019 (Aero Maintenance Resources Invoice #697 for $112,750; Invoice #634 for $75,000; & Invoice #627 for $141,450) | | | | | |
| 876 | | Text messages between M.T. and K.T. on 10.11.2019 | | | | | |
| 877 | | Text messages between M.T. and K.T. on 10.15.2019 | | | | | |
| 878 | | INTENTIONALLY LEFT BLANK | | | | | |
| 879 | | Text messages between M.T. and K.T. on 10.19.2019 | | | | | |
| 880 | | Text messages between M.T. and K.T. on 10.20.2019 | | | | | |
| 881 | | Text messages between M.T. and K.T. on 10.21.2019 | | | | | |
| 882 | | Text messages between M.T. and K.T. on 10.22.2019 | | | | | |

49

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 883 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 884 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 885 | | Text messages between M.T. and K.T. on 10.31.2019 | | | | | |
| 886 | | Text messages between M.T. and K.T. on 11.01.2019 | | | | | |
| 887 | | Email re "Invoices from Aero Maintenance Resources" on 11.11.2019 (Aero Maintenance Resources Invoice #1017 for $110,000; Invoice #1021 for $100,000; & Invoice #1103 for $66,750) | | | | | |
| 888 | | Text messages between M.T. and K.T. on 11.13.2019 | | | | | |
| 889 | | Text messages between M.T. and K.T. on 11.14.2019 | | | | | |
| 890 | | Text messages between M.T. and K.T. on 11.19.2019 | | | | | |
| 891 | | Text messages between M.T. and K.T. on 11.20.2019 | | | | | |
| 892 | | Text messages between M.T. and K.T. on 11.21.2019 | | | | | |
| 893 | | Text messages between M.T. and K.T. on 11.22.2019 | | | | | |
| 894 | | Text messages between M.T. and K.T. on 11.25.2019 | | | | | |
| 895 | | Text messages between M.T. and K.T. on 12.01.2019 | | | | | |
| 896 | | Text messages between M.T. and K.T. on 12.02.2019 | | | | | |

50

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 897 | | Text messages between M.T. and K.T. on 12.03.2019 | | | | | |
| 898 | | Text messages between M.T. and K.T. on 12.04.2019 | | | | | |
| 899 | | Text messages between M.T. and K.T. on 12.06.2019 | | | | | |
| 900 | | INTENTIONALLY LEFT BLANK | | | | | |
| 901 | | Text messages between M.T. and K.T. on 12.11.2019 | | | | | |
| 902 | | Text messages between M.T. and K.T. on 12.13.2019 | | | | | |
| 903 | | Email re "Invoices from Aero Maintenance Resources" on 12.17.2019 (Aero Maintenance Resources Invoice #2110 for $49,750; Invoice #2325 for $83,400; & Invoice #2392 for $85,250) | | | | | |
| 904 | | Text messages between M.T. and K.T. on 12.20.2019 | | | | | |
| 905 | | Text messages between M.T. and K.T. on 12.21.2019 | | | | | |
| 906 | | Text messages between M.T. and K.T. on 12.30.2019 | | | | | |
| 907 | | Text messages between M.T. and K.T. on 12.31.2019 | | | | | |
| 908 | | Text messages between M.T. and K.T. on 01.03.2020 | | | | | |
| 909 | | Text messages between M.T. and K.T. on 01.07.2020 | | | | | |
| 910 | | Text messages between M.T. and K.T. on 01.08.2020 | | | | | |

51

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 911 | | Text messages between M.T. and K.T. on 01.09.2020 | | | | | |
| 912 | | Email re "Invoices from Aero Maintenance Resources" on 01.09.2020 (Aero Maintenance Resources Invoice #2515 for $79,950; Invoice #2479 for $87,200; & Invoice #2601 for $148,200) | | | | | |
| 913 | | Text messages between M.T. and K.T. on 01.10.2020 | | | | | |
| 914 | | Text messages between M.T. and K.T. on 01.11.2020 | | | | | |
| 915 | | Text messages between M.T. and K.T. on 01.13.2020 | | | | | |
| 916 | | Text messages between M.T. and K.T. on 01.16.2020 | | | | | |
| 917 | | Text messages between M.T. and K.T. on 01.17.2020 | | | | | |
| 918 | | Text messages between M.T. and K.T. on 01.22.2020 | | | | | |
| 919 | | Text messages between M.T. and K.T. on 01.26.2020 | | | | | |
| 920 | | Text messages between M.T. and K.T. on 01.28.2020 | | | | | |
| 921 | | Text messages between M.T. and K.T. on 01.29.2020 | | | | | |
| 922 | | Text messages between M.T. and K.T. on 01.31.2020 | | | | | |
| 923 | | Text messages between M.T. and K.T. on 02.01.2020 | | | | | |
| 924 | | Text messages between M.T. and K.T. on 02.05.2020 | | | | | |

52

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 925 | | Text messages between M.T. and K.T. on 02.12.2020 | | | | | |
| 926 | | Text messages between M.T. and K.T. on 02.13.2020 | | | | | |
| 927 | | Text messages between M.T. and K.T. on 02.15.2020 | | | | | |
| 928 | | Email re "Invoices from Aero Maintenance Resources" on 02.18.2020 (Aero Maintenance Resources Invoice #2807 for $15,689; & Invoice #2753 for $99,211) | | | | | |
| 929 | | Text messages between M.T. and K.T. on 02.25.2020 | | | | | |
| 930 | | Text messages between M.T. and K.T. on 02.26.2020 | | | | | |
| 931 | | Text messages between M.T. and K.T. on 03.03.2020 | | | | | |
| 932 | | Text messages between M.T. and K.T. on 03.06.2020 | | | | | |
| 933 | | Email re "Invoices from Aero Maintenance Resources" on 03.09.2020 (Aero Maintenance Resources Invoice #3004 for $95,000; Invoice #2987 for $33,520; & Invoice #2901 for $90,180) | | | | | |
| 934 | | Text messages between M.T. and K.T. on 03.10.2020 | | | | | |
| 935 | | Email re "Aero Maintenance Invoices for February 2020" on 03.11.2020 (Aero Maintenance Resources Invoice #2990 for $73,000) | | | | | |
| 936 | | Text messages between M.T. and K.T. on 03.11.2020 | | | | | |
| 937 | | Text messages between M.T. and K.T. on 03.17.2020 | | | | | |

53

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 938 | | Text messages between M.T. and K.T. on 03.18.2020 | | | | | |
| 939 | | Email re NO SUBJECT on 03.19.2020 | | | | | |
| 940 | | Text messages between M.T. and K.T. on 03.20.2020 | | | | | |
| 941 | | Text messages between M.T. and K.T. on 03.22.2020 | | | | | |
| 942 | | Text messages between M.T. and K.T. on 03.23.2020 | | | | | |
| 943 | | Text messages between M.T. and K.T. on 03.28.2020 | | | | | |
| 944 | | Text messages between M.T. and K.T. on 03.30.2020 | | | | | |
| 945 | | Text messages between M.T. and K.T. on 04.01.2020 | | | | | |
| 946 | | Text messages between M.T. and K.T. on 04.02.2020 | | | | | |
| 947 | | Text messages between M.T. and K.T. on 04.05.2020 | | | | | |
| 948 | | Text messages between M.T. and K.T. on 04.06.2020 | | | | | |
| 949 | | Text messages between M.T. and K.T. on 04.08.2020 | | | | | |
| 950 | | Email re "Invoices for Aero Maintenance Resources" on 04.14.2020 (Aero Maintenance Resources Invoice #4001 for $87,045; & Invoice #3176 for $127,155) | | | | | |
| 951 | | Text messages between M.T. and K.T. on 04.14.2020 | | | | | |

54

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 952 | | Email re "Aero Maintenance Invoices for April 2020" on 04.16.2020 (Aero Maintenance Resources Invoice #5120 for $105,603; & Invoice #4784 for $114,685) | | | | | |
| 953 | | Email re "Invoice for Global Fuel Logistics, Inc." on 04.27.2020 (Global Fuel Logistics Invoice #7988 for $124,785) | | | | | |
| 954 | | Email re "Invoice for Aero Maintenance Resources 2 March 2020" on 05.04.2020 (Aero Maintenance Resources Invoice #3101 for $61,255) | | | | | |
| 955 | | Email re "Invoice for Global Fuel Logistics, Inc." on 05.11.2020 (Global Fuel Logistics Invoice #8011 for $83,090) | | | | | |
| 956 | | Text messages between M.T. and K.T. on 05.12.2020 | | | | | |
| 957 | | Text messages between M.T. and K.T. on 05.23.2020 | | | | | |
| 958 | | Text messages between M.T. and K.T. on 05.28.2020 | | | | | |
| 959 | | Email re "Invoices for May 2020" on 06.03.2020 (Aero Maintenance Resources Invoice #8888 for $153,725; Global Fuel Logistics Invoice #9014 for $159,882; & Global Fuel Logistics Invoice #9071 for $164,065) | | | | | |
| 960 | | Text messages between M.T. and K.T. on 06.07.2020 | | | | | |
| 961 | | Text messages between M.T. and K.T. on 06.09.2020 | | | | | |
| 962 | | Text messages between M.T. and K.T. on 06.10.2020 | | | | | |
| 963 | | Text messages between M.T. and K.T. on 06.11.2020 | | | | | |

55

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 964 | | Text messages between M.T. and K.T. on 06.16.2020 | | | | | |
| 965 | | Text messages between M.T. and K.T. on 06.17.2020 | | | | | |
| 966 | | Text messages between M.T. and K.T. on 06.24.2020 | | | | | |
| 967 | | Text messages between M.T. and K.T. on 06.25.2020 | | | | | |
| 968 | | Text messages between M.T. and K.T. on 06.26.2020 | | | | | |
| 969 | | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10101 for $170,274.50; Aero Maintenance Resources Invoice #9302 for $194,803; & Global Fuel Logistics Invoice #11812 for $127,264) | | | | | |
| 970 | | Text messages between M.T. and K.T. on 06.29.2020 | | | | | |
| 971 | | Text messages between M.T. and K.T. on 07.01.2020 | | | | | |
| 972 | | Text messages between J.Y. and K.T. on 07.01.2020 | | | | | |
| 973 | | Email re "Invoice for July 1 2020" on 07.02.2020 (Global Fuel Logistics Invoice #10226 for $95,000) | | | | | |
| 974 | | Audio recording of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 975 | | Audio recording of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 976 | | Text messages between J.Y. and M.T. on 07.08.2020 | | | | | |
| 977 | | INTENTIONALLY LEFT BLANK | | | | | |

56

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 978 | | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | | | | | |
| 979 | | Email re ACH Payment Questions, dated 04.17.2019 | | | | | |
| 980 | | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | | | | | |
| 981 | | Email re Lilly Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | | | | | |
| 982 | | Email re Lilly Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | | | | | |
| 983 | | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | | | | | |
| 984 | | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | | | | | |
| 985 | | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | | | | | |
| 986 | | Invoice #001 re Kimberley Tew for $10,000.00, dated 02.08.2018 | | | | | |
| 987 | | Transcript of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 988 | | Transcript of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 989 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |
| 990 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 991 - 999 | | INTENTIONALLY LEFT BLANK | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1000 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1001 | | Account Owners and Signors for Relevant Bank Accounts | | | | | |
| 1002 | | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | |
| 1003 | | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | | | | |
| 1004 | | Summary of [HS] CPA, [MCG], and [5530 JD] Invoices and Payments | | | | | |
| 1005 | | Summary of [PM] Invoices and Payments | | | | | |
| 1006 | | Summary of Global Fuel Logistics Invoices and Payments | | | | | |
| 1007 | | Summary of Aero Maintenance Resources Invoices and Payments | | | | | |
| 1008 | | Summary - Calendar of Events | | | | | |
| 1009 | | Summary - Count 42 | | | | | |
| 1010 | | Summary - Count 43 | | | | | |
| 1011 | | Summary - Count 44 | | | | | |
| 1012 | | Summary - Count 45 | | | | | |
| 1013 | | Summary - Count 46 | | | | | |
| 1014 | | Summary - Count 47 | | | | | |

58

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1015 | | Summary - Count 48 | | | | | |
| 1016 | | Summary - Count 49 | | | | | |
| 1017 | | Summary - Count 50 | | | | | |
| 1018 | | Summary - Count 51 | | | | | |
| 1019 | | Summary - Count 52 | | | | | |
| 1020 | | Summary - Count 53 | | | | | |
| 1021 | | Summary - Count 54 | | | | | |
| 1022 | | Summary - Count 55 | | | | | |
| 1023 | | Summary - Count 56 | | | | | |
| 1024 | | Summary - M. Tew Transactions and Photographs | | | | | |
| 1025 | | Summary - K. Tew Transactions and Photographs | | | | | |
| 1026 | | Summary - M. and K. Tew Transactions and Photographs | | | | | |
| 1027 - 1099 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1100 | | Certificate of Authenticity for Atlantic Union Bank | | | | | |
| 1101 | | Certificate of Authenticity for ANB Bank | | | | | |

59

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1102 | | Certificate of Authenticity for ANB Bank | | | | | |
| 1103 | | Certificate of Authenticity for BBVA | | | | | |
| 1104 | | Certificate of Authenticity for BBVA | | | | | |
| 1105 | | Certificate of Authenticity for Guaranty Bank and Trust Company | | | | | |
| 1106 | | Certificate of Authenticity for Kraken | | | | | |
| 1107 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1108 | | Certificate of Authenticity for GoDaddy | | | | | |
| 1109 | | Certificate of Authenticity for Google | | | | | |
| 1110 | | Certificate of Authenticity for Verizon | | | | | |
| 1111 | | Certificate of Authenticity for Regions Bank | | | | | |
| 1112 | | Certificate of Authenticity for Simple Finance Technology Corp | | | | | |
| 1113 | | Certificate of Authenticity for Signature Bank | | | | | |
| 1114 | | Certificate of Authenticity for Google | | | | | |
| 1115 | | Certificate of Authenticity for Apple | | | | | |
| 1116 | | Certificate of Authenticity for Google | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1117 | | Certificate of Authenticity for Google | | | | | |
| 1118 | | Certificate of Authenticity for Vcorp | | | | | |
| 1119 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1120 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1121 | | Certificate of Authenticity for Wynn Las Vegas | | | | | |
| 1122 | | Certificate of Authenticity for Google | | | | | |
| 1123 | | Certificate of Authenticity for Google | | | | | |
| 1124 | | Certificate of Authenticity for Google | | | | | |
| 1125 | | Certificate of Authenticity for Google | | | | | |
| 1126 | | Certificate of Authenticity for Google | | | | | |
| 1127 | | Certificate of Authenticity for AT&T | | | | | |
| 1128 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1129 | | Certificate of Authenticity for American Express | | | | | |
| 1130 | | Certificate of Authenticity for National Air Cargo | | | | | |
| 1131 | | Certificate of Authenticity for McDonald Automotive (Audi) | | | | | |

61

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1132 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1133 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1134 | | Certification of Authenticity for National Air Cargo | | | | | |
| 1135 | | Certification of Authenticity for Access National Bank | | | | | |
| 1136 | | Certification of Authenticity for Coinbase | | | | | |
| 1137 | | Certification of Authenticity for Coinbase | | | | | |
| 1138 | | Certification of Authenticity for Coinbase | | | | | |
| 1139 | | Certification of Authenticity for Navy FCU | | | | | |
| 1140 | | Certification of Authenticity for Apple | | | | | |
| 1141 | | Certification for Google | | | | | |
| 1142 | | Certification for Signature Bank | | | | | |
| 1143 | | Certification for Regions Bank | | | | | |

62

I<small>N THE</small> U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small>
F<small>OR THE</small> D<small>ISTRICT OF</small> C<small>OLORADO</small>

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

**Motion for Finding that Ms. Tew's Waiver of Right to Confront and Cross-Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing**

---

Defendant Kimberley Tew, through undersigned counsel, moves the Court for a finding that her execution of the proffer letter was not a knowing and intelligent waiver of her right to confront and cross-examine the witnesses who will testify against her. In the alternative, Ms. Tew requests a hearing on whether her waiver was knowing and intelligent.

In a recent ruling, the Court interpreted Ms. Tew's proffer agreement and held that attorney argument or questioning could trigger the waiver provision "if it clearly seeks to introduce evidence that is contrary to the proffer statements." (*Id.* at 5.) If the waiver provision is triggered, the Government may use any portion of Ms. Tew's proffer statements against her. (ECF No. 373-1.) The Court's ruling limits counsel's cross-examination of the witnesses that will testify against Ms. Tew at trial, and

therefore requires the Court to find that this important trial right was knowingly waived by Ms. Tew.

    *Statement of Conferral*: The government opposes the relief requested herein.

## A.    The Right to Cross-Examine Witnesses is Fundamental to a Fair Trial

    "The Confrontation Clause of the Sixth Amendment guarantees the right of an accused in a criminal prosecution 'to be confronted with the witnesses against him.'" *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986). "Confrontation means more than being allowed to confront the witness physically." *Davis v. Alaska*, 415 U.S. 308, 315 (1974). Central to the Clause's purpose is "secur[ing] for the opponent the opportunity of cross-examination." *Van Arsdall*, 475 U.S. at 678. As the Supreme Court explained in *Davis*:

> Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.  Subject always to the broad discretion of a trial judge to preclude repetitive and unduly harassing interrogation, the cross-examiner is not only permitted to delve into the witness' story to test the witness' perceptions and memory, but the cross-examiner has traditionally been allowed to impeach, i.e., discredit, the witness.

415 U.S. at 316.

## B.    Any Waiver of a Fundamental Trial Right must be Knowing and Voluntary

    Any waiver of a fundamental trial right in a criminal case "must be a 'knowing, intelligent act done with sufficient awareness of the relevant circumstances.'" *Iowa v. Tovar*, 541 U.S. 77, 80 (2004) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)).  A waiver is knowing if made "with full awareness of both the nature of the right being

abandoned and the consequences of the decision to abandon it." *Moran v. Burbine*, 475 U.S. 412, 421 (1986); *United States v. Morris*, 287 F.3d 985, 988 (10th Cir. 2002). "The purpose of the 'knowing and voluntary' inquiry ... is to determine whether the defendant actually does understand the significance and consequences of a particular decision and whether the decision is uncoerced." *Godinez v. Moran*, 509 U.S. 389, 401 (1993). When a defendant waives his constitutional rights, he must be "made aware of the dangers and disadvantages ... so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'" *Faretta v. California*, 422 U.S. 806, 835 (1975).

## C. Ms. Tew Did Not Knowingly and Intelligently Waive Her Right to Confront and Cross-Examine the Government's Witnesses

When Ms. Tew executed the proffer letter, she did not understand that her statements at the proffer session could limit her ability to confront the witnesses who testified against her through cross-examination by counsel. As an offer of proof,[1] undersigned counsel states that she represented Ms. Tew at the time of her proffer and reviewed the proffer agreement with Ms. Tew. Consistent with local practice, undersigned counsel understood the waiver provision in paragraph 4 could only be triggered by Ms. Tew affirmatively testifying or offering evidence on her own behalf. Undersigned counsel advised Ms. Tew that, by signing the proffer letter, she was

---

[1] Ms. Tew has authorized undersigned counsel to reveal the content of attorney-client communications. This waiver is limited to communications about the proffer letter and how Ms. Tew was advised on the impact of executing the proffer agreement.

agreeing that her proffer statements could be used against her if she chose to testify at trial.

Counsel did not understand the proffer letter to mean that Ms. Tew's attorney could trigger the waiver provision through argument, cross-examination, or in any other way. Ms. Tew was not advised that her proffer statements could be used against her if her attorney argued or elicited testimony contrary to a statement made in her proffer session.

In determining whether a waiver is knowing and intelligent, the relevant inquiry is whether a defendant "understands the rights at stake and the consequences of waiving them." *Smith v. Mullin*, 379 F.3d 919, 934 (10th Cir. 2004); *see also Godinez*, 509 U.S. at 401 (a knowing and intelligent waiver requires an understanding of the "significance and consequences of a particular decision"). Ms. Tew was advised that the proffer agreement affected her constitutional right to testify on her own behalf because doing so could trigger the waiver provision. Ms. Tew was not advised that executing the proffer letter limited her ability to confront and cross-examine the witnesses testifying against her. Ms. Tew was not advised that executing the proffer letter impacted her right to counsel by limiting positions taken or arguments advanced by her attorneys at trial.

**D.    The *Oluwanisola* Decision is Distinguishable Because It Utilizes Different Language that is Material to the Analysis**

At the trial preparation conference, the Court directed the parties to *United States v. Oluwanisola*, 605 F.3d 124 (2d Cir. 2010). The waiver provision in *Oluwanisola* stated that defendant's proffer statements could be used "as substantive evidence to rebut, directly or indirectly, any evidence offered or elicited, or factual assertions made, by <u>or on behalf of [the defendant]</u>." *Id.* at 128 (emphasis added). This language put Oluwanisola on notice that, in signing his proffer agreement, he was contracting away not only his personal right to offer or elicit factual assertions contrary to his proffer, but also the right to have an attorney or someone else acting on his behalf offer or elicit contrary factual assertions. The same "by or on behalf of" language appears in the waiver provisions in nearly every case cited by the Government. *See United States v. Rebbe*, 314 F.3d 402, 404 (9th Cir. 2002) ("or to rebut any evidence, argument or representations offered by or on behalf of your client"); *United States v. Barrow*, 400 F.3d 109, 113 (2d Cir. 2005) ("to rebut any evidence offered or elicited, or factual assertions made, by or on behalf of [the defendant]"; *United States v. Hardwick*, 544 F.3d 565, 569 (3d Cir. 2008) (to rebut any evidence or arguments offered on [Murray's] behalf.").

Ms. Tew's proffer agreement does not say that the waiver provision can be triggered by someone acting "on behalf of" Ms. Tew. The plain language of the agreement did not advise Ms. Tew that she was contracting away her right to confront witnesses through her attorney. And Ms. Tew was not advised that, by signing the

5

proffer agreement, she was limiting her attorney's ability to make arguments or cross-examine witnesses.

## Conclusion

The Court has ruled that Ms. Tew waived—in part—her right to confront witnesses when she executed the proffer agreement. Ms. Tew's waiver of these rights was not knowing and intelligent, and the proffer statements should be barred from use at trial. If the above record is not sufficient to meet Ms. Tew's burden to show her waiver was not knowing and intelligent, she requests a hearing on the matter.

Dated: February 4, 2024.

Respectfully submitted,

s/ Jamie Hubbard
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   hubbard@slhlegal.com
kaplan@slhlegal.com

Attorneys for Kimberley Ann Tew

**Certificate of Service**

I certify that on February 4, 2024, I electronically filed the foregoing *Motion for Finding that Ms. Tew's Waiver of Right to Confront and Cross-Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*s/ Brenda Rodriguez*
Brenda Rodriguez

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel states that, as a motion filed by the defendant, any time between filing of the motion and its resolution are excludable from the speedy trial calculation.

*s/ Jamie Hubbard*
Jamie Hubbard

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Criminal Case No. 20-cr-00305-DDD-01

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW,

      Defendant.

---

**MOTION FOR RECONSIDERATION OF COURT'S ORDER**
**REGARDING PROFFER AGREEMENTS AND REQUEST FOR HEARING**

---

      Defendant Michael Aaron Tew ("Mr. Tew") respectfully asks the Court to reconsider its Order (Doc. 404) regarding the interpretation and application of the proffer agreements at issue in this case. The Court's Order, which held that neither the government's nor Mr. Tew's interpretation of the proffer agreements was what it actually meant, implicitly calls into question how such an agreement could have been knowingly and voluntarily entered into by either party.

      For reasons including those outlined in Mrs. Kimberley Tew's Motion for Finding that Ms. Tew's Waiver of Right to Confront and Cross-Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing, Doc. 409, which Mr. Tew hereby adopts the same rationale and law raised by Ms. Tew, Mr. Tew requests that the Court schedule a hearing to determine whether he intended to waive any portion of his constitutional rights to cross-examine witnesses against him without his incriminating statements being used against him. As an offer of proof, at such a hearing Mr. Tew and/or his then counsel would testify that his attorney advised him that the agreement meant that his proffer would be put into evidence only if he introduced testimony

conflicting with the statements in the proffer agreement.

The Court's textual interpretation of the proffer agreements demonstrates that the purported waiver provisions were unclear three and a half years ago when Mr. Tew signed those agreements. The Court, grappling with this issue at the Trial Preparation Conference, admitted as much:

> [The Court]    And I think it's also an easy case that if the defense, on the opposite extreme, if the defense is very limited and extremely careful about how they characterize things, and say only things like the government – the evidence the government has presented doesn't support X, Y, or Z, then it's an easy case, that none of it gets in. But to me, it's a little bit more of a gray area between those two. If they don't testify, and if counsel simply is saying things like, to an agent, *You don't have – this exhibit doesn't say who created the email account, does it?*
>
> [AUSA]          Hm-hm.
>
> [The Court]    And things like that, trying to draw this line, that you are suggesting I try to draw, seems very difficult and not obvious, to me, that even someone with experienced counsel would understand that they are walking that line, when they agree to this, because it's just hard for me to figure out a really principled distinction between some of the things that you are asking me to distinguish.

Transcript of Trial Preparation Conference at p. 52.

For these reasons, Mr. Tew requests the Court reconsider its Order and hold a hearing to determine whether he knowingly waived constitutional and not just evidentiary rights when he agreed to proffer with the government in July 2020.

DATED this 4th day of February, 2024.

<div align="right">

_____ /s/  Jason D. Schall_____
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E Progress Pl Ste 100
Greenwood Village, CO 80111
Telephone: (720) 505-3861
E-mail: jason@bowsch.com

</div>

_____/s/  Kristen M. Frost_____
Kristen M. Frost
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200
Denver, CO 80202
Telephone: (303) 629-9700
Facsimile: (303) 629-9702
E-mail: frost@ridleylaw.com
Attorneys for Michael Aaron Tew

## CERTIFICATE OF CONFORMITY

I hereby certify that the foregoing pleading complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1).

_____/s/  Jason D. Schall_____
Jason D. Schall

## STATEMENT OF SPEEDY TRIAL IMPACT

Pursuant to Judge Domenico's Practice Standard III(C), undersigned counsel notes that

this filing has no effect on the speedy trial clock.

_____/s/  Jason D. Schall_____
Jason D. Schall

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2024, I electronically filed the foregoing with

the Clerk of Court using the CM/ECF system which will send notification of such filing to

the following:

AUSA Bryan Fields
U.S. Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202

David Kaplan / Jamie Hubbard
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80203

(303) 454-0100                                          (720) 689-8909
Bryan.Fields3@usdoj.gov                                 kaplan@slhlegal.com
                                                        hubbard@slhlegal.com
                                                        *Attorneys for Kimberley Ann Tew*

    I hereby certify that I will mail or serve the filing to the following participants:

        Mr. Michael Aaron Tew (defendant)


               */s/   Jason D. Schall*
               Jason D. Schall

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## NOTICE OF SUBMISSION OF ALTERNATIVE VERSION OF CHARGES FOR JUROR NOTEBOOKS

---

Kimberley Tew, through counsel, submits the attached as an alternative to providing the full speaking indictment to the jury. The attached provides the jury with the information it needs to consider the charges in this case but omits unnecessary verbiage that is prejudicial to the defendants.

Dated: February 4, 2024.

Respectfully submitted,


*s/ Jamie Hubbard*
Jamie Hubbard
David S. Kaplan
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone:  720.689.8909
Email:   hubbard@slhlegal.com
kaplan@slhlegal.com

*Attorneys for Kimberley Ann Tew*

2

**Certificate of Service**

I certify that on February 4, 2024, I electronically filed the foregoing *Notice of Submission of Alternative Version of Charges for Juror Notebooks* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ Brenda Rodriguez
Brenda Rodriguez

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No.:  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

  1.  **MICHAEL AARON TEW**;

  2.  **KIMBERLEY ANN TEW**; and
     a/k/a Kimberley Vertanen

  3.  **JONATHAN K. YIOULOS**,

  **Defendants.**

---

## INDICTMENT

---

The Grand Jury charges that:

### <u>Count 1</u>

    Beginning no later than June 2018 and continuing until about July 2020, in the State and District of Colorado, and elsewhere,

<div align="center">
MICHAEL AARON TEW<br>
KIMBERLEY ANN TEW<br>
and<br>
JONATHAN K. YIOULOS,
</div>

did knowingly combine, conspire, confederate, and agree together and interdependently to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

<div align="center">1</div>

## Counts 2-39

Beginning not later than July 2018 and continuing thereafter until about July 2020, in the State and District of Colorado, and elsewhere

MICHAEL AARON TEW
KIMBERLEY ANN TEW
and
JONATHAN K. YIOULOS,

knowingly devised and intended to devise a scheme to defraud and to obtain money and property from N.A.C., Inc., and its affiliates and subsidiaries that MICHAEL AARON TEW, KIMBERLEY ANN TEW, AND YIOULOS knew were fraudulent and were based on or supported by fraudulent invoices reflecting services that had not been provided to N.A.C., Inc. and its affiliates and subsidiaries.

For purposes of executing and attempting to execute the scheme, defendants MICHAEL AARON TEW, KIMBERLEY ANN TEW, AND YIOULOS, having devised and intending to devise the scheme, transmitted, and caused to be transmitted by means of wire communication in interstate commerce writing, signs, and signals, that is, payments reflecting the transfer of funds in the amounts listed below from the account listed below as held by N.A.C., Inc. and its subsidiaries and affiliates at Signature Bank to accounts at the banks identified below, which were controlled by or accessible to MICHAEL AARON TEW or KIMBERLEY ANN TEW, or otherwise associated with contacts of MICHAEL AARON TEW or KIMBERLEY ANN TEW:

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 2 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 8, 2018 | $15,000 | ACH transaction from Signature Bank account ending in 5529 to Guaranty Bank and Trust account ending in 7867, held in the name of Michael A. Tew |

2

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 3 | MICHAEL AARON TEW<br><br>JONATHAN YIOULOS | October 26, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 4 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | October 30, 2018 | $10,000 | Wire transfer from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 5 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 20, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 6 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 27, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to BBVA Compass account ending in 0987, held in the name of 5530 Jessamine Development LLC |
| 7 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | December 12, 2018 | $25,000 | ACH transaction from Signature Bank account ending in 5529 to ANB account ending in 3099, held in the name of M.M. |

3

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 8 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 8, 2019 | $15,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 9 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 20, 2019 | $15,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 10 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | March 29, 2019 | $38,000 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 11 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 4, 2019 | $11,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 12 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | July 24, 2019 | $45,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 13 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 7, 2019 | $31,500.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 14 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 19, 2019 | $9,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 15 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | August 22, 2019 | $28,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 16 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | September 4, 2019 | $45,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 17 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | September 10, 2019 | $18,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 18 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | September 18, 2019 | $33,500.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 19 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | September 26, 2019 | $52,750.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 20 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | October 17, 2019 | $75,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 21 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | October 25, 2019 | $43,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 22 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | November 1, 2019 | $49,750.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

6

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 23 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 8, 2019 | $40,500.00 | ACH transaction from Signature Bank account ending in 5545 to<br>Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 24 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | November 26, 2019 | $43,250.00 | ACH transaction from Signature Bank account ending in 5545 to<br>Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 25 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | December 3, 2019 | $9,550.00 | ACH transaction from Signature Bank account ending in 5545 to<br>Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 26 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | December 12, 2019 | $24,500.00 | ACH transaction from Signature Bank account ending in 5545 to<br>Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 27 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | December 24, 2019 | $15,200.00 | ACH transaction from Signature Bank account ending in 5545 to<br>Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

7

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 28 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 12, 2020 | $33,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 29 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | February 20, 2020 | $95,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 30 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | March 3, 2020 | $36,555.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 31 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | March 10, 2020 | $35,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 32 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW<br><br>JONATHAN K. YIOULOS | March 20, 2020 | $22,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

8

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|-------|-----------|--------------|----------------|-------------|
| 33 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 1, 2020 | $73,460.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 34 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 7, 2020 | $36,925.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 35 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 16, 2020 | $68,255.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 36 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | April 28, 2020 | $46,850.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 37 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | May 6, 2020 | $85,325.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 38 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | May 13, 2020 | $82,422.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 39 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | May 21, 2020 | $78,565.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
| 40 | MICHAEL AARON TEW<br><br>JONATHAN K. YIOULOS | July 3, 2020 | $95,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 3094, held in the name of Global Fuel Logistics Inc, with Michael A. Tew as the listed owner |

All in violation of Title 18, United States Code, Section 1343, and Title 18, United States Code, Section 2.

## COUNT 41

Beginning on a date unknown to the grand jury but not later than in or about June 2018 and continuing to in or about July 2020, in the State and District of Colorado and elsewhere,

MICHAEL AARON TEW
and
KIMBERLEY ANN TEW

did knowingly combine, conspire, confederate and agree with each other and acted interdependently, ot commit offenses against the United States in violation of Title 18, United States Code, Section 1957, to

wit to knowingly engage and attempt to engage, in monetary transactions by, through or to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000.00, as specified below, such property having been derived from a specified unlawful activity, that is wire fraud, in violation of Title 18, United States Code, Section 1957.

## COUNTS 42-56

On or about the dates identified below, within the District of Colorado and elsewhere, the defendants named in each count below did knowingly engage in and attempt to engage in monetary transactions, specifically deposits, withdrawals, and transfers of funds and monetary instruments, in and affecting interstate commerce, by, through and to one or more financial institutions, in criminally derived property that was of a value greater than $10,000 and that was derived from specified unlawful activity, specifically, wire fraud, in violation of Title 18 United States Code, Section 1343, knowing that the property involved in such monetary transaction represented the proceeds of some form of unlawful activity, as follows:

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 42 | MICHAEL AARON TEW | June 4, 2019 | $15,000.00 | Withdrawal from Navy Federal Credit Union account ending in 8486, held in the names of MICHAEL AARON TEW and KIMBERLEY TEW |
| 43 | KIMBERLEY ANN TEW | June 11, 2019 | $15,000.00 | Withdrawal from Navy Federal Credit Union account ending in 8486, held in the names of MICHAEL AARON TEW and KIMBERLEY TEW |
| 44 | MICHAEL AARON TEW KIMBERLEY ANN TEW | August 28, 2019 | $22,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

11

| 45 | MICHAEL AARON TEW | August 29, 2019 | $25,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 46 | MICHAEL AARON TEW | September 4, 2019 | $45,000.00 | Transfer from Navy Federal Credit Union account ending in 5336, held in the name of MICHAEL TEW to a Navy Federal Credit Union account ending in 8486, held in the names of MICHAEL AARON TEW and KIMBERLEY TEW |
| 47 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW | September 18, 2019 | $15,000.00 | Wire transfer from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC, to JPMorgan Chase Bank, N.A. account ending in 8260 |
| 48 | MICHAEL AARON TEW<br><br>KIMBERLEY ANN TEW | September 26, 2019 | $20,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 49 | MICHAEL AARON TEW | September 27, 2019 | $20,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 50 | MICHAEL AARON TEW | October 1, 2019 | $20,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |
| 51 | MICHAEL AARON TEW | October 2, 2019 | $12,000.00 | Withdrawal from Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

12

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 52 | MICHAEL AARON TEW | November 1, 2019 | $20,611.01 | Transfer from Wells Fargo account ending in 6934, held in the name of Sand Hill LLC to Continental Volkswagen at Comerica Bank account ending in 5559 |
| 53 | MICHAEL AARON TEW | February 20, 2020 | $20,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 54 | MICHAEL AARON TEW | February 21, 2020 | $15,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 55 | MICHAEL AARON TEW | February 27, 2020 | $20,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
| 56 | MICHAEL AARON TEW  KIMBERLEY ANN TEW | March 3, 2020 | $20,000.00 | Withdrawal from Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |

All in violation of Title 18, United States Code, Section 1957.

## COUNT 57

During the calendar year 2019, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $24,400. Because of such gross income, he was required by law, on or before July 15, 2020, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

13

All in violation of Title 26, United States Code, Section 7203.

## COUNT 58

During the calendar year 2018, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $24,000. Because of such gross income, he was required by law, on or before April 15, 2019, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 59

During the calendar year 2017, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $20,800. Because of such gross income, he was required by law, on or before April 17, 2018, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

All in violation of Title 26, United States Code, Section 7203.

## COUNT 60

During the calendar year 2016, MICHAEL AARON TEW, whose principal place of business was in Colorado, had and received gross income in excess of $20,700. Because of such gross income, he was required by law, on or before April 18, 2017, to make an income tax return to the Internal Revenue Service stating specifically the items of his gross income and any deductions and credits to which he was entitled. Well knowing and believing the foregoing, the defendant, MICHAEL AARON TEW, did willfully fail to make an income tax return as required.

All in violation of Title 26, United States Code, Section 7203.

14

A TRUE BILL:

<u>Ink signature on file in Clerk's Office</u>
FOREPERSON

JASON R. DUNN
United States Attorney

<u>s/ Hetal J. Doshi</u>
Hetal J. Doshi
Matthew T. Kirsch
Assistant United States Attorneys
United States Attorney's Office
1801 California Street, Suite 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
Email:  Hetal.Doshi@usdoj.gov
        Matthew.Kirsch@usdoj.gov
        *Attorneys for the United States*

15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1.  **MICHAEL AARON TEW,** and
   2.  **KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,**

     Defendants.

---

## GOVERNMENT'S RESPONSE TO DEFENDANTS' MOTIONS FOR RECONSIDERATION OF COURT'S ORDER REGARDING PROFFER STATEMENTS

---

"It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing." *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000). The proffer statements the defendants are asking the court to reconsider were signed in 2020, were discussed extensively during the pretrial motions hearing in October 2022, and were the subject of argument just five days ago at the pretrial conference. This past Thursday, the Court issued its ruling:

> Nor have the defendants met their burden to show that their entry into these agreements was not knowing and voluntary. *U.S. v. Smith*, 770 F.3d 628, 638 (7th Cir. 2014) (defense has burden to show waiver not voluntary and knowing and citing *Mezzanato*, 513 U.S. at 210); *U.S. v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) (holding similarly). While Ms. Tew has made vague assertions that her agreement was not entered into "knowingly," it became clear at the conference that this was actually a dispute about the scope of the agreement's terms. Because these agreements are treated as contracts, the court sees no reason to hold an evidentiary hearing to interpret their scope, and Ms. Tew has provided

1

no specific authority for doing so here.

ECF No. 404 at 2 (footnote omitted). The defendants advance no good cause for the Court to reconsider an issue decided two business days ago. Their respective motions for reconsideration, ECF Nos. 409 and 410, should be denied.

## I.   The defendants have articulated no basis for reconsideration — and no legal precedent that would guide a principled method for doing so

The rules of criminal procedure do not provide for motions for reconsideration. Whether to entertain such a motion is left to the sound discretion of the court, which can consider analogous rules from the civil realm. *United States v. Baraja-Chavez*, 358 F.3d 1263, 1266 (10th Cir. 2004). In exercising that discretion, the Court should consider whether it was reasonable for the parties (a) to wait until the week before the pretrial conference to raise an issue that has been known from the start, (b) to wait until a reply brief to make fulsome arguments engaging with text and caselaw they did not deem worth bringing to the court's attention in their primary brief, and (c) to file a motion for reconsideration on the literal eve of trial. It is not. *Cf. United States v. Randall*, 666 F.3d 1238, 1242 (10th Cir. 2011) (suggesting fourteen-day deadline is appropriate benchmark). The Court should exercise its discretion to summarily dismiss the motions as ones filed out of time and without good cause. *Id.* ("Motions for reconsideration, however, cannot be brought at simply any time. If they could, criminal proceedings might never end.").

Alternatively, the motions should be denied because they do not even attempt to articulate that there had been an "intervening change in the law," the discovery of

2

"new evidence previously unavailable," or something necessary to "correct clear error or prevent manifest injustice." *Servants of the Paraclete*, 204 F.3d at 1012. *See* ECF Nos. 409 and 410 (omitting reference to any legal principle or precedent that would authorize or encourage reconsideration). Nothing about the law or the facts has changed in the intervening days since the Court's order. Indeed, the motions make clear that the defendants advance the same position they did last week — a challenge to the *scope* of the waiver, not the fundamental nature of the waiver itself. ECF No. 404 at 2.

To the extent that Kimberley Tew's motion now implicitly seeks reconsideration because of a "manifest injustice," it simply elaborates on the same argument already raised (late) in her reply brief. In the reply, she argued that any waiver purporting to sign away the right to counsel, the right to confront witnesses, and the right to present a defense, was not knowing and voluntary. ECF No. 398. She makes the same argument now, differentiating its presentation only in citations to new cases. ECF No. 409 at 2-3 (making arguments about right to confrontation and law regarding waiver). The government addressed this argument in its response, ECF No. 393, and repeats those arguments here. The defendant did not sign away her right to confront witnesses or to present a defense; she simply agreed that if she told prosecutors one thing and later tried to argue to a jury something else, the jury would get to hear both statements, taking all information into account when deliberating over its verdict. Subject to the Court's admonishment regarding the rules of professional responsibility, Kimberley Tew can ask her lawyers to cross-examine

witnesses however she likes, and she retains the ability to present any defense she wants. She just faces the agreed-upon consequences for doing so. ECF No. 393 at 11-13.

To the extent that Kimberley Tew's motion implicitly seeks reconsideration based on "new evidence that was previously unavailable" in the form of her lawyer's selective waiver of attorney-client privilege, she is similarly asking for yet another bite at the apple. Evidence of her present attorneys' interpretation of the contract she signed back then is not new — she could have made the argument in her (late) reply brief.  Or indeed, virtually any time before that. But even if she had, it is hard to see how that would have made a difference given that the court's clear *legal* ruling, which makes her *factual* assertion irrelevant: her issue relates to the scope of the contractual language, not whether the contract itself was knowing and voluntary. ECF No. 404 at 2; *see also* ECF No. 393 at 6 (quoting Judge Easterbrook's colorful rephrasing of black-letter law regarding contracts: they do not become invalid through the gambit of asserting unanticipated consequences).

Finally, to the extent Kimberley Tew's motion seeks reconsideration because of "clear error," she now seeks a do-over regarding her arguments about the text of the proffer agreement.  She is not wrong to point out that the proffer agreement in *Oluwanisola* used different language. But that doesn't make her preferred interpretation right. She had the opportunity to raise textual arguments for the first time in her original motion, and yet again in her (late) reply brief. The Court had that brief, and heard extensive arguments of counsel, at the hearing.  And it rejected that

4

reading of the proffer, pointing out that clients "take positions" and "present arguments" through attorneys. ECF No. 404 at 3. The government responds here by repeating what it argued that the hearing: the language of the proffer agreement at issue is substantially similar to the language interpreted in *Krilich*. The waiver's trigger includes cross-examination and argument by counsel that is inconsistent with the proffer. ECF No. 404 at 2 (citing *United States v. Krilich*, 159 F.3d 1020, 1024-25 (7th Cir. 1998) and noting similarities of language). If Robert Krilich couldn't use cross-examination to make insinuations inconsistent with a proffer, neither should Kimberley Tew.

For his part, Michael Tew quotes from the transcript of the pretrial conference and suggests that the Court's active and dynamic engagement of issues through argument somehow supersedes a thoughtful written order issued later, with the benefit of time to fully consider everyone's written and oral positions. ECF No. 410. But that is like using a hypothetical raised by a judge in an oral argument to second-guess a later written ruling. That is not how courts work (or should work) – oral argument is useful for judges to honestly grapple with the issues and tease out all the implications of an argument, to the benefit of the parties and the public.

The Court should put an end to the infinite time loop related to the Tews' arguments about their proffer agreements. Groundhog Day[1] was Friday. Trial should

---

[1] *See Dawn T. v. Saul*, NO. 18-cv-50101, 2019 WL 4014240, at *1 n.1 (N.D. Ill. Aug. 26, 2019) (describing rich and extensive history of the movie's reference in litigation all the way to the Supreme Court and, of course, its use as a shorthand lament for parties trapped in litigation that seems to present the same issue over and over.)

5

proceed tomorrow, consistent with the Court's order. The Tews can present any defense they choose, mindful of the fact that choices have consequences.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Bryan Fields*
Bryan Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because any resolution of it will be within the already-granted ends-of-justice continuances granted on March 17, 2023. ECF Nos. 317 and 318.

*/s/ Bryan Fields*
Bryan Fields

6

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of February 4th, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

CASE CAPTION:  USA v. Tew, et al.

CASE NO.:  20-cr-00305-DDD

EXHIBIT LIST OF:  Kimberley Tew

(Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| A | | Rose Management Group 1099s and Declaration | | | | | |
| B | | Miscellaneous Tax Records for Michael Tew (2017-2019) | | | | | |
| C | | 3.15.19 Communications between M Tew and K Tew | | | | | |
| D | | 4.11.19 Communications between M Tew and K Tew | | | | | |
| E | | 4.30.20 Communications between M Tew and K Tew | | | | | |
| F | | 6.13.19 Communications between M Tew and K Tew | | | | | |
| G | | 6.24.19 Communications between M Tew and K Tew | | | | | |
| H | | 7.2.19 Communications between M Tew and K Tew | | | | | |
| I | | 7.15.19 Communications between M Tew and K Tew | | | | | |
| J | | 7.18.19 Communications between M Tew and K Tew | | | | | |
| K | | 8.14.19 Communications between M Tew and K Tew | | | | | |
| L | | 9.18.19 Communications between M Tew and K Tew | | | | | |
| M | | Invoices from Sand Hill to Rose Management Group | | | | | |
| N | | Google voice linked cookies | | | | | |
| O | | 7.01.20 Communications between M Tew and K Tew | | | | | |
| P | | Jonathan Yioulos Resume - 2020 | | | | | |
| | | | | | | | |
| | | | | | | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### JUDGE DANIEL D. DOMENICO

---

Date:                    February 5, 2024          Prob./Pret.:  N/A
Courtroom Deputy:  Robert R. Keech           Interpreter:   N/A
Court Reporter:      Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          Counsel:

UNITED STATES OF AMERICA,                        Bryan D. Fields
                                                 Sarah H. Weiss

            Plaintiff,

v.

1. MICHAEL AARON TEW;                            Jason D. Schall
and                                              Kristen M. Frost
2. KIMBERLY ANN TEW,                             David S. Kaplan
                                                 Jamie H. Hubbard

            Defendants.

---

## COURTROOM MINUTES

---

**TRIAL TO JURY (DAY 1)**

**8:47 a.m.    Court in session.** Jury not present. Defendants present, on bond.

Discussion regarding objections to the Indictment being sent to the jury, preliminary matters, and motions filed over the weekend.

**ORDERED:**   [409] Defendant Kimberly Ann Tew's Motion for Finding that Ms. Tew's Waiver of Right to Confront and Cross-Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing is **DENIED.**

**ORDERED:**   [410] Defendant Michael Aaron Tew's Motion for Reconsideration of Court's Order Regarding Proffer Agreements and Request for Hearing is **DENIED.**

1

| 9:00 a.m. | **Court in recess.** |
|---|---|
| **9:22 a.m.** | **Court in session.** Jury present. |
| | Court's opening remarks to prospective jurors. |
| 9:31 a.m. | Voir dire oath given. |
| 9:32 a.m. | Voir dire by Court commences. |
| 9:41 a.m. | Bench conference regarding voir dire as to juror 100478684. |
| 9:45 a.m. | Voir dire by Court continues. |
| 9:51 a.m. | Bench conference regarding voir dire of juror 100487853. |
| 9:53 a.m. | Voir dire by Court continues. |
| 10:05 a.m. | Bench conference regarding voir dire of juror 100499899. |
| 10:07 a.m. | Bench conference regarding voir dire of juror 100486112. |
| 10:09 a.m. | Voir dire by Court continues. |
| 10:24 a.m. | Bench conference regarding voir dire of juror 100496425. |
| 10:25 a.m. | Voir dire by Court continues. |
| 10:34 a.m. | Bench conference regarding challenges for cause as to juror 100479487. |
| 10:36 a.m. | Voir dire by Court continues. |
| **10:43 a.m.** | **Court in recess.** |
| **10:56 a.m.** | **Court in session.** Jury present. |
| | Voir dire by Court continues. |
| 11:26 a.m. | Voir dire by Government by Ms. Weiss. |
| 11:49 a.m. | Voir dire by Defendant Michael Aaron Tew by Ms. Frost. |
| 12:00 p.m. | Voir dire by Defendant Kimberly Ann Tew by Ms. Hubbard. |

2

12:11 p.m.     Voir dire by Court continues.

12:20 p.m.     Bench conference regarding challenge for cause as to juror 100483499. Defendants' challenge jurors 100487853 and 100508777 for cause – OVERRULED.

12:27 p.m.     Voir dire by Court continues.

**12:29 p.m.     Court in recess.**

**1:36 p.m.      Court in recess.** Jury not present.

Court's remarks to counsel regarding peremptory challenges which will be done off the record.

**1:37 p.m.      Court in recess.**

**1:54 p.m.      Court in session.** Jury not present.

Defendants' Batson challenge as to jurors 100476984 and 100503819.

**ORDERED:**   Defendants' Batson challenge as to jurors 100476984 and 100503819 is **DENIED.**

Discussion regarding the basis for peremptory challenges.

2:06 p.m.      Jury enters.

Court's remarks to jurors regarding those who were excused.

<u>Challenges for Cause:</u>

  1)     100510162
  2)     100478684
  3)     100513116
  4)     100484691
  5)     100496425
  6)     100479269
  7)     100479487
  8)     100490873
  9)     100483499
10)     100475936

<div align="center">3</div>

Peremptory challenges by Government:

  1)    100520578
  2)    100503819
  3)    100476984
  4)    100501698
  5)    100486112
  6)    100481549

Peremptory challenges by Defendant:

  1)    100487853
  2)    100499070
  3)    100508777
  4)    100515424
  5)    100499899
  6)    100509932
  7)    100474147
  8)    100510255
  9)    100509339
 10)    100485172
 11)    100512625

Court's remarks to jury.

2:10 p.m.    Jury sworn to try the case:

  1)    100505639    2)    100497700
  3)    100490018    4)    100507419
  5)    100495665    6)    100499527
  7)    100495206    8)    100518357
  9)    100480054   10)    100495067
 11)    100517226   12)    100475229
 13)    100485198

2:12 p.m.    Court reads preliminary jury instructions.

**2:41 p.m.    Court in recess.**

**2:59 p.m.    Court in session.** Jury not present.

Discussion regarding protocol for opening statements.

4

3:02 p.m.     Jury enters.

3:03 p.m.     Opening statement by Government by Ms. Weiss.

3:30 p.m.     Opening statement by Defendant Michael Aaron Tew by Mr. Schall.

3:41 p.m.     Opening statement by Defendant Kimberly Ann Tew by Mr. Kaplan.

3:58 p.m.     Bench conference regarding argument on Defendant Kimberly Ann Tew's oral motion to sever.

**ORDERED:**  Defendant Kimberly Ann Tew's oral motion to sever is **TAKEN UNDER ADVISEMENT.**

**ORDERED:**  Parties shall file simultaneous briefs on the motion to sever by the end of the day on **Wednesday, February 7, 2024.**

4:10 p.m.     Government's witness **Jonathan Yioulos** sworn.

              Direct examination by Government by Mr. Fields.
              *Exhibit(s) identified:      527, 531, 986, 605*

**Exhibit(s) 527, 531, 986 RECEIVED.**

4:42 p.m.     Bench conference regarding objection to exhibit 605.

4:47 p.m.     Direct examination by Government continues by Mr. Fields.
              *Exhibit(s) identified:      605, 863*

**Exhibit(s) 605 (portion shown) RECEIVED.**

4:49 p.m.     Bench conference regarding objection to exhibit 863.

4:55 p.m.     Direct examination by Government continues by Mr. Fields.
              *Exhibit(s) identified:      863*

**Exhibit(s) 863 (portion shown) RECEIVED.**

5:00 p.m.     Jury excused for the day and shall report back on Tuesday, February 6, 2024, at 9:00 a.m.

Discussion regarding objection by defendants to the word conspiracy on direct

5

examination of Mr. Yioulos.

**ORDERED:** Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberly Ann Tew.

**5:05 p.m.**      **Court in Recess. <u>TRIAL CONTINUED.   TOTAL TIME: 6:01</u>**

6

ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**JUDGE DANIEL D. DOMENICO**

**Criminal Case No.: 1:20-cr-00305-DDD**

**Unites States of America**

v.

**1. Michael Aaron Tew and 2. Kimberly Ann Tew**

|  | Juror Number | Juror Name | Government Challenge | Defendant Challenge |  |
|---|---|---|---|---|---|
| 1. | 100499899 | Juror names redacted. |  | 5 | 1. |
| 2. | 100505639 |  |  |  | 2. |
| 3. | 100497700 |  |  |  | 3. |
| 4. | 100490018 |  |  |  | 4. |
| 5. | 100486112 |  | 5 |  | 5. |
| 6. | 100507419 |  |  |  | 6. |
| 7. | 100485665 |  |  |  | 7. |
| 8. | 100499527 |  |  |  | 8. |
| 9. | 100495206 |  |  |  | 9. |
| 10. | 100509339 |  |  | 9 | 10. |
| 11. | 100474147 |  |  | 7 | 11. |
| 12. | 100510255 |  |  | 8 | 12. |
| 13. | 100485172 |  |  | 10 | 13. |
| 14. | 100518357 |  |  |  | 14. |
| 15. | 100480054 |  |  |  | 15. |
| 16. | 100495067 |  |  |  | 16. |
| 17. | 100509932 |  |  | 6 | 17. |
| 18. | 100476984 |  | 3 |  | 18. |

| 19. | 100487853 | | | ① | 19. |
|---|---|---|---|---|---|
| 20. | 100517226 | | | | 20. |
| 21. | 100475229 | | | | 21. |
| 22. | 100499070 | | | ② | 22. |
| 23. | 100515424 | | | ④ | 23. |
| 24. | 100508777 | | | ③ | 24. |
| 25. | 100501698 | | ④ | | 25. |
| 26. | 100475936 | | | | 26. |
| 27. | 100503819 | | ② | | 27. |
| 28. | 100520578 | | ① | | 28. |
| 29. | 100481549 | | Alt 1 | | 29. |
| 30. | 100512625 | | | Alt -1- | 30. |
| 31. | 100485198 | | | | 31. |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## JUDGE DANIEL D. DOMENICO

| | | | |
|---|---|---|---|
| Date: | February 6, 2024 | Prob./Pret.: | N/A |
| Courtroom Deputy: | Robert R. Keech | Interpreter: | N/A |
| Court Reporter: | Tammy Hoffschildt | | |

Criminal Case No. **1:20-cr-00305-DDD**          <u>Counsel:</u>

UNITED STATES OF AMERICA,

        Plaintiff,

Bryan D. Fields
Sarah H. Weiss

v.

1. MICHAEL AARON TEW;
and
2. KIMBERLEY ANN TEW,

        Defendants.

Jason D. Schall
Kristen M. Frost
David S. Kaplan
Jamie H. Hubbard

---

## COURTROOM MINUTES

---

**TRIAL TO JURY (DAY 2)**

**9:01 a.m.**     **Court in session.** Defendants present, on bond. Jury not present.

Discussion regarding procedure for exhibits that were partially admitted yesterday and pending motion to sever.

9:23 a.m.     Jury enters.

1

9:23 a.m.  Government's witness **Jonathan Yioulos** resumes.

Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified:  857, 731, 707, 865, 659, 433, 8, 9-40, 355-362, 365-367, 369-377, 379, 380, 383, 384, 386-392, 428-468, 492, 2, 3, 5, 7, 832, 642, 646*

**Exhibit(s) 857, 605 (entire exhibit), 863 (entire exhibit), 731, 707, 865, 659, 433, 8, 9-40, 355-362, 365-367, 369-377, 379, 380, 383, 384, 386-392, 428-468, 492, 2, 3, 5, 7, 832, 642 RECEIVED.**

**10:37 a.m.  Court in recess.**

**10:58 a.m.  Court in session.** Jury enters.

11:00 a.m.  Government's witness **Jonathan Yioulos** resumes.

Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified:  732, 733, 741, 742, 706, 705, 747, 748, 765, 775, 635*

**Exhibit(s) 732, 733, 741, 742, 706, 705, 747, 748, 765, 775 RECEIVED.**

11:27 a.m.  Bench conference regarding objection to exhibit 635.

11:30 a.m.  Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified:  635, 636, 715, 718, 717, 601, 603, 607, 602, 611, 629, 638*

**Exhibit(s) 636, 717, 601, 603, 607, 602, 611, 629, 638, 674 RECEIVED.**

**12:06 p.m.  Court in recess.**

**1:05 p.m.  Court in session.** Jury not present.

Discussion regarding objections to exhibits 974 and 975.

**1:12 p.m.  Court in recess.**

2

**1:24 p.m.**   **Court in session.** Jury enters.

1:24 p.m.   Government's witness **Jonathan Yioulos** resumes.

Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified:      611, 629, 638, 642, 674, 613, 614, 615, 625,*
*638, 639, 628, 647, 649, 680, 692, 683, 694, 657, 537, 540, 541, 542,*
*543, 637, 697, 649, 650, 674, 659, 665, 668, 673, 692, 693, 939, 688,*
*700, 703, 706, 711, 716, 719, 723, 727, 732, 737, 742, 748, 764, 801,*
*725, 749, 688, 687, 700, 703, 774, 801, 708, 681, 795, 801, 817*

**Exhibit(s) 613, 614, 615, 625, 639, 647, 649, 680, 692, 683, 694, 657, 537, 540, 541,**
**542, 543, 697, 650, 665, 668, 673, 693, 939, 688, 700, 703, 711, 719, 723, 727, 732,**
**737, 742, 764, 801, 725, 749, 774, 681, 795, 817 RECEIVED.**

**3:13 p.m.**   **Court in recess.**

**3:30 p.m.**   **Court in session.** Jury not present.

Further discussion regarding objection to exhibits 974 and 975.

3:46 p.m.   Jury enters.

Government's witness **Jonathan Yioulos** resumes.

Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified:      383, 817, 13, 15, 17, 18, 19, 22, 23, 841, 844,*
*845, 875, 887, 903, 912, 928, 933, 935, 950, 952, 953, 954, 955, 959,*
*969, 828, 830, 14, 833, 15, 820, 837, 685, 689, 786, 788, 858, 796, 969,*
*390, 972, 974*

**Exhibit(s) 841, 844, 845, 875, 887, 903, 912, 928, 933, 935, 950, 952, 953, 954, 955,**
**959, 969, 828, 830, 833, 820, 837, 689, 786, 788, 858, 796, 972, 974 RECEIVED.**

4:57 p.m.   Jury excused for the day and shall report back on Wednesday, February
7, 2024, at 9:00 a.m.

Discussion regarding objections to exhibit 974.

Defendant Kimberley Ann Tew's oral motion for severance.

Argument by counsel.

3

**ORDERED:**   Defendant Kimberley Ann Tew's oral motion for severance is **TAKEN UNDER ADVISEMENT.**

Discussion regarding objection to text message exhibits.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**5:12 p.m.**     **Court in Recess. <u>TRIAL CONTINUED.   TOTAL TIME: 6:24</u>**

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
## JUDGE DANIEL D. DOMENICO

---

Date:                February 7, 2024        Prob./Pret.:  N/A
Courtroom Deputy:  Robert R. Keech           Interpreter:  N/A
Court Reporter:    Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**        <u>Counsel:</u>

UNITED STATES OF AMERICA,                      Bryan D. Fields
                                               Sarah H. Weiss

        Plaintiff,

v.

1. MICHAEL AARON TEW;                          Jason D. Schall
and                                            Kristen M. Frost
2. KIMBERLEY ANN TEW,                          David S. Kaplan
                                               Jamie H. Hubbard

        Defendants.

---

## COURTROOM MINUTES

---

**TRIAL TO JURY (DAY 3)**

**8:54 a.m.**   **Court in session.** Defendants present, on bond. Jury not present.

Discussion regarding protocol as to exhibit 974 and an issue as to one juror.

**8:57 a.m.**   **Court in recess.**

**9:11 a.m.**   **Court in session.** Jury not present.

9:12 a.m.   Bench conference: Court informs counsel of an issue with a juror and efforts to remedy the situation.

1

| | |
|---|---|
| 9:16 a.m. | Jury enters. |
| | Government's witness **Jonathan Yioulos** resumes. |
| | Direct examination by Government continues by Mr. Fields. ***Exhibit(s) identified: 974, 841, 975, 742, 976*** |

**Exhibit(s) 975, 976 RECEIVED.**

| | |
|---|---|
| **10:43 a.m.** | **Court in recess.** |
| **11:09 a.m.** | **Court in session.** Jury enters. |
| 11:12 a.m. | Government's witness **Jonathan Yioulos** resumes. |
| | Cross examination by Defendant Michael Aaron Tew by Mr. Schall. |
| 11:23 a.m. | Bench conference regarding recorded interview. |
| 11:28 a.m. | Cross examination by Defendant Michael Aaron Tew continues by Mr. Schall. ***Exhibit(s) identified: 527*** |
| **12:00 p.m.** | **Court in recess.** |
| **1:05 p.m.** | **Court in session.** Jury enters. |
| 1:07 p.m. | Government's witness **Jonathan Yioulos** resumes. |
| | Cross examination by Defendant Michael Aaron Tew continues by Mr. Schall. ***Exhibit(s) identified: 605, 707, 865, 832, 715, 717, 697, 650, Q, R, 795, 875, 747, 715, 527*** |

**Exhibit(s) Q, R RECEIVED.**

| | |
|---|---|
| **2:52 p.m.** | **Court in recess.** |

2

**3:12 p.m.**      **Court in session.** Jury enters.

3:15 p.m.      Government's witness **Jonathan Yioulos** resumes.

Cross examination by Defendant Michael Aaron Tew continues by Mr. Schall.

3:32 p.m.      Bench conference regarding recorded interview.

3:34 p.m.      Cross examination by Defendant Michael Aaron Tew continues by Mr. Schall.
*Exhibit(s) identified: T*

**Exhibit(s) T RECEIVED.**

3:39 p.m.      Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.
*Exhibit(s) identified: 718, S, 614, 615, 639, 601, 603, 607, 732, 741, 912, 8, 12, 13, 20, 40, 356, 357, 362*

4:55 p.m.      Re-direct examination by Government by Mr. Fields.
*Exhibit(s) identified: 40, 38, 659*

5:00 p.m.      Jury excused for the day and shall report back on Thursday, February 8, 2024, at 9:00 a.m.

Discussion regarding admission of the entirety of the recorded interview and witness to appear via VTC tomorrow.

**ORDERED:**  Simultaneous briefs on severance issue shall be filed by the morning of Thursday, February 8, 2024.

**ORDERED:**  Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**5:05 p.m.**      **Court in Recess. TRIAL CONTINUED.   TOTAL TIME: 5:56**

3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

    1.  **MICHAEL AARON TEW**;

    2.  KIMBERLY ANN TEW; and
       a/k/a Kimberley Vertanen

    3.  JONATHAN K. YIOULOS,

Defendants.

---

### MICHAEL TEW'S RENEWED MOTION FOR SEVERANCE

---

Mr. Michael Tew, by and through counsel Kristen M. Frost of Ridley McGreevy & Winocur and Jason D. Schall of Bowlin & Schall LLC, respectfully renews the request to sever this case on behalf of Mr. Tew.   In support thereof, Mr. Tew states as follows:

### Introduction

A court has a continuing duty at all stages of a trial to grant severance if prejudice continues to exist in a joint trial.  *See Schaffer v. United States,* 362 U.S. 511, 516 (1960); *United States v. Peveto,* 881 F.2d 844, 857 (quoting *Schaffer*).  That rule exits because as a practical matter, and not an academic one, prejudice to a defendant can manifest itself unexpectedly, at the last minute, after a jury is empaneled and as a criminal trial unfolds – as they often do – with unanticipated twists and turns, including when one co-defendant ends up inculpating the other.

1

This situation is not limited to a case where the defendants happen to be husband and wife. Indeed, that relationship status can actually have the opposite effect and up the ante on the surprise factor at trial.

In addressing Mr. Tew's renewed motion for severance, the Court has acknowledged its continuing duty to address this issue when Mr. Tew moved for a severance pursuant to Federal Rule of Criminal Procedure 14(a) at the conclusion of Mrs. Tew's opening statement.    The Court raised *United States v. Jones,* 530 F.3d 1292 (10th Cir. 2008), and the government lodged general claims of "waiver" that are unsupported by the record.   Mr. Tew maintains that nothing has been "waived," or forfeited, and that severance is now ripe and required.  Further, applying *Jones* actually establishes why a severance is now required based on Mr. Tew's constitutional rights to due process, a fair trial, an impartial jury and his rights to confrontation and effective assistance of counsel.  U.S. Const. ameds V, VI.

### Relevant Factual Background

1.     Michael Tew and Kimberly Tew have been represented by numerous attorneys in this case,[1] and at times, they were jointly represented by the same attorney and/or legal team.[2] Indeed, two different legal teams jointly represented this married couple at different times during

---

[1] *See* Docs. 4, 13, 15, 17-18, 25, 28, 30-31, 54-55, 58, 106, 111, 136, 151, 162, 166-167, 178, 180-182, 288-290, 305-306, 308.

[2] *See* Docs. 106, 136, 151 (Entry of Appearances for Tor Elkland, and his colleagues Michael Hassard and Xuan Zhou on behalf of both Michael Tew and Kimberly Tew); Docs. 166, 180-182 (Orders granting motions to withdraw as to Mr. Elkland, Mr. Hassard, and Mr. Zhou); Doc. 178 (Entry of Appearance for Peter Bornstein on behalf of both Michael Tew and Kimberly Tew); Doc. 288 (Motion For Order Appointing Separate Counsel filed by Mr. Bornstein); Doc. 289 (Order granting Mr. Bornstein's Motion For Order Appointing Separate Counsel); Doc. 290 (Entry of Appearance for David Kaplan on behalf of Kimberly Tew); Doc. 298 (Entry of Appearance for Mr. Bornstein on behalf of Michael Tew); Doc. 305 (Order withdrawing Mr. Bornstein as counsel for Michael Tew); Doc. 308 (Entry of Appearance for Jason Schall on

2

this case – namely, Tor Elkland and his firm, and Peter Bornstein and his firm.   Eventually the problematic nature of this joint representation reared its head, and separate counsel from the Criminal Justice Act Panel were appointed to represent Mr. Tew and Mrs. Tew independently.

2.      While representing both Mr. Tew and Mrs. Tew, Mr. Bornstein filed Defendant Kimberly Ann Tew's Motion For Severance on June 13, 2022.  Doc. 218.   Mr. Bornstein did not file a severance motion on behalf of his other client, Mr. Tew.  Mrs. Tew's motion moved for a severance pursuant to Rule 14(a) because: (1) the joinder of Ms. Tew with her husband Michael Tew in this case violates the *Bruton* Rule because in interviews Mr. Tew had made incriminating statements against Mrs. Tew and at a joint trial Mrs. Tew would be unable to cross-examine Mr. Tew about these statements.  *Id.* at ¶¶ 6-9.   As a basis for severance, Mrs. Tew's motion also generally asserted that a joint trial was prejudicial because "of the prejudice to Ms. Tew due to the sheer number of counts against Michael Tew in a joint trial, the evidence admissible on those counts and her different degree of culpability."  *Id.* at ¶ 15.   Again, in referring to the *quantity* of evidence and number of counts, versus a situation involving antagonistic defenses, the motion makes reference to the potential that jurors will not be able to follow instructions relating to Ms. Tew only and that the "evidence against Ms. Tew is far less than that the government intends to use against Michael Tew."

3.      Mrs. Tew's motion makes no reference to Mr. and Mrs. Tew (Mr. Bornstein's joint clients at the time) pointing fingers at one another at trial, much less the idea that Ms. Tew might completely blame Mr. Tew for all fraud and money laundering at trial; nor, does it even

---

behalf of Michael Tew); Doc. 349 (Order appointing Jamie Hubbard on behalf of Kimberly Tew); Doc. 368 (Entry of Appearance for Kristen Frost on behalf of Michael Tew).

make a general reference to what is oftentimes referred to as the concept of "antagonistic defenses." *See generally id.*

4.      On August 9, 2022, the government filed its Response In Opposition To Defendant Kimberly Ann Tew's Motion For Severance.  Doc. 230.  This Response addresses the *Bruton* claim, the quantity of evidence it has against Mr. and Mrs. Tew, including the proffer statements of each defendant, the "number of counts," and the fact that there may be less evidence related to Mrs. Tew.  *Id.* at ¶¶ 2-4.   In addressing the main issue, the government stated that the Tenth Circuit "has explained that'[t]he mere fact that one co-defendant is less culpable than the remaining co-defendants is not alone [a] sufficient ground' to overturn a district court that decides to try defendants together."  *Id.* at p. 6 (citing to *United States v. Williams,* 45 F.3d 1481, 1484 (10th Cir. 1995)).

5.      Counsel for Mr. and Mrs. Tew filed a Reply Re: Defendant Kimberly Ann Tew's Motion For Severance on behalf of Mrs. Tew on August 23, 2022 addressing these same issues – *Bruton* and differences in the quantity of evidence implicating his clients.  Doc. 248.

6.      Neither the government's Response, nor Mrs. Tew's Reply, raised the concept of antagonistic or mutually exclusive defenses.

7.      The Court issued its Order Denying Motion For Severance on October 27, 2022. Doc. 260.   The Order addressed the *Bruton* challenge, with respect to Mr. Tew's call with Jonathan Yioulos and the proffer agreements, and prejudicial joinder under Rule 14(a) with respect to the quantity and type of evidence related to Mr. Tew and Mrs. Tew.  *Id*.  The Order addressed *inter alia* the possibility of negative spill-over effect in a joint trial, that disparate culpability is not unusual in joint trials, and the inapplicability of *United States v. Sarracino,* 340 F.3d 1148, 1165 (10th Cir. 2003).   *Id.* at 7-8.  Ultimately, the Court decided that the difference

4

in number of counts and culpability between Mr. and Mrs. Tew does not present a risk of real prejudice in this case, and nor would a jury be unable to independently evaluate Mr. and Mrs. Tew because they are married. *Id.* at 7. The Court's Order did not address the issue of finger pointing, or antagonistic defenses, because that basis for severance had not been previously asserted by counsel for Mrs. Tew (or Mr. Tew).

8. No attorney has filed a motion to sever on behalf of Mr. Tew in this matter.

9. Discovery in this matter is voluminous. It consists of multiple terabytes of reports, audio recordings and transcripts, including the transcripts of the proffer interviews of Mr. Tew and Mrs. Tew. When the Tews gave these interviews at the beginning of this case, Mr. Tew requested a carve out for Mrs. Tew in his first proffer, and Mrs. Tew did the same in her proffer. Doc. 394.1, Exhibit A. This carve out was so that Mr. Tew could decline to answer questions about Mrs. Tew and all facts and alleged exposure related to her in the debriefing session. Mrs. Tew negotiated the same type of carve out. Doc. 394.3, Exhibit C.

10. Undersigned counsel for Mr. Tew has never been party to a joint defense agreement with current counsel for Mrs. Tew. More recently, the two sets of attorneys have conferred about trial logistics, for example, to be efficient and prudent. Counsel for the two defendants have also discussed other practical matters, such as exhibits, witness issues and other non-privileged, routine matters.

11. Undersigned counsel has not had access to Mrs. Tew's trial strategy, work product or attorney-client communications. They did not have knowledge, indirect or otherwise, about Mrs. Tew's defense, investigation, trial strategy or what the content of her attorney's opening statement would be. Likewise, counsel for Mrs. Tew did not have access to the strategy,

5

investigation, or work product of Mr. Tew's attorneys.  Nor, did they know or have access to Mr.

Tew's theory of defense or what his attorney would say in opening statement.

<p style="text-align:center">**Discussion**</p>

**I. Mr. Tew Has Not Waived Or Forfeited This Severance Request Because It Was Not Ripe Or Timely Until After Opening Statements.**

Relying upon generalities, the government has improperly argued that Mr. Tew has

somehow waived a specific rule and constitutional based challenge.  But his severance motion is

founded on fluid developments and evidence in an ongoing trial and there has been no

abandonment of any known right on his part.  The government's position overlooks the fact that

Mr. Tew's motion could not have been raised earlier because the facts and circumstances giving

rise to the need for a severance were not known until trial had begun.

"Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely

assertion of a right, waiver is the 'intentional relinquishment or abandonment of a known

right.'" *United States v. Carrasco-Salazar,* 494 F.3d 1270, 1272 (10th Cir. 2007)(quoting *United

States v. Olano,* 507 U.S. 725, 733 (1993)). Waiver is accomplished by intent,

whereas forfeiture comes about through neglect.  *Carrasco-Salazar,* 494 F.3d at 1272.  Mr. Tew

has neither waived, nor forfeited, his right to request a severance through intent, or through

neglect.

The severance motion filed on behalf of Mrs. Tew raised *Bruton* and Sixth Amendment

concerns and argued the fact that Mrs. Tew was facing less charges than Mr. Tew and that the

quantity of charges and evidence may prejudice Mrs. Tew at trial.   Doc. 218.   The related

response, reply and Order address only those issues.    None of these pleadings, or the related

order, addressed antagonistic defenses, or mutually exclusive defenses, because the issue was not

<p style="text-align:center">6</p>

raised by prior counsel. Contrary to the government's prior assertions on the record during trial, the specific basis for severance at issue now was not addressed in prior defense motions or the related Order. Further, it is difficult to imagine that Mr. Tew, who was represented by the same attorney as Mrs. Tew and relied upon that same attorney's advice, could have waived a known right to move to sever the trial based on antagonistic defenses at that stage of the case. The same logic applies to forfeiture.

Since the outset of this case, the Tews' conduct (that which is now documented in the record) has not reflected antagonism, despite their status as husband and wife co-defendants. Before agreeing to be debriefed by the government, Mr. Tew negotiated a carve out in the terms and conditions of his proffer agreement so that he was not compelled to say anything about Mrs. Tew. *Exhibit* B. The transcript of the proffer meeting shows Mr. Tew trying to protect Mrs. Tew. *See* Doc. 394.1. The same is true for Mrs. Tew, who obtained the same carve out. This conduct shows the Tews were not contemplating antagonistic defenses at the time that Mrs. Tew's motion to sever was filed.[3] Undersigned counsel cannot speak to what the client dynamics looked like at that stage of the case.

Moving to more recent times, after trial in this matter was continued and new counsel were appointed for Mr. and Mrs. Tew, the Court scheduled another motions filing deadline. Doc. 338. A motion to sever was not filed at that point because the level of antagonism that exits *now during trial*, did not exist then in a way that would have substantiated filing a meritorious severance motion, or a ripe motion. Undersigned counsel is not at liberty to discuss client dynamics, client communications or client confidences at the time of the last filing deadline, or

7

now during trial.  Colo. RPC 1.6, 1.7.  What undersigned counsel can assert is that Mr. Tew's

defense team has not been, and is not, in a joint defense agreement with Mrs. Tew's counsel.

Mr. Tew's counsel has had no access to Mrs. Tew's trial strategy, communications with her

attorneys or what approach Mrs. Tew would take at trial over the past many months.

Criminal trials are fluid and unpredictable, and what a criminal trial will ultimately look

like after a jury is sworn typically remains unclear during the weeks and months leading up to a

trial.  Criminal defense attorneys, for example, as a general rule do not have the ability to take

depositions in advance of trial.  Unlike in a civil matter, where discovery typically closes on a

date certain, the government in a federal criminal case oftentimes produces discovery and

witness statements at the last minute, and the information contained in those late disclosures

impacts the evolving defense strategy at trial.  In the practice of criminal defense work, it is

impossible to have a crystal ball, or any reliable indication of what could happen during a trial.

In this case, there were many last-minute events that impacted trial strategy.  For

instance, as of the last motions filing deadline in October of 2023, the *James* hearing had not yet

occurred.  The defense was not on notice of what exact evidence from the *James* log would

actually be admitted at trial until the Court issued its Order Regarding Admissibility Of Rule

801(d)(2)(E) Statement on December 29, 2023.  Doc. 361.  The government did not file its final

exhibit and witness lists until February 2, 2024, three days before trial.  Docs. 407, 408.  And,

since the defense has no burden of proof, oftentimes defense strategy (although ongoing) is only

solidified upon notice of how the government plans to prove its case and what evidence it will

use to do so.

---

[3] Mr. Tew's second proffer letter did not contain this carve out and counsel cannot say any more
than that.  *See* CRPC 1.6, 1.7.  Mrs. Tew had not yet been indicted at the time of this second

It should also be noted that the government disclosed significant additional discovery in the last several weeks and days leading up to trial, and these disclosures have continued during the trial.[4]  Even today, over the lunch break the government just disclosed interview notes for witnesses that may testify today.  That the defense has been receiving and reviewing discovery on an ongoing and last minute basis is another factor that has compounded the antagonistic nature of the positions of Mr. Tew and Mrs. Tew, as new information emerges in each new disclosure.

In sum, there are several practical reasons why a pre-trial motion for severance based on antagonistic, or mutually exclusive defenses, was simply not appropriate, timely or ripe before trial.   And, the Rules of Criminal Procedure recognize that there must be room for a criminal defendant to move for severance after trial has begun.   Rule 12 requires a defendant to file motions to sever before trial *only if* the basis for the motion was reasonably available before the trial and the motion can be determined without a trial on the merits. Fed. R. Crim. P. 12(b)(3)(D).

Also, the unique position of a criminal defendant and the rights that protect the accused should also be noted at this juncture.  With some specific exceptions related to specific defenses that are not at issue here, a defendant has no obligation or duty to reveal his strategy, his general defenses or the core of his defense in a pleading before the Court.  In fact, in almost all cases it would be unwise to do so.  By way of analogy, in analyzing the constitutionality of a trial court's order requiring a criminal defendant to produce exhibits thirty days before trial began, the

---

proffer.

[4] The defense has received hundreds of pages of new discovery over the last several weeks.

9

Supreme Court of Colorado acknowledged that the special rights of the accused prohibits such
disclosures:

> The disclosure order compels Kilgore to reveal exculpatory evidence and to tip his hand
> vis-à-vis his investigation and the theory of his defense. In effect, it forces Kilgore to
> share with the prosecution his trial strategy —i.e., how he plans to defend against the
> charges brought against him. This is problematic. Gaining access to Kilgore's exhibits
> prior to trial may help the prosecution meet its burden of proof. Put differently, the
> disclosure requirement rests on shaky constitutional ground because it improperly risks
> lessening the prosecution's burden of proof.

*People v. Kilgore*, 2020 CO 6, ¶ 29, 455 P.3d 746, 751.

In this case, not only was a severance request not yet ripe before trial but filing one would

have required Mr. Tew to explain his defense strategy under *Jones* would have put him in the

unconstitutional position of lessening the prosecution's burden of proof, when nothing had yet

triggered his duty to make such a motion.

Based on all of these evolving developments and moving parts, Mr. Tew's motion for

severance was not an untimely request, *Carrasco-Salazar supra,* based on all of the factors

described above and this issue has not been forfeited or waived.

## II. *United States v. Jones.* 530 F.3d 1292 (10th Cir. 2008) Does Not Require A Different Result.

*United States v. Jones.* 530 F.3d 1292 (10th Cir. 2008), is inapposite to the facts of this

case because this case now involves a defense that Mrs. Tew is not guilty, because Mr. Tew is

guilty, and his guilt negates her – the classic problematic finger pointing situation.  However,

applying the three-part test in *Jones* to the distinct facts of this case demonstrates why the Court

should grant Mr. Tew's request for severance.

In *Jones,* Ms. Jones and Mr. Wright were charged jointly for conspiracy and bank fraud

related to a check fraud scheme involving Wells Fargo.  *Jones,* 530 F.3d at 1297.   Mr. Jones was

10

additionally charged with drugs and firearms offenses in this same case. *Id.* Prior to trial, both defendants filed separate motions to sever. *Id.* at 1298. Ms. Jones moved to sever the drug and firearm counts because she wanted to testify as to one or some counts, but not others. Mr. Wright moved to sever his trial from Ms. Jones' trial because he claimed that the drug trafficking charges related to Ms. Jones would prejudice him at trial. The District Court denied both severance requests.

On appeal, and in relevant part, Mr. Wright argued that severance was warranted because he and Ms. Jones presented mutually exclusive defenses. *Id.* at 1301. The Tenth Circuit applied a three-step test to determine whether a defendant will be prejudiced because he and a co-defendant will present defenses that are mutually exclusive.[5] *Id.* at 1304 (citing to *Pursley,* 474 F.3d at 765). "The conflict between the defendants' defenses must be such that the jury, in order to believe the core of one defense, must *necessarily* disbelieve the core of the other." *Id.* (quoting *United States v. Dazey,* 403 F.3d 1147, 1165 (10th Cir.2005) (emphasis added) (internal quotation marks omitted). The Court held that the defenses were not so antagonistic that they were mutually exclusive, that Mr. Wright's guilt was not a viable legal defense for Ms. Jones and that the core of Ms. Jones' defense did not necessarily depend on Mr. Wright's guilt. *Id.*

Here, unlike *Jones*, the prejudicial nature of the joint trial is not limited to one defendant facing additional and/or accusations of a different nature. For example, the prejudicial

---

[5] First, a court must determine whether the two defenses are so antagonistic that they are mutually exclusive. *Id.* Second, because "mutually antagonistic defenses are not prejudicial *per se,*" a court must consider whether there is "a serious risk that a joint trial would compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (quoting *Zafiro,* 506 U.S. at 539). Third, if a defendant shows that the case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (quoting *Pursley,* 474 F.3d at 765).

11

comments that have been presented to the jury about the antagonistic defenses in this case are not just limited to a few examples, as was the case in *Jones*. *See id.* (Specifically referring to the following statement made by Ms. Jones' counsel: "[I]t will be up to you to decide when you go back to deliberate, did Shyla Jones act knowingly and voluntarily [?]"). The finger pointing has been present from opening statements onwards. This is now the classic case of mutually antagonistic defenses, which will continue to grow throughout trial, and continue to result in uncurable prejudice to Mr. Tew.

Under the first *Jones* prong, the two defenses between Mr. and Mrs. Tew are so antagonistic now that they are mutually exclusive. *Jones,* 530 F.3d at 1304. Since trial has begun, Mrs. Tew has unequivocally implicated Mr. Tew through attorney argument and cross-examination in a manner that only suggests that Mrs. Tew is not guilty – because Mr. Tew is guilty. Mrs. Tew said this out of the gate repeatedly during her opening statement, in a way that the jury will likely convict Mr. Tew of all counts, and very likely may convict Mrs. Tew of none. Ant, this argument is the very definition of a situation involving prejudicial antagonistic defenses, or mutually exclusive ones, that developed late in the game, due to many factors, outside of Mr. Tew's control.

For example, in opening statement, Mrs. Tew asserted the following:[6]

This case is about a scheme concocted and executed by Michael Tew and Jon Yioulos that resulted in millions of dollars of loss to National Air Cargo. (p. 19, lines 20-24)

And yes, both of them ended up experts at that, and they worked together. They were both in sort of a related part of the business. The financial part of the business. And why is that important? It's important because the combination of these two people working with each other, ultimately on behalf of National Air Cargo, and then on behalf of each other, was what made what was otherwise a scheme very difficult to do, very difficult to understand, very difficult to work out, very difficult not to get caught, because this -- this

---

[6] The rough draft transcript of opening statements is attached hereto as *Exhibit* A. The page references above are citations to *Exhibit* A.

12

is not something that can be done by somebody that didn't know not only about finances, but didn't know about the finances of this company, and what they both knew is they knew how vendors were identified.
(pgs 20-21, lines 23-25, 1-10).

They knew how invoices were to be approved, and invoices would be forwarded to accounts payable, how invoices would then be paid out. They even knew more important things than that, which is, how could you fly under the radar? How could you do it so you don't get caught? These are -- this is not a scheme or a plan or a design, as I said, that can be a run-of-the-mill put together program. This is a scheme and a plan that only could be executed because both of these individuals knew the weaknesses at NAC.
(p 21, lines 12-20)

And the two of them were able to create this, create this that resulted in the loss to NAC.
(p 22, lines 1-2)

And the two of them together were able to function in this way, as I said, because they knew how to do the invoices, and set up the vendors, and they knew how to get it by, because Jon Yioulos was the person who could approve the invoices, send them to accounts payable, have his signature, on hundreds of these, saying I approve this payment, Jon Yioulos and Michael Tew.  Then there's a whole other part of this plan of theirs, which is, where does the money go?
(p 23, lines 9-16)

There is one account that you will see this money being deposited into that Kimberly Tew has any signatory authority. You know what, it's Navy Federal Credit Union, and you will see it. Guess what? She is not the only signatory on that account, because the other individual who has authority to work in that account, to put money into that account and to take out money of that account is Michael Tew. The only one account that this money was distributed to from NAC into bank accounts that has Kimberly Tew's name on it, is also one that's jointly held with Michael.
(p 24, lines 13-22)

Because Michael Tew is a player, who makes money, and can make money for NAC. He can make money in other places, he can make money when he has worked for people in the marijuana industry.
(p 25, lines 12-15)

So distinguishing the participants, it's going to come down to a company for sure, and then the behavior and the design and intent and the scheme of Jon Yioulos and Michael Tew, and rather than just say the Tews, that seems to roll off the government's tongues, without making that kind of distinction that's so important.
(p 26, lines 3-8)

13

So I ask you, as I'm sure you will, to pay close attention to who was needed for the
scheme, who had the knowledge and the intelligence for the scheme, who got it
through NAC, where it went from NAC to whose accounts, and after you are done
looking at the government's case, you will realize that, while, Kimberly Tew was around
for these years, they have not proven beyond a reasonable doubt her criminal
participation.
(p 26, lines 9-16)

This opening statement, or what the evidence would show from Mrs. Tew's perspective,
was that "they" – meaning Mr. Tew and Mr. Yioulos – are the ones who worked at NAC, had the
access, knowledge and intelligence to conspire together to commit all of the charged crimes.
Indeed, the opening started with the position that: "This case is about a scheme concocted and
executed by Michael Tew and Jon Yioulos that resulted in millions of dollars of loss to National
Air Cargo."  Exhibit A, p 19, lines 22-24.  This opening statement is a classic example of finger
pointing and mutually exclusive defenses.

The same goes for Mrs. Tew's cross-examination of Mr. Yioulos's statements, text
messages, interactions with Mr. Tew, and Mr. Yioulos's testimony about documents and
invoices.  This line of questioning equally implicated Mr. Tew as the guilty party who conspired
and schemed with Mr. Yioulos.  And, that therefore, Mrs. Tew is not guilty.  As counsel for Mr.
Tew stated on the record, this cross-examination Mrs. Tew's attorney literally pointing his finger
at Mr. Tew numerous times.   This is another classic example of mutually exclusive defenses –
Mrs. Tew did not scheme with Mr. Yioulos, but Mr. Tew did.

Second, and although "mutually antagonistic defenses are not prejudicial *per se*," the
facts here establish that there is "a serious risk that a joint trial would compromise a specific trial
right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *Jones*,
530 F.3d at 1304 (quoting *Zafiro*, 506 U.S. at 539).  Based on testimony that has been elicited
from the government's witnesses, the dynamic discussed above will continue throughout this

14

trial where Mrs. Tew points to evidence that she was not involved in a conspiracy, a scheme to defraud, illegal wires or money laundering.  But, that Mr. Tew and Mr. Yioulos were.  This situation now poses a real risk that the jury will not view Mr. Tew as an individual defendant and hold the government to its burden of proof to Mr. Tew, the same way it would if he were to be tried without Mrs. Tew present as a co-defendant.  This dynamic will continue to have an impact on Mr. Tew's constitutional rights to a fair trial, due process and to a fair and impartial jury that will not be impacted by the antagonistic and mutually exclusive defense that has developed between himself and Mr. Tew.

Third, according to *Jones,* if a defendant shows that the case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration."  *Id.* (quoting *Pursley,* 474 F.3d at 765).  Here, this Court should weigh this prejudice to Mr. Tew in light of concerns over judicial economy.  Mr. Tew faces 59 counts and learned for the first time in opening statement that Mrs. Tew's primary defense is that she is not guilty because he committed all of these crimes.  Under these circumstances, Mr. Tew's important constitutional rights are in sever jeopardy and no considerations of economy and convenience can outweigh them.

Accordingly, based on the foregoing facts and law, Michael Tew respectfully files this renewed motion for severance pursuant to Federal Rule of Criminal Procedure 14(a) and moves this Court to sever his trial from that of his co-defendant wife, Kimberly Tew.

Respectfully submitted,

*s/ Kristen M. Frost*
Kristen M. Frost
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200

15

Denver, Colorado  80202
Telephone:  (303) 629-9700
Facsimile:   (303) 629-9702
E-mail:  frost@ridleylaw.com

*s/ Jason D. Schall*
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E. Progress Place, Suite 100
Telephone:  (720) 505-3861
E-mail:   jason@bowsch.com

*Attorneys for Defendant Michael Tew*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of February 2024, I served a true and correct copy of the foregoing **MICHAEL TEW'S RENEWED MOTION FOR SEVERANCE** electronically with the Clerk of the Court via the CM/ECF system, which will send notice of such filing to the Court and parties.

*s/ Heather Grant*
Heather Grant

16

REALTIME TRANSCRIPT

1    spark, the heat.  The element that eventually grows and left

2    uncontrolled becomes a conflagration that runs out of control

3    destroying the things in its wake.  The second element of a

4    fire is oxygen.  The breath of the fire, without which the fire

5    would be choked off, there would be no fire.  The element that

6    has the ability to deny the fire its life.  And finally, ladies

7    and gentlemen, every fire must have fuel.  The very object, the

8    very material that the fire consumes, that the fire consumes

9    only to prolong its own life, to only prolong the flames, to

10   keep them coming, and in the end, the fuel is left ravaged.

11   It's left destroyed.  It's left as nothing more than dust.  And

12   there's nothing left to show of it, and as you consider the

13   evidence presented to you as the trial develops, I ask that you

14   see behind the Indictment.  I ask that you see the full story,

15   and make an effort to understand what is really going on here.

16   Thank you.

17          *THE COURT:*  Thank you, Mr. Schall.  Mr. Kaplan.

18          *MR. KAPLAN:*  Thank you, judge.

19                       **OPENING STATEMENT**

20          *MR. KAPLAN:*  May it please the Court.

21          *THE COURT:*  Go ahead.

22          *MR. KAPLAN:*  This case is about a scheme concocted and

23   executed by Michael Tew and Jon Yioulos that resulted in

24   millions of dollars of loss to National Air Cargo.  That's what

25   you are going to hear, that's what the evidence is going to

DEFENDANT'S
EXHIBIT

A

 1    demonstrate, when the government attempts to prove their case.

 2          Jon Yioulos, as was briefly mentioned, was an employee

 3    of National Cargo, an employee that started as an accounts

 4    executive, became a manager, became a controller, and he was

 5    intimately familiar with all of the financial workings, all of

 6    the financial circumstances all of the financial procedures,

 7    all the way -- the way National Air Cargo got its money,

 8    distributed its money.  He was intimately familiar with.

 9          Michael Tew, as you heard from the government, was

10    hired by National Air Cargo, he was a pretty impressive guy

11    with an MBA from NYU, very well-spoken, knew about finances,

12    was liked by the head of NAC, that's how you will hear about

13    that company, and came in to do just some work for them, and

14    worked his way into a position of great responsibility.  Worked

15    his way into a position, under contract, as the chief financial

16    officer, and similarly to Jon Yioulos, he also became

17    intimately familiar with the financial workings, the processes,

18    the procedures, how NAC did business from a financial

19    standpoint.  What were the strengths of their financial

20    circumstances?  What were the strengths of the processes?  How

21    did they do it?  How did they take care of all that the

22    government just talked about with vendors and money coming in

23    and money coming out?  And yes, both of them ended up experts

24    at that, and they worked together.  They were both in sort of a

25    related part of the business.  The financial part of the

  1    business.  And why is that important?  It's important because

  2    the combination of these two people working with each other,

  3    ultimately on behalf of National Air Cargo, and then on behalf

  4    of each other, was what made what was otherwise a scheme very

  5    difficult to do, very difficult to understand, very difficult

  6    to work out, very difficult not to get caught, because this --

  7    this is not something that can be done by somebody that didn't

  8    know not only about finances, but didn't know about the

  9    finances of this company, and what they both knew is they knew

 10    how vendors were identified.  They knew how vendors would bill

 11    for their services.  They knew how invoices were to come into

 12    the company.  They knew how invoices were to be approved, and

 13    invoices would be forwarded to accounts payable, how invoices

 14    would then be paid out.  They even knew more important things

 15    than that, which is, how could you fly under the radar?  How

 16    could you do it so you don't get caught?  These are -- this is

 17    not a scheme or a plan or a design, as I said, that can be a

 18    run-of-the-mill put together program.  This is a scheme and a

 19    plan that only could be executed because both of these

 20    individuals knew the weaknesses at NAC.

 21            They knew how to avoid the audits.  They knew how to

 22    to define the companies, to determine what companies would be

 23    accepted, and what companies would be accepted and charging a

 24    certain amount of money that, for a company this big, wouldn't

 25    be seen by the other financial people involved in the company.

 1    And the two of them were able to create this, create this that

 2    resulted in the loss to NAC.

 3           The government sometimes in their opening talked about

 4    Michael Tew occasionally about Ms. Tew and a lot just by saying

 5    the Tews.  The Tews.  Well, it's important for you to evaluate

 6    who was responsible for this?  Who committed this crime, and

 7    not lump these two people together, that's not their

 8    responsibility.  Their responsibility is to prove their case

 9    beyond a reasonable doubt as it relates to two different and

10    defined individuals, facing the charges that bring us all into

11    this room today, and for the next week.

12           Now, you are going to hear from Mr. Yioulos.  I assume

13    that part of what you are going to hear -- I know what you are

14    going to hear is that he was a reluctant participant over the

15    years that he did this.  He was a reluctant participant, but

16    this wasn't his first rodeo at NAC.  This wasn't something that

17    was the first time that he decided to steal from NAC.  He had

18    done it before he even met Michael Tew, and he did it in a way

19    that was very similar, it was an invoice scheme, because he was

20    sitting there with another one of the employees at NAC talking

21    about hey, you know, we can identify how sloppy this

22    financial -- this organization is with their finances.  I bet

23    you that we could provide invoices that they would pay, that we

24    could then receive, without ever being noticed, and that's what

25    they did.  They did it when they just said, You know what, I

1    need some money.  My wife spends a lot of money.  I'm working

2    on the house.  You want to get it into your account or you want

3    to get it into my account; doesn't matter because whenever we

4    get it, well split it 50/50.  That was before he met Michael

5    Tew or knew who Kimberly Tew was.  So the idea that when you

6    hear about a bolt of lightning, the consciousness, he was so

7    relieved that this nightmare was over.  There's a character

8    that you will evaluate for yourself.  And the two of them

9    together were able to function in this way, as I said, because

10   they knew how to do the invoices, and set up the vendors, and

11   they knew how to get it by, because Jon Yioulos was the person

12   who could approve the invoices, send them to accounts payable,

13   have his signature, on hundreds of these, saying I approve this

14   payment, Jon Yioulos and Michael Tew.

15          Then there's a whole other part of this plan of

16   theirs, which is, where does the money go?  You have the

17   vendors, where does the money go?  And you are going to see a

18   lot of documents, a lot of bank records, a lot of

19   communication, and it's not just volume that's important, it's

20   taking a look closer to see whether all of those documents

21   establish the guilt of Ms. Kimberly Tew beyond a reasonable

22   doubt.  And what you will find is that the money that was

23   wrongfully received from NAC and put into bank accounts, went

24   into nine or ten different bank accounts.  By the time this

25   case is over you are probably going to have to sense yourself

 1    of some of these numbers.  They are not important right now,

 2    you will see it with the presentation of the government's case,

 3    but what you will see is that money gets deposited into an ANB

 4    Bank account, Kimberly Tew isn't a signatory.  Into an Access

 5    National Bank account, 5965.  Kimberly Tew is not a signatory.

 6    PBVA account 0987, Kimberly Tew isn't a signatory.  Guaranty

 7    Bank & Trust Company, 7867, an account who the signatory is

 8    Michael Tew.  Region Bank 4514, Kimberly Tew is not a

 9    signatory.  Wells Fargo, 6934, Michael Tew account.  Wells

10    Fargo 2064, a Michael Tew account.  Navy Federal Credit Union,

11    account 5336, a Michael Tew account.  Navy Federal Credit

12    Union, 3094, a Michael Tew account.

13         There is one account that you will see this money

14    being deposited into that Kimberly Tew has any signatory

15    authority.  You know what, it's Navy Federal Credit Union, 8486

16    and you will see it.  Guess what?  She is not the only

17    signatory on that account, because the other individual who has

18    authority to work in that account, to put money into that

19    account and to take out money of that account is Michael Tew.

20    The only one account that this money was distributed to from

21    NAC into bank accounts that has Kimberly Tew's name on it, is

22    also one that's jointly held with Michael.

23         So the volume, the -- looking at the money, and where

24    it goes, it's important to look at it with a critical eye,

25    because there are two defendants here.  You have already been

1    told just, it's not -- I can't say it's a corollary to this,

2    because counts can mean many different things, but you have now

3    heard from the government and from Michael Tew's attorney, the

4    difference in the number of counts, just shows you from jump

5    street that there's a distinction.

6           And yes, Kimberly Tew is married to Michael Tew, and

7    they have two children.  Michael Tew was a consultant, and

8    chief financial officer for NAC.  He also was allowed, as a

9    contractor and as the government said to participate in other

10   types of businesses to bring money in.  To maintain the pretty

11   comfortable, if not better than comfortable, lifestyle that the

12   family was used to.  Because Michael Tew is a player, who makes

13   money, and can make money for NAC.  He can make money in other

14   places, he can make money when he has worked for people in the

15   marijuana industry.

16          And Kimberly did some work.  She did some work for

17   NAC, that's kind of the melding of things.  Oh yeah, she

18   worked -- take a look at how little that really was.  She is a

19   smart lady, but a business person, with the ability to bring

20   money in and have the income to make the lifestyle of their

21   family, what it was.  No.  That's Michael.  And Kimberly did do

22   some gambling and did do some Bitcoin trading.  She is not here

23   for violating cryptocurrency laws or for her gambling, which

24   she probably did do a little too much of.  And you will hear

25   conversations between a husband and a wife, and they are

 1   talking about finances, and they are talking about what could

 2   be perceived as funds justifiably received by Michael Tew.

 3           So distinguishing the participants, it's going to come

 4   down to a company for sure, and then the behavior and the

 5   design and intent and the scheme of Jon Yioulos and Michael

 6   Tew, and rather than just say the Tews, that seems to roll off

 7   the government's tongues, without making that kind of

 8   distinction that's so important.

 9           So I ask you, as I'm sure you will, to pay close

10   attention to who was needed for the scheme, who had the

11   knowledge and the intelligence for the scheme, who got it

12   through NAC, where it went from NAC to whose accounts, and

13   after you are done looking at the government's case, you will

14   realize that, while, Kimberly Tew was around for these years,

15   they have not proven beyond a reasonable doubt her criminal

16   participation.  Thank you.

17

18

19

20

21

22

23

24

25



**U.S. Department of Justice**

Jason R. Dunn
United States Attorney
District of Colorado

---

*Hetal J. Doshi*
*Assistant United States Attorney*

1801 California Street, Suite 1600      Telephone: 303-454-0100
Denver, CO 80202                        Fax: 303-454-0405

July 12, 2020

*Via Email*
Michael Sheehan, Esq.
Counsel to Michael Aaron Tew
Sheehan Law Denver
7400 East Caley Avenue
Quebec Center II
Suite 300
Centennial, Colorado 80111
michael@sheehanlawdenver.com
720.381.6146

Dear Mr. Sheehan,

I understand your client, Michael Tew, is interested in meeting with federal law enforcement agencies and the Criminal Division of the United States Attorney's Office for the District of Colorado for a proffer related to this office's criminal investigation of conduct related to or arising out Mr. Tew's financial transactions, direct or indirect, with National Air Cargo, and subsequent transactions initiated by or for the benefit of Mr. Tew, either directly or indirectly. This letter sets out the terms for that proffer, to be scheduled soon and set to occur in Denver, and any follow up proffer sessions between the Criminal Division of the United States Attorney's Office for the District of Colorado ("the government"), and you and your client.

1.      Your client agrees that he will truthfully and completely disclose all information with respect to his activities and the activities of others that are the subject of inquiry by the government during the proffer. In this regard, your client must neither attempt to protect any person, entity, or asset through materially false information or omission, nor falsely implicate any person, entity, or asset. The only limited exception to this is that Mr. Tew has elected at this time not to answer questions that may specifically implicate his wife, Kimberly Tew. He has consulted with his counsel and understands that this decision could diminish the value, if any, of his cooperation. Mr. Tew has stated that he may revisit this decision in the future. In the event

1

DEFENDANT'S
EXHIBIT

**B**

INV_00007872

that Mr. Tew agrees in the future to answer questions that may specifically implicate his wife, such a change will be memorialized in a subsequent proffer agreement. At a future time your client may be subpoenaed to testify before a federal grand jury, at trial, or in other court proceedings. You and your client understand that false statements willfully made during this proffer will negate the Government's agreement not to use this proffered information against your client.

2.       Except as set forth below, the government will not offer as evidence statements made by your client, or other information provided by your client during the proffer relating to the subject matter of the proffer, in (a) grand jury proceedings seeking an indictment against your client, (b) its case-in-chief at a trial against your client, or (c) at your client's sentencing.

3.       The government may use any statements made by your client or any information directly or indirectly derived from statements made by your client during the proffer for any other purpose, including (a) to obtain leads to other evidence that may be used against your client at any stage of a criminal prosecution, (b) in any prosecution of your client for perjury, false statements, or obstruction of justice, or (c) in a prosecution of your client for any crimes of violence, as defined in Title 18, United States Code, Section 16, or any conspiracy to commit a crime of violence. Provision (a) eliminates the need for a hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by your client during the proffer. *See Kastigar v. United States*, 408 U.S. 931 (1972). It is the intent of this agreement to establish that such derivative use is proper. By signing this letter, your client expressly waives any right to challenge the derivative use of such statements or information.

4.       The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer. By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above. *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

5.       Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not apply to any statements made by your client during the course of the proffer.

6.       In the event evidence other than your client's own statements is developed, regardless of whether it is developed before or after the proffer, this agreement does not impart "transactional" immunity to your client or preclude the government from bringing charges against him in the future.

<div align="center">2</div>

7.    Your client understands that he is required to provide full and complete information about the subject matter of the proffer and any information about himself which might adversely impact on his credibility as a witness concerning such activity.

8.    This agreement does not obligate the government to enter into any future plea bargain with your client or to file any motion regarding cooperation provided by your client.

9.    This agreement is not binding on the Civil Division of the United States Attorney's Office for the District of Colorado, any other federal government office, or any other state, tribal, or local office or agency not specifically named in this agreement.

No understandings, promises, or agreements have been entered into other than those set forth in this agreement, and nothing said during the proffer will constitute a promise or agreement unless all parties agree in writing.

Sincerely,

JASON R. DUNN
United States Attorney

*s/ Hetal J. Doshi*
By: Hetal J. Doshi
Assistant United States Attorney

3

I, Michael Tew, have read this agreement and carefully reviewed it with my attorney. I understand it, and I voluntarily, knowingly and willfully agree to it without force, threat or coercion. No other promises or inducements have been made to me other than those contained in this letter. I am satisfied with the representation of my attorney in this matter.

_____          _____7/15/20_____

Michael Aaron Tew                          Date


I acknowledge that I have read this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.

_____          _____7/15/2020_____

Michael Sheehan                            Date
Counsel for Michael Aaron Tew

4



**U.S. Department of Justice**

Jason R. Dunn
United States Attorney
District of Colorado

---

*Hetal J. Doshi*
*Assistant United States Attorney*

1801 California Street, Suite 1600       Telephone: 303-454-0100
Denver, CO 80202                         Fax: 303-454-0405

October 16, 2020

***Via Email***
Jamie Hubbard, Esq.
Counsel to Kimberley Tew
Stimson, Stancil, LaBranche, Hubbard, LLC
1652 North Downing Street
Denver, CO, 80218
hubbard@sslhlaw.com
720.689.8909

Dear Ms. Hubbard,

I understand your client, Kimberley Tew, is interested in meeting with federal law enforcement agencies and the Criminal Division of the United States Attorney's Office for the District of Colorado for a proffer related to this office's criminal investigation of conduct related to or arising out Ms. Tew's financial transactions related to, directly or indirectly, with National Air Cargo, and subsequent transactions initiated by or for the benefit of, among others, Ms. Tew, either directly or indirectly. This letter sets out the terms for that proffer, to be scheduled soon and set to occur in Denver, and any follow up proffer sessions between the Criminal Division of the United States Attorney's Office for the District of Colorado ("the government"), and you and your client.

1.       Your client agrees that she will truthfully and completely disclose all information with respect to her activities and the activities of others that are the subject of inquiry by the government during the proffer. In this regard, your client must neither attempt to protect any person, entity, or asset through materially false information or omission, nor falsely implicate any person, entity, or asset. The only limited exception to this is that Ms. Tew has elected at this time not to answer questions that may specifically implicate her husband, Michael Tew. She has consulted with her counsel and understands that this decision could diminish the value, if any, of her cooperation. At a future time your client may be subpoenaed to testify before a federal grand jury, at trial, or in other court proceedings. You and your client understand that false statements

1



DEFENDANT'S
EXHIBIT
**C**

willfully made during this proffer will negate the Government's agreement not to use this proffered information against your client.

2.     Except as set forth below, the government will not offer as evidence statements made by your client, or other information provided by your client during the proffer relating to the subject matter of the proffer, in (a) grand jury proceedings seeking an indictment against your client, (b) its case-in-chief at a trial against your client, or (c) at your client's sentencing.

3.     The government may use any statements made by your client or any information directly or indirectly derived from statements made by your client during the proffer for any other purpose, including (a) to obtain leads to other evidence that may be used against your client at any stage of a criminal prosecution, (b) in any prosecution of your client for perjury, false statements, or obstruction of justice, or (c) in a prosecution of your client for any crimes of violence, as defined in Title 18, United States Code, Section 16, or any conspiracy to commit a crime of violence.  Provision (a) eliminates the need for a hearing at which the government would have to prove that the evidence it would introduce at trial is not tainted by any statements made by or other information provided by your client during the proffer.  *See Kastigar v. United States*, 408 U.S. 931 (1972).  It is the intent of this agreement to establish that such derivative use is proper.  By signing this letter, your client expressly waives any right to challenge the derivative use of such statements or information.

4.     The government may also use any statements made by your client during the proffer, either as evidence or for cross-examination, at trial or any other stage of the criminal prosecution, if your client later testifies, offers other evidence, or presents a position (including through affidavit or in argument) that contradicts statements made by your client during the proffer.  By signing this letter, you and your client specifically agree that the government may use your client's statements or information in the circumstances described above.  *See United States v. Mezzanatto*, 513 U.S. 196 (1995).

5.     Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 do not apply to any statements made by your client during the course of the proffer.

6.     In the event evidence other than your client's own statements is developed, regardless of whether it is developed before or after the proffer, this agreement does not impart "transactional" immunity to your client or preclude the government from bringing charges against her in the future.

7.     Your client understands that she is required to provide full and complete information about the subject matter of the proffer and any information about herself which might adversely impact on her credibility as a witness concerning such activity.

2

EXHIBIT A

8.      This agreement does not obligate the government to enter into any future plea bargain with your client or to file any motion regarding cooperation provided by your client.

9.      This agreement is not binding on the Civil Division of the United States Attorney's Office for the District of Colorado, any other federal government office, or any other state, tribal, or local office or agency not specifically named in this agreement.

No understandings, promises, or agreements have been entered into other than those set forth in this agreement, and nothing said during the proffer will constitute a promise or agreement unless all parties agree in writing.

Sincerely,

JASON R. DUNN
United States Attorney

_s/ Hetal J. Doshi_
By: Hetal J. Doshi
Assistant United States Attorney

I, Kimberley Tew, have read this agreement and carefully reviewed it with my attorney.   I understand it, and I voluntarily, knowingly and willfully agree to it without force, threat or coercion.  No other promises or inducements have been made to me other than those contained in this letter.  I am satisfied with the representation of my attorney in this matter.

| | |
|---|---|
| Kimberley Tew | Date |

10 / 20 / 2 0 2 0

I acknowledge that I have read this proffer agreement, reviewed it with my client, and discussed fully with my client each of the provisions of the agreement.

| | |
|---|---|
| Jamie Hubbard | Date |
| Counsel for Kimberley Tew | |

10/20/2020

3

EXHIBIT A

EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO**

---

Date:                    February 8, 2024          Prob./Pret.:   N/A
Courtroom Deputy:  Robert R. Keech             Interpreter:    N/A
Court Reporter:       Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          Counsel:

UNITED STATES OF AMERICA,                       Bryan D. Fields
                                                               Sarah H. Weiss

              Plaintiff,

v.

1. MICHAEL AARON TEW;                            Jason D. Schall
and                                                             Kristen M. Frost
2. KIMBERLEY ANN TEW,                           David S. Kaplan
                                                               Jamie H. Hubbard

              Defendants.

---

**COURTROOM MINUTES**

---

**TRIAL TO JURY (DAY 4)**

**9:00 a.m.**       **Court in session.** Defendants present, on bond. Jury not present

Discussion and argument regarding oral motion for severance and issues related to witness Hannah Scaife.

9:18 a.m.        Jury enters.

9:19 a.m.        Government's witness **Hannah Scaife** sworn.

                      Direct examination by Government by Ms. Weiss.

9:30 a.m.        Bench conference regarding objection by Defendant Kimberley Ann Tew.

1

9:32 a.m.      Direct examination by Government continues by Ms. Weiss.

9:43 a.m.      Bench conference regarding objection by Defendant Kimberley Ann Tew.

9:45 a.m.      Direct examination by Government continues by Ms. Weiss.
               **_Exhibit(s) identified: 601_**

9:51 a.m.      Cross examination by Defendant Kimberley Ann Tew by Ms. Hubbard.

9:59 a.m.      Bench conference regarding objection by Government.

10:00 a.m.     Cross examination by Defendant Kimberley Ann Tew continues by Ms. Hubbard.

10:07 a.m.     Bench conference regarding objection by Government.

10:11 a.m.     Cross examination by Defendant Kimberley Ann Tew continues by Ms. Hubbard.

10:25 a.m.     Bench conference regarding objection by Government.

10:26 a.m.     Cross examination by Defendant Kimberley Ann Tew continues by Ms. Hubbard.

10:37 a.m.     Cross examination by Defendant Michael Aaron Tew by Ms. Frost.

10:41 a.m.     Re-direct examination by Government by Ms. Weiss.

**10:44 a.m.      Court in recess.**

**11:07 a.m.      Court in session.** Jury not present.

Discussion regarding witness appearing via VTC this afternoon.

11:10 a.m.     Jury enters.

2

11:11 a.m.     Government's witness **Brittany Perry** sworn.

               Direct examination by Government by Mr. Fields.
               *Exhibit(s) identified: 414, 410, 227, 318, 402, 419, 420, 411, 418, 424,*
               *470, 396, 398, 406, 407, 417, 493, 395, 397, 403, 404, 412, 421, 423,*
               *425, 426, 408, 409, 413, 422, 399, 400, 405, 427*

**Exhibit(s) 414, 410, 227, 318, 402, 419, 420, 411, 418, 424, 470, 396, 398, 406, 407, 417, 493, 395, 397, 403, 404, 412, 421, 423, 425, 426, 408, 409, 413, 422, 399, 400, 405 RECEIVED.**

**11:59 a.m.     Court in recess.**

**1:02 p.m.     Court in session.** Jury enters.

1:05 p.m.      Government's witness **Meghan Oakes** sworn.

               Direct examination by Government by Mr. Fields.

1:12 p.m.      Government's witness **Brittany Perry** resumes.

               Cross examination by Defendant Kimberley Ann Tew by Ms. Hubbard.
               *Exhibit(s) identified: 318, 227*

1:19 p.m.      Cross examination by Defendant Michael Aaron Tew by Mr. Schall.

1:26 p.m.      Government's witness **Christopher Alf** sworn.

               Direct examination by Government by Ms. Weiss.

1:41 p.m.      Bench conference regarding objection by Defendant Michael Aaron Tew.

1:43 p.m.      Direct examination by Government continues by Ms. Weiss.
               *Exhibit(s) identified: 535, 550, 534, 538, 536*

**Exhibit(s) 535, 550, 534, 538, 536 RECEIVED.**

**2:33 p.m.     Court in recess.**

3

| | |
|---|---|
| **2:51 p.m.** | **Court in session.** Jury enters. |

Government's witness **Christopher Alf** resumes.

Direct examination by Government continues by Ms. Weiss.
***Exhibit(s) identified: 552, 571, 572, 573, 574, 575, 576***

**Exhibit(s) 552, 571, 572, 573, 574, 575, 576 RECEIVED.**

2:56 p.m.     Cross examination by Defendant Michael Aaron Tew by Mr. Schall.
***Exhibit(s) identified: U***

**Exhibit(s) U RECEIVED.**

3:28 p.m.     Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.

3:31 p.m.     Government's witness **Raeesa Telly** sworn.

Direct examination by Government by Ms. Weiss.
***Exhibit(s) identified: 548, 547, 655, 654, 661, 526, 799, 546, 545***

**Exhibit(s) 548, 547, 655, 654, 661, 526, 799, 546, 545, 544 RECEIVED.**

**4:14 p.m.**     **Court in recess.**

**4:26 p.m.**     **Court in session.** Jury enters

4:29 p.m.     Government's witness **Abby Schwartz** sworn.

Direct examination by Government by Ms. Weiss.
***Exhibit(s) identified: 607, 978***

**Exhibit(s) 978 RECEIVED.**

4:54 p.m.     Jury excused for the day and shall report back on Friday, February 9, 2024, at 9:00 a.m.

Counsel has nothing to address with the Court.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**4:55 p.m.**     **Court in Recess. TRIAL CONTINUED. TOTAL TIME: 5:59**

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

   1. **MICHAEL AARON TEW,** and
   2. KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

      Defendants.

---

## GOVERNMENT'S RESPONSE TO MICHAEL TEW'S MOTION TO SEVER[1]

---

No "crystal ball" was needed to anticipate the issue now before the Court. ECF No. 420 (M. Tew "Renewed" Mot. to Sever). The Indictment returned in early 2021 charged a husband and wife with running a two-year-long wire fraud and money-laundering conspiracy to their mutual benefit. The potential for a conflict between the defendants' potential theories at trial has been raised numerous times — by the government, by defense counsel, and by this Court — over the course of *three years* of protracted pretrial litigation.

Time and time again, Michael Tew deliberately eschewed every opportunity to appropriately and timely make a pretrial request for severance. Trial is now a week underway. Nothing that has happened over the course of the past five days warrants

---

[1]    ECF No. 420 is styled as a "renewed" motion. Yet, the filing also expressly acknowledges — as it must — that Mr. Tew intentionally declined to file a formal motion to sever in this matter before trial. ECF No. 420 at 5, ¶ 8.

1

reconsideration of the abandoned argument Mr. Tew now hopes to raise, zombie-like, from the dead. The defendants might be antagonistic to one another, but their chosen strategies are not "mutually exclusive." The motion should be denied.

## PROCEDURAL HISTORY

The motion presents only a partial and skewed version of the procedural history of this case. To supplement the record, the government summarizes the docket as follows:

1.  Michael Tew was originally charged by Complaint on July 8, 2020, ECF No. 1, because of concerns that he would flee the country with his family. ECF No. 128 (discussing procedural history and concerns about flight).

2.  Following participation in two proffer sessions, ECF No. 394-1, 394-2 (the second of which did not include a carve out for incriminating his wife), and terminations of no less than three sets of counsel (ECF Nos. 15, 25, and 54), Michael Tew withdrew from a change of plea hearing the day before. ECF No. 56. At that time, the Court admonished Mr. Tew:

    > Absent extraordinary circumstances, no further motions to withdraw or motions to substitute counsel will be granted. The court reminds Mr. Tew that counsel is under a duty to provide him prudent and considered advice, even if that advice is not what Mr. Tew hopes to hear.

    ECF No. 55.

3.  Ongoing investigative efforts indicated that Kimberley Tew had agreed with Michael Tew to defraud National. Prior to being charged, she, too, initially engaged in attempts to reach a pre-indictment resolution by participating in a proffer session. *See* ECF No. 394-3.

2

4. On February 3, 2021, the grand jury returned the Indictment. ECF No. 83.

5. On February 26, 2021, Tor Ekeland's firm entered an appearance on behalf of both defendants. ECF No. 106.

6. The government responded immediately, asking for a prompt inquiry into the providence of the Tews' proposed joint representation. ECF No. 108 at 7-8 (citing *inter alia*, *Wheat v. United States*, 486 U.S. 153, 162-63 (1988), which articulates the "notoriously and hard to predict" nature of all stages of criminal prosecution, as well as the "nascent conflicts of interest" lurking in any joint representation of codefendants).

7. Joint counsel for Michael and Kimberley Tew never filed a formal response.

8. However, at a hearing convened on March 18, 2021, Mr. Ekeland made representations sufficient to satisfy the Court such that joint representation was "permitted to continue." ECF No. 116.

9. Mr. Ekeland continued to jointly represent the Tews for an additional nine months. On December 27, 2021, he, too, moved to withdraw. *See, e.g.*, ECF No. 162 (noting, among other factors, "certain circumstances [making] it unreasonably difficult to continue to the representation separate and apart from" financial issues). *See also* ECF No. 163 (elaborating further under seal).

10. On February 10, 2022, Michael and Kimberley Tew filed a joint pro se letter — *signed by both* — averring their intent to engage new counsel. ECF No. 175.

11. Approximately two weeks later, on February 25, 2022, the Tews' evident choice to pursue joint representation persisted, when Peter Bornstein entered an

appearance on behalf of both defendants. ECF No. 175.

12. Mr. Bornstein represented the pair through the remainder of 2022, filing numerous pretrial motions on each of their behalf individually, as well as jointly. *See, e.g.* ECF Nos. 200, 209, 212, 213, 213, 215, 216, 221 (joint motions); ECF No. 216 (M. Tew motion to suppress); ECF No. 218 (K. Tew motion to sever); ECF Nos. 219 & 220 (separate motions filed by each individually requesting government *James* proffer).

13. On October 12, 2022, an all-day motions hearing was held. ECF No. 285 (Transcript). The very first issue discussed at that hearing was Kimberley Tew's motion to sever. *Id.* at 5:16-20:25.

  a. At that time, the court expressly noted its concerns about the potential for conflict posed by the defendants' ongoing joint representation, including the evidentiary issues raised by both defendants' proffers. *Id.* at 5:18-6:8.

  b. The government presented arguments against severance, including the obvious impacts on judicial resources and economy. Importantly, the government also fronted an issue that would be raised by separate trials, namely, that proceeding in such a manner would itself pose certain strategic disadvantages for the defendants, because aspects of the proffer agreements meant that certain evidence would more easily be used at separate trials. *See id.* at 8:8-9:11; 17:13-16.

  c. The government reiterated that continued joint representation of both

defendants was concerning. *Id.* at 9:9-17.

   d.  On that point, the Court seemed inclined to agree — noting that if financial concern was all that was driving the continued joint representation — that could be addressed by the appointment of separate CJA counsel. *Id.* at 9:18-25.

   e.  Mr. Bornstein went on to present oral argument regarding Kimberley Tew's motion to sever at length. *Id.* at 11:5-14:20. At no time did Mr. Bornstein represent that Ms. Tew's severance motion was based on mutually exclusive defense theories; indeed he suggested otherwise. *Id.* at 6:21-22 ("But in terms of my professional role in representing both of them, I don't see the severance issue as raising that badly.").

14. On October 27, 2022, the Court denied Kimberley Tew's motion to sever. ECF No. 260 (discussed *infra*).

15. On December 1, 2022, Mr. Bornstein filed a motion to withdraw from his representation of both defendants. ECF No. 273. Notably, that motion indicated a single defense agreement, stating, "The attorney and clients negotiated and signed *an* engagement agreement including the financial terms for the representation." *Id* (emphasis added).

16. After Mr. Bornstein's withdrawal was granted without government input, ECF No. 275, the prosecution moved for reconsideration, noting that the motion presented no representations of conflict of interest or a breakdown of communications with either client. *See* ECF No. 276 at 4.

5

17. As a result, a hearing was held on December 9, 2022. ECF No. 280. Mr. Bornstein was permitted to withdraw as private counsel, but ordered appointed as CJA counsel for both of the Tews. ECF No. 280.

18. By December 28, 2022, (one day after the transcript from the pre-trial motions hearing was posted to the docket), it became clear that Mr. Bornstein and his clients finally had absorbed the Court's messaging from the hearing two months' prior. In filing a Motion for Appointment of Separate Counsel, ECF No. 288, Mr. Bornstein made clear that conflicting defense theories from each defendant was a possibility:

   a. The motion flatly cited the "inherent conflict of interest" in "[j]oint representation of two criminal defendants." *Id*. at 2, ¶ 5.

   b. The motion also stated, in no uncertain terms, that: "*The previous waiver by the clients of a potential conflict of interest when Mr. Bornstein was retained privately is no longer operative*." *Id*. at 2, ¶8 (emphasis added).

   c. The motion went on to state as grounds the potential that one or both of the defendants could testify at trial, a possibility bringing "into sharp resolution the significant proffers made by each Defendant to the Government during the preliminary events in this case. These proffers contain statements that incriminate both defendants." *Id*. at 3, ¶ 9.

19. Shortly thereafter, on January 3, 2023, Ms. Tew's present counsel, David Kaplan, entered his appearance. ECF No. 290.

6

20. A joint status report, filed on January 10, 2023, ECF No. 293 at 2-3, ¶ 3, the

parties discussed the potential for conflicting defenses at trial at length:

> The parties are evaluating whether there is a conflict that would prevent
> attorney Peter Bornstein from continuing to represent defendant Michael Tew.
> Mr. Bornstein does not believe that there is a conflict that would provide good
> cause to withdraw. Mr. Kaplan has concerns about a conflict: one such issue is
> if Ms. Tew decides to testify at trial, such a scenario might require Mr.
> Bornstein to either cross-examine a former client or waive that cross-
> examination to the potential detriment of a current client. The government is
> not in a position to evaluate whether such a conflict is real or merely abstract,
> whether a joint defense agreement could solve any such conflict, whether such
> a conflict can be resolved with a knowing and intelligent waiver of cross-
> examination by Mr. Tew, or whether any such conflict could otherwise be
> resolved by defense counsel in this case. Mr. Bornstein is concerned that the
> government is meddling in the province of the defendants and their lawyers
> and that nothing should be scheduled at this time.

21. On January 17, 2023, Peter Bornstein (on behalf of Michael Tew) and David

Kaplan (on behalf of Kimberley Tew) filed documents related to this issue

under restriction. ECF Nos. 300, 301.

22. On January 30, 2023, Peter Bornstein was permitted to withdraw as counsel

for Michael Tew. ECF No. 305. Jason Schall entered his appearance for Mr.

Tew the following day. ECF No. 308.

23. In the intervening *404 days* between the Court's Order on Kimberley Tew's

pre-trial motion to sever and the commencement of this trial, no further

motions to sever were filed by either defendant. Most recent defense counsel

for both parties, however, elected to file *different* pretrial motions, both within

and (well) outside of the motions deadline. *See, e.g.*, ECF Nos. 336, 337 (moving

for extensions of the pretrial motions deadline); ECF Nos. 345, 346 (defense

motions related to *James* proffer); ECF Nos. 359, 360 (objections to business

7

record certifications); ECF Nos. 370, 373, 398, 410 (out-of-time motions in *limine* and briefing related to admissibility of proffer statements); ECF No. 374 (K. Tew motion to continue); ECF Nos. 376, 377 (trial briefs).

## ARGUMENT

### I.   Michael Tew has both waived and forfeited this severance argument on multiple occasions over the past three years

The present motion suggests that the Court's continuing duty under Federal Rule of Criminal Procedure 14(a) means that such a defense can never be "waived" or "forfeited," because trials are "unpredictable" and because the "unique position of a criminal defendant and the rights that protect the accused" mean that a defendant has "no obligation or duty to reveal his strategy, his general defenses, or the core of his defense in a pleading before the Court." [2] ECF No. 420 at 9. Taken to its logical end, the argument Michael Tew proposes would mean that the Federal Rules of Criminal Procedure are unconstitutional and that experienced defense lawyers should never be required to evaluate known or likely trial risks and bring them to the court's attention in advance of trial. This is wrong.

---

[2]   The sole authority cited for this extraordinary argument is a state case, *People v. Kilgore*, 455 P.3d 746, 751 (Colo. Sup. Ct. 2020). That case concerned a court order requiring the defense to produce its *exhibits* thirty days before trial. That is to say, *Kilgore* rejected an order requiring the defense to produce *specific evidence* well before trial. *Kilgore* did not, however, stand for the proposition that a defendant can ignore pre-trial deadlines designed to ensure the orderly resolution of legal issues by the Court. *Kilgore* is thus not only nowhere close to legally binding; it is also factually inapposite. *Kilgore* is also, for obvious reasons, unable to override the federal system's long-standing reciprocal discovery requirements, which are reflected in the Federal Rules of Criminal Procedura and this District's standard discovery order, which *requires* production of exhibits if a defendant intendsto use them in his or her case in chief. Fed. R. Crim. P. 16.

8

Federal Rule of Criminal Procedure 12(b)(3) governs those defense motions that "must" be raised before trial. That list includes "improper joinder." Fed. R. Crim. P. 12(b)(3)(iv). Rule 12(b)(3) was crafted as an easy-to-read list of common defenses, precisely to ensure that "such [common] claims are not overlooked." *See* 2014 Amendment Committee Notes.

The only safety valve to escape Rule 12(b)(3)'s clear deadline is outlined in the Rule's introductory language: A defendant's obligation to timely raise one of Rule 12's defenses is limited to arguments that are "reasonably available" pretrial and which can be determined "without trial on the merits." *See* 2014 Amendment Committee Notes (explaining purpose of this language).

The present motion contorts the procedural history in an attempt to squeeze into Rule 12's safety valve. But, as the summary of preceding events makes abundantly clear, the potential for conflicting defenses at trial from Michael and Kimberley Tew has been well-known *for years*. The idea that the defendants could turn on each other, even at the very last minute, was "reasonably available" information, and it did not require "trial on the merits" to bring that potential conflict to light. It is the kind of thing every experienced criminal lawyer anticipates in a multi-defendant case.

The government identifies at least *seven* specific, logical points in time where such an argument could have been raised pretrial:

1. <u>February 8, 2021</u>: ECF Nos. 108 & 116 (Gov't Mot. & Hearing on Joint Representation);

9

2. <u>June 13, 2022</u>: ECF No. 218 (K. Tew's Pre-Trial Mot. to Sever);

3. <u>October 12, 2022</u>: ECF No. 285 (Transcript of Pre-Trial Mots. Hearing, including extensive discussion of K. Tew's Mot. to Sever, ongoing concerns regarding continued joint representation; and evidentiary implications of defendants' proffer statements at trial);

4. <u>December 28, 2022</u>: ECF No. 288 (P. Bornstein Motion for Order Appointing Separate Counsel, citing "inherent conflict of interest" and possibility of one or both defendants taking the witness stand at trial);

5. <u>January 10, 2023</u>: ECF No. 293 (Joint Status Report noting Kimberley Tew and D. Kaplan's concerns regarding P. Bornstein's continued representation of Michael Tew, as well as government's concerns about same);

6. <u>January 17, 2023</u>: ECF Nos. 300 & 301 (filings by D. Kaplan and P. Bornstein);

7. <u>January 7, 2024</u>: ECF Nos. 241; 263; 336; 337 (pretrial motions deadline).

At a bare minimum, Mr. Bornstein's motion on December 28, 2022 — *404 days prior to trial* — provided sufficient notice for current defense counsel (who immediately succeeded him) to understand that there was an "inherent conflict of interest" between Michael and Kimberley Tew and that the waiver of the potential conflict "was no longer operative." ECF No. 288.

Likewise, the motion's own factual recitation proves the point: Taking defense counsel at their word — if indeed there has never been a formal joint defense agreement, let alone any informal communications sharing defense strategy between

Michael and Kimberley Tew's current teams[3] — then those circumstances only further suggest that Mr. Tew was on good notice that he should file a timely pretrial severance motion if he believed his constitutional rights could be put at jeopardy by his wife's defense at trial.

Finally, the government produced the proffer statements of each defendant to each round of successive defense counsel *in its initial productions*. It was well known to all throughout that those proffers implicated each defendant, as well as one another. The potential conflict raised by those proffers alone constituted "reasonably available" information justifying timely motions to sever. The fact that Kimberley Tew might seek to place some degree of blame on Michael, or vice versa, is part and parcel of that history. Additionally, the defendant studiously limits his mention of the fact that his second proffer specifically *did not contain the carve out regarding his wife*, another well-known fact with obvious potential repercussions at a joint trial.

Whether Michael Tew's failure to raise this issue at any point during the case's lengthy pre-trial history is considered to be an actual, intentional waiver, or an inadvertent forfeiture, the result remains the same. *See United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007); *United States v. Jones*, 530 F.2d 1292,

---

[3]     The government's insight into these representations is obviously limited. However, the defendant's joint *pro se* letter, which refers to them as a collective, as well as Mr. Bornstein's motion to withdraw, which references a single engagement agreement, suggests at the very least an informal sharing of defense strategy up to that point. Likewise, the defendants have represented at this trial that they remain married and, on information and belief, continue to cohabitate. The idea that they have maintained a strict wall and have never discussed legal strategy with one another strains belief.

11

1298-99 fns. 1 &2 (10th Cir. 2008). Michael Tew could have, and should have, raised this issue well before trial as Rule 12 requires. He did not, for tactical reasons, and his severance argument has been abandoned.

## II. Michael Tew and Kimberley Tew's respective defenses are not mutually exclusive.

Michael Tew now argues that the defenses presented to this jury are "antagonistic." Apart from the fact that this should have come as no surprise, the argument fails on the merits.

In denying Kimberley Tew's prior motion to sever, this Court's summary of the law included citations to key cases analyzing how to evaluate potentially prejudicial "spill-over" and arguments between defendants over relative culpability. ECF No. 260 at 6 (denying severance while citing and quoting *United States v. Caldwell*, 560 F.3d 1214, 1221 (10th Cir. 2009); *United States v. Youngpeter*, 986 F.2d 349, 354 (10th Cir. 1993); and *United States v. Sarracino*, 340 F.3d 1148, 1165 (10th Cir. 2003)).

Although this recitation of the law did not specifically use the phrases "antagonistic" or "mutually exclusive", the general concept is still reflected. In *United States v. Jones*, (a case which notably cited many of the other cases listed in the Court's summary of the legal standard for severance of codefendants), the Tenth Circuit laid out the three-step inquiry for whether a defendant will be so prejudiced by mutually exclusive defenses as to justify severance:

*First*, the court must determine whether the defenses are "so antagonistic that they are mutually exclusive." *Second*, because "mutually antagonistic defenses are not prejudicial *per se*, the court must consider whether there is a "serious risk that a

12

joint trial would compromise a specific trial right … or prevent the jury from making a reliable judgment about guilt or innocence." *Third*, if a defendant shows that his case satisfies the first two factors, the trial court must "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008) (quotations omitted).

As the past five days of trial make clear, Michael Tew cannot meet any of *Jones*' three prongs:

*First*, Michael and Kimberley Tew's respective defenses have not been "so antagonistic that they are mutually exclusive." *See Jones*, 530 F.3d at 1304 (explaining that a "mutually exclusive" defense occurs when, in order to believe one defense, the jury must *necessarily* disbelieve the core of the other).

Broadly distilling the past four days of opening statements, testimony, and cross-examination, Kimberley Tew has argued to the jury that this case concerns "a scheme concocted and executed by Michael Tew and Jon Yioulos." ECF No. 420-1 at 19:22-24 (Transcript of K. Tew Opening Statement). Michael Tew, for his part, has argued that this case is "crazy" and that there is more to the "full story" that the jury should consider, including evidence that Kimberley had knowledge of, as well as motive, influence, and authority to encourage, her codefendants' illicit conduct. *See id.* at 19:14-15.

The government's presentation thus far has supported *both* defense theories, which are — in no way — mutually exclusive. Michael Tew and Jonathan Yioulos

could have crafted the scheme *and* Kimberley could have actively encouraged it for far longer than the other two would have liked. All of this evidence also would be equally admissible against either party at a separate trial. Indeed, *more* evidence could conceivably be admissible if Michael and Kimberley Tew were tried separately, because certain proffer-protected evidence, like Michael Tew's cell phone, would not be *Bruton*-limited in the same fashion as it has been in this joint trial. *See* ECF No. 285 at 8:8-9:11; 17:13-16.

At its core, the "finger-pointing" that has occurred over the course of the past trial week has addressed only the *respective roles and culpability* of each defendant's participation in a $5,000,000 fraud, not whether they intentionally participated in it. That concept of respective culpability was already addressed in the Court's prior order. *See* ECF No. 260 at 7 (citing *Caldwell*, *Richardson*, and *Youngpeter*). That ruling makes clear that adjudging respective culpability is a benefit to joint trials, not a detraction.

*Second*, even if the defendants' defenses were somehow considered mutually antagonistic — and to be clear, they are not — they still would need to meet the second part of the *Jones* test, and show that a specific trial right has been put at issue by joinder. On this, Michael Tew generally complains that his constitutional rights to a fair trial, due process[,] and to a fair and impartial jury" have somehow been put at risk by Ms. Tew's theory of the case. *See* ECF No. 420 at 15. But he does not elaborate on how so.

To the contrary, none of Mr. Tew's fundamental trial rights have been put in

<div align="center">14</div>

jeopardy over the past five days. He has been able to pursue his theory of the case, to cross-examine the government's witnesses; and, over the course of next three trial days, he can present his own evidence and further argument.

His generalized argument about a hypothetical "risk" of prejudice also ignores the proposed jury instructions, specifically proposed Instruction Nos. 14, 17, 18, which all collectively and appropriately advise the jury to consider each defendant's culpability individually, as well as each defendant's culpability as to each respective count individually. As this Court has repeatedly acknowledged, both by written Order and by comments at trial, "[a] central assumption of our jurisprudence is that juries follow the instructions they receive." ECF No. 260 at 7 (quoting *United States v. Castillo*, 140 F.3d 874, 884 (10th Cir. 1998) (quotation marks omitted). Similar instructions were credited when affirming the defendants' convictions in *Jones*. 530 F.3d at 1303.

*Finally*, the motion fails on the third prong of the *Jones* test. Any hypothetical prejudice to Michael Tew is vastly outweighed by considerations of judicial economy and prejudice to the government. This case has been pending for over three years. A fair administration of these proceedings has been hampered, over and over again, by deliberate legal stratagems employed by these defendants expressly for the purpose of delaying this trial. Once again, untimely and vague appeals to constitutional rights are no excuse for Michael Tew's deliberate disregard of the Federal Rules of Criminal Procedure and court deadlines.

15

## CONCLUSION

It should not take two separate jury trials to fairly and accurately sort out whether Michael and Kimberley Tew are guilty. Michael Tew's motion to sever is untimely and meritless. It should be denied.

Respectfully submitted this 11th day of February, 2024.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*          By:   */s/ Sarah H. Weiss*
Bryan Fields                 Sarah H. Weiss
Assistant United States Attorney     Assistant United States Attorney
U.S. Attorney's Office            U.S. Attorney's Office
1801 California St. Suite 1600       1801 California St. Suite 1600
Denver, CO 80202               Denver, CO 80202
(303) 454-0100                (303) 454-0100
Bryan.Fields3@usdoj.gov          Sarah.Weiss@usdoj.gov
Attorney for the Government        Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s/ Sarah H. Weiss*
Sarah H. Weiss

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because trial already began within the time required by the Speedy Trial Act.

*/s/ Sarah H. Weiss*
Sarah H. Weiss

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<div style="text-align: right">

_s/ Sarah H. Weiss_
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

</div>

17

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO**

---

Date:                    February 9, 2024          Prob./Pret.:   N/A
Courtroom Deputy:  Robert R. Keech          Interpreter:   N/A
Court Reporter:      Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          <u>Counsel:</u>

UNITED STATES OF AMERICA,                    Bryan D. Fields
                                             Sarah H. Weiss

            Plaintiff,

v.

1. MICHAEL AARON TEW;                        Jason D. Schall
and                                          Kristen M. Frost
2. KIMBERLEY ANN TEW,                        David S. Kaplan
                                             Jamie H. Hubbard

            Defendants.

---

## COURTROOM MINUTES

---

**TRIAL TO JURY (DAY 5)**

**9:02 a.m.    Court in session.** Defendants present, on bond. Jury not present.

Discussion regarding breaking early due to inclement weather, motion for severance, and jury instructions.

**ORDERED:**   Government shall respond to [420] Defendant Michael Aaron Tew's Renewed Motion for Severance by Sunday, February 11, 2024, at 12:00 p.m.

Discussion regarding American Express charges and Government proffers.

1

9:08 a.m.       Jury enters.

Court's remarks to jurors regarding schedule for today due to inclement weather.

9:10 a.m.       Government's witness **Abby Schwartz** resumes.

Direct examination by Government continues by Ms. Weiss.
*Exhibit(s) identified: 308, 309, 653, 630, 539, 615, 618, 624, 626, 627, 631, 632, 643, 653, 657, 658, 666, 675, 691, 699, 709, 713, 714, 720, 728, 743, 843, 979, 335, 338, 339, 347, 348, 349, 350, 351, 352, 353*

**Exhibit(s) 308, 309, 653, 630, 539, 615, 618, 624, 626, 627, 631, 632, 643, 653, 657, 658, 666, 675, 691, 699, 709, 713, 714, 720, 728, 743, 843, 979, 338, 339, 347, 348, 349, 350, 351, 352, 353 RECEIVED.**

9:48 a.m.       Bench conference regarding objection by Defendant Michael Aaron Tew.

9:51 a.m.       Direct examination by Government continues by Ms. Weiss.
*Exhibit(s) identified: 533, 532, 841, 12, 384*

**Exhibit(s) 533, 532 RECEIVED.**

10:11 a.m.      Cross examination by Defendant Michael Aaron Tew by Ms. Frost.
*Exhibit(s) identified: 339*

**10:39 a.m.     Court in recess.**

**10:51 a.m.     Court in session.** Jury enters.

Government's witness **Abby Schwartz** resumes.

10:53 a.m.      Cross examination by Defendant Michael Aaron Tew continues by Ms. Frost.

10:57 a.m.      Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.

11:03 a.m.      Re-direct examination by Government by Ms. Weiss.

2

11:12 a.m.     Government's witness **Michael Meyers** sworn.

                    Direct examination by Government by Ms. Weiss.
                    *Exhibit(s) identified: 752, 305, 656, 669*

**Exhibit(s) 305 RECEIVED.**

12:13 p.m.     Bench conference regarding taking a lunch recess.

**12:15 p.m.     Court in recess.**

**1:04 p.m.      Court in session.** Jury enters.

1:06 p.m.      Government's witness **Michael Meyers** resumes.

                    Direct examination by Government continues by Ms. Weiss.
                    *Exhibit(s) identified: 301, 696, 752, 804, 805, 525, 537*

**Exhibit(s) 301 RECEIVED.**

1:50 p.m.      Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.

2:17 p.m.      Cross examination by Defendant Michael Aaron Tew by Mr. Schall.

2:26 p.m.      Re-direct examination by Government by Ms. Weiss.

2:30 p.m.      Jury excused for the day and shall report back on Monday, February 12,
                    2024, at 9:00 a.m.

Discussion regarding redacting social security numbers in exhibits.

Defendant Kimberley Ann Tew's oral motion for mistrial.

Argument by counsel.

**ORDERED:**  Defendant Kimberley Ann Tew's oral motion for mistrial is **DENIED.**

**ORDERED:**  Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley
                    Ann Tew.

**2:42 p.m.      Court in Recess. <u>TRIAL CONTINUED.   TOTAL TIME:   4:39</u>**

3

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**(1) MICHAEL AARON TEW**;
**(2) KIMBERLEY ANN TEW**, a/k/a Kimberley Vertanen; and
(3) JONATHAN K. YIOULOS,

     Defendants.

---

## ORDER DENYING MOTION FOR SEVERANCE

---

Defendants Michael Tew and Kimberley Tew (who are married) are being jointly tried. During trial, Mr. Tew orally moved for severance, followed by a written motion, arguing primarily that Mrs. Tew's purportedly "antagonistic" defense requires trying him separately from his co-defendant wife. Doc. 420. For the reasons set forth below, the motion is denied.

## BACKGROUND

On February 3, 2021, a grand jury indicted Mr. and Mrs. Tew on dozens of counts including wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. Doc. 83. The government alleges that the defendants defrauded various entities affiliated with National Air Cargo, Inc. (collectively, "NAC"). *Id.* at 1.

Issues regarding joint representation and potential conflicts between Mr. and Mrs. Tew have been a longstanding concern in this case. Indeed,

the government raised potential conflict issues as early as February 28, 2021 in a motion regarding the Tews' potential joint representation by a single lawyer. Doc. 108. As the government noted, one defendant may seek to admit evidence that is prejudicial to the co-defendant and "even if Mr. and Mrs. Tew agree about their defenses now, it may well be that such agreement changes as the prosecution continues." *Id.* at 7.

The court allowed Mr. and Mrs. Tew to have joint representation in the early stages of this case, consistent with their joint wishes. But the Tews' then-joint counsel ultimately sought appointment of separate counsel, noting the potential for conflicts between the defendants. Doc. 288. The court granted that request on December 29, 2022. Doc. 289.

Prior to that order, on June 13, 2022, the Tews' then-joint counsel filed a motion for severance on behalf of Mrs. Tew. Doc. 218. In that motion for severance, Mrs. Tew argued that a joint trial would, among other things, constitute "prejudicial joinder." Doc. 218 at 3-5. Mrs. Tew argued that severance was necessary due to the "evidence admissible" against Mr. Tew and because of Mrs. Tew's purported "different degree of culpability" given that, in Mrs. Tew's wording, "the evidence against Mrs. Tew is far less than that the government intends to use against Michael Tew." *Id.* at 4. The court denied that motion on October 27, 2022 and explicitly rejected this "prejudicial joinder" argument. Doc. 260 at 6-8.

At trial, Mr. Tew made an oral motion for severance due to a purported "antagonistic defense" that arose during Mrs. Tew's opening arguments. The court deferred ruling on that oral argument pending written submissions on the issue. Mr. Tew then filed a written motion on this issue mid-trial, and the government responded. Docs. 420, 422.

## APPLICABLE LAW

In relevant part, Federal Rule of Criminal Procedure 8(b) provides that the "indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Joint trials are preferred in the federal system for defendants who are indicted together. *See Zafiro v. United States*, 506 U.S. 534, 537 (1993). Joint trials "generally serve the interests of justice by avoiding inconsistent verdicts and enabling more accurate assessment of relative culpability." *Richardson v. Marsh*, 481 U.S. 200, 107 (1987). The Tenth Circuit recognizes "a presumption in a conspiracy trial that coconspirators charged together preferably should be tried together." *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009); Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 224 (2023 ed.) (characterizing this presumption for joint trial in conspiracy cases as "especially strong"). As a general matter, motions for severance must be made prior to trial absent a showing of "good cause." Fed. R. Crim. P. 12(b), 12(c), 14; *see also United States v. Pursley*, 577 F.3d 1204, 1219 (10th Cir. 2009).

"Mutually exclusive defenses" between jointly tried co-defendants may constitute a ground for severance. *United States v. Jones*, 530 F.3d 1292, 1304 (10th Cir. 2008). To sever a trial on this ground, the movant must first show that the co-defendants' defenses are "so antagonistic that they are mutually exclusive." *Id.* If so, the movant must next show that there is "a serious risk that a joint trial would compromise a specific trial right or prevent the jury from making a reliable judgment about guilt or innocence." *Id.* (cleaned up). If the movant makes these two showings, the court "must weigh the prejudice to a particular defendant

- 3 -

caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *Id.* (cleaned up).

## DISCUSSION

Mr. Tew argues that (1) he has not waived or forfeited his severance arguments and (2) on the merits, severance is required "because this case now involves a defense that Mrs. Tew is not guilty, because Mr. Tew is guilty, and his guilt negates her – the classic problematic finger pointing situation." Doc. 420 at 1-10. Both arguments are unpersuasive.

### I. Timeliness of the Motion

As discussed above, a defendant generally must demonstrate "good cause" to make a motion for severance after trial has started if the "basis for the motion" was "reasonably available" prior to trial. *See* Fed. R. Crim. P. 12(b)(3)(B)(iv), 12(c)(3), 14; *United States v. Herrera*, 51 F.4th 1226, 1267 (10th Cir. 2022). Mr. Tew does not explicitly address this "good cause" standard, but he argues that he has not forfeited or waived his argument. The court construes these arguments as an attempt to demonstrate good cause to file this motion after trial commenced.

Despite Mr. Tew's protestations, there has been a real, foreseeable possibility that Mrs. Tew's defense would be antagonistic to his for years. As noted above, the government raised this very issue early on in the case, suggesting that joint representation may not be appropriate. *See generally*, Doc. 108. The fact that the court later ordered separate counsel for each defendant—over a year prior to the start of trial— should have put Mr. Tew on further notice that his defense strategy may not align with Mrs. Tew's. And as the government outlined in its response, there were multiple natural opportunities to raise this issue in the years before trial started. *See* Doc. 422 at 9-10.

Mr. Tew's suggestion that the defenses—or potential defenses—were not *sufficiently* antagonistic prior to trial to warrant filing a motion remains unpersuasive. The parties have demonstrated little reluctance in raising more minor hypothetical issues prior to trial throughout the nearly four-year pendency of this case. The standard is whether the basis for severance—here, Mrs. Tew's potential finger-pointing defense—was "reasonably available" prior to trial, not definitively available. Fed. R. Crim. P. 12(b)(3). That standard does not require that all relevant information be made available. *See United States v. Rodriguez-Lozada*, 558 F.3d 29, 38 (1st Cir. 2009) (affirming finding that mid-trial motion to sever was untimely where defense counsel argued that they had to wait until prior hearing transcript was available before making motion).

The court acknowledges that there is no joint defense group in this case and that counsel cannot be expected to anticipate every defense a co-conspirator may raise at trial. But Mr. Tew could have seen this coming, at least at a high level, particularly given the case history outlined above and outlined in the government's response to this motion. Mr. Tew therefore has not demonstrated good cause to file an untimely motion for severance or that the basis for his motion was not "reasonably available" prior to trial. In any event, the motion fails on the merits as outlined below.

## II.    Severance Is Not Warranted

Mr. Tew must first establish that there are truly "mutually exclusive" antagonistic defenses at issue here and that Mrs. Tew's defense either compromises a "*specific trial right*" or prevents "the jury from making a reliable judgment about guilt or innocence." *Jones*, 530 F.3d at 1302 (emphasis in original). Mr. Tew cannot meet either prong.

As to the first prong, the "core" of Mrs. Tew's defense must be "so antagonistic to" Mr. Tew's defense such that "the two defenses [are] mutually exclusive." *Id.* at 1304. *Jones* is on point. In that bank fraud case, the non-moving defendant argued, both in opening and closing arguments, that the moving co-defendant was "the 'head' of the bank fraud operation" charged in the indictment and that the moving co-defendant was "running that organization." *Id.* While these statements were "antagonistic" to the moving defendant, the Tenth Circuit found that this did not render the defenses mutually exclusive. *Id.* The Tenth Circuit found that the moving defendant's "guilt was not, in itself, a viable legal defense for" the non-moving defendant. *Id.* Instead, the Circuit found that the core of the non-moving defendant's actual *legal defense* was based on the sufficiency of the evidence, a lack of willfulness or knowledge of the alleged conspiracy, and an attack on the government's witness's credibility and truthfulness. *Id.*

The same high-level "finger-pointing" defense is at issue here. As Mr. Tew notes, Mrs. Tew has argued that Mr. Tew had greater, if not sole, involvement with Mr. Yioulos as to the counts charged against him and that, somehow, Mrs. Tew may therefore be innocent of the counts charged against her. *See* Doc. 420 at 12-13 (citing opening argument statements made by Mrs. Tew's counsel that Mr. Tew and Mr. Yioulos "concocted and executed" the charged scheme and suggesting that they, not Mrs. Tew, are more culpable). But this, standing alone, is not a viable legal defense as described in *Jones*. Indeed, in a wire fraud conspiracy like this, it's perfectly consistent for both defendants, and Mr. Yioulos, to be guilty of the conspiracy even if one is more culpable than others (a fact reflected by the variance in the number of counts charged against each defendant). And Mr. Tew's guilt, standing alone, would not absolve Mrs. Tew as a legal matter.

- 6 -

Instead, the "core" of Mrs. Tew's defense amounts to a suggestion that she did not know the details of the conspiracy as much as Mr. Tew and Mr. Yioulos (just as in *Jones*), that the government cannot meet its burden to prove guilt beyond a reasonable doubt (just as in *Jones*), and that the government's witnesses lack credibility or are lying (just as in *Jones*). These are the same "core defenses" at issue in *Jones* and are not mutually exclusive to Mr. Tew's core defenses (which appear to have been very similar thus far). Mr. Tew therefore has not established that there are mutually exclusive defenses at issue here.

Even if Mr. Tew had established the first prong, as to the second prong, he has not identified a specific trial right compromised by Mrs. Tew's defense, nor has he demonstrated that the jury will be unable to make a reliable judgment about guilt or innocence. *See Pursley*, 474 F.3d at 766. Mr. Tew argues generally that his "rights to a fair trial, due process, and to a fair and impartial jury" are at issue because the jury may not treat him as an individual defendant. This mirrors the unsuccessful arguments made in *Pursley* that the joint trial rendered the moving defendant's defense "less likely to be successful." *Id.* That is not sufficiently specific, as detailed in *Pursley*: "It is well settled that defendants are not entitled to severance merely because they may have a *better chance* of acquittal in separate trials." *Id.* (cleaned up) (emphasis in original). And the court has—and will again—instruct the jury that the evidence must be weighed independently as to each defendant. That is sufficient to cure any alleged prejudice caused by Mrs. Tew's "antagonism" toward Mr. Tew. *See Zafiro*, 506 U.S. at 540-41.

And even if Mr. Tew had established these first two prongs, any alleged prejudice to Mr. Tew does not outweigh the "obviously important considerations of economy and expedition in judicial administration." 530 F.3d at 1304. As discussed above, any prejudice to Mr. Tew is

- 7 -

minimal and has been/will be cured with appropriate instructions. On the other hand, severing trial now would completely undermine the considerations of judicial economy: (1) the court has already conducted most of this trial and received the testimony of many witnesses, most of whom flew from out of state to testify; (2) Mr. Tew failed to raise this issue pre-trial and has not shown good cause for that failure; (3) this case has been ongoing for nearly four years, largely due to delays requested by both defendants; and (4) both defendants have tried to delay this trial multiple times (both before and after it started), including through re-litigation of many issues resolved prior to trial. Judicial economy therefore outweighs any minimal purported prejudice resulting from the joint trial of both defendants.

### CONCLUSION

Mr. Tew's Renewed Motion for Severance, **Doc. 420**, is **DENIED**.

DATED: February 12, 2024

BY THE COURT:

Daniel D. Domenico
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO**

---

Date:                    February 12, 2024          Prob./Pret.:   N/A
Courtroom Deputy:  Robert R. Keech              Interpreter:   N/A
Court Reporter:       Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          <u>Counsel:</u>

UNITED STATES OF AMERICA,                       Bryan D. Fields
                                                 Sarah H. Weiss
            Plaintiff,

v.

1. MICHAEL AARON TEW;                            Jason D. Schall
and                                              Kristen M. Frost
2. KIMBERLEY ANN TEW,                            David S. Kaplan
                                                 Jamie H. Hubbard
            Defendants.

---

**COURTROOM MINUTES**

---

**TRIAL TO JURY (DAY 6)**

**8:57 a.m.**     **Court in session.** Defendants present, on bond. Jury not present.

Discussion regarding jury instructions, [420] Defendant Michael Tew's Renewed Motion for Severance, Mr. Schall having a bond revocation hearing at 12:00 p.m. before Magistrate Judge Susan B. Prose, and exhibits.

**ORDERED:**   [420] Defendant Michael Tew's Renewed Motion for Severance is **DENIED.**

9:02 a.m.     Jury enters.

1

9:02 a.m.     Government's witness **Sarah Anderson** sworn.

              Direct examination by Government by Mr. Fields.
              *Exhibit(s) identified: 555, 556, 557, 558, 559, 560, 561, 562, 409*

**Exhibit(s) 555, 556, 557, 558, 559, 560, 561, 562 RECEIVED.**

9:30 a.m.     Cross examination by Defendant Michael Aaron Tew by Mr. Schall.

9:35 a.m.     Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.

9:38 a.m.     Government's witness **Roman Hernandez** sworn.

              Direct examination by Government by Mr. Fields.
              *Exhibit(s) identified: 101, 102, 103, 104, 105, 110, 111, 112, 106, 107, 108, 109*

**Exhibit(s) 101, 102, 103, 104, 105, 110, 111, 112, 106, 107, 108, 109 RECEIVED.**

9:59 a.m.     Cross examination by Defendant Michael Aaron Tew by Ms. Frost.
              *Exhibit(s) identified: 111, 112*

10:06 a.m.    Government's witness **Nicholas Hanggi** sworn.

              Direct examination by Government by Mr. Fields.
              *Exhibit(s) identified: 1115, 564, 565, 566, 567, 568, 569, 563*

**Exhibit(s) 1115, 564, 565, 566, 567, 568, 563 RECEIVED.**

**10:29 a.m.   Court in recess.**

**10:43 a.m.   Court in session.** Jury enters.

10:45 a.m.    Government's witness **Nicholas Hanggi** resumes.

              Cross examination by Defendant Kimberley Ann Tew by Ms. Hubbard.
              *Exhibit(s) identified: 555, 564, 569*

11:02 a.m.    Cross examination by Defendant Michael Aaron Tew by Mr. Schall.

2

11:07 a.m.    Government's witness **Matthew Vanderveer** sworn.

Direct examination by Government by Mr. Fields.
*Exhibit(s) identified: 605, 613, 614, 625, 639, 650, 673, 681, 689, 693, 697, 705, 707, 717, 747, 774, 775, 786, 788, 817, 820, 829, 830, 833, 837, 851, 857, 858, 865, 718, 628, 635, 637, 646, 685, 708, 715, 718, 730, 740, 760, 776, 784, 787, 804, 805, 842, 883, 885, 886, 895, 896, 897, 901, 902, 915, 917, 925, 927, 932, 934, 937, 938, 941, 942, 946, 958, 960, 964, 966, 967, 970, 989, 990*

11:30 a.m.    Bench conference regarding objections to exhibits.

11:35 a.m.    Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified: 605, 613, 614, 625, 639, 650, 673, 681, 689, 693, 697, 705, 707, 717, 747, 774, 775, 786, 788, 817, 820, 829, 830, 833, 837, 851, 857, 858, 865, 718, 628, 635, 637, 646, 685, 708, 715, 718, 730, 740, 760, 776, 784, 787, 804, 805, 842, 883, 885, 886, 895, 896, 897, 901, 902, 915, 917, 925, 927, 932, 934, 937, 938, 941, 942, 944, 946, 958, 960, 961, 964, 966, 967, 970, 989, 990*

**Exhibit(s) 628, 635, 637, 646, 685, 708, 715, 718, 730, 740, 760, 776, 784, 787, 804, 805, 842, 883, 885, 886, 895, 896, 897, 901, 902, 915, 917, 925, 927, 932, 934, 937, 938, 941, 942, 946, 958, 960, 964, 966, 967, 970, 989, 990, 656, 669, 696, 752 RECEIVED.**

**11:48 a.m.    Court in recess.**

**1:01 p.m.    Court in session.** Jury enters.

1:03 p.m.    Government's witness **Matthew Vanderveer** resumes.

Cross examination by Defendant Kimberley Ann Tew by Ms. Hubbard.
*Exhibit(s) identified: 650, 863, 885*

1:17 p.m.    Cross examination by Defendant Michael Aaron Tew by Ms. Frost.

1:28 p.m.    Re-direct examination by Government by Mr. Fields.

1:32 p.m.      Government's witness **Matthew Edward Morgan** sworn.

               Direct examination by Government by Ms. Weiss.
               *Exhibit(s) identified: 312, 354, 363, 207, 364, 311, 341, 202, 302, 310,*
               *46, 208, 209, 210, 212, 225, 228, 231, 232, 236, 239, 240, 246, 303, 304,*
               *314, 315, 319, 324, 325, 328, 329, 331, 333, 368, 393, 394, 203, 205, 48,*
               *52, 53, 213, 217, 220, 224, 229, 230, 245, 250, 306, 307, 334, 337, 340,*
               *342, 343, 344, 345, 382, 385, 973, 1001, 1004*

**Exhibit(s) 312, 354, 363, 207, 364, 311, 341, 46, 208, 209, 210, 212, 225, 228, 231,
232, 236, 239, 240, 246, 303, 304, 314, 319, 324, 325, 328, 329, 331, 333, 368, 393,
394, 203, 205, 48, 52, 53, 213, 217, 220, 224, 229, 230, 245, 250, 306, 307, 334, 337,
340, 342, 343, 344, 345, 382, 385, 973. 1001, 1004 RECEIVED.**

2:04 p.m.      Bench conference regarding objection to exhibit 1004.

2:11 p.m.      Direct examination by Government continues by Ms. Weiss.
               *Exhibit(s) identified: 1004, 601, 2, 202, 540, 647, 3, 305, 203, 649, 537,*
               *3, 305, 203, 1004, 683, 541, 5, 305, 205, 674, 675, 5, 311, 341, 1004,*
               *543, 692, 7, 301, 207*

**2:53 p.m.      Court in recess.**

**3:10 p.m.      Court in session.** Jury enters.

3:11 p.m.      Government's witness **Matthew Edward Morgan** resumes.

               Direct examination by Government continues by Ms. Weiss.
               *Exhibit(s) identified: 1004, 1005, 716, 8, 303, 208, 719, 9, 303, 209, 737,*
               *210, 743, 11, 210, 1006, 841, 12, 13. 213, 306, 14, 844, 15, 306, 213,*
               *845, 16, 46, 246, 953, 35, 232, 36, 236, 38, 959, 239*

4:56 p.m.      Jury excused for the day and shall report back on Tuesday, February 13,
               2024, at 9:00 a.m.

Discussion regarding schedule for tomorrow and redacting social security numbers
contained in documents.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley
               Ann Tew.

**5:00 p.m.      Court in Recess. <u>TRIAL CONTINUED.   TOTAL TIME: 6:19</u>**

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Case No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. MICHAEL AARON TEW; and
2. KIMBERLEY ANN TEW,

     Defendants.

---

## MINUTE ORDER

---

ORDER ENTERED BY JUDGE DANIEL D. DOMENICO

     The Clerk of Court shall provide lunch to the jury for the duration of their deliberations commencing on **Wednesday, February 14, 2024.**

     Dated:   February 13, 2024.

˅1˅

Jury_Clerk@cod.uscourts.gov

˅2˅

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**JUDGE DANIEL D. DOMENICO**

---

Date:                February 13, 2024          Prob./Pret.:  N/A
Courtroom Deputy: Robert R. Keech               Interpreter:  N/A
Court Reporter:     Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          Counsel:

UNITED STATES OF AMERICA,                    Bryan D. Fields
                                             Sarah H. Weiss
            Plaintiff,

v.

1. MICHAEL AARON TEW;                        Jason D. Schall
and                                          Kristen M. Frost
2. KIMBERLEY ANN TEW,                        David S. Kaplan
                                             Jamie H. Hubbard
            Defendants.

---

**COURTROOM MINUTES**

---

**TRIAL TO JURY (DAY 7)**

**9:00 a.m.**    **Court in session.** Defendants present, on bond. Jury not present.

Discussion regarding audio files from recording of Jonathan Yioulos.

9:09 a.m.    Jury enters.

1

9:09 a.m.    Government's witness **Matthew Edward Morgan** resumes.

Direct examination by Government continues by Ms. Weiss.
*Exhibit(s) identified: 1006, 240, 1007, 903, 52, 887, 220, 224, 933, 229, 954, 230, 912, 225, 227, 935, 228, 950, 231, 232, 952, 232, 959, 37, 236, 1002, 1003*

**Exhibit(s) 1002, 1003 RECEIVED.**

9:32 a.m.    Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan.
*Exhibit(s) identified: 1001, 1002, 1003, 1004, 1005, 1006, 1007*

9:56 a.m.    Cross examination by Defendant Michael Aaron Tew by Mr. Schall.
*Exhibit(s) identified: 203, 301, 1002*

10:00 a.m.   Re-direct examination by Government by Mr. Fields. Ms. Weiss.
*Exhibit(s) identified: 303, 1007, 236, 1002*

**10:06 a.m.   Court in recess.**

**10:20 a.m.   Court in session.** Jury enters.

10:22 a.m.   Government's witness **Lisa Palmer** sworn.

Direct examination by Government by Mr. Fields.
*Exhibit(s) identified: 514, 303, 515, 505, 473, 516, 313, 474, 504, 554, 569, 520, 524, 980, 981, 982, 983, 984, 985, 524, 937, 938, 939, 940, 941, 521, 513, 687, 686, 512, 584, 1008*

**Exhibit(s) 514, 515, 505, 473, 516, 474, 504, 554, 520, 524, 980, 981, 982, 983, 984, 985, 521, 513, 686, 512, 584 RECEIVED.**

11:31 a.m.   Bench conference regarding objections to exhibit 1008.

11:35 a.m.   Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified: 1008, 327, 730, 731, 917, 740, 742*

**Exhibit(s) 1008 (pp. 1-27), 327 RECEIVED.**

**11:57 p.m.   Court in recess.**

2

**1:01 p.m.     Court in session.** Jury not present.

Discussion regarding limiting jury instruction on conspiracy and fraud, jury instructions and verdict form to counsel shortly.

1:06 p.m.     Jury enters.

Government's witness **Lisa Palmer** resumes.

Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified: 1008, 842, 246, 883, 220, 316, 332, 502, 503, 885, 886, 332, 52, 500, 501, 509, 510, 511, 507, 508, 895, 336, 896, 225, 896, 897, 901, 925, 410, 927, 934, 421, 938, 403, 942, 967, 804, 805, 972, 522, 760, 938, 427, 414, 427, 961, 420, 943, 471, 472, 776, 322, 477, 478, 479, 480, 481, 482, 483, 570, 1024, 320, 475, 476, 1025, 346, 330, 381, 484, 485, 586, 487, 488, 489, 490, 491, 1026, 482*

**Exhibit(s) 316, 332, 502, 503, 500, 501, 509, 510, 511, 507, 508, 336, 522, 427, 471, 472, 322, 477, 478, 479, 480, 481, 482, 483, 570, 320, 475, 476, 346, 330, 381, 484, 485, 486, 487, 488, 489, 490, 491 RECEIVED.**

2:33 p.m.     Jury excused.

Discussion regarding objection to exhibit 1009.

**2:40 p.m.     Court in recess.**

**2:54 p.m.     Court in session.** Jury enters.

2:55 p.m.     Government's witness **Lisa Palmer** resumes.

Direct examination by Government continues by Mr. Fields.
*Exhibit(s) identified: 471, 472, 42, 242, 1009, 43, 1010, 44, 1011, 989, 45, 1012, 1013, 47, 1014, 990, 48, 1015, 864, 49, 1016, 50, 1017, 51, 506, 469, 1019, 505, 1020, 54, 1021, 55, 1022, 56, 1023, 931*

**Exhibit(s) 42, 242, 44, 45, 47, 49, 50, 51, 506, 469, 54, 55, 56, 931 RECEIVED.**

3:43 p.m.     Cross examination by Defendant Michael Aaron Tew by Ms. Frost.
*Exhibit(s) identified: 937, 980, 983, 984, 938, 508, 507*

3

4:13 p.m.     Cross examination by Defendant Kimberley Ann Tew by Ms. Hubbard. ***Exhibit(s) identified: 1009, 1013, 1010, 1011, 1014, N, 564, 567, 554, 650, 687, 961, 730, 760, 917, 784, 792***

**Exhibit(s) N RECEIVED.**

4:59 p.m.     Bench conference regarding schedule for tomorrow.

5:01 p.m.     Jury excused for the day and shall report back on Wednesday, February 14, 2024, at 9:30 a.m.

**ORDERED:** Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**5:02 p.m.     Court in Recess. TRIAL CONTINUED.   TOTAL TIME: 6:30**

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico

Criminal Case No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. MICHAEL AARON TEW; and
2. KIMBERLEY ANN TEW,

     Defendants.

---

## AMENDED MINUTE ORDER

---

ORDER ENTERED BY JUDGE DANIEL D. DOMENICO

     The Clerk of Court shall provide lunch to the jury, including the alternate juror, for the duration of their deliberations commencing on **Wednesday, February 14, 2024.**

     Dated:   February 14, 2024.

-1-

Jury_Clerk@cod.uscourts.gov

˅2˅

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO**

---

Date:                    February 14, 2024          Prob./Pret.:   N/A
Courtroom Deputy:  Robert R. Keech             Interpreter:    N/A
Court Reporter:       Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          <u>Counsel:</u>

UNITED STATES OF AMERICA,                    Bryan D. Fields
                                                              Sarah H. Weiss

                  Plaintiff,

v.

1. MICHAEL AARON TEW;                        Jason D. Schall
and                                                     Kristen M. Frost
2. KIMBERLEY ANN TEW,                        David S. Kaplan
                                                              Jamie H. Hubbard

                  Defendants.

---

## COURTROOM MINUTES

---

**TRIAL TO JURY (DAY 8)**

**9:11 a.m.     Court in session.** Defendants present, on bond. Jury not present.

Court's remarks related to exhibits V, W, X, Y, Z, and AA.

**<u>Exhibit(s) V, W, X, Y, Z, AA RECEIVED.</u>**

Discussion and argument regarding jury instructions and verdict forms.

Request by Mr. Kaplan for additional time for closing arguments.

1

**10:00 a.m.**     **Court in recess.**

**10:11 a.m.**     **Court in session.** Jury enters.

10:13 a.m.     Government's witness **Lisa Palmer** resumes.

Cross examination by Defendant Kimberley Ann Tew continues by Ms. Hubbard.
*Exhibit(s) identified: N, A, 708, BB, 707, 685, CC, 684*

**Exhibit(s) A, BB, CC, 684 RECEIVED.**

10:40 a.m.     Direct examination by Government by Mr. Fields.
*Exhibit(s) identified: 886, 509, 943, 426, 787, 786, N, 505, 886, 400, 740, 742, 741, 43*

**Exhibit(s) 43 RECEIVED.**

11:02 a.m.     Government rests.

11:03 a.m.     Jury excused.

Defendant Kimberley Ann Tew's oral motion for judgment of acquittal by Mr. Kaplan and Defendant Michael Aaron Tew's oral motion for judgment of acquittal and renewed motion for severance by Ms. Frost. Defendant Kimberley Ann Tew's renewed motion to sever by Ms. Hubbard.

Argument by counsel.

**ORDERED:**     Defendant Michael Aaron Tew's oral motion for judgment of acquittal is **DENIED.**

**ORDERED:**     Defendant Kimberley Ann Tew's oral motion for judgment of acquittal is **DENIED.**

**ORDERED:**     Defendant Michael Aaron Tew's oral renewed motion for severance is **DENIED.**

**ORDERED:**     Defendant Kimberley Ann Tew's renewed motion to sever is **DENIED.**

Court advises Defendants of their rights with regard to testifying or remaining silent at trial.

2

| 11:12 a.m. | **Court in recess.** |
| 11:25 a.m. | **Court in session.** Jury not present. |
| | Court further advises Defendants of their rights with regard to testifying or remaining silent at trial. |

11:29 a.m.     Jury enters.

Defendant Michael Aaron Tew and Defendant Kimberley Ann Tew rest.

Court reads jury instructions and verdict form.

| 12:12 p.m. | **Court in recess.** |
| 1:19 p.m. | **Court in session.** Jury not present. |

1:22 p.m.      Jury enters.

1:23 p.m.      Closing argument by Government by Mr. Fields.

| 2:11 p.m. | **Court in recess.** |
| 2:20 p.m. | **Court in session.** Jury enters |

2:22 p.m.      Closing argument by Defendant Michael Aaron Tew by Ms. Frost.

2:56 p.m.      Closing argument by Defendant Kimberley Ann Tew by Mr. Kaplan.

3:34 p.m.      Rebuttal argument by Government by Mr. Fields. Ms. Weiss.

3:44 p.m.      Court Security Officer (CSO) sworn.

3:45 p.m.      Alternate juror 100485198 is excused.

3:45 p.m.      Jury excused to commence deliberations.

Defendant Kimberley Ann Tew's oral motion for mistrial by Ms. Hubbard.

Argument by counsel.

Defendant Michael Aaron Tew's oral Rule 29 motion and oral motion for severance by Ms. Frost.

<div align="center">3</div>

Defendant Kimberley Ann Tew's oral Rule 29 motion and oral motion for severance by Mr. Kaplan.

Court makes findings.

**ORDERED:**   Defendant Kimberley Ann Tew's oral motion for mistrial is **DENIED.**

**ORDERED:**   Defendant Kimberley Ann Tew's oral Rule 29 motion is **DENIED.**

**ORDERED:**   Defendant Kimberley Ann Tew's oral motion for severance is **DENIED.**

**ORDERED:**   Defendant Michael Aaron Tew's oral Rule 29 motion is **DENIED.**

**ORDERED:**   Defendant Michael Aaron Tew's oral motion for severance is **DENIED.**

Jury will be allowed to leave around 5:00 p.m.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**4:00 p.m.**      **Court in recess.** Subject to call.

**4:53 p.m.**      **Court in session.** Jury not present.

Discussion regarding note from the jury.

Jury will be excused for the day and shall resume deliberations on Thursday, February 15, 2024, at 9:00 a.m.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**4:54 p.m.**      **Court in Recess. <u>TRIAL CONTINUED.   TOTAL TIME:5:10</u>**

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO

Date: ___February 14, 2024___     Case No.   ___1:20-cr-00305-DDD___

Time: ___4:45pm___

---

NOTE FROM JURY

---

☑ We, the jury, have a question.
☐ We, the jury, have reached a verdict.
Please write your question to the Court below:

We cannot reach any verdict today
without the evidence. We would like to
adjourn and resume tomorrow morning
at 9am.

By: [Juror name redacted.]

Foreperson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

### Judge Daniel D. Domenico

Case No.  20-cr-305-DDD                    Date:  February 5, 2024

Case Title:  *United States v. Michael Tew et al.*

GOVERNMENT'S_____ WITNESS LIST
(**Plaintiff**/Defendant)

| WITNESS | | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|---|
| Jonathan Yioulos | 330 | ① 2/5/24, 4:10pm, 2/6/24, 9:23am Feb. 5-6 - 330 minutes (direct); 170 minutes (cross 2/7/24, 9:16am. |
| Raeesa Telly | 45 | ⑥ 2/6/24 3:37pm Feb. 7 - 45 minutes (direct); 20 minutes (cross) |
| Hannah Scaife | 45 | ② 2/8/24, 9:19am Feb. 7 - 45 minutes (direct); 60 minutes (cross) |
| ~~Brittany~~ Brittney Perry | 30 | ③ 2/8/24, 11:11am Feb. 7 – 30 minutes (direct); 20 minutes (cross) |
| Abby Schwartz | 120 | ⑦ 2/6/24 4:29pm; 2/9/24, 9:10am Feb. 7 - 120 minutes (direct); 60 minutes (cross) |
| Kimberly Burkhalter Townsley (Regions Bank) | 15 | Feb. 7 - 15 minutes (direct); 20 minutes (cross) |
| Patricia Townsend (NFCU) | 15 | Feb. 7 - 15 minutes (direct); 20 minutes (cross) |
| Flagstar Bank / FIS Representative Meghan Oakes | 15 | ④ 2/8/24, 1:05pm Feb. 7 - 15 minutes (direct); 20 minutes (cross) |
| Sarah Anderson | 30 | ⑨ 2/12/24, 9:02am Feb. 8 - 30 minutes (direct); 30 minutes (cross) |
| Joe Ridenour (BBVA / PNC Bank) | 15 | Feb. 8 - 15 minutes (direct); 20 minutes (cross) |

| | | |
|---|---|---|
| Chris Alf *Christopher* | 30 | ⑤ *2/8/24, 1:26 pm.* Feb. 8 - 30 minutes (direct); 25 minutes (cross) |
| Michael Meyers | 75 | ⑧ *2/9/24, 11:12 am.* Feb. 8 - 75 minutes (direct); 40 minutes (cross) |
| Roman Hernandez | 30 | ⑩ *2/12/24 9:30 am.* Feb. 8 - 30 minutes (direct); 20 minutes (cross) |
| Julie Mussack (Wells Fargo Bank) | 15 | Feb. 8 - 15 minutes (direct); 20 minutes (cross) |
| Jerry Plumley (ANB Bank) | 15 | Feb. 8 - 15 minutes(direct); 20 minutes (cross) |
| Nicholas Hanggi | 30 | ⑪ *2/12/24 10:06 am.* Feb. 8 - 30 minutes (direct); 45 minutes (cross) |
| Matthew Vanderveer | 30 | ⑫ *2/12/24, 11:07 am* Feb. 9 - 30 minutes(direct); 40 minutes (cross) |
| Matthew Morgan *Edward* | 60 | ⑬ *2/12/24, 1:32 pm;* Feb. 9 - 60 minutes (direct); 40 minutes (cross) *2/13/24, 9:09 am.* |
| Lisa Palmer | 210 | ⑭ *2/13/24, 10:22 am* Feb. 9 & 12 - 210 minutes (direct); 90 minutes (cross) |

*2/14/24, 10:13 am.*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

**Judge Daniel D. Domenico**

Case No. ___20-cr-00305-DDD___          Date: ___January 25, 2024___

Case Title: ___USA v. Tew, et al._____

_____Kimberley Tew_____     WITNESS LIST
(Plaintiff/Defendant)

WITNESS                                    ESTIMATED DATE(S) AND
                                           LENGTH OF TESTIMONY

___Brittany McNeil_____       ___15 minutes_____

___Tina Schumann_____         ___15 minutes_____

_____               _____

_____               _____

_____               _____

_____               _____

_____               _____

_____               _____

_____               _____

                                            _____

CASE CAPTION: <u>United States v. Tew, et al.</u>

CASE NO.: <u>20-cr-305-DDD</u>

EXHIBIT LIST OF: <u>United States of America, Plaintiff</u>
(Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1 | | INTENTIONALLY LEFT BLANK | | | | | |
| 2 | Morgan. | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 08.01.2018-08.31.2018 | | X | X 2/6 | | |
| 3 | Morgan. | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 10.01.2018-10.31.2018 | | X | X 2/6 | | |
| 4 | | INTENTIONALLY LEFT BLANK | | | | | |
| 5 | Morgan. | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 11.01.2018-11.30.2018 | | X | X 2/6 | | |
| 6 | | INTENTIONALLY LEFT BLANK | | | | | |
| 7 | Morgan - | Signature Bank Statement re Account x5529 National Air Cargo Holdings, statement period 12.01.2018-12.31.2018 | | X | X 2/6 | | |
| 8 | Tiatos. | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.07.2019 | | X | X 2/6 | | |
| 9 | Morgan. | Signature Bank ACH Transaction re $15,250 to [PM], dated 02.19.2019 | | X | X 2/6 | | |
| 10 | Morgan. | Signature Bank ACH Transaction re $38,000 to [PM], dated 03.28.2019 | | X | X 2/6 | | |

1

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 11 | Morgan. | Signature Bank ACH Transaction re $11,250 to [PM], dated 04.03.2019 | | X | X 2|6 | | |
| 12 | Yioulos, Schwartz Morgan. | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 07.23.2019 | | | | | |
| 13 | Yioulos, Morgan | Signature Bank ACH Transaction re $31,500 to SHI LLC, dated 08.06.2019 | | | | | |
| 14 | Yioulos, Morgan | Signature Bank ACH Transaction re $9,500 to Global Fuel Logistics, dated 08.19.2019 | | | | | |
| 15 | Yioulos, Morgan | Signature Bank ACH Transaction re $28,000 to SHI LLC, dated 08.21.2019 | | | | | |
| 16 | Morgan | Signature Bank ACH Transaction re $45,000 to Global Fuel Logistics, dated 09.03.2019 | | | | | |
| 17 | Yioulos | Signature Bank ACH Transaction re $18,000 to SHI LLC, dated 09.09.2019 | | | | | |
| 18 | Yioulos | Signature Bank ACH Transaction re $33,500 to SHI LLC, dated 09.17.2019 | | | | | |
| 19 | Yioulos | Signature Bank ACH Transaction re $52,750 to SHI LLC, dated 09.25.2019 | | | | | |
| 20 | Yioulos. | Signature Bank ACH Transaction re $75,000 to Global Fuel Logistics, dated 10.16.2019 | | | | | |
| 21 | | Signature Bank ACH Transaction re $43,000 to Global Fuel Logistics, dated 10.24.2019 | | | | | |
| 22 | Yialos | Signature Bank ACH Transaction re $49,750 to SHI LLC, dated 10.31.2019 | | | | | |
| 23 | Yioubs | Signature Bank ACH Transaction re $40,500 to SHI LLC, dated 11.07.2019 | | | | | |
| 24 | | Signature Bank ACH Transaction re $43,250 to Global Fuel Logistics, dated 11.25.2019 | | X | X 2|6 | | |

2

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 25 | | Signature Bank ACH Transaction re $9,550 to Global Fuel Logistics, dated 12.02.2019 | | X | X 2/6 | | |
| 26 | | Signature Bank ACH Transaction re $24,500 to Global Fuel Logistics, dated 12.11.2019 | | | | | |
| 27 | | Signature Bank ACH Transaction re $15,200 to Global Fuel Logistics, dated 12.23.2019 | | | | | |
| 28 | | Signature Bank ACH Transaction re $33,000 to Global Fuel Logistics, dated 02.11.2020 | | | | | |
| 29 | | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 02.19.2020 | | | | | |
| 30 | | Signature Bank ACH Transaction re $36,555 to Global Fuel Logistics, dated 03.02.2020 | | | | | |
| 31 | | Signature Bank ACH Transaction re $35,000 to Global Fuel Logistics, dated 03.09.2020 | | | | | |
| 32 | | Signature Bank ACH Transaction re $22,5000 to Global Fuel Logistics, dated 03.19.2020 | | | | | |
| 33 | | Signature Bank ACH Transaction re $73,460 to Global Fuel Logistics, dated 03.31.2020 | | | | | |
| 34 | | Signature Bank ACH Transaction re $36,925 to Global Fuel Logistics, dated 04.06.2020 | | | | | |
| 35 | Morgan | Signature Bank ACH Transaction re $68,255 to Global Fuel Logistics, dated 04.15.2020 | | | | | |
| 36 | | Signature Bank ACH Transaction re $46,850 to Global Fuel Logistics, dated 04.27.2020 | | | | | |
| 37 | Morgan- | Signature Bank ACH Transaction re $85,325 to Global Fuel Logistics, dated 05.05.2020 | | | | | |
| 38 | Tioulos, Morgan. | Signature Bank ACH Transaction re $82,422 to Global Fuel Logistics, dated 05.12.2020 | | X | X 2/6 | | |

3

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 39 | Morgan | Signature Bank ACH Transaction re $78,565 to Global Fuel Logistics, dated 05.20.2020 | | X | X 2/6 | | |
| 40 | Roulos | Signature Bank ACH Transaction re $95,000 to Global Fuel Logistics, dated 07.02.2020 | | X | X 2/6 | | |
| 41 | | INTENTIONALLY LEFT BLANK | | | | | |
| 42 | Palmer | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawal, dated 06.04.2019 | | X | X 2/13 | | |
| 43 | Palmer | Navy Federal Credit Union Transaction Log Summary re Acct x8486 $15,000 Withdrawal, dated 06.11.2019 | | X | X 2/14 | | |
| 44 | Palmer | Wells Fargo Bank Withdrawal Slip re Acct x6934 $22,000 Withdrawal, dated 08.28.2019 | | X | X 2/13 | | |
| 45 | Palmer | Wells Fargo Bank Withdrawal Slip re Acct x2064 $25,000 Withdrawal, dated 08.29.2019 | | X | X 2/13 | | |
| 46 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 08.17.2019-09.16.2019 | | X | X 2/12 | | |
| 47 | Palmer | Wells Fargo Bank Wire Transaction Report re Acct x6934 $15,000, dated 09.18.2019 | | X | X 2/13 | | |
| 48 | Morgan Palmer | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 09.26.2019 | | X | X 2/12 | | |
| 49 | Palmer | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 09.27.2019 | | X | X 2/13 | | |
| 50 | Palmer | Wells Fargo Bank Withdrawal Slip re Acct x6934 $20,000 Withdrawal, dated 10.01.2019 | | X | X 2/13 | | |
| 51 | Palmer | Wells Fargo Bank Withdrawal Slip re Acct x6934 $12,000 Withdrawal, dated 10.02.2019 | | Y | X 2/13 | | |
| 52 | Morgan Palmer | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 11.30.2019 | | X | X 2/12 | | |

4

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 53 | Morgan. | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 02.20.2020 | | X | X 2/12 | | |
| 54 | Palmer. | Wells Fargo Bank Withdrawal Slip re Acct x2064 $15,000 Withdrawal, dated 02.21.2020 | | X | X 2/13 | | |
| 55 | Palmer. | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 02.27.2020 | | X | X 2/13 | | |
| 56 | Palmer. | Wells Fargo Bank Withdrawal Slip re Acct x2064 $20,000 Withdrawal, dated 03.03.2020 | | X | X 2/13 | | |
| 57-100 | | INTENTIONALLY LEFT BLANK | | | | | |
| 101 | Hernandez. | 2016 Gross Income Summary for Michael Tew | | X | X 2/12 | | |
| 102 | Hernandez. | 2017 Gross Income Summary for Michael Tew | | X | | | |
| 103 | Hernandez. | 2018 Gross Income Summary for Michael Tew | | X | | | |
| 104 | Hernandez. | 2019 Gross Income Summary for Michael Tew | | X | X 2/12 | | |
| 105 | Hernandez. | Internal Revenue Service 2019 Account Transcript | | X | X 2/12 | | |
| 106 | Hernandez | 2016 Gross Income Summary for Sand Hill LLC | | X | X 2/12 | | |
| 107 | Hernandez. | 2017 Gross Income Summary for Sand Hill LLC | | | | | |
| 108 | Hernandez | 2018 Gross Income Summary for Sand Hill LLC | | | | | |
| 109 | Hernandez. | 2019 Gross Income Summary for Sand Hill LLC | | X | X 2/12 | | |
| 110 | Hernandez | Internal Revenue Service 2016 Account Transcript | | X | X 2/12 | | |

5

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 111 | Hernandez | Internal Revenue Service 2017 Account Transcript | | X | X 2/12 | | |
| 112 | Hernandez | Internal Revenue Service 2018 Account Transcript | | X | X 2/12 | | |
| 113 - 200 | | INTENTIONALLY LEFT BLANK | | | | | |
| 201 | | INTENTIONALLY LEFT BLANK | | | | | |
| 202 | Morgan | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, statement 08.31.2018 | | X | X 2/12 | | |
| 203 | Morgan | Regions Bank Statement re Account x4514 [MM], statement period 10.12.2018-11.08.2018 | | X | X 2/12 | | |
| 204 | | INTENTIONALLY LEFT BLANK | | | | | |
| 205 | Morgan | Regions Bank Statement re Account x4514 [MM], statement period 11.09.2018-12.10.2018 | | X | X 2/12 | | |
| 206 | | INTENTIONALLY LEFT BLANK | | | | | |
| 207 | Morgan | ANB Bank Statement re Account x3099 [MM], dated 12.18.2018 | | X | X 2/12 | | |
| 208 | Morgan | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2019-02.16.2019 | | X | X 2/12 | | |
| 209 | Morgan | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2019-03.16.2019 | | X | X 2/12 | | |
| 210 | Morgan | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2019-04.16.2019 | | X | X 2/12 | | |
| 211 | | INTENTIONALLY LEFT BLANK | | | | | |

6

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 212 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 07.17.2019-08.16.2019 | | X | X 2/12 | | |
| 213 | Morgan | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 08.31.2019 | | X | X 2/12 | | |
| 214 | | INTENTIONALLY LEFT BLANK | | | | | |
| 215 | | INTENTIONALLY LEFT BLANK | | | | | |
| 216 | | INTENTIONALLY LEFT BLANK | | | | | |
| 217 | Morgan | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 09.30.2019 | | X | X 2/12 | | |
| 218 | | INTENTIONALLY LEFT BLANK | | | | | |
| 219 | | INTENTIONALLY LEFT BLANK | | | | | |
| 220 | Morgan Palmer | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 10.31.2019 | | X | X 2/12 | | |
| 221 | | INTENTIONALLY LEFT BLANK | | | | | |
| 222 | | INTENTIONALLY LEFT BLANK | | | | | |
| 223 | | INTENTIONALLY LEFT BLANK | | | | | |
| 224 | Morgan | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 11.30.2019 | | X | X 2/12 | | |
| 225 | Morgan Palmer | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | X | X 2/12 | | |
| 226 | | INTENTIONALLY LEFT BLANK | | | | | |

7

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 227 | Perry, Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 12.17.2019-01.16.2020 | | X | X 2/8 | | |
| 228 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2020-02.16.2020 | | X | X 2/12 | | |
| 229 | Morgan | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 02.29.2020 | | X | X 2/12 | | |
| 230 | Morgan | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 03.31.2020 | | X | X 2/12 | | |
| 231 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2020-03.16.2020 | | X | X 2/12 | | |
| 232 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2020-04.16.2020 | | X | X 2/12 | | |
| 233 | | INTENTIONALLY LEFT BLANK | | | | | |
| 234 | | INTENTIONALLY LEFT BLANK | | | | | |
| 235 | | INTENTIONALLY LEFT BLANK | | | | | |
| 236 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2020-05.16.2020 | | X | X 2/12 | | |
| 237 | | INTENTIONALLY LEFT BLANK | | | | | |
| 238 | | INTENTIONALLY LEFT BLANK | | | | | |
| 239 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2020-06.16.2020 | | X | X 2/12 | | |
| 240 | Morgan | Navy Federal Credit Union Transaction Details re Access x1390, Account x3094 Global Fuel Logistics, transaction period 07.20.2020-07.08.2020 | | X | X 2/12 | | |

8

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 241 | | INTENTIONALLY LEFT BLANK | | | | | |
| 242 | Palmer. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2019-06.16.2019 | | X | 2/13 | | |
| 243 | | INTENTIONALLY LEFT BLANK | | | | | |
| 244 | | INTENTIONALLY LEFT BLANK | | | | | |
| 245 | Morgan. | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 08.31.2019 | | X | 2/12 | | |
| 246 | Morgan, Palmer | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 08.17.2019-09.16.2019 | | X | 2/12 | | |
| 247 | | INTENTIONALLY LEFT BLANK | | | | | |
| 248 | | INTENTIONALLY LEFT BLANK | | | | | |
| 249 | | INTENTIONALLY LEFT BLANK | | | | | |
| 250 | Morgan | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 10.31.2019 | | X | 2/12 | | |
| 251 - 300 | | INTENTIONALLY LEFT BLANK | | | | | |
| 301 | Meyers, Morgan | ANB Bank Signature Card re Account x3099 [MM] | | X | 2/9 | | |
| 302 | Morgan | Guaranty Bank and Trust Signature Card re Account x7867 Michael Tew | | X | 2/12 | | |
| 303 | Morgan, Palmer | Navy Federal Credit Union Application re Kimberley Tew and Michael Tew | | X | 2/12 | | |
| 304 | Morgan | Navy Federal Credit Union Application re Global Fuel Logistics, dated 06.08.2020 | | X | 2/12 | | |

9

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 305 | Meyers, Morgan | Regions Bank Signature Cards re Account x0514 [MM] | | X | X 2/9 | | |
| 306 | Morgan | Wells Fargo Bank Signature Card re Account x6934 Sand Hill LLC, LLC | | X | X 2/12 | | |
| 307 | Morgan | Wells Fargo Bank Signature Card re Account x2064 Global Fuel Logistics | | X | X 2/12 | | |
| 308 | Schwartz | Signature Bank Signature Card re Accounts x5545 and x6150 National Air Cargo Group, Inc | | X | X 2/9 | | |
| 309 | Schwartz | Signature Bank Signature Card re Accounts x5529, x6363, x6355, and x6134 National Air Cargo Group, Inc | | X | X 2/9 | | |
| 310 | Morgan | Guaranty Bank and Trust Statement re Account x7867 Michael Tew, dated 08.31.2018 | | X | X 2/12 | | |
| 311 | Morgan | BBVA Compass Signature Card re Account x0987 [5530 JD] LLC | | X | X 2/12 | | |
| 312 | Morgan | Access National Bank Statement re Account x5965 [PM] Inc., statement period 12.01.2018-12.31.2018 | | X | X 2/12 | | |
| 313 | Palmer. | Simple Signature Card for Kimberley Tew | | . | | | |
| 314 | Morgan. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 07.17.2019-08.16.2019 | | X | X 2/12 | | |
| 315 | Morgan. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 09.17.2019-10.16.2019 | | X | X 2/12 | | |
| 316 | Palmer. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 10.17.2019-11.16.2019 | | X | X 2/13 | | |
| 317 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 11.17.2019-12.16.2019 | | | | | |
| 318 | Perry | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 12.17.2019-01.16.2020 | | X | X 2/8 | | |

10

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 319 | Morgan | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.17.2020-02.16.2020 | | X | 2/12 | | |
| 320 | Palmer. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 02.17.2020-03.16.2020 | | X | 2/13 | | |
| 321 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 03.17.2020-04.16.2020 | | | | | |
| 322 | Palmer. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2020-05.16.2020 | | X | 2/13 | | |
| 323 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 05.17.2020-06.16.2020 | | | | | |
| 324 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.08.2019-01.16.2019 | | X | 2/12 | | |
| 325 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 01.17.2019-02.16.2019 | | X | 2/12 | | |
| 326 | | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 02.17.2019-03.16.2019 | | | | | |
| 327 | Palmer. | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 03.17.2019-04.16.2019 | | X | 2/13 | | |
| 328 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 04.17.2019-05.16.2019 | | X | 2/12 | | |
| 329 | Morgan. | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 05.17.2019-06.16.2019 | | X | 2/12 | | |
| 330 | Palmer. | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 06.17.2019-07.16.2019 | | X | 2/13 | | |
| 331 | Morgan | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 09.17.2019-10.16.2019 | | X | 2/12 | | |
| 332 | Palmer. | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 10.17.2019-11.16.2019 | | X | 2/13 | | |

11

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 333 | Morgan. | Navy Federal Credit Union Statement re Access x3844 Michael Tew, statement period 11.17.2019-12.16.2019 | | X | X 2\|12 | | |
| 334 | Morgan. | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 09.30.2019 | | X | X 2\|12 | | |
| 335 | Schwartz | American Express Corporate Card Authorization re Account x91009 National Air Cargo, Cardmember Michael Tew | | X | X 2\|9 | | |
| 336 | Palmer. | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 12.31.2019 | | X | X 2\|13 | | |
| 337 | Morgan. | Wells Fargo Bank Statement re Account x2064 Global Fuel Logistics, dated 01.31.2020 | | X | X 2\|12 | | |
| 338 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 06.16.2018 | | X | X 2\|9 | | |
| 339 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 07.16.2018 | | X | X 2\|9 | | |
| 340 | Morgan - | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 12.31.2019 | | X | X 2\|12 | | |
| 341 | Morgan | BBVA Compass Statement re Account x0987 5530 Jassamine Development LLC, statement period 11.01.2018-11.30.2018 | | X | X 2\|12 | | |
| 342 | Morgan | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 05.31.2019 | | X | X 2\|12 | | |
| 343 | Morgan. | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 01.31.2020 | | X | X 2\|12 | | |
| 344 | Morgan | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 02.29.2020 | | X | X 2\|12 | | |

12

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 345 | Morgan . | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 03.31.2020 | | X | X 2/12 | | |
| 346 | Palmer. | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc, statement period 06.08.2020-06.30.2020 | | X | X 2/13 | | |
| 347 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 08.16.2018 | | X | X 2/9 | | |
| 348 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 09.16.2018 | | | | | |
| 349 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 10.16.2018 | | | | | |
| 350 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 11.16.2018 | | | | | |
| 351 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 12.16.2018 | | | | | |
| 352 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 01.16.2019 | | | | | |
| 353 | Schwartz | American Express Corporate Card Statement re Account x91009 National Air Cargo, Cardmember Michael Tew, closing date 02.16.2019 | | X | X 2/9 | | |
| 354 | Morgan . | Access National Bank Signature Card re Account x5965 [PM] | | X | X 2/12 | | |
| 355 | | Signature Bank ACH Transaction re $25,000 to Global Fuel Logistics, dated 10.23.2019 | | X | X 2/6 | | |

13

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 356 | Yioulos | Signature Bank ACH Transaction re $21,250 to [PM] Inc., dated 12.10.2018 | | X | X 2/6 | | |
| 357 | Yioulos | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.22.2018 | | | | | |
| 358 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 08.23.2018 | | | | | |
| 359 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.10.2018 | | | | | |
| 360 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.18.2018 | | | | | |
| 361 | | Signature Bank ACH Transaction re $15,000 to [5530 JD] LLC, dated 09.28.2018 | | | | | |
| 362 | Yioulos. | Signature Bank ACH Transaction re $30,000 to [MM], dated 12.03.2018 | | X | X 2/6 | | |
| 363 | Morgan | Access National Bank Statement re Account x5965 [PM] Inc., statement period 03.01.2019-03.31.2019 | | X | X 2/12 | | |
| 364 | Morgan | ANB Bank Statement re Account x3099 [MM], dated 01.04.2019 | | X | X 2/12 | | |
| 365 | | Signature Bank ACH Transaction re $21,000 to [PM] Inc., dated 01.23.2019 | | X | X 2/6 | | |
| 366 | | Signature Bank ACH Transaction re $15,312.50 to [PM] Inc., dated 01.07.2019 | | X | X 2/6 | | |
| 367 | | Signature Bank ACH Transaction re $23,350 to [PM] Inc., dated 01.10.2019 | | X | X 2/6 | | |
| 368 | Morgan | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 01.07.2019-01.16.2019 | | X | X 2/12 | | |
| 369 | | Signature Bank ACH Transaction re $28,000 to [PM] Inc., dated 01.18.2019 | | X | X 2/6 | | |

14

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 370 | | Signature Bank ACH Transaction re $31,500 to [PM] Inc., dated 03.14.2019 | | X | X 2/6 | | |
| 371 | | Signature Bank ACH Transaction re $37,800 to [PM] Inc., dated 03.04.2019 | | | | | |
| 372 | | Signature Bank ACH Transaction re $20,250 to [PM] Inc., dated 03.19.2019 | | | | | |
| 373 | | Signature Bank ACH Transactions re: $37,500 to [PM] Inc., dated 04.08.2019; $18,750 to [PM] Inc., dated 04.11.2019; and $18,750 to [PM] Inc., dated 04.15.2019 | | | | | |
| 374 | | Signature Bank ACH Transaction re $18,750 to [PM] Inc., dated 04.17.2019 | | | | | |
| 375 | | Signature Bank ACH Transactions re: $18,750 to [PM] Inc., dated 04.22.2019; $18,750 to [PM] Inc., dated 04.24.2019; $38,640 to [PM], dated 04.29.2019; and $19,890 to [PM], dated 05.07.2019 | | | | | |
| 376 | | Signature Bank ACH Transactions re: $49,750 to [PM], dated 05.07.2019; and $40,000 to [PM] Inc., dated 05.10.2019 | | | | | |
| 377 | | Signature Bank ACH Transactions re: $19,900 to [PM], dated 05.15.2019; $23,785 to [PM], dated 05.21.2019; $9,950 to [PM], dated 05.23.2019; $11,150 to [PM], dated 05.28.2019; and $10,100 to [PM] Inc., dated 05.29.2019 | | X | X 2/6 | | |
| 378 | | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 04.17.2019-05.16.2019 | | | | | |
| 379 | | Signature Bank ACH Transactions re: $53,500 to [PM], dated 06.03.2019; $28,000 to [PM], dated 06.10.2019; and $9,500 to [PM], dated 06.13.2019 | | X | X 2/6 | | |

15

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 380 | | Signature Bank ACH Transactions re: $50,000 to [PM] Inc., dated 06.20.2019; $15,000 to [PM], dated 06.25.2019; and $30,000 to Sand Hill LLC, dated 06.26.2019 | | X | X 2/6 | | |
| 381 | Palmer. | Navy Federal Credit Union Statement re Access x3843 Kimberley Tew, statement period 06.17.2019-07.16.2019 | | X | X 2/13 | | |
| 382 | Morgan. | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 06.30.2019 | | X | X 2/12 | | |
| 383 | Koulos . | Signature Bank ACH Transactions re: $45,000 to Global Fuel Logistics, dated 07.30.2019; $47,000 to SHI LLC, dated 08.01.2019; and $30,000 to SHI LLC, dated 08.05.2019 | | X | X 2/6 | | |
| 384 | Schwartz | Signature Bank ACH Transactions re: $9,200 to Sand Hill LLC, dated 06.28.2019; $13,000 to SHI LLC, dated 07.09.2019; $27,475 to SHI LLC, dated 07.11.2019; and $10,000 to SHI LLC, dated 07.19.2019 | | X | X 2/6 | | |
| 385 | Morgan. | Wells Fargo Bank Statement re Account x6934 Sand Hill LLC, dated 07.31.2019 | | X | X 2/12 | | |
| 386 | | Signature Bank ACH Transaction re $12,900 to Global Fuel Logistics, dated 01.07.2020 | | X | X 2/6 | | |
| 387 | | Signature Bank ACH Transactions re: $15,500 to Global Fuel Logistics, dated 01.10.2020; $19,500 to Global Fuel Logistics, dated 01.17.2020; $9,800 to Global Fuel Logistics, dated 01.22.2020; $13,500 to Global Fuel Logistics, dated 01.23.2020; $36,500 to Global Fuel Logistics, dated 01.27.2020; and $7,200 to Global Fuel Logistics, dated 01.30.2020 | | | | | |
| 388 | | Signature Bank ACH Transaction re $13,000 to Global Fuel Logistics, dated 08.09.2019 | | | | | |
| 389 | | Signature Bank ACH Transaction re $24,700 to Global Fuel Logistics, dated 03.05.2020 | | X | X 2/6 | | |

16

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 390 | Yioulos | Signature Bank ACH Transactions re: $97,545 to Global Fuel Logistics, dated 06.22.2020; $71,550 to Global Fuel Logistics, dated 06.24.2020; and $105,000 to Global Fuel Logistics, dated 06.29.2020 | | X | X 2/6 | | |
| 391 | | Signature Bank ACH Transaction re $83,526 to Global Fuel Logistics, dated 06.02.2020 | | I | ( | | |
| 392 | | Signature Bank ACH Transactions re: $45,220 to Global Fuel Logistics, dated 06.04.2020; $93,135 to Global Fuel Logistics, dated 06.09.2020; and $93,635 to Global Fuel Logistics, dated 06.17.2020 | | X | X 2/6 | | |
| 393 | Morgan | Navy Federal Credit Union Statement re Access x1390 Global Fuel Logistics Inc. statement period 06.08.2010-06.30.2020 | | X | X 2/12 | | |
| 394 | Morgan | Navy Federal Credit Union Check re Acct x3494 $500.00 to Sand Hill LLC, dated 10.15.19 | | X | X 2/12 | | |
| 395 | Perry | Navy Federal Credit Union Surveillance Photo, dated 04.14.2020 | | X | X 2/8 | | |
| 396 | Perry | Navy Federal Credit Union Surveillance Photo, dated 04.03.2020 | | X | X 2/8 | | |
| 397 | Perry | Navy Federal Credit Union Surveillance Photo, dated 02.04.2020 | | X | X 2/8 | | |
| 398 | Perry | Navy Federal Credit Union Surveillance Photo, dated 01.13.2020 | | X | X 2/8 | | |
| 399 | Perry | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 08:14:04.950 PM | | X | X 2/8 | | |
| 400 | Perry, Palmer | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | X | X 2/8 | | |
| 401 | | Navy Federal Credit Union Surveillance Photo, dated 06.26.2020 | | | | | |

17

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 402 | Perry | Navy Federal Credit Union Surveillance Photo, dated 06.08.2020 | | X | X 2/8 | | |
| 403 | Perry, Palmer | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 02:19:42.572 PM | | X | X 2/8 | | |
| 404 | Perry | Navy Federal Credit Union Surveillance Photo, dated 03.20.2020 09:23:58.357 PM | | Y | X 2/8 | | |
| 405 | Perry | Navy Federal Credit Union Surveillance Photo, dated 03.06.2020 | | X | X 2/8 | | |
| 406 | Perry | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 | | X | X 2/8 | | |
| 407 | Perry | Navy Federal Credit Union Surveillance Photo, dated 05.04.2020 | | X | X 2/8 | | |
| 408 | Perry | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:02:07.321 PM | | X | X 2/8 | | |
| 409 | Perry, Anderson | Navy Federal Credit Union Surveillance Photo, dated 04.01.2020 04:05:40.320 PM | | X | X 2/8 | | |
| 410 | Perry, Palmer | Navy Federal Credit Union Surveillance Photo, dated 02.12.2020 | | Y | X 2/8 | | |
| 411 | Perry | Navy Federal Credit Union Surveillance Photo, dated 02.25.2020 | | X | X 2/8 | | |
| 412 | Perry | Navy Federal Credit Union Surveillance Photo, dated 01.23.2020 | | X | X 2/8 | | |
| 413 | Perry | Navy Federal Credit Union Surveillance Photo, dated 01.29.2020 | | X | X 2/8 | | |
| 414 | Perry, Palmer | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | X | X 2/8 | | |
| 415 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:59:59.914 PM | | | | | |

18

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 416 | | Navy Federal Credit Union Surveillance Photo, dated 06.11.2020 07:53:41.888 PM | | | | | |
| 417 | Perry | Navy Federal Credit Union Surveillance Photo, dated 06.30.2020 | | X | X 2/8 | | |
| 418 | Perry. | Navy Federal Credit Union Surveillance Photo, dated 06.25.2020 | | X | Y 2/8 | | |
| 419 | Perry. | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:16:56.734 PM | | X | X 2/8 | | |
| 420 | Perry, Palmer. | Navy Federal Credit Union Surveillance Photo, dated 06.09.2020 05:17:57.737 PM | | Y | X 2/8 | | |
| 421 | Perry Palmer. | Navy Federal Credit Union Surveillance Photo, dated 03.11.2020 | | X | Y 2/8 | | |
| 422 | Perry | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 11:58:06.124 AM | | Y | X 2/8 | | |
| 423 | Perry | Navy Federal Credit Union Surveillance Photo, dated 03.18.2020 05:08:46.082 PM | | X | Y 2/8 | | |
| 424 | Perry | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 12:12:35.352 PM | | X | Y 2/8 | | |
| 425 | Perry | Navy Federal Credit Union Surveillance Photo, dated 05.12.2020 06:36:34.932 PM | | X | X 2/8 | | |
| 426 | Perry, Palmer | Navy Federal Credit Union Surveillance Photo, dated 03.27.2020 | | X | Y 2/8 | | |
| 427 | Perry, Palmer. | Navy Federal Credit Union Surveillance Photo, dated 06.11.2019 | | Y | X 2/13 | | not offd. |
| 428 | Perry | Signature Bank ACH Transaction re: $13,000 to Sand Hill LLC, dated 08.09.2019 | | X | X 2/6 | | |
| 429 | Perry. | Signature Bank ACH Transaction re: $35,000 to Sand Hill LLC, dated 08.14.2019 | | X | X 2/6 | | |

19

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 430 | | Signature Bank ACH Transaction re: $15,000 to Global Fuel Logistics, dated 08.15.2019 | | X | X 2\|6 | | |
| 431 | | Signature Bank ACH Transaction re: $27,000 to Sand Hill LLC, dated 08.22.2019 | | | | | |
| 432 | | Signature Bank ACH Transaction re: $45,000 to Sand Hill LLC, dated 08.26.2019 | | X | X 2\|6 | | |
| 433 | Yioulos. | Signature Bank Wire Transaction re: $45,000 to Global Fuel Logistics, dated 08.29.2019 | | X | X 2\|6 | | |
| 434 | | Signature Bank ACH Transaction re: $13,000 to Global Fuel Logistics, dated 02.03.2020 | | X | X 2\|6 | | |
| 435 | | Signature Bank ACH Transaction re: $23,200 to Global Fuel Logistics, dated 02.06.2020 | | | | | |
| 436 | | Signature Bank ACH Transaction re: $32,500 to Global Fuel Logistics, dated 02.13.2020 | | | | | |
| 437 | | Signature Bank ACH Transaction re: $55,000 to Global Fuel Logistics, dated 02.18.2020 | | | | | |
| 438 | | Signature Bank ACH Transaction re: $40,000 to Global Fuel Logistics, dated 02.26.2020 | | | | | |
| 439 | | Signature Bank ACH Transaction re: $74,955 to Global Fuel Logistics, dated 03.11.2020 | | | | | |
| 440 | | Signature Bank ACH Transaction re: $17,200 to Global Fuel Logistics, dated 03.17.2020 | | | | | |
| 441 | | Signature Bank ACH Transaction re: $32,245 to Global Fuel Logistics, dated 03.24.2020 | | | | | |
| 442 | | Signature Bank ACH Transaction re: $32,300 to Global Fuel Logistics, dated 03.26.2020 | | | | | |
| 443 | | Signature Bank ACH Transaction re: $41,225 to Global Fuel Logistics, dated 04.02.2020 | | X | X 2\|6 | | |

20

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 444 | | Signature Bank ACH Transaction re: $37,353 to Global Fuel Logistics, dated 04.08.2020 | | X | X 2/6 | | |
| 445 | | Signature Bank ACH Transaction re: $31,355 to Global Fuel Logistics, dated 04.13.2020 | | | | | |
| 446 | | Signature Bank ACH Transaction re: $56,530 to Global Fuel Logistics, dated 04.21.2020 | | | | | |
| 447 | | Signature Bank ACH Transaction re: $36,240 to Global Fuel Logistics, dated 04.29.2020 | | | | | |
| 448 | | Signature Bank ACH Transaction re: $77,460 to Global Fuel Logistics, dated 05.18.2020 | | | | | |
| 449 | | Signature Bank ACH Transaction re: $85,500 to Global Fuel Logistics, dated 05.27.2020 | | | | | |
| 450 | | Signature Bank ACH Transaction re $20,250.00 to [PM] Inc., dated 03.18.2019 | | | | | |
| 451 | | Signature Bank ACH Transaction re $60,000 to Global Fuel Logistics, dated 09.10.2019 | | | | | |
| 452 | | Signature Bank ACH Transaction re $51,500 to Sand Hill LLC, dated 09.12.2019 | | | | | |
| 453 | | Signature Bank ACH Transaction re $11,950 to Global Fuel Logistics, dated 09.16.2019 | | | | | |
| 454 | | Signature Bank ACH Transaction re $41,500 to Sand Hill LLC, dated 09.19.2019 | | | | | |
| 455 | | Signature Bank ACH Transaction re $60,000 to Sand Hill LLC, dated 09.26.2019 | | | | | |
| 456 | | Signature Bank ACH Transaction re $75,000 to Sand Hill LLC, dated 09.30.2019 | | | | | |
| 457 | | Signature Bank ACH Transaction re $35,000 to Sand Hill LLC, dated 10.10.2019 | | X | X 2/6 | | |

21

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 458 | | Signature Bank ACH Transaction re $23,750 to Global Fuel Logistics, dated 10.30.2019 | | X | X 2/6 | | |
| 459 | | Signature Bank ACH Transaction re $25,000 to Sand Hill LLC, dated 11.18.2019 | | | | | |
| 460 | | Signature Bank ACH Transaction re $17,900 to Global Fuel Logistics, dated 11.21.2019 | | | | | |
| 461 | | Signature Bank ACH Transaction re $42,000 to Global Fuel Logistics, dated 11.27.2019 | | | | | |
| 462 | | Signature Bank ACH Transaction re $26,500 to Global Fuel Logistics, dated 12.05.2019 | | | | | |
| 463 | | Signature Bank ACH Transaction re $51,150 to Global Fuel Logistics, dated 12.09.2019 | | | | | |
| 464 | | Signature Bank ACH Transaction re $7,800 to Global Fuel Logistics, dated 12.16.2019 | | | | | |
| 465 | | Signature Bank ACH Transaction re $33,300 to Global Fuel Logistics, dated 12.17.2019 | | | | | |
| 466 | | Signature Bank ACH Transaction re $14,350 to Global Fuel Logistics, dated 12.19.2019 | | | | | |
| 467 | | Signature Bank ACH Transaction re $55,500 to Global Fuel Logistics, dated 12.26.2019 | | | | | |
| 468 | | Signature Bank ACH Transaction re $77,500 to Global Fuel Logistics, dated 12.30.2019 | | X | X 2/6 | | |
| 469 | Palmer | Wells Fargo Bank Wire Transaction Report re Acct x6934 $20,611.01, dated 11.01.2019 | | X | X 2/13 | | |
| 470 | Perry | Navy Federal Credit Union Surveillance Photo, dated 06.23.2020 | | X | X 2/8 | | |
| 471 | Palmer | Spreadsheet of Digital Mint Transaction Details, Part One | | X | X 2/13 | | |

22

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 472 | Palmer. | Spreadsheet of Digital Mint Transaction Details, Part Two | | X | 2/13 | | |
| 473 | Palmer. | American Express Application re Michael Tew | | X | 2/13 | | |
| 474 | Palmer | American Express Application re Kimberley Tew | | X | 2/13 | | |
| 475 | Palmer. | Digital Mint Surveillance Photo 03.07.2020 00:33:01 UTC | | X | 2/13 | | |
| 476 | Palmer. | Digital Mint Surveillance Photo 03.07.2020 00:29:36 UTC | | X | 2/13 | | |
| 477 | Palmer. | Digital Mint Surveillance Photo 04.30.2020 21:51:39 UTC | | X | 2/13 | | |
| 478 | Palmer. | Digital Mint Surveillance Photo 04.30.2020 21:53:34 UTC | | | | | |
| 479 | Palmer | Digital Mint Surveillance Photo 04.30.2020 21:55:38 UTC | | | | | |
| 480 | Palmer. | Digital Mint Surveillance Photo 04.30.2020 21:58:08 UTC | | | | | |
| 481 | Palmer. | Digital Mint Surveillance Photo 04.30.2020 21:59:40 UTC | | | | | |
| 482 | Palmer. | Digital Mint Surveillance Photo 04.30.2020 23:43:54 UTC | | | | | |
| 483 | Palmer | Digital Mint Surveillance Photo 04.30.2020 23:46:20 UTC | | X | 2/13 | | |
| 484 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:27:57 UTC | | X | 2/13 | | |
| 485 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:30:15 UTC | | X | 2/13 | | |

23

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 486 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:32:14 UTC | | X | X 2/13 | | |
| 487 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:33:59 UTC | | | | | |
| 488 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:37:58 UTC | | | | | |
| 489 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:40:00 UTC | | | | | |
| 490 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:42:54 UTC | | | | | |
| 491 | Palmer | Digital Mint Surveillance Photo 06.23.2020 23:44:58 UTC | | X | X 2/13 | | |
| 492 | Perry | Signature Bank ACH Transaction re $68,400 to Global Fuel Logistics, dated 05.11.2020 | | X | X 2/6 | | |
| 493 | Perry | Navy Federal Credit Union Surveillance Photo, dated 04.30.2020 | | X | X 2/8 | | |
| 494 | | Flagstar Bank FIS Technology Centers Service Organizations Report re 01.01.2020 to 09.30.2020 | | | | | |
| 495 | | ACH Spreadsheet from Regions Bank | | | | | |
| 496 - 499 | | INTENTIONALLY BLANK | | | | | |
| 500 | Palmer | Kraken Account Opening and Verification Documents for Kimberley Tew | | X | X 2/13 | | |
| 501 | Palmer | Kraken Account Opening and Verification Documents for Michael Tew | | X | X 2/13 | | |
| 502 | Palmer | Coinbase profile image records for Michael Tew | | X | X 2/13 | | |

24

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 503 | Palmer | Coinbase profile image records for Kimberley Tew | | X | 2/13 | | |
| 504 | Palmer. | Google Pay Customer Profile re kley@me.com | | X | 2/13 | | |
| 505 | Palmer | McDonald Audi Purchase Documents re 2016 Audi A4 VIN x2447, dated 10.03.2019 | | X | 2/13 | | |
| 506 | Palmer. | McDonald Audi Wire Transfer Records re $20,611.01 Incoming Money Transfer, dated 11.01.2019 | | X | 2/13 | | |
| 507 | Palmer. | Wynn Las Vegas Jackpot Report between 07.04.2019 and 11.29.2019 | | X | 2/13 | | |
| 508 | Palmer - | Wynn Las Vegas 2019 Loss Summary, as of 07.16.2020 | | X | 2/13 | | |
| 509 | Palmer. | Wynn Las Vegas Reservation Confirmation #23362412 for Kimberley Tew, 10.30.2019 arrival & 11.02.19 departure | | X | 2/13 | | |
| 510 | Palmer . | Wynn Las Vegas Reservation/Stay History for Kimberley Tew | | X | / | | |
| 511 | Palmer. | Wynn Las Vegas Reservation/Stay History re: Kimberley Ann Tew, arrival 09.01.2019 & departure 09.05.2019 | | X | 2/13 | | |
| 512 | Palmer | GoDaddy Domain Information re Domain Name "Global Fuel.Co" | | X | 2/13 | | |
| 513 | Palmer - | GoDaddy Domain Information re Domain Name "Sandhillrp.com" | | X | 2/13 | | |
| 514 | Palmer | AT&T Subscriber Information re phone number x1312, Michael Tew | | X | 2/13 | | |
| 515 | Palmer | AT&T Subscriber Information re phone number x7473, Michael Tew | | X | 2/13 | | |
| 516 | Palmer | AT&T Subscriber Information re phone number x2046, Kimberley Vertanen | | X | 2/13 | | |

25

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 517 | | AT&T Text Message History re phone numbers x2046 & x1312 | | | | | |
| 518 | | AT&T Records re phone number x1312 | | | | | |
| 519 | | Spreadsheet of Verizon Call Records re phone number x1709 | | | | | |
| 520 | Palmer | Google Subscriber Information re [5530 JD] Email Recovery (chrismcn@gmail.com) | | X | X 2/13 | | |
| 521 | Palmer. | Google Subscriber Information re [PM] email recovery (political.media.wdc@gmail.com) | | X | X 2/13 | | |
| 522 | Palmer. | Google Voice Record re Google Voice Number x0152 | | X | X 2/13 | | |
| 523 | | Google Subscriber Information re vtleycap@gmail.com (recovery email kley@me.com) | | | | | |
| 524 | Palmer | Google subscriber information re meyersconsultinggroupinc@gmail.com | | X | X 2/13 | | |
| 525 | Meyers. | IRS Form W-9 re [MM], dated 10.11.2018 | | . | | | |
| 526 | Telly. | Colorado Secretary of State Statement of Foreign Entity Authority re: Sand Hill LLC, filed 11.12.2018 | | X | X 2/8 | | |
| 527 | Yioulos | Plea agreement as to Jonathan Yioulos, dated 11.18.2021 | | X | X 2/5 | | |
| 528 | | Audio of 7/15/2020 Proffer with Michael Tew | | | | | |
| 529 | | Audio of 7/28/2020 Proffer with Michael Tew | | | | | |
| 530 | | Audio of 10/23/2020 Proffer with Kimberley Tew | | | | | |
| 531 | Yioulos | 07.07.2020 Photograph of Yioulos Phone Contact 'JB' | | X | X 2/5 | | |

26

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 532 | Schwartz | Email re "RE: AMEX" on 07.16.2018 | | X | X 2/9 | | |
| 533 | Schwartz | Email re "FW: Scanned Document" on 07.31.2018 | | X | X 2/9 | | |
| 534 | Alf. | Email re "RE: Wire - Michael Tew" on 08.02.2018 | | X | X 2/8 | | |
| 535 | Alf. | Email re "FW: MT AGMT" on 09.14.2018 | | X | X 2/8 | | |
| 536 | Alf. | Email re "FW: National Air Cargo Holdings Correspondence" on 09.17.2018 | | X | X 2/8 | | |
| 537 | Yioulos, Meyers, Morgan | Invoice #79487 re: [MCG] Inc for $10,000.00, dated 10.30.2018 | | X | X 2/6 | | |
| 538 | Alf. | Email re "RE: Michael Tew - AMEX" on 01.17.2019 | | X | X 2/8 | | |
| 539 | Schwartz. | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10222 for $17,955.50; & Aero Maintenance Resources Invoice #9611 for $79,292) | | X | X 2/9 | | |
| 540 | Yioulos, Morgan | Invoice #79466 re: [MCG] Inc for $30,000.00, dated 10.12.2018 | | X | X 2/6 | | |
| 541 | Yioulos, Morgan | Invoice #79488 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | | X | X 2/6 | | |
| 542 | Yioulos. | Invoice #79489 re: [MCG] Inc for $30,000.00, dated 11.30.2018 | | X | X 2/6 | | |
| 543 | Yioulos, Morgan. | Invoice #79490 re: [MCG] Inc for $25,000.00, dated 12.11.2018 | | X | X 2/6 | | |
| 544 | Telly | Colorado Secretary of State Statement of Foreign Entity Authority re: Global Fuel Logistics Inc., filed 07.11.2019 | | X | X 2/8 | | |
| 545 | Telly | IRS assignment of Employment Identification Number re Global Fuel Logistics, dated 07.09.2019 | | X | X 2/8 | | |

27

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 546 | Telly. | Wyoming Secretary of State Articles of Incorporation re Global Fuel Logistics Inc. filed 07.09.2019 | | X | X 2/8 | | |
| 547 | Telly | IRS Form SS-4 Application for Employer Identification Number re Sand Hill LLC | | X | X 2/8 | | |
| 548 | Telly. | State of New York Department of State Certification of Articles of Organization and Other Filings for Sand Hill LLC, dated 11.09.2018 | | X | X 2/8 | | |
| 549 | | Google Pay Customer Profile re kleytew@gmail.com | | | | | |
| 550 | NG. | IRS Form 1099 re SandHill Research Partners, tax years 2015 through 2018 | | X | X 2/8 | | |
| 551 | | Audio of 07.29.2020 meeting with Michael Tew at Yeti store | | | | | |
| 552 | AlC | Email re "RE: MT AGMT" on 09.14.2018 | | X | X 2/8 | | |
| 553 | | Email headers re email received by chrismcn@gmail.com on 08.22.2018 | | | | | |
| 554 | Palmer. | Spreadsheet of Apple account information re kley@me.com | | X | X 2/13 | | |
| 555 | anderson. | Photograph re Search Warrant Executed on 07.31.2020 #1 | | X | X 2/12 | | |
| 556 | anderson. | Photograph re Search Warrant Executed on 07.31.2020 #2 | | X | X 2/12 | | |
| 557 | anderson | Photograph re Search Warrant Executed on 07.31.2020 #3 | | X | X 2/12 | | |
| 558 | anderson. | Photograph re Search Warrant Executed on 07.31.2020 #4 | | X | X 2/12 | | |
| 559 | anderson | Photograph re Search Warrant Executed on 07.31.2020 #5 | | X | X 2/12 | | |

28

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 560 | anderson | Photograph re Search Warrant Executed on 07.31.2020 #6 | | X | X 2/12 | | |
| 561 | anderson | Photograph re Search Warrant Executed on 07.31.2020 #7 | | X | X 2/12 | | |
| 562 | anderson, | Wells Fargo Bank Bag | | X | X 2/12 | | |
| 563 | Hanggi | 2TB Seagate HDD Model ST20000DM001-1CH164 Serial Number W241LEZM | | K | X 2/12 | | |
| 564 | Hanggi Palmer, | Photograph re Cellebrite Processing #1 | | X | X 2/12 | | |
| 565 | Hanggi | Photograph re Cellebrite Processing #2 | | X | X 2/12 | | |
| 566 | Hanggi | Photograph re Cellebrite Processing #3 | | X | X 2/12 | | |
| 567 | Hanggi Palmer, | Photograph re Cellebrite Processing #4 | | X | X 2/12 | | |
| 568 | Hanggi | Wipe Log | | X | X 2/12 | | |
| 569 | Hanggi, Palmer. | Hash List for Apple Return | | X | X 2/12 | | |
| 570 | Palmer. | Kraken Ledger - AA70N84GI5WBRUCHI | | X | X 2/13 | | |
| 571 | AIC. | Consulting A, Effective Date 02.08.2016, signed 02.08.2016 | | X | X 2/8 | | |
| 572 | AIC. | Consulting Agreement, Effective Date 02.08.2016, signed 02.10.2016 | | X | X 2/8 | | |
| 573 | AIC. | Consulting Agreement, Effective Date 05.01.2016, signed 06.22.2016 | | X | X 2/8 | | |
| 574 | AIC | Consulting Agreement, Effective Date 08.01.2016, signed 08.23.2016 | | X | X 2/8 | | |

29

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 575 | AtC. | Consulting Agreement, Effective Date 11.01.2016, signed 12.15.2016 | | Y | X 2/8 | | |
| 576 | ATC~ | Consulting Agreement, Effective Date 05.01.2017, signed 05.01.2017 | | X | X 2/8 | | |
| 577 | | Text messages from H.S. to K.T. on 08.07.2018 12:43:34 AM UTC and 02:47:20 PM UTC | | | | | |
| 578 | | Text messages from H.S. to K.T. on 08.07.2018 01:02:41 AM UTC and 01:09:10 AM UTC | | | | | |
| 579 | | Text messages from H.S. to K.T. on 08.08.2018 | | | | | |
| 580 | | Text messages from H.S. to K.T. on 08.13.2018 | | | | | |
| 581 | | Text messages from H.S. to K.T. on 08.14.2018 | | | | | |
| 582 | | Text messages from H.S. to K.T. on 08.14.2018 | | | | | |
| 583 | Palmer. | ~~INTENTIONALLY LEFT BLANK~~ Audio - Palmer & K.Tou | | X | X 2/13 | | |
| 600 | | INTENTIONALLY LEFT BLANK | | | | | |
| 601 | Yioulos Morgan Scaife. | Email re "ACH Invoice" on 08.07.2018 ([HS] Invoice dated 08.07.2018 for $15,000) | | X | X 2/6 | | |
| 602 | Yioulos | Text messages between M.T. and J.Y. 08.07.2018 | | -X | X 2/6 | | |
| 603 | Yioulos | Email re "re ACH Invoice" on 08.08.2018 ([HS] Invoice dated 08.08.2018 for $15,000) | | X | X 2/6 | | |
| 604 | | Text messages between M.T. and J.Y. 08.08.2018 | | | | | |
| 605 | Yioulos Vanderveer | Text messages between M.T. and J.Y. 08.09.2018 | | X X | X 2/5 X 2/6 | | Portion shown - whole exh. |

30

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 606 | | Text messages between M.T. and J.Y. 08.13.2018 | | | | | |
| 607 | Yioulos Schwartz | Email re "Invoices: Michael Tew ACH August 15" on 08.14.2018 (Sand Hill Invoice #49 for $10,000 & [IHS] Invoice dated 08.14.2018 for $20,000) | | X | X 2/6 | | |
| 608 | | Text message between J.Y. and M.T on 08.10.2018 | | | | | |
| 609 | | Text message between J.Y. and M.T on 08.18.2018 | | | | | |
| 610 | | Text message between J.Y. and M.T on 08.21.2018 | | | | | |
| 611 | Yioulos | Email re "Invoice (CORRECTED)" on 08.22.2018 ([5530 JD] Invoice #7321116 for $15,000) | | X | X 2/6 | | |
| 612 | | Email re "Wire Confirmation" on 08.22.2018 | | | | | |
| 613 | Yioulos Vandeveer | Text messages between J.Y. and M.T on 08.22.2018 | | X | X 2/6 | | |
| 614 | Yiolos; Vandeveer | Text messages between J.Y. and M.T on 08.23.2018 | | X | X 2/6 | | |
| 615 | Yiolos Schwartz | Email re "re Invoice (CORRECTED)" on 08.23.2018 | | X | X 2/6 | | |
| 616 | | Emails re "re Is there an invoice for this wire out of Holdings?" on 08.24.2018 | | | | | |
| 617 | | Text messages between M.T. and JY. on 08.28.2018 | | | | | |
| 618 | Schwartz. | Email re "Confirms" on 08.30.2018 | | X | X 2/9 | | |
| 619 | | Text messages between J.Y. and K.T. on 08.30.2018 | | | | | |

31

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 620 | | Text messages between J.Y. and M.T. on 08.30.2018 | | | | | |
| 621 | | Text messages between M.T. and J.Y. on 08.31.2018 | | | | | |
| 622 | | Text messages between M.T. and J.Y. on 09.01.2018 | | | | | |
| 623 | | INTENTIONALLY LEFT BLANK | | | | | |
| 624 | Schwartz | Emails re "RE: Is there an invoice?" on 09.07.2018 | | X | X 2/9 | | |
| 625 | Yioulos, Vandeveer | Text messages between M.T. and J.Y. on 09.07.2018 | | X | X 2/6 | | |
| 626 | Schwartz | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:13pm | | X | X 2/9 | | |
| 627 | Schwartz | Email re "FW: ACH INVOICE" on 09.07.2018 at 03:14pm | | X | X 2/9 | | |
| 628 | Yioulos, Vandeveer | Text messages from J.Y. to K.T. on 09.10.2018 | | X | X 2/12 | | demonstrative only |
| 629 | Yioolos | Email (NO SUBJECT) on 09.10.2018 ([5530 JD] Invoice #7321118 for $15,000 & Invoice #7321117 for $15,000) | | X | X 2/6 | | |
| 630 | Schwartz | Emails re "RE: Scaife Invoices" on 09.10.2018 | | X | X 2/9 | | |
| 631 | Schwertz | Emails re "RE:" (NO SUBJECT) on 09.10.2018 | | X | X 2/9 | | |
| 632 | Schwartz | Email re "Cancel ACH" on 09.10.2018 | | X | X 2/9 | | |
| 633 | | Text messages between M.T. and J.Y. on 09.12.2018 | | | | | |
| 634 | | Text messages from J.Y. to K.T. on 09.12.2018 | | | | | |

32

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 635 | Yioulos, Vanderveer | Text messages from J.Y. to K.T. on 09.13.2018 | | X | X 2/12 | | demonstrative only |
| 636 | Yioulos- | Text messages between M.T. and J.Y. on 09.13.2018 | | X | X 2/6 | | |
| 637 | Yioulos, Vanderveer | Text messages from J.Y. to K.T. on 09.18.2018 | | X | X 2/12 | | demonstrative only |
| 638 | Yioulos . | Email re "Invoice" on 09.18.2018 ([5530 JD] Invoice #7321119 for $15,000) | | X | X 2/6 | | |
| 639 | Yioulos, Vanderveer | Text messages from J.Y. to K.T. on 09.18.2018 | | X | X 2/6 | | |
| 640 | | Text messages from J.Y. to K.T. on 09.28.2018 | | | | | |
| 641 | | INTENTIONALLY LEFT BLANK | | | | | |
| 642 | Yioulos . | Email re "Consulting Invoice" on 09.28.2018 ([5530 JD] Invoice #7321120 for $15,000) | | X | X 2/6 | | |
| 643 | Schwartz | Email re "RE: Invoices needed - Holdings" on 09.28.2018 | | X | X 2/9 | | |
| 644 | | Email re "Jess" on 10.01.2018 | | | | | |
| 645 | | Text message from J.Y. to M.T. on 10.09.2018 | | | | | |
| 646 | Yioulos, Vanderveer | Text messages from J.Y. to K.T. on 10.25.2018 | | X | X 2/12 | | |
| 647 | Yioulos, Morgan . | Email re "Fwd: Invoice" on 10.25.2018 | | X | X 2/6 | | |
| 648 | | Text messages between J.Y. to M.T. on 10.25.2018 | | | | | |
| 649 | Yioulos, Morgan . | Email re "Oct Invoice" on 10.30.2018 | | X | X 2/6 | | |

33

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 650 | Yioulos, Vandervere, Pulmer | Text messages between J.Y. to M.T. on 10.30.2018 | | ✗ | 2/6 | | |
| 651 | | Text messages from J.Y. to K.T. on 10.30.2018 | | | | | |
| 652 | | Text messages between J.Y. to M.T. on 10.31.2018 | | | | | |
| 653 | Schwartz | Email re "is there an invoice for this payment out of holdings?" on 10.31.2018 | | ✗ | 2/9 | | |
| 654 | Telly | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018 at 2:13pm | | ✗ | 2/8 | | |
| 655 | Telly | Email re "RE: Michael Tew: Sand Hill, LLC" on 11.05.2018, time unknown | | ✗ | 2/8 | | |
| 656 | Meyers, Vandervere | Text mess+C405ages sent from Kley (M.T.) to M.M. on 11.06.2018 | | ✗ | 2/12 | | demostrative only. |
| 657 | Yioulos, Schwartz | Email re "[MCG] LLC" on 11.06.2018 | | ✗ | 2/6 | | |
| 658 | Schwartz | Email re "RE: Invoice" on 11.09.2018 | | ✗ | 2/9 | | |
| 659 | Yioulos | Text messages between J.Y. to M.T. on 11.09.2018 | | ✗ | 2/6 | | |
| 660 | | INTENTIONALLY LEFT BLANK | | | | | |
| 661 | Telly. | Email re "RE: Entity: Sand Hill, LLC - New York" on 11.12.2018 | | ✗ | 2/8 | | |
| 662 | | Text messages between J.Y. and M.T. on 11.13.2018 | | | | | |
| 663 | | Text messages between J.Y. and M.T. on 11.15.2018 | | | | | |
| 664 | | Text messages between J.Y. and M.T. on 11.16.2018 | | | | | |

34

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 665 | Yioulos | Text messages between J.Y. and M.T. on 11.19.2018 | | X | 2 6 | | |
| 666 | Schwartz | Email re "RE: Invoice" on 11.19.2018 at 8:55pm | | X | 2 9 | | |
| 667 | | Email re "RE: Invoice" on 11.19.2018 at 9:04pm | | | | | |
| 668 | Yioulos | Text messages between J.Y. and M.T. on 11.20.2018 | | X | 2 6 | | |
| 669 | Meyers, Vanderlee | Text messages between Kley (M.T.) and M.M. on 11.20.2018 | | X | 2 12 | | demonstrative only. |
| 670 | | Text messages between J.Y. and M.T. on 11.21.2018 | | | | | |
| 671 | | Text messages between J.Y. and M.T. on 11.23.2018 | | | | | |
| 672 | | Text messages between J.Y. and M.T. on 11.25.2018 | | | | | |
| 673 | Yioulos, Vanderlee | Text messages between J.Y. and M.T. on 11.26.2018 | | X | 2 6 | | |
| 674 | Yioulos, Morgan | Email re "RE: Invoice" on 11.26.2018 at 7:22pm ([5530 JD] Invoice #7321122 for $30,000) | | X | 2 6 | | |
| 675 | Schwartz, Morgan | Email re "RE: Invoice" on 11.26.2018 at 4:22pm | | X | 2 5 | | |
| 676 | | Text messages between J.Y. and M.T. on 11.27.2018 | | | | | |
| 677 | | Email re "RE: Cash Sheet - Holdings - what's this?" on 11.28.2018 | | | | | |
| 678 | | Text message from J.Y. to M.T. on 11.30.2018 | | | | | |
| 679 | | Text messages from J.Y. to K.T. on 12.01.2018 | | | | | |

35

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 680 | Yioulos | Email re "RE: Final Invoice" on 12.03.2018 ([MCG] Invoice #79489 for $30,000) | | X | X 2/6 | | |
| 681 | Yioulos, Vanderveer | Text messages between J.Y. and M.T. on 12.04.2018 | | X | X 2/6 | | |
| 682 | | Text messages from J.Y. to K.T. on 12.04.2018 | | | | | |
| 683 | Yioulos, Morgan | Email re "Missing Meyers invoices" on 12.04.2018 ([MCG] Invoice #79489 for $30,000 & Invoice #79488 for $30,000) | | X | X 2/6 | | |
| 684 | Palmer | Text messages between J.Y. and M.T. on 12.06.2018 | | X | X 2/14 | | |
| 685 | Yioulos, Vanderveer, Palmer | Text messages from J.Y. to K.T. on 12.06.2018 | | X | X 2/12 | | demonstrative only |
| 686 | Palmer | Email re "Fwd: [PM], Inc. - Invoice for Services" on 12.07.2018 ([PM] Invoice #6516 for $21,250) | | X | X 2/13 | | |
| 687 | Yioulos, Vanderveer, Palmer | Text messages between J.Y. and M.T. on 12.07.2018 | | X | X 2/6 | | |
| 688 | Yioulos | Email re: "RE: [PM], Inc. - Invoice for Services" on 12.07.2018 | | X | X 2/6 | | |
| 689 | Yioulos, Vanderveer | Text messages between J.Y. and M.T. on 12.06.2018 | | X | X 2/6 | | |
| 690 | | Text messages between J.Y. and M.T. on 12.10.2018 | | | | | |
| 691 | Schwartz | Email re "New Vendor - Paid on Friday" on 12.10.2018 | | X | X 2/9 | | |
| 692 | Yioulos, Morgan | Email re "Re: Final Invoice" on 12.11.2018 ([MCG] Invoice #79490 for $25,000) | | X | X 2/6 | | |
| 693 | Yioulos, Vanderveer | Text messages between J.Y. and M.T. on 12.11.2018 | | X | X 2/6 | | |

36

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 694 | Yioulos | Email re "Meyers Inv" on 12.14.2018 | | X | X 2/6 | | |
| 695 | | Text messages between J.Y. and M.T. on 12.18.2018 | | | | | |
| 696 | Meyers, Vanderveen | Text messages between Kley (M.T.) and M.M. on 12.18.2018 | | X | X 2/12 | | demonstrative only. |
| 697 | Yioulos, Vanderveen | Text messages between J.Y. and M.T. on 12.19.2018 | | X | X 2/6 | | |
| 698 | | Text messages between J.Y. and M.T. on 12.20.2018 | | | | | |
| 699 | Schwartz | Email re "FW: INVOICES: MICHAEL TEW ACH AUGUST 15" on 12.20.2018 | | X | X 2/9 | | |
| 700 | Yioulos | Email re "FW: [PM], Inc. - Invoice for Services" on 12.20.2018 ([PM] Invoice #6517 for $15,125) | | X | X 2/6 | | |
| 701 | | Text messages between J.Y. and M.T. on 12.21.2018 | | | | | |
| 702 | | Text messages between J.Y. and M.T. on 01.07.2019 | | | | | |
| 703 | Yioulos. | Email re "Invoice from [PM], Inc." on 01.07.2019 ([PM] Invoice #6540 for $15,312.50) | | X | X 2/6 | | |
| 704 | | Text messages between J.Y. and M.T. on 01.09.2019 | | | | | |
| 705 | Yioulos, Vanderveen | Text messages between J.Y. and M.T. on 01.10.2019 | | X | X 2/6 | | |
| 706 | Yioulos | Email re "Invoice from [PM], Inc." on 01.10.2019 ([PM] Invoice #6670 for $25,350) | | X | X 2/6. | | |
| 707 | Yioulos, Vanderveen, Palmer | Text messages between J.Y. and M.T. on 01.17.2019 | | X | X 2/6 | | |
| 708 | Yioulos, Vanderveen, Palmer | Text messages from J.Y. to K.T. on 01.17.2019 | | X | X 2/12 | | demonstrative only. |

37

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 709 | Schwartz | Email re "FW: Invoice from [PM], Inc." on 01.17.2019 | | ✗ | ✗ 2/G | | |
| 710 | | Text messages between J.Y. and M.T. on 01.18.2019 | | | | | |
| 711 | Yioulos | Email re "Invoice from [PM], Inc." on 01.18.2019 ([PM] Invoice #6712 for $27,562.50) | | ✗ | ✗ 2/6 | | |
| 712 | | Text messages between J.Y. and M.T. on 01.23.2019 | | | | | |
| 713 | Schwartz | Email re "Invoice from [PM], Inc." on 01.23.2019 ([PM] Invoice #6714 for $21,000 & Invoice #6712 for $28,000) | | ✗ | ✗ 2/9 | | |
| 714 | Schwartz | Email re "FW: Invoice from [PM], Inc." on 01.25.2019 | | ✗ | ✗ 2/G | | |
| 715 | Yioulos,Vandervee | Text messages from J.Y. to K.T. on 02.07.2019 | | ✗ | ✗ 2/2 | | demonstative only |
| 716 | Yioulos, Morgan | Email re "Invoice from [PM], Inc." on 02.07.2019 ([PM] Invoice #6775 for $15,250) | | ✗ | ✗ 2/6 | | |
| 717 | Yioulos,Vandervee | Text messages between J.Y. and M.T. on 02.19.2019 | | ✗ | ✗ 2/6 | | |
| 718 | Yioulos,Vandervee | Text messages from J.Y. to K.T. on 02.19.2019 | | ✗ | ✗ 2/12 | | demonstratie only |
| 719 | Yioulos,Morgan | Email re "Invoice from [PM], Inc." on 02.19.2019 ([PM] Invoice #6786 for $15,250) | | ✗ | ✗ 2/6 | | |
| 720 | Schwartz | Email re "FW: Invoice from [PM], Inc." on 02.21.2019 | | ✗ | ✗ 2/9 | | |
| 721 | | Text messages between J.Y. and M.T. on 02.24.2019 | | | | | |
| 722 | | Text messages between J.Y. and M.T. on 03.01.2019 | | | | | |
| 723 | Yioulos | Email re "Invoice from [PM], Inc." on 03.04.2019 ([PM] Invoice #6804 for $37,800) | | ✗ | ✗ 2/6 | | |

38

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 724 | | Text messages between Kley (M.T.) and K.T. on 03.06.2019 | | | | | |
| 725 | Yiaulos | Email re "FW: Invoice from [PM], Inc." on 03.07.2019 | | X | X 2/6 | | |
| 726 | | Text messages between Kley (M.T.) and K.T. on 03.14.2019 | | | | | |
| 727 | Yiaulos | Email re "Invoice from [PM], Inc." on 03.14.2019 ([PM] Invoice #6881 for $31,500) | | X | X 2/6 | | |
| 728 | Schwartz | Email re "FW: Invoice from [PM], Inc." on 03.15.2019 | | X | X 2/9 | | |
| 729 | | Text messages between Kley (M.T.) and K.T. on 03.17.2019 | | | | | |
| 730 | Vanderveer, Palmer | Text messages between Kley (M.T.) and K.T. on 03.18.2019 | | X | X 2/12 | | |
| 731 | Yiaulos, Palmer | Text messages between J.Y. and M.T. on 03.18.2019 | | X | X 2/6 | | |
| 732 | Yiaulos | Email re "Invoice from [PM], Inc." on 03.18.2019 ([PM] Invoice #6910 for $20,250) | | X | X 2/6 | | |
| 733 | Yiaulos | Email re "FW: Invoice from [PM], Inc." on 03.19.2019 | | X | X 2/6 | | |
| 734 | | Text messages between J.Y. and M.T. on 03.19.2019 | | | | | |
| 735 | | Text messages between Kley (M.T.) and K.T. on 03.19.2019 | | | | | |
| 736 | | Text messages between M.T. and K.T. on 03.28.2019 | | | | | |
| 737 | Yiaulos, Morgan | Email re "Invoice from [PM], Inc." on 03.28.2019 ([PM] Invoice #6976 for $38,000) | | X | X 2/6 | | |

39

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 738 | | INTENTIONALLY LEFT BLANK | | | | | |
| 739 | | Text messages between Kley (M.T.) and K.T. on 03.30.2019 | | | | | |
| 740 | Vanderveer, Palmer | Text messages between Kley (M.T.) and K.T. on 04.03.2019 | | X | X 2/12 | | |
| 741 | Yioulos, Palmer. | Text messages between J.Y. and M.T. on 04.03.2019 | | X | X 2/6 | | |
| 742 | Yioulos, Palmer. | Email re "Invoice from [PM], Inc." on 04.03.2019 ([PM] Invoice #6910 for $30,150) | | X | X 2/6 | | |
| 743 | Schwartz Morgan, | Email re "FW: Invoice from [PM], Inc." on 04.04.2019 ([PM] Invoice #7004 for 11,250) | | X | X 2/9 | | |
| 744 | | INTENTIONALLY LEFT BLANK | | | | | |
| 745 | | Text messages between J.Y. and M.T. on 04.07.2019 | | | | | |
| 746 | | Text messages between Kley (M.T.) and K.T. on 04.07.2019 | | | | | |
| 747 | Yioulos Vanderveel | Text messages between J.Y. and M.T. on 04.08.2019 | | X | X 2/6 | | |
| 748 | Yioulos. | Email re "Invoice from [PM], Inc." on 04.08.2019 ([PM] Invoice #7101 for $37,500) | | X | X 2/6 | | |
| 749 | Yioulos | Email re "re Invoice from [PM], Inc." on 04.09.2019 | | X | X 2/6 | | |
| 750 | | INTENTIONALLY LEFT BLANK | | | | | |
| 751 | | Text messages between M.T. and K.T. on 04.11.2019 | | | | | |
| 752 | Meyers, Vanderveer. | Text messages from Kley (M.T.) to M.M. on 04.12.2019 | | X | X 2/12 | | demonestrative only. |

40

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 753 | | Text messages between M.T. and K.T. on 04.12.2019 | | | | | |
| 754 | | Text messages between J.Y. and M.T. on 04.13.2019 | | | | | |
| 755 | | Text messages between M.T. and K.T. on 04.16.2019 | | | | | |
| 756 | | Text messages between M.T. and K.T. on 04.17.2019 | | | | | |
| 757 | | INTENTIONALLY LEFT BLANK | | | | | |
| 758 | | Text messages between M.T. and Kley (K.T.) on 04.21.2019 | | | | | |
| 759 | | Text messages between M.T. and K.T. on 04.22.2019 | | | | | |
| 760 | Vanderveer. Palmer. | Text messages between Kley (M.T.) and K.T. on 04.23.2019 | | X | X 2/12 | | |
| 761 | | Text message from J.Y. to M.T. on 04.24.2019 | | | | | |
| 762 | | Text messages between M.T. and K.T. on 04.24.2019 | | | | | |
| 763 | | INTENTIONALLY LEFT BLANK | | | | | |
| 764 | Ticatos | Email re "Invoice from [PM], Inc." on 04.29.2019 ([PM] Invoice #7156 for $75,000 and Invoice #7158 for $39,780) | | X | X 2/6 | | |
| 765 | Ticatos | Email re "FW: Invoice from [PM], Inc." on 04.29.2019 | | X | X 2/6 | | |
| 766 | | Text messages between Kley (M.T.) and K.T. on 04.30.2019 | | | | | |

41

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 767 | | Text messages between M.T. and K.T. on 05.01.2019 | | | | | |
| 768 | | Text messages between M.T. and K.T. on 05.02.2019 | | | | | |
| 769 | | Text messages between M.T. and K.T. on 05.06.2019 | | | | | |
| 770 | | Text messages between J.Y. and M.T. on 05.07.2019 | | | | | |
| 771 | | Text messages between M.T. and K.T. on 05.08.2019 | | | | | |
| 772 | | Text messages between Kley (M.T.) and K.T. on 05.09.2019 | | | | | |
| 773 | | Text messages between Kley (M.T.) and K.T. on 05.10.2019 | | | | | |
| 774 | Youlos, Vandervee. | Text messages between J.Y. and M.T. on 05.10.2019 | | X | 2 16 | | |
| 775 | Youlos, Vandervee | Text messages between J.Y. and M.T. on 05.15.2019 | | X | 2 16 | | |
| 776 | Vandervee. Palma. | Text messages between M.T. and K.T. on 05.20.2019 | | X | 2 12 | | |
| 777 | | Text messages between M.T. and Kley (K.T.) on 05.21.2019 | | | | | |
| 778 | | Text messages between M.T. and Kley (K.T.) on 05.22.2019 | | | | | |
| 779 | | Text messages between M.T. and K.T. on 05.27.2019 | | | | | |
| 780 | | Text messages between M.T. and K.T. on 05.28.2019 | | | | | |
| 781 | | Text messages between J.Y. and M.T. on 06.03.2019 | | | | | |

42

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 782 | | Text messages between Kley (M.T.) and K.T. on 06.03.2019 | | | | | |
| 783 | | Email re "Journal Entry Testing" on 06.04.2019 | | | | | |
| 784 | Vanderveer Palmer. | Text messages between M.T. and K.T. on 06.07.2019 | | X | 2/12 X | | |
| 785 | | Text messages between M.T. and K.T. on 06.10.2019 | | | | | |
| 786 | Yioulos, Vanderveer Palmer. | Text messages between J.Y. and M.T. on 06.12.2019 | | X | 2/6 X | | |
| 787 | Vanderveer, Palmer. | Text messages between Kley (M.T.) and K.T. on 06.12.2019 | | X | 2/12 X | | |
| 788 | Yioulos, Vanderveer. | Text messages between J.Y. and M.T. on 06.13.2019 | | X | 2/6 X | | |
| 789 | | Text messages between M.T. and K.T. on 06.13.2019 | | | | | |
| 790 | | Text messages between M.T. and K.T. on 06.18.2019 | | | | | |
| 791 | | INTENTIONALLY LEFT BLANK | | | | | |
| 792 | Palmer. | Text messages between M.T. and K.T. on 06.24.2019 | | | | | |
| 793 | | Text messages between M.T. and K.T. on 06.25.2019 | | | | | |
| 794 | | Text messages between M.T. and K.T. on 06.26.2019 and 06.27.2019 | | | | | |
| 795 | Yioulos. | Text messages between J.Y. and M.T. on 06.26.2019 | | X | 2/6 X | | |
| 796 | Yioulos. | Text messages between J.Y. and M.T. on 06.28.2019 | | X | 2/6 X | | |

43

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 797 | | Text messages between M.T. and K.T. on 06.28.2019 | | | | | |
| 798 | | Text messages between M.T. and K.T. on 06.29.2019 | | | | | |
| 799 | Telly | Email re "RE: Please assist" on 07.11.2019 | | X | 2/8 | | |
| 800 | | Text messages between M.T. and K.T. on 07.02.2019 | | | | | |
| 801 | Nicolos | Emails re "Invoice From [PM], Inc." on 07.03.2019 ([PM] Invoice #7201 for $40,000; Invoice #7263 for $10,100; Invoice #7312 for $9,500; & Invoice #7322 for $30,000) | | X | 2/6 | | |
| 802 | | Text messages between M.T. and K.T. on 07.04.2019 | | | | | |
| 803 | | INTENTIONALLY LEFT BLANK | | | | | |
| 804 | Meyers Vandervell Palmer | Text messages between M.T. and K.T. on 07.07.2019 | | X | 2/12 | | p. 3 demonstrative only. |
| 805 | Meyers, Vanderveer Palmer | Text messages between M.T. and K.T. on 07.07.2019 | | X | 2/12 | | demonstrative only, p. 2 |
| 806 | | Text messages between J.Y. and M.T. on 07.08.2019 | | | | | |
| 807 | | Emails re "Re: Please assist" on 07.08.2019 | | | | | |
| 808 | | Emails re "Re: Please assist" on 07.09.2019 | | | | | |
| 809 | | Text messages between M.T. and K.T. on 07.09.2019 | | | | | |
| 810 | | Text messages between M.T. and K.T. on 07.11.2019 | | | | | |

44

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 811 | | Text messages between M.T. and K.T. on 07.17.2019 | | | | | |
| 812 | | Text messages between M.T. and K.T. on 07.18.2019 | | | | | |
| 813 | | Text messages between J.Y. and M.T. on 07.19.2019 | | | | | |
| 814 | | Text messages between J.Y. and M.T. on 07.22.2019 | | | | | |
| 815 | | Text messages between M.T. and K.T. on 07.29.2019 | | | | | |
| 816 | | Text messages between J.Y. and M.T. on 07.30.2019 | | | | | |
| 817 | Yioulos, Vandervegt Text messages between J.Y. and M.T. on 08.01.2019 | | | X | X 2/6 | | |
| 818 | | Text messages between J.Y. and M.T. on 08.03.2019 | | | | | |
| 819 | | Text messages between M.T. and K.T. on 08.04.2019 | | | | | |
| 820 | Yioulos, Vandervegt Text messages between J.Y. and M.T. on 08.05.2019 | | | X | X 2/6 | | |
| 821 | | Text messages between M.T. and K.T. on 08.05.2019 | | | | | |
| 822 | | Text messages between M.T. and K.T. on 08.06.2019 | | | | | |
| 823 | | Text messages between J.Y. and M.T. on 08.06.2019 | | | | | |
| 824 | | Text messages between M.T. and K.T. on 08.11.2019 | | | | | |
| 825 | | Text messages between M.T. and K.T. on 08.13.2019 | | | | | |

45

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 826 | | Text messages between J.Y. and M.T. on 08.13.2019 | | | | | |
| 827 | | Text messages between J.Y. and M.T. on 08.14.2019 | | | | | |
| 828 | Yeulos | Text messages between J.Y. and M.T. on 08.15.2019 | | X | X 2/6 | | |
| 829 | Vandervuer. | Text messages between M.T. and K.T. on 08.18.2019 | | | | | |
| 830 | Yioulos, Vanderveer. | Text messages between J.Y. and M.T. on 08.19.2019 | | X | X 2/6 | | |
| 831 | | Text messages between J.Y. and M.T. on 08.20.2019 | | | | | |
| 832 | Yioulos. | Text messages between J.Y. and M.T. on 08.21.2019 | | X | X 2/6 | | |
| 833 | Yioulos, Vanderveer. | Text messages between J.Y. and M.T. on 08.22.2019 | | X | X 2/6 | | |
| 834 | | Text messages between M.T. and K.T. on 08.22.2019 | | | | | |
| 835 | | Text messages between M.T. and K.T. on 08.23.2019 | | | | | |
| 836 | | Text messages between M.T. and K.T. on 08.25.2019 | | | | | |
| 837 | Yioulos, Vanderveer. | Text messages between J.Y. and M.T. on 08.26.2019 | | X | X 2/6 | | |
| 838 | | Text messages between M.T. and K.T. on 08.26.2019 | | | | | |
| 839 | | Text messages between M.T. and K.T. on 08.27.2019 | | | | | |
| 840 | | Text messages between M.T. and K.T. on 08.28.2019 | | | | | |

46

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 841 | Yioulos Schwartz Morgan. | Email re "Invoices from Global Fuel Logistics, Inc" on 08.28.2019 (Global Fuel Logistics Invoice #987 for #9,500; Invoice #972 for $94,500; & Invoice #763 for $152,000) | | X | X 2/6 | | |
| 842 | Vanderveen, Palmer | Text messages between M.T. and K.T. on 08.29.2019 | | X | X 2/12 | | |
| 843 | Schwartz | Emails re "RE: 8/29 Wires" on 08.29.2019 | | X | X 2/9 | | |
| 844 | Yioulos, Morgan | Email re "Global Fuel - Updated Invoice" on 08.29.2019 (Global Fuel Logistics Invoice #1001 for $55,000) | | X | X 2/6 | | |
| 845 | Yioulos, Morgan. | Email re "Invoices from Global Fuel Logistics, Inc" on 08.29.2019 (Global Fuel Logistics Invoice #1023 for $45,000; Invoice #1011 for $45,000; & Invoice #1001 for $56,000) | | X | X 2/6 | | |
| 846 | | Text messages between M.T. and K.T. on 08.30.2019 | | | | | |
| 847 | | INTENTIONALLY LEFT BLANK | | | | | |
| 848 | | Text messages between M.T. and K.T. on 09.06.2019 | | | | | |
| 849 | | Text messages between M.T. and K.T. on 09.07.2019 | | | | | |
| 850 | | Text messages between M.T. and K.T. on 09.08.2019 | | | | | |
| 851 | Vanderveer. | Text messages between J.Y. and M.T. on 09.09.2019 | | | | | |
| 852 | | Text messages between M.T. and K.T. on 09.09.2019 | | | | | |
| 853 | | Text messages between M.T. and K.T. on 09.10.2019 | | | | | |

47

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 854 | | Text messages between M.T. and K.T. on 09.13.2019 | | | | | |
| 855 | | Text messages between M.T. and K.T. on 09.14.2019 | | | | | |
| 856 | | Text messages between J.Y. and M.T. on 09.16.2019 | | | | | |
| 857 | Yioulos, Vandeveer | Text messages between J.Y. and M.T. on 09.17.2019 | | X | X 2/6 | | |
| 858 | Yioulos, Vandeveer | Text messages between J.Y. and M.T. on 09.18.2019 | | X | X 2/6 | | |
| 859 | | Text messages between M.T. and K.T. on 09.18.2019 | | | | | |
| 860 | | Text messages between M.T. and K.T. on 09.22.2019 | | | | | |
| 861 | | Text messages between M.T. and K.T. on 09.23.2019 | | | | | |
| 862 | | Text messages between J.Y. and M.T. on 09.25.2019 | | | | | |
| 863 | Yioulos, Vandeveer | Text messages between J.Y. and M.T. on 09.26.2019 | | X X | X 2/5 X 2/6 | | (portion shown) whole exh. |
| 864 | Palmer. | Text messages between M.T. and K.T. on 09.26.2019 | | . | | | |
| 865 | Yioulos, Vandeveer | Text messages between J.Y. and M.T. on 09.27.2019 | | X | X 2/6 | | |
| 866 | | Text messages between M.T. and K.T. on 09.28.2019 | | | | | |
| 867 | | Text messages between M.T. and K.T. on 09.30.2019 | | | | | |
| 868 | | INTENTIONALLY LEFT BLANK | | | | | |

48

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 869 | | Text messages between M.T. and K.T. on 10.02.2019 | | | | | |
| 870 | | INTENTIONALLY LEFT BLANK | | | | | |
| 871 | | Text messages between M.T. and K.T. on 10.05.2019 | | | | | |
| 872 | | Text messages between M.T. and K.T. on 10.07.2019 | | | | | |
| 873 | | Text messages between M.T. and K.T. on 10.08.2019 | | | | | |
| 874 | | Text messages between M.T. and K.T. on 10.09.2019 | | | | | |
| 875 | Yioulos. | Email re "Invoices from Aero Maintenance Resources" on 10.11.2019 (Aero Maintenance Resources Invoice #697 for $112,750; Invoice #634 for $75,000; & Invoice #627 for $141,450) | | X | Y 2/6 | | |
| 876 | | Text messages between M.T. and K.T. on 10.11.2019 | | | | | |
| 877 | | Text messages between M.T. and K.T. on 10.15.2019 | | | | | |
| 878 | | INTENTIONALLY LEFT BLANK | | | | | |
| 879 | | Text messages between M.T. and K.T. on 10.19.2019 | | | | | |
| 880 | | Text messages between M.T. and K.T. on 10.20.2019 | | | | | |
| 881 | | Text messages between M.T. and K.T. on 10.21.2019 | | | | | |
| 882 | | Text messages between M.T. and K.T. on 10.22.2019 | | | | | |

49

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 883 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 10.25.2019 | | X | ✗ 2/12 | | |
| 884 | | Text messages between M.T. and K.T. on 10.25.2019 | | | | | |
| 885 | Vanderveer Palmer. | Text messages between M.T. and K.T. on 10.31.2019 | | X | ✗ 2/12 | | |
| 886 | Vanderveer Palmer. | Text messages between M.T. and K.T. on 11.01.2019 | | ✗ | ✗ 2/12 | | |
| 887 | Yioulos Morgan Palmer | Email re "Invoices from Aero Maintenance Resources" on 11.11.2019 (Aero Maintenance Resources Invoice #1017 for $110,000; Invoice #1021 for $100,000; & Invoice #1103 for $66,750) | | X | ✗ 2/6 | | |
| 888 | | Text messages between M.T. and K.T. on 11.13.2019 | | | | | |
| 889 | | Text messages between M.T. and K.T. on 11.14.2019 | | | | | |
| 890 | | Text messages between M.T. and K.T. on 11.19.2019 | | | | | |
| 891 | | Text messages between M.T. and K.T. on 11.20.2019 | | | | | |
| 892 | | Text messages between M.T. and K.T. on 11.21.2019 | | | | | |
| 893 | | Text messages between M.T. and K.T. on 11.22.2019 | | | | | |
| 894 | | Text messages between M.T. and K.T. on 11.25.2019 | | | | | |
| 895 | Vanderveer Palmer. | Text messages between M.T. and K.T. on 12.01.2019 | | ✗ | ✗ 2/12 | | |
| 896 | Vanderveer Palmer. | Text messages between M.T. and K.T. on 12.02.2019 | | X | ✗ 2/12 | | |

50

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 897 | Vandeveer. | Text messages between M.T. and K.T. on 12.03.2019 | | X | X 2/12 | | |
| 898 | | Text messages between M.T. and K.T. on 12.04.2019 | | | | | |
| 899 | | Text messages between M.T. and K.T. on 12.06.2019 | | | | | |
| 900 | | INTENTIONALLY LEFT BLANK | | | | | |
| 901 | Vandeveer. Palmer. | Text messages between M.T. and K.T. on 12.11.2019 | | X | X 2/12 | | |
| 902 | Vandeveer. | Text messages between M.T. and K.T. on 12.13.2019 | | X | X 2/12 | | |
| 903 | Tioulos Morgan | Email re "Invoices from Aero Maintenance Resources" on 12.17.2019 (Aero Maintenance Resources Invoice #2110 for $49,750; Invoice #2325 for $83,400; & Invoice #2392 for $85,250) | | X | X 2/6 | | |
| 904 | | Text messages between M.T. and K.T. on 12.20.2019 | | | | | |
| 905 | | Text messages between M.T. and K.T. on 12.21.2019 | | | | | |
| 906 | | Text messages between M.T. and K.T. on 12.30.2019 | | | | | |
| 907 | | Text messages between M.T. and K.T. on 12.31.2019 | | | | | |
| 908 | | Text messages between M.T. and K.T. on 01.03.2020 | | | | | |
| 909 | | Text messages between M.T. and K.T. on 01.07.2020 | | | | | |
| 910 | | Text messages between M.T. and K.T. on 01.08.2020 | | | | | |

51

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 911 | | Text messages between M.T. and K.T. on 01.09.2020 | | | | | |
| 912 | Yvoulos, Morgan | Email re "Invoices from Aero Maintenance Resources" on 01.09.2020 (Aero Maintenance Resources Invoice #2515 for $79,950; Invoice #2479 for $87,200; & Invoice #2601 for $148,200) | | X | X 2/6 | | |
| 913 | | Text messages between M.T. and K.T. on 01.10.2020 | | | | | |
| 914 | | Text messages between M.T. and K.T. on 01.11.2020 | | | | | |
| 915 | Vandeveer. | Text messages between M.T. and K.T. on 01.13.2020 | | X | X 2/12 | | |
| 916 | | Text messages between M.T. and K.T. on 01.16.2020 | | | | | |
| 917 | Vandeveer. Palmer | Text messages between M.T. and K.T. on 01.17.2020 | | X | X 2/12 | | |
| 918 | | Text messages between M.T. and K.T. on 01.22.2020 | | | | | |
| 919 | | Text messages between M.T. and K.T. on 01.26.2020 | | | | | |
| 920 | | Text messages between M.T. and K.T. on 01.28.2020 | | | | | |
| 921 | | Text messages between M.T. and K.T. on 01.29.2020 | | | | | |
| 922 | | Text messages between M.T. and K.T. on 01.31.2020 | | | | | |
| 923 | | Text messages between M.T. and K.T. on 02.01.2020 | | | | | |
| 924 | | Text messages between M.T. and K.T. on 02.05.2020 | | | | | |

52

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 925 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 02.12.2020 | | X | X 2/12 | | |
| 926 | | Text messages between M.T. and K.T. on 02.13.2020 | | | | | |
| 927 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 02.15.2020 | | X | X 2/12 | | |
| 928 | Yiaulos | Email re "Invoices from Aero Maintenance Resources" on 02.18.2020 (Aero Maintenance Resources Invoice #2807 for $15,689; & Invoice #2753 for $99,211) | | X | X 2/6 | | |
| 929 | | Text messages between M.T. and K.T. on 02.25.2020 | | | | | |
| 930 | | Text messages between M.T. and K.T. on 02.26.2020 | | | | | |
| 931 | Palmer | Text messages between M.T. and K.T. on 03.03.2020 | | X | X 2/13 | | |
| 932 | Vanderveer. | Text messages between M.T. and K.T. on 03.06.2020 | | X | X 2/12 | | |
| 933 | Yioulos, Morgan | Email re "Invoices from Aero Maintenance Resources" on 03.09.2020 (Aero Maintenance Resources Invoice #3004 for $95,000; Invoice #2987 for $33,520; & Invoice #2901 for $90,180) | | X | X 2/6 | | |
| 934 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 03.10.2020 | | X | X 2/12 | | |
| 935 | Yioulos Morgan | Email re "Aero Maintenance Invoices for February 2020" on 03.11.2020 (Aero Maintenance Resources Invoice #2990 for $73,000) | | X | X 2/6 | | |
| 936 | | Text messages between M.T. and K.T. on 03.11.2020 | | | | | |
| 937 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 03.17.2020 | | X | X 2/12 | | |

53

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 938 | Vanderveer - Palmer. | Text messages between M.T. and K.T. on 03.18.2020 | | X | X 2/12 | | |
| 939 | Tiodos, Palmer. | Email re NO SUBJECT on 03.19.2020 | | X | X 2/6 | | |
| 940 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 03.20.2020 | | X | X 2/12 | | |
| 941 | Vanderveer, Palmer. | Text messages between M.T. and K.T. on 03.22.2020 | | X | X 2/12 | | |
| 942 | Vanderveer - Palmer. | Text messages between M.T. and K.T. on 03.23.2020 | | X | X 2/12 | | |
| 943 | Palmer | Text messages between M.T. and K.T. on 03.28.2020 | | | | | |
| 944 | Vanderveer . | Text messages between M.T. and K.T. on 03.30.2020 | | X | X 2/12 | | |
| 945 | | Text messages between M.T. and K.T. on 04.01.2020 | | | | | |
| 946 | Vanderveer. | Text messages between M.T. and K.T. on 04.02.2020 | | X | X 2/12 | | |
| 947 | | Text messages between M.T. and K.T. on 04.05.2020 | | | | | |
| 948 | | Text messages between M.T. and K.T. on 04.06.2020 | | | | | |
| 949 | | Text messages between M.T. and K.T. on 04.08.2020 | | | | | |
| 950 | Tiodos, Morgan | Email re "Invoices for Aero Maintenance Resources" on 04.14.2020 (Aero Maintenance Resources Invoice #4001 for $87,045; & Invoice #3176 for $127,155) | | X | X 2/6 | | |
| 951 | | Text messages between M.T. and K.T. on 04.14.2020 | | | | | |

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 952 | Yioulos, Morgan | Email re "Aero Maintenance Invoices for April 2020" on 04.16.2020 (Aero Maintenance Resources Invoice #5120 for $105,603; & Invoice #4784 for $114,685) | | X | X 2/6 | | |
| 953 | Tioulos, Morgan | Email re "Invoice for Global Fuel Logistics, Inc." on 04.27.2020 (Global Fuel Logistics Invoice #7988 for $124,785) | | X | X 2/6 | | |
| 954 | Yioulos, Morgan | Email re "Invoice for Aero Maintenance Resources 2 March 2020" on 05.04.2020 (Aero Maintenance Resources Invoice #3101 for $61,255) | | X | X 2/6 | | |
| 955 | Yioulos, Morgan | Email re "Invoice for Global Fuel Logistics, Inc." on 05.11.2020 (Global Fuel Logistics Invoice #8011 for $83,090) | | X | X 2/6 | | |
| 956 | | Text messages between M.T. and K.T. on 05.12.2020 | | | | | |
| 957 | | Text messages between M.T. and K.T. on 05.23.2020 | | | | | |
| 958 | Vanderveer . | Text messages between M.T. and K.T. on 05.28.2020 | | X | X 2/1,2 | | |
| 959 | Yioulos, Morgan | Email re "Invoices for May 2020" on 06.03.2020 (Aero Maintenance Resources Invoice #8888 for $153,725; Global Fuel Logistics Invoice #9014 for $159,882; & Global Fuel Logistics Invoice #9071 for $164,065) | | X | X 2/6 | | |
| 960 | Vanderveer . | Text messages between M.T. and K.T. on 06.07.2020 | | X | X 2/12 | | |
| 961 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 06.09.2020 | | X | X 2/12 | | |
| 962 | | Text messages between M.T. and K.T. on 06.10.2020 | | | | | |
| 963 | | Text messages between M.T. and K.T. on 06.11.2020 | | | | | |

55

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 964 | Vanderveer | Text messages between M.T. and K.T. on 06.16.2020 | | X | X 2/12 | | |
| 965 | | Text messages between M.T. and K.T. on 06.17.2020 | | | | | |
| 966 | Vanderveer. | Text messages between M.T. and K.T. on 06.24.2020 | | X | X 2/12 | | |
| 967 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 06.25.2020 | | X | X 2/12 | | |
| 968 | | Text messages between M.T. and K.T. on 06.26.2020 | | | | | |
| 969 | Yioulos | Email re "Invoices for June 2020" on 06.30.2020 (Global Fuel Logistics Invoice #10101 for $170,274.50; Aero Maintenance Resources Invoice #9302 for $194,803; & Global Fuel Logistics Invoice #11812 for $127,264) | | X | X 2/6 | | |
| 970 | Vanderveer. | Text messages between M.T. and K.T. on 06.29.2020 | | X | X 2/12 | | |
| 971 | | Text messages between M.T. and K.T. on 07.01.2020 | | | | | |
| 972 | Yioulos. Palmer. | Text messages between J.Y. and K.T. on 07.01.2020 | | X | X 2/6 | | |
| 973 | Morgan. | Email re "Invoice for July 1 2020" on 07.02.2020 (Global Fuel Logistics Invoice #10226 for $95,000) | | X | X 2/12 | | |
| 974 | Yioulos. | Audio recording of consensual phone call between J.Y. and M.T. on 07.07.2020 | | X | X 2/6 | | |
| 975 | Yioulos | Audio recording of consensual phone call between J.Y. and M.T. on 07.08.2020 | | X | X 2/7 | | |
| 976 | Yioulos | Text messages between J.Y. and M.T. on 07.08.2020 | | X | X 2/7 | | |
| 977 | | INTENTIONALLY LEFT BLANK | | | | | |

56

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 978 | Schwartz | Email re Kimberley Tew $10,000 Invoice, dated 12.31.2018 | | X | X 2/8 | | |
| 979 | Schwartz | Email re ACH Payment Questions, dated 04.17.2019 | | X | X 2/9 | | |
| 980 | Palmer | Email re Lululemon Order Confirmation to Amy Tew, dated 11.04.2018 | | X | X 2/13 | | |
| 981 | Palmer | Email re Lilly Pulitzer Shipping Confirmation to Amy Tew, dated 10.18.2018 | | X | | | |
| 982 | Palmer | Email re Lilly Pulitzer Order Confirmation to Amy Tew, dated 10.17.2018 | | X | | | |
| 983 | Palmer | Email re Saks Fifth Avenue Order Confirmation to Amy Tew, dated 10.18.2018 | | X | | | |
| 984 | Palmer | Email re Zappos Order Confirmation to Amy Tew, dated 11.03.2018 | | X | | | |
| 985 | Palmer | Email re Kimberley Tew Introduction & Contact Information, dated 01.30.2018 | | X | X 2/13 | | |
| 986 | Yioulos | Invoice #001 re Kimberley Tew for $10,000.00, dated 02.08.2018 | | X | X 2/5 | | |
| 987 | | Transcript of consensual phone call between J.Y. and M.T. on 07.07.2020 | | | | | |
| 988 | | Transcript of consensual phone call between J.Y. and M.T. on 07.08.2020 | | | | | |
| 989 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 08.28.2019 | | X | X 2/12 | | |
| 990 | Vanderveer. Palmer. | Text messages between M.T. and K.T. on 09.18.2019 | | X | X 2/12 | | |
| 991 - 999 | | INTENTIONALLY LEFT BLANK | | | | | |

57

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1000 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1001 | Morgan. | Account Owners and Signors for Relevant Bank Accounts | | X | X 2/12 | | |
| 1002 | Morgan. | Payments of Fraudulent Invoices by NAC between August 2018 and July 2020 | | X | X 2/13 | | |
| 1003 | Morgan. | Deposits of Fraudulent Invoices by NAC between August 2018 and July 2020 | | X | X 2/13 | | |
| 1004 | Morgan. | Summary of [HS CPA, [MCG], and [5530 JD] Invoices and Payments | | | | | demonstrative only. |
| 1005 | Morgan | Summary of [PM] Invoices and Payments | | | | | demonstrative only. |
| 1006 | Morgan | Summary of Global Fuel Logistics Invoices and Payments | | | | | demonstrative only. |
| 1007 | Morgan. | Summary of Aero Maintenance Resources Invoices and Payments | | | | | demonstrative only. |
| 1008 | Palmer. | Summary - Calendar of Events | | X | X 2/13 | | PP 1-27. only. |
| 1009 | Palmer. | Summary - Count 42 | | | | | demonstrative only |
| 1010 | Palmer. | Summary - Count 43 | | | | | demonstrative only. |
| 1011 | Palmer | Summary - Count 44 | | | | | demonstrative |
| 1012 | Palmer. | Summary - Count 45 | | | | | demonstrative only |
| 1013 | Palmer. | Summary - Count 46 | | | | | demonstrative only |
| 1014 | Palmer. | Summary - Count 47 | | | | | " " |

58

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1015 | Palmer | Summary - Count 48 | | | | | demonstrative only. |
| 1016 | Palmer. | Summary - Count 49 | | | | | do " " |
| 1017 | Palmer. | Summary - Count 50 | | | | | " " |
| 1018 | Palmer | Summary - Count 51 | | | | | " " |
| 1019 | Palmer. | Summary - Count 52 | | | | | " " |
| 1020 | Palmer. | Summary - Count 53 | | | | | " " |
| 1021 | Palmer. | Summary - Count 54 | | | | | " " |
| 1022 | Palmer. | Summary - Count 55 | | | | | " " |
| 1023 | Palmer | Summary - Count 56 | | | | | " " |
| 1024 | Palmer. | Summary - M. Tew Transactions and Photographs | | | | | demonstrative only |
| 1025 | Palmer | Summary - K. Tew Transactions and Photographs | | | | | demonstrative only. |
| 1026 | Palmer | Summary - M. and K. Tew Transactions and Photographs | | | | | demonstrative only. |
| 1027 - 1099 | | INTENTIONALLY LEFT BLANK | | | | | |
| 1100 | | Certificate of Authenticity for Atlantic Union Bank | | | | | |
| 1101 | | Certificate of Authenticity for ANB Bank | | | | | |

59

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| 1102 | | Certificate of Authenticity for ANB Bank | | | | | |
| 1103 | | Certificate of Authenticity for BBVA | | | | | |
| 1104 | | Certificate of Authenticity for BBVA | | | | | |
| 1105 | | Certificate of Authenticity for Guaranty Bank and Trust Company | | | | | |
| 1106 | | Certificate of Authenticity for Kraken | | | | | |
| 1107 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1108 | | Certificate of Authenticity for GoDaddy | | | | | |
| 1109 | | Certificate of Authenticity for Google | | | | | |
| 1110 | | Certificate of Authenticity for Verizon | | | | | |
| 1111 | | Certificate of Authenticity for Regions Bank | | | | | |
| 1112 | | Certificate of Authenticity for Simple Finance Technology Corp | | | | | |
| 1113 | | Certificate of Authenticity for Signature Bank | | | | | |
| 1114 | | Certificate of Authenticity for Google | | | | | |
| 1115 | Hanggi | Certificate of Authenticity for Apple | | X | X 2/12 | | |
| 1116 | | Certificate of Authenticity for Google | | | | | |

60

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1117 | | Certificate of Authenticity for Google | | | | | |
| 1118 | | Certificate of Authenticity for Vcorp | | | | | |
| 1119 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1120 | | Certificate of Authenticity for Wells Fargo Bank | | | | | |
| 1121 | | Certificate of Authenticity for Wynn Las Vegas | | | | | |
| 1122 | | Certificate of Authenticity for Google | | | | | |
| 1123 | | Certificate of Authenticity for Google | | | | | |
| 1124 | | Certificate of Authenticity for Google | | | | | |
| 1125 | | Certificate of Authenticity for Google | | | | | |
| 1126 | | Certificate of Authenticity for Google | | | | | |
| 1127 | | Certificate of Authenticity for AT&T | | | | | |
| 1128 | | Certificate of Authenticity for Navy Federal Credit Union | | | | | |
| 1129 | | Certificate of Authenticity for American Express | | | | | |
| 1130 | | Certificate of Authenticity for National Air Cargo | | | | | |
| 1131 | | Certificate of Authenticity for McDonald Automotive (Audi) | | | | | |

61

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---|---|---|---|---|---|---|---|
| 1132 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1133 | | Certificate of Authenticity for Digital Mint | | | | | |
| 1134 | | Certification of Authenticity for National Air Cargo | | | | | |
| 1135 | | Certification of Authenticity for Access National Bank | | | | | |
| 1136 | | Certification of Authenticity for Coinbase | | | | | |
| 1137 | | Certification of Authenticity for Coinbase | | | | | |
| 1138 | | Certification of Authenticity for Coinbase | | | | | |
| 1139 | | Certification of Authenticity for Navy FCU | | | | | |
| 1140 | | Certification of Authenticity for Apple | | | | | |
| 1141 | | Certification for Google | | | | | |
| 1142 | | Certification for Signature Bank | | | | | |
| 1143 | | Certification for Regions Bank | | | | | |

CASE CAPTION:  USA v. Tew, et al.

CASE NO.:  20-cr-00305-DDD

EXHIBIT LIST OF:        Kimberley Tew
                       (Name and Party Designation)

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|-------------------|-------------|---------|----------|---------|----------------|
| A | Palmer. | Rose Management Group 1099s and Declaration | | X | 2/14 | | |
| B | | Miscellaneous Tax Records for Michael Tew (2017-2019) | | | | | |
| C | | 3.15.19 Communications between M Tew and K Tew | | | | | |
| D | | 4.11.19 Communications between M Tew and K Tew | | | | | |
| E | | 4.30.20 Communications between M Tew and K Tew | | | | | |
| F | | 6.13.19 Communications between M Tew and K Tew | | | | | |
| G | | 6.24.19 Communications between M Tew and K Tew | | | | | |
| H | | 7.2.19 Communications between M Tew and K Tew | | | | | |
| I | | 7.15.19 Communications between M Tew and K Tew | | | | | |
| J | | 7.18.19 Communications between M Tew and K Tew | | | | | |
| K | | 8.14.19 Communications between M Tew and K Tew | | | | | |
| L | | 9.18.19 Communications between M Tew and K Tew | | | | | |
| M | | Invoices from Sand Hill to Rose Management Group | | | | | |
| N | Palmer. | Google voice linked cookies | | X | 2/13 | | |
| O | | 7.01.20 Communications between M Tew and K Tew | | | | | |
| P | | Jonathan Yioulos Resume - 2020 | | | | | |
| 5 | Yioulos | Text messages (unredacted | | | | | |
| | | | | | | | |
| | | | | | | | |

875

**EXHIBIT LIST**

CASE NO. 20-cr-00305-DDD-01   PLAINTIFF'S LIST_____   DEFENDANT'S LIST__X___ THIRD PTY DEFTS. LIST_____

CASE CAPTION United States of America vs. Michael Aaron Tew   PAGE NO._____   DATE_____

LIST PLAINTIFF'S EXHIBITS BY NUMBERS (1, 2, 3, etc.) and DEFENDANT'S BY LETTER (A, B, C, etc.)

| EXHIBIT NO/LTR | WITNESS | DESCRIPTION | ADM/AUTH | STIP | OFFER | RECD. | REF. | RUL. RSVD. | COMMENTS/INFO. |
|---|---|---|---|---|---|---|---|---|---|
| Q | Yiaulos | Key Bank Statement 1/17/2017 | | | X | X 2/7 | | | |
| R | Yiaulos | Statement 3/19/18 | | | X | X 2/7 | | | |
| S | | | | | | | | | |
| T | Yiaulos | Resume Jonathan Yiaulos | | | X | X 2/7 | | | |
| U | All | NYT article 2/8/24 | | | X | X 2/8 | | | |
| V | | audio file Yioulos | | | | | X 2/14 | | |
| W | | audio file Yialos | | | | | | | |
| X | | audio file Yiaulos | | | | | | | |
| Y | | audio file yioulas. | | | | | X 2/14 | | |

**EXHIBIT LIST**

CASE NO. 20-cr-00305-DDD-01    PLAINTIFF'S LIST _____    DEFENDANTS' LIST _X_    THIRD PTY DEFTS. LIST _____

CASE CAPTION United States of America vs. Michael Aaron Tew and Kimberley Ann Tew    PAGE NO._____    DATE_____

LIST PLAINTIFF'S EXHIBITS BY NUMBERS (1, 2, 3, etc.) and DEFENDANT'S BY LETTER (A, B, C, etc.)

| EXHIBIT NO/LTR | WITNESS | DESCRIPTION | ADM/ AUTH | STIP | OFFER | RECD. | REF. | RUL. RSVD. | COMMENTS/ INFO. |
|---|---|---|---|---|---|---|---|---|---|
| 2 | | audio file fioulas. | | | | | X 2/14 | | |
| AA | | audio file fioulas. | | | | | X 2/14 | | |
| BB | Palmer | | | | X | X 2/14 | | | |
| CC | Palmer | Redacted 685 | | | X | X 2/14 | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |
| | | | | | | | | | |

ORIGINAL

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Criminal Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,
v.

**(1) MICHAEL AARON TEW**; and
**(2) KIMBERLEY ANN TEW**, a/k/a Kimberley Vertanen,

Defendants.

---

## FINAL JURY INSTRUCTIONS

---

## INSTRUCTION NO. 1

## INTRODUCTION TO FINAL INSTRUCTIONS

Members of the Jury:

In any jury trial there are, in effect, two judges. I am one of the judges, you are the other. I am the judge of the law. You, as jurors, are the judges of the facts. I presided over the trial and decided what evidence was proper for your consideration. It is also my duty at the end of the trial to explain to you the rules of law that you must follow and apply in arriving at your verdict.

In explaining the rules of law that you must follow, first, I will give you some general instructions that apply in every criminal case—for example, instructions about the burden of proof and insights that may help you to judge the believability of witnesses. Then I will give you some specific rules of law that apply to this particular case and, finally, I will explain the procedures you should follow in your deliberations, and the possible verdicts you may return. These instructions will be given to you for use in the jury room, so you need not take notes.

## INSTRUCTION NO. 2

## DUTY TO FOLLOW INSTRUCTIONS

You, as jurors, are the judges of the facts. But in determining what actually happened—that is, in reaching your decision as to the facts—it is your sworn duty to follow all of the rules of law as I explain them to you.

You have no right to disregard or give special attention to any one instruction, or to question the wisdom or correctness of any rule I may state to you. You must not substitute or follow your own notion or opinion as to what the law is or ought to be. It is your duty to apply the law as I explain it to you, regardless of the consequences. However, you should not read into these instructions, or anything else I may have said or done, any suggestion as to what your verdict should be. That is entirely up to you.

It is also your duty to base your verdict solely upon the evidence, without prejudice or sympathy. That was the promise you made and the oath you took.

The lawyers may properly refer to some of the governing rules of law in their closing arguments. If there is any difference between the law as stated by the lawyers and my instructions, you must follow my instructions.

## INSTRUCTION NO. 3

### PRESUMPTION OF INNOCENCE – BURDEN OF PROOF – REASONABLE DOUBT

The government has the burden of proving a defendant guilty beyond a reasonable doubt. The law does not require a defendant to prove his innocence or produce any evidence at all. The government has the burden of proving a defendant guilty beyond a reasonable doubt, and if it fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly convinced of the defendant's guilt. There are few things in this world that we know with absolute certainty, and in criminal cases the law does not require proof that overcomes every possible doubt. It is only required that the government's proof exclude any "reasonable doubt" concerning the defendant's guilt.

A reasonable doubt is a doubt based on reason and common sense after careful and impartial consideration of all the evidence in the case. If, based on your consideration of the evidence, you are firmly convinced that the defendant is guilty of the crime charged, you must find him guilty. If on the other hand, you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

## INSTRUCTION NO. 4

## EVIDENCE – DEFINED

You must make your decision based only on the evidence that you saw and heard here in court. Do not let rumors, suspicions, or anything else that you may have seen or heard outside of court influence your decision in any way.

The evidence in this case includes only what the witnesses said while they were testifying under oath, the exhibits that I allowed into evidence, and the stipulation that the parties agreed to.

Nothing else is evidence. The lawyers' statements and arguments are not evidence. Their questions and objections are not evidence. My legal rulings are not evidence. And my comments and questions are not evidence.

You have heard questioning from attorneys and/or testimony from certain witnesses who described circumstances and events in this case using the words "fraud," "fraudulent," "conspirators," and "conspiracy." Their use of these terms do not substitute for the instructions given by the Court on the elements of each count alleged in the indictment.

It is solely your job to decide whether the government has proved the guilt of each defendant beyond a reasonable doubt on each count alleged in the indictment and explained in these instructions. The questions of whether any fraud occurred and any conspiracy existed are questions to be answered by the jury alone weighing the facts together with the elements of each count provided in these instructions.

Certain charts and summaries have been shown to you to help explain the evidence in this case but were not admitted as exhibits. Their

only purpose is to help explain the evidence. These charts and summaries are not evidence or proof of any facts.

You may use the notes taken by you during the trial. However, the notes should not be substituted for your memory. Your notes are not evidence. If your memory should differ from your notes, then you should rely on your memory and not on your notes.

During the trial, I did not let you hear the answers to some of the questions that the lawyers asked. I also ruled that you could not see some of the exhibits that the lawyers wanted you to see. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them. Do not speculate about what a witness might have said or what an exhibit might have shown. These things are not evidence, and you are bound by your oath not to let them influence your decision in any way.

## INSTRUCTION NO. 5

## EVIDENCE – DIRECT AND CIRCUMSTANTIAL – INFER-
ENCES

As I instructed you at the beginning of the trial, there are, generally speaking, two types of evidence from which a jury may properly determine the facts of a case. One is direct evidence, such as the testimony of an eyewitness. The other is circumstantial evidence, that is, the proof of a fact or chain of facts that points to the existence or non-existence of certain other facts.

The law makes no distinction between direct and circumstantial evidence. The law simply requires that you find the facts based on all the evidence in the case, both direct and circumstantial.

While you must consider only the evidence in this case, you are permitted to draw reasonable inferences from the testimony and exhibits that you feel are justified in the light of common experience. An inference is a conclusion that reason and common sense may lead you to draw from facts that have been established by the evidence.

## INSTRUCTION NO. 6

## CREDIBILITY OF WITNESSES

I remind you that it is your job to decide whether the government has proved the guilt of the defendant beyond a reasonable doubt. In doing so, you must consider all of the evidence. This does not mean, however, that you must accept all of the evidence as true or accurate.

You are the sole judges of the credibility or "believability" of each witness and the weight to be given to the witness's testimony. An important part of your job will be making judgments about the testimony of the witnesses who testified in this case.

You should think about the testimony of each witness you have heard and decide whether you believe all or any part of what each witness had to say, and how important that testimony was. In making that decision, I suggest that you ask yourself a few questions: Did the witness impress you as honest? Did the witness have any particular reason not to tell the truth? Did the witness have a personal interest in the outcome in this case? Did the witness have any relationship with either the government or the defense? Did the witness seem to have a good memory? Did the witness clearly see or hear the things about which he or she testified? Did the witness have the opportunity and ability to understand the questions clearly and answer them directly? Did the witness's testimony differ from the testimony of other witnesses? When weighing the conflicting testimony, you should consider whether the discrepancy has to do with a material fact or with an unimportant detail. And you should keep in mind that innocent mis-recollection—like failure of recollection—is not uncommon.

The defendants did not testify and I remind you that you cannot consider their decisions not to testify as evidence of guilt. I want you to

Page 8 of 37

clearly understand that the Constitution of the United States grants to
a defendant the right to remain silent. That means the right not to tes-
tify or call any witnesses. That is a constitutional right in this country,
it is very carefully guarded, and you should understand that no pre-
sumption of guilt may be raised and no inference of any kind may be
drawn from the fact that a defendant does not take the witness stand
and testify or call any witnesses.

In reaching a conclusion on a particular point, or ultimately in reach-
ing a verdict in this case, do not make any decisions simply because
there were more witnesses on one side than on the other.

## INSTRUCTION NO. 7

## IMPEACHMENT BY PRIOR INCONSISTENCIES

You have heard the testimony of witnesses who, before this trial, made statements that may be different from their testimony here in court. These earlier statements were brought to your attention only to help you decide how believable their testimony in this trial was. You cannot use them as proof of anything else. You can only use them as one way of evaluating their testimony here in court.

## INSTRUCTION NO. 8

## CO-PARTICIPANT—PLEA AGREEMENT

The government called as a witness an alleged co-participant in the charged scheme, who was identified as a co-defendant in the Indictment. The government has entered into a plea agreement with this co-participant, providing for the dismissal of some charges and a recommendation of a lesser sentence than this participant might otherwise likely receive. Plea bargaining is lawful and proper, and the rules of this Court expressly provide for it.

An alleged co-participant, including one who has entered into a plea agreement with the government, is not prohibited from testifying. On the contrary, the testimony of an alleged co-participant may, but itself, support a guilty verdict. You should receive this type of testimony with caution and weigh it with great care. You should never convict a defendant upon the unsupported testimony of an alleged co-participant, unless you believe that testimony beyond a reasonable doubt. The fact that a co-participant has entered a guilty plea to the offense charged is not evidence of the guilt of any other person. The witness's plea agreement may not be used to establish the guilt of either of these defendants. The fact that the co-participant pled guilty should only be used to assess the co-participant's credibility as a witness.

## INSTRUCTION NO. 9

## EVIDENCE ADMITTED FOR A LIMITED PURPOSE

On occasion, a particular item of evidence or testimony has been received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I have told you when that occurred, and instructed you on the purposes for which the item can and cannot be used.

# INSTRUCTION NO. 10

## RECORDED CONVERSATIONS

During this trial, you have heard sound recordings of certain conversations. These conversations were legally recorded; they are a proper form of evidence and may be considered by you as you would any other evidence.

## INSTRUCTION NO. 11

## CONFESSION-STATEMENT—VOLUNTARINESS BY DEFEND-ANT
## (MULTIPLE DEFENDANTS)

Evidence relating to any statement attributed to a defendant alleged to have been made after the commission of the crimes charged in this case but not made in court, should always be considered by you with caution and weighed with care. You should give any such statement the weight you think it deserves, after considering all the circumstances under which the statement was made.

In determining whether any such statement is reliable and credible, consider factors bearing on the voluntariness of the statement. For example, consider the age, gender, training, education, occupation, and physical and mental condition of the defendant, and any evidence concerning his or her treatment while under interrogation if the statement was made in response to questioning by government officials, and all the other circumstances in evidence surrounding the making of the statement.

After considering all this evidence, you may give such weight to the statement as you feel it deserves under all the circumstances. If you determine that the statement is unreliable or not credible, you may disregard the statement entirely.

Of course, any such statement should not be considered in any way whatsoever as evidence with respect to any other defendant on trial.

## INSTRUCTION NO. 12

## CAUTION—CONSIDER ONLY CRIMES CHARGED

You are here to decide whether the government has proved beyond a reasonable doubt that defendant Michael Tew or defendant Kimberley Tew, or both, are guilty of the crimes charged. The defendants are not on trial for any act, conduct, or crime not charged in the Indictment.

It is not up to you to decide whether anyone who is not on trial in this case should be prosecuted for the crime charged. The fact that another person also may be guilty is no defense to a criminal charge.

The question of the possible guilt of others should not enter your thinking as you decide whether this defendant has been proved guilty of the crime charged.

## INSTRUCTION NO. 13

### CAUTION—PUNISHMENT

If you find that defendant Michael Tew or defendant Kimberley Tew, or both, are guilty of any of the crimes charged, it will be my duty to decide what the punishment will be. You should not discuss or consider the possible punishment in any way while deciding your verdict.

## INSTRUCTION NO. 14

## REMOTE TESTIMONY

In this trial, you heard testimony by video teleconference from a witness in a remote location. You should give this testimony the same consideration you would give it had the witness appeared and testified here in the courtroom.

## INSTRUCTION NO. 15

## MULTIPLE DEFENDANTS—MULTIPLE COUNTS

A separate crime is charged against one or more of the defendants in each count of the Indictment. You must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant.

Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

## INSTRUCTION NO. 16

## ON OR ABOUT

You will note that the Indictment charges that the crime was committed on or about certain dates. The government must prove beyond a reasonable doubt that the defendant committed the crime reasonably near these dates.

## INSTRUCTION NO. 17

### KNOWINGLY – DEFINED

When the word "knowingly" or the phrase "with knowledge" is used in these instructions, it means that the act was done voluntarily and intentionally, and not because of mistake or accident. Although knowledge on the part of the defendant cannot be established merely by demonstrating that the defendant was negligent, careless, or foolish, knowledge can be inferred if the defendant purposely contrived to avoid learning the facts. Knowledge can be inferred if the defendant was aware of a high probability of the existence of the fact in question, unless the defendant did not actually believe that fact.

Acting in good faith is inconsistent with the intent to defraud. A person who acts on a belief or opinion honestly held is not guilty under the statute merely because that belief or opinion turns out to be inaccurate, incorrect, or wrong.

INSTRUCTION NO. 18

CONSPIRACY TO COMMIT WIRE FRAUD – 18 U.S.C. § 1349

(Count 1 – Michael Tew; Kimberley Tew)

The defendants, Michael Tew and Kimberley Tew, are each charged in Count 1 of the Indictment with conspiracy to commit wire fraud, in violation of Title 18, United States Code, Section 1349.

This law makes it a federal crime for any person to conspire to commit wire fraud. I will instruct you in a moment about wire fraud, which is the offense charged against one or both of the defendants in Counts 2 through 40. You should refer to those instructions regarding the elements of wire fraud.

To find a defendant guilty of conspiracy to commit wire fraud, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

1. The defendant agreed with at least one other person to commit wire fraud;

2. The defendant knew of the essential objectives of the conspiracy;

3. The defendant knowingly and voluntarily participated in the conspiracy; and

4. There was interdependence among the members of the conspiracy. That is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

Page 21 of 37

For further instruction on the definition of "knowledge"; "knowingly"; and "voluntarily," refer to Instruction No. 17.

For further instruction on the definitions of "agreement" and "interdependence," refer to Instruction No. 20.

For further instruction on the elements of wire fraud, refer to Instruction No. 23.

# INSTRUCTION NO. 19

## CONSPIRACY TO COMMIT MONEY LAUNDERING – 18 U.S.C.
## § 1956(h)
## (Count 41 – Michael Tew; Kimberley Tew)

The defendants, Michael Tew and Kimberley Tew, are each charged in Count 41 of the Indictment with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h).

This law makes it a federal crime for any person to conspire to commit money laundering. I will instruct you in a moment about money laundering, which is the offense charged against one or both of the defendants in Counts 42 through 56. You should refer to those instructions regarding the elements of Title 18, United States Code, Section 1957 (money laundering–spending).

To find a defendant guilty of conspiracy to commit money laundering, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1. The defendant agreed with at least one other person to commit money laundering—spending;

2. The defendant knew the essential objective(s) of the conspiracy;

3. The defendant knowingly and voluntarily participated in the conspiracy; and

4. There was interdependence among the members of the conspiracy, that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged.

For further instruction on the definition of "knowledge"; "knowingly"; and "voluntarily," refer to Instruction No. 17.

For further instruction on the definitions of "agreement" and "interdependence," refer to Instruction No. 20.

For further instruction on the elements of money laundering–spending, refer to Instruction No. 24.

## INSTRUCTION NO. 20

## CONSPIRACY — AGREEMENT & INTERDEPENDENCE DEFINED

Count 1 and Count 41 charge two separate conspiracies. A conspiracy is an agreement between two or more persons to accomplish an unlawful purpose. It is a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

The evidence may show that some of the persons involved in the alleged conspiracy are not on trial. This does not matter. There is no requirement that all members of a conspiracy be charged or tried together in one proceeding.

The evidence need not show that the members entered into an express or formal agreement. Nor does the law require proof that the members agreed on all the details.

If you are convinced that the charged conspiracy existed, then you must next determine whether a defendant was a member of that conspiracy, that is, whether that defendant knew at least the essential goals of the conspiracy and voluntarily chose to be part of it. You must consider each defendant separately in this regard.

A person may belong to a conspiracy for a brief period of time or play a minor role. On the other hand, proof is not sufficient if it merely shows that a defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

You are also required to find that interdependence existed among the members of the conspiracy. This means that the members intended to

act for their shared mutual benefit. To satisfy this element, you must conclude that the defendant participated in a shared criminal purpose and that his actions constituted an essential and integral step toward the realization of that purpose.

## INSTRUCTION NO. 21

## CONSPIRACY — EVIDENCE OF MULTIPLE CONSPIRACIES
### (Counts 1 and 41)

Counts 1 and 41 of the Indictment charge that defendants Michael Tew and Kimberley Tew were members of two different conspiracies, specifically, a conspiracy to commit wire fraud, in Count 1, and a conspiracy to commit money laundering, in Count 41.

You must determine whether each conspiracy, as charged in the Indictment, existed, and if it did, whether Michael Tew or Kimberley Tew, or both, was a member of it.

If you find that a defendant was not a member of one of the conspiracies charged, then you must find the defendant not guilty of that conspiracy, even though the defendant may have been a member of some other conspiracy. This is because proof that a defendant was a member of one charged conspiracy, or some other uncharged conspiracy, is not enough to convict on a different charged conspiracy.

But proof that a defendant was a member of some other conspiracy would not prevent you from returning a guilty verdict, if the government proved that he or she was also a member of the conspiracy charged in the Indictment.

## INSTRUCTION NO. 22

## CONSPIRATOR'S LIABILITY FOR SUBSTANTIVE COUNTS

If you find either defendant guilty of either of the conspiracies charged in Counts 1 or 41 of the Indictment, and you find beyond a reasonable doubt that another coconspirator committed a substantive offense charged in relation to one of those conspiracies during the time the defendant was a member of that conspiracy, and if you find that a substantive offense charged in relation to one of those conspiracies was committed to achieve an objective of or was a foreseeable consequence of the conspiracy, then you may find the defendant charged with that substantive offense guilty of that substantive offense, even though the defendant may not have participated in any of the acts that constitute the offenses described in the substantive offenses.

The substantive offenses associated with each of the charged conspiracies are as follows:

| **Conspiracy to Commit Wire Fraud (Count 1)** | |
|---|---|
| Wire Fraud (as to defendant Michael Tew) | Counts 2-40 |
| Wire Fraud (as to defendant Kimberley Tew) | Counts 21, 22, 25, 26, 31, 32 |
| **Conspiracy to Money Laundering (Count 41)** | |
| Money Laundering–Spending (as to defendant Michael Tew) | Counts 42, 44-56 |
| Money Laundering–Spending (as to defendant Kimberley Tew) | Counts 43, 44, 47, 48, 56 |

## INSTRUCTION NO. 23

## WIRE FRAUD — 18 U.S.C. § 1343

**(Counts 2 – 40 (Michael Tew))**
**and**
**(Counts 21, 22, 25, 26, 31, and 32 (Kimberley Tew))**

Defendant Michael Tew is charged with 39 violations (in Counts 2 through 40), and defendant Kimberley Tew is charged with 6 violations (in Counts 21, 22, 25, 26, 31 and 32), of Section 1343 of Title 18 of the United States Code, alleged on various dates, as listed in the Indictment.

This law makes it a crime to use interstate wire communication facilities in carrying out a scheme to defraud. A scheme to obtain money or property by means of false or fraudulent pretenses, representations, or promises is a specific type of a scheme to defraud.

To find the defendant guilty of wire fraud, you must be convinced that the government has proved each of the following elements beyond a reasonable doubt:

1. the defendant devised or intended to devise a scheme to defraud, as alleged in the Indictment;

2. the defendant acted with specific intent to defraud;

3. the defendant used or caused another person to use interstate or foreign wire communications facilities for the purpose of carrying out the scheme; and

4. the scheme employed false or fraudulent pretenses, representations, or promises that were material.

A "scheme to defraud" is conduct intended to or reasonably

calculated to deceive persons of ordinary prudence or comprehension.

A scheme to defraud includes a scheme to deprive another of money, property, or the intangible right of honest services.

An "intent to defraud" means an intent to deceive or cheat someone.

A representation is "false" if it is known to be untrue or is made with reckless indifference as to its truth or falsity. A representation would also be false when it constitutes a half-truth, or effectively omits or conceals a material fact, provided it is made with intent to defraud.

A false statement is "material" if it has a natural tendency to influence, or is capable of influencing, the decision of the person or entity to which it is addressed.

To "cause" interstate wire communications facilities to be used is to do an act with knowledge that the use of the wire facilities will follow in the ordinary course of business or where such use can reasonably be foreseen.

## INSTRUCTION NO. 24

## MONEY LAUNDERING–SPENDING — 18 U.S.C. § 1957

### (Counts 42 and 44 – 56 (Michael Tew))
### and
### (Counts 43, 44, 47, 48 and 56 (Kimberley Tew))

Defendant Michael Tew is charged with 14 violations (in Count 42 and Counts 44 through 56), and defendant Kimberley Tew is charged with 5 violations (in Counts 43, 44, 47, 48, and 56), of Section 1957 of Title 18 of the United States Code, alleged on various dates, as listed in the Indictment.

These counts charge the defendants with engaging in monetary transactions in violation of federal law. To find a defendant guilty of money laundering—spending, you must be convinced that the government has proved each of the following beyond a reasonable doubt:

1. The defendant engaged in a monetary transaction in criminally derived property;

2. The defendant knew that the property was criminally derived;

3. The property had a value greater than $10,000;

4. The property was in fact derived from wire fraud; and

5. The monetary transaction took place in the United States.

"Monetary transaction" means the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution. A monetary transaction includes a transaction involving the use of a financial institution that is engaged in, or the activities of which affect, interstate commerce in any way or degree. "Interstate commerce" means commerce or travel between the states, territories, or possessions of the United States, in-

cluding the District of Columbia. Commerce includes travel, trade, transportation, and communication. It is not necessary that the defendant intended or anticipated an effect on interstate commerce. All that is necessary is that the natural and probable consequence of the defendant's acts did in fact affect interstate commerce, however minimal that effect is.

"Criminally derived property" means any property constituting, or derived from, proceeds obtained from a criminal offense. "Proceeds" means any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity. Funds obtained by wire fraud are considered to be criminally derived property. The government is not required to prove that the defendant knew the property at issue was derived from wire fraud or from any specific criminal offense; the government need only prove that the defendant knew the property was derived or obtained from some kind of criminal offense.

INSTRUCTION NO. 25

**WILLFUL FAILURE TO FILE A TAX RETURN — 26 U.S.C.
§ 7203**

**(Counts 57 – 60 (Michael Tew))**

Defendant Michael Tew is charged with 4 violations (in Counts 57
through 60), of Section 7203 of Title 26 of the United States Code, al-
leged on various dates, as listed in the Indictment.

This law makes it a crime to willfully fail to file federal income tax
returns.

To find a defendant guilty of this crime, you must be convinced that
the Government has proved each of the following beyond a reasonable
doubt:

1. The defendant was required by Title 26 of the United States Code
   to file an income tax return for the calendar year specified in the
   applicable Count of the indictment;

2. The defendant failed to file such tax return as required; and

3. In failing to do so, the defendant acted willfully.

To prove that the defendant acted "willfully," the government must
prove beyond a reasonable doubt that the defendant knew federal tax
law imposed a duty on him, and the defendant intentionally and volun-
tarily violated that duty.

## INSTRUCTION NO. 26

## PROCEDURES FOR DELIBERATION

You must follow these rules while deliberating and returning your verdict:

First, when you go to the jury room, you must select a foreperson. The foreperson will help to guide your deliberations and will speak for you here in the courtroom. You should also review the instructions. Your deliberations will be more productive if you understand the legal principles upon which your verdict must be based, and you are bound by your oath to follow the law stated in these instructions throughout your deliberations. Once you begin deliberations, you may only discuss the case if all jurors are present.

Second, it is your duty as jurors to discuss this case with one another in the jury room and try to reach agreement. Each of you must decide the case for yourself, but only after you have considered all the evidence, discussed it fully with the other jurors, and listened to the views of the other jurors. During your deliberations, do not hesitate to re-examine your own opinions, and do not be afraid to change your mind if the discussion persuades you that you should. But do not make a decision or surrender your honest conviction as to the weight or effect of the evidence solely because of the opinion of your fellow jurors, or simply to reach a verdict. Remember at all times that you are the judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

Third, if you need to communicate with me during your deliberations, you may send a note to me through the Court Security Officer, signed by one or more jurors. I will respond as soon as possible either in writing or

orally in open court. You should not tell anyone—including me—details of your deliberations or how your votes stand numerically.

Fourth, your verdict must be based solely on the evidence you have seen and heard in the courtroom and on the law I have given to you in these instructions.

Fifth, the verdict must represent the considered judgment of each of you. In order to return a verdict, whether it is guilty or not guilty, it is necessary that each juror agree. Your verdict must be unanimous on each count.

Finally, you will be provided with a verdict form that has been prepared for your convenience. The verdict form is the written notice of the decision that you reach in this case. The verdict form lists the counts charged against Mr. Tew and Ms. Tew and asks for your verdict as to each count and as to each defendant. Please review the verdict form carefully as you deliberate. As a reminder, you must separately consider the evidence against each defendant on each count and return a separate verdict for each defendant and on each count. Your verdict as to any one defendant or count, whether it is guilty or not guilty, should not influence your verdict as to any other defendants or counts.

You will take this form to the jury room, and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the Court Security Officer that you are ready to return to the courtroom.

Let me remind you again that nothing I have said in these instructions, nor anything I have said or done during the trial, was meant to suggest to you what I think your decision should be. That is your exclusive responsibility.

## INSTRUCTION NO. 27

## COMMUNICATION DURING DELIBERATIONS

During your deliberations, you must not communicate with, provide any information to, or receive any information from anyone else by any means about this case. You may not use any electronic device or medium, such as a phone, computer, or tablet, to communicate to anyone any information about this case, or to conduct any research about this case. Until I accept your verdict, you can only discuss the case in the jury room with your fellow jurors. I expect you will inform me if you become aware of another juror's violation of these instructions.

You may not use these electronic means to investigate or communicate about the case because it is important that you decide this case based solely on the evidence presented in this courtroom. Information on the internet or available through social media might be wrong, incomplete, or inaccurate. You are only permitted to discuss the case with your fellow jurors during deliberations because they have seen and heard the same evidence you have. You will never have to explain your verdict to anyone. In our judicial system, it is important that you are not influenced by anything or anyone outside of this courtroom. Otherwise, your decision may be based on information known only by you and not your fellow jurors or the parties to the case. This would unfairly impact the judicial process.

## INSTRUCTION NO. 28

## INDICTMENT

You will note that the Indictment charges that crimes were committed on or about specified dates. Per my previous instruction, the government must prove beyond a reasonable doubt that the defendants committed the crimes reasonably near those dates.

Remember, the Indictment is not evidence. You may not rely on anything said in the Indictment to find the defendants guilty on any charge, and you must not let the Indictment influence your weighing of the evidence. You have received the Indictment simply to help you understand what you are deliberating about when you consider each count.

Because the Indictment is lengthy, I will not read it now, but a copy has already been included in your binders with your set of preliminary jury instructions.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO

---

Date:                    February 15, 2024          Prob./Pret.:  N/A
Courtroom Deputy:  Robert R. Keech              Interpreter:  N/A
Court Reporter:        Tammy Hoffschildt

---

Criminal Case No. **1:20-cr-00305-DDD**          Counsel:

UNITED STATES OF AMERICA,                    Bryan D. Fields
                                                              Sarah H. Weiss

             Plaintiff,

v.

1. MICHAEL AARON TEW;                         Jason D. Schall
and                                                        Kristen M. Frost
2. KIMBERLEY ANN TEW,                         David S. Kaplan
                                                              Jamie H. Hubbard

             Defendants.

---

## COURTROOM MINUTES

---

**TRIAL TO JURY (DAY 9)**

**9:00 a.m.**     **JURY ARRIVES TO RESUME DELIBERATIONS**

**11:54 a.m.**    **Court in session.** Jury not present.

Discussion regarding how to respond to notes (questions) from jury.

Court provides counsel with intended responses to jury notes (questions). No objection.

**12:01 p.m.**    **Court in recess.** Subject to call.

**5:03 p.m.**     Court in Session - Jury not present.

1

Seth Junker is present on behalf of probation.

Court informs counsel that jury has reached a verdict.

5:06 p.m.    Jury enters

Court reads jury verdict.

### **Michael Aaron Tew**

| | |
|---|---|
| Count 1 | GUILTY |
| Count 2 | GUILTY |
| Count 3 | GUILTY |
| Count 4 | GUILTY |
| Count 5 | GUILTY |
| Count 6 | GUILTY |
| Count 7 | GUILTY |
| Count 8 | GUILTY |
| Count 9 | GUILTY |
| Count 10 | GUILTY |
| Count 11 | GUILTY |
| Count 12 | GUILTY |
| Count 13 | GUILTY |
| Count 14 | GUILTY |
| Count 15 | GUILTY |
| Count 16 | GUILTY |
| Count 17 | GUILTY |
| Count 18 | GUILTY |
| Count 19 | GUILTY |
| Count 20 | GUILTY |
| Count 21 | GUILTY |
| Count 22 | GUILTY |
| Count 23 | GUILTY |
| Count 24 | GUILTY |
| Count 25 | GUILTY |
| Count 26 | GUILTY |
| Count 27 | GUILTY |
| Count 28 | GUILTY |
| Count 29 | GUILTY |
| Count 30 | GUILTY |
| Count 31 | GUILTY |
| Count 32 | GUILTY |
| Count 33 | GUILTY |
| Count 34 | GUILTY |

2

Count 35     GUILTY
Count 36     GUILTY
Count 37     GUILTY
Count 38     GUILTY
Count 39     GUILTY
Count 40     GUILTY
Count 41     GUILTY
Count 42     GUILTY
Count 44     GUILTY
Count 45     GUILTY
Count 46     GUILTY
Count 47     GUILTY
Count 48     GUILTY
Count 49     GUILTY
Count 50     GUILTY
Count 51     GUILTY
Count 52     GUILTY
Count 53     GUILTY
Count 54     GUILTY
Count 55     GUILTY
Count 56     GUILTY
Count 57     GUILTY
Count 58     GUILTY
Count 59     GUILTY
Count 60     GUILTY

### Kimberly Ann Tew

Count 1     GUILTY
Count 21     GUILTY
Count 22     GUILTY
Count 25     GUILTY
Count 26     GUILTY
Count 31     GUILTY
Count 32     GUILTY
Count 41     GUILTY
Count 43     GUILTY
Count 44     GUILTY
Count 47     GUILTY
Count 48     NOT GUILTY
Count 56     GUILTY

5:12 p.m.     Jury is polled.

3

Court thanks jurors for their service and they are discharged.

5:14 p.m.        Jury excused

Government request for defendants to be remanded into custody.

Argument by counsel.

**ORDERED:**   Conditions of bond will be modified as to both Michael Aaron Tew and Kimberley Ann Tew to the extent they shall be placed on electronic monitoring.

Court's closing remarks to counsel.

**ORDERED:**   Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**5:26 p.m.        Court in Recess - <u>TRIAL CONCLUDED. TOTAL TIME: :30</u>**

**<u>CLERK'S NOTE: EXHIBITS WERE RETURNED TO COUNSEL AT THE CONCLUSION OF THE TRIAL.</u>**

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO

Date:  February 15, 2024          Case No.   1:20-cr-00305-DDD

Time:  11:15am

---

## NOTE FROM JURY

---

☑ **We, the jury, have a question.**
☐ **We, the jury, have reached a verdict.**
**Please write your question to the Court below:**

We cannot find bank statements for
NFCU acct 5336. Can you please advise
on exhibit numbers or binder #?

By: _____
Juror name redacted.
Foreperson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO

Date: __February 15, 2024__          Case No. __1:20-cr-00305-DDD__

Time: __11:47 am__

---

### NOTE FROM JURY

---

☑ We, the jury, have a question.
❑ We, the jury, have reached a verdict.
Please write your question to the Court below:

We are missing the November 2019 bank statement
for Wells Fargo acct. ending 6934.
Was it admitted/which exhibit number?

By: ██████ Juron name redacted. ██████
Foreperson

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO

Date:  February 15, 2024                Case No.   1:20-cr-00305-DDD

Time:  4:30 pm

---

NOTE FROM JURY

---

☐  We, the jury, have a question.
☑ We, the jury, have reached a verdict.
Please write your question to the Court below:

We have reached a verdict on all charges.

By: _____ Juror name redacted.

Foreperson

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Daniel D. Domenico

Civil Action No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**(1) MICHAEL AARON TEW;**
**(2) KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen; and
(3) JONATHAN K. YIOULOS,

     Defendants.

---

## COURT'S RESPONSE TO JUROR NOTES SENT AT 11:15 AM AND 11:47 AM ON FEBRUARY 15, 2024

---

All of the evidence in this case for you to consider has been provided to you in the deliberation room. As stated in the Court's final jury instructions, it is your duty to consider the evidence provided to you, in view of the Court's instructions, to reach your verdict. The Court cannot provide further guidance regarding your questions beyond the guidance set forth in the final instructions.

DATED: February 15, 2024

BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. **MICHAEL AARON TEW, and**
2. **KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendants.

---

## VERDICT FORM

---

Please do not write anything on this form except to check a response and to sign and date the form.

### COUNT 1 – CONSPIRACY TO COMMIT WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 1 of the Indictment, charging conspiracy to commit wire fraud:

\_\_\_\_\_ Not Guilty

✓ Guilty

Page 1 of 26

## COUNT 1 – CONSPIRACY TO COMMIT WIRE FRAUD
## – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count

1 of the Indictment, charging conspiracy to commit wire fraud:



_____ Not Guilty

✓ Guilty

## COUNT 2 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 2

of the Indictment, charging wire fraud:



_____ Not Guilty

✓ Guilty

## COUNT 3 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 3

of the Indictment, charging wire fraud:



_____ Not Guilty

✓ Guilty

Page 2 of 26

## COUNT 4 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 4 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

## COUNT 5 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 5 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

## COUNT 6 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 6 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

Page 3 of 26

### COUNT 7 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 7 of the Indictment, charging wire fraud:

\_\_\_\_ Not Guilty

$\checkmark$ Guilty

### COUNT 8 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 8 of the Indictment, charging wire fraud:

\_\_\_\_ Not Guilty

$\checkmark$ Guilty

### COUNT 9 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 9 of the Indictment, charging wire fraud:

\_\_\_\_ Not Guilty

$\checkmark$ Guilty

Page 4 of 26

## COUNT 10 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 10 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

## COUNT 11 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 11 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

## COUNT 12 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 12 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

Page 5 of 26

### COUNT 13 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 13 of the Indictment, charging wire fraud:

\_\_\_\_ Not Guilty

\_\_✓\_ Guilty

### COUNT 14 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 14 of the Indictment, charging wire fraud:

\_\_\_\_ Not Guilty

\_√\_ Guilty

### COUNT 15 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 15 of the Indictment, charging wire fraud:

\_\_\_\_ Not Guilty

\_√\_ Guilty

Page 6 of 26

## COUNT 16 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 16 of the Indictment, charging wire fraud:

_____ Not Guilty

__✓__ Guilty

## COUNT 17 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 17 of the Indictment, charging wire fraud:

_____ Not Guilty

__✓__ Guilty

## COUNT 18 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 18 of the Indictment, charging wire fraud:

_____ Not Guilty

__✓__ Guilty

Page 7 of 26

### COUNT 19 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 19 of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 20 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 20 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

### COUNT 21 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 21 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

## COUNT 21 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count

21 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

## COUNT 22 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 22

of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

## COUNT 22 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count

22 of the Indictment, charging wire fraud:

_____ Not Guilty

✓ Guilty

Page 9 of 26

## **COUNT 23 – WIRE FRAUD – MICHAEL TEW**

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 23 of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

## **COUNT 24 – WIRE FRAUD – MICHAEL TEW**

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 24 of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

## **COUNT 25 – WIRE FRAUD – MICHAEL TEW**

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 25 of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

Page 10 of 26

## COUNT 25 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count 25 of the Indictment, charging wire fraud:

_____ Not Guilty

___✓___ Guilty

## COUNT 26 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 26 of the Indictment, charging wire fraud:

_____ Not Guilty

___✓___ Guilty

## COUNT 26 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count 26 of the Indictment, charging wire fraud:

_____ Not Guilty

___✓___ Guilty

Page 11 of 26

### COUNT 27 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 27

of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 28 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 28

of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 29 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 29

of the Indictment, charging wire fraud:

_____ Not Guilty

_____ Guilty

### COUNT 30 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 30
of the Indictment, charging wire fraud:



_____ Not Guilty

___✓___ Guilty

### COUNT 31 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 31
of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 31 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count
31 of the Indictment, charging wire fraud:

_____ Not Guilty

___✓___ Guilty

Page 13 of 26

## COUNT 32 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 32
of the Indictment, charging wire fraud:

_____  Not Guilty

  Guilty

## COUNT 32 – WIRE FRAUD – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count
32 of the Indictment, charging wire fraud:

_____  Not Guilty

  Guilty

## COUNT 33 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 33
of the Indictment, charging wire fraud:

_____  Not Guilty

  Guilty

Page 14 of 26

### COUNT 34 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 34 of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 35 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 35 of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 36 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 36 of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

Page 15 of 26

### COUNT 37 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 37
of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 38 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 38
of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

### COUNT 39 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 39
of the Indictment, charging wire fraud:



_____ Not Guilty

_____ Guilty

Page 16 of 26

## COUNT 40 – WIRE FRAUD – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 40
of the Indictment, charging wire fraud:

_____ Not Guilty

___✓___ Guilty

## COUNT 41 – CONSPIRACY TO COMMIT MONEY LAUNDERING –

### MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 41
of the Indictment, charging conspiracy to commit money laundering:

_____ Not Guilty

___✓___ Guilty

## COUNT 41 – CONSPIRACY TO COMMIT MONEY LAUNDERING – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count
41 of the Indictment, charging conspiracy to commit money laundering:

_____ Not Guilty

___✓___ Guilty

Page 17 of 26

### COUNT 42 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 42 of the Indictment, charging money laundering (spending):

_____ Not Guilty

___✓___ Guilty

### COUNT 43 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count 43 of the Indictment, charging money laundering (spending):

_____ Not Guilty

___✓___ Guilty

### COUNT 44 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 44 of the Indictment, charging money laundering (spending):

_____ Not Guilty

___✓___ Guilty

## COUNT 44 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count

44 of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

## COUNT 45 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 45

of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

## COUNT 46 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 46

of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

Page 19 of 26

### COUNT 47 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 47
of the Indictment, charging money laundering (spending):

_____ Not Guilty

___✓___ Guilty

### COUNT 47 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count
47 of the Indictment, charging money laundering (spending):

_____ Not Guilty

___✓___ Guilty

### COUNT 48 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 48
of the Indictment, charging money laundering (spending):

_____ Not Guilty

___✓___ Guilty

Page 20 of 26

## COUNT 48 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count

48 of the Indictment, charging money laundering (spending):

_____✓_____  Not Guilty

_____  Guilty

## COUNT 49 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 49

of the Indictment, charging money laundering (spending):

_____  Not Guilty

_____✓_____  Guilty

## COUNT 50 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 50

of the Indictment, charging money laundering (spending):

_____  Not Guilty

_____✓_____  Guilty

Page 21 of 26

### COUNT 51 –MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 51
of the Indictment, charging money laundering (spending):



_____ Not Guilty

_____ Guilty

### COUNT 52 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 52
of the Indictment, charging money laundering (spending):



_____ Not Guilty

_____ Guilty

### COUNT 53 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 53
of the Indictment, charging money laundering (spending):

_____ Not Guilty

_____ Guilty

Page 22 of 26

## COUNT 54 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 54 of the Indictment, charging money laundering (spending):



_____ Not Guilty

_____ Guilty

## COUNT 55 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 55 of the Indictment, charging money laundering (spending):



_____ Not Guilty

_____ Guilty

## COUNT 56 – MONEY LAUNDERING (SPENDING) – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 56 of the Indictment, charging money laundering (spending):



_____ Not Guilty

_____ Guilty

Page 23 of 26

## COUNT 56 – MONEY LAUNDERING (SPENDING) – KIMBERLEY TEW

We, the jury, unanimously find the defendant, KIMBERLEY TEW, in Count 56 of the Indictment, charging money laundering (spending):

_____ Not Guilty

 Guilty

## COUNT 57 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 57 of the Indictment, charging willful failure to file a tax return:

_____ Not Guilty

 Guilty

## COUNT 58 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 58 of the Indictment, charging willful failure to file a tax return:

_____ Not Guilty

_____ Guilty

Page 24 of 26

## COUNT 59 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 59

of the Indictment, charging willful failure to file a tax return:

_____ Not Guilty

__✓__ Guilty

## COUNT 60 – WILLFUL FAILURE TO FILE
## TAX RETURN – MICHAEL TEW

We, the jury, unanimously find the defendant, MICHAEL TEW, in Count 60

of the Indictment, charging willful failure to file a tax return:

_____ Not Guilty

__✓__ Guilty

Page 25 of 26

Juror name redacted.

FOREPERSON

Dated this _15_ th day of February, 2024.

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**JUDGE DANIEL D. DOMENICO**

Criminal Case No. 1:20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1. MICHAEL AARON TEW and
2. KIMBERLEY ANN TEW,

      Defendants.

---

## STIPULATION AND ORDER REGARDING CUSTODY OF EXHIBITS AND DEPOSITIONS

---

It is stipulated that upon the conclusion of the trial, counsel for the parties shall retain custody of their respective exhibits and depositions until such time as all need for the exhibits and depositions has terminated and the time to appeal has expired or all appellate proceedings have been terminated plus sixty (60) days.

DATED at Denver, Colorado this _15th_ day of February, 2024.

BY THE COURT

Daniel D. Domenico,
United States District Judge

_____
Attorney for Government

_____
Attorney for Government

_____
Attorney for Defendant Michael Aaron Tew

_____
Attorney for Defendant Kimberley Ann Tew

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1. **MICHAEL AARON TEW**, and
   2. **KIMBERLEY ANN TEW**,
     a/ka Kimberley Vertanen,

     Defendants.

---

### GOVERNMENT'S MOTION FOR DETENTION PENDING SENTENCING

---

Following an eight-day jury trial, Michael and Kimberley Tew are now convicted felons. The law dictates that they be detained pending sentencing. 18 U.S.C. § 3143(a). The facts also suggest that the presumption of detention cannot be overcome.

As proven at trial, the Tews spent the past six years conniving to get away with a brazen scheme to steal $5 million, much of which was converted offshore into bitcoin. In service of this goal, the Tews lied to their friends and associates for years. During the conspiracy, they collaborated on what they would do if they ever were caught.

When that day finally came and federal agents showed up at their door, Michael Tew made good on their plans and sought to flee the country with his

1

family. A swift probable cause arrest interrupted that attempt. But they did not give up. Thereafter, Kimberley Tew tried to tamper with several witnesses and impede the government's investigation. In doing so, she candidly admitted the plan she shared with her husband all along — despite the extent of the evidence against them both —the government could "only have one head." When trial finally arrived, they persisted with their plan, by ignoring court orders and deadlines, and by attempting to manipulate the jury by pointing blame at one another.

Each sought to delay trial in this matter for years. Throughout, they showed that neither has come to terms with the substantial harms wrought by their years of deception and criminality. Now, they seek to delay justice even further, demanding presentence release and intimating that they should be accorded staggered sentences, using their status as parents as justification.

As if the long history of this case were not enough to indicate that such a result would be an injustice, recently acquired bank records underscore the point. Those records show that the Tews likely lied to the courts, and that their casual relationship to truth came at a tangible cost to the American taxpayer. Specifically, they made representations to the court — under penalty of perjury — in order to secure the appointment of CJA counsel to which they were not entitled. While availing themselves of free CJA representation, they lived in an $8,649.69-a-month luxury apartment and pocketed gross income of between $22,000 and $124,000 *every month* since January 2022.

The Tews should be treated like every other defendant convicted at trial.

2

There are not two systems of justice in this country – one for the wealthy and one for the poor. The law should be applied equally, and that law presumes they should be detained. The facts add weight to that presumption, and the Tews have not presented clear and convincing evidence to the contrary. The Court should revoke their bonds and order that they be detained pending sentencing.

## I. Recently obtained bank records suggest that the Tews lied on their CJA affidavits, which constitutes perjury and a mandatory revocation of bond.

As detailed below, Michael Tew has received at least $1,212,181.27 in gross deposits into a single bank account since January 2022. The government respectfully requests that the Court order release to the government of the Tews' respective CJA financial affidavits, filed at ECF No. 282, so that the government can evaluate whether they made false statements under penalty of perjury. *See United States v. Kahan*, 415 U.S 239, 243 (1979); *see, e.g., United States v. Jenkins*, 2012 WL 12952829, at *4 (N.D.N.Y. Oct. 9, 2012) ("[T]he government has the authority request disclosure of the above-described financial affidavit on the ground that it is necessary for the government to determine whether to seek a separate indictment against the affiant for perjury); *United States v. Ponzo*, 2012 WL 28065, at 6 (D. Mass. Jan. 3, 2012) (ordering release of defendant's financial affidavit after trial so that government could evaluate whether separate prosecution for perjury was warranted); *United States v. Becker*, 2010 WL 1936038, at *2 (D. Kan. May 12, 2010) (granting disclosure of CJA affidavit to government).

Should the Court conclude that release of the affidavits is appropriate, the

3

government also requests a hearing, pursuant to 18 U.S.C. § 3148, to determine whether the Tews' orders of release should be revoked on the basis that they committed new crimes while on release

Bank records obtained during the trial show that tens of thousands of dollars are deposited into an account held in the name of Michael Tew every month:

| Month and Year | Deposits |
|---|---|
| 01/22 | $50,875.79 |
| 02/22 | $124,989.95 |
| 03/22 | $55,521.54 |
| 04/22 | $57,233.14 |
| 05/22 | $71,069.11 |
| 06/22 | $62,932.81 |
| 07/22 | $53,482.97 |
| 08/22 | $51,086.67 |
| 09/22 | $59,056.31 |
| 10/22 | $27,523.52 |
| 11/22 | $25,332.10 |
| 12/22 | $39,491.31 |
| 01/23 | $36,856.25 |
| 02/23 | $46,199.01 |
| 03/23 | $41,929.82 |
| 04/23 | $22,987.04 |
| 05/23 | $33,174.51 |
| 06/23 | $35,474.86 |
| 07/23 | $36,500.05 |
| 08/23 | $30,875.68 |
| 09/23 | $43,116.57 |
| 10/23 | Not available |
| 11/23 | $51,069.33 |
| 12/23 | $63,477.26 |
| 01/24 | $91,925.67 |
| TOTAL | $1,212,181.27 |

Every month, much of this money disappears via transfers to Kimberley Tew, wire transfers, cash withdrawals, or purchases on cryptocurrency exchange platforms. At

4

a hearing, the government can compare the CJA affidavits to these bank records. If the Court concludes that there is probable cause to believe that the Tews committed perjury in violation of 18 U.S.C. § 1621 when they submitted their affidavits, then there is a rebuttable presumption that they should be detained. 18 U.S.C. §3148(b) (mandating revocation where there is probable cause to believe that a person has committed a federal, state, or local crime while on release).

## II. The Tews are now convicted felons, subject to a rebuttable presumption that they be detained.

The Tews are guilty of conspiracy to commit wire fraud, conspiracy to commit money laundering, and substantive counts of the same. They are no longer entitled to a presumption of liberty. 18 U.S.C. § 3143(a)(1). Detention is therefore the mandatory, routine norm for any defendant in their position, namely, one following conviction and before the imposition of a custodial sentence. 18 U.S.C. § 3143(b)(1). As the Senate articulated in the report accompanying the Bail Reform Act:

> Once guilt of a crime has been established in a court of law, there is no reason to favor release pending imposition of sentence or appeal. The conviction, in which the defendant's guilt of a crime has been established beyond a reasonable doubt, is presumably correct in law.

Senate Judiciary Committee Report, S. Rep. NO. 225, 98th Cong., 1st Sess. 19 (1983). *See, e.g., United State v. Johnson*, 652 F. App'x 619, 622 (10th Cir. 2019) (affirming order of detention pending sentencing after applying presumption and concluding that defendant facing only 0-6 months' imprisonment presented flight risk). At this point in the proceedings, the Tews bear the burden to establish that they deserve the extraordinary remedy of presentence release. To do so, they must

5

show — by clear and convincing evidence — that they are neither flight risks nor dangers to the community. *See, e.g.*, *United States v. Giancola*, 754 F.2d 898, 900-01 (11th Cir. 1985) ("The 1984 Act was intended to change the presumption so that the conviction is presumed correct and the burden is on the convicted defendant to overcome that presumption."); *see also* Fed. R. Crim. P. 46(c) ("The burden of establishing that the defendant will not flee or pose a danger to any other person or to the community rests with the defendant.")/

In considering whether the Tews have met this burden, the Court should be guided by two principles  *First*, the Tews cannot overcome the presumption simply by pointing to their conformity to the terms of their pretrial release.  *See United States v. Martinez*, 2020 WL 1666804, at * 2 (W.D. Okla. April 3, 2020 ("That Defendant was previously compliant with pretrial conditions, at a time when Defendant was hopeful that he would be acquitted of his charges, is insufficient to show by clear and convincing evidence that he would neither flee nor present a danger to the community."); *United States v. Hanhardt*, 173 F. Supp. 2d 801, 806 (N.D. Ill. 2011) (noting that arguments seeking pre-sentencing release based on compliance with pre-trial release orders are "routinely rejected" because "prior to trial there is the possibility of no imprisonment, which evaporates upon a finding of guilt"). Compliance with bond conditions is not a merit badge; it is the bare minimum of what the law and the courts require of everyone on bond.

*Second*, "danger to the community" is not limited to violence. The Court should consider, instead, whether the Tews are likely to continue committing crimes

6

in the months between now and sentencing.  *See, e.g., United States v. Provenzano*, 605 F.2d 85, 95 (3d Cir. 1979) (holding that "a defendant's propensity to commit crime generally, even if the resulting harm would be not solely physical, may constitute a sufficient risk of danger to come within the contemplation of the [Bail Reform] Act"); *United States v. Reynolds*, 956 F.3d 192 (9th Cir. 1992) (concluding that "danger" may encompass pecuniary or economic harm).; *see also* S. REP. NO. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195 ("[T]he language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence."). On this front, there is at least probable cause to believe that the Tews have *not* been compliant with the terms of their release, and indeed have continued to engage in speculative cryptocurrency transactions, all while depleting limited public resources designed to protect the right of counsel for those who actually need it.

### III.   Even if the presumption were not present, the factors set forth in the Bail Reform Act weigh in favor of detention.

The law's presumption that the Tews should be detained is reinforced by all of the factors the statute asks the court to consider.  18 U.S.C. § 3143 (cross-referencing 18 U.S.C. §§ 3142(b) and (c)); 18 U.S.C. § 3142(g) (setting forth factors to consider in applying § 3142(b) and (c)).

7

### A. The nature of the crimes is serious and the circumstances suggest that the Tews are not susceptible to customary forms of deterrence.

The Court is well-acquainted with the nature of the offenses from its oversight of the eight-day jury trial. The crimes of conviction are serious.

The United States Sentencing Guidelines will likely recommend up to 188 months' imprisonment:

| Enhancement | Guideline Provision | Offense Level |
|---|---|---|
| Total Fraud Offense level | | 29 |
| *Base Offense level* | *2B1.1(a)(1)* | *7* |
| *Loss > $3.5 million* | *2B1.1(b)(1)(J)* | *+18* |
| *Substantial Financial Hardship* | *2B1.1(b)(2)(A)* | *+2* |
| *Sophisticated Means* | *2B1.1(b)(1)* | *+2* |
| **Additional Enhancements** | | |
| § 1957 laundering | 2S1.1(b)(a) | +1 |
| Leader/Organizer | 3B1.1(c) | +2 |
| Obstruction | 3C1.1 | +2 |
| **Total Offense Level** | **34** | |
| **Recommended Range** | **151-188 months** | |

The Tews face the near-certainty of a lengthy term of imprisonment. That possibility increases both the risk of flight and the risk of danger. *See United States v. Bruno*, 89 F. supp. 3d 425, 431 (E.D.N.Y. 2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long . . . a defendant has stronger motives to flee.") (cleaned up).

In its assessment of the nature of the Tews' crimes, the Court should consider their criminogenic behavior. To further their two-year fraud, the Tews used various artifices and manipulations to encourage others to commit crimes. The Court heard

8

testimony about how the Tews kept Yioulos involved in the scheme for years and how they encouraged criminal behavior from the principals of several of the sham vendor companies, including H.S. (HS CPAs), M.M. (MCG, Inc), and L.W. (PM). The Tews' willingness to use and manipulate others for their own selfish ends is precisely the type of conduct that increases the likelihood that the public will be exposed to their dangers. Put simply, more than just money is at stake — other people's potential culpability and freedom is at risk, too.

The circumstances of the crime are related to issues of flight and danger. The Tews committed their crime knowing that, someday, they might be caught. The fact that this risk did *not* deter them from committing a serious financial crime weighs in favor of the conclusion that they will continue to commit these kinds of crimes while they remain free. In reality, there is good reason to believe such criminal acts *are* continuing. Just this past October, a Denver District Court judge found that Kimberley Tew committed civil theft and conversion when she kept cryptocurrency that had been promised to an "investor." Attachment A.

Further, the recent bank records described show that the pattern of financial activity the Court saw at the trial has continued. Each month, tens of thousands of dollars deposited into Michael Tew's bank accounts; each month, tens of thousands of dollars are transferred out of those accounts, including to Kimberley Tew, using fintech applications, wire transfers, ATM and cash withdrawals, or transfers into cryptocurrency exchanges. This pattern of banking activity is entirely consistent with that during the crimes of conviction.

9

Here, the Tews delayed justice in this matter for years and showed every indication that they did not believe the day of reckoning would ever rise. If anything, the excuse that their crimes were ones solely borne of providence and opportunity is dispelled by the fact that they have continued, utterly unabated, even while under pretrial supervision.

### B.   The weight of the evidence is heavy and the likelihood of success on appeal is slight.

The court is similarly well-positioned to judge the weight of the evidence and the corresponding likelihood that any trial deficiencies amount to more than harmless error. This factor, too, adds to the presumption in favor of detention.

### C.   The Tews' respective history and characteristics suggest a profound lack of respect for the law that militates against any finding they will not flee or refrain from committing additional financial crimes (18 U.S.C. § 3142(g)(3)).

*Character and Past Conduct.* As noted above, the circumstances of the Tews' crimes, by themselves, show a profound lack of concern for legal consequences. Yioulos' frequent references to how they would all spend time in jail for what they were doing did not stop Michael or Kimberley Tew from stealing tens of thousands of dollars every week to fuel a luxury lifestyle, gamble, and speculate in cryptocurrency. When the authorities arrived, the Tews planned to flee. The Tews committed these offenses while parenting young children, heedless of the consequences their needless criminal conduct could have on their children's lives. Neither has the kind of character that suggests they can overcome the presumption

10

in favor of detention.

Michael Tew's first response to the possibility of federal charges was to ask Yioulos for money so that he could flee. He also contacted MM, wanting to know if MM had spoken to the FBI. Kimberley Tew's response was to tamper with witnesses. Her first effort was her most successful. When Michael Tew eventually agreed to submit to a proffer free from any conditions that would prevent him from cooperating against his wife, Kimberley stalked him down at the Yeti Store, disrupted his meeting with government agents, and corruptly endeavored to prevent him from testifying against her. Before that, she attempted to obstruct the investigation and prosecution by wiping her text messages. And then, when the Speedy Trial clock was ticking towards a deadline for indictment in the beginning of 2021, she sent threats to HS in an effort to prevent HS from providing information to the authorities. The responses of both suggest that each is willing to take extreme risks to avoid consequences or accountability.  Their actions further weigh against the notion that they have or will meekly submit to authorities.

*Physical and Mental Condition*. The Tews have no known health issues that would prevent or hinder flight. They have no known diagnosed mental health conditions, but the Court has been able to see and evaluate for itself the extent to which their mental conditions, including Kimberley Tew's severe gambling addiction, have encouraged risk-taking and a propensity to indulge selfish impulses. These factors do not support release.

*Family Ties*.  Michael Tew's family is here in Colorado and the Tews live in

11

Denver with their children.  The fact that they have two school-age children is perhaps the strongest factor they can point to in favor of overcoming the presumption of detention. But the mere fact that the Tews have children does not mean they won't flee and it has no bearing on whether or not they will continue to commit crimes or encourage others to do so. Most obviously: the Tews committed the crimes of conviction despite knowing that if they were caught, they'd likely face years in jail that would mean being separated from their kids.  That didn't matter. They did it anyways.  This suggests that the mere fact that the Tews are parents is insufficient to deter them from making impulsive and harmful decisions. Indeed, a perverse consequence of the pending sentencing might be to *increase* the likelihood that they will flee with their children (in the hope that they can remain outside long enough to see the children to adulthood) or to use their facility with both financial crime and cryptocurrency to hide enough ill-gotten gains to provide for them while they are imprisoned. Finally, it is difficult to believe that the Tews have not made alternative arrangements for their children at this point in the proceedings. They bear the burden of showing how this and other factors can overcome both the legal presumption of detention and the facts supporting it.  But they have not presented any evidence at all.

*Financial Resources*.  The Tews stole $5 million and put at least $2.4 million of that into cryptocurrency. The government is not capable of finding where all of those funds went, and even if everyone assumes that the two of them gambled or frittered away a substantial portion of it, there is still a high likelihood that they

12

have thousands hidden somewhere. And that's *before* the Court considers evidence in the form of the bank records described above, which show that in just *one* account the Tews have received over a million dollars in the past two years. The Tews clearly have the means to flee, which makes them flight risks. *See Matter of Extradition of Ricardo Alberto Martinelli Berrocal*, 263 F. Supp. 3d 1280, 1304 (S.D. Fl. 2017) (citing numerous cases in multiple jurisdictions across the United States holding that defendants with financial means to flee are flight risks). Separate and apart from how much money the Tews might currently have, the Court should also consider the Tews' ability to generate money, both licit and illicit: each is very familiar with cryptocurrency, adept at using social engineering to get what they want or need from people, and willing to use others' identities to further their own interests. This factor, too, supports the presumption in favor of detention.

*Length of Residence and Community Ties.* Michael Tew has family in Colorado, but he spent most of his adult life outside the state. Kimberley Tew has no ties to Colorado outside of her connection with Michael. Despite the fact that both have lived here now for several years, there is no evidence of the kind of robust community ties that would have moral suasion over their decision-making. Michael Tew can work remotely from anywhere in the world and it would be tempting for them to build a new life somewhere else, free from the possibility of a prison sentence or the efforts of civil plaintiffs to collect on any judgment. Like every other factor, this one does not help them overcome the presumption in favor of detention.

*Drug use.* The defendants each have a history of illicit drug use. This is yet

13

another factor that weighs against, rather than in favor, of release:  the coming weeks are bound to impose additional stresses on the Tews, which increases the likelihood of drug use and its attendant propensity to encourage rash and ill-considered decisions.

> **D. Alternatives to detention are unlikely to be adequate, especially where, as here, the defendants have been convicted by a jury of crimes and circumstances that are less amenable to supervision.**

Michael and Kimberley Tew are flight risks who are likely to be a continuing danger to the community who will continue to commit crimes while on release. In fact, as noted above, there is at least probable cause to believe that they *have* committed additional crimes while on release. The Court should consider whether alternatives to detention will substantially assure their appearance and prevent future criminal conduct.  Among those alternatives, either in combination or in isolation, would be home detention with electronic monitoring, coupled with stringent financial monitoring conditions, internet restrictions or monitoring, a prohibition on gambling, and drug testing.

The government submits that even imposing all of these conditions would be inadequate.  Ankle monitors can — and are — easily cut off.  *United States v. Maxwell*, 510 F. Supp. 3d 165, 177 (S.D.N.Y. 2020) ("[H]ome detention with electronic monitoring does not prevent flight; at best, it limits a fleeing defendant's head start.") (quoting *United States v. Zarger*, 200 WL 1134364, at *1 (E.D.N.Y. Aug. 4, 2000)). By the time anyone responds, it would not be difficult for the Tews to

14

have already put miles between themselves and Colorado. *United States v. Wasendorf*, 2012 WL 4793366, at *3 (N.D. Iowa Oct. 9, 2012) ("Although 'fleeing' is typically associated with fleeing abroad, fugitives flee with[in] the United States' boarders [sic] successfully as well. Moreover, it is possible—although difficult—to flee abroad without a passport.") On the road, they would have access to digital wallets bursting with cryptocurrency and experience converting that cryptocurrency into ready cash. Assuming they did not flee and submitted to home detention, financial and internet monitoring would be difficult to enforce. The Tews could — and likely would, if past performance is any indication — lie on any form asking them to report their accounts.  Even if they reported their bank accounts, they could retain profiles on any of the many widely-accessible cryptocurrency exchanges or use peer-to-peer platforms.  Likewise, pretrial services cannot be over the defendants' shoulders 24-7 ensuring that they do not misuse the internet to perpetrate further offenses. Pretrial services is unlikely to be able to stop or prevent the Tews from committing further financial crimes in real time.

## IV.    Conclusion.

The Tews have been found guilty of serious crimes and the law presumes that they should begin serving their sentences.  Now that Kimberley's ultimate gamble has proven to be a loss there is no reason to give them the opportunity to commit additional crimes or to use their considerable resources to flee. Instead, the law dictates their detention, and all available facts support it as well. For all of the reasons set forth above, the Court should revoke the defendants' bonds and order

15

that they be detained pending sentencing.

Dated this 21st day of Feburary, 2024.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:  */s/ Bryan Fields*          By:  */s/ Sarah H. Weiss*
Bryan Fields                     Sarah H. Weiss
Assistant United States Attorney Assistant United States Attorney
U.S. Attorney's Office           U.S. Attorney's Office
1801 California St. Suite 1600   1801 California St. Suite 1600
Denver, CO 80202                 Denver, CO 80202
(303) 454-0100                   (303) 454-0100
Bryan.Fields3@usdoj.gov          Sarah.Weiss@usdoj.gov
Attorney for the Government      Attorney for the Government

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

*/s Bryan Fields*
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because trial has already occurred within the Speedy Trial Act deadline.

16

## CERTIFICATE OF SERVICE

I hereby certify that on February 21ˢᵗ, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.

*s/ Sarah H. Weiss*
United States Attorney's Office

17

DISTRICT COURT
CITY & COUNTY OF DENVER, COLORADO

1437 Bannock Street
Denver, Colorado 80202

DATE FILED: September 14, 2023 12:13 PM
CASE NUMBER: 2021CV31268

**Plaintiffs:** DOGWOOD REALTY GROUP TRUST; DAVID BLUMENFELD; EDWARD BLUMENFELD; and MAX BLUMENFELD

v.

**Defendants:** KIMBERLEY TEW and MICHAEL TEW

▲ ▲ **COURT USE ONLY**

Case Number: 2021CV31268

Courtroom: 269

### ORDER ON PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DEFENDANT MICHAEL TEW'S MOTION FOR SUMMARY JUDGMENT

Before the Court are Plaintiffs' motion for summary judgment and Defendant Michael[1] Tew's motion for summary judgment. The Court received responses and replies for each motion, along with exhibits and affidavits. The Court finds and orders as follows:

The Court initially notes that Plaintiffs filed a 23-page motion and attached an additional 12 pages of the facts they claim are undisputed. The Rules of Civil Procedure do not contemplate that statements of facts may be filed separately from the motion and Plaintiffs' briefing violates the page limits for motions set out in Rule 121, § 1-15. The Court will not accept such motions in the future.

---

[1] Because this case involves multiple family members, this order refers to parties by both their first and last names for purposes of clarity.

CIV_0000030

# I.    Material Undisputed Facts

The Court recites only those undisputed facts material to the issues raised in the motions. The Court's undisputed facts are taken from the parties' affidavits and other documentary evidence attached to the motions; the Court does not rely on unsworn statements contained in the parties' briefs or unsworn statements made by the parties during discovery dispute conferences when determining the undisputed facts. The Court accepts the following facts as undisputed for purposes of these motions only.

Plaintiff David Blumenfeld was introduced to Kimberley Tew by Sandy Goldfarb who said that Kimberley Tew traded cryptocurrency on his behalf. In December 2017, David Blumenfeld and Kimberley Tew discussed cryptocurrency investments. Kimberley Tew represented that she was "not a broker [but did] this for fun." She also offered advice about cryptocurrency investment but disclaimed, "[w]hat do I know though. I'm a mom!" On December 29, 2017, David Blumenfeld texted Kimberley Tew, "If Sandy trusts you so do I."[2] The parties' arrangement appears to have been conducted primarily through texts and emails.

The parties then embarked on a relationship in which Plaintiffs provided funds to Kimberley Tew and she invested them in cryptocurrency on their behalf. The terms of the agreement (or agreements) were not in writing. In exchange for investing Plaintiffs' funds in cryptocurrency, Kimberley Tew did not receive any compensation,

---

[2] Many of the parties' text messages do not identify the dates of the communications, the Court accepts those dates that are established through Plaintiffs' affidavits, which have not been contested by Defendants.

CIV_00000681

but was to receive introductions to Plaintiffs' network for whom she could also invest. After the parties' entered into their arrangement, David Blumenfeld offered to connect Kimberley Tew with professionals in the medical community who may be able to help her daughter.

David Blumenfeld transferred $15,000 from Dogwood Realty Group Trust through a third party to Kimberley Tew on December 21, 2017. David Blumenfeld also transferred $15,000 of his own funds to Kimberley Tew through a third party on the same day. Kimberley Tew confirmed receipt and that she was "sending the funds to the exchange to purchase crypto." On December 27, 2017, Kimberley Tew confirmed she purchased "30.61224 ZEC @ $490." At one point, David Blumenfeld asked Kimberley Tew "how much did I purchase" and she replied, "I purchased 15K." Kimberley Tew texted David Blumenfeld about the value of cryptocurrency she purchased on December 27, 28, and 29, 2017.

In January 2018, David Blumenfeld told Kimberley Tew that he "had to offer" his father, Edward Blumenfeld, and his brother an opportunity to invest cryptocurrency with Kimberley Tew and asked if she "didn't mind." Kimberley Tew said she did not mind because "it's family." In January 2018, Kimberley Tew provided David Blumenfeld with additional information about bank accounts in her name; on January 12, 2018, Edward Blumenfeld transferred Kimberley Tew $50,000. On January 19, 2018, Edward Blumenfeld transferred another $50,000 to Kimberley Tew. At the time of these exchanges, Kimberley Tew mentioned several

3

cryptocurrency changes: Kraken, GDAX, and Gemini. On May 16, 2019, David Blumenfeld transferred $35,000 to Kimberley Tew.

Kimberley Tew periodically texted David Blumenfeld with updates on the cryptocurrency investments. They communicated by text about rises and falls in the value of the cryptocurrency and her analysis of the cryptocurrency market. The parties exchanged text messages on January 19, 20, February 5, March 1, 29, April 19, and December 25, 2018, and June 27, 2019. Some of Kimberley Tew's updates included graphs labeled "Blumenfeld Portfolio." Kimberley Tew also texted with Edward Blumenfeld on May 1, May 28, July 21, 31, and September 1 and 24, 2020 about the value of his investments. Kimberley Tew emailed David Blumenfeld and Edward Blumenfeld with a report of their portfolio on January 14, 2019 and described a loss of $92,000; emailed market analysis on February 7, 2019; and sent a portfolio report on April 5, 2019. Kimberley Tew emailed with Edward Blumenfeld on May 7, 2019.

At one point, Kimberley Tew said to David Blumenfeld, "you're still in 6 digits. If I think you will drop below 100K I will contact you. I have been actively trading your account and hedging/arbing[.] Probably saved 30-40K doing so." At another point, Kimberley Tew asked David Blumenfeld about his risk tolerance, specifically asking, "[o]nce I do buy and I'm holding in the interim for you what do you want your stop loss to be 10%? ...If it drops more than 10% you automatically sell." David Blumenfeld responded, "I can hold unless you think it will totally crash."

4

On May 10, 2019, in a text exchange regarding increasing an investment, David Blumenfeld asked if he needed to "[g]ive [Kimberley Tew] more money," to which she responded "Not give. Haha. Invest." On an unknown date, David Blumenfeld expressed that he had not intended that Kimberley Tew "would be trading my stuff all the time." Kimberley Tew replied that she was "more than happy to help you."

David Blumenfeld referred to the trading multiple times as "hav[ing] fun" and at another point, told Kimberley Tew, "You have free reign to trade as you please. And just have fun with my funds." In addition to telling Kimberley Tew that she had free reign over the investments, David Blumenfeld stated multiple times that he would "follow [Kimberley Tew's] lead," that she was "in charge," and that David Blumenfeld was "listening to [Kimberley Tew]."

The parties' text messages reflected that Kimberley Tew was also trading for others such as "Bob," "Sandy," and "Aaron."

Some of Kimberley Tew's communications encouraged Plaintiffs' investments. Initially, Kimberley Tew encouraged David Blumenfeld saying, "Do you plan on really getting in the game because your current position is not going to achieve the results you want" and informing him that others were "buying shovels for the gold rush." Kimberley Tew later asked David Blumenfeld if his father would back him and encouraging him about the prospects to make money. On February 5, 2018, Kimberley Tew told David Blumenfeld, "[I]f you stick with me and you follow our timeline you will not lose." Kimberley Tew said to David Blumenfeld that new tokens

5

will be "free money" and that David Blumenfeld should "stick with me... I don't roll with quitters." Another time, Kimberley Tew said, "I'm confident that I will be sending you a bit of spending money from profits next month." Kimberley Tew also told David Blumenfeld that his profits were going to go "UP UP UP."

At a few points, David Blumenfeld expressed concern with the investments. On January 22, 2018, David Blumenfeld emailed Kimberley Tew with concerns that the crypto world was falling apart; Kimberley Tew reassured him that he was "even at the moment," but offered to send his money back in USD. On March 18, 2018, David Blumenfeld complained about the currency "totally crashing again... And all you do is lose money." David Blumenfeld, however, does not appear to have made any efforts to end the relationship at the time of these complaints in 2018.

David Blumenfeld entered into another professional investment management agreement that referred to cryptocurrency assets and described them as "involv[ing] a high degree of risk and, in many cases, constitute[ing] a speculative investment."[3]

Kimberley Tew made numerous statements to Plaintiffs representing that she would send their money back to them upon request. Early in their relationship, Kimberley Tew told David Blumenfeld, "My plan is to meet you and Bob in Aspen at the end of the year and we can decide if you want cash or to keep going. I am confident you will be profitable. Of course, you can pull the cord whenever you want." On an unspecified date, Kimberley Tew told David Blumenfeld that she was "not planning

---

[3] Plaintiffs do not contest this evidence offered by Kimberley Tew, and therefore, the Court accepts it, although the document is incomplete.

CIV_00000635

on withdrawing all your profits without an order to do so" and would "start handing you some cash when it's there." Kimberley Tew also told David Blumenfeld that he could "take your profit and its' a great ride . . . do you want to get even and cash out? It's your money. Not mine." David Blumenfeld responded that he would follow Kimberley Tew's advice. Another time, Kimberley Tew said to David Blumenfeld, "I'm pulling you out at $500K and you're taking the cash!" When discussing that they should have sold Zcash, Kimberley Tew said "[N]ext time I'm just going to do it and send you the cash." At another point, Kimberley Tew told one of Plaintiffs, "you can tell me to sell at any point and I will." Kimberley Tew told David Blumenfeld that she would start sending money back if it would calm Edward Blumenfeld.

On September 24, 2020, Edward Blumenfeld texted Kimberley Tew and asked how to cancel their arrangement. On January 11, 2021, David Blumenfeld texted Kimberley Tew, "I don't like this sudden drop. Can we sell some. This is too steep too quickly." On January 20, 2021, Edward Blumenfeld texted Kimberley Tew about "cashing out at $46k each coin" and asking her to wire the money to David Blumenfeld.

On January 20, 2021, Kimberley Tew and David Blumenfeld discussed how she should send the money. David Blumenfeld requested a check; Kimberley Tew agreed to send the funds by check and also send a check for Edward Blumenfeld. Kimberley Tew expressed some concern about the method for transfer, saying she needed to be off the radar, stating "I know they are watching me." When the checks had not arrived, on January 26, 2021, Kimberley Tew told David Blumenfeld that the

7

delay was due to a move and new bank account; she promised to mail the funds the next day. When the funds did not arrive, David Blumenfeld again inquired on February 9, 2021. Kimberley Tew said she sent checks in a pink envelope with John Lennon stamps, but that if they did not arrive, she would overnight them via Federal Express. At this time, Kimberley Tew continued to discuss additional trading for David Blumenfeld saying, "I'll actually sell at 49 so you'll make a bit more money." On February 17, 2021, David Blumenfeld confirmed that the checks had not arrived. Kimberley Tew said she would ship the checks via Federal Express and send the tracking number. Kimberley Tew did not provide the information. On February 19, 2021, David Blumenfeld again asked Kimberley Tew about the status; she said that she was "going over the best and legal way" to make the transfers and would respond further after speaking with her attorney. David Blumenfeld texted Kimberley Tew again on February 20, 21, and 22, 2021, but received no response; on February 22, 2021, David Blumenfeld emailed Kimberley Tew to say that he was going to the authorities. Edward Blumenfeld texted Kimberley Tew on March 1, 2021, asking to make arrangements to have cryptocurrency coins delivered to his lawyers in Denver.

Max Blumenfeld did not know about the exchanges between Kimberley Tew and his father and grandfather about returning their funds when he reached out to Kimberley Tew on January 30, 2021. Max Blumenfeld said that he was interested in buying Ripple cryptocurrency, but that New York made it very difficult. He wondered if he could purchase it through Kimberley Tew. Max Blumenfeld said he "saw XRP today and read some Chinese blogs about them pumping it . . . I'm in NY binance isn't

8

CIV_00000637

allowed here and Coinbase dropped ripple." Kimberley Tew told him that she was not a registered broker dealer and was just a mom. Max Blumenfeld told Kimberley Tew, "[W]e're okay with risk on this particular trade" and discussed the price at which he would sell. She directed Max Blumenfeld to send funds through her father's email address. Max Blumenfeld made eight transfers between January 30, 2021 and February 11, 2021 totaling $18,500. Kimberley Tew refunded $2,000 to Max Blumenfeld on February 17, 2021. During these exchanges, Kimberley Tew asked Max Blumenfeld if the feds asked him to buy through her. She also asked to move their conversation to Telegram because she was "super paranoid."

Max Blumenfeld understood that Kimberley Tew would sell him bitcoin from her personal holdings at a discounted rate because she needed cash. Max Blumenfeld also appeared to urgently need the cryptocurrency and requested that he receive it the same day. Max Blumenfeld understood that Kimberley Tew was "giving him a 30K Bitcoin for 17k" but later understood that she "wanted 25, not 17." He agreed to that. Max Blumenfeld then said he was "just really confused" about the arrangement.

Kimberley Tew demanded payment and then said she was "done . . . I'll refund you in full." She repeated several times that she did not want anything from Max Blumenfeld and would refund him in full. Max Blumenfeld asked Kimberley Tew to "send [his funds] now" and repeated that "today really is the deadline to get this done." Max Blumenfeld ultimately asked Kimberley Tew to put him in touch with her lawyer so that "we can resolve this." At this point, the communication between Kimberley Tew and Max Blumenfeld appears to have ended.

CIV_00000638

Plaintiffs did not make any agreements with Michael Tew in writing or otherwise, and it does not appear that Plaintiffs ever communicated with Michael Tew. Michael Tew had exclusive ownership of a Gemini cryptocurrency account, opened on November 27, 2017. Kimberley Tew's Gemini cryptocurrency account was closed on May 22, 2018. Michael Tew's Gemini account began active trading on August 9, 2018. Four bank accounts are linked to Michael Tew's Gemini account and Michael Tew is listed as the owner on those accounts. Michael Tew's Gemini account received a total of $50,800 in transfers in August 2018 in multiple smaller amounts ranging from $100 to $15,000. In September 2018, Gemini noted a complaint that the Tews had created an algorithm scam; Gemini flagged Michael Tew's account as high risk. In March 2019, Gemini rejected attempts by Kimberley Tew to open other accounts and instructed staff not to accept other accounts with her. As of March 5, 2019, Gemini records show that her account was "automatically closed" and "all orders have been canceled." In September 2019, Gemini also "blacklisted" Michael Tew's account.

Plaintiffs' counsel wrote Defendants' counsel on April 2, 2021 to outline Plaintiffs' claims and request that Kimberley Tew correct her alleged misdeeds. Kimberley Tew never returned any funds to Plaintiffs.

## II.    Legal Standard

Summary judgment is appropriate only when the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue of material

10

fact, such that the moving party is entitled to a judgment as a matter of law. C.R.C.P. 56(c); *Andersen v. Lindenbaum*, 160 P.3d 237, 239 (Colo. 2007).

A material fact is one that affects the outcome of a case. *Trigg v. State Farm Mut. Auto. Ins. Co.*, 129 P.3d 1099, 1101 (Colo. App. 2005). Additionally, the issue in dispute must be genuine, such that the evidence provided in opposition of summary judgment sufficiently demonstrates a reasonable jury could return a verdict in favor of the non-moving party. *Andersen*, 160 P.3d at 239 (referencing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The moving party bears the burden to establish the nonexistence of a genuine issue of material fact. *Gibbons v. Ludlow*, 2013 CO 49, ¶ 11. Once that initial burden is met, the burden shifts to the nonmoving party to demonstrate that a triable issue of fact exists. *Cont'l Air Lines, Inc. v. Keenan*, 731 P.2d 708, 713 (Colo. 1987). If the nonmoving party cannot provide sufficient evidence to establish the existence of a triable issue of fact, then the moving party is entitled to judgment as a matter of law. *Gibbons*, 2013 CO 49, ¶ 11.

All inferences from the undisputed facts must be drawn in favor of the nonmoving party, and any doubts regarding the existence of a triable issue must be resolved against the moving party. *Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819 (Colo. 2004). The trial court's role in evaluating a summary judgment motion is not to weigh the evidence and make conclusions, but to identify whether a genuine issue is present for the jury. *Andersen*, 160 P.3d at 239.

CIV_00000640

"Summary judgment is a drastic remedy and is never warranted except on a clear showing that there exists no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Churchey v. Adolph Coors Co.*, 759 P.2d 1336, 1339–40 (Colo. 1988).

## III.   Analysis

### A. Plaintiffs' motion for summary judgment against Kimberley Tew

Plaintiffs move for summary judgment on some of their claims against Defendants.[4] Because Michael Tew filed a separate cross-motion for summary judgment on all claims against him, the Court addresses only Plaintiffs' claims against Kimberley Tew in this section of the order and addresses Plaintiffs' motion against Michael Tew in conjunction with Michael Tew's motion against Plaintiffs.

#### 1.  Civil theft

Plaintiffs move for summary judgment on their civil theft claim asserting that Kimberley Tew received, but did not return, Plaintiffs' funds. Kimberley Tew responds that there was no intent to permanently deprive Plaintiffs of the funds. Kimberley Tew also asserts that David Blumenfeld's request in January 2021 was for the return of only two Bitcoin and that there were then a series of "miscommunications" about a method and timeline for the return of funds.

On a claim for civil theft, a plaintiff must establish the elements of criminal theft: that the defendant knowingly obtains, retains, or exercises control over anything of value of another without authorization or by threat or deception, and that

---

[4] Plaintiffs do not move for summary judgment on their replevin or conspiracy claims.

12

the defendant acts intentionally in other ways such as by intending to deprive the other person permanently of the use or benefit of the thing of value. § 18-4-401(1), -(1)(a), C.R.S.[5]; *see also Scott v. Scott*, 2018 COA 25, ¶ 26. The requisite intent "may be inferred from the defendant's conduct and the circumstances of the case, but requires proof of a knowing use by the defendant inconsistent with the owner's permanent use and benefit." *Huffman v. Westmoreland Coal Co.*, 205 P.3d 501, 509 (Colo. App. 2009); *People v. Carr*, 841 P.2d 361, 363 (Colo. App. 1992) ("Intent does not have to be proven by direct, substantive evidence . . . .").

Exercising control over property "without authorization" means "that the owner of the property, or a person in possession of the property with the owner's consent, has not given the actor permission to exercise control over the property." *People v. Gracey*, 940 P.2d 1050, 1052 (Colo. App. 1996) (internal quotations omitted). Theft may be established even when initial control over a thing of value is authorized if the facts establish that the authorization ended. *People v. Treat*, 193 Colo. 570, 575, 568 P.2d 473, 475-76 (1977).

Here, Plaintiffs established that they transferred their funds to Kimberley Tew under circumstances indicating that they intended for her to return the funds to them. Kimberley Tew has not returned the funds despite Plaintiffs having demanded

---

[5] The Court analyzes Plaintiffs' theft claim under § 18-4-401(1) and -401(1)(a) as the section of the civil theft statute that most closely fits these undisputed facts. Plaintiffs also cite -401(1)(e), which requires that a defendant "knowingly retains the thing of value more than 72 hours after the agreed-upon time of return in any lease or hire agreement." These facts do not involve an undisputed lease or hire agreement, as detailed below.

13

their return at least two and a half years ago. Kimberley Tew does not contest these essential facts. These bare facts are sufficient to establish the elements of theft, even viewing all the surrounding facts in the light most favorable to Kimberley Tew.

Kimberley Tew asserts that she cannot be liable for civil theft because she was authorized by Plaintiffs to exercise control over their funds and David Blumenfeld gave her free reign in investing. But that assertion ignores that Plaintiffs ended their arrangement with Kimberley Tew and demanded return of the funds. The undisputed facts do not establish that Plaintiffs' transfers to Kimberley Tew were intended to be permanent or that the funds were a gift to Kimberley Tew for her personal benefit. Rather, the undisputed facts establish that Plaintiffs transferred funds to Kimberley Tew to invest on Plaintiffs' behalf. This is confirmed by the many messages exchanged between the parties which reflected Kimberley Tew's understanding that the funds belonged to Plaintiffs even while they were in Kimberley Tew's possession. The Court need not detail every message reflecting Kimberley Tew's understanding, but as one example, Kimberley Tew reminded David Blumenfled, "It's your money. Not mine." Kimberley Tew's authorization over the funds ended at the point at which Plaintiffs demanded the return of their funds. Her retention of the funds after demand of their return constitutes theft.

Similarly, Kimberley Tew asserts that she did not possess the requisite intent to permanently retain the funds because she offered to return them. But again, Kimberley Tew made the offers of return before Plaintiffs requested to cancel their arrangement and demanded return of the funds.

14

Kimberley Tew further asserts that she attempted to return Plaintiffs' funds multiple times but was "stymied by method and timing disagreements." Resp. p.14. This characterization of the facts is unsupported. Edward Blumenfeld plainly requested to "cancel" the parties' arrangement and requested that Kimberley Tew deliver the cryptocurrency to legal counsel. While David Blumenfeld only initially indicated that he wanted to sell "some" holdings, Kimberley Tew's failure to return those funds caused his requests to escalate to the point where he said he intended to go to law enforcement authorities. The correspondence with Max Blumenfeld demonstrates that he requested the return of his funds without response. And certainly, there was a plain demand to return all funds by the point at which all Plaintiffs' counsel sent Kimberley Tew's counsel correspondence detailing civil theft and demanding a correction of Kimberley Tew's alleged misdeeds.

The Court finds that these undisputed facts demonstrate that Kimberley Tew knowingly retained and exercised control over Plaintiffs' funds without authorization and that she acted with an intent to permanently deprive Plaintiffs of the funds. The Court, therefore, finds that summary judgment should enter for Plaintiffs on their civil theft claim.

### 2. Conversion

Plaintiffs move for summary judgment on their conversion claim asserting that Kimberley Tew received Plaintiffs' funds but did not return them even after Plaintiffs requested their return. Kimberley Tew responds that she did not exercise control over

CIV_00000844

Plaintiffs' funds without authorization because Plaintiffs willingly sent the funds to her and gave her free reign over them.

"[C]onversion is any distinct, unauthorized act of dominion or ownership exercised by one person over personal property belonging to another." *Mason v. Farm Credit of S. Colo., ACA*, 2018 CO 46, ¶ 29 (internal quotations omitted). To state a claim of conversion, a plaintiff must allege that (i) the defendant exercised dominion or control over property; (ii) that property belonged to the plaintiff; (iii) the defendant's exercise of control was unauthorized; (iv) the plaintiff demanded return of the property; and (v) the defendant refused to return the property. *Scott*, 2018 COA 25, ¶ 31. "Unlike civil theft, conversion *does not* require that the converter act with the specific intent to permanently deprive the owner of his or her property." *Id.* ¶ 32 (holding that conversion does not rest on the defendant's knowledge or consciousness of wrongdoing or wrongful intent, and that even a good faith recipient of funds can be liable for conversion). "[T]he question of whether the actor's interference with the owner's property is serious enough to constitute a conversion of the property is usually one of degree and is a question for the finder of fact." *Md. Cas. Co. v. Messina*, 874 P.2d 1058, 1065 (Colo. 1994) (internal quotations omitted).

Here, the Court finds that the essential undisputed facts clearly establish the elements of conversion. Kimberley Tew does not contest the essential facts that Plaintiffs transferred their funds to her, that Plaintiffs demanded their return, and that she has not returned them.

16

CIV_00000645

Kimberley Tew's response characterizes the parties' relationship as both one in which she worked for Plaintiffs and one in which she gifted them her services and cryptocurrency. Resp. p.2. Her response also asserts that she "was just supposed to send back the initial purchase and that was it." Resp. p.5. These assertions underscore the fact that Kimberley Tew was in possession of funds that belonged to Plaintiffs. That Kimberley Tew was holding Plaintiffs' funds is affirmed by the parties' text messages. For example, although David Blumenfeld authorized Kimberley Tew to trade as she saw fit, his direction was to have fun with "*my* funds." Kimberley Tew's repeated statements to Plaintiffs about their ability to "pull the cord" or liquidate their investments also further underscore that she was in possession of Plaintiffs' funds.

Kimberley Tew argues that Plaintiffs only demanded return of two Bitcoin, not all funds previously transferred to her. The undisputed facts belie this characterization. Although David Blumenfeld's communications initially indicated that he wanted to sell some cryptocurrency, the communications escalated until he threatened to go to law enforcement. Edward Blumenfeld requested to cancel the arrangement with Kimberley Tew, and Max Blumenfeld's messages with Kimberley Tew reveal that he, too, requested a full return of his funds. And at the very least, a demand for return of all of Plaintiffs' funds was made on April 2, 2021 in correspondence from Plaintiffs' counsel.

It is undisputed that after Plaintiffs demanded return of the funds, Kimberley Tew did not return them. Even viewing the facts in the light most favorable to

17

Kimberley Tew, the Court finds that Plaintiffs have demonstrated entitlement to summary judgment in their favor on the conversion claim.

### 3. Damages on civil theft and conversion

Plaintiffs assert that their investments were worth $1,393,381.99 at the time Plaintiffs demanded their return. Under the civil theft statute, Plaintiffs request treble damages of $4,180,145.97, in addition to their attorney fees.

"The plaintiff has the burden of proof and must establish by a preponderance of the evidence that he has in fact suffered damage and that the evidence introduced provides a reasonable basis for a computation of damages." *Club Matrix, LLC v. Nassi*, 284 P.3d 93, 96 (Colo. App. 2011) (internal citation omitted). A plaintiff must provide "substantial evidence, which together with reasonable inferences to be drawn therefrom provides a reasonable basis for computation of the damage." *Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1383 (Colo. 1993). When a plaintiff submits sufficient proof of damages, the determination of the amount of damages is solely within the province of the trier of fact, and the award may not be disturbed unless it is completely unsupported by the record. *Jones v. Cruzan*, 33 P.3d 1262, 1265 (Colo. App. 2001).

Here, Plaintiffs represent that Kimberley Tew invested their funds in cryptocurrency and held certain amounts of Bitcoin, Ether, Ripple, Zcash, and Binance for them. Using formulas pulled from "Yahoo Finance" Plaintiffs assert that the fair market value of their investments totaled approximately $1.4 million. *See* Pltf. Statement of Undisputed Facts, ¶ 53 and footnotes. Plaintiffs appear to measure

18

their damages as of the time when their counsel demanded their return. Plaintiffs do not specify this date, but the Court assumes they are referring to their counsel's April 2, 2021 letter.

Kimberley Tew does not dispute Plaintiffs' claimed damages. The Court nonetheless finds that questions of fact remain regarding the amounts of cryptocurrency held by Kimberley Tew for Plaintiffs as of April 2, 2021. The documentary evidence submitted by Plaintiffs does not sufficiently establish that Kimberley Tew purchased these particular amounts of cryptocurrency, when she purchased these amounts, or that the cryptocurrency existed in Kimberley Tew's possession on April 2, 2021. In addition, the Yahoo Finance links provided by Plaintiffs do not clearly establish the value of the claimed cryptocurrency as of a date certain. Even when the damages are undisputed, the Court cannot conclude that Plaintiffs established their entitlement to the amounts claimed based on the thin record they provided.

The Court, therefore, declines to enter summary judgment on Plaintiffs' claimed damages and a finder of fact must determine the extent of Plaintiffs' damages on the civil theft and conversion claims.

### 4. Breach of contract

Plaintiffs move for summary judgment on their breach of contract claim, asserting that the parties entered into a binding agreement and Kimberley Tew breached the agreement when she did not return Plaintiffs' investments upon request.

19

Kimberley Tew responds that there was no agreement and no meeting of the minds as to a contract; that her cryptocurrency hedging and trading for Plaintiffs was a favor or a gift because she never received any compensation; that the nature of the parties' relationship shifted over time, belying an agreement; and that she was duped into providing trading services for Plaintiffs without compensation.

On a breach of contract claim, a plaintiff must show "(1) the existence of a contract; (2) performance under the contract by the plaintiff or some justification for nonperformance; (3) the defendant's failure to perform under the contract; and (4) resulting damages to the plaintiff." *Hemmann Mgmt. Servs. v. Mediacell, Inc.*, 176 P.3d 856, 859 (Colo. App. 2007). "When performance of a duty under a contract is due any nonperformance is a breach." *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 49 (citing Restatement (Second) of Contracts § 235(2) (1979)).

"[I]t is for the factfinder to determine whether the parties have entered into a contract in the first instance. More precisely, when the existence of a contract is at issue, and the evidence is conflicting or admits of more than one inference, the factfinder decides whether a contract in fact exists." *Yaekle v. Andrews*, 169 P.3d 196, 198–99 (Colo. App. 2007), *aff'd on other grounds*, 195 P.3d 1101 (Colo. 2008). To establish the existence of a contract, "the evidence must show that the parties agreed upon all essential terms." *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986). The agreement is evidenced by the parties' manifestations of mutual assent. *Id.* For such manifestations, courts may look to "evidence of the parties'

20

conduct, their oral statements and their writings, and other evidence illuminating the circumstances surrounding the making of an agreement." *Id.*

To be enforceable, a contract must include sufficiently definite terms for a court to determine whether the contract has been performed. *Stice v. Peterson*, 144 Colo. 219, 224, 355 P.2d 948, 952 (1960). While a court may provide some contractual elements, it cannot create them, and if the language is too uncertain to identify the parties' intent, the contract is unenforceable. *Id.*

Here, the Court finds that questions of fact exist over the nature of Plaintiffs' arrangements with Kimberley Tew and whether enforceable contracts were created, including whether any agreement was supported with consideration. There are no written contracts, no documentation referring to contracts, and no references to oral contracts. The parties themselves are not clear whether one agreement covered all of Plaintiffs' investments or whether each Plaintiff had a separate agreement on the same or different terms. The text exchanges between the parties do not definitely resolve whether agreements existed between the parties on any particular terms. Discussion about contract terms appears to be entirely absent from the text messages, and the Court struggles to infer any terms from the exchanges. Indeed, even Max Blumenfeld expressed confusion about what the terms of his agreement with Kimberley Tew covered.

Viewing the facts and all inferences therefrom in the light most favorable to Kimberley Tew, the Court cannot definitively conclude that a contract existed between Plaintiffs and Kimberley Tew on sufficiently definite terms for the Court to

21

find that Kimberley Tew breached the contract. Therefore, a jury must determine whether any enforceable agreements existed, and if so, whether Kimberley Tew breached the terms of that agreement or agreements.[6] The Court, therefore, denies summary judgment on the contract claim.

### 5. Fraud and negligent misrepresentation

Plaintiffs move for summary judgment on their fraud and negligent misrepresentation claims, primarily asserting that Kimberley Tew 1) misrepresented her cryptocurrency experience in order to entice Plaintiffs to further invest; and 2) misrepresented that Plaintiffs controlled their funds and could pull out at any time. Kimberley Tew denies that she misrepresented her experience or expertise and that she did not falsely state that Plaintiffs could recover their funds because she offered many times to return their funds.

The elements of a fraud claim in Colorado are "(1) that the defendant made a false representation of a material fact; (2) that the one making the representation knew it was false; (3) that the person to whom the representation was made was

---

[6] Because the Court finds questions of fact on the elements of Plaintiffs' contract claim, it need not reach Kimberley Tew's assertion that David Blumenfeld had unclean hands because he was barred from purchasing Ripple cryptocurrency in New York, where he resides. The Court nonetheless notes that unclean hands is not a defense to a contract action seeking money damages. *See Wilson v. Prentiss*, 140 P.3d 288, 293 (Colo. App. 2006) ("The doctrine of unclean hands enables a defendant to raise an equitable defense to defeat equitable remedies, but not remedies at law."). The Court also notes Kimberley Tew does not presently provide any facts or legal authority to establish a defense of illegality.

22

ignorant of the falsity; (4) that the representation was made with the intention that it be acted upon; and (5) that the reliance resulted in damage to the plaintiff. For ease of understanding, Colorado's Model Jury Instructions unpack the fifth element into its three discrete sub-parts, requiring the plaintiff to prove separately actual reliance, the reasonableness of that reliance, and that the plaintiff's reliance caused its damages." *Bristol Bay Prods., LLC v. Lampack*, 2013 CO 60, ¶ 26 (internal citation omitted) (citing CJI–Civ. 19:1). "[A] claim of fraud requires an intentional and knowing misrepresentation or omission . . . ." *Fed. Deposit Ins. Corp. v. Fisher*, 2013 CO 5, ¶ 17 (Eid, J., concurring) (distinguishing fraud from a scrivener's error or mutual mistake). While fraud may be inferred from the actions and statements of a party, *Crawford Rehab. Servs., Inc. v. Weissman*, 938 P.2d 540, 551 (Colo. 1997), Colorado courts also have recognized that issues such as intent and purpose generally require weighing of the evidence. *People ex rel. S.N.*, 2014 COA 116, ¶ 24.

To prove negligent misrepresentation, Plaintiffs must prove that Kimberley Tew (1) in the course of her business; (2) made a misrepresentation of material fact, without reasonable care; (3) for Plaintiffs' guidance in their business transactions; (4) with knowledge that its representations will be relied upon by Plaintiffs; and (5) Plaintiffs justifiably relied on the misrepresentation to their detriment. *Allen v. Steele*, 252 P.3d 476, 482 (Colo. 2011). Whether circumstances reveal reasonable reliance is a question of fact. *P-W Invs., Inc. v. City of Westminster*, 655 P.2d 1365, 1372 (Colo. 1982).

CIV_00000892

As to Plaintiffs' assertion that Kimberley Tew made misrepresentations about her experience, Plaintiffs have not shown that any statements Kimberley Tew made about her experience or expertise were false. As a result, Plaintiffs do not demonstrate entitlement to summary judgment on this basis.

As to Plaintiffs' assertion that Kimberley Tew made misrepresentations about the return of Plaintiffs' funds, the Court finds questions of fact which preclude summary judgment. Wholly aside from the alleged falsity of Kimberley Tew's statements about Plaintiffs' ability to cash out their investments, questions of fact remain as to the reasonableness of, or justification of, Plaintiffs' reliance on those statements in these circumstances. Viewing all the facts in the light most favorable to Kimberley Tew, the undisputed facts establish that Kimberley Tew told Plaintiffs that she was not a broker, Plaintiffs appear to have transferred significant funds based only on an exchange of text messages, and Kimberley Tew's responsibilities for the funds were vaguely defined, at best. Viewing all the facts as a whole, the Court finds that a jury must determine whether under these circumstances, Plaintiffs reasonable relied on Kimberley Tew's statements that their money would be returned at any time. As a result, the Court denies summary judgment on the fraud and negligent representation claims.

### 6.  Unjust enrichment and promissory estoppel

Plaintiffs move for summary judgment on their equitable claims of unjust enrichment and promissory estoppel. These equitable claims were pleaded in the alternative to Plaintiffs' claims for money damages. *See* Compl., pp.30, 32. Having

24

determined that Plaintiffs are entitled to summary judgment on their claims for civil theft and conversion, the Court need not reach the alternative, equitable claims. *See Elrick v. Merrill*, 10 P.3d 689, 697 (Colo. App. 2000) (finding that equitable relief will not be granted if there is a plain, adequate, and speedy remedy at law).

### B. Michael Tew's and Plaintiffs' cross motions for summary judgment

Plaintiffs' complaint asserted claims against Michael Tew for civil theft, conspiracy to commit fraud, conversion, and unjust enrichment. The Court addresses Michael Tew's motion for summary judgment and Plaintiffs' motion for summary judgment against Michael Tew together.

### 1. Civil theft and conversion

Michael Tew moves for summary judgment on Plaintiffs' civil theft and conversion claims asserting that Plaintiffs cannot prove civil theft. He argues that they cannot establish that he had control over Plaintiffs' funds or that he intended to permanently deprive Plaintiffs of their property. He similarly asserts that Plaintiffs cannot prove conversion because they cannot prove that he had control over their property.

Plaintiffs respond that Michael Tew may be responsible for civil theft because the facts show that he had a Gemini cryptocurrency trading account in which there was trading activity after Kimberley Tew's Gemini account was closed. Plaintiffs make the same argument on their conversion claim.

The Court applies the authorities on civil theft and conversion previously outlined. The undisputed facts show that Plaintiffs transferred funds to Kimberley

25

Tew; there is no evidence that Plaintiffs directly transferred funds to Michael Tew. Michael Tew provided an affidavit stating that he did not take possession of Plaintiffs' funds.

Plaintiffs' response does not provide specific facts calling Michael Tew's denial into dispute. Plaintiffs do not establish that Michael Tew ever took possession of their funds from Kimberley Tew or that Michael Tew kept their funds after Plaintiffs demanded their return. While Plaintiffs contend that their transfers to Kimberley Tew correspond with activity in Michael Tew's Gemini account, the Court does not find that correlation to be established by the undisputed facts. The undisputed facts show that Plaintiffs transferred funds to Kimberley Tew from December 2017-January 2018 in amounts of $15,000, $15,000, $50,000, and $50,000. In the month of August 2018, Michael Tew's Gemini account received deposits totaling $50,800, made in multiple smaller denominations ranging from $100 to $15,000 and including seemingly random amounts such as $8,100. Michael Tew's Gemini account was closed by March 2019, before the next transfer from David Blumenfeld to Kimberley Tew in May 2019.

Plaintiffs do not establish that Michael Tew obtained control of Plaintiffs' funds without their authorization even when viewing the facts and inferences therefrom in the light most favorable to them. Funds were deposited in Michael Tew's Gemini account eight months after Plaintiffs gave money to Kimberley Tew and in different amounts than Plaintiffs' transfers to Kimberley Tew. The transfers between Plaintiffs and Kimberley Tew and the activity in Michael Tew's Gemini account are

26

not sufficiently close in time or amounts for proximity alone to create genuine disputes of fact regarding whether Plaintiffs' money was deposited in Michael Tew's Gemini account.

Plaintiffs reason that any cryptocurrency trading by Kimberley Tew "necessarily" transpired through Michael Tew's account, but Plaintiffs do not establish that the Gemini exchange was the sole means by which cryptocurrency may be traded; that it was the sole exchange by which Plaintiffs' funds were traded (rather, the undisputed facts reference exchanges in addition to Gemini); or that Plaintiffs' funds were placed in Michael Tew's Gemini account as opposed to Michael Tew's own funds or even funds from others for whom Kimberley Tew invested. Having elected to forego taking depositions to establish facts and without witnesses, including any experts, who can trace Plaintiffs' funds to Michael Tew's account, Plaintiffs cannot demonstrate disputes of fact that Michael Tew exercised control over their money without authorization, and as to civil theft, that he acted with an intent to permanently deprive Plaintiffs of the funds. Plaintiffs' arguments amount to mere speculation and are insufficient to create a genuine dispute of material fact, Therefore, Michael Tew is entitled summary judgment on Plaintiffs' civil theft and conversion claims.

For all the same reasons, the Court finds that Plaintiffs do not establish that they are entitled to summary judgment against Michael Tew for civil theft or conversion.

27

## 2. Conspiracy

Michael Tew moves for summary judgment on the conspiracy claim. He asserts that Plaintiffs cannot show that he was involved in a conspiracy to defraud Plaintiffs, including because Plaintiffs' funds were never deposited in any bank account owned or controlled by him, and that Plaintiffs do not have proof that he acted with the requisite state of mind.

To recover for civil conspiracy, a plaintiff must show "(1) an object to be accomplished; (2) an agreement by two or more persons on a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result." *Magin v. DVCO Fuel Sys., Inc.*, 981 P.2d 673, 674-75 (Colo. App. 1999); *see also* CJI-Civ. 27:1. "[T]he essence of a civil conspiracy claim is not the conspiracy itself, but the actual damages resulting from the acts done in furtherance of the conspiracy." *Resol. Tr. Corp. v. Heiserman*, 898 P.2d 1049, 1055 (Colo. 1995). "The court will not infer the agreement necessary to form a conspiracy; evidence of such an agreement must be presented by the plaintiff." *Nelson v. Elway*, 908 P.2d 102, 106 (Colo. 1995).

Plaintiffs contend that Michael Tew did not meet his burden of proof to show that he was not engaged in a conspiracy. But Plaintiffs misapprehend the burden of proof. Michael Tew need only come forward to demonstrate an absence of genuine issues for trial. *TCD, Inc. v. Am. Fam. Mut. Ins. Co.*, 2012 COA 65, ¶ 7. Michael Tew

28

CIV_00000057

satisfied that initial burden with his affidavit that he never had Plaintiffs' property and that cryptocurrency activity in his account did not use Plaintiffs' funds. Michael Tew also pointed to the absence of any communications between him and Plaintiffs and the absence of any communications that would show an agreement between him and Kimberley Tew to defraud Plaintiffs.

After that initial showing, Plaintiffs bear the burden of proof to demonstrate that there are genuine disputes of fact on the elements of a conspiracy. *Id.* Plaintiffs respond only with the facts that Michael Tew's Gemini account became active after his wife's account closed. Even viewing these facts in the light most favorable to Plaintiffs and affording Plaintiffs all inferences from those facts, Plaintiffs do not establish an agreement between Michael Tew and Kimberley Tew on a course of action to accomplish the object of the alleged conspiracy or acts taken in furtherance of that course of action As a result, Michael Tew is entitled to summary judgment on the conspiracy claim.

### 3. Unjust enrichment

Michael Tew also moves for summary judgment on the unjust enrichment claim asserting that Plaintiffs have not proved that he received any benefit from Plaintiffs' funds. Plaintiffs respond that Michael Tew has not shown that he did not receive a benefit, that the Tews were married, and that any benefit to Kimberley Tew that supported their lifestyle was a benefit to Michael Tew.

Unjust enrichment "is a judicially-created remedy designed to undo the benefit to one party that comes at the unfair detriment of another." *Lewis v. Lewis*, 189 P.3d

29

1134, 1141 (Colo. 2008). A claim for unjust enrichment requires proof that "(1) the defendant received a benefit (2) at the plaintiff's expense (3) under circumstances that would make it unjust for the defendant to retain the benefit without commensurate compensation." *Pulte Home Corp. v. Countryside Cmty. Ass'n, Inc.*, 2016 CO 64, ¶ 63 (internal quotations omitted).

Michael Tew met his initial burden to show an absence of disputed facts on unjust enrichment with his affidavit that he did not receive Plaintiffs' funds.

Plaintiffs then must respond to the motion for summary judgment with specific facts to demonstrate that Michael Tew received a benefit. *See* C.R.C.P. 56(e) ("an adverse party may not rest upon the mere allegations or denials of the opposing party's pleadings, but … must set forth specific facts showing there is a genuine issue for trial."); *see also People ex rel. S.N. v. S.N.*, 2014 CO 64, ¶ 17 (finding that a litigant cannot create a genuine dispute of fact merely by asserting a conclusion without evidence to support it). *Cf. People v. Hernandez & Assocs., Inc.*, 736 P.2d 1238, 1240 (Colo. App. 1986) (finding that mere speculation is insufficient to support summary judgment). Plaintiffs contend that the burden is on Michael Tew to show that he did not benefit from Plaintiffs' funds and that he bears the burden to trace the ultimate resting point of Plaintiffs' funds. But on Michael Tew's motion, it is Plaintiffs who bear the burden to respond with sufficient facts to demonstrate a dispute as to whether Michael Tew received a benefit from any appropriation of Plaintiffs' funds; it is also Plaintiffs' burden to show facts from which a jury could find that circumstances make it unjust for him to retain that benefit. Plaintiffs' limited

30

evidence does not sufficiently create triable issues on those elements. Plaintiffs do not establish that Kimberley Tew used Plaintiffs' funds in tangible ways that benefitted Michael Tew. It is not sufficient for Plaintiffs to assert that Michael Tew was unjustly enriched simply because he was married to Kimberley Tew.

Plaintiffs assert that courts have found that a spouse may be liable for unjust enrichment when the spouse gained an interest in property obtained with misappropriated funds. But in the cases cited by Plaintiffs, proof existed that the spouse obtained property or had an interest in property that was the product of ill-gotten funds. *In re Marriage of Allen*, 724 P.2d 651, 659 (Colo. 1986) (holding that wife may be subject to an equitable lien or constructive trust for property received in separation agreement when property was obtained with embezzled funds); *Bank of Am. Corp. v. Gibbons*, 173 Md. App. 261, 918 A.2d 565 (2007) (holding that wife may be subject to a unjust enrichment claim when she wrote checks on a joint bank account that contained stolen funds); *McMerty v. Herzog*, 702 F.2d 127 (8th Cir. 1983) (affirming that wife was not entitled to proceeds of sale of land held in joint tenancy when the land was purchased with funds wrongfully acquired). Here, Plaintiffs cannot trace any wrongfully-acquired funds to Michael Tew. Plaintiffs also do not establish any specific ways in which Michael Tew benefitted from Kimberley Tew's use of Plaintiffs' funds. Plaintiffs speculate that Kimberley Tew used their money to fund her lifestyle and that Michael Tew must have benefited because they are married, but Plaintiffs have not come forward with specific facts to show particular ways in which Michael Tew benefitted.

<div align="center">31</div>

Because Plaintiffs do not establish that Michael Tew benefitted from any use of Plaintiffs' funds, Michael Tew is entitled summary judgment on Plaintiffs' unjust enrichment claim. For the same reasons, Plaintiffs do not establish either that they are entitled to summary judgment against Michael Tew for unjust enrichment.

## IV.    Conclusion

For the reasons stated, Plaintiffs' motion for summary judgment against Kimberley Tew is GRANTED in part and DENIED in part. Michael Tew's motion for summary judgment is GRANTED; Plaintiffs' motion for summary judgment against Michael Tew is DENIED. Michael Tew is dismissed from the case.

**SO ORDERED** this 14th Day of September, 2023.

BY THE COURT

_____
STEPHANIE L. SCOVILLE
Denver District Court Judge

CIV_00000661

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com, rodriguez@slhlegal.com), David Scott Kaplan (hickam@slhlegal.com,
kaplan@slhlegal.com, rodriguez@slhlegal.com), Richard Kent Kornfeld (admin@rklawpc.com,
erin@rklawpc.com, kate@rklawpc.com, rick@rklawpc.com), Lisa Marie Saccomano
(lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale Schall
(jason@bowsch.com, jasondschall@yahoo.com), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), clinde
(colin_linde@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9559161@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 2/21/2024 at 12:46 PM MST and filed on 2/21/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 451(No document attached) |

**Docket Text:**
 ORDER as to Michael Aaron Tew, Kimberley Ann Tew re [450] MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA.

Mr. Tew and Mrs. Tew must each file responses to the government's [450] Motion to Detain on or before February 27, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/21/2024. Text Only Entry (dddlc3, )

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,

mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

<div align="center">

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

</div>

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

<div align="center">

**DEFENDANT KIMBERLEY TEW'S RESPONSE TO GOVERNMENT'S**
**MOTION FOR DETENTION PENDING SENTENCING (ECF #450)**

</div>

---

Kimberley Tew, by and through counsel David S. Kaplan and Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC submits *Defendant Kimberley Tew's Response to Government's Motion for Detention Pending Sentencing (Doc. #450)* and states the following:

<div align="center">

**Release History**

</div>

An indictment naming Kimberley Tew was filed on February 3, 2021 (Doc. #83). A summons for Mrs. Tew's appearance was issued on the same day instructing her to appear before the court on February 10, 2021 (Doc. #87). On February 10, 2021 Mrs. Tew appeared and Magistrate Mix authorized an unsecured bond in the amount of $10,000.00 (Doc. #98). An order setting conditions of release was entered that same day (Doc. #99). On July 15, 2021 in response to Mrs. Tew's *Motion to Modify Conditions of Release* (Doc. #134) Magistrate Mix modified the conditions by

removing the requirement of home confinement and radio frequency, imposing GPS monitoring and curfew times (exceptions allowed at the discretion of probation) (Doc. #138).

On March 25, 2022, this court granted *Defendant Kimberley Tew's Motion for Amendment of Conditions of Release* (Doc. #187). Among other findings the court commented that a potentially lengthy sentence alone does not carry the government's burden of persuasion that she poses a flight risk absent GPS monitoring. Despite being made aware of text messages produced from Defendant Michael Tew suggesting the family might flee, the court noted Mrs. Tew's response indicating "[she thinks we should all turn ourselves in and end it [.]" The court granted Mrs. Tew's request removing the GPS location monitoring device (Doc. #190). Mrs. Tew filed an *Unopposed Motion to Permit Out-of-State Travel* on June 16, 2023 (Doc. #331) which was granted by this court the same day (Doc. #332). Mrs. Tew, after reducing the severity of her conditions of release and being granted permission to leave the state, continued throughout the course of this prosecution to abide by the conditions of bond, attend all required court appearances, including the trial of this matter.

An eight-day trial was held with guilty verdicts rendered on February 15, 2024. The jury having been excused, the court took up the matter of presentence release. After acknowledging the considerations are different once a verdict is rendered, the court concluded that neither defendant has displayed "any reason to

2

think they are a danger to the community or that they are a flight risk" and allowed

their continued release with the added condition of GPS monitoring (Daily

transcript for February 15, 2024, at page 10).

### **Standard for Release**

The government recognizes that 18 U.S.C. §3143(a)(1) *Release or detention*

*pending sentence,* allows for the release of a defendant if the "judicial officer finds by

clear and convincing evidence that the person is not likely to flee or pose a danger to

the safety of any other person or the community…". *Id.* The court has reached the

conclusion required by statute and Fed.R.Crim.P. 46 (c) for release.  Having made

such a finding Mrs. Tew is eligible to remain out of custody pending sentencing in

accordance with 18 U.S.C. §3142 (b) or (c).

The government in their motion often confuses the provisions under which

Mrs. Kimberley Tew should be evaluated for presentence release.  At times it cites

to 18 U.S.C. §3143 (b) which applies to defendant's found guilty of specific offenses

in subparagraph (A) (B) or (C) of subsection (f)(1) of section 3142, none of which

apply to Mrs. Tew.  Equally mistaken are cases involving the need to find

"exceptional reasons" why a person's detention may not be appropriate by citing

cases such as *United States v. Martinez,* 2020 WL 1666804 (W.D. Okla. April 3,

2020) affirming the trial court's decision not to reconsider an order of detention)

involving a drug trafficking charge subjected to § 3145 (c) considerations and cited

for the proposition that compliance with pretrial conditions are not enough to rebut

3

the presumption of release. Or referring to *United States v. Giancola,* 754 F.2d 898 (11th Cir. 1985) a case involving release pending appeal.

The Tenth Circuit in *United States. v. Johnson*, 652 F. App'x 619 (10th Cir. 2019) (cited by the government) considered the defendant's faithfulness to requirements imposed during a 5-year pretrial release, timely appearance for court dates, family ties and surrender of passport as appropriate considerations for presentencing release. The trial court's denial of release was affirmed based on its stated concern about the risk of non-appearance.

Recognizing the argument for presuming Kimberley Tew is a flight risk or danger to the community as required in §3143 (a) is not persuasive, the government turns to factors contained in 18 U.S.C. §3142(g). Their position is just to regurgitate the nature of the offense which the court has been privy to long before the trial and presumably considered when continuing Mrs. Tew's release after the verdicts were rendered. The facts establishing the fraud, guideline calculations, Mr. Yioulos's involvement in the offense, are hardly new to the court or the government, including during the times the government did not object to relaxing the conditions of release by permitting travel out of state.

The government requests the court make inappropriate factual conclusions absent an evidentiary basis, suggested by conjecture, and lacking in the most minimum requirements of due process considerations. Concluding that a swift probable cause arrest interrupted an attempt to flee is not based on any reliable

4

information relating to Mrs. Tew.  Admitting Mrs. Tew has no known diagnosed mental health conditions, it asks the court to draw mental health conclusions as a basis for denying release.  It is offensive for the government to make an argument for detention by implying Mrs. Tew ignored court orders and deadlines, an accusation more suited if directed at counsel.  Criticizing Mrs. Tew for a defense implicating Mr. Tew is not grounds to deny release but rather raises her right to a jury trial and counsel's responsibility to present a defense on her behalf.  Arguing for detention based on a delay in bringing this case to trial when continuances were granted for multiple legitimate reasons and with the acquiescence of the court is not legitimate cause.  Mr. Fields further suggests that their release pending sentencing would be the result of a two-tier system of justice, one for the wealthy and one for the poor.  As an attorney who has dedicated a career to the representation of indigent defendants, such an accusation is insulting to both counsel and the court.

## **Perjury Allegation**

The government further makes an allegation of perjury requesting the court order release to the government of the Tews' respective CJA affidavits to aid in a potential investigation into additional criminal behavior and a determination of whether an indictment for perjury will be pursued.  This allegation and request are not appropriately raised in a response to the court indicating a willingness to consider a motion to modify conditions. (Daily transcript for Feb. 15, 2024, at page 16). Should the court entertain a motion for release of the affidavits, counsel

5

requests an opportunity to address the government's position. Seeking such an order to obtain evidence of criminal conduct with the threat of having committed perjury pursuant to 18 U.S.C. §1621 requires an opportunity to be heard and a hearing where additional argument can be presented.

## Conclusion

The court concluded that clear and convincing evidence based on Mrs. Tew's conduct, pretrial release behavior, costs, and risks of appearing for trial, ties to the community including young children, among other considerations, establish that she is unlikely to flee. The government is attempting to establish her danger to the community by recounting circumstances long known to the court or established with a paucity of evidence. The court has already added the condition of GPS monitoring which was accomplished before Mrs. Tew left the court on the day of the verdict. Home detention does not increase the likelihood of what has already been shown as compliance with terms of release, as the government in its own motion stated, "home detention does not prevent flight." Despite the government's accusations there have been no violations of pretrial release filed with the court. No substantiated allegations of improper financial dealings or internet indiscretions while released. The accusation that Mrs. Tew engaged in illegal drug consumption was sketchy at best and alleged to have occurred over 10 years ago.

The court has imposed a reasonable addition to Mrs. Tew remaining out of custody until sentencing. No other conditions need be imposed.

6

Dated: February 27, 2024.


s/ David S. Kaplan
David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
Phone: 720.689.8909

*Attorneys for Kimberley Ann Tew*


## Certificate of Service

I certify that on February 27, 2024, I electronically filed the foregoing *Defendant Kimberley Tew's Response to Government's Motion for Detention Pending Sentencing (ECF #450)* with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record:


s/ Brenda Rodriguez
Brenda Rodriguez

7

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com, rodriguez@slhlegal.com), David Scott Kaplan (hickam@slhlegal.com,
kaplan@slhlegal.com, rodriguez@slhlegal.com, spoole@wpparalegal.net), Richard Kent
Kornfeld (admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com, rick@rklawpc.com), Lisa
Marie Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale
Schall (jason@bowsch.com, jasondschall@yahoo.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Sarah Hunter Weiss
(caseview.ecf@usdoj.gov, maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), clinde
(colin_linde@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), Probation-General
(cod_efiling@cod.uscourts.gov), USM-Criminal Division (gillian.fleck@usdoj.gov,
royce.namoca@usdoj.gov, scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov,
triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov), ad hoc
(prose_chambers@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9589608@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/12/2024 at 1:21 PM MDT and filed on 3/12/2024

**Case Name:**        USA v. Tew et al

**Case Number:**    1:20–cr–00305–DDD

**Filer:**

**Document Number:** 455(No document attached)

**Docket Text:**
 ORDER re [450] Motion to Detain Defendants Michael and Kimberley Tew. The government's motion questions whether Mr. and Mrs. Tew are still eligible for CJA–appointed counsel for this case. There is sufficient evidence to call into question their present eligibility under 18 U.S.C. § 3006A(c).

The issue of whether Michael Tew and Kimberley Tew remain entitled to ongoing court–appointed counsel under Section 3006A(c) is therefore REFERRED to Magistrate Judge Susan Prose. All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential un–sealing of any prior CJA affidavits, will be addressed at a detention hearing before this Court as

**outlined below.**

**It is therefore ORDERED that a Hearing on the [450] Government's Motion is SET for April 22, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20−cr−00305−DDD−2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, rodriguez@slhlegal.com,
spoole@wpparalegal.net), Kristen M. Frost (frost@ridleylaw.com, grant@ridleylaw.com,
mckinley@ridleylaw.com), Lisa Marie Saccomano (lisa.saccomano@kutakrock.com,
trina.rioux@kutakrock.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Jamie Hughes
Hubbard (hickam@slhlegal.com, hubbard@slhlegal.com, rodriguez@slhlegal.com), Jason Dale
Schall (jason@bowsch.com, jasondschall@yahoo.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), clinde
(colin_linde@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc6 (theodore_furchtgott@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), Probation-General
(cod_efiling@cod.uscourts.gov), USM-Criminal Division (gillian.fleck@usdoj.gov,
royce.namoca@usdoj.gov, scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov,
triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9589683@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
```
Content–Type: text/html

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/12/2024 at 1:39 PM MDT and filed on 3/12/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 457(No document attached) |

**Docket Text:**
 **ORDER as to Kimberley Ann Tew. A Sentencing Hearing as to Kimberley Tew is SET for August 8, 2024 at 1:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, )**


**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com,

spoole@wpparalegal.net

Richard Kent Kornfeld      rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com, rodriguez@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

   1.  MICHAEL AARON TEW and
   2.  **KIMBERLEY ANN TEW**,
      a/ka Kimberley Vertanen,

     Defendants.

---

## STATEMENT REGARDING SENTENCING OF KIMBERLEY TEW

---

Jonathan Yioulos told Kimberley that what they were doing was "1000% fraud." ECF No. 341-1 (Log Entry #37[1]). Her own husband and co-conspirator encouraged her to make realistic deals, pay off her debts, and move on. *Id.* (Log Entry # 129). But Kimberley didn't care and she didn't want to move on. She knew what she was doing and she wanted it all. She wanted to gamble with other people's money, speculate in cryptocurrency risk-free, and enjoy luxury living without a life of labor. Her only complaint was that the people around her weren't stealing enough fast enough frequently enough. Day after day for nearly two years, she cajoled,

---

[1] The text exchange corresponding to this entry, marked as Government Exhibit 637, was admitted at trial after the Court clarified that messages from Yioulos were in furtherance and unprotected by a privilege.

1

comminated, and corrupted everyone around her in the selfish pursuit of more and

more money. Without her, it is highly likely that this crime would not have

occurred. She was the animating force behind a $5,053,878.50 fraud conspiracy that

destroyed lives and cut at the fraying bonds of trust that our society relies upon for

its continued commercial prosperity. Kimberley Tew is the most culpable of the

conspirators and deserves the highest sentence.

The government recommends that the Court impose a top-of-the-Guidelines

sentence of 151 months' imprisonment, the maximum three-year term of supervised

release, and a fine of $250,000 (the "Recommended Sentence").

## I. MICHAEL AND KIMBERLEY TEW COMMITTED WIRE FRAUD AND THEN USED THE BANKING SYSTEM TO HANDLE ITS PROCEEDS, ALL WHILE REFUSING TO PAY TAXES[2]

Evidence at trial showed that Michael Tew, Kimberley Tew, and Jonathan

Yioulos engaged in a complex scheme to defraud a Florida-based company, N.A.C.,

Inc. ("the Victim Company") of more than $5 million through the submission of

---

[2] This statement of facts is repeated without change in the sentencing statements for both Michael and Kimberley Tew. The court has already found by a preponderance of the evidence that many of the statements in the government's *James* proffer, ECF No. 341-1, were in furtherance of the charged conspiracy. ECF No. 361. That is sufficient for the Court to rely on those statements for purposes of making findings relevant to sentencing. Because the *James* log is easily searchable and accessible on the docket and because only some of those statements were admitted at trial even though those and others are relevant for sentencing, the government cites here to the *James* log when describing defendant statements and incorporates both the *James* Proffer, ECF No. 341, and the statements found to be in furtherance in the log, ECF No. 341-1, by reference. Other citations are to admitted government exhibits.

fraudulent invoices billing the Victim Company for services never rendered. Their conspiracy began in August 2018 and ended only after the intervention of federal law enforcement in July 2020. [Testimony of Jonathan Yioulos; GX 1002,1003, and 1008]

Michael Tew and Kimberley Tew — sometimes borrowing the identities of their friends, their associates, and those friends' and associates' companies — submitted these invoices on behalf of what appeared to be six different entities. They calculatingly adjusted the amounts demanded by each invoice based on the Victim Company's resources at any given moment. [Testimony of Jonathan Yioulos]. As the Victim Company paid these invoices, Michael and Kimberley Tew engaged in multiple financial transactions through multiple financial institutions in amounts greater than $10,000 from money they knew to be the proceeds of wire fraud. [GX 1009 − 1023].[3]

Michael Tew was convicted by a jury of failing to file taxes. But both he and Kimberley Tew had previously filed tax returns and each was therefore aware of their obligation to file tax returns. Neither did so between 2018 and 2019. [GX 110-112] Instead, each took affirmative steps to evade or defeat assessment and payment of their taxes.

---

[3] These exhibits were not admitted at trial, but were shown to the jury as summaries. They reference the underlying exhibits that *were* admitted at trial and are the handiest reference.

## A.    The Individuals and Entities Involved

### 1.    *Michael Aaron Tew*

Michael Tew is a resident of the State of Colorado. He has a master's degree in business administration from New York University and has held roles in finance, to include serving as Chief Financial Officer (CFO) for private companies, including the Victim Company. As part of this scheme, he submitted fraudulent invoices from Colorado to the Victim Company, communicated and coordinated with his coconspirators Kimberley Tew and Jonathan Yioulos in and from Colorado, and engaged in financial transactions largely in Colorado with the proceeds of the fraud. [Testimony of C.A., Testimony of B.P., A.S., Jonathan Yioulos, Lisa Palmer and Roman Hernandez, GX 535, 571-576, 974, 975]

He also recruited others into the scheme, both witting and unwitting. He recruited Jonathan Yioulos to knowingly agree to be part of the fraud. But he also used his friend, L.W., to help him. [Testimony of Jonathan Yioulos; GX 975]. Michael Tew used interstate wires to submit these fraudulent invoices by electronic mail to the Victim Company, and he engaged in financial transactions that were executed through the use of interstate wires. [Testimony of M.O.]. The defendant personally benefitted from the scheme to defraud, setting up multiple bank accounts at several different institutions to take custody of scheme proceeds and sometimes using third parties to receive fraud money in their bank accounts. [GX 312, 363, 975, 1001]. At all times during the conspiracy, he was married and remains married to coconspirator

4

Kimberley Tew.

He did not pay taxes on either his legitimate or illegitimate income. [Testimony of Roman Hernandez, GX 101 – 112]

### 2. *Jonathan Yioulos*

Jonathan Yioulos is a resident of the State of New York and was, at some prior to 2018, the Director of Finance for the Victim Company. Sometime between 2018 and July 2020, Yioulos became the Victim Company's controller while continuing to perform his responsibilities as Director of Finance. Michael and Kimberley Tew recruited Yioulos to be a part of their fraud scheme by leveraging Michael Tew's friendship and by promising to pay him bitcoin.

Once Yioulos had agreed to start giving the Tews money based on fraudulent invoices, they kept him involved in the conspiracy through a combination of emotionally manipulative techniques, best summarized in one of Michael Tew's texts to Kimberley: "I'm trying being nice I'm trying being mean I'm trying to threaten I'm trying to help him I'm trying to play ball I'm trying every method and he is not responding." ECF No. 341-1 (Log Entry #341); *see also id.* (Log Entry 347 ("I have to threaten hi" [sic]). As shown at trial, Michael and Kimberley Tew maintained Yioulos's involvement in a two-year criminal enterprise by making appeals to friendship — offering Yioulos bitcoin, ECF No. 341-1 (all entries in furtherance referencing Indictment ¶ 25); other things of value like football tickets, *Id.* (Log Entry # 317); and payments for his student loans and mortgage, *Id.* (Entries # 130 & 131).

5

When that wouldn't work, they preyed on his fears and anxieties — threatening to take action that would cause Yioulos to lose his accounting license, *Id.* (Log Entry # 59); to adversely affect Yioulos's marriage and then divorce proceedings, *Id.* (Log Entry # 265); and to trick Yioulos into believing that, if stopped sending money, others would call the Victim Company and have Yioulos fired. *Id.* (Log Entry# 650). [Testimony of Jonathan Yioulos; Testimony of Lisa Palmer].

Yioulos benefited financially from the conspiracy, but only on the terms and conditions dictated by Michael and Kimberley Tew, and at a much lower level. The Tews ultimately got over $5 million, whereas Yioulos got around $100,000. The Victim Company fired Yioulos on July 7, 2020, after his involvement in the conspiracy was uncovered by a combination of another employee and law enforcement. [Testimony of Jonathan Yioulos; Testimony of A.S., Testimony of C.A.; Testimony of Sarah Anderson; Testimony of Lisa Palmer].

### 3. *Kimberley Tew*

Kimberley Tew is a resident of Colorado who conspired with Michael Tew and Jonathan Yioulos to execute this scheme to defraud her husband's former employer. Kimberley Tew pushed the fraud forward by directing Michael Tew to ask Jonathan Yioulos for payments. She used those funds to stake her gambling wagers, to subsidize a separate cryptocurrency investment scam that she ran in parallel with the charged fraud, and to support her opulent lifestyle. [Testimony of Jonathan Yioulos; GX 974 and 975].

6

She represented to others that she graduated from Fordham University in New York and that she had previously held jobs at Google. [Testimony of C.A.; Testimony of M.M.]. She used tactics similar to Michael Tew's to keep Yioulos involved. "Play into greed," she once encouraged Michael. ECF No. 341-1 (Log Entry # 130). On another occasion she suggested that Yiolous was a "kid" who could be manipulated with "something small" and then worked with Michael to offer Yioulos concert tickets or sports tickets. *Id.* (Log Entry # 317). Lurking behind it all was her ruthless willingness to exploit others' fears and weaknesses. *Id.* (Entries #59, 117, 118, 265, 317). Kimberley Tew also tried to recruit others to participate in the fraud, including H.S. and M.M.. [Testimony of H.S.; Testimony of M.M.]

### 4.    *The Victim Company*

The Victim Company was headquartered in Florida with an office in Buffalo, New York. The Victim Company operated in the United States and around the world. Its subsidiaries included N.A.C. Group, Inc., d/b/a N.A., which operates as an airline, and provides freight forwarding solutions. N.A.C. Holdings, Inc. ("NAC Holdings") was one of several affiliates of the Victim Company. C.A., the owner of the Victim Company, testified at trial to the immense hardships imposed by the fraud, which created cash shortages that strained the company's reputation with vendors and caused enormous stress on its staff. At times, there were concerns the company wouldn't even be able to make payroll. [Testimony of C.A.; Testimony of Jonathan Yioulos]. These hardships were corroborated in contemporaneous statements among

7

the conspirators. ECF No. 341-1 (Entries # 84, 85, 156, 186-188, 194, 196). C.A. also testified that he placed a tremendous amount of professional and personal trust in Michael Tew before the Tews betrayed him and the company and Michael Tew was fired in September 2018.

### 5. Sand Hill, LLC ("Sand Hill")

In February 2012, Michael Tew incorporated Sand Hill in New York. Sand Hill was a single-member LLC with Michael Tew as its only member. In or around November 2018, Michael Tew registered Sand Hill as a foreign limited liability company in Colorado. He then opened accounts for Sand Hill at local bank branches in Colorado to further dissipate the fraud proceeds across several different financial institutions and accounts. During the course of this fraud, in an effort to defeat detection, Michael Tew and Jonathan Yioulos agreed to abbreviate Sand Hill, Inc.as "SHI LLC" on records used by NAC's accounting team in order to create the false impression of another entity. [Testimony of Jonathan Yioulos; Testimony of B.P., Testimony of R.T.]; ECF No. 341-1 (Log Entries # 54, 55, 61, 199, 207, 208, 217).

### 6. Sham Vendors associated with the Tews' friends and partners: HS CPA, MCG, Inc., 5530 JD and PM

HS CPA; MCG, Inc.; 5530 JD, and PM were all entities affiliated or purportedly affiliated with former friends or associates of Michael and Kimberley Tew. Michael Tew had the connection with PM. Kimberley Tew had connections with H.S., M.M. and C.R., who were the supposed principals of HS CPA; MCG, Inc.; and 5530JD. Michael and Kimberley Tew submitted or caused to be submitted fraudulent invoices

to the Victim Company for each of these four entities. [Testimony of H.S.; Testimony of M.M., Testimony of Jonathan Yioulos, Testimony of Lisa Palmer; GX 601, 603, 607, 611, 629, 638, 642, 647, 649, 674, 680, 683, 684, 688, 692 700, 703, 706, 711, 716, 719, 723, 727, 732, 737, 742, 748, 764, 801, 974, GX 975, 1002, 1003, 1004-1007, 1008[4]].

Kimberley Tew created a fake email account in the name of MCG, Inc., only slightly modifying the name of that company so that it would appear to be from M.M.. [Testimony of Lisa Palmer, GX 524, 980-984]. Michael Tew created fake email accounts for C.R. and P.M. [Testimony of Lisa Palmer, GX 520, 521, 975]. These invoices were paid by the Victim Company. [Testimony of A.S., Testimony of Jonathan Yioulos, Testimony of Matt Morgan, GX 1002, 1003, 1004, 1005].

### 7.    *Global Fuel Logistics, Inc. (GFL)*

On or around July 9, 2019, Michael Tew created and registered GFL in Wyoming. [GX 546]. A couple of days later, on or about July 11, 2019, the defendant registered GFL in Colorado as a foreign corporation and, shortly thereafter, opened additional bank accounts for GFL at local bank branches in Colorado. [Testimony of Matt Morgan; Testimony of Lisa Palmer; Testimony of R.T.; GX 526, 975, 1001]. Michael Tew created GFL to diversify the names of the entities submitting fraudulent invoices to the Victim Company and to align the name of the shell company more closely with the business of the Victim Company. These efforts assisted in evading

---

[4] Government Exhibits 1004-1007 were shown to the jury but not admitted. They reference the underlying exhibits and remain handy references for purposes of identifying bank transactions.

9

the Victim Company's detection. [Testimony of Jonathan Yioulos, Testimony of A.S.]. The Victim Company paid invoices based on the fraudulent pretense that GFL was one of its vendors. [Testimony of Jonathan Yioulos, Testimony of A.S., Testimony of Matt Morgan, GX 539, 841, 844, 845, 875, 887, 903, 912, 928, 933, 935, 950, 952, 953, 954, 955, 959, 969, 1002, 1003, 1006].

Michael Tew intentionally did not list the Colorado address he shared with Kimberley Tew on the registration materials with the States of Colorado and Wyoming. Instead, he chose to list an address in Michigan associated with Kimberley Tew's parents as the principal office address and mailing address. [Testimony of R.T.]; ECF NO. 341-1 (Log Entry # 208). He did so to put multiple layers between himself and GFL, which had no legitimate business operations and whose sole function was to serve as a shell company nominee listed on invoices to the Victim Company. GFL was never registered in Michigan. [GX 974, GX 975].

### 8.   *Aero Maintenance Resources (AMR)*

Michael Tew never registered AMR as a separate entity in any state. To serve the defendant's and the coconspirators' goal of evading detection by diversifying the names of the entities on the fraudulent invoices, the defendant, with the knowledge and coordination of Kimberley Tew and Jonathan Yioulos, submitted invoices on behalf of AMR. [Testimony of Jonathan Yioulos]. AMR was described on the fraudulent invoices as a "division" of GFL. [Testimony of Jonathan Yioulos].

10

**B.      The Relationships between the Tews and the Victim Company**

Between sometime in 2015 and September 2018, the defendant served as the contracted CFO for the Victim Company. As a contractor, he was paid approximately $10,000 per month to, in later months, up to $25,000 per month pursuant to his contracts with the Victim Company. [GX 535, 550, 571-576]. The Victim Company paid for the defendant's contracted CFO services through his single-member LLC, Sand Hill. Kimberley Tew also provided limited contract services to the Victim Company related to the creation of a virtual web application. [Testimony of C.A., Testimony of Jonathan Yioulos, GX 986].

In June 2018, Michael Tew began to use an American Express corporate card issued to him for work-related expenses to instead purchase gift cards at Target, King Soopers, Walgreens, and other retailers. He did this at the request and encouragement of Kimberley Tew, who needed the gift cards to pay off a debt. When American Express and the Victim Company separately asked Michael Tew questions about these expenses, the defendant lied to both entities. Michael Tew, in coordination with Kimberley Tew, had purchased those gift cards because they could be easily, and largely anonymously, sold for cryptocurrency such as bitcoin. The defendant needed these funds because of family debts, some of which were the result of Kimberley's gambling and crypto-speculation. [Testimony of C.A., Testimony of Jonathan Yioulos, Testimony of A.S., GX 335, 338, 339, 347 – 353, 532, 538]

In or around September 15, 2018, the Victim Company terminated Michael

11

Tew's contract for this unauthorized use of the corporate credit card and because another individual to whom Kimberley owed a debt had called employees and owners of the Victim Company to threaten and extort them. [Testimony of C.A., Testimony of Jonathan Yioulos, Testimony of A.S., GX 536]; ECF No. 341-1 (Log Entries # 33, 36, 37, 50, 59, 85, 93, 108, 156). After September 15, 2018, the Victim Company did not know it had engaged in any further business dealings with Michael or Kimberley Tew. The Victim Company learned of the scheme to defraud in or around July 2020, after it was contacted by the IRS and the FBI. [Testimony of C.A.; Testimony of Sarah Anderson; Testimony of Lisa Palmer].

## C. The Tews inflicted millions of dollars of loss on the Victim Company during a two year crime-spree

### 1. *The Tews used adaptive invoicing techniques to make their scheme more effective over time*

In or around August 2018, Michael Tew, at the encouragement and direction of Kimberley Tew, began submitting fraudulent invoices to the Victim Company, which the Victim Company paid. Initially, the dollar amounts for the invoices were relatively small, but over time, the amounts demanded by each fraudulent invoice grew substantially. Between August 2018 and July 2020, as a result of this conspiracy to commit wire fraud, the Victim Company paid $5,053,878.50 either directly to the defendant and Kimberley Tew or to third parties recruited by Michael and Kimberley Tew. [GX 1002, 1003]

The fraud was perpetrated to pay outstanding and ongoing debts incurred by

12

Kimberley Tew's gambling, to cover the redemptions of "investors" who were victims of a separate cryptocurrency scheme, and to finance a lavish lifestyle that included a luxury apartment in Cherry Creek, designer clothes, expensive food, and Las Vegas junkets.

Initially, the invoices were submitted by or on behalf of entities not previously used as vendors by the Victim Company and who performed functions unrelated to the conspiracy. Over time, the invoices were submitted by shell company nominees that existed as vehicles to continue the fraud, to evade detection, and to conceal the source and destination of income. When the amount paid to one sham vendor became large enough to make its notice a higher audit risk, Michael and Kimberley would pivot to a different vendor, spreading their fraud across multiple different entities so that no single vendor would stand out. [Testimony of Jonathan Yioulos, GX 974, 975, 1002, 1003].

The fraudulent invoices were all approved by Yioulos, and the payments were largely made via automated clearinghouse (ACH) transactions, although some payments were tendered by wire transfer. The ACH transactions were executed through interstate wires from the Victim Company's account at Signature Bank in New York to bank accounts in Colorado and elsewhere. [Testimony of M.O.; Testimony of Jonathan Yioulos; GX 9-40, 355-262, 365-367, 369-377, 379-380, 383-384, 386-392, 428-468, 492; GX 1001 - 1007].

Kimberley Tew directed Michael Tew to obtain money from the Victim

13

Company. Michael Tew, in turn, would advise Jonathan Yioulos to continue authorizing invoices, or risk the Tews and their associates going to the Victim Company's management, something which would result in the termination of Yioulos's employment. Yioulos, who initially had a friendly relationship with Michael Tew, agreed and continued to knowingly process fraudulent invoices submitted by or for the benefit of the defendant and Kimberley Tew during the course of the conspiracy. In exchange, the Tews also offered Yioulos a few bitcoin as compensation, which Kimberley would supposedly invest on Yioulos's behalf. Under this arrangement, the bitcoin was transmitted by Michael or Kimberley to Yioulos, then requested back, and then re-transmitted multiple times. Ultimately, Jonathan Yioulos received a relatively small portion of the fraud proceeds: approximately $100,000 worth of bitcoin, which he then converted into fiat currency. [Testimony of Jonathan Yioulos; GX 527]; ECF No. 341-1 (all log entries found to be in furtherance in which Kimberley requests money from Jon, all entries found to be in furtherance referencing Indictment paragraph 25, all log entries describing texts between Michael Tew and Jonathan Yioulos).

At first, both Michael and Kimberley Tew contacted Yioulos to request or demand money from the Victim Company. Later, Yioulos cut off contact with Kimberley Tew because of her caustic tone and mercenary tactics. *See, e.g.,* ECF No., 241-1 (Log Entries # 115, 118); *see also Id.* (Log Entry # 197 (encouraging Michael Tew to threaten Jonathan so that Kimberley can get money to pay redemptions of her

14

"investors"). From that time forward, Kimberley would tell Michael when she needed money, direct him to ask Yioulos, and Michael would execute her instructions. [GX 974, 975].

To accommodate these demands for payment, Yioulos often advised Michael Tew about the financial status of the Victim Company and/or its affiliates so that payments of the fraudulent invoices did not result in the Victim Company and/or its affiliates overdrawing their bank accounts. Michael would then pass along this information to Kimberley. *See, e.g.,* ECF No. 341-1 (Log Entry # 156, 187, 194, 317) Yioulos often made payments in installments or "progress payments." That is, Yioulos authorized and approved multiple ACH transfers or wire transfers where each transfer was for an amount less than the total amount of an invoice to try to pay the defendants with whatever money was available to the Victim Company or its affiliates at that time. [Testimony of Jonathan Yioulos]; *See, e.g.,* ECF No. 341-1 (Log Entry # 348).

Michael and Kimberley Tew accepted partial payments based on what the Victim Company or its affiliates could afford at any given time during the conspiracy. Many times partial payments were made by the Victim Company and its affiliates prior to the receipt of an invoice to satisfy Michael Tew and/or Kimberley Tew's immediate demands for money. During the conspiracy, if Yioulos deferred or delayed payment of the fraudulent invoices based on the financial status of the Victim Company or its affiliates, Michael and Kimberley Tew pressured or threatened

15

Yioulos to induce him to pay the invoices. [Testimony of Jonathan Yioulos]; ECF No. 341-1 (Log Entry #341); *see also id.* (Log Entry 347 ("I have to threaten hi" [sic]).

Over time, the conspirators used more sophisticated means to conceal the fraud. For example, at the beginning of the scheme to defraud, the fraudulent invoices contained generic descriptions of services like consulting services or "service fee[s]" but over time, those descriptions grew more specific with later fraudulent invoices bearing descriptions like "Trailing Edge Flap"; "Replacement of Moisture Barrier over Kevlar (Labor Hours)"; and "A-330-200 (N819CA) Crew / Operations / Staff Training[.]" [GX 845, 875, 969]

Michael Tew, in coordination and consultation with Kimberley Tew and Yioulos, also took steps to ensure that the face of each invoice would not arouse suspicion at the Victim Company. Indicia of legitimacy on the fraudulent invoices included the following:

- Unique, non-consecutive invoice numbers, which implied that invoices were being directed to other companies beyond the Victim Company or its affiliates;

- Naming an entity that was purportedly providing services, entities whose registration with various Secretaries of State could be confirmed, a description of services and, sometimes, a project name, as well as a due date;

- Identifying a sum certain, sometimes round numbers and other times specific numbers, that were associated with the purported provision of certain numbers of hours of service or work and which were sometimes reduced by "adjustments";

- Identifying real bank account information for the entities, even if the

16

entity was not in fact associated with that bank account; and

- Identifying a purported specific person, for example, "Jessica Thompson," as a contact person in the "Accounting Department" for questions about the invoices. "Jessica Thompson" did not in fact exist.

[Testimony of Jonathan Yioulos, GX 539, 601, 603, 607, 611, 629, 638, 642, 647, 649, 674, 680, 683, 684, 688, 692 700, 703, 706, 711, 716, 719, 723, 727, 732, 737, 742, 748, 764, 801, 841, 844, 845, 875, 887, 903, 912, 928, 933, 935, 950, 952, 953, 954, 955, 959, 969, 975].

### 2. The Tews' used a shell company as another artifice to deceive the Victim Company while insulating themselves from detection

Michael Tew took additional steps to evade detection by also creating and using newly-formed shell entities to submit these fraudulent invoices. These new entities, GFL and AMR, appeared to at least superficially engage in work that related to the Victim Company's industry, but in fact had no other operations beyond being used to perpetrate this fraud. The defendant not only intentionally registered them in a manner that would make it difficult to connect the entities to him Kimberley Tew, he requested Employer Identification Numbers, [GX 545], created official-sounding new email addresses, [GX 512], and otherwise attended to the business of perpetrating this fraud, [GX 974, 975]. [Testimony of Jonathan Yioulos].

17

3.      ***The Tews recruited third parties to assist in their criminal
        endeavor and then, when those parties balked at such
        brazen fraud, stole their identities to insulate themselves
        from detection***

As set forth above, the fact that using the same vendor over and over again
would draw attention imposed an inherent constraint on the Tews' ability to
perpetrate the fraud. Furthermore, Michael and Kimberley Tew were aware that
another risk of their criminal endeavor was that others might see their association
with a vendor. For the first few months of their scheme, the Tews tried to push the
risk of exposure away from themselves and towards third parties they felt they could
manipulate.

a.      **Kimberley Tew's Exploitation of H.S.'s addiction**

In August 2018 — just after Kimberley Tew had been caught using Michael
Tew's corporate credit card to purchase gift cards — Kimberley pitched H.S. on an
opportunity make money with bitcoin. H.S. initially agreed to invest with Kimberley's
bitcoin opportunity. But when Kimberley asked H.S. to open a bank account to receive
a large sum of money, H.S. turned Kimberley down. This didn't stop Michael or
Kimberley from using H.S. to help advance their fraud: they simply adopted H.S.'s
name for use on some of their fake invoices, falsely stating that H.S. was a CPA
contracted by Michael Tew in his capacity as the Victim Company's CFO. H.S. has
never been a CPA, and she was entirely unaware of the scheme to defraud or the use
of her name in that endeavor. Kimberley Tew knew that H.S. had addiction problems
and a troubled background that would make her a convenient scapegoat. She also

18

relied on her friendship with H.S., believing that H.S. would be less likely to divulge information to the authorities. Michael Tew explained this thinking in one of the calls with Yioulos that was recorded by law enforcement. [Testimony of H.S.].

    **b.**    **Kimberley Tew's exploitation of M.M.'s financial desperation**

Kimberley Tew was a cryptocurrency hobbyist who used the peer-to-peer exchange platform Paxful. There, she met M.M. while using the false name "Matthew Vertanen." M.M. had established his own company, MCG, LLC, to engage in peer-to-peer cryptocurrency exchange brokering. Over a course of time Kimberley convinced M.M. that she was his friend. Eventually, she played up her experience at Google and told M.M. that she had a trading algorithm she could use to generate fantastic 100% returns on the market for bitcoin. She offered M.M. the opportunity to invest, noting that she did this for others too. Kimberley Tew's description of her luxury tastes — Jimmy Choo shoes and elaborate trips to the Wynn in Las Vegas — lent further credibility to her appearance of success. M.M. agreed and, at least at first, enjoyed spectacular returns that basically doubled his investments. Michael Tew helped Kimberley Tew with this separate "investment" business, once meeting with M.M. in person in Ft. Collins to withdraw money that the Tews promised to convert into bitcoin. He invested more and more with Kimberley until, eventually, he had invested almost everything he had. [Testimony of M.M.]; *see also* ECF No. 341-1 (Log Entries # 162, 205) (discussing debt owed to M.M.).

M.M. was not a wealthy investor. He was a high school graduate and former

<div align="center">19</div>

construction worker without a large financial safety net. Over time, Kimberley's apparent success evaporated. She was late in returning money to M.M. Or she would return his bitcoin when asked, but then immediately ask for that bitcoin's return on the pretense that, without it, her algorithm would collapse and everyone would be worse off. When Kimberley Tew's returns to Michael decreased, or she delayed in returning his bitcoin, M.M. became desperate and angry. *See, e.g.,* ECF NO. 341-1 (Log Entries # 204 and 205)

In the fall of 2018 Kimberley Tew took advantage of M.M.'s desperation by offering him another opportunity to make money. She asked M.M. to open bank accounts to receive money from the Victim Company. In return, he could keep 10% of the transaction. M.M. agreed. Michael and Kimberley then instructed Yioulos to send NAC's money to M.M.'s accounts. M.M. would then convert that money into bitcoin, which he would transfer to Kimberley. On a few occasions, when M.M. was slow to get the money to Kimberley, Kimberley would respond with threats. Kimberley once called M.M.'s wife and accused M.M. of stealing. She also told M.M. that she would turn M.M. into authorities. [Testimony of M.M., GX 1004].

### c. *Michael Tew's exploitation of his friendship with L.W.*

By the end of 2018, Michael and Kimberley needed to use another vendor to hide their scheme. Michael Tew turned to his friend, L.W., who was the proprietor of a business called P.M. Michael Tew prevailed on his friend to receive payments from the Victim Company and then kick those payments back to Michael Tew. L.W. did

20

this on two occasions. After that, Michael Tew cut out L.W. as a middleman, appropriated the P.M. name, and directed Yioulos to send the money directly into a joint bank account controlled by both Michael and Kimberley Tew or into his own accounts. [Testimony of Jonathan Yioulos, Testimony of Matthew Morgan, GX 312, 363, 975, 1002, 1003, 1005]; ECF No. 341-1 (Log Entries # 174 and 175 (discussing payments to "actual" PM).

### 4. The Tews' use of dummy email accounts and their staggered deceptions of the Victim Company and Jonathan Yioulos

Michael and Kimberley Tew further staggered their layers of deception by using dummy e-mail addresses to make it appear that the invoices were coming from others. Kimberley Tew created an email account using the name "MCG, Inc." — a disguised variant of M.M.'s company — and then used that email account to submit false invoices to the Victim Company. [Testimony of Lisa Palmer; GX 524, 980-984]

Michael Tew similarly created email addresses using others' names or companies. The first he created used the name of C.R., who was another cryptocurrency enthusiast befriended by Kimberley Tew. Another used P.M.'s name. After he had set up GFL he took additional steps to bolster the pretense that it was a real company by paying for a dedicated domain name — globalfuel.co — and an associated email address, accounting@globalfuel.co. [Testimony of Lisa Palmer, GX 512, 520, 521, 975].

Yioulos was a willing but often reluctant coconspirator. To encourage his

21

participation, the Tews represented to him that they were being extorted or blackmailed and that only more money would save them. They also represented that M.M. and C.R. — the purported extortionists — were the ones sending emails to Yioulos. [Testimony of Jonathan Yioulos]; *see e.g.,* ECF No. 341-1 (Log Entries # 37, 115). These statements were false. Michael and Kimberley Tew were using the same tools they used to deceive the Victim Company to deceive Yioulos. The Tews did not really believe that M.M. was going to resort to violence against them. Michael told Kimberley that M.M. was just "empty threats. ECF No. 341-1 (Log Entry #205). And C.R.'s "extortion" amounted to telling Michael and Kimberley that he would report their theft of his money to the police. *Id.* By convincing Yioulos that they were receiving emails from others of unpredictable disposition, Michael and Kimberley Tew could manipulate Yioulos's fear. To encourage him to send them NAC's money they would send emails from the MCG, Inc. and CR email accounts suggesting that failing to do so would cause M.M. or C.R. to report Yioulos. *See, e.g.,* ECF No. 341-1 (Log Entries # 58, 67, 75, 339).

### 5. *The Tews developed expertise in banking practices to avoid detection and ensure access to their ill-gotten gains*

The banking side of the fraud was also intricate. Michael Tew and Kimberley Tew maintained multiple bank accounts at multiple financial institutions; some they held in their individual names, and others were joint accounts. [GX 1001]. Through these multiple bank accounts, they each made multiple transfers of funds that originated from the fraud against the Victim Company or its affiliates. On many

22

occasions, those transfers led to several cash withdrawals in a single day from accounts controlled by Michael Tew or Kimberley Tew or both Michael and Kimberley Tew. After withdrawing cash from the proceeds of the fraud, Michael Tew and Kimberley often deposited the aggregated amount of cash from that day or over a few days into cryptocurrency ATMs, where they were able to deposit United States dollars in exchange for bitcoin, either held in their own wallets or sent to third parties, many of whom were owed money. All told, the Tews deposited approximately $2,429,181 into just one company's cryptocurrency ATMs during the conspiracy. This likely substantially undercounts the total converted into cryptocurrency because other companies also provide bitcoin ATM services and messages describe routine bitcoin atm transactions. *See, e.g.,* ECF No. 341-1 (Log Entry # 176, 179, 189, 192, 193, 348, 351, 356).

During the early part of the conspiracy, when a bank that held accounts receiving payments from the Victim Company closed some or all of the defendant and/or Kimberley Tew's accounts, the defendant and Kimberley Tew then created multiple accounts at another credit union, of which Kimberley Tew was a member. [GX 975]. Michael Tew asked bank managers at that location detailed questions about their policies and what they might flag as suspicious transactions. [Testimony of B.P.].

### D. Summary of the Entities Used to Submit Fraudulent Invoices and the Dramatic Increase of Invoiced and Paid Amounts

The chart pictured below, admitted at trial as Government Exhibit 1002,

summarizes the fraudulent invoices by the entity; the number of fraudulent invoices submitted by or on behalf of that entity; the total dollar amount paid by the Victim Company to the entity for Michael Tew and Kimberley Tew's benefit or directly to bank accounts controlled or operated by the defendant and Kimberley Tew; and the increase over time in the amounts that the Tews personally benefitted from this fraud.

| Company | 2018 | | 2019 | | | | 2020 | | | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | |
| H▮▮▮ ▮▮▮ CPA | $ 50,000.00 3 Payments | | | | | | | | | $ 50,000.00 |
| 5530 J▮▮▮ De▮▮▮ | $ 75,000.00 5 Payments | $ 30,000.00 1 Payment | | | | | | | | $ 105,000.00 |
| M▮▮▮ Co▮▮▮ G▮ | | $110,125.00 5 Payments | | | | | | | | $ 110,125.00 |
| Po▮▮▮ M▮▮▮ | | $ 21,250.00 1 Payment | $267,962.50 11 Payments | $551,665.00 22 Payments | $ 59,675.00 4 Payments | | | | | $ 900,552.50 |
| Global Fuel Logistics | | | | | $446,000.00 14 Payments | | | $ 847,338.00 12 Payments | $95,000.00 1 Payment | $ 1,388,338.00 |
| Aero Maintenance Resources | | | | | $329,200.00 8 Payments | $810,500.00 22 Payments | $682,055.00 22 Payments | $ 648,108.00 10 Payments | | $ 2,469,863.00 |
| Grand Total | $125,000.00 | $161,375.00 | $267,962.50 | $551,665.00 | $834,875.00 | $810,500.00 | $682,055.00 | $1,495,446.00 | $95,000.00 | $ 5,023,878.50 |

### E. Michael Tew responded to the possibility of being caught by seeking additional fraud payments so that he could flee

In the days and weeks leading up to Michael Tew's eventual arrest, Michael and Kimberley Tew were both in touch with Yioulos. In early July 2020, Yioulos had told the defendant that the FBI was asking questions, a fact that Yioulos had become aware of as the Victim Company began looking at its books to understand the fraudulent payments. Both Michael Tew and Kimberley Tew were concerned about an FBI and/or IRS investigation. On July 8, 2020, Michael Tew again asked Yioulos

24

for additional funds in the form of bitcoin; this time, the money was to be used to facilitate his, Kimberley Tew, and their minor children's flight from the country. [Testimony of Jonathan Yioulos]; ECF NO. 341-1 (Log Entry # 376).

### F.   Prohibited Financial Transactions

Between August 2018 and July 2020, Michael Tew and Kimberley Tew organized and coordinated numerous prohibited financial transactions in amounts greater than $10,000 that each knew was sourced from the proceeds of unlawfully obtained activity, namely conspiracy to commit wire fraud and wire fraud. Each of these transactions was described at trial using summary exhibits GX 1000 – 1023 that reference the underlying bank records.

### G.   Kimberley Tew's efforts to obstruct the investigation and prosecution

Kimberley Tew acted to obstruct the investigation into the charged fraud and money laundering conspiracy by tampering with witnesses and by destroying evidence.

Kimberley's Tew's first act of obstruction was her most successful: she convinced Michael Tew not to cooperate against her. Michael Tew was arrested on July 8, 2020. He immediately agreed to cooperate, but negotiated a major concession. His first proffer contained a provision that prevented the government from using his information to prosecute Kimberley. Michael Tew later decided to waive that concession, agreed to cooperate against Kimberley, and he agreed to provide information against her at a subsequent proffer session. He also agreed to allow the

25

government to image his phone. IRS-CI and FBI agents surreptitiously arranged a
meeting with him (outside of Kimberley Tew's knowledge) at a Yeti store in Cherry
Creek to perform the cell phone extraction on July 29, 2020. Sometime that day,
however, Kimberley Tew figured out that the meeting was happening. While the
imaging was underway, Kimberley Tew showed up and immediately began
haranguing Michael Tew, his attorneys, the prosecutors, and the agents. Using their
children as a cudgel — claiming that Michael Tew didn't care about them — and
generally doing everything she could to disrupt the meeting, including claiming to
fire Michael Tew's attorney without his consent, she eventually coaxed her husband
into leaving. [GX 551].[5] Michael eventually stopped cooperating.

At the July 29 Yeti meeting, which was audio recorded, Kimberley Tew
admitted to her second act of obstruction. Acknowledging that the agents were there
to gather evidence from Michael Tew's phones, she tried to convince the assembled
gathering that it was a futile exercise: "I already wiped most of it anyway," she said.
[GX 584]. Sure enough, when agents later tried to obtain messages that were stored
in Kimberley's iCloud account, they found that her tampering had resulted in a
situation where half of conversations — the half involving Kimberley Tew — were

---

[5] GX 551 is the audio recording of the entire meeting. It was marked, but not
admitted at trial. Statements made by Michael Tew on the recording are protected
by the proffer agreement and should not be referenced as part of his sentencing. But
Kimberley Tew was not a party to that agreement, her statements were made of her
own volition, and the Court can and should review and consider the entire recording
as evidence of her obstruction.

missing. *See, e.g.,* ECF No. 341-1 (Log Entries # 19, 28, 35, 37, 46, 51, 85, 108, 115, and 118).

Finally, as the Speedy Trial Act ticked its way towards indictment, Kimberley Tew took action to tamper with H.S. She tried to play on H.S.'s sympathy by sending her a slideshow with pictures of their friendship. In late 2020 or early 2021 she tried the other tack: she threatened to reveal extremely embarrassing and intimate private information about H.S. unless H.S. remained silent. [Testimony of H.S.]. The Grand Jury's indictment came in February 2021.

## H. Michael and Kimberley Tew's parallel cryptocurrency investment fraud scheme

As described above, Kimberley Tew offered M.M. an "investment opportunity" involving cryptocurrency. She offered Jonathan Yioulos much the same. But it was just another scam. Kimberley was taking bitcoin from others under the pretense that she had a proprietary algorithm that could double their money. But she lost it. Michael Tew explained all of this to Yioulos:

> MT 1312:   she has other investors, legitimate wealthy guys that are buying BTC through her right now. Its weird to explain but they are too old to use the exchanges.

> MT1312:   Totally separate from any of this. NY people. Not my people, I don't know any of them. Its her own thing.

> MT1312:   She can get it.

ECF No. 341-1 (Log Entry # 175). Later on, Michael Tew told Yioulos a variation of the story that Kimberley Tew had told M.M.: sometimes she couldn't pay people back

27

because her "script" had gone amok. "She came to me and said shit I have jons BTC I'm sending ypbuimband [sic] then said shit I just lost momentum in my script," Michael Tew told Yioulos. ECF No. 341-1 (Log Entry # 257). Michael Tew elaborated the next day: "KT was running her script, was waiting for $15K from my airline / chairman of frontier project, he literally never sent it I've been slaving away for him and it fucked everything up." *Id.* (Log Entry # 257)

Kimberley Tew, aided and abetted by Michael Tew, was essentially committing one fraud to subsidize another, like a particularly grotesque Ponzi scheme. *Id.* (Log Entry # 129) (noting plan for Kimberley to use "the last two wires" to build a "portfolio").

On August 5, 2019, Michael Tew begged Yioulos for money from the Victim Company, explaining that without it "we're going to bounce a check to investors. A check to investors." *Id.* (Log Entry #220). In correspondence between Michael Tew and Kimberley Tew, Kimberley would complain that having to pay back her investors meant not having any money to gamble. *Id.* (Log Entry # 283) ("With the negative accounts and bills we have to pay plus the car and AN that's over 60K. It really leaves nothing for Vegas."). On other occasions, Kimberley would pressure Michael to ask Yioulos for money so that she could use the Victim Company's money to recoup investor losses, instead of paying them out herself. *Id.* (Entres # 173, 178, 185, 187, 192, 197 222, 261, 274, 286, 347, 367) (discussing need for money from Jon to pay out several others).

28

*James* log entry number 185 is particularly illuminating. Kimberley had lost so much money gambling in Las Vegas that she couldn't pay an investor who was "all over" her to see his account. Desperate, she told Michael to offer Yioulos three bitcoin to send them money. Then she and Michael proceeded to make up false excuses as to why they couldn't pay the investor, with Michael pointedly noting that they "need a new story." Just a few days later, Kimberley told Michael that she had gotten a loan from one investor that she could use to pay another (a classic manifestation of a Ponzi scheme), while they waited for money from Yioulos so that Kimberley would not "blow up." *Id.* (Log Entry # 187). When "everyone is cashing" out their investment with Kimberley, she asked Michael to ask Yioulos to bail her out. *Id.* (Log Entry # 197). And then she and Michael discussed how to alter the date and amount of withdrawals from cryptocurrency investors so they could show them false and fraudulent statements. *Id.* On another occasion, Kimberley warned Michael that an investor "could cash a check" and that she needed to make sure Yioulos sent them money to cover it. *Id.* (Log Entry # 274.); *see also Id.* (Log Entry # 261) (featuring Kimberley asking Michael to "talk to Jon" because "I have people asking for money today").

In September 2023, a Denver District Court concluded by a preponderance of the evidence that Kimberley Tew committed civil theft when she took cryptocurrency from an investor and refused to give it back. ECF No. 450-1 at 15. The court's description of the undisputed facts tells a story similar to the one detailed by M.M. and Yioulos. Kimberley Tew learned that an acquaintance, D.B., had an interest in

29

cryptocurrency, told D.B. she could make enormous returns trading cryptocurrency, and offered to take bitcoin and invest it on D.B.'s behalf. She also represented that she was doing the same for others. D.B. gave Kimberley thousands of dollars. When he asked for it back, he got the same types of excuses Kimberley had given M.M. Kimberley eventually refused to give the money back. *Id.* at 2-10.

I. **Evidence related to Michael and Kimberley Tew's income while retaining counsel through the Criminal Justice Act program**

On December 13, 2022 Michael Tew and Kimberley Tew filed affidavits with the Court so that it could make the statutorily required finding that they were "financially unable to obtain counsel." 18 U.S.C. § 3006A(b). However, bank records show that, between January 2022 and December 2022, Michael Tew received $678,595.22 in deposits into a single bank account. This is just over nine times the median United States income of $74,580. https://www.census.gov/library/publications/2023/demo/p60-279.html.

Between January 2022 and January 2024, Michael Tew's single account received enough money to make him a bona fide millionaire: $1,212,181.27.

| Month and Year | Deposits |
|---|---|
| 01/22 | $50,875.79 |
| 02/22 | $124,989.95 |
| 03/22 | $55,521.54 |
| 04/22 | $57,233.14 |
| 05/22 | $71,069.11 |
| 06/22 | $62,932.81 |
| 07/22 | $53,482.97 |
| 08/22 | $51,086.67 |
| 09/22 | $59,056.31 |

30

| 10/22 | $27,523.52 |
| 11/22 | $25,332.10 |
| 12/22 | $39,491.31 |
| 01/23 | $36,856.25 |
| 02/23 | $46,199.01 |
| 03/23 | $41,929.82 |
| 04/23 | $22,987.04 |
| 05/23 | $33,174.51 |
| 06/23 | $35,474.86 |
| 07/23 | $36,500.05 |
| 08/23 | $30,875.68 |
| 09/23 | $43,116.57 |
| 10/23 | Not available |
| 11/23 | $51,069.33 |
| 12/23 | $63,477.26 |
| 01/24 | $91,925.67 |
| TOTAL | $1,212,181.27 |

The records show a similarly byzantine financial history to that presented at trial, including substantial transfers to cryptocurrency exchanges; Kimberley Tew; and app-based peer-to-peer payment platforms. And this is only one account. Other evidence obtained by the government shows that the Tews had financial accounts at other banks and brokerages. Moreover, during the pendency of the case, Michael and Kimberley Tew lived in a luxury apartment complex in downtown Denver for $8,649.69 a month.

The government has asked the Court to release the affidavit so that it can evaluate whether the Tews were truthful in their statements to the Court. It does not have the affidavit and so cannot say whether the Tews committed perjury or defrauded the Criminal Justice Act program. But the Probation Office can access the affidavit and determine whether they did and, if so, how that should impact their

31

sentence, including whether to impose a fine as part of that sentence.

## J.     Evading Payment of Taxes

Despite having taxable income from their contracts with the Victim Company and later from the fraud described herein, neither Michael nor Kimberley Tew filed income tax returns for tax years 2016 through 2022. They had previously filed tax returns, and were therefore aware of their responsibility to do so. Michael and Kimberley Tew, while living and working in Colorado, devised the complex fraud as an income generation scheme, and then took a variety of actions to conceal that income. These actions included causing the Victim Company to issue payments to pre-existing companies like MCG, 5530 JD and PM but to route those payments into accounts that the defendant and his coconspirators knew were controlled by the Michael and Kimberley Tew. Later, Michael Tew used shell entities like GFL and AMR as nominees, again to put distance between the defendant and the income that was being generated to GFL and AMR. These were, among others, affirmative acts taken by Michael and Kimberley Tew to evade or attempt to evade the payment their taxes. Michael and Kimberley Tew engaged in these actions willfully: they knew that they had income, that they were required to file tax returns and pay tax on that income, and that they specifically intended not to pay those taxes. *See, e.g.,* ECF NO. 341-1 (Log Entry # 129, 139, 242) (musing about how they are going to get money to pay their taxes).

A very conservative estimate of the taxes due and owing is $1,307,743.60

calculated by adding together the fraud proceeds in the relevant years plus either compensation reflected in IRS records and then applying the 20% tax rate set forth at U.S.S.G.§2T1.1(c)(2)(A):

| Tax Year | | Amount | Applicable Tax Rate | Tax Loss |
|---|---|---|---|---|
| 2016 Income | Gross | $185,000.00 | 20% | $37,000.00 |
| 2017 Income | Gross | $312,500.00 | 20% | $62,500.00 |
| 2018 Income | Gross | $702,215.00 | 20% | $140,443.00 |
| 2019 Income | Gross | $2,465,002.00 | 20% | $493,000.40 |
| 2020 Income | Gross | $2,471,001.00 | 20% | $494,200.20 |
| 2021 Income | Gross | $403,000.00 | 20% | $80,600.00 |
| | | | | **$1,307,743.60** |

## II.   ALL OF THE FACTORS THAT THE COURT MUST CONSIDER WEIGH IN FAVOR OF THE RECOMMENDED SENTENCE

In fashioning a sentence, the Court must address each of the factors set forth at 18 U.S.C. § 3553(a), including (1) the applicable United States Sentencing Guidelines (the "Guidelines"), (2) the nature, circumstances, and seriousness of the offense, (3) the history and characteristics of the defendant, and (4) the need to promote respect for the law, afford adequate deterrence, and protect the public from further crimes. Each fully supports the Recommended Sentence.

33

**A. The Guidelines recommend a substantial prison sentence that should not deviate from others that would be imposed on similarly situated defendants being sentenced in other district courts around the country (18 U.S.C. §§ 3553(a)(4) and (a)(6))**

The government submits that Kimberley Tew's Offense Level is 32, based on reference to the relevant Guidelines:

| Enhancement | Guideline Provision | Offense Level |
|---|---|---|
| Total Fraud Offense level | | 27 |
| *Base Offense level* | *2B1.1(a)(1)* | *7* |
| *Loss > $3.5 million* | *2B1.1(b)(1)(J)* | *+18* |
| *Sophisticated Means* | *2B1.1(b)(1)* | *+2* |
| **Additional Enhancements** | | |
| § 1957 laundering | 2S1.1(b)(a) | +1 |
| Leader/Organizer[6] | 3B1.1(c) | +2 |
| Obstruction | 3C1,1 | +2 |
| **Total Offense Level** | | **32** |
| **Recommended Range** | | **121-151    months** |

**1. *There is no doubt about the base offense level, the intended loss, or the applicability of the enhancement for violating 18 U.S.C. § 1957***

Evidence presented at trial showed beyond a reasonable doubt that the defendant committed wire fraud (which has a base offense of 7), "spending" money laundering in violation of 18 U.S.C. § 1957 (a one-level enhancement) and that the

---

[6] Despite her lack of criminal history, Kimberley Tew does not qualify for the zero-point offender reduction under §4C1.1 because she was a leader and organizer of the scheme. U.S.S.G. § 4C1.1 *See United States v. Mahee*, 2023 WL 8452433, *3-4 (N.D. Ga. Dec. 6, 2023) ("No defendant who receives an Aggravating Role Adjustment under § 3B1.1 of the Guidelines can ever be eligible for the Zero-Point Offender Adjustment under § 4C1.1(a)."); *see also United States v. Gordon*, 2023 WL 8601494, at *3 (D. Maine, Dec. 12, 2023).

34

defendant intended to inflict the losses charged in the indictment: $5,053,878.50,

(an 18-level enhancement). The court should also have no trouble concluding that it

is more likely than not that the other sentencing enhancements apply here.

U.S.S.G. § 6A1.3, comment; *United States v. Watts,* 519 U.S. 148, 156 (1997)

(acknowledging that preponderance of the evidence standard is appropriate for

findings of fact related to sentencing).

> ### 2. Kimberley Tew's sophisticated knowledge of digital platforms and familiarity with the Victim Corporation led her to use sophisticated means to siphon over $5 million from a large corporation through frequent but relatively small individual transactions to maintain the scheme for two years

The Tews submitted false invoices in return for money. But the surface-level

simplicity of this type of fraud belies the "especially intricate offense conduct

pertaining to the execution or concealment of" of their fraud offense. U.S.S.G. §

2B1.1 cmt. app. n. 9(B). Kimberley Tew directly carried out the scheme using

several of the means and methods the Sentencing Commission and courts around

the country have identified as hallmarks of sophistication:

- Use of others' identities. Kimberley adopted the identity of M.M. and MCG to create the appearance that multiple fake vendors were submitting invoices, all as part of a clever effort to spread out the payments on the victim company's internal balance sheets so that she and Michael Tew could avoid detection and keep the scheme going. *Cf. United States v. Sethi*, 702 F.3d 1076, 1079 (8th Cir. 2013) (noting sophisticated involved in using names an identifies of others to conceal workers' compensation insurance scheme). She was the primary source of contact with H.S., too, whose identity was used to help further the scheme in August 2018. That was just after Kimberley's first, clumsy, effort to obtain money from the Victim Corporation using

35

Michael Tew's corporate credit card.

- <u>Creation of shell companies</u>. Kimberley Tew caused Michael Tew to use and create a shell company, Global Fuel Logistics, that would perpetrate the scheme. For example, in August 2019 Michael asked Yioulos about how Yioulos was accounting for things in the Victim Company's books. *"We're* just trying to understanding the banking issues," Michael told him — conveying that Kimberley, too, was sensitive to the fact that in order to maintain the scheme they needed to have legitimate-seeming corporations with their own banking issues. Other evidence ties her to GFL. It was registered using her parents' address to make sure that mail would go to someone the Tews' trusted and controlled. And numerous communications reference her coordination with Michael to get money from the Victim Company through the GFL artifice. ECF No. 341-1 (Log Entries # 253, 292, 293, 295, 299, 302, 304, 313, 314, 318, 332, 360, 361, 362). There is no doubt that she directly used and encouraged the artifice of a shell company to help make the scheme a success. U.S.S.G. § 2B1.1 cmt. app. n. 9(B) ("Conduct such as hiding assets or transactions, or both, through the use of fictitious entities . . . also ordinarily indicates sophisticated means."); *See, e.g., United States v. Robertson*, 493 F.3d 1322, 1332 (11th Cir. 2007) (finding no error where district applied enhancement against defendant who used fictitious entities and then switched them out at intervals to circumvent victim controls and avoid detection). Kimberley also encouraged Michael's use of Sand Hill to help conceal the transmission of scheme proceeds. *See, e.g.,* ECF NO. 341-1 (Log Entry # 85)

- <u>Use of multiple bank accounts and structured transactions.</u> Kimberley Tew used multiple bank accounts and then employed a dizzyingly complicated series of transfers, wires, deposits, and withdrawals to evade her banks' anti-money laundering protocols and quickly distance herself from the fraud proceeds. ECF No. 341-1 (Log Entry # 194). As set forth above, she encouraged Michael Tew to create sham bank accounts in the name of GFL to add a layer of fraud and deception to his enterprise. Although Sand Hill was not completely fraudulent, Michael took specific steps to register that entity as a foreign corporation in Colorado so that he could then open bank accounts specifically for the use of obtaining fraud proceeds. Kimberley Tew then relied upon Michael's efforts as a way to collect scheme proceeds while insulating herself from liability. ECF No. 341-1 (Log Entries # 139, 184, 193, 292, 295, 299, 302, 313, 314, 318); *United States v. Mirando*, 768 F. App'x 596, 598 (9th Cir. 2019) (affirming as reasonable exercise of discretion District Court's finding that use of fake entity and associated bank account

36

was sophisticated); *United States v. Erwin*, 426 F. App'x 425, 436-37 (6th Cir. 2011) (affirming District Court's reasoning that using knowledge of bank system to structure transactions to conceal scheme was among sophisticated means used to perpetrate fraud).

- <u>Creation of Fake invoices</u>. Kimberley Tew used her savvy at creating marketing presentations to create the sham invoices for MCG, Inc. that she then sent to Yioulos using the dummy MCG, Inc. account. She also routinely discussed the use of false invoices with Michael Tew. *See, e.g., United States v. Tanke*, 743 F.3d 1296, 1307 (9th Cir. 2014) (concluding that creation of fake invoices supported sophisticated means enhancement). Kimberley Tew directly discussed the need to create the false invoices and pushed Michael Tew to make them. *See, e.g.,* ECF No. 341-1 (Log Entries # 173) ("He [Jon] needs to pay that invoice himself again today."); *Id.* (Log Entries # 28, 46, 140, 173, 332).

- <u>Creation of fake email accounts</u>. Kimberley Tew created the MCG, Inc. fake email account to further disguise her involvement in the submission of false invoices. This aspect of the scheme layered one deception on top of another in a way that shrewdly leveraged her deceptions for maximum effect. Michael Tew and Kimberley Tew was already deceiving the victim company by using false invoices. But they were also deceiving co-conspirator Jonathan Yioulos, telling him that the invoices were being submitted by third-parties who were extorting and blackmailing the Tews. That wasn't true. It was part of an effort to disingenuously appeal to Yioulos's desire for friendship. In reality, the emails were sent by either Michael or Kimberley Tew. ECF No. 341-1 (Log Entries # 339 -341); *cf. United States v. Milligan*, 77 F. 4th 1008, 1013 (D.C. Cir. 2023) (affirming finding of sophisticated means where defendant created fake email accounts to impersonate others).

- <u>Recruitment of others</u>. Kimberley Tew recruited others to help her perpetrate the scheme so that she could diffuse responsibility. She was directly responsible for trying to bring H.S. into the scheme and she successfully persuaded M.M. to let her use his bank account to receive fraudulent money, which was then forwarded Kimberley Tew in transactions designed to conceal their role. *Cf. United States v. Snow*, 663 F.3d 1156, 1164 (10th Cir. 2011) (affirming sophisticated means finding in scheme that involved defendant asking others to help in scheme).

- <u>Cryptocurrency</u>. Kimberley used her advanced knowledge of cryptocurrency to help herself and Michael Tew hide scheme proceeds, quickly spend them,

37

and to reward co-conspirators like Yioulos. ECF No. 341-1 (Log Entries # 139, 171, 185, 197, 201, 283, 286, 291, 304, 308, 345). M.M. testified at trial that Kimberley used cryptocurrency platforms to eventually the money fraud money that was deposited into M.M.'s account by the Victim Company as part of the scheme. And it was Kimberley's perceived prowess at crypto investing that helped induce Yioulos's participation. *See, e.g., Id.* (Log Entry # 256).

Even if any single transaction might be viewed as unsophisticated, the relentless, intricate, and coordinated nature of the overall conduct is more than sufficient to make the scheme — which evaded detection by the victim company's accounting staff for two years through dozens of transactions that sometimes required multiple false invoices, the use of six different fake vendors, and dozens of bank accounts — an especially complex one. *United States v. Weiss*, 630 F.3d 1263, 1279 (10th Cir. 2010) (explaining that "Guidelines do not require every step of the defendant's scheme to be particularly sophisticated" and quoting opinions in other districts for principle that scheme as a whole can be sophisticated where it involves repetitive and coordinated conduct that links several steps to exploit vulnerabilities and avoid detection); *Cf. United States v. Hogeland*, No. 10-cr-0061, 2012 WL 4868904, at *6 (D. Minn. Oct. 15, 2012) (finding sophisticated means in remarkably similar wire fraud scheme perpetrated that victimized logistics company through submission of fraudulent invoices from multiple fake vendors), *affirmed on other grounds United States v. Bennett*, 765 F.3d 887, 899 (8th Cir. 2024); *United States v. Horob*, 735 F.3d 866, 872 (9th Cir. 2013) (affirming finding of sophisticated means where defendant "manipulated several people to lie for him, used several different

38

bank accounts (including accounts of other people) to move funds around, and fabricated numerous documents. Moreover, the complicated and fabricated paper trail made discovery of his fraud difficult").

### 3. Kimberley Tew led Michael Tew's efforts, organized them, and encouraged them, all while seeking other opportunities to expand the scheme by using others

Leadership can be manifold: criminal conspiracies are often compartmentalized, with each conspirator exercising entrepreneurial verve within a delimited area of responsibility. The court and can and should apply the enhancement to both Michael and Kimberley Tew because each organized and led different aspects of the fraud. U.S.S.G. § 3B1.1 cmt. app. note 4 ("There can, of course, be more than one person who qualifies as a leader or organizers or a criminal association or conspiracy); *United States v. Valdez-Arieta*, 127 F.3d 1267, 1271 (10th Cir. 1997) (noting this feature of guidelines and going on to conclude that someone can be subject to this enhancement even if he or she has no underlings: it's enough to have an organizing role and there can be many organizers).

- Recruiting of Accomplices. Kimberley Tew started the scheme, encouraged it, maintained it, demanded that Michael Tew be a part of it, and recruited M.M. to help with it. She was directly responsible for turning Michael to crime to maintain her lifestyle and subsidize her gambling. *See, e.g.,* ECF No. 341-1 (Log Entries # 301, 304, 332). She used the same tactics that Michael used against Yioulos. She threatened Michael with jail. "I'm going to jail if I don't get you money. That's what you said," Michael told Kimberley in April 2019. ECF No. 341-1 (Log Entry # 162). She manipulated his desire for family and ridiculed him as a provider: "why don't you ever think about your

39

family?" she pointedly accused him in June 2019 as part of an effort to prod him to ask Yioulos for money. *Id.* (Log Entry #192); *see also Id.* (Log Entry # 370) (suggesting that Michael Tew didn't want to be in the family because of his reluctance to involve his friend in a criminal conspiracy). At other times, stressed over her inability to pay her debts, she overrode Michael's stirring conscience. Michael reminded Kimberley they had promised to give Yioulos his expected bitcoin and that Yioulos had already sent them money. But Kimberley wanted more, ridiculing Michael for "freaking" and coldly ignoring Michael's questioning about "why do we purposely fuck hom [sic] over?" *Id.* (Log Entry # 249); *see also Id.* (Log Entry # 364) (encouraging Michael to encourage Yioulos to commit fraud despite Yioulos's desire to stop). She also pondered the possibility that Michael Tew might try to help his friend by engaging in self-sabotage and took active steps to warn Michael against it. *Id.* (Log Entry #177). All of this is consistent with leadership. *Cf. United States v. Clark*, 747 F.3d 890, 897 (D.C. Cir. 2014) (finding enhancement could apply where defendant controlled another criminal participant). In addition to her own husband, Kimberley Tew was also directly responsible for recruiting M.M. to open a bank account into which she and Michael Tew could deposit fraudulent proceeds. *United States v. Yarnell*, 129 F.3d 1127, 1139 (10th Cir. 1997) (concluding that defendant was leader or organizer of scheme). She also tried, unsuccessfully, to recruit H.S.

- <u>Obtaining unwitting services of third parties</u>. Kimberley Tew encouraged, supervised, and organized the participation of her own mother, who agreed to let the Tews use her bank accounts and cryptocurrency trading accounts. Kimberley Tew used her own mother to further the fraud by using those accounts to obtain and dissipate fraud proceeds, thereby furthering her own fraud while circumventing anti-money laundering controls put in place by the banks to stop exactly that. *See, e.g.,* ECF No. 341-1 (Log Entries #159, 160, 162, 166, 168, 171, 176, 177, 194, 197, 205, 262, 264) *Cf. United States v. Byrd*, 690 F. App'x 892, 894 (6th Cir. 2017).

- <u>Nature of Participation</u>. Kimberley Tew was the driving force behind the fraud. She was the one who initiated it, using Michael Tew's corporate card to pay off her debts and then, when that was shut down, encouraging Michael to commit the invoicing fraud to keep paying those debts, to subsidize her gambling, and to finance their lifestyle. *See, e.g.,* Id. (Log Entry # 178) (criticizing Michael Tew for not making enough money and directing Michael to tell Yioulos "to just pay the invoice again himself."). The evidence shows that she was the one who decided when Michael would ask for money, directing him to make the requests to Yioulos. *See, e.g.,* ECF No. 341-1 (Log

Entries # 139, 178, 185, 192, 197, 249, 260, 274, 276, 279, 283, 288, 291, 304, 308, 330, 334, 348, 364, 368). And she kept track of how much Yioulos had sent to them. *See, e.g., Id.* 1 (Log Entry # 311). It is difficult to find examples of fraudulent payments made entirely on Michael Tew's initiative: it appears, instead, that Michael — and thus Yioulos — acted only when Kimberley expressed a need for money. *Cf. United States v. Atkins*, 881 F.3d 621, 628 (8th Cir. 2018) (concluding that there was no error in applying enhancement to defendant who planned timing and frequency of fictitious transactions as well as amount of fraudulent proceeds in each payment); *United States v. Byrd*, 690 F. App'x 892, 895 (6th Cir. 2017) (affirming District Court's application of enhancement to defendant whose accomplice testified that he took instructions from defendant and took no action without approval).

- <u>Planning and Organizing of Offense</u>. Kimberley Tew, in conjunction with Michael Tew planned and organized the use of the various different vendors to maintain the scheme over the course of two years. She helped plan and organize the use of sham vendors HS CPA, MCG, Inc. and 5530 JD using the names of her friends and crypto-trading associations. She organized much of the complex banking that helped them evade detection, giving Michael Tew detailed directions on how to money their money between and among fiat and cryptocurrency accounts belonging to her, her family, and her associates. *See, e.g.,* ECF No. 341-1 (Log Entries # 153, 167, 168, 171, 173, 177, 178, 182, 185, 189, 197, 202, 255, 261, 264, 276, 281, 282, 291, 302, 311, 332, 334, 343, 348, 356, 363, 366). And she designed their plan for what they would do if they ever got caught: turn in one of them so that other could escape. *See id.* (Log Entry # 338). She also helped plot the scenarios that would frighten Yioulos the most, helping to stimulate his consistent involvement. *See, e.g., id.* (Log Entry #129, 341). And she advised Michael not to send sham agreements in addition to the sham invoices. *Id.* (Log Entry # 59).

- <u>Claimed Right to Proceeds</u>. Michael Tew and Kimberley Tew controlled and laid claim to the vast majority of the millions taken as a result of the scheme. *Cf. United States v. Brown*, 293 F. App'x 826, 830 (2d Cir. 2008) (concluding that District Court was reasonable in applying leadership enhancement where defendant paid coconspirators only a small fraction of amount he kept for himself); *United States v. Tookes*, 456 F. App'x 159, 163 (3d Cir. 2012) (finding no error in application of enhancement where defendant recruited co-conspirators, directed their actions, and maintained sole control of assets and proceeds of fraud). Although she tried to claim at trial that Michael controlled the bank accounts that received the proceeds, any suggestion that she did not control where the proceeds went is belied by the copious text messages in

41

which she give Michael detailed demands on where the money should go. *See, e.g.,* ECF No. 341-1 (Log Entries # 153, 167, 168, 171, 173, 177, 178, 182, 185, 189, 197, 202, 255, 261, 264, 276, 281, 282, 291, 302, 311, 332, 334, 343, 348, 356, 363, 366).

But for Kimberley Tew's relentless requests for money, her constant cajoling of others to carry out the scheme, and her ability to recruit others to participate, this scheme would not have been successful for two years. The court should recognize the criminogenic nature of Kimberley Tew's conduct and apply the enhancement.

### 4. *Kimberley Tew repeatedly attempted to obstruct justice in order to avoid accountability*

Kimberley Tew did exactly what the Guidelines describe as the kind of thing that should result in an enhancement for obstruction: "threatening, intimidating, or otherwise unlawfully influencing a co-defendant [or] witness . . . directly or indirectly, or attempting to do so" and "destroying . . . evidence that is material to an official investigation or judicial proceeding . . . or attempting to do so." U.S.S.G. § 3C1.1 cmt. app. n. 4(A) & 4(D).

Kimberley's audio-recorded efforts to convince Michael Tew not to cooperate against her constitutes obstruction under the Guidelines. The fact that it involved two members of the same family is legally irrelevant. *United States v. Hesser*, 800 F.3d 1310 (11th Cir. 2015) explains why. In that case, the Eleventh Circuit affirmed an obstruction enhancement for a husband who asked his wife to "go over" her testimony and, when she refused, told her "if you don't want to help, I'll know whose

head to lop off." *Id.* at 1331. The defendant later told his children that their mother was betraying them by working for the government. *Id.* The defendant argued that the comments were part of a domestic spat. The district court disagreed and the Eleventh Circuit affirmed. *Id.* Kimberley's self-interested use of their children to cajole Michael into leaving a meeting with federal agents is different only in its particulars, not in its intent or consequences. *Hesser* is not an outlier. Courts have had no trouble concluding that spouses can obstruct justice by making efforts to stymie cooperation. *See also United States v. Pofahl*, 990 F.2d 1456, 1481 (5th Cir. 1993) (describing defendant's effort to obstruct justice by writing husband letter imploring him to stop providing information to authorities); *cf. United States v. Bingham*, 81 F.3d 617, 632 (6th Cir. 1996) (concluding that letters by defendant to co-defendant girlfriend were obstructive effort to influence decision whether to plead guilty).

An effort to obstruct does not have to be successful to evince contempt for the law and the need for additional punishment. An attempt is sufficient. Even if the Court is unpersuaded that Kimberley Tew stopped her husband from cooperating, Kimberley Tew's unsuccessful efforts to persuade H.S. not to speak to law enforcement independently justifies application of the obstruction enhancement. *United States v. Pinkney*, 552 F. App'x 512, 515 (6th Cir. 2014)

Kimberley's deletion of text messages also independently justifies the sentencing enhancement.

43

### 5. The range of 121-151 months recommended by the guidelines provides a rough approximation of the kind of sentence that is sufficient but not greater than necessary to accomplish the goals of criminal justice

The defendant has no known criminal history. At Offense Level 32, the Sentencing Guidelines recommend a sentence between 121 and 151 months' imprisonment. U.S.S.G.§ 1B1.1(a)(7); U.S.S.G. ch. 5 pt.A. This range is, by itself, one of the factors the Court should consider before imposing a sentence. 18 U.S.C. § 3553(a)(4).

The Guideline range is not mandatory, but it should be a persuasive background consideration for organizing and thinking about sentencing in this case. As the Supreme Court has advised, the sentencing range provides a useful framework for evaluating all of the various sentencing factors in one conclusive gestalt because it provides a "rough approximation" of sentences that will achieve all of § 3553(a)'s objectives. *Rita v. United States*, 551 U.S. 338, 350 (2007); *United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir. 2006). For this reason, sentences within the Guideline range are presumed to be reasonable on appeal. *Kristl*, 437 F.3d at 1054. Furthermore, a sentence within the range satisfies not just one factor but two: sentencing within the range is the best way to avoid an unwarranted sentencing disparity as required by 18 U.S.C. § 3553(a)(6). *Id.* (describing how Guidelines remain essential tool for creating a fair and uniform sentencing regime across the country). The Recommended Sentence is thus supported by two of the statutory sentencing factors.

44

But set the Guidelines aside for a moment. As set forth in more detail below the conclusion that the Guidelines independently urge in this case — a sentence between 121-151 months — is not an abstract or academic one. The particular facts of this case viewed through the prism of § 3553(a) fully support the Recommended Sentence of 151 months.

## B.   The brazen and callous nature of a serious crime that imposed substantial financial and emotional harm under privileged circumstances fully support the Recommended Sentence (18 U.S.C. § 3553(a)(1) and (a)2(A))

Kimberley Tew was the animating force behind a two year crime spree that consumed everyone around her. The crime was born of greed. "I really really really don't want to stress you out, but we are going to need more money," she told Michael in October 2019. ECF No. 341-1 (Log Entry # 283). Quite simply, she never had enough money for the lifestyle she wanted, the crypto-business accolades to which she thought she was entitled, or the gambling wagers she wanted to make. "It's just not enough. With the negative accounts and bills we have to pay plus the car and AN [one of the investors to whom she owed money] that's over 60K. It really leaves nothing for Vegas," she complained. *Id.* To get money, she turned to crime, bringing her husband around with her. "I need you to work on Jon for sending today," she told him. *Id.* She repeated this request over and over and over again. *See, e.g.,* ECF No. 341-1 (Log Entries # 139, 178, 185, 192, 197, 249, 260, 274, 276, 279, 283, 288, 291, 304, 308, 330, 334, 348, 364, 368). She did this despite being warned that what she was doing was 1000% fraud. *Id.* (Log Entry # 37). When she

45

didn't get her way, she ruthlessly threatened to destroy the lives around her. *Id.*
(Log Entries # 59, 265, 317). She did this even to the people, like Michael Tew, she
purported to love. *Id.* (Log Entry # 162). For two years, deceit became a central
focus of her life.

As with Michael Tew, nothing about Kimberley Tew's decision to commit her
crimes — and to bring others into it —arose out of some kind of moral, ethical, or
professional dilemma. She wanted money so she took it. Without scruples. She took
it from the Victim Company. She took it from investors. She took it from people she
considered friends. She took it and then she gambled it away, always feeling
entitled to more. *See, e.g. Id.* (Log Entry #342) (reporting to Michael that they did
not have enough for rent and needed money from Yioulos to pay it). Nothing about
the circumstances of her crime helps to contextualize, explain, or minimize it.
Throughout this period the defendant lived in upper -class comfort, using income
from the fraud to pay for a luxury apartment, fine dining, vacations, and cutting-
edge couture. This was a crime of choice chosen deliberately and without regard for
consequences.

Federal wire fraud and money laundering crimes that inherently spill across
state lines to infect interstate are already among the most serious of non-violent
crimes a person can commit. But Kimberley Tew's crime stands out. This was not a
"one off" or an anomaly. It was a deliberate pattern of criminal behavior carried out
over a long period of time. This makes it more serious than most theft crimes. The

loss amount of more than $5,000,000 also makes it more serious. In 2022 the median loss amount for federal fraud offenders was $160,737 and only 17.5% involved losses of more than $1.5 million. The defendant's crime is likely among the most serious that will be evaluated by all federal courts this year. *Quick Facts*, Fiscal Year 2022, *available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Theft_Property_Destruction_Fraud_FY22.pdf* (accessed on March 7, 2024) ("Quick Facts"). Everything else about the crime — its complicated nature and broad scope, its corruption of the banking system, its contempt for the criminal justice process, its criminogenic tendency to ensnare others in criminal behavior, and its blithe disregard for consequences — makes it worse.

The nature of the crime is serious and nothing about its circumstances makes it sympathetic or deserving of leniency. This factor weighs heavily in favor of the Recommended Sentence.

### C. Nothing about the defendant's history warrants less punishment and everything about the characteristics she demonstrated while committing the crime support the Recommended Sentence (18 U.S.C. § 3553(a)(1)

Kimberley Tew's pursuit of money came at everyone else's expense. She was a college-educated and tech-savvy entrepreneur who could have made an extremely comfortable living by working hard. She didn't do that. Instead, she myopically pursued her own selfish desires through crime. For example, she once gambled so much in Vegas that she and her family risked being stranded without the money to

47

buy tickets home and then had to beg Michael for another execution of their fraud. ECF No. 341-1 (Log Entries # 297 and 301). There is nothing about the defendant's background that mitigates, explains or contextualizes her criminal behavior. "Criminals who have the education and training that enables people to make a decent living without resorting to crime are more rather than less culpable than their desperately poor and deprived brethren in crime." *United States v. Stefonek*, 179 F.3d 1030, 1038 (7th Cir. 1999).

To commit, continue, and conceal her crime for two years Kimberley Tew had to exhibit characteristics that were particularly cruel and callous. She convinced Michael to treat Yioulos with derision and contempt. ECF No. 341-1 (Log Entry # 242, 317). When Michael Tew wouldn't commit fraud for her, she threatened to make him responsible for all of her schemes including her cryptocurrency fraud. *Id.* (Log Entry # 177 ) (featuring Kimberley threatening to tell "everyone you are holding the crypto," and telling Michael he was "useless"). She did this even after Michael strongly suggested they needed to stop committing fraud, telling her that they needed to make realistic deals to get out of debit and "move on." *Id.* (Log Entry # 129). She, just like Michael, layered one lie on top of another: she lied to Yioulos about being threatened by others and she lied to Yioulos about invoices being submitted to Yioulos by M.M. and C.R. *Id.* (Log Entry #37, 115). The Court will have to evaluate whether she even lied in the middle of her prosecution by asking for counsel, intended for the indigent and those in true need, while pocketing tens of

48

thousands of dollars.

The Recommended Sentence, which is at the very top of the advisory guideline range, takes into account the lack of any mitigating factors here. The defendant has no criminal history, but the guidelines already take that into account. Quick Facts (noting that 70.6% of offenders sentenced using § 2B1.1 of the Guidelines were in Criminal History Category I); *Cf. United States v. McClatchey*, 316 F.3d 1122, 1135 (10th Cir. 2003) (noting, in context of disfavored Guideline departure at U.S.S.G. § 5H1.11, that it expects district courts to view good character references with skepticism in sentencing executives who commit white-collar offenses); *Stefonek*, 179 F.3d at 1038 (emphasizing that district judges should not impose 'middle class' sentencing discount and then explaining, by reference to U.S.S.G. 5H1.10, that "[b]usiness criminals are not to be treated more leniently than members of the "criminal class" just by virtue of being regularly employed or otherwise productively engaged in lawful economic activity.")

Kimberley Tew's criminal appetite appears to be driven by an untreated gambling addiction, but she had numerous opportunities, loving support, and adequate resources to attend treatment. She made a deliberate choice not to do so, consciously embracing and selecting the thrill of the tables over the costs it imposed on others. *See, e.g.,* ECF No. 341-1 (Log Entry # 301) (refusing to come up from gaming floor and, instead, asking Michael for another execution of the fraud scheme so that Kimberley would be "more comfortable"). Her threats were non-violent, but

49

they were malicious: she cynically tried to use the government and — ultimately — judicial consequences as a bludgeon to keep her drafted minions in line.

Kimberley Tew's cynical views of the criminal justice system manifested themselves in other ways. Evidence shows she believed that she had the power to get immunity for herself or for others so that they could escape from consequences. *Id.* (Log Entry # 338).

Kimberley Tew committed the crime knowing that getting caught would mean she faced the very realistic possibility of being incarcerated during the childhoods of her two daughters. This consequence — unimaginable to many — did nothing to deter her lies or encourage her to make different choices. Rather, she weaponized the plight of her children to stop her husband from trying to make things right.

The Recommended Sentence reflects that fact that the Guidelines were created, in part, to help address the concern that white-collar offenders received special treatment and "frequently do not receive sentences that reflect the seriousness of their offenses." S. Rep. No. 98-225 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3260. A sentence outside the Guidelines range would create disparities with other types of offenders that would simply reinforce this perception of special treatment and thus undermine deterrence and respect for the law. *United States v. Kuhlman*, 711 F.3d 1321, 1329 (11th Cir. 2013) ("The Sentencing Guidelines authorize no special sentencing discounts on account of economic or

social status."); *United States v. D'Amico*, 496 F.3d 95, 107 (1st Cir. 2007) (explaining that lower sentences for white collar criminals contradicts purpose of Guidelines), reversed on other grounds, *D'Amico v. United States*, 522 U.S. 1173 (2008).

The Recommended Sentence takes into account the personal characteristics that combined to turn Kimberley Tew into the leader of a multi-year multi-million dollar conspiracy.

### D. The Recommended Sentence would deter Kimberley Tew from committing other crimes while deterring other would-be fraudsters from tearing at the bonds of trust that are vital to our general prosperity

The nature and circumstances of the crime, combined with the characteristics the defendant exhibited to carry it out, make a strong a strong case for concluding that she *is* the Holmesian bad actor personified: the kind of person who "cares nothing for an ethical rule which is believed and practiced by his neighbors" but who "is likely to care a good deal to avoid being made to pay money, and will want to keep out of jail if he can." Oliver Wendell Holmes, *The Path of the Law*, 10 Harv. L. Rev. 458, 459 (1897). That is, she is precisely the kind of person who can be deterred only if she can accurately predict that courts will impose a lengthy prison sentence for her conduct.

Specific deterrence supports the Recommend Sentence. Everything known about the crime, its circumstances, and the defendant's characteristics suggest that Kimberley Tew is exactly what she has never denied: a gambler seeking the thrill

that comes from beating the odds (or the boost from imagining you are so smart the normal odds don't even apply to you) — the kind of person who rationalizes the odds, balances the probability and size of the reward against the risks of failure, and then makes her wager. The sentence in this case should convince her that the house always wins.

The sentence in this case should also do what appeals to her conscience by friends and the specter of being unavailable for her children could not: alter the defendant's decision calculus so that the consequences, discounted by the likelihood of getting caught, outweigh the perceived benefits. *See* Richard A. Posner, Economic Analysis of the Law 256 (9th ed. 2014) (Attachment 1).

Research indicates that the Recommended Sentence is likely to have that effect. United States Sentencing Commission, *Length of Incarceration and Recidivism* at 4 (April 2020), available at https://www.ussc.gov/sites/default/ files/pdf/research-and-publications/research-publications/2020/20200429 _Recidivism-SentLength.pdf (last accessed March 13, 2024) (finding significant deterrent effect to sentences of more than 60 months); S*ee Loughran et al., Can Rational Choice Theory Be Considered a General Theory of Crime? Evidence from Individual-Level Panel Data*, 54 Criminology 86, 107 (2016) (finding that criminals "act in accordance with anticipated rewards and costs of offending") (Attachment 2).

Anything less than the Recommended Sentence would also undermine general deterrence. "Defendants in white collar crimes often calculate the financial

gain and risk of loss, and white collar crime can therefore be affected and reduced
with serious punishment." *United States v. Martin*, 455 F.3d 1227, 1240 (11th Cir.
2006); *United States v. Sample*, 901 F.3d 1196, 1200 (10th Cir. 2018) (citing cases
and Congressional findings supporting the deterrent effect of prison on white collar
crime).

Kimberley Tew calculated here that stealing over $5 million was "worth it,"
once she discounted the likelihood she'd be caught and the high probability that she
could hold on to large sums of that money by offshoring it on cryptocurrency
platforms. Anyone else who thinks that they can take millions and then obtain
immunity or otherwise hack the justice system to get away with it —other would-be
criminal millionaires weighing the possibly enormous gains of fraud against the
likely consequences, discounted by the likelihood of detection — should be able to
look at the sentence in this case and rationally conclude that the crime is not worth
it (taking into account the remarkably resilient ability of individuals to believe that
they are above average and that they can avoid the pitfalls that led *others* to be
caught).

The Court should also consider the possibility that the defendant is simply
not deterrable. In this case, the defendant kept committing fraud (1) in the shadow
of constant paranoia regarding whether Yioulos was a "rat" who would turn her in,
(2) after she found out that the FBI had contacted the Victim Company, and (3) in
background circumstances of substantial financial security that would leave almost

anybody content. Then, *after* being indicted and *despite* being aware that she faced years in prison, the defendant's internal decision calculus somehow computed that the gains of applying for CJA counsel through the same judge who would eventually sentence her outweighed the potential consequences. If the defendant cannot be deterred from committing fraud in a situation almost custom-built to do exactly that — supervision by federal pretrial services while confronting the extremely high likelihood of a conviction and the resulting serious sentence — it is difficult to imagine what could deter her from lying for personal benefit.

If the defendant cannot be deterred, only the Recommended Sentence will be sufficient, but not greater than necessary, to protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)C). This is all the more true when the defendant at issue has extensive experience and knowledge regarding most effective means and methods for committing financial crime. She knows how to create and use a shell corporation, how to manipulate bank procedures to avoid anti-money laundering protocols, how to use and maintain digital aliases, the most effective ways to recruit and retain accomplices, how to create other fake documents, how to use offshore cryptocurrency platforms to hold on to any ill-gotten gains, and how to use all of these means to defraud others. The only way to ensure she is not tempted to use this knowledge to immediately enrich herself — or take stake another wager as part of another criminal venture — is a lengthy sentence of imprisonment.

54

### E. Only the Recommended Sentence would impose just punishment and instill respect for the law from a defendant who has treated it with contempt

Imposing the Recommended Sentence would mean that the defendant receives one year of prison for approximately every $404,310 she stole. Even spread across a sentence longer than Michael Tew's, that's still one year of prison for taking more than most people in the United States will earn in over five years while following the law. And that simple calculus does not include qualitative aspects of the crime, like her callous manipulation of others. Approximately twelve-and-a-half years, given all of the circumstances, is just punishment that "reflects the gravity of the offense" and "takes into account the cost of the defendant's criminal conduct and the cost society must undertake to punish that offense." *Simon v. United States*, 361 F. Supp. 2d 35, 44 (E.D.N.Y. 2005) (interpreting this § 3553(a) factor with support from legislative history and circuit precedent).

The Recommended Sentence would also promote the respect for the law that Kimberley Tew held in contempt throughout the conspiracy and during the pendency of his criminal prosecution.

## III. CONCLUSION

"I don't care if we all go down," Kimberley once told Michael in a moment of candor. ECF No. 341-1 (Log Entry # 317). And she didn't: all of the evidence shows that Kimberley lied for years with no remorse. If she had regrets, it was that the people around her failed to give ger more money. *Id.* (Log Entries # 129, 192, 267,

283, 340, 341, 367). In just two years she managed to ruin several lives and squander a stolen fortune. Then she applied the same tactics she had used to perpetrate the fraud to target the justice system itself, targeting its witnesses, mechanisms and objectives. She lived a life that was 1000% fraud. She deserves a sentence that is at least 100% of what our judicial system, through the Sentencing Commission, demands of everyone else in a similar circumstance. For all of the reasons set forth above, the Recommended Sentence is sufficient, but not greater than necessary, to achieve all the goals of criminal justice set forth at 18 U.S.C. § 3553(a).

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*  
Bryan Fields  
Assistant United States Attorney  
U.S. Attorney's Office  
1801 California St. Suite 1600  
Denver, CO 80202  
(303) 454-0100  
Bryan.Fields3@usdoj.gov  
Attorney for the Government

By:   */s/ Sarah H. Weiss*  
Sarah H. Weiss  
Assistant United States Attorney  
U.S. Attorney's Office  
1801 California St. Suite 1600  
Denver, CO 80202  
(303) 454-0100  
Sarah.Weiss@usdoj.gov  
Attorney for the Government

**Certification of Type-Volume Limitation**

Judge Domenico's Practice Standard III(A)(1) does not impose a type-volume limitation on sentencing statements.

*/s Bryan Fields*  
Bryan David Fields

**Statement of Speedy Trial Impact**

56

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because trial has already occurred within the Speedy Trial Act deadline.

57

**CERTIFICATE OF SERVICE**

      I certify that on this 14th day of March, 2024 I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record in this case

                               s/ *Bryan David Fields*
                               BRYAN DAVID FIELDS
                               Assistant United States Attorney
                               1801 California Street, Suite 1600
                               Denver, CO 80202
                               Telephone 303-454-0100
                               Facsimile 303-454-0402
                               Bryan.Fields3@usdoj.gov

ASPEN CASEBOOK SERIES

# *ECONOMIC ANALYSIS OF LAW*

## *NINTH EDITION*

### RICHARD A. POSNER

*Judge, U.S. Court of Appeals for the Seventh Circuit*
*Senior Lecturer, University of Chicago Law School*



Wolters Kluwer
Law & Business

Copyright © 2014 Richard A. Posner.

Published by Wolters Kluwer Law & Business in New York.

Wolters Kluwer Law & Business serves customers worldwide with CCH, Aspen Publishers, and Kluwer Law International products. (www.wolterskluwerlb.com)

No part of this publication may be reproduced or transmitted in any form or by any means, electronic or mechanical, including photocopy, recording, or utilized by any information storage or retrieval system, without written permission from the publisher. For information about permissions or to request permissions online, visit us at www.wolterskluwerlb.com, or a written request may be faxed to our permissions department at 212-771-0803.

To contact Customer Service, e-mail customer.service@wolterskluwer.com, call 1-800-234-1660, fax 1-800-901-9075, or mail correspondence to:

> Wolters Kluwer Law & Business
> Attn: Order Department
> PO Box 990
> Frederick, MD 21705

Printed in the United States of America.

1 2 3 4 5 6 7 8 9 0

ISBN 978-1-4548-3388-8

**Library of Congress Cataloging-in-Publication Data**

Posner, Richard A.
    Economic analysis of law / Richard A. Posner, Judge, U.S. Court of Appeals for the Seventh Circuit, Senior Lecturer, University of Chicago Law School. — Ninth Edition.
        pages cm. — (Aspen casebook series)
    Includes bibliographical references and index.
    ISBN 978-1-4548-3388-8 (alk. paper)
    1. Law and economics.  I. Aspen Publishers. II. Title.

    K487.E3P67 2014
    349.73 — dc23

                                                    2013046762



# CHAPTER 7

## CRIMINAL LAW[1]

### §7.1 The Economic Nature and Function of Criminal Law

The types of wrongful conduct examined in previous chapters, mainly torts and breaches of contract, subject the wrongdoer to having to pay money damages to his victim, or sometimes to being prohibited (that is, enjoined), on pain of being sanctioned for contempt of court, from continuing or repeating the wrong—but only if the victim sues. Crimes are prosecuted by the state, however, and the criminal is ordered to pay a fine to the state or to suffer a nonpecuniary sanction such as being imprisoned. Trial procedure is also different in the two kinds of case, but examination of the procedural differences is deferred to Chapter 22. For now our interest is in why there should be distinctive sanctions, sought by the state, for some types of wrongdoing and what substantive doctrines such sanctions entail.

Five principal types of wrongful conduct are made criminal in the American legal system.

1. Intentional torts, examined in the last chapter, that represent a pure coercive transfer either of wealth or of utility from victim to wrongdoer. Murder, robbery, burglary, larceny, rape, assault and battery, mayhem, theft by false pretenses, and most other crimes that, like these, were punishable under the English common law correspond to such intentional torts as assault, battery, trespass, and conversion, although we shall see that the requirements concerning the defendant's state of mind and the presence of an actual injury sometimes differ for the criminal counterpart of the intentional tort. Here, however, are some problematic examples of crime as pure coercive transfer:

---

1. On the rules and principles, respectively, of criminal law, see Wayne R. LaFave, Criminal Law (4th ed. 2003), and Ronald N. Boyce, Donald A. Drips & Rollin M. Perkins, Criminal Law and Procedure: Cases and Materials (9th ed. 2004) (both on rules); and H.L.A. Hart, Punishment and Responsibility: Essays in the Philosophy of Law (1968), and George P. Fletcher, Rethinking Criminal Law (2d ed. 2000) (both on principles).

253

Case No. 1:20-cv-00805-RDD Document 64-59-1 filed 04/23/24 USDC Colorado pg
1075 of 1354

(1) *Counterfeiting* can be viewed as a form of theft by false pretenses — the pretense being that the payor is paying with legal tender. If the counterfeiting is discovered, the victim is whoever ends up holding the worthless currency. If it is not discovered, the loss is more widely diffused. Since counterfeiting increases the amount of money in circulation relative to the total stock of goods and services in society, everyone's money is worth less (inflation); everyone but the counterfeiter, and a debtor whose repayment obligation is in fixed dollar terms, is a loser. More important — for unless counterfeiting is widespread the effect on the supply of money will be slight — counterfeiting imposes dead-weight costs in the form of the counterfeiter's tools and time (and resulting loss of productive employment) and of self-protective measures by merchants, banks, and other enterprises that receive money from the public.

(2) *Rape* bypasses the market in sexual relations (marital and otherwise) in the same way that theft bypasses markets in ordinary goods and services. But some rapists derive extra pleasure from the fact that the woman has not consented. For these rapists there is no market substitute — market transaction costs are prohibitive — and an economist might therefore argue that for them rape is not a pure coercive transfer and should not be punished if the pleasure to the rapist (as measured by what he would be willing to pay — though not to the victim — for the right to rape) exceeds the victim's physical and emotional pain. There are practical objections, such as that these rapists are hard to distinguish empirically from mere thieves of sex; that giving them free rein would induce women to invest heavily in self-protection, which would in turn incite heavy spending by rapists to overcome that investment; and that there is no objective method of measuring the rapist's utility and the victim's disutility for the purpose of deciding which is greater. But the fact that any sort of rape license is even thinkable within the framework of the wealth-maximization theory that guides the analysis in this book is a limitation on the usefulness of that theory. What generates the possibility of a rape license is the fact that the rapist's utility is weighted the same as his victim's utility. If his utility were given a zero weight in the calculus of costs and benefits, a rape license could not be efficient. But such a weighting would be based on ethical rather than economic thinking.

(3) *Marital rape*.[1] Until recently marriage was a complete defense to a charge of rape. In a society that prizes premarital virginity and marital chastity, the cardinal harm from rape is the destruction of those goods and is not inflicted by marital rape. In such societies the seduction of a married woman is a more serious crime than rape, as it is more likely to produce children — and they will not be the husband's. In such societies, moreover, the main services that a wife contributes to the marriage are sexual and procreative, and to deprive her husband of these services is to strike at the heart of the marriage. A right to demand something does not entail a right to take it by force, but it can dilute the felt impropriety of force. Furthermore, the lower

§7.1   1. See Richard A. Posner, Sex and Reason, ch. 14 (1992).

the divorce rate, the fewer separations there are; and proving lack of consent is harder if the married couple is still together. The exception to the negative correlation between divorce and separation is where, as in Catholic countries until recently, divorce was forbidden but formal separations, often permanent, took their place.

The reasons for not making marital rape a crime have lost force with time. For example, the increasing financial independence of women, based on their improved access to the labor market, has increased their demand for control over their reproductive capacity, so that the timing and number of their children are coordinated with their market career. Any form of involuntary intercourse impairs that control, at least in principle (for there are of course effective contraceptives), by creating the threat of a birth that will disrupt the woman's career.

Continuing with our typology of types of wrongful conduct that the law makes criminal:

2. Deliberate commission of acts that reduce social welfare, such as price fixing (on which see Chapters 9-10), as may not have been recognized at common law.

3. Voluntary, and therefore presumptively (but only presumptively, as we know from Chapters 3 through 6) value-maximizing, exchanges involving activities that the state has outlawed, such as prostitution, trafficking in child pornography, selling babies for adoption, selling regulated transportation services at prices not listed in the carrier's published tariffs, and trafficking in narcotics.

4. Certain menacing but nontortious preparatory acts, such as unsuccessfully attempting or conspiring to murder someone when the elements of a tortious attempt are missing (as they would be if, for example, the victim was not injured and didn't even know of the attempt when it was made).

5. Conduct that if allowed would complicate other forms of common law regulation. Examples are leaving the scene of an accident and fraudulently concealing assets from a judgment creditor.

Why, though, can't all five categories be left to the tort law? An answer leaps to mind for categories 3 and 4: No one is hurt. But this is a superficial answer; we could allow whomever the law was intended to protect to sue for punitive damages. A better, but incomplete, answer is that detection is difficult when there is no victim to report the wrongdoing and testify against the wrongdoer. Punitive damages can be adjusted upward to take account of the difficulty of detection; in principle this device could take care of category 5 crimes as well. But the higher the punitive damages, the less likely they are to be collectible. Another question about categories 3 and 4 is, why punish acts that don't hurt anybody? For category 3, the answer lies outside of

economics; it is difficult for an economist to understand why, if a crime is truly "victimless," the criminal should be punished—though of course ostensibly victimless crimes may, like other contractual exchanges, have third-party effects; the sale of liquor to a drunk driver is an example. For category 4, the answer is bound up with the question—to which we now turn—why tort law is not adequate to deal with categories 1 and 2 (coerced transfers in violation of common law or statutory principles).

We know from the last chapter that the proper sanction for a pure coercive transfer such as theft exceeds the law's estimate of the victim's loss—the extra something being designed to confine transfers to the market whenever market transaction costs are not prohibitive.[2] Damages equal to market value would thus be inadequate even if the owner valued the good in question at its market price. He might well value it at a higher price (remember that the market price is the value to the marginal, not the average, purchaser). The law cannot readily measure subjective values, so this is an argument for adding a hefty bonus to damages based on market value and thus for heavy punitive damages in a case of theft.

In the case of crimes that cause death or even just a substantial risk of death, properly computed damages will often be astronomical. Recall from Figure 6.3 in Chapter 6 the nonlinear relation between risk and full compensation for bearing the risk. The risk of being killed by accident is more or less randomly distributed throughout the population. But the risk of being murdered is concentrated on the relatively small number of people who constitute obstacles to the goals of persons willing to murder. The probability of those people being murdered may exceed the probability of their dying accidentally, making the proper damages award greater than in the case of a normal death, even a death caused by negligence.

We must also consider the effect of concealment on the correct level of damages. Being for the most part a by-product of lawful, public activities, accidents usually are difficult to conceal and breaches of contract usually impossible to conceal. But someone who is deliberately endeavoring to take something of value from someone else will naturally try to conceal what he is doing, and will often succeed because he has planned the concealment in advance. A handy formula for deciding how much to award in damages if the probability that the tortfeasor will actually be caught and forced to pay the damages is less than one is $D = L/p$, where $D$ is the optimal damages award, $L$ the harm caused by the tortfeasor (including any adjustment to discourage bypassing the market by coercing wealth transfers), and $p$ the probability of his being caught and made to pay $D$. If $p = 1$, $L$ and $D$ are the same amount. But if, for example, $L = \$10,000$ and $p = .1$, meaning that nine times out of ten the

tortfeasor esc
$100,000. On
cost to the pro

Once dama
discourage ef
tionship betw
offset the defe
exceed the tor
society uses. C
forms, such as
of concealme
crimes. A third
punishment o
before it occu
policing is mor
to any moneta
fines rather th
damages if the

When tort re
any punitive da
need to invoke
civil penalties e
antitrust and se
nally and sued
dicts, for cases i
It might seem th
these cases wou
than optimal, be
greater disutilit
rence the added
dants to hire ex
the defendant is
punishment. M
having to pay a t
wealth, may be a
tacts, etc.) that g

The decisive
that their wealt
damages becau
has through cr
and the probab
percent. Then h
ficient to have d
$100 million. Wh
award would no
imposition is les

---

2. Subject to two qualifications, discussed below at greater length. The first is that the wrongdoers be responsive to the higher monetary sanctions. If not, the design of a penalty structure is complicated. Second, if the costs of law enforcement are very high, it may make sense to shift some responsibility for crime prevention to potential victims of crime by lightening penalties.

Case No. 20-00305 DDD Document 64-59-1 filed 04/23/24 USDC Page of 1080 pg 1078 of 1354

tortfeasor escapes the clutches of the law, then $D$, the optimal penalty, is $100,000. Only if the penalty is jacked up to this level is the *expected* penalty cost to the prospective tortfeasor ($pD$) equal to the harm caused by his act ($L$).

Once damages in the pure coercive transfer case are adjusted upward to discourage efforts to bypass the market, to give effect to the nonlinear relationship between risk of death and compensation for bearing the risk, and to offset the defendant's efforts at concealment, the level of damages will often exceed the tortfeasor's ability to pay. Three responses are possible, all of which society uses. One is to impose disutility on the criminal in nonmonetary forms, such as imprisonment or death. Another is to reduce the probability of concealment of the offense by maintaining a police force to investigate crimes. A third, which involves both the maintenance of a police force and the punishment of preparatory acts (category 4), is to prevent criminal activity before it occurs. If, for reasons that will be discussed in Chapter 23, public policing is more efficient than private, the state is the enforcer and has a claim to any monetary penalties imposed. So these penalties are paid to the state as fines rather than to the victims of crime as damages. The victims can seek damages if the crime is also a tort, whether common law or statutory.

When tort remedies are an adequate deterrent because damages, including any punitive damages, are within potential defendants' ability to pay, there is no need to invoke criminal penalties, which, as explained below, are costlier than civil penalties even when only a fine is imposed. Although in some cases, such as antitrust and securities fraud, affluent defendants are both prosecuted criminally and sued civilly, criminal sanctions generally are reserved, as theory predicts, for cases in which the tort remedy bumps up against a solvency limitation. It might seem that the double punishment (tort and criminal) of the affluent in these cases would produce excessive punishment (punishment more severe than optimal, because the added severity costs more to achieve, and/or imposes greater disutility on the defendant, than the benefit in whatever slight deterrence the added severity produces). But wealth enables affluent criminal defendants to hire excellent lawyers, reducing the probability of conviction (even if the defendant is guilty) and hence the deterrent effect of the threat of criminal punishment. More important, a wealthy defendant who "gets away" with just having to pay a tort judgment, even if the judgment confiscates all his existing wealth, may be able to recoup quickly because the human capital (skills, contacts, etc.) that generated that wealth remains intact.

The decisive argument for imposing criminal sanctions on the affluent is that their wealth, however great, may fall short of the optimal level of damages because of concealment of the offense. Suppose the defendant has through criminal violations of securities law amassed $100 million, and the probability of his being caught and subjected to a tort suit is 20 percent. Then his expected punishment cost is only $20 million and is insufficient to have deterred him from the criminal activities that brought him $100 million. Which means that even the prospect of a $100 million damages award would not be sufficient to deter him, because the probability of its imposition is less than 100 percent.

The argument that the criminal law system is primarily (though not exclusively) designed for the nonaffluent is not refuted by the use of fines as a criminal penalty. They generally are much lower than the corresponding tort damages, and even then are often forgiven because of the defendant's indigence.

## §7.2   Optimal Criminal Sanctions

A person commits a crime because he thinks, though often erroneously or in the grip of madness, that the expected benefits, whether pecuniary or emotional, exceed the expected costs. Many criminals have a low IQ or psychological problems (or both) that make it difficult for them to obtain legal employment or make a competent assessment of the relative benefits and costs (including expected punishment costs) of criminal activity. Nevertheless the empirical literature on crime finds that criminals respond to changes in opportunity costs of criminals' time, in the probability of apprehension (and so in the number of police), in the length of prison terms, and in other relevant variables — and this regardless of whether the crime is committed for pecuniary gain or out of passion, or by well-educated or poorly educated people,[1] or for that matter by minors.[2]

The costs of crime include various out-of-pocket expenses (for guns, burglar tools, masks, etc.), as well as the opportunity costs of the criminal's time and the expected costs of criminal punishment. The last will be our focus, but it is useful to mention the others in order to bring out the possibility of controlling the level of criminal activity in ways other than by tinkering with the level of law enforcement activity and the severity of punishment. For example, the opportunity costs of crime could be increased, and thus the incidence of crime reduced, by reducing unemployment, which would increase the gains from lawful work.[3] The benefits of theft, and hence its incidence, might also be reduced by a redistribution of wealth away from the wealthy — or increased. It is easier to fence goods in common use, and they are more widely possessed in an egalitarian society; and a welfare system

---

**§7.2**   1. For summaries of the empirical literature on the rational-choice model of criminal behavior, see Steven D. Levitt, Understanding Why Crime Fell in the 1990s: Four Factors That Explain the Decline and Six That Do Not, J. Econ. Perspectives, Winter 2004, p. 163; Isaac Ehrlich, Crime, Punishment, and the Market for Offenses, 10 J. Econ. Perspectives, Winter 1996, pp. 43, 55–63; D.J. Pyle, The Economic Approach to Crime and Punishment, 6 J. Interdisciplinary Stud. 1, 4–8 (1995). For an illustrative empirical study, see Steven D. Levitt, The Effect of Prison Population Size on Crime Rates: Evidence from Prison Overcrowding Litigation, 111 Q.J. Econ. 319 (1996).

2. See Steven D. Levitt, Juvenile Crime and Punishment, 106 J. Pol. Econ. 1156 (1998).

3. For evidence that reducing the unemployment level does indeed reduce the incidence of property crimes, but that a more important way in which prosperity reduces crime is by enabling larger state and local budgets for police and prisons, see Levitt, Understanding Why Crime Fell in the 1990s, note 1 *supra*, at 170–171.

# CAN RATIONAL CHOICE BE CONSIDERED A GENERAL THEORY OF CRIME? EVIDENCE FROM INDIVIDUAL-LEVEL PANEL DATA*

THOMAS A. LOUGHRAN,[1] RAY PATERNOSTER,[1]
AARON CHALFIN,[2] and THEODORE WILSON[1]
[1]Department of Criminal Justice and Criminology, University of Maryland
[2]Harris School of Public Policy, University of Chicago

KEYWORDS: rational choice, deterrence, decision making, adolescents

*In the last few decades, rational choice theory has emerged as a bedrock theory in the fields of economics, sociology, psychology, and political science. Although rational choice theory has been available to criminologists for many years now, the field has not embraced it as other disciplines have. Moreover, rational choice scholars have fueled this skepticism of the theory's generality by modeling offender decision making that is one-sided—large on the costs of crime (sanction threats), short on the benefits of crime. In this article, we directly assess the generality of rational choice theory by examining a fully specified model in a population that is often presumed to be less rational— adolescents from lower socioeconomic families who commit both instrumental (property) and expressive crimes (violence/drugs). By using a panel of N = 1,354 individuals, we find that offending behavior is consistent with rational responses to changes in the perceived costs and benefits of crime even after eliminating fixed unobserved heterogeneity and other time-varying confounders, and these results are robust across different subgroups. The findings support our argument that rational choice theory is a general theory of crime.*

Rational choice theory (RCT) has made important contributions to the social sciences and has become a prominent theoretical model within sociology, economics, psychology, and political science. Although there has been and continues to be considerable interest in RCT within criminology, many criminologists harbor great skepticism about it, particularly its rationalist assumption and its ability to offer a general theory of crime (DeHaan and Vos, 2003; O'Grady, 2014; Pratt et al., 2006). A repeated criticism against RCT with respect to its generality has been that a theory that emphasizes the rational weighing of the costs and benefits of actions may be perfectly applicable to financial market decisions but not to criminal behavior, and even if applicable to crime, the theory is limited to explaining instrumental kinds of criminal acts such as property crimes and simply is not relevant for actions that are laden with strong affect such as violent crimes. Another

---

* Additional supporting information can be found in the listing for this article in the Wiley Online Library at http://onlinelibrary.wiley.com/doi/10.1111/crim.2016.54.issue-1/issuetoc.

Direct correspondence to Thomas A. Loughran, Department of Criminal Justice and Criminology, University of Maryland, 2220 Samuel J. LeFrak Hall, 7251 Preinkert Drive, College Park, MD 20742 (e-mail: tloughra@umd.edu).

© 2016 American Society of Criminology                          doi: 10.1111/1745-9125.12097
CRIMINOLOGY   VOLUME 54   NUMBER 1   86–112   2016            86

e Case: 2:20-cr-00305-D DD Document 445-2 filed 01/23/24 USPage 2 of 270
1081 of 1354

consistent criticism of the theory is that it is overly narrow in its conceptual scope: that it is a simplistic model that includes only the financial costs and gains from offending. In criminology, rational choice theory has been closely aligned with deterrence theory, and so specification of RC theoretical models have frequently only included a limited range of variables—those focused on formal and informal sanctions.

Other criticisms are more parochial. Sociologically trained criminologists (a large share of the field) are frequently hostile to rational choice theory because it seems "too economic" and fails to take seriously the kinds of theoretical constructs that are at the heart of social theories of crime (Matsueda, 2013). This theoretical short-sightedness has also been passed on to those testing RC theory. In many cases, when it has been put to a test, it has consisted of only formal sanction variables (sticks) to the neglect of the many other factors that comprise the utility function of individuals (carrots). Many of the perceived problems that have been identified with rational choice theory in criminology, then, are of its own making[1] but needlessly so. Rational choice theory is a conceptually broader theory than both proponents have made it out to be and critics have taken it to be. Although formal sanctions are without a doubt an integral part of the theory, the perceived costs of crimes consistent with the theory include a much wider array of informal penalties and the perceived benefits include much more than financial remuneration. In fact, rational choice theory includes theoretical constructs that easily harmonize with several social theories of crime such as social control, routine activities, labeling theory, and others. In short, criminologists' understanding of rational choice theory has been myopic and the specification of rational choice models in the existing empirical literature has been sparse given its theoretical richness.

Our aim in this article is to examine the conceptual generality of RCT by testing a more inclusive specification of the theory, one that includes a comprehensive collection of carrots and sticks, in a sample of individuals that has demonstrated involvement in a mixture of both serious instrumental and violent offenses. We hope to demonstrate that many of the criticisms directed at the theory are off the mark mainly because critics have a far too narrow understanding of it and that the theory is far more inclusive than its critics realize. In the sections that follow, we will lay out our specification of the rational choice theory of crime by drawing on the economic model of crime by Gary Becker (1968) and show how that model differs in several important ways both from deterrence theory (in being far more general) and from the RCT model examined in previous criminological research, and that it includes variables that sociological criminologists should feel at home with. We then describe the intent of the present study, our sample, measures, and empirical strategy. We conclude with a discussion of the implications of our findings for the study of rational choice theory in criminology.

---

1.  Skepticism about the theory's capacity to explain all crime was even expressed by Cornish and Clarke (1986: 1–2), two of the initial translators of rational choice ideas into criminology: "Its [RCT] starting point was an assumption that offenders seek to benefit themselves by their criminal behavior; that this involves the making of decisions and of choices, however rudimentary on occasion these processes might be; and that these processes exhibit a measure of rationality, albeit constrained by limits of time and ability and the availability of relevant information. It was recognized that this conception of crime seemed to fit some forms of offending better than others."

se Kase:2020-0030506-DDD Document 6459-2 filed 01/23/24 USPage 6 of 270
1082 of 1354

## DETERRENCE VERSUS RATIONAL CHOICE THEORY

Although the introduction of rational choice theory into criminology is most often attributed to Cornish and Clarke's (1986) *The Reasoning Criminal*, the foundation of our rational choice model of offending is to be found in Gary Becker's (1968) journal article "Crime and Punishment: An Economic Analysis." In this seminal work, Becker laid out a relatively simple premise, that a rational offender weighs a risky choice in which he or she will engage in the commission of a crime if the expected utility from committing the crime is greater than the expected utility from refraining from committing the crime. Although Becker's article has had wide influence on public policy in the nearly 50 years since it was published (see the discussion in Nagin, 2013), it has been somewhat less influential in contemporary criminological research than one might reasonably expect and, as a result, has attracted surprisingly few direct empirical tests. Importantly, one can make a distinction between the wealth of empirical tests of *deterrence*, which are primarily aimed at testing components of Becker's (1968) theory such as the association between sanctions and/or perceptions of risk with offending (Chiricos and Waldo, 1970; Loughran et al., 2011; Paternoster et al., 1983), and the more complete theory of *rational choice*, which provides a richer depiction of criminal decision making as predicted by Becker's (1968) model. In this article, we provide a comprehensive test of Becker's theory by using individual-level panel data on active and serious offenders for whom we observe detailed information on beliefs about risks, costs and benefits, and offending behavior.

The key inputs of the choice calculus in Becker's (1968) model include $p$, the offender's probability of detection; $f$, the severity of the sanction one faces if apprehended; and $Y$, the utility benefits one accrues after the successful commission of the crime without apprehension.[2] In particular, Becker imagined the following equation, which describes a potential offender's utility as a function of the costs and benefits of crime:

$$EU = pU(Y - f) + (1 - p)U(Y) \tag{1}$$

According to equation 1, if an offender commits a crime and is apprehended, he or she experiences utility associated with the criminal gain net of losses as a result of the criminal sanction. On the other hand, if the offender commits a crime and is not apprehended, he or she experiences utility associated with the criminal gain only. Deriving the first-order conditions of equation 1 leads to several predictions regarding the three main behavioral variables of rational choice—namely, that crime will rise in $Y$ and will fall in both $p$ and $f$. Given this framework, any test of rational choice theory must necessarily include each of these three components. Instead, what scholars have largely produced are studies aimed at only testing specific, constituent parts of rational choice theory, or what can be thought of as studies of deterrence. We now discuss how the empirical literature has been mainly concerned with testing the former.

---

2. Becker's (1968) model does not include celerity, although subsequently economists have argued for the primacy of time preferences in recent work (Lee and McCrary, 2009), and only a few criminologists have directly tried to test for celerity effects (Loughran, Paternoster, and Weiss, 2012; Nagin and Pogarsky, 2004).

Case: 2020-03059-DDD   Document 4459-2   Filed 01/23/24   USPage 4 of 27
1083 of 1354

## DETERRENCE—RISKS AND COSTS

The probability of detection ($p$) has been the variable most traditionally studied in the criminological literature on rational choice. This literature has made two primary contributions. First, a policy-oriented literature has considered the responsiveness of crime to various criminal justice interventions that have plausibly raised the objective probability that an offender is apprehended for having committed a crime. This literature has documented evidence in favor of a negative relationship between crime and increases in police manpower (Evans and Owens, 2007; Lin, 2009; Marvell and Moody, 1996), "hot spots" policing (Braga, 2001; Sherman and Weisburd, 1995; Weisburd, 2005), "problem-oriented" policing (Braga et al., 2001; Braga et al., 1999; Weisburd et al., 2010), and exogenous shifts in police redeployments (DiTella and Schargrodsky, 2004; Draca, Machin, and Witt, 2011; Klick and Tabarrok, 2005). Although this literature has identified robust evidence of a reduced form relationship between the intensity of policing and criminal activity, the extent to which such studies have provided a credible test of deterrence theory is debatable. In particular, the findings in this research have been equally consistent with an important role for incapacitation effects (Chalfin and McCrary, 2014; Durlauf and Nagin, 2011; Nagin, 1998). Moreover, by examining aggregate data, this literature has not spoken to the deterrability of specific types of offenders.

A second type of literature has considered the responsiveness of crime to individual-level risk perceptions. The primary contribution of this wide-ranging literature has been to demonstrate the usefulness of individual subjective perceptions, as opposed to objective clearance rates, as measures of individual risk, dating back to the work of Waldo and Chiricos (1972). Recent work with samples from the general population (Lochner, 2007), high-risk youth (Matsueda, Kreager, and Huizinga, 2006), and serious offenders (Anwar and Loughran, 2011) has demonstrated that subjective risk perceptions are dynamic and rationally updated to be reflective of new information. Much of this literature has been primarily concerned with the relationship between subjective risk perceptions and offending, and scholars have typically observed a weak, negative association that is usually interpreted as evidence of a slight deterrent effect of increased risk perceptions (see Apel, 2013, for an overview of this literature).

However, these certainty studies have largely ignored several important components of Becker's (1968) more general rational choice model. First, although consensus strongly exists in the criminological literature that the certainty of punishment is the greater deterrent mechanism than severity (Paternoster, 2010), the criminological literature has failed to demonstrate empirically that increases in $p$ yield a greater reduction in offending than a comparably measured increase in $f$. Second, and more importantly, most criminological studies have been concerned with risk *perceptions*, or one's subjective belief about the true probability of detection, but often these studies have failed to make a distinction between or even mention risk *preferences*, or an individual's tendency to prefer a less (more) risky option net of the expected value. Becker (1968: 178, emphasis added) highlighted this latter idea as an explanation for the certainty effect being stronger than the severity effect: "The widespread generalization that offenders are more deterred by the probability of conviction than by the punishment when convicted turns out to imply in the expected utility approach that offenders are risk *preferrers*, at least in the relevant region of punishments." Stated differently, the wealth of studies that have compared the association of perceptions and offending without considering preferences for risk have

Case 2:20-cr-00305-DMD Document 449-2 filed 01/23/24 USDC Colorado
1084 of 1354

been generally incomplete, perhaps providing insight as to why the empirical relationship between the two measures is often weak.

The second component of Becker's (1968) model that has received considerable empirical investigation is the severity of punishment $f$. Studies of specific deterrence typically have conceptualized severity in terms of (longer) imprisonment spells, generally finding a null or sometimes criminogenic effect on future offending (Nagin, Cullen, and Jonson, 2009). Variability in methodological validity aside,[3] these studies have failed in several ways to test more formally a fuller version of rational choice theory, instead testing only a narrow conceptualization of deterrence. First, most studies have failed to account for the simultaneous interplay between severity and certainty. In particular, the research typically has assumed that the timing of shocks to the sanctions regime is as good as random insofar as it does not coincide with a broader effort to address crime through interventions that change the certainty of capture. Such assumptions are difficult to substantiate and have become the focal point for numerous controversies in the extant literature, the most prominent of which is the large and contentious literature on the deterrent effect of capital punishment (Chalfin, Haviland, and Raphael, 2013; Donohue and Wolfers, 2005; Durlauf and Nagin, 2011). Second, criminological theory has emphasized that possible costs to crime can include not only formal sanctioning such as imprisonment or fines but also informal sanctions such as the social costs of reputational embarrassment and shame (Grasmick and Bursik, 1990; Williams and Hawkins, 1986; Zimring and Hawkins, 1973). In other words, multiple sets of costs to crime must be considered when describing an offender's choice calculus.

## REWARDS TO OFFENDING

It is the third component of Becker's (1968) model, the benefits from crime $Y$, which highlights the most compelling distinction between deterrence studies and the broader concept of rational choice, and it is through this that rational choice becomes a conceptually broad, general theory of crime. As a result of severe data constraints, the literature on deterrence and offender decision making, even that which considers both certainty and severity, has tended to ignore the benefit side of the offender's decision calculus. The implicit assumption is that the perceived distribution of criminal benefits has remained unchanged, which seems to be difficult to justify on theoretical grounds. However, even if this assumption is met in a given data set, failing to consider whether changes in the benefits of crime lead to changes in offending leaves us with an incomplete test of rational choice theory. Typically, the benefits or rewards of crime are conceptualized as a monetary return to criminal activity. Such returns might include the "loot" from a theft or profits from the sale of illegal drugs, each of which can be lucrative (Loughran et al., 2013; McCarthy and Hagan, 2001; Nguyen et al., 2015). Of particular importance is the *net benefit* of crime—that is, the returns to crime above and beyond the opportunity cost of time spent in criminal activity, typically operationalized by using a potential offender's legal wage or, alternatively, measures of local labor market conditions more broadly (Ehrlich, 1973; Freeman, 1996; Grogger, 1998). Considering the net wage of crime emphasizes that

---

3. Nagin, Cullen, and Jonson (2009) highlighted the issues with selection bias in studies such as these, and they commented on the degree to which certain classes of studies are perhaps better equipped to yield internally valid estimates.

Case 1:20-cr-00305-DDD   Document 459-2   filed 01/24/24   USDC Colorado   Page 6 of 27

crime is costly not only because it is risky but also because it involves time that could otherwise be put to alternative use. Moreover, although public policy can potentially intervene to make legal work more rewarding, it is less clear how social planners can alter the rewards of illicit activities.

Although few studies have documented the responsiveness of crime to the gains of illicit activity, the idea that offenders are potentially deterred by better legal employment opportunities has been largely tested in the empirical labor economics literature with numerous recent studies finding robust evidence of a negative relationship between wages and employment rates and crime (Lin, 2008; Machin and Meghir, 2004; Raphael and Winter-Ebmer, 2001). As in the criminological literatures on the importance of certainty and severity, empirical tests of legal labor market opportunities offer only incomplete and suggestive evidence in favor of rational choice theory.

An equally important consideration is that conceptualizing the benefits of crime in monetary terms provides only a limited understanding of the motivations underlying criminal activity. Indeed, according to Becker's (1968) model, the benefits from crime can be conceptualized in multiple ways beyond formal monetary returns, including perceived intrinsic or social benefits such as increased social standing or the pleasure and enjoyment solely derived from breaking society's rules (Katz, 1990).[4] Indeed, such an articulation of the benefits of crime is more broadly applicable to violent crimes that often lack an explicitly instrumental motive, but "kicks" are an element of property crimes as well (Katz, 1990). For example, Nagin and Paternoster (1993) operationalized benefits from offending as "how much thrill or kick" an individual got from engaging in different types of offending. Furthermore, multiple studies have suggested that offenders are sensitive to rewards (Loughran et al., 2013; Pezzin, 1995). Any more comprehensive test of rational choice theory must therefore include components of criminal rewards against costs and risks to crime. Perhaps the best summary statement of a rational choice theory of criminal offending, one that clearly reveals its inclusion of a wide sweep of variables in addition to sanctions and sanction threats, was made by Matsueda (2013: 287), who argued that "the utility from crime is a function of the returns to crime plus income from conventional activity (each weighted by the probability of getting away with crime), plus the returns to crime and conventional activity minus the punishment for crime (each weighted by the probability of getting caught and punished)."

In summary, the extant literature on testing a rational choice theory of crime has several shortcomings that prevent us from making larger generalizations about the prominence of rational choice theory in predicting criminal activity. First, deterrence studies test only partial components of the theory, such as the relationship between risk perceptions and offending, or the specific deterrent effect of imprisonment, and such studies do not allow for comparisons between different components such as comparable changes in both. Second, many of the key concepts often are narrowly defined (e.g., imprisonment) and not fully operationalized in accordance with broader criminological theory. Third, most tests of deterrence fail to consider the reward side of an offender's decision calculus. *It is*

---

4.   Also consider Bentham's (1789: 2) much more widely inclusive definition that signals the utility of psychic benefits: "that property … whereby it tends to produce benefit, advantage, pleasure, good, or happiness." Becker (1968: 10) too used the term "psychic" to describe the affective gains of offending: "Y$_i$ is his income, monetary plus psychic [utility] from an offense."

*probably not unreasonable, therefore, to think that many of the criticisms directed at ratio-
nal choice theory as not yet ready to be a general theory may be in part a result of the stunted
way in which the theory has been conceptualized and tested as well as misunderstood.*

## TESTS OF RATIONAL CHOICE THEORY

To our knowledge, only a few studies in criminology have examined the rational choice
model to provide a test of Becker's (1968) rational choice theory by using individual-
level data.[5] Witte (1980), in using a sample of released prisoners in North Carolina, found
that increases in certainty and severity reduced participation in future crime, although a
percent increase in certainty had a comparatively larger impact than a percent change in
severity. Second, she found that although higher (legal) earnings did deter future crime,
the effect was weak. In contrast, Myers (1983), in using a sample of federal releases, found
only a slight severity effect and a positive relationship between certainty and future crime.
Piliavin et al.'s (1986: 101) work most closely parallels our own. In arguing for a broader
rational choice model of crime, they urged that "[a] more fruitful approach to the issue
of deterrence would examine the relationship between formal sanctions and crime from
within an explicit theoretical framework." Piliavin and colleagues estimated a rational
choice theoretical model that included factors as accrued legal and illegal earnings, as well
as the perceived formal and informal costs of punishment, but did not include indicators
of what Becker (1968) would consider the "psychic" gains of criminal offending. Nev-
ertheless, they found that for three diverse samples of offenders (adult criminals, adult
addicts, and youths), offending was related to the anticipated rewards of offending (and
to the presence of criminal opportunities) but not to the perceived costs. Pezzin (1995)
and Uggen and Thompson (2003) both applied versions of Becker's (1968) human capital
theory to criminal offending. By using the National Longitudinal Survey of Youth, Pezzin
(1995) found that those with greater criminal earnings were more likely to continue of-
fending over time, whereas those with higher legal earnings were more likely to terminate
their offending. By focusing on the factors explaining illegal income, Uggen and Thomp-
son (2003) found that illegal earnings were positively related to arrest experiences, drug
use, and criminal opportunities, whereas they were inversely related to conventional em-
beddedness (employment and ties to a spouse or partner). Both sets of findings confirm
the importance of a major component of a rational choice theory of crime—the returns to
illegal and legal employment. As with Piliavin et al. (1986), however, neither of these two
studies examined other components of the rational choice model such as the perceptions
of informal costs and the anticipated psychic rewards of crime. More recently, Matsueda,
Kreager, and Huizinga (2006) articulated and tested a rational choice model of theft and
violence. Appealing to Becker's (1968) model, Matsueda, Kreager, and Huizinga (2006:
96) argued that individuals will engage in crime when the "expected utility from com-
mitting crime is greater than expected utility from not committing a crime." In examin-
ing the responses to the Denver Youth Survey, they found partial support for a rational
choice model of crime. Offending was inversely related to the perceived risk of arrest and

---

5.  Several other studies have tested the model at a macro level by using panel data (Cherry and List,
    2002; Cornwell and Trumbull, 1994).

e Kase:2020r00030595HDIDD DCoorunmeniG4452-2 filEdl0d.l2a/l25/24 USPageC6lofaB27
1087 of 1354

positively related to psychic costs, such as the perceived excitement and coolness of the crime and the perceived opportunities to offend. Although it was a comprehensive rational choice model, Matsueda, Kreager, and Huizinga had no measures of the informal costs of offending or of the trade-off between legal and illegal earnings.

Although these studies are important in that they have provided informative tests of Becker's (1968) RCT theory, they nonetheless each have several limitations. First, no one study included a full panoply of the perceived informal costs and nonfinancial rewards of offending. Second, in some studies, offending was measured in terms of official, not self-reported, offending. Third, many of the key measures in several studies were either aggregated or unobservable altogether (e.g., the subjective probability of detection or returns to offending). Finally, and most importantly, the data in some of these studies were cross-sectional, which means that potentially important unobserved heterogeneity was left unaccounted for. Multiple criminological theories posit that time-stable, unobserved population heterogeneity could be an important confounder driving the findings of these studies (Gottfredson and Hirschi, 1990; Nagin and Land, 1993). Moreover, the lack of panel data prevents a deeper understanding of how changes in preferences over time within individuals contribute to their changing choice calculus. Finally, in arguing for a greater inclusion of rational choice into criminological theory, McCarthy (2002: 437) articulated the need for more acute tests of the theory with finer, longitudinal measures, when noting the following:

> [S]ociological criminologists must move beyond the assumption that all offenders share the same preferences. ... Individual preferences vary over time ... crime provides an array of returns, and people differ in their assessments of crime's costs and benefits. Future theory and research must begin by specifying the preference orderings that contribute to offending and then explicate how particular contexts or structural configurations encourage people to choose crime as a means of satisfying their preferences.

## THE PRESENT STUDY

This study aims to provide a more inclusive test of criminological rational choice theory as it is conceived of in Becker's (1968) economic model of criminal offending by using individual-level panel data from a sample of juvenile and young adult serious offenders in two U.S. cities. The nature of the data provides us with several advantages over the tests discussed earlier. First, we observe individual-specific measures of multiple dimensions of costs and rewards to crime, including social and personal costs, along with subjective beliefs about detection probability. Second, we observe detailed self-reports of offending variety and frequency, which we can disaggregate by crime type. Third, the panel data allow us to eliminate fixed, unobserved heterogeneity as a possible confounder. Fourth, we can test for heterogeneity in responsiveness to costs, risks, and rewards in several ways, including type of offending behavior—property versus violent.

Our intention, therefore, is first to construct a comprehensive rational choice model of offending and then to test empirically that model within a group of disadvantaged adolescent offenders of both property and violent crimes to gauge how general RCT theory is. If the hypotheses of the theory are supported within a group where it is least likely to be

se Nase 2:20-cr-00305-DDD Document 459-2 filed 01/23/25 USPage 9 of 207
1088 of 1354

applicable, because the population of individuals is thought to be less rational, then we think it can lay claim to being a general theory. To provide an even more comprehensive test of the generality of the RCT model, recall that Becker's (1968) RCT theory also considers the possibility that there is important heterogeneity in how responsive certain individuals are to costs and rewards. Therefore, we also test the idea of "differential rational choice," the idea that different subsets of economically disadvantaged offenders may be more or less responsive to changes in risks, costs, and benefits. Specifically, we consider differences based on gender and race but also based on what might be thought of as criminal propensity (Gottfredson and Hirschi, 1990). Competing theoretical arguments debate whether those individuals high in criminal propensity are either less (Gottfredson and Hirschi, 1990; Wilson and Herrnstein, 1985) or more (Pogarsky, 2002; Thomas, Loughran, and Piquero, 2013; Wright et al., 2004) likely to be influenced by considerations of the cost and benefits of offending. We create an indicator for high-criminal-propensity individuals based on several baseline risk factors for persistent offending to push the notion of the generality of RCT further.

# DATA AND METHODS

## SAMPLE

We analyze data from the Pathways to Desistance study, a longitudinal investigation of the transition from adolescence to young adulthood in serious adolescent offenders (Mulvey, 2012). Study participants are adolescents who were found guilty of a serious offense (almost entirely felony offenses) in the juvenile or adult court systems in Maricopa County (Phoenix), AZ, or Philadelphia County, PA. These youth were 14 to 17 years of age at the time of enrollment into the study. A total of 1,354 adolescents are enrolled in the study, representing approximately one in three adolescents adjudicated on the enumerated charges in each locale during the recruitment period (November 2000 through January 2003). The study sample comprises mainly non-White (44 percent African American and 29 percent Hispanic) males (86 percent), who were, on average, 14.9 years old at the age of their first petition, with an average of three petitions prior to the baseline interview. In addition to being from urban areas, the sample is mostly poor (54 percent of the respondents reported family income at $25,000 or less, and 70 percent reported family income $35,000 or less).

In this analysis, we use data collected at ten consecutive follow-up interviews, the first six of which correspond to 6-month observational periods over 36 months, whereas the last four correspond to yearly observation periods for a total of 84 months. In each period, we observe, for each individual, the self-reported number and types of crimes he or she commits, if any, during the observation period, along with detailed information regarding the risks, costs, and rewards to offending, which will be defined.

## MEASURES

We use three primary types of measures: 1) data on self-reported criminal activity, 2) data on the perceived costs and benefits of crime, and 3) survey data describing each individual's experiences and circumstances. In particular, the indices of costs and rewards were adapted for the Pathways study based on previous work by Nagin and Paternoster

Case 1:20-cv-03590-DDD   Document 645-2   Filed 03/24/24   USDC Colorado   Page 1089 of 1354

(1994). For each of these measures, a full list of included items and relevant psychometric properties is available at the study website: http://www.pathwaysstudy.pitt.edu.

SELF-REPORTED OFFENDING

The number of crimes an individual commits is derived from his or her self-reported offenses (SROs) recorded in each period. This measure is a revised version of a common self-reported delinquency measure of the number of crimes committed (Huizinga, Esbensen, and Weiher, 1991). In each period, an individual is asked whether he or she committed each of these 10 crimes during the recall period and, if so, how many times. Although the data allow us to consider offending frequency, this measurement approach has potentially serious shortcomings, as shown by Sweeten (2012). As such, we also use a variety score measure (i.e., the number of different types of criminal acts in which the individual reported engaging). As a result of granularity in the data, we classify each crime into one of three broad aggregates: 1) acquisitive crimes, 2) drug crimes, and 3) violent crimes. Acquisitive crimes include the following activities: breaking into a dwelling to steal, shoplifting, buying or receiving stolen property, using a check or credit card illegally, theft of a vehicle, carjacking, taking property by force with or without a weapon, or breaking into a vehicle to steal. Drug crimes refer to the sale (but not to the consumption) of narcotics. Finally, violent crimes include forcing another person to have sex, murder, shooting at someone regardless of whether the person was struck by the bullet, assaults involving a serious injury, or participation in gang assaults. Violent crimes do not include self-reported fights.[6]

PERCEIVED RISK

At each observation period, individuals were asked how likely it is that they would be caught and arrested for each of the following crimes: fighting, robbery with gun, stabbing someone, breaking into a store or home, stealing clothes from a store, vandalism, and auto theft. Response options ranged from 0 (*no chance*) to 10 (*absolutely certain to be caught*). The mean of these seven items was calculated for each individual at each observation period. The measure displayed high internal consistency ($\alpha = .89$ at baseline).

PERCEIVED PERSONAL REWARDS

The personal rewards of crime were measured by asking each individual how much "thrill" or "rush" it is to do any of the following things: fighting, robbery with gun, stabbing someone, breaking into a store or home, stealing clothes from a store, vandalism, and auto theft. If the individuals had reported never doing any of these things, they were asked to give a rating for how much thrill or rush they thought it would be. Response options ranged from 0 (*no fun or kick at all*) to 10 (*a great deal of fun or kick*). The mean across all items was then taken for each individual at each observation period, and the item had good internal consistency ($\alpha = .88$ at baseline).

---

6. We note that the distinction we have drawn between violent and property crimes does not accord with that used by the Federal Bureau of Investigation's (FBI's) Uniform Crime Reports System. Although the FBI records robberies as violent crimes (crimes again persons), we have chosen to classify robbery as an acquisitive crime because of its largely instrumental motivation.

se Case 1:20-c-00835-DDD    Document 64-2    Filed 01/24/24    USDC Colorado
1090 of 1354

PERCEIVED SOCIAL COST

The social cost of crime was measured by asking each individual if the police were to catch him or her doing something that breaks the law, how likely it is that he or she would be suspended from school, lose respect from close friends, lose respect from family members, lose respect from neighbors or other adults, lose respect from a girlfriend or boyfriend, or find it harder to get a job. Response options ranged from 1 (*very unlikely*) to 5 (*very likely*). This measure might reasonably be thought of as extralegal costs. The mean across all items was then taken for each individual at each observation period, and the item had acceptable internal consistency ($\alpha = .76$ at baseline).

PERCEIVED SOCIAL REWARDS

The social rewards to crime were measured by asking each individual how much he or she agreed or disagreed with several statements about how other people might react to the three different crimes: stealing (e.g., "If I take things, other people my age will respect me more"), fighting (e.g., "If I beat someone up, other people my age will respect me more"), and robbery (e.g., "If I rob someone, people my age will be afraid to mess with me"). Response options ranged from 1 (*strongly disagree*) to 5 (*strongly agree*). The mean across all items was then taken for each individual at each observation period, and the item had good internal consistency ($\alpha = .82$ at baseline).

LEGAL AND ILLEGAL EARNINGS

For each observation period, we observed how much money each individual reported earning from activities that were legal as well as illegal.

# MODEL

We estimate a descriptive model of individual-level rational choice theory that motivates the following regression:

$$Y_{it}^J = \alpha + \beta_1 P_{it} + \beta_2 f_{it} + \beta_3 Y1_{it} + \beta_4 Y2_{it} + X_{it}'\gamma + \theta_i + \rho_t + \varepsilon_{it} \qquad (2)$$

In equation 2, $Y_{it}^J$ represents the number of crimes of type $J$ committed by individual $i$ in time period $t$. $P_{it}$ represents an individual's perceived probability of apprehension, $f_{it}$ represents an individual's perception regarding the severity of the criminal sanction, and $Y1_{it}$ and $Y2_{it}$ represent an individual's social and personal rewards of crime, respectively. $X_{it}$ is a vector of time-varying control variables that address changes in an individual's circumstances that are likely to co-vary with both criminal activity and perceptual deterrence variables. Included in $X_{it}$ are an individual's age, the proportion of the time period spent in prison or jail,[7] whether an individual witnessed a relative be arrested, the number of different violent crimes an individual was the victim of and the number of different

---

7. As an additional sensitivity check, we estimated each model excluding those individuals who were incapacitated and out of the community for the entire observational period. These results, which are substantively similar, are available as part of the online supporting information in table S1. (Additional supporting information can be found in the listing for this article in the Wiley Online Library at http://onlinelibrary.wiley.com/doi/10.1111/crim.2016.54.issue-1/issuetoc.)

Case 1:20-cv-00083-DDD   Document 64-2   Filed 10/24/24   USDC Colorado   Page 1091 of 1354

## Table 1.  Summary Statistics ($N = 1,354$)

| Variable | Mean | Standard Deviation | Minimum | Maximum | Within-Respondent Share of Variation |
|---|---|---|---|---|---|
| A. Self-Reported Crimes | | | | | |
| All Crimes (Frequency) | 23.58 | 85.13 | .0 | 500.0 | .28** |
| All Crimes (Variety) | .71 | 1.64 | .0 | 15.0 | .39** |
| Theft and Robbery (Frequency) | 4.01 | 28.20 | .0 | 500.0 | .22** |
| Drug Crimes (Frequency) | 20.09 | 79.60 | .0 | 500.0 | .27** |
| Violent Crimes (Frequency) | .60 | 9.14 | .0 | 500.0 | .12** |
| Legal Share of Earnings | .81 | .37 | .0 | 1.0 | .55** |
| B. Model Parameters | | | | | |
| Certainty of Apprehension ($P$) | 5.61 | 2.97 | .0 | 10.0 | .51** |
| Severity of Sanction ($f$) | 3.15 | .93 | 1.0 | 5.0 | .42** |
| Social Rewards ($Y1$) | 1.88 | .52 | 1.0 | 4.0 | .47** |
| Personal Rewards ($Y2$) | 1.79 | 2.33 | .0 | 10.0 | .55** |
| C. Key Covariates | | | | | |
| Age | 19.30 | 2.37 | 14.5 | 26.0 | .23** |
| Proportion of Time Spent Incarcerated | .33 | .42 | .0 | 1.0 | .49** |
| Relative Arrested | .12 | .32 | .0 | 1.0 | .25** |
| Number of Victimizations | .20 | .59 | .0 | 5.0 | .23** |
| Number of Crimes Witnessed | .96 | 1.43 | .0 | 7.0 | .38** |
| Gang Membership | .09 | .28 | .0 | 1.0 | .61** |
| Male with Pregnant Partner | .06 | .24 | .0 | 1.0 | .16** |
| Birth of a Child | .07 | .26 | .0 | 1.0 | .13** |

*NOTES:* The table reports summary statistics—the mean and the standard deviation, as well as the minimum and maximum values for each variable used in subsequent analyses. We also report the proportion of variation in each variable that is explained by respondent fixed effects (within-variation in an analysis of variance). Statistical significance refers to the $p$ value from an $F$ test on the respondent fixed effects.
**$p < .01$ (two-tailed).

violent crimes an individual witnessed, whether the individual reported a gang affiliation, whether the individual had a pregnant significant other, and whether the individual reported the birth of a child during the time period. Finally, $\theta_i$ and $\rho_t$ represent individual and time period fixed effects, respectively, that account for time- and individual-invariant unobserved heterogeneity. In practice, given that individuals in the data set live in two U.S. cities—Philadelphia and Phoenix—we condition on individual and interacted city-by-time period fixed effects that allow global time trends in criminal activity to vary by site. The coefficients $\beta_1$, $\beta_2$, $\beta_3$, and $\beta_4$ provide a test of each element of rational choice theory with respect to the four primary behavioral variables suggested by Becker (1968). Accordingly, a joint test of the inclusion of these four variables provides an omnibus significance test of the contribution of rational choice theory in understanding offending behavior.

## EMPIRICAL STRATEGY

Although we have motivated the model by using least-squares regression, in practice, the distribution of the primary dependent variables in our data is most consistent with a count regression model. Our analysis, therefore, uses Poisson regression (Osgood, 2000). Although a review of table 1 indicates that the mean and variance are substantially different for each of our three crime types and that formal tests for overdispersion indicate

that it is present, we nevertheless elect to use Poisson regression over negative binomial regression for two reasons.

The first reason is practical—as our models contain between 500 and 1,000 individual fixed effects, we require an estimator that will return consistent estimates of the behavioral parameters of interest. Although fixed effects are estimated consistently in a linear panel data model, nonlinear models pose a substantial challenge to estimating fixed-effects parameters. To the extent that the fixed effects are related to the time-varying independent variables in the model, nonlinear models may yield incorrect estimates of the deterrence parameters of interest as a result of the problem of incidental parameters (Allison and Waterman, 2002; Kalbfleisch and Sprott, 1970). Although parameter estimates arising from a negative binomial regression with fixed effects will differ depending on whether an unconditional or a conditional maximum likelihood function is used, the likelihood function in Poisson regression is equivalent to that of the multinomial logit model, and accordingly, the unconditional and conditional likelihood functions yield identical parameter estimates (Allison and Waterman, 2002; Cameron and Trivedi, 1998). The second and more compelling reason is simplicity as robustness checks using a conditional fixed-effects negative binomial model (Hausman, Hall, and Griliches, 1984) return results that are qualitatively extremely similar to those obtained via Poisson regression, which suggests that overdispersion is not much of an issue. We include the main results of this sensitivity analysis for comparison.

Prior to presenting results, it is worth considering the limitations that are inherent in our modeling exercise and, given these limitations, how the parameters $\beta_1$, $\beta_2$, $\beta_3$, and $\beta_4$ are best interpreted. Our approach to testing an individual-level model of deterrence is not directly motivated by a natural experiment and, as such, is necessarily descriptive. Although we condition on a rich vector of covariates and include a powerful set of fixed effects to account for various types of fixed unobserved heterogeneity, the four behavioral parameters cannot be said to arise from any sort of experimental manipulation, natural or otherwise. Indeed, there are presumably many reasons why an individual might change his or her perceptions regarding the risk and rewards of criminal activity; for example, engaging in criminal activity provides information to respondents about the risk and rewards of crime (Anwar and Loughran, 2011; Lochner, 2007; Matsueda, Kreager, and Huizinga, 2006) at a level of temporal granularity that our data simply cannot capture (i.e., updating occurs at a frequency that is greater than every 6 months). Ultimately, we discuss the estimated parameters as associations rather than as causal effects, which we argue are still of fundamental interest. Conditional on the usual assumptions regarding omitted variables, the regression described in equation (2) provides insight into which behavioral parameters are more highly correlated with criminal activity, regardless of whether crime is sensitive to the variable or the variable is sensitive to criminal activity.

## RESULTS

### SAMPLE CHARACTERISTICS

Table 1 reports the selected descriptive statistics for each variable used in subsequent models. For each variable, we report the mean and the standard deviation, as well as the minimum and maximum values. We also report the within-respondent share of the variation to provide the reader with a sense for the degree to which each variable varies within,

se Case 1:20-cv-08035-LDD Document 64-22 Filed 01/24/24 Page 14 of 27

as opposed to between, individuals. As our subsequent models condition on respondent fixed effects, we ultimately retain only the within-individual share of the overall variation.

Panel A considers each dependent variable we examine. Overall, over a given reporting period, the average individual in our sample reports having committed 23.58 crimes, which is an average of 2.82 crimes per month. The data are highly skewed with 73.38 percent of respondent time periods yielding zero reported crimes. Likewise, 27 percent of the sample reports never having committed a crime, while just 2.5 percent of the sample reports having offended in all ten time periods in our data. With respect to the upper range of the data, we have elected to top code very high values of reported crime at 500. This translates to approximately 20 crimes per week, which we view as not implausible for drug crimes, as well as for petty acquisitive crimes such as shoplifting. On average, respondents report having committed 4.0 thefts, 20.0 drug crimes, and just .6 violent crimes per 6-month period. Intuitively, most variation in the criminal activity is between rather than within individuals, implying a prominent role for the fixed effects in purging the model of unobserved unit-specific heterogeneity.

With respect to the share of earnings obtained legally, the data show that, overall, 81 percent of reported earnings have a legal source. The prominence of legal earnings varies by age with respondents younger than 17 years of age reporting that 73 percent of earnings are legal, whereas adults report that 82 percent of earnings are legal. With respect to cross-sectional heterogeneity, 47 percent of the panel report legal earnings but never report any illicit earnings, whereas slightly less than 5 percent of the sample reports illicit earnings but no legal earnings. Overall, 42 percent of the sample reports both legal and illicit earnings at some point during the 4-year period, whereas 6 percent report no earnings data at all.

Panel B of table 1 reports descriptive statistics for the key model parameters prior to $z$ score standardization. Each of the following analyses employs standardized forms of these key model parameters to facilitate comparative tests and ease of interpretation. Overall, approximately half of the variation in the model parameters is within-individual variation and the remaining half is between-individual variation. The degree to which perceptions shift over time for a given individual is perhaps surprising and provides a rich degree of variation with which to identify the association between perceptual variables and crime.

Finally, Panel C reports descriptive statistics for each covariate we condition in our primary models. Overall, for the average time period in the sample, individuals are slightly older than 19 years of age. Respondents are as young as 14.5 and as old as 26.0. Given the high degree of criminal involvement in the sample, it is perhaps not surprising that individuals spend approximately one third of their time incarcerated in prison or jail. With respect to individual experiences, 12 percent of the sample has a relative who is arrested in a given time period and the typical individual reports being the victim of .2 different violent crimes per recall period (or 2.0 different violent crimes over the ten recall periods). These individuals also report having consistently witnessed violent crimes, on average, one type of violent crime witnessed per recall period. In a given time period, 9 percent of the sample reported being a member of a gang with most of the overall variation occurring between rather than within individuals. In a given time period, 6 percent of the respondents are males with a pregnant girlfriend or spouse and 7 percent of respondents report that either they or a significant other have given birth to a child.

Case 1:20-cr-00305-DDD    Document 645-2    filed 01/24/24    USDC Colorado
1094 of 1354

## Table 2. Model-Based Tests of Rational Choice Theory

| Variable | (1) All Crimes (Variety) | (2) Theft and Robbery | (3) Drug Crimes | (4) Violent Crimes | (5) Legal Share of Earnings |
|---|---|---|---|---|---|
| Certainty of Apprehension ($P$) | –.138** | –.238** | –.150** | –.165* | .018** |
| | (.025) | (.078) | (.044) | (.080) | (.006) |
| Severity of Sanction ($f$) | –.010 | .064 | –.073 | –.044 | .002 |
| | (.022) | (.072) | (.047) | (.131) | (.006) |
| Social Rewards ($Y1$) | .173** | .202* | .100$\dagger$ | .336** | –.021** |
| | (.026) | (.082) | (.051) | (.069) | (.006) |
| Personal Rewards ($Y2$) | .152** | .233** | .093$\dagger$ | .062 | –.025** |
| | (.022) | (.084) | (.049) | (.089) | (.007) |
| Joint Tests of Model Parameters | | | | | |
| Chi-squared statistic on model parameters | 142.5** | 37.0** | 22.6** | 45.8** | — |
| $F$ statistic on model parameters | — | — | — | — | 8.7** |
| Chi-Square Tests on Individual Restrictions | | | | | |
| $P = f$ | 14.6** | 6.5* | 1.3 | .8 | 3.3$\dagger$ |
| $P = -Y1$ | 1.0 | .1 | .6 | 5.8* | .1 |
| $P = -Y2$ | .2 | .0 | .8 | .6 | .4 |
| $f = -Y1$ | 22.0** | 5.0* | .2 | 5.9* | 5.2* |
| $f = -Y2$ | 18.8** | 6.2* | .1 | .0 | 5.8* |
| $Y1 = Y2$ | .4 | .1 | .0 | 3.9* | .2 |
| Cross-sectional $n$ | 965 | 752 | 675 | 551 | 1,252 |

*NOTES:* Estimates presented are regression coefficients, and cluster-robust standard errors that account for within-respondent dependence are reported in the parentheses below the coefficient estimates. In columns (1)–(4), we report the results of a Poisson regression of the variety or frequency of crimes a respondent reports having committed during the recall period on four behavioral parameters implicit in rational choice theory. The $z$ score of each behavioral parameter is used for ease of interpretation. Column (5) reports the results of a least-squares regression on the proportion of earnings that are earned in the legal sector during the recall period on the same four behavioral parameters. All models condition on the respondent's age, the percentage of a respondent's time spent in custody, as well as additional control variables and interacted site-by-period and respondent fixed effects.
$\dagger p < .10; *p < .05; **p < .01$ (two-tailed).

## MAIN ANALYSIS

The top panel of table 2 presents Poisson regression estimates for the model presented in equation (2) for each of several different crime types. Column (1) presents estimates for a variety of all crimes committed in the recall period. Columns (2), (3), and (4) present estimates for income-generating crimes (theft and robbery), drug crimes, and violent crimes, respectively. For these three outcomes, we report estimates by using frequency rather than variety given the limited amount of crimes in each category.[8] Finally, in column (5), we present least-squares estimates for the share of total earnings that derive from legal (as opposed to illicit) sources. Estimates and robust standard errors clustered on the respondent are reported for the four behavioral parameters implicit in rational choice theory. Beginning with column (1), we estimate that a 1 standard deviation increase in an individual's perceived certainty of apprehension is associated with a .14 decline in the natural logarithm of types of crime, which is a 13 percent reduction. Likewise, a 1 standard deviation increase in perceived severity is associated with a 1 percent reduction in offending,

---

8.  We also estimated results by using variety scoring for the crime-specific outcomes. These results are substantively similar and are available as part of the online supporting information in table S2.

although the parameter is not precisely estimated. With respect to the perceived benefits of crime, a 1 standard deviation increase in the social and personal rewards of crime is associated with a 19 percent and 16 percent increase in offending, respectively.

Given that the average individual reports committing .71 different infractions in a recall period, the models predict that a 1 standard deviation increase in certainty is associated with ~.09 fewer types of crimes, whereas a 1 standard deviation increase in social or personal rewards is associated with ~.13 and ~.11 additional types of crimes, respectively. Thus, although three of the four behavioral parameters are significantly associated with changes in offending, the magnitudes of these parameters are best characterized as important but not as large relative to baseline.

Column (2) presents results for instrumental crimes that we characterize as theft and robbery. Here we see that a 1 standard deviation increase in certainty reduces log crime by −.24 (21 percent), whereas a 1 standard deviation increase in social rewards and personal rewards increases log crime by .20 (22 percent) and .23 (26 percent), respectively. Interestingly, the coefficient on severity is close to zero and falls in the opposite direction, indicating that perceived changes in the severity of sanctions are not associated with changes in acquisitive crimes, a finding that may be rationalized by the fact that such crimes are rarely punished. Overall, given that the average individual in the sample reports committing four acquisitive crimes per 6-month period, a 1 standard deviation increase in certainty and a 1 standard deviation decrease in perceived personal rewards would reduce theft by .84 and 1.04 crimes per year, respectively. Again, assuming that 2 percent of a city's population is sensitive to such changes, these parameter estimates translate to annual decreases in theft of approximately 1,700–2,100 in a city of 100,000 residents.

Column (3) reports results for drug crimes. Here, a 1 standard deviation increase in certainty reduces the number of drug crimes by 14 percent. Likewise, both personal and social rewards are drivers of drug crime ($p < .10$), a finding that accords with ethnographic research on young drug offenders (Venkatesh, 2008; Wright and Decker, 1994). For drug crimes, some evidence exists that the severity of the sanction is more important, although the parameter estimate is not significant at conventional levels of significance. Column (4) reports the same results for violent crimes. Here the finding is that violent crimes are, to a large degree, driven by perceived social rewards. A 1 standard deviation increase in the perceived social rewards is associated with a 40 percent increase in criminal activity.

Finally, in column (5), we report results for a least-squares regression of the share of earnings obtained in the legal sector on the same regressors included in models (1)–(4). The evidence is consistent with a rational reallocation of time spent in legal versus illicit activities in response to changes in perceptions of the benefits of criminal activity. In particular, a 1 standard deviation increase in certainty is associated with a 1.8 percentage point increase in the legal share of earnings, whereas the perceived rewards of crime are associated with a 2.0 to 3.0 percentage decrease in this variable. Interestingly, the negative coefficient on social rewards implies that offenders are, other things equal, willing to trade off legal earnings for social status. As in models (1)–(4), little evidence exists of a relationship between criminal activity and perceived sanction severity.

Overall, the pattern of the results suggests that offenders behave in a rational way with respect to perceived changes in the costs and benefits of crime. In this population, which many assume to be motivated more by irrational, emotional factors, both the benefits and costs of behavior seem to matter, and the rational consideration of costs and benefits characterize both property and expressive crimes such as violence and drug offenses alike.

Case 1:20-cv-00835-DDD    Document 64-22    Filed 01/24/24    USDC Colorado

LOUGHRAN ET AL.

Below the coefficient estimates in table 2, we provide a formal omnibus test for the significance of rational choice theory, operationalized as a joint test of the model's four key parameters. For the Poisson regression models in columns (1)–(4), this was done by using a likelihood ratio test with a critical value of $\chi^2$ with four degrees of freedom of 9.49. In column (5), we use an $F$ test that, in a large sample, and given four parameters has a critical value of 2.37. For all five dependent variables, we can reject the null hypothesis that rational choice has no predictive power at $\alpha = .01$, indicating that offenders are at least somewhat responsive to risks, costs, and rewards.

The final rows of table 2 present the results of tests of the set of pairwise linear restrictions on the equality of individual model parameters for the rational choice measures. These tests allow us to draw inferences regarding whether offenders are, in fact, more responsive to certainty than to severity or whether they are more responsive to the perceived rewards of crime than to its costs. Because the theoretically expected signs on the estimates vary with certainty and severity expected to generate negative coefficients and the social and personal rewards measures expected to generate positive coefficients, for four of the six pairs of tests, we test whether one parameter estimate is equal to –1 times the other parameter estimate. We first consider the equality of certainty ($p$) and severity ($f$) as this comparison has generated considerable discussion in the extant literature (Nagin, 2013; Paternoster, 2010). Although both parameter estimates are negative, for all crimes, we can reject ($p < .01$) that the two estimates are equal, providing direct evidence that offenders are, in fact, *more responsive to certainty than they are to severity*. This is also true for acquisitive crimes ($p < .05$). However, given the precision of our estimates, we cannot make this claim for drug crimes where severity seems to feature more prominently in offender decision making. Likewise, for violent crimes that are more uncommon in the data, a considerable degree of uncertainty remains regarding the relative magnitudes of these parameters.

Several other results are worth noting. First, for four of the five dependent variables, we cannot distinguish the relative importance of social versus personal rewards of crime. The exception is for violent crimes where we conclude individuals seem to be more responsive to social rather than to personal rewards. Second, for acquisitive and violent crimes, we can conclude that the social rewards of crime are more strongly associated with offending than with sanction severity. For acquisitive crimes, we also can conclude that personal rewards are more strongly associated with offending than with severity.

## HETEROGENEITY

For the full sample of individuals, table 2 provides strong descriptive evidence in favor of offender rationality in this sample. A natural extension is to consider whether these findings differ for theoretically important subgroups. Table 3 reports results by using a variety of all crimes as the dependent variable for seven subgroups within our sample: high-risk individuals, low-risk offenders, males, females, and White, Black, and Hispanic offenders. We highlight three primary conclusions. First, in each case, we can reject the null hypothesis that rational choice has no predictive power at $\alpha = .01$, which suggests that the model yields some predictive validity across each subpopulation.[9] Second, although

---

9. We also conducted similar analyses for each subgroup by using the other dependent variables (i.e., theft/robbery, drug crimes, violent crimes, and share of legal earnings). In the interest of brevity, we omit these results but note they are available as part of the online supporting information in

Case 1:20-cv-03590-DDD   Document 452   Filed 01/24/25   USDC Colorado
1097 of 1354

## Table 3. Model-Based Tests of Rational Choice Theory: Subgroup Analyses for All Crimes Variety Score

| Variable | (1) High Risk | (2) Low Risk | (3) Males | (4) Females | (5) Whites | (6) Blacks | (7) Hispanics |
|---|---|---|---|---|---|---|---|
| Certainty of Apprehension ($P$) | –.101* | –.153** | –.124** | –.302** | –.226** | –.081* | –.136** |
| | (.047) | (.028) | (.026) | (.077) | (.053) | (.038) | (.046) |
| Severity of Sanction ($f$) | .005 | –.016 | –.012 | .074 | .020 | –.016 | –.009 |
| | (.037) | (.028) | (.023) | (.091) | (.050) | (.033) | (.042) |
| Social Rewards ($Y1$) | .120** | .197** | .169** | .225* | .156** | .135** | .218** |
| | (.037) | (.034) | (.026) | (.100) | (.049) | (.040) | (.049) |
| Personal Rewards ($Y2$) | .144** | .160** | .146** | .115 | .158** | .147** | .159** |
| | (.034) | (.027) | (.022) | (.092) | (.045) | (.038) | (.038) |
| Joint Tests of Model Parameters | | | | | | | |
| $\chi^2$ statistic on model parameters | 41.7** | 107.2** | 120.1** | 26.5** | 63.2** | 31.7** | 47.5** |
| $\chi^2$ Tests on Individual Restrictions | | | | | | | |
| $P = f$ | 3.2† | 11.4** | 10.8** | 9.4** | 12.8** | 1.7 | 4.0* |
| $P = -Y1$ | .1 | .9 | 1.4 | .3 | .8 | .9 | 1.7 |
| $P = -Y2$ | .6 | .0 | .4 | 2.5 | .9 | 1.6 | .1 |
| $f = -Y1$ | 6.4* | 14.8** | 19.0** | 4.6* | 5.4* | 4.9* | 10.2** |
| $f = -Y2$ | 8.1** | 12.1** | 16.0** | 2.0 | 6.6* | 6.9** | 5.8* |
| $Y1 = Y2$ | .2 | .7 | .4 | .5 | .0 | .1 | .9 |
| Cross-sectional $n$ | 318 | 647 | 870 | 95 | 208 | 391 | 325 |

*NOTES:* Estimates presented are regression coefficients, and cluster-robust standard errors that account for within-respondent dependence are reported in parentheses below the coefficient estimates. In columns (1)–(7), we report the results of a Poisson regression on the variety of all crimes a respondent reports having committed during a recall period on four behavioral parameters implicit in rational choice theory. Each column presents a separate subgroup analysis according to risk, gender, or race. The $z$ score of each behavioral parameter is used for ease of interpretation. All models condition on the respondent's age, the percentage of a respondent's time spent in custody, as well as additional control variables and interacted site-by-period and respondent fixed effects.
†$p < .10$; *$p < .05$; **$p < .01$ (two-tailed).

our sample of females is small (95 cross-sectional), women seem to be highly sensitive to changes in the certainty of apprehension. A 1 standard deviation increase in certainty is expected to reduce offending by ~26 percent. At the same time, women seem to be less sensitive to the personal rewards of crime. Instead, they are highly responsive to perceived changes in the social rewards, providing some evidence that women's participation in criminal activity is more tied to the perceptions of their peers. Third, and perhaps most importantly, we observe the relative homogeneity of the results by race. Although several individual parameter estimates seem to differ by subgroup, overall, the model seems to be equally predictive for White, Black, and Hispanic respondents.[10]

Tables 4 and 5 provide tests of differential deterrence across both crime types and subgroups. Table 4 presents $p$ values from tests of cross-equation restrictions for each of

tables S3–S6. To summarize, including all crimes outcome, five dependent variables and seven subgroups generated 35 unique tests of offender rationality. In 28 out of 35 tests, we rejected the null hypothesis that rational choice has no predictive power at the $\alpha = .05$ level. Only 3 of the 35 tests yield an insignificant test statistic at $\alpha = .10$.

10. An exception is acquisitive crimes for Black respondents (not shown in the current output although available as part of the online supporting information). For these respondents, the model does not have predictive power. In particular, certainty of capture seems not to matter with crime largely driven by perceived personal rewards.

se Case 1:20-cr-00305-DDD Document 645-22 Filed 01/24/24 USDC Colorado
1098 of 1354

## Table 4. Tests of Cross-Equation Restrictions

| Variable | (2) Theft and Robbery | (3) Drug Crimes | (4) Violent Crimes |
|---|---|---|---|
| A. Certainty of Apprehension ($P$) | | | |
| Theft and Robbery | — | .33 | .87 |
| Drug Crimes | .33 | — | .51 |
| Violent Crimes | .87 | .51 | — |
| B. Severity of Sanction ($f$) | | | |
| Theft and Robbery | — | .11 | .83 |
| Drug Crimes | .11 | — | .47 |
| Violent Crimes | .83 | .47 | — |
| C. Social Rewards ($Y1$) | | | |
| Theft and Robbery | — | .29 | .01** |
| Drug Crimes | .29 | — | .21 |
| Violent Crimes | .01** | .21 | — |
| D. Personal Rewards ($Y2$) | | | |
| Theft and Robbery | — | .15 | .76 |
| Drug Crimes | .15 | — | .16 |
| Violent Crimes | .76 | .16 | — |
| Cross-sectional $n$ | 752 | 675 | 551 |

NOTES: Table tests cross-equation restrictions for the four key parameters in our model of rational choice. Each entry refers to the $p$ value arising from a $\chi^2$ test of the null hypothesis that a given parameter is equal across Poisson regression models for different crime types. These are tests of the equality of the parameters in different columns of table 2. For example, Panel C reports that we can reject ($p < .01$) that the social rewards parameter is equal in the theft and violent models.
**$p < .01$ (two-tailed).

## Table 5. Tests of Cross-Group Differences—All Crimes (Variety)

| Variable | (1) Certainty of Apprehension ($P$) | (2) Severity of Sanction ($f$) | (3) Social Rewards ($Y1$) | (4) Personal Rewards ($Y2$) | Cross-sectional $n$ |
|---|---|---|---|---|---|
| High risk / Low risk | .34 | .65 | .13 | .71 | 965 |
| Male / Female | .03* | .36 | .59 | .74 | 965 |
| White / Black | .03* | .55 | .74 | .85 | 591 |
| White / Hispanic | .20 | .66 | .37 | .99 | 533 |
| Black / Hispanic | .36 | .90 | .19 | .82 | 716 |

NOTES: Table tests whether each of the four key parameters of our models of rational choice in table 3 differs by subgroup. For each pair of subgroups (e.g., male and female respondents), each entry refers to the $p$ value arising from a $\chi^2$ test of the null hypothesis that the two subgroups have equal parameter values for the all crimes variety outcome.
*$p < .05$ (two-tailed).

the four model parameters and each of the three crime types we consider. For any two crime types, the null hypothesis is that the parameter is equal for each crime type. For example, we might wish to know whether the certainty parameter is larger for acquisitive crimes than it is for drug crimes. Panels A, B, and D present evidence that, with respect to certainty, sanction severity, and personal rewards, we cannot reject the equality of any of the cross-equation parameter estimates. Thus, evidence that sanction severity is more strongly associated with some crimes than with other crime types is best regarded as speculative. The only evidence of differences we observe across crime types is that social rewards seem to be more important for violent crimes as compared with theft/robbery crimes. In sum, the rational choice model of offending that we have specified seems to be equally similar for different kinds of offenses.

Case 1:20-cv-03590-DDD   Document 645-2   Filed 01/24/24   USDC Colorado   Page 1099 of 1354

**Table 6. Model-Based Tests of Rational Choice Theory: Robustness Checks**

| Variable | (1) Poisson without Interaction ($P \times f$) | (2) Poisson with Interaction ($P \times f$) | (3) Negative Binomial Specification | (4) Ordinary Least Squares Specification |
|---|---|---|---|---|
| Certainty of Apprehension ($P$) | –.138** | –.141** | –.139** | –.103** |
| | (.025) | (.025) | (.022) | (.020) |
| Severity of Sanction ($f$) | –.010 | –.019 | –.009 | –.012 |
| | (.022) | (.023) | (.017) | (.015) |
| Interaction ($P \times f$) | — | –.026 | — | — |
| | — | (.020) | — | — |
| Social Rewards ($Y1$) | .173** | .171** | .195** | .079** |
| | (.026) | (.026) | (.025) | (.019) |
| Personal Rewards ($Y2$) | .152** | .153** | .153** | .170** |
| | (.022) | (.022) | (.021) | (.027) |
| Cross-sectional $n$ | 965 | 965 | 965 | 965 |

NOTES: In columns (1) and (2), we report the results of a Poisson regression of the variety of all crimes a respondent reports having committed during a recall period on four behavioral parameters implicit in rational choice theory. The $z$ score of each behavioral parameter is used for ease of interpretation. Column (1) presents estimates from the baseline model reported in column (1) of table 2. In column (2), we add an interaction term between $P$ and $f$ to the baseline model. Columns (3) and (4) test the robustness of our choice of Poisson regression. In column (3), we report estimates for a negative binomial regression estimated via conditional maximum likelihood. Column (4) reports estimates using ordinary least squares. In all cases, standard errors are clustered at the level of the respondent with the exception of the negative binomial model where the standard errors are bootstrapped.
**$p < .01$ (two-tailed).

Table 5 reports $p$ values arising from formal tests of the equality of the model parameters across subgroups for all crime varieties. Column (1) reports results for certainty, whereas columns (2), (3), and (4) report results for severity and the social and personal rewards of crime, respectively. Overall, we again see little difference across subgroups, indicating the relative ubiquity of the model across these different groups. With the notable exception that Whites seem to be more responsive to certainty than Blacks, we observe no difference in the remaining parameters across race. Moreover, little evidence exists that offenders who were identified at baseline as posing an especially high risk of delinquency operate differently than low-risk offenders. The other exception is we find evidence that men and women differ in their responsiveness to certainty.[11]

SENSITIVITY ANALYSIS

Finally, we consider whether the main results reported in table 2 are robust to certain specification choices. This set of results is reported in table 6 with the results of column

11. Although we are careful to avoid making causal claims in this analysis, we do wish to acknowledge the issue of temporal ordering of our measures, whereby the offending outcomes and rational choice measures were observed contemporaneously. As a robustness check, we estimated an additional set of the model specifications by using the variety score outcome in which we used lagged versions of the key rational choice measures (i.e., measured at time $t-1$) for the full sample and each subsample. In 6 of the 8 models, we could reject a null hypothesis that rational choice has no predictive power at the $\alpha = .05$ level. Only 1 of the 8 tests yielded an insignificant test statistic at $\alpha = .10$.

Case 1:20-cv-03590-DDD    Document 645-2    Filed 10/24/24    USDC Colorado
1100 of 1354

1 in table 2 reproduced in column 1 of table 6 to ease comparisons. First, we consider a specification by using a variety of all crime for the full sample where we include the interaction between certainty and severity, to test whether the effect of severity is greater when certainty is greatest. This interaction directly falls out of Becker's (1968) model and has been suggested by extant literature. Results from the specification are reported in column (2). Although the sign of the coefficient on the interaction term (−.026) is in the theoretically expected direction, it fails to reach statistical significance. As such, evidence of a multiplicative relationship between certainty and severity is merely suggestive.

Second, we considered the robustness of our estimates to our choice of a Poisson estimator. Column (3) reports results for the full sample by using conditional negative binomial regression. With the exception of the larger difference in magnitude of the coefficient on the social rewards, the results are similar with differences between coefficients across specification of .001. Column (4) reports estimates of ordinary least squares. Although the coefficients have a different interpretation and, as such, are not directly comparable, they yield a qualitatively similar story, again suggesting our choice of Poisson estimation is justifiable.[12]

## CONCLUSION

Although scholars promoting rational choice theory have made important contributions to work in other social sciences, there has been some reluctance to accept it warmly within criminology. We think that the reluctance of many criminologists to embrace a rational choice model is that it has been misunderstood by critics who frequently claim that the rationalist assumptions of the theory are unreasonable for criminal behavior and that its conceptual net is cast too narrow, including only the formal costs and benefits of offending. Part of this mythos about rational choice theory must also, however, be understood to have been reinforced by the way the theory has been empirically specified even by its proponents. Empirical models of so-called rational choice theory have only rarely moved beyond the consideration of what are really deterrence variables, and although some have tested more expansive versions of the theory (Matsueda, Kreager, and Huizinga, 2006; Piliavin et al., 1986), even these versions have omitted some important factors that are integral to rational choice theory. Our intent in this article is to pick up on a strain of thought first articulated by Piliavin et al. in 1986: "Unfortunately, despite numerous calls for a general theory of deterrence, nearly all of the empirical research on the issue takes as its framework 'a vague congery of ideas with no unifying factor other than their being legacies of two major figures in moral philosophy, Cesare Beccaria and Jeremy Bentham' (Gibbs, 1975: 5) … [a] more fruitful approach to the issue of deterrence would be to examine the relationship between formal sanctions and crime from within an explicit theoretical framework" (p. 101). Our ambition was to specify and test empirically a comprehensive rational choice model of crime and, in so doing, illustrate that the explanatory parts of the model are consistent with more sociological theories of

---

12. We performed several additional robustness checks that included removing time-varying control variables. Without the full set of controls, the certainty and social and personal rewards parameters are larger in magnitude, stressing the importance of the control variables we have chosen. Nevertheless, although the magnitudes vary, the results are again qualitatively similar.

crime and that it does not require that human beings act as *homo economicus*—strictly financial agents solely interested in the best price of things.

With this motivation, several key findings emerged from our analysis. First, we found general support that individuals seem to be responsive to rational choice perceptions and that this held across different types of crimes, including aggressive crimes. Moreover, these perceptions still held explanatory power even after taking account of time-stable unobserved heterogeneity between individuals, as well as multiple time-varying confounders. Second, we found that even when conditioning on observable heterogeneity in terms of gender, race, and high- and low-offending risk, each of these subgroups was still responsive to these perceived risks, costs, and rewards. Third, we observed a large degree of homogeneity in terms of the magnitudes of the parameters across these subgroups, which suggests that there was little difference in how factors operate across different subgroups.

We find that these adolescents with a history of serious criminal offending act in accordance with the anticipated rewards and costs of offending and that this is true for drug and violent offenses as it is for property crimes. We also found that these adolescents rationally reallocate their time in response to the expected changes in the benefits of legal and illegal activity. Although consistent with much previous research, the rewards of behavior generally carry somewhat greater weight than the costs, both are important influences on the youths' conduct. Finally, we find evidence of rational response to the contingencies of behavior across youths with different risk levels of criminal propensity, for both genders, and for Black, White, and Hispanic youth.

In sum, we think we have posed a difficult test for the generality of rational choice theory, but a test it has passed. Our results would seem to confirm unambiguously our assertion that rational choice theory is as general a theory of crime as are social learning, social control, and strain theories. Moreover, our results, taken together with the prior work of Anwar and Loughran (2011); Matsueda, Kreager, and Huizinga (2006); and Piliavin et al. (1986), provide a substantial counterweight to the blunt conclusion reached by Pratt et al. (2006: 5) that "the effects of the variables specified by deterrence theory on crime/deviance are, at best, weak—especially in studies that employ more rigorous research designs." Moreover, our results also would seem to provide strong support for the core tenets of both situational crime prevention (Clarke, 1983) and a more recent theoretical model put forth by Nagin, Solow, and Lum (2015). We, however, caution RC scholars to be careful in making sure that their empirical models are faithful to the complexity of rational choice theory and that they include the full set of incentives and disincentives for legal and illegal conduct. Finally, we emphasize that often the failure of individuals to act in a fully rational manner is not necessarily an indictment of the entire theoretical paradigm of rational choice, but instead, it can provide important insight into heuristic devices and predictable deviations from rational behavior that may be useful in tweaking the theory.

Our results also reveal an important consideration for future studies of criminal deterrence, the bulk of which often have tended to offer hypotheses that typically are laid out in terms of a null hypothesis of no association between sanction cost/risk and offending. Any evidence in which this type of null hypothesis can be rejected tends to be taken as support for deterrence. Although such tests are perhaps weakly formed as is, our findings would suggest that the strong sensitivity of potential offenders to rewards to offending, both monetary and intrinsic, can easily offset any such weak deterrent effects of sanctions

and must be contemporaneously considered. As such, we advocate that future studies of offender decision making evolve beyond the somewhat narrow, current focus on costs and risk and bridge into deeper study of offending rewards and motivation, including studies of time preference, as it is clear that rewards and costs to crime are temporally distinct outcomes.

# REFERENCES

Allison, Paul D., and Richard P. Waterman. 2002. Fixed-effects negative binomial regression models. *Sociological Methodology* 32:247–65.

Anwar, Shamena, and Thomas Loughran. 2011. Testing a Bayesian learning theory of deterrence among serious juvenile offenders. *Criminology* 49:667–98.

Apel, Robert. 2013. Sanctions, perceptions, and crime: Implications for criminal deterrence. *Journal of Quantitative Criminology* 29:67–101.

Becker, Gary. 1968. Crime and punishment: An economic analysis. *Journal of Political Economy* 78:169–217.

Bentham, Jeremy. 1789. *An Introduction to the Principles of Morals and Legislation*. Oxford, U.K.: Clarendon Press.

Braga, Anthony A. 2001. The effects of hot spots policing on crime. *The ANNALS of the American Academy of Political and Social Science* 578:104–25.

Braga, Anthony A., David L. Weisburd, Elin J. Waring, Lorraine G. Mazerolle, William Spellman, and Francis Gajewski. 1999. Problem-oriented policing in violent crime places: A randomized controlled experiment. *Criminology* 37:541–80.

Braga, Anthony A., David M. Kennedy, Elin J. Waring, and Anne Morrison Piehl. 2001. Problem-oriented policing, deterrence, and youth violence: An evaluation of Boston's Operation Ceasefire. *Journal of Research in Crime and Delinquency* 38:195–225.

Cameron, A. Colin, and Pravin K. Trivedi. 1998. *Regression Analysis of Count Data*. Cambridge, U.K.: Cambridge University Press.

Chalfin, Aaron, Amelia M. Haviland, and Steven Raphael. 2013. What do panel studies tell us about a deterrent effect of capital punishment? A critique of the literature. *Journal of Quantitative Criminology* 29:5–43.

Chalfin, Aaron, and Justin McCrary. 2014. Criminal deterrence: A review of the literature. University of California. Working Paper.

Cherry, Todd L., and John A. List. 2002. Aggregation bias in the economic model of crime. *Economics Letters* 75:81–6.

Chiricos, Theodore G., and Gordon P. Waldo. 1970. Punishment and crime: An examination of some empirical evidence. *Social Problems* 18:200–17.

Clarke, Ronald V. 1983. Situational crime prevention: Its theoretical basis and practical scope. *Crime and Justice: An Annual Review of Research* 4:225–56.

Cornish, Derek, and Ronald Clarke. 1986. Introduction. In *The Reasoning Criminal*. eds. Derek B. Cornish and Ronald V. Clarke. New York: Springer-Verlag.

Cornwell, Christopher, and William N Trumbull. 1994. Estimating the economic model of crime with panel data. *The Review of Economics and Statistics* 76:360–6.

DeHaan, Wilem, and Jaco Vos. 2003. A crying shame: The over-rationalized conception of man in the rational choice perspective. *Theoretical Criminology* 7:29–54.

DiTella, Rafael, and Ernesto Schargrodsky. 2004. Do police reduce crime? Estimates using the allocation of police forces after a terrorist attack. *American Economic Review* 94:115–33.

Donohue, John J., and Justin Wolfers. 2005. Uses and abuses of empirical evidence in the death penalty debate. *Stanford Law Review* 58:791–846.

Draca, Mirko, Stephen Machin, and Robert Witt. 2011. Panic on the streets of London: Police, crime and the July 2005 terror attacks. *The American Economic Review* 101:2157–81.

Durlauf, Steven N., and Daniel S. Nagin. 2011. Imprisonment and crime. *Criminology and Public Policy* 10:13–54.

Ehrlich, Isaac. 1973. Participation in illegitimate activities: A theoretical and empirical investigation. *Journal of Political Economy* 81:521–65.

Evans, William, and Emily Owens. 2007. COPS and crime. *Journal of Public Economics* 91:181–201.

Freeman, Richard B. 1996. Why do so many young American men commit crimes and what might we do about it? *Journal of Economic Perspectives* 10:25–42.

Gibbs, Jack P. 1975. *Crime, Punishment, and Deterrence*. New York: Elsevier.

Gottfredson, Michael, and Travis Hirschi. 1990. *A General Theory of Crime*. Stanford, CA: Stanford University Press.

Grasmick, Harold G., and Robert J. Bursik. 1990. Conscience, significant others, and rational choice: Extending the deterrence model. *Law and Society Review* 24:837–61.

Grogger, Jeffrey. 1998. Market wages and youth crime. *Journal of Labor Economics* 16:756–91.

Hausman, Jerry A., Bronwyn H. Hall, and Zvi Griliches. 1984. Econometric models for count data with an application to the patents-R&D relationship. *Econometrica* 52:909–38.

Huizinga, David, Finn-Aaage Esbensen, and Anne Wylie Weiher. 1991. Are there multiple paths to delinquency? *The Journal of Criminal Law and Criminology* 82:83–118.

Kalbfleisch, John D., and David A. Sprott. 1970. Application of likelihood methods to models involving large numbers of parameters. *Journal of the Royal Statistical Society. Series B (Methodological)* 32:175–208.

Katz, Jack. 1990. *Seductions of Crime: Moral and Sensual Attractions of Doing Evil*. New York: Basic Books.

Klick, Jonathan, and Alexander Tabarrok. 2005. Using terror alert levels to estimate the effect of police on crime. *Journal of Law and Economics* 48:267–79.

Lee, David, and Justin McCrary. 2009. The deterrent effect of prison: Dynamic theory and evidence. University of California. Working Paper.

Lin, Ming-Jen. 2008. Does unemployment increase crime? Evidence from the U.S. data 1974-2000. *Journal of Human Resources* 43:413–36.

Lin, Ming-Jen. 2009. More police, less crime: Evidence from U.S. state data. *International Review of Law and Economics* 29:73–80.

Lochner, Lance. 2007. Individual perceptions of the criminal justice system. *American Economic Review* 97:444–60.

Loughran, Thomas A., Holly Nguyen, Alex R. Piquero, and Jeffrey Fagan. 2013. The returns to criminal capital. *American Sociological Review* 78:925–48.

Loughran, Thomas A., Raymond Paternoster, Alex R. Piquero, and Greg Pogarsky. 2011. On ambiguity in perceptions of risk: Implications for criminal decision-making and deterrence. *Criminology* 49:1029–61.

Loughran, Thomas A., Raymond Paternoster, and Douglas Weiss. 2012. Hyperbolic time discounting, offender time preferences and deterrence. *Journal of Quantitative Criminology* 28:607–28.

Machin, Stephen, and Costas Meghir. 2004. Crime and economic incentives. *Journal of Human Resources* 39:958–79.

Marvell, Thomas B., and Carlisle E. Moody. 1996. Specification problems, police levels, and crime rates. *Criminology* 34:609–46.

Matsueda, Ross L. 2013. Rational choice research in criminology: A multi-level framework. In *Handbook of Rational Choice Social Research*, eds. Rafael Wittek, Tom Snijders, and Victor Nee. Palo Alto, CA: Stanford University Press.

Matsueda, Ross L., Derek A. Kreager, and David Huizinga. 2006. Deterring delinquents: A rational choice model of theft and violence. *American Sociological Review* 71:95–122.

McCarthy, Bill. 2002. New economics of sociological criminology. *Annual Review of Sociology* 28:417–42.

McCarthy, Bill, and John Hagan. 2001. When crime pays: Capital, competence, and criminal success. *Social Forces* 79:1035–60.

Mulvey, Edward P. 2012. *Research on Pathways to Desistance [Maricopa County, AZ and Philadelphia County, PA]: Subject measures, 2000–2010. ICPSR29961-v1.* Ann Arbor, MI: Inter-university Consortium for Political and Social Research [distributor].

Myers, Samuel L. 1983. Estimating the economic model of crime: Employment versus punishment effects. *The Quarterly Journal of Economics* 98:157–66.

Nagin, Daniel S. 1998. Criminal deterrence research at the outset of the twenty-first century. In *Crime and Justice: A Review of Research*, vol. 23, ed. M. Tonry. Chicago, IL: University of Chicago Press.

Nagin, Daniel S. 2013. Deterrence: A review of the evidence by a criminologist for economists. *Annual Review of Economics* 5:83–105.

Nagin, Daniel S., Francis Cullen, and Cheryl Lero Jonson. 2009. Imprisonment and reoffending. In *Crime and Justice: A Review of Research*, vol. 38, ed. Michael Tonry. Chicago, IL: University of Chicago Press.

Nagin, Daniel S., and Kenneth C. Land. 1993. Age, criminal careers, and population heterogeneity: Specification and estimation of a nonparametric, mixed Poisson model. *Criminology* 31:327–62.

Nagin, Daniel S., and Raymond Paternoster. 1993. Enduring individual differences and rational choice theories of crime. *Law & Society Review* 27:467–96.

Nagin, Daniel S., and Raymond Paternoster. 1994. Personal capital and social control: The deterrence implications of a theory of individual differences in criminal offending. *Criminology* 32:581–606.

Nagin, Daniel S., and Greg Pogarsky. 2004. Time and punishment: Delayed consequences and criminal behavior. *Journal of Quantitative Criminology* 20:295–317.

Nagin, Daniel S., Robert M. Solow, and Cynthia Lum. 2015. Deterrence, criminal opportunities, and police. *Criminology* 53:74–100.

Nguyen, Holly, Thomas A. Loughran, Ray Paternoster, Jeffrey Fagan, and Alex R. Piquero. 2015. Institutional placement and illegal earnings: Examining the crime school hypothesis. University of Maryland. Working Paper.

O'Grady, William. 2014. *Crime in a Canadian Context: Debates and Controversies*, 3rd ed. Oxford, U.K.: Oxford University Press.

Osgood, D. Wayne. 2000. Poisson-based regression analysis of aggregate crime rates. *Journal of Quantitative Criminology* 16:21–43.

Paternoster, Raymond. 2010. How much do we really know about criminal deterrence? *Journal of Criminal Law and Criminology* 100:765–824.

Paternoster, Raymond, Linda E. Saltzman, Gordon P. Waldo, and Theodore G. Chiricos. 1983. Perceived risk and social control: Do sanctions really deter? *Law & Society Review* 17:457–79.

Pezzin, Liliana E. 1995. Earnings prospects, matching effects, and the decision to terminate a criminal career. *Journal of Quantitative Criminology* 11:29–50.

Piliavin, Irving, Craig Thornton, Rosemary Gartner, and Ross L. Matsueda. 1986. Crime, deterrence, and rational choice. *American Sociological Review* 51:101–19.

Pogarsky, Greg. 2002. Identifying "deterrable" offenders: Implications for research on deterrence. *Justice Quarterly* 19:431–52.

Pratt, Travis C., Francis T. Cullen, Kristie R. Blevins, Leah E. Daigle, and Tamara D. Madensen. 2006. Taking stock: The status of criminological theory. In *Advances in Criminological Theory*, vol. 15, eds. Francis T. Cullen, John Paul Wright, and Kristie R. Blevins. New Brunswick, NJ: Transaction.

Raphael, Steven, and Rudolf Winter-Ebmer. 2001. Identifying the effect of unemployment on crime. *Journal of Law and Economics* 44:259–84.

Sherman, Lawrence W., and David Weisburd. 1995. General deterrent effects of police patrol in crime "hot spots": A randomized controlled trial. *Justice Quarterly* 12:625–47.

Sweeten, Gary. 2012. Scaling criminal offending. *Journal of Quantitative Criminology* 28:533–57.

Thomas, Kyle J., Thomas A. Loughran, and Alex R. Piquero. 2013. Do individual characteristics explain variation in sanction risk updating among serious juvenile offenders? Advancing the logic of differential deterrence. *Law and Human Behavior* 37:10–21.

Uggen, Christopher, and Melissa Thompson. 2003. The socioeconomic determinants of ill-gotten gains: Within-person changes in drug use and illegal earnings. *American Journal of Sociology* 109:146–85.

Venkatesh, Sudhir. 2008. *Gang Leader for a Day: A Rogue Sociologist Takes to the Streets.* New York: Penguin Press.

Waldo, Gordon P., and Theodore G. Chiricos. 1972. Perceived penal sanction and self-reported criminality: A neglected approach to deterrence research. *Social Problems* 19:522–40.

Weisburd, David. 2005. Hot spots policing experiments and criminal justice research: Lessons from the field. *The ANNALS of the American Academy of Political and Social Science* 599:220–45.

Weisburd, David, Cody Telep, Joshua Hinkle, and John Eck. 2010. Is problem oriented policing effective in reducing crime and disorder? *Criminology & Public Policy* 9:139–72.

Williams, Kirk R., and Richard Hawkins. 1986. Perceptual research on general deterrence: A critical review. *Law & Society Review* 20:545–72.

Wilson, James Q., and Richard J. Herrnstein. 1985. *Crime and Human Nature.* New York: Simon & Schuster.

Case 1:20-cr-00305-DDD   Document 645-2   filed 01/24/24   USDC Colorado
1106 of 1354

Witte, Ann Dryden. 1980. Estimating the economic model of crime with individual data. *Quarterly Journal of Economics* 94:57–84.

Wright, Bradley R. E., Avshalom Caspi, Terrie E. Moffitt, and Ray Paternoster. 2004. Does the perceived risk of punishment deter criminally prone individuals? Rational choice and crime. *Journal of Research in Crime and Delinquency* 41:180–213.

Wright, Richard, and Scott H. Decker. 1994. *Burglars on the Job: Streetlife Culture and Residential Break-ins*. Boston, MA: Northeastern University Press.

Zimring, Franklin E., and Gordon J. Hawkins. 1973. *Deterrence: The Legal Threat in Crime Control*. Chicago, IL: University of Chicago Press.

Thomas A. Loughran is an associate professor in the Department of Criminology and Criminal Justice at the University of Maryland, College Park. His research interests include offender decision making and deterrence, illegal market participation, and public policy.

Ray Paternoster is a professor in the Department of Criminology and Criminal Justice at the University of Maryland, College Park. His research interests include rational choice theory, offender decision making, and issues related to capital punishment.

Aaron Chalfin is a researcher at the University of Chicago Crime Lab, with Crime Lab New York, a new venture that partners with the city to develop cutting edge predictive models and to carry out randomized evaluations of innovative crime control strategies.

Theodore Wilson is a PhD student in the Department of Criminology and Criminal Justice at the University of Maryland, College Park.

## SUPPORTING INFORMATION

Additional Supporting Information may be found in the online version of this article at the publisher's web site:

**Table S1.** Model-Based Tests of Rational Choice Theory: Variety Score Nonzero Exposure Time
**Table S2.** Model-Based Tests of Rational Choice Theory: Variety Score Sensitivity Check
**Table S3.** Model-Based Tests of Rational Choice Theory: Subgroup Analyses for Theft And Robbery (Frequency)
**Table S4.** Model-Based Tests of Rational Choice Theory: Subgroup Analyses for Drug Crimes (Frequency)
**Table S5.** Model-Based Tests of Rational Choice Theory: Subgroup Analyses for Violent Crimes (Frequency)
**Table S6.** Model-Based Tests of Rational Choice Theory: Subgroup Analyses for Legal Share of Earnings
**STATA SYNTAX RECORDS FOR TABLES IN TEXT**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, spoole@wpparalegal.net), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale Schall
(jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Jamie Hughes
Hubbard (hickam@slhlegal.com, hubbard@slhlegal.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: clinde (colin_linde@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), Linda A. McMahan (maureen.carle@usdoj.gov), jroth
(josh_roth@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), USM-Criminal Division
(gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov, scott.scherfling@usdoj.gov,
sike.bennett@usdoj.gov, triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9607041@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Status Conference
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 3/22/2024 at 4:37 PM MDT and filed on 3/21/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 462(No document attached) |

**Docket Text:**
**MINUTE ENTRY for Status Conference as to Michael Aaron Tew and Kimberley Ann Tew held before Magistrate Judge Susan Prose on 3/21/2024. Discussion regarding issue referred to this court (*see* ECF No. 455). An ex parte hearing to determine Michael Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for March 28, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 10:00 a.m. March 27, 2024. An ex parte hearing to determine Kimberley Ann Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for April 15, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 12:00 p.m. April 10, 2024. Hearing concluded. FTR: C205. (Total time: 1 hour and 8 minutes, Hearing time: 3:57 p.m. –**

**5:05 p.m.) Text Only Entry.**

**APPEARANCES: Bryan David Fields and Sarah Hunter Weiss on behalf of the Government, Jason Dale Schall and Kristen M. Frost on behalf of Defendant Michael Aaron Tew and David Scott Kaplan for on behalf of Defendant Kimberly Ann Tew. (trvo, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,

danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-SBP

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW,** and
2. KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

Defendants.

---

### GOVERNMENT'S BRIEF REGARDING DEFENDANTS' ONGOING ELIGIBILITY FOR CJA COUNSEL

---

Since December of 2022, Michael and Kimberley Tew have been the beneficiaries of a free criminal defense, funded by taxpayers through the Criminal Justice Act of 1964.[1] Last month, they were convicted by a jury of nearly all charges. ECF No. 448. At trial, the government proved the Tews conspired to steal over $5,000,000 from Michael's former employer through the submission of fake invoices from sham vendors.[2] The jury heard the Tews' motive for doing what they did: Both

---

[1] Over this case's long history, Michael and Kimberley Tew have each cycled through numerous defense counsel, some private, and some CJA-funded. Additionally, they pursued joint counsel for a period of time before finally agreeing to and receiving separate attorneys. A summary of this procedural history can be found in the government's response to Michael Tew's motion for severance, which was filed mid-trial. *See* ECF No. 422.

[2] The government also proved that Michael Tew failed to file any tax returns from 2016-2018.

1

enjoyed a lavish lifestyle, and Kimberley Tew, in particular, was addicted to gambling and speculated heavily in cryptocurrency. The couple chose, over and over again, to defraud the Victim Company over a two-year period in order to finance these selfish ends. They did so with brazen and callous disregard for any potential legal exposure.

## I.   Relevant Evidence Adduced at Trial & Procedural Background

At the same time the charged offenses were taking place, Kimberley Tew was running a cryptocurrency Ponzi scheme, in which she convinced investors to give her their money and/or digital currency, which she would purportedly invest on their behalf. Her customers' initial investments would appear to pay off spectacularly, convincing them to invest more. Once the customers were in, however, she would then feign troubles with her proprietary trading "algorithm" and/or complain of her own financial woes in order to convince them to send more and more. Those "investments" were often transferred to Kimberley via peer-to-peer payment platforms, such as PayPal, Apple Pay, Amazon Pay, and CashApp (Block, Inc.), or otherwise were transferred to her directly through crypto exchange platforms, such as Coinbase.

The jury also learned that, at least at one point, the Tews financed Kimberley's crypto habit through the purchase of gift cards from various national retailers, such as King Soopers, Target, and Walgreens. These gift cards were purchased in round-dollar amounts ranging between $500 to upwards of $3,000 at a time, and they served as a way for Kimberley to repay her crypto debtors and/or to resell the gift cards on the secondary market to obtain even more cash for even more crypto. The jury heard evidence that the Tews' true purpose behind purchasing the gift cards in

2

this manner was to conceal the true source of the funds (which in that case came from the Victim Company's coffers).

Likewise, the jury learned that the Tews manipulated their friends and associates into becoming witting and unwitting money mules in this crypto scam. In at least one instance, a crypto investor of Kimberley's was convinced to act as a money mule and receive the Victim Company's funds into his accounts. He testified that, although he realized this was questionable and possibly criminal behavior, he only did so because he was so desperate after losing nearly all his life savings to Kimberley.

The government also presented evidence at trial that the defendants had control and ownership of numerous bank accounts with multiple financial institutions during the time period when they were defrauding the Victim Company. The bank records showed vast quantities of the Victim Company's money being deposited in accounts owned or controlled by the Tews, which then quickly disappeared through a tangled web of bank transfers, cash withdrawals, deposits into cryptocurrency ATMS, and transfers to offshore crypto exchanges, peer-to-peer payment services, and peer-to-peer crypto trading websites.

During trial preparation, the government learned something very disturbing: It seemed the Tews' questionable banking activity was continuing, unabated, despite the fact that the defendants were subject to bond conditions. In early 2024, the government began receiving records that indicated Michael Tew continued to be employed by several companies. He was earning significant income each month, income which appeared to be quickly transferred into other bank accounts in

3

Kimberley Tew's name and/or otherwise invested in crypto-related speculations. This income also continued to finance a lifestyle for the Tews that would be beyond the reach of most people. For example, during the pendency of trial, the Tews rented a luxury apartment in Denver's Speer neighborhood at a cost of $8,646.69 per month.

That banking activity was concerningly similar to the conduct at issue in this case. It also appeared that it could be contradictory to the Tews' bond conditions, which placed significant financial monitoring requirements on each of them. *See* ECF No. 9 (M. Tew Bond Conditions) and ECF No. 99 (K. Tew Bond Conditions).

Following their convictions, the government sought the defendants' detention pending sentencing. In moving for that relief, the government questioned whether the recently received records also suggested that the Tews, under penalty of perjury, may have misrepresented their financial status to the court in order to obtain their CJA-funded counsel. *See* ECF No. 450. If so, and as pertinent to the prosecution's detention motion, new offenses (e.g. perjury), may have been committed while the Tews were on bond, in direct violation of their conditions for release.

The government's suspicions also raise two practical and factually-distinct questions regarding the Tews' past and ongoing qualification for CJA-funded counsel: (1) Do the Tews owe reimbursement for any of the back-costs of their criminal defense that were incurred?, and (2) Are the Tews entitled to CJA-funded counsel going forward?

On March 12, 2024, the district court issued a minute order referring the latter question to this Court. Quoting the minute order in full:

4

The government's motion questions whether Mr. and Mrs. Tew <u>are still eligible for CJA-appointed counsel</u> for this case. There is sufficient evidence to call into question <u>their present eligibility</u> under 18 U.S.C. § 3006A.

The issue of whether Michael Tew and Kimberley Tew <u>remain entitled to ongoing court-appointed counsel under Section 3006A(c)</u> is therefore REFERRED to Magistrate Judge Susan Prose. All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential unsealing of any prior CJA affidavits, will be addressed at a detention hearing before this Court[.]

ECF No. 455 (emphasis added).

On March 21, this Court held a status conference to discuss how to approach the referred issue. At the status conference, the Court invited the parties to submit briefing and any supporting documentation they believe merits judicial consideration.[3] The Court also set separate *ex parte* hearings for each defendant. *See* ECF No. 462.

The government's knowledge of the Tews' present financial status is limited. The government does not know, for example, what the Tews told the courts in their prior CJA affidavits. Nor does the government know what the Tews represented to their pretrial officers while on bond. Likewise, the government does not know what the Tews would say to the court now. The government does not know if it has obtained records for all of the Tews' holdings, and for the holdings the government does know about, the prosecution has not had sufficient time to conduct a full financial accounting to understand the relationship among those holdings. The prosecution

---

[3] Per the Court's request, the government will hand-deliver its evidence by USB drive to the clerk's office with a marking indicating that its contents are for chambers' review only and not for docketing.

5

also is not privy to what effects, if any, the Tews' convictions may have had on their current finances. All the government can say at this point is that the evidence it has obtained raises serious questions.

The government therefore submits this briefing and supporting evidence in advance of the defendants' *ex parte* hearings for a limited purpose: Through this filing and the submission of the records, the government seeks to provide the court with its position on the law and its understanding at this time of the evidence that it has been able to obtain. Due to the Tews' history of dishonesty both outside of the courtroom and within it, the government urges this Court to conduct a searching inquiry into the present state of the Tews' finances and their eligibility for CJA-funded counsel going forward. That inquiry should include an examination of underlying documents, and it should require fulsome disclosures, supporting extrinsic evidence, and honest explanations of all of the facts. In this case, the axiom "*dis*trust *and* verify" applies.

## II.   Summary of Recently Received Records

As noted, the government has not seen and cannot access all potential evidence of the Tews' present financial condition. Nor has the government had sufficient time to try and compare and contrast and piece together all of the records received from each institution to determine exactly how they interact. The records that the government has received, however, indicate that the couple received substantial income while this case was pending, which they quickly spent on highly questionable crypto speculation. This activity *even took place during the trial itself*.

Looking backward, this banking activity calls into question the Tews'

6

truthfulness when they represented their assets and liabilities to the courts.[4] It also

may have implications on whether they truly complied with the conditions of their

bonds pending trial. Looking forward, and as pertinent to the issue before this Court,

these records may shed some light on the "present" state of the Tews' finances. To the

extent that these facts undermine the Tews' prior candor with the courts, they also

can be considered when evaluating whether to qualify CJA counsel through the

remaining proceedings. *See infra.*

To assist the Court in reviewing these financial records, the government

provides the following high-level summary and index. These summaries are not

intended to go through the documents on a transaction-by-transaction basis, but

instead highlight illustrative points that prove the Tews' finances must be reviewed

with careful scrutiny.

- **Credit Union of Denver Bank Statements** [INV_09583-09900; INV_09953-10358]:

    o The Credit Union of Denver bank statements cover an account held by Michael Tew (x8851) between May 2021 through February 2024. That account including a "prime share" account (suffix -00) and a "basic checking account (suffix -06). Focusing on the period of the Tews' CJA appointments,[5] the x8851 account received deposits ranging from

---

[4]      *See* ECF No. 29 (M. Tew financial affidavit); ECF No. 282 (M. Tew and K. Tew financial affidavits). *See also* ECF No. 26 (M. Tew request for FPD appointment); ECF No. 175 (*pro se* letter from Tews requesting additional time to retain private counsel); ECF Nos. 13, 25, 54, 111, 162, 166, 167, 273, 300 (various motions to withdraw filed by defense counsel over the history of this litigation).

[5]      Michael Tew and Kimberley Tew first were appointed CJA counsel (Peter Bornstein) in December 2022. Mr. Bornstein was previously retained, but after he attempted to withdraw based on the Tews' failure to pay, he was appointed as CJA counsel. *See* ECF No. 287. Thereafter, Kimberley Tew received her own CJA counsel, and Mr. Bornstein was replaced with Michael Tew's present CJA counsel. Trial was held between February 5 and 15, 2024.

$22,987.04 to $124,989.95 *per month* in the two years the Tews received publicly funded legal counsel. *See* ECF No. 450.

o   Many of these deposits were five-figure, regular influxes from legitimate corporations. Based on this and other publicly available information, the government believes that Michael Tew was employed during this period, probably providing financial consulting work to those companies (to include the Seaport Global Asset Management, the Seaport Group, and Stephen C Smith (an individual associated with these entities); Scantech Identification Beam Tech Systems, Inc; as well as Springbig and Canna Business (entities in the cannabis space, where Michael Tew has prior experience)).

o   The account also received significant (often four figure) deposits from crypto exchanges, such as Bittrex and Bitstamp, during the same time period.

o   During the 2022-2024 time frame, this single account received more than $1,212,181.27 in deposits.

o   Every month, most of that money disappeared, often through bank transfers or withdrawals and purchases from retailers in round-dollar amounts (which, based on prior conduct, may be bulk purchases of gift cards).

o   Focusing on the most recent of those statements (January and February 2024) reveals several interesting transactions:

   ▪   During the month of the trial (February 2024), the x8851 CU Denver account received $27,157.15 in deposits. Within the same month, almost all of those funds were withdrawn, specifically, $27,107.99. [INV_10139-10147.]

   ▪   Deposits of note in February 2024 include two influxes of $9,337.38 and $9,728.93, received on February 5 and 7 (the first and third days of trial). Both of these deposits originated from Bitstamp USA Inc., a cryptocurrency exchange.

   ▪   Almost all of those funds were withdrawn within a matter of days (again during the course of trial itself). The government does not know the destination of those funds at this time; however, it notes that each deposit is just of the $10,000 threshold that would trigger institutional reporting requirements.

8

- The month prior to trial (January 2024) is similarly concerning. During that month alone, Michael Tew received $91,925,67 in deposits. By the end of the month, $88,930.62 had been withdrawn. [INV_09970-09989.]

- The account was drawn down largely through a series of round dollar withdrawals, ranging from $100 to $1,500 at a time. Some of these withdrawals are to retailers known to offer gift cards (such as Walgreens, Uber Eats, Instacart, and DoorDash). This pattern is virtually identical to the Tews' past history of purchasing gift cards as a means to fund crypto speculations.

- Similarly, numerous deposits and withdrawals went through peer-to-peer transfer sites such as Apple Pay and Amazon Pay, platforms that Kimberley Tew has used in the past with money mules and crypto customers.

- Finally, the January statement shows repeated withdrawals to "Ramp" with an address at 8 The Green in Dover, DE. The government believes that these withdrawals went to Ramp.network, a crypto app that provides, *inter alia*, transfers between fiat currency and crypto.

- **Evolve Bank & Trust Records** [INV_10359-10417]:

  o This spreadsheet and the supporting documents summarize transactions of a bank account held by Kimberley Tew with Evolve Bank & Trust, a digital bank.

  o Between approximately June 2023 through December 2023, the account received over $142,000 in deposits. The majority of the deposits were from peer-to-peer transactions from services such as Apple Cash, PayPal, Metapay, and CryptoHub.

  o Those funds appear to were rapidly transferred out in order to purchase cryptocurrency, as well as sent to a personal account held by Kimberley Tew at Stride Bank.

- **Chime Card (Stride Bank) Records** [INV_10433]:

  o Stride Bank provides banking services for Chime, a financial technology company where Kimberley Tew holds or has held a debit or credit card. Stride provided records showing that, between March 2023 and February 2024, Kimberley engaged in similar transactional activity in

9

this account. Specifically, between March 2023 and February 2024, the records show an influx of approximately $36,000 worth of deposits, in the form of visa money transfers, other peer-to-peer transfers, and deposits from crypto exchanges. The same amount of money was transferred out to various crypto exchanges. [*See* "summary" tab.]

- **Block, Inc. (CashApp/Square) Records** [INV_09582]:

  o  Block, Inc. is the corporate entity that runs CashApp, a popular peer-to-peer service that allows individuals to send money to one another, as well as Square. Block, Inc. and its entities also provide services to buy, sell, send, and receive cryptocurrency. The spreadsheet received from Block summarizes transactions for an account held in Kimberley Tew's name between January and March of 2022.

  o  It shows that Kimberley Tew's CashApp account was linked or attempted to be linked to at least three credit or debit cards held with multiple financial institutions during this brief time period.

  o  In a less than two week period in March 2022, Kimberley Tew's CashApp account and a bank account held in the name of Michael Tew attempted $8,460 worth of peer-to-peer transfers.

  o  Additional transfers of $9,500 were attempted between the two, but did not complete, apparently because the amounts exceeded CashApp's monthly transaction limit.

  o  Hundreds of attempted transfers and transactions are reflected, including numerous purchases, transfers, and sales of Bitcoin.

- **PayPal Records** [INV_09901-09921]:

  o  The PayPal records show that Kimberley Tew held an account in her maiden name (Kimberley Vertanen). The spreadsheet summarizing the account activity indicates that Kimberley's account was linked to multiple bank accounts and virtual currency accounts. [INV_09901 (Tab: "Financials").] The various "Transaction" tabs show that the account was frequently engaged in crypto trading.

  o  Moreover, the accompanying documents show that PayPal flagged the account's activity, because of its tendency to transact with online gambling sites, such as stake.com and shuffle.com. PayPal also noted significant activity with crypto exchange and brokerage sites, such as coinbase.com and paxos.com.

10

- o PayPal also flagged transfers with other peer-to-peer payment services, such as Apple cash, where the origins of funds could not be determined, as well as other transactions of dubious origin.

- o Finally, PayPal noted that the account received payments from Raise.com, a website where individuals can sell gift cards at a discounted amount in exchange for cash. [*See* INV_09902-09921.]

- **PNC Records [**INV_09922]:

  - o PNC provided a spreadsheet that summarizes transaction activity for an account held in Kimberley's name from approximately March through July of 2022.

  - o During that four-month period, the account received over $144,853.61 of credits, the vast majority of which were deposits from peer-to-peer payment services, including Zelle, Apple Cash, Cash App, and Facebook Pay.

  - o Many of these deposits originated from Michael Tew, often multiple times within a single day. On May 12, 2022, the account received two separate deposits from Credit Union of Denver (where Michael Tew banked), which, based on the amounts, appear to have been structured to avoid the $10,000 reporting requirement.

  - o During the same four-month period, the account was drawn down via near-daily transfers to cryptocurrency exchanges, such as zerohash.com and crypto.com, to the tune of $116,946.71.

- **Robinhood Records** [INV_09923-09951]:

  - o The records provided by Robinhood show that Michael Tew and Kimberley Tew each held brokerage accounts between January 2018 and August 2023.

  - o The Know Your Customer information provided to Robinhood contains possible misrepresentations and/or evidence that may contradict what the Tews said to the courts in their CJA-23 affidavits. For example, Kimberley stated that she had 4 dependents (rather than 2), and she stated that she was employed as a "consultant" for Sand Hill LLC (Michael Tew's company which was used in the charged fraud). She listed her income as being $200,000-$499,999 per year; her cash and investments as being between $50,000 - $99,999; and her total net worth

11

as being between $100,000 - $249,000.

- o For his part, Michael listed no dependents, but stated that he was employed as a financial planner advisor with "Seaport," which matches the regular deposits into his CU Denver account. He did not provide further specification regarding his assets.

- o In a pattern which is all too familiar, both accounts show substantial peer-to-peer and crypto transactions.

- **ZeroHash Financial Records** [INV_009952]:

  - o Based on some of the other records received, it is clear that Kimberley Tew has held accounts with ZeroHash, a company that boasts business-to-business brokerage and crypto trading.

  - o According to the spreadsheet of records received from ZeroHash, the company's AML department flagged transactions with their company as well.

### III.   Legal Standards for Determining CJA Eligibility

The Criminal Justice Act of 1964, 18 U.S.C. § 3006A, is the federal vehicle providing for the appointment and payment of counsel for certain criminal defendants. *See also United States v. Gonzales*, 150 F.3d 1246, 1265 (10th Cir. 1998). Its purpose is to protect the right to counsel by assuring that every defendant, regardless of his or her ability to pay, receives the benefit of a competent defense. *United States v. Parker*, 439 F.3d 81, 90 (2d Cir. 2006) (citing *United States v. Barcelon*, 833 F.2d 894, 896 (10th Cir. 1987)).

The Act's funding is not limitless. In order to protect the source of that funding from abuse — and by extension — to ensure the availability of such funding for those that truly need it, the court must conduct an "appropriate inquiry" into whether the defendant is "financially unable to obtain counsel." 18 U.S.C. § 3006A(b); *see also*

*Barcelon*, 833 F.2d 894, 896-97 (10th Cir. 1987). That inquiry is shaped by two

governing principles:

*First*, under the Act, the defendant bears the burden of persuading the court

that they are unable to pay for their own counsel. *Barcelon*, 833 F.2d at 898 (citing

cases); *see also United States v. Anthony*, No. 15-CR-126-C-5, 2018 WL 1866614, at

*2 (W.D. Okla. Mar. 29, 2018) (noting that the Tenth Circuit has not decided the

precise standard of review for defendant's burden, but applying a preponderance of

the evidence standard).

*Second*, the inquiry is not a static one. Rather, the Act charges the court with

an *ongoing* obligation to inquire about a defendant's ability to pay throughout the

lifespan of the proceedings.[6] 18 U.S.C. § 3006A(b)-(c); *see also* 51 A.L.R. Fed. 561

§ 2(b).

Under Section 3006(c), appointment of CJA counsel may be invoked at any

---

[6]    The U.S. Court's Guide to Judicial Policy regarding the Criminal Justice Act,
as well as its Model Plan for the Act's Implementation and Administration, mandates
that each judicial district implement a CJA plan that includes a provision notifying
defense counsel of their affirmative obligation to notify the court of changes to a
client's CJA eligibility. *See* Section Vol. 7, Part A, Section 210.10.30, *available at*
https://www.uscourts.gov/rules-policies/judiciary-policies/criminal-justice-act-cja-gui
delines#:~:text=Enacted%20in%201964%2C%20the%20CJA,counsel%20in%20feder
al%20criminal%20proceedings.
      Despite this, the District of Colorado's CJA Plan does not appear to include
such language. The District Plan does generally direct CJA counsel to abide by the
CJA Guidelines approved by the Judicial Conference. *See* D. Colo. CJA Plan, Section
(I)(B), *available at* https://cocja.wpcomstaging.com/wp-content/uploads /2019/12/
COD_CJA_Plan_Dec2019.pdf.
      In any event, the docket reflects that Magistrate Judge Kristen L. Mix notified
at least Michael Tew that changes to his financial status could impact his CJA
eligibility and could require him to reimburse the CJA fund. *See, e.g.*, ECF No. 30.

13

point in the judicial proceedings, "as the interests of justice may dictate." Likewise, under Section 3006(f), if at any point a defendant is able to afford the costs or some portion of the costs of their defense, the court may direct the defendant to start paying for or to reimburse previously paid-for costs. At all times, the court's inquiry should be directed at the defendant's *present* or *current* availability to pay. *Anthony*, 2018 WL 1866614, at *3 (citing cases from the Fourth, Sixth, and Ninth Circuits).

In the typical case, most federal courts, including the courts of this district, rely on the defendant's submission of a basic affidavit (the CJA-23 financial affidavit), certified under penalty of perjury, that outlines the defendant's income and assets, as well as their obligations, expenses, and debts. If that document suggests that the defendant would be unable to afford the costs of counsel, in most instances, the court has satisfied its obligation to conduct the "appropriate inquiry" required by 18 U.S.C. § 3006A. *Barcelon*, 833 F.2d at 897 (citing cases). However, an "appropriate inquiry" "necessarily varies with the circumstances presented, and no one method or combination of methods is required." *Id*.

"[A] broad range of additional considerations" may apply where circumstances warrant. *Id*. Such considerations may include the needs of the defendant and his family, the amount posted by the defendant as bail, the expense and extent of legal services which the defendant requires, and other sources of assets, including the availability of assets from a spouse or other family member, as well as funds available through trusts, estates, IRAs, or other asset streams. *See Barcelon*, 833 F.2d at 897 n. 5 (citing cases). Likewise, the liquidity of the defendant's assets is a valid

14

consideration. *See id.* at 897-98 (citing cases); *see also United States v. Konrad*, 730 F.3d 343, 347 (3d Cir 2013) (citing Guide to Judicial Policy for principle that assets are "available" when defendant has control or discretionary use of them).

Another valid consideration is the defendant's credibility. For example, where the evidence shows that a defendant has misrepresented or secreted assets to create a false impression of CJA-eligibility, that may justify declining or discontinuing appointment. *See Barcelon*, 833 F.2d at 897 n.5 (citing *United States v. Rubinson*, 545 F.2d 951, 964 (2d Cir. 1976) (evidence of secreted assets justified declination of CJA appointment); *United States v. Binder*, 794 F.2d 1195, 1202 (7th Cir. 1986) (defendant's refusal to provide evidence of financial status in light of evidence submitted by government which suggested ability to pay justified denial of CJA payment)).

Similarly, the court may consider *how* a defendant has been using their available funds. For instance, a defendant's decision to invest their money in other opportunities, rather than paying for their own criminal defense, can undermine a defendant's CJA eligibility. *See, e.g., Konrad*, F.3d 343, 347-48 (3d Cir. 2013) (quoting *Barry v. Brower*, 864 F.2d 294, 300 (3d Cir. 1988) for principle that, "[i]n some cases, liquidation of assets may be required); *O'Neil*, 118 F.3d 65, 74 (2d Cir. 1997) (evidence of defendant's independent investments showed ability to pay).

## IV.    Application at the *Ex Parte* Hearings

Although the Tews may present revised CJA-23 affidavits at the upcoming *ex parte* hearings, the evidence provided by the government, combined with the legal

15

standards described above, provide a solid factual and legal basis for this Court to inquire further. The defendants should not simply be taken at their word, even if that word is submitted under pains and penalties of perjury.

Rather, should the Tews desire CJA-funded counsel going forward, they must meet their burden and prove to this Court that they truly qualify for it. The court would be well within the law and the facts to require that the Tews submit *all* of their bank statements, to include a full disclosure of their crypto holdings, to prove the current state of their assets and liabilities. The government also encourages the court to consult with the defendants' supervising pretrial officers, to determine whether and to what extent they disclosed their financial activities while under bond.

From what the government can see, Michael Tew continued to receive substantial income up through the point of trial. For example, as of the fourth quarter of 2023, Michael Tew was still receiving tens of thousands of dollars per month from companies such as the Seaport Group and Springbig. During this same period, Michael Tew also willingly received substantial deposits into his account in the form of transfers from crypto exchanges. The government does not know whether these transfers originated from Michael Tew, Kimberley Tew, her "investors," or some other third-party source, including potential new victims.

Similar to the time period when the Tews were defrauding the Victim Company, those assets were quickly diverted to other destinations. If past history is considered indicative of future conduct, those funds most likely went to locations controlled by Kimberley Tew, probably for the purpose of gambling and crypto

16

speculation. Even setting aside the question of the propriety of these purchases and transfers, they show that the funds in Michael Tew's account were *highly* liquid. The availability and fungibility of these assets are all things that this Court should consider when evaluating the Tews' eligibility for CJA counsel going forward. *See supra.* Likewise, to the extent that these facts call into question the Tews' prior candor to the courts and to the Tews' pretrial officers, their credibility is also a germane factor to this Court's inquiry.

Finally, the government seeks to address two arguments raised by the defendants at the status conference.

*First*, because this Court's inquiry must remain on the Tews' *present* ability to pay for counsel, requiring them to put forth evidence supporting a request for ongoing CJA funding to this Court does not put them in any sort of legal jeopardy regarding their *past* representations. *See, e.g.*, *Anthony*, 2018 WL 1866614, at *3 (noting that defendant's past dishonesty is not necessarily dispositive of present financial status).

A refusal to provide such evidence, or to put forward the requisite proof to meet their burden of showing eligibility, however, can justify denying continued appointment. *See also Parker*, 439 F.3d at 97 (quoting *United States v. Anderson*, 400 F. Supp. 2d 32, 35 (D.D.C. 2005) and the Guide to Judicial Policy for principle that, "It is the responsibility of the defendant to provide the court with sufficient and accurate information upon which the court can make an eligibility determination.")).

For example, in *United States v. Binder*, 794 F.2d 1195, 1200-01 (7th Cir. 1986), the Seventh Circuit addressed the declination of CJA funding for two

17

defendants. In *Binder*, the prosecution provided evidence that the defendants possessed substantial assets immediately prior to indictment and that they engaged in a "flurry of dubious financial activity" after indictment. When presented with an opportunity to account for the source or destination of their funds and valuable assets, one defendant declined to do so. The other provided "evasive and disingenuous" testimony. Under those circumstances, the Seventh Circuit decided that the lower court satisfied its obligation to conduct an "appropriate inquiry" and it affirmed the lower court's declination of CJA-funded counsel.

*Second*, to the extent that the defendants may argue at the *ex parte* hearings that requiring them to pay for their own counsel out-of-pocket going forward risks the withdrawal of their current counsel and disruptions to judicial efficiency, this Court should not be so distracted. The question of whether failing to pay counsel, in and of itself, satisfies the standard for a motion to withdraw has already been answered in this case. *See* ECF Nos. 280; 276 at 5-6 (citing *United States v. Beers*, 189 F.3d 1297, 1302 (10th Cir. 1999) and *Rophaiel v. Alken Murray Corp*, 1996 WL 306457, at *2 (S.D.N.Y. 1996)). Defendants may not manipulate the legal system and cause delay simply by refusing to pay their counsel. A motion to withdraw on that basis alone would be insufficient.

## V.    Conclusion

The Criminal Justice Act requires appropriate inquiry into whether a defendant can pay for his own legal counsel. That obligation is ongoing, and it serves the important purpose of providing CJA funds only to those defendants who qualify

18

for it and only for the parts of the proceedings where they qualify for it. Here, the records obtained by the government strongly suggest that the Tews have access to assets that would disqualify them from CJA funding going forward.

To be clear, it is possible that the government — with its limited information — does not understand some aspect of the Tews finances. It is also perfectly possible that the Tews' convictions, now that they are final and publicly available information, have changed or will somewhere change down the line the family's income streams. Certainly, should either defendant be detained after the hearing before Judge Domenico in April, that, too, also could change their financial status.

However, the Criminal Justice Act requires evaluation of the defendants' *present* financial status to evaluate whether they qualify for funding going forward. *See, e.g.*, *Anthony*, 2018 WL 1866614, at *2-3 (dividing eligibility analysis into three "stages" — initial appointment, continued appointment, and reimbursement — and evaluating each against *present* ability to pay). From what the government can see, at the present time, the evidence suggests that the Tews still have access to substantial resources. That income should be used to pay for their legal counsel rather than their own personal whims and frivolities. The Criminal Justice Act does not require that taxpayers front the costs of the Tews' legal expenses under such circumstances.

Respectfully submitted this 27th day of March, 2024.

COLE FINEGAN
United States Attorney

By:  /s/ Bryan Fields                              By:  /s/ Sarah H. Weiss
Bryan Fields                                       Sarah H. Weiss
Assistant United States Attorney                   Assistant United States Attorney
U.S. Attorney's Office                             U.S. Attorney's Office
1801 California St. Suite 1600                      1801 California St. Suite 1600
Denver, CO 80202                                   Denver, CO 80202
(303) 454-0100                                     (303) 454-0100
Bryan.Fields3@usdoj.gov                            Sarah.Weiss@usdoj.gov
Attorney for the Government                         Attorney for the Government

20

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of March, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

<u>s/ *Sarah H. Weiss*</u>
Sarah H. Weiss
Assistant U.S. Attorney
1801 California Street, Suite 1600
Denver, CO 80202
Telephone 303-454-0100
Facsimile 303-454-0402
Sarah.Weiss@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Susan Prose**

| | |
|---|---|
| Civil Action No: 1:20-cr-00305-DDD-1 | Date: March 28, 2024 |
| Courtroom Deputy: Tram Vo | FTR: Courtroom C205 |

| | |
|---|---|
| _Parties:_ | _Counsel:_ |
| UNITED STATES OF AMERICA, | _No Appearance_ |
| Plaintiff, | |
| v. | |
| 1. MICHAEL AARON TEW, | Kristen M. Frost |
| | Jason Dale Schall |
| Defendant. | |

---

**COURTROOM MINUTES**

---

**SEALED EX PARTE HEARING**

| | |
|---|---|
| 1:37 p.m. | **Court in session.** |
| 1:37 p.m. | **Record sealed.** |

Court calls case. Appearances of defense counsel.

This Court has been referred the issue of whether Defendant Michael Aaron Tew[1] remains entitled to ongoing court-appointed counsel pursuant to 18 U.S.C. § 3006A(c). _See_ Order, ECF No. 455. The Court hears argument on the referred issue.

| | |
|---|---|
| 4:19 p.m. | **Court in recess.** |
| 4:28 p.m. | **Court in session.** |

As stated on the sealed record, the Court finds that Defendant Michael Tew remains eligible for court-appointed counsel. A separate public written order will be issued.

| | |
|---|---|
| 4:31 p.m. | **Court in recess.** |

---

[1] A separate ex parte hearing regarding Defendant Kimberley Ann Tew's eligibility for ongoing court-appointed counsel will be conducted at a later date.

Hearing concluded.
Total in-court time: 2 hours and 45 minutes

*To order transcripts of hearings, please contact either Patterson Transcription Company at (303) 755-4536 or AB Litigation Services at (303) 629-8534.

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:20-cr-00305-DDD-1

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.     MICHAEL AARON TEW,

      Defendant.

---

## ORDER REGARDING DEFENDANT MICHAEL TEW'S
## ELIGIBILITY FOR ONGOING COURT-APPOINTED COUNSEL

---

THIS MATTER came before the court for a determination of the narrow question of Defendant Michael Aaron Tew's eligibility for ongoing court-appointed counsel pursuant to 18 U.S.C. § 3006A(c) of the Criminal Justice Act of 1964 ("CJA" or "Act"). Judge Domenico referred that question to the undersigned Magistrate Judge by Order dated March 12, 2024. ECF No. 455. Specifically, Judge Domenico stated:

> ORDER re 450 Motion to Detain Defendants Michael and Kimberley Tew. The government's motion questions whether Mr. and Mrs. Tew are still eligible for CJA-appointed counsel for this case. There is sufficient evidence to call into question their present eligibility under 18 U.S.C. § 3006A(c).
>
> **The issue of whether Michael Tew and Kimberley Tew remain entitled to ongoing court-appointed counsel under Section 3006A(c) is therefore REFERRED to Magistrate Judge Susan Prose.** All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential un-sealing of any prior CJA affidavits, will be addressed at a detention hearing before this Court as outlined below.

ECF No. 455 (emphasis added).

On March 28, 2024, the court conducted an ex parte hearing concerning Michael Tew's entitlement to ongoing court-appointed counsel.[1] Over the course of that nearly three-hour-long hearing, the court considered information submitted by both Mr. Tew and the government before the hearing. *See* ECF Nos. 466, 467 (notices of Conventionally Submitted Material by the government and Tew, respectively). The court heard extensive argument from defense counsel and questioned counsel, in detail and at length. Upon a full consideration of the information available to this court, the undersigned concluded that Mr. Tew remains eligible for court-appointed counsel pursuant to § 3006A(c). *See* ECF No. 468. This order further memorializes that finding.

## I.    Procedural Background

The action against Mr. Tew was initiated on July 8, 2020, by means of a criminal complaint. ECF No. 1. On September 24, 2020, Mr. Tew waived his right to prosecution by indictment and consented to prosecution by information. ECF No. 45. Ultimately, he was indicted on fifty-nine counts, including twenty-nine counts of wire fraud in violation of 18 U.S.C. § 1343. ECF No. 83, Indictment (filed February 3, 2021). Mr. Tew did not receive court-appointed counsel in this matter until December 27, 2022. ECF No. 286, Minute Order. On that date, Judge Mix—after reviewing a CJA Form 23 Affidavit submitted by Mr. Tew—found that

---

[1] The court will conduct a separate ex parte hearing to determine Kimberley Tew's present eligibility for court-appointed counsel on April 15, 2024. *See* March 21, 2024 Minute Entry, ECF No. 462.

he qualified for court-appointed counsel. *Id.* (referencing the court's review of the affidavit); *see also* ECF No. 282 (Affidavit) (filed at a level 3 restriction on access). Since then, Mr. Tew continuously has been represented by court-appointed counsel in this case.

On February 15, 2024, following an eight-day jury trial, Mr. Tew was found guilty on all fifty-nine counts in the indictment. *See* February 15, 2024 Courtroom Minutes at 2-3; *see also* February 15, 2024 Jury Verdict Form, ECF No. 448. On February 21, 2024, the government filed a motion seeking detention of both Tews pending their sentencing. ECF No. 450 ("Detention Motion"). Hearings on that question are set for April 22, 2024, before Judge Domenico. ECF Nos. 455. Their sentencing hearings are currently set for August 8, 2024, before Judge Domenico. ECF Nos. 456, 457.

In the Detention Motion, the government did not specifically raise the question of whether the Tews remain entitled to ongoing court-appointed counsel. The Detention Motion, however, did present information "suggest[ing] that the Tews lied on their CJA affidavits," which—the government argues—"constitutes perjury and a mandatory revocation of bond." Detention Motion at 3; *id.* at 4 (summarizing information for a two-year period for an account held in the name of Mr. Tew). Based on that information, Judge Domenico found that "[t]here is sufficient evidence to call into question [the Tews's] present eligibility under 18 U.S.C. 3006A(c)." ECF No. 455. Hence the referral of the present-eligibility question to this court. *See id.*

This court held a status conference on March 21, 2024, at which counsel for all parties, and Michael and Kimberley Tew themselves, were present. *See* Minute Entry, ECF No. 462. At

3

the status conference, the court discussed its plan to conduct two separate ex parte hearings (one

for Mr. Tew and another for Kimberley Tew) during which the court would decide the present-

eligibility question for each Defendant. Counsel for all parties agreed to the proposed

procedure.[2]

      As noted above, the ex parte hearing to evaluate the question of Mr. Tew's ongoing

eligibility for court-appointed counsel proceeded on March 28, 2024. In advance of that hearing,

the parties were permitted to submit materials for the court's consideration, which both the

government and Mr. Tew chose to do. ECF Nos. 467, 468.[3]  The government also submitted

---

[2]  The CJA itself is silent about disclosure of information concerning a defendant's eligibility for
CJA status. *See United States v. Gonzales*, 150 F.3d 1246, 1265 (10th Cir. 1998) ("Neither the
statute nor the Administrative Office's rules specify whether [the procedure regarding
appointment of counsel] is to be done ex parte."). *The Guide to Judiciary Policy* issued by the
Administrative Office of the United States Courts ("AO Guide"), which governs the
administration of the CJA, states that, "generally," such information "should be made available
unless it: (a) is judicially placed under seal; (b) could reasonably be expected to unduly intrude
upon the privacy of attorneys or defendants; (c) could reasonably be expected to compromise
defense strategies, investigative procedures, attorney work product, the attorney-client
relationship or privileged information provided by the defendant or other sources; (d) or
otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial,
or an impartial adjudication." AO Guide, vol. 7, chap. 5, § 510.30, available at Criminal Justice
Act (CJA) Guidelines - Guide to Judiciary Policy, Vol. 7A (uscourts.gov). The court also takes
into account here the Tenth Circuit's holding in *Gonzales*, in which the Court of Appeals
concluded that backup documentation for CJA vouchers, motions, orders, and hearing transcripts
related to the appointment of counsel should be sealed, in part, because disclosure of this CJA
information would intrude on the defendants' privacy interests and "may implicate the
Defendants' Fifth Amendment rights as to the instant crime." *See* 150 F.3d at 1265-66 (finding
that district court abused its discretion in ordering unconditional release of these documents).
Taking into account the totality of the circumstances here, this court deemed it appropriate to
conduct the hearing ex parte.

[3]  Consistent with this court's directive, Mr. Tew's submission was made ex parte.

briefing. *See* Government's Brief Regarding Defendants' Ongoing Eligibility for CJA Counsel, ECF No. 465.

The court now turns to the hearing and its assessment of the evidence, bearing in mind the ex parte nature of that proceeding and the necessity to confine the language of this order to a high, non-specific level.

## II.    Analysis

The Act provides that counsel should be appointed in any criminal case in which the defendant is "financially unable" to obtain counsel pursuant to a plan implemented by each district court. 18 U.S.C. §§ 3006A(a) & (b); *see also* Criminal Justice Act Plan, United States District Court for the District of Colorado, available at CJA_Plan_2019.pdf (uscourts.gov) (effective January 1, 2020). The Act permits the court to terminate the appointment of counsel if the court finds the defendant is able to afford legal counsel, but it does not require the court to do so: "[I]f at any time after the appointment of counsel the United States magistrate judge or the court finds that the person is financially able to obtain counsel . . ., it *may* terminate the appointment of counsel or authorize payment as provided in [18 U.S.C. 3006A(f)], as the interests of justice may dictate." 18 U.S.C. § 3006A(c) (emphasis added).

In assessing whether a defendant is financially unable to obtain counsel, this court is obliged to make an "appropriate inquiry." 18 U.S.C. § 3006A(b). "Appropriate inquiry necessarily varies with the circumstances presented, and no one method or combination of methods is required. Investigation of the applicant's assets, liabilities, income and obligations alone may constitute sufficient inquiry." *United States v. Barcelon*, 833 F.2d 894, 897 (10th Cir.

5

1987) (footnote and citations omitted). The court focuses on the defendant's current ability to pay. *United States v. Anthony*, No. 15-CR-126-C-5, 2018 WL 1866614, at *3 (W.D. Okla. Mar. 26, 2018) (noting that courts have interpreted 18 U.S.C. §§ 3006A(c) and (f) "to require a finding that the criminal defendant has a *present* ability to pay for his attorney, not that he may have, at some point in the past, had that ability") (emphasis in original) (collecting cases).

"The burden is on the defendant to demonstrate financial inability in order to obtain counsel." *United States v. Peister*, 631 F.2d 658, 662 (10th Cir. 1980); *see also Barcelon*, 833 F.2d at 896 (same) (collecting cases); *Anthony*, 2018 WL 1866614, at *2 (finding that defendant bore the burden "to prove, by a preponderance of the evidence, that he is financially unable to afford counsel," but recognizing the lack of Tenth Circuit authority on the precise level of the burden). But "[a]ny doubts about a person's eligibility should be resolved in the person's favor; erroneous determinations of eligibility may be corrected at a later time." AO Guide vol. 7A, Appx. 2A, § IV.B.2.e.

Guided by these legal principles, the court finds that Mr. Tew has met his burden to show that he is entitled, at the present time, to court-appointed counsel. In reaching this conclusion, the court has considered extensive information. The court has evaluated Mr. Tew's income, property, and financial accounts, as well as his obligations, expenses, and debts—including expenses for housing, food, medical needs, utilities, credit cards, vehicles, childcare, and insurance. The court has taken into account Mr. Tew's other very substantial liabilities. The court has reviewed the information provided by the government.

In addition, the court has reviewed the financial affidavit provided by Mr. Tew on

6

December 13, 2022, which informed Judge Mix's assessment that Mr. Tew was entitled to CJA counsel at that time. *See* ECF No. 282 (affidavit); ECF No. 286 ("Having reviewed the Affidavits [#282] timely submitted by Defendants Michael A. Tew and Kimberly [sic] A. Tew, the Court finds that they qualify for court-appointed counsel."). The court recognizes that its assessment is focused on Mr. Tew's present eligibility under § 3006A(c). Nevertheless, the court wishes to be clear that it has examined the December 13, 2022 affidavit, which is part of the record in this matter, and that the information contained in that affidavit does not alter the court's conclusion regarding Mr. Tew's entitlement to ongoing court-appointed counsel. The court finds that, based on the information before this court (including information obtained at the ex parte hearing), Mr. Tew is "in no better financial condition to afford an attorney than he had been when he completed the initial financial affidavit" on December 13, 2022. *See Anthony*, 2018 WL 1866614, at *3.

In conclusion, for the foregoing reasons, the court respectfully finds that Defendant Michael Aaron Tew qualifies, at this time, for ongoing court-appointed counsel pursuant to 18 U.S.C. § 3006A(c) of the Criminal Justice Act.

DATED: April 5, 2024                          BY THE COURT:

_____
Susan Prose
United States Magistrate Judge

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-SBP

UNITED STATES OF AMERICA,

     Plaintiff,

v.

    1.  MICHAEL AARON TEW, and
    2.  **KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,**

     Defendants.

---

**GOVERNMENT'S BRIEF REGARDING DEFENDANT
KIMBERLEY TEW'S ONGOING ELIGIBILITY FOR CJA COUNSEL**

---

On March 27, 2024, the government filed a brief outlining certain financial information it has received regarding the state of Michael and Kimberley Tew's assets between approximately the time they were appointed CJA counsel (in December 2022) through the near-present (approximately February 2024). ECF No. 465. The same filing outlined the government's position as to the law that should be applied in determining the question referred to this Court, namely, whether Michael Tew is entitled to CJA-funded representation going forward. *Id.* The government fully incorporates that brief by reference, and makes this filing for the limited purpose of supplementing those facts and law that are particularly pertinent to assessing the same question of Kimberley Tew's ongoing eligibility for CJA representation.[1]

---

[1]    On March 28, this Court held a three-hour *ex parte* hearing as to Michael Tew's ongoing eligibility. By and through oral and written order, this Court determined that

As with her husband, the government has limited information regarding Kimberley Tew's present financial state. As to the facts, here is what the government does know: The government is not aware of any legitimate employment for Kimberley Tew. She is, however, a profligate gambler. Her gambling addiction is apparently severe, and it poses a threat to herself and others. In recent years, that addiction has expanded into cryptocurrency speculation. To feed this habit, she has used her own funds; funds legitimately earned by her husband; funds that she convinced others to "invest" with her; and funds stolen from the Victim Company in this case.

The banking records, summarized in the government's prior brief, strongly suggest that she has not broken her habit. Vast quantities of cash and digital currency have gone into accounts held by Kimberley Tew and Michael Tew, the exact provenance of which is unknown at this time. Any inquiry into the present state of Kimberley Tew's finances will require an accounting of the sources of funds into and out of those accounts, much of which has been partially anonymized and/or made difficult to trace given Kimberley's propensity to use financial technologies such as peer-to-peer payments, crypto exchanges, and off-shore gambling websites.[2]

Based on evidence gathered during the investigation that led to her conviction, as well as the evidence presented in civil fraud proceedings in Denver District Court, it is more likely than not that  Kimberley solicited currency and crypto from others

---

Michael Tew remained so eligible. *See* ECF Nos. 468, 471.

[2]    Most online gambling is prohibited in the U.S.; however, the evidence would seem to suggest that Kimberley Tew has used VPNs to mask the location of her IP address in order to use gambling websites that are based in other countries.

to invest on their behalf. *See* Gov't Sentencing Statement, ECF No. 459 at 27-29. That same evidence shows that Kimberley convinced those investors that she could earn fantastic returns with a "trading algorithm." In reality, the evidence described in the Government's *James* log, ECF No. 341-1 and set forth in in its sentencing statement, ECF No. 459, show that Kimberley used proceeds from one fraud to pay off another, skimming money from any source she could find to feed a seemingly endless appetite to gamble and to spend.

This means that one of two scenarios applies here: (1) Kimberley has substantial fungible assets available to her that she has been choosing to invest in crypto, rather than paying for her own legal defense; or (2) she has income derived from others' investments which could have been used for that purpose. The origin of these funds, and Kimberley's credibility regarding those assets, should be evaluated carefully by this Court in examining whether she is entitled to CJA-funded counsel going forward and if not, from what source of funds she will pay for private counsel. *See generally Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 626 (1989) (restating general proposition that criminal defendant has no right to use stolen money to pay for private counsel).

In addition to the facts summarized in the government's prior brief, the government has recently learned that an account held with wirex USA in the name of Michael Tew engaged in over $20,000 worth of transactions between the end of November 2023 through the end of March 2024. Those transactions were associated with a variety of online gambling platforms such as stake.com. The fact that this

account was held in Michael Tew's name is significant only insofar as Kimberley has often controlled accounts put in her husband's name, especially when doing so could give her some measure of deniability about her knowledge of and access to those holdings. The gambling activity, however, is entirely consistent with her past behavior and her own confessions that she is gambling addict.

Moreover, the government also points out that the influxes of cash associated with Kimberley's crypto speculation show all the hallmarks of structuring. This, too, is consistent with the couple's past criminal behavior; their knowledge of financial institutions' reporting requirements; and a calculated effort to engage in questionable financial activity in a way intended to avoid the scrutiny of regulators, law enforcement, and pretrial services.

Finally, the banking records from Credit Union of Denver indicate that Kimberley had control or access to the funds being held there as well, including the income earned by Michael. The government notes two purchases made around trial: On February 8, 2024, she purchased $575.60 worth of items at Nordstrom, and on February 13, she spent $1,278.53 at Valentino. Both of these purchases were consistent with apparel she wore at trial. Likewise, large three- and four-figure withdrawals during trial, including through Apple Cash, indicate the same peer-to-peer transactions reminiscent of her transfers of fiat into crypto. These purchases are direct evidence that she retains sufficient discretionary income to pay for a lawyer and are exactly the type of frivolous spending that should be spent on repaying the CJA program, rather than on enriching herself.

## CONCLUSION

The Court indicated in its written decision regarding Michael Tew that it conducted a searching inquiry of his finances, including examination of the supporting documents. The Court convened a three-hour hearing to assess the present state of Michael Tew's finances. The same sort of searching inquiry is required here. For Kimberley, that assessment may be all the more difficult, given her propensity to engage in non-traditional investment activities that obscure both the nature of her income and the necessity of any expenses. The government therefore urges the Court, as part of that inquiry, to require that Kimberley fully disclose the account balances and transactional  history of <u>all</u> her accounts, including those held with peer-to-peer payment systems, crypto exchanges, and off-shore online casinos. Should Kimberley opt not to do so, then the Court would be well within the law and the facts to decide that she cannot meet her burden to show her ongoing eligibility for CJA-funded counsel.

Respectfully submitted this 10th day of April, 2024.

COLE FINEGAN
United States Attorney

By:   */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:   */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

## CERTIFICATE OF SERVICE

I hereby certify that on this 10h day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system that will send notification of such filing to counsel of record in this case.

> s/ Sarah H. Weiss
> Sarah H. Weiss
> Assistant U.S. Attorney
> 1801 California Street, Suite 1600
> Denver, CO 80202
> Telephone 303-454-0100
> Facsimile 303-454-0402
> Sarah.Weiss@usdoj.gov

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com), David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
spoole@wpparalegal.net), Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Lisa Marie Saccomano (lisa.saccomano@kutakrock.com,
trina.rioux@kutakrock.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Sarah Hunter Weiss
(caseview.ecf@usdoj.gov, maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9638206@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Conventionally Submitted
Material
Content-Type: text/html
```

<div align="center">

## U.S. District Court – District of Colorado

### District of Colorado

</div>

**Notice of Electronic Filing**

The following transaction was entered on 4/15/2024 at 1:51 PM MDT and filed on 4/15/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | Dft No. 2 – Kimberley Ann Tew |
| **Document Number:** | 473(No document attached) |

**Docket Text:**
 **Conventionally Submitted Material: 1 USB Drive re [462] Status Conference, by Defendant Kimberley Ann Tew. Location: 1st Floor Area, Box D–5–9. Text Only Entry (trvo, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Susan Prose**

| | |
|---|---|
| Civil Action No: 1:20-cr-00305-DDD-2 | Date: April 15, 2024 |
| Courtroom Deputy: Tram Vo | FTR: Courtroom C205 |

*Parties:*                                                          *Counsel:*

UNITED STATES OF AMERICA,                    *No Appearance*


      Plaintiff,

v.


2.  KIMBERLEY ANN TEW,                         David Scott Kaplan
                                                               Jamie Hughes Hubbard


      Defendant.

---

**COURTROOM MINUTES**

---

**SEALED EX PARTE HEARING**

**1:36 p.m.**        **Court in session.**
**1:36 p.m.**        **Record sealed.**

Court calls case. Appearances of defense counsel.

This Court has been referred the issue of whether Defendant Kimberley Ann Tew[1] remains entitled to ongoing court-appointed counsel pursuant to 18 U.S.C. § 3006A(c). *See* Order, ECF No. 455. The Court hears argument on the referred issue.

As stated on the sealed record, the Court finds that Defendant Kimberley Ann Tew remains eligible for court-appointed counsel. A separate public written order will be issued.

**3:14 p.m.**        **Court in recess.**

Hearing concluded.
Total in-court time: 1 hour and 38 minutes

---

[1] An ex parte hearing regarding Defendant Michael Tew's eligibility for ongoing court-appointed counsel was conducted on March 28, 2024. At that hearing, the Court found that Defendant Michael Tew remains eligible for court-appointed counsel.

*To order transcripts of hearings, please contact either Patterson Transcription Company at (303) 755-4536 or AB Litigation Services at (303) 629-8534.

2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

**Unopposed Motion for Court Order Requiring the Parties to File Visual Presentations into the Record**

---

Kimberley Tew, through attorneys David S. Kaplan and Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC submits this *Unopposed Motion for Court Order Requiring the Parties to File Visual Presentations into the Record*.

During the recently completed trial, all parties utilized visual presentations during opening statement and closing argument. While not "evidence" that the jury is to base its verdict on, statements and arguments made by counsel during closing arguments can be grounds for error. *See e.g., Wilson v. Sirmons*, 536 F.3d 1064, 1117 (10th Cir. 2008) (discussing when a prosecutor's statements during closing argument may constitute error). The same is true for visuals shown to the jury during these arguments. *See Thornton v. Hayes*, 2020 WL 1170507, at *18 (W.D. Wash. Feb. 18, 2020) (addressing whether prosecutor's PowerPoint during closing rose to the level of misconduct). The

visual presentations used by the parties are not presently part of the record for purposes of appeal.

To ensure there is a full record of everything that occurred during trial for purposes of her appeal, Mrs. Tew asks the Court to order the parties to file their visual presentations into the Court's e-filing system.

Dated: April 16, 2024.

Respectfully submitted,

*s/ Jamie Hubbard*

David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
720.689.8909
kaplan@slhlegal.com
hubbard@slhlegal.com

*Attorneys for Kimberley Ann Tew*

2

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), defense counsel notes that this filing has no effect on the speedy trial clock.

*s/ Jamie Hubbard*
Jamie Hubbard

## Certificate of Service

I certify that on April 16, 2024, I electronically filed the foregoing *Unopposed Motion for Court Order Requiring the Parties to File Visual Presentations into the Record* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ *Nancy Hickam*
Nancy Hickam, Paralegal

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, spoole@wpparalegal.net), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jamie Hughes Hubbard
(hickam@slhlegal.com, hubbard@slhlegal.com), Jason Dale Schall (jason@bowsch.com,
jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), Linda A.
McMahan (maureen.carle@usdoj.gov), jroth (josh_roth@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), Probation-General
(cod_efiling@cod.uscourts.gov), USM-Criminal Division (gillian.fleck@usdoj.gov,
royce.namoca@usdoj.gov, scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov,
triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9641443@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 4/16/2024 at 6:46 PM MDT and filed on 4/16/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 476(No document attached) |

**Docket Text:**
 **ORDER granting [475] Motion for Order Requiring the Parties to File Visual Presentations into the Record. The parties are ordered to file all visual presentations used during opening statements and closing arguments into the record. SO ORDERED by Judge Daniel D. Domenico on 4/16/2024. Text Only Entry (dddlc9, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld      rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen      nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan      kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld      rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost      frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall      jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard      hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields      bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss      sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano      lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)      mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler      egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Action No.:  20-cr-00305-DDD

UNITED STATES OF AMERICA,

     Plaintiff,

v.

1. MICHAEL AARON TEW, and

2. KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,

     Defendants.

---

## GOVERNMENT'S CONVENTIONAL SUBMISSION RE: ORDER REQUIRING THE PARTIES TO FILE VISUAL PRESENTATIONS INTO THE RECORD

     The United States of America, by United States Attorney Cole Finegan, through Bryan D. Fields and Sarah H. Weiss, Assistant United States Attorneys, hereby submits the following conventional submission in response to the Court's Order requiring the government to file visual presentations into the record. *See* ECF No. 476.

     This conventional submission is one thumb drive containing one PowerPoint presentation that the Government used during trial's closing statements.

1

Respectfully submitted this 18th day of April, 2024.

COLE FINEGAN
UNITED STATES ATTORNEY

By:    */s/ Bryan D. Fields*
Bryan D. Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:    */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

**CERTIFICATE OF SERVICE**

I hereby certify that on this 18th day of April, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

By:  *s/ Bryan D. Fields*
Assistant United States Attorney
United States Attorney's Office

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

2.      KIMBERLEY ANN TEW,

      Defendant.

---

## ORDER REGARDING DEFENDANT KIMBERLEY ANN TEW'S ELIGIBILITY FOR ONGOING COURT-APPOINTED COUNSEL

---

THIS MATTER came before the court for a determination of the narrow question of Defendant Kimberley Ann Tew's eligibility for ongoing court-appointed counsel pursuant to 18 U.S.C. § 3006A(c) of the Criminal Justice Act of 1964 ("CJA" or "Act"). Judge Domenico referred that question to the undersigned Magistrate Judge by Order dated March 12, 2024. ECF No. 455. Specifically, Judge Domenico stated:

> ORDER re 450 Motion to Detain Defendants Michael and Kimberley Tew. The government's motion questions whether Mr. and Mrs. Tew are still eligible for CJA-appointed counsel for this case. There is sufficient evidence to call into question their present eligibility under 18 U.S.C. § 3006A(c).
>
> **The issue of whether Michael Tew and Kimberley Tew remain entitled to ongoing court-appointed counsel under Section 3006A(c) is therefore REFERRED to Magistrate Judge Susan Prose.** All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential un-sealing of any prior CJA affidavits, will be addressed at a detention hearing before this Court as outlined below.

ECF No. 455 (emphasis added).

On April 15, 2024, the court conducted an ex parte hearing concerning Ms. Tew's entitlement to ongoing court-appointed counsel. *See* Minute Entry for Ex Parte Hearing as to Kimberley Ann Tew, ECF No. 474.[1] Over the course of that hour-and-thirty-eight-minute hearing, the court considered information submitted by Ms. Tew at the hearing, as well as information submitted by the government. *See* ECF No. 466 (notice of Conventionally Submitted Material by the government); ECF No. 472 (Government's Brief Regarding Defendant Kimberley Tew's Ongoing Eligibility for CJA Counsel). The court heard extensive argument from defense counsel and engaged in a lengthy colloquy with counsel. Upon a full consideration of the information available to this court, the undersigned concluded that Ms. Tew remains eligible for court-appointed counsel pursuant to § 3006A(c). *See* ECF No. 474. This order further memorializes that finding.

## I.       Procedural Background[2]

Ms. Tew was indicted on thirteen counts, including counts of wire fraud and conspiracy to commit wire fraud, conspiracy to commit money laundering, and engaging in monetary transactions in property derived from unlawful activity. ECF No. 83, Indictment (filed February

---

[1] In a separate ex parte hearing, the court evaluated whether Defendant Michael Tew remains eligible for ongoing court-appointed counsel and determined that, at this time, he does remain eligible. *See* ECF Nos. 468, 471.

[2] In light of the Tews's status as co-defendants, and the court's charge to evaluate the same issue as to each of them pursuant to the same governing legal principles, the instant order necessarily bears a strong resemblance to the order regarding Mr. Tew. The court emphasizes, however, that it has independently assessed the specific information presented at the Tews's respective hearings.

3, 2021). Ms. Tew did not receive court-appointed counsel in this matter until December 27, 2022. ECF No. 286, Minute Order. On that date, Judge Mix—after reviewing a CJA Form 23 Affidavit submitted by Ms. Tew—found that she qualified for court-appointed counsel. *Id.* (referencing the court's review of the affidavit); *see also* ECF No. 282 (Affidavit) (filed at a level 3 restriction on access). Since then, Ms. Tew continuously has been represented by court-appointed counsel in this case.

On February 15, 2024, following an eight-day jury trial, Ms. Tew was found guilty on twelve of the thirteen counts in the indictment. *See* February 15, 2024 Courtroom Minutes, ECF No. 439 at 3; *see also* February 15, 2024 Jury Verdict Form, ECF No. 448. On February 21, 2024, the government filed a motion seeking detention of both Tews pending their sentencing. ECF No. 450 ("Detention Motion"). Hearings on that question are set for April 22, 2024, before Judge Domenico. ECF Nos. 455. Their sentencing hearings are currently set for August 8, 2024, before Judge Domenico. ECF Nos. 456, 457.

In the Detention Motion, the government did not specifically raise the question of whether the Tews remain entitled to ongoing court-appointed counsel. The Detention Motion, however, did present information "suggest[ing] that the Tews lied on their CJA affidavits," which—the government argues—"constitutes perjury and a mandatory revocation of bond." Detention Motion at 3; *id.* at 4 (summarizing information for a two-year period for an account held in the name of Mr. Tew). Based on that information, Judge Domenico found that "[t]here is sufficient evidence to call into question [the Tews's] present eligibility under 18 U.S.C. 3006A(c)." ECF No. 455. Hence the referral of the present-eligibility question to this court. *See*

3

*id.*

This court held a status conference on March 21, 2024, at which counsel for all parties, and Michael and Kimberley Tew themselves, were present. *See* Minute Entry, ECF No. 462. At the status conference, the court discussed its plan to conduct two separate ex parte hearings (one for Kimberley Tew and the other for Mr. Tew) during which the court would decide the present-eligibility question for each Defendant. Counsel for all parties agreed to the proposed procedure.[3]

As noted above, the ex parte hearing to evaluate the question of Ms. Tew's ongoing

---

[3] The CJA itself is silent about disclosure of information concerning a defendant's eligibility for CJA status. *See United States v. Gonzales*, 150 F.3d 1246, 1265 (10th Cir. 1998) ("Neither the statute nor the Administrative Office's rules specify whether [the procedure regarding appointment of counsel] is to be done ex parte."). *The Guide to Judiciary Policy* issued by the Administrative Office of the United States Courts ("AO Guide"), which governs the administration of the CJA, states that, "generally," such information "should be made available unless it: (a) is judicially placed under seal; (b) could reasonably be expected to unduly intrude upon the privacy of attorneys or defendants; (c) could reasonably be expected to compromise defense strategies, investigative procedures, attorney work product, the attorney-client relationship or privileged information provided by the defendant or other sources; (d) or otherwise adversely affect the defendant's right to the effective assistance of counsel, a fair trial, or an impartial adjudication." AO Guide, vol. 7, chap. 5, § 510.30, available at Criminal Justice Act (CJA) Guidelines - Guide to Judiciary Policy, Vol. 7A (uscourts.gov). The court also takes into account here the Tenth Circuit's holding in *Gonzales*, in which the Court of Appeals concluded that backup documentation for CJA vouchers, motions, orders, and hearing transcripts related to the appointment of counsel should be sealed, in part, because disclosure of this CJA information would intrude on the defendants' privacy interests and "may implicate the Defendants' Fifth Amendment rights as to the instant crime." *See* 150 F.3d at 1265-66 (finding that district court abused its discretion in ordering unconditional release of these documents). Taking into account the totality of the circumstances here, this court deemed it appropriate to conduct the hearings ex parte.

4

eligibility for court-appointed counsel proceeded on April 15, 2024. In advance of that hearing,

the parties were permitted to submit materials for the court's consideration. Ms. Tew submitted

materials at the hearing. The government submitted both materials and briefing. *See* ECF Nos.

466, 472; *see also* ECF No. 465 (Brief Regarding Defendants' Ongoing Eligibility for CJA

Counsel, ECF No. 465 at 9-12 (discussing transaction activity in accounts and peer-to-peer

platforms attributed to Kimberley Tew).

The court now turns to the hearing and its assessment of the evidence, bearing in mind

the ex parte nature of that proceeding and the necessity to confine the language of this order to a

high, non-specific level.

## II.    Analysis

The Act provides that counsel should be appointed in any criminal case in which the

defendant is "financially unable" to obtain counsel pursuant to a plan implemented by each

district court. 18 U.S.C. §§ 3006A(a) & (b); *see also* Criminal Justice Act Plan, United States

District Court for the District of Colorado, available at CJA_Plan_2019.pdf (uscourts.gov)

(effective January 1, 2020). The Act permits the court to terminate the appointment of counsel if

the court finds the defendant is able to afford legal counsel, but it does not require the court to do

so: "[I]f at any time after the appointment of counsel the United States magistrate judge or the

court finds that the person is financially able to obtain counsel . . ., it *may* terminate the

appointment of counsel or authorize payment as provided in [18 U.S.C. § 3006A(f)], as the

interests of justice may dictate." 18 U.S.C. § 3006A(c) (emphasis added).

In assessing whether a defendant is financially unable to obtain counsel, this court is

obliged to make an "appropriate inquiry." 18 U.S.C. § 3006A(b). "Appropriate inquiry

necessarily varies with the circumstances presented, and no one method or combination of

methods is required. Investigation of the applicant's assets, liabilities, income and obligations

alone may constitute sufficient inquiry." *United States v. Barcelon*, 833 F.2d 894, 897 (10th Cir.

1987) (footnote and citations omitted). The court focuses on the defendant's current ability to

pay. *United States v. Anthony*, No. 15-CR-126-C-5, 2018 WL 1866614, at *3 (W.D. Okla. Mar.

26, 2018) (noting that courts have interpreted 18 U.S.C. §§ 3006A(c) and (f) "to require a finding

that the criminal defendant has a *present* ability to pay for his attorney, not that he may have, at

some point in the past, had that ability") (emphasis in original) (collecting cases).

"The burden is on the defendant to demonstrate financial inability in order to obtain

counsel." *United States v. Peister*, 631 F.2d 658, 662 (10th Cir. 1980); *see also Barcelon*, 833

F.2d at 896 (same) (collecting cases); *Anthony*, 2018 WL 1866614, at *2 (finding that defendant

bore the burden "to prove, by a preponderance of the evidence, that he is financially unable to

afford counsel," but recognizing the lack of Tenth Circuit authority on the precise level of the

burden). But "[a]ny doubts about a person's eligibility should be resolved in the person's favor;

erroneous determinations of eligibility may be corrected at a later time." AO Guide vol. 7A,

Appx. 2A, § IV.B.2.e.

Guided by these legal principles, the court finds that Ms. Tew has met her burden to show

that she is entitled, at the present time, to court-appointed counsel. In reaching this conclusion,

the court has considered extensive information. The court has evaluated information concerning

Ms. Tew's income, property, and financial accounts, as well as her obligations, expenses, and

6

debts—including expenses for housing, food, medical care, utilities, credit cards, a vehicle, childcare, and insurance. Moreover, the court has taken into account Ms. Tew's very substantial liabilities. The court also has reviewed the information provided by the government.

In addition, the court has reviewed the financial affidavit provided by Ms. Tew on December 13, 2022, which informed Judge Mix's assessment that Ms. Tew was entitled to CJA counsel at that time. *See* ECF No. 282 (affidavit); ECF No. 286 ("Having reviewed the Affidavits [#282] timely submitted by Defendants Michael A. Tew and Kimberly [sic] A. Tew, the Court finds that they qualify for court-appointed counsel."). This court likewise recognizes that its current assessment is focused on Ms. Tew's present ability to pay under § 3006A(c). Nevertheless, the court wishes to be clear that it has examined the December 13, 2022 affidavit, which is part of the record in this matter, and that the information contained in that affidavit does not alter the court's conclusion regarding Ms. Tew's entitlement to ongoing court-appointed counsel. The court finds that, based on the information before this court (including information obtained at the ex parte hearing), Ms. Tew is "in no better financial condition to afford an attorney than [s]he had been when he completed the initial financial affidavit" on December 13, 2022. *See Anthony*, 2018 WL 1866614, at *3.

For the foregoing reasons, the court respectfully finds that Defendant Kimberley Ann Tew qualifies, **at this time**, for ongoing court-appointed counsel pursuant to 18 U.S.C. § 3006A(c) of the Criminal Justice Act.

7

DATED: April 19, 2024                    BY THE COURT:

Susan Prose
United States Magistrate Judge

8

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com), David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
spoole@wpparalegal.net), Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Lisa Marie Saccomano (lisa.saccomano@kutakrock.com,
trina.rioux@kutakrock.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Sarah Hunter Weiss
(caseview.ecf@usdoj.gov, maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9646376@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Conventionally Submitted
Material
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 4/19/2024 at 1:52 PM MDT and filed on 4/18/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | USA |
| **Document Number:** | 479(No document attached) |

**Docket Text:**
 **Conventionally Submitted Material : USB exhibits to [477] NOTICE OF CONVENTIONAL SUBMISSION re [476] Order on Motion for Order, by Plaintiff USA – Material placed in the oversized area D–5–9 of the Clerk's Office. Text Only Entry (angar, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

　　Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

　　Defendant.

## Motion to Restrict Pleading

　　Kimberley Tew, through attorneys David S. Kaplan and Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC hereby respectfully moves to restrict ECF No. 482 and the brief filed in support of this motion, for the reasons stated in the brief filed in support of this motion. Mrs. Tew requests a "Level I" restriction, which would make the documents viewable by all parties and the Court.

　　Dated: April 21, 2024.

Respectfully submitted,

s/ Jamie Hubbard

David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
720.689.8909
kaplan@slhlegal.com
hubbard@slhlegal.com

Attorneys for Kimberley Ann Tew

**Certificate of Service**

I certify that on April 16, 2024, I electronically filed the foregoing *Motion to Restrict Pleading* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ *Nancy Hickam*
Nancy Hickam, Paralegal

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**JUDGE DANIEL D. DOMENICO**

---

| Date: | April 22, 2024 | Prob./Pret.: | Seth Junker |
|-------|----------------|--------------|-------------|
| Courtroom Deputy: | Robert R. Keech | Interpreter: | N/A |
| Court Reporter: | Tammy Hoffschildt | | |

---

Criminal Case No. **1:20-cr-00305-DDD**          Counsel:

UNITED STATES OF AMERICA,                        Bryan D. Fields
                                                 Sarah H. Weiss
                  Plaintiff,

v.

1. MICHAEL AARON TEW;                            Jason D. Schall
and                                              Kristen M. Frost
2. KIMBERLEY ANN TEW,                            David S. Kaplan
                                                 Jamie H. Hubbard
                  Defendants.

---

**COURTROOM MINUTES**

---

**DETENTION HEARING**

**10:30 a.m.    Court in session.** Defendants present, on bond.

Appearances of counsel.

Court's opening remarks.

Discussion regarding witnesses to be called and objection by Mr. Kaplan.

[450] Government's Motion for Detention Pending Sentencing is raised for argument.

1

| | |
|---|---|
| 10:50 a.m. | Government's witness **Seth Junker** sworn. |
| | Direct examination by Government by Ms. Weiss. |
| 11:03 a.m. | Cross examination by Defendant Michael Aaron Tew by Mr. Schall. |
| 11:08 a.m. | Cross examination by Defendant Kimberley Ann Tew by Mr. Kaplan. |
| 11:12 a.m. | Re-direct examination by Government by Ms. Weiss. |
| 11:15 a.m. | Government's witness **Lisa Palmer** sworn. |
| | Direct examination by Government by Ms. Weiss. |
| | ***Exhibit(s) identified: 2, 9, 10, 8, 7, 6, 3, 5, 11, 1, 12*** |

**Exhibit(s) 2 RECEIVED.**

| | |
|---|---|
| 12:08 p.m. | Bench conference regarding issue raised by Mr. Schall. |
| **12:12 p.m.** | **Court in recess.** |
| **12:28 p.m.** | **Court in session.** |
| | Government's witness **Lisa Palmer** resumes. |
| 12:29 p.m. | Cross examination by Defendant Michael Aaron Tew by Ms. Frost. |
| 12:37 p.m. | Cross examination by Defendant Kimberley Ann Tew by Ms. Hubbard. |
| 12:47 p.m. | Re-direct examination by Government by Ms. Weiss. |
| | ***Exhibit(s) identified: 2*** |
| 12:52 p.m. | Government rests. |
| 12:58 p.m. | Statement by Mr. Junker regarding additional conditions that could be imposed. |

Argument by Ms. Weiss, Ms. Hubbard, Mr. Schall.

**ORDERED:**   [450] Government's Motion for Detention Pending Sentencing is **DENIED**, but the Court will impose additional conditions of bond.

2

Court indicates that a written order shall follow.

**ORDERED:**  Bond is **CONTINUED** as to Defendants Michael Aaron Tew and Kimberley Ann Tew.

**1:21 p.m.**  **Court in Recess. <u>HEARING CONCLUDED.   TOTAL TIME:   2:29</u>**

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

## Judge Daniel D. Domenico

Case No.     20-cr-305-DDD          Date:     April 22, 2024

Case Title:     *United States v. Michael Tew, et al.*

### GOVERNMENT'S WITNESS LIST FOR DETENTION HEARING
(**Plaintiff**/Defendant)

| WITNESS | ESTIMATED DATE(S) AND LENGTH OF TESTIMONY |
|---|---|
| Seth Junker, U.S. Probation Office | ① 4/22/24, 10:50am. 15 minutes (direct) |
| Lisa Palmer, IRS | ② 4/22/24, 11:15am. 45 minutes (direct) |

CASE CAPTION:  United States v. Tew, et al.

DETENTION HEARING, April 22, 2024

CASE NO.: 20-cr-305-DDD

| Exhibit | Witness | Brief Description | Stipulation | Offered | Admitted | Refused | Court Use Only |
|---------|---------|------------------|-------------|---------|----------|---------|----------------|
| 1 | Palmer | Spreadsheet of Block financial records | | | | | |
| 2 | Palmer | Credit Union of Denver financial records | | X | X 4/22 | | |
| 3 | Palmer | Evolve Bank financial records | | | | | |
| 4 | | Spreadsheet of Evolve Bank financial records | | | | | |
| 5 | Palmer. | PayPal financial records | | | | | |
| 6 | Palmer | Spreadsheet of PayPal financial records | | | | | |
| 7 | Palmer. | Spreadsheet of PNC Bank financial records | | | | | |
| 8 | Palmer. | Spreadsheet of Robinhood financial records | | | | | |
| 9 | Palmer. | Robinhood person report for Michael Tew | | | | | |
| 10 | Palmer. | Robinhood person report for Kimberley Tew | | | | | |
| 11 | Palmer. | Spreadsheet of Stride Bank financial records | | | | | |
| 12 | Palmer. | Spreadsheet of ZeroHash financial records | | | | | |

1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

    Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

    Defendant.

---

**Kimberley Tew's Notice of Filing of Visual Presentation**

---

Kimberley Tew, through attorneys David S. Kaplan and Jamie Hubbard of the

law firm Stimson LaBranche Hubbard, LLC hereby submits the following PowerPoint

presentation that Kimberley Tew's counsel used during trial's closing statements.

Dated: April 23, 2024.

Respectfully submitted,

*s/ Jamie Hubbard*

David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
720.689.8909
kaplan@slhlegal.com
hubbard@slhlegal.com

*Attorneys for Kimberley Ann Tew*

**Certificate of Service**

I certify that on April 23, 2024, I electronically filed the foregoing *Kimberley Tew's Notice of Filing of Visual Presentation* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

*s/ Nancy Hickam*
Nancy Hickam, Paralegal

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 3 | MICHAEL AARON TEW JONATHAN YIOULOS | October 26, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 4 | MICHAEL AARON TEW JONATHAN K. YIOULOS | October 30, 2018 | $10,000 | Wire transfer from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 5 | MICHAEL AARON TEW JONATHAN K. YIOULOS | November 20, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to Regions Bank account ending in 4514, held in the name of M.M. |
| 6 | MICHAEL AARON TEW JONATHAN K. YIOULOS | November 27, 2018 | $30,000 | ACH transaction from Signature Bank account ending in 5529 to BBVA Compass account ending in 0007, held in the name of M.M. |

| Count | Defendant | Approx. Date | Approx. Amount | Transaction |
|---|---|---|---|---|
| 8 | MICHAEL AARON TEW JONATHAN K. YIOULOS | February 8, 2019 | $15,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 9 | MICHAEL AARON TEW JONATHAN K. YIOULOS | February 20, 2019 | $15,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 10 | MICHAEL AARON TEW JONATHAN K. YIOULOS | March 29, 2019 | $38,000 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| 11 | MICHAEL AARON TEW JONATHAN K. YIOULOS | April 4, 2019 | $11,250 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8486, held in the names of Michael Tew and Kimberley Tew |
| | | | | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 8336, held in the name of Michael Tew |

## Kimberley Tew Not Named in Counts 2-20



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**1004**

## Payments of Fraudulent Invoices by NAC between August 2018 and July 2020

| Company | 2018 | | 2019 | | | | 2020 | | | Grand Total |
|---|---|---|---|---|---|---|---|---|---|---|
| | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | Qtr4 | Qtr1 | Qtr2 | Qtr3 | |
| Hanna Scaife CPA | $ 50,000.00 3 Payments | | | | | | | | | $ 50,000.00 |
| 5530 Jessamine Development | $ 75,000.00 5 Payments | $ 30,000.00 1 Payment | | | | | | | | $ 105,000.00 |
| Meyers Consulting Group | | $110,125.00 5 Payments | | | | | | | | $ 110,125.00 |
| Political Media | | $ 21,250.00 1 Payment | $267,962.50 11 Payments | $551,665.00 22 Payments | $ 59,675.00 4 Payments | | | | | $ 900,552.50 |
| Global Fuel Logistics | | | | | $446,000.00 14 Payments | | | $ 847,338.00 12 Payments | $95,000.00 1 Payment | $ 1,388,338.00 |
| Aero Maintenance Resources | | | | | $329,200.00 8 Payments | $810,500.00 22 Payments | $682,055.00 22 Payments | $ 648,108.00 10 Payments | | $ 2,469,863.00 |
| Grand Total | $125,000.00 | $161,375.00 | $267,962.50 | $551,665.00 | $834,875.00 | $810,500.00 | $682,055.00 | $1,495,446.00 | $95,000.00 | $ 5,023,878.50 |

No Charges Against Kimberley Tew

| 21 | MICHAEL AARON TEW  KIMBERLEY ANN TEW  JONATHAN K. YIOULOS | October 25, 2019 | $43,000.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 2064, held in the name of Global Fuel Logistics, Inc. |
|----|-----------------------------------------------------------|------------------|------------|------------------------------------------------------------------------------------------------------------------------------------------------|
| 22 | MICHAEL AARON TEW  KIMBERLEY ANN TEW  JONATHAN K. YIOULOS | November 1, 2019 | $49,750.00 | ACH transaction from Signature Bank account ending in 5545 to Wells Fargo account ending in 6934, held in the name of Sand Hill, LLC |

| 25 | MICHAEL AARON TEW  KIMBERLEY ANN TEW  JONATHAN K. YIOULOS | December 3, 2019 | $9,550.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
|----|-----------------------------------------------------------|------------------|-----------|-----------------------------------------------------------------------------------------------------------------------------------------------|
| 26 | MICHAEL AARON TEW  KIMBERLEY ANN TEW  JONATHAN K. YIOULOS | December 12, 2019 | $24,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |

# All Transfers to Michael's Bank Accounts

| 31 | MICHAEL AARON TEW  KIMBERLEY ANN TEW  JONATHAN K. YIOULOS | March 10, 2020 | $35,000.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |
|----|-----------------------------------------------------------|----------------|------------|-----------------------------------------------------------------------------------------------------------------------------------------------|
| 32 | MICHAEL AARON TEW  KIMBERLEY ANN TEW  JONATHAN K. YIOULOS | March 20, 2020 | $22,500.00 | ACH transaction from Signature Bank account ending in 5545 to Navy Federal Credit Union account ending in 5336, held in the name of Michael Tew |



# Instruction 20
## Conspiracy – Agreement & Interdependence Defined

Proof is not sufficient if it merely shows that a defendant knew about the existence of the conspiracy or was associated with members of the conspiracy. Rather, the evidence must show the defendant knowingly joined the conspiracy with the intent to advance its purposes.

# Count 43 - $15k Withdrawal from Joint Account (x8486)



To: jyioulos@nationalaircargo.com[jyioulos@nationalaircargo.com]
From: Political Media
Sent: Wed 7/3/2019 8:38:56 AM
Subject: Invoice From Political Media, Inc.
Invoice_7312_Political Media.pdf

Political Media, Inc.
Navy Federal Credit Union
Vienna, VA 22180
ABA: 256074974
Account: 7085338486

d MRO Resource                                    $91,000.00

TOTAL DUE                          $9,500.00

Withdrawal on June 11 –
22 days BEFORE fake invoice submitted

# Count 44 - $22k Withdrawal by Michael Tew

**To:** ivioulos@nationalaircargo.com[ivioulos@nationalaircargo.com]
**From:** Accounting Person
**Sent:** Thur 8/29/2019 8:20:47 PM
**Subject:** Invoices from Global Fuel Logistics, Inc

GFL - Invoice 1020 National Airlines.pdf
GFL - Invoice 1011 National Airlines.pdf
GFL - Invoice 1001 National Airlines.

Dear Jon:

Attached are the remainder of the

Thank you for your business!

Jessica Thompson
Global Fuel Logistics, Inc.

**GLOBAL FUEL LOGISTICS, INC**
Fuel Management / Maintenance / Consultation

**INVOICE**

101 W Big Beaver Road
Troy, MI 48084
Accounting@globalfuel.co

INVOICE #1023
DATE: AUGUST 29, 2019

**TO:**
National Airlines
5955 TG Lee Blvd
Orlando, FL 32822
(407) 313-2255

| QUANTITY | DESCRIPTION | UNIT PRICE | TOTAL |
|---|---|---|---|
| 1 | Trailing Edge Flap Maintenance Review | $90,000 | $90,000 |
| | 50% Deposit Due | | ($45,000) |

# Count 44 - $22k Withdrawal by Michael Tew

## Wells Fargo Simple Business Checking

August 31, 2019  ▪  Page 1 of 8



SAND HILL, LLC
3222 E 1ST AVE APT 224
DENVER CO 80206-5842

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS**  (1-800-225-5935)

*TTY:* 1-800-877-4833

| 8/22 | National Air ACH 190822 Shi LLC | 28,000.00 |
|------|----------------------------------|-----------|

# Count 44 - $22k Withdrawal by Michael Tew

# Count 44 - $22k Withdrawal by Michael Tew



+19174462046 Kimberley Tew

Sam has cash deposit for 2.5% around $17.5K at Bank of America

Status: Read
Read: 8/28/2019 6:18:36 PM(UTC+0)

Kimberley Tew's only link to Count 44 is this communication

# Count 47 - $15k Wire by Michael Tew

**To:** jyioulos@nationalaircargo.com[jyioulos@nationalaircargo.com]
**From:** Accounting Person
**Sent:** Fri 10/11/2019 2:32:43 AM
**Subject:** Invoices From Aero Maintenance Resources

GFL - AMR - Invoice 697 National Airlines.pdf
GFL - AMR - Invoice 634 National Airlines.pdf
GFL - AMR - Invoice 627 National Airlines.pdf

Dear Jon:

Attached are our service and

Please contact me if you hav

Thank you

Jessica Thompson
Aero Maintenance Resource
A Unit of Global Fuel Logist

**AERO MAINTENANCE RESOURCES**
*A Division of Global Fuel Logistics, Inc.*

101 W Big Beaver Road
Troy, MI 48084
Accounting@globalfuel.co

**TO:**
National Airlines
5955 TG Lee Blvd
Orlando, FL 32822
(407) 313-2255

**INVOICE**

INVOICE #634
DATE: September 10, 2019

# Count 47 - $15k Wire by Michael Tew

**Wells Fargo Simple Business Checking**

September 30, 2019 ▪ Page 1 of 7



Questions?

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833

SAND HILL, LLC
3222 E 1ST AVE APT 224
DENVER CO 80206-5842

| | |
|---|---|
| National Air ACH 190918 Shi LLC | 33,500.00 |
| Wire Trans Svc Charge - Sequence: 190918055762 Srf# Ow00000544181399 Trn#190918055762 Rfb# Ow00000544181399 | 30.00 |
| WT Fed#06360 Jpmorgan Chase Ban /Ftr/Bnf=Mora Consulting LLC Srf# Ow00000544181399 Trn#190918055762 Rfb# Ow00000544181399 | 15,000.00 |

# Count 47 - $15k Wire by Michael Tew



GOVERNMENT EXHIBIT
20-cr-00305-DDD
45

# Count 47 - $15k Wire by Michael Tew

Kimberley Tew's only link to Count 47 is communications



+19176697473 M T

Mora emailed just now he is ok with the 14K

Status: Read
Delivered: 9/18/2019 2:26:42 PM(UTC+0)
Read: 9/18/2019 2:26:42 PM(UTC+0)

9/18/2019 2:26:29 PM(UTC+0)



+19174462046 Kimberley Tew

Your email went into his spam

Status: Read

9/18/2019 2:26:51 PM(UTC+0)

# Count 48 - $20k Withdrawal by Michael Tew

**To:** jyioulos@nationalaircargo.com[jyioulos@nationalaircargo.com]
**From:** Accounting Person
**Sent:** Fri 10/11/2019 2:32:43 AM
**Subject:** Invoices From Aero Maintenance Resources

GFL - AMR - Invoice 697 National Airlines.pdf
GFL - AMR - Invoice 634 National Airlines.pdf
GFL - AMR - Invo

**AERO MAINTENANCE RESOURCES**
*A Division of Global Fuel Logistics, Inc.*

**INVOICE**

101 W Big Beaver Road
Troy, MI 48084
Accounting@globalfuel.co

INVOICE #697
DATE: September 15, 2019

**TO:**
National Airlines
5955 TG Lee Blvd
Orlando, FL 32822
(407) 313-2255

# Count 48 - $20k Withdrawal by Michael Tew

## Wells Fargo Simple Business Checking

September 30, 2019  ▪  Page 1 of 7



SAND HILL, LLC
3222 E 1ST AVE APT 224
DENVER CO 80206-5842

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted
**1-800-CALL-WELLS**  (1-800-225-5935)
TTY: 1-800-877-4833
*En español:* 1-877-337-7454

| National Air ACH 190926 Shi LLC | 52,750.00 |
|---|---|

# Count 48 - $20k Withdrawal by Michael Tew



**Withdrawal/Retiro:**

3802  WELLS FARGO

(Check One/ Marque una) ☒ Checking/Cuenta de Cheques  ☐ Savings/Ahorros  ☐ Money Market Access  ☐ Command

Account Number/ Número de cuenta

∗ 75963 76934   Date/Fecha  9|26|19

Please print name -/Letra de imprenta: Nombre

**michael Tew**

Please print Street Address, City, State, Zip Code/ Letra de imprenta: Domicilio, Ciudad, Estado, Código Postal

I authorize this withdrawal from the account listed above. / Autorizo este retiro de la cuenta mencionada arriba.  Please sign in teller's presence for cash back. / Firme en la presencia del (de la) cajero(a) para el retiro de dinero en efectivo. Two forms of ID may be required / Se podrían requerir dos tipos de identificación.

X

**twenty thousand 00/100**

Bank Use Only (When SVT is Not Available)   TLR92D (04/15)  9F011s  90072801

| Customer Id: | Exp. date: | Token Verified (✓) ☐ | Approval: |
|---|---|---|---|

∗∗3602∗∗  ⑊500000694⑊

Kimberley Tew's only link to Count 48 is communications

# Count 56 - $20k Withdrawal by Michael Tew

**To:** jyioulos@nationalaircargo.com[jyioulos@nationalaircargo.com]
**From:** Accounting Person
**Sent:** Mon 5/4/2020 6:18:11 PM
**Subject:** Invoice for Aero Maintenance Resources 2 March 2020

GFL - AMR - Invoice 3101 National Airlines.pdf

Dear Jon:

Attached is our corrected invoice for Aero Maintenance Resources for 2 March 2020.

Please contact me

Thank you

Jessica Thompson
Aero Maintenance
A Unit of Global F

**AERO MAINTENANCE RESOURCES**
*A Division of Global Fuel Logistics, Inc.*

101 W Big Beaver Road
Troy, MI 48084
Accounting@globalfuel.co

**TO:**
National Airlines
5955 TG Lee Blvd
Orlando, FL 32822
(407) 313-2255

**INVOICE**

INVOICE #3101
DATE: MARCH 2, 2020

# Count 56 - $20k Withdrawal by Michael Tew

**Wells Fargo Simple Business Checking**

August 31, 2019 ▪ Page 1 of 8



SAND HILL, LLC
3222 E 1ST AVE APT 224
DENVER CO 80206-5842

**Questions?**

*Available by phone 24 hours a day, 7 days a week:*
Telecommunications Relay Services calls accepted

**1-800-CALL-WELLS** (1-800-225-5935)

*TTY:* 1-800-877-4833
*En español:* 1-877-337-7454

*Online:* wellsfargo.com/biz

*Write:* Wells Fargo Bank, N.A. (163)
P.O. Box 6995
Portland, OR 97228-6995

National Air ACH 200303 Global Fuel Logistics                    36,555.00

# Count 56 - $20k Withdrawal by Michael Tew



Kimberley Tew's only link to Count 56 is communications

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

Plaintiff,

v.

1. **MICHAEL AARON TEW**;

2. KIMBERLY ANN TEW; and
   a/k/a Kimberley Vertanen

3. JONATHAN K. YIOULOS,

Defendants.

---

## MICHAEL TEW'S NOTICE OF FILING OF VISUAL PRESENTATION

---

Michael Tew, by and through counsel Kristen M. Frost of Ridley McGreevy & Winocur and Jason D. Schall of Bowlin & Schall, hereby submits the following PowerPoint presentation that Michael Tew's counsel used during closing argument at trial. No visual presentation was used during Mr. Tew's opening statement.

Respectfully submitted this 24th day of April, 2024.

<div style="margin-left:40%">

*s/ Kristen M. Frost*
Kristen M. Frost
RIDLEY, MCGREEVY & WINOCUR, P.C.
303 16th Street, Suite 200
Denver, Colorado  80202
Telephone:  (303) 629-9700
Facsimile:  (303) 629-9702
E-mail:   frost@ridleylaw.com

</div>

s/ *Jason D. Schall*
Jason D. Schall
BOWLIN & SCHALL LLC
7350 E. Progress Place, Suite 100
Telephone:  (720) 505-3861
E-mail:   jason@bowsch.com

*Attorneys for Defendant Michael Tew*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of April, 2024, I served a true and correct copy of the foregoing **MICHAEL TEW'S NOTICE OF FILING OF VISUAL PRESENTATION** electronically with the Clerk of the Court via the CM/ECF system, which will send notice of such filing to the Court and parties.

*s/ Kristin McKinley*
Kristin McKinley

# *United States v. Michael Tew*

### *The rest of the story.*



# "This Case Is CRAZY"

| | | | |
|---|---|---|---|
| Gambling / Bitcoin | Algorithms | Prostitution | Drugs |
| "Conspiracy" | A fake wedding? | Blackmail / Threats | Money laundering – spending. |
| Vulgarity | "More sad than mad." | Peter Pan Donuts from Brooklyn, NY. | Manipulation |

# Complicated - Cooperator





**Jonathon Yioulos**

# "Conspiracy"

Mr. Fields used the word "conspiracy" numerous times in his questions of Mr. Yioulos.



# "Conspiracy"

Remember: As part of this testimony, Mr. Yioulos used the word "conspiracy" a total of 64 times.

Magically, after being cross examined on this and taking a lunch break where he was observed talking to his attorney, a former federal prosecutor, Mr. Yioulos decided to stop using the word conspiracy.

Why?  "I just decided to say "this," instead.

**Jonathan Yioulos took an oath, sat in the witness box, and lied to you just to hide the government's narrative…**

# "Conspiracy"

```
22  │Q    Is Michael stupid?

23  │A    Depends I mean ... to expect myself, and as a part of this ...

24  │ACH and sending money out of National, over 5 million dollars

25  │worth, Michael, Kimberley, myself, think we are all stupid for

 1  │that.

 2  │Q    When you paused there, were you about to say as part of

 3  │this conspiracy?

 4  │A    Yes.

 5  │Q    Why didn't you?

 6  │A    I just said this, instead.
```

# "Coming Clean"

```
11  Q    No.  So when you told this jury that you, yesterday, that

12  you were at a point that I needed to come clean about

13  everything, what you meant was come clean about Michael Tew and

14  Kimberley Tew?

15  A    Of course.

16  Q    Not come clean about Jon the fraudster preMichael and

17  Kimberley Tew?

18  A    Yes.
```

7

# Yioulos' Prior Thefts



Key Silver Money Market Savings
Statement

*November 17, 2017*

### Deposits

| Date | Description | | | Amount |
|------|-------------|--|--|--------|
| 10-30 | Direct Deposit | Nach Inc | ACH | $3,334.62 |
| 11-17 | Direct Deposit, | Venmo | Cashout | 2,500.00 |
| Total | | | | $5,834.62 |

### Withdrawals

| Date | Description | | | Amount |
|------|-------------|--|--|--------|
| 10-23 | Direct Withdrawal | Capital One | Mobile Pmt | $100.00 |
| 11-1 | Direct Withdrawal | Capital One | Mobile Pmt | 2,761.82 |
| 11-6 | Direct Withdrawal | Capital One | Mobile Pmt | 572.80 |
| Total | | | | $3,434.62 |

## Key Silver Money Market Savings Statement

## November 17, 2017

### Deposits

| Date | Description | | Amount |
|------|-------------|--|--------|
| 3-9 | Direct Deposit, Nach Inc | ACH | $7,978.99 |
| Total | | | $7,978.99 |

### Withdrawals

| Date | Description | | Amount |
|------|-------------|--|--------|
| 3-12 | Direct Withdrawal, Venmo | Payment | $100.00 |
| 3-12 | Direct Withdrawal Capital One | Mobile Pmt | 5,732.78 |
| 3-19 | Direct Withdrawal, Venmo | Payment | 580.00 |
| 3-19 | Direct Withdrawal, Venmo | Payment | 1,564.00 |
| Total | | | $7,976.78 |



KEY_00000980

# Yioulos' Deal with the Prosecution

This cooperation will include, but is not limited to, the following:

1) The defendant agrees to be fully debriefed, and to attend all meetings at which his presence is requested, concerning his participation in and knowledge of all criminal activities.

2) The defendant agrees to affirmatively furnish to the government all documents and other material that may be relevant and that are in the defendant's possession or control.

3) The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

3

GOVERNMENT
EXHIBIT
20-cr-00305-DDD
**527**

# Yioulos' Deal with the Prosecution

throughout the time period of the scheme, YIOULOS netted a few Bitcoin from or associated with MICHAEL AARON TEW and/or KIMBERLEY ANN TEW as compensation for his role in this conspiracy and scheme. YIOULOS then sold that Bitcoin that he netted for approximately $100,000. MICHAEL AARON TEW and KIMBERLEY ANN TEW provided YIOULOS no additional significant forms of compensation. YIOULOS also separately caused the Victim Company to make payments for services not actually rendered to the Victim Company to him, or a third party for his and the third-party's benefit. The amount of those additional payments is at least approximately $60,000.

14

Plea agreement, not drafted by Yioulos, fails to mention when Yioulos started defrauding NAC – before the allegations in this case began.



GOVERNMENT
EXHIBIT
20-cr-00305-DDD
527

# Jonathon Yioulos





A "wedding," which did not result in a marriage.

# Yioulos is a bad liar

Government's Exhibit 975
Consensual call with Michael Tew
July 8, 2020

| | |
|---|---|
| TEW: | You mean they actually put the last name on there too? |
| YIOULOS: | Yeah. |
| TEW: | They never do that. |



# Witness Credibility





**You should consider the testimony of Jonathan Yioulos with "caution and weigh it with great care" – more so than the testimony of an ordinary witness.**

# Jon the Fraudster

One of two people in this case that said they deleted evidence (i.e destroyed text messages).

Saved Michael Tew in his phone as "JB"

Certified Public Accountant (CPA): an expert at "cooking the books."



# Abby Schwartz

"off the top of my head, *no one but Yioulos could have set this fraud up*"

```
15 │ A   I was like -- sorry.  It was very discouraging.  You're
16 │ friends with someone -- I'm sorry.  You are friends with
17 │ someone, and this is kind of what they do.  It was
18 │ heartbreaking to be honest.
```

15

# *The story behind the Indictment*

Have you figured it out yet?

The government investigated Michael Tew, only to find that Kimberley Tew was the one "driving" the activities.

But even in Mr. Yioulos' plea agreement, they don't want you to see that. They don't want to remind you of that…

Why?

# Who got what?

Jonathan Yioulos
(1) Bitcoin, which he said in his plea agreement that he sold for $100,000.00.
(2) Plus, his pre-allegations fraud on NAC, which he admitted involved at least $60,000.00.
(3) "First one to talk to us is going to get the best deal."

Kimberley Tew
(1) Control
(2) Proceeds to feed her gambling addictions – including her Bitcoin algorithm
(3)  Yet only 13 charges against her…

17

# <u>Who got what?</u>

<u>Christopher Alf + National Air Cargo</u>
(1) Reimbursed by insurance (except as to the AMEX charges), yet the government wants you to believe that Michael Tew caused the Company deep financial harm…



*"War is great for the Company…" - Jonathan Yioulos*

# <u>Who got what?</u>



<u>Michael Tew</u>
(1)  59 counts.



*Fired from his job after his wife abused his corporate credit card.

*The only person charged with willfully failing to file taxes.
        -Not Jonathan Yioulos.
        -Not Kimberley Tew.
        -Not Michael Meyers.

*Greater than 4x the number of charges as Kimberley Tew (only 13 counts).

**13 + 13 + 13 + 13 = 52.**

# Mrs. Tew's Influence

**Testimony every lay witness that Mrs. Tew manipulated or bullied them:**

(1) **Jonathan Yioulos**
   *Blocked her number(s).
   *Threatened.
   * "In the background screaming at the top of her lungs…"
(2) **Hannah Scaife**
   * "Used" by Kimberley Tew to "look good."
   * Blamed Kimberley Tew for her own poor choices, including violating
   the law.
(3) **Abby Schwartz**
   *Berated on the phone and had to demand that she not have to speak to
   Mrs. Tew ever again.
(4) **Michael Meyers**
   *Under Mrs. Tew's "spell" in breaking the law.
(5) **Brittany Perry, Navy Federal Credit Union**
   * "Paranoid."
(6) *How do you think she treated Michael Tew?*



# YOU ARE THE JUDGES OF THE FACTS

INSTRUCTION NO. 3

**PRESUMPTION OF INNOCENCE – BURDEN OF PROOF – REA-
SONABLE DOUBT**

The government has the burden of proving a defendant guilty beyond
a reasonable doubt. The law does not require a defendant to prove his
innocence or produce any evidence at all. The government has the bur-
den of proving a defendant guilty beyond a reasonable doubt, and if it
fails to do so, you must find the defendant not guilty.

Proof beyond a reasonable doubt is proof that leaves you firmly con-
... There are few things in this world that

**The government has the burden of proving Michael Tew
guilty beyond a reasonable doubt
and if it fails to do so you must find him not guilty.**

...t guilty, yo...
not guilty.

22



# REASONABLE DOUBT

## Proof beyond a reasonable doubt.

Unless the government proves **beyond a reasonable doubt** that Mr. Tew has committed **each and every element** of an offense charged in the Indictment, you <u>must</u> find him **not guilty** of that offense.



## ALWAYS ON THE GOVERNMENT

This burden **never** shifts to Mr. Tew.



# Instruction #3

Based upon **reason and common sense** after **careful** and **impartial** consideration of all the evidence in the case.

The evidence, the **lack of evidence**, nature of the evidence.

That would make a **reasonable** person **hesitate to act**.

So convincing that a **reasonable person** would **not hesitate** to rely and act upon it in making **the most important decisions in his or her own life.**

- **You now have the power**

- **Think about everything that *does not make sense***

- **Use your power to do the right thing**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, spoole@wpparalegal.net), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale Schall
(jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Jamie Hughes
Hubbard (hickam@slhlegal.com, hubbard@slhlegal.com), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), Linda A.
McMahan (maureen.carle@usdoj.gov), jroth (josh_roth@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), Probation-General
(cod_efiling@cod.uscourts.gov), USM-Criminal Division (gillian.fleck@usdoj.gov,
royce.namoca@usdoj.gov, scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov,
triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9656079@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 4/25/2024 at 3:01 PM MDT and filed on 4/25/2024

**Case Name:**  USA v. Tew et al

**Case Number:**  1:20–cr–00305–DDD

**Filer:**

**Document Number:** 489(No document attached)

**Docket Text:**
 **ORDER modifying conditions of release as to Michael Aaron Tew and Kimberley Ann Tew. The following conditions are added to those already in effect:**

**1. Defendants shall disclose a complete list of all bank accounts and peer–to–peer financial services accounts to which they have access no later than April 30, 2024. Defendants shall further provide a statement for each of these accounts to their supervising officer no later than the 5th of each following month, starting on May 5th, 2024.**

**2. Defendants shall refrain from gambling of any kind, purchasing over $50 of gift cards in a given day, and engaging in any cryptocurrency transaction without the prior approval of the supervising officer.**

**3. The supervising officer may, in his discretion, share any information provided to him by Defendants pursuant to these conditions with the government.**

**SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall     jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard     hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields     bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,

danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss     sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano     lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)     mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler     egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com), David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
spoole@wpparalegal.net), Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Lisa Marie Saccomano (lisa.saccomano@kutakrock.com,
trina.rioux@kutakrock.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Sarah Hunter Weiss
(caseview.ecf@usdoj.gov, maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9656158@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion in Limine
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 4/25/2024 at 3:23 PM MDT and filed on 4/25/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 490(No document attached) |

**Docket Text:**
 ORDER denying as moot [348] Motion in Limine in light of [483] and [489]. SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, )

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld     rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost     frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20−cr−00305−DDD−1 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Michael John Tallon (jdeatsch@tallonlaw.com,
mtallon@tallonlaw.com), Eric S. Galler (egaller@gcorplaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David
Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com, spoole@wpparalegal.net), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie
Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jamie Hughes Hubbard
(hickam@slhlegal.com, hubbard@slhlegal.com), Jason Dale Schall (jason@bowsch.com,
jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), Linda A.
McMahan (maureen.carle@usdoj.gov), jroth (josh_roth@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9656193@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
Restrict
Content-Type: text/html
```

## U.S. District Court – District of Colorado

## District of Colorado

### Notice of Electronic Filing

The following transaction was entered on 4/25/2024 at 3:34 PM MDT and filed on 4/25/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 491(No document attached) |

**Docket Text:**
 **ORDER granting [480] Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. [482] at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, spoole@wpparalegal.net

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2. KIMBERLEY ANN TEW, a/k/a Kimberley Vertanen,**

      Defendant.

---

### UNITED STATES' MOTION TO RESTRICT DOCUMENTS

---

The United States of America, by and through Cole Finegan, United States Attorney for the District of Colorado, and Martha A. Paluch, Assistant United States Attorney, respectfully moves to restrict the document filed at ECF 493 and any order revealing the contents of that document at Level 3 restriction. Pursuant to D.C.COLO.LCrR 47.1(b), "Level 3" restriction would make the document, any order revealing the contents of that document, and the brief filed in support of this motion accessible to the government and the Court.

The government also respectfully moves to restrict the brief filed in support of this motion at ECF 494 at Level 1, which would make that filing accessible to the

filing parties and the Court, for the same reasons cited by the defense and granted

by the Court in ECFs 481 and 491.

Dated this 26th day of April, 2024.

Respectfully submitted,

COLE FINEGAN
United States Attorney

By:  s/ Martha A. Paluch
Martha A. Paluch
Assistant U.S. Attorney
Chief, Economic Crimes Section
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Email: martha.paluch@usdoj.gov
Attorney for the Government

2

**CERTIFICATE OF SERVICE**

I hereby certify that on this 26th day of April, 2024, I electronically filed the foregoing

**UNITED STATES' MOTION TO RESTRICT DOCUMENT**

with the Clerk of Court using the CM/ECF system which will send notification of such filing to all e-mail addresses of record.

By: __s/ *Martha A. Paluch*_____

Martha A. Paluch
Assistant U.S. Attorney
Chief, Economic Crimes Section
United States Attorney's Office
1801 California Street, Suite 1600
Denver, CO 80202
(303) 454-0100
Fax: (303) 454-0409
Email: martha.paluch@usdoj.gov
Attorney for the Government

3

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2. KIMBERLEY ANN TEW,** a/k/a Kimberley Vertanen,

      Defendant.

---

## ORDER TO RESTRICT DOCKET NOS. 493 and 494

---

This matter is before the Court on the Government's Motion to Restrict ECFs 493 and 494. Upon consideration and for good cause shown,

IT IS ORDERED that the government's Brief in Support of Motion to Restrict (ECF 494), as well as any order revealing the contents of those documents, are hereby restricted at Level 1 and will be "Viewable by the Parties & Court" only.

IT IS FURTHER ORDERED that the government's Response (ECF 493), as well as any order revealing the contents of that document, pursuant to

//


//

1

D.C.COLO.LCrR 47.1(b), are hereby restricted at a "Level 3 Restriction" and will be

"Viewable by the Filing Party & Court" only.

IT IS SO ORDERED on this ____ day of _____, 2024.


BY THE COURT:


_____
HONORABLE DANIEL D. DOMENICO
UNITED STATES DISTRICT COURT JUDGE
DISTRICT OF COLORADO

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com, varas@slhlegal.com), David Scott Kaplan (hickam@slhlegal.com,
kaplan@slhlegal.com, varas@slhlegal.com), Richard Kent Kornfeld (admin@rklawpc.com,
erin@rklawpc.com, kate@rklawpc.com, rick@rklawpc.com), Martha Ann Paluch
(caseview.ecf@usdoj.gov, martha.paluch@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Lisa Marie Saccomano (lisa.saccomano@kutakrock.com,
trina.rioux@kutakrock.com), Jason Dale Schall (jason@bowsch.com, jasondschall@yahoo.com),
Michael John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Sarah Hunter Weiss
(caseview.ecf@usdoj.gov, maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9661192@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order on Motion for Leave to
Restrict
```
Content–Type: text/html

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 4/30/2024 at 9:41 AM MDT and filed on 4/30/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | <u>1:20–cr–00305–DDD</u> |
| **Filer:** | |
| **Document Number:** | 498(No document attached) |

**Docket Text:**
**ORDER granting [495] Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 493 at Level 3 restriction and to maintain Doc. 494 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/30/2024. Text Only Entry (dddlc9, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov,
usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov,
danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov,
maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

AO 199A (Rev.02/24 D/CO)  Order Setting Conditions of Release                    Page 1 of _____ Pages

# UNITED STATES DISTRICT COURT
### for the

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. |
| | ) | |
| _____ | ) | |
| *Defendant* | ) | |

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)  The defendant must not violate federal, state, or local law while on release.

(2)  The defendant must cooperate in the collection of a DNA sample if it is authorized by 34 U.S.C. § 40702.

(3)  The defendant must advise the court or the pretrial services office or supervising officer in writing before making any change of residence or telephone number.

(4)  The defendant must appear in court as required and, if convicted, must surrender as directed to serve a sentence that the court may impose.

The defendant must appear at: _____

_____
*Place*

_____

on _____
*date and time*

If blank, defendant will be notified of next appearance.

(5)  The defendant must sign an Appearance Bond, if ordered.

AO 199B (Rev. 02/24 D/CO) Additional Conditions of Release

Page ___ of ___ Pages

# ADDITIONAL CONDITIONS OF RELEASE

Pursuant to 18 U.S.C. § 3142(c)(1)(B), the court may impose the following least restrictive condition(s) only as necessary to reasonably assure the appearance of the person as required and the safety of any other person and the community.

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

( ☐ ) (6) The defendant is placed in the custody of:

who agrees to (a) supervise the defendant, (b) use every effort to assure the defendant's appearance at all court proceedings, and (c) notify the court immediately if the defendant violates a condition of release or is no longer in the custodian's custody.

Signed: _____     _____
Custodian                                        Date

( ☐ ) (a) The defendant must reside with the third party custodian at an address approved by the pretrial services office or supervising officer.

( ☐ ) (7) The defendant must:

( ☐ ) (a) Submit to supervision by and report for supervision to:

( ☐ ) (b) continue or actively seek employment, if legally allowed to do so.
( ☐ ) (c) continue or start an education program.
( ☐ ) (d) surrender any passport to the Clerk, U.S. District Court within 2 business days.
( ☐ ) (e) not obtain a passport or other international travel document.
( ☐ ) (f) abide by the following restrictions on personal association, residence, or travel:

( ☐ ) (g) avoid all contact, directly or indirectly, with any person who is or may be a victim or witness in the investigation or prosecution, including:

( ☐ ) h) participate in medical, psychiatric, and/or mental health treatment as directed by the pretrial services office or supervising officer:

( ☐ ) (i) pay all or part of the cost of psychiatric and/or mental health treatment based upon your ability to pay as determined by the pretrial services office or supervising officer.

( ☐ ) (j) return to custody each _____ at _____ o'clock after being released at _____ o'clock for employment, schooling, or the following purposes:

( ☐ ) (k) maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary and follow the rules of that facility.
( ☐ ) (l) not possess a firearm, destructive device, or other weapon.
( ☐ ) (m) not use alcohol ( ☐ ) at all ( ☐ ) excessively.
( ☐ ) (n) Except as authorized by court order, the defendant shall not use or unlawfully possess a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner. Except as authorized by court order, the defendant shall not possess, use or sell marijuana or any marijuana derivative (including THC) in any form (including edibles) or for any purpose (including medical purposes). Without the prior permission of the probation officer, the defendant shall not enter any marijuana dispensary or grow facility.

## ADDITIONAL CONDITIONS OF RELEASE

( ☐ ) (o) submit to testing for a prohibited substance if required by the pretrial services office or supervising officer. Testing may be used with random frequency and may include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must not obstruct, attempt to obstruct, or tamper with the efficiency and accuracy of prohibited substance screening or testing.

( ☐ ) (p) participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

( ☐ ) (q) pay all or part of the cost of substance abuse treatment and/or testing based upon your ability to pay as determined by the pretrial services office or supervising officer.

( ☐ ) (r) participate in one of the following location restriction programs and comply with its requirements as directed.
    ( ☐ ) (i) **Curfew.** You are restricted to your residence every day ( ☐ ) from _____ to _____ , or ( ☐ ) as directed by the pretrial services office or supervising officer; or
    ( ☐ ) (ii) **Home Detention.** You are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities approved in advance by the pretrial services office or supervising officer; or
    ( ☐ ) (iii) **Home Incarceration.** You are restricted to 24-hour-a-day lock-down at your residence except for medical necessities and court appearances or other activities specifically approved by the court; or
    ( ☐ ) (iv) **Stand Alone Monitoring.** You have no residential curfew, home detention, or home incarceration restrictions. However, you must comply with the location or travel restrictions as imposed by the court.
    **Note:** Stand Alone Monitoring should be used in conjunction with global positioning system (GPS) technology.

( ☐ ) (s) submit to the following location monitoring technology and comply with its requirements as directed:
    ( ☐ ) (i)   Location monitoring technology as directed by the pretrial services office or supervising officer; or
    ( ☐ ) (ii)  Radio Frequency; or
    ( ☐ ) (iii) GPS.
    ( ☐ ) (iv)

( ☐ ) (t) pay all or part of the cost of location monitoring based upon your ability to pay as determined by the pretrial services office or supervising officer.

( ☐ ) (u) report as soon as possible, to the pretrial services office or supervising officer, every contact with law enforcement personnel, including arrests, questioning, or traffic stops.

( ☐ ) (v) The defendant shall not act as an informant for any law enforcement agency without prior permission of the Court.

( ☐ ) (w)

( ☐ ) (x)

( ☐ ) (y)

( ☐ ) (z)

( ☐ ) (aa)

( ☐ ) (bb)

( ☐ ) (cc)

( ☐ ) (dd)

( ☐ ) (ee)

( ☐ ) (ff)

( ☐ ) (gg)

AO 199C (Rev. 09/08)  Advice of Penalties                                    Page        of        Pages

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year.  This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court.  The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed.  If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more – you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years – you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony –  you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor –  you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive.  In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

## Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release.  I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed.  I am aware of the penalties and sanctions set forth above.



_____
*Defendant's Signature*

_____
*City and State*

## Directions to the United States Marshal

(     ) The defendant is ORDERED released after processing.

(     ) The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release.  If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date: _____          _____
*Judicial Officer's Signature*

_____
*Printed name and title*

DISTRIBUTION:     COURT     DEFENDANT     PRETRIAL SERVICE     U.S. ATTORNEY     U.S. MARSHAL

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Martha Ann Paluch (caseview.ecf@usdoj.gov,
martha.paluch@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Eric S. Galler
(egaller@gcorplaw.com), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David Scott Kaplan
(hickam@slhlegal.com, kaplan@slhlegal.com, varas@slhlegal.com), Kristen M. Frost
(frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie Saccomano
(lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jamie Hughes Hubbard
(hickam@slhlegal.com, hubbard@slhlegal.com, varas@slhlegal.com), Jason Dale Schall
(jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), Linda A.
McMahan (maureen.carle@usdoj.gov), jroth (josh_roth@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), Probation-General
(cod_efiling@cod.uscourts.gov), USM-Criminal Division (gillian.fleck@usdoj.gov,
royce.namoca@usdoj.gov, scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov,
triana.luce@usdoj.gov, usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9675413@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

## U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 5/8/2024 at 3:26 PM MDT and filed on 5/8/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | |
| **Document Number:** | 501(No document attached) |

**Docket Text:**
 **ORDER denying [482] RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. Having reviewed the pleadings on this issue and considered the relevant facts, the motion is denied. SO ORDERED by Judge Daniel D. Domenico on 5/8/2024. Text Only Entry (dddlc9, )**

**1:20–cr–00305–DDD–1 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–1 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

**1:20–cr–00305–DDD–3 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–3 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Martha Ann Paluch (caseview.ecf@usdoj.gov,
martha.paluch@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Eric S. Galler
(egaller@gcorplaw.com), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David Scott Kaplan
(hickam@slhlegal.com, kaplan@slhlegal.com, varas@slhlegal.com), Kristen M. Frost
(frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie Saccomano
(lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale Schall
(jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Jamie Hughes
Hubbard (hickam@slhlegal.com, hubbard@slhlegal.com, varas@slhlegal.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), dddlc3 (brian_jacobsmeyer@cod.uscourts.gov), Linda A.
McMahan (maureen.carle@usdoj.gov), jroth (josh_roth@cod.uscourts.gov), dddlc5
(elsa_dodds@cod.uscourts.gov), sjunk (seth_junker@cod.uscourts.gov), dddlc9
(alex_kronman@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9780045@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Conventionally Submitted
Material
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 7/23/2024 at 11:03 AM MDT and filed on 7/19/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | Dft No. 2 – Kimberley Ann Tew |
| **Document Number:** | 510(No document attached) |

**Docket Text:**
 **Conventionally Submitted Material : 1 Flash Drive re Objection/Response to Presentence Report, [508] by Defendant Kimberley Ann Tew. Location of Stored Items: Box D–5–5. Text Only Entry (cmadr, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen     nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan     kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2. KIMBERLEY ANN TEW,**
    a/ka Kimberley Vertanen,

      Defendant.

---

**UNITED STATES' MOTION FOR PRELIMINARY ORDER OF
FORFEITURE FOR A PERSONAL MONEY JUDGMENT
AGAINST DEFENDANT KIMBERLEY ANN TEW**

---

The United States of America ("United States"), by and through Acting

United States Attorney Matthew T. Kirsch and Assistant United States Attorney

Laura B. Hurd, pursuant to 18 U.S.C. § 981(a)(1)(C), 28 U.S.C. § 2461(c), and Fed.

R. Crim. P. 32.2(b)(2), respectfully requests that this Court enter before sentencing

a Preliminary Order of Forfeiture for a Personal Money Judgment in the amount of

$5,023,878.50 against defendant Kimberley Tew, which constitutes proceeds

obtained by the defendant as a result of violations of 18 U.S.C. §§ 1343, 2, and 1349.

**A.    Background**

      1.    On February 3, 2021, an Indictment was filed charging defendant

Kimberly Ann Tew with the following: in Count 1 with violation of 18 U.S.C. § 1349

1

(conspiracy to commit wire fraud); in Counts 16[1], 21, 22, 25, 26, 31, and 32 with violations of 18 U.S.C. §§ 1343 and 2 (wire fraud and aiding and abetting); in Count 41 with violation of 18 U.S.C. §§ 1956(h) (conspiracy to commit money laundering); and in Counts 43, 44, 47, 48, and 56 with violations of 18 U.S.C. § 1957 (money laundering-spending).  ECF Doc. # 83, p. 1-21.

2.      The Indictment also sought forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), of any and all of the defendant's right, title, and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of the violations set forth in Counts 1 through 40, including but not limited to, a money judgment in the amount of proceeds obtained by the scheme and the defendants.  In addition, the Indictment sought forfeiture, pursuant to 18 U.S.C. § 982(a)(2)[2], for all property involved in the violations set forth in Counts 41 through 56 or all  property traceable to such property.  ECF Doc. #83, p. 23.

3.      On February 15, 2024, defendant Kimberly Tew was found guilty at trial of Counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56. ECF Doc. 448.

---

[1] Count 16 was removed from the verdict form and dismissed by the Court.

[2] Title 18, United States Code, Section 982(a)(1), states that upon conviction of violations of 18 U.S.C. §§ 1956 or 1957, the Court "shall order that person forfeit to the United States any property, real or personal, involved in such offense, or any property traceable to such property." Defendant Kimberley Tew was convicted of conspiracy to commit money laundering and substantive counts.  A total of $72,000.00 is the amount of funds laundered by Kimberley Tew based on the substantive counts of conviction.  The total amount involved in those individual transactions are significantly less than the total wire fraud conspiracy proceeds. Thus, the government does not intend to forfeit those funds in addition to the wire fraud conspiracy amounts.

4.     The government presented facts at trial which established a nexus between the criminal conduct for which the defendant was found guilty and the $5,023,878.50, which represents the proceeds obtained by the Tews through the wire fraud conspiracy and substantive counts.  See EX 1002-1003.

## B.     Argument

Pursuant to 18 U.S.C. § 981(a)(1)(C) the Court shall order criminal forfeiture of any property, real or personal, constituting or derived from proceeds traceable to a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense.  Title 18, United States Code, Section 1956(c)(7) includes any offense listed in 18 U.S.C. § 1961(1) as a "specified unlawful activity." Wire fraud in violation of 18 U.S.C. § 1343 is listed in 18 U.S.C. § 1961.  Conspiracy to commit wire fraud is set forth in 18 U.S.C. § 1349.

Proceeds are defined in 18 U.S.C. § 981(a)(2), which states that "proceeds" are "property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense."

The government may seek a money judgment against a defendant for the value of what they obtained from the criminal activity." *United States v. Channon*, 973 F.3d 1105, 1112 (10th Cir. 2020) (quotation marks and citation omitted); *United States v. Venturella*, 585 F.3d 1013, 1017 (7th Cir. 2009).  This includes proceeds from the wire fraud scheme and proceeds obtained from the conspiracy the defendant benefitted from.

3

When two co-conspirators jointly obtain and jointly enjoy the fruits from their conspiracy, they are liable for the full amount of that conspiracy. *See Channon*, 973 F.3d at 1115 n.8 (citing *United States v. Tanner*, 942 F.3d 60, 67-68 (2d Cir. 2019))*; United States v. Dotson*, 635 F. Supp. 3d 1326, 1333 (M.D. Fla. 2022) ("Mr. and Mrs. Dotson both benefited personally from the fraud" because they co-owned the stores that received the profits from the fraudulent transactions); *United States v. Bikundi*, 926 F.3d 761 (D.C. Cir. 2019) (defendants jointly obtained conspiracy proceeds because both were integrally involved in fraud scheme and treated property as joint property). This is because each of them is responsible for the conduct, acquisition, and use of the conspiracy proceeds. This is especially true when the codefendants are married and share finances and expenses. *See United States v. Carlyle*, 776 F. App'x 565, 571 (11th Cir. 2019) (a married couple were both liable for the full amount of the fraud proceeds because "it is reasonable to infer from the evidence in the record that [the defendant] possessed and enjoyed the fruits of her own efforts.").

Pursuant to Fed. R. Crim. P. 32.2(b)(1)(A), the Court must determine what property is subject to forfeiture as soon as practicable after a finding of guilt. When a personal money judgment is sought, "the court must determine the amount of money the defendant will be ordered to pay." Fed. R. Crim. P. 32.2(b)(1)(A). As set forth in Fed. R. Crim. P. 32.2(b)(1)(B), the Court "determination may be based on evidence already in the record . . . and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." When

considering the evidence, the Court need only find that a preponderance of the evidence supports forfeiture. *United States v. Gordon*, 710 F.3d 1124, 1165 (10th Cir. 2013) ("A forfeiture judgment must be supported by a preponderance of the evidence." (quoting *United States v. Bader*, 678 F.3d858, 893 (10th Cir. 2012)).

Once the property is determined to be subject to forfeiture, the Court "must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment." Fed. R. Crim. P. 32.2(b)(2)(A). It is mandatory that the Preliminary Order of Forfeiture is entered "sufficiently in advance of sentencing to allow the parties to suggest revisions or modifications before the order becomes final as to the defendant." Fed. R. Crim. P. 32.2(b)(2)(B).

As set forth in the government's sentencing statement, the evidence at trial established that from August 2018 to July 2020, Michael Tew, Kimberly Tew, and Jonathan Yioulos engaged in a scheme to defraud a Florida-based company, N.A.C., Inc. ("the Victim Company"). As part of the conspiracy and scheme to defraud, fraudulent invoices were submitted to the Victim Company for services that were never rendered. ECF Doc. #459, p. 3 (citing Testimony of Jonathan Yioulos; GX 1002, 1003, and 1008). At times, Michael and Kimberley Tew used various entities and identities in order to submit the invoices and to receive payment. After the fraudulent invoices were paid, Michael and Kimberley Tew engaged in multiple financial transactions through financial institutions in amounts greater than $10,000 from money they knew to be the proceeds of wire fraud. *Id.* (citing GX 1009-1023).

5

Between August 2018 and July 2020, as a result of the conspiracy to commit wire fraud, the Victim Company paid $5,053,878.50 either directly to the Michael and Kimberley Tew or to third parties recruited by them.  *Id.* at p. 12 (citing GX 1002-1003).  The fraud was perpetrated to pay outstanding and ongoing debts incurred by Kimberley Tew's gambling, to cover the redemptions of "investors" who were victims of a separate cryptocurrency scheme, and to finance a lavish lifestyle that included a luxury apartment in Cherry Creek, designer clothes, expensive food, and Las Vegas junkets.  *Id.* at 12-13.

Michael and Kimberley Tew maintained multiple bank accounts at multiple financial institutions; some they held in their individual names, and others were joint accounts.  *Id.* at p. 22 (citing GX 1000).  After withdrawing cash from the proceeds of the fraud, Michael and Kimberley Tew often deposited the aggregated amount of cash from that day or over a few days into cryptocurrency ATMs, where they were able to deposit United States dollars in exchange for bitcoin, either held in their own wallets or sent to third parties, many of whom were owed money.  All told, the Tews deposited approximately $2,429,181 into just one company's cryptocurrency ATMs during the conspiracy.  *Id.* at p. 23 (citing ECF No. 341-1, Log Entry # 176, 179, 189, 192, 193, 348, 351, 348, 351, 356).

In total, the Victim Company paid $5,053,878.50 to the various entities for Michael and Kimberley Tew's benefit or directly to bank accounts controlled or operated by Michael Tew and Kimberley Tew.  *Id.* at p. 23-24; GX 1002-1003. `

6

Michael and Kimberly Tew were equally culpable in the conspiracy that obtained $5,053,878.50 from the Victim Company for their benefit. Based on their joint conduct, joint use of the proceeds, and joint responsibility related to the wire fraud conspiracy, the government seeks a forfeiture money judgment against defendant Kimberley Tew in the amount of $5,053,878.50. The government will credit any payments made toward the money judgment so that it will not collect more than the $5,053,878.50.

In addition, the government intends to recommend to the Attorney General that any net proceeds derived from the sale of the judicially forfeited assets be remitted or restored to the eligible victim of the offenses, for which the defendant has been found guilty, pursuant to 18 U.S.C. § 981(e), 28 C.F.R. pt. 9, and any other applicable laws, if the legal requirements for recommendation are met.

**Conclusion**

Accordingly, the United States respectfully requests that the Court enter the Preliminary Order of Forfeiture for a Personal Money Judgment in the amount of $5,053,878.50 against defendant Kimberley Tew pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

DATED this 25th day of July 2024.

Respectfully submitted,

Matthew T. Kirsch
Acting United States Attorney

7

By:  /s/ *Laura B. Hurd*
Laura B. Hurd
Assistant U.S. Attorney
U.S. Attorney's Office
1801 California Street, Ste. 1600
Denver, Colorado 80202
Telephone: (303) 454-0100
E-mail: laura.hurd@usdoj.gov
*Attorney for the United States*

I hereby certify that the foregoing pleading complies with the type-volume

limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of July 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notice to all counsel of record.

s/ *Sheri Gidan*
FSA Federal Paralegal
Office of the U.S. Attorney

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2.**    **KIMBERLY ANN TEW**,
      a/k/a Kimberly Vertanen

      Defendant.

---

## PRELIMINARY ORDER OF FORFEITURE FOR A PERSONAL MONEY JUDGMENT AGAINST DEFENDANT KIMBERLY ANN TEW

---

THIS MATTER comes before the Court on the United States' Motion for Preliminary Order of Forfeiture for a Personal Money Judgment against Defendant Kimberly Ann Tew pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure. The Court having read said Motion and being fully advised in the premises finds:

THAT on February 3, 2021, an Indictment was filed charging defendant Kimberly Ann Tew with the following: in Count 1 with violation of 18 U.S.C. § 1349 (conspiracy to commit wire fraud); in Counts 16, 21, 22, 25, 26, 31, and 32 with violations of 18 U.S.C. §§ 1343 and 2 (wire fraud and aiding and abetting); in Count 41 with violation of 18 U.S.C. §§ 1956(h) (conspiracy to commit money laundering); and in Counts 43, 44, 47, 48, and 56 with violations of 18 U.S.C. § 1957 (money laundering-spending);

1

THAT the Indictment also sought forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), and 28 U.S.C. § 2461(c), of any and all of the defendant's right, title, and interest in all property constituting and derived from any proceeds the defendant obtained directly and indirectly as a result of the violations set forth in Counts 1 through 40, including but not limited to, a money judgment in the amount of proceeds obtained by the scheme and the defendants. In addition, the Indictment sought forfeiture, pursuant to 18 U.S.C. § 982(a)(2), for all property involved in the violations set forth in Counts 41 through 56 or all property traceable to such property; and

That on February 15, 2024, defendant Kimberly Tew was found guilty by a jury of Counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56; and

THAT based on the facts set forth at trial, there is a factual basis and cause to issue a personal money judgment under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), and Rule 32.2(b) of the Federal Rules of Criminal Procedure.

THEREFORE, IT IS ORDERED, DECREED AND ADJUDGED:

THAT $5,053,878.50 is subject to forfeiture as proceeds obtained by defendant Kimberly Ann Tew through commission of the offenses in Counts 1, 21, 22, 25, 26, 31, and 32 for which she was found guilty;

THAT proceeds obtained from the wire fraud and conspiracy to commit wire fraud were laundered as a result of defendant Kimberly Ann Tew's convictions for Counts 41, 43, 44, 47, and 56;

2

THAT a Preliminary Order of Forfeiture for a Personal Money Judgment against defendant Kimberly Ann Tew in the amount of $5,053,878.50 shall be entered in accordance with 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c);

THAT pursuant to Federal Rule of Criminal Procedure 32.2(b)(4), this Forfeiture Money Judgment shall become final as to the defendant at the time of sentencing and shall be made part of the sentence and included in the judgment;

THAT any payments toward the money judgment will be credited so that the United States will not collect more than the $5,053,878.50; and

THAT this Preliminary Order of Forfeiture may be amended pursuant to the Federal Rules of Criminal Procedure, Rule 32.2(e)(1).


SO ORDERED this _____ day of _____2024.


BY THE COURT:


_____
DANIEL D. DOMENICO
United States District Court Judge

3

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Sarah Hunter Weiss (caseview.ecf@usdoj.gov,
maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecfcriminal@usdoj.gov), Martha Ann Paluch (caseview.ecf@usdoj.gov,
martha.paluch@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Michael
John Tallon (jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Laura Beth Hurd
(caseview.ecf@usdoj.gov, charisha.cruz@usdoj.gov, elizabeth.young2@usdoj.gov,
jasmine.darlington@usdoj.gov, jody.gladura@usdoj.gov, laura.hurd@usdoj.gov,
michelle.lockman@usdoj.gov, sheri.gidan@usdoj.gov, tonya.andrews@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecffluatty@usdoj.gov), Eric S. Galler
(egaller@gcorplaw.com), Bryan David Fields (bryan.fields3@usdoj.gov,
caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov,
kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), David Scott Kaplan
(hickam@slhlegal.com, kaplan@slhlegal.com, varas@slhlegal.com), Kristen M. Frost
(frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Lisa Marie Saccomano
(lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale Schall
(jason@bowsch.com, jasondschall@yahoo.com), Nancy Lin Cohen (cbfile@cohenblacklaw.com,
ilana@cohenblacklaw.com, mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Jamie Hughes
Hubbard (hickam@slhlegal.com, hubbard@slhlegal.com, varas@slhlegal.com), Judge Daniel D.
Domenico (domenico_chambers@cod.uscourts.gov)
--Non Case Participants: dddlc6 (theodore_furchtgott@cod.uscourts.gov), mcole
(mallory_coleman@cod.uscourts.gov), Linda A. McMahan (maureen.carle@usdoj.gov), jroth
(josh_roth@cod.uscourts.gov), sjunk (seth_junker@cod.uscourts.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc9
(alex_kronman@cod.uscourts.gov), Probation-General (cod_efiling@cod.uscourts.gov),
USM-Criminal Division (gillian.fleck@usdoj.gov, royce.namoca@usdoj.gov,
scott.scherfling@usdoj.gov, sike.bennett@usdoj.gov, triana.luce@usdoj.gov,
usms.cod-criminal@usdoj.gov)
--No Notice Sent:

Message-Id:9785023@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Order
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 7/25/2024 at 4:30 PM MDT and filed on 7/25/2024

**Case Name:**      USA v. Tew et al

**Case Number:**    1:20–cr–00305–DDD

**Filer:**

**Document Number:** 514(No document attached)

**Docket Text:**
 **ORDER re [513] Motion for Preliminary Order of Forfeiture. If Ms. Tew opposes the motion, she is ordered to file a response on or before August 2, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/25/2024. Text Only Entry (dddlc9, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com, mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Laura Beth Hurd    laura.hurd@usdoj.gov, CaseView.ECF@usdoj.gov, charisha.cruz@usdoj.gov, elizabeth.young2@usdoj.gov, jasmine.darlington@usdoj.gov, jody.gladura@usdoj.gov, michelle.lockman@usdoj.gov, sheri.gidan@usdoj.gov, tonya.andrews@usdoj.gov, usaco.ecfcivil@usdoj.gov, usaco.ecffluatty@usdoj.gov

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

```
MIME-Version:1.0
From:COD_ENotice@cod.uscourts.gov
To:COD_ENotice@cod.uscourts.gov
Bcc:
--Case Participants: Nancy Lin Cohen (cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,
mary@cohenblacklaw.com, nancy@cohenblacklaw.com), Bryan David Fields
(bryan.fields3@usdoj.gov, caseview.ecf@usdoj.gov, danielle.storinsky@usdoj.gov,
ilmira.allazova@usdoj.gov, kelsey.totura@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Kristen
M. Frost (frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com), Eric S.
Galler (egaller@gcorplaw.com), Jamie Hughes Hubbard (hickam@slhlegal.com,
hubbard@slhlegal.com, varas@slhlegal.com), Laura Beth Hurd (caseview.ecf@usdoj.gov,
charisha.cruz@usdoj.gov, elizabeth.young2@usdoj.gov, jasmine.darlington@usdoj.gov,
jody.gladura@usdoj.gov, laura.hurd@usdoj.gov, michelle.lockman@usdoj.gov,
sheri.gidan@usdoj.gov, tonya.andrews@usdoj.gov, usaco.ecfcivil@usdoj.gov,
usaco.ecffluatty@usdoj.gov), David Scott Kaplan (hickam@slhlegal.com, kaplan@slhlegal.com,
varas@slhlegal.com), Richard Kent Kornfeld (admin@rklawpc.com, erin@rklawpc.com,
kate@rklawpc.com, rick@rklawpc.com), Martha Ann Paluch (caseview.ecf@usdoj.gov,
martha.paluch@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Lisa
Marie Saccomano (lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com), Jason Dale
Schall (jason@bowsch.com, jasondschall@yahoo.com), Michael John Tallon
(jdeatsch@tallonlaw.com, mtallon@tallonlaw.com), Sarah Hunter Weiss
(caseview.ecf@usdoj.gov, maggie.grenvik@usdoj.gov, sarah.weiss@usdoj.gov,
usaco.ecfcivil@usdoj.gov, usaco.ecfcriminal@usdoj.gov), Judge Daniel D. Domenico
(domenico_chambers@cod.uscourts.gov)
--Non Case Participants: Linda A. McMahan (maureen.carle@usdoj.gov), dddlc3
(brian_jacobsmeyer@cod.uscourts.gov), dddlc5 (elsa_dodds@cod.uscourts.gov), dddlc6
(theodore_furchtgott@cod.uscourts.gov), dddlc9 (alex_kronman@cod.uscourts.gov), jroth
(josh_roth@cod.uscourts.gov), mcole (mallory_coleman@cod.uscourts.gov), sjunk
(seth_junker@cod.uscourts.gov)
--No Notice Sent:

Message-Id:9790018@cod.uscourts.gov
Subject:Activity in Case 1:20-cr-00305-DDD USA v. Tew et al Conventionally Submitted
Material
Content-Type: text/html
```

### U.S. District Court – District of Colorado

### District of Colorado

## Notice of Electronic Filing

The following transaction was entered on 7/30/2024 at 8:59 AM MDT and filed on 7/26/2024

| | |
|---|---|
| **Case Name:** | USA v. Tew et al |
| **Case Number:** | 1:20–cr–00305–DDD |
| **Filer:** | USA |
| **Document Number:** | 519(No document attached) |

**Docket Text:**
 **Conventionally Submitted Material : One CD re Restricted Document – Level 2[516] by Plaintiff USA. Location of stored items: Sealed Room. Text Only Entry (cmadr, )**

**1:20–cr–00305–DDD–2 Notice has been electronically mailed to:**

Nancy Lin Cohen    nancy@cohenblacklaw.com, cbfile@cohenblacklaw.com, ilana@cohenblacklaw.com,

mary@cohenblacklaw.com

David Scott Kaplan    kaplan@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Richard Kent Kornfeld    rick@rklawpc.com, admin@rklawpc.com, erin@rklawpc.com, kate@rklawpc.com

Martha Ann Paluch    Martha.paluch@usdoj.gov, CaseView.ECF@usdoj.gov, stephanie.price@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Kristen M. Frost    frost@ridleylaw.com, grant@ridleylaw.com, mckinley@ridleylaw.com

Laura Beth Hurd    laura.hurd@usdoj.gov, CaseView.ECF@usdoj.gov, charisha.cruz@usdoj.gov, elizabeth.young2@usdoj.gov, jasmine.darlington@usdoj.gov, jody.gladura@usdoj.gov, michelle.lockman@usdoj.gov, sheri.gidan@usdoj.gov, tonya.andrews@usdoj.gov, usaco.ecfcivil@usdoj.gov, usaco.ecffluatty@usdoj.gov

Jason Dale Schall    jason@bowsch.com, jasondschall@yahoo.com

Jamie Hughes Hubbard    hubbard@slhlegal.com, hickam@slhlegal.com, varas@slhlegal.com

Bryan David Fields    bryan.fields3@usdoj.gov, CaseView.ECF@usdoj.gov, Kelsey.Totura@usdoj.gov, danielle.storinsky@usdoj.gov, ilmira.allazova@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Sarah Hunter Weiss    sarah.weiss@usdoj.gov, CaseView.ECF@usdoj.gov, USACO.ECFCivil@usdoj.gov, maggie.grenvik@usdoj.gov, usaco.ecfcriminal@usdoj.gov

Lisa Marie Saccomano    lisa.saccomano@kutakrock.com, trina.rioux@kutakrock.com

Michael John Tallon (Terminated)    mtallon@tallonlaw.com, jdeatsch@tallonlaw.com

Eric S. Galler    egaller@gcorplaw.com

**1:20–cr–00305–DDD–2 Notice has been mailed by the filer to:**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

      Defendant.

---

**Kimberley Tew's Notice of Objection to United States' Motion for Preliminary Order of Forfeiture**

---

Kimberley Tew, through attorneys David S. Kaplan and Jamie Hubbard of the law firm Stimson LaBranche Hubbard, LLC submits *Kimberley Tew's Notice of Objection to United States' Motion for Preliminary Order of Forfeiture* and as grounds state the following:

1. On February 15, 2024 Mrs. Kimberley Tew, was found guilty of twelve counts in the above captioned case. Her co-defendant, Mr. Michael Tew was convicted of sixty counts. On July 25, 2024, the government submitted *United States' Motion for Preliminary Order of Forfeiture for a Personal Money Judgment Against Defendant Kimberley Ann Tew*. (Doc. 513). Mrs. Tew is set for a sentencing hearing on August 8, 2024.

2. The Federal Rules of Criminal Procedure, addressing criminal forfeiture, require the court to determine if the government has established a nexus

between any specific property to be forfeited and the offenses of conviction. Fed. R. Crim. P. 32.2(b)(1)(A); 32.2(b)(2)(A). The fact that defendants are coconspirators does not mandate that joint and several liability must apply to the repayment of a loss attributed to the conspiracy. *Honeycutt v. United States* 581 U.S. 443, 137 S. Ct. 1626 (2017).

3.   The government seeks an order of forfeiture disproportionate to Ms. Tews' involvement or contribution to the counts of conviction.  In an indictment containing sixty counts Mrs. Tew was convicted of seven counts related to wire fraud and five counts related to money laundering.[1] The government has acknowledged that Mrs. Tew was not involved with more than 80% of the fraudulent transfers.  The government has further conceded that the amount of funds laundered by Mrs. Tew was only $72,000.00 and as such is not seeking their forfeiture. (U.S. Motion for Preliminary Order Doc. 513 p.2.n 2)

4.   The government requests forfeiture, in the form of a money judgement totaling $5,053,878.50,  for an amount derived from  proceeds obtained by the scheme and the defendants.  The amount attributable to Mrs. Kimberley Tew as a result of the wire fraud convictions  is more accurately based on the counts of conviction, totaling $184,300.00, as described in *Defendant Kimberley*

---

[1] Mrs. Tew was acquitted on wire fraud count #16 and any forfeiture calculation should be reduced accordingly.

*Tew's Objections to Presentence Investigation Report* submission. (Doc. #508 Offense Level Computation p. 24 incorporated herein by reference).

5.  Failing to provide a nexus between Mrs. Tew's criminal conduct and the money judgement being sought by the government, this court should enter a preliminary order of forfeiture consistent with the amounts contained in this Notice of Objection.

6.  Mrs. Tew requests that the order of forfeiture enter sufficiently in advance of sentencing to allow counsel for Mrs. Tew to suggest revisions or modifications before the order becomes final. Fed. R. Crim P. 32.2(b)(2)(B).

Dated: August 2, 2024.

Respectfully submitted,

*s/ David S. Kaplan*

David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
720.689.8909
kaplan@slhlegal.com
hubbard@slhlegal.com

*Attorneys for Kimberley Ann Tew*

## Certificate of Service

I certify that on August 2, 2024, I electronically filed the foregoing *Kimberley Tew's Notice of Objection to United States Motion for Preliminary Order of Forfeiture* with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following e-mail address and all parties of record:

3

Bryan Fields
Sarah Weiss
U.S. Attorney's Office-Denver
1801 California Street
Suite 1600
Denver, CO 80202
bryan.fields3@usdoj.gov
sarah.weiss@usdoj.gov

Jason D. Schall
7350 E. Progress Place, Suite 100
Greenwood Village, CO 80111
jason@bowsch.com

Kristen M. Frost
Ridley McGreevy & Winocur, P.C.
303 16th Street, Suite 200
Denver, CO 80202
frost@ridleylaw.com

*Counsel for Michael Tew*

s/ Andres L. Varas
_____
Andres L. Varas, Paralegal

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2. KIMBERLEY ANN TEW,**
    a/ka Kimberley Vertanen,

      Defendant.

---

## UNITED STATES' REPLY TO KIMBERLEY TEW'S NOTICE OF OBJECTION TO UNITED STATES' MOTION FOR PRELIMINARY ORDER OF FORFEITURE (ECF DOC. 522)

---

Defendant Kimberley Tew objects to forfeiture in the amount of proceeds obtained by her through the conspiracy and argues that she is only responsible for the substantive counts of wire fraud for which she was convicted. *See* ECF Doc. 52, ¶ 4. Her argument defies law and the overwhelming facts establishing her participation, direction, and pressure on her co-conspirators to obtain funds from the victim company to support her gambling, lifestyle, and cryptocurrency scheme as a result of the conspiracy in Count 1 and the wire fraud in Counts 2 through 40.

The jury found beyond a reasonable doubt that (1) Kimberley Tew agreed with others to commit wire fraud; (2) she knew the essential objectives of the conspiracy; (3) she knowingly and voluntarily participated in the conspiracy; and (4)

1

there was interdependence among the members of the conspiracy.  Meaning, the members intended to act together for their shared mutual benefit **within the scope of the conspiracy charged**.  ECF Doc. 438, p. 21 (Jury Instruction No. 18 Conspiracy to Commit Wire Fraud) (emphasis added); *see United States v. Fishman,* 645 F.3d 1175, 1189 (10th Cir.2011) ("Co-conspirators are interdependent when they 'inten[d] to act *together* for their *shared mutual benefit* within the scope of the conspiracy charged.' ") (citation omitted).  Interdependence among the members of the conspiracy, however, does not require that the members all agree on every detail.  *Id.* at p. 25 (Jury Instruction No. 20 Conspiracy-Agreement & Interdependence Defined).

In turn, the Indictment, which was provided to the jury, included all of the entities used to perpetrate the fraud, including H.S. CPAs LLC ("HS CPAs"); M.C.G. Inc. ("MCG"); 5530 J.D., LLC ("5530 JD");  P.M., Inc. ("PM"); Global Fuel Logistics, Inc. ("GFL"); and Aero Maintenance Resources ("AMR"), a division of GFL.   ECF Doc. 83, ¶¶  13-14.  The conspiracy charged in Count 1 also stated that more than $5,000,000 was paid by the victim company from the invoices submitted by the six entities or divisions.   *Id.* at ¶¶ 11, 15.  Defendants Michael Tew and Kimberley Tew contacted defendant Jonathan Yioulos to demand money.  It was also part of the conspiracy that Kimberley Tew and Michael Tew coordinated and consulted on the amount of money to demand from Yioulos.  *Id.* at ¶ 20.

There is absolutely no dispute that defendant Kimberley Tew was convicted of conspiracy to commit wire fraud.  She was also found guilty of the wire fraud in

2

Counts 21, 22, 25, 26, 31, and 32.  ECF Doc. 448.  The individual wire fraud counts
included invoices from GFL and AMR and there was evidence supporting her
involvement with every entity who submitted false invoices.  *See e.g.* ECF Doc. 516,
p. 9-10 (citing Exhibit 2; ECF Docs. 361, 341-1 at 84-85; and GX 715).

The evidence before the Court shows Kimberley Tew maintained consistent
pressure on co-conspirators to ensure a constant stream of funds flowing to her and
her husband through the conspiracy.  This was done directly with defendant
Yioulos, and after he cut off communications with her, through her husband
Michael Tew. GX 975; *see also* ECF Doc. 341-1.  As set forth in the government's
exhibit 1008, Kimberly Tew sent one message in furtherance of the conspiracy in
almost every month of its existence. ECF Doc. 516, Exhibit 1.  She was not a
passive, unwilling participant. Defendant Kimberley Tew was a driving force and
received the substantial financial benefits from the conspiracy. *See* ECF Doc. 516
(citing ECF No. 341-1 to establish defendant Kimberley Tew's conduct which aided
at entries 59, 110, 156, 166, 173, 277, 279, 280, 281, 337, 338, 372; abetted, ECF No.
341-1 at 129, 159; 166, 169, 176, 274, 286; 294, 295, 321, 322, 327, 340, 366, 371;
counseled, ECF No. 341-1 at 140, 151, 160, 194, 229, 286, 288, 289, 291, 293, 301,
307, 308, 317, 325, 326, 336, 342, 362, 364; commanded, ECF No. 341-1 at 126, 153,
166, 170, 177, 192, 212, 222, 242, 249, 260, 261, 265, 290, 309, 313, 347, 357, 358,
360, 367, 370; induced, ECF No. 341-1 at 130, 139, 160, 170, 178, 179, 197, 215, 225,
272, 273, 283, 296, 311, 330, 348, 368; produced ECF No. 341-1 at 124, 187, 297;

3

and willfully caused, ECF No. 341-1 at 136, 146, 189, 190, 200, 205, 276, 290, 298, 299, 332, 341, 356).

Any argument that defendant Kimberley Tew is not responsible for the funds received as a result of the conspiracy is at odds with her conduct and the jury's determination of her participation. The primary objective of the conspiracy was to obtain funds through the wire fraud scheme. There is no evidence that defendant Kimberley Tew withdrew from the conspiracy or that she did not benefit from the funds flowing to her from every entity that submitted false invoices. In essence, defendant Kimberley Tew's argument would mean that there were multiple sub-conspiracies related to each individual entity. That is not what the jury determined when it determined she was guilty beyond a reasonable doubt of Count 1. *See e.g. United States v. Serr*, 817 F. App'x 598, 602 (10th Cir. 2020) ("a single conspiracy does not fracture into multiple conspiracies merely because it involves a series of separate transactions.") (citing *United States v. Brewer*, 630 F.2d 795, 799 (10th Cir. 1980)).

Although Kimberley Tew references *Honeycutt v. United States*, 581 U.S. 443, 137 S. Ct. 1626 (2017), the United States is not asking for a joint and several finding on the forfeiture, but a forfeiture money judgment based on Kimberley Tew's conduct and the benefit the Tews received through the wire fraud conspiracy. Although the Tenth Circuit has not held that *Honeycutt* applies to 18 U.S.C. § 981(a)(1)(C), the *Honeycutt* decision aligns with what the government seeks here. That the defendants who receive the funds from the conspiracy are responsible for

4

those funds.  *See United States v. Channon*, 973 F.3d 1105, 1115 n.8 (10th Cir.

2020) ("Even if <u>Honeycutt</u> applied to § 981(a)(1)(C), Defendants failed to show that

its analysis plainly applies to them. . . . Defendants are a married couple who lived

together and enjoyed the benefits of their scheme together. The facts here are

unlike the case of a drug kingpin and several drug dealers who do not have any

relationship or shared benefits outside of the conspiracy.").   The government is not

seeking to hold a low-level participant responsible based on *Pinkerton* liability for

the fraud funds received by others in the conspiracy; but rather, the government is

seeking to hold the primary participants responsible for their gain. Kimberley Tew

substantially benefited from every dollar obtained through the wire fraud

conspiracy and scheme.  She cannot avoid the fact that she was an instrumental

participate in the conspiracy to commit wire fraud and benefitted and enjoyed the

receipts from the entire fraud conspiracy along with her husband.

  DATED this 6th day of August 2024.

        Respectfully submitted,

        Matthew T. Kirsch
        Acting United States Attorney

By:  <u>/s/ *Laura B. Hurd*</u>
        Laura B. Hurd
        Assistant U.S. Attorney
        U.S. Attorney's Office
        1801 California Street, Ste. 1600
        Denver, Colorado 80202
        Telephone: (303) 454-0100
        E-mail: laura.hurd@usdoj.gov
        *Attorney for the United States*

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of August 2024, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notice to all counsel of record.

s/ Sheri Gidan
FSA Federal Paralegal
Office of the U.S. Attorney

6

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE DANIEL D. DOMENICO**

Criminal Case No.:  1:20-cr-00305-DDD-02      Date:  August 8, 2024
Courtroom Deputy:  Robert R. Keech           Court Reporter: Tammy Hoffschildt
Probation Officer:   Josh Roth               Interpreter: N/A

_Parties:_                                   _Counsel:_

UNITED STATES OF AMERICA,                    Bryan D. Fields
                                             Sarah H. Weiss
        Plaintiff,                           Laura B. Hurd

v.

KIMBERLEY ANN TEW,                           David S. Kaplan
                                             Jamie H. Hubbard
        Defendant.

---

## COURTROOM MINUTES

---

**HEARING ON PRELIMINARY ORDER OF FORFEITURE AND SENTENCING
HEARING**

**1:06 p.m.**     **Court in session**. Defendant present, on bond.

> **Defendant found guilty at trial on February 15, 2024 (Day 9) to
> Counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56 of the
> Indictment.**

Appearances of counsel.

[513] United States' Motion for Preliminary Order of Forfeiture for a Personal Money
Judgment Against Defendant Kimberley Ann Tew is raised for argument.

Argument by Ms. Hurd and Mr. Kaplan.

**ORDERED:**   [513] United States' Motion for Preliminary Order of Forfeiture for a
              Personal Money Judgment Against Defendant Kimberley Ann Tew is
              **GRANTED.**

1

Parties received and reviewed the presentence report and all addenda.

Statements made by counsel for Defendant and counsel for Government.

**2:45 p.m.     Court in recess.**

**3:03 p.m.     Court in session.**

Further statements made by counsel for Government, counsel for Defendant, and Defendant on her own behalf.

After consideration of the provisions of 18 U.S.C. 3553 (a), the Court announces the sentence it intends to impose as reflected in the record.

**ORDERED:**  [515] Defendant's Motion is **GRANTED IN PART.**

**ORDERED:**  Defendant is sentenced to a term of imprisonment of **48 months** as to counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56 of the Indictment, to run concurrently. Upon release from imprisonment, Defendant shall be placed on supervised release for a period of **3 years** as to each of counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56 of the Indictment, to run concurrently. $1,200.00 special assessment to be paid immediately.

Conditions and special conditions as set forth on the record.

Court **RECOMMENDS** the Bureau of Prisons place the Defendant at a facility and be allowed to participate in the Residential Drug Abuse Program (R.D.A.P.).

Defendant advised of right to appeal.

**ORDERED:**  Bond is **CONTINUED.**

**4:20 p.m.     Court in recess. Hearing concluded. Total time:   2:56**

2

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## NOTICE OF APPEAL

Notice is hereby given that Defendant Kimberley Ann Tew in the above-named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Judgment entered in this action on the 13th day of August 2024.

Dated: August 20, 2024.

                                   Respectfully submitted,

                                   *s/ David S. Kaplan*

                                   David S. Kaplan
                                   Jamie Hubbard
                                   STIMSON LABRANCHE HUBBARD, LLC
                                   1652 Downing Street
                                   Denver, CO 80218
                                   720.689.8909
                                   kaplan@slhlegal.com
                                   hubbard@slhlegal.com

                                   *Attorneys for Kimberley Ann Tew*

**Certificate of Service**

I certify that on August 20, 2024, I electronically filed the foregoing *Notice of Appeal* with the Clerk of Court and all parties using the CM/ECF system.

*s/ Nancy Hickam*
Nancy Hickam, Paralegal



**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
OFFICE OF THE CLERK**

Alfred A. Arraj
United States Courthouse
901 19th Street
Denver, Colorado 80294
www.cod.uscourts.gov

Jeffrey P. Colwell
*Clerk*

Phone: (303) 844-3433

Date: 8/21/2024

☐Pro Se      ☐Retained      ☒CJA      ☐FPD      USA or other
                                                  ☐Federal Agency
                                                  (Appeal Fee Exempt)

Case No: 20-cr-00305-DDD-2      ☐Amended Notice of Appeal
                                 ☐Other pending appeals
Date Filed: 8/20/2024            ☐Transferred Successive
                                     §2254 or §2255
Appellant: Kimberley Ann Tew     ☐Supplemental Record

Pro Se Appellant:
        ☐IFP forms mailed/given      ☐Motion IFP pending      ☐Appeal fee paid
                                     ☐IFP denied               ☐Appeal fee not paid

Retained Counsel:
        ☐Appeal fee paid      ☐Appeal fee not paid      ☐Motion IFP filed

The Preliminary Record on Appeal is hereby transmitted to the Tenth Circuit Court of Appeals. Please refer to the forms, procedures, and requirements for ordering transcripts, preparing docketing statements and briefs, and designations of the record that are found on the Tenth Circuit's website, www.ca10.uscourts.gov.

If not already completed, either an appeal fee payment for filing this case or filing of a motion to proceed *in forma pauperis* will be made to this District Court.

The transcript order form must be filed in the District Court as well as the Court of Appeals within 14 days after the notice of appeal was filed with the District Court.

If you have questions, please contact this office.

Sincerely,

JEFFREY P. COLWELL, CLERK

by:   s/C. Madrid
        Deputy Clerk

Rev. 8/17/2017

cc:     Clerk of the Court, Tenth Circuit Court of Appeals

# U.S. District Court – District of Colorado
## District of Colorado (Denver)
## CRIMINAL DOCKET FOR CASE #: 1:20–cr–00305–DDD–2

Case title: USA v. Tew et al

Date Filed: 09/29/2020

Date Terminated: 08/13/2024

Assigned to: Judge Daniel D.
Domenico

**Defendant (2)**

**Kimberley Ann Tew**
*TERMINATED: 08/13/2024*
*also known as*
Kimberley Vertanen
*TERMINATED: 08/13/2024*

represented by **Peter R. Bornstein**
Peter R. Bornstein, Law Offices of
6060 Greenwood Plaza Boulevard
Suite 500
Greenwood Village, CO 80111
720–354–4440
Fax: 720–287–5674
Email: pbornstein@prblegal.com
*TERMINATED: 12/29/2022*
*LEAD ATTORNEY*
*Designation: CJA Appointment*

**David Scott Kaplan**
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80203
720–689–8909
Fax: 720–689–8909
Email: kaplan@slhlegal.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Jamie Hughes Hubbard**
Stimson LaBranche Hubbard, LLC
1652 North Downing Street
Denver, CO 80218
720–689–8909
Email: hubbard@slhlegal.com
*ATTORNEY TO BE NOTICED*
*Designation: CJA Appointment*

**Michael Hassard**
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005

718−737−7264
Email: michael@torekeland.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Tor Bernhard Ekeland**
Tor Ekeland Law, PLLC
30 Wall Street
8th Floor
New York, NY 10005
718−737−7264
Email: tor@torekeland.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

**Xuan Zhou**
Lewis Brisbois Bisgaard & Smith LLP
550 West C Street
Suite 1700
San Diego, CA 92101
619−233−1006
Email: xuan.zhou@lewisbrisbois.com
*TERMINATED: 03/07/2022*
*Designation: Retained*

| **Pending Counts** | **Disposition** |
| --- | --- |
| 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud) (1) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (21−22) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (25−26) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |
| 18 U.S.C. § 1343 (Wire Fraud) (31−32) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |

| | |
|---|---|
| 18 U.S.C. § 1956(h) (Conspiracy to Commit Money Laundering) (41) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (43−44) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (47) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (56) | Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. |

**Highest Offense Level (Opening)**

Felony

| **Terminated Counts** | **Disposition** |
|---|---|
| 18 U.S.C. § 1343 (Wire Fraud) (16) | Dismissed by Court during jury trial. |
| 18 U.S.C. § 1957 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity) (48) | Defendant was found not guilty by jury at trial. |

**Highest Offense Level (Terminated)**

Felony

| **Complaints** | **Disposition** |
|---|---|
| None | |

**Movant**

**National Air Cargo Holdings, Inc.**   represented by   **Eric S. Galler**
Galler Corporate Law Group
9466 Georgia Avenue
Suite 130
Silver Spring, MD 20910
301–728–3850
Email: egaller@gcorplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
Cohen Black Law LLC
1888 North Sherman Street
Suite 770
Denver, CO 80203
720–699–2323
Email: nancy@cohenblacklaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**National Air Cargo Group, Inc.**   represented by   **Eric S. Galler**
*doing business as*                      (See above for address)
National Airlines                        *LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Movant**

**Christopher J. Alf**   represented by   **Eric S. Galler**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Designation: Retained*

**Nancy Lin Cohen**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

*Designation: Retained*

**Movant**

**Atlantic Union Bank**                    represented by   **Lisa Marie Saccomano**
                                                            Kutak Rock LLP
                                                            2001 16th Street
                                                            Suite 1800
                                                            Denver, CO 80202
                                                            303−292−7796
                                                            Fax: 303−292−7799
                                                            Email: lisa.saccomano@kutakrock.com
                                                            *LEAD ATTORNEY*
                                                            *ATTORNEY TO BE NOTICED*
                                                            *Designation: Retained*

**Plaintiff**

**USA**                                   represented by   **Matthew T. Kirsch**
                                                            U.S. Attorney's Office
                                                            District of Colorado
                                                            1801 California Street
                                                            Suite 1600
                                                            Denver, CO 80202
                                                            303−454−0100
                                                            Fax: 303−454−0402
                                                            Email: matthew.kirsch@usdoj.gov
                                                            *TERMINATED: 11/17/2021*
                                                            *LEAD ATTORNEY*
                                                            *Designation: Federal Agency Attorney*

                                                            **Albert C. Buchman**
                                                            U.S. Attorney's Office
                                                            1801 California Street
                                                            Suite 1600
                                                            Denver, CO 80202
                                                            303−454−0228
                                                            Email: al.buchman@usdoj.gov
                                                            *TERMINATED: 12/12/2023*
                                                            *Designation: Federal Agency Attorney*

                                                            **Andrea Lee Surratt**
                                                            U.S. Attorney's Office
                                                            District of Colorado
                                                            1801 California Street
                                                            Suite 1600
                                                            Denver, CO 80202
                                                            303−454−0124
                                                            Email: andrea.surratt@usdoj.gov
                                                            *TERMINATED: 06/16/2022*

*Designation: Federal Agency Attorney*

**Bryan David Fields**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: bryan.fields3@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Hetal Janak Doshi**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
202–808–4241
Email: hetal.doshi@usdoj.gov
*TERMINATED: 02/02/2022*
*Designation: Federal Agency Attorney*

**Laura Beth Hurd**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0135
Fax: 303–454–0402
Email: laura.hurd@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Martha Ann Paluch**
U.S. Attorney's Office
District of Colorado
1801 California Street
Suite 1600
Denver, CO 80202
303–454–0100
Fax: 303–454–0402
Email: Martha.paluch@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

**Sarah Hunter Weiss**
U.S. Attorney's Office
District of Colorado

1801 California Street
Suite 1600
Denver, CO 80202
303−454−0100
Email: sarah.weiss@usdoj.gov
*ATTORNEY TO BE NOTICED*
*Designation: Federal Agency Attorney*

| Date Filed | # | Docket Text |
|---|---|---|
| 02/03/2021 | 83 | INDICTMENT as to Michael Aaron Tew (1) count(s) 1s, 2s−40s, 41s, 42s, 44s−56s, 57s−60s, Kimberley Ann Tew (2) count(s) 1, 16, 21−22, 25−26, 31−32, 41, 43−44, 47−48, 56, Jonathan K. Yioulos (3) count(s) 1, 2−40. (Attachments: # 1 Penalty Sheet, # 2 Penalty Sheet, # 3 Penalty Sheet) (athom, ) Modified on 2/9/2021 to correct text (athom, ). (Entered: 02/04/2021) |
| 02/03/2021 | 84 | RESTRICTED DOCUMENT − Level 4 as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 02/04/2021) |
| 02/03/2021 | 87 | Summons Issued as to Kimberley Ann Tew. Initial Appearance set for 2/10/2021 02:00 PM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (athom, ) (Entered: 02/04/2021) |
| 02/10/2021 | 96 | MINUTE ENTRY for Initial Appearance, Arraignment, Discovery and Detention Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 2/10/2021. Defendant present on summons and consents to proceeding by video conference. Defendant advised. Defendant is not requesting court appointed counsel. Plea of NOT GUILTY entered by defendant. Discovery memorandum executed.Parties address the Court regarding conditions of release. Bond set as to Kimberley Ann Tew (2) $10,000 Unsecured with the conditions as set forth in the Order Setting Conditions of Release. Defendant is ordered to report to the probation office on 2−11−21 at 1:00 p.m. Defendant advised of conditions of bond. Counsel is directed to chambers. (Total time: 28 minutes, Hearing time: 2:31−2:59)<br><br>**APPEARANCES ALL PARTIES APPEAR BY VIDEO CONFERENCE**: Hetal Doshi and Matthew Kirsch on behalf of the Government, Jamie Hubbard on behalf of the defendant, Tommie Anderson on behalf of pretrial. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 02/10/2021) |
| 02/10/2021 | 97 | Discovery Conference Memorandum and ORDER: Estimated Trial Time − 8 days as to Kimberley Ann Tew by Magistrate Judge Kristen L. Mix on 2/10/21. (lgale, ) (Entered: 02/10/2021) |
| 02/10/2021 | 98 | Unsecured Bond Entered as to Kimberley Ann Tew in amount of $10,000 (lgale, ) (Entered: 02/10/2021) |
| 02/10/2021 | 99 | ORDER Setting Conditions of Release as to Kimberley Ann Tew (2) $10,000 Unsecured by Magistrate Judge Kristen L. Mix on 2/10/21. (lgale, ) (Entered: 02/10/2021) |
| 02/11/2021 | 101 | ORDER Setting Trial Date and Related Deadlines as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. The court EXCLUDES nineteen days from Mr. Tew's Speedy Trial clock. Motions due by 3/12/2021. Responses due by 3/17/2021. Eight−day Jury Trial set for 4/19/2021 at 09:00 AM in Courtroom A 702 |

| | | |
|---|---|---|
| | | before Judge Daniel D. Domenico. Trial Preparation Conference set for 4/12/2021 at 01:30 PM in Courtroom A 702 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 02/11/2021. (athom, ) (Entered: 02/11/2021) |
| 02/11/2021 | 104 | Passport Receipt as to Kimberley Ann Tew. Surrender of passport re Bond Conditions; Passport Number 522213975 issued by USA. (athom, ) (Entered: 02/12/2021) |
| 02/16/2021 | 105 | Summons Returned Executed on 2/11/2021 as to Kimberley Ann Tew. (angar, ) (Entered: 02/16/2021) |
| 02/25/2021 | 106 | NOTICE OF ATTORNEY APPEARANCE: Tor Bernhard Ekeland appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Tor Bernhard Ekeland added to party Michael Aaron Tew(pty:dft), Attorney Tor Bernhard Ekeland added to party Kimberley Ann Tew(pty:dft) (Ekeland, Tor) (Entered: 02/25/2021) |
| 02/28/2021 | 108 | MOTION for Hearing *Regarding Joint Representation Pursuant to Fed. R. Crim. P. 44* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Doshi, Hetal) (Entered: 02/28/2021) |
| 03/01/2021 | 109 | MINUTE ORDER regarding 108 motion for hearing concerning joint representation of Defendants Michael Aaron Tew and Kimberley Ann Tew. No later than 4:00 PM on 3/4/2021, Mr. Tew, Ms. Tew, and the Government must confer and email the court at domenico_chambers@cod.uscourts.gov with three mutually agreeable dates for a hearing on the Government's motion (Doc. 108) from the following list of dates: 3/9/21, 3/10/21, 3/11/21, 3/17/21, or 3/18/21. Mr. and Ms. Tew must file their responses to the Government's motion, if any, no later than 3/5/2021. SO ORDERED by Judge Daniel D. Domenico on 3/1/2021. Text Only Entry (dddlc2, ) (Entered: 03/01/2021) |
| 03/01/2021 | 110 | NOTICE OF ATTORNEY APPEARANCE Andrea Lee Surratt appearing for USA. Attorney Andrea Lee Surratt added to party USA(pty:pla) (Surratt, Andrea) (Entered: 03/01/2021) |
| 03/02/2021 | 112 | ORDER setting hearing on 108 motion concerning joint representation and 111 motion to withdraw. A hearing on the Government's motion concerning joint representation (Doc. 108) and Thomas R. Ward's motion to withdraw as counsel (Doc. 111) is hereby set for 3/18/2021 at 10:30 AM before Judge Daniel D. Domenico by video–teleconference. Counsel are directed to contact Courtroom Deputy Patti Glover at patricia_glover@cod.uscourts.gov no later than three business days before the hearing for instructions on how to proceed. SO ODERED by Judge Daniel D. Domenico on 3/2/2021. Text Only Entry (dddlc2, ) (Entered: 03/02/2021) |
| 03/03/2021 | 113 | Unopposed MOTION to Continue *Deadline for Production of Discovery* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Doshi, Hetal) (Entered: 03/03/2021) |
| 03/03/2021 | 114 | ORDER granting 113 Motion to Continue. The Government must produce discovery in this case no later than 14 days after the court rules on the Government's motion concerning joint representation. SO ORDERED by Judge Daniel D. Domenico on 3/3/2021. (dddlc2, ) (Entered: 03/03/2021) |
| 03/11/2021 | 115 | MOTION to Continue *FOR A 180–DAY ENDS OF JUSTICE CONTINUANCE UNDER 18 U. S. C. § 3161(h)(7)* by Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) |

| | | (Entered: 03/11/2021) |
|---|---|---|
| 03/18/2021 | 116 | MINUTE ENTRY for Motion Hearing as to Michael Aaron Tew, Kimberley Ann Tew, held before Judge Daniel D. Domenico on 3/18/2021. granting 108 Motion for Hearing as to Michael Aaron Tew; Kimberley Ann Tew (2); granting 111 Motion to Withdraw as Attorney. Thomas Richard Ward withdrawn from case as to Michael Aaron Tew granting 115 Motion to Continue as to all defendants. Pretrial Motions due by 8/30/2021, Responses due by 9/6/2021, Jury Trial (8 days) set for 10/12/2021 – 10/21/2021 09:00 AM; Trial Preparation Conference set for 9/27/2021 at 10:30 AM all in Courtroom A 702 before Judge Daniel D. Domenico Court Reporter: Tracy Weir. (pglov) (Entered: 03/18/2021) |
| 03/29/2021 | 119 | MOTION for Leave to Restrict by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 03/29/2021) |
| 03/29/2021 | 120 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Doshi, Hetal) (Entered: 03/29/2021) |
| 03/29/2021 | 121 | RESTRICTED DOCUMENT – Level 1: by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Doshi, Hetal) (Entered: 03/29/2021) |
| 03/30/2021 | 124 | RESTRICTED DOCUMENT – Level 1: as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 03/30/2021) |
| 03/30/2021 | 125 | ORDER granting 119 Motion for Leave to Restrict as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. By Judge Daniel D. Domenico on 03/30/2021. Text Only Entry (athom, ) (Entered: 03/30/2021) |
| 03/31/2021 | 126 | Unopposed MOTION for Protective Order by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Doshi, Hetal) (Entered: 03/31/2021) |
| 04/01/2021 | 127 | ORDER Granting 126 Unopposed Motion for Protective Order as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. By Judge Daniel D. Domenico on 04/01/2021. (athom, ) (Entered: 04/01/2021) |
| 05/13/2021 | 130 | TRANSCRIPT of TRANSCRIPT OF PROCEEDINGS as to Kimberley Ann Tew held on 02/10/2021 before Magistrate Judge Mix. Pages: 1–26. Prepared by: AB Litigation Services. **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.** Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 05/13/2021) |
| 06/18/2021 | 133 | NOTICE *OF DEFENDANT KIMBERLEY TEWS MEMORANDUM IN SUPPORT TO MODIFY THE CONDITIONS OF HER RELEASE* by Kimberley Ann Tew |

| | | (Ekeland, Tor) Modified on 7/2/2021 to correct filer (athom, ). (Entered: 06/18/2021) |
|---|---|---|
| 06/18/2021 | 134 | MOTION to Modify Conditions of Release by Kimberley Ann Tew. (Attachments: # 1 Affidavit Decl Kimbery Tew ISO Motion to Modify the Conditions)(Ekeland, Tor) Modified on 7/2/2021 to correct filer (athom, ). (Entered: 06/18/2021) |
| 06/21/2021 | 135 | ORDER REFERRING MOTION TO MODIFY CONDITIONS OF PRE–TRIAL RELEASE 134 filed by Kimberly Tew. The Court refers the motion to Magistrate Judge Kristen L. Mix because revocation or modification of a prior release order under § 3142 "is available only when the review of a detention or release order is being conducted by the same judicial officer who entered the order." See United States v. Cisneros, 328 F.3d 610, 614 (10th Cir. 2003); see also United States v. Anaya, 376 F. Supp. 2d 1261, 1262–63 (D.N.M. 2005). SO ORDERED by Judge Daniel D. Domenico on 6/21/2021. Text Only Entry (dddlc2, ) (Entered: 06/21/2021) |
| 06/23/2021 | 136 | NOTICE OF ATTORNEY APPEARANCE: Michael Hassard appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Michael Hassard added to party Michael Aaron Tew(pty:dft), Attorney Michael Hassard added to party Kimberley Ann Tew(pty:dft) (Hassard, Michael) (Entered: 06/23/2021) |
| 07/08/2021 | 137 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 07/08/2021 as to Kimberley Ann Tew re 134 MOTION to Modify Conditions of Release filed by Kimberley Ann Tew Motion Hearing set for 7/15/2021 11:00 AM in Courtroom A 401 before Magistrate Judge Kristen L. Mix. (alave, ) (Entered: 07/09/2021) |
| 07/15/2021 | 138 | MINUTE ENTRY for Motion Hearing as to Kimberley Ann Tew held before Magistrate Judge Kristen L. Mix on 7/15/2021. Defendant present on bond. Argument by defense counsel and counsel for the government as to 134 Motion to Modify Conditions of Release. Court addresses defense counsel. The Court modifies defendant's bond to remove the condition of home confinement and radio frequency and imposes GPS monitoring and imposes a curfew of 8:00 a.m.–9:00 p.m. Probation is granted discretion to allow exceptions to the curfew when requested by defendant. Defendant acknowledges the new conditions of bond and agrees to abide by them. Defendant's bond continued. (Total time: 22 minutes, Hearing time: 11:08–11:30)<br><br>**APPEARANCES**: Matthew Kirsch, Hetal Doshi and Andrea Surratt on behalf of the Government, Tor Ekeland and Michael Hassard on behalf of the defendant, Carlos Morales on behalf of probation. FTR: KLM Courtroom A401. (lgale, ) Text Only Entry (Entered: 07/15/2021) |
| 08/10/2021 | 143 | Second MOTION to Continue by Michael Aaron Tew, Kimberley Ann Tew. (Hassard, Michael) Modified on 8/11/2021 to correct applicable parties (athom, ). (Entered: 08/10/2021) |
| 08/20/2021 | 144 | TRANSCRIPT of MOTION HEARING as to Kimberley Ann Tew held on 07/15/2021 before Magistrate Judge Mix. Pages: 1–20. Prepared by: AB Litigation Services.<br><br> **NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts** |

| | | **document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (AB Court Reporting & Video, Inc., ) (Entered: 08/20/2021) |
|---|---|---|
| 09/17/2021 | 146 | **WITHDRAWN** – Unopposed MOTION to Travel *MOTION UPON ATTORNEY DECLARATION SEEKING ORDER PERMITTING TRAVEL BEYOND PRE–TRIAL RELEASE ORDER AT PARAGRAPH 7(f)* by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) Modified on 9/20/2021 to correct filers (athom, ). Modified on 2/4/2022 to withdraw pursuant to 173 Order (athom, ). (Entered: 09/17/2021) |
| 09/17/2021 | 147 | MOTION to Withdraw as Attorney by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Kirsch, Matthew) (Entered: 09/17/2021) |
| 09/20/2021 | 148 | MOTION to Withdraw Document 146 Unopposed MOTION to Travel *MOTION UPON ATTORNEY DECLARATION SEEKING ORDER PERMITTING TRAVEL BEYOND PRE–TRIAL RELEASE ORDER AT PARAGRAPH 7(f)* by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) Modified on 9/22/2021 to correct filers (athom, ). (Entered: 09/20/2021) |
| 09/22/2021 | 149 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' Unopposed Motion for a 12–Month Ends of Justice Continuance (Doc. 143 ) is PARTIALLY GRANTED. One hundred eighty (180) days, from 9/22/2021 to 3/21/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. Motions due by 1/3/2022. Responses due by 1/10/2022. The eight–day Jury Trial set to begin 10/12/2021 is VACATED and RESET to 4/4/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 09/27/2021 is VACATED and RESET to 3/21/2022 at 01:00 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 09/22/2021. (athom, ) (Entered: 09/22/2021) |
| 10/12/2021 | 151 | NOTICE OF ATTORNEY APPEARANCE: Tor Bernhard Ekeland *Attorney Xuan Zhou appearing for Michael Aaron Tew and Kimberley Ann Tew* appearing for Michael Aaron Tew, Kimberley Ann Tew (Ekeland, Tor) Modified on 10/13/2021 to correct applicable parties (athom, ). (Entered: 10/12/2021) |
| 10/13/2021 | 152 | NOTICE OF NONCOMPLIANCE WITH COURT RULES/PROCEDURES: re: 151 Notice of Attorney Appearance – Defendant, filed by attorney Xuan Zhou. The s/signature did not match the filers name on the account for which the login and password are registered. Future documents must be filed pursuant to D.C.COLO.LCivR 49.1(a) and 4.3(c) of the Electronic Case Filing Procedures (Criminal Cases). Attorney Xuan Zhou has failed to comply D.C.COLO.LCr49.1(a) and 4.3(d) of the Electronic Case Filing Procedures (Criminal Cases), which mandate the correct form for an attorneys signature block. This document does not have a s/ signature and must be re–filed. Xuan Zhou must re–file the above referenced document which must contain her s/ signature using her own log in and password. **Counsel is REMINDED that your firm does not represent defendant Yioulos. UNLESS you are filing a joint pleading that pertains to defendant Yioulos, you should ONLY be selecting the Tew defendants as the filers and as the applicable parties. If you are unclear about how documents should be filed and/or which parties should be selected when filing your documents, please contact the Clerk's office for assistance or clarification**. (Text Only Entry) (athom, ) (Entered: |

| | | 10/13/2021) |
|---|---|---|
| 11/17/2021 | 153 | ORDER GRANTING 147 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Matthew T. Kirsch as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States of America will continue to be represented by attorneys Hetal Doshi and Andrea Surratt. SO ORDERED by Judge Daniel D. Domenico on 11/17/2021. Text Only Entry (dddlc4) (Entered: 11/17/2021) |
| 11/19/2021 | 157 | NOTICE OF ATTORNEY APPEARANCE: Xuan Zhou appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Xuan Zhou added to party Michael Aaron Tew(pty:dft), Attorney Xuan Zhou added to party Kimberley Ann Tew(pty:dft) (Zhou, Xuan) (Entered: 11/19/2021) |
| 11/29/2021 | 158 | NOTICE OF ATTORNEY APPEARANCE Bryan David Fields appearing for USA. Attorney Bryan David Fields added to party USA(pty:pla) (Fields, Bryan) (Entered: 11/29/2021) |
| 11/29/2021 | 159 | MOTION to Withdraw as Attorney by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Doshi, Hetal) (Entered: 11/29/2021) |
| 12/27/2021 | 162 | MOTION to Withdraw as Attorney by Tor Ekeland by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) (Entered: 12/27/2021) |
| 12/27/2021 | 163 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Ekeland, Tor) (Entered: 12/27/2021) |
| 12/27/2021 | 164 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Entered: 12/27/2021) |
| 12/27/2021 | 165 | Third MOTION to Continue by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Ekeland, Tor) (Entered: 12/27/2021) |
| 12/27/2021 | 166 | MOTION to Withdraw as Attorney by Xuan Zhou by Michael Aaron Tew, Kimberley Ann Tew. (Zhou, Xuan) (Entered: 12/27/2021) |
| 12/27/2021 | 167 | MOTION to Withdraw as Attorney by Michael Hassard by Michael Aaron Tew, Kimberley Ann Tew. (Hassard, Michael) (Entered: 12/27/2021) |
| 01/31/2022 | 169 | ORDER REFERRING MOTIONS as to Michael Aaron Tew, Kimberley Ann Tew. 167 MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, 162 MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, 159 MOTION to Withdraw as Attorney filed by USA, 166 MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Motions referred to Magistrate Judge Kristen L. Mix. SO ORDERED by Judge Daniel D. Domenico on 1/31/2022. Text Only Entry (dddlc2, ) (Entered: 01/31/2022) |
| 02/02/2022 | 171 | ORDER granting 159 Motion to Withdraw as Attorney. Hetal Janak Doshi withdrawn from case as to Michael Aaron Tew (1), Kimberley Ann Tew (2), Jonathan K. Yioulos (3). Attorney Hetal Doshi is relieved of any further representation of the United States in this case. The Clerk of Court is instructed to terminate Attorney Doshi as counsel of record, and to remove this name from the electronic certificate of mailing. The Government shall continue to be represented by Attorney Bryan Fields. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, ) (Entered: 02/02/2022) |

| 02/02/2022 | 172 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re <u>167</u> MOTION to Withdraw as Attorney by Michael Hassard filed by Michael Aaron Tew, Kimberley Ann Tew, <u>162</u> MOTION to Withdraw as Attorney by Tor Ekeland filed by Michael Aaron Tew, Kimberley Ann Tew, <u>166</u> MOTION to Withdraw as Attorney by Xuan Zhou filed by Michael Aaron Tew, Kimberley Ann Tew. Defendant Michael Tew and Defendant Kimberley Tew shall each file a separate financial affidavit under restriction at Level 3 NO LATER THAN FEBRUARY 14, 2022. by Magistrate Judge Kristen L. Mix on 2/2/2022. Text Only Entry (klmlc2, ) (Entered: 02/02/2022) |
|---|---|---|
| 02/02/2022 | 173 | ORDER. The Motion to Withdraw Document <u>148</u> as to Michael Aaron Tew and Kimberly Ann Tew is GRANTED. Accordingly, the Motion to Travel <u>146</u> is DENIED AS MOOT. SO ORDERED by Judge Daniel D. Domenico on 2/2/2022. Text Only Entry (dddlc2, ) (Entered: 02/02/2022) |
| 02/04/2022 | <u>174</u> | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' counsel Motion for a 3–Month Ends of Justice Continuance (Doc. <u>165</u> ) is GRANTED. Ninety (90) days, from 2/4/2022 to 5/5/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. Motions due by 5/12/2022. Responses due by 5/19/2022. The eight–day Jury Trial set to begin 4/4/2022 is VACATED and RESET to 6/13/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 3/21/2022 is VACATED and RESET to 6/2/2022 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 02/04/2022. (athom, ) (Entered: 02/04/2022) |
| 02/10/2022 | <u>175</u> | Pro Se Letter by Michael Aaron Tew, Kimberley Ann Tew. (athom, ) (Entered: 02/10/2022) |
| 02/10/2022 | 176 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew <u>175</u> MOTION for Extension of Time to File filed by Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/10/2022. Text Only Entry (dddlc2, ) (Entered: 02/10/2022) |
| 02/14/2022 | <u>177</u> | MINUTE ORDER by Magistrate Judge Kristen L. Mix on February 14, 2022. This matter is before the Court on Defendants' Motion for Extension of Time <u>175</u> (the "Motion"). Defendants ask for a two–week extension to file financial affidavits because they "are currently reviewing an engagement letter with a law firm based in Denver" and, therefore, may not require appointment of counsel through the CJA. IT IS HEREBY ORDERED that the Motion <u>175</u> is GRANTED. The deadline for each Defendant to file a separate financial affidavit under restriction at Level 3 is extended to February 28, 2022. (csarr, ) (Entered: 02/14/2022) |
| 02/25/2022 | <u>178</u> | NOTICE OF ATTORNEY APPEARANCE: Peter R. Bornstein appearing for Michael Aaron Tew, Kimberley Ann TewAttorney Peter R. Bornstein added to party Michael Aaron Tew(pty:dft), Attorney Peter R. Bornstein added to party Kimberley Ann Tew(pty:dft) (Bornstein, Peter) (Entered: 02/25/2022) |
| 03/04/2022 | 179 | Order. Defense counsel is directed to file a status report on or before 3/10/2022 confirming that he has discussed the potential conflicts of interest that joint representation of criminal codefendants may raise with his clients, and that they each continue to understand these dangers and risks and continue to consent to proceeding with joint counsel in spite of them. SO ORDERED by Judge Daniel D. Domenico on 3/4/2022. Text Only Entry (dddlc2, ) (Entered: 03/04/2022) |

| 03/07/2022 | 180 | ORDER granting <u>162</u> Motion to Withdraw as Attorney. Attorney Tor Ekeland is relieved of any further representation of Defendants Michael Tew and Kimberly Tew. The Clerk of Court is instructed to terminate Attorney Ekeland as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard, Peter Bornstein, and Xuan Zhou. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
|---|---|---|
| 03/07/2022 | 181 | ORDER granting <u>166</u> Motion to Withdraw as Attorney. Attorney Xuan Zhou is relieved of any further representation of Defendants Michael Tew and Kimberly Tew. The Clerk of Court is instructed to terminate Attorney Zhou as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorneys Michael Hassard and Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/07/2022 | 182 | ORDER granting <u>167</u> Motion to Withdraw as Attorney. Attorney Michael Hassard is relieved of any further representation of Defendants Michael Tew and Kimberly Tew. The Clerk of Court is instructed to terminate Attorney Hassard as counsel of record, and to remove this name from the electronic certificate of mailing. Defendants Michael Tew and Kimberly Tew shall continue to be represented by Attorney Peter Bornstein. by Magistrate Judge Kristen L. Mix on 3/7/2022. Text Only Entry (klmlc2, ) (Entered: 03/07/2022) |
| 03/09/2022 | <u>183</u> | Unopposed MOTION to Travel by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 03/09/2022) |
| 03/10/2022 | <u>184</u> | STATUS REPORT by Michael Aaron Tew, Kimberley Ann Tew (Bornstein, Peter) (Entered: 03/10/2022) |
| 03/14/2022 | 185 | Order granting <u>183</u> Motion to travel. Defendants Michael and Kimberly Tew may travel out of state with their children for spring break as requested in their motion. Their pretrial monitoring is modified to stand–alone location monitoring without a curfew. SO ORDERED by Judge Daniel D. Domenico on 3/14/2022. Text Only Entry (dddlc2, ) (Entered: 03/14/2022) |
| 03/22/2022 | <u>187</u> | MOTION to Amend/Correct *Conditions of Release* by Kimberley Ann Tew. (Attachments: # <u>1</u> Exhibit A)(Bornstein, Peter) (Entered: 03/22/2022) |
| 03/24/2022 | 188 | MINUTE ORDER re. <u>187</u> Motion to Amend/Correct Conditions of Supervised Release. The Court reviews the conditions of pretrial release de novo, and having reviewed the transcripts of the two previous hearings as well as the recommendations of the Probation Department, does not find that the Government has shown by a preponderance of evidence that location monitoring is required to reasonably assure the appearance of Kimberley Tew or the safety of another person or the community. The government has until 11:00am on 3/25/2022 to respond. SO ORDERED by Judge Daniel D. Domenico on 3/24/2022. Text Only Entry (dddlc2, ) (Entered: 03/24/2022) |
| 03/25/2022 | <u>189</u> | RESPONSE in Opposition by USA as to Kimberley Ann Tew re <u>187</u> MOTION to Amend/Correct *Conditions of Release* (Fields, Bryan) (Entered: 03/25/2022) |
| 03/25/2022 | <u>190</u> | ORDER GRANTING <u>187</u> Motion for Amendment of Conditions of Release as to Kimberley Ann Tew (2). It is ORDERED that Ms. Tew's conditions of release are modified to remove the requirement that she submit to GPS location monitoring. Ms. |

| | | Tew is directed to contact the Probation Department for instructions on how to comply with her conditions of release going forward. By Judge Daniel D. Domenico on 3/25/2022. (dddlc1, ) (Entered: 03/25/2022) |
|---|---|---|
| 03/31/2022 | 192 | ORDER granting <u>164</u> Motion for Leave to Restrict. Doc. <u>163</u> is restricted at Level 3. SO ORDERED by Judge Daniel D. Domenico on 3/31/2022. Text Only Entry (dddlc2, ) (Entered: 03/31/2022) |
| 04/26/2022 | <u>193</u> | Unopposed MOTION to Continue *Trial and for Ends of Justice Finding Pursuant to 18 U.S.C. § 3161(h)(7)* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 04/26/2022) |
| 05/10/2022 | <u>194</u> | Unopposed MOTION for Leave to File Excess Pages *for Motion to Suppress* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/10/2022) |
| 05/12/2022 | 195 | ORDER granting <u>194</u> Motion for Leave to File Excess Pages as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 6000 words for their motion to suppress and the government has the same number for its response. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, ) (Entered: 05/12/2022) |
| 05/12/2022 | <u>196</u> | Unopposed MOTION for Extension of Time to File *Pre−Trial Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/12/2022 | <u>197</u> | Unopposed MOTION for Reconsideration re 195 Order on Motion for Leave to File Excess Pages, *Motion to Suppress* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/12/2022 | <u>198</u> | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. Defendants' Motion to Continue Trial and for an Ends of Justice Finding (Doc. <u>193</u> ) is GRANTED. One hundred and eighty (180) days, from 5/12/2022 to 11/8/2022, will be excluded from the computation of Defendants' Michael Tew and Kimberley Tew's Speedy Trial Act time. The deadline to file motions to suppress remains 5/12/2022. Other pretrial Motions due by 6/13/2022. Responses due by 6/20/2022. The eight−day Jury Trial set for 06/13/2022 is VACATED and RESET to 12/5/2022 at 09:00 AM in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference set for 6/2/2022 is VACATED and RESET to 11/29/2022 at 03:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 05/12/2022. (athom, ) (Entered: 05/12/2022) |
| 05/12/2022 | 199 | ORDER granting <u>197</u> Motion for Reconsideration re <u>197</u> Unopposed MOTION for Reconsideration re 195 Order on Motion for Leave to File Excess Pages, *Motion to Suppress* filed by Michael Aaron Tew, Kimberley Ann Tew as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The defendants have 12,000 words for their motion to suppress, and the government has the same number with which to respond. SO ORDERED by Judge Daniel D. Domenico on 5/12/2022. Text Only Entry (dddlc2, ) (Entered: 05/12/2022) |
| 05/12/2022 | <u>200</u> | Motion to Suppress Evidence by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # <u>1</u> Exhibit A, # <u>2</u> Exhibit B, # <u>3</u> Exhibit C, # <u>4</u> Exhibit D, # <u>5</u> Exhibit E, # <u>6</u> Exhibit F, # <u>7</u> Exhibit G, # <u>8</u> Exhibit H, # <u>9</u> Exhibit I, # <u>10</u> Exhibit J, # <u>11</u> Exhibit K, # <u>12</u> Exhibit L, # <u>13</u> Exhibit M, # <u>14</u> Exhibit N, # <u>15</u> Exhibit O, # <u>16</u> Exhibit P, # <u>17</u> Exhibit Q, # <u>18</u> Exhibit R, # <u>19</u> Exhibit S, # <u>20</u> Exhibit T, # <u>21</u> Exhibit U, # <u>22</u> Exhibit V, # <u>23</u> Exhibit W, # <u>24</u> Exhibit X, # <u>25</u> Exhibit Y, # <u>26</u> Exhibit Z, # <u>27</u> Exhibit AA, # <u>28</u> Exhibit BB)(Bornstein, Peter) Modified on |

| | | 8/22/2022 to add document title and un restrict Motion ONLY per <u>244</u> Response. (sphil, ). Modified on 10/28/2022 to add text and correct event (athom, ). (Entered: 05/12/2022) |
|---|---|---|
| 05/12/2022 | <u>201</u> | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/12/2022) |
| 05/18/2022 | <u>202</u> | Unopposed MOTION for Extension of Time to File Response/Reply as to <u>200</u> Restricted Document – Level 1,, by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 05/18/2022) |
| 05/19/2022 | <u>203</u> | NOTICE OF ATTORNEY APPEARANCE Albert C. Buchman appearing for USA. Attorney Albert C. Buchman added to party USA(pty:pla) (Buchman, Albert) (Entered: 05/19/2022) |
| 05/19/2022 | <u>204</u> | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re <u>201</u> MOTION for Leave to Restrict *(Response to Motion to Suppress, ECF No. 200)* (Attachments: # <u>1</u> Government Filter Memo, # <u>2</u> Filter Memo – Attachment 1, # <u>3</u> Filter Memo – Attachment 2, # <u>4</u> Filter Memo – Attachment 3, # <u>5</u> Filter Memo – Attachment 4, # <u>6</u> Filter Memo – Attachment 5, # <u>7</u> Filter Memo – Attachment 6, # <u>8</u> Filter Memo – Attachment 7, # <u>9</u> Filter Memo – Attachment 8, # <u>10</u> Filter Memo – Attachment 9)(Fields, Bryan) (Entered: 05/19/2022) |
| 05/20/2022 | <u>205</u> | MOTION to Withdraw as Attorney by Andrea Surratt by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Surratt, Andrea) (Entered: 05/20/2022) |
| 05/20/2022 | <u>208</u> | ORDER granting <u>202</u> Motion for Extension of Time to File Response/Reply. The government has until and including 6/9/2022 to file a response to the motion to suppress. SO ORDERED by Judge Daniel D. Domenico on 5/20/2022. Text Only Entry (dddlc2, ) (Entered: 05/20/2022) |
| 05/25/2022 | <u>209</u> | MOTION to Disclose Grand Jury Material to Defendant by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # <u>1</u> Proposed Order (PDF Only))(Fields, Bryan) (Entered: 05/25/2022) |
| 05/25/2022 | <u>210</u> | Unopposed MOTION for Leave to File *Reply to Government's Response to Defendant's Motion to Suppress Evidence* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 05/25/2022) |
| 06/13/2022 | <u>212</u> | Unopposed MOTION for Order *Requiring the Government to Submit Expert Witness Opinions 120 Days Before Trial* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | <u>213</u> | Unopposed MOTION for Leave to File *Additional Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | <u>214</u> | MOTION for Sanctions *for Violating Communication Privileges* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | <u>215</u> | MOTION for Franks Hearing by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | <u>217</u> | Unopposed MOTION for Extension of Time to File Response/Reply *to Defendant Motions Filed on June 13, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 06/13/2022) |

| 06/13/2022 | 218 | MOTION to Sever Defendant by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 220 | MOTION for James Hearing *and for Government to File a James Proffer* by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 06/13/2022) |
| 06/13/2022 | 221 | MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D)(Bornstein, Peter) (Entered: 06/13/2022) |
| 06/16/2022 | 222 | ORDER GRANTING 205 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Andrea Surratt as counsel of record, and to remove this name from the electronic certificate of mailing. Plaintiff United States will continue to be represented by attorney Bryan Fields and Albert Buchman. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, ) (Entered: 06/16/2022) |
| 06/16/2022 | 223 | ORDER GRANTING 210 Motion for Leave to File a Reply. Defendants have 5000 words for a reply to be filed on or before 6/22/2022. SO ORDERED by Judge Daniel D. Domenico on 6/16/2022. Text Only Entry (dddlc2, ) (Entered: 06/16/2022) |
| 06/16/2022 | 224 | ORDER Granting 209 Motion to Disclose Grand Jury Material as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 06/16/2022. (athom, ) (Entered: 06/16/2022) |
| 06/22/2022 | 226 | REPLY by Michael Aaron Tew, Kimberley Ann Tew *in Support of Motion to Suppress Evidence [Doc.200–Restricted]* (Bornstein, Peter) (Entered: 06/22/2022) |
| 07/14/2022 | 228 | ORDER granting 217 Motion for Extension of Time to File Response/Reply. The government has until and including 8/9/2022 to file responses to the motions filed on 6/13/2022. SO ORDERED by Judge Daniel D. Domenico on 8/14/2022. Text Only Entry (dddlc2, ) (Entered: 07/14/2022) |
| 08/09/2022 | 229 | NOTICE *of Conventional Filing Exhibit 1–3* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 230 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 218 MOTION to Sever Defendant (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 231 | REPLY TO RESPONSE to Motion by USA as to Michael Aaron Tew, Kimberley Ann Tew re 219 MOTION for James Hearing *and for Government to File a James Proffer* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 232 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 220 MOTION for James Hearing *and for Government to File a James Proffer* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 233 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 215 MOTION for Franks Hearing (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 234 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 214 MOTION for Sanctions *for Violating Communication Privileges* (Buchman, Albert) (Entered: 08/09/2022) |
| 08/09/2022 | 235 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 216 MOTION to Suppress *the Use of Statements* (Attachments: # 1 Conventionally Submitted, # 2 Conventionally Submitted)(Buchman, Albert) (Entered: 08/09/2022) |

| 08/09/2022 | 236 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 221 MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* (Attachments: # 1 Conventionally Submitted)(Buchman, Albert) (Entered: 08/09/2022) |
|---|---|---|
| 08/09/2022 | 237 | Conventionally Submitted Material : 1 Card USB Flash Drive: Exhibit 1 and Exhibit 2 to Response in Opposition 235 re 229 Notice, by Plaintiff USA. Material placed in the oversized filing area Area D−5−5 of the Clerk's Office. Text Only Entry (athom, ) (submitted additional copy of USB placed in Chambers' mail box) (Entered: 08/11/2022) |
| 08/12/2022 | 238 | ORDER GRANTING IN PART 201 Motion for Leave to File Motion to Suppress Evidence as Restricted Level 1.<br><br>I must narrowly tailor any restrictions on public access, and must consider whether supplying a redacted version of a document in lieu of restricting access to the entire document would adequately protect the interests of the party seeking restriction. *United States v. Walker*, 761 F. App'x 822, 835 (10th Cir. 2019); Local Civ. R. 7.2(c)(4). Defendants Michael and Kimberly Tew have not shown that redacting the identified financial, medical, and other personal information from the motion to suppress is impracticable or would not adequately protect the privacy interests at stake.<br><br>Accordingly, the motion for leave to restrict is GRANTED IN PART with respect to the exhibits to the motion only. The Clerk of Court is directed to maintain Doc. 200 and Docs. 200−1 to 200−28 under Level 1 restriction. Plaintiff must file a public redacted version of the motion to suppress (Doc. 200 ) on or before 8/19/2022.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, ) (Entered: 08/12/2022) |
| 08/12/2022 | 239 | ORDER GRANTING IN PART 212 Defendants' Unopposed Motion to Require the Government to Submit Expert Witness Opinions 120 Days Before Trial.<br><br>Expert witness disclosures pursuant to Federal Rule of Criminal Procedure 16(a)(1)(G) and (b)(1)(C) must be made no later than 8/19/2022, and any challenges to such experts must be made no later than 9/9/2022.<br><br>Rebuttal expert witness disclosures must be made no later than 9/16/2022, and any challenges to such rebuttal experts must be made no later than 10/7/2022.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/12/2022. Text Only Entry (dddlc1, ) (Entered: 08/12/2022) |
| 08/15/2022 | 240 | Unopposed MOTION for Leave to File *Replies to Government's Responses to Motions* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 08/15/2022) |
| 08/15/2022 | 241 | ORDER REGARDING PRETRIAL DEADLINES AND PENDING MOTIONS.<br><br>Defendants' Unopposed Motion for Leave to File Additional Motions (Doc. 213 ) is GRANTED. Motions due 9/13/2022. Responses due 9/27/2022. No replies will be permitted without prior leave of the Court. |

|  |  | Defendants' Unopposed Motion for Leave to File Replies to Government's Responses to Motions (Doc. 240 ) is GRANTED. Replies due 8/23/2022.<br><br>A Motions Hearing is SET for 10/18/2022 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico.<br><br>Due to a conflict on the Court's calendar, the eight−day Jury Trial set for 12/5/2022 is VACATED and RESET to commence on 12/12/2022 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Due to a conflict on the Court's calendar, the Trial Preparation Conference set for 11/29/2022 is VACATED and RESET to 11/22/2022 at 01:30 PM in Courtroom A1002. See written Order for pretrial deadlines.<br><br>SO ORDERED by Judge Daniel D. Domenico on 8/15/2022. (dddlc1, ) (Entered: 08/15/2022) |
|---|---|---|
| 08/18/2022 | 242 | Unopposed MOTION for Order *to Reschedule Hearing Date on Motion* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 08/18/2022) |
| 08/18/2022 | 243 | ORDER GRANTING 242 Unopposed Motion to Reschedule Hearing Date on Motions as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Motions Hearing set for 10/18/2022 is VACATED and RESET to 10/12/2022 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 8/18/2022. Text Only Entry (dddlc1, ) (Entered: 08/18/2022) |
| 08/19/2022 | 244 | RESPONSE by Michael Aaron Tew, Kimberley Ann Tew re: 238 Order on Motion for Leave to Restrict,,,, (Bornstein, Peter) (Entered: 08/19/2022) |
| 08/23/2022 | 245 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 214 MOTION for Sanctions *for Violating Communication Privileges* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 246 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 221 MOTION to Suppress *Evidence from Search of 3222 East First Avenue, Apartment 224* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 247 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 219 MOTION for James Hearing *and for Government to File a James Proffer*, 220 MOTION for James Hearing *and for Government to File a James Proffer* (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 248 | REPLY TO RESPONSE to Motion by Kimberley Ann Tew re 218 MOTION to Sever Defendant (Bornstein, Peter) (Entered: 08/23/2022) |
| 08/23/2022 | 250 | REPLY TO RESPONSE to Motion by Michael Aaron Tew, Kimberley Ann Tew re 215 MOTION for Franks Hearing (Attachments: # 1 Affidavit Declaration of Michael A. Tew, # 2 Affidavit Declaration of Kimberley A. Tew)(Bornstein, Peter) (Entered: 08/23/2022) |
| 09/15/2022 | 251 | Unopposed MOTION to Travel *Out of State* by Kimberley Ann Tew. (Bornstein, Peter) (Entered: 09/15/2022) |
| 09/16/2022 | 252 | ORDER granting 251 Unopposed Motion to Travel as to Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 09/16/2022. Text Only Entry |

| | | |
|---|---|---|
| | | (dddlc5, ) (Entered: 09/16/2022) |
| 10/07/2022 | 253 | EXHIBIT LIST *for Suppression Hearing of October 12, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Exhibit List)(Fields, Bryan) (Entered: 10/07/2022) |
| 10/07/2022 | 254 | WITNESS LIST *for Suppression Hearing of October 12, 2022* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Witness List)(Fields, Bryan) (Entered: 10/07/2022) |
| 10/12/2022 | 255 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Suppression Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 10/12/2022. Taking under advisement 214 Motion for Sanctions as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying 215 Motion for Franks Hearing as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Taking under advisement 216 Motion to Suppress as to Michael Aaron Tew (1). Taking under advisement 200 Defendants Motion. Denying 219 Motion for James Hearing as to Michael Aaron Tew (1). Taking under advisement 221 Motion to Suppress as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Taking under advisement 218 Motion to Sever Defendant as to Kimberley Ann Tew (2). Taking under advisement 220 Motion for James Hearing as to Kimberley Ann Tew (2). Bond continued as to both defendants. Court Reporter: Julie Thomas. (rkeec) (Entered: 10/13/2022) |
| 10/12/2022 | 256 | WITNESS LIST by USA as to Michael Aaron Tew (1), Kimberley Ann Tew (2). With date and time testified. (rkeec) (Entered: 10/13/2022) |
| 10/12/2022 | 257 | EXHIBIT LIST by USA as to Michael Aaron Tew (1), Kimberley Ann Tew (2). (rkeec) (Entered: 10/13/2022) |
| 10/27/2022 | 258 | ORDER Denying 221 Motion to Suppress Evidence from Search of 3222 East First Avenue, Apartment 224 as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 260 | ORDER Denying 218 Motion for Severance as to Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 261 | ORDER Denying 214 Motion for Sanctions as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/27/2022 | 262 | ORDER Denying 200 Motion to Suppress Evidence as to Michael Aaron Tew, Kimberley Ann Tew. By Judge Daniel D. Domenico on 10/27/2022. (athom, ) (Entered: 10/28/2022) |
| 10/28/2022 | 263 | ORDER GRANTING IN PART 220 Defendant Kimberly Ann Tew's Motion for a *James* Proffer and Hearing. Ms. Tew's request for the Government to file a *James* proffer and for the Court to hold a *James* hearing is granted, though not on the timeline requested.<br><br>The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with the referenced exhibits and an accompanying brief, on or before 1/6/2023. The defendants must file their responses to the Government's *James* log and brief on or before 1/20/2023. A *James* Hearing is SET for 1/26/2023 at 09:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. |

| | | In light of the above, the Trial Preparation Conference set for 11/22/2022 is VACATED and RESET for 3/7/2022 at 09:30 AM in Courtroom A1002, and the eight–day Jury Trial set for 12/12/2022 is VACATED and RESET for 3/13/2023 at 09:00 AM in Courtroom A1002. Counsel and pro se parties must be present at 08:30 AM on the first day of trial. Pretrial deadlines remain as stated in the Court's Order Regarding Pretrial Deadlines and Pending Motions (Doc. 241 ).<br><br>SO ORDERED by Judge Daniel D. Domenico on 10/28/2022. Text Only Entry (dddlc1, ) (Entered: 10/28/2022) |
|---|---|---|
| 11/15/2022 | 264 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/15/2022) |
| 11/15/2022 | 265 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/15/2022) |
| 11/15/2022 | 266 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Bornstein, Peter) (Entered: 11/15/2022) |
| 11/16/2022 | 267 | Unopposed MOTION to Travel *Out of State* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 11/16/2022) |
| 11/17/2022 | 268 | ORDER granting 267 Motion to Travel as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Mr. and Mrs. Tew are granted permission to leave the state of Colorado and travel to Marquette, Michigan with their children from 11/18/2022 until 11/27/2022. SO ORDERED by Judge Daniel D. Domenico on 11/17/2022. Text Only Entry (dddlc5, ) (Entered: 11/17/2022) |
| 11/17/2022 | 269 | ORDER granting 264 Motion for Leave to Restrict 265 Restricted Document – Level 3, 266 Restricted Document – Level 3 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is directed to maintain 265 and 266 UNDER RESTRICTION at LEVEL 3. SO ORDERED by Judge Daniel D. Domenico on 11/17/2022. Text Only Entry (dddlc5, ) (Entered: 11/17/2022) |
| 11/29/2022 | 272 | Order Regarding Motion for Subpoenas as to Michael Aaron Tew and Kimberley Ann Tew. (angar, ) Modified on 11/29/2022 to correct restriction level and title (angar, ). (Entered: 11/29/2022) |
| 12/01/2022 | 273 | MOTION to Withdraw as Attorney by Peter R. Bornstein by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/01/2022) |
| 12/01/2022 | 274 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 273 MOTION to Withdraw as Attorney by Peter R. Bornstein. Motion referred to Magistrate Judge Kristen L. Mix, by Judge Daniel D. Domenico on 12/01/2022. Text Only Entry (dddlc5, ) Modified on 12/5/2022 to add text (athom, ). (Entered: 12/01/2022) |
| 12/02/2022 | 275 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/02/2022. IT IS HEREBY ORDERED that the Motion 273 is GRANTED as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Mr. Bornstein is permitted to withdraw as counsel for Defendants. IT IS FURTHER ORDERED that on or before December 16, 2022, Defendants shall have replacement counsel enter an appearance or, if they believe they are entitled to appointment of CJA counsel to represent them, shall each file a financial affidavit under restriction at Level 3. (alave, ) (Entered: 12/05/2022) |

| 12/05/2022 | 276 | MOTION for Reconsideration re 275 Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 12/05/2022) |
|---|---|---|
| 12/05/2022 | 277 | ORDER REFERRING MOTION as to Michael Aaron Tew, Kimberley Ann Tew 276 MOTION for Reconsideration re 275 Order on Motion to Withdraw as Attorney,, *or, in the alternative, motion for expedited appointment and extension of deadlines* filed by USA. Motion referred to Magistrate Judge Kristen L. Mix by Judge Daniel D. Domenico on 12/05/2022. Text Only Entry (dddlc5, ) (Entered: 12/05/2022) |
| 12/06/2022 | 278 | MINUTE ORDER by Magistrate Judge Kristen L. Mix on 12/06/2022. IT IS HEREBY ORDERED that a hearing on the Motion 276 is set for December 9, 2022, at 11:00 a.m. Counsel for the parties, including defense counsel Peter Bornstein who was permitted to withdraw by Minute Order 275 of December 2, 2022, shall be present at the hearing. IT IS FURTHER ORDERED that the Clerk of Court shall email a copy of this Minute Order to Mr. Bornstein. (alave, ) (Entered: 12/06/2022) |
| 12/06/2022 | 279 | Certificate of Service by E–Mail by Clerk of Court re 278 Minute Order to counsel Peter Bornstein at pbornstein@prblegal.com. Text Only Entry. (alave, ) (Entered: 12/06/2022) |
| 12/09/2022 | 280 | MINUTE ENTRY for In Court Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 12/9/2022 before Magistrate Judge Kristen L. Mix. The court GRANTS 276 Motion for Reconsideration re 273 MOTION to Withdraw as Attorney. 273 MOTION to Withdraw as Attorney is GRANTED in part and DENIED in part to the extent that Mr. Bornstein is permitted to withdraw as private counsel, but otherwise denied. Defendants are ORDERED to submit financial affidavits on or before 5:00 PM Tuesday, December 13, 2022. Should Defendants qualify for court–appointed counsel, Mr. Bornstein will be appointed as CJA counsel.<br><br>The Clerk of Court is ORDERED to allow Mr. Bornstein to file the financial affidavits on the electronic docket on the Defendants' behalf. Should there be any problem with the filing of the financial affidavits, Mr. Bornstein SHALL email them to Mix_Chambers@cod.uscourts.gov.(Total time: 23 minutes, Hearing time: 11:00–11:23)<br><br>**APPEARANCES**: Bryan Fields, Albert Buchman on behalf of the Government, Peter Bornstein on behalf of the defendant. FTR: A–401. (cpomm, ) Text Only Entry (Entered: 12/09/2022) |
| 12/13/2022 | 281 | MOTION for Leave to Restrict by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/13/2022) |
| 12/13/2022 | 282 | RESTRICTED DOCUMENT – Level 3: by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/13/2022) |
| 12/14/2022 | 283 | ORDER granting 281 Motion for Leave to Restrict 282 Restricted Document as to Michael Aaron Tew (1), Kimberley Ann Tew (2). The Clerk of Court is instructed to maintain 282 at LEVEL THREE RESTRICTION. SO ORDERED by Judge Daniel D. Domenico on 12/14/2022. Text Only Entry (dddlc5, ) (Entered: 12/14/2022) |
| 12/27/2022 | 284 | MOTION to Vacate *Deadlines and for Status Conference* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 12/27/2022) |

| 12/27/2022 | 285 | TRANSCRIPT of MOTIONS HEARING as to Michael Aaron Tew, Kimberley Ann Tew held on 10/12/22 before Judge Domenico. Pages: 1–234.<br><br>**NOTICE – REDACTION OF TRANSCRIPTS: Within seven calendar days of this filing, each party shall inform the Court, by filing a Notice of Intent to Redact, of the party's intent to redact personal identifiers from the electronic transcript of the court proceeding. If a Notice of Intent to Redact is not filed within the allotted time, this transcript will be made electronically available after 90 days. Please see the Notice of Electronic Availability of Transcripts document at www.cod.uscourts.gov.**<br><br>Transcript may only be viewed at the court public terminal or purchased through the Court Reporter/Transcriber prior to the 90 day deadline for electronic posting on PACER. (Thomas, Julie) (Entered: 12/27/2022) |
|---|---|---|
| 12/28/2022 | 287 | ORDER DENYING 284 Government's Motion to Vacate Current Deadlines and for Status Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2).<br><br>Attorney Peter Bornstein represented the defendants as retained counsel for a period of over nine months from February to December 2022 (*see* Docs. 178 , 273 , 275 , 280), and he now continues to represent the defendants as appointed CJA counsel (Doc. 286 ). The Government has repeatedly stated its concern that further delays may prejudice its case and the public (Doc. 284 at 3; Doc. 276 at 2, 3, 5, 8), and has also acknowledged that Mr. Bornstein "is surely in the best position to advance this case without any more delay" (Doc. 276 at 2). Having now been appointed as CJA counsel, Mr. Bornstein has over a week to review the Government's *James* submission prior to its filing on 1/6/2023.<br><br>The Government's request to vacate the deadlines related to its *James* proffer and log is therefore denied.<br><br>SO ORDERED by Judge Daniel D. Domenico on 12/28/2022. Text Only Entry (dddlc1, ) (Entered: 12/28/2022) |
| 12/28/2022 | 288 | MOTION for Order *Appointing Separate Counsel* by Michael Aaron Tew, Kimberley Ann Tew. (Bornstein, Peter) (Entered: 12/28/2022) |
| 12/29/2022 | 289 | ORDER GRANTING 288 Motion for Appointment of Separate Counsel as to Michael Aaron Tew (1), Kimberley Ann Tew (2).<br><br>Attorney Peter R. Bornstein is relieved of any further representation of Defendant Kimberley Ann Tew, and the Clerk of Court is instructed to terminate Mr. Bornstein as counsel of record for Ms. Tew. An attorney from the Criminal Justice Act panel will be appointed to represent Ms. Tew. Defendant Michael Aaron Tew will continue to be represented by Mr. Bornstein as appointed CJA counsel.<br><br>In light of the above, the deadlines for the Goverment's *James* proffer and log and the defendants' response thereto, and the *James* Hearing set for 1/26/2023 are CONTINUED pending further order of the Court.<br><br>Within one week of entry of appearance of new counsel for Ms. Tew, the parties must file a Joint Status Report addressing: (1) the Speedy Trial Act implications of the new representation, if any; (2) mutually agreeable proposed deadlines for further |

| | | |
|---|---|---|
| | | *James* proceedings; and (3) any other issues the parties wish to bring to the Court's attention.<br><br>SO ORDERED by Judge Daniel D. Domenico on 12/29/2022. Text Only Entry (dddlc1, ) (Entered: 12/29/2022) |
| 01/03/2023 | 290 | NOTICE OF ATTORNEY APPEARANCE: David Scott Kaplan appearing for Kimberley Ann TewAttorney David Scott Kaplan added to party Kimberley Ann Tew(pty:dft) (Kaplan, David) (Entered: 01/03/2023) |
| 01/05/2023 | 291 | MOTION to Unrestrict Document 2 Warrant Issued, 1 Complaint, by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 01/05/2023) |
| 01/06/2023 | 292 | ORDER granting 291 Motion to Unrestrict 291 . The Clerk of Court is directed to unrestrict Documents 1 , 2 , 5 , and 6 as to Michael Aaron Tew (1), Kimberley Ann Tew (2), Jonathan K. Yioulos (3). SO ORDERED by Judge Daniel D. Domenico on 01/06/2023. Text Only Entry (dddlc5, ) (Entered: 01/06/2023) |
| 01/10/2023 | 293 | STATUS REPORT *(Joint Status Report of Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 01/10/2023) |
| 01/11/2023 | 294 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 293 Status Report filed by USA. By 1/17/2023, Mr. Bornstein and Mr. Kaplan must each submit an ex parte filing describing their positions regarding any conflict of interest that might prevent Mr. Bornstein from continuing to represent Mr. Tew and whether a hearing is necessary to evaluate and resolve this issue. SO ORDERED by Judge Daniel D. Domenico on 01/11/2023. Text Only Entry (dddlc5, ) (Entered: 01/11/2023) |
| 01/13/2023 | 295 | NOTICE OF ATTORNEY APPEARANCE: Nancy Lin Cohen appearing for Movants Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc.Attorney Nancy Lin Cohen added to party Christopher J. Alf(pty:mov), Attorney Nancy Lin Cohen added to party National Air Cargo Group, Inc. (pty:mov), Attorney Nancy Lin Cohen added to party National Air Cargo Holdings, Inc.(pty:mov) (athom, ) (Entered: 01/13/2023) |
| 01/13/2023 | 296 | NOTICE OF ATTORNEY APPEARANCE: Eric S. Galler appearing for Movants Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc.Attorney Eric S. Galler added to party Christopher J. Alf(pty:mov), Attorney Eric S. Galler added to party National Air Cargo Group, Inc. (pty:mov), Attorney Eric S. Galler added to party National Air Cargo Holdings, Inc.(pty:mov) (athom, ) (Entered: 01/13/2023) |
| 01/13/2023 | 297 | MOTION to Quash Subpoenas by Christopher J. Alf, National Air Cargo Group, Inc., National Air Cargo Holdings, Inc. as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (athom, ) (Entered: 01/13/2023) |
| 01/17/2023 | 301 | RESTRICTED DOCUMENT – Level 3: by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/17/2023) |
| 01/29/2023 | 303 | Unopposed MOTION to Modify Conditions of Release by Jonathan K. Yioulos as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Tallon, Michael) (Entered: 01/29/2023) |
| 01/30/2023 | 306 | |

| | | ORDER as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos.The Motion of Third–Party Victims to Quash Subpoenas (Doc. 297 ) is GRANTED.The defendants' third–party subpoenas dated 12/1/2022 are QUASHED. The defendants may, if they wish, file a renewed motion for leave to serve third–party subpoenas that fully complies with Federal Rule of Criminal Procedure 17. By Judge Daniel D. Domenico on 01/30/2023. (athom, ) (Entered: 01/30/2023) |
|---|---|---|
| 02/03/2023 | 310 | ORDER re 309 Motion to Continue as to Michael Aaron Tew. The Court currently does not have enough information to determine whether the ends–of–justice served by the length of delay requested by the Defendant outweighs the best interests of the defendant and public in a speedy trial. In light of the appointment of Mr. Tew's new counsel and the suspension of the present time from the Speedy Trial Act given the James proceeding is not yet under advisement, the eight–day jury trial set for 3/13/23 and Trial Preparation Conference set for 3/7/2023 are VACATED. The Motion to Continue 309 is denied without prejudice. If Defendant wishes to file a renewed Motion to Continue, he should do so concurrent with the status report due 3/13/2023. SO ORDERED by Judge Daniel D. Domenico on 02/03/2023. Text Only Entry (dddlc5, ) (Entered: 02/03/2023) |
| 02/07/2023 | 311 | STATUS REPORT *(Joint Status Report of Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 02/07/2023) |
| 03/13/2023 | 314 | STATUS REPORT *re James Hearing (Joint Status Report of all Parties)* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 03/13/2023) |
| 03/13/2023 | 315 | Unopposed MOTION for Order *for an Ends of Justice (EOJ) Continuance Pursuant to 18 U.S.C. 3161(h)(7)* by Kimberley Ann Tew. (Kaplan, David) (Entered: 03/13/2023) |
| 03/17/2023 | 317 | ORDER as to Kimberley Ann Tew. Defendant's Motion to Continue Trial and for an Ends of Justice Continuance (Doc. 315 ) is GRANTED. Three hundred and twenty–nine (329) days, from 3/17/2023 to 2/9/2024, will be excluded from the computation of Defendant Kimberley Tew's Speedy Trial Act time. Motions due by 9/13/2023. Responses due by 9/20/2023. The eight–day Jury Trial is RESET to 2/5/2024 at 9:00 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. The Trial Preparation Conference RESET to 1/30/2024 at 1:30 p.m. in Courtroom A1002 before Judge Daniel D. Domenico. By Judge Daniel D. Domenico on 03/17/2023. (athom, ) (Entered: 03/17/2023) |
| 06/16/2023 | 331 | Unopposed MOTION to Travel *Out of State* by Kimberley Ann Tew. (Kaplan, David) (Entered: 06/16/2023) |
| 06/16/2023 | 332 | ORDER granting 331 Motion to Travel as to Kimberley Ann Tew (2). Ms. Tew may travel between on or around June 17, 2023 and June 22, 2023 to the States of Wisconsin and Michigan. She must (1) provide documentation regarding her travel plans to United States Pretrial and Probation Services in advance of departure, (2) contact her probation officer as directed during approved travel, and (3) promptly contact his probation officer upon return from travel as directed. SO ORDERED by Judge Daniel D. Domenico on 6/16/2023. Text Only Entry (dddlc5, ) (Entered: 06/16/2023) |
| 09/12/2023 | 336 | Unopposed MOTION for Extension of Time to File *Pre–Trial Motions* by Kimberley Ann Tew. (Kaplan, David) (Entered: 09/12/2023) |

| 09/13/2023 | 338 | ORDER GRANTING 337 Motion for Extension of Time to File as to Michael Aaron Tew; and |
| | | GRANTING 336 Motion for Extension of Time to File as to Kimberley Ann Tew. |
| | | The motions deadline as to Mr. Tew and Ms. Tew is extended to October 13, 2023. The government must file responses on or before October 20, 2023. SO ORDERED by Judge Daniel D. Domenico on 9/13/2023. Text Only Entry (dddlc3, ) (Entered: 09/13/2023) |
| 10/13/2023 | 339 | STATUS REPORT *(Joint Status Report)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 10/13/2023) |
| 10/26/2023 | 340 | ORDER SETTING *JAMES* HEARING as to Michael Aaron Tew, Kimberley Ann Tew. |
| | | The Government must file any statements it will seek to admit at trial under Federal Rule of Evidence 801(d)(2)(E) in the form of a *James* log, along with an accompanying brief, on or before December 5, 2023. |
| | | The defendants must file their responses to the Government's *James* log and brief on or before December 12, 2023. A *James* Hearing is SET for December 19, 2023 at 9:30 a.m. in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 10/26/2023. Text Only Entry (dddlc3, ) (Entered: 10/26/2023) |
| 12/05/2023 | 341 | Government's Proffer *(Memorandum in Support of James Log)* re: 340 Order,, by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit 1 – James Log, # 2 Exhibit 1001 – Bank Accounts, # 3 Exhibit 1002 – Scheme Invoice Summary, # 4 Exhibit 1003 – Scheme Deposit Summary, # 5 Exhibit 1004 – HSCPA, MCG & 5530JD Summary, # 6 Exhibit 1005 – PM Summary, # 7 Exhibit 1006 – GFL Summary, # 8 Exhibit 1007 – AMR Summary)(Fields, Bryan) (Entered: 12/05/2023) |
| 12/12/2023 | 342 | MOTION to Withdraw as Attorney by Albert Buchman by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Buchman, Albert) (Entered: 12/12/2023) |
| 12/12/2023 | 343 | ORDER GRANTING 342 Motion to Withdraw as Attorney. The Clerk of Court is instructed to terminate attorney Albert Buchman as counsel of record, and to remove this name from the electronic certificate of mailing. The government will continue to be represented by attorney Bryan Fields. SO ORDERED by Judge Daniel D. Domenico on 12/12/2023. Text Only Entry (dddlc3, ) (Entered: 12/12/2023) |
| 12/12/2023 | 344 | MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit List of Authentic Business Records)(Fields, Bryan) (Entered: 12/12/2023) |
| 12/12/2023 | 346 | RESPONSE by Kimberley Ann Tew re: 341 Govt's Proffer, filed by USA (Attachments: # 1 Exhibit 1)(Kaplan, David) (Entered: 12/12/2023) |
| 12/13/2023 | 347 | RESTRICTED DOCUMENT – Level 3: by Kimberley Ann Tew. (Kaplan, David) (Entered: 12/13/2023) |
| 12/18/2023 | 349 | |

| | | |
|---|---|---|
| | | ORDER as to Kimberley Ann Tew. Jamie Hubbard of Stimson LaBranche Hubbard, LLC is to be appointed as co−counsel for Kimberley Ann Tew's trial pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A et. seq. SO ORDERED by Judge Daniel D. Domenico on 12/18/2023. Text Only Entry (dddlc3, ) (Entered: 12/18/2023) |
| 12/18/2023 | 350 | EXHIBIT LIST *JAMES HEARING* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 12/18/2023) |
| 12/18/2023 | 351 | WITNESS LIST *JAMES HEARING* by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Fields, Bryan) (Entered: 12/18/2023) |
| 12/19/2023 | 353 | NOTICE OF ATTORNEY APPEARANCE Sarah Hunter Weiss appearing for USA. Attorney Sarah Hunter Weiss added to party USA(pty:pla) (Weiss, Sarah) (Entered: 12/19/2023) |
| 12/19/2023 | 355 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: James Hearing as to Michael Aaron Tew (1), Kimberley Ann Tew (2) held on 12/19/2023 re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* filed by USA, 348 MOTION in Limine *regarding post−trial release* filed by Michael Aaron Tew. Deferring ruling on 344 Motion in Limine as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Deferring ruling on 348 Motion in Limine as to Michael Aaron Tew (1). James Proffer is TAKEN UNDER ADVISEMENT. Defendants shall file responses to 344 Governments Motion in Limine for Ruling that Certain Exhibits are Authentic and Covered by Business−Records Exception to the Hearsay Rule not later than Friday, December 22, 2023. Bond is CONTINUED as to Defendants Michael Aaron Tew and Kimberley Ann Tew. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 12/20/2023) |
| 12/19/2023 | 356 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew for James Hearing held on 12/19/2023 with Clerk's notations as to date and time testified. (rkeec) (Entered: 12/20/2023) |
| 12/19/2023 | 357 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew for 12/19/2023 James Hearing with Clerk's notations as to exhibits identified by the witness. (rkeec) (Entered: 12/20/2023) |
| 12/20/2023 | 354 | NOTICE OF ATTORNEY APPEARANCE: Jamie Hughes Hubbard appearing for Kimberley Ann TewAttorney Jamie Hughes Hubbard added to party Kimberley Ann Tew(pty:dft) (Hubbard, Jamie) (Entered: 12/20/2023) |
| 12/20/2023 | 358 | ORDER GRANTING 352 Motion to Travel as to Michael Aaron Tew. Michael and Kimberley Tew may travel out of state from on or about December 22 through January 3 as requested so long as Mr. Tew provides completed travel itineraries to the Probation Department once those travel plans are finalized. SO ORDERED by Judge Daniel D. Domenico on 12/20/2023. Text Only Entry (dddlc3, ) (Entered: 12/20/2023) |
| 12/22/2023 | 360 | RESPONSE to Motion by Kimberley Ann Tew re 344 MOTION in Limine *Regarding Exhibits Submitted as Part of James Proffer* (Kaplan, David) (Entered: 12/22/2023) |
| 12/29/2023 | 361 | ORDER REGARDING ADMISSIBILITY OF RULE 801(d)(2)(E) STATEMENTS as to Michael Aaron Tew (1), Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 12/29/23. (rkeec) (Entered: 12/29/2023) |
| 01/08/2024 | 362 | |

| | | NOTICE OF ATTORNEY APPEARANCE: Lisa Marie Saccomano appearing for Movant Atlantic Union Bank. (cmadr, ) (Entered: 01/09/2024) |
|---|---|---|
| 01/09/2024 | 363 | MOTION to Quash *Subpoena* by Atlantic Union Bank as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3)(Saccomano, Lisa) (Entered: 01/09/2024) |
| 01/18/2024 | 366 | RESPONSE to Motion by USA as to Michael Aaron Tew, Kimberley Ann Tew re 363 MOTION to Quash *Subpoena* (Weiss, Sarah) (Entered: 01/18/2024) |
| 01/19/2024 | 367 | ORDER granting in part and denying in part as outlined in the order 344 Motion in Limine as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying as moot 363 Motion to Quash as to Michael Aaron Tew (1), Kimberley Ann Tew (2). SO ORDERED by Judge Daniel D. Domenico on 1/19/2024. (rkeec) (Entered: 01/19/2024) |
| 01/22/2024 | 369 | Unopposed MOTION for Order *to Produce Trial Exhibits via Electronic Means* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Fields, Bryan) (Entered: 01/22/2024) |
| 01/24/2024 | 371 | CLERK'S NOTE: ORIGINAL GOVERNMENT EXHIBITS for the 355 MINUTE ENTRY for James Hearing as to Michael Aaron Tew, Kimberley Ann Tew were returned to the Government on January 24, 2024. Text only entry. (rkeec) (Entered: 01/24/2024) |
| 01/24/2024 | 372 | ORDER as to Michael Aaron Tew re 370 Motion in limine regarding proffer statements. The government must file a response to Mr. Tew's motion at or before 5:00 pm on Friday, January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/24/2024. Text Only Entry (dddlc3, ) (Entered: 01/24/2024) |
| 01/24/2024 | 373 | MOTION in Limine *re Admissibility of Proffer Statements* by Kimberley Ann Tew. (Attachments: # 1 Exhibit A)(Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 374 | MOTION to Continue *Trial and Motion for Ends of Justice Continuance of 90 Days* by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 375 | Proposed Verdict Form as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Proposed Document Parties' Proposed Verdict Form)(Weiss, Sarah) (Entered: 01/24/2024) |
| 01/24/2024 | 376 | TRIAL BRIEF by Kimberley Ann Tew (Attachments: # 1 Exhibit A, # 2 Exhibit B)(Kaplan, David) (Entered: 01/24/2024) |
| 01/24/2024 | 378 | NOTICE *of Certifications of Authentic, Non−Hearsay Business Records* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit, # 2 Exhibit)(Weiss, Sarah) (Entered: 01/24/2024) |
| 01/24/2024 | 379 | TRIAL BRIEF by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/24/2024) |
| 01/25/2024 | 380 | Proposed Jury Instructions *(Joint)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/25/2024) |
| 01/25/2024 | 381 | ORDER re Kimberley Tew's 373 Motion in Limine and 374 Motion to Continue Trial. The government must provide responses to these two motions at or before 11:59 pm on Friday, January 26, 2024. The government's response deadline for Mr. Tew's 370 Motion in Limine is also extended to 11:59 pm on Friday, January 26, |

| | | 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, ) (Entered: 01/25/2024) |
|---|---|---|
| 01/25/2024 | 382 | ORDER GRANTING 369 Unopposed Motion to Produce Trial Exhibits Via Electronic Means. The government must provide one original paper set of its proposed exhibits for use at the upcoming trial. The government must provide electronic copies of those exhibits to defense counsel on or before January 26, 2024.<br><br>The government must also provide **three electronic copies (e.g., via three thumb drives)** of its proposed exhibits to the court on or before January 26, 2024. SO ORDERED by Judge Daniel D. Domenico on 1/25/2024. Text Only Entry (dddlc3, ) (Entered: 01/25/2024) |
| 01/25/2024 | 383 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Attachments: # 1 Exhibit List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 384 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos (Attachments: # 1 Witness List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 386 | EXHIBIT LIST *(Amended)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Amended Exhibit List)(Fields, Bryan) (Entered: 01/25/2024) |
| 01/25/2024 | 387 | EXHIBIT LIST by Kimberley Ann Tew (Attachments: # 1 Proposed Document Proposed Exhibit List)(Hubbard, Jamie) (Entered: 01/25/2024) |
| 01/25/2024 | 388 | WITNESS LIST by Kimberley Ann Tew (Attachments: # 1 Proposed Document Proposed Witness List)(Hubbard, Jamie) (Entered: 01/25/2024) |
| 01/26/2024 | 389 | Proposed Voir Dire by Kimberley Ann Tew (Hubbard, Jamie) (Entered: 01/26/2024) |
| 01/26/2024 | 390 | Proposed Voir Dire by USA as to Michael Aaron Tew, Kimberley Ann Tew (Weiss, Sarah) (Entered: 01/26/2024) |
| 01/26/2024 | 391 | RESPONSE in Opposition by USA as to Kimberley Ann Tew re 374 MOTION to Continue *Trial and Motion for Ends of Justice Continuance of 90 Days* (Fields, Bryan) (Entered: 01/26/2024) |
| 01/26/2024 | 393 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 373 MOTION in Limine *re Admissibility of Proffer Statements and 370 Defendant Michael Tew's Motion in Limine* (Weiss, Sarah) (Entered: 01/26/2024) |
| 01/27/2024 | 394 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit, # 2 Exhibit, # 3 Exhibit)(Weiss, Sarah) (Entered: 01/27/2024) |
| 01/27/2024 | 395 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew. (Weiss, Sarah) (Entered: 01/27/2024) |
| 01/27/2024 | 396 | MOTION for Leave to Restrict by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Weiss, Sarah) (Entered: 01/27/2024) |
| 01/29/2024 | 397 | MOTION for Leave to File *Reply in Support of Motion in Limine* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 01/29/2024) |
| 01/29/2024 | 398 | BRIEF in Support by Kimberley Ann Tew to 373 MOTION in Limine *re Admissibility of Proffer Statements (Reply)* (Hubbard, Jamie) (Entered: 01/29/2024) |

| 01/29/2024 | 399 | MOTION to Exclude *Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* by Kimberley Ann Tew. (Kaplan, David) (Entered: 01/29/2024) |
|---|---|---|
| 01/29/2024 | 401 | BAIL STATUS REPORT 107 as to Kimberley Ann Tew. (lgiac) (Entered: 01/29/2024) |
| 01/30/2024 | 403 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Trial Preparation Conference as to Michael Aaron Tew (1), Kimberley Ann Tew (2) held on 1/30/2024. Taking under advisement 374 Defendant Kimberly Ann Tews Motion to Continue Trial and Motion for Ends of Justice Continuance of 90 Days. Taking under advisement 370 Motion in Limine as to Michael Aaron Tew (1). Taking under advisement 373 Motion in Limine as to Kimberley Ann Tew (2). Taking under advisement 399 Motion to Exclude as to Kimberley Ann Tew (2); re 370 MOTION in Limine *regarding proffer agreements* filed by Michael Aaron Tew, 373 MOTION in Limine *re Admissibility of Proffer Statements* filed by Kimberley Ann Tew, 399 MOTION to Exclude *Testimony Regarding the Reasons for Michael Tew's Termination from NAC as Proposed in the Government's Trial Brief (ECF 379)* filed by Kimberley Ann Tew. Bond is CONTINUED as to Defendants Michael Aaron Tew and Kimberly Ann Tew. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 01/31/2024) |
| 01/31/2024 | 402 | ORDER Denying 374 Motion to Continue as to Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 31 January 2024. The trial will proceed on February 5, 2024, as scheduled. (cmadr, ) Modified to correct entry on 1/31/2024 (cmadr, ). (Entered: 01/31/2024) |
| 02/01/2024 | 404 | ORDER REGARDING MOTIONS IN LIMINE AND PRE–TRIAL ISSUES as to Michael Aaron Tew (1) and Kimberley Ann Tew (2) by Judge Daniel D. Domenico on 1 February 2024. Defendants' motions, Docs. 370 and 373 , are GRANTED IN PART and DENIED IN PART as outlined herein. Ms. Tew's motion, Doc. 399 , is therefore DENIED. (cmadr, ) (Entered: 02/01/2024) |
| 02/02/2024 | 405 | Unopposed MOTION for Order *To Obtain Testimony Via Live Contemporaneous Video Conference* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Fields, Bryan) (Entered: 02/02/2024) |
| 02/02/2024 | 406 | Order GRANTING 405 Unopposed Motion to Obtain Testimony Via Live Contemporaneous Video Conference. The government is cautioned, however, that it bears the risk of any technology malfunctions, whether on the Court's end or the witness's end. SO ORDERED by Judge Daniel D. Domenico on 2/2/2024. Text Only Entry (dddlc3, ) (Entered: 02/02/2024) |
| 02/02/2024 | 407 | WITNESS LIST *(Final Witness List)* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Final Witness List)(Fields, Bryan) (Entered: 02/02/2024) |
| 02/02/2024 | 408 | EXHIBIT LIST *Final Exhibit List* by USA as to Michael Aaron Tew, Kimberley Ann Tew (Attachments: # 1 Exhibit)(Weiss, Sarah) (Entered: 02/02/2024) |
| 02/04/2024 | 409 | MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross–Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 02/04/2024) |
| 02/04/2024 | 411 | NOTICE *of Submission of Alternative Version of Charges for Juror Notebooks* by Kimberley Ann Tew (Attachments: # 1 Attachment)(Hubbard, Jamie) (Entered: |

| | | 02/04/2024) |
|---|---|---|
| 02/04/2024 | 412 | RESPONSE in Opposition by USA as to Michael Aaron Tew, Kimberley Ann Tew re 409 MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing*, 410 MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, (Fields, Bryan) (Entered: 02/04/2024) |
| 02/05/2024 | 413 | EXHIBIT LIST by Kimberley Ann Tew (Hubbard, Jamie) (Entered: 02/05/2024) |
| 02/05/2024 | 414 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 1) held on 2/5/2024 as to Michael Aaron Tew (1), Kimberley Ann Tew (2). Denying 410 MOTION for Reconsideration re 410 MOTION for Reconsideration re 404 Order on Motion in Limine,, Order on Motion to Exclude,,, filed by Michael Aaron Tew, 409 MOTION for Order *for Finding that Ms. Tew's Waiver of Right to Confront and Cross−Examine Witnesses was Not Knowing or, in the Alternative, Request for Hearing* filed by Kimberley Ann Tew as to Michael Aaron Tew (1). Denying 409 Motion for Order as to Kimberley Ann Tew (2). Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 415 | Jury Strike Sheet − Unredacted − Restricted Doc. − Level 4 (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 416 | Jury Strike Sheet with juror names redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/06/2024) |
| 02/05/2024 | 417 | Jury Random List − Unredacted − Restricted Doc. − Level 4 (rkeec) (Entered: 02/06/2024) |
| 02/06/2024 | 418 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 2) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/6/2024. Defendant Kimberley Ann Tews oral motion for severance is TAKEN UNDER ADVISEMENT. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/07/2024) |
| 02/07/2024 | 419 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 3) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/7/2024. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/08/2024) |
| 02/08/2024 | 421 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 4) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/8/2024. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/09/2024) |
| 02/09/2024 | 423 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 5) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/9/2024. Defendant Kimberley Ann Tews oral motion for mistrial is DENIED. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/12/2024) |
| 02/12/2024 | 425 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 6) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/12/2024. 420 Defendant Michael Tews Renewed Motion for Severance is DENIED. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/13/2024) |

| 02/13/2024 | 426 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew. The Clerk of Court shall provide lunch to the jury for the duration of their deliberations commencing on Wednesday, February 14, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/13/2024. (rkeec) (Entered: 02/13/2024) |
|---|---|---|
| 02/13/2024 | 427 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 7) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/13/2024. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/14/2024) |
| 02/14/2024 | 428 | AMENDED MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew. The Clerk of Court shall provide lunch to the jury, including the alternate juror, for the duration of their deliberations commencing on Wednesday, February 14, 2024. SO ORDERED by Judge Daniel D. Domenico on 2/14/2024. (rkeec) (Entered: 02/14/2024) |
| 02/14/2024 | 430 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 8) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/14/2024. Defendant Kimberley Ann Tews oral motion for mistrial is DENIED. Defendant Kimberley Ann Tews oral Rule 29 motion is DENIED. Defendant Kimberley Ann Tews oral motion for severance is DENIED. Defendant Michael Aaron Tews oral Rule 29 motion is DENIED. Defendant Michael Aaron Tews oral motion for severance is DENIED. Bond continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 431 | Jury Note with juror name – Unredacted – Restricted Doc. – Level 4 (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 432 | Jury Note with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 433 | WITNESS LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew with dates and times testified. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 434 | WITNESS LIST by Kimberley Ann Tew as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 435 | EXHIBIT LIST by USA as to Michael Aaron Tew, Kimberley Ann Tew indicating admitted exhibits. (rkeec) (Entered: 02/15/2024) |
| 02/14/2024 | 436 | EXHIBIT LIST by Michael Aaron Tew, Kimberley Ann Tew indicating admitted exhibits. (rkeec) (Entered: 02/15/2024) |
| 02/15/2024 | 429 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/15/2024. (rkeec) (Entered: 02/15/2024) |
| 02/15/2024 | 438 | Final Jury Instructions as to Michael Aaron Tew, Kimberley Ann Tew as read into the record on 2/14/2024. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 439 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Jury Trial (Day 9) as to Michael Aaron Tew, Kimberley Ann Tew held on 2/15/2024. Jury Verdict as to Michael Aaron Tew (1) Guilty on Count 1,1s,2,2s–40s,3,41s,42s,44s–56s,57s–60s and Kimberley Ann Tew (2) Guilty on Count 1,21–22,25–26,31–32,41,43–44,47,56. Bond is continued as to both defendants. Court Reporter: Tammy Hoffschildt. (rkeec) Modified on 2/16/2024 to correct as to Count 48 (rkeec). (Entered: 02/16/2024) |

| 02/15/2024 | 440 | Jury Note 1 (Question) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 441 | Jury Note 2 (Question) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 442 | Jury Note 3 (Verdict) – Unredacted – Restricted Doc. – Level 4. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 443 | Jury Note 1 (Question) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 444 | Jury Note 2 (Question) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 445 | Jury Note 3 (Verdict) with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) Modified on 2/16/2024 (rkeec, ). (Entered: 02/16/2024) |
| 02/15/2024 | 446 | Court Response to Jury Notes 1 and 2 (Questions) as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 447 | Jury Verdict Un–Redacted – Level 4 – Viewable by Court Only. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 448 | JURY VERDICT with juror name redacted as to Michael Aaron Tew, Kimberley Ann Tew. (rkeec) (Entered: 02/16/2024) |
| 02/15/2024 | 449 | STIPULATION AND ORDER REGARDING CUSTODY OF EXHIBITS AND DEPOSITIONS as to Michael Aaron Tew, Kimberley Ann Tew. SO ORDERED by Judge Daniel D. Domenico on 2/15/2024. (rkeec) (Entered: 02/16/2024) |
| 02/21/2024 | 450 | MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* by USA as to Michael Aaron Tew, Kimberley Ann Tew. (Attachments: # 1 Exhibit)(Weiss, Sarah) (Entered: 02/21/2024) |
| 02/21/2024 | 451 | ORDER as to Michael Aaron Tew, Kimberley Ann Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA. Mr. Tew and Mrs. Tew must each file responses to the government's 450 Motion to Detain on or before **February 27, 2024**. SO ORDERED by Judge Daniel D. Domenico on 2/21/2024. Text Only Entry (dddlc3, ) (Entered: 02/21/2024) |
| 02/27/2024 | 454 | RESPONSE to Motion by Kimberley Ann Tew re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* (Kaplan, David) (Entered: 02/27/2024) |
| 03/12/2024 | 455 | ORDER re 450 Motion to Detain Defendants Michael and Kimberley Tew. The government's motion questions whether Mr. and Mrs. Tew are still eligible for CJA–appointed counsel for this case. There is sufficient evidence to call into question their present eligibility under 18 U.S.C. § 3006A(c). The issue of whether Michael Tew and Kimberley Tew remain entitled to ongoing court–appointed counsel under Section 3006A(c) is therefore REFERRED to Magistrate Judge Susan Prose. All other issues raised in the government's motion, including the potential detention of Mr. and Mrs. Tew pending sentencing or the potential un–sealing of any prior CJA affidavits, will be addressed at a detention |

| | | |
|---|---|---|
| | | hearing before this Court as outlined below.<br><br>It is therefore ORDERED that a Hearing on the 450 Government's Motion is SET for April 22, 2024 at 10:30 AM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/12/2024 | 457 | ORDER as to Kimberley Ann Tew. A Sentencing Hearing as to Kimberley Tew is SET for August 8, 2024 at 1:30 PM in Courtroom A1002 before Judge Daniel D. Domenico. SO ORDERED by Judge Daniel D. Domenico on 3/12/2024. Text Only Entry (dddlc3, ) (Entered: 03/12/2024) |
| 03/14/2024 | 459 | SENTENCING STATEMENT by USA as to Kimberley Ann Tew (Attachments: # 1 Exhibit, # 2 Exhibit)(Fields, Bryan) (Entered: 03/14/2024) |
| 03/15/2024 | 460 | ORDER SETTING STATUS CONFERENCE as to Michael Aaron Tew, Kimberley Ann Tew by Magistrate Judge Susan Prose on 3/15/2024. A **30–minute in–person** Status Conference is hereby set for 3/18/2024, at 4:00 PM in Courtroom C205 before Magistrate Judge Susan Prose. The parties shall be prepared to discuss Defendant Michael Tew's request for "an *ex parte* hearing... to determine whether Mr. Tew 'is financially able to obtain counsel or to make partial payment for the representation' pursuant to 18 U.S.C. § 3006A(c)." *See* ECF No. 453 at 3. Text Only Entry. (trvo, ) (Entered: 03/15/2024) |
| 03/18/2024 | 461 | MINUTE ORDER as to Michael Aaron Tew, Kimberley Ann Tew by Magistrate Judge Susan Prose on 3/18/2024. At the request of the parties, the Status Conference is RESET for 3/21/2024, at 04:00 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry. (trvo, ) (Entered: 03/18/2024) |
| 03/21/2024 | 462 | MINUTE ENTRY for Status Conference as to Michael Aaron Tew and Kimberley Ann Tew held before Magistrate Judge Susan Prose on 3/21/2024. Discussion regarding issue referred to this court (*see* ECF No. 455). An ex parte hearing to determine Michael Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for March 28, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 10:00 a.m. March 27, 2024. An ex parte hearing to determine Kimberley Ann Tew's entitlement to ongoing court–appointed counsel under 18 U.S.C. § 3006A(c) is SET for April 15, 2024, at 1:30 p.m. in Courtroom C205 before Magistrate Judge Susan Prose. Any documents to be submitted in connection with this hearing shall be sent directly to Chambers, as discussed on the record, on or before 12:00 p.m. April 10, 2024. Hearing concluded. FTR: C205. (Total time: 1 hour and 8 minutes, Hearing time: 3:57 p.m. – 5:05 p.m.) Text Only Entry.<br><br>**APPEARANCES:** Bryan David Fields and Sarah Hunter Weiss on behalf of the Government, Jason Dale Schall and Kristen M. Frost on behalf of Defendant Michael Aaron Tew and David Scott Kaplan on behalf of Defendant Kimberly Ann Tew. (trvo, ) (Entered: 03/22/2024) |
| 03/21/2024 | 464 | Utility Setting/Resetting Deadlines/Hearings as to Kimberley Ann Tew: Ex Parte In Court Hearing set for 4/15/2024, at 01:30 PM in Courtroom C205 before Magistrate Judge Susan Prose. Text Only Entry (trvo, ) (Entered: 03/22/2024) |
| 03/27/2024 | 466 | |

| | | |
|---|---|---|
| | | RESTRICTED DOCUMENT LEVEL 3 – Conventionally Submitted Material: 1 Flash Drive re 462 Status Conference, by Plaintiff USA. Location: 1st Floor Area, Box D–5–9. Text Only Entry. (sphil, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 03/27/2024) |
| 04/01/2024 | 469 | ORDER GRANTING 397 Motion for Leave to File Reply as to Kimberley Ann Tew. By Judge Daniel D. Domenico on 4/1/2024. Text Only Entry (dddlc1, ) (Entered: 04/01/2024) |
| 04/01/2024 | 470 | ORDER GRANTING 396 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Docs. 394 and 395 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/1/2024. Text Only Entry (dddlc1, ) (Entered: 04/01/2024) |
| 04/10/2024 | 472 | STATEMENT *by Government Regarding Kimberley Tew's Eligibility for CJA–Funded Counsel Going Forward* by Plaintiff USA (Weiss, Sarah) (Entered: 04/10/2024) |
| 04/15/2024 | 473 | RESTRICTED DOCUMENT LEVEL 3 – Conventionally Submitted Material: 1 USB Drive re 462 Status Conference, by Defendant Kimberley Ann Tew. Location: 1st Floor Area, Box D–5–9. Text Only Entry (trvo, ) Modified on 4/15/2024 to add restriction (trvo, ). (Entered: 04/15/2024) |
| 04/15/2024 | 474 | MINUTE ENTRY for Ex Parte Hearing as to Kimberley Ann Tew held before Magistrate Judge Susan Prose on 4/15/2024. The Court finds that Defendant Kimberley Ann Tew remains eligible for court–appointed counsel. A separate public written order will be issued. FTR: C205. (trvo, ) (Entered: 04/16/2024) |
| 04/16/2024 | 475 | Unopposed MOTION for Order *Requiring the Parties to File Visual Presentations into the Record* by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/16/2024) |
| 04/16/2024 | 476 | ORDER granting 475 Motion for Order Requiring the Parties to File Visual Presentations into the Record. The parties are ordered to file all visual presentations used during opening statements and closing arguments into the record. SO ORDERED by Judge Daniel D. Domenico on 4/16/2024. Text Only Entry (dddlc9, ) (Entered: 04/16/2024) |
| 04/18/2024 | 477 | NOTICE *OF CONVENTIONAL SUBMISSION* re 476 Order on Motion for Order, by USA as to Michael Aaron Tew, Kimberley Ann Tew (Fields, Bryan) (Entered: 04/18/2024) |
| 04/18/2024 | 479 | Conventionally Submitted Material : USB exhibits to 477 NOTICE OF CONVENTIONAL SUBMISSION re 476 Order on Motion for Order, by Plaintiff USA – Material placed in the oversized area D–5–9 of the Clerk's Office. Text Only Entry (angar, ) (Entered: 04/19/2024) |
| 04/19/2024 | 478 | ORDER REGARDING DEFENDANT KIMBERLEY ANN TEW'S ELIGIBILITY FOR ONGOING COURT–APPOINTED COUNSEL by Magistrate Judge Susan Prose on 4/19/2024. (trvo, ) (Entered: 04/19/2024) |
| 04/21/2024 | 480 | MOTION for Leave to Restrict by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
| 04/21/2024 | 481 | RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |

| 04/21/2024 | 482 | RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. (Hubbard, Jamie) (Entered: 04/21/2024) |
|---|---|---|
| 04/22/2024 | 483 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Evidentiary Hearing as to Michael Aaron Tew, Kimberley Ann Tew held on 4/22/2024 re 450 MOTION to Detain *Defendants Michael Tew & Kimberley Tew Pending Sentencing* filed by USA. 450 Motion to Detain as to Michael Aaron Tew (1), Kimberley Ann Tew (2) is DENIED, but the Court will impose additional conditions of bond. Court indicates that a written order shall follow. Bond is continued as to Michael Aaron Tew and Kimberley Ann Tew. Court Reporter: Tammy Hoffschildt. (Attachments: # 1 Government's witness list, # 2 Government's exhibit list) (rkeec) (Entered: 04/22/2024) |
| 04/23/2024 | 484 | NOTICE *of Filing of Visual Presentation* by Kimberley Ann Tew (Attachments: # 1 PowerPoint Closing Statement)(Hubbard, Jamie) (Entered: 04/23/2024) |
| 04/25/2024 | 489 | ORDER modifying conditions of release as to Michael Aaron Tew and Kimberley Ann Tew. The following conditions are added to those already in effect:<br><br>1. Defendants shall disclose a complete list of all bank accounts and peer–to–peer financial services accounts to which they have access no later than April 30, 2024. Defendants shall further provide a statement for each of these accounts to their supervising officer no later than the 5th of each following month, starting on May 5th, 2024.<br><br>2. Defendants shall refrain from gambling of any kind, purchasing over $50 of gift cards in a given day, and engaging in any cryptocurrency transaction without the prior approval of the supervising officer.<br><br>3.The supervising officer may, in his discretion, share any information provided to him by Defendants pursuant to these conditions with the government.<br><br>SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/25/2024 | 491 | ORDER granting 480 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 482 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/25/2024. Text Only Entry (dddlc9, ) (Entered: 04/25/2024) |
| 04/26/2024 | 492 | NOTICE OF ATTORNEY APPEARANCE Martha Ann Paluch appearing for USA. Attorney Martha Ann Paluch added to party USA(pty:pla) (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 493 | RESTRICTED DOCUMENT – Level 3: by USA as to Kimberley Ann Tew (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 494 | RESTRICTED DOCUMENT – Level 1: by USA as to Kimberley Ann Tew (Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 495 | MOTION for Leave to Restrict by USA as to Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Paluch, Martha) (Entered: 04/26/2024) |
| 04/26/2024 | 500 | ORDER Updating Conditions of Release as to Kimberley Ann Tew (2) $10,000 Unsecured. SO ORDERED by Judge Daniel D. Domenico on 4/26/2024. (rkeec) (Entered: 05/01/2024) |

| 04/30/2024 | 498 | ORDER granting 495 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 493 at Level 3 restriction and to maintain Doc. 494 at Level 1 restriction. SO ORDERED by Judge Daniel D. Domenico on 4/30/2024. Text Only Entry (dddlc9, ) (Entered: 04/30/2024) |
| --- | --- | --- |
| 05/08/2024 | 501 | ORDER denying 482 RESTRICTED DOCUMENT – Level 1: by Kimberley Ann Tew. Having reviewed the pleadings on this issue and considered the relevant facts, the motion is denied. SO ORDERED by Judge Daniel D. Domenico on 5/8/2024. Text Only Entry (dddlc9, ) (Entered: 05/08/2024) |
| 07/02/2024 | 504 | RESTRICTED PRESENTENCE REPORT first disclosure for attorney review as to Kimberley Ann Tew (Attachments: # 1 Exhibit A)(aarag, ) (Entered: 07/02/2024) |
| 07/15/2024 | 506 | Unopposed MOTION for Extension of Time to File *Objections to Presentence Investigation Report* by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) Proposed Order re: Motion for Extension of Time to Submit Objection to Presentence Investigation Report)(Kaplan, David) (Entered: 07/15/2024) |
| 07/17/2024 | 507 | ORDER granting 506 Motion for Extension of Time. Ms. Tew may file objections to the PSIR on or before July 19, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/17/2024. Text Only Entry (dddlc9, ) (Entered: 07/17/2024) |
| 07/19/2024 | 508 | OBJECTION/RESPONSE to Presentence Report by Kimberley Ann Tew (Attachments: # 1 Exhibit Exhibit 1, # 2 Exhibit Exhibit 2, # 3 Exhibit Exhibit 3, # 4 Exhibit Exhibit 3a, # 5 Exhibit Exhibit 4, # 6 Exhibit Exhibit 5, # 7 Exhibit Exhibit 6, # 8 Exhibit Exhibit 6a, # 9 Exhibit Exhibit 7, # 10 Exhibit Exhibit 7a)(Kaplan, David) (Entered: 07/19/2024) |
| 07/19/2024 | 510 | Conventionally Submitted Material : 1 Flash Drive re Objection/Response to Presentence Report, 508 by Defendant Kimberley Ann Tew. Location of Stored Items: Box D–5–5. Text Only Entry (cmadr, ) (Entered: 07/23/2024) |
| 07/22/2024 | 509 | Unopposed MOTION for Leave to Restrict by Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only) PO re Unopposed Motion to Restrict)(Kaplan, David) (Entered: 07/22/2024) |
| 07/24/2024 | 511 | ORDER granting 509 Motion for Leave to Restrict. The Clerk of Court is directed to maintain Doc. 508 at Level 2 restriction. SO ORDERED by Judge Daniel D. Domenico on 7/24/2024. Text Only Entry (dddlc9, ) (Entered: 07/24/2024) |
| 07/25/2024 | 512 | NOTICE OF ATTORNEY APPEARANCE Laura Beth Hurd appearing for USA. Attorney Laura Beth Hurd added to party USA(pty:pla) (Hurd, Laura) (Entered: 07/25/2024) |
| 07/25/2024 | 513 | MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* by USA as to Kimberley Ann Tew. (Attachments: # 1 Proposed Order (PDF Only))(Hurd, Laura) (Entered: 07/25/2024) |
| 07/25/2024 | 514 | ORDER re 513 Motion for Preliminary Order of Forfeiture. If Ms. Tew opposes the motion, she is ordered to file a response on or before August 2, 2024. SO ORDERED by Judge Daniel D. Domenico on 7/25/2024. Text Only Entry (dddlc9, ) (Entered: 07/25/2024) |
| 07/25/2024 | 515 | RESTRICTED DOCUMENT – Level 2: as to Kimberley Ann Tew. (Kaplan, David) (Entered: 07/25/2024) |

| 07/26/2024 | 516 | RESTRICTED DOCUMENT – Level 2: as to Michael Aaron Tew, Kimberley Ann Tew, Jonathan K. Yioulos. (Attachments: # 1 Conventionally Submitted, # 2 Exhibit, # 3 Exhibit)(Weiss, Sarah) (Entered: 07/26/2024) |
|---|---|---|
| 07/26/2024 | 519 | Conventionally Submitted Material : One CD re Restricted Document – Level 2 516 by Plaintiff USA. Location of stored items: Sealed Room. Text Only Entry (cmadr, ) (Entered: 07/30/2024) |
| 07/29/2024 | 517 | RESTRICTED PRESENTENCE REPORT as to Kimberley Ann Tew (Attachments: # 1 Exhibit A)(agalv) (Entered: 07/29/2024) |
| 07/29/2024 | 518 | RESTRICTED ADDENDUM to Presentence Report 517 as to Kimberley Ann Tew (agalv) (Entered: 07/29/2024) |
| 08/01/2024 | 520 | RESTRICTED DOCUMENT – Level 2: as to Kimberley Ann Tew. (Weiss, Sarah) (Entered: 08/01/2024) |
| 08/02/2024 | 522 | RESPONSE to Motion by Kimberley Ann Tew re 513 MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture* (Kaplan, David) (Entered: 08/02/2024) |
| 08/05/2024 | 523 | ORDER as to Kimberley Ann Tew re 513 Motion for Preliminary Order of Forfeiture. The Court will hold a hearing regarding forfeiture starting at 1:00 PM on August 8, 2024 in Courtroom A1002. Sentencing will follow immediately afterward. SO ORDERED by Judge Daniel D. Domenico on 8/5/2024. Text Only Entry (dddlc9, ) (Entered: 08/05/2024) |
| 08/06/2024 | 525 | REPLY TO RESPONSE to Motion by USA as to Kimberley Ann Tew re 513 MOTION for Forfeiture of Property *for Preliminary Order of Forfeiture UNITED STATES REPLY TO KIMBERLEY TEWS NOTICE OF OBJECTION TO UNITED STATES MOTION FOR PRELIMINARY ORDER OF FORFEITURE (ECF DOC. 522)* (Hurd, Laura) (Entered: 08/06/2024) |
| 08/08/2024 | 527 | MINUTE ENTRY for proceedings held before Judge Daniel D. Domenico: Forfeiture Hearing and Sentencing as to Kimberley Ann Tew (2) held on 8/8/2024. Granting 513 Motion for Forfeiture of Property as to Kimberley Ann Tew (2). Granting in part 515 Defendants Motion. Defendant sentenced as reflected on the record. Bond continued. Court Reporter: Tammy Hoffschildt. (rkeec) Modified on 8/8/2024 to include ruling on 515 Defendant's Motion. (rkeec). (Entered: 08/08/2024) |
| 08/13/2024 | 528 | JUDGMENT as to defendant Kimberley Ann Tew (2), Count(s) 1, Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 16, Dismissed by Court during jury trial.; Count(s) 21–22, Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 25–26, Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 31–32, Defendant shall be imprisoned for a total term of forty–eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 41, Defendant |

| | | shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 43−44, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 47, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50.; Count(s) 48, Defendant was found not guilty by jury at trial.; Count(s) 56, Defendant shall be imprisoned for a total term of forty−eight (48) months on each count to run concurrently, three (3) years supervised release on each count to run concurrently, $100.00 special assessment ($1,200 total), no fine, and restitution in the total amount of $5,053,878.50. Entered by Judge Daniel D. Domenico on 8/13/2024. (rkeec) (Entered: 08/13/2024) |
| 08/13/2024 | 529 | STATEMENT OF REASONS as to Kimberley Ann Tew (2). (rkeec) (Entered: 08/13/2024) |
| 08/14/2024 | 530 | Passport Receipt as to Kimberley Ann Tew (2). Forwarding passport to Dept. of State; Passport Number 522213975 issued by USA. Sent certified mail; receipt number 7019 2920 0001 1984 2431. (rkeec) (Entered: 08/14/2024) |
| 08/20/2024 | 535 | NOTICE OF APPEAL by Kimberley Ann Tew. (Kaplan, David) (Entered: 08/20/2024) |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

## NOTICE OF APPEAL

     Notice is hereby given that Defendant Kimberley Ann Tew in the above-named case, hereby appeals to the United States Court of Appeals for the Tenth Circuit from the Judgment entered in this action on the 13th day of August 2024.

     Dated: August 20, 2024.

                        Respectfully submitted,

                        *s/ David S. Kaplan*

                        David S. Kaplan
                        Jamie Hubbard
                        STIMSON LABRANCHE HUBBARD, LLC
                        1652 Downing Street
                        Denver, CO 80218
                        720.689.8909
                        kaplan@slhlegal.com
                        hubbard@slhlegal.com

                        *Attorneys for Kimberley Ann Tew*

**Certificate of Service**

I certify that on August 20, 2024, I electronically filed the foregoing *Notice of Appeal* with the Clerk of Court and all parties using the CM/ECF system.

s/ *Nancy Hickam*
Nancy Hickam, Paralegal

AO 245B (CO Rev. 11/20)    Judgment in a Criminal Case

# UNITED STATES DISTRICT COURT

District of Colorado

| | |
|---|---|
| UNITED STATES OF AMERICA | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | |
| KIMBERLEY ANN TEW | Case Number:     1:20-cr-00305-DDD-2 |
| *a/k/a Kimberley Vertanen* | USM Number:     29883-509 |
| | David Scott Kaplan and Jamie Hughes Hubbard |
| | Defendant's Attorneys |

## THE DEFENDANT:

☐ pleaded guilty to count(s)   _____

☐ pleaded nolo contendere to count(s)   _____
    which was accepted by the court.

☒ was found guilty on count(s)   1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47, and 56 of the Indictment
    after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1349 and 1343 | Conspiracy to Commit Wire Fraud | 07/31/2020 | 1 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 10/25/2019 | 21 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 11/01/2019 | 22 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 12/03/2019 | 25 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 12/12/2019 | 26 |
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 03/10/2020 | 31 |

     The defendant is sentenced as provided in pages 3 through    8    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☒ The defendant has been found not guilty on count(s)   48 of the Indictment.

☐ Count(s)  _____  ☐ is   ☐ are dismissed on the motion of the United States.

     It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

August 8, 2024
_____
Date of Imposition of Judgment

_____
Signature of Judge

Daniel D. Domenico, United States District Judge
_____
Name and Title of Judge

August 13, 2024
_____
Date

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

| | Judgment — Page | 2 | of | 8 |

DEFENDANT:         KIMBERLEY ANN TEW
CASE NUMBER:       1:20-cr-00305-DDD-2

## ADDITIONAL COUNTS OF CONVICTION

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 U.S.C. §§ 1343 and 2 | Wire Fraud and Aiding and Abetting | 03/20/2020 | 32 |
| 18 U.S.C. §§ 1956(h) and 1957 | Conspiracy to Commit Money Laundering | 07/31/2020 | 41 |
| 18 U.S.C. § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 06/11/2019 | 43 |
| 18 U.S.C. § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 08/28/2019 | 44 |
| 18 U.S.C. § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 09/18/2019 | 47 |
| 18 U.S.C. § 1957 | Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity | 03/03/2020 | 56 |

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

DEFENDANT:       KIMBERLEY ANN TEW
CASE NUMBER:     1:20-cr-00305-DDD-2

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
**forty-eight (48) months;** forty-eight (48) months to each of Counts 1, 21, 22, 25, 26, 31, 32, 41, 43, 44, 47 and 56, imposed concurrently.

☒       The court makes the following recommendations to the Bureau of Prisons:
         The Court recommends the defendant be permitted to participate in Residential Drug Abuse Program (RDAP).

☐       The defendant is remanded to the custody of the United States Marshal.

☐       The defendant shall surrender to the United States Marshal for this district:

   ☐      at _____   ☐ a.m. ☐ p.m.   on   _____ .

   ☐      as notified by the United States Marshal.

☒       The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

   ☒      before 12 p.m.   _within 15 days of designation, but not before 10/08/2024_

   ☐      as notified by the United States Marshal.

   ☒      as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered
on _____   to   _____

at _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B (CO Rev. 11/20) Judgment in Criminal Case
_____

| | Judgment — Page | 4 | of | 8 |

DEFENDANT: KIMBERLEY ANN TEW
CASE NUMBER: 1:20-cr-00305-DDD-2

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of: **three (3) years on each count, imposed concurrently.**

## MANDATORY CONDITIONS

1. You must not commit another federal, state or local crime.
2. You must not unlawfully possess a controlled substance.
3. You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and a maximum of 20 tests per year of supervision thereafter.
   - ☐ The above drug testing condition is suspended, based on the court's determination that you pose a low risk of future substance abuse. *(check if applicable)*
4. ☒ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*
5. ☒ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*
6. ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*
7. ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

You must comply with the standard conditions that have been adopted by this court as well as with any other conditions on the attached page.

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

Judgment — Page ___5___ of ___8___

DEFENDANT: KIMBERLEY ANN TEW
CASE NUMBER: 1:20-cr-00305-DDD-2

## STANDARD CONDITIONS OF SUPERVISION

As part of your supervised release, you must comply with the following standard conditions of supervision. These conditions are imposed because they establish the basic expectations for your behavior while on supervision and identify the minimum tools needed by probation officers to keep informed, report to the court about, and bring about improvements in your conduct and condition.

1.  You must report to the probation office in the federal judicial district where you are authorized to reside within 72 hours of your release from imprisonment, unless the probation officer instructs you to report to a different probation office or within a different time frame.
2.  After initially reporting to the probation office, you will receive instructions from the court or the probation officer about how and when you must report to the probation officer, and you must report to the probation officer as instructed.
3.  You must not knowingly leave the federal judicial district where you are authorized to reside without first getting permission from the court or the probation officer.
4.  You must answer truthfully the questions asked by your probation officer.
5.  You must live at a place approved by the probation officer. If you plan to change where you live or anything about your living arrangements (such as the people you live with), you must notify the probation officer at least 10 days before the change. If notifying the probation officer in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
6.  You must allow the probation officer to visit you at any time at your home or elsewhere, and you must permit the probation officer to take any items prohibited by the conditions of your supervision that he or she observes in plain view.
7.  You must work full time (at least 30 hours per week) at a lawful type of employment, unless the probation officer excuses you from doing so. If you do not have full-time employment you must try to find full-time employment, unless the probation officer excuses you from doing so. If you plan to change where you work or anything about your work (such as your position or your job responsibilities), you must notify the probation officer at least 10 days before the change. If notifying the probation officer at least 10 days in advance is not possible due to unanticipated circumstances, you must notify the probation officer within 72 hours of becoming aware of a change or expected change.
8.  You must not communicate or interact with someone you know is engaged in criminal activity. If you know someone has been convicted of a felony, you must not knowingly communicate or interact with that person without first getting the permission of the probation officer.
9.  If you are arrested or questioned by a law enforcement officer, you must notify the probation officer within 72 hours.
10. You must not own, possess, or have access to a firearm, ammunition, destructive device, or dangerous weapon (i.e., anything that was designed, or was modified for, the specific purpose of causing bodily injury or death to another person such as nunchakus or tasers).
11. You must not act or make any agreement with a law enforcement agency to act as a confidential human source or informant without first getting the permission of the court.
12. If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may, after obtaining Court approval, notify the person about the risk or require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.
13. You must follow the instructions of the probation officer related to the conditions of supervision.

## U.S. Probation Office Use Only

A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____     Date _____

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

| | Judgment — Page 6 of 8 |
|---|---|

DEFENDANT: KIMBERLEY ANN TEW
CASE NUMBER: 1:20-cr-00305-DDD-2

## SPECIAL CONDITIONS OF SUPERVISION

1. You must participate in a program of cognitive behavioral treatment (CBT) approved by the probation officer and follow the rules and regulations of such program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program as to modality, duration, and intensity. You must pay for the cost of treatment based on your ability to pay.

2. You must participate in a program of mental health treatment approved by the probation officer and follow the rules and regulations of such program. The probation officer, in consultation with the treatment provider, will supervise your participation in the program as to modality, duration, and intensity. You must pay for the cost of treatment based on your ability to pay.

3. If the judgment imposes a financial penalty/restitution, you must pay the financial penalty/restitution in accordance with the Schedule of Payments sheet of this judgment. You must also notify the court of any changes in economic circumstances that might affect your ability to pay the financial penalty/restitution.

4. You must not incur new credit charges or open additional lines of credit without the approval of the probation officer, unless you are in compliance with the periodic payment obligations imposed pursuant to the Court's judgment and sentence.

5. You must provide the probation officer access to any requested financial information and authorize the release of any financial information until all financial obligations imposed by the court are paid in full.

6. You must apply any monies received from income tax refunds, inheritances, judgments, and any anticipated or unexpected financial gains to the outstanding court-ordered financial obligation in this case.

7. If you have an outstanding financial obligation, the probation office may share any financial or employment documentation relevant to you with the Asset Recovery Division of the United States Attorney's Office to assist in the collection of the obligation.

8. You must document all income and compensation generated or received from any source and must provide that information to the probation officer as requested.

9. You must provide the probation officer access to any requested financial information and authorize the release of any financial information.

10. You must not cause or induce anyone to conduct any financial transaction on your behalf or maintain funds on your behalf.

11. You must not conduct any foreign financial transactions without the advance approval of the probation officer.

12. You must not conduct any transactions in cryptocurrency or otherwise access cryptocurrency accounts without the advance approval of the probation officer.

13. You must maintain separate personal and business finances and must not co-mingle personal and business funds or income in any financial accounts, including but not limited to bank accounts and lines of credit.

14. You must not open or otherwise use any financial transaction account without the advance approval of the probation officer.

15. You must not engage in employment in which you would solicit funds for investment or employment that would permit you to have custody and/or control over investor funds, and you must not be the signatory on any accounts possessing investor funds.

16. You must not engage in any gambling (including "skill-based" games) or games of chance. You must not enter any casino or establishment with gambling or games of chance available for use with out the advance approval of the probation officer.

17. You must submit your person, property, house, residence, papers, computers (as defined in 18 U.S.C. § 1030(e)(1)), other electronic communications or data storage devices or media, or office, to a search conducted by a United States probation officer. Failure to submit to search may be grounds for revocation of release. You must warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a reasonable manner.

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

| | |
|---|---|
| DEFENDANT: KIMBERLEY ANN TEW | Judgment — Page 7 of 8 |
| CASE NUMBER: 1:20-cr-00305-DDD-2 | |

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on the following page.

| | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| TOTALS | $1,200.00 | $5,053,878.50 | $30,000.00 | $0.00 | $0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss*** | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| National Air Cargo<br>Attn: Accounting Office<br>350 Windward Drive<br>Orchard Park, New York 14127 | | $5,053,878.50 | |
| TOTALS | $ _____ | $5,053,878.50 | |

☐ Restitution amount ordered pursuant to plea agreement $ _____

☒ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on the following page may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the ☐ fine ☐ restitution.

☐ the interest requirement for the ☐ fine ☐ restitution is modified as follows:

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Publ. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B (CO Rev. 11/20) Judgment in Criminal Case

Judgment — Page __8__ of __8__

DEFENDANT: KIMBERLEY ANN TEW
CASE NUMBER: 1:20-cr-00305-DDD-2

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A ☐ Lump sum payment of $ _____ due immediately, balance due

     ☐ not later than _____ , or
     ☐ in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

B ☒ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☒ F below); or

C ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years)*, to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F ☒ Special instructions regarding the payment of criminal monetary penalties:

The special assessment, restitution, and fine obligation are due immediately. Any unpaid monetary obligations upon release from incarceration shall be paid in monthly installment payments during the term of supervised release. The monthly installment payment will be calculated as at least 10 percent of the defendant's gross monthly income.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☒ Joint and Several

| Case Number Defendant and Co-Defendant Names *(including defendant number)* | Total Amount | Joint and Several Amount | Corresponding Payee, if appropriate |
|---|---|---|---|
| 1:20-cr-00305-DDD-2, Kimberley Ann Tew | $5,053,878.50 | $5,053,878.50 | National Air Cargo |
| 1:20-cr-00305-DDD-1, Michael Aaron Tew | TBD | TBD | TBD |
| 1:20-cr-00305-DDD-3, Jonathan K. Yioulos | TBD | TBD | TBD |

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☒ The defendant shall forfeit the defendant's interest in the following property to the United States:
a money judgment in the amount of proceeds obtained by the scheme and by the defendants, $5,053,878.50.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.

UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT
Byron White United States Courthouse
1823 Stout Street
Denver, Colorado 80257
(303) 844-3157
Clerk@ca10.uscourts.gov

Christopher M. Wolpert
Clerk of Court

Jane K. Castro
Chief Deputy Clerk

August 21, 2024

Jamie Hubbard
Mr. David S. Kaplan
Stimson LaBranche Hubbard
1652 Downing Street
Denver, CO 80218

RE:     24-1333, United States v. Tew
        Dist/Ag docket: 1:20-CR-00305-DDD-2

Dear Counsel:

Your appeal has been docketed, and the appeal number is above. **Within 14 days** from the date of this letter, Appellant's counsel must electronically file:

- **An entry of appearance** per 10th Cir. R. 46.1(A).
- **A docketing statement** per 10th Cir. R. 3.4.
- **A transcript order form or notice that no transcript is necessary** per 10th Cir. R. 10.2. This form must be filed in **both** the district court and this court.
- **A designation of record** per 10th Cir. R.10.3(A). This form must be filed in **both** the district court and this court.
- ***Either*** a motion to continue your CJA appointment, or a motion to withdraw per 10th Cir. R. 46.3(B).
- **Please note:** A defendant-appellant's trial counsel in criminal and post-conviction cases **must** perfect the appeal before seeking to withdraw. This is the case even if counsel did not file the notice of appeal. Perfecting the appeal requires filing, at a minimum, an entry of appearance and a docketing statement. 10th Cir. R. 46.3(A).

**In addition, all counselled entities** that are required to file a Federal Rule of Appellate Procedure 26.1 disclosure statement must do so **within 14 days of the date of this letter**. All parties must refer to Federal Rule of Appellate Procedure 26.1 and Tenth Circuit Rule 26.1 for applicable disclosure requirements. All parties required to file a disclosure statement must do so even if there is nothing to disclose. Rule 26.1 disclosure statements must be promptly updated as necessary to keep them current.

**Also within 14 days**, Appellee's counsel must electronically file an entry of appearance and certificate of interested parties. **Attorneys that do not enter an appearance within the specified time frame will be removed from the service list.**

The Federal Rules of Appellate Procedure, the Tenth Circuit Rules, and forms for the aforementioned filings are on the court's website. The Clerk's Office has also created a set of quick reference guides and checklists that highlight procedural requirements of appeals filed in this court.

Please contact this office if you have questions.

Sincerely,

Christopher M. Wolpert
Clerk of Court

cc:     Bryan David Fields
        Laura Beth Hurd
        Martha A. Paluch
        Andrea L. Surratt
        Sarah Weiss

CMW/klp

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

      Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

      Defendant.

---

### Kimberley Tew's Motion for Release Pending Appeal

Defendant Kimberly Ann Tew, through trial attorneys David S. Kaplan and Jamie Hubbard, submits this motion to remain on bond pending her appeal in accordance with the authority contained in 18 U.S.C. § 3142(b)(1).

### <u>Procedural History</u>

Kimberley Tew was indicted in February 2021 and released on pretrial supervision. For more than four and a half years, she has been under supervision by federal officers. She has remained in contact with her supervising officer, completed her required check-ins, showed up for every court appearance, and never had a violation report filed against her.

On February 15, 2024, Kimberley Tew was convicted on twelve counts of conspiracy, wire fraud, and money laundering in the above case. After her convictions were entered, this Court allowed her to remain out of custody pending sentencing. (ECF No. 439.) After the Government objected to Mrs. Tew's continued release, the Court held an evidentiary hearing on the matter and again ordered that she could remain on release pending sentencing. (ECF No. 483.)

Mrs. Tew was recently sentenced by this Court to forty-eight months imprisonment followed by three years of supervised release. (ECF No. 527.) At the sentencing hearing, the Court permitted Mrs. Tew to remain on release until designated to a facility by the Bureau of Prisons. She is currently scheduled to report on October 9, 2024 to serve her sentence at Satellite Prison Camp at FCI-Phoenix. (ECF No. 545.)

Mrs. Tew has appealed her convictions. (ECF No. 535.) This Court retains jurisdiction, however, to decide whether Mrs. Tew may remain on release pending her appeal. *United States v Meyers*, 95 F.3d 1475 n.6 (10th Cir. 1996) ("Although the filing of a notice of appeal usually divest the district court of further jurisdiction, the initial determination of whether a convicted defendant is to be released pending appeal is to be made by the district court."); F.R.A.P. 9, advisory committee notes ("Notwithstanding the fact that jurisdiction has passed to the court of appeals, both 18 U.S.C. § 3148 and FRCrP 38(c) contemplate that the initial determination of whether a convicted defendant is to be released pending the appeal is to be made by the district court.").

<div align="center">**Statement of Conferral**</div>

The Government opposes the relief requested.

<div align="center">**Legal Standard**</div>

Section 3143 of Title 18 of the United States Code provides, in relevant part:

**(b)  Release or Detention Pending Appeal by the Defendant.—**

(1)  Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

<div align="center">2</div>

    (A)  by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

    (B)  that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

> (i) reversal,
> (ii) an order for a new trial,
> (iii) a sentence that does not include a term of imprisonment, or
> (iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title, except that in the circumstance described in subparagraph (B)(iv) of this paragraph, the judicial officer shall order the detention terminated at the expiration of the likely reduced sentence.

## Mrs. Tew Is Not a Danger or Flight Risk

This Court previously found—more than once—that Mrs. Tew is not a danger to herself or the community or a risk of flight. After the convictions entered, Mrs. Tew could only be released if the Court found "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a). In allowing Mrs. Tew to remain on bond until her sentencing hearing, the Court pointed to the fact that Mrs. Tew had shown up for every court appearance, including trial, knowing there was a significant risk of conviction and a resulting (potentially lengthy) term of imprisonment. The Court noted Mrs. Tew's ties to the community, most significantly her school-aged children.

None of the factors relied on by the Court in making this earlier determination have changed. Mrs. Tew remains compliant with supervision. Her daughters remain in Colorado; one is enrolled in public school while the other is home schooled. If anything, any potential flight risk has lessened since the Court last found Mrs. Tew met the criteria to remain on release. After her convictions entered, Mrs. Tew was aware that she faced the potential of more than a decade in prison if sentenced within the applicable guideline range. The Court then imposed a 48-month sentence, less than 1/3 of what the Government was seeking. Thus, any risk that Mrs. Tew would flee has decreased since the last time the Court found by clear and convincing evidence that she was not a flight risk or danger to the community.

Mrs. Tew has been on pretrial release for more than four years. During that time, her supervising officer has not filed any violation reports or otherwise indicated non-compliance by Mrs. Tew, even as her conditions of release have shifted over time. Instead, she remained in contact with her supervising officer and appeared for every court date. As such, the Court can easily find in this case—as it has multiple times in the past—that Mrs. Tew is not a flight risk or a danger to the community so as to satisfy § 3143(b)(1)(A).

## Substantial Issues Will be Raised in Mrs. Tew's Appeal

With respect to Section 3143(b)(1)(B), Mrs. Tew has separate counsel appointed to pursue her appeal. However, trial counsel has identified a number of issues that raise substantial questions of law or fact and which may result in her convictions being vacated. The two most obvious issues to trial counsel are addressed below and show that Mrs. Tew's appeal is not for purposes of delay but rather raises substantial issues of fact and law that are likely to result in a new trial for Mrs. Tew.

4

*Severance*: Over the objection of both defendants, Mrs. Tew and her husband were tried jointly despite Mr. Tew's defense being antagonistic towards Mrs. Tew. Mrs. Tew's defense focused on knowledge—what she knew about the source of funds coming into her husband's accounts and their joint account. Did she know the money came from National Air Cargo? Did she know Michael Tew wasn't entitled to payment/compensation from NAC? If the jury concluded that Mrs. Tew did not know the source of the funds or did not know that her husband wasn't entitled to the money being transferred to him, the jury could have acquitted her of the conspiracy, wire fraud, and money laundering charges.

Mr. Tew's defense team took a very different approach to the case. In a kind of duress defense, they portrayed Kimberley Tew as a puppeteer who was in complete control of her husband's every action. Mr. Tew's attorneys elicited testimony and presented evidence that—not only did Kimberley Tew know her husband was stealing funds from National—she made him do it. Mr. Tew's attorneys wanted the jury to believe that, but for Kimberley Tew's manipulation of her husband, Michael Tew would never have stolen the money.

Defenses are antagonistic if "the conflict between codefendants' defenses [is] such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." *United States v. Linn*, 31 F.3d 987, 992 (10th Cir.1994). For the jurors to believe Mr. Tew's defense that Mrs. Tew was the mastermind behind the entire scheme, they would necessarily have to disbelieve Mrs. Tew's defense that she lacked the required knowledge as to the legality of the source of funds. Under similar circumstances, the Tenth Circuit has held that defenses were antagonistic. *United States v. Pursley*, 474 F.3d 757, 766 (10th Cir. 2007). Moreover, in *Pursley*, the appeals court upheld denial of the severance because—even though

antagonistic—both parties' defenses exonerated the defendant. Here, Michael Tew's defense did not exonerate his wife; it placed all the blame at her feet. Thus, Mrs. Tew was prejudiced by the failure to sever. *Id*.

The joint trial had the practical effect of Mrs. Tew being prosecuted by four attorneys—two attorneys representing the government and two attorneys representing her husband. Much of the testimony about Mrs. Tew's character was elicited or amplified by the attorneys representing Michael Tew. Mrs. Tew has a strong argument on appeal that she was unfairly prejudiced by the joint trial. If the appellate court agrees, her conviction would be vacated and the matter remanded for a new trial. Accordingly, Mrs. Tew's appeal satisfies 18 U.S.C. § 3143(b)(1)(B).

***Improper Character Evidence***: During trial, witness after witness took the stand and testified negatively about prior interactions they had with Kimberley Tew or their opinions about Kimberley Tew's bad character.

Hannah Scaife was permitted to testify that Kimberley Tew was "toxic", "emotionally manipulative," and pressured her to do things that she would not otherwise do. Mrs. Scaife was specifically permitted to testify about a time in 2015—two years prior to the events at issue in this case—when she visited the Tews in Colorado and observed Kimberley "verbally abusing" Mr. Tew. At one point, in overruling the Government's objection to a question asked on cross-examination, the Court noted that a big part of Ms. Scaife's testimony was to establish that she had been manipulated by Mrs. Tew.

The Government elicited this testimony that clearly falls within F.R.E. 404(b) without any prior notice of its intent to do so. Ms. Scaife's character testimony was not during the timeframe of the conspiracy and did not relate to the facts of the conspiracy. It was offered to

6

show that Mrs. Tew was a manipulative and abusive person in 2015 and earlier, and therefore it is more likely that Mrs. Tew was abusive and manipulative during the conspiracy.

Similarly, Abby Schwartz, a bookkeeper who worked at National, was permitted to testify about a phone call with Kimberley Tew where Mrs. Tew was screaming at her to pay an invoice for money owed to Michael Tew. Ms. Schwartz testified that she was so bothered by the tone and tenor of the call that she went to her boss and requested that she never be made to speak with Mrs. Tew again. This phone call occurred prior to the timeframe of the conspiracy and related to money that Michael Tew was legitimately owed by National based on his employment contract. The only purpose for this call was to show that Kimberley Tew had a propensity towards making abusive phone calls and verbally abusing others. It was admitted without the notice required by Rule 404(b) and without the required limiting instruction when 404(b) evidence is admitted for a non-propensity purpose.

A slightly separate but related issue is the multiple witnesses who were permitted to give what was, in essence, victim impact testimony. Chris Alf, National's president, testified about his wife's cancer diagnosis and how dealing with the theft of funds during this stressful time impacted him emotionally. Abby Schwartz tearfully explained the betrayal she felt because of the defendants' actions and how she was impacted emotionally. Michael Meyers was permitted to testify about how his cryptocurrency trading with Mrs. Tew—a different scheme that had little to nothing to do with the crimes charged—negatively impacted his life, including how it "destroyed" his relationship with his wife and daughter and drove him into drinking heavily.

None of this character testimony was relevant to the crimes charged. Neither Mr. Alf's wife's cancer, nor Ms. Schwartz's feelings of betrayal, nor the state of Mr. Meyers's marriage

made any fact at issue more or less likely. Victim impact testimony was offered through witness after witness purely for the purpose of pulling on the jurors' heartstrings and portraying Kimberley Tew as a manipulative, abusive, horrible human being that the jury should punish regardless of whether she committed the crimes charged. Admission of this kind of victim impact testimony from any of these witnesses was error. The cumulative impact of allowing the Government to intentionally elicit emotional victim impact testimony from witness after witness was unfairly prejudicial and materially impacted the outcome of this case. If the appellate court agrees, remand for a new trial would be appropriate. Accordingly, this issue also satisfies 18 U.S.C. §3143(b)(1)(B).

### Mrs. Tew is Entitled to Release Pending Appeal Under Section 3143(b)(1)

If the Court finds: (1) Mrs. Tew is not a flight risk or a danger to the community; and (2) her appeal raises substantial legal issues likely to result in reversal or an order for a new trial, then Section 3143(b)(1) provides that the Court "shall order the release of the person." This Court has previously found that Mrs. Tew is not a danger or a flight risk and imposed conditions on her release that could remain in place during the pendency of an appeal. The appellate issues identified herein are just a few of the many viable challenges that will be addressed in her appeal, and which show that such appeal is not intended for delay and is likely to result in reversal of her convictions or a new trial. Because Mrs. Tew satisfies both prongs of Section 3143(b), the Court shall order her release pending appeal.

For the reasons set forth above, Mrs. Tew respectfully requests the Court vacate the order requiring her to report to serve her custodial sentence and instead order that she remain on release under the supervision of the Court pending her appeal.

Dated: September 16, 2024.

Respectfully submitted,

*s/ Jamie Hubbard*

David S. Kaplan
Jamie Hubbard
STIMSON LABRANCHE HUBBARD, LLC
1652 Downing Street
Denver, CO 80218
720.689.8909
kaplan@slhlegal.com
hubbard@slhlegal.com

*Attorneys for Kimberley Ann Tew*

9

**Certificate of Service**

I certify that on September 16, 2024, I electronically filed Kimberley *Tew's Motion for Release pending Appeal* using the CM/ECF system.

s/ *Andres L. Varas*
Andres L. Varas, Paralegal

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No. 1:20-cr-00305-DDD-2

UNITED STATES OF AMERICA,

     Plaintiff,

v.

**2. KIMBERLEY ANN TEW**

     Defendant.

---

**Order re: Kimberley Tew's Motion for Release Pending Appeal**

---

     This Court, having considered Kimberley Tew's Motion for Release Pending Appeal hereby GRANTS the Motion. The Voluntary Surrender Order Supplementing Judgment (Doc. 545) is VACATED. Defendant Kimberley Tew is directed to remain on release under the supervision of the Court pending her appeal.

                            BY THE COURT:

                            _____

                            Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No.  20-cr-00305-DDD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

    1.  MICHAEL AARON TEW and
    2.  **KIMBERLEY ANN TEW**,
       a/ka Kimberley Vertanen,

    Defendants.

---

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION FOR ORDER FOR RELEASE PENDING APPEAL

---

Kimberley Tew's motion to delay the execution of her sentence should be denied. The law dictates that a convicted defendant, including Ms. Tew, "*shall*" be remanded into custody, even when there is an appeal pending. *See* 18 U.S.C. § 3143(b)(1) (emphasis added). Exceptions to this rule are limited, and the bar is high. *See* 18 U.S.C. § 3143(b)(2)(A) & (B). In order to justify the exceptional relief she now requests, she must prove to this Court that her appeal raises "substantial" questions that are "likely to result in reversal or a new trial." 18 U.S.C. § 3143(b); *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir. 1985). Nothing in her motion meets this high standard.

Ms. Tew takes issue with two aspects of her criminal trial: (1) the ruling on an

1

untimely severance motion made over a year after the relevant deadline and (2)
questions about evidentiary rulings.

The first argument was waived: the defendant did not file a written motion, but
her oral motion for severance was just as untimely as her husband's. *See* ECF No. 424 at
5 (noting untimeliness of Michael Tew's severance motion, which was grounded in
arguments similar to defendant's). A waived argument is reviewed only for plain error,
which is a "very demanding" standard that is unlikely to raise a substantial question.
*See, e.g., United States v. Geddings*, 497 F. Supp. 2d 729, 737 (W.D.N.C. 2007) (evaluating
whether waived argument can amount to substantial question and concluding that
plain error standard makes it unlikely).

But even if questions about severance raised during trial were preserved, neither
that issue nor the evidentiary issues related to testimony are particularly "substantial."
They amount to the rough equivalent of continued disagreement with an umpire's balls
and strikes. Indeed both issues were raised, briefed and/or argued vigorously at the
time. Both were rejected after careful consideration.

Further, even setting aside timeliness, each question will be evaluated by the
appellate court under an abuse of discretion standard. *United States v. Hill*, 786 F.3d
1254, 1272 (10th Cir. 2015) (describing the burden as "particularly heavy" in the context
of severance); *United States v. Cestnik*, 36 F.3d 904, 906 (10th 1994) ("Evidentiary rulings
are committed to the discretion of the trial court, and we review them only for abuse of

2

discretion."). In other words, in order to prevail on these issues on appeal,  she has to
show not just that the decisions could have gone the other way, or even that they were
wrong, but that they were so egregiously wrong as to "exceed the bounds of
permissible choice in the circumstance or [were] arbitrary, capricious or whimsical."
*United States v.  Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017) (describing abuse of
discretion standard).

Unsurprisingly, her brief describes no cases where anyone has met these
rigorous standards for bond pending appeal under circumstances similar to hers. She
points to no rulings where a trial court's severance decision was found to be an abuse of
discretion, let alone plain error. Nor does she cite a single case where the admission of
what she describes as "character evidence" was found to be both outside the bounds of
the trial court's discretion and a reason to overturn a conviction. Instead, she simply
repeats arguments that the Court already thoughtfully considered and rejected.

Even if Ms. Tew were somehow able to articulate how the court's exercises of
discretion amount to substantial questions, she *still* would not be entitled to relief. That
is because she would then need to show that those allegedly inappropriate decisions
were so wrong that they are likely to result in reversal. *Affleck*, 765 F.2d at 953. On this
score, the defendant's arguments are conclusory at best.

She does not engage at all with the considerable evidence put before the jurors
which proved to them that she was guilty beyond a reasonable doubt. To take but one

3

category of evidence, the trial featured hundreds of pages of text messages in which Ms. Tew spoke openly about her crimes nearly every week for two years. The likelihood that the harmless error standard will bar the appellate relief required of Section 3143(b)(2)(B) is further reason to deny her motion. *Id.* (noting that even substantial questions must amount to more than harmless error).

Finally, the government understands and respects the Court's prior rulings regarding the risks of flight and danger to the community. But for purposes of preserving the record, the government again reiterates its position that she is both, incorporates its prior filings articulating that position, and avers that this is yet another reason to deny the motion. ECF No. 450. Ms. Tew should be ordered to surrender as scheduled on October 9, 2024. ECF No. 545.

Respectfully submitted,

MATTHEW T. KIRSCH
United States Attorney

By:  */s/ Bryan Fields*
Bryan Fields
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Bryan.Fields3@usdoj.gov
Attorney for the Government

By:  */s/ Sarah H. Weiss*
Sarah H. Weiss
Assistant United States Attorney
U.S. Attorney's Office
1801 California St. Suite 1600
Denver, CO 80202
(303) 454-0100
Sarah.Weiss@usdoj.gov
Attorney for the Government

4

**Certification of Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

<u>*/s Bryan Fields*</u>
Bryan David Fields

**Statement of Speedy Trial Impact**

Pursuant to Judge Domenico's Practice Standard III(C), the government notes that this motion will not affect the speedy trial clock in this case because trial has already occurred within the Speedy Trial Act deadline.

5

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on September 20, 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to any and all counsel of record.


                                *s/ Bryan Fields*
                                United States Attorney's Office

6